IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL VETERANS LEGAL SERVICES PROGRAM,<br><br>1600 K Street, NW<br>Washington, DC 20006<br><br>NATIONAL CONSUMER LAW CENTER,<br><br>1001 Connecticut Avenue, NW<br>Washington, DC 20036<br><br>ALLIANCE FOR JUSTICE,<br><br>11 Dupont Circle, NW<br>Washington, DC 20036,<br><br>for themselves and all others similarly situated,<br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530,<br>*Defendant*. | Case No. _____<br><br><br><br>CLASS ACTION COMPLAINT |

**INTRODUCTION**

The Administrative Office of the U.S. Courts (AO) requires people to pay a fee to access records through its Public Access to Court Electronic Records system, commonly known as PACER. This action challenges the legality of those fees for one reason: the fees far exceed the cost of providing the records. In 2002, Congress recognized that "users of PACER are charged fees that are higher than the marginal cost of disseminating the information," and sought to ensure that records would instead be "freely available to the greatest extent possible." S. Rep. 107–174, 107th Cong., 2d Sess. 23 (2002). To that end, the E-Government Act of 2002 authorizes PACER fees "as a charge for services rendered," but "only to the extent necessary" "to reimburse expenses in providing these services." 28 U.S.C. § 1913 note.

Despite this express statutory limitation, PACER fees have twice been increased since the Act's passage. This prompted the Act's sponsor to reproach the AO for continuing to charge fees "well higher than the cost of dissemination"—"against the requirement of the E-Government Act"—rather than doing what the Act demands: "create a payment system that is used only to recover the direct cost of distributing documents via PACER." Instead of complying with the law, the AO has used excess PACER fees to cover the costs of unrelated projects—ranging from audio systems to flat screens for jurors—at the expense of public access.

This noncompliance with the E-Government Act has inhibited public understanding of the courts and thwarted equal access to justice. And the AO has further compounded those harms by discouraging fee waivers, even for *pro se* litigants, journalists, researchers, and nonprofits; by prohibiting the free transfer of information by those who obtain waivers; and by hiring private collection lawyers to sue people who cannot afford to pay the fees.

The plaintiffs are three national nonprofit organizations that have downloaded public court records from PACER—downloads for which they agreed to incur fees, and were in fact charged fees, in excess of the cost of providing the records. Each download thus gave rise to a separate claim for illegal exaction in violation of the E-Government Act. On behalf of themselves and a nationwide class of those similarly situated, they ask this Court to determine that the PACER fee schedule violates the E-Government Act and to award them a full recovery of past overcharges.[1]

---

[1] This case is the first effort to challenge the PACER fee schedule by parties represented by counsel. A now-dismissed *pro se* action, *Greenspan v. Administrative Office*, No. 14-cv-2396 (N.D. Cal.), did seek to challenge the fees (among a slew of other claims), but it was dismissed on jurisdictional grounds inapplicable here. Last year, two other cases were filed alleging that PACER, in violation of its own terms and conditions, overcharges its users due to a systemic billing error concerning the display of some HTML docket sheets—an issue not raised in this case. *Fisher v. Duff*, 15-5944 (W.D. Wash), and *Fisher v. United States*, 15-1575C (Ct. Fed. Cl.). Neither case challenges the PACER fee schedule itself, as this case does.

**PARTIES**

1.      Plaintiff National Veterans Legal Services Program (NVLSP) is a nonprofit organization founded in 1980 and based in Washington, D.C. It seeks to ensure that American veterans and active-duty personnel receive the full benefits to which they are entitled for disabilities resulting from their military service. Over the years, the organization has represented thousands of veterans in individual court cases, educated countless people about veterans-benefits law, and brought numerous class-action lawsuits challenging the legality of rules and policies of the U.S. Department of Veterans Affairs. As a result, NVLSP has paid fees to the PACER Service Center to obtain public court records within the past six years.

2.      Plaintiff National Consumer Law Center (NCLC) is a national nonprofit organization that seeks to achieve consumer justice and economic security for low-income and other disadvantaged Americans. From its offices in Washington, D.C. and Boston, NCLC pursues these goals through policy analysis, advocacy, litigation, expert-witness services, and training for consumer advocates throughout the nation, and does so on a wide range of issues, including consumer protection, unfair and deceptive acts and practices, privacy rights, civil rights, and employment. Among other things, NCLC prepares and publishes 20 different treatise volumes on various consumer-law topics. In the course of its research, litigation, and other activities, NCLC has paid fees to the PACER Service Center to obtain public court records within the past six years.

