# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL VETERANS LEGAL
SERVICES PROGRAM, NATIONAL
CONSUMER LAW CENTER, and
ALLIANCE FOR JUSTICE, for themselves
and all others similarly situated,
                                    *Plaintiffs*,

                    v.                                    Case No. 16-745-ESH

UNITED STATES OF AMERICA,
                                    *Defendant*.

**DECLARATION OF JONATHAN E. TAYLOR IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

I, Jonathan E. Taylor, declare as follows:

1.      I am a principal at Gupta Wessler PLLC and am one of the lead attorneys

for the plaintiffs.

2.      Attached as Exhibit A is a true and correct copy of a letter from Senator

Lieberman to Senators Richard Durbin and Susan Collins, dated March 25, 2010,

expressing "concerns about how the Administrative Office of the Courts is interpreting a

key provision of the E-Government Act relating to public access to Court records." I

obtained the letter from the website of the U.S. Senate Committee on Homeland Security

& Governmental Affairs, http://1.usa.gov/1NQ6u0v.

3.      Attached as Exhibit B is a true and correct copy of a letter from Senator

Joseph Lieberman to Judge Lee Rosenthal, dated February 27, 2009, in which Senator

Lieberman asks whether the PACER system—which generates revenue that is "well

higher than the cost of dissemination"—complies with the E-Government Act of 2002. I obtained the letter from Public.Resource.org, http://bit.ly/23jXRx0.

4.      My colleague Stephanie Garlock and I created the graph of PACER revenue over time that appears at page 8 of the motion for class certification. We created the graph using data from the Judicial Branch appendix to the annual Budget of the United States Government, published on the U.S. Government Publishing Office's website, which can be accessed at http://1.usa.gov/1TFS4yZ. In each annual budget, the judiciary reports PACER revenue for past fiscal years as a receipt of the Judiciary Information Technology Fund—specifically, as "Proceeds from Sale of Property, Judiciary Information Technology Fund."[1]

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on May 2, 2016.

*/s/ Jonathan E. Taylor*
_____
Jonathan E. Taylor

---

[1] We used the following documents as sources, with each fiscal year budget providing data on the most recently completed fiscal year (thus, for example, we used the FY 2015 data found in the FY 2017 budget): FY 2017 (http://1.usa.gov/1OaQ8u3); FY 2016 (http://1.usa.gov/23j6FDi); FY 2015 (http://1.usa.gov/24u9QdT); FY 2014 (http://1.usa.gov/1rNqvva); FY 2013 (http://1.usa.gov/26KRS8W); FY 2012 (http://1.usa.gov/1VH266J); FY 2011 (http://1.usa.gov/1SV1kPY); FY 2010 (http://1.usa.gov/1rdeNJj); FY 2009 (http://1.usa.gov/1SXlLib); FY 2008 (http://1.usa.gov/1X4ISXS); FY 2007 (http://1.usa.gov/26KSnzG); FY 2006 (http://1.usa.gov/1OaRhSy); FY 2005 (http://1.usa.gov/1WCIHTi); FY 2004 (http://1.usa.gov/1pWNP7K); FY 2003 (http://1.usa.gov/1TFT6Lw); FY 2002 (http://1.usa.gov/1VH2l1u); FY 2001 (http://1.usa.gov/1WCITly); FY 2000 (http://1.usa.gov/1TFTfhV).

# EXHIBIT A

JOSEPH I. LIEBERMAN, CONNECTICUT, CHAIRMAN

CARL LEVIN, MICHIGAN
DANIEL K. AKAKA, HAWAII
THOMAS R. CARPER, DELAWARE
MARK L. PRYOR, ARKANSAS
MARY L. LANDRIEU, LOUISIANA
CLAIRE McCASKILL, MISSOURI
JON TESTER, MONTANA
ROLAND W. BURRIS, ILLINOIS
EDWARD E. KAUFMAN, DELAWARE

SUSAN M. COLLINS, MAINE
TOM COBURN, OKLAHOMA
SCOTT BROWN, MASSACHUSETTS
JOHN McCAIN, ARIZONA
GEORGE V. VOINOVICH, OHIO
JOHN ENSIGN, NEVADA
LINDSEY GRAHAM, SOUTH CAROLINA

