IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL VETERANS LEGAL
SERVICES PROGRAM, NATIONAL
CONSUMER LAW CENTER, and
ALLIANCE FOR JUSTICE, for themselves
and all others similarly situated,
                              *Plaintiffs*,

                v.

UNITED STATES OF AMERICA,
                              *Defendant*.

Case No. 16-745-ESH

## PLAINTIFFS' OPPOSITION TO THE GOVERNMENT'S MOTION TO DISMISS

If a friend were to complain that a restaurant is "overpriced," you would know what she means: the prices on the menu are too high. Nobody would think that, if she were to take her complaint to a waiter, he would (or could) lower those prices. The prices were presumably set by the management or, if the restaurant is a chain, by the chain's corporate headquarters.

But it would be a very different story if the friend's complaint were instead that, whenever she orders a glass of a particular type of wine at that restaurant, she is incorrectly billed for the full bottle—because of an error in the restaurant's billing software. This second complaint, unlike the first, is not that the restaurant's prices are too high. Rather, the complaint is that the restaurant is charging a small subset of customers more than the menu price for a particular item. In that scenario, asking the waiter to correct the bill might make perfect sense.

Understanding the distinction between these two types of complaints is all that is needed to dispose of the government's motion to dismiss in this case. That motion—much of it adopted verbatim from the government's motion to dismiss in *Fisher v. United States*, No. 15-1575C, ECF No. 11 (Fed. Cl.) (attached as Exhibit A)—is entirely predicated on the mistaken belief that the

plaintiffs here are just like the friend in the second scenario, complaining about a billing error. But, as we made clear in our complaint (at 2 n.1 and throughout), the three nonprofit plaintiffs in this case are actually like the friend in the first scenario: They allege that PACER's fees are set too high, at amounts that far exceed the cost of providing access, in contravention of the E-Government Act of 2002. *See generally* ECF No. 1 (attached as Exhibit B). The government's basic misunderstanding of the nature of the plaintiffs' claims infects all of its arguments for dismissal.

**1. The first-to-file rule is inapplicable.** The government's lead argument (at 12–13) is that the Court should dismiss this case under the "first-to-file rule" because a different case—filed by a different plaintiff in a different court—also involves PACER fees. *See Fisher v. United States*, No. 15-1575C (Fed. Cl.). But that case is nothing like this one. It falls instead into the second scenario mentioned above: a complaint of a "systemic billing error" in a narrow category of transactions. ECF No. 8 in *Fisher* (attached as Exhibit C), at 10; *see id.* at 2 (alleging that "the PACER billing system contains an error").

The plaintiff in *Fisher* challenges a particular aspect of the formula that PACER uses to convert docket reports to billable pages (which is necessary because docket reports, unlike case filings, are in HTML format and not PDF). He claims that the formula miscalculates the number of billable pages by "counting the number [of] bytes in the case caption" more than once, causing everyone who accesses a docket page from a case with a caption of "more than 850 characters" to be billed an extra page or two. *Id.* at 10. He does *not*, however, challenge the PACER fee schedule itself, as our case does. On the contrary, he claims that the government *violated* the fee schedule—and hence its contractual obligations to PACER users—by charging for more pages than permissible to access certain docket reports. That narrow "billing error" theory is wholly distinct from the legal theory in this case.

So the first-to-file rule has no application here. First-to-file rules serve "to prevent copycat litigation," *U.S. ex rel. Heath v. AT&T*, 791 F.3d 112, 123 (D.C. Cir. 2015)—not to force the dismissal of different claims by different parties seeking different relief based on different legal theories. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("[T]he general principle is to avoid duplicative litigation."). If the facts and legal issues do not "substantially overlap," dismissal is improper. *In re Telebrands Corp.*, — F.3d —, 2016 WL 3033331, *2 (Fed. Cir. 2016). Here, neither the facts nor the "core issue" in each case is the same. *Int'l Fidelity Ins. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 678 (5th Cir. 2011). As just explained, *Fisher* focuses on the correctness of the government's formula for converting case captions to billable pages in docket sheets. And should the plaintiff in that case successfully seek class certification, he will, by operation of Court of Federal Claims Rule 23, represent only those people who affirmatively opt in to the class by filing written consent, and who accessed docket sheets in cases with captions of more than 850 characters (assuming they can be easily identified).

