# Exhibit A

Case 1:16-cv-00745-PLF   Document 31-1   Filed 01/20/17   Page 2 of 378

Y 4.AP 6/1:
F 49/2/2016/PT.2

# ...S AND GENERAL GOVERNMENT APPROPRIATIONS FOR 2016



UNIV. OF MD COLLEGE PARK

3  1430  05797360  6

# HEARINGS

BEFORE A

## SUBCOMMITTEE OF THE

## COMMITTEE ON APPROPRIATIONS

## HOUSE OF REPRESENTATIVES

ONE HUNDRED FOURTEENTH CONGRESS

FIRST SESSION

SUBCOMMITTEE ON FINANCIAL SERVICES AND GENERAL GOVERNMENT
APPROPRIATIONS

**ANDER CRENSHAW, Florida,** *Chairman*

TOM GRAVES, Georgia
KEVIN YODER, Kansas
STEVE WOMACK, Arkansas
JAIME HERRERA BEUTLER, Washington
MARK E. AMODEI, Nevada
E. SCOTT RIGELL, Virginia

JOSÉ E. SERRANO, New York
MIKE QUIGLEY, Illinois
CHAKA FATTAH, Pennsylvania
SANFORD D. BISHOP, Jr., Georgia

NOTE: Under Committee Rules, Mr. Rogers, as Chairman of the Full Committee, and Mrs. Lowey, as Ranking
    Minority Member of the Full Committee, are authorized to sit as Members of all Subcommittees.

WINNIE CHANG, KELLY HITCHCOCK,
ARIANA SARAR, and AMY CUSHING,
*Subcommittee Staff*

## PART 2

### FY 2016 BUDGET JUSTIFICATIONS

|  | Page |
| --- | --- |
| **Executive Office of the President** | **1** |
| **The Judiciary** | **289** |



Printed for the use of the Committee on Appropriations



# SUPREME COURT OF THE UNITED STATES

## BUDGET ESTIMATES FOR FISCAL YEAR 2016
## CONGRESSIONAL SUBMISSION

290

**SUPREME COURT OF THE UNITED STATES**
**SUMMARY STATEMENT RELATING APPROPRIATION ESTIMATES TO THE CURRENT APPROPRIATION**

Fiscal Year 2015 Enacted Appropriation                          $  89,134,000

|  | 2015 Enacted Appropriation | Requirements 2016 Requested Appropriation | Requested Increase/Decrease |
|---|---|---|---|
| Salaries and Expenses 1/ | $ 77,494,000 | $ 78,274,000 | $ 780,000 |
| Care of the Building and Grounds | $ 11,640,000 | $ 9,953,000 | $ (1,687,000) |
| Totals | $ 89,134,000 | $ 88,227,000 | $ (907,000) |

Proposed Increase over Fiscal Year 2015 Enacted Appropriation          $      (907,000)

Total Requested Budget Authority, Fiscal Year 2016                       $  88,227,000

1/ The Salaries and Expenses account includes both mandatory and discretionary funding.

1.1

SUPREME COURT OF THE UNITED STATES
*Salaries and Expenses*
SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | Mandatory | Discretionary | Total |
|---|---|---|---|
| **Fiscal Year 2015 Enacted Appropriation** | $2,527,000 | $74,967,000 | $77,494,000 |
| Fiscal Year 2016 Appropriation Request | $2,557,000 | $75,717,000 | $78,274,000 |
| Requested Increase from Fiscal Year 2015 Appropriation | $30,000 | $750,000 | $780,000 |

APPROPRIATION LANGUAGE

SUPREME COURT OF THE UNITED STATES

SALARIES AND EXPENSES

For expenses necessary for the operation of the Supreme Court, as required by law, excluding care of the building and grounds, including hire of passenger motor vehicles as authorized by 31 U.S.C. 1343 and 1344; not to exceed $10,000 for official reception and representation expenses; and for miscellaneous expenses, to be expended as the Chief Justice may approve, [$74,967,000] *$75,717,000*, of which *$2,000,000* shall remain available until expended.

In addition, there are appropriated such sums as may be necessary under current law for salaries of the chief justice and associate justices of the court.

1.2

292

**SUMMARY OF REQUEST**
**SUPREME COURT OF THE UNITED STATES**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2016**
(Dollar amounts in thousands)

**Fiscal Year 2016 Resource Requirements:**

| | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|
| | FTE | Amount | FTE | Amount | FTE | Amount |
| Fiscal Year 2015 Enacted Appropriation................. | 9 | 2,527 | 488 | 74,967 | 497 | 77,494 |

**Adjustments to Base to Maintain Current Services:**

Page
No.

**A. Justices**
Pay and benefits cost adjustments

| | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|
| 1.15  1. Annualization of the 2015 pay adjustment (1.0% for three months)............ | | 5 | | | | 5 |
| 1.15  2. Proposed January 2016 pay adjustment (1.0% for nine months)............ | | 16 | | | | 16 |
| 1.16  3. Health benefits increase............ | | 8 | | | | 8 |
| 1.16  4. FICA increase............ | | 1 | | | | 1 |

**B. Court Support Personnel**
Pay and benefits cost adjustments

| | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|
| 1.16  5. Annualization of 2015 pay adjustment (1.0% for three months)............ | | | | 134 | | 134 |
| 1.16  6. Proposed January 2016 pay adjustment (1.0% for nine months)............ | | | | 404 | | 404 |
| 1.16  7. Promotions and within-grade increases............ | | | | 367 | | 367 |
| 1.16  8. Health benefits increase............ | | | | 132 | | 132 |
| 1.17  9. FICA increase............ | | | | 6 | | 6 |
| 1.17  10. FERS increase............ | | | | 38 | | 38 |
| 1.17  11. One more compensable day............ | | | | 206 | | 206 |

**C. Other Adjustments**
General inflationary adjustments

| | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|
| 1.17  12. Inflationary increases in charges for contracts, services, supplies, and equipment. | | | | 268 | | 268 |
| 1.17  13. Library services............ | | | | 64 | | 64 |
| 1.17  14. Non-recurring unemployment benefits costs............ | | | | (32) | | (32) |
| 1.18  15. Finance system non-recurring costs............ | | | | (837) | | (837) |
| Subtotal, adjustments to base to maintain current services............ | | 30 | | 750 | | 780 |
| **Total Appropriation Required, Fiscal Year 2016.** | 9 | 2,557 | 488 | 75,717 | 497 | 78,274 |

1.3

1.4

## SUPREME COURT OF THE UNITED STATES
## SALARIES AND EXPENSES
## OBLIGATIONS BY ACTIVITY ($000)

| Activity | Fiscal Year 2014 Actual | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request |
|---|---|---|---|
| Salaries and Expenses, Total Obligations | 72,793 | 77,494 | 78,274 |
| Unobligated Balance, Start of the Year | · | · | · |
| Unobligated Balance, End of the Year | · | · | · |
| Unobligated Balance, Expiring | 2,184 | · | · |
| Available Appropriation | 74,977 | 77,494 | 78,274 |

### Object Classification ($000)

| Description | Fiscal Year 2014 Actual | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request |
|---|---|---|---|
| 11 Personnel compensation | 41,630 | 43,901 | 44,763 |
| 12 Personnel benefits | 13,572 | 15,241 | 15,697 |
| 13 Benefits of former personnel | · | 32 | · |
| 21 Travel | 506 | 500 | 508 |
| 22 Transportation of things | 14 | 67 | 68 |
| 23 Rent, communications and utilities | 1,222 | 1,141 | 1,159 |
| 24 Printing and reproduction | 368 | 423 | 430 |
| 25 Other services | 8,897 | 9,929 | 9,250 |
| 26 Supplies and materials | 2,612 | 2,435 | 2,474 |
| 31 Equipment | 3,972 | 3,825 | 3,925 |
| Total Obligations | 72,793 | 77,494 | 78,274 |

1.5

### SUPREME COURT OF THE UNITED STATES
### SALARIES AND EXPENSES
### RELATION OF OBLIGATIONS TO OUTLAYS ($000)

| | Fiscal Year 2014 Actual | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 72,793 | 77,494 | 78,274 | 780 |
| Obligated balance, start of year | 9,996 | 9,590 | 6,788 | (2,802) |
| Obligated balance, end of year | (9,590) | (6,788) | (6,236) | 552 |
| Net Outlays | 73,199 | 80,296 | 78,826 | (1,470) |

**Personnel Summary**

| | Fiscal Year 2014 Actual | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total compensable workyears: | | | | |
| Full-time equivalent employment | 497 | 497 | 497 | 0 |

## SUPREME COURT OF THE UNITED STATES
### SALARIES AND EXPENSES
### TECHNOLOGY FUND OBLIGATIONS AND FINANCING (NO-YEAR FUNDING)
#### ($000)

| Activity | Fiscal Year 2014 Actual | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request |
|---|---|---|---|
| Unobligated Balance, Start of the Year | 5,415 | 5,293 | 4,693 |
| New Deposits | 1,500 | 2,000 | 2,000 |
| Unobligated Balance, End of the Year | (5,293) | (4,693) | (4,693) |
| **Technology Fund, Total Obligations** | **1,622** | **2,600** | **2,000** |

Note:

FY 2014 Actuals:  Payroll migration in final stages of completion;  Began preparations for next Court-wide desktop platform rollout by beginning evaluation of Virtual Desktop Technology, upgrading and replacing end of life Security Information and Event Management System and end of life Intrusion Prevention System.

FY 2015 Projected:  Finalize planning and finalize technology evaluations for next desktop platform rollout; begin new Court-wide desktop implementation.

FY 2016 Request:  Continue new Court-wide desktop implementation; update security scanning products for electronic files entering the Court's network infrastructure.

Before the establishment of no-year funding, the Court encountered difficulties in planning technology upgrades because it lacked an assurance of available funds to commence and complete the upgrades. Congress's initiation of the no-year funding mechanism in fiscal year 2006 resolved that difficulty.  Under the no-year funding mechanism, technology fund balances have been built up in $2 million annual increments and spent when needed to accomplish scheduled technology upgrades, typically over four-year cycles.

1.6

CLEF-0067-12-2014

## Table SC.1
### Summary of Supreme Court Cases

| Term* | Case Filings During Term | Carried Over From Prior Term | Total Cases | Original & Paid | In Forma Pauperis | Total Cases Disposed Of | Total Cases Not Disposed Of |
|---|---|---|---|---|---|---|---|
| 1975 | 8,940 | 821 | 4,761 | 2,386 | 2,395 | 8,906 | 955 |
| 1980 | 4,174 | 970 | 5,144 | 2,778 | 2,371 | 4,265 | 889 |
| 1981 | 4,422 | 889 | 5,311 | 2,967 | 2,354 | 4,488 | 878 |
| 1982 | 4,201 | 878 | 5,079 | 2,727 | 2,352 | 4,201 | 878 |
| 1983 | 4,222 | 878 | 5,100 | 2,706 | 2,394 | 4,141 | 969 |
| 1984 | 4,047 | 969 | 5,016 | 2,590 | 2,416 | 4,251 | 745 |
| 1985 | 4,413 | 745 | 5,158 | 2,581 | 2,577 | 4,275 | 883 |
| 1986 | 4,240 | 888 | 5,128 | 2,559 | 2,564 | 4,348 | 775 |
| 1987 | 4,498 | 775 | 5,268 | 2,538 | 2,675 | 4,387 | 881 |
| 1988 | 4,776 | 881 | 5,687 | 2,599 | 3,068 | 4,829 | 828 |
| 1989 | 4,918 | 828 | 5,746 | 2,430 | 3,316 | 4,932 | 814 |
| 1990 | 5,602 | 814 | 6,316 | 2,365 | 3,951 | 5,412 | 904 |
| 1991 | 5,856 | 904 | 6,770 | 2,463 | 4,307 | 5,828 | 942 |
| 1992 | 6,303 | 942 | 7,245 | 2,453 | 4,792 | 6,356 | 889 |
| 1993 | 6,897 | 889 | 7,786 | 2,454 | 5,332 | 6,682 | 1,104 |
| 1994 | 6,996 | 1,104 | 8,100 | 2,628 | 5,574 | 7,132 | 968 |
| 1995 | 6,597 | 968 | 7,565 | 2,467 | 5,098 | 6,599 | 966 |
| 1996 | 6,684 | 966 | 7,600 | 2,485 | 5,165 | 6,689 | 911 |
| 1997 | 6,781 | 911 | 7,692 | 2,489 | 5,258 | 6,718 | 974 |
| 1998 | 7,109 | 974 | 8,083 | 2,894 | 5,689 | 7,015 | 1,068 |
| 1999 | 7,377 | 1,068 | 8,445 | 2,421 | 6,024 | 7,382 | 1,113 |
| 2000 | 7,852 | 1,113 | 8,965 | 2,314 | 6,651 | 7,713 | 1,252 |
| 2001 | 7,924 | 1,252 | 9,176 | 2,218 | 6,958 | 8,025 | 1,151 |
| 2002 | 8,255 | 1,151 | 9,406 | 2,197 | 7,209 | 8,387 | 1,089 |
| 2003 | 7,814 | 1,089 | 8,882 | 2,064 | 6,818 | 7,791 | 1,092 |
| 2004 | 7,496 | 1,092 | 8,588 | 2,045 | 6,543 | 7,508 | 1,087 |
| 2005 | 8,521 | 1,087 | 9,608 | 2,033 | 7,575 | 8,209 | 1,399 |
| 2006 | 8,857 | 1,399 | 10,256 | 2,075 | 8,181 | 8,895 | 1,361 |
| 2007 | 8,241 | 1,361 | 9,602 | 1,974 | 7,628 | 8,375 | 1,227 |
| 2008 | 7,738 | 1,228 | 8,966 | 1,945 | 7,021 | 7,824 | 1,142 |
| 2009 | 8,159 | 1,142 | 9,301 | 1,918 | 7,388 | 8,096 | 1,205 |
| 2010 | 7,857 | 1,205 | 9,062 | 1,895 | 7,167 | 7,828 | 1,234 |
| 2011 | 7,718 | 1,289 | 8,982 | 1,870 | 7,082 | 7,656 | 1,296 |
| 2012 | 7,509 | 1,297 | 8,806 | 1,809 | 6,997 | 7,602 | 1,234 |
| 2013 | 7,376 | 1,204 | 8,680 | 1,874 | 6,706 | 7,547 | 1,133 |
| 2014** | 7,273 | 1,033 | 8,306 | 1,880 | 6,476 | 7,226 | 1,080 |

*October Term 2014 corresponds with fiscal year 2015.
**Projection for full Term.

1.7

297

18

CLEP-067A-12-2013

### Table SC.2
### Summary of Case Dispositions

| Term | Cases Granted Review | | Cases Reviewed and Decided Without Argument During Term | Cases Granted Review During Term |
|------|-----------------------|------------------------|----|----|
| | Argued This Term | Disposed of by Opinion | | |
| 1979 | 179 | 178 | 184 | 172 |
| 1980 | 154 | 162 | 122 | 188 |
| 1981 | 184 | 170 | 126 | 201 |
| 1982 | 183 | 174 | 119 | 179 |
| 1983 | 184 | 174 | 81 | 149 |
| 1984 | 175 | 169 | 73 | 185 |
| 1985 | 171 | 171 | 106 | 187 |
| 1986 | 175 | 174 | 109 | 167 |
| 1987 | 167 | 160 | 87 | 180 |
| 1988 | 170 | 168 | 107 | 147 |
| 1989 | 146 | 146 | 80 | 123 |
| 1990 | 125 | 125 | 116 | 141 |
| 1991 | 127 | 123 | 77 | 121 |
| 1992 | 116 | 115 | 113 | 97 |
| 1993 | 99 | 99 | 70 | 99 |
| 1994 | 94 | 94 | 69 | 96 |
| 1995 | 90 | 90 | 120 | 106 |
| 1996 | 90 | 90 | 88 | 87 |
| 1997 | 96 | 94 | 61 | 90 |
| 1998 | 90 | 88 | 59 | 81 |
| 1999 | 83 | 79 | 64 | 92 |
| 2000 | 86 | 85 | 127 | 99 |
| 2001 | 88 | 85 | 72 | 88 |
| 2002 | 84 | 79 | 66 | 91 |
| 2003 | 91 | 89 | 82 | 87 |
| 2004 | 87 | 85 | 826 | 80 |
| 2005 | 90 | 82 | 105 | 78 |
| 2006 | 78 | 74 | 280 | 77 |
| 2007 | 75 | 72 | 208 | 95 |
| 2008 | 87 | 83 | 95 | 88 |
| 2009 | 82 | 77 | 95 | 79 |
| 2010 | 86 | 83 | 84 | 90 |
| 2011 | 79 | 75 | 187 | 66 |
| 2012 | 77 | 76 | 88 | 83 |
| 2013 | 79 | 77 | 72 | 76 |
| 2014* | 75 | 74 | 60 | 78 |

*Projection for full Term.

298

**Table SC.3**
**Applications to Individual Justices,**
**Including Capital Cases**

| Term | Applications for Relief to Individual Justices | Chambers Opinions | Applications for Stay in Capital Cases* |
|---|---|---|---|
| 1975 | 1,105 | 10 | 0 |
| 1980 | 1,096 | 11 | 32 |
| 1981 | 1,145 | 7 | 39 |
| 1982 | 1,077 | 19 | 45 |
| 1983 | 1,072 | 14 | 76 |
| 1984 | 982 | 11 | 62 |
| 1985 | 1,050 | 6 | 66 |
| 1986 | 951 | 11 | 86 |
| 1987 | 1,001 | 8 | 90 |
| 1988 | 1,064 | 5 | 71 |
| 1989 | 929 | 0 | 71 |
| 1990 | 984 | 8 | 55 |
| 1991 | 988 | 1 | 74 |
| 1992 | 974 | 2 | 76 |
| 1993 | 1,113 | 6 | 79 |
| 1994 | 992 | 5 | 82 |
| 1995 | 1,067 | 5 | 87 |
| 1996 | 985 | 1 | 110 |
| 1997 | 985 | 1 | 115 |
| 1998 | 1,100 | 0 | 188 |
| 1999 | 1,085 | 0 | 182 |
| 2000 | 1,145 | 1 | 87 |
| 2001 | 1,006 | 2 | 91 |
| 2002 | 1,096 | 3 | 99 |
| 2003 | 1,064 | 2 | 86 |
| 2004 | 1,081 | 3 | 68 |
| 2005 | 1,238 | 2 | 112 |
| 2006 | 1,243 | 2 | 71 |
| 2007 | 1,094 | 8 | 20 |
| 2008 | 1,167 | 2 | 68 |
| 2009 | 1,288 | 2 | 60 |
| 2010 | 1,277 | 2 | 65 |
| 2011 | 1,256 | 1 | 61 |
| 2012 | 1,261 | 2 | 44 |
| 2013 | 1,286 | 1 | 78 |
| 2014** | 1,260 | 2 | 64 |

* Some applications addressed to a Justice are referred to the whole Court for decision.
** Projection for full Term.

CLER-0678-12-2014

1.9



SUPREME COURT OF THE US

Office of the Clerk

Cases on Docket By Type

No. of Cases

□ Original & Paid   ■ In Forma Pauperis

1.10




301



SUPREME COURT OF THE US    Office of the Clerk

Cases Docketed By Type

Civil
33%
2405

Habeas Corpus
32%
2332

Other
1%
103

Criminal
34%
2534

Term Year 2013

1.12

302





SUPREME COURT OF THE US

Office of the Clerk

Cases Docketed

Term Year 2013

Paid and Original
21%
1568

I.F.P.
79%
5808

1.14

# GENERAL STATEMENT AND INFORMATION

The Supreme Court Salaries and Expenses account funds salaries of the Chief Justice, eight Associate Justices, the Counselor to the Chief Justice, the four Statutory Officers of the Court, and the employees of the Court. The account also funds for the necessary expenses of the Court, including printing and binding of the Supreme Court reports, purchasing books for the Supreme Court and miscellaneous expenses. For fiscal year 2016, the Supreme Court Salaries and Expenses request fully funds current services for Court personnel and operations.

### Justification of Changes

The fiscal year 2016 budget request for the Court totals $78,274,000, which includes $2,557,000 for mandatory expenses and $75,717,000 for discretionary expenses. The discretionary request of $75,717,000 is a 1.0 percent increase over the fiscal year 2015 enacted discretionary appropriation of $74,967,000. This request includes inflationary adjustments of $1,619,000, and Court-initiated cost savings of $869,000, resulting in a net discretionary increase of $750,000. The budget request includes no-year funding for planning and implementing periodic Court-wide technology and automation upgrades totaling $2,000,000.

**Adjustments to base to maintain current services** include funds for pay and benefits increases for current Justices and staff. Also included are increased costs of ongoing activities such as travel, postage, supplies, law books, equipment, furnishings, automation, and offsite warehouse space for activities that include mail screening.

# ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

The following narrative provides information and justification for each of the adjustments to base for the Court.

## A. JUSTICES

### *Pay and Benefits Cost Adjustments*

#### 1. Annualization of January 2015 pay adjustment

**Mandatory Increase: $5,000**

As a result of the Employment Cost Index (ECI) adjustment, federal pay rates increased by 1.0 percent in January 2015. The requested increase provides for the cost of three months (from October 2015 to December 2015) of the 2015 pay increase in fiscal year 2016.

#### 2. Proposed January 2016 pay adjustment

**Mandatory Increase: $16,000**

As of January 2015, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.0 percent beginning on or after January 1, 2016. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2016 (from January 2016 to September 2016).

### 3. Health benefits increase

**Mandatory Increase: $8,000**

Based on the information from the Office of Personnel Management, health benefit premium contributions are projected to increase by an average of 3.2 percent in January 2015. The requested increase annualizes the 2015 premium increase, and includes a nine-month provision for an estimated 4.0 percent increase anticipated for fiscal year 2016.

### 4. FICA increase

**Mandatory Increase: $1,000**

Funds are requested to provide for the base adjustment in employer contributions to the Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax. The salary cap for OASDI increased to $117,000 in January 2014, and increased to $118,500 in January 2015. The requested amount is needed to pay the agency contribution.

### B. COURT SUPPORT PERSONNEL

### 5. Annualization of 2015 pay adjustment

**Requested Increase: $134,000**

As a result of the ECI adjustment, federal pay rates increased by 1.0 percent in January 2015. The requested increase provides for the cost of three months (from October 2015 to December 2015) of the 2015 pay increase in fiscal year 2016.

### 6. Proposed January 2016 pay adjustment

**Requested Increase: $404,000**

As of January 2015, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.0 percent beginning on or after January 1, 2016. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2016 (from January 2016 to September 2016).

### 7. Promotions and within-grade increases

**Requested Increase: $367,000**

The requested increase provides for promotions and within-grade increases for personnel. The salary plan for judicial support personnel provides for periodic within-grade increases for staff who receive at least a satisfactory performance rating.

### 8. Health benefits increase

**Requested Increase: $132,000**

Based on the information from the Office of Personnel Management, health benefit premium contributions are projected to increase by an average of 3.2 percent in January 2015. The requested increase annualizes the 2015 premium increase, and includes a nine-month provision for an estimated 4.0 percent increase anticipated for fiscal year 2016.

1.16

306

## C. OTHER ADJUSTMENTS

*General Inflationary Adjustments*

**12.  Inflationary increases in charges for contracts, services, supplies, and equipment**

**Requested Increase: $268,000**

Consistent with guidance from the Office of Management and Budget, this request of $268,000 is required to fund inflationary increases of 1.6 percent for operating expenses such as travel, communications, printing, contractual services, supplies and materials, and furniture and equipment.

**13.  Library services**

**Requested Increase: $64,000**

This increase is requested to cover estimated increases in the costs of library services, including law book accessions and continuations, and computer-assisted legal research.

**14.  Non-recurring unemployment benefit costs**

**Requested Decrease:  ($32,000)**

The Court requests a decrease of $32,000 associated with non-recurring unemployment benefits payments in fiscal year 2016.

**9.  FICA increase**

**Requested Increase: $6,000**

Funds are requested to provide for the base adjustment in employer contributions to the Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax. The salary cap for OASDI increased to $117,000 in January 2014, and increased to $118,500 in January 2015. The requested amount is needed to pay the agency contribution.

**10.  FERS increase**

**Requested Increase: $38,000**

Funds are requested for a 0.5 percent increase (from 13.2 percent to 13.7 percent) in the agency contribution rate to Federal Employee Retirement System (FERS) plans effective October 1, 2015.  The FERS increase is in accordance with revised estimates of the cost of providing benefits by the Board of Actuaries of the Civil Service Retirement and Disability System.

**11.  One more compensable day**

**Requested Increase: $206,000**

There is one more compensable day in fiscal year 2016 than in fiscal year 2015. The requested increase is for personnel compensation and benefits associated with one more compensable day.

1.17

1.18

**15. Finance system non-recurring costs**

**Requested Decrease: ($837,000)**

The Court requests a decrease of $837,000 for non-recurring costs associated with its new financial system. In fiscal year 2013, the Court began resource sharing with the Department of Interior's Interior Business Center (IBC) for its financial systems. In fiscal year 2014, this resource sharing initiative was expanded to include the Court's human resources and payroll systems as well. As a result of these innovations, the Court anticipates future savings in personnel, budget, and accounting costs.

308

1.19

**SUPREME COURT OF THE UNITED STATES**
*Care of the Building and Grounds*
**SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS**

| | |
|---|---|
| **Fiscal Year 2015 Enacted Appropriation** | **$11,640,000** |
| Fiscal Year 2016 Appropriation Request | $9,953,000 |
| Requested Decrease from Fiscal Year 2015 Appropriation | ($1,687,000) |

**APPROPRIATION LANGUAGE**

**SUPREME COURT OF THE UNITED STATES**

**CARE OF THE BUILDING AND GROUNDS**

For such expenditures as may be necessary to enable the Architect of the Capitol to carry out the duties imposed upon the Architect by 40 U.S.C. 6111 and 6112, [$11,640,000]*$9,953,000*, to remain available until expended.

1.20

SUMMARY OF REQUEST
SUPREME COURT OF THE UNITED STATES
CARE OF THE BUILDING AND GROUNDS
FISCAL YEAR 2016
(Dollar amounts in thousands)

| | | FTEs | Amount |
|---|---|---|---|
| **Fiscal Year 2016 Resource Requirements:** | | | |
| Fiscal Year 2015 Enacted Appropriation.................................................................. | | 50 | $11,640 |
| **Page No.** **Adjustments to Base to Maintain Current Services:** | | | |
| **A. Personnel and Personnel** | | | |
| 1.24 | 1. Annualization of 2015 pay adjustment (1.0% for three months)............................ | - | 9 |
| 1.24 | 2. Proposed January 2016, pay adjustment (1.0% for nine months)............................ | - | 36 |
| 1.24 | 3. Promotions and within-grades increases................................................ | - | 78 |
| 1.24 | 4. Health benefits increase............................................................. | - | 10 |
| 1.24 | 5. FICA increase....................................................................... | - | 2 |
| 1.24 | 6. FERS increase....................................................................... | - | 7 |
| 1.25 | 7. One more compensable day............................................................ | - | 18 |
| | **B. Other Adjustments** | | |
| 1.25 | 8. General inflationary increases........................................................ | - | 123 |
| 1.25 | 9. Reduction for non-recurring requirements............................................ | - | (2,500) |
| | Subtotal, Adjustments to Base to Maintain Current Services............................ | - | (2,217) |
| | Total Current Services Appropriation Required....................................... | 50 | 9,423 |
| | **C. Program Increases** | | |
| 1.25 | 10. Replace Variable Frequency Drive Motor Controllers................................ | - | 70 |
| 1.26 | 11. Increase Post-Modernization Interior and Exterior Maintenance Requirements......... | - | 460 |
| | Subtotal, Program Increases............................................................ | - | 530 |
| | Total Fiscal Year 2016 Appropriation Required....................................... | 50 | 9,953 |
| | Total Appropriation Change, Fiscal Year 2015 to Fiscal Year 2016...................... | - | (1,687) |

310

1.21

## SUPREME COURT OF THE UNITED STATES
## CARE OF THE BUILDING AND GROUNDS
### Obligations by Activity ($000)

| Activity | Fiscal Year 2014 Actual | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request |
|---|---|---|---|
| Care of Building and Grounds, Total Obligations | 14,995 | 13,690 | 12,230 |
| | | | |
| Unobligated Balance, Start of Year | (10,364) | (6,527) | (4,477) |
| Unobligated Balance, End of Year | 6,527 | 4,477 | 2,200 |
| | | | |
| Available Appropriation | 11,158 | 11,640 | 9,953 |

### Object Classification ($000)

| | Description | Fiscal Year 2014 Actual | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request |
|---|---|---|---|---|
| 11 | Personnel compensation | 3,204 | 3,472 | 3,592 |
| 12 | Personnel benefits | 1,075 | 1,165 | 1,205 |
| 21 | Travel and transportation of things | 6 | 5 | 5 |
| 23 | Rent, communications and utilities | 1,593 | 1,850 | 2,000 |
| 25 | Other services | 4,470 | 3,708 | 3,250 |
| 26 | Supplies and materials | 398 | 450 | 475 |
| 31 | Equipment | 0 | 0 | 0 |
| 32 | Land and structures | 755 | 3,040 | 1,703 |
| 42 | Claims and Indemnities | 3,495 | 0 | 0 |
| | **Total Obligations** | 14,995 | 13,690 | 12,230 |

311

1.22

## SUPREME COURT OF THE UNITED STATES
## CARE OF THE BUILDING AND GROUNDS
### Relation of Obligations to Outlays ($000)

|  | Fiscal Year 2014 Actuals | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 14,995 | 13,690 | 12,230 | (1,460) |
| Obligated balance, start of year | 15,645 | 15,376 | 14,741 | (635) |
| Obligated balance, end of year | (15,376) | (14,741) | (14,569) | 172 |
| Net Outlays | 15,264 | 14,325 | 12,402 | (1,923) |

### Personnel Summary[1]

|  | Fiscal Year 2014 Actual | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request | Difference |
|---|---|---|---|---|
| Total compensable workyears: | | | | |
| Full-time equivalent employment | 39 | 50 | 50 | 0 |

[1] Full-time equivalent numbers reflect payroll funded and project funded personnel.

## GENERAL STATEMENT AND INFORMATION

This appropriation, for expenditure by the Architect of the Capitol, provides for the structural and mechanical care of the United States Supreme Court Building and Grounds, including maintenance and operation of mechanical, electrical, and electronic equipment. The Architect is not responsible for custodial care, which is under the jurisdiction of the Marshal of the Supreme Court and is provided for in the Supreme Court's salaries and expenses appropriation. The Architect performs his duties under authority of 40 U.S.C. § 6111.

The equipment includes such items as air conditioning, refrigeration and ventilating systems with more than 1,000 pieces of equipment; electrical transformer stations and emergency power system; three hundred plumbing fixtures and related piping; nine elevators and five dumbwaiters; electrical fixtures and wiring; and electronic security equipment. In fiscal year 2016, a total of 50 full-time equivalents (FTE) are expected to cover three shifts daily.

Projects under the Architect of the Capitol relating to the buildings and grounds in the Capitol campus are included in the Legislative Branch budget. However, the projects pertaining to the Supreme Court, Care of the Building and Grounds are presented within the judiciary's budget request.

## Justification of Changes

The fiscal year 2016 budget request for the Supreme Court of the United States, Care of the Building and Grounds appropriation totals $9,953,000 and 50 FTE. This represents a decrease of $1,687,000 from the fiscal year 2015 enacted appropriation of $11,640,000.

**Adjustments to base to maintain current services** include an increase of $160,000 for proposed 2016 pay adjustments, within grade increases for staff paid under the general and wage board schedules, health benefits increase; $123,000 for general inflationary increases; and a decrease of $2.5 million for non-recurring requirements.

**Program increases** totaling $530,000 are requested to replace five variable frequency drive motor controllers associated with the building air handling systems, as well as provide funding for additional maintenance requirements resulting from the now complete Modernization project. Justification for the program increases begins on page 1.25.

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES:

### A. PERSONNEL AND PROGRAMS

#### 1. Annualization of 2015 pay adjustment

**Requested Increase:  $9,000**

As a result of the ECI adjustment, federal pay rates increased by an average of 1.0 percent in January 2015.  The requested increase provides for the cost of three months (from October 2015 to December 2015) of the 2015 pay increase in fiscal year 2016.

#### 2.  Proposed January 2016 pay adjustment

**Requested Increase:  $36,000**

As of January 2015, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.0 percent beginning on or after January 1, 2016.  The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2016 (from January 2016 to September 2016).

#### 3. Promotions and within-grade increases

**Requested Increase:  $78,000**

The requested increase provides for promotions and within-grade increases and other adjustments, such as career ladder pay increases for support personnel.  Increases for within-grades are authorized by 5 U.S.C.5102(c)(7), 5102(d), 5341-5349 for wage

board employees and by 5 U.S.C.5331-5336 for general schedule employees.

#### 4. Health benefits increase

**Requested Increase: $10,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by an average of 3.2 percent in January 2015.  The requested increase annualizes the 2015 premium increase, and includes a nine-month provision for an estimated 4.0 percent increase anticipated for fiscal year 2016.

#### 5.  FICA increase

**Requested Increase: $2,000**

Funds are requested to provide for the base adjustment in employer contributions to the Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax.  The salary cap for OASDI increased to $117,000 in January 2014, and increased to $118,500 in January 2015.  The requested amount is needed to pay for the agency contribution.

#### 6.  FERS increase

**Requested Increase:  $7,000**

Funds are requested for a 0.5 percent increase (from 13.2 percent to 13.7 percent) in the agency contribution rate to Federal Employee Retirement System (FERS) plans effective October 1, 2015.  The FERS increase is in accordance with

1.24

revised estimates of the cost of providing benefits by the Board of Actuaries of the Civil Service Retirement and Disability System.

### 7. One more compensable day

**Requested Increase: $18,000**

There is one more compensable day in fiscal year 2016 than in fiscal year 2015. The requested increase is for personnel compensation and benefits associated with one more compensable day.

## B. OTHER ADJUSTMENTS

### General Inflationary Adjustments

### 8. Inflationary increases in charges for contracts, services, supplies, and equipment

**Requested Increase: $123,000**

Consistent with guidance from the Office of Management and Budget, this request of $123,000 is required to fund inflationary increases of 1.6 percent for operating expenses such as travel, communications, printing, contractual services, supplies and materials, and furniture and equipment.

### 9. Reduction for non-recurring requirements

**Requested Decrease: ($2,500,000)**

The requested decrease is for non-recurring requirements funded in fiscal year 2015.

## C. PROGRAM INCREASES

### 10. Replace Variable Frequency Drive Motor Controllers

**Requested Increase: $70,000**

The requested increase of $70,000 provides funding to replace five variable frequency drive (VFD) motor controllers associated with the building air handling systems. There are 40 VFDs which were added with the modernization project, and these are beginning to approach the end of their lifecycle. The baseline adjustment incorporated an increase to replace five each year and maintain an eight year cyclical replacement of these systems. This one-time program increase will allow for funding to replace five additional systems in the first year due to equipment condition.

1.26

### 11. Increased Interior and Exterior Maintenance Requirements

**Requested Increase: $460,000**

The requested increase provides funding for maintenance requirements due to the increased number and complexity of systems introduced during the Modernization. This includes the continuous cyclical VFD replacement (per section C. 10) and new maintenance contracts for high speed doors, security barriers, and fire protection systems added by recently completed projects.

The majority of the exterior landscape had minimal maintenance requirements during construction of recent projects. With the completion of the landscape project, the entirety of the property was returned to the Court. Funding will be used to address the significant increase in the landscape and hardscape maintenance such as lawn care, annual plantings and snow removal.

In addition to routine maintenance requirements, the requested increase allows for Court directed projects to improve fixtures and finishes, as well as various infrastructure requirements that were not incorporated into the recently completed projects (e.g. energy efficient lighting and plumbing fixtures, upgrades to outdated kitchen equipment, office refurbishment due to organizational changes, and refinishing of various ornamental metalwork).

# The Judiciary

# Fiscal Year 2016

# Congressional Budget Summary

PREPARED BY
THE ADMINISTRATIVE OFFICE OF THE U.S. COURTS
WASHINGTON, DC
February 2015

# Foreword

## *Overview*

The Judiciary's fiscal year 2016 discretionary budget request of $7.0 billion is a 3.9 percent increase over the Judiciary's fiscal year 2015 enacted discretionary appropriations level of $6.7 billion.

## *Fiscal Year 2015*

The fiscal year 2015 funding levels will enable the Judiciary to continue to recover from the effects of sequestration experienced in fiscal year 2013. The Judicial Conference is grateful for the continued support of Congress in this difficult and constrained fiscal environment.

During fiscal year 2015, the courts will be able to maintain on-board staffing payroll and continue to backfill critical vacancies needed to meet workload demands. In addition, funding is sufficient to hire additional probation officers to address workload increases associated with a change in the U.S. Sentencing Guidelines that became effective on November 1, 2014. The change applies, going forward and retroactively, a two-level reduction in the drug quantity table used by judges to calculate prison sentences. The retroactive application of the new guidelines could result in the re-sentencing and early release of as many as 50,000 inmates over the next several years. Although offenders cannot be released from custody pursuant to the retroactive application of the amendment until November 1, 2015, additional probation officers are needed to prepare new sentencing reports for

judges to consider at re-sentencing proceedings over the next year, and, eventually, to supervise the offenders in the community once they are released, which requires pre-release planning and coordination with the Bureau of Prisons. Without the additional officers to be hired with these funds, prisoners potentially could be released into the community without proper supervision by probation officers, thus compromising public safety.

The fiscal year 2015 enacted funding also will allow federal defender organizations to maintain on-board staffing levels and continue to backfill many of the 400 positions lost because of sequestration. Adequate funding was also provided to fund fully fiscal year 2015 panel attorney payments authorized under the Criminal Justice Act.

Finally, the fiscal year 2015 appropriations will allow for adequate security at our courthouses and avoid any shortfalls for paying jurors (or performing their civic duty.

## *Fiscal Year 2016 Budget Request*

The fiscal year 2016 budget request will maintain current services across the Judiciary, continue the recovery and restoration of activities that were discontinued because of sequestration, and will permit investment in important new or upgraded program initiatives needed to support judicial operations.

$128 per hour to $134 per hour, effective January 2016. The annualized cost of this increase is $14.4 million. The Judiciary's request also includes an increase of $28.4 million over the enacted fiscal year 2015 level for the Court Security account to protect facilities, judges, court staff, and the public. This funding level will provide court facilities with the appropriate number of court security officers (CSO) and functional screening and security equipment, based on new CSO staffing standards recommended by the U.S. Marshals Service. This request includes $6.3 million to phase in these new standards.

For the Fees of Jurors account, the request is an increase of $0.2 million over the fiscal year 2015 enacted level. The Judiciary requests $4.0 million for a $10 increase to the daily juror attendance fee (from $40 to $50), effective January 2016, to compensate jurors more adequately for their services. The juror fee has not been increased since December 1990, even though the cost of living has increased significantly since that time.

*Cost Containment*

The Judiciary's aggressive cost-containment efforts are continuing, particularly with our General Services Administration (GSA) space program. The Judicial Conference has set a 3 percent target for the reduction of the Judiciary's space footprint by the end of fiscal year 2018. During the first year of implementation, the Judiciary's space footprint has been reduced by 0.8 percent. In support of further space reduction, the fiscal year 2016 request includes $25 million to continue the Integrated Workplace Initiative (IWI). The IWI examines how courts work, explores changing work styles, researches new and emerging technologies,

For the courts' Salaries and Expenses account, the Judiciary requests an increase of $190.1 million in discretionary appropriations over the fiscal year 2015 enacted level. This request includes funding to maintain court payrolls and hire staff to meet workload requirements. In addition, the Judiciary requests funds to continue to address backlogs in training for new probation and pretrial services officers and $15 million to expand evidence-based practices, including Staff Training Aimed at Reducing Re-arrest (STARR). Use of evidence-based practices furthers the reduction of recidivism rates.

The Judiciary's information technology (IT) investments have enhanced the judicial process and produced future cost savings or cost avoidances. Flat budgets followed by sequestration have resulted in deferrals of necessary investments to the Judiciary IT infrastructure. Like the courts' operations, the Judiciary IT program is recovering from sequestration, and the fiscal year 2016 budget request builds on this recovery. The Judiciary seeks $19.0 million as part of a multi-year effort to develop an enterprise-wide hosting and cloud computing initiative that will provide cost-efficient, centralized IT services to the courts and $7.0 million as an investment to replace the Judiciary's 14-year old e-mail system with an up-to-date, unified messaging system. The Judiciary expects to gain significant efficiencies from these two initiatives.

For the Defender Services account, the requested increase of $41.1 million over the fiscal year 2015 enacted level includes sufficient funding to support the projected number of representations for fiscal year 2016. The request includes a program increase of $1.8 million for a $6 per hour increase above inflation to the non-capital panel attorney rate (from

ii

identifies successful mobile working situations (e.g., probation officers working remotely in the field, rather than in the courthouse), and develops ways to support a better workspace environment with mobility strategies. Preliminary estimates suggest that the Judiciary's space reduction efforts could reduce our rent costs by approximately $30 million annually, once fully implemented.

*Courthouse Construction and Capital Security Improvements*

Because the Judiciary lacks independent real property authority, the Judiciary's courthouse construction and capital security projects are funded from the General Services Administration's (GSA) budget.

The Judiciary's courthouse construction request totals $517.4 million in fiscal year 2016 for the construction of three new courthouses: Nashville, Tennessee; Toledo, Ohio; and Charlotte, North Carolina; and the site and design of a new courthouse in Des Moines, Iowa.

The Judiciary is grateful to Congress for providing $20.0 million for capital security projects in fiscal year 2015. The

Julia S. Gibbons
United States Circuit Judge
for the Sixth Circuit Court of Appeals
Chair, Budget Committee of the
Judicial Conference of the United States

Judiciary requests $20 million for additional capital security projects in fiscal year 2016 to ameliorate security deficiencies in existing courthouse buildings where physical renovations are viable in lieu of construction of a new courthouse. The Capital Security Program is funded as a Special Emphasis Program within the GSA's Federal Buildings Fund.

The stable and consistent funding of these projects is crucial to addressing serious security risks that threaten the safety of the Judiciary and the public.

*Summary*

The Judiciary's fiscal year 2016 discretionary budget request of $7.0 billion is summarized in the following pages. It represents the funding levels needed to continue to recover from sequestration and maintain a strong judicial system. A more detailed description of the Judiciary's fiscal year 2016 request, as well as the requests for courthouse construction and capital security requirements, can be found in The Judiciary, Budget Estimates for Fiscal Year 2016, Congressional Submission.

James C. Duff
Director, Administrative Office
of the United States Courts
Secretary, Judicial Conference of the United States

# TABLE OF CONTENTS

| | Page |
|---|---|
| Foreword | i |
| Overview of the Judiciary | 1 |
| Fiscal Year 2016 Budget Summary - Details of Request | 5 |

**Summary Tables**

| | |
|---|---|
| Judiciary Appropriation Funding | 8 |
| Summary of FTE for FY 2014 - FY 2016 | 9 |
| FY 2016 Summary of Requested Changes | 10 |
| Outlays for FY 2014 – FY 2016 | 11 |

**Fiscal Year 2016 Budget Request Summaries by Appropriation**

Supreme Court of the United States

| | |
|---|---|
| Salaries and Expenses | 15 |
| Care of the Building and Grounds | 17 |
| United States Court of Appeals for the Federal Circuit | 19 |
| United States Court of International Trade | 21 |
| Salaries and Expenses | 23 |
| Defender Services | 35 |
| Fees of Jurors and Commissioners | 41 |
| Court Security | 45 |
| Administrative Office of the United States Courts | 51 |
| Federal Judicial Center | 55 |
| Payment to Judiciary Trust Funds | 55 |
| United States Sentencing Commission | 57 |
| Judiciary Appropriations Language | 59 |
| Title III Administrative Provisions | 63 |
| Title VI General Provisions | 65 |

**Judiciary Space Priorities for Fiscal Year 2016 Budget Request**

| | |
|---|---|
| Courthouse Construction | 67 |
| Capital Security Program | 69 |

v

# Overview of The Judiciary

The organization of the judiciary, the district and circuit boundaries, the places of holding court, and the number of federal judges are established by laws passed by Congress and signed by the President. The number of federal judges in each district and in the courts of appeals is authorized by Congress on the basis of workload.

In addition to the adjudication of cases, other related functions, such as the provision of criminal defense services and the supervision of offenders, are prescribed by statute. The following sections provide a brief overview of the work of the courts and other related activities of the Judicial Branch.

## United States Supreme Court

The United States Supreme Court consists of nine justices, one of whom is appointed as Chief Justice of the United States. The Supreme Court is the final arbiter in the federal court system.

## United States Courts of Appeals

There are 13 courts of appeals and 179 authorized appellate court judgeships nationwide. Twelve of the courts of appeals have jurisdiction over cases within a regional area or "circuit." The twelve regional courts of appeals review cases from the United States district courts and the United States Tax Court, and orders and decisions from a number of federal administrative agencies.



The Federal Judiciary

United States Supreme Court

U.S. Court of Appeals
12 Regional Circuit Courts of Appeals
1 U.S. Court of Appeals for the Federal Circuit

Trial Courts
U.S. District Courts
U.S. Bankruptcy Courts
U.S. Court of International Trade
U.S. Court of Federal Claims

Other Judiciary Entities/Programs
Probation and Pretrial Services
Defender Services
Court Security
Fees of Jurors and Commissioners
Administrative Office of the U.S. Courts
Federal Judicial Center
Judiciary Trust Funds
United States Sentencing Commission

1

**Probation and Pretrial Services**

Federal probation and pretrial services officers protect the public through the investigation and supervision of defendants and offenders within the federal criminal justice system. A pretrial services officer supervises defendants awaiting trial who are released into our communities and provides a source of information upon which the court can determine conditions of release or detention while criminal cases are pending adjudication. In support of sentencing determinations, which require both uniformity of practice and attention to individual circumstances, probation officers provide the court with reliable information concerning the offender, the victim, and the offense committed, as well as an impartial application of the sentencing guidelines. Probation officers supervise offenders sentenced to probation as well as offenders coming out of federal prison who are required to serve a term of supervised release.

**Defender Services**

The federal judiciary oversees and administers the federal defender and appointed counsel program, which provides legal representation and other services to persons financially unable to obtain counsel in criminal and related matters in federal court. The Sixth Amendment to the Constitution guarantees that "[i]n all criminal prosecutions the accused shall enjoy the right...to have the assistance of counsel for his defense." The Criminal Justice Act provides that courts shall appoint counsel from federal public and community defender organizations or from a panel of private attorneys ("panel attorneys") established by the court.

**Court Security**

The judiciary's Court Security appropriation funds protective guard services and security systems and equipment (or United States courthouses and other facilities housing federal court operations. These services are contracted for and managed by the Department of Justice's United States Marshals Service, with additional guard services provided by the Department of Homeland Security's Federal Protective Service.

**Fees of Jurors and Commissioners**

The judiciary receives funding to provide for the statutory fees and allowances of federal grand and petit jurors and for the compensation of land commissioners.

**Administrative Office of the U.S. Courts**

The Administrative Office of the U.S. Courts is the central support entity for the judicial branch. It has management oversight of the court security program, the probation and pretrial services program, and the defender services program. It supports the Judicial Conference of the United States in determining judiciary policies; develops new methods, systems, and programs for conducting the business of the federal courts efficiently and economically; develops and supports the application of technology; collects and analyzes statistics on the business of the federal courts for accurate planning and decisions about resource needs; provides financial management services and personnel and payroll support; and conducts audits and reviews to ensure the continued quality and integrity of federal court operations.

**Federal Judicial Center**

The Federal Judicial Center is the judiciary's research and education agency. The Center undertakes research and evaluation of judicial operations and procedures for both the committees of the Judicial Conference and the courts themselves. It provides judges, court personnel, and others orientation, continuing education and training through seminars; curriculum units for in-court use; monographs and manuals; and audio, video, and interactive media programs.

**Payment to Judiciary Trust Funds**

This appropriation finances annuity payments to retired bankruptcy judges and magistrate judges, U.S. Court of Federal Claims judges, and spouses and dependent children of deceased judicial officers.

**United States Sentencing Commission**

The U.S. Sentencing Commission promulgates sentencing policies, practices, and guidelines for the federal criminal justice system. The Chair, three Vice Chairs, and three other voting commissioners are appointed by the President with the advice and consent of the Senate.

326

# Budget Summary – Details of Request

The judiciary's appropriation request for fiscal year 2016 totals $7,533,364,000 (includes mandatory and discretionary), an increase of $285,218,000, or 3.9 percent over the fiscal year 2015 enacted appropriations. Of that increase, $20,737,000 is for mandatory appropriations (3.8 percent increase) and $264,481,000 is for discretionary appropriations (3.9 percent increase).

## Adjustments to Base (Mandatory Appropriations)

A $20.7 million increase is requested for mandatory Judiciary appropriations, as follows:

1.  An increase of $4.8 million (23.2 percent of base adjustments) is associated with an additional 15 senior judges FTE, an additional 6 active Article III judges FTE, and an additional 4 bankruptcy judges FTE.

2.  An increase of $4.1 million (19.8 percent of base adjustments) is for pay adjustments for Article III and bankruptcy judges for the Supreme Court, the Court of Appeals for the Federal Circuit, the Court of International Trade, and the S&E account, including the annualization of the fiscal year 2015 pay adjustment, a proposed January 2016 pay adjustment, and changes in benefits costs.

3.  An increase of $11.8 million (57.0 percent of base adjustments) is required for the Judiciary retirement trust funds accounts based on requirements calculated by an independent actuary.

## Adjustments to Base (Discretionary Appropriations)

A total of $209.0 million (79.0 percent) of the requested $264.5 million discretionary increase will provide for pay adjustments, inflation and other adjustments to base necessary to maintain current services.

Base adjustments include:

4.  An increase of $132.0 million (63.1 percent of the base adjustments) will provide for inflationary pay and benefit rate increases for magistrate and claims judges, judges' staff, and supporting personnel. This includes the annualization of the fiscal year 2015 pay adjustment, a proposed January 2016 pay adjustment, changes in benefit costs, cost-of-living rate increases for panel attorneys, and a wage rate adjustment for court security officers.

5.  An increase of $50.2 million (24.0 percent of base adjustments) is necessary to replace non-appropriated sources of funds used to support base requirements in fiscal year 2015 with direct appropriations. The judiciary will keep the Appropriations Subcommittees informed of any change in this estimate.

6.  An increase of $15.7 million (7.5 percent of base adjustments) will provide for increases in contract rates and other standard inflationary increases.

7. An increase of $13.8 million (6.6 percent of base adjustments) is for ongoing information technology requirements.

8. An increase of $11.0 million (5.3 percent of base adjustments) is associated with an additional 50 senior judges' staff, an additional 31 Article III judges' staff, and an additional 14 bankruptcy judges' staff.

9. A net increase of $9.7 million (4.7 percent of base adjustments) is requested for the annualization of new space delivered in fiscal year 2015, the cost of new space expected to be delivered in fiscal year 2016, space related inflation, and other space-related adjustments including tenant alterations.

10. An increase of $5.0 million (2.4 percent of base adjustments) is requested for high threat, high profile representations for the federal defender organizations.

11. An increase of $4.9 million (4.9 percent of base adjustments) is associated with adjustments to security systems and equipment requirements.

12. An increase of $2.4 million (1.1 percent of base adjustments) will provide for estimated increases in Federal Protective Service (FPS) security charges, based on rates established by FPS.

13. An increase of $0.5 million (0.2 percent of base requirements) will provide 2 additional case budgeting attorney positions for Defender Services and the

annualization of 6 positions at the U.S. Sentencing Commission and 10 additional court security officer positions funded in fiscal year 2015.

14. A net decrease of $24.7 million (-11.8 percent of base adjustments) is associated with an additional 19 FTE to support Federal Defender Organization requirements based on capital and non-capital weighted caseload projections offset by a projected decrease in panel attorney representations.

15. A decrease of $4.7 million (-2.3 percent of base adjustments) is associated with non-recurring costs for new judges in fiscal year 2015.

16. A decrease of $3.4 million (-1.6 percent of base adjustments) is associated with non-recurring requirements, including the new financial system at the Supreme Court ($0.9 million) and Care of the Building and Grounds account for the Supreme Court (-$2.5 million).

17. A net decrease of $3.2 million (-1.5 percent of base adjustments) is associated with a projected net change in available jurors.

18. A decrease of $0.2 million (-0.1 percent of base adjustments) is associated with anticipated savings in panel attorney costs for Defender Services as a result of the addition of two new case-budgeting attorney positions in fiscal year 2016.

6

**Program Increases (Discretionary Appropriations)**

The remaining $55.5 million (21.0 percent) of the requested increase is for program enhancements.

Program increases include:

19. An increase of $19.0 million (34.2 percent of program enhancements) will provide for the implementation of the enterprise hosting and cloud computing initiative, which will provide cost-efficient, centralized information technology services to the courts.

20. An increase of $15.0 million (27.0 percent of program enhancements) is requested to expand evidence based supervision practices, including Staff Training Aimed at Reducing Re-arrest (STARR), for all probation and pretrial services offices to further the reduction of recidivism rates.

21. An increase of $7.0 million (12.6 percent of program enhancements) is requested to upgrade the email and messaging system for the judiciary.

22. An increase of $4.6 million (8.2 percent of program enhancements) is requested for the phased implementation of the new court security officer staffing standards.

23. An increase of $4.0 million (7.2 percent of program enhancements) is requested to increase the daily juror attendance fee by $10 (from $40 to $50) for grand and petit jurors effective January 2016.

24. An increase of $1.9 million (3.4 percent of program enhancements) is requested for three additional Magistrate judges (3 FTE), nine support staff (9 FTE), and associated operating costs for San Francisco or San Jose, CA; Seattle or Tacoma, WA; and Tampa, FL.

25. An increase of $1.8 million (3.2 percent of program enhancements) will provide for a $6 hourly panel attorney rate increase from $128 per hour to $134 per hour for non-capital cases.

26. An increase of $1.0 million (1.8 percent of program enhancements) is requested to pay for court security-related information technology support services at the USMS.

27. An increase of $0.8 million (1.4 percent of program enhancements) is requested to increase the CSO class size at the Federal Law Enforcement Training Center (FLETC) and to increase the number of training days from three to five days.

28. An increase of $0.5 million (0.8 percent of program enhancements) is requested for the additional maintenance requirements due to the increased number and complexity of systems introduced during the Modernization project at the Supreme Court.

29. An increase of $0.1 million (0.1 percent of program enhancements) will replace five variable frequency drive motor controllers associated with the building air handling systems at the Supreme Court.

## THE JUDICIARY

**Judiciary Appropriation Funding ($000)**

| Appropriation Account | FY 2014 Enacted | | | FY 2015 Enacted | | | FY 2016 Request | | |
|---|---|---|---|---|---|---|---|---|---|
| | Mandatory | Discretionary | Total | Mandatory | Discretionary | Total | Mandatory | Discretionary | Total |
| Supreme Court | | | | | | | | | |
| Salaries and Expenses | 2,352 | 72,625 | 74,977 | 2,527 | 74,967 | 77,494 | 2,557 | 75,717 | 78,274 |
| Building and Grounds | - | 11,158 | 11,158 | - | 11,640 | 11,640 | - | 9,953 | 9,953 |
| Total, U.S. Supreme Court | 2,352 | 83,783 | 86,135 | 2,527 | 86,607 | 89,134 | 2,557 | 85,670 | 88,227 |
| Court of Appeals for the Federal Circuit | 2,688 | 29,600 | 32,288 | 2,893 | 30,212 | 33,105 | 2,922 | 30,841 | 33,763 |
| Court of International Trade | 1,797 | 19,200 | 20,997 | 1,981 | 17,807 | 19,788 | 2,005 | 18,145 | 20,150 |
| *Courts of Appeals, District Courts, and Other Judicial Services:* | | | | | | | | | |
| Salaries and Expenses | 377,098 | 4,658,830 | 5,035,928 | 399,361 | 4,846,818 | 5,246,179 | 408,215 | 5,036,338 | 5,444,553 |
| Vaccine Injury Trust Fund | - | 5,327 | 5,327 | - | 5,423 | 5,423 | - | 6,045 | 6,045 |
| Total, Salaries and Expenses | 377,098 | 4,664,157 | 5,041,255 | 399,361 | 4,852,241 | 5,251,602 | 408,215 | 5,042,383 | 5,450,598 |
| Defender Services | - | 1,044,394 | 1,044,394 | - | 1,016,499 | 1,016,499 | - | 1,057,616 | 1,057,616 |
| Fees of Jurors & Commissioners | - | 53,891 | 53,891 | - | 52,191 | 52,191 | - | 52,411 | 52,411 |
| Court Security | - | 497,500 | 497,500 | - | 513,975 | 513,975 | - | 542,390 | 542,390 |
| Subtotal, CADCOJS | 377,098 | 6,259,942 | 6,637,040 | 399,361 | 6,434,906 | 6,834,267 | 408,215 | 6,694,800 | 7,103,015 |
| Administrative Office of the U.S. Courts | - | 81,200 | 81,200 | - | 84,399 | 84,399 | - | 87,590 | 87,590 |
| Federal Judicial Center | - | 26,200 | 26,200 | - | 26,959 | 26,959 | - | 27,679 | 27,679 |
| Judicial Retirement Funds | 126,931 | - | 126,931 | 143,600 | - | 143,600 | 155,400 | - | 155,400 |
| United States Sentencing Commission | - | 16,200 | 16,200 | - | 16,894 | 16,894 | - | 17,540 | 17,540 |
| **Total Direct** | 510,866 | 6,510,798 | 7,021,664 | 550,362 | 6,692,361 | 7,242,723 | 571,099 | 6,956,220 | 7,527,319 |
| **Vaccine Injury Trust Fund** | - | 5,327 | 5,327 | - | 5,423 | 5,423 | - | 6,045 | 6,045 |
| **Total, Judiciary** | 510,866 | 6,516,125 | 7,026,991 | 550,362 | 6,697,784 | 7,248,146 | 571,099 | 6,962,265 | 7,533,364 |

8

**The Judiciary**
**Summary of FTE**

| Appropriation Account | FY 2014 Actual | | | FY 2015 Estimate | | | FY 2016 Request | | |
|---|---|---|---|---|---|---|---|---|---|
| | Mandatory | Discretionary | Total | Mandatory | Discretionary | Total | Mandatory | Discretionary | Total |
| Supreme Court | | | | | | | | | |
| Salaries and Expenses | 9 | 488 | 497 | 9 | 488 | 497 | 9 | 488 | 497 |
| Building and Grounds | - | 39 | 39 | - | 50 | 50 | - | 50 | 50 |
| Total, U.S. Supreme Court | 9 | 527 | 536 | 9 | 538 | 547 | 9 | 538 | 547 |
| Court of Appeals for the Federal Circuit | 12 | 130 | 142 | 12 | 139 | 151 | 12 | 139 | 151 |
| Court of International Trade | 9 | 61 | 70 | 9 | 71 | 80 | 9 | 71 | 80 |
| *Courts of Appeals, District Courts,* | | | | | | | | | |
| *and Other Judicial Services:* | | | | | | | | | |
| Salaries and Expenses | 1,765 | 25,839 | 27,604 | 1,793 | 26,453 | 28,246 | 1,818 | 26,560 | 28,378 |
| Vaccine Injury Trust Fund | - | - | - | - | - | - | - | - | - |
| Total, Salaries and Expenses | 1,765 | 25,839 | 27,604 | 1,793 | 26,453 | 28,246 | 1,818 | 26,560 | 28,378 |
| Defender Services | - | 2,416 | 2,416 | - | 2,722 | 2,722 | - | 2,742 | 2,742 |
| Fees of Jurors & Commissioners | - | - | - | - | - | - | - | - | - |
| Court Security | - | 58 | 58 | - | 72 | 72 | - | 72 | 72 |
| Subtotal, CADCOIS | 1,765 | 28,313 | 30,078 | 1,793 | 29,247 | 31,040 | 1,818 | 29,374 | 31,192 |
| Administrative Office of the U.S. Courts | - | 568 | 568 | - | 621 | 621 | - | 621 | 621 |
| Federal Judicial Center | - | 125 | 125 | - | 128 | 128 | - | 128 | 128 |
| Judicial Retirement Funds | - | - | - | - | - | - | - | - | - |
| United States Sentencing Commission | - | 89 | 89 | - | 96 | 96 | - | 99 | 99 |
| **Total Direct** | 1,795 | 29,813 | 31,608 | 1,823 | 30,840 | 32,663 | 1,848 | 30,970 | 32,818 |
| Reimbursables, AO | - | 432 | 432 | - | 466 | 466 | - | 466 | 466 |
| Reimbursables, FJC | - | - | - | - | 1 | 1 | - | 1 | 1 |
| **Total, Judiciary** | 1,795 | 30,245 | 32,040 | 1,823 | 31,307 | 33,139 | 1,848 | 31,437 | 33,285 |

9

**FY 2016 Summary of Requested Changes**

| | Supreme Court | | Federal Circuit | | International Trade | | Courts of Appeals, District Courts, and Other Judicial Services | | | | | | | | | | | | | | | | | | | Total Judiciary | |
| | | | | | | | Salaries and Expenses | | Defender Services | | Fees of Jurors and Commissioners | | Subtotal | | Administrative Office | | Fed Judicial Center | | Judiciary Trust Funds | | Sentencing Commission | | | |
| | FTE | ($000) | FTE | ($000) | FTE | ($000) | FTE | ($000) | FTE | ($000) | FTE | ($000) | FTE | ($000) | FTE | ($000) | FTE | ($000) | ($000) | | FTE | ($000) | FTE | ($000) |

*(Table contents illegible at available resolution)*

10

## THE JUDICIARY

### Outlays - FY 2014 to FY 2016
($000)

| Appropriation | FY 2014 | FY 2015 | FY 2016 | Outlay Spendout Rates | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | Yr 1 | Yr 2 | Yr 3 |
| **Supreme Court** | | | | | | |
| Discretionary | 70,847 | 77,760 | 76,269 | 80% | 20% | 0% |
| Mandatory | 2,352 | 2,557 | 2,557 | 100% | 0% | 0% |
| **Total, Salaries and Expenses** | 73,199 | 80,176 | 78,826 | | | |
| Buildings and Grounds | 15,364 | 14,335 | 12,402 | 68% | 12% | 20% |
| **Court of Appeals for the Federal Circuit** | | | | | | |
| Discretionary | 28,662 | 28,607 | 30,837 | 80% | 20% | 0% |
| Mandatory | 2,688 | 2,893 | 2,922 | 100% | 0% | 0% |
| **Total, Court of Appeals for the Federal Circuit** | 31,350 | 31,500 | 33,759 | | | |
| **Court of International Trade** | | | | | | |
| Discretionary | 18,713 | 17,263 | 18,252 | 95% | 5% | 0% |
| Mandatory | 1,797 | 1,981 | 2,035 | 100% | 0% | 0% |
| **Total, Court of International Trade** | 20,510 | 19,244 | 20,287 | | | |
| *Courts of Appeals, District Courts, and Other Judicial Services:* | | | | | | |
| Salaries and Expenses - Discretionary | 4,602,620 | 4,832,629 | 5,021,785 | 47% | 7% | 0% |
| Salaries and Expenses - Mandatory | 377,098 | 390,361 | 403,215 | 100% | 0% | 0% |
| **Total, Salaries and Expenses** | 4,979,718 | 5,222,990 | 5,420,000 | 47% | 3% | 0% |
| Defender Services | 962,368 | 1,026,093 | 1,056,000 | 99.5% | 0.5% | 0% |
| Fees of Jurors & Commissioners | 51,528 | 53,109 | 54,486 | 99.5% | 0.5% | 0% |
| Court Security | 483,279 | 494,000 | 514,000 | 80.0% | 20.0% | 0% |
| *Total, Courts of Appeals, District Courts, and Other Judicial Services* | 6,481,833 | 6,804,201 | 7,074,486 | | | |
| **Administrative Office of the United States Courts** | 75,816 | 79,000 | 87,990 | 94% | 6% | 0% |
| **Federal Judicial Center** | 25,243 | 31,496 | 27,340 | 95% | 5% | 0% |
| **Judicial Retirement Funds (MANDATORY)** | 126,931 | 143,609 | 155,480 | 100% | 0% | 0% |
| **United States Sentencing Commission** | 16,370 | 17,262 | 17,427 | 85% | 15% | 0% |
| Subtotal, Discretionary | 6,357,560 | 6,670,603 | 6,936,788 | | | |
| Subtotal, Mandatory | 510,866 | 550,262 | 571,090 | | | |
| **Total, Judiciary** | 6,868,226 | 7,220,965 | 7,507,887 | | | |

11

# Fiscal Year 2016 Request

# Summary by Appropriation

13

334

## U.S. Supreme Court
### Salaries and Expenses

| | FY 2016 Request | | | | | |
|---|---|---|---|---|---|---|
| | Mandatory | | Discretionary | | Total | |
| | FTE | ($000) | FTE | ($000) | FTE | ($000) |
| **FY 2015 Enacted Appropriation** | 9 | 2,527 | 488 | 74,967 | 497 | 77,494 |
| **Adjustments to Base** | - | 30 | - | 750 | - | 780 |
| **FY 2016 Appropriation Request** | 9 | 2,557 | 488 | 75,717 | 497 | 78,274 |

**Budget Summary**

The Supreme Court requests $78.3 million ($2.6 million for mandatory expenses and $75.7 million for discretionary expenses) for fiscal year 2016.

The $75.7 million request for discretionary appropriations represents a 1.0 percent increase over the fiscal year 2015 enacted discretionary appropriation. The Court requests no program increases in fiscal year 2016.

**Mandatory Adjustments to Base**

The fiscal year 2016 request includes $30,000 for increases to standard pay and changes in benefits for the Supreme Court Chief Justice and the Associate Justices.

**Discretionary Adjustments to Base**

The Supreme Court requests a net $0.8 million increase for discretionary expenses in fiscal year 2016 for the Salaries and Expenses account. The fiscal year 2016 request includes $1.6 million for standard pay and other inflationary adjustments, partially offset by a $0.8 million decrease for non-recurring costs associated with the implementation of a new financial system.

15

335

U.S. Supreme Court - Salaries and Expenses
Comparative Summary of Obligations by Category
($000)

| Category | FY 2014 Actual | FY 2015 Estimate | FY 2016 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 55,202 | 59,174 | 60,460 | 1,286 |
| Rent, Communications and Utilities | 1,222 | 1,141 | 1,159 | 18 |
| Travel | 506 | 500 | 508 | 8 |
| Other | 15,863 | 16,679 | 16,147 | (532) |
| Total Obligations | 72,793 | 77,494 | 78,274 | 780 |
| Financing Adjustment | 2,184 | - | - | - |
| Available Appropriation | 74,977 | 77,494 | 78,274 | 780 |

16

336

## U.S. Supreme Court
### Care of the Building and Grounds

| FY 2016 Request | Discretionary | |
|---|---|---|
| | FTE | ($000) |
| **FY 2015 Enacted Appropriation** | 50 | 11,640 |
| **Adjustments to Base** | - | (2,217) |
| **Program Increases** | - | 530 |
| **FY 2016 Appropriation Request** | 50 | 9,953 |

### Budget Summary

The Supreme Court requests $10.0 million for its Care of the Building and Grounds account in fiscal year 2016, a 14.5 percent decrease from the fiscal year 2015 enacted appropriation.

The Architect of the Capitol provides for the structural and mechanical care of the United States Supreme Court Building and Grounds, including maintenance and operation of mechanical, electrical, and electronic equipment.

### Discretionary Adjustments to Base

The Supreme Court requests a net decrease of $2.2 million for its Building and Grounds account in fiscal year 2016. This includes $0.2 million for standard pay and other inflationary adjustments, offset by a decrease of $2.5 million for non-recurring requirements.

### Program Increases

The fiscal year 2016 budget request for the Building and Grounds account includes $0.5 million for program increases.

#### 1.  Variable Frequency Drive Motor Controllers: $70,000

The Court requests $70,000 to replace five variable frequency drive motor controllers associated with the building air handling systems.

#### 2.  Post-Modernization Interior and Exterior Maintenance Requirements: $0.5 million

The Court requests $460,000 for the additional maintenance requirements due to the increased number and complexity of systems introduced during the Modernization project. This includes the continuous cyclical replacement of variable frequency drive motor controllers based on the expected lifecycle, and new maintenance contracts for high speed roll-up garage entry doors, security barriers, and fire protection systems added by recently completed projects.

17

337

**U.S. Supreme Court - Care of the Building and Grounds**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2014 Actual | FY 2015 Estimate | FY 2016 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 4,279 | 4,637 | 4,797 | 160 |
| Rent, Communications and Utilities | 1,593 | 1,850 | 2,000 | 150 |
| Other | 9,123 | 7,203 | 5,433 | (1,770) |
| **Total Obligations** | 14,995 | 13,690 | 12,230 | (1,460) |
| Financing Adjustment | (3,837) | (2,050) | (2,277) | (227) |
| **Available Appropriation** | 11,158 | 11,640 | 9,953 | (1,687) |

18

## United States Court of Appeals for the Federal Circuit

| | FY 2016 Request | | | | | |
| | Mandatory | | Discretionary | | Total | |
| | FTE | ($000) | FTE | ($000) | FTE | ($000) |
|---|---|---|---|---|---|---|
| **FY 2015 Enacted Appropriation** | 12 | 2,893 | 139 | 30,212 | 151 | 33,105 |
| **Adjustments to Base** | - | 29 | - | 629 | - | 658 |
| **FY 2016 Appropriation Request** | 12 | 2,922 | 139 | 30,841 | 151 | 33,763 |

**Budget Summary**

The Court of Appeals for the Federal Circuit requests $33.8 million, consisting of $2.9 million for mandatory expenses and $30.9 million for discretionary expenses for fiscal year 2016.

The $30.9 million request for discretionary appropriations represents a 2.1 percent increase over the fiscal year 2015 enacted discretionary appropriation. This request continues the Court's efforts to keep up with its varied and growing subject-matter jurisdiction. The Court requests no program increases in fiscal year 2016.

**Mandatory Adjustments to Base**

The fiscal year 2016 request includes $29,000 for standard pay and benefits changes for judges.

**Discretionary Adjustments to Base**

The Court's adjustments to base for fiscal year 2016 total $0.6 million to provide for standard pay, other inflationary adjustments, and other court operating expenses.



340

## United States Court of International Trade

| | FY 2016 Request | | | | | | |
|---|---|---|---|---|---|---|---|
| | Mandatory | | Discretionary | | Total | | |
| | FTE | ($000) | FTE | ($000) | FTE | ($000) | |
| FY 2015 Enacted Appropriation | 9 | 1,981 | 71 | 17,807 | 80 | 19,788 | |
| Adjustments to Base | - | 24 | - | 338 | - | 362 | |
| FY 2016 Appropriation Request | 9 | 2,005 | 71 | 18,145 | 80 | 20,150 | |

**Budget Summary**

The Court of International Trade requests $20.2 million ($2.0 million for mandatory expenses and $18.2 million for discretionary expenses) for fiscal year 2016.

The $18.2 million request for discretionary appropriations represents a 1.9 percent increase over the fiscal year 2015 enacted discretionary appropriation. The Court requests no program increases.

**Mandatory Adjustments to Base**

The fiscal year 2016 request includes $24,000 for increases to standard pay and changes in benefits for judges.

**Discretionary Adjustments to Base**

The Court's adjustments to base for fiscal year 2016 total $0.3 million to provide for standard pay, other inflationary adjustments, and other court operating expenses.

21

342

## Court of Appeals, District Courts and Other Judicial Services
### Salaries and Expenses

| FY 2016 Request | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|
| | FTE | ($000) | FTE | ($000) | FTE | ($000) |
| FY 2015 Salaries and Expenses Enacted Appropriation | 1,793 | 399,361 | 26,453 | 4,846,818 | 28,246 | 5,246,179 |
| Vaccine Injury Compensation Trust Fund Appropriation | - | - | - | 5,423 | - | 5,423 |
| **Total, FY 2015 Available Appropriation** | **1,793** | **399,361** | **26,453** | **4,852,241** | **28,246** | **5,251,602** |
| Adjustments to Base | 25 | 8,854 | 95 | 146,636 | 120 | 155,490 |
| Adjustments to Base - Vaccine Injury Compensation Trust Fund | - | - | - | 622 | - | 622 |
| **Total, Adjustments to Base** | **25** | **8,854** | **95** | **147,258** | **120** | **156,112** |
| Program Increases | | | | | | |
| **Total, Program Increases** | **-** | **-** | **12** | **42,884** | **12** | **42,884** |
| FY 2016 Salaries and Expenses Enacted Appropriation | 1,818 | 408,215 | 26,560 | 5,036,338 | 28,378 | 5,444,553 |
| Vaccine Injury Compensation Trust Fund Appropriation | - | - | - | 6,045 | - | 6,045 |
| **Total, FY 2016 Appropriation Request** | **1,818** | **408,215** | **26,560** | **5,042,383** | **28,378** | **5,450,598** |

## Budget Summary

The Judicial Conference requests $5,450.6 million for the Salaries and Expenses account in fiscal year 2016, including $408.2 million for mandatory expenses, $5,036.3 million for discretionary expenses, and $6.0 million from the Vaccine Injury Trust Fund. The fiscal year 2016 total discretionary request of $5,042.4 million is a 3.9 percent increase over the fiscal year 2015 enacted discretionary appropriation.

The Salaries and Expenses appropriation is approximately 72 percent of the judiciary's total appropriations request. This account provides for the operating expenses of the 12 regional circuit courts of appeals, district courts, bankruptcy courts, and probation and pretrial services offices. This account utilizes other funding sources, including current year fee collections and prior year carryforward balances, to offset the need for appropriated funds. The judiciary projects that these sources of non-appropriated funds will total $327.2 million in fiscal year 2016, $9.7 million below the fiscal year 2015 financial plan estimated level of $336.9 million.

23

**Mandatory Adjustments to Base**

The fiscal year 2016 request includes $8.9 million for mandatory increases for Article III and bankruptcy judges as follows:

1. *Pay and benefit cost adjustment for Article III and bankruptcy judges salaries and benefits:  $4.1 million*

An increase of $4.1 million will provide for expected changes in pay and benefit rates for Article III and bankruptcy judges, including the annualization of the fiscal year 2015 pay adjustments and an estimated 1.0 percent pay adjustment in fiscal year 2016, and changes in benefit costs.

2. *Increase in the number of senior judges: $2.9 million*    *FTE 15*

An increase of $2.9 million will provide for an additional 15 senior judges anticipated in fiscal year 2016.

3. *Increase in average number of filled Article III judgeships: $1.1 million*    *FTE 6*

An increase of $1.1 million will provide for an additional 6 filled Article III judgeships anticipated in fiscal year 2016.

4. *Increase in average number of filled bankruptcy judgeships: $0.7 million*    *FTE 4*

An increase of $0.7 million will provide for an additional 4 filled bankruptcy judgeships anticipated in fiscal year 2016.

**Discretionary Adjustments to Base**

The requested discretionary increase is $147.3 million, which includes $106.8 million for standard pay, other inflationary increases; a net $8.9 million increase for space-related adjustments; $13.8 million for ongoing information technology requirements; and $9.7 million to replace non-appropriated funds.  In broad categories, these increases include:

5. *Pay and benefit cost adjustment for magistrate and claims judges: $2.4 million*

An increase of $2.4 million will provide for expected changes in pay and benefit rates for magistrate and claims judges, including annualization of the fiscal year 2015 pay adjustments and an estimated 1.0 percent pay adjustment in fiscal year 2016.

6. *Increase in the number of senior judges' staff: $6.0 million*    *FTE 50*

An increase of $6.0 million will provide for an additional 50 staff to support an additional 15 senior judges anticipated in fiscal year 2016.

7. *Increase in average number of filled Article III judgeships:*
   *$3.8 million*                                   *FTE 31*

An increase of $3.8 million will provide for an additional 31 staff to support an additional 6 filled Article III judgeships anticipated in fiscal year 2016.

8. *Increase in average number of filled bankruptcy judgeships:*
   *$1.3 million*                                   *FTE 14*

An increase of $1.3 million will provide for an additional 14 staff to support an additional 4 filled bankruptcy judgeships anticipated in fiscal year 2016.

9. *Non-recurring costs associated with new fiscal year 2015 Article III judges:  ($5.3 million)*

A decrease of $5.3 million is requested for non-recurring, one-time costs associated with new judges in fiscal year 2015.

10. *Pay and benefit adjustments for court personnel: $95.1 million*

An increase of $95.1 million will provide for the annualization of the fiscal year 2015 pay adjustment, an estimated 1.0 percent pay adjustment in 2016, within-grade increases, changes in benefits rates, and one more compensable day.

11. *Funds necessary to maintain fiscal year 2015 service levels due to an anticipated decline in non-appropriated funds:  $9.7 million*

The judiciary's fiscal year 2015 financial plan assumes that current year fee collections and prior-year carryforward balances from fiscal year 2014 will total $336.9 million. The fiscal year 2016 request estimates that these non-appropriated sources of funds used to help finance court operations will total $327.2 million, a net decrease of $9.7 million from fiscal year 2015 assumed levels. The judiciary requests direct appropriated funds for fiscal year 2016 to replace these non-appropriated funds in order to maintain the same level of service as provided in fiscal year 2015.

12. *Non-pay inflationary and contractual increases: $11.1 million*

An increase of $11.1 million is requested for a 1.6 percent general inflationary increase and other contractual and miscellaneous increases.

13. *Vaccine Injury Compensation Trust Fund:  $0.6 million*

The fiscal year 2016 level reflects an increase of $0.6 million for standard pay and non-pay inflationary adjustments, and an adjustment for an increase in space costs for the Vaccine Injury program.

### 14. GSA space rental and related expenses: $8.9 million

The judiciary requests a net increase of $8.9 million in fiscal year 2016 for General Services Administration (GSA) rent and related services associated with (a) annualizing new space expected to be occupied during fiscal year 2015 (+$3.0 million), (b) adjustments to GSA space rental base costs (-$1.1 million), (c) new space projected to be delivered by GSA in fiscal year 2016 (+$10.5 million), and (d) space-related adjustments including tenant alterations (-$3.5 million).

### 15. Ongoing information technology requirements: $13.8 million

An increase of $13.8 million is requested for ongoing information technology requirements to support current operations. The funds will primarily be used for upgrades and enhancements to integrated financial management, human resources, and rent and property management systems. The funds will also be used for operations and maintenance activities; court automation support, and support for national IT projects.

### Program Increases

The fiscal year 2016 request includes $42.9 million for program increases. These increases include:

### 16. New fiscal year 2016 full-time magistrate judges and staff FTE 12 $1.9 million

The judiciary requests an additional $1.8 million for 3 additional Magistrate judges (3 FTE), 9 support staff (9 FTE), and associated operating costs for San Francisco or San Jose. CA; Seattle or Tacoma, WA; and Tampa, FL.

### 17. Enterprise Hosting and Cloud Computing Initiative: $19.0 million

The judiciary requests $19.0 million to continue the enhancement and expansion of the judiciary's national-level hosting and cloud computing services. This initiative will provide robust, reliable, and secure centralized IT system hosting services, which is intended to be used by the courts to host local court managed applications, such as case management, financial management, human resource management related, office productivity (e.g., Office), file and print servers, and virtual desktops. This initiative will provide the benefits of shared IT security resources and more resource-efficient hosting solutions for the courts, in addition to providing for continuity of operations in the event of an emergency.

### 18. Upgrade Email and Messaging System: $7.0 million

The judiciary requests initial funding of $7.0 million for a multi-year effort to upgrade its email and messaging system (Lotus Notes) which is currently inadequate to address current technology needs, including widespread usage of mobile computing and document sharing. The requested amount will

fund the development of a unified judiciary-wide email and messaging system to replace the current 14-year old system. The replacement solution will address critical issues, including migration of legacy email data, system security risks, search and retrieval across archived and active email, and external certification requirements.

### 19. Evidence Base Practices: $15.0 million

An increase of $15.0 million is requested to expand evidence based supervision practices, including the Staff Training Aimed at Reducing Re-arrest (STARR) program to all districts to further reduce recidivism rates in the federal offender population. (Evidence-Based Practices are the application of the best evidence available to inform decisions about the supervision of individual offenders to achieve the maximum, measurable reduction in recidivism.) The request includes staff training and implementation tools for expanding evidence-based supervision practices. This funding will be used to address risk factors associated with recidivism. This includes programming to address the role that anti-social peers, substance abuse, education, and employment play in an offender's likelihood of committing a new crime. This funding will enhance the effort of federal probation officers to assist offenders' in acquiring the necessary skills to succeed in becoming productive members of society, thus reducing recidivism rates.

| United States Court of Appeals, District Courts and Other Judicial Services<br>Salaries and Expenses<br>Comparative Summary of Obligations by Category<br>($000) | | | | |
| --- | --- | --- | --- | --- |
| Category | FY 2014<br>Actual | FY 2015<br>Estimate | FY 2016<br>Request | Requested<br>Increase/Decrease |
| Compensation and Benefits | 3,416,041 | 3,731,678 | 3,846,435 | 114,757 |
| Rent, Communications and Utilities | 1,195,969 | 1,218,248 | 1,248,907 | 30,659 |
| Travel | 43,865 | 47,384 | 54,609 | 7,225 |
| Other | 531,671 | 591,167 | 627,806 | 36,639 |
| Total Obligations | 5,187,546 | 5,588,477 | 5,777,757 | 189,280 |
| Financing Adjustment | (151,618) | (342,298) | (333,204) | 9,094 |
| Available Appropriation (Direct) | 5,035,928 | 5,246,179 | 5,444,553 | 198,374 |
| Vaccine Injury Trust Fund | 5,327 | 5,423 | 6,045 | 622 |
| Total Available Appropriation | 5,041,255 | 5,251,602 | 5,450,598 | 198,996 |

28



**FY 2016 Budget Request**
Salaries and Expenses Account by Category
(Obligations)

Judges & Chambers Staff
Salaries & Expenses
23%

Court Support Personnel Benefits
12%

Rent
18%

Operations and Maintenance
10%

Information Technology
7%

Court Support Personnel Salaries
30%

29



## Judiciary Workload Factors

| WORKLOAD FACTOR | 12 months ending June 30, 2009 Actual | 12 months ending June 30, 2010 Actual | 12 months ending June 30, 2011 Actual | 12 months ending June 30, 2012 Actual | 12 months ending June 30, 2013 Actual | 12 months ending June 30, 2014 Actual | 12 months ending June 30, 2015 Projected |
|---|---|---|---|---|---|---|---|
| Criminal Filings | 75,324 | 78,213 | 78,764 | 73,455 | 69,642 | 64,027 | 59,200 |
| Year-to-Year Change: | 0% | 4% | 1% | -7% | -5% | -8% | -8% |
| Criminal Defendants Filed | 96,718 | 100,031 | 102,605 | 96,915 | 91,812 | 84,017 | 75,800 |
| Year-to-Year Change: | 0% | 3% | 3% | -6% | -5% | -8% | -10% |
| Probation: Persons Under Supervision | 123,839 | 126,642 | 129,319 | 132,785 | 132,362 | 132,858 | 134,300 |
| Year-to-Year Change: | 0% | 2% | 2% | 3% | -0.3% | 0.4% | 1.1% |
| Pretrial Services: Cases Activated | 103,604 | 110,671 | 107,197 | 105,852 | 102,457 | 98,122 | 90,400 |
| Year-to-Year Change: | 0% | 7% | -3% | -1% | -3% | -4% | -8% |
| Bankruptcy Filings | 1,306,315 | 1,572,597 | 1,529,560 | 1,311,602 | 1,137,978 | 1,000,083 | 899,500 |
| Year-to-Year Change: | 0% | 20% | -3% | -14% | -13% | -12% | -10% |
| Appellate Filings | 59,399 | 56,097 | 55,353 | 57,699 | 56,360 | 55,260 | 54,400 |
| Year-to-Year Change: | 0% | -6% | -1% | 4% | -2% | -2% | -2% |
| Civil Filings | 257,204 | 285,215 | 289,630 | 286,232 | 283,087 | 298,713 | 289,000 |
| Year-to-Year Change: | 0% | 11% | 2% | -1% | -1% | 6% | -3% |

**Explanation of Other Funding Sources**

In addition to appropriated funds, each year the judiciary uses other non-appropriated funds to offset its appropriation requirement. Fee collections, primarily from court filing fees, comprise the majority of these sources of funds. These fees are used to offset expenses within the Salaries and Expenses account.

**"Unencumbered" Funds**

In addition to fee collections, in certain instances the judiciary may carryforward funds from one year to the next. These carryforward funds are considered "unencumbered" when they are generated by savings in the financial plan in base areas or where budgeted costs did not materialize. These savings are usually unforeseen and uncontrollable by the judiciary. For example, the judiciary does not control the confirmation rate of Article III judges. The judiciary makes its best estimate, based on historical confirmation rates of how many judges will be confirmed in the upcoming year. When confirmations fall below historical estimates, the funds budgeted for these judgeships are not obligated. New space delivery is another area that can produce savings. The judiciary budgets for rent costs based on projected delivery dates provided by the General Services Administration. If delivery of the space by GSA is delayed, the previously budgeted rent costs become unencumbered.

A similar situation exists within the Judiciary Information Technology Fund. The Salaries and Expenses account must, by statute, procure its information technology needs, including hardware and software as well as system development requirements, from this fund. The fund is financed by deposits from the Salaries and Expenses account and, once deposited, the funds remain available without fiscal year limitation. It is common for savings in the Judiciary Information Technology Fund financial plan to occur. Information technology costs often are difficult to predict with precision, and when costs come in below projections, savings are realized. Savings in the plan are carried forward in the fund and offset the required deposit in the following year. The judiciary uses these carryforward funds to offset the following year's appropriation requirements.

Recognizing that savings in the financial plan tend to occur each year, but at unpredictable levels, the judiciary has tried to estimate the level of unencumbered funds that will be available to offset fiscal year 2016 requirements. As the table below indicates, the judiciary has estimated that unencumbered funds will be $327.2 million in fiscal year 2016, a net decrease of $9.7 million from the $336.9 million in the fiscal year 2015 financial plan to help finance court operations. The judiciary requests appropriated funds for fiscal year 2016 to replace these non-appropriated funds in order to maintain the same level of services provided in fiscal year 2015. Because these funds are used as a general offset to judiciary requirements, the difference in their availability from one fiscal year to the next affects the judiciary's appropriation requirement. If this loss in non-appropriated funds is not offset by a like amount of appropriated funds, it will result in a reduction in resources available to fund base requirements. Due to the unpredictable nature of these funds, the judiciary will keep Congress informed throughout the appropriations cycle as to the current

level of anticipated unencumbered non-appropriated funds and adjust its request for appropriated funds accordingly.

### Sources of Non-Appropriated Funds in Salaries and Expenses

| ($000) | FY 2015 Plan | FY 2016 Request | Difference |
|---|---|---|---|
| Salaries and Expenses | | | |
| *Fee Collections* | 193,760 | 192,159 | (1,601) |
| *Other Carryforward* | 143,115 | 135,000 | (8,115) |
| **Total, Non-Appropriated Sources of Funding, excluding encumbered carryforward** | 336,875 | 327,159 | (9,716) |

### "Encumbered" Funds

Carryforward funds are considered "encumbered" when both the funds and the associated need for the funds shift to the next year. The judiciary has no-year authority for specific purposes. In some cases, as was described above, this authority is used to carryforward savings where planned expenses did not occur. This authority is also used when planned expenses are delayed, or slipped, from one year to the next. In fiscal year 2015, $98.0 million will be slipped from fiscal year 2014. These "slippages" occur primarily in two areas: information technology investments and costs associated with new space delivery. In the Judiciary Information Technology Fund, one of the principle purposes for the creation of this fund was the recognition that the development of major information technology systems occurs over a period of years and is not efficiently driven by fiscal year limitations. Even so, the

judiciary only budgets for information technology costs that it reasonably expects to complete in a given year. Because funds assigned to information technology investments can carry forward to the following year, this ensures that, for individual investments, funds to complete a phase will be available even if not obligated by the end of the fiscal year. This flexibility allows projects to stay on or under budget by avoiding the need to make costly contractual changes or other obligations based on the calendar rather than project readiness.

Similarly, the judiciary also receives a limited amount of no-year authority in its regular appropriation for space alterations and furniture associated with new space delivery. Because space alteration and building projects are also subject to unpredictable delays, the ability of the judiciary to carry forward funds associated with specific projects allows the judiciary to budget for major space renovation costs and other non-rental costs associated with the delivery of a new courthouse and then carry forward these project specific funds if the project is delayed.

These "encumbered" funds, while adding to the judiciary's projected obligations in a given fiscal year, do not impact the judiciary's appropriations requirement. Even if the total amount fluctuates from year to year, the funds associated with the specific project are brought forward from the prior year to fund the project, resulting in no additional appropriation requirements.

Salaries and Expenses Obligations - Judiciary Information Technology Fund Program Requirements

($000)

| ($000)<br><br>IT Program Component | A<br>FY 2015<br>Projected<br>Obligations | B<br>FY 2014<br>Slipped<br>Requirements | C<br>FY 2015 Base<br>Requirements<br>(col a - col b) | FY 2016 Total<br>Requirements | Change: FY 2015 Base<br>Requirements to FY<br>2016 Requirements |
|---|---|---|---|---|---|
| Judicial Statistical & Reporting Systems | 10,064 | 821 | 9,243 | 11,322 | 2,079 |
| Administrative & Management Systems | 54,047 | 5,896 | 48,151 | 57,944 | 9,793 |
| Telecommunications Program | 66,347 | 1,144 | 65,203 | 65,820 | 617 |
| Infrastructure & Collaboration Tools | 100,326 | 5,054 | 95,272 | 126,611 | 31,339 |
| Court IT Allotments | 86,389 | 2,639 | 83,750 | 84,509 | 759 |
| Court Administration & Case Management | 18,940 | 1,293 | 17,647 | 18,142 | 495 |
| Court Support Reimbursable Program | 47,968 | - | 47,968 | 49,854 | 1,886 |
| TOTAL, SALARIES AND EXPENSES | 384,080 | 16,847 | 367,234 | 414,202 | 46,968 |

34

354

## Court of Appeals, District Courts and Other Judicial Services
### *Defender Services*

| FY 2016 Request | | |
|---|---|---|
| | Discretionary | |
| | FTE | ($000) |
| FY 2015 Enacted Appropriation | 2,722 | 1,016,499 |
| Adjustments to Base | 20 | 39,315 |
| Program Increases | - | 1,802 |
| FY 2016 Appropriation Request | 2,742 | 1,057,616 |

### Budget Summary

The Judicial Conference requests $1,057.6 million for Defender Services in fiscal year 2016, a 4.0 percent increase over the fiscal year 2015 enacted discretionary appropriation.

This appropriation is approximately 14 percent of the judiciary's total fiscal year 2016 budget request. This funding supports the provision of constitutionally-mandated legal representation and other services to persons financially unable to obtain counsel in criminal and related matters in federal court. The Criminal Justice Act (CJA) provides that courts shall appoint counsel from federal public and community defender organizations or from a panel of private attorneys established by the court.

### Discretionary Adjustments to Base

An increase of $39.3 million is requested for adjustments to base for pay and inflationary increases, as well as for adjustments that will allow the judiciary to meet its constitutional obligation to provide defense counsel to all

eligible persons in fiscal year 2016. In broad categories, these increases include:

*1. Pay and benefit adjustments, Federal Defender Organizations, and Program Administration: $15.8 million*

An increase of $15.8 million will provide for the annualization of the fiscal year 2015 pay adjustment, an estimated 1.0 percent pay adjustment in 2016, within-grade increases, changes in benefits rate, cost-of-living rate increases for panel attorneys, and one more compensable day.

*2. Other inflationary increases: $3.2 million*

An increase of $3.2 million is required for inflationary adjustments for all non-pay categories, as well as for space rental costs.

35

**3. Increase in appropriations needed to fund current services: $40.0 million**

In fiscal year 2015, $65.0 million in balances from fiscal year 2014 was available to finance fiscal year 2015 requirements. In fiscal year 2016, the judiciary expects $25.0 million in non-appropriated funds to be available, a decrease of $40.0 million from fiscal year 2015. Therefore, the judiciary requests $40.0 million in appropriations to replace this funding.

**4. Two new circuit case-budgeting attorney positions: $0.2 million    FTE 1**

The requested increase would support two additional case budgeting attorney positions in fiscal year 2016. Case budgeting attorneys achieve savings by enhancing management of and accountability over high-cost cases. There are currently nine case budgeting attorney positions in the courts, which include the conversion of two part-time positions to full-time positions in the fiscal year 2015 financial plan. This request would increase the total case budgeting attorney positions to 11 (10 FTE in fiscal year 2016), and would allow the judiciary flexibility to respond to additional resource needs in the circuits.

**5. Savings from two new circuit CJA case-budgeting attorney positions: ($0.2 million)**

The addition of the requested two new case-budgeting attorney positions will create an offsetting savings of $0.2 million in the panel attorney requirements.

**6. Change in FDO caseload: $4.2 million    FTE 19**

The request includes an additional 19 FTE to support FDO requirements, due to projected caseload changes in capital and non-capital weighted caseload.

| Projected CJA Representations | | | |
|---|---|---|---|
| Category | FY 2015 | FY 2016 | Change |
| Federal Defender Organizations * | 116,993 | 117,243 | 250 |

* FDO caseload projections are based on raw cases converted to weighted cases.

**7. Change in panel attorney caseload: ($28.9 million)**

The requested decrease represents the change in panel attorney representations projections which decreases by 5,000 representations from 87,300 in fiscal year 2015 to 82,300 in fiscal year 2016.

| Projected CJA Representations | | | |
|---|---|---|---|
| Category | FY 2015 | FY 2016 | Change |
| Panel Attorneys | 87,300 | 82,300 | (5,000) |

**8. High threat trials: $5.0 million**

The requested increase is for unanticipated costs associated with high threat, high profile representations.

**Program Increases**

**9.  *Non-capital rate increase:  $1.8 million***

The requested funding supports a $6 hourly rate (above COLA) increase from $128 to $134 per hour for non-capital cases, effective January 2016.  This is the first increase requested since fiscal year 2011.  The rate increase is needed to ensure that courts retain and recruit qualified and experienced criminal defense practitioners for their CJA panels.  The annualized cost of this increase is $14.4 million.

37

United States Court of Appeals, District Courts and Other Judicial Services
Defender Services
Comparative Summary of Obligations by Category
($000)

| Category | FY 2014 Actual | FY 2015 Estimate | FY 2016 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 352,417 | 389,398 | 402,135 | 12,737 |
| Rent, Communications and Utilities | 43,948 | 48,725 | 49,557 | 832 |
| Travel | 7,957 | 9,624 | 10,889 | 1,265 |
| Contractual Services (includes panel attorney payments) | 434,054 | 480,004 | 461,396 | (18,608) |
| Other (includes grants to Community Defender Organizations) | 147,270 | 153,748 | 158,639 | 4,891 |
| **Total Obligations** | **985,646** | **1,081,499** | **1,082,616** | **1,117** |
| Financing Adjustment | 58,748 | (65,000) | (25,000) | 40,000 |
| **Available Appropriation** | **1,044,394** | **1,016,499** | **1,057,616** | **41,117** |

38

358



39

## Court of Appeals, District Courts and Other Judicial Services
### *Fees of Jurors and Commissioners*

| FY 2016 Request | | |
|---|---|---|
| | Discretionary | |
| | FTE | ($000) |
| FY 2015 Enacted Appropriation | - | 52,191 |
| Adjustments to Base | - | (3,768) |
| Program Increases | - | 3,988 |
| FY 2016 Appropriation Request | - | 52,411 |

**Budget Summary**

The Judicial Conference requests $52.4 million for Fees of Jurors and Commissioners in fiscal year 2016, a 0.4 percent increase over the fiscal year 2015 enacted discretionary appropriation.

This appropriation is less than 1 percent of the judiciary's total budget. Costs associated with this account may be unpredictable and are driven by the number of jury trials, the length of those trials, and statutory rates for reimbursement paid to jurors.

**Discretionary Adjustments to Base**

The fiscal year 2016 request includes a net decrease of $3.8 million in adjustments to base associated with inflationary adjustments, projected changes in juror days, and an anticipated increase in non-appropriated funds. This will allow the account to continue to pay for the statutory fees and expenses to grand and petit jurors and compensation of land commissioners in fiscal year 2016. These adjustments include:

*1. Inflationary adjustments: $0.5 million*

In addition to the attendance fees, jurors also are reimbursed for certain expenses including meals and lodging for sequestered jurors and transportation of juries to view evidence or crime scenes. Inflationary increases associated with these expenses are expected to total $0.2 million for grand jurors and $0.3 million for petit jurors in fiscal year 2016.

*2. Projected change in juror days: ($3.2 million)*

Based on projected changes in the number of grand jurors, overall expenses are projected to increase by $0.7 million in fiscal year 2016. This is offset by a decrease of $3.9 million for petit jurors based on a projected decrease in the number of available jurors from fiscal year 2015 to fiscal year 2016.

41

3. *Funds not necessary to maintain fiscal year 2015 service levels due to an anticipated increase in non-appropriated funds:  ($1.0 million)*

The fiscal year 2015 financial plan was financed in part by $1.0 million in carry forward balances from fiscal year 2014.  A total of $2.0 million in carry forward balances is available to finance fiscal year 2016 requirements.  Therefore, the fiscal year 2016 request reflects a base reduction of $1.0 million in appropriated funds.

**Program Increases**

4. *Increase to the daily juror attendance fee from $40 to $50:  $4.0 million*

An increase of $4.0 million is requested to increase the daily juror attendance fee by $10 (from $40 to $50) for grand and petit jurors effective January 2016, to compensate jurors more adequately for their services.  Although inflation and the cost of living have increased each year, the juror fee has not been increased since December 1990.

**United States Court of Appeals, District Courts and Other Judicial Services**
**Fees of Jurors and Commissioners**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2014 Actual | FY 2015 Estimate | FY 2016 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 24,011 | 25,546 | 25,891 | 345 |
| Rent, Communications and Utilities | 1,799 | 1,470 | 1,525 | 55 |
| Travel | 24,863 | 24,555 | 25,356 | 801 |
| Other | 1,500 | 1,620 | 1,681 | 61 |
| **Total Obligations** | 52,173 | 53,191 | 54,453 | 1,262 |
| Financing Adjustment | 1,718 | (1,000) | (2,042) | (1,042) |
| **Available Appropriation** | 53,891 | 52,191 | 52,411 | 220 |

43

362



**FY 2016 Budget Request**
**Fees of Jurors and Commissioners Account by Category**
**(Obligations)**

Land Commissioners
0.2%

Petit Jurors
66.5%

Grand Jurors
33.3%

44

# Court of Appeals, District Courts and Other Judicial Services
## Court Security

| FY 2016 Request | Discretionary | |
| --- | --- | --- |
| | FTE | ($000) |
| **FY 2015 Enacted Appropriation** | 72 | 513,975 |
| **Adjustments to Base** | - | 22,103 |
| **Program Increases:** | | |
| Phased Implementation of new CSO Staffing Standards | - | 4,557 |
| CSO Training | - | 780 |
| Judicial Facility Security Program Information Technology Services | - | 975 |
| **FY 2016 Appropriation Request** | 72 | 542,390 |

## Budget Summary

The Judicial Conference requests $542.4 million for Court Security in fiscal year 2016, a 5.5 percent increase over the fiscal year 2015 enacted discretionary appropriation. The majority of the funding is transferred to the U.S. Marshals Service (USMS), which is responsible for administering the Judicial Facility Security Program. The Court Security appropriation is approximately 7 percent of the judiciary's total budget.

## Discretionary Adjustments to Base

The Court Security account requests $22.1 million for adjustments to base for pay, inflationary increases, and other adjustments to maintain fiscal year 2015 current services. In broad categories, these adjustments include:

1. *Pay and benefit increase: $1.8 million*
This increase accounts for the annualization of the fiscal year 2015 pay adjustment, an estimated 1.0 percent pay adjustment in 2016, within-grade increases, changes in benefits rates, and one more compensable day.

2. *Annualization of court security officer positions (10) associated with fiscal year 2015 new and existing space: $0.1 million*

Funding is required to annualize costs for ten additional CSOs expected to be brought on-board in fiscal year 2015, based on projected occupancy dates for new and existing space and the CSO staffing formula.

45

3. *Department of Labor and Collective Bargaining Agreements wage rate and other contractual adjustment: $11.7 million*

This increase provides for an average 3.0 percent wage adjustment for contract court security officers as established by the Department of Labor and based on collective bargaining agreements.

4. *Non-pay inflationary increases: $0.1 million*

The funding requested will provide for a general inflationary increase of 1.6 percent for travel, supplies, equipment, and other contractual services (exclusive of Court Security Officers contracts).

5. *Inflationary increase in GSA space rental costs: $0.1 million*

This request represents an inflationary increase and adjustments in the cost of GSA space rental charges for space for fiscal year 2016.

6. *Changes in Federal Protective Service security charges: $2.4 million*

The requested increase of $2.4 million will fund building-specific operating expenses based on anticipated billings from the Federal Protective Service (FPS). The projected fiscal year 2016 costs do not increase for basic security because the judiciary's space footprint is not expected to expand in fiscal year 2016. This brings the total request for FPS charges to $81.7 million in fiscal year 2016, compared to $79.3 million

projected in fiscal 2015 -- a 3.0 percent increase over 2015.

| ($000) | FY 2015 | FY 2016 |
| --- | --- | --- |
| Basic | 31,532 | 31,532 |
| Building-Specific | 47,796 | 50,188 |
| Total FPS | 79,328 | 81,720 |

7. *Adjustments to base for security systems and equipment: $4.9 million*

The requested amount reflects a net increase of $4.9 million in the court security systems and equipment acquisition plan. This includes $7.0 million in increases for GSA installation and alterations; cyclical replacement of hardware and software for access control systems; maintenance contracts for existing security systems and equipment; cyclical replacement of screening equipment; nationwide contracts for vehicle barrier maintenance; and CSO radios, accessories, repairs and over-the-air re-key. An offsetting decrease of $2.1 million is for security systems for new and renovated facilities; additional and replacement equipment; perimeter security improvements; equipment for probation and pretrial services offices and federal public defender organizations; and screening equipment for new buildings.

8. *Funds necessary to maintain fiscal year 2015 service levels due to an anticipated decline in non-appropriated funds: $1.0 million*

The fiscal year 2015 financial plan was financed in part by $11.0 million in carryforward balances from fiscal year 2014 and prior years. In fiscal year 2016, the judiciary expects $10.0

million in non-appropriated funds to be available, a decrease of $1.0 million from fiscal year 2015.  Therefore, an increase of $1.0 million is requested to maintain the same level of service as provided in fiscal year 2015.

**Program Increases**

**9.  *Phased implementation of the new CSO staffing standards (69 CSOs):  $4.6 million***

The fiscal year 2016 budget request includes $4.6 million for 69 CSOs for the phased implementation of the new CSO staffing standards.  The USMS estimates that 346 additional CSOs, consisting of a net 244 new CSO positions and 102 CSOs for understaffed districts, are necessary to fully staff to the new standard.  The revised standards include a crucial exterior/forward watch CSO position at the perimeter.  The USMS recommended a phased, multi-year implementation of the new CSO staffing standards over five years.

**10.  *CSO training:  $0.8 million***

The fiscal year 2016 budget request includes $0.8 million for additional CSO training, of which $0.2 million is to increase the CSO Phase II Orientation class size at the Federal Law Enforcement Training Center (FLETC) and $0.6 million to increase the CSO Phase II Orientation from three to five training days.  Phase II Orientation is in-depth training provided to new CSOs at FLETC in Glynco, GA.

**11.  *Judiciary Facility Security Program (JFSP) Information Technology (IT) Services:  $1.0 million***

The judiciary requests funds to pay for JFSP-related IT support services and resources from the USMS headquarters, which have not been reimbursed previously by the judiciary.  The increase for JFSP IT services in fiscal year 2016 is estimated at $1.0 million and will be adjusted going forward based on inflation.

366

| United States Court of Appeals, District Courts and Other Judicial Services<br>Court Security<br>Comparative Summary of Obligations by Category<br>($000) | | | | |
|---|---|---|---|---|
| Category | FY 2014<br>Actual | FY 2015<br>Estimate | FY 2016<br>Request | Requested<br>Increase/Decrease |
| Compensation and Benefits | 8,254 | 9,812 | 10,152 | 340 |
| Rent, Communications and Utilities | 7,461 | 7,384 | 7,552 | 168 |
| Travel | 295 | 340 | 346 | 6 |
| Court Security Officers Contract | 346,228 | 372,812 | 390,144 | 17,332 |
| Federal Protective Service Charges | 75,102 | 79,328 | 81,720 | 2,392 |
| Other | 75,126 | 59,138 | 65,428 | 6,290 |
| Total Obligations | 512,466 | 528,814 | 555,342 | 26,528 |
| Financing Adjustment | (14,966) | (14,839) | (12,952) | 1,887 |
| Available Appropriation | 497,500 | 513,975 | 542,390 | 28,415 |

48

**Court Security - Summary of Requirements and Financing**

| | Court Security Officers (CSOs) | | Security Systems/Equip. | FPS Provided Security | Program Administration | | Total | |
|---|---|---|---|---|---|---|---|---|
| | CSOs | ($000) | ($000) | ($000) | FTE | ($000) | FTE | ($000) |
| FY 2015 Financial Obligations | 4,226 | 372,812 | 57,649 | 79,328 | 72 | 27,936 | 72 | 537,725 |
| Less: Encumbered Carryforward from FY 2014 | - | - | (8,197) | - | - | (714) | - | (8,911) |
| FY 2015 Financial Obligations less Encumbered Carryforward | 4,226 | 372,812 | 49,452 | 79,328 | 72 | 27,222 | 72 | 528,814 |
| Less: Judiciary Information Technology Fund (JITF) | - | - | - | - | - | (3,839) | - | (3,839) |
| Less: Unencumbered Carryforward from FY 2014 | - | - | (11,000) | - | - | - | - | (11,000) |
| Total FY 2015 Enacted Appropriation | 4,226 | 372,812 | 38,452 | 79,328 | 72 | 23,383 | 72 | 513,975 |
| FY 2016 Appropriations Increases/Decreases | 69 | 17,332 | 6,891 | 2,392 | - | 1,800 | - | 28,415 |
| Total FY 2016 Request | 4,295 | 390,144 | 45,343 | 81,720 | 72 | 25,183 | 72 | 542,390 |

49



FY 2016
Budget Request
Court Security Account by Category
(Obligations)

Court Security Officer Contract Costs
72%

Program Administration
5%

Federal Protective Service Charges
15%

Security Systems and Equipment
8%

50

## Administrative Office of the U.S. Courts

| FY 2016 Request | Discretionary | |
|---|---|---|
| | FTE | ($000) |
| FY 2015 Enacted Appropriation | 621 | 84,399 |
| Adjustments to Base | - | 3,191 |
| FY 2016 Appropriation Request | 621 | 87,590 |

**Budget Summary**

The Administrative Office (AO) requests $87.6 million in fiscal year 2016, a 3.8 percent increase over the fiscal year 2015 enacted discretionary appropriation.

In addition to the appropriation provided by Congress, the AO receives non-appropriated funds from sources such as fee collections and carryover balances to offset its appropriation requirements. The AO also receives reimbursements from other judiciary accounts for information technology development and support services that are in direct support of the courts, the court security program, and defender services.

**Discretionary Adjustments to Base**

The AO requests $3.2 million in adjustments to base in fiscal year 2016. This includes $2.7 million for increases to standard pay and other inflationary adjustments, and $0.5 million to replace non-appropriated funds in order to maintain the same level of service as provided in fiscal year 2015. The AO requests no program increases.

51

370

Administrative Office of the U.S. Courts
Comparative Summary of Obligations by Category
($000)

| Category | FY 2014 Actual | FY 2015 Estimate | FY 2016 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 156,021 | 173,149 | 177,629 | 4,480 |
| Rent, Communications and Utilities | 623 | 789 | 810 | 21 |
| Travel | 1,062 | 1,853 | 1,588 | (265) |
| Other | 11,853 | 13,089 | 10,774 | (2,315) |
| **Total Obligations** | **169,559** | **188,880** | **190,801** | **1,921** |
| Financing Adjustment | (14,910) | (19,818) | (17,219) | 2,599 |
| Reimbursable Program | (73,449) | (84,663) | (85,992) | (1,329) |
| **Available Appropriation** | **81,200** | **84,399** | **87,590** | **3,191** |

52

**Federal Judicial Center**

| FY 2016 Request | | |
|---|---|---|
| | Discretionary | |
| | FTE | ($000) |
| FY 2015 Enacted Appropriation | 128 | 26,959 |
| Adjustments to Base | - | 720 |
| FY 2016 Appropriation Request | 128 | 27,679 |

**Budget Summary**

The Federal Judicial Center (FJC) requests $27.7 million in fiscal year 2016, a 2.7 percent increase over the fiscal year 2015 enacted discretionary appropriation. The FJC, which is the research and education arm of the Third Branch, provides judges and other judiciary personnel with education and training on legal developments and efficient litigation management and court administration. As such, its workload is derived in large part by the population of the courts.

**Discretionary Adjustments to Base**

The Federal Judicial Center requests $0.7 million in adjustments to base for increases to standard pay and other inflationary adjustments. The FJC requests no program increases.

53

**Federal Judicial Center**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2014 Actual | FY 2015 Estimate | FY 2016 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 17,442 | 18,472 | 19,054 | 582 |
| Rent, Communications and Utilities | 384 | 511 | 734 | 223 |
| Travel | 5,118 | 5,780 | 5,870 | 90 |
| Other | 3,593 | 2,696 | 2,846 | 150 |
| **Total Obligations** | 26,537 | 27,459 | 28,504 | 1,045 |
| Financing Adjustment | (337) | (500) | (825) | (325) |
| **Available Appropriation** | 26,200 | 26,959 | 27,679 | 720 |

54

## Judicial Retirement Funds

### FY 2016 Request

| | Mandatory | |
|---|---|---|
| | FTE | ($000) |
| FY 2015 Enacted Appropriation | - | 143,600 |
| Adjustments to Base | - | 11,800 |
| FY 2016 Appropriation Request | - | 155,400 |

**Budget Summary**

The Judicial Conference requests $155.4 million for the Judicial Retirement Funds in fiscal year 2016, a 8.2 percent increase over the fiscal year 2015 enacted appropriation.

The Payments to the Judiciary Trust Funds is a congressionally-scored mandatory account and is divided among three trust funds that finance payments to (1) retired bankruptcy and magistrate judges, (2) retired Court of Federal Claims judges, and (3) spouses and dependent children of deceased judicial officers. The appropriation requirements are calculated annually by an enrolled actuary pursuant to 31 U.S.C. 9503.

**Mandatory Adjustments to Base**

Based on independent actuarial calculations, an increase of $11.8 million is required for this account for fiscal year 2016 detailed as follows:

| ($000) | FY 2016 Increases | Total Requested |
|---|---|---|
| Judicial Officers' Retirement Fund | 11,500 | 127,300 |
| Judicial Survivors' Annuities Fund | 400 | 22,200 |
| United States Court of Federal Claims Judges' Retirement Fund | (100) | 5,900 |
| **Total** | **11,800** | **155,400** |

55

**Payment to Judiciary Trust Funds**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2014 Actual | FY 2015 Estimate | FY 2016 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Other - Judicial Officers' Retirement Fund | 105,231 | 115,800 | 127,300 | 11,500 |
| Other - Judicial Survivors' Annuities Fund | 16,200 | 21,800 | 22,200 | 400 |
| Other - United States Court of Federal Claims Judges' Retirement Fund | 5,500 | 6,000 | 5,900 | (100) |
| **Total Obligations/Appropriations** | **126,931** | **143,600** | **155,400** | **11,800** |

56

## United States Sentencing Commission

| FY 2016 Request | Discretionary | |
| --- | --- | --- |
| | FTE | ($000) |
| FY 2015 Enacted Appropriation | 96 | 16,894 |
| Adjustments to Base | 3 | 646 |
| FY 2016 Appropriation Request | 99 | 17,540 |

**Budget Summary**

The U.S. Sentencing Commission requests $17.5 million in fiscal year 2016, a 3.8 percent increase over the fiscal year 2015 enacted discretionary appropriation.

The fulfillment of the Commission's duties to review and revise the sentencing guidelines regularly, collect data from federal sentencing courts, analyze these data to provide meaningful information on federal sentencing practices, and provide extensive training to guideline users can be satisfied only with full funding of its fiscal year 2016 request. Full funding will allow the Commission to continue its efforts to review and revise the guidelines; provide specialized training on federal sentencing issues, including application of the guidelines; modernize its data collection, analysis, and reporting systems; and continue its review of alternatives to incarceration.

The Commission has begun a comprehensive assessment of federal sentencing. As part of the assessment, the Commission held regional hearings across the country and the input received will help to shape the Commission's policy priorities for the year.

**Discretionary Adjustments to Base**

The Commission requests $0.6 million in adjustments to base in fiscal year 2016. This includes $0.5 million for increases to standard pay and other inflationary adjustments, and an increase of $0.1 million for the annualization of 6 positions (3 FTEs) funded in fiscal year 2015. The Commission requests no program increases.

57

| | | United States Sentencing Commission<br>Comparative Summary of Obligations by Category<br>($000) | | |
|---|---|---|---|---|
| Category | FY 2014<br>Actual | FY 2015<br>Estimate | FY 2016<br>Request | Requested<br>Increase/Decrease |
| Compensation and Benefits | 11,795 | 13,228 | 13,795 | 567 |
| Rent, Communications and Utilities | 33 | 25 | 40 | 15 |
| Travel | 444 | 473 | 435 | (38) |
| Other | 3,816 | 4,167 | 3,270 | (897) |
| **Total Obligations** | 16,088 | 17,893 | 17,540 | (353) |
| Financing Adjustment | 112 | (999) | - | 999 |
| **Available Appropriation** | 16,200 | 16,894 | 17,540 | 646 |

58

## Judiciary Appropriations Language

**Supreme Court of the United States - Salaries and Expenses**

For expenses necessary for the operation of the Supreme Court, as required by law, excluding care of the building and grounds, including hire of passenger motor vehicles as authorized by 31 U.S.C. 1343 and 1344; not to exceed $10,000 for official reception and representation expenses; and for miscellaneous expenses, to be expended as the Chief Justice may approve, [$74,967,000]$75,717,000, of which $2,000,000 shall remain available until expended.

In addition, there are appropriated such sums as may be necessary under current law for salaries of the chief justice and associate justices of the court.

**Supreme Court of the United States - Care of the Building and Grounds**

For such expenditures as may be necessary to enable the Architect of the Capitol to carry out the duties imposed upon the Architect by 40 U.S.C. 6111 and 6112, [$11,640,000]$9,953,000, to remain available until expended.

**United States Court of Appeals for the Federal Circuit**

For salaries of officers and employees, and for necessary expenses of the court, as authorized by law, [$30,212,000]$30,841,000.

In addition, there are appropriated such sums as may be necessary under current law for the salaries of the chief judge and judges of the court.

**United States Court of International Trade**

For salaries of officers and employees of the court, services, and necessary expenses of the court, as authorized by law, [$17,807,000]$18,145,000.

In addition, there are appropriated such sums as may be necessary under current law for the salaries of the chief judge and judges of the court.

**Court of Appeals, District Courts and Other Judicial Services - Salaries and Expenses**

For the salaries of judges of the United States Court of Federal Claims, magistrate judges, and all other officers and employees of the Federal Judiciary not otherwise specifically provided for, necessary expenses of the courts, and the purchase, rental, repair, and cleaning of uniforms for Probation and Pretrial Services Office staff, as authorized by law, [$4,846,818,000]$5,036,338,000 (including the purchase of firearms and ammunition); of which not to exceed $27,817,000 shall remain available until expended for space alteration projects and for furniture and furnishings related to new space alteration and construction project[;] and of which not to exceed $10,000,000 shall remain available until September 30, 2016, for Integrated Workplace Initiative: *Provided*, That the amount provided for the Integrated Workplace Initiative shall not be available for

**Court of Appeals, District Courts and Other Judicial Services – Defender Services**

For the operation of Federal Defender organizations; the compensation and reimbursement of expenses of attorneys appointed to represent persons under 18 U.S.C. 3006A and 3599, and for the compensation and reimbursement of expenses of persons furnishing investigative, expert, and other services for such representations as authorized by law; the compensation (in accordance with the maximums under 18 U.S.C. 3006A) and reimbursement of expenses of attorneys appointed to assist the court in criminal cases where the defendant has waived representation by counsel; the compensation and reimbursement of expenses of attorneys appointed to represent jurors in civil actions for the protection of their employment, as authorized by 28 U.S.C. 1875(d)(1); the compensation and reimbursement of expenses of attorneys appointed under 18 U.S.C. 983(b)(1) in connection with certain judicial civil forfeiture proceedings; the compensation and reimbursement of travel expenses of guardians ad litem appointed under 18 U.S.C. 4100(b); and for necessary training and general administrative expenses,[$1,016,499,000] *$1,057,616,000*, to remain available until expended.

**Court of Appeals, District Courts and Other Judicial Services – Fees of Jurors and Commissioners**

For fees and expenses of jurors as authorized by 28 U.S.C. 1871 and 1876; compensation of jury commissioners as authorized by 28 U.S.C. 1863; and compensation of commissioners appointed in condemnation cases pursuant to rule 71.1(h) of the Federal Rules of Civil Procedure (28 U.S.C. Appendix Rule 71.1(h)), [$52,191,000]*$52,411,000*,to remain

obligation until the Director of the Administrative Office of the United States Courts submits a report to the Committees on Appropriations of the House of Representatives and the Senate showing that the estimated cost savings resulting from the Initiative will exceed the estimated amounts obligated for the Initiative].

In addition, there are appropriated such sums as may be necessary under current law for the salaries of circuit and district judges (including judges of the territorial courts of the United States), bankruptcy judges, and justices and judges retired from office or from regular active service.

In addition, for expenses of the United States Court of Federal Claims associated with processing cases under the National Childhood Vaccine Injury Act of 1986 (Public Law 99-660), not to exceed [$5,423,000] *$6,045,000*, to be appropriated from the Vaccine Injury Compensation  Trust Fund.

<u>Explanation of Change</u>
Integrated Workplace Initiative language requiring the Director of the Administrative Office of the United States Courts to submit a report to the Committees on Appropriations of the House of Representatives and the Senate is proposed for deletion.  The requested report will be provided during fiscal year 2015.

available until expended: *Provided*, That the compensation of land commissioners shall not exceed the daily equivalent of the highest rate payable under 5 U.S.C. 5332.

**Court of Appeals, District Courts and Other Judicial Services – Court Security**

For necessary expenses, not otherwise provided for, incident to the provision of protective guard services for United States courthouses and other facilities housing Federal court operations, and the procurement, installation, and maintenance of security systems and equipment for United States courthouses and other facilities housing Federal court operations, including building ingress-egress control, inspection of mail and packages, directed security patrols, perimeter security, basic security services provided by the Federal Protective Service, and other similar activities as authorized by section 1010 of the Judicial Improvement and Access to Justice Act (Public Law 100-702), [$513,975,000]$542,390,000, of which not to exceed $15,000,000 shall remain available until expended, to be expended directly or transferred to the United States Marshals Service, which shall be responsible for administering the Judicial Facility Security Program consistent with standards or guidelines agreed to by the Director of the Administrative Office of the United States Courts and the Attorney General.

**Administrative Office of the United States Courts**

For necessary expenses of the Administrative Office of the United States Courts as authorized by law, including travel as authorized by 31 U.S.C. 1345, hire of a passenger motor vehicle as authorized by 31 U.S.C. 1343(b), advertising and rent in the District of Columbia and elsewhere, [$84,399,000]$87,590,000, of which not to exceed $8,500 is authorized for official reception and representation expenses

**Federal Judicial Center**

For necessary expenses of the Federal Judicial Center, as authorized by Public Law 90-219, [$26,959,000]$27,679,000; of which, $1,800,000 shall remain available until September 30, [2016]2017, to provide education and training to Federal court personnel; and of which not to exceed $1,500 is authorized for official reception and representation expenses.

**United States Sentencing Commission**

For the salaries and expenses necessary to carry out the provisions of chapter 58 of title 28, United States Code, [$16,894,000]$17,540,000, of which not to exceed $1,000 is authorized for official reception and representation expenses.

380

## Title III Administrative Provisions – The Judiciary

Sec. 301. Appropriations and authorizations made in this title which are available for salaries and expenses shall be available for services as authorized by 5 U.S.C. 3109.

Sec. 302. Not to exceed 5 percent of any appropriation made available for the current fiscal year for the Judiciary in this Act may be transferred between such appropriations, but no such appropriation, except "Courts of Appeals, District Courts, and Other Judicial Services, Defender Services" and "Courts of Appeals, District Courts, and Other Judicial Services, Fees of Jurors and Commissioners", shall be increased by more than 10 percent by any such transfers: Provided, That any transfer pursuant to this section shall be treated as a reprogramming of funds under sections 604 and 608 of this Act and shall not be available for obligation or expenditure except in compliance with the procedures set forth in section 608.

Sec. 303. Notwithstanding any other provision of law, the salaries and expenses appropriation for "Courts of Appeals, District Courts, and Other Judicial Services" shall be available for official reception and representation expenses of the Judicial Conference of the United States: Provided, That such available funds shall not exceed $11,000 and shall be administered by the Director of the Administrative Office of the United States Courts in the capacity as Secretary of the Judicial Conference.

Sec. 304. Section 3314(a) of title 40, United States Code, shall be applied by substituting "Federal" for "executive" each place it appears.

Sec. 305. In accordance with 28 U.S.C. 561–569, and notwithstanding any other provision of law, the United States Marshals Service shall provide, for such courthouses as its Director may designate in consultation with the Director of the Administrative Office of the United States Courts, for purposes of a pilot program, the security services that 40 U.S.C. 1315 authorizes the Department of Homeland Security to provide, except for the services specified in 40 U.S.C. 1315(b)(2)(E). For building-specific security services at these courthouses, the Director of the Administrative Office of the United States Courts shall reimburse the United States Marshals Service rather than the Department of Homeland Security.

[Sec. 306. (a) Section 203(c) of the Judicial Improvements Act of 1990 (Public Law 101–650; 28 U.S.C. 133 note), is amended in the matter following paragraph (12)—

(1) in the second sentence (relating to the District of Kansas), by striking "23 years and 6 months" and inserting "24 years and 6 months"; and

(2) in the sixth sentence (relating to the District of Hawaii), by striking "20 years and 6 months" and inserting "21 years and 6 months"

(b) Section 406 of the Transportation, Treasury, Housing and Urban Development, the Judiciary, the District of Columbia, and Independent Agencies Appropriations Act, 2006 (Public Law 109–115; 119 Stat. 2470; 28 U.S.C. 133 note) is amended in the second sentence (relating to the eastern District of

63

Missouri) by striking ''21 years and 6 months'' and inserting ''22 years and 6 months''

(c) Section 312(c)(2) of the 21st Century Department of Justice Appropriations Authorization Act (Public Law 107–273; 28 U.S.C. 133 note), is amended—

(1) in the first sentence by striking ''12 years'' and inserting ''13 years'';

(2) in the second sentence (relating to the central District of California), by striking ''11 years and 6 months'' and inserting ''12 years and 6 months''; and

(3) in the third sentence (relating to the western district of North Carolina), by striking ''10 years'' and inserting ''11 years''.]

Explanation of Change

The language extending these temporary judgeships for one year was enacted on December 16, 2014 as part of the Consolidated and Further Continuing Appropriations Act, 2015 (P.L. 113–235). It is proposed for deletion because the judiciary is hopeful a judgeship bill will be enacted during fiscal year 2016 that will address the need to convert these temporary judgeships to permanent.

[Sec. 307. Section 84(b) of title 28, United States Code, is amended in the second sentence by inserting ''Bakersfield,'' after ''shall be held at''.]

Explanation of Change

It is proposed for deletion because that language is now permanent.

[Sec. 308. Section 3155 of title 18, United States Code, is amended—

(1) in the first sentence, by deleting the words ''and the Director''; and

(2) in the first sentence, by inserting at the end ''and shall ensure that case file, statistical, and other information concerning the work of pretrial services is provided to the Director''.]

Explanation of Change

It is proposed for deletion because that language is now permanent.

*Sec. 306. (a) Section 1871(b) of title 28, United States Code, is amended in paragraph (1) by striking ''$40'' and inserting ''$50''. (b) EFFECTIVE DATE.—The amendment made in subsection (a) shall take effect 45 days after the date of enactment of this Act.*

Explanation of Change

This section increases the daily juror attendance fee by $10 (from $40 to $50) to compensate jurors more adequately for their services. Although inflation and the cost of living have increased each year, the juror fee has not been increased since December 1990. Therefore, the proposed $10 increase will adjust the compensation paid to jurors to account for cost of living increases since the passage of the Judicial Improvements Act of 1990.

Explanation of Change

This title may be cited as the ''Judiciary Appropriations Act, [2015] *2016*''.

**Title VI General Provision**

**Judicial Retirement Funds**

Sec. [619] ____. (a) There are appropriated for the following activities the amounts required under current law:

(1) Compensation of the President (3 U.S.C. 102).

(2) Payments to—

(A) the Judicial Officers' Retirement Fund (28 U.S.C. 377(o));

(B) the Judicial Survivors' Annuities Fund (28 U.S.C. 376(c)); and

(C) the United States Court of Federal Claims Judges' Retirement Fund (28 U.S.C. 178(l)).

(3) Payment of Government contributions—

(A) with respect to the health benefits of retired employees, as authorized by chapter 89 of title 5, United States Code, and the Retired Federal Employees Health Benefits Act (74 Stat. 849); and

(B) with respect to the life insurance benefits for employees retiring after December 31, 1989 (5 U.S.C. ch. 87).

(4) Payment to finance the unfunded liability of new and increased annuity benefits under the Civil Service Retirement and Disability Fund (5 U.S.C. 8348).

(5) Payment of annuities authorized to be paid from the Civil Service Retirement

and Disability Fund by statutory provisions other than subchapter III of chapter 83 or chapter 84 of title 5, United States Code.

(b) Nothing in this section may be construed to exempt any amount appropriated by this section from any otherwise applicable limitation on the use of funds contained in this Act.

Explanation of Change

The highlighted section provides appropriations for payments to the Judicial Officers' Retirement Fund, the Judicial Survivors' Annuities Fund, and the United States Court of Federal Claims Judges' Retirement Fund.  The judiciary proposes to retain this language in Title VI of the Financial Services and General Government appropriations bill.

65

## Courthouse Construction

### Overview

This presents the judiciary's courthouse construction space priorities and needs for fiscal year 2016, which must be funded from the General Services Administration's (GSA) capital construction budget. The judiciary does not have the real property authority necessary to construct its own facilities and must rely on GSA to construct court facilities. Fiscal year 2010 was the last time funding for the construction of a new courthouse was included in the President's Budget Request. Without stable and consistent funding for GSA's courthouse construction budget, the ability of the judiciary to carry out its constitutional mission of administering justice is significantly impaired.

| FY 2016 Request | |
|---|---|
| Courthouse Project | ($000) |
| Nashville, Tennessee | 188,000 |
| Toledo, Ohio | 109,300 |
| Charlotte, North Carolina | 177,000 |
| Des Moines, Iowa | 43,100 |
| FY 2016 Appropriation Request | 517,400 |

### Fiscal Year 2016 Courthouse Construction Priorities

For fiscal year 2016, the judiciary's request for courthouse construction includes $517.4 million for the construction of three new courthouses: Nashville, Tennessee; Toledo, Ohio; and Charlotte, North Carolina; and site selection and design for a new courthouse in Des Moines, Iowa.[1]

### 1. Nashville, Tennessee – $188.0 million for additional site, design, and construction

Nashville, Tennessee is the judiciary's top courthouse space priority in fiscal year 2016. Between fiscal years 2001 and 2004, Congress and GSA provided $26.1 million for the acquisition of the site and design of the building. To date, a total of $25.1 million has been obligated -- the site has been acquired and the design is 80 percent. GSA estimates that $188.0 million is needed for the final design and construction of the Nashville courthouse project.

---

[1] All cost estimates are provided by GSA Central Office and subject to future verification. Since the approval of the September 16, 2014, Five-Year Courthouse Project Plan for Fiscal Years 2016-2020, GSA provided an updated cost estimate for the project in Nashville, Tennessee, and an initial cost estimate for site acquisition and design of the project in Des Moines, Iowa.

67

**2. Toledo, Ohio – $109.3 million for additional design and construction**

The Toledo courthouse is number two on the judiciary's fiscal year 2016 priority list. In fiscal year 2004, Congress provided $6.5 million for site acquisition and the design of the building. The design is approximately 66 percent complete and a total of $5.2 million has been obligated. GSA estimates that $109.3 million is need for additional design and construction of the project.

**3. Charlotte, North Carolina – $177 million for construction**

The Charlotte courthouse annex is number three on the judiciary's fiscal year 2016 priority list. In fiscal year 2004, Congress provided $8.5 million for site acquisition and design of a new building. In 2005, a land exchange with the City of Charlotte gave GSA a site for a new courthouse while the City

acquired the existing courthouse. The City has been leasing the courthouse to GSA since 2005. In March 2012, GSA and the court assembled an internal design team to explore options for utilizing and adding to the existing courthouse as an alternative to new construction. This exercise confirmed that an annex/renovation option will fit on the existing site as a viable course of action. At the present time, GSA is actively involved in negotiations with the City to reacquire the existing Charlotte courthouse and site.

**4. Des Moines, Iowa – $43.1 million for site selection and design**

The Des Moines Courthouse is number four on the judiciary's fiscal year 2016 priority list. A site has not been identified and no funding has been provided at this time. GSA estimates that $43.1 million is needed for site selection and design of the project.

## Judiciary Capital Security Program

### Overview

This presents the judiciary's requirements and priorities for the Capital Security Program (CSP), which is funded from within the General Services Administration's (GSA) Federal Buildings Fund. The Capital Security program provides funding to address serious security deficiencies in existing courthouse buildings where physical renovations are viable in lieu of constructing a new courthouse. The authority necessary to make renovations of this size falls under the jurisdiction of the GSA.

| FY 2016 Request | |
| --- | --- |
| Courthouse Project | ($000) |
| Terry Sanford Federal Building, Raleigh, North Carolina | 11,000 |
| U.S. Post Office and Courthouse, Alexandria, Louisiana | 9,000 |
| FY 2016 Appropriation Request | 20,000 |

### Fiscal Year 2016 Projects

The Judiciary requests $20 million in fiscal year 2016 for GSA to address security deficiencies at two existing courthouses through the CSP. Funds are requested for the following locations[2]:

**1.  *Terry Sanford Federal Building, Raleigh, North Carolina - $ 11 million.***

Security deficiencies at this courthouse could be addressed by adding and/or reconfiguring two or three elevators and constructing additional secure corridors.

**2.  *U.S. Post Office and Courthouse, Alexandria, Louisiana - $ 9 million.***

Security deficiencies at this courthouse could be addressed by enclosing judges parking, providing an elevator and a corridor addition to allow the judges secure circulation. The U.S. Marshals Service would have new space that includes operations, an enclosed sally port, holding cells, prisoner elevator, and an interlock corridor addition for secure prisoner transport. An additional $2.2 million in judiciary funding is being leveraged to build an additional chambers and courtroom to maximize improvement to the facility.

---

[2] All project cost estimates are subject to verification by GSA.

69

# The Judiciary

# Fiscal Year 2016

# Congressional Budget Justification



(387)

# TABLE OF CONTENTS

Page Number

Overview of The Judiciary · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·   Overview - 1

**Summary of Budgetary Requirements for Fiscal Year 2016**
Summary of Fiscal Year 2016 Request · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·   Summary - 1
Summary of Appropriation Request for Fiscal Year 2016 · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·   Summary - 4
Summary of Mandatory Costs · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·   Summary - 5
Summary of Personnel · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·   Summary - 6
Fiscal Year 2016 Summary of Requested Changes · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·   Summary - 7
Comparative Summary of Obligations by Object Classification · · · · · · · · · · · · · · · · · · · · · · · · · ·   Summary - 8
Fiscal Year 2014 Summary · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·   Summary - 9
Fiscal Year 2015 Summary · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·   Summary - 10
Fiscal Year 2016 Summary · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·   Summary - 11
Outlay Table · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·   Summary - 12

**Supreme Court**

Summary Statement · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·   1.1

Salaries and Expenses · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·   1.2

Care of the Building and Grounds · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·   1.19

**United States Court of Appeals for the Federal Circuit** · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·   2.1

**United States Court of International Trade** · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·   3.1

i

**Courts of Appeals, District Courts, and Other Judicial Services**

Salaries and Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.1

Appendix 1 - Court Support Staffing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Appendix - 1

Defender Services . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.1

Fees of Jurors and Commissioners . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6.1

Court Security . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7.1

**Administrative Office of the U.S. Courts** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.1

**Federal Judicial Center** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.1

**Payment to Judiciary Trust Funds** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10.1

**United States Sentencing Commission** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11.1

**Judiciary Information Technology Fund** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12.1

Appendix 2 - Electronic Public Access Program . . . . . . . . . . . . . . . . . . . . . . . Appendix - 2

**General Provisions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13.1

**Courthouse Construction** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14.1

**Capital Security Program** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15.1

# Overview of The Judiciary

The organization of the judiciary, the district and circuit boundaries, the places of holding court, and the number of federal judges are established by laws passed by Congress and signed by the President. The number of federal judges in each district and in the courts of appeals is authorized by Congress on the basis of workload.

In addition to the adjudication of cases, other related functions, such as the provision of criminal defense services and the supervision of offenders, are prescribed by statute. The following sections provide a brief overview of the work of the courts and other related activities of the Judicial Branch.

## United States Supreme Court

The United States Supreme Court consists of nine justices, one of whom is appointed as Chief Justice of the United States. The Supreme Court is the final arbiter in the federal court system.

## United States Courts of Appeals

There are 13 courts of appeals and 179 authorized appellate court judgeships nationwide. Twelve of the courts of appeals have jurisdiction over cases within a regional area or "circuit." The twelve regional courts of appeals review cases from the United States district courts and the United States Tax Court, and orders and decisions from a number of federal administrative agencies.



The Federal Judiciary

United States Supreme Court

U.S Court of Appeals
12 Regional Circuit Courts of Appeals
1 U.S. Court of Appeals for the Federal Circuit

Trial Courts
U.S District Courts
U.S. Bankruptcy Courts
U.S. Court of International Trade
U.S. Court of Federal Claims

Other Judiciary Entities/Programs
Probation and Pretrial Services
Defender Services
Court Security
Fees of Jurors and Commissioners
Administrative Office of the U.S. Courts
Federal Judicial Center
Judiciary Trust Funds
United States Sentencing Commission

1

## The United States Court of Appeals for the Federal Circuit

The United States Court of Appeals for the Federal Circuit has exclusive national jurisdiction over a large number of diverse subject areas, including international trade, government contracts, patents, trademarks, certain money claims against the United States government, federal personnel, and veterans' benefits. Appeals to the court come from all 94 federal district courts, as well as the United States Court of Federal Claims, the United States Court of International Trade, and the United States Court of Appeals for Veterans Claims.

## United States District Courts

There are 94 district courts in the 50 states, the District of Columbia, the Commonwealth of Puerto Rico, and the territories of Guam, the U.S. Virgin Islands and the Northern Mariana Islands. The U.S. District Courts are the courts of general jurisdiction in the federal court system, and most federal cases are initially tried and decided in these courts. There are 677 authorized Article III district court judgeships nationwide.

The Federal Magistrates Act of 1968 created the office of magistrate judge to assist the district court judges. Magistrate judges are non-Article III judges appointed by the district judges, and they serve for a term of years rather than a lifetime appointment. Full-time magistrate judges serve a term of eight years and may be reappointed.

## United States Bankruptcy Courts

The bankruptcy courts are separate units of the district courts. Federal courts have exclusive jurisdiction over bankruptcy cases. This means that a bankruptcy case cannot be filed in a state court. United States bankruptcy judges are non-Article III judges appointed by the courts of appeals for a term of years rather than a lifetime appointment. They serve for a term of 14 years and may be reappointed.

## United States Court of International Trade

The Court of International Trade, with nine Article III judges, has exclusive nationwide jurisdiction of civil actions against the United States, its agencies and officers, and certain civil actions brought by the United States, arising out of import transactions and the administration and enforcement of the federal customs and international trade laws.

## United States Court of Federal Claims

The Court of Federal Claims has nationwide jurisdiction over certain types of claims against the federal government. Its 16 judges are appointed for a term of 15 years by the President with the advice and consent of the Senate. Judges appointed to the Court of Federal Claims are authorized under Article I of the constitution and do not have the tenure and salary protections of Article III judges.

**Probation and Pretrial Services**

Federal probation and pretrial services officers protect the public through the investigation and supervision of defendants and offenders within the federal criminal justice system. A pretrial services officer supervises defendants awaiting trial who are released into our communities and provides a source of information upon which the court can determine conditions of release or detention while criminal cases are pending adjudication. In support of sentencing determinations, which require both uniformity of practice and attention to individual circumstances, probation officers provide the court with reliable information concerning the offender, the victim, and the offense committed, as well as an impartial application of the sentencing guidelines. Probation officers supervise offenders sentenced to probation as well as offenders coming out of federal prison who are required to serve a term of supervised release.

**Defender Services**

The federal judiciary oversees and administers the federal defender and appointed counsel program, which provides legal representation and other services to persons financially unable to obtain counsel in criminal and related matters in federal court. The Sixth Amendment to the Constitution guarantees that "[i]n all criminal prosecutions the accused shall enjoy the right...to have the assistance of counsel for his defense." The Criminal Justice Act provides that courts shall appoint counsel from federal public and community defender organizations or from a panel of private attorneys ("panel attorneys") established by the court.

**Court Security**

The judiciary's Court Security appropriation funds protective guard services and security systems and equipment for United States courthouses and other facilities housing federal court operations. These services are contracted for and managed by the Department of Justice's United States Marshals Service, with additional guard services provided by the Department of Homeland Security's Federal Protective Service.

**Fees of Jurors and Commissioners**

The judiciary receives funding to provide for the statutory fees and allowances of federal grand and petit jurors and for the compensation of land commissioners.

**Administrative Office of the U.S. Courts**

The Administrative Office of the U.S. Courts is the central support entity for the judicial branch. It has management oversight of the court security program, the probation and pretrial services program, and the defender services program. It supports the Judicial Conference of the United States in determining judiciary policies; develops new methods, systems, and programs for conducting the business of the federal courts efficiently and economically; develops and supports the application of technology; collects and analyzes statistics on the business of the federal courts for accurate planning and decisions about resource needs; provides financial management services and personnel and payroll support; and conducts audits and reviews to ensure the continued quality and integrity of federal court operations.

3

393

**Federal Judicial Center**

The Federal Judicial Center is the judiciary's research and education agency. The Center undertakes research and evaluation of judicial operations and procedures for both the committees of the Judicial Conference and the courts themselves. It provides judges, court personnel, and others orientation, continuing education and training through seminars; curriculum units for in-court use; monographs and manuals; and audio, video, and interactive media programs.

**Payment to Judiciary Trust Funds**

This appropriation finances annuity payments to retired bankruptcy judges and magistrate judges, U.S. Court of Federal Claims judges, and spouses and dependent children of deceased judicial officers.

**United States Sentencing Commission**

The U.S. Sentencing Commission promulgates sentencing policies, practices, and guidelines for the federal criminal justice system. The Chair, three Vice Chairs, and three other voting commissioners are appointed by the President with the advice and consent of the Senate.

4

# Budget Summary – Details of Request

The judiciary's appropriation request for fiscal year 2016 totals $7,533,364,000 (includes mandatory and discretionary), an increase of $285,218,000, or 3.9 percent over the fiscal year 2015 enacted appropriations. Of that increase, $20,737,000 is for mandatory appropriations (3.8 percent increase) and $264,481,000 is for discretionary appropriations (3.9 percent increase).

**Adjustments to Base (Mandatory Appropriations)**

A $20.7 million increase is requested for mandatory Judiciary appropriations, as follows:

1. An increase of $4.8 million (23.2 percent of base adjustments) is associated with an additional 15 senior judges FTE, an additional 6 active Article III judges FTE, and an additional 4 bankruptcy judges FTE.

2. An increase of $4.1 million (19.8 percent of base adjustments) is for pay adjustments for Article III and bankruptcy judges for the Supreme Court, the Court of Appeals for the Federal Circuit, the Court of International Trade, and the S&E account, including the annualization of the fiscal year 2015 pay adjustment, a proposed January 2016 pay adjustment, and changes in benefits costs.

3. An increase of $11.8 million (57.0 percent of base adjustments) is required for the Judiciary retirement trust funds accounts based on requirements calculated by an independent actuary.

**Adjustments to Base (Discretionary Appropriations)**

A total of $209.0 million (79.0 percent) of the requested $264.5 million discretionary increase will provide for pay adjustments, inflation and other adjustments to base necessary to maintain current services.

Base adjustments include:

4. An increase of $132.0 million (63.1 percent of the base adjustments) will provide for inflationary pay and benefit rate increases for magistrate and claims judges, judges' staff, and supporting personnel. This includes the annualization of the fiscal year 2015 pay adjustment, a proposed January 2016 pay adjustment, changes in benefit costs, cost-of-living rate increases for panel attorneys, and a wage rate adjustment for court security officers.

5. An increase of $50.2 million (24.0 percent of base adjustments) is necessary to replace non-appropriated sources of funds used to support base requirements in fiscal year 2015 with direct appropriations. The judiciary will keep the Appropriations Subcommittees informed of any change in this estimate.

6. An increase of $15.7 million (7.5 percent of base adjustments) will provide for increases in contract rates and other standard inflationary increases.

7. An increase of $13.8 million (6.6 percent of base adjustments) is for ongoing information technology requirements.

8. An increase of $11.0 million (5.3 percent of base adjustments) is associated with an additional 50 senior judges' staff, an additional 31 Article III judges' staff, and an additional 14 bankruptcy judges' staff.

9. A net increase of $9.7 million (4.7 percent of base adjustments) is requested for the annualization of new space delivered in fiscal year 2015, the cost of new space expected to be delivered in fiscal year 2016, space related inflation, and other space-related adjustments including tenant alterations.

10. An increase of $5.0 million (2.4 percent of base adjustments) is requested for high threat, high profile representations for the federal defender organizations.

11. An increase of $4.9 million (4.9 percent of base adjustments) is associated with adjustments to security systems and equipment requirements.

12. An increase of $2.4 million (1.1 percent of base adjustments) will provide for estimated increases in Federal Protective Service (FPS) security charges, based on rates established by FPS.

13. An increase of $0.5 million (0.2 percent of base requirements) will provide 2 additional case budgeting attorney positions for Defender Services and the

annualization of 6 positions at the U.S. Sentencing Commission and 10 additional court security officer positions funded in fiscal year 2015.

14. A net decrease of $24.7 million (-11.8 percent of base adjustments) is associated with an additional 19 FTE to support Federal Defender Organization requirements based on capital and non-capital weighted caseload projections offset by a projected decrease in panel attorney representations.

15. A decrease of $4.7 million (-2.3 percent of base adjustments) is associated with non-recurring costs for new judges in fiscal year 2015.

16. A decrease of $3.4 million (-1.6 percent of base adjustments) is associated with non-recurring requirements, including the new financial system at the Supreme Court ($0.9 million) and Care of the Building and Grounds account for the Supreme Court (-$2.5 million).

17. A net decrease of $3.2 million (-1.5 percent of base adjustments) is associated with a projected net change in available jurors.

18. A decrease of $0.2 million (-0.1 percent of base adjustments) is associated with anticipated savings in panel attorney costs for Defender Services as a result of the addition of two new case-budgeting attorney positions in fiscal year 2016.

**Program Increases (Discretionary Appropriations)**

The remaining $55.5 million (21.0 percent) of the requested increase is for program enhancements.

Program increases include:

19. An increase of $19.0 million (34.2 percent of program enhancements) will provide for the implementation of the enterprise hosting and cloud computing initiative, which will provide cost-efficient, centralized information technology services to the courts.

20. An increase of $15.0 million (27.0 percent of program enhancements) is requested to expand evidence based supervision practices, including Staff Training Aimed at Reducing Re-arrest (STARR), for all probation and pretrial services offices to further the reduction of recidivism rates.

21. An increase of $7.0 million (12.6 percent of program enhancements) is requested to upgrade the email and messaging system for the judiciary.

22. An increase of $4.6 million (8.2 percent of program enhancements) is requested for the phased implementation of the new court security officer staffing standards.

23. An increase of $4.0 million (7.2 percent of program enhancements) is requested to increase the daily juror attendance fee by $10 (from $40 to $50) for grand and petit jurors effective January 2016.

24. An increase of $1.9 million (3.4 percent of program enhancements) is requested for three additional Magistrate judges (3 FTE), nine support staff (9 FTE), and associated operating costs for San Francisco or San Jose, CA; Seattle or Tacoma, WA; and Tampa, FL.

25. An increase of $1.8 million (3.2 percent of program enhancements) will provide for a $6 hourly panel attorney rate increase from $128 per hour to $134 per hour for non-capital cases.

26. An increase of $1.0 million (1.8 percent of program enhancements) is requested to pay for court security-related information technology support services at the USMS.

27. An increase of $0.8 million (1.4 percent of program enhancements) is requested to increase the CSO class size at the Federal Law Enforcement Training Center (FLETC) and to increase the number of training days from three to five days.

28. An increase of $0.5 million (0.8 percent of program enhancements) is requested for the additional maintenance requirements due to the increased number and complexity of systems introduced during the Modernization project at the Supreme Court.

29. An increase of $0.1 million (0.1 percent of program enhancements) will replace five variable frequency drive motor controllers associated with the building air handling systems at the Supreme Court.

The Judiciary
Summary of Appropriation Request for Fiscal Year 2016 ($000)

| | FY 2014 Enacted | | | FY 2015 Enacted | | | FY 2016 Request Change | | | FY 2016 Request Total | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Mand. | Discret. | Total Available | Mand. 3/ | Discret. | Total Available | Mand | Discret. | Total | Mand | Discret. | Total Request |
| **Supreme Court** | | | | | | | | | | | | |
| Salaries and Expenses | 2,352 | 72,625 | 74,977 | 2,527 | 74,967 | 77,494 | 30 | 750 | 780 | 2,557 | 75,717 | 78,274 |
| Building and Grounds | - | 11,158 | 11,158 | - | 11,640 | 11,640 | - | (1,687) | (1,687) | - | 9,953 | 9,953 |
| Total, Supreme Court | 2,352 | 83,783 | 86,135 | 2,527 | 86,607 | 89,134 | 30 | (937) | (907) | 2,557 | 85,670 | 88,227 |
| Court of Appeals for the Federal Circuit | 2,688 | 29,600 | 32,288 | 2,893 | 30,212 | 33,105 | 29 | 629 | 658 | 2,922 | 30,841 | 33,763 |
| Court of International Trade | 1,797 | 19,200 | 20,997 | 1,981 | 17,807 | 19,788 | 24 | 338 | 362 | 2,005 | 18,145 | 20,150 |
| **Courts of Appeals, District Courts and Other Judicial Services** | | | | | | | | | | | | |
| Salaries and Expenses - Direct | 377,098 | 4,658,830 | 5,035,928 | 399,361 | 4,846,818 | 5,246,179 | 8,854 | 189,520 | 198,374 | 408,215 | 5,036,338 | 5,444,553 |
| Vaccine Injury Fund | - | 5,327 | 5,327 | - | 5,423 | 5,423 | - | 622 | 622 | - | 6,045 | 6,045 |
| Total, Salaries and Expenses | 377,098 | 4,664,157 | 5,041,255 | 399,361 | 4,852,241 | 5,251,602 | 8,854 | 190,142 | 198,996 | 408,215 | 5,042,383 | 5,450,598 |
| Defender Services | - | 1,044,394 | 1,044,394 | - | 1,016,499 | 1,016,499 | - | 41,117 | 41,117 | - | 1,057,616 | 1,057,616 |
| Fees of Jurors and Commissioners | - | 53,891 | 53,891 | - | 52,191 | 52,191 | - | 220 | 220 | - | 52,411 | 52,411 |
| Court Security | - | 497,500 | 497,500 | - | 513,975 | 513,975 | - | 28,415 | 28,415 | - | 542,390 | 542,390 |
| Subtotal (CADC/OJS) | 377,098 | 6,259,942 | 6,637,040 | 399,361 | 6,434,906 | 6,834,267 | 8,854 | 259,894 | 268,748 | 408,215 | 6,694,880 | 7,103,015 |
| Administrative Office of the U.S. Courts | - | 81,200 | 81,200 | - | 84,399 | 84,399 | - | 3,191 | 3,191 | - | 87,590 | 87,590 |
| Federal Judicial Center | - | 26,200 | 26,200 | - | 26,959 | 26,959 | - | 720 | 720 | - | 27,679 | 27,679 |
| Payment to Judicial Retirement Funds | 126,931 | - | 126,931 | 143,600 | - | 143,600 | 11,800 | | 11,800 | 155,400 | - | 155,400 |
| Sentencing Commission | - | 16,200 | 16,200 | - | 16,894 | 16,894 | - | 646 | 646 | - | 17,540 | 17,540 |
| Direct | 510,866 | 6,510,798 | 7,021,664 | 550,362 | 6,692,361 | 7,242,723 | 20,737 | 263,859 | 284,596 | 571,099 | 6,956,220 | 7,527,319 |
| Vaccine Injury Fund | - | 5,327 | 5,327 | - | 5,423 | 5,423 | - | 622 | 622 | - | 6,045 | 6,045 |
| Total | 510,866 | 6,516,125 | 7,026,991 | 550,362 | 6,697,784 | 7,248,146 | 20,737 | 264,481 | 285,218 | 571,099 | 6,962,265 | 7,533,364 |

**The Judiciary**
**Summary of Mandatory Costs**

| | FY 2014 Actual | | FY 2015 Estimate | | Change | | FY 2016 Request | |
|---|---|---|---|---|---|---|---|---|
| | Authorized Positions | Amount ($000) | Authorized Positions | Amount ($000) | Authorized Positions | Amount ($000) | Authorized Positions | Amount ($000) |
| Supreme Court | 9 | 2,352 | 9 | 2,527 | - | 30 | 9 | 2,557 |
| Court of Appeals for the Federal Circuit | 12 | 2,688 | 12 | 2,893 | - | 29 | 12 | 2,922 |
| Court of International Trade | 9 | 1,797 | 9 | 1,981 | - | 24 | 9 | 2,005 |
| Courts of Appeals, District Courts and Other Judicial Services | 1,193 | 377,098 | 1,193 | 399,361 | - | 8,854 | 1,193 | 408,215 |
| Payment to Judiciary Trust Funds | - | 126,931 | - | 143,600 | - | 11,800 | - | 155,400 |
| **Total** | 1,223 | 510,866 | 1,223 | 550,362 | - | 20,737 | 1,223 | 571,099 |

## Summary of Personnel

| Full Time Equivalents by Account | FY 2014 Actual FTEs | FY 2015 Estimate FTEs | FY 2016 Request Increase FTEs | FY 2016 Request Total FTEs |
|---|---|---|---|---|
| **Direct Positions** | | | | |
| Supreme Court | | | | |
| Salaries and Expenses | 497 | 497 | - | 497 |
| Building and Grounds | 39 | 50 | - | 50 |
| Court of Appeals for the Fed. Circuit | 142 | 151 | - | 151 |
| Court of International Trade | 70 | 80 | - | 80 |
| Courts of Appeals, District Courts and Other Judicial Services | | | | |
| Salaries and Expenses | 27,604 | 28,246 | 132 | 28,378 |
| Defender Services | 2,416 | 2,722 | 20 | 2,742 |
| Fees of Jurors and Commissioners | - | - | - | - |
| Court Security | 58 | 72 | - | 72 |
| Subtotal | 30,078 | 31,040 | 152 | 31,192 |
| Administrative Office of the U.S. Courts | 568 | 621 | - | 621 |
| Reimbursable From: | | | | |
| Salaries and Expenses | 400 | 432 | (1) | 431 |
| Defender Services | 25 | 27 | 1 | 28 |
| Court Security | 7 | 7 | - | 7 |
| Federal Judicial Center | 125 | 128 | - | 128 |
| Payment to Judicial Retirement Funds | - | - | - | - |
| Sentencing Commission | 89 | 96 | 3 | 99 |
| Grand Total | 32,040 | 33,129 | 155 | 33,284 |
| **Reimbursable Positions** | | | | |
| Supreme Court | | | | |
| Salaries and Expenses | - | - | - | - |
| Buildings and Grounds | - | - | - | - |
| Court of Appeals for the Fed. Circuit | - | - | - | - |
| Court of International Trade | - | - | - | - |
| Courts of Appeals, District Courts and Other Judicial Services | | | | |
| Salaries and Expenses | 28 | 29 | - | 29 |
| Defender Services | - | - | - | - |
| Fees of Jurors and Commissioners | - | - | - | - |
| Court Security | - | - | - | - |
| Subtotal | 28 | 29 | - | 29 |
| Administrative Office of the U.S. Courts | - | - | - | - |
| Federal Judicial Center | - | 1 | - | 1 |
| Payment to Judicial Retirement Funds | - | - | - | - |
| Sentencing Commission | - | - | - | - |
| Violent Crime Reduction Trust Fund | - | - | - | - |
| Grand Total | 28 | 30 | - | 30 |

## FY 2016 Summary of Requested Changes

| | Supreme Court | | Federal Circuit | | International Trade | | COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES | | | | | | | | | | | | | Administrative Office | | Fed. Judicial Center | | Judiciary Trust Funds | | Sentencing Commission | | Total Judiciary | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Salaries and Expenses | | Defender Services | | Fees of Jurors and Commissioners | | Court Security | | Subtotal | | | | | | | | | | | | | | | |
| | FTE | ($000) | FTE | ($000) | FTE | ($000) | FTE | ($000) | FTE | ($000) | ($000) | FTE | ($000) | FTE | ($000) | ($000) | FTE | ($000) | FTE | ($000) | ($000) | FTE | ($000) | FTE | ($000) | FTE | ($000) | FTE | ($000) | |
| FY 2015 Enacted Appropriation Level - Mandatory | | 2,527 | 12 | 2,093 | 9 | 1,591 | | 399,361 | | 1,016,499 | 52,191 | 72 | 513,975 | | 6,429,483 | 621 | 84,399 | 128 | 26,959 | 143,600 | | | 96 | 16,994 | 1,923 | 350,362 | | |
| FY 2015 Enacted Appropriation Level - Discretionary | 538 | 86,607 | 139 | 30,912 | 71 | 17,907 | 26,453 | 4,866,818 | 2,722 | | | | | | | | | | | | | | | | 30,841 | 6,692,261 | | |
| FY 2015 Vaccine Injury Trust Fund | | | | | | | | 5,433 | | 5,423 | | | | | | | | | | | | | | | | 5,433 | | |
| FY 2015 Available Appropriation | 547 | 89,134 | 151 | 33,005 | 80 | 19,788 | 28,366 | 5,251,602 | 2,722 | 1,016,499 | 53,191 | 72 | 513,975 | | 6,834,267 | 1,087 | 84,399 | 129 | 26,959 | 143,600 | | | 96 | 16,994 | 33,130 | 7,248,146 | | |

### FY 2016 Adjustments to Base

**Judges:**
- Pay and benefit cost adjustments
- Additional senior judges
- Increase in average number of filled Article III judges
- Increase in average number of filled bankruptcy judges
- Annualization of new FY 2015 judges
- Payments to judiciary retirement trust funds

**Court Personnel**
- Pay and benefit cost adjustments
- Two new case-budgeting attorney positions
- Annualization of positions funded in fiscal year 2015
- Changes associated with workload (caseload)

**Other Changes**
- Funding necessary to maintain current services
- Inflation (non-pace-related)
- Vaccine Injury Trust Fund adjustment
- Space rental costs (includes inflation for space rental rates)
- Ongoing information technology requirements
- Change in existing taxes
- Adjustments to base (non-recurring requirements)
- FPS security service charges
- FY 2016 court security officer wage adjustment
- Annualization of court security officer positions (10)
- Adjustments to base for security systems and equipment
- Changes related to case-budgeting positions
- High threat trial requirements

Subtotal, FY 2016 Adjustments to Base

Total Adjustments to Base, Mandatory

Total Adjustments to Base, Discretionary

**FY 2016 Adjusted Base**

### FY 2015 Program Increases

**Judges:**
- Magistrate judges and staff

**Court Personnel and Programs**
- Replace Variable Frequency Drive Motor Controllers
- Increase Preventative Interior and Exterior Maintenance
- Enterprise Hosting and Cloud Computing Initiative
- Upgrade E-mail and Messaging System
- Relativity Standard Practice
- Non-Capital Panel Attorney Hourly Rate Increase (from $126 to $134)
- Increase Salary Daily Rate (from $1,800 to ...)
- Phased Implementation of new CSO staffing standards (69 CSOs)
- Court Security Officer Training
- FY 2016 Security Program Information Technology Services

Subtotal, FY 2016 Program Increases

Total Program Increases, Mandatory

Total Program Increases, Discretionary

Total Mandatory

Total Discretionary

Total Increases Requested, FY 2016

FY 2016 Appropriation Request

401

**THE JUDICIARY**

**COMPARATIVE SUMMARY OF OBLIGATIONS BY DIRECT CLASSIFICATION**

**(IN THOUSANDS OF DOLLARS)**

| Object Classification | FY 2014 Actual | FY 2015 Estimate | FY 2016 Request |
|---|---|---|---|
| **Personnel Services and benefits** | | | |
| 11  Personnel compensation | 3,057,280 | 3,251,163 | 3,468,856 |
| 12  Personnel benefits | 932,578 | 1,014,957 | 1,031,054 |
| 13  Benefits for former personnel | 17,674 | 15,655 | 16,491 |
| Total personnel services and benefits | 4,007,532 | 4,281,775 | 4,516,501 |
| **Contractual services and supplies** | | | |
| 21  Travel | 84,048 | 89,810 | 99,229 |
| 22  Transportation of things | 4,614 | 5,030 | 5,995 |
| 23  Rental payments to GSA | 1,110,973 | 1,107,106 | 1,120,094 |
| 23  Rental payment to others | 33,284 | 33,502 | 35,306 |
| 23  Communications utilities & misc. charges | 132,773 | 153,581 | 169,925 |
| 24  Printing and reproduction | 6,938 | 6,908 | 8,021 |
| 25  Other services | 1,390,567 | 1,529,159 | 1,566,837 |
| 26  Supplies and materials | 25,521 | 27,264 | 29,238 |
| Total contractual services and supplies | 2,779,718 | 2,952,360 | 3,035,454 |
| **Acquisition of capital assets** | | | |
| 31  Equipment | 209,712 | 212,854 | 223,484 |
| 32  Lands and Structures | 755 | 3,040 | 1,703 |
| 42  Claims and Indemnities | 3,495 | | |
| Total acquisition of capital assets | 213,962 | 215,894 | 225,187 |
| **Grants and fixed charges** | | | |
| 41  Grants, subsidies and contributions | 133,619 | 140,201 | 144,532 |
| 42  Insurance claims and indemnities | - | - | |
| 43  Interest and dividends | 175 | - | |
| Total grants and fixed charges | 133,794 | 140,201 | 144,532 |
| 91  Undefined Disbursements | 8,114 | 111 | 85 |
| **Total obligations** | 7,143,120 | 7,690,341 | 7,931,759 |
| Unobligated balance, start-of-year | (197,713) | (342,122) | (176,519) |
| Unobligated balance, end-of-year | 342,122 | 176,519 | 2,200 |
| Unobligated balance, expiring | 8,602 | - | |
| Incumbered Carryforward | - | 98,005 | |
| Current Year Offsetting Collections | (246,345) | (358,638) | (209,678) |
| Transfer | - | - | |
| Information Technology Fund | (6,216) | (8,240) | (4,397) |
| Prior Year Recoveries | (16,578) | (7,719) | |
| **Appropriation, Enacted** | 7,026,991 | 7,248,146 | 7,533,364 |

Detailed tables by fiscal year and appropriation follow

THE JUDICIARY
COMPARATIVE SUMMARY OF OBLIGATIONS BY OBJECT CLASSIFICATION ($000)

Fiscal Year 2014

| Object Classification | Supreme Court | Ct of Appeals Federal Cir | Ct of Intl Trade | Salaries and Expenses | Defender Services | Fees of Jurors | Court Security | Administrative Office | | Federal Judicial Cir | Judiciary Trust Funds | Sentencing Commission | Vaccine Injury Trust Fund, Supplemental | Total Judiciary |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Direct Program[1] | Reimbursable Program[1] | | | | | |
| **Personnel Services and benefits** | | | | | | | | | | | | | | |
| 11 Personnel compensation | 44,834 | 15,311 | 7,221 | 2,599,251 | 267,022 | 24,010 | 6,310 | 121,194 | (50,441) | 13,535 | | 9,033 | | 3,057,280 |
| 12 Personnel benefits | 14,647 | 3,310 | 1,803 | 802,123 | 82,780 | 1 | 1,944 | 34,233 | (14,941) | 3,907 | | 2,762 | | 932,578 |
| 13 Benefits for former personnel | | 99 | | 14,667 | 2,614 | | | 594 | (300) | | | | | 17,674 |
| Total personnel services and benefits | 59,481 | 18,720 | 9,024 | 3,416,040 | 352,417 | 24,011 | 8,254 | 156,020 | (65,682) | 17,442 | | 11,795 | | 4,007,532 |
| **Contractual services and supplies** | | | | | | | | | | | | | | |
| 21 Travel | 512 | 46 | 150 | 43,865 | 7,957 | 24,863 | 295 | 1,062 | (264) | 5,118 | | 444 | | 84,048 |
| 22 Transportation of things | 14 | 33 | 4 | 4,181 | 241 | | 50 | 146 | (97) | 35 | | 7 | | 4,614 |
| 23 Rental payments to GSA | | 6,894 | 8,269 | 1,051,633 | 37,955 | | 6,222 | | | | | | | 1,110,973 |
| 23 Rental payments to others | | | | 32,843 | 441 | | | | | 384 | | 33 | | 33,284 |
| 23 Communications utilities & misc. charges | 2,815 | 202 | 120 | 111,493 | 5,552 | 1,799 | 1,239 | 623 | (486) | | | | | 123,773 |
| 24 Printing and reproduction | 368 | 8 | 9 | 6,318 | 94 | | | 131 | (88) | 30 | | 68 | | 6,938 |
| 25 Other services | 13,367 | 4,355 | 1,818 | 351,009 | 434,054 | 597 | 452,521 | 7,110 | (4,762) | 1,150 | 126,931 | 2,417 | | 1,390,567 |
| 26 Supplies and materials | 3,010 | 57 | 47 | 17,902 | 1,716 | 905 | 803 | 375 | (67) | 669 | | 106 | | 25,521 |
| Total contractual services and supplies | 20,086 | 11,595 | 10,417 | 1,619,244 | 488,009 | 28,162 | 461,130 | 9,447 | (5,764) | 7,386 | 126,931 | 3,075 | | 2,779,718 |
| **Acquisition of capital assets** | | | | | | | | | | | | | | |
| 31 Equipment | 3,972 | 534 | 379 | 152,262 | 11,601 | | 37,557 | 2,953 | (2,003) | 1,309 | | 1,148 | | 209,712 |
| 32 Lands and Structures | 755 | | | | | | | | | | | | | 755 |
| 42 Claims and Indemnities | 3,495 | | | | | | | | | | | | | 3,495 |
| Total acquisition of capital assets | 8,222 | 534 | 379 | 152,262 | 11,601 | | 37,557 | 2,953 | (2,003) | 1,309 | | 1,148 | | 213,962 |
| **Grants and fixed charges** | | | | | | | | | | | | | | |
| 41 Grants, subsidies and contributions | | | | | 133,619 | | | | | | | | | 133,619 |
| 42 Insurance claims and indemnities | | | | | | | 175 | | | | | | | 175 |
| 43 Interest and dividends | | | | | | | 175 | | | | | | | 133,794 |
| Total grants and fixed charges | | | | | 133,619 | | 175 | | | | | | | |
| 91 Undefined Disbursements[2] | 706 | | 449 | | | | 5,350 | 1,139 | | 400 | | 70 | | 8,114 |
| FY 2014 Total Obligations | 87,789 | 31,565 | 20,269 | 5,187,546 | 985,646 | 52,173 | 512,466 | 169,559 | (73,449) | 26,537 | 126,931 | 16,088 | | 7,143,120 |
| Unobligated balance, start-of-year | (10,364) | | | (144,894) | (17,628) | (1,324) | (23,503) | | | | | | | (197,713) |
| Unobligated balance, end-of-year | 6,527 | | | 241,120 | 78,152 | 3,042 | 13,281 | | | | | | | 342,122 |
| Unobligated balance, expiring | 2,184 | 367 | 145 | | | | 5,794 | | | (317) | | 112 | | 8,602 |
| Current Year Offsetting Collections | | (86) | (32) | (231,623) | | | (3,908) | (14,267) | | | | | | (246,345) |
| Prior Year Recoveries | | (738) | (555) | (10,894) | (1,776) | | (4,280) | (643) | | | | | | (16,578) |
| Information Technology Fund | | | | (5,327) | | | (2,350) | | | | | | | (6,216) |
| Vaccine Injury Compensation Trust Fund | | | | | | | | | | | | | 5,327 | |
| Transfer | | 1,200 | 1,150 | | | | | (73,449) | 73,449 | | | | | |
| Reimbursable Program[1] | | | | | | | | | | | | | | |
| FY 2014 Appropriation, Enacted | 86,135 | 32,288 | 20,997 | 5,035,928 | 1,044,394 | 53,891 | 497,500 | 81,200 | | 26,200 | 126,931 | 16,200 | 5,327 | 7,036,091 |

[1] More information on AO reimbursable program obligations is included in section 8.

[2] Deposited into the JITF fund.

THE JUDICIARY
COMPARATIVE SUMMARY OF OBLIGATIONS BY OBJECT CLASSIFICATION ($000)
Fiscal Year 2015

| Object Classification | Supreme Court | Ct of Appeals Federal Cir. | Ct of Int'l Trade | Salaries and Expenses | Defender Services | Fees of Jurors | Court Security | Administrative Office Direct Program[1] | Administrative Office Reimbursable Program[1] | Federal Judicial Ctr | Judiciary Trust Funds | Sentencing Commission | Vaccine Injury Trust Fund | Total Judiciary |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Personal Services and benefits | | | | | | | | | | | | | | |
| 11  Personnel compensation | 47,373 | 16,812 | 8,440 | 2,845,657 | | | | 134,647 | (56,614) | 14,150 | | 10,287 | | 3,351,163 |
| 12  Personnel benefits | 16,406 | 3,802 | 2,282 | 870,462 | | | | 38,477 | (18,080) | 4,322 | | 2,941 | | 1,014,957 |
| 13  Benefits for former personnel | 32 | 40 | | 15,559 | | | | 24 | | | | | | 15,655 |
|  Total personnel services and benefits | 63,811 | 20,654 | 10,722 | 3,731,678 | | | | 173,148 | (74,694) | 18,472 | | 13,228 | | 4,381,775 |
| Contractual services and supplies | | | | | | | | | | | | | | |
| 21  Travel | 505 | 140 | 171 | 47,384 | 9,624 | 24,555 | 340 | 1,853 | (1,015) | 5,780 | | 473 | | 89,810 |
| 22  Transportation of things | 67 | 50 | 7 | 4,456 | 264 | 52 | 52 | 184 | (98) | 40 | | 8 | | 5,030 |
| 23  Rental payments to GSA | | 7,059 | 6,882 | 1,045,651 | 41,141 | | 6,373 | | | | | | | 1,107,106 |
| 23  Rental payments to others | | | | 33,019 | 483 | | | | | | | | | 33,502 |
| 23  Communications utilities & misc. charges | 2,991 | 232 | 36 | 139,909 | 7,101 | 1,470 | 1,011 | 789 | (494) | 511 | | 25 | | 153,581 |
| 24  Printing and reproduction | 423 | 20 | 17 | 6,000 | 103 | | | 284 | (90) | 61 | | 60 | | 6,908 |
| 25  Other services | 13,637 | 4,477 | 1,934 | 398,373 | 480,004 | 598 | 481,105 | 7,999 | (6,439) | 1,175 | 143,600 | 2,726 | | 1,529,159 |
| 26  Supplies and materials | 2,885 | 78 | 53 | 18,863 | 2,002 | 1,022 | 938 | 753 | (68) | 646 | | 92 | | 27,264 |
|  Total contractual services and supplies | 20,508 | 12,056 | 9,100 | 1,693,684 | 540,722 | 27,645 | 489,819 | 11,832 | (8,204) | 8,213 | 143,600 | 3,384 | | 2,952,360 |
| Acquisition of capital assets | | | | | | | | | | | | | | |
| 31  Equipment | 3,825 | 835 | 529 | 163,114 | 11,178 | | 29,183 | 3,900 | (1,765) | 774 | | 1,281 | | 212,854 |
| 32  Lands and Structures | 3,040 | | | | | | | | | | | | | 3,040 |
|  Total acquisition of capital assets | 6,865 | 835 | 529 | 163,114 | 11,178 | | 29,183 | 3,900 | (1,765) | 774 | | 1,281 | | 215,894 |
| Grants and fixed charges | | | | | | | | | | | | | | |
| 41  Grants, subsidies and contributions | | | | | 140,201 | | | | | | | | | 140,201 |
| 42  Insurance claims and indemnities | | | | | | | | | | | | | | |
| 43  Interest and dividends | | | | | | | | | | | | | | |
|  Total grants and fixed charges | | | | | 140,201 | | | | | | | | | 140,201 |
| 91  Undefined Disbursements[2] | | 85 | 26 | | | | | | | | | | | 111 |
| FY 2015 Total Obligations | 91,184 | 33,630 | 20,377 | 5,588,477 | 1,081,699 | 53,391 | 538,814 | 188,880 | (84,663) | 27,459 | 143,600 | 17,893 | | 7,690,341 |
| Unobligated balance, start-of-year | (6,527) | | | (241,120) | (78,152) | (3,042) | (13,281) | | | | | | | (342,122) |
| Unobligated balance, end-of-year | 4,477 | | | 135,000 | 25,000 | 2,042 | 10,000 | | | | | | | 176,519 |
| Encumbered Carryforward | | | | 98,005 | | | | | | | | | | 98,005 |
| Carryforward | | | | (135,000) | (11,848) | | | (17,700) | | | | | | (166,848) |
| Current Year Offsetting Collections | | | (389) | (193,760) | | | (7,719) | (2,088) | | (300) | | (999) | | (211,790) |
| Prior Year Recoveries | | | | | | | (3,839) | | | | | | | (7,719) |
| Information Technology Fund | | (525) | | | | | | | | (200) | | | | (8,240) |
| Vaccine Injury Compensation Trust Fund | | | | | | | | | | | | | 5,423 | 5,423 |
| Reimbursable Program[3] | | | | (5,423) | | | | (84,663) | 84,663 | | | | | |
| FY 2015 Appropriation, Enacted | 89,134 | 33,105 | 19,788 | 5,346,179 | 1,016,499 | 51,191 | 513,975 | 84,399 | | 26,959 | 143,600 | 16,894 | 5,423 | 7,248,146 |

[1] More information on AO reimbursable program obligations is included in section 8.
[2] Deposited into the JITF fund.

THE JUDICIARY
COMPARATIVE SUMMARY OF OBLIGATIONS BY OBJECT CLASSIFICATION (5000)
Fiscal Year 2016

| Object Classification | Supreme Court | Ct. of Appeals Federal Cir. | Ct. of Int'l Trade | Salaries and Expenses | Defender Services | Fees of Jurors | Court Security | Admin Office Direct Program[1] | Admin Office Reimbursable Program[1] | Federal Judicial Ctr | Judiciary Trust Funds | Sentencing Commission | Vaccine Injury Trust Fund | Total Judiciary |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Personnel Services and benefits** | | | | | | | | | | | | | | |
| 11 Personnel compensation | 48,355 | 17,199 | 8,603 | 2,949,701 | 305,024 | 25,890 | 7,720 | 138,004 | (57,554) | 14,504 | | 10,610 | | 3,468,056 |
| 12 Personnel benefits | 16,902 | 3,889 | 2,380 | 880,283 | 97,111 | | 2,432 | 39,625 | (18,403) | 4,549 | | 3,185 | | 1,031,954 |
| 13 Benefits for former personnel | | 40 | | 16,451 | | 1 | | | | | | | | 16,491 |
| Total personnel services and benefits | 65,257 | 21,128 | 10,983 | 3,846,435 | 402,135 | 25,891 | 10,152 | 177,629 | (75,957) | 19,053 | | 13,795 | | 4,516,501 |
| **Contractual services and supplies** | | | | | | | | | | | | | | |
| 21 Travel | 508 | 143 | 161 | 54,609 | 10,889 | 25,356 | 346 | 1,588 | (676) | 5,870 | | 435 | | 99,229 |
| 22 Transportation of things | 73 | 50 | 9 | 5,401 | 271 | 53 | 189 | (100) | | 41 | | 8 | | 5,995 |
| 23 Rental payments to GSA | | 7,144 | 6,878 | 1,058,602 | 41,756 | | 6,524 | | | | | | | 1,120,904 |
| 23 Rental payments to others | | | | 34,810 | 496 | | | | | | | | | 35,306 |
| 23 Communications utilities & misc. charges | 3,159 | 241 | 89 | 155,995 | 7,305 | 1,525 | 1,028 | 810 | (501) | 734 | | 40 | | 169,925 |
| 24 Printing and reproduction | 430 | 26 | 23 | 7,124 | 106 | | | 271 | (91) | 62 | | 70 | | 8,021 |
| 25 Other services | 12,560 | 4,490 | 1,557 | 420,842 | 461,396 | 620 | 504,970 | 7,702 | (6,798) | 1,313 | 155,600 | 2,445 | | 1,566,837 |
| 26 Supplies and materials | 2,949 | 90 | 53 | 20,514 | 2,100 | 1,061 | 954 | 773 | (70) | 696 | | 118 | | 29,238 |
| Total contractual services and supplies | 19,619 | 12,184 | 9,170 | 1,757,397 | 524,318 | 28,562 | 513,875 | 11,333 | (8,236) | 8,716 | 155,600 | 3,116 | | 3,035,454 |
| **Acquisition of capital assets** | | | | | | | | | | | | | | |
| 31 Equipment | 3,925 | 841 | 442 | 173,926 | 11,631 | | 31,315 | 1,839 | (1,799) | 735 | | 639 | | 223,484 |
| 32 Lands and Structures | 1,703 | | | | | | | | | | | | | 1,703 |
| Total acquisition of capital assets | 5,628 | 841 | 442 | 173,926 | 11,631 | | 31,315 | 1,839 | (1,799) | 735 | | 629 | | 225,187 |
| **Grants and fixed charges** | | | | | | | | | | | | | | |
| 41 Grants, subsidies and contributions | | | | | 144,532 | | | | | | | | | 144,532 |
| 42 Insurance claims and indemnities | | | | | | | | | | | | | | |
| 43 Interest and dividends | | | | | | | | | | | | | | |
| Total grants and fixed charges | | | | | 144,532 | | | | | | | | | 144,532 |
| 91 Undefined Disbursements[2] | 85 | | | | | | | | | | | | | 85 |
| **FY 2016 Total Obligations** | 90,594 | 34,238 | 20,595 | 5,777,757 | 1,082,616 | 54,453 | 555,342 | 190,801 | (85,992) | 28,504 | 155,600 | 17,540 | | 7,921,759 |
| Unobligated balance, start-of-year | (4,477) | | | (135,000) | (25,000) | (2,042) | (10,000) | | | | | | | (176,519) |
| Unobligated balance, end-of-year | 2,200 | | | | | | | | | | | | | 2,200 |
| Current Year Offsetting Collections | | | | (192,159) | | | (2,952) | (17,219) | | (300) | | | | (209,678) |
| Information Technology Fund | | (475) | (445) | (6,045) | | | | | | (525) | | | | (4,397) |
| Vaccine Injury Compensation Trust Fund Reimbursable Program[1] | | | | | | | | (85,992) | 85,992 | | | | 6,045 | |
| **FY 2016 Appropriation, Available** | 88,327 | 33,763 | 20,150 | 5,444,553 | 1,057,616 | 52,411 | 542,390 | 87,590 | | 27,679 | 155,600 | 17,540 | 6,045 | 7,533,364 |

[1] More information on AO reimbursable program obligations is included in section 8.

[2] Deposited into the JITF fund.

405

## THE JUDICIARY

### Outlays - FY 2014 to FY 2016
(Dollars in Thousands)

| Appropriation | FY 2014 | FY 2015 | FY 2016 | Outlay Spendout Rates | | |
|---|---|---|---|---|---|---|
| | | | | YR 1 | YR 2 | YR 3 |
| **Supreme Court** | | | | | | |
| Discretionary | 70,847 | 77,769 | 76,269 | 80% | 20% | 0% |
| Mandatory | 2,352 | 2,527 | 2,557 | 100% | 0% | 0% |
| **Total, Salaries and Expenses** | 73,199 | 80,296 | 78,826 | | | |
| **Buildings and Grounds** | 15,264 | 14,325 | 12,402 | 68% | 12% | 20% |
| **Court of Appeals for the Federal Circuit** | | | | | | |
| Discretionary | 28,662 | 28,607 | 30,837 | 80% | 20% | 0% |
| Mandatory | 2,688 | 2,893 | 2,922 | 100% | 0% | 0% |
| **Total, Court of Appeals for the Federal Circuit** | 31,350 | 31,500 | 33,759 | | | |
| **Court of International Trade** | | | | | | |
| Discretionary | 18,713 | 17,263 | 18,252 | 95% | 5% | 0% |
| Mandatory | 1,797 | 1,981 | 2,005 | 100% | 0% | 0% |
| **Total, Court of International Trade** | 20,510 | 19,244 | 20,257 | | | |
| *Courts of Appeals, District Courts, and Other Judicial Services:* | | | | | | |
| Salaries and Expenses - Discretionary | 4,602,620 | 4,832,639 | 5,021,785 | 93% | 7% | 0% |
| Salaries and Expenses - Mandatory | 377,098 | 399,361 | 408,215 | 100% | 0% | 0% |
| **Total, Salaries and Expenses** | 4,979,718 | 5,232,000 | 5,430,000 | | | |
| Defender Services | 967,308 | 1,026,093 | 1,056,000 | 97% | 3% | 0% |
| Fees of Jurors & Commissioners | 51,528 | 52,109 | 54,486 | 99.5% | 0.5% | 0% |
| Court Security | 483,279 | 494,000 | 534,000 | 80.0% | 20.0% | 0% |
| **Total, Courts of Appeals, District Courts, and Other Judicial Services** | 6,481,833 | 6,804,202 | 7,074,486 | | | |
| **Administrative Office of the United States Courts** | 77,526 | 79,000 | 87,990 | 94% | 6% | 0% |
| **Federal Judicial Center** | 25,243 | 31,496 | 27,340 | 95% | 5% | 0% |
| **Judicial Retirement Funds (MANDATORY)** | 126,931 | 143,600 | 155,400 | 100% | 0% | 0% |
| **United States Sentencing Commission** | 16,370 | 17,302 | 17,427 | 85% | 15% | 0% |
| Subtotal, Discretionary | 6,357,360 | 6,670,603 | 6,936,788 | | | |
| Subtotal, Mandatory | 510,866 | 550,362 | 571,099 | | | |
| **Total, Judiciary** | 6,868,226 | 7,220,965 | 7,507,887 | | | |

406

SUPREME COURT OF THE UNITED STATES
SUMMARY STATEMENT RELATING APPROPRIATION ESTIMATES TO THE CURRENT APPROPRIATION

Fiscal Year 2015 Enacted Appropriation                                          $   89,134,000

|  | 2015 Enacted Appropriation | Requirements 2016 Requested Appropriation | Requested Increase/Decrease |
|---|---|---|---|
| Salaries and Expenses [1] | $ 77,494,000 | $ 78,274,000 | $   780,000 |
| Care of the Building and Grounds | $ 11,640,000 | $ 9,953,000 | $ (1,687,000) |
| Totals | $ 89,134,000 | $ 88,227,000 | $   (907,000) |

Proposed Change from Fiscal Year 2015 Enacted Appropriation                     $   (907,000)

Total Requested Budget Authority, Fiscal Year 2016                              $   88,227,000

[1] The Salaries and Expenses account includes both mandatory and discretionary funding

1.1

**SUPREME COURT OF THE UNITED STATES**
*Salaries and Expenses*
**SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS**

|  | Mandatory | Discretionary | Total |
|---|---|---|---|
| **Fiscal Year 2015 Enacted Appropriation** | $2,527,000 | $74,967,000 | $77,494,000 |
| **Fiscal Year 2016 Appropriation Request** | $2,557,000 | $75,717,000 | $78,274,000 |
| **Requested Increase from Fiscal Year 2015 Appropriation** | $30,000 | $750,000 | $780,000 |

**APPROPRIATION LANGUAGE**

**SUPREME COURT OF THE UNITED STATES**

**SALARIES AND EXPENSES**

For expenses necessary for the operation of the Supreme Court, as required by law, excluding care of the building and grounds, including hire of passenger motor vehicles as authorized by 31 U.S.C. 1343 and 1344; not to exceed $10,000 for official reception and representation expenses; and for miscellaneous expenses, to be expended as the Chief Justice may approve, [$74,967,000]*$75,717,000*, of which $2,000,000 shall remain available until expended.

In addition, there are appropriated such sums as may be necessary under current law for salaries of the chief justice and associate justices of the court.

1.2

1.3

SUMMARY OF REQUEST
SUPREME COURT OF THE UNITED STATES
SALARIES AND EXPENSES
FISCAL YEAR 2016
(Dollar amounts in thousands)

**Fiscal Year 2016 Resource Requirements:**

| Page No. | | Mandatory FTE | Mandatory Amount | Discretionary FTE | Discretionary Amount | Total FTE | Total Amount |
|---|---|---|---|---|---|---|---|
| | Fiscal Year 2015 Enacted Appropriation.......... | 9 | 2,527 | 488 | 74,967 | 497 | 77,494 |
| | **Adjustments to Base to Maintain Current Services:** | | | | | | |
| | **A. Justices** | | | | | | |
| | Pay and benefits cost adjustments | | | | | | |
| 1.15 | 1. Annualization of the 2015 pay adjustment (1.0% for three months)............... | - | 5 | - | - | - | 5 |
| 1.15 | 2. Proposed January 2016 pay adjustment (1.0% for nine months)............... | - | 16 | - | - | - | 16 |
| 1.15 | 3. Health benefits increase............... | - | 8 | - | - | - | 8 |
| 1.16 | 4. FICA increase............... | - | 1 | - | - | - | 1 |
| | **B. Court Support Personnel** | | | | | | |
| | Pay and benefits cost adjustments | | | | | | |
| 1.16 | 5. Annualization of 2015 pay adjustment (1.0% for three months)............... | - | - | - | 134 | - | 134 |
| 1.16 | 6. Proposed January 2016 pay adjustment (1.0% for nine months)............... | - | - | - | 404 | - | 404 |
| 1.16 | 7. Promotions and within-grade increases............... | - | - | - | 367 | - | 367 |
| 1.16 | 8. Health benefits increase............... | - | - | - | 132 | - | 132 |
| 1.17 | 9. FICA increase............... | - | - | - | 6 | - | 6 |
| 1.17 | 10. FERS increase............... | - | - | - | 38 | - | 38 |
| 1.17 | 11. One more compensable day............... | - | - | - | 206 | - | 206 |
| | **C. Other Adjustments** | | | | | | |
| | General inflationary adjustments | | | | | | |
| 1.17 | 12. Inflationary increases in charges for contracts, services, supplies, and equipment. | - | - | - | 268 | - | 268 |
| 1.17 | 13. Library services............... | - | - | - | 64 | - | 64 |
| 1.17 | 14. Non-recurring unemployment benefits costs............... | - | - | - | (32) | - | (32) |
| 1.18 | 15. Finance system non-recurring costs............... | - | - | - | (837) | - | (837) |
| | Subtotal, adjustments to base to maintain current services............... | - | 30 | - | 750 | - | 780 |
| | **Total Appropriation Required, Fiscal Year 2016.................** | 9 | 2,557 | 488 | 75,717 | 497 | 78,274 |

I.4

## SUPREME COURT OF THE UNITED STATES
### SALARIES AND EXPENSES
#### Obligations by Activity ($000)

| Activity | Fiscal Year 2014 Actual | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request |
|---|---|---|---|
| Salaries and Expenses, Total Obligations | 72,793 | 77,494 | 78,274 |
| Unobligated Balance, Start of the Year | - | - | - |
| Unobligated Balance, End of the Year | - | - | - |
| Unobligated Balance, Expiring | 2,184 | - | - |
| Available Appropriation | 74,977 | 77,494 | 78,274 |

### Object Classification ($000)

| Description | Fiscal Year 2014 Actual | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request |
|---|---|---|---|
| 11 Personnel compensation | 41,630 | 43,901 | 44,763 |
| 12 Personnel benefits | 13,572 | 15,241 | 15,697 |
| 13 Benefits for former personnel | - | 32 | - |
| 21 Travel | 506 | 500 | 508 |
| 22 Transportation of things | 14 | 67 | 68 |
| 23 Rent, communications and utilities | 1,222 | 1,141 | 1,159 |
| 24 Printing and reproduction | 368 | 423 | 430 |
| 25 Other services | 8,897 | 9,929 | 9,250 |
| 26 Supplies and materials | 2,612 | 2,435 | 2,474 |
| 31 Equipment | 3,972 | 3,825 | 3,925 |
| Total Obligations | 72,793 | 77,494 | 78,274 |

SUPREME COURT OF THE UNITED STATES
**Salaries & Expenses**
**Relation of Obligations to Outlays ($000)**

|  | Fiscal Year 2014 Actual | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 72,793 | 77,494 | 78,274 | 780 |
| Obligated balance, start of year | 9,996 | 9,590 | 6,788 | (2,802) |
| Obligated balance, end of year | (9,590) | (6,788) | (6,236) | 552 |
| Net Outlays | 73,199 | 80,296 | 78,826 | (1,470) |

**Personnel Summary**

|  | Fiscal Year 2014 Actual | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total compensable workyears: Full-time equivalent employment | 497 | 497 | 497 | 0 |

411

I.6

## SUPREME COURT OF THE UNITED STATES
### Salaries & Expenses
### Technology Fund Obligations and Financing (No-Year Funding)
### ($000)

| Activity | Fiscal Year 2014 Actual | | Fiscal Year 2015 Estimate | | Fiscal Year 2016 Request | |
|---|---|---|---|---|---|---|
| Unobligated Balance, Start of the Year | | 5,415 | | 5,293 | | 4,693 |
| New Deposits | $ | 1,500 | $ | 2,000 | $ | 2,000 |
| Unobligated Balance, End of the Year | $ | (5,293) | $ | (4,693) | $ | (4,693) |
| **Technology Fund, Total Obligations** | **$** | **1,622** | **$** | **2,600** | **$** | **2,000** |

Note:

FY 2014 Actuals: Payroll migration in final stages of completion; Began preparations for next Court-wide desktop platform rollout by beginning evaluation of Virtual Desktop Technology, upgrading and replacing end of life Security Information and Event Management System and end of life Intrusion Prevention System

FY 2015 Projected: Finalize planning and finalize technology evaluations for next desktop platform rollout; begin new Court-wide desktop implementation.

FY 2016 Request: Continue new Court-wide desktop implementation; update security scanning products for electronic files entering the Court's network infrastructure.

Before the establishment of no-year funding, the Court encountered difficulties in planning technology upgrades because it lacked an assurance of available funds to commence and complete the upgrades. Congress's initiation of the no-year funding mechanism in fiscal year 2006 resolved that difficulty. Under the no-year funding mechanism, technology fund balances have been built up in $2 million annual increments and spent when needed to accomplish scheduled technology upgrades, typically over four-year cycles

CLER-0067-12-2014

## Table SC.1
## Summary of Supreme Court Cases

| Term* | Case Filings During Term | Carried Over From Prior Term | Total Cases | Original & Paid | In Forma Pauperis | Total Cases Disposed Of | Total Cases Not Disposed Of |
|---|---|---|---|---|---|---|---|
| 1975 | 3,940 | 821 | 4,761 | 2,866 | 2,395 | 3,806 | 955 |
| 1980 | 4,174 | 970 | 5,144 | 2,773 | 2,371 | 4,255 | 889 |
| 1981 | 4,422 | 889 | 5,311 | 2,957 | 2,354 | 4,433 | 878 |
| 1982 | 4,201 | 878 | 5,079 | 2,727 | 2,352 | 4,201 | 878 |
| 1983 | 4,222 | 878 | 5,100 | 2,706 | 2,394 | 4,141 | 959 |
| 1984 | 4,047 | 959 | 5,006 | 2,590 | 2,416 | 4,261 | 745 |
| 1985 | 4,413 | 745 | 5,158 | 2,581 | 2,577 | 4,275 | 883 |
| 1986 | 4,240 | 883 | 5,123 | 2,559 | 2,564 | 4,348 | 775 |
| 1987 | 4,438 | 775 | 5,288 | 2,593 | 2,675 | 4,387 | 881 |
| 1988 | 4,776 | 881 | 5,657 | 2,599 | 3,058 | 4,829 | 828 |
| 1989 | 4,918 | 828 | 5,746 | 2,430 | 3,316 | 4,932 | 814 |
| 1990 | 5,502 | 814 | 6,316 | 2,365 | 3,961 | 5,412 | 904 |
| 1991 | 5,866 | 904 | 6,770 | 2,463 | 4,307 | 5,828 | 942 |
| 1992 | 6,303 | 942 | 7,245 | 2,453 | 4,792 | 6,356 | 889 |
| 1993 | 6,897 | 889 | 7,786 | 2,454 | 5,332 | 6,682 | 1,104 |
| 1994 | 6,996 | 1,104 | 8,100 | 2,526 | 5,574 | 7,132 | 968 |
| 1995 | 6,597 | 968 | 7,565 | 2,467 | 5,098 | 6,599 | 966 |
| 1996 | 6,684 | 966 | 7,600 | 2,435 | 5,165 | 6,689 | 911 |
| 1997 | 6,781 | 911 | 7,692 | 2,439 | 5,253 | 6,718 | 974 |
| 1998 | 7,109 | 974 | 8,083 | 2,394 | 5,689 | 7,015 | 1,068 |
| 1999 | 7,377 | 1,068 | 8,445 | 2,421 | 6,024 | 7,332 | 1,113 |
| 2000 | 7,852 | 1,113 | 8,965 | 2,314 | 6,651 | 7,713 | 1,252 |
| 2001 | 7,924 | 1,252 | 9,176 | 2,218 | 6,958 | 8,025 | 1,151 |
| 2002 | 8,255 | 1,151 | 9,406 | 2,197 | 7,209 | 8,337 | 1,069 |
| 2003 | 7,814 | 1,068 | 8,882 | 2,064 | 6,818 | 7,791 | 1,092 |
| 2004 | 7,496 | 1,092 | 8,588 | 2,045 | 6,543 | 7,503 | 1,087 |
| 2005 | 8,521 | 1,087 | 9,608 | 2,033 | 7,575 | 8,209 | 1,399 |
| 2006 | 8,857 | 1,399 | 10,256 | 2,075 | 8,181 | 8,895 | 1,361 |
| 2007 | 8,241 | 1,361 | 9,602 | 1,974 | 7,628 | 8,375 | 1,227 |
| 2008 | 7,738 | 1,228 | 8,966 | 1,945 | 7,021 | 7,824 | 1,142 |
| 2009 | 8,159 | 1,142 | 9,301 | 1,913 | 7,388 | 8,096 | 1,205 |
| 2010 | 7,857 | 1,205 | 9,062 | 1,895 | 7,167 | 7,828 | 1,234 |
| 2011 | 7,713 | 1,239 | 8,952 | 1,870 | 7,082 | 7,656 | 1,296 |
| 2012 | 7,509 | 1,297 | 8,806 | 1,809 | 6,997 | 7,602 | 1,204 |
| 2013 | 7,376 | 1,204 | 8,580 | 1,874 | 6,706 | 7,547 | 1,033 |
| 2014** | 7,273 | 1,033 | 8,306 | 1,880 | 6,476 | 7,226 | 1,080 |

*October Term 2014 corresponds with fiscal year 2015.
**Projection for full Term.

CLEPR-067A-12-2013

### Table SC.2
### Summary of Case Dispositions

| Term | Cases Granted Review | | Cases Reviewed and Decided Without Argument During Term | Cases Granted Review During Term |
|---|---|---|---|---|
| | Argued This Term | Disposed of by Opinion | | |
| 1979 | 179 | 176 | 184 | 172 |
| 1980 | 154 | 153 | 122 | 188 |
| 1981 | 184 | 170 | 126 | 201 |
| 1982 | 184 | 174 | 119 | 179 |
| 1983 | 184 | 174 | 81 | 149 |
| 1984 | 175 | 159 | 73 | 185 |
| 1985 | 171 | 171 | 106 | 187 |
| 1986 | 175 | 174 | 109 | 167 |
| 1987 | 167 | 160 | 87 | 180 |
| 1988 | 170 | 168 | 107 | 147 |
| 1989 | 146 | 146 | 80 | 123 |
| 1990 | 125 | 125 | 115 | 141 |
| 1991 | 127 | 123 | 77 | 121 |
| 1992 | 116 | 115 | 113 | 97 |
| 1993 | 99 | 99 | 70 | 99 |
| 1994 | 94 | 94 | 69 | 96 |
| 1995 | 90 | 90 | 120 | 106 |
| 1996 | 96 | 90 | 83 | 87 |
| 1997 | 96 | 94 | 61 | 90 |
| 1998 | 83 | 88 | 59 | 81 |
| 1999 | 88 | 79 | 54 | 92 |
| 2000 | 88 | 83 | 127 | 99 |
| 2001 | 84 | 85 | 72 | 88 |
| 2002 | 91 | 79 | 66 | 91 |
| 2003 | 87 | 89 | 62 | 87 |
| 2004 | 90 | 85 | 836 | 80 |
| 2005 | 78 | 82 | 105 | 78 |
| 2006 | 75 | 74 | 280 | 77 |
| 2007 | 75 | 72 | 208 | 95 |
| 2008 | 87 | 83 | 95 | 88 |
| 2009 | 82 | 77 | 95 | 78 |
| 2010 | 86 | 78 | 84 | 90 |
| 2011 | 86 | 73 | 137 | 66 |
| 2012 | 77 | 76 | 88 | 93 |
| 2013 | 77 | 77 | 72 | 76 |
| 2014* | 75 | 74 | 60 | 78 |

*Projection for full Term.

414

**Table SC.3**
**Applications to Individual Justices,**
**Including Capital Cases**

| Term | Applications for Relief to Individual Justices | Chambers Opinions | Applications for Stay in Capital Cases* |
|------|------|------|------|
| 1975 | 1,165 | 10 | 0 |
| 1980 | 1,096 | 11 | 32 |
| 1981 | 1,145 | 7 | 39 |
| 1982 | 1,077 | 19 | 45 |
| 1983 | 1,072 | 14 | 76 |
| 1984 | 982 | 11 | 62 |
| 1985 | 1,050 | 6 | 66 |
| 1986 | 951 | 11 | 86 |
| 1987 | 1,001 | 3 | 60 |
| 1988 | 1,064 | 5 | 90 |
| 1989 | 929 | 0 | 71 |
| 1990 | 984 | 3 | 55 |
| 1991 | 968 | 1 | 74 |
| 1992 | 974 | 2 | 76 |
| 1993 | 1,113 | 5 | 79 |
| 1994 | 992 | 5 | 82 |
| 1995 | 1,087 | 1 | 87 |
| 1996 | 935 | 1 | 110 |
| 1997 | 985 | 1 | 115 |
| 1998 | 1,100 | 0 | 138 |
| 1999 | 1,085 | 0 | 132 |
| 2000 | 1,146 | 1 | 87 |
| 2001 | 1,006 | 2 | 91 |
| 2002 | 1,096 | 3 | 99 |
| 2003 | 1,064 | 2 | 86 |
| 2004 | 1,081 | 3 | 68 |
| 2005 | 1,236 | 2 | 112 |
| 2006 | 1,243 | 2 | 71 |
| 2007 | 1,094 | 3 | 29 |
| 2008 | 1,167 | 2 | 63 |
| 2009 | 1,268 | 2 | 60 |
| 2010 | 1,277 | 2 | 65 |
| 2011 | 1,266 | 1 | 61 |
| 2012 | 1,251 | 1 | 44 |
| 2013 | 1,286 | 1 | 73 |
| 2014** | 1,260 | 2 | 54 |

\* Some applications addressed to a Justice are referred to the whole Court for decision.

\*\* Projection for full Term.

CLER-0678-12-2014

1.9

415



416





SUPREME COURT OF THE US

Office of the Clerk

Cases Docketed By Type

Civil
33%
2405

Habeas Corpus
32%
2332

Other
1%
103

Criminal
34%
2534

Term Year 2013

1.12



SUPREME COURT OF THE US

Office of the Clerk

Cases Argued By Type

Criminal
19%
15

Habeas Corpus
4%
3

Original
0%
0

Civil
77%
61

Term Year 2013

1.13



SUPREME COURT OF THE US

Office of the Clerk

Cases Docketed

Paid and Original
21%
1568

I.F.P.
79%
5808

Term Year 2013

1.14

## GENERAL STATEMENT AND INFORMATION

The Supreme Court Salaries and Expenses account funds salaries of the Chief Justice, eight Associate Justices, the Counselor to the Chief Justice, the four Statutory Officers of the Court, and the employees of the Court. The account also funds the necessary expenses of the Court, including printing and binding of the Supreme Court reports, purchasing books for the Supreme Court and miscellaneous expenses. For fiscal year 2016, the Supreme Court Salaries and Expenses request fully funds current services for court personnel and operations.

### Justification of Changes

The fiscal year 2016 budget request for the Court totals $78,274,000, which includes $2,557,000 for mandatory expenses and $75,717,000 for discretionary expenses. The discretionary request of $75,717,000 is a 1.0 percent increase over the fiscal year 2015 enacted discretionary appropriation of $74,967,000. This request includes inflationary adjustments of $1,619,000, and Court-initiated cost savings of $869,000, resulting in a net discretionary increase of $750,000. The budget request includes no-year funding for planning and implementing periodic Court-wide technology and automation upgrades totaling $2,000,000.

**Adjustments to base to maintain current services** include funds for pay and benefits increases for current Justices and staff. Also included are increased costs of ongoing activities such as travel, postage, supplies, law books, equipment, furnishings, automation, and offsite warehouse space for activities that include mail screening.

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

The following narrative provides information and justification for each of the adjustments to base for the Court.

### A. JUSTICES

*Pay and Benefits Cost Adjustments*

**1. Annualization of January 2015 pay adjustment**

**Mandatory Increase: $5,000**

As a result of the Employment Cost Index (ECI) adjustment, federal pay rates increased by 1.0 percent in January 2015. The requested increase provides for the cost of three months (from October 2015 to December 2015) of the 2015 pay increase in fiscal year 2016.

**2. Proposed January 2016 pay adjustment**

**Mandatory Increase: $16,000**

As of January 2015, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.0 percent beginning on or after January 1, 2016. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2016 (from January 2016 to September 2016).

1.15

**3. Health benefits increase**

**Mandatory Increase: $8,000**

Based on the information from the Office of Personnel Management, health benefit premium contributions are projected to increase by an average of 3.2 percent in January 2015. The requested increase annualizes the 2015 premium increase, and includes a nine-month provision for an estimated 4.0 percent increase anticipated for fiscal year 2016.

**4. FICA increase**

**Mandatory Increase: $1,000**

Funds are requested to provide for the base adjustment in employer contributions to the Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax. The salary cap for OASDI increased to $117,000 in January 2014, and increased to $118,500 in January 2015. The requested amount is needed to pay the agency contribution.

**B. COURT SUPPORT PERSONNEL**

**5. Annualization of 2015 pay adjustment**

**Discretionary Increase: $134,000**

As a result of the ECI adjustment, federal pay rates increased by 1.0 percent in January 2015. The requested increase provides for the cost of three months (from October 2015 to December 2015) of the 2015 pay increase in fiscal year 2016.

**6. Proposed January 2016 pay adjustment**

**Discretionary Increase: $404,000**

As of January 2015, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.0 percent beginning on or after January 1, 2016. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2016 (from January 2016 to September 2016).

**7. Promotions and within-grade increases**

**Discretionary Increase: $367,000**

The requested increase provides for promotions and within-grade increases for personnel. The salary plan for judicial support personnel provides for periodic within-grade increases for staff who receive at least a satisfactory performance rating.

**8. Health benefits increase**

**Discretionary Increase: $132,000**

Based on the information from the Office of Personnel Management, health benefit premium contributions are projected to increase by an average of 3.2 percent in January 2015. The requested increase annualizes the 2015 premium increase, and includes a nine-month provision for an estimated 4.0 percent increase anticipated for fiscal year 2016.

I.16

**9. FICA increase**

**Discretionary Increase:  $6,000**

Funds are requested to provide for the base adjustment in employer contributions to the Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax. The salary cap for OASDI increased to $117,000 in January 2014, and increased to $118,500 in January 2015. The requested amount is needed to pay the agency contribution.

**10.  FERS increase**

**Discretionary Increase: $38,000**

Funds are requested for a 0.5 percent increase (from 13.2 percent to 13.7 percent) in the agency contribution rate to Federal Employee Retirement System (FERS) plans effective October 1, 2015. The FERS increase is in accordance with revised estimates of the cost of providing benefits by the Board of Actuaries of the Civil Service Retirement and Disability System.

**11.  One more compensable day**

**Discretionary Increase: $206,000**

There is one more compensable day in fiscal year 2016 than in fiscal year 2015. The requested increase is for personnel compensation and benefits associated with one more compensable day.

**C. OTHER ADJUSTMENTS**

*General Inflationary Adjustments*

**12.  Inflationary increases in charges for contracts, services, supplies, and equipment**

**Discretionary Increase:  $268,000**

Consistent with guidance from the Office of Management and Budget, this request of $268,000 is required to fund inflationary increases of 1.6 percent for operating expenses such as travel, communications, printing, contractual services, supplies and materials, and furniture and equipment.

**13.  Library services**

**Discretionary Increase:  $64,000**

This increase is requested to cover estimated increases in the costs of library services, including law book accessions and continuations, and computer-assisted legal research.

**14.  Non-recurring unemployment benefits costs**

**Discretionary Decrease:  ($32,000)**

The Court requests a decrease of $32,000 associated with non-recurring unemployment benefits payments in fiscal year 2016.

I.18

## 15.  Finance system non-recurring costs

**Discretionary Decrease:  ($837,000)**

The Court requests a decrease of $837,000 for non-recurring costs associated with its new finance system.  In fiscal year 2013, the Court began resource sharing with the Department of Interior's Interior Business Center for its financial systems.  In fiscal year 2014, this resource sharing initiative was expanded to include the Court's human resources and payroll systems as well.  As a result of these innovations, the Court anticipates future savings in personnel, budget, and accounting costs.

424

1.19

**SUPREME COURT OF THE UNITED STATES**
*Care of the Building and Grounds*
**SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS**

| | |
|---|---|
| **Fiscal Year 2015 Enacted Appropriation** | $11,640,000 |
| **Fiscal Year 2016 Appropriation Request** | $9,953,000 |
| **Requested Decrease from Fiscal Year 2015 Appropriation** | ($1,687,000) |

**APPROPRIATION LANGUAGE**

**SUPREME COURT OF THE UNITED STATES**

**CARE OF THE BUILDING AND GROUNDS**

For such expenditures as may be necessary to enable the Architect of the Capitol to carry out the duties imposed upon the Architect by 40 U.S.C. 6111 and 6112, [$11,640,000]*$9,953,000*, to remain available until expended.

1.20

**SUMMARY OF REQUEST**
**SUPREME COURT OF THE UNITED STATES**
**CARE OF THE BUILDING AND GROUNDS**
**FISCAL YEAR 2016**
(Dollar amounts in thousands)

**Fiscal Year 2016 Resource Requirements:**

| Page No. | | | FTEs | Amount |
|---|---|---|---|---|
| | Fiscal Year 2015 Enacted Appropriation................................................................ | | 50 | $11,640 |
| | **Adjustments to Base to Maintain Current Services:** | | | |
| | **A.  Personnel and Personnel** | | | |
| 1.24 | 1. | Annualization of 2015 pay adjustment (1.0% for three months)........................ | -- | 9 |
| 1.24 | 2. | Proposed January 2016, pay adjustment (1.0% for nine months)........................ | -- | 36 |
| 1.24 | 3. | Promotions and within-grades increases............................................... | -- | 78 |
| 1.24 | 4. | Health benefits increase.............................................................. | -- | 10 |
| 1.24 | 5. | FICA increase........................................................................ | -- | 2 |
| 1.24 | 6. | FERS increase........................................................................ | -- | 7 |
| 1.25 | 7. | One more compensable day............................................................. | -- | 18 |
| | **B.  Other Adjustments** | | | |
| 1.25 | 8. | General inflationary increases........................................................ | -- | 123 |
| 1.25 | 9. | Reduction for non-recurring requirements............................................. | -- | (2,500) |
| | | Subtotal, Adjustments to Base to Maintain Current Services........................... | -- | (2,217) |
| | | Total Current Services Appropriation Required........................................ | 50 | 9,423 |
| | **C.  Program Increases** | | | |
| 1.25 | 10. | Replace Variable Frequency Drive Motor Controllers................................... | -- | 70 |
| 1.26 | 11. | Increase Post-Modernization Interior and Exterior Maintenance Requirements............ | -- | 460 |
| | | Subtotal, Program Increases.......................................................... | -- | 530 |
| | | Total Fiscal Year 2016 Appropriation Required........................................ | 50 | 9,953 |
| | | Total Appropriation Change, Fiscal Year 2015 to Fiscal Year 2016..................... | -- | (1,687) |

## SUPREME COURT OF THE UNITED STATES
## CARE OF THE BUILDING AND GROUNDS
Obligations by Activity ($000)

| Activity | Fiscal Year 2014 Actual | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request |
|---|---|---|---|
| Care of Building and Grounds, Total Obligations | 14,995 | 13,690 | 12,230 |
| Unobligated Balance, Start of Year | (10,364) | (6,527) | (4,477) |
| Unobligated Balance, End of Year | 6,527 | 4,477 | 2,200 |
| Available Appropriation | 11,158 | 11,640 | 9,953 |

Object Classification ($000)

| | Description | Fiscal Year 2014 Actual | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request |
|---|---|---|---|---|
| 11 | Personnel compensation | 3,204 | 3,472 | 3,592 |
| 12 | Personnel benefits | 1,075 | 1,165 | 1,205 |
| 21 | Travel and transportation of things | 6 | 5 | 5 |
| 23 | Rent, communications and utilities | 1,593 | 1,850 | 2,000 |
| 25 | Other services | 4,470 | 3,708 | 3,250 |
| 26 | Supplies and materials | 398 | 450 | 475 |
| 31 | Equipment | 0 | 0 | 0 |
| 32 | Land and structures | 755 | 3,040 | 1,703 |
| 42 | Claims and Indemnities | 3,495 | 0 | 0 |
| | Total Obligations | 14,995 | 13,690 | 12,230 |

121

1.22

## SUPREME COURT OF THE UNITED STATES
## CARE OF THE BUILDING AND GROUNDS
### Relation of Obligations to Outlays ($000)

|  | Fiscal Year 2014 Actuals | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request | Difference (+) or (−) |
|---|---|---|---|---|
| Obligations incurred, net | 14,995 | 13,690 | 12,230 | (1,460) |
| Obligated balance, start of year | 15,645 | 15,376 | 14,741 | (635) |
| Obligated balance, end of year | (15,376) | (14,741) | (14,569) | 172 |
| Net Outlays | 15,264 | 14,325 | 12,402 | (1,923) |

### Personnel Summary[1]

|  | Fiscal Year 2014 Actual | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request | Difference |
|---|---|---|---|---|
| Total compensable workyears: |  |  |  |  |
| Full-time equivalent employment | 39 | 50 | 50 | 0 |

[1] Full-time equivalent numbers reflect payroll funded and project funded personnel.

revised estimates of the cost of providing benefits by the Board of Actuaries of the Civil Service Retirement and Disability System.

### 7. One more compensable day

**Requested Increase: $18,000**

There is one more compensable day in fiscal year 2016 than in fiscal year 2015. The requested increase is for personnel compensation and benefits associated with one more compensable day.

## B. OTHER ADJUSTMENTS

### General Inflationary Adjustments

### 8. Inflationary increases in charges for contracts, services, supplies, and equipment

**Requested Increase: $123,000**

Consistent with guidance from the Office of Management and Budget, this request of $123,000 is required to fund inflationary increases of 1.6 percent for operating expenses such as travel, communications, printing, contractual services, supplies and materials, and furniture and equipment.

### 9. Reduction for non-recurring requirements

**Requested Decrease: ($2,500,000)**

The requested decrease is for non-recurring requirements funded in fiscal year 2015.

## C. PROGRAM INCREASES

### 10. Replace Variable Frequency Drive Motor Controllers

**Requested Increase: $70,000**

The requested increase of $70,000 provides funding to replace five variable frequency drive (VFD) motor controllers associated with the building air handling systems. There are 40 VFDs which were added with the modernization project, and these are beginning to approach the end of their lifecycle. The baseline adjustment incorporated an increase to replace five each year and maintain an eight year cyclical replacement of these systems. This one-time program increase will allow for funding to replace five additional systems in the first year due to equipment condition.

1.25

I.26

## 11. *Increased Interior and Exterior Maintenance Requirements*

**Requested Increase: $460,000**

The requested increase provides funding for maintenance requirements due to the increased number and complexity of systems introduced during the Modernization. This includes the continuous cyclical VFD replacement (per section C. 10) and new maintenance contracts for high speed doors, security barriers, and fire protection systems added by recently completed projects.

The majority of the exterior landscape had minimal maintenance requirements during construction of recent projects. With the completion of the landscape project, the entirety of the property was returned to the Court. Funding will be used to address the significant increase in the landscape and hardscape maintenance such as lawn care, annual plantings and snow removal.

In addition to routine maintenance requirements, the requested increase allows for Court directed projects to improve fixtures and finishes, as well as various infrastructure requirements that were not incorporated into the recently completed projects (e.g. energy efficient lighting and plumbing fixtures, upgrades to outdated kitchen equipment, office refurbishment due to organizational changes, and refinishing of various ornamental metalwork).

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
*Salaries and Expenses*
SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

|  | Mandatory | Discretionary | Total |
|---|---|---|---|
| Total Fiscal Year 2015 Enacted Appropriation | $2,893,000 | $30,212,000 | $33,105,000 |
| Total Fiscal Year 2016 Appropriation Request | $2,922,000 | $30,841,000 | $33,763,000 |
| Total Requested Increase from Fiscal Year 2015 Appropriation | $29,000 | $629,000 | $658,000 |

APPROPRIATION LANGUAGE

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

SALARIES AND EXPENSES

For salaries of officers and employees, and for necessary expenses of
the court, as authorized by law, [$30,212,000]*$30,841,000*.

In addition, there are appropriated such sums as may be necessary under
current law for the salaries of the chief judge and judges of the court.

**SUMMARY OF REQUEST**
**COURT OF APPEALS FOR THE FEDERAL CIRCUIT**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2016**
(Dollar amounts in thousands)

| Page No. | | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|---|
| | | FTE | Amount | FTE | Amount | FTE | Amount |
| | **Fiscal Year 2016 Resource Requirements:** | | | | | | |
| | Fiscal Year 2015 Obligations............................ | 12 | 2,893 | 139 | 30,737 | 151 | 33,630 |
| | Utilization of Judiciary Information Technology Fund Balances.... | | - | | (525) | | (525) |
| | Fiscal Year 2015 Enacted Appropriation............... | 12 | 2,893 | 139 | 30,212 | 151 | 33,105 |
| | **Adjustments to Base to Maintain Current Services:** | | | | | | |
| | **A. Judges** | | | | | | |
| | *Pay and benefits cost adjustments* | | | | | | |
| 2.8 | 1. Annualization of 2015 pay adjustment (1.0% for three months) | - | 6 | - | - | - | 6 |
| 2.8 | 2. Proposed January 2016 pay adjustment (1.0% for nine months)... | - | 19 | - | - | - | 19 |
| 2.8 | 3. Health benefits increase ......................... | - | 3 | - | - | - | 3 |
| 2.8 | 4. FICA increase.................................... | - | 1 | - | - | - | 1 |
| | **B. Court Support Personnel** | | | | | | |
| | *Pay and benefits cost adjustments* | | | | | | |
| 2.9 | 5. Annualization of 2015 pay adjustment (1.0% for three months).. | - | - | - | 35 | - | 35 |
| 2.9 | 6. Proposed January 2016 pay adjustment (1.0% for nine ninths).. | - | - | - | 104 | - | 104 |
| 2.9 | 7. Promotions and within-grade increases............. | - | - | - | 170 | - | 170 |
| 2.9 | 8. Health benefits increase......................... | - | - | - | 33 | - | 33 |
| 2.9 | 9. FICA increase................................... | - | - | - | 2 | - | 2 |
| 2.9 | 10. FERS increase................................... | - | - | - | 48 | - | 48 |
| 2.10 | 11. One more compensable day......................... | - | - | - | 53 | - | 53 |

**SUMMARY OF REQUEST**
**COURT OF APPEALS FOR THE FEDERAL CIRCUIT**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2016**
(Dollar amounts in thousands)

| Page No. | | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|---|
| | | FTE | Amount | FTE | Amount | FTE | Amount |
| | **C. Other Adjustments** | | | | | | |
| 2.10 | 12.  General inflationary adjustments. | - | - | - | 79 | - | 79 |
| 2.10 | 13.  Increase in GSA space rental cost. | - | - | - | 85 | - | 85 |
| 2.10 | 14.  Lawbooks and computer-assisted legal research (CALR). | - | - | - | 20 | - | 20 |
| | **Subtotal, Adjustments to Base to Maintain Current Services** | - | 29 | - | 629 | - | 658 |
| | **Total Fiscal Year 2016 Appropriation Required** | 12 | 2,922 | 139 | 30,841 | 151 | 33,763 |
| | **Total Appropriation Increase, Fiscal Year 2015 to Fiscal Year 2016** | - | 29 | - | 629 | - | 658 |
| | **Financing the Fiscal Year 2016 Request:** | | | | | | |
| | **Total Appropriation Required, Fiscal Year 2016** | 12 | 2,922 | 139 | 30,841 | 151 | 33,763 |
| 2.10 | 15.  Utilization of Electronic Public Access Receipts and Judiciary Information Technology Fund | - | - | - | 475 | - | 475 |
| | **Total Estimated Obligations, Fiscal Year 2016** | 12 | 2,922 | 139 | 31,316 | 151 | 34,238 |

2.3

435

2.4

### UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
### SALARIES AND EXPENSES
### Obligations by Activity ($000)

| Activity | Fiscal Year 2014 Actual | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request |
|---|---|---|---|
| **Salaries and Expenses, Total Obligations** | 31,565 | 33,630 | 34,238 |
| Unobligated Balance, Start of the Year | | | |
| Judiciary Information Technology Fund | (3,433) | (3,317) | (2,877) |
| Prior year recoveries | (22) | | |
| New Deposit | (620) | | |
| Unobligated Balance, End of the Year | | | |
| Judiciary Information Technology Fund | 3,317 | 2,877 | 2,487 |
| **Total Direct Obligations** | 30,807 | 33,190 | 33,848 |
| Unobligated Balance, Expiring | 367 | | |
| Transfer to Court of Appeals, District Courts, and other Judicial Services, Defender Services | 1,200 | | |
| Less offices from: | | | |
| Electronic Public Access | (86) | (85) | (85) |
| **Appropriation Required (Direct)** | 32,288 | 33,105 | 33,763 |

### Obligations by Budget Object Class ($000)

| | Description | Fiscal Year 2014 Actual | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request |
|---|---|---|---|---|
| 11 | Personnel compensation | 15,311 | 16,812 | 17,199 |
| 12 | Personnel benefits | 3,320 | 3,802 | 3,889 |
| 13 | Benefits for former personnel | 99 | 40 | 40 |
| 21 | Travel | 46 | 140 | 143 |
| 22 | Transportation of things | 33 | 50 | 50 |
| 23 | Rent, communications and utilities | | | |
| | *Rental payments to GSA* | 6,894 | 7,059 | 7,144 |
| | *Communications utilities & misc. charges* | 202 | 232 | 241 |
| 24 | Printing and reproduction | 8 | 20 | 26 |
| 25 | Other services | 4,355 | 4,477 | 4,490 |
| 26 | Supplies and materials | 57 | 78 | 90 |
| 31 | Equipment | 534 | 835 | 841 |
| 91 | Undefined Disbursements [1] | 706 | 85 | 85 |
| | **Total obligations [2]** | 31,565 | 33,630 | 34,238 |

1/ Deposited into JITF fund
2/ Includes JITF obligations of $758,000 in FY 2014, $525,000 in FY 2015, and $475,000 in FY 2016

436

2.5

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
### Salaries & Expenses
### Relation of Obligations to Outlays ($000)

| | FY 2014 Actual | FY 2015 Estimate | FY 2016 Request | Difference (+) or (−) |
|---|---|---|---|---|
| Obligations incurred, net | 31,565 | 33,630 | 34,238 | 608 |
| Obligated balance, start of year | 7,652 | 5,891 | 7,496 | 1,605 |
| Recoveries of prior year unpaid obligations | (1,218) | 0 | 0 | 0 |
| Obligated balance, end of year | (5,891) | (7,496) | (7,500) | (4) |
| Total Outlays | 32,108 | 32,025 | 34,234 | 2,209 |
| Less Judiciary Information Technology Fund Obligations | (758) | (525) | (475) | 50 |
| **Net Outlays** | **31,350** | **31,500** | **33,759** | **2,259** |

### Personnel Summary

| | FY 2014 Actual | FY 2015 Estimate | FY 2016 Request | Difference (+) or (−) |
|---|---|---|---|---|
| Total compensable workyears: Full-time equivalent employment | 142 | 151 | 151 | 0 |

2.6

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## SALARIES AND EXPENSES

### Summary of Mandatory Costs

| | Fiscal Year 2015 | | Fiscal Year 2016 [1] | | Increase ($000) |
|---|---|---|---|---|---|
| | No. of Judgeships | Compensation and Benefits ($000) | No. of Judgeships | Compensation and Benefits ($000) | |
| Article III Judges | 12 | 2,893 | 12 | 2,922 | 29 |

1/ The $29,000 increase includes $19,000 for the assumed fiscal year 2016 ECI adjustment for judges.

2.7

## GENERAL STATEMENT AND INFORMATION

The United States Court of Appeals for the Federal Circuit, located in Washington, D.C., has exclusive nationwide jurisdiction over a large number of diverse subject areas, such as appeals in all patent cases, all government contract cases, all international trade cases, all government personnel cases, all cases involving monetary claims against the United States under the Tucker Acts, veterans cases, and many others. To keep abreast of its varied jurisdiction, the court is requesting necessary increases in its funding as detailed below.

Appeals to the court come from all 94 federal district courts, the United States Court of Federal Claims, the United States Court of International Trade, and the United States Court of Appeals for Veterans Claims. The court also takes appeals of certain administrative agencies' decisions, including the United States Merit Systems Protection Board, the Boards of Contract Appeals, the Board of Patent Appeals and Interferences, and the Trademark Trial and Appeals Board. Decisions of the United States International Trade Commission, the Office of Compliance, an independent agency in the Legislative Branch, and the Government Accountability Office Personnel Appeals Board also are reviewed by the court. For additional information on the court's jurisdiction, see the appendix beginning on page 2.12.

## Justification of Changes

The fiscal year 2016 budget request for the Court totals $33,763,000, which includes $2,922,000 for mandatory expenses and $30,841,000 for discretionary expenses. The discretionary request of $30,841,000 is a 2.1 percent increase over the fiscal year 2015 enacted discretionary appropriation of $30,212,000. The increases include amounts for inflationary increases and adjustments to base to maintain current services. The Court requests no funding for program increases in fiscal year 2016.

**Adjustments to base to maintain current services** include funds for the following: increased salaries and benefits costs for judges and current staff; increased costs for basic and required operating activities such as postage, printing, office supplies, security, library materials, computer-assisted legal research services, and GSA space rental. Justifications for each of these adjustments begin on page 2.8.

2.8

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

The following narrative provides information and justification for each of the adjustments to base for the Court.

### A. JUDGES

*Pay and Benefits Cost Adjustments*

1. **Annualization of 2015 pay adjustment**

**Mandatory Increase: $6,000**

As a result of the ECI pay adjustment, federal pay rates increased by 1.0 percent in January 2015. The requested increase provides for the cost of three months (from October 2015 to December 2015) of the 2015 pay increase in fiscal year 2016.

2. **Proposed January 2016 pay adjustment**

**Mandatory Increase: $19,000**

As of January 2015, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.0 percent beginning on or after January 1, 2016. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2016 (from January 2016 to September 2016).

3. **Health benefits increase**

**Mandatory Increase: $3,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by an average of 3.2 percent in January 2015. The requested increase annualizes the 2015 premium increase, and includes a nine-month provision for an estimated 4.0 percent increase anticipated for fiscal year 2016.

4. **FICA increase**

**Mandatory Increase: $1,000**

Funds are requested to provide for the base adjustment in employer contributions to the Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax. The salary cap for OASDI increased to $117,000 in January 2014, and increased to $118,500 in January 2015. The requested amount is needed to pay the agency contribution.

## B. COURT SUPPORT PERSONNEL

*Pay and Benefits Cost Adjustments*

### 5.   Annualization of 2015 pay adjustment

**Discretionary Increase:  $35,000**

As a result of the ECI adjustment, federal pay rates increased by 1.0 percent in January 2015. The requested increase provides for the cost of three months (from October 2015 to December 2015) of the 2015 pay increase in fiscal year 2016.

### 6.   Proposed January 2016 pay adjustment

**Discretionary Increase:  $104,000**

As of January 2015, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.0 percent beginning on or after January 1, 2016. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2016 (from January 2016 to September 2016).

### 7.   Promotions and within-grade increases

**Discretionary Increase:  $170,000**

The requested increase provides for promotions and within-grade increases for personnel.  The salary plan for judicial support personnel provides for periodic within-grade increases for staff who receive at least a satisfactory performance rating.

### 8.   Health benefits increase

**Discretionary Increase:  $33,000**

Based on the information from the Office of Personnel Management, health benefit premium contributions are projected to increase by an average of 3.2 percent in January 2015.  The requested increase annualizes the 2015 premium increase, and includes a nine-month provision for an estimated 4.0 percent increase anticipated for fiscal year 2016.

### 9.   FICA increase

**Discretionary Increase:  $2,000**

Funds are requested to provide for the base adjustment in employer contributions to the Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax.  The salary cap for OASDI increased to $117,000 in January 2014, and increased to $118,500 in January 2015.  The requested amount is needed to pay the agency contribution.

### 10.  FERS increase

**Discretionary Increase:  $48,000**

Funds are requested for a 0.5 percent increase (from 13.2 percent to 13.7 percent) in the agency contribution rate to Federal Employee Retirement System (FERS) plans effective October 1, 2015.  The FERS increase is in accordance with revised estimates of the cost of providing benefits by the Board of Actuaries of the Civil Service Retirement and Disability System.

2.9

**11. One more compensable day**

**Discretionary Increase:  $53,000**

There is one more compensable day in fiscal year 2016 than in fiscal year 2015.  The requested amount increases personnel compensation and benefits associated with one more compensable day.

**C.  OTHER ADJUSTMENTS**

**12.  General inflationary adjustments**

**Discretionary Increase:  $79,000**

Consistent with guidance from the Office of Management and Budget, this request of $79,000 is required to fund inflationary increases of 1.6 percent for operating expenses such as travel, communications, printing, contractual services, supplies and materials, and furniture and equipment.

**13.  Inflationary increase in GSA space rental cost**

**Discretionary Increase:  $85,000**

This request represents an inflationary increase and adjustments in the cost of GSA space rental charges for space for fiscal year 2016.

**14.  Library services and computer-assisted legal research (CALR)**

**Discretionary Increase:  $20,000**

An adjustment of $10,000 is requested to fund an estimated 4.0 percent increase in the costs of library services, including law book accessions and continuations, and an adjustment of $10,000 is requested to fund an estimated 5.0 percent increase in the costs of computer-assisted legal research resources.

**FINANCING THE FISCAL YEAR 2016 REQUEST**

**15.  Utilization of Electronic Public Access Receipts and Judiciary Information Technology Fund**

**Estimated obligation of available balance from Judiciary Information Technology Fund and Electronic Public Access Receipts: $475,000**

28 U.S.C. § 612 provides that fees collected for electronic public access to information be deposited into the Judiciary Information Technology Fund, and that these funds are available without fiscal year limitations.  The judiciary is authorized to use these fees to offset the costs of providing information to the public electronically.

At the beginning of fiscal year 2016, the Court estimates that $2,877,000 will remain in the Judiciary Information Technology Fund.  This amount will be supplemented by an additional $85,000 from Electronic Public Access receipts to total $2,962,000.  The Court anticipates obligating $475,000 in fiscal year 2016 to perform cyclical replacements of laptops and iPads

2.10

2.11

for both remote working and for COOP purposes. The Court also anticipates performing cyclical replacements on scanners, monitors and other miscellaneous IT supplies. The Court will continue to implement and enhance CM/ECF and to prepare for Next Generation (Next Gen), which is an update to the judiciary's current CM/ECF system, and its related add-on applications. The Court will fund two specialized contractors to complete the work required, and related travel costs associated with the project. Also, the Court will purchase software to enable the Court to migrate add-on applications to Next Gen and to create electronic learning modules and other training materials. Funds also will be used to replace parts for data closet cooling units and for a spare network switch and core line cards, cabling and other IT consumables.

## APPENDIX

The following is a more complete listing of the Federal Circuit's exclusive jurisdiction. It hears appeals from:

**(A)** final decisions of all Federal District Courts in cases arising under 28 U.S.C. §1338(a) relating to patent laws generally; 35 U.S.C. §§145-146 relating to review of decisions of the Patent and Trademark Office, Board of Patent Appeals and Interferences; 28 U.S.C. §1346(a)(2) relating to Little Tucker Act claims against the United States; and section 211 of the Economic Stabilization Act of 1970, section 5 of the Emergency Petroleum Allocation Act of 1973, section 506 (c) of the Natural Gas Policy Act of 1978, and section 523 of the Energy Policy and Conservation Act relating to all statutes formerly under the jurisdiction of the Temporary Emergency Court of Appeals;

**(B)** final decisions of the United States Court of International Trade, 28 U.S.C. §2645(c);

**(C)** final decisions of the United States Court of Appeals for Veterans Claims, 38 U.S.C. §7292;

**(D)** final decisions of the United States Court of Federal Claims, 28 U.S.C. §2522 and 42 U.S.C. §§300aa - 12(f);

**(E)** final decisions of the High Court of the Trust Territory of the Pacific Islands, 48 U.S.C. § 1681 note (1988) (Compact of Free Association; Federated States of Micronesia, Republic of Marshall Islands, TITLE II, Title One, Article VII, § 174(c));

**(F)** final determinations of the United States International Trade Commission relating to unfair practices in import trade made under 19 U.S.C. § 1337;

**(G)** findings of the Secretary of Commerce under U.S. note 6 to subchapter X of chapter 98 of the Harmonized Tariff Schedule of the United States relating to importation of educational or scientific instruments and apparatus;

**(H)** final orders or decisions of the Merit Systems Protection Board and certain arbitrators, 5 U.S.C. § 7703;

**(I)** final decisions of the General Accounting Office Personnel Appeals Board, 31 U.S.C. § 755;

**(J)** final decisions of all agency Boards of Contract Appeals, 41 U.S.C. § 607(g);

**(K)** final decisions of the Patent and Trademark Office tribunals on patent applications and interferences, trademark applications and interferences, cancellations, concurrent use proceedings, and oppositions, 35 U.S.C. § 142, 15 U.S.C. § 1071, 37 CFR §§ 1.304, 2.145;

**(L)** appeals under section 71 of the Plant Variety Protection Act of 1970, 7 U.S.C. § 2461;

**(M)** certain actions of the Secretary of Veterans Affairs, 38 U.S.C. § 502;

**(N)** certain final orders of the Equal Employment Opportunity Commission relating to certain Presidential appointees, 2 U.S.C. § 1219(a)(3) and 28 U.S.C. § 2344;

**(O)** final decisions of the Office of Personnel Management under 5 U.S.C. § 8902a(g)(2);

**(P)** certain actions of the Board of Directors of the Office of Compliance of the U.S. Congress under 2 U.S.C. § 1407(a); and

**(Q)** final decisions of certain agencies pursuant to 28 U.S.C. § 1296.

Pursuant to 28 U.S.C. § 1292 (c) the Federal Circuit also has exclusive jurisdiction regarding:

a.   appealable interlocutory orders or decrees in cases where the court would otherwise have jurisdiction over an appeal; and

2.12

b.   appeals from judgments in civil actions for patent infringement otherwise appealable to the court and final except for accounting.

Under the provisions of 28 U.S.C. § 1292(d), the court:

a.   has exclusive jurisdiction of appeals from interlocutory orders granting or denying, in whole or in part, a motion to transfer an action to the Court of Federal Claims; and

b.   may, in its discretion, permit an appeal from an interlocutory order of a judge who certifies that there is a controlling question of law and a substantial ground for difference of opinion thereon, and that an immediate appeal may materially advance the ultimate termination of the litigation.

Pursuant to 38 U.S.C. § 7292(b) (1), the court has exclusive jurisdiction of certain interlocutory orders of the Court of Appeals for Veterans Claims.

Legislation having an impact on the Federal Circuit is contained in P.L. 105-339 (S1021), October 31, 1998, Veterans Employment Opportunities Act of 1998, which provides a remedy through the Merit Systems Protection Board for those seeking review of the application of veterans preference rules to applicants for federal employment.

3.1

## UNITED STATES COURT OF INTERNATIONAL TRADE
*Salaries and Expenses*
### SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

|  | Mandatory | Discretionary | Total |
|---|---|---|---|
| **Total Fiscal Year 2015 Enacted Appropriation** | $1,981,000 | $17,807,000 | $19,788,000 |
| **Total Fiscal Year 2016 Appropriation Request** | $2,005,000 | $18,145,000 | $20,150,000 |
| **Total Requested Increase from Fiscal Year 2015 Appropriation** | $24,000 | $338,000 | $362,000 |

APPROPRIATION LANGUAGE

UNITED STATES COURT OF INTERNATIONAL TRADE

SALARIES AND EXPENSES

For salaries of officers and employees of the court, services, and necessary expenses of the court, as authorized by law, [$17,807,000]*$18,145,000*. In addition, there are appropriated such sums as may be necessary under current law for the salaries of the chief judge and judges of the court.

SUMMARY OF REQUEST
UNITED STATES COURT OF INTERNATIONAL TRADE
SALARIES AND EXPENSES
FISCAL YEAR 2016
(Dollar amounts in thousands)

**Fiscal Year 2016 Resource Requirements:**

| Page No. | | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|---|
| | | FTE | Amount | FTE | Amount | FTE | Amount |
| | Fiscal Year 2015 Obligations ............................... | 9 | 1,981 | 71 | 18,396 | 80 | 20,377 |
| | Utilization of Judiciary Information Technology Fund Balances ........... | | | | (589) | | (589) |
| | Fiscal Year 2015 Enacted Appropriation ................... | 9 | 1,981 | 71 | 17,807 | 80 | 19,788 |
| | **Adjustments to Base to Maintain Current Services:** | | | | | | |
| | **A- Judges** | | | | | | |
| | Pay and benefit cost adjustments | | | | | | |
| 3.8 | 1. Annualization of 2015 pay adjustment (1.0% for three months) ........... | | 5 | | | | 5 |
| 3.8 | 2. Proposed January 2016 pay adjustment (1.0% for nine months) ........... | | 15 | | | | 15 |
| 3.8 | 3. Health benefits increase ............... | | 3 | | | | 3 |
| 3.8 | 4. FICA increase ..................... | | 1 | | | | 1 |
| | **B. Court Support Personnel and Programs** | | | | | | |
| | Pay and benefit cost adjustments | | | | | | |
| 3.8 | 5. Annualization of 2015 pay adjustment (1.0% for three months) ........... | | | | 17 | | 17 |
| 3.8 | 6. Proposed January 2016 pay adjustment (1.0% for nine months) ........... | | | | 50 | | 50 |
| 3.9 | 7. Promotions and within-grade increases ........... | | | | 50 | | 50 |
| 3.9 | 8. Health benefits increase ............... | | | | 24 | | 24 |
| 3.9 | 9. FICA increase ..................... | | | | 8 | | 8 |
| 3.9 | 10. FERS increase ................... | | | | 25 | | 25 |
| 3.9 | 11. One more compensable day ........... | | | | 26 | | 26 |
| 3.9 | 12. Workers' compensation cost ........... | | | | 37 | | 37 |

3.2

3.3

## SUMMARY OF REQUEST
## UNITED STATES COURT OF INTERNATIONAL TRADE
## SALARIES AND EXPENSES
## FISCAL YEAR 2016
### (Dollar amounts in thousands)

**C. Other Adjustments**

| | | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|---|
| | | FTE | Amount | FTE | Amount | FTE | Amount |
| | General Inflationary Adjustments | | | | | | |
| 3.10 | I3. Inflationary increases in charges for contracts, services, supplies, and equipment | - | - | - | 8 | - | 8 |
| 3.10 | I4. GSA rent increase.......................... | - | - | - | 85 | - | 85 |
| 3.10 | I5. Increase in FPS building basic/specific security surcharges.......... | - | - | - | 8 | - | 8 |
| | Subtotal, Adjustments to Base to Maintain Current Services........... | - | 24 | - | 338 | - | 362 |
| | Total Fiscal Year 2016 Appropriation Required.................. | 9 | 2,005 | 71 | 18,145 | 80 | 20,150 |

**Financing the Fiscal Year 2016 Request:**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Total Appropriation Required, Fiscal Year 2016.............. | 9 | 2,005 | 71 | 18,145 | 80 | 20,150 |
| 3.10 | Utilization of Judiciary Information Technology Fund Balances ......... | - | - | - | 445 | - | 445 |
| | Total Estimated Obligations, Fiscal Year 2016.............. | 9 | 2,005 | 71 | 18,590 | 80 | 20,595 |

448

UNITED STATES COURT OF INTERNATIONAL TRADE
SALARIES AND EXPENSES
Obligations by Activity ($000)

| Activity | Fiscal Year 2014 Actual | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request |
|---|---|---|---|
| **Salaries and Expenses, Total Obligations** | **20,269** | **20,377** | **20,595** |
| Unobligated Balance, Start of Year | | | |
| Judiciary Information Technology Fund | (1,112) | (1,008) | (445) |
| Prior year recoveries | (14) | - | - |
| New Deposits | (417) | - | - |
| Unobligated Balance, End of Year | | | |
| Judiciary Information Technology Fund | 1,008 | 445 | - |
| **Total Direct Obligations** | **19,734** | **19,814** | **20,150** |
| Unobligated Balance, expiring | 145 | - | - |
| Transfer to Court of Appeals, District Courts, and other Judicial Services, Court Security | 1,150 | | |
| **Available Appropriation** | **21,029** | **19,814** | **20,150** |
| Less offsets from | | | |
| Electronic Public Access | (32) | (26) | - |
| **Appropriation Required (Direct)** | **20,997** | **19,788** | **20,150** |

Object Classification ($000)

| | Description | Fiscal Year 2014 Actual | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request |
|---|---|---|---|---|
| 11 | Personnel compensation | 7,221 | 8,440 | 8,603 |
| 12 | Personnel benefits | 1,803 | 2,282 | 2,330 |
| 21 | Travel | 150 | 171 | 161 |
| 22 | Transportation of things | 4 | 7 | 9 |
| 23 | Rent, communications and utilities | | | |
| | Rental payments to GSA | 8,269 | 6,882 | 6,878 |
| | Communications, utilities & misc. charges | 120 | 36 | 49 |
| 24 | Printing and reproduction | 9 | 17 | 23 |
| 25 | Other services | 1,368 | 1,425 | 1,440 |
| 25.3 | Building specific security surcharge | 450 | 509 | 517 |
| 26 | Supplies and materials | 47 | 53 | 53 |
| 31 | Equipment | 379 | 529 | 442 |
| 91 | Undefined Disbursements[1] | 449 | 26 | 0 |
| | **Total Obligations[2]** | **20,269** | **20,377** | **20,595** |

1/ Deposited into JITF fund
2/ Includes JITF obligations of $533,000 in fiscal year 2014, $589,000 in fiscal year 2015, and $445,000 in fiscal year 2016.

3.5

## UNITED STATES COURT OF INTERNATIONAL TRADE
### Salaries & Expenses
### Relation of Obligations to Outlays ($000)

| | Fiscal Year 2014 Actual | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 20,269 | 20,377 | 20,595 | 218 |
| Obligated balance, start of year | 1,739 | 963 | 1,507 | 544 |
| Obligated balance, end of year | (963) | (1,507) | (1,400) | 107 |
| Total Outlays | 21,045 | 19,833 | 20,702 | 869 |
| Less Judiciary Information Technology Fund Obligations | (535) | (589) | (445) | 144 |
| **Net Outlays** | **20,510** | **19,244** | **20,257** | **1,013** |

### Personnel Summary

| | Fiscal Year 2014 Actual | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total compensable workyears: Full-time equivalent employment | 70 | 80 | 80 | 0 |

3.6

## UNITED STATES COURT OF INTERNATIONAL TRADE

### SALARIES AND EXPENSES

#### Summary of Mandatory Costs

| | Fiscal Year 2015 | | Fiscal Year 2016 [1] | | |
|---|---|---|---|---|---|
| | No. of Judgeships | Compensation and Benefits ($000) | No. of Judgeships | Compensation and Benefits ($000) | Increase ($000) |
| Article III Judges | 9 | 1,981 | 9 | 2,005 | 24 |

1/ The $24,000 increase includes $15,000 for the proposed fiscal year 2016 cost-of-living adjustment for judges.

3.7

## GENERAL STATEMENT AND INFORMATION

The United States Court of International Trade, with nine authorized Article III judgeships, has exclusive nationwide jurisdiction of civil actions against the United States, its agencies and officers, and certain civil actions brought by the United States, arising out of import transactions and the administration and enforcement of the federal customs and international trade laws. In keeping with its national jurisdiction, court may be held throughout the country.

The estimates under this title are to provide for the salaries of the judges and supporting personnel of the Court of International Trade, located in Manhattan, New York, and the necessary operating expenses of the Court. These operating expenses include internal courthouse security, Federal Protective Service (FPS) surcharges for basic and building-specific security services, GSA rent charges, travel, equipment maintenance contracts, cyclical maintenance of and upgrades to facilities, printing and binding, general office supplies, purchase of new/replacement office equipment and furniture, repair of existing equipment and furniture, access to legal research data bases, acquisition and maintenance of legal reference materials, and continuation of reports for fiscal year 2016.

**Table 3.1** below provides a summary of the business of the Court for fiscal years 2009 through 2014.

Table 3.1  Civil Action Cases

| Fiscal Year | Pending Beginning of Year | Received | Decided | Pending End of Year |
|---|---|---|---|---|
| 2009 | 2,111 | 519 | 418 | 2,212 |
| 2010 | 2,212 | 432 | 424 | 2,220 |
| 2011 | 2,220 | 480 | 577 | 2,123 |
| 2012 | 2,123 | 442 | 343 | 2,222 |
| 2013 | 2,222 | 461 | 414 | 2,269 |
| 2014 | 2,269 | 301 | 544 | 2,026 |

## JUSTIFICATION OF CHANGES

The fiscal year 2016 budget request for the Court totals $20,150,000, which includes $2,005,000 in mandatory appropriations and $18,145,000 in discretionary appropriations. The request of $18,145,000 in discretionary appropriations is a 1.9 percent increase over the fiscal year 2015 enacted discretionary appropriation of $17,807,000. The total increases reflect only the necessary adjustments to base to maintain current services.

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

The following narrative provides information and justification for each of the adjustments to base for the Court.

452

## A. JUDGES

*Pay and Benefit Cost Adjustments*

### 1.   Annualization of 2015 pay adjustment

**Mandatory Increase: $5,000**

As a result of the Employment Cost Index (ECI) adjustment, federal pay rates increased by 1.0 percent in January 2015. The requested increase provides for the cost of three months (from October 2015 to December 2015) of the 2015 pay increase in fiscal year 2016.

### 2.   Proposed January 2016 pay adjustment

**Mandatory Increase: $15,000**

As of January 2015, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.0 percent beginning on or after January 1, 2016. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2016 (from January 2016 to September 2016).

### 3.   Health benefits increase

**Mandatory Increase: $3,000**

Based on the information from the Office of Personnel Management, health benefit premium contributions are projected to increase by an average of 3.2 percent in January 2015. The requested increase annualizes the 2015 premium

increase, and includes a nine-month provision for an estimated 4.0 percent increase anticipated for fiscal year 2016.

### 4.   FICA increase

**Mandatory Increase: $1,000**

Funds are requested to provide for the base adjustment in employer contributions to the Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax. The salary cap for OASDI increased to $117,000 in January 2014, and increased to $118,500 in January 2015. The requested amount is needed to pay the agency contribution.

## B. COURT SUPPORT PERSONNEL

*Pay and benefit cost adjustments*

### 5.   Annualization of 2015 pay adjustment

**Requested Increase: $17,000**

As a result of the ECI adjustment, federal pay rates increased by 1.0 percent in January 2015. The requested increase provides for the cost of three months (from October 2015 to December 2015) of the 2015 pay increase in fiscal year 2016.

### 6.   Proposed January 2016 pay adjustment

**Requested Increase: $50,000**

As of January 2015, the Office of Management and Budget is projecting that federal pay rates will increase by an average of

3.8

1.0 percent beginning on or after January 1, 2016. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2016 (from January 2016 to September 2016).

**7. Promotions and within-grade increases**

**Requested Increase: $50,000**

The requested increase provides for promotions and within-grade increases for personnel. The salary plan for judicial support personnel provides for periodic within-grade increases for staff who receive at least a fully successful performance rating.

**8. Health benefits increase**

**Requested Increase: $24,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by an average of 3.2 percent in January 2015. The requested increase annualizes the 2015 premium increase, and includes a nine-month provision for an estimated 4.0 percent increase anticipated for fiscal year 2016.

**9. FICA increase**

**Requested Increase: $8,000**

Funds are requested to provide for the base adjustment in employer contributions to the Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax. The salary cap for OASDI increased to $117,000 in January 2014, and increased to $118,500 in January 2015. The requested amount is needed to pay the agency contribution.

**10. FERS increase**

**Requested Increase: $25,000**

Funds are requested for a 0.5 percent increase (from 13.2 percent to 13.7 percent) in the agency contribution rate to Federal Employee Retirement System (FERS) plans effective October 1, 2015. The FERS increase is in accordance with revised estimates of the cost of providing benefits by the Board of Actuaries of the Civil Service Retirement and Disability System.

**11. One more compensable day**

**Requested Increase: $26,000**

There is one more compensable day in fiscal year 2016 than in fiscal year 2015. The requested funds increase personnel compensation and benefits associated with one more compensable day.

**12. Workers Compensation Costs**

**Requested Amount: $37,000**

Funds are requested to pay for direct dollar costs of workers' compensation and medical benefits paid under the Federal Employees Compensation Act.

3.9

## C. OTHER ADJUSTMENTS

*General Inflationary Adjustments*

**13. Inflationary increases in charges for contracts, services, supplies, and equipment**

**Requested Increase: $8,000**

Consistent with guidance from the Office of Management and Budget, this request of $8,000 is required to fund inflationary increases of 1.6 percent for operating expenses, such as travel, utilities, printing, contractual services, supplies and materials, and furniture and equipment.

**14. Inflationary increase in GSA space rental costs**

**Requested Increase: $84,926**

The total rent estimate for fiscal year 2016 is $6,878,018, or a 1.3 percent increase from the fiscal year 2015 total rent charges. The previous two years yielded significant rent decreases from the effects of a dramatically lower appraisal. The requested amount relates to the increase in charges for joint usage space.

**15. Increases in Federal Protective Service (FPS) basic/building specific security surcharges**

**Requested Increase: $8,000**

Based on the Department of Homeland Security's FPS's estimate, an additional $8,000 is needed to pay for increases in basic and building-specific security surcharge costs in fiscal year 2016. The building specific security surcharges provide for the Court's pro rata share of installing, operating, and maintaining the enhanced security for the Federal Complex in lower Manhattan.

## D. FINANCING THE FISCAL YEAR 2016 REQUEST

**Carryforward balance from the Judiciary Information Technology Fund**

**Estimated Obligations: $445,000**

At the beginning of fiscal year 2015, $1,034,476 was available in carryforward balances from the Judiciary Information Technology Fund, including $26,000 from Electronic Public Access receipts. Of this amount, the Court is planning to use $589,000 to purchase a second core switch for redundancy purposes; upgrade its conference phone system from analog to digital; continue its support of its video conferencing system, digital recording system, data network and voice connections and Virtual Private Network System (VPN); upgrade and support existing software applications; purchase new software applications to ensure the continued operational efficiency of the Court; replace computer desktops, monitors and printers in accordance with the judiciary's cyclical replacement program; provide wireless service, as well as broadband services for laptops; support Court equipment, including the network and core switches, by the purchase of yearly leasing and maintenance agreements; provide Court access to the Judiciary Data Communications Network (DCN); and provide training to the Court's technical staff in order to ensure that they are kept

3.10

3.11

abreast of current trends in information technology and have the ability to support updated applications.

At the beginning of fiscal year 2016, the Court anticipates that $445,000 will be available in carryforward balance into the Judiciary Information Technology Fund. These funds will be used to continue the Court's information technology initiatives and to support the short term and long term information technology needs.

COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES
Salaries and Expenses
SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | Mandatory | Discretionary | Total |
|---|---|---|---|
| Fiscal Year 2015 Salaries and Expenses Enacted Appropriation | $399,361,000 | $4,846,818,000 | $5,246,179,000 |
| Vaccine Injury Compensation Trust Fund Appropriation | $0 | $5,423,000 | $5,423,000 |
| Total, Fiscal Year 2015 Available Appropriation | $399,361,000 | $4,852,241,000 | $5,251,602,000 |
| | | | |
| Fiscal Year 2016 Salaries and Expenses Appropriation Request | $408,215,000 | $5,036,338,000 | $5,444,553,000 |
| Fiscal Year 2016 Vaccine Injury Compensation Trust Fund Appropriation Request | $0 | $6,045,000 | $6,045,000 |
| Total, Fiscal Year 2016 Appropriation Request | $408,215,000 | $5,042,383,000 | $5,450,598,000 |
| | | | |
| Requested Increase from Fiscal Year 2015 Appropriation | $8,854,000 | $190,142,000 | $198,996,000 |

APPROPRIATION LANGUAGE

COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES

SALARIES AND EXPENSES

For the salaries of judges of the United States Court of Federal Claims, magistrate judges, and all other officers and employees of the Federal Judiciary not otherwise specifically provided for; necessary expenses of the courts, and the purchase, rental, repair, and cleaning of uniforms for Probation and Pretrial Services Office staff; as authorized by law, [$4,846,818,000]$5,036,338,000 (including the purchase of firearms and ammunition), of which not to exceed $27,817,000 shall remain available until expended for space alteration projects and for furniture and furnishings related to new space alteration and construction projects[; and of which not to exceed $10,000,000 shall remain available until September 30, 2016, for Integrated Workplace Initiative: *Provided*, That the amount provided for the Integrated Workplace Initiative shall not be available for obligation until the Director of the Administrative Office of the United States Courts submits a report to the Committees on Appropriations of the House of Representatives and the Senate showing that the estimated cost savings resulting from the Initiative will exceed the estimated amounts obligated for the Initiative].

In addition, there are appropriated such sums as may be necessary under current law for the salaries of circuit and district judges (including judges of the territorial courts of the United States), bankruptcy judges, and justices and judges retired from office or from regular active service.

In addition, for expenses of the United States Court of Federal Claims associated with processing cases under the National Childhood Vaccine Injury Act of 1986 (Public Law 99-660), not to exceed [$5,423,000] $6,045,000, to be appropriated from the Vaccine Injury Compensation Trust Fund.

4.1

457

SUMMARY OF REQUEST
SALARIES AND EXPENSES
FISCAL YEAR 2016
(Dollar amounts in thousands)

| Fiscal Year 2015 Resource Requirements: | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|
| | FTE | Amount | FTE | Amount | FTE | Amount |
| Fiscal Year 2015 Total Available Resources (includes Vaccine Injury Fund)............... | 1,793 | 399,361 | 26,453 | 5,287,121 | 28,246 | 5,686,482 |
| Fiscal Year 2014 Encumbered Carryforward .................................................... | - | - | - | (98,005) | - | (98,005) |
| Fiscal Year 2015 Financial Plan (includes Vaccine Injury Fund) ........................... | 1,793 | 399,361 | 26,453 | 5,189,116 | 28,246 | 5,588,477 |
| Non-appropriated sources of funding: | | | | | | |
| Estimated Fiscal Year 2015 Fee Collections.................................... | - | - | - | (193,760) | - | (193,760) |
| Carryforward Balances from Fiscal Year 2014 into Fiscal Year 2015.................. | - | - | - | (123,115) | - | (123,115) |
| Carryforward from the Judiciary Information Technology Fund.................... | - | - | - | (20,000) | - | (20,000) |
| Fiscal Year 2015 Enacted Appropriation (includes Vaccine Injury Fund)............... | 1,793 | 399,361 | 26,453 | 4,852,241 | 28,246 | 5,251,602 |

4.2

| Page | | Mandatory FTEs | Mandatory Amount | Discretionary FTE | Discretionary Amount | Total FTE | Total Amount |
|---|---|---|---|---|---|---|---|
| | Fiscal Year 2015 Base Appropriation (including Vaccine Injury Fund) | 1,793 | 399,361 | 26,453 | 4,852,241 | 28,246 | 5,251,602 |
| | **Adjustments to Base to Maintain Current Services:** | | | | | | |
| | **A. Judges** | | | | | | |
| 4.33 | 1 Pay and benefit cost adjustments | | | | | | |
| 4.34 | a. Annualization of January 2015 pay adjustment (1.0% for three months) | - | 602 | - | 320 | - | 922 |
| 4.34 | b. Proposed January 2016 pay adjustment (1.0% for nine months) | - | 2,408 | - | 962 | - | 3,370 |
| 4.34 | c. Benefit increases | - | 709 | - | 584 | - | 1,293 |
| 4.35 | d. FERS increase | - | 338 | - | 535 | - | 873 |
| 4.35 | 2. Senior judges (15 judge FTE/50 staff FTE) | 15 | 2,946 | 50 | 6,036 | 65 | 8,982 |
| 4.36 | 3. Increase in average number of filled Article III judgeships (6 judge FTE/31 staff FTE) | 6 | 1,139 | 31 | 3,751 | 37 | 4,890 |
| 4.37 | 4. Increase in average number of filled bankruptcy judgeships (4 judge FTE/14 staff FTE) | 4 | 712 | 14 | 1,250 | 18 | 1,962 |
| 4.37 | 5. Non-recurring costs associated with filled fiscal year 2015 judgeships | - | - | - | (5,320) | - | (5,320) |
| | **B. Court Personnel and Programs** | | | | | | |
| 4.39 | 6. Pay and benefit cost adjustments | | | | | | |
| 4.39 | a. Annualization of January 2015 pay adjustment (1.0% for three months) | - | - | - | 7,984 | - | 7,984 |
| 4.39 | b. Proposed January 2016 pay adjustment (1.0% for nine months) | - | - | - | 24,038 | - | 24,038 |
| 4.39 | c. Promotions and within-grade increases | - | - | - | 24,040 | - | 24,040 |
| 4.39 | d. Benefit increases | - | - | - | 10,034 | - | 10,034 |
| 4.39 | e. One more compensable day | - | - | - | 12,437 | - | 12,437 |
| 4.40 | f. FERS increase | - | - | - | 16,561 | - | 16,561 |
| 4.40 | 7. Funding necessary to maintain fiscal year 2015 service levels due to an anticipated decline in non-appropriated funds | - | - | - | 9,716 | - | 9,716 |

4.3

**Page** **C. Other Adjustments**

| Page | | Mandatory FTEs | Mandatory Amount | Discretionary FTE | Discretionary Amount | Total FTE | Total Amount |
|---|---|---|---|---|---|---|---|
| 4.41 | 8. Inflationary and miscellaneous adjustments.................. | - | - | - | 11,073 | - | 11,073 |
| 4.41 | 9. Vaccine Injury Compensation Trust Fund adjustment.......... | - | - | - | 622 | - | 622 |
| 4.41 | 10. GSA space rental and related services | - | - | - | - | - | - |
| 4.42 | a. Annualization of new fiscal year 2015 space............ | - | - | - | 2,964 | - | 2,964 |
| 4.42 | b. Adjustment to the GSA space rental base costs......... | - | - | - | (1,055) | - | (1,055) |
| 4.42 | c. New space to be delivered in fiscal year 2016......... | - | - | - | 10,502 | - | 10,502 |
| 4.42 | d. Other space-related adjustments including tenant improvements/alterations.... | - | - | - | (3,538) | - | (3,538) |
| 4.45 | 11. Ongoing information technology requirements.............. | - | - | - | 13,762 | - | 13,762 |
| | **Subtotal, Adjustments to Base to Maintain Current Services.............** | 25 | 8,854 | 95 | 147,258 | 120 | 156,112 |
| | **Total Current Services Appropriation Required...................** | 1,818.0 | 408,215 | 26,548 | 4,999,499 | 28,366 | 5,407,714 |
| | **D. Program Increases** | | | | | | |
| 4.46 | 12. New fiscal year 2016 full-time magistrate judges and staff (3 new judgeships/ 3 FTE and 9 staff FTE).... | - | - | 12 | 1,884 | 12 | 1,884 |
| 4.49 | 13. Enterprise Hosting and Cloud Computing Initiative ........ | - | - | - | 19,000 | - | 19,000 |
| 4.49 | 14. Upgrade Email and Messaging System ................ | - | - | - | 7,000 | - | 7,000 |
| 4.50 | 15. Evidenced Based Practices................. | - | - | - | 15,000 | - | 15,000 |
| | **Subtotal, Program Increases.................** | - | - | 12 | 42,884 | 12 | 42,884 |
| | **Total Fiscal Year 2016 Appropriation Request..............** | 1,818 | 408,215 | 26,560 | 5,042,383 | 28,378 | 5,450,598 |
| | **Total Appropriation Increase, Fiscal Year 2015 to Fiscal Year 2016........** | 25 | 8,854 | 107 | 190,142 | 132 | 198,996 |

4.4

**Page** | **Financing the Fiscal Year 2016 Request:**

| Page | | Mandatory FTEs | Mandatory Amount | Discretionary FTE | Discretionary Amount | Total FTE | Total Amount |
|---|---|---|---|---|---|---|---|
| | Total Appropriation Request, Fiscal Year 2016......... | 1,818 | 408,215 | 26,560 | 5,042,383 | 28,378 | 5,450,598 |
| 4.51 | 16. Estimated Fiscal Year 2016 Fee Collections......... | - | - | - | 192,159 | - | 192,159 |
| 4.52 | 17. Anticipated Unencumbered Carryforward from Fiscal Year 2015......... | - | - | - | 135,000 | - | 135,000 |
| | **Estimated Obligations, Fiscal Year 2016.........** | 1,818 | 408,215 | 26,560 | 5,369,542 | 28,378 | 5,777,757 |

4.5

COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES
Salaries and Expenses

| Activity ($000) | FY 2014 | | | FY 2015 | | | FY 2016 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Direct | Offsetting Coll. | Total Oblig. | Direct | Offsetting Coll. | Total Oblig. | Direct | Offsetting Coll. | Total Oblig. |
| Appeals | 577,487 | 18,893 | 596,380 | 635,690 | 40,778 | 676,468 | 659,778 | 39,602 | 699,380 |
| District | 2,272,513 | 79,848 | 2,352,361 | 2,281,094 | 152,096 | 2,433,190 | 2,367,113 | 148,488 | 2,515,601 |
| Bankruptcy | 753,299 | 24,645 | 777,944 | 819,796 | 52,588 | 872,384 | 830,861 | 51,071 | 901,931 |
| Probation/Pretrial | 1,414,582 | 46,279 | 1,460,861 | 1,509,599 | 96,836 | 1,606,435 | 1,566,801 | 94,043 | 1,660,844 |
| Total Obligations | 5,017,881 | 169,665 | 5,187,546 | 5,246,179 | 342,298 | 5,588,477 | 5,444,553 | 333,204 | 5,777,757 |
| Anticipated Financial Plan Savings | - | - | - | - | (135,000) | (135,000) | - | - | - |
| Encumbered Carryforward | - | - | - | 98,005 | - | 98,005 | - | - | - |
| Revised Obligations | 5,017,881 | 169,665 | 5,187,546 | 5,344,184 | 207,298 | 5,551,482 | 5,444,553 | 333,204 | 5,777,757 |
| | | | | | | | | | |
| Unobligated Balance, Start of Year | | | | | | | | | |
| S&E No-Year Funds | (8,919) | - | (8,919) | (4,219) | - | (4,219) | - | - | - |
| Information Technology Funds | (71,039) | - | (71,039) | (16,000) | - | (16,000) | - | - | - |
| Fee Collections | - | (64,936) | (64,936) | (77,786) | (143,115) | (220,901) | - | (135,000) | (135,000) |
| Prior Year Recoveries | | | | | | | | | |
| Salaries and Expenses | - | (10,894) | (10,894) | - | - | - | - | - | - |
| Information Technology Funds | - | - | - | - | - | - | - | - | - |
| Unobligated Balance, End of Year | | | | | | | | | |
| S&E No Year Funds | 4,219 | - | 4,219 | - | - | - | - | - | - |
| Information Technology Funds | 16,000 | - | 16,000 | - | - | - | - | - | - |
| S&E Encumbered | 77,786 | - | 77,786 | - | - | - | - | - | - |
| Fee Carryforward | - | 143,115 | 143,115 | 135,000 | 135,000 | 135,000 | - | - | - |
| Available Appropriation (Direct) | 5,035,928 | 236,950 | 5,272,878 | 5,246,179 | 199,183 | 5,445,362 | 5,444,553 | 198,204 | 5,642,757 |
| | | | | | | | | | |
| Transfer to Fees of Jurors | - | - | | - | - | | - | - | |
| | | | | | | | | | |
| Offsetting Collections | | | | | | | | | |
| Fee Collections | - | (231,623) | (231,623) | - | (193,760) | (193,760) | - | (192,159) | (192,159) |
| Vaccine Injury Trust Fund | - | (5,327) | (5,327) | - | (5,423) | (5,423) | - | (6,045) | (6,045) |
| Appropriation (Direct) | 5,035,928 | - | 5,035,928 | 5,246,179 | - | 5,246,179 | 5,444,553 | - | 5,444,553 |
| Mandatory | 377,098 | | | 399,361 | | | 408,215 | | |
| Discretionary | 4,658,830 | | | 4,846,818 | | | 5,036,338 | | |

4.6

COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES
Salaries and Expenses
Obligations by Budget Object Class ($000)

| Description ($000) | FY 2014 | | | FY 2015 | | | FY 2016 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Direct | Offsetting Coll | Total Oblig. | Direct | Offsetting Coll | Total Oblig. | Direct | Offsetting Coll | Total Oblig. |
| 1100  Personnel compensation | 2,514,239 | 85,012 | 2,599,251 | 2,671,358 | 174,298 | 2,845,657 | 2,779,591 | 170,110 | 2,949,701 |
| 1200  Personnel benefits | 775,888 | 26,234 | 802,123 | 817,146 | 53,316 | 870,462 | 829,517 | 50,766 | 880,283 |
| 1300  Benefits for former personnel | 14,187 | 480 | 14,667 | 14,606 | 953 | 15,559 | 15,502 | 949 | 16,451 |
| 2100  Travel | 42,431 | 1,435 | 43,865 | 44,482 | 2,902 | 47,384 | 51,460 | 3,149 | 54,609 |
| 2200  Transportation of Things | 4,044 | 137 | 4,181 | 4,183 | 273 | 4,456 | 5,090 | 311 | 5,401 |
| 2310  Rental payments to GSA | 1,017,238 | 34,395 | 1,051,633 | 981,604 | 64,047 | 1,045,651 | 997,552 | 61,050 | 1,058,602 |
| 2320  Rental payments to others | 31,769 | 1,074 | 32,843 | 30,997 | 2,022 | 33,019 | 32,803 | 2,007 | 34,810 |
| 2330  Communications, utilities & misc | 107,846 | 3,647 | 111,493 | 131,339 | 8,570 | 139,909 | 146,528 | 8,967 | 155,495 |
| 2400  Printing and reproduction | 6,111 | 207 | 6,318 | 5,661 | 369 | 6,030 | 6,713 | 411 | 7,124 |
| 2500  Other services | 339,529 | 11,480 | 351,009 | 373,972 | 24,401 | 398,373 | 396,572 | 24,270 | 420,842 |
| 2600  Supplies and materials | 17,316 | 586 | 17,902 | 17,708 | 1,155 | 18,863 | 19,331 | 1,183 | 20,514 |
| 3100  Equipment | 147,282 | 4,980 | 152,262 | 153,124 | 9,991 | 163,114 | 163,896 | 10,030 | 173,926 |
| Total Obligations | 5,017,881 | 169,665 | 5,187,546 | 5,246,179 | 342,298 | 5,588,477 | 5,444,554 | 333,204 | 5,777,757 |
| Anticipated Financial Plan Savings | - | | | - | (135,000) | (135,000) | - | | |
| Encumbered Carryforward | | | | 98,005 | | 98,005 | | | |
| Revised Obligations | 5,017,881 | 169,665 | 5,187,546 | 5,344,184 | 207,298 | 5,551,482 | 5,444,554 | 333,284 | 5,777,757 |

4.7

## COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES
### SALARIES AND EXPENSES
#### Summary of Mandatory Obligations

|  | FY 2015 | | FY 2016 1/ | | Increase ($000) |
|---|---|---|---|---|---|
|  | No. of Authorized Judgeships | Compensation ($000) | No. of Authorized Judgeships | Compensation ($000) | |
| Circuit Judgeships | 167 | 37,573 | 167 | 37,818 | 245 |
| District Judgeships | 677 | 140,530 | 677 | 143,616 | 3,086 |
| Senior/Retired Judgeships |  | 143,794 |  | 147,677 | 3,884 |
| Bankruptcy Judgeships | 349 | 77,464 | 349 | 79,104 | 1,640 |
| **Total** | **1,193** | **399,361** | **1,193** | **408,215** | **8,854** |

1/ The requested increase of $8.9 million includes $2.4 million for the proposed fiscal year 2016 cost-of-living adjustment for judges.

464

4.9

## COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES
### Summary of Personnel Compensation and Benefits by Activity

| Program | FY 2014 Actual | | FY 2015 Estimate | | Adj. to Base | | FY 2016 Workload Adj. | | Total Request | |
|---|---|---|---|---|---|---|---|---|---|---|
| | FTE | Amount ($000) | FTE | Amount ($000) | FTE | Amount ($000) | FTE | Amount ($000) | FTE | Amount ($000) |
| **Appeals** | | | | | | | | | | |
| **Judges** | | | | | | | | | | |
| **Article III Judges** | | | | | | | | | | |
| Active | 153 | 24,859 | 149 | 35,513 | 1 | 245 | | | 162 | 17,818 |
| Senior | 118 | 21,759 | 115 | 25,598 | 12 | 1,910 | | | 127 | 27,746 |
| Retired | 21 | 3,790 | 23 | 5,026 | | 141 | | | 21 | 5,105 |
| **Court Staff** | | | | | | | | | | |
| Article III Judges' Staff | 1,107 | 106,652 | 1,158 | 113,118 | 43 | 5,945 | | | 1,201 | 119,947 |
| Circuit Executives | 237 | 32,015 | 111 | 48,449 | | 1,193 | | | 333 | 49,642 |
| Clerks Offices | 611 | 61,664 | 577 | 66,225 | | 1,646 | | | 577 | 68,501 |
| Staff and Prosecutant Attorneys | 518 | 69,590 | 491 | 72,236 | | 1,816 | | | 491 | 71,712 |
| Librarians | 224 | 25,746 | 236 | 29,556 | | 727 | | | 236 | 16,261 |
| Bankruptcy Appellate Panels | 16 | 1,928 | 16 | 2,020 | | 49 | | | 14 | 2,069 |
| **Total Appeals** | 3,014 | 361,782 | 3,106 | 401,790 | 58 | 13,513 | | | 3,164 | 415,300 |
| **District** | | | | | | | | | | |
| **Judges** | | | | | | | | | | |
| **Article III Judges** | | | | | | | | | | |
| Active | 614 | 120,979 | 628 | 140,530 | 4 | 3,086 | | | 629 | 141,616 |
| Senior | 450 | 94,049 | 437 | 98,747 | | 1,902 | | | 462 | 100,669 |
| Retired | 72 | 13,227 | 73 | 14,423 | | 89 | | | 73 | 14,513 |
| Magistrate Judges | 535 | 118,792 | 547 | 124,879 | 3 | 1,831 | 3 | | 550 | 127,412 |
| Court of Federal Claims Judges | 11 | 2,609 | 12 | 3,022 | | 34 | 3 | 702 | 12 | 1,076 |
| **Court Staff** | | | | | | | | | | |
| Article III Judges' Staff | 2,965 | 315,421 | 3,025 | 328,546 | 26 | 9,881 | | | 3,051 | 118,427 |
| Magistrate Judges' Staff | 1,080 | 120,441 | 1,093 | 134,143 | | 3,293 | | | 1,101 | 138,296 |
| Federal Claims Judges' Staff | 48 | 4,964 | 52 | 5,691 | | 197 | 9 | 860 | 52 | 5,688 |
| Clerks Offices | 5,565 | 597,094 | 5,656 | 612,609 | | 14,761 | | | 5,656 | 627,450 |
| Pro Se and death penalty | 380 | 59,774 | 386 | 61,998 | | 1,528 | | | 386 | 61,526 |
| Court Reporters | 684 | 80,246 | 728 | 91,370 | 4 | 2,902 | | | 741 | 94,272 |
| Court Interpreters | 96 | 15,220 | 85 | 15,247 | | 326 | | | 85 | 15,921 |
| **Total District** | 12,439 | 1,522,815 | 12,721 | 1,631,085 | 46 | 39,880 | 12 | 1,562 | 12,778 | 1,672,527 |
| **Bankruptcy** | | | | | | | | | | |
| **Judges** | | | | | | | | | | |
| Bankruptcy Judges | 338 | 76,435 | 339 | 77,664 | 4 | 1,640 | | | 143 | 79,104 |
| **Court Staff** | | | | | | | | | | |
| Bankruptcy Judges' Staff | 748 | 87,507 | 780 | 92,264 | 4 | 2,948 | | | 793 | 95,152 |
| Clerks | 3,392 | 354,047 | 3,350 | 362,386 | | 8,924 | | | 3,370 | 371,310 |
| Bankruptcy Administrators | 51 | 6,277 | 51 | 6,950 | | 153 | | | 51 | 6,712 |
| **Total Bankruptcy** | 4,529 | 522,267 | 4,519 | 538,614 | 18 | 13,665 | | | 4,356 | 552,278 |
| **Probation/Pretrial Services** | 7,622 | 923,771 | 7,000 | 1,066,157 | 18 | 26,289 | | | 7,000 | 1,092,446 |
| **Total Judges** | 2,311 | 698,408 | 2,352 | 527,262 | 25 | 10,719 | 3 | 702 | 2,380 | 518,683 |
| **Total Chambers** | 6,327 | 704,760 | 6,494 | 735,500 | 83 | 25,793 | 9 | 860 | 6,385 | 760,153 |
| **Total Court Staff** | 18,966 | 2,127,377 | 19,400 | 2,374,884 | 14 | 58,826 | | | 10,618 | 2,413,710 |
| **GRAND TOTAL** | 27,604 | 3,330,635 | 28,266 | 3,637,646 | 120 | 93,347 | 12 | 1,562 | 28,378 | 3,732,655 |

4.10

## COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES
### Salaries and Expenses
### Relation of Obligations to Outlays ($000)

| | FY 2014 Actual | FY 2015 Estimate | FY 2016 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total Obligations | 5,187,546 | 5,551,482 | 5,777,757 | 226,275 |
| Obligated balance, start of year | 189,876 | 163,934 | 260,118 | 96,184 |
| Change in uncollected payments | (9,066) | - | - | - |
| Obligated balance, end of year | (163,934) | (260,118) | (274,671) | (14,553) |
| Total Outlays | 5,204,422 | 5,455,298 | 5,763,204 | 307,906 |
| Less offsets from: | | | | |
| Fee Collections and Other Carryforward | (164,338) | (201,875) | (327,159) | (125,284) |
| Use of JITF No-Year Balances | (55,039) | (16,000) | 0 | 16,000 |
| Vaccine Injury Trust Fund | (5,327) | (5,423) | (6,045) | (622) |
| Net Outlays | 4,979,718 | 5,232,000 | 5,430,000 | 198,000 |

## GENERAL STATEMENT AND INFORMATION

Funds appropriated for the Salaries and Expenses account are for the salaries, benefits, and other operating expenses of judges and supporting personnel for the United States courts of appeals, district courts, bankruptcy courts, United States Court of Federal Claims, and United States probation and pretrial services offices. This account makes up approximately 72 percent of the judiciary's total appropriations request, and 77 percent of the *Courts of Appeals, District Courts and Other Judicial Services* request. It supports nearly 28,400 employees including judges, chambers staff, and court support staff positions located throughout the United States in 634 federally owned and leased court buildings and facilities (excludes Defender Services Offices).

The fiscal year 2016 Salaries and Expenses appropriation request totals $5,450,598,000. This request includes funding to maintain current services, as well as program increases to implement two information and technology initiatives, and to enhance evidence based supervision practices.

### Fair and Efficient Judicial Process

The rulings of the federal courts protect the rights and liberties guaranteed by the Constitution. Through fair and impartial judgements, the federal courts interpret and apply the law to resolve disputes. The courts of appeals, district courts, bankruptcy courts, and federal probation and pretrial services offices all work to ensure a fair and independent judicial process.

The district court is responsible for administering justice in civil and criminal cases under federal jurisdiction in 94 judicial districts throughout the United States and its territories. The public benefits from effective and efficient district courts by having criminal defendants processed through the criminal justice system and by having civil disputes resolved quickly and fairly.

The 94 judicial districts are organized into 12 regional circuits, each of which has a United States court of appeals. The appellate court is responsible for hearing appeals from the district courts and the bankruptcy appellate panel (if one exists) located within its circuit, as well as appeals from certain federal administrative agencies and, in limited situations, direct appeals from bankruptcy courts. The appellate courts also have original jurisdiction in some categories of cases. A party has the right to appeal every federal case in which a district court enters a final judgement. When an appeal is filed, a court of appeals reviews the decision and record of proceedings in the lower court or administrative agency. The court of appeals either affirms, reverses or remands the case back to the original court. The court of appeals will issue a written order or opinion in each case. Appeals from the courts of appeals may be taken to the United States Supreme Court. That court, unlike the courts of appeals, can decide which cases it wants to hear. The Supreme Court can remand cases to the court of appeals or decide to affirm or reverse the court of appeals.

Through the bankruptcy courts, the legal system protects business and individual debtors, as well as their creditors, as

intended by law. The bankruptcy court is responsible for providing a legal process for dealing with the debt problems of individuals and businesses through cases filed under one of the chapters of Title 11 of the United States Code, which comprise the federal bankruptcy laws. Giving debtors the ability to construct a plan for repaying creditors, or a "fresh start," as appropriate under the law, is a key purpose of the bankruptcy code, as is providing an orderly and equitable process for repayment to creditors.

The federal probation and pretrial services system assists the federal courts in the fair administration of justice. Probation and pretrial services officers provide the courts with in-depth and objective pretrial services and presentence reports. The courts rely on those reports to make release and sentencing decisions, and the reports also notify the litigants with notice of all relevant release and sentencing issues. The presentence reports are also used by the U.S. Attorneys' offices to locate assets to be seized in relation to any fines, restitution, or assessments ordered, while the Federal Bureau of Prisons relies on the presentence reports to guide its handling of defendants sentenced to incarceration.

**Probation and Pretrial Services Program**

The Probation and Pretrial Services program has ongoing initiatives to enhance and promote community safety, and reduce recidivism. A summary of these initiatives and legislative and administrative factors that influence workload is provided below.

Community Safety

To protect the community, federal probation and pretrial services officers supervise federal defendants and offenders conditionally released to the community on pretrial services supervision, probation, and supervised release. Although federal parole has been abolished, probation officers continue to supervise parolees who were sentenced when parole was available. In all cases, officers are required to use clinical and actuarial methods to identify and prioritize criminogenic risk factors and then design and execute interventions to reduce risk.

The strategies used by probation and pretrial services officers are sometimes divided into two separate categories, *correctional* and *controlling*. Correctional strategies produce behavior change through incentives, treatment and conveying skills, while controlling strategies stop noncompliant, inappropriate behavior through sanctioning and closer monitoring. When coupled holistically and proactively, these strategies not only provide structure and predictability for the client but tend to support better supervision outcomes.

*Correctional Strategies*

Correctional strategies are intended to change offender behavior, both short term and long term. Such strategies include the officer providing the offender with treatment, educational material or other resources that target the offender's specific "criminogenic needs" (dynamic factors related to risk of recidivism). The most common criminogenic needs presently found in the federal population are: anti-social

4.12

4.13

attitudes, anti-social associates, impulsivity, substance abuse, and educational or employment deficits.

The judiciary is implementing core correctional practices that have proven effective in reducing recidivism. The judiciary's training program, Staff Training Aimed at Reducing Re-Arrest (STARR), has been provided to 1,018 officers in 64 probation offices to date. These skills serve to model and reinforce pro-social behaviors in order to encourage long-term behavior change in clients. Underlying core correctional practices is the cognitive behavioral model that focuses on changing an individual's thoughts in order to change his or her behavior. Once trained, officers require a significant amount of support to reinforce and continually practice core correctional skills with their defendants and offenders.

*Controlling Strategies*

Controlling strategies involve offenders being held accountable for their actions and being made aware that their activities will continue to be monitored while they are under supervision, with positive behavior encouraged and negative behavior sanctioned.

Probation and pretrial services officers work with a variety of third parties to help stay informed of clients' conduct, including developing rapport with the client's family, friends and employer. Working with law enforcement also plays a major role. Probation and pretrial services officers constantly update profile information in criminal justice records on the client so federal, state, and local law enforcement agencies are

aware of clients' supervision status. The type of information that now flows across agencies has moved beyond traditional biographical data and fingerprint-based identifiers to include high resolution photographs and DNA data filed with the FBI.

In cases where the client is at elevated risk for committing a new crime, probation officers also work closely and directly with police intelligence units and multi-agency task forces to timely detect any signs of recidivism. Based on information they receive from police and other sources, probation officers can increase or decrease the frequency of contacts with clients in the community. Similarly, while officers frequently check in with the client's family members, employers and associates, the frequency and nature of that contact is adjusted as circumstances dictate.

Where the court deems it appropriate, the client's location and activities can be monitored electronically through global positioning satellite (GPS) and other technologies. Similarly, the court may authorize drug testing, travel restrictions, or prohibition on associating with certain individuals. In higher risk cases, courts can order the offender undergo polygraph examinations and authorize warrantless searches and seizures by probation officers.

During the 12-month period ending June 2014, the BOP released 49,696 inmates to the supervision of probation officers in the community. Combined with releases from previous years and probation cases, the daily supervision population reached 132,597 during that same period. The BOP's

4.14

population now exceeds 213,461 inmates, with nearly all of these inmates eventually to be released to terms of supervision.

Outcome Measurement Programs

The federal probation and pretrial services system is committed to measuring and acting on outcomes, with a key outcome being reduced recidivism among persons currently and formerly supervised by probation officers. Individual districts have partnered with local universities to study special in-district programs, while the judiciary as a whole has developed the capacity for systematic long-term studies.

The challenge to all criminal justice researchers is the absence of a single, uniform source for arrest and disposition data, and the varied format and content of the incomplete information that is available. Local and state jurisdictions collect reports and share criminal justice data differently. To overcome this problem, the judiciary has created an automated program that collects arrest and disposition data from multiple sources and interprets the results despite the variation in format and content of the underlying records. The judiciary also has its probation and pretrial services officers using a single case management system, which allows for the collection of comprehensive data from all 94 districts. As a result, researchers are studying - on a larger scale than ever before - the relationship between recidivism and probation officers' case strategies and interventions.

Location Monitoring Program

Courts may impose location restrictions on defendants and offenders as part of pretrial and post-conviction supervision terms. Probation and pretrial services officers use a combination of new technologies and traditional supervision work to verify defendants' and offenders' compliance with such conditions. Some of these new technologies include voice verification systems, radio frequency monitoring devices and global positioning systems.

The voice verification system is usually used in low-risk cases where the supervisee is serving a period of home detention or curfew.

Radio frequency (RF) technology verifies the presence of a defendant/offender at an authorized location using a transmitter and receiver. This technology is ideal for continuous monitoring in the home.

The global positioning system (GPS) uses satellites and triangulation to monitor a defendant/offender's location in the community. GPS is usually reserved for higher-risk cases that involve prohibitions on travel to certain locations (e.g., schools, high crime areas, home of victims or witnesses) or that require the supervisee to be at specific locations outside the home at a specific time (e.g., place of employment or drug treatment).

470

Impact on Retroactivity Of the Drug Guidelines Amendment

In April 2014, the United States Sentencing Commission voted to approve an amendment to the Sentencing Guidelines Manual. The amendment lowers by two-levels the sentencing offenses levels in the Drug Quantity Table. The Commission expects the lower guidelines to impact 70 percent of all drug cases and reduce sentences by an average of 11 months for prospective cases (not yet sentenced) and 25 months for inmates in custody who are granted the reduction retroactively. While the amendment went into effect on November 1, 2014 for prospective cases, inmates granted retroactive reductions can be released no earlier than November 1, 2015 in order to address logistical and reentry concerns.

The workload of probation offices will be impacted in three ways by the guideline amendment. First, in prospective cases, the offices will be asked to supervise convicted persons a year earlier than in the past. Second, probation officers will have to screen all the inmate-applicants for retroactive reductions and gather information needed by the court to adjudicate the application. To provide an insight into the number of cases, the Commission estimates up to 50,000 inmates are eligible for a reduction, but past experience suggests that 5,000 to 10,000 additional inmates may submit petitions hoping they will somehow receive consideration. Third and lastly, probation offices will have to assume supervision of the inmates granted sentencing reductions, with some inmates "hitting the streets" two or more years earlier than they expected.

Another dramatic example of the impact that infusion of new cases will have on the judiciary is seen in the following statistic. On a typical day, nationally, the probation and pretrial services system is assigned a few hundred new cases to supervise, but on November 1, 2015 that number will be 8,894. Of that total, 6,670 released inmates will be actively supervised and the balanced tracked as they face possible deportation or charges in other jurisdictions. Congress has provided funding to address this workload.

National Training Academy

The National Training Academy (NTA) in Charleston, South Carolina, opened in January 2005. The NTA provides quality training to all newly hired U.S. Probation and Pretrial Services Officers (PPSO) and provides Administrative Office (AO) certification for officers serving as firearms and safety instructors and search and seizure team members. The NTA also serves as one of the training sites for experienced officers to participate in Post-Conviction Risk Assessment (PCRA) training and Strategic Training Aimed at Reducing Rearrest (STARR). This centralized focus on training has enhanced uniformity and cohesiveness in policy and program implementation.

To provide support throughout the probation and pretrial services system, the NTA staff provides policy guidance on the Use of Force, the AO Director's Firearms Regulations and all firearms and safety related policies. NTA staff also conducts reviews of districts' firearms and safety programs and reports

4.15

471

4.16

## Legislative and Administrative Changes

Legislative and administrative changes greatly influence the workload of probation and pretrial services officers. For example, the Department of Justice's Smart on Crime Initiative has impacted the number and nature of inmates coming under supervision, and the Sentencing Commission's recent amendment in drug cases has dramatically increased the number of persons coming under supervision as well.

Each statutory and sentencing guideline change generates a new line of interpretive case law and *ex post facto*[1] issues that must be researched and understood by officers as part of their pretrial and presentence duties. Prior to 1984, there were few significant changes in the law pertaining to federal sentencing. However, following enactment of the Comprehensive Crime Control Act of 1984, which revamped federal pretrial release and sentencing, there have been more than 15 significant legislative modifications. For example, in recent years, legislation related to the prosecution, detention, sentencing, and supervision of sexual offenders (e.g., PROTECT Act, Adam Walsh Child Protection and Safety Act, KIDS Act of 2008) has placed new responsibilities on probation and pretrial services officers. The U.S. Sentencing Guidelines have been amended 789 times since their effective date of November 1, 1987. Each change requires training for judges, attorneys, and probation officers.

[1] A law that retroactively changes the legal consequences of acts committed or the legal status of facts and relationships that existed prior to enactment of the law.

the findings to the chief judge of the district and to the Administrative Office.

In fiscal year 2013, in order to absorb the sequestration-related cuts to the NTA's budget, numerous training programs were cancelled, including several basic new officer classes and certification programs for firearms, safety and search & seizure instructors. The cancellations quickly became problematic as waiting lists developed for those new officers hired to replace the experienced officers who retired, and certifications began to lapse to instructors who provide key firearms, safety and procedural training in the courts. The hazardous and complex nature of probation and pretrial services work became more so in the absence of the proscribed training.

The new officer training backlog created by sequestration not only lasted through fiscal year 2014 but is expected to continue well into fiscal year 2015. In fact, with a projected increase in hiring to deal with the roughly 50,000 inmates to be granted expedited release under a recent guideline amendment over the next several years, it appeared the backlog would continue unabated for the foreseeable future. To address the situation, NTA took the undesirable but necessary step of scaling back the training program from six to four weeks, reducing some aspects of the curriculum and eliminating other portions all together. Final fiscal year 2015 funding provided by Congress will significantly reduce the training backlog going into fiscal year 2016, and the program can return to its six week format.

4.17

In the last Congress, several bills were introduced that would have a significant impact on the administration of the courts, especially probation and pretrial services offices. The Senate Judiciary Committee marked up and passed an amended version of S. 1410, the "Smarter Sentencing Act of 2013," which would allow the "Fair Sentencing Act of 2010" to be applied retroactively to federal prisoners who were sentenced for a crack cocaine offense prior to August 3, 2010; broaden the mandatory minimums safety valve for certain drug offenders; and reduce the mandatory minimum sentences for certain federal drug offenses.

On March 6, 2014, the Senate Judiciary Committee passed an amended version of S. 1675, the "Recidivism Reduction and Public Safety Act of 2014." Under the bill, inmates would be released to home confinement or placed on "community supervision," during which they would remain under the jurisdiction of the Bureau of Prisons but would be supervised by probation officers. The bill would also impose new workload requirements on the federal judiciary by, among other things, mandating new recidivism reporting requirements; establishing demonstration and pilot projects in the courts; and mandating new requirements for presentence reports.

As part of the judiciary's cost-containment efforts, the Conference reviewed several statutory requirements that cause the courts to spend money, but are obsolete, redundant, ineffective, or otherwise an impediment to savings. Noting that the statutes in question could be amended without any loss in the quality of services provided, the Conference has agreed to seek the following amendments:

*Mandatory Electronic Monitoring Condition.* Section 3142(c) of title 18, United States Code, requires a court to impose electronic monitoring as a condition of pretrial release if a defendant is charged with certain sex offenses involving a minor victim. This condition is required even if the court imposes a more restrictive condition, such as admission to a residential treatment program. Recognizing that an electronic monitoring condition may not be necessary to ensure the defendant's appearance and protect the community when a more restrictive condition is imposed, the Conference is seeking an amendment to 18 U.S.C. § 3142(c) to allow a court to waive the electronic monitoring condition if a more restrictive condition of pretrial release is imposed.

*Pretrial Services Bail Reports.* Section 3154(1) of title 18, United States Code, requires a bail report on each person charged with a felony. However, a bail report would have little or no bearing in cases where the defendant has no chance of being released pending trial, e.g., he or she is serving a sentence on another charge. The Conference is seeking an amendment to 18 U.S.C. § 3154(1) to allow a court to waive the preparation of the bail report in all cases where the report would have little or no bearing on the court's release decision.

*Sharing Services Among Districts.* The Conference is seeking an amendment to 18 U.S.C. § 3602 to allow a probation officer appointed in one district to perform services for another district with the consent of the appointing court. This would facilitate

4.18

the sharing across district lines of officer positions requiring special knowledge, such as sex-offender specialists, cyber-crime specialists, and search team members. The Senate fiscal year 2015 Financial Services and General Government Appropriations Bill included a provision to allow a probation officer appointed in one district to perform services for another district with the consent of the appointing court, but the provision was not included in the final fiscal year 2015 omnibus appropriations bill.

*Presentence Notice to Victims.* The Mandatory Victims Restitution Act of 1996, Public Law No. 104-132, requires probation officers to provide the victims of an offense with notice of the defendant's conviction, the sentence date, and the victim's opportunity to submit an impact statement, while the Crime Victims Rights Act, Public Law No. 108-405, places similar requirements on officers and employees of the Department of Justice and certain other Executive Branch agencies. To avoid duplication of effort and provide victims with a single source of contact, the Conference is seeking an amendment to 18 U.S.C. § 3664(d)(2) to waive the requirement that a probation officer provide the above-described notice if a representative of an Executive Branch agency has already provided such notice.

*Early Termination of Compassionately Released Offenders.* Section 3583(e)(1) of title 18, U.S. Code, requires at least one year of supervised release after incarceration before the supervision can be terminated early, and specifies that early termination may occur only when warranted by the conduct of the defendant released and the interest of justice. However there are cases where early termination would be appropriate prior to one year, and based on factors independent of the offender's conduct, for example where defendants are physically incapacitated, dying, or aged to the point that they are no longer a risk to the community and cannot meaningfully engage in the supervision process. Noting that it makes little policy or financial sense to keep such cases under supervision, the Judicial Conference is seeking legislation that permits the early termination of supervision terms, without regard to the limitations in 18 U.S.C. § 3583(e)(1), for an inmate who is compassionately released from prison under section 3582( c) of that title. The Senate fiscal year 2015 Financial Services and General Government appropriations bill included a provision that would allow early termination of probation supervision where defendants are physically incapacitated, dying, or aged to the point that they are no longer a risk to the community, but the provision was not included in the final fiscal year 2015 omnibus appropriations bill.

**Immigration and Drug Enforcement**

During the one-year time period ending in June 2014, defendants charged with immigration offenses decreased nine percent from 2013 levels. It appears this may have a few causes. First, because of the struggling U.S. economy, there may be fewer illegal immigrants willing to risk illegal entry. Second, new or enhanced enforcement efforts may be having a deterrent effect on illegal crossings.

Immigration defendants remain a large part of the criminal filing category in federal courts. Since 2008, immigration defendants have only been exceeded by the number of drug defendants. The bulk of immigration and drug cases are in the five federal judicial districts (Arizona, California-Southern, New Mexico, Texas-Southern, and Texas-Western) along the Southwest border. For example, in 2014, over 32 percent of all drug defendants were charged in the five Southwest border districts. This is approximately a four percent increase in that number since 2009. For 2014, 76 percent of all immigration defendants were charged in the five Southwest border districts representing a one percent increase over 2013.

Although these cases are concentrated along the Southwest border, 24 percent of all immigration cases were in the other 89 district courts. The criminal justice focus along the Southwest border requires the judges and staff from other districts to assist with the courts' dockets. In most instances, there is a need for court interpreter support at every stage of the criminal case process. It is expected that immigration and drug enforcement will continue along the Southwest border as well as in other parts of the country.

An unprecedented amount of resources continue to be allocated to secure the border and combat the flow of drugs and weapons. Funding continues to be provided to deploy surveillance and detection technology and unmanned aircraft system operations to cover the entire Southwest Border. The Department of Homeland Security (DHS) has more than doubled the number of border patrol agents along the

Southwest border from about 9,100 in 2001 to more than 18,500 today. In addition, there are 1,700 enforcement and support personnel patrolling the air and marine domains throughout the United States. DHS has also increased security improvements along the Northern Border, investing additional border patrol agents, technology and infrastructure. There are almost 2,100 border patrol agents on the Northern Border a substantial increase from 500 agents 10 years ago. Over 5,000 miles along the Northern border, is currently being patrolled for illegal movement of people and contraband. Efforts to combat human smuggling and weapons trafficking have increased over the last several years. In fiscal year 2013, there were more than 1,025 human trafficking investigations which resulted in more than 1,877 criminal arrests, 1,070 indictments and 816 convictions.

In fiscal year 2013, Immigration and Customs Enforcement made 40,218 criminal arrests while seizing $1.3 billion in U.S. currency and other monetary instruments, 1.6 million pounds of narcotics and other dangerous drugs, and 58,672 weapons. All of these enforcement efforts continue to lead to a high level of immigration and custom related criminal cases in Federal court.

The DOJ continues its efforts to combat violations of immigration law. DOJ provides prosecutorial activities along the Southwest Border and operational funding to support agencies, including the Federal Bureau of Investigation, United States Marshals Service, Drug Enforcement Administration and the Bureau of Alcohol, Tobacco, Firearms and Explosives. Along with existing efforts, DOJ continues combating

4.20

Southwest Border violence and dismantling drug cartels that are driving an increase in violent crime, drug trafficking and money laundering. These efforts will result in an increased workload for the district courts, which will likely continue well into the future.

Immigration cases in the courts of appeals, generally from denials of relief from asylum, are adjudicated through the federal immigration courts and the Board of Immigration Appeals (BIA) at DOJ. While the number of filings has decreased 53 percent from its peak in 2006, these cases continue to demand extensive resources and are a far greater share of total caseload in recent years. Terminations of these appeals have not kept up with filings, resulting in pending BIA appeals increasing from 1,466 in 2001 to 7,241 in 2014 (an increase of 394 percent). The cumulative effect of these filings has impacted both the judges and staff in the courts of appeals. Courts have revised case-review processes to accommodate the volume of petitions for review from the BIA. These cases often require *de novo*[2] review of complex agency records and require additional time for judges and staff. The courts have had to develop greater expertise in this area and some courts have created immigration specialists. These cases require clerks offices to handle a large number of records from DOJ and process numerous motions per case.

The volume of work for probation and pretrial services is dictated by prosecutions brought by U.S. Attorneys' offices

[2] An appeal in which the appellate court uses the trial court's record but reviews the evidence and law without deference to the trial court's rulings.

and the number of inmates released by the Federal Bureau of Prisons (BOP). Of the 102,949 defendants investigated (activated) by pretrial services in the 12-month period ending June 2014, 53 percent were non-citizens of the United States or their citizenship could not be determined. Coupled with the volume of work related to immigration cases, there is an increase in complexity. A significant challenge for the probation and pretrial services officers is the weak tie to the community of defendants and offenders who are illegal or temporary aliens and who often have limited involvement with mainstream elements in society. A defendant's illegal alien status clearly complicates the pretrial service officer's ability to find less costly, non-custodial options that will allow for the defendant's pretrial release. Another problem related to immigration cases is the need to coordinate interviews with court-certified interpreters, resulting in additional time and costs.

For various reasons, not all alien offenders are deported upon being convicted of a federal crime. In fact, 4,836 offenders currently under active post-conviction supervision are listed as non-citizens of the United States. This includes confirmed "illegal aliens" and others whose immigration status is still being litigated. In many instances, as immigration authorities process their amnesty and related applications, alien-offenders remain in a legal limbo with no authority to secure employment or enroll in school. This places the probation officer in a situation where the conditions of supervision, which require gainful employment or pursuit of education, are at odds with immigration rules. Officers struggle to minimize the

opportunities for recidivism while trying to stabilize offenders' living situations pending final action by immigration authorities.

## Bankruptcy Courts

Bankruptcy filings have historically been cyclical. They most recently peaked in 2010 at more than 1.5 million petitions and then began decreasing again in recent years. Nationwide, filings decreased by 14 percent between 2011 and 2012 going from 1,529,560 filings to 1,311,628 filings, and 13 percent from 2012 to 2013 from 1,311,628 filings to 1,137,978 filings. Recently filings decreased by 12 percent from 2013 to 2014 from 1,137,978 to 1,000,083. The recent declines are largely influenced by the restriction on extending credit during, and in the immediate aftermath of the recession. Bankruptcy filings have historically increased after credit restrictions ease with economic recovery. In the fall of 2013, it was eight years since the implementation of Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), and debtors who filed under chapters 7 and 11 anticipating changes in the bankruptcy code are once again eligible for discharges. These so-called "repeat filers" and the easing of credit restrictions may cause the rate of filing declines to moderate, eventually.

### Chapter 7 Bankruptcy Cases

Chapter 7 of the Bankruptcy Code provides an avenue for discharging certain debts to give individual debtors a fresh start, leaving no liability for discharged debts. Consumer bankruptcy petitions are driven by life crises including job loss, large medical bills, divorce, and natural disasters. The bankruptcy courts are expected to handle over 631,000 chapter 7 cases during the 12 months ending June 2015. While one of the purposes of chapter 7 is to provide for a discharge of debts (after the liquidation of non-exempt assets), individual debtors must qualify for relief under chapter 7 through a means test. If the debtor's current monthly income is more than the state median, the Bankruptcy Code requires application of the means test to determine whether the chapter 7 filing is presumptively abusive. If so, the case can be dismissed or converted to a more complex and time consuming chapter 13 filing where the filer is required to repay at least some of the debt over a period lasting up to three to five years.

### Chapter 11 Bankruptcy Cases

Filings under chapter 11 of the Bankruptcy Code offer the opportunity to reorganize businesses or to liquidate them in an orderly manner. In chapter 11 cases, bankruptcy courts are directly involved in reviewing and approving complicated business reorganization plans and asset sales focusing on the goal of achieving a benefit for all interested parties. The bankruptcy courts expect to handle more than 8,000 chapter 11 cases during the 12 months ending June 2015.

### Chapter 13 Bankruptcy Cases

Chapter 13 of the Bankruptcy Code assists individual debtors who have regular income to adjust their debts within a repayment plan. Under such a plan, debtors can save their homes from foreclosure by allowing them to catch up past-due

4.21

payments.  The bankruptcy courts are expected to handle almost 300,000 chapter 13 cases during the 12 months ending June 2015.

## Workload in the Courts

The judiciary's workload is, for the most part, generated by forces outside of its control.  The funding request for court support staff increases slightly to take into account workload changes associated with new judges.  Even if the fiscal year 2016 request is funded, clerks and probation and pretrial services officers will still be operating with fewer staff than were on-board prior to sequestration.

Table 4.1 on page 4.23 displays the caseload factors for each of the 12-month periods ending June 30, 2009 through June 30, 2015 (projected).

**Table 4.1 Comparison of Judiciary Workload Factors**

| WORKLOAD FACTOR | 12 months ending June 30, 2009 Actual | 12 months ending June 30, 2010 Actual | 12 months ending June 30, 2011 Actual | 12 months ending June 30, 2012 Actual | 12 months ending June 30, 2013 Actual | 12 months ending June 30, 2014 Actual | 12 months ending June 30, 2015 Projected |
|---|---|---|---|---|---|---|---|
| Criminal Filings | 75,324 | 78,213 | 78,764 | 73,455 | 69,642 | 64,027 | 59,200 |
| Year-to-Year Change: | 0% | 4% | 1% | -7% | -5% | -8% | -8% |
| Criminal Defendants Filed | 96,718 | 100,031 | 102,605 | 96,915 | 91,812 | 84,017 | 75,800 |
| Year-to-Year Change: | 0% | 3% | 3% | -6% | -5% | -8% | -10% |
| Probation: Persons Under Supervision | 123,839 | 126,642 | 129,319 | 132,785 | 132,362 | 132,858 | 134,300 |
| Year-to-Year Change: | 0% | 2% | 2% | 3% | -0.3% | 0.4% | 1.1% |
| Pretrial Services: Cases Activated | 103,604 | 110,671 | 107,197 | 105,852 | 102,457 | 98,122 | 90,400 |
| Year-to-Year Change: | 0% | 7% | -3% | -1% | -3% | -4% | -8% |
| Bankruptcy Filings | 1,306,315 | 1,572,597 | 1,529,560 | 1,311,602 | 1,137,978 | 1,000,083 | 899,500 |
| Year-to-Year Change: | 0% | 20% | -3% | -14% | -13% | -12% | -10% |
| Appellate Filings | 59,399 | 56,097 | 55,353 | 57,699 | 56,360 | 55,260 | 54,400 |
| Year-to-Year Change: | 0% | -6% | -1% | 4% | -2% | -2% | -2% |
| Civil Filings | 257,204 | 285,215 | 289,630 | 286,232 | 283,087 | 298,713 | 289,000 |
| Year-to-Year Change: | 0% | 11% | 2% | -1% | -1% | 6% | -3% |

4.23

**Efforts to Contain Costs in the Courts and Limit Appropriation Requirements**

The judiciary continues to take seriously its role as steward of the taxpayers' dollars and regularly reviews program and business practices to identify areas where economies and efficiencies can be achieved. With large budget deficits projected to continue well into the future, efforts are underway to reduce government spending. The judiciary cannot control how much it receives in resources, but ultimately can exert control over how the resources are managed and allocated in order to minimize the impact of insufficient funding on court operations.

The judiciary has been focused on cost-containment for over ten years since the Judicial Conference adopted a cost-containment strategy in September 2004. These efforts have resulted in reductions in discretionary requirements and have helped limit the growth in the judiciary's budget.

The judiciary's biggest cost-containment success has been in limiting growth in space rent costs. As a result of cost-containment initiatives implemented beginning in 2005, the judiciary will have avoided over $500 million in GSA rent costs by fiscal year 2016. The judiciary has identified usable space in courthouses to re-purpose for occupancy of judiciary employees (e.g. probation and pretrial services officers)

currently in leased space that can be relinquished to reduce recurring rent costs.

Another of the judiciary's continuing initiatives is to maximize the implementation of shared administrative services among the courts of appeals, district courts, bankruptcy courts, and probation and pretrial services offices. This effort will reduce staffing and overhead costs and streamline administrative processes in the courts. The staffing formulas are being updated to include best practices, benchmarks, performance standards, incentives for efficiency, and the presumption of shared administrative services. The judiciary also continues to reduce the amount spent on law books and law libraries in recognition of the increased reliance on electronic media to perform legal research.

In addition, to reduce travel costs associated with face-to-face training for court staff, the judiciary has enhanced the use of e-learning tools, including interactive webinars, DVD training presentations, and judiciary intranet class sites. The National Video Teleconferencing Service has helped reduce travel costs within court districts and between the Administrative Office and the courts, and has enabled participating court units to disconnect costly dedicated telecom lines. The judiciary continues to implement a national, Voice Over Internet Protocol telephone system which provides data, voice, and video services on a single network for the courts. By providing

courts with a robust replacement for their aging telephone equipment, the judiciary is reducing court telephone-related expenditures.

The judiciary has enhanced the use of strategic sourcing, such as the use of judiciary-wide contracts to obtain discounts for buying in volume, simplify supply of common-use products, and reduce administrative effort. Blanket Purchase Agreements have been awarded for products such as tablets, desktop and laptop PCs, accessories, printers, servers and support, and desktop, security, and server virtualization software and support.

The judiciary has a record of productivity enhancements and cost avoidance from new/improved IT systems which provide efficiencies and help contain growth in future technology and staffing costs. For example, a single integrated financial system will allow timely access to data and support federal accounting standards, including the e-government requirement for daily reporting to the Department of Treasury. It will provide enhanced reporting capability, tracking and monitoring civil and criminal debt imposed by the courts, handling of cash receipts, reporting of court payroll information, and management of travel expenses. Funding for these enhancements was reduced in fiscal year 2013 and curtailed in 2014 as a result of budget sequestration. Funding for these efforts is included in this request as the judiciary is now in the process of rebuilding and re-baselining its development and strategic investment program.

## Space and Facilities Program and Initiatives

The judiciary's space and facilities requirements include rental payments to the General Services Administration (GSA) for federally owned and leased space, utilities which exceed the basic levels provided by GSA (e.g., when court proceedings extend beyond normal business hours), alterations of space, payments to private lessors for parking and space, and maintenance (e.g., replacement of carpeting, painting).

### Reducing the Judiciary's Space Footprint

The judiciary is committed to reducing its rent costs and space footprint via reconfiguring, reducing space and transforming operations. The Judicial Conference of the United States has endorsed two important space reduction policies. The first is a "No Net New" policy. Under this policy, any increase in square footage within a circuit needs to be offset by an equivalent reduction in square footage identified within the same fiscal year. The second policy is a three percent space reduction target by the end of fiscal year 2018. The effect of incorporating these innovations and shedding space will take some time. During the first year of implementation, space has been reduced by 0.8 percent, resulting in a savings of $5.8 million annually. Funding requested for GSA rent costs includes only the requirements for current holdings and spaces that are under design or construction and expected to be completed and occupied in fiscal year 2015 or fiscal year 2016. Based on 40 USC 586(b), which provides that the GSA is to "impose a charge for furnishing space and services," the

4.25

judiciary considers its GSA rent a must-pay line item in its budget.

*Integrated Workplace Initiative*

The judiciary is often symbolized by physical structures (courthouses) that members of the public visit in search of justice. However, the increasing evolution and adoption of technologies has provided the opportunity for more flexibility in where and when traditionally workplace-based roles are performed. Underway is an integrated workplace initiative (IWI) that would provide methodologies for reconfiguring and reducing space with the expectation of saving future recurring GSA rent costs. Further, this initiative includes developing methods aimed at reducing the space required to conduct the judiciary's business. The IWI examines how courts work, explores changing work styles, researches new and emerging technologies, identifies successful mobile working situations (e.g., probation officers working remotely in the field rather than in the courthouse), and develops ways to support a better workspace environment with mobility strategies.

The objective of the IWI is to capitalize on the opportunity to reduce the judiciary's real estate footprint, while creating a better and more efficient workplace environment. As part of the IWI, a software application has been developed that analyzes options to reduce or consolidate space, incorporates workplace sharing scenarios, and generates space square footage reduction calculations, rent cost reductions, construction cost estimates, and break-even cost analysis.

In fiscal year 2015 and fiscal year 2016, funding will be used for space reduction projects, including demolition and construction to reconfigure space, furniture, information technology, scanning of records in order to reduce space required for files and contractual services. As of August 2014, the courts have identified 253,067 square feet for release. The fiscal year 2015 funding level will also adequately fund projects for chambers for new or replacement judges. Courts will have funding for cyclical facilities maintenance which is an area that previously has been underfunded.

*Asset Management Planning*

The current Asset Management Planning (AMP) process was approved by the Judicial Conference in 2008. A comprehensive and objective facility planning tool, AMP was developed to address cost containment concerns and incorporate industry standards and best practices, as appropriate. The process includes a district-by-district physical assessment of all courthouse facilities, as well as completion of a needs assessment that takes into account current and projected caseload, personnel, and space data. The resulting data and analysis is compiled in a long-range facilities plan. In addition, an Urgency Evaluation results list that identifies space urgency by court location in rank order of need is developed and updated annually, ensuring that the judiciary's space needs are addressed on a "worst first" basis. Through fiscal year 2014, the AMP Urgency Evaluation results list includes a total of 362 courthouses located across the country.

In addition, the AMP process has now been applied to all courthouse locations with a project on the *Five-Year Courthouse Project Plan*. This plan, which was approved by the Judicial Conference at its September 2014 session, sets forth the judiciary's courthouse construction priorities for 2016 and beyond. Additional information on the judiciary's courthouse construction priorities can be found in the *Courthouse Construction* Section 14.

*Return on Investment Pricing (ROI)*

In February 2008, the AO and GSA signed a Memorandum of Understanding (MOU) that changed the way rent is charged for the judiciary and has been a significant contributor towards controlling the judiciary's future rent bills. The MOU modified GSA's method for determining courthouse rent charges and resolved other judicial rent concerns. The pricing change became effective in fiscal year 2009 for 18 courthouses that were converted from "appraisal-based" to "return on investment-based" pricing and the rent for those buildings at the time of conversion was reduced by approximately 10 percent, or $7 million. There are currently 53 facilities with rental charges based on ROI pricing.

*GSA Service Validation Initiative*

The GSA Services Validation Initiative is intended to improve delivery of all services that the judiciary receives from GSA and will work in tandem with the judiciary's space reduction program with a focus on four subject matters: (1) appraisal methodology/Return on Investment (ROI) pricing practice;

(2) overtime utility estimating and energy savings sharing; (3) space assignment, classification and billing validation; and (4) project management: scope, development, and estimating. Funding has been provided to support the GSA Service Validation Initiative.

The initiative brings the judiciary and GSA together to accomplish the following: increased transparency that will allow the judiciary to confirm the accuracy of its rent and overtime utilities bills and the classification and measurement of the space it occupies; research and analysis of materials and bills; and consistent application of policies. This is expected to reduce the judiciary's costs in its space and facilities programs particularly in GSA rent and overtime utilities costs. It is expected that policies will be clarified and some policies may be updated.

This collaborative effort is intended also to foster stronger working relationships between GSA and the judiciary during the review and evaluation of current services provided by GSA and this should also enhance and streamline processes.

*Library Program Cost Containment*

A major cost containment effort of the judiciary's library program has been underway for several years, and has been highly successful in containing growth. Despite annual inflation rates from major law book vendors that have exceeded six percent, the judiciary spent $23.5 million (33 percent less) on new law books in fiscal year 2014 than it did in fiscal year 1999. Librarians, working with judges, continue

483

repurposing, or return that will result in substantial cost savings.

In September 2010, the Judicial Conference approved cost saving recommendations that arose from a study on libraries. The recommendations included (1) establishing guidelines to discourage maintaining subscriptions to regional reporters, state case law reporters, and specialty reporters in libraries; (2) advising circuit librarians to consider significantly reducing the number of subscriptions to the federal reporters in staffed libraries, especially West's Federal Supplement; (3) establishing guidelines to discourage subscriptions to case law reporters for newly appointed and existing judges; and (4) requesting that the circuit judicial councils, working with circuit librarians, library committees, and relevant judges, review satellite libraries to assess the continuing need for each library. As a result of these assessments, four libraries have been closed and many have downsized collections. In September 2013, the Judicial Conference took additional steps to reduce law books available in chambers by reducing the list of materials available, eliminating duplication through sharing, and encouraging the purchase of less-costly alternative titles when available.

In September 2013, the Judicial Conference again asked the circuit judicial councils to assess the need for each library and provide a report in the spring of 2014. The assessment reports reflected planned closures of an additional seven satellite libraries, library spaces, and/or large shared library collections. It also identified space in over 30 libraries for reduction,

## Information Technology Strategic Initiatives

The judiciary leverages the use of information technology (IT) to automate business processes and maximize efficiency. For example, the judiciary's Case Management/Electronic Case Files (CM/ECF) system automated the paper intensive case filing process. The CM/ECF system is fully operational in appellate, bankruptcy, and district courts, the Court of International Trade and the Court of Federal Claims. This benefits not only the judiciary, but also the bar, public, and other government agencies that now have greater access to court information. Long-term efficiencies have been achieved as a result of the CM/ECF implementation. In fact, as reflected in the latest work measurement formulas implemented, the CM/ECF has allowed the courts to operate with decreased staffing levels.

Working with the Administrative Office, the courts are developing a Next Generation case management system to replace the current one. The first phase of the Next Generation project, identifying functional requirements, is complete. The second phase of the project involves designing, coding and testing a first release, and is well under way. In October 2014, the judiciary deployed the first release of the Next Generation system to the 2nd and 9th circuit courts. The system has also been deployed to seven other bankruptcy and district courts in December 2014 for additional testing and feedback. The

4.28

deployment of the system will continue throughout fiscal year 2015 as additional courts consolidate their servers in the data center and begin to test the software. This Next Generation system will help to contain the cost of case processing well into the future.

In addition to processing virtually all cases electronically, the courts have been enhancing efficiency through a combination of local management initiatives and court-developed automation innovations, such as virtualization of servers among courts throughout a circuit. For years, court unit executives and their staffs have been adopting new management techniques, developing and sharing best practices, and using the flexibility provided under budget decentralization to invest in automation solutions that save resources as well as improve quality and performance.

Probation and pretrial services offices also continue to use automation projects, such as the Probation & Pretrial Services Automated Case Tracking System (PACTS), the Electronic Reporting System (ERS), Access to Law Enforcement System, the Electronic Probation and Pretrial Services System, the Safety and Information Reporting System, and the Decision Support System (DSS), to reduce costs and improve the effectiveness and efficiency of probation and pretrial services officers.

Criminal Justice Act (CJA) Electronic Vouchering (E-Vouchering) System

The judiciary is implementing an electronic CJA voucher processing system to replace the current paper-based system.

The current voucher review and payment system is very time and resource intensive for judges, court personnel, and CJA panel attorneys. The judiciary anticipates that moving to a paperless system will streamline the submission and review of CJA vouchers, improve efficiency and oversight by providing basic automatic checks and balances for claims, and, over time, reduce judiciary personnel costs. The judiciary will implement the system in 2015.

Hosting and Cloud Computing

In fiscal year 2016, the judiciary requests funding to begin developing a hosting and cloud computing infrastructure that is expected to result in significant efficiencies. This initiative will provide the benefit of shared IT security resources and a more resource-efficient hosting for the judiciary, in addition to a true continuity of operations in the event of disaster. The move toward this technology is inevitable and creating a national solution. It will alleviate redundancy and allow for disaster recovery, and sets the stage for a more mobile work force.

Upgrade E-Mail and Messaging System

In fiscal year 2016, the judiciary requests funding to begin updating the judiciary's 14-year old e-mail system. This project would include enhancing or replacing all existing systems for email, collaboration, and file sharing. It would provide a more efficient user interface, reduce support needs, and seamlessly integrate with mobile devices and other nationally supported applications. Replacing these systems

4.29

will provide greater user efficiencies and reduces the temptation to use more expedient, but insecure, work-- arounds such as file sharing through Dropbox.

A more detailed discussion of cost containment from the strategic sourcing of national contracts and other efforts can be found in the *Judiciary Information Technology Fund* appendix.

Records Management

In recent years, the judiciary, working with the National Archives and Records Administration (NARA), has sought to improve its records management program to ensure the preservation of historically significant case files and contain costs associated with the storage of records. Disposal of court records is controlled by records disposition schedules established jointly by the Judicial Conference and NARA. A record no longer needed for active court business may be sent to one of NARA's regional Federal Records Center (FRC) for storage until its retention period has elapsed and, at that point, it may either be destroyed or transferred to the National Archives as a permanent record. Since 1999, NARA has been statutorily obligated to charge a fee for storage at the FRCs.

A major milestone was reached in November 2010 when the Archivist of the United States signed the new retention schedule for civil case files, which was approved by the Judicial Conference in September 2010. At its September 2011 session, the Judicial Conference also approved proposed revisions to the retention schedules for appellate, bankruptcy and criminal case files and forwarded the revisions to the Archivist of the United States for ratification. The Archivist

signed the new schedule for bankruptcy case files in November 2011 and the new schedule for appellate case files in July 2012. That same year, NARA published the proposed criminal schedule in the Federal Register for public comment. Due to the comments received in response to the Federal Register notice, NARA requested that the judiciary determine whether the 15-year retention period for non-trial records is adequate. Additional research on the criminal case files was performed, resulting in a revision of the criminal schedule that considers length of sentence as a key element in establishing records retention guidelines. The revised schedule was approved by the Judicial Conference at its September 2013 meeting, and is currently at NARA for review and concurrence.

The implementation of the new civil and bankruptcy schedules was initiated in 2011, and as of November 2013, it is estimated that approximately 99 percent of the eligible civil case files (1970-1995) and 84 percent of eligible bankruptcy case files (1941-1996) have been processed.

The judiciary's efforts to contain storage costs associated with the Federal Records Centers are bearing fruit. Between fiscal year 2010 and fiscal year 2013, storage costs have been held flat, although transportation and storage costs have increased annually. In fiscal year 2014, the actual cost of storage has begun to fall, which is reflected in the fiscal year 2015 budget request. Upon full implementation, the new schedules are expected to lower judiciary costs by approximately $3 million per year.

The records management program continues to take on additional initiatives to support the courts (such as assisting

4.30

486

with the 2013 transfer of permanent records to NARA, developing and implementing an electronic records schedule, and continued nationwide records management support) and funding is needed to meet those needs and to complete the implementation of the new records schedules. In recent years, the judiciary, working with NARA, has sought to improve its records management program to ensure the preservation of historically-significant case files and contain costs associated with the storage of records.

Work Measurement

The judiciary has employed work measurement for several decades to (1) determine systematically its required staffing levels; (2) provide empirical justification for budget requests; and (3) allocate fairly and equitably available staff resources to the courts. The judiciary has emphasized the results of work measurement studies during recent years as a key component of its workforce analysis and cost-containment efforts. Part of that emphasis has been an update of work measurement techniques to more in-depth data collection, increased accuracy, and less intrusion on the time of the court units under study.

In September 2014, the Judicial Conference approved new staffing formulas for the offices of bankruptcy administrators and the offices of the clerks of court, staff attorneys, circuit executives, circuit mediators, circuit librarians, and bankruptcy appellate panel clerks within the circuit courts of appeals. The new formulas incorporated best practices, shared services, benchmarks, and performance standards. These new formulas reduced the staffing requirements of the offices of bankruptcy

administrators in the fiscal year 2015 financial plan and fiscal year 2016 request by 11 percent and by seven percent for the aggregate offices of the circuit courts of appeals. In the two prior years, new staffing formulas reduced staffing requirements by 24 percent in bankruptcy clerks' offices and 12 percent in district clerks' offices, respectively. To date, updated staffing formulas have reduced requirements by 2,950 FTE totaling $237 million.

The judiciary has completed the data collection phases for staffing formula development studies in federal defender organizations and federal probation and pretrial services offices. The judiciary anticipates completion of these initiatives in time to incorporate the outcomes into its fiscal year 2016 financial plan and fiscal year 2017 budget request.

Telephone Interpreting Program (TIP)

The Telephone Interpreting Program (TIP) was established to provide remote interpretation in short court proceedings where certified or otherwise qualified interpreters are not locally available. TIP reduces the need for an interpreter to travel to distant court locations and allows an interpreter to provide service for multiple proceedings at multiple locations in the same day. TIP use decreased by approximately 300 events to 3,447 events, or about 14 percent from fiscal year 2013 to fiscal year 2014.

This decline is in line with national court interpreting usage in the federal courts, which also declined by about 14 percent during the same time period. In fiscal year 2014, 52 districts in 101 locations received TIP services in 46 different languages.

4.31

487

4.32

TIP usage still represents an overall savings of approximately $1.8 million during fiscal year 2014, which is comparable to savings during fiscal year 2013.

The use of TIP has ensured the availability of federally certified or otherwise qualified interpreters for defendants in short court proceedings and has saved over $15.3 million for the judiciary in travel and other costs since the Judicial Conference approved the program in 2001. TIP is an example of shared court services and a major cost-containment initiative in the judiciary. TIP's continued operation depends on the availability of the online TIP Scheduling and Database System. The system is a national web-based application available to courts via the judiciary's intranet to facilitate the scheduling of TIP services. The application allows users to request a TIP interpreter, change or cancel scheduled events, review a list of pending requests, close out requests, and access other information such as an on-line user guide, time zone chart, frequently asked questions list, and a selection of system generated usage and savings reports. Operations and maintenance support for the TIP application is handled by on-site contractor personnel. In fiscal year 2014 alone, TIP saved the judiciary approximately six times the amount of money it costs to keep the system operational.

**Fiscal Year 2016 Request**

The fiscal year 2016 discretionary appropriation request for the Salaries and Expenses account totals $5,042,383,000, including $6,045,000 for requirements funded from the Vaccine Injury Trust Fund. The judiciary also requires $408,215,000 for requirements funded from mandatory appropriations. The fiscal year 2016 discretionary request of $5,042,383,000 is a 3.9 percent increase over the fiscal year 2015 enacted discretionary appropriation level of $4,852,241,000.

In addition to appropriated funds, the Salaries and Expenses account utilizes other funding sources to offset its appropriation requirements, including current year fee collections, carryover of fee balances from the prior year, and no-year appropriation balances (excluding encumbered carryforward). The judiciary projects that these sources of non-appropriated funds will total $327.2 million in fiscal year 2016, $9.7 million less than the $336.9 million expected to be utilized in fiscal year 2015.

**Justification of Changes**

The changes in the fiscal year 2016 budget request are divided into two sections: adjustments to base increases and program increases.

Adjustments to base, totaling $156.1 million (78 percent of the requested increase) are for:

- increases to mandatory appropriations for filled Article III and bankruptcy judgeships, and senior judges ($8.9 million).

- increases in personnel costs for magistrate judges and for staff ($97.4 million);
- net increases in staff to support filled Article III and bankruptcy judgeships and senior judges, and related costs ($11.0 million);
- General Services Administration(GSA) rent and related costs ($8.9 million);
- ongoing information technology requirements ($13.8 million);
- financing adjustments to replace non-appropriated sources of funds with appropriated funds ($9.7 million);
- other must-pay operations and maintenance costs ($11.7 million); and
- decreases for non-recurring costs associated with filled fiscal year 2015 judgeships ($5.3 million).

Program increases totaling $42.9 million (22 percent of the requested increase) are for:

- 3 new magistrate judges and associated staff ($1.9 million);
- Enterprise Hosting and Cloud Computing Initiative ($19.0 million);
- Upgrade Email and Messaging System ($7.0 million); and
- Evidence Based Supervision Practices ($15.0 million).

**ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES**

**Requested Discretionary Increase: $147,258,000**
**Mandatory Increase: $8,854,000**

The following provides information and justification for each of the adjustments to base for the Salaries and Expenses account. This section is divided into three subsections: judges,

4.33

court personnel and programs, and other adjustments. Each line item is identified in this section by a number that corresponds to the line items in the Fiscal Year 2016 Resource Requirements section on pages 4.3 through 4.4.

## A. JUDGES

### 1. Pay and benefit cost adjustments

#### a. Annualization of 2015 pay adjustment

**Requested Discretionary Increase: $320,000**
**Mandatory Increase: $602,000**

As a result of the Employment Cost Index (ECI) adjustment, federal pay rates increased by 1.0 percent in January 2015. The requested increase provides for the cost of three months (from October 2015 to December 2015) of the 2015 pay increase in fiscal year 2016.

#### b. Proposed January 2016 pay adjustment

**Requested Discretionary Increase: $962,000**
**Mandatory Increase: $2,408,000**

The Ethics Reform Act of 1989 as amended, includes a formula which provides that for 2016, Federal Judges (as well as the Vice President, Members of Congress and Executive Schedule officials) are eligible to receive up to a 1.0 percent ECI pay adjustment effective January 2016. The ECI is published quarterly by the Bureau of Labor Statistics, and it measures changes in wages and salaries.

Table 4.2 Salaries of U.S. Judges

| | 2015 | 2016* |
|---|---|---|
| Article III Judges | | |
| Court of Appeals | 213,300 | 215,400 |
| District Court | 201,100 | 203,100 |
| Article I Judges | | |
| U.S. Court of Federal Claims | 201,100 | 203,100 |
| Other Judicial Officers** | | |
| Bankruptcy Judges | 185,012 | 186,852 |
| Magistrate Judges | 185,012 | 186,852 |

*Reflects an assumed 1.0% ECI increase in January 2016.
**Bankruptcy and Magistrate Judges salaries are based on 92 percent of a District Judges Salary.

As of January 2015, the Office of Management and Budget is projecting that federal pay rates will increase an average of 1.0 percent beginning on or after January 1, 2016. Consequently the judiciary's 2016 budget request includes a 1.0 percent judges ECI. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2016 (from January 2016 to September 2016).

#### c. Benefit increases

**Requested Discretionary Increase: $584,000**
**Mandatory Increase: $709,000**

The requested amount includes $0.7 million to cover premium rate increases in Federal Employee Group Life Insurance (FEGLI) for qualified judges with Option B life insurance coverage (additional coverage above the basic FEGLI coverage) pursuant to 28 U.S.C. §604(a)(5).

Also, an increase of $0.5 million in health benefit payments is required based on the Office of Personnel Management estimates that health benefit premium contributions will increase by 3.2 percent in January 2015, and 4.0 percent in January 2016. The requested increase annualizes the 2015 premium increase, and includes a nine-month provision for the anticipated fiscal year 2016 premium increase and other changes.

An additional $0.1 million is also requested to provide for the increase in employer contributions to the Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax in fiscal year 2016. The salary cap for OASDI increased from $117,000 in January 2014, and to $118,500 in January 2015. The requested base adjustment represents the additional agency contribution paid for judges.

### c. Federal Employees Retirement System Increases

**Requested Discretionary Increase: $555,000**
**Mandatory Increase: $338,000**

Funds are requested for a 0.5 percent increase (from 13.2 percent to 13.7 percent) in the agency contribution rate to Federal Employee Retirement System (FERS) plans effective October 1, 2015. The FERS increase is in accordance with revised estimates of the cost of providing benefits by the Board of Actuaries of the Civil Service Retirement and Disability System.

### 2. Senior Judges

**Requested Discretionary Increase:  $6,036,000      FTE: 50**
**Mandatory Increase: $2,946,000      FTE: 15**

Funds are requested in fiscal year 2016 for an additional 15 judges expected to take senior status. This request also funds associated chambers staff (50 FTE) to assist these judges. The request includes $2.9 million for the salaries and benefits of judges, $4.4 million for the salaries and benefits of supporting staff, and about $1.6 million for supporting costs such as law books, furniture, travel, supplies, and equipment. Table 4.3 details the projected distribution of costs for senior judges and their supporting staff. Table 4.4 provides the historical levels of retired and senior judges.

Table 4.3  Senior Judges and Supporting Personnel

| | Additional FTE | Salaries and Benefits | Operations and Maintenance | Total ($000) |
|---|---|---|---|---|
| Judges Taking Senior Status (Staff Included) | 65 | 7,413 | 1,569 | 8,982 |

Under 28 U.S.C., an Article III judge has three options when leaving active service. Section 371(a) allows the judge to retire from office and receive an annuity for life equal to the salary in effect at the date of retirement. Section 372(a) allows the judge to retire on disability grounds, and provides that the judge receives the salary of the office for life after serving 10 years. Section 371(b) allows the judge to take senior status and to retain the office, but retire from regular active service. Senior

4.35

status allows the judge to continue rendering substantial judicial service for a number of years, notwithstanding his or her retirement.

Table 4.4 Article III Senior and Retired Judgeship FTEs

| Fiscal Year | Avg. Senior, Retired and Disability |
|---|---|
| 1997 | 469 |
| 1998 | 481 |
| 1999 | 485 |
| 2000 | 490 |
| 2001 | 509 |
| 2002 | 514 |
| 2003 | 507 |
| 2004 | 515 |
| 2005 | 517 |
| 2006 | 524 |
| 2007 | 535 |
| 2008 | 532 |
| 2009 | 558 |
| 2010 | 567 |
| 2011 | 593 |
| 2012 | 634 |
| 2013 | 655 |
| 2014 | 660 |
| Estimates | |
| 2015 | 663 |
| 2016 | 678 |

*Pursuant to 28 U.S.C. 371(a), 371(b), 372(a), and 373.

At the end of fiscal year 2014, 44 judges became eligible to retire; 49 more judges will become eligible in fiscal year 2015; and 53 in fiscal year 2016, for a total of 146 potential retirees.

Of the 53 judges eligible to retire in fiscal year 2016, the judiciary estimates that 43 judges will either take senior status or retire, resulting in a net increase of 30 FTE over the 673 FTE funded in fiscal year 2015. Of this increase, 15 of the 30 are expected to be attributed to judges taking senior status who will continue to render substantial judicial service and thereby will retain some, if not all, of their present staff. Based on current information, the judiciary estimates that the judicial councils of the circuits will authorize staffing to support senior judges using the following average staffing factors: 1.5 and 1.13 law clerks for appellate and district judges, respectively; 0.9 and 0.7 secretaries for appellate and district judges, respectively; and 0.6 court reporters for each district judge.

*3. Increase in average number of filled Article III judgeships*

**Requested Discretionary Increase: $3,751,000   FTE: 31**
**Mandatory Increase: $1,139,000                   FTE: 6**

The fiscal year 2015 proposed financial plan funds 783 FTE for the 845 authorized Article III appellate and district judgeships. Based on historical confirmation patterns, the judiciary projects 45 judges will be confirmed during fiscal year 2016, offset by the number of active judges who take senior status or retire. Thus, the judiciary anticipates the average number of filled Article III judgeships will increase by 6 FTE above the fiscal year 2015 funded levels.

This request will also fund 14 law clerks, 5 courtroom deputies, 7 secretaries and 5 court reporters associated with the 6 FTE increase in judges. This line item includes $1.1 million for the

4.36

salaries and benefits of judges, $2.4 million for the salaries and benefits of supporting staff, and $1.4 million for supporting costs such as lawbooks, furniture, travel, supplies, and equipment.

Table 4.5 Active Article III Judgeship Vacancies

| Fiscal Year | Authorized Article III Judgeships | Average Vacancies | Avg. Number of Active Judges |
|---|---|---|---|
| 1997 | 814 | 90 | 724 |
| 1998 | 813 | 83 | 730 |
| 1999 | 813 | 66 | 747 |
| 2000 | 822 | 73 | 749 |
| 2001 | 832 | 94 | 738 |
| 2002 | 832 | 101 | 731 |
| 2003 | 847 | 71 | 776 |
| 2004 | 846 | 41 | 805 |
| 2005 | 845 | 41 | 804 |
| 2006 | 845 | 50 | 795 |
| 2007 | 845 | 50 | 795 |
| 2008 | 845 | 47 | 798 |
| 2009 | 845 | 68 | 777 |
| 2010 | 845 | 102 | 743 |
| 2011 | 845 | 94 | 751 |
| 2012 | 845 | 79 | 766 |
| 2013 | 845 | 84 | 761 |
| 2014 | 845 | 75 | 770 |
| Estimates | | | |
| 2015 | 845 | 62 | 783 |
| 2016 | 845 | 56 | 789 |

*4. Increase in average number of filled bankruptcy judgeships*

**Requested Discretionary Increase: $1,250,000   FTE: 14**
**Mandatory Increase: $712,000                    FTE: 4**

The fiscal year 2015 financial plan funds 330 FTE for the 349 authorized bankruptcy judgeships. Based on historical patterns, the judiciary projects 10 judges will complete the accession process during fiscal year 2016, offset by the number of active judges who will retire. Thus, the judiciary anticipates the average number of filled Bankruptcy judgeships will increase by 4 FTE above the fiscal year 2015 funded levels. This request will also fund 4 law clerks, 5 courtroom deputies, 4 secretaries and 1 court reporters associated with the 4 FTE increase in judges. This line item includes $0.7 million for the salaries and benefits of judges, $0.7 million for the salaries and benefits of supporting staff, and $0.6 million for supporting costs such as lawbooks, furniture, travel, supplies, and equipment.

*5. Non-recurring costs associated with filled fiscal year 2015 judges (Article III Judges)*

**Requested Decrease: ($5,320,000)**

This line item non-recurs the one-time costs, such as set-up costs for telephones, lawbooks, furnishings, courtrooms, and digital recorders, associated with new judges in fiscal year 2015.

4.37

Table 4.6 Summary of Judicial Officers

| | Article III & Bankruptcy Judges (Mandatory Costs) | | | | | | Claims & Magistrate Judges | | | | | |
| | FY 2015 | | | FY 2016 | | | FY 2015 | | | FY 2016 | | |
| | Positions | FTE | ($000) | Positions | FTE | ($000) | Positions | FTE | ($000) | Positions | FTE | ($000) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Appellate Judgeships | 167 | 159 | 37,573 | 167 | 160 | 37,818 | | | | | | |
| District Judgeships | 677 | 628 | 140,530 | 677 | 638 | 143,616 | | | | | | |
| Senior/Retired | | 667 | 143,794 | | 678 | 147,677 | | | | | | |
| Bankruptcy Judgeships[1] | 349 | 339 | 77,464 | 349 | 343 | 79,104 | | | | | | |
| U.S. Court of Federal Claims | | | | | | | 16 | 12 | 3,022 | 16 | 14 | 3,380 |
| Magistrate Judgeships[2] | | | | | | | 570 | 547 | 124,879 | 573 | 553 | 127,586 |
| Total[3] | 1,193 | 1,793 | 399,361 | 1,193 | 1,818 | 408,215 | 586 | 559 | 127,901 | 589 | 567 | 130,966 |

1 FTE include recalled bankruptcy judges
2 FTE include part-time and recalled magistrate judges.
3 The request includes $3.8 million for the proposed fiscal year 2016 cost-of-living adjustment for judges.

Table 4.7 U.S. Court of Federal Claims Judges

| Fiscal Year | Authorized Court of Fed. Claims Judgeships | Average Vacancies | Avg. No. Active Judges |
|---|---|---|---|
| 1998 | 16 | 4 | 12 |
| 1999 | 16 | 1 | 15 |
| 2000 | 16 | 0 | 16 |
| 2001 | 16 | 1 | 15 |
| 2002 | 16 | 4 | 12 |
| 2003 | 16 | 2 | 14 |
| 2004 | 16 | 0 | 16 |
| 2005 | 16 | 1 | 15 |
| 2006 | 16 | 0 | 16 |
| 2007 | 16 | 0 | 16 |
| 2008 | 16 | 0 | 16 |
| 2009 | 16 | 0 | 16 |
| 2010 | 16 | 0 | 16 |
| 2011 | 16 | 0 | 16 |
| 2012 | 16 | 0 | 16 |
| 2013 | 16 | 0 | 16 |
| 2014 | 16 | 6 | 10 |
| Estimates | | | |
| 2015 | 16 | 5 | 11 |
| 2016 | 16 | 3 | 13 |

Table 4.8 Bankruptcy Judges (excludes recalled)

| Fiscal Year | Authorized Bankruptcy Judgeships | Avg. Vacancies | Avg. No Active Judges |
|---|---|---|---|
| 1998 | 326 | 13 | 313 |
| 1999 | 326 | 15 | 311 |
| 2000 | 325 | 18 | 307 |
| 2001 | 324 | 12 | 312 |
| 2002 | 324 | 18 | 306 |
| 2003 | 324 | 18 | 306 |
| 2004 | 324 | 4 | 320 |
| 2005 | 324 | 12 | 312 |
| 2006 | 352 | 16 | 336 |
| 2007 | 352 | 12 | 340 |
| 2008 | 352 | 12 | 340 |
| 2009 | 352 | 17 | 335 |
| 2010 | 352 | 19 | 333 |
| 2011 | 350 | 13 | 337 |
| 2012 | 350 | 11 | 339 |
| 2013 | 350 | 11 | 339 |
| 2014 | 350 | 11 | 339 |
| Estimates | | | |
| 2015 | 350 | 20 | 330 |
| 2016 | 350 | 16 | 334 |

Table 4.9 Magistrate Judges (Full-Time)

| Fiscal Year | Authorized Magistrate Judgeships | FTE |
|---|---|---|
| 2000 | 447 | 436 |
| 2001 | 456 | 452 |
| 2002 | 470 | 462 |
| 2003 | 477 | 464 |
| 2004 | 487 | 488 |
| 2005 | 495 | 490 |
| 2006 | 500 | 496 |
| 2007 | 503 | 492 |
| 2008 | 505 | 504 |
| 2009 | 507 | 500 |
| 2010 | 517 | 506 |
| 2011 | 523 | 511 |
| 2012 | 528 | 518 |
| 2013 | 531 | 515 |
| 2014 | 531 | 515 |
| Estimates | | |
| 2015 | 531 | 519 |
| 2016 | 534 | 522 |

4.38

## B. COURT PERSONNEL AND PROGRAMS

*6. Pay and benefit cost adjustments*

### a. Annualization of January 2015 pay adjustment

**Requested Increase: $7,984,000**

As a result of the ECI adjustment, federal pay rates increased by 1.0 percent in January 2015. The requested increase provides for the cost of three months (from October 2015 to December 2015) of the 2015 pay increase in fiscal year 2016.

### b. Proposed January 2016 pay adjustment

**Requested Increase: $24,038,000**

As of January 2015, the Office of Management and Budget is projecting that the federal pay rates will increase by an average of 1.0 percent on or after January 1, 2015. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2016 (from January 2016 to September 2016).

### c. Promotions and within-grade increases

**Requested Increase: $24,040,000**

The requested increase provides for promotions and within-grade increases for personnel. The salary plan for judicial support personnel provides for periodic within-grade increases for staff who receive at least a satisfactory performance rating.

### d. Benefit increases

**Requested Increase: $10,034,000**

An increase of $8.5 million is health benefit payments is required based on information from the Office of Personnel Management. Health benefit premium contributions are projected to increase by 3.2 percent in January 2015 and 4.0 percent in January 2016. The requested increase annualizes the 2015 premium increase, and includes a nine-month provision for the anticipated fiscal year 2016 premium increase and other changes.

An additional $1.6 million is also requested to provide for the increase in employer contributions to the Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax in fiscal year 2014. The salary cap for OASDI increased from $117,000 in January 2014, and to $118,500 in January 2015. The requested base adjustment represents the additional agency contribution.

### e. One more compensable day

**Requested Increase: $12,437,000**

There is one more compensable day in fiscal year 2016 than in fiscal year 2015. The request increases personnel compensation and benefits associated with one more compensable day.

4.39

#### f. FERS Increase

**Requested Discretionary Increase: $16,561,000**

Funds are requested for a 0.5 percent increase (from 13.2 percent to 13.7 percent) in the agency contribution rate to Federal Employee Retirement System (FERS) plans effective October 1, 2015. The FERS increase is in accordance with revised estimates of the cost of providing benefits by the Board of Actuaries of the Civil Service Retirement and Disability System.

#### 7. Funding necessary to maintain fiscal year 2015 service levels due to an anticipated decline in non-appropriated funds

**Requested Increase: $9,716,000**

In addition to appropriations from Congress, the judiciary relies on other funding sources to finance its requirements. These non-appropriated funds include current year fee collections, carryforward of fee balances from the prior year, no-year appropriation balances, and Judiciary Information Technology Fund balances. The use of these funds allows the judiciary to reduce its appropriations request on a dollar-for-dollar basis. The judiciary's fiscal year 2016 discretionary appropriation request of $5.0 billion reflects a projected availability of $327.2 million in these non-appropriated funds. Without these funds, the judiciary's request in appropriations would have totaled nearly $5.4 billion.

While the use of these funds benefits the judiciary (and reduces the need for appropriated funds), the amounts available fluctuate year-to-year due to changes in filing fee collections, changes in unobligated balances from prior years, etc. If total non-appropriated funds in the budget year exceed the total non-appropriated funds in the prior year, the budget year's appropriations request can be reduced further. However, if total non-appropriated funds in the budget year are lower than the total non-appropriated funds in the prior year, appropriations are needed to replace those lost non-appropriated funds in order to maintain a current services level of obligations.

The fiscal year 2015 obligation level includes new fee collections and prior-year carryforward from fiscal year 2014 totaling $336.9 million. The fiscal year 2016 request estimates that fee collections and prior-year carryforward will total $327.2 million, a net decrease of $9.7 million from the $336.9 million available to help finance court operations in fiscal year 2015. This is displayed in Table 4.10. The judiciary requests appropriated funds for fiscal year 2016 to replace these non-appropriated funds in order to maintain the same level of services as provided in fiscal year 2015. The judiciary's estimates for non-appropriated funds typically fluctuate during the fiscal year. Administrative Office staff will update the appropriations subcommittee staff on changes in non-appropriated funding levels during fiscal year 2015.

496

**Table 4.10 Non-Appropriated Sources of Funding**

| ($000) | FY 2015 Plan | FY 2016 Request | Difference |
|---|---|---|---|
| Fee Collections | 193,760 | 192,159 | (1,601) |
| Other Carryforward | 143,115 | 135,000 | (8,115) |
| Total, Non-Appropriated Sources of Funding, Excluding Slippage | 336,875 | 327,159 | (9,716) |

## C.  OTHER ADJUSTMENTS

### 8.  *Inflationary and Miscellaneous Adjustments*

**Requested Increase:  $11,073,000**

Consistent with guidance from the Office of Management and Budget, this request of $11.1 million is required to fund inflationary increases of 1.6 percent for operating expenses such as travel, utilities, printing, contractual services, supplies and materials, and furniture and equipment.

### 9.  *Vaccine Injury Compensation Trust Fund Adjustment*

**Requested Increase:  $622,000**

The National Childhood Vaccine Injury Act of 1986 (42 U.S.C. § 300aa) created a special fund to pay judgments awarded under the Act.  The Vaccine Act also created the Office of Special Masters

(OSM) within the United States Court of Federal Claims to hear vaccine injury cases and further stipulated that up to eight special masters may be appointed for this purpose.  The special masters' expenditures are reimbursed to the judiciary for Vaccine Injury cases from a special fund set up under the Vaccine Act.

For fiscal year 2016, the judiciary requests $6,045,000 from the Vaccine Injury Compensation Trust Fund, an increase of $622,000 above the amount expected to be received from the Trust Fund in fiscal year 2016.  The increase of $482,000 is due to pay and non-pay inflationary adjustments, and $140,000 is requested for additional-GSA rental costs associated with occupying additional space.

### 10.  *GSA space rental and related services*

**Requested Increase:  $8,873,000**

The judiciary requests a net increase of $8.9 million in fiscal year 2016 for General Services Administration (GSA) rent and related services.  This net increase is made up primarily of: (a) annualization of new space delivered in fiscal year 2015 (+$3.0 million), (b) adjustments to the GSA space rental base costs (-$3.1 million), (c) costs associated with new space to be delivered in fiscal year 2016 (+$10.5 million), and (e) other space-related adjustments, including tenant alterations (-$3.5 million).  Table 4.11 on page 4.42 summarizes the funding request for GSA space rental.

4.41

prepared by GSA, approved by the Office of Management and Budget, and provided to the judiciary.

**c.   New space to be delivered in fiscal year 2016**

**Requested Increase: $10,502,000**

A net increase of 21,416 rentable square feet is projected to be added to the judiciary's space inventory in fiscal year 2016 associated with the occupancy of the new courthouse prospectus project in Los Angeles, California and six non-prospectus projects for chambers and courtrooms for newly appointed Article III judges replacing judges taking senior status. Table 4.11 on page 4.42 identifies the new courthouse construction project that GSA plans to complete in fiscal year 2016.

**d.   Other space-related adjustments**

**Requested Increase: ($3,538,000)**

A net decrease of $3.5 million is for space-related adjustments, including: an increase in tenant alterations for courtrooms and chambers, a decrease in cyclical maintenance, a decrease in funding for formula allotments and a decrease in furniture in fiscal year 2016.

**a.   Annualization of new space delivered in fiscal year**

**Requested Increase:  $2,964,000**

In fiscal year 2015, the judiciary anticipates there will be a net reduction of 1,299 rentable square feet related to major repair and alteration and courthouse construction projects to be occupied by the courts of appeals, district courts, bankruptcy courts, and probation and pretrial services offices. The full year's rent cost of new space being delivered in fiscal year 2015 is not included in the fiscal year 2015 funding level because these projects will be completed at various times later in the fiscal year. The requested increase of $3.0 million is based on projected occupancy dates and rental rates provided by GSA.[3] Table 4.12 on page 4.43 identifies major repair and alteration and courthouse construction projects that GSA plans to complete in fiscal year 2015. The annualization amount requested is the difference between the partial-year cost in fiscal year 2015 for these projects, and the full year rent cost to be incurred in fiscal year 2016.

**a.   Adjustments to the GSA space rental base costs**

**Requested Decrease: ($1,055,000)**

This request represents a 0.1 percent decrease in the cost of GSA space rental and maintenance of facilities occupied by the courts for fiscal year 2016. This decrease is based on rent estimates

---

[3] The space the judiciary will be vacating is less expensive than the new space that will be occupied.

Table 4.11  Fiscal Year 2016 GSA Space Rental Increase

| Fiscal Year 2015 Base: | Square Feet of Space | Avg. Cost per Square Ft.* | Amount in $000 |
|---|---|---|---|
| Space occupied at start of year: | 40,368,168 | | $1,054,770 |
| Adjustments to Fiscal Year 2015 base | | | ($4,269) |
| Estimated savings due to reduction in footprint | | | ($7,000) |
| Estimated new space to be delivered in Fiscal Year 2015 | -1,299 | | $2,150 |
| Total, Fiscal Year 2015 | 40,336,869 | $25.89 | $1,045,651 |
| Fiscal Year 2015 Adjustments: | | | |
| Decrease for estimated reduction in inflation (-0.1 percent) | | | ($1,055) |
| Annualization of new space assigned in Fiscal Year 2015 | | | $2,964 |
| Subtotal, FY 2016 with Annualized Fiscal Year 2015 New Space | 40,336,869 | $26.96 | $1,047,560 |
| Space to be delivered in fiscal year 2016: | | | |
| Estimated new space to be delivered in Fiscal Year 2016 | 21,416 | | $10,502 |
| Total, Fiscal Year 2016 Budget Request | 40,358,285 | $26.21 | $1,058,062 |
| Fiscal Year 2016 Decrease | 21,416 | | $12,411 |

*The fiscal year average cost per square foot includes the annualization of rent costs for space added in the succeeding fiscal year.

4.43

Table 4.12  Space to be delivered in fiscal year 2015 - Prospectus projects, displayed in order of GSA estimated delivery dates

| City | State | Net Rentable Feet to be Delivered | Estimated Occupancy | Fiscal Year 2014 Rent Cost New Space | Fiscal Year 2015 Rent Cost | Total Annual Rent Cost |
|---|---|---|---|---|---|---|
| Eureka | California | 11,586 | 1/15/2015 (Occupied) | $473,606 | $43,055 | $516,661 |
| New York | New York | -12,885 | 4/01/2015 | $1,676,624 | $1,676,624 | $3,353,248 |
| Total | | -1,299 | | $2,150,230 | $1,719,679 | $3,869,909 |

Table 4.13  Space to be delivered in fiscal year 2016 - Prospectus projects, displayed in order of GSA estimated delivery dates

| City | State | Square Feet Delivered or Released | Estimated Occupancy | Fiscal Year 2016 Rent Cost | Fiscal Year 2017 Rent Cost | Total Annual Rent Cost |
|---|---|---|---|---|---|---|
| Los Angeles | California | 21,416 | 6/01/16 | $10,501,879 | $21,003,757 | $31,505,636 |
| Net Change | | 21,416 | | $10,501,879 | $21,003,757 | $31,505,636 |

4.44

4.45

*II.   Information technology adjustments to maintain ongoing operations*

**Requested Increase: $13,762,000**

An increase of $13.8 million is requested for the Information Technology (IT) program to support current operations for the judiciary's upgrades and enhancements to the integrated financial management, human resources, and rent and property management systems. In addition, this increase provides funding for operations and maintenance activities; court automation support; and infrastructure support for national IT applications.

The judiciary continues to implement programs and systems to support the information technology needs of the courts. The requested funds will allow the judiciary to operate and maintain its information technology infrastructure, products, projects, and services which are essential to the judicial process and the operations of the courts.

A more detailed description of the Judiciary's IT program can be found in section 12 of this submission, "Judiciary Information Technology Fund."

# D. PROGRAM INCREASES

## 12. New fiscal year 2016 full-time magistrate judges and staff

**Requested Increase: $1,884,000**          **FTE: 12**

The judiciary requests an additional $1.8 million for 3 additional magistrate judges (3 FTE), 9 support staff (9 FTE), and associated operating costs. Because of the critical need for these positions, all six judgeships are "accelerated;" thus, a full-year's funding is assumed for these magistrate judgeships in fiscal year 2016.

Table 4.14 Cost of Additional Magistrate Judges

|  | Positions | FTE | Total Request ($000) |
|---|---|---|---|
| New Full-Time Magistrate Judges | 3 | 3 | $702 |
| Supporting Personnel | 9 | 9 | $860 |
| Operating Expenses | | | $322 |
| **Total** | **12** | **12** | **$1,884** |

The Judicial Conference authorizes new magistrate judge positions based upon an individualized showing of need by the requesting district courts. The Conference takes into account all relevant factors in its deliberations on magistrate judge position requests, including the number and locations of authorized district judges. In evaluating requests for full-time magistrate judge positions, the Conference generally considers: (1) the comparative need of the district judges for the assistance of magistrate judges and the overall workload of the district court;

(2) the commitment of the court to the effective utilization of magistrate judges; and (3) the availability of sufficient work of the type that the district judges wish to assign to magistrate judges to justify the authorization of additional full-time positions. Consideration also is given to the geographical areas and population to be served, convenience to the public and bar, the rights of criminal defendants to prompt court proceedings, the number and extent of federally administered lands in the district, transportation and communication facilities, and other pertinent local conditions. As an alternative to authorizing additional full-time magistrate judge positions, the feasibility of using recalled magistrate judges is explored with individual district courts in response to their requests for additional magistrate judge positions.

Table 4.15 Full-time Magistrate Judges

| Fiscal Year | Number of Authorized Magistrate Judges | FTE |
|---|---|---|
| 2009 | 507 | 500 |
| 2010 | 517 | 506 |
| 2011 | 523 | 514 |
| 2012 | 528 | 520 |
| 2013 | 531 | 515 |
| 2014 | 531 | 514 |
| 2015 estimated | 531 | 519 |
| 2016 estimated | 534 | 522 |

Based on the criteria described above, the Judicial Conference has authorized additional magistrate judge positions in the following locations[1]:

- San Francisco or San Jose, California (accelerated)
- Seattle or Tacoma, Washington (accelerated)
- Tampa, Florida (accelerated)

**San Francisco or San Jose, California (4.0 FTE)**

The court's request for an additional full-time magistrate judge position meets the Judicial Conference criteria. The court's per district judgeship statistics exceed the national averages in all but two categories. Moreover, the nature of the court's civil caseload is complex and time-consuming. The district's utilization of magistrate judges is exemplary, with the incumbents playing a key role in managing the court's heavy civil docket by presiding in the largest number of civil consent cases in the nation.

At the same time, increased civil filings in the district from 2009 to 2012, particularly complex civil and multidistrict litigations, and three district judgeship vacancies, have added to workload pressures on the court's judges. The workloads of the court's full-time magistrate judges have increased significantly. From 2009 to 2013, the number of civil consent cases handled by the district's magistrate judges surged from 881 to 1,496, ranking them first in the nation. In addition, the number of pretrial matters handled by them in their non-consent civil cases rose 63 percent during this time (from 1,846 in 2009 to 3,015 in 2013).

[1]Positions approved by the Judicial Conference in September 2014 (accelerated positions - require 12 months of funding in fiscal year 2016)

Finally, in spite of a decline in felony filings from 2009 to 2013, the number of felony pretrial matters handled by the district's magistrate judges more than doubled from 579 to 1,683, and the number of felony preliminary proceedings handled by them also increased from 4,853 to 5,432.

The district's two full-time magistrate judges at San Jose have very heavy workloads. Without a new magistrate judge position to assist them, they will be unable to manage the increases in their workloads that are expected from the return of all San Jose-venued cases to the San Jose judges and the increase in felony filings in San Jose. In addition, that location's civil cases are more complex than elsewhere, notwithstanding the court's efforts to distribute intellectual property matters district-wide. While the court reports that the district's other magistrate judges have assisted the San Jose magistrate judges on occasion with criminal duty, the distance between San Jose and San Francisco and Oakland, and the ample workloads of the magistrate judges at these locations, make it impractical to utilize them to work on San Jose cases on a long-term basis.

Currently, the court's ratio of eleven full-time magistrate judges to fourteen district judges is at the national average (1 : 1.3). An additional position puts the court's ratio at 1 : 1.2, slightly higher than the national average, which is reasonable given the district's significant weighted caseload, heavy workloads of all the district's judges, and excellent use of its magistrate judges.

**Seattle or Tacoma, Washington (4.0 FTE)**

The court currently has five full-time magistrate judge positions to support seven district judgeships, a ratio of 1 : 1.4. Authorization of an additional full-time magistrate judge

4.47

503

position at Seattle or Tacoma gives the court a magistrate judge to district judgeship ratio of 1 : 1.2, which is slightly above the national average of 1 : 1.3.

The court established a clear need for additional judicial assistance. The court has a heavy per judgeship caseload and ranked significantly above the national averages in most categories in 2013. The court ranked seventeenth in weighted caseload in 2013.

The court seeks an additional magistrate judge position, primarily to assist in managing the court's heavy and growing social security caseload. Social security filings rose from 298 in 2010 to 807 in 2013, an increase of 171 percent. Between 2009 and 2013, the average yearly caseload per magistrate judge increased 350 percent, from 58 cases per judge to 162 cases per judge. Filings in 2014 increased 61 percent over those in 2013. The court projects that social security filings may exceed 1,000 by 2015, and will remain high in following years.

Since the last magistrate judge survey in December 2011, the court has demonstrated its continuing commitment to improving the utilization of its magistrate judges by (1) ending the practice of referring federal habeas corpus petitions arising under 28 U.S.C. § 2255 to the magistrate judges in Seattle; and (2) issuing a September 2012 general order, whereby the full-time magistrate judges are assigned all social security appeals with the magistrate judges as the presumed presiding judge without the parties knowing which district judge will be assigned the case if they do not consent to disposition by the magistrate judge. As a result of the 2012 general order, consents to magistrate judges disposing of social security appeals have increased significantly and the magistrate judges are now

disposing of approximately one-third of the court's social security caseload on consent. The court continues to explore ways to increase disposition of social security appeals on consent.

Approximately two-thirds of the court's social security appeals are disposed of by magistrate judges preparing reports and recommendations. Court officials note, however, that in calendar year 2013, of the 373 reports and recommendations ruled upon by district judges, 95 were stipulations to remand and 164 were cases where the parties made no objections to the magistrate judge's findings of fact or conclusions of law. Thus, 69 percent of reports and recommendations, required little or no work being performed by a district judge.

**Tampa, Florida (4.0 FTE)**

The circumstances in the Middle District of Florida, particularly the growth in the district's social security caseload in recent years, the court's shortage of district judgeships, and its extensive utilization of existing magistrate judge resources, all weigh in favor of authorizing an additional magistrate judge position. The court's per judgeship caseload is heavy, ranking eighth in the nation in weighted filings in 2013, seventh in civil cases filed and thirteenth in total cases filed. The court also ranks ninth in the nation in total terminations, and twentieth in total pending cases/defendants per judgeship. The court has been designated a district with a judicial emergency, and had a vacant district judgeship from June 2013 to February 2014.

Although the magistrate judges are effectively managing their caseloads, it has been difficult given the increase in the nature and volume of their duties. As of March 15, 2014, the district's

magistrate judges had 5,543 civil cases, including 485 social security appeals, pending for pretrial management. They had another 456 civil cases pending on consent.

From 2009 to 2013, civil filings increased 23 percent, from 2,708 to 3,333, at Tampa where more than a third of all civil cases are filed in the district. The division also has the district's busiest criminal caseload. Any new magistrate judge position would immediately receive an equal share of the civil cases at its location for case management and share equally in the rotation of criminal duty for handling preliminary proceedings in felony cases. This would allow the current resident magistrate judges to devote more time to their work at a less pressured pace. It would also assist the district and senior judges with their significant workloads by allowing them to refer more matters to the magistrate judges.

The court currently has 16 magistrate judges to support 15 district judgeships, a ratio of 1 : 0.9. Authorization of one additional full-time magistrate judge position (after rounding) keeps the magistrate judge to district judge ratio of 1 : 0.9. Although this ratio is above the national average, it is reasonable given the significant increase in the district's caseload in the last five years.

*13. Enterprise Hosting and Cloud Computing Initiative*

**Requested Increase: $19,000,000**

An increase of $19.0 million is requested to continue the enhancement and expansion of the judiciary's enterprise systems hosting and cloud computing services. This investment will provide robust, reliable, and secure centralized system hosting

services, which are used by courts to host mission critical primary applications and/or a secondary site for fail-over in the event of an emergency

These funds will allow for increased centralized computing and data storage capacity; expanded capability to provide hosting for court virtual desktops; and additional cloud computing capabilities for use at the local court level. These services provide critical support to those courts that lack the technical resources to best implement new virtualization technologies, host their primary IT systems, and design and implement an adequate site in the event of an emergency. Additionally, this initiative will provide the benefits of shared IT security resources and more resource-efficient hosting solutions for the judiciary.

*14.   Upgrade Email and Messaging System*

**Requested Increase: $7,000,000**

An increase of $7.0 million is requested to initiate the replacement of the judiciary's 14-year old email and messaging system which is limited to delivering outdated and inefficient email and calendar functions. This initial investment will fund the development of a unified judiciary-wide email and messaging system that incorporates necessary advanced features and functionality. The replacement system will provide more flexibility in adopting mobile computing, document-sharing, and collaboration tools for use throughout the judiciary. The email replacement solution will address critical issues such as the migration of legacy email data, system security risks, search and

retrieval across archived and active email, external certification requirements.

## 15.   Evidence Based Practices

**Requested Increase: $15,000,000**

An increase of $15.0 million is requested to expand evidence based supervision practices to all districts and lower offenders' risk in committing crime.

With regards to the increasing criminogenic risk profile of the federal offender population, offenders with the highest Risk Prediction Index and criminal history scorers have more than doubled over the past 10 years and there have been substantial increases in the number of sex-offenders, career offenders and offenders subject to warrantless searches, drug treatment and mental health treatment. Relatedly, pretrial release rates have steadily decreased for over a decade, the presentence stage of proceedings have become protracted, and post-conviction revocation rates have risen for violent new offenses. While the judiciary continues to roll-out evidence-based programs to reduce recidivism, those programs have not been implemented in all districts. Additionally, those districts that are in the midst of implementation, still have officers who require training in the use of these practices. This additional funding would help expand and implement evidence-based practices across the system.

The request includes staff training and implementation tools for expanding evidence-based supervision practices. This funding will be used to address all of the risk factors associated with future crime. This includes programming to address the role that

anti-social peers, substance abuse, education, and employment play in an offender's likelihood of committing a new crime. This programming will be based on cognitive-based and motivational enhancement techniques, with the purpose of teaching offenders the necessary skills to lead a crime-free lifestyle. These skills will be taught by both the officer and vendors.

This funding would also allow for implementation, where appropriate, of controlling strategies, such as a location monitoring, to stabilize offenders while officers work to provide and support the programming. It is unequivocal that offenders who improve in the areas of social networks, substance abuse and employment are less likely to be rearrest will on supervision. This funding will enhance the effort of federal probation to assist offenders' necessary skills to succeed in these areas.

4.50

# FINANCING THE FISCAL YEAR 2016 REQUEST

## 16. *Estimated Fiscal Year 2016 Fee Collections*

**Estimated funds available: $192,159,000**

Congress has authorized the judiciary to collect fees for civil and bankruptcy filings as well as fees for a variety of case services, including registry account administration and miscellaneous court case administration costs. A portion of the fees collected by the courts are deposited into a special fund maintained by the Department of Treasury and may be used to reimburse any of the four appropriations within the *Courts of Appeals, District Courts, and Other Judicial Services* heading, as well as the Administrative Office of the United States Courts, for expenses incurred. These fees are available without fiscal year limitation. The judiciary estimates that $192.2 million in revenue from these sources will be available in fiscal year 2016 to finance requirements in the Salaries and Expenses account, a decrease of $1.6 million from the $193.8 million estimated to be available in fiscal year 2015. The judiciary will continue to monitor bankruptcy filings throughout fiscal year 2015 and will advise the appropriations subcommittee staffs of changes in the forecasts.

Table 4.16 lists offsetting receipts by type and displays the amounts collected in fiscal year 2014. Estimates for fiscal year 2015 and fiscal year 2016 are also provided. The judiciary will advise appropriations subcommittee staffs of changes to these estimates.

Table 4.16 Offsetting Receipts from Collections

| Dollars in Thousands<br>Type of Collection and Source | FY 2014 Actual Collections ($000s) | FY 2015 Estimated Collections ($000) | FY 2016 Estimated Collections ($000) |
|---|---|---|---|
| ***Fees*** | | | |
| Registry Administration Fees | 451 | 1,000 | 1,000 |
| Bankruptcy Filing and Misc. Fees 1 | 155,680 | 145,564 | 142,412 |
| Civil Filing and Misc. Fees 2 | 62,333 | 46,519 | 47,986 |
| Central Violations Bureau Fees | 4,394 | 5,475 | 5,475 |
| Immigration Adjudication and Naturalization Fees | 4,629 | 5,400 | 5,400 |
| **Subtotal, Fees** | 227,487 | 203,958 | 202,273 |
| Fee allocation to Admin. Office3 | -11,374 | -10,198 | -10,114 |
| TOTAL TO SALARIES & EXPENSES | 216,113 | 193,760 | 192,159 |

[1] Includes statutory bankruptcy filing fees and bankruptcy court miscellaneous fees.
[2] Includes statutory civil filing fees and appellate court and district court miscellaneous fees.
[3] Based on Judicial Conference policy, up to 3 percent of total fees collected may be used to support Administrative Office requirements.

4.51

*17. Anticipated Unencumbered Carryforward from Fiscal Year 2015 into Fiscal Year 2016*

**Estimated funds available:  $135,000,000**

The judiciary estimates that $135.0 million will be available through anticipated savings to carry forward into fiscal year 2016 and offset the fiscal year 2016 appropriation request for the Salaries and Expenses account.  Savings generally are available due to fewer than projected Article III judicial confirmations, resulting in salary and benefit savings for associated staff; slippages in GSA space delivery schedules that reduce space rental and furniture expenses; and unobligated funds returned from the nearly 400 court units throughout the judiciary.

The judiciary will advise appropriations subcommittee staffs of changes to this estimate.

508

# APPENDIX 1 - COURT SUPPORT STAFFING

This appendix discusses court support staffing for the courts of appeals, district and bankruptcy courts, and for probation and pretrial services offices. It also includes an explanation of the staffing formulas the judiciary uses to determine staffing requirements in the courts, a program statement explaining the purpose and function of these programs, and the importance of receiving adequate funding in fiscal year 2016 for these programs.

## Judiciary Staffing Formulas

The judiciary has employed work measurement for nearly twenty years to determine its staffing requirements, to enable it to justify funding requests for staffing to Congress, and to provide a reliable tool to allocate staffing resources equitably across court types and individual court units. Though the methodology has changed over the years, work measurement's primary purpose remains to bring an empirically-based and practical approach to staffing allocation.

The formulas provide a valuable methodology to determine the level of funding necessary to keep pace with increasing or decreasing workload. As workload fluctuates from year to year, the application of the formulas allows for a corresponding increase or decrease in staffing allocations. This applies both for national formulation purposes by court program type, and at the individual court level for allocation purposes. The formula requirements are based on actual workload, not projected workload.

The staffing formulas are updated periodically to incorporate efficiencies derived from information technology initiatives, best practices, and other process improvements including

shared administrative services. This work measurement methodology uses a combination of core modeling and other measurement techniques that better reflect the courts' full staffing requirements. The staffing formulas are based on court-reported data and validated through simultaneous measurement by the Administrative Office.

In September 2014, the Judicial Conference approved new staffing formulas for the bankruptcy administrator offices and the circuit and appellate court offices. The new formulas incorporated best practices, shared services, benchmarks, and performance standards. These new formulas reduced the staffing requirements for bankruptcy administrator offices by 11 percent and reduced the staffing requirements for the circuit and appellate court offices by 7 percent. Previously, new staffing formulas reduced staffing requirements by 24 percent in bankruptcy clerks' offices and 12 percent in district clerks offices. In total, these revised formulas have reduced overall staffing requirements by $237 million on an annual basis.

The judiciary has completed the data collection phases for staffing formula development studies in federal defender organizations and federal probation and pretrial services offices. The judiciary anticipates completion of these initiatives in time to incorporate the outcomes into its fiscal year 2016 financial plan and fiscal year 2017 budget request.

As a cost-containment policy, the judiciary uses alternative staffing formulas to determine its court support staffing requirements. These alternative formulas no longer utilize the average time to complete a task, but instead give more credit to courts which perform those tasks faster than the average. This has the effect of limiting the number of additional staff contained in the judiciary's budget request.

Appendix 1.2

used by judges to calculate prison sentences. The retroactive application of the guidelines change could result in the re-sentencing and early release of an estimated 46,400 inmates over the next several years. Although no prisoner can be released prior to November 1, 2015, additional probation officers are needed to prepare new sentencing reports for judges to consider at re-sentencing proceedings over the next year, to conduct pre-release planning and coordination with the Bureau of Prisons during fiscal year 2015, and to supervise offenders in the community once they are released.

**Recovery from Sequestration**

In fiscal year 2013, sequestration reduced judiciary funding by nearly $350 million. The impact on the judiciary was compounded by the fact that the judiciary has no control over its workload. The courts reacted to the cases which it received from the Executive Branch, and overall, that workload did not decline. Flat budgets for several years, followed by sequestration placed unprecedented pressure on the federal judiciary's administration of justice and it reduced court support staffing by over 3,000, which is equivalent to 1997 staffing levels.

Fiscal year 2014 funding essentially restored judiciary appropriations to near pre-sequestration funding levels. The funding allowed the judiciary to begin to recover and reverse most of the emergency measures that were put in place because of sequestration. It enabled the judiciary to backfill some key vacancies in the clerks' of court, probation and pretrial services offices, and provided sufficient funding to meet operational needs. Funding was fully restored for drug and mental health testing and treatment services for defendants awaiting trial and offenders released from prison, and related electronic and GPS location monitoring services for those individuals.

Fiscal year 2015 funding will allow the judiciary to continue its recovery process. Funding is available to hire additional staff as needed to deal with workload and caseload. This funding level will also provide the resources to address additional workload anticipated in the probation offices associated with a change in the U. S. Sentencing Guidelines that took effect November 1, 2014. The change applies – going forward and retroactively – a two-level reduction in the drug quantity table

Appendix 1.3

**Fiscal Year 2016 Court Support Staffing Requirements**

In fiscal year 2016, the FTE request totals 19,414 FTE, an increase of 0.1 percent over the fiscal year 2015 estimated level of 19,400 FTE. The net increase of 14 FTE are for court reporters associated with changes in active and senior judges.

The fiscal year 2016 staffing build is summarized in Table A-1.1 below.

Table A-1.1 Fiscal Year 2016 Staffing Build

|  | Court Support Staffing (FTEs) |
|---|---|
| FY 2015 Funded FTE | 19,400 |
| Adjustments for court reporters associated with changes in actives and senior judges | 14 |
| FY 2016 Funded FTE | 19,414 |

Information supporting each of the courts programs (probation and pretrial services, district courts, appellate courts, and bankruptcy courts) is presented in the following sections.

512

## Program Function Statement

Funding for the federal probation and pretrial services system is used for the salaries and benefits of staff; drug testing; treatment of mentally ill and substance-abusing defendants and offenders; electronic monitoring; travel costs related to the supervision of defendants and offenders in the community; coordination with law enforcement and treatment providers; officer training; information technology; and normal business expenses.

### Workload Trends and Resource Requirements

Probation and pretrial services workload is dictated by the prosecutions brought by U.S. Attorneys offices and the number of inmates released to supervision by the Federal Bureau of Prisons (BOP).

In the 12-month period ending June 30, 2014, pretrial services officers completed 98,122 bail reports on recently charged defendants and material witnesses stemming from new prosecutions. While the rate of future prosecutions is difficult to project, it is clear that prosecutions will remain focused on the most persistent and egregious offenders pursuant to Department of Justice initiatives.

During the 12-month period ending June 30, 2014, the BOP released 49,696 inmates to the supervision of probation officers in the community. Combined with releasees from previous years and probation cases, the daily supervision population reached 132,597 during the 12-month period ending June 30, 2014. As of January 2014, the BOP's population exceeds

Appendix 1.5

## Probation and Pretrial Services

Table A-1.2 Probation and Pretrial Services Workload Indicators[1]

| | 2013 Actual (% Change from Previous Yr.) | 2014 Actual (% Change from Previous Yr.) | 2015 Projected (% Change from Previous Yr.)[3] |
|---|---|---|---|
| Convicted Offenders Supervised in the Community[2] | 186,378 (-0.8%) | 186,300 (-0.0%) | 188,200 (+1.0%) |
| Charged Defendants Supervised in the Community | 53,022 (-2.7%) | 50,261 (-5.2%) | 48,400 (-3.7%) |
| Investigative Reports Completed for Bail Determinations | 102,457 (-3.2%) | 98,122 (-4.2%) | 90,400 (-7.9%) |
| Investigative Reports Completed for Sentencing Determinations | 70,897 (-6.5%) | 69,453 (-2.0%) | 67,500 (-2.8%) |

[1] For fiscal years 2013 and 2014, the number of convicted offenders and charged defendants supervised in the community reflects persons initially received for supervision, under supervision for the entire period, or under supervision at the start of the period and closed. Persons with cases that fall in more than one of these three categories are counted only once.

[2] The fiscal year 2016 budget request is based on 2015 projected caseload (for the 12-month period ending June 30).

[3] June 2013 and 2014 actuals for probation supervision cases are from the National PACTS Reporting (NPR) database, which is administered by the Administrative Office of the U.S. Courts.

213,461 inmates with nearly all of these inmates eventually to be released to terms of supervision.

*Investigations*

Probation and pretrial services officers provide valuable service to the courts by investigating defendants and offenders, verifying information about these individuals, and making sound and timely recommendations to judicial officers. Pretrial services officers investigate defendants and recommend to the judge whether there are conditions that would reasonably assure the defendant's appearance in court and protect the community while the defendants' cases are pending disposition, as set forth under 18 U.S.C. § 3142.

Probation officers investigate persons convicted of federal crimes and recommend to the judge a sentence that addresses the factors set out in 18 U.S.C. § 3553. Probation officers' presentence reports are shared with the U.S. Attorney and defense counsel to provide notice of all sentencing issues and provide for an efficient and fair sentencing hearing. In 2014, probation officers produced 69,453 sentencing related investigative reports.

*Postconviction Supervision*

During the 12-month period ending June 30, 2014, 63,149 offenders began terms of community-based supervision. Nearly 76 percent of those offenders were received after having completed a custodial sentence with the Bureau of Prisons. In comparison, in 1985 (before the Sentencing Reform Act), only 48 percent of offenders supervised by federal probation had served a custodial sentence; the majority were sentenced to probation. These figures reflect the continued trend of increasingly challenging offenders released

to the community. The challenge is more apparent when one considers the offenses for which these persons are under supervision; 48 percent of offenders were convicted of drug offenses and 23 percent were convicted of either a violent, sex or weapon offense.

*Managing Increasing Risk*

Many offenders present significant risk to the community, risk that must be mitigated through proactive, community-based supervision. One strong predictor of risk is the nature and extent of the offender's prior criminal record, and the severity of the criminal history of persons coming under federal supervision, which has been increasing. In 2002, offenders with a criminal history category of II[1] or greater, as determined by the U.S. Sentencing Guidelines, constituted 30 percent of the supervision population. By 2014, offenders in those criminal history categories constituted 47 percent of the population.

Historically, the actuarial risk prediction instrument that probation officers used for assessing risk of recidivism was the Risk Prediction Index (RPI). Developed by the Federal Judicial Center and approved by the Judicial Conference in 1997, the RPI enables officers to score offenders objectively on a scale of 0 to 9, where 0 indicates the greatest likelihood of re-offending. The RPI calculates risk using seven static factors, including whether a firearm was used during the initial offense

---

[1] To be in a Criminal History Category of II or greater, the person must have multiple prior convictions or a single conviction that resulted in an imprisonment term of sixty days or greater, or committed the federal offense while serving an earlier term of probation, parole or recent release from prison. See U.S. Sentencing Guidelines Section 4A1.1

514

and the offender's level of education. Since 2003, national average RPI scores have steadily increased for all offenders (from 3.04 to 3.72), as well as for subgroups, such as those convicted of drug and violent offenses. This increase is driven by offenders with more extensive and violent criminal histories, greater substance abuse problems, educational deficits, criminal thinking patterns, lack of social networks, and challenges finding employment.

Probation officers must intensify their supervision efforts in the growing number of cases with increased risk. Chief among those efforts is the officers making themselves a presence in the offender's community life, interacting with the offender in the home, neighborhood, and place of employment. Officers also conduct drug tests, develop sources of information in the community, and conduct surveillance and searches when appropriate. If behavior potentially leading to criminal behavior is exposed, officers take both punitive and corrective action. For example, if an offender is abusing alcohol, the probation officer can petition the court for an intermediate sanction, such as community service, as well as enroll the offender in a treatment program and conduct additional random tests for alcohol use. The probation officer's goal is to ensure compliance with the conditions of supervision and take action to preempt a decline in the offender's conduct or life situation.

*Serious Violations and Revocation*
Serious violations of supervision, where the offender commits a violent new offense (homicide, rape, assault, robbery, a felon in possession of a firearm, kidnaping, or racketeering) are relatively rare in the federal system. The proactive approach taken by officers normally allows them to deal with minor violations swiftly before they escalate to more serious criminal

activity. Of the 54,885 cases closed from post-conviction supervision during the 12 months ending June 30, 2014, only one percent involved revocations for new violent crimes (assaults, homicides, kidnaping, rapes and robberies). By comparison, 27 percent of all cases nationally were closed by revocation, many due to technical violations such as failure to participate in drug treatment or absconding, in which the court and probation officer intervened before criminal recidivism could occur.

*Assisting With Reentry*
Many offenders on supervision lack adequate life skills to transition back into community smoothly. Officers help offenders to either re-establish, or secure for the first time, appropriate housing, employment, and legitimate community relationships. They provide life skills counseling and leverage programs offered by other federal agencies and local social service organizations. Success on supervision requires offenders to overcome not only the original factors that contributed to their criminal behavior, but institutionalization, alienation from family and friends, and other consequences of a lengthy prison term. Throughout the country, officers are securing resources for offenders, cultivating employment prospects, and developing collaborative relationships with a wide variety of organizations. All of these efforts aim to assist in the transition of offenders back into the community.

*Substance Abuse and Mental Health and other Services*
Substance abuse and mental health conditions among defendants and offenders continue to influence workload in probation and pretrial services offices. From fiscal year 2012 to fiscal year 2014, the number of defendants and offenders under supervision receiving paid contract substance abuse

Appendix 1.7

treatment decreased 33 percent, from 35,411 to 23,404. The steep decline began during sequestration in fiscal year 2013, which not only greatly reduced the funds available for treatment, but resulted in the loss of approximately 20 percent of treatment providers willing and able to contract with the judiciary. At the same time, the probation and pretrial system adopted a more exacting actuarial tool to better identify offenders most in need of substance treatment relative to their criminogenic risk. Additionally, more offenders are finding employment and obtaining insurance to offset substance abuse treatment costs paid by the judiciary.

There has also been a 14 percent decrease in the number of defendants and offenders receiving mental health treatment, going from 17,673 to 15,240 cases from fiscal year 2013 to fiscal year 2014. Similar to the decline in substance abuse treatment cases, mental health treatment cases have declined as a result of less funds available during sequestration, and more offenders finding employment and obtaining their own insurance.

Drug and mental health problems usually are detected during pretrial or presentence investigations when officers administer drug tests, interview the defendant and third parties, contact the defendant's family and associates, and review medical, employment and school records. Once released to post-conviction supervision, the risk assessment instrument will indicate if the presence of substance abuse or dependence is likely a contributor to the offenders' risk of recidivism. Likewise, the risk assessment instrument will identify more prominent, though less "tangible" factors that are driving the offenders' risk to re-offend, such as criminal thinking, lack of pro-social networks, and criminal peers. These factors require

a more sophisticated approach by the officer to address effectively. Such an approach addresses the root causes of criminal behavior, and requires officers to think differently about the supervision interventions they provide through referrals and in-house means. This creates challenging work for probation and pretrial services officers. They have to investigate and assess treatment resources available in the community, contract for those services where necessary, formulate treatment plans, and develop comprehensive supervision strategies for relapse prevention and detection.

_Sex Offenders_

As of September 30, 2014, there were 8,122 federal offenders under supervision in the community who were either convicted of a sex offense, required to register as a sex offender under state or local law, or ordered by a court to undergo sex offender treatment. Another 1,281 defendants were under pretrial supervision for sex offender related risks, including pending charges or a history of sexual offenses in their background. Although this is a relatively low percentage of the total number of offenders under supervision in the community, sex offenders require specialized supervision techniques and enhanced monitoring.

Sex offenders differ from other offenders because of the nature and impact of their crimes on victims. Probation and pretrial services officers supervising sex offenders are required to understand the complex issues related to sexual re-offending, risk assessment, and risk management. To reduce recidivism and protect the community, officers supervising such offenders must use specialized supervision techniques, such as polygraph examinations, psychosexual evaluations, intense sex offense-specific counseling, surveillance, internet/location monitoring.

516

and enhanced community collaboration. Where necessary, officers must contract for services to address the above needs. In response to the rising number of pretrial defendants charged with sex offenses, specialized treatment services were developed to meet the needs of this population.

When monitoring offenders who are under supervision for a federal sex offense, or who have a history of sex offenses, officers must work closely with local and state law enforcement agencies and sex offender registries as the states continue to implement the Sex Offender Registration and Notification Act (SORNA). Although SORNA (Title I of the Adam Walsh Child Protection and Safety Act of 2006, Public Law 109-248, July 27, 2006) is the responsibility of the states to implement, officers supervising offenders required to register must ensure that the offenders comply with such requirements where they live, work, and attend school.

To maintain proficiency with evolving sex offender management techniques, a Sex Offender Management Working Group was created in 2008 to be re-constituted as needed. The group consists of sixteen members including officer, specialists and supervisors with specialties in sex offender management, sex offender treatment, electronic monitoring, and cyber-crime technologies. The group's work resulted in policy changes and the creation of a monograph specific to the supervision of sex offenders. A Cyber Crime Working Group was created to address the complex policy and technical issues associated with court-order conditions to monitor compliance with restrictions on computer and electronic device usage.

## Scientific and Technological Changes

Probation and pretrial services officers must keep up with technological innovations such as the various location monitoring technologies that can track defendants and offenders both in their homes and in the community. These technologies include voice recognition to confirm offenders' presence in their homes at random times, radio frequency to provide continuous monitoring of offenders in their homes, and Global Position Systems (GPS) to provide continuous tracking of offenders' movements in the community in both passive and real time.

Technological advances in internet monitoring and computer forensic analysis have added a new dimension to how officers hold defendants and offenders accountable. These technologies have changed officers' responsibilities in that they have required officers to become aware of the software and services available to monitor defendants and offenders' internet use and know how to use them effectively. The technology tools available include software programs and services that allow an officer to view a defendant or offender's internet use in real time, thus allowing that person to have legal internet access with minimal intrusion from the officer.

## Research-Based Practices

The judiciary is committed to implementing a results-based management and decision-making framework for its community supervision program. The judiciary strives for its supervision program to be an evidence-based system, meaning that employees at every level use the best available evidence to make decisions. As such, the goal is to collect, analyze, and use data from probation officers' electronic case files and a variety of other sources to inform decision making and drive

Appendix I.9

performance improvements aimed at reducing recidivism and fostering long-term positive changes in individuals supervised. On an ongoing basis, the judiciary requires the capability to test through empirical research underlying assumptions about the relationship between supervision practices and outcomes.

Running concurrent to these research efforts, the judiciary is implementing practices that have demonstrated success in reducing recidivism with local, state, and international offenders. Many of these practices require new skills not yet uniformly held by federal probation and pretrial services officers. One example is the continued expansion of core correctional practices.

*Continued Expansion of Core Correctional Practices*
Core correctional practices are specific skill sets that when used by officers in their interactions with clients are effective in promoting lasting behavioral changes. These skills serve to model and reinforce pro-social behaviors in order to encourage long-term behavior change in clients. Underlying core correctional practices is the cognitive behavioral model that focuses on changing an individual's thoughts in order to change his or her behavior. Staff Training Aimed at Re-arrest Reduction (STARR) is a training program for core correctional practices for federal probation and pretrial services officers. Since it was implemented in 2012, 1,018 officers have been trained in a total of 64 districts. An additional 650 officers will be trained in fiscal year 2015. Once trained, officers require a significant amount of support to reinforce and continually practice core correctional skills with their defendants and offenders.

*Risk Assessment Development Continues*
Risk assessment in both pretrial services and post-conviction supervision evolved substantially over the past several years.

The Post-Conviction Risk Assessment (PCRA) is used by officers to inform the supervision intensity commensurate with the offender's risk level and to identify specific factors that, if addressed, will decrease the likelihood of recidivism for that individual offender. Because the PCRA is administered periodically, it informs the officer if his or her supervision strategies are actually having the desired impact. The PCRA is near full national implementation. Ninety-six percent of all cases on supervision have at least one completed risk assessment, and over 405,000 PCRAs have been completed to date.

Likewise, approximately 87 percent of pretrial services cases activated in fiscal year 2014 had Pretrial Risk Assessment (PTRAs) completed. The PTRA is an actuarial instrument that predicts the likelihood of failure on pretrial release for defendants. The PTRA score, coupled with the officer's professional judgment, help to inform the officer's recommendation as to whether a defendant is suitable for pretrial release.

Plans for further statistical validation of the PCRA and PTRA remain a top priority of the judiciary. In addition, the judiciary is actively developing an instrument that will assess the likelihood of committing a violent offense for persons on post-conviction supervision. The goal is for the instrument to identify both stable and acute factors that place an offender at risk for commission of a violent offense.

Appendix 1.10

The judiciary also partnered with the U.S. Marshals Service to develop a risk prediction instrument that predicts the likelihood that a sex offender, particularly one convicted only of a non-hands-on offense such as trafficking in child pornography, will commit a future hands-on offense.

## Cost Containment Efforts

To contain costs and maximize community protection, the judiciary has developed a work measurement formula, actuarial risk assessment tools and supporting policies that stratify cases based on their relative risk and needs. As a result, resources of the probation and pretrial services system are focused on cases presenting the potential for harm, while resources dedicated to the lowest risk cases are reduced.

To reduce costs further, in cases where the person under supervision meets certain criteria and no longer poses an unreasonable risk of harm to the community, probation officers are required to recommend termination of supervision before expiration of the term. The AO conducted a study on persons who were granted early termination of supervision under 18 U.S.C. §§ 3564 and 3583(e)(1) to investigate whether early termination poses a risk to the community in terms of increased recidivism. The study concluded that persons granted early termination were re-arrested within three years at approximately half the rate of similarly situated offenders who did not receive early termination. This study suggests that early termination is a promising cost-containment strategy that allows federal probation offices to focus increasingly scarce resources on offenders who pose the greatest risk.

## _Cost of Supervision Versus Incarceration_

The cost of detaining a defendant in jail pending trial in fiscal year 2013 was $74.61 per day, or over ten times the $7.17 a day it cost to release the defendant to the supervision of a pretrial services officer. Similarly, the post-conviction imprisonment of an offender in a federal prison facility cost $80.25 per day in 2013, or almost nine times the $8.66 daily cost for a probation officer to supervise an offender in the community. Fiscal year 2014 data is not yet available.

The offenders whose supervision terms ended during the 12-month period ending June 30, 2014, paid as much as $867 million in financial sanctions (fines, restitution and criminal assessments) and performed 620,978 hours of community service.

## _Improved Substance Abuse Testing Methodologies_

The detection of illegal substances is a critical part of supervision and one of the few objective tools officers have at their disposal. The judiciary conducts most of its testing by urinalysis, the most proven and researched method to detect illegal substances. Testing is performed by three methods: 1) national contracts with laboratories to conduct drug testing outside judiciary facilities, 2) a national contract for districts to obtain drug testing and operate on-site drug testing laboratories, and 3) the decentralized procurement of non-instrumented drug testing devices, which also allow on-site testing. Several districts operating on-site drug testing laboratories have also established relationships with other districts to provide testing services. The advantages of conducting on-site drug testing are twofold: cost-effectiveness and operational efficiency. On-site drug testing provides results quickly, thereby enabling officers to take action immediately if the results are positive. Research shows that

Appendix 1.11

immediate action after a positive urinalysis test deters further illicit drug use and reduces the likelihood of criminal behavior. Further, on-site testing encourages an admission by the offender of drug use and spares the government the costly expense of confirmation testing.

## Information Technology

The judiciary continues to use information technology to reduce costs and improve the effectiveness and efficiency of probation and pretrial services officers. The projects currently in use by officers and that are being enhanced include the Probation & Pretrial Services Automated Case Tracking System, Electronic Reporting System, Access to Law Enforcement System, Electronic Probation and Pretrial Services System, Safety Information and Reporting System, Decision Support System, and Mobile Technology. The Probation & Pretrial Services Automated Case Tracking System (PACTS) is the case management system used by officers in investigation and supervision of offenders and defendants. The Offender Payment Enhanced Report Access system is integrated with PACTS for officers to monitor fines and restitution payments made by persons under supervision.

The Electronic Reporting System allows officers to collect routine, administrative data via kiosks, web sites and advanced phone systems thereby reducing paperwork and allowing officers to focus on high priority issues.

The Access to Law Enforcement System provides officers with easy access to criminal records and allows officers to run

criminal records remotely, making them less dependent on being in the office.

The Electronic Probation and Pretrial Services System allows officers to store documents in electronic format, instead of paper, which saves on space, improves security, and enhances accessibility to the documents when needed. It also makes it more efficient to share the documents with other agencies, such as the Bureau of Prisons and U.S. Sentencing Commission.

The Safety and Information Reporting System makes it easier for officers to provide information on hazardous incidents and search and seizures.

The Decision Support System takes operational data and combines it to allow for research and better utilization of resources.

The Mobile Technology program provides officers with iPad, iPhone, and Blackberry devices that allow remote access to our information systems and thereby allow officers to spend more time in the community interacting with persons under supervision. The investment in mobile technology is expected to continue reducing space requirements in probation and pretrial services offices.

Appendix 1.12

Appendix 1.13

Table A-1.3   Offenders Under Supervision by Type of Supervision - Projections Through 2015

| | Year | Probation | Supervised Release | Parole | BOP Custody | Total |
|---|---|---|---|---|---|---|
| ACTUAL[1] | 2005 | 26,917 | 82,488 | 3,187 | 416 | 113,008 |
| | 2006 | 25,326 | 85,116 | 2,979 | 276 | 113,697 |
| | 2007 | 24,163 | 88,874 | 2,696 | 197 | 115,930 |
| | 2008 | 23,028 | 94,349 | 2,519 | 155 | 120,051 |
| | 2009 | 22,926 | 98,560 | 2,220 | 133 | 123,839 |
| | 2010 | 22,707 | 101,701 | 2,089 | 145 | 126,642 |
| | 2011 | 22,604 | 104,671 | 1,870 | 174 | 129,319 |
| | 2012 | 22,419 | 108,528 | 1,664 | 174 | 132,785 |
| | 2013 | 21,114 | 109,516 | 1,473 | 259 | 132,362 |
| | 2014 | 19,696 | 111,585 | 1,340 | 237 | 132,858 |
| ESTIMATED[2] | 2015 | 19,000 | 113,800 | 1,300 | 200 | 134,300 |

[1]Actual data for years 2005 through 2014 is based on the 12-month period ending June 30.

[2]Estimates for the 12-month period ending June 30, 2015.

521

Appendix I.14

Table A-1.4   The Changing Supervision Population - Offenders on Probation vs. Offenders Released from Prison

| | Year | Offenders on Probation | | Offenders Released from Prison[1] | | Total |
|---|---|---|---|---|---|---|
| ACTUAL[2] | 2005 | 26,917 | 24% | 86,091 | 76% | 113,008 |
| | 2006 | 25,326 | 22% | 88,371 | 78% | 113,697 |
| | 2007 | 24,163 | 21% | 91,767 | 79% | 115,930 |
| | 2008 | 23,028 | 19% | 97,023 | 81% | 120,051 |
| | 2009 | 22,926 | 19% | 100,913 | 81% | 123,839 |
| | 2010 | 22,707 | 18% | 103,935 | 82% | 126,642 |
| | 2011 | 22,604 | 17% | 106,715 | 83% | 129,319 |
| | 2012 | 22,419 | 17% | 110,366 | 83% | 132,785 |
| | 2013 | 21,114 | 16% | 111,248 | 84% | 132,362 |
| | 2014 | 19,696 | 15% | 113,162 | 85% | 132,858 |
| ESTIMATED[3] | 2015 | 19,000 | 14% | 115,300 | 86% | 134,300 |

[1]Includes terms of supervised release, parole, mandatory release, and military parole.

[2]Actual data for years 2004 through 2014 is based on workload for the 12-month period ending June 30.

[3]Estimates for the 12-month period ending June 30, 2015.

## District Courts

Table A-1.5 Major District Court Workload Indices[1]

| Filings | 2013 Actual | 2014 Actual | 2015 Estimate |
|---|---|---|---|
| Criminal Case Filings | 69,642 (-5.2%) | 64,027 (-8.1%) | 59,200 (-7.5%) |
| Criminal Defendants Filed | 91,812 (-5.3%) | 84,017 (-8.5%) | 75,800 (-9.8%) |
| Civil Case Filings | 283,087 (-1.1%) | 298,713 (5.5%) | 289,000 (-3.3%) |

[1] For the 12-month periods ending June 30.

### Program Function Statement

Funding for the district court program is used for salaries and benefits of all active United States district judges, magistrate judges and all such judges who have retired from office or from regular active service. In addition, this funding is used for the salaries and expenses of the district court support personnel, such as the administrative and legal aides required to assist the judges in conducting hearings, trials and other judicial functions. It also funds all operation and maintenance costs, such as communications, printing, contractual services, supplies, equipment, law books, travel expenses incurred by judges and supporting personnel in attending sessions of court or transacting other official business, and relocation costs.

### District Clerks

The clerk's office is responsible for attorney admissions, case intake, docketing of pleadings and motions, service of process, events scheduling, receiving and accounting for fees and fines collected, case tracking, provision of court reporting and court interpreting services, alternative dispute resolution programs, statistical reporting, training of attorneys on the case management system (CM/ECF) and jury management, all of which are essential elements in processing criminal cases and resolving civil cases. Public and private sector entities rely on effective case processing by the clerks' offices.

The proper functioning of the offices of district court clerks enhances the efficiency of the offices of the U.S. Attorney, U.S. Marshals Service, Federal Public Defender, and Probation and Pretrial Services. Other participants, including litigants, attorneys, witnesses, court reporters, court interpreters, expert witnesses, the media, and jurors are impacted by the effective operations of the clerks' offices. To enable these court participants to work together effectively, the clerk's office manages courtroom space, automation services, audio and video systems, and other administrative functions, as well as the support required in the courtroom for the proper functioning of the proceedings. The judicial system as a whole benefits from the professional management services provided by the clerks' office.

### Court Interpreters

The district courts use both staff and contract court interpreters. Staff court interpreters serve in district courts where there is a substantial need for interpreting services on a daily basis. This is particularly true in the Southwest border courts. Locating, scheduling, and contracting with court interpreters is not practical in locations that have daily needs for interpreting services.

Appendix 1.15

The number of pro se law clerks is determined by a formula driven by prisoner petition filings. For the 12-month period ending June 30, 2014, there were 62,402 petitions filed, an increase of 7,033 cases nationally from the previous year. The judiciary projects a 5.0 percent increase to 59,300 in 2015 prisoner petition levels.

## Death Penalty Law Clerks

Death penalty law clerks serve both as substantive legal resources to judges in death penalty habeas corpus matters, and as case management monitors, since capital cases are generally lengthy and involve numerous issues. For the 12-month period ending June 30, 2014, there were 581 pending death penalty cases that were unstayed. This is a decrease of 37 cases nationally from the previous year.

## Workload Trends and Resource Requirements

The number of criminal defendants, the mix of civil cases, juror activity, and the number of authorized judges require the courts to make staffing adjustments as dictated by the staffing formulas, which are based primarily on civil and criminal cases and the number of judges supported.

### Staffing in the District Courts

While the district courts have been focused on improving all operational areas, a critical need remains to have full staffing resources available to support the judges and case processing requirements in the courts. With the dependence on the electronic case filing system, many courts continue to retool their offices and change from primarily a clerical focus to an automated and technical focus which requires the hiring and training of a professional workforce with more technical skills. Thus, the need for the clerk's office to maintain robust

Appendix 1.16

Spanish remains the most used language for interpreters in the courts, accounting for 96.4 percent of all reported interpreting events in fiscal year 2014. For the 12-month period ending September 30, 2014, there were approximately 287,579 court events that required the services of a staff or contract court interpreter. Of those events, approximately 277,343 were in Spanish. During fiscal year 2014, the judiciary expended approximately $8.6 million on contract court interpreting services. The judiciary expects this high level of interpreter usage to continue, especially due to the continued high volume along the Southwest border and the prosecution of terrorist-related cases.

At the same time, the judiciary has continued to expand the Telephone Interpreting Program (TIP), which allows interpreting for short proceedings to be provided by telephone from courts with specialized or abundant interpreting resources. There are currently 11 provider courts.

Although TIP use decreased by approximately 300 events to 3,447 events from fiscal year 2013 to fiscal year 2014, current usage still represents an overall savings of approximately $1.8 million during fiscal year 2014, which is comparable to savings realized in fiscal year 2013. In fiscal year 2014, 52 districts in 101 locations received TIP services in 46 different languages.

## Pro Se Law Clerks

The objective of the pro se law clerk program is to assist the courts in processing all prisoner litigation. The pro se law clerks review complaints for procedural adequacy to permit judges to proceed with the disposition of the cases. Without adequate staffing, district judges and magistrate judges will have to perform this work at the expense of other case work.

information technology skills will continue to grow. This requirement stems from the need to meet the information demands of an increasingly sophisticated bench, bar and public and the need to automate and integrate many of the clerks' offices business functions in the areas of accounting, budgeting, case management, records management, and juror management. Sound information management systems help to ensure the courts' obligations to the public are met while streamlining business functions to keep costs under control. Providing a sufficient number of clerks' office personnel is critical to the entire justice system. The output and efficiency of resources (judges, prosecutors, defenders, court reporters, court interpreters, jurors, and witnesses) is dependent upon the efficiency of the clerks' offices. Reductions to the district court staffing impact all of the convergent participants in the judicial process.

## Criminal Case Filings

For the 12-month period ending June 30, 2014, criminal cases filed totaled 64,027, an 8.1 percent decrease from the 2013 level. In 2015, the judiciary projects criminal filings will decrease by 7.5 percent to 59,200. See Table A-1.6 on page 1.20. The number of criminal defendants filed in 2014 totaled 84,017 a decrease of 8.5 percent from the 2013 level. In 2015, the judiciary projects the number of criminal defendants will decrease by 9.8 percent to 75,800. Criminal case filings are influenced by the number of United States Attorneys and the emphasis on prosecution of illegal immigration, drug crimes, and violations of firearm laws. These projections may not reflect fully the workload associated with additional resources recently provided to law enforcement agencies for increased immigration enforcement.

## Southwest Border Workload

The five courts on the Southwest border (Arizona, California-Southern, New Mexico, Texas-Southern, and Texas-Western) account for 36 percent of all felony defendants processed in district courts nationwide. The time-sensitive nature of criminal cases, due to statutory deadlines in the Speedy Trial Act, multiple hearings for defendants (i.e., initial appearances, arraignments, and pleas in the early stages alone), and the need for interpreter services, increases the courts' need for adequate staffing resources.

While criminal cases take precedence over civil cases, the courts need adequate staffing to keep up with the civil workload, otherwise civil case processing and disposition are delayed. This delay negatively impacts litigants because it prolongs the uncertainty of a pending legal action.

## Civil Case Filings

For the 12-month period ending June 30, 2014, civil case filings increased from 283,087 to 298,713 cases, a 5.5 percent increase from 2013. See Table A-1.6 on page 1.20. The judiciary projects 2015 civil case filings to decrease 3.3 percent to 289,000. These projections do not take into account all future, large-volume multi-district or class action litigation, as this type of litigation is often difficult to predict.

## Cost Containment Efforts

The judiciary's Case Management/Electronic Case Files (CM/ECF) system, in use by all district courts, allows courts to manage documents and court dockets electronically and provide 24-hour case file access to judges, court staff, and the public. CM/ECF also allows attorneys and the courts to file documents over the internet. Just over 45 million cases are on the

525

CM/ECF system and more than 700,000 attorneys and others have electronically filed documents. The CM/ECF system accepts documents in Portable Document Format (PDF). Electronic filing saves time, postage, paper, copying, and courier costs for attorneys and for the judiciary.

CM/ECF saves the litigants' resources and also saves docketing and paper handling costs for the district clerks. Court staff, however, have had to enhance their quality control efforts to ensure that the information entered by attorneys is accurate and complete. Failure to do so in a timely manner results in parties in a case taking action based on erroneous information. Further, the courts are moving forward with efforts to develop the next generation of CM/ECF. Current plans call for the first release of the software to be delivered to the district courts in 2015. The new system will help to contain the costs of case processing well into the future.

## Juror Management System

With the deployment of eJuror, the Jury Management System (JMS) web page, prospective jurors now have the option of completing qualification questionnaires and obtaining jury service information online 24 hours a day. Courts save time as there are fewer forms processed manually, there is less data entry and there is an increased level of data reliability. Many functions that required the intervention of court staff, such as deferrals and certificates of attendance, have been automated and are available online for the public, thereby reducing demands on staff time. Courts save on postage costs and eliminate unnecessary delays by communicating with jurors via email. There are now 82 courts live on eJuror of the 89 that have installed it, leaving 7 of those yet to go live. Based on current overall eJuror utilization rates averaging around 25 percent, it is projected that the eJuror function will save the

judiciary an estimated $1.4 million per year in postage and staff time when all 94 districts are employing eJuror. However, a few district courts have been experimenting with process changes to encourage wider use of eJuror which have resulted in significantly higher eJuror usage rates of 60 to 80 percent. As additional courts adopt similar process changes leading to eJuror usage rates in the 60 to 80 percent range, the estimated savings per year will increase substantially.

## District Methods Analysis Program

The District Methods Analysis Program (DMAP) identifies better practices in court operations and shares them with other courts. Court working groups have focused on various civil and criminal topics, as well as CJA voucher processing and the management of multi-district litigation cases. Most recently, the program looked at ways to improve the processing of criminal fines and restitution and developed best practices for quality control. Currently, a group is addressing ways to improve the management of pro se cases. The best practices and other resources that are the result of the DMAP are posted on the judiciary's intranet site for courts to reference.

## Telephone Interpreting Program

The use of the judiciary Telephone Interpreting Program (TIP) has ensured the availability of federally certified or otherwise qualified interpreters for defendants in short court proceedings and has saved over $15.3 million for the judiciary in travel and other costs since the Judicial Conference approved the program in 2001. TIP allows an interpreter at a remote location to deliver simultaneous interpretation of court proceedings for defendants and consecutive interpreting by means of a two-line telephone system. TIP interpreters can be used for multiple assignments on the same day, and have significantly reduced time and travel costs. Telephone interpreters are used for a

Appendix I.18

wide range of hearings, especially initial criminal matters that must occur quickly.

*Electronic Prisoner Filings*

A number of courts are now working with state prison facilities to accept prisoner petition filings electronically. This effort allows prisoners, through equipment located in the prison facilities, to submit petitions to the court electronically. The submission of the petitions electronically provides savings in both court and correctional center staff time, and it allows court staff to focus on more critical work. In addition to staff savings, there are other savings in the expenditures for paper, envelopes, copier supplies and postage. District courts that have partnered with state correctional facilities are now also supporting other district courts interested in using this technology.

*Shared Administrative Services*

Through sharing the services of staff and other resources to perform specific ongoing administrative services, courts have reduced costs and administrative personnel. In September 2012, the Judicial Conference strongly encouraged the individual court units within each district (i.e., district, probation and pretrial services, and bankruptcy) to work together to adopt a shared administrative services (SAS) plan. In fiscal year 2013, all 94 districts prepared a SAS plan. The plans reflect that many districts had either already begun to implement SAS or had committed to increasing SAS as they lost administrative staff, whether through natural attrition or cost cutting. To further support courts' continued efforts to achieve cost savings through SAS, the Administrative Office of the U.S. Courts has provided courts with models for sharing, examples of SAS plans and memoranda of understanding, and a website for facilitating SAS relationships among the courts.

Appendix 1.19

Table A-1.6 Civil and Criminal Filings

| Year | Civil Filings | Percent Increase/Decrease | Criminal Filings | Percent Increase/Decrease |
|---|---|---|---|---|
| **ACTUAL[1]** | | | | |
| 2006 | 244,343 | -13.6% | 67,872 | -2.9% |
| 2007 | 272,067 | 11.3% | 67,674 | -0.3% |
| 2008 | 256,354 | -5.8% | 70,024 | 3.5% |
| 2009 | 257,204 | 0.3% | 75,324 | 7.6% |
| 2010 | 285,215 | 10.9% | 78,213 | 3.8% |
| 2011 | 289,630 | 1.6% | 78,764 | 0.7% |
| 2012 | 286,232 | -1.2% | 73,455 | -6.7% |
| 2013 | 283,087 | -1.1% | 69,642 | -5.2% |
| 2014 | 298,713 | 5.5% | 64,027 | -8.1% |
| **ESTIMATED[2]** 2015 | 289,000 | -3.3% | 59,200 | -7.5% |

Table A-1.7 Components of Civil Caseload

| Year | Social Security | Diversity | Prisoner Filings | All Other | Total |
|---|---|---|---|---|---|
| **ACTUAL[1]** | | | | | |
| 2006 | 14,052 | 65,800 | 55,775 | 108,716 | 244,343 |
| 2007 | 12,964 | 86,506 | 53,222 | 119,375 | 272,067 |
| 2008 | 13,329 | 76,284 | 55,374 | 111,367 | 256,354 |
| 2009 | 13,222 | 81,188 | 52,237 | 110,557 | 257,204 |
| 2010 | 13,725 | 104,703 | 51,748 | 115,039 | 285,215 |
| 2011 | 15,697 | 101,508 | 53,692 | 118,733 | 289,630 |
| 2012 | 17,043 | 94,568 | 53,606 | 121,015 | 286,232 |
| 2013 | 19,121 | 89,359 | 55,369 | 119,238 | 283,087 |
| 2014 | 19,530 | 102,568 | 62,402 | 114,213 | 298,713 |
| **ESTIMATED[2]** 2015 | 21,100 | 94,900 | 54,900 | 118,100 | 289,000 |

[1] Actual data for years 2005 through 2014 are based on the 12-month period ending June 30.

[2] Filing estimates for the July 1, 2014 through June 30, 2015 statistical year will be updated in the spring of 2015.

Appendix 1.20

## Courts of Appeals and Circuit Units

Table A-1.8 Appellate Court Workload[1]

| | 2013 Actual | 2014 Actual | 2015 Estimate |
|---|---|---|---|
| Appeals Filings | 56,360 (-2.3%) | 55,260 (-2.0%) | 54,400 (-1.6%) |

[1] For the 12-month periods ending June 30.

### Program Function Statement

Funding for the courts of appeals and circuit units includes the salaries and benefits of all active United States circuit judges, and all such judges who have retired from office or from regular active service. In addition, it provides for the salaries and expenses of the courts of appeals supporting personnel such as the administrative and legal aides required to assist the judges in the hearing and decision of appeals. Funding also includes all expenses of operation and maintenance such as communications, printing, contractual services, supplies, equipment, law books, travel costs incurred by judges and supporting personnel in attending sessions of court or transacting other official business, and relocation costs.

### Circuit Executives

The principal responsibility of the circuit executive's office is to act as the secretariat for the circuit's judicial council and its committees, and in some circuits, for the court of appeals and its committees. In this capacity, the circuit executives' offices participate in policy oversight and assist in many areas of

circuit-wide importance. These include planning for the effective and efficient use of space and facilities, information technology, financial management and budget decentralization, and planning and organizing the circuit's judicial conference. The circuit executives' offices also provide vital administrative and logistical support to the courts of appeals, including information technology, procurement, budget management, and personnel administration.

### Appellate Clerks

The clerks' offices are the public business offices for the appellate courts and provide specific centralized management in case-related and logistical areas. Employees in clerks' offices perform essential functions necessary for the operation of the courts, such as:

- recording and maintaining all case filings, including public records and information needs;

- providing guidance to lawyers, litigants, and the public: distributing case materials to judges for decision-making; and

- providing vital logistical support.

The case-related workload of the clerks' offices can fluctuate in proportion to changes in case filings.

Case decisions in appellate courts are made either by panels of three judges or, in some instances, by an en banc court, where all the judges review the case. Appellate judges reside in cities throughout the geographic area of a circuit. Appellate clerks' offices are situated at the headquarters of the circuit, providing a central public business office for the judges, lawyers, litigants, and the public. Clerks' offices receive case materials

Appendix 1.21

for filing, maintain the central files, and arrange for judges to convene in panels as necessary for case decisions. Inquiries about cases, procedures, etc., are directed to the clerks' offices. Materials are assembled, as appropriate, and dispatched to judges. Lawyers are advised of the schedule for decision-making. Decisions are made after oral argument hearings or submissions on briefs that are scheduled by the clerks' offices. Decisions are filed in the clerks' offices which are then responsible for distribution of the decisions to the parties and the public, including posting on court websites.

*Staff Attorneys*

Staff attorneys generally perform legal research on all pro se cases, that is, cases where a party serves as his or her own counsel, most of which are filed by prisoners. In addition, they work on substantive and procedural motions, direct criminal appeals, death penalty cases, and cases that do not require oral argument. Some staff attorneys also assist the court on fully counseled cases, providing legal research assistance and presenting recommendations to the judges. Staff attorneys also write memoranda in cases addressing jurisdictional issues that result in disposition of the appeal. By drafting legal research memoranda that analyze the case issues and recommend appropriate disposition, staff attorneys assist judges in disposing of the appellate cases in a timely and efficient manner.

Statistics indicate that pro se cases represent 50 percent of national appellate filings. Having the staff attorneys preliminarily review both pro se cases and substantive motions, as well as examine cases for jurisdictional defects, materially assists the judges and contributes to timely dispositions.

*Preargument/Conference Attorneys*

Appellate preargument/conference attorneys facilitate the disposition of cases on appeal through negotiated settlements, without appellate judicial involvement. The attorneys are skilled, seasoned lawyers who perform sensitive, confidential settlement work. The attorneys often are able to streamline or dispose of issues in cases not easily settled. Distinct from staff attorneys, preargument/conference attorneys promote the voluntary settlement or withdrawal of appeals without court action. The program results in a conservation of judicial resources and improves appellate case management.

*Librarians*

The national court library program is a network of 12 circuit headquarters libraries and 95 satellite libraries. The library program provides legal reference and research services to over 2,000 judges and more than 10,000 judiciary researchers nationwide. Using existing resources and adapting new technologies, the library program provides all circuits with high quality research assistance and instruction to judges, law clerks, and other court personnel. In addition, the library staff manages the acquisition and development of chambers law books collections.

Information is expanding exponentially, in an array of formats, including books, online databases, and Internet resources. Librarians are necessary to manage this wealth of information and media, and to disseminate the information to the courts in a meaningful manner. Collection development expertise, research skills, and knowledge of resource-sharing techniques are tools that librarians bring to this challenge.

In addition to providing traditional legal research support, librarians conduct research in multiple disciplines such as

Appendix 1.22

science, medicine, the humanities and social sciences, or general research. Judges, law clerks, and other court staff need the information in these areas to assist their decision-making. Librarians also have taken the lead in tapping the resources available on the Internet, making them available to the judiciary by designing web pages that gather Internet resources and push content directly to the researchers.

*Bankruptcy Appellate Panel Clerks*

The Bankruptcy Reform Act of 1994 requires that each circuit establish a Bankruptcy Appellate Panel (BAP) unless the Judicial Council of the circuit finds that either there are insufficient judicial resources in the circuit, or the establishment of a BAP would result in undue delay or increased cost to parties in bankruptcy cases. There are currently five BAPs nationally. A BAP is composed of bankruptcy judges within a circuit who are appointed by the circuit's Judicial Council to decide, with the consent of all parties, appeals from bankruptcy court decisions. Even where a BAP exists, bankruptcy appeals may be heard by the district court, if a party so chooses.

A BAP requires a minimum of four bankruptcy judges, each from a different district, because the legislation prohibits a bankruptcy judge from hearing an appeal that originated in the district for which he or she was appointed. The BAP clerk's office has support functions and responsibilities similar to the appellate clerk's office.

## Workload Trends and Resource Requirements

For the 12-month period ending June 30, 2014, the number of appeals filed totaled 55,260, decreasing 2.0 percent from the previous year and decreasing 10.2 percent since 2004. The judiciary projects the appellate cases filed will decrease 1.6 percent to 54,400 for the 12-month period ending June 30, 2015. While total cases have decreased in the past ten years, there have been significant increases from 2002 to 2014 in appeals from immigration cases appealed from the Department of Justice's Board of Immigration Appeals (BIA).

The initial increase of immigration appeals from the BIA in 2002 was attributed to its directive to clear its backlog of cases and implement new review guidelines. While the number of BIA completions, as decided by the Department of Justice, declined to 2002 levels (28,895 in 2014 versus 32,129 in 2002), the number of BIA appeals in the federal courts is almost four times what it was in 2002 (6,653 in 2014 versus 1,763 in 2002). These cases continue to demand extensive resources and are a far greater share of total caseload in recent years. The increase was most significant in the Second and Ninth Circuits; the Second Circuit increased from 201 BIA cases in 2002 to 1,047 in 2014, and the Ninth Circuit increased from 967 BIA cases in 2002 to 3,687 in 2014. Terminations of these appeals have not kept pace with filings, resulting in an increase in the time it takes to process all other appeals. The number of total pending appeals increased from 39,242 in 2002 to 41,588 in 2014 (an increase of 6 percent).

## Cost Containment Efforts

The appellate court and circuit units continue to modify existing and adopt new processes, develop and share best

531

Appendix 1.24

practices, and use the flexibility provided under budget decentralization to invest in information technology and other solutions that save resources as well as improve quality and performance.   This work has been and will continue to be important.

The courts continue to use workforce restructuring options to re-shape, de-layer or re-tool the workforce.

The appellate CM/ECF system replaced the 20-year old legacy system and required a careful review of the case management processes and staff functions.   The appellate courts are taking full advantage of the opportunities provided by CM/ECF's electronic case filing features.   The first appellate court to implement electronic filing by attorneys started in June 2007. By the end of fiscal year 2010, all courts of appeals accepted electronic filings by attorneys and pro se litigants. Resource-intensive efforts to conduct quality control checks on attorney filings and to prepare and transmit briefs and lower court record materials to court of appeals judges still must evolve in light of the availability of electronic case files.

Working with the courts, the Administrative Office is developing a Next Generation case management system to replace the current one.  Two pilot appellate courts began using the new system in 2014, and the remaining courts will be implemented in 2015.  This system will help to contain the costs of case processing well into the future.

Other cost containment efforts, such as reducing the costs associated with printing and distributing paper briefs to judges and reducing or eliminating the printing and distributing of appellate slip opinions, continue to occur.

## Bankruptcy Courts

Table A-1.9 Major Bankruptcy Court Workload Indices[1]

| | 2013 Actual | 2014 Actual | 2015 Estimate |
|---|---|---|---|
| Bankruptcy Filings | 1,137,978 (-13.2%) | 1,000,082 (-12.1%) | 899,500 (-10.1%) |

[1] For the 12-month periods ending June 30.

## Program Function Statement

Funding for the federal bankruptcy program is used for salaries and expenses of all active United States bankruptcy judges and supporting personnel as well as for expenses of operations and maintenance. These expenses include communication, printing, contractual services, supplies, equipment, and travel costs incurred by judges and supporting personnel in attending sessions of court or transacting other official business.

## Bankruptcy Clerks

The bankruptcy court clerks' offices serve a critical support role in processing bankruptcy matters. Their work includes: receiving and scanning petitions, schedules, pleadings and other documents; training attorneys, trustees and creditors to use the Case Management/Electronic Case Files (CM/ECF) system; reviewing electronically filed documents for accuracy and compliance with national and local rules, and taking corrective action as necessary; issuing summonses and subpoenas; processing motions; responding to inquiries from the public and other government agencies for case information;

maintaining case dockets; assigning cases to judges; creating notices to be sent to attorneys, debtors, and creditors; receipting and registering claims; scheduling hearings on motions, confirmation and other matters; issuing judgments; recording court proceedings; archiving closed case files; coordinating with the United States trustees and panel trustees; reporting statistics; scheduling and regulating the movement of cases; establishing motion and trial calendars; scheduling courtroom usage, providing court reporting/recording services and courtroom clerical staff; and maintaining the electronic filing system to enable cases to progress through the judicial system. Staffing resources are allocated based on a work measurement formula that converts specific tasks into work units. The most recent update of the bankruptcy clerks' offices formula demonstrated in a clear and convincing way how efficient the bankruptcy system is, and allows the judiciary to request the absolute minimum staffing level for bankruptcy clerks.

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) added responsibilities for the bankruptcy courts, especially those related to means testing, credit counseling and financial management courses, new chapter 13 and dismissal requirements, additional noticing, and applications for fee waivers. A work measurement study conducted after 2005 shows that BAPCPA added between 20 and 30 percent to the case processing time for bankruptcy clerks' offices.

The clerk of court serves as the chief administrative and financial officer for the court, and is responsible to the court, the United States government, and litigants for the proper collection, maintenance, and accounting for funds that come

into the clerk's office. The clerk's office is authorized to collect all fees, costs, and other monies for the bankruptcy court and is accountable for their payment to the United States Treasury. The clerk's staff also manages the planning and execution of the court's budget and financial processes.

## Workload Trends

A number of factors contribute to the workload in bankruptcy courts. Three of the major factors are the number of cases filed, the complexity of the cases, and the increase in pro se filings. The state of the economy and the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), are pivotal drivers of these factors.

### Case Filings

Bankruptcy filings grew through the mid-1990s surpassing one million per year beginning in 1996, and remained above that mark through fiscal year 2006. Filings reached all-time monthly highs in September and the first half of October 2005, when more than 800,000 petitions were filed in anticipation of the October 15, 2005, BAPCPA effective date. Nationally, filings dropped by half in the year following BAPCPA implementation. However that sharp decrease did not last long, with filings increasing rapidly and reaching pre-BAPCPA levels again as economic conditions worsened during a recession. By fiscal year 2009 petitions, were again over 1.3 million peaking at almost 1.6 million in 2010. Filings have declined in the past four fiscal years due in large part to restrictions on extending credit during, and in the immediate aftermath of, the recession. Following the recession, (both revolving and non-revolving) debt levels declined significantly, suggesting that consumer spending was at a sustainable level

for many consumers. The current bankruptcy projections assume that economic growth will be slow but positive over the next year and that consumer spending will increase. In the past, an increase in consumer spending was often accompanied by an increase in (both revolving and non-revolving) debt levels at the national aggregate level, as some consumers spent more than they made. Recently, revolving debt levels have begun to level and non-revolving debt levels have been increasing. If these trends continue, one result could be more financially-troubled consumers, suggesting more bankruptcies. The judiciary projects that bankruptcy filings will start to increase in 2017.

Post-BAPCPA, the law dictates that debts can be discharged (through chapters 7 and 11) once every eight years. October 2013 marked the eight year anniversary, and many consumers who filed their petitions just prior to BAPCPA are becoming eligible to have their debts discharged again. This renewed discharge eligibility, along with the anticipated easing of credit restrictions during the recovery, may cause the recent declines in filings to moderate during fiscal year 2015 and beyond.

### Case Complexity

A second major aspect of the workload in bankruptcy courts is the impact of BAPCPA on case processing requirements. The law's additional requirements add substantially more work for the courts. For example, the law requires individual filers to receive a credit counseling briefing by an approved agency before filing for bankruptcy, and complete and pass a complex "means test" in order to be eligible for chapter 7 relief. Also, filers under chapters 7 and 13 may not receive a discharge of their debts unless they have completed an approved financial management course. These and other enhanced requirements

must be reviewed by the clerks' office, which must take further action if the filers do not meet the requirements. A graphic example of the increased complexity comes from a bankruptcy clerks office that reported the more complicated cases after BAPCPA require 47 percent more docket entries per case than before BAPCPA. This is a very typical report, and confirms the results of the work measurement study showing increased work per case in the post-BAPCPA environment.

Pro Se Filings

Another factor adding to the workload of bankruptcy clerks' offices is the increased number and complexity of pro se filings. The clerks' office must provide assistance to pro se filers, and take more time reviewing materials prepared by individuals, rather than by lawyers who are bankruptcy experts. As expected, petitions and other documents submitted by pro se filers often contain many more errors and omissions than those filed by attorneys, resulting in the need for enhanced quality control and follow-up by clerk's office staff.

**Cost Containment Efforts**

Bankruptcy courts are actively sharing administrative and operational services with the goal of containing costs for these services, as compared to providing the same services in individual courts. There are a number of examples across the country of bankruptcy courts successfully sharing services with other individual courts. This has recently led the courts in at least one circuit to begin formal sharing agreements where one court provides services to others throughout the circuit (e.g., cloud computing, virtualized servers, contracting officer services, case administration workload distribution, etc.).

The bankruptcy courts continue to be aggressive in the use of electronic filing. Bankruptcy courts open and process virtually all of their cases electronically. In addition, the courts have been enhancing efficiency through a combination of local management initiatives and court-developed automation innovations. For years, the bankruptcy clerks have been adopting new management techniques, developing and sharing best practices, and using the flexibility provided under budget decentralization to invest in automation solutions that save resources as well as improve quality and performance.

Since a major national system such as CM/ECF must be developed in stages and cannot address all requirements at once, courts have been developing and sharing local initiatives to enhance or extend the functionality of the system and address critical needs. These include cash receipting interfaces, automated case opening, electronic order processing, and calendaring/hearing scheduling programs. Working with the courts, the Administrative Office is developing a Next Generation case management system to replace the current case management system. The second phase of the project involves design, coding, and testing a first release, and is well under way. The first release was delivered to the pilot appellate courts in 2014, with the remaining appellate courts planned for implementation in 2015. The district and bankruptcy pilot courts are expected to go live in 2015. The remaining courts will get the software after a monitoring period. This Next Generation system will help to contain the cost of case processing well into the future.

*The Methods Analysis Program Adds to Cost Containment*

To help ensure that all bankruptcy courts are knowledgeable about best case management practices, particularly as they relate to opportunities generated through electronic case filing and processing, the Administrative Office coordinates with court personnel to continually refine the Methods Analysis Program. This program focuses on identifying and disseminating "best" and/or alternative practices for case management and court operations (e.g., increased automated docketing capabilities, and sharing of staff resources between bankruptcy courts, etc).

Through sharing the services of staff and other resources to perform specific ongoing administrative services, courts have reduced costs and administrative personnel. In September 2012, the Judicial Conference strongly encouraged the individual court units within each district (i.e., district, probation and pretrial services, and bankruptcy) to work together to adopt a shared administrative services (SAS) plan. In fiscal year 2013, all 94 districts prepared a SAS plan. The plans reflect that many districts had either already begun to implement SAS or had committed to increasing SAS as they lost administrative staff, whether through natural attrition or cost cutting. To further support courts' continued efforts to achieve cost savings through SAS, the Administrative Office of the U.S. Courts has provided courts with models for sharing, examples of SAS plans and memoranda of understanding, and a website for facilitating SAS relationships among the courts.

536

Appendix 1.29

Table A-1.10 Components of Bankruptcy Filings

|  | Year Ending June 30 | Chapter 7 | Chapters 9, 11, 12, & 15 | Chapter 13 | Total | Adversaries Filed |
|---|---|---|---|---|---|---|
| ACTUAL[1] | 2005 | 1,196,212 | 7,097 | 433,945 | 1,637,254 | 95,177 |
|  | 2006 | 1,164,815 | 6,670 | 313,085 | 1,484,570 | 84,772 |
|  | 2007 | 450,332 | 6,031 | 294,693 | 751,056 | 65,099 |
|  | 2008 | 615,748 | 7,662 | 344,421 | 967,831 | 51,496 |
|  | 2009 | 907,603 | 14,525 | 384,187 | 1,306,315 | 51,738 |
|  | 2010 | 1,133,320 | 15,035 | 424,242 | 1,572,597 | 68,540 |
|  | 2011 | 1,083,671 | 13,556 | 432,333 | 1,529,560 | 77,570 |
|  | 2012 | 914,015 | 11,664 | 385,949 | 1,311,628 | 57,494 |
|  | 2013 | 778,845 | 10,139 | 348,994 | 1,137,978 | 45,668 |
|  | 2014 | 669,976 | 8,828 | 321,278 | 1,000,083 | 38,451 |
| ESTIMATED[2] | 2015 | 588,000 | 7,100 | 304,400 | 899,500 | 39,800 |

[1] Actual data for years 2005 through 2014 is based on the 12-month periods ending June 30.

[2] Estimates for the 12-month period ending June 30, 2015.

5.1

COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES
*Defender Services*
SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | |
|---|---|
| **Fiscal Year 2015 Enacted Appropriation** | **$1,016,499,000** |
| **Fiscal Year 2016 Appropriation Request** | **$1,057,616,000** |
| **Requested Increase from Fiscal Year 2015 Appropriation** | **$41,117,000** |

APPROPRIATION LANGUAGE

COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES

DEFENDER SERVICES

For the operation of Federal Defender organizations; the compensation and reimbursement of expenses of attorneys appointed to represent persons under 18 U.S.C. 3006A and 3599, and for the compensation and reimbursement of expenses of persons furnishing investigative, expert, and other services for such representations as authorized by law; the compensation in accordance with the maximums under 18 U.S.C. 3006A(e) and reimbursement of expenses of attorneys appointed to assist the court in criminal cases where the defendant has waived representation by counsel; the compensation and reimbursement of expenses of attorneys appointed to represent jurors in civil actions for the protection of their employment, as authorized by 28 U.S.C. 1875(d)(1); the compensation and reimbursement of expenses of attorneys appointed under 18 U.S.C. 983(b)(1) in connection with certain judicial civil forfeiture proceedings; the compensation and reimbursement of travel expenses of guardians ad litem appointed under 18 U.S.C. 4100(b); and for necessary training and general administrative expenses, $1,016,499,000[ $1,057,616,000 ], to remain available until expended.

538

5.2

**SUMMARY OF REQUEST**
**DEFENDER SERVICES**
**FISCAL YEAR 2016**
(Dollar amounts in thousands)

| Page | | Original FTEs | Amount |
|------|---|---|---|
| | **Fiscal Year 2016 Resource Requirements:** | | |
| | Fiscal Year 2015 Obligations.................................................................. | 2,722 | 1,081,699 |
| | Less encumbered carryforward from fiscal year 2014 into fiscal year 2015.......... | - | (200) |
| | Less unencumbered carryforward from fiscal year 2014 into fiscal year 2015........ | - | (65,000) |
| | Fiscal Year 2015 Appropriation............................................................... | 2,722 | 1,016,499 |
| | **Adjustments to Base to Maintain Current Services:** | | |
| | **A. Pay and benefit adjustments** | | |
| 5.15 | 1  Annualization of January 2015 pay adjustments | | |
| | a. Federal pay adjustment (1.0% for three months) ................................ | - | 1,102 |
| | b. Panel attorney capital rate adjustment (from $180 per hour to $181 per hour)... | - | 120 |
| | c. Panel attorney non-capital rate adjustment (from $126 per hour to $127 per hour)... | - | 2,275 |
| 5.15 | 2  Proposed January 2016 pay adjustments | | |
| | a. Federal pay adjustment (1.0% for nine months) ................................ | - | 3,298 |
| | b. Panel attorney capital ECI rate adjustment (from $181 per hour to $183 per hour, effective January 1, 2015) ... | - | 239 |
| | c. Panel attorney non-capital ECI rate adjustment (from $127 per hour to $128 per hour, effective January 1, 2015)...... | - | 300 |
| 5.16 | 3  Promotions and within-grade increases........................................... | - | 3,298 |
| 5.16 | 4  Health benefits increases........................................................... | - | 1,237 |
| 5.16 | 5  FICA increase........................................................................ | - | 270 |
| 5.17 | 6  FERS increase......................................................................... | - | 1,776 |
| 5.17 | 7  One more compensable day........................................................ | - | 1,932 |
| | **B. Other Adjustments** | | |
| 5.17 | 8  General inflationary adjustments................................................ | - | 2,561 |
| 5.17 | 9  Inflationary increase in space rental costs..................................... | - | 615 |
| 5.17 | 10 Funding necessary to maintain fiscal year 2015 service levels due to anticipated decline in non-appropriated funds.... | - | 40,000 |
| 5.18 | 11 Two new case-budgeting attorney positions .................................. | 1 | 215 |
| 5.18 | 12 Savings related to two new case-budgeting positions........................ | - | (215) |
| 5.18 | 13 Changes in fiscal year 2016 caseload........................................... | 19 | 4,208 |
| | a. FDO caseload changes.......................................................... | | (28,916) |
| 5.18 | b. Panel attorney caseload changes............................................. | | 5,000 |
| | 14 High threat trial requirements.................................................... | | 39,315 |
| | **Subtotal, Adjustments to Base to maintain current services.................** | 20 | 39,315 |
| | **Total Current Services Appropriation Required........................** | 2,742 | 1,055,814 |

5.3

**Program Increases:**

| | | |
|---|---|---|
| 5.18 | 15. Non-Capital panel attorney hourly rate increase ($128 per hour to $134 per hour effective January 1, 2016).......... | - | 1,802 |
| | Subtotal, program increases.......... | - | 1,802 |
| | Total Fiscal Year 2016 Appropriation Required.......... | 2,742 | 1,057,616 |
| | Total Appropriation Increase, Fiscal Year 2015 to Fiscal Year 2016.......... | 20 | 41,117 |

**Financing the Fiscal Year 2016 Request:**

| | | |
|---|---|---|
| | Total Appropriation Required.......... | 2,742 | 1,057,616 |
| 5.19 | 16. Anticipated carryforward from fiscal year 2015 and prior years into fiscal year 2016.......... | - | 25,000 |
| | Estimated Obligations, Fiscal Year 2016.......... | 2,742 | 1,082,616 |

5.4

## COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES
### DEFENDER SERVICES
#### Obligations by Activity
($000)

| Activity | FY 2014 Actual | FY 2015 Estimate | FY 2016 Request |
|---|---|---|---|
| Defender Services - Total Obligations including | | | |
| Encumbered Carryfoward | 985,646 | 1,081,699 | 1,082,616 |
| Less Encumbered Carryforward | | (200) | |
| CJA Representations & Related Expenses | 979,171 | 1,070,569 | 1,071,987 |
| Program Administration | 6,475 | 10,930 | 10,629 |
| Total Obligations | 985,646 | 1,081,499 | 1,082,616 |
| Anticipated Financial Plan Savings | - | (11,848) | - |
| Revised Obligations | 985,646 | 1,069,651 | 1,082,616 |
| Unobligated Balance, Start of Year | (17,628) | (78,152) | (25,000) |
| Prior Year Recoveries | (1,776) | - | - |
| Unobligated Balance, End of Year | 78,152 | 25,000 | - |
| Available Appropriation | 1,044,394 | 1,016,499 | 1,057,616 |

5.5

## COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES
### DEFENDER SERVICES

Obligations by Budget Object Class ($000)

| Description | FY 2014 Actual | FY 2015 Estimate | FY 2016 Request |
|---|---|---|---|
| 1100 Personnel compensation | 267,023 | 297,299 | 305,024 |
| 1200 Personnel benefits | 82,780 | 92,099 | 97,111 |
| 1300 Benefits for former personnel | 2,614 | - | - |
| 2100 Travel | 7,957 | 9,624 | 10,889 |
| 2200 Transportation of Things | 241 | 264 | 271 |
| 2310 Rental payments to GSA | 37,955 | 41,141 | 41,756 |
| 2320 Rental payments to others | 441 | -483 | 496 |
| 2300 Communications, utilities & misc. | 5,552 | 7,101 | 7,305 |
| 2400 Printing and reproduction | 94 | 103 | 106 |
| 2500 Other services | 434,054 | 480,004 | 461,396 |
| 2600 Supplies and materials | 1,716 | 2,002 | 2,100 |
| 3100 Equipment | 11,601 | 11,178 | 11,631 |
| 4100 Grant Payments (to Community Defender Organizations) | 133,619 | 140,201 | 144,532 |
| Total Obligations | 985,646 | 1,081,499 | 1,082,616 |
| Anticipated Financial Plan Savings | - | (11,848) | - |
| Revised Obligations | 985,646 | 1,069,651 | 1,082,616 |

Full Time Equivalents (FTEs) by Activity

| | FY 2014 Actual | FY 2015 Estimate | FY 2016 Request |
|---|---|---|---|
| CJA Representations & Related Expenses[1] | 2,413 | 2,713 | 2,732 |
| Program Administration | 3 | 9 | 10 |
| Total, FTEs | 2,416 | 2,722 | 2,742 |

[1] The FTEs listed are attributable to Federal Public Defender Organization staff

5.6

## COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES
### DEFENDER SERVICES
Relation of Obligations to Outlays ($000)

| | FY 2014 Actual | FY 2015 Estimate | FY 2016 Request | Difference |
|---|---|---|---|---|
| Total Obligations | 985,646 | 1,081,499 | 1,082,616 | 1,117 |
| Obligated balance, start of year | 24,291 | 42,281 | 97,687 | 55,406 |
| Obligated Balance, End of Year | (42,281) | (97,687) | (124,303) | (26,616) |
| Recoveries of prior year unpaid obligations | (348) | - | - | - |
| **Net Outlays** | 967,308 | 1,026,093 | 1,056,000 | 29,907 |

## GENERAL STATEMENT AND INFORMATION

The right to effective assistance of counsel for persons of limited financial means is a constitutionally mandated, critical component of the criminal justice system, and one of the foundations upon which the liberty of all Americans is grounded. Funds appropriated for the Defender Services account support the appointment of counsel and other services necessary to represent financially eligible defendants, which the judiciary is required to provide by the United States Constitution; the Criminal Justice Act (CJA), 18 U.S.C. §3006A; and other related statutes. Funds also provide for the continuing education and training of those who furnish representational services under the CJA.

The fiscal year 2016 request of $1,057.6 million for the Defender Services account will fund projected requirements for federal defender organizations, panel attorneys, and a $6 increase to the non-capital panel attorney hourly rate.

## MISSION AND GOALS OF THE DEFENDER SERVICES PROGRAM

The constitutional right to the assistance of counsel is a cornerstone of the criminal justice system. In *Gideon v. Wainwright, 372 U.S. 335 (1963)*, the United States Supreme Court wrote: "The right of one charged with a crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours." The mission of the Defender Services program ensures that the Sixth Amendment right to counsel is available to those who cannot afford to retain counsel and other necessary defense services. By fulfilling its mission, the Defender Services program helps to: (a) maintain public confidence in the nation's commitment to equal justice under law; and (b) ensure the successful operation of the constitutionally-based adversary system of justice by which both federal criminal laws and federally guaranteed rights are enforced.

The four goals of the Defender Services program are to:

(1) timely provide counsel services to all eligible persons; (2) provide counsel services consistent with the best practices of the legal profession; (3) provide cost-effective services; and (4) protect the independence of the defense function performed by assigned counsel so that the rights of individual defendants are safeguarded and enforced.

## TYPES OF COUNSEL:
## Federal Defenders and Private Attorneys

The CJA authorizes the appointment of counsel, who are either attorneys employed by a federal defender organization (FDO) or private "panel" attorneys. The CJA specifies that in all judicial districts (including those served by an FDO) private attorneys shall be appointed "in a substantial proportion of the cases." 18 U.S.C. § 3006A(a)(3). In the 91 (of 94) judicial districts served by an FDO, there is a critical need for qualified panel attorneys. Ethical standards prohibit appointing FDOs in conflict-of-interest situations (e.g., an FDO is precluded from representing more than one defendant in a multi-defendant case, and is disqualified from accepting a new appointment that may present a conflict with the interests of previously represented clients). In situations where federal defenders are unavailable due to FDO conflicts or workload demands, and in

the districts not served by an FDO, private or "panel" attorneys must be appointed to represent all eligible individuals. Three districts (Georgia-Southern, Kentucky-Eastern, and Northern Mariana Islands) have no FDO. Every year CJA attorneys are appointed in over 200,000 cases where liberty, livelihood, and personal integrity are at stake.

Federal Defender Organizations

The CJA authorizes two types of FDOs: (1) federal public defender organizations (FPDOs), which are part of the judiciary, and (2) community defender organizations (CDOs), which are private, state-chartered, non-profit corporations funded by annual federal grants. An FDO may be established in any district (or combination of adjacent districts) in which at least 200 appointments are made annually. There are currently 81 FDOs authorized to serve 91 of the 94 judicial districts. For fiscal year 2016, the judiciary projects that federal defenders will be appointed in approximately 117,243 weighted cases.[1]

FDOs are the flagships of federal criminal defense, delivering high-quality representation at reasonable costs while safeguarding the rights of individuals under the Constitution. They attract, train, and retain lawyers with skills comparable to those who prosecute criminal matters in U.S. attorney offices. Because of the expertise and efficiencies they have developed as law offices focused exclusively on federal criminal practice,

---

[1] The judiciary relies on a forecast of unweighted cases for estimating the panel portion of the appropriation request. This projection is based on a count of one for each case. The judiciary uses a weighted caseload methodology for the federal defender organization portion of the appropriation request. It converts the unweighted projections, by case type, to weighted cases using the RAND–developed system of case weights.

---

FDOs provide cost-effective defense services, consistent with the best practices of the legal profession.

FDO attorneys are available for appointments on short notice, ensuring that the rights of the accused are protected and that the operations of the courts are not disrupted. FDOs also make optimal use of national resources by sharing their expertise and best practices with other FDOs and panel attorneys.

FDO staff reduce costs and improve the overall quality of CJA representation within the districts they serve by providing expert advice, training, and other assistance to panel attorneys in complex legal and technical areas such as sentencing, litigation support, and cases involving death penalty issues.

Panel Attorneys

A "panel" attorney is a private lawyer who serves on a panel maintained by the district or appellate court and is assigned by the court to represent financially eligible defendants in accordance with the CJA. Nationally, over 90 percent of CJA panel attorneys are in small law firms (with six or fewer lawyers), and approximately 60 percent are sole practitioners. The CJA provides that these attorneys shall be reimbursed for their expenses and compensated at statutorily authorized hourly rates for their services. For fiscal year 2016, the judiciary projects that panel attorneys will be appointed in 82,300 unweighted cases.

RECOVERY FROM SEQUESTRATION: RESTORING
THE DEFENDER SERVICES PROGRAM

Unfortunately, sequestration has had a lasting impact on the federal defender program. FDO staffing lost during sequestration has begun to recover but there remain a large

number of positions to backfill. Panel attorney payments were reduced for work performed from September 1, 2013 through February 28, 2014, and resources for training staff once lost have become available again.

The final fiscal year 2014 financial plan provided sufficient funding to allow FDOs to replace staff needed to address caseload. Considering the loss of staff during sequestration this process is anticipated to take at least through fiscal year 2015 to reach the staffing level approved in the fiscal year 2014 and 2015 financial plans. In the fiscal year 2014 plan, Congress approved a two-year strategy to allow adequate time for FDOs to recover lost staff. The fiscal year 2015 enacted appropriation will support continued FDO hiring and ensure that all obligations of panel attorneys and their investigative, expert, and other services providers are paid with no suspension in payments, provide a one percent adjustment in the hourly panel attorney rates, and provide the necessary training to all court-appointed counsel.

## FISCAL YEAR 2016 REQUEST

### FDOs

The fiscal year 2016 request includes 19 additional staff, based on projected weighted caseload, above the fiscal year 2015 financial plan level. Funding to restore and even support a small increase to staff should ease the stress on the Defender Services program, and continue the standard of high quality representations that is expected. Specifically, the fiscal year 2016 requested funding levels would permit FDOs to accept appointment in high-threat trials; support case-related expert services; provide for case-related travel; support the cyclical replacement of information technology equipment and

software; and allow for promotions and assistant federal defender salary increases.

Due to the uncertain fiscal climate, many federal defenders are still in the process of backfilling vacancies to address caseload requirements. The FPDO staff level high point of 2,770 occurred in October 2012, and began to decrease rapidly early in 2013 reaching a low point in March 2014. Since then, staffing levels have rebounded by approximately 190 FTE as of December 2014. Given the challenges FDOs face in filling current vacancies, the judiciary's fiscal year 2016 request for an increase of 19 FTEs is below full requirements based on projected workload.

### Panel Attorney Payments

The fiscal year 2015 enacted appropriation allowed the judiciary to implement a one percent cost-of-living adjustment in panel attorney hourly rates, consistent with the one percent Employment Cost Index (ECI) increase for federal employees. This raises the $126 non-capital hourly rate to $127 per hour and the $180 per hour capital rate to $181 per hour. In addition, final fiscal year 2015 funding ensures that all obligations of panel attorneys and their investigative, expert, and other services providers will be paid with no suspension in payments. The fiscal year 2016 request would likewise implement a one percent cost-of-living adjustment to the non-capital and capital hourly rates (raising those rates to $128 per hour and $183 per hour, respectively), consistent with the assumed one percent ECI for federal employees. In addition, an increase in the non-capital hourly rate by $6 from $128 per hour to $134 per hour is requested as part of an initial approach to obtain the statutorily-authorized hourly rate ($144 per hour in fiscal year 2016).

5.9

# COST CONTAINMENT INITIATIVES

## Cost-Effective Services

The Defender Services program has engaged in extensive efforts to contain costs and practice fiscal responsibility, without compromising its constitutionally mandated mission to ensure that the Sixth Amendment right to counsel is available to those who cannot afford to retain counsel and other necessary defense services. There is strong awareness of the budget challenges facing the nation and the need to continue cost-containment measures in every aspect of the Defender Services program.

Key cost-containment initiatives include, but are not limited to: (1) promoting the use of case budgeting to control expenditures in capital and other high-cost CJA panel attorney representations; (2) applying FDO case weights to assist in projecting FDO resource requirements nationally and evaluating individual FDO requests for additional resources; (3) supporting distance learning initiatives to optimize the training opportunities accessible to CJA attorneys with the limited funds available for this purpose; (4) instituting an FDO work measurement formula; (5) transitioning to electronic panel attorney vouchers; and (6) efficiently managing voluminous discovery. The defender services program is also continuing other strategies, in collaboration with the Department of Justice (DOJ), to reduce the costs of federal defender and panel attorney representations associated with matters of discovery and DOJ's death penalty declination process.

## Case Budgeting of CJA Panel Attorney Representations

Since 2007, Defender Services has funded Case-Budgeting Attorneys (CBAs) in the Second, Sixth, and Ninth Circuits to identify cost drivers, monitor case expenditures, assist district and appellate judges and CJA panel attorneys with individual case budgets and cost issues, assist courts in reviewing vouchers in complex cases to help ensure the reasonableness of the claims, and coordinate case budgeting and other CJA cost-containment efforts in high-cost representations. In fiscal year 2014, the 2.5 percent of panel attorney representations eligible for case budgeting (all capital cases and non-capital representations exceeding $30,000) accounted for approximately 30.4 percent ($123.2 million) of the annual expenditures for all panel attorney representations.

The Federal Judicial Center (FJC) conducted an evaluation of the Case Budgeting project to discern its impact on case management and cost control. The FJC's December 2010 evaluation report found that the CBAs accomplished the goal of containing costs, while achieving a high-quality defense, by enhancing management of and accountability over high-cost cases. The FJC report also found that the savings from the program exceeded its costs.

The judiciary continues to promote the nationwide use of case-budgeting techniques for these representations in order to help ensure that, in all capital and other high-cost panel attorney cases, the expenses of representation are anticipated, substantiated, monitored, and, where appropriate, limited before they are incurred.

At its March 2011 session, the Judicial Conference approved the utilization of circuit CBA positions, the continued Defender Services-account funding for the three current CBAs, and an incremental expansion in the number of positions. The judiciary's fiscal year 2014 financial plan included funding for five additional positions, so that by the end of fiscal year 2015, it is anticipated that nine CBAs (9 FTE) will be supporting case budgeting and other cost-containment techniques in panel attorney representations in nine of the 12 circuits, including two positions in the Ninth Circuit.[2] The fiscal year 2016 request includes two additional positions (1 FTE), which will allow flexibility to respond to resource needs in circuits currently served by only a part-time position and in circuits without a CBA. The cost of those positions is anticipated to be offset by savings in panel attorney representation expenditures.

FDO Resource Management using Case Weights
Several factors, including the number and type of cases, and case- and district-specific complexities, determine the funding an FDO requires to provide effective CJA representation. Starting in fiscal year 2012, the judiciary implemented a budget methodology utilizing the weighted case analysis developed by the RAND Corporation.

RAND's case-weighting system is based on average FDO attorney time expended to complete each case type in comparison to the national average for all case types. RAND concluded that the weights could be used to help evaluate workload changes for a particular organization from year to

---

[2] These nine FTE provide CBA services for the following circuits: First, Second, Third, Fourth, Sixth, Seventh, Eighth, Ninth, and Tenth.

year and noted that weighted caseloads offer a better tool for identifying new resource requirements than do raw case numbers.

Beginning in fiscal year 2014, the judiciary used the case weight methodology to formulate the FDO portion of the Defender Services congressional budget justification. This method relies on case-weight measures for determining staffing and funding needs. This approach promotes an empirically-based model that more accurately reflects the requirements of the FDOs. In June 2013, the judiciary contracted with RAND to update the FDO case weights. RAND is scheduled to submit the draft report by the close of January 2015, with the contract to be completed by June 30, 2015.

FDO Work Measurement Study
In fiscal year 2013, the Administrative Office began the process of conducting a work measurement study of FDOs. This study will be used in the creation of workload staffing formulas for the FDO portion of the Defender Services budget request. These formulas will be similar to the ones used for developing staffing levels in court units. The formulas are currently scheduled to be provided to the Judicial Conference for final review in September 2015. The formulas are expected to be used to allocate resources in the fiscal year 2016 financial plan and to develop the 2017 congressional budget request.

Electronic Panel Attorney Voucher Management
In March 2014, the Director of the Administrative Office approved moving forward with the eVoucher product developed by the District of Nevada as the automated CJA voucher processing and management system for the Judiciary. The eVoucher product facilitates electronic submission,

5.11

management, and approval of CJA vouchers. It includes extensive reporting capabilities, enabling more flexible management of the CJA process by judges and court staff.

The current version of eVoucher has completed functional and security testing and has been deployed on centralized servers to 37 courts, including all the courts of the Second and Ninth Circuits. Deployment to all other courts began in October 2014 and is expected to be completed before January 1, 2016.

Distance Learning

The Defender Services program continues to develop and produce distance learning programs. Beginning in October 2010, substantive criminal defense video training sessions have been made available to CJA practitioners, expanding the reach of the programs without the necessity of additional live training events. Each year, between 1,000 and 2,000 practitioners access the videos. Beginning in July 2013, Defender Services began presenting semi-regular webinars, which are recorded for later use. The training made available through distance learning provides an additional resource to improve the quality of representation provided by CJA counsel, and enables live training programs to have a greater impact nationally. For example, FDOs are using the video training sessions and webinars as part of their efforts to train panel attorneys locally, so that they can obtain more training, more often.

Discovery Costs

As the data associated with individual CJA representations expands in size and complexity year after year, CJA attorneys—both FDO staff and panel attorneys—require new tools to help them organize, review, and manage the large amounts and variety of information provided by the prosecution as discovery material. Paper documents must be scanned, and analog recordings digitized. This is especially necessary for cases with hundreds of thousands or millions of pages of information. Evidence encompasses not only discovery materials produced by the government, but those gathered by third parties and the defense. Federal defenders and panel attorneys must have sufficient litigation resources, including national support staff, to meet the challenge presented by DOJ's litigation support capabilities. The judiciary foresees that the number of discovery-intensive cases will continue to grow.

Three major initiatives are in place to address this issue.

1) A collaborative effort between representatives of the judiciary and staff from the DOJ reached fruition with the creation of "Recommendations for Electronically Stored Information (ESI) Discovery Production in Federal Criminal Cases," which was released in February 2012. The recommendations are designed to facilitate a more predictable, cost-effective, and efficient management of electronic discovery, and a reduction in the number of disputes relating to ESI, by encouraging early discussion of electronic discovery issues through "meet and confers" between the prosecution and defense; the exchange of data in standard or reasonably useable formats; and resolution of disputes without the necessity of court involvement, where possible. The judiciary has continued to work with the DOJ by doing joint and separate training on the protocol, and continuing discussions on implementation and potential modification of the protocol.

2) Contracts with three coordinating discovery attorneys (CDAs) to advise panel attorneys and defender offices on cost-

effective ways to manage large volumes of documents in the most complex cases, while providing a high quality of representation to the client. As of October 2014, the CDAs have been appointed in approximately 50 cases, and because nearly all of the cases are multi-defendant cases, are providing services to over 650 CJA attorneys nationally.

3) The procurement of a number of national licenses for software applications and tools to allow for the more efficient capture, organization, analysis, review and management of case-related electronic data by CJA panel attorneys and FDO staff while, with some of the software, avoiding the higher cost alternative of purchasing software in multiple cases year after year.

Improvement in DOJ Procedures for Making Decisions Not to Seek the Death Penalty in Death-Eligible Cases

The judiciary has long engaged in efforts urging DOJ to streamline its "fast-track" procedures for evaluating and making decisions *not* to seek the death penalty as a cost-containment measure in cases where it is highly unlikely that DOJ will ultimately seek the death penalty. In the vast majority of death-eligible cases, the local U.S. attorney does not recommend, and the Attorney General does not authorize, seeking the death penalty. However, unless and until DOJ notifies counsel and the court that it does *not* intend to seek the death penalty for a death-eligible defendant, which can take years to determine, defense counsel must assume that the death penalty will be pursued and the judiciary is obligated to bear the substantial cost of the statutorily required two capital-qualified defense counsel – compensated at the higher capital rate – who must undertake the intensive, time-consuming work

required to attempt to persuade the government *not* to seek the death penalty, and prepare for a capital trial and sentencing proceeding. An early decision by the Attorney General *not* to seek the death penalty could achieve significant cost savings for the Defender Services program, DOJ, and the courts.

The *Guide to Judiciary Policy*, Volume 7A, Chapter 6, Section 670 (jointly developed with DOJ staff and approved by the Judicial Conference in September 2007) is intended to promote cost savings by having DOJ decide earlier in the process when it will *not* seek the death penalty. The guideline encourages courts to set reasonable deadlines for stages of the death penalty authorization process (subject to extension for good cause).

In July 2011, DOJ published a revised death penalty authorization protocol. The revised protocol re-emphasized pre-indictment determinations of whether to seek the death penalty, which could lead to a decrease in the number of death-eligible indictments. The judiciary had hoped that the revised protocol would also adopt a more de-centralized process, deferring to local U.S. Attorneys' recommendations against seeking the death penalty or in favor of a negotiated non-capital disposition, which would save a significant amount of money.

In April 2014, DOJ amended the death penalty protocol again so that submission of all capital-eligible cases for pre-indictment review, previously expressed as a strong preference, is now mandatory, absent extenuating circumstances. While the revisions to the protocol are new and still being assessed, they are a welcome step and, if implemented at the local level, have the potential to result in substantial savings for the

Defender Services program. In June 2014, the Deputy Attorney General indicated that he will be monitoring compliance with the new protocol. The judiciary looks forward to continuing collaboration on the staff level regarding ways to further streamline DOJ's *non-death* decision-making process.

## PANEL ATTORNEY RATE

Every year, panel attorneys represent accused individuals in federal court, seeking justice for their clients in appointments made pursuant to the CJA. These more than 10,000 panel attorneys, primarily solo and small law firm practitioners and business owners, are paid $127 per hour for non-capital cases, $17 below the $144 per hour authorized by the 99th Congress when they enacted the Criminal Justice Act Revision of 1986. (Pub. L. 99-651). The 1986 revisions authorize the Judicial Conference to implement annual inflationary or cost-of-living adjustments (COLAs) for panel attorneys, but CJA panel attorneys have not received a pay rate increase since 2010, other than a $1 COLA in both fiscal year 2014 and fiscal year 2015. In 2013, as a result of sequestration and the government shutdown, there was a one month deferral on all CJA payments. In addition, as an emergency cost cutting measure, from September 1, 2013, through February 28, 2014, panel attorneys had their hourly rates temporarily reduced by $15 per hour. Panel attorneys, who accepted non-capital CJA appointments in 2013 expecting to be paid $125 per hour, were instead paid $110 per hour, amounting to thousands of dollars in lost wages.

These small business owners pay their own salary, as well as rent, staff salaries, and other overhead expenses from the CJA

hourly rate. The CJA rate is meant to cover both overhead and a fair hourly fee. According to a 2009 nationwide survey conducted by the judiciary, panel attorneys earned on average, $246 per hour for privately retained criminal cases, and incurred overhead costs of $70 per hour.[1] The current CJA panel rates are not competitive with even these out-of-date 2009 figures. Assuming overhead costs have remained constant since 2009, the $127 per hour rate equates to an hourly attorney fee of $57 before taxes. In comparison, DOJ pays $200 per hour to retain private counsel to represent current or former federal employees in civil, congressional, or criminal proceedings. The judiciary is in the process of completing another nationwide survey to assess the effect of the current hourly rate on CJA representations.

While the judiciary's goal is to eventually attain the full amount permitted by statute for the non-capital attorney hourly rate, the judiciary is deferring for the fifth consecutive year, because of budgetary constraints, to seek the fully authorized rate of $144 per hour for fiscal year 2016. A $1 COLA adjustment in fiscal year 2016 would raise the CJA base rate for fiscal year 2016 to $128 per hour. The judiciary is seeking a $6 per hour rate increase above a COLA from $128 to $134 per hour for non-capital cases in fiscal year 2016. This rate increase is needed to ensure that courts retain and recruit qualified and experienced criminal defense practitioners for their CJA panels. The judiciary makes this request, cognizant

---

[1] The nationwide surveys of judges and panel attorneys conducted in December 2008 and February 2009 provided data on the continuing difficulties courts experience in finding enough qualified panel attorneys, and panel attorney overhead costs. These and other issues are the subject of similar surveys which will be conducted in the near future.

5.14

of pressures on the federal budget, but mindful that a successful indigent defense system and compliance with the constitutionally and statutorily mandated right to the effective assistance of counsel depends on the strength of its CJA panel attorneys.

## JUSTIFICATION OF CHANGES

The fiscal year 2016 request for appropriated funds is $1,057.6 million, an increase of $41.1 million (4.0 percent) over the fiscal year 2015 appropriation of $1,016.5 million. Fiscal year 2016 projected obligations total $1,082.6 million, which is $1.1 million (0.1 percent) above fiscal year 2015 projected obligations.

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

The following narrative provides information and justification for each of the adjustments to base for this account.

### A.   PAY AND BENEFITS ADJUSTMENTS

1.   Annualization of 2015 pay adjustment

   a.   Federal pay adjustment

**Requested Increase: $1,102,000**

As a result of an Employee Cost Index (ECI) adjustment, federal pay rates increased by 1.0 percent in January 2015. The requested increase provides for the cost of three months (from October 2015 to December 2015) of the 2015 pay increase in fiscal year 2016.

   b.   **Panel attorney capital ECI rate adjustment**

**Requested Increase: $120,000**

The requested funding annualizes the fiscal year 2015 panel attorney capital rate cost-of-living increase from $180 per hour to $181 per hour. A rate increase to the capital hourly rate impacts six months of costs in fiscal year 2015. The requested increase annualizes this rate increase for the first six months of fiscal year 2016.

   c.   **Panel attorney non-capital ECI rate adjustment**

**Requested Increase: $2,275,000**

The requested increase annualizes the fiscal year 2015 panel attorney non-capital rate increase from $126 per hour to $127 per hour. A rate increase to the non-capital hourly rate impacts three months of costs in fiscal year 2015. The requested increase annualizes this rate increase for the first nine months of fiscal year 2016.

2.   Proposed January 2016 pay adjustments

   a.   **Federal pay adjustment**

**Requested Increase: $3,298,000**

As of January 2015, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.0 percent beginning on or after January 1, 2016. The

requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2016 (from January 2016 to September 2016).

**b.   Panel attorney capital ECI rate adjustment**

**Requested Increase: $239,000**

The requested funding would increase the capital panel attorney hourly rate by an estimated ECI adjustment of 1.0 percent. This would increase the hourly rate from an estimated $181 per hour to $183 per hour, effective January 1, 2016. There is a time delay between when the rate increase is implemented and when vouchers are submitted with the higher rate. Therefore, the requested increase provides for the cost of six months of the rate increase in fiscal year 2016.

**c.   Panel attorney non-capital ECI rate adjustment**

**Requested Increase: $300,000**

The requested funding would increase the non-capital panel attorney hourly rate by an assumed ECI adjustment of 1.0 percent. This would increase the hourly rate from an estimated $127 to $128, effective January 1, 2016. There is a time delay between when the rate increase is implemented and when vouchers are submitted with the higher rate. Therefore, the requested increase provides for the cost of three months of the adjustment in fiscal year 2016.

**3.   Promotions and within-grade increases**

**Requested Increase: $3,298,000**

The requested increase provides for promotions and within-grade increases for personnel. The salary plan for federal defender organizations provides for periodic within-grade increases for staff who achieve at least a satisfactory performance rating.

**4.   Health benefits increase**

**Requested Increase: $1,237,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 3.2 percent in January 2015. The requested increase annualizes the 2015 premium increase, and includes a nine-month provision for an estimated 4.0 percent increase anticipated for fiscal year 2016.

**5.   FICA increase**

**Requested Increase: $270,000**

Funds are requested to provide for the base adjustment in employer contributions to the Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax. The salary cap for OASDI increased to $117,000 in January 2014, and increased to $118,500 in January 2015. The requested amount is needed to pay the agency contribution.

5.16

**6. FERS increase**

**Requested Increase:  $1,776,000**

Funds are requested for a 0.5 percent increase (from 13.2 percent to 13.7 percent) in the agency contribution rate to Federal Employee Retirement System (FERS) plans effective October 1, 2015. The FERS increase is in accordance with revised estimates of the cost of providing benefits by the Board of Actuaries of the Civil Service Retirement and Disability System.

**7.  One more compensable day**

**Requested Increase:  $1,932,000**

There is one more compensable day in fiscal year 2016 than in fiscal year 2015.  The request increases personnel compensation and benefits associated with one more compensable day.

**B.    OTHER ADJUSTMENTS**

*General inflationary adjustments*

**8.  Inflationary increases in charges for contracts, services, supplies, and equipment**

**Requested Increase: $2,561,000**

Consistent with guidance from the Office of Management and Budget, this request of $2,561,000 is required to fund inflationary increases of 1.6 percent for operating expenses

such as travel, communications, printing, contractual services, supplies and materials, and furniture and equipment.

**9.  Inflationary increases in space rental costs**

**Requested Increase: $615,000**

FDOs are located in both courthouses and private commercial office space.  The request represents an inflationary increase and adjustments in the cost of space rental charges for fiscal year 2016.

**10.   Funding necessary to maintain fiscal year 2015 service levels due to anticipated decline in non-appropriated funds**

**Requested Increase: $40,000,000**

The judiciary has been able to reduce requirements for appropriated funds through the use of unobligated no-year funds carried forward from prior fiscal years.  In fiscal year 2015, $65.0 million in balances from fiscal year 2014 was available to finance fiscal year 2015 requirements.  In fiscal year 2016, the judiciary expects $25.0 million in non-appropriated funds to be available, a decrease of $40.0 million from fiscal year 2015.  Therefore, a $40.0 million increase in appropriations is requested to maintain current services.

**11. Two new circuit case-budgeting attorney positions            FTE:  1**

**Requested Increase: $215,000**

The requested increase would support two additional CBA positions (1 FTE), which will allow flexibility in responding to circuit-specific resource needs. The cost of those positions will be offset by savings in panel attorney representation expenditures.

**12. Savings from two new circuit case-budgeting attorney positions**

**Requested Decrease: ($215,000)**

The two new CJA case-budgeting attorney positions will create an offsetting savings of $215,000 in panel attorney requirements.

**13. Change in fiscal year 2016 caseload**

    **a.  FDO caseload change**

**Requested Increase: $4,208,000            FTE:  19**

The requested increase provides for FDO staff costs due to projected caseload changes in capital and non-capital weighted caseload. Given the challenges FDOs face with filling current vacancies, the judiciary request for an increase of 19 FTE is below full requirements supported by current weighted caseload projections.

    **b.  Panel attorney caseload change**

**Requested Decrease: ($28,916,000)**

The requested decrease is due to the change in panel attorney caseload. Panel attorney representations are projected to decrease from 87,300 in fiscal year 2015 to 82,300 in fiscal year 2016, a reduction of 5,000 representations. In the past, panel attorney caseload has been difficult to predict. Thus, caseload projections and requirements will be reassessed as more information becomes available.

**14. High threat trial requirements**

**Requested Increase: $5,000,000**

The requested increase of $5 million is for unanticipated costs associated with high threat, high profile representations.

**C.    PROGRAM INCREASES**

**15. Non-Capital Rate Increase**

**Requested Increase: $1,802,000**

The requested funding is to support a $6 hourly rate increase from $128 to $134 per hour for non-capital cases in fiscal year 2016. The judiciary assumes there will be a $1 cost-of-living adjustment in fiscal year 2016, raising the CJA base rate for fiscal year 2016 to $128 per hour. The $6 rate increase is needed to ensure that courts retain and recruit qualified and experienced criminal defense practitioners for their CJA panels. The judiciary makes this request, cognizant of pressures on the federal budget, but mindful that a successful indigent defense system and compliance with the

5.18

555

5.19

constitutionally and statutorily mandated right to the effective assistance of counsel depends on the strength of its CJA panel attorneys.

The request assumes a January 2016 implementation date and a 3 month impact on fiscal year 2016 non-capital panel attorney costs. The annualized cost of the $6 increase is $14.4 million.

## D.   FINANCING THE FISCAL YEAR 2016 REQUEST

**16.  Anticipated carryforward from fiscal year 2015 into fiscal year 2016**

**Estimated funds available: $25,000,000**

The judiciary projects $25.0 million will be available through anticipated carry forward from fiscal year 2015 and prior years into fiscal year 2016 to offset the fiscal year 2016 appropriation request for the defender services program.  Savings are related to the expectation of unobligated FDO funds due to reduced FDO staffing levels.  The judiciary will advise appropriations subcommittee staffs of changes to this estimate.

556

**COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES**
*Fees of Jurors and Commissioners*
**SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS**

| | | |
|---|---|---|
| **Fiscal Year 2015 Enacted Appropriation** | $ | 52,191,000 |
| **Fiscal Year 2016 Requested Appropriation** | $ | 52,411,000 |
| **Requested Increase from Fiscal Year 2015 Appropriation** | | 220,000 |

APPROPRIATION LANGUAGE

COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES

FEES OF JURORS AND COMMISSIONERS

For fees and expenses of jurors as authorized by 28 U.S.C. 1871 and 1876; compensation of jury commissioners as authorized by 28 U.S.C. 1863; and compensation of commissioners appointed in condemnation cases pursuant to rule 71.1(b) of the Federal Rules of Civil Procedure (28 U.S.C. Appendix Rule 71.1(b)), [$52,191,000]$52,411,000, to remain available until expended: *Provided*, That the compensation of land commissioners shall not exceed the daily equivalent of the highest rate payable under 5 U.S.C. 5332.

557

6.2

## SUMMARY OF REQUEST
## FEES OF JURORS AND COMMISSIONERS
### FISCAL YEAR 2016
(Dollar amounts in thousands)

**Fiscal Year 2016 Resource Requirements:**

| | | FTEs | Amount |
|---|---|---|---|
| | Fiscal Year 2015 Obligations................................... | - | $53,191 |
| | Carryforward from prior fiscal years..................... | - | (1,000) |
| | Fiscal Year 2015 Enacted Appropriation................ | - | $52,191 |
| **Page No.** | **A.  Adjustments to Base:** | | |
| 6.10 | 1.  Inflationary adjustments | | |
| | a.  Grand Jurors........................................ | - | 152 |
| | b.  Petit Jurors.......................................... | - | 325 |
| 6.10 | 2.  Projected change in available jurors | | |
| | a.  Grand Jurors........................................ | - | 718 |
| | b.  Petit Jurors.......................................... | - | (3,921) |
| 6.10 | 3.  Decrease in appropriation needed to fund current services......... | - | (1,042) |
| | Subtotal, Adjustments to Base to Maintain Current Services...................... | - | (3,768) |
| | Total Current Services Appropriation Required........................ | - | 48,423 |
| | **B.  Program Increases:** | | |
| 6.11 | 4.  Increase to the juror daily rate from $40 to $50 effective January 2016................ | - | 3,988 |
| | Subtotal, Program Increases...................................... | | 3,988 |
| | Total Fiscal Year 2016 Appropriation Required.............................. | - | 52,411 |
| | Total Appropriation Change, Fiscal Year 2015 to Fiscal Year 2016................ | - | 220 |
| | **Financing the Fiscal Year 2016 Request:** | | |
| | Total Appropriation Required........................................ | - | 52,411 |
| 6.11 | 5.  Carryforward Balances from Prior Years into Fiscal Year 2016................ | - | 2,042 |
| | Estimated Obligations, Fiscal Year 2016................... | - | 54,453 |

## COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES
## FEES OF JURORS AND COMMISSIONERS
### Obligations by Activity ($000)

| Activity | Fiscal Year 2014 Actual | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request |
|---|---|---|---|
| Comparison by activities: | | | |
| *Land commissioners* | 5 | 100 | 100 |
| *Grand Jurors* | 14,406 | 15,260 | 18,126 |
| *Petit Jurors* | 37,762 | 37,831 | 36,227 |
| **Total Obligations** | **52,173** | **53,191** | **54,453** |
| Unobligated Balance, start of year | (1,324) | (3,042) | (2,042) |
| Unobligated Balance, end of year | 3,042 | 2,042 | - |
| **Appropriation** | **53,891** | **52,191** | **52,411** |

### Obligations by Budget Object Class ($000)

| | Description | Fiscal Year 2014 Actual | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request |
|---|---|---|---|---|
| 11 | Personnel compensation | 24,010 | 25,545 | 25,890 |
| 12 | Personnel benefits | 1 | 1 | 1 |
| 21 | Travel | 24,863 | 24,555 | 25,356 |
| 23 | Rent, communications and utilities | 1,799 | 1,470 | 1,525 |
| 25 | Other services | 597 | 598 | 620 |
| 26 | Supplies and materials | 903 | 1,022 | 1,061 |
| | **Total obligations** | **52,173** | **53,191** | **54,453** |

559

6.4

## COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES
### FEES OF JURORS AND COMMISSIONERS

Relation of Obligations to Outlays ($000)

|  | FY 2014 Actual | FY 2015 Estimate | FY 2016 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 52,173 | 53,191 | 54,453 | 1,262 |
| Obligated balance, start of year | (1,325) | (1,969) | (887) | 1,082 |
| Obligated balance, end of year | 1,969 | 887 | 920 | 33 |
| Change in prior year balances | (1,289) | - | - | - |
| **Net Outlays** | **51,528** | **52,109** | **54,486** | **2,377** |

## GENERAL STATEMENT AND INFORMATION

This appropriation provides for the statutory fees and allowances of grand and petit jurors, and for the compensation of jury and land commissioners. In addition to reimbursement for daily travel to and from court, expenses allowed include meals and lodging furnished to sequestered jurors, and transportation to view evidence or crime scenes offsite. Budgetary requirements depend largely upon the volume and the length of jury trials demanded by parties to both civil and criminal actions and the number of grand juries being convened by the courts at the request of United States Attorneys. All of these factors are outside the control of the judiciary.

The fiscal year 2016 request of $52.4 million for the Fees of Jurors account will support all projected requirements for petit and grand jurors and land commissioners, as well as an increase of $10 to the daily juror attendance fee.

### Petit Jurors

A petit jury may be called to hear a trial in a civil or criminal action. A criminal trial normally would have a 12-person jury and a civil trial would typically have a 7- to 9- person jury. In a civil trial, the jury's responsibility is to decide whether the defendant injured or otherwise failed to fulfill a legal obligation to the plaintiff and to determine what the compensation should be. Criminal juries decide whether the defendant committed the crime as charged.

The number of jurors called on any given day to serve in a petit jury pool is related to the number and type of cases in which a trial by jury is requested. Moreover, under rules of criminal procedure, criminal trials are allowed additional peremptory challenges compared to civil trials because of the jury size.

This means that the court must take these challenges into account when determining the number of potential jurors in a criminal jury pool. Thus, the number of potential jurors in a criminal jury pool is likely to be greater than the number of jurors in a civil jury pool, but the likelihood of jurors being called in a criminal jury is less than in a civil jury.

In fiscal year 2014, the total number of available petit jurors decreased by 6.9 percent to 417,285, continuing an 8-year decline in available petit jurors. Available petit jurors are projected to continue to decrease to 404,600 in fiscal year 2015, then decrease further to 392,500 in fiscal year 2016, the lowest projected level in more than ten years. According to recent statistical data and trends, both civil and criminal trials are estimated to continue to decline in fiscal years 2015 and 2016. Table 6.1 on page 6.7 provides a historical pattern of the number of jurors called and the related costs of paying the expenses of those jurors.

### Grand Jurors

A grand jury is a jury of inquiry whose duty it is to receive complaints and accusations in criminal cases, hear the evidence presented on the part of the Government, and find bills of indictment in cases where the jurors are satisfied that the

6.6

evidence presented is sufficient to warrant filing an indictment and bringing the case to trial. The number of grand juries convened by district courts varies depending on such factors as the number of criminal cases, the type of criminal activity, and the number of places in which court is held. Grand juror activity is measured by the number of sessions convened, jurors in session and total jurors in attendance.

In fiscal year 2014, the total number of available grand jurors decreased by 7.8 percent to 181,437. Available grand jurors continue to decline by 0.6 percent in fiscal year 2015 to 180,400, but are projected to increase slightly in fiscal year 2016 to 181,300. Table 6.2 on page 6.8, provides further detail on grand jury activity.

Table 6.1 Petit Juror Usage

| | Fiscal Year | Petit Jury Trial Days | | | | Available Jurors | | Cost | |
|---|---|---|---|---|---|---|---|---|---|
| | | Criminal | Civil | Total | Percent Change | Jurors | Percent Change | Fees & Expenses | Percent Change |
| Actual | 2006 | 15,634 | 12,987 | 28,621 | 0.0% | 579,706 | 0.0% | 45,177,000 | 0.0% |
| | 2007 | 15,339 | 12,054 | 27,393 | -4.3% | 554,193 | -4.4% | 47,489,000 | 5.1% |
| | 2008 | 14,946 | 11,890 | 26,836 | -2.0% | 544,565 | -1.7% | 44,906,000 | -5.4% |
| | 2009 | 14,371 | 10,985 | 25,356 | -5.5% | 522,348 | -4.1% | 45,441,000 | 1.2% |
| | 2010 | 13,088 | 10,825 | 23,913 | -5.7% | 483,293 | -7.5% | 47,016,000 | 3.4% |
| | 2011 | 12,714 | 11,222 | 23,936 | 0.1% | 469,199 | -2.9% | 37,909,000 | -19.4% |
| | 2012 | 12,679 | 10,099 | 22,778 | -4.8% | 451,989 | -3.7% | 38,956,000 | 2.8% |
| | 2013 | 12,730 | 9,207 | 21,937 | -3.7% | 448,329 | -0.8% | 39,398,000 | 1.1% |
| | 2014 | 11,506 | 9,214 | 20,720 | -5.5% | 417,285 | -6.9% | 37,762,000 | -4.2% |
| Estimated | 2015 | 11,400 | 8,900 | 20,300 | -2.0% | 404,600 | -3.0% | 37,831,000 | 0.2% |
| | 2016 | 11,300 | 8,800 | 20,100 | -1.0% | 392,500 | -3.0% | 36,227,000 | -0.6% |

6.7

Table 6.2 Grand Jury Activity

| | Total Number of Grand Jurors | | | | Available Jurors | | | Cost | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Fiscal Year | Sessions Convened | Percent Change | Jurors in Session | Percent Change | Hours in Session | Jurors | Percent Change | Fees & Expenses | Percent Change |
| **Actual** | | | | | | | | | |
| 2006 | 9,854 | 0.0% | 196,197 | 0.0% | 48,582 | 212,662 | 0.0% | 15,999,000 | 0.0% |
| 2007 | 9,399 | -4.6% | 187,646 | -4.4% | 45,718 | 204,530 | -3.8% | 15,633,000 | -2.3% |
| 2008 | 9,279 | -1.3% | 185,083 | -1.3% | 45,197 | 201,073 | -1.7% | 15,427,000 | -1.3% |
| 2009 | 9,358 | 0.9% | 186,603 | 0.8% | 44,736 | 204,045 | 1.5% | 15,721,000 | 1.9% |
| 2010 | 9,257 | -1.1% | 186,194 | -0.2% | 44,676 | 203,160 | -0.4% | 15,755,000 | 0.2% |
| 2011 | 9,277 | 0.2% | 186,020 | -0.1% | 44,845 | 203,435 | 0.1% | 17,642,000 | 12.0% |
| 2012 | 9,083 | -2.1% | 182,106 | -2.1% | 43,083 | 200,362 | -1.5% | 16,288,000 | -7.7% |
| 2013 | 8,923 | -1.8% | 179,076 | -1.7% | 41,477 | 196,540 | -1.9% | 16,097,000 | -1.2% |
| 2014 | 8,230 | -7.8% | 164,856 | -7.9% | 36,719 | 181,437 | -7.7% | 14,406,000 | -10.5% |
| **Estimated** | | | | | | | | | |
| 2015 | 8,200 | -0.4% | 163,900 | -0.6% | 36,500 | 180,400 | -0.6% | 15,260,000 | 5.9% |
| 2016 | 8,200 | 0.0% | 164,800 | 0.5% | 36,600 | 181,300 | 0.5% | 18,126,000 | 14.3% |

6.8

| | Average Number of | | Total Number of Grand Juries | | |
| --- | --- | --- | --- | --- | --- |
| Fiscal Year | Jurors per Session | Hours per Session | In Existence at the beginning of the Fiscal Year | Impaneled | Discharged |
| 2005 | 19.9 | 4.93 | 462 | 307 | 312 |
| 2006 | 19.9 | 4.86 | 442 | 316 | 319 |
| 2007 | 19.9 | 4.87 | 413 | 320 | 292 |
| 2008 | 19.9 | 4.87 | 426 | 323 | 300 |
| 2009 | 20.1 | 4.80 | 444 | 322 | 265 |
| 2010 | 20.1 | 4.80 | 450 | 334 | 265 |
| 2011 | 20.0 | 4.70 | 458 | 341 | 263 |
| 2012 | 20.1 | 4.60 | 462 | 321 | 247 |
| 2013 | 20.0 | 4.60 | 460 | 318 | 267 |
| 2014 | 20.0 | 4.50 | 440 | 323 | 242 |

564

6.9

## Land Commissioners

The responsibility of land commissioners is to determine the issue of just compensation arising from the deprivation of private property for public use. Under the Federal Rules of Civil Procedure, a district court may use its discretion to order that compensation for condemned property be determined by a commission of three persons appointed by the court. The determination of compensation is based on evidence presented during the exercise of trial procedures and evidentiary rulings. This delegation of the judicial function requires close judicial supervision and requires that actions taken by the commission be fully documented to permit full review by the district or appellate courts. This system ensures due process of law to the litigants.

Land commissioners are compensated based on the daily equivalent of the highest rate payable under 5 U.S.C. 5332, and are also eligible for locality pay amounts that apply to their locality pay areas. These amounts are payable on top of their basic pay. The annual adjusted pay rate (i.e., basic pay plus locality pay) for land commissioners is limited to the rate of pay for level III of the Executive Schedule, currently $168,700.

## JUSTIFICATION OF CHANGES

The fiscal year 2016 appropriation request for Fees of Jurors and Commissioners totals $52,411,000, which represents an increase of $220,000 or 0.4 percent above the fiscal year 2015 enacted appropriation of $52,191,000.

### A. ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

*1. Inflationary adjustments*

#### a. Grand Jurors

**Requested Increase:  $152,000**

An increase of $152,000 is requested for inflationary adjustments associated with grand juror costs including travel allowances (mileage, parking, tolls), meals and lodging for sequestered jurors, and other miscellaneous juror expenses.

#### b. Petit Jurors

**Requested Increase:  $325,000**

An increase of $325,000 is requested for inflationary increases associated with petit juror costs including travel allowances (mileage, parking, tolls), meals and lodging for sequestered jurors, and other miscellaneous juror expenses.

*2. Projected change in available jurors*

#### a. Grand Jurors

**Requested Increase:  $718,000**

An increase of $718,000 is the result of a projected increase in the number of available grand jurors from fiscal year 2015 to fiscal year 2016.

#### b. Petit Jurors

**Requested Decrease:   ($3,921,000)**

A decrease of $3,921,000 is the result of a projected decrease in the number of available petit jurors from fiscal year 2015 to fiscal year 2016.

*3. Decrease in appropriation needed to fund current services*

**Requested Decrease: ($1,042,000)**

The fiscal year 2015 financial plan was financed in part by $1.0 million in carryforward balances from fiscal year 2014.  The judiciary has assumed that $2.0 million in carry forward balances from fiscal year 2014 will be available to finance fiscal year 2016 requirements; therefore, the fiscal year 2016 request reflects a base reduction of $1.0 million.

## B. PROGRAM INCREASE

### *4. Increase to the daily juror attendance fees from $40 to $50*

**Requested Increase: $3,988,000**

An increase of $4.0 million is requested to increase the daily juror attendance fee by $10 (from $40 to $50) for grand and petit jurors effective January 2016, to compensate jurors more adequately for their services. Although inflation and the cost of living have increased each year, the juror fee has not been increased since December 1990. The proposed $10 increase will adjust the compensation paid to jurors to account for cost of living increases since the passage of the Judicial Improvements Act of 1990. Based on the Bureau of Labor Statistics consumer price index, the attendance fee would have resulted in a daily rate of $72 by 2014 if inflationary increases were applied each year after 1990.

The legislative language to increase the daily attendance fee is provided in section 13 in the Judiciary's *Administrative Provisions*.

## FINANCING THE FISCAL YEAR 2016 REQUEST

### *5. Carryforward balances from prior fiscal years into fiscal year 2016*

**Estimated funds available: $2,000,000**

The judiciary estimates $2.0 million will be available through carry forward from prior years into fiscal year 2016 to offset the fiscal year 2016 appropriation request for the Fees of Jurors account. Savings are related to a decrease in the estimated number of available petit jurors. The judiciary will advise appropriations subcommittee staffs of changes to this estimate.

6.11

7.1

# COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES

*Court Security*

## SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | |
|---|---|
| Fiscal Year 2015 Enacted Appropriation | $513,975,000 |
| Fiscal Year 2016 Appropriation Request | $542,390,000 |
| **Requested Increase from Fiscal Year 2016 Appropriation** | **$28,415,000** |

## APPROPRIATION LANGUAGE

## COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES

## COURT SECURITY
## (INCLUDING TRANSFERS OF FUNDS)

For necessary expenses, not otherwise provided for, incident to the provision of protective guard services for United States courthouses and other facilities housing Federal court operations, and the procurement, installation, and maintenance of security systems and equipment for United States courthouses and other facilities housing Federal court operations, including building ingress-egress control, inspection of mail and packages, directed security patrols, perimeter security, basic security services provided by the Federal Protective Service, and other similar activities as authorized by section 1010 of the Judicial Improvement and Access to Justice Act (Public Law 100-702), [$513,975,000]*$542,390,000*, of which not to exceed $15,000,000 shall remain available until expended, to be expended directly or transferred to the United States Marshals Service, which shall be responsible for administering the Judicial Facility Security Program consistent with standards or guidelines agreed to by the Director of the Administrative Office of the United States Courts and the Attorney General.

568

## SUMMARY OF REQUEST
## COURT SECURITY
## FISCAL YEAR 2016
### (Dollar amounts in thousands)

**Fiscal Year 2016 Resource Requirements:**

| Page | | FTEs | Amount |
|---|---|---|---|
| | Fiscal Year 2015 Total Obligations................................................... | 72 | $537,725 |
| | Less encumbered carryforward from fiscal year 2014 into fiscal year 2015.................. | - | (8,911) |
| | Less utilization of Judiciary Information Technology Fund (JITF)........................ | - | (3,839) |
| | Less unencumbered carryforward from fiscal year 2014 into fiscal year 2015............... | - | (11,000) |
| | Fiscal Year 2015 Enacted Appropriation............................................. | 72 | $513,975 |
| | | | |
| | **A. Adjustments to Base:** | | |
| | 1  Pay and benefits increases | | |
| 7.12 | a. Annualization of January 2015 pay adjustment (1.0% for three months)............... | - | 26 |
| 7.12 | b. Proposed January 2016 pay adjustment (1.0% for nine months).................... | - | 76 |
| 7.12 | c. Promotions and within-grade increases.................................... | - | 76 |
| 7.12 | d. Health benefits increase............................................. | - | 19 |
| 7.12 | e. FICA increase.................................................... | - | 2 |
| 7.13 | f. FERS increase.................................................... | - | 46 |
| 7.13 | g. One more compensable day........................................... | - | 1,567 |
| 7.13 | 2. Annualization of court security officer (CSO) positions (10)...................... | - | 123 |
| 7.13 | 3. Fiscal year 2016 Department of Labor and Collective Bargaining Agreements (CBAs) wage rate and other contractual adjustments (3.0% for CBAs)..................... | - | 11,650 |
| 7.13 | 4. Inflationary increases in charges for contracts, services, supplies, and equipment......... | - | 108 |
| 7.14 | 5. Inflationary increase in GSA space rental costs............................... | - | 77 |

7.2

7.3

| Page | | FTEs | Amount |
|------|---|------|--------|
| 7.14 | 6. Changes in Federal Protective Service security charges (building-specific) | - | 2,392 |
| 7.15 | 7. Adjustments to base requirements for security systems and equipment | - | -4,941 |
| 7.20 | 8. Funding necessary to maintain fiscal year 2015 service levels due to an anticipated decline in non-appropriated funds | - | 1,000 |
| | **Subtotal, Adjustments to Base to Maintain Current Services** | - | 22,103 |
| | **Total Current Services Appropriation Required** | 72 | 536,078 |

**B. Program Increases**

| Page | | FTEs | Amount |
|------|---|------|--------|
| 7.20 | 9. Phased implementation of the new CSO staffing standards (69 CSOs) | - | 4,557 |
| 7.20 | 10. Court security officer training | - | 780 |
| 7.21 | 11. Judicial Facility Security Program Information Technology Services | - | 975 |
| | **Subtotal, Program Increases** | - | 6,312 |
| | **Total Fiscal Year 2016 Appropriation Required** | 72 | 542,390 |
| | **Total Appropriation Increase, Fiscal Year 2015 to Fiscal Year 2016** | - | 28,415 |

**Financing the Fiscal Year 2016 Request:**

| Page | | FTEs | Amount |
|------|---|------|--------|
| | Total Appropriation Required | 72 | 542,390 |
| 7.22 | Utilization of Judiciary Information Technology Fund (JITF) | - | 2,952 |
| 7.22 | Anticipated carryforward balances from fiscal year 2015 into fiscal year 2016 | - | 10,000 |
| | **Estimated Obligations, Fiscal Year 2016** | 72 | 555,342 |

570

7.4

## COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES
### COURT SECURITY
#### Obligation by Activity ($000)

| Authorization: Permanent: | FY 2014 Actual | FY 2015 Estimate | FY 2016 Request |
|---|---|---|---|
| Court Security - Total Obligations including Encumbered Carryforward | 512,466 | 537,725 | 555,342 |
| Less Encumbered Carryforward | - | (8,911) | - |
| **Court Security - Total Obligations excluding encumbered carryforward (slippage)** | 512,466 | 528,814 | 555,342 |
| Unobligated Balance, start of year | (6,734) | (7,827) | (7,908) |
| Judiciary Information Technology Fund (JITF) | (5,373) | - | - |
| Deposits/Recoveries | - | - | - |
| Unobligated Balance, end of year | 7,827 | 7,908 | 1,036 |
| **Total Direct Obligations** | 508,186 | 524,975 | 552,399 |
| Unobligated Balance, start of year | (23,503) | (13,281) | (10,000) |
| Prior Year's Recoveries | (1,908) | (7,719) | - |
| Unobligated Balance, end of year | 13,281 | 10,000 | - |
| Unobligated Balance, expiring | 3,794 | - | - |
| Transfer from Court of Appeals for the Federal Circuit | (1,200) | - | - |
| Transfer from Court of International Trade | (1,150) | - | - |
| **Available Appropriation** | 497,500 | 513,975 | 542,399 |

## COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES
### COURT SECURITY
#### Obligations by Budget Object Class ($000)

| | | FY 2014 Actual | FY 2015 Estimate | FY 2016 Request |
|---|---|---|---|---|
| 11 | Personnel compensation | 6,310 | 7,567 | 7,750 |
| 12 | Personnel benefits | 1,944 | 2,245 | 2,432 |
| 21 | Travel | 295 | 340 | 346 |
| 22 | Transportation of things | 50 | 52 | 53 |
| 23 | Rent, communications and utilities | - | - | - |
| 23 | Rental payments to GSA | 6,222 | 6,373 | 6,524 |
| | Communications, subsist. & misc. charges | 1,239 | 1,011 | 1,028 |
| 24 | Printing and Reproduction | - | - | - |
| 25 | Contractual Services | - | - | - |
| | CSO Contract | 346,228 | 372,812 | 390,144 |
| | Other Contractual Services | 31,191 | 28,965 | 33,106 |
| | Federal Protective Service Charges | 75,102 | 79,328 | 81,720 |
| 26 | Supplies and materials | 803 | 938 | 954 |
| 31 | Equipment | 37,557 | 29,183 | 31,315 |
| 42 | Indemnities | 175 | - | - |
| 91 | Unfunded Disbursements [1] | 5,350 | - | - |
| | **Total obligations excluding encumbered carryforward (slippage) [2]** | 512,466 | 528,814 | 555,342 |

[1] Deposited into the JITF Fund
[2] JITF obligations are included as follows: $4,279,837 in fiscal year 2014, $3,839,000 in fiscal year 2015 and $3,952,000 in fiscal year 2016.

571

## COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES
### COURT SECURITY

**Relation of Obligations to Outlays**

| | FY 2014 Actual ($000) | FY 2015 Estimate ($000) | FY 2016 Request ($000) | Difference (+) or (-) ($000) |
|---|---|---|---|---|
| Total Obligations incurred, net | 512,466 | 528,814 | 555,342 | 26,528 |
| Obligated balance, start of year | 99,408 | 115,479 | 146,454 | 30,975 |
| Adjustments in expired accounts | (8,836) | - | - | - |
| Obligated balance, end of year | (115,479) | (146,454) | (164,844) | (18,390) |
| **Total Outlays** | 487,559 | 497,839 | 536,952 | 39,113 |
| Less Judiciary Information Technology Fund Obligations | (4,280) | (3,839) | (2,952) | 887 |
| **Net Outlays** | 483,279 | 494,000 | 534,000 | 40,000 |

**Personnel Summary**

| | FY 2014 Actual | FY 2015 Estimate | FY 2016 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total compensable workyears (FTE): | | | | |
| United States Marshals Service | 58 | 72 | 72 | 0 |
| **Total, Court Security** | 58 | 72 | 72 | - |

7.5

## GENERAL STATEMENT AND INFORMATION

The Court Security appropriation was established in 1983 and funds the necessary expenses, not otherwise provided for, incident to the provision of protective guard services, and the procurement, installation, and maintenance of security systems and equipment for United States courthouses and other facilities housing federal court operations. This includes building access control, inspection of mail and packages, directed security patrols, perimeter security, and other similar activities as authorized by section 1010 of the Judicial Improvement and Access to Justice Act (Public Law 100-702).

The Department of Justice's (DOJ) United States Marshals Service (USMS) is responsible for the security of the judiciary (28 USC §§ 564, 566). In that regard, Congress provides the USMS with funding to: secure prisoners; conduct protective investigations on threats against judges and other judiciary personnel; provide protective details when necessary; and provide security for witnesses and high threat trials. The USMS is also responsible for the day-to-day management of the Judicial Facility Security Program (JFSP), which is funded by the judiciary's Court Security appropriation. The JFSP provides for an adequate level of physical security for courthouses nationwide.

The fiscal year 2016 Court Security appropriation request of $542,390,000 provides for the replacement of current security services as well as the first year of a phased implementation of new security staffing standards, additional security training, and increases in information technology (IT) support services.

## Overview of the Judicial Facility Security Program

The JFSP represents a collaborative effort between the judiciary and the DOJ in ensuring the integrity of the judicial process by providing secure facilities in which to conduct judicial business. In 1982, DOJ requested and received a Delegation of Procurement Authority from the General Services Administration (GSA) to contract for private security (known as court security officer (CSO) guard services) and for the installation and maintenance of security systems and equipment for space occupied by the federal judiciary within GSA-controlled facilities.

The judiciary's fiscal year 1983 Court Security appropriation included funding to support this new delegation. The appropriation language provided that funding could be expended directly or transferred to the USMS, which is responsible for administering the JFSP consistent with standards or guidelines agreed to by the Administrative Office of the U.S. Courts' (AO) Director and the Attorney General.

The goals of the JFSP are:

1. ensuring an adequate CSO presence at new, renovated, and existing court facilities;

2. ensuring that effective security screening and/or access control systems are in place for court facilities housing judges, at facilities that house probation and pretrial services offices, and other facilities housing federal court operations; and

3. ensuring timely installation and maintenance of required security systems and equipment at new, renovated, and existing courthouses.

7.6

Security begins at the courthouse perimeter with the use of vehicle barriers and closed circuit surveillance television (CCTV) cameras and recorders. CSOs control access into the courthouse, or judicial areas within multi-tenant federal buildings housing court operations, using security screening equipment. CSOs conduct roving patrols and staff fixed posts within the facility. The use of CSOs and security systems and equipment assists the USMS in protecting the court facility and thus the lives of judges, court staff, jurors, trial participants, and the general public, which helps ensure the effectiveness, viability, and integrity of the federal judicial process.

**Ensuring Adequate Security at Federal Court Facilities**

Federal courthouses are often the most visible symbols of the U.S. Government presence in communities outside of Washington, D.C., and as such, may be considered inviting targets for terrorist attacks. The judicial process compels the attendance of suspected and convicted criminals to its facilities on a daily basis, along with witnesses and jurors. Also, family members of the suspected or convicted criminals, members of the Bar of the Court, the press, court employees, and the public must be able to enter and use the buildings.

Maintaining the proper balance between ensuring an open court system and having secure court facilities is a complex task given the increasing number of threats against the federal judiciary. For example, in recent years there have been shootings inside of, and at, federal court facilities resulting in the death of three CSOs; three federal judges have been assassinated as a direct result of their work as jurists; one federal judge was killed when representing the court during an appearance with a Member of Congress; and a federal judge's husband and mother were murdered at her home as a result of a civil case that the judge handled.

**The Importance of CSOs and Security Systems and Equipment**

CSOs and security systems and equipment are key aspects in providing physical security to the courts. Together they are an integral part of the USMS' security plan to prevent and deter violence that can undermine the judicial process and erode public confidence in the judicial system. CSOs, using security screening systems, detect and intercept weapons, contraband, and other prohibited items that individuals attempt to bring into courthouses. CSOs are also needed to respond to duress situations triggered by electronic alarms and other emergencies. The October 2013 shooting at the federal courthouse in Wheeling, West Virginia, where a CSO and local police officer killed a gunman after he opened fire at the courthouse, underscores the critical role of CSOs in a responsible court security program.

Security systems and equipment play a vital part in maintaining adequate security at court facilities. X-ray machines and walk-through metal detectors help ensure that weapons and other dangerous objects do not enter courthouses. Physical access control systems and perimeter security enhancements prevent dangerous people from entering judiciary space. Video cameras and duress alarms provide critical monitoring and notification capabilities, and maintenance contracts keep the extensive inventory of security equipment operating effectively.

7.7

## Federal Protective Service Charges

By a series of Memoranda of Agreement and/or Memoranda of Understanding, most of the responsibility for security at facilities where the courts are the only or primary tenant, has been delegated to the USMS so that a single entity is responsible for the physical protection of these facilities. In multi-tenant buildings where the courts are not the major tenant, the USMS and the Department of Homeland Security's Federal Protective Service (FPS) share security responsibility. In these instances, the security that FPS provides may include, to varying degrees, entry screening, perimeter patrols, garage access control, and mail and package screening.

There are two types of facility-related security charges imposed by FPS on government facilities, including those occupied by the judiciary: (1) the "basic" security charge estimated in fiscal year 2016 to be $0.74 per rentable square foot of space; and (2) the "building-specific" security charge, which applies to FPS-procured contract guards and/or security systems and equipment provided to a particular building.

The basic security charge is designed to provide FPS with general funding to operate. The building-specific charge is designed to reimburse FPS for FPS-provided site-specific contract guards and security systems and equipment.

As previously requested by Congress, the AO has continued to take action to establish and implement clear and consistent parameters for budgetary decisions related to FPS billings. All courts have been reminded of the continued need to control FPS building-specific charges, and FPS headquarters staff was notified that additional services cannot be provided without an AO certification that funds are available. In April 2006, the AO informed the courts that no additional FPS-provided

guards, equipment, or systems could be acquired without prior authorization. Periodic guidance has been issued since that time to remind the courts of this standing policy.

The judiciary continues to engage in dialogue with FPS officials to reiterate the need for detailed billing information that will allow review and certification that the bills are valid, proper, and correct, in accordance with 28 USC § 613.

## Perimeter Security Pilot Program

The Consolidated Appropriations Act of 2008 (Pub. Law No. 110-161) authorized the USMS, which has the statutory responsibility to provide protection of the judicial process (28 U.S.C. § 564, 566), to establish a perimeter security pilot program at seven primary courthouses. (Section 307, Division D, Title III, Pub. Law No. 110-161.) A primary courthouse is one in which the bulk of the major and judiciary-related offices (i.e., USMS and/or U.S. Attorney's Office) occupy 75 percent or more of the rentable square footage, and there is at least one resident judge and courtroom. The pilot program consolidates the responsibility for perimeter security guarding and security systems and equipment at the pilot sites under the control of the district U.S. Marshal, who is supported by the judiciary-funded and USMS-administered JFSP.

The pilot was designed to address several issues. First, the judiciary's experience to date was that the bifurcated system with two security providers - the FPS and the USMS - providing physical security at many federal courthouses had been unsatisfactory. Second, there had been instances in which FPS-installed surveillance cameras, and associated monitoring, switching, and recording equipment, were not functioning for extended periods of time. Third, the judiciary found vulnerabilities in the FPS-provided security services due to the

lack of national standards for determining how many security guards are needed to provide adequate physical security at federal facilities, including courthouses, and qualifications for FPS guards.

Following enactment of the fiscal year 2008 appropriations bill authorizing the pilot, the judiciary, the USMS, and the FPS worked together on the implementation of the pilot program. The seven pilot sites that were selected by the USMS, in consultation with the AO, were:

1. Everett McKinley Dirksen United States Courthouse/Chicago, Illinois

2. United States Courthouse and Federal Building/Baton Rouge, Louisiana

3. Russell B. Long Federal Building/Baton Rouge, Louisiana

4. Evo A. DeConcini United States Courthouse/Tucson, Arizona

5. Sandra Day O'Connor United States Courthouse/Phoenix, Arizona

6. Theodore Levin United States Courthouse/Detroit, Michigan

7. Daniel Patrick Moynihan United States Courthouse/New York City

The goals of the pilot program were to:

- consolidate under the USMS all responsibility for, and provision of, perimeter and interior security systems;

- provide the judiciary with consistent and reliable perimeter security coverage; and

- ensure that there are no redundant security services (either perimeter guards or equipment/systems) being provided by the FPS and the USMS.

The consensus of opinions expressed by judges, court unit executives, and district U.S. marshals office staff has been supportive of the pilot program, as were the results of the USMS's district management survey. The benefits of the program included improved quality of security services, improved security coverage, unified command and control over courthouse physical security, improved communication, and improved stewardship and monitoring of security equipment.

Since 2009, the judiciary has provided Congress with three reports on the pilot, including recommendations for expanding the pilot to additional courthouses. The Senate Report accompanying the fiscal year 2012 appropriations bill acknowledged receipt of the latest report on the pilot, and stated that although the program is meritorious, further implementation would be feasible only if it could be accomplished in a cost-neutral manner, and encouraged the judiciary to identify any such opportunities.

The judiciary has continued to explore additional sites and to evaluate the cost-effectiveness of expanding the pilot to more locations. The enacted fiscal year 2015 appropriation authorizes the continuation of the pilot at the existing locations.

7.9

576

7.10

**Fiscal Year 2016 Priorities**

The fiscal year 2016 request includes funding for two priorities: (1) base requirements (including CSO contract and USMS personnel costs, and FPS charges) in order to maintain the current level of protection to the courts; and (2) security systems and equipment requirements, including new and renovated court facilities, cyclical replacement of screening equipment, cyclical replacement of hardware and software for access control systems, and perimeter security improvements.

At the request of the court security program, the USMS commissioned a review in September 2011 to validate the CSO staffing standards that were developed in 1994, and the USMS recommended that more CSO positions are necessary to provide adequate security to the courts during business hours. The USMS estimates that 346 additional CSOs, consisting of a net 244 new CSO positions and 102 CSO positions for understaffed districts, are necessary to fully staff the new standards. The revised standards include a crucial exterior/forward watch CSO position at the perimeter at primary courthouses. Given the budgetary constraints, the fiscal year 2016 budget request includes $4.6 million for 69 CSO positions for the phased implementation of the new CSO staffing standards.

The need for adequate security for the judiciary is affected by factors beyond its control, such as the number of trials involving high-threat/high-profile defendants, dangerous drug traffickers, members of militant groups, and criminal enterprises whose crimes are of a violent nature. Attendance at trials by associates of these individuals heightens the need for enhanced security. In addition, in today's economic climate, civil trials involving controversial issues pose security threats

to trial participants, spectators, and the judiciary. Bankruptcy proceedings also have the potential to become volatile when upset business partners or angry creditors become violent toward a judge, debtor, attorney, or other trial participant. Additional resources are necessary to ensure that adequate levels of security are provided at all facilities housing court operations to avoid potentially harmful, or even fatal, consequences.

## Court Security Program Summary

| | FY 2015 Estimate | | | FY 2016 Request | | |
|---|---|---|---|---|---|---|
| | $000 | CSO Positions | FTE | $000 | CSO Positions | FTE |
| Court Security Officers | $ 372,812 | 4,226 | | $ 390,144 | 4,295 | |
| Federal Protective Service Charges | 79,328 | | | 81,720 | | |
| Systems and Equipment | 57,649 | | | 55,343 | | |
| Program Administration | 24,097 | | 72 | 25,183 | | 72 |
| JITF | 3,839 | | | 2,952 | | |
| **Total Obligations** | $ 537,725 | | | $ 555,342 | | |
| *Prior Year Carryforward* | | | | | | |
| Program Slippage (Encumbered) | (8,911) | | | - | | |
| JITF | (3,839) | | | (2,952) | | |
| **Total Direct Obligations** | $ 524,975 | | | $ 552,390 | | |
| Program Savings (Unencumbered) | (11,000) | | | (10,000) | | |
| **Available Appropriation** | $ 513,975 | | | $ 542,390 | | |

7.11

**Justification of Changes**

The fiscal year 2016 request for the Court Security program totals $542,390,000. The request is $28,415,000, or 5.5 percent, above the fiscal year 2015 enacted appropriation level of $513,975,000.

The funding requested for this program will be used to continue to provide an appropriate level of security at existing court facilities and to provide security coverage at new and renovated facilities.

The following sections provide information and justification for each of the adjustments to base and program increases.

**A.   ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES**

**1.   Pay and benefits adjustments**

**a.   Annualization of January 2015 pay adjustment**

**Requested Increase: $26,000**

As a result of the Employment Cost Index (ECI) adjustment, federal pay rates increased by 1.0 percent in January 2015. The requested increase provides for the cost of three months (from October 2015 to December 2015) of the 2015 pay increase in fiscal year 2016.

**b.   Proposed January 2016 pay adjustment**

**Requested Increase: $76,000**

As of January 2015, the Office of Management and Budget (OMB) is projecting that federal pay rates will increase by an average of 1.0 percent beginning on or after January 1, 2016. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2016 (from January 2016 to September 2016).

**c.   Promotions and within-grade increases**

**Requested Increase: $76,000**

The requested increase provides for promotions and within-grade increases for personnel. The AO salary plan as well as the USMS salary plan provides for periodic within-grade increases for staff who receive at least a satisfactory performance rating.

**d.   Health benefits increase**

**Requested Increase: $19,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 3.2 percent in January 2015 and 4.0 percent in January 2016. The requested increase annualizes the 2015 premium increase, and includes a nine-month provision for the anticipated fiscal year 2016 premium increase and other changes.

**e.   FICA increase**

**Requested Increase: $2,000**

Funds are requested to provide for the base adjustment in employer contributions to the Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax. The salary cap for OASDI  increased to $117,000 in January 2014.

and increased to $118,500 in January 2015. The requested amount is needed to pay the agency contribution.

**f. FERS increase**

Requested Increase: $46,000

Funds are requested for a 0.5 percent increase (from 13.2 percent to 13.7 percent) in the agency contribution rate to Federal Employee Retirement System (FERS) plans effective October 1, 2015. The FERS increase is in accordance with revised estimates of the cost of providing benefits by the Board of Actuaries of the Civil Service Retirement and Disability System.

**g. One more compensable day**

Requested Increase: $1,567,000

There is one more compensable day in fiscal year 2016 than in fiscal year 2015. The requested amount increases personnel compensation and benefits as well as CSO costs, associated with one more compensable day.

**2. Annualization of court security officer (CSO) positions (10)**

Requested Increase: $123,000

In fiscal year 2015, partial funding was requested to support 10 new contract CSO positions. Funding required to provide existing court facilities with additional CSO positions, consistent with the CSO staffing formula, is based on projected occupancy dates for new and existing space. This request includes the increase required to fund the full-year cost of the 10 CSO positions.

**3. Fiscal year 2016 CSO contract and wage rate adjustments**

Requested Increase: $11,650,000

A total of $11,650,000 is requested for anticipated increases in the hourly rates and overtime pay for CSO contract services in fiscal year 2016. The request is an average increase of 3.0 percent on a national basis over fiscal year 2015 projected levels.

The minimum hourly wage rates paid by the vendors who are retained by the USMS to provide CSO services are determined by the Department of Labor, and vary around the country based on an annual assessment of the prevailing wage rates paid for occupations similar to the CSO category of service in a specific locality. CSO wages are also adjusted through collective bargaining agreements negotiated between CSO contractors and unions. In accordance with the McNamara O'Hara Service Contract Act, the contract CSOs must be paid, at a minimum, the hourly rates determined by the Department of Labor unless a collective bargaining agreement is in place. The wage adjustment must be paid regardless of any pay freeze imposed on federal workers.

**4. Inflationary increases in charges for contracts, services, supplies, and equipment**

Requested Increase: $108,000

Consistent with guidance from OMB, this request of $108,000 is required to fund inflationary increases of 1.6 percent for

580

operating expenses such as travel, utilities, printing, contractual services, supplies and materials, and furniture and equipment (exclusive of the CSO contracts).

5. **Inflationary increase in GSA space rental costs**

Requested Increase: $77,000

This request represents an inflationary increase and adjustments in the cost of GSA space rental charges for space estimated by GSA to be used by the CSOs and the judiciary-funded USMS personnel.

6. **Changes in Federal Protective Service security charges**

Requested Increase: $2,392,000

The fiscal year 2016 security cost estimate of $81.7 million for FPS security services consists of basic security ($31.5 million) and building-specific security costs ($50.2 million). This represents an increase of $2.4 million from the fiscal year 2015 estimate of $79.3 million. This estimate is based on anticipated billings provided by FPS. For fiscal year 2016, there are no increases to basic security charges. The total fiscal year 2016 request for building-specific security charges is $50.2 million, which is $2.4 million above the fiscal year 2015 funding level of $47.8 million.

Building-specific charges are based on FPS-provided countermeasures for a specific building and are charged to all federal tenants in the building in direct proportion to each customer agency's percentage of federal occupancy. Each building is supposed to have a facility security committee (FSC). The FSC consults with and seeks recommendations from FPS as to new or revised countermeasures. A tenant

agency cannot avoid a building-specific charge if a majority of FSC members endorse a particular countermeasure. FPS is responsible for maintaining records of these operating expenditures on a building-by-building basis. These expenses are based on FPS projections and may be adjusted as a result of the current, ongoing review of FPS charges by the judiciary.

Building-specific expenses include:

• Facility contract guards, both fixed post and roving, assigned to a specific building;

• Purchase, installation and maintenance of perimeter security devices such as cameras, alarms, motion detectors, and other physical security features; and

• Pro-rata share of administrative costs.

(Note: In courthouse facilities, the FPS contract guards and security device expenses listed above are usually limited to the perimeter of the building because security for judicial space is provided by the USMS.)

A significant deficiency of the FPS method of recommending countermeasures to FSCs is that it is most often done out of the normal budget cycle, which then causes the tenant agencies to forgo funding previously approved measures in order to fund a FPS "mandatory countermeasure." Also, the overhead charges levied by FPS on tenant agencies are considerably higher than the overhead costs generated by the judiciary-funded and USMS-administered JFSP.

7.14

7. **Adjustments to base for security systems and equipment**

Requested Increases:    $6,980,000
Reductions:             ($2,039,000)
Net Increase:           $4,941,000

The requested amount reflects a net increase of $4.9 million in the court security systems and equipment acquisition plan. The total increase of $7.0 million is offset by reductions of $2.0 million. The chart on page 7.19 provides further information regarding the judiciary's security systems and equipment funding requirements. Increases are requested as follows:

• GSA Installations/Alterations (Requested Increase: $3,271,000 to $4,738,000 for fiscal year 2016)

GSA designs, procures, and installs security system conduit; provides dedicated 110 volt AC power circuits; procures and installs ballistic and break-resistant glass at public intake counters; and provides emergency lighting in courtrooms and chambers and other security construction projects required to protect federal court facilities adequately. This program also funds unanticipated construction items. The increase is primarily driven by cost increases associated with installing more secure lobby screening stations, particularly as a security precaution against active shooters, as well as significantly increased GSA cost projections for overtime utilities.

• Cyclical Replacement of Hardware & Software for Access Control Systems (Requested Increase: $1,694,000 to $11,216,000 for fiscal year 2016)

This initiative consists of upgrading and/or replacing physical access control systems (PACS) nationwide to ensure each facility has a working PACS that is supported by a cyclical replacement program. PACS are designed to control entry to facilities to authorized personnel and to specified interior spaces by judges, authorized federal employees, and contractors. As access control system software and hardware age beyond a reasonable life expectancy, the probability of system failure increases significantly. Many of the current PACS systems are aging and fragile, and some systems have experienced major failures. The increase is primarily due to the need to address PACS upgrades and replacements in vulnerable facilities.

• Nationwide Maintenance Contract for Existing Security Systems and Equipment (Requested Increase: $1,028,000 to $14,671,000 for fiscal year 2016)

The national contract for security systems installation includes a provision for the maintenance of the inventory of security systems located in all facilities nationwide, such as the repair of closed circuit television (CCTV) systems, access control systems, alarm systems, and other command and control center components. The contract also includes a provision for the off-site monitoring of alarms for buildings without a 24-hour CSO presence and a provision for repairs and preventive maintenance for the nationwide inventory of x-ray machines. The increase is due to a number of factors, including new security systems and

- CSO Radios, Accessories, Repairs and Over-the-Air Re-key (Requested Increase: $50,000 to $1,281,000 for fiscal year 2016)

This request supports radios for new CSO positions based on planned occupancy dates for new and renovated court facilities and changes in CSO staffing requirements, cyclical replacement of radios, installation and maintenance of CSO radio systems, and funding for accessories and repairs. It also includes over-the-air re-key systems to provide secure cryptographic protection to ensure the integrity of the information transmitted on CSO radios. Various means are available for the dissemination of the security keys necessary for communications including the use of electronic hand-held key loaders and by means of over-the-air re-key. The increase is primarily due to the costs of replacing CSO radios nearing the end-of-life for manufacturer support.

The net decrease in funding for security systems and equipment below the fiscal year 2015 funded base is due to non-recurring requirements and an effort to minimize the request by deferring some needs. These decreases are detailed below:

- Security Systems for New and Renovated Facilities (Requested Decrease: $1,000,000 to $800,000 for fiscal year 2016)

The typical security system installed in new and renovated facilities includes duress and intruder alarm equipment, CCTV surveillance cameras, card-based access control systems, and command and control centers. The U.S. Courts Design Guide outlines the types of security equipment that should be installed in court facilities. The

equipment installations in fiscal years 2015 and 2016 that will be added to the maintenance contract, increased costs for the alarm monitoring contract, and a large increase in the number of x-ray machines covered under the preventative maintenance contract.

- Cyclical Replacement of Screening Equipment (Requested Increase: $806,000 to $1,390,000 for fiscal year 2016)

The cyclical replacement program ensures that walk-through metal detector and x-ray screening systems are replaced when they become technologically obsolete or when maintenance costs exceed a pre-determined threshold. The increase is primarily due to the need to cyclically replace 40 x-ray machines in fiscal year 2016 versus the 14 x-ray machines planned for fiscal year 2015.

- Nationwide Contract for Vehicle Barrier Maintenance (Requested Increase: $131,000 to $1,107,000 for fiscal year 2016)

The vehicle barrier maintenance contract provides a nationwide preventative maintenance and repair program for vehicle barriers installed by the USMS. The contract requirements include 24/7 technical support, training, emergency response capability, preventive maintenance, and repairs. The maintenance contract increases the reliability of vehicle barriers and reduces the frequency of breakdowns. The increase is primarily due to additional vehicle barriers added to the maintenance contract.

7.16

decrease is due to only one new courthouse requiring new security systems funding in fiscal year 2016 - the new federal courthouse project in Saipan, Northern Mariana Islands.

- Additional and Replacement Equipment (Requested Decrease: $606,000 to $12,901,000 for fiscal year 2016)

This program provides for general enhancements or upgrades to CCTV surveillance systems, access control systems, alarm systems, and command and control centers in newly occupied space in existing court facilities and replaces outdated equipment in currently occupied space. All equipment requests are evaluated against standards specified by the U.S. Courts Design Guide and the districts' unique site specific security requirement for individual facilities. The decrease is primarily due to fewer projected requirements for additional and replacement equipment in fiscal year 2016.

- Perimeter Security Improvements (Requested Decrease: $212,000 to $5,178,000 for fiscal year 2016)

Perimeter security for court facilities is a first line of defense and is critical to the protection of judicial facilities, judges, court employees, and the general public. Perimeter security improvements consist of the installation of guard booths and vehicle barriers, such as planters and hydraulic bollards, to help maintain a secure setback for the courthouse. These security enhancements allow the USMS to screen vehicle traffic adequately, provide pedestrian separation from the court facility, obscure the public's view of judicial officers, and limit the potential damage and loss of life from improvised explosive devices. In addition, the

installation of perimeter CCTV surveillance systems and intrusion detection systems are covered in this category. The decrease is primarily due to fewer perimeter security projects planned for fiscal year 2016.

- Equipment for Probation, Pretrial Services and Federal Public Defender Services Offices: (Requested Decrease: $160,000 to $966,000 for fiscal year 2016)

Typically, offices located in facilities where screening for weapons is not conducted at the entrance receive an access control system that consists of an electric door strike, and a door release mechanism. Offices also receive bullet-resistant material and duress alarms at the public counters. Each probation, pretrial services, and federal public defender office receives a duress alarm button in areas where clients are interviewed – usually an office desk. Under certain circumstances, intruder detection alarms and a CCTV camera and monitor are added.

Per the U.S. Courts Design Guide, offices that are located in facilities where weapons screening is conducted at the entrance are entitled to the same security devices as noted above with one exception – the window at the public counter is constructed of break-resistant material, instead of bullet-resistant material. This initiative provides either new equipment or upgrades to existing systems for probation, pretrial services, and federal defender offices. The decrease is primarily due to fewer projected requirements for new and replacement equipment at probation, pretrial services, and federal public defender services offices in fiscal year 2016.

7.17

584

7.18

- Screening Equipment for New Buildings (Requested Decrease: $61,000 to $145,000 for fiscal year 2016)

  Equipment will outfit the public lobbies and mail screening loading docks of new courthouses about to open, or extensively renovated courthouses about to re-open. The decrease is primarily due to fewer new courthouse construction and/or renovation projects. Screening equipment is planned for new courthouse construction in Mobile, Alabama and Saipan, Northern Mariana Islands.

**Court Security Appropriation**
**Security Systems & Equipment Funding Summary**
**Fiscal Years 2015 and 2016**

| Category | FY 2015 Estimate $000 | Less FY 2015 Encumbered Carryforward $000 | FY 2015 Estimate Excluding Encumbered Carryforward $000 | FY 2016 Request $000 | Difference FY 2015 Estimate Excluding Encumbered Carryforward vs. FY 2016 Request $000 |
|---|---|---|---|---|---|
| Other Additional and Replacement Equipment[1] | 11,507 | | 11,507 | 12,901 | 1,006 |
| Cyclical Replacement of Access Control Systems | 9,522 | | 9,522 | 11,216 | 1,694 |
| Cyclical Replacement of X-Ray Screening Equipment and Walk-Thru Metal Detectors | 584 | | 584 | 1,390 | 806 |
| Screening Equipment for New Buildings | 206 | | 206 | 145 | (61) |
| C&O Badges, Accessories, Repairs and On-the-Air Re-key | 1,231 | | 1,231 | 1,281 | 50 |
| Perimeter Security Improvements[1] | 5,590 | | 5,590 | 5,178 | (212) |
| Nationwide Maintenance Contract for Existing Security Systems and Equipment | 13,643 | | 13,643 | 14,671 | 1,028 |
| Security Systems for New and Renovated Facilities | 9,000 | (7,200) | 1,800 | 800 | (1,000) |
| ETD Consumables and Supplies | - | | - | - | - |
| GSA Installation/Alterations[1] | 1,467 | | 1,467 | 1,738 | 3,231 |
| Equipment for Probation, Pretrial Services, and Defender Services | 2,135 | (999) | 1,136 | 966 | (169) |
| Nationwide Vehicle Barrier Maintenance Contract | 976 | | 976 | 1,107 | (5) |
| Total Increases, Adjustments to Base | | | | | (6,980) |
| Non-Recurring Reductions | | | | | (12,076) |
| **Total** | **57,629** | **(8,197)** | **49,432** | **54,393** | **4,961** |

[1] Amounts in these categories (example of other equipment: access control, alarm systems, command and control center, etc.) represent the requests submitted by individual districts. All requests are evaluated by the U.S. Marshals Service against standards specified by the U.S. Courts Design Guide, the USMS Requirements and Specifications for Special Purpose and Support Space Manual and the districts' unique site-specific security requirements for individual facilities. The requests are denied if they are not consistent with the applicable standards.

8. **Funding needed to maintain fiscal year 2015 service levels**

**Requested Increase: $1,000,000**

The fiscal year 2015 financial plan was financed in part by $11.0 million in carryforward balances from fiscal year 2014 and prior years. In fiscal year 2016, the judiciary expects $10.0 million in non-appropriated funds to be available, a decrease of $1.0 million from fiscal year 2015. Therefore, an increase of $1.0 million is requested to maintain the same level of service as provided in fiscal year 2015.

B. PROGRAM INCREASES

9. **Phased implementation of the new CSO staffing standards (69 CSOs)**

**Requested Increase: $4,557,000**

CSOs are allocated to judicial districts based on a CSO staffing formula that was developed by the USMS in 1994. In September 2011, the Director of the USMS commissioned a review to validate the CSO staffing standards. The purpose of this review was to determine if today's security needs have changed since the CSO staffing formula was first developed.

As a result of the review, the USMS recommended changes to the CSO standards. The revised standards strengthen security at court facilities by adding CSO resources at the main entrance and exterior of courthouses, as well as additional control room and garage/loading dock support at large facilities, and by eliminating CSO credits for rarely used posts. The USMS estimates that a net 244 new CSO positions and 102 CSOs for understaffed districts for a total of 346 additional CSOs are necessary to fully staff to the new standards. This includes a crucial exterior/forward watch CSO position at the perimeter at primary courthouses. The annual cost of these additional 346 CSO positions is estimated at $32 million.

Given the budgetary constraints, the USMS recommended a phased, multi-year implementation of the new CSO staffing standards over five years. This multi-year effort would include 69 CSO positions in fiscal years 2016, 2017, 2018, and 2019, and an additional 70 CSO positions in fiscal year 2020.

For fiscal year 2016, the judiciary requests $4.6 million for the phased implementation of the new CSO staffing standards. Of this amount, $3.2 million is for 69 new CSO positions, $1.0 million is for additional security systems and equipment to mitigate the elimination of some CSO posts under the prior CSO staffing standards, and $0.4 million is program administration-related costs for hiring the new CSOs.

10. **CSO Training**

**Requested Increase: $780,000**

CSO Phase I Orientation is conducted in the CSOs' respective districts. Phase II Orientation is in-depth training provided to new CSOs at the Federal Law Enforcement Training Center (FLETC) in Glynco, GA. The judiciary requests $180,000 to increase the CSO Phase II Orientation class size from 24 to 30 students per class for 16 training classes annually for a total annual increase of 96 CSOs, and $600,000 to increase the CSO Phase II Orientation from three to five training days.

length of Phase II Orientation limits time spent developing screening proficiency and prevents incorporating active shooter training and scenario-based exercises. The proposed extension in training from three to five days would allow for a more appropriate level of training on the current curriculum, as well as the addition of courses to ensure a properly trained CSO workforce. Planned new course topics include active shooter, security at loading docks, occupant emergency plans, courtroom decorum, performance violations, and a testing review.

Without the requested funding, CSOs may receive insufficient training on security screening equipment, and the additional planned new course topics (such as active shooter, security at loading docks, occupant emergency plans, courtroom decorum, performance violations, and a testing review) will not be taught during Phase II Orientation.

11. Judicial Facility Security Program (JFSP) Information Technology (IT) Services

Requested Increase: $975,000

The judiciary requests funds to pay for IT support services and resources from the USMS headquarters, which have not been reimbursed previously by the judiciary. The increase for JFSP IT services to the JFSP base in fiscal year 2016 is estimated at $975,000 and would be adjusted going forward based on inflation to minimize any unexpected IT cost exposure.

The USMS conducted an assessment and determined that most of the IT services provided across the agency were funded by the USMS Salaries and Expenses account, and only in a few instances was the USMS reimbursed from other appropriations for the IT services and support provided. The USMS

• Increase Class Size (Requested Increase: $180,000)

CSO Phase II Orientation training classes are currently funded for 384 students each year. There are currently not enough Phase II Orientation class spots to accommodate all the CSO new hires each year. In fiscal year 2014, approximately 500 new CSOs were hired into the program.

The increase in class size will allow the USMS to train 480 CSOs annually, 96 above the current class size. In addition, the larger class size will reduce the current average wait time from 120 to 90 days for CSOs to attend training. Districts are currently limited in their ability to schedule new CSOs since CSOs are not allowed to work screening posts without Phase II training. The shorter wait time to attend training will provide flexibility to districts much sooner. If space permits, it will also allow the USMS to provide Phase II Orientation re-training for CSOs who previously attended Phase II training over a decade ago.

Without the requested funding, newly hired CSOs will be given Phase I, in-district training; however, there will be longer wait times for CSOs to attend Phase II Orientation training. Without the Phase II Orientation, CSOs may not be able to staff the critical entry screening posts.

• Increase Training Days (Requested Increase: $600,000)

The current CSO Phase II Orientation training curriculum consists of three days of instruction, both in classroom and lab settings, on each type of x-ray and walk-through metal detector screening equipment. Hands-on, scenario-based training is critical to reinforce the skills required to properly use screening equipment, detect possible security breaches, and address potential physical threats within court facilities. The current

7.22

developed a cost model to equitably distribute IT services costs to other appropriations, primarily based on the percentage of on-board staff and contractors funded by each appropriation. For most costs, the Court Security share is slightly below 1 percent of the total USMS IT costs. Degradation in the level of IT services and support in the court security program could potentially occur if the request is not approved.

## FINANCING THE FISCAL YEAR 2016 REQUEST

## UTILIZATION OF JUDICIARY INFORMATION TECHNOLOGY FUND (JITF)

**Estimated Obligations:  $2,952,000**

At the beginning of fiscal year 2016, the Court Security office anticipates that $3,988,000 will be available in carryforward balances in the JITF.  Of this amount, the Administrative Office is planning to use $2,952,000 for the facility access card (FAC) project requirements in fiscal year 2016.  The FAC project is the judiciary's multi-year effort to meet the identification requirements of HSPD-12.  This funding will support the costs of implementing the FAC project, including costs for identification cards, card projection stations, and security contractor support.

## ANTICIPATED CARRYFOWARD BALANCES FROM FISCAL YEAR 2015 INTO FISCAL YEAR 2016

**Estimated Funds Available:  $10,000,000**

The judiciary projects $10,000,000 will be available through anticipated savings to carry forward from fiscal year 2015 into fiscal year 2016 and offset the fiscal year 2016 appropriation request for the Court Security program.  The judiciary will advise the appropriations subcommittee staffs of changes to this estimate.

8.1

# ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS
*Salaries and Expenses*
## SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | |
|---|---|
| Fiscal Year 2015 Enacted Appropriation | $84,399,000 |
| Fiscal Year 2016 Appropriation Request | $87,590,000 |
| Requested Increase from Fiscal Year 2015 Appropriation | $3,191,000 |

## APPROPRIATION LANGUAGE

## ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS

## SALARIES AND EXPENSES

For necessary expenses of the Administrative Office of the United States Courts as authorized by law, including travel as authorized by 31 U.S.C. 1345, hire of a passenger motor vehicle as authorized by 31 U.S.C. 1343(b), advertising and rent in the District of Columbia and elsewhere, [$84,399,000]$87,590,000, of which not to exceed $8,500 is authorized for official reception and representation expenses.

590

8.2

## SUMMARY OF REQUEST
## ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS
### FISCAL YEAR 2016
#### (Dollar amounts in thousands)

| Page | | FTEs | Amount |
|---|---|---|---|
| | **Fiscal Year 2016 Resource Requirements:** | | |
| | Fiscal Year 2015 Obligations............................................... | 1,087 | $188,880 |
| | Estimated fiscal year 2015 fee collections.............................. | - | (10,198) |
| | Fee carryfoward from fiscal year 2014 into fiscal year 2015......... | - | (7,532) |
| | Carryfoward from Judiciary Information Technology Fund........... | - | (2,088) |
| | Reimbursable Programs .................................................... | (466) | (84,663) |
| | **Fiscal Year 2015 Enacted Appropriation**............................. | 621 | $84,399 |
| | | | |
| | **Adjustments to Base to Maintain Current Services:** | | |
| | **A. Personnel** | | |
| | Pay and benefit adjustments | | |
| 8.11 | 1. Annualization of January 2015 pay adjustment (1.0% for three months)...... | - | 217 |
| 8.11 | 2. Proposed January 2016 pay adjustment (1.0% for nine months)............... | - | 666 |
| 8.11 | 3. Promotions and within-grade increases................................... | - | 672 |
| 8.11 | 4. Health benefits increase ................................................ | - | 175 |
| 8.11 | 5. FICA increase........................................................... | - | 75 |
| 8.12 | 6. FERS increase........................................................... | - | 402 |
| 8.12 | 7. One more compensable day.............................................. | - | 368 |

591

8.3

| Page | | FTEs | Amount |
|---|---|---|---|
| | **B. Other Adjustments** | | |
| 8.12 | 8. General inflationary adjustments........................................................... | - | 105 |
| 8.12 | 9. Funding necessary to maintain fiscal year 2015 current services levels due to an anticipated decline in non-appropriated sources of funding............................................. | - | 511 |
| | Subtotal, Adjustments to Base to Maintain Current Services ................................ | - | 3,191 |
| | **Total Current Services Appropriation Required** .......................................... | **621** | **87,590** |
| | | | |
| | **Total Fiscal Year 2016 Appropriation Required** ......................................... | **621** | **87,590** |
| | Total Appropriation Increase, Fiscal Year 2015 to Fiscal Year 2016 ....................... | - | 3,191 |
| | | | |
| | **Financing the Fiscal Year 2016 Request:** | **FTEs** | **Amount** |
| | Total Appropriation Required.............................................................. | 621 | 87,590 |
| 8.13 | Estimated fiscal year 2016 fee collections............................................... | - | 10,114 |
| 8.13 | Estimated fee carryforward from fiscal year 2015 into fiscal year 2016.................... | - | 7,105 |
| 8.13 | Reimbursable programs .................................................................... | 466 | 85,992 |
| | **Estimated Obligations, Fiscal Year 2016** .............................................. | **1,087** | **190,801** |

592

8.4

## ADMINISTRATIVE OFFICE
### Salaries and Expenses
### Obligations by Activity ($000)

| Activity | Fiscal Year 2014 Actual Total Obligations | Fiscal Year 2015 Estimate Total Obligations | Fiscal Year 2016 Request Total Obligations |
|---|---|---|---|
| Program Direction and Policy | | | |
| Formulation | 14,695 | 16,580 | 16,916 |
| Program Services | 39,985 | 47,270 | 48,285 |
| Administrative Services 1/ | 83,786 | 91,522 | 93,486 |
| Technology Services | 31,094 | 33,508 | 32,094 |
| **Total Obligations** | **169,559** | **188,880** | **190,801** |
| | | | |
| Offsetting Collections | | | |
| Federal Funds | (14,267) | (17,730) | (17,219) |
| Information Technology Fund | (643) | (2,088) | - |
| Reimbursable Programs | (73,449) | (84,663) | (85,992) |
| **Available Appropriation** | **$81,200** | **$84,399** | **$87,590** |

1/ Includes $42,568,000 in fiscal year 2015 for agency-wide employee benefits, lump sum leave, and other agency-wide costs.

| Activity | Fiscal Year 2014 Actual Total Obligations | Fiscal Year 2015 Estimate Total Obligations | Fiscal Year 2016 Request Total Obligations |
|---|---|---|---|
| **Total Obligations** | **169,559** | **188,880** | **190,801** |
| | | | |
| Judiciary Information Technology | (1,592) | (2,088) | - |
| New Deposit | (1,139) | - | - |
| Unobligated Balance, End of Year | 2,088 | - | |
| Reimbursable Programs | | | |
| *Salaries and Expenses* | (67,937) | (76,755) | (79,731) |
| *Defender Services* | (4,241) | (6,482) | (4,796) |
| *Court Security* | (1,271) | (1,426) | (1,465) |
| **Total Direct Obligations** | **95,467** | **102,129** | **104,809** |

593

## ADMINISTRATIVE OFFICE
### Salaries and Expenses
### Obligations by Budget Object Class ($000)

| Description | Fiscal Year 2014 Actual Total Obligations | Fiscal Year 2015 Estimate Total Obligations | Fiscal Year 2016 Request Total Obligations |
|---|---|---|---|
| 1100 Personnel compensation | 121,194 | 134,648 | 138,004 |
| 1200 Personnel benefits | 34,233 | 38,477 | 39,625 |
| 1300 Benefits for former personnel | 594 | 24 | - |
| 2100 Travel | 1,062 | 1,853 | 1,588 |
| 2200 Transportation of things | 146 | 184 | 189 |
| 2330 Communications, utilities, & misc | 623 | 789 | 810 |
| 2400 Printing and reproduction | 131 | 284 | 271 |
| 2500 Other services | 7,110 | 7,969 | 7,702 |
| 2600 Supplies and materials | 375 | 753 | 773 |
| 3100 Equipment | 2,953 | 3,900 | 1,839 |
| 9100 Undefined Disbursements [1] | 1,139 | - | |
| Total [2] | 169,559 | 188,880 | 190,801 |
| Less: Reimbursable Funding | (73,449) | (84,663) | (85,992) |
| Less: JITF | (643) | (2,088) | - |
| Total Direct | 95,467 | 102,129 | 104,809 |

1/ Deposited into JITF fund.

2/Includes JITF obligations of $643,000 in fiscal year 2014 and $2,088,000 in fiscal year 2015.

8.5

8.6

### ADMINISTRATIVE OFFICE
### Salaries and Expenses
### Full-time Equivalents by Activity

| Activity | Fiscal Year 2014 Actual | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request |
|---|---|---|---|
| Program Direction and Policy Formulation | 109 | 116 | 116 |
| Program Services | 309 | 350 | 350 |
| Administrative Services | 369 | 395 | 395 |
| Technology Services | 213 | 226 | 226 |
| **Total, Full Time Equivalents** | **1,000** | **1,087** | **1,087** |
| Less: Reimbursable Positions | (432) | (466) | (466) |
| *Salaries and Expenses* | *400* | *432* | *431* |
| *Defender Services* | *25* | *27* | *28* |
| *Court Security* | *7* | *7* | *7* |
| **Total, Direct Full Time Equivalents** | **568** | **621** | **621** |

595

8.7

**ADMINISTRATIVE OFFICE**
**Salaries and Expenses**
**Relation of Obligations to Outlays ($000)**

|  | FY 2014 Actual | FY 2015 Estimate | FY 2016 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total Obligations | 169,559 | 188,880 | 190,801 | 1,921 |
| Obligated Balance, start of year | 7,811 | 8,009 | 10,498 | 2,489 |
| Obligated Balance, end of year | (8,009) | (10,498) | (10,098) | 400 |
| Change in uncollected customer payments | (3,476) | (2,910) | 0 | 2,910 |
| **Total Outlays** | **165,885** | **183,481** | **191,201** | **7,720** |
| | | | | |
| Less Offsetting Collections from: | | | | |
| Fee Collections (Federal Sources) | (14,267) | (17,730) | (17,219) | 511 |
| Judiciary Information Technology Fund | (643) | (2,088) | 0 | 2,088 |
| Reimbursable Programs | (73,449) | (84,663) | (85,992) | (1,329) |
| | | | | |
| **Net Outlays** | **77,526** | **79,000** | **87,990** | **8,990** |

## GENERAL STATEMENT AND INFORMATION

The fiscal year 2016 request of $87.6 million for the Administrative Office account will support staff and operating expenses at the current services level.

This appropriation is for the necessary expenses of the Administrative Office of the United States Courts (AO), pursuant to 28 U.S.C. 601-613. Created by an Act of Congress in 1939, the AO is the central support entity for the judicial branch. It serves the federal judiciary in carrying out its constitutional mission to provide equal justice under the law.

The AO provides administrative, legal, financial, management, program, security, and information technology services to the federal courts. It provides support and staff counsel to the Judicial Conference of the United States and its committees, and implements Judicial Conference policies as well as applicable federal statutes and regulations. The AO is the focal point for communication and coordination within the judiciary and with Congress, the Executive Branch, and the public on behalf of the judiciary. The agency's lawyers, public administrators, accountants, systems engineers, analysts, architects, statisticians, security experts, and other staff provide professional services to meet the needs of judges and staff working in the federal courts nationwide. These include:

▲ performing central payroll, personnel, accounting, and procurement functions;

▲ developing and executing the judiciary's budget and guiding local court budget execution;

▲ collecting and analyzing statistics on court workload;

▲ auditing court financial operations;

▲ monitoring and reviewing program performance and use of resources;

▲ developing and supporting automated systems and technologies used throughout the courts;

▲ coordinating construction and management of court facilities with the General Services Administration (GSA); monitoring U.S. Marshals Service (USMS) implementation of the judicial facility security program;

▲ defining court resource needs through caseload forecasts and work measurement analyses;

▲ providing program leadership and support for circuit executives, clerks of court, probation and pretrial services officers, federal defenders, and other managers; and

▲ developing and conducting education and training programs focused on improving court administration and operations.

A table of selected workload indicators for the AO follows:

**Table 8.1 Selected AO Fiscal Year 2015 Workload Indicators**

| Indicators | Number |
|---|---|
| Active and senior judges (Article III, bankruptcy, magistrate, and Court of Federal Claims) | 2,352 |
| Court staff (Appellate, district, bankruptcy, probation, pretrial services, and defenders) | 28,607 |
| Court units (Appellate, district, bankruptcy, probation and pretrial services) | 363 |
| Federal defender organizations (Districts) | 91 |
| Court facilities (GSA- and U.S. Postal Service-owned federal buildings and leased facilities) | 708 |
| Judicial Conference committees | 25 |
| Court appropriations and fees (Salaries and Expenses, Defender Services, Fees of Jurors, Court Security, and Judicial Retirement Funds) | $7.6 billion |

8.9

The AO's strategic plan, in effect since 2009, emphasizes strengthening delivery of core services to and partnership with the courts; promoting effective communication within and on behalf of the judicial branch; streamlining operations to accomplish its mission more efficiently with fewer resources; and fostering a highly capable, productive workforce. During 2014, following sequestration and recognizing the prospect of declining resources in future years, cost containment continued as a major focus of the AO.

### Restructuring the Administrative Office

The AO implemented a major internal restructuring effective October 1, 2013, in an effort to make programs and services more effective while reducing operating costs. The reorganization was designed to eliminate redundancies and simplify the agency's structure. By co-locating development of all national information technology applications in a single department and all administrative systems in another, the AO expects to reduce overall costs and create more consistent architecture for judiciary applications. Similarly, consolidating all judges programs and court unit programs in a single department has created administrative, communication, and service efficiencies.

### AO Support of Judiciary Efforts to Contain Costs and Limit Appropriations Requirements

Cost containment continues to be a primary focus of the judiciary, including the Judicial Conference and its committees. AO staff supporting the Judicial Conference and its committees are heavily involved in these efforts. Many efforts initially discussed at a September 2011 summit with Judicial Conference committee chairs and members of the Budget and Executive Committees are actively under review or have been implemented. The Budget Committee strongly believes that budget constraints, as exemplified by the flat non-defense discretionary spending caps for fiscal years 2015 and 2016, necessitate that cost containment remains a top priority for the judiciary. The Budget Committee also recognizes that it is increasingly difficult for Judicial Conference committees to develop and implement new cost-containment initiatives, and noted the successful use of incentives to assist courts with achieving space reduction targets established by the Judicial Conference as part of the most recent cost-containment measures.

Accordingly, in July 2014, the Budget Committee tasked the AO to work through its advisory structure to identify additional possible incentives to facilitate cost-containment initiatives for consideration by the appropriate Judicial Conference committees. Advisory councils on Budget and Finance, Human Resources, Information Technology, and Space and Security, as well as advisory groups representing district and bankruptcy clerks, appellate/circuit unit executives, probation/pretrial services chiefs, and bankruptcy judges participated in this process during the fall of 2014, and their input is under consideration.

The *Courts of Appeals, District Courts, and Other Judicial Services, Salaries and Expenses* Section 4 provides a thorough discussion on efforts to contain costs in the courts.

## Support to the Courts

The AO supports a number of key national initiatives in the federal courts to improve the delivery of justice, increase efficiency, and reduce costs. During 2014, these efforts included:

- initial implementation of the Next Generation Case Management/Electronic Case Files system (NextGen) in the circuit courts of appeals;

- functional and security testing and deployment of the automated Criminal Justice Act voucher processing and management system for use by the courts;

- piloting of Debtor Electronic Bankruptcy Noticing to enable debtors to receive court notices and orders by email for faster delivery and to reduce judiciary noticing costs;

- working with bankruptcy courts to utilize Automatic Docketing Interface software to automate many docketing functions typically performed by staff;

- upgrading the Integrated Voice Response System for courts to provide updated information to jurors by phone;

- replacement of the personnel projection system used by the judiciary to manage compensation in a decentralized environment;

- completion of programming changes to the upgraded Judiciary Integrated Financial Management System to enable court-wide implementation to begin with the courts of appeals in fiscal year 2015;

- initial development of a web-based Judiciary Electronic Travel System to automate manual processes and add full audit capability and improved internal controls for travel

authorizations and payments (deployment of this system will begin in fiscal year 2015);

- partnering with the courts in using smart phones and tablets for local production of low-cost educational videos;

- completion and approval of updated staffing formulas for appellate/circuit court units, and bankruptcy administrator offices, based on analysis of work diary data collected from 100 percent of the offices, and start of development of similar formulas using even more detailed data collection techniques for federal defender offices and probation and pretrial services offices to be completed in 2015;

- expanding court utilization of the national phone system to 75 percent of the judiciary's telephone devices, reducing service and equipment costs to local courts; and

- centralizing all judiciary primary email servers, reducing hardware costs and relieving courts of hardware maintenance responsibilities.

## JUSTIFICATION OF CHANGES

The Administrative Office appropriation request for fiscal year 2016 totals $87,590,000. This represents an increase of $3,191,000 or 3.8 percent over the enacted fiscal year 2015 appropriation of $84,399,000. The fiscal year 2016 budget request includes funds needed to maintain current services.

**ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES**

**Requested Increase: $3,191,000**

Adjustments to base include funding for salaries and benefits increases to support the fiscal year 2016 current services level. Also included are increased costs for recurring requirements, such as travel, communications, service agreements, and supplies.

**A.    PERSONNEL**

*Pay and Benefit Adjustments*

1.    **Annualization of January 2015 pay adjustment**

**Requested Increase:  $217,000**

As a result of the Employment Cost Index (ECI) adjustment, federal pay rates increased by 1.0 percent in January 2015. The requested increase provides for the cost of three months (from October 2015 to December 2015) of the 2015 pay increase in fiscal year 2016.

2.    **Proposed January 2016 pay adjustment**

**Requested Increase: $666,000**

As of January 2015, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.0 percent beginning on or after January 1, 2016.  The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2016 (from January 2016 to September 2016).

3.    **Promotions and within-grade increases**

**Requested Increase:  $672,000**

The requested increase provides for promotions and step increases for AO personnel to recognize outstanding work and promote staff development, thereby fostering the AO's ability to recruit and retain a highly professional and capable workforce.

4.    **Health benefits increase**

**Requested Increase:  $175,000**

Based on the information from the Office of Personnel Management, health benefit premium contributions are projected to increase by an average of 3.2 percent in January 2015.  The requested increase annualizes the 2015 premium increase, and includes a nine-month provision for an estimated 4.0 percent increase anticipated for fiscal year 2016.

5.    **FICA increase**

**Requested Increase: $75,000**

Funds are requested to provide for the base adjustment in employer contributions to the Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax.  The salary cap for OASDI increased to $117,000 in January 2014, and increased to $118,500 in January 2015.  The requested amount is needed to pay the agency contribution.

6.    **FERS Increase**

**Requested Increase: $402,000**

Funds are requested for a 0.5 percent increase (from 13.2 percent to 13.7 percent) in the agency contribution rate to Federal Employee Retirement System (FERS) plans effective October 1, 2015. The FERS increase is in accordance with revised estimates of the cost of providing benefits by the Board of Actuaries of the Civil Service Retirement and Disability System.

7.    **One more compensable day**

**Requested Increase: $368,000**

There is one more compensable day in fiscal year 2016 than in fiscal year 2015. The requested increase funds personnel compensation and benefits associated with one more compensable day.

B.    **OTHER ADJUSTMENTS**

8.    **General Inflationary Adjustments**

**Requested Increase: $105,000**

Consistent with guidance from the Office of Management and Budget, this request is required to fund inflationary increases of 1.6 percent for operating expenses such as travel, communications, printing, contractual services, supplies and materials, and furniture and equipment.

9.    **Funding necessary to maintain fiscal year 2015 services level due to an anticipated decline in non-appropriated sources of funds**

**Requested Increase: $511,000**

This account is financed through direct appropriations and the use of non-appropriated funds, including judiciary fee collections and fee carryforward. In fiscal year 2015, the judiciary expects to have a total of $17.7 million in non-appropriated funds available to finance recurring AO requirements. In fiscal year 2016, the judiciary expects $17.2 million in non-appropriated funds to be available for the AO, a decrease of $0.5 million from fiscal year 2015. The judiciary requests $0.5 million in appropriated funds in fiscal year 2016 to replace these non-appropriated funds in order to maintain the same level of service as provided in fiscal year 2015.

**FINANCING THE FISCAL YEAR 2016 REQUEST**

*Estimated Fiscal Year 2016 Fee Collections*

**Estimated Funds Available: $10,114,000**

The judiciary has authority to collect fees for various services such as bankruptcy filing, civil filing, bankruptcy noticing, and registry administration. These fees are used to reimburse judiciary appropriations and are available without fiscal year limitation. The judiciary estimates that $10.1 million of these fees will be available to offset the fiscal year 2016 AO budget request.

Support Center in Reston, Virginia. These centers were established at different times, and some centers were initially units of the district courts in those locations and were not managed by the AO until fiscal year 1995. They were previously funded directly by the *Courts of Appeals, District Courts, and Other Judicial Services*, Salaries and Expenses appropriation through fiscal year 2013. Beginning in fiscal year 2014, these service centers are reflected as reimbursable programs, consistent with the AO restructuring and the management of AO resources using a consolidated approach.

The request for the AO reimbursable programs includes funding for 466 FTE from the Salaries and Expenses, Defender Services, and Court Security appropriations under *Courts of Appeals, District Courts, and Other Judicial Services.* These positions are necessary to maintain a sufficient AO reimbursable staffing level to fulfill core court support responsibilities and to continue to develop, implement, and support automated systems and technologies in the courts. These systems include network and telephone systems, case management/electronic case files systems that support appellate, district, and bankruptcy courts and probation and pretrial services operations, and financial management systems that ensure sound financial practices and internal controls.

***Estimated fee carryforward from Fiscal Year 2015 into Fiscal Year 2016***

**Estimated funds available: $7,105,000**

In addition to receiving a portion of new fee collections, the AO account also receives a portion of the fee balances carried over from prior years. This request reflects funds from fee carryforward balances in the judiciary fee accounts that will be available to offset the AO fiscal year 2016 budget request. The judiciary will advise appropriations subcommittee staffs of changes to this estimate.

*Reimbursable Programs*

**Funds Available: $85,992,000                     FTE: 466**

**Requested Increase: $1,329,000**

Beginning in 1990, Congress authorized reimbursable funds for the AO to carry out specific support functions for the courts. These functions include defender services audit and assessment, federal defender training, court automation, case management improvement, court security, court financial administration, court financial systems, background checks/investigations, financial disclosure, and judiciary benefits.

Beginning in 2014, judiciary service centers were included as reimbursable programs. These comprise the information and technology testing and training centers in Phoenix, Arizona and San Antonio, Texas, the Electronic Public Access Service Center in San Antonio, Texas the Central Violations Bureau in San Antonio, Texas, the Probation and Pretrial Services Training Academy in Charleston, South Carolina, and the Court Operations

602

9.1

# FEDERAL JUDICIAL CENTER
*Salaries and Expenses*
## SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | |
|---|---|
| Fiscal Year 2015 Enacted Appropriation | $26,959,000 |
| Fiscal Year 2016 Requested Appropriation | $27,679,000 |
| Requested Increase from Fiscal Year 2015 Appropriation | $720,000 |

## APPROPRIATION LANGUAGE

## FEDERAL JUDICIAL CENTER
## SALARIES AND EXPENSES

For necessary expenses of the Federal Judicial Center, as authorized by Public Law 90-219, [$26,959,000]*$27,679,000*, of which $1,800,000 shall remain available until September 30, [2016]*2017*, to provide education and training to Federal court personnel; and of which not to exceed $1,500 is authorized for official reception and representation expenses.

603

9.2

## SUMMARY OF REQUEST
## FEDERAL JUDICIAL CENTER
## SALARIES AND EXPENSES
## FISCAL YEAR 2016
(Dollar amounts in thousands)

### Fiscal Year 2016 Resource Requirements:

|  | FTEs | Amount |
|---|---|---|
| **Fiscal Year 2015 Obligations**............................................ | 129 | 27,459 |
| Utilization of Judicary Information Technology Fund Balances........ | - | (200) |
| Reimbursements from Federal Accounts and FJC Foundation........... | (1) | (300) |
| **Fiscal Year 2016 Base Appropriation**................................... | 128 | 26,959 |

### Adjustments to Base to Maintain Current Services:

| Page No. | | | |
|---|---|---|---|
| | **A. Pay and Benefit Adjustments** | | |
| 9.9 | 1. Annualization of January 2015 pay adjustment (1.0% for three months)............ | - | 44 |
| 9.9 | 2. Proposed January 2016 pay adjustment (1.0% for nine months).................... | - | 134 |
| 9.9 | 3. Promotions and within-grade increases.................................... | - | 198 |
| 9.9 | 4. Health benefits increase............................................. | - | 48 |
| 9.10 | 5. FICA increase..................................................... | - | 6 |
| 9.10 | 6. FERS Increase.................................................... | - | 80 |
| 9.10 | 7. One more compensable day........................................... | - | 72 |

604

9.3

SUMMARY OF REQUEST
FEDERAL JUDICIAL CENTER
SALARIES AND EXPENSES
FISCAL YEAR 2016
(Dollar amounts in thousands)

| | FTEs | Amount |
|---|---|---|
| **B. Other Adjustments** | | |
| 9.10    8.  General inflationary adjustments................................................ | - | 138 |
| **Subtotal, Adjustments to Base to Maintain Current Services**................................................ | - | 720 |
| **Total Fiscal Year 2016 Appropriation Required** ................................................ | 128 | 27,679 |
| | | |
| **Financing the Fiscal Year 2016 Request:** | | |
| | | |
| **Total Appropriation Required, Fiscal Year 2016**................................................ | 128 | 27,679 |
| 9.10    9.  Utilization of the Judiciary Information Technology Fund................................................ | - | 525 |
| 9.11    10.  Estimated Reimbursements from Federal Accounts and FJC Foundation................................................ | 1 | 300 |
| **Total Estimated Obligations, Fiscal Year 2016**................................................ | 129 | 28,504 |

605

**FEDERAL JUDICIAL CENTER**
Salaries and Expenses
Obligations by Activity ($000)

| Activity | Fiscal Year 2014 | | | Fiscal Year 2015 | | | Fiscal Year 2016 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Direct | Offsetting Collections | Total | Direct | Offsetting Collections | Total | Direct | Offsetting Collections | Total |
| Education & Training | 17,840 | 337 | 18,177 | 18,380 | 300 | 18,680 | 18,871 | 300 | 19,171 |
| Research | 4,370 | - | 4,370 | 4,933 | - | 4,933 | 5,065 | - | 5,065 |
| Program Support | 3,990 | - | 3,990 | 3,846 | - | 3,846 | 4,268 | - | 4,268 |
| **Total Obligations** | 26,200 | 337 | 26,537 | 27,159 | 300 | 27,459 | 28,204 | 300 | 28,504 |
| | | | | | | | | | |
| Unobligated Balance, Start of Year | | | | | | | | | |
| Judiciary Information Technology Fund | (325) | - | (325) | (725) | - | (725) | (525) | - | (525) |
| New Deposits | (400) | - | (400) | - | - | - | - | - | - |
| | | | | | | | | | |
| Unobligated Balance, End of Year | | | | | | | | | |
| Judiciary Information Technology Fund | 725 | - | 725 | 525 | - | 525 | - | - | - |
| **Total Direct Obligations** | 26,200 | 337 | 26,537 | 26,959 | 300 | 27,259 | 27,679 | 300 | 27,979 |
| | | | | | | | | | |
| Offsetting Collections | | | | | | | | | |
| Reimbursable programs | - | (337) | (337) | - | (300) | (300) | - | (300) | (300) |
| **Available Appropriation** | 26,200 | - | 26,200 | 26,959 | - | 26,959 | 27,679 | - | 27,679 |

9.4

606

**FEDERAL JUDICIAL CENTER**
Salaries & Expenses
Obligations by Object Class ($000)

| | | Fiscal Year 2014 | | | Fiscal Year 2015 | | | Fiscal Year 2016 | | |
| | | | Offsetting | Total | | Offsetting | Total | | Offsetting | Total |
| | Description | Direct | Collections | Oblig. | Direct | Collections | Oblig. | Direct | Collections | Oblig. |
|---|---|---|---|---|---|---|---|---|---|---|
| 1100 | Personnel compensation | 13,480 | 55 | 13,535 | 14,038 | 112 | 14,150 | 14,393 | 112 | 14,505 |
| 1200 | Personnel benefits | 3,892 | 15 | 3,907 | 4,294 | 28 | 4,322 | 4,521 | 28 | 4,549 |
| 2100 | Travel | 4,881 | 237 | 5,118 | 5,620 | 160 | 5,780 | 5,710 | 160 | 5,870 |
| 2200 | Transporation of things | 35 | 0 | 35 | 40 | 0 | 40 | 41 | 0 | 41 |
| 2330 | Communications, utilities & misc | 373 | 11 | 384 | 511 | 0 | 511 | 734 | 0 | 734 |
| 2400 | Printing and reproduction | 30 | 0 | 30 | 61 | 0 | 61 | 62 | 0 | 62 |
| 2500 | Other services | 1,141 | 9 | 1,150 | 1,175 | 0 | 1,175 | 1,313 | 0 | 1,313 |
| 2600 | Supplies and materials | 659 | 10 | 669 | 646 | 0 | 646 | 696 | 0 | 696 |
| 3100 | Equipment | 1,309 | 0 | 1,309 | 774 | 0 | 774 | 735 | 0 | 735 |
| 9100 | Undefined Disbursements[1] | 400 | 0 | 400 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total Obligations[2]** | | **26,200** | **337** | **26,537** | **27,159** | **300** | **27,459** | **28,204** | **300** | **28,504** |

1/ Deposited into JITF fund
2/ Includes JITF obligations of $200,000 in FY 2015 and $525,000 in FY 2016

9.6

**FEDERAL JUDICIAL CENTER**
Salaries & Expenses
Relation of Obligations to Outlays ($000)

|  | FY 2014 Actuals | FY 2015 Estimate | FY 2016 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total Obligations | 26,537 | 27,459 | 28,504 | 1,045 |
| Obligated balance, start of year | 3,699 | 4,656 | 119 | (4,537) |
| Obligated balance, end of year | (4,656) | (119) | (458) | (339) |
| Total Outlays | 25,580 | 31,996 | 28,165 | (3,831) |
| Less Judiciary Information |  |  |  |  |
| Technology Fund Obligations | 0 | (200) | (525) | (325) |
| Less offsetting collections: |  |  |  |  |
| Reimbursable Programs | (337) | (300) | (300) | 0 |
| Net Outlays | 25,243 | 31,496 | 27,340 | (4,156) |

608

9.7

## FEDERAL JUDICIAL CENTER
### Salaries and Expenses
#### Full Time Equivalents by Activity

| Activity | Fiscal Year 2014 | | | Fiscal Year 2015 | | | Fiscal Year 2016 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Direct | Reimb Program | Total | Direct | Reimb Program | Total | Direct | Reimb Program | Total |
| Education & Training | 87 | 0 | 87 | 90 | 1 | 91 | 90 | 1 | 91 |
| Research | 28 | 0 | 28 | 28 | 0 | 28 | 28 | 0 | 28 |
| Program Support | 10 | 0 | 10 | 10 | 0 | 10 | 10 | 0 | 10 |
| **Total, Full Time Equivalents** | **125** | **0** | **125** | **128** | **1** | **129** | **128** | **1** | **129** |

## GENERAL STATEMENT AND INFORMATION

This appropriation request is for the salaries and operating expenses of the Federal Judicial Center, which was established by P.L. 90-219 (81 Stat. 664) on December 20, 1967. This statute directs the Center "to further the development and adoption of improved judicial administration" in the federal courts.

The fiscal year 2016 request of $27,679,000 for the Federal Judicial Center will support all Center requirements at a current services funding level.

### Functional Responsibilities of the Center

The Center's functions are outlined in statute, especially 28 U.S.C.§§ 620(b) and 623(a). Pursuant to those mandates, it teaches judges and other Judicial Branch personnel about legal developments and efficient litigation management and court administration. The Center provides various educational programs that teach judges and court legal staff about new laws and emerging issues; programs that help judges and court executives promote efficiency in the just resolution of cases and in court administration; and programs that educate court staff on effective court operations. Over 80 percent of Center training participants attend the training in their home cities through in-court seminars, Center video programs, manuals, web-based conferences, and interactive computer programs. The Center also conducts empirical research into court operations and activities. Most Center research is performed at the request of the Judicial Conference of the United States in order to inform policy decisions of the Conference. Center research also contributes to improved judicial administration by assessing the efficacy of case and court management procedures. For example, it continues to assess case management tools for complex litigation. (The Center's statute also assigns it less extensive duties with regard to state-federal judicial relations, assisting foreign judiciaries, and federal judicial history, which it also performs.) Program planning is coordinated among the Center, the Administrative Office of the U.S. Courts, and the U.S. Sentencing Commission to maximize efficiency in meeting their distinct responsibilities.

### Duties of the Board

A Board of nine supervises the Center. The Chief Justice of the United States is the Board Chairman. The Board includes two judges of the U.S. Courts of Appeals, three judges of the U.S. District Courts, one bankruptcy judge, and one magistrate judge; each elected by the Judicial Conference of the United States for a four-year term. The Director of the Administrative Office of the U.S. Courts is an ex-officio Board member. By statute, the Board is responsible for developing overall policy to guide the Center's operations and approves the Center's appropriations requests. The Board appoints a Director and a Deputy Director, who are responsible for supervising the Center's staff and carrying out the Center's programs. The Center coordinates as necessary with the Budget Committee of the Judicial Conference of the United States and the Administrative Office of the U.S. Courts in developing the Center's appropriation requests.

9.8

## JUSTIFICATION OF CHANGES

The Federal Judicial Center's appropriation request for fiscal year 2016 is $27,679,000, representing an overall increase of $720,000 (2.7 percent) over the fiscal year 2015 appropriation of $26,959,000. The total requested increase of $720,000 is for adjustments to base to maintain current services. These adjustments include pay and benefits cost increases for current staff. Also included are funds for general inflationary increases for operating expenses such as travel, utilities, printing, contractual services, supplies and materials, furniture and equipment.

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

**A. Pay and Benefit Adjustments**

**1. Annualization of 2015 pay adjustment**

**Requested Increase: $44,000**

As a result of the ECI pay adjustment, federal pay rates increased 1.0 percent in January 2015. The requested increase provides for the cost of three months (from October 2015 to December 2015) of the fiscal year 2015 pay increase in fiscal year 2016.

**2. Proposed January 2016 pay adjustment**

**Requested Increase: $134,000**

As of January 2015, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.0 percent beginning on or after January 1, 2016. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2016 (from January 2016 to September 2016).

**3. Promotions and within-grade increases**

**Requested Increase: $198,000**

The requested amount provides an increase to allow Federal Judicial Center personnel to be granted adjustments in compensation for merit. The requested increase annualizes 2015 adjustments, and includes a nine-month provision for the anticipated 2016 adjustments.

**4. Health benefits increase**

**Requested Increase: $48,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 3.2 percent in January 2015. The requested increase annualizes the 2015 premium increase, and includes a nine-month provision for an estimated 4.0 percent increase anticipated for fiscal year 2016.

9.9

**5. FICA increase**

**Requested Increase: $6,000**

Funds are requested to provide for the base adjustment in employer contributions to the Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax. The salary cap for OASDI increased to $117,000 in January 2014, and increased to $118,500 in January 2015. The requested amount is needed to pay the agency contribution.

**6. FERS increase**

**Requested Increase: $80,000**

Funds are requested for a 0.5 percent increase (from 13.2 percent to 13.7 percent) in the agency contribution rate to Federal Employee Retirement System (FERS) plans effective October 1, 2015. The FERS increase is in accordance with revised estimates of the cost of providing benefits by the Board of Actuaries of the Civil Service Retirement and Disability System.

**7. One more compensable day**

**Requested Increase: $72,000**

There is one more compensable day in fiscal year 2016 than in fiscal year 2015. The requested increase is for personnel compensation and benefits associated with one more compensable day.

**B. Other Adjustments**

**8. General inflationary adjustments**

**Requested Increase: $138,000**

Consistent with guidance from the Office of Management and Budget, this request of $138,000 is required to fund inflationary increases of 1.6 percent for operating expenses such as travel, communications, printing, contractual services, supplies and materials, and furniture and equipment.

**FINANCING THE FISCAL YEAR 2016 REQUEST**

**9. Estimated obligation of available balance from Judiciary Information Technology Fund: $525,000**

At the beginning of fiscal year 2016, the Federal Judicial Center had $525,000 available in the Judiciary Information Technology Fund. The total of $525,000 is planned for obligation in fiscal year 2016. These funds will provide for the estimated costs associated with IT infrastructure, contract services to support maintenance of IT systems and for planned life-cycle replacement of various office automation and technology equipment. These funds will also be used for cyclical server/web enhancement and maintenance, software licenses, fiber optic communication lines, networked printers and scanners and web/video based conferencing services to support distance education programming.

9.10

## OFFSETTING COLLECTIONS

10. **Estimated reimbursements from federal accounts and the FJC Foundation**

**Estimated Reimbursement: $300,000**          **FTE: 1**

The Center enters into reimbursable agreements to provide additional services to, or to allow economizing by, the Administrative Office of the U.S. Courts, the courts, and non-judicial federal entities. In addition, pursuant to Title 28, Section 629, the Center receives support from occasional donations to the Federal Judicial Center Foundation. The Center estimates that $300,000 will be reimbursed to it in fiscal year 2016.

**JUDICIAL RETIREMENT FUNDS**
*Payment to Judiciary Trust Funds*
SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | |
|---|---|
| **Fiscal Year 2015 Enacted Appropriation** | $143,600,000 |
| **Fiscal Year 2016 Requested Appropriation** | $155,400,000 |
| **Requested Increase from Fiscal Year 2015 Appropriation** | $11,800,000 |

**Title VI General Provisions**

Sec. [619] ___ (a) There are appropriated for the following activities the amounts required under current law:

   (1) Compensation of the President (3 U.S.C. 102).

   (2) Payments to--

      (A) the Judicial Officers' Retirement Fund (28 U.S.C. 377(o));

      (B) the Judicial Survivors' Annuities Fund (28 U.S.C. 376(c)); and

      (C) the United States Court of Federal Claims Judges' Retirement Fund (28 U.S.C. 178(l)).

   (3) Payment of Government contributions--

      (A) with respect to the health benefits of retired employees, as authorized by chapter 89 of title 5, United States Code, and the Retired Federal Employees Health Benefits Act (74 Stat. 849); and

      (B) with respect to the life insurance benefits for employees retiring after December 31, 1989 (5 U.S.C. ch. 87).

   (4) Payment to finance the unfunded liability of new and increased annuity benefits under the Civil Service Retirement and Disability Fund (5 U.S.C. 8348).

   (5) Payment of annuities authorized to be paid from the Civil Service Retirement and Disability Fund by statutory provisions other than subchapter III of chapter 83 or chapter 84 of title 5, United States Code.

   (b) Nothing in this section may be construed to exempt any amount appropriated by this section from any otherwise applicable limitation on the use of funds contained in this Act.

**Explanation**

The highlighted section provides appropriations for payments to the Judicial Officers' Retirement Fund, the Judicial Survivors' Annuities Fund, and the United States Court of Federal Claims Judges' Retirement Fund. The judiciary proposes to retain this language in Title VI of the Financial Services and General Government appropriations bill.

10.1

614

## SUMMARY OF REQUEST
## JUDICIAL RETIREMENT FUNDS
## PAYMENT TO JUDICIARY TRUST FUNDS
## FISCAL YEAR 2016
### (Dollar amounts in thousands)

**Fiscal Year 2016 Resource Requirements:**

| Page No. | | FTEs | Amount |
|---|---|---|---|
| | Fiscal Year 2015 Enacted Appropriation ................................................ | - | $143,600 |
| | **Adjustments to Base** | | |
| 10.5 | 1. Increase in payment to the Judicial Officers' Retirement Fund.................. | - | 11,500 |
| 10.6 | 2. Increase in payment to the Judicial Survivors' Annuities Fund................. | - | 400 |
| 10.6 | 3. Decrease in payment to the Court of Federal Claims Judges' Retirement Fund....... | - | (100) |
| | Subtotal, Adjustments to Base........................................................... | - | 11,800 |
| | Total Appropriation Required, Fiscal Year 2016........................................ | - | $155,400 |
| | Total Appropriation Increase, Fiscal Year 2015 to Fiscal Year 2016.................. | - | 11,800 |

10.2

10.3

**PAYMENT TO JUDICIARY TRUST FUND**
Obligations by activity ($000)

| Activity | Fiscal Year 2014 Actual | Fiscal Year 2015 Plan | Fiscal Year 2016 Request |
|---|---|---|---|
| **Trust Fund, Total Obligations** | 126,931 | 143,600 | 155,400 |
| **Available Appropriation** | 126,931 | 143,600 | 155,400 |

**Object Classification ($000)**

| | Description | Fiscal Year 2014 Actual | Fiscal Year 2015 Plan | Fiscal Year 2016 Request |
|---|---|---|---|---|
| 25 | Other services | 126,931 | 143,600 | 155,400 |
| | **Total obligations** | 126,931 | 143,600 | 155,400 |

616

10.4

## PAYMENT TO JUDICIARY TRUST FUND

### Relation of Obligations to Outlays ($000)

|  | FY 2014 Actual | FY 2015 Plan | FY 2016 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 126,931 | 143,600 | 155,400 | 11,800 |
| Obligated balance, start of year | ... | ... | ... | ... |
| Obligated balance, end of year | ... | ... | ... | ... |
| Net Outlays | 126,931 | 143,600 | 155,400 | 11,800 |

## GENERAL STATEMENT AND INFORMATION

This appropriation is divided among three trust funds that finance payments to (1) retired bankruptcy and magistrate judges, (2) spouses and dependent children of deceased judges, and (3) retired Court of Federal Claims judges. This account is categorized as a mandatory appropriation by Congress. Although

Statutes governing the three funds authorize the appropriation of amounts to cover the liability that accrues each year and to pay an installment on any unfunded liability. Although the funds (except for the Court of Federal Claims judges) receive participant contributions and all of the funds earn interest on investment holdings, the purpose of the appropriation provision is to ensure that sufficient funds are deposited annually to cover anticipated benefit payments in the distant future as well as in the short-term. The appropriation request is calculated annually by an enrolled actuary pursuant to 31 U.S.C. 9503, Public Law 95-595 (November 4, 1978).

### The Three Trust Funds

The Judicial Officers' Retirement Fund was established in 1988 to provide a pension to bankruptcy and full-time magistrate judges (28 U.S.C. §377(o)).

The Judicial Survivors' Annuities Fund was established in 1956 to provide annuities to widows, widowers, and dependent children of judges and other officials who have elected to participate in the program: Justices and judges of the United States, to include Guam, the Northern Mariana Islands, and the Virgin Islands; full-time bankruptcy judges; full-time United States magistrate judges; judges of the United States Court of Federal Claims; the Directors of the Federal Judicial Center

and the Administrative Office of the United States Courts; and the Counselor to the Chief Justice of the United States (28 U.S.C. §376(c)).

The Court of Federal Claims Judges' Retirement Fund was established in 1990 to provide a pension plan to retired United States Court of Federal Claims judges (28 U.S.C. §178(l)). Appointment under Chapter 7 of Title 28 or service under section 167 of the Federal Courts Improvements Act of 1982 automatically qualifies a judge to participate.

### Justification of Changes

The appropriation request for fiscal year 2016 is $155,400,000, a net increase of $11,800,000 above the appropriation level in fiscal year 2015. This net increase is distributed as follows: an increase of $11,500,000 for the Judicial Officers' Retirement Fund, an increase of $400,000 for the Judicial Survivors' Annuities Fund, and a decrease of $100,000 for the Court of Federal Claims Judges' Retirement Fund.

## ADJUSTMENTS TO BASE

1. *Increase in payment to the Judicial Officers' Retirement Fund*

**Mandatory Increase: $11,500,000**

The appropriation level for fiscal year 2015 is $115,800,000. Based on actuarial calculations, $127,300,000, an increase of $11,500,000, is required to draw down the unfunded liability in fiscal year 2016.

10.5

10.6

### 2. Increase in payment to the Judicial Survivors' Annuities Fund

**Mandatory Increase: $400,000**

The appropriation level for fiscal year 2015 is $21,800,000. Based on actuarial calculations, $22,200,000, an increase of $400,000, is required to draw down the unfunded liability in fiscal year 2016.

### 3. Decrease in payment to the Court of Federal Claims Judges' Retirement Fund

**Mandatory Decrease: $100,000**

The appropriation level for fiscal year 2015 is $6,000,000. Based on actuarial calculations, $5,900,000, a decrease of $100,000, is required to draw down the unfunded liability in fiscal year 2016.

619

UNITED STATES SENTENCING COMMISSION
*Salaries and Expenses*
SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | |
|---|---|
| Fiscal Year 2015 Enacted Appropriation | $16,894,000 |
| Fiscal Year 2016 Requested Appropriation | $17,540,000 |
| Requested Increase from Fiscal Year 2015 Appropriation | $646,000 |

APPROPRIATION LANGUAGE

UNITED STATES SENTENCING COMMISSION

SALARIES AND EXPENSES

For the salaries and expenses necessary to carry out the provisions of
chapter 58 of title 28, United States Code, [$16,894,000] *$17,540,000*,
of which not to exceed $1,000 is authorized for official reception
and representation expenses.

11.2

## SUMMARY OF REQUEST
## UNITED STATES SENTENCING COMMISSION
## SALARIES AND EXPENSES
## FISCAL YEAR 2016
(Dollar amounts in thousands)

### Fiscal Year 2016 Resource Requirements:

|  | FTEs | Amount |
|---|---|---|
| Fiscal Year 2015 Obligations............................................ | 96 | 17,893 |
| Utilization of Judiciary Information Technology Fund Balances........... | - | (999) |
| Fiscal Year 2015 Enacted Appropriation............................... | 96 | 16,894 |

**Page No.**   ### Adjustments to Base to Maintain Current Services:

**A. Commission Personnel**

Pay and Benefit Adjustments

| Page No. |  |  |
|---|---|---|
| 11.13 | 1. Annualization of 2015 pay adjustment (1.0% for three months) ............ | 33 |
| 11.13 | 2. Proposed January 2016 pay adjustment (1.0% for nine months) ............ | 99 |
| 11.13 | 3. Promotions and within-grade increases ............................. | 123 |
| 11.13 | 4. Health benefits increase ........................................ | 70 |
| 11.14 | 5. FICA increase ............................................... | 22 |
| 11.14 | 6. Annualization of staff hired in fiscal year 2015 ...................... 3 | 109 |
| 11.14 | 7. FERS Increase .............................................. | 60 |
| 11.14 | 8. One more compensable day .................................... | 51 |

621

SUMMARY OF REQUEST
UNITED STATES SENTENCING COMMISSION
SALARIES AND EXPENSES
FISCAL YEAR 2016
(Dollar amounts in thousands)

| | Original Request | |
|---|---|---|
| | FTEs | Amount |
| B. Other Adjustments | | |
| 11.14   9.   Inflationary adjustment ......................................................... | - | 79 |
| Subtotal, Adjustments to Base to Maintain Current Services ............... | 3 | 646 |
| Total Current Services Appropriation Required .............................. | 99 | 17,540 |
| Total, Fiscal Year 2016 Appropriation Required............................. | 99 | 17,540 |
| Total Appropriation Increase, Fiscal Year 2015 to Fiscal Year 2016.......... | 3 | 646 |
| Financing the Fiscal Year 2016 Request: | | |
| Total Appropriation Required, Fiscal Year 2016.............................. | 99 | 17,540 |
| Total Estimated Obligations, Fiscal Year 2016................................. | 99 | 17,540 |

11.3

11.4

## UNITED STATES SENTENCING COMMISSION
### SALARIES AND EXPENSES
#### Obligations by Activity ($000)

| Activity | Fiscal Year 2014 Actual | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request |
|---|---|---|---|
| Salaries and Expenses, Total Obligations | 16,088 | 17,893 | 17,540 |
| Unobligated Balance, Start of Year | | | |
| Judiciary Information Technology Fund | (929) | (999) | - |
| New Deposits | (70) | | - |
| Unobligated Balance, End of Year | | | |
| Judiciary Information Technology Fund | 999 | | - |
| Total Direct Obligations | 16,088 | 16,894 | 17,540 |
| Unobligated Balance, Expiring | 112 | - | - |
| Appropriation Required (Direct) | 16,200 | 16,894 | 17,540 |

### Object Classification ($000)

| | Description | Fiscal Year 2014 Actual | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request |
|---|---|---|---|---|
| 11 | Personnel compensation | 9,033 | 10,287 | 10,610 |
| 12 | Personnel benefits | 2,762 | 2,941 | 3,185 |
| 21 | Travel | 444 | 473 | 435 |
| 22 | Transportation of things | 7 | 8 | 8 |
| 23 | Rent, communications and utilities | 33 | 25 | 40 |
| 24 | Printing and reproduction | 68 | 60 | 70 |
| 25 | Other services | 2,417 | 2,726 | 2,445 |
| 26 | Supplies and materials | 106 | 92 | 118 |
| 31 | Equipment | 1,148 | 1,281 | 629 |
| 91 | Undefined Disbursements[1] | 70 | 0 | 0 |
| | Total Obligations[2] | 16,088 | 17,893 | 17,540 |

1/ Deposited into JITF fund

2/ Includes JITF obligations of $999,000 in FY 2015.

623

11.5

## UNITED STATES SENTENCING COMMISSION
## SALARIES AND EXPENSES
### Relation of Obligations to Outlays ($000)

| | Fiscal Year 2014 Actuals | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total Obligations | 16,088 | 17,893 | 17,540 | (353) |
| Obligated balance, start of year | 3,529 | 3,247 | 2,839 | (408) |
| Obligated balance, end of year | (3,247) | (2,839) | (2,952) | (113) |
| Total Outlays | 16,370 | 18,301 | 17,427 | (874) |
| | | | | |
| Less Judiciary Information Technology Fund Obligations | 0 | (999) | 0 | 999 |
| **Net Outlays** | 16,370 | 17,302 | 17,427 | 125 |

### Personnel Summary

| | Fiscal Year 2014 Actuals | Fiscal Year 2015 Estimate | Fiscal Year 2016 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total compensable workyears: | | | | |
| Full-time equivalent employment | 89 | 96 | 99 | 3 |

624

## GENERAL STATEMENT AND INFORMATION

The fiscal year 2016 request of $17,540,000 for the U.S. Sentencing Commission will support the Commission's current services funding level.

The statutory duties of the United States Sentencing Commission include, but are not limited to:

- promulgating sentencing guidelines to be determined, calculated, and considered in all federal criminal cases;

- collecting sentencing data systematically to detect new criminal trends, to determine if federal crime policies are achieving their goals, and to serve as a clearinghouse for federal sentencing statistics;

- conducting research on sentencing issues and serving as an information center for the collection, preparation, and dissemination of information on federal sentencing practices; and

- providing specialized training to judges, probation officers, staff attorneys, law clerks, prosecutors, defense attorneys, and other members of the federal criminal justice community on federal sentencing issues, including application of the guidelines.

The Commission sits at the intersection of all three branches of government and synthesizes the interests of the three branches to effectuate sound federal sentencing policy.  Consistent with statutory guidance and Supreme Court case law, the Commission has continued its core mission to promulgate new guidelines and

guideline amendments in response to legislation, sentencing data, and information and feedback from sentencing courts, Congress, the Executive Branch, federal defenders, and others in the federal criminal justice system.  The Commission continues to expand its specialized training on federal sentencing issues, including application of the guidelines, to federal judges, probation officers, staff attorneys, law clerks, prosecutors, defense attorneys, and others.

In fiscal year 2014, the Commission took a leading role in reducing costs associated with rising prison populations, increasing the fairness and efficiency of sentencing, and improving recidivism outcomes, thereby saving additional funds.  The Commission's efforts are calibrated to ensure public safety and provide that the statutory purposes of sentencing are achieved.  The Commission will continue these efforts in fiscal years 2015 and 2016 and is also prioritizing finding ways to make the guidelines work better, promoting efficiency and effectiveness and reducing unnecessary litigation.

Furthermore, the Commission continues to refine its data collection, analysis, and reporting efforts to provide up-to-date data about federal sentencing practices and trends.  The Commission continues to disseminate sentencing information in real time and in new ways to fulfill its statutory duties to monitor the operation of the guidelines and to advise Congress on federal sentencing policy.  The Commission also continues to analyze major sentencing issues and report its findings and recommendations to Congress, as well as to respond to requests from Congress for data and analysis.

11.6

Although the demand for Commission work-product, information, and services continues to increase, the Commission is not requesting program increases for fiscal year 2016. The Commission continues to maximize its existing resources and appreciates the funding Congress has provided for the Commission's fulfillment of its statutory duties. Full funding of the Commission's fiscal year 2016 budget request would allow the Commission to continue to fulfill these statutory duties as envisioned by the Sentencing Reform Act of 1984.

## ONGOING ACTIVITIES

### Sentencing Policy Development

In light of the increasing costs of incarceration and the ongoing overcapacity of the federal prison system, since fiscal year 2014 the Commission has made implementing its mandate at Section 994(g) of the Sentencing Reform Act, which requires that the guidelines "minimize the likelihood that the federal prison population will exceed the capacity of the federal prisons," an overarching policy priority. Consistent with that goal, in fiscal year 2014 the Commission reexamined the guideline covering federal drug trafficking offenses since federal drug offenders account for over half of the federal prison population.

The Commission conducted hearings on how the guidelines account for the quantity of drugs involved in federal drug trafficking offenses, analyzed sentencing and recidivism data, considered legislative and guideline developments, reviewed tens of thousands of letters from the public, and carefully considered input from members of Congress and other key stakeholders, and other relevant information.

The Commission's statutorily mandated re-examination resulted in the promulgation of an amendment that somewhat reduces the guideline penalties based on the quantity of drugs involved in an offense. The amendment is anticipated to affect approximately 70 percent of federal drug trafficking defendants, with their sentences decreasing an average of 11 months, or 17 percent, from 62 to 51 months. In addition to addressing prison populations and costs, these changes to the drug guidelines respond appropriately to statutory changes Congress has made and developments in the guidelines in the years since the drug guideline levels were originally set.

The Commission carefully weighed public safety concerns and, based on past experience, existing statutory and guideline enhancements, and expert testimony, concluded that the amendment should not jeopardize public safety. To the contrary, the Commission received testimony from the Department of Justice and other stakeholders that the amendment would permit resources otherwise dedicated to housing prisoners to be used to reduce overcrowding, enhance programming designed to reduce the risk of recidivism, and to increase law enforcement and crime prevention efforts, thereby enhancing public safety.

Section 994(u) of the Sentencing Reform Act also required that the Commission consider whether to make the drug amendment retroactive, and after extensive consideration the Commission decided to make the amendment retroactive with a one-year delay in implementation.

11.7

In evaluating whether to make the amendment retroactive, the Commission was informed by its study of recidivism following retroactive application of the 2007 crack cocaine amendment, which suggests that reductions in drug penalties can be accomplished without an increase in recidivism.

Retroactive application of the amendment is anticipated to have a significant impact on reducing prison costs and overcapacity, and the impact will be felt much more quickly than from a prospective change alone. Approximately 50,000 offenders may be eligible for reduced sentences, and these offenders are eligible to have their sentences reduced by an average of 25 months, or 18.8 percent. This reduction is estimated to result over time in a savings of 79,740 prison bed years.

The Commission believes that the 2014 drug amendment and its retroactive application are important first steps toward addressing prison costs and populations with proportionate guidelines, without negatively impacting public safety. The Commission hopes the amendment will lay the groundwork for more comprehensive action by Congress in the future, and the Commission's Chair testified to that effect before the House Judiciary Committee's Over-Criminalization Task Force in June 2014.

In fiscal year 2014, the Commission also implemented the *Violence Against Women Reauthorization Act of 2013*, Pub. L. No. 113-4, a major piece of legislation impacting a variety of offenses in Indian Country and beyond. It also resolved circuit conflicts in Courts of Appeals relating to the guidelines, including differences in calculating tax loss under the guidelines and the circumstances under which a defendant receives full credit for acceptance of responsibility.

Furthermore, the Commission convened an expert roundtable discussion on application issues caused by differing statutory, guideline, and case law definitions of crimes of violence. Differing and complex statutory and guideline definitions have caused significant litigation in federal sentencing, draining judicial resources and causing increased uncertainty and lack of uniformity in sentencing.

The Commission also continued work on a multi-year study on recidivism of federal offenders. In fiscal year 2013, the Commission held a recidivism roundtable where it heard from a variety of experts on methodology, quantitative statistical analysis, and program evaluation. The recidivism study will draw on partnerships across the federal criminal justice system and will combine data from the Commission, the Department of Justice, and the Administrative Office of the U.S. Courts to develop a comprehensive trajectory of offenders prior to incarceration, during incarceration, and following reentry into the community. The Commission believes this research will contribute significantly to the consideration of federal sentencing policy by Congress and others in fiscal year 2015 and beyond.

In addition, in fiscal year 2014, the Commission undertook a study of federal sentencing practices pertaining to imposition and violations of conditions of probation and supervised release, including possible consideration of amending the relevant provisions of the *Guidelines Manual*. The Commission believes this research may inform congressional consideration of issues including identification of conditions of supervised release that are correlated with lower recidivism. The Commission plans to release a series of research papers on this topic.

11.8

627

Also in fiscal year 2014, the Commission began work on a review of the use of risk-assessment instruments in the federal criminal justice system in order to be able to provide the Commission's data and expertise to Congress, the Office of Probation and Pretrial Services of the Administrative Office of the U.S. Courts, and researchers at the Federal Judicial Center. The Commission's study is aimed at considering these tools in the context of the goals and requirements of the Sentencing Reform Act of 1984 that sentences remain neutral with respect to race, gender, and socioeconomic status, among other consideration.

In fiscal year 2014, the Commission focused on making its data and research more readily accessible and in more easily understood ways to Congress, the courts, the public, and the press. To this end, the Commission expanded its Quick Facts series first introduced in fiscal year 2013. The Quick Facts series is designed to provide the concise facts about a single area of federal crime in an easy-to-read, two-page format. The Commission released fourteen publications in the Quick Facts series in fiscal year 2014 covering topics including illicit drugs, Native American offenders, female offenders, alien smuggling, and national defense offenses. The Commission will release new publications in fiscal year 2015 and update them regularly. In fiscal year 2014, the Commission also introduced a series of relatively short reports on various topics of interest. For example, the Commission released a brief publication about recidivism in connection with 2007 amendments that reduced sentences for crack offenders. The Commission will continue this short publication series in fiscal year 2015 and beyond.

The Commission has also continued to work with Congress on policy recommendations set forth in recent reports such as, for example, its 2011 report to Congress regarding mandatory

minimum penalties. These comprehensive reports provide policy-makers with relevant and important sentencing information and data, as well as the most relevant social science research and case law.

The information and data contained in these reports has contributed to the consideration of federal sentencing policy by Congress and others in fiscal years 2013 and 2014 and will likely continue to do so. In particular, the Commission worked during the 113th Congress to implement recommendations from its report on statutory mandatory minimum penalties and their role in the federal sentencing system. The Commission has also updated its recommendations on mandatory minimum penalties to address legislation before both the House and Senate. The Commission stands ready to work with the 114th Congress and others on steps that can be taken regarding the findings and recommendations in those reports.

In fiscal year 2015 and looking forward to fiscal year 2016, the Commission has prioritized examining ways the guidelines can be made fairer, more efficient, and more effective. In furtherance of this goal, Commission expects to promulgate guideline amendments resulting from its multi-year review of economic crimes and respond to recent scheduling by the Drug Enforcement Administration of the drug hydrocodone.

**Collecting, Analyzing, and Reporting Sentencing Data**
Each year, the Commission collects and analyzes data regarding every felony and class A misdemeanor offense sentenced during that year. Sentencing courts are statutorily required to submit five sentencing documents to the Commission within 30 days of entry of judgment in a criminal case: the charging document, the plea agreement, the presentence investigation report, the

judgment and commitment order, and the statement of reasons form. The Commission analyzes these documents and collects information of interest and importance to policy-makers and the federal criminal justice community.

The Commission's data collection, analysis, and reporting requirements are impacted by the high volume of cases sentenced in the federal system annually. The Commission will receive more than 350,000 documents for more than 76,000 original sentencings for fiscal year 2014. To put this caseload in perspective, in fiscal year 1995, the Commission received documentation for 38,500 cases sentenced under the guidelines.

The Commission also collects real-time data from the courts on retroactive application of its permanent amendment implementing the Fair Sentencing Act of 2010, Pub. L. No. 110-220 (reducing disparities between crack and powder cocaine sentences). The guideline amendment took effect on November 1, 2011.

As of October 2014, the Commission has collected data on over 14,000 cases in which a modification of the sentence imposed was sought under the 2011 amendment to the sentencing guidelines that implemented the provisions of the Fair Sentencing Act and which the Commission voted to retroactively apply to persons sentenced before the date of that amendment. The Commission anticipates eventually receiving documentation on more than 15,000 motions for retroactive application of the 2011 crack cocaine amendment. These documents and original research will form the basis for a study on implementation of the Fair Sentencing Act in fiscal year 2015 as contemplated by the Act, which requires the Commission to submit a report to Congress five years after its enactment (August 3, 2010). The Commission has also begun collecting data on retroactive

application of the 2014 drug guidelines amendment. Beginning on November 1, 2014, judges were authorized to review sentences imposed prior to that date to determine if those sentences should be reduced in a manner consistent with the 2014 drug guidelines amendment. Offenders for whom a sentence is reduced will not be eligible for release from Bureau of Prisons' custody under the reduced sentence until November 1, 2015. The Commission anticipates receiving documentation on approximately 46,000 motions for retroactive application of the 2104 drug guidelines amendment.

The Commission's sustained investment in modernization and refinement of data collection and analysis have kept pace with demands placed on it, but full funding of the Commission's fiscal year 2016 budget request is necessary to ensure efficient and effective performance of its data responsibilities given the large number of federal cases.

The Commission continually updates and modernizes the system that enables sentencing courts to submit documentation directly to the Commission electronically. In recent years, the Commission advanced from an internal electronic data transmission and submission system to a web-based system and improved its processes related to the receipt and analysis of sentencing data. By the end of fiscal year 2014, 79 out of 94 districts were using the web-based system.

The Commission continues to work to develop means to automatically extract some data fields from the court documents to improve the efficiency of its data collection and to expand the type of information the Commission can collect and analyze on a routine basis. The Commission began to collect some data

11.10

As required by 28 U.S.C. § 994(g) and 18 U.S.C. § 4047, when the Commission considers amendments to the guidelines, it considers the impact of these amendments on the federal prison population. In addition, the Commission is asked often by Congress to complete prison and sentencing impact assessments for proposed legislation. Since fiscal year 2012, the Commission has made its prison and sentencing impact analyses available to the public on its website. The Commission expects to continue doing so in the future.

The Commission often is asked by Congress to complete prison and sentencing impact assessments using real-time data of sentencing trends related to proposed and pending legislation. These assessments are often complex and time-sensitive and require highly-specialized Commission resources. In addition, the Commission responds to more general data requests from Congress on issues such as drugs, immigration, fraud, and sex offenses and provides district, state-wide, and circuit data analyses to House and Senate Judiciary Committee members and, on an as-requested basis, to other members of Congress. In fiscal year 2014, the Commission responded to 29 such requests from Congress.

The Commission also responds to requests for data analyses from federal judges, including specific data requests relating to pending cases. In fiscal year 2014, the Commission responded to 77 such requests from the courts. The Commission's ability to provide these analyses on demand and with real-time data provides a unique and helpful resource to judges.

through this automated means in fiscal year 2014, and will continue to do so in fiscal year 2015 and beyond. Because the Commission has been aggressively modernizing its systems, it has been able to accommodate a threefold increase in sentencings without additional staff devoted to this function.

The Commission makes its sentencing data available to the public in several ways. Analyses of the data extracted from the sentencing documents it receives are reported in the Commission's Annual Report and Sourcebook of Federal Sentencing Statistics, which is available in print and on its website. In order to provide the most timely information on national sentencing trends and practices, the Commission also disseminates on its website key aspects of this data on a quarterly basis and provides trend analyses of the changes in federal sentencing practices over time.

The Commission's "Interactive Sourcebook of Federal Sentencing Statistics," available at http://isb.ussc.gov, provides extensive data analyses to the public. All of the tables and figures in the printed Sourcebook are available in the on-line version. Additionally, the Interactive Sourcebook provides analyses not found elsewhere, including analyses of sentence length by the primary guideline the court used at sentencing, amount of loss in fraud cases, and age of offenders in drug cases for each major drug type. The Interactive Sourcebook allows users to re-create and customize tables and figures, for example by circuit, district, or state, and has improved the transparency and accessibility of its sentencing data to the public. In fiscal year 2014, additional analyses were added to this resource, including several new figures that examine trends in sentencing data.

11.11

**Conducting Research**

Research is a critical part of the Commission's overall mission. The Commission's research staff regularly analyzes the current and prior fiscal years' data to identify the manner in which the courts are sentencing offenders and using the guidelines. The Commission routinely uses these analyses when considering proposed changes to the guidelines. Similarly, some analyses are published by the Commission as a resource for policy-makers and the criminal justice community.

In May 2014, the Commission published an updated study on the recidivism of offenders whose sentences were reduced as a result of changes to the 2007 crack cocaine sentencing guidelines. The study compared the recidivism rates for offenders who were released early as a result of retroactive application of the 2007 crack cocaine amendment with a control group of offenders who served their full terms of imprisonment. The Commission detected no statistically significant difference in the rates of recidivism for the two groups of offenders over five years. This information represents some of the first high-quality, quasi-experimental, federal recidivism data that uses sentence length as a dependent variable. This data was crucial to the Commission in making its fiscal year 2014 changes to the drug quantity table. It has also been used by members of Congress in their own evaluations of proposed sentencing legislation.

In fiscal year 2013, the Commission began making individual offender data files available on its website.

**Training and Outreach**

The Commission continues to fulfill its statutory duty to provide training and specialized technical assistance on federal sentencing issues, including application of the guidelines, to federal judges,

probation officers, staff attorneys, law clerks, prosecutors, and defense attorneys by providing educational programs around the country throughout the year. In fiscal year 2014, Commissioners and Commission staff conducted training programs in more than half of the 94 judicial districts, providing instruction and guidance to approximately 9,000 judges, probation officers, prosecutors, defense attorneys and others throughout the year. In September 2014, the Commission held its annual national training program in Philadelphia, Pennsylvania with approximately 1,000 attendees, including many new federal district court judges. Commissioners and Commission staff also participated in numerous academic programs, symposia, and circuit conferences as part of the ongoing discussion of federal sentencing issues. The Commission anticipates that these expanded efforts and requests for training will continue throughout fiscal years 2015 and 2016.

The Commission also is relying on a more robust program of distance and online learning as part of cost containment efforts. The Commission has increased the number of sentencing-related webinars and training videos on its website throughout fiscal year 2014 and will continue to do so in 2015 and 2016. In October 2014, the Commission released its first training video focused at addressing the needs of federal crime victims. The video informs victims of the federal sentencing process and prepares them to participate more fully in the process. In November 2014, the Commission also released a training video focusing on retroactive application of the 2014 drug amendment.

11.12

## JUSTIFICATION OF CHANGES

The fiscal year 2016 budget request of $17,540,000 represents an overall increase of $646,000, or 3.8 percent over the fiscal year 2015 appropriation of $16,894,000. The Commission's request reflects an increase over fiscal year 2015 to account for inflationary increases and adjustments for personnel costs to maintain current services. The Commission requests no program increases for fiscal year 2016.

Adjustments to base to maintain current services include funds for pay and benefits, cost increases for current staff, and adjustments for on-going activities, such as inflationary increases in contract rates and charges for services, supplies, equipment, and other Commission needs.

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

### A. COMMISSION PERSONNEL

*Pay and Benefit Cost Adjustments*

1. **Annualization of 2015 pay adjustment**

**Requested Increase: $33,000**

As a result of the ECI pay adjustment, federal pay rates increased by 1.0 percent in January 2015. The requested increase provides for the cost of three months (from October 2015 to December 2015) of the 2015 pay increase in fiscal year 2016.

2. **Proposed January 2016 pay adjustment**

**Requested Increase: $99,000**

As of January 2015, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.0 percent beginning on or after January 1, 2016. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2016 (from January 2016 to September 2016).

3. **Promotions and within-grade increase**

**Requested Increase: $123,000**

The requested increase provides for promotions and within-grade increases for personnel. The salary plan for judicial support personnel provides for periodic within-grade increases for staff who receive at least a satisfactory performance rating.

4. **Health benefits increase**

**Requested Increase: $70,000**

Based on the information from the Office of Personnel Management, health benefit premium contributions are projected to increase by an average of 3.2 percent in January 2015. The requested increase annualizes the 2015 premium increase, and includes a nine-month provision for an estimated 4.0 percent increase anticipated for fiscal year 2016.

**5.    FICA increase**

**Requested Increase:  $22,000**

Funds are requested to provide for the base adjustment in employer contributions to the Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax. The salary cap for OASDI increased to $117,000 in January 2014, and increased to $118,500 in January 2015.  The requested amount is needed to pay the agency contribution.

**6.    Annualization of staff hired in fiscal year 2015**

**Requested Increase:  $108,536                 FTE:  3**

The Commission is seeking funds for the annualization of salaries and benefits for six staff (3 FTE) hired in fiscal year 2015.  In an effort to avoid furloughs and a reduction in force over the past few years, the Commission continues to maintain a staffing level that is commensurate with fiscal year 2000 staffing levels.  This has been accomplished while continuing to meet mission-critical responsibilities and staying current in analyzing a 29 percent increase in cases (76,000 cases in fiscal year 2014, compared to 59,000 cases in fiscal year 2000).  The amount requested would allow continued funding for these critical positions in fiscal year 2016.

**7. FERS increase**

**Requested Increase:  $60,126**

Funds are requested for a 0.5 percent increase (from 13.2 percent to 13.7 percent) in the agency contribution rate to Federal Employee Retirement System (FERS) plans effective October 1, 2015. The FERS increase is in accordance with revised estimates of the cost of providing benefits by the Board of Actuaries of the Civil Service Retirement and Disability System.

**8.  One more compensable day**

**Requested Increase:  $51,338**

There is one more compensable day in fiscal year 2016 than in fiscal year 2015. The requested amount increases personnel compensation and benefits associated with one more compensable day.

**B.  OTHER ADJUSTMENTS**

*General Inflationary Adjustments*

**9.  Inflationary increases in charges for contracts, services, supplies, and equipment**

**Requested Increase:  $79,000**

Consistent with guidance from the Office of Management and Budget, this request of $79,000 is required to fund inflationary increases of 1.6 percent for operating expenses such as communications, printing, contractual services, supplies and materials, and equipment.

11.14

## JUDICIARY INFORMATION TECHNOLOGY FUND

### GENERAL STATEMENT AND INFORMATION

The Judiciary Information Technology Fund (JITF) was established by Congress in fiscal year 1990 (28 U.S.C. § 612) to assist the judiciary in implementing its information technology initiatives. The authority of the JITF was extended indefinitely in the fiscal year 1998 Commerce, Justice, State, Judiciary, and Related Agencies Appropriations Act (P.L. 105-119). The JITF was authorized "without fiscal year limitation" for the procurement of information technology resources. The fund makes it possible to implement the *Long-Range Plan for Information Technology in the Federal Judiciary* and to manage the information technology (IT) program over a multi-year planning cycle, which allows more effective and efficient planning, budgeting, and use of funds for IT activities.

In keeping with the judiciary's mission and primary business objectives, the information technology program must identify, implement, and maintain cost-effective solutions for the judiciary, bar, and the public. All IT expenses for the district, appellate, and bankruptcy courts and probation and pretrial services offices must be paid from the fund.

Requirements are financed via the JITF from a variety of sources:

- deposits from the courts' Salaries and Expenses account;
- fee collections from the Electronic Public Access (EPA) program for IT expenses that improve public access to information (see Appendix 2);
- unobligated balances in the fund from prior year financial plan savings (unencumbered);
- proceeds from the sale of excess equipment;
- annual allotments to the courts originally for non-IT purposes that are reprogrammed locally by the courts for IT initiatives in accordance with the budget decentralization program; and
- voluntary deposits from non-mandatory judiciary users of the fund (such as the Court of Appeals for the Federal Circuit, the Court of International Trade, the U.S. Sentencing Commission, Court Security, the Federal Judicial Center, and the Administrative Office of the U.S. Courts).

The majority of the financing in the JITF originates from deposits from the Salaries and Expenses account. Table 12.1 on the following page displays JITF requirements and funding sources for fiscal year 2014 through fiscal year 2016.

12.1

Table 12.1 Judiciary Information Technology Fund Obligations and Financing ($000)

| | FY 2014 Actual | FY 2015 Projected Obligations | FY 2016 Request |
|---|---|---|---|
| **Obligations:** | | | |
| Salaries & Expenses Requirements (w/ carryforward) | 349,615 | 384,080 | 414,202 |
| EPA Program 1/ | 142,805 | 184,687 | 148,286 |
| Court of International Trade | 535 | 589 | 445 |
| U.S. Sentencing Commission | 0 | 999 | 0 |
| Administrative Office of the U.S. Courts | 643 | 2,088 | 0 |
| Court Security | 4,280 | 3,839 | 2,952 |
| Federal Judicial Center | 0 | 200 | 525 |
| Court of Appeals for the Federal Circuit | 758 | 525 | 475 |
| **TOTAL JITF** | 498,636 | 577,007 | 566,885 |
| **Financing:** | | | |
| **Salaries and Expenses** | | | |
| Unobligated Balance, Start of Year | 20,608 | 43,140 | 20,000 |
| New Deposits and Prior Year Recoveries | 372,147 | 360,940 | 394,202 |
| Unobligated Balance, End of Year | -43,140 | -20,000 | 0 |
| **Total Salaries & Expenses** | 349,615 | 384,080 | 414,202 |
| **EPA Program** | | | |
| Unobligated Balance, Start of Year | 39,759 | 42,573 | 3,086 |
| Estimated Receipts | 145,619 | 145,200 | 145,200 |
| Unobligated Balance, End of Year | -42,573 | -3,086 | 0 |
| **Total EPA Program** | 142,805 | 184,687 | 148,286 |
| **Court of International Trade** | | | |
| Unobligated Balance, Start of Year | 1,080 | 1,008 | 445 |
| New Deposits and Prior Year Recoveries | 431 | 0 | 0 |
| Utilization of EPA Receipts | 32 | 26 | 0 |
| Unobligated Balance, End of Year | -1,008 | -445 | 0 |
| **Total Court of International Trade** | 535 | 589 | 445 |

12.2

| | FY 2014 Actual | FY 2015 Projected Obligations | FY 2016 Request |
|---|---|---|---|
| **U.S. Sentencing Commission** | | | |
| Unobligated Balance, Start of Year | 929 | 999 | 0 |
| New Deposits | 70 | 0 | 0 |
| Unobligated Balance, End of Year | -999 | 0 | 0 |
| **Total U.S. Sentencing Commission** | 0 | 999 | 0 |
| **Administrative Office of the U.S. Courts** | | | |
| Unobligated Balance, Start of Year | 1,592 | 2,088 | 0 |
| New Deposits | 1,139 | 0 | 0 |
| Unobligated Balance, End of Year | -2,088 | 0 | 0 |
| **Total Administrative Office of the U.S. Courts** | 643 | 2,088 | 0 |
| **Court Security** | | | |
| Unobligated Balance, Start of Year | 6,734 | 7,827 | 3,988 |
| New Deposits | 5,373 | 0 | 0 |
| Unobligated Balance, End of Year | -7,827 | -3,988 | -1,036 |
| **Total Court Security** | 4,280 | 3,839 | 2,952 |
| **Federal Judicial Center** | | | |
| Unobligated Balance, Start of Year | 325 | 725 | 525 |
| New Deposits | 400 | 0 | 0 |
| Unobligated Balance, End of Year | -725 | -525 | 0 |
| **Total Federal Judicial Center** | 0 | 200 | 525 |
| **Court of Appeals for the Federal Circuit** | | | |
| Unobligated Balance, Start of Year | 3,347 | 3,317 | 2,877 |
| New Deposits and Prior Year Recoveries | 642 | 0 | 0 |
| Utilization of EPA Receipts | 86 | 85 | 85 |
| Unobligated Balance, End of Year | -3,317 | -2,877 | -2,487 |
| **Total Court of Appeals for the Federal Circuit** | 758 | 525 | 475 |
| **GRAND TOTAL JITF** | $498,636 | $577,007 | $566,885 |

See Appendix 2, Electronic Public Access Program, for information about utilization of receipts.

I2.3

## PROGRAMS FUNDED FROM THE SALARIES AND EXPENSES ACCOUNT

Under the guidance of the Judicial Conference of the United States and according to the strategic directions and objectives contained in the *Long-Range Plan for Information Technology in the Federal Judiciary*, the judiciary continues to implement information systems to meet the mission of the courts. The judiciary, like the rest of the public sector, depends on technology for communication systems, research, and information management systems to fulfill mission-critical needs.

The judiciary has made a significant investment in information technology. This investment has created efficiencies by automating labor-intensive work processes and effecting cost savings and offsets in areas such as processing court filings, jury management, financial systems, printing, postage, personnel, space, travel, and training. In order to continue these efficiencies, sufficient funding is required to operate these systems and modify them to maintain their relevance in the face of changing requirements and technology. In addition, the JITF funds infrastructure and telecommunications needs and provides allotments for information technology requirements to the courts. The requested amount for fiscal year 2016 is necessary to maintain these critical systems and infrastructure.

As shown in table 12.2, funding for the JITF Salaries and Expenses obligations supports seven program components. These programs support the IT budgets that provide judges and staff with the infrastructure, systems and tools they need to

perform their day-to-day work. For fiscal year 2015 the IT program components were reduced from the ten components reported in prior years to the current seven components, to present more clearly the scope of the JITF budget requests.

The judiciary has a successful enterprise-wide information technology program upon which judges, court staff, probation/pretrial services officers, and others depend to conduct their mission-critical functions. This includes a vital communications infrastructure that connects all court units securely and is the lifeline for information transfer; applications that ensure the judiciary manages its resources effectively; and various court support projects and case management systems that provide judges and staff the tools they need to perform their day-to-day work.

Judges and chambers staff rely on computer equipment and software through which they access electronic case management systems, electronic mail, and legal research databases. Many courtrooms are equipped with technologies that improve the quality and efficiency of courtroom proceedings through reduced trial time and improved fact-finding and understanding for trial participants. A number of opportunities exist to provide tools to help judges do their work more efficiently in areas ranging from text-search capability across pleadings, opinions, and court records; and the more timely receipt of critical information through seamless transmission of data from one court type to another.

The judiciary is in the process of developing critical improvements to court support systems. including the financial system, probation system, and case management systems.

12.4

Staff formerly engaged in routine tasks, such as responding to telephone inquiries for basic information and docketing, are now supporting other vital court functions or absorbing increased workloads.

## Cost Containment Efforts

Initiatives have been implemented that have helped the judiciary deal with budget constraints and enhance efficiency and effectiveness.

The judiciary's upgrade and consolidation of its network has enabled converged services, delivering voice, data, and video services over a single, secure network. One of the benefits of this network is the ability to support a judiciary-wide internet protocol telephone system, which is producing a reduction in telecommunication expenditures, consistent vendor solutions, and enhanced performance, reliability, and redundancy.

The judiciary has enhanced the use of strategic sourcing opportunities, such as the use of judiciary-wide contracts to obtain volume discounts, simplify acquisition of common-use products, and reduce administrative effort. Blanket purchase agreements have been awarded for products such as tablets, desktop and laptop PCs, accessories, printers, servers and support, and desktop, security, and server virtualization software and support.

The judiciary has a record of productivity enhancements and cost avoidance from new/improved IT systems, which provide efficiencies and help contain growth in future technology and staffing costs. For example, a single integrated financial system will allow timely access to data and support federal accounting standards, including the e-government requirement for daily reporting to the Department of Treasury. It will provide enhanced reporting capability, tracking and monitoring of civil and criminal debt imposed by the courts, handling of cash receipts, reporting of court payroll information, and management of travel expenses. Funding for these enhancements was reduced in fiscal year 2013 and curtailed in the first half of fiscal year 2014 as a result of budget sequestration. Funding for these efforts has been restored due to funding levels provided in fiscal years 2014 and 2015. The judiciary is now in the process of rebuilding and reestablishing an appropriate baseline for this initiative as well as requesting additional funding in fiscal year 2016 to begin deployment to the courts.

Building stable, reliable national applications and infrastructure provides the greatest opportunity to avoid costs associated with downtime, rework, and inefficiency, and requires a consistent, day-to-day focused effort. In addition, investments that result in reducing the complexity of information technology infrastructure and systems have the potential to produce savings and cost avoidances.

## Non-Appropriated Sources of Funds

In addition to annual appropriations deposited into the fund, the JITF is financed, to the extent authorized by Congress, by non-appropriated sources, including fee collections from providing the public with electronic access to court records (see Appendix 2), and unobligated carryforward balances from prior years. The amount of appropriated funds to be deposited is calculated based on current estimates of total obligation requirements offset by available non-appropriated sources of

funds. As non-appropriated sources of funding increase, the amount of deposited appropriated funds necessary to fund obligation requirements decrease. Conversely, if non-appropriated funding levels decrease, then additional appropriated funds may be required in order to ensure funds are available to meet critical IT requirements.

Savings and Encumbered Carryforward

JITF unobligated balances from prior years are derived from two sources. Balances categorized as savings are the result of reduced or deferred requirements, lower than anticipated costs, and increased efficiencies. The judiciary uses savings balances as a general offset to the appropriations deposit in the JITF. The second source of unobligated balances in the JITF is categorized as encumbered carryforward (slippage). During the course of the fiscal year, information technology

requirements may shift from one year to the next due to, for example, delays in awarding contracts or obtaining necessary equipment and infrastructure, technology changes or continued analyses of alternatives. While "slippage" becomes part of the overall unobligated balance in the JITF, the planned obligation of funds for the original purpose still exists – it has merely been delayed. As a result, total obligation requirements in the upcoming budget year may increase due to slippage; however, because the funding associated with this slippage is carried forward from the previous year and designated for the same purpose in the current year, there is no net increase to appropriation requirements. As budget estimates are updated throughout the fiscal year, the judiciary adjusts both its appropriation requirements and its total obligation requirements in the JITF to account for both "savings" and "slippage."

12.6

Table 12.2 Salaries and Expenses Obligations - Judiciary Information Technology Fund Program Requirements

($000)

| ($000) IT Program Component | A FY 2015 Projected Obligations | B FY 2014 Slipped Requirements | C FY 2015 Base Requirements (col a - col b) | FY 2016 Total Requirements | Change: FY 2015 Base Requirements to FY 2016 Requirements |
|---|---|---|---|---|---|
| Judicial Statistical & Reporting Systems | 10,064 | 821 | 9,243 | 11,322 | 2,079 |
| Administrative & Management Systems | 54,047 | 5,896 | 48,151 | 57,944 | 9,793 |
| Telecommunications Program | 66,347 | 1,144 | 65,203 | 65,820 | 617 |
| Infrastructure & Collaboration Tools | 100,326 | 5,054 | 95,272 | 126,611 | 31,339 |
| Court IT Allotments | 86,389 | 2,639 | 83,750 | 84,509 | 759 |
| Court Administration & Case Management | 18,940 | 1,293 | 17,647 | 18,142 | 495 |
| Court Support Reimbursable Program | 47,968 | 0 | 47,968 | 49,854 | 1,886 |
| TOTAL, SALARIES AND EXPENSES | 384,080 | 16,847 | 367,234 | 414,202 | 46,968 |

12.7

The following sections present the fiscal year 2016 requirements and discuss significant non-inflationary increases.

### Judicial Statistical & Reporting Systems

**FY 2016 Requirements:**    **$ 11,322,000**
**Requested Change from FY 2015:**    **$ 2,079,000**

This category includes systems to support gathering and reporting statistics in the judiciary; data analysis and management reporting across judiciary-wide data sources; and planning and decision-making with staffing, financial, and workload data.

Increases requested in this area are to expand analytic capabilities of the reporting systems.

### Administrative & Management Systems

**FY 2016 Requirements:**    **$57,944,000**
**Requested Change from FY 2015:**    **$ 9,793,000**

This program includes the judiciary's financial and personnel management systems, as well as systems to support and manage facilities projects, travel expenses, and judiciary web sites.

Increases in fiscal year 2016 reflect upgrades and enhancements to systems that support: integrated financial management; human resources; clerkship applications; and rent and property management.

### Telecommunications Program

**FY 2016 Requirements:**    **$ 65,820,000**
**Requested Change from FY 2015:**    **$ 617,000**

This program provides support for voice and data transmission services and telecommunications. The judiciary's communications program allows the judiciary to operate communications services for the appellate, district, and bankruptcy courts and for probation and pretrial services offices; as well as to procure communications equipment for new courthouses and for courthouses undergoing major repairs and alteration.

### Infrastructure & Collaboration Tools

**FY 2016 Requirements:**    **$ 126,611,000**
**Requested Change from FY 2015:**    **$ 31,339,000**

This category encompasses the building and maintaining of a robust, reliable and resilient judiciary-wide IT infrastructure. Included are the costs of hardware, software, security associated with the judiciary's full enterprise hosting and cloud computing services, and e-mail messaging systems. This budget area also includes the costs of IT systems support, maintenance, testing, and research.

The increase results from several major initiatives, including developing a hosting and cloud computing infrastructure and e-mail system replacement. An effort is underway to dramatically upgrade and expand the hosting and cloud computing infrastructure in order to (1) employ shared IT

12.8

equipment, software, and security resources effectively, thereby enabling courts to avoid significant costs; and (2) ensure continuity of operations in the event of disaster. Additionally, the judiciary seeks funding to begin the process of replacing the current aging e-mail system with a modern, comprehensive system to improve accessibility, efficiency, collaboration, and reliability.

### Court IT Allotments

**FY 2016 Requirements:**       **$ 84,509,000**
**Requested Change from FY 2015:**       **$ 759,000**

These allotted funds cover costs paid directly by the courts for operating, maintaining, and replacing computers, printers, local-area-network equipment, and software. Also included in this category are costs for local telecommunications services, equipment, and maintenance.

### Court Administration & Case Management

**FY 2016 Requirements:**       **$18,142,000**
**Requested Change from FY 2015:**       **$ 495,000**

This category encompasses the probation and pretrial services personnel case management system. Also included are tools to access critical case information and law enforcement databases; systems for juror qualification, management, and payment; as well as payments for private court-appointed counsel and expert services.

### Court Support Reimbursable Program

**FY 2016 Requirements:**       **$ 49,854,000**
**Requested Change from FY 2015:**       **$ 1,886,000**

This category funds staff that provides IT development, management, and maintenance services to the courts. This includes IT policy and planning guidance; architecture and infrastructure support; security services; development, testing, and implementation of national IT applications; IT training, and other administrative and IT support services on behalf of the courts.

The fiscal year 2016 budget request for the court support reimbursable program includes $49.9 million for the salaries, benefits, and related expenses that are reimbursed from the Salaries and Expenses account.

### PROGRAMS FUNDED FROM VOLUNTARY DEPOSITS FROM OTHER JUDICIARY ACCOUNTS

Occasionally, organizations within the judiciary that are not mandatory users of the JITF may deposit funds to assist them in management of their IT efforts. In recent years, the Court of Appeals for the Federal Circuit, the Court of International Trade, Federal Judicial Center, the U.S. Sentencing Commission, and the Court Security Office have made such deposits.

12.9

642

## Court of International Trade

At the beginning of fiscal year 2015, $1,008,476 was available in carryforward balances from the Judiciary Information Technology Fund, and $26,000 was anticipated to be available from Electronic Public Access receipts. Of this amount, the Court is planning to use $589,000 to purchase a second core switch for redundancy purposes; upgrade its conference phone system from analog to digital; continue its support of its video conferencing system, digital recording system, data network and voice connections and Virtual Private Network System (VPN); upgrade and support existing software applications; purchase new software applications to ensure the continued operational efficiency of the Court; replace computer desktops, monitors and printers in accordance with the judiciary's cyclical replacement program; provide wireless service, as well as broadband services for laptops; support Court equipment, including the network and core switches, by the purchase of yearly leasing and maintenance agreements; provide Court access to the Judiciary Data Communications Network (DCN); and provide training to the Court's technical staff in order to ensure that they are kept abreast of current trends in information technology and have the ability to support updated applications.

At the beginning of fiscal year 2016, the Court anticipates that $445,000 will be available in carryforward balances in the Judiciary Information Technology Fund. These funds will be used to continue the Court's information technology initiatives and to support the short term and long term information technology needs.

## Court Security

At the beginning of fiscal year 2015, $7,827,000 was available in carryforward balances from the JITF. Of this amount, the Court Security office is planning to use $3,839,000 for the facility access card (FAC) project requirements in fiscal year 2015. The FAC project is the judiciary's multi-year effort to meet the identification requirements of HSPD-12. This funding will support costs associated with implementing the FAC project, including costs for identification cards, card projection stations, and security contractor support.

At the beginning of fiscal year 2016, the Court Security office anticipates that $3,988,000 will be available in carryforward balances in the JITF in order to continue the FAC project implementation. Of this amount, the Court Security office is planning to use $2,952,000 for the facility access card (FAC) project requirements in fiscal year 2016.

## Federal Judicial Center

At the beginning of fiscal year 2015, the Federal Judicial Center had $725,000 available in the Judiciary Information Technology Fund. A total of $200,000 is planned for obligation in fiscal year 2015. These funds will provide for the estimated costs associated with IT infrastructure, contract services to support maintenance of IT systems and for planned life-cycle replacement of various office automation and technology equipment.

At the beginning of fiscal year 2016, the Center anticipates that $525,000 will be available to continue planned obligations for

12.10

IT needs similar to those planned in fiscal year 2015, and for cyclical server/web enhancement and maintenance, software licenses, fiber optic communication lines, networked printers and scanners and web/video based conferencing services to support distance education programming.

## Court of Appeals for the Federal Circuit

At the beginning of fiscal year 2015, $3,317,000 was available in carry forward balances from the Judiciary Information Technology Fund, and $85,000 is anticipated to be available from Electronic Public Access receipts. A total of $525,000 is planned for obligation in fiscal year 2015, and $475,000 is planned for obligation in fiscal year 2016.

In fiscal year 2015, the Court anticipates spending $525,000 to perform cyclical replacements of iPads, iPhones, printers, multifunction units, projectors and other miscellaneous IT supplies. The Court will perform required infrastructure upgrades such as installing a new wireless LAN controller; purchasing cabling materials and labor and new cards for the core switches; initiating cloud computing; and consolidating server hardware to implement VMware technology. The Court also plans to fund the remaining balance of the required Facilities Access Card (FAC) project for all Judges and Court employees. In continuing to implement CM/ECF and its related applications, the Court also will fund two dedicated and specialized contractors to complete work required. Next Gen is an update to the judiciary's current CM/ECF system, and its related add-on applications.

The Court anticipates spending $475,000 in fiscal year 2016 to perform cyclical replacements of laptops and iPads for both remote working and for COOP purposes. The Court also anticipates performing cyclical replacements on scanners, monitors and other miscellaneous IT supplies. In an effort to continue to implement and enhance CM/ECF and to prepare for Next Gen and its related add on applications, the Court will fund two specialized contractors to complete the work required and fund related travel costs pertaining to the project. Also, the Court will purchase software to migrate add-on applications to Next Gen and to create electronic learning modules and other training materials. Funds will also be used to replace parts for data closet cooling units and for a spare network switch and core line cards, cabling and other IT consumables.

The balance of the JITF account is being carefully monitored to ensure there are sufficient funds available to replace rapidly aging computer hardware and peripherals.

12.11

644

# APPENDIX 2 - ELECTRONIC PUBLIC ACCESS PROGRAM

## ELECTRONIC PUBLIC ACCESS PROGRAM

### GENERAL STATEMENT AND INFORMATION

The Electronic Public Access (EPA) program provides electronic public access to court information in accordance with federal statutes, judiciary policies, and user needs. The Internet-based Public Access to Court Electronic Records (PACER) service provides courts, litigants, and the public with access to court dockets, case reports, and over 500 million documents filed with the courts through the Case Management/Electronic Case Files (CM/ECF) system. In other words, PACER is a portal to CM/ECF, which is in turn integral to public access. In fiscal year 2014 alone, PACER processed over 500 million requests for information.

Currently, there are more than 1.8 million PACER user accounts; approximately one-third of all user accounts are active in a given year. Besides court staff, users include members of the bar, city, state and federal employees, and the general public. The biggest user is the Department of Justice. Other than the Department of Justice, the top 10 users are major commercial enterprises or financial institutions. During fiscal year 2014, the judiciary's PACER Service Center established over 186,000 new PACER accounts and responded to more than 223,000 telephone and email requests.

Pursuant to Congressional directives, the Electronic Public Access program is funded entirely through user fees set by the Judicial Conference of the United States. Fees are deposited in a special account in the U.S. Treasury and are then used by the Judicial Conference exclusively to fund the entire cost of the judiciary's public access program, including telecommunications, replication, and archiving expenses, the Case Management/Electronic Case Files system, electronic bankruptcy noticing, Violent Crime Control Act Notification, on-line juror services, and the courtroom technology program.

User fees are expected to total $145 million in fiscal year 2016. Of these fees, the vast majority, approximately 70 percent of revenue, is attributable to less than 1 percent of "power-users," which are almost exclusively comprised of financial institutions or other major commercial enterprises which collect massive amounts of data for aggregation and resale. There are no added fees to attorneys or parties for filing documents over the Internet using CM/ECF.

Over the past year, the judiciary has continued to work to achieve further savings in the area of bankruptcy noticing by encouraging the courts to use electronic noticing, which includes noticing debtors electronically. Electronic Bankruptcy Noticing (EBN) now accounts for 38 percent of the notices distributed by the Bankruptcy Noticing Center (BNC), up from 35.8 percent last year. All bankruptcy courts use the BNC, which transmitted 109.3 million notices in fiscal year 2014, with annual cost-savings of close to $10 million resulting from the EBN program.

The judiciary continues to seek to improve electronic public access to its records, and a number of initiatives have been put into place to broaden public access, including:

Appendix 2.1

- *Opinion Initiative.* In September 2012, the Judicial Conference of the United States approved national implementation of the program to provide access to court opinions via the Government Printing Office's Federal Digital System (FDSys) and agreed to encourage all courts, at the discretion of the chief judge, to participate in the program. Ninety-five courts are live, with over 1.19 million individual court opinions available on FDSys. This has proven to be extremely popular with the public. Federal court opinions are one of the most utilized collections on FDSys, which includes the Federal Register and Congressional bills and reports. FDSys is available free of charge via the Internet at www.gpo.gov.

- *Notification of Case Activity.* All appellate courts, 64 district courts, and 89 bankruptcy courts have implemented an Internet tool, RSS, to "push" notification of docket activity to the public free of charge, much like a Congressional committee might notify its RSS users of press releases, hearings, or markups. The public can easily stay informed of new case openings, filings and docketed events provided by a court's RSS feed. The RSS feed includes automatic notification of activity in all cases including summarized text, such as the name of the document filed, with links to the document and docket in PACER.

- *Violent Crime Control Act Notification.* Ninety-four districts have implemented the Law Enforcement Notification System (LENS). LENS is a web-based system used to provide law enforcement with information on offenders in accordance with the Violent Crime Control and Law Enforcement Act of 1994. The information transmitted includes a photo of the offender, up-to-date contact information, and all other information the Act requires. Law enforcement agencies that are enrolled in LENS automatically receive the new information on offenders for their use.

- *Debtor Electronic Bankruptcy Noticing.* The judiciary has established a new program, known as Debtor Electronic Bankruptcy Noticing (DeBN), specifically for debtors to receive court notices and orders electronically, upon request. The DeBN program has been piloted by five bankruptcy courts and will be made available for use by all bankruptcy courts during fiscal year 2015.

CM/ECF revolutionized the way federal courts and the bar manage cases and documents. The transition to a Next Generation of CM/ECF is well underway. The requirements-gathering phase of the project concluded in March 2012, as groups of judges, chambers staff, clerks, court staff and Administrative Office staff identified and prioritized hundreds of functional requirements. The project also received input from the bar, academia, government agencies, and others through interviews, focus groups and surveys of approximately 10,000 of the judiciary's stakeholders. The project is in the design and development phase. The first Next Generation release was implemented in the Second and Ninth Circuit Courts of Appeals in the fall of 2014. This will be followed by full transition over several years. The goals of the project include: improving efficiency and integration among the appellate, district, and bankruptcy systems; achieving greater consistency, especially for

Appendix 2.3

external users; collecting more case-related statistics; and sharing data with other judiciary systems.

## Obligations of Funds from Electronic Public Access Receipts

Funds from the EPA receipts fund operations, maintenance, and improvements in EPA programs. The table on page 2.4, which breaks out obligations by program and year, reflects increases in several program components.

For fiscal year 2016, revenue is projected to total $145 million. Total revenue for fiscal year 2014 totaled $144 million, and revenue is estimated at $145 million in fiscal year 2015. From fiscal year 2007 to fiscal year 2013, PACER revenue more than doubled, growing from $65 million to $147 million, with the majority of revenue coming from major commercial enterprises and financial institutions. Beginning in fiscal year 2014, there has been a decline in new registrations and a clear leveling off in usage and revenue. This decline is fueled, in part, by the decline in bankruptcy filings.

Appendix 2.4

**Table A-2.1 Utilization of Electronic Public Access Receipts & Prior Year Recoveries ($000)**

| Category | FY 2014 Actual | FY 2015 Plan 1/ | FY 2016 Request |
|---|---|---|---|
| Public Access Services | 15,500 | 23,950 | 22,640 |
| CM/ECF Development, Operations, and Maintenance | 39,246 | 36,573 | 36,189 |
| Courtroom Technology | 26,064 | 26,622 | 26,962 |
| Communications Infrastructure, Services, and Security | 38,310 | 43,110 | 39,648 |
| Electronic Bankruptcy Noticing | 10,005 | 9,906 | 7,934 |
| Allotments to the Courts | 10,754 | 13,210 | 12,545 |
| Web-based Juror Services | 2,451 | 2,033 | 1,911 |
| Violent Crime Control Act Notification | 475 | 509 | 457 |
| **TOTAL** | **142,805** | **157,913** | **148,286** |

1/ Excludes $26.8 million in encumbered carryforward (slippage).

649

## ADMINISTRATIVE PROVISIONS - THE JUDICIARY
## (INCLUDING THE TRANSFER OF FUNDS)

Sec. 301. Appropriations and authorizations made in this title which are available for salaries and expenses shall be available for services as authorized by 5 U.S.C. 3109.

Sec. 302. Not to exceed 5 percent of any appropriation made available for the current fiscal year for the Judiciary in this Act may be transferred between such appropriations, but no such appropriation, except ''Courts of Appeals, District Courts, and Other Judicial Services, Defender Services'' and ''Courts of Appeals, District Courts, and Other Judicial Services, Fees of Jurors and Commissioners'', shall be increased by more than 10 percent by any such transfers: *Provided,* That any transfer pursuant to this section shall be treated as a reprogramming of funds under sections 604 and 608 of this Act and shall not be available for obligation or expenditure except in compliance with the procedures set forth in section 608.

Sec. 303. Notwithstanding any other provision of law, the salaries and expenses appropriation for ''Courts of Appeals, District Courts, and Other Judicial Services'' shall be available for official reception and representation expenses of the Judicial Conference of the United States: *Provided,* That such available funds shall not exceed $11,000 and shall be administered by the Director of the Administrative Office of the United States Courts in the capacity as Secretary of the Judicial Conference.

Sec. 304. Section 3314(a) of title 40, United States Code, shall be applied by substituting ''Federal'' for ''executive'' each place it appears.

Sec. 305. In accordance with 28 U.S.C. 561–569, and notwithstanding any other provision of law, the United States Marshals Service shall provide, for such courthouses as its Director may designate in consultation with the Director of the Administrative Office of the United States Courts, for purposes of a pilot program, the security services that 40 U.S.C. 1315 authorizes the Department of Homeland Security to provide, except for the services specified in 40 U.S.C. 1315(b)(2)(E). For building-specific security services at these courthouses, the Director of the Administrative Office of the United States Courts shall reimburse the United States Marshals Service rather than the Department of Homeland Security.

[Sec. 306. (a) Section 203(c) of the Judicial Improvements Act of 1990 (Public Law 101–650; 28 U.S.C. 133 note), is amended in the matter following paragraph (12)—

(1) in the second sentence (relating to the District of Kansas), by striking ''23 years and 6 months'' and inserting ''24 years and 6 months''; and

(2) in the sixth sentence (relating to the District of Hawaii), by striking ''20 years and 6 months'' and inserting ''21 years and 6 months''.

(b) Section 406 of the Transportation, Treasury, Housing and Urban Development, the Judiciary, the District of Columbia, and Independent Agencies Appropriations Act, 2006 (Public Law 109–115; 119 Stat. 2470; 28 U.S.C. 133 note) is amended in the second sentence (relating to the eastern District of

13.1

650

Missouri) by striking ''21 years and 6 months'' and inserting ''22 years and 6 months''

(c) Section 312(c)(2) of the 21st Century Department of Justice Appropriations Authorization Act (Public Law 107–273; 28 U.S.C. 133 note), is amended—

(1) in the first sentence by striking ''12 years'' and inserting ''13 years'';

(2) in the second sentence (relating to the central District of California), by striking ''11 years and 6 months'' and inserting ''12 years and 6 months''; and

(3) in the third sentence (relating to the western district of North Carolina), by striking ''10 years'' and inserting ''11 years''.]

[Sec. 307. Section 84(b) of title 28, United States Code, is amended in the second sentence by inserting ''Bakersfield,'' after ''shall be held at''.]

[Sec. 308. Section 3155 of title 18, United States Code, is amended—

(1) in the first sentence, by deleting the words ''and the Director''; and

(2) in the first sentence, by inserting at the end ''and shall ensure that case file, statistical, and other information concerning the work of pretrial services is provided to the Director''.]

*Sec. 306. (a) Section 1871(b) of title 28, United States Code, is amended in paragraph (1) by striking ''$40'' and inserting ''$50''. (b) EFFECTIVE DATE.—The amendment made in subsection (a) shall take effect 45 days after the date of enactment of this Act.*

This title may be cited as the ''Judiciary Appropriations Act. [2015] 20/16''.

Explanation of Changes

Old Section 306: The language extending these temporary judgeships for one year was enacted on December 16, 2014 as part of the Consolidated and Further Continuing Appropriations Act, 2015 (P.L. 113–235). It is proposed for deletion because the judiciary is hopeful a judgeship bill will be enacted during fiscal year 2016 that will address the need to convert these temporary judgeships to permanent.

Old Section 307: It is proposed for deletion because that language is now permanent.

Old Section 308: It is proposed for deletion because that language is now permanent.

New Section 306: This section increases the daily juror attendance fee by $10 (from $40 to $50) to compensate jurors more adequately for their services. Although inflation and the cost of living have increased each year, the juror fee has not been increased since December 1990. Therefore, the proposed $10 increase will adjust the compensation paid to jurors to account for cost of living increases since the passage of the Judicial Improvements Act of 1990.

13.2

651

**COURTHOUSE CONSTRUCTION**

COURTHOUSE CONSTRUCTION FUNDING
AND THE
JUDICIARY COURTHOUSE PLANNING AND PRIORITIZATION PROCESS

This presents the judiciary's courthouse construction space priorities and needs for fiscal year 2016, which must be funded from the General Services Administration's (GSA) capital construction budget. The judiciary does not have the real property authority necessary to construct its own facilities and must rely on GSA to construct court facilities. Fiscal year 2010 was the last time funding for the construction of a new courthouse was included in the President's Budget Request. Without stable and consistent funding for GSA's courthouse construction budget, the ability of the judiciary to carry out its constitutional mission of administering justice is significantly impaired. As a result, the judiciary requests $517.4 million for courthouse construction projects in the GSA capital construction account in fiscal year 2016. Further justification for these funds is provided below.

FISCAL YEAR 2016 COURTHOUSE CONSTRUCTION PRIORITIES

On September 16, 2014, the Judicial Conference of the United States approved a *Five-Year Courthouse Project Plan for Fiscal Years 2016-2020* (Plan) which sets forth the judiciary's priorities for courthouse construction funding by fiscal year. For fiscal year 2016, the Plan includes $474.3 million for the construction of three new courthouses: Nashville, Tennessee; Toledo, Ohio; and Charlotte, North Carolina; and $43.1 million for the site and design of a new courthouse in Des Moines, Iowa.[1]

1.  *Nashville, Tennessee -- $188 million*

    The Plan lists Nashville, Tennessee as the judiciary's top courthouse space priority in fiscal year 2016. In fiscal year 2001, Congress provided $14.7 million for the acquisition of the site. In fiscal year 2003, Congress provided $7.095 million for the design; and in fiscal year 2004, GSA reprogrammed $4.3 million for unforeseen site conditions. In total, $26.1 million has been provided for the site and design of the building. To date, a total of $25.1 million has been obligated -- the site has been acquired and the design is 80 percent complete.

    The construction of the Nashville courthouse is requested to resolve severe security, space, and operational deficiencies in the existing facility. The Estes Kefauver Federal Building in downtown Nashville has an insufficient number of courtrooms for district judges and several magistrate judges use hearing rooms instead of courtrooms. The building houses seventeen different

---

[1] All cost estimates are provided by GSA Central Office and subject to future verification. Since the approval of the September 16, 2014, Five-Year Courthouse Project Plan for Fiscal Years 2016-2020, GSA provided an updated cost estimate for the project in Nashville, Tennessee, and an initial cost estimate for site acquisition and design of the project in Des Moines, Iowa.

14.1

federal entities and there are no separate circulation patterns for judges, the public, and prisoners. In addition, the current building is non-compliant for the accessibility of persons with disabilities, and its present condition is in need of repair. A new courthouse would be designed to support the installation of modern technology and electronic equipment, and also to provide ample courtrooms that meet the *U.S. Courts Design Guide* size recommendations.

## 2. *Toledo, Ohio – $109.3 million for additional design and construction*

The Toledo courthouse is number two on the judiciary's Plan. In fiscal year 2004, Congress provided $6.5 million for site acquisition and the design of the building. The design is approximately 66 percent complete and a total of $5.2 million has been obligated. GSA estimates that $109.3 million is needed for additional design and construction of the project.

Built in 1932, the existing courthouse has never had a comprehensive renovation or major remodeling. The mechanical, electrical, and plumbing systems all need to be replaced. The courthouse does not have a fire protection sprinkler system or code compliant egress stairs. District and senior judges use undersized and poorly configured courtrooms and accommodating multi-defendant cases and large civil trials is difficult. None of the courtrooms or hearing rooms meet accessibility requirements. In addition, significant security deficiencies pose risks to the public and those who work in the building. Prisoners, the public, and judges use the same public elevators and corridors. The building does not have a sally port, so the judges and prisoners share the same entry point into the courthouse. There are also no courtroom holding cells. A new courthouse would be designed to house all court units and reduce the need for leased space. There would also be secure circulation patterns and courtrooms that meet the *U.S. Courts Design Guide* size recommendations.

## 3. *Charlotte, North Carolina – $177 million for construction*

The Charlotte courthouse annex is number three on the judiciary's Plan. In fiscal year 2004, Congress provided $8.5 million for site acquisition and design of a new building. In 2005, a land exchange with the City of Charlotte gave GSA a site for a new courthouse while the City acquired the existing courthouse. The City has been leasing the courthouse to GSA since 2005. In March 2012, GSA and the court assembled an internal design team to explore options for utilizing and adding an annex to the existing courthouse as an alternative to new construction. This exercise confirmed that an annex/renovation option will fit on the existing site as a viable course of action. At the present time, GSA is actively involved in negotiations with the City to reacquire the existing Charlotte courthouse and site.

The construction of an annex to the Charlotte courthouse is requested to resolve severe security, space, and operational deficiencies in the existing facility. The Charles R. Jonas Federal Building and U.S. Courthouse was constructed in 1918 for the District Court and U.S. Post Office. An addition was completed in 1934. The U.S. Post Office moved out of the building in 1982. Today, the roof and the heating/ventilation/air conditioning systems are inadequate and need replacement. Only the

14.2

basement maintenance area has a fire sprinkler system. Prisoners, judges, and the public use the same public corridors, and judges and prisoners must use the same freight elevator. Most areas of the courthouse have no provisions for handicap accessibility. There are no courtroom holding cells or sally port. For the number of resident judges, the courthouse is short three district judge courtrooms and one magistrate judge chambers. District court clerk operations and staff are split between the courthouse and leased space.

### 4. *Des Moines, Iowa -- $43.1 million for site and design*

The Des Moines courthouse is number four on the judiciary's Plan. A site has not yet been acquired and no funding for the project has been provided. GSA estimates that $43.1 million is needed for site and design.

The U.S. Courthouse complex in Des Moines consists of the federally-owned U.S. Courthouse and the U.S. Courthouse Annex, an adjacent leased building. The U.S. Courthouse, built in 1932, houses the District Court and the U.S. Marshals Service (USMS). The U.S. Courthouse Annex, built in 1994, houses the Bankruptcy Court, Court of Appeals, Probation Office, the U.S. Attorney's Office (USAO), and additional USMS space. The U.S. Courthouse lacks adequate security, has serious operational limitations, and several building systems (mechanical, plumbing, and life safety) have reached the end of their expected useful life. Most areas of the courthouse lack separate circulation for judges, prisoners, and the public. None of the four courtrooms nor the hearing room has holding cells. All judges' chambers are accessed via public corridors. The district clerk's office is fragmented over three floors. Jury assembly is located in a public hallway, and portions of the third and fourth floor do not have a fire protection sprinkler system.

A new courthouse would be designed to house all court units in one facility, eliminating the need for leased space. A new facility would have proper security measures in addition to courtrooms, chambers, and office spaces that meet *U.S. Courts Design Guide* recommendations.

## BACKGROUND:

### COURTHOUSE CONSTRUCTION MORATORIUM

In September 2004, as a response to budgetary shortfalls in fiscal year 2005 and possibly beyond, the Judicial Conference of the United States approved a 24-month moratorium on the planning and budgeting for courthouse construction projects while a re-evaluation of the judiciary's long-range facilities planning process took place. The re-evaluation was to include an assessment of the underlying assumptions used to project space needs and how courts could satisfy those needs with minimal cost in a constrained short- and long-term budgetary environment.

14.3

The moratorium applied to 35 projects on the *Five-Year Courthouse Project Plan for Fiscal Years 2005 - 2009* that did not yet have any congressional authorization or appropriations. The 24-month delay also applied to seven other projects that had either an authorization, or were funded, but not yet under design.

The 15 courthouse projects that had received some congressional funding, many of which were designed and ready to be constructed, were not subject to the moratorium and were allowed to remain on the Plan.

### THE *ASSET MANAGEMENT PLANNING PROCESS*

The re-evaluation resulted in the development of the Asset Management Planning (AMP) process, a new long-range space planning methodology developed during the moratorium. It was approved by the Judicial Conference in March 2008. The AMP process constitutes an enhancement of the former long-range planning methodology in that it incorporates rigorous facility assessments and consistently applied standards and guidelines to evaluate space needs in federal courthouses throughout the nation. The objective of the process is to help the judiciary achieve the best value per dollar for courthouse projects in both the short- and long-term. In addition to addressing cost containment concerns related to space, it also supports the *Strategic Plan for the Federal Judiciary*, captures lessons learned from past planning efforts, and applies changes recommended by the Government Accountability Office (GAO).

Deliverables of the AMP process include a district-wide Long-Range Facilities Plan, a Facility Benefit Assessment (FBA) score for each courthouse, and an Urgency Evaluation (UE) ranking for each city. Through these deliverables, the judiciary identifies courthouse space issues by location, preliminary housing solutions, and relative urgency needs compared to other courts nationwide. The FBA score is based upon factors grouped into one of four weighted categories: building condition (30 percent); space functionality (30 percent); security (25 percent); or space standards (15 percent).

### URGENCY *RANK EVALUATION*

The UE ranking is used to determine which courthouses throughout the nation have the most urgent space needs, regardless of the size of the courthouse or type of housing solution. The UE ranking does not necessarily mean a location will require a new courthouse; rather it indicates the judiciary's prioritization of its space needs. For example, some space needs on the UE list may be remedied through a renovation project or the acquisition of lease space, while others with more severe needs may require the construction of a new courthouse or courthouse annex/addition.

14.4

There are four weighted factors used to calculate a courthouse location's UE ranking. They are:

1. The FBA results – 40 percent
2. Judges without chambers – 30 percent
3. Judges without courtrooms based on courtroom sharing policies – 20 percent
4. Projected caseload growth – 10 percent

The Urgency Evaluation Results List is updated annually to add new locations as they are evaluated under the AMP process and to reflect changes in courtroom and chambers needs occurring during the course of the year. To date, of the 94 districts and 12 circuit headquarters throughout the country, 81 have been evaluated, resulting in a UE ranking for each courthouse within those districts and circuits; 19 additional AMP reviews are currently underway or scheduled for fiscal year 2015, with 6 still to be initiated.

## GSA FEASIBILITY STUDIES

Feasibility studies are conducted by GSA upon request by the judiciary and as funding permits. After a project has been assigned a UE ranking, the judiciary determines whether to request that GSA conduct a feasibility study of the location. Under the AMP process, preliminary housing solutions are developed; final housing solutions are later identified during the feasibility study process, along with a thorough analysis of project alternatives and costs. A request for a feasibility study will not necessarily result in a request for a new courthouse at that location. GSA may instead recommend that a courthouse renovation or addition/annex will suffice to meet space needs. A project cannot be considered for placement on the judiciary's Courthouse Construction Plan unless it has first undergone a feasibility study by the GSA and that study recommends that a new courthouse or annex/addition be built.

## JUDICIARY'S COURTHOUSE PROJECT PLAN

The judiciary compiles a prioritized list of federal construction projects representing the judiciary's most urgent courthouse construction needs.

Between fiscal year 2008 and fiscal year 2015, the *Five-Year Courthouse Project Plans* included the original 15 courthouses that were grandfathered during the moratorium and not subject to the new AMP process. However, in response to an April 2013 GAO recommendation, in August 2013, the Executive Committee, on behalf of the Judicial Conference, endorsed requiring all projects on the *Five-Year Courthouse Project Plan*, that had not already done so to undergo evaluation using the new AMP Process.

The new Plan that was approved by the Judicial Conference in September 2014, incorporates the results of the AMP evaluations and with the one exception of the Nashville, Tennessee project, re-prioritizes projects solely on the basis of UE scores. The Judicial Conference retained Nashville as the number one priority based on the significant investment that has already been made in the project.

For the purpose of the annual budget process, this discussion of courthouse construction needs represents the judiciary's priority space requirements for fiscal year 2016 only.

14.5

657

# CAPTIAL SECURITY PROGRAM

658

## JUDICIARY CAPITAL SECURITY PROGRAM

**This presents the judiciary's requirements and priorities for the Capital Security Program (CSP), which is funded from within the General Services Administration's (GSA) Federal Buildings Fund. The Capital Security program provides funding to address serious security deficiencies in existing courthouse buildings where physical renovations are viable in lieu of constructing a new courthouse. The authority necessary to make renovations of this size falls under the jurisdiction of the GSA. The judiciary requests $20 million in fiscal year 2016 for GSA to address security deficiencies at two existing courthouses through the Capital Security Program.**

**Capital Security Projects Requested for Fiscal Year 2016.** The judiciary requests **$20 million** for capital security projects in fiscal year 2016. Funds are requested for the following locations.[1]

1. **Terry Sanford Federal Building, Raleigh, North Carolina. $11 million.** Security deficiencies at this courthouse could be addressed by adding and/or reconfiguring two or three elevators and constructing additional secure corridors.

2. **U.S. Post Office and Courthouse, Alexandria, Louisiana. $9 million.** Security deficiencies at this courthouse could be addressed by enclosing judges parking, providing an elevator and a corridor addition to allow the judges secure circulation. The USMS would have new space that includes operations, an enclosed sally port, holding cells, prisoner elevator, and an interlock corridor addition for secure prisoner transport. An additional $2.2 million in Judiciary Component B funding is being leveraged to build an additional chambers and courtroom to maximize improvement to the facility.

## BACKGROUND

Controlling the anticipated growth in space costs has been a major cost containment focus of the judiciary over the past decade. In 2004, in response to budgetary shortfalls in fiscal year 2005 and possibly beyond, the Judicial Conference of the United States began a re-evaluation of the Judiciary's long-range facilities planning process. The re-evaluation was to include an assessment of the underlying assumptions used to project space needs and how courts could satisfy those needs with minimal cost in a short-and-long term constrained budgetary environment.

---

[1] All project cost estimates are subject to verification by GSA.

15.1

This re-evaluation resulted in Asset Management Planning (AMP), a new, updated long-range space planning methodology that focuses on cost, and places a greater emphasis on space availability in an existing facility, rather than on security or building condition, when determining whether to recommend the construction of a new courthouse. Using this new methodology, existing buildings will not be replaced with modern courthouses based on security deficiencies alone. However, the most significant security deficiencies must still be addressed and can be done in some smaller buildings with considerably less funding than would be required for a new facility.

**PROGRAM DESCRIPTION**

The Capital Security Program (CSP) was endorsed by the Judicial Conference of the United States in September 2010 to assist courts at locations that have significant security deficiencies, but may not qualify for a new courthouse building that would, among other things, address its security needs. The purpose of CSP is to improve physical security in buildings occupied by the judiciary. The program goals include:

- Utilizing existing building assets and federal resources cost-effectively;
- Addressing security deficiencies which place the public and federal employees at risk; and
- Providing a low cost alternative to high-cost capital improvements.

The Judiciary's Capital Security program was first funded in fiscal year 2012, when Congress designated $20 million from the GSA's Federal Buildings Fund to address security deficiencies in federal courthouses using mechanisms such as building additional, secure corridors; adding or reconfiguring elevators; enclosing prisoner drop-off areas to create sally ports; creating visual barriers; and reconfiguring security screening areas. Project prioritization, selection, and implementation are handled collaboratively by stakeholders from the courts, the United States Marshals Service (USMS), and the GSA, and involve assessing building conditions, the viability of long-term use, and structural capacity for stand-alone architectural solutions.

This valuable program, where applicable, achieves greater security at federal courthouses nationwide at a fraction of the cost of new courthouse construction. In addition to the $20 million received in fiscal year 2012, the CSP received another $20 million in fiscal year 2013, as well as $20 million in fiscal year 2015. Congress did not provide funding for the program in fiscal year 2014.

**PROJECT SELECTION PROCESS**

Renovation projects that enhance security are selected for the program through an objective and collaborative review process that includes stakeholder representatives from local courts and their circuit judicial councils. The USMS, GSA, the Judicial Conference

15.2

Space and Facilities Committee in consultation with the Judicial Conference Judicial Security Committee, and the Administrative Office of the U.S. Courts (AO). The process consists of:

1. **Preliminary List.** Compiling a list of potential Capital Security Program projects starts with data collected through the Judiciary's AMP process that identifies courthouses with poor security ratings nationwide. These data are then compared with risk assessment data collected independently by the USMS, and with data about government facilities that are in need of physical improvement collected independently by GSA. The preliminary list of potential projects is then compiled jointly based on a comprehensive assessment of these sources of data.

2. **In-Depth Analysis and Resulting Short List.** Each project on the preliminary list is then reviewed and validated during a more in-depth analysis conducted by stakeholder representatives of local courts and their circuit judicial councils, the USMS, GSA, and the AO. This review looks at specific security deficiencies at each courthouse and identifies potential conceptual solutions. Potential projects are then evaluated against a list of factors to determine the relative priority of the potential projects. Factors may include whether there is a separate circulation pattern for judges, prisoner movement, and the public; number of resident judges; type of caseload and proceedings; other repair and alteration projects planned; USMS risk assessment and incident reports; and the presence of high risk prisoners regularly in the courthouse. The resulting short list is based on the consensus reached by all stakeholder representatives.

As part of this process, the judiciary, GSA, and the USMS also identify small, low-cost projects as potential "*filler*" projects to help ensure the entire amount appropriated will be used. For example, a filler project would be one where a needed holding cell could be constructed for $200,000, or a secure corridor could be constructed for $900,000. For these projects, a capital security program study is not necessary because the project is a limited, straightforward one, and/or the USMS or GSA may already have a cost estimate for the project.

3. **Space and Facilities Committee Review and Validation.** The Space and Facilities Committee will review, and in consultation with the Judicial Security Committee, approve the specific courthouse locations to undergo a "capital security program" study.

4. **Capital Security Study and Final Recommendations.** Using judiciary funding, the AO then contracts with a term architect-engineering firm to conduct a capital security study for each court location approved. Each study reviews the security issues specific to that court location, identifies space solutions to improve security, and documents the three best options with corresponding budget estimates. The CSP studies also identify other projects at these locations already planned or underway by the USMS, GSA, or the judiciary and coordinate design solutions for the projects where possible. The respective court and

15.3

circuit judicial council, along with the USMS and GSA, review the results and reach a consensus on which of the three options to recommend.

The Space and Facilities Committee's Subcommittees on Space Planning and Rent Management review the option and budget for each court location, including rent impacts, if applicable, and recommend a final list of projects to the Space and Facilities Committee. The Space and Facilities Committee then reviews the recommendation and approves the court facilities to proceed as a Capital Security Program project.

5. **Notification to GSA.** The GSA is advised of the result of the Space and Facilities Committee's review of the final list of projects. If the list of projects exceeds the Congressional budget limitation for that fiscal year, projects would be moved to the next fiscal year, while keeping their rank order.

The flow chart below illustrates the steps involved in the approval of CSP projects for funding.

15.4

662



High-level Judiciary Capital Security Program Project Plan

Nov 2014

15.5

**Status of on-going CSP Projects:**

**Fiscal Year 2012 CSP Projects.** The following is the status of the four projects selected to participate in the CSP in fiscal year 2012:

1. **Frank M. Scarlett Building, Brunswick, Georgia.   $5.5 million.** Security deficiencies at this courthouse are being addressed by building entry improvements, reconfiguring corridors, adding elevators, enclosing a sally port, and creating secure parking for judges. The design is underway, with anticipated completion of construction in January 2016.

2. **Federal Building and U.S. Courthouse, Benton, Illinois.  $4.7 million.** Security deficiencies at this courthouse are being addressed by reconfiguring/constructing new corridors, adding an elevator, enclosing a sally port, and constructing visual barriers. Construction is expected to be completed early 2015.

3. **U.S. Courthouse and Post Office, Lexington, Kentucky.  $6.7 million.** Security deficiencies at this courthouse are being addressed by reconfiguring/constructing new corridors, adding elevators, enclosing a sally port, and constructing visual barriers. The design-build contract for this project is in the process of being awarded, with the anticipated completion of construction in September 2016.

4. **Hato Rey Complex, Clemente Ruiz-Nazario U.S. Courthouse and Federico Degetau Federal Building, San Juan, Puerto Rico.  $3.1 million.** Security deficiencies at this courthouse are being addressed by reconfiguring/constructing new corridors and adding elevators for prisoners.  The project is currently under construction and is on time and under budget. The anticipated completion of construction is April 2015.  A CSP study is currently underway in Puerto Rico to evaluate additional significant security concerns not addressed by the fiscal year 2012 project.

**Fiscal Year 2013 CSP Projects.** Three projects were initially selected to participate in the CSP in fiscal year 2013.  However, two of the three projects were not included in GSA's financial plan because of the higher-than anticipated cost for the St. Thomas project.

1. **Ron De Lugo Federal Building, St. Thomas, U.S. Virgin Islands.  $20 million.** The project scope of this capital security project includes new judges' and prisoner elevators, a judges' garage, a U.S. Marshals Service sally port, and other security improvements to the site.  This project is in the solicitation phase, with a contract award anticipated this winter.

15.6

664

**Fiscal Year 2015 CSP Projects.** The following three locations were endorsed by the Space and Facilities Committee for participation in the CSP in fiscal year 2015.

1. **J. Robert Elliot Federal Building and U.S. Courthouse, Columbus, Georgia.** **$6.7 million.** Security deficiencies at this courthouse would be addressed by enclosing a sally port, adding one or two elevators (for prisoners and judges), and reconfiguring/constructing new corridors.

2. **Federal Building and U.S. Courthouse, Monroe, Louisiana. $6.1 million.** Security deficiencies at this courthouse would be addressed by enclosing a sally port, adding one or two elevators (for prisoners and judges), and reconfiguring/constructing new corridors. The estimated CSP cost of this project is $6.1 million. An additional $1.6 million in Judiciary funding will be used to build a new courtroom, leveraging funding to maximize project scope and address courthouse needs in lieu of building a new courthouse.

3. **U.S. Courthouse and Post Office Building, Texarkana, Texas/Arkansas. $7.2 million.** Security deficiencies at this courthouse would be addressed by consolidating the U.S. Marshals space into one location, enclosing a sally port, adding one or two elevators (for prisoners and judges), building corridors, and possibly reconfiguring screening areas.

15.7