# Exhibit B

# FINANCIAL SERVICES AND GENERAL GOVERNMENT APPROPRIATIONS FOR 2015

# HEARINGS

BEFORE A

## SUBCOMMITTEE OF THE

## COMMITTEE ON APPROPRIATIONS

## HOUSE OF REPRESENTATIVES

ONE HUNDRED THIRTEENTH CONGRESS

SECOND SESSION

---

SUBCOMMITTEE ON FINANCIAL SERVICES AND GENERAL GOVERNMENT
APPROPRIATIONS

### ANDER CRENSHAW, Florida, *Chairman*

| | |
|---|---|
| MARIO DIAZ-BALART, Florida | JOSÉ E. SERRANO, New York |
| TOM GRAVES, Georgia | MIKE QUIGLEY, Illinois |
| KEVIN YODER, Kansas | MARCY KAPTUR, Ohio |
| STEVE WOMACK, Arkansas | ED PASTOR, Arizona |
| JAIME HERRERA BEUTLER, Washington | |
| MARK E. AMODEI, Nevada | |

NOTE: Under Committee Rules, Mr. Rogers, as Chairman of the Full Committee, and Mrs. Lowey, as Ranking
Minority Member of the Full Committee, are authorized to sit as Members of all Subcommittees.

JOHN MARTENS, WINNIE CHANG, KELLY HITCHCOCK,
ARIANA SARAR, and AMY CUSHING,
*Subcommittee Staff*

---

## PART 2

## FY 2015 BUDGET JUSTIFICATIONS

|  | Page |
|---|---|
| **Executive Office of the President** | **1** |
| **The Judiciary** | **237** |



---

U.S. GOVERNMENT PRINTING OFFICE

87–980                    WASHINGTON : 2014

# The Judiciary

# Fiscal Year 2015

# Congressional Budget Summary

PREPARED BY
THE ADMINISTRATIVE OFFICE OF THE U.S. COURTS
WASHINGTON, DC
February 2014

# FOREWORD

## Overview

The Judiciary's fiscal year 2015 budget request of $6.7 billion is a 3.4 percent increase over the Judiciary's fiscal year 2014 enacted discretionary appropriations level of $6.5 billion.

The Judicial Conference is grateful for the continued support from Congress in this difficult fiscal environment. The fiscal year 2014 funding levels, which are near pre-sequestration levels, will help the Judiciary recover from the severe reductions experienced in fiscal year 2013. During fiscal year 2014, most court units will be able to maintain on-board payrolls and begin to backfill a portion of the 3,200 staff lost since 2011. Probation and pretrial officers will have the tools to monitor defendants' and offenders' behavior, such as the use of GPS and other technologies to track defendants' and offenders' whereabouts in the community. The fiscal year 2014 funding will maintain staffing levels in federal defender organizations and allow many of the positions lost due to sequestration to be backfilled, fund fully fiscal year 2013 panel attorney payments (including the fiscal year 2013 deferrals), and restore fully the temporary $15 per hour panel attorney rate cut that was implemented as an emergency measure in September 2013. Moreover, the fiscal year 2014 appropriations will allow adequate security at our courthouses and avoid any shortfalls in jury trials.

## Fiscal Year 2015 Budget Request

The Judicial Conference understands the challenging fiscal situation facing our nation. With this in mind, the Judiciary's fiscal year 2015 request seeks a modest increase in funding to support its Constitutional and statutory mission. This funding will continue to help the Judiciary recover from the impacts of sequestration.

For the courts' Salaries and Expenses account, the Judiciary requests an increase of $168.9 million in discretionary appropriations over the fiscal year 2014 enacted level. This request is a current services budget and provides no program increases in fiscal year 2015. The request includes standard inflationary increases to maintain current services.

For the Defender Services account, the requested increase of $8.8 million over the fiscal year 2014 enacted level includes a minimal increase for standard adjustments to maintain current services levels. The fiscal year 2015 request includes sufficient funding to avoid any reductions to panel attorney payments, and will enable the federal defender organizations to back-fill lost positions and maintain staff at pre-sequestration levels. This should ease the strain on the defender services program and help defenders sustain the standard of high-quality representations that is expected.

The Judiciary's request also includes an increase of $33.3 million over the enacted fiscal year 2014 level for the Court Security account to protect facilities, judges, court staff, and the public. This additional funding will provide all court facilities with the appropriate number of court security officers and functional screening and security equipment. The majority of this increase is to replace non-appropriated funds used to support the program in fiscal year 2014.

i

The Judiciary's workload is heavily impacted by national policies initiated in the Executive and Legislative Branches. The courts receive criminal cases filed by the Department of Justice, civil cases filed by the government, businesses and individual citizens, and bankruptcy cases filed by businesses and individuals. The courts are also impacted by new initiatives and legislation, such as increased enforcement in the financial services industry and changes in prosecutorial policies. The Judiciary does not control the number of cases that are filed in the courts, must handle each case filed, and has little flexibility in how quickly it must handle criminal cases.

### Cost Containment

The Judiciary's aggressive cost-containment efforts, particularly in our space needs, are continuing. The Judicial Conference has established a 3 percent reduction target for the Judiciary's space footprint by the end of fiscal year 2018. This target will be achieved by implementing several initiatives. The Judicial Conference recently adopted a "No Net New" policy for courthouse space, in which any increase in square footage within a circuit must be offset by an

*Julia S. Gibbons*

Julia S. Gibbons
United States Circuit Judge
  for the Sixth Circuit Court of Appeals
Chair, Budget Committee of the
  Judicial Conference of the United States

equivalent reduction in square footage. Additionally, the fiscal year 2015 request includes an increase of $10 million for an Integrated Workplace Initiative (IWI). The IWI examines how courts work, explores changing work styles, researches new and emerging technologies, identifies successful mobile working situations (e.g., probation officers working remotely in the field, rather than in the courthouse), and develops ways to support a better workspace environment with mobility strategies. The objective of the IWI is to capitalize on the opportunity to reduce the Judiciary's real estate footprint, while creating a better and more efficient workplace environment. The fiscal year 2015 request incorporates $20.9 million in anticipated savings due to space rental base costs and the footprint reduction effort.

The Judiciary's fiscal year 2015 budget request of $6.7 billion is summarized in the following pages. It represents the Judiciary's determined effort to balance the requirements of justice with the fiscal realities facing Congress and the nation. A more detailed description of the Judiciary's fiscal year 2015 request can be found in *The Judiciary, Budget Estimates for Fiscal Year 2015, Congressional Submission.*

*John D. Bates*

John D. Bates
Director, Administrative Office
  of the United States Courts
Secretary, Judicial Conference of the United States

TABLE OF CONTENTS

**Page**

Foreword . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   i

**Overview of the Judiciary** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

**Fiscal Year 2015 Budget Summary - Details of Request** . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

**Summary Tables**

    Judiciary Appropriation Funding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

    Summary of FTE for FY 2013 - FY 2015 . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

    FY 2015 Summary of Requested Changes . . . . . . . . . . . . . . . . . . . . . . . . . .   10

    Outlays for FY 2013 - FY 2015 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

**Fiscal Year 2015 Budget Request Summaries by Appropriation**

    Supreme Court of the United States

        Salaries and Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

        Care of the Building and Grounds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

    United States Court of Appeals for the Federal Circuit . . . . . . . . . . . . . . . . . . . . .   19

    United States Court of International Trade . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

        Salaries and Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

    Defender Services . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   33

    Fees of Jurors and Commissioners . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   37

    Court Security . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   41

    Administrative Office of the United States Courts . . . . . . . . . . . . . . . . . . . . . . . . .   47

    Federal Judicial Center . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   49

    Payment to Judiciary Trust Funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   51

    United States Sentencing Commission . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   53

    Appropriation Language Changes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   55

    Administrative Provisions Changes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   55

    Administrative Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   57

# Overview of The Judiciary

The organization of the judiciary, the district and circuit boundaries, the places of holding court, and the number of federal judges are established by laws passed by Congress and signed by the President. The number of federal judges in each district and in the courts of appeals is authorized by Congress on the basis of workload.

In addition to the adjudication of cases, other related functions, such as the provision of criminal defense services and the supervision of offenders, are prescribed by statute. The following sections provide a brief overview of the work of the courts and other related activities of the Judicial Branch.

## United States Supreme Court

The United States Supreme Court consists of nine justices, one of whom is appointed as Chief Justice of the United States. The Supreme Court is the final arbiter in the federal court system.

## United States Courts of Appeals

There are 13 courts of appeals and 179 authorized appellate court judgeships nationwide. Twelve of the courts of appeals have jurisdiction over cases within a regional area or "circuit." The twelve regional courts of appeals review cases from the United States district courts and the United States Tax Court, and orders and decisions from a number of federal administrative agencies.

**The United States Court of Appeals for the Federal Circuit** has exclusive national jurisdiction over a large number of diverse subject areas, including international trade, government contracts, patents, trademarks, certain money claims against the United



The Federal Judiciary

**United States Supreme Court**

**U.S. Courts of Appeals**

12 Regional Circuit Courts of Appeals
1 U.S. Court of Appeals for the Federal Circuit

**Trial Courts**

U.S. District Courts
U.S. Bankruptcy Courts
U.S. Court of International Trade
U.S. Court of Federal Claims

***Other Judiciary Entities/Programs***

Probation and Pretrial Services
Defender Services
Court Security
Fees of Jurors and Commissioners
Administrative Office of the U.S. Courts
Federal Judicial Center
Judiciary Trust Funds
United States Sentencing Commission

States government, federal personnel, and veterans' benefits. Appeals to the court come from all 94 federal district courts, as well as the United States Court of Federal Claims, the United States Court of International Trade, and the United States Court of Appeals for Veterans Claims.

**United States District Courts**

There are 94 district courts in the 50 states, the District of Columbia, the Commonwealth of Puerto Rico, and the territories of Guam, the U.S. Virgin Islands and the Northern Mariana Islands. The U.S. District Courts are the courts of general jurisdiction in the federal court system, and most federal cases are initially tried and decided in these courts. There are 678 authorized Article III district court judgeships nationwide.

The Federal Magistrates Act of 1968 created the office of magistrate judge to assist the district court judges. Magistrate judges are non-Article III judges appointed by the district judges, and they serve for a term of years rather than a lifetime appointment. Full-time magistrate judges serve a term of eight years and may be reappointed.

**United States Bankruptcy Courts**

The bankruptcy courts are separate units of the district courts. Federal courts have exclusive jurisdiction over bankruptcy cases. This means that a bankruptcy case cannot be filed in a state court. United States bankruptcy judges are non-Article III judges appointed by the courts of appeals for a term of years rather than a lifetime appointment. They serve for a term of 14 years and may be reappointed.

**United States Court of International Trade**

The Court of International Trade, with nine Article III judges, has exclusive nationwide jurisdiction of civil actions against the United States, its agencies and officers, and certain civil actions brought by the United States, arising out of import transactions and the administration and enforcement of the federal customs and international trade laws.

**United States Court of Federal Claims**

The Court of Federal Claims has nationwide jurisdiction over certain types of claims against the federal government. Its 16 judges are appointed for a term of 15 years by the President with the advice and consent of the Senate. Judges appointed to the Court of Federal Claims are authorized under Article I of the constitution and do not have the tenure and salary protections of Article III judges.

**Probation and Pretrial Services**

Federal probation and pretrial services officers protect the public through the investigation and supervision of defendants and offenders within the federal criminal justice system. A pretrial services officer supervises defendants awaiting trial who are released into our communities and provides a source of information upon which the court can determine conditions of release or detention while criminal cases are pending adjudication. In support of sentencing determinations, which require both uniformity of practice and attention to individual circumstances, probation officers provide the court with reliable information concerning the offender, the victim, and the offense committed, as well as an impartial application of the sentencing guidelines.

Probation officers supervise offenders sentenced to probation as well as offenders coming out of federal prison who are required to serve a term of supervised release.

## Defender Services

The federal judiciary oversees and administers the federal defender and appointed counsel program, which provides legal representation and other services to persons financially unable to obtain counsel in criminal and related matters in federal court. The Sixth Amendment to the Constitution guarantees that "[i]n all criminal prosecutions the accused shall enjoy the right...to have the assistance of counsel for his defense." The Criminal Justice Act provides that courts shall appoint counsel from federal public and community defender organizations or from a panel of private attorneys ("panel attorneys") established by the court.

## Court Security

The judiciary's Court Security appropriation funds protective guard services and security systems and equipment for United States courthouses and other facilities housing federal court operations. These services are contracted for and managed by the United States Marshals Service, with additional guard services provided by the Federal Protective Service.

## Fees of Jurors and Commissioners

The judiciary receives funding to provide for the statutory fees and allowances of federal grand and petit jurors and for the compensation of land commissioners.

## Administrative Office of the U.S. Courts

The Administrative Office of the U.S. Courts is the central support entity for the judicial branch. It has management oversight of the court security program, the probation and pretrial services program, and the defender services program. It supports the Judicial Conference of the United States in determining judiciary policies; develops new methods, systems, and programs for conducting the business of the federal courts efficiently and economically; develops and supports the application of technology; collects and analyzes statistics on the business of the federal courts for accurate planning and decisions about resource needs; provides financial management services and personnel and payroll support; and conducts audits and reviews to ensure the continued quality and integrity of federal court operations.

## Federal Judicial Center

The Federal Judicial Center is the judiciary's research and education agency. The Center undertakes research and evaluation of judicial operations and procedures for both the committees of the Judicial Conference and the courts themselves. It provides judges, court personnel, and others orientation, continuing education and training through seminars; curriculum units for in-court use; monographs and manuals; and audio, video, and interactive media programs.

3

244

**Payment to Judiciary Trust Funds**

This appropriation finances annuity payments to retired bankruptcy judges and magistrate judges, U.S. Court of Federal Claims judges, and spouses and dependent children of deceased judicial officers.

**United States Sentencing Commission**

The U.S. Sentencing Commission promulgates sentencing policies, practices, and guidelines for the federal criminal justice system. The Chair, three Vice Chairs, and three other voting commissioners are appointed by the President with the advice and consent of the Senate.

4

# Budget Summary – Details of Request

The judiciary's appropriation request for fiscal year 2015 totals $7,301,243,000 (includes discretionary and mandatory), an increase of $262,367,000, or 3.7 percent over the fiscal year 2014 enacted appropriations. Of that increase, $219,512,000 is for discretionary appropriations (3.4 percent increase) and $42,855,000 is for mandatory appropriations.

*Adjustments to Base (Discretionary Appropriations)*

A total of $216.2 million (98.5 percent) of the $219.5 million discretionary increase requested will provide for pay adjustments, inflation and other adjustments to base necessary to maintain current services.

Base adjustments include:

1.  An increase of $97.1 million (44.9 percent of the base adjustments) will provide for inflationary pay and benefit rate increases for Magistrate and Claims judges, judges' staff, and supporting personnel. This includes the annualization of the fiscal year 2014 pay adjustments, expected January 2015 pay adjustments (e.g. 1.0% ECI adjustment for federal workers), changes in benefit costs, cost-of-living rate increases for panel attorneys, and a wage rate adjustment for court security officers.

2.  An increase of $62.6 million (29.0 percent of base adjustments) is necessary to replace non-appropriated sources of funds used to support base requirements in

fiscal year 2014 with direct appropriations. The judiciary will keep the Appropriations Subcommittees informed of any change in this estimate.

3.  An increase of $26.7 million (12.3 percent of base adjustments) is associated with an additional 120 senior judges' staff, and an additional 91 Article III judges' staff.

4.  An increase of $22.8 million (10.5 percent of base adjustments) will provide for increases in contract rates and other standard inflationary increases.

5.  An increase of $10.0 million (4.6 percent of base adjustments) is requested for the new Integrated Workplace Initiative that would be used to pay for up-front costs incurred by local courts to reconfigure existing space into a smaller space footprint.

6.  An increase of $3.0 million (1.4 percent of base adjustments) will provide for estimated increases in Federal Protective Service (FPS) security charges, based on rates established by FPS.

7.  An increase of $2.9 million (1.3 percent of base requirements) is associated with the Second Chance Act requirements.

8. An increase of $1.2 million (0.6 percent of base adjustments) will provide for 10 additional court security officers for space being delivered in fiscal year 2015.

9. An increase of $1.0 million (0.5 percent of base requirements) is associated with information technology requirements for the Supreme Court's technology fund and the Administrative Office.

10. An increase of $0.9 million (0.4 percent of base requirements) will provide for the annualization of positions funded in fiscal year 2014 for Defenders Services, Federal Judicial Center, and U.S. Sentencing Commission.

11. An increase of $0.8 million (0.4 percent of base adjustments) is associated with security systems and equipment requirements.

12. An increase of $0.1 million (0.04 percent of base adjustments) is associated with a projected net change in available jurors.

13. Netting to zero are adjustments for the annualization of new space delivered in fiscal year 2014, the cost of new space expected to be delivered in fiscal year 2015, and space related inflation offset by lower General Services Administration space rental base charges and anticipated savings from the footprint reduction effort.

14. A decrease of $7.3 million (-3.4 percent of base adjustments) is associated with non-recurring costs for new judges in fiscal year 2014.

15. A decrease of $5.2 million (-2.4 percent of base adjustments) is associated with non-recurring requirements for the Care of the Building and Grounds account for the Supreme Court (-$3.0 million), the Court of International Trade (-$0.2 million), and the Administrative Office (-$2.0 million).

16. A decrease of $0.4 million (-0.2 percent of base adjustments) is associated with anticipated savings in panel attorney requirements for Defender Services as a result of the addition of four new case-budgeting attorney positions in fiscal year 2014.

**Program Increases (Discretionary Appropriations)**

The remaining $3.3 million (1.5 percent) of the requested increase is for program enhancements.

Program increases include:

17. An increase of $2.5 million (75.5 percent of program enhancements) will provide for the façade restoration at the Supreme Court.

18. An increase of $0.8 million (24.5 percent of program enhancements) will provide for the electronic systems maintenance of the recently completed building and perimeter security upgrade at the Supreme Court.

247

*Mandatory Appropriations*

A $42.9 million increase is requested for mandatory Judiciary appropriations, as follows:

19.   An increase of $14.2 million is for pay adjustments for mandatory judges salaries for the Supreme Court, Federal Circuit, International Trade, and Courts' S&E, including annualization of fiscal year 2014 pay adjustments, expected January 2015 pay adjustments (e.g. 1.0 percent ECI adjustment for federal workers), and changes in benefits costs.

20.   An increase of $12.0 million is associated with an additional 36 senior judges and an additional 18 active Article III judges.

21.   An increase of $16.7 million is required for the Judiciary retirement trust funds accounts based on requirements calculated by an independent actuary.

7

## Judiciary Appropriation Funding ($000)

| Appropriation Account | FY 2013 Enacted[1] | | | FY 2014 Enacted | | | FY 2015 Request | | |
|---|---|---|---|---|---|---|---|---|---|
| | Mandatory | Discretionary | Total | Mandatory | Discretionary | Total | Mandatory | Discretionary | Total |
| **U.S. Supreme Court** | | | | | | | | | |
| Salaries & Expenses | $2,207 | $68,823 | $71,030 | $2,442 | $72,625 | $75,067 | $2,527 | $74,967 | $77,494 |
| Care of the Building and Grounds | $0 | $7,732 | $7,732 | $0 | $11,158 | $11,158 | $0 | $11,640 | $11,640 |
| **U.S. Court of Appeals for the Federal Circuit** | $2,524 | $28,429 | $30,953 | $2,798 | $29,600 | $32,398 | $2,893 | $30,212 | $33,105 |
| **U.S. Court of International Trade** | $1,715 | $18,697 | $20,412 | $1,916 | $19,200 | $21,116 | $1,981 | $17,807 | $19,788 |
| **Courts of Appeals, District Courts & Other Judicial Services** | | | | | | | | | |
| Salaries & Expenses - Direct | $334,722 | $4,442,119 | $4,776,841 | $388,664 | $4,658,830 | $5,047,494 | $414,605 | $4,827,588 | $5,242,193 |
| Vaccine Injury Trust Fund | $0 | $4,990 | $4,990 | $0 | $5,327 | $5,327 | $0 | $5,413 | $5,423 |
| Total, Salaries and Expenses | $334,722 | $4,447,109 | $4,781,831 | $388,664 | $4,664,157 | $5,052,821 | $414,605 | $4,833,011 | $5,247,616 |
| Defender Services | $0 | $986,055 | $986,055 | $0 | $1,044,394 | $1,044,394 | $0 | $1,053,158 | $1,053,158 |
| Fees of Jurors & Commissioners | $0 | $49,193 | $49,193 | $0 | $53,891 | $53,891 | $0 | $55,827 | $55,827 |
| Court Security | $0 | $473,847 | $473,847 | $0 | $497,500 | $497,500 | $0 | $530,763 | $530,763 |
| Subtotal, CADCOJS | $334,722 | $5,956,204 | $6,290,926 | $388,664 | $6,259,942 | $6,648,606 | $414,605 | $6,472,759 | $6,887,364 |
| **Administrative Office of the U.S. Courts** | $0 | $78,572 | $78,572 | $0 | $81,200 | $81,200 | $0 | $84,399 | $84,399 |
| **Federal Judicial Center** | $0 | $25,588 | $25,588 | $0 | $26,200 | $26,200 | $0 | $26,959 | $26,959 |
| **Judicial Retirement Funds** | $125,464 | $0 | $125,464 | $126,931 | $0 | $126,931 | $143,600 | $0 | $143,600 |
| **U.S. Sentencing Commission** | $0 | $15,637 | $15,637 | $0 | $16,200 | $16,200 | $0 | $16,894 | $16,894 |
| *Direct* | $466,632 | $6,194,692 | $6,661,324 | $522,751 | $6,510,798 | $7,033,549 | $565,606 | $6,730,214 | $7,295,820 |
| *Vaccine Injury Trust Fund* | $0 | $4,990 | $4,990 | $0 | $5,327 | $5,327 | $0 | $5,413 | $5,423 |
| *Total* | $466,632 | $6,199,682 | $6,666,314 | $522,751 | $6,516,125 | $7,038,876 | $565,606 | $6,735,637 | $7,301,243 |

[1] FY 2013 reflects the post-sequestration levels.

## The Judiciary
## Summary of FTE

| | FY 2013 Actual | | | FY 2014 Estimate | | | FY 2015 Request | | |
|---|---|---|---|---|---|---|---|---|---|
| | Mandatory | Discretionary | Total | Mandatory | Discretionary | Total | Mandatory | Discretionary | Total |
| **U.S. Supreme Court** | | | | | | | | | |
| Salaries & Expenses | 9 | 488 | 497 | 9 | 488 | 497 | 9 | 488 | 497 |
| Care of the Building and Grounds | 0 | 39 | 39 | 0 | 50 | 50 | 0 | 50 | 50 |
| Total, U.S. Supreme Court | 9 | 527 | 536 | 9 | 538 | 547 | 9 | 538 | 547 |
| **U.S. Court of Appeals for the Federal Circuit** | 12 | 133 | 145 | 12 | 139 | 151 | 12 | 139 | 151 |
| **U.S. Court of International Trade** | 9 | 58 | 67 | 9 | 71 | 80 | 9 | 71 | 80 |
| **Courts of Appeals, District Courts & Other Judicial Services** | | | | | | | | | |
| Salaries & Expenses - Direct | 1,752 | 26,990 | 28,742 | 1,795 | 26,035 | 27,830 | 1,849 | 26,246 | 28,095 |
| Vaccine Injury Trust Fund | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total, Salaries and Expenses | 1,752 | 26,990 | 28,742 | 1,795 | 26,035 | 27,830 | 1,849 | 26,246 | 28,095 |
| Defender Services | 0 | 2,628 | 2,628 | 0 | 2,718 | 2,718 | 0 | 2,720 | 2,720 |
| Fees of Jurors & Commissioners | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Court Security | 0 | 65 | 65 | 0 | 72 | 72 | 0 | 72 | 72 |
| Subtotal, CADCOUS | 1,752 | 29,683 | 31,435 | 1,795 | 28,825 | 30,620 | 1,849 | 29,038 | 30,887 |
| **Administrative Office of the U.S. Courts - Direct** | 0 | 605 | 605 | 0 | 621 | 621 | 0 | 621 | 621 |
| **Federal Judicial Center** | 0 | 132 | 132 | 0 | 133 | 133 | 0 | 136 | 136 |
| **Judicial Retirement Funds** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **U.S. Sentencing Commission** | 0 | 88 | 88 | 0 | 93 | 93 | 0 | 96 | 96 |
| *Total Direct* | 1,782 | 31,226 | 33,008 | 1,825 | 30,420 | 32,245 | 1,879 | 30,639 | 32,518 |
| *Reimbursables [1 and 2]* | 0 | 248 | 248 | 0 | 466 | 466 | 0 | 466 | 466 |
| *Total* | 1,782 | 31,474 | 33,256 | 1,825 | 30,886 | 32,711 | 1,879 | 31,105 | 32,984 |

[1] Beginning in 2014, judiciary service centers were included as reimbursable programs. Service centers are AO facilities not located in Washington, D.C., and they were previously funded in the Salaries and Expenses account. They have been funded directly by the Courts of Appeals, District Courts, and Other Judicial Services. Salaries and Expenses appropriation through fiscal year 2013, but beginning in fiscal year 2014 are reflected as reimbursable programs, consistent with the AO restructuring and the management of AO resources using a consolidated approach.

[2] Under the Administrative Office restructuring, program administration staff previously reported as direct FTE in the Salaries and Expenses, Defender Services, and Court Security accounts will be reported as reimbursable FTE in the Administrative Office account beginning in fiscal year 2014. The Salaries and Expenses, Defender Services, and Court Security account are still responsible for the financing of both salary and non-salary expenses related to these positions.

**FY 2015 Summary of Requested Changes**

**COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES**

| | Supreme Court FTE | Supreme Court $(000) | Federal Circuit FTE | Federal Circuit $(000) | International Trade FTE | International Trade $(000) | Salaries and Expenses FTE | Salaries and Expenses $(000) | Defender Services FTE | Defender Services $(000) | Fees of Jurors and Commissioners $(000) | Court Security FTE | Court Security $(000) | Subtotal FTE | Subtotal $(000) | Administrative Office FTE | Administrative Office $(000) | Fed. Judicial Center FTE | Fed. Judicial Center $(000) | Judiciary Trust Funds $(000) | Sentencing Commission FTE | Sentencing Commission $(000) | Total Judiciary FTE | Total Judiciary $(000) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FY 2014 Enacted Appropriation Level | 547 | 86,225 | 151 | 32,396 | 80 | 21,116 | 27,930 | 5,047,494 | 2,716 | 1,044,294 | | 53,091 | 72 | 497,500 | 30,650 | 6,643,279 | 621 | 81,200 | 131 | 26,290 | 126,551 | 95 | 16,769 | 32,124 | 7,611,419 |
| FY 2014 Vaccine Injury Trust Fund | | | | | | | | | | | | | | | | 5,327 | | | | | | | | | 5,327 |
| Rescission, FY 2014 | | | | | | | | | | | | | | | | | | | | | | | | | |
| FY 2014 Available Appropriation | 547 | 86,225 | 151 | 32,396 | 80 | 21,116 | 27,930 | 5,051,821 | 2,718 | 1,044,294 | | 53,091 | 72 | 497,500 | 30,650 | 6,648,606 | 1,007 | 81,200 | 133 | 26,290 | 126,551 | 93 | 16,769 | 32,711 | 7,618,876 |
| | | | | | | | | | | | | | | | | | | | | | | | | | |
| **FY 2015 Adjustments to Base** | | | | | | | | | | | | | | | | | | | | | | | | | |
| *Judges* | | | | | | | | | | | | | | | | | | | | | | | | | |
| Pay and benefit cost adjustments | | 85 | | 95 | | 65 | | 18,720 | | | | | | | | 18,720 | | | | | | | | | 18,964 |
| Additional senior judges | | | | | | | | 22,463 | | | | | | | | 22,463 | | | | | 156 | | | | 22,463 |
| Increase in average number of filled Article III judgeships | | | | | | | | 16,193 | | | | | | | | 16,193 | | | | | 109 | | | | 16,193 |
| Non-recurring costs of new FY 2014 judges | | | | | | | | (7,549) | | | | | | | | (7,549) | | | | | | | | | (7,549) |
| Pay moves to judiciary retirement trust funds | | | | | | | | | | | | | | | | | | | | 16,600 | | | | | 16,600 |
| *Court Personnel* | | | | | | | | | | | | | | | | | | | | | | | | | |
| Pay and benefit cost adjustments | | 1,344 | | 360 | | 195 | | 62,089 | | | | 195 | | | | 72,267 | | 1,841 | | 396 | | 117 | | | 79,569 |
| Annualization of positions funded in fiscal year 2014 | | | | | | | | | | 403 | | | | | | 403 | | | | 225 | | 298 | | | 926 |
| *Other Changes* | | | | | | | | | | | | | | | | | | | | | | | | | |
| Funding necessary to maintain current services | | 427 | | 86 | | 85 | | 50,991 | 1,724 | | | 14,908 | | | | 68,011 | | 7,776 | | | | 117 | | | 82,599 |
| Inflation (non-space-related) | | | | | | | | 18,745 | 425 | | | 133 | | | | 23,473 | | 67 | | 118 | | 291 | | | 22,761 |
| Space rental/new Total Fund adjustment | | | | | | | | 96 | | | | | | | | 96 | | | | | | | | | 96 |
| Space rental costs (exclude inflation for space rental rates) | | | | 166 | | 11,426 | | 136 | 1,210 | | | 151 | | | | 1,321 | | | | | | | | | 13 |
| Integrated Workplace Initiative | | | | | | | | 10,000 | | | | | | | | 10,000 | | | | | | | | | 10,000 |
| Change in available jurors | | | | | | | 9 | | | | 307 | | | | | 89 | | | | | | | | | 89 |
| FPS security service charges | | | | | | | | | | | | 1,408 | | | | 1,408 | | | | | | | | | 1,447 |
| FY 2015 court security officer wage adjustments | | | | | | | | | | | | 12,914 | | | | 12,914 | | | | | | | | | 12,911 |
| Additional court security officers at FY 2015 (100) | | | | | | | | | | | | 4,171 | | | | 4,171 | | | | | | | | | 4,171 |
| Adjustments to base for security systems and equipment | | | | | | | | | | | | 467 | | | | 467 | | | | | | | | | 467 |
| Adjustments to base (non-recurring requirements) | | (5,500) | | | | (386) | | | | (1,805) | | | | | | (480) | | (1,974) | | | | | | | (5,916) |
| Savings related to cost-budgeting processes | | | | | | | | | | | | | | | | | | | | | | | | | (1,805) |
| Second Chance Act requirements | | 500 | | | | | | 2,844 | | | | | | | | 2,844 | | 406 | | | | | | | 2,844 |
| Base adjustment for information technology requirements | | | | | | | | | | | | | | | | | | | | | | | | | 906 |
| | | | | | | | | | | | | | | | | | | | | | | | | | |
| Subtotal, FY 2015 Adjustments to Base | | (404) | | 707 | | (1,230) | 265 | 194,795 | 2,726 | 8,744 | | 1,936 | | 33,263 | 267 | 238,598 | | 3,196 | | 594 | | 117 | 273 | | 259,054 |
| | | | | | | | | | | | | | | | | | | | | | | | | | |
| FY 2015 Adjusted Base | 547 | 85,821 | 151 | 33,103 | 80 | 19,784 | 28,095 | 5,247,616 | 2,726 | 1,053,158 | | 55,827 | 72 | 530,763 | 30,907 | 6,887,364 | 1,007 | 84,399 | 136 | 26,909 | 143,000 | 95 | 16,894 | 32,964 | 7,897,930 |
| | | | | | | | | | | | | | | | | | | | | | | | | | |
| **FY 2015 Program Increases** | | | | | | | | | | | | | | | | | | | | | | | | | |
| Façade Restoration | 2,940 | | | | | | | 28,901 | | | | | | | | 28,901 | | | | | | | | | 2,940 |
| Electronic systems maintenance | 413 | | | | | | | | | | | | | | | | | | | | | | | | 413 |
| Subtotal, FY 2015 Program Increases | 3,313 | | | | | 65 | 54 | 28,901 | | | | | | | 54 | 28,901 | | | | | | | | | 32,214 |
| | | | | | | | | | | | | | | | | | | | | | | | | | |
| Total Mandatory Increases | 85 | | | 95 | | | 211 | 165,894 | | 8,744 | | 1,936 | | 33,263 | 213 | 212,837 | | 3,799 | | 799 | 143,000 | | 594 | 54 | 359,587 |
| Total Discretionary Increases | 2,824 | | | 612 | 17,936 | | | 100,615 | 2 | | | | | | | | | | | | | | | 291,385 | |
| Total Increases Requested, FY 2015 | 2,909 | | | 707 | | (1,230) | 265 | 194,795 | 2 | 8,744 | | 1,936 | | 33,263 | 267 | 238,598 | | 3,799 | | 799 | 143,000 | | 594 | 273 | 262,265 |
| | | | | | | | | | | | | | | | | | | | | | | | | | |
| Total Mandatory | 9 | 2,537 | 13 | 2,895 | 9 | 1,981 | 1,649 | 414,686 | | 1,053,158 | | 55,827 | | 5,80,763 | 1,849 | 414,686 | | 3,799 | | | 143,000 | | | 31,096 | 6,749,663 |
| Total Discretionary | 538 | 86,607 | 139 | 30,312 | 71 | 17,807 | 26,346 | 4,833,011 | 2,726 | | | | 73 | | 29,058 | 6,473,739 | 1,007 | 84,759 | | | | 95 | | 1,871 | 62,145 |
| FY 2015 Appropriation Request | 547 | 89,154 | 151 | 33,103 | 80 | 19,788 | 28,095 | 5,247,616 | 2,726 | 1,053,158 | | 55,827 | 72 | 530,763 | 30,907 | 6,887,364 | 1,007 | 84,399 | 651 | 84,399 | 143,000 | 95 | 16,894 | 32,918 | 7,897,930 |
| | | | | | | | | | | | | | | | | | | | | | | | | | |
| Reimbursable FTE | | | | | | | | | | | | | | | | | | | | | | | 31,096 | | |

## THE JUDICIARY

**Outlays – FY 2013 to FY 2015**
(Dollars in Thousands)

| Appropriation | FY 2013 | FY 2014 1/ | FY 2015 1/ | Outlay Spendout Rates | | |
|---|---|---|---|---|---|---|
| | | | | YR 1 | YR 2 | YR 3 |
| **Supreme Court** | | | | | | |
| Discretionary | 67,680 | 71,965 | 74,580 | 80% | 20% | 0% |
| Mandatory | 2,116 | 2,442 | 2,527 | 100% | 0% | 0% |
| **Total, Salaries and Expenses** | 69,796 | 74,407 | 77,107 | | | |
| | | | | | | |
| **Buildings and Grounds** | 15,451 | 16,313 | 12,755 | 68% | 12% | 20% |
| | | | | | | |
| **Court of Appeals for the Federal Circuit** | | | | | | |
| Discretionary | 25,384 | 29,624 | 31,209 | 80% | 20% | 0% |
| Mandatory | 2,524 | 2,798 | 2,893 | 100% | 0% | 0% |
| **Total, Court of Appeals for the Federal Circuit** | 27,908 | 32,422 | 34,102 | | | |
| | | | | | | |
| **Court of International Trade** | | | | | | |
| Discretionary | 18,141 | 19,439 | 18,007 | 95% | 5% | 0% |
| Mandatory | 1,449 | 1,916 | 1,981 | 100% | 0% | 0% |
| **Total, Court of International Trade** | 19,590 | 21,355 | 19,988 | | | |
| | | | | | | |
| **Courts of Appeals, District Courts, and Other Judicial Services:** | | | | | | |
| Salaries and Expenses - Discretionary | 4,269,073 | 4,636,657 | 4,819,988 | 93% | 7% | 0% |
| Salaries and Expenses - Mandatory | 334,772 | 388,664 | 414,605 | 100% | 0% | 0% |
| **Total, Salaries and Expenses** | 4,603,845 | 5,025,321 | 5,234,593 | | | |
| Defender Services | 988,989 | 1,036,188 | 1,052,070 | 97% | 3% | 0% |
| Fees of Jurors & Commissioners | 54,576 | 54,830 | 56,387 | 99.5% | 0.5% | 0% |
| Court Security | 489,966 | 520,000 | 525,000 | 80.0% | 20.0% | 0% |
| **Total, Courts of Appeals, District Courts, and Other Judicial Services** | 6,137,376 | 6,636,339 | 6,868,050 | | | |
| | | | | | | |
| **Administrative Office of the United States Courts** | 77,998 | 82,611 | 85,299 | 94% | 6% | 0% |
| | | | | | | |
| **Federal Judicial Center** | 25,477 | 26,806 | 27,082 | 95% | 5% | 0% |
| | | | | | | |
| **Judicial Retirement Funds (MANDATORY)** | 125,464 | 126,931 | 143,600 | 100% | 0% | 0% |
| | | | | | | |
| **United States Sentencing Commission** | 15,097 | 16,396 | 16,632 | 85% | 15% | 0% |
| | | | | | | |
| Subtotal, Discretionary | 6,047,832 | 6,512,909 | 6,719,009 | | | |
| Subtotal, Mandatory | 466,326 | 522,751 | 565,606 | | | |
| | | | | | | |
| **Total, Judiciary** | 6,514,158 | 7,035,660 | 7,284,615 | | | |

1/ Mandatory amounts for fiscal years 2014 and 2015 reflect planned outlay levels.

II

# Fiscal Year 2015 Request

# Summary by Appropriation

13

## U.S. Supreme Court
### *Salaries and Expenses*

**FY 2015 Request**

**U.S. Supreme Court, Salaries and Expenses**

| | FTE | ($000) |
|---|---|---|
| **FY 2014 Appropriation - Mandatory** | 9 | 2,442 |
| **FY 2014 Enacted Appropriation - Discretionary** | 488 | 72,625 |
| **FY 2014 Enacted Appropriation** | 497 | 75,067 |
| **Adjustments to Base - Mandatory** | 0 | 85 |
| **Adjustments to Base - Discretionary** | 0 | 2,342 |
| **FY 2015 Mandatory Request** | 9 | 2,527 |
| **FY 2015 Discretionary Request** | 488 | 74,967 |
| **FY 2015 Appropriation Request** | 497 | 77,494 |

**Budget Summary**

The Supreme Court requests $77.5 million ($2.5 million for mandatory expenses and $75.0 million for discretionary expenses) for fiscal year 2015. The $75.0 million request for discretionary appropriations represents a 3.2 percent increase over the fiscal year 2014 discretionary level.

**Adjustments to Base - Discretionary**

The Supreme Court requests $2.3 million for discretionary expenses in fiscal year 2015 for the Salaries and Expense account. The fiscal year 2015 request includes $1.8 million for increases to standard pay and other inflationary adjustments, and $0.5 million for a base adjustment for information technology requirements. The technology fund was established as a no-year funding source to provide for multi-year projects that enhance Court-wide technology and office automation. The Court has received $2.0 million in appropriation for this fund annually since its inception in fiscal year 2006. In fiscal year 2014, the Court proposed a one-year $0.5 million funding reduction for the technology fund. The $0.5 million request will restore funding to the $2.0 million annual level.

**Mandatory Increases**

The fiscal year 2015 request includes $0.1 million for increases to standard pay and changes in benefits.

### U.S. Supreme Court - Salaries and Expenses
#### Comparative Summary of Obligations by Category
##### ($000)

| Category | FY 2013 Actual | FY 2014 Estimate | FY 2015 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 54,123 | 57,610 | 59,174 | 1,564 |
| Rent, Communications and Utilities | 1,129 | 1,122 | 1,141 | 19 |
| Travel | 510 | 492 | 500 | 8 |
| Other | 15,188 | 15,843 | 16,679 | 836 |
| **Total Obligations** | **70,950** | **75,067** | **77,494** | **2,427** |
| Financing Adjustment | 80 | 0 | 0 | 0 |
| **Available Appropriation** | **71,030** | **75,067** | **77,494** | **2,427** |

16

## U.S. Supreme Court
### Care of the Building and Grounds

**FY 2015 Request**
**U.S. Supreme Court, Care of the Building and Grounds**

| | FTE | ($000) |
|---|---|---|
| FY 2014 Enacted Appropriation - Discretionary | 50 | 11,158 |
| Adjustments to Base | 0 | (2,831) |
| Program Increase: | | |
|   East Facade Restoration | | 2,500 |
|   Electronic Systems Maintenance | | 813 |
| FY 2015 Appropriation Request - Discretionary | 50 | 11,640 |

**Budget Summary**

The Supreme Court requests $11.6 million for its Care of the Building and Grounds account in fiscal year 2015, a 4.3 percent increase over the fiscal year 2014 enacted appropriation.

### Adjustments to Base - Discretionary

The Supreme Court, Care of the Building and Grounds, fiscal year 2015 budget request includes $0.2 million for increases to standard pay and other inflationary adjustments offset by a decrease of $3.0 million for non-recurring requirements.

**Program Increase**

1. *Facade Restoration: $2.5 million*

The Court requests $2.5 million for the maintenance and preservation of the east exterior facade of the Supreme Court Building.

2. *Electronic Systems Maintenance: $0.8 million*

The Court requests $0.8 million for the maintenance of the building and perimeter security upgrade project which was recently completed.

17

256

**U.S. Supreme Court - Care of the Building and Grounds**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2013 Actual | FY 2014 Estimate | FY 2015 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 4,027 | 4,325 | 4,429 | 104 |
| Rent, Communications and Utilities | 1,831 | 1,850 | 2,000 | 150 |
| Other | 5,170 | 6,147 | 6,811 | 664 |
| **Total Obligations** | **11,028** | **12,322** | **13,240** | **918** |
| Financing Adjustment | (3,296) | (1,164) | (1,600) | (436) |
| **Available Appropriation** | **7,732** | **11,158** | **11,640** | **482** |

18

# United States Court of Appeals for the Federal Circuit

## FY 2015 Request
### Court of Appeals for the Federal Circuit

| | FTE | ($000) |
|---|---|---|
| **FY 2014 Appropriation - Mandatory** | 12 | 2,798 |
| **FY 2014 Enacted Appropriation - Discretionary** | 139 | 29,600 |
| **FY 2014 Enacted Appropriation** | 151 | 32,398 |
| **Adjustments to Base - Mandatory** | 0 | 95 |
| **Adjustments to Base - Discretionary** | 0 | 612 |
| **FY 2015 Mandatory Request** | 12 | 2,893 |
| **FY 2015 Discretionary Request** | 139 | 30,212 |
| **FY 2015 Appropriation Request** | 151 | 33,105 |

## Budget Summary

The Court of Appeals for the Federal Circuit requests $33.1 million ($2.9 million for mandatory expenses and $30.2 million for discretionary expenses) for fiscal year 2015. The $30.2 million request for discretionary appropriations represents a 2.1 percent increase over the fiscal year 2014 discretionary level. This request continues the Court's efforts to keep up with its varied and growing subject-matter jurisdiction.

## Adjustments to Base - Discretionary

The Court's adjustments to base for fiscal year 2015 total $0.6 million to provide for standard pay, other inflationary adjustments, and other court operating expenses. The Court requests no program increases.

### Mandatory Increases

The fiscal year 2015 request includes $0.1 million for increases to standard pay and changes in benefits.

19

**U.S. Court of Appeals for the Federal Circuit**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2013 Actual | FY 2014 Estimate | FY 2015 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 18,076 | 20,009 | 20,464 | 455 |
| Rent, Communications and Utilities | 7,153 | 7,210 | 7,371 | 161 |
| Travel | 69 | 55 | 56 | 1 |
| Other | 5,834 | 5,785 | 5,744 | (41) |
| **Total Obligations** | **31,132** | **33,059** | **33,635** | **576** |
| Financing Adjustment | (179) | (661) | (530) | 131 |
| **Available Appropriation** | **30,953** | **32,398** | **33,105** | **707** |

20

## United States Court of International Trade

### FY 2015 Request
### U.S. Court of International Trade

| | FTE | ($000) |
|---|---|---|
| FY 2014 Appropriation - Mandatory | 9 | 1,916 |
| FY 2014 Enacted Appropriation - Discretionary | 71 | 19,200 |
| FY 2014 Enacted Appropriation | 80 | 21,116 |
| Adjustments to Base - Mandatory | 0 | 65 |
| Adjustments to Base - Discretionary | 0 | (1,393) |
| FY 2015 Mandatory Request | 9 | 1,981 |
| FY 2015 Discretionary Request | 71 | 17,807 |
| FY 2015 Appropriation Request | 80 | 19,788 |

### Budget Summary

The Court of International Trade requests $19.8 million ($2.0 million for mandatory expenses and $17.8 million for discretionary expenses) for fiscal year 2015. The $17.8 million request for discretionary appropriations represents a 7.3 percent decrease from the fiscal year 2014 discretionary level.

### Adjustments to Base - Discretionary

The Court's request for fiscal year 2015 includes $0.3 million for standard pay and other inflationary adjustments offset by a GSA rent reduction of $1.5 million (due to a decrease in the shell rate based on the 2012 appraisal) and a decrease of $0.2 million for non-recurring requirements. The Court requests no program increases.

### Mandatory Increases

The fiscal year 2015 request includes $0.1 million for increases to standard pay and changes in benefits.

21

**U.S. Court of International Trade**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2013 Actual | FY 2014 Estimate | FY 2015 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 8,505 | 10,718 | 10,794 | 76 |
| Rent, Communications and Utilities | 9,787 | 8,324 | 6,858 | (1,466) |
| Travel | 110 | 150 | 153 | 3 |
| Other | 2,596 | 2,499 | 2,552 | 53 |
| **Total Obligations** | **20,998** | **21,691** | **20,357** | **(1,334)** |
| Financing Adjustment | (586) | (575) | (569) | 6 |
| **Available Appropriation** | **20,412** | **21,116** | **19,788** | **(1,328)** |

22

261

## Courts of Appeals, District Courts and Other Judicial Services
### Salaries and Expenses

### Budget Summary

The Judicial Conference requests $5,247.6 million for the Salaries and Expenses account in fiscal year 2015, including $414.6 million for mandatory expenses, $4,827.6 million for discretionary expenses, and $5.4 million for the Vaccine Injury Trust Fund.  The fiscal year 2015 discretionary request of $4,833.0 million is a 3.6 percent increase over the fiscal year 2014 enacted discretionary appropriation.

The Salaries and Expenses appropriation makes up 72 percent of the judiciary's total appropriations request.  This account provides for the operating expenses of the 12 regional circuit courts of appeals, district courts, bankruptcy courts, and probation and pretrial services offices.  This account utilizes other funding sources, including current year fee collections and prior year carryforward balances, to offset the need for appropriated funds.  The judiciary projects that these sources of non-appropriated funds will total $288.5 million in fiscal year 2015, $51.0 million below the fiscal year 2014 estimated financial plan level of $339.5 million.

### Adjustments to Base - Discretionary

The requested discretionary increase is $168.9 million, which includes $105.0 million for standard pay and other inflationary increases, $51.0 million to replace non-appropriated funds, $10.0 million for the Integrated Workplace Initiative, and $2.9 million for Second Chance Act requirements.  There are no requested program increases.  In broad categories, these increases include:

| FY 2015 Request Courts of Appeals, District Courts and other Judicial Services, Salaries and Expenses | FTE | ($000) |
|---|---|---|
| FY 2014 Appropriation - Mandatory | 1,795 | 388,664 |
| FY 2014 Enacted Appropriation - Direct Discretionary | 26,035 | 4,658,830 |
| Vaccine Injury Trust Fund | 0 | 5,327 |
| FY 2014 Available Appropriation | 27,830 | 5,052,821 |
| Adjustments to Base - Mandatory | 54 | 25,941 |
| Adjustments to Base - Direct Discretionary | 211 | 168,758 |
| Adjustments to Base - Vaccine Injury Trust Fund | 0 | 96 |
| FY 2015 Mandatory Request | 1,849 | $414,605 |
| FY 2015 Direct Discretionary Request | 26,246 | 4,827,588 |
| Vaccine Injury Trust Fund | 0 | 5,423 |
| FY 2015 Appropriation Request | 28,095 | $5,247,616 |

23

1.  *Pay and benefit cost adjustment for Magistrate and Claims judges:  $4.8 million*

An increase of $4.8 million will provide for expected changes in pay and benefit rates for Magistrate and Claims judges, including annualization of the fiscal year 2014 pay adjustments and an estimated 1.0 percent pay adjustment in fiscal year 2015.

2.  *Increase in the number of senior judges' staff:*     **FTE  120**
    **$14.5 million**

An increase of $14.5 million will provide for an additional 120 staff to support 36 senior judges anticipated in fiscal year 2015.

3.  *Increase in average number of filled Article III judgeships:*     **FTE 91**
    **$12.1 million**

An increase of $12.1 million will provide for an additional 91 staff to support 18 new Article III judgeships anticipated in fiscal year 2015.

4.  *Non-recurring costs associated with new fiscal year 2014 Article III judges:  ($7.3 million)*

A decrease of $7.3 million is requested for non-recurring, one-time costs associated with new judges in fiscal year 2014.

5.  *Pay and benefit adjustments for court personnel:*
    **$62.1 million**

An increase of $62.1 million will provide for the annualization of the fiscal year 2014 pay adjustment, an estimated 1.0 percent pay adjustment in 2015, within-grade increases, and changes in benefits rates.

6.  *Funds necessary to maintain fiscal year 2014 service levels due to an anticipated decline in non-appropriated funds:  $51.0 million*

The fiscal year 2014 estimated financial plan assumes that current year fee collections and prior-year carryforward balances from fiscal year 2014 will total $339.5 million.  The fiscal year 2015 request estimates that these non-appropriated sources of funds used to help finance court operations will total $288.5 million, a net decrease of $51.0 million from fiscal year 2014 assumed levels.  The judiciary requests direct appropriated funds for fiscal year 2015 to replace these non-appropriated funds in order to maintain the same level of service as provided in fiscal year 2014.

7.  *Non-pay inflationary and contractual increases:*
    **$18.7 million**

An increase of $18.7 million is requested for a 1.7 percent general inflationary increase and other contractual and miscellaneous increases.

8.  *Vaccine Injury Compensation Trust Fund:  $0.1 million*

The fiscal year 2015 level reflects an increase of $0.1 million for standard pay and non-pay inflationary adjustments.

9.  *GSA space rental and related expenses:  ($38,000)*

The judiciary requests a net decrease of $38,000 in fiscal year 2015 for General Services Administration (GSA) rent and related services associated with (a) annualizing new space expected to be occupied during fiscal year 2014 (+$6.9 million), (b) adjustments to GSA space rental base costs (-$13.9 million), (c) new space projected to be delivered by GSA in fiscal year 2015

24

(+$1.7 million), (d) anticipated savings from the footprint reduction effort (-$7.0 million); and (e) other space-related adjustments including tenant alterations (+$12.3 million).

**10. Integrated Workplace Initiative: $10.0 million**

An increase of $10.0 million is requested for the Integrated Workplace Initiative to provide funding that would be used to pay for up-front costs incurred by local courts to re-purpose existing space into a smaller space footprint.

**11. Second Chance Act Funding: $2.9 million**

An increase of $2.9 million is for Second Chance Act requirements to allow probation officers the means to assist offenders with emergency and transitional services.

**Mandatory Increases**

The fiscal year 2015 request includes $25.9 million for mandatory increases as follows:

**12. Pay and benefit cost adjustment for mandatory judges salaries: $13.9 million**

An increase of $13.9 million will provide for expected changes in pay and benefit rates for mandatory judges, including the annualization of the fiscal year 2014 pay adjustments and an estimated 1.0 percent pay adjustment in fiscal year 2015, and changes in benefit costs.

**13. Increase in the number of senior judges: $7.9 million**                    *FTE 36*

An increase of $7.9 million will provide for an additional 36 senior judges anticipated in fiscal year 2015.

**14. Increase in average number of filled Article III judgeships: $4.1 million**                    *FTE 18*

An increase of $4.1 million will provide for an additional 18 Article III judgeships anticipated in fiscal year 2015.

25

| U.S. Courts of Appeals, District Courts and Other Judicial Services, Salaries and Expenses Comparative Summary of Obligations by Category ($000) | | | | |
|---|---|---|---|---|
| Category | FY 2013 Actual | FY 2014 Estimate | FY 2015 Request | Requested Increase/Decrease |
| Compensation and Benefits | 3,385,022 | 3,640,262 | 3,696,817 | 56,555 |
| Rent, Communications and Utilities | 1,198,977 | 1,246,648 | 1,239,375 | (7,273) |
| Travel | 37,442 | 41,824 | 42,939 | 1,115 |
| Other | 394,078 | 543,610 | 557,017 | 13,407 |
| Total Obligations | 5,015,519 | 5,472,344 | 5,536,148 | 63,804 |
| Financing Adjustment | (238,678) | (424,850) | (293,955) | 130,895 |
| Available Appropriation (Direct) | 4,776,841 | 5,047,494 | 5,242,193 | 194,699 |
| Vaccine Injury Trust Fund | 4,990 | 5,327 | 5,423 | 96 |
| Total Available Appropriation | 4,781,831 | 5,052,821 | 5,247,616 | 194,795 |

26



FY 2015 Budget Request
Salaries and Expenses Account by Category
(Obligations)

Judges & Chambers Staff
Salaries & Expenses
24%

Court Support Personnel
Benefits
10%

Rent
19%

Operations and Maintenance
10%

Information Technology
6%

Court Support Personnel
Salaries
31%

27



Court Support Staffing
FY 2011 - FY 2015

Over 3,200 (15 percent) on-board FTE have been lost over the last
30 months from 22,136 FTE in July 2011 to 18,852 in January 2014.

28

## Judiciary Workload Factors

| WORKLOAD FACTOR | 12 months ending June 30, 2008 Actual | 12 months ending June 30, 2009 Actual | 12 months ending June 30, 2010 Actual | 12 months ending June 30, 2011 Actual | 12 months ending June 30, 2012 Actual | 12 months ending June 30, 2013 Actual | 12 months ending June 30, 2014 Projected |
|---|---|---|---|---|---|---|---|
| Criminal Filings | 70,024 | 75,324 | 78,213 | 78,764 | 73,455 | 69,642 | 65,400 |
| Year-to-Year Change: | | 8% | 4% | 1% | -7% | -5% | -6% |
| Criminal Defendants Filed | 91,782 | 96,718 | 100,031 | 102,605 | 96,915 | 91,812 | 87,800 |
| Year-to-Year Change: | | 5% | 3% | 3% | -6% | -5% | -4% |
| Probation: Persons Under Supervision | 120,051 | 123,839 | 126,642 | 129,319 | 132,785 | 132,362 | 131,900 |
| Year-to-Year Change: | | 3% | 2% | 2% | 3% | 0% | 0% |
| Pretrial Services: Cases Activated | 98,862 | 103,604 | 110,671 | 107,197 | 105,852 | 102,457 | 104,200 |
| Year-to-Year Change: | | 5% | 7% | -3% | -1% | -3% | 2% |
| Bankruptcy Filings | 967,831 | 1,306,315 | 1,572,597 | 1,529,560 | 1,311,602 | 1,137,978 | 1,028,400 |
| Year-to-Year Change: | | 35% | 20% | -3% | -14% | -13% | -10% |
| Appellate Filings | 59,406 | 59,399 | 56,097 | 55,353 | 57,699 | 56,360 | 56,600 |
| Year-to-Year Change: | | 0% | -6% | -1% | 4% | -2% | 0% |
| Civil Filings | 256,354 | 257,204 | 285,215 | 289,630 | 286,232 | 283,087 | 287,400 |
| Year-to-Year Change: | | 0% | 11% | 2% | -1% | -1% | 2% |

## Explanation of Other Funding Sources

In addition to appropriated funds, each year the judiciary uses other non-appropriated funds to offset its appropriation requirement. Fee collections, primarily from court filing fees, comprise the majority of these sources of funds. These fees are used to offset expenses within the Salaries and Expenses account.

### "Unencumbered" Funds

In addition to fee collections, in certain instances the judiciary may carryforward funds from one year to the next. These carryforward funds are considered "unencumbered" when they are generated by savings in the financial plan in base areas or where budgeted costs did not materialize. These savings are usually unforeseen and uncontrollable by the judiciary. For example, the judiciary does not control the confirmation rate of Article III judges. The judiciary makes its best estimate, based on historical confirmation rates of how many judges will be confirmed in the upcoming year. When confirmations fall below historical estimates, the funds budgeted for these judgeships are not obligated. New space delivery is another area that can produce savings. The judiciary budgets for rent costs based on projected delivery dates provided by the General Services Administration. If delivery of the space by GSA is delayed, the previously budgeted rent costs become unencumbered.

A similar situation exists within the Judiciary Information Technology Fund. The Salaries and Expenses account must, by statute, procure its information technology needs, including hardware and software as well as system development requirements, from this fund. The fund is financed by deposits from the Salaries and Expenses account and, once deposited, the funds remain available without fiscal year limitation. It is common for savings in the Judiciary Information Technology Fund financial plan to occur. Information technology costs often are difficult to predict with precision, and when costs come in below projections, savings are realized. Savings in the plan are carried forward in the fund and offset the required deposit in the following year. The judiciary uses these carryforward funds to offset the following year's appropriation requirements.

Recognizing that savings in the financial plan tend to occur each year, but at unpredictable levels, the judiciary has tried to estimate the level of unencumbered funds that will be available to offset fiscal year 2015 requirements. As the table below indicates, the judiciary has estimated that unencumbered funds will be $288.5 million in fiscal year 2015, a net decrease of $51.0 million from the $339.5 million in the fiscal year 2014 estimated financial plan to help finance court operations. The judiciary requests appropriated funds for fiscal year 2015 to replace these non-appropriated funds in order to maintain the same level of services provided in fiscal year 2014. Because these funds are used as a general offset to judiciary requirements, the difference in their availability from one fiscal year to the next affects the judiciary's appropriation requirement. If this loss in non-appropriated funds is not offset by a like amount of appropriated funds, it will result in a reduction in resources available to fund base requirements.

Due to the unpredictable nature of these funds, the judiciary will keep Congress informed throughout the appropriations cycle as to the current level of anticipated unencumbered non-appropriated funds and adjust its request for appropriated funds accordingly.

or under budget by avoiding the need to make costly contractual or other obligations based on the calendar rather than project readiness.

Similarly, the judiciary also receives a limited amount of no-year authority in its regular appropriation for space alterations and furniture associated with new space delivery. Because space alteration and building projects are also subject to unpredictable delays, the ability of the judiciary to carry forward funds associated with specific projects allows the judiciary to budget for major space renovation costs and other non-rental costs associated with the delivery of a new courthouse and then carry forward these project specific funds if the project is delayed.

These "encumbered" funds, while adding to the judiciary's projected obligations in a given fiscal year, do not impact the judiciary's appropriations requirement. Even if the total amount fluctuates from year to year, the funds associated with the specific project are brought forward from the prior year to fund the project, resulting in no additional appropriation requirements.

**Sources of Non-Appropriated Funds in Salaries and Expenses**

| ($000) | FY 2014 Plan | FY 2015 Request | Difference |
|---|---|---|---|
| **Salaries and Expenses** | | | |
| *Fee Collections* | 204,473 | 208,532 | 4,059 |
| *Other S&E and JITF Carryforward* | 135,050 | 80,000 | (55,050) |
| **Total** | **339,523** | **288,532** | **(50,991)** |

**"Encumbered" Funds**

Carryforward funds are considered "encumbered" when both the funds and the associated need for the funds shift to the next year. The judiciary has no-year authority for specific purposes. In some cases, as was described above, this authority is used to carry-forward savings where planned expenses did not occur. This authority is also used when planned expenses are delayed, or slipped, from one year to the next. In fiscal year 2014, $53.0 million will be slipped from fiscal year 2013. These "slippages" occur primarily in two areas: information technology investments and costs associated with new space delivery. In the Judiciary Information Technology Fund, one of the principle purposes for the creation of this fund was the recognition that the development of major information technology systems occurs over a period of years and is not efficiently driven by fiscal year limitations. Even so, the judiciary only budgets for information technology costs that it reasonably expects to complete in a given year. Because funds assigned to information technology investments can carry forward to the following year, this ensures that, for individual investments, funds to complete a phase will be available even if not obligated by the end of the fiscal year. This flexibility allows projects to stay on

270

Salaries and Expenses Obligations – Judiciary Information Technology Fund Program Requirements

($000)

| ($000) IT Program Component | A<br>FY 2014 Projected Obligations | B<br>FY 2013 Slipped Requirements | C<br>FY 2014 Base Requirements (col a - col b) | FY 2015 Total Requirements | Change: FY 2014 Adj. Base Requirements to FY 2015 Current Services Requirements |
|---|---|---|---|---|---|
| Court Administration Systems | 2,260 | 5 | 2,255 | 2,896 | 641 |
| Judicial Statistics and Reporting Systems | 3,267 | 0 | 3,267 | 3,302 | 35 |
| Court IT Allotments | 87,475 | 721 | 86,754 | 86,754 | 0 |
| Probation and Pretrial Services | 14,758 | 394 | 14,364 | 14,707 | 343 |
| Financial Systems | 34,224 | 4,016 | 30,208 | 33,082 | 2,874 |
| Human Resources Systems | 18,764 | 943 | 17,821 | 18,434 | 613 |
| Management Information Systems | 11,951 | 214 | 11,737 | 12,921 | 1,184 |
| Infrastructure and Collaboration Tools | 70,367 | 2,013 | 68,354 | 69,516 | 1,162 |
| Telecommunications Program | 78,556 | 2,158 | 76,398 | 74,837 | (1,561) |
| Court Support Reimbursable Program | 40,055 | 0 | 40,055 | 41,473 | 1,418 |
| TOTAL, SALARIES AND EXPENSES | 361,676 | 10,464 | 351,213 | 357,922 | 6,709 |

32

271

## Court of Appeals, District Courts and Other Judicial Services
### *Defender Services*

| Courts of Appeals, District Courts and Other Judicial Services, Defender Services<br>FY 2015 Request | FTE | ($000) |
|---|---|---|
| **FY 2014 Enacted Appropriation - Discretionary** | 2,718 | 1,044,394 |
| **Adjustments to Base** | 2 | 8,764 |
| **FY 2015 Appropriation Request - Discretionary** | 2,720 | 1,053,158 |

**Budget Summary**

The Judicial Conference requests $1,053.2 million for Defender Services in fiscal year 2015, a 0.8 percent increase over the fiscal year 2014 enacted appropriation. This appropriation is approximately 14 percent of the judiciary's total fiscal year 2015 budget request. This funding supports the provision of constitutionally-mandated legal representation and other services to persons financially unable to obtain counsel in criminal and related matters in federal court. The Criminal Justice Act (CJA) provides that courts shall appoint counsel from federal public and community defender organizations or from a panel of private attorneys established by the court.

Costs associated with this account are driven by the number and type of prosecutions brought by United States Attorneys. The following table includes the projected caseload for fiscal years 2014 and 2015.

| | Projected CJA Representations | | |
|---|---|---|---|
| | FY 2014 | FY 2015 | Difference |
| Federal Defender Organizations* | 119,658 | 121,542 | 1,884 |
| Panel Attorneys | 90,200 | 90,900 | 700 |
| Total Projected Representations | 209,858 | 212,442 | 2,584 |

*\* FDO caseload projections are based on raw cases converted to weighted cases*

**Adjustments to Base - Discretionary**

An increase of $8.8 million is requested for pay and inflationary adjustments that will allow the judiciary to meet its constitutional obligation to provide defense counsel to all eligible persons in fiscal year 2015. In broad categories, these increases include:

1. ***Pay and benefit adjustments, Federal Defender Organizations, and Program Administration: $12.5 million***

An increase of $12.5 million will provide for the annualization of the fiscal year 2014 pay adjustment, an estimated 1.0 percent pay adjustment in 2015, within-grade increases, changes in benefits rate, and cost-of-living rate increases for panel attorneys.

2.  **Decrease in appropriations needed to fund current services: ($7.4 million)**

In fiscal year 2014, $17.6 million in balances from fiscal year 2013 was available to finance fiscal year 2014 requirements. In fiscal year 2015, absent unforeseen expenses that might arise, the judiciary expects $25.0 million in non-appropriated funds to be available, an increase of $7.4 million from fiscal year 2014. Therefore, the judiciary requests a decrease in appropriated funds for fiscal year 2015 to reflect the additional $7.4 million projected to be available in carryforward balances.

3.  *Other inflationary increases: $3.7 million*

An increase of $3.7 million is required for inflationary adjustments for all non-pay categories, as well as for space rental costs.

4.  *Annualization of four new case-budgeting attorney*                    **FTE 2**
    *positions: $0.4 million*

The requested increase would annualize four additional case budgeting attorney positions in fiscal year 2015. Currently, there are three case budgeting attorneys - one in each of the original pilot circuits (Second, Sixth and Ninth circuits), and four positions are projected to be hired in fiscal year 2014. This request annualizes the four positions in fiscal year 2015.

5.  *Savings from four new circuit CJA case-budgeting attorney*
    *positions: ($0.4 million)*

The addition of the requested four new case-budgeting attorney positions will create an offsetting savings of $0.4 million in the panel attorney requirements.

34

273

### Courts of Appeals, District Courts and Other Judicial Services
### Defender Services
### Comparative Summary of Obligations by Category
### ($000)

| Category | FY 2013 Actual | FY 2014 Estimate | FY 2015 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 366,748 | 387,464 | 394,523 | 7,059 |
| Rent, Communications and Utilities | 45,439 | 48,610 | 49,436 | 826 |
| Travel | 6,696 | 9,248 | 9,705 | 457 |
| Contractual Services (includes panel attorney payments) | 438,579 | 466,814 | 471,823 | 5,009 |
| Other (includes grants to Community Defender Organizations) | 134,506 | 149,886 | 152,671 | 2,785 |
| **Total Obligations** | **991,968** | **1,062,022** | **1,078,158** | **16,136** |
| Financing Adjustment | (5,913) | (17,628) | (25,000) | (7,372) |
| **Available Appropriation** | **986,055** | **1,044,394** | **1,053,158** | **8,764** |

35

274



36

# Courts of Appeals, District Courts and Other Judicial Services
## Fees of Jurors and Commissioners

| FY 2015 Request<br>Courts of Appeals, District Courts and Other Judicial<br>Services, Fees of Jurors and Commissioners | ($000) |
|---|---|
| FY 2014 Enacted Appropriation - Discretionary | 53,891 |
| Adjustments to Base | 1,936 |
| FY 2015 Appropriation Request - Discretionary | 55,827 |

## Budget Summary

The Judicial Conference requests $55.8 million for Fees of Jurors and Commissioners in fiscal year 2015, a 3.6 percent increase over the fiscal year 2014 enacted appropriation. This appropriation is less than 1 percent of the judiciary's total budget. Costs associated with this account may be unpredictable and are driven by the number of jury trials, the length of those trials, and statutory rates for reimbursement paid to jurors.

### Adjustments to Base - Discretionary

All of the adjustments in this account are base adjustments that will allow the account to continue to pay for the statutory fees and expenses to grand and petit jurors and compensation of land commissioners in fiscal year 2015. These adjustments include:

1. *Inflationary adjustments:  $0.5 million*

In addition to the attendance fees, jurors also are reimbursed for certain expenses including meals and lodging for sequestered jurors and transportation of juries to view evidence or crime scenes. Inflationary increases associated with these expenses are expected to total $0.1 million for grand jurors and $0.4 million for petit jurors in fiscal year 2015.

2. *Projected change in juror days:  $0.1 million*

Based on projected changes in the number of petit jurors, overall expenses are projected to increase by $0.1 million in fiscal year 2015. There is no increase in projected available grand jurors from fiscal year 2014 to fiscal year 2015.

3. *Funds necessary to maintain fiscal year 2014 service levels due to an anticipated decline in non-appropriated funds:  $1.3 million*

The fiscal year 2014 financial plan was financed in part by $1.3 million in carry forward balances from prior years. The judiciary requests appropriated funds for fiscal year 2015 to replace these non-appropriated funds in order to maintain the same level of service as provided in fiscal year 2014.

276

**Courts of Appeals, District Courts and Other Judicial Services**
**Fees of Jurors and Commissioners**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2013 Actual | FY 2014 Estimate | FY 2015 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 25,310 | 26,600 | 26,442 | (158) |
| Rent, Communications and Utilities | 1,733 | 1,149 | 1,698 | 549 |
| Travel | 25,884 | 25,802 | 26,028 | 226 |
| Other | 1,712 | 1,664 | 1,659 | (5) |
| **Total Obligations** | **54,639** | **55,215** | **55,827** | **612** |
| Financing Adjustment | (5,446) | (1,324) | 0 | 1,324 |
| **Available Appropriation** | **49,193** | **53,891** | **55,827** | **1,936** |

38



**FY 2015 Budget Request**
**Fees of Jurors and Commissioners Account by Category**
**(Obligations)**

Land Commissioners
0.2%

Petit Jurors
71.8%

Grand Jurors
28.0%

39

278

# Courts of Appeals, District Courts and Other Judicial Services
## Court Security

| Courts of Appeals, District Courts and Other Judicial Services , Court Security | | |
|---|---|---|
| **FY 2015 Request** | FTE | ($000) |
| FY 2014 Enacted Appropriation - Discretionary | 72 | 497,500 |
| Adjustments to Base | 0 | 33,263 |
| FY 2014 Appropriation Request - Discretionary | 72 | 530,763 |

### Budget Summary

The Judicial Conference requests $530.8 million for Court Security in fiscal year 2015, a 6.7 percent increase over the fiscal year 2014 enacted appropriation. The majority of the funding is transferred to the U.S. Marshals Service (USMS), which is responsible for administering the Judicial Facility Security Program. The Court Security appropriation is approximately 7 percent of the judiciary's total budget.

### Adjustments to Base - Discretionary

The Court Security request for adjustments to base is for pay, inflationary increases, and other adjustments to maintain fiscal year 2014 current services. In broad categories, these adjustments include:

1. *Pay and benefit increase: $0.2 million*

This increase accounts for the annualization of the fiscal year 2014 pay adjustment, an estimated 1.0 percent pay adjustment in 2015, within-grade increases, and changes in benefits rates.

2. *Additional court security officer positions (10) associated with fiscal year 2015 new and existing space:  $1.2 million*

The increase provides for ten additional CSOs for new and renovated existing space expected to be delivered in fiscal year 2015.

3. *Department of Labor and Collective Bargaining Agreements wage rate and other contractual adjustment: $12.9 million*

This increase provides for an average 3.0 percent wage adjustment for contract court security officers as established by the Department of Labor and based on collective bargaining agreements.

4. *Non-pay inflationary increases:  $0.1 million*

The funding requested will provide for a general inflationary increase of 1.7 percent for travel, supplies, equipment, and other contractual services (exclusive of Court Security Officers contracts).

5. *Inflationary increase in GSA space rental costs: $0.1 million*

The funding requested will provide for a general inflationary increase of 2.4 percent for GSA space rental costs.

41

**6. Changes in Federal Protective Service security charges: $3.0 million**

The requested increase of $3.0 million will fund building-specific operating expenses based on anticipated billings from the Federal Protective Service (FPS). The projected fiscal year 2015 costs do not increase for basic security because the judiciary's space footprint is not expected to expand in fiscal year 2015. This brings the total request for FPS charges to $81.5 million in fiscal year 2015, compared to $78.4 million projected in fiscal year 2014 -- a 3.9 percent increase over 2014.

| ($000) | FY 2014 | FY 2015 |
|---|---|---|
| Basic | 31,532 | 31,532 |
| Building-Specific | 46,888 | 49,926 |
| Total FPS | 78,420 | 81,458 |

**7. Adjustments to base for security systems and equipment: $0.8 million**

The requested amount reflects a net increase of $0.8 million in the court security systems and equipment acquisition plan. This includes $9.1 million in increases for additional and replacement equipment; maintenance contract for existing security systems and equipment; cyclical replacement of hardware and software for access control systems; perimeter security improvements; security systems for new and renovated facilities; CSO radios, accessories, repairs and over-the-air re-key; equipment for probation and pretrial services offices and federal public defender organizations; and a nationwide contract for vehicle barrier maintenance. An offsetting decrease of $8.3 million is for cyclical replacement of screening equipment; GSA installation and alterations; and screening equipment for new buildings.

**8. Funds necessary to maintain fiscal year 2014 service levels due to an anticipated decline in non-appropriated funds: $14.9 million**

The fiscal year 2014 financial plan is financed in part by $14.9 million in carryforward balances from fiscal year 2013. Since no carryforward balances are expected from fiscal year 2014, the judiciary requests appropriated funds for fiscal year 2015 to replace these non-appropriated funds in order to maintain the same level of service as provided in fiscal year 2014.

**Courts of Appeals, District Courts and Other Judicial Services**
**Court Security**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2013 Actual | FY 2014 Estimate | FY 2015 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 9,183 | 10,271 | 10,460 | 189 |
| Rent, Communications and Utilities | 7,162 | 7,458 | 7,631 | 173 |
| Travel | 249 | 457 | 466 | 9 |
| Court Security Officers Contract | 344,223 | 360,409 | 380,429 | 20,020 |
| Federal Protective Service Charges | 74,872 | 78,420 | 81,458 | 3,038 |
| Other | 35,376 | 58,582 | 53,824 | (4,758) |
| **Total Obligations** | **471,065** | **515,597** | **534,268** | **18,671** |
| Financing Adjustment | 2,782 | (18,097) | (3,505) | 14,592 |
| **Available Appropriation** | **473,847** | **497,500** | **530,763** | **33,263** |

43

281

| Court Security - Summary of Requirements and Financing | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Court Security Officers (CSOs) | | Security Systems/Equip | Program Administration | | FPS Provided Security | | Total | | |
| | CSOs | $000 | $000 | FTE | $000 | $000 | FTE | $000 | FTE | $000 |
| FY 2014 Financial Obligations | 4,216 | 366,409 | 44,302 | 72 | 23,237 | 78,420 | 72 | 78,420 | 72 | 512,368 |
| Less: Carryforward from FY 2013 | 0 | 0 | (14,868) | 0 | 0 | 0 | 0 | 0 | 0 | (14,868) |
| **Total FY 2014 Enacted Appropriation** | 4,216 | 366,409 | 29,434 | 72 | 23,237 | 78,420 | 72 | 78,420 | 72 | 497,500 |
| FY 2015 Appropriation Increases / Decreases | 10 | 14,020 | 15,681 | 0 | 524 | 3,038 | 0 | 3,038 | 0 | 33,263 |
| **Total FY 2015 Request** | 4,226 | 380,429 | 45,115 | 72 | 23,761 | 81,458 | 72 | 81,458 | 72 | 530,763 |

44



**FY 2015**
**Budget Request**
Court Security Account by Category
(Obligations)

Program
Administration
4%

Court Security
Officer Contract
Costs
72%

Federal Protective
Service Charges
15%

Security Systems
and Equipment
9%

45

## Administrative Office of the U.S. Courts

| FY 2015 Request Administrative Office of the U.S. Courts | FTE [1] | ($000) |
|---|---|---|
| FY 2014 Enacted Appropriation - Discretionary | 621 | 81,200 |
| Adjustments to Base | 0 | 3,199 |
| FY 2015 Appropriation Request - Discretionary | 621 | 84,399 |

[1] Does not reflect 466 reimbursable FTE in FY 2014 and FY 2015.

### Budget Summary

The Administrative Office (AO) requests $84.4 million in fiscal year 2015, a 3.9 percent increase over the fiscal year 2014 enacted appropriation. In addition to the appropriation provided by Congress, the AO receives non-appropriated funds from sources such as fee collections and carryover balances to offset its appropriation requirements. The AO also receives reimbursements from other judiciary accounts for information technology development and support services that are in direct support of the courts, the court security program, and defender services.

The AO provides administrative, legal, financial management, program, security, and information technology services to the federal courts. It provides support and staff counsel to the Judicial Conference of the United States and its committees, and implements Judicial Conference policies as well as applicable federal statutes and regulations. The AO is the focal point for communication and coordination within the judiciary and with Congress, the executive branch, and the public on behalf of the

judiciary. As such, the court staffing levels are a primary workload driver for the AO.

### Adjustments to Base - Discretionary

The AO requests $1.9 million for increases to standard pay and other inflationary adjustments, $0.5 million for information technology requirements, and $2.8 million to replace non-appropriated funds in order to maintain the same level of service as provided in fiscal year 2014. In addition, this request includes a decrease of $2.0 million for non-recurring requirements.

47

284

| Administrative Office of the U.S. Courts<br>Comparative Summary of Obligations by Category<br>($000) | | | | |
|---|---|---|---|---|
| Category | FY 2013<br>Actual | FY 2014<br>Estimate | FY 2015<br>Request | Requested<br>Increase/Decrease |
| Compensation and Benefits | 133,716 | 168,262 | 169,343 | 1,081 |
| Rent, Communications and Utilities | 445 | 730 | 743 | 13 |
| Travel | 599 | 1,332 | 1,357 | 25 |
| Other | 5,964 | 11,677 | 11,005 | (672) |
| **Total Obligations** | **140,724** | **182,001** | **182,448** | **447** |
| Financing Adjustment | (18,583) | (19,557) | (15,186) | 4,371 |
| Reimbursable Program | (43,569) | (81,244) | (82,863) | (1,619) |
| **Available Appropriation** | **78,572** | **81,200** | **84,399** | **3,199** |

48

# Federal Judicial Center

| FY 2015 Request<br>Federal Judicial Center | FTE | ($000) |
|---|---|---|
| **FY 2014 Enacted Appropriation -**<br>**Discretionary** | 133 | 26,200 |
| **Adjustments to Base** | 3 | 759 |
| **FY 2015 Appropriation Request -**<br>**Discretionary** | 136 | 26,959 |

## Budget Summary

The Federal Judicial Center (FJC) requests $27.0 million in fiscal year 2015, a 2.9 percent increase over the fiscal year 2014 enacted appropriation. The FJC, which is the research and education arm of the Third Branch, provides judges and other judiciary personnel with education and training on legal developments and efficient litigation management and court administration. As such, its workload is derived in large part by the population of the courts.

## Adjustments to Base - Discretionary

The Federal Judicial Center requests $0.6 million for increases to standard pay and other inflationary adjustments and an increase of $0.2 million (3 FTEs) to annualize 6 positions funded in fiscal year 2014. The FJC requests no program increases.

49

286

**Federal Judicial Center**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2013 Actual | FY 2014 Estimate | FY 2015 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 17,469 | 18,101 | 18,722 | 621 |
| Rent, Communications and Utilities | 370 | 555 | 564 | 9 |
| Travel | 5,113 | 5,380 | 5,468 | 88 |
| Other | 2,893 | 2,680 | 2,396 | (284) |
| **Total Obligations** | **25,845** | **26,716** | **27,150** | **434** |
| Financing Adjustment | (257) | (516) | (191) | 325 |
| **Available Appropriation** | **25,588** | **26,200** | **26,959** | **759** |

50

287

## Judicial Retirement Funds
## Payment to Judiciary Trust Funds

| FY 2015 Request Payment to Judiciary Trust Funds | ($000) |
|---|---|
| FY 2014 Available Appropriation - Mandatory | 126,931 |
| Adjustments to Base - Mandatory | 16,669 |
| FY 2015 Mandatory Request | 143,600 |

### Mandatory Increases

Based on independent actuarial calculations, an increase of $16.7 million is required for this account for fiscal year 2015 detailed as follows:

| | |
|---|---|
| Judicial Officers' Retirement Fund | $10.6 million |
| Judicial Survivors' Annuities Fund | $5.6 million |
| United States Court of Federal Claims Judges' Retirement Fund | $0.5 million |
| Total | $16.7 million |

### Budget Summary

The Judicial Conference requests $143.6 million for the Judicial Retirement Funds in fiscal year 2015, a 13.1 percent increase over the fiscal year 2014 enacted appropriation. The Payments to the Judiciary Trust Funds is a congressionally-scored mandatory account and is divided among three trust funds that finance payments to (1) retired bankruptcy and magistrate judges, (2) retired Court of Federal Claims judges, and (3) spouses and dependent children of deceased judicial officers. The appropriation requirements are calculated annually by an enrolled actuary pursuant to 31 U.S.C. 9503.

51

288

**Payment to Judiciary Trust Funds**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2013 Actual | FY 2014 Estimate | FY 2015 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Other | 125,464 | 126,931 | 143,600 | 16,669 |
| **Total Obligations/Appropriation** | **125,464** | **126,931** | **143,600** | **16,669** |

52

## United States Sentencing Commission

### FY 2015 Request
### U.S. Sentencing Commission

|  | FTE | ($000) |
|---|---|---|
| **FY 2014 Enacted Appropriation - Discretionary** | 93 | 16,200 |
| **Adjustments to Base** | 3 | 694 |
| **FY 2015 Appropriation Request - Discretionary** | 96 | 16,894 |

### Budget Summary

The U.S. Sentencing Commission requests $16.9 million in fiscal year 2015, a 4.3 percent increase over the fiscal year 2014 enacted appropriation.

The fulfillment of the Commission's duties to review and revise the guidelines regularly, collect data from federal sentencing courts, analyze these data to provide meaningful information on federal sentencing practices, and provide extensive training to guideline users can be satisfied only with full funding of its fiscal year 2015 request. Full funding will allow the Commission to continue its efforts to review and revise the guidelines; provide specialized training on federal sentencing issues, including application of the guidelines; modernize its data collection, analysis, and reporting systems; and continue its review of alternatives to incarceration. The Commission has begun a comprehensive assessment of federal sentencing. As part of the assessment, the Commission held regional hearings across the country and the input received will help to shape the Commission's policy priorities for the year.

### Adjustments to Base - Discretionary

The Commission requests $0.4 million for increases to standard pay and other inflationary adjustments, and an increase of $0.3 million (3 FTEs) for the annualization of 6 positions funded in fiscal year 2014. The Commission requests no program increases.

**U.S. Sentencing Commission**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2013 Actual | FY 2014 Estimate | FY 2015 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 11,693 | 12,406 | 13,021 | 615 |
| Rent, Communications and Utilities | 62 | 33 | 33 | 0 |
| Travel | 457 | 417 | 424 | 7 |
| Other | 3,412 | 4,272 | 3,416 | (856) |
| **Total Obligations** | **15,624** | **17,128** | **16,894** | **(234)** |
| Financing Adjustment | 13 | (928) | 0 | 928 |
| **Available Appropriation** | **15,637** | **16,200** | **16,894** | **694** |

54

## Appropriation Language Changes

Based on the Office of Management and Budget's decision to drop old Section 624 language from the fiscal year 2015 President's Budget, the Judiciary is requesting that the appropriations language for the Judicial Retirement Trust Funds be moved from Title VI of the General Provisions, to the Judiciary's title of the bill (Title III) under the account heading for the retirement funds.

## Administrative Provisions Changes

Old Section 306: It is proposed for deletion because that language is now permanent.

Old Section 307:  The language extending these temporary judgeships for one year was enacted on January 17, 2014 as part of the Consolidated Appropriations Act, 2014 (P.L. 113-76).
It is proposed for deletion because the Judiciary is hopeful a judgeship bill will be enacted during fiscal year 2014 that will address the need to convert these temporary judgeships to permanent.

55

292

**Administrative Provisions - The Judiciary**

Sec. 301.  Appropriations and authorizations made in this title which are available for salaries and expenses shall be available for services as authorized by 5 U.S.C. 3109.

Sec. 302.  Not to exceed 5 percent of any appropriation made available for the current fiscal year for the Judiciary in this Act may be transferred between such appropriations, but no such appropriation, except "Courts of Appeals, District Courts, and Other Judicial Services, Defender Services" and "Courts of Appeals, District Courts, and Other Judicial Services, Fees of Jurors and Commissioners", shall be increased by more than 10 percent by any such transfers: Provided, That any transfer pursuant to this section shall be treated as a reprogramming of funds under sections 604 and 608 of this Act and shall not be available for obligation or expenditure except in compliance with the procedures set forth in section 608.

Sec. 303.  Notwithstanding any other provision of law, the salaries and expenses appropriation for "Courts of Appeals, District Courts, and Other Judicial Services" shall be available for official reception and representation expenses of the Judicial Conference of the United States: Provided, That such available funds shall not exceed $11,000 and shall be administered by the Director of the Administrative Office of the United States Courts in the capacity as Secretary of the Judicial Conference.

Sec. 304.  Section 3314(a) of title 40, United States Code, shall be applied by substituting "Federal" for "executive" each place it appears.

Sec. 305.  In accordance with 28 U.S.C. 561-569, and notwithstanding any other provision of law, the United States Marshals Service shall provide, for such courthouses as its Director may designate in consultation with the Director of the Administrative Office of the United States Courts, for purposes of a pilot program, the security services that 40 U.S.C. 1315 authorizes the Department of Homeland Security to provide, except for the services specified in 40 U.S.C. 1315(b)(2)(E). For building-specific security services at these courthouses, the Director of the Administrative Office of the United States Courts shall reimburse the United States Marshals Service rather than the Department of Homeland Security.

[Sec. 306.   The Supreme Court of the United States, the Federal Judicial Center, and the United States Sentencing Commission are hereby authorized, now and hereafter, to enter into contracts for the acquisition of severable services for a period that begins in one fiscal year and ends in the next fiscal year and to enter into contracts for multiple years for the acquisition of property and services, to the same extent as executive agencies under the authority of 41 U.S.C. sections 3902 and 3903, respectively.]

57

[Sec. 307. (a) Section 203(c) of the Judicial Improvements Act of 1990 (Public Law 101–650; 28 U.S.C. 133 note), is amended in the matter following paragraph (12)—

(1) in the second sentence (relating to the District of Kansas), by striking "22 years and 6 months" and inserting "23 years and 6 months"; and

(2) in the sixth sentence (related to the District of Hawaii), by striking "19 years and 6 months" and inserting "20 years and 6 months".

(b) Section 406 of the Transportation, Treasury, Housing and Urban Development, the Judiciary, the District of Columbia, and Independent Agencies Appropriations Act, 2006 (Public Law 109–115; 119 Stat. 2470; 28 U.S.C. 133 note) is amended in the second sentence (relating to the eastern District of Missouri) by striking "20 years and 6 months" and inserting "21 years and 6 months".

(c) Section 312(c)(2) of the 21st Century Department of Justice Appropriations Authorization Act (Public Law 107–273; 28 U.S.C. 133 note), is amended—

(1) in the first sentence by striking "11 years" and inserting "12 years"; and

(2) in the second sentence (relating to the central District of California), by striking "10 years and 6 months" and inserting "11 years and 6 months".]

This title may be cited as the "Judiciary Appropriations Act, [2014] 2015".

58



SUPREME COURT OF
THE UNITED STATES

BUDGET ESTIMATES FOR FISCAL YEAR 2015
CONGRESSIONAL SUBMISSION

SUPREME COURT OF THE UNITED STATES
SUMMARY STATEMENT RELATING APPROPRIATION ESTIMATES TO THE CURRENT APPROPRIATION

Fiscal Year 2014 Enacted Appropriation                                    $   86,225,000

|  | Requirements | | |
| --- | --- | --- | --- |
|  |  | 2015 |  |
|  | 2014 Enacted Appropriation | Requested Appropriation | Requested Appropriation Increase/Decrease |
| Salaries and Expenses | $ 75,067,000 | $ 77,494,000 | $   2,427,000 |
| Care of the Building and Grounds | $ 11,158,000 | $ 11,640,000 | $    482,000 |
| Totals | $ 86,225,000 | $ 89,134,000 | $  2,909,000 |

Proposed Increase over Fiscal Year 2014 Appropriation                     $    2,909,000

Total Requested Budget Authority, Fiscal Year 2015                        $   89,134,000

1.1

296

**SUPREME COURT OF THE UNITED STATES**
*Salaries and Expenses*
SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | Mandatory | Discretionary | Total |
|---|---|---|---|
| Fiscal Year 2014 Enacted Appropriation | $2,442,000 | $72,625,000 | $75,067,000 |
| Fiscal Year 2015 Appropriation Request | $2,527,000 | $74,967,000 | $77,494,000 |
| Requested Increase from Fiscal Year 2014 Appropriation | $85,000 | $2,342,000 | $2,427,000 |

APPROPRIATION LANGUAGE

SUPREME COURT OF THE UNITED STATES

SALARIES AND EXPENSES

For expenses necessary for the operation of the Supreme Court, as required by law, excluding care of the building and grounds, including hire of passenger motor vehicles as authorized by 31 U.S.C. 1343 and 1344; not to exceed $10,000 for official reception and representation expenses; and for miscellaneous expenses, to be expended as the Chief Justice may approve, [$72,625,000] $74,967,000, of which [$1,500,000] $2,000,000 shall remain available until expended.

In addition, there are appropriated such sums as may be necessary under current law for salaries of the chief justice and associate justices of the court.

1.2

1.3

**SUMMARY OF REQUEST**
**SUPREME COURT OF THE UNITED STATES**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2015**
(Dollar amounts in thousands)

**Fiscal Year 2015 Resource Requirements:**

| Page No. | | Mandatory FTE | Mandatory Amount | Discretionary FTE | Discretionary Amount | Total FTE | Total Amount |
|---|---|---|---|---|---|---|---|
| | Fiscal Year 2014 Enacted Appropriation........ | 9 | 2,442 | 488 | 72,625 | 497 | 75,067 |
| | **Adjustments to Base to Maintain Current Services:** | | | | | | |
| | **A. Justices** | | | | | | |
| | Pay and benefits cost adjustments | | | | | | |
| 1.15 | 1  Annualization of 2014 pay adjustment | | | | | | |
| | a. Annualization of the 2014 pay increase (1.0% for three months)........ | | 5 | - | - | | 5 |
| | b. Annualization of the justices' base pay adjustment (2.5 months)........ | | 55 | - | - | - | 55 |
| 1.16 | 2. Proposed January 2015 pay adjustment (1.0% for nine months)........ | | 16 | - | - | | 16 |
| 1.16 | 3. Health benefits increase........ | | 8 | - | - | | 8 |
| 1.16 | 4. FICA increase........ | - | 1 | - | - | | 1 |
| | **B. Court Support Personnel** | | | | | | |
| | Pay and benefits cost adjustments | | | | | | |
| 1.16 | 5. Annualization of 2014 pay adjustment (1.0% for three months)........ | | - | - | 104 | | 104 |
| 1.16 | 6. Proposed January 2015 pay adjustment (1.0% for nine months)........ | | - | - | 312 | | 312 |
| 1.16 | 7. Promotions and within-grade increases........ | | - | - | 401 | | 401 |
| 1.17 | 8. Health benefits increase........ | - | - | - | 149 | | 149 |
| 1.17 | 9. FICA increase........ | - | - | - | 29 | | 29 |
| 1.17 | 10. Retirement increase........ | | - | - | 485 | | 485 |
| | **C. Other Adjustments** | | | | | | |
| | General inflationary adjustments | | | | | | |
| 1.17 | 11. Inflationary increases in charges for contracts, services, supplies, and equipment........ | | - | - | 297 | | 297 |
| 1.17 | 12. Library services........ | | - | - | 65 | | 65 |
| 1.18 | 13. Restoration of technology fund reduction........ | | - | - | 500 | - | 500 |
| | Subtotal, adjustments to base to maintain current services........ | | 85 | - | 2,342 | - | 2,427 |
| | Total Appropriation Required, Fiscal Year 2015........ | 9 | 2,527 | 488 | 74,967 | 497 | 77,494 |

298

1.4

## SUPREME COURT OF THE UNITED STATES
## SALARIES AND EXPENSES
## OBLIGATIONS BY ACTIVITY ($000)

| Activity | Fiscal Year 2013 Actual | Fiscal Year 2014 Estimate | Fiscal Year 2015 Request |
|---|---|---|---|
| **Salaries and Expenses, Total Obligations** | 70,950 | 75,067 | 77,494 |
| | | | |
| Unobligated Balance, Start of the Year | - | - | - |
| Unobligated Balance, End of the Year | - | - | - |
| Unobligated Balance, Expiring | 80 | - | - |
| | | | |
| **Available Appropriation** | 71,030 | 75,067 | 77,494 |

### Object Classification ($000)

| Description | Fiscal Year 2013 Actual | Fiscal Year 2014 Estimate | Fiscal Year 2015 Request |
|---|---|---|---|
| 11 Personnel compensation | 40,913 | 43,114 | 43,901 |
| 12 Personnel benefits | 13,210 | 14,464 | 15,241 |
| 13 Benefits of former personnel | 0 | 32 | 32 |
| 21 Travel | 510 | 492 | 500 |
| 22 Transportation of things | 60 | 65 | 67 |
| 23 Rent, communications and utilities | 1,129 | 1,122 | 1,141 |
| 24 Printing and reproduction | 307 | 416 | 423 |
| 25 Other services | 8,890 | 9,271 | 9,929 |
| 26 Supplies and materials | 2,133 | 2,394 | 2,435 |
| 31 Equipment | 3,798 | 3,697 | 3,825 |
| **Total Obligations** | 70,950 | 75,067 | 77,494 |

1.5

## SUPREME COURT OF THE UNITED STATES
## SALARIES AND EXPENSES
## RELATION OF OBLIGATIONS TO OUTLAYS ($000)

|  | Fiscal Year 2013 Actual | Fiscal Year 2014 Estimate | Fiscal Year 2015 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 70,950 | 75,067 | 77,494 | 2,427 |
| Obligated balance, start of year | 8,842 | 9,996 | 10,656 | 660 |
| Obligated balance, end of year | (9,996) | (10,656) | (11,043) | (387) |
| Net Outlays | 69,796 | 74,407 | 77,107 | 2,701 |

### Personnel Summary

|  | Fiscal Year 2013 Actual | Fiscal Year 2014 Estimate | Fiscal Year 2015 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total compensable workyears: Full-time equivalent employment | 497 | 497 | 497 | 0 |

SUPREME COURT OF THE UNITED STATES
SALARIES AND EXPENSES
TECHNOLOGY FUND OBLIGATIONS AND FINANCING ($000)

| Activity | Fiscal Year 2013 Actual | Fiscal Year 2014 Estimate | Fiscal Year 2015 Request |
|---|---|---|---|
| Unobligated Balance, Start of the Year | 4,524 | 5,415 | 6,165 |
| New Deposits | 1,996 | 1,500 | 2,000 |
| Unobligated Balance, End of the Year | (5,415) | (6,165) | (6,061) |
| No-Year Fund, Total Obligations | 1,105 | 750 | 2,104 |

NOTE:

FY 2013 Actuals: Continue Sharepoint implementation; Mobile Device solutions implemented and in use by the Court Payroll Migration proceeding well, multiple databases developed, expected October 2014 completion; Upgraded digital print equipment for opinion processing.

FY 2014 Projected: Begin preparations for the next court-wide desktop platform rollout.  Payroll migration to be completed.

FY 2015 Requested: Begin new court-wide desktop implementation, expected October 2017 completion.

Before the establishment of no-year funding, the Court encountered difficulties in planning technology upgrades because it lacked an assurance of available funds to commence and complete the upgrades. Congress's initiation of the no-year funding mechanism in fiscal year 2006 resolved that difficulty.  Under the no-year funding mechanism, technology fund balances have been built up in $2 million annual increments and spent when needed to accomplish scheduled technology upgrades, typically over four-year cycles.

1.6

## Table SC.1
## Summary of Supreme Court Cases

| Term* | Case Filings During Term | Carried Over From Prior Term | Total Cases | Original & Paid | In Forma Pauperis | Total Cases Disposed Of | Total Cases Not Disposed Of |
|---|---|---|---|---|---|---|---|
| 1975 | 3,940 | 821 | 4,761 | 2,366 | 2,395 | 3,806 | 955 |
| 1980 | 4,174 | 970 | 5,144 | 2,773 | 2,371 | 4,255 | 889 |
| 1981 | 4,422 | 889 | 5,311 | 2,957 | 2,354 | 4,433 | 878 |
| 1982 | 4,201 | 878 | 5,079 | 2,727 | 2,352 | 4,201 | 878 |
| 1983 | 4,222 | 878 | 5,100 | 2,706 | 2,394 | 4,141 | 959 |
| 1984 | 4,047 | 959 | 5,006 | 2,590 | 2,416 | 4,261 | 745 |
| 1985 | 4,413 | 745 | 5,158 | 2,581 | 2,577 | 4,275 | 888 |
| 1986 | 4,240 | 888 | 5,128 | 2,559 | 2,564 | 4,348 | 776 |
| 1987 | 4,498 | 775 | 5,268 | 2,538 | 2,676 | 4,887 | 881 |
| 1988 | 4,776 | 881 | 5,657 | 2,599 | 3,058 | 4,829 | 828 |
| 1989 | 4,918 | 828 | 5,746 | 2,490 | 3,316 | 4,982 | 814 |
| 1990 | 5,502 | 814 | 6,316 | 2,365 | 3,951 | 5,412 | 904 |
| 1991 | 5,866 | 904 | 6,770 | 2,468 | 4,307 | 5,828 | 942 |
| 1992 | 6,303 | 942 | 7,245 | 2,468 | 4,792 | 6,356 | 889 |
| 1993 | 6,897 | 889 | 7,786 | 2,454 | 5,332 | 6,682 | 1,104 |
| 1994 | 6,996 | 1,104 | 8,100 | 2,526 | 5,574 | 7,132 | 968 |
| 1995 | 6,597 | 968 | 7,565 | 2,467 | 5,098 | 6,699 | 966 |
| 1996 | 6,634 | 966 | 7,600 | 2,435 | 5,165 | 6,689 | 911 |
| 1997 | 6,781 | 911 | 7,692 | 2,439 | 5,253 | 6,718 | 974 |
| 1998 | 7,109 | 974 | 8,083 | 2,394 | 5,689 | 7,015 | 1,068 |
| 1999 | 7,377 | 1,068 | 8,445 | 2,421 | 6,024 | 7,332 | 1,113 |
| 2000 | 7,852 | 1,113 | 8,965 | 2,314 | 6,651 | 7,713 | 1,252 |
| 2001 | 7,924 | 1,252 | 9,176 | 2,218 | 6,958 | 8,025 | 1,151 |
| 2002 | 8,255 | 1,161 | 9,406 | 2,197 | 7,209 | 8,337 | 1,069 |
| 2003 | 7,814 | 1,068 | 8,882 | 2,064 | 6,818 | 7,791 | 1,092 |
| 2004 | 7,496 | 1,092 | 8,588 | 2,045 | 6,543 | 7,503 | 1,087 |
| 2005 | 8,521 | 1,087 | 9,608 | 2,033 | 7,575 | 8,209 | 1,399 |
| 2006 | 8,857 | 1,399 | 10,256 | 2,075 | 8,181 | 8,895 | 1,361 |
| 2007 | 8,241 | 1,361 | 9,602 | 1,974 | 7,628 | 8,375 | 1,227 |
| 2008 | 7,738 | 1,228 | 8,966 | 1,946 | 7,021 | 7,824 | 1,142 |
| 2009 | 8,159 | 1,142 | 9,301 | 1,915 | 7,388 | 8,096 | 1,205 |
| 2010 | 7,857 | 1,205 | 9,062 | 1,895 | 7,167 | 7,828 | 1,234 |
| 2011 | 7,718 | 1,289 | 8,982 | 1,870 | 7,082 | 7,656 | 1,296 |
| 2012 | 7,509 | 1,297 | 8,806 | 1,809 | 6,997 | 7,602 | 1,204 |
| 2013** | 7,611 | 1,204 | 8,815 | 1,763 | 7,052 | 7,581 | 1,234 |

*October Term 2013 corresponds with fiscal year 2014.
**Projection for full Term.

CLER-0067-12-2013

1.7

## Table SC.2
## Summary of Case Dispositions

| Term | Cases Granted Review | | Cases Reviewed and Decided Without Argument During Term | Cases Granted Review During Term |
|---|---|---|---|---|
| | Argued This Term | Disposed of by Opinion | | |
| 1975 | 179 | 176 | 184 | 172 |
| 1980 | 154 | 162 | 122 | 188 |
| 1981 | 184 | 170 | 126 | 201 |
| 1982 | 183 | 174 | 119 | 179 |
| 1983 | 184 | 174 | 81 | 149 |
| 1984 | 175 | 159 | 73 | 185 |
| 1985 | 171 | 171 | 106 | 187 |
| 1986 | 176 | 174 | 109 | 167 |
| 1987 | 167 | 160 | 87 | 180 |
| 1988 | 170 | 168 | 107 | 147 |
| 1989 | 146 | 146 | 80 | 128 |
| 1990 | 125 | 125 | 115 | 141 |
| 1991 | 127 | 123 | 77 | 121 |
| 1992 | 116 | 115 | 113 | 97 |
| 1993 | 99 | 99 | 70 | 99 |
| 1994 | 94 | 94 | 69 | 96 |
| 1995 | 90 | 90 | 120 | 106 |
| 1996 | 96 | 94 | 88 | 87 |
| 1997 | 96 | 88 | 61 | 90 |
| 1998 | 83 | 79 | 59 | 81 |
| 1999 | 86 | 79 | 54 | 92 |
| 2000 | 88 | 85 | 127 | 99 |
| 2001 | 84 | 79 | 72 | 88 |
| 2002 | 91 | 89 | 66 | 91 |
| 2003 | 87 | 83 | 52 | 87 |
| 2004 | 90 | 85 | 835 | 80 |
| 2005 | 78 | 74 | 106 | 78 |
| 2006 | 75 | 72 | 280 | 77 |
| 2007 | 87 | 88 | 208 | 95 |
| 2008 | 88 | 77 | 96 | 88 |
| 2009 | 86 | 88 | 95 | 78 |
| 2010 | 79 | 78 | 84 | 90 |
| 2011 | 79 | 76 | 187 | 66 |
| 2012 | 77 | 76 | 88 | 98 |
| 2013* | 81 | 79 | 52 | 75 |

*Projection for full Term.

CLER-0674A-12-2013

1.8

## Table SC.3
### Applications to Individual Justices, Including Capital Cases

| Term | Applications for Relief to Individual Justices | Chambers Opinions | Applications for Stay in Capital Cases* |
|---|---|---|---|
| 1975 | 1,165 | 10 | 0 |
| 1980 | 1,096 | 11 | 82 |
| 1981 | 1,145 | 7 | 89 |
| 1982 | 1,077 | 19 | 45 |
| 1983 | 1,072 | 14 | 76 |
| 1984 | 982 | 11 | 62 |
| 1985 | 1,050 | 6 | 66 |
| 1986 | 961 | 11 | 86 |
| 1987 | 1,001 | 3 | 60 |
| 1988 | 1,064 | 5 | 90 |
| 1989 | 929 | 0 | 71 |
| 1990 | 984 | 3 | 55 |
| 1991 | 968 | 1 | 74 |
| 1992 | 974 | 2 | 76 |
| 1993 | 1,118 | 5 | 79 |
| 1994 | 992 | 5 | 82 |
| 1995 | 1,067 | 5 | 87 |
| 1996 | 985 | 1 | 110 |
| 1997 | 985 | 1 | 115 |
| 1998 | 1,100 | 0 | 188 |
| 1999 | 1,085 | 0 | 182 |
| 2000 | 1,145 | 1 | 87 |
| 2001 | 1,006 | 2 | 91 |
| 2002 | 1,096 | 3 | 99 |
| 2003 | 1,064 | 3 | 86 |
| 2004 | 1,081 | 3 | 68 |
| 2005 | 1,286 | 2 | 112 |
| 2006 | 1,243 | 2 | 71 |
| 2007 | 1,094 | 8 | 20 |
| 2008 | 1,167 | 2 | 68 |
| 2009 | 1,288 | 2 | 60 |
| 2010 | 1,277 | 2 | 65 |
| 2011 | 1,256 | 1 | 61 |
| 2012 | 1,251 | 2 | 44 |
| 2013** | 1,258 | 2 | 50 |

* Some applications addressed to a Justice are referred to the whole Court for decision.
** Projection for full Term.

CLER-0678-12-2013

1.9

304







SUPREME COURT OF THE UNITED STATES          Office of the Clerk

Cases Docketed By Type

Civil
2189
30%

Habeas Corpus
2381
33%

Criminal
2618
36%

Other
101
1%

Term Year 2012

1.12



SUPREME COURT OF THE UNITED STATES

Office of the Clerk

Cases Argued By Type

Habeas Corpus
5
6%

Criminal
16
21%

Original
0
0%

Civil
56
73%

Term Year 2012

1.13



SUPREME COURT OF THE UNITED STATES

Office of the Clerk

Cases Docketed

Term Year 2012

Paid and Original
1504
20%

I.F.P
6005
80%

1.14

309

## GENERAL STATEMENT AND INFORMATION

The Supreme Court requests funds for salaries of the Chief Justice, eight Associate Justices, the Counselor to the Chief Justice, the four Statutory Officers of the Court, and the employees of the Court.   The Court also requests funds for the necessary expenses of the Court, including printing and binding of the Supreme Court reports, purchasing books for the Supreme Court and miscellaneous expenses for fiscal year 2015.

### Justification of Changes

The fiscal year 2015 budget request for the Court totals $77,494,000, which includes $2,527,000 for mandatory expenses and $74,967,000 for discretionary expenses.   The discretionary request of $74,967,000 is a 3.2 percent increase over the fiscal year 2014 enacted discretionary appropriation of $72,625,000.   This request includes inflationary adjustments (discretionary) of $1,842,000, and restoration of $500,000 to the technology fund, resulting in a net increase of $2,342,000 over the fiscal year 2014 discretionary appropriation.   The budget request includes no-year funding for planning and implementing periodic Court-wide technology and automation upgrades totaling $2,000,000.

**Adjustments to base to maintain current services** include funds for pay and benefits increases for current Justices and staff.   Also included are increased costs of ongoing activities such as travel, postage, supplies, law books, equipment, furnishings, automation, and offsite warehouse space for activities that include mail screening.

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

The following narrative provides information and justification for each of the adjustments to base for the Supreme Court.   The major headings for this section of the narrative are: Justices, Court Support Personnel, and Other Adjustments.

### A.   JUSTICES

*Pay and Benefits Cost Adjustments*

1.  Annualization of 2014 pay adjustment

   a.   Annualization of the 2014 pay increase

**Mandatory Increase:   $5,000**

Federal pay rates increased by 1.0 percent in January 2014. The requested increase provides for the cost of three months (from October 2014 to December 2014) of the 2014 pay increase in fiscal year 2015.

   b.   Annualization of justices' base pay adjustment

**Mandatory Increase: $55,000**

Funds are requested to provide for the annualization (2.5 months) of the justices' pay adjustment.

1.15

310

1.16

## 2. Proposed January 2015 pay adjustment

**Mandatory Increase:   $16,000**

As of January 2014, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.0 percent beginning on or after January 1, 2015. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2015 (from January 2015 to September 2015).

## 3. Health benefits increase

**Mandatory Increase: $8,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by an average of 3.7 percent in January 2014. The requested increase annualizes the 2014 premium increase, and includes a nine-month provision for an estimated 4.0 percent increase anticipated for fiscal year 2015.

## 4. FICA increase

**Mandatory Increase: $1,000**

Funds are requested to provide for the base adjustment in employer contributions to the Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax. The salary cap for OASDI increased to $113,700 in January 2013, and increased to $117,000 in January 2014. The requested amount is needed to pay the agency contribution.

## B.   COURT SUPPORT PERSONNEL

### 5.   Annualization of 2014 pay adjustment

**Requested Increase:   $104,000**

Federal pay rates increased by 1.0 percent in January 2014. The requested increase provides for the cost of three months (from October 2014 to December 2014) of the 2014 pay increase in fiscal year 2015.

### 6.   Proposed January 2015 pay adjustment

**Requested Increase:   $312,000**

As of January 2014, The Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.0 percent beginning on or after January 2015. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2015 (from January 2015 to September 2015).

### 7.   Promotions and within-grade increases

**Requested Increase: $401,000**

The requested increase provides for promotions and within-grade increases for personnel. The salary plan for judicial support personnel provides for periodic within-grade increases for staff who receive at least a satisfactory performance rating.

311

C.  OTHER ADJUSTMENTS

*General Inflationary Adjustments*

**11.  Inflationary increases in charges for contracts, services, supplies, and equipment**

**Requested Increase:  $297,000**

Consistent with guidance from the Office of Management and Budget, this request of $297,000 is required to fund inflationary increases of 1.7 percent for operating expenses such as travel, communications, printing, contractual services, supplies and materials, and furniture and equipment.

**12.  Library services**

**Requested Increase:  $65,000**

The increase is requested to cover estimated increases in the costs of library services, including law book accessions and continuations, and computer-assisted legal research.

**13.  Restoration of technology fund reduction**

**Requested Increase:  $500,000**

The technology fund was established as a no-year funding source to provide for multi-year projects that enhance Court-wide technology and office automation.  The fund is designed to accumulate for expenditure during technology upgrades, which occur every third year with completion in the fifth year.  The Court has received a $2 million appropriation for this fund annually since its inception in fiscal year 2006.

**8.  Health benefits increase**

**Requested Increase: $149,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by an average of 3.7 percent in January 2014.  The requested increase annualizes the 2014 premium increase, and includes a nine-month provision for an estimated 4.0 percent increase anticipated for fiscal year 2015.

**9.  FICA increase**

**Requested Increase:   $29,000**

Funds are requested to provide for the base adjustment in employer contributions to the Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax.  The salary cap for OASDI increased to $113,700 in January 2013, and increased to $117,000 in January 2014.  The requested amount is needed to pay the agency contribution.

**10.  Retirement cost increase**

**Requested Increase:   $485,000**

Funds are requested to provide for the expected increase in retirement costs as a result of the increase in salaries.  Also, the Supreme Court's costs for the Federal Employee Retirement System (FERS) have increased an average of 5.0 percent in recent years.  This requested increase will cover the additional expenses of FERS employees hired to replace employees under the Civil Service Retirement System who retire or leave the Supreme Court.

1.17

312

1.18

The Court has carefully managed this fund.   Reflecting the consequent savings, the Court proposed to reduce the fiscal year 2014 appropriation by $500,000 to $1,500,000 as a one-year reduction in funding.   The Court requests this funding restored to the full $2,000,000 appropriation level in fiscal year 2015.

1.19

SUPREME COURT OF THE UNITED STATES
*Care of the Building and Grounds*
SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | |
|---|---|
| Fiscal Year 2014 Enacted Appropriation | $11,158,000 |
| Fiscal Year 2015 Appropriation Request | $11,640,000 |
| Requested Increase from Fiscal Year 2014 Appropriation | $482,000 |

APPROPRIATION LANGUAGE

SUPREME COURT OF THE UNITED STATES

CARE OF THE BUILDING AND GROUNDS

For such expenditures as may be necessary to enable the Architect of the Capitol to carry out the duties imposed upon the Architect by 40 U.S.C. 6111 and 6112, [$11,158,000] *$11,640,000*, to remain available until expended.

314

SUMMARY OF REQUEST
SUPREME COURT OF THE UNITED STATES
CARE OF THE BUILDING AND GROUNDS
FISCAL YEAR 2015
(Dollar amounts in thousands)

**Fiscal Year 2015 Resource Requirements:**

| Page No. | | | FTEs | Amount |
|---|---|---|---|---|
| | Fiscal Year 2014 Enacted Appropriation............................................................... | | 50 | $11,158 |
| | **Adjustments to Base to Maintain Current Services:** | | | |
| | **A. Personnel and Personnel** | | | |
| 1.24 | 1 | Annualization of 2014 pay adjustment (1.0% for three months)....................... | - | 7 |
| 1.24 | 2. | Proposed January 2015 pay adjustment (1.0% for nine months)........................ | - | 56 |
| 1.24 | 3. | Within-grade increases..................................................................................... | - | 31 |
| 1.24 | 4. | Health benefits increase.................................................................................... | - | 10 |
| | **B. Other Adjustments** | | | |
| 1.24 | 5. | General inflationary increases........................................................................... | - | 65 |
| 1.25 | 6. | Reduction for non-recurring requirements......................................................... | - | (3,000) |
| | | Subtotal, Adjustments to Base to Maintain Current Services............................ | - | (2,831) |
| | | Total Current Services Appropriation Required................................................. | 50 | 8,327 |
| | **C. Program Increases** | | | |
| 1.25 | 7. | East Façade Restoration.................................................................................... | - | 2,500 |
| 1.25 | 8. | Electronic systems maintenance........................................................................ | - | 813 |
| | | Subtotal, Program Increases.............................................................................. | - | 3,313 |
| | | Total Fiscal Year 2015 Appropriation Required................................................ | 50 | 11,640 |
| | | Total Appropriation Change, Fiscal Year 2014 to Fiscal Year 2015................. | - | 482 |

1.20

**SUPREME COURT OF THE UNITED STATES**
**CARE OF THE BUILDING AND GROUNDS**
Obligations by Activity ($000)

| Activity | Fiscal Year 2013 Actual | Fiscal Year 2014 Estimate | Fiscal Year 2015 Request |
|---|---|---|---|
| Care of Building and Grounds, Total Obligations | 11,028 | 12,322 | 13,240 |
| Unobligated Balance, Start of Year | (13,660) | (10,364) | (9,200) |
| Unobligated Balance, End of Year | 10,364 | 9,200 | 7,600 |
| Available Appropriation | 7,732 | 11,158 | 11,640 |

Object Classification ($000)

| | Description | Fiscal Year 2013 Actual | Fiscal Year 2014 Estimate | Fiscal Year 2015 Request |
|---|---|---|---|---|
| 11 | Personnel compensation | 3,066 | 3,293 | 3,372 |
| 12 | Personnel benefits | 961 | 1,032 | 1,057 |
| 21 | Travel and transportation of things | 4 | 4 | 0 |
| 23 | Rent, communications and utilities | 1,831 | 1,850 | 2,000 |
| 25 | Other services | 2,502 | 2,600 | 3,250 |
| 26 | Supplies and materials | 391 | 450 | 475 |
| 31 | Equipment | 20 | 0 | 0 |
| 32 | Land and structures | 2,253 | 3,093 | 3,086 |
| | **Total Obligations** | **11,028** | **12,322** | **13,240** |

1.21

1.22

## SUPREME COURT OF THE UNITED STATES
## CARE OF THE BUILDING AND GROUNDS
### Relation of Obligations to Outlays ($000)

|  | Fiscal Year 2013 Actuals | Fiscal Year 2014 Estimate | Fiscal Year 2015 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 11,028 | 12,322 | 13,240 | 918 |
| Obligated balance, start of year | 15,384 | 10,961 | 6,970 | (3,991) |
| Obligated balance, end of year | (10,961) | (6,970) | (7,455) | (485) |
| Net Outlays | 15,451 | 16,313 | 12,755 | (3,558) |

### Personnel Summary[1]

|  | Fiscal Year 2013 Actual | Fiscal Year 2014 Estimate | Fiscal Year 2015 Request | Difference |
|---|---|---|---|---|
| Total compensable workyears: |  |  |  |  |
| Full-time equivalent employment | 39 | 50 | 50 | 0 |

[1] Full-time equivalent numbers reflect payroll funded and project funded personnel.

## GENERAL STATEMENT AND INFORMATION

This appropriation, for expenditure by the Architect of the Capitol, provides for the structural and mechanical care of the United States Supreme Court Building and Grounds, including maintenance and operation of mechanical, electrical, and electronic equipment. The Architect is not responsible for custodial care, which is under the jurisdiction of the Marshal of the Supreme Court and is provided for in the Supreme Court's salaries and expenses appropriation. The Architect performs his duties under authority of 40 U.S.C. § 6111.

The equipment includes such items as air conditioning, refrigeration and ventilating systems with more than 1,000 pieces of equipment; electrical transformer stations and emergency power system; three hundred plumbing fixtures and related piping; nine elevators and five dumbwaiters; electrical fixtures and wiring; and electronic security equipment. In fiscal year 2015, a total of 50 full-time equivalents (FTE) are expected to cover three shifts daily.

Projects under the Architect of the Capitol relating to the buildings and grounds in the Capitol campus are included in the Legislative Branch budget. However, the projects pertaining to the Supreme Court, Care of the Building and Grounds are presented within the judiciary's budget request.

## Justification of Changes

The fiscal year 2015 budget request for the Supreme Court of the United States, Care of the Building and Grounds appropriation totals $11,640,000 and 50 FTE. This represents an increase of $482,000 from the fiscal year 2014 enacted appropriation of $11,158,000.

**Adjustments to base to maintain current services** include an increase of $104,000 for proposed 2015 pay adjustments, within grade increases for staff paid under the general and wage board schedules, and health benefits; $65,000 for general inflationary increases; and a decrease of $3.0 million for non-recurring requirements.

**Program increases** totaling $3,313,000 are requested to fund the East Façade restoration of the building as well as the maintenance of recently installed electronic security systems. Justification for the program increases begins on page 1.25.

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

### A. Personnel and Programs

*1. Annualization of 2014 pay adjustment*

**Requested Increase: $7,000**

Federal pay rates increased by 1.0 percent in January 2014. The requested increase provides for the cost of three months (from October 2014 to December 2014) of the 2014 pay increase in fiscal year 2015.

*2. Proposed January 2015 pay adjustment*

**Requested Increase: $56,000**

As of January 2014, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.0 percent beginning on or after January 1, 2015. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2015 (from January 2015 to September 2015)

*3. Within-grade increases*

**Requested Increase: $31,000**

The requested increase includes $31,000 for within-grade increases and other adjustments, such as career ladder pay increases for support personnel. Increases for within-grades are

authorized by 5 U.S.C.5102 (c)(7), 5102(d), 5341-5349 for wage board employees and by 5 U.S.C.5331-5336 for general schedule employees.

*4. Health benefits increase*

**Requested Increase: $10,000**

Based on the information from the Office of Personnel Management, health benefit premium contributions are projected to increase by an average of 3.7 percent in January 2014. The requested increase annualizes the 2014 premium increase, and includes a nine-month provision for an estimated 4.0 percent increase anticipated for fiscal year 2015.

### B. Other Adjustments

*5. General inflationary increases*

**Requested Increase: $65,000**

Consistent with guidance from the Office of Management and Budget, this request of $65,000 is required to fund inflationary increases of 1.7 percent for operating expenses such as travel, communications, printing, contractual services, supplies and materials, and furniture and equipment.

1.24

### 6. *Reduction for non-recurring requirements*

**Requested Decrease: ($3,000,000)**

The requested decrease $3,000,000 is for non-recurring requirements funded in fiscal year 2014.

### C. Program Increases

### 7. *East Facade Restoration*

**Requested Increase: $2,500,000**

The requested increase of $2,500,000 provides funding for the maintenance and preservation of the east exterior facade of the Supreme Court Building. Maintenance and preservation of the exterior facades is now required as a significant amount of stone cracking and deterioration, mortar joint failure, moisture infiltration, and staining has occurred. This also represents a life safety hazard to building occupants and the public.

This project involves completing a survey of the east exterior facade and cleaning, repairing, and repointing stone facades where necessary, as well as removing and replacing existing sealant and refinishing exterior bronze surfaces.

### 8. *Electronic Systems Maintenance*

**Requested Increase: $813,000**

The requested increase of $813,000 provides funding for the maintenance costs resulting from the upgrades to building and perimeter security. The building and perimeter security upgrade project was recently completed, which significantly increased the number of electronic components and network systems that will require on-going maintenance.

1.25

# The Judiciary

# Fiscal Year 2015

# Congressional Budget Justification



# TABLE OF CONTENTS

|  | Page Number |
| --- | --- |
| Overview of The Judiciary | Overview - 1 |
| **Summary of Budgetary Requirements for Fiscal Year 2015** | |
| Summary of Fiscal Year 2015 Request | Summary - 1 |
| Summary of Appropriation Request for Fiscal Year 2015 | Summary - 3 |
| Summary of Mandatory Costs | Summary - 4 |
| Summary of Personnel | Summary - 5 |
| Fiscal Year 2015 Summary of Requested Changes | Summary - 6 |
| Comparative Summary of Obligations by Object Classification | Summary - 7 |
| Fiscal Year 2013 Summary | Summary - 8 |
| Fiscal Year 2014 Summary | Summary - 9 |
| Fiscal Year 2015 Summary | Summary - 10 |
| Outlay Table | Summary - 11 |
| **Supreme Court** | |
| Summary Statement | 1.1 |
| Salaries and Expenses | 1.2 |
| Care of the Building and Grounds | 1.19 |
| **United States Court of Appeals for the Federal Circuit** | 2.1 |
| **United States Court of International Trade** | 3.1 |
| | i |

**Courts of Appeals, District Courts, and Other Judicial Services**
Overview ............................................................. 4.1
Salaries and Expenses ............................................. 5.1
   Appendix 1 - Court Support Staffing ........................ Appendix - 1
Defender Services ................................................. 6.1
Fees of Jurors and Commissioners ............................... 7.1
Court Security .................................................... 8.1

**Administrative Office of the U.S. Courts** .................... 9.1

**Federal Judicial Center** ..................................... 10.1

**Payment to Judiciary Trust Funds** ........................... 11.1

**United States Sentencing Commission** ........................ 12.1

**Judiciary Information Technology Fund** ....................... 13.1
   Appendix 2 - Electronic Public Access Program ............. Appendix - 2

**General Provisions** .......................................... 14.1

iii

324

# Overview of The Judiciary

The organization of the judiciary, the district and circuit boundaries, the places of holding court, and the number of federal judges are established by laws passed by Congress and signed by the President. The number of federal judges in each district and in the courts of appeals is authorized by Congress on the basis of workload.

In addition to the adjudication of cases, other related functions, such as the provision of criminal defense services and the supervision of offenders, are prescribed by statute. The following sections provide a brief overview of the work of the courts and other related activities of the Judicial Branch.

### United States Supreme Court

The United States Supreme Court consists of nine justices, one of whom is appointed as Chief Justice of the United States. The Supreme Court is the final arbiter in the federal court system.

### United States Courts of Appeals

There are 13 courts of appeals and 179 authorized appellate court judgeships nationwide. Twelve of the courts of appeals have jurisdiction over cases within a regional area or "circuit." The twelve regional courts of appeals review cases from the United States district courts and the United States Tax Court, and orders and decisions from a number of federal administrative agencies.

**The United States Court of Appeals for the Federal Circuit** has exclusive national jurisdiction over a large number of diverse subject areas, including international trade, government contracts, patents, trademarks, certain money claims against the United



The Federal Judiciary

United States Supreme Court

U.S. Courts of Appeals
12 Regional Circuit Courts of Appeals
1 U.S. Court of Appeals for the Federal Circuit

Trial Courts
U.S. District Courts
U.S. Bankruptcy Courts
U.S. Court of International Trade
U.S. Court of Federal Claims

Other Judiciary Entities/Programs
Probation and Pretrial Services
Defender Services
Court Security
Fees of Jurors and Commissioners
Administrative Office of the U.S. Courts
Federal Judicial Center
Judiciary Trust Funds
United States Sentencing Commission

States government, federal personnel, and veterans' benefits. Appeals to the court come from all 94 federal district courts, as well as the United States Court of Federal Claims, the United States Court of International Trade, and the United States Court of Appeals for Veterans Claims.

**United States District Courts**

There are 94 district courts in the 50 states, the District of Columbia, the Commonwealth of Puerto Rico, and the territories of Guam, the U.S. Virgin Islands and the Northern Mariana Islands. The U.S. District Courts are the courts of general jurisdiction in the federal court system, and most federal cases are initially tried and decided in these courts. There are 678 authorized Article III district court judgeships nationwide.

The Federal Magistrates Act of 1968 created the office of magistrate judge to assist the district court judges. Magistrate judges are non-Article III judges appointed by the district judges, and they serve for a term of years rather than a lifetime appointment. Full-time magistrate judges serve a term of eight years and may be reappointed.

**United States Bankruptcy Courts**

The bankruptcy courts are separate units of the district courts. Federal courts have exclusive jurisdiction over bankruptcy cases. This means that a bankruptcy case cannot be filed in a state court. United States bankruptcy judges are non-Article III judges appointed by the courts of appeals for a term of years rather than a lifetime appointment. They serve for a term of 14 years and may be reappointed.

**United States Court of International Trade**

The Court of International Trade, with nine Article III judges, has exclusive nationwide jurisdiction of civil actions against the United States, its agencies and officers, and certain civil actions brought by the United States, arising out of import transactions and the administration and enforcement of the federal customs and international trade laws.

**United States Court of Federal Claims**

The Court of Federal Claims has nationwide jurisdiction over certain types of claims against the federal government. Its 16 judges are appointed for a term of 15 years by the President with the advice and consent of the Senate. Judges appointed to the Court of Federal Claims are authorized under Article I of the constitution and do not have the tenure and salary protections of Article III judges.

**Probation and Pretrial Services**

Federal probation and pretrial services officers protect the public through the investigation and supervision of defendants and offenders within the federal criminal justice system. A pretrial services officer supervises defendants awaiting trial who are released into our communities and provides a source of information upon which the court can determine conditions of release or detention while criminal cases are pending adjudication. In support of sentencing determinations, which require both uniformity of practice and attention to individual circumstances, probation officers provide the court with reliable information concerning the offender, the victim, and the offense committed, as well as an impartial application of the sentencing guidelines.

Probation officers supervise offenders sentenced to probation as well as offenders coming out of federal prison who are required to serve a term of supervised release.

**Defender Services**

The federal judiciary oversees and administers the federal defender and appointed counsel program, which provides legal representation and other services to persons financially unable to obtain counsel in criminal and related matters in federal court. The Sixth Amendment to the Constitution guarantees that "[i]n all criminal prosecutions the accused shall enjoy the right...to have the assistance of counsel for his defense." The Criminal Justice Act provides that courts shall appoint counsel from federal public and community defender organizations or from a panel of private attorneys ("panel attorneys") established by the court.

**Court Security**

The judiciary's Court Security appropriation funds protective guard services and security systems and equipment for United States courthouses and other facilities housing federal court operations. These services are contracted for and managed by the United States Marshals Service, with additional guard services provided by the Federal Protective Service.

**Fees of Jurors and Commissioners**

The judiciary receives funding to provide for the statutory fees and allowances of federal grand and petit jurors and for the compensation of land commissioners.

**Administrative Office of the U.S. Courts**

The Administrative Office of the U.S. Courts is the central support entity for the judicial branch. It has management oversight of the court security program, the probation and pretrial services program, and the defender services program. It supports the Judicial Conference of the United States in determining judiciary policies; develops new methods, systems, and programs for conducting the business of the federal courts efficiently and economically; develops and supports the application of technology; collects and analyzes statistics on the business of the federal courts for accurate planning and decisions about resource needs; provides financial management services and personnel and payroll support; and conducts audits and reviews to ensure the continued quality and integrity of federal court operations.

**Federal Judicial Center**

The Federal Judicial Center is the judiciary's research and education agency. The Center undertakes research and evaluation of judicial operations and procedures for both the committees of the Judicial Conference and the courts themselves. It provides judges, court personnel, and others orientation, continuing education and training through seminars; curriculum units for in-court use; monographs and manuals; and audio, video, and interactive media programs.

327

**Payment to Judiciary Trust Funds**

This appropriation finances annuity payments to retired bankruptcy judges and magistrate judges, U.S. Court of Federal Claims judges, and spouses and dependent children of deceased judicial officers.

**United States Sentencing Commission**

The U.S. Sentencing Commission promulgates sentencing policies, practices, and guidelines for the federal criminal justice system. The Chair, three Vice Chairs, and three other voting commissioners are appointed by the President with the advice and consent of the Senate.

4

## Budget Summary – Details of Request

The judiciary's appropriation request for fiscal year 2015 totals $7,301,243,000 (includes discretionary and mandatory), an increase of $262,367,000, or 3.7 percent over the fiscal year 2014 enacted appropriations. Of that increase, $219,512,000 is for discretionary appropriations (3.4 percent increase) and $42,855,000 is for mandatory appropriations.

*Adjustments to Base (Discretionary Appropriations)*

A total of $216.2 million (98.5 percent) of the $219.5 million discretionary increase requested will provide for pay adjustments, inflation and other adjustments to base necessary to maintain current services.

Base adjustments include:

1. An increase of $97.1 million (44.9 percent of the base adjustments) will provide for inflationary pay and benefit rate increases for Magistrate and Claims judges, judges' staff, and supporting personnel. This includes the annualization of the fiscal year 2014 pay adjustments, expected January 2015 pay adjustments (e.g., 1.0% ECI adjustment for federal workers), changes in benefit costs, cost-of-living rate increases for panel attorneys, and a wage rate adjustment for court security officers.

2. An increase of $62.6 million (29.0 percent of base adjustments) is necessary to replace non-appropriated sources of funds used to support base requirements in fiscal year 2014 with direct appropriations. The judiciary will keep the Appropriations Subcommittees informed of any change in this estimate.

3. An increase of $26.7 million (12.3 percent of base adjustments) is associated with an additional 120 senior judges' staff, and an additional 91 Article III judges' staff.

4. An increase of $22.8 million (10.5 percent of base adjustments) will provide for increases in contract rates and other standard inflationary increases.

5. An increase of $10.0 million (4.6 percent of base adjustments) is requested for the new Integrated Workplace Initiative that would be used to pay for up-front costs incurred by local courts to reconfigure existing space into a smaller space footprint.

6. An increase of $3.0 million (1.4 percent of base adjustments) will provide for estimated increases in Federal Protective Service (FPS) security charges, based on rates established by FPS.

7. An increase of $2.9 million (1.3 percent of base requirements) is associated with the Second Chance Act requirements.

8. An increase of $1.2 million (0.6 percent of base adjustments) will provide for 10 additional court security officers for space being delivered in fiscal year 2015.

9. An increase of $1.0 million (0.5 percent of base requirements) is associated with information technology requirements for the Supreme Court's technology fund and the Administrative Office.

10. An increase of $0.9 million (0.4 percent of base requirements) will provide for the annualization of positions funded in fiscal year 2014 for Defenders Services, Federal Judicial Center, and U.S. Sentencing Commission.

11. An increase of $0.8 million (0.4 percent of base adjustments) is associated with security systems and equipment requirements.

12. An increase of $0.1 million (0.04 percent of base adjustments) is associated with a projected net change in available jurors.

13. Netting to zero are adjustments for the annualization of new space delivered in fiscal year 2014, the cost of new space expected to be delivered in fiscal year 2015, and space related inflation offset by lower General Services Administration space rental base charges and anticipated savings from the footprint reduction effort.

14. A decrease of $7.3 million (-3.4 percent of base adjustments) is associated with non-recurring costs for new judges in fiscal year 2014.

15. A decrease of $5.2 million (-2.4 percent of base adjustments) is associated with non-recurring requirements for the Care of the Building and Grounds account for the Supreme Court (-$3.0 million), the Court of International Trade (-$0.2 million), and the Administrative Office (-$2.0 million).

16. A decrease of $0.4 million (-0.2 percent of base adjustments) is associated with anticipated savings in panel attorney requirements for Defender Services as a result of the addition of four new case-budgeting attorney positions in fiscal year 2014.

**Program Increases (Discretionary Appropriations)**

The remaining $3.3 million (1.5 percent) of the requested increase is for program enhancements.

Program increases include:

17. An increase of $2.5 million (75.5 percent of program enhancements) will provide for the facade restoration at the Supreme Court.

18. An increase of $0.8 million (24.5 percent of program enhancements) will provide for the electronic systems maintenance of the recently completed building and perimeter security upgrade at the Supreme Court.

*Mandatory Appropriations*

A $42.9 million increase is requested for mandatory Judiciary appropriations, as follows:

19. An increase of $14.2 million is for pay adjustments for mandatory judges salaries for the Supreme Court, Federal Circuit, International Trade, and Courts' S&E, including annualization of fiscal year 2014 pay adjustments, expected January 2015 pay adjustments (e.g., 1.0 percent ECI adjustment for federal workers), and changes in benefits costs.

20. An increase of $12.0 million is associated with an additional 36 senior judges and an additional 18 active Article III judges.

21. An increase of $16.7 million is required for the Judiciary retirement trust funds accounts based on requirements calculated by an independent actuary.

The Judiciary
Summary of Appropriation Request for Fiscal Year 2015 ($000)

| | FY 2013 Enacted 1/ | | | FY 2014 Enacted 2/ | | | Change | | | FY 2015 Request | Total | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Mand. 2/ | Direct | Total Available | Mand. 3/ | Direct | Total Available | Mand. | Direct | Total | Mand. | Direct | Total Request |
| **Supreme Court** | | | | | | | | | | | | |
| Salaries and Expenses | 2,207 | 68,823 | 71,030 | 2,442 | 72,625 | 75,067 | | 2,342 | 2,342 | 2,517 | 74,967 | 77,484 |
| Building and Grounds | | 7,732 | 7,732 | | 11,158 | 11,158 | | 482 | 482 | | 11,640 | 11,640 |
| Total, Supreme Court | 2,207 | 76,555 | 78,762 | 2,442 | 83,783 | 86,225 | | 2,824 | 2,824 | 2,517 | 86,607 | 89,124 |
| Court of Appeals for the Federal Circuit | 2,524 | 28,429 | 30,953 | 2,798 | 29,600 | 32,398 | 95 | 612 | 707 | 2,893 | 30,212 | 33,105 |
| Court of International Trade | 1,715 | 18,697 | 20,412 | 1,916 | 19,200 | 21,116 | 65 | (1,193) | (1,128) | 1,981 | 17,807 | 19,788 |
| **Courts of Appeals, District Courts and Other Judicial Services** | | | | | | | | | | | | |
| Salaries and Expenses - Direct | 334,722 | 4,442,119 | 4,776,841 | 388,664 | 4,658,830 | 5,047,494 | 25,941 | 168,758 | 194,699 | 414,605 | 4,833,011 | 5,242,193 |
| Vaccine Injury Fund | | 4,990 | 4,990 | | 5,337 | 5,337 | | 96 | 96 | | 5,423 | 5,423 |
| Total, Salaries and Expenses | 334,722 | 4,447,109 | 4,781,831 | 388,664 | 4,664,157 | 5,052,821 | 25,941 | 168,854 | 194,795 | 414,605 | 4,833,011 | 5,247,616 |
| Defender Services | | 986,655 | 986,655 | | 1,044,394 | 1,044,394 | | 8,764 | 8,764 | | 1,053,158 | 1,053,158 |
| Fees of Jurors and Commissioners | | 49,193 | 49,193 | | 53,091 | 53,091 | | 1,936 | 1,936 | | 55,027 | 55,027 |
| Court Security | | 473,847 | 473,847 | | 497,500 | 497,500 | | 33,263 | 33,263 | | 530,763 | 530,763 |
| Subtotal (CA/DC/US) | 334,722 | 5,956,304 | 6,290,926 | 388,664 | 6,259,942 | 6,648,606 | 25,941 | 212,817 | 238,758 | 414,605 | 6,472,759 | 6,887,364 |
| Administrative Office of the U.S. Courts | | 78,572 | 78,572 | | 81,200 | 81,200 | | 3,199 | 3,199 | | 84,399 | 84,399 |
| Federal Judicial Center | | 25,588 | 25,588 | | 26,200 | 26,200 | | 759 | 759 | | 26,959 | 26,959 |
| Payment to Judicial Retirement Funds | 125,464 | | 125,464 | 126,931 | | 126,931 | 16,669 | | 16,669 | 143,600 | | 143,600 |
| **Sentencing Commission** | | | | | | | | | | | | |
| Direct | | 15,637 | 15,637 | | 16,200 | 16,300 | | 694 | 694 | | 16,894 | 16,894 |
| Vaccine Injury Fund | | 4,990 | 4,990 | | 5,337 | 5,337 | | 96 | 96 | | 5,423 | 5,423 |
| Total | | | | | | | | | | | | |
| **Direct** | 466,632 | 6,194,692 | 6,661,324 | 522,751 | 6,510,798 | 7,033,549 | 42,855 | 219,416 | 262,271 | 565,606 | 6,730,214 | 7,295,820 |
| Vaccine Injury Fund | | 4,990 | 4,990 | | 5,337 | 5,337 | | 96 | 96 | | 5,423 | 5,423 |
| Total | 466,632 | 6,199,682 | 6,666,314 | 522,751 | 6,516,125 | 7,038,876 | 42,855 | 219,512 | 262,367 | 565,606 | 6,735,637 | 7,301,243 |

1/ For FY 2013, the enacted mandatory level was $446,632; actual mandatory spending was $440,275.
2/ For FY 2014, the requested mandatory level was $486,465; projected mandatory spending is $522,751.

Summary - 3

331

The Judiciary
Summary of Mandatory Costs

| | FY 2013 Actual [1] | | FY 2014 Estimate [2] | | FY 2015 | | | | | |
| | | | | | Change | | Request | |
| | Authorized Positions | Amount ($000) | Authorized Positions | Amount ($000) | Authorized Positions | Amount ($000) | Authorized Positions | Amount ($000) |
|---|---|---|---|---|---|---|---|---|
| Supreme Court | 9 | 2,116 | 9 | 2,442 | - | 85 | 9 | 2,527 |
| Court of Appeals for the Federal Circuit | 12 | 2,524 | 12 | 2,798 | - | 95 | 12 | 2,893 |
| Court of International Trade | 9 | 1,449 | 9 | 1,916 | - | 65 | 9 | 1,981 |
| Courts of Appeals, District Courts and Other Judicial Services | 1,195 | 334,722 | 1,195 | 388,664 | - | 25,941 | 1,195 | 414,605 |
| Payment to Judiciary Trust Funds | - | 125,464 | - | 126,931 | - | 16,669 | - | 143,600 |
| **Total** | **1,225** | **466,275** | **1,225** | **522,751** | **-** | **42,855** | **1,225** | **565,606** |

1/ For FY 2013, the enacted mandatory level was $466,632; actual mandatory spending was $466,275.
2/ For FY 2014, the requested mandatory level was $486,465; projected mandatory spending is $522,751.

Summary - 4

## Summary of Personnel

| Full Time Equivalents by Account | FY 2013 Actual FTEs | FY 2014 Estimate FTEs | FY 2015 Request Increase FTEs | FY 2015 Request Total FTEs |
|---|---|---|---|---|
| *Direct Positions* | | | | |
| **Supreme Court** | | | | |
| Salaries and Expenses | 497 | 497 | | 497 |
| Building and Grounds | 39 | 50 | | 50 |
| Court of Appeals for the Fed. Circuit | 145 | 151 | | 151 |
| Court of International Trade | 67 | 80 | | 80 |
| Courts of Appeals, District Courts and | | | | |
| Other Judicial Services | | | | |
| Salaries and Expenses | 28,742 | 27,830 | 265 | 28,095 |
| Defender Services | 2,628 | 2,718 | 2 | 2,720 |
| Fees of Jurors and Commissioners | | | | |
| Court Security | 65 | 72 | | 72 |
| *Subtotal* | *31,435* | *30,620* | *267* | *30,887* |
| Administrative Office of the U.S. Courts | 605 | 621 | | 621 |
| Reimbursable From: | | | | |
| *Salaries and Expenses* | *432* | *432* | | *432* |
| *Defenders Services* | *27* | *27* | | *27* |
| *Court Security* | *7* | *7* | | *7* |
| Federal Judicial Center | 131 | 133 | 3 | 136 |
| Payment to Judicial Retirement Funds | | | | |
| Sentencing Commission | 88 | 93 | 3 | 96 |
| **Grand Total** | 33,008 | 32,711 | 273 | 32,984 |
| *Reimbursable Positions* | | | | |
| **Supreme Court** | | | | |
| Salaries and Expenses | | | | |
| Buildings and Grounds | | | | |
| Court of Appeals for the Fed. Circuit | | | | |
| Court of International Trade | | | | |
| Courts of Appeals, District Courts and | | | | |
| Other Judicial Services | | | | |
| Salaries and Expenses | 28 | 29 | | 29 |
| Defender Services | | | | |
| Fees of Jurors and Commissioners | | | | |
| Court Security | | | | |
| *Subtotal* | *28* | | | |
| Administrative Office of the U.S. Courts | 248 | 29 | | 29 |
| Federal Judicial Center | 1 | | | |
| Payment to Judicial Retirement Funds | | | | |
| Sentencing Commission | | | | |
| Violent Crime Reduction Trust Fund | | | | |
| **Grand Total** | 277 | 29 | | 29 |

FY 2015 Summary of Requested Changes

COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES

| | Supreme Court | | Federal Circuit | | International Trade | | Salaries and Expenses | | Defender Services | | Fees of Jurors and Commissioners | Court Security | | Subtotal | | Administrative Office | | Fed. Judicial Center | | Judiciary Trust Funds | Sentencing Commission | | Total Judiciary | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | FTE | ($000) | FTE | ($000) | FTE | ($000) | FTE | ($000) | FTE | ($000) | ($000) | FTE | ($000) | FTEs | ($000) | FTEs | ($000) | FTE | ($000) | ($000) | FTE | ($000) | FTE | ($000) |
| FY 2014 Enacted Appropriation Level | 547 | 86,235 | 151 | 32,378 | 80 | 21,116 | 27,930 | 5,047,994 | 3,716 | 1,041,994 | 53,891 | 72 | 497,500 | 36,629 | 6,648,606 | 621 | 81,204 | 131 | 26,290 | 125,911 | 93 | 16,290 | 37,741 | 7,630,976 |
| FY 2014 Vaccine Injury Trust Fund | | | | | | | | | | 5,327 | | | | | n.a.,527 | | 466 | | | | | | | 5,327 |
| Reimbursable FTE | | | | | | | | | | | | | | | | | | | | 16,440 | | | | 16,440 |
| FY 2014 Available Appropriations | 547 | 86,235 | 151 | 32,378 | 80 | 21,116 | 27,930 | 5,052,421 | 3,716 | 1,044,394 | 53,891 | 72 | 497,500 | 36,629 | 6,654,533 | 1,087 | 81,200 | 133 | 26,290 | 125,911 | 93 | 16,290 | 37,741 | 7,630,976 |
| **FY 2015 Adjustments to Base** | | | | | | | | | | | | | | | | | | | | | | | | |
| **Judges** | | | | | | | | | | | | | | | | | | | | | | | | |
| Pay and benefit cost adjustments | 85 | | 93 | | | | 195 | 18,730 | | | | | | 18,730 | | 1,841 | | 398 | | | 156 | | 18,961 | |
| Additional senior judges | | | | | | | | 22,463 | | | | | | 22,463 | | | | 221 | | | 298 | | 22,463 | |
| Increase in average replacement of filled Article III judgeships | | | | 16 | | | | 14,193 | | | | | | 14,193 | | 2,779 | | | | | | | 16,193 | |
| Non-recurring costs of new FY 2014 judges | | | 166 | | | (1,176) | | (7,349) | | | | | | (7,349) | | 63 | | 118 | | | 109 | | (7,349) | |
| Payments to judiciary retirement trust funds | | | | | | | | | | | | | | | | | | | | 16,440 | | | 16,440 | |
| **Court Personnel** | | | | | | | | | | | | | | | | | | | | | | | | |
| Pay and benefit cost adjustments | 1,504 | | 306 | | | 195 | | 62,088 | | 12,441 | | 195 | | 71,162 | | | | 396 | | | 517 | | 79,664 | |
| Annualization of positions funded in fiscal year 2014 | | | | | | | | 405 | | 405 | | | | 405 | | 465 | | 221 | | | 298 | | 926 | |
| **Other Changes** | | | | | | | | | | | | | | | | | | | | | | | | |
| Funding necessary to maintain current services | 437 | | 36 | | 83 | | | 50,991 | | 17,372 | 1,324 | | 13,864 | | 99,481 | | 2,779 | | | | | 79 | 42,706 | |
| Inflation (non-space related) | | | | | | | | 18,763 | | 2,443 | 535 | | 115 | | 21,821 | | 63 | | 118 | | | | 22,703 | |
| Vaccine Injury Trust Fund adjustment | | | | | 96 | | | 96 | | | | | | | | | 96 | | | | | | 96 | |
| Space related costs (includes inflation for space rental costs) | | | | | | | | 10,000 | | 1,210 | | | 131 | | 1,322 | | | | | | | | 15 | |
| Integrated Workplace Initiative | | | | | | | | 10,000 | | | | | | 10,000 | | | | | | | | | 16,000 | |
| Changes in available space | | | | 9 | | | | 87 | | | | | | 87 | | | | | | | | | 87 | |
| FFS security service charges | | | | | | | | | | | | 1,034 | | 3,034 | | | | | | | | | 3,034 | |
| FY 2015 court security officer wage adjustments | | | | | | | | | | | | 12,914 | | 12,914 | | | | | | | | | 12,914 | |
| Additional court security officers in FY 2015 (159) | | | | | | | | | | | | 1,171 | | 1,171 | | | | | | | | | 1,171 | |
| Adjustments to base for security systems and equipment | (3,000) | | | | | | | | | | | 815 | | 815 | | 415 | | | | | | | 812 | |
| Adjustments to base (non-recurring requirements) | | | | | (260) | | | | | (403) | | | | | (403) | | (480) | | | | | | (1,846) | |
| Savings related to cost-budgeting positions | | | | | | | | | | | | | | | | 490 | | | | | | | 1,664 | |
| Second Chance Act requirements | 500 | | | | | | | 2,844 | | | | | | 2,844 | | | | | | | | | 709 | |
| **Subtotal, FY 2015 Adjustments to Base** | (484) | | 797 | | (1,320) | | 265 | 194,795 | 2 | 8,764 | 1,536 | | 33,363 | | 220,758 | | 3,199 | | 799 | | 694 | | 250,094 | |
| **FY 2015 Adjusted Base** | 547 | 85,831 | 151 | 33,085 | 80 | 19,788 | 28,095 | 5,217,616 | 2,720 | 1,053,158 | 55,427 | | 530,763 | 36,807 | 6,867,364 | 1,087 | 84,299 | 136 | 26,959 | 143,600 | 96 | 16,894 | 37,982 | 7,297,530 |
| **FY 2015 Program Increases** | | | | | | | | | | | | | | | | | | | | | | | | |
| Funds Restoration | 2,500 | | | | | | | 25,941 | | | | | | 25,941 | | | | | | | | | 2,946 | |
| Increases in systems maintenance | 813 | | | | | | | | | | | | | | | | | | | | | | 813 | |
| **Subtotal, FY 2015 Program Increases** | 3,313 | | | | | | | | | | | | | | | | | | | | | | 3,313 | |
| **Total Mandatory Increase** | 85 | | 99 | | 44 | | 54 | 25,941 | | | | | 33,263 | | | 54 | | 3 | | 16,440 | 54 | | 42,855 | |
| **Total Discretionary Increase** | 2,824 | | 462 | | (1,138) | | 211 | 169,834 | 2 | 8,764 | 1,936 | | 33,263 | 313 | 212,817 | | 3,199 | 3 | 390 | | 210 | | 210,512 | |
| **Total Increase Requested, FY 2015** | 2,909 | | 797 | | (1,336) | | 265 | 194,795 | | 8,764 | 1,936 | | 33,263 | 267 | 238,758 | | 3,199 | | 799 | | 694 | | 252,367 | |
| **Total Mandatory** | 9 | 2,537 | 13 | 2,893 | 9 | 1,981 | 1,643 | 416,665 | | | | | 116,665 | 1,843 | 446,674 | | 84,299 | | 26,959 | | | | 565,046 | |
| **Total Discretionary** | 538 | 86,607 | 129 | 30,212 | 71 | 17,807 | 26,316 | 4,832,491 | 2,720 | 1,053,158 | 55,427 | | 6,472,759 | 29,204 | 6,472,759 | 1,087 | 84,299 | 466 | 26,959 | 143,600 | 96 | 16,894 | 33,108 | 6,732,484 |
| **FY 2015 Appropriation Request** | 547 | 89,134 | 151 | 33,105 | 80 | 19,788 | 28,095 | 5,217,616 | 2,720 | 1,053,158 | 55,427 | 72 | 530,763 | 31,887 | 6,887,364 | 1,087 | 84,299 | 621 | 26,959 | 143,600 | 96 | 16,894 | 37,519 | 7,301,733 |
| Reimbursable FTE | | | | | | | | | | | | | | | | | | | | | | 466 | | |

## THE JUDICIARY

### COMPARATIVE SUMMARY OF OBLIGATIONS BY OBJECT CLASSIFICATION
(IN THOUSANDS OF DOLLARS)

| Object Classification | FY 2013 Actual | FY 2014 Estimate | FY 2015 Request |
|---|---|---|---|
| **Personnel Services and benefits** | | | |
| 11   Personnel compensation | 3,029,107 | 3,289,152 | 3,359,861 |
| 12   Personnel benefits | 939,189 | 966,995 | 970,326 |
| 13   Benefits for former personnel | 23,875 | 28,572 | 29,243 |
| Total personnel services and benefits | 3,992,171 | 4,284,719 | 4,359,430 |
| **Contractual services and supplies** | | | |
| 21   Travel | 77,050 | 84,438 | 86,360 |
| 22   Transportation of things | 5,832 | 6,753 | 6,932 |
| 23   Rental payments to GSA | 1,100,104 | 1,128,004 | 1,120,301 |
| 23   Rental payments to others | 32,708 | 38,197 | 34,078 |
| 23   Communications utilities & misc. charges | 141,196 | 157,158 | 162,136 |
| 24   Printing and reproduction | 6,829 | 7,893 | 8,067 |
| 25   Other services | 1,325,607 | 1,480,991 | 1,530,961 |
| 26   Supplies and materials | 22,219 | 26,359 | 26,872 |
| Total contractual services and supplies | 2,711,545 | 2,929,692 | 2,975,707 |
| **Acquisition of capital assets** | | | |
| 31   Equipment | 96,896 | 165,150 | 168,389 |
| 32   Lands and Structures | 2,253 | 3,093 | 3,086 |
| Total acquisition of capital assets | 99,149 | 168,243 | 171,475 |
| **Grants and fixed charges** | | | |
| 41   Grants, subsidies and contributions | 125,263 | 136,114 | 138,664 |
| 42   Insurance claims and indemnities | 143 | | |
| 43   Interest and dividends | | | |
| Total grants and fixed charges | 125,406 | 136,114 | 138,664 |
| 91   Undefined Disbursement | 3,116 | 81 | 81 |
| **Total obligations** | **6,931,386** | **7,518,849** | **7,644,357** |
| Unobligated balance, start-of-year | (253,492) | (273,224) | (117,472) |
| Unobligated balance, end-of-year | 273,224 | 117,472 | 9,854 |
| Unobligated balance, expiring | 3,718 | | |
| Recision | | | |
| Sequester | | | |
| Current Year Offsetting Collections | (243,819) | (327,710) | (223,990) |
| Transfer | 500 | | |
| Information Technology Fund | (3,956) | (5,146) | (3,505) |
| Prior Year Recoveries | (41,240) | 8,635 | |
| **Appropriation, Enacted** | **6,666,314** | **7,038,876** | **7,301,243** |

Detailed tables by fiscal year and appropriation follow

THE JUDICIARY
COMPARATIVE SUMMARY OF OBLIGATIONS BY OBJECT CLASSIFICATION (§1000)
Fiscal Year 2013

| Object Classification | Supreme Court | Ct of Appeals Federal Cir | Ct of Intl Trade | Salaries and Expenses | Defender Services | Fees of Jurors | Court Security | Administrative Office | | Federal Judicial Ctr | Judiciary Trust Funds | Sentencing Commission | Vaccine Injury Trust Fund Supplemental | Total Judiciary |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Direct Program[1] | Reimbursable Program[1] | | | | | |
| **Personnel Services and benefits** | | | | | | | | | | | | | | |
| 11 Personnel compensation | 43,979 | 14,719 | 6,316 | 2,559,087 | 278,285 | 25,309 | 7,048 | 104,340 | (32,704) | 13,467 | | 8,941 | | 2,929,107 |
| 12 Personnel benefits | 14,171 | 3,314 | 1,367 | 804,851 | 86,131 | 1 | 2,135 | 28,971 | (8,008) | 4,002 | | 2,736 | | 939,169 |
| 13 Benefits for former personnel | 43 | 43 | | 21,082 | 2,332 | | 441 | 129 | | | 142 | | | 25,875 |
| Total personnel services and benefits | 58,150 | 18,076 | 8,505 | 3,385,022 | 366,748 | 25,310 | 9,183 | 133,716 | (41,701) | 17,469 | | 11,691 | | 3,902,971 |
| **Contractual services and supplies** | | | | | | | | | | | | | | |
| 21 Travel | 514 | 69 | 110 | 37,442 | 6,696 | 25,884 | 259 | 399 | (83) | 5,113 | | 487 | | 77,090 |
| 22 Transportation of things | 60 | 50 | 8 | 5,366 | 218 | | 42 | 50 | | 29 | | 9 | | 5,852 |
| 23 Rental payments to GSA | | 6,902 | 9,694 | 1,017,727 | 39,630 | | 6,451 | | | | | | | 1,080,904 |
| 23 Rental payments to others | | | | 32,302 | 406 | | | 445 | (80) | 170 | | 62 | | 12,766 |
| 23 Communication utilities & misc. charges | 2,960 | 251 | 91 | 128,048 | 5,481 | 1,711 | 1,011 | 1,442 | (1,570) | 57 | | 121 | | 141,996 |
| 24 Printing and reproduction | 101 | 121 | 15 | 6,009 | 76 | | | | | 1,131 | | 1,979 | | 6,757 |
| 25 Other services | 11,392 | 3,110 | 1,971 | 297,947 | 438,579 | 619 | 441,586 | | (1,570) | 1,131 | | 1,979 | | 1,255,607 |
| 26 Supplies and materials | 2,524 | 227 | 15 | 15,245 | 1,484 | 1,093 | 696 | 508 | (658) | 645 | | 80 | | 22,210 |
| Total contractual services and supplies | 17,757 | 10,739 | 11,828 | 1,560,986 | 492,512 | 29,329 | 449,735 | 4,927 | (1,807) | 7,317 | 125,464 | 2,635 | | 2,311,543 |
| **Acquisition of capital assets** | | | | | | | | | | | | | | |
| 31 Equipment | 3,818 | 825 | 165 | 69,311 | 7,448 | | 12,664 | 1,182 | (61) | 714 | | 1,291 | | 96,596 |
| 32 Lands and Structures | 2,253 | | | | | | | | | | | | | 2,253 |
| Total acquisition of capital assets | 6,071 | 825 | 165 | 69,311 | 7,448 | | 12,664 | 1,182 | (61) | 714 | | 1,291 | | 99,149 |
| **Grants and fixed charges** | | | | | | | | | | | | | | |
| 41 Grants, subsidies and contributions | | | | | 125,261 | | 141 | | | | | | | 125,264 |
| 42 Insurance claims and indemnities | | | | | | | | | | 141 | | | | 141 |
| 43 Interest and dividends | | | | | | | 143 | | | | | | | 125,406 |
| Total grants and fixed charges | | | | | 125,261 | | 143 | | | 125 | 125,464 | | | 125,406 |
| 91 Undefined Disbursements[2] | 1,492 | | 400 | | | | 899 | | | 125 | | | | 5,116 |
| **FY 2013 Total Obligations** | 81,976 | 31,032 | 20,998 | 5,015,519 | 991,968 | 54,639 | 471,865 | 140,724 | (43,569) | 29,845 | 125,464 | 16,624 | | 6,811,406 |
| Unobligated balance, start-of-year | (13,660) | (2,678) | (1,277) | (209,894) | (17,157) | (1,270) | (6,644) | | | (962) | | | | (251,492) |
| Unobligated balance, end-of-year | 10,364 | 3,347 | 1,080 | 215,050 | 17,828 | 1,324 | 23,503 | | | 928 | | | | 273,224 |
| Unobligated balance, expiring | 80 | 44 | 46 | | | | 3,601 | (17,810) | | 47 | | | | 3,718 |
| Current Year Offsetting Collections | | (44) | | (225,888) | | | (18,408) | | | | | | | (243,870) |
| Prior Year Recoveries | | | (485) | (16,646) | (6,384) | | (11,070) | (953) | | (257) | | | | (41,246) |
| Information Technology Fund | (11,448) | | | | | | | | | | | | | (5,984) |
| Vaccine Injury Compensation Trust Fund | | | | | | | | | | | | | | |
| Transfer | | 500 | | (4,990) | | (1,500) | | (41,569) | | | | | | 500 |
| Reimbursable Program[2] | | | | 3,500 | | | | | 41,569 | | | | 4,990 | |
| FY 2013 Appropriations, Enacted | 78,762 | 30,953 | 20,412 | 4,776,841 | 986,055 | 49,193 | 473,847 | 78,572 | | 25,588 | 125,464 | 15,637 | 4,990 | 6,666,312 |
| Available Supplemental | | | | | | | | | | | | | | |
| FY 2013 Appropriations, Enacted | 78,762 | 30,953 | 20,412 | 4,776,841 | 986,055 | 49,193 | 473,847 | 78,572 | | 25,588 | 125,464 | 15,637 | 4,990 | 6,666,312 |

[1] More information on AO reimbursable program obligations is included in section 9.
[2] Deposited into the JTF fund.

THE JUDICIARY
COMPARATIVE SUMMARY OF OBLIGATIONS BY OBJECT CLASSIFICATION ($000)
Fiscal Year 2014

| Object Classification | Supreme Court | Cir of Appeals Federal Cts | Ct of Int'l Trade | Salaries and Expenses | Defender Services | Fees of Jurors | Court Security | Administrative Office Direct Program¹ | Reimbursable Program¹ | Federal Judicial Cr | Industry Trust Funds | Sequencing Commission | Vaccine Injury Trust Fund | Total Judiciary |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Personnel Services and benefits** | | | | | | | | | | | | | | |
| 11 Personnel compensation | 46,407 | 16,241 | 8,677 | 2,792,403 | 291,547 | 26,599 | 8,014 | 126,505 | (54,588) | 15,895 | | 9,622 | | 3,280,152 |
| 12 Personnel benefits | 15,496 | 3,600 | 2,241 | 823,581 | 91,817 | 1 | 2,257 | 37,638 | (16,696) | 4,206 | | 2,781 | | 966,993 |
| 13 Benefits for former personnel | 32 | 118 | - | 24,278 | 4,080 | | 119 | 119 | (55) | | | | | 28,572 |
| Total personnel services and benefits | 61,935 | 20,099 | 10,718 | 3,640,262 | 387,064 | 26,600 | 10,271 | 168,262 | (71,509) | 18,101 | | 12,406 | | 4,284,719 |
| **Commercial services and supplies** | | | | | | | | | | | | | | |
| 21 Travel | 496 | 55 | 150 | 41,824 | 9,248 | 23,802 | 45* | 1,372 | (723) | 5,380 | | 417 | | 84,438 |
| 22 Transportation of things | 65 | 53 | 10 | 6,169 | 270 | | 61 | 145 | (79) | 50 | | 9 | | 6,751 |
| 23 Rental payments to GSA | | | 6,915 | 1,065,475 | | | 6,510 | | | | | | | 1,128,661 |
| 23 Rental payments to others | - | - | - | 37,746 | 451 | | | | | | | | | 36,197 |
| 23 Communications utilities & misc. charges | 2,972 | 285 | 55 | 143,427 | 7,414 | 1,149 | 1,418 | 710 | (129) | 555 | | 53 | | 157,158 |
| 24 Printing and reproduction | 416 | 115 | 20 | 6,905 | 140 | | 259 | 259 | (176) | 71 | | 84 | | 7,893 |
| 25 Other services | 11,871 | 4,452 | 2,182 | 389,961 | 466,814 | 565 | 473,080 | 7,425 | (6,404) | 1,218 | 126,951 | 2,896 | | 1,080,991 |
| 26 Supplies and materials | 2,844 | 200 | 70 | 17,633 | 3,106 | 1,099 | 1,372 | 789 | (390) | 571 | | 11 | | 26,259 |
| Total commercial services and supplies | 18,664 | 12,115 | 10,756 | 1,790,198 | 537,188 | 28,615 | 182,528 | 10,680 | (8,110) | 7,648 | 126,951 | 3,479 | | 2,929,692 |
| **Acquisition of capital assets** | | | | | | | | | | | | | | |
| 31 Equipment | 3,697 | 886 | 185 | 123,384 | 11,256 | | 22,998 | 1,099 | (1,825) | 76* | | 1,243 | | 165,150 |
| 32 Lands and Structures | 1,095 | | | | | | | | | | | | | 1,095 |
| Total acquisition of capital assets | 6,790 | 886 | 185 | 123,384 | 11,256 | | 22,998 | 3,059 | 118,251 | 767 | | 1,243 | | 168,251 |
| **Grants and fixed charges** | | | | | | | | | | | | | | |
| 41 Grants, subsidies and contributions | | | | | 156,114 | | | | | | | | | 156,114 |
| 42 Insurance claims and indemnities | | | | | | | | | | | | | | |
| 43 Interest and dividends | | | | | | | | | | | | | | |
| Total grants and fixed charges | | | | | 156,114 | | | | | | | | | 156,114 |
| 91 Undistributed Disbursements² | | 49 | 32 | | | | | | | | | | | 81 |
| | | | | | | | | | | | | | | |
| FY 2014 Total Obligations | 87,389 | 33,059 | 21,691 | 5,472,344 | 1,062,022 | 55,215 | 515,597 | 182,001 | (81,244) | 26,716 | 126,931 | 17,128 | | 7,518,849 |
| Unobligated balance, start-of-year | (10,364) | (3,347) | (1,080) | (215,050) | (17,028) | (1,324) | (23,501) | | | | | (926) | | (275,224) |
| Unobligated balance, end-of-year | 9,200 | 2,755 | 577 | 80,000 | 25,000 | | | | | | | | | 117,472 |
| Unobligated balance, expired | | | | | | | | | | | | | | |
| Carryforward | | | (32) | (80,000) | (25,000) | | | (17,965) | | (191) | | | | (105,980) |
| Current Year Offsetting Collections | | | | (204,473) | | | | | | (325) | | | | (222,710) |
| Transfer | (49) | | | | | | | | | | | | | |
| Prior Year Recoveries | | | | | | | 8,635 | | (1,992) | | | | | 8,635 |
| Vaccine Injury Compensation Trust Fund | | | | (5,327) | | | (1,329) | | | | | | | (5,146) |
| Information Technology Fund | | | | | | | | (81,244) | 81,244 | | | | | |
| Information Technology Fund | | | | | | | | | | | | | | |
| Reimbursable Program² | | | | | | | | | | | | | | |
| **Rescissions** | | | | | | | | | | | | | 5,327 | 5,327 |
| FY 2014 Appropriation, Assumed | 86,225 | 32,398 | 21,116 | 5,047,494 | 1,044,394 | 53,891 | 497,500 | 81,200 | - | 26,200 | 126,931 | 16,200 | 5,327 | 7,030,876 |

¹ More information on AO reimbursable program obligations is included in section 9.
² Deposited into the JITF fund.

¹ Deposited into the JITF fund.

THE JUDICIARY
COMPARATIVE SUMMARY OF OBLIGATIONS BY OBJECT CLASSIFICATION ($000)

Fiscal Year 2015

| Object Classification | Supreme Court | Ct of Appeals Federal Ct. | Ct of Trust Funds | Salaries and Expenses | Defender Services | Fees of Jurors | Court Security | Direct Program [1] | Reimbursable Program [1] | Federal Judicial Ctr | Judiciary Trust Funds | Sentencing Commission | Vaccine Injury Trust Fund | Total Judiciary |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Personnel Services and benefits** | | | | | | | | | | | | | | |
| 11 Personnel compensation | 47,273 | 16,754 | 8,452 | 2,844,933 | 298,202 | 26,441 | 8,185 | 131,808 | (55,700) | 14,368 | | 10,145 | | 3,350,861 |
| 12 Personnel benefits | 16,298 | 3,695 | 2,342 | 825,012 | 93,021 | 1 | 2,375 | 37,511 | (17,059) | 4,354 | | 2,876 | | 970,326 |
| 13 Benefits for former personnel | 32 | 15 | | 25,872 | 3,300 | | | 24 | | | | | | 29,243 |
| Total personnel services and benefits | 63,603 | 20,464 | 10,794 | 3,695,817 | 394,523 | 26,442 | 10,460 | 169,343 | (72,759) | 18,722 | | 13,021 | | 4,350,430 |
| **Contractual services and supplies** | | | | | | | | | | | | | | |
| 21 Travel | 500 | 56 | 153 | 42,939 | 9,705 | 26,028 | 466 | 1,357 | (736) | 5,468 | | 424 | | 86,360 |
| 22 Transportation of things | 67 | 54 | 13 | 6,333 | 275 | | 62 | 148 | (80) | 51 | | 9 | | 6,932 |
| 23 Rental payments to GSA | | 7,081 | 6,793 | 1,038,244 | 41,722 | | 6,461 | | | | | | | 1,130,301 |
| 23 Rental payments to others | | | | 33,619 | 459 | | | | | | | | | 34,078 |
| 23 Communications utilities & misc. charges | 3,141 | 290 | 65 | 147,512 | 7,255 | 1,698 | 1,170 | 743 | (335) | 564 | | 33 | | 162,126 |
| 24 Printing and reproduction | 423 | 117 | 18 | 7,124 | 142 | | | 264 | (178) | 72 | | 85 | | 8,067 |
| 25 Other services | 13,179 | 4,386 | 2,314 | 400,361 | 471,823 | 584 | 490,318 | 7,281 | (6,513) | 1,112 | 143,600 | 2,616 | | 1,530,961 |
| 26 Supplies and materials | 2,910 | 233 | 90 | 18,103 | 2,142 | 1,075 | 1,296 | 803 | (406) | 584 | | 42 | | 26,872 |
| Total contractual services and supplies | 20,230 | 12,217 | 9,346 | 1,714,235 | 533,523 | 29,385 | 490,773 | 10,596 | (8,248) | 7,851 | 143,600 | 3,209 | | 2,975,707 |
| **Acquisition of capital assets** | | | | | | | | | | | | | | |
| 31 Equipment | 3,825 | 905 | 185 | 126,097 | 11,447 | | 24,036 | 2,509 | (1,856) | 577 | | 664 | | 168,380 |
| 32 Lands and Structures | 3,086 | | | | | | | | | | | | | 3,086 |
| Total acquisition of capital assets | 6,911 | 905 | 185 | 126,097 | 11,447 | | 24,036 | 2,509 | (1,856) | 577 | | 664 | | 171,475 |
| **Grants and fixed charges** | | | | | | | | | | | | | | |
| 41 Grants, subsidies and contributions | | | | | 138,664 | | | | | | | | | 138,664 |
| 42 Insurance claims and indemnities | | | | | | | | | | | | | | |
| 43 Interest and dividends | | | | | | | | | | | | | | |
| Total grants and fixed charges | | | | | 138,664 | | | | | | | | | 138,664 |
| 91 Undefined Disbursements [2] | | 49 | 32 | | | | | | | | | | | 81 |
| FY 2015 Total Obligations | 90,734 | 33,635 | 20,357 | 5,536,148 | 1,078,158 | 55,827 | 534,268 | 182,448 | (82,863) | 27,150 | 143,600 | 16,894 | | 7,636,357 |
| Unobligated balance, start-of-year | (9,200) | (2,735) | (537) | (80,000) | (25,000) | | | | | | | | | (117,472) |
| Unobligated balance, end-of-year | 7,600 | 2,354 | | | | | | | | | | | | 9,954 |
| Current Year Offsetting Collections | | (49) | (32) | (208,532) | | | | (15,186) | | (191) | | | | (223,990) |
| Information Technology Fund | | | | | | | (3,505) | | | | | | | (3,505) |
| Vaccine Injury Compensation Trust Fund | | | | | | | | | | | | | 5,423 | 5,423 |
| Reimbursable Program [1] | | | | (5,423) | | | | (82,863) | 82,863 | | | | | |
| FY 2015 Appropriation, Available | 89,134 | 33,106 | 10,788 | 5,242,193 | 1,053,158 | 55,827 | 530,763 | 84,399 | | 26,959 | 143,600 | 16,894 | 5,423 | 7,201,243 |

[1] More information on AO reimbursable program obligations is included in section 9

[2] Deposited into the JITF fund.

**THE JUDICIARY**

**Outlays - FY 2013 to FY 2015**
(Dollars in Thousands)

| Appropriation | FY 2013 | FY 2014 1/ | FY 2015 1/ | Outlay Spendout Rates | | |
|---|---|---|---|---|---|---|
| | | | | YR 1 | YR 2 | YR 3 |
| **Supreme Court** | | | | | | |
| Discretionary | 67,680 | 71,965 | 74,580 | 80% | 20% | 0% |
| Mandatory | 2,116 | 2,442 | 2,527 | 100% | 0% | 0% |
| **Total, Salaries and Expenses** | 69,796 | 74,407 | 77,107 | | | |
| | | | | | | |
| **Buildings and Grounds** | 15,451 | 16,313 | 12,755 | 68% | 12% | 20% |
| | | | | | | |
| **Court of Appeals for the Federal Circuit** | | | | | | |
| Discretionary | 25,384 | 29,624 | 31,209 | 80% | 20% | 0% |
| Mandatory | 2,524 | 2,798 | 2,893 | 100% | 0% | 0% |
| **Total, Court of Appeals for the Federal Circuit** | 27,908 | 32,422 | 34,102 | | | |
| | | | | | | |
| **Court of International Trade** | | | | | | |
| Discretionary | 18,141 | 19,439 | 18,007 | 95% | 5% | 0% |
| Mandatory | 1,449 | 1,916 | 1,981 | 100% | 0% | 0% |
| **Total, Court of International Trade** | 19,590 | 21,355 | 19,988 | | | |
| | | | | | | |
| *Courts of Appeals, District Courts, and Other Judicial Services:* | | | | | | |
| Salaries and Expenses - Discretionary | 4,269,073 | 4,636,657 | 4,819,988 | 93% | 7% | 0% |
| Salaries and Expenses - Mandatory | 334,772 | 388,664 | 414,605 | 100% | 0% | 0% |
| **Total, Salaries and Expenses** | 4,603,845 | 5,025,321 | 5,234,593 | | | |
| Defender Services | 988,989 | 1,038,188 | 1,052,070 | 97% | 3% | 0% |
| Fees of Jurors & Commissioners | 54,576 | 54,830 | 56,387 | 99.5% | 0.5% | 0% |
| Court Security | 489,966 | 520,000 | 525,000 | 80.0% | 20.0% | 0% |
| *Total, Courts of Appeals, District Courts, and Other Judicial Services* | 6,137,376 | 6,638,339 | 6,868,050 | | | |
| | | | | | | |
| **Administrative Office of the United States Courts** | 77,998 | 82,611 | 85,299 | 94% | 6% | 0% |
| | | | | | | |
| **Federal Judicial Center** | 25,477 | 26,886 | 27,082 | 95% | 5% | 0% |
| | | | | | | |
| **Judicial Retirement Funds (MANDATORY)** | 125,464 | 126,931 | 143,600 | 100% | 0% | 0% |
| | | | | | | |
| **United States Sentencing Commission** | 15,097 | 16,396 | 16,632 | 85% | 15% | 0% |
| | | | | | | |
| Subtotal, Discretionary | 6,047,832 | 6,512,909 | 6,719,009 | | | |
| Subtotal, Mandatory | 466,326 | 522,751 | 565,606 | | | |
| | | | | | | |
| **Total, Judiciary** | 6,514,158 | 7,035,660 | 7,284,615 | | | |

1/ Mandatory amounts for fiscal years 2014 and 2015 reflect planned outlay levels.

339

**SUPREME COURT OF THE UNITED STATES**
**SUMMARY STATEMENT RELATING APPROPRIATION ESTIMATES TO THE CURRENT APPROPRIATION**

Fiscal Year 2014 Enacted Appropriation ........................................................... $86,225,000

|  | | Requirements | |
|  | 2014 Enacted Appropriation | 2015 Requested Appropriation | Requested Increase/Decrease |
|---|---|---|---|
| Salaries and Expenses | $75,067,000 | $77,494,000 | $2,427,000 |
| Care of the Building and Grounds | $11,158,000 | $11,640,000 | $482,000 |
| Totals | $86,225,000 | $89,134,000 | $2,909,000 |

Proposed Increase over Fiscal Year 2014 Appropriation ........................................................... $2,909,000

Total Requested Budget Authority, Fiscal Year 2015 ........................................................... $89,134,000

1.1

SUPREME COURT OF THE UNITED STATES
*Salaries and Expenses*
SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | Mandatory | Discretionary | Total |
|---|---|---|---|
| **Fiscal Year 2014 Enacted Appropriation** | $2,442,000 | $72,625,000 | $75,067,000 |
| Fiscal Year 2015 Appropriation Request | $2,527,000 | $74,967,000 | $77,494,000 |
| **Requested Increase from Fiscal Year 2014 Appropriation** | $85,000 | $2,342,000 | $2,427,000 |

APPROPRIATION LANGUAGE

SUPREME COURT OF THE UNITED STATES

SALARIES AND EXPENSES

For expenses necessary for the operation of the Supreme Court, as required by law, excluding care of the building and grounds, including hire of passenger motor vehicles as authorized by 31 U.S.C. 1343 and 1344; not to exceed $10,000 for official reception and representation expenses; and for miscellaneous expenses, to be expended as the Chief Justice may approve, [$72,625,000] *$74,967,000* , of which [$1,500,000] *$2,000,000* shall remain available until expended.

In addition, there are appropriated such sums as may be necessary under current law for the salaries of the chief justice and associate justices of the court.

I.2

**SUMMARY OF REQUEST**
**SUPREME COURT OF THE UNITED STATES**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2015**
(Dollar amounts in thousands)

**Fiscal Year 2015 Resource Requirements:**

| | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|
| | FTE | Amount | FTE | Amount | FTE | Amount |
| Fiscal Year 2014 Enacted Appropriation............................. | 9 | 2,442 | 488 | 72,625 | 497 | 75,067 |

**Adjustments to Base to Maintain Current Services:**

| Page No. | | | | | | | |
|---|---|---|---|---|---|---|---|
| | **A. Justices** | | | | | | |
| | Pay and benefit cost adjustments | | | | | | |
| | 1. Annualization of 2014 pay adjustment | | | | | | |
| 1.15 | a. Annualization of the 2014 pay increase (1.0% for three months) | 5 | | - | | 5 | |
| | b. Annualization of the justices' base pay adjustment (2.5 months)............. | 55 | | - | | 55 | |
| 1.16 | 2. Proposed January 2015 pay adjustment (1.0% for nine months)............. | 16 | | - | | 16 | |
| 1.16 | 3. Health benefits increase.......................... | 8 | | - | | 8 | |
| 1.16 | 4. FICA increase........................................ | 1 | | - | | 1 | |
| | **B. Court Support Personnel** | | | | | | |
| | Pay and benefit cost adjustments | | | | | | |
| 1.16 | 5. Annualization of 2014 pay adjustment (1.0% for three months) | - | | 104 | | 104 | |
| 1.16 | 6. Proposed January 2015 pay adjustment (1.0% for nine months)............. | - | | 312 | | 312 | |
| 1.16 | 7. Promotions and within-grade increases..................... | - | | 401 | | 401 | |
| 1.17 | 8. Health benefits increase.......................... | - | | 149 | | 149 | |
| 1.17 | 9. FICA increase........................................ | - | | 29 | | 29 | |
| 1.17 | 10. Retirement increase.............................. | - | | 485 | | 485 | |
| | **C. Other Adjustments** | | | | | | |
| | General inflationary adjustments | | | | | | |
| 1.17 | 11. Inflationary increases in charges for contracts, services, supplies, and equipment. | - | | 297 | | 297 | |
| 1.17 | 12. Library services.................................... | - | | 65 | | 65 | |
| 1.17 | 13. Restoration of technology fund reduction.................. | - | | 590 | | 590 | |
| | Subtotal, adjustments to base to maintain current services................... | | 85 | | 2,342 | | 2,427 |
| | **Total Appropriation Required, Fiscal Year 2015**.................. | 9 | 2,527 | 488 | 74,967 | 497 | 77,494 |

SUPREME COURT OF THE UNITED STATES
SALARIES AND EXPENSES
Obligations by Activity ($000)

| Activity | Fiscal Year 2013 Actual | Fiscal Year 2014 Estimate | Fiscal Year 2015 Request |
|---|---|---|---|
| Salaries and Expenses, Total Obligations | 70,950 | 75,067 | 77,494 |
| | | | |
| Unobligated Balance, Start of the Year | - | | |
| Unobligated Balance, End of the Year | | | |
| Unobligated Balance, Expiring | 80 | | |
| | | | |
| Available Appropriation | 71,030 | 75,067 | 77,494 |

Object Classification ($000)

| Description | Fiscal Year 2013 Actual | Fiscal Year 2014 Estimate | Fiscal Year 2015 Request |
|---|---|---|---|
| 11 Personnel compensation | 40,913 | 43,114 | 43,901 |
| 12 Personnel benefits | 13,210 | 14,464 | 15,241 |
| 13 Benefits for former personnel | | 32 | 32 |
| 21 Travel | 510 | 492 | 500 |
| 22 Transportation of things | 60 | 65 | 67 |
| 23 Rent, communications and utilities | 1,129 | 1,122 | 1,141 |
| 24 Printing and reproduction | 307 | 416 | 423 |
| 25 Other services | 8,890 | 9,271 | 9,929 |
| 26 Supplies and materials | 2,133 | 2,394 | 2,435 |
| 31 Equipment | 3,798 | 3,697 | 3,825 |
| Total Obligations | 70,950 | 75,067 | 77,494 |

343

## SUPREME COURT OF THE UNITED STATES
### Salaries & Expenses
### Relation of Obligations to Outlays ($000)

|  | Fiscal Year 2013 Actual | Fiscal Year 2014 Estimate | Fiscal Year 2015 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 70,950 | 75,067 | 77,494 | 2,427 |
| Obligated balance, start of year | 8,842 | 9,996 | 10,656 | 660 |
| Obligated balance, end of year | (9,996) | (10,656) | (11,043) | (387) |
| Net Outlays | 69,796 | 74,407 | 77,107 | 2,701 |

### Personnel Summary

|  | Fiscal Year 2013 Actual | Fiscal Year 2014 Estimate | Fiscal Year 2015 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total compensable workyears: Full-time equivalent employment | 497 | 497 | 497 | 0 |

344

SUPREME COURT OF THE UNITED STATES
Salaries & Expenses
Technology Fund Obligations and Financing
($000)

| Activity | Fiscal Year 2013 Actual | | Fiscal Year 2014 Estimate | | Fiscal Year 2015 Request | |
|---|---|---|---|---|---|---|
| Unobligated Balance, Start of the Year | | 4,524 | | 5,415 | $ | 6,165 |
| New Deposits | $ | 1,996 | $ | 1,500 | $ | 2,000 |
| Unobligated Balance, End of the Year | $ | (5,415) | $ | (6,165) | $ | (6,061) |
| No-Year Fund, Total Obligations | $ | 1,105 | $ | 750 | $ | 2,104 |

Note:

FY 2013 Actuals: Continue Sharepoint implementation; Mobile Device solutions implementated and in use by the Court. Payroll Migration proceeding well, multiple databases developed, expected October 2014 completion Upgraded digital print equipment for opinion processing.

FY 2014 Projected: Begin preparations for the next court-wide desktop platform rollout. Payroll migration to be completed.

FY 2015 Requested: Begin new court-wide desktop implementation, expected October 2017 completion.

Before the establishment of no-year funding, the Court encountered difficulties in planning technology upgrades because it lacked an assurance of available funds to commence and complete the upgrades. Congress's initiation of the no-year funding mechanism in fiscal year 2006 resolved that difficulty. Under the no-year funding mechanism, technology fund balances have been built up in $2 million annual increments and spent when needed to accomplish scheduled technology upgrades, typically over four-year cycles

Table SC.1
Summary of Supreme Court Cases

| Term* | Case Filings During Term | Carried Over From Prior Term | Total Cases | Original & Paid | In Forma Pauperis | Total Cases Disposed Of | Total Cases Not Disposed Of |
|---|---|---|---|---|---|---|---|
| 1975 | 3,940 | 821 | 4,761 | 2,386 | 2,395 | 3,806 | 955 |
| 1980 | 4,174 | 970 | 5,144 | 2,773 | 2,371 | 4,255 | 889 |
| 1981 | 4,422 | 889 | 5,311 | 2,957 | 2,354 | 4,433 | 878 |
| 1982 | 4,201 | 878 | 5,079 | 2,727 | 2,352 | 4,201 | 878 |
| 1983 | 4,222 | 878 | 5,100 | 2,706 | 2,394 | 4,141 | 959 |
| 1984 | 4,047 | 959 | 5,006 | 2,590 | 2,416 | 4,261 | 745 |
| 1985 | 4,413 | 745 | 5,158 | 2,581 | 2,577 | 4,275 | 883 |
| 1986 | 4,240 | 883 | 5,123 | 2,559 | 2,564 | 4,348 | 775 |
| 1987 | 4,493 | 775 | 5,268 | 2,593 | 2,675 | 4,887 | 881 |
| 1988 | 4,776 | 881 | 5,657 | 2,599 | 3,058 | 4,829 | 828 |
| 1989 | 4,918 | 828 | 5,746 | 2,430 | 3,316 | 4,932 | 814 |
| 1990 | 5,502 | 814 | 6,316 | 2,365 | 3,951 | 5,412 | 904 |
| 1991 | 5,866 | 904 | 6,770 | 2,463 | 4,307 | 5,828 | 942 |
| 1992 | 6,303 | 942 | 7,245 | 2,453 | 4,792 | 6,356 | 889 |
| 1993 | 6,897 | 889 | 7,786 | 2,454 | 5,332 | 6,682 | 1,104 |
| 1994 | 6,996 | 1,104 | 8,100 | 2,526 | 5,574 | 7,132 | 968 |
| 1995 | 6,597 | 968 | 7,565 | 2,467 | 5,098 | 6,699 | 966 |
| 1996 | 6,634 | 966 | 7,600 | 2,435 | 5,165 | 6,689 | 911 |
| 1997 | 6,781 | 911 | 7,692 | 2,439 | 5,253 | 6,718 | 974 |
| 1998 | 7,109 | 974 | 8,083 | 2,394 | 5,689 | 7,015 | 1,068 |
| 1999 | 7,377 | 1,068 | 8,445 | 2,421 | 6,024 | 7,382 | 1,113 |
| 2000 | 7,852 | 1,113 | 8,965 | 2,314 | 6,651 | 7,713 | 1,252 |
| 2001 | 7,924 | 1,252 | 9,176 | 2,218 | 6,958 | 8,025 | 1,151 |
| 2002 | 8,255 | 1,151 | 9,406 | 2,197 | 7,209 | 8,337 | 1,069 |
| 2003 | 7,814 | 1,068 | 8,882 | 2,064 | 6,818 | 7,791 | 1,092 |
| 2004 | 7,496 | 1,092 | 8,588 | 2,045 | 6,543 | 7,503 | 1,087 |
| 2005 | 8,521 | 1,087 | 9,608 | 2,033 | 7,575 | 8,209 | 1,399 |
| 2006 | 8,857 | 1,399 | 10,256 | 2,075 | 8,181 | 8,895 | 1,361 |
| 2007 | 8,241 | 1,361 | 9,602 | 1,974 | 7,628 | 8,375 | 1,227 |
| 2008 | 7,738 | 1,228 | 8,966 | 1,945 | 7,021 | 7,824 | 1,142 |
| 2009 | 8,159 | 1,142 | 9,301 | 1,913 | 7,388 | 8,096 | 1,205 |
| 2010 | 7,857 | 1,205 | 9,062 | 1,895 | 7,167 | 7,828 | 1,234 |
| 2011 | 7,713 | 1,239 | 8,952 | 1,870 | 7,082 | 7,656 | 1,296 |
| 2012 | 7,509 | 1,297 | 8,806 | 1,809 | 6,997 | 7,602 | 1,204 |
| 2013** | 7,611 | 1,204 | 8,815 | 1,763 | 7,052 | 7,681 | 1,204 |

*October Term 2013 corresponds with fiscal year 2014.
**Projection for full Term.

CLER-0067-12-2013

CLER-067A-12-2013

## Table SC.2
## Summary of Case Dispositions

| Term | Cases Granted Review | | Cases Reviewed and Decided Without Argument During Term | Cases Granted Review During Term |
|------|----------------------|----------------------|------|------|
|      | Argued This Term | Disposed of by Opinion | | |
| 1975 | 179 | 176 | 184 | 172 |
| 1980 | 154 | 152 | 122 | 188 |
| 1981 | 184 | 170 | 126 | 201 |
| 1982 | 183 | 174 | 119 | 179 |
| 1983 | 184 | 174 | 81 | 149 |
| 1984 | 175 | 159 | 78 | 185 |
| 1985 | 171 | 171 | 106 | 187 |
| 1986 | 175 | 174 | 109 | 167 |
| 1987 | 167 | 160 | 87 | 180 |
| 1988 | 170 | 168 | 107 | 147 |
| 1989 | 146 | 146 | 80 | 123 |
| 1990 | 125 | 125 | 115 | 141 |
| 1991 | 127 | 123 | 77 | 121 |
| 1992 | 116 | 115 | 113 | 97 |
| 1993 | 99 | 99 | 70 | 99 |
| 1994 | 94 | 94 | 69 | 96 |
| 1995 | 90 | 90 | 120 | 106 |
| 1996 | 90 | 90 | 88 | 87 |
| 1997 | 96 | 94 | 51 | 90 |
| 1998 | 90 | 88 | 59 | 81 |
| 1999 | 83 | 79 | 54 | 82 |
| 2000 | 86 | 83 | 127 | 99 |
| 2001 | 88 | 85 | 72 | 88 |
| 2002 | 84 | 79 | 66 | 91 |
| 2003 | 91 | 89 | 52 | 87 |
| 2004 | 87 | 85 | 826 | 80 |
| 2005 | 90 | 82 | 105 | 78 |
| 2006 | 78 | 74 | 280 | 77 |
| 2007 | 75 | 72 | 208 | 95 |
| 2008 | 87 | 83 | 95 | 88 |
| 2009 | 82 | 83 | 95 | 78 |
| 2010 | 86 | 77 | 84 | 90 |
| 2011 | 79 | 83 | 137 | 66 |
| 2012 | 77 | 76 | 88 | 93 |
| 2013* | 81 | 79 | 52 | 75 |

*Projection for full Term.

## Table SC3
### Applications to Individual Justices, Including Capital Cases

| Term | Applications for Relief to Individual Justices | Chambers Opinions | Applications for Stay in Capital Cases* |
|---|---|---|---|
| 1975 | 1,165 | 10 | 0 |
| 1980 | 1,096 | 11 | 32 |
| 1981 | 1,145 | 7 | 39 |
| 1982 | 1,077 | 19 | 45 |
| 1983 | 1,072 | 14 | 76 |
| 1984 | 982 | 11 | 62 |
| 1985 | 1,060 | 6 | 66 |
| 1986 | 951 | 11 | 86 |
| 1987 | 1,001 | 3 | 60 |
| 1988 | 1,064 | 5 | 90 |
| 1989 | 929 | 0 | 71 |
| 1990 | 984 | 3 | 55 |
| 1991 | 968 | 1 | 74 |
| 1992 | 974 | 2 | 76 |
| 1993 | 1,113 | 5 | 79 |
| 1994 | 992 | 5 | 82 |
| 1995 | 1,067 | 1 | 87 |
| 1996 | 935 | 1 | 110 |
| 1997 | 985 | 0 | 115 |
| 1998 | 1,100 | 0 | 138 |
| 1999 | 1,085 | 1 | 132 |
| 2000 | 1,145 | 2 | 87 |
| 2001 | 1,006 | 3 | 91 |
| 2002 | 1,096 | 2 | 99 |
| 2003 | 1,064 | 3 | 86 |
| 2004 | 1,081 | 2 | 68 |
| 2005 | 1,236 | 2 | 112 |
| 2006 | 1,248 | 3 | 71 |
| 2007 | 1,094 | 2 | 20 |
| 2008 | 1,167 | 2 | 63 |
| 2009 | 1,268 | 2 | 60 |
| 2010 | 1,277 | 1 | 65 |
| 2011 | 1,266 | 1 | 61 |
| 2012 | 1,251 | 2 | 44 |
| 2013** | 1,258 | 2 | 50 |

* Some applications addressed to a Justice are referred to the whole Court for decision.
** Projection for full Term.

CLEH-0678-12-2013

348





SUPREME COURT OF THE UNITED STATES

Office of the Clerk

Cases Carried Over & Docketed

■ Carried Over  ■ Docketed During Term

No. of Cases



SUPREME COURT OF THE UNITED STATES        Office of the Clerk

Cases Docketed By Type

Term Year 2012

Civil
2189
30%

Habeas Corpus
2381
33%

Criminal
2618
36%

Other
101
1%

1 . 12

**SUPREME COURT OF THE UNITED STATES**          **Office of the Clerk**

Cases Argued By Type



Habeas Corpus
5
6%

Criminal
16
21%

Original
0
0%

Civil
56
73%

Term Year 2012

1.13



SUPREME COURT OF THE UNITED STATES

Office of the Clerk

Cases Docketed

Term Year 2012

1.14

■ Paid and Original
1504
20%

■ I.F.P.
6005
80%

## GENERAL STATEMENT AND INFORMATION

The Supreme Court requests funds for salaries of the Chief Justice, eight Associate Justices, the Counselor to the Chief Justice, the four Statutory Officers of the Court, and the employees of the Court. The Court also requests funds for the necessary expenses of the Court, including printing and binding of the Supreme Court reports, purchasing books for the Supreme Court and miscellaneous expenses for fiscal year 2015.

### Justification of Changes

The fiscal year 2015 budget request for the Court totals $77,494,000, which includes $2,527,000 for mandatory expenses and $74,967,000 for discretionary expenses. The discretionary request of $74,967,000 is a 3.2 percent increase over the fiscal year 2014 enacted discretionary appropriation of $72,625,000. This request includes inflationary adjustments (discretionary) of $1,842,000, and restoration of $500,000 to the technology fund, resulting in a net increase of $2,342,000 over the fiscal year 2014 discretionary appropriation. The budget request includes no-year funding for planning and implementing periodic Court-wide technology and automation upgrades totaling $2,000,000.

Adjustments to base to maintain current services include funds for pay and benefits increases for current Justices and staff. Also included are increased costs of ongoing activities such as travel, postage, supplies, law books, equipment, furnishings, automation, and offsite warehouse space for activities that include mail screening.

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

The following narrative provides information and justification for each of the adjustments to base for the Supreme Court. The major headings for this section of the narrative are: Justices, Court Support Personnel, and Other Adjustments.

### A. JUSTICES

*Pay and Benefits Cost Adjustments*

1. Annualization of 2014 pay adjustment

   a. Annualization of the 2014 pay increase

**Mandatory Increase: $5,000**

Federal pay rates increased by 1.0 percent in January 2014. The requested increase provides for the cost of three months (from October 2014 to December 2014) of the 2014 pay increase in fiscal year 2015.

   b. Annualization of justices' base pay adjustment

**Mandatory Increase: $55,000**

Funds are requested to provide for the annualization (2.5 months) of the justices' pay adjustment as a result of litigation that went into effect in mid-December 2013.

**B. COURT SUPPORT PERSONNEL**

**5. Annualization of 2014 pay adjustment**

**Requested Increase: $104,000**

Federal pay rates increased by 1.0 percent in January 2014. The requested increase provides for the cost of three months (from October 2014 to December 2014) of the 2014 pay increase in fiscal year 2015.

**6. Proposed January 2015 pay adjustment**

**Requested Increase: $312,000**

As of January 2014, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.0 percent beginning on or after January 1, 2015. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2015 (from January 2015 to September 2015).

**7. Promotions and within-grade increases**

**Requested Increase: $401,000**

The requested increase provides for promotions and within-grade increases for personnel. The salary plan for judicial support personnel provides for periodic within-grade increases for staff who receive at least a satisfactory performance rating.

**2. Proposed January 2015 pay adjustment**

**Mandatory Increase:  $16,000**

As of January 2014, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.0 percent beginning on or after January 1, 2015. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2015 (from January 2015 to September 2015).

**3. Health benefits increase**

**Mandatory Increase: $8,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by an average of 3.7 percent in January 2014. The requested increase annualizes the 2014 premium increase, and includes a nine-month provision for an estimated 4.0 percent increase anticipated for fiscal year 2015.

**4. FICA increase**

**Mandatory Increase:  $1,000**

Funds are requested to provide for the base adjustment in employer contributions to the Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax. The salary cap for OASDI increased to $113,700 in January 2013, and increased to $117,000 in January 2014. The requested amount is needed to pay the agency contribution.

the Civil Service Retirement System who retire or leave the Supreme Court.

## C. OTHER ADJUSTMENTS

*General Inflationary Adjustments*

### 11. Inflationary increases in charges for contracts, services, supplies, and equipment

**Requested Increase: $297,000**

Consistent with guidance from the Office of Management and Budget, this request of $297,000 is required to fund inflationary increases of 1.7 percent for operating expenses such as travel, communications, printing, contractual services, supplies and materials, and furniture and equipment.

### 12. Library services

**Requested Increase: $65,000**

The increase is requested to cover estimated increases in the costs of library services, including law book accessions and continuations, and computer-assisted legal research.

### 13. Restoration of technology fund reduction

**Requested Increase: $500,000**

The technology fund was established as a no-year funding source to provide for multi-year projects that enhance Court-wide technology and office automation. The fund is designed to accumulate for expenditure during technology upgrades.

### 8. Health benefits increase

**Requested Increase: $149,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by an average of 3.7 percent in January 2014. The requested increase annualizes the 2014 premium increase, and includes a nine-month provision for an estimated 4.0 percent increase anticipated for fiscal year 2015.

### 9. FICA increase

**Requested Increase: $29,000**

Funds are requested to provide for the base adjustment in employer contributions to the Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax. The salary cap for OASDI increased to $113,700 in January 2013, and increased to $117,000 in January 2014. The requested amount is needed to pay the agency contribution.

### 10. Retirement cost increase

**Requested Increase: $485,000**

Funds are requested to provide for the expected increase in retirement costs as a result of the increase in salaries. Also, the Supreme Court's costs for the Federal Employees Retirement System (FERS) have increased an average of 5.0 percent in recent years. This requested increase will cover the additional expenses of FERS employees hired to replace employees under

1.17

356

I.18

which occur every third year with completion in the fifth year. The Court has received a $2 million appropriation for this fund annually since its inception in fiscal year 2006. The Court has carefully managed this fund. Reflecting the consequent savings, the Court proposed to reduce the fiscal year 2014 appropriation by $500,000 to $1,500,000 as a one-year reduction in funding. The Court requests this funding restored to the full $2,000,000 appropriation level in fiscal year 2015.

357

1.19

**SUPREME COURT OF THE UNITED STATES**
*Care of the Building and Grounds*
**SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS**

| | |
|---|---|
| **Fiscal Year 2014 Enacted Appropriation** | **$11,158,000** |
| **Fiscal Year 2015 Appropriation Request** | **$11,640,000** |
| **Requested Increase from Fiscal Year 2014 Appropriation** | **$482,000** |

**APPROPRIATION LANGUAGE**

**SUPREME COURT OF THE UNITED STATES**

**CARE OF THE BUILDING AND GROUNDS**

For such expenditures as may be necessary to enable the Architect of the Capitol to carry out the duties imposed upon the Architect by 40 U.S.C. 6111 and 6112, [$11,158,000] *$11,640,000*, to remain available until expended.

# SUMMARY OF REQUEST
## SUPREME COURT OF THE UNITED STATES
### CARE OF THE BUILDING AND GROUNDS
#### FISCAL YEAR 2015
(Dollar amounts in thousands)

| Page No. | | FTEs | Amount |
|---|---|---|---|
| | **Fiscal Year 2015 Resource Requirements:** | | |
| | Fiscal Year 2014 Enacted Appropriation.................................................. | 50 | $11,158 |
| | **Adjustments to Base to Maintain Current Services:** | | |
| | **A. Personnel and Personnel** | | |
| 1.24 | 1. Annualization of 2014 pay adjustment (1.0% for three months)................... | | 7 |
| 1.24 | 2. Proposed January 2015 pay adjustment (1.0% for nine months)................... | | 56 |
| 1.24 | 3. Within-grade increases........................................................ | | 31 |
| 1.24 | 4. Health benefits increase...................................................... | | 10 |
| | **B. Other Adjustments** | | |
| 1.24 | 5. General inflationary increases................................................ | | 65 |
| 1.25 | 6. Reduction for non-recurring requirements...................................... | | (3,000) |
| | Subtotal, Adjustments to Base to Maintain Current Services...................... | - | (2,831) |
| | **Total Current Services Appropriation Required**.................................. | 50 | 8,327 |
| | **C. Program Increases** | | |
| 1.25 | 7. East Façade Restoration....................................................... | | 2,500 |
| 1.25 | 8. Electronic systems maintenance................................................ | | 813 |
| | Subtotal, Program Increases..................................................... | - | 3,313 |
| | **Total Fiscal Year 2015 Appropriation Required**................................. | 50 | 11,640 |
| | **Total Appropriation Change, Fiscal Year 2014 to Fiscal Year 2015**.............. | - | 482 |

1.20

**SUPREME COURT OF THE UNITED STATES**
**CARE OF THE BUILDING AND GROUNDS**
Obligations by Activity ($000)

| Activity | Fiscal Year 2013 Actual | Fiscal Year 2014 Estimate | Fiscal Year 2015 Request |
|---|---|---|---|
| Care of Building and Grounds, Total Obligations | 11,028 | 12,322 | 13,240 |
| Unobligated Balance, Start of Year | (13,660) | (10,364) | (9,200) |
| Unobligated Balance, End of Year | 10,364 | 9,200 | 7,600 |
| Available Appropriation | 7,732 | 11,158 | 11,640 |

Object Classification ($000)

| | Description | Fiscal Year 2013 Actual | Fiscal Year 2014 Estimate | Fiscal Year 2015 Request |
|---|---|---|---|---|
| 11 | Personnel compensation | 3,066 | 3,293 | 3,372 |
| 12 | Personnel benefits | 961 | 1,032 | 1,057 |
| 21 | Travel and transportation of things | 4 | 4 | 0 |
| 23 | Rent, communications and utilities | 1,831 | 1,850 | 2,000 |
| 25 | Other services | 2,502 | 2,600 | 3,250 |
| 26 | Supplies and materials | 391 | 450 | 475 |
| 31 | Equipment | 20 | 0 | 0 |
| 32 | Land and structures | 2,253 | 3,093 | 3,086 |
| | Total Obligations | 11,028 | 12,322 | 13,240 |

1.21

360

SUPREME COURT OF THE UNITED STATES
CARE OF THE BUILDING AND GROUNDS
Relation of Obligations to Outlays ($000)

| | Fiscal Year 2013 Actuals | Fiscal Year 2014 Estimate | Fiscal Year 2015 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 11,028 | 12,322 | 13,240 | 918 |
| Obligated balance, start of year | 15,384 | 10,961 | 6,970 | (3,991) |
| Obligated balance, end of year | (10,961) | (6,970) | (7,455) | (485) |
| Net Outlays | 15,451 | 16,313 | 12,755 | (3,558) |

Personnel Summary[1]

| | Fiscal Year 2013 Actual | Fiscal Year 2014 Estimate | Fiscal Year 2015 Request | Difference |
|---|---|---|---|---|
| Total compensable workyears: | | | | |
| Full-time equivalent employment | 39 | 50 | 50 | 0 |

[1] Full-time equivalent numbers reflect payroll funded and project funded personnel.

I.22

361

## GENERAL STATEMENT AND INFORMATION

This appropriation, for expenditure by the Architect of the Capitol, provides for the structural and mechanical care of the United States Supreme Court Building and Grounds, including maintenance and operation of mechanical, electrical, and electronic equipment. The Architect is not responsible for custodial care, which is under the jurisdiction of the Marshal of the Supreme Court and is provided for in the Supreme Court's salaries and expenses appropriation. The Architect performs his duties under authority of 40 U.S.C. § 6111.

The equipment includes such items as air conditioning, refrigeration and ventilating systems with more than 1,000 pieces of equipment; electrical transformer stations and emergency power system; three hundred plumbing fixtures and related piping; nine elevators and five dumbwaiters; electrical fixtures and wiring; and electronic security equipment. In fiscal year 2015, a total of 50 full-time equivalents (FTE) are expected to cover three shifts daily.

Projects under the Architect of the Capitol relating to the buildings and grounds in the Capitol campus are included in the Legislative Branch budget. However, the projects pertaining to the Supreme Court, Care of the Building and Grounds are presented within the judiciary's budget request.

## Justification of Changes

The fiscal year 2015 budget request for the Supreme Court of the United States, Care of the Building and Grounds appropriation totals $11,640,000 and 50 FTE. This represents an increase of $482,000 from the fiscal year 2014 enacted appropriation of $11,158,000.

**Adjustments to base to maintain current services** include an increase of $104,000 for proposed 2015 pay adjustments, within grade increases for staff paid under the general and wage board schedules, and health benefits; $65,000 for general inflationary increases; and a decrease of $3.0 million for non-recurring requirements.

**Program increases** totaling $3,313,000 are requested to fund the East Façade restoration of the building as well as the maintenance of recently installed electronic security systems. Justification for the program increases begins on page 1.25.

1.23

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

### A.  Personnel and Programs

#### 1.  *Annualization of 2014 pay adjustment*

**Requested Increase:  $7,000**

Federal pay rates increased by 1.0 percent in January 2014.  The requested increase provides for the cost of three months (from October 2014 to December 2014) of the 2014 pay increase in fiscal year 2015.

#### 2.  *Proposed January 2015 pay adjustment*

**Requested Increase:  $56,000**

As of January 2014, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.0 percent beginning on or after January 1, 2015.  The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2015 (from January 2015 to September 2015)

#### 3.  *Within-grade increases*

**Requested Increase:  $31,000**

The requested increase includes $31,000 for within-grade increases and other adjustments, such as career ladder pay increases for support personnel.  Increases for within-grades are

authorized by 5 U.S.C.§102 (c)](7), 5102(d), 5341-5349 for wage board employees and by 5 U.S.C.531-5336 for general schedule employees.

#### 4.  *Health benefits increase*

**Requested Increase:  $10,000**

Based on the information from the Office of Personnel Management, health benefit premium contributions are projected to increase by an average of 3.7 percent in January 2014.  The requested increase annualizes the 2014 premium increase, and includes a nine-month provision for an estimated 4.0 percent increase anticipated for fiscal year 2015.

### B.  Other Adjustments

#### 5.  *General inflationary increases*

**Requested Increase:  $65,000**

Consistent with guidance from the Office of Management and Budget, this request of $65,000 is required to fund inflationary increases of 1.7 percent for operating expenses such as travel, communications, printing, contractual services, supplies and materials, and furniture and equipment.

*6. Reduction for non-recurring requirements*

**Requested Decrease: ($3,000,000)**

The requested decrease of $3,000,000 is for non-recurring requirements funded in fiscal year 2014.

**C. Program Increases**

*7. East Facade Restoration*

**Requested Increase: $2,500,000**

The requested increase of $2,500,000 provides funding for the maintenance and preservation of the east exterior facade of the Supreme Court Building. Maintenance and preservation of the exterior facades is now required as a significant amount of stone cracking and deterioration, mortar joint failure, moisture infiltration, and staining has occurred. This also represents a life safety hazard to building occupants and the public. This project involves completing a survey of the east exterior facade and cleaning, repairing, and repointing stone facades where necessary, as well as removing and replacing existing sealant and refinishing exterior bronze surfaces.

*8. Electronic Systems Maintenance*

**Requested Increase: $813,000**

The requested increase of $813,000 provides funding for the maintenance costs resulting from the upgrades to building and perimeter security. The building and perimeter security upgrade project was recently completed, which significantly increased the number of electronic components and network systems that will require on-going maintenance.

I.25

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
*Salaries and Expenses*
SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

|  | Mandatory | Discretionary | Total |
|---|---|---|---|
| **Total Fiscal Year 2014 Enacted Appropriation** | $2,798,000 | $29,600,000 | $32,398,000 |
| **Total Fiscal Year 2015 Appropriation Request** | $2,893,000 | $30,212,000 | $33,105,000 |
| **Total Requested Increase from Fiscal Year 2014 Appropriation** | $95,000 | $612,000 | $707,000 |

APPROPRIATION LANGUAGE

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

SALARIES AND EXPENSES

For salaries of officers and employees, and for necessary expenses of
the court, as authorized by law, [$29,600,000] *$30,212,000*.

In addition, there are appropriated such sums as may be necessary under
current law for the salaries of the chief judge and judges of the court.

365

## SUMMARY OF REQUEST
## COURT OF APPEALS FOR THE FEDERAL CIRCUIT
### SALARIES AND EXPENSES
### FISCAL YEAR 2015
### (Dollar amounts in thousands)

| Page No. | | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|---|
| | | FTE | Amount | FTE | Amount | FTE | Amount |
| | **Fiscal Year 2015 Resource Requirements:** | | | | | | |
| | Fiscal Year 2014 Obligations............... | 12 | 2,798 | 139 | 30,261 | 151 | 33,059 |
| | Utilization of Judiciary Information Technology Fund Balances.... | | | | (661) | | (661) |
| | Fiscal Year 2014 Enacted Appropriation............... | 12 | 2,798 | 139 | 29,600 | 151 | 32,398 |
| | **Adjustments to Base to Maintain Current Services:** | | | | | | |
| | **A. Judges** | | | | | | |
| | Pay and benefits cost adjustments | | | | | | |
| 2.9 | 1. Annualization of 2014 pay adjustment | | | | | | |
| |    a. Annualization of the 2014 pay increase (1.0% for three months)...... | | 6 | | - | | 6 |
| |    b. Annualization of the Judges' base pay adjustment (2.5 months)...... | | 63 | | - | | 63 |
| 2.9 | 2. Proposed January 2015 pay adjustment (1.0% for nine months)...... | | 19 | | - | | 19 |
| 2.9 | 3. Health benefits increase...... | | 5 | | - | | 5 |
| 2.9 | 4. FICA Increase...... | | 2 | | - | | 2 |
| | **B. Court Support Personnel** | | | | | | |
| | Pay and benefits cost adjustments | | | | | | |
| 2.10 | 5. Annualization of 2014 pay adjustment (1.0% for three months)...... | | - | | 34 | | 34 |
| 2.10 | 6. Proposed January 2015 pay adjustment (1.0% for nine minths)...... | | - | | 103 | | 103 |
| 2.10 | 7. Promotions and within-grade increases...... | | - | - | 185 | | 185 |
| 2.10 | 8. Health benefits increase...... | | - | | 33 | | 33 |
| 2.10 | 9. FICA Increase...... | | - | | 5 | | 5 |

2.2

**SUMMARY OF REQUEST**
**COURT OF APPEALS FOR THE FEDERAL CIRCUIT**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2015**
(Dollar amounts in thousands)

| Page No. | C. Other Adjustments | Mandatory FTE | Mandatory Amount | Discretionary FTE | Discretionary Amount | Total FTE | Total Amount |
|---|---|---|---|---|---|---|---|
| 2.11 | 10. General inflationary adjustments | | - | | 68 | | 68 |
| 2.11 | 11. Increase in GSA space rental cost | | - | | 166 | | 166 |
| 2.11 | 12. Lawbooks and computer-assisted legal research (CALR) | | - | | 18 | | 18 |
| | Subtotal, Adjustments to Base to Maintain Current Services | | 95 | | 612 | | 707 |

2.3

367

## SUMMARY OF REQUEST
## COURT OF APPEALS FOR THE FEDERAL CIRCUIT
## SALARIES AND EXPENSES
## FISCAL YEAR 2015
### (Dollar amounts in thousands)

| Page No. | Mandatory FTE | Mandatory Amount | Discretionary FTE | Discretionary Amount | Total FTE | Total Amount |
|---|---|---|---|---|---|---|
| Total Fiscal Year 2015 Appropriation Required............... | 12 | 2,893 | 139 | 30,212 | 151 | 33,105 |
| Total Appropriation Increase, Fiscal Year 2014 to Fiscal Year 2015................ | - | 95 | | 612 | | 707 |
| **Financing the Fiscal Year 2015 Request:** | | | | | | |
| Total Appropriation Required, Fiscal Year 2015............ | 12 | 2,893 | 139 | 30,212 | 151 | 33,105 |
| 2.11  14. Utilization of Electronic Public Access Receipts and Judiciary Information Technology Fund............ | - | - | - | 530 | - | 530 |
| Total Estimated Obligations, Fiscal Year 2015............ | 12 | 2,893 | 139 | 30,742 | 151 | 33,635 |

2.4

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**
**SALARIES AND EXPENSES**
**Obligations by Activity ($000)**

| Activity | Fiscal Year 2013 Actual | Fiscal Year 2014 Estimate | Fiscal Year 2015 Request |
|---|---|---|---|
| **Salaries and Expenses, Total Obligations** | 31,132 | 33,089 | 33,635 |
| Unobligated Balance, Start of the Year | | | |
| Judiciary Information Technology Fund | (2,678) | (3,347) | (2,735) |
| New Deposit | (1,448) | | |
| Unobligated Balance, End of the Year | | | |
| Judiciary Information Technology Fund | 3,347 | 2,735 | 2,254 |
| **Total Direct Obligations** | 30,353 | 32,447 | 33,154 |
| Unobligated Balance, Expiring | 144 | | |
| Transfer to Court of Appeals, District Courts, and other Judicial Services, Defender Services | 500 | | |
| Less offsets from: | | | |
| Electronic Public Access | (44) | (49) | (49) |
| **Appropriation Required (Direct)** | 30,953 | 32,398 | 33,105 |

**Obligations by Budget Object Class ($000)**

| | Description | Fiscal Year 2013 Actual | Fiscal Year 2014 Estimate | Fiscal Year 2015 Request |
|---|---|---|---|---|
| 11 | Personnel compensation | 14,719 | 16,241 | 16,754 |
| 12 | Personnel benefits | 3,314 | 3,650 | 3,695 |
| 13 | Benefits for former personnel | 43 | 118 | 15 |
| 21 | Travel | 69 | 55 | 56 |
| 22 | Transportation of things | 50 | 53 | 54 |
| 23 | Rent, communications and utilities | 6,902 | 6,925 | 7,081 |
| | *Rental payments to GSA* | 251 | 285 | 290 |
| | *Communications utilities & misc charges* | 121 | 115 | 117 |
| 24 | Printing and reproduction | 3,119 | 4,452 | 4,386 |
| 25 | Other services | 227 | 230 | 233 |
| 26 | Supplies and materials | 825 | 886 | 905 |
| 31 | Equipment | | | |
| 91 | Undefined Disbursements [2] | 1,492 | 49 | 49 |
| | **Total obligations** | 31,132 | 33,089 | 33,635 |

1/ Deposited into JITF fund
2/ Includes JITF obligations of $779,000 in FY 2013, $661,000 in FY 2014, and $530,000 in FY 2015.

2.5

2.6

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
### Salaries & Expenses
### Relation of Obligations to Outlays ($000)

|  | FY 2013 Actual | FY 2014 Estimate | FY 2015 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 31,132 | 33,059 | 33,635 | 576 |
| Obligated balance, start of year | 10,463 | 12,908 | 12,884 | (24) |
| Obligated balance, end of year | (12,908) | (12,884) | (11,887) | 997 |
| Total Outlays | 28,687 | 33,083 | 34,632 | 1,549 |
| Less Judicial Information Technology Fund Obligations | (779) | (661) | (530) | 131 |
| Net Outlays | 27,908 | 32,422 | 34,102 | 1,680 |

**Personnel Summary**

|  | FY 2013 Actual | FY 2014 Estimate | FY 2015 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total compensable workyears: Full-time equivalent employment | 145 | 151 | 151 | 0 |

370

2.7

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
### SALARIES AND EXPENSES
#### Summary of Mandatory Costs

| | Fiscal Year 2014 | | Fiscal Year 2015 [1] | | Increase ($000) |
|---|---|---|---|---|---|
| | No. of Judgeships | Compensation and Benefits ($000) | No. of Judgeships | Compensation and Benefits ($000) | |
| Article III Judges | 12 | 2,798 | 12 | 2,893 | 95 |

1/ The $95,000 increase includes $19,000 for the proposed fiscal year 2015 cost-of-living adjustment for judges.

371

## GENERAL STATEMENT AND INFORMATION

The United States Court of Appeals for the Federal Circuit, located in Washington, D.C., has exclusive nationwide jurisdiction over a large number of diverse subject areas, such as appeals in all patent cases, all government contract cases, all international trade cases, all government personnel cases, all cases involving monetary claims against the United States under the Tucker Acts, veterans cases, and many others. To keep abreast of its varied jurisdiction, the court is requesting necessary increases in its funding as detailed below.

Appeals to the court come from all 94 federal district courts, the United States Court of Federal Claims, the United States Court of International Trade, and the United States Court of Appeals for Veterans Claims. The court also takes appeals of certain administrative agencies' decisions, including the United States Merit Systems Protection Board, the Boards of Contract Appeals, the Board of Patent Appeals and Interferences, and the Trademark Trial and Appeals Board. Decisions of the United States International Trade Commission, the Office of Compliance, an independent agency in the Legislative Branch, and the Government Accountability Office Personnel Appeals Board also are reviewed by the court. For additional information on the court's jurisdiction, see the appendix beginning on page 2.13.

## Justification of Changes

The fiscal year 2015 budget request for the Court totals $33,105,000, which includes $2,893,000 for mandatory expenses and $30,212,000 for discretionary expenses. The discretionary request of $30,212,000 is a 2.1 percent increase over the fiscal year 2014 enacted discretionary appropriation of $29,600,000. The increases include amounts for inflationary increases and adjustments to base to maintain current services.

**Adjustments to base to maintain current services** include funds for the following: increased salaries and benefits costs for judges and current staff; increased costs for basic and required operating activities such as postage, printing, office supplies, security, library materials, computer-assisted legal research services, and GSA space rental. Justifications for each of these adjustments begin on page 2.9.

2.8

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

The following narrative provides information and justification for each of the adjustments to base for the Court.

### A. JUDGES

*Pay and Benefits Cost Adjustments*

#### 1. Annualization of 2014 pay adjustment

##### a. Annualization of the 2014 pay increase

**Mandatory Increase:  $6,000**

Federal pay rates increased by 1.0 percent in January 2014. The requested increase provides for the cost of three months (from October 2014 to December 2014) of the 2014 pay increase in fiscal year 2015.

##### b. Annualization of the judges' base pay adjustment

**Mandatory Increase:  $63,000**

Funds are requested to provide for the annualization (2.5 months) of the judges' base pay adjustment as a result of litigation that went into effect in mid-December 2013.

#### 2. Proposed January 2015 pay adjustment

**Mandatory Increase:  $19,000**

As of January 2014, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.0 percent beginning on or after January 1, 2015.  The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2015 (from January 2015 to September 2015).

#### 3. Health benefits increase

**Mandatory Increase: $5,000**

Based on the information from the Office of Personnel Management, health benefit premium contributions are projected to increase by an average of 3.7 percent in January 2014. The requested increase annualizes the 2014 premium increase, and includes a nine-month provision for an estimated 4.0 percent increase anticipated for fiscal year 2015.

#### 4. FICA increase

**Mandatory Increase: $2,000**

Funds are requested to provide for the base adjustment in employer contributions to the Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax. The salary cap for OASDI increased to $113,700 in January 2013, and increased to $117,000 in January 2014.  The requested amount is needed to pay the agency contribution.

2.9

**B. COURT SUPPORT PERSONNEL**

*Pay and Benefits Cost Adjustments*

**5.   Annualization of 2014 pay adjustment**

**Requested Increase: $34,000**

Federal pay rates increased by an average of 1.0 percent in January 2014. The requested increase provides for the annualization of the fiscal year 2014 pay increase in fiscal year 2015.

**6.   Proposed January 2015 pay adjustment**

**Requested Increase: $103,000**

As of January 2014, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.0 percent beginning on or after January 1, 2015. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2015.

**7.   Promotions and within-grade increases**

**Requested Increase: $185,000**

The requested increase provides for promotions and within-grade increases for personnel. The salary plan for judicial support personnel provides for periodic within-grade increases for staff who receive at least a satisfactory performance rating.

**8.   Health benefits increase**

**Requested Increase: $33,000**

Based on the information from the Office of Personnel Management, health benefit premium contributions are projected to increase by an average of 3.7 percent in January 2014. The requested increase annualizes the 2014 premium increase, and includes a nine-month provision for an estimated 4.0 percent increase anticipated for fiscal year 2015.

**9.   FICA increase**

**Requested increase: $5,000**

Funds are requested to provide for the base adjustment in employer contributions to the Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax. The salary cap for OASDI increased to $113,700 in January 2013, and increased to $117,000 in January 2014. The requested amount is needed to pay the agency contribution.

2.10

## C. OTHER ADJUSTMENTS

### 10. General inflationary adjustments

**Requested Increase: $68,000**

Consistent with guidance from the Office of Management and Budget, this request of $68,000 is required to fund inflationary increases of 1.7 percent for operating expenses such as travel, communications, printing, contractual services, supplies and materials, and furniture and equipment.

### 11. Increase in GSA space rental cost

**Requested Increase: $166,000**

This request represents an inflationary increase and adjustments in the cost of GSA space rental charges for space for fiscal year 2015.

### 12. Library services and computer-assisted legal research (CALR)

**Requested Increase: $18,000**

An adjustment of $9,000 is requested to fund an estimated 4.0 percent increase in the costs of library services, including law book accessions and continuations, and an adjustment of $9,000 is requested to fund an estimated 5.0 percent increase in the costs of computer-assisted legal research resources.

## FINANCING THE FISCAL YEAR 2014 REQUEST

### 13. Utilization of Electronic Public Access Receipts and Judiciary Information Technology Fund

**Estimated obligation of available balance from Judiciary Information Technology Fund and Electronic Public Access Receipts: $530,000**

28 U.S.C. § 612 provides that fees collected for electronic public access to information be deposited into the Judiciary Information Technology Fund, and that these funds are available without fiscal year limitations. The judiciary is authorized to use these fees to offset the costs of providing information to the public electronically. Fiscal year 1997 appropriations report language expanded the judiciary's authority to use these funds to finance automation enhancements that improve the availability of electronic information to the public. Fiscal year 2004 appropriations report language authorized the judiciary to use these fees for systems enhancement and operational costs associated with the judiciary's case management/electronic case filing (CM/ECF) system, which enables courts to receive and file court documents over the Internet. In fiscal year 2007, the judiciary received authority from Congress to expand the use of Electronic Public Access receipts to support courtroom technology allotments for installation, cyclical replacement of equipment, and infrastructure maintenance.

Section 303(a) of the Judiciary's 1992 Appropriations Act authorizes the Director of the Administrative Office of the United States Courts, under the direction of the Judicial Conference of the United States, to "prescribe a schedule of reasonable fees for electronic access to information which the

2.12

Director is required to maintain and make available to the public." These fees will be deposited as "offsetting collections" to the Judiciary Information Technology Fund pursuant to 28 U.S.C. §612(c)(1)(A) to reimburse expenses incurred in providing these services.

At the beginning of fiscal year 2015, the Court estimates that $2,735,000 will remain in the Judiciary Information Technology Fund. This amount will be supplemented by an additional $49,000 from Electronic Public Access receipts to total $2,784,000. The Court anticipates spending $530,000 to perform cyclical replacements of iPads, iPhones, printers, multifunction units, projectors and other miscellaneous IT supplies. The Court will perform required infrastructure upgrades such as implementing: a new wireless LAN controller, cabling materials and labor, new cards for the core switches, cloud computing, and consolidating server hardware to implement VMware technology. In addition, the Court plans on funding the remaining balance of the required Facilities Access Card (FAC) identification card project for all court employees and contractors. In an effort to continue to implement CM/ECF and its related add on applications, we will fund a maximum of two dedicated and specialized contractors to complete the work required.

## APPENDIX

The following is a more complete listing of the Federal Circuit's exclusive jurisdiction. It hears appeals from:

A) final decisions of all Federal District Courts in cases arising under 28 U.S.C. §1338(a) relating to patent laws generally; 35 U.S.C. §§ 145-146 relating to review of decisions of the Patent and Trademark Office, Board of Patent Appeals and Interferences; 28 U.S.C. §1346(a)(2) relating to Little Tucker Act claims against the United States; and section 211 of the Economic Stabilization Act of 1970, section 5 of the Emergency Petroleum Allocation Act of 1973, section 506 (c) of the Natural Gas Policy Act of 1978, and section 523 of the Energy Policy and Conservation Act relating to all statutes formerly under the jurisdiction of the Temporary Emergency Court of Appeals;

(B) final decisions of the United States Court of International Trade, 28 U.S.C. § 2645(c);

(C) final decisions of the United States Court of Appeals for Veterans Claims, 38 U.S.C. § 7292;

(D) final decisions of the United States Court of Federal Claims, 28 U.S.C. § 2522 and 42 U.S.C. §§ 300aa - 12(f);

(E) final decisions of the High Court of the Trust Territory of the Pacific Islands, 48 U.S.C. § 1681 note (1988) (Compact of Free Association; Federated States of Micronesia, Republic of Marshall Islands, TITLE II, Title One, Article VII, § 174(c));

(F) final determinations of the United States International Trade Commission relating to unfair practices in import trade made under 19 U.S.C. § 1337;

(G) findings of the Secretary of Commerce under U.S. note 6 to subchapter X of chapter 98 of the Harmonized Tariff Schedule of the United States relating to importation of educational or scientific instruments and apparatus;

(H) final orders or decisions of the Merit Systems Protection Board and certain arbitrators, 5 U.S.C. §7703;

I) final decisions of the General Accounting Office Personnel Appeals Board, 31 U.S.C. § 755;

(J) final decisions of all agency Boards of Contract Appeals, 41 U.S.C. § 607(g);

(K) final decisions of the Patent and Trademark Office tribunals on patent applications and interferences, trademark applications and interferences, cancellations, concurrent use proceedings, and oppositions, 35 U.S.C. § 142, 15 U.S.C. § 1071, 37 CFR §§ 1.304, 2.145;

(L) appeals under section 71 of the Plant Variety Protection Act of 1970, 7 U.S.C. § 2461;

(M) certain actions of the Secretary of Veterans Affairs, 38 U.S.C. § 502;

(N) certain final orders of the Equal Employment Opportunity Commission relating to certain Presidential appointees, 2 U.S.C. § 1219(a)(3) and 28 U.S.C. § 2344;

(O) final decisions of the Office of Personnel Management under 5 U.S.C. § 8902(a)(g)(2);

(P) certain actions of the Board of Directors of the Office of Compliance of the U.S. Congress under 2 U.S.C. § 1407(a); and

(Q) final decisions of certain agencies pursuant to 28 U.S.C. § 1296.

Pursuant to 28 U.S.C. § 1292 (c) the Federal Circuit also has exclusive jurisdiction regarding:

a.   appealable interlocutory orders or decrees in cases where the court would otherwise have jurisdiction over an appeal; and

b.   appeals from judgments in civil actions for patent infringement otherwise appealable to the court and final except for accounting.

2.13

377

2.14

Under the provisions of 28 U.S.C. § 1292(d), the court:

a.  has exclusive jurisdiction of appeals from interlocutory orders granting or denying, in whole or in part, a motion to transfer an action to the Court of Federal Claims; and

b.  may, in its discretion, permit an appeal from an interlocutory order of a judge who certifies that there is a controlling question of law and a substantial ground for difference of opinion thereon, and that an immediate appeal may materially advance the ultimate termination of the litigation.

Pursuant to 38 U.S.C. § 7292(b)(1), the court has exclusive jurisdiction of certain interlocutory orders of the Court of Appeals for Veterans Claims.

Legislation having an impact on the Federal Circuit is contained in P.L. 105-339 (51021), October 31, 1998, Veterans Employment Opportunities Act of 1998, which provides a remedy through the Merit Systems Protection Board for those seeking review of the application of veterans preference rules to applicants for federal employment.

## UNITED STATES COURT OF INTERNATIONAL TRADE
*Salaries and Expenses*
### SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

|  | Mandatory | Discretionary | Total |
|---|---|---|---|
| **Total Fiscal Year 2014 Enacted Appropriation** | $1,916,000 | $19,200,000 | $21,116,000 |
| **Total Fiscal Year 2015 Appropriation Request** | $1,981,000 | $17,807,000 | $19,788,000 |
| **Total Requested Increase/Decrease from Fiscal Year 2014 Appropriation** | $65,000 | ($1,393,000) | ($1,328,000) |

APPROPRIATION LANGUAGE

UNITED STATES COURT OF INTERNATIONAL TRADE

SALARIES AND EXPENSES

For salaries of officers and employees of the court, services, and necessary expenses of the court, as authorized by law, [$19,200,000] *$17,807,000.*

In addition, there are appropriated such sums as may be necessary under current law for the salaries of the chief judge and judges of the court.

**SUMMARY OF REQUEST**
**UNITED STATES COURT OF INTERNATIONAL TRADE**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2015**
(Dollar amounts in thousands)

**Fiscal Year 2015 Resource Requirements:**

| | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|
| | FTE | Amount | FTE | Amount | FTE | Amount |
| Fiscal Year 2014 Obligations........................... | 9 | 1,916 | 71 | 19,775 | 80 | 21,691 |
| Utilization of Judiciary Information Technology Fund Balances................. | - | - | - | (575) | - | (575) |
| Fiscal Year 2014 Enacted Appropriation............. | 9 | 1,916 | 71 | 19,200 | 80 | 21,116 |

| Page No. | **Adjustments to Base to Maintain Current Services:** | | | | | | |
|---|---|---|---|---|---|---|---|
| | **A. Judges** | | | | | | |
| | Pay and benefit cost adjustments | | | | | | |
| 3.8 | 1. Annualization of 2014 pay adjustment | | | | | | |
| | a. Annualization of the 2014 pay increase (1.0% for three months)........... | - | 4 | - | - | - | 4 |
| | b. Annualization of judges' base pay adjustment (2.5 months)........... | - | 44 | - | - | - | 44 |
| 3.8 | 2. Proposed January 2015 pay adjustment (1.0% for nine months)........... | - | 12 | - | - | - | 12 |
| 3.8 | 3. Health benefits increase........... | - | 2 | - | - | - | 2 |
| 3.8 | 4. FICA increase........... | - | 3 | - | - | - | 3 |
| | **B. Court Support Personnel and Programs** | | | | | | |
| | Pay and benefit cost adjustments | | | | | | |
| 3.9 | 5. Annualization of 2014 pay adjustment (1.0% for three months)........... | - | - | - | 16 | - | 16 |
| 3.9 | 6. Proposed January 2015 pay adjustment (1.0% for nine months)........... | - | - | - | 48 | - | 48 |
| 3.9 | 7. Promotions and within-grade increases........... | - | - | - | 49 | - | 49 |
| 3.9 | 8. Health benefits increase........... | - | - | - | 40 | - | 40 |
| 3.9 | 9. FICA increase........... | - | - | - | 5 | - | 5 |
| 3.9 | 10. Workers' compensation cost........... | - | - | - | 37 | - | 37 |

3.2

## SUMMARY OF REQUEST
## UNITED STATES COURT OF INTERNATIONAL TRADE
### SALARIES AND EXPENSES
### FISCAL YEAR 2015
(Dollar amounts in thousands)

### C. Other Adjustments

| | | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|---|
| | | FTE | Amount | FTE | Amount | FTE | Amount |
| | General Inflationary Adjustments | | | | | | |
| 3.10 | 11. Increases in FPS building basic/specific security surcharges | | - | | 9 | | 9 |
| 3.10 | 12. GSA rent reduction | | - | | (1,476) | | (1,476) |
| 3.10 | 13. General inflationary increases and other cost | | - | | 85 | | 85 |
| 3.10 | 14. Reduction for non-recurring costs | | - | | (206) | | (206) |
| | Subtotal, Adjustments to Base to Maintain Current Services | - | 65 | - | (1,393) | - | (1,328) |
| | Total Fiscal Year 2015 Appropriation Required | 9 | 1,981 | 71 | 17,807 | 80 | 19,788 |

### Financing the Fiscal Year 2015 Request:

| | | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|---|
| | Total Appropriation Required, Fiscal Year 2015 | 9 | 1,981 | 71 | 17,807 | 80 | 19,788 |
| 3.10 | Utilization of Electronic Public Access Receipts and Judiciary Information Technology Fund | - | - | - | 569 | - | 569 |
| | Total Estimated Obligations, Fiscal Year 2015 | 9 | 1,981 | 71 | 18,376 | 80 | 20,357 |

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**SALARIES AND EXPENSES**
**Obligations by Activity ($000)**

| Activity | Fiscal Year 2013 Actual | Fiscal Year 2014 Estimate | Fiscal Year 2015 Request |
|---|---|---|---|
| **Salaries and Expenses, Total Obligations** | 20,998 | 21,691 | 20,357 |
| Unobligated Balance, Start of Year | | | |
| Judiciary Information Technology Fund | (1,227) | (1,080) | (537) |
| New Deposits | (485) | - | - |
| Unobligated Balance, End of Year | | | |
| Judiciary Information Technology Fund | 1,080 | 537 | - |
| **Total Direct Obligations** | 20,366 | 21,148 | 19,820 |
| Unobligated Balance, expiring | 46 | - | - |
| **Available Appropriation** | 20,412 | 21,148 | 19,820 |
| Less offices from | | | |
| Electronic Public Access | - | (32) | (32) |
| **Appropriation Required (Direct)** | 20,412 | 21,116 | 19,788 |

**Object Classification ($000)**

| | Description | Fiscal Year 2013 Actual | Fiscal Year 2014 Estimate | Fiscal Year 2015 Request |
|---|---|---|---|---|
| 11 | Personnel compensation | 6,738 | 8,477 | 8,452 |
| 12 | Personnel benefits | 1,767 | 2,341 | 2,342 |
| 13 | Benefits for Former Personnel | 0 | 0 | 0 |
| 21 | Travel | 110 | 150 | 153 |
| 22 | Transportation of things | 8 | 10 | 13 |
| 23 | Rent, communications and utilities | 9,694 | 8,269 | 6,793 |
| | *Rental payments to GSA* | 93 | 55 | 65 |
| | *Communications, utilities & misc. charges* | 15 | 20 | 18 |
| 24 | Printing and reproduction | | | |
| 25 | Other services | 1,425 | 1,634 | 1,666 |
| 25.3 | Building specific security surcharge | 548 | 548 | 548 |
| 26 | Supplies and materials | 35 | 70 | 90 |
| 31 | Equipment | 165 | 185 | 185 |
| 91 | Undefined Disbursements[1] | 400 | 32 | 32 |
| | **Total obligations[2]** | 20,998 | 21,691 | 20,357 |

1/ Deposited into JITF fund
2/ Includes JITF obligations of $632,000 in FY 2013, $575,000 in FY 2014, and $569,000 in FY 2015.

## UNITED STATES COURT OF INTERNATIONAL TRADE
### Salaries & Expenses
### Relation of Obligations to Outlays ($000)

| | Fiscal Year 2013 Actual | Fiscal Year 2014 Estimate | Fiscal Year 2015 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 20,998 | 21,691 | 20,357 | (1,334) |
| Obligated balance, start of year | 1,832 | 1,739 | 1,500 | (239) |
| Prior year recoveries | (869) | 0 | 0 | 0 |
| Obligated balance, end of year | (1,739) | (1,500) | (1,300) | 200 |
| Total Outlays | 20,222 | 21,930 | 20,557 | (1,373) |
| Less Judiciary Information Technology Fund Obligations | (632) | (575) | (569) | 6 |
| **Net Outlays** | **19,590** | **21,355** | **19,988** | **(1,367)** |

### Personnel Summary

| | Fiscal Year 2013 Actual | Fiscal Year 2014 Estimate | Fiscal Year 2015 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total compensable workyears: Full-time equivalent employment | 67 | 80 | 80 | 0 |

383

## UNITED STATES COURT OF INTERNATIONAL TRADE

### SALARIES AND EXPENSES

#### Summary of Mandatory Costs

| | Fiscal Year 2014 | | Fiscal Year 2015 [1] | | |
| --- | --- | --- | --- | --- | --- |
| | No. of Judgeships | Compensation and Benefits ($000) | No. of Judgeships | Compensation and Benefits ($000) | Increase ($000) |
| Article III Judges | 9 | 1,916 | 9 | 1,981 | 65 |

1/ The $65,000 increase includes $12,000 for the proposed fiscal year 2015 cost-of-living adjustment for judges.

3.6

384

## GENERAL STATEMENT AND INFORMATION

The United States Court of International Trade, with nine authorized Article III judgeships, has exclusive nationwide jurisdiction of civil actions against the United States, its agencies and officers, and certain civil actions brought by the United States, arising out of import transactions and the administration and enforcement of the federal customs and international trade laws. In keeping with its national jurisdiction, court may be held throughout the country.

The estimates under this title are to provide for the salaries of the judges and supporting personnel of the Court of International Trade, located in Manhattan, New York, and the necessary operating expenses of the Court. These operating expenses include internal courthouse security, Federal Protective Service (FPS) charges for basic and building specific security surcharges, GSA rent charges, travel, equipment maintenance contracts, cyclical maintenance of and upgrades to facilities, printing and binding, general office supplies, purchase of new /replacement office equipment and furniture, repair of existing equipment and furniture, access to legal research data bases, acquisition and maintenance of legal reference materials, and continuation of reports for fiscal year 2015.

Table 3.1 below provides a summary of the business of the Court for fiscal years 2008 through 2013.

### Table 3.1  Civil Action Cases

| Fiscal Year | Pending Beginning of Year | Received | Decided | Pending End of Year |
|---|---|---|---|---|
| 2008 | 2,106 | 477 | 472 | 2,111 |
| 2009 | 2,111 | 519 | 418 | 2,212 |
| 2010 | 2,212 | 432 | 424 | 2,220 |
| 2011 | 2,220 | 480 | 577 | 2,123 |
| 2012 | 2,123 | 442 | 343 | 2,222 |
| 2013 | 2,222 | 461 | 414 | 2,269 |

## JUSTIFICATION OF CHANGES

The fiscal year 2015 budget request for the Court totals $19,788,000, which includes $1,981,000 for mandatory expenses and $17,807,000 for discretionary expenses. The discretionary request of $17,807,000 is a 7.3 percent decrease from the fiscal year 2014 enacted discretionary appropriation of $19,200,000. Included in this total request is $6,793,092 for GSA rent charges, which represents an 18 percent rent decrease. The total increase adjustments reflect only the necessary adjustments to base to maintain current services.

3.7

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

The following narrative provides information and justification for each of the adjustments to base for the Court.

### A. JUDGES

*Pay and benefit cost adjustments*

1.   *Annualization of 2014 pay adjustment*

   *a. Annualization of the 2014 pay increase*

**Mandatory Increase: $4,000**

Federal pay rates increased by 1.0 percent in January 2014. The requested increase provides for the cost of three months (from October 2014 to December 2014) of the 2014 pay increase in fiscal year 2015.

   *b. Annualization of the judges' base pay adjustment*

**Mandatory Increase: $44,000**

Funds are requested to provide for the annualization (2.5 months) of the judges pay adjustment as a result of litigation that went into effect in mid-December 2013.

2.   *Proposed January 2015 pay adjustment*

**Mandatory Increase: $12,000**

As of January 2014, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.0 percent beginning on or after January 1, 2015. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2015 (from January 2015 to September 2015).

3.   *Health benefits increase*

**Mandatory Increase: $2,000**

Based on the information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 3.7 percent in January 2014. The requested increase annualizes the 2014 premium increase, and includes a nine-month provision for an estimated 4.0 percent increase anticipated for fiscal year 2015.

4.   *FICA Increase*

**Mandatory Increase: $3,000**

Funds are requested to provide for the base adjustment in employer contributions to the Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax. The salary cap for OASDI increased to $113,700 in January 2013, and increased to $117,000 in January 2014. The requested amount is needed to pay the agency contribution.

3.8

**B. COURT SUPPORT PERSONNEL**

*Pay and benefit cost adjustments*

**5.    Annualization of 2014 pay adjustment**

**Requested Increase: $16,000**

Federal pay rates increased by 1.0 percent in January 2014. The requested increase provides for the cost of three months (from October 2014 to December 2014) of the 2014 pay increase in fiscal year 2015.

**6.    *Proposed January 2015 pay adjustment***

**Requested Increase: $48,000**

As of January 2014, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.0 percent beginning on or after January 1, 2015. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2015 (from January 2015 to September 2015).

**7.    *Promotions and within-grade increases***

**Requested Increase: $49,000**

The requested increase provides for promotions and within-grade increases for personnel. The salary plan for judicial support personnel provides for periodic within-grade increases for staff who receive at least a satisfactory performance rating.

**8.    *Health benefits increase***

**Requested Increase:   $40,000**

Based on the information from the Office of Personnel Management, health benefit premium contributions are projected to increase by an average of 3.7 percent in January 2014. The requested increase annualizes the 2014 premium increase, and includes a nine-month provision for an estimated 4.0 percent increase anticipated for fiscal year 2015.

**9.    *FICA increase***

**Requested Increase: $5,000**

Funds are requested to provide for the increase in employer contributions to the Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax. The salary cap for OASDI increased to $113,700 in January 2013, and increased to $117,000 in January 2014. The requested amount is needed to pay the agency contribution.

**10.    *Workers' Compensation Costs***

**Requested Amount: $37,000**

Funds are requested to pay for direct dollar costs of workers' compensation and medical benefits paid under the Federal Employees Compensation Act.

3.10

## C. OTHER ADJUSTMENTS

*General Inflationary Adjustments and GSA rent costs*

**11.    *Increases in Federal Protective Service (FPS) basic/building specific security surcharges***

**Requested Increase: $9,000**

Based on the Department of Homeland Security's FPS's estimate, an additional $9,000 is needed to pay for increases in basic and building-specific security surcharge costs in fiscal year 2015. The building specific security surcharges provide for the Court's pro rata share of installing, operating, and maintaining the enhanced security for the Federal Complex in lower Manhattan.

**12.    *General Services Administration (GSA) space rental base reduction***

**Requested Decrease: $(1,476,191)**

The requested decrease reflects the reduction in the shell rate based on the 2012 appraisal. The total rent estimate for fiscal year 2015 is $6,793,092, or an 18 percent decrease from the fiscal year 2014 total rent charges.  This is the second year that the Court's rent charges decreased as the effects of the dramatically lower appraisal have become manifest in the Court's budget.  After fiscal year 2015, the Court expects more stable rent payments until the next appraisal cycle takes effect.

**13.    *General Inflationary increases in charges for contracts, services, supplies, security equipment maintenance contracts and other costs:***

**Requested Increase: $85,000**

The Court requests an increase of $85,000 to fund inflationary increases for operating expenses such as training, travel, printing, postage, supplies, materials, and internal security officers contracts

**14.    *Reduction for non-recurring costs***

**Requested Decrease: $(206,000)**

The requested decrease of $206,000 is for non-recurring costs from fiscal year 2014.

## D. FINANCING THE FISCAL YEAR 2015 REQUEST

**Carryforward Balance from the Judiciary Information Technology Fund**

**Estimated Obligations: $569,000**

At the beginning of fiscal year 2014, $1,112,373 was available in carryforward balances from the Judiciary Information Technology Fund, which includes a supplement of $32,000 from Electronic Public Access receipts.  Of this amount, the Court is planning to use $575,000 to purchase 3 network servers that will host the Court's virtual environment; continue its support of its video conferencing system, digital recording system, data network and

3.11

voice connections and Virtual Private Network System (VPN);
upgrade and support existing software applications, including the
on-line library/catalog inventory system; purchase new software
applications to ensure the continued operational efficiency of the
Court; replace computer desktops, monitors and printers in
accordance with the judiciary's cyclical replacement program;
provide wireless service, as well as broadband services for
laptops; support Court equipment, including the network and
core switches by the purchase of yearly leasing and maintenance
agreements; provide Court access to the Judiciary Data
Communications Network (DCN); purchase air-time for the
Court's 4 satellite phones that are to be used for emergency
purposes; and provide training to the Court's technical staff in
order to ensure that they are kept abreast of current trends in
information technology and have the ability to support updated
applications.

At the beginning of fiscal year 2015, the Court anticipates that
$537,000 will be available in carryforward balances and $32,000
will be deposited from the electronic public access account into
the Judiciary Information Technology Fund.  These funds will be
used to continue the Court's information technology initiatives
and to support the its short term and long term information
technology needs.

# COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES
## Summary of the Fiscal Year 2015 Budget Request

The *Courts of Appeals, District Courts, and Other Judicial Services* accounts fund most of the day-to-day operations and activities of the federal courts. The four accounts under this heading include:

◆ **Salaries and Expenses,** which funds the operating costs of appellate, district and bankruptcy courts, and probation and pretrial services offices;

◆ **Defender Services,** which funds the necessary expenses to provide defense representation under the Criminal Justice Act (CJA) for persons financially unable to obtain defense counsel;

◆ **Fees of Jurors and Commissioners,** which funds the fees and allowances of grand and petit jurors, and the compensation of jury and land commissioners; and

◆ **Court Security,** which provides for the necessary expenses to provide protective guard services and security equipment for judiciary facilities.

### The Fiscal Year 2015 Budget Request

The Judicial Conference requests $6,887.4 million in mandatory and discretionary appropriations in fiscal year 2015 for these four accounts, an increase of $238.8 (3.6 percent) over fiscal year 2014 enacted appropriations of $6,648.6 million. The fiscal year 2015 discretionary request totals $6,472.8 million, which is a 3.4 percent increase over the fiscal year 2014 discretionary appropriations level of $6,259.9 million.

The following table details the fiscal year 2014 enacted discretionary appropriations and fiscal year 2015 requested discretionary appropriations levels for the four accounts.

The requested increase is comprised of standard adjustments to base totaling $212.8 million and 213 FTE. There are no program increases. The table on page 4.2 summarizes the requested changes for each account.

*Appropriations for the Courts of Appeals, District Courts, and Other Judicial Services*

| ($000) | FY 2014 Discretionary Appropriations | FY 2015 Discretionary Request | Increase over FY 2014 | % Change |
|---|---|---|---|---|
| Salaries and Expenses[1] | $4,664,157 | $4,833,011 | $168,854 | 3.6% |
| Defender Services | $1,044,394 | $1,053,158 | $ 8,764 | 0.8% |
| Fees of Jurors | $53,891 | $55,827 | $ 1,936 | 3.6% |
| Court Security | $497,500 | $530,763 | $ 33,263 | 6.7% |
| Total | $6,259,942 | $6,472,759 | $212,817 | 3.4% |

[1] The Salaries and Expenses account includes $5.327 million in FY 2014 and $5.423 in FY 2014 for the Vaccine Injury Trust Fund.

**FY 2015 Summary of Requested Changes**

COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES

| | Salaries and Expenses FTE | Salaries and Expenses ($000) | Defender Services FTE | Defender Services ($000) | Fees of Jurors and Commissioners ($000) | Court Security FTE | Court Security ($000) | Total Court of Appeals, District Courts, and Other Judicial Services [1] FTE | Total Court of Appeals, District Courts, and Other Judicial Services [1] ($000) |
|---|---|---|---|---|---|---|---|---|---|
| FY 2014 Enacted Appropriation Level | 27,830 | 5,047,494 | 2,718 | 1,044,394 | 53,891 | 72 | 497,500 | 30,620 | 6,643,279 |
| FY 2014 Vaccine Injury Trust Fund | | 5,327 | | | | | | | 5,327 |
| FY 2014 Available Appropriation | 27,830 | 5,052,821 | 2,718 | 1,044,394 | 53,891 | 72 | 497,500 | 30,620 | 6,648,606 |
| **FY 2015 Adjustments to Base** | | | | | | | | | |
| *Judges:* | | | | | | | | | |
| - Pay and benefit cost adjustments | | 18,720 | | | | | | | 18,720 |
| - Additional senior judges | 156 | 22,467 | | | | | | 156 | 22,467 |
| - Increase in average number of filled Article III judgeships | 109 | 16,193 | | | | | | 109 | 16,193 |
| - Non-recurring costs of new FY 2014 judges | | (7,349) | | | | | | | (7,349) |
| *Court Personnel* | | | | | | | | | |
| - Pay and benefit cost adjustments | | 62,088 | | 12,484 | | | 195 | | 74,767 |
| - Annualization of case-budgeting positions funded in fiscal year 2014 | | | 2 | 403 | | | | 2 | 403 |
| *Other Changes* | | | | | | | | | |
| - Funding necessary to maintain current services | | 50,991 | | (7,372) | 1,324 | | 14,868 | | 59,811 |
| - Inflation (non-space-related) | | 18,743 | | 2,442 | 523 | | 113 | | 21,821 |
| - Vaccine Injury Trust Fund adjustment | | 96 | | | | | | | 96 |
| - Space related costs (includes inflation for space rental rates) | | (38) | | 1,210 | | | 151 | | 1,323 |
| - Integrated Workplace Initiative | | 10,000 | | | | | | | 10,000 |
| - Change in available jurors | | | | | 89 | | | | 89 |
| - FPS security service changes | | | | | | | 3,038 | | 3,038 |
| - FY 2015 court security officer wage adjustments | | | | | | | 12,914 | | 12,914 |
| - Additional court security officers in FY 2015 (10) | | | | | | | 1,171 | | 1,171 |
| - Adjustments to base for security systems and equipment | | | | | | | 813 | | 813 |
| - Savings related to case-budgeting positions | | | | (403) | | | | | (403) |
| - Second Chance Act requirements | | 2,884 | | | | | | | 2,884 |
| **Subtotal, FY 2015 Adjustments to Base** | 265 | 194,795 | 2 | 8,764 | 1,936 | | 33,263 | 267 | 238,758 |
| *Total Adjustments to Base, Mandatory* | *54* | *25,941* | | | *1,936* | | *33,263* | *54* | *25,941* |
| *Total Adjustments to Base, Discretionary* | *211* | *168,854* | *2* | *8,764* | | | | *313* | *212,817* |
| **FY 2015 Adjusted Base** | 28,095 | 5,247,616 | 2,720 | 1,053,158 | 55,827 | 72 | 530,763 | 30,887 | 6,887,364 |
| **Total Mandatory** | 1,849 | 414,605 | | | 55,827 | 72 | 530,763 | 1,849 | 414,605 |
| **Total Discretionary** | 26,246 | 4,833,011 | 2,720 | 1,053,158 | | | | 29,038 | 6,472,759 |
| **FY 2015 Appropriation Request** | 28,095 | 5,247,616 | 2,720 | 1,053,158 | 55,827 | 72 | 530,763 | 30,887 | 6,887,364 |

4.2

COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES
*Salaries and Expenses*
SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | Mandatory | Discretionary | Total |
|---|---|---|---|
| Fiscal Year 2014 Salaries and Expenses Enacted Appropriation | $388,664,000 | $4,658,830,000 | $5,047,494,000 |
| Vaccine Injury Compensation Trust Fund Appropriation | $0 | $5,327,000 | $5,327,000 |
| Total, Fiscal Year 2014 Available Appropriation | $388,664,000 | $4,664,157,000 | $5,052,821,000 |
| | | | |
| Fiscal Year 2015 Salaries and Expenses Appropriation Request | $414,605,000 | $4,827,588,000 | $5,242,193,000 |
| Fiscal Year 2015 Vaccine Injury Compensation Trust Fund Appropriation Request | $0 | $5,423,000 | $5,423,000 |
| Total, Fiscal Year 2015 Appropriation Request | $414,605,000 | $4,833,011,000 | $5,247,616,000 |
| | | | |
| Requested Increase from Fiscal Year 2014 Appropriation | $25,941,000 | $168,854,000 | $194,795,000 |

APPROPRIATION LANGUAGE

COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES

SALARIES AND EXPENSES

For the salaries of judges of the United States Court of Federal Claims, magistrate judges, and all other officers and employees of the Federal Judiciary not otherwise specifically provided for, necessary expenses of the courts, and the purchase, rental, repair, and cleaning of uniforms for Probation and Pretrial Services Office staff, as authorized by law, [$4,658,830,000] *$4,827,588,000* (including the purchase of firearms and ammunition), of which not to exceed $27,817,000 shall remain available until expended for space alteration projects and for furniture and furnishings related to new space alteration and construction projects[, and of which not to exceed $50,000,000 shall remain available until September 30, 2015, for cost containment initiatives: *Provided*, That the amount provided for cost containment initiatives shall not be available for obligation until the Director of the Administrative Office of the United States Courts submits a report to the Committees on Appropriations of the House of Representatives and the Senate showing that the estimated cost savings resulting from the initiatives will exceed the estimated amounts obligated for the initiatives]

In addition, there are appropriated such sums as may be necessary under current law for the salaries of circuit and district judges (including judges of the territorial courts of the United States), bankruptcy judges, and justices and judges retired from office or from regular active service.

In addition, for expenses of the United States Court of Federal Claims associated with processing cases under the National Childhood Vaccine Injury Act of 1986 (Public Law 99-660), not to exceed [$5,327,000] *$5,423,000*, to be appropriated from the Vaccine Injury Compensation Trust Fund.

5.1

SUMMARY OF REQUEST
SALARIES AND EXPENSES
FISCAL YEAR 2015
(Dollar amounts in thousands)

**Fiscal Year 2014 Resource Requirements:**

| | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|
| | FTEs | Amount | FTE | Amount | FTE | Amount |
| Fiscal Year 2014 Total Available Resources (includes Vaccine Injury Fund)............ | 1,795 | 388,664 | 26,035 | 5,056,679 | 27,830 | 5,445,343 |
| Fiscal Year 2013 Encumbered Carryforward ......................... | | - | | (52,999) | | (52,999) |
| Fiscal Year 2014 Financial Plan (includes Vaccine Injury Fund)......................... | 1,795 | 388,664 | 26,035 | 5,003,680 | 27,830 | 5,392,344 |
| Non-appropriated sources of funding: | | | | | | |
| Estimated Fiscal Year 2014 Fee Collections........................ | | - | | (204,473) | | (204,473) |
| Carryforward Balances from Fiscal Year 2013 into Fiscal Year 2014.................. | | - | | (115,050) | | (115,050) |
| Carryforward from the Judiciary Information Technology Fund................. | | | | (20,000) | | (20,000) |
| Fiscal Year 2014 Enacted Appropriation (includes Vaccine Injury Fund)................. | 1,795 | 388,664 | 26,035 | 4,664,157 | 27,830 | 5,052,821 |

5.2

| Page | Fiscal Year 2014 Base Appropriation (including Vaccine Injury Fund) | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|---|
| | | FTEs | Amount | FTE | Amount | FTE | Amount |
| | Fiscal Year 2014 Base Appropriation (including Vaccine Injury Fund)................. | 1,795 | 388,664 | 26,035 | 4,664,157 | 27,830 | 5,052,821 |
| | **Adjustments to Base to Maintain Current Services** | | | | | | |
| | **A. Judges** | | | | | | |
| | 1  Pay and benefit cost adjustments | | | | | | |
| 5.28 | | | | | | | |
| 5.29 | a. Annualization of January 2014 pay adjustment (1.0% for three months)............ | | 972 | | 315 | | 1,287 |
| 5.29 | b. Annualization of the judges' pay adjustment (2.5 months)........... | | 8,448 | | 2,924 | | 11,372 |
| 5.29 | c. Proposed January 2015 pay adjustment (1.0% for nine months) ........... | | 2,922 | | 950 | | 3,872 |
| 5.29 | d. Benefit increases........... | | 1,595 | | 594 | | 2,189 |
| 5.30 | 2. Senior judges (36 judges FTE/120 staff FTE) ........... | 36 | 7,939 | 120 | 14,528 | 156 | 22,467 |
| 5.31 | 3. Increase in average number of filled Article III judgeships (18 judges FTE and 91 staff FTE) | 18 | 4,065 | 91 | 12,128 | 109 | 16,193 |
| 5.31 | 4. Non-recurring costs associated with filled fiscal year 2014 judges (Article III judges)........... | | - | | (7,349) | | (7,349) |
| | **B. Court Personnel and Programs** | | | | | | |
| 5.33 | 5. Pay and benefit cost adjustments | | | | | | |
| 5.33 | a. Annualization of January 2014 pay adjustment (1.0% for three months)........... | | - | | 7,469 | | 7,469 |
| 5.33 | b. Proposed January 2015 pay adjustment (1.0% for nine months) ........... | | - | | 22,553 | | 22,553 |
| 5.33 | c. Promotions and within-grade increases........... | | - | | 22,634 | | 22,634 |
| 5.33 | d. Benefit increases........... | | - | | 9,452 | | 9,452 |
| 5.34 | 6. Funding necessary to maintain fiscal year 2014 service levels due to an anticipated decline in non-appropriated funds........... | | - | | 50,991 | | 50,991 |

5.3

**Page   C. Other Adjustments**

| Page | | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|---|
| | | FTEs | Amount | FTE | Amount | FTE | Amount |
| 5.34 | 7. Inflationary and miscellaneous adjustments................................ | | | | 18,743 | | 18,743 |
| 5.35 | 8. Vaccine Injury Compensation Trust Fund adjustment................. | | | | 96 | | 96 |
| 5.35 | 9. GSA space rental and related services....................................... | | - | | | | |
| 5.35 | a. Annualization of new fiscal year 2014 space........................ | | - | | 6,891 | | 6,891 |
| 5.35 | b. Adjustment to the GSA space rental base costs..................... | | - | | (13,916) | | (13,916) |
| 5.36 | c. New space to be delivered in fiscal year 2015..................... | | - | | 1,732 | | 1,732 |
| 5.36 | d. Anticipated savings from the footprint reduction effort........ | | - | | (7,000) | | (7,000) |
| 5.36 | e. Other space-related adjustments including tenant improvements/allocations... | | - | | 12,255 | | 12,255 |
| 5.40 | 10. Integrated Workplace Initiative ............................................... | | - | | 10,000 | | 10,000 |
| 5.40 | 11. Second Chance Act requirements.............................................. | | - | | 2,884 | | 2,884 |
| | **Subtotal, Adjustments to Base to Maintain Current Services.........** | 54 | 25,941 | 211 | 168,854 | 265 | 194,795 |
| | **Total Current Services Appropriation Required...........................** | 1,849 | 414,605 | 26,246 | 4,833,011 | 28,095 | 5,247,616 |
| | **Total Fiscal Year 2015 Appropriation Request.............................** | 1,849 | 414,605 | 26,246 | 4,833,011 | 28,095 | 5,247,616 |
| | **Total Appropriation Increase, Fiscal Year 2014 to Fiscal Year 2015.....** | 54 | 25,941 | 211 | 168,854 | 265 | 194,795 |

5.4

**Page** **Financing the Fiscal Year 2015 Request:**

| | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|
| | FTEs | Amount | FTE | Amount | FTE | Amount |
| **Total Appropriation Request, Fiscal Year 2015.........** | 1,849 | 414,605 | 26,246 | 4,833,011 | 28,095 | 5,247,616 |
| 5.41   12. Estimated Fiscal Year 2015 Fee Collections.............. | | - | | 208,532 | | 208,532 |
| 5.42   13. Anticipated Unencumbered Carryforward from Fiscal Year 2014.......... | | - | | 80,000 | | 80,000 |
| **Estimated Obligations, Fiscal Year 2015............** | 1,849 | 414,605 | 26,246 | 5,121,543 | 28,095 | 5,536,148 |

5.5

**COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES**

**Salaries and Expenses**

| Activity ($000) | FY 2013 | | | FY 2014 | | | FY 2015 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Direct | Offsetting Coll. | Total Oblig. | Direct | Offsetting Coll. | Total Oblig. | Direct | Offsetting Coll. | Total Oblig. |
| Appeals | 550,609 | 31,191 | 581,800 | 613,926 | 40,610 | 654,536 | 627,656 | 34,511 | 662,167 |
| District | 2,339,862 | 137,820 | 2,477,682 | 2,408,828 | 165,017 | 2,573,845 | 2,462,724 | 141,130 | 2,603,854 |
| Bankruptcy | 764,193 | 43,290 | 807,483 | 772,837 | 51,121 | 823,958 | 790,122 | 43,444 | 833,565 |
| Probation/Pretrial | 1,086,979 | 61,575 | 1,148,554 | 1,331,903 | 88,102 | 1,420,005 | 1,361,691 | 74,870 | 1,436,561 |
| Total Obligations | 4,741,644 | 273,875 | 5,015,519 | 5,127,494 | 344,850 | 5,472,344 | 5,242,193 | 293,955 | 5,536,148 |
| Anticipated Financial Plan Savings | | | | | (80,000) | (80,000) | | | |
| Revised Obligations | 4,741,644 | 273,875 | 5,015,519 | 5,127,494 | 264,850 | 5,392,344 | 5,242,193 | 293,955 | 5,536,148 |
| | | | | | | | | | |
| Unobligated Balance, Start of Year | | | | | | | | | |
| S&E No-Year Funds | (13,827) | | (13,827) | (8,919) | | (8,919) | | | |
| Information Technology Funds | (34,476) | | (34,476) | (71,081) | | (71,081) | | | |
| Fee Collections | | (161,591) | (161,591) | | (135,050) | (135,050) | | (80,000) | (80,000) |
| Prior Year Recoveries | | | | | | | | | |
| Salaries and Expenses | | (16,456) | (16,456) | | | | | | |
| Information Technology Funds | | | | | | | | | |
| Unobligated Balance, End of Year | | | | | | | | | |
| S&E No Year Funds | 8,919 | | 8,919 | | | | | | |
| Information Technology Funds | 71,081 | | 71,081 | | | | | | |
| Fee Carryforward | | 135,050 | 135,050 | | 80,000 | 80,000 | | | |
| | | | | | | | | | |
| Available Appropriation (Direct) | 4,773,341 | 230,878 | 5,004,219 | 5,047,494 | 209,800 | 5,257,294 | 5,242,193 | 213,955 | 5,456,148 |
| | | | | | | | | | |
| Transfer to Fees of Jurors | 3,500 | | 3,500 | | | | | | |
| | | | | | | | | | |
| Offsetting Collections | | | | | | | | | |
| Fee Collections | | (225,888) | (225,888) | | (204,473) | (204,473) | | (208,512) | (208,512) |
| Vaccine Injury Trust Fund | | (4,990) | (4,990) | | (5,327) | (5,327) | | (5,423) | (5,423) |
| | | | | | | | | | |
| Appropriation (Direct) | 4,776,841 | - | 4,776,841 | 5,047,494 | - | 5,047,494 | 5,242,193 | - | 5,242,193 |
| Mandatory | | | 334,722 | | | 388,664 | | | 414,605 |
| Discretionary | | | 4,442,119 | | | 4,658,830 | | | 4,827,588 |

5, 6

COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES
Salaries and Expenses
Obligations by Budget Object Class ($000)

| Description ($000) | FY 2013 | | | FY 2014 | | | FY 2015 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Direct | Offsetting Coll. | Total Oblig | Direct | Offsetting Coll. | Total Oblig | Direct | Offsetting Coll. | Total Oblig |
| 1100  Personnel compensation | 2,419,347 | 139,740 | 2,559,087 | 2,616,434 | 175,968 | 2,792,403 | 2,693,874 | 151,059 | 2,844,933 |
| 1200  Personnel benefits | 760,904 | 43,949 | 804,853 | 771,681 | 51,900 | 823,581 | 781,206 | 43,806 | 825,012 |
| 1300  Benefits for former personnel | 19,931 | 1,151 | 21,082 | 22,748 | 1,530 | 24,278 | 24,498 | 1,374 | 25,872 |
| 2100  Travel | 35,397 | 2,045 | 37,442 | 30,188 | 2,636 | 41,824 | 40,659 | 2,280 | 42,939 |
| 2200  Transportation of Things | 5,073 | 293 | 5,366 | 5,780 | 389 | 6,169 | 5,997 | 336 | 6,333 |
| 2310  Rental payments to GSA | 981,061 | 56,666 | 1,037,727 | 998,332 | 67,143 | 1,065,475 | 1,002,054 | 56,190 | 1,058,244 |
| 2320  Rental payments to others | 30,538 | 1,764 | 32,302 | 35,367 | 2,379 | 37,746 | 31,834 | 1,785 | 33,619 |
| 2330  Communications, utilities & misc | 121,907 | 7,041 | 128,948 | 134,388 | 9,038 | 143,427 | 139,679 | 7,833 | 147,512 |
| 2400  Printing and reproduction | 5,681 | 328 | 6,009 | 6,526 | 439 | 6,965 | 6,746 | 378 | 7,124 |
| 2500  Other services | 281,677 | 16,270 | 297,947 | 365,387 | 24,574 | 389,961 | 379,103 | 21,258 | 400,361 |
| 2600  Supplies and materials | 14,413 | 832 | 15,245 | 16,522 | 1,111 | 17,633 | 17,142 | 961 | 18,103 |
| 3100  Equipment | 65,715 | 3,796 | 69,511 | 115,140 | 7,244 | 122,884 | 119,402 | 6,695 | 126,097 |
| Total Obligations | 4,741,644 | 273,875 | 5,015,519 | 5,127,494 | 344,850 | 5,472,344 | 5,242,194 | 293,955 | 5,536,148 |
| Anticipated Financial Plan Savings | - | - | - | | (80,000) | (80,000) | | - | - |
| Revised Obligations | 4,741,644 | 273,875 | 5,015,519 | 5,127,494 | 264,850 | 5,392,344 | 5,242,194 | 293,955 | 5,536,148 |

5.7

5.8

## COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES
### SALARIES AND EXPENSES
#### Summary of Mandatory Obligations

| | FY 2014 | | FY 2015 1/ | | Increase ($000) |
|---|---|---|---|---|---|
| | No. of Authorized Judgeships | Compensation ($000) | No. of Authorized Judgeships | Compensation ($000) | |
| Circuit Judgeships | 167 | 36,681 | 167 | 39,422 | 2,741 |
| District Judgeships | 678 | 139,298 | 678 | 146,814 | 7,516 |
| Senior/Retired Judgeships | | 135,854 | | 148,153 | 12,299 |
| Bankruptcy Judgeships | 350 | 76,831 | 350 | 80,216 | 3,385 |
| **Total** | **1,195** | **388,664** | **1,195** | **414,605** | **25,941** |

1/ The requested increase of $25.9 million includes $2.9 million for the proposed fiscal year 2015 cost-of-living adjustment for judges.

COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES
Summary of Personnel Compensation and Benefits by Activity

| Program | FY 2013 Actual | | FY 2014 Estimate | | Adj to Base | | FY 2015 Workload Adj | | Total Request | |
|---|---|---|---|---|---|---|---|---|---|---|
| | FTE | Amount ($000) | FTE | Amount ($000) | FTE | Amount ($000) | FTE | Amount ($000) | FTE | Amount ($000) |
| **Appeals** | | | | | | | | | | |
| **Judges** | | | | | | | | | | |
| Article III Judges | | | | | | | | | | |
| Active | 152 | 31,167 | 160 | 34,081 | 4 | 2,301 | | | 164 | 94,422 |
| Senior | 131 | 22,804 | 124 | 25,615 | 7 | 2,593 | | | 131 | 29,207 |
| Retired | 17 | 3,206 | 18 | 4,289 | | 126 | | | 18 | 4,406 |
| **Court Staff** | | | | | | | | | | |
| Article III Judges Staff | 1,106 | 104,980 | 1,199 | 111,573 | | 1,103 | | | 1,104 | 113,676 |
| Circuit Executives | 271 | 35,842 | 255 | 36,041 | | 746 | | | 255 | 36,789 |
| Clerks Offices | 629 | 61,456 | 568 | 62,140 | | 1,288 | | | 568 | 63,428 |
| Staff and Prejudgment Attorneys | 548 | 71,373 | 529 | 71,993 | | 1,531 | | | 529 | 73,526 |
| Librarians | 249 | 26,972 | 249 | 28,402 | | 488 | | | 249 | 28,990 |
| Bankruptcy Appellate Panels | 17 | 1,932 | 15 | 1,864 | | 39 | | | 15 | 1,903 |
| **Total Appeals** | 3,109 | 360,123 | 3,076 | 380,580 | 47 | 12,960 | | | 3,123 | 393,540 |
| **District** | | | | | | | | | | |
| **Judges** | | | | | | | | | | |
| Article III Judges | | | | | | | | | | |
| Active | 609 | 118,379 | 640 | 139,298 | 14 | 7,516 | | | 655 | 146,814 |
| Senior | 456 | 80,703 | 446 | 93,502 | 29 | 8,410 | | | 475 | 101,921 |
| Retired | 68 | 11,046 | 59 | 12,468 | | 999 | | | 59 | 13,427 |
| Magistrate Judges | 552 | 107,311 | 551 | 123,598 | | 4,217 | | | 551 | 127,864 |
| Court of Federal Claims Judges | 15 | 3,273 | 17 | 3,061 | | 67 | | | 17 | 3,128 |
| **Court Staff** | | | | | | | | | | |
| Article III Judges Staff | 2,924 | 310,757 | 3,044 | 324,266 | 144 | 14,412 | | | 3,187 | 338,697 |
| Magistrate Judges Staff | 1,088 | 130,535 | 1,087 | 111,134 | | 2,889 | | | 1,087 | 144,023 |
| Federal Claims Judges Staff | 58 | 5,902 | 63 | 6,953 | | 252 | | | 63 | 7,204 |
| Clerks Offices | 5,763 | 573,285 | 5,465 | 585,316 | | 11,994 | | | 5,495 | 597,310 |
| Pro Se and death penalty | 403 | 62,121 | 786 | 60,664 | | 1,258 | | | 386 | 61,922 |
| Court Reporters | 644 | 80,307 | 664 | 83,198 | | 1,461 | | | 644 | 86,659 |
| Court Interpreters | 98 | 15,106 | 90 | 14,907 | | 444 | | | 90 | 15,351 |
| **Total District** | 12,707 | 1,498,538 | 12,542 | 1,578,015 | 218 | 56,408 | | | 12,759 | 1,614,422 |
| **Bankruptcy** | | | | | | | | | | |
| **Judges** | | | | | | | | | | |
| Bankruptcy Judges | 349 | 67,026 | 349 | 76,831 | | 3,385 | | | 349 | 80,216 |
| **Court Staff** | | | | | | | | | | |
| Bankruptcy Judges Staff | 795 | 87,634 | 779 | 89,940 | | 1,880 | | | 779 | 91,820 |
| Clerks | 3,821 | 380,379 | 3,415 | 356,849 | | 7,393 | | | 3,414 | 364,242 |
| Bankruptcy Administration | 54 | 6,665 | 53 | 6,122 | | 110 | | | 53 | 6,231 |
| **Total Bankruptcy** | 4,983 | 550,641 | 4,594 | 529,742 | | 12,777 | | | 4,594 | 542,519 |
| **Probation/Pretrial Services** | 7,044 | 944,864 | 7,620 | 962,067 | | 20,104 | | | 7,620 | 982,171 |
| **Total Judges** | 2,318 | 445,307 | 2,363 | 514,973 | 54 | 30,725 | | | 2,417 | 545,698 |
| **Total Chambers** | 6,337 | 701,730 | 6,317 | 724,530 | 180 | 23,814 | | | 6,497 | 748,344 |
| **Total Court Staff** | 20,087 | 2,207,129 | 18,950 | 2,211,982 | 31 | 47,709 | | | 18,981 | 2,263,691 |
| **GRAND TOTAL** | 28,742 | 3,354,166 | 27,630 | 3,455,485 | 265 | 102,248 | | | 28,095 | 3,557,633 |

5.10

COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES
Salaries and Expenses
Relation of Obligations to Outlays ($000)

| | FY 2013 Actual | FY 2014 Estimate | FY 2015 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total Obligations | 5,015,519 | 5,392,344 | 5,536,148 | 143,804 |
| Obligated balance, start of year | 206,831 | 295,317 | 326,409 | 31,092 |
| Change in uncollected payments | (12,708) | | | |
| Obligated balance, end of year | (295,317) | (326,409) | (334,009) | (7,600) |
| **Total Outlays** | **4,914,325** | **5,361,252** | **5,528,548** | **167,296** |
| Less offsets from: | | | | |
| Fee Collections and Other Carryforward | (268,885) | (259,523) | (288,532) | (29,009) |
| Use of JITF No-Year Balances | (36,605) | (71,081) | 0 | 71,081 |
| Vaccine Injury Trust Fund | (4,990) | (5,327) | (5,423) | (96) |
| **Net Outlays** | **4,603,845** | **5,025,321** | **5,234,593** | **209,272** |

## GENERAL STATEMENT AND INFORMATION

Funds appropriated for the Salaries and Expenses account are for the salaries, benefits, and other operating expenses of judges and supporting personnel for the United States courts of appeals, district courts, bankruptcy courts, United States Court of Federal Claims, and United States probation and pretrial services offices. This account makes up nearly 72 percent of the judiciary's total appropriations request, and 76 percent of the *Courts of Appeals, District Courts and Other Judicial Services* request. It supports 2,417 judges, 6,697 chambers staff, and 18,981 court support staff positions located throughout the United States in 652 federal court buildings and facilities (excludes Defender Services Offices).

### Fair and Efficient Judicial Process

The rulings of the federal courts protect the rights and liberties guaranteed by the Constitution. Through fair and impartial judgements, the federal courts interpret and apply the law to resolve disputes. The courts of appeals, district courts, bankruptcy courts, and federal probation and pretrial services offices all work to ensure a fair and independent judicial process.

The district court is responsible for administering justice in civil and criminal cases under federal jurisdiction in 94 judicial districts throughout the United States and its territories. The public benefits from effective and efficient district courts by having criminal defendants processed through the criminal justice system and by having civil disputes resolved quickly and fairly.

The 94 judicial districts are organized into 12 regional circuits, each of which has a United States court of appeals. The appellate court is responsible for hearing appeals from the district courts and the bankruptcy appellate panel (if one exists) located within its circuit, as well as appeals from certain federal administrative agencies and, in limited situations, direct appeals from bankruptcy courts. The appellate courts also have original jurisdiction in some categories of cases. A party has the right to appeal every federal case in which a district court enters a final judgement. When an appeal is filed, a court of appeals reviews the decision and record of proceedings in the lower court or administrative agency. The court of appeals either affirms, reverses or remands the case back to the original court. The court of appeals will issue a written order or opinion in each case. Appeals from the courts of appeals may be taken to the United States Supreme Court. That court, unlike the courts of appeals, can decide which cases it wants to hear. The Supreme Court can remand cases to the court of appeals or decide to affirm or reverse the court of appeals.

Through the bankruptcy courts, the legal system protects business and individual debtors, as well as their creditors, as intended by law. The bankruptcy court is responsible for providing a legal process for dealing with the debt problems of individuals and businesses through cases filed under one of the chapters of Title 11 of the United States Code, which comprise the federal bankruptcy laws. Giving debtors the ability to construct a plan for repaying creditors, or a "fresh start," as appropriate under the law, is a key purpose of the bankruptcy code as is providing an orderly and equitable process for repayment to creditors.

The federal probation and pretrial services system assists the federal courts in the fair administration of justice. Probation and pretrial services officers provide the courts with verified, objective pretrial services and presentence reports. The courts rely on those reports to make release and sentencing decisions and to provide the parties with notice of all relevant release and sentencing issues. The presentence reports are also used by the U.S. Attorneys' offices to locate assets to be seized in relation to any fines, restitution, or assessments ordered, while the Federal Bureau of Prisons relies on the presentence reports to guide its handling of defendants sentenced to incarceration.

An unprecedented amount of resources continues to be allocated to secure the border and combat the flow of drugs and weapons. Funding continues to be provided to deploy surveillance and detection technology and unmanned aircraft system operations to cover the entire Southwest Border. The Department of Homeland Security (DHS) has more than doubled the number of border patrol agents from about 9,100 in 2001 to more than 18,500 today. In addition, DHS now screens 100 percent of southbound rail shipments for illegal weapon, drugs and cash and has expanded unmanned coverage to the entire Southwest border. DHS has also increased security improvements along the Northern Border, investing additional border patrol agents, technology and infrastructure. There are almost 2,200 border patrol agents on the Northern Border, a 500 percent increase since 2001, and another 3,700 custom border patrol officers managing the flow of people and goods across ports of entry along the Northern border. Over 1,000 miles along the Northern border is currently patrolled by unmanned aircraft. Efforts to combat human smuggling and weapons trafficking on the Southwest Border have increased over the last several years. In fiscal year 2012, there were more than 894 human trafficking investigations which resulted in more than 967 criminal arrests, 559 indictments and 381 convictions.

During the three year period between 2009 and 2012, DHS has seized 39 percent more drugs, 71 percent more currency and 189 percent more weapons along the Southwest border as compared to fiscal years 2005 through 2008. All of these enforcement efforts continue to lead to a high level of immigration and custom related criminal cases in Federal court.

The DOJ continues its efforts to combat violations of immigration law. DOJ provides prosecutorial activities along the Southwest Border and operational funding to support

**Immigration and Drug Enforcement**

During the one-year time period ending in June 2013, defendants charged with immigration offenses decreased nearly five percent from 2012 levels. It appears this may have a few causes. First, because of the struggling U.S. economy, there may be fewer illegal immigrants willing to risk illegal entry. Second, the fence along the border with Mexico as well as other enforcement efforts may be having a deterrent effect on illegal crossings.

Immigration defendants remain a large part of the criminal filing category in federal courts. Since 2008, immigration defendants have only been exceeded by the number of drug defendants. For 2013, over 31 percent of all drug defendants were charged in the five Southwest border districts. This is approximately a three percent increase in that number since 2009. For 2013, 85 percent of all immigration defendants were charged in the five Southwest border districts representing an 11 percent increase over 2012.

Although the bulk of these immigration cases are in the five federal judicial districts (Arizona, California-Southern, New Mexico, Texas-Southern, and Texas-Western) along the Southwest border, 26 percent of all immigration cases were in the other 89 district courts. The processing of criminal defendants requires courts to defer action on civil cases and use the court's available resources to process the criminal workload. The criminal justice focus along the Southwest border requires the judges and staff from other districts to assist with the courts' dockets. In most instances, there is a need for court interpreter support at every stage of the criminal case process. It is expected that immigration and drug enforcement will continue along the Southwest border as well as in other parts of the country.

5.12

The volume of work for probation and pretrial services is dictated by prosecutions brought by U.S. Attorneys' offices and the number of inmates released by the Federal Bureau of Prisons (BOP). Of the 101,304 defendants investigated (activated) by pretrial services in the 12-month period ending June 2013, 54 percent were non-citizens of the United States or their citizenship could not be determined. Coupled with the volume of work related to immigration cases, there is an increase in complexity. A significant challenge for the probation and pretrial services officers is the weak tie to the community of defendants and offenders who are illegal or temporary aliens and who often have limited involvement with mainstream elements in society. A defendant's illegal alien status clearly complicates the pretrial service officer's ability to find less costly, non-custodial options that will allow for the defendant's pretrial release. Another problem related to immigration cases is the need to coordinate interviews with court-certified interpreters, resulting in additional time and costs.

For various reasons, not all alien offenders are deported upon being convicted of a federal crime. In fact, more than 5,000 offenders currently under active post-conviction supervision are listed as non-citizens of the United States. This includes confirmed "illegal aliens" and others whose immigration status is still being litigated. In many instances, as immigration authorities process their amnesty and related applications, alien-offenders remain in a legal limbo with no authority to secure employment or enroll in school. This places the probation officer in a situation where the conditions of supervision, which require gainful employment or pursuit of education, are at odds with immigration rules. Officers struggle to minimize the opportunities for recidivism while trying to stabilize offenders' living situations pending final action by immigration authorities.

agencies, including the Federal Bureau of Investigation, United States Marshals Service, Drug Enforcement Administration and the Bureau of Alcohol, Tobacco, Firearms and Explosives. Along with existing efforts, DOJ plans on combating Southwest Border violence and dismantling drug cartels that are driving an increase in violent crime, drug trafficking and money laundering. These efforts will result in an increased workload for the district courts which will likely continue well into the future.

Immigration cases in the courts of appeals, generally from denials of relief from asylum, are adjudicated through the federal immigration courts and the Board of Immigration Appeals (BIA) at DOJ. While the number of filings have decreased 43 percent from their peak in 2006, these cases continue to demand extensive resources and are a far greater share of total caseload in recent years. Terminations of these appeals have not kept up with filings, resulting in pending BIA appeals increasing from 1,466 in 2001 to 7,225 in 2013 (an increase of 435 percent). The cumulative effect of these filings has impacted both the judges and staff in the courts of appeals. Courts have revised case-review processes to accommodate the volume of petitions for review from the BIA. These cases often require *de novo* review of complex agency records and require additional time for judges and staff. The courts have had to develop greater expertise in this area and some courts have created immigration specialists. These cases require clerks offices to handle a large number of records from DOJ and process numerous motions per case.

---

[1] An appeal in which the appellate court uses the trial court's record but reviews the evidence and law without deference to the trial court's rulings.

## Probation and Pretrial Services Program

The Probation and Pretrial Services program has ongoing initiatives to enhance and promote community safety, and reduce recidivism. A summary of these initiatives and legislative and administrative factors that influence workload is provided below.

### Community Safety

To protect the community, federal probation and pretrial services officers supervise federal defendants and offenders conditionally released to the community on pretrial services supervision, probation, and supervised release. Although federal parole has been abolished, probation officers continue to supervise parolees who were sentenced when parole was available. Officers monitor compliance with conditions as required by statute and court order. They have frequent face-to-face contact with persons under supervision, and conduct unannounced home, employment, and community inspections. During these contacts, officers may seize any contraband in plain view and, with the permission of the court, conduct searches as needed. In cases where the supervision process exposes evidence of recidivism or the defendant/offender engaging in risky behavior (e.g., associating with known felons), the officer acts quickly and preemptively by working with the court to fashion a new judicial order that is both corrective and restrictive.

To provide the community with the ultimate protection from recidivism, officers encourage positive, long-term behavioral change in persons under supervision. Officers provide or arrange for life skills training, substance abuse testing and treatment, mental health treatment, and other needed services for persons under supervision. They also help supervisees find

and maintain gainful employment, pay their debts, and support their dependents. Officers often are successful in bringing about positive change because they can offer significant incentives. Noncompliant behavior can be sanctioned by possible incarceration, while positive behavior can be rewarded with revised conditions of supervision, early termination, and even letters of recommendation to state agencies who adjudicate collateral consequences to a criminal conviction.

During the 12-month period ending June 2013, the BOP released 48,688 inmates to the supervision of probation officers in the community. Combined with releases from previous years and probation cases, the daily supervision population reached 132,362 during that same period. The BOP's population now exceeds 216,044 inmates with nearly all of these inmates eventually to be released to terms of supervision.

### Outcome Measurement Programs

The federal probation and pretrial services system is committed to measuring and acting on outcomes, with a key outcome being reduced recidivism among persons currently and formerly supervised by probation officers. Individual districts have partnered with local universities to study special in-district programs, while the judiciary as a whole has developed the capacity for systematic long-term studies.

The challenge to all criminal justice researchers is the absence of a single, uniform source for arrest and disposition data, and the varied format and content of the incomplete information that is available. Local and state jurisdictions collect, report and share criminal justice data differently. To overcome this problem, the judiciary has created an automated program that collects arrest and disposition data from multiple sources and

interprets the results despite the variation in format and content of the underlying records. The judiciary also has its probation and pretrial services officers using a single case management system which allows for the collection of comprehensive data from all 94 districts. As a result, researchers are studying - on a larger scale than ever before - the relationship between recidivism rates and probation officers' case strategies and interventions.

Supervision Interventions Provided to Defendants and Offenders

Officers provide interventions to defendants and offenders that mitigate their risk of re-offending. Those interventions are commensurate with the overall risk level of the defendant or offender, and target specific criminogenic needs identified by actuarial assessment instruments and clinical assessments. These interventions often include treatment for mental health or substance abuse, and sex offender disorders, and cognitive-behavioral therapies that address dysfunctional thinking patterns that may lead to criminal behaviors. Other interventions are designed to monitor defendants and offenders to ensure that they are in compliance with the conditions of supervision, and to allow officers to intervene proactively. For example, location monitoring, if ordered by the court, may be used to monitor the whereabouts of the defendant and offender to ensure that others in the community are not at risk.

Location Monitoring Program

Courts may impose location restrictions on defendants and offenders as part of pretrial and post-conviction supervision terms. Probation and pretrial services officers use a combination of new technologies and traditional supervision work to verify defendants' and offenders' compliance with such conditions. Some of these new technologies include

voice verification systems, radio frequency monitoring devices and global positioning systems.

The voice verification system is an automated system that intermittently places calls to the supervisee's "land line" phones (usually at his or her residence). The supervisee's verbal response to the call is compared to that pre-recorded in the system to confirm that it is the supervisee who answered the phone and is at the approved location. The voice verification system is usually used in low-risk cases where the supervisee is serving a period of home detention or curfew.

Radio frequency (RF) technology verifies the presence of a defendant/offender at an authorized location using a transmitter and receiver. This technology is ideal for continuous monitoring in the home. Approximately 5,531 defendants and 7,922 offenders were monitored via RF technology in fiscal year 2013.

The global positioning system (GPS) uses satellites and triangulation to monitor a defendant/offender's location in the community. GPS is usually reserved for higher-risk cases that involve prohibitions on travel to certain locations (e.g., schools, high crime areas, home of victims or witnesses) or that require the supervisee to be at specific locations outside the home at a specific time (e.g., place of employment or drug treatment). There are two types of GPS units: active and passive. The active GPS unit monitors a supervisee's movement and immediately relays the information to the probation/pretrial services office. The passive GPS unit monitors the supervisee's movement and records it for later download by the probation/pretrial service office. Approximately 2,418 defendants and 1,382 offenders were monitored via GPS technology in fiscal year 2013.

5.15

## Legislative and Administrative Changes

Legislative and administrative changes influence the workload of probation and pretrial services officers. Each statutory and sentencing guideline change generates a new line of interpretive case law and *ex post facto*[2] issues that must be researched and understood by officers as part of their pretrial and presentence duties. Prior to 1984, there were few significant changes in the law pertaining to federal sentencing. However, following enactment of the Comprehensive Crime Control Act of 1984, which revamped federal pretrial release and sentencing, there have been more than 15 significant legislative modifications. For example, in recent years, legislation related to the prosecution, detention, sentencing, and supervision of sexual offenders (e.g., PROTECT Act, Adam Walsh Child Protection and Safety Act, KIDS Act of 2008) has placed new responsibilities on probation and pretrial services officers. The U.S. Sentencing Guidelines have been amended 770 times since their effective date of November 1, 1987.

As part of the judiciary's cost-containment efforts, the Conference reviewed several statutory requirements that cause the courts to spend money, but are obsolete, redundant, ineffective, or otherwise an impediment to savings. Noting that the statutes in question could be amended without any loss in the quality of services provided, the Conference has agreed to seek the following amendments:

*Mandatory Electronic Monitoring Condition.* Section 3142(c) of title 18, United States Code, requires a court to impose electronic monitoring as a condition of pretrial release if a

---

[2] A law that retroactively changes the legal consequences of acts committed or the legal status of facts and relationships that existed prior to enactment of the law.

defendant is charged with certain sex offenses involving a minor victim. This condition is required even if the court imposes a more restrictive condition, such as admission to a secure residential treatment program. The Conference is seeking an amendment to 18 U.S.C. § 3142(c) to allow a court to waive the electronic monitoring condition if a more restrictive condition of pretrial release is imposed.

*Pretrial Services Bail Reports.* Section 3154(1) of title 18, United States Code, requires a bail report on each person charged with a felony. However, a bail report would have little or no bearing in cases where the defendant has no chance of being released pending trial, e.g., he or she is serving a sentence on another charge. The Conference is seeking an amendment to 18 U.S.C. § 3154(1) to allow a court to waive the preparation of the bail report in all cases where the report would have little or no bearing on the court's release decision.

*Pretrial Services Annual Report.* The Conference is seeking an amendment to 18 U.S.C. § 3155 to eliminate the requirement that the chief pretrial services officer (or chief probation officer of a consolidated office) submit an annual report to the Director of the Administrative Office concerning the administration and operation of pretrial services. Such reports are obsolete in light of advances in information technology systems that make data from the Probation/Pretrial Services Automated Case Tracking System (PACTS) database available to the Administrative Office on a nightly basis.

*Sharing Services Among Districts.* The Conference is seeking an amendment to 18 U.S.C. § 3602 to allow a probation officer appointed in one district to perform services for another district with the consent of the appointing court. This would facilitate the sharing across district lines of officer positions requiring special knowledge, such as sex-offender specialists, cyber-crime specialists, and search team members.

## Bankruptcy Courts

Bankruptcy filings stabilized and then began decreasing after several years of significant increases. Nationwide, filings decreased by 13 percent in 2013 from 2012; this followed a 14 percent decrease between 2011 and 2012. Filings in 2014 are expected to be down 10 percent from 2013. Since bankruptcy filings have historically increased after credit restrictions ease with economic recovery, the actual number of filings will likely continue at a high level for some time despite the recent declines. In the fall of 2013, it was eight years since the implementation of BAPCPA, and debtors who filed chapters 7 and 11 anticipating changes in the bankruptcy code are once again eligible for discharges. These so-called "repeat filers" may cause an increase in the 2014 and 2015 filings as these debtors continue to recover from the worst recession in U.S. history.

### Chapter 7 Bankruptcy Cases

Chapter 7 of the Bankruptcy Code provides an avenue for discharging certain debts to give individual debtors a fresh start, leaving no liability for discharged debts. Consumer bankruptcy petitions are driven by life crises including, job loss, large medical bills, divorce, and natural disasters. The bankruptcy courts are expected to handle over 675,000 chapter 7 cases during the 12 months ending June 2014. While one of the purposes of chapter 7 is to provide for a discharge of debts (after the liquidation of non-exempt assets), individual debtors must qualify for relief under chapter 7 through a means test. If the debtor's current monthly income is more than the state median, the Bankruptcy Code requires application of the means test to determine whether the chapter 7 filing is presumptively abusive. If so, the case can be dismissed or converted to a more complex, and time consuming chapter 13 filing where the filer is required to repay at least some of the

*Presentence Notice to Victims.* The Mandatory Victims Restitution Act of 1996, Public Law No. 104-132, requires probation officers to provide the victims of an offense with notice of the defendant's conviction, the sentence date, and the victim's opportunity to submit an impact statement, while the Crime Victims Rights Act, Public Law No. 108-405, places similar requirements on officers and employees of the Department of Justice and certain other executive branch agencies. To avoid duplication of effort and provide victims with a single source of contact, the Conference is seeking an amendment to 18 U.S.C. § 3664(d)(2) to waive the requirement that a probation officer provide the above-described notice if a representative of an Executive Branch agency has already provided such notice.

*Early Termination of Compassionately Released Offenders.* Section 3583(e)(1) of title 18, U.S. Code, requires at least one year of supervised release after incarceration before the supervision can be terminated early, and specifies that early termination may occur only when warranted by the conduct of the defendant released and the interest of justice. However there are cases where early termination would be appropriate prior to one year, and based on factors independent of the offender's conduct, for example where defendants are physically incapacitated, dying, or aged to the point that they are no longer a risk to the community and cannot meaningfully engage in the supervision process. Noting that it makes little policy or financial sense to keep such cases under supervision, the Criminal Law Committee recommended that the Judicial Conference seek legislation that permits the early termination of supervision terms, without regard to the limitations in 18 U.S.C. § 3583(e)(1), for an inmate who is compassionately released from prison under section 3582 ( c) of that title. At its September 2013 session, the Conference adopted the Committee's recommendation.

| Court Support Staffing Table (FTE) 1/ | | | |
| FY 2012 | FY 2013 | FY 2014 | FY 2015 |
| --- | --- | --- | --- |
| Funded | 21,300 | 20,050 | 18,950 | 18,981 |
| Actual 2/ | 21,071 | 20,087 | N/A | N/A |

1/ Includes circuit and appellate court offices, bankruptcy clerks' offices, district clerks' offices, probation/pretrial services offices, interpreters, and reporters.

2/ The FY 2013 actual FTE of 20,087 represents the "burn rate" and not the actual on-board level at the end of fiscal year 2013 of 19,418. The "burn rate" reflects the average FTE in the courts and probation and pretrial services offices throughout the fiscal year. The "burn rate" also can be higher than the funded FTE level due to furloughs and one-time reprogramming of non-salary funds.

Table 5.1 on page 5.19 displays the caseload factors for each of the 12-month periods ending June 30, 2007 through June 30, 2013 (projected).

5.18

debt over a period lasting up to three to five years. All of these factors have increased the workload for bankruptcy courts.

Chapter 11 Bankruptcy Cases

Filings under chapter 11 of the Bankruptcy Code offer the opportunity to reorganize businesses or to liquidate them in an orderly manner. In chapter 11 cases, bankruptcy courts are directly involved in reviewing and approving complicated business reorganization plans and asset sales focusing on the goal of achieving a benefit for all interested parties. The bankruptcy courts expect to handle almost 10,000 chapter 11 cases during the 12 months ending June 2014.

Chapter 13 Bankruptcy Cases

Chapter 13 of the Bankruptcy Code assists individual debtors who have regular income to adjust their debts within a repayment plan. Under such a plan, debtors can save their homes from foreclosure by allowing them to catch up past-due payments. The bankruptcy courts are expected to handle more than 300,000 chapter 13 cases during the 12 months ending June 2014.

Workload in the Courts

The judiciary's workload is, for the most part, generated by forces outside of its control, and the workload in some programs continues to remain at or near record high levels. The funding request for court support staff increases slightly to take into account workload changes and partial restoration due to sequestration. Even if the fiscal year 2015 request is funded, clerks and probation and pretrial services officers will still be operating with fewer staff than were on-board in fiscal year 1999.

Table 5.1 Comparison of Judiciary Workload Factors

| WORKLOAD FACTOR | 12 months ending June 30, 2008 Actual | 12 months ending June 30, 2009 Actual | 12 months ending June 30, 2010 Actual | 12 months ending June 30, 2011 Actual | 12 months ending June 30, 2012 Actual | 12 months ending June 30, 2013 Actual | 12 months ending June 30, 2014 Projected |
|---|---|---|---|---|---|---|---|
| Criminal Filings | 70,024 | 75,324 | 78,213 | 78,764 | 73,455 | 69,642 | 65,400 |
| Year-to-Year Change: | 0% | 8% | 4% | 1% | -7% | -5% | -6% |
| Criminal Defendants Filed | 91,782 | 96,718 | 100,031 | 102,695 | 96,915 | 91,812 | 87,800 |
| Year-to-Year Change: | 0% | 5% | 3% | 3% | -6% | -5% | -4% |
| Probation: Persons Under Supervision | 120,051 | 123,839 | 126,642 | 129,319 | 132,785 | 132,362 | 131,900 |
| Year-to-Year Change: | 0% | 3% | 2% | 2% | 3% | -0.3% | -0.3% |
| Pretrial Services: Cases Activated | 98,862 | 103,604 | 110,671 | 107,197 | 105,852 | 102,457 | 104,200 |
| Year-to-Year Change: | 0% | 5% | 7% | -3% | -1% | -3% | 2% |
| Bankruptcy Filings | 967,831 | 1,306,315 | 1,572,597 | 1,529,560 | 1,311,602 | 1,137,978 | 1,028,400 |
| Year-to-Year Change: | 0% | 35% | 20% | -3% | -14% | -13% | -10% |
| Appellate Filings | 59,406 | 59,399 | 56,097 | 55,353 | 57,699 | 56,360 | 56,600 |
| Year-to-Year Change: | 0% | 0% | -6% | -1% | 4% | -2% | 0.4% |
| Civil Filings | 256,354 | 257,204 | 285,215 | 289,630 | 286,232 | 283,087 | 287,400 |
| Year-to-Year Change: | 0% | 0% | 11% | 2% | -1% | -1% | 2% |

5.19

## Efforts to Contain Costs in the Courts and Limit Appropriation Requirements

The judiciary continues to take seriously its role as steward of the taxpayers' dollars and regularly reviews program and business practices to identify areas where economies and efficiencies can be achieved. With large budget deficits projected to continue well into the future, efforts are underway to reduce government spending because containing the growth of government spending is more important now than ever. The judiciary cannot control how much it receives in resources, but ultimately can exert control over how the resources are managed and allocated in order to minimize the impact of insufficient funding on court operations.

The judiciary has been focused on cost-containment for over nine years since the Judicial Conference adopted a cost-containment strategy in September 2004. These efforts have resulted in reductions in discretionary spending and have helped limit the growth in the judiciary's budget.

The judiciary's biggest cost-containment success has been in limiting growth in space rent costs. As a result of cost-containment initiatives implemented in recent years, the judiciary has avoided approximately $400 million GSA rent costs. We have also identified usable space in courthouses to re-purpose for occupancy of judiciary employees (e.g. probation and pretrial services officers) currently in leased space which can be relinquished and reduce recurring rent costs.

Another of the judiciary's continuing initiatives is to maximize the implementation of shared administrative services among the courts of appeals, district courts, bankruptcy courts, and probation and pretrial services offices. This effort will reduce staffing and overhead costs and streamline administrative processes in the courts. The staffing formulas are being updated to include best practices, benchmarks, performance standards, incentives for efficiency, and the presumption of shared administrative services. The judiciary continues to reduce the amount spent on law books and law libraries in recognition of the increased reliance on computers to perform legal research.

In addition, to reduce travel costs associated with face-to-face training for court staff, the judiciary has enhanced the use of e-learning tools, including interactive webinars, DVD training presentations, and judiciary intranet class sites. The use of video-conferencing has also been enhanced to reduce travel costs within court districts, and between the Administrative Office and the courts. A site on the judiciary's intranet is now devoted to sharing best practices regarding the national video teleconference service. This site includes discussion forums as well as a number of technical and reference files. The judiciary is also implementing a national, Voice Over IP telephone system which will provide data, voice, and video services on a single network for the courts. By providing courts with a robust replacement for their aging PBX telephone switch equipment, the judiciary is reducing court telephone-related expenditures.

The judiciary has enhanced the use of strategic sourcing, such as the use of judiciary-wide contracts to obtain discounts for buying in volume, simplify supply of common-use products, and reduce administrative effort. Blanket Purchase Agreements

have been awarded for products such as tablets, desktop and laptop PCs, accessories, printers, servers and support, and desktop, security, and server virtualization software and support.

The judiciary has a record of productivity enhancements and cost avoidance from new/improved IT systems which provide efficiencies and help contain growth in future technology and staffing costs. For example, a single integrated financial system will allow timely access to data, support federal accounting standards including the e-government requirement for daily reporting to the Department of Treasury. It will provide enhanced reporting capability, tracking and monitoring criminal debt imposed by the courts, handling of cash receipts, reporting of court payroll information, and management of travel expenses. Funding for these enhancements was reduced in fiscal year 2013 and curtailed in fiscal year 2014 as a result of budget sequestration. Resumption of funding for these efforts is included in this request.

Savings/cost avoidances will occur due to centralizing servers. The fiscal year 2014 budget took into account approximately $3 million of cost savings and avoidances by replacing each of the individual court e-mail servers with centralized servers at a national data center. In addition, the judiciary is in the process of consolidating data centers. By the end of fiscal year 2014, operations at seven data centers will have ceased, with the savings reflected within the fiscal year 2015 budget request.

Despite these efforts, the judiciary has had to postpone, suspend indefinitely, or cancel many planned upgrades and improvements to equipment and systems in order to manage within budgetary limits. Many of these reductions were implemented in the fiscal year 2013 planning process and continue with the fiscal year 2014 continuing resolution.

Space and Facilities Program and Initiatives

The judiciary's space and facilities requirements include rental payments to the General Services Administration (GSA) for federally owned and leased space, utilities which exceed the basic levels provided by GSA (e.g., when court proceedings extend beyond normal business hours), alterations of space, payments to private lessors for parking and space, and maintenance (e.g., replacement of carpeting, painting).

*Reducing the Judiciary's Space Footprint*

The judiciary is committed to reducing its rent costs and space footprint via reconfiguring, reducing space and transforming operations. In September 2013, the Judicial Conference endorsed two important space reduction policies. The first is a "No Net New" policy. Under this policy, any increase in square footage within a circuit would need to be offset by an equivalent reduction in square footage within the same fiscal year. The second policy is a three percent space reduction target by the end of fiscal year 2018. The effect of incorporating these innovations and shedding space will take some time and will not result in reducing rent costs in the immediate future. Funding requested for GSA rent costs includes only the requirements for current holdings and spaces that are under design or construction and expected to be completed and occupied in fiscal year 2014 and fiscal year 2015. Based on 40 USC 586(b), which provides that the GSA is to "impose a charge for furnishing space and services," the judiciary considers its GSA rent a must-pay line item in its budget.

5.21

construction authority that is afforded executive branch agencies by statute (40 U.S.C. 3314(a)(1)). In the Omnibus Appropriations Act of 2009 (Pub. L. No. 111-8), Congress for the first time extended to the judiciary the authority to contract directly with private sector companies for repairs not to exceed $100,000. A tenant alterations program pilot under the delegated authority was undertaken to determine the value of the program to the judiciary, codify the internal policy and process changes necessary to enact this program and develop best practices for future projects. Two projects were completed under the pilot: one which involved the reconfiguration of information technology space and another which involved construction of an intake counter. It was found that a delegated project may be appropriate and less costly so long as the local court possesses in-house construction, project management, and contracting expertise.

Another program developed in conjunction with GSA is a menu of minor tenant alterations initiatives to accelerate the completion of smaller projects by minimizing the current lengthy procurement process and enable smaller projects to be completed at a lower cost. The Express Menu of Services program was developed to expedite the delivery of frequently requested, quick turnaround, tenant alterations projects or items that could be procured for court tenants through firm, fixed-price, and pre-negotiated contracts held by GSA regionally or for GSA micro purchases which cost less than $2,000. The program has been successfully piloted in GSA Region One (New England Region) and GSA is currently expanding the program to all federal tenants nationwide.

*Integrated Workplace Initiative*

The judiciary is often symbolized by physical structures (courthouses) that members of the public visit in search of justice. However, the increasing evolution and adoption of technologies has provided the opportunity for more flexibility where and when traditionally workplace-based roles are performed. Underway is an integrated workplace initiative (IWI) that would provide methodologies for reconfiguring and reducing space with the expectation of saving future recurring GSA rent costs. Further, this initiative includes developing methods aimed at reducing the space required to conduct the judiciary's business. The IWI examines how courts work, explores changing work styles, researches new and emerging technologies, identifies successful mobile working situations (e.g., probation officers working remotely in the field rather than in the courthouse), and develops ways to support a better workspace environment with mobility strategies.

The objective of the IWI is to capitalize on the opportunity to reduce the judiciary's real estate footprint, while creating a better and more efficient workplace environment. As part of the IWI, a software application has been developed that analyzes options to reduce or consolidate space, incorporates workplace sharing scenarios, and generates space square footage reduction calculations, rent cost reductions, construction cost estimates, and break-even cost analysis.

*Tenant Alterations Initiatives*

In an effort to control costs and promote efficiencies in the courts, the judiciary sought legislative authority that would enable the GSA to delegate to the judiciary the same

*Courtroom Usage Study*

Based on a courtroom usage study performed from 2005 to 2008, in March 2009 the Judicial Conference adopted a courtroom sharing policy for new courthouses and courtroom construction to be included in the *U.S. Courts Design Guide*. The policy provides for courtroom sharing by senior judges and magistrate judges. In addition, in September 2011 the Judicial Conference endorsed a courtroom sharing policy for inclusion in the *U.S. Courts Design Guide* for bankruptcy judges in new courthouse and courtroom construction.

*Rent Budget Caps*

Since the early 1990's, the rental cost of the judiciary's space had been growing at a rate in excess of the rate of growth in the judiciary's appropriations. This disproportion was roughly coincident with the start of a major new courthouse construction effort launched by GSA, at the prompting of the judiciary, and with the support of Congress, to address numerous overcrowded and outmoded court facilities across the country. In addition, because the GSA costs had reached 22 percent of the courts' salaries and expenses budget by the early 2000s, this disproportionate growth meant that funding requirements for rent were outpacing funding requirements for the other portions of the judiciary. Several cost containment measures were enacted to slow the rate of growth.

While most of the cost containment measures either provided interim relief, or set the stage for future cost savings, the judiciary still faced the prospect of having rent payments to GSA absorb an increasing share of the courts' Salaries and Expenses account. To address the issue, the Judicial

Conference established an annual budget cap for GSA space rental costs for fiscal years 2009 through 2016. The amount of the cap limits rent increases to an average of 4.9 percent per year. At its September 2007 session, the Judicial Conference approved the establishment of circuit-level rent budgets to decentralize decision-making, clarify and enhance the space acquisition approval process, and slow long-term growth in rent. An initial trial of the program was put in place during fiscal year 2008, and the nationwide rent program was implemented in fiscal year 2009 and continues today. This initiative constitutes a dramatic change in the judiciary's management of space and rent costs and its implementation has transformed all space acquisition work processes. In the five years since its implementation, annual growth rent costs has averaged less than 3 percent.

*Asset Management Planning*

The current Asset Management Planning (AMP) process was approved by the Judicial Conference in 2008. A comprehensive and objective facility planning tool, AMP was developed to address cost containment concerns and incorporate industry standards and best practices, as appropriate. The process includes a district-by-district physical assessment of all courthouse facilities, as well as completion of a needs assessment that takes into account current and projected caseload, personnel, and space data. The resulting data and analysis is compiled in a long-range facilities plan. In addition, an Urgency Evaluation list that identifies space urgency by court location in rank order of need is developed and updated annually, ensuring that the judiciary's space needs are addressed on a "worst first" basis. Through fiscal year 2013, the AMP methodology has been applied to a total of 327 facilities, which includes 288 courthouses located in 219 cities and 62 districts

and five circuit headquarters. The AMP process is being applied to all courthouses on the Five-Year Construction Plan. The Judicial Conference is expected to act on the recommendations at its September 2014 Session.

### Return on Investment Pricing (ROI)

In February 2008, the AO and GSA signed a Memorandum of Understanding (MOU) that changed the way rent is charged for the judiciary and has been a significant contributor towards controlling the judiciary's future rent bills. The MOU modified GSA's method for determining courthouse rent charges and resolved other judicial rent concerns. The pricing change became effective in fiscal year 2009 for 18 courthouses that were converted from "appraisal-based" to "return on investment-based" pricing and the rent was reduced by agreements with rental charges based on ROI pricing. There are currently 53 facilities with rental charges based on ROI pricing.

### Training Programs

Beginning in 2009, a national circuit-based space and security training program was developed in cooperation with training experts from the Federal Judicial Center and court managers to help courts implement cost containment initiatives and enhance space management. Specific training was delivered in the following programs: circuit rent budgeting, courtroom technology and telecommunications design and installation, validation of GSA rent billings and space assignments, space and facilities project asset management planning, personal property management, service level agreements with GSA, security in court facilities, and review of occupancy agreements. All circuits received the training. The program provided techniques for all aspects of planning and managing space and security matters, monitoring and reducing space rental costs through

reducing space and use of innovative space configurations with smaller offices and workstations that use less space. Participants received detailed methods for verifying space rental bills and overtime utilities charges.

Several courts and GSA partnering workshops were held in 2013 with the purpose of improving communication, customer service, project management, funding processes and cost containment. These are conducted with court units and their local GSA representatives through facilitated sessions that use tools such as the service level agreement the judiciary has signed with GSA, the express menu of services and project management best practices. Several workshops have been conducted in fiscal year 2014.

### Library Program Cost Containment

A major cost containment effort of the judiciary's library program has been underway for several years, and has been highly successful in containing growth. Despite annual inflation rates from major law book vendors that have exceeded six percent, the judiciary spent nearly 30 percent less in fiscal year 2013 on books than it did in fiscal year 1999. Librarians, working with judges, continue to reduce collections and purchase only the most essential resources. Due to cost containment initiatives and in anticipation of future savings, the law books budget is being held at the fiscal year 2013 sequestration levels in fiscal year 2014.

In September 2010, the Judicial Conference approved cost saving recommendations that arose from a study on libraries. The recommendations included (1) establishing guidelines to discourage maintaining subscriptions to regional reporters, state case law reporters, and specialty reporters in libraries; (2) advising circuit librarians to consider significantly reducing the number of subscriptions to the federal reporters in staffed libraries, especially West's Federal Supplement; (3) establishing

guidelines to discourage subscriptions to case law reporters for newly appointed and existing judges; and (4) requesting that the circuit judicial councils working with circuit librarians, library committees, and relevant judges, review satellite libraries to assess the continuing need for each library. As a result of these assessments, four libraries have been closed and many have downsized collections. In September 2012, the Judicial Conference took additional steps to reduce law books available in chambers by reducing the list of materials available, eliminating duplication through sharing, and encouraging the purchase of less-costly alternative titles when available. In September 2013, the Judicial Conference again asked the circuit judicial councils to assess the need for each library and provide a report in the Spring of 2014.

Information Technology Strategic Initiatives

The judiciary leverages the use of information technology (IT) to automate business processes and maximize efficiency. For example, the judiciary's Case Management/Electronic Case Files (CM/ECF) system automated the paper intensive case filing process. The CM/ECF system is fully operational in appellate, bankruptcy, and district courts, the Court of International Trade and the Court of Federal Claims. This benefits not only the judiciary, but also the bar, public, and other government agencies that now have greater access to court information. Long-term efficiencies have been achieved as a result of the CM/ECF implementation. In fact, as reflected in the latest work measurement formula implemented in the bankruptcy courts, CM/ECF has allowed the courts to operate with decreased staffing levels.

A more detailed discussion of cost containment from the strategic sourcing of national contracts and other efforts can be found in the *Judiciary Information Technology Fund* appendix.

Working with the Administrative Office, the courts are developing a Next Generation case management system to replace the current one. The first phase of the Next Generation project, identifying functional requirements, is complete. The second phase of the project involves the design, coding and testing a first release, and is well under way. Current plans call for the first release to be delivered to courts in 2014. This Next Generation system will help to contain the cost of case processing well into the future.

In addition to processing virtually all cases electronically, the courts have been enhancing efficiency through a combination of local management initiatives and court-developed automation innovations, such as virtualization of servers among courts throughout a circuit. For years, court unit executives and their staffs have been adopting new management techniques, developing and sharing best practices, and using the flexibility provided under budget decentralization to invest in automation solutions that save resources as well as improve quality and performance.

Probation and pretrial services offices also continue to use automation projects such as the Probation & Pretrial Services Automated Case Tracking System (PACTS), the Electronic Reporting System (ERS), Access to law Enforcement System, the Electronic Probation and Pretrial Services System, the Safety and Information Reporting System, and the Decision Support System (DSS), to reduce costs and improve the effectiveness and efficiency of probation and pretrial services officers.

Records Management

In recent years, the judiciary, working with the National Archives and Records Administration (NARA), has sought to improve its records management program to ensure the preservation of historically significant case files and contain costs associated with the storage of records. Disposal of court records is controlled by records disposition schedules

established jointly by the Judicial Conference and NARA. A record no longer needed for active court business may be sent to one of NARA's regional Federal Records Center (FRC) for storage until its retention period has elapsed and, at that point, it may either be destroyed or transferred to the National Archives as a permanent record. Since 1999, NARA has been statutorily obligated to charge a fee for storage at the FRCs.

A major milestone was reached in November 2010 when the Archivist of the United States signed the new retention schedule for civil case files, which was approved by the Judicial Conference in September 2010. At its September 2011 session, the Judicial Conference also approved proposed revisions to the retention schedules for appellate, bankruptcy and criminal case files and forwarded the revisions to the Archivist of the United States for ratification. The Archivist signed the new schedule for bankruptcy case files in November 2011 and the new schedule for appellate case files in July 2012. That same year, NARA published the proposed criminal schedule in the Federal Register for public comment. Due to the comments received in response to the Federal Register notice, NARA requested that the judiciary determine whether the 15-year retention period for non-trial records is adequate. Additional research on the criminal case files was performed, resulting in a revision of the criminal schedule that considers length of sentence as a key element in establishing records retention guidelines. The revised schedule was approved by the Judicial Conference at its September 2013 meeting, and is currently at NARA for review and concurrence.

The implementation of the new civil and bankruptcy schedules was initiated in 2011, and as of November 2013, it is estimated that approximately 99 percent of the eligible civil case files (1970-1995) and 67 percent (1941 - 1995) have been processed.

The judiciary's efforts to contain storage costs associated with the Federal Records Centers are bearing fruit. Between fiscal year 2010 and fiscal year 2013, storage costs have been held constant, although transportation and storage costs have increased annually. In fiscal year 2014, the actual cost of storage has begun to fall, which is reflected in the fiscal year 2015 budget request. Upon full implementation, the new schedules are expected to lower judiciary costs by approximately $3 million per year.

The records management program continues to take on additional initiatives to support the courts (such as assisting with the 2013 transfer of permanent records to NARA, developing and implementing an electronic records schedule, and continued nationwide records management support) and funding is needed to meet those needs and to complete the implementation of the new records schedules. In recent years, the judiciary, working with NARA, has sought to improve its records management program to ensure the preservation of historically-significant case files and contain costs associated with the storage of records.

Criminal Justice Act (CJA) Electronic Vouchering (E-Vouchering) System

The judiciary is developing an electronic CJA voucher processing system to replace the current paper-based system. The current voucher review and payment system is very time and resource intensive for judges, court personnel, and CJA panel attorneys. The judiciary anticipates that moving to a paperless system will streamline the submission and review of CJA vouchers, improve efficiency and oversight by providing basic automatic checks and balances for claims, and, over time, reduce judiciary personnel costs. In 2014, a plan will be developed to address implementation and further development.

5.27

## Work Measurement

The judiciary has employed work measurement studies to develop staffing formulas for nearly 20 years as a means to (1) systematically determine the appropriate staffing levels; (2) provide empirical justification for budget requests; and (3) fairly and equitably allocate staff resources to the courts. As the fiscal environment has deteriorated over the past several years, demand has increased significantly for work measurement studies as a key component of the judiciary's analysis of its workforce and cost-containment efforts. Similarly, the need has increased to update the specific work measurement techniques used by the judiciary to enable broader application, more detailed results, increased accuracy, and less intrusion on the time of the court units under study.

In September 2013, the Judicial Conference approved a new staffing formula for district clerks' offices incorporating best practices, shared services, benchmarks, performance standards, and efficiency incentives. This new formula reduced district clerks' offices staffing requirements in the fiscal year 2014 financial plan and fiscal year 2015 budget request by 12 percent. The previous year, a 24 percent reduction in bankruptcy clerks' offices staffing requirements was achieved through the development of an updated staffing formula using refined work measurement techniques.

## Telephone Interpreting Program (TIP)

The Telephone Interpreting Program (TIP) was established to provide remote interpretation in short court proceedings where certified or otherwise qualified interpreters are not locally available. TIP reduces the need for an interpreter to travel to distant court locations and allows an interpreter to provide service for multiple proceedings at multiple locations in the same day. Although use from fiscal year 2012 to fiscal year 2013 decreased by approximately 220 events to 3,749

events, current usage still represents an overall increase of 132 events over fiscal year 2010. Despite the decrease in the number of events in fiscal year 2013, more court locations are using TIP to cover interpreting events in more languages. In fiscal year 2012, 56 districts in 102 locations received TIP services, while in fiscal year 2013, 54 districts in 104 locations received TIP services. In addition, TIP events took place in 42 languages in fiscal year 2012 and in 44 languages in fiscal year 2013. The total estimated savings by telephone interpreting in fiscal year 2013 was over $1.8 million. It is estimated that approximately $13.8 million has been saved in court interpreter travel and contract costs as a result of the TIP program from fiscal year 2001 through fiscal year 2013.

TIP is an example of shared court services and a major cost-containment initiative in the judiciary. TIP's continued operation depends on the availability of the online TIP Scheduling and Database System. The system is a national web-based application available to courts via the judiciary's intranet to facilitate the scheduling of TIP services. The application allows users to request a TIP interpreter, change or cancel scheduled events, review a list of pending requests, close out requests, and access other information such as an on-line user guide, time zone chart, frequently asked questions list, and a selection of system generated usage and savings reports. Operations and maintenance support for the TIP application is handled by on-site contractor personnel. In fiscal year 2013 alone, TIP saved the judiciary approximately six times the amount of money it costs to keep the system operational.

If fiscal year 2015 funds are reduced, there will be insufficient resources to maintain and enhance the system and provide help desk services. This would result in a decrease in the level of service to users. Loss of funding for our contractor personnel could endanger the continued functionality of the TIP application even as it currently stands with no further enhancements and jeopardize the continuation of this cost-saving program.

## Fiscal Year 2015 Request

The appropriation request for the Salaries and Expenses account totals $5,247,616,000 for fiscal year 2015, which includes $414,605,000 for mandatory expenses, $4,827,588,000 for discretionary expenses and $5,423,000 for the Vaccine Injury Trust Fund. The fiscal year 2015 discretionary request of $4,833,011,000 is a 3.6 percent increase over the fiscal year 2014 enacted discretionary appropriation level of $4,664,157,000.

In addition to appropriated funds, the Salaries and Expenses account utilizes other funding sources to offset its appropriation requirements, including current year fee collections, carryover of fee balances from the prior year, and no-year appropriation balances (excluding slippage). The judiciary projects that these sources of non-appropriated funds will total $288.5 million in fiscal year 2015, $51.0 million less than the $339.5 million utilized in fiscal year 2014.

## Justification of Changes

The fiscal year 2015 budget request represents a current services budget.

Adjustments to base, totaling $194.8 million are for:

- increases in personnel costs for staff ($66.9 million);

- net increase in staff to support filled Article III and Senior Judgeships, and related costs ($19.3 million);

- increase for the new Integrated Workplace Initiative Program to reduce the space footprint and space related costs ($10.0 million);

- increase for Second Chance Act ($2.9 million);

- financing adjustments to replace non-appropriated sources of funds with appropriated funds ($51.0 million);

- other must-pay operations and maintenance costs ($18.8 million); and

- increases to mandatory appropriations for pay adjustments and for filled Article III and Senior Judgeships ($25.9 million).

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

**Requested Discretionary Increase: $168,854,000**

**Mandatory Increase: $25,941,000**

The following provides information and justification for each of the adjustments to base for the Salaries and Expenses account. This section is divided into three subsections: judges, court personnel and programs, and other adjustments. Each line item is identified in this section by a number that corresponds to the line items in the Fiscal Year 2015 Resource Requirements section on pages 5.3 through 5.4.

## A. JUDGES

*1. Pay and benefit cost adjustments*

### a. Annualization of 2014 pay adjustment

**Requested Discretionary Increase: $315,000**

**Mandatory Increase: $972,000**

Federal pay rates increased by 1.0 percent in January 2014. The requested increase provides for the cost of three months (from October 2014 to December 2014) of the 2014 pay increase in fiscal year 2015.

**b. Annualization of the judges' pay adjustment**

**Requested Discretionary Increase: $2,924,000**

**Mandatory Increase: $8,448,000**

An increase of $11.4 million is associated with annualization of the judges' pay adjustment (2.5 months) of the 2014 pay adjustment as a result of litigation that went into effect in mid-December 2013.

**c. Proposed January 2015 pay adjustment**

**Requested Discretionary Increase: $950,000**

**Mandatory Increase: $2,922,000**

The Office of Management and Budget is projecting that the Employment Cost Index (ECI) will increase by an average of 1.0 percent beginning on or after January 1, 2015. The requested increase provides for the cost of nine months of the anticipated ECI increase for judges in fiscal year 2015 (from January 2015 to September 2015).

Table 5.2 Salaries of U.S. Judges

| | 2014 | 2015* |
|---|---|---|
| Article III Judges | | |
| Court of Appeals | 211,200 | 213,300 |
| District Court | 199,100 | 201,100 |
| Article I Judges | | |
| U.S. Court of Federal Claims | 199,100 | 201,100 |
| Other Judicial Officers** | | |
| Bankruptcy Judges | 183,172 | 185,012 |
| Magistrate Judges | 183,172 | 185,012 |

*Reflects an assumed 1.0% ECI increase in January 2015.
**Bankruptcy and Magistrate Judges salaries are based on 92 percent of a District Judges Salary.

The Ethics Reform Act of 1989 as amended, includes a formula which provides that for 2015, Federal Judges (the Vice President, Members and Executive Schedule officials) are eligible to receive up to a 1.0 percent Employment Cost Index (ECI) pay adjustment effective January 2015. The ECI is published quarterly by the Bureau of Labor Statistics, and it measures changes in wages and salaries.

The President's 2015 budget request includes a 1.0 percent pay adjustment for civilian employees. Consequently the judiciary's 2015 budget request includes a 1.0 percent judges ECI.

**d. Benefit increases**

**Requested Discretionary Increase: $594,000**

**Mandatory Increase: $1,595,000**

The requested amount includes $1.4 million to cover premium rate increases in Federal Employee Group Life Insurance (FEGLI) for qualified judges with Option B life insurance coverage (additional coverage above the basic FEGLI coverage) pursuant to 28 U.S.C. §604(a)(5).

Also an increase of $0.6 million in health benefit payments is required based on the Office of Personnel Management estimates that health benefit premium contributions will increase by 3.7 percent in January 2014, and 4.0 percent in January 2014. The requested increase annualizes the 2014 premium increase, and includes a nine-month provision for the anticipated fiscal year 2015 premium increase and other changes.

An additional $0.1 million is also requested to provide for the increase in employer contributions to the Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax in fiscal year 2015. The salary cap for OASDI increased from $113,700 in January 2013, and to $117,000 in fiscal year 2014. The requested base adjustment represents the additional agency contribution paid for judges.

420

## 2. Senior Judges

**Requested Discretionary Increase: $14,528,000   FTE: 120**

**Mandatory Increase: $7,939,000   FTE: 36**

Funding is requested in fiscal year 2015 for an additional 36 judges expected to take senior status. This request also funds associated chambers staff (120 FTE) to assist these judges. The request includes $8.0 million for the salaries and benefits of judges, $9.9 million for the salaries and benefits of supporting staff, and about $4.6 million for supporting costs such as law books, furniture, travel, supplies, and equipment.

Table 5.3  Senior Judges and Supporting Personnel

| | Additional FTE | Salaries and Benefits ($000) | Operations and Maintenance ($000) | Total ($000) |
|---|---|---|---|---|
| Judges Taking Senior Status (Staff Included) | 156 | 17,883 | 4,584 | 22,467 |

Under 28 U.S.C., an Article III judge has three options when leaving active service. Section 371(a) allows the judge to retire from office and receive an annuity for life equal to the salary in effect at the date of retirement. Section 372(a) allows the judge to retire on disability grounds, and provides that the judge receives the salary of the office for life after serving 10 years. Section 371(b) allows the judge to take senior status and to retain the office, but retire from regular active service. Senior status allows the judge to continue rendering substantial judicial service for a number of years, notwithstanding his or her retirement.

Table 5.4  Article III Senior and Retired Judgeship FTEs

| Fiscal Year | Avg. Senior, Retired and Disability |
|---|---|
| 1996 | 435 |
| 1997 | 469 |
| 1998 | 481 |
| 1999 | 485 |
| 2000 | 490 |
| 2001 | 509 |
| 2002 | 514 |
| 2003 | 507 |
| 2004 | 515 |
| 2005 | 517 |
| 2006 | 524 |
| 2007 | 535 |
| 2008 | 532 |
| 2009 | 558 |
| 2010 | 567 |
| 2011 | 593 |
| 2012 | 634 |
| 2013 | 655 |
| Estimates | |
| 2014 | 651 |
| 2015 | 687 |

*Pursuant to 28 U.S.C. 371(a), 371(b), 372(a), and 373.

At the end of fiscal year 2013, 60 judges became eligible to retire; 44 more judges will become eligible in fiscal year 2014; and 92 in fiscal year 2015, for a total of 196 potential retirees. Of the 92 judges eligible to retire in fiscal year 2015, the judiciary estimates that 51 judges will either take senior status or retire, resulting in a net increase of 36 FTE over the 651 FTE funded in fiscal year 2014. Of this increase, 27 of the 51 are expected to be attributed to judges taking senior status who will continue to render substantial judicial service and thereby will retain some, if not all, of their present staff. Based on current

5.30

information, the judiciary estimates that the judicial councils of the circuits will authorize staffing to support senior judges using the following average staffing factors: 1.5 and 1.13 law clerks for appellate and district judges, respectively; 0.9 and 0.7 secretaries for appellate and district judges, respectively; and 0.6 court reporters for each district judge.

### 3. Increase in average number of filled Article III judgeships

**Requested Discretionary Increase: $12,128,000    FTE: 91**

**Mandatory Increase: $4,065,000                    FTE: 18**

The fiscal year 2014 financial plan funds 770 FTE for the 845 authorized Article III appellate and district judgeships. Based on historical confirmation patterns, the judiciary projects 70 judges will be confirmed during fiscal year 2015, offset by the number of active judges who take senior status or retire. Thus, the judiciary anticipates the average number of filled Article III judgeships will increase by 18 FTE above the fiscal year 2014 funded levels.

This request will also fund 40 law clerks, 16 courtroom deputies, 22 secretaries and 14 court reporters associated with the 18 FTE increase in judges. This line item includes $4.1 million for the salaries and benefits of judges, $7.0 million for the salaries and benefits of supporting staff, and $5.1 million for supporting costs such as lawbooks, furniture, travel, supplies, and equipment.

Table 5.5 Active Article III Judgeship Vacancies

| Fiscal Year | Authorized Article III Judgeships | Average Vacancies | Avg. Number of Active Judges |
|---|---|---|---|
| 1996 | 814 | 58 | 756 |
| 1997 | 814 | 90 | 724 |
| 1998 | 813 | 83 | 730 |
| 1999 | 813 | 66 | 747 |
| 2000 | 822 | 73 | 749 |
| 2001 | 832 | 94 | 738 |
| 2002 | 832 | 101 | 731 |
| 2003 | 847 | 71 | 776 |
| 2004 | 846 | 41 | 805 |
| 2005 | 845 | 41 | 804 |
| 2006 | 845 | 50 | 795 |
| 2007 | 845 | 50 | 795 |
| 2008 | 845 | 47 | 798 |
| 2009 | 845 | 68 | 777 |
| 2010 | 845 | 102 | 743 |
| 2011 | 845 | 94 | 751 |
| 2012 | 845 | 79 | 766 |
| 2013 | 845 | 84 | 761 |
| Estimates | | | |
| 2014 | 845 | 75 | 770 |
| 2015 | 845 | 57 | 788 |

### 4. Non-recurring costs associated with filled fiscal year 2014 judges (Article III Judges)

**Requested Decrease: ($7,349,000)**

This line item non-recurs the one-time costs such as set-up costs for telephones, lawbooks, furnishings, courtrooms, and digital recorders associated with new judges in fiscal year 2014.

5.31

Table 5.6 Summary of Judicial Officers

| | Article III & Bankruptcy Judges (Mandatory Costs) | | | | | | Claims & Magistrate Judges | | | | | |
| | FY 2014 | | | FY 2015 | | | FY 2014 | | | FY 2015 | | |
| | Positions | FTE | ($000) | Positions | FTE | ($000) | Positions | FTE | ($000) | Positions | FTE | ($000) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Appellate Judgeships | 167 | 160 | 36,681 | 167 | 164 | 39,422 | | | | | | |
| District Judgeships | 678 | 638 | 139,298 | 678 | 652 | 146,814 | | | | | | |
| Senior/Retired | | 649 | 135,854 | | 684 | 148,153 | | | | | | |
| Bankruptcy Judgeships[1] | 350 | 349 | 76,831 | 350 | 349 | 80,216 | | | | | | |
| U.S. Court of Federal Claims | | | | | | | 16 | 17 | 3,061 | 16 | 17 | 3,128 |
| Magistrate Judgeships[2] | | | | | | | 621 | 551 | 123,248 | 624 | 551 | 127,965 |
| Total[3] | 1,195 | 1,795 | 388,664 | 1,195 | 1,849 | 414,605 | 637 | 568 | 126,309 | 640 | 568 | 131,093 |

1 FTE include recalled bankruptcy judges

2 FTE include part-time and recalled magistrate judges.

3 The request includes $3.8 million for the proposed fiscal year 2015 cost-of-living adjustment for judges

Table 5.7 U.S. Court of Federal Claims Judges

| Fiscal Year | Authorized Court of Fed. Claims Judgeships | Average Vacancies | Avg. No. Active Judges |
|---|---|---|---|
| 1997 | 16 | 1 | 15 |
| 1998 | 16 | 4 | 12 |
| 1999 | 16 | 1 | 15 |
| 2000 | 16 | 0 | 16 |
| 2001 | 16 | 1 | 15 |
| 2002 | 16 | 4 | 12 |
| 2003 | 16 | 2 | 14 |
| 2004 | 16 | 0 | 16 |
| 2005 | 16 | 1 | 15 |
| 2006 | 16 | 0 | 16 |
| 2007 | 16 | 0 | 16 |
| 2008 | 16 | 0 | 16 |
| 2009 | 16 | 0 | 16 |
| 2010 | 16 | 0 | 16 |
| 2011 | 16 | 0 | 16 |
| 2012 | 16 | 0 | 16 |
| 2013 | 16 | 0 | 16 |
| Estimates | | | |
| 2014 | 16 | 0 | 12 |
| 2015 | 16 | 0 | 16 |

Table 5.8 Bankruptcy Judges (excludes recalled)

| Fiscal Year | Authorized Bankruptcy Judgeships | Avg. Vacancies | Avg. No. Active Judges |
|---|---|---|---|
| 1997 | 326 | 13 | 313 |
| 1998 | 326 | 13 | 313 |
| 1999 | 326 | 15 | 311 |
| 2000 | 325 | 18 | 307 |
| 2001 | 324 | 12 | 312 |
| 2002 | 324 | 18 | 306 |
| 2003 | 324 | 18 | 306 |
| 2004 | 324 | 4 | 320 |
| 2005 | 324 | 12 | 312 |
| 2006 | 352 | 16 | 336 |
| 2007 | 352 | 12 | 340 |
| 2008 | 352 | 12 | 340 |
| 2009 | 352 | 17 | 335 |
| 2010 | 350 | 19 | 333 |
| 2011 | 350 | 14 | 337 |
| 2012 | 350 | 12 | 339 |
| 2013 | 350 | 19 | 339 |
| Estimates | | | |
| 2014 | 350 | 19 | 339 |
| 2015 | 350 | 12 | 339 |

Table 5.9 Magistrate Judges (Full-Time)

| Fiscal Year | Authorized Magistrate Judgeships | FTE |
|---|---|---|
| 1999 | 436 | 431 |
| 2000 | 447 | 436 |
| 2001 | 456 | 452 |
| 2002 | 470 | 462 |
| 2003 | 477 | 464 |
| 2004 | 487 | 488 |
| 2005 | 495 | 490 |
| 2006 | 500 | 496 |
| 2007 | 503 | 492 |
| 2008 | 505 | 504 |
| 2009 | 508 | 500 |
| 2010 | 517 | 506 |
| 2011 | 523 | 511 |
| 2012 | 523 | 518 |
| 2013 | 523 | 515 |
| Estimates | | |
| 2014 | 523 | 515 |
| 2015 | 523 | 515 |

5.32

## B. COURT PERSONNEL AND PROGRAMS

### 5. *Pay and benefit cost adjustments*

#### a. Annualization of January 2014 pay adjustment

**Requested Increase: $7,469,000**

Federal pay rates increased by 1.0 percent in January 2014. The requested increase provides for the cost of three months (from October 2014 to December 2014) of the 2014 pay increase in fiscal year 2015.

#### b. Proposed January 2015 pay adjustment

**Requested Increase: $22,533,000**

As of January 2014, the Office of Management and Budget is projecting that the federal pay rates will increase by an average of 1.0 percent on or after January 1, 2015. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2015 (from January 2015 to September 2015).

#### c. Promotions and within-grade increases

**Requested Increase: $22,634,000**

The requested increase provides for promotions and within-grade increases for personnel. The salary plan for judicial support personnel provides for periodic within-grade increases for staff who receive at least a satisfactory performance rating.

#### d. Benefit increases

**Requested Increase: $9,452,000**

An increase in health benefit payments costing $8.0 million is required based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 3.7 percent in January 2014 and January 4.0 percent in 2015. The requested increase annualizes the 2014 premium increase, and includes a nine-month provision for the anticipated fiscal year 2015 premium increase and other changes.

An additional $1.4 million is also requested to provide for the increase in employer contributions to the Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax in fiscal year 2014. The salary cap for OASDI increased from $113,700 in January 2013, and to $117,000 in January 2014. The requested base adjustment represents the additional agency contribution.

**6. *Funding necessary to maintain fiscal year 2014 service levels due to an anticipated decline in non-appropriated funds***

**Requested Increase: $50,991,000**

In addition to appropriations from Congress, the judiciary relies on other funding sources to finance its requirements. These non-appropriated funds include current year fee collections, carryforward of fee balances from the prior year, no-year appropriation balances, and Judiciary Information Technology Fund balances. The use of these funds allows the judiciary to reduce its appropriations request on a dollar-for-dollar basis. The judiciary's fiscal year 2015 appropriation request of $5.2 billion reflects a projected availability of $288.5 million in these non-appropriated funds. Without these funds, the judiciary's request in appropriations would have totaled approximately $5.5 billion.

While the use of these funds benefits the judiciary (and reduces the need for appropriated funds), the amounts available fluctuate year-to-year due to changes in filing fee collections, changes in unobligated balances from prior years, etc. If total non-appropriated funds in the budget year exceed the total non-appropriated funds in the prior year, the budget year's appropriations request can be reduced further. However, if total non-appropriated funds in the budget year are lower than the total non-appropriated funds in the prior year, appropriations are needed to replace those lost non-appropriated funds in order to maintain a current services level of obligations.

The fiscal year 2014 obligation level includes new fee collections and prior-year carryforward from fiscal year 2013 totaling $339.5 million. The fiscal year 2015 request estimates that fee collections and prior-year carryforward will total $288.5 million, a net decrease of $51.0 million from the $339.5 million available in fiscal year 2014 to help finance court operations. This is displayed in Table 5.10. The judiciary requests appropriated funds for fiscal year 2015 to replace these non-appropriated funds in order to maintain the same level of services as provided in fiscal year 2014.

The judiciary's estimates for non-appropriated funds typically fluctuate during the fiscal year. Administrative Office staff will update the appropriations subcommittee staff on changes in non-appropriated funding levels during fiscal year 2014.

Table 5.10 Non-Appropriated Sources of Funding

| ($000) | FY 2014 Plan | FY 2015 Request | Difference |
|---|---|---|---|
| Fee Collections | 204,473 | 208,532 | 4,059 |
| Other Carryforward | 135,050 | 80,000 | (55,050) |
| Total, Non-Appropriated Sources of Funding, Excluding Slippage | 339,523 | 288,532 | (50,991) |

**C. OTHER ADJUSTMENTS**

**7. *Inflationary and Miscellaneous Adjustments***

**Requested Increase: $18,743,000**

Consistent with guidance from the Office of Management and Budget, this request of $18.7 million is required to fund inflationary increases of 1.7 percent for operating expenses such as travel, utilities, printing, contractual services, supplies and materials, and furniture and equipment.

*8. Vaccine Injury Compensation Trust Fund Adjustment*

**Requested Increase: $96,000**

The National Childhood Vaccine Injury Act of 1986 (42 U.S.C.§ 300aa) created a special fund to pay judgments awarded under the Act. The Vaccine Act also created the Office of Special Masters (OSM) within the United States Court of Federal Claims to hear vaccine injury cases and further stipulates that up to eight special masters may be appointed for this purpose. The special masters' expenditures are reimbursed to the judiciary for Vaccine Injury cases from a special fund set up under the Vaccine Act.

For fiscal year 2015, the judiciary requests $5,423,000 from the Vaccine Injury Compensation Trust Fund, an increase of $96,000 expected to be received from the Trust Fund in fiscal year 2015. The increase of $96,000 is due to pay and non-pay inflationary adjustments.

*9. GSA space rental and related services*

**Requested Decrease: ($38,000)**

The judiciary requests a net decrease of $38,000 in fiscal year 2015 for General Services Administration (GSA) rent and related services. This net decrease is made up primarily of: (a) annualization of new space delivered in fiscal year 2014 (+$6.9 million), (b) adjustments to the GSA space rental base costs (-$13.9 million), (c) new space to be delivered in fiscal year 2015 (+$1.7 million), (d) anticipated savings from the footprint reduction effort (-$7.0 million);

and (e) other space-related adjustments including tenant alterations ($12.3 million). Table 5.11 on page 5.37 summarizes the funding request for GSA space rental.

**a. Annualization of new space delivered in fiscal year 2014**

**Requested Increase: $6,891,000**

In fiscal year 2014, the judiciary anticipates that 125,566 additional rentable square feet related to prospectus projects will be occupied by the courts of appeals, district courts, bankruptcy courts, and probation and pretrial services offices. Funding for a full year's rent is not included in the fiscal year 2014 level because this new space will be added to the space inventory at various times during the fiscal year. The requested increase of $6.9 million is based on projected occupancy dates and rental rates provided by the GSA. Table 5.12 on page 5.38 identifies the specific prospectus projects that GSA plans to deliver in fiscal year 2014. The annualization amount requested is the difference between the partial-year cost in fiscal year 2014 for prospectus projects, and the full year cost to be incurred in fiscal year 2015.

**b. Adjustments to the GSA space rental base costs**

**Requested Decrease: ($13,916,000)**

This request represents a base adjustment and represents a 1.3 percent decrease in the cost of GSA space rental and maintenance of facilities occupied by the courts for fiscal year 2015. This decrease is based on rent estimates computed by GSA and provided to the judiciary.

5.36

#### c. New space to be delivered in fiscal year 2015

**Requested Increase: $1,732,000**

A net decrease of 12,885 rentable square feet is expected in the judiciary's inventory in fiscal year 2015 at the Woolworth Building in New York City. The estimated rent cost of this new space is based on occupancy dates and rent costs estimated by GSA. Although there is a net decrease in space, the cost of the new space is more expensive. Table 5.13 on page 5.39 identifies the prospectus project that GSA plans to deliver in fiscal year 2015.

#### d. Anticipated savings from the space footprint reduction effort

**Requested Decrease:  ($7,000,000)**

This request includes a reduction of $7.0 million in anticipated savings associated with the effort to reduce the space footprint in occupied facilities throughout the judiciary.

#### e. Other space-related adjustments

**Requested Increase: $12,255,000**

A net increase of $12.3 million is requested for space-related adjustments, including: $9.4 million for tenant alterations for courtrooms and chambers, adjustments for cyclical maintenance, and full funding for formula allotments in fiscal year 2015; and $2.9 million for new furniture in fiscal year 2015.

Table 5.11  Fiscal Year 2015 GSA Space Rental Increase

| Fiscal Year 2014 Base: | Square Feet of Space | Avg. Cost per Square Ft.* | Amount in $000 |
|---|---|---|---|
| Space occupied at start of year: | 40,410,832 | | $1,060,826 |
| Estimated new space to be delivered in Fiscal Year 2014 | 125,566 | | $9,711 |
| | | | |
| **Total, Fiscal Year 2014** | 40,536,398 | $26.41 | $1,070,537 |
| **Fiscal Year 2014 Adjustments:** | | | |
| | | | |
| Decrease for estimated reduction in inflation (-1.3 percent) | | | ($13,916) |
| | | | |
| Annualization of new space assigned in Fiscal Year 2014 | | | $6,891 |
| **Subtotal, FY 2015 with Annualized Fiscal Year 2014 New Space** | 40,536,398 | $26.23 | $1,063,512 |
| Space to be delivered in fiscal year 2015: | | | |
| Estimated new space to be delivered in New York | 101,470 | | $4,124 |
| Release of space in New York | (114,355) | | ($2,392) |
| Estimated savings due to reduction in footprint | | | ($57,000) |
| **Subtotal** | (12,885) | | ($55,268) |
| | | | |
| **Total, Fiscal Year 2015 Budget Request** | 40,523,513 | $26.29 | $1,058,244 |
| **Fiscal Year 2015 Decrease** | (12,885) | | ($12,293) |

*The fiscal year average cost per square foot includes the annualization of rent costs for space added in the succeeding fiscal year.

5.37

Table 5.12  Space to be delivered in fiscal year 2014 - Prospectus projects, displayed in order of GSA estimated delivery dates

| City | State | Net Rentable Feet to be Delivered | Estimated Occupancy | Fiscal Year 2014 Rent Cost New Space | Fiscal Year 2015 Rent Cost | Total Annual Rent Cost |
|---|---|---|---|---|---|---|
| Birmingham | Alabama | 31,276 | 10/01/2013 (occupied) | $1,960,731 | 0 | $1,960,731 |
| Yuma | Arizona | 15,799 | 1/01/2014 (occupied) | $1,289,834 | $429,945 | $1,719,779 |
| Salt Lake City | Utah | 78,491 | 03/19/14 | $6,460,495 | $6,460,494 | $12,920,989 |
| **Total** | | **125,566** | | **$9,711,060** | **$6,890,439** | **$16,601,499** |

5.38

Table 5.13  Space to be delivered in fiscal year 2015 - Prospectus projects, displayed in order of GSA estimated delivery dates

| City | State | Square Feet Delivered or Released | Estimated Occupancy | Fiscal Year 2015 Rent Cost | Fiscal Year 2016 Rent Cost | Total Annual Rent Cost |
|------|-------|-----------------------------------|---------------------|----------------------------|----------------------------|------------------------|
| New York (Moynihan) | NY | 101,470 | 4/01/15 | $4,123,957 | $4,123,958 | $8,247,915 |
| New York (Woolworth) | NY | (114,355) | 4/01/15 | ($2,391,750) | ($2,391,750) | ($4,783,500) |
| Net Change | | (12,885) | | $1,732,207 | $1,732,208 | $3,464,415 |

5.39

5.40

*10.   Integrated Workplace Initiative*

**Requested Increase:  $10,000,000**

An increase of $10.0 million is requested for the Integrated Workplace Program to provide funding that would be used to pay for up-front costs incurred by courts to re-purpose existing space into a smaller space footprint.  This cost containment effort began in fiscal year 2013 and is designed to reduce rent costs and the space footprint via reconfiguring, reducing space and transforming operations.  Funding requested for GSA rent costs includes only the requirements for current holdings and spaces that are under design or construction and expected to be completed and occupied in fiscal year 2015.

*11.   Second Chance Act Requirements*

**Requested Increase:  $2,884,000**

An increase of $2.9 million is associated with funding for the Second Chance Act.  The Second Chance Act of 2007 is designed to authorize federal grants to state and local reentry programs.  This Act authorizes the Director of the Administrative Office of the U.S. Courts to contract for certain reentry services for offenders, including: treatment, equipment, emergency housing, corrective and preventative guidance and training, and other rehabilitative services designed to protect the public and promote the successful reentry of the offender into the community.

## FINANCING THE FISCAL YEAR 2015 REQUEST

### 12. Estimated Fiscal Year 2015 Fee Collections

**Estimated funds available: $208,532,000**

Congress has authorized the judiciary to collect fees for civil and bankruptcy filings as well as fees for a variety of case services, including registry account administration and miscellaneous court case administration costs. A portion of the fees collected by the courts are deposited into a special fund maintained by the Department of Treasury and may be used to reimburse any of the four appropriations within the *Courts of Appeals, District Courts, and Other Judicial Services* heading, as well as the Administrative Office of the United States Courts, for expenses incurred. These fees are available without fiscal year limitation. The judiciary estimates that $208.5 million in revenue from these sources will be available in fiscal year 2015 to finance requirements in the Salaries and Expenses account, an increase of $4.0 million from the $204.5 million estimated to be available in fiscal year 2014. The judiciary will continue to monitor bankruptcy filings throughout fiscal year 2014 and will advise the appropriations subcommittee staffs of changes in the forecasts.

Table 5.14 lists offsetting receipts by type and displays the amounts collected in fiscal year 2013. Estimates for fiscal year 2014 and fiscal year 2015 are also provided. The judiciary will advise appropriations subcommittee staffs of changes to these estimates.

Table 5.14 Offsetting Receipts from Collections
Dollars in Thousands

| Type of Collection and Source | FY 2013 Actual Collections | FY 2014 Estimated Collections | FY 2015 Estimated Collections |
|---|---|---|---|
| *Fees* | | | |
| Registry Administration Fees | 907 | 1,000 | 1,000 |
| Bankruptcy Filing and Misc. Fees [1] | 167,024 | 161,459 | 160,642 |
| Civil Filing and Misc. Fees [2] | 53,444 | 41,901 | 46,990 |
| Central Violations Bureau Fees | 4,942 | 5,475 | 5,475 |
| Immigration Adjudication and Naturalization Fees | 5,452 | 5,400 | 5,400 |
| Subtotal, Fees | 231,769 | 215,235 | 219,507 |
| Fee allocation to Admin. Office [3] | (11,588) | (10,762) | (10,975) |
| TOTAL TO SALARIES & EXPENSES | 220,181 | 204,473 | 208,532 |

[1] Includes statutory bankruptcy filing fees and bankruptcy court miscellaneous fees.

[2] Includes statutory civil filing fees and appellate court and district court miscellaneous fees.

[3] Based on Judicial Conference policy, up to 5 percent of total fees collected may be used to support Administrative Office requirements.

432

5.42

*13. Anticipated Unencumbered Carryforward From Fiscal Year 2014 into Fiscal Year 2015*

**Estimated funds available:  $80,000,000**

The judiciary estimates that $80.0 million will be available through anticipated savings to carry forward into fiscal year 2015 and offset the fiscal year 2015 appropriation request for the Salaries and Expenses account.  Savings generally are available due to fewer than projected Article III judicial confirmations, resulting in salary and benefit savings for vacant judgeships and associated staff; slippages in GSA space delivery schedules that reduce space rental and furniture expenses; and unobligated funds returned from the nearly 400 court units throughout the judiciary.

The judiciary will advise appropriations subcommittee staffs of changes to this estimate.

# APPENDIX 1 - COURT SUPPORT STAFFING

This appendix discusses court support staffing for the courts of appeals, district and bankruptcy courts, and for probation and pretrial services offices. It also includes an explanation of the staffing formulas the judiciary uses to determine staffing requirements in the courts, a program statement explaining the purpose and function of these programs, and the importance of receiving adequate funding in fiscal year 2015 for these programs.

## Judiciary Staffing Formulas

The judiciary has employed work measurement for nearly twenty years to determine its staffing requirements, to enable it to justify funding requests for staffing to Congress, and to provide a reliable tool to allocate staffing resources equitably across court types and individual court units.  Though the methodology has changed over the years, work measurement's primary purpose remains to bring an empirically-based and practical approach to staffing allocation.

The formulas provide a valuable methodology to determine the level of funding necessary to keep pace with increasing or decreasing workload.  As workload fluctuates from year to year, the application of the formulas allows for a corresponding increase or decrease in staffing allocations. This applies both for national formulation purposes by court program type, and at the individual court level for allocation purposes.  The formula requirements are based on actual filings, not projected filings.

The staffing formulas are updated periodically to incorporate efficiencies derived from information technology initiatives, best practices, and other process improvements including shared administrative services.  This work measurement methodology uses a combination of core modeling and other measurement techniques that better reflect the courts' full staffing requirements. The staffing formulas are based on court-reported data and validated through simultaneous measurement by the Administrative Office.  A new staffing formula was developed for the district clerks offices and incorporated in the fiscal year 2015 request.  This new formula is projected to reduce staffing requirements by 12 percent.  The previous year, a 24 percent reduction in bankruptcy clerks' offices staffing requirements was achieved through the development of an updated staffing formula using refined work measurement techniques.  Development of a revised circuit and appellate court offices and bankruptcy administrator offices formulas is underway and will be completed for use in the fiscal year 2015 financial plan and fiscal year 2016 budget request.  The first ever staffing formula for federal defender organizations and an updated staffing formula for probation and pretrial services offices is underway and will be used in the fiscal year 2016 financial plan and the fiscal year 2017 budget request.  The new formulas will incorporate best practices, shared services, benchmarks, performance standards, and efficiency incentives.  The update to these staffing formulas offers an opportunity for significant emphasis on cost containment.

As a cost containment policy, the judiciary uses alternative staffing formulas to determine its court support staffing requirements.  These alternative formulas no longer utilize the average time to complete a task, but instead give more credit to

Appendix 1.1

435

This effort will continue in fiscal year 2015 at the requested funding level for the courts.

## Fiscal Year 2015 Court Support Staffing Requirements

In fiscal year 2015, the FTE request totals 18,981 FTE, an increase of 0.2 percent over the fiscal year 2014 estimated level of 18,950 FTE. The net increase of 31 FTE are for court reporters associated with changes in active and senior judges.

The fiscal year 2015 staffing build is summarized in Table A-1.1 below.

Table A-1.1 Fiscal Year 2015 Staffing Build

| | Court Support Staffing (FTEs) |
|---|---|
| FY 2014 Funded FTE | 18,950 |
| Adjustments for court reporters associated with changes in actives and senior judges | 31 |
| FY 2015 Funded FTE | 18,981 |

Information supporting each of the courts programs (bankruptcy courts, probation and pretrial services, district courts, and appellate courts) is presented in the following sections.

## Impact of Sequestration on Court Support Staffing

Court support staffing was hit particularly hard from sequestration. Since July 2011, staffing levels have decreased by 3,200 staff. In fiscal year 2013 alone, there was a 6 percent decrease in staff, which equates to over 1,200 employees.

Despite efforts by courts to insulate the public from the effects of sequestration, cuts in courthouse staffing have limited public access and slowed processing of cases. Supervision and treatment services, including mental health treatment, were reduced for federal defendants and offenders in the community. The frequency of officer face-to-face contact with relatively lowest risk offenders decreased by 11 days from fiscal year 2012 to fiscal year 2013. Similarly, frequency of contact with "low/moderate" risk offenders decreased by 4 days, while officers preserved as much time as they could for their higher risk offenders. Sequestration has also resulted in the lengthening of already severe backlogs in the processing of civil and bankruptcy cases.

Many court support employees were laid off or furloughed during this period. To mitigate the impact of sequestration further on employees, the courts slashed non-salary budgets (training, information technology, supplies, and equipment). As a result of fiscal year 2014 funding, most court units will begin to backfill a portion of the 3,200 staff lost since 2011.

courts which perform those tasks faster than the average. This has the effect of limiting the number of additional staff contained in the judiciary's budget request.

Appendix I.2

## Bankruptcy Courts

Table A-1.2 Major Bankruptcy Court Workload Indices[1]

| | 2012 Actual | 2013 Actual | 2014 Estimate |
|---|---|---|---|
| Bankruptcy Filings | 1,311,602 | 1,137,978 | 1,028,400 |

[1]For the 12-month periods ending June 30.

### Program Function Statement

Funding for the federal bankruptcy program is used for salaries and expenses of all active United States bankruptcy judges and supporting personnel as well as for expenses of operations and maintenance. These expenses include communication, printing, contractual services, supplies, equipment, and travel costs incurred by judges and supporting personnel in attending sessions of court or transacting other official business.

### Bankruptcy Clerks

The bankruptcy court clerks' offices serve a critical support role in processing bankruptcy matters. Their work includes: receiving and scanning petitions, schedules, pleadings and other documents; training attorneys, trustees and creditors to use the Case Management/Electronic Case Files (CM/ECF) system; reviewing electronically filed documents for accuracy and compliance with national and local rules, and taking corrective action as necessary; issuing summonses and subpoenas; processing motions; responding to inquiries from the public and other government agencies for case

information; maintaining case dockets; assigning cases to judges; creating notices to be sent to attorneys, debtors, and creditors; receipting and registering claims; scheduling hearings on motions, confirmation and other matters; issuing judgments; recording court proceedings; archiving closed case files; coordinating with the United States trustees and panel trustees; reporting statistics; scheduling and regulating the movement of cases; establishing motion and trial calendars; scheduling courtroom usage, providing court reporting/recording services and courtroom clerical staff, and maintaining the electronic filing system to enable cases to progress through the judicial system. Staffing resources are allocated based on a work measurement formula that converts specific tasks into work years. The most recent update of the bankruptcy clerks' offices formula demonstrated in a clear and convincing way how efficient the bankruptcy system is, and allows the judiciary to request the absolute minimum staffing level for bankruptcy clerks.

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) added responsibilities, especially those related to means testing, credit counseling and financial management courses, new chapter 13 and dismissal requirements, additional noticing, and applications for fee waivers. A work measurement study conducted after 2005 shows that BAPCPA added between 20 and 30 percent to the case processing time for bankruptcy clerks' offices.

The clerk of court serves as the chief administrative and financial officer for the court, and is responsible to the court, the United States government, and litigants for the proper collection, maintenance, and accounting for funds that come into the clerk's office. The clerk's office is authorized to collect all fees, costs, and other monies for the bankruptcy court and is accountable for

437

their payment to the United States Treasury. The clerk's staff also manages the planning and execution of the court's budget and financial processes.

## Workload Trends

A number of factors contribute to the workload in bankruptcy courts. Three of the major factors are the number of cases filed, the complexity of the cases, and the increase in pro se filings. The state of the economy and the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), are pivotal drivers of these factors.

<u>Case Filings</u>
Bankruptcy filings grew through the mid-1990s surpassing one million each year beginning in 1996 and reaching an all-time high in October 2005, just prior to the effective date of BAPCPA. In anticipation of the changes that BAPCPA would bring, filings increased significantly prior to the October 15, 2005 implementation date. Nationally, filings dropped by half in the following year. However the decrease did not last long, with filings increasing rapidly and reaching pre-BAPCPA levels as economic conditions worsened in the recent recession. Since bankruptcy filings tend to continue even after the economy recovers, the judiciary expects them to continue at high levels for some time.

More than 800,000 bankruptcy petitions were filed in September 2005 and October 2005, in anticipation of the implementation date of the BAPCPA. Post-BAPCPA, the law dictates that debts can be discharged (through chapters 7 and

11) once every eight years. October 2013 marked the eight year anniversary, and many consumers who filed their petitions just prior to BAPCPA are becoming eligible to have their debts discharged again. Due to this, an increase in filings during fiscal year 2014 and 2015 is possible.

<u>Case Complexity</u>
A second major aspect of the workload in bankruptcy courts (compounding the high filing level) is the impact of BAPCPA on case processing requirements. The law's additional requirements add substantially more work for the courts. For example, the law requires individual filers to receive a credit counseling briefing by an approved agency before filing for bankruptcy, and complete and pass a complex "means test" in order to be eligible for chapter 7 relief. Also, filers under chapters 7 and 13 may not receive a discharge of their debts unless they have completed an approved financial management course. These and other enhanced requirements must be reviewed by the clerks' office, which must take further action if the filers do not meet the requirements. A graphic example of the increased complexity comes from a bankruptcy clerks office that reported the more complicated cases after BAPCPA require 47 percent more docket entries per case than before BAPCPA. This is a very typical report, and confirms the results of the work measurement study showing increased work per case in the post-BAPCPA environment.

<u>Pro Se Filings</u>
Another factor adding to the workload of bankruptcy clerks' offices is the increased number and complexity of pro se filings. The clerks' office must provide assistance to pro se filers, and

Appendix 1.4

take more time reviewing materials prepared by individuals, rather than by lawyers who are bankruptcy experts. As expected, petitions and other documents submitted by pro se filers often contain many more errors and omissions than those filed by attorneys, resulting in the need for enhanced quality control and follow-up by clerk's office staff.

## Cost Containment Efforts

Bankruptcy courts are actively sharing administrative and operational services with the goal of containing costs for these services, as compared to providing the same services in individual courts. There are a number of examples across the country of bankruptcy courts successfully sharing services with other individual courts. This has recently led the courts in at least one circuit to begin formal sharing agreements where one court provides services to others throughout the circuit (e.g., cloud computing, virtualized servers, contracting officer services, case administration workload distribution, etc.).

The bankruptcy courts continue to be aggressive in the use of electronic filing. Bankruptcy courts open and process virtually all of their cases electronically. In addition, the courts have been enhancing efficiency through a combination of local management initiatives and court-developed automation innovations. For years the bankruptcy clerks have been adopting new management techniques, developing and sharing best practices, and using the flexibility provided under budget decentralization to invest in automation solutions that save resources as well as improve quality and performance. Current staffing levels are several hundred below the levels in fiscal years 2003 and 2004. Current case filings are nearly as high as they were in those years, and much more complex.

Since a major national system such as CM/ECF must be developed in stages and cannot address all requirements at once, courts have been developing and sharing local initiatives to enhance or extend the functionality of the system and address critical needs. These include cash receipting interfaces, automated case opening, electronic order processing, and calendaring/hearing scheduling programs.

Working with the Administrative Office, the courts are well under way to developing a Next Generation case management system to replace the current one. This effort ensures that the design and implementation will occur long before the threat of obsolescence of the current system occurs and thus helps to contain the cost of case processing in the future.

*The Methods Analysis Program Adds to Cost Containment*
To help ensure that all bankruptcy courts are knowledgeable about best case management practices, particularly as they relate to opportunities generated through electronic case filing and processing, the Administrative Office coordinates with court personnel to continually refine the Methods Analysis Program. This program focuses on identifying and disseminating "best" and/or alternative practices for case management and court operations (e.g., increased automated docketing capabilities, sharing of staff resources between bankruptcy courts, etc).

Appendix 1.5

439

Appendix I.6

Table A-1.3  Components of Bankruptcy Filings

| | Year Ending June 30 | Chapter 7 | Chapters 9, 11, 12, & 15 | Chapter 13 | Total | Adversaries Filed |
|---|---|---|---|---|---|---|
| ACTUAL[1] | 2005 | 1,196,212 | 7,097 | 433,945 | 1,637,254 | 95,177 |
| | 2006 | 1,164,815 | 6,670 | 313,085 | 1,484,570 | 84,772 |
| | 2007 | 450,332 | 6,031 | 294,693 | 751,056 | 65,099 |
| | 2008 | 615,748 | 7,662 | 344,421 | 967,831 | 51,496 |
| | 2009 | 907,603 | 14,525 | 384,187 | 1,306,315 | 51,738 |
| | 2010 | 1,133,320 | 15,035 | 424,242 | 1,572,597 | 68,540 |
| | 2011 | 1,083,671 | 13,556 | 432,333 | 1,529,560 | 77,570 |
| | 2012 | 914,015 | 11,664 | 385,949 | 1,311,602 | 57,494 |
| | 2013 | 778,845 | 10,139 | 348,994 | 1,137,978 | 45,668 |
| ESTIMATED | 2014 | 683,500 | 9,800 | 335,100 | 1,028,400 | 49,900 |

[1]Actual data for years 2005 through 2013 is based on the 12-month periods ending June 30.

## Program Function Statement

Funding for the federal probation and pretrial services system is used for the salaries and benefits of staff; drug testing; treatment of mentally ill and substance-abusing defendants and offenders; electronic monitoring; travel costs related to the supervision of defendants and offenders in the community; coordination with law enforcement and treatment providers; officer training; information technology; and normal business expenses.

### Workload Trends and Resource Requirements

Probation and pretrial services workload is dictated by the prosecutions brought by U.S. Attorneys offices and the number of inmates released to supervision by the Federal Bureau of Prisons (BOP).

In the 12-month period ending June 30, 2013, pretrial services officers conducted 102,457 new investigations on recently charged defendants and material witnesses stemming from new prosecutions. While the rate of future prosecutions is difficult to project, it is clear that prosecutions will remain focused on the most persistent and egregious offenders pursuant to Project Safe Neighborhood and other Department of Justice initiatives.

During the 12-month period ending June 30, 2013, the BOP released 53,022 inmates to the supervision of probation officers in the community. Combined with releases from previous years and probation cases, the daily supervision population reached 132,362 during the 12-month period ending June 30, 2013. As of January 2014, the BOP's population exceeds 216,044 inmates with nearly all of these inmates eventually to be released to terms of supervision.

## Probation and Pretrial Services

Table A-1.4 Probation and Pretrial Services Workload Indicators[1]

| | 2012 Actual (% Change from Previous Yr.) | 2013 Actual (% Change from Previous Yr.) | 2014 Projected (% Change from Previous Yr.)[2] |
|---|---|---|---|
| Convicted Offenders Supervised in the Community[3] | 187,887 (+3.0%) | 186,378 (-0.8%) | 188,800 (+1.3%) |
| Charged Defendants Supervised in the Community | 54,476 (+0.5%) | 53,022 (-2.7%) | 52,500 (-1.0%) |
| Investigative Reports Completed for Bail Determinations | 105,852 (-1.3%) | 102,457 (-3.3%) | 104,200 (+2.0%) |
| Investigative Reports Completed for Sentencing Determinations | 75,823 (-1.9%) | 70,897 (-6.5%) | 69,800 (-1.5%) |

[1] For fiscal years 2012 and 2013, the number of convicted offenders and charged defendants supervised in the community reflects persons initially received for supervision, under supervision for the entire period, or under supervision at the start of the period and closed. Persons with cases that fall in more than one of these three categories are counted only once.

[2] The fiscal year 2015 budget request is based on 2014 projected caseload (for the 12-month period ending June 30).

[3] June 2012 and 2013 actuals for probation supervision cases are from the National PACTS Reporting (NPR) database, which is administered by the Administrative Office of the U.S. Courts.

Appendix 1.7

## Investigations

Probation and pretrial services officers provide valuable service to the courts by investigating defendants and offenders, verifying information about these individuals, and making sound and timely recommendations to judicial officers. Pretrial services officers investigate defendants and recommend to the judge whether there are conditions that would reasonably assure the defendant's appearance in court and protect the community while the defendants' cases are pending disposition, as set forth under 18 U.S.C. § 3142.

Probation officers investigate persons convicted of federal crimes and recommend to the judge a sentence that addresses the factors set out in 18 U.S.C. § 3553. Probation officers' presentence reports are shared with the U.S. Attorney and defense counsel to provide notice of all sentencing issues and provide for an efficient and fair sentencing hearing. In 2013, probation officers produced 70,897 sentencing related investigative reports.

## Postconviction Supervision

During the 12-month period ending June 30, 2013, 62,605 offenders began terms of community-based supervision. More than 76 percent of those offenders were received after having completed a custodial sentence with the Bureau of Prisons. In comparison, in 1985 (before the Sentencing Reform Act), only 48 percent of offenders supervised by federal probation had served a custodial sentence; the majority were sentenced to probation. These figures reflect the continued trend of increasingly challenging offenders released to the community. The challenge is more apparent when one considers the offenses for which these persons are under supervision; 47 percent of offenders were convicted of narcotics trafficking offenses and 23 percent were convicted of either a violent, sex or weapon offense.

## Managing Increasing Risk

Many offenders present significant risk to the community, risk that must be mitigated through proactive, community-based supervision. One strong predictor of risk is the nature of the offender's prior criminal record, and the severity of the criminal history of persons coming under federal supervision, which has been increasing. In 2002, offenders with a criminal history category of II[1] or greater, as determined by the U.S. Sentencing Guidelines, constituted 30 percent of the supervision population. By 2013, offenders in those criminal history categories constituted 52 percent of the population.

The primary actuarial tool probation officers currently use for predicting recidivism is the Risk Prediction Index (RPI). Developed by the Federal Judicial Center and approved by the Judicial Conference in 1997, the RPI enables officers to score offenders objectively on a scale of 0 to 9, where 9 indicates the greatest likelihood of re-offending. The RPI calculates risk using seven static factors, such as whether a firearm was used during the initial offense and level of education. Since 2003, national average RPI scores have steadily increased for all offenders (from 3.04 to 3.79), as well as for subgroups, such as those convicted of drug and violent offenses. This increase is driven by offenders with more extensive and violent criminal

---

[1] To be in a Criminal History Category of II or greater, the person must have multiple prior convictions or a single conviction that resulted in an imprisonment term of sixty days or greater, or committed the federal offense while serving an earlier term of probation, parole or recent release from prison. See U.S. Sentencing Guidelines Section 4A1.1

histories, greater mental health and substance abuse problems, and challenges finding employment.

Probation officers must intensify their supervision efforts in the growing number of cases with increased risk. Chief among those efforts is the officers making themselves a presence in the offender's community life, interacting with the offender in the home, neighborhood, and place of employment. Officers also conduct drug tests, develop sources of information in the community, and conduct surveillance and searches when appropriate. If behavior potentially leading to criminal behavior is exposed, officers take both punitive and corrective action. For example, if an offender is abusing alcohol, the probation officer can petition the court for an intermediate sanction, such as community service, as well as enroll the offender in a treatment program and conduct additional random tests for alcohol use. The probation officer's goal is to ensure compliance with the conditions of supervision and take action to preempt a decline in the offender's conduct or life situation.

*Serious Violations and Revocation*

Serious violations of supervision, where the offender commits a violent new offense (homicide, rape, assault, robbery, a felon in possession of a firearm, kidnaping, or racketeering) are relatively rare in the federal system. The proactive approach taken by officers normally allows them to identify and deal with minor violations swiftly before they escalate to more serious criminal activity. Of the 54,801 cases closed from post-conviction supervision during the 12 months ending June 30, 2013, only one percent (618 cases) involved revocations for new violent crimes (assaults, homicides, kidnaping, rapes and robberies). By comparison, 28 percent of all cases

nationally were closed by revocation, most due to technical violations such as failure to participate in drug treatment or absconding, in which the court and probation officer intervened before criminal recidivism could occur.

*Assisting With Reentry*

Many offenders on supervision lack adequate life skills to transition back into society smoothly. Officers help offenders to either re-establish, or secure for the first time, appropriate housing, employment, and legitimate community relationships. They provide life skills counseling and leverage programs offered by other federal agencies and local social service organizations. Success on supervision requires offenders to overcome not only the original factors that contributed to their criminal behavior, but institutionalization, alienation from family and friends, and other consequences of a lengthy prison term. Throughout the country, officers are securing resources for offenders, cultivating employment prospects, and developing collaborative relationships with a wide variety of organizations. All of these efforts aim to assist in the transition of offenders back into the community.

*Substance Abuse and Mental Health*

Substance abuse and mental health conditions among defendants and offenders continue to influence workload in probation and pretrial services offices. From fiscal year 2010 to fiscal year 2013, the number of defendants and offenders under supervision receiving contract substance abuse treatment decreased 12 percent, from 39,553 to 34,884. However, during that same time period, the number of defendants and offenders receiving mental health treatment rose from 17,673 to 18,932 cases, an increase of 7 percent.

Appendix 1.9

Drug and mental health problems usually are detected during pretrial or presentence investigations when officers administer drug tests, interview the defendant and third parties, contact the defendant's family and associates, and review medical, employment and school records. The significant number of defendants and offenders with substance abuse and mental health conditions creates more challenging work for probation and pretrial services officers. Officers have to investigate and assess treatment resources available in the community, contract for those services where necessary, formulate treatment plans, and develop supervision strategies for relapse prevention and detection.

*Sex Offenders*

As of September 30, 2013, there were 8,337 federal offenders under supervision in the community who were either convicted of a sex offense, required to register as a sex offender under state or local law, or ordered by a court to undergo sex offender treatment. Another 1,269 defendants were under pretrial supervision for sex offender related risks, including pending charges or a history of sexual offenses in their background. Although this is a relatively low percentage of the total number of offenders under supervision in the community, sex offenders require specialized supervision techniques and enhanced monitoring.

Sex offenders differ from other offenders because of the nature and impact of their crimes on victims. Probation and pretrial services officers supervising sex offenders are required to understand the complex issues related to sexual re-offending, risk assessment, and risk management. To reduce recidivism and protect the community, officers supervising such offenders must use specialized supervision techniques, such as polygraph examinations, psychosexual evaluations, intense sex offense-

specific counseling, surveillance, internet/location monitoring, and enhanced community collaboration. Where necessary, officers must contract for services to address the above needs. In response to the rising number of pretrial defendants charged with sex offenses, specialized treatment services were developed to meet the needs of this population.

When monitoring offenders who are under supervision for a federal sex offense, or who have a history of sex offenses, officers must work closely with local and state law enforcement agencies and sex offender registries as the states continue to implement the Sex Offender Registration and Notification Act (SORNA). Although SORNA (Title I of the Adam Walsh Child Protection and Safety Act of 2006, Public Law 109-248, July 27, 2006) is the responsibility of the states to implement, officers supervising offenders required to register must ensure that the offenders comply with such requirements where they live, work, and attend school.

In order to maintain proficiency with evolving sex offender management techniques, a Sex Offender Management Working Group was created in 2008. The group consists of sixteen members including officers, specialists and supervisors with specialities in sex offender management, sex offender treatment, electronic monitoring, and cyber-crime technologies. The group's work will result in policy changes and the creation of a monograph specific to the supervision of sex offenders.

*Scientific and Technological Changes*

Probation and pretrial services officers must keep up with technological innovations such as the various location monitoring technologies that can track defendants and offenders both in their homes and in the community. These

Appendix 1.10

technologies include voice recognition to confirm offenders' presence in their homes at random times, radio frequency to provide continuous monitoring of offenders in their homes, and Global Position Systems (GPS) to provide continuous tracking of offenders' movements in the community in both passive and real time. Active GPS tracking continues to be an effective supervision tool for monitoring sex offenders as it gives officers the ability to establish prohibited areas (zones) in the community for offenders (for example, schools, parks, and daycare centers). If an offender enters such a zone, an alert will be generated to notify the officer that he or she must conduct an investigation to determine if a violation has occurred.

New location monitoring technologies have emerged that also allow officers to monitor offenders' locations in the community and in their homes through the use of one-piece tracking devices, instead of the combination of both a transmitter and tracking device. Location monitoring technologies also offer the ability to track offenders and detect alcohol consumption through the location monitoring transmitter worn by the offender simultaneously.

Technological advances in internet monitoring and computer forensic analysis have added a new dimension to how officers hold defendants and offenders accountable. These technologies have changed officers' responsibilities in that they have required officers to become aware of the software and services available to monitor defendants and offenders' internet use and know how to use them effectively. The technology tools available include software programs and services that allow an officer to view a defendant or offender's internet use in real time, thus allowing that person to have legal internet access with minimal intrusion from the officer.

## Research-Based Practices

The judiciary is committed to implementing a results-based management and decision-making framework for its community supervision program. It is also the desire of the judiciary that its supervision program become an evidence-based system, meaning that employees at every level, use the best available evidence to make decisions. In this case, the goal is to collect, analyze, and use data from probation officers' electronic case files and a variety of other sources to inform decision making and drive performance improvements aimed at reducing recidivism and fostering long-term positive changes in individuals supervised. On an ongoing basis, the judiciary wants the ability to test underlying assumptions about the relationship between supervision practices and supervision outcomes.

The judiciary has developed a protocol to assimilate arrest data using the International Justice and Public Safety Network, National Law Enforcement Telecommunications System (NLETS). Similarly, the judiciary is collaborating with other federal agencies, such as the Bureau of Prisons, the Census Bureau, and the U.S. Sentencing Commission, to obtain data about offenders' backgrounds, criminal histories, and the communities in which they live. In addition to internal research, the judiciary has partnered with universities, nonprofit organizations and other federal agencies to test various hypotheses about effective supervision practices.

Running concurrent to these research efforts, the judiciary is working to implement practices that have demonstrated success in reducing recidivism with local, state, and international offenders. Many of these practices require new skills not yet uniformly held by federal probation and pretrial services officers. In 2007, the judiciary established a 3-year Research-to-Results (R2R) program. This effort provided

## Continued Expansion of Staff Training Aimed at Reducing Re-Arrest (STARR)

In April 2013, the AO extended implementation of the STARR program, which provides training in core correctional skills, to 26 additional districts, bringing the total to 40 districts. Probation and pretrial services offices participating in this effort agreed to train all their officers to use these core correctional practices in their interactions with defendants and offenders. Efforts over this past year included management implementation training, coaches training, and officer training. Additionally, AO staff used the experiences of chiefs, managers, STARR coaches, and other staff in these numerous districts to begin the development of a formal STARR curriculum. This curriculum will be used by a group of officers who excelled in the use of STARR skills and completed a train-the-trainers program.

The output of the risk tool in conjunction with case planning provides a roadmap of the areas in an offender's life that need attention. The next hurdle is to provide officers with the skills necessary to address the deficits identified in the assessment. A large effort is underway to build the judiciary's internal capacity to train, execute and monitor the fidelity of effective supervision practices. This is a large effort that will take several years to complete.

### Cost Containment Efforts

To contain costs and maximize community protection, the judiciary has developed a work measurement formula, actuarial risk assessment tools and supporting policies that stratify cases based on their relative risk and needs. As a result, resources of the probation and pretrial services system are focused on cases presenting the potential for harm, while resources dedicated to the lowest risk cases are reduced.

resources to 16 volunteer districts to cover the costs of officer training and additional services related to implementing evidence-based practices. The lessons learned from these 16 districts were significant and led to the first national evidence-based initiative, the assessment of offender risk and needs.

### Risk Assessment Development Continued

Risk assessment in both pretrial services and post-conviction supervision evolved over the past year. The Pretrial Risk Assessment (PTRA) underwent significant statistical review and subsequent modifications. The Administrative Office (AO) conducted a validation study that confirmed the high predictive validity of the assessment instrument, that predicts the likelihood of failure of pretrial release. The validation included a review of test questions that were part of the PTRA from its inception. Although the test questions were correlated with pretrial failure, they did not contribute to the overall predictive power of the instrument. A redesign of the PTRA, removing the test question, was subsequently completed.

The Post-Conviction Risk Assessment (PCRA) saw a rapid increase in implementation. Over 90 percent of all cases on supervision have at least one completed risk assessment and over 300,000 PCRA have been completed to date. Plans for further statistical validation and the development of a violence risk assessment remain top priorities in the coming year.

The AO also partnered with the U.S. Marshals Service to develop a risk prediction instrument that predicts the likelihood that a sex offender, particularly one convicted only of a non-hands-on offense such as trafficking in child pornography, will commit a future hands-on offense.

To reduce costs further, in cases where the person under supervision meets certain criteria and no longer poses an unreasonable risk of harm to the community, probation officers are required to recommend termination of supervision before expiration of the term. The AO conducted a study on persons who were granted early termination of supervision under 18 U.S.C. §§ 3564 and 3583(e)(1) to investigate whether early termination poses a risk to the community in terms of increased recidivism. The study concluded that persons granted early termination were re-arrested within three years at approximately half the rate of similarly situated offenders who did not receive early termination. This study suggests that early termination is a promising cost-containment strategy that allows federal probation offices to focus increasingly scarce resources on offenders who pose the greatest risk.

## Cost of Supervision Versus Incarceration

The cost of detaining a defendant in jail pending trial in fiscal year 2012 was $73.03 per day, or over ten times the $7.24 a day it cost to release the defendant to the supervision of a pretrial services officer. Similarly, the post-conviction imprisonment of an offender in a federal prison facility cost $79.31 per day in 2012, or more than eight times the $9.17 daily cost for a probation officer to supervise an offender in the community. Fiscal year 2013 data is not yet available.

The offenders who had their supervision cases closed during the 12-month period ending June 30, 2013, paid as much as $993 million in financial sanctions (fines, restitution and criminal assessments) and performed 630,594 hours of community service. Specific data is unavailable on taxes paid and financial support provided to dependents by these offenders, but projections put the combined total in the range of $1.5 billion for the period of supervision[1].

## Improved Substance Abuse Testing Methodologies

The detection of illegal substances is a critical part of supervision and one of the few objective tools officers have at their disposal. The judiciary conducts most of its testing by urinalysis, the most proven and researched method to detect illegal substances. Testing is performed by three methods: 1) national contracts with laboratories to conduct drug testing outside judiciary facilities, 2) a national contract for districts to obtain drug testing and operate on-site drug testing laboratories, and 3) the decentralized procurement of non-instrumented drug testing devices, which also allow on-site testing. Several districts operating on-site drug testing laboratories have also established relationships with other districts to provide testing services. The advantages of conducting on-site drug testing are twofold: cost-effectiveness and operational efficiency. On-site drug testing provides results quickly, thereby enabling officers to take action immediately if the results are positive. Research shows that immediate action after a positive urinalysis test deters further illicit drug use and reduces the likelihood of criminal behavior.

In addition to operational efficiency, on-site testing is cost effective. A standard panel of five drugs and validity testing at a commercial laboratory costs an average of $7.95, or an average of $1.49 per test ($.50 for validity testing). On-site laboratories test specimens with an accuracy and reliability that

---

[1] It is estimated that, on average, an offender pays a total of $10,000 a year in child support and taxes (income, sales and real estate). With $2,600 offenders completing an average of 3 years of supervision, the total exceeds $1.5 billion.

Appendix I.13

rival the contract laboratories at a cost of $.80 per drug test and $.58 for validity testing (a test for creatinine, which is used to detect any dilution effort by the offender). Non-instrumented devices vary in their price, but cost an average of $.50 per drug, and some have the capability for validity testing.

*Information Technology*

The judiciary continues to use information technology to reduce costs and improve the effectiveness and efficiency of probation and pretrial services officers. The projects currently in use by officers and that are being enhanced include the Probation & Pretrial Services Automated Case Tracking System, Electronic Reporting System, Access to Law Enforcement System, Electronic Probation and Pretrial Services System, Safety Information and Reporting System, Decision Support System, and Mobile Technology.

Probation & Pretrial Services Automated Case Tracking System (PACTS) is the case management system used by officers in investigation and supervision of offenders and defendants. The Offender Payment Enhanced Report Access system is integrated with PACTS for officers to monitor fines and restitution payments made by persons under supervision.

The Electronic Reporting System allows officers to collect routine, administrative data via kiosks, web sites and advanced phone systems thereby reducing paperwork and allowing officers to focus on high priority issues.

The Access to Law Enforcement System provides officers with easy access to criminal records and allows officers to run criminal records remotely, making them less dependent on being in the office.

The Electronic Probation and Pretrial Services System allows officers to store documents in electronic format, instead of paper, which saves on space, improves security, and enhances accessibility to the documents when needed. It also makes it more efficient to share the documents with other agencies, such as the Bureau of Prisons and U.S. Sentencing Commission.

The Safety and Information Reporting System makes it easier for officers to provide information on hazardous incidents and search and seizures.

The Decision Support System takes operational data and combines it to allow for research and better utilization of resources.

The Mobile Technology program provides officers with iPad, iPhone, and Blackberry devices that allows remote access to our information systems and thereby allowing officers to spend more time in the community interacting with persons under supervision. The investment in mobile technolgy is expected to continue reducing space requirements in probation and pretrial services offices.

Appendix 1.15

Table A-1.5   Offenders Under Supervision by Type of Supervision - Projections Through 2014

| | Year | Probation | Supervised Release | Parole | BOP Custody | Total |
|---|---|---|---|---|---|---|
| ACTUAL[1] | 2004 | 29,485 | 77,963 | 3,435 | 2,479 | 113,362 |
| | 2005 | 26,917 | 82,488 | 3,187 | 416 | 113,008 |
| | 2006 | 25,326 | 85,116 | 2,979 | 276 | 113,697 |
| | 2007 | 24,163 | 88,874 | 2,696 | 197 | 115,930 |
| | 2008 | 23,028 | 94,349 | 2,519 | 155 | 120,051 |
| | 2009 | 22,926 | 98,560 | 2,220 | 133 | 123,839 |
| | 2010 | 22,707 | 101,701 | 2,089 | 145 | 126,642 |
| | 2011 | 22,604 | 104,671 | 1,870 | 174 | 129,319 |
| | 2012 | 22,419 | 108,528 | 1,664 | 174 | 132,785 |
| | 2013 | 21,114 | 109,516 | 1,473 | 259 | 132,362 |
| ESTIMATED[2] | 2014 | 20,000 | 110,500 | 1,200 | 200 | 131,900 |

[1]Actual data for years 2004 through 2013 is based on the 12-month period ending June 30.

[2]Estimates for the 12-month period ending June 30, 2014.

Appendix I.16

Table A-I.6   The Changing Supervision Population - Offenders on Probation vs. Offenders Released from Prison

| | Year | Offenders on Probation | | Offenders Released from Prison[1] | | Total |
|---|---|---|---|---|---|---|
| ACTUAL[2] | 2004 | 29,485 | 26% | 83,877 | 74% | 113,362 |
| | 2005 | 26,917 | 24% | 86,091 | 76% | 113,008 |
| | 2006 | 25,326 | 22% | 88,371 | 78% | 113,697 |
| | 2007 | 24,163 | 21% | 91,767 | 79% | 115,930 |
| | 2008 | 23,028 | 19% | 97,023 | 81% | 120,051 |
| | 2009 | 22,926 | 19% | 100,913 | 81% | 123,839 |
| | 2010 | 22,707 | 18% | 103,935 | 82% | 126,642 |
| | 2011 | 22,604 | 17% | 106,715 | 83% | 129,319 |
| | 2012 | 22,419 | 17% | 110,366 | 83% | 132,785 |
| | 2013 | 21,114 | 16% | 111,248 | 84% | 132,362 |
| ESTIMATED[3] | 2014 | 20,000 | 15% | 111,900 | 85% | 131,900 |

[1]Includes terms of supervised release, parole, mandatory release, and military parole.

[2]Actual data for years 2004 through 2013 is based on workload for the 12-month period ending June 30.

[3]Estimates for the 12-month period ending June 30, 2014.

## District Courts

Table A-1.7 Major District Court Workload Indices[1]

| Filings | 2012 Actual | 2013 Actual | 2014 Estimate |
|---|---|---|---|
| Criminal Case Filings | 73,455 | 69,642 | 65,400 |
| Criminal Defendants Filed | 96,915 | 91,812 | 87,800 |
| Civil Case Filings | 286,232 | 283,087 | 287,400 |

[1]For the 12-month periods ending June 30.

### Program Function Statement

Funding for the district court program is used for salaries and benefits of all active United States district judges, magistrate judges and all such judges who have retired from office or from regular active service. In addition, this funding is used for the salaries and expenses of the district court support personnel, such as the administrative and legal aides required to assist the judges in conducting hearings, trials and other judicial functions. It also funds all operation and maintenance costs, such as communications, printing, contractual services, supplies, equipment, law books, travel expenses incurred by judges and supporting personnel in attending sessions of court or transacting other official business, and relocation costs.

### District Clerks

The clerk's office is responsible for attorney admissions, case intake, docketing of pleadings and motions, service of process, events scheduling, receipting and accounting for fees and fines collected, case tracking, provision of court reporting and court interpreting services, alternative dispute resolution programs, statistical reporting, training of attorneys on the case management system (CM/ECF) and jury management, all of which are essential elements in processing criminal cases and resolving civil cases. Public and private sector entities rely on effective case processing by the clerks' offices.

The proper functioning of the offices of district court clerks enhances the efficiency of the offices of the U.S. Attorney, U.S. Marshals Service, Federal Public Defender, and Probation and Pretrial Services. Other participants, including litigants, attorneys, witnesses, court reporters, court interpreters, expert witnesses, the media, and jurors are impacted by the effective operations of the clerks' offices. To enable these court participants to work together effectively, the clerk's office manages courtroom space, automation services, audio and video systems, and other administrative functions, as well as the support required in the courtroom for the proper functioning of the proceedings. The judicial system as a whole benefits from the professional management services provided by the clerks' office.

### Court Interpreters

The district courts use both staff and contract court interpreters. Staff court interpreters serve in district courts where there is a substantial need for interpreting services on a daily basis. This is particularly true in the Southwest border courts. Locating, scheduling, and contracting with court interpreters is not practical in locations that have daily needs for interpreting services.

Spanish remains the most used language for interpreters in the courts, accounting for 96.7 percent of all reported interpreting events in fiscal year 2013. For the 12-month period ending September 30, 2013, there were approximately 330,819 court events that required the services of a staff or contract court interpreter. Of those events, approximately 318,953 were in Spanish. During fiscal year 2013, the judiciary expended approximately $10.7 million on contract court interpreting services. The judiciary expects this high level of interpreter usage to continue, especially due to the high volume of workload along the Southwest border and the prosecution of other immigration and terrorist-related cases.

At the same time, the judiciary has continued to expand the Telephone Interpreting Program (TIP), which allows interpreting for short proceedings to be provided by telephone from courts with specialized or abundant interpreting resources. A new service provider court was added in fiscal year 2013, bringing the total number of TIP provider courts to 11.

Although TIP use decreased by approximately 220 events to 3,749 events from fiscal year 2012 to fiscal year 2103, current usage still represents an overall increase of 132 events over fiscal year 2010. Despite the decrease in the number of events in fiscal year 2013, more court locations are using TIP to cover interpreting events in more languages. In fiscal year 2012, 56 districts in 102 locations received TIP services, while in fiscal year 2013, 54 Districts in 104 locations received TIP services. In addition, TIP events took place in 42 languages in fiscal year 2012 and 44 languages in fiscal year 2013.

## Pro Se Law Clerks

The objective of the pro se law clerk program is to receive, prepare, and process civil complaints filed against the

government by prisoners and individuals without attorney representation. The pro se law clerks review complaints for procedural adequacy to permit judges to proceed with the disposition of the cases. Without adequate staffing, district judges and magistrate judges will have to perform this work at the expense of other case work.

## Grand and Petit Juror Programs

In the grand and petit jurors program, many courts have stopped supplying postage-paid return envelopes for prospective jurors to return their qualification questionnaires, which not only frustrates citizen-jurors, but reduces the response rates. This in turn forces the courts to spend more money mailing additional qualification questionnaires out to obtain sufficient qualified jurors. More aggressive follow-up procedures lead to more diversity in the qualified jury pools, so reductions in this area are impacting the courts' ability to draw a fair cross section of citizens to serve on juries.

The number of pro se law clerks is determined by a formula driven by prisoner petition filings. This formula recognizes the different workload associated with different types of prisoner cases by providing 13.4 hours of staffing credit for civil rights cases and 8.3 hours of habeas corpus cases. For the 12-month period ending June 30, 2013, there were 55,383 petitions filed, an increase of 1,777 cases nationally from the previous year. The judiciary projects a 1.5 percent increase in 2014 prisoner petition levels to 56,232.

## Death Penalty Law Clerks

Death penalty law clerks serve both as substantive legal resources to judges in death penalty habeas corpus matters, and as case management monitors, since capital cases are generally

Sound information management systems help to ensure the courts' obligations to the public are met while streamlining business functions to keep costs under control. Providing a sufficient number of clerks' office personnel is critical to the entire justice system. The output and efficiency of resources (judges, prosecutors, defenders, court reporters, court interpreters, jurors, and witnesses) is dependent upon the efficiency of the clerks' offices. Reductions to the district court staffing impact all of the convergent participants in the judicial process.

## Criminal Case Filings

For the 12-month period ending June 30, 2013, criminal cases filed totaled 69,642, a 5.2 percent decrease from the 2012 level. In 2014, the judiciary projects criminal filings will decrease by 6.1 percent to 65,400. See Table A-1.8 on page 1.22. The number of criminal defendants charged in 2013 totaled 91,812 a decrease of 5.3 percent from the 2012 level. In 2014, the judiciary projects the number of criminal defendants will decrease by 4.4 percent to 87,800. Criminal case filings are influenced by the number of United States Attorneys and the emphasis on prosecution of illegal immigration, drug crimes, and violations of firearm laws. These projections may not reflect fully the workload associated with additional resources recently provided to law enforcement agencies for increased immigration enforcement.

### Southwest Border Workload Increase

The district courts situated along the border with Mexico have experienced a tremendous increase in criminal workload since the early 2000s. The districts of Arizona, California-Southern, New Mexico, Texas-Southern, and Texas-Western have experienced compounded growth rates of 56 percent, 32

lengthy and involve numerous issues. The staffing formula for these positions provides credit for death penalty cases pending in federal court that are not stayed. It includes a constant or open-the-door factor. Courts must have three pending death penalty cases to be eligible for a half-time position and nine cases for a full-time position. For the 12-month period ending June 30, 2013, there were 618 pending death penalty cases that were unstayed. This is an increase of 12 cases nationally from the previous year.

## Workload Trends and Resource Requirements

The number of criminal defendants, the mix of civil cases, juror activity, and the number of authorized judges require the courts to make staffing adjustments as dictated by the staffing formulas, which are based primarily on civil and criminal cases and the number of judges supported.

### Staffing in the District Courts

While the district courts have been focused on improving all operational areas, a critical need remains to have full staffing resources available to support the judges and case processing requirements in the courts. With the dependence on the electronic case filing system, many courts continue to retool their offices and change from primarily a clerical focus to an automated and technical focus which requires the hiring and training of a professional workforce with more technical skills. Thus, the need for the clerk's office to maintain a robust information technology skills will continue to grow. This requirement stems from the need to meet the information demands of an increasingly sophisticated bench, bar and public and the need to automate and integrate many of the clerks' offices business functions in the areas of accounting, budgeting, case management, records management, and juror management.

Appendix 1.19

percent, 44 percent, 10 percent, and 4 percent, respectively, in the number of felony defendants from 2009 to 2013. The District of New Mexico has experienced a 26 percent increase in felony defendants from 2012 to 2013 alone.

The five courts on the Southwest border account for 36 percent of all felony defendants processed in district courts nationwide. The time-sensitive nature of criminal cases, due to statutory deadlines in the Speedy Trial Act, multiple hearings for defendants (i.e., initial appearances, arraignments, and pleas in the early stages alone), and the need for interpreter services, increases the courts' need for adequate staffing resources.

While criminal cases take precedence over civil cases, the courts need adequate staffing to keep up with the civil workload, otherwise civil case processing and disposition are delayed. This delay negatively impacts litigants because it prolongs the uncertainty of a pending legal action.

### Civil Case Filings

For the 12-month period ending June 30, 2013, civil case filings decreased from 286,232 to 283,087 cases, a 1.1 percent drop from 2012. See Table A-1.8 on page I.22. The judiciary projects 2014 civil case filings to increase 1.5 percent to 287,400. These projections do not take into account all future, large-volume multi-district or class action litigation, as this type of litigation is often difficult to predict.

### Cost Containment Efforts

The judiciary's Case Management/Electronic Case Files (CM/ECF) system, in use by all district courts, allows courts to manage documents and court dockets electronically and provide 24-hour case file access to judges, court staff, and the

public. CM/ECF also allows attorneys and the courts to file documents over the internet. Just over 45 million cases are on the CM/ECF system and more than 700,000 attorneys and others have electronically filed documents. The CM/ECF system accepts documents in Portable Document Format (PDF). Electronic filing saves time, postage, paper, copying, and courier costs for attorneys and for the judiciary.

CM/ECF saves the litigants' resources and also saves docketing and paper handling costs for the district clerks. Court staff, however, have had to enhance their quality control efforts to ensure that the information entered is accurate and complete. Failure to do so in a timely manner results in parties in a case taking action based on erroneous information. Further, the courts are moving forward with efforts to develop the next generation of CM/ECF. They have finalized the functional requirements for the new system and software design has begun. These requirements include extensive feedback from judges, court staff, and additional stakeholders such as government attorneys, private practitioners, and researchers, and seek to optimize technology to gain efficiencies.

### Juror Management System

With the deployment of eJuror, the Jury Management System (JMS) web page, prospective jurors now have the option of completing qualification questionnaires and obtaining jury service information online 24 hours a day. Courts save time as there are fewer forms processed manually, there is less data entry and there is an increased level of data reliability. Many functions that required the intervention of court staff, such as deferrals and certificates of attendance, have been automated and are available online for the public, thereby reducing demands on staff time. Courts save on postage costs and eliminate unnecessary delays by communicating with jurors via

email. Seventy-six courts are now live on eJuror of the 89 that have installed it, leaving 13 of those yet to go live. Based on current overall eJuror utilization rates averaging around 25 percent, it is projected that the eJuror function will save the judiciary an estimated $1.4 million per year in postage and staff time when all 94 districts are employing eJuror. However, a few district courts have been experimenting with process changes to encourage wider use of eJuror which have resulted in significantly higher eJuror usage rates of 60 to 80 percent. As additional courts adopt similar process changes leading to eJuror usage rates in the 60 to 80 percent range, the estimated savings per year will increase substantially.

### District Methods Analysis Program

The District Methods Analysis Program (DMAP) identifies better practices in court operations and shares them with other courts. Court working groups have focused on various civil and criminal topics, as well as CJA voucher processing and the management of multi-district litigation cases. Most recently, the program looked at ways to improve the processing of criminal fines and restitution and developed best practices for quality control. Currently, a group is addressing ways to improve the management of pro se cases. The best practices and other resources that are the result of the DMAP are posted on the judiciary's intranet site for courts to reference.

### Telephone Interpreting Program

The use of the judiciary Telephone Interpreting Program (TIP) has ensured the availability of federally certified or otherwise qualified interpreters for defendants in short court proceedings and has saved over $13.8 million for the judiciary in travel and other costs since the Judicial Conference approved the program in 2001. TIP allows an interpreter at a remote location to deliver simultaneous interpretation of court proceedings for defendants and consecutive interpreting by means of a two-line telephone system. TIP interpreters can be used for multiple assignments on the same day, and have significantly reduced time and travel costs. Telephone interpreters are used for a wide range of hearings, especially initial criminal matters that must occur quickly.

A number of courts are now working with state prison facilities to accept prisoner petition filings electronically. This effort allows prisoners, through equipment located in the prison facilities, to submit petitions to the court electronically. The submission of the petitions electronically provides savings in both court and correctional center staff time, and it allows court staff to focus on more critical work efforts. In addition to staff savings, there are other savings in the expenditures for paper, envelopes, copier supplies and postage. District courts that have partnered with state correctional facilities are now also supporting other district courts interested in using this technology.

Appendix 1.21

455

Table A-1.8  Civil and Criminal Filings

| | Year | Civil Filings | Percent Increase/Decrease | Criminal Filings | Percent Increase/Decrease |
|---|---|---|---|---|---|
| ACTUAL[1] | 2005 | 282,758 | 9.5% | 69,876 | -1.7% |
| | 2006 | 244,343 | -13.6% | 67,872 | -2.9% |
| | 2007 | 272,067 | 11.3% | 67,674 | -0.3% |
| | 2008 | 256,354 | -5.8% | 70,024 | 3.5% |
| | 2009 | 257,204 | 0.3% | 75,324 | 7.6% |
| | 2010 | 285,215 | 10.9% | 78,213 | 3.8% |
| | 2011 | 289,630 | 1.6% | 78,764 | 0.7% |
| | 2012 | 286,232 | -1.2% | 73,455 | -6.7% |
| | 2013 | 283,087 | -1.1% | 69,642 | -5.2% |
| ESTIMATED[2] | 2014 | 287,400 | 1.5% | 65,400 | -6.1% |

Table A-1.9  Components of Civil Caseload

| | Year | Social Security | Diversity | Prisoner Filings | All Other | Total |
|---|---|---|---|---|---|---|
| ACTUAL[1] | 2005 | 16,066 | 66,532 | 62,716 | 137,444 | 282,758 |
| | 2006 | 14,052 | 65,800 | 55,775 | 108,716 | 244,343 |
| | 2007 | 12,964 | 86,506 | 53,222 | 119,375 | 272,067 |
| | 2008 | 13,329 | 76,284 | 55,374 | 111,367 | 256,354 |
| | 2009 | 13,222 | 81,188 | 52,237 | 110,557 | 257,204 |
| | 2010 | 13,725 | 104,703 | 51,748 | 115,039 | 285,215 |
| | 2011 | 15,697 | 101,508 | 53,692 | 118,733 | 289,630 |
| | 2012 | 17,043 | 94,568 | 53,606 | 121,015 | 286,232 |
| | 2013 | 19,121 | 89,359 | 55,369 | 119,238 | 283,087 |
| ESTIMATED[2] | 2014 | 20,600 | 91,000 | 57,300 | 118,500 | 287,400 |

[1]Actual data for years 2005 through 2013 are based on the 12-month period ending June 30.

[2]Filing estimates for the July 1, 2013 through June 30, 2014 statistical year will be updated in the spring of 2014.

Appendix 1.22

456

## Courts of Appeals and Circuit Units

Table A-1.10  Appellate Court Workload[1]

| | 2012 Actual | 2013 Actual | 2014 Estimate |
|---|---|---|---|
| Appeals Filings | 57,699 | 56,360 | 56,600 |

[1] For the 12-month periods ending June 30.

### Program Function Statement

Funding for the courts of appeals and circuit units includes the salaries and benefits of all active United States circuit judges, and all such judges who have retired from office or from regular active service. In addition, it provides for the salaries and expenses of the courts of appeals supporting personnel such as the administrative and legal aides required to assist the judges in the hearing and decision of appeals. Funding also includes all expenses of operation and maintenance such as communications, printing, contractual services, supplies, equipment, law books, travel costs incurred by judges and supporting personnel in attending sessions of court or transacting other official business, and relocation costs.

### Circuit Executives

The principal responsibility of the circuit executive's office is to act as the secretariat for the circuit's judicial council and its committees, and in some circuits, for the court of appeals and its committees. In this capacity, the circuit executives' offices participate in policy oversight and assist in many areas of circuit-wide importance. These include planning for the effective and efficient use of space and facilities, information technology, financial management and budget decentralization, and planning and organizing the circuit's judicial conference. The circuit executives' offices also provide vital administrative and logistical support to the courts of appeals, including information technology, procurement, budget management, and personnel administration.

### Appellate Clerks

The clerks' offices are the public business offices for the appellate courts and provide specific centralized management in case-related and logistical areas. Employees in clerks' offices perform essential functions necessary for the operation of the courts, such as:

- recording and maintaining all case filings, including public records and information needs;

- providing guidance to lawyers, litigants, and the public;

- distributing case materials to judges for decision-making;

- providing vital logistical support.

The case-related workload of the clerks' offices can fluctuate in proportion to changes in case filings.

Case decisions in appellate courts are made either by panels of three judges or, in some instances, by an en banc court, where all the judges review the case. Appellate judges reside in cities throughout the geographic area of a circuit. Appellate clerks' offices are situated at the headquarters of the circuit, providing a central public business office for the judges, lawyers,

Appendix 1.23

litigants, and the public. Clerks' offices receive case materials for filing, maintain the central files, and arrange for judges to convene in panels as necessary for case decisions. Inquiries about cases, procedures, etc., are directed to the clerks' offices. Materials are assembled, as appropriate, and dispatched to judges. Lawyers are advised of the schedule for decision-making. Decisions are made after oral argument hearings or submissions on briefs that are scheduled by the clerks' offices. Decisions are filed in the clerks' offices which are then responsible for distribution of the decisions to the parties and the public, including posting on court websites.

## Staff Attorneys

Staff attorneys generally perform legal research on all pro se cases, that is, cases where a party serves as his or her own counsel, most of which are filed by prisoners. In addition, they work on substantive and procedural motions, direct criminal appeals, death penalty cases, and cases that do not require oral argument. Some staff attorneys also assist the court on fully counseled cases, providing legal research assistance and presenting recommendations to the judges. Staff attorneys also write memoranda in cases addressing jurisdictional issues that result in disposition of the appeal. By drafting legal research memoranda that analyze the case issues and recommend appropriate disposition, staff attorneys assist judges in disposing of the appellate cases in a timely and efficient manner.

Statistics indicate that pro se cases represent 50 percent of national appellate filings. Having the staff attorneys preliminarily review both pro se cases and substantive motions, as well as examine cases for jurisdictional defects, materially assists the judges and contributes to timely dispositions.

## Prearrangment/Conference Attorneys

Appellate prearrangment/conference attorneys facilitate the disposition of cases on appeal through negotiated settlements, without appellate judicial involvement. The attorneys are skilled, seasoned lawyers who perform sensitive, confidential settlement work. The attorneys often are able to streamline or dispose of issues in cases not easily settled. Distinct from staff attorneys, prearrangment/conference attorneys promote the voluntary settlement or withdrawal of appeals without court action. The program results in a conservation of judicial resources and improves appellate case management.

## Librarians

The national court library program is a network of 12 circuit headquarters libraries and 95 satellite libraries. The library program provides legal reference and research services to over 2,000 judges and more than 10,000 judiciary researchers nationwide. Using existing resources and adapting new technologies, the library program provides all circuits with high quality research assistance and instruction to judges, law clerks, and other court personnel. In addition, the library staff manages the acquisition and development of chambers law books collections.

Information is expanding exponentially, in an array of formats, including books, online databases, and Internet resources. Librarians are necessary to manage this wealth of information and media, and to disseminate the information to the courts in a meaningful manner. Collection development expertise, research skills, and knowledge of resource-sharing techniques are tools that librarians bring to this challenge.

Appendix I.24

In addition to providing traditional legal research support, librarians conduct research in multiple disciplines such as science, medicine, the humanities and social sciences, or general research. Judges, law clerks, and other court staff need the information in these areas to assist their decision-making. Librarians also have taken the lead in tapping the resources available on the Internet, making them available to the judiciary by designing web pages that gather Internet resources and push content directly to the researchers.

*Bankruptcy Appellate Panel Clerks*
The Bankruptcy Reform Act of 1994 requires that each circuit establish a Bankruptcy Appellate Panel (BAP) unless the Judicial Council of the circuit finds that either there are insufficient judicial resources in the circuit, or the establishment of a BAP would result in undue delay or increased cost to parties in bankruptcy cases. There are currently five BAPs nationally. A BAP is composed of bankruptcy judges within a circuit who are appointed by the circuit's Judicial Council to decide, with the consent of all parties, appeals from bankruptcy court decisions. Even where a BAP exists, bankruptcy appeals may be heard by the district court, if a party so chooses.
A BAP requires a minimum of four bankruptcy judges, each from a different district, because the legislation prohibits a bankruptcy judge from hearing an appeal that originated in the district for which he or she was appointed. The BAP clerk's office has support functions and responsibilities similar to the appellate clerk's office.

### Workload Trends and Resource Requirements

For the 12-month period ending June 30, 2013, the number of appeals filed totaled 56,360, decreasing 2.3 percent from the previous year and decreasing 6 percent since 2003. The judiciary projects the appellate cases filed will increase less than one percent to 56,600 for the 12-month period ending June 30, 2014. While total cases have decreased in the past ten years, there have been significant increases from 2002 to 2013 in appeals from immigration cases appealed from the Department of Justice's Board of Immigration Appeals (BIA).

The initial increase of immigration appeals from the BIA in 2002 was attributed to its directive to clear its backlog of cases and implement new review guidelines. While the number of BIA completions has been declining and approaching pre-2002 levels (28,430 in 2013 versus 25,024 in 2001), the number of BIA appeals in the federal courts is four times what it was in 2001 (7,199 in 2013 versus 1,777 in 2001). These cases continue to demand extensive resources and are a far greater share of total caseload in recent years. The increase was most significant in the Second and Ninth Circuits; the Second Circuit increased from 164 BIA cases in 2001 to 1,294 in 2013, and the Ninth Circuit increased from 965 BIA cases in 2001 to 3,794 in 2013. Terminations of these appeals have not kept pace with filings, resulting in an increase in the time it takes to process all other appeals. The number of total pending appeals increased from 39,830 in 2002 to 42,355 in 2013 (an increase of 6 percent).

### Cost Containment Efforts

The appellate court and circuit units continue to modify existing and adopt new processes, develop and share best practices, and use the flexibility provided under budget decentralization to invest in information technology and other solutions that save resources as well as improve quality and performance. This work has been and will continue to be important.

Appendix 1.26

The courts continue to use workforce restructuring options to re-shape, de-layer or re-tool the workforce.

The appellate CM/ECF system replaced the 20-year old legacy system and required a careful review of the case management processes and staff functions. The appellate courts are taking full advantage of the opportunities provided by CM/ECF's electronic case filing features. The first appellate court to implement electronic filing by attorneys started in June 2007. By the end of fiscal year 2010, all courts of appeals accepted electronic filings by attorneys and pro se litigants. Resource-intensive efforts to conduct quality control checks on attorney filings and to prepare and transmit briefs and lower court record materials to court of appeals judges still must evolve in light of the availability of electronic case files.

Other cost containment efforts, such as reducing the costs associated with printing and distributing paper briefs to judges and reducing or eliminating the printing and distributing of appellate slip opinions, continue to occur.

COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES
*Defender Services*
SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | |
|---|---|
| **Fiscal Year 2014 Appropriation** | $1,044,394,000 |
| **Fiscal Year 2015 Appropriation Request** | $1,053,158,000 |
| **Requested Increase from Fiscal Year 2014 Appropriation** | $8,764,000 |

APPROPRIATION LANGUAGE

COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES

DEFENDER SERVICES

For the operation of Federal Defender organizations; the compensation and reimbursement of expenses of attorneys appointed to represent persons under 18 U.S.C. 3006A and 3599, and for the compensation and reimbursement of expenses of persons furnishing investigative, expert, and other services for such representations as authorized by law; the compensation (in accordance with the maximums under 18 U.S.C. 3006A) and reimbursement of expenses of attorneys appointed to assist the court in criminal cases where the defendant has waived representation by counsel; the compensation and reimbursement of expenses of attorneys appointed to represent jurors in civil actions for the protection of their employment, as authorized by 28 U.S.C. 1875(d)(1); the compensation and reimbursement of expenses of attorneys appointed under 18 U.S.C. 983(b)(1) in connection with certain judicial civil forfeiture proceedings; the compensation and reimbursement of travel expenses of guardians ad litem appointed under 18 U.S.C. 4100(b); and for necessary training and general administrative expenses, [$1,044,394,000] *$1,053,158,000*, to remain available until expended.

**SUMMARY OF REQUEST**
**DEFENDER SERVICES**
**FISCAL YEAR 2015**
(Dollar amounts in thousands)

|  |  | Original FTEs | Amount |
|---|---|---|---|
| **Page** | | | |
| | **Fiscal Year 2015 Resource Requirements:** | | |
| | Fiscal Year 2014 Obligations.............................................. | 2,718 | 1,062,022 |
| | Less unencumbered carryforward from fiscal year 2013 into fiscal year 2014.............. | | (9,520) |
| | Less prior year recoveries from fiscal year 2013 into fiscal year 2014.............. | | (8,108) |
| | Fiscal Year 2014 Appropriation.............................................. | 2,718 | 1,044,394 |
| | | | |
| | **Adjustments to Base to Maintain Current Services:** | | |
| | **A. Pay and benefit adjustments** | | |
| | 1. Annualization of January 2014 pay adjustments | - | |
| 6.15 | a. Federal pay adjustment (1.0% for three months)......................... | | 1,088 |
| | b. Panel attorney capital rate adjustment (from $178 per hour to $180 per hour)......... | | 323 |
| | c. Panel attorney non-capital rate adjustment (from $125 per hour to $126 per hour)..... | | 2,682 |
| | 2. Proposed January 2015 pay adjustments | | |
| 6.16 | a. Federal pay adjustment (1.0% for nine months).......................... | | 3,260 |
| | b. Panel attorney capital ECI rate adjustment (from $180 per hour to $181 per hour, effective January 1, 2015)..... | | 120 |
| | c. Panel attorney non-capital ECI rate adjustment (from $126 per hour to $127 per hour, effective January 1, 2015)..... | | 368 |
| 6.16 | 3. Promotions and within-grade increases.............................. | | 3,260 |
| 6.16 | 4. Health benefits increases........................................... | | 1,109 |
| 6.17 | 5. FICA increase..................................................... | | 274 |
| | | | |
| | **B. Other Adjustments** | | |
| 6.17 | 6. General inflationary adjustments................................... | | 2,442 |
| 6.17 | 7. Inflationary increase in space rental costs........................... | | 1,210 |
| 6.17 | 8. Decrease in appropriation needed to fund current services............. | | (7,372) |
| 6.17 | 9. Annualization of four new case-budgeting attorney positions hired in fiscal year 2014..... | 2 | 403 |
| 6.18 | 10. Savings related to case-budgeting positions......................... | - | (401) |
| | | | |
| | Subtotal, Adjustments to Base to maintain current services................. | 2 | 8,764 |
| | | | |
| | **Total Current Services Appropriation Required**......................... | 2,720 | 1,053,158 |

6.2

| | | |
|---|---|---|
| Total Fiscal Year 2015 Appropriation Required............ | 2,720 | 1,053,158 |
| Total Appropriation Increase, Fiscal Year 2014 to Fiscal Year 2015............ | 2 | 8,764 |

**Financing the Fiscal Year 2015 Request:**

| | | |
|---|---|---|
| Total Appropriation Required............ | 2,720 | 1,053,158 |
| 11. Anticipated carryforward from fiscal year 2014 into fiscal year 2015............ | -- | 25,000 |
| Estimated Obligations, Fiscal Year 2015............ | 2,720 | 1,078,158 |

6.18

6.3

463

6.4

## COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES
### DEFENDER SERVICES
#### Obligations by Activity
##### ($000)

| Activity | FY 2013 Actual | FY 2014 Estimate | FY 2015 Request |
|---|---|---|---|
| CJA Representations & Related Expenses | 985,598 | 1,054,176 | 1,069,776 |
| Program Administration | 6,370 | 7,846 | 8,382 |
| **Total Obligations** | 991,968 | 1,062,022 | 1,078,158 |
| Anticipated Financial Plan Savings | | (25,000) | |
| **Revised Obligations** | 991,968 | 1,037,022 | 1,078,158 |
| Unobligated Balance, Start of Year | (17,157) | (17,628) | (25,000) |
| Prior Year Recoveries | (6,384) | | |
| Unobligated Balance, End of Year `` | 17,628 | 25,000 | |
| **Available Appropriation** | 986,055 | 1,044,394 | 1,053,158 |

1/ FY 2013 includes a $500,000 transfer from the Court of Appeals for the Federal Circuit

464

6.5

## COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES
### DEFENDER SERVICES

**Obligations by Budget Object Class ($000)**

| Description | | FY 2013 Actual | FY 2014 Estimate | FY 2015 Request |
|---|---|---|---|---|
| 1100 | Personnel compensation | 278,285 | 291,547 | 298,202 |
| 1200 | Personnel benefits | 86,131 | 91,837 | 93,021 |
| 1300 | Benefits for former personnel | 2,332 | 4,080 | 3,300 |
| 2100 | Travel | 6,696 | 9,248 | 9,705 |
| 2200 | Transportation of Things | 218 | 270 | 275 |
| 2310 | Rental payments to GSA | 39,630 | 41,025 | 41,722 |
| 2320 | Rental payments to others | 406 | 451 | 459 |
| 2300 | Communications, utilities & misc. | 5,403 | 7,134 | 7,255 |
| 2400 | Printing and reproduction | 96 | 140 | 142 |
| 2500 | Other services | 438,579 | 466,814 | 471,823 |
| 2600 | Supplies and materials | 1,484 | 2,106 | 2,142 |
| 3100 | Equipment | 7,445 | 11,256 | 11,447 |
| 4100 | Grant Payments (to Community Defender Organizations) | 125,263 | 136,114 | 138,664 |
| | **Total Obligations** | 991,968 | 1,062,022 | 1,078,158 |
| | Anticipated Financial Plan Savings | - | (25,000) | - |
| | **Revised Obligations** | 991,968 | 1,037,022 | 1,078,158 |

**Full Time Equivalents (FTEs) by Activity**

| | FY 2013 Actual | FY 2014 Estimate | FY 2015 Request |
|---|---|---|---|
| CJA Representations & Related Expenses[1] | 2,597 | 2,713 | 2,713 |
| Program Administration[2] | 31 | 5 | 7 |
| **Total, FTEs** | 2,628 | 2,718 | 2,720 |

[1] The FTEs listed are attributable to Federal Public Defender Organization staff

[2] Under the Administrative Office restructuring, program administration staff (30 FTE) previously reported as direct FTE in the Defender Services account will be reported as reimbursable FTE in the Administrative Office account beginning in fiscal year 2014. The Defender Services account is still responsible for the financing of both salary and non-salary expenses related to these positions.

## GENERAL STATEMENT AND INFORMATION

Funds appropriated for the Defender Services account support the appointment of counsel and other services necessary to represent financially eligible defendants, which the judiciary is required to provide by the United States Constitution; the Criminal Justice Act (CJA), 18 U.S.C. § 3006A; and other related statutes. Funds provide for the continuing education and training of those who furnish representational services under the CJA. The fiscal year 2015 request for appropriated funds is $1,053.2 million, an increase of $8.8 million (0.8 percent) over the fiscal year 2014 appropriation of $1,044.4 million.

### MISSION AND GOALS OF THE
### DEFENDER SERVICES PROGRAM

The constitutional right to the assistance of counsel is a critical component of the criminal justice system. In *Gideon v. Wainwright, 372 U.S. 335 (1963)*, the United States Supreme Court wrote: "The right of one charged with a crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is ours." The mission of the Defender Services program ensures that the Sixth Amendment right to counsel is available to those who cannot afford to retain counsel and other necessary defense services. By fulfilling its mission, the Defender Services program helps to: (a) maintain public confidence in the nation's commitment to equal justice under law; and (b) ensure the successful operation of the constitutionally-based adversary system of justice by which both federal criminal laws and federally guaranteed rights are enforced.

The four goals of the Defender Services program are to: (1) timely provide counsel services to all eligible persons; (2) provide counsel services consistent with the best practices of the legal profession; (3) provide cost-effective services; and (4) protect the independence of the defense function performed by assigned counsel so that the rights of individual defendants are safeguarded and enforced.

### TYPES OF COUNSEL:
### Federal Defenders and Private Attorneys

The CJA authorizes the appointment of counsel, who are either attorneys employed by a federal defender organization (FDO) or private "panel" attorneys. The CJA specifies that in all judicial districts (including those served by an FDO) private attorneys shall be appointed "in a substantial proportion of the cases." 18 U.S.C. § 3006A(a)(3). In the 91 (of 94) judicial districts served by an FDO, there is a critical need for qualified panel attorneys. Ethical standards prohibit appointing FDOs in conflict-of-interest situations (*e.g.*, an FDO is precluded from representing more than one defendant in a multi-defendant case, and is disqualified from accepting a new appointment that may present a conflict with the interests of previously represented clients). In situations where federal defenders are unavailable due to FDO conflicts or workload demands, and in the districts not served by an FDO, private or "panel" attorneys must be appointed to represent all eligible individuals. Three districts (Georgia-Southern, Kentucky-Eastern, and Northern Mariana Islands) have no FDO. Every year Criminal Justice Act attorneys are appointed in over 200,000 cases where liberty, livelihood, and personal integrity are at stake.

6.7

6.8

### Federal Defender Organizations

The CJA authorizes two types of FDOs: (1) federal public defender organizations, which are part of the judiciary, and (2) community defender organizations, which are private, state-chartered, non-profit corporations funded by annual federal grants. An FDO may be established in any district (or combination of adjacent districts) in which at least 200 appointments are made annually. There are currently 81 FDOs authorized to serve 91 of the 94 judicial districts. For fiscal year 2015, the judiciary projects that federal defenders will be appointed in approximately 121,542 weighted cases.

FDOs are the flagships of federal criminal defense, delivering high-quality representation at reasonable costs while safeguarding the rights of individuals under the Constitution. They attract, train, and retain lawyers with skills comparable to those who prosecute criminal matters in U.S. attorney offices. Because of the expertise and efficiencies they have developed as law offices focused exclusively on federal criminal practice, FDOs provide cost-effective defense services, consistent with the best practices of the legal profession.

FDO attorneys are available for appointments on short notice, ensuring that the rights of the accused are protected and that the operations of the courts are not disrupted. FDOs also make optimal use of national resources by sharing their expertise and best practices with other FDOs and panel attorneys.

FDO staff reduce costs and improve the overall quality of CJA representation within the districts they serve by providing expert advice, training, and other assistance to panel attorneys in complex legal and technical areas such as sentencing, litigation support, and issues involving death penalty cases.

### Panel Attorneys

A "panel" attorney is a private lawyer who serves on a panel maintained by the district or appellate court and is assigned by the court to represent financially eligible defendants in accordance with the CJA. Nationally, over 90 percent of CJA panel attorneys are in small law firms (with six or fewer lawyers), and approximately 60 percent are sole practitioners. The CJA provides that these attorneys shall be reimbursed for their expenses and compensated at statutorily authorized hourly rates for their services. For fiscal year 2015, the judiciary projects that panel attorneys will be appointed in 90,900 unweighted cases.

### IMPACT OF SEQUESTRATION

Federal defenders and panel attorneys rely on adequate funding to fulfill their constitutional mandate to ensure that the Sixth Amendment rights of individual defendants (more than 200,000 case each year) are safeguarded and enforced. However, budget cuts and sequestration reductions in fiscal year 2013, temporary reductions to the panel attorney hourly rate, and 22 days of suspended voucher payments, followed by continued funding uncertainty, have had a severe and negative systemic impact on the ability of all attorneys appointed under the CJA to meet these constitutional obligations. For decades, the federal courts have come to rely upon readily available and well-qualified CJA panel attorneys and federal defenders who have the training, resources, and experience necessary to provide high-quality representation in federal criminal cases.

around the world." Michael Nachmanoff, Federal Public Defender for the Eastern District of Virginia, testified that FDOs were "a model of quality and efficiency," but that due to sequestration, FDOs were "cutting ourselves to the bone," and "[i]f action is not taken immediately to save the program, the federal defender system will be devastated."

## Impact of FY 2014 Enacted Funding Level and FY 2015 Requested Levels on Defender Services

### FDOs
The fiscal year 2014 enacted level and the fiscal year 2015 request level will enable the FPDOs and CDOs to back-fill lost positions and maintain staff at pre-sequestration levels. This restoration of staff should ease the stress on the defender services program and continue the standard of high quality representations that is expected. Specifically, the fiscal 2014 enacted and fiscal year 2015 requested funding levels would permit FDOs to accept appointment in high-threat trials; the restoration of expert services funding; appropriate case-related travel; the cyclical replacement of information technology equipment and software; promotions and assistant federal defender salary increases; and limited tenant alterations. In addition, to the extent that the Department of Justice's financial outlook has improved, the possibility exists that additional caseload may be anticipated in the near future.

### Panel
The fiscal year 2014 enacted level provided sufficient funding to pay for the fiscal year 2013 panel attorney payment deferrals, lift the temporary panel attorney rate reductions beginning March 1, 2014 and provides, consistent with the one percent Employment

Due to the fiscal year 2013 sequestration, this reliance has been jeopardized. Widespread furloughs and layoffs in fiscal year 2013 caused an unprecedented loss of experienced federal defender staff and, in some offices, created an untenable conflict in having to choose between hiring a needed expert in a case and furloughing defender staff. A temporary emergency rate cut of $15 per hour for panel attorneys (from $178 per hour to $163 per hour for capital representations and from $125 per hour to $110 per hour for non-capital representations), followed by weeks of deferrals and the warning that there could be more deferrals, have resulted in experienced private attorneys leaving the CJA panel or declining appointments. Reductions in the fiscal year 2013 national training budget for substantive legal training for both defenders and panel attorneys have drastically decreased training on the substantive legal knowledge and skills necessary for criminal defense practice: 18 fiscal year 2013 training programs were cancelled, 7 of the 9 authorized federal defender staff core training programs were not held, 5 of 13 non-capital events open to panel attorneys and federal defender staff were cancelled, and 6 of 13 death penalty training initiatives were not implemented. Because of the fiscal year 2013 cancellations, nearly 2,000 FDO staff and CJA practitioners did not receive training who otherwise would have.

The hardships in the courts and in FDOs were emphasized in testimony given in July 2013 before the Senate Judiciary Committee's Subcommittee on Bankruptcy and the Courts at a hearing entitled, "Sequestering Justice: How the Budget Crisis is Undermining Our Courts." At the hearing, Judge Julia S. Gibbons, Chair of the Judicial Conference's Budget Committee testified, "Flat funding at sequestration levels would ... irreparably damage the system that is a hallmark of our liberty

6.9

6.10

Cost Index (ECI) increase for federal employees effective on January 13, 2014, a cost-of-living adjustment to panel attorney non-capital and capital hourly rates. As a result, for work performed on or after March 1, 2014, panel attorney hourly rates will increase to $126 for non-capital representations and $180 for capital representations. The fiscal year 2015 request for panel attorney payments fully funds the projected representations, as well as avoids any deferrals from fiscal year 2015. This request would also support an hourly rate increase consistent with the fiscal year 2015 one percent ECI assumed for federal employees.

Training
Three fiscal year 2014 training programs were cancelled as a result of fiscal year 2014 budgetary uncertainty. The final appropriation allows for the implementation of all other authorized training programs. However, as a result of the delay in enacting the appropriation, and concerns about its final level, the number of fiscal year 2014 Defender Services training initiatives will be 12 fewer than in fiscal year 2012. It is hoped that, in fiscal year 2015, it will be possible to fund all authorized Defender Services training programs as well as FDO-supported local programs for both FDO staff and panel members.

## COST CONTAINMENT INITIATIVES

Cost-Effective Services
The Defender Services program has engaged in extensive efforts to contain costs and practice fiscal responsibility, without compromising its constitutionally mandated mission to ensure that the Sixth Amendment right to counsel is available to those who cannot afford to retain counsel and other necessary defense

services. There is strong awareness of the budget challenges facing our nation and the need to continue cost-containment measures in every aspect of the Defender Services program.

Key cost-containment initiatives include, but are not limited to: (1) promoting the use of case budgeting to control expenditures in capital and other high-cost CJA panel attorney representations; (2) applying FDO case weights to assist in projecting FDO resource requirements nationally and evaluating individual FDO requests for additional resources; (3) supporting distance learning initiatives to optimize the training opportunities accessible to CJA attorneys with the limited funds available for this purpose; and (4) continue to develop and implement an electronic CJA voucher system. The defender services program is also continuing other strategies, in collaboration with the Department of Justice (DOJ), to reduce the costs of federal defender and panel attorney representations associated with matters of discovery and DOJ's death penalty declination process.

Case Budgeting of CJA Panel Attorney Representations
Since 2007, Defender Services has funded Case-Budgeting Attorneys (CBAs) in the Second, Sixth, and Ninth Circuits to identify cost drivers, monitor case expenditures, assist district and appellate judges and CJA panel attorneys with individual case budgets and cost issues, assist courts in reviewing vouchers in complex cases to help ensure the reasonableness of the claims, and coordinate case budgeting and other CJA cost-containment efforts in high-cost representations.

In fiscal year 2013, the 2.6 percent of panel attorney representations eligible for budgeting (all capital cases and non-

capital representations exceeding $30,000) accounted for approximately 31.0 percent ($130.1 million) of the annual expenditures for all panel attorney representations.

The Federal Judicial Center (FJC) conducted an evaluation of the Case Budgeting project to discern its impact on case management and cost control. The FJC's December 2010 evaluation report found that the CBAs accomplished the goal of containing costs, while achieving a high-quality defense, by enhancing management of and accountability over high-cost cases. The FJC report also found that the savings from the program exceeded its costs.

The judiciary continues to promote the nationwide use of case-budgeting techniques for these representations in order to help ensure that, in all capital and other high-cost panel attorney cases, the expenses of representation are anticipated, substantiated, monitored, and, where appropriate, limited before they are incurred.

At its March 2011 session, the Judicial Conference approved the utilization of circuit CBA positions, the continued Defender Services-account funding for the three current CBAs, and an incremental expansion in the number of positions. The fiscal year 2015 request includes funding to support the annualization of 4 case budgeting positions (2 FTE) added in fiscal year 2014. The cost of those positions is anticipated to be offset by savings in panel attorney representation expenditures.

FDO Resource Management using Case Weights
Several factors, including the number and type of cases, and case- and district-specific complexities, determine the funding

an FDO requires to provide effective CJA representation. Starting in fiscal year 2012, the judiciary implemented a budget methodology utilizing the weighted case analysis developed by the RAND Corporation.

RAND's case-weighing system is based on average FDO attorney time expended to complete each case type in comparison to the national average for all case types. RAND concluded that the weights could be used to help evaluate workload changes for a particular organization from year to year and noted that weighted caseloads offer a better tool for identifying new resource requirements than do raw case numbers.

Beginning in fiscal year 2014, the judiciary used a new method for formulating the FDO portion of the Defender Services congressional budget justification. This method relies on case-weight measures for determining staffing and funding needs. This approach promotes an empirically-based model that more accurately reflects the requirements of the FDOs. In June of 2013, the judiciary contracted with RAND to update the FDO case weights.

FDO Work Measurement Study
In fiscal year 2013, the Administrative Office began the process of conducting a work measurement study of FDOs. This study will be used in the creation of a workload staffing formula or formulas for the FDO portion of the Defender Services budget request. These formulas will be similar to the ones used for developing staffing levels across other judiciary accounts. The formulas are currently scheduled to be delivered to the Judicial

6.11