# Exhibit D

# FINANCIAL SERVICES AND GENERAL GOVERNMENT APPROPRIATIONS FOR 2013

# HEARINGS

BEFORE A

SUBCOMMITTEE OF THE

COMMITTEE ON APPROPRIATIONS

HOUSE OF REPRESENTATIVES

ONE HUNDRED TWELFTH CONGRESS

SECOND SESSION

SUBCOMMITTEE ON FINANCIAL SERVICES AND GENERAL GOVERNMENT APPROPRIATIONS

**JO ANN EMERSON, Missouri, *Chair***

RODNEY ALEXANDER, Louisiana
JO BONNER, Alabama
MARIO DIAZ-BALART, Florida
TOM GRAVES, Georgia
KEVIN YODER, Kansas
STEVE WOMACK, Arkansas

JOSÉ E. SERRANO, New York
BARBARA LEE, California
PETER J. VISCLOSKY, Indiana
ED PASTOR, Arizona

NOTE: Under Committee Rules, Mr. Rogers, as Chairman of the Full Committee, and Mr. Dicks, as Ranking Minority Member of the Full Committee, are authorized to sit as Members of all Subcommittees.

JOHN MARTENS, WINNIE CHANG, KELLY HITCHCOCK, and ARIANA SARAR,
*Subcommittee Staff*

## PART 2

## FY 2013 BUDGET JUSTIFICATIONS

| | Page |
|---|---|
| **Executive Office of the President** | **1** |
| **The Judiciary** | **267** |

Printed for the use of the Committee on Appropriations

# The Judiciary

# Fiscal Year 2013

# Congressional Budget Summary

PREPARED BY
THE ADMINISTRATIVE OFFICE OF THE U.S. COURTS
WASHINGTON, DC
February 2012

# FOREWORD

*Overview*

The Judiciary's fiscal year 2013 budget request of $7.2 billion is a 3.1 percent increase over the enacted fiscal year 2012 levels – the lowest such increase in well over 20 years. The Judicial Conference is grateful for the continued support provided by Congress in spite of the difficult fiscal environment. We recognize this constrained fiscal environment and are requesting only our most critical needs. We are also continuing cost-containment initiatives throughout the Judiciary.

For the Courts' Salaries and Expenses account, the request is a current services budget and provides no program increases or workload increases, such as additional court staff needed in fiscal year 2013 because of increased caseload in the courts. Current services represents the minimum level the Judicial Conference believes is necessary to avoid downsizing in the courts below the staffing levels funded by the Congress in fiscal year 2012. This means that although there has been a steady increase in caseload over the past several years, in fiscal year 2013, clerks and probation and pretrial services offices will be operating with fewer staff than were on board in fiscal year 2011.

Clerks of court and deputy clerks are indispensable to the effective operation of the appellate, district, and bankruptcy courts. The bankruptcy workload has begun to stabilize after several years of 20 percent or more annual growth, but filings remain close to all-time highs. We expect bankruptcy filings to remain at a high rate for some time because bankruptcy filings tend to continue even after economic recovery. While more staff are needed than have been requested, the Judiciary's continued commitment to cost containment in order to slow growth resulted in reduced requirements for staffing in fiscal year 2013.

Probation and pretrial services officers are front-line federal law enforcement officers who protect the public by supervising closely individuals in the community awaiting trial and others who have been released after serving their sentences in federal prison. Criminal caseload, particularly on the Southwest Border, continues to increase, and the workload in probation and pretrial services offices is at record levels. The fiscal year 2013 funding level is required to provide cost-effective alternatives to pretrial detention and incarceration, continue research and implementation of "evidenced based practices" that reduce recidivism and promote positive behavioral change in federal offenders, and intervene quickly in cases where offenders are non-responsive and pose a danger to the community.

The Judiciary's request also includes a modest increase of $14.7 million over fiscal year 2012 levels to protect Judiciary facilities, judges, court staff, and the public. This additional funding will provide all court facilities with the appropriate number of court security officers and functional screening and security equipment. An increase of $32.5 million over fiscal year 2012 is also requested for the Defender Services program to support the constitutional requirement to provide legal representation for indigent criminal defendants.

*Cost Containment*

The Judiciary continues to take seriously its role as steward of the taxpayers' dollars and regularly reviews program and business practices to identify areas where economies and efficiencies can be achieved. The Judiciary has been a government-wide leader on cost containment for nearly seven years since the Judicial Conference adopted the cost-containment strategy in 2004. These efforts have resulted in a reduction in discretionary spending and slowed growth in several areas, especially General Services Administration rent.

Our ongoing cost-containment strategy encompasses initiatives to examine more closely business practices and programs throughout the court system. We believe that with large federal budget deficits projected to continue well into the future, containing growth in the Judiciary is more important now than ever. Although this next round of cost-containment initiatives is more challenging, the Judiciary is committed to doing its part to control growth in the federal budget. Cost containment allows the Judiciary to state that its request is the minimum necessary to perform its constitutional and statutory responsibilities.

*Fiscal Year 2013 Budget Request*

The Judiciary's fiscal year 2013 budget request of $7.2 billion is summarized in the following pages. It represents the Judiciary's focused effort to balance the requirements of justice with the unprecedented fiscal realities facing Congress. A more detailed description of the Judiciary's fiscal year 2013 request can be found in *The Judiciary, Budget Estimates for Fiscal Year 2013. Congressional Submission*.

Julia S. Gibbons
United States Circuit Judge
for the Sixth Circuit Court of Appeals
Chair, Budget Committee of the
Judicial Conference of the United States

Thomas F. Hogan
Senior United States District Judge
Director, Administrative Office
of the United States Courts
Secretary, Judicial Conference of the United States



TABLE OF CONTENTS

Page

**Foreword** . . . . . i

**Overview of the Judiciary** . . . . . 1

**Fiscal Year 2013 Budget Summary - Details of Request** . . . . . 5

**Summary Tables**
- Judiciary Appropriation Funding . . . . . 8
- Summary of FTE for FY 2011 - FY 2013 . . . . . 9
- FY 2013 Summary of Requested Changes . . . . . 10
- Outlays for FY 2011 - FY 2013 . . . . . 11

**Fiscal Year 2013 Budget Request Summaries by Appropriation**
- Supreme Court of the United States
  - Salaries and Expenses . . . . . 15
  - Care of the Building and Grounds . . . . . 17
- United States Court of Appeals for the Federal Circuit . . . . . 19
- United States Court of International Trade . . . . . 21
- Courts of Appeals, District Courts, and Other Judicial Services
  - Summary of FY 2013 Budget Request . . . . . 23
    - FY 2013 Summary of Requested Changes . . . . . 24
    - FY 2013 Appropriations Increases Pie Chart . . . . . 25
    - FY 2013 Appropriations Pie Chart . . . . . 26
    - Judiciary Workload Factors . . . . . 27
  - Salaries and Expenses . . . . . 29
  - Defender Services . . . . . 39
  - Fees of Jurors and Commissioners . . . . . 43
  - Court Security . . . . . 47
- Administrative Office of the United States Courts . . . . . 53
- Federal Judicial Center . . . . . 55
- Payments to Judiciary Trust Funds . . . . . 57
- United States Sentencing Commission . . . . . 59
- Appropriation Language Changes . . . . . 61
- General Provisions Changes . . . . . 61
- General Provisions . . . . . 62



# Overview of The Judiciary

The organization of the judiciary, the district and circuit boundaries, the places of holding court, and the number of federal judges are established by laws passed by Congress and signed by the President. The number of federal judges in each district and in the courts of appeals is authorized by Congress on the basis of workload.

In addition to the adjudication of cases, other related functions, such as the provision of criminal defense services and the supervision of offenders, are prescribed by statute. The following sections provide a brief overview of the work of the courts and other related activities of the Judicial Branch.

**United States Supreme Court**

The United States Supreme Court consists of nine justices, one of whom is appointed as Chief Justice of the United States. The Supreme Court is the final arbiter in the federal court system.

**United States Courts of Appeals**

There are 13 courts of appeals and 179 authorized appellate court judgeships nationwide. Twelve of the courts of appeals have jurisdiction over cases within a regional area or "circuit." The twelve regional courts of appeals review cases from the United States district courts and the United States Tax Court, and orders and decisions from a number of federal administrative agencies.

**The United States Court of Appeals for the Federal Circuit** has exclusive national jurisdiction over a large number of diverse subject areas, including international trade, government contracts, patents, trademarks, certain money claims against the



United States government, federal personnel, and veterans' benefits. Appeals to the court come from all 94 federal district courts, as well as the United States Court of Federal Claims, the United States Court of International Trade, and the United States Court of Appeals for Veterans Claims.

**United States District Courts**

There are 94 district courts in the 50 states, the District of Columbia, the Commonwealth of Puerto Rico, and the territories of Guam, the U.S. Virgin Islands and the Northern Mariana Islands. The U.S. District Courts are the courts of general jurisdiction in the federal court system, and most federal cases are initially tried and decided in these courts. There are 678 authorized Article III district court judgeships nationwide.

The Federal Magistrates Act of 1968 created the office of magistrate judge to assist the district court judges. Magistrate judges are non-Article III judges appointed by the district judges, and they serve for a term of years rather than a lifetime appointment. Full-time magistrate judges serve a term of eight years and may be reappointed.

**United States Bankruptcy Courts**

The bankruptcy courts are separate units of the district courts. Federal courts have exclusive jurisdiction over bankruptcy cases. This means that a bankruptcy case cannot be filed in a state court. United States bankruptcy judges are non-Article III judges appointed by the courts of appeals for a term of years rather than a lifetime appointment. They serve for a term of 14 years and may be reappointed.

**United States Court of International Trade**

The Court of International Trade, with nine Article III judges, has exclusive nationwide jurisdiction of civil actions against the United States, its agencies and officers, and certain civil actions brought by the United States, arising out of import transactions and the administration and enforcement of the federal customs and international trade laws.

**United States Court of Federal Claims**

The Court of Federal Claims has nationwide jurisdiction over certain types of claims against the federal government. Its 16 judges are appointed for a term of 15 years by the President with the advice and consent of the Senate. Judges appointed to the Court of Federal Claims are authorized under Article I of the constitution and do not have the tenure and salary protections of Article III judges.

**Probation and Pretrial Services**

Federal probation and pretrial services officers protect the public through the investigation and supervision of defendants and offenders within the federal criminal justice system. A pretrial services officer supervises defendants awaiting trial who are released into our communities and provides a source of information upon which the court can determine conditions of release or detention while criminal cases are pending adjudication. In support of sentencing determinations, which require both uniformity of practice and attention to individual circumstances, probation officers provide the court with reliable information concerning the offender, the victim, and the offense committed, as well as an impartial application of the sentencing

guidelines. Probation officers supervise offenders sentenced to probation as well as offenders coming out of federal prison who are required to serve a term of supervised release.

**Defender Services**

The federal judiciary oversees and administers the federal defender and appointed counsel program, which provides legal representation and other services to persons financially unable to obtain counsel in criminal and related matters in federal court. The Sixth Amendment to the Constitution guarantees that "[i]n all criminal prosecutions the accused shall enjoy the right...to have the assistance of counsel for his defense." The Criminal Justice Act provides that courts shall appoint counsel from federal public and community defender organizations or from a panel of private attorneys ("panel attorneys") established by the court.

**Court Security**

The judiciary's Court Security appropriation funds protective guard services and security systems and equipment for United States courthouses and other facilities housing federal court operations. These services are contracted for and managed by the United States Marshals Service, with additional guard services provided by the Federal Protective Service.

**Fees of Jurors and Commissioners**

The judiciary receives funding to provide for the statutory fees and allowances of federal grand and petit jurors and for the compensation of land commissioners.

**Administrative Office of the U.S. Courts**

The Administrative Office of the U.S. Courts is the central support entity for the judicial branch. It has management oversight of the court security program, the probation and pretrial services program, and the defender services program. It supports the Judicial Conference of the United States in determining judiciary policies; develops new methods, systems, and programs for conducting the business of the federal courts efficiently and economically; develops and supports the application of technology; collects and analyzes statistics on the business of the federal courts for accurate planning and decisions about resource needs; provides financial management services and personnel and payroll support; and conducts audits and reviews to ensure the continued quality and integrity of federal court operations.

**Federal Judicial Center**

The Federal Judicial Center is the judiciary's research and education agency. The Center undertakes research and evaluation of judicial operations and procedures for both the committees of the Judicial Conference and the courts themselves. It provides judges, court personnel, and others orientation, continuing education and training through seminars; curriculum units for in-court use; monographs and manuals; and audio, video, and interactive media programs.

**Payment to Judiciary Trust Funds**

This appropriation finances annuity payments to retired bankruptcy judges and magistrate judges, U.S. Court of Federal Claims judges, and spouses and dependent children of deceased judicial officers.

**U.S. Sentencing Commission**

The U.S. Sentencing Commission promulgates sentencing policies, practices, and guidelines for the federal criminal justice system. The Chair, three Vice Chairs, and three other voting commissioners are appointed by the President with the advice and consent of the Senate.

# Budget Summary - Details of Request

The judiciary's appropriation request for fiscal year 2013 totals $7,188,716,000 an increase of $218,695,000, or 3.1 percent over the fiscal year 2012 enacted appropriations.

***Adjustments to Base***

A total of $212.7 million (97.3 percent) of the $218.7 million increase requested will provide for pay adjustments, inflation and other adjustments to base necessary to maintain current services.

Base adjustments include:

1. An increase of $97.3 million (45.8 percent of the base adjustments) will provide for inflationary pay and benefit rate increases, including expected January 2013 pay adjustments, changes in health benefit premiums, changes in benefit costs for both judges and supporting personnel, cost-of-living rate increases for panel attorneys, and a wage rate adjustment for court security officers.

2. An increase of $50.7 million (23.8 percent of base adjustments) is requested for the annualization of new space delivered in fiscal year 2012, the cost of new space expected to be delivered in fiscal year 2013, and space related inflation.

3. An increase of $45.4 million (21.3 percent of base adjustments) is necessary to replace non-appropriated sources of funds used to support base requirements in fiscal year 2012 with direct appropriations. The judiciary will keep the Appropriations Subcommittees informed of any change in this estimate.

4. An increase of $27.7 million (13.0 percent of base adjustments) is associated with an additional 26 senior judges and 85 associated staff, and an additional 13 active Article III judges and 64 associated staff.

5. An increase of $21.7 million (10.2 percent of base adjustments) is requested for payments to the Judiciary Retirement Trust Funds. This is a mandatory appropriation.

6. An increase of $11.2 million (5.3 percent of base adjustments) will provide for increases in contract rates and other standard inflationary increases.

7. An increase of $9.2 million (4.3 percent of base adjustments) will provide for the annualization of new court personnel for the Supreme Court, Defender Services positions, USMS staff, and for court security officers expected to be hired in fiscal year 2012.

8. An increase of $5.2 million (2.5 percent of base adjustments) will provide for estimated increases in Federal Protective Service (FPS) security charges, based on rates established by FPS.

9. A net increase of $3.5 million (1.6 percent of base adjustments) will provide for the increased caseload and case complexity associated with the 205,000 non-capital Criminal Justice Act representations projected in fiscal year 2013, partially offset by a decrease in capital representation costs.

10. An increase of $1.2 million (0.6 percent of base adjustments) is requested for the restoration of base requirements for the U.S. Court of Appeals for the Federal Circuit.

11. A net increase of $0.2 million (0.1 percent of base adjustments) is associated with 2 additional court security officers for space being delivered in fiscal year 2013.

12. A net decrease of $0.1 million (-0.1 percent of base adjustments) is associated with a projected net change in available jurors.

13. A decrease of $3.0 million (-1.4 percent of base adjustments) is associated with non-recurring costs for new judges in fiscal year 2012.

14. A net decrease of $3.8 million (-1.8 percent of base adjustments) is associated with reductions in the court security program administration and security systems and equipment requirements; and non-recurring requirements in the Administrative Office account.

15. A decrease of $53.7 million (-25.2 percent of base adjustments) is associated with base reductions to the defender services program (cost-containment), the court security program (cost-containment) and information technology projects in the Salaries and Expenses account.

***Program Increases***

The remaining $5.9 million (2.7 percent) of the requested increase is for program enhancements.

Program increases include:

16. An increase of $3.6 million (60.5 percent of program enhancements) will provide for the Supreme Court police radio infrastructure upgrade and for the facade restoration at the Supreme Court.

17. An increase of $1.8 million (30.3 percent of program enhancements) will provide for 3 additional magistrate judges and associated staff (9 FTE) in districts with growing caseload.

18. An increase of $0.4 million (6.5 percent of program enhancements) will provide for four new case budgeting positions (2 FTE) for the defender services program.

19. An increase of $0.2 million (3.5 percent of program enhancements) will provide for education and training program enhancement (2 FTE) at the Federal Judicial Center.

20. A net decrease of $0.1 million (-0.8 percent of program enhancements) for the replacement of two existing contractors with two new lower cost positions (1 FTE) at the USMS.

The tables on pages 8 through 11, and the individual account summaries, provide detailed information on the judiciary's fiscal year 2013 request.

## Judiciary Appropriation Funding ($000)

| Appropriation Account | FY 2011 Enacted | | | FY 2012 Enacted | | | FY 2013 Request | | |
|---|---|---|---|---|---|---|---|---|---|
| | Mandatory[1] | Discretionary | Total | Mandatory[2] | Discretionary | Total | Mandatory | Discretionary | Total |
| U.S. Supreme Court | | | | | | | | | |
| Salaries & Expenses | $2,197 | $71,724 | $73,921 | $2,197 | $72,622 | $74,819 | $2,207 | $74,958 | $77,165 |
| Care of the Building and Grounds | $0 | $8,159 | $8,159 | $0 | $8,159 | $8,159 | $0 | $11,963 | $11,963 |
| U. S. Court of Appeals for the Federal Circuit | $2,502 | $30,009 | $32,511 | $2,513 | $29,998 | $32,511 | $2,524 | $31,804 | $34,328 |
| U.S. Court of International Trade | $1,851 | $19,596 | $21,447 | $1,718 | $19,729 | $21,447 | $1,715 | $21,165 | $22,880 |
| Courts of Appeals, District Courts & Other Judicial Services | | | | | | | | | |
| Salaries & Expenses - Direct | $332,565 | $4,671,656 | $5,004,221 | $327,707 | $4,687,293 | $5,015,000 | $338,037 | $4,810,762 | $5,148,799 |
| Vaccine Injury Trust Fund | $0 | $4,775 | $4,775 | $0 | $5,000 | $5,000 | $0 | $5,354 | $5,354 |
| Total, Salaries and Expenses | $332,565 | $4,676,431 | $5,008,996 | $327,707 | $4,692,293 | $5,020,000 | $338,037 | $4,816,116 | $5,154,153 |
| Defender Services | $0 | $1,025,693 | $1,025,693 | $0 | $1,031,000 | $1,031,000 | $0 | $1,063,517 | $1,063,517 |
| Fees of Jurors & Commissioners | $0 | $52,305 | $52,305 | $0 | $51,908 | $51,908 | $0 | $54,635 | $54,635 |
| Court Security | $0 | $466,672 | $466,672 | $0 | $500,000 | $500,000 | $0 | $514,673 | $514,673 |
| Subtotal, CADCOJS | $332,565 | $6,221,101 | $6,553,666 | $327,707 | $6,275,201 | $6,602,908 | $338,037 | $6,448,941 | $6,786,978 |
| Administrative Office of the U.S. Courts | $0 | $82,909 | $82,909 | $0 | $82,909 | $82,909 | $0 | $85,148 | $85,148 |
| Federal Judicial Center | $0 | $27,273 | $27,273 | $0 | $27,000 | $27,000 | $0 | $27,729 | $27,729 |
| Judiciary Retirement Funds | $90,361 | $0 | $90,361 | $103,768 | $0 | $103,768 | $125,464 | $0 | $125,464 |
| U.S. Sentencing Commission | $0 | $16,803 | $16,803 | $0 | $16,500 | $16,500 | $0 | $17,061 | $17,061 |
| *Direct* | $429,476 | $6,472,799 | $6,902,275 | $437,903 | $6,527,118 | $6,965,021 | $469,947 | $6,713,415 | $7,183,362 |
| *Vaccine Injury Trust Fund* | $0 | $4,775 | $4,775 | $0 | $5,000 | $5,000 | $0 | $5,354 | $5,354 |
| *Total* | $429,476 | $6,477,574 | $6,907,050 | $437,903 | $6,532,118 | $6,970,021 | $469,947 | $6,718,769 | $7,188,716 |

[1] For FY 2011, the enacted mandatory level was $429,476; actual mandatory spending was $420,993.
[2] For FY 2012, the requested mandatory level was $437,903; projected mandatory spending is $439,471.

**The Judiciary**
**Summary of FTE**

| Appropriation | FY 2011 Actual | FY 2012 Estimate | FY 2013 Request | Increase over FY 2012 |
|---|---|---|---|---|
| **Supreme Court** | **527** | **543** | **547** | **4** |
| *Salaries and Expenses* | *485* | *494* | *497* | *3* |
| *Building and Grounds* | *42* | *49* | *50* | *1* |
| **Court of Appeals for the Federal Circuit** | **142** | **154** | **154** | **0** |
| **Court of International Trade** | **74** | **80** | **80** | **0** |
| **Courts of Appeals, District Courts, and other Judicial Services** | **33,273** | **32,795** | **33,039** | **244** |
| *Salaries and Expenses* | *30,478* | *29,918* | *30,118* | *200* |
| *Defender Services* | *2,738* | *2,803* | *2,843* | *40* |
| *Fees of Jurors & Commissioners* | *0* | *0* | *0* | *0* |
| *Court Security* | *57* | *74* | *78* | *4* |
| **Administrative Office of the United States Courts** | **631** | **619** | **619** | **0** |
| **Federal Judicial Center** | **138** | **136** | **138** | **2** |
| **Judicial Retirement Funds** | **0** | **0** | **0** | **0** |
| **United States Sentencing Commission** | **104** | **105** | **105** | **0** |
| **Total, Judiciary**[1] | **34,889** | **34,432** | **34,682** | **250** |

[1] The Judiciary totals do not reflect reimbursable positions (282 in FY 2011; 277 in FY 2012; and 277 in FY 2013).

## FY 2013 Summary of Requested Changes

| | Supreme Court | | Federal Circuit | | International Trade | | COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES: Salaries and Expenses | | Defender Services | | Fees of Jurors and Commissioners | Court Security | | Subtotal | | Administrative Office | | Fed. Judicial Center | | Judiciary Trust Fund | Sentencing Commission | | Total Judiciary [1] | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | FTE | ($000) | FTE | ($000) | FTE | ($000) | FTE | ($000) | FTE | ($000) | ($000) | FTE | ($000) | FTEs | ($000) | FTE | ($000) | FTE | ($000) | ($000) | FTE | ($000) | FTE | ($000) |
| FY 2012 Enacted Appropriation | 543 | 82,978 | 154 | 32,511 | 80 | 21,447 | 29,918 | 5,015,000 | 2,803 | 1,031,000 | 51,908 | 74 | 500,000 | 32,795 | 6,597,908 | 619 | 82,909 | 136 | 27,000 | 103,768 | 105 | 16,500 | 34,432 | 6,965,021 |
| FY 2012 Vaccine Injury Trust Fund | - | - | - | - | - | - | - | 5,000 | - | - | - | - | - | - | 5,000 | - | - | - | - | - | - | - | - | 5,000 |
| FY 2012 Available Appropriation | 543 | 82,978 | 154 | 32,511 | 80 | 21,447 | 29,918 | 5,020,000 | 2,803 | 1,031,000 | 51,908 | 74 | 500,000 | 32,795 | 6,602,908 | 619 | 82,909 | 136 | 27,000 | 103,768 | 105 | 16,500 | 34,432 | 6,970,021 |
| **FY 2013 Adjustments to Base** | | | | | | | | | | | | | | | | | | | | | | | | |
| Judges | | | | | | | | | | | | | | | | | | | | | | | | |
| - Pay and benefit cost adjustments | - | 18 | - | 19 | - | 11 | - | 3,728 | - | - | - | - | - | - | 3,728 | - | - | - | - | - | - | - | - | 3,776 |
| - Additional senior judges | - | - | - | | - | - | 111 | 15,694 | - | - | - | - | - | 111 | 15,694 | - | - | - | - | - | - | - | 111 | 15,694 |
| - Increase in average number of filled Article III judgeships | - | - | - | | - | - | 77 | 11,963 | - | - | - | - | - | 77 | 11,963 | - | - | - | - | - | - | - | 77 | 11,963 |
| - Non-recurring costs of new FY 2012 judges | - | - | - | - | - | - | - | (2,963) | - | - | - | - | - | - | (2,963) | - | - | - | - | - | - | - | - | (2,963) |
| - Payments to judiciary retirement trust funds | - | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 21,696 | - | - | - | 21,696 |
| Court Personnel | | | | | | | | | | | | | | | | | | | | | | | | |
| - Pay and benefit cost adjustments | - | 1,818 | - | 351 | | 173 | - | 60,960 | - | 9,208 | - | - | 1,636 | - | 71,804 | - | 1,129 | - | 346 | - | | 376 | - | 75,997 |
| Other Changes | | | | | | | | | | | | | | | | | | | | | | | | |
| - Funding necessary to maintain current services | - | - | - | - | - | - | - | 26,241 | - | 12,900 | 2,293 | - | 1,677 | | 43,111 | - | 2,317 | - | - | - | | - | - | 45,428 |
| - Inflation (non-space-related) | - | 454 | - | 94 | | 5 | - | 6,359 | - | 2,844 | 524 | - | 86 | - | 9,813 | - | 98 | - | 173 | - | - | 186 | - | 10,823 |
| - Vaccine Injury Trust Fund adjustment | - | - | - | - | - | - | - | 354 | - | - | - | - | - | - | 354 | - | - | - | - | - | - | - | - | 354 |
| - Space related costs (includes inflation for space rental rates) | - | - | - | 151 | - | 1,236 | - | 48,180 | - | 999 | - | - | 124 | - | 49,303 | - | - | - | - | - | - | - | - | 50,690 |
| - Annualization of new FY 2012 positions | 4 | 360 | - | - | - | - | - | - | 38 | 8,305 | - | 3 | 227 | 41 | 8,532 | - | - | - | - | - | - | - | 45 | 8,892 |
| - Defender Services workload changes | - | - | - | - | - | - | - | - | - | 3,494 | - | - | - | | 3,494 | - | - | - | - | - | - | - | - | 3,494 |
| - Change in available jurors | - | - | - | - | - | - | - | - | - | | (90) | - | - | - | (90) | - | - | - | - | - | - | - | - | (90) |
| - FPS security service charges | - | - | - | - | - | 7 | - | - | - | - | - | - | 5,235 | - | 5,235 | - | - | - | - | - | - | - | - | 5,242 |
| - FY 2013 court security officer wage adjustments | - | - | - | - | - | - | - | - | - | - | - | - | 17,566 | - | 17,566 | - | - | - | - | - | - | - | - | 17,566 |
| - Annualization of new FY 2012 court security officers (1) | - | - | - | - | - | - | - | - | - | - | - | - | 561 | - | 561 | - | - | - | - | - | - | - | - | 561 |
| - Additional court security officers in FY 2013 (2) | - | - | - | - | - | - | - | - | - | - | - | - | 227 | - | 227 | - | - | - | - | - | - | - | - | 227 |
| - Restoration of base requirements | - | - | - | 1,202 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 1,202 |
| - Adjustments to base for security systems and equipment | - | - | - | - | - | | - | - | - | - | - | - | (2,347) | - | (2,347) | - | - | - | - | - | - | - | - | (2,347) |
| - Adjustments to base for program administration | - | - | - | - | - | - | - | - | - | - | - | - | (277) | - | (277) | - | - | - | - | - | - | - | - | (277) |
| - Adjustments to base (non-recurring requirements) | - | - | - | - | - | - | - | | - | - | - | - | - | - | - | - | (1,225) | - | - | - | - | - | - | (1,225) |
| - Base Reductions for information technology projects | - | - | - | - | - | - | - | (38,166) | - | - | - | - | - | - | (38,166) | - | - | - | - | - | - | - | - | (38,166) |
| - Base Reductions (cost-containment) | - | - | - | - | - | - | - | - | - | (5,500) | - | - | (9,991) | - | (15,491) | - | - | - | - | - | - | - | - | (15,491) |
| Subtotal, FY 2013 Adjustments to Base | 4 | 2,550 | - | 1,817 | - | 1,433 | 188 | 132,350 | 38 | 32,130 | 2,727 | 3 | 14,724 | 229 | 181,931 | - | 2,239 | - | 519 | 21,696 | - | 561 | 233 | 212,746 |
| **FY 2013 Adjusted Base** | 547 | 85,528 | 154 | 34,328 | 80 | 22,880 | 30,106 | 5,152,350 | 2,841 | 1,063,130 | 54,635 | 77 | 514,724 | 33,024 | 6,784,839 | 619 | 85,148 | 136 | 27,519 | 125,464 | 105 | 17,061 | 34,665 | 7,182,767 |
| **FY 2013 Program Increases** | | | | | | | | | | | | | | | | | | | | | | | | |
| Judges | | | | | | | | | | | | | | | | | | | | | | | | |
| - Magistrate judges and staff | - | | - | - | - | - | 12 | 1,803 | - | - | - | - | - | 12 | 1,803 | - | - | - | - | - | - | - | 12 | 1,803 |
| Court Personnel and Programs: | | | | | | | | | | | | | | | | | | | | | | | | |
| - Four new case-budgeting positions | - | | - | - | - | - | - | - | 2 | 387 | - | - | - | 2 | 387 | - | - | - | - | - | - | - | 2 | 387 |
| - Two judiciary-funded USMS positions to replace existing contractors (funded for 6 months) | - | - | - | - | - | - | - | - | - | - | - | 1 | 190 | 1 | 190 | - | - | - | - | - | - | - | 1 | 190 |
| - Savings from two contractor conversions at USMS | - | - | - | - | - | | - | | - | - | - | - | (241) | - | (241) | | - | | | | | - | - | (241) |
| - Supreme Court police radio infrastructure upgrade | - | 1,100 | - | - | - | - | - | - | - | - | - | - | | - | - | - | - | - | - | | - | - | - | 1,100 |
| - Facade Restoration | - | 2,500 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | | - | - | - | 2,500 |
| - Education and training program enhancements | - | - | - | | - | - | - | - | - | | - | - | - | - | - | - | - | 2 | 210 | - | - | - | 2 | 210 |
| Subtotal, FY 2013 Program Increases | - | 3,600 | - | - | - | - | 12 | 1,803 | 2 | 387 | | 1 | (51) | 15 | 2,139 | - | - | 2 | 210 | - | - | - | 17 | 5,949 |
| Total Increases Requested FY 2013 | 4 | 6,150 | - | 1,817 | - | 1,433 | 200 | 134,153 | 40 | 32,517 | 2,727 | 4 | 14,673 | 244 | 184,070 | - | 2,239 | 2 | 729 | 21,696 | - | 561 | 250 | 218,695 |
| **FY 2013 Appropriation Request** | 547 | 89,128 | 154 | 34,328 | 80 | 22,880 | 30,118 | 5,154,153 | 2,843 | 1,063,517 | 54,635 | 78 | 514,673 | 33,039 | 6,786,978 | 619 | 85,148 | 138 | 27,729 | 125,464 | 105 | 17,061 | 34,682 | 7,188,716 |

[1] The Judiciary FTE totals do not reflect reimbursable positions (282 in FY 2011, 277 in FY 2012, and 277 in FY 2013).

**THE JUDICIARY**

**Outlays - FY 2011 to FY 2013**
(Dollars in Thousands)

| Appropriation | FY 2011 | FY 2012 1/ | FY 2013 1/ | Outlay Spendout Rates YR 1 | YR 2 | YR 3 |
|---|---|---|---|---|---|---|
| Supreme Court | | | | | | |
| Discretionary | 73,272 | 72,683 | 74,743 | 80% | 20% | 0% |
| Mandatory | 2,197 | 2,197 | 2,207 | 100% | 0% | 0% |
| **Total, Salaries and Expenses** | **75,469** | **74,880** | **76,950** | | | |
| **Buildings and Grounds** | **16,011** | **20,070** | **21,070** | 68% | 12% | 20% |
| Court of Appeals for the Federal Circuit | | | | | | |
| Discretionary | 29,866 | 31,937 | 29,926 | 80% | 20% | 0% |
| Mandatory | 2,502 | 2,513 | 2,524 | 100% | 0% | 0% |
| **Total, Court of Appeals for the Federal Circuit** | **32,368** | **34,450** | **32,450** | | | |
| Court of International Trade | | | | | | |
| Discretionary | 18,156 | 20,903 | 21,633 | 95% | 5% | 0% |
| Mandatory | 1,851 | 1,718 | 1,715 | 100% | 0% | 0% |
| **Total, Court of International Trade** | **20,007** | **22,621** | **23,348** | | | |
| *Courts of Appeals, District Courts and Other Judicial Services* | | | | | | |
| Salaries and Expenses - Discretionary | 4,614,650 | 4,737,824 | 4,806,449 | 93% | 7% | 0% |
| Salaries and Expenses - Mandatory | 332,565 | 327,707 | 338,037 | 100% | 0% | 0% |
| **Total, Salaries and Expenses** | **4,947,215** | **5,065,531** | **5,144,486** | | | |
| **Defender Services** | **1,021,070** | **1,027,000** | **1,063,711** | 97% | 3% | 0% |
| **Fees of Jurors & Commissioners** | **56,015** | **54,400** | **55,400** | 99.5% | 0.5% | 0% |
| **Court Security** | **466,789** | **473,277** | **509,673** | 63.3% | 36.7% | 0% |
| ***Total, Courts of Appeals, District Courts, and Other Judicial Services*** | **6,491,089** | **6,620,208** | **6,773,270** | | | |
| **Administrative Office of the United States Courts** | **82,678** | **86,197** | **85,449** | 94% | 6% | 0% |
| **Federal Judicial Center** | **27,290** | **29,500** | **28,100** | 95% | 5% | 0% |
| **Judicial Retirement Funds (MANDATORY)** | **90,361** | **103,768** | **125,464** | 100% | 0% | 0% |
| **United States Sentencing Commission** | **17,630** | **16,500** | **17,495** | 85% | 15% | 0% |
| Subtotal, Discretionary | 6,423,427 | 6,570,291 | 6,713,649 | | | |
| Subtotal, Mandatory | 429,477 | 437,903 | 469,947 | | | |
| **Total, Judiciary** | **6,852,904** | **7,008,194** | **7,183,596** | | | |

1/ Mandatory amounts for fiscal years 2012 and 2013 reflect planned outlay levels.

# Fiscal Year 2013 Request

# Summary by Appropriation

**FY 2013 Request**
**U. S. Supreme Court, Salaries and Expenses**

| | FTE | ($000) |
|---|---|---|
| **FY 2012 Enacted Appropriation** | 494 | 74,819 |
| **Adjustments to Base** | 3 | 2,346 |
| **FY 2013 Appropriation** | **497** | **$77,165** |

### Budget Summary

The Supreme Court requests $77.2 million for its Salaries and Expenses account in fiscal year 2013, a 3.1 percent increase over the fiscal year 2012 enacted appropriation.

### Adjustments to Base

The Court's adjustments to base for fiscal year 2013 total $2.3 million to provide for standard pay, other inflationary adjustments, and to annualize 12 positions (3 FTE) expected to be hired in fiscal year 2012.

**U.S. Supreme Court - Salaries and Expenses**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2011 Actual | FY 2012 Estimate | FY 2013 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 53,155 | 53,846 | 55.778 | 1.932 |
| Rent. Communications and Utilities | 903 | 905 | 919 | 14 |
| Travel | 376 | 398 | 404 | 6 |
| Other | 19,368 | 19,670 | 20.064 | 394 |
| **Total Obligations** | **73,802** | **74,819** | **77,165** | **2,346** |
| Financing Adjustment | 119 | 0 | 0 | 0 |
| **Available Appropriation** | **73,921** | **74,819** | **77,165** | **2,346** |

# U.S. Supreme Court
## *Care of the Building and Grounds*

**FY 2013 Request**
**U.S. Supreme Court, Care of the Building and Grounds**

| | FTE | ($000) |
|---|---|---|
| **FY 2012 Enacted Appropriation** | 49 | 8.159 |
| **Adjustments to Base** | 1 | 204 |
| **Program Increases:** | | |
| Supreme Court Police Radio Infrastructure Upgrade | | 1.100 |
| Facade Restoration | | 2.500 |
| **FY 2013 Appropriation** | **50** | **$11,963** |

**Budget Summary**

The Supreme Court requests $12.0 million for its Care of the Building and Grounds account in fiscal year 2013. a 46.6 percent increase over the fiscal year 2012 enacted appropriation. The fiscal year 2013 request includes program increases for the Supreme Court police radio infrastructure upgrade and for the facade restoration to the Supreme Court building.

**Adjustments to Base**

The Supreme Court, Care of the Building and Grounds, fiscal year 2013 budget request includes an increase of $204.000 in adjustments to base for standard pay, other inflationary adjustments, and to annualize 2 positions (1 FTE) expected to be hired in fiscal year 2012.

**Program Increases**

1. ***Supreme Court Police Radio Infrastructure Upgrade: $1.1 million***

The Court requests $1.100.000 to upgrade the existing radio and console infrastructure system to a next-generation Motorola very-high-frequency radio system.

2. ***Facade Restoration: $2.5 million***

The Court requests $2,500.000 for the maintenance and preservation of the exterior facades of the Supreme Court Building.

| U.S. Supreme Court - Care of the Building and Grounds Comparative Summary of Obligations by Category ($000) | | | | |
|---|---|---|---|---|
| **Category** | **FY 2011 Actual** | **FY 2012 Estimate** | **FY 2013 Request** | **Requested Increase/Decrease** |
| Compensation and Benefits | 4,634 | 3,854 | 3.991 | 137 |
| Rent, Communications and Utilities | 2,164 | 2,877 | 2,907 | 30 |
| Other | 14,586 | 12,880 | 7,387 | (5.493) |
| **Total Obligations** | **21,384** | **19,611** | **14,285** | **(5,326)** |
| Financing Adjustment | (13,225) | (11,452) | (2.322) | 9.130 |
| **Available Appropriation** | **8,159** | **8,159** | **11,963** | **3,804** |

# United States Court of Appeals for the Federal Circuit

**FY 2013 Request**
**Court of Appeals for the Federal Circuit**

| | FTE | ($000) |
|---|---|---|
| **FY 2012 Enacted Appropriation** | 154 | $32,511 |
| **Adjustments to Base** | | 1,817 |
| **FY 2013 Appropriation** | **154** | **$34,328** |

**Budget Summary**

The Court of Appeals for the Federal Circuit requests $34.3 million in fiscal year 2013, a 5.6 percent increase over the fiscal year 2012 enacted appropriation. This request continues the Court's efforts to keep up with its varied and growing subject-matter jurisdiction.

**Adjustments to Base**

The Court's adjustments to base for fiscal year 2013 total $1.8 million to provide for standard pay, other inflationary adjustments, and other court operating expenses that could not be funded in 2012 due to a large GSA rent increase. The Court requests no program increases.

**U.S. Court of Appeals for the Federal Circuit**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2011 Actual | FY 2012 Estimate | FY 2013 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 17,847 | 19,825 | 20,365 | 540 |
| Rent, Communications and Utilities | 6,277 | 7.413 | 7.578 | 165 |
| Travel | 103 | 145 | 153 | 8 |
| Other | 8,679 | 5.778 | 6.921 | 1.143 |
| **Total Obligations** | **32,905** | **33,161** | **35,017** | **1,856** |
| Financing Adjustment | (394) | (650) | (689) | (39) |
| **Available Appropriation** | **32,511** | **32,511** | **34,328** | **1,817** |

# United States Court of International Trade

| FY 2013 Request<br>U.S. Court of International Trade | FTE | ($000) |
| --- | --- | --- |
| **FY 2012 Enacted Appropriation** | **80** | **$21,447** |
| **Adjustments to Base** | | 1,433 |
| **FY 2013 Appropriation** | **80** | **$22,880** |

### Budget Summary

The Court of International Trade requests $22.9 million in fiscal year 2013, a 6.7 percent increase over the fiscal year 2012 enacted appropriation.

### Adjustments to Base

The Court's adjustments to base for fiscal year 2013 total $1.4 million for standard pay, other inflationary adjustments, and a large GSA rent increase resulting from a change in space measurement methodology. The Court requests no program increases.

## COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES

### Summary of the Fiscal Year 2013 Budget Request

The *Courts of Appeals, District Courts, and Other Judicial Services* accounts fund most of the day-to-day operations and activities of the federal courts. The four accounts under this heading include:

- **Salaries and Expenses**, which funds the operating costs of appellate, district and bankruptcy courts, and probation and pretrial services offices;
- **Defender Services**, which funds the necessary expenses to provide defense representation under the Criminal Justice Act (CJA) for persons financially unable to obtain defense counsel;
- **Fees of Jurors and Commissioners**, which funds the fees and allowances of grand and petit jurors, and the compensation of jury and land commissioners; and
- **Court Security**, which provides for the necessary expenses to provide protective guard services and security equipment for judiciary facilities.

### The Fiscal Year 2013 Budget Request

The Judicial Conference requests $6,787.0 million in appropriations in fiscal year 2013 for these four accounts, an increase of $184.1 (2.8 percent) over fiscal year 2012 enacted appropriations of $6,602.9 million. The following table details the fiscal year 2012 enacted appropriations and fiscal year 2013 requested appropriations levels for the four accounts.

The $184.1 million increase in appropriations includes funding for 244 additional FTE, and is comprised of standard adjustments to base totaling $181.9 million and 229 FTE, and program increases totaling $2.1 million and 15 FTE. The table on page 24 summarizes the requested changes for each account.

Appropriations for the *Courts of Appeals, District Courts, and Other Judicial Services*

| ($000) | FY 2012 Enacted Appropriation | FY 2013 Request | Increase over FY 2012 | % Change |
|---|---|---|---|---|
| Salaries and Expenses [1] | $5,020,000 | $5,154,153 | $ 134,153 | 2.7% |
| Defender Services | $1,031,000 | $1,063,517 | $ 32,517 | 3.2% |
| Fees of Jurors | $51,908 | $54,635 | $ 2,727 | 5.3% |
| Court Security | $500,000 | $514,673 | $ 14,673 | 2.9% |
| **Total** | **$6,602,908** | **$6,786,978** | **$ 184,070** | **2.8%** |

[1] Salaries and Expenses includes funds from the Vaccine Injury Trust Fund.

**FY 2013 Summary of Requested Changes**

| | COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES | | | | | | | Total Court of Appeals, District Courts, and Other Judicial Services[1] | |
|---|---|---|---|---|---|---|---|---|---|
| | Salaries and Expenses | | Defender Services | | Fees of Jurors and Commissioners | Court Security | | | |
| | FTE | ($000) | FTE | ($000) | ($000) | FTE | ($000) | FTE | ($000) |
| FY 2012 Enacted Appropriation | 29,918 | 5,015,000 | 2,803 | 1,031,000 | 51,908 | 74 | 500,000 | 32,795 | 6,597,908 |
| FY 2012 Vaccine Injury Trust Fund | - | 5,000 | - | - | - | - | - | - | 5,000 |
| **FY 2012 Available Appropriation** | **29,918** | **5,020,000** | **2,803** | **1,031,000** | **51,908** | **74** | **500,000** | **32,795** | **6,602,908** |
| **FY 2013 Adjustments to Base** | | | | | | | | | |
| Judges: | | | | | | | | | |
| - Pay and benefit cost adjustments | - | 3,728 | - | - | - | - | - | - | 3,728 |
| - Additional senior judges | 111 | 15,694 | - | - | - | - | - | 111 | 15,694 |
| - Increase in average number of filled Article III judgeships | 77 | 11,963 | - | - | - | - | - | 77 | 11,963 |
| - Non-recurring costs of new FY 2012 judges | - | (2,963) | - | - | - | - | - | - | (2,963) |
| Court Personnel | | | | | | | | | |
| - Pay and benefit cost adjustments | - | 60,960 | - | 9,208 | - | - | 1,636 | - | 71,804 |
| Other Changes | | | | | | | | | |
| - Funding necessary to maintain current services | - | 26,241 | - | 12,980 | 2,293 | - | 1,677 | - | 43,191 |
| - Inflation (non-space-related) | - | 6,359 | - | 2,844 | 524 | - | 86 | - | 9,813 |
| - Vaccine Injury Trust Fund adjustment | - | 354 | - | - | - | - | - | - | 354 |
| - Space related costs (includes inflation for space rental rates) | - | 48,180 | - | 999 | - | - | 124 | - | 49,303 |
| - Annualization of new FY 2012 positions | - | - | 38 | 8,105 | - | 3 | 227 | 41 | 8,332 |
| - Defender Services workload changes | - | - | - | 3,494 | - | - | - | - | 3,494 |
| - Change in available jurors | - | - | - | - | (90) | - | - | - | (90) |
| - FPS security service charges | - | - | - | - | - | - | 5,235 | - | 5,235 |
| - FY 2013 court security officer wage adjustments | - | - | - | - | - | - | 17,566 | - | 17,566 |
| - Annualization of new FY 2012 court security officers (11) | - | - | - | - | - | - | 561 | - | 561 |
| - Additional court security officers in FY 2013 (2) | - | - | - | - | - | - | 227 | - | 227 |
| - Adjustments to base for security systems and equipment | - | - | - | - | - | - | (2,347) | - | (2,347) |
| - Adjustments to base for program administration | - | - | - | - | - | - | (277) | - | (277) |
| - Base Reductions for information technology projects | - | (38,166) | - | - | - | - | - | - | (38,166) |
| - Base Reductions (cost-containment) | - | - | - | (5,500) | - | - | (9,991) | - | (15,491) |
| **Subtotal, FY 2013 Adjustments to Base** | **188** | **132,350** | **38** | **32,130** | **2,727** | **3** | **14,724** | **229** | **181,931** |
| **FY 2013 Adjusted Base** | **30,106** | **5,152,350** | **2,841** | **1,063,130** | **54,635** | **77** | **514,724** | **33,024** | **6,784,839** |
| **FY 2013 Program Increases** | | | | | | | | | |
| Judges: | | | | | | | | | |
| - Magistrate judges and staff | 12 | 1,803 | - | - | - | - | - | 12 | 1,803 |
| Court Personnel and Programs: | | | | | | | | | |
| - Four new case-budgeting positions | - | - | 2 | 387 | - | - | - | 2 | 387 |
| - Two judiciary-funded USMS positions to replace existing contractors (funded for 6 months) | - | - | - | - | - | 1 | 190 | 1 | 190 |
| - Savings from two contractor conversions at USMS | | | | | | | (241) | - | (241) |
| **Subtotal, FY 2013 Program Increases** | **12** | **1,803** | **2** | **387** | - | **1** | **(51)** | **15** | **2,139** |
| Total increases requested, FY 2013 | 200 | 134,153 | 40 | 32,517 | 2,727 | 4 | 14,673 | 244 | 184,070 |
| **FY 2013 Appropriation Request** | **30,118** | **5,154,153** | **2,843** | **1,063,517** | **54,635** | **78** | **514,673** | **33,039** | **6,786,978** |

[1] The Court of Appeals, District Courts, and Other Judicial Services FTE totals do not reflect reimbursable positions (26 in FY 2012, and 26 in FY 2013).

FY 2013 Requested Appropriation Increases
Courts of Appeals, District Courts, and Other Judicial Services
1%
Program Enhancements
Increase Required to Maintain Current Services
99%





FY 2013 Budget Request by Account
Court of Appeals, District Courts, and Other Judicial Services
(Appropriations)
Court Security
7%
Fees of Jurors
1%
Defender Services
16%
Salaries and Expenses
76%

**Judiciary Workload Factors**

| WORKLOAD FACTOR | 12 months ending June 30, 2006 Actual (FY 2007) | 12 months ending June 30, 2007 Actual (FY 2008) | 12 months ending June 30, 2008 Actual (FY 2009) | 12 months ending June 30, 2009 Actual (FY 2010) | 12 months ending June 30, 2010 Actual (FY 2011) | 12 months ending June 30, 2011 Actual (FY 2012) | 12 months ending June 30, 2012 Projected (FY 2013) |
|---|---|---|---|---|---|---|---|
| Criminal Filings | 67,872 | 66,674 | 70,024 | 75,324 | 78,213 | 78,764 | 77,000 |
| Year-to-Year Change: | | -2% | 5% | 8% | 4% | 1% | -2% |
| Criminal Defendants Filed | 89,956 | 88,245 | 91,782 | 96,718 | 100,031 | 102,605 | 102,700 |
| Year-to-Year Change: | | -2% | 4% | 5% | 3% | 3% | 0% |
| Probation: Persons Under Supervision | 113,697 | 115,930 | 120,051 | 123,839 | 126,642 | 129,319 | 131,600 |
| Year-to-Year Change: | | 2% | 4% | 3% | 2% | 2% | 2% |
| Pretrial Services: Cases Activated | 99,508 | 95,955 | 98,862 | 103,604 | 110,671 | 107,197 | 110,000 |
| Year-to-Year Change: | | -4% | 3% | 5% | 7% | -3% | 3% |
| Bankruptcy Filings | 1,484,570 | 751,056 | 967,831 | 1,306,315 | 1,572,597 | 1,529,560 | 1,361,400 |
| Year-to-Year Change: | | -49% | 29% | 35% | 20% | -3% | -11% |
| Appellate Filings | 68,313 | 58,809 | 59,406 | 59,399 | 56,097 | 55,353 | 55,300 |
| Year-to-Year Change: | | -14% | 1% | 0% | -6% | -1% | 0% |
| Civil Filings | 244,343 | 272,067 | 256,354 | 257,204 | 285,215 | 289,630 | 287,000 |
| Year-to-Year Change: | | 11% | -6% | 0% | 11% | 2% | -1% |

# Courts of Appeals, District Courts and Other Judicial Services
## *Salaries and Expenses*

| FY 2013 Request<br>Courts of Appeals, District Courts and other Judicial Services, Salaries and Expenses | FTE | ($000) |
|---|---|---|
| **FY 2012 Enacted Appropriation** | 29,918 | $5,015,000 |
| Vaccine Injury Trust Fund | | 5,000 |
| **FY 2012 Available Appropriation** | 29,918 | 5,020,000 |
| **Adjustments to Base** | 188 | 132,350 |
| **Program Increases:** | | |
| New Magistrate Judges and staff | 12 | 1,803 |
| **FY 2013 Appropriation** | **30,118** | **$5,154,153** |
| Vaccine Injury Trust Fund | | ($5,354) |
| **FY 2013 Direct Appropriation** | **30,118** | **$5,148,799** |

### Budget Summary

The Judicial Conference requests $5,154,153,000 for the Salaries and Expenses account in fiscal year 2013, including $5,354,000 for the Vaccine Injury Trust Fund. This is a 2.7 percent increase over the fiscal year 2012 enacted appropriation of $5,020,000,000. The Salaries and Expenses appropriation makes up 72 percent of the judiciary's total appropriations request, and 76 percent of the *Courts of Appeals, District Courts and Other Judicial Services* request. This account provides for the operating expenses of the 12 regional circuit courts of appeals, district courts, bankruptcy courts, and probation and pretrial services offices. This account utilizes other funding sources, including current year fee collections and prior year carryforward balances, to offset the need for appropriated funds. The judiciary projects that these sources of non-appropriated funds will total $340.3 million in fiscal year 2013, $26.2 million below the fiscal year 2012 estimated financial plan level of $366.5 million.

### Adjustments to Base

The requested increase for the Salaries and Expenses appropriation includes $132.4 million for standard pay and other inflationary increases, and other adjustments that will allow the courts to maintain a fiscal year 2012 service level in fiscal year 2013. In broad categories, these increases include:

1. ***Pay and benefit cost adjustment for judges: $3.7 million***

An increase of $3.7 million will provide for expected changes in pay and benefit rates for judges, including an estimated 0.5 percent pay adjustment in fiscal year 2013.

2. ***Increase in the number of senior judges: $15.7 million*** — ***FTE 111***

An increase of $15.7 million will provide for an additional 26 senior judges and 85 associated staff anticipated in fiscal year 2013.

***3. Increase in average number of filled Article III judgeships: $12.0 million*** ***FTE 77***

An increase of $12.0 million will provide for an additional 13 Article III judgeships and 64 associated staff anticipated in fiscal year 2013.

***4. Non-recurring costs associated with new fiscal year 2012 judges (Article III and magistrate judges): ($3.0 million)***

A decrease of $3.0 million is requested for non-recurring, one-time costs associated with new judges in fiscal year 2012.

***5. Pay and benefit adjustments for court personnel: $61.0 million***

An increase of $61.0 million will provide for an estimated 0.5 percent pay adjustment in 2013, within-grade increases, changes in benefits rates, and one more compensable day.

***6. Funds necessary to maintain fiscal year 2012 service levels due to an anticipated decline in non-appropriated funds: $26.2 million***

The fiscal year 2012 estimated financial plan assumes that current year fee collections and prior-year carryforward balances from fiscal year 2012 will total $366.5 million. The fiscal year 2013 request estimates that these non-appropriated sources of funds used to help finance court operations will total $340.3 million, a net decrease of $26.2 million from fiscal year 2012 assumed levels. The judiciary requests direct appropriated funds for fiscal year 2013 to replace these non-appropriated funds in order to maintain the same level of service as provided in fiscal year 2012.

***7. Non-pay inflationary and contractual increases: $6.4 million***

An increase of $6.4 million is requested for a 1.6 percent general inflationary increase and other contractual increases.

***8. Vaccine Injury Compensation Trust Fund: $0.4 million***

The fiscal year 2013 level reflects an increase of $0.4 million for standard pay and non-pay inflationary adjustments.

***9. GSA space rental and related expenses: $48.2 million***

The judiciary requests a net increase of $48.2 million in fiscal year 2013 for General Services Administration (GSA) rent and related services associated with (a) annualizing new space expected to be occupied during fiscal year 2012 (+$10.7 million), (b) inflationary increase for GSA rent costs (+$13.3 million), (c) new space projected to be delivered by GSA in fiscal year 2013 (+$36.3 million), and (d) other space-related adjustments (-$12.1 million).

***10. Reductions to base requirements: ($38.2 million)***

A decrease of $38.2 million is due to efforts to lower base requirements for information technology projects in fiscal year 2013.

**Program Increases**

***11. New magistrate judges:***
***$1.8 million*** ***FTE 12***

An increase of $1.8 million will fund 3 new magistrate judges (3 FTE) in fiscal year 2013 to assist in districts with heavy caseloads. This request funds the costs of the new judges and their associated support staff (9 FTE) in Delaware (Wilmington), North Carolina (Durham), and Florida (Orlando or Tampa).

**U.S. Courts of Appeals, District Courts and Other Judicial Services, Salaries and Expenses**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2011 Actual | FY 2012 Estimate | FY 2013 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 3,541,259 | 3,580,301 | 3,588,474 | 8,173 |
| Rent, Communications and Utilities | 1,132,023 | 1,157,805 | 1,207,841 | 50,036 |
| Travel | 58,244 | 60,982 | 59,165 | (1,817) |
| Other | 644,557 | 668,281 | 638,932 | (29,349) |
| **Total Obligations** | **5,376,083** | **5,467,369** | **5,494,412** | **27,043** |
| Financing Adjustment | (371,862) | (452,369) | (345,613) | 106,756 |
| **Available Appropriation (Direct)** | **5,004,221** | **5,015,000** | **5,148,799** | **133,799** |
| **Vaccine Injury Trust Fund** | **4,775** | **5,000** | **5,354** | **354** |
| **Total Available Appropriation** | **5,008,996** | **5,020,000** | **5,154,153** | **134,153** |

FY 2013 Budget Request
Salaries and Expenses Account by Category
(Obligations)
Operations and Maintenance
10%
Information Technology
6%
Judges & Chambers Staff
Salaries & Expenses
21%
Court Support Personnel
Benefits
11%
Court Support Personnel
Salaries
33%
Rent
19%

COURT SUPPORT STAFF FTE SUMMARY REPORT
FY 2010 - FY 2013
On-board FTE
24,000
23,800
23,600
23,400
23,200
23,000
22,800
22,600
22,400
22,200
22,000
21,800
21,600
21,400
21,200
21,000
20,800
20,600
20,400
20,200
20,000
21,566
21,932
21,300
21,322
09/30/10
Actual 2010
09/30/11
Actual 2011
09/30/12
Funded 2012
09/30/13
Request 2013



**Explanation of Other Funding Sources**

In addition to appropriated funds, each year the judiciary uses other non-appropriated funds to offset its appropriation requirement. Fee collections, primarily from court filing fees, comprise the majority of these sources of funds. These fees are used to offset expenses within the Salaries and Expenses account.

***"Unencumbered"* Funds**

In addition to fee collections, in certain instances the judiciary may carry forward funds from one year to the next. These carryforward funds are considered "unencumbered" when they are generated by savings in the financial plan in base areas or where budgeted costs did not materialize. These savings are usually unforeseen and uncontrollable by the judiciary. For example, the judiciary does not control the confirmation rate of Article III judges. The judiciary makes its best estimate, based on historical confirmation rates of how many judges will be confirmed in the upcoming year. When confirmations fall below historical estimates, the funds budgeted for these judgeships are not obligated. New space delivery is another area that can produce savings. The judiciary budgets for rent costs based on projected delivery dates provided by the General Services Administration. If delivery of the space by GSA is delayed, the previously budgeted rent costs become unencumbered.

A similar situation exists within the Judiciary Information Technology Fund. The Salaries and Expenses account must, by statute, procure its information technology needs, including hardware and software as well as system development requirements, from this fund. The fund is financed by deposits from the Salaries and Expenses account and, once deposited, the funds remain available without fiscal year limitation. It is common for savings in the Judiciary Information Technology Fund financial plan to occur. Information technology costs often are difficult to predict with precision, and when costs come in below projections, savings are realized. Savings in the plan are carried forward in the fund and offset the required deposit in the following year. The judiciary uses these carryforward funds to offset the following year's appropriation requirements.

Recognizing that savings in the financial plan tend to occur each year, but at unpredictable levels, the judiciary has tried to estimate the level of unencumbered funds that will be available to offset fiscal year 2013 requirements. As the table below indicates, the judiciary has estimated that unencumbered funds will be $340.3 million in fiscal year 2013, a net decrease of $26.2 million from the $366.5 million in the fiscal year 2012 estimated financial plan to help finance court operations. The judiciary requests appropriated funds for fiscal year 2013 to replace these non-appropriated funds in order to maintain the same level of services provided in fiscal year 2012. Because these funds are used as a general offset to judiciary requirements, the difference in their availability from one fiscal year to the next affects the judiciary's appropriation requirement. If this loss in non-appropriated funds is not offset by a like amount of appropriated funds, it will result in a reduction in resources needed to fund base requirements.
Due to the unpredictable nature of these funds, the judiciary will keep Congress informed throughout the appropriations cycle as to the current level of anticipated unencumbered non-appropriated funds and adjust its request for appropriated funds accordingly.

**Sources of Non-Appropriated Funds in Salaries and Expenses**

| ($000) | FY 2012 Plan | FY 2013 Request | Difference |
|---|---|---|---|
| Salaries and Expenses | | | |
| *Fee Collections* | *244,813* | *260,259* | *15,446* |
| *Other S&E and JITF Carryforward* | *121,687* | *80,000* | *(41,687)* |
| **Total** | **366,500** | **340,259** | **(26,241)** |

### *"Encumbered"* Funds

Carryforward funds are considered "encumbered" when both the funds and the associated need for the funds shift to the next year. The judiciary has no-year authority for specific purposes. In some cases, as was described above, this authority is used to carry forward savings where planned expenses did not occur. This authority is also used when planned expenses are delayed, or slipped, from one year to the next. In fiscal year 2012, $80.9 million will be slipped into the fiscal year. These "slippages" occur primarily in two areas: information technology investments and costs associated with new space delivery. In the Judiciary Information Technology Fund, one of the principle purposes for the creation of this fund was the recognition that the development of major information technology systems occurs over a period of years and is not efficiently driven by fiscal year limitations. Even so, the judiciary only budgets for information technology costs that it reasonably expects to complete in a given year. Because funds assigned to information technology investments can carry forward to the following year, this ensures that, for individual investments, funds to complete a phase will be available even if not obligated by the end of the fiscal year. This flexibility allows projects to stay on or under budget by avoiding the need to make costly contractual or other obligations based on the calendar rather than project readiness.

Similarly, the judiciary also receives a limited amount of no-year authority in its regular appropriation for space alterations and furniture associated with new space delivery. Because space alteration and building projects are also subject to unpredictable delays, the ability of the judiciary to carry forward funds associated with specific projects allows the judiciary to budget for major space renovation costs and other non-rental costs associated with the delivery of a new courthouse and then carry forward these project specific funds if the project is delayed.

These "encumbered" funds, while adding to the judiciary's projected obligations in a given fiscal year, do not impact the judiciary's appropriations requirement. Even if the total amount fluctuates from year to year, the funds associated with the specific project are brought forward from the prior year to fund the project, resulting in no additional appropriation requirements.

**Salaries and Expenses Obligations - Judiciary Information Technology Fund Program Requirements**
**($000)**

| | A | B | C | | |
|---|---|---|---|---|---|
| **IT Program Component** | **FY 2012 Projected Obligations** | **FY 2011 Slipped Requirements** | **FY 2012 Base Requirements (col a - col b)** | **FY 2013 Total Requirements** | **Change: FY 2012 Adj. Base Requirements to FY 2013 Current Services Requirements** |
| Court Administration Systems | 2,799 | 41 | 2,758 | 2,807 | 49 |
| Judicial Statistics and Reporting Systems | 4,172 | 661 | 3,511 | 3,308 | (203) |
| Court Allotments | 90,917 | 1,235 | 89,682 | 81,138 | (8,544) |
| Probation and Pretrial Services | 17,893 | 185 | 17,708 | 12,127 | (5,581) |
| Financial Systems | 39,311 | 8,855 | 30,456 | 26,886 | (3,570) |
| Human Resources Systems | 20,281 | 427 | 19,854 | 18,067 | (1,787) |
| Management Information Systems | 15,069 | 1,190 | 13,879 | 11,530 | (2,349) |
| Infrastructure and Collaboration Tools | 88,917 | 15,256 | 73,661 | 61,042 | (12,619) |
| Telecommunications Program | 84,464 | 13,640 | 70,824 | 73,825 | 3,001 |
| Court Support Reimbursable Program | 30,222 | 0 | 30,222 | 30,706 | 484 |
| **TOTAL, SALARIES AND EXPENSES** | 394,045 | 41,490 | 352,555 | 321,436 | (31,119) |

## Court of Appeals, District Courts and Other Judicial Services
### *Defender Services*

**FY 2013 Request**
**Courts of Appeals, District Courts and Other Judicial Services, Defender Services**

| | FTE | ($000) |
|---|---|---|
| **FY 2012 Enacted Appropriation** | 2,803 | $1,031,000 |
| **Adjustments to Base** | 38 | 32,130 |
| **Program Increases:** | | |
| Four new case-budgeting positions | 2 | 387 |
| **FY 2013 Appropriation** | **2,843** | **$1,063,517** |

**Budget Summary**

The Judicial Conference requests $1,063.5 million for Defender Services in fiscal year 2013, a 3.2 percent increase over the fiscal year 2012 enacted appropriation. This appropriation is approximately 15 percent of the judiciary's total fiscal year 2013 budget request. This funding supports the provision of constitutionally-mandated legal representation and other services to persons financially unable to obtain counsel in criminal and related matters in federal court. The Criminal Justice Act (CJA) provides that courts shall appoint counsel from federal public and community defender organizations or from a panel of private attorneys established by the court. Costs associated with this account are driven by the number and type of prosecutions brought by United States Attorneys.

**Adjustments to Base**

An increase of $32.1 million is requested for pay and inflationary adjustments that will allow the judiciary to meet its constitutional obligation to provide defense counsel to all eligible persons in fiscal year 2013. In broad categories, these increases include:

1. ***Pay and benefit adjustments, Federal Defender Organizations, and Program Administration: $9.2 million***

An increase of $9.2 million will provide for an estimated 0.5 percent pay adjustment in 2013, within-grade increases, changes in benefits rates, and one more compensable day.

2. ***Annualization of new fiscal year 2011 staff: $8.1 million*** ***FTE 38***

An increase of $8.1 million (38 FTE) provides the remaining six months funding in fiscal year 2013 to annualize 76 positions expected to be hired in fiscal year 2012.

3. ***Increases in caseload, case complexity and change in caseload mix: $3.5 million***

A net increase of $3.5 million is requested for additional and more costly representations in fiscal year 2013. The additional funding will provide for the increase in representations and increased

complexity associated with the 205,000 non-capital representations projected in fiscal year 2013 offset by a decrease in projected capital representations.

| Projected Non-Capital Representations | | | |
|---|---|---|---|
| | FY 2012 | FY 2013 | Difference |
| Federal Defender Organizations | 115,700 | 115,300 | (400) |
| Panel Attorneys | 87,900 | 89,700 | 1,800 |
| Total Projected Representations | 203,600 | 205,000 | 1,400 |

4. ***Funds necessary to maintain fiscal year 2012 service levels due to an anticipated decline in non-appropriated funds: $13.0 million***

In fiscal year 2012, $23.0 million in balances from fiscal year 2011 was available to finance fiscal year 2012 requirements. In fiscal year 2013, absent unforeseen expenses that might arise, the judiciary expects $10.0 million in non-appropriated funds to be available, a decrease of $13.0 million from fiscal year 2012. Therefore, the judiciary requests that the decline in these non-appropriated funds be replaced with direct appropriations in order to maintain the fiscal year 2012 level of representations in fiscal year 2013.

5. ***Other inflationary increases: $3.8 million***

An increase of $3.8 million is required for inflationary adjustments for all non-pay categories, as well as for space rental costs.

6. ***Adjustment to base decrease (cost-containment): ($5.5 million)***

A decrease of $5.5 million is due to cost-containment efforts to lower base requirements in fiscal year 2013 by making libraries more electronic and not renewing book subscriptions, implementing a moratorium on the acquisition of new space, the elimination of furniture allotments, and limiting the funding for training requirements.

**Program Increases**

7. ***Four new case budgeting attorney positions: $0.4 million*** ***FTE: 2***

An increase of $0.4 million will provide for 4 new case budgeting attorney positions (2 FTE) in fiscal year 2013, who would focus their efforts on reducing costs associated with high-cost cases. The need for these additional positions is driven by the fact that a very small percentage of panel attorney representations account for almost one-third of overall national panel attorney expenditures.

**Courts of Appeals, District Courts and Other Judicial Services**
**Defender Services**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2011 Actual | FY 2012 Estimate | FY 2013 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 375,382 | 386,539 | 390,905 | 4,366 |
| Rent, Communications and Utilities | 46,827 | 48,645 | 49,799 | 1,154 |
| Travel | 10,363 | 10,671 | 10,854 | 183 |
| Contractual Services (includes panel attorney payments) | 457,222 | 467,292 | 478,261 | 10,969 |
| Other (includes grants to Community Defender Organizations) | 137,274 | 144,446 | 143,698 | (748) |
| **Total Obligations** | **1,027,068** | **1,057,593** | **1,073,517** | **15,924** |
| Financing Adjustment | (1,375) | (26,593) | (10,000) | 16,593 |
| **Available Appropriation** | **1,025,693** | **1,031,000** | **1,063,517** | **32,517** |



FY 2013 Budget Request
Defender Services Account by Category
(Obligations)
Program Administration
1%
Panel Attorneys
42%
Federal Defender
Organizations
57%

# Courts of Appeals, District Courts and Other Judicial Services
## *Fees of Jurors and Commissioners*

| FY 2013 Request<br>Courts of Appeals, District Courts and Other Judicial Services, Fees of Jurors and Commissioners | ($000) |
|---|---|
| **FY 2012 Enacted Appropriation** | **$51,908** |
| **Adjustments to Base** | **2,727** |
| **FY 2013 Appropriation** | **$54,635** |

**Budget Summary**

The Judicial Conference requests $54.6 million for Fees of Jurors and Commissioners in fiscal year 2013, a 5.3 percent increase over the fiscal year 2012 enacted appropriation. This appropriation is less than one percent of the judiciary's total budget. Costs associated with this account may be unpredictable and are driven by the number of jury trials, the length of those trials, and statutory rates for reimbursement paid to jurors.

**Adjustments to Base**

All of the adjustments in this account are base adjustments that will allow the account to continue to pay for the statutory fees and expenses to grand and petit jurors and compensation of land commissioners in fiscal year 2013. These adjustments include:

***1. Inflationary adjustments: $524,000***

In addition to the attendance fees, jurors also are reimbursed for certain expenses including meals and lodging for sequestered jurors and transportation of juries to view evidence or crime scenes. Inflationary increases associated with these expenses are expected to total $159,000 for grand jurors and $365,000 for petit jurors in fiscal year 2013.

***2. Projected change in juror days: ($90,000)***

Based on projected changes in the number of available grand and petit jurors, overall expenses are projected to decrease by $90,000 in fiscal year 2013. Requirements for grand jurors related to these expenses are expected to decrease by $25,000 and requirements for petit jurors are projected to decrease by $65,000.

***3. Funds necessary to maintain fiscal year 2012 service levels due to an anticipated decline in non-appropriated funds: $2.3 million***

The fiscal year 2012 financial plan was financed in part by $4.4 million in carry forward balances from prior years. In fiscal year 2013, the judiciary estimates that $2.1 million in carryforward balances will be available, a decrease of $2.3 million. Thus, the judiciary requests $2.3 million in fiscal year 2013 to replace these non-appropriated funds in order to maintain the same level of service as provided in fiscal year 2012.

**Courts of Appeals, District Courts and Other Judicial Services**
**Fees of Jurors and Commissioners**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2011 Actual | FY 2012 Estimate | FY 2013 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 27,192 | 28,231 | 28,449 | 218 |
| Rent. Communications and Utilities | 1,553 | 1,612 | 1,624 | 12 |
| Travel | 23,651 | 24,555 | 24.744 | 189 |
| Other | 1,815 | 1.883 | 1,898 | 15 |
| **Total Obligations** | **54,211** | **56,281** | **56,715** | **434** |
| Financing Adjustment | (1,906) | (4,373) | (2.080) | 2.293 |
| **Available Appropriation** | **52,305** | **51,908** | **54,635** | **2,727** |



311

FY 2013 Budget Request
Fees of Jurors and Commissioners Account by Category
(Obligations)
Land Commissioners
0.2%
Grand Jurors
29.1%
Petit Jurors
70.7%

## Courts of Appeals, District Courts and Other Judicial Services
### *Court Security*

**FY 2013 Request**
**Courts of Appeals, District Courts and Other Judicial Services , Court Security**

| | FTE | ($000) |
|---|---|---|
| **FY 2012 Enacted Appropriation** | 74 | $500,000 |
| **Adjustments to Base** | 3 | 14,724 |
| **Program Increases:** | | |
| Two New Judiciary-Funded USMS Positions to replace existing contractors | 1 | 190 |
| Savings from two contractor conversions | | (241) |
| **FY 2013 Appropriation** | 78 | $514,673 |

**Budget Summary**

The Judicial Conference requests $514.7 million for Court Security in fiscal year 2013, a 2.9 percent increase over the fiscal year 2012 enacted appropriation. The majority of the funding is transferred to the U.S. Marshals Service (USMS), which is responsible for administering the Judicial Facility Security Program. The Court Security appropriation is approximately 7 percent of the judiciary's total budget.

**Adjustments to Base**

The Court Security request for adjustments to base is for pay, inflationary increases, and other adjustments that will maintain fiscal year 2012 current services. This request also includes the annualization of 6 positions (3 FTE) expected to be hired in fiscal year 2012. In broad categories, these adjustments include:

***1. Pay and benefit increase: $1.6 million***

This increase accounts for an estimated 0.5 percent pay adjustment in 2013, within-grade increases, changes in benefits rates, and one more compensable day in fiscal year 2013.

***2. Annualization of new fiscal year 2012 USMS positions $0.2 million*** ***FTE 3***

In fiscal year 2012, Congress provided partial funding for six new judiciary-funded positions at the USMS. These six positions are conversions of current contract positions. This request includes the increase required in fiscal year 2013 to fund the full-year costs of these positions.

***3. Annualization of fiscal year 2012 court security officer positions (11): $0.6 million***

Funding is required to annualize costs for 11 additional Court Security Officers (CSO) expected to be brought on-board in fiscal year 2012, based on projected occupancy dates for new and existing space and the CSO staffing formula.

***4. Department of Labor and Collective Bargaining Agreements wage rate adjustment: $17.6 million***

This increase provides for an average 5.0 percent wage adjustment for contract court security officers as established by the Department of Labor and based on collective bargaining agreements.

***5. Additional court security officers (2) associated with fiscal year 2013 new and existing space: $0.2 million***

The increase provides for two additional CSOs for new and renovated existing space expected to be delivered in fiscal year 2013.

***6. Reduction to court security officer costs (cost-containment): ($10.0 million)***

Due to current budgetary constraints and cost-containment efforts, the judiciary plans to freeze approximately 115 CSO positions, or 2.7 percent of the total CSO staffing level, to generate additional cost savings. The judiciary's intention with this reduction is not to eliminate these CSO positions permanently, but to leave the positions vacant until additional resources are available to fund them. This interim measure reduces the judiciary's security-related costs, while having what is believed to be a minimal impact on overall CSO staffing.

***7. Non-pay inflationary increases: $0.1 million***

The funding requested will provide for a general inflationary increase of 1.6 percent for travel, supplies, equipment, and other contractual services (exclusive of Court Security Officers contracts).

***8. Inflationary increase in GSA space rental costs: $0.1 million***

The funding requested will provide for a general inflationary increase of 2.0 percent for GSA space rental costs.

***9. Changes in Federal Protective Service security charges: $5.2 million***

The requested increase of $5.2 million will fund basic security ($0.7 million) and building-specific ($4.5 million) operating expenses based on anticipated billings from the Federal Protective Service. This brings the total request to $81.2 million in fiscal year 2013, compared to $75.9 million projected in fiscal year 2012 -- a 7 percent increase over 2012.

| ($000) | FY 2012 | FY 2013 |
|---|---:|---:|
| Basic | 30,229 | 30,924 |
| Building-Specific | 45,720 | 50,260 |
| **Total FPS** | **75,949** | **81,184** |

***10. Adjustments to base for security systems and equipment: ($2.3 million)***

The requested amount reflects a net decrease of $2.3 million in the court security systems and equipment acquisition plan. This includes $12.9 million in increases for security systems for new and renovated facilities; perimeter security improvements: additional and replacement equipment: CSO radios, accessories, repairs and over-the-air re-key; and a nationwide contract for vehicle barrier maintenance. An offsetting decrease of $15.2 million is for a nationwide maintenance contract for existing security systems and equipment; cyclical replacement of screening equipment: GSA installation and alterations; equipment for probation and pretrial services offices and federal public defender organizations; cyclical replacement of hardware and software for access control systems; screening equipment for new buildings; and itemiser consumables, spare parts and repair services for ETD systems.

***11. Adjustments to base for program administration: ($0.3 million)***

The requested amount reflects a decrease of $0.3 million for one-time program administrative requirements.

***12. Funds necessary to maintain fiscal year 2012 service levels due to an anticipated decline in non-appropriated funds: $1.7 million***

The fiscal year 2012 financial plan was financed in part by $1.7 million in carryforward balances from fiscal year 2011. Since no carryforward balances are expected from fiscal year 2012, the judiciary requests appropriated funds for fiscal year 2013 to replace these non-appropriated funds in order to maintain the same level of service as provided in fiscal year 2012.

**Program Increases**

***13. Two new judiciary-funded USMS positions: ($0.1 million)*** **FTE 1**

The requested amount reflects a net decrease of $0.1 million for the conversion of 2 contractor positions to 2 USMS positions. An increase of $190,000 for the two USMS positions is offset by a decrease of $241,000 for the cost of the contractor positions in fiscal year 2013.

**Courts of Appeals, District Courts and Court Security**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2011 Actual | FY 2012 Estimate | FY 20123 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 8,119 | 10,106 | 10,355 | 249 |
| Rent. Communications and Utilities | 6,993 | 7,037 | 7,176 | 139 |
| Travel | 291 | 316 | 321 | 5 |
| Court Security Officers Contract | 341,474 | 351,329 | 361,165 | 9,836 |
| Federal Protective Service Charges | 68,257 | 75,949 | 81,184 | 5,235 |
| Other | 56,928 | 62,253 | 54,472 | (7,781) |
| **Total Obligations** | **482,062** | **506,990** | **514,673** | **7,683** |
| Financing Adjustment | (15,390) | (6,990) | 0 | 6,990 |
| **Available Appropriation** | **466,672** | **500,000** | **514,673** | **14,673** |

**Court Security - Summary of Requirements and Financing**

| | Court Security Officers (CSOs) | | Security Systems/Equip | Program Administration | | FPS Provided Security | Total | |
|---|---|---|---|---|---|---|---|---|
| | CSOs | $000 | $000 | FTE | $000 | $000 | FTE | $000 |
| FY 2012 Financial Plan | 4,274 | 351,329 | 53,213 | 74 | 26,499 | 75,949 | 74 | 506,990 |
| Less: Carryforward/Slippage from FY 2011 | 0 | 0 | (2,732) | 0 | (4,258) | 0 | 0 | (6,990) |
| **Total FY 2012 Enacted Appropriation** | **4,274** | **351,329** | **50,481** | **74** | **22,241** | **75,949** | **74** | **500,000** |
| FY 2013 Appropriation Increases / Decreases | 2 | 9,836 | (947) | 4 | 549 | 5,235 | 4 | 14,673 |
| **Total FY 2013 Request** | **4,276** | **361,165** | **49,534** | **78** | **22,790** | **81,184** | **78** | **514,673** |

FY 2013
Budget Request
Court Security Account by Category
(Obligations)
Federal Protective Service Charges 16%
Program Administration 4%
Security Systems and Equipment 10%
Court Security Officer Contract Costs 70%

# Administrative Office of the U.S. Courts

| FY 2013 Request<br>Administrative Office of the U.S. Courts | FTE | ($000) |
|---|---|---|
| **FY 2012 Enacted Appropriation** | 619 | $82,909 |
| **Adjustments to Base** | | 2,239 |
| **FY 2013 Appropriation** | **619** | **$85,148** |

**Budget Summary**

The Administrative Office (AO) requests $85.1 million in fiscal year 2013, a 2.7 percent increase over the fiscal year 2012 enacted appropriation. In addition to the appropriation provided by Congress, the AO receives non-appropriated funds from sources such as fee collections and carryover balances to offset its appropriation requirements. The AO also receives reimbursements from other judiciary accounts for information technology development and support services that are in direct support of the courts, the court security program, and defender services.

The AO provides administrative, legal, financial management, program, security, and information technology services to the federal courts. It provides support and staff counsel to the Judicial Conference of the United States and its committees, and implements Judicial Conference policies as well as applicable federal statutes and regulations. The AO is the focal point for communication and coordination within the judiciary and with Congress, the executive branch, and the public on behalf of the judiciary. As such, the court staffing levels are a primary workload driver for the AO.

**Adjustments to Base**

The AO's adjustments to base for fiscal year 2013 total $2.2 million to provide for standard pay and other inflationary adjustments.

**Administrative Office of the U.S. Courts**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2011 Actual | FY 2012 Estimate | FY 2013 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 138,852 | 138,997 | 139,842 | 845 |
| Rent, Communications and Utilities | 580 | 683 | 709 | 26 |
| Travel | 1,211 | 1,225 | 1,272 | 47 |
| Other | 7,472 | 8,158 | 7,448 | (710) |
| **Total Obligations** | **148,115** | **149,063** | **149,271** | **208** |
| Financing Adjustment | (20,188) | (20,954) | (17,908) | 3,046 |
| Reimbursable Program | (45,018) | (45,200) | (46,215) | (1,015) |
| **Available Appropriation** | **82,909** | **82,909** | **85,148** | **2,239** |

# Federal Judicial Center

**FY 2013 Request**
**Federal Judicial Center**

| | FTE | ($000) |
|---|---|---|
| **FY 2012 Enacted Appropriation** | 136 | $27,000 |
| **Adjustments to Base** | | 519 |
| **Program Increases:** | | |
| Enhance education and training programs | 2 | 210 |
| **FY 2013 Appropriation** | **138** | **$27,729** |

## Budget Summary

The Federal Judicial Center (FJC) requests $27.7 million in fiscal year 2013, a 2.7 percent increase over the fiscal year 2012 enacted appropriation. The FJC, which is the research and education arm of the Third Branch, provides judges and other judiciary personnel with education and training on legal developments and efficient litigation management and court administration. As such, its workload is derived in large part by the population of the courts.

## Adjustments to Base

The Federal Judicial Center requests $0.5 million in adjustments to base increases, which are comprised of standard pay and other inflationary adjustments.

## Program Increases

***1. Enhance education and training programs: $210,000*** ***FTE 2***

The Center requests $210,000 to support four positions not funded in fiscal year 2012 (2 FTE) to conduct education and training programs. These positions include education specialists and computer scientist/software engineers to develop and conduct these programs.

**Federal Judicial Center**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2011 Actual | FY 2012 Estimate | FY 2013 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 18,103 | 18,003 | 18,559 | 556 |
| Rent, Communications and Utilities | 441 | 515 | 524 | 9 |
| Travel | 5,448 | 6,057 | 6,143 | 86 |
| Other | 3,698 | 2,757 | 2,798 | 41 |
| **Total Obligations** | **27,690** | **27,332** | **28,024** | **692** |
| Financing Adjustment | (417) | (332) | (295) | 37 |
| **Available Appropriation** | **27,273** | **27,000** | **27,729** | **729** |

# Payment to Judiciary Trust Funds

| FY 2013 Request<br>Payment to Judiciary Trust Funds | ($000) |
|---|---|
| **FY 2012 Enacted Appropriation** | $103,768 |
| **Adjustments to Base** | 21,696 |
| **FY 2013 Appropriation** | **$125,464** |

### Budget Summary

The Judicial Conference requests $125.5 million for the Judiciary Trust Fund in fiscal year 2013, a 20.9 percent increase over the fiscal year 2012 enacted appropriation. The Judiciary Trust Fund is a congressionally-scored mandatory account and is divided among three trust funds that finance payments to (1) retired bankruptcy and magistrate judges, (2) retired Court of Federal Claims judges, and (3) spouses and dependent children of deceased judicial officers. The appropriation requirements are calculated annually by an enrolled actuary pursuant to 31 U.S.C. 9503.

### Adjustments to Base

Based on independent actuarial calculations, an increase of $21.7 million is required for this account for fiscal year 2013 detailed as follows:

| | |
|---|---|
| Judicial Officers' Retirement Fund | $8,696,294 |
| Judicial Survivors' Annuities Fund | $9,900,000 |
| United States Court of Federal Claims Judges' Retirement Fund | $3,100,000 |
| **Total** | **$21,696,294** |

| Payment to Judiciary Trust Funds<br>Comparative Summary of Obligations by Category<br>($000) | | | | |
|---|---|---|---|---|
| **Category** | **FY 2011 Actual** | **FY 2012 Plan** | **FY 2013 Request** | **Requested Increase/Decrease** |
| Other | 90,361 | 103,768 | 125.464 | 21,696 |
| **Total Obligations/Appropriation** | **90,361** | **103,768** | **125,464** | **21,696** |

## United States Sentencing Commission

**FY 2013 Request**
**U.S. Sentencing Commission**

| | FTE | ($000) |
|---|---|---|
| **FY 2012 Enacted Appropriation** | 105 | $16,500 |
| **Adjustments to Base** | | 561 |
| **FY 2013 Appropriation** | **105** | **$17,061** |

### Budget Summary

The U.S. Sentencing Commission requests $17.1 million in fiscal year 2013, a 3.4 percent increase over the fiscal year 2012 enacted appropriation.

The fulfillment of the Commission's duties to review and revise the guidelines regularly, collect data from federal sentencing courts, analyze these data to provide meaningful information on federal sentencing practices, and provide extensive training to guideline users can be satisfied only with full funding of its fiscal year 2013 request. Full funding will allow the Commission to continue its efforts to review and revise the guidelines; provide specialized training on federal sentencing issues, including application of the guidelines; modernize its data collection, analysis, and reporting systems; and continue its review of alternatives to incarceration.

The Commission has begun a comprehensive assessment of federal sentencing. As part of the assessment, the Commission held regional hearings across the country and the input received will help to shape the Commission's policy priorities for the year.

### Adjustments to Base

The Commission requests $561,000 in adjustments to base increases, which are comprised of pay and other inflationary adjustments. The Commission requests no program increases.

**U.S. Sentencing Commission**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2011 Actual | FY 2012 Estimate | FY 2013 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 12,823 | 13.346 | 13.721 | 375 |
| Rent, Communications and Utilities | 69 | 60 | 41 | (19) |
| Travel | 785 | 755 | 669 | (86) |
| Other | 3,899 | 3,939 | 2.890 | (1,049) |
| **Total Obligations** | **17,576** | **18,100** | **17,321** | **(779)** |
| Financing Adjustment | (773) | (1.600) | (260) | 1,340 |
| **Available Appropriation** | **16,803** | **16,500** | **17,061** | **561** |

**Appropriation Language Changes**

There are no proposed changes.

**General Provisions Changes**

Old Section 306: The language extending these temporary judgeships for one year was enacted on December 23, 2011 as part of the Consolidated Appropriations Act, 2012 (P.L 112-74). It is proposed for deletion because the Judiciary is hopeful a Judgeship bill will be enacted during fiscal year 2012.

New Section *306*: The proposed language would allow federal judges to receive the same automatic annual cost of living adjustments (COLA), currently authorized by section 461 of title 28 of the United States Code, that members of Congress, Executive Schedule officials, and the Vice President are authorized to receive.

**GENERAL PROVISIONS - THE JUDICIARY**

Sec. 301. Appropriations and authorizations made in this title which are available for salaries and expenses shall be available for services as authorized by 5 U.S.C. 3109.

Sec. 302. Not to exceed 5 percent of any appropriation made available for the current fiscal year for the Judiciary in this Act may be transferred between such appropriations, but no such appropriation, except "Courts of Appeals, District Courts, and Other Judicial Services, Defender Services" and "Courts of Appeals, District Courts, and Other Judicial Services, Fees of Jurors and Commissioners", shall be increased by more than 10 percent by any such transfers: Provided, That any transfer pursuant to this section shall be treated as a reprogramming of funds under sections 604 and 608 of this Act and shall not be available for obligation or expenditure except in compliance with the procedures set forth in section 608.

Sec. 303. Notwithstanding any other provision of law, the salaries and expenses appropriation for "Courts of Appeals, District Courts, and Other Judicial Services" shall be available for official reception and representation expenses of the Judicial Conference of the United States: Provided, That such available funds shall not exceed $11,000 and shall be administered by the Director of the Administrative Office of the United States Courts in the capacity as Secretary of the Judicial Conference.

Sec. 304. Section 3314(a) of title 40, United States Code, shall be applied by substituting "Federal" for "executive" each place it appears.

Sec. 305. In accordance with 28 U.S.C. 561-569, and notwithstanding any other provision of law, the United States Marshals Service shall provide, for such courthouses as its Director may designate in consultation with the Director of the Administrative Office of the United States Courts, for purposes of a pilot program, the security services that 40 U.S.C. 1315 authorizes the Department of Homeland Security to provide, except for the services specified in 40 U.S.C. 1315(b)(2)(E). For building-specific security services at these courthouses, the Director of the Administrative Office of the United States Courts shall reimburse the United States Marshals Service rather than the Department of Homeland Security.

[Sec. 306. Section 203(c) of the Judicial Improvements Act of 1990 (Public Law 101-650; 28 U.S.C. 133 note), is amended-- (1) in the third sentence (relating to the District of Kansas), by striking '20 years' and inserting '21 years'; and (2) in the seventh sentence (related to the District of Hawaii), by striking '17 years' and inserting '18 years'.]

*Sec. 306. Section 140 of Public Law 97–92, as amended by Public Law 107–77 (28 U.S.C. 461 note), is repealed.*

This title may be cited as the "Judiciary Appropriations Act, [2012] *2013*".

# The Judiciary

# Fiscal Year 2013

# Congressional Budget Justification



# TABLE OF CONTENTS

Page Number

**Overview of The Judiciary** .......... Overview - 1

**Summary of Budgetary Requirements for Fiscal Year 2013**

- Summary of Fiscal Year 2013 Request .......... Summary - 1
- Summary of Appropriation Request for Fiscal Year 2013 .......... Summary - 4
- Summary of Mandatory Costs .......... Summary - 5
- Summary of Personnel .......... Summary - 6
- Fiscal Year 2013 Summary of Requested Changes .......... Summary - 7
- Comparative Summary of Obligations by Object Classification .......... Summary - 8
  - Fiscal Year 2011 Summary .......... Summary - 9
  - Fiscal Year 2012 Summary .......... Summary - 10
  - Fiscal Year 2013 Summary .......... Summary - 11
- Outlay Table .......... Summary - 12

**Supreme Court**

- Summary Statement .......... 1.1
- Salaries and Expenses .......... 1.2
- Care of the Building and Grounds .......... 1.18

**United States Court of Appeals for the Federal Circuit** .......... 2.1

**United States Court of International Trade** .......... 3.1

**Courts of Appeals, District Courts, and Other Judicial Services**

Overview . . . . . . . . . . 4.1
Salaries and Expenses . . . . . . . . . . 5.1
Appendix 1 - Court Support Staffing . . . . . . . . . . Appendix - 1
Defender Services . . . . . . . . . . 6.1
Fees of Jurors and Commissioners . . . . . . . . . . 7.1
Court Security . . . . . . . . . . 8.1

**Administrative Office of the U.S. Courts** . . . . . . . . . . 9.1

**Federal Judicial Center** . . . . . . . . . . 10.1

**Payments to Judiciary Trust Funds** . . . . . . . . . . 11.1

**United States Sentencing Commission** . . . . . . . . . . 12.1

**Judiciary Information Technology Fund** . . . . . . . . . . 13.1
Appendix 2 - Electronic Public Access Program . . . . . . . . . . Appendix - 2

**General Provisions** . . . . . . . . . . 14.1

# Overview of The Judiciary

The Federal Judiciary
United States Supreme Court
U.S. Courts of Appeals
12 Regional Circuit Courts of Appeals
1 U.S. Court of Appeals for the Federal Circuit
Trial Courts
U.S. District Courts
U.S. Bankruptcy Courts
U.S. Court of International Trade
U.S. Court of Federal Claims
Other Judiciary Entities/Programs
Probation and Pretrial Services
Defender Services
Court Security
Fees of Jurors and Commissioners
Administrative Office of the U.S. Courts
Federal Judicial Center
Judiciary Trust Funds
United States Sentencing Commission

The organization of the judiciary, the district and circuit boundaries, the places of holding court, and the number of federal judges are established by laws passed by Congress and signed by the President. The number of federal judges in each district and in the courts of appeals is authorized by Congress on the basis of workload.

In addition to the adjudication of cases, other related functions, such as the provision of criminal defense services and the supervision of offenders, are prescribed by statute. The following sections provide a brief overview of the work of the courts and other related activities of the Judicial Branch.

**United States Supreme Court**

The United States Supreme Court consists of nine justices, one of whom is appointed as Chief Justice of the United States. The Supreme Court is the final arbiter in the federal court system.

**United States Courts of Appeals**

There are 13 courts of appeals and 179 authorized appellate court judgeships nationwide. Twelve of the courts of appeals have jurisdiction over cases within a regional area or "circuit." The twelve regional courts of appeals review cases from the United States district courts and the United States Tax Court, and orders and decisions from a number of federal administrative agencies.

**The United States Court of Appeals for the Federal Circuit** has exclusive national jurisdiction over a large number of diverse subject areas, including international trade, government contracts, patents, trademarks, certain money claims against the

United States government, federal personnel, and veterans' benefits. Appeals to the court come from all 94 federal district courts, as well as the United States Court of Federal Claims, the United States Court of International Trade, and the United States Court of Appeals for Veterans Claims.

### United States District Courts

There are 94 district courts in the 50 states, the District of Columbia, the Commonwealth of Puerto Rico, and the territories of Guam, the U.S. Virgin Islands and the Northern Mariana Islands. The U.S. District Courts are the courts of general jurisdiction in the federal court system, and most federal cases are initially tried and decided in these courts. There are 678 authorized Article III district court judgeships nationwide.

The Federal Magistrates Act of 1968 created the office of magistrate judge to assist the district court judges. Magistrate judges are non-Article III judges appointed by the district judges, and they serve for a term of years rather than a lifetime appointment. Full-time magistrate judges serve a term of eight years and may be reappointed.

### United States Bankruptcy Courts

The bankruptcy courts are separate units of the district courts. Federal courts have exclusive jurisdiction over bankruptcy cases. This means that a bankruptcy case cannot be filed in a state court. United States bankruptcy judges are non-Article III judges appointed by the courts of appeals for a term of years rather than a lifetime appointment. They serve for a term of 14 years and may be reappointed.

### United States Court of International Trade

The Court of International Trade, with nine Article III judges, has exclusive nationwide jurisdiction of civil actions against the United States, its agencies and officers, and certain civil actions brought by the United States, arising out of import transactions and the administration and enforcement of the federal customs and international trade laws.

### United States Court of Federal Claims

The Court of Federal Claims has nationwide jurisdiction over certain types of claims against the federal government. Its 16 judges are appointed for a term of 15 years by the President with the advice and consent of the Senate. Judges appointed to the Court of Federal Claims are authorized under Article I of the constitution and do not have the tenure and salary protections of Article III judges.

### Probation and Pretrial Services

Federal probation and pretrial services officers protect the public through the investigation and supervision of defendants and offenders within the federal criminal justice system. A pretrial services officer supervises defendants awaiting trial who are released into our communities and provides a source of information upon which the court can determine conditions of release or detention while criminal cases are pending adjudication. In support of sentencing determinations, which require both uniformity of practice and attention to individual circumstances, probation officers provide the court with reliable information concerning the offender, the victim, and the offense committed, as well as an impartial application of the sentencing

guidelines. Probation officers supervise offenders sentenced to probation as well as offenders coming out of federal prison who are required to serve a term of supervised release.

**Defender Services**

The federal judiciary oversees and administers the federal defender and appointed counsel program, which provides legal representation and other services to persons financially unable to obtain counsel in criminal and related matters in federal court. The Sixth Amendment to the Constitution guarantees that "[i]n all criminal prosecutions the accused shall enjoy the right...to have the assistance of counsel for his defense." The Criminal Justice Act provides that courts shall appoint counsel from federal public and community defender organizations or from a panel of private attorneys ("panel attorneys") established by the court.

**Court Security**

The judiciary's Court Security appropriation funds protective guard services and security systems and equipment for United States courthouses and other facilities housing federal court operations. These services are contracted for and managed by the United States Marshals Service, with additional guard services provided by the Federal Protective Service.

**Fees of Jurors and Commissioners**

The judiciary receives funding to provide for the statutory fees and allowances of federal grand and petit jurors and for the compensation of land commissioners.

**Administrative Office of the U.S. Courts**

The Administrative Office of the U.S. Courts is the central support entity for the judicial branch. It has management oversight of the court security program, the probation and pretrial services program, and the defender services program. It supports the Judicial Conference of the United States in determining judiciary policies; develops new methods, systems, and programs for conducting the business of the federal courts efficiently and economically; develops and supports the application of technology; collects and analyzes statistics on the business of the federal courts for accurate planning and decisions about resource needs; provides financial management services and personnel and payroll support; and conducts audits and reviews to ensure the continued quality and integrity of federal court operations.

**Federal Judicial Center**

The Federal Judicial Center is the judiciary's research and education agency. The.Center undertakes research and evaluation of judicial operations and procedures for both the committees of the Judicial Conference and the courts themselves. It provides judges, court personnel, and others orientation, continuing education and training through seminars; curriculum units for in-court use; monographs and manuals; and audio, video, and interactive media programs.

**Payment to Judiciary Trust Funds**

This appropriation finances annuity payments to retired bankruptcy judges and magistrate judges, U.S. Court of Federal Claims judges, and spouses and dependent children of deceased judicial officers.

**U.S. Sentencing Commission**

The U.S. Sentencing Commission promulgates sentencing policies, practices, and guidelines for the federal criminal justice system. The Chair, three Vice Chairs, and three other voting commissioners are appointed by the President with the advice and consent of the Senate.

# Budget Summary - Details of Request

The judiciary's appropriation request for fiscal year 2013 totals $7,188,716,000 an increase of $218,695,000, or 3.1 percent over the fiscal year 2012 enacted appropriations.

***Adjustments to Base***

A total of $212.7 million (97.3 percent) of the $218.7 million increase requested will provide for pay adjustments, inflation and other adjustments to base necessary to maintain current services.

Base adjustments include:

1. An increase of $97.3 million (45.8 percent of the base adjustments) will provide for inflationary pay and benefit rate increases, including expected January 2013 pay adjustments, changes in health benefit premiums, changes in benefit costs for both judges and supporting personnel, cost-of-living rate increases for panel attorneys, and a wage rate adjustment for court security officers.

2. An increase of $50.7 million (23.8 percent of base adjustments) is requested for the annualization of new space delivered in fiscal year 2012, the cost of new space expected to be delivered in fiscal year 2013, and space related inflation.

3. An increase of $45.4 million (21.3 percent of base adjustments) is necessary to replace non-appropriated sources of funds used to support base requirements in fiscal year 2012 with direct appropriations. The judiciary will keep the Appropriations Subcommittees informed of any change in this estimate.

4. An increase of $27.7 million (13.0 percent of base adjustments) is associated with an additional 26 senior judges and 85 associated staff, and an additional 13 active Article III judges and 64 associated staff.

5. An increase of $21.7 million (10.2 percent of base adjustments) is requested for payments to the Judiciary Retirement Trust Funds. This is a mandatory appropriation.

6. An increase of $11.2 million (5.3 percent of base adjustments) will provide for increases in contract rates and other standard inflationary increases.

7. An increase of $9.2 million (4.3 percent of base adjustments) will provide for the annualization of new court personnel for the Supreme Court, Defender Services positions, USMS staff, and for court security officers expected to be hired in fiscal year 2012.

8. An increase of $5.2 million (2.5 percent of base adjustments) will provide for estimated increases in Federal Protective Service (FPS) security charges, based on rates established by FPS.

9. A net increase of $3.5 million (1.6 percent of base adjustments) will provide for the increased caseload and case complexity associated with the 205,000 non-capital Criminal Justice Act representations projected in fiscal year 2013, partially offset by a decrease in capital representation costs.

10. An increase of $1.2 million (0.6 percent of base adjustments) is requested for the restoration of base requirements for the U.S. Court of Appeals for the Federal Circuit.

11. A net increase of $0.2 million (0.1 percent of base adjustments) is associated with 2 additional court security officers for space being delivered in fiscal year 2013.

12. A net decrease of $0.1 million (-0.1 percent of base adjustments) is associated with a projected net change in available jurors.

13. A decrease of $3.0 million (-1.4 percent of base adjustments) is associated with non-recurring costs for new judges in fiscal year 2012.

14. A net decrease of $3.8 million (-1.8 percent of base adjustments) is associated with reductions in the court security program administration and security systems and equipment requirements; and non-recurring requirements in the Administrative Office account.

15. A decrease of $53.7 million (-25.2 percent of base adjustments) is associated with base reductions to the defender services program (cost-containment), the court security program (cost-containment) and information technology projects in the Salaries and Expenses account.

***Program Increases***

The remaining $5.9 million (2.7 percent) of the requested increase is for program enhancements.

Program increases include:

16. An increase of $3.6 million (60.5 percent of program enhancements) will provide for the Supreme Court police radio infrastructure upgrade and for the facade restoration at the Supreme Court.

17. An increase of $1.8 million (30.3 percent of program enhancements) will provide for 3 additional magistrate judges and associated staff (9 FTE) in districts with growing caseload.

18. An increase of $0.4 million (6.5 percent of program enhancements) will provide for four new case budgeting positions (2 FTE) for the defender services program.

19. An increase of $0.2 million (3.5 percent of program enhancements) will provide for education and training program enhancement (2 FTE) at the Federal Judicial Center.

20. A net decrease of $0.1 million (-0.8 percent of program enhancements) for the replacement of two existing contractors with two new lower cost positions (1 FTE) at the USMS.

**The Judiciary**
**Summary of Appropriation Request for Fiscal Year 2013 ($000)**

| | FY 2011 Enacted | | | FY 2012 Enacted | | | FY 2013 Request | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Change | | | Total | | |
| | Mand. 1/ | Discret | Total Available | Mand. 2/ | Discret. | Total Available | Mand | Discret | Total | Mand | Discret | Total Request |
| **Supreme Court** | | | | | | | | | | | | |
| Salaries and Expenses | 2,197 | 71,724 | 73,921 | 2,197 | 72,622 | 74,819 | 10 | 2,336 | 2,346 | 2,207 | 74,958 | 77,165 |
| Building and Grounds | - | 8,159 | 8,159 | - | 8,159 | 8,159 | - | 3,804 | 3,804 | - | 11,963 | 11,963 |
| **Total, Supreme Court** | 2,197 | 79,883 | 82,080 | 2,197 | 80,781 | 82,978 | 10 | 6,140 | 6,150 | 2,207 | 86,921 | 89,128 |
| **Court of Appeals for the Federal Circuit** | 2,502 | 30,009 | 32,511 | 2,513 | 29,998 | 32,511 | 11 | 1,806 | 1,817 | 2,524 | 31,804 | 34,328 |
| **Court of International Trade** | 1,851 | 19,596 | 21,447 | 1,718 | 19,729 | 21,447 | (3) | 1,436 | 1,433 | 1,715 | 21,165 | 22,880 |
| **Courts of Appeals, District Courts and Other Judicial Services** | | | | | | | | | | | | |
| Salaries and Expenses - Direct | 332,565 | 4,671,656 | 5,004,221 | 327,707 | 4,687,293 | 5,015,000 | 8,754 | 125,045 | 133,799 | 338,037 | 4,810,762 | 5,148,799 |
| Vaccine Injury Fund | - | 4,775 | 4,775 | - | 5,000 | 5,000 | - | 354 | 354 | - | 5,354 | 5,354 |
| **Total, Salaries and Expenses** | 332,565 | 4,676,431 | 5,008,996 | 327,707 | 4,692,293 | 5,020,000 | 8,754 | 125,399 | 134,153 | 338,037 | 4,816,116 | 5,154,153 |
| **Defender Services** | - | 1,025,693 | 1,025,693 | - | 1,031,000 | 1,031,000 | - | 32,517 | 32,517 | - | 1,063,517 | 1,063,517 |
| **Fees of Jurors and Commissioners** | - | 52,305 | 52,305 | - | 51,908 | 51,908 | - | 2,727 | 2,727 | - | 54,635 | 54,635 |
| **Court Security** | - | 466,672 | 466,672 | - | 500,000 | 500,000 | - | 14,673 | 14,673 | - | 514,673 | 514,673 |
| **Subtotal (CADCOJS)** | 332,565 | 6,221,101 | 6,553,666 | 327,707 | 6,275,201 | 6,602,908 | 8,754 | 175,316 | 184,070 | 338,037 | 6,448,941 | 6,786,978 |
| **Administrative Office of the U.S. Courts** | - | 82,909 | 82,909 | - | 82,909 | 82,909 | - | 2,239 | 2,239 | - | 85,148 | 85,148 |
| **Federal Judicial Center** | - | 27,273 | 27,273 | - | 27,000 | 27,000 | - | 729 | 729 | - | 27,729 | 27,729 |
| **Payment to Judicial Retirement Funds** | 90,361 | - | 90,361 | 103,768 | - | 103,768 | 21,697 | - | 21,697 | 125,464 | - | 125,464 |
| **Sentencing Commission** | - | 16,803 | 16,803 | - | 16,500 | 16,500 | - | 561 | 561 | - | 17,061 | 17,061 |
| **Direct** | 429,476 | 6,472,799 | 6,902,275 | 437,903 | 6,527,118 | 6,965,021 | 30,470 | 187,873 | 218,343 | 469,947 | 6,713,415 | 7,183,362 |
| **Vaccine Injury Fund** | - | 4,775 | 4,775 | - | 5,000 | 5,000 | - | 354 | 354 | - | 5,354 | 5,354 |
| **Total** | 429,476 | 6,477,574 | 6,907,050 | 437,903 | 6,532,118 | 6,970,021 | 30,470 | 188,227 | 218,697 | 469,947 | 6,718,769 | 7,188,716 |

1/ For FY 2011, the enacted mandatory level was $429,476, actual mandatory spending was $420,993.

2/ For FY 2012, the requested mandatory level was $437,903, projected mandatory spending is $439,471

**The Judiciary**
**Summary of Mandatory Costs**

| | FY 2011 Actual [1/] | | FY 2012 Estimate [2/] | | FY 2013 Change | | FY 2013 Request | |
|---|---|---|---|---|---|---|---|---|
| | Authorized Positions | Amount ($000) | Authorized Positions | Amount ($000) | Authorized Positions | Amount ($000) | Authorized Positions | Amount ($000) |
| Supreme Court | 9 | 2,166 | 9 | 2,197 | - | 10 | 9 | 2,207 |
| Court of Appeals for the Federal Circuit | 12 | 2,502 | 12 | 2,513 | - | 11 | 12 | 2,524 |
| Court of International Trade | 9 | 1,851 | 9 | 1,718 | - | (3) | 9 | 1,715 |
| Courts of Appeals, District Courts and Other Judicial Services | 1,196 | 324,113 | 1,196 | 329,284 | - | 8,754 | 1,196 | 338,037 |
| Payment to Judiciary Trust Funds | - | 90,361 | - | 103,768 | - | 21,697 | - | 125,464 |
| **Total** | **1,226** | **420,993** | **1,226** | **439,480** | - | **30,470** | **1,226** | **469,947** |

1/ Fiscal Year 2011 amounts reflect the actual spending; the enacted mandatory level is $429,476.

2/ Fiscal Year 2012 amounts reflects the planned spending, the requested mandatory level is $437,903.

## Summary of Personnel

| Full Time Equivalents by Account | FY 2011 Actual FTEs | FY 2012 Estimate FTEs | FY 2013 Request Increase FTEs | FY 2013 Request Total FTEs |
|---|---|---|---|---|
| *Direct Positions* | | | | |
| **Supreme Court** | | | | |
| Salaries and Expenses | 485 | 494 | 3 | 497 |
| Building and Grounds | 42 | 49 | 1 | 50 |
| **Court of Appeals for the Fed. Circuit** | 142 | 154 | - | 154 |
| **Court of International Trade** | 74 | 80 | - | 80 |
| **Courts of Appeals, District Courts and Other Judicial Services** | | | | |
| Salaries and Expenses | 30,478 | 29,918 | 200 | 30,118 |
| Defender Services | 2,738 | 2,803 | 40 | 2,843 |
| Fees of Jurors and Commissioners | - | - | - | - |
| Court Security | 57 | 74 | 4 | 78 |
| *Subtotal* | *33,273* | *32,795* | *244* | *33,039* |
| **Administrative Office of the U.S. Courts** | 631 | 619 | - | 619 |
| **Federal Judicial Center** | 138 | 136 | 2 | 138 |
| **Payment to Judicial Retirement Funds** | - | - | - | - |
| **Sentencing Commission** | 104 | 105 | - | 105 |
| **Grand Total** | **34,889** | **34,432** | **250** | **34,682** |
| *Reimbursable Positions* | | | | |
| **Supreme Court** | | | | |
| Salaries and Expenses | - | - | - | - |
| Buildings and Grounds | - | - | - | - |
| **Court of Appeals for the Fed. Circuit** | - | - | - | - |
| **Court of International Trade** | - | - | - | - |
| **Courts of Appeals, District Courts and** | - | - | - | - |
| **Other Judicial Services** | - | - | - | - |
| Salaries and Expenses | 26 | 26 | - | 26 |
| Defender Services | - | - | - | - |
| Fees of Jurors and Commissioners | - | - | - | - |
| Court Security | - | - | - | - |
| Subtotal | 26 | 26 | - | 26 |
| **Administrative Office of the U.S. Courts** | 255 | 250 | - | 250 |
| **Federal Judicial Center** | 1 | 1 | - | 1 |
| **Payment to Judicial Retirement Funds** | - | - | - | - |
| **Sentencing Commission** | - | - | - | - |
| **Violent Crime Reduction Trust Fund** | - | - | - | - |
| **Grand Total** | **282** | **277** | - | **277** |

## FY 2013 Summary of Requested Changes

| | Supreme Court FTE | Supreme Court ($000) | Federal Circuit FTE | Federal Circuit ($000) | International Trade FTE | International Trade ($000) | Salaries and Expenses FTE | Salaries and Expenses ($000) | Defender Services FTE | Defender Services ($000) | Fees of Jurors and Commissioners ($000) | Court Security FTE | Court Security ($000) | Subtotal FTEs | Subtotal ($000) | Administrative Office FTE | Administrative Office ($000) | Fed. Judicial Center FTE | Fed. Judicial Center ($000) | Judiciary Trust Funds ($000) | Sentencing Commission FTE | Sentencing Commission ($000) | Total Judiciary[1] FTE | Total Judiciary[1] ($000) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES | | | | | | | | | | | | | | | | | |
| FY 2012 Enacted Appropriation | 343 | 82,970 | 154 | 32,511 | 80 | 21,447 | 29,910 | 5,015,000 | 2,803 | 1,031,000 | 51,908 | 74 | 500,000 | 32,795 | 6,597,908 | 619 | 82,909 | 136 | 27,000 | 103,768 | 105 | 16,500 | 34,412 | 6,965,021 |
| FY 2012 Vaccine Injury Trust Fund | - | - | - | - | - | - | - | 5,000 | - | - | | - | - | - | 5,000 | - | - | - | - | - | - | - | - | 5,000 |
| FY 2012 Available Appropriation | 343 | 82,970 | 154 | 32,511 | 80 | 21,447 | 29,910 | 5,020,000 | 2,803 | 1,031,000 | 54,908 | 74 | 500,000 | 32,795 | 6,602,908 | 619 | 82,909 | 136 | 27,000 | 103,768 | 105 | 16,500 | 34,432 | 6,970,021 |
| **FY 2013 Adjustments to Base** | | | | | | | | | | | | | | | | | | | | | | | | |
| Judges: | | | | | | | | | | | | | | | | | | | | | | | | |
| - Pay and benefit cost adjustments | - | 18 | - | 19 | - | 11 | - | 3,728 | - | - | - | - | - | - | 3,728 | - | - | - | - | - | - | - | - | 3,776 |
| - Additional senior judges | - | - | - | - | - | - | 111 | 15,694 | - | - | - | - | - | 111 | 15,694 | - | - | - | - | - | - | - | 111 | 15,694 |
| - Increase in average number of filled Article III judgeships | - | - | - | - | - | - | 77 | 11,963 | - | - | - | - | - | 77 | 11,963 | - | - | - | - | - | - | - | 77 | 11,963 |
| - Non-recurring costs of new FY 2012 judges | - | - | - | - | - | - | - | (2,963) | - | - | - | - | - | - | (2,963) | - | - | - | - | - | - | - | - | (2,963) |
| - Payments to judiciary retirement trust funds | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 21,696 | - | - | - | 21,696 |
| Court Personnel: | | | | | | | | | | | | | | | | | | | | | | | | |
| - Pay and benefit cost adjustments | - | 1,818 | - | 351 | - | 174 | - | 60,980 | - | 9,288 | - | - | 1,636 | - | 71,904 | - | 1,129 | - | 346 | - | - | 375 | - | 75,997 |
| Other Changes: | | | | | | | | | | | | | | | | | | | | | | | | |
| - Funding necessary to maintain current services | - | - | - | - | - | - | - | 26,241 | - | 12,980 | 2,293 | - | 1,677 | - | 43,191 | - | 2,237 | - | - | - | - | - | - | 45,428 |
| - Inflation (non-space-related) | - | 454 | - | 94 | - | 5 | - | 6,359 | - | 2,844 | 324 | - | 86 | - | 9,813 | - | 98 | - | 173 | - | - | 186 | - | 10,823 |
| - Vaccine Injury Trust Fund adjustment | - | - | - | - | - | - | - | 354 | - | - | - | - | - | - | 354 | - | - | - | - | - | - | - | - | 354 |
| - Space related costs (includes inflation for space rental rates) | - | - | - | 154 | - | 1,236 | - | 48,180 | - | 999 | - | - | 134 | - | 49,313 | - | - | - | - | - | - | - | - | 50,690 |
| - Annualization of new FY 2012 positions | 4 | 300 | - | - | - | - | - | - | 30 | 8,105 | - | 3 | 227 | 41 | 8,332 | - | - | - | - | - | - | - | 45 | 8,992 |
| - Defender Services caseload changes | - | - | - | - | - | - | - | - | - | 3,494 | - | - | - | - | 3,494 | - | - | - | - | - | - | - | - | 3,494 |
| - Change in available jurors | - | - | - | - | - | - | - | - | - | - | (90) | - | - | - | (90) | - | - | - | - | - | - | - | - | (90) |
| - FPS security service changes | - | - | - | - | - | 7 | - | - | - | - | - | - | 5,235 | - | 5,235 | - | - | - | - | - | - | - | - | 5,242 |
| - FY 2013 court security officer wage adjustments | - | - | - | - | - | - | - | - | - | - | - | - | 17,366 | - | 17,366 | - | - | - | - | - | - | - | - | 17,366 |
| - Annualization of new FY 2012 court security officers (17) | - | - | - | - | - | - | - | - | - | - | - | - | 561 | - | 561 | - | - | - | - | - | - | - | - | 561 |
| - Additional court security officers in FY 2013 (2) | - | - | - | - | - | - | - | - | - | - | - | - | 227 | - | 227 | - | - | - | - | - | - | - | - | 227 |
| - Restoration of base requirements | - | - | - | 1,202 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 1,202 |
| - Adjustments to base for security systems and equipment | - | - | - | - | - | - | - | - | - | - | - | - | (2,347) | - | (2,347) | - | - | - | - | - | - | - | - | (2,347) |
| - Adjustments to base for program administration | - | - | - | - | - | - | - | - | - | - | - | - | (277) | - | (277) | - | - | - | - | - | - | - | - | (277) |
| - Adjustments to base (non-recurring requirements) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (1,225) | - | - | - | - | - | - | (1,225) |
| - Base Reductions for information technology projects | - | - | - | - | - | - | - | (38,166) | - | - | - | - | - | - | (38,166) | - | - | - | - | - | - | - | - | (38,166) |
| - Base Reductions (cost-containment) | - | - | - | - | - | - | - | - | - | (5,500) | - | - | (9,991) | - | (15,491) | - | - | - | - | - | - | - | - | (15,491) |
| Subtotal, FY 2013 Adjustments to Base | 4 | 2,558 | - | 1,817 | - | 1,433 | 188 | 132,380 | 30 | 32,130 | 2,727 | 3 | 14,724 | 229 | 181,931 | - | 2,239 | - | 519 | 21,696 | - | 561 | 233 | 212,746 |
| **FY 2013 Adjusted Base** | 347 | 85,528 | 154 | 34,328 | 80 | 22,880 | 30,106 | 5,152,380 | 2,841 | 1,063,130 | 54,635 | 77 | 514,724 | 33,024 | 4,784,839 | 619 | 85,148 | 136 | 27,519 | 125,464 | 105 | 17,061 | 34,645 | 7,182,767 |
| **FY 2013 Program Increases** | | | | | | | | | | | | | | | | | | | | | | | | |
| Judges: | | | | | | | | | | | | | | | | | | | | | | | | |
| - Magistrate judges and staff | - | - | - | - | - | - | 12 | 1,803 | - | - | - | - | - | 12 | 1,803 | - | - | - | - | - | - | - | 12 | 1,803 |
| Court Personnel and Programs: | | | | | | | | | | | | | | | | | | | | | | | | |
| - Four new case-budgeting positions | - | - | - | - | - | - | - | - | 2 | 387 | - | - | - | 2 | 387 | - | - | - | - | - | - | - | 2 | 387 |
| - Two judiciary-funded USMS positions to replace existing contractors (funded for 6 months) | - | - | - | - | - | - | - | - | - | - | - | 1 | 190 | 1 | 190 | - | - | - | - | - | - | - | 1 | 190 |
| - Savings from two contractor conversions at USMS | - | - | - | - | - | - | - | - | - | - | - | - | (241) | - | (241) | - | - | - | - | - | - | - | - | (241) |
| - Supreme Court police radio infrastructure upgrade | - | 1,100 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 1,100 |
| - Facade Restoration | - | 2,500 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 2,500 |
| - Education and training program enhancements | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 2 | 210 | - | - | - | 2 | 210 |
| Subtotal, FY 2013 Program Increases | - | 3,600 | - | - | - | - | 12 | 1,803 | 2 | 387 | - | 1 | (51) | 15 | 2,139 | - | - | 2 | 210 | - | - | - | 17 | 5,949 |
| Total Increases Requested, FY 2013 | 4 | 6,158 | - | 1,817 | - | 1,433 | 200 | 134,183 | 40 | 32,517 | 2,727 | 4 | 14,673 | 244 | 184,070 | - | 2,239 | 2 | 729 | 21,696 | | 561 | 250 | 218,695 |
| **FY 2013 Appropriation Request** | 347 | 89,128 | 154 | 34,328 | 80 | 22,880 | 30,118 | 5,154,183 | 2,843 | 1,063,517 | 54,635 | 78 | 514,673 | 33,039 | 4,786,978 | 619 | 85,148 | 138 | 27,729 | 125,464 | 105 | 17,061 | 34,682 | 7,188,716 |

[1] The Judiciary FTE totals do not reflect reimbursable positions (282 in FY 2011, 277 in FY 2012, and 277 in FY 2013).



THE JUDICIARY

COMPARATIVE SUMMARY OF OBLIGATIONS BY OBJECT CLASSIFICATION
(IN THOUSANDS OF DOLLARS)

| Object Classification | FY 2011 Actual | FY 2012 Estimate | FY 2013 Request |
|---|---|---|---|
| Personnel Services and benefits | | | |
| 11 Personnel compensation | 3,195,324 | 3,233,796 | 3,247,154 |
| 12 Personnel benefits | 959,806 | 975,975 | 984,296 |
| 13 Benefits for former personnel | 9,053 | 11,227 | 6,514 |
| Total personnel services and benefits | 4,164,183 | 4,220,998 | 4,237,963 |
| | | | |
| Contractual services and supplies | | | |
| 21 Travel | 100,396 | 105,061 | 103,578 |
| 22 Transportation of things | 6,205 | 6,656 | 6,411 |
| 23 Rental payments to GSA | 1,032,120 | 1,055,001 | 1,113,840 |
| 23 Rental payments to others | 32,346 | 33,800 | 33,472 |
| 23 Communications utilities & misc. charges | 142,307 | 147,649 | 141,646 |
| 24 Printing and reproduction | 15,788 | 16,584 | 14,508 |
| 25 Other services | 1,454,278 | 1,494,595 | 1,526,849 |
| 26 Supplies and materials | 29,339 | 30,404 | 28,261 |
| Total contractual services and supplies | 2,812,779 | 2,889,750 | 2,968,565 |
| | | | |
| Acquisition of capital assets | | | |
| 31 Equipment | 210,499 | 236,786 | 217,333 |
| 32 Lands and Structures | 10,910 | 11,452 | 5,122 |
| Total acquisition of capital assets | 221,409 | 248,238 | 222,455 |
| | | | |
| Grants and fixed charges | | | |
| 41 Grants, subsidies and contributions | 127,928 | 131,617 | 133,910 |
| 42 Insurance claims and indemnities | 602 | 500 | - |
| 43 Interest and dividends | - | - | - |
| Total grants and fixed charges | 128,530 | 132,117 | 133,910 |
| | | | |
| Total obligations | 7,326,902 | 7,491,103 | 7,562,893 |
| Unobligated balance, start-of-year | (393,305) | (262,721) | (101,408) |
| Unobligated balance, end-of-year | 262,721 | 101,408 | 5,730 |
| Unobligated balance, expiring | 3,502 | - | - |
| Current Year Offsetting Collections | (264,422) | (358,960) | (278,498) |
| Information Technology Fund | (2,000) | (809) | - |
| Prior Year Recoveries | (26,351) | - | - |
| Transfer | - | - | - |
| Appropriation, Enacted | 6,907,850 | 6,970,021 | 7,188,716 |

Detailed tables by fiscal year and appropriation follow

THE JUDICIARY
COMPARATIVE SUMMARY OF OBLIGATIONS BY OBJECT CLASSIFICATION ($000)

Fiscal Year 2011

| Object Classification | Supreme Court | Ct of Appeals Federal Cir | Ct. of Int'l Trade | Salaries and Expenses | Defender Services | Fees of Jurors | Court Security | Administrative Office: Direct Program[1] | Administrative Office: Reimbursable Program[1] | Federal Judicial Ctr | Judiciary Trust Funds | Sentencing Commission | Vaccine Injury Trust Fund, Supplemental | Total Judiciary |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Personnel Services and benefits** | | | | | | | | | | | | | | |
| 11 Personnel compensation | 44,019 | 14,661 | 7,423 | 2,705,991 | 288,190 | 27,191 | 6,309 | 109,925 | (32,451) | 14,168 | - | 9,898 | - | 3,195,324 |
| 12 Personnel benefits | 13,762 | 3,171 | 1,788 | 826,591 | 86,899 | 1 | 1,810 | 28,867 | (9,943) | 3,935 | - | 2,925 | - | 959,806 |
| 13 Benefits for former personnel | 8 | 15 | - | 8,677 | 293 | - | - | 60 | - | - | - | - | - | 9,053 |
| Total personnel services and benefits | 57,789 | 17,847 | 9,211 | 3,541,259 | 375,382 | 27,192 | 8,119 | 138,852 | (42,394) | 18,103 | - | 12,823 | - | 4,164,183 |
| **Contractual services and supplies** | | | | | | | | | | | | | | |
| 21 Travel | 380 | 103 | 108 | 58,244 | 10,363 | 23,651 | 291 | 1,211 | (188) | 5,448 | - | 785 | - | 100,396 |
| 22 Transportation of things | 67 | 111 | 7 | 5,380 | 260 | - | 53 | 50 | - | 59 | - | 18 | - | 6,205 |
| 23 Rental payments to GSA | - | 5,962 | 8,895 | 971,610 | 39,625 | - | 6,028 | - | - | - | - | - | - | 1,032,120 |
| 23 Rental payments to others | - | - | - | 31,966 | 380 | - | - | - | - | - | - | - | - | 32,346 |
| 23 Communications utilities & misc. charges | 3,067 | 315 | 288 | 128,447 | 6,822 | 1,553 | 965 | 580 | (240) | 441 | - | 69 | - | 142,307 |
| 24 Printing and reproduction | 475 | 94 | 9 | 14,705 | 153 | - | - | 96 | - | 77 | - | 179 | - | 15,788 |
| 25 Other services | 16,354 | 5,304 | 1,545 | 432,507 | 457,222 | 682 | 442,965 | 5,061 | (1,760) | 1,478 | 90,361 | 2,559 | - | 1,454,278 |
| 26 Supplies and materials | 2,585 | 164 | 68 | 21,527 | 1,860 | 1,133 | 777 | 434 | (151) | 882 | - | 60 | - | 29,339 |
| Total contractual services and supplies | 22,928 | 12,053 | 10,920 | 1,664,586 | 516,686 | 27,019 | 451,079 | 7,432 | (2,339) | 8,385 | 90,361 | 3,669 | - | 2,812,779 |
| **Acquisition of capital assets** | | | | | | | | | | | | | | |
| 31 Equipment | 3,559 | 3,005 | 533 | 170,238 | 7,072 | - | 22,262 | 1,831 | (285) | 1,202 | - | 1,083 | - | 210,499 |
| 32 Lands and Structures | 10,910 | - | - | - | - | - | - | - | - | - | - | - | - | 10,910 |
| Total acquisition of capital assets | 14,469 | 3,005 | 533 | 170,238 | 7,072 | - | 22,262 | 1,831 | (285) | 1,202 | - | 1,083 | - | 221,409 |
| **Grants and fixed charges** | | | | | | | | | | | | | | |
| 41 Grants, subsidies and contributions | - | - | - | - | 127,928 | - | - | - | - | - | - | - | - | 127,928 |
| 42 Insurance claims and indemnities | - | - | - | - | - | - | 602 | - | - | - | - | - | - | 602 |
| 43 Interest and dividends | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total grants and fixed charges | - | - | - | - | 127,928 | - | 602 | - | - | - | - | - | - | 128,530 |
| FY 2011 Total Obligations | 95,186 | 32,905 | 20,664 | 5,376,083 | 1,027,068 | 54,211 | 482,062 | 148,115 | (45,018) | 27,690 | 90,361 | 17,576 | - | 7,326,902 |
| Unobligated balance, start-of-year | (31,301) | (1,079) | (790) | (316,694) | (19,771) | (7,959) | (12,963) | - | - | - | - | (2,748) | - | (393,305) |
| Unobligated balance, end-of-year | 18,076 | 2,675 | 1,132 | 202,556 | 22,979 | 6,453 | 6,990 | - | - | - | - | 1,860 | - | 262,721 |
| Unobligated balance, expiring | 119 | 46 | 41 | - | - | - | 3,183 | - | - | - | - | 113 | - | 3,502 |
| Encumbered Carryforward | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Supplemental | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Current Year Offsetting Collections | - | (36) | - | (243,781) | - | - | - | (20,188) | - | (417) | - | - | - | (264,422) |
| Prior Year Recoveries | - | - | - | (9,168) | (4,583) | - | (12,600) | - | - | - | - | - | - | (26,351) |
| Information Technology Fund | - | (2,000) | - | - | - | - | - | - | - | - | - | - | - | (2,000) |
| Vaccine Injury Compensation Trust Fund | - | - | - | (4,775) | - | - | - | - | - | - | - | - | 4,775 | - |
| Transfer | - | - | 400 | - | - | (400) | - | - | - | - | - | - | - | - |
| Reimbursable Program[1] | - | - | - | - | - | - | - | (45,018) | 45,018 | - | - | - | - | - |
| FY 2011 Appropriation, Available | 82,080 | 32,511 | 21,447 | 5,004,221 | 1,025,693 | 52,305 | 466,672 | 82,909 | - | 27,273 | 90,361 | 16,803 | 4,775 | 6,907,050 |
| Available Supplemental | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| FY 2011 Appropriation, Enacted | 82,080 | 32,511 | 21,447 | 5,004,221 | 1,025,693 | 52,305 | 466,672 | 82,909 | - | 27,273 | 90,361 | 16,803 | 4,775 | 6,907,050 |

[1] More information on AO reimbursable program obligations is included in section 9.

THE JUDICIARY

COMPARATIVE SUMMARY OF OBLIGATIONS BY OBJECT CLASSIFICATION ($000)

Fiscal Year 2012

| Object Classification | Supreme Court | Ct of Appeals Federal Cir. | Ct. of Int'l Trade | Salaries and Expenses | Defender Services | Fees of Jurors | Court Security | Administrative Office: Direct Program[1] | Administrative Office: Reimbursable Program[1] | Federal Judicial Ctr | Judiciary Trust Funds | Sentencing Commission | Vaccine Injury Trust Fund | Total Judiciary |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Personnel Services and benefits** | | | | | | | | | | | | | | |
| 11 Personnel compensation | 44,015 | 15,900 | 7,754 | 2,733,565 | 296,756 | 28,230 | 7,864 | 108,648 | (33,165) | 14,058 | - | 10,171 | - | 3,233,796 |
| 12 Personnel benefits | 13,672 | 3,900 | 1,881 | 837,097 | 89,481 | 1 | 2,242 | 29,101 | (8,520) | 3,945 | - | 3,175 | - | 975,975 |
| 13 Benefits for former personnel | 13 | 25 | - | 9,639 | 302 | - | - | 1,248 | - | - | - | - | - | 11,227 |
| Total personnel services and benefits | 57,700 | 19,825 | 9,635 | 3,580,301 | 386,539 | 28,231 | 10,106 | 138,997 | (41,685) | 18,003 | - | 13,346 | - | 4,220,998 |
| **Contractual services and supplies** | | | | | | | | | | | | | | |
| 21 Travel | 398 | 145 | 148 | 60,982 | 10,671 | 24,555 | 316 | 1,225 | (191) | 6,057 | - | 755 | - | 105,061 |
| 22 Transportation of things | 68 | 100 | 16 | 6,010 | 268 | - | 51 | 60 | - | 65 | - | 18 | - | 6,656 |
| 23 Rental payments to GSA | - | 7,072 | 8,735 | 992,047 | 41,028 | - | 6,119 | - | - | - | - | - | - | 1,055,001 |
| 23 Rental payments to others | - | - | - | 33,408 | 392 | - | - | - | - | - | - | - | - | 33,800 |
| 23 Communications utilities & misc. charges | 3,782 | 341 | 407 | 132,350 | 7,225 | 1,612 | 918 | 683 | (244) | 515 | - | 60 | - | 147,649 |
| 24 Printing and reproduction | 491 | 95 | 15 | 15,384 | 158 | - | - | 96 | - | 66 | - | 279 | - | 16,584 |
| 25 Other services | 14,266 | 4,645 | 2,473 | 437,284 | 467,292 | 707 | 456,786 | 5,345 | (1,788) | 1,268 | 103,768 | 2,549 | - | 1,494,595 |
| 26 Supplies and materials | 2,501 | 150 | 111 | 22,384 | 1,916 | 1,176 | 934 | 582 | (160) | 756 | - | 55 | - | 30,404 |
| Total contractual services and supplies | 21,506 | 12,548 | 11,905 | 1,699,849 | 528,950 | 28,050 | 465,124 | 7,991 | (2,383) | 8,727 | 103,768 | 3,716 | - | 2,889,750 |
| **Acquisition of capital assets** | | | | | | | | | | | | | | |
| 31 Equipment | 3,772 | 788 | 676 | 187,219 | 10,487 | - | 31,260 | 2,075 | (1,132) | 602 | - | 1,039 | - | 236,786 |
| 32 Lands and Structures | 11,452 | - | - | - | - | - | - | - | - | - | - | - | - | 11,452 |
| Total acquisition of capital assets | 15,224 | 788 | 676 | 187,219 | 10,487 | - | 31,260 | 2,075 | (1,132) | 602 | - | 1,039 | - | 248,238 |
| **Grants and fixed charges** | | | | | | | | | | | | | | |
| 41 Grants, subsidies and contributions | - | - | - | - | 131,617 | - | - | - | - | - | - | - | - | 131,617 |
| 42 Insurance claims and indemnities | - | - | - | - | - | - | 500 | - | - | - | - | - | - | 500 |
| 43 Interest and dividends | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total grants and fixed charges | - | - | - | - | 131,617 | - | 500 | - | - | - | - | - | - | 132,117 |
| FY 2012 Total Obligations | 94,430 | 33,161 | 22,216 | 5,467,369 | 1,057,993 | 56,281 | 506,990 | 149,863 | (45,200) | 27,332 | 103,768 | 18,100 | - | 7,491,103 |
| Unobligated balance, start-of-year | (18,076) | (2,675) | (1,132) | (202,556) | (22,979) | (6,453) | (6,990) | - | - | - | - | (1,860) | - | (262,721) |
| Unobligated balance, end-of-year | 6,624 | 2,081 | 363 | 80,000 | 10,000 | 2,080 | - | - | - | - | - | 260 | - | 101,408 |
| Unobligated balance, expired | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Encumbered Carryforward | - | - | - | - | (3,614) | - | - | - | - | - | - | - | - | (3,614) |
| Current Year Offsetting Collections | - | (56) | - | (324,813) | (10,000) | - | - | (20,145) | - | (332) | - | - | - | (355,346) |
| Vaccine Injury Compensation Trust Fund | - | - | - | (5,000) | - | - | - | - | - | - | - | - | 5,000 | - |
| Information Technology Fund | - | - | - | - | - | - | - | (809) | - | - | - | - | - | (809) |
| Reimbursable Program[1] | - | - | - | - | - | - | - | (45,200) | 45,200 | - | - | - | - | - |
| FY 2012 Appropriation, Available | 82,978 | 32,511 | 21,447 | 5,015,000 | 1,031,000 | 51,908 | 508,000 | 82,909 | - | 27,000 | 103,768 | 16,500 | 5,000 | 6,970,021 |
| Rescission | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| FY 2012 Appropriation, Assumed | 82,978 | 32,511 | 21,447 | 5,015,000 | 1,031,000 | 51,908 | 508,000 | 82,909 | - | 27,000 | 103,768 | 16,500 | 5,000 | 6,970,021 |

[1] More information on AO reimbursable program obligations is included in section 9.

THE JUDICIARY
COMPARATIVE SUMMARY OF OBLIGATIONS BY OBJECT CLASSIFICATION ($000)

Fiscal Year 2013

| Object Classification | Supreme Court | Ct of Appeals Federal Cir. | Ct of Int'l Trade | Salaries and Expenses | Defender Services | Fees of Jurors | Court Security | Administrative Office: Direct Program[1] | Administrative Office: Reimbursable Program[1] | Federal Judicial Ctr | Judiciary Trust Funds | Sentencing Commission | Vaccine Injury Trust Fund | Total Judiciary |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Personnel Services and benefits** | | | | | | | | | | | | | | |
| 11 Personnel compensation | 44,519 | 16,263 | 7,854 | 2,740,832 | 299,577 | 28,448 | 8,015 | 110,280 | (33,580) | 14,467 | - | 10,479 | - | 3,247,154 |
| 12 Personnel benefits | 15,237 | 4,072 | 1,966 | 841,501 | 91,022 | 1 | 2,340 | 29,539 | (8,718) | 4,094 | - | 3,242 | - | 984,296 |
| 13 Benefits for former personnel | 13 | 30 | - | 6,141 | 307 | - | - | 23 | - | - | - | - | - | 6,514 |
| Total personnel services and benefits | 59,769 | 20,365 | 9,820 | 3,588,474 | 390,905 | 28,449 | 10,355 | 139,842 | (42,298) | 18,561 | - | 13,721 | - | 4,237,963 |
| **Contractual services and supplies** | | | | | | | | | | | | | | |
| 21 Travel | 404 | 153 | 151 | 59,165 | 10,854 | 24,744 | 321 | 1,272 | (298) | 6,143 | - | 669 | - | 103,578 |
| 22 Transportation of things | 69 | 105 | 11 | 5,755 | 273 | - | 52 | 62 | - | 66 | - | 18 | - | 6,411 |
| 23 Rental payments to GSA | - | 7,223 | 9,971 | 1,048,362 | 42,041 | - | 6,243 | - | - | - | - | - | - | 1,113,840 |
| 23 Rental payments to others | - | - | - | 33,074 | 398 | - | - | - | - | - | - | - | - | 33,472 |
| 23 Communications utilities & misc. charges | 3,826 | 355 | 118 | 126,405 | 7,360 | 1,624 | 933 | 709 | (249) | 524 | - | 41 | - | 141,646 |
| 24 Printing and reproduction | 499 | 100 | 11 | 13,301 | 160 | - | - | 100 | - | 67 | - | 270 | - | 14,508 |
| 25 Other services | 15,298 | 5,747 | 2,400 | 428,711 | 478,261 | 713 | 464,397 | 5,376 | (2,535) | 1,280 | 125,464 | 1,737 | - | 1,526,849 |
| 26 Supplies and materials | 2,551 | 160 | 102 | 20,133 | 1,949 | 1,185 | 948 | 604 | (185) | 770 | - | 45 | - | 28,261 |
| Total contractual services and supplies | 22,647 | 13,843 | 12,764 | 1,734,906 | 541,296 | 28,266 | 472,894 | 8,123 | (3,267) | 8,850 | 125,464 | 2,780 | - | 2,968,565 |
| **Acquisition of capital assets** | | | | | | | | | | | | | | |
| 31 Equipment | 3,912 | 809 | 659 | 171,033 | 7,407 | - | 31,424 | 1,306 | (650) | 613 | - | 820 | - | 217,333 |
| 32 Lands and Structures | 5,122 | - | - | - | - | - | - | - | - | - | - | - | - | 5,122 |
| Total acquisition of capital assets | 9,034 | 809 | 659 | 171,033 | 7,407 | - | 31,424 | 1,306 | (650) | 613 | - | 820 | - | 222,455 |
| **Grants and fixed charges** | | | | | | | | | | | | | | |
| 41 Grants, subsidies and contributions | - | - | - | - | 133,910 | - | - | - | - | - | - | - | - | 133,910 |
| 42 Insurance claims and indemnities | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 43 Interest and dividends | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total grants and fixed charges | - | - | - | - | 133,910 | - | - | - | - | - | - | - | - | 133,910 |
| FY 2013 Total Obligations | 91,450 | 35,817 | 23,243 | 5,494,412 | 1,073,517 | 56,715 | 514,673 | 149,271 | (46,215) | 28,024 | 125,464 | 17,321 | - | 7,562,893 |
| Unobligated balance, start-of-year | (6,624) | (2,081.0) | (363) | (80,000) | (10,000) | (2,080) | - | - | - | - | - | (260) | - | (101,408) |
| Unobligated balance, end-of-year | 4,302 | 1,428 | - | - | - | - | - | - | - | - | - | - | - | 5,730 |
| Current Year Offsetting Collections | - | (36) | - | (260,259) | - | - | - | (17,908) | - | (295) | - | - | - | (278,498) |
| Vaccine Injury Compensation Trust Fund | - | - | - | (5,354) | - | - | - | - | - | - | - | - | 5,354 | - |
| Reimbursable Program[1] | - | - | - | - | - | - | - | (46,215) | 46,215 | - | - | - | - | - |
| FY 2013 Appropriation, Available | 89,128 | 34,328 | 22,880 | 5,148,799 | 1,063,517 | 54,635 | 514,673 | 85,148 | - | 27,729 | 125,464 | 17,061 | 5,354 | 7,188,716 |

[1] More information on AO reimbursable program obligations is included in section 9.

**THE JUDICIARY**

**Outlays - FY 2011 to FY 2013**
(Dollars in Thousands)

| Appropriation | FY 2011 | FY 2012 1/ | FY 2013 1/ | Outlay Spendout Rates | | |
|---|---|---|---|---|---|---|
| | | | | YR 1 | YR 2 | YR 3 |
| Supreme Court | | | | | | |
| Discretionary | 73,272 | 72,683 | 74,743 | 80% | 20% | 0% |
| Mandatory | 2,197 | 2,197 | 2,207 | 100% | 0% | 0% |
| **Total, Salaries and Expenses** | 75,469 | 74,880 | 76,950 | | | |
| **Buildings and Grounds** | 16,011 | 20,070 | 21,070 | 68% | 12% | 20% |
| Court of Appeals for the Federal Circuit | | | | | | |
| Discretionary | 29,866 | 31,937 | 29,926 | 80% | 20% | 0% |
| Mandatory | 2,502 | 2,513 | 2,524 | 100% | 0% | 0% |
| **Total, Court of Appeals for the Federal Circuit** | 32,368 | 34,450 | 32,450 | | | |
| Court of International Trade | | | | | | |
| Discretionary | 18,156 | 20,903 | 21,633 | 95% | 5% | 0% |
| Mandatory | 1,851 | 1,718 | 1,715 | 100% | 0% | 0% |
| **Total, Court of International Trade** | 20,007 | 22,621 | 23,348 | | | |
| *Courts of Appeals, District Courts, and Other Judicial Services:* | | | | | | |
| Salaries and Expenses - Discretionary | 4,614,650 | 4,737,824 | 4,806,449 | 93% | 7% | 0% |
| Salaries and Expenses - Mandatory | 332,565 | 327,707 | 338,037 | 100% | 0% | 0% |
| **Total, Salaries and Expenses** | 4,947,215 | 5,065,531 | 5,144,486 | | | |
| **Defender Services** | 1,021,070 | 1,027,000 | 1,063,711 | 97% | 3% | 0% |
| **Fees of Jurors & Commissioners** | 56,015 | 54,400 | 56,400 | 99.5% | 0.5% | 0% |
| **Court Security** | 466,789 | 473,277 | 509,673 | 63.3% | 36.7% | 0% |
| ***Total, Courts of Appeals, District Courts, and Other Judicial Services*** | 6,491,089 | 6,620,208 | 6,773,270 | | | |
| **Administrative Office of the United States Courts** | 82,678 | 86,197 | 85,449 | 94% | 6% | 0% |
| **Federal Judicial Center** | 27,290 | 29,500 | 28,100 | 95% | 5% | 0% |
| **Judicial Retirement Funds (MANDATORY)** | 90,361 | 103,768 | 125,464 | 100% | 0% | 0% |
| **United States Sentencing Commission** | 17,630 | 16,500 | 17,495 | 85% | 15% | 0% |
| Subtotal, Discretionary | 6,423,427 | 6,570,291 | 6,713,649 | | | |
| Subtotal, Mandatory | 429,477 | 437,903 | 469,947 | | | |
| **Total, Judiciary** | 6,852,904 | 7,008,194 | 7,183,596 | | | |

1/ Mandatory amounts for fiscal years 2012 and 2013 reflect planned outlay levels.

**SUPREME COURT OF THE UNITED STATES**
**SUMMARY STATEMENT RELATING APPROPRIATION ESTIMATES TO THE CURRENT APPROPRIATION**

| | | | | |
|---|---|---|---|---|
| Fiscal Year 2012 Enacted Appropriation | | | | $82,978,000 |
| | Requirements | | | |
| | 2012 Available Appropriation | 2013 Requested Appropriation | Requested Increase/Decrease | |
| Salaries and Expenses | $74,819,000 | $77,165,000 | $2,346,000 | |
| Care of the Building and Grounds | $8,159,000 | $11,963,000 | $3,804,000 | |
| Totals | $82,978,000 | $89,128,000 | $6,150,000 | |
| Proposed Increase over Fiscal Year 2012 Enacted Appropriation | | | | $6,150,000 |
| Total Requested Budget Authority, Fiscal Year 2013 | | | | $89,128,000 |

**SUPREME COURT OF THE UNITED STATES**
***Salaries and Expenses***
**SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS**

| | |
|---|---|
| **Fiscal Year 2012 Enacted Appropriation** | **$74,819,000** |
| **Fiscal Year 2013 Requested Appropriation** | **$77,165,000** |
| **Requested Increase from Fiscal Year 2012 Appropriation** | **$2,346,000** |

**APPROPRIATION LANGUAGE**

**SUPREME COURT OF THE UNITED STATES**
**SALARIES AND EXPENSES**

For expenses necessary for the operation of the Supreme Court, as required by law, excluding care of the building and grounds, including purchase or hire, driving, maintenance, and operation of an automobile for the Chief Justice, not to exceed $10,000 for the purpose of transporting Associate Justices, and hire of passenger motor vehicles as authorized by 31 U.S.C. 1343 and 1344; not to exceed $10,000 for official reception and representation expenses; and for miscellaneous expenses, to be expended as the Chief Justice may approve, [$74,819,000] *$77,165,000,* of which $2,000,000 shall remain available until expended.

**SUMMARY OF REQUEST**
**SUPREME COURT OF THE UNITED STATES**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2013**
**(Dollar amounts in thousands)**

**Fiscal Year 2013 Resource Requirements:**

| Page No. | | Mandatory FTE | Mandatory Amount | Discretionary FTE | Discretionary Amount | Total FTE | Total Amount |
|---|---|---|---|---|---|---|---|
| | **Fiscal Year 2012 Enacted Appropriation** | 9 | 2,197 | 485 | 72,622 | 494 | 74,819 |
| | **Adjustments to Base to Maintain Current Services:** | | | | | | |
| | **A. Justices** | | | | | | |
| | Pay and benefits cost adjustments | | | | | | |
| 1.15 | 1. Proposed January 2013 pay adjustment (0.5% for nine months) | - | - | - | 8 | - | 8 |
| 1.15 | 2. Health benefits increase | - | 10 | - | - | - | 10 |
| | **B. Court Support Personnel** | | | | | | |
| | Pay and benefits cost adjustments | | | | | | |
| 1.16 | 3. Proposed January 2013 pay adjustment (0.5% for nine months) | - | | - | 146 | - | 146 |
| 1.16 | 4. Annualization of new fiscal year 2012 positions | - | | 3 | 173 | 3 | 173 |
| 1.16 | 5. One more compensable day | - | | - | 150 | - | 150 |
| 1.16 | 6. Health benefits increase | - | | - | 189 | - | 189 |
| 1.16 | 7. FERS increase | - | | - | 671 | - | 671 |
| 1.16 | 8. Promotions and within-grade increases | - | | - | 585 | - | 585 |
| | **B. Other Adjustments** | | | | | | |
| | Inflationary adjustments | | | | | | |
| 1.17 | 9. General inflationary adjustments | - | | - | 336 | - | 336 |
| 1.17 | 10. Library services | - | | - | 78 | - | 78 |
| | **Subtotal, adjustments to base to maintain current services** | - | 10 | 3 | 2,336 | 3 | 2,346 |
| | **Total Appropriation Required, Fiscal Year 2013** | 9 | 2,207 | 488 | 74,958 | 497 | 77,165 |

**SUPREME COURT OF THE UNITED STATES**
**SALARIES AND EXPENSES**
**Obligations by Activity ($000)**

| Activity | Fiscal Year 2011 Actual | Fiscal Year 2012 Estimate | Fiscal Year 2013 Request |
|---|---|---|---|
| **Salaries and Expenses, Total Obligations** | 73,802 | 74,819 | 77,165 |
| Unobligated Balance, Start of the Year | - | - | - |
| Unobligated Balance, End of the Year | - | - | - |
| Unobligated Balance, Expiring | 119 | - | - |
| **Available Appropriation** | 73,921 | 74,819 | 77,165 |

**Object Classification ($000)**

| Description | Fiscal Year 2011 Actual | Fiscal Year 2012 Estimate | Fiscal Year 2013 Request |
|---|---|---|---|
| 11 Personnel compensation | 40,501 | 41,019 | 41,495 |
| 12 Personnel benefits | 12,646 | 12,814 | 14,270 |
| 13 Benefits for former personnel | 8 | 13 | 13 |
| 21 Travel | 376 | 398 | 404 |
| 22 Transportation of things | 67 | 68 | 69 |
| 23 Rent, communications and utilities | 903 | 905 | 919 |
| 24 Printing and reproduction | 475 | 491 | 499 |
| 25 Other services | 13,405 | 13,441 | 13,656 |
| 26 Supplies and materials | 1,862 | 1,898 | 1,928 |
| 31 Equipment | 3,559 | 3,772 | 3,912 |
| **Total Obligations** | 73,802 | 74,819 | 77,165 |

**SUPREME COURT OF THE UNITED STATES**
**Salaries & Expenses**
**Relation of Obligations to Outlays ($000)**

| | Fiscal Year 2011 Actual | Fiscal Year 2012 Estimate | Fiscal Year 2013 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 73,802 | 74,819 | 77,165 | 2,346 |
| Obligated balance, start of year | 9,499 | 7,832 | 7,771 | (61) |
| Obligated balance, end of year | (7,832) | (7,771) | (7,986) | (215) |
| Net Outlays | 75,469 | 74,880 | 76,950 | 2,070 |

**Personnel Summary**

| | Fiscal Year 2011 Actual | Fiscal Year 2012 Estimate | Fiscal Year 2013 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total compensable workyears: | | | | |
| Full-time equivalent employment | 485 | 494 | 497 | 3 |

**SUPREME COURT OF THE UNITED STATES**
**Salaries & Expenses**
**Technology Fund Obligations and Financing**
**($000)**

| Activity | Fiscal Year 2011 Actual | Fiscal Year 2012 Estimated | Fiscal Year 2013 Request |
|---|---|---|---|
| Unobligated Balance, Start of the Year | 3,541 | $ 4,329 | $ 5,829 |
| New Deposits | $ 1,996 | $ 2,000 | $ 2,000 |
| Unobligated Balance, End of the Year | $ (4,329) | $ (5,829) | $ (7,329) |
| **No-Year Fund, Total Obligations** | **$ 1,208** | **$ 500** | **$ 500** |

Note:

FY 2011 Actuals : Continued Windows 7 and Desktop PC deployment project for Courtside network. SharePoint implementation continues.

FY 2012 Projected : Finalize Windows 7 and Desktop PC deployment project for Courtside network, evaluate SharePoint for external network, begin evaluation of mobile device solutions.

FY 2013 Request : Continue development of mobile device solutions.

Prior to the establishment of no-year funding, when the Court prepared for the upgrade of hardware and software, the lack of any immediately available money often posed a serious obstacle to a timely, well-planned upgrade. By the time funds were made available there was concern that a timely upgrade could be completed without impacting Court operations. Consequently, the Congress approved establishing an automation fund for which funds would be appropriated over time on a no-year basis to be available when needed in the future. The first no-year funds were appropriated by Congress in fiscal year 2006. Fund balances build and then are reduced on approximately a four year cycle.

**Table SC.1**
**Summary of Supreme Court Cases**

| Term* | Case Filings During Term | Carried Over From Prior Term | Total Cases | Original & Paid | In Forma Pauperis | Total Cases Disposed Of | Total Cases Not Disposed Of |
|---|---|---|---|---|---|---|---|
| 1975 | 3,940 | 821 | 4,761 | 2,366 | 2,395 | 3,806 | 955 |
| 1980 | 4,174 | 970 | 5,144 | 2,773 | 2,371 | 4,255 | 889 |
| 1981 | 4,422 | 889 | 5,311 | 2,957 | 2,354 | 4,433 | 878 |
| 1982 | 4,201 | 878 | 5,079 | 2,727 | 2,352 | 4,201 | 878 |
| 1983 | 4,222 | 878 | 5,100 | 2,706 | 2,394 | 4,141 | 959 |
| 1984 | 4,047 | 959 | 5,006 | 2,590 | 2,416 | 4,261 | 745 |
| 1985 | 4,413 | 745 | 5,158 | 2,581 | 2,577 | 4,275 | 883 |
| 1986 | 4,240 | 883 | 5,123 | 2,559 | 2,564 | 4,348 | 775 |
| 1987 | 4,493 | 775 | 5,268 | 2,593 | 2,675 | 4,387 | 881 |
| 1988 | 4,776 | 881 | 5,657 | 2,599 | 3,058 | 4,829 | 828 |
| 1989 | 4,918 | 828 | 5,746 | 2,430 | 3,316 | 4,932 | 814 |
| 1990 | 5,502 | 814 | 6,316 | 2,365 | 3,951 | 5,412 | 904 |
| 1991 | 5,866 | 904 | 6,770 | 2,463 | 4,307 | 5,828 | 942 |
| 1992 | 6,303 | 942 | 7,245 | 2,453 | 4,792 | 6,356 | 889 |
| 1993 | 6,897 | 889 | 7,786 | 2,454 | 5,332 | 6,682 | 1,104 |
| 1994 | 6,996 | 1,104 | 8,100 | 2,526 | 5,574 | 7,132 | 968 |
| 1995 | 6,597 | 968 | 7,565 | 2,467 | 5,098 | 6,599 | 966 |
| 1996 | 6,634 | 966 | 7,600 | 2,435 | 5,165 | 6,689 | 911 |
| 1997 | 6,781 | 911 | 7,692 | 2,439 | 5,253 | 6,718 | 974 |
| 1998 | 7,109 | 974 | 8,083 | 2,394 | 5,689 | 7,015 | 1,068 |
| 1999 | 7,377 | 1,068 | 8,445 | 2,421 | 6,024 | 7,332 | 1,113 |
| 2000 | 7,852 | 1,113 | 8,965 | 2,314 | 6,651 | 7,713 | 1,252 |
| 2001 | 7,924 | 1,252 | 9,176 | 2,218 | 6,958 | 8,025 | 1,151 |
| 2002 | 8,255 | 1,151 | 9,406 | 2,197 | 7,209 | 8,337 | 1,069 |
| 2003 | 7,814 | 1,068 | 8,882 | 2,064 | 6,818 | 7,791 | 1,092 |
| 2004 | 7,496 | 1,092 | 8,588 | 2,045 | 6,543 | 7,503 | 1,087 |
| 2005 | 8,521 | 1,087 | 9,608 | 2,033 | 7,575 | 8,209 | 1,399 |
| 2006 | 8,857 | 1,399 | 10,256 | 2,075 | 8,181 | 8,895 | 1,361 |
| 2007 | 8,241 | 1,361 | 9,602 | 1,974 | 7,628 | 8,375 | 1,227 |
| 2008 | 7,738 | 1,228 | 8,966 | 1,945 | 7,021 | 7,824 | 1,142 |
| 2009 | 8,159 | 1,142 | 9,301 | 1,913 | 7,388 | 8,096 | 1,205 |
| 2010 | 7,857 | 1,205 | 9,062 | 1,895 | 7,167 | 7,828 | 1,234 |
| 2011** | 7,974 | 1,234 | 9,208 | 1,915 | 7,293 | 7,991 | 1,217 |

*October Term 2011 corresponds with fiscal year 2012.
**Projection for full Term.

CLER-0087-11-6011

1.7

**Table SC.2**
**Summary of Case Dispositions**

| Term | Cases Granted Review: Argued This Term | Cases Granted Review: Disposed of by Opinion | Cases Reviewed and Decided Without Argument During Term | Cases Granted Review During Term |
|---|---|---|---|---|
| 1975 | 179 | 176 | 184 | 172 |
| 1980 | 154 | 152 | 122 | 188 |
| 1981 | 184 | 170 | 126 | 201 |
| 1982 | 188 | 174 | 119 | 179 |
| 1983 | 184 | 174 | 81 | 149 |
| 1984 | 175 | 159 | 78 | 185 |
| 1985 | 171 | 171 | 106 | 187 |
| 1986 | 175 | 174 | 109 | 167 |
| 1987 | 167 | 160 | 87 | 180 |
| 1988 | 170 | 168 | 107 | 147 |
| 1989 | 146 | 146 | 80 | 123 |
| 1990 | 125 | 125 | 115 | 141 |
| 1991 | 127 | 128 | 77 | 121 |
| 1992 | 116 | 115 | 118 | 97 |
| 1993 | 99 | 99 | 70 | 99 |
| 1994 | 94 | 94 | 69 | 96 |
| 1995 | 90 | 90 | 120 | 106 |
| 1996 | 90 | 90 | 88 | 87 |
| 1997 | 96 | 94 | 51 | 90 |
| 1998 | 90 | 88 | 59 | 81 |
| 1999 | 88 | 79 | 54 | 92 |
| 2000 | 86 | 88 | 127 | 99 |
| 2001 | 88 | 85 | 72 | 88 |
| 2002 | 84 | 79 | 66 | 91 |
| 2003 | 91 | 89 | 52 | 87 |
| 2004 | 87 | 85 | 326 | 80 |
| 2005 | 90 | 82 | 105 | 78 |
| 2006 | 78 | 74 | 280 | 77 |
| 2007 | 75 | 72 | 208 | 95 |
| 2008 | 87 | 88 | 95 | 88 |
| 2009 | 82 | 77 | 95 | 78 |
| 2010 | 86 | 88 | 84 | 90 |
| 2011* | 84 | 80 | 90 | 87 |

*Projection for full Term.

CLER-087A-11-2011

**Table SC.3**
**Applications to Individual Justices, Including Capital Cases**

| Term | Applications for Relief to Individual Justices | Chambers Opinions | Applications for Stay in Capital Cases* |
|---|---|---|---|
| 1975 | 1,165 | 10 | 0 |
| 1980 | 1,096 | 11 | 32 |
| 1981 | 1,145 | 7 | 39 |
| 1982 | 1,077 | 19 | 45 |
| 1983 | 1,072 | 14 | 76 |
| 1984 | 982 | 11 | 62 |
| 1985 | 1,050 | 6 | 66 |
| 1986 | 951 | 11 | 86 |
| 1987 | 1,001 | 8 | 60 |
| 1988 | 1,064 | 5 | 90 |
| 1989 | 929 | 0 | 71 |
| 1990 | 984 | 3 | 55 |
| 1991 | 968 | 1 | 74 |
| 1992 | 974 | 2 | 76 |
| 1993 | 1,113 | 5 | 79 |
| 1994 | 992 | 5 | 82 |
| 1995 | 1,067 | 5 | 87 |
| 1996 | 965 | 1 | 110 |
| 1997 | 965 | 1 | 115 |
| 1998 | 1,100 | 0 | 133 |
| 1999 | 1,065 | 0 | 182 |
| 2000 | 1,145 | 1 | 87 |
| 2001 | 1,006 | 2 | 91 |
| 2002 | 1,096 | 3 | 99 |
| 2003 | 1,064 | 2 | 86 |
| 2004 | 1,061 | 3 | 68 |
| 2005 | 1,236 | 2 | 112 |
| 2006 | 1,243 | 2 | 71 |
| 2007 | 1,094 | 3 | 20 |
| 2008 | 1,167 | 2 | 68 |
| 2009 | 1,268 | 2 | 60 |
| 2010 | 1,277 | 2 | 65 |
| 2011** | 1,265 | 2 | 55 |

* Some applications addressed to a Justice are referred to the whole Court for decision.
** Projection for full Term.

1.9

SUPREME COURT OF THE US

Office of the Clerk

Term Year 10

1.10

SUPREME COURT OF THE US
Office of the Clerk
Cases Carried Over & Docketed
No. of Cases
Docketed During Term
Carried Over
10000
8000
6000
4000
2000
0
70 75 80 81 82 83 84 85 86 87 88 89 90 91 92 93 94 95 96 97 98 99 00 01 02 03 04 05 06 07 08 09 10
Term Year 10
1.11

SUPREME COURT OF THE US
Office of the Clerk
Cases Docketed By Type
Other
1.3%
103
Civil
30.8%
2423
Criminal
36.8%
2895
Habeas Corpus
31.0%
2436
Term Year 10

1.12

SUPREME COURT OF THE US

Office of the Clerk

Cases Argued By Type

Criminal
21.2%
18

Habeas Corpus
5.9%
5

Original
1.2%
1

Civil
71.8%
61

Term Year 10

1.13

SUPREME COURT OF THE US
Office of the Clerk
Cases Docketed
Paid and Original
20%
1558
I.F.P.
80%
6299
Term Year 10
1.14

## GENERAL STATEMENT AND INFORMATION

Funds appropriated for the Supreme Court are for salaries of the Chief Justice, eight Associate Justices, the Counselor to the Chief Justice, the four Statutory Officers of the Court and the employees of the Court, and for the necessary expenses of the Court. Those expenses include printing and binding of the Supreme Court reports, purchasing books for the Supreme Court and miscellaneous expenses for fiscal year 2013.

**Justification of Changes**

The budget request for the Court totals $77,165,000 for fiscal year 2013. This represents an overall increase of $2,346,000, or 3.1 percent, above the fiscal year 2012 appropriation of $74,819,000. The budget request includes $2,000,000 in no year funding to be available until expended. This amount will fund the planning and implementation of complex, multi-year projects to enhance Court-wide technology and office automation.

**Adjustments to base to maintain current services** include funds for pay and benefits increases for current justices and staff. Also included are increased costs of ongoing activities such as travel, postage, supplies, law books, equipment, furnishings, automation, and offsite warehouse space for activities that include mail screening.

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

The following provides information and justification for each of the adjustments to base for the Supreme Court. The major headings for this section of the narrative are: Justices, Court Support Personnel, Other Adjustments.

### A. JUSTICES

***1. Proposed January 2013 pay adjustment***

**Requested Increase: $8,000**

As of January 2012, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 0.5 percent beginning on or after January 1, 2013. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2013.

***2. Health benefits increase***

**Requested Increase: $10,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 6.8 percent in January 2012 and another 7.0 percent in January 2013. The requested increase annualizes the fiscal year 2012 premium increase, and includes a nine-month provision for the anticipated fiscal year 2013 premium increase and other changes.

**B. COURT SUPPORT PERSONNEL**

***3. Proposed January 2013 pay adjustment***

**Requested Increase: $146,000**

As of January 2012, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 0.5 percent beginning on or after January 1, 2013. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2013.

***4. Annualization of new fiscal year 2012 positions***

**Requested Increase: $173,000** **FTE: 3**

The requested increase annualizes the cost of twelve additional police officers hired in fiscal year 2012. This line item requests the remaining three months of funding in fiscal year 2013 to annualize those positions.

***5. One more compensable day***

**Requested Increase: $150,000**

There is one more compensable day in fiscal year 2013 than in fiscal year 2012. This request increases personnel compensation and benefits expenses associated with one more compensable day.

***6. Health benefits increase***

**Requested Increase: $189,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 6.8 percent in January 2012 and another 7.0 percent in January 2013. The requested increase annualizes the fiscal year 2012 premium increase and includes a nine-month provision for the anticipated fiscal year 2013 premium increase and other changes.

***7. FERS increase***

**Requested Increase: $671,000**

The Supreme Court's costs for the Federal Employees Retirement System (FERS) have increased an average of 8.2 percent in recent years. This requested increase will cover the additional expenses of FERS employees hired to replace employees under the Civil Service Retirement System who retire or leave the Supreme Court.

***8. Promotions and within-grade increases***

**Requested Increase: $585,000**

The requested increase provides for promotions and within-grade increases for Supreme Court employees. Supreme Court employees who receive an "above-average" performance rating are eligible for periodic step increases in compensation

corresponding with those provided by Chapter 53 of Title 5, United States Code. This request will also fund anticipated salary increases resulting from promotions, quality step increases, merit awards and performance increases.

## C. OTHER ADJUSTMENTS

***9. General inflationary adjustments***

**Requested Increase: $336,000**

Consistent with guidance from the Office of Management and Budget, this request of $336,000 is required to fund inflationary increases of 1.6 percent for operating expenses such as travel, utilities, printing, contractual services, supplies and materials, and furniture and equipment.

***10. Library services***

**Requested Increase: $78,000**

An increase of $78,000 is requested to cover estimated increases in the costs of library services, including law book accessions and continuations, and computer-assisted legal research.

**SUPREME COURT OF THE UNITED STATES**
***Care of the Building and Grounds***
**SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS**

| Item | Amount |
| --- | --- |
| **Fiscal Year 2012 Enacted Appropriation** | **$8,159,000** |
| **Fiscal Year 2013 Requested Appropriation** | **$11,963,000** |
| **Requested Increase from Fiscal Year 2012 Appropriation** | **$3,804,000** |

**APPROPRIATION LANGUAGE**

**SUPREME COURT OF THE UNITED STATES**

**CARE OF THE BUILDING AND GROUNDS**

For such expenditures as may be necessary to enable the Architect of the Capitol to carry out the duties imposed upon the Architect by 40 U.S.C. 6111 and 6112, [$8,159,000] *$11,963,000,* to remain available until expended.

SUMMARY OF REQUEST
SUPREME COURT OF THE UNITED STATES
CARE OF THE BUILDING AND GROUNDS
FISCAL YEAR 2013
(Dollar amounts in thousands)

| Page No. | Fiscal Year 2013 Resource Requirements: | Original Request FTEs | Original Request Amount |
|---|---|---|---|
| | **Fiscal Year 2012 Enacted Appropriation** | 49 | $8,159 |
| | **Adjustments to Base to Maintain Current Services:** | | |
| | **A. Personnel** | | |
| 1.23 | 1. Proposed January 2013 pay adjustment (0.5% for nine months) | - | 13 |
| 1.23 | 2. Within-grade increases | - | 29 |
| 1.23 | 3. One more compensable day | - | 16 |
| 1.23 | 4. Annualization of two new fiscal year 2012 positions | 1 | 87 |
| 1.23 | 5. Health benefits increase | - | 13 |
| 1.24 | 6. FERS increase | - | 6 |
| | **B. Other Adjustments** | | |
| 1.24 | 7. General inflationary increases | - | 40 |
| | **Subtotal, Adjustments to Base to Maintain Current Services** | 1 | 204 |
| | **Total Current Services Appropriation Required** | 50 | 8,363 |
| | **C. Program Increases** | | |
| 1.24 | 8. Increase for Supreme Court police radio infrastructure upgrade | - | 1,100 |
| 1.24 | 9. Increase for façade restoration | - | 2,500 |
| | **Subtotal, Program Increases** | - | 3,600 |
| | **Total Fiscal Year 2013 Appropriation Required** | 50 | 11,963 |
| | **Total Appropriation Change, Fiscal Year 2012 to Fiscal Year 2013** | 1 | 3,804 |



**SUPREME COURT OF THE UNITED STATES**
**CARE OF THE BUILDING AND GROUNDS**
**Obligations by Activity ($000)**

| Activity | Fiscal Year 2011 Actual | Fiscal Year 2012 Estimate | Fiscal Year 2013 Request |
|---|---|---|---|
| **Care of Building and Grounds, Total Obligations** | **21,384** | **19,611** | **14,285** |
| Unobligated Balance, Start of Year | (31,301) | (18,076) | (6,624) |
| Unobligated Balance, End of Year | 18,076 | 6,624 | 4,302 |
| **Available Appropriation** | **8,159** | **8,159** | **11,963** |

**Object Classification ($000)**

| | Description | Fiscal Year 2011 Actual | Fiscal Year 2012 Estimate | Fiscal Year 2013 Request |
|---|---|---|---|---|
| 11 | Personnel compensation | 3,518 | 2,996 | 3,024 |
| 12 | Personnel benefits | 1,116 | 858 | 967 |
| 21 | Travel and transportation of things | 4 | 0 | 0 |
| 23 | Rent, communications and utilities | 2,164 | 2,877 | 2,907 |
| 25 | Other services | 2,949 | 825 | 1,642 |
| 26 | Supplies and materials | 723 | 603 | 623 |
| 31 | Equipment | 0 | 0 | 0 |
| 32 | Land and structures | 10,910 | 11,452 | 5,122 |
| | **Total Obligations** | **21,384** | **19,611** | **14,285** |

**SUPREME COURT OF THE UNITED STATES**
**CARE OF THE BUILDING AND GROUNDS**
**Relation of Obligations to Outlays ($000)**

| | Fiscal Year 2011 Actuals | Fiscal Year 2012 Estimate | Fiscal Year 2013 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 21,384 | 19,611 | 14,285 | (5,326) |
| Obligated balance, start of year | 16,644 | 22,017 | 21,558 | (459) |
| Obligated balance, end of year | (22,017) | (21,558) | (14,773) | 6,785 |
| Net Outlays | 16,011 | 20,070 | 21,070 | 1,000 |

Personnel Summary

| | Fiscal Year 2011 Actual | Fiscal Year 2012 Estimate | Fiscal Year 2013 Request | Difference |
|---|---|---|---|---|
| Total compensable workyears: | | | | |
| Full-time equivalent employment | 42 | 49 | 50 | 1 |

## GENERAL STATEMENT AND INFORMATION

This appropriation, for expenditure by the Architect of the Capitol, provides for the structural and mechanical care of the United States Supreme Court Building and Grounds, including maintenance and operation of mechanical, electrical, and electronic equipment.. The Architect is not responsible for custodial care, which is under the jurisdiction of the Marshal of the Supreme Court and is provided for in the Supreme Court's salaries and expenses appropriation. The Architect performs his duties under authority of the Act of May 7, 1934 (48 Stat. 668).

The equipment includes such items as air conditioning, refrigeration and ventilating systems with more than 1,000 pieces of equipment; electrical transformer stations and emergency power system; three hundred plumbing fixtures and related piping; nine elevators and five dumbwaiters; electrical fixtures and wiring; and electronic security equipment. In fiscal year 2013, a total of 50 full-time equivalents (FTE) are expected to cover three shifts daily.

Projects under the Architect of the Capitol relating to the buildings and grounds in the Capitol campus are included in the Legislative Branch budget. However, the projects pertaining to the Supreme Court, Care of the Building and Grounds are presented within the judiciary's budget request.

### Justification of Changes

The fiscal year 2013 budget request for the Supreme Court of the United States, Care of the Building and Grounds appropriation totals $11,963,000 and 50 FTE. This represents an increase of $3,804,000 from the fiscal year 2012 enacted appropriation of $8,159,000. The funding changes are divided into "Adjustments to Base to Maintain Current Services, an increase of $204,000; and "Program Increases," an increase of $3,600,000.

**Adjustments to base to maintain current services** include an increase of $164,000 for proposed 2013 personnel-related adjustments including the annualization of two new positions in fiscal year 2012 (1 FTE), and $40,000 for general inflationary increases.

**Program Increases** totaling $3,600,000 are requested to fund an upgrade to the Supreme Court police radio communications infrastructure and façade restoration of the building. Justification for the program increases begins on page 1.24.

**ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES**

**A. Personnel**

***1. Proposed January 2013 pay adjustment***

**Requested Increase: $13,000**

As of January 2012, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 0.5 percent beginning on or after January 1, 2013. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2013.

***2. Within-grade increases***

**Requested Increase: $29,000**

The requested increase includes $29,000 for within-grade increases and other adjustments, such as career ladder pay increases for support personnel. Increases for within-grades are authorized by 5 U.S.C.5102(c))(7), 5102(d), 5341-5349 for wage board employees and by 5 U.S.C.5331-5336 for general schedule employees.

***3. One more compensable day***

**Requested Increase: $16,000**

There is one more compensable day in fiscal year 2013 than in fiscal year 2012. This request increases personnel compensation and benefits expenses associated with one more compensable day.

***4. Annualization of new fiscal year 2012 positions***

**Requested Increase: $87,000** **FTE: 1**

The requested increase annualizes the cost of two additional positions hired in fiscal year 2012. This line item requests the remaining six months of funding in fiscal year 2013 to annualize those positions.

***5. Health benefits increase***

**Requested Increase: $13,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 6.8 percent in January 2012 and another 7.0 percent in January 2013. The requested increase annualizes the 2012 premium increase, and includes a nine-month provision for the anticipated fiscal year 2013 premium increase and other changes.

***6. FERS increase***

**Requested Increase: $6,000**

Funds are requested to provide for the increase in employer contributions to FERS. The contributions increased from 11.7 percent to 11.9 percent beginning in fiscal year 2012.

**B. Other Adjustments**

***7. General inflationary increases***

**Requested Increase: $40,000**

Consistent with guidance from the Office of Management and Budget, this request of $40,000 is required to fund inflationary increases of 1.6 percent for operating expenses such as travel, communications, printing, contractual services, supplies and materials, and furniture and equipment.

**C. Program Increases**

***8. Supreme Court Police Radio Infrastructure Upgrade***

**Requested Increase: $1,100,000**

The requested increase of $1,100,000 provides funding for replacing the existing radio and console system that is nearing the end of its useful life with limited future availability of replacement boards and parts. The existing radio and console system has been in place for 10 years providing continuous radio support to the Supreme Court of the United Stated (SCUS) Police. This project will decommission and remove all existing radio infrastructure equipment in accordance with a transition plan that will be developed to minimize communication outages during the modernization.

The current Motorola VHF radio infrastructure is about to reach end-of-life. This product line support will cease in early 2012 as replacement boards and other necessary parts deplete. Upgrading to the next generation of radio equipment will allow the SCUS Police to fully utilize technological advancements that have taken place during the last 10 years and will preserve the multi-million dollar investment made in portable and mobile subscribers. Additionally, the upgraded system will leverage a hosted Motorola Key Management Facility that the Supreme Court has access to via Memorandum of Agreement with another federal agency. This access eliminates the need to install a one million dollar Key Management Facility, as well as procuring the manpower required to administer the system.

***9. Facade Restoration***

**Requested Increase: $2,500,000**

The requested increase of $2,500,000 provides funding for the maintenance and preservation of the exterior facades of the Supreme Court Building. Maintenance and preservation of the exterior facades is now required as a significant amount of stone cracking and deterioration, mortar joint failure, moisture infiltration, and staining has occurred. This also represents a life safety hazard to building occupants and the public.

This project involves completing a survey of the exterior facades and cleaning, repairing, and repointing stone facades where necessary, as well as removing and replacing existing sealant and refinishing exterior bronze surfaces.

1.25

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**
***Salaries and Expenses***
**SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS**

| | |
|---|---|
| **Fiscal Year 2012 Enacted Appropriation** | **$32,511,000** |
| **Fiscal Year 2013 Requested Appropriation** | **$34,328,000** |
| **Requested Increase from Fiscal Year 2012 Appropriation** | **$1,817,000** |

**APPROPRIATION LANGUAGE**

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

**SALARIES AND EXPENSES**

For salaries of the chief judge, judges and other officers and employees, and for necessary expenses of the court, as authorized by law, [$32,511,000] *$34,328,000*.

**SUMMARY OF REQUEST**
**COURT OF APPEALS FOR THE FEDERAL CIRCUIT**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2013**
**(Dollar amounts in thousands)**

| Page No. | | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|---|
| | | FTE | Amount | FTE | Amount | FTE | Amount |
| 2.10 | 6. Health benefits increase | - | - | - | 47 | - | 47 |
| | **C. Other Adjustments** | | | | | | |
| | Inflationary adjustments | | | | | | |
| 2.10 | 7. General inflationary adjustments | - | - | - | 85 | - | 85 |
| 2.10 | 8. Computer-assisted legal research (CALR) | - | - | - | 9 | - | 9 |
| 2.10 | 9. Increase in GSA space rental cost | - | - | - | 151 | - | 151 |
| 2.10 | 10. Increase for the restoration of base requirements | - | - | - | 1,202 | - | 1.202 |
| | **Subtotal, Adjustments to Base to Maintain Current Services** | **-** | **11** | **-** | **1,806** | **-** | **1,817** |

**SUMMARY OF REQUEST**
**COURT OF APPEALS FOR THE FEDERAL CIRCUIT**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2013**
**(Dollar amounts in thousands)**

| Page No. | | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|---|
| | | FTE | Amount | FTE | Amount | FTE | Amount |
| | **Total Fiscal Year 2013 Appropriation Required** | 12 | 2,524 | 142 | 31,804 | 154 | 34,328 |
| | **Total Appropriation Increase, Fiscal Year 2012 to Fiscal Year 2013** | - | 11 | - | 1,806 | - | 1,817 |
| | **Financing the Fiscal Year 2013 Request:** | | | | | | |
| | **Total Appropriation Required, Fiscal Year 2013** | 12 | 2,524 | 142 | 31,804 | 154 | 34,328 |
| 2.11 | 11. Utilization of Electronic Public Access Receipts and Judiciary Information Technology Fund | - | - | - | 689 | - | 689 |
| | **Total Estimated Obligations, Fiscal Year 2013** | 12 | 2,524 | 142 | 32,493 | 154 | 35,017 |

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**
**SALARIES AND EXPENSES**
**Obligations by Activity ($000)**

| Activity | Fiscal Year 2011 Actual | Fiscal Year 2012 Estimate | Fiscal Year 2013 Request |
|---|---|---|---|
| **Salaries and Expenses, Total Obligations** | 32,905 | 33,161 | 35,017 |
| Unobligated Balance, Start of the Year | | | |
| Judiciary Information Technology Fund | (1,079) | (2,675) | (2,081) |
| Unobligated Balance, End of the Year | | | |
| Judiciary Information Technology Fund | 2,675 | 2,081 | 1,428 |
| Unobligated Balance, Expiring | 46 | | |
| **Available Appropriation** | 34,547 | 32,567 | 34,364 |
| Less offsets from: | | | |
| Electronic Public Access | (36) | (56) | (36) |
| Judiciary Information Technology Fund | (2,000) | | |
| **Appropriation Required (Direct)** | 32,511 | 32,511 | 34,328 |

**Obligations by Budget Object Class ($000)**

| | Description | Fiscal Year 2011 Actual | Fiscal Year 2012 Estimate | Fiscal Year 2013 Request |
|---|---|---|---|---|
| 11 | Personnel compensation | 14,661 | 15,900 | 16,263 |
| 12 | Personnel benefits | 3,171 | 3,900 | 4,072 |
| 13 | Benefits for former personnel | 15 | 25 | 30 |
| 21 | Travel | 103 | 145 | 153 |
| 22 | Transportation of things | 111 | 100 | 105 |
| 23 | Rent, communications and utilities | | | |
| | *Rental payments to GSA* | 5,962 | 7,072 | 7,223 |
| | *Communications utilities & misc charges* | 315 | 341 | 355 |
| 24 | Printing and reproduction | 94 | 95 | 100 |
| 25 | Other services | 5,304 | 4,645 | 5,747 |
| 26 | Supplies and materials | 164 | 150 | 160 |
| 31 | Equipment | 1,005 | 788 | 809 |
| 91 | Undefined Disbursements[1] | 2,000 | 0 | 0 |
| | **Total obligations**[2] | 32,905 | 33,161 | 35,017 |

1/ Deposited into JITF fund
2/ Includes JITF obligations of $404,000 in FY 2011, $650,000 in FY 2012, and $689,000 in FY 2013.

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**
**Salaries & Expenses**
**Relation of Obligations to Outlays ($000)**

| | FY 2011 Actual | FY 2012 Estimate | FY 2013 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 32,905 | 33,161 | 35,017 | 1,856 |
| Obligated balance, start of year | 9,891 | 10,428 | 9,139 | (1,289) |
| Obligated balance, end of year | (10,428) | (9,139) | (11,706) | (2,567) |
| Net Outlays | 32,368 | 34,450 | 32,450 | (2,000) |

**Personnel Summary**

| | FY 2011 Actual | FY 2012 Estimate | FY 2013 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total compensable workyears: | | | | |
| Full-time equivalent employment | 142 | 154 | 154 | 0 |

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

**SALARIES AND EXPENSES**

**Summary of Mandatory Costs**

| | Fiscal Year 2012 | | Fiscal Year 2013 1/ | | |
|---|---|---|---|---|---|
| | No. of Judgeships | Compensation and Benefits ($000) | No. of Judgeships | Compensation and Benefits ($000) | Increase ($000) |
| Article III Judges | 12 | 2,513 | 12 | 2,524 | 11 |

1/ The requested fiscal year 2013 cost-of-living adjustment for judges is treated as a "discretionary" cost and thus is not included in this amount. The $11,000 increase reflected above is associated with increases in health benefits.

## GENERAL STATEMENT AND INFORMATION

The United States Court of Appeals for the Federal Circuit, located in Washington, D.C., has exclusive nationwide jurisdiction over a large number of diverse subject areas, such as appeals in all patent cases, all government contract cases, all international trade cases, all government personnel cases, all cases involving monetary claims against the United States under the Tucker Acts, veterans cases, and many others. Additional subject areas have been added to the court's jurisdiction almost yearly. To keep abreast of its varied and growing jurisdiction, the court is requesting necessary increases in its funding as detailed below.

Appeals to the court come from all 94 federal district courts, the United States Court of Federal Claims, the United States Court of International Trade, and the United States Court of Appeals for Veterans Claims. The court also takes appeals of certain administrative agencies' decisions, including the United States Merit Systems Protection Board, the Boards of Contract Appeals, the Board of Patent Appeals and Interferences, and the Trademark Trial and Appeals Board. Decisions of the United States International Trade Commission, the Office of Compliance, an independent agency in the legislative branch, and the Government Accountability Office Personnel Appeals Board also are reviewed by the court. For additional information on the court's jurisdiction, see the appendix beginning on page 2.13.

### Justification of Changes

The fiscal year 2013 budget request for the Court totals $34,328,000, an increase of $1,817,000 or approximately 5.6 percent over the fiscal year 2012 enacted appropriation of $32,511,000. This increase includes amounts for inflationary increases and adjustments to base to maintain current services, and restore critical services that had to be reduced or eliminated due to insufficient funds.

**Adjustments to base to maintain current services** include funds for the following: increased salaries and benefits costs for judges and current staff; increased costs for basic and required operating activities such as postage, printing, office supplies, security, computer-assisted legal research services, and GSA space rental. Justifications for each of these adjustments begin on page 2.9.

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

The following narrative provides information and justification for each of the adjustments to base for the Court.

### A. JUDGES

**Pay and Benefit Cost Adjustments**

*1. Proposed January 2013 pay adjustment*

**Requested Increase: $8,000**

As of January 2012, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 0.5 percent beginning on or after January 1, 2013. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2013.

*2. Health benefits increase*

**Requested increase: $11,000**

Based on the information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 6.8 percent in January 2012 and another 7.0 percent in January 2013. The requested increase annualizes the 2012 premium increase, and includes a nine-month provision for the anticipated fiscal year 2013 premium increase and other changes.

### B. COURT SUPPORT PERSONNEL

**Pay and Benefit Cost Adjustments**

*3. Proposed January 2013 pay adjustment*

**Requested Increase: $51,000**

As of January 2012, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 0.5 percent beginning on or after January 1, 2013. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2013.

*4. Promotions and within-grade increases*

**Requested Increase: $185,000**

The requested increase provides for promotions and within-grade increases for support personnel. The court's salary plan for judicial support personnel provides for periodic within-grade increases for staff who receive at least a satisfactory performance rating.

*5. One more compensable day*

**Requested Increase: $68,000**

There is one more compensable day in fiscal year 2013 than in fiscal year 2012. This request increases personnel compensation and benefits expenses associated with one more compensable day.

6. ***Health benefits increase***

**Requested Increase: $47,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 6.8 percent in January 2012 and another 7.0 percent in January 2013. The requested increase annualizes the 2012 premium increase, and includes a nine-month provision for the anticipated fiscal year 2013 premium increase and other changes.

**C. OTHER ADJUSTMENTS**

**Inflationary Adjustments**

7. ***General inflationary adjustments***

**Requested Increase: $85,000**

Consistent with guidance from the Office of Management and Budget, this request of $85,000 is required to fund inflationary increases of 1.6 percent for operating expenses such as travel, communications, printing, contractual services, supplies and materials, and furniture and equipment.

8. ***Computer-assisted legal research***

**Requested Increase: $9,000**

An adjustment of $9,000 is requested to fund an estimated 5.0 percent increase in the costs of computer-assisted legal research resources.

9. ***Increase in GSA space rental cost***

**Requested Increase: $151,000**

The requested increase of $151,000 represents actual and estimated rent increases including an additional $27,000 in other GSA space related cost increases in fiscal year 2013.

10. ***Increase for the restoration of base requirements***

**Requested Increase: $1,202,000**

The requested increase of $1,202,000 represents the amount required to restore the various services that the Court had to reduce, eliminate or defer as a result of insufficient funding in the past fiscal year. Because the rent on the Markey National Courts Building (and the three adjacent historical buildings in the Court complex) increased from $5,108,000 annually in fiscal year 2010 to $6,310,000 annually in fiscal year 2012 (as a result of new occupancy agreements beginning in fiscal year 2011) and because the Court's appropriation has remained flat since fiscal year 2010, the mandatory additional rent expenses have been funded by cuts in the purchase of other services critical to Court operations. As a cost saving measure, for example, the Court has deferred filling several vacancies on the security force that protects the courthouse complex which has left the Court short-handed on occasion. The Court has also deferred urgent cyclical maintenance needs due to insufficient funds and this has begun to have an adverse effect on courthouse facilities. In addition, the Court has eliminated funds required for even basic tenant alterations. Finally, the Court has had to reduce its reliance on contracting of services, such as contracts for the performance of

vital official duties and functions in lieu of staff and for equipment rental for investitures and other official court functions.

## FINANCING THE FISCAL YEAR 2013 REQUEST

### *11. Utilization of Electronic Public Access Receipts and Judiciary Information Technology Fund*

**Estimated obligations of available balance from Judiciary Information Technology Fund and Electronic Public Access Receipts: $689,000**

28 U.S.C. § 612 provides that fees collected for electronic public access to information be deposited into the Judiciary Information Technology Fund, and that these funds are available without fiscal year limitations. The Judiciary is authorized to use these fees to offset the costs of providing information to the public electronically. Fiscal year 1997 appropriations report language expanded the Judiciary's authority to use these funds to finance automation enhancements that improve the availability of electronic information to the public. Fiscal year 2004 appropriations report language authorized the Judiciary to use these fees for systems enhancement and operational costs associated with the Judiciary's case management/electronic case filing (CM/ECF) system, which enables courts to receive and file court documents over the Internet. In fiscal year 2007, the Judiciary received authority from Congress to expand the use of Electronic Public Access receipts to support courtroom technology allotments for installation, cyclical replacement of equipment, and infrastructure maintenance.

Section 303(a) of the Judiciary's 1992 Appropriations Act authorizes the Director of the Administrative Office of the United States Courts, under the direction of the Judicial Conference of the United States, to "prescribe a schedule of reasonable fees for electronic access to information which the Director is required to maintain and make available to the public." These fees will be deposited as "offsetting collections" to the Judiciary Information Technology Fund pursuant to 28 U.S.C. §612(c)(1)(A) to reimburse expenses incurred in providing these services.

At the beginning of fiscal year 2013, the Court estimates that $2,081,000 will remain in the Judiciary Information Technology Fund. This amount will be supplemented by an additional $36,000 from Electronic Public Access receipts to total $2,117,000. The Court anticipates spending $689,000 to implement Vmware and Adobe LiveCycle Forms ES2 module, and on the cyclical maintenance of automation equipment.

## APPENDIX

The following is a more complete listing of the Federal Circuit's exclusive jurisdiction. It hears appeals from:

**(A)** final decisions of all Federal District Courts in cases arising under 28 U.S.C. §1338(a) relating to patent laws generally; 35 U.S.C. §§ 145-146 relating to review of decisions of the Patent and Trademark Office, Board of Patent Appeals and Interferences; 28 U.S.C. §1346(a)(2) relating to Little Tucker Act claims against the United States; and section 211 of the Economic Stabilization Act of 1970, section 5 of the Emergency Petroleum Allocation Act of 1973, section 506 (c) of the Natural Gas Policy Act of 1978, and section 523 of the Energy Policy and Conservation Act relating to all statutes formerly under the jurisdiction of the Temporary Emergency Court of Appeals;
**(B)** final decisions of the United States Court of International Trade, 28 U.S.C. § 2645(c);
**(C)** final decisions of the United States Court of Appeals for Veterans Claims, 38 U.S.C. § 7292;
**(D)** final decisions of the United States Court of Federal Claims, 28 U.S.C. § 2522 and 42 U.S.C. §§ 300aa - 12(f);
**(E)** final decisions of the High Court of the Trust Territory of the Pacific Islands, 48 U.S.C. § 1681 note (1988) (Compact of Free Association; Federated States of Micronesia, Republic of Marshall Islands, TITLE II, Title One, Article VII, § 174(c));
**(F)** final determinations of the United States International Trade Commission relating to unfair practices in import trade made under 19 U.S.C. § 1337;
**(G)** findings of the Secretary of Commerce under U.S. note 6 to subchapter X of chapter 98 of the Harmonized Tariff Schedule of the United States relating to importation of educational or scientific instruments and apparatus;
**(H)** final orders or decisions of the Merit Systems Protection Board and certain arbitrators, 5 U.S.C. § 7703;
**(I)** final decisions of the General Accounting Office Personnel Appeals Board, 31 U.S.C. § 755;
**(J)** final decisions of all agency Boards of Contract Appeals, 41 U.S.C. § 607(g);
**(K)** final decisions of the Patent and Trademark Office tribunals on patent applications and interferences, trademark applications and interferences, cancellations, concurrent use proceedings, and oppositions, 35 U.S.C. § 142, 15 U.S.C. § 1071, 37 CFR §§ 1.304, 2.145;
**(L)** appeals under section 71 of the Plant Variety Protection Act of 1970, 7 U.S.C. § 2461;
**(M)** certain actions of the Secretary of Veterans Affairs, 38 U.S.C. § 502;
**(N)** certain final orders of the Equal Employment Opportunity Commission relating to certain Presidential appointees, 2 U.S.C. § 1219(a)(3) and 28 U.S.C. § 2344;
**(O)** final decisions of the Office of Personnel Management under 5 U.S.C. § 8902a(g)(2);
**(P)** certain actions of the Board of Directors of the Office of Compliance of the U.S. Congress under 2 U.S.C. § 1407(a); and
**(Q)** final decisions of certain agencies pursuant to 28 U.S.C. § 1296.

Pursuant to 28 U.S.C. § 1292 (c) the Federal Circuit also has exclusive jurisdiction regarding:

a. appealable interlocutory orders or decrees in cases where the court would otherwise have jurisdiction over an appeal; and
b. appeals from judgments in civil actions for patent infringement otherwise appealable to the court and final except for accounting.

Under the provisions of 28 U.S.C. § 1292(d), the court has:

a. exclusive jurisdiction of appeals from interlocutory orders granting or denying, in whole or in part, a motion to transfer an action to the Court of Federal Claims; and
b. may, in its discretion, permit an appeal from an interlocutory order of a judge who certifies that there is a controlling question of law and a substantial ground for difference of opinion thereon, and that an immediate appeal may materially advance the ultimate termination of the litigation.

Pursuant to 38 U.S.C. § 7292(b) (1), the court has exclusive jurisdiction of certain interlocutory orders of the Court of Appeals for Veterans Claims.

Legislation having an impact on the Federal Circuit is contained in P.L. 105-339 (51021), October 31, 1998, Veterans Employment Opportunities Act of 1998, which provides a remedy through the Merit Systems Protection Board for those seeking review of the application of veterans preference rules to applicants for federal employment.

**UNITED STATES COURT OF INTERNATIONAL TRADE**
***Salaries and Expenses***
**SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS**

| | |
|---|---|
| **Fiscal Year 2012 Enacted Appropriation** | **$21,447,000** |
| **Fiscal Year 2013 Requested Appropriation** | **$22,880,000** |
| **Requested Increase from Fiscal Year 2012 Appropriation** | **$1,433,000** |

**APPROPRIATION LANGUAGE**

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**SALARIES AND EXPENSES**

For salaries of the chief judge and eight judges, salaries of the officers and employees of the court, services, and necessary expenses of the court, as authorized by law, [$21,447,000] *$22,880,000*.



**SUMMARY OF REQUEST**
**UNITED STATES COURT OF INTERNATIONAL TRADE**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2013**
**(Dollar amounts in thousands)**

| Page No. | Fiscal Year 2013 Resource Requirements: | Mandatory FTE | Mandatory Amount | Discretionary FTE | Discretionary Amount | Total FTE | Total Amount |
|---|---|---|---|---|---|---|---|
| | **Fiscal Year 2012 Obligations** | 9 | 1,718 | 71 | 20,498 | 80 | 22,216 |
| | Carryforward Balance from the Judiciary Information Technology Fund | - | - | - | (769) | - | (769) |
| | **Fiscal Year 2012 Enacted Appropriation** | 9 | 1,718 | 71 | 19,729 | 80 | 21,447 |
| | Adjustment to reflect expected mandatory costs | | (9) | | 9 | | - |
| | **Adjustments to Base to Maintain Current Services:** | | | | | | |
| | **A. Judges** | | | | | | |
| | Pay and benefit cost adjustments | | | | | | |
| 3.9 | 1. Proposed January 2013 pay adjustment (0.5% for nine months) | - | - | - | 5 | - | 5 |
| 3.9 | 2. Health benefits increase | - | 6 | - | - | - | 6 |
| | **B. Court Support Personnel and Programs** | | | | | | |
| | Pay and benefit cost adjustments | | | | | | |
| 3.9 | 3. Proposed January 2013 pay adjustment (0.5% for nine months) | - | - | - | 23 | - | 23 |
| 3.9 | 4. Promotions and within-grade increases | - | - | - | 46 | - | 46 |
| 3.9 | 5. One more compensable day | - | - | - | 26 | - | 26 |
| 3.10 | 6. Health benefits increase | - | - | - | 44 | - | 44 |
| 3.10 | 7. Workers' compensation cost | - | - | - | 35 | - | 35 |



**SUMMARY OF REQUEST**
**UNITED STATES COURT OF INTERNATIONAL TRADE**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2013**
**(Dollar amounts in thousands)**

| | C. Other Adjustments | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|---|
| | | FTE | Amount | FTE | Amount | FTE | Amount |
| | Inflationary increases in contract rates and charges for services, supplies, equipment, and other judiciary needs | | | | | | |
| 3.10 | 8. Increases in GSA Rent | - | - | - | 1,236 | - | 1,236 |
| 3.10 | 9. Increases in FPS building basic/specific security surcharges | - | - | - | 7 | - | 7 |
| 3.10 | 10. General inflationary increases | - | - | - | 5 | - | 5 |
| | **Subtotal, Adjustments to Base to Maintain Current Services** | - | 6 | - | 1,427 | - | 1,433 |
| | **Total Fiscal Year 2013 Appropriation Required** | 9 | 1,715 | 71 | 21,165 | 80 | 22,880 |



**SUMMARY OF REQUEST**
**UNITED STATES COURT OF INTERNATIONAL TRADE**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2013**
**(Dollar amounts in thousands)**

**Financing the Fiscal Year 2013 Request:**

| | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|
| | FTE | Amount | FTE | Amount | FTE | Amount |
| **Total Appropriation Required, Fiscal Year 2013** | 9 | 1,715 | 71 | 21,165 | 80 | 22,880 |
| 3.10 Carryforward Balance from the Judiciary Information Technology Fund | - | - | - | 363 | - | 363 |
| **Total Estimated Obligations, Fiscal Year 2013** | 9 | 1,715 | 71 | 21,528 | 80 | 23,243 |

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**SALARIES AND EXPENSES**
**Obligations by Activity ($000)**

| Activity | Fiscal Year 2011 Actual | Fiscal Year 2012 Estimate | Fiscal Year 2013 Request |
|---|---|---|---|
| **Salaries and Expenses, Total Obligations** | **20,664** | **22,216** | **23,243** |
| Unobligated Balance, Start of Year | | | |
| Judiciary Information Technology Fund | (790) | (1,132) | (363) |
| Unobligated Balance, End of Year | | | |
| Judiciary Information Technology Fund | 1,132 | 363 | - |
| Unobligated Balance, expiring | 41 | - | - |
| Transfer to Fees of Jurors & Commissioners | 400 | - | - |
| **Appropriation** | **21,447** | **21,447** | **22,880** |

**Object Classification ($000)**

| | Description | Fiscal Year 2011 Actual | Fiscal Year 2012 Estimate | Fiscal Year 2013 Request |
|---|---|---|---|---|
| 11 | Personnel compensation | 7,423 | 7,754 | 7,854 |
| 12 | Personnel benefits | 1,788 | 1,881 | 1,966 |
| 21 | Travel | 108 | 148 | 151 |
| 22 | Transportation of things | 7 | 16 | 11 |
| 23 | Rent, communications and utilities | | | |
| | *Rental payments to GSA* | 8,895 | 8,735 | 9,971 |
| | *Communications, utilities & misc. charges* | 288 | 407 | 118 |
| 24 | Printing and reproduction | 9 | 15 | 11 |
| 25 | Other services | 1,177 | 1,913 | 1,833 |
| 25.3 | Building specific security surcharge | 368 | 560 | 567 |
| 26 | Supplies and materials | 68 | 111 | 102 |
| 31 | Equipment | 533 | 676 | 659 |
| | **Total obligations**[1] | **20,664** | **22,216** | **23,243** |

1/ Includes JITF obligations of $508,000 in FY 2011, $769,000 in FY 2012, and $363,000 in FY 2013.

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**Salaries & Expenses**
**Relation of Obligations to Outlays ($000)**

| | Fiscal Year 2011 Actual | Fiscal Year 2012 Estimate | Fiscal Year 2013 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 20,664 | 22,216 | 23,243 | 1,027 |
| Obligated balance, start of year | 1,823 | 2,480 | 2,075 | (405) |
| Obligated balance, end of year | (2,480) | (2,075) | (1,970) | 105 |
| Net Outlays | 20,007 | 22,621 | 23,348 | 727 |

**Personnel Summary**

| | Fiscal Year 2011 Actual | Fiscal Year 2012 Estimate | Fiscal Year 2013 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total compensable workyears: | | | | |
| Full-time equivalent employment | 74 | 80 | 80 | 0 |

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**SALARIES AND EXPENSES**

**Summary of Mandatory Costs**

| | Fiscal Year 2012 | | Fiscal Year 2013[1] | | Increase ($000) |
|---|---|---|---|---|---|
| | No. of Judgeships | Compensation and Benefits ($000) | No. of Judgeships | Compensation and Benefits ($000) | |
| Article III Judges | 9 | 1,709 | 9 | 1,715 | 6 |

1/ The requested fiscal year 2013 cost-of-living adjustment for judges is treated as a "discretionary" cost and thus is not included in this amount. The $6,000 increase reflected above is associated with increases in health benefits.

## GENERAL STATEMENT AND INFORMATION

The United States Court of International Trade, with nine authorized Article III judgeships, has exclusive nationwide jurisdiction of civil actions against the United States, its agencies and officers, and certain civil actions brought by the United States, arising out of import transactions and the administration and enforcement of the federal customs and international trade laws.

The estimates under this title are to provide for the salaries of the judges and supporting personnel of the Court of International Trade, located in Manhattan, New York, and the necessary operating expenses of the Court. These operating expenses include internal courthouse security, Federal Protective Service (FPS) charges for basic and building specific security surcharges, GSA rent charges, travel, equipment maintenance contracts, cyclical maintenance of and upgrades to facilities, printing and binding, general office supplies, purchase of new office equipment and furniture, repair of existing equipment and furniture, access to legal research data bases, new legal reference materials, and continuation of reports for fiscal year 2013. In keeping with its national jurisdiction, court may be held throughout the country.

Table 3.1 provides a summary of the business of the Court for fiscal years 2006 through 2011. The spike in pending cases in fiscal year 2006 is largely due to the litigation resulting from the Supreme Court ruling in *United States Shoe Corp. v. United States*, 523 U.S. 360 (1998), in which the Harbor Maintenance Tax was declared unconstitutional.

**Table 3.1 Civil Action Cases**

| Fiscal Year | Pending Beginning of Year | Received | Decided | Pending End of Year |
|---|---|---|---|---|
| 2006 | 11,155 | 478 | 9,446 | 2,187 |
| 2007 | 2,187 | 511 | 592 | 2,106 |
| 2008 | 2,106 | 477 | 472 | 2,111 |
| 2009 | 2,111 | 519 | 418 | 2,212 |
| 2010 | 2,212 | 432 | 424 | 2,220 |
| 2011 | 2,220 | 480 | 577 | 2,123 |

## JUSTIFICATION OF CHANGES

The fiscal year 2013 budget request for the Court totals $22,880,000. This represents an overall increase of $1,433,000 or 6.7 percent over the fiscal year 2012 appropriation of $21,447,000. The primary reason for the 6.7 percent increase in the fiscal year 2013 budget request is the result of a substantial increase in GSA rent charges, which represents 86 percent of the Court's total requested increase of $1,433,000. The total increase, other than the extraordinary rent adjustment, reflects only the necessary adjustments to base to maintain current services.

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

The following narrative provides information and justification for each of the adjustments to base for the Court.

## A. JUDGES

**Pay and benefit cost adjustments**

***1. Proposed January 2013 pay adjustment***

**Requested Increase: $5,000**

As of January 2012, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 0.5 percent beginning on or after January 1, 2013. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2013.

***2. Health benefits increase***

**Requested Increase: $6,000**

Based on the information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 6.8 percent of fiscal year 2012 projected health benefits in January 2012 and another 7.0 percent in January 2013. The requested increase annualizes the 2012 premium increase, and includes a nine-month provision for the anticipated fiscal year 2013 premium increase and other changes.

## B. COURT SUPPORT PERSONNEL

**Pay and benefit cost adjustments**

***3. Proposed January 2013 pay adjustment***

**Requested Increase: $23,000**

As of January 2012, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 0.5 percent beginning on or after January 1, 2013. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2013.

***4. Promotions and within-grade increases***

**Requested Increase: $46,000**

The requested increase provides for promotions and within-grade increases for support personnel. The salary plan for judicial support personnel provides for periodic within-grade increases for staff who receive at least a satisfactory performance rating.

***5. One more compensable day***

**Requested Increase: $26,000**

There is one more compensable day in fiscal year 2013 than in fiscal year 2012. This request increases personnel compensation and benefits expenses associated with one more compensable day.

***6. Health benefits increase***

**Requested Increase: $44,000**

Based on the information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 6.8 percent in January 2012 and another 7.0 percent in January 2013. The requested increase annualizes the 2012 premium increase, and includes a nine-month provision for the anticipated fiscal year 2013 premium increase and other changes.

***7. Workers' compensation costs***

**Requested Increase: $35,000**

Funds are requested to pay for direct dollar costs of workers' compensation and medical benefits paid under the Federal Employees Compensation Act.

**C. OTHER ADJUSTMENTS**

***8. Increases in General Services Administration (GSA) space rental costs***

**Requested Increase: $1,236,000**

GSA's rent estimate for fiscal year 2013 is $9,971,000, an increase of $1,236,000 over the fiscal year 2012 estimate and 44 percent of the Court's total requested budget. This amount reflects a change in measurement standards applied to the Court's existing space, as a result of the judiciary's nationwide rent validations. The new standards comply with the standard industry recognized ANSI/BOMA usable standard of measurement. GSA's applications of this methodology to the CIT has resulted in this large rent increase.

***9. Increases in Federal Protective Service (FPS) basic/building specific security surcharges***

**Requested Increase: $7,000**

Based on the Department of Homeland Security's FPS's estimate, an additional $7,000 is needed to pay for increases in basic and building-specific security surcharge costs in fiscal year 2013. The building specific security surcharges provide for the Court's pro rata share of installing, operating, and maintaining the enhanced security for the Federal Complex in lower Manhattan.

***10. General Inflationary Increases***

**Requested Change: $5,000**

The Court requests an increase of $5,000 to fund inflationary increases for operating expenses such as travel, printing, supplies and materials.

**<u>D. FINANCING THE FISCAL YEAR 2013 REQUEST</u>**

**Carryforward Balance from the Judiciary Information Technology Fund**

**Estimated Obligations: $363,000**

At the beginning of fiscal year 2012, $1,132,000 was available in carryforward balances from the Judiciary Information Technology

Fund. Of this amount, the Court is planning to use $769,000 to continue its support of its newly installed video conferencing system, upgraded data network and voice connections and Virtual Private Network System (VPN); upgrade and support existing software applications; purchase new software applications to ensure the continued operational efficiency of the Court; replace computer desktops, monitors and printers, and five file servers in accordance with the judiciary's cyclical replacement program; provide phone service, including wireless service, as well as broadband services for laptops; support Court equipment by the purchase of yearly leasing and maintenance agreements and provide Court access to the Judiciary Data Communications Network (DCN).

At the beginning of fiscal year 2013, the Court anticipates that $363,000 will be available in carryforward balances in the Judiciary Information Technology Fund in order to continue its information technology initiatives and to support the Court's short term and long term information technology needs.

## COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES

**Summary of the Fiscal Year 2013 Budget Request**

The *Courts of Appeals, District Courts, and Other Judicial Services* accounts fund most of the day-to-day operations and activities of the federal courts. The four accounts under this heading include:

- **Salaries and Expenses**, which funds the operating costs of appellate, district and bankruptcy courts, and probation and pretrial services offices;
- **Defender Services**, which funds the necessary expenses to provide defense representation under the Criminal Justice Act (CJA) for persons financially unable to obtain defense counsel;
- **Fees of Jurors and Commissioners**, which funds the fees and allowances of grand and petit jurors, and the compensation of jury and land commissioners; and
- **Court Security**, which provides for the necessary expenses to provide protective guard services and security equipment for judiciary facilities.

**The Fiscal Year 2013 Budget Request**

The Judicial Conference requests $6,787.0 million in appropriations in fiscal year 2013 for these four accounts, an increase of $184.1 (2.8 percent) over fiscal year 2012 enacted appropriations of $6,602.9 million. The following table details the fiscal year 2012 enacted appropriations and fiscal year 2013 requested appropriations levels for the four accounts.

The $184.1 million increase in appropriations includes funding for 244 additional FTE, and is comprised of standard adjustments to base totaling $181.9 million and 229 FTE, and program increases totaling $2.1 million and 15 FTE. The table on page 4.2 summarizes the requested changes for each account.

Appropriations for the *Courts of Appeals, District Courts, and Other Judicial Services*

| ($000) | FY 2012 Enacted Appropriation | FY 2013 Request | Increase over FY 2012 | % Change |
|---|---|---|---|---|
| Salaries and Expenses [1] | $5,020,000 | $5,154,153 | $ 134,153 | 2.7% |
| Defender Services | $1,031,000 | $1,063,517 | $ 32,517 | 3.2% |
| Fees of Jurors | $51,908 | $54,635 | $ 2,727 | 5.3% |
| Court Security | $500,000 | $514,673 | $ 14,673 | 2.9% |
| **Total** | **$6,602,908** | **$6,786,978** | **$ 184,070** | **2.8%** |

[1] Salaries and Expenses includes funds from the Vaccine Injury Trust Fund.

**FY 2013 Summary of Requested Changes**

| | COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Salaries and Expenses | | Defender Services | | Fees of Jurors and Commissioners | Court Security | | Total Court of Appeals, District Courts, and Other Judicial Services [1] | |
| | FTE | ($000) | FTE | ($000) | ($000) | FTE | ($000) | FTE | ($000) |
| FY 2012 Enacted Appropriation | 29,918 | 5,015,000 | 2,803 | 1,031,000 | 51,908 | 74 | 500,000 | 32,795 | 6,597,908 |
| FY 2012 Vaccine Injury Trust Fund | - | 5,000 | - | - | - | - | - | - | 5,000 |
| **FY 2012 Available Appropriation** | **29,918** | **5,020,000** | **2,803** | **1,031,000** | **51,908** | **74** | **500,000** | **32,795** | **6,602,908** |
| **FY 2013 Adjustments to Base** | | | | | | | | | |
| Judges: | | | | | | | | | |
| - Pay and benefit cost adjustments | - | 3,728 | - | - | - | - | - | - | 3,728 |
| - Additional senior judges | 111 | 15,694 | - | - | - | - | - | 111 | 15,694 |
| - Increase in average number of filled Article III judgeships | 77 | 11,963 | - | - | - | - | - | 77 | 11,963 |
| - Non-recurring costs of new FY 2012 judges | - | (2,963) | - | - | - | - | - | - | (2,963) |
| Court Personnel | | | | | | | | | |
| - Pay and benefit cost adjustments | - | 60,960 | - | 9,208 | - | - | 1,636 | - | 71,804 |
| Other Changes | | | | | | | | | |
| - Funding necessary to maintain current services | - | 26,241 | - | 12,980 | 2,293 | - | 1,677 | - | 43,191 |
| - Inflation (non-space-related) | - | 6,359 | - | 2,844 | 524 | - | 86 | - | 9,813 |
| - Vaccine Injury Trust Fund adjustment | - | 354 | - | - | - | - | - | - | 354 |
| - Space related costs (includes inflation for space rental rates) | - | 48,180 | - | 999 | - | - | 124 | - | 49,303 |
| - Annualization of new FY 2012 positions | - | - | 38 | 8,105 | - | 3 | 227 | 41 | 8,332 |
| - Defender Services workload changes | - | - | - | 3,494 | - | - | - | - | 3,494 |
| - Change in available jurors | - | - | - | - | (90) | - | - | - | (90) |
| - FPS security service charges | - | - | - | - | - | - | 5,235 | - | 5,235 |
| - FY 2013 court security officer wage adjustments | - | - | - | - | - | - | 17,566 | - | 17,566 |
| - Annualization of new FY 2012 court security officers (11) | - | - | - | - | - | - | 561 | - | 561 |
| - Additional court security officers in FY 2013 (2) | - | - | - | - | - | - | 227 | - | 227 |
| - Adjustments to base for security systems and equipment | - | - | - | - | - | - | (2,347) | - | (2,347) |
| - Adjustments to base for program administration | - | - | - | - | - | - | (277) | - | (277) |
| - Base Reductions for information technology projects | - | (38,166) | - | - | - | - | - | - | (38,166) |
| - Base Reductions (cost-containment) | - | - | - | (5,500) | - | - | (9,991) | - | (15,491) |
| **Subtotal, FY 2013 Adjustments to Base** | **188** | **132,350** | **38** | **32,130** | **2,727** | **3** | **14,724** | **229** | **181,931** |
| **FY 2013 Adjusted Base** | **30,106** | **5,152,350** | **2,841** | **1,063,130** | **54,635** | **77** | **514,724** | **33,024** | **6,784,839** |
| **FY 2013 Program Increases** | | | | | | | | | |
| Judges: | | | | | | | | | |
| - Magistrate judges and staff | 12 | 1,803 | - | - | - | - | - | 12 | 1,803 |
| Court Personnel and Programs | | | | | | | | | |
| - Four new case-budgeting positions | - | - | 2 | 387 | - | - | - | 2 | 387 |
| - Two judiciary-funded USMS positions to replace existing contractors (funded for 6 months) | - | - | - | - | - | 1 | 190 | 1 | 190 |
| - Savings from two contractor conversions at USMS | | | | | | | (241) | - | (241) |
| **Subtotal, FY 2013 Program Increases** | **12** | **1,803** | **2** | **387** | - | **1** | **(51)** | **15** | **2,139** |
| Total increases requested, FY 2013 | 200 | 134,153 | 40 | 32,517 | 2,727 | 4 | 14,673 | 244 | 184,070 |
| **FY 2013 Appropriation Request** | **30,118** | **5,154,153** | **2,843** | **1,063,517** | **54,635** | **78** | **514,673** | **33,039** | **6,786,978** |

[1] The Court of Appeals, District Courts, and Other Judicial Services FTE totals do not reflect reimbursable positions (26 in FY 2012, and 26 in FY 2013)

**Adjustments to the Base**

The *Courts of Appeals, District Courts, and Other Judicial Services* fiscal year 2013 request includes $181.9 million (229 FTE) in adjustments to the fiscal year 2013 base for the following:

- $75.5 million for inflationary pay and benefit increases for judges and supporting personnel, including proposed January 2013 pay adjustments and health benefits.
- $49.3 million for net changes to the judiciary's space and facilities requirements, including inflationary increases to GSA space rental rates, the annualization of new space expected to be delivered in fiscal year 2012, and the cost of new space anticipated to be delivered in fiscal year 2013.
- $43.2 million due to a projected decrease in the availability of non-appropriated funds in fiscal year 2013. Currently, the judiciary is estimating that fewer non-appropriated funds will be available in fiscal year 2013 than were available in fiscal year 2012.
- $27.7 million (188 FTE) for an additional 26 senior judges and 85 associated staff, and an additional 13 filled active Article III judgeships and 64 associated staff.
- $18.4 million for increased court security officer costs, including a wage adjustment for contract court security officers, the annualization of fiscal year 2012 contract court security officer positions, and new fiscal year 2013 contract court security officer positions for new and existing court occupied space.
- $10.2 million for increases in contract rates, Vaccine Injury Compensation Trust Fund adjustments, and other standard inflationary increases.
- $8.1 million to annualize new fiscal year 2012 federal defender organization positions (38 FTE).
- $5.2 million for increases in Federal Protective Service security charges, based on rates established by FPS.
- $3.5 million for the net increase in costs and complexity associated with the 205,000 non-capital Criminal Justice Act representations projected in fiscal year 2013, offset by a projected decrease in capital representation costs.
- $0.2 million for the annualization of fiscal year 2012 new USMS positions (3 FTE).
- -$0.1 million decrease for the change in the number of available jurors.
- -$2.6 million decrease for reductions in the court security program administration, and security systems and equipment requirements.
- -$3.0 million decrease for non-recurring costs associated with new judges in fiscal year 2012.
- -$5.5 million in base reductions to the defender services program (cost-containment).

- -$10.0 million in base reductions to the court security program (cost-containment).

- -$38.2 million in base reductions for information technology projects in the Salaries and Expenses account.

**Program Increases**

The judiciary's fiscal year 2013 request includes $2.1 million and 15 FTE in program enhancements and workload increases for the four accounts under the *Courts of Appeals, District Courts, and Other Judicial Services*.

***Salaries and Expenses***
***($1.8 million/12 FTE)***

Magistrate Judges and Staff ($1.8 million/12 FTE)
The fiscal year 2013 request includes $1.8 million for 3 new magistrate judges (3 FTE) and associated support staff (9 FTE). Additional magistrate judges are required to assist the district courts in managing their varied and increasingly complex workload.

***Defender Services***
***($0.4 million/2 FTE)***

Four New Case-Budgeting Positions ($0.4 million/2 FTE)
The requested increase of $387,000 will fund 4 new case-budgeting positions for the Defender Services account.

***Court Security***
***(-$0.1 million/1 FTE)***

New Judiciary-Funded USMS Positions (-$0.1 million/1 FTE)
The fiscal year 2013 request includes savings resulting from the replacement of two existing contractors with two new lower cost positions (1FTE) at the USMS.

**COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES**
***Salaries and Expenses***
**SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS**

| | |
|---|---|
| Enacted Fiscal Year 2012 Salaries and Expenses Appropriation | $5,015,000,000 |
| Enacted Vaccine Injury Compensation Trust Fund (Appropriation) | $5,000,000 |
| Total, Fiscal Year 2012 Available Appropriation | $5,020,000,000 |
| Fiscal Year 2013 Salaries and Expenses Appropriation Request | $5,148,799,000 |
| Fiscal Year 2013 Vaccine Injury Compensation Trust Fund Appropriation Request | $5,354,000 |
| Total, Fiscal Year 2013 Appropriation Request | $5,154,153,000 |
| Requested Increase from Fiscal Year 2012 Appropriation | $134,153,000 |

**APPROPRIATION LANGUAGE**

**COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES**

**SALARIES AND EXPENSES**

For the salaries of circuit and district judges (including judges of the territorial courts of the United States), justices and judges retired from office or from regular active service, judges of the United States Court of Federal Claims, bankruptcy judges, magistrate judges, and all other officers and employees of the Federal Judiciary not otherwise specifically provided for, necessary expenses of the courts, and the purchase, rental, repair, and cleaning of uniforms for Probation and Pretrial Services Office staff, as authorized by law, [$5,015,000,000] *$5,148,799,000* (including the purchase of firearms and ammunition); of which not to exceed $27,817,000 shall remain available until expended for space alteration projects and for furniture and furnishings related to new space alteration and construction projects.

In addition, for expenses of the United States Court of Federal Claims associated with processing cases under the National Childhood Vaccine Injury Act of 1986 (Public Law 99-660), not to exceed [$5,000,000] *$5,354,000*, to be appropriated from the Vaccine Injury Compensation Trust Fund.

**SUMMARY OF REQUEST**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2013**
**(Dollar amounts in thousands)**

| Fiscal Year 2013 Resource Requirements: | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|
| | FTEs | Amount | FTE | Amount | FTE | Amount |
| **Fiscal Year 2012 Total Available Resources (includes Vaccine Injury Fund)** | 1,671 | 327,707 | 28,247 | 5,139,662 | 29,918 | 5,467,369 |
| Fiscal Year 2011 Encumbered Carryforward | - | - | - | (80,869) | - | (80,869) |
| **Fiscal Year 2012 Financial Plan (includes Vaccine Injury Fund)** | 1,671 | 327,707 | 28,247 | 5,058,793 | 29,918 | 5,386,500 |
| Non-appropriated sources of funding: | | | | | | |
| Estimated Fiscal Year 2012 Fee Collections | - | - | - | (244,813) | - | (244,813) |
| Carryforward Balances from Fiscal Year 2011 into Fiscal Year 2012 | - | - | - | (100,039) | - | (100,039) |
| Carryforward from the Judiciary Information Technology Fund | - | - | - | (21,648) | - | (21,648) |
| **Fiscal Year 2012 Enacted Appropriation (includes Vaccine Injury Fund)** | 1,671 | 327,707 | 28,247 | 4,692,293 | 29,918 | 5,020,000 |

| Page | | Mandatory FTEs | Mandatory Amount | Discretionary FTE | Discretionary Amount | Total FTE | Total Amount |
|---|---|---|---|---|---|---|---|
| | **Fiscal Year 2012 Base Appropriation (including Vaccine Injury Fund)** | 1,671 | 327,707 | 28,247 | 4,692,293 | 29,918 | 5,020,000 |
| | **Adjustments to reflect expected mandatory costs** | | 1,577 | | (1,577) | - | - |
| | **Adjustments to Base to Maintain Current Services:** | | | | | | |
| | **A. Judges** | | | | | | |
| 5.27 | 1. Pay and benefit cost adjustments | | | | | | |
| 5.27 | a. Proposed January 2013 pay adjustment (0.5% for nine months) | - | - | - | 1,652 | - | 1,652 |
| 5.27 | b. Benefit increases | - | 1,373 | - | 703 | - | 2,076 |
| 5.28 | 2. Senior judges (26 judges FTE/85 staff FTE) | 26 | 4,924 | 85 | 10,770 | 111 | 15,694 |
| 5.29 | 3. Increase in average number of filled Article III judgeships (13 judges FTE and 64 staff FTE) | 13 | 2,456 | 64 | 9,507 | 77 | 11,963 |
| 5.29 | 4. Non-recurring costs associated with filled fiscal year 2012 judges (Article III and magistrate judges) | - | - | - | (2,963) | - | (2,963) |
| | **B. Court Personnel and Programs** | | | | | | |
| 5.31 | 5. Pay and benefit cost adjustments | | | | | | |
| 5.31 | a. Proposed January 2013 pay adjustment (0.5% for nine months) | - | - | - | 11,659 | - | 11,659 |
| 5.31 | b. Promotions and within-grade increases | - | - | - | 23,555 | - | 23,555 |
| 5.31 | c. Benefit increases | - | - | - | 13,634 | - | 13,634 |
| 5.31 | d. One more compensable day | | | | 12,112 | - | 12,112 |
| 5.31 | 6. Funding necessary to maintain fiscal year 2012 service levels due to an anticipated decline in non-appropriated funds | - | - | - | 26,241 | - | 26,241 |

| Page | C. Other Mandatory Changes | Mandatory FTEs | Mandatory Amount | Discretionary FTE | Discretionary Amount | Total FTE | Total Amount |
|---|---|---|---|---|---|---|---|
| 5.32 | 7. Inflationary adjustments | - | - | - | 6.359 | - | 6.359 |
| 5.32 | 8. Vaccine Injury Compensation Trust Fund inflationary adjustment | - | - | - | 354 | - | 354 |
| 5.33 | 9. GSA space rental and related services | | | | | | |
| 5.33 | a. Annualization of new fiscal year 2012 space | - | - | - | 10.682 | - | 10.682 |
| 5.33 | b. Inflationary increase in GSA space rental rate costs (1.37%) | - | - | - | 13.274 | - | 13.274 |
| 5.33 | c. New Space to be delivered in fiscal year 2013 | - | - | - | 36.312 | - | 36.312 |
| 5.33 | d. Other space-related adjustments | - | - | - | (12.088) | - | (12.088) |
| 5.37 | 10. Reduction to base requirements | - | - | - | (38.166) | - | (38.166) |
| | **Subtotal, Adjustments to Base to Maintain Current Services** | 39 | 8,753 | 149 | 123,597 | 188 | 132,350 |
| | **Total Current Services Appropriation Required** | 1,710 | 338,037 | 28,396 | 4,814,313 | 30,106 | 5,152,350 |
| | **D. Program Increases** | | | | | | |
| 5.37 | 11. New fiscal year 2013 full-time magistrate judges and staff (3 new judgeships/ 3 FTE and 9 staff FTE) | - | - | 12 | 1.803 | 12 | 1.803 |
| | **Subtotal, Program Increases** | - | - | 12 | 1,803 | 12 | 1,803 |
| | **Total Fiscal Year 2013 Appropriation Request** | 1,710 | 338,037 | 28,408 | 4,816,116 | 30,118 | 5,154,153 |
| | **Total Appropriation Increase, Fiscal Year 2012 to Fiscal Year 2013** | 39 | 8,753 | 161 | 125,400 | 200 | 134,153 |

| Page | Financing the Fiscal Year 2013 Request: | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|---|
| | | FTEs | Amount | FTE | Amount | FTE | Amount |
| | **Total Appropriation Request, Fiscal Year 2013** | 1,710 | 338,037 | 28,408 | 4,816,116 | 30,118 | 5,154,153 |
| 5.40 | 12. Estimated Fiscal Year 2013 Fee Collections | - | - | - | 260,259 | - | 260,259 |
| 5.41 | 13. Anticipated Unencumbered Carryforward from Fiscal Year 2012 | - | - | - | 80,000 | - | 80,000 |
| | **Estimated Obligations, Fiscal Year 2013** | 1,710 | 338,037 | 28,408 | 5,156,375 | 30,118 | 5,494,412 |

**COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES**
**Salaries and Expenses**

| Activity ($000) | FY 2011 | | | FY 2012 | | | FY 2013 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Direct | Offsetting Coll. | Total Oblig. | Direct | Offsetting Coll. | Total Oblig. | Direct | Offsetting Coll. | Total Oblig. |
| **Appeals** | 580,656 | 48,346 | 629,002 | 596,802 | 42,880 | 639,682 | 603,036 | 39,810 | 642,846 |
| **District** | 2,347,626 | 200,637 | 2,548,263 | 2,412,812 | 178,721 | 2,591,533 | 2,437,714 | 166,637 | 2,604,351 |
| **Bankruptcy** | 838,725 | 69,833 | 908,558 | 862,047 | 61,938 | 923,985 | 871,051 | 57,504 | 928,555 |
| **Probation/Pretrial** | 1,191,089 | 99,171 | 1,290,260 | 1,224,209 | 87,960 | 1,312,169 | 1,236,997 | 81,662 | 1,318,659 |
| **Total Obligations** | 4,958,097 | 417,986 | 5,376,083 | 5,095,869 | 371,500 | 5,467,369 | 5,148,799 | 345,614 | 5,494,412 |
| **Anticipated Financial Plan Savings** | - | - | - | - | (80,000) | (80,000) | - | - | - |
| **Revised Obligations** | **4,958,097** | **417,986** | **5,376,083** | **5,095,869** | **291,500** | **5,387,369** | **5,148,799** | **345,614** | **5,494,412** |
| Unobligated Balance, Start of Year | | | | | | | | | |
| S&E No-Year Funds | (6,261) | - | (6,261) | (11,031) | - | (11,031) | - | - | - |
| Information Technology Funds | (28,484) | | (28,484) | (69,838) | - | (69,838) | - | - | - |
| Fee Collections | - | (281,949) | (281,949) | - | (121,687) | (121,687) | - | (80,000) | (80,000) |
| Prior Year Recoveries | | | | | | | | | |
| Salaries and Expenses | - | (9,168) | (9,168) | | - | - | - | - | - |
| Information Technology Funds | - | - | - | - | - | - | - | - | - |
| Unobligated Balance, End of Year | | | | | | | | | |
| S&E No Year Funds | 11,031 | - | 11,031 | - | - | - | - | - | - |
| Information Technology Funds | 69,838 | - | 69,838 | - | - | - | - | - | - |
| Fee Carryforward | - | 121,687 | 121,687 | - | 80,000 | 80,000 | - | - | - |
| **Available Appropriation (Direct)** | **5,004,221** | **248,556** | **5,252,777** | **5,015,000** | **249,813** | **5,264,813** | **5,148,799** | **265,614** | **5,414,412** |
| Supplemental Appropriation | - | - | - | - | - | - | - | - | - |
| Offsetting Collections | | | | | | | | | |
| Fee Collections | - | (243,781) | (243,781) | - | (244,813) | (244,813) | - | (260,259) | (260,259) |
| Vaccine Injury Trust Fund | - | (4,775) | (4,775) | - | (5,000) | (5,000) | - | (5,354) | (5,354) |
| **Appropriation (Direct)** | **5,004,221** | - | **5,004,221** | **5,015,000** | - | **5,015,000** | **5,148,799** | - | **5,148,799** |

**COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES**
**Salaries and Expenses**
**Obligations by Budget Object Class ($000)**

| Description ($000) | FY 2011 | | | FY 2012 | | | FY 2013 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Direct | Offsetting Coll. | Total Oblig. | Direct | Offsetting Coll. | Total Oblig. | Direct | Offsetting Coll. | Total Oblig. |
| 1100 Personnel compensation | 2,495,602 | 210,389 | 2,705,991 | 2,547,823 | 185,742 | 2,733,565 | 2,568,426 | 172,406 | 2,740,832 |
| 1200 Personnel benefits | 762,324 | 64,267 | 826,591 | 780,217 | 56,880 | 837,097 | 788,568 | 52,933 | 841,501 |
| 1300 Benefits for former personnel | 8,002 | 675 | 8,677 | 8,984 | 655 | 9,639 | 5,755 | 386 | 6,141 |
| 2100 Travel | 53,716 | 4,528 | 58,244 | 56,838 | 4,144 | 60,982 | 55,443 | 3,722 | 59,165 |
| 2200 Transportation of Things | 5,146 | 434 | 5,580 | 5,602 | 408 | 6,010 | 5,393 | 362 | 5,755 |
| 2310 Rental payments to GSA | 896,068 | 75,542 | 971,610 | 924,639 | 67,408 | 992,047 | 982,417 | 65,945 | 1,048,362 |
| 2320 Rental payments to others | 29,481 | 2,485 | 31,966 | 31,138 | 2,270 | 33,408 | 30,994 | 2,080 | 33,074 |
| 2330 Communications, utilities & misc | 118,460 | 9,987 | 128,447 | 123,357 | 8,993 | 132,350 | 118,454 | 7,951 | 126,405 |
| 2400 Printing and reproduction | 13,562 | 1,143 | 14,705 | 14,339 | 1,045 | 15,384 | 12,464 | 837 | 13,301 |
| 2500 Other services | 398,880 | 33,627 | 432,507 | 407,571 | 29,713 | 437,284 | 401,744 | 26,967 | 428,711 |
| 2600 Supplies and materials | 19,853 | 1,674 | 21,527 | 20,863 | 1,521 | 22,384 | 18,867 | 1,266 | 20,133 |
| 3100 Equipment | 157,002 | 13,236 | 170,238 | 174,498 | 12,721 | 187,219 | 160,275 | 10,758 | 171,033 |
| Total Obligations | 4,958,097 | 417,986 | 5,376,083 | 5,095,869 | 371,500 | 5,467,369 | 5,148,799 | 345,614 | 5,494,412 |
| Anticipated Financial Plan Savings | - | - | - | - | (80,000) | (80,000) | - | - | - |
| **Revised Obligations** | **4,958,097** | **417,986** | **5,376,083** | **5,095,869** | **291,500** | **5,387,369** | **5,148,799** | **345,614** | **5,494,412** |

**COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES**

**SALARIES AND EXPENSES**

**Summary of Mandatory Obligations**

| | FY 2012 [1] | | FY 2013 [2] | | |
|---|---|---|---|---|---|
| | No. of Authorized Judgeships | Compensation ($000) | No. of Authorized Judgeships | Compensation ($000) | Increase ($000) |
| Circuit Judgeships | 167 | 31,524 | 167 | 32,130 | 606 |
| District Judgeships | 678 | 118,758 | 678 | 121,106 | 2,348 |
| Senior/Retired Judgeships | | 114,456 | | 119,797 | 5,341 |
| Bankruptcy Judgeships | 351 | 64,546 | 351 | 65,005 | 459 |
| **Total** | **1,196** | **329,284** | **1,196** | **338,037** | **8,754** |

1/ Fiscal year 2012 reflects the planned obligation level; enacted level was $327,707,000.

2/ The requested fiscal year 2013 cost-of-living adjustment for judges is treated as a "discretionary" cost and thus is not included in this amount.

**COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES**

**Summary of Personnel Compensation and Benefits by Activity**[1]

| Program | FY 2011 Actual FTE | FY 2011 Actual Amount ($000) | FY 2012 Estimate FTE | FY 2012 Estimate Amount ($000) | FY 2013 Adj. to Base FTE | FY 2013 Adj. to Base Amount ($000) | FY 2013 Workload Adj. FTE | FY 2013 Workload Adj. Amount ($000) | FY 2013 Total Request FTE | FY 2013 Total Request Amount ($000) |
|---|---|---|---|---|---|---|---|---|---|---|
| **Appeals** | | | | | | | | | | |
| **Judges** | | | | | | | | | | |
| Article III Judges | | | | | | | | | | |
| Active | 152 | 31,879 | 151 | 31,524 | 3 | 711 | - | - | 154 | 32,235 |
| Senior | 114 | 22,910 | 112 | 22,707 | 5 | 1,197 | - | - | 117 | 23,903 |
| Retired | 17 | 3,139 | 14 | 2,813 | - | 19 | - | - | 14 | 2,832 |
| **Court Staff** | | | | | | | | | | |
| Article III Judges' Staff | 1,101 | 104,228 | 1,110 | 105,813 | 25 | 3,230 | - | - | 1,135 | 109,043 |
| Circuit Executives | 274 | 36,727 | 278 | 35,402 | - | 665 | - | - | 278 | 36,066 |
| Clerks Offices | 700 | 66,230 | 675 | 65,826 | - | 1,338 | - | - | 675 | 67,163 |
| Staff and Preargument Attorneys | 601 | 77,634 | 571 | 75,856 | - | 1,469 | - | - | 571 | 77,325 |
| Librarians | 274 | 29,556 | 260 | 28,211 | - | 503 | - | - | 260 | 28,713 |
| Bankruptcy Appellate Panels | 16 | 1,879 | 17 | 1,894 | - | 37 | - | - | 17 | 1,931 |
| **Total Appeals** | 3,257 | 373,401 | 3,187 | 370,044 | 33 | 9,167 | - | - | 3,220 | 379,211 |
| **District** | | | | | | | | | | |
| **Judges** | | | | | | | | | | |
| Article III Judges | | | | | | | | | | |
| Active | 597 | 115,212 | 607 | 118,758 | 10 | 2,747 | - | - | 617 | 121,505 |
| Senior | 407 | 75,955 | 426 | 79,700 | 21 | 4,326 | - | - | 446 | 84,026 |
| Retired | 58 | 8,852 | 51 | 9,236 | - | 198 | - | - | 51 | 9,435 |
| Magistrate Judges | 549 | 106,964 | 558 | 107,926 | - | 1,075 | 3 | 600 | 561 | 109,601 |
| Court of Federal Claims Judges | 16 | 3,387 | 16 | 3,362 | - | 66 | | | 16 | 3,428 |
| **Court Staff** | | | | | | | | | | |
| Article III Judges' Staff | 2,862 | 299,005 | 2,876 | 300,873 | 102 | 16,642 | - | - | 2,979 | 317,515 |
| Magistrate Judges' Staff | 1,097 | 131,348 | 1,110 | 132,466 | - | 2,635 | 9 | 701 | 1,119 | 135,802 |
| Federal Claims Judges' Staff | 65 | 6,573 | 66 | 6,674 | - | 260 | - | - | 66 | 6,935 |
| Clerks Offices | 6,225 | 602,569 | 6,004 | 598,264 | - | 12,081 | - | - | 6,004 | 610,345 |
| Pro Se and death penalty | 405 | 61,433 | 406 | 61,925 | - | 1,172 | - | - | 406 | 63,097 |
| Court Reporters | 711 | 80,834 | 714 | 80,785 | 22 | 2,530 | - | - | 736 | 83,315 |
| Court Interpreters | 95 | 14,927 | 96 | 15,192 | - | 298 | - | - | 96 | 15,490 |
| **Total District** | 13,088 | 1,507,149 | 12,928 | 1,515,161 | 155 | 44,030 | 12 | 1,301 | 13,095 | 1,560,492 |
| **Bankruptcy** | | | | | | | | | | |
| **Judges** | | | | | | | | | | |
| Bankruptcy Judges | 343 | 66,965 | 344 | 64,546 | - | 790 | - | - | 344 | 65,336 |
| **Court Staff** | | | | | | | | | | |
| Bankruptcy Judges' Staff | 762 | 87,582 | 774 | 88,243 | - | 1,706 | - | - | 774 | 89,949 |
| Clerks | 4,515 | 433,512 | 4,400 | 442,109 | - | 8,558 | - | - | 4,400 | 450,667 |
| Bankruptcy Administrators | 62 | 6,988 | 62 | 6,637 | - | 129 | - | - | 62 | 6,766 |
| **Total Bankruptcy** | 5,683 | 595,047 | 5,579 | 601,535 | - | 11,183 | - | - | 5,579 | 612,718 |
| **Probation/Pretrial Services** | 8,451 | 983,235 | 8,224 | 999,335 | - | 19,355 | - | - | 8,224 | 1,018,690 |
| **Total Judges** | 2,253 | 434,465 | 2,277 | 440,571 | 39 | 11,129 | 3 | 600 | 2,319 | 452,300 |
| **Total Chambers** | 6,293 | 690,257 | 6,341 | 695,998 | 127 | 25,645 | 9 | 701 | 6,477 | 722,341 |
| **Total Court Staff** | 21,932 | 2,334,110 | 21,300 | 2,349,509 | 22 | 46,962 | - | - | 21,322 | 2,396,470 |
| **GRAND TOTAL** | 30,479 | 3,458,832 | 29,918 | 3,486,075 | 188 | 83,735 | 12 | 1,301 | 30,118 | 3,571,111 |

[1] Does not include reimbursable positions.

**COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES**
**Salaries and Expenses**
**Relation of Obligations to Outlays ($000)**

| | FY 2011 Actual | FY 2012 Estimate | FY 2013 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total Obligations | 5,376,083 | 5,467,369 | 5,494,412 | 27,043 |
| Obligated balance, start of year | 149,648 | 68,262 | 108,762 | 40,500 |
| Obligated balance, end of year | (50,914) | (108,762) | (113,075) | (4,313) |
| Change in uncollected payments | (68,262) | - | - | - |
| **Total Outlays** | **5,406,555** | **5,426,869** | **5,490,099** | **63,230** |
| Less offsets from: | | | | |
| Fee Collections and Other Carryforward | (413,211) | (286,500) | (340,259) | (53,759) |
| Use of JITF No-Year Balances | (41,354) | (69,838) | 0 | 69,838 |
| Vaccine Injury Trust Fund | (4,775) | (5,000) | (5,354) | (354) |
| **Net Outlays** | **4,947,215** | **5,065,531** | **5,144,486** | **78,955** |

## GENERAL STATEMENT AND INFORMATION

Funds appropriated for the Salaries and Expenses account are for the salaries, benefits, and other operating expenses of judges and supporting personnel for the United States courts of appeals, district courts, bankruptcy courts, United States Court of Federal Claims, and United States probation and pretrial services offices. This account makes up 72 percent of the judiciary's total appropriations request, and 76 percent of the *Courts of Appeals, District Courts and Other Judicial Services* request. It supports 2,319 judges, 6,477 chambers staff, and 21,322 court support staff positions located throughout the United States in 674 federal court buildings and facilities (excludes Defender Services Offices).

### Fair and Efficient Judicial Process

The rulings of the federal courts protect the rights and liberties guaranteed by the Constitution. Through fair and impartial judgements, the federal courts interpret and apply the law to resolve disputes. The courts of appeals, district courts, bankruptcy courts, and federal probation and pretrial services offices all work to ensure a fair and independent judicial process.

The district court is responsible for administering justice in civil and criminal cases under federal jurisdiction in 94 judicial districts throughout the United States and its territories. The public benefits from an effective and efficient district court program by having criminal defendants processed through the criminal justice system and by having civil disputes resolved quickly and fairly.

The 94 judicial districts are organized into 12 regional circuits, each of which has a United States court of appeals. The appellate court is responsible for hearing appeals from the district courts and the bankruptcy appellate panel (if one exists) located within its circuit, as well as appeals from certain federal administrative agencies and, in limited situations, direct appeals from bankruptcy courts. The appellate courts also have original jurisdiction in some categories of cases. A party has the right to appeal every federal case in which a district court enters a final judgement. When an appeal is filed, a court of appeals reviews the decision and record of proceedings in the lower court or administrative agency. The court of appeals either affirms, reverses or may remand the case back to the original court. The court of appeals will issue a written order or opinion in each case. Appeals from the courts of appeals may be taken to the United States Supreme Court. That court, unlike the courts of appeals, can decide which cases it wants to hear. The Supreme Court can remand cases to the court of appeals or decide to affirm or reverse the court of appeals.

Through the bankruptcy courts, the legal system protects business and individual debtors, as well as their creditors, as intended by law. The bankruptcy court is responsible for providing a legal process for dealing with the debt problems of individuals and businesses through cases filed under one of the chapters of Title 11 of the United States Code, which comprise the federal bankruptcy laws. Giving debtors the ability to construct a plan for repaying creditors, or a "fresh start," as appropriate under the law, is a key purpose of the bankruptcy code.

The federal probation and pretrial services system assists the federal courts in the fair administration of justice. Probation and pretrial services officers also provide the courts with verified, objective pretrial services and presentence reports. The courts rely on those reports to make release and sentencing decisions and to provide the parties with notice of all relevant release and sentencing issues. The presentence reports are also used by the U.S. Attorneys Offices to locate assets to be seized in relation to any fines, restitution, or assessments ordered, while the Federal Bureau of Prisons relies on the presentence reports to guide its handling of defendants sentenced to incarceration.

**Immigration and Drug Enforcement**

For the first time in several years, immigration cases decreased slightly nationwide for the one-year period ending June 2011. During that one-year time period ending in June 2011, immigration cases decreased by about 2 percent and defendants charged with immigration offenses decreased 1.9 percent. It appears this may have several causes. First, because of the struggling U.S. economy, there may be fewer illegal immigrants willing to risk illegal entry. Second, the fence along the Southwest border with Mexico as well as other enforcement efforts may be having a deterrent effect on illegal crossings. Third, there appears to be increased competition among drug trafficking gangs that may be resulting in fewer border crossings.

Immigration cases remain a large part of the criminal filing category in federal courts. Since 2008, immigration cases have exceeded the number of drug prosecutions each year. In 2011, filings of immigration cases were 59 percent higher than filings of drug cases. However, there are a large number of multi-defendant drug cases, and few multi-defendant immigration cases. As a result, on a per-defendant basis, drug defendant filings exceed immigration defendant filings. For 2011, 32 percent of all drug defendants were charged in the six Southwest border districts. This is approximately a six point increase in that number since 2009, when it was 26 percent. For 2011, 73 percent of all immigration defendants were charged in the five Southwest border districts. This percentage has remained the same since 2009.

Although the bulk of these immigration cases are in the five federal judicial districts (Arizona, California-Southern, New Mexico, Texas-Southern, and Texas-Western) along the Southwest border, 27 percent of all immigration cases were in the other 89 district courts. The processing of criminal defendants requires courts to defer action on civil cases and use the court's available resources to process the criminal workload. The criminal justice focus along the Southwest border requires the judges and staff from other districts to assist with the courts' dockets. In most instances, there is a need for court interpreter support at every stage of the criminal case process. It is expected that immigration and drug enforcement will continue along the Southwest border as well as in other parts of the country.

Currently, an unprecedented amount of resources are being allocated to secure the border and combat the flow of drugs and weapons. Funding continues to be provided to deploy additional surveillance and detection technology and unmanned aircraft system operations to cover the entire Southwest Border. The Department of Homeland Security (DHS) has doubled the number of agents from almost 10,000 in 2004 to more than

21,000 in 2011, with most of these located in the Southwest Border. DHS has also increased security improvements along the Northern Border, investing additional border patrol agents, technology and infrastructure. Efforts to combat human smuggling and trafficking on the Southwest Border have increased over the last few years. In fiscal year 2010, over 2,500 arrests for human smuggling occurred –1,400 indictments, and 1,500 convictions.

The Department of Justice (DOJ) continues to increase efforts to combat violations of immigration law. DOJ is proposing to increase prosecutorial activities along the Southwest Border and increase operational funding to support Strike Force member agencies, including the Federal Bureau of Investigation, United States Marshals Service, Drug Enforcement Administration and the Bureau of Alcohol, Tobacco Firearms and Explosives. Along with existing efforts, DOJ plans on combating Southwest Border violence and dismantling drug cartels that are driving the increase in violent crime, drug trafficking and money laundering. These efforts will result in an increased workload for the district courts which will likely continue well into the future.

Immigration cases in the courts of appeals, generally from denials of relief from asylum, are adjudicated through the federal immigration courts and the Board of Immigration Appeals (BIA) at DOJ. While the number of filings continue to drop from their peak in 2006, these cases continue to demand extensive resources and are a far greater share of total caseload in recent years. Terminations of these appeals have not kept up with filings, resulting in pending BIA appeals increasing from 1,466 in 2001 to 7,452 in 2011 (an increase of 408 percent). The cumulative effect of these filings has impacted both the judges and staff in the courts of appeals. Courts have revised case-review processes to accommodate the volume of petitions for review from the BIA. These cases often require *de novo*[1] review of complex agency records and require additional time for judges and staff. The courts have had to develop greater expertise in this area and some courts have created immigration specialists. These cases require clerks offices to handle a large number of records from DOJ and process numerous motions per case.

The volume of work for probation and pretrial services is dictated by prosecutions brought by U.S. Attorneys Offices and the number of inmates released by the Federal Bureau of Prisons (BOP). Of the 112,181 defendants investigated (activated) by pretrial services in the 12-month period ending June 2011, 52 percent were non-citizens of the United States or their citizenship could not be determined. Coupled with the volume of work related to immigration cases, there is an increase in complexity. A significant challenge for the probation and pretrial services officers is the weak tie to the community of defendants and offenders who are illegal or temporary aliens and who often have limited involvement with mainstream elements in society. A defendant's illegal alien status clearly complicates the pretrial service officer's ability to find less costly, non-custodial options that will allow for the defendant's pretrial release. Another problem related to immigration cases is the need to coordinate interviews with court-certified interpreters, resulting in additional time and costs.

[1] An appeal in which the appellate court uses the trial court's record but reviews the evidence and law without deference to the trial court's rulings.

For various reasons, not all alien offenders are deported upon being convicted of a federal crime. In fact, more than 5,400 offenders currently under active post-conviction supervision are listed as non-citizens of the United States. This includes confirmed "illegal aliens" and others whose immigration status is still being litigated. In many instances, as immigration authorities process their amnesty and related applications, alien-offenders remain in a legal limbo with no authority to secure employment or enroll in school. This places the probation officer in a situation where the conditions of supervision, which require gainful employment or pursuit of education, are at odds with immigration rules. Officers struggle to minimize the opportunities for recidivism while trying to stabilize offenders' living situations pending final action by immigration authorities.

**Probation and Pretrial Services Program**

The Probation and Pretrial Services program has ongoing initiatives to enhance and promote community safety, reduce recidivism, and enhance location monitoring. A summary of these initiatives and legislative and administrative factors that influence workload is provided below.

Community Safety

To protect the community, federal probation and pretrial services officers supervise federal defendants and offenders conditionally released to the community on pretrial services supervision, probation, supervised release, and parole. Officers monitor compliance with conditions as required by statute and court order. They have frequent face-to-face contact with persons under supervision, and conduct unannounced home, employment, and community inspections. During these contacts, officers may seize any contraband in plain view and, with the permission of the court, conduct searches as needed. In cases where the supervision process exposes evidence of recidivism or the defendant/offender engaging in risky behavior (e.g., associating with known felons), the officer acts quickly and preemptively by working with the court to fashion a new judicial order that is both corrective and punitive.

To provide the community with the ultimate protection from recidivism, officers encourage positive, long-term change in persons under supervision. Officers provide or arrange for life skills training, substance abuse testing and treatment, mental health treatment, and other needed services for persons under supervision. They also help supervisees find and maintain gainful employment, pay their debts, and support their dependents. Officers often are successful in bringing about positive change because they can offer significant incentives. Noncompliant behavior can be punished by possible incarceration, while positive behavior can be rewarded with revised conditions of supervision, early termination, and even letters of recommendation to state agencies who adjudicate collateral consequences to a criminal conviction.

During the 12-month period ending June 2011, the BOP released 48,476 inmates to the supervision of probation officers in the community. Combined with releasees from previous years and probation cases, the daily supervision population reached 129,319 during that same period. The BOP's population now exceeds 217,000 inmates with nearly all of these inmates eventually to be released to terms of supervision.

Outcome Measurement Programs

The federal probation and pretrial services system is committed to measuring and acting on outcomes, with a key outcome being reduced recidivism among persons currently and formerly supervised by probation officers. Individual districts have partnered with local universities to study special in-district programs, while the judiciary as a whole has developed the capacity for systemic and long-term studies.

The challenge to all criminal justice researchers is the absence of a single, uniform source for arrest and disposition data, and the varied format and content of the incomplete information that is available. Local and state jurisdictions collect, report and share criminal justice data differently. To overcome this problem, at least to the degree possible, the judiciary has created an automated program that collects arrest and disposition data from multiple sources and interprets the results despite the variation in format and content of the underlying records. The judiciary also has its probation and pretrial services officers using a single case management system which allows for the collection of comprehensive data from all 94 districts. As a result, researchers are beginning to study - on a larger scale than ever before - the relationship between recidivism rates and probation officers' case strategies and interventions.

Location Monitoring Program

Courts often impose location restrictions on defendants and offenders as part of pretrial and post-conviction supervision terms. Probation and pretrial services officers use a combination of new technologies and traditional supervision work to verify defendants' and offenders' compliance with such conditions. Some of these new technologies include voice verification systems, radio frequency monitoring devices and global positioning systems.

The voice verification system is an automated system that intermittently places calls to the supervisee's "land line" phones (usually at his or her residence). The supervisee's verbal response to the call is compared to that pre-recorded in the system to confirm that it is the supervisee who answered the phone and is at the approved location. The voice verification system is usually used in low-risk cases where the supervisee is serving a period of home detention or curfew.

A radio frequency (RF) device and related system verify the presence of a defendant/offender at an authorized location using a transmitter and receiver. This technology is ideal for continuous curfew monitoring in the home. Approximately 6,500 defendants/offenders are currently monitored via RF technology.

The global positioning system (GPS) uses satellites and triangulation to monitor a defender/offender's location in the community. GPS is usually reserved for higher-risk cases that involve prohibitions on travel to certain locations (e.g., schools, high crime areas, home of victims or witnesses) or that require the supervisee to be at specific locations outside the home at a specific time (e.g., place of employment or drug treatment). There are two types of GPS units: active and passive. The active GPS unit monitors a supervisee's movement and immediately relays the information to the probation/pretrial services office. The passive GPS unit monitors the supervisee's movement and records it for later download by the

probation/pretrial service office. Approximately 800 defendants/offenders are currently monitored via GPS technology.

Legislative and Administrative Changes

Legislative and administrative changes influence the workload of probation and pretrial services officers. Each statutory and sentencing guideline change generates a new line of interpretive case law and *ex post facto*[2] issues that must be researched and understood by officers as part of their pretrial and presentence duties. Prior to 1984, there were few significant changes in the law pertaining to federal sentencing. However, following enactment of the Comprehensive Crime Control Act of 1984, which revamped federal pretrial release and sentencing, there have been more than 15 significant legislative modifications. For example, in recent years, legislation related to the prosecution, detention, sentencing, and supervision of sexual offenders (e.g., "PROTECT Act," "Adam Walsh Child Protection and Safety Act," "KIDS Act of 2008") has placed new responsibilities on probation and pretrial services officers. The U.S. Sentencing Guidelines have been amended 760 times since their effective date of November 1, 1987.

**Bankruptcy Courts**

Bankruptcy filings have stabilized after several years of significant increases. Nationwide, filings decreased by 2 percent in fiscal year 2011 from fiscal year 2010; this followed a 20 percent increase between fiscal years 2009 and 2010.

[2] A law that retroactively changes the legal consequences of acts committed or the legal status of facts and relationships that existed prior to enactment of the law.

After experiencing these high levels, bankruptcy filings are projected to start decreasing in 2012. Since bankruptcy filings have historically remained high even after economic recovery begins, filings will likely continue at a high rate for some time.

Chapter 11 Bankruptcy Cases

Filings under chapter 11 of the Bankruptcy Code offer the opportunity to reorganize businesses or to liquidate them in an orderly manner. In chapter 11 cases, bankruptcy courts are directly involved in reviewing and approving complicated business reorganization plans and asset sales focusing on the goal of achieving a benefit for all interested parties. The bankruptcy courts expect to handle almost 12,000 chapter 11 cases during the 12 months ending June 2012.

Chapter 7 Bankruptcy Cases

Chapter 7 of the Bankruptcy Code provides an avenue for discharging certain debts to give individual debtors a "fresh start," leaving no liability for discharged debts. "Consumer" bankruptcy petitions are driven by life crises including job loss, large medical bills, divorce, and natural disasters. The bankruptcy courts are expected to handle more than 944,000 chapter 7 cases during the 12 months ending June 2012.

While one of the purposes of chapter 7 is to provide for a discharge of debts (after the liquidation of non-exempt assets), individual debtors must qualify for relief under chapter 7 through a "means test". If the debtor's "current monthly income" is more than the state median, the Bankruptcy Code requires application of the "means test" to determine whether the chapter 7 filing is presumptively abusive. If so, the case can be dismissed or converted to a more complex and time consuming chapter 13 filing where the filer is required to repay at least some of the debt over a period lasting up to three to five

years. All of these factors will increase the workload for bankruptcy courts.

Chapter 13 Bankruptcy Cases

Chapter 13 of the Bankruptcy Code assists individual debtors who have regular income in seeking to adjust their debts within a repayment plan. Under such a plan debtors can save their homes from foreclosure by allowing them to "catch up" past-due payments. The bankruptcy courts are expected to handle more than 431,000 chapter 13 cases during the 12 months ending June 2012.

### Court Staffing

Clerks of court and deputy clerks are indispensable to the effective operation of the appellate, district and bankruptcy courts. Our probation and pretrial services officers are front-line federal law enforcement officers who protect the public by supervising closely individuals in the community awaiting trail and others who have been released after serving their sentences in federal prison. The bankruptcy workload has begun to decrease after several years of 20 percent or more annual growth, but filings remain close to all-time highs. Criminal caseload, particularly on the Southwest Border, continues to increase, and the workload in probation and pretrial services offices is at or near record levels.

The fiscal year 2013 request includes no additional funding for workload increases, which was made possible due to the judiciary's cost-containment efforts. These efforts resulted in reduced requirements for staffing funded in fiscal year 2012 and fiscal year 2013.

### Workload Trends in the Courts

The judiciary's workload is for the most part generated by forces outside of its control, and the workload in some programs continues to remain at or near record high levels. The funding request for court support staff is based on the previous year's projected caseload or, as in the case of the bankruptcy clerks program, a weighted average of two prior years' data. Although there has been an increase in overall caseload from fiscal year 2010 to fiscal year 2013, clerks and probation and pretrial services officers will be operating with fewer staff than were on-board in fiscal year 2010.

**Court Support Staffing Table (FTE) 1/**

| | FY 2010 | FY 2011 | FY 2012 | FY 2013 |
|---|---|---|---|---|
| Funded | 21,686 | 21,900 | 21,300 | 21,322 |
| Actual | 21,566 | 21,932 | N/A | N/A |

1/ Includes appellate clerks offices, bankruptcy clerks, district clerks, probation/pretrial, interpreters, and reporters.

Table 5.1 on page 5.19 displays the caseload factors for each of the 12-month periods ending June 30, 2006 through June 30, 2012 (projected).

**Table 5.1 Comparison of Judiciary Workload Factors**

| WORKLOAD FACTOR | 12 months ending June 30, 2006 Actual (FY 2007) | 12 months ending June 30, 2007 Actual (FY 2008) | 12 months ending June 30, 2008 Actual (FY 2009) | 12 months ending June 30, 2009 Actual (FY 2010) | 12 months ending June 30, 2010 Actual (FY 2011) | 12 months ending June 30, 2011 Actual (FY 2012) | 12 months ending June 30, 2012 Projected (FY 2013) |
|---|---|---|---|---|---|---|---|
| Criminal Filings | 67,872 | 66,674 | 70,024 | 75,324 | 78,213 | 78,764 | 77,000 |
| Year-to-Year Change: | | -2% | 5% | 8% | 4% | 1% | -2% |
| Criminal Defendants Filed | 89,956 | 88,245 | 91,782 | 96,718 | 100,031 | 102,605 | 102,700 |
| Year-to-Year Change: | | -2% | 4% | 5% | 3% | 3% | 0% |
| Probation: Persons Under Supervision | 113,697 | 115,930 | 120,051 | 123,839 | 126,642 | 129,319 | 131,600 |
| Year-to-Year Change: | | 2% | 4% | 3% | 2% | 2% | 2% |
| Pretrial Services: Cases Activated | 99,508 | 95,955 | 98,862 | 103,604 | 110,671 | 107,197 | 110,000 |
| Year-to-Year Change: | | -4% | 3% | 5% | 7% | -3% | 3% |
| Bankruptcy Filings | 1,484,570 | 751,056 | 967,831 | 1,306,315 | 1,572,597 | 1,529,560 | 1,361,400 |
| Year-to-Year Change: | | -49% | 29% | 35% | 20% | -3% | -11% |
| Appellate Filings | 68,313 | 58,809 | 59,406 | 59,399 | 56,097 | 55,353 | 55,300 |
| Year-to-Year Change: | | -14% | 1% | 0% | -6% | -1% | 0% |
| Civil Filings | 244,343 | 272,067 | 256,354 | 257,204 | 285,215 | 289,630 | 287,000 |
| Year-to-Year Change: | | 11% | -6% | 0% | 11% | 2% | -1% |

**Efforts to Contain Costs in the Courts and Limit Appropriation Requirements**

The judiciary continues to take seriously its role as steward of the taxpayers' dollars and regularly reviews program and business practices to identify areas where economies and efficiencies can be achieved. With large budget deficits projected to continue well into the future and serious efforts are underway to reduce government spending, containing the growth of government spending is more important now than ever. In light of this, the judiciary is committed to building on the cost containment efforts first started in 2004. The judiciary is embarking on a new round of cost containment initiatives that will more closely examine business practices and programs throughout the court system. Although this next round of cost containment initiatives is likely to be more difficult, the judiciary is doing its part to control growth in the federal budget.

The judiciary has been a government-wide leader on cost-containment for seven years since the Judicial Conference adopted the cost-containment strategy in September 2004. These efforts have resulted in a reduction in discretionary spending and slowed growth in several areas.

The judiciary has identified usable space in courthouses to re-purpose for occupancy of judiciary employees (e.g. probation and pretrial services officers) currently in leased space which can be relinquished and reduce recurring rent costs. We have enhanced the use of e-learning tools, including interactive webinars, DVD training presentations, and judiciary intranet class sites to reduce travel costs associated with face-to-face training for court staff.

We have also enhanced the use of video-conferencing to reduce travel costs within court districts, and between the Administrative Office and the courts.

The judiciary has enhanced the use of strategic sourcing, such as the use of judiciary-wide contracts to obtain discounts for buying in volume, simplify supply of common-use products, and reduce administrative effort. For example, a wireless telecommunications expense management service is being developed and implemented which has the potential to reduce significantly the amount of time and money courts spend on the administration and support of mobile devices (including auditing wireless plan invoices, resolving billing disputes, identifying and negotiating more affordable wireless service). We have maximized the use of wireless communications to allow probation and pretrial services officers to access law enforcement databases and case information remotely. This results in the officers spending more time supervising offenders and less time in the office which in turn reduces space requirements due to "hoteling" of probation and pretrial services officers.

The judiciary continues to gain productivity enhancements and cost savings resulting from new/improved IT systems which help contain growth in future technology and staffing costs. The Criminal Justice Act (CJA) e-Voucher Payment System will streamline the review process, improve efficiency and oversight by providing basic automatic checks and balances for claims; and, over time reduce judiciary personnel costs. The judiciary Integrated Financial Management System, a single integrated financial system, will allow timely access to data, supporting the

federal accounting standards including the e-government requirement for daily reporting to the Department of Treasury, and will provide enhanced reporting capability, tracking and monitoring criminal debt imposed by the courts, handling of cash receipts, reporting of court payroll information, and management of travel expenses. Implementation for test courts will take place in fiscal year 2013, while implementation for remaining court units will begin in fiscal year 2014. Savings/cost avoidances will occur due to consolidation of servers and server rooms. Consolidation of servers from 94 districts to 1 or 2 centralized locations has reduced hardware and operating costs and improved efficiency and disaster recovery for continuity of operations. Implementing a national, Voice Over IP telephone system will provide data, voice, and video services on a single network for the courts. By providing courts with a robust replacement for their aging PBX telephone switch equipment, we are reducing local telephone related expenditures.

Along with new initiatives, the judiciary continues cost-containment initiatives that are well underway and have saved and avoided costs over the last several years. Provided below are examples of some of the major efforts currently underway which have resulted in a reduction in discretionary spending and slowed growth in these categories.

Space and Facilities Program and Initiatives

The judiciary's space and facilities requirements include rental payments to the General Services Administration (GSA) for federally owned and leased space, utilities which exceed the basic levels provided by GSA (e.g., when court proceedings extend beyond normal business hours), alterations of space, payments to private lessors for parking and space, and maintenance (e.g., replacement of carpeting, painting).

Two initiatives are underway within the recently delegated authority to the judiciary, which allows court units to enter directly into tenant property alteration construction contracts with private sector companies for projects up to $100,000 in value, in an effort to control space costs.

Another program being developed in conjunction with GSA is a "menu" of minor tenant alterations initiatives. This "menu" will be designed so that courts can expedite procurement of minor tenant alterations through firm-fixed and pre-negotiated contracts held regionally by GSA or for micro-purchases by GSA. This initiative would accelerate the completion of smaller projects by minimizing the current lengthy procurement process and would enable smaller projects to be completed at a lower cost.

Currently, court units occupy 674 locations nationwide. As a cost-containment measure, the Judicial Conference imposed a moratorium on new courthouse construction in September 2004. When the moratorium ended in September 2006, the Conference implemented additional measures to contain facility costs, specifically those that would manage space growth. These measures remain in place today and include rent budget caps, *U.S. Courts Design Guide* space allocation revisions, a rent validation program, and implementation of a comprehensive asset management planning process.

The judiciary's biggest cost containment success has been in controlling rent costs. In fiscal year 2005, GSA rental payments accounted for over 20 percent of the Salaries and

421

Expenses account. At that time, rent was projected to grow by 6 to 8 percent a year, reaching $1.5 billion by fiscal year 2013. As a result of cost-containment, the fiscal year 2013 budget request for GSA space rental totals $1.1 billion, an avoidance of almost $360 million. The graph below compares the pre cost-containment and post cost-containment savings in rental costs.

GSA Rent Projections
FY 2005 - FY 2013
($ in Millions)
$1,600
$1,200
$800
$400
$0
FY 2002
FY 2003
FY 2004
FY 2005
FY 2006
FY 2007
FY 2008
FY 2009
FY 2010
FY 2011
FY 2012
FY 2013 Est.
Projected Obligations (Pre-Cost Containment; Spring 2005 Estimate)
Actual and Projected Obligations (Post Cost Containment; Fall 2011 Estimate)

*Rent Budget Caps*

At its September 2006 session, the Judicial Conference established an annual budget cap for GSA space rental costs for fiscal years 2009 through 2016. The amount of the cap limits rent increases to an average of 4.9 percent per year. At its September 2007 session, the Judicial Conference approved the establishment of circuit-level rent budgets to decentralize decision-making and slow long-term growth in rent. An initial trial of the program was put in place during fiscal year 2008, and a nationwide rent program was implemented in fiscal year 2009. This initiative constitutes a dramatic change in the judiciary's management of space and rent costs and its implementation has transformed all space acquisition work processes.

*Courtroom Usage Study*

Based on a courtroom usage study performed from 2005 to 2008, in March 2009 the Judicial Conference adopted a courtroom sharing policy for new courthouses and courtroom construction to be included in the *U.S. Courts Design Guide*. The policy provides for courtroom sharing by senior judges and magistrate judges. In addition, in September 2011 the Judicial Conference endorsed a courtroom sharing policy for bankruptcy judges in new courthouse and courtroom construction for inclusion in the *U.S. Courts Design Guide.*

*Asset Management Planning*

In March 2006, the Judicial Conference approved the Asset Management Planning (AMP) process, a revised long-range facilities planning methodology designed to address court facility cost containment concerns. Through fiscal year 2011, the AMP methodology has been applied to a total of 221 courthouses located in 162 cities, and 43 districts. Of those, 33 courthouses in these districts were affected by a 2004 Judicial Conference-imposed funding moratorium, facilitating an opportunity for assessment under the new AMP process. For all but 2 of the 33

5.21

courthouses, facility plans using the revised methodology are complete. Application of the AMP methodology has shown that facility needs associated with approximately half of the 33 courthouses initially studied, could be addressed by way of a renovation or alteration project, as opposed to the more costly solution of new construction.

In February 2008, the AO and GSA signed a Memorandum of Understanding (MOU) that changed the way rent is charged for the judiciary and will be a significant contributor towards controlling the judiciary's future rent bills. The MOU modified GSA's method for determining courthouse rent charges and resolved other judicial rent concerns. The pricing change became effective in fiscal year 2009 for 18 courthouses that were converted from "appraisal-based" to "return on investment-based" pricing and the rent was reduced by approximately 10 percent, or $7 million.

*Training Programs*

A national circuit-based space and security training program has been developed to help courts implement cost-containment initiatives and manage their space. Developed in cooperation with training experts from the Federal Judicial Center and court managers, specific training plans were developed for the following programs: circuit rent budgeting, courtroom technology and telecommunications design and installation, validation of GSA rent billings and space assignments, space and facilities project planning, personal property management, service level agreements with GSA, security in court facilities, and occupancy agreements. Court unit executives and staff from the 2nd Circuit participated in a pilot of the training program in September 2009.

In 2012, the judiciary plans to provide this training to all unit executives and staff, and those who were unable to participate during the initial training sessions offered to each of the circuits. The training program emphasizes the importance of monitoring and reducing space rental costs through innovative floor plans that exhibit smaller offices and workstations that use less space, where space and associated rental costs were reduced, and includes detailed methods for verifying space rental bills and overtime utilities charges.

Library Program Cost Containment

A major cost containment effort of the judiciary's library program has been well underway for several years, and has been highly successful in containing growth. While annual inflation rates from major law book vendors have exceeded six percent, the judiciary spent only three percent more in fiscal year 2011 on books than it did in fiscal year 1999. Librarians, working with judges, continue to reduce collections and purchase only the most essential resources. Nationally, law books spending has been declining. Due to cost containment initiatives and in anticipation of future savings, the law books budget will be reduced in fiscal year 2013.

In September 2010, the Judicial Conference approved cost saving recommendations that arose from a study on libraries. The recommendations included (1) establishing guidelines to discourage maintaining subscriptions to regional reporters, state case law reporters, and specialty reporters in libraries; (2) advising circuit librarians to consider significantly reducing the number of subscriptions to the federal reporters in staffed libraries, especially

West's Federal Supplement; (3) establishing guidelines to discourage subscriptions to case law reporters for newly appointed and existing judges; and (4) requesting circuit librarians to conduct a comprehensive assessment of usage and the need for headquarters and satellite libraries. The study also requested that the circuit judicial councils working with circuit librarians, library committees, and relevant judges, review satellite libraries to assess the continuing need for each library. During fiscal year 2011, the librarians and each circuit judicial council completed assessments of the need for existing satellite libraries, as well as the law book collection in each library.

Information Technology Service-Delivery Alternatives

The judiciary leverages the use of information technology (IT) to automate business processes and maximize efficiency. For example, the judiciary's Case Management/Electronic Case Files (CM/ECF) system automated the paper intensive case filing process. The CM/ECF system is fully operational in appellate, bankruptcy, and district courts, the Court of International Trade and the Court of Federal Claims. This benefits not only the judiciary, but also the bar, public, and other government agencies that now have greater access to court information. Long-term efficiencies have been achieved as a result of the CM/ECF implementation.

The courts have begun working with the Administrative Office to develop a new case management system to replace the current one. This next generation system will be designed and implemented long before the current system is obsolete and thus helps to contain the cost of case processing in the future.

The bankruptcy courts continue to lead the way in the judiciary in making the best use of electronic filing. Nationally, bankruptcy courts process virtually all of their cases electronically. In addition, the courts have been enhancing efficiency through a combination of local management initiatives and court-developed automation innovations. For years, the bankruptcy clerks have been adopting new management techniques, developing and sharing best practices, and using the flexibility provided under budget decentralization to invest in automation solutions that save resources as well as improve quality and performance.

Consolidation of efforts to reduce the number of computer servers nationwide have resulted in savings and cost avoidances, while enhancing performance levels in some instances. This has recently led the courts in at least one circuit to begin formal sharing agreements where one court provides services to others throughout the circuit (e.g, cloud computing, virtualized servers, contracting officers, case administration workload distribution, etc.).

The judiciary continues its efforts to identify and implement more cost-effective ways of managing its IT resources. For example, the data communications network (DCN) has been upgraded with a focus on converged services (i.e., combining voice, video, and data traffic over a single, secure network) and is expected to result in improved services and future cost avoidance. The judiciary is now focusing on implementing a national telephone system for its telecommunications services. This service, while requiring an initial investment and ongoing

maintenance, reduces costs associated with maintenance or replacement of aging phone systems in the courts.

Also underway is the examination and development of potential incentives for courts to use standardized IT products to maximize economies of scale and other cost savings or cost avoidances. The judiciary is currently examining the possibility of centrally procuring software licenses or renewals and other IT equipment and services that could result in both cost savings and efficiencies for the courts.

The judiciary is also leveraging a wireless telecommunications expense management service to reduce the amount of time and money courts spend on the administration and support of mobile devices (such as auditing wireless plan invoices, resolving billing disputes, identifying and negotiating more affordable wireless service).

Records Management

In recent years, the judiciary, working with the National Archives and Records Administration (NARA), has sought to improve its records management program to ensure the preservation of historically significant case files and contain costs associated with the storage of records. A major milestone was reached in November 2010 when the Archivist of the United States signed the new schedule for civil case files, which was approved by the Judicial Conference in September 2010. At its September 2011 session, the Judicial Conference also approved proposed revisions to the retention schedules for bankruptcy and criminal case files and forwarded the revisions to the Archivist of the United States for ratification.

The new schedules retain the authority of judges and court staff to designate individual cases as permanent based on their historic significance, and all federal judges have been asked to do so as appropriate. In addition, there are a number of non-trial case files that are automatically designated permanent, based on their "nature of suit codes," the classification scheme used by the judiciary to identify the type of case. The schedules also preserve all cases filed before 1970 as well as docket sheets, judgments, and opinions from all cases regardless of trial status or nature of suit. All case file records from the courts of appeals are also permanently preserved. During this project, staff from NARA and the judiciary met with judges and clerks, legal scholars, and historians to appraise the records properly. They also reviewed case files in every suit code. Additionally, legal scholars and historians reviewed the appraisal. Finally, the schedules were published in the Federal Register for general public review and comment.

Upon implementation, the new schedules are expected to lower judiciary costs by approximately $3 million per year.

Criminal Justice Act (CJA) Electronic Vouchering (E-Vouchering) System

The judiciary is working toward implementing an electronic CJA voucher processing system to replace the current paper-based system. The current voucher review and payment system is very time and resource intensive for judges, court personnel, and CJA panel attorneys. The judiciary anticipates that moving to a paperless system will streamline the submission and review of CJA vouchers, improve efficiency and oversight by providing basic automatic checks and balances for claims, and, over time, reduce judiciary personnel costs. At this time, design of this system is underway, with the initial rollout scheduled to begin in January 2013.

### Work Measurement Roadmap

The judiciary has employed work measurement studies to develop staffing formulas for nearly 20 years as a means to (1) systematically determine the appropriate staffing levels; (2) provide empirical justification for budget requests; and (3) fairly and equitably allocate staff resources to the courts. In response to the current budget environment, and the inherent additional emphasis on cost containment, the Judicial Conference has endorsed an accelerated work measurement schedule utilizing more stringent analytical techniques to ensure reductions in staff requirements.

The accelerated schedule will deliver new staffing formulas for bankruptcy clerks' offices for use in the fiscal year 2013 financial plan and the fiscal year 2014 budget request. New formulas will be developed for district clerks offices and appellate court offices for use in the fiscal year 2014 and 2015 financial plans, respectively, and the following years budget request. The more stringent analytical techniques will incorporate best practices, shared services, benchmarks, performance standards, and efficiency incentives. The resulting formulas will provide tools for more precise staff allocations based on court size and case types.

### Telephone Interpreting Program (TIP)

The Telephone Interpreting Program (TIP) was established to provide remote interpretation in short court proceedings where certified or otherwise qualified interpreters are not locally available. TIP reduces the need for an interpreter to travel to distant court locations and sometimes having to travel across country, and allows an interpreter to provide service for multiple proceedings at multiple locations in the same day. TIP usage increased more than 25 percent in fiscal year 2011 and the total estimated savings by telephone interpreting in fiscal year 2011 was over $1.4 million. It is estimated that $10.6 million has been saved in travel and contract costs as a result of the TIP program from fiscal year 2001 through fiscal year 2011.

### Fiscal Year 2013 Request

The appropriation request for the Salaries and Expenses account totals $5,154,153,000 for fiscal year 2013, including $5,354,000 for the Vaccine Injury Trust Fund. This is a 2.7 percent increase over the fiscal year 2012 appropriation of $5,020,000,000.

In addition to appropriated funds, the Salaries and Expenses account utilizes other funding sources (excluding slippage) to offset its appropriation requirements, including current year fee collections, carryover of fee balances from the prior year, and no-year appropriation balances. The judiciary projects that these sources of non-appropriated funds will total $340.3 million in fiscal year 2013, $26.2 million less than the $366.5 million utilized in the fiscal year 2012 obligation level.

### Justification of Changes

The changes requested in the fiscal year 2013 budget request are divided into two sections: adjustments to base increases and program increases.

Adjustments to base, totaling $132.4 million (99 percent of the requested increase) are for:

- increases in personnel costs ($64.8 million);
- General Services Administration (GSA) rent and related costs ($48.2 million);
- increases in filled Article III and Senior judgeships ($24.7 million);
- financing adjustments to replace non-appropriated sources of funds with appropriated funds ($26.2 million);
- other must-pay operations and maintenance costs ($6.7 million); and
- reductions to base requirements (-$38.2 million).

Program increases totaling $1.8 million (1 percent of the requested increase) are for:

- 3 new magistrate judges and associated staff ($1.8 million).

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

**Requested Increase: $132,350,000**

The following provides information and justification for each of the adjustments to base for the Salaries and Expenses account. This section is divided into three subsections: judges, court personnel and programs, and other adjustments. Each line item is identified in this section by a number that corresponds to the line items in the Fiscal Year 2013 Resource Requirements section on pages 5.3 through 5.4.

## A. JUDGES

### *1. Pay and benefit cost adjustments*

#### a. Proposed January 2013 pay adjustment

**Requested Increase: $1,652,000**

The Office of Management and Budget is projecting that the Employment Cost Index (ECI) will increase by an average of 0.5 percent beginning on or after January 1, 2013. The requested increase provides for the cost of nine months of the anticipated ECI increase for judges in fiscal year 2013.

Table 5.2 Salaries of U.S. Judges

| | 2012 | 2013* |
|---|---|---|
| Article III Judges | | |
| Court of Appeals | 184,500 | 185,400 |
| District Court | 174,000 | 174,900 |
| Article I Judges | | |
| U.S. Court of Federal Claims | 174,000 | 174,900 |
| Other Judicial Officers | | |
| Bankruptcy Judges | 160,100 | 160,900 |
| Magistrate Judges | 160,100 | 160,900 |

*Reflects an assumed 0.5% ECI increase in January 2013.

The Ethics Reform Act of 1989 as amended, includes a formula which provides that for 2013, Federal Judges (the Vice President, Members and Executive Schedule officials) are eligible to receive up to a 0.5 percent Employment Cost Index (ECI) pay adjustment effective January 2013. The ECI is published quarterly by the Bureau of Labor Statistics, and it measures changes in wages and salaries.

Under the Ethics Reform Act, the Judges' (the Vice President's, Members' and Executive level employees') annual ECI pay adjustment cannot exceed (but may be lower than) the General Schedule civilian employees' ECI across-the-board pay adjustment. The President's 2013 budget request includes a 0.5 percent pay adjustment for civilian employees. Consequently the judiciary's 2013 budget request includes a 0.5 percent judges ECI.

For purposes of estimating fiscal year 2013 requirements, first the amount of the General Schedule employees' pay adjustment is determined, which happens automatically and would be 0.5 percent unless the Congress chooses to deviate from the amount included in the President's budget. The President must next decide how to divide the total pay adjustment for General Schedule employees between an ECI across-the-board pay adjustment and a locality-based pay increase. The President usually makes this decision in December, and it is not until then that we will know the actual amount of the judges' (the Vice President's, Members' and Executive level employees') annual ECI pay adjustment. The judiciary will update its fiscal year 2013 request once the fiscal year 2013 pay adjustment for General Schedule employees has been addressed.

#### b. Benefit increases

**Requested Increase: $2,076,000**

The requested amount includes $1.4 million to cover premium rate increases in Federal Employee Group Life Insurance (FEGLI) for qualified judges with Option B life insurance coverage (additional coverage above the basic FEGLI coverage) pursuant to 28 U.S.C. §604(a)(5).

Also an increase of $0.7 million in health benefit payments is required based on the Office of Personnel Management estimates that health benefit premium contributions will increase by 6.8 percent in January 2012, and 7.0 percent in January 2013. The requested increase annualizes the 2012 premium increase, and includes a nine-month provision for the anticipated fiscal year 2013 premium increase.

### 2. *Senior judges*

**Requested Increase: $15,694,000 FTE: 111**

Funding is requested in fiscal year 2013 for an additional 26 judges expected to take senior status. This request also funds associated chambers staff (85 FTE) to assist these judges. The request includes $4.9 million for the salaries and benefits of judges, $7.3 million for the salaries and benefits of supporting staff, and about $3.5 million for supporting costs such as law books, furniture, travel, supplies, and equipment.

Table 5.3 Senior Judges and Supporting Personnel

| | Additional FTE | Salaries and Benefits ($000) | Operations and Maintenance | Total ($000) |
|---|---|---|---|---|
| Judges Taking Senior Status (Staff Included) | 111 | 12,184 | 3,510 | 15,694 |

Under 28 U.S.C., an Article III judge has three options when leaving active service. Section 371(a) allows the judge to retire from office and receive an annuity for life equal to the salary in effect at the date of retirement. Section 372(a) allows the judge to retire on disability grounds, and provides that the judge receives the salary of the office for life after serving 10 years. Section 371(b) allows the judge to take senior status and to retain the office, but retire from regular active service. Senior status allows the judge to continue rendering substantial judicial service for a number of years, notwithstanding his or her retirement.

Table 5.4 Article III Senior and Retired Judgeship FTEs

| Fiscal Year | Avg. Senior, Disability, or Retired* |
|---|---|
| 1995 | 426 |
| 1996 | 435 |
| 1997 | 469 |
| 1998 | 481 |
| 1999 | 485 |
| 2000 | 490 |
| 2001 | 509 |
| 2002 | 514 |
| 2003 | 507 |
| 2004 | 515 |
| 2005 | 517 |
| 2006 | 524 |
| 2007 | 535 |
| 2008 | 532 |
| 2009 | 558 |
| 2010 | 567 |
| 2011 | 593 |
| Estimates | |
| 2012 | 602 |
| 2013 | 628 |

*Pursuant to 28 U.S.C. 371(a), 371(b), 372(a), and 373.

At the end of fiscal year 2011, 48 judges became eligible to retire; 46 more judges will become eligible in fiscal year 2012; and 50 in fiscal year 2013, for a total of 144 potential retirees. Of the 50 judges eligible to retire in fiscal year 2013, the judiciary estimates that 40 judges will either take senior status or retire, resulting in a net increase of 26 FTE over the 604 FTE funded in fiscal year 2012. Of this increase, 36 of the 40 are expected to be attributed to judges taking senior status who will continue to render substantial judicial service and thereby will retain some, if not all, of their present staff. Based on current information, the judiciary estimates that the judicial councils of the circuits will authorize staffing to support senior judges using the following average staffing factors: 1.5 and 1.13 law clerks for appellate and district judges, respectively; 0.9 and 0.7 secretaries for appellate and district judges, respectively; and 0.6 court reporters for each district judge.

*3. **Increase in average number of filled Article III judgeships***

**Requested Increase: $11,963,000 FTE: 77**

The fiscal year 2012 financial plan funds 758 FTE for the 845 authorized Article III appellate and district judges. Based on historical confirmation patterns, the judiciary projects 40 judges will be confirmed during fiscal year 2013, offset by the number of active judges who take senior status or retire. Thus, the judiciary anticipates the average number of filled Article III judgeships will increase by 13 FTE above the fiscal year 2012 funded levels.

This request will also fund 28 law clerks, 12 courtroom deputies, 14 secretaries and 10 court reporters associated with the 13 FTE increase in judges. This line item includes $2.5 million for the salaries and benefits of judges, $5 million for the salaries and benefits of supporting staff, and $4.5 million for supporting costs such as lawbooks, furniture, travel, supplies, and equipment.

Table 5.5 Active Article III Judgeship Vacancies

| Fiscal Year | Authorized Article III Judgeships | Average Vacancies | Avg. Number of Active Judges |
|---|---|---|---|
| 1995 | 816 | 63 | 753 |
| 1996 | 814 | 58 | 756 |
| 1997 | 814 | 90 | 724 |
| 1998 | 813 | 83 | 730 |
| 1999 | 813 | 66 | 747 |
| 2000 | 822 | 73 | 749 |
| 2001 | 832 | 94 | 738 |
| 2002 | 832 | 101 | 731 |
| 2003 | 847 | 71 | 776 |
| 2004 | 846 | 41 | 805 |
| 2005 | 845 | 41 | 804 |
| 2006 | 845 | 50 | 795 |
| 2007 | 845 | 50 | 795 |
| 2008 | 845 | 47 | 798 |
| 2009 | 845 | 68 | 777 |
| 2010 | 845 | 102 | 743 |
| 2011 | 845 | 94 | 751 |
| Estimates | | | |
| 2012 | 845 | 87 | 758 |
| 2013 | 845 | 74 | 771 |

***4. Non-recurring costs associated with filled fiscal year 2012 judges (Article III and Magistrate judges)***

**Requested Decrease: ($2,963,000)**

This line item non-recurs the one-time costs such as set-up costs for telephones, lawbooks, furnishings, courtrooms, and digital recorders associated with new judges in fiscal year 2012.

Table 5.6 Summary of Judicial Officers

| | Article III & Bankruptcy Judges (Mandatory Costs) | | | | | | Claims & Magistrate Judges | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | FY 2012 | | | FY 2013 | | | FY 2012 | | | FY 2013 | | |
| | Authorized Positions | FTE | ($000) | Authorized Positions | FTE | ($000) | Authorized Positions | FTE | ($000) | Authorized Positions | FTE | ($000) |
| Appellate Judgeships | 167 | 151 | 31,525 | 167 | 151 | 32,130 | | | | | | |
| District Judgeships | 678 | 607 | 118,758 | 678 | 620 | 121,106 | | | | | | |
| Senior/Retired | | 602 | 114,455 | | 628 | 119,797 | | | | | | |
| Bankruptcy Judgeships[1] | 351 | 344 | 64,546 | 351 | 344 | 65,005 | | | | | | |
| U.S. Court of Federal Claims | | | | | | | 16 | 16 | 3,362 | 16 | 16 | 3,428 |
| Magistrate Judgeships[2] | | | | | | | 621 | 558 | 107,926 | 624 | 561 | 109,602 |
| Total [3] | 1,196 | 1,704 | 329,284 | 1,196 | 1,742 | 338,037 | 637 | 574 | 111,288 | 640 | 577 | 113,030 |

[1] FTE include recalled bankruptcy judges.
[2] FTE include part-time and recalled magistrate judges.
[3] The fiscal year 2013 amount does not reflect the assumed 0.5% ECI increase in January 2013.

Table 5.7 U.S. Court of Federal Claims Judges

| Fiscal Year | Authorized Court of Fed. Claims Judgeships | Average Vacancies | Avg. No. Active Judges |
|---|---|---|---|
| 1996 | 16 | 1 | 15 |
| 1997 | 16 | 1 | 15 |
| 1998 | 16 | 4 | 12 |
| 1999 | 16 | 1 | 15 |
| 2000 | 16 | 0 | 16 |
| 2001 | 16 | 1 | 15 |
| 2002 | 16 | 4 | 12 |
| 2003 | 16 | 2 | 14 |
| 2004 | 16 | 0 | 16 |
| 2005 | 16 | 1 | 15 |
| 2006 | 16 | 0 | 16 |
| 2007 | 16 | 0 | 16 |
| 2008 | 16 | 0 | 16 |
| 2009 | 16 | 0 | 16 |
| 2010 | 16 | 0 | 16 |
| 2011 | 16 | 0 | 16 |
| Estimates | | | |
| 2012 | 16 | 0 | 16 |
| 2013 | 16 | 0 | 16 |

Table 5.8 Bankruptcy Judges (excludes recalled)

| Fiscal Year | Authorized Bankruptcy Judgeships | Avg. Vacancies | Avg No Active Judges |
|---|---|---|---|
| 1996 | 326 | 14 | 312 |
| 1997 | 326 | 13 | 313 |
| 1998 | 326 | 13 | 313 |
| 1999 | 326 | 15 | 311 |
| 2000 | 325 | 18 | 307 |
| 2001 | 324 | 12 | 312 |
| 2002 | 324 | 18 | 306 |
| 2003 | 324 | 18 | 306 |
| 2004 | 324 | 4 | 320 |
| 2005 | 324 | 12 | 312 |
| 2006 | 352 | 16 | 336 |
| 2007 | 352 | 12 | 340 |
| 2008 | 352 | 12 | 340 |
| 2009 | 352 | 17 | 335 |
| 2010 | 352 | 19 | 333 |
| 2011 | 351 | 14 | 337 |
| Estimates | | | |
| 2012 | 351 | 14 | 337 |
| 2013 | 351 | 14 | 337 |

Table 5.9 Magistrate Judges (Full-Time)

| Fiscal Year | Authorized Magistrate Judgeships | FTE |
|---|---|---|
| 1998 | 429 | 421 |
| 1999 | 436 | 431 |
| 2000 | 447 | 436 |
| 2001 | 456 | 452 |
| 2002 | 470 | 462 |
| 2003 | 477 | 464 |
| 2004 | 487 | 488 |
| 2005 | 495 | 490 |
| 2006 | 500 | 496 |
| 2007 | 503 | 492 |
| 2008 | 505 | 504 |
| 2009 | 508 | 500 |
| 2010 | 517 | 506 |
| 2011 | 523 | 511 |
| Estimates | | |
| 2012 | 528 | 517 |
| 2013 | 531 | 520 |

## B. COURT PERSONNEL AND PROGRAMS

### *5. Pay and benefit cost adjustments*

#### a. Proposed January 2013 pay adjustment

**Requested Increase: $11,659,000**

As of January 2012, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 0.5 percent beginning on or after January 1, 2013. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2013.

#### b. Promotions and within-grade increases

**Requested Increase: $23,555,000**

The requested increase provides for promotions and within-grade increases for personnel. The salary plan for judicial support personnel provides for periodic within-grade increases for staff who receive at least a satisfactory performance rating.

#### c. Benefit increases

**Requested Increase: $13,634,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 6.8 percent in January 2012 and January 7.0 percent in 2013. The requested increase annualizes the 2012 premium increase, and includes a nine-month provision for the anticipated fiscal year 2013 premium increase and other changes.

#### d. One more compensable day

**Requested Increase: $12,112,000**

There is one more compensable day in fiscal year 2013 than in fiscal year 2012. This request increases personnel compensation and benefits expenses associated with one more compensable day.

### *6. Funding necessary to maintain fiscal year 2012 service levels due to an anticipated decline in non-appropriated funds*

**Requested Increase: $26,241,000**

In addition to appropriations from Congress, the judiciary relies on other funding sources to finance its requirements. These non-appropriated funds include current year fee collections, carryforward of fee balances from the prior year, no-year appropriation balances, and Judiciary Information Technology Fund balances. The use of these funds allows the judiciary to reduce its appropriations request on a dollar-for-dollar basis. The judiciary's fiscal year 2013 appropriation request of $5.2 billion reflects a projected availability of $340.3 million in these non-appropriated funds. Without these funds, the judiciary's request in appropriations would have totaled over $5.5 billion.

While the use of these funds benefits the judiciary (and reduces the need for appropriated funds), the amounts available fluctuate year-to-year due to changes in filing fee collections, changes in unobligated balances from prior years, etc. If total non-appropriated funds in the budget year exceed the total non-appropriated funds in the prior year, the budget year's appropriations request can be reduced further. However, if

total non-appropriated funds in the budget year are lower than the total non-appropriated funds in the prior year, appropriations are needed to replace those "lost" non-appropriated funds in order to maintain a current services level of obligations.

The fiscal year 2012 obligation level assumes that new fee collections and prior-year carryforward from fiscal year 2011 will total $366.5 million. The fiscal year 2013 request estimates that fee collections and prior-year carryforward will total $340.3 million, a net decrease of $26.2 million from the $366.5 million available in fiscal year 2012 to help finance court operations. This is displayed in Table 5.10 below. The judiciary requests appropriated funds for fiscal year 2013 to replace these non-appropriated funds in order to maintain the same level of services as provided in fiscal year 2012.

The judiciary's estimates for non-appropriated funds typically fluctuate during the fiscal year. Administrative Office staff will update the appropriations subcommittee staff on changes in non-appropriated funding levels during fiscal year 2012.

Table 5.10 Non-Appropriated Sources of Funding

| ($000) | FY 2012 Plan | FY 2013 Request | Difference |
|---|---|---|---|
| Fee Collections | 244,813 | 260,259 | 15,446 |
| Other Carryforward | 121,687 | 80,000 | (41,687) |
| **Total, Non-Appropriated Sources of Funding, Excluding Slippage** | **366,500** | **340,259** | **(26,241)** |

## C. OTHER ADJUSTMENTS

### 7. *Inflationary Adjustments*

**Requested Increase: $6,359,000**

Consistent with guidance from the Office of Management and Budget, this request of $6.4 million is required to fund inflationary increases of 1.6 percent for operating expenses such as travel, utilities, printing, contractual services, supplies and materials, and furniture and equipment.

### 8. *Vaccine Injury Compensation Trust Fund Adjustment*

**Requested Increase: $354,000**

The National Childhood Vaccine Injury Act of 1986 (42 U.S.C.§300aa) created a special fund to pay judgments awarded under the Act. The Vaccine Act also created the Office of Special Masters (OSM) within the United States Court of Federal Claims to hear vaccine injury cases and further stipulates that up to eight special masters may be appointed for this purpose. The special masters' expenditures are reimbursed to the judiciary for Vaccine Injury cases from a special fund set up under the Vaccine Act.

For fiscal year 2013, the judiciary requests $5,354,000 from the Vaccine Injury Compensation Trust Fund, an increase of $354,000 expected to be received from the Trust Fund in fiscal year 2013. The additional $354,000 requested is for standard pay and non-pay inflationary adjustments.

### 9. *GSA space rental and related services*

**Requested Increase: $48,180,000**

The judiciary requests a net increase of $48.2 million in fiscal year 2013 for General Services Administration (GSA) rent and related services. This net increase is made up primarily of: (a) annualization of new space delivered in fiscal year 2012 (+$10.7 million), (b) inflationary increase in GSA Rent costs (+$13.3 million), (c) new space to be delivered in fiscal year 2013 (+$36.3 million), and (d) other space-related adjustments (-$12.1 million). Table 5.11 on page 5.34 summarizes the funding request for GSA space rental.

#### a. Annualization of new space delivered in fiscal year 2012

**Requested Increase: $10,682,000**

In fiscal year 2012, the judiciary anticipates that 212,543 additional rentable square feet related to prospectus projects (projects estimated to cost $2.79 million or more in 2012) will be occupied by the courts of appeals, district courts, bankruptcy courts, and probation and pretrial services offices. Funding for a full year's rent is not included in the fiscal year 2012 level because this new space will be added to the space inventory at various times during the fiscal year. The requested increase of $10.7 million is based on projected occupancy dates and rental rates provided by the GSA. Table 5.12 on page 5.35 identifies the specific prospectus projects that GSA plans to deliver in fiscal year 2012. The annualization amount requested is the difference between the partial-year cost in fiscal year 2012 for prospectus projects, and the full year cost to be incurred in fiscal year 2013.

#### b. Inflationary increase in GSA rent costs

**Requested Increase: $ 13,274,000**

This request represents a 1.37 percent inflationary increase in the cost of GSA space rental and maintenance of facilities occupied by the courts for fiscal year 2013. This increase is based on rent estimates computed by GSA and provided to the judiciary.

#### c. New space to be delivered in fiscal year 2013

**Requested Increase: $36,312,000**

An increase of 727,720 rentable square feet of new space is expected to be added to the judiciary's inventory in fiscal year 2013. The estimated rent cost of this new space is based on occupancy dates and rent costs estimated by GSA.

#### d. Other space-related adjustments

**Requested Decrease: ($12,088,000)**

A net decrease of -$12.1 million will be made for space related adjustments. This includes an increase in tenant alterations funding for non prospectus projects ($10.5 million): an increase to provide funding to match rent credits for space courts have previously vacated and released to GSA ($1.2 million), a reduction in cyclical maintenance allotments to courts (-$12.7 million); an increase for restoration of reductions to relocation and funds and furniture adjustments ($0.2 million); a reduction in tenant alteration allotments to the courts (-$6.2 million); a reduction in GSA rent due to possible delays in completion of projects (-$5.1 million). Table 5.13 on page 5.36 lists the rent costs for prospectus projects that are anticipated to be occupied during fiscal year 2013.

**Table 5.11 Fiscal Year 2013 GSA Space Rental Increase**

| **Fiscal Year 2012 Base:** | Square Feet of Space | Avg. Cost per Square Ft.* | Amount in $000 |
|---|---|---|---|
| **Space occupied at start of year:** | 39,467,416 | | $996,196 |
| Estimated new space to be delivered in Fiscal Year 2012 | 212,543 | | $10,851 |
| Reduction in rent approved by the Judicial Conference | | | ($15,000) |
| Funding for tenant improvements to space requested by courts | | | $22,563 |
| **Total, Fiscal Year 2012** | 39,679,959 | $25.57 | $1,014,610 |
| **Fiscal Year 2012 Increase:** | | | |
| Increase in rent for estimated inflation at 1.37 percent | | | $13,274 |
| Annualization of new space assigned in Fiscal Year 2012 | | | $10,682 |
| **Subtotal, FY 2013 with Annualized Fiscal Year 2012 New Space** | 39,679,959 | $26.43 | $1,038,566 |
| **Space to be delivered in fiscal year 2013:** | | | |
| Estimated new space to be delivered in Fiscal Year 2013 | 727,720 | | $36,312 |
| Estimated reduction in rent due to project delays in fiscal year 2013 | | | ($5,199) |
| Rent reduction funding credit for courts to reinvest | | | $1,246 |
| Increase in funding for tenant improvements | | | $10,511 |
| **Total, Fiscal Year 2013 Budget Request** | **40,407,679** | $27.18 | **$1,081,436** |
| **Fiscal Year 2013 Increase** | **727,720** | | **$66,826** |

***The fiscal year average cost per square foot includes the annualization of rent costs for space added in the succeeding fiscal year.**

**Table 5.12 Space to be delivered in fiscal year 2012 - Prospectus projects, displayed in order of GSA estimated delivery dates**

| City | State | Net Added Square Feet to be Delivered | Estimated Occupancy | Fiscal Year 2012 Rent for | Fiscal Year 2013 Rent Cost | Total Annual Rent |
|---|---|---|---|---|---|---|
| Buffalo | New York | 53,490 | 12/30/2011 | $6,641,943 | $1,328,389 | $7,970,332 |
| Ft. Pierce | Florida | 31,919 | 1/31/2012 | $1,523,895 | $304,779 | $1,828,674 |
| Chicago | Illinois | 30,000 | 4/26/2012 | $1,744,858 | $2,442,802 | $4,187,660 |
| Bakersfield | California | 9,623 | 5/8/2012 | $317,470 | $444,458 | $761,929 |
| Bangor | Maine | 6,988 | 6/1/2012 | $75,382 | $139,666 | $215,048 |
| Austin | Texas | 80,523 | 9/1/2012 | $547,421 | $6,021,630 | $6,569,051 |
| **Total** | | **212,543** | | **$10,850,970** | **$10,681,724** | **$21,532,694** |

[1]Buffalo, NY moved into the new space in December 2011.

Table 5.13 Space to be delivered in fiscal year 2013 - Prospectus projects, displayed in order of GSA estimated delivery dates

| City | State | Net Added Square Feet to be Delivered | Estimated Occupancy | Fiscal Year 2013 Rent for New Space | Fiscal Year 2014 Rent Cost | Total Annual Rent |
|---|---|---|---|---|---|---|
| Billings | Montana | 38,784 | 10/1/12 | $2,442,715 | $0 | $2,442,715 |
| Orlando | Florida | 33,678 | 10/1/12 | $634,614 | $0 | $634,614 |
| Cedar Rapids | Iowa | 63,626 | 10/2/12 | $5,240,442 | $0 | $5,240,442 |
| New York | New York | 400,470 | 11/1/12 | $17,169,427 | $1,560,857 | $18,730,284 |
| Tuscaloosa | Alabama | 21,515 | 12/1/12 | $1,467,378 | $293,476 | $1,760,854 |
| San Diego | California | 153,848 | 2/1/13 | $8,211,149 | $4,105,575 | $12,316,724 |
| Yuma | Arizona | 15,799 | 6/1/13 | $1,146,519 | $573,260 | $1,468,772 |
| **Total** | | **727,720** | | **$36,312,244** | **$6,533,168** | **$42,845,412** |

***10. Reductions to base requirements***

**Requested Decrease: ($38,166,000)**

A decrease of $38.2 million is requested due to efforts to lower base requirements for information and technology projects in fiscal year 2013.

**D. PROGRAM INCREASES**

***11. New fiscal year 2013 full-time magistrate judges and staff***

**Requested Increase: $1,803,000 FTE: 12**

The judiciary requests an additional $1.8 million for 3 additional magistrate judges (3 FTE), 9 support staff (9 FTE), and associated operating costs. Because of the critical need for these positions, all three judgeships are "accelerated;" thus, a full-year's funding is assumed for these magistrate judgeships in fiscal year 2013.

Table 5.14 Cost of Additional Magistrate Judges

| | Positions | FTE | Total Request ($000) |
|---|---|---|---|
| New Full-Time Magistrate Judges | 3 | 3 | 600 |
| Supporting Personnel | 9 | 9 | 702 |
| Operating Expenses | | | 501 |
| **Total** | **12** | **12** | $1,803 |

The Judicial Conference authorizes new magistrate judge positions based upon an individualized showing of need by the requesting district courts. The Conference takes into account all relevant factors in its deliberations on magistrate judge position requests, including the number and locations of authorized district judges. In evaluating requests for full-time magistrate judge positions, the Conference generally considers: (1) the comparative need of the district judges for the assistance of magistrate judges and the overall workload of the district court; (2) the commitment of the court to the effective utilization of magistrate judges; and (3) the availability of sufficient work of the type that the district judges wish to assign to magistrate judges to justify the authorization of additional full-time positions. Consideration also is given to the geographical areas and population to be served, convenience to the public and bar, the rights of criminal defendants to prompt court proceedings, the number and extent of federally administered lands in the district, transportation and communication facilities, and other pertinent local conditions. As an alternative to authorizing additional full-time magistrate judge positions, the feasibility of using recalled magistrate judges is explored with individual district courts in response to their requests for additional magistrate judge positions.

Table 5.15 Full-time Magistrate Judges

| Fiscal Year | Number of Authorized Magistrate Judges | FTE |
|---|---|---|
| 2002 | 470 | 462 |
| 2003 | 477 | 464 |
| 2004 | 487 | 488 |
| 2005 | 495 | 490 |
| 2006 | 500 | 496 |
| 2007 | 503 | 492 |
| 2008 | 505 | 504 |
| 2009 | 508 | 500 |
| 2010 | 517 | 506 |
| 2011 | 523 | 511 |
| 2012 | 528 | 517 |
| 2013 (estimated) | 531 | 520 |

Based on the criteria described above, the Judicial Conference has authorized additional magistrate judge positions in the following locations[3]:

- Wilmington, DE (accelerated)
- Durham, NC-M (accelerated)
- Orlando or Tampa, FL-M (accelerated)

[3]Positions approved by the Judicial Conference in September 2011 (accelerated positions require 12 months of funding in fiscal year 2013)

**Wilmington, Delaware (4 FTE)**

Before authorization of the new position, the District of Delaware was authorized two full-time magistrate judge positions to serve four district judges. The court's total weighted caseload per judgeship has increased significantly over the past five years from 367 in 2006 to 550 in 2010. The rising number of patent filings in the court has continued to push up its total weighted filings per judgeship. In 2010 the court ranked first in the nation in patent filings per judgeship (68) and second in total patent case filings (273). The district's civil filings increased 24 percent in the last five years, from 930 in 2006 to 1,156 in 2010. Copyright/patent/trademark case filings increased 76 percent from 160 in 2006 to 282 in 2010. Increases were also seen in contracts (68 percent), torts (29 percent), and social security appeals, which more than doubled since 2006 with much of the increase occurring in 2010.

The magistrate judges are an integral part of the district court and the positions have been used effectively. The court's utilization of its magistrate judges has focused on alternative dispute resolution. Virtually all civil cases are referred to the magistrate judges for settlement conferences or other ADR proceedings. In addition to a large number of settlement conferences, the magistrate judges have reported an increasing number of case-dispositive motions and a modestly growing civil consent caseload. The magistrate judges handle the court's felony preliminary proceedings and misdemeanor and petty offense dockets.

A third magistrate judge position raises the ratio from 1:2.0, well below the national average of 1:1.3.

**Durham, North Carolina (4 FTE)**
Before authorization of the new position, the Middle District of North Carolina was authorized two full-time magistrate judges and one recalled magistrate judge to serve four district judges and one senior judge. Two district judges and the senior judge are located in Greensboro and two district judges are located in Winston-Salem. One full-time magistrate judge is located in Greensboro and one is located in Winston-Salem. The recalled magistrate judge at Durham had been in that location for nearly ten years. The Judicial Conference authorized one additional magistrate judge position at Durham in September 2011. Authorization of the additional position establishes a 1:1.3 ratio of magistrate judges to district judgeships, the national average.

The court requested one new full-time magistrate judge position at Durham for use in a manner similar to the court's current full-time magistrate judges and the recalled magistrate judge who retired in October 2011. While the court's per judgeship caseload in 2010 ranked below most other courts, including case terminations per judgeship, it ranked above most courts in felony filings per judgeship and trials completed per judgeship. Until recently, the court was classified as a congested court due, in part, to a vacant judgeship that was filled in December 2010. With the low ratio of magistrate judges to district judges, the court has been helped considerably by the assistance of the recalled magistrate judge. The magistrate judges, including the recalled magistrate judge at Durham, are utilized effectively to provide significant assistance to the court, performing a broad range of civil and criminal duties. They share equally in all civil case assignments and are responsible for most of the court's felony preliminary proceedings as well as the misdemeanor/petty offense cases that arise in the district. The court's overall workload, its below average ratio of magistrate judges to district judgeships, and its commitment to the effective utilization of magistrate judges suggest that the additional magistrate judge position is warranted. The long-term recalled magistrate judge established a much-needed judicial presence in Durham, and a full-time magistrate judge meets the need for a judicial officer there.

**Orlando or Tampa, Florida (4 FTE)**
Before authorization of the new position, the Middle District of Florida was authorized 15 full-time magistrate judges to serve 15 authorized district judgeships. The district judgeships are located in four of the district's five locations, and the full-time magistrate judges are located in all five of the district's locations – five in Tampa, four in Jacksonville, three in Orlando, two in Fort Myers, and one in Ocala. Authorization of one additional full-time magistrate judge position results in a 1:0.9 ratio of magistrate judges to district judgeships. Although above the national average, it is justified by the court's heavy caseload.

The court established a clear need for additional judicial assistance. The court has an extremely heavy per judgeship caseload, ranked significantly above the national averages in most categories in 2010. The court remains among the busiest in the nation, ranked tenth in weighted caseload in 2010. The large caseload confronted by the district led the Judicial Conference at its March 2011 session to recommend establishment of five new permanent district judgeships and one temporary judgeship for the district.

The district's full-time magistrate judges are busy and heavily utilized. In Orlando, a 46 percent increase in felony filings over the last five years has had a significant impact on the criminal duty assignment, which is shared among the three magistrate judges there. The district has the second largest social security caseload in the nation, and the numbers of these cases are especially high in Orlando and Tampa. All social security appeals are automatically assigned to the magistrate judges, and a significant portion of these are handled with the consent of the parties.

There is ample work to support a fourth full-time magistrate judge position in Orlando. Although the court foresees an increase in workload in Tampa, the workload currently does not support a new magistrate judge position there. However, the new position is designated as "Orlando or Tampa" to give the court flexibility in deciding the duty station of the position in the future. The new position establishes a 1:1 ratio of active district judges to magistrate judges in Orlando (1:0.9 overall), and it improves the court's ability to adapt to the demands of the heavy criminal caseloads there.

### *14. Estimated Fiscal Year 2013 Fee Collections*

**Estimated funds available: $260,259,000**

Congress has authorized the judiciary to collect fees for civil and bankruptcy filings as well as fees for a variety of case services, including registry account administration and miscellaneous court case administration costs. A portion of the fees collected by the courts are deposited into a special fund maintained by the Department of Treasury and may be used to reimburse any of the four appropriations within the *Courts of Appeals, District Courts, and Other Judicial Services* heading, as well as the Administrative Office of the United States Courts, for expenses incurred. These fees are available without fiscal year limitation. The judiciary estimates that $260.3 million in revenue from these sources will be available in fiscal year 2013 to finance requirements in the Salaries and Expenses account, an increase of $15.4 million from the $244.8 million estimated to be available in fiscal year 2012. The judiciary will continue to monitor bankruptcy filings throughout fiscal year 2012 and will advise the appropriations subcommittee staffs of changes in the forecasts.

Table 5.16 lists offsetting receipts by type and displays the amounts collected in fiscal year 2011. Estimates for fiscal year 2012 and fiscal year 2013 are also provided. The judiciary will advise appropriations subcommittee staffs of changes to these estimates.

Table 5.16 Offsetting Receipts from Collections

| Type of Collection and Source | FY 2011 Actual Collections ($000) | FY 2012 Estimated Collections ($000) | FY 2013 Estimated Collections ($000) |
|---|---|---|---|
| ***Fees*** | | | |
| Registry Administration Fees | 489 | 700 | 1,000 |
| Bankruptcy Filing and Misc. Fees[1] | 208,308 | 203,928 | 219,520 |
| Civil Filing and Misc. Fees[2] | 42,209 | 43,270 | 42,962 |
| Central Violations Bureau Fees | 5,485 | 4,900 | 5,275 |
| Immigration Adjudication and Naturalization Fees | 5,147 | 4,900 | 5,200 |
| **Subtotal, Fees** | **261,638** | **257,698** | **273,957** |
| **Fee allocation to Administrative Office[3]** | **(13,082)** | **(12,885)** | **(13,698)** |
| **TOTAL TO SALARIES & EXPENSES** | **248,556** | **244,813** | **260,259** |

[1] Includes statutory bankruptcy filing fees and bankruptcy court miscellaneous fees.
[2] Includes statutory civil filing fees and appellate court and district court miscellaneous fees.
[3] Based on Judicial Conference policy, up to 5 percent of total fees collected may be used to support Administrative Office requirements.

### *15. Anticipated Unencumbered Carryforward From Fiscal Year 2012 into Fiscal Year 2013*

**Estimated funds available: $80,000,000**

The judiciary estimates that $80.0 million will be available through anticipated savings to carry forward into fiscal year 2013 and offset the fiscal year 2013 appropriation request for the Salaries and Expenses account. Savings generally are available due to fewer than projected Article III judicial confirmations, resulting in salary and benefit savings for vacant judgeships and associated staff; slippages in GSA space delivery schedules that reduce space rental and furniture expenses; and unobligated funds returned from the nearly 400 court units throughout the judiciary.

The judiciary will advise appropriations subcommittee staffs of changes to this estimate.

# APPENDIX 1 - COURT SUPPORT STAFFING

This appendix discusses court support staffing for the courts of appeals, district and bankruptcy courts, and for probation and pretrial services offices. It also includes an explanation of the staffing formulas the judiciary uses to determine staffing requirements in the courts, a program statement explaining the purpose and function of these programs, and the importance of receiving adequate funding in fiscal year 2013 for these programs.

*Judiciary Staffing Formulas*

The judiciary has employed work measurement for nearly twenty years to determine its staffing requirements, to enable it to justify funding requests for staffing to Congress, and to provide a reliable tool to allocate staffing resources equitably across court types and individual court units. Though the methodology has changed over the years, work measurement's primary purpose remains to bring an empirically-based and practical approach to staffing allocation.

The formulas provide a valuable methodology to determine the level of funding necessary to keep pace with increasing or decreasing workload. As workload fluctuates from year to year, the application of the formulas allows for a corresponding increase or decrease in staffing allocations. This applies both for national formulation purposes by court program type, and at the individual court level for allocation purposes. The formula requirements are based on actual filings, not projected filings.

The staffing formulas are updated periodically to incorporate efficiencies derived from information technology initiatives, best practices, and other process improvements. This work measurement methodology uses a combination of core modeling and other measurement techniques that better reflect the courts' full staffing requirements. The staffing formulas are based on court-reported data and validated through simultaneous measurement by the Administrative Office. New staffing formulas for district and bankruptcy clerks' offices are underway. The new formulas will incorporate best practices, shared services, benchmarks, performance standards, and efficiency incentives. The update to the district and bankruptcy clerks' offices' staffing formulas offers an opportunity for significant emphasis on cost containment.

As a cost containment policy, the judiciary uses alternative staffing formulas to determine its court support staffing requirements. These alternative formulas no longer utilize the average time to complete a task, but instead give more credit to courts which perform those tasks faster than the average. This has the effect of limiting the number of additional staff contained in the judiciary's budget request.

*Fiscal Year 2013 Court Support Staffing Requirements*

In fiscal year 2013, the FTE request totals 21,322 FTE, an increase of 0.1 percent over the fiscal year 2012 estimated level of 21,300 FTE. The additional 22 FTE are for court reporters associated with changes in active and senior judges. The request is a current services budget and provides no program increases or workload increases, such as additional court staff needed in fiscal year 2013 because of increased caseload in the courts.

The fiscal year 2013 staffing build is summarized in Table A-1.1 below.

Table A-1.1 Fiscal Year 2013 Staffing Build

| | Court Support Staffing (FTEs) |
|---|---|
| FY 2012 Financial Plan Funded FTE | 21,300 |
| Adjustments for court reporters associated with changes in active and senior judges | 22 |
| **FY 2013 Funded FTE** | **21,322** |

Information supporting each of the courts programs (bankruptcy courts, probation and pretrial services, district courts, and appellate courts) is presented in the following sections.

## Bankruptcy Courts

Table A-1.2 Major Bankruptcy Court Workload Indices[1]

| | 2010 Actual | 2011 Actual | 2012 Estimate |
|---|---|---|---|
| Bankruptcy Filings | 1,572,597 | 1,529,560 | 1,361,400 |

[1]For the 12-month periods ending June 30.

## Program Function Statement

Funding for the federal bankruptcy program is used for salaries and expenses of all active United States bankruptcy judges and supporting personnel as well as for expenses of operations and maintenance. These expenses include communication, printing, contractual services, supplies, equipment, and travel costs incurred by judges and supporting personnel in attending sessions of court or transacting other official business.

**Bankruptcy Clerks**

The bankruptcy court clerks' offices serve a critical support role in processing bankruptcy matters. Their work includes: receiving and scanning petitions, schedules, pleadings and other documents; training attorneys, trustees and creditors to use the Case Management/Electronic Case Files (CM/ECF) system; reviewing electronically filed documents for accuracy and compliance with national and local rules, and taking corrective action as necessary; issuing summonses and subpoenas; processing motions; responding to inquiries from the public and other government agencies for case information; maintaining case dockets; assigning cases to judges; creating notices to be sent to attorneys, debtors, and creditors; receipting and registering claims; scheduling hearings on motions, confirmation and other matters; issuing judgments; recording court proceedings; archiving closed case files; coordinating with the United States trustees and panel trustees; reporting statistics; scheduling and regulating the movement of cases; establishing motion and trial calendars; scheduling courtroom usage, providing court reporting/recording services and courtroom clerical staff; and maintaining the electronic filing system to enable cases to progress through the judicial system. Staffing resources are allocated based on a work measurement formula that converts specific tasks into work years.

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) added responsibilities, especially those related to means testing, credit counseling and financial management courses, new chapter 13 and dismissal requirements, additional noticing, and applications for fee waivers. A work measurement study conducted after 2005 shows that BAPCPA added between 20 and 30 percent to the case processing workload for bankruptcy clerks' offices.

The clerk of court serves as the chief administrative and financial officer for the court, and is responsible to the court, the United States government, and litigants for the proper collection, maintenance, and accounting for funds that come into the clerk's office. The clerk's office is authorized to collect all fees, costs, and other monies for the bankruptcy court and is accountable for their payment to the United States Treasury. The clerk's staff also manages the planning and execution of the court's budget and financial processes.

## Workload Trends

A number of factors contribute to the workload in bankruptcy courts. Three of the major factors are the number of cases filed, the complexity of the cases, and the increase in pro se filings. The state of the economy and the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), are pivotal drivers of these factors.

**Case Filings**
Bankruptcy filings grew through the mid-1990s surpassing one million each year beginning in 1996 and reaching an all-time high in October 2005, just prior to the effective date of BAPCPA. In anticipation of the changes that BAPCPA would bring, filings increased significantly prior to the October 15, 2005 implementation date. Nationally, filings dropped by half in the following year. However the decrease did not last long, with filings increasing rapidly and reaching pre-BAPCPA levels as economic conditions worsened in the last few years. Since bankruptcy filings tend to continue even after the economy recovers, the judiciary expects them to continue at high levels for some time. In this environment bankruptcy courts are handling nearly the same number of cases in the more complicated post-BAPCPA environment as they did pre-BAPCPA.

**Case Complexity**
A second major aspect of the workload in bankruptcy courts (compounding the high filing level) is the impact of BAPCPA on case processing requirements. The law's additional requirements add substantially more work for the courts. For example, the law requires individual filers to receive a credit counseling briefing by an approved agency before filing for bankruptcy, and complete and pass a complex "means test" in order to be eligible for chapter 7 relief. Also, filers under chapters 7 and 13 may not receive a discharge of their debts unless they have completed an approved financial management course. These and other enhanced requirements must be reviewed by the clerk's office, which must take further action if the filers do not meet the requirements. A graphic example of the increased complexity comes from a bankruptcy clerk's office that reported the more complicated cases after BAPCPA require 47 percent more docket entries per case than before BAPCPA. In addition, that court's 2011 case filings have grown by 70 percent over its less complicated pre-BAPCPA caseload. This is a very typical report, and confirms the results of the work measurement study showing increased work per case in the post-BAPCPA environment, and demonstrates the synergistic effect of the high filing level on bankruptcy clerks' offices.

**Pro Se Filings**
Another factor adding to the workload of bankruptcy clerks' offices is the increased number and complexity of pro se filings. The clerk's office must provide assistance to pro se filers, and take more time reviewing materials prepared by individuals, rather than by lawyers who are bankruptcy experts.

## Cost Containment Efforts

Bankruptcy courts are exploring ways to share administrative and operational services with the goal of containing costs for these services, as compared to providing the same services in individual courts. There are a number of examples across the country of bankruptcy courts successfully sharing services with another individual court. This has recently led the courts in at least one circuit to begin formal sharing agreements where one court

provides services to others throughout the circuit (e.g., cloud computing, virtualized servers, contracting officer services, case administration workload distribution, etc.).

The bankruptcy courts continue to be aggressive in the use of electronic filing. Bankruptcy courts open and process virtually all of their cases electronically. In addition, the courts have been enhancing efficiency through a combination of local management initiatives and court-developed automation innovations. For years the bankruptcy clerks have been adopting new management techniques, developing and sharing best practices, and using the flexibility provided under budget decentralization to invest in automation solutions that save resources as well as improve quality and performance. Current staffing levels are several hundred staff below the levels in 2003 and 2004, even though current case filings are nearly as high as they were in those years, and the current cases are much more complex.

Since a major national system such as CM/ECF must be developed in stages and cannot address all requirements at once, courts have been developing and sharing local initiatives to enhance or extend the functionality of the system and address critical needs. These include cash receipting interfaces, automated case opening, electronic order processing, and calendaring/hearing scheduling programs.

In addition, the bankruptcy courts are working with the Administrative Office to develop a new case management system to replace the current one. This effort to develop a next generation system now ensures that the design and implementation will occur long before the threat of obsolescence of the current system occurs and thus helps to contain the cost of case processing in the future.

*Methods Analysis Program Adds to Efficiency*

To help ensure that all bankruptcy courts are knowledgeable about best case management practices, particularly as they relate to opportunities generated through electronic case filing, the Administrative Office coordinates with court personnel to continually refine the Methods Analysis Program. This program focuses on identifying and disseminating "best" and/or alternative practices for case management and court operations, such as quality control manuals, administrative procedures, guides, checklists, etc. In addition, the Administrative Office continues to sponsor CM/ECF operational practices forums that bring court personnel together to identify issues and exchange ideas for improvements.

Table A-1.3 Components of Bankruptcy Filings

| | Year Ending June 30 | Chapter 7 | Chapters 9, 11, 12, & 15 | Chapter 13 | Total | Adversaries Terminated or Filed[1] |
|---|---|---|---|---|---|---|
| ACTUAL[2] | 2003 | 1,165,993 | 11,475 | 472,811 | 1,650,279 | 71,831 |
| | 2004 | 1,167,101 | 11,453 | 457,171 | 1,635,725 | 90,061 |
| | 2005 | 1,196,212 | 7,097 | 433,945 | 1,637,254 | 95,177 |
| | 2006 | 1,164,815 | 6,670 | 313,085 | 1,484,570 | 84,772 |
| | 2007 | 450,332 | 6,031 | 294,693 | 751,056 | 65,099 |
| | 2008 | 615,748 | 7,662 | 344,421 | 967,831 | 51,496 |
| | 2009 | 907,603 | 14,525 | 384,187 | 1,306,315 | 51,738 |
| | 2010 | 1,133,320 | 15,035 | 424,242 | 1,572,597 | 68,540 |
| | 2011 | 1,083,671 | 13,556 | 432,333 | 1,529,560 | 77,562 |
| ESTIMATED | 2012 | 944,700 | 11,400 | 405,300 | 1,361,400 | 69,200 |

[1] Staffing Formulas changed from "adversaries terminated" to "adversaries filed" in spring of 2005. The data for that year and after reflect the change.

[2] Actual data for years 2003 through 2011 is based on the 12-month periods ending June 30.

## Probation and Pretrial Services

Table A-1.4 Probation and Pretrial Services Workload Indicators[1]

| | FY 2010 Actual (% Change from Previous Yr.) | FY 2011 Actual (% Change from Previous Yr.) | FY 2012 Projected (% Change from Previous Yr.)[2] |
|---|---|---|---|
| Convicted Offenders Supervised in the Community[3] | 178,475 (+2.9%) | 182,453 (+2.2%) | 186,400 (+2.2%) |
| Charged Defendants Supervised in the Community | 53,267 (-2.9%) | 54,189 (+1.7%) | 54,600 (+0.8%) |
| Investigative Reports Completed for Bail Determinations | 110,671 (+6.8%) | 107,197 (-3.1%) | 110,000 (+2.6%) |
| Investigative Reports Completed for Sentencing Determinations | 75,355 (+6.0%) | 77,276 (+2.5%) | 80,200 (+3.8%) |

[1]For fiscal years 2010 and 2011, the number of convicted offenders and charged defendants supervised in the community reflects persons initially received for supervision, under supervision for the entire period, or under supervision at the start of the period and closed. Persons with cases that fall in more than one of these three categories are counted only once.

[2]The fiscal year 2013 budget request is based on 2012 projected caseload (for the 12-month period ending June 30).

[3]June 2010 and 2011 actuals for probation supervision cases are from the National PACTS Reporting (NPR) database, which is administered by the Administrative Office of the U.S. Courts.

## Program Function Statement

Funding for the federal probation and pretrial services system is used for the salaries and benefits of staff; drug testing; treatment of mentally ill and substance-abusing defendants and offenders; electronic monitoring; travel costs related to the supervision of defendants and offenders in the community; coordination with law enforcement and treatment providers; officer training; information technology; and normal business expenses.

### Southwest Border Workload Increase

Probation and pretrial offices situated along the border with Mexico have experienced a significant and sustained increase in caseload. The number of new pretrial defendants referred to the offices along the border increased 67 percent between June 30, 2004 and June 30, 2011, going from 30,742 to 51,381 cases. That growth has outpaced the rest of the federal system; in 2004 the five southwest border districts handled 33 percent of the overall federal pretrial services volume, while in 2011 those districts handled 47 percent. Similarly, the border districts have taken on a greater proportion of the pre-sentence investigations and post-conviction revocation cases. In 2011, 37 percent of all of the pre-sentence reports were submitted in the five southwest border districts. While aliens who are deported following their incarceration have their supervised release or probation terms made inactive, the case is activated and revocation proceedings are initiated if they illegally re-enter the United States. Unfortunately, illegal re-entry occurs with such frequency that the Southern District of California, Texas-Southern and Arizona along the border now have the highest proportion of revocation cases in the federal system.

## Workload Trends and Resource Requirements

Probation and pretrial services workload is dictated by the prosecutions brought by U.S. Attorneys offices and the number of inmates released to supervision by the Federal Bureau of Prisons (BOP).

In the 12-month period ending June 30, 2011, pretrial services officers conducted 107,197 new investigations on recently charged defendants and material witnesses stemming from new prosecutions. While the rate of future prosecutions is difficult to project, it is clear that prosecutions will remain focused on the most persistent and egregious offenders pursuant to Project Safe Neighborhood and other Department of Justice initiatives. During the 12-month period ending June 30, 2011, the BOP released 48,476 inmates to the supervision of probation officers in the community. Combined with releasees from previous years and probation cases, the daily supervision population reached 129,319 during the 12-month period ending June 30, 2011. The BOP's population now exceeds 217,000 inmates with nearly all of these inmates eventually to be released to terms of supervision.

*Serving the Courts*

Probation and pretrial services officers provide valuable service to the courts by investigating defendants and offenders, verifying information about these individuals, and making sound and timely recommendations to judicial officers. Pretrial services officers investigate defendants and recommend to the judge whether there are conditions that would reasonably assure the defendant's appearance in court and protect the community while the defendants' cases are pending disposition, as set forth under 18 U.S.C. § 3142.

Probation officers investigate persons convicted of federal crimes and recommend to the judge a sentence that addresses the factors set out in 18 U.S.C. § 3553. Probation officers' presentence reports are shared with the U.S. Attorney and defense counsel to provide notice of all sentencing issues and provide for an efficient and fair sentencing hearing. In 2011, probation officers produced 77,276 sentencing related investigative reports.

*Postconviction Supervision*

During the 12-month period ending June 30, 2011, 61,848 offenders began terms of community-based supervision. More than 81 percent of those offenders were received after having completed a custodial sentence with the Bureau of Prisons. In comparison, in 1985 (before the Sentencing Reform Act), only 48 percent of offenders supervised by federal probation had served a custodial sentence; the majority were sentenced to probation. These figures reflect the continued trend of increasingly challenging offenders released to the community. The challenge is more apparent when one considers the offenses for which these persons are under supervision; 47 percent of offenders convicted of narcotics trafficking offenses and 21 percent convicted of either a violent, sex or weapon offense.

*Managing Increasing Risk*

Many offenders present significant risk to the community, risk that must be mitigated through proactive, community-based supervision. One strong predictor of risk is the nature of the offender's prior criminal record, and the severity of the criminal history of persons coming under federal supervision has been increasing. In 2002, offenders with a criminal history category of

II[1] or greater, as determined by the U.S. Sentencing Guidelines, constituted 30 percent of the supervision population. By 2011, offenders in those criminal history categories constituted 50 percent of the population.

The primary actuarial tool probation officers currently use for predicting recidivism is the Risk Prediction Index (RPI). Developed by the Federal Judicial Center and approved by the Judicial Conference in 1997, the RPI enables officers to score offenders objectively on a scale of 0 to 9, where 9 indicates the greatest likelihood of re-offending. The RPI calculates risk using seven static factors, such as whether a firearm was used during the instant offense and level of education. Since 2003, national average RPI scores have steadily increased for all offenders (from 2.89 to 3.67), as well as for subgroups, such as those convicted of drug and violent offenses.

Probation officers must intensify their supervision efforts in the growing number of cases with increased risk. Chief among those efforts is the officers making themselves a presence in the offender's community life, interacting with the offender in the home, neighborhood, and place of employment. Officers also conduct drug tests, develop sources of information in the community, and conduct surveillance and searches when appropriate. If behavior potentially leading to criminal behavior is exposed, officers take both punitive and corrective action. For example, if an offender is abusing alcohol, the probation officer can petition the court for an intermediate sanction, such as community service, as well as enroll the offender in a treatment program and conduct additional random tests for alcohol use. The probation officer's goal is to ensure compliance with the conditions of supervision and take action to preempt a decline in the offender's conduct or life situation.

*Serious Violations and Revocation*

Serious violations of supervision, where the offender commits a violent new offense (homicide, rape, assault, robbery, a felon in possession of a firearm, kidnaping, or racketeering) are relatively rare in the federal system. The proactive approach taken by officers normally allows them to identify and deal with minor violations swiftly before they escalate to more serious criminal activity. Of the 52,600 cases closed from post-conviction supervision during the 12 months ending June 30, 2011, only one percent (737 cases) were reported as revocations based on new violent crimes. By comparison, 29 percent of all cases nationally were closed by revocation, most due to technical violations such as failure to participate in drug treatment or absconding, in which the court and probation officer intervened before criminal recidivism could occur.

*Assisting With Reentry*

Many offenders on supervision lack adequate life skills to transition back into society smoothly. Officers help offenders to either re-establish, or secure for the first time, appropriate housing, employment, and legitimate community relationships. They provide life skills counseling and leverage programs offered by other federal agencies and local social service organizations.

[1] To be in a Criminal History Category of II or greater, the person must have multiple prior convictions or a single conviction that resulted in an imprisonment term of sixty days or greater, or committed the federal offense while serving an earlier term of probation, parole or recent release from prison. See U.S. Sentencing Guidelines Section 4A1.1

Success on supervision requires offenders to overcome not only the original factors that contributed to their criminal behavior, but institutionalization, alienation from family and friends, and other consequences of a lengthy prison term. Throughout the country, officers are securing resources for offenders, cultivating employment prospects, and developing collaborative relationships with a wide variety of organizations. All of these efforts aim to assist in the transition of offenders back into the community.

*Substance Abuse and Mental Health*
Substance abuse and mental health conditions among defendants and offenders continue to influence workload in probation and pretrial services offices. From fiscal year 2009 to fiscal year 2011, the number of offenders under supervision receiving substance abuse treatment decreased 3 percent, from 33,358 to 32,177. However, during that same time period, the number of offenders receiving mental health treatment rose significantly from 12,099 to 14,193 cases, an increase of 17 percent.

Drug and mental health problems usually are detected during pretrial or presentence investigations when officers administer drug tests, interview the defendant and third parties, contact the defendant's family and associates, and review medical, employment and school records. The significant number of defendants and offenders with substance abuse and mental health conditions creates more challenging work for probation and pretrial services officers. Officers have to investigate and assess treatment resources available in the community, contract for those services where necessary, formulate treatment plans, and develop supervision strategies for relapse prevention and detection.

*Sex Offenders*
As of June 30, 2011, there were 3,385 federal offenders under supervision in the community who were convicted of a sex offense. Another 3,108 offenders were under supervision with other sex offender issues, including pending charges or having admitted to such offenses but not being convicted . Although this is a relatively low percentage of the total number of offenders under supervision in the community, sex offenders require specialized supervision techniques and enhanced monitoring.

Sex offenders differ from other offenders because of the nature and impact of their crimes on victims. Probation and pretrial services officers supervising sex offenders are required to understand the complex issues related to sexual re-offending, risk assessment, and risk management. To reduce recidivism and protect the community, officers supervising such offenders must use specialized supervision techniques, such as polygraph examinations, psychosexual evaluations, intense sex offense-specific counseling, surveillance, internet/location monitoring, and enhanced community collaboration. Where necessary, officers must contract for services to address the above needs. In response to the rising number of pretrial defendants charged with sex offenses, specialized treatment services were developed to meet the needs of this population.

When monitoring offenders who are under supervision for a federal sex offense, or who have a history of sex offenses, officers must work closely with local and state law enforcement agencies and sex offender registries as the states continue to implement the Sex Offender Registration and Notification Act (SORNA). Although SORNA (Title I of the Adam Walsh Child Protection and Safety Act of 2006, Public Law 109-248, July 27, 2006) is the responsibility of the states to implement, officers supervising offenders required to register must ensure that the offenders

comply with such requirements where they live, work, and attend school.

In order to maintain proficiency with evolving sex offender management techniques, a Sex Offender Management Working Group was created in 2008. The group consists of sixteen members including officers, specialists and supervisors with specialities in sex offender management, sex offender treatment, electronic monitoring, and cyber-crime technologies. The group's work will result in policy changes and the creation of a monograph specific to the supervision of sex offenders.

*Scientific and Technological Changes*

Probation and pretrial services officers must keep up with technological innovations such as the various location monitoring technologies that can track defendants and offenders both in their homes and in the community. These technologies include voice recognition to confirm offenders' presence in their homes at random times, radio frequency to provide continuous monitoring of offenders in their homes, and Global Position Systems (GPS) to provide continuous tracking of offenders' movements in the community in both passive and real time. Active GPS tracking continues to be an effective supervision tool for monitoring sex offenders as it gives officers the ability to establish prohibited areas (zones) in the community for offenders (for example, schools, parks, and daycare centers). If an offender enters such a zone, an alert will be generated to notify the officer that he or she must conduct an investigation to determine if a violation has occurred.

New location monitoring technologies have emerged that also allow officers to monitor offenders' locations in the community and in their homes through the use of one-piece tracking devices, instead of the combination of both a transmitter and tracking device. Location monitoring technologies also offer the ability to track offenders and detect alcohol consumption through the location monitoring transmitter worn by the offender simultaneously.

Technological advances in internet monitoring and computer forensic analysis have added a new dimension to how officers hold defendants and offenders accountable. These technologies have changed officers' responsibilities in that they have required officers to become aware of the software and services available to monitor defendants and offenders' internet use and know how to use them effectively. The technology tools available include software programs and services that allow an officer to view a defendant or offender's internet use in real time, thus allowing that person to have legal internet access with minimal intrusion from the officer.

*Research-Based Practices*

The judiciary is committed to implementing a results-based management and decision-making framework for its community supervision program. It is also the desire of the judiciary that its supervision program become an evidence-based system, meaning that employees at every level, use the best available evidence to make decisions. In this case, the goal is to collect, analyze, and use data from probation officers' electronic case files and a variety of other sources to inform decision making and drive performance improvements aimed at reducing recidivism and fostering long-term positive changes in individuals supervised. On an ongoing basis, the judiciary wants the ability to test underlying assumptions about the relationship between supervision practices and supervision outcomes.

The judiciary has developed a protocol to assimilate arrest data using the International Justice and Public Safety Network, National Law Enforcement Telecommunications System

(NLETS). Similarly, the judiciary is collaborating with other federal agencies, such as the Bureau of Prisons, the Census Bureau, and the U.S. Sentencing Commission, to obtain data about offenders' backgrounds, criminal histories, and the communities in which they live. In addition to internal research, the judiciary has partnered with universities, nonprofit organizations and other federal agencies to test various hypotheses about effective supervision practices.

Running concurrent to these research efforts, the judiciary is working to implement practices that have demonstrated success in reducing recidivism with local, state, and international offenders. Many of these practices require new skills not yet uniformly held by federal probation and pretrial services officers. In 2007, the judiciary established a 3-year Research-to-Results (R2R) program. This effort provided resources to 16 volunteer districts to cover the costs of officer training and additional services related to implementing evidence-based practices. The lessons learned from these 16 districts were significant and led to the first national evidence-based initiative, the assessment of offender risk and needs.

The judiciary analyzed this data in order to develop two risk prediction instruments. First, the Pretrial Services Risk Instrument is designed to predict the likelihood that a defendant will return to court for trial and remain crime free while in the community. This 10-question instrument is used by an officer to inform his or her recommendation to the judge about bond. Second, the Post Conviction Risk Assessment is designed to predict the likelihood that an offender will commit a new offense and provide an officer with the root causes on the risk that can be addressed during supervision. This 134-question instrument is used by officers to craft an effective supervision strategy to lower the risk on those on community supervision. The implementation of theses two risk assessment instruments began in 2010 through the development of a training infrastructure. In 2011, over 4,500 officers were trained in the use of one or both risk assessment tools. Local district implementation is ongoing with momentum building each month. The number of completed assessments is growing, with over 50,000 post conviction and 20,000 pretrial assessments being completed over the past 12 months.

The output of the risk tool in conjunction with case planning provides a roadmap of the areas in an offender's life that need attention. The next hurdle is to provide officers with the skills necessary to address the deficits identified in the assessment. A large effort is underway to build the judiciary's internal capacity to train, execute and monitor the fidelity of effective supervision practices. This is a large effort that will take several years to complete.

**Cost Containment Efforts**

To contain costs and maximize community protection, the judiciary has developed a work measurement formula, actuarial risk assessment tools and supporting policies that stratify cases based on their relative risk and needs. As a result, resources of the probation and pretrial services system are focused on cases presenting the potential for harm, while resources dedicated to the lowest risk cases are reduced.

To reduce costs further, in cases where the person under supervision meets certain criteria and no longer poses an unreasonable risk of harm to the community, probation officers are required to recommend termination of supervision before expiration of the term. In fiscal year 2011, 6,648 post conviction supervision cases were closed upon early termination, equal to more than 12 percent of the total cases closed. Follow-up studies have found that cases selected for early termination under

judiciary policy have lower long-term re-arrest rates than cases closed upon expiration and revocation, indicating the cost-saving policy has not unduly compromised community safety.

*Cost of Supervision Versus Incarceration*
The cost of detaining a defendant in jail pending trial in fiscal year 2010 was $70.56 per day, or more than ten times the $6.62 a day it cost to release the defendant to the supervision of a pretrial services officer. Similarly, the post-conviction imprisonment of an offender in a federal prison facility cost $77.49 per day in 2010, or more than seven times the $10.79 daily cost for a probation officer to supervise an offender in the community. Fiscal year 2011 data is not yet available.

If one percent of the population in federal prison custody were moved to supervision, the federal government would save $145,000 a day, $4.4 million a month, and $53 million a year. In addition, while under supervision, offenders are required to be employed; pay taxes, restitution, and fines; support their dependents; and perform community service if ordered by the court. The offenders who had their supervision cases closed during the 12-month period ending June 30, 2011 paid as much as $491 million in financial sanctions (fines, restitution and criminal assessments) and performed more than 610,000 hours of community service. Specific data is unavailable on taxes paid and financial support provided to dependents by these offenders, but projections put the combined total in the range of $1.5 billion for the period of supervision[1].

[1] It is estimated that, on average, an offender pays a total of $10,000 a year in child support and taxes (income, sales and real estate). With 52,600 offenders completing an average of 3 years of supervision, the total exceeds $1.5 billion.

*Improved Substance Abuse Testing Methodologies*
The detection of illegal substances is a critical part of supervision and one of the few objective tools officers have at their disposal. The judiciary conducts most of its testing by urinalysis, the most proven and researched method to detect illegal substances. Testing is performed by three methods: 1) national contracts with laboratories to conduct drug testing outside judiciary facilities, 2) a national contract for districts to obtain drug testing and operate on-site drug testing laboratories, and 3) the decentralized procurement of non-instrumented drug testing devices, which also allow on-site testing. Several districts operating on-site drug testing laboratories have also established relationships with other districts to provide testing services.

The advantages of conducting on-site drug testing are twofold: cost-effectiveness and operational efficiency. On-site drug testing provides results quickly, thereby enabling officers to take action immediately if the results are positive. Research shows that immediate action after a positive urinalysis test deters further illicit drug use and reduces the likelihood of criminal behavior.

In addition to operational efficiency, on-site testing is cost effective. A standard panel of five drugs and validity testing at a commercial laboratory costs an average of $7.80, or an average of $1.46 per test ($.50 for validity testing). On-site laboratories test specimens with an accuracy and reliability that rival the contract laboratories at a cost of $.80 per drug test and $.58 for validity testing (a test for creatinine, which is used to detect any dilution effort by the offender). Non-instrumented devices vary in their price, but cost an average of $.50 per drug, and some have the capability for validity testing.

*Information Technology*

The judiciary continues to use information technology to reduce costs and improve the effectiveness and efficiency of probation and pretrial services officers. The projects currently in use by officers and that are being enhanced include the Probation & Pretrial Services Automated Case Tracking System, Electronic Reporting System, Access to Law Enforcement System, Electronic Probation and Pretrial Services System, Safety Information and Reporting System, and Decision Support System.

Probation & Pretrial Services Automated Case Tracking System is the case management system used by officers in investigation and supervision of offenders and defendants. The Offender Payment Enhanced Report Access system is integrated with Probation & Pretrial Services Automated Case Tracking System for officers to monitor fines and restitution payments made by persons under supervision.

The Electronic Reporting System allows officers to collect routine, administrative data via kiosks, web sites and advanced phone systems thereby reducing paperwork and allowing officers to focus on high priority issues.

The Access to Law Enforcement System provides officers with easy access to criminal records and allows officers to run criminal records remotely, making them less dependent on being in the office.

The Electronic Probation and Pretrial Services System allows officers to store documents in electronic format, instead of paper, which saves on space, improves security, and enhances accessibility to the documents when needed. It also makes it more efficient to share the documents with other agencies, such as the Bureau of Prisons and U.S. Sentencing Commission.

The Safety and Information Reporting System makes it easier for officers to provide information on hazardous incidents and search and seizures.

The Decision Support System takes operational data and combines it to allow for research and better utilization of resources. Of course, continued effort has been made to provide officers with blackberry and other mobile devices so that they can spend more time in the community interacting with persons under supervision, rather than in the office.

Table A-1.5 Offenders Under Supervision by Type of Supervision - Projections Through 2012

| | Year | Probation | Supervised Release | Parole | BOP Custody | Total |
|---|---|---|---|---|---|---|
| ACTUAL[1] | 2002 | 31,317 | 72,108 | 4,142 | 277 | 107,844 |
| | 2003 | 30,799 | 75,322 | 3,742 | 480 | 110,343 |
| | 2004 | 29,485 | 77,963 | 3,435 | 2,479 | 113,362 |
| | 2005 | 26,917 | 82,488 | 3,187 | 416 | 113,008 |
| | 2006 | 25,326 | 85,116 | 2,979 | 276 | 113,697 |
| | 2007 | 24,163 | 88,874 | 2,696 | 197 | 115,930 |
| | 2008 | 23,028 | 94,349 | 2,519 | 155 | 120,051 |
| | 2009 | 22,926 | 98,560 | 2,220 | 133 | 123,839 |
| | 2010 | 22,707 | 101,701 | 2,089 | 145 | 126,642 |
| | 2011 | 22,604 | 104,671 | 1,870 | 174 | 129,319 |
| ESTIMATED[2] | 2012 | 22,700 | 106,900 | 1,800 | 200 | 131,600 |

[1] Actual data for years 2002 through 2011 is based on the 12-month period ending June 30.
[2] Estimates for the 12-month period ending June 30, 2012.

Table A-1.6   The Changing Supervision Population - Offenders on Probation vs. Offenders Released from Prison - Projected through 2012

| | Year | Offenders on Probation | | Offenders Released from Prison[1] | | Total |
|---|---|---|---|---|---|---|
| ACTUAL[2] | 2002 | 31,317 | 29% | 76,527 | 71% | 107,844 |
| | 2003 | 30,799 | 28% | 79,544 | 72% | 110,343 |
| | 2004 | 29,485 | 26% | 83,877 | 74% | 113,362 |
| | 2005 | 26,917 | 24% | 86,091 | 76% | 113,008 |
| | 2006 | 25,326 | 22% | 88,371 | 78% | 113,697 |
| | 2007 | 24,163 | 21% | 91,767 | 79% | 115,930 |
| | 2008 | 23,028 | 19% | 97,023 | 81% | 120,051 |
| | 2009 | 22,926 | 19% | 100,913 | 81% | 123,839 |
| | 2010 | 22,707 | 18% | 103,935 | 82% | 126,642 |
| | 2011 | 22,604 | 17% | 106,715 | 83% | 129,319 |
| ESTIMATED[3] | 2012 | 22,700 | 17% | 108,900 | 83% | 131,600 |

[1]Includes terms of supervised release, parole, mandatory release, and military parole.
[2]Actual data for years 2002 through 2011 is based on workload for the 12-month period ending June 30.
[3]Estimates for the 12-month period ending June 30, 2012.

## District Courts

Table A-1.7 Major District Court Workload Indices[1]

| Filings | 2010 Actual | 2011 Actual | 2012 Estimate |
|---|---|---|---|
| Criminal Case Filings | 78,213 | 78,764 | 77,000 |
| Criminal Defendants Filed | 100,031 | 102,605 | 102,700 |
| Civil Case Filings | 285,215 | 289,630 | 287,000 |

[1]For the 12-month periods ending June 30.

### Program Function Statement

Funding for the district court program is used for salaries and benefits of all active United States district judges, magistrate judges and all such judges who have retired from office or from regular active service. In addition, this funding is used for the salaries and expenses of the district court support personnel, such as the administrative and legal aides required to assist the judges in conducting hearings, trials and other judicial functions. It also funds all operation and maintenance costs, such as communications, printing, contractual services, supplies, equipment, lawbooks, travel expenses incurred by judges and supporting personnel in attending sessions of court or transacting other official business, and relocation costs.

**District Clerks**

The clerk's office is responsible for attorney admissions, case intake, docketing of pleadings and motions, service of process, events scheduling, receipting and accounting for fees and fines collected, case tracking, provision of court reporting and court interpreting services, alternative dispute resolution programs, statistical reporting, training of attorneys on the case management system (CM/ECF) and jury management, all of which are essential elements in processing criminal cases and resolving civil cases. Public and private sector entities rely on effective case processing by the clerks' offices.

The proper functioning of the offices of district court clerks enhances the efficiency of the offices of the U.S. Attorney, U.S. Marshals Service, Federal Public Defender, and Probation and Pretrial Services. Other participants, including litigants, attorneys, witnesses, court reporters, court interpreters, expert witnesses, the media, and jurors are impacted by the effective operations of the clerks' offices. To enable these court participants to work together effectively, the clerk's office manages courtroom space, automation services, audio and video systems, and other administrative functions, as well as the support required in the courtroom for the proper functioning of the proceedings. The judicial system as a whole benefits from the professional management services provided by the clerk's office.

**Court Interpreters**

The district courts use both staff and contract court interpreters. Staff court interpreters serve in district courts where there is a substantial need for interpreting services on a daily basis. This is particularly true in the Southwest border courts. Locating, scheduling and contracting with court interpreters is not practical in locations that have daily needs for interpreting services.

Spanish remains the most used language for interpreters in the courts, accounting for 96 percent of all reported interpreting events in fiscal year 2011. For the 12-month period ending September 30, 2011, there were 325,921 court events that required the services of a staff or contract court interpreter. During fiscal year 2011, the judiciary expended approximately $12.4 million on contract court interpreting services. The judiciary expects this high level of interpreter usage to continue, especially due to the high volume of workload along the Southwest border and the prosecution of other immigration and terrorist-related cases. At the same time, the judiciary has continued to expand the Telephone Interpreting Program (TIP), which allows interpreting for short proceedings to be provided by telephone from courts with specialized or abundant interpreting resources. The use of TIP increased by over 26 percent in 2011 with more than 4,500 interpreted events conducted remotely saving almost $1.5 million.

*Pro Se Law Clerks*

The objective of the pro se law clerk program is to receive, prepare, and process civil complaints filed against the government by prisoners and individuals without attorney representation. The *pro se* law clerks review complaints for procedural adequacy to permit judges to proceed with the disposition of the cases. Without adequate staffing, district judges and magistrate judges will have to perform this work at the expense of other civil case work.

The number of *pro se* law clerks is determined by formulas driven by prisoner petition filings. For the 12-month period ending June 30, 2011, there were 53,692 prisoner petitions filed, an increase of 1,944 petitions or 3.8 percent from 2010 levels. The judiciary projects a 3 percent decrease in 2012 prisoner petition filings to 52,700.

*Death Penalty Law Clerks*

Death penalty law clerks serve both as a substantive legal resource to judges in death penalty habeas corpus matters, and as case management monitors, since capital cases are generally lengthy and involve numerous issues. In March 1999, the Judicial Conference endorsed a program to provide death penalty law clerk positions on a national basis to district courts based on a ratio of one law clerk to fifteen death penalty cases. In fiscal year 2012, 47 death penalty law clerk FTEs were allocated to 40 district courts. The judiciary benefits from having death penalty law clerks who are focused on the case management and Criminal Justice Act budgeting responsibilities of the court and assist the judges in the substantive legal research that is required in death penalty cases. Without this assistance, judges would have to spend inordinate amounts of time on this work to the detriment of addressing other cases, both civil and criminal.

**Workload Trends and Resource Requirements**

The number of criminal defendants, the mix of civil cases, juror activity, and the number of authorized judges require the courts to make staffing adjustments as dictated by the staffing formulas, which are based primarily on civil and criminal cases and the number of judges supported.

**Staffing in the District Courts**

While the district courts have been focused on improving all operational areas, a critical need remains to have full staffing resources available to support the judges and case processing requirements in the courts. With the dependence on the electronic case filing system, many courts continue to retool their offices and change from primarily a clerical focus to an automated and technical focus which requires the hiring and training of a professional workforce with more technical skills.

Thus, the need for the clerk's office to maintain robust information technology services will continue to grow. This requirement stems from the need to meet the information demands of an increasingly sophisticated bench, bar and public and the need to automate and integrate many of the clerks' offices business functions in the areas of accounting, budgeting, case management, records management, and juror management. Sound information management systems help to ensure the courts' obligations to the public are met while streamlining business functions to keep costs under control.

Providing a sufficient number of clerks' office personnel is critical to the entire justice system. The output and efficiency of resources (judges, prosecutors, defenders, court reporters, court interpreters, jurors, and witnesses) is dependent upon the efficiency of the clerks' offices. Reductions to the district court staffing would impact all of the convergent participants in the judicial process.

**Criminal Case Filings**

For the 12-month period ending June 30, 2011, criminal cases filed totaled 78,764, a 1 percent increase from the 2010 level. In 2012, the judiciary projects criminal filings will decrease by 2 percent to 77,000. See Table A-1.8 on page 1.22. The number of criminal defendants charged in 2011 totaled 102,605 an increase of 3 percent from the 2010 level. In 2012, the judiciary projects the number of criminal defendants will increase slightly to 102,700. Criminal case filings are influenced by the number of United States Attorneys and the emphasis on prosecution of illegal immigration, drug crimes, and violations of firearm laws. These projections may not reflect fully the workload associated with additional resources recently provided to law enforcement agencies for increased immigration enforcement.

**Southwest Border Workload Increase**

The district courts situated along the border with Mexico have experienced a tremendous increase in criminal workload since the late 1990s. The districts of Arizona, New Mexico, Texas Southern, Texas Western, and California Southern have experienced growth rates of 80 percent, 7 percent, 28 percent, 36 percent, and 74 percent respectively, in the number of felony defendants from 2007 to 2011. The District of Arizona has experienced a 41 percent increase in felony defendants from 2010 to 2011 alone. The five courts along the Southwest border account for 38 percent of all felony defendants processed in district courts nationwide. The time-sensitive nature of criminal cases, due to statutory deadlines in the Speedy Trial Act, multiple hearings for defendants (i.e. initial appearances, arraignments, and pleas in the early stages alone), and the need for interpreter services, increases the courts' need for adequate staffing resources.

At the same time, the Southern District of Texas, which experienced a 13 percent decrease in the number of felony defendants from 2010 to 2011, is dealing with a 20 percent increase in civil filings for the same period. While criminal cases take precedence over civil cases, the courts need adequate staffing to keep up with the civil workload, otherwise civil case processing and disposition are delayed. This delay negatively impacts litigants because it prolongs the uncertainty of a pending legal action.

**Civil Case Filings**

For the 12-month period ending June 30, 2011, civil case filings increased from 285,215 to 289,630 cases, a 2 percent gain from 2010. See Table A-1.8 on page 1.22. The judiciary projects 2012 civil case filings to decrease 1 percent to 287,000. These

projections do not take into account all future, large-volume multi-district or class action litigation, as this type of litigation is often difficult to predict. In addition, the current financial situation may impact the civil filing volume, especially if mortgage foreclosure cases are filed in the district courts.

**Cost Containment Efforts**

The judiciary's Case Management/Electronic Case Files (CM/ECF) system, in use by all district courts, allows courts to manage documents electronically and provide 24-hour case file access to judges, court staff, and the public. CM/ECF also allows attorneys and the courts to file documents over the internet. Almost 40 million cases are on the CM/ECF system and more than 600,000 attorneys and others have filed documents over the Internet. The CM/ECF system uses standard computer hardware, an Internet connection and a browser, and accepts documents in Portable Document Format (PDF). This electronic filing saves postage, paper, copying, and courier costs for attorneys and for the judiciary.

CM/ECF saves the litigants' resources, and also saves docketing and paper handling costs on the part of the district clerks. Court staff, however, have had to enhance their quality control efforts to ensure that the information entered is accurate and complete. Failure to do so in a timely manner results in parties in a case taking action based on erroneous information. Further, the courts are moving forward with efforts to develop the next generation of CM/ECF. They are finalizing the functional requirements for the new system. These requirements include comments from judges and court staff and seek to optimize technology to gain efficiencies.

With the deployment of eJuror, the new Jury Management System (JMS) web page, prospective jurors now have the option of completing qualification questionnaires and obtaining jury service information online 24 hours a day. Courts save time as there are fewer forms processed manually, less data entry and an increased level of data reliability. Many functions that required the intervention of court staff have been automated and are available online for the public, such as deferrals and certificates of attendance, thereby reducing demands on staff time. Courts save on postage costs and eliminate unnecessary delays by communicating with jurors via email. It is projected that the eJuror function will save an estimated $1.4 million per year in postage and staff time once fully utilized in all courts with some of that savings already occurring. Sixty courts are now live on eJuror; 82 have installed it, leaving 22 of those yet to go live. We anticipate several of those 22 to go live with the installation of the new JMS and eJuror releases in early 2012. One additional district will install eJuror along with the JMS in early 2012.

The District Methods Analysis Program identifies better practices in court operations and shares them with other courts. Court working groups have focused on various civil and criminal topics, as well as CJA voucher processing and management of multi-district litigation cases. Currently the group is addressing ways to improve the processing of criminal fines and restitution. The streamlined best practices are then posted on the judiciary's intranet site for courts to review and consider adopting.

The use of the judiciary Telephone Interpreting Program (TIP) has ensured the availability of federally certified or otherwise qualified interpreters for defendants in short court proceedings and has saved over $10.6 million for the judiciary in travel and other costs since the Judicial Conference approved the program in 2001. TIP allows an interpreter at a remote location to deliver

simultaneous interpretation of court proceedings for defendants and consecutive interpreting by means of a two-line telephone system. TIP interpreters can be used for multiple assignments on the same day, and have significantly reduced time and travel costs. Telephone interpreters are used for a wide range of hearings, especially initial criminal matters that must occur quickly. TIP usage increased over 26 percent in 2011 with more than 4,500 interpreted events conducted remotely saving almost $1.5 million.

Table A-1.8 Civil and Criminal Filings

| | Year | Civil Filings | Percent Increase | Criminal Filings | Percent Increase |
|---|---|---|---|---|---|
| ACTUAL[1] | 2003 | 254,499 | -5.1% | 70,890 | 9.5% |
| | 2004 | 258,117 | 1.4% | 71,098 | 0.3% |
| | 2005 | 282,758 | 9.5% | 69,876 | -1.7% |
| | 2006 | 244,343 | -13.6% | 67,872 | -2.9% |
| | 2007 | 272,067 | 11.3% | 67,674 | -0.3% |
| | 2008 | 256,354 | -5.8% | 70,024 | 3.5% |
| | 2009 | 257,204 | 0.3% | 75,324 | 7.6% |
| | 2010 | 285,215 | 10.9% | 78,213 | 3.8 % |
| | 2011 | 289,630 | 1.6% | 78,764 | 0.7% |
| ESTIMATED[2] | 2012 | 287,000 | -0.9% | 77,000 | -2.2% |

Table A-1.9 Components of Civil Caseload

| | Year | Social Security | Diversity | Prisoner Filings | All Other | Total |
|---|---|---|---|---|---|---|
| ACTUAL[1] | 2003 | 17,483 | 61,088 | 55,112 | 120,816 | 254,499 |
| | 2004 | 15,935 | 65,347 | 53,132 | 123,703 | 258,117 |
| | 2005 | 16,066 | 66,532 | 62,716 | 137,444 | 282,758 |
| | 2006 | 14,052 | 65,800 | 55,775 | 108,716 | 244,343 |
| | 2007 | 12,964 | 86,506 | 53,222 | 119,375 | 272,067 |
| | 2008 | 13,329 | 76,284 | 55,374 | 111,367 | 256,354 |
| | 2009 | 13,222 | 81,188 | 52,237 | 110,557 | 257,204 |
| | 2010 | 13,725 | 104,703 | 51,748 | 115,039 | 285,215 |
| | 2011 | 15,697 | 101,508 | 53,692 | 118,733 | 289,630 |
| ESTIMATED[2] | 2012 | 15,800 | 97,200 | 52,700 | 121,300 | 287,000 |

[1]Actual data for years 2003 through 2011 are based on the 12-month period ending June 30.
[2]Filing estimates for the July 1, 2011 through June 30, 2012 statistical year will be updated in the spring of 2012.

## Courts of Appeals and Circuit Units

Table A-1.10 Appellate Court Workload[1]

| | 2010 Actual | 2011 Actual | 2012 Estimate |
|---|---|---|---|
| Appeals Filings | 56,097 | 55,353 | 55,300 |

[1]For the 12-month periods ending June 30.

### Program Function Statement

Funding for the courts of appeals and circuit units includes the salaries and benefits of all active United States circuit judges, and all such judges who have retired from office or from regular active service. In addition, it provides for the salaries and expenses of the courts of appeals supporting personnel such as the administrative and legal aides required to assist the judges in the hearing and decision of appeals. Funding also includes all expenses of operation and maintenance such as communications, printing, contractual services, supplies, equipment, law books, travel costs incurred by judges and supporting personnel in attending sessions of court or transacting other official business, and relocation costs.

**Circuit Executives**

The principal responsibility of the circuit executive's office is to act as the secretariat for the circuit's judicial council and its committees, and in some circuits, for the court of appeals and its committees. In this capacity, the circuit executives' offices participate not only in policy oversight but also assist in many areas of circuit-wide importance. These include planning for the effective and efficient use of space and facilities, information technology issues, financial management and budget decentralization, and planning and organizing the circuit's judicial conference.

**Appellate Clerks**

The clerks' offices are the public business offices for the appellate courts and provide specific centralized management in case-related and logistical areas. Employees in clerks' offices perform essential functions necessary for the operation of the courts, such as:

- recording and maintaining all case filings, including public records and information needs;
- providing guidance to lawyers, litigants and the public;
- distributing case materials to judges for decision-making;
- providing vital logistical support such as information technology, procurement, budget management, and personnel administration.

The case-related workload of the clerks' offices can fluctuate in proportion to changes in case filings.

Case decisions in appellate courts are made either by panels of three judges or, in some instances, by an en banc court, where all the judges review the case. Appellate judges reside in cities throughout the wide geographic area of a circuit. Appellate clerks' offices are situated at the headquarters of the circuit, providing a central public business office for the judges,

lawyers, litigants and the public. Clerks' offices receive case materials for filing, maintain the central files, and arrange for judges to convene in panels as necessary for case decisions. Inquiries about cases, procedures, etc., are directed to the clerks' offices. Materials are assembled, as appropriate, and dispatched to judges. Lawyers are advised of the schedule for decision-making. Decisions are made after oral argument hearings or submissions on briefs that are scheduled by the clerks' offices. Decisions are filed in the clerks' offices which are then responsible for distribution of the decisions to the parties and the public, including posting on court websites.

**Staff Attorneys**

Staff attorneys generally perform legal research on all pro se cases, that is, cases where a party serves as his or her own counsel, most of which are filed by prisoners. In addition, they work on substantive and procedural motions, direct criminal appeals, death penalty cases, and cases that do not require oral argument. Some staff attorneys also assist the court on fully counseled cases, providing legal research assistance and presenting recommendations to the judges. Staff attorneys also write memoranda in cases addressing jurisdictional issues that result in disposition of the appeal. By drafting legal research memoranda that analyze the case issues and recommend appropriate disposition, staff attorneys assist judges in disposing of the appellate cases in a timely and efficient manner.

Statistics show that pro se cases represent 49 percent of national appellate filings. Having the staff attorneys preliminarily review both pro se cases and substantive motions, as well as examine cases for jurisdictional defects, materially assists the judges and contributes to timely dispositions.

**Preargument/Conference Attorneys**

Appellate preargument/conference attorneys facilitate the disposition of cases on appeal through negotiated settlements, without appellate judicial involvement. The attorneys are skilled, seasoned lawyers who perform sensitive, confidential settlement work. The attorneys often are able to streamline or dispose of issues in cases not easily settled. Distinct from staff attorneys, preargument/conference attorneys promote the voluntary settlement or withdrawal of appeals without court action. The program results in a conservation of judicial resources and improves appellate case management.

**Librarians**

The national court library program is a network of 12 circuit headquarters libraries and 100 satellite libraries. The library program provides legal reference and research services to over 2,000 judges and more than 10,000 judiciary researchers nationwide. Using existing resources and adapting new technologies, the library program provides all circuits with high quality research assistance and instruction to judges, law clerks, and other court personnel. In addition, the library staff manages the acquisition and development of chambers law books collections.

Information is expanding exponentially, in an array of formats, including books, online databases, and Internet resources. Librarians are necessary to manage this wealth of information and media, and to disseminate the information to the courts in a meaningful manner. Collection development expertise, research skills, and knowledge of resource-sharing techniques are tools that librarians bring to this challenge.

In addition to providing traditional legal research support, librarians conduct research in multiple disciplines such as science, medicine, the humanities and social sciences, or general research. Judges, law clerks, and other court staff need the information in these areas to assist their decision-making. Librarians also have taken the lead in tapping the resources available on the Internet, making them available to the judiciary by designing web pages that gather Internet resources and push content directly to the users.

**Bankruptcy Appellate Panel Clerks**

The Bankruptcy Reform Act of 1994 requires that each circuit establish a Bankruptcy Appellate Panel (BAP) unless the Judicial Council of the circuit finds that either there are insufficient judicial resources in the circuit, or the establishment of a BAP would result in undue delay or increased cost to parties in bankruptcy cases. There are currently five BAPs nationally. A BAP is composed of bankruptcy judges within a circuit who are appointed by the circuit's Judicial Council to decide, with the consent of all parties, appeals from bankruptcy court decisions. Even where a BAP exists, bankruptcy appeals may be heard by the district court, if a party so chooses.

A BAP requires a minimum of four bankruptcy judges, each from a different district, because the legislation prohibits a bankruptcy judge from hearing an appeal that originated in the district for which he or she was appointed. The BAP clerk's office has support functions and responsibilities similar to the appellate clerk's office.

## Workload Trends and Resource Requirements

For the 12-month period ending June 30, 2011, the number of appeals filed totaled 55,353, decreasing 1 percent from the previous year and decreasing 3 percent since 2001. The judiciary projects the appellate cases filed will stabilize for the 12-month period ending June 30, 2012. While the cases filed has declined overall, there have been significant increases from 2001 to 2011 in appeals both from immigration cases appealed from the Department of Justice's Board of Immigration Appeals (BIA) and from criminal cases.

The initial increase of immigration appeals from the BIA in 2002 was attributed to its directive to clear its backlog of cases and implement new review guidelines. While the number of BIA completions has been declining and approaching pre-2002 levels (26,283 in 2011 versus 25,024 in 2001), the number of BIA appeals in the federal courts is almost four times what it was in 2001 (6,255 in 2011 versus 1,777 in 2001). These cases continue to demand extensive resources and are a far greater share of total caseload in recent years. The increase was most significant in the Second and Ninth Circuits; the Second Circuit increased from 164 BIA cases in 2001 to 1,383 in 2011, and the Ninth Circuit increased from 965 BIA cases in 2001 to 2,865 in 2011. Terminations of these appeals have not kept pace with filings, resulting in an increase in the time it takes to process all other appeals. The number of total pending appeals increased from 40,911 in 2001 to 44,023 in 2011 (an increase of 8 percent).

## Cost Containment Efforts

The appellate court and circuit units continue to spend time focused on adopting new processes, developing and sharing best practices, and using the flexibility provided under budget decentralization to invest in information technology and other solutions that save resources as well as improve quality and performance. This work has been and will continue to be important.

In fiscal year 2011 and fiscal year 2012, courts continued to use workforce restructuring options to re-shape, de-layer or re-tool the workforce.

The appellate CM/ECF system replaced the 20-year old legacy system and required a careful review of the case management processes and staff functions. The appellate courts are taking full advantage of the opportunities provided by CM/ECF's electronic case filing features. The first appellate court to implement electronic filing by attorneys started in June 2007. By the end of fiscal year 2010, all courts of appeals accepted electronic filings by attorneys and pro se litigants. Resource-intensive efforts to conduct quality control checks on attorney filings and to prepare and transmit briefs and lower court record materials to court of appeals judges still must evolve in light of the availability of electronic case files.

**COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES**
***Defender Services***
**SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS**

| | |
|---|---|
| **Fiscal Year 2012 Enacted Appropriation** | **$1,031,000,000** |
| **Fiscal Year 2013 Appropriation Request** | **$1,063,517,000** |
| **Requested Increase from Fiscal Year 2012 Appropriation** | **$32,517,000** |

**APPROPRIATION LANGUAGE**

**COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES**

**Defender Services**

For the operation of Federal Defender organizations; the compensation and reimbursement of expenses of attorneys appointed to represent persons under 18 U.S.C. 3006A and 3599, and for the compensation and reimbursement of expenses of persons furnishing investigative, expert, and other services for such representations as authorized by law; the compensation (in accordance with the maximums under 18 U.S.C. 3006A) and reimbursement of expenses of attorneys appointed to assist the court in criminal cases where the defendant has waived representation by counsel; the compensation and reimbursement of expenses of attorneys appointed to represent jurors in civil actions for the protection of their employment, as authorized by 28 U.S.C. 1875(d)(1); the compensation and reimbursement of expenses of attorneys appointed under 18 U.S.C. 983(b)(1) in connection with certain judicial civil forfeiture proceedings; the compensation and reimbursement of travel expenses of guardians ad litem appointed under 18 U.S.C. 4100(b); and for necessary training and general administrative expenses, [$1,031,000,000] *$1,063,517,000*, to remain available until expended.

**SUMMARY OF REQUEST**
**DEFENDER SERVICES**
**FISCAL YEAR 2013**
**(Dollar amounts in thousands)**

| Page | Fiscal Year 2013 Resource Requirements: | FTEs | Amount |
|---|---|---|---|
| | **Fiscal Year 2012 Obligations** | 2,803 | 1,057,593 |
| | Less encumbered carryforward from fiscal year 2011 into fiscal year 2012 | - | (3,614) |
| | **Fiscal Year 2012 Revised Obligations** | - | 1,053,980 |
| | Less unencumbered carryforward from fiscal year 2011 into fiscal year 2012 | - | (21,456) |
| | Less prior year recoveries from fiscal year 2011 into fiscal year 2012 | - | (1,524) |
| | **Fiscal Year 2012 Enacted Appropriation** | 2,803 | 1,031,000 |
| | **Adjustments to Base to Maintain Current Services:** | | |
| | **A. Pay and benefit adjustments** | | |
| 6.15 | 1. Proposed January 2013 pay adjustments | | |
| | a. Federal pay adjustment (0.5% for nine months) | - | 1,683 |
| | b. Panel attorney capital ECI rate adjustment (from $178 to $179, effective January 1, 2013) | - | 122 |
| | c. Panel attorney non-capital ECI rate adjustment (from $125 to $126, effective January 1, 2013) | - | 329 |
| 6.16 | 2. Promotions and within-grade increases | - | 3,369 |
| 6.16 | 3. Health benefits increases | - | 2,031 |
| 6.16 | 4. One more compensable day | - | 1,674 |
| 6.16 | 5. Annualization of new fiscal year 2012 staff | 38 | 8,105 |



| Page | | FTEs | Amount |
|---|---|---|---|
| | **B. Other Adjustments** | | |
| 6.16 | 6. Inflationary adjustments | - | 2,844 |
| 6.16 | 7. Inflationary increase in space rental costs | - | 999 |
| 6.17 | 8. Change in caseload, case complexity and change in caseload mix | | |
| | a. Non-capital cases | - | 5,194 |
| | b. Capital Cases | - | (1,700) |
| | c. Base adjustments as a result of cost containment savings | - | (5,500) |
| 6.18 | 9. Increase in appropriation to fund base requirements due to a decrease in non-appropriated source of funds | - | 12,980 |
| | **Subtotal, Adjustments to Base to maintain current services** | 38 | 32,130 |
| | **Total Current Services Appropriation Required** | 2,841 | 1,063,130 |
| | **C. Program Increases** | | |
| 6.18 | 10. Four new case-budgeting positions | 2 | 387 |
| | **Subtotal, Program Increases** | 2 | 387 |
| | **Total Fiscal Year 2013 Appropriation Required** | 2,843 | 1,063,517 |
| | **Total Appropriation Increase, Fiscal Year 2012 to Fiscal Year 2013** | 40 | 32,517 |
| | **Financing the Fiscal Year 2013 Request:** | | |
| | **Total Appropriation Required** | 2,843 | 1,063,517 |
| 6.18 | 11. Anticipated Carryforward from fiscal year 2012 into fiscal year 2013 | - | 10,000 |
| | **Estimated Obligations, Fiscal Year 2013** | 2,843 | 1,073,517 |

**COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES**
**DEFENDER SERVICES**
**Obligations by Activity**
**($000)**

| Activity | FY 2011 Actual | FY 2012 Estimate | FY 2013 Request |
|---|---|---|---|
| **CJA Representations & Related Expenses** | **1,019,692** | **1,048,958** | **1,064,684** |
| **Program Administration** | **7,376** | **8,635** | **8,833** |
| Total Obligations | 1,027,068 | 1,057,593 | 1,073,517 |
| Anticipated Financial Plan Savings | - | (10,000) | - |
| **Revised Obligations** | **1,027,068** | **1,047,593** | **1,073,517** |
| Unobligated Balance, Start of Year | (19,771) | (22,979) | (10,000) |
| Prior Year Recoveries | (4,583) | - | - |
| Unobligated Balance, End of Year | 22,979 | 10,000 | - |
| Encumbered Carryforward | - | (3,614) | - |
| **Available Appropriation** | **1,025,693** | **1,031,000** | **1,063,517** |

**COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES**
**DEFENDER SERVICES**

**Obligations by Budget Object Class ($000)**

| Description | FY 2011 Actual | FY 2012 Estimate | FY 2013 Request |
|---|---|---|---|
| 1100 Personnel compensation | 288,190 | 296,756 | 299,577 |
| 1200 Personnel benefits | 86,899 | 89,481 | 91,022 |
| 1300 Benefits for former personnel | 293 | 302 | 307 |
| 2100 Travel | 10,363 | 10,671 | 10,854 |
| 2200 Transportation of Things | 260 | 268 | 273 |
| 2310 Rental payments to GSA | 39,625 | 41,028 | 42,041 |
| 2320 Rental payments to others | 380 | 392 | 398 |
| 2300 Communications, utilities & misc. | 6,822 | 7,225 | 7,360 |
| 2400 Printing and reproduction | 153 | 158 | 160 |
| 2500 Other services | 457,222 | 467,292 | 478,261 |
| 2600 Supplies and materials | 1,860 | 1,916 | 1,949 |
| 3100 Equipment | 7,072 | 10,487 | 7,407 |
| 4100 Grant Payments (to Community Defender Organizations) | 127,928 | 131,617 | 133,910 |
| Total Obligations | 1,027,068 | 1,057,593 | 1,073,517 |
| Anticipated Financial Plan Savings | - | (10,000) | - |
| **Revised Obligations** | **1,027,068** | **1,047,593** | **1,073,517** |

**Full Time Equivalents (FTEs) by Activity**

| Activity | FY 2011 Actual | FY 2012 Estimate | FY 2013 Request |
|---|---|---|---|
| **CJA Representations & Related Expenses**[1] | **2,707** | **2,770** | **2,808** |
| **Program Administration** | **31** | **33** | **35** |
| **Total, FTEs** | **2,738** | **2,803** | **2,843** |

[1] The FTEs listed are attributable to Federal Public Defender Organization staff

**COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES**
**DEFENDER SERVICES**
**Relation of Obligations to Outlays ($000)**

| | FY 2011 Actual | FY 2012 Estimate | FY 2013 Request | Difference |
|---|---|---|---|---|
| Total Obligations | 1,027,068 | 1,057,593 | 1,073,517 | 15,924 |
| Obligated balance, start of year | 23,217 | 26,304 | 54,497 | 28,193 |
| Obligated balance, end of year | (26,304) | (54,497) | (64,303) | (9,806) |
| Recoveries of prior year unpaid obligations | (2,911) | (2,400) | - | 2,400 |
| **Net Outlays** | **1,021,070** | **1,027,000** | **1,063,711** | **36,711** |

## GENERAL STATEMENT AND INFORMATION

Funds appropriated for the Defender Services account support the appointment of counsel as well as costs of expert, investigative, and other services necessary to defend financially eligible persons, which the judiciary is required to provide by the United States Constitution; the Criminal Justice Act (CJA), 18 U.S.C. § 3006A; and other related statutes. It also provides for the continuing education and training of persons providing representational services under the CJA. The fiscal year 2013 request for appropriated funds is $1,063.5 million, an increase of $32.5 million (3.2 percent) over the fiscal year 2012 appropriation of $1,031.0 million.

## MISSION AND GOALS OF THE DEFENDER SERVICES PROGRAM

The right to the effective assistance of counsel is a constitutionally mandated, critical component of the criminal justice system and the foundation upon which the liberty of all Americans rests. The United States Supreme Court wrote in *Gideon v. Wainwright, 372 U.S. 335 (1963)*, "The right of one charged with a crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours." It is the mission of the defender services program to ensure that the Sixth Amendment right to counsel is effected on behalf of those who cannot afford to retain counsel and other necessary defense services. By fulfilling its mission, the defender services program helps to maintain public confidence in the nation's commitment to equal justice under the law, and to ensure the successful operation of our constitutionally based, adversarial system of justice.

The four overarching goals of the defender services program, necessary to accomplish its mission successfully, are to: (1) provide assigned counsel services to all eligible persons in a timely manner; (2) provide appointed counsel services that are consistent with the best practices of the legal profession; (3) provide cost-effective services; and (4) protect the independence of the defense function performed by assigned counsel so that the rights of individual defendants are safeguarded and enforced.

## TYPES OF COUNSEL: Federal Defenders and Private Attorneys

The CJA authorizes the appointment of counsel, who are either attorneys employed by a federal defender organization (FDO) or private "panel" attorneys. This ensures a robust defense system that involves both public and private attorneys. The CJA specifies that in all judicial districts (including those served by an FDO) private attorneys shall be appointed "in a substantial proportion of the cases." 18 U.S.C. § 3006A(a)(3). Indeed, even in the 91 (of 94) judicial districts in which an FDO has been authorized, there is a critical need for representation by panel attorneys. Legal ethical standards prohibit appointing FDOs in conflict of interest situations (*e.g.*, an FDO is precluded from representing more than one defendant in a multi-defendant case, and is disqualified from accepting a new appointment that could present a conflict with the interests of previously represented clients). Thus, in

situations where federal defenders are unavailable due to FDO conflicts, excessive workload, or in the districts not served by an FDO, private or "panel" attorneys must be appointed to represent all eligible individuals. Three districts (Georgia-Southern, Kentucky-Eastern, and Northern Mariana Islands) have no FDO.

Federal Defender Organizations

The CJA authorizes two types of FDOs: (1) federal public defender offices, which are part of the judiciary, and (2) community defender organizations, which are private, state-chartered, non-profit corporations funded by annual federal grants. An FDO may be established in any district (or combination of adjacent districts) in which at least 200 appointments are made annually. There are currently 80 FDOs authorized to serve 91 of the 94 judicial districts (an FDO for Alabama-Northern was approved in 2010 and became operational in October 2011). For fiscal year 2013, the judiciary projects that federal defenders will be appointed in approximately 115,300 cases (56 percent of the total projected CJA caseload).

FDOs are the mainstay of the defender services program, delivering consistently high-quality representation at below market rates, and providing critical training and other support services to panel attorneys. Consistent with the CJA, they are able to attract, train, and retain lawyers with skills comparable to those who prosecute criminal matters in U.S. attorney offices. Federal criminal practice today is highly specialized and complex. FDOs are able to provide cost-effective defense services, consistent with the best practices of the legal profession, because of the expertise and efficiencies they have developed as law offices focused on federal criminal practice. FDO staff also reduce costs and improve the overall quality of CJA representation within the districts they serve by providing expert advice, training, and other assistance to panel attorneys in complex legal and technical areas such as sentencing, litigation support, and issues involving death penalty cases. FDOs also make optimal use of national resources by sharing their expertise and best practices with other FDOs.

FDO attorneys are available for appointments on short notice, ensuring that the rights of the accused are protected, and that the operations of the courts are not disrupted. In response to a professional survey conducted in December 2008, 98 percent of the district and magistrate judges responding reported that they were able to find a federal defender to accept a CJA appointment in a non-capital case within one day.

Panel Attorneys

A "panel" attorney is a private lawyer who serves on a panel maintained by the district or appellate court and is assigned by the court to represent financially eligible defendants in accordance with the CJA. Nationally, over 90 percent of CJA panel attorneys are in small law firms (with six or fewer lawyers), and approximately 60 percent are sole practitioners. The CJA provides that these attorneys shall be reimbursed for their expenses and compensated at statutorily authorized hourly rates for their services. In fiscal year 2010, Congress approved a maximum hourly rate at which panel attorneys may be compensated of $125 in non-capital cases, which is $15 below the fiscal year 2013 statutory maximum rate of $140 (the

statute provides for inflationary adjustments to the rate, subject to the availability of funds.) For fiscal year 2013, the judiciary projects that panel attorneys will be appointed in 89,700 cases (44 percent of the total projected CJA caseload).

## PANEL ATTORNEY RATES

The CJA authorizes the Judicial Conference to implement annual cost-of-living adjustments (COLAs) for panel attorney rates. Congress has not fully funded these adjustments. If COLAs had been provided annually as authorized by the statute, using OMB-projected inflationary adjustments, the non-capital rate would reach $140 in fiscal year 2013. Congress has responded to earlier Judicial Conference requests by funding a non-capital panel attorney rate of $125 per hour in fiscal year 2010 (versus $139 authorized by the CJA). While the judiciary firmly believes that the full statutory rate of $140 is well justified for fiscal year 2013, it recognizes the fiscal pressures Congress faces. Consequently, the judiciary has once again deferred seeking the full statutory non-capital rate for fiscal year 2013, but is requesting a one-year cost-of-living adjustment to increase the non-capital rate by $1 to an estimated $126, and increase the capital rate by $1 to an estimated $179 per hour. The non-capital CJA hourly panel attorney rate must cover both overhead (approximately $70 per hour) and a fair hourly fee. After deducting overhead, panel attorneys average $55 per hour before taxes (at the $125 rate).

## INCREASING CASE COMPLEXITY

Cases assigned to CJA attorneys continue to increase in complexity. Changes in technology, prosecution tactics and priorities, legislation, sentencing policy, and case law add to the challenge of providing competent representation to financially eligible criminal defendants in the federal courts.

Sex Offenses and Adam Walsh Act

The Adam Walsh Child Protection and Safety Act of 2006 and related legislation dramatically increased the scope and severity of federal penalties in sex abuse and child pornography cases. In fiscal year 2010, 4.6 percent of federal prisoners were serving sentences for sex offenses, up from less than 1 percent in fiscal year 1995. This increase in sex offense prosecutions has resulted in more appointments and trials, and additional defense costs. From October 2010, through September 2011, 12.8 percent of sex abuse cases proceeded to trial, as compared with an overall federal criminal trial rate of 3.1 percent.

Sex offender registry (SORNA) cases increased by 67 percent from 2010 to 2011. This legally complex and rapidly evolving area of CJA representation presents additional workload for federal defenders and panel attorneys. Evidence in pornography cases is typically found on computer drives and networks, and trial preparation requires expert forensic review and testimony. The defense team is required to review image evidence at U.S. attorney or law enforcement agency offices, increasing attorney, expert, and investigator travel and preparation time. Psychological evaluations of the client and testimony on results are usually necessary for these cases. Sex

offense cases will continue to absorb a great deal of attorney, investigator, and staff time, and require the assistance of forensics and mental health experts.

Advising on Immigration Consequences
The United States Supreme Court's decision in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), clarified that criminal defense attorneys must advise defendants of the immigration consequences of their criminal case. Defense counsel must not only avoid giving incomplete or inaccurate advice about immigration law; they must affirmatively advise their clients on certain immigration law matters. The United States Sentencing Commission reports that, in the fourth quarter of 2011, 48.1 percent of federal defendants were non-U.S. citizens. Most CJA counsel do not have specialized expertise in immigration law. They must, therefore, consult with immigration law experts and conduct additional research, training, and investigation in order to inform their clients adequately about the immigration consequences of their case. This added responsibility has increased defense workloads across the country.

Terrorism-Related and Other High Profile Cases
Federal defenders have been appointed in many terrorism-related cases. Terrorism and national security cases often require extraordinary resources, including full-time efforts of one or more assistant federal defenders supported by investigators, paralegals, interpreters, research and writing specialists, and expert services (such as information technology specialists). In addition to the interpreters who facilitate defense team communications with clients and witnesses, these cases often require translators for the review of foreign language discovery, audio recordings (sometimes involving years of surveillance), and transcriptions of recordings. The cost of these cases is also affected by the need to conduct investigations in foreign countries under difficult circumstances.

Adding to the resource-intensive nature of these cases is the government's requirement that lawyers, investigators, and service providers have or obtain appropriate security clearances. This increases both the cost and time expended on representations. Because the penalties for a conviction are significant, such cases generally go to trial and through the entire appeals process. In addition to the prosecution of terrorism and national-security cases in Article III federal courts, FDOs have been appointed to represent approximately 55 of the detainees held in Guantanamo Bay, Cuba, requiring commercial and military flights to Guantanamo Bay by attorneys, investigators, interpreters, and psychologists in order to prepare habeas corpus petitions or negotiate transfers to other nations.

Increased Enforcement along the Southwest Border
In recent years, the Department of Justice has prosecuted high numbers of immigration-related federal criminal cases along the Southwest Border. All of these cases require the appointment of defense counsel. Before recent increases in assistant U.S. attorney positions assigned to districts along the Southwest Border, U.S. attorneys' offices typically filed charges on only the most egregious and readily provable cases. With increased staffing, federal prosecutors are now able to

lower prosecution thresholds and file cases that would previously have been declined, including matters with significant evidentiary, legal, and sentencing issues. It is anticipated that the additional U.S. Attorney staff will also result in more resource-intensive indictments targeting multiple defendants and larger conspiracies.

## COST CONTAINMENT INITIATIVES

Cost Effective Services

The judiciary continues to engage in long-range planning efforts to ensure cost containment and accountability without compromising the defender services program's constitutionally mandated mission.

The judiciary is conscious of the budget challenges facing our nation and recognizes the need to pursue responsible cost-containment measures for the defender services program. Ongoing cost-containment initiatives include (1) promoting the use of case budgeting to limit expenses in capital and other high-cost CJA panel attorney representations; (2) developing and applying FDO case weights to assist in projecting FDO resource requirements nationally and evaluating individual FDO requests for additional resources; and (3) supporting distance learning initiatives to maximize the training available to CJA attorneys with the funds that are available for this purpose. The judiciary is also pursuing other courses, in collaboration with DOJ, to reduce the costs of federal defender and panel attorney representations (as well as those of other judiciary and DOJ personnel) associated with matters of discovery, the death penalty authorization process, and the placement of pretrial detainees in remote facilities.

Case Budgeting of CJA Panel Attorney Representations

In fiscal year 2011, the 2.6 percent of panel attorney cases that would be eligible for budgeting (all capital representations and non-capital mega-cases exceeding $30,000) accounted for approximately 30.7 percent ($132.1 million) of the annual expenditures for all panel attorney representations.

The judiciary continues to promote the use of case-budgeting techniques for these representations nationwide in order to help ensure that, in all capital and other high-cost panel attorney cases, the expenses of representation are anticipated, substantiated, monitored, and, where appropriate, limited before they are incurred. As part of this effort, the Second, Sixth, and Ninth Circuits participated in a case-budgeting pilot project focused on identifying cost drivers, continuing to develop budgeting strategies, and working with judges and attorneys on addressing specific cost issues. Each circuit utilized a case-budgeting attorney funded by the Defender Services account to coordinate case budgeting and other CJA cost-containment efforts.

The Federal Judicial Center (FJC) conducted an evaluation of the pilot project to determine its impact on case management and cost control. The FJC's December 2010 evaluation report found that the pilot accomplished the goal of containing costs, while achieving a high-quality defense, by enhancing management of and accountability over high-cost cases. The FJC report also found that the savings from the pilot exceeded its costs and that the "most modest estimate" of the pilot program's net savings was about $2.0 million between fiscal year 2007 and fiscal year 2009. The case-budgeting attorneys accomplished cost savings by working with panel attorneys to

develop case budgets in high-cost cases, including identifying means of cost containment, and then making recommendations to counsel and judges regarding proposed budgets. The case-budgeting attorneys developed best practices and policies, which assisted case budgeting specifically and cost containment generally in all CJA panel attorney representations. Case-budgeting attorneys also assisted courts in reviewing vouchers in complex cases to help ensure the reasonableness of the claims. At its March 2011 session, the Judicial Conference approved the utilization of circuit CJA case-budgeting attorney positions, the continued defender services-account funding for the three current case-budgeting attorneys, and an incremental expansion in the number of positions. The judiciary is seeking approval to add four case-budgeting attorney positions in fiscal year 2013.

Improving FDO Resource Management by Developing FDO Case Weights

Several factors determine the amount of funding an FDO requires to provide effective CJA representation, including the number and type of cases, and case and district specific complexities. For fiscal year 2012, the judiciary has implemented, on an experimental basis, a budget methodology utilizing a weighted case analysis developed by the RAND Corporation.

RAND's case-weighting system is based on average FDO attorney time expended to complete each case type in comparison to the national average for all case types. RAND concluded that the weights could be used to help evaluate workload changes for a particular organization from year to year and noted that weighted caseloads offer a better tool for initially identifying new resource requirements than raw case numbers, presenting an improved way of assessing evolving needs. The judiciary has used weighted cases to assist in developing the fiscal year 2013 defender services appropriation request.

Distance Learning

The defender services program continues to develop and produce distance learning programs. In the short term, it is making selected training sessions available to CJA practitioners by video in order to reach more practitioners without having to present additional live training programs. In the long term, engagement of a contractor is planned to assist in developing a more comprehensive distance learning plan that effectively utilizes technology to supplement the face-to-face training conducted by the program.

Discovery Costs

As the amount of data associated with individual CJA representations expands in size and complexity year after year, CJA attorneys—both FDO staff and panel attorneys—require new tools to help them organize, review, and manage the large amounts and variety of information provided by the prosecution as discovery material. Paper documents must be scanned, and analog recordings digitized. This is especially necessary for cases with hundreds of thousands or millions of pages of information. Evidence encompasses not only discovery materials produced by the government, but those gathered by third parties and the defense. Federal defenders and panel attorneys must have sufficient litigation resources, including national support staff, to meet the challenge presented by DOJ's litigation support capabilities.

The judiciary foresees that the number of discovery-intensive cases will continue to grow.

Three major initiatives are underway to address this issue.

- Contracts with three coordinating discovery attorneys (CDAs) advise panel attorneys and defender offices on cost-effective ways to manage effectively and efficiently large volumes of documents in the most complex cases. The CDAs are presently working on 15 to 20 cases nationally.

- The procurement of an "evidence review platform," which consists of one or more software applications, will permit the capture, organization, analysis, and review of case-related electronic data by CJA panel attorneys and FDO staff while avoiding the higher cost alternative of purchasing software in multiple cases year after year.

- Representatives of the defender services program have been meeting with staff from the Department of Justice concerning the creation of "Recommendations for the Production of Electronically Stored Information in Discovery in Federal Criminal Cases" (Recommendations). The Recommendations are designed to make the exchange of discovery more effective and efficient by encouraging early discussion of electronic discovery issues through "meet and confers" between the prosecution and defense; the exchange of data in standard or reasonably useable formats; and resolution of disputes without the necessity of court involvement, where possible. The final version of the document is expected to be released for use in the second quarter of fiscal year 2012.

<u>Remote Detention</u>

The judiciary remains concerned about increased costs caused by the remote placement of pretrial detainees. CJA panel attorneys and federal defenders must meet with their clients in person to provide effective representation. When they have to travel long distances in order to do so, substantial additional costs are incurred. In July 2008, an ad hoc remote detention working group was formed with judiciary and DOJ stakeholders, including the Federal Detention Trustee (FDT) and representatives of the U.S. Marshals Service and Bureau of Prisons, to discuss strategies for addressing these and other issues associated with the remote detention of pretrial defendants. In October 2008, the Administrative Office distributed a survey, developed by the ad hoc working group, to chief judges and other district stakeholders, to assess the severity of the remote detention problems in their respective jurisdictions. The ad hoc group met to review the survey results, discuss possible solutions, and assist the FDT in creating content for a website that would give each district access to its respective detention data and survey results, a list of recommended actions tailored to its level of remote detention difficulty, and useful national detention information. The website became accessible in the summer of 2009, and the data was updated in 2010. Currently there is an effort to identify the judicial districts in which costs are most affected by remote detention, with the goal of helping them identify and pursue initiatives that can reduce those costs.

Improvement in DOJ Procedures for Decisions Not to Seek the Death Penalty in Death-Eligible Cases

Over the past several years, the judiciary has pursued discussions with DOJ about streamlining its "fast-track" protocol for evaluating and reaching decisions *not* to seek the death penalty. Until DOJ notifies counsel that it does not intend to seek the death penalty for a death-eligible defendant, defense counsel must assume that the death penalty will be pursued, and the judiciary is obligated to bear the substantial cost of the statutorily required two defense counsel providing representation, compensated at the higher capital rate, as they carry out their professional responsibility to undertake mitigation investigations and gather other evidence relevant to the question of whether a death sentence would be appropriate. The goal of this judiciary initiative is to reduce the length of time between the indictment of a defendant on capital-eligible charges and a decision by the Attorney General that the defendant will *not* be prosecuted capitally in cases where it is highly unlikely that the DOJ will ultimately seek the death penalty. An early decision by the Attorney General *not* to seek the death penalty usually achieves significant cost savings for the defender services program, as well as eliminating unnecessary diversion of limited judicial resources.

Based on these discussions, CJA Guideline 670 was jointly developed by the judiciary and DOJ staff, and approved by the Judicial Conference in September 2007. The guideline encourages courts to set reasonable deadlines for stages of the death penalty authorization process (subject to extension for good cause). In July 2011, DOJ published a revised death penalty authorization protocol. Efforts will continue to encourage DOJ to streamline its non-death authorization protocol further.

## JUSTIFICATION OF CHANGES

The fiscal year 2013 request for appropriated funds is $1,063.5 million, an increase of $32.5 million (3.2 percent) over the fiscal year 2012 appropriation of $1,031.0 million. Of this increase, $32.1 million is requested for adjustments to base. A total of $0.4 million is requested for a program increase to fund four new case-budgeting attorney positions.

## ADJUSTMENTS TO BASE

The following narrative provides information and justification for each of the adjustments to base for this account.

### A. PAY AND BENEFIT ADJUSTMENTS

*1. Proposed January 2013 pay adjustments*

**a. Federal pay adjustment**

**Requested Increase: $1,683,000**

As of January 2012, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 0.5 percent beginning on or after January 1, 2013. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2013.

**b. Panel attorney capital ECI rate adjustment**

**Requested Increase: $122,000**

The requested funding would increase the capital panel attorney hourly rate by an assumed ECI adjustment of 0.5 percent. This would increase the hourly rate from $178 to an estimated $179, effective January 1, 2013. There is a time delay between when the rate increase is implemented and when vouchers are submitted with the higher rate. Therefore, the requested increase provides for the cost of six months of the rate increase in fiscal year 2013.

**c. Panel attorney non-capital ECI rate adjustment**

**Requested Increase: $329,000**

The requested funding would increase the non-capital panel attorney hourly rate by an assumed ECI adjustment of 0.5 percent. This would increase the hourly rate from $125 to an estimated $126, effective January 1, 2013. There is a time delay between when the rate increase is implemented and when vouchers are submitted with the higher rate. Therefore, the requested increase provides for the cost of three months of the adjustment in fiscal year 2013.

*2. Promotions and within-grade increases*

**Requested Increase: $3,369,000**

The requested increase provides for promotions and within-grade increases for FDO personnel. The salary plan for federal defender personnel provides for periodic within-grade increases for staff who achieve at least satisfactory performance ratings.

*3. Health benefits increase*

**Requested Increase: $2,031,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 6.8 percent in January 2012 and another 7.0 percent in January 2013. The requested increase annualizes the 2012 premium increase, and includes a nine-month provision for the anticipated fiscal year 2013 premium increase.

*4. One more compensable day*

**Requested Increase: $1,674,000**

There is one more compensable day in fiscal year 2013 than in fiscal year 2012. This request increases personnel compensation and benefits expenses associated with having one more compensable day.

*5. Annualization of new fiscal year 2012 staff*

**Requested Increase: $8,105,000** **FTE: 38**

The requested increase annualizes the cost of additional federal defender organization staff expected to be hired during fiscal year 2012 due to workload and case complexity. The judiciary estimates that 76 positions will be filled for an average of six months. This line item requests the remaining six months funding in fiscal year 2013 to annualize the 76 positions (38 FTE).

**B. OTHER ADJUSTMENTS**

*6. Inflationary adjustments*

**Requested Increase: $2,844,000**

Consistent with guidance from the Office of Management and Budget, $2.8 million is required to fund inflationary increases of 1.6 percent for operating expenses such as travel, utilities, contractual services, supplies and materials, and furniture and equipment.

*7. Inflationary increases in space rental costs*

**Requested Increase: $999,000**

FDOs are located in both courthouses and private commercial office space. The amount requested funds inflationary increases of 2.0 percent for current space in fiscal year 2013.

### 8. *Increases in caseload, case complexity and change in caseload mix*

#### a. Non-capital cases

**Requested Increase: $5,194,000**

The requested increase provides for costs due to (1) increased panel attorney caseload, and (2) increased complexity and changes in the non-capital caseload mix. These non-capital cases include drug offenses, weapon violations, immigration matters, fraud, and other criminal and non-criminal matters. The requested increase is offset by a $2.2 million decrease due to a lower FDO projected caseload in fiscal year 2013.

| Projected Non-Capital Representations | | | |
|---|---|---|---|
| | FY 2012 | FY 2013 | Difference |
| Federal Defender Organizations | 115,700 | 115,300 | (400) |
| Panel Attorneys | 87,900 | 89,700 | 1,800 |
| Total Projected Representations | 203,600 | 205,000 | 1,400 |

#### b. Capital cases

**Requested Decrease: ($1,700,000)**

The judiciary is projecting that expenses for capital habeas corpus and capital prosecution representations will decrease by $1.7 million in fiscal year 2013.

#### c. FY 2013 cost containment savings

**Requested Decrease: ($5,500,000)**

The $5.5 million reduction is a result of fiscal year 2013 savings in the following areas: making libraries more electronic and not renewing book subscriptions; implementing a moratorium on the acquisition of new space, and the elimination of furniture allotments. In addition, further reductions were made by limiting the funding for training requirements.

The table below reflects the net savings realized in fiscal year 2013 when the cost of caseload changes are offset by cost containment savings:

| | |
|---|---|
| a. Non-Capital cases | $5,194,000 |
| b. Capital cases | ($1,700,000) |
| c. Cost containment savings | ($5,500,000) |
| Net Savings | ($2,006,000) |

***9. Increase in appropriation to fund base requirements due to a decrease in non-appropriated source of funds***

**Requested Increase: $12,980,000**

The defender services program has been able to reduce requirements for appropriated funds through the use of unobligated no-year funds carried forward from prior fiscal years. In fiscal year 2012, $23.0 million in balances from fiscal year 2011 was available to finance fiscal year 2012 requirements. In fiscal year 2013, absent unforeseen expenses that might arise, the judiciary expects $10.0 million in non-appropriated funds to be available, a decrease of $13.0 million from fiscal year 2012. Therefore, $13.0 million in funding is requested to substitute direct appropriations for expenses previously funded from carryforward balances.

## C. PROGRAM INCREASE

***10. Four New Case-Budgeting Attorney Positions***

**Requested Increase: $387,000** **FTE: 2**

The requested increase would fund a circuit case-budgeting attorney in four additional circuits. Currently, there are three case-budgeting attorneys – one in each of the original pilot circuits (Second, Sixth, and Ninth circuits).

The need for these additional positions is driven by the fact that a very small percentage of panel attorney representations account for almost one-third of overall national panel attorney expenditures. The case-budgeting attorneys focus their efforts on these high-cost cases, and it enables them to reduce costs in the courts.

## FINANCING THE FISCAL YEAR 2013 REQUEST

***11. Anticipated carryforward from fiscal year 2012 into fiscal year 2013.***

**Estimated funds available: $10,000,000**

The judiciary projects $10.0 million will be available through anticipated savings to carry forward from fiscal year 2012 into fiscal year 2013 and offset the fiscal year 2013 appropriation request for the defender services program. Savings are related to expected unobligated FDO funds. The judiciary will advise appropriations subcommittee staffs of changes to this estimate.

## COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES

***Fees of Jurors and Commissioners***

## SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | |
|---|---|
| **Fiscal Year 2012 Enacted Appropriation** | **$51,908,000** |
| **Fiscal Year 2013 Requested Appropriation** | **54,635,000** |
| **Requested Increase from Fiscal Year 2012 Appropriation** | **2,727,000** |

## APPROPRIATION LANGUAGE

## COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES

## FEES OF JURORS AND COMMISSIONERS

For fees and expenses of jurors as authorized by 28 U.S.C. 1871 and 1876; compensation of jury commissioners as authorized by 28 U.S.C. 1863; and compensation of commissioners appointed in condemnation cases pursuant to rule 71.1(h) of the Federal Rules of Civil Procedure (28 U.S.C. Appendix Rule 71.1(h)), [$51,908,000] *$54,635,000*, to remain available until expended: *Provided*, That the compensation of land commissioners shall not exceed the daily equivalent of the highest rate payable under 5 U.S.C. 5332.

**SUMMARY OF REQUEST**
**FEES OF JURORS AND COMMISSIONERS**
**FISCAL YEAR 2013**
**($000)**

| Page No. | | Original Request FTEs | Amount |
|---|---|---|---|
| | **Fiscal Year 2013 Resource Requirements:** | | |
| | **Fiscal Year 2012 Obligations** | - | $56,281 |
| | Carryforward from prior years | - | (4,373) |
| | **Fiscal Year 2012 Enacted Appropriation** | - | $51,908 |
| | **Adjustments to Base:** | | |
| 7.10 | 1. Inflationary adjustments | | |
| | a. Grand Jurors | - | 159 |
| | b. Petit Jurors | - | 365 |
| 7.10 | 2. Projected change in available jurors | | |
| | a. Grand Jurors | - | (25) |
| | b. Petit Jurors | - | (65) |
| 7.10 | 3. Funding necessary to maintain fiscal year 2012 service levels due to an anticipated decline in non-appropriated funds | - | 2,293 |
| | **Subtotal, Adjustments to Base** | - | 2,727 |
| | **Total Current Services Appropriation Required** | - | 54,635 |
| | **Total Fiscal Year 2013 Appropriation Required** | - | 54,635 |
| | **Total Appropriation Change, Fiscal Year 2012 to Fiscal Year 2013** | - | 2,727 |
| | **Financing the Fiscal Year 2013 Request:** | | |
| | **Total Appropriation Required** | - | 54,635 |
| | Carryforward Balances from Prior Years into Fiscal Year 2013 | - | 2,080 |
| | **Estimated Obligations, Fiscal Year 2013** | - | 56,715 |

**COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES**
**FEES OF JURORS AND COMMISSIONERS**
**Obligations by Activity ($000)**

| Activity | Fiscal Year 2011 Actual | Fiscal Year 2012 Estimate | Fiscal Year 2013 Request |
|---|---|---|---|
| **Comparison by activities:** | | | |
| ***Land commissioners*** | 14 | 100 | 100 |
| ***Grand Jurors*** | 16,288 | 16,398 | 16,532 |
| ***Petit Jurors*** | 37,909 | 39,783 | 40,083 |
| **Total Obligations** | **54,211** | **56,281** | **56,715** |
| Unobligated Balance, start of year | (7,959) | (6,453) | (2,080) |
| Unobligated Balance, end of year | 6,453 | 2,080 | - |
| Transfer from the Court of International Affairs | (400) | - | - |
| **Appropriation** | **52,305** | **51,908** | **54,635** |

**Obligations by Budget Object Class ($000)**

| | Description | Fiscal Year 2011 Actual | Fiscal Year 2012 Estimate | Fiscal Year 2013 Request |
|---|---|---|---|---|
| 11 | Personnel compensation | 27,191 | 28,230 | 28,448 |
| 12 | Personnel benefits | 1 | 1 | 1 |
| 21 | Travel | 23,651 | 24,555 | 24,744 |
| 23 | Rent, communications and utilities | 1,553 | 1,612 | 1,624 |
| 25 | Other services | 682 | 707 | 713 |
| 26 | Supplies and materials | 1,133 | 1,176 | 1,185 |
| | **Total obligations** | **54,211** | **56,281** | **56,715** |

**COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES**
**FEES OF JURORS AND COMMISSIONERS**

**Relation of Obligations to Outlays ($000)**

| | FY 2011 Actual | FY 2012 Estimate | FY 2013 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 54,211 | 56,281 | 56,715 | 434 |
| Obligated balance, start of year | 2,904 | 1,100 | 2,981 | 1,881 |
| Obligated balance, end of year | (1,100) | (2,981) | (4,296) | (1,315) |
| Change in prior year balances | 0 | - | - | - |
| **Net Outlays** | **56,015** | **54,400** | **55,400** | **1,000** |

## GENERAL STATEMENT AND INFORMATION

This appropriation provides for the statutory fees and allowances of grand and petit jurors, and for the compensation of jury and land commissioners. In addition to reimbursement for daily travel to and from court, expenses allowed include meals and lodging furnished to sequestered jurors, and transportation to view evidence or crime scenes offsite. Budgetary requirements depend largely upon the volume and the length of jury trials demanded by parties to both civil and criminal actions and the number of grand juries being convened by the courts at the request of United States Attorneys. All of these factors are outside the control of the judiciary.

### Petit Jurors

A petit jury may be called to hear a trial in a civil or criminal action. A criminal trial normally would have a 12-person jury and a civil trial would typically have a 7- to 9- person jury. In a civil trial, the jury's responsibility is to decide whether the defendant injured or otherwise failed to fulfill a legal obligation to the plaintiff and to determine what the compensation should be. Criminal juries decide whether the defendant committed the crime as charged.

The number of jurors called on any given day to serve in a petit jury pool is related to the number and type of cases in which a trial by jury is requested. Moreover, under rules of criminal procedure, criminal trials are allowed additional peremptory challenges compared to civil trials because of the jury size. This means that the court must take these challenges into account when determining the number of potential jurors in a criminal jury pool. Thus, the number of potential jurors in a criminal jury pool is likely to be greater than the number of jurors in a civil jury pool, but the likelihood of jurors being called in a criminal jury is less than in a civil jury.

In fiscal year 2011, the total number of available petit jurors decreased by 2.9 percent to 469,199, continuing a 6-year decline in available petit jurors. Available petit jurors are projected to continue decreasing by just over 1 percent to 463,400 in fiscal year 2012, and then remain constant at 463,100 in fiscal year 2013. Table 7.1, on page 7.6 provides a historical pattern of the number of jurors called and the related costs of paying the expenses of those jurors.

**Table 7.1 Petit Juror Usage**

| | | Petit Jury Trial Days | | | | Available Jurors | | Cost | |
|---|---|---|---|---|---|---|---|---|---|
| | Fiscal Year | Criminal | Civil | Total | Percent Change | Jurors | Percent Change | Fees & Expenses | Percent Change |
| Actual | 2002 | 14,806 | 15,427 | 30,233 | 0.0% | 583,413 | 0.0% | 41,279,000 | 0.0% |
| | 2003 | 15,508 | 14,998 | 30,506 | 0.9% | 603,785 | 3.5% | 43,409,000 | 5.2% |
| | 2004 | 17,132 | 13,935 | 31,487 | 3.2% | 607,673 | 0.6% | 44,032,000 | 1.4% |
| | 2005 | 17,360 | 13,435 | 30,795 | -2.2% | 612,404 | 0.8% | 45,645,000 | 3.7% |
| | 2006 | 15,634 | 12,987 | 28,621 | -7.1% | 579,706 | -5.3% | 45,177,000 | -1.0% |
| | 2007 | 15,339 | 12,054 | 27,393 | -4.3% | 554,193 | -4.4% | 47,489,000 | 5.1% |
| | 2008 | 14,946 | 11,890 | 26,836 | -2.0% | 544,565 | -1.7% | 44,906,000 | -5.4% |
| | 2009 | 14,371 | 10,985 | 25,356 | -5.5% | 522,348 | -4.1% | 45,441,000 | 1.2% |
| | 2010 | 13,088 | 10,825 | 23,913 | -5.7% | 483,293 | -7.5% | 47,006,000 | 3.4% |
| | 2011 | 12,714 | 11,222 | 23,936 | 0.1% | 469,199 | -2.9% | 37,909,000 | -19.4% |
| Estimated | 2012 | 12,700 | 11,300 | 24,000 | 0.3% | 463,400 | -1.2% | 39,783,000 | 4.9% |
| | 2013 | 12,700 | 11,700 | 24,400 | 1.7% | 463,100 | -0.1% | 40,083,000 | 0.8% |

## Grand Jurors

A grand jury is a jury of inquiry whose duty it is to receive complaints and accusations in criminal cases, hear the evidence presented on the part of the Government, and find bills of indictment in cases where the jurors are satisfied that the evidence presented is sufficient to warrant filing an indictment and bringing the case to trial. The number of grand juries convened by district courts varies depending on such factors as the number of criminal cases, the type of criminal activity, and the number of places in which court is held. Grand juror activity is measured by the number of sessions convened, jurors in session and total jurors in attendance. Available grand jurors declined by 1.5 percent in fiscal year 2011 to 200,362. The number of available grand jurors is projected to remain constant in fiscal year 2012 at 200,300, and in fiscal year 2013 at 200,000. Table 7.2, on page 7.8, provides further detail on grand jury activity.

**Table 7.2 Grand Jury Activity**

| | Total Number of Grand Jurors | | | | | Available Jurors | | | Cost | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Fiscal Year | Sessions Convened | Percent Change | Jurors in Session | Percent Change | Hours in Session | Jurors | Percent Change | Fees & Expenses | Percent Change |
| Actual | 2003 | 10,197 | 0.0% | 203,691 | 0.0% | 51,974 | 221,598 | 0.0% | 16,267,000 | 0.0% |
| | 2004 | 10,402 | 2.0% | 207,245 | 1.7% | 52,452 | 224,724 | 1.4% | 16,260,000 | 0.0% |
| | 2005 | 9,854 | -5.3% | 196,197 | -5.3% | 48,582 | 212,662 | -5.4% | 15,999,000 | -1.6% |
| | 2006 | 9,399 | -4.6% | 187,646 | -4.4% | 45,718 | 204,530 | -3.8% | 15,633,000 | -2.3% |
| | 2007 | 9,279 | -1.3% | 185,083 | -1.4% | 45,197 | 201,073 | -1.7% | 15,427,000 | -1.3% |
| | 2008 | 9,358 | 0.9% | 186,603 | 0.8% | 44,736 | 204,045 | 1.5% | 15,721,000 | 1.9% |
| | 2009 | 9,257 | -1.1% | 186,194 | -0.2% | 44,676 | 203,160 | -0.4% | 15,755,000 | 0.2% |
| | 2010 | 9,277 | 0.2% | 186,020 | -0.1% | 44,845 | 203,435 | 0.1% | 17,642,000 | 12.0% |
| | 2011 | 9,083 | -2.1% | 182,106 | -2.1% | 43,083 | 200,362 | -1.5% | 16,288,000 | -7.7% |
| Estimated | 2012 | 9,100 | 0.2% | 181,800 | -0.2% | 43,000 | 200,300 | 0.0% | 16,398,000 | 0.7% |
| | 2013 | 9,000 | -1.1% | 181,200 | -0.3% | 42,800 | 200,000 | -0.2% | 16,532,000 | 0.8% |

| | Average Number of | |
|---|---|---|
| Fiscal Year | Jurors per Session | Hours per Session |
| 2003 | 20.0 | 5.10 |
| 2004 | 19.9 | 5.04 |
| 2005 | 19.9 | 4.93 |
| 2006 | 19.9 | 4.86 |
| 2007 | 19.9 | 4.87 |
| 2008 | 19.9 | 4.87 |
| 2009 | 20.1 | 4.80 |
| 2010 | 20.1 | 4.80 |
| 2011 | 20.0 | 4.70 |

| Total Number of Grand Juries | | |
|---|---|---|
| In Existence at the beginning of the Fiscal Year | Impaneled | Discharged |
| 500 | 335 | 288 |
| 453 | 338 | 286 |
| 462 | 307 | 312 |
| 442 | 316 | 319 |
| 413 | 320 | 292 |
| 426 | 323 | 300 |
| 444 | 322 | 265 |
| 450 | 334 | 265 |
| 458 | 341 | 263 |

## Land Commissioners

The responsibility of land commissioners is to determine the issue of just compensation arising from the deprivation of private property for public use. Under the Federal Rules of Civil Procedure, a district court may use its discretion to order that compensation for condemned property be determined by a commission of three persons appointed by the court. The determination of compensation is based on evidence presented during the exercise of trial procedures and evidentiary rulings. This delegation of the judicial function requires close judicial supervision and requires that actions taken by the commission be fully documented to permit full review by the district or appellate courts. This system ensures due process of law to the litigants.

Land commissioners are compensated based on the daily equivalent of the highest rate payable under 5 U.S.C. 5332, and are also eligible for locality pay amounts that apply to their locality pay areas. These amounts are payable on top of their basic pay. The annual adjusted pay rate (i.e., basic pay plus locality pay) for land commissioners is limited to the rate of pay for level III of the Executive Schedule, currently $165,300.

## JUSTIFICATION OF CHANGES

The fiscal year 2013 appropriation request for Fees of Jurors and Commissioners totals $54,635,000, which represents an increase of $2,727,000 or 5.3 percent above the fiscal year 2012 appropriation of $51,908,000.

## ADJUSTMENTS TO BASE

**1. *Inflationary adjustments***

**a. Grand Jurors**

**Requested Increase: $159,000**

An increase of $159,000 is requested for inflationary adjustments associated with grand juror costs including travel allowances (mileage, parking, tolls), meals and lodging for sequestered jurors, and other miscellaneous juror expenses.

**b. Petit Jurors**

**Requested Increase: $365,000**

An increase of $365,000 is requested for inflationary increases associated with petit juror costs including travel allowances (mileage, parking, tolls), meals and lodging for sequestered jurors, and other miscellaneous juror expenses.

***2. Projected change in available jurors***

**a. Grand Jurors**

**Requested Decrease: ($25,000)**

A decrease of $25,000 is the result of a projected decrease in the number of available grand jurors from fiscal year 2012 to fiscal year 2013.

**b. Petit Jurors**

**Requested Decrease: ($65,000)**

A decrease of $65,000 is the result of a projected decrease in the number of available petit jurors from fiscal year 2012 to fiscal year 2013.

***3. Funding needed to maintain fiscal year 2011 service level***

**Requested Increase: $2,293,000**

The fiscal year 2012 financial plan was financed in part by $4.4 million in carry forward balances from prior years. In fiscal year 2013, the judiciary estimates that $2.1 million in carryforward balances will be available, a decrease of $2.3 million. The judiciary requests appropriated funds for fiscal year 2013 to replace these non-appropriated funds in order to maintain the same level of service as provided in fiscal year 2012.

**COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES**
***Court Security***
**SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS**

| | |
|---|---|
| **Fiscal Year 2012 Enacted Appropriation** | **$500,000,000** |
| **Fiscal Year 2013 Appropriation Request** | **$514,673,000** |
| **Requested Increase from Fiscal Year 2012 Appropriation** | **$14,673,000** |

**APPROPRIATION LANGUAGE**

**COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES**

**COURT SECURITY**

For necessary expenses, not otherwise provided for, incident to the provision of protective guard services for United States courthouses and other facilities housing Federal court operations, and the procurement, installation, and maintenance of security systems and equipment for United States courthouses and other facilities housing Federal court operations, including building ingress-egress control, inspection of mail and packages, directed security patrols, perimeter security, basic security services provided by the Federal Protective Service, and other similar activities as authorized by section 1010 of the Judicial Improvement and Access to Justice Act (Public Law 100-702), [$500,000,000] *$514,673,000*, of which not to exceed $15,000,000 shall remain available until expended, to be expended directly or transferred to the United States Marshals Service, which shall be responsible for administering the Judicial Facility Security Program consistent with standards or guidelines agreed to by the Director of the Administrative Office of the United States Courts and the Attorney General.

**SUMMARY OF REQUEST**
**COURT SECURITY**
**FISCAL YEAR 2013**
**(Dollar amounts in thousands)**

| Page | Fiscal Year 2013 Resource Requirements: | FTEs | Amount |
|---|---|---|---|
| | **Fiscal Year 2012 Obligations** | 74 | $506,990 |
| | Less Encumbered Carryforward from Fiscal Year 2011 into Fiscal Year 2012 | - | (5,313) |
| | **Fiscal Year 2012 Revised Obligations** | 74 | $501,677 |
| | Less Unencumbered Carryforward from Fiscal Year 2011 into Fiscal Year 2012 | - | (1,677) |
| | **Fiscal Year 2012 Enacted Appropriation** | 74 | 500,000 |
| | **Adjustments to Base:** | | |
| | **A. Personnel and Other Programs** | | |
| | 1. Pay and benefits increases | | |
| 8.13 | a. Proposed January 2013 pay adjustment (0.5% for nine months) | - | 37 |
| 8.13 | b. Promotions and within-grade increases | - | 74 |
| 8.14 | c. Health benefits increases | - | 45 |
| 8.14 | d. One more compensable day | - | 1,480 |
| 8.14 | 2. Annualization of new fiscal year 2012 USMS positions | 3 | 227 |
| 8.14 | 3. Annualization of fiscal year 2012 court security officer (CSO) positions (11) | - | 561 |
| 8.14 | 4. Fiscal year 2013 Department of Labor and Collective Bargaining Agreements wage rate adjustments (5.0%) | - | 17,566 |
| 8.15 | 5. Additional CSOs (2) associated with fiscal year 2013 new and existing space | - | 227 |
| 8.15 | 6. Reduction to CSOs costs (cost-containment) | - | (9,991) |
| 8.15 | 7. Inflationary increase in charges for contracts, services, supplies, and equipment | - | 86 |
| 8.16 | 8. Inflationary increase in GSA space rental costs | - | 124 |

| Page | | FTEs | Amount |
|---|---|---|---|
| 8.16 | 9. Changes in Federal Protective Service security charges | | |
| | a. Increase in basic security charges | - | 696 |
| | b. Increase in building-specific operating expense security charges | - | 4,539 |
| 8.17 | 10. Adjustments to base requirements for security systems and equipment | - | (2,347) |
| 8.20 | 11. Adjustments to base requirements for program administration | - | (277) |
| 8.21 | 12. Funding necessary to maintain fiscal year 2012 service levels due to an anticpated decline in non-appropriated funds | - | 1,677 |
| | **Subtotal, Adjustments to Base to Maintain Current Services** | 3 | 14,724 |
| | **Total Current Services Appropriation Required** | 77 | 514,724 |
| | **B. Program Increases:** | | |
| 8.21 | 13. New judiciary-funded positions | | |
| | a. Two USMS positions to replace existing contractors (funded for 6 months) | 1 | 190 |
| | b. Savings from two contractor conversions (6 months) | - | (241) |
| | **Subtotal, Program Increases** | 1 | (51) |
| | **Total Fiscal Year 2013 Appropriation Required** | 78 | 514,673 |
| | **Total Appropriation Increase, Fiscal Year 2012 to Fiscal Year 2013** | 4 | 14,673 |

**Financing the Fiscal Year 2013 Request:**

| | FTEs | Amount |
|---|---|---|
| **Total Appropriation Required** | 78 | 514,673 |
| Anticipated Carryforward Balances from Fiscal Year 2012 into Fiscal Year 2013 | - | - |
| **Estimated Obligations, Fiscal Year 2013** | 78 | 514,673 |

**COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES**
**COURT SECURITY**
**Obligation by Activity ($000)**

| **Authorization:** **Permanent** | FY 2011 Actual | FY 2012 Estimate | FY 2013 Request |
|---|---|---|---|
| **Comparison by activities:** | | | |
| *Court Security* | 482,062 | 506,990 | 514,673 |
| **Total Obligations** | **482,062** | **506,990** | **514,673** |
| Unobligated Balance, start of year | (12,963) | (6,990) | - |
| Prior Years' Recoveries | (12,600) | | |
| Unobligated Balance, end of year | 6,990 | - | - |
| Unobligated Balance, expiring or withdrawn | 3,183 | - | - |
| **Available Appropriation** | **466,672** | **500,000** | **514,673** |

**COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES**
**COURT SECURITY**
**Obligations by Budget Object Class ($000)**

| | | FY 2011 Actual | FY 2012 Estimate | FY 2013 Request |
|---|---|---|---|---|
| 11 | Personnel compensation | 6,309 | 7,864 | 8,015 |
| 12 | Personnel benefits | 1,810 | 2,242 | 2,340 |
| 21 | Travel | 291 | 316 | 321 |
| 22 | Transportation of things | 53 | 51 | 52 |
| 23 | Rent, communications and utilities | | | |
| | *Rental payments to GSA* | 6,028 | 6,119 | 6,243 |
| | *Communications, utilities & misc. charges* | 965 | 918 | 933 |
| 24 | Printing and Reproduction | - | - | - |
| 25 | Contractual Services | | | |
| | *CSO Contract* | 341,474 | 351,329 | 361,165 |
| | *Other Contractual Services* | 33,234 | 29,508 | 22,048 |
| | *Federal Protective Service Charges* | 68,257 | 75,949 | 81,184 |
| 26 | Supplies and materials | 777 | 934 | 948 |
| 31 | Equipment | 22,262 | 31,260 | 31,424 |
| 42 | Indemnities | 602 | 500 | - |
| | **Total obligations** | **482,062** | **506,990** | **514,673** |

## COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES

### COURT SECURITY

**Relation of Obligations to Outlays**

| | FY 2011 Actual ($000) | FY 2012 Estimate ($000) | FY 2013 Request ($000) | Difference (+) or (-) ($000) |
|---|---|---|---|---|
| Total Obligations | 482,062 | 506,990 | 514,673 | 7,683 |
| Obligated balance, start of year | 138,998 | 149,287 | 183,000 | 33,713 |
| Adjustments in expired accounts | (4,984) | - | - | - |
| Obligated balance, end of year | (149,287) | (183,000) | (188,000) | (5,000) |
| **Total Outlays** | **466,789** | **473,277** | **509,673** | **36,396** |

**Personnel Summary**

| | FY 2011 Actual | FY 2012 Estimate | FY 2013 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total compensable workyears (FTE): | | | | |
| **United States Marshals Service** | 51 | 67 | 71 | 4 |
| **Administrative Office Reimbursable Positions** | 6 | 7 | 7 | - |
| **Total, Court Security** | 57 | 74 | 78 | 4 |

## GENERAL STATEMENT AND INFORMATION

The Court Security appropriation was established in 1983 and funds the necessary expenses, not otherwise provided for, incident to the provision of protective guard services, and the procurement, installation, and maintenance of security systems and equipment for United States courthouses and other facilities housing federal court operations. This includes building access control, inspection of mail and packages, directed security patrols, perimeter security, and other similar activities as authorized by section 1010 of the Judicial Improvement and Access to Justice Act (Public Law 100-702).

The United States Marshals Service (USMS), of the Department of Justice (DOJ), by statute, is responsible for the security of the judiciary (28 USC §§ 564, 566). In that regard, Congress provides the USMS with funding to: secure prisoners; conduct protective investigations on threats against judges and other judiciary personnel; provide protective details when necessary; and provide security for witnesses and high threat trials. The USMS is also responsible for the day-to-day management of the Judicial Facility Security Program (JFSP) that is funded by the judiciary's Court Security appropriation. The JFSP provides for an adequate level of physical security for courthouses nationwide.

### Overview of the Judicial Facility Security Program

The JFSP represents a collaborative effort between the judiciary and the DOJ in ensuring the integrity of the judicial process by providing secure facilities in which to conduct judicial business. In 1982, DOJ requested and received a Delegation of Procurement Authority from the General

Services Administration (GSA) to contract for private security (known as court security officers or CSOs) guard services, and for the installation and maintenance of security systems and equipment for space occupied by the federal judiciary within GSA-controlled facilities.

The judiciary's fiscal year 1983 Court Security appropriation included funding to support this new delegation. The appropriation language provided that funding could be expended directly or transferred to the USMS, which will be responsible for administering the JFSP consistent with standards or guidelines agreed to by the Administrative Office of the U.S. Courts (AO) Director and the Attorney General.

The goals of the JFSP are:

1. ensuring an adequate CSO presence at new, renovated, and existing court facilities;

2. ensuring that effective security screening and/or access control systems are in place for court facilities housing judges, at leased facilities that house probation and pretrial services offices, and other facilities housing federal court operations; and

3. ensuring timely installation and maintenance of required security systems and equipment for new and renovated courthouses.

Security begins at the courthouse perimeter with the use of vehicle barriers and closed circuit surveillance television (CCTV) cameras and recorders. CSOs control access into the courthouse, or judicial areas within multi-tenant federal

buildings housing court operations, using security screening equipment. CSOs conduct roving patrols and staff fixed posts within the facility. The use of CSOs and security systems and equipment assists the USMS in protecting the court facility and thus the lives of judges, court staff, jurors, trial participants, and the general public, which helps ensure the effectiveness, viability, and integrity of the federal judicial process.

**Ensuring Adequate Security at Federal Court Facilities**

Federal courthouses are often the most visible symbols of the U.S. government presence in communities outside of Washington, D.C., and as such, may be considered inviting targets for terrorist attacks. The judicial process compels the attendance of suspected and convicted criminals to its facilities on a daily basis, along with witnesses and jurors. Also, family members of the suspected or convicted criminals, members of the Bar of the Court, the press, court employees, and the public must be able to enter and use the buildings.

Maintaining the proper balance between ensuring an open court system and having secure court facilities is a complex task given the increasing number of threats against the federal judiciary. For example, in recent years there have been shootings inside of, and at, federal court facilities resulting in the death of three CSOs; three federal judges have been assassinated as a direct result of their work as jurists; one federal judge was killed when representing the court during a visit with a Member of Congress; and a federal judge's husband and mother were murdered at her home as a result of a civil case that the judge handled.

**The Importance of CSOs and Security Systems and Equipment**

CSOs and security systems and equipment are key aspects in providing physical security to the courts. Together they are an integral part of the USMS' security plan to prevent and deter violence that can undermine the judicial process and erode public confidence in the judicial system. CSOs, using security screening systems, detect and intercept weapons, contraband, and other prohibited items that individuals attempt to bring into courthouses. The equipment plays a vital role in the screening of visitors, employees, mail, and packages entering courthouses.

USMS data from fiscal year 2011 indicates that 1,390,331 weapons (such as guns and knives), and other items prohibited in courthouses, such as cameras and cell phones, were detected. Of these items, 100 were permanently confiscated or abandoned at the courthouse. The rest were surrendered at the entrances, and returned to their owners upon departure.

**Federal Protective Service Charges**

By a series of Memoranda of Agreement and/or Memoranda of Understanding, most of the responsibility for security at facilities where the courts are the only or primary tenant, has been delegated to the USMS so that a single entity is responsible for the physical protection of these facilities. In multi-tenant buildings where the courts are not the major tenant, the USMS and Federal Protective Service (FPS) share security responsibility. In these instances, the security that FPS provides may include, to varying degrees, entry screening,

perimeter patrols, garage access control, and mail and package screening.

There are two types of facility-related security charges imposed by FPS on government facilities, including those occupied by the judiciary: (1) the "basic" security charge estimated in fiscal year 2013 to be $0.74 per rentable square foot of space; and (2) the "building-specific" security charge, which applies to FPS-procured contract guards and/or security systems and equipment provided to a particular building.

The basic security charge is designed to provide FPS with general funding to operate. The building-specific charge is designed to reimburse FPS for FPS-provided site-specific contract guards and security systems and equipment.

As previously requested by Congress, the AO has continued to take action to establish and implement clear and consistent parameters for budgetary decisions related to FPS billings. All courts have been reminded of the continued need to control FPS building-specific charges, and FPS headquarters staff was notified that additional services cannot be provided without an AO certification that funds are available. In April 2006, the AO informed the courts that no additional FPS-provided guards, equipment, or systems could be acquired without prior authorization. Periodic guidance has been issued since that time to remind the courts of this standing policy.

The judiciary continues to engage in dialogue with FPS officials to reiterate the need for detailed billing information that will allow review and certification that the bills are valid, proper, and correct, in accordance with 28 USC § 613.

**Perimeter Security Pilot Program**

The Consolidated Appropriations Act of 2008 (Pub. Law No. 110-161) authorized the USMS, which has the statutory responsibility to provide protection of the judicial process (28 U.S.C. §§ 564, 566), to establish a perimeter security pilot program at seven primary courthouses. (Section 307, Division D, Title III, Pub. Law No. 110-161.) Primary courthouses are facilities where the court, the U.S. Attorney's Office and/or the USMS occupy 75 percent or more of the rentable square footage in the building. The pilot program consolidates the responsibility for perimeter security guarding and security systems and equipment at the pilot sites under the control of the district U.S. marshal, who is supported by the judiciary-funded and USMS-administered JFSP.

The pilot was designed to address several issues. First, the judiciary's experience to date was that the current bifurcated system with two security providers - the FPS and the USMS - providing physical security at many federal courthouses had been unsatisfactory. Second, there had been instances in which FPS-installed surveillance cameras, and associated monitoring, switching and recording equipment, were not functioning for extended periods of time. Third, the judiciary found vulnerabilities in the FPS-provided security services due to the lack of national standards for determining how many security guards are needed to provide adequate physical security at federal facilities, including courthouses, and qualifications for FPS guards.

Following enactment of the fiscal year 2008 appropriations bill authorizing the pilot, the judiciary, the USMS, and the FPS

worked together on the implementation of the pilot program. The seven pilot sites that were selected by the USMS, in consultation with the AO were:

1. Everett McKinley Dirksen United States Courthouse/Chicago, Illinois
2. United States Courthouse and Federal Building/Baton Rouge, Louisiana
3. Russell B. Long Federal Building/Baton Rouge, Louisiana
4. Evo A. DeConcini United States Courthouse/Tucson, Arizona
5. Sandra Day O'Connor United States Courthouse/ Phoenix, Arizona
6. Theodore Levin United States Courthouse/Detroit, Michigan
7. Daniel Patrick Moynihan United States Courthouse/New York City

The goals of the pilot program were to:

- consolidate under the USMS all responsibility for, and provision of, perimeter and interior security systems;
- provide the judiciary with consistent and reliable perimeter security coverage; and
- ensure that there are no redundant security services (either perimeter guards or equipment/systems) being provided by the FPS and the USMS.

The consensus of opinions expressed by judges, court unit executives, and district U.S. marshals office staff has been supportive of the pilot program, as were the results of the USMS's district management survey. The benefits of the program included:

- Improved Quality of Security Services. The pilot program participants reported that they experienced better quality security coverage from the CSOs than they had from the FPS contract guards.
- Improved Security Coverage. The pilot program participants reported that they experienced improved protection as a result of the level of staffing provided under the pilot.
- Unified Command and Control Over Courthouse Physical Security. District USMS management stated that the pilot program allowed it to improve greatly its provision of protection to the courthouse and its occupants because it controlled all aspects of guarding and equipment.

- Improved Communication. Pilot participants reported better communication between the CSOs, USMS, court personnel, and law enforcement entities.

- Improved Stewardship and Monitoring of Equipment. The USMS reported that under the pilot, it was able to repair or replace broken security equipment and to maintain and control all security systems and equipment.

The judiciary was directed by Congress to report on the execution of the perimeter security pilot program authorized in fiscal year 2008, including a cost comparison. Pursuant to this direction, the judiciary transmitted that report to Congress on July 9, 2009.

The final report, which was a follow-up to the judiciary's July 2009 report, was transmitted to Congress on October 20, 2010, and provided Congress with the results of the pilot program and a series of potential staffing and funding options if the program is expanded to additional courthouses, as recommended by the judiciary. In addition, in light of the success at the pilot program sites, and because no additional funding would be required, the judiciary also recommended that the existing security be continued at those sites.

A follow-up report on the execution of the pilot program was submitted to Congress on August 8, 2011. Due to the current constrained budgetary environment, the follow-up report describes a proposal that would consolidate within the USMS the responsibility for all aspects of security provided during business week daytime hours only at primary courthouses.

The Senate Report accompanying the fiscal year 2012 appropriations bill acknowledged receipt of the follow-up report, and stated that although the program is meritorious, further implementation would be feasible only if it could be accomplished in a cost-neutral manner, and encouraged the judiciary to identify any such opportunities. The judiciary will continue to explore additional sites and to evaluate the cost-effectiveness of expanding the pilot to more locations. The Consolidated Appropriations Act, 2012 authorizes the continuation of the pilot at the existing locations.

**Fiscal Year 2013 Priorities**

In 2007, as a part of the judiciary's overall cost containment effort, the Judicial Conference implemented an annual budget cap for use in developing the budget request for the court security program. However, given the current constrained fiscal environment, this budget cap was further reduced when developing the fiscal year 2013 budget request. Accordingly, the fiscal year 2013 budget request represents only the most critical security needs of the judiciary, and funding to maintain an effective court security program.

The fiscal year 2013 request includes funding for two priorities: (1) base requirements (including CSO contract and USMS personnel costs, and FPS charges) in order to maintain the current level of protection to the courts; and (2) security

services and equipment requirements, including new and renovated court facilities, cyclical replacement of screening equipment, cyclical replacement of hardware and software for access control systems, and perimeter security improvements.

The need for adequate security for the judiciary is affected by factors beyond its control, such as the number of trials involving high-threat/high-profile defendants, dangerous drug traffickers, members of militant groups, and criminal enterprises whose crimes are of a violent nature. Attendance at trials by associates of these individuals heightens the need for enhanced security. In addition, in today's economic climate, civil trials involving controversial issues pose security threats to trial participants, spectators, and the judiciary. Bankruptcy proceedings also have the potential to become volatile when upset business partners or angry creditors become violent toward a judge, debtor, attorney, or other trial participant.

Additional resources are necessary to ensure that adequate levels of security are provided at all facilities housing court operations to avoid potentially harmful, or even fatal, consequences.

## Court Security Program Summary

| | FY 2012 Estimate | | | FY 2013 Request | | |
|---|---|---|---|---|---|---|
| | $000 | Positions | FTE | $000 | Positions | FTE |
| Court Security Officers | $351,329 | 4,274 | | $361,165 | 4,276 | |
| Federal Protective Service Charges | 75,949 | | | 81,184 | | |
| Security Systems and Equipment | 53,213 | | | 49,534 | | |
| Program Administration | 26,499 | | 74 | 22,790 | | 78 |
| **Total Obligations** | **$506,990** | | | **$514,673** | | |
| *Prior Year Carryforward* | | | | | | |
| Program Slippage | (5,313) | | | | | |
| Program Savings | (1,677) | | | | | |
| **Available Appropriation** | **$500,000** | | | **$514,673** | | |

## Justification of Changes

The fiscal year 2013 request for the Court Security program totals $514,673,000. The request is $14,673,000, or 2.9 percent, above the fiscal year 2012 enacted appropriation level of $500,000,000.

The requested $514,673,000 includes $514,724,000 in base funding and savings resulting from two contractor conversions. Savings from the contractor conversion is $241,000, but the net savings is $51,000 since it will cost $190,000 for the two new USMS employees. The base consists of $361,165,000 for contract costs to support 4,276 CSO positions, $81,184,000 for FPS-provided security services, $49,534,000 for security systems and equipment, and $22,841,000 for all other costs associated with the court security program, to include the funding of 70 administrative support and 15 contractor positions at the USMS, and seven positions at the Administrative Office (AO).

The funding requested for this program will be used to continue to provide an appropriate level of security at existing court facilities and to provide security coverage at new and renovated facilities.

The following sections provide information and justification for each of the adjustments to base, as well as the resources needed for program increases.

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

### A. PERSONNEL AND OTHER PROGRAMS

***1. Pay and benefits adjustments***

**a. Proposed January 2013 pay adjustment**

**Requested Increase: $37,000**

As of January 2012, the Office of Management and Budget (OMB) is proposing that federal pay rates will increase by an average of 0.5 percent beginning on or after January 1, 2013. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2013 for AO and judiciary-funded USMS personnel.

**b. Promotions and within-grade increases**

**Requested Increase: $74,000**

The requested increase provides for promotions and within-grade increases for personnel. The AO salary plan as well as the USMS salary plan provides for periodic within-grade increases for staff who receive at least a satisfactory performance rating.

c. **Health benefits increase**

**Requested Increase: $45,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 6.8 percent in January 2012 and 7.0 percent in January 2013. The requested increase annualizes the 2011 premium increase, and includes a nine-month provision for the anticipated fiscal year 2013 premium increase and other changes.

d. **One more compensable day**

**Requested Increase: $1,480,000**

There is one more compensable day in fiscal year 2013 than in fiscal year 2012. This request increases personnel compensation and benefits expenses associated with one more compensable day.

***2. Annualization of new fiscal year 2012 USMS positions***

**Requested Increase: $227,000** **FTE: 3**

In fiscal year 2012, partial funding is expected to be provided to support six new judiciary-funded positions at the USMS. These six positions are conversions of current contract positions. This request includes the increase required in fiscal year 2013 to fund the full-year costs of these positions.

***3. Annualization of fiscal year 2012 CSO positions (11)***

**Requested Increase: $561,000**

In fiscal year 2012, full-year funding was requested to support 39 positions, and partial funding was requested to support 11 new contract CSO positions. Funding required to provide existing court facilities with additional CSO positions, consistent with the CSO staffing formula, is based on projected occupancy dates for new and existing space. This request includes the increase required to fund the full-year cost of these 11 CSO positions in fiscal year 2013.

***4. Fiscal year 2013 CSO contract and wage rate adjustments***

**Requested Increase: $17,566,000**

A total of $17,566,000 is requested for anticipated increases in the hourly rates and overtime pay for CSO contract services in fiscal year 2013. The request is an average increase of 5.0 percent on a national basis over fiscal year 2012 projected levels.

The minimum hourly wage rates paid by the vendors who are retained by the USMS to provide CSO services are determined by the Department of Labor, and vary around the country based on an annual assessment of the prevailing wage rates paid for occupations similar to the CSO category of service in a specific locality. CSO wages are also adjusted through collective bargaining agreements negotiated between CSO contractors and unions. In accordance with the McNamara

O'Hara Service Contract Act, the contract CSOs must be paid, at a minimum, the hourly rates determined by the Department of Labor unless a collective bargaining agreement is in place. The wage adjustment must be paid regardless of any pay freeze imposed on federal workers.

***5. Additional CSOs (2) associated with fiscal year 2013 new and existing space***

**Requested Increase: $227,000**

Each year, the USMS conducts a nationwide budget call to determine each court's current and future requirements for CSOs. Based on the most recent review, two additional CSO positions are required to meet the security needs of the courts, as determined by the CSO staffing formula. The additional CSO positions are requested for new or existing court-occupied space based on projected occupancy dates. This request will bring the total CSO position level to 4,276.

***6. Reduction to CSO costs (cost-containment)***

**Requested Decrease: ($9,991,000)**

Due to current budgetary constraints and cost-containment efforts, the judiciary plans to freeze approximately 115 CSO positions, or 2.7 percent of the total CSO staffing level, to generate additional cost savings. The judiciary's intention with this reduction is not to eliminate these CSO positions permanently, but to leave the positions vacant until additional resources are available to fund them. This interim measure reduces the judiciary's security-related costs, while having what is believed to be a minimal impact on overall CSO staffing.

With 94 judicial districts, the reduction equates to an average of 1.25 CSO positions per district. However, since some districts have more CSOs than others, the actual decrease will be weighted to the size of the district. Where possible, the judiciary plans to freeze vacant CSO positions, but that may not be an option in all districts. Some CSOs may have to be terminated. The judiciary has begun working with the USMS to ensure that the reduction is implemented in a manner that does not significantly affect judicial security and is also fair to CSOs.

***7. Inflationary increases in charges for contracts, services, supplies, and equipment***

**Requested Increase: $86,000**

Consistent with guidance from OMB, this request of $86,000 is required to fund inflationary increases of 1.6 percent for operating expenses such as travel, utilities, printing, contractual services, supplies and materials, and furniture and equipment (exclusive of the CSO contracts).

*8. Inflationary increase in GSA space rental costs*

**Requested Increase: $124,000**

This request represents an inflationary increase and adjustments in the cost of GSA space rental charges for space estimated by GSA used by the CSOs and the judiciary-funded USMS personnel.

*9. Changes in Federal Protective Service security charges*

**Requested Increase: $5,235,000**

The fiscal year 2013 security cost estimate of $81.2 million for FPS security services consists of basic security ($30.9 million) and building-specific security costs ($50.3 million). This represents an increase of $5.2 million from the fiscal year 2012 estimate of $76.0 million. This estimate is based on anticipated billings provided by FPS, and includes increases due to additional court-occupied space that is expected to come on-line in fiscal year 2013. Additional information regarding the increases in FPS security charges is summarized below:

**a. Increase in basic security charges: $696,000**

The fiscal year 2013 request for basic security charges is $30.9 million, which is $0.7 million above the fiscal year 2012 assumed funding level. The basic security square footage charges are estimated to be $0.74 per square foot for fiscal years 2012 and 2013. Basic FPS security charges are assessed on all GSA-controlled properties, both leased and government-owned. The annual rate is developed by FPS and approved by OMB on a per square foot basis. The increase is primarily due to projected additional judiciary space in fiscal years 2012 and 2013.

**b. Increase in building-specific security charges: $4,539,000**

The total fiscal year 2013 request for building-specific security charges is $50.3 million, which is $4.5 million above the fiscal year 2012 assumed funding level. Building-specific security charges fund FPS-provided contract guards and security equipment, including maintenance. The funding requested is based on an estimate provided by FPS for anticipated services in fiscal year 2013.

Building-specific charges are based on FPS-provided countermeasures for a specific building and are charged to all federal tenants in the building in direct proportion to each customer agency's percentage of federal occupancy. Each building is supposed to have a facility security committee (FSC). The FSC consults with and seeks recommendations from FPS as to new or revised countermeasures. A tenant agency cannot avoid a building-specific charge if a majority of FSC members endorse a particular countermeasure. FPS is responsible for maintaining records of these operating expenditures on a building-by-building basis. These expenses are based on FPS projections and may be adjusted as a result of the current, ongoing review of FPS charges by the judiciary.

Building-specific expenses include:

- Facility contract guards, both fixed post and roving, assigned to a specific building;

- Purchase, installation and maintenance of perimeter security devices such as cameras, alarms, motion detectors, and other physical security features; and

- Pro-rata share of administrative costs.

(Note: In courthouse facilities, the FPS contract guards and security device expenses listed above are usually limited to the perimeter of the building because security for judicial space is provided by the USMS).

A significant deficiency of the FPS method of recommending countermeasures to FSCs is that it is most often done out of the normal budget cycle, which then causes the tenant agencies to forgo funding previously approved measures in order to fund a FPS "mandatory countermeasure." Also, the overhead charges levied by FPS on tenant agencies are considerably higher than the overhead costs generated by the judiciary-funded and USMS-administered JFSP.

***10. Adjustment to base for security systems and equipment***

| | |
|---|---|
| **Requested Increases:** | **$12,874,000** |
| **Reductions:** | **($15,221,000)** |
| **Net Decrease:** | **($2,347,000)** |

The requested amount reflects a net decrease of $2.3 million in the court security systems and equipment acquisition plan. The total increase of $12.9 million is offset by reductions of $15.2 million. The chart on page 8.23 provides further information regarding the judiciary's security systems and equipment funding requirements. Increases are requested as follows:

- Security Systems for New and Renovated Facilities *(Requested Increase: $7,700,000)*
  The typical security system installed in new and renovated facilities includes duress and intruder alarm equipment, closed circuit television (CCTV) surveillance cameras, card-based access control systems, and command and control centers. The *U.S. Courts Design Guide* outlines the types of security equipment that should be installed in court facilities. Based on current planned occupancy dates, funds will be needed for new and renovated courthouses in Salt Lake City, Utah and Los Angeles, California.

- Perimeter Security Improvements *(Requested Increase: $3,313,000)*
  Perimeter security for court facilities is a first line of defense and is critical to the protection of judicial facilities, judges, court employees, and the general public. Perimeter security improvements consist of the installation of guard booths and vehicle barriers, such as planters and hydraulic bollards, to help maintain a secure setback for the courthouse. These security enhancements allow the USMS to screen vehicle traffic adequately, provide pedestrian separation from the court facility, obscure the public's view of judicial officers, and limit the potential damage and loss of life from improvised explosive devices. In addition, the installation of perimeter CCTV surveillance systems and intrusion detection systems are covered in this category.

- Additional and Replacement Equipment *(Requested Increase: $1,286,000)*
  This program provides for general enhancements or upgrades to CCTV surveillance systems, access control systems, alarm systems, and command and control centers in newly occupied space in existing court facilities and replaces outdated equipment in currently occupied space. All equipment requests are evaluated against standards specified by the *U.S. Courts Design Guide* and the districts' unique site specific security requirement for individual facilities.

- CSO Radios, Accessories, Repairs and Over-the-Air Re-key *(Requested Increase: $545,000)*
  This request supports radios for new CSO positions based on planned occupancy dates for new and renovated court facilities and changes in CSO staffing requirements, cyclical replacement of radios, installation and maintenance of CSO radio systems, and funding for accessories and repairs. It also includes over-the-air re-key systems to provide secure cryptographic protection to ensure the integrity of the information transmitted on CSO radios. Various means are available for the dissemination of the security keys necessary for communications including the use of electronic hand-held key loaders and by means of over-the-air re-key. More funding is requested in fiscal year 2013 primarily due to the design and installation of new radio systems, as well as enhancements to existing systems.

- Nationwide Contract for Vehicle Barrier Maintenance *(Requested Increase: $30,000)*
  The vehicle barrier maintenance contract provides a nationwide preventive maintenance and repair program for vehicle barriers installed by the USMS. The contract requirements include 24/7 technical support, training, emergency response capability, preventive maintenance, and repairs. The maintenance contract increases the reliability of vehicle barriers and reduces the frequency of breakdowns. The requested increase will fund maintenance contract coverage for additional vehicle barriers anticipated to be in place in fiscal year 2013.

The net decrease in funding for security systems and equipment below the fiscal year 2012 funded base is due to non-recurring requirements and an effort to minimize our request by deferring some needs. These decreases are detailed below:

- Nationwide Maintenance Contract for Existing Security Systems and Equipment: *(Requested Decrease: $7,854,000)*
  The national contract for security systems installation includes a provision for the maintenance of the inventory of security systems located in all facilities nationwide, such as the repair of CCTV systems, access control systems, alarm systems, and other command and control center components. The contract also includes a provision for the off-site monitoring of alarms for buildings without a 24-hour CSO presence and a provision for repairs and preventive maintenance for the nationwide inventory of x-ray machines. Less funding will be required in fiscal year 2013 due to lower projected maintenance contract costs.

- Cyclical Replacement of Screening Equipment *(Requested Decrease: $4,522,000)*
  The cyclical replacement program ensures that walk-through metal detector and x-ray screening systems are replaced when they become technologically obsolete or when maintenance costs exceed a pre-determined threshold. Less funding is needed in fiscal year 2013 based on the age of the current inventory.

- GSA Installations & Alterations *(Requested Decrease: $1,064,000)*
  GSA designs, procures, and installs security system conduit; provides dedicated 110 volt AC power circuits; procures and installs ballistic and break-resistant glass at public intake counters; and provides emergency lighting in courtrooms and chambers and other security construction projects required to protect federal court facilities adequately. This program also funds unanticipated construction items. Less funding is needed because of fewer district security-related requests that will require GSA installations and alterations.

- Equipment for Probation, Pretrial Services and Federal Public Defender Services Offices: *(Requested Decrease: $929,000)*
  Typically, offices located in facilities where screening for weapons is not conducted at the entrance receive an access control system that consists of an electric door strike, and a door release mechanism. Offices also receive bullet-resistant material and duress alarms at the public counters. Each probation, pretrial services, and federal public defender office receives a duress alarm button in areas where clients are interviewed – usually an office desk. Under certain circumstances, intruder detection alarms and a CCTV camera and monitor are added. These funds are requested to provide either new systems of the aforementioned types or upgrades to these types of systems currently in place at these offices.

Per the *U.S. Courts Design Guide*, offices that are located in facilities where weapons screening is conducted at the entrance are entitled to the same security devices as noted above with one exception – the window at the public counter is constructed of break-resistant material, instead of bullet-resistant material. This initiative provides either new equipment or upgrades to existing systems for probation, pretrial services, and federal defender offices. Due to budgetary constraints, we are deferring some probation, pretrial services, and federal public defender office costs to hold down our request.

Cyclical Replacement of Hardware & Software for Access Control Systems *(Requested Decrease: $446,000)*
This initiative consists of upgrading and replacing access control systems nationwide to meet Homeland Security Presidential Directive 12 (HSPD-12) compliance requirements, as well as the implementation of a cyclical replacement program for these systems. This initiative is for systems upgrades and replacements in a phased, multi-year program to update fully existing access control systems. Some of the existing systems are nearly 15 years old and are beginning to experience major failures. Less funding is needed in fiscal year 2013 because, in the later phases of the project, there are fewer systems that need to be upgraded.

- Screening Equipment for New Buildings *(Requested Decrease: $340,000)*
  The request represents a $340,000 decrease below the fiscal year 2012 funding level due to lower requirements in fiscal year 2013. Funding is requested to procure and install the following: five x-ray machines at loading docks, six x-ray machines in lobbies, two explosive trace detection (ETD) systems, and 11 metal detectors in new and renovated courthouses located in Bakersfield, CA; San Diego, CA (two screening lanes); Billings, MT; Yuma, AZ; and Orlando, FL. Equipment will outfit the public lobbies and mail screening loading docks of new and extensively renovated courthouses.

- Consumable Supplies, Spare Parts and Repair Service for Explosive Trace Detectors *(Requested Decrease: $66,000)*
  Due to limited budgetary resources, less funding will be requested in fiscal year 2013 for this initiative, which provides funding for supplies and spare parts to operate existing explosive detection and radiation sensors.

***11. Adjustment to base for program administration***

**Requested Decrease: ($277,000)**

The requested decrease consists of $277,000 for one-time program administrative expenses.

### *12. Funding needed to maintain fiscal year 2012 service levels*

**Requested Increase: $1,677,000**

The fiscal year 2012 financial plan was financed in part by $1.7 million in carryforward balances from fiscal year 2011. The judiciary requests appropriated funds for fiscal year 2013 to replace these non-appropriated funds in order to maintain the same level of service as provided in fiscal year 2012.

## *B.* PROGRAM INCREASE

### *13. Two New Judiciary-funded USMS Positions*

| | | |
|---|---|---|
| **a. Requested Increase:** | **$190,000** | **FTE: 1** |
| **b. Contractor Conversions Savings:** | **($241,000)** | |
| **Net Decrease** | **($51,000)** | |

The judiciary presently funds 74 FTE, which includes seven FTE at the Administrative Office. For fiscal year 2013, the judiciary requests the replacement of two existing contractors with two new administrative support positions at USMS headquarters.

**Two Positions for the Office of Security Contracts (OSC) - GS-12/13 Senior Contract Specialists (1 FTE)**

The USMS requests two GS-12/13 contract specialist positions which will replace existing contractors. In fiscal year 2013, the two new positions are projected to cost $190,000 for 6 months. The savings from the elimination of two contract positions for 6 months are projected to be $241,000. The conversion of two contract positions to federal employee positions will save $51,000 in fiscal year 2013.

The USMS is responsible for contract management and administration for the JFSP, including the CSO program and security systems and equipment contracts. In recent years, the contract administration workload has increased significantly for the JFSP. The USMS estimates it will issue approximately 600 to 700 task orders per year for the National Physical Security contract. It will also issue approximately 100 task orders for CSO services, as well as 500 to 1,000 CSO task order modifications depending on the number of continuing resolutions, CSO overtime, and CSO travel.

Contract administration for the JFSP also has recently come under scrutiny from the GAO and the DOJ Office of the Inspector General for not performing adequate contract management. The USMS is working to address any contract management deficiencies through more rigorous analysis of past performance on vendors and financial assessments of CSO contractors.

Two additional senior contract specialist positions will help manage the program's large workload and address its weaknesses. The two new contract specialist federal employee positions will have greater responsibilities and authority than the current contractor positions. As senior contract specialists, the new positions will have the authority

to sign contracts, something the contractor positions cannot do. Therefore, these two new positions will allow the USMS to provide a higher level of service, at a lower cost.

**Court Security Appropriation**
**Security Systems & Equipment Funding Summary**
**Fiscal Years 2012 and 2013**

| Category | FY 2012 Appropriations | Carryforward 2/ | FY 2012 Estimate | FY 2013 Request 3/ | Less funding necessary to maintain current services | FY 2013 Request excluding funding necessary to maintain current services | Appropriations Diff. FY 12 vs. FY 13 excluding funding necessary to maintain current services |
|---|---|---|---|---|---|---|---|
| | $000 | $000 | $000 | $000 | $000 | $000 | $000 |
| Other Additional and Replacement Equipment 1/ | 9,537 | 1,503 | 11,040 | 12,223 | (1,400) | 10,823 | 1,286 |
| Cyclical Replacement of Access Control Head-End Systems | 3,800 | 20 | 3,820 | 3,354 | - | 3,354 | (446) |
| Cyclical Replacement of X-Ray Screening Equipment and Walk-Thru Metal Detectors | 7,000 | - | 7,000 | 2,478 | - | 2,478 | (4,522) |
| Screening Equipment for New Buildings | 950 | - | 950 | 610 | - | 610 | (340) |
| Cyclical Replacement of CSO Handheld Radios, Repeater Installations, CSO Radios and Radio Repairs and Spare Accessories | 872 | - | 872 | 1,417 | - | 1,417 | 545 |
| Perimeter Security Improvements 1/ | 6,000 | - | 6,000 | 9,313 | - | 9,313 | 3,313 |
| Maintenance Contract for Security Systems and Equipment | 15,272 | - | 15,272 | 7,418 | - | 7,418 | (7,854) |
| Security Systems for New and Renovated Facilities | 2,300 | 1,159 | 3,459 | 10,000 | - | 10,000 | 7,700 |
| ETD Consumables and Supplies | 272 | - | 272 | 206 | - | 206 | (66) |
| GSA Installation/Alterations 1/ | 2,000 | 50 | 2,050 | 936 | - | 936 | (1,064) |
| Equipment for Probation, Pretrial Services, and Defender Services | 1,750 | - | 1,750 | 821 | - | 821 | (929) |
| Nationwide Vehicle Barrier Maintenance Contract | 728 | - | 728 | 758 | - | 758 | 30 |
| Total Increases, Adjustments to Base | | | | | | | 12,874 |
| Non-Recurring Reductions | | | | | | | (15,221) |
| Net Decrease | | | | | | | (2,347) |
| Program Increase | | | | | | | |
| Total Requirement | 50,481 | 2,732 | 53,213 | 49,534 | (1,400) | 48,134 | (2,347) |

1/ Amounts in these categories (example of other equipment: access control, alarm systems, command and control center, etc.) represent the requests submitted by individual districts. All requests are evaluated by the U.S. Marshals Service against standards specified by the U.S. Courts Design Guide the USMS' Requirements and Specifications for Special Purpose and Support Space Manual and the districts' unique site specific security requirements for individual facilities. The requests are denied if they are not consistent with the applicable standards.

2/ Includes $1.400 million in savings and $1.332 million in slippage from fiscal year 2011 into fiscal year 2012.

3/ Includes $1.400 million in funding necessary to maintain fiscal year 2013 current services for security systems and equipment

**ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS**
***Salaries and Expenses***
**SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS**

| | |
|---|---|
| **Fiscal Year 2012 Enacted Appropriation** | **$82,909,000** |
| **Fiscal Year 2013 Appropriation Request** | **$85,148,000** |
| **Requested Increase from Fiscal Year 2012 Appropriation** | **$2,239,000** |

**APPROPRIATION LANGUAGE**

**ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS**

**SALARIES AND EXPENSES**

For necessary expenses of the Administrative Office of the United States Courts as authorized by law, including travel as authorized by 31 U.S.C. 1345, hire of a passenger motor vehicle as authorized by 31 U.S.C. 1343(b), advertising and rent in the District of Columbia and elsewhere, [$82,909,000] *$85,148,000*, of which not to exceed $8,500 is authorized for official reception and representation expenses.

**SUMMARY OF REQUEST**
**ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS**
**FISCAL YEAR 2013**
**(Dollar Amounts in Thousands)**

**Fiscal Year 2013 Resource Requirements:**

| | FTEs | Amount |
|---|---|---|
| **Fiscal Year 2012 Obligations** | **869** | **149,063** |
| Estimated fiscal year 2012 fee collections | - | (12,885) |
| Fee carryforward from fiscal year 2011 into fiscal year 2012 | - | (7,260) |
| Carryforward from Judiciary Information Technology Fund | - | (809) |
| Reimbursable Programs | (250) | (45,200) |
| **Fiscal Year 2012 Enacted Appropriation** | **619** | **82,909** |

| Page No. | Adjustments to Base to Maintain Current Services: | FTEs | Amount |
|---|---|---|---|
| | **A. Personnel** | | |
| | Pay and benefit adjustments | | |
| 9.12 | 1. Proposed January 2013 pay adjustment | - | 343 |
| 9.12 | 2. Promotions and within-grade increases. | .- | 111 |
| 9.12 | 3. One more compensable day. | - | 363 |
| 9.12 | 4. Health benefits increase | - | 312 |

| Page No. | | FTEs | Amount |
|---|---|---|---|
| | **B. Other Adjustments** | | |
| 9.13 | 5. Inflationary adjustments | - | 98 |
| 9.13 | 6. Reduction for non-recurring requirements | - | (1,225) |
| 9.13 | 7. Funding necessary to maintain fiscal year 2012 services level due to an anticipated decline in non-appropriated sources of funding | - | 2,237 |
| | **Total, Adjustments to Base to maintain Current Services** | **-** | **2,239** |
| | **Total Current Services Appropriation Required** | **619** | **85,148** |
| | **Total Fiscal Year 2013 Appropriation Required** | **619** | **85,148** |
| | **Total Appropriation Increase, Fiscal Year 2012 to Fiscal Year 2013** | **-** | **2,239** |
| **Financing the Fiscal Year 2013 Request:** | | | |
| **Total Appropriation Required** | | **619** | **85,148** |
| 9.13 | Estimated fiscal year 2013 fee collections | - | 13,698 |
| 9.13 | Estimated fee carryforward from fiscal year 2012 into fiscal year 2013 | - | 4,210 |
| 9.14 | Reimbursable programs | 250 | 46,215 |
| **Estimated Obligations, Fiscal Year 2013** | | **869** | **149,271** |

**ADMINISTRATIVE OFFICE**
**Salaries and Expenses**
**Obligations by Activity ($000)**

| Activity | Fiscal Year 2011 Actual Total Obligations | Fiscal Year 2012 Estimate Total Obligations | Fiscal Year 2013 Request Total Obligations |
|---|---|---|---|
| Executive Direction | 1.461 | 1.404 | 1.425 |
| Program Direction and Policy Formulation | 10,992 | 11.083 | 11.251 |
| Court Administration | 13,560 | 12,832 | 13.026 |
| Defender Services | 7.748 | 7,830 | 7,948 |
| Facilities and Security | 6,970 | 7.045 | 7.152 |
| Finance and Budget | 16,482 | 16.583 | 16.834 |
| Human Resources | 15,138 | 14,541 | 14.761 |
| Information Technology | 10,801 | 10,280 | 10.435 |
| Internal Services 1/ | 43,071 | 45.602 | 45,066 |
| Information Technology Fund | 633 | 809 | - |
| Judges Programs | 14,384 | 14,590 | 14.811 |
| Probation & Pretrial Services | 6,875 | 6.464 | 6,562 |
| **Total Obligations** | **148,115** | **149,063** | **149,271** |
| Less: Reimbursable Funding | (45,018) | (45.200) | (46.215) |
| **Total Direct Obligations** | **103,097** | **103,863** | **103,056** |
| Unobligated Balance, Start of Year Emergency Response Supplemental | - | - | - |
| Unobligated Balance, End of Year | - | - | - |
| **Available Budget Authority** | **148,115** | **149,063** | **149,271** |
| Offsetting Collections | | | |
| Federal Funds | (19,555) | (20.145) | (17,908) |
| Information Technology Fund | (633) | (809) | - |
| Reimbursable Programs | (45.018) | (45,200) | (46.215) |
| **Available Appropriation** | **$82,909** | **$82,909** | **$85,148** |

1/ Includes $35.833,000 in fiscal year 2012 for agency-wide employee benefits, lump sum leave, and other agency-wide costs. as well as funding for certain court support functions such as printing and mail management.

**ADMINISTRATIVE OFFICE**
**Salaries and Expenses**
**Obligations by Budget Object Class ($000)**

| Description | Fiscal Year 2011 Actual<br>Total Obligations | Fiscal Year 2012 Estimate<br>Total Obligations | Fiscal Year 2013 Request<br>Total Obligations |
|---|---|---|---|
| 1100 Personnel compensation | 109,925 | 108,648 | 110,280 |
| 1200 Personnel benefits | 28,867 | 29,101 | 29,539 |
| 1300 Benefits for former personnel | 60 | 1,248 | 23 |
| 2100 Travel | 1,211 | 1,225 | 1,272 |
| 2200 Transportation of things | 50 | 60 | 62 |
| 2330 Communications, utilities, & misc | 580 | 683 | 709 |
| 2400 Printing and reproduction | 96 | 96 | 100 |
| 2500 Other services | 5,061 | 5,345 | 5,376 |
| 2600 Supplies and materials | 434 | 582 | 604 |
| 3100 Equipment | 1,831 | 2,075 | 1,306 |
| **Total** | **148,115** | **149,063** | **149,271** |
| Less: Reimbursable Funding | (45,018) | (45,200) | (46,215) |
| **Total Direct** | **103,097** | **103,863** | **103,056** |

**ADMINISTRATIVE OFFICE**
**Salaries and Expenses**
**Full-time Equivalents by Activity**

| Activity | Fiscal Year 2011 Actual | Fiscal Year 2012 Estimate | Fiscal Year 2013 Request |
|---|---|---|---|
| Executive Direction | 8 | 8 | 8 |
| Program Direction and Policy Formulation | 82 | 81 | 81 |
| Court Administration | 103 | 96 | 96 |
| Defender Services | 51 | 49 | 49 |
| Facilities and Security | 53 | 53 | 53 |
| Finance and Budget | 131 | 131 | 131 |
| Human Resources | 134 | 132 | 132 |
| Information Technology | 82 | 78 | 78 |
| Internal Services | 76 | 77 | 77 |
| Judges Programs | 114 | 115 | 115 |
| Probation & Pretrial Services | 52 | 49 | 49 |
| **Total, Full Time Equivalents** | **886** | **869** | **869** |
| Less: Reimbursable Positions | (255) | (250) | (250) |
| **Total, Direct Full Time Equivalents** | **631** | **619** | **619** |

**ADMINISTRATIVE OFFICE**
**Salaries and Expenses**
**Relation of Obligations to Outlays ($000)**

| | FY 2011 Actual | FY 2012 Estimate | FY 2013 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total Obligations | 148,115 | 149,063 | 149,271 | 208 |
| Obligated Balance, start of year | 8,391 | 9,113 | 5,825 | (3,288) |
| Obligated Balance, end of year | (9,113) | (5,825) | (5,524) | 301 |
| Change in uncollected customer payments | 491 | 0 | 0 | 0 |
| **Total Outlays** | **147,884** | **152,351** | **149,572** | **(2,779)** |
| Less Offsetting Collections from: | | | | |
| Fee Collections (Federal Sources) | (19,555) | (20,145) | (17,908) | 2,237 |
| Judiciary Information Technology Fund | (633) | (809) | 0 | 809 |
| Reimbursable Programs | (45,018) | (45,200) | (46,215) | (1,015) |
| **Net Outlays** | **82,678** | **86,197** | **85,449** | **(748)** |

## GENERAL STATEMENT AND INFORMATION

This appropriation is for the necessary expenses of the Administrative Office of the United States Courts (AO), pursuant to 28 U.S.C. 601-613. Created by an Act of Congress in 1939, the AO is the central support entity for the judicial branch. It serves the federal judiciary in carrying out its constitutional mission to provide equal justice under the law.

The AO provides administrative, legal, financial, management, program, security, and information technology services to the federal courts. It provides support and staff counsel to the Judicial Conference of the United States and its committees, and implements Judicial Conference policies as well as applicable federal statutes and regulations. The AO is the focal point for communication and coordination within the judiciary and with Congress, the executive branch, and the public on behalf of the judiciary. The agency's lawyers, public administrators, accountants, systems engineers, analysts, architects, statisticians, security experts, and other staff provide professional services to meet the needs of judges and staff working in the federal courts nationwide. These include:

- Performing core central payroll, personnel, accounting, and procurement functions;
- Developing and executing the judiciary's budget and guiding local court budget execution;
- Collecting and analyzing statistics on court workload;
- Auditing court financial operations;
- Monitoring and reviewing program performance and use of resources;
- Developing and supporting automated systems and technologies used throughout the courts;
- Coordinating construction and management of court facilities with the General Services Administration;
- Monitoring U.S. Marshals Service implementation of the judicial facility security program;
- Defining court resource needs through caseload forecasts and work measurement analyses;
- Providing program leadership and support for circuit executives, clerks of court, probation and pretrial services officers, federal defenders, and other managers; and
- Developing and conducting education and training programs on operational and administrative functions.

A table of selected workload indicators for the AO follows:

**Table 9.1 Selected AO Fiscal Year 2012 Workload Indicators**

| Indicators | Number |
|---|---|
| Active and senior judges *(Article III, bankruptcy, magistrate, and Court of Federal Claims)* | 2,277 |
| Court staff *(Appellate, district, bankruptcy, probation, pretrial services, and defenders)* | 30,411 |
| Court units *(Appellate, district, bankruptcy, probation and pretrial services)* | 366 |
| Federal defender organizations *(Districts)* | 91 |
| Court facilities *(GSA- and U.S. Postal Service-owned federal buildings and leased facilities)* | 790 |
| Judicial Conference committees | 25 |
| Court appropriations and fees *(Salaries and Expenses, Defender Services, Fees of Jurors, Court Security, and Judicial Retirement Funds)* | $7.1 billion |

The AO's strategic direction emphasizes strengthening delivery of core services to and partnership with the courts; promoting effective communication within and on behalf of the judicial branch; streamlining operations to accomplish its mission more efficiently; and fostering a highly capable, productive staff. During 2011, the AO took further steps to integrate top priorities of the Judicial Conference based on the September 2010 *Strategic Plan for the Federal Judiciary* into AO internal planning and operations. Among the key elements of the strategic plan is a focus on managing resources efficiently and effectively (addressed below under "AO Cost Containment"), and harnessing technology's potential.

During 2011, the AO has made a high priority of using technology to improve emergency preparedness and service to the courts, with the goal of being able to communicate effectively and operate without interruption despite emergency situations, inclement weather, and other disruptive events. The AO has tested and enhanced its remote access capabilities by conducting agency-wide employee telework day exercises and targeted information technology training. The AO also installed and supports video conferencing capability in strategic facilities to encourage better and more efficient work practices, minimize the cost of travel, and improve communication with the courts.

**AO Cost Containment**

In January 2011, the AO Director formed an AO task force representing all parts of the agency, with the mission of developing short- and long-term recommendations to ensure the AO could meet its core responsibilities with substantially reduced resources. The task force reviewed organizational, policy, and process alternatives and developed specific actions to contain costs in fiscal years 2012, 2013, and beyond, for both the AO as well as funds managed centrally that support court operations. Work was completed in April 2011, and recommendations were endorsed by the AO's executive management in May 2011. While many of the recommendations have been implemented for 2011 and 2012, others requiring further analysis and development are being pursued by follow-up teams.

The recommendations fall into six major categories: pay and benefits, non-salary, workforce structure and organization, process improvement, contract-related, and adverse personnel actions as a last resort measure. Since staff pay is the AO's major budget expense, many of the recommendations focused on containing salary and benefit costs. AO restructuring efforts were expanded in 2011 to streamline organizational structures; incorporate process improvements; and to either use vacant staff positions differently to meet future needs, abolish them, or keep them vacant to reduce costs.

Initiatives implemented to date include:

- early out and buyout retirements to accomplish workforce restructuring and savings;
- revised pay setting, pay retention, and hiring practices;
- development of a revised performance management system;
- reduced travel and training allocations;
- savings in printing, publication, and subscription costs; and
- reduced information technology/mobile device costs through validating business requirements.

Initiatives under development include:

- study of the pay and classification system;
- review of information technology projects and priorities;
- shared administrative services;
- further budget decentralization;
- savings that can be achieved in long-term contract costs, including use of performance-based contracts and modification of contract escalation clauses; and
- assessment of the appropriate use of contractors.

These efforts are consistent with the goals of Executive Order 13589 issued by the President on November 9, 2011, to cut waste and promote more efficient spending across the federal government. Like the Executive Branch, the AO is working to reduce spending on travel; limit the number of information technology devices (e.g., cell phones, smartphones, tablets, and laptops) that can be issued to individual employees; stop unnecessarily printing documents that can be posted online; and stop buying unnecessary items. While the judiciary is not subject to the Executive Order, the AO plans to reduce spending in these areas by 20 percent in fiscal year 2012.

**AO Support of Judiciary Efforts to Contain Costs and Limit Appropriation Requirements**

In fiscal year 2012 and beyond, the judiciary faces a budget environment that could result in the loss of hundreds, if not thousands, of on-board staff. Preserving core judiciary functions, while continuing the administration of justice, will require more stringent measures than those undertaken in a major cost-containment effort which began in fiscal year 2004. As a first step to mitigate this financial crisis, beginning in October 2010, the AO worked with the courts, through its court advisory structure of subject matter advisory councils and peer advisory groups, to identify new cost-containment ideas and suggestions. By April 2011, over 100 ideas had been generated, some of which were viable in the short term to consider for the fiscal year 2012 and 2013 financial plans, while others were longer-term cost-containment suggestions for fiscal year 2013 and beyond. These ideas were provided to the appropriate Judicial Conference committees for consideration and prioritization during the summer meeting cycle.

In addition, a renewed emphasis on cost containment was a key topic at the March 2011 Judicial Conference session and at the Federal Judicial Center's Chief District Judges Conference in April 2011. In June 2011, all judges were advised of the need for cost containment, and judiciary employees, led by judges and unit executives, were asked to join together to identify ways to reduce operational and administrative costs. Judges were asked to contain costs within their own chambers and courts.

At their summer 2011 meetings, Judicial Conference committees reviewed the longer-term cost containment ideas, developed additional suggestions, and provided feedback on which longer-term ideas should be pursued to help mitigate funding cuts to the courts and avoid further loss of staff. This information provided the foundation for a "cost-containment summit" held in September 2011 in Washington, D.C. This summit included Judicial Conference committee chairs and members of the Budget and Executive Committees. The outcome from the summit is being used to develop a new cost-containment strategy for the judiciary.

Based on the results of the summit, the following initiatives are being pursued, with the AO providing staff and implementation support:

- Accelerated updating of work measurement formulas, incorporating shared services for administrative work, best practices, benchmarks, and efficiency incentives;
- Relocating probation and pretrial services offices from leased space to courthouse space where feasible;
- Expanded use of the telephone interpreting program;
- Early termination of probation supervision in low-risk, compliant cases, allowing officers to focus their attention on higher risk offenders;
- Increased use of shared services among courts and court units on an ongoing basis;
- National contracts from which courts can buy to establish volume discounts; and
- Providing judges with additional information about Criminal Justice Act representations to assist judges in reviewing payment vouchers.

## JUSTIFICATION OF CHANGES

The Administrative Office appropriation request for fiscal year 2013 totals $85,148,000. This represents an increase of $2,239,000 or 2.7 percent, over the fiscal year 2012 enacted appropriation of $82,909,000. The fiscal year 2013 budget request includes only the funds needed to maintain current services.

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

**Requested Increase: $2,239,000**

Adjustments to base include funding for salaries and benefits increases to support the fiscal year 2013 current services level. Also included are increased costs for recurring requirements, such as travel, communications, service agreements, and supplies.

### A. PERSONNEL

***Pay and Benefit Adjustments***

**1. Proposed January 2013 pay adjustment**

**Requested Increase: $343,000**

The Office of Management and Budget is projecting that federal pay rates will increase by an average of 0.5 percent beginning on or after January 1, 2013. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2013.

**2. Promotions and within-grade increases**

**Requested Increase: $111,000**

The requested increase provides for promotions and step increases for AO personnel. The AO salary plan provides for periodic step increases for staff who receive at least a satisfactory performance rating.

**3. One more compensable day**

**Requested Increase: $363,000**

There is one more compensable day in fiscal year 2013 than in fiscal year 2012. This request increases personnel compensation and benefits expenses associated with one more compensable day.

**4. Health benefits increase**

**Requested Increase: $312,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 6.8 percent in January 2012 and another 7.0 percent in January 2013. The requested increase annualizes the 2012 premium increase, and includes a nine-month provision for the anticipated fiscal year 2013 premium increase and other changes.

## B. OTHER ADJUSTMENTS

*5. Inflationary adjustments*

**Requested Increase: $98,000**

Consistent with guidance from the Office of Management and Budget, this request of $98,000 is required to fund inflationary increases of 1.6 percent for operating expenses such as travel, communications, printing, contractual services, supplies and materials, and furniture and equipment.

***6. Reduction for non-recurring requirements***

**Requested Decrease: ($1,225,000)**

The requested decrease is for non-recurring requirements associated with voluntary separation incentive payments (buyouts) funded in fiscal year 2012.

***7. Funding necessary to maintain fiscal year 2012 services level due to an anticipated decline in non-appropriated sources of funding***

**Requested Increase: $2,237,000**

This account is financed through direct appropriations and the use of non-appropriated funds, including judiciary fee collections and fee carryforward. In fiscal year 2012, the judiciary expects to have a total of $20.1 million in non-appropriated funds available to finance recurring AO requirements. In fiscal year 2013, the judiciary expects $17.9 million in non-appropriated funds to be available for the AO, a decrease of $2.2 million from fiscal year 2012. The judiciary requests $2.2 million in appropriated funds in fiscal year 2013 to replace these non-appropriated funds in order to maintain the same level of service as provided in fiscal year 2012.

## FINANCING THE FISCAL YEAR 2013 REQUEST

***Estimated Fiscal Year 2013 Fee Collections***

**Estimated Funds Available: $13,698,000**

The judiciary has authority to collect fees for various services such as bankruptcy filing, civil filing, bankruptcy noticing, and registry administration. These fees are used to reimburse judiciary appropriations and are available without fiscal year limitation. The judiciary estimates that $13.7 million of these fees will be available to offset the fiscal year 2013 AO budget request.

***Estimated fee carryforward from Fiscal Year 2012 into Fiscal Year 2013***

**Estimated funds available: $4,210,000**

In addition to receiving a portion of new fee collections, the AO account also receives a portion of the fee balances carried over from prior years. This request reflects funds from fee carryforward balances in the judiciary fee accounts that will be available to offset the AO fiscal year 2013 budget request. The judiciary will advise appropriations subcommittee staffs of changes to this estimate.

***Reimbursable Programs***

**Funds Available: $46,215,000** **FTE: 250**

**Requested Increase: $1,015,000**

Beginning in 1990, Congress authorized reimbursable funds for the AO to carry out specific support functions for the courts. These functions include defender services audit and assessment, federal defender training, court automation, case management improvement, court security, court financial administration, court financial systems, background checks/investigations, financial disclosure, and judiciary benefits.

The request for the AO reimbursable program includes funding for 250 FTE from the Salaries and Expenses, Defender Services, and Court Security appropriations under *Courts of Appeals, District Courts, and Other Judicial Services.* The fiscal year 2013 budget request includes only the funds needed to maintain the same number of reimbursable staff funded in fiscal year 2012.

**FEDERAL JUDICIAL CENTER**
***Salaries and Expenses***
**SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS**

| | |
|---|---|
| **Fiscal Year 2012 Enacted Appropriation** | **$27,000,000** |
| **Fiscal Year 2013 Requested Appropriation** | **$27,729,000** |
| **Requested Increase from Fiscal Year 2012 Appropriation** | **$729,000** |

**APPROPRIATION LANGUAGE**

**FEDERAL JUDICIAL CENTER**
**SALARIES AND EXPENSES**

For necessary expenses of the Federal Judicial Center, as authorized by Public Law 90-219, [$27,000,000] *$27,729,000;* of which $1,800,000 shall remain available through September 30, [2013] *2014*, to provide education and training to Federal court personnel; and of which not to exceed $1,500 is authorized for official reception and representation expenses.

**SUMMARY OF REQUEST**
**FEDERAL JUDICIAL CENTER**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2013**
**(Dollar amounts in thousands)**

**Fiscal Year 2013 Resource Requirements:**

| | FTEs | Amount |
|---|---|---|
| **Fiscal Year 2012 Obligations** | 137 | 27,332 |
| Reimbursements from Federal Accounts and FJC Foundation | (1) | (332) |
| **Fiscal Year 2012 Enacted Appropriation** | 136 | 27,000 |

| Page No. | Adjustments to Base to Maintain Current Services: | FTEs | Amount |
|---|---|---|---|
| | **A. Personnel and Programs** | | |
| | Pay and benefit cost adjustments | | |
| 10.9 | 1. Proposed Janaury 2013 Pay Adjustment (0.5% for nine months) | - | 66 |
| 10.9 | 2. Promotions and within-grade increases | - | 163 |
| 10.9 | 3. One more compensable day | - | 70 |
| 10.9 | 4 . Health benefits increase | - | 47 |

**SUMMARY OF REQUEST**
**FEDERAL JUDICIAL CENTER**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2013**
**(Dollar amounts in thousands)**

| | | FTEs | Amount |
|---|---|---|---|
| | **B. Other Adjustments** | | |
| 10.10 | 5. Inflationary adjustments | - | 173 |
| | **Subtotal, Adjustments to Base to Maintain Current Services** | - | 519 |
| | **Total Current Services Appropriation Required** | 136 | 27,519 |
| | **Program Increases** | | |
| 10.10 | 6. Enhance education and training programs | 2 | 210 |
| | **Subtotal, Program Increases** | 2 | 210 |
| | **Total Fiscal Year 2013 Appropriation Required** | 138 | 27,729 |
| | **Total Appropriation Increase** | 2 | 729 |
| | **Financing the Fiscal Year 2013 Request:** | | |
| | **Total Appropriation Required, Fiscal Year 2013** | 138 | 27,729 |
| 10.10 | 7. Estimated reimbursements from federal accounts and the FJC Foundation | 1 | 295 |
| | **Total Estimated Obligations, Fiscal Year 2013** | 139 | 28,024 |

**FEDERAL JUDICIAL CENTER**
**Salaries and Expenses**
**Obligations by Activitiy ($000)**

| Activity | Fiscal Year 2011 | | | Fiscal Year 2012 | | | Fiscal Year 2013 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Direct | Offsetting Collections | Total | Direct | Offsetting Collections | Total | Direct | Offsetting Collections | Total |
| Education & Training | 19,696 | 391 | 20,087 | 19,336 | 315 | 19,651 | 19,908 | 295 | 20,203 |
| Research | 4,252 | 26 | 4,278 | 4,321 | 17 | 4,338 | 4,409 | - | 4,409 |
| Program Support | 3,325 | - | 3,325 | 3,343 | - | 3,343 | 3,411 | - | 3,411 |
| **Total Obligations** | **27,273** | **417** | **27,690** | **27,000** | **332** | **27,332** | **27,729** | **295** | **28,024** |
| Offsetting Collections | | | | | | | | | |
| Reimbursable programs | - | (417) | (417) | - | (332) | (332) | - | (295) | (295) |
| **Available Appropriation** | **27,273** | - | **27,273** | **27,000** | - | **27,000** | **27,729** | - | **27,729** |

**FEDERAL JUDICIAL CENTER**
**Salaries & Expenses**
**Obligations by Object Class ($000)**

| Description | Fiscal Year 2011 | | | Fiscal Year 2012 | | | Fiscal Year 2013 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Direct | Offsetting Collections | Total Oblig. | Direct | Offsetting Collections | Total Oblig. | Direct | Offsetting Collections | Total Oblig. |
| 1100 Personnel compensation | 14,028 | 140 | 14,168 | 13,946 | 112 | 14,058 | 14,353 | 112 | 14,465 |
| 1200 Personnel benefits | 3,900 | 35 | 3,935 | 3,917 | 28 | 3,945 | 4,066 | 28 | 4,094 |
| 2100 Travel | 5,267 | 181 | 5,448 | 5,912 | 145 | 6,057 | 6,023 | 120 | 6,143 |
| 2200 Transporation of things | 59 | 0 | 59 | 65 | 0 | 65 | 66 | 0 | 66 |
| 2330 Communications, utilities & misc | 425 | 16 | 441 | 496 | 19 | 515 | 505 | 19 | 524 |
| 2400 Printing and reproduction | 77 | 0 | 77 | 66 | 0 | 66 | 67 | 0 | 67 |
| 2500 Other services | 1,439 | 39 | 1,478 | 1,242 | 26 | 1,268 | 1,266 | 14 | 1,280 |
| 2600 Supplies and materials | 876 | 6 | 882 | 754 | 2 | 756 | 768 | 2 | 770 |
| 3100 Equipment | 1,202 | 0 | 1,202 | 602 | 0 | 602 | 613 | 0 | 613 |
| **Total Obligations** | **27,273** | **417** | **27,690** | **27,000** | **332** | **27,332** | **27,729** | **295** | **28,024** |

**FEDERAL JUDICIAL CENTER**
**Salaries & Expenses**
**Relation of Obligations to Outlays ($000)**

| | FY 2011 Actuals | FY 2012 Estimate | FY 2013 Estimate | Difference (+) or (-) |
|---|---|---|---|---|
| Total Obligations | 27,690 | 27,332 | 28,024 | 692 |
| Obligated balance, start of year | 3,582 | 3,565 | 1,065 | (2,500) |
| Obligated balance, end of year | (3,565) | (1,065) | (694) | 371 |
| Total Outlays | 27,707 | 29,832 | 28,395 | (1,437) |
| Less offsetting collections: | | | | |
| Reimbursable Programs | (417) | (332) | (295) | 37 |
| Net Outlays | 27,290 | 29,500 | 28,100 | (1,400) |

**FEDERAL JUDICIAL CENTER**
**Salaries and Expenses**
**Full Time Equivalents by Activity**

| Activity | Fiscal Year 2011 | | | Fiscal Year 2012 | | | Fiscal Year 2013 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Direct | Reimb Program | Total | Direct | Reimb Program | Total | Direct | Reimb Program | Total |
| Education & Training | 97 | 1 | 98 | 95 | 1 | 96 | 97 | 1 | 98 |
| Research | 30 | 0 | 30 | 30 | 0 | 30 | 30 | 0 | 30 |
| Program Support | 11 | 0 | 11 | 11 | 0 | 11 | 11 | 0 | 11 |
| **Total, Full Time Equivalents** | **138** | **1** | **139** | **136** | **1** | **137** | **138** | **1** | **139** |

## GENERAL STATEMENT AND INFORMATION

This appropriation request is for the salaries and operating expenses of the Federal Judicial Center, which was established by P.L. 90-219 (81 Stat. 664) on December 20, 1967. This statute directs the Center "to further the development and adoption of improved judicial administration" in the federal courts.

### Functional Responsibilities of the Center

The Center's functions are outlined in statute, especially 28 U.S.C.§§ 620(b) and 623(a). Pursuant to those mandates, it teaches judges and other Judicial Branch personnel about legal developments and efficient litigation management and court administration. Examples include various educational programs that teach judges and court legal staff about new laws and emerging issues; programs that help judges and court executives promote efficiency in the just resolution of cases and in court administration; and programs that educate court staff on effective court operations. Over 80 percent of Center training participants attend the training in their home cities through in-court seminars, Center video programs, manuals, web-based conferences, and interactive computer programs. The Center also conducts empirical research into court operations and activities. Most Center research is performed at the request of the Judicial Conference of the United States in order to inform policy decisions of the Conference. Center research also contributes to improved judicial administration by assessing the efficacy of case and court management procedures. For example, it continues to assess case management tools for complex litigation and litigation with expert testimony. (The Center's statute also assigns it less extensive duties with regard to state-federal judicial relations, assisting foreign judiciaries, and federal judicial history, which it also performs.) Program planning is coordinated among the Center, the Administrative Office of the U.S. Courts, and the U.S. Sentencing Commission to maximize efficiency in meeting their distinct responsibilities.

### Duties of the Board

A Board of nine supervises the Center. The Chief Justice of the United States is the Board Chairman. The Board includes two judges of the U.S. Courts of Appeals, three judges of the U.S. District Courts, one bankruptcy judge, and one magistrate judge; each elected by the Judicial Conference of the United States for a four-year term. The Director of the Administrative Office of the U.S. Courts is an ex-officio Board member. By statute, the Board is responsible for developing overall policy to guide the Center's operations and approves the Center's appropriations requests. The Board appoints a Director and a Deputy Director, who are responsible for supervising the Center's staff and carrying out the Center's programs. The Center coordinates as necessary with the Budget Committee of the Judicial Conference of the United States and the Administrative Office of the U.S. Courts in developing the Center's appropriation requests.

## JUSTIFICATION OF CHANGES

The Federal Judicial Center's appropriation request for fiscal year 2013 is $27,729,000, representing an overall increase of $729,000 (2.7 percent) over the fiscal year 2012 appropriation of $27,000,000. Of the total requested, $519,000 is for adjustments to base to maintain current services. These adjustments include pay and benefits cost increases for current staff. Also included are general inflationary increases for operating expenses such as travel, utilities, printing, contractual services, supplies and materials, furniture and equipment. The remaining $210,000 is requested to fill four positions not supported within the fiscal year 2012 funding level.

### ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

### A. PERSONNEL

**Pay and benefit cost adjustments**

***1. Proposed January 2013 pay adjustment***

**Requested Increase: $66,000**

As of January 2012, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 0.5 percent beginning on or after January 1, 2013. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2013.

***2. Promotions and within-grade increases***

**Requested Increase: $163,000**

The requested amount provides an increase to allow Federal Judicial Center personnel to be granted periodic adjustments in compensation for merit.

***3. One more compensable day***

**Requested Increase: $70,000**

There is one more compensable day in fiscal year 2013 than in fiscal year 2012. This request increases personnel compensation and benefits expenses associated with one more compensable day.

***4. Health benefits increase***

**Requested Decrease: $47,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 6.8 percent in January 2012 and another 7.0 percent in January 2013. The requested increase annualizes the 2012 premium increase, and includes a nine-month provision for the anticipated fiscal year 2013 premium increase and other changes.

**B. OTHER ADJUSTMENTS**

*5. General inflationary adjustments*

**Requested Increase: $173,000**

Consistent with guidance from the Office of Management and Budget, this request of $173,000 is required to fund inflationary increases of 1.6 percent for operating expenses such as travel, utilities, printing, contractual services, supplies and materials, and furniture and equipment.

**PROGRAM INCREASES**

*6. Enhance education and training programs*

**Requested Increase: $210,000 FTE: 2**

The Center requests $210,000 for four positions (2 FTE) not funded in fiscal year 2012. These positions include education specialists and computer scientist/software engineers to develop and conduct these programs, and to do so using sophisticated distance-learning technologies.

**OFFSETTING COLLECTIONS**

*7. Estimated reimbursements from federal accounts and the FJC Foundation*

**Estimated Reimbursement: $295,000 FTE: 1**

The Center enters into reimbursable agreements to provide additional services to, or to allow economizing by, the Administrative Office of the U.S. Courts, the courts, and non-judicial federal entities. In addition, pursuant to Title 28, Section 629, the Center receives support from occasional donations to the Federal Judicial Center Foundation. The Center estimates that $295,000 will be reimbursed to it in fiscal year 2013.

**JUDICIAL RETIREMENT FUNDS**

***Payment to Judiciary Trust Funds***

**SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS**

| | |
|---|---|
| **Fiscal Year 2012 Enacted Appropriation** | **$103,768,000** |
| **Fiscal Year 2013 Requested Appropriation** | **$125,464,294** |
| **Requested Increase** | **$21,696,294** |

**APPROPRIATION LANGUAGE**

**JUDICIAL RETIREMENT FUNDS**

**PAYMENT TO JUDICIARY TRUST FUNDS**

For payment to the Judicial Officers' Retirement Fund, as authorized by 28 U.S.C. 377(o), [$86,968,000] *$95,664,294*; to the Judicial Survivors' Annuities Fund, as authorized by 28 U.S.C. 376(c), [$12,600,000] *$22,500,000*; and to the United States Court of Federal Claims Judges' Retirement Fund, as authorized by 28 U.S.C. 178(l), [$4,200,000] *$7,300,000*.

# SUMMARY OF REQUEST
# JUDICIAL RETIREMENT FUNDS
# PAYMENT TO JUDICIARY TRUST FUNDS
# FISCAL YEAR 2013
(Dollar amounts in thousands)

## Fiscal Year 2013 Resource Requirements:

| Page No. | | FTEs | Amount |
|---|---|---|---|
| | **Fiscal Year 2012 Enacted Appropriation** | - | $103,768 |
| | **Adjustment to Base** | | |
| 11.5 | 1. Increase in payment to the Judicial Officers' Retirement Fund | - | 8.696 |
| 11.6 | 2. Increase in payment to the Judicial Survivors' Annuities Fund | - | 9.900 |
| 11.6 | 3. Increase in payment to the Court of Federal Claims Judges' Retirement Fund | - | 3.100 |
| | **Subtotal, Adjustments to Base** | - | 21,696 |
| | **Total Appropriation Required, Fiscal Year 2013** | - | $125,464 |
| | **Total Appropriation Increase, Fiscal Year 2012 to Fiscal Year 2013** | - | 21,696 |

**PAYMENT TO JUDICIARY TRUST FUND**
**Obligations by activity ($000)**

| Activity | Fiscal Year 2011 Actual | Fiscal Year 2012 Plan | Fiscal Year 2013 Request |
|---|---|---|---|
| **Trust Fund, Total Obligations** | **90,361** | **103,768** | **125,464** |
| **Available Appropriation** | **90,361** | **103,768** | **125,464** |

**Object Classification ($000)**

| Description | Fiscal Year 2011 Actual | Fiscal Year 2012 Plan | Fiscal Year 2013 Request |
|---|---|---|---|
| 25 Other services | 90,361 | 103.768 | 125.464 |
| **Total obligations** | **90,361** | **103,768** | **125,464** |



**PAYMENT TO JUDICIARY TRUST FUND**

**Relation of Obligations to Outlays ($000)**

| | FY 2011 Actual | FY 2012 Plan | FY 2013 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 90,361 | 103,768 | 125,464 | 21,696 |
| Obligated balance, start of year | ... | ... | ... | ... |
| Obligated balance, end of year | ... | ... | ... | ... |
| Net Outlays | 90,361 | 103,768 | 125,464 | 21,696 |

## GENERAL STATEMENT AND INFORMATION

This appropriation is divided among three trust funds that finance payments to (1) retired bankruptcy and magistrate judges, (2) spouses and dependent children of deceased judges, and (3) retired Court of Federal Claims judges. This account is categorized as a mandatory appropriation by Congress.

Statutes governing the three funds authorize the appropriation of amounts to cover the liability that accrues each year and to pay an installment on any unfunded liability. Although the funds receive participant contributions and earn interest on investment holdings, the purpose of the appropriation provision is to ensure that sufficient funds are deposited annually to cover anticipated benefit payments in the distant future as well as in the short-term. The appropriation request is calculated annually by an enrolled actuary pursuant to 31 U.S.C. 9503, Public Law 95-595 (November 4, 1978).

### The Three Trust Funds

The Judicial Officers' Retirement Fund was established in 1988 to provide a pension to bankruptcy and full-time magistrate judges (28 U.S.C. §377).

The Judicial Survivors' Annuities Fund was established in 1956 to provide annuities to widows, widowers, and dependent children of judges and other officials who have elected to participate in the program: Justices and judges of the United States, to include Guam, Northern Mariana, and the Virgin Islands; full-time bankruptcy judges; full-time United States magistrate judges; judges of the United States Court of the Federal Claims; the Directors of the Federal Judicial Center and the Administrative Office of the United States Courts; and the Counselor to the Chief Justice of the United States (28 U.S.C. §376).

The Court of Federal Claims Judges' Retirement Fund was established in 1990 to provide a pension plan to retired United States Courts of Federal Claims judges (28 U.S.C. §178). Appointment under Chapter 7 of Title 28 or service under section 167 of the Federal Courts Improvements Act of 1982 automatically qualifies a judge to participate.

### Justification of Changes

The appropriation request for fiscal year 2013 is $125,464,294, an increase of $21,696,294 above the appropriation level in fiscal year 2012. This increase is distributed as follows: an increase of $8,696,294 for the Judicial Officers' Retirement Fund, an increase of $9,900,000 for the Judicial Survivors' Annuities Fund, and an increase of $3,100,000 for the Court of Federal Claims Judges' Retirement Fund.

## ADJUSTMENTS TO BASE

1. ***Increase in payment to the Judicial Officers' Retirement Fund***

**Requested Increase: $8,696,294**

The appropriation level for fiscal year 2012 is $86,968,000. Based on actuarial calculations, $95,664,294, an increase of $8,696,294, is required to draw down the unfunded liability in fiscal year 2013.

2. ***Increase in payment to the Judicial Survivors' Annuities Fund***

**Requested Increase: $9,900,000**

The appropriation level for fiscal year 2012 is $12,600,000. Based on actuarial calculations, $22,500,000, an increase of $9,900,000, is required to draw down the unfunded liability in fiscal year 2013.

3. ***Increase in payment to the Court of Federal Claims Judges' Retirement Fund***

**Requested Increase: $3,100,000**

The appropriation level for fiscal year 2012 is $4,200,000. Based on actuarial calculations, $7,300,000, an increase of $3,100,000, is required to draw down the unfunded liability in fiscal year 2013.

**UNITED STATES SENTENCING COMMISSION**
***Salaries and Expenses***
**SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS**

| | |
|---|---|
| **Fiscal Year 2012 Enacted Appropriation** | **$16,500,000** |
| **Fiscal Year 2013 Requested Appropriation** | **$17,061,000** |
| **Requested Increase from Fiscal Year 2012 Appropriation** | **$561,000** |

**APPROPRIATION LANGUAGE**

**UNITED STATES SENTENCING COMMISSION**

**SALARIES AND EXPENSES**

For the salaries and expenses necessary to carry out the provisions of chapter 58 of title 28, United States Code, [$16,500,000] *$17,061,000*, of which not to exceed $1,000 is authorized for official reception and representation expenses.

**SUMMARY OF REQUEST**
**UNITED STATES SENTENCING COMMISSION**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2013**
**(Dollar amounts in thousands)**

**Fiscal Year 2013 Resource Requirements:**

| | FTEs | Amount |
|---|---|---|
| **Fiscal Year 2012 Obligations** | **105** | **18,100** |
| Carryforward balance from the Judiciary Information Technology Fund | - | (1,600) |
| **Fiscal Year 2012 Enacted Appropriation** | **105** | **16,500** |

| Page No. | **Adjustments to Base to Maintain Current Services:** | FTEs | Amount |
|---|---|---|---|
| | **A. Commission Personnel and Benefits** | | |
| 12.10 | 1. Proposed January 2013 pay adjustment (0.5% for nine months) | - | 47 |
| 12.10 | 2. Promotions and within-grade increases | - | 208 |
| 12.10 | 3. One more compensable day | - | 49 |
| 12.10 | 4. Health benefits increase | - | 71 |

**SUMMARY OF REQUEST**
**UNITED STATES SENTENCING COMMISSION**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2013**
**(Dollar amounts in thousands)**

| | | Original Request | |
|---|---|---|---|
| | **B. Other Adjustments** | FTEs | Amount |
| 12.11 | 5. General inflationary adjustments | - | 186 |
| | **Subtotal, Adjustments to Base to Maintain Current Services** | - | 561 |
| | **Total Current Services Appropriation Required** | 105 | 17,061 |
| | **Total, Fiscal Year 2013 Appropriation Required** | 105 | 17,061 |
| | **Total Appropriation Increase, Fiscal Year 2012 to Fiscal Year 2013** | - | 561 |
| | **Financing the Fiscal Year 2013 Request:** | | |
| | **Total Appropriation Required, Fiscal Year 2013** | 105 | 17,061 |
| 12.11 | 6. Carryforward balance from the Judiciary Information Technology Fund | - | 260 |
| | **Total Estimated Obligations, Fiscal Year 2013** | 105 | 17,321 |

**UNITED STATES SENTENCING COMMISSION**
**SALARIES AND EXPENSES**
**Obligations by Activity ($000)**

| Activity | Fiscal Year 2011 Actual | Fiscal Year 2012 Estimate | Fiscal Year 2013 Request |
|---|---|---|---|
| **Salaries and Expenses, Total Obligations** | **17,576** | **18,100** | **17,321** |
| Unobligated Balance, Start of Year | | | - |
| Judiciary Information Technology Fund | (2,151) | (1,860) | (260) |
| Salaries and Expenses No-Year Funds | (597) | - | - |
| Unobligated Balance, End of Year | | | |
| Judiciary Information Technology Fund | 1,860 | 260 | - |
| Salaries and Expenses No-Year Funds | - | - | - |
| Unobligated Balance, Expiring | 113 | - | - |
| **Available Appropriation** | **16,803** | **16,500** | **17,061** |

**Object Classification ($000)**

| | Description | Fiscal Year 2011 Actual | Fiscal Year 2012 Estimate | Fiscal Year 2013 Request |
|---|---|---|---|---|
| 11 | Personnel compensation | 9,898 | 10,171 | 10,479 |
| 12 | Personnel benefits | 2,925 | 3,175 | 3,242 |
| 21 | Travel | 785 | 755 | 669 |
| 22 | Transportation of things | 18 | 18 | 18 |
| 23 | Rent, communications and utilities | 69 | 60 | 41 |
| 24 | Printing and reproduction | 179 | 279 | 270 |
| 25 | Other services | 2,559 | 2,549 | 1,737 |
| 26 | Supplies and materials | 60 | 55 | 45 |
| 31 | Equipment | 1,083 | 1,039 | 820 |
| | **Total Obligations** | **17,576** | **18,100** | **17,321** |

**UNITED STATES SENTENCING COMMISSION**
**SALARIES AND EXPENSES**
**Relation of Obligations to Outlays ($000)**

| | Fiscal Year 2011 Actuals | Fiscal Year 2012 Estimate | Fiscal Year 2013 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total Obligations | 17,576 | 18,100 | 17,321 | (779) |
| Obligated balance, start of year | 4,918 | 4,573 | 4,573 | 0 |
| Obligated balance, end of year | (4,573) | (4,573) | (4,139) | 434 |
| Total Outlays | 17,921 | 18,100 | 17,755 | (345) |
| Less Judiciary Information Technology Fund Obligations | (291) | (1,600) | (260) | 1,340 |
| **Net Outlays** | **17,630** | **16,500** | **17,495** | **995** |

**Personnel Summary**

| | Fiscal Year 2011 Actuals | Fiscal Year 2012 Estimate | Fiscal Year 2013 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total compensable workyears: | | | | |
| Full-time equivalent employment | 104 | 105 | 105 | 0 |

**GENERAL STATEMENT AND INFORMATION**

The statutory duties of the United States Sentencing Commission include, but are not limited to:

- promulgating sentencing guidelines to be determined, calculated, and considered in all federal criminal cases;
- collecting sentencing data systematically to detect new criminal trends, to determine if federal crime policies are achieving their goals, and to serve as a clearinghouse for federal sentencing statistics;
- conducting research on sentencing issues and serving as an information center for the collection, preparation, and dissemination of information on federal sentencing practices; and
- providing specialized training to judges, probation officers, staff attorneys, law clerks, prosecutors, defense attorneys, and other members of the federal criminal justice community on federal sentencing issues, including application of the guidelines.

The Commission sits at the intersection of all three branches of government; the Legislative Branch that creates the law, the Executive Branch that enforces the law, and the Judicial Branch that interprets the law. The Commission synthesizes the interests of the three branches in order to effectuate sound federal sentencing policy. Consistent with *United States v. Booker* (*Booker*), which rendered the federal sentencing guidelines advisory and reaffirmed the Commission's role in federal sentencing, the Commission has continued its core mission to promulgate new guidelines and guideline amendments in response to congressional statutes and directives, and in response to information it receives from sentencing courts, Congress, the Executive Branch, federal defenders, and others in the federal criminal justice system. The Commission continues to expand its efforts to provide specialized training on federal sentencing issues, including application of the guidelines to federal judges, probation officers, staff attorneys, law clerks, prosecutors, defense attorneys, and others.

Furthermore, the Commission continues to refine its data collection, analysis, and reporting efforts to provide real-time data about federal sentencing practices and trends. The Commission must continue to disseminate sentencing information in real time and in a thorough manner to fulfill its statutory duties to monitor the operation of the guidelines and to advise Congress on federal sentencing policy.

Although the need for Commission work-product and services has increased after *Booker*, the Commission is not requesting program increases for fiscal year 2013. The Commission believes that it continues to be successful in maximizing its existing resources and appreciates the funding Congress has provided for the Commission's fulfillment of its statutory duties. Full funding of the Commission's fiscal year 2013 budget request will allow the Commission to continue to fulfill these statutory duties.

## ONGOING ACTIVITIES

**Sentencing Policy Development**

In fiscal year 2011, the Commission held public hearings on a number of issues including fraud, immigration, firearms, and drug trafficking offenses. The Commission used the information it gained from these hearings in the promulgation of a package of amendments to the federal sentencing guidelines covering certain firearms offenses, including straw purchases; promulgation of its permanent amendment implementing the Fair Sentencing Act of 2010; and responding to the congressional directives set forth in the Patient Protection and Affordable Care Act of 2010 (Pub. L. No. 111–148) and the Secure and Responsible Drug Disposal Act of 2010 (Pub. L. No. 111–273).

The Commission recently completed, pursuant to congressional directive, a 645-page report on statutory mandatory minimum penalties and their role in the federal sentencing system. The Commission's report provides the most comprehensive examination of statutory mandatory minimums conducted since the Commission's last report on this topic was released in 1991.

The Commission continues to evaluate and report on the impact of *Booker* and subsequent case law on the federal sentencing system, including an assessment of, and possible guideline amendments related to, the incidence of and reasons for sentences that are outside the guideline range. The Commission anticipates releasing a comprehensive report on *Booker* and its impact on federal sentencing in fiscal year 2012. The Commission is also undertaking a review of child pornography offenses, and will release a report on its findings in late fiscal year 2012.

In fiscal year 2012, the Commission expects to promulgate guidelines and guideline amendments to implement enacted legislation including the Dodd-Frank Wall Street Reform and Consumer Protection Act, as well as other legislation enacted by Congress. The Commission also anticipates addressing drug trafficking, human rights violations, and other offenses.

In fiscal year 2013, the Commission anticipates continuing work on a number of sentencing policy initiatives. In addition to implementing any legislation enacted by Congress, the Commission will continue its work on strengthening the federal sentencing system consistent with the findings and recommendations that will be set forth in its forthcoming *Booker* report. The Commission also will be working with Congress and others in the criminal justice community on the recommendations set forth in its October 2011 mandatory minimum report. In addition, the Commission anticipates working with Congress and other stakeholders on the recommendations and findings it plans to set forth in its forthcoming report on child pornography offenses.

**Collecting Sentencing Data**

Each year, the Commission's Office of Research and Data collects data about criminal cases sentenced during that year. By law, the courts are required to submit five sentencing documents to the Commission within 30 days of entry of judgment in a criminal case: 1) the charging document, 2) the plea agreement, 3) the presentence investigation report, 4) the judgment and commitment order, and 5) the statement of reasons form. The Commission reviews these documents and collects and analyzes many pieces of information of interest and importance to the federal criminal justice community. During the past year, the Commission received almost 390,000 documents for more than

84,000 original sentencings. Analyses of the data extracted from these documents by the Commission are reported in its Annual Report and Sourcebook of Federal Sentencing Statistics. In order to provide the most accurate and timely information on national sentencing trends and practices, the Commission disseminates key aspects of this data on a quarterly basis and provides trend analyses of the changes in federal sentencing practices over time.

The Commission's data collection, analysis, and reporting requirements are impacted by the high volume of cases sentenced in the federal system annually. As noted above, in fiscal year 2011, the Commission received documentation on over 84,000 original sentencings. To put this caseload in perspective, in fiscal year 1995, the Commission received documentation for 38,500 cases sentenced under the guidelines. In 1995, the Commission had 101 FTE; currently the Commission is staffed at 105 FTE. With only a four percent increase in staff, the Commission has accommodated a 118 percent increase in sentencings over this time period. To provide the timely analyses of federal sentencing data necessary for Congress and the courts, adequate funding of the Commission's efforts in this area is essential. The Commission's modernization and refinement efforts have kept pace with demands placed on it, but full funding of the Commission's fiscal year 2013 budget request will be necessary to ensure the system continues to operate efficiently with the ever-increasing number of federal cases.

Since 1991, the federal criminal caseload has increased in each of the 19 years except for three (1994, 1995, and 2004). For example, fiscal year 2011 saw an increase of 3.2 percent above the number of offenders sentenced in fiscal year 2010. Based on this strong historical trend, the Commission anticipates continuing growth in the number of offenders sentenced in fiscal year 2013.

Since March 2008, the Commission has also collected real-time data from the courts on over 24,000 motions filed for retroactive application of its 2007 crack cocaine amendment. The Commission will now begin to collect similar data on the retroactive application of its permanent amendment implementing the Fair Sentencing Act of 2010. Retroactive application of that amendment took effect on November 1, 2011. Based on the number of cases received by the Commission after its 2007 crack cocaine amendment, the Commission anticipates receiving documentation on approximately 15,000 motions for retroactive application of the 2010 crack cocaine amendment.

In recent years, the Commission has reported to Congress on its development and implementation of an electronic document submission system that enables sentencing courts to submit documentation directly to the Commission by electronic means. By the end of fiscal year 2008, all 94 judicial districts were using the Commission's electronic submission system. In fiscal year 2009, the Commission began the next phase of this modernization effort, which is to advance the evolution of the electronic document submission system to a web based-service system. By the end of fiscal year 2011, 69 districts were using the web-based system. The Commission expects to continue the development of the web-based system in the coming fiscal years. Because the Commission has been aggressively modernizing its systems, it has been able to accommodate a threefold increase in sentencings without significantly increasing FTE.

At the request of Congress, the Commission also provides specific analyses using real-time data of sentencing trends related to proposed and pending legislation. These assessments often are complex and time-sensitive, and require highly-specialized Commission resources. In addition, the Commission responds to

a number of more general data requests from Congress on issues such as drugs, immigration, fraud, and sex offenses. These requests are expected to continue in response to congressional work on crime legislation in the 112th Congress.

The Commission also responds to requests for data analyses from federal judges. For example, the Commission provides to each chief district judge and chief circuit judge a yearly analysis of the cases sentenced in the district or circuit with a comparison of the caseload and sentencing practices in that district or circuit to the nation as a whole. The Commission's ability to provide these analyses on demand and with real-time data provides a unique resource to judges.

**Conducting Research**

Research is a critical part of the Commission's overall mission. The Commission's research staff regularly analyzes the current and prior fiscal years' data to identify the manner in which the courts are sentencing offenders and their use of the guidelines in that work. The Commission routinely uses these analyses when considering proposed changes to the guidelines. Similarly, some analyses are published by the Commission as a resource for the criminal justice community. These analyses were a critical component of the Commission's recent mandatory minimum report. In fiscal year 2011, the Commission completed and released a multi-year recidivism study of crack cocaine offenders for whom the courts have granted motions for retroactive application of the 2007 crack cocaine amendment. It also completed an analysis of the retroactive application of the Commission's permanent amendment implementing the Fair Sentencing Act of 2010. Commission research also will be an integral part of the Commission's reports on the impact of *Booker* and other case law on the federal sentencing system, as well as its anticipated report on child pornography offenses.

**Training and Outreach**

The Commission continues to fulfill its statutory duty to provide training and specialized technical assistance on federal sentencing issues, including application of the guidelines, to federal judges, probation officers, staff attorneys, law clerks, prosecutors, and defense attorneys, by providing educational programs around the country throughout the year. The Commission has greatly expanded these training and outreach efforts in direct response to changes resulting from *Booker* and subsequent case law. In fiscal year 2011, for example, commissioners and Commission staff conducted training programs in all twelve circuits and most of the 94 judicial districts providing instruction and guidance to approximately 7,000 people throughout the year (approximately 1,000 more people than the Commission trained in fiscal year 2010). In May 2011, the Commission held its annual national training program in San Diego, California with more than 1,000 attendees, including many new federal district court judges. Commissioners and Commission staff also participated in numerous academic programs, symposia, and circuit conferences as part of the ongoing discussion of federal sentencing issues. The Commission anticipates that these expanded efforts and requests for training will continue throughout fiscal year 2013.

## JUSTIFICATION OF CHANGES

The fiscal year 2013 budget request of $17,061,000 represents an overall increase of $561,000, or 3.4 percent over the fiscal year 2012 appropriation of $17,061,000. The Commission's request is limited to a modest increase over fiscal year 2012 to account for inflationary increases and adjustments for personnel costs and to maintain current services. The Commission requests no program increases for fiscal year 2013.

Adjustments to base to maintain current services include funds for pay and benefits, cost increases for current staff, and adjustments for on-going activities, such as inflationary increases in contract rates and charges for services, supplies, equipment and other Commission needs.

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

### A. COMMISSION PERSONNEL AND BENEFITS

***1. Proposed January 2013 pay adjustment***

**Requested Increase: $47,000**

As of January 2012, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 0.5 percent beginning on or after January 1, 2013. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2013.

***2. Promotions and within-grade increases***

**Requested Increase: $208,000**

The requested increase provides for promotions and within-grade increases for support personnel. The salary plan for Commission personnel provides for periodic within-grade increases for staff who receive at least a satisfactory performance rating.

***3. One more compensable day***

**Requested Increase: $49,000**

There is one more compensable day in fiscal year 2013 than in fiscal year 2012. This request increases personnel compensation and benefits expenses associated with one more compensable day.

***4. Health benefits increase***

**Requested Increase: $71,000**

Based on the information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 6.8 percent in January 2012 and another 7.0 percent in January 2013. The requested increase annualizes the 2012 premium increase, and includes a nine-month provision for the anticipated fiscal year 2013 premium increase and other changes.

## B. OTHER ADJUSTMENTS

### 5. *Inflationary adjustments*

**Requested Increase: $186,000**

Consistent with guidance from the Office of Management and Budget, this request of $186,000 is required to fund inflationary increases of 1.6 percent for operating expenses such as travel, communications, printing, contractual services, supplies and materials, and furniture and equipment.

## FINANCING THE FISCAL YEAR 2013 REQUEST

### 6. *Carryforward balance from the Judiciary Information Technology Fund*

**Estimated Obligations: $260,000**

In fiscal year 2013, the Commission intends to obligate the remaining $260,000 in JITF amounts to continue making enhancements to the Commission's electronic submission system for the receipt and analysis of sentencing documentation from the federal courts. These enhancements include archiving case files to streamline back-up and maintenance processes and possible enhancements to the Commission's collection of data related to probation violations, revocations, and Rule 35 sentencing modifications.

# JUDICIARY INFORMATION TECHNOLOGY FUND

**GENERAL STATEMENT AND INFORMATION**

The Judiciary Information Technology Fund (JITF) was established by Congress in fiscal year 1990 (28 U.S.C. § 612) to assist the judiciary in implementing its information technology initiatives. The authority of the JITF was extended indefinitely in the fiscal year 1998 Commerce, Justice, State, Judiciary, and Related Agencies Appropriations Act (P.L. 105-119). The JITF was authorized "without fiscal year limitation," for the procurement of information technology resources. The fund makes it possible to implement the *Long-Range Plan for Information Technology in the Federal Judiciary* and to manage the information technology (IT) program over a multi-year planning cycle which allows more effective and efficient planning, budgeting, and use of funds for IT activities.

In keeping with the judiciary's mission and primary business objectives, the information technology program must identify, implement, and maintain cost-effective solutions for the judiciary, bar, and the public. All IT expenses for the district, appellate, and bankruptcy courts and probation and pretrial services offices must be paid from the fund.

Requirements are financed via the JITF from a variety of sources:

- deposits from the courts' Salaries and Expenses account;
- fee collections from the Electronic Public Access (EPA) program for IT expenses that improve public access to information (see Appendix 2, Electronic Public Access Program);
- unobligated balances in the fund from prior year financial plan savings (unencumbered);
- proceeds from the sale of excess equipment;
- annual allotments to the courts originally for non-IT purposes that are reprogrammed locally by the courts for IT initiatives in accordance with the budget decentralization program; and
- voluntary deposits from non-mandatory judiciary users of the fund (such as the Court of Appeals for the Federal Circuit, the Court of International Trade, the U.S. Sentencing Commission, and the Administrative Office of the U.S. Courts (AO)).

The majority of the financing in the JITF originates from deposits from the Salaries and Expenses account. Table 13.1 on the following page displays JITF requirements and funding sources for fiscal year 2011 through fiscal year 2013.

**Table 13.1 Judiciary Information Technology Fund Obligations and Financing ($000)**

| | FY 2011 Actual | FY 2012 Financial Plan | FY 2013 Request |
|---|---|---|---|
| **Obligations:** | | | |
| Salaries & Expenses Requirements (w/ carryforward) | 361,661 | 394,045 | 321,436 |
| EPA Program 1/ | 108,701 | 137,043 | 147,806 |
| Court of International Trade | 508 | 769 | 363 |
| U.S. Sentencing Commission | 291 | 1,600 | 260 |
| Administrative Office of the U.S. Courts | 1,169 | 809 | 0 |
| Court of Appeals for the Federal Circuit | 404 | 650 | 689 |
| **TOTAL JITF** | 472,734 | 534,916 | 470,554 |
| **Financing:** | | | |
| **Salaries and Expenses** | | | |
| Unobligated Balance, Start of Year | 48,703 | 63,138 | 20,000 |
| **New Deposits and Prior Year Recoveries 2/** | 376,096 | 350,907 | 301,436 |
| Unobligated Balance, End of Year | (63,138) | (20,000) | 0 |
| **Total Salaries & Expenses** | 361,661 | 394,045 | 321,436 |
| **EPA Program** | | | |
| Unobligated Balance, Start of Year | 26,611 | 31,905 | 25,052 |
| Estimated Receipts | 113,995 | 130,190 | 165,190 |
| Unobligated Balance, End of Year | (31,905) | (25,052) | (42,436) |
| **Total EPA Program** | 108,701 | 137,043 | 147,806 |
| **Court of International Trade** | | | |
| Unobligated Balance, Start of Year | 790 | 1,132 | 363 |
| New Deposits and Prior Year Recoveries | 850 | 0 | 0 |
| Unobligated Balance, End of Year | (1,132) | (363) | 0 |
| **Total Court of International Trade** | 508 | 769 | 363 |
| **U.S. Sentencing Commission** | | | |
| Unobligated Balance, Start of Year | 2,151 | 1,860 | 260 |
| New Deposits | 0 | 0 | 0 |
| Unobligated Balance, End of Year | (1,860) | (260) | 0 |
| **Total U.S. Sentencing Commission** | 291 | 1,600 | 260 |
| **Administrative Office of the U.S. Courts** | | | |
| Unobligated Balance, Start of Year | 1,345 | 809 | 0 |
| New Deposits | 633 | 0 | 0 |
| Unobligated Balance, End of Year | (809) | 0 | 0 |
| **Total Administrative Office of the U.S. Courts** | 1,169 | 809 | 0 |
| **Court of Appeals for the Federal Circuit** | | | |
| Unobligated Balance, Start of Year | 1,043 | 2,675 | 2,081 |
| New Deposits | 2,000 | 0 | 0 |
| Utilization of EPA Receipts | 36 | 56 | 36 |
| Unobligated Balance, End of Year | (2,675) | (2,081) | (1,428) |
| **Total Court of Appeals for the Federal Circuit** | 404 | 650 | 689 |
| **GRAND TOTAL JITF** | $472,734 | $534,916 | $470,554 |

[1] See Appendix 2, Electronic Public Access Program, for information about utilization of receipts.
[2] Of this amount, $31.3 million was deposited in fiscal year 2010 by the courts from decentralized resources.

## PROGRAMS FUNDED FROM THE SALARIES AND EXPENSES ACCOUNT

Under the guidance of the Judicial Conference of the United States and according to the strategic directions and objectives contained in the *Long-Range Plan for Information Technology in the Federal Judiciary*, the judiciary continues to implement information systems to meet the mission of the courts. The judiciary, like the rest of the public sector, depends on technology for communication systems, research, and information management systems to fulfill mission-critical needs.

The judiciary has made a significant investment in information technology. This investment has created efficiencies by automating labor-intensive work processes and effecting cost savings and offsets in areas such as processing court filings, jury management, financial systems, printing, postage, personnel, space, travel, and training. On-going application development and maintenance in the judiciary includes court administration/case management systems for appellate, district, and bankruptcy courts; judicial statistical and reporting systems; probation/pretrial services management systems; financial systems for the courts; human resources systems; and management information systems. In addition, the JITF funds infrastructure and telecommunications needs and provides allotments for information technology requirements to the courts. The requested amount for fiscal year 2013, which is significantly reduced from fiscal year 2011 obligations and fiscal year 2012 requirements, is necessary to maintain these critical systems. However, reductions will mean that enhancements to these systems, including upgrades to commercially-available hardware and software, will be postponed or eliminated altogether. Without the requested funds, support for operating and maintaining the judiciary's existing and newly installed information systems could be severely hindered, including processing support to the courts for personnel, payroll, financial, and statistical applications; infrastructure and collaboration tools; and the telecommunications program. In addition, investments vital to ensuring future cost containment and reductions would not be possible.

As shown in table 13.2 on page 13.5, funding for the JITF Salaries and Expenses obligations supports ten distinct program components. These requirements by major initiative support the IT systems that provide judges and staff with the tools they need to perform their day-to-day work.

Cost Containment Efforts

Several ongoing initiatives have been implemented in order to meet severe budget constraints and to enhance further efficiency and effectiveness.

The GSA Networx contract for telecommunications affords the opportunity to deploy telecommunications services, such as a national phone system, over the data communications network (DCN). This service, while requiring an initial investment and ongoing maintenance, reduces costs associated with maintenance or replacement of aging phone systems in the courts.

The judiciary continues to pursue the efficiencies and economies of scale of centralized purchasing for IT products and communications equipment. The judiciary is also

leveraging a GSA government-wide contract to manage wireless telecommunications costs.

Despite these efforts, the judiciary has had to postpone, suspend indefinitely, or cancel many planned upgrades and improvements to equipment and systems in order to address recent budgetary reductions. Many of these reductions were incorporated in the fiscal year 2012 planning process, with impacts continuing through fiscal year 2013.

Non-Appropriated Sources of Funds

In addition to annual appropriations deposited into the fund, the JITF is financed, to the extent authorized by Congress, by non-appropriated sources including fee collections from providing the public with electronic access to court records (see Appendix 2), and unobligated carryforward balances from prior years. The amount of appropriated funds to be deposited is calculated based on current estimates of total obligation requirements offset by available non-appropriated sources of funds. As non-appropriated sources of funding increase, the amount of deposited appropriated funds necessary to fund obligation requirements decrease. Conversely, if non-appropriated funding levels decrease, then additional appropriated funds may be required in order to ensure funds are available to meet critical IT requirements.

Savings and Slippage

JITF unobligated balances from prior years are derived from two sources. Balances categorized as savings are the result of reduced or deferred requirements, lower than anticipated costs, and increased efficiencies. The judiciary uses savings balances as a general offset to the appropriations deposit in the JITF.

The second source of unobligated balances in the JITF is categorized as slippage. During the course of the fiscal year, information technology requirements may shift from one year to the next due to, for example, delays in awarding contracts or obtaining necessary equipment and infrastructure, technology changes or continued analyses of alternatives. While "slippage" becomes part of the overall unobligated balance in the JITF, the planned obligation of funds for the original purpose still exists - it has merely been delayed. As a result, total obligation requirements in the upcoming budget year may increase due to slippage; however, because the funding associated with this slippage is carried forward from the previous year and designated for the same purpose in the current year, there is no net increase to appropriation requirements. As budget estimates are updated throughout the fiscal year, the judiciary adjusts both its appropriation requirements and its total obligation requirements in the JITF to account for both "savings" and "slippage."

**Table 13.2 Salaries and Expenses Obligations - Judiciary Information Technology Fund Program Requirements ($000)**

| ($000) | A | B | C | | |
|---|---|---|---|---|---|
| IT Program Component | FY 2012 Projected Obligations | FY 2011 Slipped Requirements | FY 2012 Base Requirements (col a - col b) | FY 2013 Total Requirements | Change: FY 2012 Adj. Base Requirements to FY 2013 Current Services Requirements |
| Court Administration Systems | 2,799 | 41 | 2,758 | 2.807 | 49 |
| Judicial Statistics and Reporting Systems | 4,172 | 661 | 3,511 | 3.308 | (203) |
| Court Allotments | 90,917 | 1,235 | 89.682 | 81,138 | (8.544) |
| Probation and Pretrial Services | 17,893 | 185 | 17.708 | 12,127 | (5.581) |
| Financial Systems | 39,311 | 8,855 | 30.456 | 26,886 | (3.570) |
| Human Resources Systems | 20,281 | 427 | 19,854 | 18,067 | (1,787) |
| Management Information Systems | 15,069 | 1,190 | 13,879 | 11,530 | (2.349) |
| Infrastructure and Collaboration Tools | 88,917 | 15,256 | 73,661 | 61,042 | (12.619) |
| Telecommunications Program | 84,464 | 13.640 | 70,824 | 73,825 | 3,001 |
| Court Support Reimbursable Program | 30,222 | 0 | 30.222 | 30,706 | 484 |
| **TOTAL, SALARIES AND EXPENSES** | 394,045 | 41,490 | 352.555 | 321,436 | (31,119) |

*Court Administration Systems*

**FY 2013 Requirements:** **$ 2,807,000**
**Requested Change from FY 2012 Plan:** **$ 49,000**

This category encompasses systems for juror qualification, management, and payment; the management and administration of library functions (e.g., acquisitions, cataloging, serial control); and the operations and maintenance for the Central Violations Bureau which provides case management and financial information for petty offense and misdemeanor cases initiated by violation notices.

The net change for this category is an increase of $49,000 which is largely due to costs of implementing national support for a system to manage interpreter services over the telephone. This system, while increasing costs in the information technology program, increases efficiency and reduces costs of providing those services. In addition, the increase results from the cost of resuming, on a limited basis, some cyclical equipment replacement that was deferred during fiscal year 2011 and fiscal year 2012.

*Judicial Statistical and Reporting Systems*

**FY 2013 Requirements:** **$ 3,308,000**
**Requested change from FY 2012 Plan:** **$ (203,000)**

This category includes systems to support gathering and reporting statistics in the judiciary; financial disclosure reports by judges and judiciary employees (for completing financial reports required by the Ethics in Government Act of 1978); inter-circuit assignments for courts of appeals and district courts; bankruptcy administrator management and reporting to manage cases, oversee the trustees' activity, and provide reports to federal judges; the law clerk hiring process; and electronic document capabilities for the federal rule-making process.

The decrease in this category is the result of deferring functional enhancements to systems as well as streamlining training processes.

*Court IT Allotments*

**FY 2013 Requirements:** **$ 81,138,000**
**Requested Change from FY 2012 Plan:** **$ (8,544,000)**

These allotments are provided directly to the courts for a variety of IT-related activities. Typically, these funds cover the costs associated with operating, maintaining, and cyclically upgrading the installed base of desktop personal computers, laptop computers, printers, and local-area-network equipment. Allotments for maintaining the base of equipment are based on a funding model which uses industry-standard cyclical replacement cycles and pricing. Funds are also allotted for other IT-related purposes such as telephone system maintenance, equipment for new judges, and grants for local technology innovations in the courts.

The fiscal year 2012 appropriation does not fully fund court IT allotments. The reduction associated with the fiscal year 2013 request reflects a downward adjustment in projected obligations that assumes courts will be operating in a constrained budget environment and funding only the most critical IT needs.

***Probation/Pretrial Services Management Systems***

**FY 2013 Requirements:** **$12,127,000**
**Requested Change from FY 2012 Plan:** **$ (5,581,000)**

This program provides probation and pretrial services personnel case management and decision support tools as well as tools to access critical case information and law enforcement databases from Executive Branch and stated local sources while working in the field. Support is also provided for storage and sharing of electronic documents; collection; analysis, and reporting of client data; and the IT needs of the Federal Law Enforcement Training Center.

Reductions in this program are the result of deferring non-emergency system improvements in fiscal year 2013. Some of these requirements may need to be restored in fiscal year 2014.

***Financial Systems***

**FY 2013 Requirements:** **$26,886,000**
**Requested Change from FY 2012 Plan:** **$ (3,570,000)**

In addition to the judiciary's financial accounting system, this program includes systems to support the local court budgeting process, making payments to private court-appointed counsel and expert services, tracking and monitoring criminal debt imposed by the court, the handling of cash receipts, reporting of court payroll information, and managing travel expenses. The goal is to have a single integrated financial system allowing timely access to data, supporting the federal accounting standards including the e-government requirement for daily reporting to the Department of Treasury, and providing enhanced reporting capability.

Reductions in this program result from deferring non-emergency system maintenance and enhancements and extending the development schedule for the judiciary's integrated financial system.

***Human Resources Systems***

**FY 2013 Requirements:** **$18,067,000**
**Requested Change from FY 2012 Plan:** **$ (1,787,000)**

This program encompasses systems for personnel, payroll, and retirement related services; judges' retirement; fair employment practices reporting; and integration of all human resources-related items as well as efforts to reduce travel-based training. It also includes equipment to produce educational news programming for the judiciary, the public, and Congress.

Reductions from fiscal year 2012 levels result from a sharp reduction in plans for training, deferral of enhancements, and reduced support to users.

***Management Information Systems***

**FY 2013 Requirements:** **$11,530,000**
**Requested Change from FY 2012 Plan:** **$ (2,349,000)**

This category includes a collection of systems and activities to support the judiciary's national web sites, collection of survey information, and the *Guide to Judiciary Policies*. Also included are systems to manage facilities projects and to support planning and decision-making with staffing, financial, and workload data.

Reductions in this program are the result of deferred maintenance and enhancement support.

***Infrastructure and Collaboration Tools***

**FY 2013 Requirements:** **$ 61,042,000**
**Requested Change from FY 2011 Plan:** **$(12,619,000)**

These tools provide support to the national IT program including testing, training, and support; maintenance and replacement of servers; e-mail messaging (including licenses, server maintenance and replacement, and help desk services); IT security support services; hosting of national applications; national software licenses; IT project management; information systems architecture (and assessment of new technologies); infrastructure for identity management services, and the Court Operations Support Center.

Reductions in this area result from deferral of maintenance and improvements in services such as hosting, project management, data integration, e-mail, and security assessments.

***Telecommunications Program***

**FY 2013 Requirements:** **$ 73,825,000**
**Requested Change from FY 2012 Plan:** **$ 3,001,000**

This program provides support for voice and data transmissions services and telecommunications equipment for new buildings. (Funds for local, long-distance, and cellular service, and telephone system maintenance are included in *Court IT Allotments*.) The judiciary's communications program allows the judiciary to maintain communications services for the appellate, district, and bankruptcy courts and for probation and pretrial services offices, and to procure communications equipment for new courthouses and for courthouses undergoing major repairs and alteration.

Requirements for telecommunications were sharply reduced in the fiscal year 2012 plan by extending the schedule for implementation of the national communications system, reducing the scope of data cabling projects within the courts, and reducing network hardware maintenance, including deferral of the acquisition of new network hardware. The increase from fiscal year 2012 to fiscal year 2013 reflects a partial resumption of those activities.

***Court Support Reimbursable Program***

**FY 2013 Requirements:** **$30,706,000**
**Requested Change from FY 2012 Plan:** **$ 484,000**

This category funds staff who provide IT development, management, and maintenance services to the courts. This includes IT policy and planning guidance; architecture and infrastructure support; security services; development, testing, and implementation of national IT applications; IT training and other administrative and IT support services on behalf of the courts.

The fiscal year 2013 budget request for the Court Support Reimbursable Program includes $30.7 million for the salaries, benefits, and related expenses that are reimbursed from the Salaries and Expenses account.

## PROGRAMS FUNDED FROM VOLUNTARY DEPOSITS FROM OTHER JUDICIARY ACCOUNTS

Occasionally, organizations within the judiciary that are not mandatory users of the JITF may deposit funds to assist them in management of their IT efforts. In recent years, the Court of Appeals for the Federal Circuit, the Court of International Trade, the United States Sentencing Commission, and the Administrative Office have made such deposits.

***Court of International Trade***

A total of $769,000 is planned for obligation in fiscal year 2012 and $363,000 is planned for obligation in fiscal year 2013. Fiscal year 2012 funds will be used to continue its support of its newly installed video conferencing system, upgraded data network and voice connections and Virtual Private Network System; upgrade and support existing software applications; purchase new software applications to ensure the continued operational efficiency of the Court; replace computer desktops, monitors and printers, and five file servers in accordance with the judiciary's cyclical replacement program; provide phone service, including wireless service, as well as broadband services for laptops; support Court equipment by the purchase of yearly leasing and maintenance agreements and provide Court access to the Judiciary Data Communications Network. Fiscal year 2013 funds will be used to continue information technology initiatives and to support the Court's short-term and long-term information technology needs.

***U.S. Sentencing Commission***

At the beginning of fiscal year 2012, the Commission had $1,860,000 available in the Judiciary Information Technology Fund from deposits that were made in previous fiscal years. In fiscal year 2012, the Commission intends to obligate, at minimum, $1,600,000 to support four critical projects. First, the disaster recovery project will decentralize the Commission's sentencing datasets and other Commission applications and thereby provide security, in the event of a disaster, for the continued submission of sentencing documents by the federal courts and the continued maintenance and collection of sentencing data by the Commission, as required by 28 U.S.C. 994. In early fiscal year 2013, the Commission intends to obligate remaining funds to complete the implementation of the disaster recovery project.

The second project, the data extraction project will maximize the Commission's capabilities to extract certain sentencing data (through optical character recognition and other state-of-the art technologies) from sentencing documents currently submitted to the Commission by the federal courts. This will enhance the Commission's research and reporting functions, including its ability to fulfill special requests and unique coding projects, as set forth in 28 U.S.C. 995. In early fiscal year 2013, the Commission intends to complete implementation of the Data Extraction Project.

The third draw on the Commission's JITF funding will be expenses related to the completion of the Oracle infrastructure project, that will be moving from development mode to maintenance mode during fiscal year 2012.

Finally, the Commission intends to focus resources on enhancing its web-based training options. The Commission will be exploring interactive training vehicles and building a video library of frequently requested topics.

***Court of Appeals for the Federal Circuit***

At the beginning of fiscal year 2012, the Judiciary Information Technology Fund contained $2,675,000. This amount will be supplemented by an additional $56,000 from Electronic Public Access receipts to total $2,731,000. It is anticipated that the Court will spend $650,000 in fiscal year 2012 on the continuing project begun in fiscal year 2011 to implement the judiciary's CM/ECF software for use by the Court. Additional funds will be spent on projects including cyclical replacement of automation equipment, an IP phone upgrade, to customize and implement SharePoint Enterprise Management, and to implement wireless services for judges and court staff.

At the beginning of fiscal year 2013, the Court estimates that $2,081,000 will remain in the Judiciary Information Technology Fund. This amount will be supplemented by an additional $36,000 from Electronic Public Access receipts to total $2,117,000. The Court anticipates spending $689,000 to implement Vmware and Adobe LiveCycle Forms ES2 module. The Court will also spend funds on the cyclical maintenance of automation equipment.

# APPENDIX 2 - ELECTRONIC PUBLIC ACCESS PROGRAM

# ELECTRONIC PUBLIC ACCESS PROGRAM

## GENERAL STATEMENT AND INFORMATION

The Electronic Public Access (EPA) program provides electronic public access to court information in accordance with federal statutes and with judiciary policies and user needs. PACER (Public Access to Court Electronic Records) was established in 1988 as a dial-up service. In the last decade, through the implementation of the Case Management/Electronic Case Files (CM/ECF) system, PACER has evolved into an Internet-based service, which provides the courts, litigants, and public with access to court dockets, case reports, and over 500 million documents filed with the courts through CM/ECF. PACER is a portal to CM/ECF, which is in turn integral to public access.

The program has over 1,300,000 registered user accounts of which approximately one-third were active during fiscal year 2011. This is an increase of 160,000 new accounts over fiscal year 2010. Besides court staff, users include members of the bar, city, state and federal employees, and the general public. The biggest user is the Department of Justice. Other than the Department of Justice, the top 10 users are major commercial enterprises or financial institutions. During fiscal year 2011, the judiciary's PACER Service Center established 160,000 new PACER accounts and responded to more than 205,000 telephone and email requests.

Pursuant to Congressional directives, the Electronic Public Access program is funded entirely through user fees set by the Judicial Conference of the United States. Fees are deposited in a special account in the U.S. Treasury and are then used by the Judicial Conference exclusively to fund program expenses and enhancements that increase public access to the courts, including court websites, courtroom technology, web-based juror services, and electronic bankruptcy noticing. In addition, expenses associated with the operation, maintenance, and enhancement of CM/ECF are funded completely from EPA fee revenue, there are no added fees to attorneys or parties for filing documents over the Internet using CM/ECF. Over the past year, the following steps have been taken to contain EPA program costs:

- *Contractor Costs.* Contractor costs have been reduced through two efforts. First, a new contracting vehicle for acquiring information technology services, with lower rates than the previous contract, was established during 2011. Second, the judiciary has used court staff on temporary duty assignments rather than contractors to develop the requirements for the next generation of CM/ECF. Not only has this allowed the judiciary to avoid contractor costs for this task, it has resulted in a better product due to court staff's intimate knowledge of the business processes.

- *Bankruptcy Noticing.* Electronic Bankruptcy Noticing (EBN) currently accounts for 25 percent of the notices distributed by the Bankruptcy Noticing Center (BNC). Each electronic notice saves the judiciary 25 cents when compared to the cost of a paper notice, with total savings of $8 million in fiscal year 2011. The current BNC projections call for electronic noticing to grow at a rate of

5 percent per year, with a corresponding decrease in paper noticing. Incentives have been built into the BNC contract to encourage the contractor to promote movement from paper to electronic noticing. The BNC has undertaken an ongoing effort to identify and eliminate duplicate notices sent to the same email address to hold down costs.

These cost containment efforts allowed the program to improve the PACER service during fiscal year 2011 in the following key areas:

- *Mobile Access to Case Information.* The judiciary launched a new mobile version of the PACER Case Locator. The PACER Case Locator allows searching for court records in all district, bankruptcy, and appellate courts. The Mobile PACER Case Locator is accessible using Apple devices, such as iPads, as well as Android devices Version 2.2 or higher.

- *Training and Education.* The judiciary is working with the Government Printing Office (GPO) and the American Association of Law Libraries to implement an initiative to provide training and education to the public on how to access court records efficiently and effectively. The program was piloted in two libraries during fiscal year 2011, the Library of Congress and the San Bernadino County Law Library, and will be expanded to additional libraries in fiscal year 2012. In conjunction with this initiative, the judiciary has launched a new PACER training site. This allows anyone with an Internet connection to learn how to use PACER free of charge without obtaining a PACER account. The site includes data from real cases, allowing users to become familiar with the type of case information and documents available through PACER.

- *Opinion Pilot Program.* The judiciary also worked with the GPO to make United States court opinions available to the public through GPO's FDsys web site, which provides electronic access to Federal electronic information from all three branches of government. More than 12,000 opinions from three courts were made available in October 2011. Opinions from additional courts will be added during the upcoming fiscal year.

- *eJuror.* The courts are in the process of implement a new jury management system that web based access to jurors. The eJuror component provides jurors with 24-hour access to online information and assistance via the court's website. Prospective jurors have the option to go online to complete qualification questionnaires and other jury forms, query status and reporting information, request excuses and deferments, and complete exit surveys.

Because CM/ECF has served the district and bankruptcy courts well for nearly a decade, the judiciary has launched a project, the Next Generation of CM/ECF, to develop a enhanced successor system that takes advantage of current technology. With the assistance of judges, chambers staff, clerks of court, and clerks' office staff, and other judiciary stakeholders, the Administrative Office has examined court processes and procedures to develop functional requirements for the judiciary's future case management system. In addition, an outreach effort to define the needs of additional stakeholders including those outside the judiciay was conducted, with over 5,000 external CM/ECF users surveyed and more than fifty requirements-gathering sessions held in various meetings throughout the country.

By the end of February 2012, the judiciary will complete the process of defining its requirements for the next generation of CM/ECF, as well as for the electronic public access program reporting functions, and will move into the next stage of the project, designing and programming the system. The Next Generation effort, which is expected to span the next four to six years, will take an transitional approach to providing new functionality for all stakeholders.

While cost containment efforts have made it possible to increase services to the public, in September 2011, the Judicial Conference felt it necessary to authorized an increase in the judiciary's electronic public access fee from $.08 to $.10 per page, which will take effect on April 1, 2012. The change is needed to continue to support and improve PACER services, and to develop and implement the next generation of the judiciary's Case Management/Electronic Case Filing system. The fee has not been increased since 2005. The Conference was mindful of the impact such an increase could have on other public entities and on public users accessing the system to obtain information on a particular case. For this reason, local, state, and federal government agencies will be exempt from the increase for three years. Moreover, PACER users who do not accrue charges of more than $15 in a quarterly billing cycle will not be charged a fee. (The current exemption is $10 per quarter.) The expanded exemption means that 75 to 80 percent of all users will still pay no fees. Fee information is published in the Electronic Public Access Fee Schedule, available on www.uscourts.gov.

**Obligations of funds from Electronic Public Access Receipts**

Funds from the EPA receipts fund operations, maintenance, and improvements in EPA programs. The table below breaks out obligations by program and year.

**Table A-2.1 Utilization of Electronic Public Access Receipts ($000)**

| Category | FY 2011 Actual | FY 2012 | FY 2013 |
|---|---|---|---|
| Public Access Services and Applications | 18,022 | 17,075 | 19,713 |
| CM/ECF Development, Operations, and Maintenance | 22,541 | 34,121 | 34,470 |
| Courtroom Technology | 21,542 | 31,285 | 34,518 |
| Telecommunications | 23,528 | 26,648 | 30,879 |
| Electronic Bankruptcy Noticing | 11,904 | 13,789 | 13,215 |
| Allotments to the Courts | 10,619 | 12,197 | 11,793 |
| Web-based Juror Services | 0 | 884 | 2,536 |
| Violent Crime Control Act Notification | 509 | 1,044 | 682 |
| **TOTAL** | **108,665** | **137,043** | **147,806** |

## GENERAL PROVISIONS - THE JUDICIARY

Sec. 301. Appropriations and authorizations made in this title which are available for salaries and expenses shall be available for services as authorized by 5 U.S.C. 3109.

Sec. 302. Not to exceed 5 percent of any appropriation made available for the current fiscal year for the Judiciary in this Act may be transferred between such appropriations, but no such appropriation, except "Courts of Appeals, District Courts, and Other Judicial Services, Defender Services" and "Courts of Appeals, District Courts, and Other Judicial Services, Fees of Jurors and Commissioners", shall be increased by more than 10 percent by any such transfers: Provided, That any transfer pursuant to this section shall be treated as a reprogramming of funds under sections 604 and 608 of this Act and shall not be available for obligation or expenditure except in compliance with the procedures set forth in section 608.

Sec. 303. Notwithstanding any other provision of law, the salaries and expenses appropriation for "Courts of Appeals, District Courts, and Other Judicial Services" shall be available for official reception and representation expenses of the Judicial Conference of the United States: Provided, That such available funds shall not exceed $11,000 and shall be administered by the Director of the Administrative Office of the United States Courts in the capacity as Secretary of the Judicial Conference.

Sec. 304. Section 3314(a) of title 40, United States Code, shall be applied by substituting "Federal" for "executive" each place it appears.

Sec. 305. In accordance with 28 U.S.C. 561-569, and notwithstanding any other provision of law, the United States Marshals Service shall provide, for such courthouses as its Director may designate in consultation with the Director of the Administrative Office of the United States Courts, for purposes of a pilot program, the security services that 40 U.S.C. 1315 authorizes the Department of Homeland Security to provide, except for the services specified in 40 U.S.C. 1315(b)(2)(E). For building-specific security services at these courthouses, the Director of the Administrative Office of the United States Courts shall reimburse the United States Marshals Service rather than the Department of Homeland Security.

[Sec. 306. Section 203(c) of the Judicial Improvements Act of 1990 (Public Law 101-650; 28 U.S.C. 133 note), is amended--(1) in the third sentence (relating to the District of Kansas), by striking '20 years' and inserting '21 years'; and (2) in the seventh sentence (related to the District of Hawaii), by striking '17 years' and inserting '18 years'.]

*Sec. 306. Section 140 of Public Law 97–92, as amended by Public Law 107–77 (28 U.S.C. 461 note), is repealed.*

This title may be cited as the "Judiciary Appropriations Act, [2012] *2013*".

Explanation of Changes

Old Section 306: The language extending these temporary judgeships for one year was enacted on December 23, 2011 as part of the Consolidated Appropriations Act, 2012 (P.L 112-74). It is proposed for deletion because the Judiciary is hopeful a Judgeship bill will be enacted during fiscal year 2012.

New Section *306*: The proposed language would allow federal judges to receive the same automatic annual cost of living adjustments (COLA), currently authorized by section 461 of title 28 of the United States Code, that members of Congress, Executive Schedule officials, and the Vice President are authorized to receive.