3.      Plaintiff Alliance for Justice (AFJ) is a nonprofit corporation with its headquarters in Washington, D.C. and offices in Los Angeles, Oakland, and Dallas. It is a national association of over 100 public-interest organizations that focus on a broad array of issues—including civil rights, human rights, women's rights, children's rights, consumer rights, and ensuring legal representation for all Americans. Its members include AARP, the Center for Digital Democracy,

Consumers Union, the National Center on Poverty Law, and the National Legal Aid & Defender Association. On behalf of these groups and the public-interest community, AFJ works to ensure that the federal judiciary advances core constitutional values, preserves unfettered access to the courts, and adheres to the even-handed administration of justice for all Americans. AFJ has paid fees to the PACER Service Center to obtain public court records within the past six years.

4.      Defendant United States of America, through the AO and its PACER Service Center, administers PACER and charges fees for access to public court records.

**JURISDICTION AND VENUE**

5.      This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1346(a). Each plaintiff and putative class member has multiple individual illegal-exaction claims against the United States, none of which exceeds $10,000.

6.      The Court has personal jurisdiction over all parties to this lawsuit, and venue is proper under 28 U.S.C. § 1391 and 28 U.S.C. § 1402(a).

**FACTUAL ALLEGATIONS**

***How PACER works: A brief overview***

7.       PACER is a decentralized system of electronic judicial-records databases. It is managed by the AO, and each federal court maintains its own database. Any person may access records through PACER by registering for an online account and searching the applicable court database. Before accessing a particular record, however, each person must first agree to pay a specific fee, shown on the computer screen, which says: "To accept charges shown below, click on the 'View Document' button, otherwise click the 'Back' button on your browser." The current fee is $.10 per page (with a maximum of $3.00 per record) and $2.40 per audio file. There is no charge for judicial opinions. Only if the person affirmatively agrees to pay the fee will a PDF of the record appear for downloading and printing. Unless that person obtains a fee waiver or

incurs less than $15 in PACER charges in a given quarter, he or she will have a contractual obligation to pay the fees.

### *How we got here: Congress authorizes fees "to reimburse" PACER expenses.*

8.     This system stretches back to the early 1990s, when Congress began requiring the federal judiciary to charge "reasonable fees . . . for access to information available through automatic data processing equipment," including records available through what is now known as PACER. Judiciary Appropriations Act, 1991, Pub. L. No. 101–515, § 404, 104 Stat. 2129, 2132–33. In doing so, Congress sought to limit the amount of the fees to the cost of providing access to the records: "All fees hereafter collected by the Judiciary . . . *as a charge for services rendered* shall be deposited as offsetting collections . . . *to reimburse expenses incurred in providing these services*." *Id.* (emphasis added). When the system moved from a dial-in phone service to an Internet portal in 1998, the AO set the PACER fees at $.07 per page (introducing in 2002 a maximum of $2.10 per request), without explaining how it arrived at these figures. *See* Chronology of the Federal Judiciary's Electronic Public Access (EPA) Program, http://1.usa.gov/1lrrM78.

9.     It soon became clear that these amounts were far more than necessary to recover the cost of providing access to electronic records. But rather than reduce the fees to cover only the costs incurred, the AO instead decided to use the extra revenue to subsidize other information-technology-related projects—a mission creep that only grew worse over time.

### *The AO begins using excess PACER fees to fund ECF.*

10.     The expansion began in 1997, when the judiciary started planning for a new e-filing system called ECF. The AO produced an internal report discussing how the system would be funded. It emphasized the "long-standing principle" that, when charging a user fee, "the government should seek, not to earn a profit, but only to charge fees commensurate with the cost of providing a particular service." Admin. Office of the U.S. Courts, *Electronic Case Files in the*

*Federal Courts: A Preliminary Examination of Goals, Issues and the Road Ahead* (discussion draft), at 34 (Mar. 1997). Yet, just two pages later, the AO contemplated that the ECF system could be funded with "revenues generated from electronic public access fees"—that is, PACER fees. *Id.* at 36. The AO believed that these fees could lawfully be used not only to reimburse the cost of providing access to records through PACER, but also for technology-related purposes more broadly, including "electronic filings, electronic documents, use of the Internet, etc." *Id.* The AO did not offer any statutory authority to support this view.