MICHAEL L. ALEXANDER, STAFF DIRECTOR
BRANDON L. MILHORN, MINORITY STAFF DIRECTOR AND CHIEF COUNSEL

## United States Senate

COMMITTEE ON
HOMELAND SECURITY AND GOVERNMENTAL AFFAIRS

WASHINGTON, DC 20510–6250

March 25, 2010

The Honorable Richard Durbin
Chairman
Subcommittee on Financial Services and General Government
Committee on Appropriations
184 Dirksen Senate Office Building
Washington, DC 20510

The Honorable Susan Collins
Ranking Member
Subcommittee on Financial Services and General Government
Committee on Appropriations
125 Hart Senate Office Building
Washington, DC 20510

Dear Chairman Durbin and Ranking Member Collins:

Thank you for affording me the opportunity to provide my views. I hope the following recommendations and comments will assist you as your subcommittee deliberates on the Financial Services and General Government Appropriations Bill for Fiscal Year 2011.

**Privacy and Civil Liberties Oversight Board**

I remain deeply concerned that the Administration has not yet nominated anyone for the Privacy and Civil Liberties Oversight Board, created by the 2004 Intelligence Reform and Terrorism Prevention Act, and reconstituted by the 2007 Implementing Recommendations of the 9/11 Commission Act. The 9/11 Commission recognized that without adequate oversight the vital work of combating terrorism could tread dangerously close to intruding on core rights and liberties, and urged creation of this Board to help advise on and review the nation's policies against terrorism with an eye toward safeguarding key freedoms. While we applaud the hard work of the original Board, in 2007 Congress concluded that the panel needed more independence and reconstituted it as an independent agency outside the Executive Office of the President. Unfortunately, the effort to create a stronger Board has, thus far, resulted in no board at all. I once again urge the President to put forward nominees for the Board without delay, and I urge the Appropriations Committee to fund it at a robust level. The authorizing legislation originally recommended funding of $10 million by FY 2011. While it is questionable that a new Board could effectively spend that much in its first year, I recommend that the Board receive funding to begin as strongly as feasible, certainly well above the President's request of $1.68 million.

The Hon. Richard Durbin
The Hon. Susan Collins
March 25, 2010
Page 2

## Office of Electronic Government and the Electronic Government Fund

This year the Administration requested $35 million in the General Services Administration (GSA) budget for the E-Government Fund for the establishment of pilots relating to cloud computing, collaborative platforms, and transparency and participation. In FY 2009 the Administration rolled out a number of ambitious initiatives, including data.gov, the IT Dashboard, and apps.gov, which have increased transparency and have begun to illustrate the potential for reducing costs and increasing transparency across the government by using information technology. The additional funds requested for FY 2010 will be used to further modernize government systems and pave the way for greater savings. For that reason, I fully support the Administration's request for $35 million for this effort.

In addition, the Administration has requested $50 million for the Integrated, Efficient and Effective Uses of Information Technology fund in the budget for the Office of Management and Budget (OMB). These funds would both further implement pilots originally developed under the E-Government Fund and assist with project management and guidance for information technology projects. While I believe this is an important goal and support the amounts requested, this funding should be included with the $35 million for the statutorily-created E-Government fund – which is required to report to Congress on its expenditures. Funding these initiatives, along with the additional project management tools, will lower costs and allow departments and agencies to provide additional services in less time. As a result, we are likely to see more results from our information technology expenditures and greater savings in future fiscal years.

Given the important role of the E-Government Office in managing these funds and its additional responsibilities, I also believe that the Congress should increase the appropriation for OMB to allow for additional staff for this office. Currently, the E-Government Office has approximately 13 FTEs with the statutory responsibility to manage the information technology budget across the entire Federal government – which will add up to over $79 billion in the FY 2011 budget request. In addition, the E-Government Office has responsibilities – shared with the Department of Homeland Security – over the security of Federal information systems, but has limited staff to assist in this key priority. Given the office's role, I recommend that the budget for OMB be increased by $3 million to allow for the hiring of additional staff in the E-Government Office.