This case, by sharp contrast, focuses on whether the PACER fee schedule *itself* violates the E-Government Act and, if so, what the difference is between the aggregate amount the government collects in fees and the aggregate costs it incurs in providing access. *See* Electronic Pubic Access Fee Schedule, *available at* http://bit.ly/2aAPtsq. And the three nonprofit plaintiffs have already moved to certify this case as an opt-out class under Federal Rule of Civil Procedure 23, meaning that (should they be successful) they will represent all PACER users who paid a fee during the statute-of-limitations period and do not affirmatively opt out of the case. Given these enormous differences between the two cases, the first-to-file rule has no bearing here.[1]

---

[1] A third case—brought by the same plaintiff as in *Fisher*, pressing the exact same claims on the exact same legal theories, and seeking to represent a virtually "identical" class—was dismissed on first-to-file grounds. *See Fisher v. Duff*, No. 15-cv-5944, 2016 WL 3280429, *2 (W.D. Wash. June 15, 2016). That case really was *Fisher II*. This one is not.

**2. The contract's billing-error-notification provision is irrelevant.** The government also contends (at 13) that the plaintiffs cannot bring this suit because PACER's own terms and conditions require them to first "alert the PACER Service Center to any error in billing within 90 days of the date of the bill." In the government's view, this is a "condition precedent" that must be satisfied "before a contractual right accrues or a contractual duty arises." Mot. 14. But even assuming that were true, we have not violated any such "contractual obligation," *id.* at 4, because we are not alleging any "billing error" under the PACER fee schedule. We are instead challenging the fee schedule itself. Nor are we alleging that the government has violated any *contractual* duty to ensure that fees charged do not exceed the cost of providing access. Our theory, rather, is that the government has a *statutory* obligation to do so.

The government's contractual-exhaustion argument might make sense in a case alleging a billing error, where the plaintiffs' theory is that the government breached its contractual obligations. In that context, it might very well be reasonable to take the position that, before a party may bring suit based on an alleged violation of a contractual duty, that party must first avail itself of contractual remedies. And indeed, in *Fisher*, the government has pressed an argument of just this stripe. *See* Ex. A, at 7–10. But cut and pasted into *this* case, *see* Mot. 14–15, the argument is not just meritless—it is entirely beside the point.[2]

At any rate, it would be a fool's errand to force the plaintiffs in this case to first bring their claims to the attention of a customer-service representative at the PACER Service Center. *Cf. McNeese v. Bd. of Educ. for Cmty. Unit Sch. Dist. 187*, 373 U.S. 668, 675 (1963) (students seeking

---

[2] This is not to say that we agree with the government's position in *Fisher* that the billing-error-notification provision is in fact a condition precedent to bringing a contractual claim based on a billing error—a claim, once again, that is not at issue here. As the plaintiffs in *Fisher* argue, the notification provision does not use the kind of clear, unambiguous language that is generally necessary to create a condition precedent. Instead, the provision may simply reflect an internal policy encouraging PACER users to call customer service promptly if they want their bill to be fixed administratively (that is, without filing a lawsuit).

school integration need not file complaint with superintendent because exhaustion would be futile where the "Superintendent himself apparently has no power to order corrective action"). Although the government imagines a scenario in which the plaintiffs would "engage in a dialog with those at the PACER Service Center" regarding any "concerns about the accuracy of the PACER bill," *id.* at 15, the plaintiffs do not challenge the "accuracy" of their bill—they challenge the *legality* of it, even if it accurately reflects the fees on the schedule. Even the government does not assert that a call to PACER's customer-service hotline could redress that grievance. Just as a waiter lacks authority to lower menu prices at Ruth's Chris Steakhouse, a representative at the PACER call center lacks authority to overrule a fee schedule adopted by the Administrative Office of the U.S. Courts.

In a last-ditch effort, the government advances a variant of this "exhaustion" requirement at the end of its motion, to no better effect. Again echoing its *Fisher* briefing, it argues (at 16–19) that the plaintiffs have no statutory claim because the remedy is instead provided by PACER's terms and conditions, which "require all claims regarding billing error to be submitted to the PACER Service Center." But to repeat: we are *not* alleging a billing error, so "submitting the requisite paperwork to the PACER Service Center" would accomplish nothing. *Id.* at 17.

## CONCLUSION

The government's motion to dismiss should be denied.

Respectfully submitted,

*/s/ Deepak Gupta*
DEEPAK GUPTA (D.C. Bar No. 495451)
JONATHAN E. TAYLOR (D.C. Bar No. 1015713)
**GUPTA WESSLER PLLC**
1735 20th Street, NW
Washington, DC 20009
Phone: (202) 888-1741 / Fax: (202) 888-7792
*deepak@guptawessler.com, jon@guptawessler.com*

WILLIAM H. NARWOLD (D.C. Bar No. 502352)
**MOTLEY RICE LLC**
3333 K Street NW, Suite 450
Washington, DC 20007
Phone: (202) 232-5504 / Fax: (202) 232-5513
*bnarwold@motleyrice.com*

July 29, 2016                    *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2016, I filed this opposition brief through this Court's

CM/ECF system, and that all parties required to be served have been thereby served.

*/s/ Deepak Gupta*

Deepak Gupta