### *Congress responds by passing the E-Government Act of 2002.*

11.    After the AO began charging PACER fees that exceeded the cost of providing access to records, Congress did not respond by relaxing the statutory requirement that the fees be limited to those costs. To the contrary, when Congress revisited the subject of PACER fees a few years later, it amended the statute to *strengthen* this requirement.

12.    Recognizing that, under "existing law, users of PACER are charged fees that are higher than the marginal cost of disseminating the information," Congress amended the law "to encourage the Judicial Conference to move from a fee structure in which electronic docketing systems are supported primarily by user fees to a fee structure in which this information is freely available to the greatest extent possible." S. Rep. 107–174, 107th Cong., 2d Sess. 23 (2002). The result was a provision of the E-Government Act of 2002 that amended the language authorizing the imposition of fees—removing the mandatory "shall prescribe" language and replacing it with language permitting the Judicial Conference to charge fees "only to the extent necessary." Pub. L. No. 107–347, § 205(e), 116 Stat. 2899, 2915 (Dec. 17, 2002) (28 U.S.C. § 1913 note). The full text of the statute is thus as follows:

> **(a)** The Judicial Conference may, *only to the extent necessary*, prescribe reasonable fees, pursuant to sections 1913, 1914, 1926, 1930, and 1932 of title 28, United States Code, for collection by the courts under those sections *for access to information*

*available through automatic data processing equipment*. These fees may distinguish between classes of persons, and shall provide for exempting persons or classes of persons from the fees, in order to avoid unreasonable burdens and to promote public access to such information. The Director of the [AO], under the direction of the Judicial Conference of the United States, shall prescribe a schedule of reasonable fees for electronic access to information which the Director is required to maintain and make available to the public.

**(b)** The Judicial Conference and the Director shall transmit each schedule of fees prescribed under paragraph (a) to the Congress at least 30 days before the schedule becomes effective. All fees hereafter collected by the Judiciary under paragraph (a) *as a charge for services rendered* shall be deposited as offsetting collections to the Judiciary Automation Fund pursuant to 28 U.S.C. 612(c)(1)(A) *to reimburse expenses incurred in providing these services*.

28 U.S.C. § 1913 note (emphasis added).

### *Even after the E-Government Act, the AO increases PACER fees.*

13.    Rather than reduce or eliminate PACER fees, however, the AO increased them to $.08 per page in 2005. Memorandum from Leonidas Ralph Mecham, Director of the Admin. Office, to Chief Judges and Clerks (Oct. 21, 2004). To justify this increase, the AO did not point to any growing costs of providing access to records through PACER. It relied instead on the fact that the judiciary's information-technology fund—the account into which PACER fees and other funds (including appropriations) are deposited, 28 U.S.C. § 612(c)(1)—could be used to pay the costs of technology-related expenses like ECF. As before, the AO cited no statutory authority for this increase.

### *The AO finds new ways to spend extra PACER fees as they continue to grow.*

14.    Even expanding the conception of costs to cover ECF did not bring the PACER balance sheet to zero. Far from it: By the end of 2006, the judiciary's information-technology fund had accumulated a surplus of nearly $150 million—at least $32 million of which was from PACER fees. Admin. Office, *Judiciary Information Technology Annual Report for Fiscal Year 2006*, at 8, http://bit.ly/1V5B9p2. But once again, the AO declined to reduce or eliminate PACER fees,

and instead chose to seek out new ways to spend the excess, using it to fund "courtroom technology allotments for installation, cyclical replacement of equipment, and infrastructure maintenance." Quoted in Letter from Sen. Lieberman, Chair, Sen. Comm. on Homeland Security and Governmental Affairs, to Sens. Durban and Collins, Sen. Comm. on Appropriations (Mar. 25, 2010).