## Public Access to Court Electronic Records (PACER)

I have concerns about how the Administrative Office of the Courts is interpreting a key provision of the E-Government Act relating to public access to Court records. Given the transparency efforts that have been made a priority across the Federal Government - as well as the recent call in the FCC's Broadband plan for increased online access to court records - I believe more attention needs to be paid to make these records free and easily accessible.

As you know, Court documents are electronically disseminated through the PACER system, which charges $.08-a-page for access. While charging for access was previously

The Hon. Richard Durbin
The Hon. Susan Collins
March 25, 2010
Page 3

required, Section 205(e) of the E-Government Act changed a provision of the Judicial
Appropriation Act of 2002 (28 U.S.C. 1913 note) so that courts "may, only to the extent
necessary" (instead of "shall") charge fees "for access to information available through
automatic data processing equipment." The Committee report stated: "[t]he Committee intends to
encourage the Judicial Conference to move from a fee structure in which electronic docketing
systems are supported primarily by user fees to a fee structure in which this information is freely
available to the greatest extent possible... Pursuant to existing law, users of PACER are charged
fees that are higher than the marginal cost of disseminating the information."

　　　Since the passage of the E-Government Act, the vision of having information "freely
available to the greatest extent possible" is far from being met, despite the technological
innovations that should have led to reduced costs in the past eight years. In fact, cost for these
documents has gone up, from $.07 to $.08-per-page. The Judiciary has attempted to mitigate the
shortcomings of the current fee approach in a variety of ways, including limiting charges to
$2.40-per-document and the recent announcement that any charges less than $10-per-quarter will
be waived. While these efforts should be commended, I continue to have concerns that these
steps will not dramatically increase public access as long as the pay-per-access model continues.

　　　To move closer to the mandate of the E-Government Act, the Administrative Office of
the Courts should reevaluate the current PACER pay-per-access model. Even to retrieve free
materials such as opinions, PACER currently requires the individual to establish a PACER
account. One goal of this review should be to create a payment system that is used only to
recover the direct cost of distributing documents via PACER. That review should also examine
how a payment system could allow for free bulk access to raw data that would allow increased
analytical and oversight capability by third parties.

　　　Additionally, in 2007, the Judiciary asked for and received written consent from the
Appropriations Committees to "expand use of Electronic Public Access (EPA) receipts to
support courtroom technology allotments for installation, cyclical replacement of equipment, and
infrastructure maintenance." As a result, funds collected by the $.08-per-page charge have been
used for initiatives that are unrelated to providing public access via PACER and against the
requirement of the E-Government Act. The Appropriations Committee should review the
Judiciary Information Technology Fund Report provided each year to ensure the funds generated
from PACER are only going to pay for the direct costs of disseminating documents via PACER,
and not for additional items which I believe should be funded through direct appropriations.

**Modernization of Acquisition Systems**

　　　I support the President's request for an additional $20.5 million for the General Services
Administration for the purpose of modernizing the Integrated Acquisition Environment (IAE),
which consists of eight major data systems, including the Federal Procurement Data System,
Federal Business Opportunities (FedBizOpps.gov), the Excluded Parties List, and the Past
Performance Information Retrieval System. These systems support over 40,000 federal
procurement professionals, 600,000 vendors, over $523 billion in annual procurement spending,
and over eight million transactions per year. Unfortunately, despite depending on the same

The Hon. Richard Durbin
The Hon. Susan Collins
March 25, 2010
Page 4

underlying data, these systems were developed over the years in a stove-piped manner and therefore are disjointed and difficult to use. Modernization of IAE will help the federal acquisition workforce make smarter contracting decisions and ensure that contracts are not awarded to irresponsible parties or to companies that have been debarred or suspended. In addition, providing easier access to information about federal procurement opportunities would enhance competition by attracting a larger pool of potential bidders. Finally, a modernized IAE would provide greater transparency to the American public and the Congress on federal contract spending. I am convinced that this investment in IAE will pay for itself over time.