15.    Two years later, in 2008, the chair of the Judicial Conference's Committee on the Budget testified before the House. She explained that the judiciary used PACER fees not only to reimburse the cost of "run[ning] the PACER program," but also "to offset some costs in our information technology program that would otherwise have to be funded with appropriated funds." Hearings Before a Subcomm. of the Sen. Comm. on Appropriations on H.R. 7323/S. 3260, 110th Cong. 51 (2008). Specifically, she testified, "[t]he Judiciary's fiscal year 2009 budget request assumes $68 million in PACER fees will be available to finance information technology requirements in the courts' Salaries and Expenses account, thereby reducing our need for appropriated funds." *Id.*

### *The E-Government Act's sponsor says that the AO is violating the law.*

16.    In early 2009, Senator Joe Lieberman (the E-Government Act's sponsor) wrote the AO "to inquire if [it] is complying" with the statute. He noted that the Act's "goal" was "to increase free public access to [judicial] records," yet "PACER [is] charging a higher rate" than it did when the law was passed. Importantly, he explained, "the funds generated by these fees are still well higher than the cost of dissemination." He asked the Judicial Conference to explain "whether [it] is only charging 'to the extent necessary' for records using the PACER system." Letter from Sen. Lieberman to Hon. Lee Rosenthal, Chair, Committee on Rules of Practice and Procedure, Judicial Conf. of the U.S. (Feb. 27, 2009).

17.     The Judicial Conference replied with a letter adhering to the AO's view that it is authorized to use PACER fees to recoup non-PACER-related costs. The letter did not identify any statutory language supporting this view, and acknowledged that the E-Government Act "contemplates a fee structure in which electronic court information 'is freely available to the greatest extent possible.'" Letter from Hon. Lee Rosenthal and James C. Duff, Judicial Conf. of the U.S., to Sen. Lieberman, Chair, Sen. Comm. on Homeland Security and Governmental Affairs (Mar. 26, 2009). The letter did not cite any statute that says otherwise. Yet it claimed that Congress, since 1991, has "expand[ed] the permissible use of the fee revenue to pay for other services"—even though Congress has actually done the opposite, enacting the E-Government Act in 2002 specifically to limit any fees to those "necessary" to "reimburse expenses incurred" in providing the records. 28 U.S.C. § 1913 note. The sole support the AO offered for its view was a sentence in a conference report accompanying the 2004 appropriations bill, which said only that the Appropriations Committee "expects the fee for the Electronic Public Access program to provide for [ECF] system enhancements and operational costs." *Id.* The letter did not provide any support (even from a committee report) for using the fees to recover non-PACER-related expenses beyond ECF.

18.     Later, in his annual letter to the Appropriations Committee, Senator Lieberman expressed his "concerns" about the AO's interpretation. "[D]espite the technological innovations that should have led to reduced costs in the past eight years," he observed, the "cost for these documents has gone up." And it has done so for only one reason: so that the AO can fund "initiatives that are unrelated to providing public access via PACER." He reiterated his view that this is "against the requirement of the E-Government Act," which permits "a payment system that is used only to recover the direct cost of distributing documents via PACER"—not other technology-related projects that "should be funded through direct appropriations." Letter from

Sen. Lieberman, Chair, Sen. Comm. on Homeland Security and Governmental Affairs, to Sens. Durban and Collins, Sen. Comm. on Appropriations (Mar. 25, 2010).

### The AO again increases PACER fees.

19.     Undeterred by Senator Lieberman's concerns, the AO responded by raising PACER fees once again, to $.10 per page beginning in 2012. It acknowledged that "[f]unds generated by PACER are used to pay the entire cost of the Judiciary's public access program, including telecommunications, replication, and archiving expenses, the Case Management/Electronic Case Files system, electronic bankruptcy noticing, Violent Crime Control Act Victim Notification, on-line juror services, and courtroom technology." Admin. Office, *Electronic Public Access Program Summary* 1 (2012), http://1.usa.gov/1Ryavr0. But the AO believed that the fees comply with the E-Government Act because they "are only used for public access, and are not subject to being redirected for other purposes." *Id.* at 10. It did not elaborate.

20.     In a subsequent congressional budget summary, however, the judiciary reported that (of the money generated from "Electronic Public Access Receipts") it spent just $12.1 million on "public access services" in 2012, while spending more than $28.9 million on courtroom technology. *The Judiciary: Fiscal Year 2014 Congressional Budget Summary*, App. 2.4.