**Acquisition Workforce**

The President's budget requests $24.9 million for the General Services Administration for government-wide efforts to strengthen the acquisition workforce through better training, certification, and workforce management. The number of acquisition professionals in the federal government simply has not kept pace with the explosive growth in federal contracting over the last decade. Moreover, more than half of the acquisition workforce will be eligible to retire over the next eight years. We therefore are fast approaching a crisis unless we recruit and train a skilled workforce that can promote competition, get the best value for the government, and guard against waste, fraud and abuse in federal contracting. I understand that there may be some unobligated balances in the Acquisition Workforce Training Fund that may be available to help fund the President's proposed initiative. While taking those funds into account, I urge the Committee to provide a sufficient amount to fund the proposed initiative.

**Office of Federal Procurement Policy**

I am extremely concerned that the Office of Federal Procurement Policy (OFPP) within the Office of Management and Budget lacks adequate personnel to carry out its mission of providing overall government-wide direction for procurement policies, regulations, and procedures. While total federal spending on goods and services has risen dramatically over the last decade, from $189 billion in 1999 to over $523 billion in 2009, the staffing level at OFPP has remained stagnant at roughly a dozen FTE's, including administrative support. Both under legislative mandate and at President Obama's direction, OFPP is responsible for reducing waste and abuse in contracting by promoting competition, preventing misuse of cost-plus contracts, bringing rationale to the interagency contracting process, mitigating conflicts of interest, and ensuring that inherently-governmental work is performed by federal employees. Each of these areas is highly complex and requires strong government-wide leadership from OFPP to bring greater efficiency and integrity to federal contracting. I therefore recommend that, at a minimum, the appropriation for OFPP be doubled, from $3 million to $6 million.

**United States Postal Service**

The United States Postal Service (USPS or Postal Service) continues to experience accelerated declines in mail volume and revenue, primarily due to the current economic crisis and the electronic diversion of mail. In fiscal year 2009, the Postal Service recorded a loss of $3.8 billion and USPS ended the first quarter of this fiscal year (October 1 to December 31,

The Hon. Richard Durbin
The Hon. Susan Collins
March 25, 2010
Page 5

2009) with a net loss of $297 million. The Postmaster General recently indicated that, without substantial changes, losses will be even more substantial going forward.

Therefore, as Congress works with the Postal Service on long-term solutions, I recommend that we consider providing the Postal Service with additional financial relief in FY 2011. One option, recommended by the Postal Service, is to allow USPS to restructure its required payments into the Postal Service Retiree Health Benefits Fund. Currently, the Postal Accountability and Enhancement Act (P.L. 109-435) requires the Postal Service to pre-pay its retiree health benefits obligations for future retirees into the Fund, while it makes payments for current retirees. Thus, restructuring the Postal Service's payments into the Fund would provide USPS with financial relief during this economic downturn.

## National Archives and Records Administration (NARA)

I support the $460 million in the President's budget request for the National Archives and Records Administration (NARA). The role of the National Archives in protecting and preserving our national heritage continues to be critical – particularly as the number of records it preserves and protects increases exponentially. Furthermore, in recent years, NARA has received many additional responsibilities, including the establishment of the National Declassification Center last year and the creation of the Office of Government Information Services to oversee Freedom of Information Act activities government-wide. In 2008, NARA was designated as the lead agency for the implementation of the Controlled Unclassified Information (CUI) framework, which is intended to streamline the use of sensitive, unclassified information within the federal government.

I also believe that the appropriation for the National Historical Publications and Records Commission (NHPRC) should be increased from $10 million to $13 million. The NHPRC supports the efforts of NARA to preserve and publish any material relating to the history of the United States. In the last Congress, this Committee passed the Presidential Historical Records Preservation Act of 2008 (P.L. 110-404), which gave additional responsibilities to the NHPRC to make grants to preserve records of former Presidents, provide online access to the documents of the founding fathers, and create a database for records of servitude, emancipation, and post-Civil War reconstruction. I believe these important missions require additional funding for the Commission to allow it to also continue its traditional role in protecting the records that define this country.