### The AO continues to charge more in fees than the cost of PACER.

21.     Since the 2012 fee increase, the AO has continued to collect large amounts in PACER fees and to use these fees to fund activities beyond providing access to records. In 2014, for example, the judiciary collected more than $145 million in fees, much of which was earmarked for other purposes such as courtroom technology, websites for jurors, and bankruptcy notification systems. Admin. Office of the U.S. Courts, *The Judiciary Fiscal Year 2016 Congressional Budget Summary* 12.2 (Feb. 2015). When questioned during a House appropriations hearing that same year, representatives from the judiciary acknowledged that "the Judiciary's Electronic

Public Access Program encompasses more than just offering real-time access to electronic records." *Financial Services and General Government Appropriations for 2015, Part 6: Hearings Before a Subcomm. of the House Comm. on Appropriations*, 113th Cong. 152 (2014).

22.    Some members of the federal judiciary have been open about the use of PACER revenue to cover unrelated expenses. For example, Judge William Smith (a member of the Judicial Conference's Committee on Information Technology) has acknowledged that the fees "also go to funding courtroom technology improvements, and I think the amount of investment in courtroom technology in '09 was around 25 million dollars. . . . Every juror has their own flat-screen monitors. . . . [There have also been] audio enhancements. . . . We spent a lot of money on audio so the people could hear what's going on. . . . This all ties together and it's funded through these [PACER] fees." Hon. William Smith, Panel Discussion on Public Electronic Access to Federal Court Records at the William and Mary Law School Conference on Privacy and Public Access to Court Records (Mar. 4–5, 2010), bit.ly/1PmR0LJ.

***The AO's policy of limiting fee waivers and targeting those who cannot pay the fees***

23.    The judiciary's decision to increase PACER fees to fund these (otherwise unobjectionable) expenses has created substantial barriers to accessing public records—for litigants, journalists, researchers, and others. The AO has compounded these barriers through a policy of discouraging fee waivers, even for journalists, *pro se* litigants, and nonprofits; by prohibiting the transfer of information, even for free, by those who manage to obtain waivers; and by hiring private collection lawyers to sue individuals who cannot pay the fees.

24.    Two examples help illustrate the point: In 2012, journalists at the Center for Investigative Reporting applied "for a four-month exemption from the per page PACER fee." *In re Application for Exemption from Elec. Public Access Fees*, 728 F.3d 1033, 1035–36 (9th Cir. 2013). They "wanted to comb court filings in order to analyze 'the effectiveness of the court's conflict-

checking software and hardware to help federal judges identify situations requiring their recusal,'" and "planned to publish their findings" online. *Id.* at 1036. But their application was denied because policy notes accompanying the PACER fee schedule instruct courts not to provide a fee waiver to "members of the media" or anyone not in one of the specific groups listed. *Id.* at 1035. The Ninth Circuit held that it could not review the denial. *Id.* at 1040.

25.     The other example is from five years earlier, when private collection lawyers representing the PACER Service Center brought suit in the name of the United States against "a single mother of two minor children" who had "no assets whatsoever," claiming that she owed $30,330.80 in PACER fees. *See* Compl. in *United States v. Deanna Manning*, No. 07-cv-04595, filed July 3, 2007 (C.D. Cal.); Answer, Dkt. 12, filed Oct. 16, 2007. Representing herself, the woman "admit[ted] to downloading and printing a small amount [of] material from PACER, no more than $80 worth," which "would be 1,000 pages, actually much more than she remembers printing." Answer, Dkt. 12, at 1. But she explained that "[t]here is no way she would have had enough paper and ink to print 380,000 pages as the Complaint alleges," so "[t]his must be a huge mistake." *Id.* She concluded: "Our great and just government would have better luck squeezing blood from a lemon than trying to get even a single dollar from this defendant who can barely scrape up enough money to feed and clothe her children." *Id.* at 2. Only then did the government dismiss the complaint.

## CLASS ACTION ALLEGATIONS

26.     The plaintiffs bring this class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

27.     The plaintiffs seek certification of the following class:

*All individuals and entities who have paid fees for the use of PACER within the past six years, excluding class counsel and agencies of the federal government.*

28.     The class is so numerous that joinder of all members is impractical. While the exact number and identity of class members is unknown to the plaintiffs at this time and can only be ascertained through appropriate discovery, the plaintiffs believe that the number of class members is approximately 2,000,000. The precise number and identification of the class members will be ascertainable from the defendant's records.