* * * * *

The Hon. Richard Durbin
The Hon. Susan Collins
March 25, 2010
Page 6

     I appreciate this opportunity to comment on issues of concern to the Committee on Homeland Security and Governmental Affairs.

Sincerely,

Joseph I. Lieberman
Chairman

# EXHIBIT B

JOSEPH I. LIEBERMAN, CONNECTICUT, CHAIRMAN

CARL LEVIN, MICHIGAN                          SUSAN M. COLLINS, MAINE
DANIEL K. AKAKA, HAWAII                       TED STEVENS, ALASKA
THOMAS R. CARPER, DELAWARE                    GEORGE V. VOINOVICH, OHIO
MARK L. PRYOR, ARKANSAS                       NORM COLEMAN, MINNESOTA
MARY L. LANDRIEU, LOUISIANA                   TOM COBURN, OKLAHOMA
BARACK OBAMA, ILLINOIS                        PETE V. DOMENICI, NEW MEXICO
CLAIRE McCASKILL, MISSOURI                    JOHN WARNER, VIRGINIA
JON TESTER, MONTANA                           JOHN E. SUNUNU, NEW HAMPSHIRE

MICHAEL L. ALEXANDER, STAFF DIRECTOR
BRANDON L. MILHORN, MINORITY STAFF DIRECTOR AND CHIEF COUNSEL

**United States Senate**

COMMITTEE ON
HOMELAND SECURITY AND GOVERNMENTAL AFFAIRS

WASHINGTON, DC 20510–6250

February 27, 2009

The Honorable Lee H. Rosenthal
Chair, Committee on Rules of Practice and Procedure
Judicial Conference of the United States
Washington, D.C. 20544

Dear Judge Rosenthal:

I am writing to inquire if the Court is complying with two key provisions of the E-Government Act of 2002 (P.L. 107-347) which were designed to increase public access to court records and protect the privacy of individuals' personal information contained in those records.

As you know, court documents are electronically released through the Public Access to Court Electronic Records (PACER) system, which currently charges $.08 a page for access. While charging for access was previously required, Section 205(e) of the E-Government Act changed a provision of the Judicial Appropriation Act of 2002 (28 U.S.C. 1913 note) so that courts "may, to the extent necessary" instead of "shall" charge fees "for access to information available through automatic data processing equipment."

The goal of this provision, as was clearly stated in the Committee report that accompanied the Senate version of the E-Government Act, was to increase free public access to these records. As the report stated: "[t]he Committee intends to encourage the Judicial Conference to move from a fee structure in which electronic docketing systems are supported primarily by user fees to a fee structure in which this information is freely available to the greatest extent possible. ... Pursuant to existing law, users of PACER are charged fees that are higher than the marginal cost of disseminating the information."

Seven years after the passage of the E-Government Act, it appears that little has been done to make these records freely available – with PACER charging a higher rate than 2002. Furthermore, the funds generated by these fees are still well higher than the cost of dissemination, as the Judiciary Information Technology Fund had a surplus of approximately $150 million in FY2006.[1] Please explain whether the Judicial Conference is complying with Section 205(e) of the E-Government Act, how PACER fees are determined, and whether the Judicial Conference is only charging "to the extent necessary" for records using the PACER system.

In addition I have concerns that not enough has been done to protect personal information contained in publicly available court filings, potentially violating another provision of the

---

[1] Judiciary Information Technology Fund Annual Report for Fiscal Year 2006

PAGE 2

E-Government Act.[2] A recent investigation by Carl Malamud of the non-profit Public.Resource.org found numerous examples of personal data not being redacted in these records. Given the sensitivity of this information and the potential for indentify theft or worse, I would like the court to review the steps they take to ensure this information is protected and report to the Committee on how this provision has been implemented as we work to increase public access to court records.

I thank you in advance for your time and I look forward to your response.

Sincerely,

Joseph I. Lieberman
Chairman

---

[2] Section 205(c)(3) requires that rules be developed to "protect privacy and security concerns relating to electronic filing of documents and the public availability under this subsection of documents filed electronically."