29.     There are questions of law and fact common to all members of the class. Those common questions include, but are not limited to, the following:

(i)     Are the fees imposed for PACER access excessive in relation to the cost of providing the access—that is, are the fees higher than "necessary" to "reimburse expenses incurred in providing the[] services" for which they are "charge[d]"? 28 U.S.C. § 1913 note.

(ii)    What is the measure of damages for the excessive fees charged?

30.     The plaintiffs' claims are typical of the claims of the class because they, like the class members, paid the uniform fees required by the defendant in order to access PACER.

31.     The plaintiffs will fairly and adequately protect the interests of the class because each of them has paid PACER fees during the class period, their interests do not conflict with the interests of the class, and they have obtained counsel experienced in litigating class actions and matters involving similar or the same questions of law.

32.     The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the plaintiffs' claims. Joinder of all members is impracticable. Furthermore, because the injury suffered by the individual class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## CLAIM FOR RELIEF: ILLEGAL EXACTION

33.     The plaintiffs bring this case under the Little Tucker Act, 28 U.S.C. § 1346(a), which waives sovereign immunity and "provides jurisdiction to recover an illegal exaction by government officials when the exaction is based on an asserted statutory power." *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572–74 (Fed. Cir. 1996) (allowing an illegal-exaction claim for excess user fees). Courts have long recognized such an "illegal exaction" claim—a claim that money was "improperly paid, exacted, or taken from the claimant" in violation of a statute, *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005)—regardless of whether the statute itself creates an express cause of action. As one court has explained, "the lack of express money-mandating language in the statute does not defeat [an] illegal exaction claim" because "otherwise, the Government could assess any fee or payment it wants from a plaintiff acting under the color of a statute that does not expressly require compensation to the plaintiff for wrongful or illegal action by the Government, and the plaintiff would have no recourse." *N. Cal. Power Agency v. United States*, 122 Fed. Cl. 111, 116 (2015).

34.     Here, each download of a public record for which the plaintiffs agreed to incur a fee, and were in fact charged a fee, gives rise to a separate illegal-exaction claim. The fees charged by the defendant for the use of PACER exceeded the amount that could be lawfully charged, under the E-Government Act of 2002 and other applicable statutory authority, because they did not reasonably reflect the cost to the government of the specific service for which they are charged. The plaintiffs are entitled to the return or refund of the excessive PACER fees illegally exacted or otherwise unlawfully charged.

### PRAYER FOR RELIEF

The plaintiffs request that the Court:

a.   Certify this action as a class action under Federal Rule of Civil Procedure 23(b)(3);

b.  Declare that the fees charged for access to records through PACER are excessive;

c.  Award monetary relief for any PACER fees collected by the defendant in the past six

    years that are found to exceed the amount authorized by law;

d.  Award the plaintiffs their costs, expenses, and attorney fees under 28 U.S.C. § 2412

    and/or from a common fund; and

e.  Award all other appropriate relief.

                                    Respectfully submitted,

                                    */s/ Deepak Gupta*
                                    DEEPAK GUPTA (D.C. Bar No. 495451)
                                    JONATHAN E. TAYLOR (D.C. Bar No. 1015713)
                                    **GUPTA WESSLER PLLC**
                                    1735 20th Street, NW
                                    Washington, DC 20009
                                    Phone: (202) 888-1741
                                    Fax: (202) 888-7792
                                    *deepak@guptawessler.com, jon@guptawessler.com*

                                    MICHAEL T. KIRKPATRICK (D.C. Bar No. 486293)
                                    **INSTITUTE FOR PUBLIC REPRESENTATION**
                                    Georgetown University Law Center
                                    600 New Jersey Avenue, Suite 312
                                    Washington, DC 20001
                                    Phone: (202) 662-9535
                                    Fax: (202) 662-9634
                                    *michael.kirkpatrick@law.georgetown.edu*

                                    WILLIAM H. NARWOLD (D.C. Bar No. 502352)
                                    **MOTLEY RICE LLC**
                                    3333 K Street NW, Suite 450
                                    Washington, DC 20007
                                    Phone: (202) 232-5504
                                    Fax: (202) 232-5513
                                    *bnarwold@motleyrice.com*

April 21, 2016                      *Attorneys for Plaintiffs*