# Exhibit E

# FINANCIAL SERVICES AND GENERAL GOVERNMENT APPROPRIATIONS FOR 2012

## HEARINGS

BEFORE A

### SUBCOMMITTEE OF THE

### COMMITTEE ON APPROPRIATIONS

### HOUSE OF REPRESENTATIVES

ONE HUNDRED TWELFTH CONGRESS

FIRST SESSION

_____

SUBCOMMITTEE ON FINANCIAL SERVICES AND GENERAL GOVERNMENT APPROPRIATIONS

**JO ANN EMERSON, Missouri,** *Chair*

RODNEY ALEXANDER, Louisiana
JO BONNER, Alabama
MARIO DIAZ-BALART, Florida
TOM GRAVES, Georgia
KEVIN YODER, Kansas
STEVE WOMACK, Arkansas

JOSÉ E. SERRANO, New York
BARBARA LEE, California
PETER J. VISCLOSKY, Indiana
ED PASTOR, Arizona

NOTE: Under Committee Rules, Mr. Rogers, as Chairman of the Full Committee, and Mr. Dicks, as Ranking Minority Member of the Full Committee, are authorized to sit as Members of all Subcommittees.

JOHN MARTENS, WINNIE CHANG, KELLY SHEA, and ARIANA SARAR,
*Subcommittee Staff*

_____

## PART 2

## FY 2012 BUDGET JUSTIFICATIONS

| | Page |
|---|---|
| **Executive Office of the President** | **1** |
| **The Judiciary** | **273** |



_____

U.S. GOVERNMENT PRINTING OFFICE

64–963                          WASHINGTON : 2011

H181-15

# The Judiciary

# Fiscal Year 2012

# Congressional Budget Summary

PREPARED BY
THE ADMINISTRATIVE OFFICE OF THE U.S. COURTS
WASHINGTON, DC
February 2011

(273)

274

# FOREWORD

*Overview*

As Congress grapples with the fiscal problems confronting the nation, the Judicial Conference is grateful for the continued funding and support provided by Congress in this era of fiscal constraint. The Judiciary recognizes the austere environment and is putting forth only its most critical needs. The Judiciary's fiscal year 2012 budget request of $7.3 billion is a 4.3 percent increase over assumed fiscal year 2011 levels, which is the smallest requested increase on record. This represents the minimum level the Judicial Conference believes is necessary to keep up with its increasing case filings, driven primarily by bankruptcy and probation and pretrial services workloads.

It is important to note that the Judiciary does not create its own work. Rather, its work is driven by factors beyond its control. The courts are recipients of criminal cases filed by the Department of Justice, civil cases filed by the government, businesses and individual citizens, and bankruptcy cases filed by businesses and individuals – all of which must be adjudicated. The Judiciary also has a significant law enforcement role performed very ably by its probation and pretrial services officers which supervise both convicted felons released from prison and criminal defendants awaiting trial. The Constitution requires legal representation for indigent criminal defendants, and our Defender Services program is the statutorily mandated mechanism for fulfilling the constitutional requirement.

The courts' workload is also impacted by congressionally-funded Southwest Border immigration and other law enforcement initiatives. In the past few years, Congress has provided increased resources to the Department of Justice and the Department of Homeland Security. In fiscal year 2010 alone, Congress provided $196 million and $394 million, respectively, to the Department of Justice and Department of Homeland Security in the Emergency Border Security Supplemental Appropriations Act of 2010. These additional resources will create work for the probation officers, district courts, and defender services, yet the Judiciary received only $10 million to respond to the significant increased workload.

Bankruptcy filings have continued to increase substantially over the past two years. Nationwide, the increase in filings was 20 percent in fiscal year 2010 over fiscal year 2009, which was preceded by a 35 percent increase between fiscal years 2008 and 2009. Bankruptcy case filings are projected to continue at high levels through 2011 and 2012. Caseloads are nearing historical filing levels that preceded the implementation of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). In addition, cases filed under BAPCPA are more time consuming and require more staff resources than cases filed prior to enactment of the law. We expect bankruptcy filings to continue at a high rate for some time because bankruptcy filings tend to continue even after economic recovery.

The Judiciary seeks funding for 286 additional staff positions (143 FTE) in bankruptcy courts and 164 additional staff

i

positions (82 FTE) for probation and pretrial services offices to support projected workload requirements for fiscal year 2012.

The Defender Services' workload also is impacted by congressionally-funded Southwest Border immigration and other law enforcement initiatives. The Judiciary seeks funding for an additional 122 staff positions (61 FTE) along with the annualization of 108 staff positions (54 FTE) to pay for private court-appointed counsel necessary to support the increased workload requirements projected for fiscal year 2012.

In addition to resources for workload increases, the Judiciary's request includes a modest increase of $24.6 million over assumed fiscal year 2011 levels to protect Judiciary facilities, judges, court staff, and the public. This additional funding will provide all court facilities with the appropriate number of court security officers and functional screening and security equipment.

## Cost Containment

The Judiciary has been a leader on cost containment for six years – well ahead of other parts of the federal government. The Judicial Conference has renewed its commitment to

*Julia S. Gibbons*

Julia S. Gibbons
United States Circuit Judge
for the Sixth Circuit Court of Appeals
Chair, Budget Committee of the
Judicial Conference of the United States

identify new avenues for savings and cost avoidance. This effort remains a high priority – the Judiciary wants to do its part to help reduce the federal budget deficit by developing new initiatives that are essential to continue to slow the growth in its budgetary requirements. The Judicial Conference believes that sustained efforts will continue to position the Judiciary for uncertain and more difficult budget climates in the future. Cost containment allows the Judiciary to state that its request is the minimum necessary to perform its constitutional and statutory responsibilities.

### Fiscal Year 2012 Budget Request

The Judiciary's fiscal year 2012 budget request of $7.3 billion is summarized in the following pages. It represents the Judiciary's focused effort to balance the requirements of justice with the unprecedented fiscal realities facing Congress. A more detailed description of the Judiciary's fiscal year 2012 request can be found in *The Judiciary, Budget Estimates for Fiscal Year 2012, Congressional Submission*.

*James C. Duff*

James C. Duff
Director, Administrative Office
of the United States Courts
Secretary, Judicial Conference of the United States

## TABLE OF CONTENTS

|  | Page |
|---|---|
| Foreword | 1 |
| Overview of the Judiciary | 1 |
| Fiscal Year 2012 Budget Summary - Details of Request | 5 |
| **Summary Tables** | |
| Judiciary Appropriation Funding | 8 |
| Summary of FTE for FY 2010 - FY 2012 | 9 |
| FY 2012 Summary of Requested Changes | 10 |
| Outlays for FY 2010 - FY 2012 | 11 |
| **Fiscal Year 2012 Budget Request Summaries by Appropriation** | |
| Supreme Court of the United States | |
| Salaries and Expenses | 15 |
| Care of the Building and Grounds | 17 |
| United States Court of Appeals for the Federal Circuit | 19 |
| United States Court of International Trade | 21 |
| Courts of Appeals, District Courts, and Other Judicial Services | |
| Summary of FY 2011 Budget Request | 23 |
| FY 2012 Summary of Requested Changes | 24 |
| FY 2012 Appropriations Increases Pie Chart | 25 |
| FY 2012 Appropriations Pie Chart | 26 |
| Judiciary Workload Factors | 27 |
| Salaries and Expenses | 28 |
| Defender Services | 36 |
| Fees of Jurors and Commissioners | 40 |
| Court Security | 43 |
| Administrative Office of the United States Courts | 49 |
| Federal Judicial Center | 52 |
| Payments to Judiciary Trust Funds | 55 |
| United States Sentencing Commission | 57 |
| Appropriation Language Changes | 59 |
| General Provisions Changes | 59 |
| General Provisions | 60 |

iii

# Overview of The Judiciary

The organization of the judiciary, the district and circuit boundaries, the places of holding court, and the number of federal judges are established by laws passed by Congress and signed by the President. The number of federal judges in each district and in the courts of appeals is authorized by Congress on the basis of workload.

In addition to the adjudication of cases, other related functions, such as the provision of criminal defense services and the supervision of offenders, are prescribed by statute. The following sections provide a brief overview of the work of the courts and other related activities of the Judicial Branch.

## United States Supreme Court

The United States Supreme Court consists of nine justices, one of whom is appointed as Chief Justice of the United States. The Supreme Court is the final arbiter in the federal court system.

## United States Courts of Appeals

There are 13 courts of appeals and 179 authorized appellate court judgeships nationwide. Twelve of the courts of appeals have jurisdiction over cases within a regional area or "circuit." The twelve regional courts of appeals review cases from the United States district courts and the United States Tax Court, and orders and decisions from a number of federal administrative agencies.

**The United States Court of Appeals for the Federal Circuit** has exclusive national jurisdiction over a large number of diverse subject areas, including international trade, government contracts, patents, trademarks, certain money claims against the



### The Federal Judiciary

**United States Supreme Court**

**U.S. Courts of Appeals**

12 Regional Circuit Courts of Appeals
1 U.S. Court of Appeals for the Federal Circuit

**Trial Courts**

U.S. District Courts
U.S. Bankruptcy Courts
U.S. Court of International Trade
U.S. Court of Federal Claims

**Other Judiciary Entities/Programs**

Probation and Pretrial Services
Defender Services
Court Security
Fees of Jurors and Commissioners
Administrative Office of the U.S. Courts
Federal Judicial Center
Judiciary Trust Funds
United States Sentencing Commission

United States government, federal personnel, and veterans' benefits. Appeals to the court come from all 94 federal district courts, as well as the United States Court of Federal Claims, the United States Court of International Trade, and the United States Court of Appeals for Veterans' Claims.

**United States District Courts**

There are 94 district courts in the 50 states, the District of Columbia, the Commonwealth of Puerto Rico, and the territories of Guam, the U.S. Virgin Islands and the Northern Mariana Islands. The U.S. District Courts are the courts of general jurisdiction in the federal court system, and most federal cases are initially tried and decided in these courts. There are 678 authorized Article III district court judgeships nationwide.

The Federal Magistrates Act of 1968 created the office of magistrate judge to assist the district court judges. Magistrate judges are non-Article III judges appointed by the district judges, and they serve for a term of years rather than a lifetime appointment. Full-time magistrate judges serve a term of eight years and may be reappointed.

**United States Bankruptcy Courts**

The bankruptcy courts are separate units of the district courts. Federal courts have exclusive jurisdiction over bankruptcy cases. This means that a bankruptcy case cannot be filed in a state court. United States bankruptcy judges are non-Article III judges appointed by the courts of appeals for a term of years rather than a lifetime appointment. They serve for a term of 14 years and may be reappointed.

**United States Court of International Trade**

The Court of International Trade, with nine Article III judges, has exclusive nationwide jurisdiction of civil actions against the United States, its agencies and officers, and certain civil actions brought by the United States, arising out of import transactions and the administration and enforcement of the federal customs and international trade laws.

**United States Court of Federal Claims**

The Court of Federal Claims has nationwide jurisdiction over certain types of claims against the federal government. Its 16 judges are appointed for a term of 15 years by the President with the advice and consent of the Senate. Judges appointed to the Court of Federal Claims are authorized under Article I of the constitution and do not have the tenure and salary protections of Article III judges.

**Probation and Pretrial Services**

Federal probation and pretrial services officers protect the public through the investigation and supervision of defendants and offenders within the federal criminal justice system. A pretrial services officer supervises defendants awaiting trial who are released into our communities and provides a source of information upon which the court can determine conditions of release or detention while criminal cases are pending adjudication. In support of sentencing determinations, which require both uniformity of practice and attention to individual circumstances, probation officers provide the court with reliable information concerning the offender, the victim, and the offense committed, as well as an impartial application of the sentencing

guidelines. Probation officers supervise offenders sentenced to probation as well as offenders coming out of federal prison who are required to serve a term of supervised release.

**Defender Services**

The federal judiciary oversees and administers the federal defender and appointed counsel program, which provides legal representation and other services to persons financially unable to obtain counsel in criminal and related matters in federal court. The Sixth Amendment to the Constitution guarantees that "[i]n all criminal prosecutions the accused shall enjoy the right...to have the assistance of counsel for his defense." The Criminal Justice Act provides that courts shall appoint counsel from federal public and community defender organizations or from a panel of private attorneys ("panel attorneys") established by the court.

**Court Security**

The judiciary's Court Security appropriation funds protective guard services and security systems and equipment for United States courthouses and other facilities housing federal court operations. These services are contracted for and managed by the United States Marshals Service, with additional guard services provided by the Federal Protective Service.

**Fees of Jurors and Commissioners**

The judiciary receives funding to provide for the statutory fees and allowances of federal grand and petit jurors and for the compensation of land commissioners.

**Administrative Office of the U.S. Courts**

The Administrative Office of the U.S. Courts is the central support entity for the judicial branch. It has management oversight of the court security program, the probation and pretrial services program, and the defender services program. It supports the Judicial Conference of the United States in determining judiciary policies; develops new methods, systems, and programs for conducting the business of the federal courts efficiently and economically; develops and supports application of technology; collects and analyzes statistics on the business of the federal courts for accurate planning and decisions about resource needs; provides financial management services and personnel and payroll support; and conducts audits and reviews to ensure the continued quality and integrity of federal court operations.

**Federal Judicial Center**

The Federal Judicial Center is the judiciary's research and education agency. The Center undertakes research and evaluation of judicial operations and procedures for both the committees of the Judicial Conference and the courts themselves. It provides judges, court personnel, and others orientation and continuing education and training through seminars; curriculum units for in-court use; monographs and manuals; and audio, video, and interactive media programs.

280

## Payment to Judiciary Trust Funds

This appropriation finances annuity payments to retired bankruptcy judges and magistrate judges, U.S. Court of Federal Claims judges, and spouses and dependent children of deceased judicial officers.

## U.S. Sentencing Commission

The U.S. Sentencing Commission promulgates sentencing policies, practices, and guidelines for the federal criminal justice system. The Chair, three Vice Chairs, and three other voting commissioners are appointed by the President with the advice and consent of the Senate.

4

281

# Budget Summary - Details of Request

The judiciary's appropriation request for fiscal year 2012 totals $7,293,950,000 an increase of $299,318,000, or 4.3 percent over the fiscal year 2011 assumed appropriations. The fiscal year 2012 request provides for an additional 523 FTE to meet critical workload requirements, an increase of 1.5 percent over the 35,172 FTE funded in 2011.

*Adjustments to Base*

Of the $299.3 million requested increase, $257.8 million or 86.1 percent will provide for pay adjustments, inflation and other adjustments to base necessary to maintain current services.

Base adjustments include:

1.  An increase of $55.1 million (21.4 percent of the base adjustments) will provide for pay and benefit rate increases, including changes in health benefit premiums, changes in benefit costs for both judges and supporting personnel, and a wage rate adjustment for court security officers.

2.  An increase of $15.2 million (5.9 percent of base adjustments) will provide for the annualization of new Defender Services staff and court security officers expected to be hired in fiscal year 2011 and new court security officers in fiscal year 2012.

3.  An increase of $17.1 million (6.6 percent of base adjustments) is requested for the annualization of new space delivered in fiscal year 2011, the cost of new space

expected to be delivered in fiscal year 2012, and space related inflation.

4.  An increase of $27.6 million (10.7 percent of base adjustments) will provide for the cost of uncontrollable workload changes expected in the Defender Services account.

5.  An increase of $19.2 million (7.4 percent of base adjustments) will provide for inflationary increases in non-pay categories using the government wide inflation factor of 1.4 percent.

6.  An increase of $100 million (38.8 percent of base adjustments) is necessary to replace non-appropriated sources of funds used to support base requirements in fiscal year 2011 with direct appropriations. The judiciary will keep the Appropriations Subcommittees informed of any change in this estimate.

7.  An increase of $13.5 million (5.2 percent of base adjustments) is associated with increases in the number of senior judges and support staff.

8.  An increase of $13.4 million (5.2 percent of base adjustments) is requested for payments to the Judiciary Retirement Trust Funds. This is a mandatory appropriation.

9.  An increase of $6.8 million (2.6 percent of base adjustments) will provide for estimated increases in Federal Protective Service security charges.

5

282

Program increases include:

15. An increase of $22.2 million (53.5 percent of program enhancements) will provide for additional support staff and associated costs. This increase is for staffing adjustments to handle the most critical workload (264 FTE).

16. An increase of $13.9 million (33.5 percent of program enhancements) will provide for information technology enhancements.

17. An increase of $2.4 million (5.8 percent of program enhancements) will provide for 4 additional magistrate judges and associated staff (16 FTE) in districts with growing caseload.

18. An increase of $1.1 million (2.7 percent of program enhancements) will provide for necessary investments in court security, such as a national contract for vehicle barrier maintenance, a facial recognition systems pilot program, and a wireless broadcast systems pilot program.

19. An increase of $0.9 million (2.2 percent of program enhancements) will provide for twelve new police officers (9 FTE) and support expenses at the Supreme Court.

20. An increase of $0.7 million (1.7 percent of program enhancements) will provide for education and training program enhancements at the Federal Judicial Center.

10. An increase of $1.6 million (0.6 percent of base adjustments) is associated with an increase in the number of filled Article III judgeships.

11. An increase of $2.0 million (0.8 percent of base adjustments) will provide for base increases necessary to support, maintain, and continue investments in the judiciary's information technology program.

12. A net decrease of $7.7 million (-3.0 percent of base adjustments) is associated with adjustments below the fiscal year 2011 funded base for court security systems and equipment.

13. A decrease of $0.8 million (-0.3 percent of base adjustments) is associated with a projected net change in available jurors.

14. A net decrease of $5.2 million (-2.0 percent of base adjustments) is associated with non-recurring costs for expenses related to filled fiscal year 2011 judgeships combined with cost savings and reductions in the Supreme Court and Court Security accounts.

**Program Increases**

The remaining $41.5 million, or 13.9 percent, of the total increase is requested for program enhancements and workload-related needs.

21.    An increase of $0.3 million (0.7 percent of program enhancements) will provide for the start-up costs associated with one new defender organization.

The tables on pages 8 through 11, and the individual account summaries, provide detailed information on the judiciary's fiscal year 2012 request.

7

## Judiciary Appropriation Funding ($000)

| Appropriation Account | FY 2010 Enacted | | | FY 2011 Assumed Appropriation[2] | | | FY 2012 Request | | |
|---|---|---|---|---|---|---|---|---|---|
| | Mandatory[1] | Discretionary | Total | Mandatory[3] | Discretionary | Total | Mandatory | Discretionary | Total |
| **U.S. Supreme Court** | | | | | | | | | |
| Salaries & Expenses | $2,166 | $71,868 | $74,034 | $2,197 | $74,060 | $76,257 | $2,197 | $73,354 | $75,551 |
| Care of the Building and Grounds | $0 | $14,525 | $14,525 | $0 | $8,353 | $8,353 | $0 | $8,504 | $8,504 |
| **U.S. Court of Appeals for the Federal Circuit** | $2,491 | $30,069 | $32,560 | $2,502 | $31,623 | $34,125 | $2,513 | $32,626 | $35,139 |
| **U.S. Court of International Trade** | $1,715 | $19,635 | $21,350 | $1,851 | $20,331 | $22,182 | $1,718 | $21,173 | $22,891 |
| **Courts of Appeals, District Courts & Other Judicial Services** | | | | | | | | | |
| Salaries & Expenses - Direct | $340,000 | $4,671,018 | $5,011,018 | $332,565 | $4,709,603 | $5,042,168 | $327,707 | $4,908,459 | $5,236,166 |
| Supplemental Approp. (P.L. 111-230) | $0 | $10,000 | $10,000 | $0 | $0 | $0 | $0 | $0 | $0 |
| Vaccine Injury Trust Fund | $0 | $5,428 | $5,428 | $0 | $4,785 | $4,785 | $0 | $5,011 | $5,011 |
| Total, Salaries and Expenses | $340,000 | $4,686,446 | $5,026,446 | $332,565 | $4,714,388 | $5,046,953 | $327,707 | $4,913,470 | $5,241,177 |
| Defender Services | $0 | $977,748 | $977,748 | $0 | $1,044,072 | $1,044,072 | $0 | $1,098,745 | $1,098,745 |
| Fees of Jurors & Commissioners | $0 | $61,861 | $61,861 | $0 | $52,410 | $52,410 | $0 | $59,727 | $59,727 |
| Court Security | $0 | $452,607 | $452,607 | $0 | $488,436 | $488,436 | $0 | $513,058 | $513,058 |
| Subtotal, CADCOJS | $340,000 | $6,178,662 | $6,518,662 | $332,565 | $6,299,306 | $6,631,871 | $327,707 | $6,585,000 | $6,912,707 |
| **Administrative Office of the U.S. Courts** | $0 | $83,075 | $83,075 | $0 | $85,982 | $85,982 | $0 | $88,455 | $88,455 |
| **Federal Judicial Center** | $0 | $27,328 | $27,328 | $0 | $28,087 | $28,087 | $0 | $29,029 | $29,029 |
| **Judiciary Retirement Funds** | $82,374 | $0 | $82,374 | $90,361 | $0 | $90,361 | $103,768 | $0 | $103,768 |
| **U.S. Sentencing Commission** | $0 | $16,837 | $16,837 | $0 | $17,414 | $17,414 | $0 | $17,906 | $17,906 |
| *Direct* | $428,746 | $6,426,571 | $6,855,317 | $429,476 | $6,560,371 | $6,989,847 | $437,903 | $6,851,036 | $7,288,939 |
| *Supplemental Approp. (P.L. 111-230)* | $0 | $10,000 | $10,000 | $0 | $0 | $0 | $0 | $0 | $0 |
| *Vaccine Injury Trust Fund* | $0 | $5,428 | $5,428 | $0 | $4,785 | $4,785 | $0 | $5,011 | $5,011 |
| *Total* | $428,746 | $6,441,999 | $6,870,745 | $429,476 | $6,565,156 | $6,994,632 | $437,903 | $6,856,047 | $7,293,950 |

[1] For FY 2010, the enacted mandatory level was $428,746; actual mandatory spending was $408,779.
[2] The FY 2011 assumed appropriations level is based on the funding anomaly for the Judiciary included in the FY 2011 full-year continuing resolution (H.R. 3082) passed by the House of Representatives on December 8, 2010.
[3] For FY 2011, the requested mandatory level was $429,476; projected mandatory spending is $417,278.

285

The Judiciary
Summary of FTE

| Appropriation | FY 2010 Actual | FY 2011 Assumed | FY 2012 Request | Increase over FY 2011 |
|---|---|---|---|---|
| **Supreme Court** | **523** | **533** | **543** | **10** |
| *Salaries and Expenses* | *485* | *485* | *494* | *9* |
| *Building and Grounds* | *38* | *48* | *49* | *1* |
| **Court of Appeals for the Federal Circuit** | **142** | **157** | **158** | **1** |
| **Court of International Trade** | **77** | **80** | **80** | **0** |
| **Courts of Appeals, District Courts, and other Judicial Services** | **32,754** | **33,513** | **34,022** | **509** |
| *Salaries and Expenses* | *30,025* | *30,616* | *31,006* | *390* |
| *Defender Services* | *2,673* | *2,826* | *2,941* | *115* |
| *Fees of Jurors & Commissioners* | *0* | *0* | *0* | *0* |
| *Court Security* | *56* | *71* | *75* | *4* |
| **Administrative Office of the United States Courts** | **635** | **639** | **641** | **2** |
| **Federal Judicial Center** | **138** | **140** | **141** | **1** |
| **Judicial Retirement Funds** | **0** | **0** | **0** | **0** |
| **United States Sentencing Commission** | **110** | **110** | **110** | **0** |
| **Total, Judiciary[1]** | **34,379** | **35,172** | **35,695** | **523** |

[1] The Judiciary totals do not reflect reimbursable positions (279 in FY 2010; 284 in FY 2011; and 286 in FY 2012).

9

286

COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES

| FY 2012 Summary of Requested Changes | Supreme Court | | Federal Circuit | | International Trade | | Salaries and Expenses | | Defender Services | | Fees of Jurors and Commissioners | | Court Security | | Subtotal | | Administrative Office | | Fed. Judicial Center | | Judiciary Trust Funds | | Sentencing Commission | | Total Judiciary | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | FTE | ($000) | FTE | ($000) | FTE | ($000) | FTE | ($000) | FTE | ($000) | FTE | ($000) | FTE | ($000) | FTE | ($000) | FTE | ($000) | FTE | ($000) | ($000) | FTE | ($000) | FTE | ($000) |

The dense financial table on this page (rotated) could not be reliably transcribed cell-by-cell.

10

THE JUDICIARY

**Outlays - FY 2010 to FY 2012**
(Dollars in Thousands)

| Appropriation | FY 2010 | FY 2011 1/ | FY 2012 1/ | Outlay Spendout Rates | | |
|---|---|---|---|---|---|---|
| | | | | YR 1 | YR 2 | YR 3 |
| Supreme Court | | | | | | |
| Discretionary | 69,779 | 73,465 | 73,447 | 80% | 20% | 0% |
| Mandatory | 2,119 | 2,197 | 2,197 | 100% | 0% | 0% |
| **Total, Salaries and Expenses** | **71,898** | **75,662** | **75,644** | | | |
| Buildings and Grounds | 27,706 | 27,906 | 20,393 | 68% | 12% | 20% |
| Court of Appeals for the Federal Circuit | | | | | | |
| Discretionary | 28,262 | 35,864 | 32,065 | 80% | 20% | 0% |
| Mandatory | 2,491 | 2,502 | 2,513 | 100% | 0% | 0% |
| **Total, Court of Appeals for the Federal Circuit** | **30,753** | **38,366** | **34,578** | | | |
| Court of International Trade | | | | | | |
| Discretionary | 19,507 | 20,720 | 21,937 | 95% | 5% | 0% |
| Mandatory | 1,703 | 1,709 | 1,718 | 100% | 0% | 0% |
| **Total, Court of International Trade** | **21,210** | **22,429** | **23,655** | | | |
| Courts of Appeals, District Courts, and Other Judicial Services | | | | | | |
| Salaries and Expenses - Discretionary | 4,771,774 | 4,757,760 | 4,900,068 | 93% | 7% | 0% |
| Salaries and Expenses - Mandatory | 320,091 | 321,009 | 327,707 | 100% | 0% | 0% |
| **Total, Salaries and Expenses** | **5,091,865** | **5,078,769** | **5,227,775** | 97% | 3% | 0% |
| Defender Services | 977,169 | 1,056,800 | 1,097,200 | 99.5% | 0.5% | 0% |
| Fees of Jurors & Commissioners | 58,058 | 55,066 | 67,934 | 63.3% | 36.7% | 0% |
| Court Security | 452,448 | 460,000 | 503,691 | | | |
| **Total, Courts of Appeals, District Courts, and Other Judicial Services** | **6,579,540** | **6,650,635** | **6,896,600** | | | |
| Administrative Office of the United States Courts | 85,316 | 82,294 | 88,754 | 94% | 6% | 0% |
| Federal Judicial Center | 27,435 | 28,209 | 29,210 | 95% | 5% | 0% |
| Judicial Retirement Funds (MANDATORY) | 82,374 | 90,361 | 103,768 | 100% | 0% | 0% |
| United States Sentencing Commission | 16,833 | 17,333 | 19,649 | 85% | 15% | 0% |
| Subtotal, Discretionary | 6,534,287 | 6,615,417 | 6,854,348 | | | |
| Subtotal, Mandatory | 408,779 | 417,778 | 437,903 | | | |
| **Total, Judiciary** | **6,943,066** | **7,033,195** | **7,292,251** | | | |

1/ Mandatory amounts for fiscal years 2011 and 2012 reflect planned outlay levels.

11

288

# Fiscal Year 2012 Request

## Summary by Appropriation

13

289

## U.S. Supreme Court
### Salaries and Expenses

| FY 2012 Request U.S. Supreme Court, Salaries and Expenses | FTE | ($000) |
|---|---|---|
| **FY 2011 Assumed Appropriation** | 485 | 76,257 |
| **Adjustments to Base** | | (1,604) |
| **Program Increases:** | | |
| Twelve New Police Officer Positions | 9 | 658 |
| Support Expenses for New Police Officers | | 240 |
| **FY 2012 Appropriation** | 494 | $75,551 |

### Budget Summary

The Supreme Court requests $75.6 million for its Salaries and Expenses account in fiscal year 2012, a 0.9 percent decrease from the fiscal year 2011 assumed appropriation.

### Adjustments to Base

This request includes pay and benefits increases to maintain the fiscal year 2011 current services level and costs for communications, service agreements, and supplies. In addition, the request includes a decrease of $3.3 million for possible savings as a result of a resource sharing initiative with the Department of Interior's National Business Center (NBC).

### Program Increases

1. *Police Officers Positions: $658,000*                                    *FTE 9*

   The Court is requesting $658,000 for twelve new police officer positions (9 FTE) funded for nine months. These additional police officers will be required to staff fully the six new posts that will be established when the entrances and driveways are opened due to the completion of the Court's modernization project, and to staff the new command center which is operational 24 hours a day, 7 days a week. This is a re-request from fiscal year 2011.

2. *Support Expenses for New Police Officers: $240,000*

   The Court is requesting $240,000 to cover training, supplies, and equipment costs related to the 12 additional police officer positions. This is a re-request from fiscal year 2011.

15

**U.S. Supreme Court - Salaries and Expenses**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2010 Actual | FY 2011 Assumed | FY 2012 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 52,076 | 54,556 | 56,547 | 1,991 |
| Rent, Communications and Utilities | 856 | 915 | 929 | 14 |
| Travel | 423 | 483 | 499 | 16 |
| Other | 18,405 | 20,303 | 17,576 | (2,727) |
| **Total Obligations** | **71,760** | **76,257** | **75,551** | **(706)** |
| Financing Adjustment | 2,274 | 0 | 0 | 0 |
| **Available Appropriation** | **74,034** | **76,257** | **75,551** | **(706)** |

16

291

# U.S. Supreme Court
## Care of the Building and Grounds

### FY 2012 Request

**U.S. Supreme Court, Care of the Building and Grounds**

| | FTE | ($000) |
|---|---|---|
| **FY 2011 Assumed Appropriation** | 48 | 8,353 |
| **Adjustments to Base** | | 66 |
| **Program Increases:** | | |
| Maintenance mechanic supervisor | 0.5 | 48 |
| Building services coordinator | 0.5 | 37 |
| **FY 2012 Appropriation** | 49 | **$8,504** |

### Budget Summary

The Supreme Court requests $8.5 million for its Care of the Building and Grounds account in fiscal year 2012, a 1.8 percent increase over the fiscal year 2011 assumed appropriation. The fiscal year 2012 request includes an increase of 1 FTE above the fiscal year 2011 level.

### Adjustments to Base

The Supreme Court, Care of Building and Grounds, fiscal year 2012 budget request includes an increase of $66,000 in adjustments to base for standard pay and other inflationary adjustments.

### Program Increases

1. *Maintenance Mechanic Supervisor Position:* *FTE  0.5*
   *$48,000*

   The Court requests $48,000 for a maintenance mechanic supervisor position. This position is needed to provide supervision of a newly established evening shift in support of additional and significant preventative maintenance services for all dynamic equipment in the pipefitting, HVAC, and electrical trade disciplines. This is a re-request from fiscal year 2011.

2. *Building Service Coordinator Position:* *FTE  0.5*
   *$37,000*

   The Court requests $37,000 for a building services coordinator position. This position is needed to support the Facilities Service Center. This is a re-request from fiscal year 2011.

17

292

| | U.S. Supreme Court - Care of the Building and Grounds | | | |
| --- | --- | --- | --- | --- |
| | Comparative Summary of Obligations by Category | | | |
| | ($000) | | | |
| Category | FY 2010 Actual | FY 2011 Assumed | FY 2012 Request | Requested Increase/Decrease |
| Compensation and Benefits | 4,325 | 4,425 | 4,451 | 26 |
| Rent, Communications and Utilities | 1,601 | 1,650 | 1,750 | 100 |
| Other | 11,045 | 10,644 | 11,428 | 784 |
| **Total Obligations** | **16,971** | **16,719** | **17,629** | **910** |
| Financing Adjustment | (2,446) | (8,366) | (9,125) | (759) |
| **Available Appropriation** | **14,525** | **8,353** | **8,504** | **151** |

18

293

# United States Court of Appeals for the Federal Circuit

**FY 2012 Request**
**Court of Appeals for the Federal Circuit**

|  | FTE | ($000) |
|---|---|---|
| FY 2011 Assumed Appropriation | 157 | $34,125 |
| Adjustments to Base | 1 | 1,014 |
| FY 2012 Appropriation | 158 | $35,139 |

## Budget Summary

The Court of Appeals for the Federal Circuit requests $35.1 million in fiscal year 2012, a 3.0 percent increase over the fiscal year 2011 assumed appropriation. This request continues the Court's efforts to keep up with its varied and growing subject-matter jurisdiction.

## Adjustments to Base

The Court's adjustments to base for fiscal year 2012 total $1.0 million to provide for standard pay, other inflationary adjustments, and rental costs associated with GSA space.

19

294

| Category | FY 2010 Actual | FY 2011 Assumed | FY 2012 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| **U.S. Court of Appeals for the Federal Circuit** <br> **Comparative Summary of Obligations by Category** <br> **($000)** | | | | |
| Compensation and Benefits | 17,845 | 20,632 | 20,984 | 352 |
| Rent, Communications and Utilities | 5,392 | 7,019 | 7,614 | 595 |
| Travel | 171 | 175 | 180 | 5 |
| Other | 7,815 | 6,979 | 6,843 | (136) |
| **Total Obligations** | **31,222** | **34,805** | **35,621** | **816** |
| Financing Adjustment | 1,338 | (680) | (482) | 198 |
| **Available Appropriation** | **32,560** | **34,125** | **35,139** | **1,014** |

20

# United States Court of International Trade

| FY 2012 Request<br>U.S. Court of International Trade | | |
|---|---|---|
| | **FTE** | **($000)** |
| **FY 2011 Assumed Appropriation** | 80 | $22,182 |
| **Adjustments to Base** | | 709 |
| **FY 2012 Appropriation** | 80 | $22,891 |

## Budget Summary

The Court of International Trade requests $22.9 million in fiscal year 2012, a 3.2 percent increase over the fiscal year 2011 assumed appropriation.

## Adjustments to Base

The Court's adjustments to base for fiscal year 2012 total $0.7 million for standard pay and other inflationary adjustments. The Court requests no program increases.

21

296

| | | U.S. Court of International Trade<br>Comparative Summary of Obligations by Category<br>($000) | | | |
|---|---|---|---|---|---|
| Category | FY 2010<br>Actual | FY 2011<br>Assumed | FY 2012<br>Request | | Requested<br>Increase/Decrease |
| Compensation and<br>Benefits | 9,255 | 10,062 | 10,258 | | 196 |
| Rent, Communications and<br>Utilities | 9,144 | 9,124 | 9,128 | | 4 |
| Travel | 129 | 155 | 158 | | 3 |
| Other | 2,885 | 3,340 | 3,638 | | 298 |
| **Total Obligations** | **21,413** | **22,681** | **23,182** | | **501** |
| Financing Adjustment | (63) | (499) | (291) | | 208 |
| **Available Appropriation** | **21,350** | **22,182** | **22,891** | | **709** |

22

# COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES

## Summary of the Fiscal Year 2012 Budget Request

The *Courts of Appeals, District Courts, and Other Judicial Services* accounts fund most of the day-to-day operations and activities of the federal courts. The four accounts under this heading include:

♦ **Salaries and Expenses**, which funds the operating costs of appellate, district and bankruptcy courts, and probation and pretrial services offices;

♦ **Defender Services**, which funds the necessary expenses to provide defense representation under the Criminal Justice Act (CJA) for persons financially unable to obtain defense counsel;

♦ **Fees of Jurors and Commissioners**, which funds the fees and allowances of grand and petit jurors, and the compensation of jury and land commissioners; and

♦ **Court Security**, which provides for the necessary expenses to provide protective guard services and security equipment for judiciary facilities.

### The Fiscal Year 2012 Budget Request

The Judicial Conference requests $6,912.7 million in appropriations in fiscal year 2012 for these four accounts, an increase of $280.8 (4.2 percent) over fiscal year 2011 assumed appropriations of $6,631.9 million. The following table details the fiscal year 2011 assumed appropriations and fiscal year 2012 requested appropriations levels for the four accounts.

The $280.8 million increase in appropriations includes funding for 509 additional FTE, and is comprised of standard adjustments to base totaling $241.3 million and 232 FTE, and program increases totaling $39.5 million and 277 FTE. The table on page 24 summarizes the requested changes for each account.

Appropriations for the *Courts of Appeals, District Courts, and Other Judicial Services*

| ($000) | FY 2011 Assumed Appropriation | FY 2012 Request | Increase over FY 2011 | % Change |
|---|---|---|---|---|
| Salaries and Expenses 1/ | $5,046,953 | $5,241,177 | $ 194,224 | 3.8% |
| Defender Services | $1,044,072 | $1,098,745 | $ 54,673 | 5.2% |
| Fees of Jurors | $52,410 | $59,727 | $ 7,317 | 14.0% |
| Court Security | $488,436 | $513,058 | $ 24,622 | 5.0% |
| **Total** | **$6,631,871** | **$6,912,707** | **$ 280,836** | **4.2%** |

1/ Salaries and Expenses includes funds from the Vaccine Injury Trust Fund.

23

**FY 2012 Summary of Requested Changes**

**COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES**

| | Salaries and Expenses | | Defender Services | | Fees of Jurors and Commissioners | Court Security | | Total Court of Appeals, District Courts, and Other Judicial Services [1] | |
|---|---|---|---|---|---|---|---|---|---|
| | FTE | ($000) | FTE | ($000) | ($000) | FTE | ($000) | FTE | ($000) |
| FY 2011 Assumed Appropriation | 30,616 | 5,042,168 | 2,826 | 1,044,072 | 52,410 | 71 | 488,436 | 33,513 | 6,627,086 |
| FY 2011 Vaccine Injury Trust Fund | | 4,785 | | | | | | | 4,785 |
| FY 2011 Available Appropriation | 30,616 | 5,046,953 | 2,826 | 1,044,072 | 52,410 | 71 | 488,436 | 33,513 | 6,631,871 |
| **FY 2012 Adjustment to Base** | | | | | | | | | |
| **Judges** | | | | | | | | | |
| Pay and benefit cost adjustments | | 2,346 | | | | | | | 2,346 |
| Additional senior judges | 104 | 13,372 | | | | | | 104 | 13,372 |
| Increase in average number of filled Article III judgeships | 13 | 1,620 | | | | | | 13 | 1,620 |
| Non-recurring costs of new 2011 judges | | (1,031) | | | | | | | (1,031) |
| **Court Personnel** | | | | | | | | | |
| Pay and benefit cost adjustments | | 26,711 | | 3,459 | | | (1,335) | | 28,835 |
| **Other Changes** | | | | | | | | | |
| Financing adj. necessary to maintain current services | | 80,835 | | 10,784 | 7,959 | | | | 99,578 |
| Inflation (non-space-related) | | 14,951 | | 2,555 | 115 | | 246 | | 17,867 |
| Vaccine Injury Trust Fund adjustment | | 226 | | | | | | | 226 |
| Space related costs (includes inflation for space rental rates) | | 15,635 | | 765 | | | 91 | | 16,491 |
| Information technology adjustments for ongoing operations | | 1,987 | | | | | | | 1,987 |
| Annualization of new FY 2011 positions | | | 54 | 9,252 | | | | 54 | 9,252 |
| Defender Services workload increase | | | 61 | 27,558 | | | | 61 | 27,558 |
| Change to available jurors | | | | | (757) | | | | (757) |
| FFS security service charges | | | | | | | 6,745 | | 6,745 |
| FY 2012 court security officers wage adjustments | | | | | | | 19,918 | | 19,918 |
| Annualization of new FY 2011 court security officers (30) | | | | | | | 1,245 | | 1,245 |
| Additional court security officers in FY 2012 (50) | | | | | | | 4,730 | | 4,730 |
| Adjustments to base for security systems and equipment | | | | | | | (7,115) | | (7,115) |
| Adjustments to base for program Administration (cost savings) | | | | | | | (779) | | (779) |
| **Subtotal, FY 2012 Adjustments to Base** | 117 | 156,652 | 115 | 54,373 | 7,317 | | 22,966 | 232 | 241,308 |
| **FY 2012 Adjusted Base** | 30,733 | 5,203,605 | 2,941 | 1,098,445 | 59,727 | 71 | 511,402 | 33,745 | 6,873,179 |
| **FY 2012 Program Increases** | | | | | | | | | |
| **Judges** | | | | | | | | | |
| Magistrate judges and staff | 16 | 2,160 | | | | | | 16 | 2,160 |
| **Court Personnel and Programs** | | | | | | | | | |
| New court support staff for workload increases | 257 | 21,536 | | | | | | 257 | 21,536 |
| Information technology adjustments | | 13,876 | | | | | | | 13,876 |
| New federal defender organization | | | | 300 | | | | | 300 |
| National contract for vehicle barrier maintenance (Re-Requested from FY 2010) | | | | | | | 728 | | 728 |
| Facial recognition systems pilot (Re-Requested from FY 2011) | | | | | | | 200 | | 200 |
| Wireless Broadcast System Pilot | | | | | | | 194 | | 194 |
| Seven new judiciary-funded USMS positions (funded for 6 months) | | | | | | 4 | 534 | 4 | 534 |
| **Subtotal, FY 2012 Program Increases** | 273 | 37,572 | | 300 | | 4 | 1,656 | 277 | 39,528 |
| **Total increases requested, FY 2012** | 390 | 194,224 | 115 | 54,673 | 7,317 | 4 | 24,622 | 509 | 280,836 |
| **FY 2012 Appropriation Request** | 31,006 | 5,241,177 | 2,941 | 1,098,745 | 59,727 | 75 | 513,058 | 34,022 | 6,912,707 |

[1] The Court of Appeals, District Courts, and Other Judicial Services FTE totals do not reflect reimbursable positions (26 in FY 2011, and 26 in FY 2012).



300



26

301

## Judiciary Workload Factors

| WORKLOAD FACTOR | 12 months ending June 30, 2005 Actual | 12 months ending June 30, 2006 Actual | 12 months ending June 30, 2007 Actual | 12 months ending June 30, 2008 Actual | 12 months ending June 30, 2009 Actual | 12 months ending June 30, 2010 Actual | 12 months ending June 30, 2011 Projected |
|---|---|---|---|---|---|---|---|
| Criminal Filings | 69,876 | 67,872 | 66,674 | 70,024 | 75,324 | 78,213 | 76,500 |
| Year-to-Year Change: | 0% | -3% | -2% | 5% | 8% | 4% | -2% |
| Criminal Defendants Filed | 92,356 | 89,956 | 88,245 | 91,782 | 96,718 | 100,031 | 100,100 |
| Year-to-Year Change: | 0% | -3% | -2% | 4% | 5% | 3% | 0% |
| Probation: Persons Under Supervision | 113,008 | 114,281 | 115,930 | 120,051 | 123,839 | 126,642 | 131,000 |
| Year-to-Year Change: | 0% | 1% | 1% | 4% | 3% | 2% | 3% |
| Pretrial Services: Cases Activated | 98,946 | 99,508 | 95,955 | 98,862 | 103,604 | 110,671 | 113,900 |
| Year-to-Year Change: | 0% | 1% | -4% | 3% | 5% | 7% | 3% |
| Bankruptcy Filings | 1,637,254 | 1,484,570 | 751,056 | 967,831 | 1,306,315 | 1,572,597 | 1,592,800 |
| Year-to-Year Change: | 0% | -9% | -49% | 29% | 35% | 20% | 1% |
| Appellate Filings | 67,999 | 68,313 | 58,809 | 59,406 | 59,399 | 56,097 | 55,000 |
| Year-to-Year Change: | 0% | 0% | -14% | 1% | 0% | -6% | -2% |
| Civil Filings | 282,758 | 244,343 | 272,067 | 256,354 | 257,204 | 285,215 | 291,500 |
| Year-to-Year Change: | 0% | -14% | 11% | -6% | 0% | 11% | 2% |

27

302

# Courts of Appeals, District Courts and Other Judicial Services
## Salaries and Expense

| FY 2012 Request<br>Courts of Appeals, District Courts and other Judicial Services, Salaries and Expenses | FTE | ($000) |
|---|---|---|
| FY 2011 Assumed Appropriation | 30,616 | $5,042,168 |
| Vaccine Injury Trust Fund | | 4,785 |
| FY 2011 Available Appropriation | 30,616 | 5,046,953 |
| Adjustments to Base | 117 | 156,652 |
| **Program Increases:** | | |
| New Magistrate Judges and staff | 16 | 2,360 |
| Court Support Staffing | | |
| FY 2012 workload requirements | 257 | 21,336 |
| Information technology infrastructure enhancements | | 13,876 |
| **FY 2012 Appropriation** | **31,006** | **$5,241,177** |
| Vaccine Injury Trust Fund | | ($5,011) |
| **FY 2012 Direct Appropriation** | **31,006** | **$5,236,166** |

## Budget Summary

The Judicial Conference requests $5,241,177,000 for the Salaries and Expenses account in fiscal year 2012, including $5,011,000 from the Vaccine Injury Trust Fund. This is a 3.8 percent increase over the fiscal year 2011 estimated appropriation of $5,046,953,000. The Salaries and Expenses appropriation makes up 72 percent of the judiciary's total appropriations request, and 76 percent of the *Courts of Appeals, District Courts and Other Judicial Services* request. This account provides for the operating expenses of the 12 regional circuit courts of appeals, district courts, bankruptcy courts, and probation and pretrial services offices. This account utilizes other funding sources, including current year fee collections and prior year carryforward balances, to offset the need for appropriated funds. The judiciary projects that these sources of non-appropriated funds will total $414.7 million in fiscal year 2012, $80.8 million below the fiscal year 2011 estimated financial plan level of $495.5 million.

## Adjustments to Base

The requested increase for the Salaries and Expenses appropriation includes $156.7 million for standard pay and other inflationary increases, and other adjustments that will allow the courts to maintain a fiscal year 2011 service level in fiscal year 2012. In broad categories, these increases include:

303

**1. Benefit cost adjustment for judges:  $2.3 million**

An increase of $2.3 million will provide for expected changes in benefit rates for judges.

**2. Increase in the number of senior judges:
FTE 104
$13.4 million**

An increase of $13.4 million will provide for an additional 24 senior judges and 80 associated staff anticipated in fiscal year 2012.

**3. Increase in average number of filled Article III judgeships:
FTE 13
$1.6 million**

An increase of $1.6 million will provide for an additional 2 Article III judgeships and 11 associated staff anticipated in fiscal year 2012.

**4. Non-recurring costs associated with new fiscal year 2011 judges (Article III and magistrate judges): ($1.0 million)**

A decrease of $1.0 million is requested for non-recurring, one-time costs associated with new judges in fiscal year 2011.

**5. Pay and benefit adjustments for court personnel:
$26.7 million**

An increase of $26.7 million will provide for within-grade increases, changes in benefit rates, and one less compensable day.

**6. Funds necessary to maintain fiscal year 2011 service levels due to an anticipated decline in non-appropriated funds:
$80.8 million**

The fiscal year 2011 estimated financial plan assumes that current year fee collections and prior-year carryforward balances from fiscal year 2011 will total $495.5 million. The fiscal year 2011 request estimates that these non-appropriated sources of funds used to help finance court operations will total $414.7 million, a net decrease of $80.8 million from fiscal year 2011 assumed levels. The judiciary requests direct appropriated funds for fiscal year 2012 to replace these non-appropriated funds in order to maintain the same level of service as provided in fiscal year 2011.

**7. Non-pay inflationary and contractual increases:
$15.0 million**

An increase of $15.0 million is requested for a 1.4 percent general inflationary increase and other contractual increases.

**8. Vaccine Injury Compensation Trust Fund: $0.2 million**

The fiscal year 2012 level reflects an increase of $0.2 million for standard pay and non-pay inflationary adjustments.

**9. GSA space rental and related expenses:  $15.6 million**

The judiciary requests a net increase of $15.6 million in fiscal year 2012 for General Services Administration (GSA) rent and related services associated with (a) annualizing new space

29

expected to be occupied during fiscal year 2011 (+$8.7 million), (b) new space projected to be delivered by GSA in fiscal year 2012 offset by a reduction in GSA rent set by the Budget Committee of the Judicial Conference based on historical slippage of occupancy dates (+$3.1 million), (c) inflationary increase for GSA rent costs (+$5.8 million), (d) reduction in tenant improvement estimates for non prospectus projects (-$3.6 million), and (e) other activities associated with space occupied by the courts (+$1.6 million).

**10. Information technology program: $2.0 million**

The Judiciary Information Technology Fund will require an additional $2.0 million in deposits in fiscal year 2012 to operate and maintain its information technology infrastructure, products, projects, and services which are essential to the judicial process and the operations of the courts.

### Program Increases

The request includes $37.6 million for program enhancements. These increases include:

**11. New magistrate judges:**
**$2.4 million**                                         **FTE 16**

An increase of $2.4 million will fund 4 new magistrate judges (4 FTE) in fiscal year 2012 to assist in districts with heavy caseloads. This request funds the costs of the new judges and their associated support staff (12 FTE) in Indiana (Indianapolis), Minnesota (Minneapolis), California (Santa Ana or Riverside), and Nevada (Las Vegas).

**12. Fiscal Year 2012 workload requirements:**
**$21.3 million**                                         **FTE 257**

Based on changes in projected caseload, the judiciary will require $21.1 million for an additional 514 court support staff positions (257 FTEs) in fiscal year 2012 for appellate, bankruptcy, district clerks' and probation and pretrial services offices.

**13. Information and technology program: $13.9 million**

The judiciary requests an increase of $13.9 million to improve financial and project management systems, modernize the judiciary's intranet capabilities and continue implementation of a multi-year effort to replace the judiciary's telecommunications infrastructure. The table on page 35 summarizes the information and technology program requirements.

U.S. Courts of Appeals, District Courts and Other Judicial Services, Salaries and Expenses
Comparative Summary of Obligations by Category
($000)

| Category | FY 2010 Actual | FY 2011 Assumed | FY 2012 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 3,440,459 | 3,585,520 | 3,659,015 | 73,495 |
| Rent, Communications and Utilities | 1,097,115 | 1,120,174 | 1,142,951 | 22,777 |
| Travel | 64,879 | 67,078 | 68,450 | 1,372 |
| Other | 708,157 | 769,681 | 785,426 | 15,745 |
| **Total Obligations** | **5,310,610** | **5,542,453** | **5,655,842** | **113,389** |
| Financing Adjustment | (299,592) | (500,285) | (419,676) | 80,609 |
| **Available Appropriation (Direct)** | **5,011,018** | **5,042,168** | **5,236,166** | **193,998** |
| Vaccine Injury Trust Fund | 5,428 | 4,785 | 5,011 | 226 |
| **Total Available Appropriation 1/** | **5,016,446** | **5,046,953** | **5,241,177** | **194,224** |

1/ FY 2010 appropriation excludes $10.0 million in the Salaries and Expenses total in emergency appropriations enacted under
Public Law 111-230.

31

306



FY 2012 Budget Request
Salaries and Expenses Account by Category
(Obligations)

Judges & Chambers Staff
Salaries & Benefits
22%

Court Support Personnel
Benefits
11%

Rent
17%

Operations and
Maintenance
10%

Information Technology
7%

Court Support Personnel
Salaries
33%

32

**Explanation of Other Funding Sources**

In addition to appropriated funds, each year the judiciary uses other non-appropriated funds to offset its appropriation requirement. Fee collections, primarily from court filing fees, comprise the majority of these sources of funds. These fees are used to offset expenses within the Salaries and Expenses account.

*"Unencumbered" Funds*

In addition to fee collections, in certain instances the judiciary may carry forward funds from one year to the next. These carryforward funds are considered "unencumbered" when they are generated by savings in the financial plan in base areas or where budgeted costs did not materialize. These savings are usually unforeseen and uncontrollable by the judiciary. For example, the judiciary does not control the confirmation rate of Article III judges. The judiciary makes its best estimate, based on historical confirmation rates, as to how many judges will be confirmed in the upcoming year. When confirmations fall below historical estimates, the funds budgeted for these judgeships are not obligated. New space delivery is another area that can produce savings. The judiciary budgets for rent costs based on projected delivery dates provided by the General Services Administration. If delivery of the space by GSA is delayed, the previously budgeted rent costs become unencumbered.

A similar situation exists within the Judiciary Information Technology Fund. The Salaries and Expenses account must, by statue, procure its information technology needs, including hardware and software as well as system development requirements, from this fund. The fund is financed by deposits from the Salaries and Expenses account and, once deposited, the funds remain available without fiscal year limitation. It is common for savings in the Judiciary Information Technology Fund financial plan to occur. Information technology costs often are difficult to predict with precision, and when costs come in below projections,

savings materialize. Savings in the plan are carried forward in the fund and offset the required deposit in the following year. The judiciary uses these carryforward funds to offset the following year's appropriation requirements.

Recognizing that savings in the financial plan tend to occur each year, but at unpredictable levels, the judiciary has tried to estimate the level of unencumbered funds that will be available to offset fiscal year 2012 requirements. As the table on page 34 indicates, the judiciary has estimated that unencumbered funds will be $414.7 million in fiscal year 2012, a net decrease of $80.8 million from the $495.5 million in the fiscal year 2011 estimated financial plan to help finance court operations. The judiciary requests appropriated funds for fiscal year 2012 to replace these non-appropriated funds in order to maintain the same level of services provided in fiscal year 2011. Because these funds are used as a general offset to judiciary requirements, the difference in their availability from one fiscal year to the next affects the judiciary's appropriation requirement. If this loss in non-appropriated funds is not offset by a like amount of appropriated funds, it will result in a reduction in resources needed to fund base requirements. Due to the unpredictable nature of these funds, the judiciary will keep Congress informed throughout the appropriations cycle as to the current level of anticipated unencumbered non-appropriated funds and adjust its request for appropriated funds accordingly.

33

308

Sources of Non-Appropriated Funds in Salaries and Expenses

| ($000) | FY 2011 Plan | FY 2012 Request | Difference |
|---|---|---|---|
| Salaries and Expenses | | | |
| *Fee Collections* | *290,500* | *289,665* | *(835)* |
| *Other S&E and JITF Carryforward* | *205,000* | *125,000* | *(80,000)* |
| **Total** | **495,500** | **414,665** | **(80,835)** |

"Encumbered" Funds

Carry forward funds are considered "encumbered" when both the funds and the associated need for the funds shift to the next year. The judiciary has no-year authority for specific purposes. In some cases, as was described above, this authority is used to carry forward savings where planned expenses did not materialize. This authority is also used when planned expenses are delayed, or slipped, from one year to the next. In fiscal year 2011, $63.1 million will be slipped into the fiscal year. These "slippages" occur primarily in two areas: information technology investments and costs associated with new space delivery. In the Judiciary Information Technology Fund, one of the principle purposes for the creation of this fund was the recognition that the development of major information technology systems occurs over a period of years and is not efficiently driven by fiscal year limitations. Even so, the judiciary only budgets for information technology costs that it reasonably expects to complete in a given year. Because funds assigned to information technology investments can carry forward

to the following year, this ensures that, for individual investments, funds to complete a phase will be available if not obligated by the end of the fiscal year. This flexibility allows projects to stay on or under budget by avoiding having to make costly contractual or other obligations based on the calendar rather than project readiness.

Similarly, the judiciary also receives a limited amount of no-year authority in its regular appropriation for space alterations and furniture associated with new space delivery. Because space alteration and building projects are also subject to unpredictable delays, the ability of the judiciary to carry forward funds associated with these specific projects allows the judiciary to budget for major space renovation costs and other non-rental costs associated with the delivery of a new courthouse and then carry forward these project specific funds if the project is delayed.

These "encumbered" funds, while adding to the judiciary's projected obligations in a given fiscal year, do not impact the judiciary's appropriations requirement. Even if the total amount fluctuates from year to year, the funds associated with the specific project are brought forward from the prior year to fund the project, resulting in no additional appropriation requirements.

34

Table 13.2 Salaries and Expenses Obligations – Judiciary Information Technology Fund Program Requirements ($000)

| IT Program Component | A FY 2011 Projected Obligations | B FY 2010 Slipped Requirements | FY 2011 | | | FY 2012 | Change: FY 2011 Adj. Base Requirements to FY 2012 Current Services Requirements (Excl. Prog. Increases) | Change: FY 2011 Adj. Base Requirements to FY 2012 Requirements (Program Increases only) |
|---|---|---|---|---|---|---|---|---|
| | | | C FY 2011 Base Requirements (col a - col b) | D FY 2011 Requirements Funded in FY 2010 | E FY 2011 Adjusted Base (col c + col d) | FY 2012 Total Requirements | | |
| Court Administration Systems | 3,007 | 0 | 3,007 | 0 | 3,007 | 3,528 | 521 | 0 |
| Judicial Statistics and Reporting Systems | 4,433 | (730) | 3,704 | 0 | 3,704 | 4,048 | 344 | 0 |
| Courtroom Technology Program | 12,777 | (1,189) | 11,588 | 0 | 11,588 | 4,519 | (7,069) | 0 |
| Court Allotments | 100,194 | (1,244) | 98,950 | 0 | 98,950 | 100,336 | 1,386 | 0 |
| Probation and Pretrial Services | 14,908 | (1,046) | 13,862 | 4,036 | 17,898 | 19,847 | 1,949 | 0 |
| Financial Systems | 33,136 | (2,889) | 30,247 | 0 | 30,247 | 32,994 | (1,378) | 4,125 |
| Human Resources Systems | 22,128 | (351) | 21,777 | 0 | 21,777 | 22,874 | 1,097 | 0 |
| Management Information Systems | 15,295 | (1,470) | 13,825 | 0 | 13,825 | 16,432 | 1,070 | 1,537 |
| Infrastructure and Collaboration Tools | 73,509 | (3,553) | 69,956 | 0 | 69,956 | 75,676 | 770 | 4,950 |
| Telecommunications Program | 83,728 | (7,722) | 76,006 | 2,571 | 78,577 | 83,821 | 1,980 | 3,264 |
| Court Support Reimbursable Program | 31,139 | 0 | 31,139 | 0 | 31,139 | 32,260 | 1,121 | 0 |
| TOTAL, SALARIES AND EXPENSES | 394,255 | (20,194) | 374,061 | 6,607 | 380,668 | 396,335 | 1,791 | 13,876 |

310

## Courts of Appeals, District Courts and Other Judicial Services
### Defender Services

| Courts of Appeals, District Courts and Other Judicial Services, Defender Services | | |
|---|---|---|
| **FY 2012 Request** | | |
| | **FTE** | **($000)** |
| FY 2011 Assumed Appropriation | 2,826 | $1,044,072 |
| Adjustments to Base | 115 | 54,373 |
| Program Increases: | | |
| Start-up costs for one new federal defender organization | | 300 |
| FY 2012 Appropriation | 2,941 | $1,098,745 |

### Budget Summary

The Judicial Conference requests $1,098.7 million for Defender Services in fiscal year 2012, a 5.2 percent increase over the fiscal year 2011 assumed appropriation. This appropriation is approximately 15.0 percent of the judiciary's total fiscal year 2012 budget request. This funding supports the provision of constitutionally-mandated legal representation and other services to persons financially unable to obtain counsel in criminal and related matters in federal court. The Criminal Justice Act (CJA) provides that courts shall appoint counsel from federal public and community defender organizations or from a panel of private attorneys established by the court. Costs associated with this account are driven by the number and type of prosecutions brought by United States Attorneys.

### Adjustments to Base

An increase of $54.4 million is requested for pay and inflationary adjustments that will allow the judiciary to meet its constitutional obligation to provide defense counsel to all eligible persons in fiscal year 2012. In broad categories, these increases include:

1. *Pay and benefit adjustments, Federal Defender Organizations, and Program Administration: $3.5 million*

An increase of $3.5 million will provide for promotions and within-grade increases, changes in benefit rates, and one less compensable day in fiscal year 2012.

2. *Annualization of new fiscal year 2011 staff:*                    **FTE   54**
   *$9.3 million*

An increase of $9.3 million (54 FTE) provides the remaining six months funding in fiscal year 2012 to annualize 108 positions expected to be hired in fiscal year 2011.

3. *Increases in caseload, case complexity and change in*
   *caseload mix: $27.5 million*                    **FTE   61**

An increase of $27.5 million (61 FTE) is requested for additional and more costly representations in fiscal year 2012. The additional Federal Defender Organization staff will provide for the net increase in representations and increased complexity associated with the 206,200 non-capital

36

representations projected in fiscal year 2012, and estimated costs for capital representations.

**4. Funds necessary to maintain fiscal year 2011 service levels due to an anticipated decline in non-appropriated funds: $10.8 million**

In fiscal year 2011, $20.8 million in balances from fiscal year 2010 was available to finance fiscal year 2011 requirements. In fiscal year 2012, absent unforeseen expenses that might arise, the judiciary expects $10.0 million in non-appropriated funds to be available, a decrease of $10.8 million from fiscal year 2011. Therefore, the Judiciary requests that the decline in these non-appropriated funds be replaced with direct appropriations in order to maintain the fiscal year 2011 level of representations in fiscal year 2012.

**5. Other inflationary increases: $3.3 million**

An increase of $3.3 million is required for inflationary adjustments for all non-pay categories, as well as for space rental costs.

**Program Increases**

**6. New Federal Defender Organization: $0.3 million**

An increase of $300,000 will provide for the start-up costs of one new defender organization expected to be opened in fiscal year 2012.

312

| Courts of Appeals, District Courts and Other Judicial Services | | | | |
| Defender Services | | | | |
| Comparative Summary of Obligations by Category | | | | |
| ($000) | | | | |
| Category | FY 2010 Actual | FY 2011 Assumed | FY 2012 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 357,896 | 380,575 | 402,195 | 21,620 |
| Rent, Communications and Utilities | 43,936 | 48,090 | 50,725 | 2,635 |
| Travel | 10,842 | 11,800 | 12,100 | 300 |
| Contractual Services (includes current year panel attorney payments) | 420,104 | 469,400 | 480,100 | 10,700 |
| Other (includes grants to Community Defender Organizations) | 139,317 | 154,992 | 163,625 | 8,633 |
| **Total Obligations** | **972,095** | **1,064,857** | **1,108,745** | **43,888** |
| Financing Adjustment | 5,653 | (20,785) | (10,000) | 10,785 |
| **Available Appropriation** | **977,748** | **1,044,072** | **1,098,745** | **54,673** |

38

313



**FY 2012 Budget Request**
Defender Services Account by Category
(Obligations)

Program Administration
1%

Federal Defender
Organizations
59%

Panel Attorneys
40%

39

314

## Courts of Appeals, District Courts and Other Judicial Services
### Fees of Jurors and Commissioners

| FY 2012 Request<br>Courts of Appeals, District Courts and Other Judicial<br>Services, Fees of Jurors and Commissioners | ($000) |
|---|---|
| FY 2011 Assumed Appropriation | $52,410 |
| Adjustments to Base | 7,317 |
| FY 2012 Appropriation | $59,727 |

### Budget Summary

The Judicial Conference requests $59.7 million for Fees of Jurors and Commissioners in fiscal year 2012, a 14.0 percent increase over the fiscal year 2011 assumed appropriation. This appropriation is less than one percent of the judiciary's total budget. Costs associated with this account may be unpredictable and are driven by the number of jury trials, the length of those trials, and statutory rates for reimbursement paid to jurors.

### Adjustments to Base

All of the adjustments in this account are base adjustments that will allow the account to continue to pay for the statutory fees and expenses to grand and petit jurors and compensation of land commissioners in fiscal year 2012. These adjustments include:

*1. Inflationary adjustments: $115,000*

In addition to the fees paid, jurors also are reimbursed for certain expenses including meals and lodging for sequestered jurors and transportation of juries to view evidence or crime scenes. Inflationary increases associated with these expenses are expected to total $82,000 for grand jurors and $33,000 for petit jurors in fiscal year 2012.

*2. Projected change in juror days: ($757,000)*

Based on projected changes in the number of available grand and petit jurors, overall expenses are projected to decrease by $757,000 in fiscal year 2012. Requirements for grand jurors related to these expenses are expected to decrease by $483,000 and requirements for petit jurors are projected to decrease by $274,000.

*3. Funds necessary to maintain fiscal year 2011 service levels due to an anticipated decline in non-appropriated funds: $7.9 million*

The fiscal year 2011 financial plan was financed in part by $2,436,000 in carryforward balances from fiscal year 2009 and $5,523,000 in carryforward balances from fiscal year 2010. Thus, the judiciary requests $7.9 million in fiscal year 2012 to replace direct appropriations in order to maintain fiscal year 2011 service levels.

40

315

**Courts of Appeals, District Courts and Other Judicial Services**
**Fees of Jurors and Commissioners**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2010 Actual | FY 2011 Assumed | FY 2012 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 28,053 | 28,618 | 28,314 | (304) |
| Rent, Communications and Utilities | 1,609 | 1,312 | 1,298 | (14) |
| Travel | 27,052 | 28,771 | 28,465 | (306) |
| Other | 1,846 | 1,668 | 1,650 | (18) |
| **Total Obligations** | **58,560** | **60,369** | **59,727** | **(642)** |
| Financing Adjustment | 3,301 | (7,959) | 0 | 7,959 |
| **Available Appropriation** | **61,861** | **52,410** | **59,727** | **7,317** |

41

316



**FY 2012 Budget Request**
**Fees of Jurors and Commissioners Account by Category**
**(Obligations)**

Land Commissioners
0.2%

Petit Jurors
72.6%

Grand Jurors
27.2%

42

317

## Courts of Appeals, District Courts and Other Judicial Services
### Court Security

| Courts of Appeals, District Courts and Other Judicial Services, Court Security | | |
|---|---|---|
| **FY 2012 Request** | | |
| | FTE | ($000) |
| **FY 2011 Assumed Appropriation** | 71 | $488,436 |
| **Adjustments to Base** | | 22,966 |
| **Program Increases:** | | |
| Facial Recognition Systems Pilot | | 200 |
| National Contract for Vehicle Barrier Maintenance | | 728 |
| Wireless Broadcast Systems Pilot | | 194 |
| Seven New Judiciary-Funded USMS Positions | 4 | 534 |
| **FY 2012 Appropriation** | 75 | $513,058 |

### Budget Summary

The Judicial Conference requests $513.1 million for Court Security in fiscal year 2012, a 5.0 percent increase over the fiscal year 2011 assumed appropriation. The majority of the funding is transferred to the U.S. Marshals Service (USMS) which is responsible for administering the Judicial Facility Security Program. The Court Security appropriation is approximately 7 percent of the judiciary's total budget.

### Adjustments to Base

The Court Security request for adjustments to base is for pay, inflationary increases, and other adjustments that will maintain fiscal year 2011 current services. In broad categories, these adjustments include:

*1. Pay and benefit decrease: ($1.3 million)*

For federal employees, this net decrease accounts for within-grade increases, changes in benefit rates, and one less compensable day in fiscal year 2012.

*2. Annualization of fiscal year 2011 court security officer positions (30): $1.2 million*

Funding is required to annualize costs for 30 additional Court Security Officers (CSO) expected to be brought on-board in fiscal year 2011, based on projected occupancy dates for new and existing space and the CSO staffing formula.

*3. Department of Labor and Collective Bargaining Agreements wage rate adjustment: $19.9 million*

This increase provides for an average 6.0 percent wage adjustment for contract court security officers as established by the Department of Labor and based on collective bargaining agreements.

43

*4.  Non-pay inflationary increases: $0.1 million*

The funding requested will provide for a general inflationary increase of 1.4 percent for travel, supplies, equipment, and other contractual services (exclusive of Court Security Officers contracts).

*5.  Inflationary increase in GSA space rental costs: $0.1 million*

The funding requested will provide for a general inflationary increase of 1.5 percent for GSA space rental costs.

*6.  Additional court security officers (50) associated with fiscal year 2012 new and existing space: $4.7 million*

The increase provides for 50 additional CSOs for new and renovated existing space expected to be delivered in fiscal year 2012.

*7.  Changes in Federal Protective Service security charges: $6.7 million*

The requested increase of $6.7 million will fund basic security ($2.2 million) and building-specific ($4.5 million) operating expenses based on anticipated billings from the Federal Protective Service. This brings the total request to $79.4 million in fiscal year 2012, compared to $72.6 million projected in fiscal year 2011.

*8.  Adjustments to base for security systems and equipment: ($7.7 million)*

The requested amount reflects a net decrease of $7.7 million in the court security systems and equipment acquisition plan. This includes $6.5 million in increases for cyclical replacement of hardware and software for access control systems; expansion of explosive trace detection (ETD) systems; nationwide maintenance contract for existing security systems and equipment; equipment for probation and pretrial services offices and federal public defender organizations; itemiser consumables, spare parts and repair services for ETD systems; and screening equipment for new buildings.  An offsetting decrease of $14.2 million is for the cyclical replacement of ETD systems; security systems for new and renovated facilities; GSA installation and alterations; CSO radios, accessories, repairs and over-the-air re-key; cyclical replacement of screening equipment; additional and replacement equipment; and perimeter security improvements.

*9.  Adjustments to base for program administration: ($0.8 million)*

The requested decrease is from savings associated with the proposed replacement of six existing contractor positions with full-time USMS employees.

44

technicians to replace existing contractors and one information technology specialist. The cost of these new staff are offset by reduced contract costs (see item 9 above).

## Program Increases

**10.  *Nationwide contract for vehicle barrier maintenance (Re-Requested from Fiscal Year 2011):  $0.7 million***

Funding is requested to establish a nationwide preventative maintenance contract and repair program for vehicle barriers installed by the USMS.  This approach will increase the reliability of the vehicle barriers and reduce frequency of breakdowns.

**11.  *Facial Recognition Systems Pilot (Re-Requested from Fiscal Year 2011):  $0.2 million***

The USMS recommends an initiative to pilot facial recognition systems in court facilities.  This initiative will provide effective technology to identify and prevent individuals who are "persons of interest" from entering courthouse facilities.

**12.  *Wireless Broadcast Systems Pilot:  $0.2 million***

The USMS recommends funding to purchase and install wireless broadcast systems at six pilot sites.  The proposed automated system will give CSOs the ability to respond to duress alarm locations quickly and the judiciary would greatly benefit from rapid responses to threatening or medical distress situations.

**13.  *Seven new judiciary-funded USMS positions:       FTE 4
$0.5 million***

The judiciary presently funds 70 full-time USMS positions in fiscal year 2011.  For fiscal year 2012, the USMS requests seven additional positions (4 FTE) in fiscal year 2012, including four program analysts to replace existing contractors, two electronic

**Courts of Appeals, District Courts and Other Judicial Services**
**Court Security**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2010 Actual | FY 2011 Assumed | FY 2012 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | $7,815 | $9,157 | $9,470 | $313 |
| Rent, Communications and Utilities | 6,717 | 6,163 | 6,272 | 109 |
| Travel | 385 | 455 | 480 | 25 |
| Court Security Officers Contract | 320,466 | 326,846 | 352,739 | 25,893 |
| Federal Protective Service Charges | 65,597 | 72,639 | 79,384 | 6,745 |
| Other | 58,865 | 86,139 | 64,713 | (21,426) |
| **Total Obligations** | **$459,845** | **$501,399** | **$513,058** | **$11,659** |
| Financing Adjustment | (7,238) | (12,963) | 0 | 12,963 |
| **Available Appropriation** | **$452,607** | **$488,436** | **$513,058** | **$24,622** |

46

321

**Court Security - Summary of Requirements and Financing**

| Financing: | Court Security Officers (CSOs) | | Systems/Equip | Program Administration | | FPS Provided Security | Total | |
|---|---|---|---|---|---|---|---|---|
| | CSOs | $000 | $000 | FTE | $000 | $000 | FTE | $000 |
| FY 2011 Financial Plan | 4,224 | $326,846 | $76,434 | 71 | $25,480 | $72,639 | 71 | $501,399 |
| Less: Carryforward from FY 2010 | 0 | 0 | (6,160) | 0 | (6,803) | 0 | 0 | (12,963) |
| **Total FY 2011 Assumed Appropriation** | 4,224 | $326,846 | $70,274 | 71 | $18,677 | $72,639 | 71 | $488,436 |
| FY 2012 Appropriation Increases / Decreases | 50 | 25,893 | (6,593) | 4 | (1,423) | 6,745 | 4 | 24,622 |
| **Total FY 2012 Request** | 4,274 | $352,739 | $63,681 | 75 | $17,254 | $79,384 | 75 | $513,058 |

47

322



48

323

# Administrative Office of the U.S. Courts

| FY 2012 Request<br>Administrative Office of the U.S. Courts | FTE | ($000) |
|---|---|---|
| FY 2011 Assumed Appropriation | 639 | $85,982 |
| | | |
| Adjustments to Base | | 2,149 |
| | | |
| Program Increases: | | |
| Three new court support positions | 2 | 324 |
| FY 2012 Appropriation | 641 | $88,455 |

## Budget Summary

The Administrative Office (AO) requests $88.5 million in fiscal year 2012, a 2.9 percent increase over the fiscal year 2011 assumed appropriation. In addition to the appropriation provided by Congress, the AO receives non-appropriated funds from sources such as fee collections and carryover balances to offset its appropriation requirements. The AO also receives reimbursements from other judiciary accounts for information technology development and support services that are in direct support of the courts, the court security program, and defender services.

The AO provides administrative, legal, financial management, program, security, and information technology services to the federal courts. It provides support and staff counsel to the Judicial Conference of the United States and its committees, and implements Judicial Conference policies as well as applicable federal statutes and regulations. The AO is the focal point for communication and coordination within the judiciary and with Congress, the executive branch, and the public on behalf of the judiciary. As such, the court staffing levels are a primary workload driver for the AO.

## Adjustments to Base

The AO requests a $2.1 million increase for base adjustments to the fiscal year 2011 current services level. This includes increased costs for recurring requirements, such as travel, communications, service agreements, and supplies.

## Program Increases

*I. Three new positions:*                 *FTE 2*
**$324,000**

An increase of $324,000 will fund 3 new positions (2 FTE) for six months to address high priority court support functions of the AO. It is a re-request from fiscal year 2011, which was the first request for additional AO-funded staff in six years.

Two positions are requested to support a comprehensive modernization and consolidation of the judiciary's nationwide accounting system (FAS₄T). This will be a multi-year effort that will provide the judiciary with significant improvements in its accounting for appropriated funds. Once fully implemented, the AO will be able to assume the critically important disbursement functions currently performed by the

324

courts. Included as part of this FAS,T upgrade will be the ability to disburse individual and vendor payments electronically, a major intiative of the Department of Treasury. Currently, the AO is not staffed to handle these new responsibilities that it will assume from the courts. Two additional operating accountant positions are requested to develop and implement this new disbursing capability, which will strengthen internal control and financial accountability.

One new position is re-requested to support an initiative to address judges' Internet security, including Internet threats and the availability of judges' personal information on the Internet. This initiative includes development and implementation of strategies and protocols to mitigate the misuse and abuse of judges' names as domain names on the Internet, where judges' security could be compromised. A working group of judiciary and executive branch law enforcement representatives investigated this issue and proposed a multifaceted approach which will require coordination at the local and national levels. A central point of contact at the AO will be able to monitor these issues, develop initiatives and responses, and communicate to judges the best practices to keep personal information off the Internet.

50

325

**Administrative Office of the U.S. Courts**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2010 Actual | FY 2011 Assumed | FY 2012 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 138,167 | 143,310 | 146,203 | 2,893 |
| Rent, Communications and Utilities | 519 | 884 | 901 | 17 |
| Travel | 1,469 | 1,760 | 1,797 | 37 |
| Other | 8,321 | 10,019 | 8,862 | (1,157) |
| **Total Obligations** | **148,476** | **155,973** | **157,763** | **1,790** |
| Financing Adjustment | (21,652) | (23,562) | (21,825) | 1,737 |
| Reimbursable Program | (43,749) | (46,429) | (47,483) | (1,054) |
| **Available Appropriation** | **83,075** | **85,982** | **88,455** | **2,473** |

51

326

## Federal Judicial Center

| FY 2012 Request Federal Judicial Center | FTE | ($000) |
|---|---|---|
| FY 2011 Assumed Appropriation | 140 | $28,087 |
| Adjustments to Base | - | 276 |
| **Program Increases:** | | |
| Enhance education and training programs | 1 | 371 |
| Enhance education, training and research technology resources | | 295 |
| **FY 2012 Appropriation** | **141** | **$29,029** |

### Budget Summary

The Federal Judicial Center (FJC) requests $29.0 million in fiscal year 2012, a 3.4 percent increase over the fiscal year 2011 enacted appropriation. The FJC, which is the research and education arm of the Third Branch, provides judges and other judiciary personnel with education and training on legal developments and efficient litigation management and court administration. As such, its workload is derived in large part by the population of the courts.

### Adjustments to Base

The Federal Judicial Center requests $0.3 million in adjustments to base increases, which are comprised of standard inflationary adjustments.

### Program Increases

*1. Enhance education and training programs:*
*$371,000*                                                                 *FTE 1*

The Center requests $150,000 to develop and conduct education and training programs for judges involved in the pilot program in certain United States district courts to encourage enhancement of expertise in patent cases among district judges as authorized by Public Law 111-349; $115,000 to enhance education and training for judges on case management (including the use of information technology), legal training for court staff attorneys, and for court executive and managers on effective leadership and management practices; and, $106,000 for two new Education Specialist positions (1 FTE) to help develop and conduct these and other important education and training programs.

52

## 2. Enhance education, training and research technology resources: $295,000

The Center requests $295,000 to enhance education and research technology resources, including information technology licenses and contractor support for e-learning tools and for content management to enable users to have more effective access to Center online programs and services and to stay current with continuously evolving automation and video equipment necessary to expand distance learning and its delivery.

328

**Federal Judicial Center**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2009 Actual | FY 2010 Assumed | FY 2011 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 17,931 | 18,920 | 19,076 | 156 |
| Rent, Communications and Utilities | 516 | 578 | 584 | 6 |
| Travel | 5,801 | 5,841 | 6,147 | 306 |
| Other | 3,617 | 3,302 | 3,500 | 198 |
| **Total Obligations** | **27,865** | **28,641** | **29,307** | **666** |
| Financing Adjustment | (537) | (554) | (278) | 276 |
| **Available Appropriation** | **27,328** | **28,087** | **29,029** | **942** |

54

# Payment to Judiciary Trust Funds

| FY 2012 Request Payment to Judiciary Trust Funds | ($000) |
|---|---|
| **FY 2011 Appropriation** | $90,361 |
| **Adjustments to Base** | 13,406 |
| **FY 2012 Appropriation** | **$103,768** |

## Budget Summary

The Judicial Conference requests $103.8 million for the Judiciary Trust Fund in fiscal year 2012, a 14.8 percent increase over the fiscal year 2011 appropriation. The Judiciary Trust Fund is a congressionally-scored mandatory account and is divided among three trust funds that finance payments to (1) retired bankruptcy and magistrate judges, (2) retired Court of Federal Claims judges, and (3) spouses and dependent children of deceased judicial officers. The appropriation requirements are calculated annually by an enrolled actuary pursuant to 31 U.S.C. 9503.

## Adjustments to Base

Based on independent actuarial calculations, an increase of $13.4 million is required for this account for fiscal year 2012 detailed as follows:

| | |
|---|---|
| Judicial Officers' Retirement Fund | $7,906,140 |
| Judicial Survivors' Annuities Fund | $5,300,000 |
| United States Court of Federal Claims Judges' Retirement Fund | $200,000 |
| **Total** | **$13,406,140** |

330

**Payment to Judiciary Trust Funds**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2010 Actual | FY 2011 Assumed | FY 2012 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Other | 82,374 | 90,361 | 103,768 | 13,406 |
| **Total Obligations** | **82,374** | **90,361** | **103,768** | **13,406** |
| Financing Adjustment | 0 | 0 | 0 | 0 |
| **Available Appropriation** | **82,374** | **90,361** | **103,768** | **13,406** |

56

331

# United States Sentencing Commission

| FY 2012 Request<br>U.S. Sentencing Commission | FTE | ($000) |
|---|---|---|
| FY 2011 Assumed Appropriation | 110 | $17,414 |
| Adjustments to Base | | 492 |
| **FY 2012 Appropriation** | **110** | **$17,906** |

### Budget Summary

The U.S. Sentencing Commission requests $17.9 million in fiscal year 2012, a 2.8 percent increase over the fiscal year 2011 assumed appropriation.

The fulfillment of the Commission's duties to review and revise the guidelines regularly, collect data from federal sentencing courts, analyze these data to provide meaningful information on federal sentencing practices, and provide extensive training to guideline users can be satisfied only with full funding of its fiscal year 2012 request. Full funding will allow the Commission to continue its efforts to review and revise the guidelines; provide specialized training on federal sentencing issues, including application of the guidelines; modernize its data collection, analysis, and reporting systems; and continue its review of alternatives to incarceration.

The Commission has begun a comprehensive assessment of federal sentencing. As part of the assessment, the Commission held regional hearings across the country and the input received will help to shape the Commission's policy priorities for the year.

### Adjustments to Base

The Commission requests $492,000 in adjustments to base increases, which are comprised of pay and other inflationary adjustments. The Commission requests no program increases.

57

332

**U.S. Sentencing Commission**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2010 Actual | FY 2011 Assumed | FY 2012 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 12,840 | 13,274 | 13,587 | 313 |
| Rent, Communications and Utilities | 72 | 75 | 77 | 2 |
| Travel | 822 | 862 | 765 | (97) |
| Other | 3,022 | 3,565 | 5,863 | 2,298 |
| **Total Obligations** | **16,756** | **17,776** | **20,292** | **2,516** |
| Financing Adjustment | 81 | (362) | (2,386) | (2,024) |
| **Available Appropriation** | **16,837** | **17,414** | **17,906** | **492** |

58

333

## Appropriation Language Changes

The judiciary proposes the following changes to the appropriation language for fiscal year 2012:

*Court of Appeals, District Courts, and Other Judicial Services Salaries and Expenses*

Includes language to purchase uniforms for Probation and Pretrial Services personnel.

## General Provisions Changes

There are no proposed changes.

59

334

## GENERAL PROVISIONS - THE JUDICIARY

Sec. 301.  Appropriations and authorizations made in this title which are available for salaries and expenses shall be available for services as authorized by 5 U.S.C. 3109.

Sec. 302.  Not to exceed 5 percent of any appropriation made available for the current fiscal year for the Judiciary in this Act may be transferred between such appropriations, but no such appropriation, except "Courts of Appeals, District Courts, and Other Judicial Services, Defender Services" and "Courts of Appeals, District Courts, and Other Judicial Services, Fees of Jurors and Commissioners", shall be increased by more than 10 percent by any such transfers: Provided, That any transfer pursuant to this section shall be treated as a reprogramming of funds under sections 604 and 608 of this Act and shall not be available for obligation or expenditure except in compliance with the procedures set forth in section 608.

Sec. 303.  Notwithstanding any other provision of law, the salaries and expenses appropriation for "Courts of Appeals, District Courts, and Other Judicial Services" shall be available for official reception and representation expenses of the Judicial Conference of the United States: Provided, That such available funds shall not exceed $11,000 and shall be administered by the Director of the Administrative Office of the United States Courts in the capacity as Secretary of the Judicial Conference.

Sec. 304.  Within 90 days after the date of the enactment of this Act, the Administrative Office of the U.S. Courts shall submit to the Committees on Appropriations a comprehensive financial plan for the Judiciary allocating all sources of available funds including appropriations, fee collections, and carryover balances, to include a separate and detailed plan for the Judiciary Information Technology Fund, which will establish the baseline for application of reprogramming and transfer authorities for the current fiscal year.

Sec. 305.  Section 3314(a) of title 40, United States Code, shall be applied by substituting "Federal" for "executive" each place it appears.

Sec. 306.  In accordance with 28 U.S.C. 561-569, and notwithstanding any other provision of law, the United States Marshals Service shall provide, for such courthouses as its Director may designate in consultation with the Director of the Administrative Office of the United States Courts, for purposes of a pilot program, the security services that 40 U.S.C. 1315 authorizes the Department of Homeland Security to provide, except for the services specified in 40 U.S.C. 1315(b)(2)(E). For building-specific security services at these courthouses, the Director of the Administrative Office of the United States Courts shall reimburse the United States Marshals Service rather than the Department of Homeland Security.

This title may be cited as the "Judiciary Appropriations Act, [2011] 2012".

# The Judiciary

# Fiscal Year 2012
# Congressional Budget Justification



(335)

336

# TABLE OF CONTENTS

| | Page Number |
|---|---|
| Overview of The Judiciary .......................................................... | Overview - 1 |
| **Summary of Budgetary Requirements for Fiscal Year 2012** | |
| Summary of Fiscal Year 2012 Request ........................................ | Summary - 1 |
| Summary of Appropriation Request for Fiscal Year 2012 .................. | Summary - 4 |
| Summary of Mandatory Costs .................................................. | Summary - 5 |
| Summary of Personnel .......................................................... | Summary - 6 |
| Fiscal Year 2012 Summary of Requested Changes ........................... | Summary - 7 |
| Comparative Summary of Obligations by Object Classification ............ | Summary - 8 |
| Fiscal Year 2010 Summary ..................................................... | Summary - 9 |
| Fiscal Year 2011 Summary ..................................................... | Summary - 10 |
| Fiscal Year 2012 Summary ..................................................... | Summary - 11 |
| Outlay Table ..................................................................... | Summary - 12 |
| | |
| **Supreme Court** | |
| Summary Statement ............................................................. | 1.1 |
| Salaries and Expenses .......................................................... | 1.2 |
| Care of the Building and Grounds ............................................ | 1.19 |
| **United States Court of Appeals for the Federal Circuit** ............... | 2.1 |
| **United States Court of International Trade** ............................ | 3.1 |

i

**Courts of Appeals, District Courts, and Other Judicial Services**

Overview ................................................................................... 4.1

Salaries and Expenses ................................................................. 5.1

   Appendix 1 - Court Support Staffing ....................................... Appendix - 1

Defender Services ...................................................................... 6.1

Fees of Jurors and Commissioners ............................................. 7.1

Court Security .......................................................................... 8.1

**Administrative Office of the U.S. Courts** ................................. 9.1

**Federal Judicial Center** ......................................................... 10.1

**Payments to Judiciary Trust Funds** ....................................... 11.1

**United States Sentencing Commission** ................................... 12.1

**Judiciary Information Technology Fund** ................................. 13.1

   Appendix 2 - Electronic Public Access Program ....................... Appendix - 2

**General Provisions** ................................................................. 14.1

ii

338

# Overview of The Judiciary

The organization of the judiciary, the district and circuit boundaries, the places of holding court, and the number of federal judges are established by laws passed by Congress and signed by the President. The number of federal judges in each district and in the courts of appeals is authorized by Congress on the basis of workload.

In addition to the adjudication of cases, other related functions, such as the provision of criminal defense services and the supervision of offenders, are prescribed by statute. The following sections provide a brief overview of the work of the courts and other related activities of the Judicial Branch.

## United States Supreme Court

The United States Supreme Court consists of nine justices, one of whom is appointed as Chief Justice of the United States. The Supreme Court is the final arbiter in the federal court system.

## United States Courts of Appeals

There are 13 courts of appeals and 179 authorized appellate court judgeships nationwide. Twelve of the courts of appeals have jurisdiction over cases within a regional area or "circuit." The twelve regional courts of appeals review cases from the United States district courts and the United States Tax Court, and orders and decisions from a number of federal administrative agencies.

**The United States Court of Appeals for the Federal Circuit** has exclusive national jurisdiction over a large number of diverse subject areas, including international trade, government contracts, patents, trademarks, certain money claims against the



**The Federal Judiciary**

**United States Supreme Court**

**U.S. Courts of Appeals**

12 Regional Circuit Courts of Appeals
1 U.S. Court of Appeals for the Federal Circuit

**Trial Courts**

U.S. District Courts
U.S. Bankruptcy Courts
U.S. Court of International Trade
U.S. Court of Federal Claims

**Other Judiciary Entities/Programs**

Probation and Pretrial Services
Defender Services
Court Security
Fees of Jurors and Commissioners
Administrative Office of the U.S. Courts
Federal Judicial Center
Judiciary Trust Funds
United States Sentencing Commission

United States government, federal personnel, and veterans' benefits. Appeals to the court come from all 94 federal district courts, as well as the United States Court of Federal Claims, the United States Court of International Trade, and the United States Court of Appeals for Veterans' Claims.

## United States District Courts

There are 94 district judicial courts in the 50 states, the District of Columbia, the Commonwealth of Puerto Rico, and the territories of Guam, the U.S. Virgin Islands and the Northern Mariana Islands. The U.S. District Courts are the courts of general jurisdiction in the federal court system, and most federal cases are initially tried and decided in these courts. There are 678 authorized district court judgeships nationwide.

The Federal Magistrates Act of 1968 created the office of magistrate judge to assist the district court judges. Magistrate judges are non-Article III judges appointed by the district judges, and they serve for a term of years rather than a lifetime appointment. Full-time magistrate judges serve a term of eight years and may be reappointed.

## United States Bankruptcy Courts

The bankruptcy courts are separate units of the district courts. Federal courts have exclusive jurisdiction over bankruptcy cases. This means that a bankruptcy case cannot be filed in a state court. United States bankruptcy judges are non-Article III judges appointed by the courts of appeals for a term of years rather than a lifetime appointment. They serve for a term of 14 years and may be reappointed.

## United States Court of International Trade

The Court of International Trade, with nine Article III judges, has exclusive nationwide jurisdiction of civil actions against the United States, its agencies and officers, and certain civil actions brought by the United States, arising out of import transactions and the administration and enforcement of the federal customs and international trade laws.

## United States Court of Federal Claims

The Court of Federal Claims has nationwide jurisdiction over certain types of claims against the federal government. Its 16 judges are appointed for a term of 15 years by the President with the advice and consent of the Senate. Judges appointed to the Court of Federal Claims are authorized under Article I of the constitution and do not have the tenure and salary protections of Article III judges.

## Probation and Pretrial Services

Federal probation and pretrial services officers protect the public through the investigation and supervision of defendants and offenders within the federal criminal justice system. A pretrial services officer supervises defendants awaiting trial who are released into our communities and provides a source of information upon which the court can determine conditions of release or detentions while criminal cases are pending adjudication. In support of sentencing determinations, which require both uniformity of practice and attention to individual circumstances, probation officers provide the court with reliable information concerning the offender, the victim, and the offense committed, as well as an impartial application of the sentencing guidelines. Probation officers supervise offenders sentenced to

2

340

probation as well as offenders coming out of federal prison who are required to serve a term of supervised release.

## Defender Services

The federal judiciary oversees and administers the federal defender and appointed counsel program, which provides legal representation and other services to persons financially unable to obtain counsel in criminal and related matters in federal court. The Sixth Amendment to the Constitution guarantees that "[i]n all criminal prosecutions the accused shall enjoy the right...to have the assistance of counsel for his defense." The Criminal Justice Act provides that courts shall appoint counsel from federal public and community defender organizations or from a panel of private attorneys ("panel attorneys") established by the court.

## Court Security

The judiciary's Court Security appropriation funds protective guard services and security systems and equipment for United States courthouses and other facilities housing federal court operations. These services are contracted for and managed by the United States Marshals Service, with additional guard services provided by the Federal Protective Service.

## Fees of Jurors and Commissioners

The judiciary receives funding to provide for the statutory fees and allowances of federal grand and petit jurors and for the compensation of land commissioners.

## Administrative Office of the U.S. Courts

The Administrative Office of the U.S. Courts is the central support entity for the judicial branch. It has management oversight of the court security program, the probation and pretrial services program, and the defender services program. It supports the Judicial Conference of the United States in determining judiciary policies; develops new methods, systems, and programs for conducting the business of the federal courts efficiently and economically; develops and supports application of technology; collects and analyzes statistics on the business of the federal courts for accurate planning and decisions about resource needs; provides financial management services and personnel and payroll support; and conducts audits and reviews to ensure the continued quality and integrity of federal court operations.

## Federal Judicial Center

The Federal Judicial Center is the judiciary's research and education agency. The Center undertakes research and evaluation of judicial operations and procedures for both the committees of the Judicial Conference and the courts themselves. It provides judges, court personnel, and others orientation and continuing education and training through seminars; curriculum units for in-court use; monographs and manuals; and audio, video, and interactive media programs.

3

341

**Payment to Judiciary Trust Funds**

This appropriation finances annuity payments to retired bankruptcy judges and magistrate judges, U.S. Court of Federal Claims judges, and spouses and dependent children of deceased judicial officers.

**U.S. Sentencing Commission**

The U.S. Sentencing Commission promulgates sentencing policies, practices, and guidelines for the federal criminal justice system. The Chair, three Vice Chairs, and three other voting commissioners are appointed by the President with the advice and consent of the Senate.

4

# Budget Summary - Details of Request

The judiciary's appropriation request for fiscal year 2012 totals $7,293,950,000 an increase of $299,318,000, or 4.3 percent over the fiscal year 2011 assumed appropriations. The fiscal year 2012 request provides for an additional 523 FTE to meet critical workload requirements, an increase of 1.5 percent over the 35,172 FTE funded in 2011.

*Adjustments to Base*

Of the $299.3 million requested increase, $257.8 million or 86.1 percent will provide for pay adjustments, inflation and other adjustments to base necessary to maintain current services.

Base adjustments include:

1.  An increase of $55.1 million (21.4 percent of the base adjustments) will provide for pay and benefit rate increases, including changes in health benefit premiums, changes in benefit costs for both judges and supporting personnel, and a wage rate adjustment for court security officers.

2.  An increase of $15.2 million (5.9 percent of base adjustments) will provide for the annualization of new Defender Services staff and court security officers expected to be hired in fiscal year 2011 and new court security officers in fiscal year 2012.

3.  An increase of $17.1 million (6.6 percent of base adjustments) is requested for the annualization of new space delivered in fiscal year 2011, the cost of new space

expected to be delivered in fiscal year 2012, and space related inflation.

4.  An increase of $27.6 million (10.7 percent of base adjustments) will provide for the cost of uncontrollable workload changes expected in the Defender Services account.

5.  An increase of $19.2 million (7.4 percent of base adjustments) will provide for inflationary increases in non-pay categories using the government wide inflation factor of 1.4 percent.

6.  An increase of $100 million (38.8 percent of base adjustments) is necessary to replace non-appropriated sources of funds used to support base requirements in fiscal year 2011 with direct appropriations. The judiciary will keep the Appropriations Subcommittees informed of any change in this estimate.

7.  An increase of $13.5 million (5.2 percent of base adjustments) is associated with increases in the number of senior judges and support staff.

8.  An increase of $13.4 million (5.2 percent of base adjustments) is requested for payments to the Judiciary Retirement Trust Funds. This is a mandatory appropriation.

9.  An increase of $6.8 million (2.6 percent of base adjustments) will provide for estimated increases in Federal Protective Service security charges.

10. An increase of $1.6 million (0.6 percent of base adjustments) is associated with an increase in the number of filled Article III judgeships.

11. An increase of $2.0 million (0.8 percent of base adjustments) will provide for base increases necessary to support, maintain, and continue investments in the judiciary's information technology program.

12. A net decrease of $7.7 million (-3.0 percent of base adjustments) is associated with adjustments below the fiscal year 2011 funded base for court security systems and equipment.

13. A decrease of $0.8 million (-0.3 percent of base adjustments) is associated with a projected net change in available jurors.

14. A net decrease of $5.2 million (-2.0 percent of base adjustments) is associated with non-recurring costs for expenses related to filled fiscal year 2011 judgeships combined with cost savings and reductions in the Supreme Court and Court Security accounts.

*Program Increases*

The remaining $41.5 million, or 13.9 percent, of the total increase is requested for program enhancements and workload-related needs.

Program increases include:

15. An increase of $22.2 million (53.5 percent of program enhancements) will provide for additional support staff and associated costs. This increase is for staffing adjustments to handle the most critical workload (264 FTE).

16. An increase of $13.9 million (33.5 percent of program enhancements) will provide for information technology enhancements.

17. An increase of $2.4 million (5.8 percent of program enhancements) will provide for 4 additional magistrate judges and associated staff (16 FTE) in districts with growing caseload.

18. An increase of $1.1 million (2.7 percent of program enhancements) will provide for necessary investments in court security, such as a national contract for vehicle barrier maintenance, a facial recognition systems pilot program, and a wireless broadcast systems pilot program

19. An increase of $0.9 million (2.2 percent of program enhancements) will provide for twelve new police officers (9 FTE) and support expenses at the Supreme Court.

20. An increase of $0.7 million (1.7 percent of program enhancements) will provide for education and training program enhancements at the Federal Judicial Center.

344

21. An increase of $0.3 million (0.7 percent of program enhancements) will provide for the start-up costs associated with one new defender organization.

The Judiciary
Summary of Appropriation Requests for Fiscal Year 2012 ($000)

| | FY 2010 Enacted | | | FY 2011 Assumed Appropriations 2/ | | | Change | | | FY 2012 Request | Total | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Mand. 1/ | Direct | Total Available | Mand 3/ | Direct | Total Available | Mand. | Direct | Total | Mand. | Discret. | Total Request |
| **Supreme Court** | | | | | | | | | | | | |
| Salaries and Expenses | 2,166 | 71,868 | 74,034 | 2,197 | 74,060 | 76,257 | - | (706) | (706) | 2,197 | 73,354 | 75,551 |
| Buildings and Grounds | - | 14,525 | 14,525 | - | 8,353 | 8,353 | - | 151 | 151 | - | 8,504 | 8,504 |
| **Total, Supreme Court** | 2,166 | 86,393 | 88,559 | 2,197 | 82,413 | 84,610 | - | (555) | (555) | 2,197 | 81,858 | 84,055 |
| Court of Appeals for the Federal Circuit | 2,491 | 30,069 | 31,560 | 2,502 | 31,623 | 34,125 | 11 | 1,003 | 1,014 | 2,513 | 33,626 | 35,139 |
| Court of International Trade | 1,715 | 19,635 | 21,350 | 1,851 | 20,331 | 22,182 | (133) | 842 | 709 | 1,718 | 21,173 | 22,891 |
| **Courts of Appeals, District Courts and Other Judicial Services** | | | | | | | | | | | | |
| Salaries and Expenses - Direct | 340,000 | 4,671,018 | 5,011,018 | 332,565 | 4,709,603 | 5,042,168 | 6,698 | 187,300 | 193,998 | 327,707 | 4,908,459 | 5,236,166 |
| Supplemental Approp. (P.L. 111-230) | - | 10,000 | 10,000 | - | - | - | - | - | - | - | - | - |
| Vaccine Injury Fund | - | 5,428 | 5,428 | - | 4,785 | 4,785 | - | 226 | 226 | - | 5,011 | 5,011 |
| Total, Salaries and Expenses | 340,000 | 4,686,446 | 5,026,446 | 332,565 | 4,714,388 | 5,046,985 | 6,698 | 187,526 | 194,224 | 327,707 | 4,913,470 | 5,241,177 |
| Defender Services | - | 977,748 | 977,748 | - | 1,044,072 | 1,044,072 | - | 54,673 | 54,673 | - | 1,098,745 | 1,098,745 |
| Fees of Jurors and Commissioners | - | 61,861 | 61,861 | - | 52,410 | 52,410 | - | 7,317 | 7,317 | - | 99,727 | 99,727 |
| Court Security | - | 453,407 | 453,407 | - | 488,436 | 488,436 | - | 24,622 | 24,622 | - | 513,058 | 513,058 |
| **Subtotal (CADCOUS)** | 340,000 | 6,178,463 | 6,518,463 | 332,565 | 6,299,306 | 6,631,871 | 6,698 | 274,138 | 280,834 | 327,707 | 6,585,000 | 6,912,707 |
| Administrative Office of the U.S. Courts | - | 83,075 | 83,075 | - | 85,982 | 85,982 | - | 2,473 | 2,473 | - | 88,455 | 88,455 |
| Federal Judicial Center | - | 27,528 | 27,528 | - | 28,087 | 28,087 | - | 942 | 942 | - | 29,029 | 29,029 |
| Payment to Judicial Retirement Funds | 83,374 | 82,374 | 82,374 | 90,361 | 90,361 | 90,361 | 13,406 | - | 13,406 | 103,768 | - | 103,768 |
| Sentencing Commission | - | 16,837 | 16,837 | - | 17,414 | 17,414 | - | 492 | 492 | - | 17,906 | 17,906 |
| **Direct** | 428,746 | 6,426,571 | 6,855,317 | 439,476 | 6,560,371 | 6,989,847 | 19,983 | 279,109 | 299,092 | 437,903 | 6,851,034 | 7,288,939 |
| Supplemental Approp. (P.L. 111-230) | - | 10,000 | 10,000 | - | - | - | - | - | - | - | - | - |
| Vaccine Injury Fund | - | 5,428 | 5,428 | - | 4,785 | 4,785 | - | 226 | 226 | - | 5,011 | 5,011 |
| **Total** | 428,746 | 6,441,999 | 6,870,745 | 439,476 | 6,565,156 | 6,994,632 | 19,983 | 279,335 | 299,318 | 437,903 | 6,856,047 | 7,293,950 |

1/ For FY 2010, the enacted mandatory level was $428,746; actual mandatory spending was $403,779.
2/ The FY 2011 assumed appropriations level is based on the funding anomaly for the judiciary included in the FY 2011 full-year continuing resolution (H.R. 3082) passed by the House of Representatives on December 8, 2010.
3/ For FY 2011, the requested mandatory level was $429,476; projected mandatory spending is $417,778.

## The Judiciary
### Summary of Mandatory Costs

| | FY 2010 Actual [1] | | FY 2011 Assumed [2] | | FY 2012 Change | | FY 2012 Request | |
|---|---|---|---|---|---|---|---|---|
| | Authorized Positions | Amount ($000) | Authorized Positions | Amount ($000) | Authorized Positions | Amount ($000) | Authorized Positions | Amount ($000) |
| Supreme Court | 9 | 2,119 | 9 | 2,197 | - | - | 9 | 2,197 |
| Court of Appeals for the Federal Circuit | 12 | 2,491 | 12 | 2,502 | - | 11 | 12 | 2,513 |
| Court of International Trade | 9 | 1,703 | 9 | 1,709 | - | 9 | 9 | 1,718 |
| Courts of Appeals, District Courts and Other Judicial Services | 1,197 | 320,091 | 1,196 | 321,009 | - | 6,698 | 1,196 | 327,707 |
| Payment to Judiciary Trust Funds | - | 82,374 | - | 90,361 | - | 13,406 | - | 103,768 |
| **Total** | 1,227 | 408,779 | 1,226 | 417,778 | - | 20,125 | 1,226 | 437,903 |

1/ Fiscal Year 2010 amounts reflect the actual spending; the enacted mandatory level is $428,746.
2/ Fiscal Year 2011 amounts reflects the planned spending, the requested mandatory level is $429,476.

**Summary of Personnel**

| Full Time Equivalents by Account | FY 2010 Actual FTEs | FY 2011 Assumed FTEs | FY 2012 Request Increase FTEs | FY 2012 Request Total FTEs |
|---|---|---|---|---|
| *Direct Positions* | | | | |
| Supreme Court | | | | |
| Salaries and Expenses | 485 | 485 | 9 | 494 |
| Buildings and Grounds | 38 | 48 | 1 | 49 |
| Court of Appeals for the Fed. Circuit | 142 | 157 | 1 | 158 |
| Court of International Trade | 77 | 80 | - | 80 |
| Courts of Appeals, District Courts and Other Judicial Services | | | | |
| Salaries and Expenses | 30,025 | 30,616 | 390 | 31,006 |
| Defender Services | 2,673 | 2,826 | 115 | 2,941 |
| Fees of Jurors and Commissioners | - | - | - | - |
| Court Security | 56 | 71 | 4 | 75 |
| *Subtotal* | *32,734* | *33,513* | *509* | *34,022* |
| Administrative Office of the U.S. Courts | 635 | 639 | 2 | 641 |
| Federal Judicial Center | 138 | 140 | 1 | 141 |
| Payment to Judicial Retirement Funds | - | - | - | - |
| Sentencing Commission | 110 | 110 | - | 110 |
| **Grand Total** | **34,379** | **35,172** | **513** | **35,695** |
| *Reimbursable Positions* | | | | |
| Supreme Court | | | | |
| Salaries and Expenses | - | - | - | - |
| Buildings and Grounds | - | - | - | - |
| Court of Appeals for the Fed. Circuit | - | - | - | - |
| Court of International Trade | - | - | - | - |
| Courts of Appeals, District Courts and Other Judicial Services | | | | |
| Salaries and Expenses | 26 | 26 | - | 26 |
| Defender Services | - | - | - | - |
| Fees of Jurors and Commissioners | - | - | - | - |
| Court Security | - | - | - | - |
| *Subtotal* | *26* | *26* | *-* | *26* |
| Administrative Office of the U.S. Courts | 252 | 257 | 2 | 259 |
| Federal Judicial Center | 1 | 1 | - | 1 |
| Payment to Judicial Retirement Funds | - | - | - | - |
| Sentencing Commission | - | - | - | - |
| Violent Crime Reduction Trust Fund | - | - | - | - |
| **Grand Total** | **279** | **284** | **2** | **286** |

| FY 2011 Summary of Requested Changes | Supreme Court FTE | Supreme Court ($000) | Federal Circuit FTE | Federal Circuit ($000) | International Trade FTE | International Trade ($000) | Salaries and Expenses FTE | Salaries and Expenses ($000) | Defender Services FTE | Defender Services ($000) | Fees of Jurors and Commissioners FTE | Fees of Jurors and Commissioners ($000) | Court Security FTE | Court Security ($000) | Subtotal FTE | Subtotal ($000) | Administrative Office FTE | Administrative Office ($000) | Fed. Judicial Center FTE | Fed. Judicial Center ($000) | Judiciary Trust Fund ($000) | Sentencing Commission FTE | Sentencing Commission ($000) | Total Judiciary FTE | Total Judiciary ($000) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES | | | | | | | | | | | | | | | | | |
| FY 2011 Enacted Appropriation | 533 | 84,610 | 157 | 34,135 | 80 | 22,182 | 30,616 | 5,042,158 | 2,826 | 1,044,072 | | 52,410 | 71 | 485,656 | 33,513 | 6,627,085 | 639 | 85,242 | 140 | 28,087 | 90,561 | 110 | 17,414 | 35,172 | 6,893,647 |
| FY 2011 Vacature Req'd (Trans)/Fund | | | | | | | | 4,791 | | | | | | | | 4,791 | | | | | | | | | 4,791 |
| FY 2011 Available Appropriations Base | 533 | 84,610 | 157 | 34,135 | 80 | 22,182 | 30,616 | 5,046,593 | 2,826 | 1,044,072 | | 52,410 | 71 | 485,656 | 33,513 | 6,631,871 | 639 | 85,981 | 140 | 28,087 | 90,561 | 110 | 17,414 | 35,172 | 6,994,632 |
| **FY 2011 Adjustments to Base** | | | | | | | | | | | | | | | | | | | | | | | | | |
| **Judge** | | | | | | | | | | | | | | | | | | | | | | | | | |
| Pay and benefit cost adjustments | | 1,357 | | 161 | | 193 | | 26,711 | | 3,699 | | | | | | 28,820 | | 1,639 | | 126 | | | 323 | | 32,658 |
| Additional senior judges | | | | | | | | | | | | | | | | | | | | | | | | 104 | 13,372 |
| New senior judge staff | | | | 11 | | 9 | | | | | | | | | | | | | | | | | | | 128 |
| Increase in average number of filled Article III judgeships | | | | | | | | 1,620 | | | | | | | | 1,620 | | | | | | | | 13 | 1,620 |
| Non-recurring costs of new 2011 judges | | | | | | | | (1,031) | | | | | | | | (1,031) | | | | | | | | | (1,031) |
| Payments to Judiciary retirement trust funds | | | | | | | | | | | | | | | | | | 13,406 | | | | | | | 13,406 |
| **Court Personnel** | | | | | | | | | | | | | | | | | | | | | | | | | |
| Pay and benefit cost adjustments | | | | | | | | | | | | | | | | | | | | | | | | | |
| **Other Changes** | | | | | | | | | | | | | | | | | | | | | | | | | |
| Financing (adj. necessary to maximum current service | | 481 | | 129 | | 412 | | 80,855 | | 10,784 | 7,956 | | | 6,345 | | 98,578 | | 397 | | 126 | | | 167 | | 99,951 |
| Inflation (non-space related) | | | | | | | | 14,561 | | 2,355 | 113 | | 66 | 19,974 | | 17,687 | | 112 | | 150 | | | | | 18,119 |
| Vacture Injury Trust Fund adjustment | | | | | | | | 204 | | | | | | 1,245 | | 324 | | | | | | | | | 324 |
| Space rental costs (includes inflation for space rental rent) | | 385 | | | | | | 15,653 | | 780 | | | 91 | 4,750 | | 16,441 | | | | | | | | | 17,076 |
| Information technology adjustments for ongoing operations | | | | | | | | 1,987 | | | | | | (7,310) | | 1,987 | | | | | | | | 54 | 1,987 |
| Annualization of new FY 2011 positions | | | | | | | | 9,232 | | | | | | (779) | | 9,232 | | | | | | | | 61 | 9,232 |
| Defender Services workload increase | | | | | | | | 23,558 | | 23,558 | | | | | | 23,558 | | | | | | | | | 23,558 |
| Change in available jurors | | | | | | 73 | | | | | (757) | | | | | (757) | | | | | | | | | (757) |
| FY11 security service charges | | | | | | | | | | | | | 6,345 | | | 6,345 | | | | | | | | | 6,345 |
| FY 2010 court security officer wage adjustments | | | | | | | | | | | | | 19,974 | | | 19,974 | | | | | | | | | 18,918 |
| Annualization of new FY 2011 court security officers (10) | | | | | | | | | | | | | 1,245 | | | 1,245 | | | | | | | | | 1,245 |
| Additional court security officers in FY 2011 (50) | | | | | | | | | | | | | 4,750 | | | 4,750 | | | | | | | | | 4,750 |
| Adjustments to base for security systems and equipment | | (3,376) | | | | | | | | | | | (7,310) | | | (7,310) | | | | | | | | | (7,310) |
| Adjustments to base for program administration (cost ownflag) | | (1,576) | | | | | | | | | | | (779) | | | (779) | | | | | | | | | (6,155) |
| Subtotal, FY 2011 Adjustments to Base | | | | 1,614 | | 709 | 117 | 156,051 | 115 | 54,773 | 7,317 | | 22,964 | | 322 | 241,308 | | 2,149 | | 376 | 13,408 | 491 | | 333 | 257,017 |
| **FY 2011 Adjusted Base** | 533 | 83,072 | 158 | 35,139 | 80 | 22,891 | 30,733 | 5,203,095 | 2,941 | 1,099,445 | 59,727 | | 71 | 511,402 | 33,245 | 6,873,159 | 639 | 88,131 | 140 | 28,363 | 103,763 | 110 | 17,906 | 35,405 | 7,251,649 |
| **FY 2011 Program Increase** | | | | | | | | | | | | | | | | | | | | | | | | | |
| **Judges** | | | | | | | | | | | | | | | | | | | | | | | | | |
| Magistrate judges and staff | | | | | | | 16 | 2,360 | | | | | | | 16 | 2,360 | | | | | | | | 16 | 2,360 |
| **Court Personnel and Programs** | | | | | | | | | | | | | | | | | | | | | | | | | |
| New court support staff for workload increases | | | | | | | 257 | 21,134 | | | | | | | 257 | 21,134 | | | | | | | | 257 | 21,134 |
| Information technology adjustments | | | | | | | | 13,876 | | | | | | | | 13,876 | | | | | | | | | 13,876 |
| New Federal defender organization | | | | | | | | | | 300 | | | | | | 300 | | | | | | | | | 300 |
| National contract for vehicle barrier maintenance (Re-Request from FY 2011) | | | | | | | | 720 | | | | | | | | 720 | | | | | | | | | 720 |
| Partial recognition systems pilot (Re-Request from FY 2011) | | | | | | | | 200 | | | | | | | | 200 | | | | | | | | | 200 |
| Wireless Reserve 2011 | | | | | | | | 194 | | | | | | 4 | | 194 | | | | | | | | | 194 |
| Seven new judiciary-funded USMS positions (funded for 6 months) | | | | | | | | 514 | | | | | | | | 514 | | | | | | | | 9 | 514 |
| Twelve new police officers | 9 | 658 | | | | | | | | | | | | | | | | | | | | | | | 658 |
| Support payment for new police officers | 5 | 340 | | | | | | | | | | | | | | | | | | | | | | | 340 |
| Additional personnel | 2 | 85 | | | | | | | | | | | | | | | | 2 | 324 | | | | | 3 | 409 |
| Education and training program enhancement | | | | | | | | | | | | | | | | | | 1 | 666 | | | | | 1 | 666 |
| Subtotal, FY 2011 Program Increases | 16 | 983 | | | | | 273 | 37,573 | | 300 | | | 4 | 1,694 | 509 | 39,558 | | 3 | 324 | | | 290 | | 390 | 41,583 |
| **Total Increase Requested, FY 2011** | 16 | (555) | | 1,614 | | 709 | 390 | 194,224 | 115 | 34,673 | 7,317 | | 75 | 511,698 | 34,031 | 280,866 | | 2,473 | | 942 | 13,408 | 513 | 492 | 299,316 | |
| **FY 2011 Appropriations Request** | 543 | 84,055 | 158 | 35,139 | 80 | 22,891 | 31,006 | 5,240,172 | 3,241 | 1,094,541 | 59,727 | | 75 | 511,698 | 34,031 | 6,912,703 | 641 | 88,455 | 143 | 29,053 | 103,768 | 110 | 17,906 | 35,695 | 7,592,960 |

The Judiciary FTE usage do not reflect reimbursable positions (379 in FY 2010, 384 in FY 2011, and 396 in FY 2012)

Summary - 7

## THE JUDICIARY
### COMPARATIVE SUMMARY OF OBLIGATIONS BY OBJECT CLASSIFICATION
### (IN THOUSANDS OF DOLLARS)

| Object Classification | FY 2010 Actual | FY 2011 Assumed | FY 2012 Request |
|---|---|---|---|
| **Personal Services and benefits** | | | |
| 11 Personal compensation | 3,118,985 | 3,248,878 | 3,323,568 |
| 12 Personnel benefits | 901,574 | 971,755 | 996,501 |
| 13 Benefits for former personnel | 6,072 | 6,541 | 6,690 |
| Total personnel services and benefits | 4,046,631 | 4,227,174 | 4,326,759 |
| | | | |
| **Contractual services and supplies** | | | |
| 21 Travel | 111,735 | 116,910 | 118,416 |
| 22 Transportation of things | 6,995 | 7,842 | 8,004 |
| 23 Rental payments to GSA | 1,066,913 | 1,031,984 | 1,052,139 |
| 23 Rental payments to others | 31,558 | 32,072 | 35,275 |
| 23 Communications utilities & misc. charges | 128,341 | 131,089 | 133,941 |
| 24 Printing and reproduction | 18,738 | 19,491 | 19,894 |
| 25 Other services | 1,425,894 | 1,526,354 | 1,572,021 |
| 26 Supplies and materials | 30,716 | 32,784 | 33,779 |
| Total contractual services and supplies | 2,760,899 | 2,898,525 | 2,973,470 |
| | | | |
| **Acquisition of capital assets** | | | |
| 31 Equipment | 236,037 | 302,643 | 306,354 |
| 32 Lands and Structures | 2,235 | 2,120 | 2,920 |
| Total acquisition of capital assets | 238,272 | 304,763 | 309,274 |
| | | | |
| **Grants and fixed charges** | | | |
| 41 Grants, subsidies and contributions | 128,405 | 135,400 | 143,500 |
| 42 Insurance claims and indemnities | - | - | - |
| 43 Interest and dividends | - | - | - |
| Total grants and fixed charges | 128,405 | 135,400 | 143,500 |
| | | | |
| **Total obligations** | 7,174,198 | 7,565,862 | 7,753,003 |
| Unobligated balance, start-of-year | (393,038) | (282,211) | (161,684) |
| Unobligated balance, end-of-year | 282,211 | 161,684 | 14,446 |
| Unobligated balance, expiring | 7,523 | - | - |
| Emergency Appropriation | (46) | | |
| Current Year Offsetting Collections | (164,722) | (448,349) | (311,814) |
| Information Technology Fund | (916) | (1,340) | - |
| Prior Year Recoveries | (35,379) | (1,014) | - |
| Transfer | 916 | | |
| **Appropriations, Enacted** | 6,870,745 | 6,994,632 | 7,293,950 |

Detailed tables by fiscal year and appropriation follow

THE JUDICIARY
COMPARATIVE SUMMARY OF OBLIGATIONS BY OBJECT CLASSIFICATION ($000)
Fiscal Year 2010

| Other Classification | Supreme Court | Ct of Appeals Federal Cr | Ct. of fins'l Trade | Salaries and Expenses | Defender Services | Fees of Jurors | Court Security | Administrative Office Direct Program[1] | Administrative Office Reimbursable Program[1] | Federal Judicial Ctr | Judiciary Trust Funds | Sentencing Commission | Vaccine Injury Trust Fund Supplemental | Total Judiciary |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Personal Services and benefits** | | | | | | | | | | | | | | |
| 11 Personnel compensation | 43,792 | 14,792 | 7,523 | 2,658,042 | 277,656 | 28,053 | 6,159 | 110,708 | (31,931) | 14,192 | - | 10,006 | - | 3,138,985 |
| 12 Personnel benefits | 12,601 | 3,060 | 1,732 | 776,545 | 80,097 | - | 1,656 | 27,420 | (8,110) | 3,739 | - | 2,834 | - | 901,574 |
| 13 Benefits for former personnel | 8 | 10 | - | 5,872 | 143 | - | - | 39 | - | - | - | - | - | 6,072 |
| Total personnel services and benefits | 56,401 | 17,862 | 9,255 | 3,440,459 | 357,896 | 28,053 | 7,815 | 138,167 | (40,041) | 17,931 | - | 12,840 | - | 4,046,631 |
| **Contractual services and supplies** | | | | | | | | | | | | | | |
| 21 Travel | 430 | 171 | 129 | 64,879 | 10,842 | 27,052 | 385 | 1,469 | (245) | 5,800 | - | 822 | - | 111,735 |
| 22 Transportation of things | 68 | 84 | 15 | 6,289 | 328 | - | 88 | 47 | - | 51 | - | 25 | - | 6,995 |
| 23 Rental payments to GSA | - | 5,108 | 9,000 | 949,764 | 37,234 | - | 5,807 | - | - | - | - | - | - | 1,006,913 |
| 23 Rental payments to others | - | - | - | 31,486 | - | - | - | - | - | - | - | 72 | - | 31,558 |
| 23 Communications utilities & misc. charges | 2,457 | 384 | 144 | 115,865 | 6,302 | 1,609 | 910 | 519 | (337) | 516 | - | - | - | 128,341 |
| 24 Printing and reproduction | 451 | 127 | 4 | 17,491 | 293 | - | 7 | 117 | - | 43 | - | 235 | - | 18,738 |
| 25 Other services | 19,195 | 4,876 | 1,701 | 469,789 | 420,104 | 816 | 419,590 | 5,477 | (1,843) | 1,577 | 82,374 | 2,240 | - | 1,425,894 |
| 26 Supplies and materials | 1,965 | 153 | 60 | 23,462 | 1,977 | 1,030 | 783 | 505 | (197) | 914 | - | 64 | - | 30,716 |
| Total contractual services and supplies | 24,564 | 10,803 | 11,053 | 1,679,025 | 477,122 | 30,507 | 427,570 | 8,134 | (2,621) | 8,990 | 82,374 | 3,458 | - | 2,760,890 |
| **Acquisition of capital assets** | | | | | | | | | | | | | | |
| 31 Equipment | 5,531 | 2,557 | 1,105 | 191,126 | 8,672 | - | 24,460 | 2,175 | (1,079) | 1,032 | - | 458 | - | 236,037 |
| 32 Lands and Structures | 2,235 | - | - | - | - | - | - | - | - | - | - | - | - | 2,235 |
| Total acquisition of capital assets | 7,766 | 2,557 | 1,105 | 191,126 | 8,672 | - | 24,460 | 2,175 | (1,079) | 1,032 | - | 458 | - | 238,272 |
| **Grants and fixed charges** | | | | | | | | | | | | | | |
| 41 Grants, subsidies and contributions | - | - | - | - | 128,405 | - | - | - | - | - | - | - | - | 128,405 |
| 42 Insurance claims and indemnities | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 43 Interest and dividends | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total grants and fixed charges | - | - | - | - | 128,405 | - | - | - | - | - | - | - | - | 128,405 |
| FY 2010 Total Obligations | 88,731 | 31,222 | 21,413 | 5,316,610 | 971,095 | 58,560 | 459,845 | 148,476 | (43,749) | 27,865 | 82,374 | 16,756 | - | 7,174,198 |
| Unobligated balance, start-of-year | (34,331) | (152) | (924) | (320,540) | (6,365) | (5,323) | (22,603) | - | - | - | - | (2,748) | - | (393,038) |
| Unobligated balance, end-of-year | 31,937 | 1,040 | 790 | 205,000 | 19,771 | 7,959 | 12,963 | - | - | - | - | 2,748 | - | 282,211 |
| Unobligated balance, expiring | 2,274 | 494 | 71 | - | - | 4,662 | - | - | - | - | - | 81 | - | 7,523 |
| Supplemental | - | (46) | - | - | - | - | - | (46) | - | - | - | - | - | (46) |
| Current Year Offsetting Collections | - | - | - | (142,533) | - | - | - | (21,656) | - | (537) | - | - | - | (164,722) |
| Prior Year Recoveries | - | - | - | (26,091) | (7,753) | 665 | (2,200) | - | - | - | - | - | - | (35,379) |
| Information Technology Fund | - | (916) | - | - | - | - | - | - | - | - | - | - | - | (916) |
| Vaccine Injury Compensation Trust Fund | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Transfer | - | 916 | - | (5,428) | - | - | - | (43,749) | 43,749 | - | - | - | 5,428 | 916 |
| Reimbursable Program[1] | - | - | - | - | - | - | - | 43,749 | - | - | - | - | - | - |
| FY 2010 Appropriation, Available | 88,559 | 32,560 | 21,350 | 5,021,018 | 977,748 | 61,861 | 452,607 | 83,075 | - | 17,328 | 82,374 | 16,837 | - | 6,870,745 |
| Available Supplemental | - | - | - | (10,000) | - | - | - | - | - | - | - | - | 5,428 | (10,000) |
| FY 2010 Appropriations, Enacted | 88,559 | 32,560 | 21,350 | 5,011,018 | 977,748 | 61,861 | 452,607 | 83,075 | - | 17,328 | 82,374 | 16,837 | 5,428 | 6,860,745 |

[1] More information on AO reimbursable program obligations is included in section 9.

Summary - 9

THE JUDICIARY
COMPARATIVE SUMMARY OF OBLIGATIONS BY OBJECT CLASSIFICATION ($000)
Fiscal Year 2011

| Object Classification | Supreme Court | Ct of Appeals Federal Cir | Ct of Int'l Trade | Salaries and Expenses | Defender Services | Fees of Jurors | Court Security | Administrative Office | | Federal Judicial Ctr | Judiciary Trust Funds | Sentencing Commission | Vaccine Injury Trust Fund | Total Judiciary |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Direct Program | Reimbursable Program [1] | | | | | |
| **Personal Services and benefits** | | | | | | | | | | | | | | |
| 11 Personnel compensation | 44,098 | 16,632 | 8,190 | 2,743,062 | 295,600 | 28,618 | 7,175 | 114,903 | (33,462) | 14,843 | - | 10,259 | - | 3,248,878 |
| 12 Personnel benefits | 14,851 | 3,990 | 1,872 | 836,168 | 85,000 | 6 | 1,982 | 29,273 | (8,479) | 4,077 | - | 3,015 | - | 971,755 |
| 13 Benefits for former personnel | 32 | 10 | - | 6,250 | 175 | - | - | 34 | - | - | - | - | - | 6,541 |
| Total personnel services and benefits | 58,981 | 20,632 | 10,062 | 3,585,520 | 380,575 | 28,624 | 9,157 | 143,310 | (41,881) | 18,920 | - | 13,274 | - | 4,227,174 |
| **Contractual services and supplies** | | | | | | | | | | | | | | |
| 21 Travel | 488 | 175 | 155 | 67,078 | 11,800 | 28,771 | 455 | 1,760 | (475) | 5,841 | - | 862 | - | 116,910 |
| 22 Transportation of things | 61 | 53 | 25 | 7,091 | 410 | - | 58 | 59 | - | 60 | - | 25 | - | 7,842 |
| 23 Rental payments to GSA | - | 6,725 | 8,909 | 970,720 | 40,000 | - | 5,230 | - | - | - | - | - | - | 1,031,984 |
| 23 Rental payments to others | - | - | - | 31,992 | 80 | - | - | - | - | - | - | - | - | 32,072 |
| 24 Communications utilities & misc. charges | 2,465 | 294 | 215 | 117,465 | 7,200 | 1,312 | 933 | 884 | (430) | 578 | - | 75 | - | 131,089 |
| 24 Printing and reproduction | 520 | 130 | 5 | 17,913 | 492 | - | 6 | 117 | - | 76 | - | 232 | - | 16,491 |
| 25 Other services | 20,985 | 5,027 | 2,375 | 490,756 | 469,600 | 560 | 435,773 | 6,176 | (2,344) | 1,789 | 90,361 | 2,596 | - | 1,520,354 |
| 26 Supplies and materials | 1,800 | 160 | 87 | 23,360 | 2,500 | 1,102 | 517 | 569 | (324) | 948 | - | 65 | - | 31,284 |
| Total contractual services and supplies | 26,319 | 12,564 | 11,771 | 1,731,377 | 532,282 | 31,745 | 442,972 | 9,565 | (3,573) | 9,292 | 90,361 | 3,855 | - | 2,890,525 |
| **Acquisition of capital assets** | | | | | | | | | | | | | | |
| 31 Equipment | 5,556 | 1,609 | 848 | 225,561 | 16,600 | - | 49,270 | 3,098 | (975) | 429 | - | 647 | - | 302,045 |
| 32 Lands and Structures | 2,120 | - | - | - | - | - | - | - | - | - | - | - | - | 2,120 |
| Total acquisition of capital assets | 7,676 | 1,609 | 848 | 225,561 | 16,600 | - | 49,270 | 3,098 | (975) | 429 | - | 647 | - | 304,763 |
| **Grants and fixed charges** | | | | | | | | | | | | | | |
| 41 Grants, subsidies and contributions | - | - | - | - | 135,400 | - | - | - | - | - | - | - | - | 135,400 |
| 42 Insurance claims and indemnities | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 43 Interest and dividends | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total grants and fixed charges | - | - | - | - | 135,400 | - | - | - | - | - | - | - | - | 135,400 |
| FY 2011 Total Obligations | 92,976 | 34,805 | 23,481 | 5,542,453 | 1,064,857 | 60,369 | 501,399 | 155,973 | (46,429) | 28,641 | 90,361 | 17,776 | - | 7,565,862 |
| Unobligated balance, start-of-year | (31,937) | (1,040) | (790) | (205,000) | (19,771) | (7,959) | (12,903) | - | - | - | - | (2,748) | - | (282,211) |
| Unobligated balance, end-of-year | 23,571 | 436 | 291 | 123,000 | 10,000 | - | - | (1,340) | 46,429 | - | - | 2,386 | - | 161,684 |
| Unobligated balance, expired | - | (73) | - | (415,500) | (10,000) | - | - | (22,222) | - | (554) | - | - | - | (448,349) |
| Current Year Offsetting Collections | - | - | - | (4,785) | - | - | - | (1,340) | - | - | - | - | - | (1,340) |
| Vaccine Injury Compensation Trust Fund | - | - | - | - | - | - | - | - | - | - | - | - | 4,785 | 4,785 |
| Information Technology Fund | - | - | - | - | - | - | - | (46,429) | 46,429 | - | - | - | - | - |
| Reimbursable Program [1] | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Anticipated Prior Year Recoveries | - | - | - | (1,014) | (1,014) | - | - | - | - | - | - | - | - | (1,014) |
| FY 2011 Appropriations, Available | 84,610 | 34,126 | 23,182 | 5,042,168 | 1,044,072 | 52,410 | 488,436 | 85,982 | - | 28,087 | 90,361 | 17,414 | 4,785 | 6,994,632 |
| Rescissions | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| FY 2011 Appropriations, Assumed | 84,610 | 34,126 | 23,182 | 5,042,168 | 1,044,072 | 52,410 | 488,436 | 85,982 | - | 28,087 | 90,361 | 17,414 | 4,785 | 6,994,632 |

More information on AO reimbursable program obligations is included in section 9.

Summary - 10

THE JUDICIARY
COMPARATIVE SUMMARY OF OBLIGATIONS BY OBJECT CLASSIFICATION ($000)

Fiscal Year 2012

| Object Classification | Supreme Court | Ct of Appeals Federal Cir | Ct. of Int'l Trade | Salaries and Expenses | Defender Services | Fees of Jurors | Court Security | Administrative Office — Direct Program [1] | Administrative Office — Reimbursable Program [1] | Federal Judicial Ctr | Judiciary Trust Funds | Sentencing Commission | Vaccine Injury Trust Fund | Total Judiciary |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Personal Services and benefits** | | | | | | | | | | | | | | |
| 11 Personnel compensation | 44,676 | 16,925 | 8,310 | 2,799,321 | 311,500 | 28,314 | 7,417 | 116,370 | (34,532) | 14,918 | - | 10,349 | - | 3,323,568 |
| 12 Personnel benefits | 16,290 | 4,049 | 1,948 | 853,275 | 90,580 | 6 | 2,053 | 29,799 | (8,811) | 4,158 | - | 3,238 | - | 996,501 |
| 13 Benefits for former personnel | 32 | 10 | - | 6,419 | 195 | - | 34 | - | - | - | - | - | - | 6,690 |
| Total personal services and benefits | 60,998 | 20,984 | 10,258 | 3,659,015 | 402,195 | 28,320 | 9,470 | 146,203 | (43,347) | 19,076 | - | 13,587 | - | 4,326,759 |
| **Contractual services and supplies** | | | | | | | | | | | | | | |
| 21 Travel | 499 | 180 | 158 | 68,450 | 12,100 | 28,465 | 480 | 1,797 | (623) | 6,147 | - | 765 | - | 118,416 |
| 22 Transportation of things | 67 | 30 | 26 | 7,236 | 440 | - | 58 | 60 | - | 61 | - | 26 | - | 8,004 |
| 23 Rental payments to GSA | - | 7,310 | 8,309 | 987,895 | 42,700 | - | 5,325 | - | - | - | - | - | - | 1,052,139 |
| 23 Rental payments to others | - | - | - | 35,190 | 85 | - | - | - | - | - | - | - | - | 35,275 |
| 23 Communications utilities & misc. charges | 2,579 | 304 | 219 | 119,866 | 7,500 | 1,298 | 947 | 901 | (434) | 584 | - | 77 | - | 133,941 |
| 24 Printing and reproduction | 528 | 134 | 6 | 18,279 | 505 | 554 | 6 | 122 | - | 77 | - | 237 | - | 19,894 |
| 25 Other services | 18,628 | 5,078 | 2,775 | 503,857 | 480,100 | 1,090 | 447,968 | 6,304 | (2,636) | 1,754 | 103,768 | 3,871 | - | 1,572,021 |
| 26 Supplies and materials | 1,920 | 165 | 99 | 25,879 | 2,600 | - | 522 | 582 | (215) | 1,071 | - | 66 | - | 33,779 |
| Total contractual services and supplies | 24,321 | 13,201 | 12,192 | 1,766,652 | 546,030 | 31,407 | 455,306 | 9,766 | (3,910) | 9,695 | 103,768 | 5,042 | - | 2,973,470 |
| **Acquisition of capital assets** | | | | | | | | | | | | | | |
| 31 Equipment | 4,941 | 1,416 | 732 | 230,176 | 17,020 | - | 48,282 | 1,794 | (226) | 536 | - | 1,663 | - | 306,354 |
| 32 Lands and Structures | 2,920 | - | - | - | - | - | - | - | - | - | - | - | - | 2,920 |
| Total acquisition of capital assets | 7,861 | 1,416 | 732 | 230,176 | 17,020 | - | 48,282 | 1,794 | (226) | 536 | - | 1,663 | - | 309,274 |
| **Grants and fixed charges** | | | | | | | | | | | | | | |
| 41 Grants, subsidies and contributions | - | - | - | - | 143,500 | - | - | - | - | - | - | - | - | 143,500 |
| 42 Insurance claims and indemnities | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 43 Interest and dividends | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total grants and fixed charges | - | - | - | - | 143,500 | - | - | - | - | - | - | - | - | 143,500 |
| **FY 2012 Total Obligations** | 93,180 | 35,621 | 23,182 | 5,655,843 | 1,108,745 | 59,727 | 513,058 | 157,763 | (47,483) | 29,307 | 103,768 | 20,292 | 5,011 | 7,255,003 |
| Unobligated balance, start-of-year | (23,571) | (416) | (291) | (125,000) | (10,000) | - | - | - | - | - | - | (2,386) | - | (161,684) |
| Unobligated balance, end-of-year | 14,446 | - | - | - | - | - | - | - | - | - | - | - | - | 14,446 |
| Current Year Offsetting Collections | (46) | - | - | (289,665) | - | - | - | (21,825) | - | (279) | - | - | - | (311,814) |
| Vaccine Injury Compensation Trust Fund | - | - | - | - | - | - | - | - | - | - | - | - | 5,011 | 5,011 |
| Reimbursable Program [1] | - | - | - | (5,011) | - | - | - | (47,483) | 47,483 | - | - | - | - | - |
| FY 2012 Appropriations, Available | 84,055 | 35,159 | 22,891 | 5,236,166 | 1,098,745 | 59,727 | 513,058 | 88,455 | 47,483 | 29,019 | 103,768 | 17,906 | 5,011 | 7,253,990 |

[1] More information on AO reimbursable program obligations is included in section 9

**THE JUDICIARY**

**Outlays - FY 2010 to FY 2012**

(Dollars in Thousands)

| Appropriation | FY 2010 | FY 2011 1/ | FY 2012 1/ | Outlay Spendout Rates | | |
|---|---|---|---|---|---|---|
| | | | | YR 1 | YR 2 | YR 3 |
| **Supreme Court** | | | | | | |
| Discretionary | 69,779 | 73,665 | 73,447 | 80% | 20% | 0% |
| Mandatory | 2,119 | 2,197 | 2,197 | 100% | 0% | 0% |
| **Total, Salaries and Expenses** | 71,898 | 75,662 | 75,644 | 68% | 12% | 20% |
| | | | | | | |
| Buildings and Grounds | 27,706 | 27,906 | 20,393 | 68% | 12% | 20% |
| | | | | | | |
| **Court of Appeals for the Federal Circuit** | | | | | | |
| Discretionary | 28,262 | 35,864 | 32,065 | 80% | 20% | 0% |
| Mandatory | 2,491 | 2,502 | 2,513 | 100% | 0% | 0% |
| **Total, Court of Appeals for the Federal Circuit** | 30,753 | 38,366 | 34,578 | | | |
| | | | | | | |
| **Court of International Trade** | | | | | | |
| Discretionary | 19,507 | 20,720 | 21,937 | 95% | 5% | 0% |
| Mandatory | 1,703 | 1,709 | 1,718 | 100% | 0% | 0% |
| **Total, Court of International Trade** | 21,210 | 22,429 | 23,655 | | | |
| | | | | | | |
| **Courts of Appeals, District Courts, and Other Judicial Services** | | | | | | |
| Salaries and Expenses - Discretionary | 4,771,774 | 4,757,760 | 4,900,068 | 93% | 7% | 0% |
| Salaries and Expenses - Mandatory | 320,091 | 321,009 | 327,707 | 100% | 0% | 0% |
| **Total, Salaries and Expenses** | 5,091,865 | 5,078,769 | 5,227,775 | | | |
| Defender Services | 972,449 | 1,056,800 | 1,097,280 | 97% | 3% | 0% |
| Fees of Jurors & Commissioners | 50,058 | 55,066 | 67,934 | 99.5% | 0.5% | 0% |
| Court Security | 452,448 | 460,000 | 503,691 | 63.3% | 36.7% | 0% |
| *Total, Courts of Appeals, District Courts, and Other Judicial Services* | 6,579,540 | 6,659,635 | 6,896,680 | | | |
| | | | | | | |
| **Administrative Office of the United States Courts** | 85,316 | 82,294 | 88,754 | 94% | 6% | 0% |
| | | | | | | |
| Federal Judicial Center | 27,435 | 28,309 | 29,210 | 95% | 5% | 0% |
| | | | | | | |
| Judicial Retirement Funds (MANDATORY) | 82,374 | 90,361 | 103,768 | 100% | 0% | 0% |
| | | | | | | |
| **United States Sentencing Commission** | 16,833 | 17,333 | 19,649 | 85% | 15% | 0% |
| | | | | | | |
| Subtotal, Discretionary | 6,534,287 | 6,615,417 | 6,854,348 | | | |
| Subtotal, Mandatory | 408,779 | 417,778 | 437,903 | | | |
| | | | | | | |
| **Total, Judiciary** | 6,943,066 | 7,033,195 | 7,292,251 | | | |

1/ Mandatory amounts for fiscal years 2011 and 2012 reflect planned outlay levels.

354

**SUPREME COURT OF THE UNITED STATES**
**SUMMARY STATEMENT RELATING APPROPRIATION ESTIMATES TO THE CURRENT APPROPRIATION**

Fiscal Year 2011 Assumed Appropriation                                                                    $84,610,000

|  | Requirements | | |
|---|---|---|---|
|  | 2011 | 2012 | |
|  | Assumed Appropriation | Requested Appropriation | Requested Increase/Decrease |
| Salaries and Expenses | $76,257,000 | $75,551,000 | ($706,000) |
| Care of the Building and Grounds | $8,353,000 | $8,504,000 | $151,000 |
| Totals | $84,610,000 | $84,055,000 | ($555,000) |

Proposed Increase/Decrease from Fiscal Year 2011 Assumed Appropriation                                    ($555,000)

Total Requested Budget Authority, Fiscal Year 2012                                                        $84,055,000

1.1

1.2

**SUPREME COURT OF THE UNITED STATES**
*Salaries and Expenses*
**SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS**

| | |
|---|---|
| **Fiscal Year 2011 Assumed Appropriation** | $76,257,000 |
| **Fiscal Year 2012 Requested Appropriation** | $75,551,000 |
| **Requested Increase from Fiscal Year 2011 Appropriation** | ($706,000) |

**APPROPRIATION LANGUAGE**

**SUPREME COURT OF THE UNITED STATES**
**SALARIES AND EXPENSES**

For expenses necessary for the operation of the Supreme Court, as required by law, excluding care of the building and grounds, including purchase or hire, driving, maintenance, and operation of an automobile for the Chief Justice, not to exceed $10,000 for the purpose of transporting Associate Justices, and hire of passenger motor vehicles as authorized by 31 U.S.C. 1343 and 1344; not to exceed $10,000 for official reception and representation expenses; and for miscellaneous expenses, to be expended as the Chief Justice may approve, [$76,257,000] $75,551,000, of which $2,000,000 shall remain available until expended.

356

## SUMMARY OF REQUEST
## SUPREME COURT OF THE UNITED STATES
## SALARIES AND EXPENSES
## FISCAL YEAR 2012
(Dollar amounts in thousands)

### Fiscal Year 2012 Resource Requirements:

|  | | Mandatory | | Discretionary | | Total |
|---|---|---|---|---|---|---|
| Page No. | | FTE | Amount | FTE | Amount | FTE | Amount |
| | Fiscal Year 2011 Assumed Appropriation............ | 9 | 2,197 | 476 | 74,060 | 485 | 76,257 |
| | **Adjustments to Base to Maintain Current Services:** | | | | | | |
| | **A. Court Support Personnel and Other Programs** | | | | | | |
| | 1. Benefits cost adjustments | | | | | | |
| 1.16 | a. Health benefits increase............ | - | - | - | 190 | - | 190 |
| 1.17 | b. One less compensable day............ | - | - | - | (156) | - | (156) |
| 1.17 | c. FERS increase............ | - | - | - | 731 | - | 731 |
| 1.17 | d. Within-grade increases............ | - | - | - | 371 | - | 371 |
| 1.17 | e. Promotions and merit increases............ | - | - | - | 196 | - | 196 |
| | **B. Other Adjustments** | | | | | | |
| | 2. Inflationary adjustments | | | | | | |
| 1.17 | a. General inflationary increases............ | - | - | - | 347 | - | 347 |
| 1.18 | b. Library services............ | - | - | - | 93 | - | 93 |
| 1.18 | 3. Cost savings and reductions............ | - | - | - | (3,376) | - | (3,376) |
| | Subtotal, adjustments to base to maintain current services............ | - | - | - | (1,604) | - | (1,604) |
| | **Total Current Services Appropriation Required............** | 9 | 2,197 | 476 | 72,456 | 485 | 74,653 |

1.3

| Page No. | | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|---|
| | | FTE | Amount | FTE | Amount | FTE | Amount |
| | **C. Program Increases** | | | | | | |
| I.18 | 4. Twelve new police officer positions......... | - | - | 9 | 658 | 9 | 658 |
| I.19 | 5. Support for additional police officers......... | - | - | - | 240 | - | 240 |
| | **Subtotal, Program Increases**....... | **-** | **-** | **9** | **898** | **9** | **898** |
| | **Total Fiscal Year 2012 Appropriation Required**............... | **9** | **2,197** | **485** | **73,354** | **494** | **75,551** |
| | Total Appropriation Increase, Fiscal Year 2011 to Fiscal Year 2012............. | - | - | 9 | (706) | 9 | (706) |
| | **Financing the Fiscal Year 2012 Request:** | | | | | | |
| | **Total Appropriation Required/Estimated Obligations, Fiscal Year 2012**............ | **9** | **2,197** | **485** | **73,354** | **494** | **75,551** |

1.4

358

1.5

## SUPREME COURT OF THE UNITED STATES
## SALARIES AND EXPENSES
### Obligations by Activity ($000)

| Activity | Fiscal Year 2010 Actual | Fiscal Year 2011 Estimate | Fiscal Year 2012 Request |
|---|---|---|---|
| **Salaries and Expenses, Total Obligations** | 71,760 | 76,257 | 75,551 |
| Unobligated Balance, Start of the Year | - | - | - |
| Unobligated Balance, End of the Year | - | - | - |
| Unobligated Balance, Expiring | 2,274 | - | - |
| **Available Appropriation** | 74,034 | 76,257 | 75,551 |

### Object Classification ($000)

| Description | Fiscal Year 2010 Actual | Fiscal Year 2011 Estimate | Fiscal Year 2012 Request |
|---|---|---|---|
| 11 Personnel compensation | 40,440 | 40,696 | 41,214 |
| 12 Personnel benefits | 11,628 | 13,828 | 15,301 |
| 13 Benefits for former personnel | 8 | 32 | 32 |
| 21 Travel | 423 | 483 | 499 |
| 22 Transportation of things | 68 | 61 | 62 |
| 23 Rent, communications and utilities | 856 | 915 | 929 |
| 24 Printing and reproduction | 451 | 520 | 528 |
| 25 Other services | 10,868 | 12,775 | 10,603 |
| 26 Supplies and materials | 1,487 | 1,441 | 1,492 |
| 31 Equipment | 5,531 | 5,506 | 4,891 |
| **Total Obligations** | 71,760 | 76,257 | 75,551 |

359

1.6

## SUPREME COURT OF THE UNITED STATES
### Salaries & Expenses
### Relation of Obligations to Outlays ($000)

|  | Fiscal Year 2010 Actual | Fiscal Year 2011 Estimate | Fiscal Year 2012 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 71,760 | 76,257 | 75,551 | (706) |
| Obligated balance, start of year | 9,637 | 9,499 | 10,094 | 595 |
| Obligated balance, end of year | (9,499) | (10,094) | (10,001) | 93 |
| Net Outlays | 71,898 | 75,662 | 75,644 | (18) |

### Personnel Summary

|  | Fiscal Year 2010 Actual | Fiscal Year 2011 Estimate | Fiscal Year 2012 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total compensable workyears: Full-time equivalent employment | 485 | 485 | 494 | 9 |

1.7

## SUPREME COURT OF THE UNITED STATES
### Salaries & Expenses
### Technology Fund Obligations and Financing

| Activity | Fiscal Year 2010 Actual | Fiscal Year 2011 Estimated | Fiscal Year 2012 Request |
|---|---|---|---|
| No-Year Fund, Total Obligations | $ 2,988 | $ 1,500 | $ 1,000 |
| | | | |
| Unobligated Balance, Start of the Year | 4,529 | 3,541 | 4,041 |
| Deposits | $ 2,000 | $ 2,000 | $ 2,000 |
| Unobligated Balance, End of the Year | $ (3,541) | $ (4,041) | $ (5,041) |
| Available Appropriation | $ 2,988 | $ 1,500 | $ 1,000 |

Note:

FY 2010 Actuals : Website development project completed.
Completed Windows 7 and Desktop PC deployment project for SCINET network.

FY 2011 Projected : Begin upgrade of Windows 7 and Desktop PC for Courtside network.
SharePoint implementation continues.

FY 2012 Request : Expect to complete Windows 7 and Desktop PC deployment project for Courtside network.

1.8

CLER-0067-11-2010

## Table SC.1
## Summary of Supreme Court Cases

| Term* | Case Filings During Term | Carried Over From Prior Term | Total Cases | Original & Paid | In Forma Pauperis | Total Cases Disposed Of | Total Cases Not Disposed Of |
|---|---|---|---|---|---|---|---|
| 1970 | 3,419 | 793 | 4,212 | 1,923 | 2,289 | 3,422 | 790 |
| 1975 | 3,940 | 821 | 4,761 | 2,366 | 2,395 | 3,806 | 955 |
| 1980 | 4,174 | 970 | 5,144 | 2,773 | 2,371 | 4,255 | 889 |
| 1981 | 4,422 | 889 | 5,311 | 2,957 | 2,354 | 4,433 | 878 |
| 1982 | 4,201 | 878 | 5,079 | 2,727 | 2,352 | 4,201 | 878 |
| 1983 | 4,222 | 878 | 5,100 | 2,706 | 2,394 | 4,141 | 959 |
| 1984 | 4,047 | 959 | 5,006 | 2,590 | 2,416 | 4,261 | 745 |
| 1985 | 4,413 | 745 | 5,158 | 2,581 | 2,577 | 4,275 | 883 |
| 1986 | 4,240 | 883 | 5,123 | 2,559 | 2,564 | 4,348 | 775 |
| 1987 | 4,493 | 775 | 5,268 | 2,593 | 2,675 | 4,387 | 881 |
| 1988 | 4,776 | 881 | 5,657 | 2,599 | 3,058 | 4,829 | 828 |
| 1989 | 4,918 | 828 | 5,746 | 2,430 | 3,316 | 4,932 | 814 |
| 1990 | 5,502 | 814 | 6,316 | 2,365 | 3,951 | 5,412 | 904 |
| 1991 | 5,866 | 904 | 6,770 | 2,463 | 4,307 | 5,828 | 942 |
| 1992 | 6,308 | 942 | 7,245 | 2,463 | 4,782 | 6,356 | 889 |
| 1993 | 6,897 | 889 | 7,786 | 2,454 | 5,332 | 6,682 | 1,104 |
| 1994 | 6,996 | 1,104 | 8,100 | 2,526 | 5,574 | 7,132 | 968 |
| 1995 | 6,597 | 968 | 7,565 | 2,467 | 5,098 | 6,599 | 966 |
| 1996 | 6,634 | 966 | 7,600 | 2,435 | 5,165 | 6,689 | 911 |
| 1997 | 6,781 | 911 | 7,692 | 2,439 | 5,253 | 6,718 | 974 |
| 1998 | 7,109 | 974 | 8,083 | 2,394 | 5,689 | 7,015 | 1,068 |
| 1999 | 7,377 | 1,068 | 8,445 | 2,421 | 6,024 | 7,332 | 1,113 |
| 2000 | 7,852 | 1,113 | 8,965 | 2,314 | 6,651 | 7,713 | 1,252 |
| 2001 | 7,924 | 1,252 | 9,176 | 2,218 | 6,958 | 8,025 | 1,151 |
| 2002 | 8,255 | 1,151 | 9,406 | 2,197 | 7,209 | 8,387 | 1,069 |
| 2003 | 7,814 | 1,068 | 8,882 | 2,064 | 6,818 | 7,791 | 1,092 |
| 2004 | 7,496 | 1,092 | 8,588 | 2,045 | 6,543 | 7,503 | 1,087 |
| 2005 | 8,521 | 1,087 | 9,608 | 2,033 | 7,576 | 8,209 | 1,399 |
| 2006 | 8,857 | 1,399 | 10,256 | 2,075 | 8,181 | 8,896 | 1,361 |
| 2007 | 8,241 | 1,361 | 9,602 | 1,974 | 7,628 | 8,375 | 1,227 |
| 2008 | 7,738 | 1,228 | 8,966 | 1,945 | 7,021 | 7,824 | 1,142 |
| 2009 | 8,159 | 1,142 | 9,301 | 1,913 | 7,388 | 8,096 | 1,206 |
| 2010** | 8,508 | 1,238 | 9,736 | 2,002 | 7,597 | 8,234 | 1,502 |

*October Term 2010 corresponds with fiscal year 2011.
**Projection for full Term.

CLEH-067A-11-2010

1.9

**Table SC.2**
**Summary of Case Dispositions**

| Term | Cases Granted Review | | Cases Reviewed and Decided Without Argument During Term | Cases Granted Review During Term |
|---|---|---|---|---|
| | Argued This Term | Disposed of by Opinion | | |
| 1970 | 151 | 148 | 192 | 161 |
| 1975 | 179 | 176 | 184 | 172 |
| 1980 | 154 | 162 | 122 | 183 |
| 1981 | 184 | 170 | 126 | 201 |
| 1982 | 183 | 174 | 119 | 179 |
| 1983 | 184 | 174 | 81 | 149 |
| 1984 | 175 | 169 | 78 | 185 |
| 1985 | 171 | 171 | 106 | 187 |
| 1986 | 175 | 174 | 109 | 167 |
| 1987 | 167 | 160 | 87 | 180 |
| 1988 | 170 | 168 | 107 | 147 |
| 1989 | 146 | 146 | 80 | 123 |
| 1990 | 125 | 125 | 115 | 141 |
| 1991 | 127 | 128 | 77 | 121 |
| 1992 | 116 | 115 | 113 | 97 |
| 1993 | 99 | 99 | 70 | 99 |
| 1994 | 94 | 94 | 69 | 96 |
| 1995 | 90 | 90 | 120 | 106 |
| 1996 | 90 | 90 | 83 | 87 |
| 1997 | 96 | 94 | 61 | 90 |
| 1998 | 90 | 88 | 59 | 81 |
| 1999 | 83 | 79 | 54 | 92 |
| 2000 | 86 | 83 | 127 | 99 |
| 2001 | 88 | 86 | 72 | 88 |
| 2002 | 84 | 79 | 66 | 91 |
| 2003 | 91 | 89 | 52 | 87 |
| 2004 | 87 | 85 | 826 | 80 |
| 2005 | 90 | 82 | 105 | 78 |
| 2006 | 78 | 74 | 280 | 77 |
| 2007 | 75 | 72 | 208 | 95 |
| 2008 | 87 | 83 | 95 | 88 |
| 2009 | 82 | 77 | 96 | 78 |
| 2010* | 84 | 79 | 101 | 83 |

*Projection for full Term.

1.10

CLER-0678-11-2010

## Table SC.3
### Applications to Individual Justices, Including Capital Cases

| Term | Applications for Relief to Individual Justices | Chambers Opinions | Applications for Stay in Capital Cases* |
|---|---|---|---|
| 1971 | 1,353 | 8 | 0 |
| 1975 | 1,165 | 10 | 0 |
| 1980 | 1,096 | 11 | 32 |
| 1981 | 1,145 | 7 | 39 |
| 1982 | 1,077 | 19 | 45 |
| 1983 | 1,072 | 14 | 76 |
| 1984 | 988 | 11 | 62 |
| 1985 | 1,050 | 6 | 66 |
| 1986 | 951 | 11 | 86 |
| 1987 | 1,001 | 3 | 60 |
| 1988 | 1,064 | 5 | 90 |
| 1989 | 929 | 0 | 71 |
| 1990 | 984 | 3 | 55 |
| 1991 | 968 | 1 | 74 |
| 1992 | 974 | 2 | 76 |
| 1993 | 1,118 | 5 | 79 |
| 1994 | 982 | 5 | 82 |
| 1995 | 1,067 | 5 | 87 |
| 1996 | 935 | 1 | 110 |
| 1997 | 985 | 1 | 115 |
| 1998 | 1,100 | 0 | 133 |
| 1999 | 1,085 | 0 | 132 |
| 2000 | 1,145 | 1 | 87 |
| 2001 | 1,006 | 2 | 91 |
| 2002 | 1,096 | 3 | 99 |
| 2003 | 1,064 | 2 | 86 |
| 2004 | 1,081 | 3 | 68 |
| 2005 | 1,236 | 2 | 112 |
| 2006 | 1,243 | 2 | 71 |
| 2007 | 1,094 | 3 | 20 |
| 2008 | 1,167 | 2 | 63 |
| 2009 | 1,268 | 2 | 60 |
| 2010** | 1,275 | 4 | 55 |

* Some applications addressed to a Justice are referred to the whole Court for decision.
** Projection for full Term.

Case 1:16-cv-00745-PLF   Document 31-5   Filed 01/20/17   Page 94 of 323



365



366



SUPREME COURT OF THE US

Office of the Clerk

Cases Docketed By Type

Other
1.3%
107

Civil
30.9%
2520

Habeas Corpus
27.2%
2222

Criminal
40.6%
3310

Term Year 09

1.13



SUPREME COURT OF THE US

Office of the Clerk

Cases Argued By Type

Criminal
18.3%
15

Habeas Corpus
13.4%
11

Civil
68.3%
56

Term Year 09



SUPREME COURT OF THE US

Office of the Clerk

Cases Docketed By Type and Petitioner

Civil IFP
15.9%
1299

Civil Paid
14.7%
1196

Other Paid
1.2%
94

Other IFP
0.2%
17

Hab Corp Paid
1.5%
123

Hab Corp IFP
25.7%
2099

Criminal IFP
38.1%
3111

Criminal Paid
2.7%
220

Term Year 09

1.15

# GENERAL STATEMENT AND INFORMATION

Funds appropriated for the Supreme Court are salaries of the Chief Justice, eight Associate Justices, the Counselor to the Chief Justice, the four Officers of the Court and the employees of the Supreme Court of the United States, and for the necessary expenses of the Court. Those expenses include printing and binding of the Supreme Court reports, purchasing books for the Supreme Court and miscellaneous expenses for fiscal year 2012.

## Justification of Changes

The budget request for the Court totals $75,551,000 for fiscal year 2012. This represents an overall decrease of $706,000 below the fiscal year 2011 current services level of $76,257,000. The budget request includes $2,000,000 in no year funding to be available until expended. This amount will fund the planning and implementation of complex, multi-year projects to enhance Court-wide technology and office automation.

**Adjustments to base to maintain current services** include funds for benefits increases, within-grade increases, and other salary progressions for current staff. Also included are increased costs of ongoing activities such as travel, postage, supplies, law books, equipment, furnishings, automation, and offsite warehouse space for activities that include mail screening.

# ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

The following provides information and justification for each of the adjustments to base for the Supreme Court. The major headings for this section of the narrative are: Court Support Personnel, Other Adjustments, and Program Increases / Decreases.

## A.  COURT SUPPORT PERSONNEL.

*1. Benefit cost adjustment*

**a. Health benefits increase**

**Requested Increase:  $190,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 7.0 percent in January 2011 and another 6.8 percent in January 2012. The requested increase annualizes the fiscal year 2011 premium increase, and includes a nine-month provision for the anticipated fiscal year 2012 premium increase.

1.16

**b. One less compensable day**

**Requested Decrease: ($156,000)**

There is one less compensable day in fiscal year 2012 than in fiscal year 2011. The decrease reduces personnel compensation and benefit expenses associated with one less compensable day.

**c. FERS Increase**

**Requested Increase: $731,000**

The Supreme Court's costs for the Federal Employees Retirement System (FERS) have increased an average of 10.5 percent in recent years. This requested increase will cover the additional expenses of FERS employees hired to replace employees under the Civil Service Retirement System (CSRS) who retire or leave the Supreme Court.

**d. Within-grade increases**

**Requested Increase: $371,000**

Supreme Court employees who receive an "above-average" performance rating are eligible for periodic step increases in compensation corresponding with those provided by Chapter 53 of Title 5, United States Code. The requested increase is $371,000.

**e. Promotions and merit increases**

**Requested Increase: $196,000**

The requested increase of $196,000 is for funding promotions and merit increases during fiscal year 2012. This amount will be required to fund anticipated salary increases resulting from promotions, quality step increases, merit awards and performance increases. Under the Court's compensation program, promotions to a higher grade can be the result of changes in position classification or improved competence within existing classification. Quality step increases are faster than normal within-grade salary advancements that can be given to employees whose performance is outstanding, and merit awards are monetary rewards for truly exceptional performance or special achievement. Performance increases that are based on success in achieving specific objectives are awarded to mid-level managers who are not eligible for within-grade increases.

**B. OTHER ADJUSTMENTS**

**2. Inflationary adjustments**

**a. General inflationary increases**

**Requested Increase:  $347,000**

Consistent with guidance from the Office of Management and Budget, the Supreme Court requests $347,000 to fund inflationary increases of 1.4 percent for operating expenses

371

such as travel, utilities, printing, contractual services, supplies and materials, and furniture and equipment.

### b. Library services

**Requested Increase: $93,000**

An increase of $93,000 is requested to cover estimated increases in the costs of library services, including law book accessions and continuations, and computer-assisted legal research.

### 3. *Anticipated Savings and Reductions*

**Requested Decrease: ($3,376,000)**

The Court recognizes the severe budget constraints faced by the entire federal government. Although the Court budget is a small fraction of the overall federal budget, we want to do our part to address the financial constraints faced by our government. We have taken steps to reduce costs and operate more efficiently in fiscal year 2012. In addition to other cost saving measures, we anticipate possible savings as a result of resource sharing with the Department of Interior's National Business Center (NBC). Beginning in fiscal year 2011, the Court proposes to undertake a study of the feasibility of processing the Court's payroll and financial tracking and reporting systems through NBC. If this proves successful, the Court will realize future savings in personnel, budget, and accounting. In addition, savings are expected from delayed backfilling of vacant positions as well as delaying purchases such as computer replacement and software upgrades.

## C. PROGRAM INCREASES

### 4. *Police officers*

**Requested Increase: $658,000**          **FTE: 9**

The Court requests $658,000 ($518,000 for personnel compensation and $140,000 for related benefits) for twelve new police officer positions (funded for 9 months) to staff new posts and increase staffing at established posts.

The completion of the Court's modernization project will result in the opening of additional visitor entrances and a second driveway, which will provide for more efficient pedestrian and vehicular ingress and egress. New posts will need to be staffed to provide security at these locations and to allow for magnetometer, x-ray machines, and barrier operation. Seven additional police officers (5 FTE) will be required to fully staff the six new posts that will be established when the entrances and driveway are opened.

Over the past five years, the police command center has been upgraded and assumed additional and highly technical responsibilities. A new police command center was recently constructed as part of the Court's modernization project. Command center operations include monitoring the feed from numerous security cameras, security checks of vendors, monitoring Capitol Police radio and alert systems, dispatching, building and vehicle key maintenance and distribution, and protective/security detail arrangements.

1.18

### 5. Support expenses for additional police officers

**Requested Increase:  $240,000**

The Court requests the addition of $240,000 to cover training, supplies, and equipment costs related to the addition of 12 new police officer positions.  Each officer undergoes a lengthy and extensive training period to assure thorough preparation for the performance of law enforcement duties.  In addition to a police uniform, the Court provides the officers with state-of-the-art police communication and law enforcement equipment, including a service weapon.  The associated costs are approximately $20,000 per officer.

monitoring Capitol Police radio and alert systems, dispatching, building and vehicle key maintenance and distribution, and protective/security detail arrangements.

These activities are even more numerous and complex, requiring the command center be staffed by an additional officer at all times.  Five additional police officers (4 FTE) are needed to provide this staffing, as the center operates 24 hours a day, seven days a week.

The last increase in police staffing occurred in fiscal year 2006.  The Supreme Court Police has relied on existing strength to staff increased responsibilities, including a more than 10 percent increase in protective work, assessment of a growing number of threats, details to the Department of Homeland Security and the Joint Terrorism Task Force, and additional posts.

To support fully all of the Court's security needs, twice the requested number of new officers is needed.  However, realizing the budgetary constraints facing the federal government, we are requesting only 12 essential police officer positions, which cannot be supported from the existing strength.

1.19

1.20

**SUPREME COURT OF THE UNITED STATES**
*Care of the Building and Grounds*
**SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS**

| | |
|---|---|
| **Fiscal Year 2011 Assumed Appropriation** | **$8,353,000** |
| **Fiscal Year 2012 Requested Appropriation** | **$8,504,000** |
| **Requested Increase from Fiscal Year 2011 Appropriation** | **$151,000** |

**APPROPRIATION LANGUAGE**

**SUPREME COURT OF THE UNITED STATES**

**CARE OF THE BUILDING AND GROUNDS**

For such expenditures as may be necessary to enable the
Architect of the Capitol to carry out the duties imposed upon the
Architect by the Act approved May 7, 1934 (40 U.S.C. 6111(a) and 6111 (b)),
[$8,353,000] *$8,504,000* which shall remain available until expended.

374

**SUMMARY OF REQUEST**
**SUPREME COURT OF THE UNITED STATES**
**CARE OF THE BUILDING AND GROUNDS**
**FISCAL YEAR 2012**
(Dollar amounts in thousands)

|  | Page No. | | Original Request FTEs | Amount |
|---|---|---|---|---|
| **Fiscal Year 2012 Resource Requirements:** | | | | |
| Fiscal Year 2011 Assumed Appropriation ................................................. | | | 48 | $8,353 |
| **Adjustments to Base to Maintain Current Services:** | | | | |
| **A. Personnel and Programs** | | | | |
| 1. Fiscal year 2012 within grade increases ..................................... | 1.25 | | - | 41 |
| 2. Increases for general inflation.................................................. | 1.25 | | - | 41 |
| 3. One less compensable day........................................................ | 1.25 | | - | (16) |
| Subtotal, Adjustments to Base to Maintain Current Services............... | | | - | 66 |
| Total Current Services Appropriation Required................................. | | | 48 | 8,419 |
| **B. Program Increases** | | | | |
| 4. Increase for maintenance mechanic supervisor ......................... | 1.25 | | 0.5 | 48 |
| 5. Increase for building services coordinator.............................. | 1.26 | | 0.5 | 37 |
| Subtotal, Program Increases........................................................ | | | 1 | 85 |
| Total Fiscal Year 2012 Appropriation Required................................. | | | 49 | 8,504 |
| Total Appropriation Change, Fiscal Year 2011 to Fiscal Year 2012.......... | | | 1 | 151 |
| | | | | 1.21 |

375

SUPREME COURT OF THE UNITED STATES
CARE OF THE BUILDING AND GROUNDS
Obligations by Activity ($000)

| Activity | Fiscal Year 2010 Actual | Fiscal Year 2011 Estimate | Fiscal Year 2012 Request |
|---|---|---|---|
| Care of Building and Grounds, Total Obligations | 16,971 | 16,719 | 17,629 |
| | | | |
| Unobligated Balance, Start of Year | (34,383) | (31,937) | (23,571) |
| Unobligated Balance, End of Year | 31,937 | 23,571 | 14,446 |
| | | | |
| Available Appropriation | 14,525 | 8,353 | 8,504 |

Object Classification ($000)

| | Description | Fiscal Year 2010 Actual | Fiscal Year 2011 Estimate | Fiscal Year 2012 Request |
|---|---|---|---|---|
| 11 | Personnel compensation | 3,352 | 3,402 | 3,462 |
| 12 | Personnel benefits | 973 | 1,023 | 989 |
| 21 | Travel and transportation of things | 7 | 5 | 5 |
| 23 | Rent, communications and utilities | 1,601 | 1,650 | 1,750 |
| 25 | Other services | 8,325 | 8,110 | 8,025 |
| 26 | Supplies and materials | 478 | 359 | 428 |
| 31 | Equipment | 0 | 50 | 50 |
| 32 | Land and structures | 2,235 | 2,120 | 2,920 |
| | **Total Obligations** | **16,971** | **16,719** | **17,629** |

1.22

SUPREME COURT OF THE UNITED STATES
CARE OF THE BUILDING AND GROUNDS
Relation of Obligations to Outlays ($000)

| | Fiscal Year 2010 Actuals | Fiscal Year 2011 Estimate | Fiscal Year 2012 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 16,971 | 16,719 | 17,629 | 910 |
| Obligated balance, start of year | 27,379 | 16,644 | 5,457 | (11,187) |
| Obligated balance, end of year | (16,644) | (5,457) | (2,693) | 2,764 |
| Net Outlays | 27,706 | 27,906 | 20,393 | (7,513) |

Personnel Summary

| | Fiscal Year 2010 Actual | Fiscal Year 2011 Estimate | Fiscal Year 2012 Request | Difference |
|---|---|---|---|---|
| Total compensable workyears: Full-time equivalent employment | 38 | 48 | 49 | 1 |

1.23

# GENERAL STATEMENT AND INFORMATION

This appropriation, for expenditure by the Architect of the Capitol, provides for the structural and mechanical care of the United States Supreme Court Building and Grounds, including maintenance and operation of mechanical, electrical, and electronic equipment. The Architect is not responsible for custodial care, which is under the jurisdiction of the Marshal of the Supreme Court and is provided for in the Supreme Court's salaries and expenses appropriation. The Architect performs his duties under authority of the Act of May 7, 1934 (48 Stat. 668).

The equipment includes such items as air conditioning, refrigeration and ventilating systems with more than 1,000 pieces of equipment; electrical transformer stations and emergency power system; three hundred plumbing fixtures and related piping; nine elevators and five dumbwaiters; electrical fixtures and wiring; and electronic security equipment. In fiscal year 2012, a total of 49 full-time equivalents (FTE) are expected to cover three shifts daily.

Projects under the Architect of the Capitol relating to the buildings and grounds in the Capitol campus are included in the Legislative Branch budget. However, the projects pertaining to the Supreme Court, Care of the Building and Grounds are presented within the judiciary's budget request.

The modernization of the United States Supreme Court Building construction project began in the summer of 2004, and the General Contractor forecasts completion in early 2011. In fiscal year 2007, an additional net amount of $6.3 million was appropriated to attain full funding for the estimated cost to complete this project, which brings the appropriated budget authority to $122.3 million. Currently, project work is nearing substantial completion. The Contractor is in the process of completing contract work in the basement mechanical rooms, parking garage, and miscellaneous remaining areas in the building. The Contractor is also performing final testing and activation of life-safety systems, mechanical systems, and electrical systems. Site demobilization has begun, and will continue into early 2011.

## Justification of Changes

The fiscal year 2012 budget request for the Supreme Court of the United States, Care of the Building and Grounds appropriation totals $8,504,000 and 49 FTE. This represents an increase of $151,000 from the assumed fiscal year 2011 appropriation of $8,353,000. The fiscal year 2012 request includes a re-request of the fiscal year 2011 requirement for 1 FTE or two authorized permanent positions. The funding changes are divided into "Adjustments to Base to Maintain Current Services," an increase of $66,000; and "Program Increases," an increase of $85,000.

**Adjustments to base to maintain current services** include an increase of $41,000 for within grade increases for staff paid under the general and wage board schedules; $41,000 for general inflationary increases; and a decrease of $16,000 for one less compensable day.

1.24

Program increases totaling $85,000 are requested to fund two additional permanent positions (1 FTE). Justification for the program increases begins on this page.

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES:

### A. Personnel and Programs

*1. Fiscal year 2012 within-grade increases*

**Requested Increase: $41,000**

Within-grade increases and other adjustments, such as career ladder pay increases for support personnel will be partially absorbed by no year available balances. Increases for within-grades are authorized by 5 U.S.C.5102(c)(7), 5102(d), 5341-5349 for wage board employees and by 5 U.S.C.5331-5336 for general schedule employees.

*2. General inflationary increases*

**Requested Increase: $41,000**

Consistent with guidance from the Office of Management and Budget, $41,000 is requested to fund inflationary increases of one percent for operating expenses such as facilities and grounds maintenance; utilities, uniforms, safety apparel and equipment

*3. One less compensable day*

**Requested Decrease: ($16,000)**

There is one less compensable day in fiscal year 2012 than in fiscal year 2011. The requested decrease reduces personnel compensation and benefit expenses associated with one less compensable day.

## PROGRAM INCREASES

### B. Workload Increases

*4. Maintenance Mechanic Supervisor*

**Requested Increase: $48,000**          **0.5 FTE**

The requested increase of $48,000 is to provide for one additional permanent position priced out for six months in fiscal year 2012 to allow sufficient lead time in the hiring process. It is anticipated the maintenance mechanic supervisor positions will be hired at the WS-11 level which is commensurate with the grades of other journeyman mechanics in the offices of the Architect of the Capitol. Of the total amount, $39,000 is for compensation and $9,000 is for benefits.

This position is needed to provide supervision of a newly established evening shift in support of additional and significant preventative maintenance services on all dynamic equipment in the pipefitting, HVAC, electrical and elevator

trade disciplines. By the beginning of fiscal year 2011, the number of plumbing, air conditioning, refrigeration, ventilation and electrical systems/components requiring regular maintenance will increase over 30 percent due to the final phase and completion of the modernization project. New or modernized systems include an increase in mechanical rooms from two original mechanical rooms to eight advanced mechanical equipment rooms with state of the art controls.

A formal schedule of periodic preventative maintenance (PM) tasks is under development for all existing equipment and new equipment installed under the modernization project. The implementation of a PM program, incorporating scheduled mandatory service, will detect and identify deterioration of equipment and significantly reduce emergency outages and repair work.

This position will require the incumbent to possess journeyman level skills in one trade and basic trade skills of at least two trades at a level below journeyman, and work an evening schedule to inspect, maintain, and repair a variety of mechanical and electrical equipment, new and existing, in support of building operations. Additionally, the incumbent will be required to provide collateral support for other trades.

The maintenance mechanic supervisor will provide the Architect of the Capitol adequate supervision of a newly established evening shift. The new shift will allow the flexibility to respond to maintenance requests in support of after-hours Court services, perform preventative maintenance scheduled on an increased number of equipment and systems and reduce overtime.

This position was requested in fiscal year 2011 and is being re-requested in fiscal year 2012. If funds for this position are appropriated in fiscal year 2011 the requested increase for the additional six months to fund fully this position in fiscal year 2012 will be required.

## 5. Building Services Coordinator

**Requested Increase: $37,000**        **0.5 FTE**

The requested increase of $37,000 is to provide for one additional permanent position priced out for six months in fiscal year 2012 to allow sufficient lead time in the hiring process. It is anticipated the Building Services Coordinator will be hired at the GS-7 level which is commensurate with the grades of other building services coordinators in the offices of the Architect of the Capitol. Of the total amount, $30,000 is for compensation and $7,000 for benefits.

This position is needed to support the establishment of a Facilities Service Center and will provide an additional liaison between the AOC Facilities Office and the Court. The AOC facilities office and shops receive numerous telephone and written requests for service requiring prompt response for repair and/or maintenance of the facility. There currently is not a central location or point of contact for reporting emergencies or service requests or coordinating the response.

The building services coordinator position will ensure timely responses to work requests and be the central point of contact responsible for ensuring the appropriate shop is notified and is responding. The incumbent maintains a file system to stay

380

1.27

abreast of the work status to include initiating a work order on the facility management computerized tracking system and, following up to make sure the work was completed, the customer is satisfied, and the work order is closed out. The incumbent coordinates with clients and schedules maintenance service during Court recess periods to ensure that services are provided with minimum interference or disruption of the Court's daily operations. The incumbent will coordinate with the shop supervisors and manage the schedule for daily, weekly, monthly, quarterly, semi-annual and annual preventive maintenance.

This position was requested in fiscal year 2011 and is being re-requested in fiscal year 2012. If funds for this position are appropriated in fiscal year 2011 the requested increase for the additional six months to fund fully this position in fiscal year 2012 will be required.

381

2.1

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
*Salaries and Expenses*
SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | |
|---|---|
| **Fiscal Year 2011 Assumed Appropriation** | $34,125,000 |
| **Fiscal Year 2012 Requested Appropriation** | $35,139,000 |
| **Requested Increase from Fiscal Year 2011 Assumed Appropriation** | $1,014,000 |

APPROPRIATION LANGUAGE

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

SALARIES AND EXPENSES

For salaries of the chief judge, judges and other officers and employees, and for necessary expenses of the court, as authorized by law, [$34,125,000] *$35,139,000.*

## SUMMARY OF REQUEST
## COURT OF APPEALS FOR THE FEDERAL CIRCUIT
## SALARIES AND EXPENSES
## FISCAL YEAR 2012
(Dollar amounts in thousands)

| Page No. | Fiscal Year 2012 Resource Requirements: | Mandatory FTE | Mandatory Amount | Discretionary FTE | Discretionary Amount | Total FTE | Total Amount |
|---|---|---|---|---|---|---|---|
| | Fiscal Year 2011 Obligations........... | 12 | 2,502 | 145 | 32,303 | 157 | 34,805 |
| | Utilization of Electronic Public Access Receipts ........... | | - | | (73) | | (73) |
| | Utilization of Judiciary Information Technology Fund Balances........... | | - | | (607) | | (607) |
| | Fiscal Year 2011 Appropriation........... | 12 | 2,502 | | 31,623 | | 34,125 |
| | **Adjustments to Base to Maintain Current Services:** | | | | | | |
| | **A. Judges** | | | | | | |
| 2.9 | 1.  Health benefits increase (7% for 3 months and 6.8% for 9 months)........... | - | 11 | - | - | - | 11 |
| 2.9 | 2.  Staff for new senior judge (secretary and law clerk)........... | - | - | 1 | 128 | 1 | 128 |
| | **B. Court Support Personnel** | | | | | | |
| | 3.  Pay and benefit cost adjustments | | | | | | |
| 2.9 | a.  Promotions and within-grade increases........... | - | - | - | 165 | - | 165 |

2.2

**SUMMARY OF REQUEST**
**COURT OF APPEALS FOR THE FEDERAL CIRCUIT**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2012**
**(Dollar amounts in thousands)**

| Page No. | | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|---|
| | | FTE | Amount | FTE | Amount | FTE | Amount |
| 2.9 | b. Health benefits increase (7% for 3 months and 6.8% for 9 months) | - | - | - | 48 | - | 48 |
| 2.10 | c. One less compensable day | - | - | - | (52) | - | (52) |
| | **C. Other Adjustments** | | | | | | |
| | 4. Inflationary adjustments | | | | | | |
| 2.10 | a. Library services and computer-assisted legal research (CALR) | - | - | - | 29 | - | 29 |
| 2.10 | b. General inflationary adjustments | - | - | - | 100 | - | 100 |
| 2.10 | c. Annualization and inflationary increase in GSA space rental cost | - | - | - | 585 | - | 585 |
| | **Subtotal, Adjustments to Base to Maintain Current Services** | 11 | - | 1 | 1,003 | 1 | 1,014 |

2.3

**SUMMARY OF REQUEST**
**COURT OF APPEALS FOR THE FEDERAL CIRCUIT**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2012**
(Dollar amounts in thousands)

| Page No. | | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|---|
| | | FTE | Amount | FTE | Amount | FTE | Amount |
| | Total Fiscal Year 2012 Appropriation Required............... | 12 | 2,513 | 146 | 32,626 | 158 | 35,139 |
| | Total Appropriation Increase, Fiscal Year 2011 to Fiscal Year 2012............ | - | 11 | 1 | 1,003 | 1 | 1,014 |
| | **Financing the Fiscal Year 2012 Request:** | | | | | | |
| | Total Appropriation Required, Fiscal Year 2012............ | 12 | 2,513 | 146 | 32,626 | 158 | 35,139 |
| 2.11 | 5. Utilization of Electronic Public Access Receipts and Judiciary Information Technology Fund............ | - | - | - | 482 | - | 482 |
| | Total Estimated Obligations, Fiscal Year 2012............ | 12 | 2,513 | 146 | 33,108 | 158 | 35,621 |

2.4

2.5

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**
**SALARIES AND EXPENSES**
**Obligations by Activity ($000)**

| Activity | Fiscal Year 2010 Actual | Fiscal Year 2011 Estimate | Fiscal Year 2012 Request |
|---|---|---|---|
| **Salaries and Expenses, Total Obligations** 1/ | 31,222 | 34,805 | 35,621 |
| Unobligated Balance, Start of the Year | | | |
| Judiciary Information Technology Fund | (152) | (1,043) | (436) |
| Unobligated Balance, End of the Year | | | |
| Judiciary Information Technology Fund | 1,043 | 436 | |
| Unobligated Balance, Expiring | 494 | | |
| **Available Appropriation** | 32,607 | 34,198 | 35,185 |
| Transfer to the Defenders Services account | 916 | | |
| **Adjusted Appropriation** | 33,523 | 34,198 | 35,185 |
| Less offsets from: | | | |
| Electronic Public Access | (46) | (73) | (46) |
| Judiciary Information Technology Fund | (916) | | |
| **Appropriation Required (Direct)** | 32,560 | 34,125 | 35,139 |

1/ Fiscal year 2010 obligations include $915,680 reapportioned to the Defenders Services account

**Obligations by Budget Object Class ($000)**

| Description | Fiscal Year 2010 Actual | Fiscal Year 2011 Estimate | Fiscal Year 2012 Request |
|---|---|---|---|
| 11 Personnel compensation | 14,792 | 16,632 | 16,925 |
| 12 Personnel benefits | 3,060 | 3,990 | 4,049 |
| 13 Benefits for former personnel | 10 | 10 | 10 |
| 21 Travel | 171 | 175 | 180 |
| 22 Transportation of things | 84 | 53 | 30 |
| 23 Rent, communications and utilities | | | |
| *Rental payments to GSA* | 5,108 | 6,725 | 7,310 |
| *Communications utilities & misc. charges* | 284 | 294 | 304 |
| 24 Printing and reproduction | 127 | 130 | 134 |
| 25 Other services | 4,876 | 5,027 | 5,078 |
| 26 Supplies and materials | 153 | 160 | 165 |
| 31 Equipment | 1,594 | 1,536 | 1,390 |
| Judiciary Information Technology Fund | 963 | 73 | 46 |
| **Total obligations** | 31,222 | 34,805 | 35,621 |

386

2.6

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
### Salaries & Expenses
### Relation of Obligations to Outlays ($000)

|  | FY 2010 Actual | FY 2011 Estimate | FY 2012 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 31,222 | 34,805 | 35,621 | 816 |
| Obligated balance, start of year | 8,522 | 8,991 | 5,430 | (3,561) |
| Obligated balance, end of year | (8,991) | (5,430) | (6,473) | (1,043) |
| Net Outlays | 30,753 | 38,366 | 34,578 | (3,788) |

### Personnel Summary

|  | FY 2010 Actual | FY 2011 Estimate | FY 2012 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total compensable workyears: | 142 | 157 | 158 | 1 |

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

**SALARIES AND EXPENSES**

**Summary of Mandatory Costs**

| | Fiscal Year 2011 | | Fiscal Year 2012 | | |
|---|---|---|---|---|---|
| | No. of Judgeships | Compensation and Benefits ($000) | No. of Judgeships | Compensation and Benefits ($000) | Increase ($000) |
| Article III Judges | 12 | 2,502 | 12 | 2,513 | 11 |

2.7

# GENERAL STATEMENT AND INFORMATION

The United States Court of Appeals for the Federal Circuit, located in Washington, D.C., has exclusive nationwide jurisdiction over a large number of diverse subject areas, such as appeals in all patent cases, all government contract cases, all international trade cases, all government personnel cases, all cases involving monetary claims against the United States under the Tucker Acts, veterans cases, and many others. Additional subject areas have been added to the court's jurisdiction almost yearly. To keep abreast of its varied and growing jurisdiction, the court is requesting necessary increases in its funding as detailed below.

Appeals to the court come from all 94 federal district courts, the United States Court of Federal Claims, the United States Court of International Trade, and the United States Court of Appeals for Veterans Claims. The court also takes appeals of certain administrative agencies' decisions, including the United States Merit Systems Protection Board, the Boards of Contract Appeals, the Board of Patent Appeals and Interferences, and the Trademark Trial and Appeals Board. Decisions of the United States International Trade Commission, the Office of Compliance, an independent agency in the legislative branch, and the Government Accountability Office Personnel Appeals Board also are reviewed by the court. For additional information on the court's jurisdiction, see the appendix beginning on page 2.13.

## Justification of Changes

The fiscal year 2012 budget request for the Court totals $35,139,000, an increase of $1,014,000 or 3.0 percent over the fiscal year 2011 assumed appropriation of $34,125,000. This modest increase includes amounts for inflationary increases and adjustments to base to maintain current services. The Court requests no program increases.

**Adjustments to base to maintain current services** include funds for the following: salaries and benefits costs for one law clerk and one secretary for one new senior judge; court benefits cost increases for current staff; increased costs for ongoing activities such as travel, postage, printing, supplies, library services, computer-assisted legal research services, cyclical maintenance of facilities, furnishings, equipment, and GSA space rental. Justifications for each of these adjustments begin on page 2.9.

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

The following provides information and justification for each specific request for the court.

### A. JUDGES

**1.   *Health benefit increase***

**Requested Increase:  $11,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 7.0 percent in January 2011 and another 6.8 percent in January 2012.  The requested increase annualizes the 2011 premium increase and includes a nine-month provision for the anticipated fiscal year 2012 premium increase.

**2.   *Staff for new senior judge***

**Requested Increase:  $128,000            FTE:   1**

One active judge is eligible and expected to take senior status during fiscal year 2012.  It will be necessary to provide this new senior judge with staffing of one secretary and one law clerk.  The $128,000 includes the salaries and benefits for the two new positions for six months in fiscal year 2012.

### B.   COURT SUPPORT PERSONNEL

**3.   *Pay and benefit cost adjustments***

**a.   Promotions and within-grade increases**

**Requested Increase:  $165,000**

The requested increase provides for promotions and within-grade increases for support personnel.  The court's salary plan for judicial support personnel provides for periodic within-grade increases for staff who receive at least a satisfactory performance rating.

**b.   Health benefits increase**

**Requested Increase:  $48,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 7.0 percent in January 2011 and another 6.8 percent in January 2012.  The requested increase annualizes the 2011 premium increase and includes a nine-month provision for the anticipated fiscal year 2012 premium increase.

2.9

390

### c. One less compensable day

**Requested Decrease: ($52,000)**

There is one less compensable day in fiscal year 2012 than in fiscal year 2011. The requested decrease reduces personnel compensation and benefits expenses associated with one less compensable day.

## C. OTHER ADJUSTMENTS

### 4. *Inflationary adjustments*

#### a. Library services and computer-assisted legal research (CALR)

**Requested Increase: $29,000**

An adjustment of $19,000 is requested to fund an estimated 6.0 percent increase in the costs of library services, including law book accessions and continuations, and an adjustment of $10,000 is requested to fund an estimated 5.0 percent increase in the costs of computer-assisted legal research resources.

#### b. General inflationary adjustments

**Requested Increase: $100,000**

Consistent with guidance from the Office of Management and Budget, the court requests an increase of $100,000 to fund inflationary increases of 1.4 percent for operating expenses such as travel, utilities, printing, contractual services, supplies and materials, and furniture and equipment.

### c. Annualization and inflationary increase in GSA space rental cost

**Requested Increase: $585,000**

This request for $585,000 represents $484,000 to annualize the fiscal year 2011 rent increase on the National Courts Building and an additional $101,000 in other GSA space related costs.

Based on a rent estimate provided by GSA, the Court requested in its fiscal year 2011 Budget Request an increase of $732,157 for rent on the National Courts Building and courthouse complex space. It was not clear to the Court when it submitted that request that the $677,335 increase for the rent for the National Courts Building was for only seven months and that an additional $483,810 would be required to annualize the increase in fiscal year 2012.

The Court requested that GSA clarify how the rent increase was calculated. In November 2010 GSA informed the Court that the total annual rent increase on the National Court Building was $1,161,144 and that an additional five months of the $96,762 per month rent increase would be required to annualize the fiscal year 2011 increase in fiscal year 2012.

2.10

**FINANCING THE FISCAL YEAR 2012 REQUEST**

5.  *Carryforward Balance from the Judiciary Information Technology Fund and Electronic Public Access Receipts*

**Estimated obligations of available balance from Judiciary Information Technology Fund and Electronic Public Access Receipts: $482,000**

28 U.S.C. § 612 provides that fees collected for electronic public access to information be deposited into the Judiciary Information Technology Fund, and that these funds are available without fiscal year limitations. The Judiciary is authorized to use these fees to offset the costs of providing the information to the public electronically. Fiscal year 1997 appropriations report language expanded the Judiciary's authority to use these funds to finance automation enhancements that improve the availability of electronic information to the public. Fiscal year 2004 appropriations report language authorized the Judiciary to use these fees for system enhancement and operational costs associated with the Judiciary's case management/electronic case filing (CM/ECF) system, which provides the ability to receive and file court documents over the Internet. In fiscal year 2007, the Judiciary received authority from Congress to expand the use of Electronic Public Access receipts to support courtroom technology allotments for installation, cyclical replacement of equipment, and infrastructure maintenance.

Section 303(a) of the Judiciary's 1992 Appropriations Act authorizes the Director of the Administrative Office of the United States Courts, under the direction of the Judicial Conference of the United States, to "prescribe a schedule of reasonable fees for electronic access to information which the Director is required to maintain and make available to the public." These fees will be deposited as "offsetting collections" to the Judiciary Information Technology Fund pursuant to 28 U.S.C. §612(c)(1)(A) to reimburse expenses incurred in providing these services.

At the beginning of fiscal year 2010, $106,000 was available in carryforward balances from the Judiciary Information Technology Fund and an additional $46,000 was deposited from Electronic Public Access receipts to total $152,000. Plans to utilize this full amount for the design, purchase and installation of a courtroom video conferencing system were deferred although $26,000 was expended on various courtroom technology upgrades. The Court deposited $916,000 to the Judiciary Information Technology Funds at the end of the fiscal year to support the Court's short-term and long-term information technology needs. These funds were available because of chambers vacancies resulting from two judges taking senior status and one retiring during the course of the fiscal year.

At the beginning of fiscal year 2011, $1,043,000 was available in carryforward balances from the Judiciary Information Technology Fund and it is anticipated that this amount will be supplemented by Electronic Public Access receipts totaling $73,000. The Court is planning to use $680,000 from this fund in fiscal year 2011 to adapt and implement the Judiciary's Case Management/Electronic Case Filing (CM/ECF) software for use by the Court. It is anticipated that this complex project will take two years to complete. In addition, the court also plans to replace computer desktop systems in accordance with the judiciary's cyclical replacement program and to implement new software for processing the admission of visitors to the courthouse building.

2.11

392

2.12

At the beginning of fiscal year 2012, the court estimates that $436,000 will remain in the Judiciary Information Technology Fund and this amount will be supplemented by an additional $46,000 from Electronic Public Access receipts to total $482,000. These funds will be utilized principally in the continuing project begun in fiscal year 2011 to implement the Judiciary's Case Management/Electronic Case Filing (CM/ECF) software for use by the Court. Any funds remaining will be used to support other information technology needs of the Court.

393

## APPENDIX

The following is a more complete listing of the Federal Circuit's exclusive jurisdiction. It hears appeals from:

(A) final decisions of all Federal District Courts in cases arising under 28 U.S.C. §1338(a) relating to patent laws generally; 35 U.S.C. §§ 145-146 relating to review of decisions of the Patent and Trademark Office, Board of Patent Appeals and Interferences; 28 U.S.C. §1346(a)(2) relating to Little Tucker Act claims against the United States; and section 211 of the Economic Stabilization Act of 1970, section 5 of the Emergency Petroleum Allocation Act of 1973, section 506 (c) of the Natural Gas Policy Act of 1978, and section 523 of the Energy Policy and Conservation Act relating to all statutes formerly under the jurisdiction of the Temporary Emergency Court of Appeals;

(B) final decisions of the United States Court of International Trade, 28 U.S.C. § 2645(c);

(C) final decisions of the United States Court of Appeals for Veterans Claims, 38 U.S.C. § 7292;

(D) final decisions of the United States Court of Federal Claims, 28 U.S.C. § 2522 and 42 U.S.C. §§ 300aa - 12(f);

(E) final decisions of the High Court of the Trust Territory of the Pacific Islands, 48 U.S.C. § 1681 note (1988) (Compact of Free Association; Federated States of Micronesia, Republic of Marshall Islands, TITLE II, Title One, Article VII, § 174(c));

(F) final determinations of the United States International Trade Commission relating to unfair practices in import trade made under 19 U.S.C. § 1337;

(G) findings of the Secretary of Commerce under U.S. note 6 to subchapter X of chapter 98 of the Harmonized Tariff Schedule of the United States relating to importation of educational or scientific instruments and apparatus;

(H) final orders or decisions of the Merit Systems Protection Board and certain arbitrators, 5 U.S.C. § 7703;

(I) final decisions of the General Accounting Office Personnel Appeals Board, 31 U.S.C. § 755;

(J) final decisions of all agency Boards of Contract Appeals, 41 U.S.C. § 607(g);

(K) final decisions of the Patent and Trademark Office tribunals on patent applications and interferences, trademark applications and interferences, cancellations, concurrent use proceedings, and oppositions, 35 U.S.C. § 142, 15 U.S.C. § 1071, 37 CFR §§ 1.304, 2.145;

(L) appeals under section 71 of the Plant Variety Protection Act of 1970, 7 U.S.C. § 2461;

(M) certain actions of the Secretary of Veterans Affairs, 38 U.S.C. § 502;

2.13

394

2.14

(N) certain final orders of the Equal Employment Opportunity Commission relating to certain Presidential appointees, 2 U.S.C. § 1219(a)(3) and 28 U.S.C. § 2344;

(O) final decisions of the Office of Personnel Management under 5 U.S.C. § 8902a(g)(2);

(P) certain actions of the Board of Directors of the Office of Compliance of the U.S. Congress under 2 U.S.C. § 1407(a); and

(Q) final decisions of certain agencies pursuant to 28 U.S.C. § 1296.

Pursuant to 28 U.S.C. § 1292 (c) the Federal Circuit also has exclusive jurisdiction regarding:

a. appealable interlocutory orders or decrees in cases where the court would otherwise have jurisdiction over an appeal; and

b. appeals from judgments in civil actions for patent infringement otherwise appealable to the court and final except for accounting.

Under the provisions of 28 U.S.C. § 1292(d), the court has:

a. exclusive jurisdiction of appeals from interlocutory orders granting or denying, in whole or in part, a motion to transfer an action to the Court of Federal Claims; and

b. may, in its discretion, permit an appeal from an interlocutory order of a judge who certifies that there is a controlling question of law and a substantial ground for difference of opinion thereon, and that an immediate appeal may materially advance the ultimate termination of the litigation.

Pursuant to 38 U.S.C. § 7292(b) (1), the court has exclusive jurisdiction of certain interlocutory orders of the Court of Appeals for Veterans Claims.

Legislation having an impact on the Federal Circuit is contained in P.L. 105-339 (51021), October 31, 1998, Veterans Employment Opportunities Act of 1998, which provides a remedy through the Merit Systems Protection Board for those seeking review of the application of veterans preference rules to applicants for federal employment.

395

# UNITED STATES COURT OF INTERNATIONAL TRADE
*Salaries and Expenses*
## SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | |
|---|---|
| Fiscal Year 2011 Assumed Appropriation | $22,182,000 |
| Fiscal Year 2012 Requested Appropriation | $22,891,000 |
| Requested Increase from Fiscal Year 2011 Assumed Appropriation | $709,000 |

## APPROPRIATION LANGUAGE

# UNITED STATES COURT OF INTERNATIONAL TRADE
## SALARIES AND EXPENSES

For salaries of the chief judge and eight judges, salaries of the officers and employees of the court, services, and necessary expenses of the court, as authorized by law, [$22,182,000] *$22,891,000.*

3.1

396

# SUMMARY OF REQUEST
## UNITED STATES COURT OF INTERNATIONAL TRADE
### SALARIES AND EXPENSES
### FISCAL YEAR 2012
(Dollar amounts in thousands)

### Fiscal Year 2012 Resource Requirements:

| | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|
| | FTE | Amount | FTE | Amount | FTE | Amount |
| Fiscal Year 2011 Financial Plan | 9 | 1,851 | 71 | 20,830 | 80 | 22,681 |
| Carryforward Balance from the Judiciary Information Technology Fund | | | | (499) | | (499) |
| Fiscal Year 2011 Base Assumed Appropriation | 9 | 1,851 | 71 | 20,331 | 80 | 22,182 |
| Adjustment to reflect expected mandatory costs | | (142) | | 142 | | - |

| Page No. | Adjustments to Base to Maintain Current Services: | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|---|
| | | FTE | Amount | FTE | Amount | FTE | Amount |
| | **A. Judges** | | | | | | |
| | 1. Benefit cost adjustments | | | | | | |
| 3.9 | a. Health benefits increase | - | 5 | - | - | - | 5 |
| 3.9 | b. FICA increase | - | 4 | - | - | - | 4 |
| | **B. Court Support Personnel and Programs** | | | | | | |
| | 2. Benefit cost adjustments | | | | | | |
| 3.9 | a. Promotions and within-grade increases | - | - | - | 136 | - | 136 |
| 3.9 | b. One less compensable day | - | - | - | (25) | - | (25) |
| 3.9 | c. Health benefits increase | - | - | - | 31 | - | 31 |
| 3.10 | d. FICA charges and workers' compensation cost | - | - | - | 51 | - | 51 |

3.2

# SUMMARY OF REQUEST
## UNITED STATES COURT OF INTERNATIONAL TRADE
### SALARIES AND EXPENSES
### FISCAL YEAR 2012
#### (Dollar amounts in thousands)

**C. Other Adjustments**

| | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|
| | FTE | Amount | FTE | Amount | FTE | Amount |
| 3. Inflationary increases in contract rates and charges for services, supplies, equipment, and other judiciary needs | | | | | | |
| 3.10   a. Increases in internal Courthouse security costs ............... | - | - | - | 64 | - | 64 |
| 3.10   b. Increases in FPS building basic/specific security surcharges............... | - | - | - | 75 | - | 75 |
| 3.11   c. General inflationary increases............... | - | - | - | 368 | - | 368 |
| **Subtotal, Adjustments to Base to Maintain Current Services............** | - | 9 | - | 700 | - | 709 |
| **Total Fiscal Year 2012 Appropriation Required............** | 9 | 1,718 | 71 | 21,173 | 80 | 22,891 |

3.3

## SUMMARY OF REQUEST
## UNITED STATES COURT OF INTERNATIONAL TRADE
### SALARIES AND EXPENSES
### FISCAL YEAR 2012
#### (Dollar amounts in thousands)

**Financing the Fiscal Year 2012 Request:**

| | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|
| | FTE | Amount | FTE | Amount | FTE | Amount |
| Total Appropriation Required, Fiscal Year 2012................. | 9 | 1,718 | 71 | 21,173 | 80 | 22,891 |
| 3.11   Carryforward Balance from the Judiciary Information Technology Fund................. | - | - | - | - | - | 291) |
| Total Estimated Obligations, Fiscal Year 2012................. | 9 | 1,718 | 71 | 21,173 | 80 | 23,182 |

3.4

399

3.5

## UNITED STATES COURT OF INTERNATIONAL TRADE
### SALARIES AND EXPENSES
#### Obligations by Activity ($000)

| Activity | Fiscal Year 2010 Actual | Fiscal Year 2011 Estimate | Fiscal Year 2012 Request |
|---|---|---|---|
| **Salaries and Expenses, Total Obligations** | 21,413 | 22,681 | 23,182 |
| Unobligated Balance, Start of Year | | | |
| Judiciary Information Technology Fund | (924) | (790) | (291) |
| Unobligated Balance, End of Year | | | |
| Judiciary Information Technology Fund | 790 | 291 | - |
| Unobligated Balance, expiring | 72 | - | - |
| **Available Appropriation** | 21,350 | 22,182 | 22,891 |

### Object Classification ($000)

| | Description | Fiscal Year 2010 Actual | Fiscal Year 2011 Estimate | Fiscal Year 2012 Request |
|---|---|---|---|---|
| 11 | Personnel compensation | 7,523 | 8,190 | 8,310 |
| 12 | Personnel benefits | 1,732 | 1,872 | 1,948 |
| 21 | Travel | 129 | 155 | 158 |
| 22 | Transportation of things | 15 | 25 | 26 |
| 23 | Rent, communications and utilities | | | |
| | *Rental payments to GSA* | 9,000 | 8,909 | 8,909 |
| | *Communications, utilities & misc. charges* | 144 | 215 | 219 |
| 24 | Printing and reproduction | 4 | 5 | 6 |
| 25 | Other services | 1,157 | 1,760 | 2,085 |
| 25.3 | Building specific security surcharge | 544 | 615 | 690 |
| 26 | Supplies and materials | 60 | 87 | 99 |
| 31 | Equipment | 196 | 349 | 441 |
| | Judiciary Information Technology Fund | 909 | 499 | 291 |
| | **Total obligations** | 21,413 | 22,681 | 23,182 |

400

3.6

## UNITED STATES COURT OF INTERNATIONAL TRADE
### Salaries & Expenses
### Relation of Obligations to Outlays ($000)

|  | Fiscal Year 2010 Actual | Fiscal Year 2011 Estimate | Fiscal Year 2012 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 21,413 | 22,681 | 23,182 | 501 |
| Obligated balance, start of year | 1,620 | 1,823 | 2,075 | 252 |
| Obligated balance, end of year | (1,823) | (2,075) | (1,402) | 673 |
| Net Outlays | 21,210 | 22,429 | 23,855 | 1,426 |

**Personnel Summary**

|  | Fiscal Year 2010 Actual | Fiscal Year 2011 Estimate | Fiscal Year 2012 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total compensable workyears: Full-time equivalent employment | 77 | 80 | 80 | 0 |

3.7

| | UNITED STATES COURT OF INTERNATIONAL TRADE | | | | |
| | SALARIES AND EXPENSES | | | | |
| | Summary of Mandatory Costs | | | | |
| | Fiscal Year 2011 | | Fiscal Year 2012 | | |
| | No. of Judgeships | Compensation and Benefits ($000) | No. of Judgeships | Compensation and Benefits ($000) | Increase ($000) |
| Article III Judges | 9 | 1,709 | 9 | 1,718 | 9 |

## GENERAL STATEMENT AND INFORMATION

The United States Court of International Trade, with nine Article III judges, has exclusive nationwide jurisdiction of civil actions against the United States, its agencies and officers, and certain civil actions brought by the United States, arising out of import transactions and the administration and enforcement of the federal customs and international trade laws.

The estimates under this title are to provide for the salaries of the nine judges and supporting personnel of the Court of International Trade, located in Manhattan, New York, and the necessary operating expenses of the Court. These operating expenses include internal courthouse security, Federal Protective Service (FPS) charges for basic and building specific security surcharges, GSA rent, travel, equipment maintenance contracts, cyclical maintenance of and upgrades to facilities, communication services, printing and binding, supplies, purchase of new equipment and furniture, repair of existing equipment and furniture, new legal reference materials, and continuation of reports for fiscal year 2012.  In keeping with its national jurisdiction, court may be held throughout the country.

Table 3.1 below provides a summary of the business of the Court for fiscal years 2005 through 2010. The spike in pending cases prior to fiscal year 2007 is largely due to the litigation resulting from the Supreme Court ruling in *United States Shoe Corp. v. United States*, 523 U.S. 360 (1998), in which the Harbor Maintenance Tax was declared unconstitutional.

**Table 3.1  Civil Action Cases**

| Fiscal Year | Pending Beginning of Year | Received | Decided | Pending End of Year |
|---|---|---|---|---|
| 2005 | 10,869 | 741 | 455 | 11,155 |
| 2006 | 11,155 | 478 | 9,446 | 2,187 |
| 2007 | 2,187 | 511 | 592 | 2,106 |
| 2008 | 2,106 | 477 | 472 | 2,111 |
| 2009 | 2,111 | 519 | 418 | 2,212 |
| 2010 | 2,212 | 432 | 424 | 2,220 |

## JUSTIFICATION OF CHANGES

The fiscal year 2012 budget request for the Court totals $22,891,000. This represents an overall increase of $709,000 or 3.2 percent over the fiscal year 2011 assumed appropriation of $22,182,000. The increase reflects the necessary adjustments to base to maintain current services.  The court requests no program increases.

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

The following narrative provides information and justification for each of the adjustments to base for the Court.

## A. JUDGES

### *1. Benefit cost adjustments*

#### a. Health benefits increase

**Requested increase: $5,000**

Based on the information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 7.0 percent of fiscal year 2011 projected health benefits in January 2011 and another 6.8 percent in January 2012. The requested increase annualizes the 2011 premium cost, and includes a nine-month provision for the anticipated fiscal year 2012 premium.

#### b. FICA increase

**Requested increase: $4,000**

Funds are requested to provide for the employer contributions to the Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax in fiscal year 2012. The salary cap for OASDI is expected to remain at $106,800. The requested amount is needed to pay the agency contribution for judges.

## B. COURT SUPPORT PERSONNEL

### *2. Benefit cost adjustments*

#### a. Promotions and within-grade increases

**Requested Increase: $136,000**

The requested increase provides for promotions and within-grade increases for support personnel. The salary plan for judicial support personnel provides for periodic within-grade increases for staff who receive at least a satisfactory performance rating.

#### b. One less compensable day

**Requested Decrease: ($25,000)**

There is one less compensable day in fiscal year 2012 than in fiscal year 2011. The requested decrease reduces personnel compensation and benefits expenses associated with one less compensable day.

#### c. Health benefits increase

**Requested Increase: $31,000**

Based on the information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 7.0 percent of fiscal year 2011 projected health benefits in January 2011 and increase another 6.8 percent in January 2012. The requested increase annualizes the 2011 premium cost, and includes a nine-month provision for the anticipated fiscal year 2012 premium.

3.9

### d. FICA charges and workers' compensation costs

**Requested Increase: $51,000**

Funds are requested to provide for the employer contributions to Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax in fiscal year 2012. The salary cap for OASDI is expected to remain at $106,800. The requested amount is needed to pay the agency contribution. The Court also is requesting additional funds to pay for direct dollar costs of workers' compensation and medical benefits paid under the Federal Employees Compensation Act.

The table below provides a breakout of these costs.

| Benefit Category | Funds Requested |
|---|---|
| FICA charges | $20,000 |
| Workers' Compensation | $31,000 |
| **Total Increase** | **$51,000** |

## C. OTHER ADJUSTMENTS

3. *Inflationary increases in contract rates and charges for rent, security services, supplies, equipment, and other judiciary needs*

### a. Increases in Internal Courthouse Security

**Requested Increase: $64,000**

The requested increase provides for the cost of the Court's internal security officers. This increase will provide funding for full staffing, increased hourly wage rates, and yearly startup and training costs, pursuant to contractual agreement.

### b. Increases in Federal Protective Service (FPS) basic/building specific security surcharges

**Requested Increase: $75,000**

Based on the Department of Homeland Security's FPS's estimate, $75,000 is needed to pay for increases in basic and building-specific security surcharge costs in fiscal year 2012. The building specific security surcharges provide for the Court's pro rata share of installing, operating, and maintaining the enhanced security for the Federal Complex in lower Manhattan.

3.10

## D. FINANCING THE FISCAL YEAR 2011 REQUEST

### c. General Inflationary Increases

**Requested Increase: $368,000**

Consistent with guidance from the Office of Management and Budget, the Court requests $368,000 to fund inflationary increases of 1.4 percent for operating expenses such as travel, utilities, printing, contractual services, supplies and materials, and furniture and equipment.

### 4. *Carryforward Balance from the Judiciary Information Technology Fund*

**Estimated Obligations: $291,000**

At the beginning of fiscal year 2011, $790,000 was available in carryforward balances from the Judiciary Information Technology Fund. Of this amount, the Court is planning to use $499,000 in order to continue its support of its upgraded data network and voice connections and Virtual Private Network System (VPN); upgrade and support existing software applications; purchase new software applications to ensure the continued operational efficiency of the Court; replace computer desktop systems, including monitors, printers, and three file servers in accordance with the judiciary's cyclical replacement program; provide broadband services for laptops; support Court equipment by the purchase of yearly leasing and maintenance agreements and provide Court access to the Judiciary Data Communications Network (DCN).

At the beginning of fiscal year 2012, the Court anticipates that $291,000 will be available in carryforward balances in the Judiciary Information Technology Fund in order to continue its information technology initiatives and to support the Court's short term and long term information technology needs.

3.11

# COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES
## Summary of the Fiscal Year 2012 Budget Request

The *Courts of Appeals, District Courts, and Other Judicial Services* accounts fund most of the day-to-day operations and activities of the federal courts. The four accounts under this heading include:

- **Salaries and Expenses**, which funds the operating costs of appellate, district and bankruptcy courts, and probation and pretrial services offices;

- **Defender Services**, which funds the necessary expenses to provide defense representation under the Criminal Justice Act (CJA) for persons financially unable to obtain defense counsel;

- **Fees of Jurors and Commissioners**, which funds the fees and allowances of grand and petit jurors, and the compensation of jury and land commissioners; and

- **Court Security**, which provides for the necessary expenses to provide protective guard services and security equipment for judiciary facilities.

### The Fiscal Year 2012 Budget Request

The Judicial Conference requests $6,912.7 million in appropriations in fiscal year 2012 for these four accounts, an increase of $280.8 million (4.2 percent) over fiscal year 2011 assumed appropriations of $6,631.9 million. The following table details the fiscal year 2011 assumed appropriations and fiscal year 2012 requested appropriations levels for the four accounts.

The $280.8 million increase in appropriations includes funding for 509 additional FTE, and is comprised of standard adjustments to base totaling $241.3 million and 232 FTE, and program increases totaling $39.5 million and 277 FTE. The table on page 4.2 summarizes the requested changes for each account.

Appropriations for the *Courts of Appeals, District Courts, and Other Judicial Services*

| ($000) | FY 2011 Assumed Appropriation | FY 2012 Request | Increase over FY 2011 | % Change |
|---|---|---|---|---|
| Salaries and Expenses 1/ | $5,046,953 | $5,241,177 | $ 194,224 | 3.8% |
| Defender Services | $1,044,072 | $1,098,745 | $ 54,673 | 5.2% |
| Fees of Jurors | $52,410 | $59,727 | $ 7,317 | 14.0% |
| Court Security | $488,436 | $513,058 | $ 24,622 | 5.0% |
| **Total** | **$6,631,871** | **$6,912,707** | **$ 280,836** | **4.2%** |

1/ Salaries and Expenses includes funds from the Vaccine Injury Trust Fund.

4.1

4.2

## FY 2012 Summary of Requested Changes

| | COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES | | | | | | | Total Court of Appeals, District Courts, and Other Judicial Services[1] | |
|---|---|---|---|---|---|---|---|---|---|
| | Salaries and Expenses | | Defender Services | | Fees of Jurors and Commissioners | Court Security | | | |
| | FTE | ($000) | FTE | ($000) | ($000) | FTE | ($000) | FTE | ($000) |
| FY 2011 Enacted Appropriation | 30,616 | 5,042,168 | 2,826 | 1,044,072 | 52,410 | 71 | 488,436 | 33,513 | 6,627,086 |
| FY 2011 Vaccine Injury Trust Fund | | 4,785 | | | | | | | 4,785 |
| FY 2011 Available Appropriation | 30,616 | 5,046,953 | 2,826 | 1,044,072 | 52,410 | 71 | 488,436 | 33,513 | 6,631,871 |
| **FY 2012 Adjustments to Base** | | | | | | | | | |
| *Judges:* | | | | | | | | | |
| Pay and benefit cost adjustments | | 2,346 | | | | | | | 2,346 |
| Additional senior judges | 104 | 13,372 | | | | | | 104 | 13,372 |
| Increase in average number of filled Article III judgeship | 13 | 1,620 | | | | | | 13 | 1,620 |
| Non-recurring costs of new 2011 judges | | (1,031) | | | | | | | (1,031) |
| *Court Personnel* | | | | | | | | | |
| Pay and benefit cost adjustments | | 26,711 | | 3,459 | | | (1,305) | | 28,865 |
| *Other Changes* | | | | | | | | | |
| Financing adj. necessary to maintain current services | | 80,835 | | 10,784 | 7,959 | | 66 | | 99,573 |
| Inflation (non-space-related) | | 14,951 | | 2,555 | 115 | | | | 17,687 |
| Vaccine Injury Trust Fund adjustment | | 226 | | | | | | | 226 |
| Space related costs (includes inflation for space rental rates) | | 15,615 | | 765 | | | 91 | | 16,471 |
| Information technology adjustments for ongoing operations | | 1,987 | | | | | | | 1,987 |
| Annualization of new FY 2011 positions | | | 54 | 9,232 | | | | 54 | 9,232 |
| Defender Services workload increase | | | 61 | 27,558 | | | | 61 | 27,558 |
| Change in available jurors | | | | | (757) | | | | (757) |
| FPS security service charges | | | | | | | 6,745 | | 6,745 |
| FY 2012 court security officer wage adjustments | | | | | | | 19,918 | | 19,918 |
| Annualization of new FY 2011 court security officers (30) | | | | | | | 1,245 | | 1,245 |
| Additional court security officers in FY 2012 (50) | | | | | | | 4,730 | | 4,730 |
| Adjustments to base for security systems and equipment | | | | | | | (7,715) | | (7,715) |
| Adjustments to base for program administration (cost savings) | | | | | | | (779) | | (779) |
| Subtotal, FY 2012 Adjustments to Base | 117 | 156,652 | 115 | 54,373 | 7,317 | | 22,966 | 232 | 241,308 |
| **FY 2012 Adjusted Base** | 30,733 | 5,203,605 | 2,941 | 1,098,445 | 59,727 | 71 | 511,402 | 33,745 | 6,873,179 |
| **FY 2012 Program Increases** | | | | | | | | | |
| *Judges:* | | | | | | | | | |
| Magistrate judges and staff | 16 | 2,360 | | | | | | 16 | 2,360 |
| *Court Personnel and Programs:* | | | | | | | | | |
| New court support staff for workload increase | 257 | 21,336 | | | | | | 257 | 21,336 |
| Information technology adjustments | | 13,876 | | | | | | | 13,876 |
| New federal defender organization | | | | 300 | | | | | 300 |
| National contract for vehicle barrier maintenance (Re-Requested from FY 2011) | | | | | | | 728 | | 728 |
| Facial recognition systems pilot (Re-Requested from FY 2011) | | | | | | | 200 | | 200 |
| Wireless Broadcast System Pilot | | | | | | | 194 | | 194 |
| Seven new judiciary-funded USMS positions (funded for 6 months) | | | | | | 4 | 534 | 4 | 534 |
| Subtotal, FY 2012 Program Increases | 273 | 37,572 | | 300 | | 4 | 1,656 | 277 | 39,528 |
| Total increases requested, FY 2012 | 390 | 194,224 | 115 | 54,673 | 7,317 | 4 | 24,622 | 509 | 280,836 |
| FY 2012 Appropriation Request | 31,006 | 5,241,177 | 2,941 | 1,098,745 | 59,727 | 75 | 513,058 | 34,022 | 6,912,707 |

[1] The Court of Appeals, District Courts, and Other Judicial Services FTE totals do not reflect reimbursable positions (26 in FY 2011, and 26 in FY 2013).

## Adjustments to the Base

The *Courts of Appeals, District Courts, and Other Judicial Services* fiscal year 2012 request includes $241.3 million (232 FTE) in adjustments to the fiscal year 2012 base for the following:

◆ $31.2 million for inflationary pay and benefit increases for judges and supporting personnel, including health benefits.

◆ $16.5 million for net changes to the judiciary's space and facilities requirements, including inflationary increases to GSA space rental rates, the annualization of new space expected to be delivered in fiscal year 2011, and the cost of new space anticipated to be delivered in fiscal year 2012.

◆ $9.3 million to annualize fiscal year 2011 federal defender organization positions (54 FTE).

◆ $27.6 million (61 FTE) for the net increase in costs and complexity associated with the 206,200 non-capital Criminal Justice Act representations projected in fiscal year 2012, as well as for projected increases in capital representation costs.

◆ $17.7 million for increases in contract rates and other standard inflationary increases.

◆ $99.6 million due to a projected decrease in the availability of non-appropriated funds in fiscal year 2012. Currently, the judiciary is estimating that fewer non-appropriated funds will be available in fiscal year 2012 than were available in fiscal year 2011.

◆ $15.0 million (117 FTE) for an additional 24 senior judges and 80 associated staff, and an additional 2 active Article III judges and 11 associated staff.

◆ $25.9 million for increased court security officer costs, including a wage adjustment for contract court security officers, the annualization of fiscal year 2011 contract court security officer positions, and new fiscal year 2012 contract court security officer positions for new and existing court occupied space.

◆ -$7.7 million net decrease for adjustments below the fiscal year 2011 base for court security systems and equipment.

◆ $6.7 million for increases in Federal Protective Service (FPS) security charges, based on rates established by FPS.

◆ $2.0 million to support the current operations for the judiciary's information management and telecommunications systems.

◆ -$0.8 million increase for the change in the number of available jurors.

◆ -$1.7 million decrease for non-recurring costs, including one-time costs associated with new judges in fiscal year 2011, non-recurring court security costs, and non-recurring costs associated with the Vaccine Injury Trust Fund.

## Program Increases

The judiciary's fiscal year 2012 request includes $39.5 million and 277 FTE in program enhancements and workload increases for the four accounts under the *Courts of Appeals, District Courts, and Other Judicial Services.*

*Salaries and Expenses*
*($37.6 million/273 FTE)*

Magistrate Judges and Staff ($2.4 million/16 FTE)
The fiscal year 2012 request includes $2.4 million for 4 new accelerated magistrate judges (4 FTE) and associated support staff (12 FTE). Additional magistrate judges are required to assist the district courts in managing their varied and increasingly complex workload.

Court Support Staff ($21.3 million/257 FTE)
The fiscal year 2012 request includes a net increase of $21.3 million for an additional 514 court support staff (257 FTE) to handle expected increases in case filings, especially in the bankruptcy courts and in probation and pretrial services offices.

Information Technology Program ($13.9 million)
The fiscal year 2012 request includes an increase of $13.9 million to improve financial and project management systems, modernize the judiciary's intranet capabilities and continue implementation of a multi-year effort to replace the judiciary's telecommunications infrastructure.

*Defender Services*
*($0.3 million)*

New Federal Defender Organizations ($0.3 million)
The requested increase of $300,000 will fund the non-recurring start-up expenses associated with opening one new federal defender organization.

*Court Security*
*($1.6 million/4 FTE)*

New Judiciary-Funded USMS Positions ($0.5 million/4 FTE)
An increase of $534,000 will fund 7 new judiciary-funded USMS positions (4 FTE) for six months. Six positions will replace existing contractors and the associated savings will offset this cost.

Nationwide Contract for Vehicle Barrier Maintenance ($0.7 million)
The requested increase of $728,000 will fund a national contract for vehicle barrier maintenance. (Re-requested from fiscal year 2011).

Facial Recognition Systems Pilot ($0.2 million)
The requested increase of $200,000 will fund a facial recognition systems pilot in court facilities. (Re-requested from fiscal year 2011).

Wireless Broadcast Systems Pilot ($0.2 million)
The requested increase of $194,000 will purchase and install wireless broadcast systems at six pilot sites. The proposed automated system will give CSOs the ability to respond to duress alarm locations quickly and the judiciary would greatly benefit from rapid responses to threatening or medical distress situations.

## COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES

*Salaries and Expenses*

### SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | |
|---|---|
| Assumed Fiscal Year 2011 Salaries and Expenses Appropriation | $5,042,168,000 |
| Assumed Vaccine Injury Compensation Trust Fund (Appropriation) | $4,785,000 |
| **Total, Fiscal Year 2011 Assumed Available Appropriation** | $5,046,953,000 |
| | |
| Fiscal Year 2012 Salaries and Expenses Appropriation Request | $5,236,166,000 |
| Fiscal Year 2012 Vaccine Injury Compensation Trust Fund Appropriation Request | $5,011,000 |
| **Total, Fiscal Year 2012 Appropriation Request** | $5,241,177,000 |
| | |
| **Requested Increase from Fiscal Year 2011 Appropriation** | $194,224,000 |

## APPROPRIATION LANGUAGE

## COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES

## SALARIES AND EXPENSES

For the salaries of circuit and district judges (including judges of the territorial courts of the United States), justices and judges and judges retired from office or from regular active service, judges of the United States Court of Federal Claims, bankruptcy judges, magistrate judges, and all other officers and employees of the Federal Judiciary not otherwise specifically provided for, [and] necessary expenses of the courts, *and the purchase of uniforms for Probation and Pretrial Services Office staff*,  as authorized by law, [$5,042,168,000] *$5,236,166,000* (including the purchase of firearms and ammunition), of which not to exceed $27,817,000 shall remain available until expended for space alteration projects and for furniture and furnishings related to new space alteration and construction projects.

In addition, for expenses of the United States Court of Federal Claims associated with processing cases under the National Childhood Vaccine Injury Act of 1986 (Public Law 99-660), not to exceed [$4,785,000] *$5,011,000*  to be appropriated from the Vaccine Injury Compensation Trust Fund.

SUMMARY OF REQUEST
SALARIES AND EXPENSES
FISCAL YEAR 2012
(Dollar amounts in thousands)

| Fiscal Year 2012 Resource Requirements: | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|
| | FTEs | Amount | FTE | Amount | FTE | Amount |
| Fiscal Year 2011 Total Available Resources (includes Vaccine Injury Fund).............. | 1,671 | 332,565 | 28,945 | 5,273,001 | 30,616 | 5,605,566 |
| Fiscal Year 2010 Encumbered Carryforward ..................... | - | - | - | (63,113) | - | (63,113) |
| Fiscal Year 2011 Financial Plan (includes Vaccine Injury Fund)..................... | 1,671 | 332,565 | 28,945 | 5,209,888 | 30,616 | 5,542,453 |
| Non-appropriated sources of funding: | | | | | | |
| Estimated Fiscal Year 2011 Fee Collections..................... | - | - | - | (290,500) | - | (290,500) |
| Carryforward Balances from Fiscal Year 2010 into Fiscal Year 2011..................... | - | - | - | (168,500) | - | (168,500) |
| Carryforward from the Judiciary Information Technology Fund..................... | - | - | - | (28,500) | - | (28,500) |
| Carryforward from War Supplemental..................... | - | - | - | (8,000) | - | (8,000) |
| Fiscal Year 2011 Assumed Appropriation (includes Vaccine Injury Fund)..................... | 1,671 | 332,565 | 28,945 | 4,714,388 | 30,616 | 5,046,953 |

5.2

| Page | | Mandatory FTEs | Mandatory Amount | Discretionary FTE | Discretionary Amount | Total FTE | Total Amount |
|---|---|---|---|---|---|---|---|
| | Fiscal Year 2011 Base Appropriation (including Vaccine Injury Fund).............. | 1,671 | 332,565 | 28,945 | 4,714,388 | 30,616 | 5,046,953 |
| | Adjustments to reflect expected mandatory costs | | (11,556) | | 11,556 | | - |
| | **Adjustments to Base to Maintain Current Services:** | | | | | | |
| | **A. Judges** | | | | | | |
| 5.28 | 1.  Benefit cost adjustments | - | 1,703 | - | 643 | - | 2,346 |
| 5.28 | 2.  Senior judges (24 judges FTE/80 staff FTE)............... | 24 | 4,611 | 80 | 8,761 | 104 | 13,372 |
| 5.29 | 3.  Increase in average number of filled Article III judgeships and base adjustment (2 judges FTE and 11 staff FTE)............... | 2 | 384 | 11 | 1,236 | 13 | 1,620 |
| 5.30 | 4.  Non-recurring costs associated with filled fiscal year 2011 judges (Article III and magistrate judges)................. | - | - | - | (1,031) | - | (1,031) |
| | **B. Court Personnel and Programs** | | | | | | |
| 5.32 | 5.  Pay and benefit cost adjustments | | | | | | |
| 5.32 | a. Promotions and within-grade increases................. | - | - | - | 24,497 | - | 24,497 |
| 5.32 | b. Benefit increases. ............... | - | - | - | 14,597 | - | 14,597 |
| 5.32 | c. Less one compensable day ............... | - | - | - | (12,383) | - | (12,383) |
| 5.32 | 6.  Funding necessary to maintain fiscal year 2011 service levels due to an anticipated decline in non-appropriated funds. | - | - | - | 80,835 | - | 80,835 |

5.3

413

5.4

| Page | C. Other Mandatory Changes | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|---|
| | | FTEs | Amount | FTE | Amount | FTE | Amount |
| 5.34 | 7. Inflationary adjustments................................. | - | - | - | 14,951 | - | 14,951 |
| 5.34 | 8. Vaccine Injury Compensation Trust Fund adjustment... | - | - | - | 226 | - | 226 |
| 5.34 | 9. GSA space rental and related services | | | | | | |
| 5.34 | a. Annualization of new fiscal year 2011 space............. | - | - | - | 8,744 | - | 8,744 |
| 5.35 | b. New space to be delivered in fiscal year 2012............ | - | - | - | 3,059 | - | 3,059 |
| 5.35 | c. Inflationary increase in GSA space rental rate costs (0.6%)... | - | - | - | 5,830 | - | 5,830 |
| 5.35 | d. Reduction in tenant improvements funding related to decrease in planned non prospectus projects................ | - | - | - | (3,608) | - | (3,608) |
| 5.35 | e. Other space-related adjustments.......................... | - | - | - | 1,610 | - | 1,610 |
| 5.39 | 10. Information technology adjustments to maintain ongoing operations.......... | - | - | - | 1,987 | - | 1,987 |
| | Subtotal, Adjustments to Base to Maintain Current Services.................... | 26 | 6,698 | 91 | 149,954 | 117 | 156,652 |
| | Total Current Services Appropriation Required................ | 1,697 | 327,707 | 29,036 | 4,875,898 | 30,733 | 5,203,605 |
| | **D. Program Increases** | | | | | | |
| 5.40 | 11. New fiscal year 2012 full-time magistrate judges and staff (4 new judgeships/ 4 FTE and 12 staff FTE)........ | - | - | 16 | 2,360 | 16 | 2,360 |
| 5.45 | 12. Fiscal year 2012 court support staff due to workload changes................ | - | - | 257 | 21,336 | 257 | 21,336 |
| 5.46 | 13. New Information and technology systems and infrastructure improvements | - | - | - | 13,876 | - | 13,876 |
| | Subtotal, Program Increases........ | - | - | 273 | 37,572 | 273 | 37,572 |
| | Total Fiscal Year 2012 Appropriation Request................ | 1,697 | 327,707 | 29,309 | 4,913,470 | 31,006 | 5,241,177 |
| | Total Appropriation Increase, Fiscal Year 2011 to Fiscal Year 2012............ | 26 | 6,698 | 364 | 187,536 | 390 | 194,224 |

**Page**  **Financing the Fiscal Year 2012 Request:**

| | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|
| | FTEs | Amount | FTE | Amount | FTE | Amount |
| **Total Appropriation Request, Fiscal Year 2012**............... | 1,697 | 327,707 | 29,309 | 4,913,470 | 31,006 | 5,241,177 |
| 5.46  14. Estimated Fiscal Year 2012 Fee Collections............... | - | - | - | 289,665 | - | 289,665 |
| 5.47  15. Anticipated Unencumbered Carryforward from Fiscal Year 2011... | - | - | - | 125,000 | - | 125,000 |
| **Estimated Obligations, Fiscal Year 2012**............... | 1,697 | 327,707 | 29,309 | 5,328,135 | 31,006 | 5,655,842 |

5.5

COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES
Salaries and Expenses

| Activity ($000) | FY 2010 | | | FY 2011 | | | FY 2012 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Direct | Offsetting Coll. | Total Oblig. | Direct | Offsetting Coll. | Total Oblig. | Direct | Offsetting Coll. | Total Oblig. |
| Appeals | 845,089 | 47,093 | 892,182 | 853,725 | 77,407 | 931,132 | 880,517 | 69,664 | 950,181 |
| District | 2,383,961 | 138,579 | 2,522,540 | 2,408,965 | 223,639 | 2,632,604 | 2,484,490 | 201,973 | 2,686,463 |
| Bankruptcy | 623,757 | 34,759 | 658,516 | 630,130 | 57,134 | 687,264 | 649,906 | 51,419 | 701,324 |
| Probation/Pretrial | 1,172,058 | 65,314 | 1,237,372 | 1,184,092 | 107,361 | 1,291,453 | 1,221,252 | 96,622 | 1,317,874 |
| Total Obligations | 5,024,864 | 285,746 | 5,310,610 | 5,076,913 | 465,540 | 5,542,453 | 5,236,166 | 419,677 | 5,655,842 |
| Anticipated Financial Plan Savings | - | - | - | - | (125,000) | (125,000) | - | - | - |
| Revised Obligations | 5,024,864 | 285,746 | 5,310,610 | 5,076,913 | 340,540 | 5,417,453 | 5,236,166 | 419,677 | 5,655,842 |
| | | | | | | | | | |
| Unobligated Balance, Start of Year | | | | | | | | | |
| S&E No-Year Funds | (2,498) | - | (2,498) | (6,261) | - | (6,261) | - | - | - |
| Information Technology Funds | (36,093) | - | (36,093) | (28,484) | - | (28,484) | - | - | - |
| Fee Collections | - | (281,949) | (281,949) | - | (170,255) | (170,255) | - | (125,000) | (125,000) |
| | | | | | | | | | |
| Prior Year Recoveries | | | | | | | | | |
| Salaries and Expenses | - | (26,091) | (26,091) | - | - | - | - | - | - |
| Information Technology Funds | - | - | - | - | - | - | - | - | - |
| Unobligated Balance, End of Year | | | | | | | | | |
| S&E No Year Funds | 6,261 | - | 6,261 | - | - | - | - | - | - |
| Information Technology Funds | 28,484 | - | 28,484 | - | - | - | - | - | - |
| Fee Carryforward | - | 170,255 | 170,255 | 125,000 | 125,000 | 125,000 | - | - | - |
| | | | | | | | | | |
| Available Appropriation (Direct) | 5,021,018 | 147,961 | 5,168,979 | 5,042,168 | 295,285 | 5,337,453 | 5,236,166 | 294,677 | 5,530,842 |
| | | | | | | | | | |
| Supplemental Appropriation | (10,000) | - | (10,000) | - | - | - | - | - | - |
| | | | | | | | | | |
| Offsetting Collections | | | | | | | | | |
| Fee Collections | - | (142,533) | (142,533) | - | (290,500) | (290,500) | - | (289,665) | (289,665) |
| Vaccine Injury Trust Fund | - | (5,428) | (5,428) | - | (4,785) | (4,785) | - | (5,011) | (5,011) |
| | | | | | | | | | |
| Appropriation (Direct) | 5,011,018 | - | 5,011,018 | 5,042,168 | - | 5,042,168 | 5,236,166 | - | 5,236,166 |

5.6

## COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES
### Salaries and Expenses
### Obligations by Budget Object Class ($000)

| Description ($000) | FY 2010 | | | FY 2011 | | | FY 2012 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Direct | Offsetting Coll | Total Oblig. | Direct | Offsetting Coll | Total Oblig. | Direct | Offsetting Coll | Total Oblig. |
| 1100 Personnel compensation | 2,515,022 | 143,020 | 2,658,042 | 2,512,658 | 230,404 | 2,743,062 | 2,591,605 | 207,716 | 2,799,321 |
| 1200 Personnel benefits | 734,762 | 41,783 | 776,545 | 765,934 | 70,234 | 836,168 | 789,960 | 63,315 | 851,275 |
| 1300 Benefits for former personnel | 5,556 | 316 | 5,872 | 5,762 | 528 | 6,290 | 5,943 | 476 | 6,419 |
| 2100 Travel | 61,388 | 3,491 | 64,879 | 61,444 | 5,634 | 67,078 | 63,371 | 5,079 | 68,450 |
| 2200 Transportation of Things | 5,951 | 338 | 6,289 | 6,495 | 596 | 7,091 | 6,699 | 537 | 7,236 |
| 2310 Rental payments to GSA | 898,660 | 51,104 | 949,764 | 889,184 | 81,516 | 970,720 | 914,591 | 73,304 | 987,895 |
| 2320 Rental payments to others | 29,792 | 1,694 | 31,486 | 29,304 | 2,687 | 31,992 | 32,579 | 2,611 | 35,190 |
| 2330 Communications, utilities & misc | 109,631 | 6,234 | 115,865 | 107,597 | 9,866 | 117,463 | 110,972 | 8,894 | 119,866 |
| 2400 Printing and reproduction | 16,550 | 941 | 17,491 | 16,408 | 1,505 | 17,913 | 16,923 | 1,356 | 18,279 |
| 2500 Other services | 444,511 | 25,278 | 469,789 | 452,283 | 41,473 | 493,756 | 466,470 | 37,387 | 503,857 |
| 2600 Supplies and materials | 22,200 | 1,262 | 23,462 | 23,230 | 2,130 | 25,360 | 23,959 | 1,920 | 25,879 |
| 3100 Equipment | 180,842 | 10,234 | 191,126 | 206,615 | 18,946 | 225,561 | 213,096 | 17,080 | 230,176 |
| Total Obligations | 5,024,864 | 285,746 | 5,310,610 | 5,076,913 | 465,540 | 5,542,453 | 5,236,166 | 419,677 | 5,655,842 |
| Anticipated Financial Plan Savings | - | - | | - | (125,000) | (125,000) | | | |
| Revised Obligations | 5,024,864 | 285,746 | 5,310,610 | 5,076,913 | 340,540 | 5,417,453 | 5,236,166 | 419,677 | 5,655,842 |

5.7

417

5.8

## COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES
### SALARIES AND EXPENSES
### Summary of Mandatory Obligations

| | FY 2011 [1] | | FY 2012 | | |
|---|---|---|---|---|---|
| | No. of Authorized Judgeships | Compensation ($000) | No. of Authorized Judgeships | Compensation ($000) | Increase ($000) |
| Circuit Judgeships | 167 | 30,247 | 167 | 31,038 | 791 |
| District Judgeships | 678 | 114,696 | 678 | 116,785 | 2,090 |
| Senior/Retired Judgeships | | 111,583 | | 114,859 | 3,276 |
| Bankruptcy Judgeships | 351 | 64,483 | 351 | 65,025 | 542 |
| **Total** | **1,196** | **321,009** | **1,196** | **327,707** | **6,698** |

1/ Fiscal year 2011 reflects the planned obligation level; enacted level was $332,565,000.

418

5.9

**COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES**

Summary of Personnel Compensation and Benefits by Activity [1]

| Program | FY 2010 Actual FTE | FY 2010 Actual Amount ($000) | FY 2011 Estimate FTE | FY 2011 Estimate Amount ($000) | Adj. to Base FTE | Adj. to Base Amount ($000) | FY 2011 Workload Adj. FTE | FY 2011 Workload Adj. Amount ($000) | Total Request FTE | Total Request Amount ($000) |
|---|---|---|---|---|---|---|---|---|---|---|
| **Appeals** | | | | | | | | | | |
| **Judges** | | | | | | | | | | |
| Article III Judges | | | | | | | | | | |
| Active | 149 | 30,198 | 150 | 30,247 | - | 791 | - | - | 150 | 31,038 |
| Senior | 107 | 22,716 | 109 | 22,106 | 1 | 611 | - | - | 110 | 22,717 |
| Retired | 15 | 2,956 | 16 | 3,342 | - | 15 | - | - | 16 | 3,357 |
| Court Staff | | | | | | | | | | |
| Article III Judges' Staff | 1,086 | 104,088 | 1,124 | 108,707 | 3 | 1,024 | 3 | 294 | 1,127 | 109,735 |
| Circuit Executives | 283 | 33,993 | 285 | 39,665 | - | 296 | - | - | 288 | 40,255 |
| Clerks Offices | 711 | 65,237 | 711 | 67,341 | - | 503 | (6) | (102) | 705 | 67,742 |
| Staff and Preargument Attorneys | 383 | 75,061 | 601 | 80,597 | - | 602 | (3) | (86) | 598 | 81,113 |
| Librarians | 272 | 28,778 | 276 | 31,734 | - | 237 | 3 | 263 | 279 | 32,234 |
| Bankruptcy Appellate Panels | 17 | 1,893 | 16 | 1,998 | - | 15 | - | - | 16 | 2,013 |
| **Total Appeals** | 3,221 | 366,921 | 3,288 | 385,637 | 4 | 4,058 | (3) | 369 | 3,284 | 390,104 |
| **District** | | | | | | | | | | |
| **Judges** | | | | | | | | | | |
| Article III Judges | | | | | | | | | | |
| Active | 594 | 113,345 | 955 | 114,696 | 2 | 2,000 | - | - | 997 | 116,785 |
| Senior | 396 | 73,876 | 406 | 76,688 | 23 | 2,171 | - | - | 429 | 78,862 |
| Retired | 49 | 9,440 | 52 | 9,547 | - | 476 | - | - | 52 | 10,023 |
| Magistrate Judges | 540 | 103,962 | 555 | 107,456 | - | 636 | 4 | 782 | 559 | 108,874 |
| Court of Federal Claims Judges | 16 | 3,355 | 16 | 3,360 | - | 7 | - | - | 16 | 3,367 |
| Court Staff | | | | | | | | | | |
| Article III Judges' Staff | 2,871 | 294,152 | 2,895 | 310,404 | 75 | 57,220 | - | - | 2,969 | 367,625 |
| Magistrate Judges' Staff | 1,085 | 128,617 | 1,094 | 134,972 | - | 1,003 | 12 | 950 | 1,106 | 136,925 |
| Federal Claims Judges' Staff | 66 | 6,532 | 57 | 6,846 | - | 50 | - | - | 67 | 6,896 |
| Clerks Offices | 6,131 | 580,435 | 6,204 | 621,745 | - | 4,643 | 34 | 2,593 | 6,238 | 628,982 |
| Pro Se and death penalty | 403 | 59,951 | 418 | 64,003 | - | 495 | - | - | 418 | 64,498 |
| Court Reporters | 710 | 79,496 | 714 | 81,911 | 13 | 1,231 | 1 | 59 | 728 | 83,201 |
| Court Interpreters | 54 | 14,608 | 56 | 14,480 | - | 108 | 1 | 120 | 97 | 14,708 |
| **Total District** | 12,954 | 1,469,999 | 13,111 | 1,546,109 | 113 | 70,132 | 52 | 4,504 | 13,275 | 1,620,746 |
| **Bankruptcy** | | | | | | | | | | |
| **Judges** | | | | | | | | | | |
| Bankruptcy Judges | 339 | 65,361 | 344 | 64,483 | - | 542 | - | - | 344 | 65,025 |
| Court Staff | | | | | | | | | | |
| Bankruptcy Judges' Staff | 745 | 84,269 | 776 | 89,858 | - | 665 | - | - | 776 | 90,523 |
| Clerks | 4,385 | 414,834 | 4,540 | 458,823 | - | 3,426 | 143 | 10,559 | 4,683 | 472,818 |
| Bankruptcy Administrators | 59 | 6,637 | 62 | 7,619 | - | 57 | - | - | 62 | 7,676 |
| **Total Bankruptcy** | 5,517 | 571,140 | 5,722 | 620,783 | - | 4,690 | 143 | 10,559 | 5,865 | 636,042 |
| Probation/Pretrial Services | 8,323 | 949,611 | 8,495 | 1,018,118 | - | 7,618 | 82 | 7,609 | 8,577 | 1,033,345 |
| **Total Judges** | 3,204 | 427,408 | 2,242 | 431,825 | 26 | 7,341 | 4 | 782 | 2,272 | 439,948 |
| **Total Chambers** | 6,155 | 677,399 | 6,374 | 714,791 | 78 | 60,461 | 12 | 950 | 6,463 | 776,202 |
| **Total Court Staff** | 21,366 | 2,252,624 | 22,000 | 2,434,032 | 13 | 18,736 | 257 | 71,319 | 22,270 | 2,464,087 |
| **GRAND TOTAL** | 30,035 | 3,357,631 | 30,616 | 3,579,648 | 117 | 86,538 | 273 | 23,951 | 31,006 | 3,688,237 |

[1] Does not include reimbursable positions.

419

5.10

## COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES
### Salaries and Expenses
### Relation of Obligations to Outlays ($000)

|  | FY 2010 Actual | FY 2011 Estimate | FY 2012 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total Obligations | 5,310,610 | 5,542,453 | 5,655,842 | 113,389 |
| Obligated balance, start of year | 258,948 | 149,687 | 244,347 | 94,660 |
| Obligated balance, end of year | (149,687) | (244,347) | (252,738) | (8,351) |
| Adjustments in expired accounts | (34,651) | - | - | - |
| **Total Outlays** | **5,385,220** | **5,447,793** | **5,647,451** | **199,658** |
| | | | | |
| Less offsets from: | | | | |
| Fee Collections and Other Carry/forward | (280,318) | (335,755) | (414,665) | (78,910) |
| Use of JITF No-Year Balances | (7,609) | (28,484) | 0 | 28,484 |
| Vaccine Injury Trust Fund | (5,428) | (4,785) | (5,011) | (226) |
| **Net Outlays** | **5,091,865** | **5,078,769** | **5,227,775** | **149,006** |

# GENERAL STATEMENT AND INFORMATION

Funds appropriated for the Salaries and Expenses account are for the salaries, benefits, and other operating expenses of judges and supporting personnel for the United States courts of appeals, district courts, bankruptcy courts, United States Court of Federal Claims, and United States probation and pretrial services offices. This account makes up 72 percent of the judiciary's total appropriations request, and 76 percent of the *Courts of Appeals, District Courts and Other Judicial Services* request. It supports 2,272 judges, 6,463 chambers staff, and 22,270 court support staff positions located throughout the United States in 683 federal court buildings and facilities (excludes Defender Services Offices).

## Fair and Efficient Judicial Process

The rulings of the federal courts protect the rights and liberties guaranteed by the Constitution. Through fair and impartial judgements, the federal courts interpret and apply the law to resolve disputes. The courts of appeals, district courts, bankruptcy courts, and federal probation and pretrial services offices all work to ensure a fair and independent judicial process.

The district court is responsible for administering justice in civil and criminal cases under federal jurisdiction in 94 judicial districts throughout the United States and its territories. The public benefits from an effective and efficient district court program by having criminal defendants processed through the criminal justice system and by having civil disputes resolved quickly and fairly.

The 94 judicial districts are organized into 12 regional circuits, each of which has a United States court of appeals. The appellate court is responsible for hearing appeals from the district courts and the bankruptcy appellate panel (if one exists) located within its circuit, as well as appeals from certain federal administrative agencies and, in limited situations, direct appeals from bankruptcy courts. The appellate courts also have original jurisdiction in some categories of cases. A party has the right to appeal every federal case in which a district court enters a final judgement. When an appeal is filed, a court of appeals reviews the decision and record of proceedings in the lower court or administrative agency. The court of appeals either affirms, reverses or may remand the case back to the original court. The court of appeals will issue a written order or opinion in each case. Appeals from the courts of appeals may be taken to the United States Supreme Court. That court, unlike the courts of appeals, can decide which cases it wants to hear. The Supreme Court can remand cases to the court of appeals or decide to affirm or reverse the court of appeals.

Through the bankruptcy courts, the legal system protects business and individual debtors, as well as their creditors, as intended by law. The bankruptcy court is responsible for providing a legal process for dealing with the debt problems of individuals and businesses through cases filed under one of the chapters of Title 11 of the United States Code, which sets the bankruptcy laws. Giving debtors the ability to construct a plan for repaying creditors, or a "fresh start," as appropriate under the law, is a key purpose of the bankruptcy code.

The federal probation and pretrial services system assists the federal courts in the fair administration of justice. Probation and pretrial services officers provide the courts with verified, objective pretrial services and presentence reports. The courts rely on those reports to make release and sentencing decisions and to provide the parties with notice of all relevant release and sentencing issues. The presentence reports are also used by the U.S. Attorneys Offices to locate assets to be seized in relation to any fines, restitution, or assessments ordered, while the Federal Bureau of Prisons relies on the presentence reports to guide its handling of defendants sentenced to incarceration.

## Immigration Enforcement

Immigration enforcement impacts the district courts, courts of appeals, and probation and pretrial services offices.

### District Courts

Immigration enforcement cases continue to increase as a result of increased immigration enforcement initiatives.

Immigration cases remain the single largest criminal filing category in the federal courts, increasing 14 percent in the last year from 24,694 filings for the one-year period ending June 30, 2009 to 28,132 filings for the one-year period ending June 30, 2010. Since 2008, immigration cases have exceeded the number of drug prosecutions each year. In 2010, filings of immigration cases were seventy six percent higher than filings of drug cases. Although the bulk of these immigration cases are in the five federal judicial districts (Arizona, California-Southern, New Mexico, Texas-Southern, and Texas-Western) along the Southwest Border with Mexico, 26 percent of all immigration cases were in the other 89 district courts throughout the country. The processing of these criminal defendants often requires courts to defer action on civil cases and use the court's available resources to process the criminal workload. The criminal justice focus along the Southwest Border requires the judges and staff from other districts to assist with the courts' dockets. In most instances, there is a need for court interpreter support at every stage of the criminal case process. It is expected that immigration enforcement will continue to expand along the Southwest Border as well as in other parts of the country.

Currently, an unprecedented amount of resources are being allocated to secure the border and combat the flow of drugs and weapons. In August 2010, Congress passed the Southwest Border Security Bill providing an additional $600 million in supplemental funding for border enforcement. Included in the supplemental were increased funds for hiring additional Border Patrol Agents and Customs and Border Protection Officers. Funding was also provided to deploy additional surveillance and detection technology and unmanned aircraft system operations to cover the entire Southwest Border.

With the additional supplemental funding and regularly appropriated resources, enforcement continues to increase along the Southwest Border. As of fiscal year 2010, the Department of Homeland Security (DHS) has nearly doubled the number of agents from almost 10,000 in 2004 to more than 20,500 agents in 2010. The number of agents patrolling the Southwest border has increased by 80 percent since 2004 to nearly 17,500 in fiscal year 2010. In fiscal year 2010, an additional 1,200 National Guard troops have been deployed along the Southwest Border to assist law enforcement agencies

5.12

422

5.13

in cracking down on transnational smuggling and cartel violence which has increase in recent years. Over the past year and a half, DHS has doubled the number of personnel assigned to the Southwest Border Enforcement Security Task Forces, and tripled the number of ICE intelligence analysts working along the US-Mexico border.

The U.S. attorneys are increasing their efforts to combat violations of immigration law revealed by increased law enforcement efforts and prosecute additional caseload brought on by aggressive enforcement of the immigration statutes — including prosecution of aliens who, after deportation, attempt to reenter or are found in the United States illegally, and those involved in terrorism and violent crimes. These additional cases will result in an increased workload for the district courts which will likely continue well into the future.

Appeals Courts

Immigration cases in the courts of appeals, generally from denials of relief from asylum, are adjudicated through the federal immigration courts and the Board of Immigration Appeals (BIA) at DOJ. The number of BIA completions appealed to the federal courts has grown from 1,777 in 2001 to 6,918 in 2010 (an increase of 289 percent). While the filings have begun to drop from their peak in 2006, these cases continue to demand extensive resources and are a far greater share of total caseload in recent years. Terminations of these appeals have not kept up with filings, resulting in pending BIA appeals increasing from 1,466 in 2001 to 9,235 in 2010 (an increase of 530 percent). The cumulative effect of these filing increases has impacted both the judges and staff in the courts of

appeals. Courts have revised case-review processes to accommodate the volume of petitions for review from the BIA. These cases often require de novo[1] review of complex agency records and require additional time for judges and staff. The courts have had to develop greater expertise in this area and some courts have created immigration specialists. These cases require clerks' offices to handle a large number of records from DOJ and process numerous motions per case. Appellate staff has increased over the past several years to handle this increased workload.

Probation and Pretrial Services Offices

The volume of work for probation and pretrial services is dictated by prosecutions brought by U.S. Attorneys Offices and the number of inmates released by the Federal Bureau of Prisons (BOP). Of the 103,851 defendants investigated by pretrial services in the 12 month period ending June 2010, half were non-citizens of the United States or their citizenship could not be determined. Coupled with the volume of work related to immigration cases there is an increase in complexity. A significant challenge for the probation and pretrial services officers is the weakening tie to the community of defendants and offenders who are illegal or temporary aliens and who often have limited involvement with mainstream elements in society. A defendant's illegal alien status clearly complicates the pretrial service officer's ability to find less costly, non-custodial options that will allow for the defendant's pretrial

[1] An appeal in which the appellate court uses the trial court's record but reviews the evidence and law without deference to the trial court's rulings.

release. Another related problem with immigration cases is the necessity to coordinate interviews with court-certified interpreters, resulting in additional time and costs.

For various reasons, not all alien offenders are deported upon being convicted of a federal crime. In fact, more than 5,400 offenders currently under active post-conviction supervision are listed as non-citizens of the United States. This includes confirmed "illegal aliens" and others whose immigration status is still being litigated. In many instances, as immigration authorities process their amnesty and related applications, alien-offenders remain in a legal limbo with no authority to secure employment or enroll in school. This places the probation officer in a situation where the conditions of supervision, which require gainful employment or pursuit of education, are at odds with immigration rules. Officers struggle to minimize the opportunities for recidivism while trying to stabilize offenders' living situations pending final action by immigration authorities.

### Probation and Pretrial Services Program

The Probation and Pretrial Services program has ongoing initiatives to enhance and promote community safety, reduce recidivism, and enhance location monitoring. A summary of these initiatives and legislative and administrative factors that influence workload is provided below.

### Community Safety

To protect the community, federal probation and pretrial services officers supervise federal defendants and offenders

conditionally released to the community on pretrial services supervision, probation, supervised release, and parole. Officers monitor compliance with conditions as required by statute and court order. They have frequent face-to-face contact with persons under supervision, and conduct unannounced home, employment, and community inspections. During these contacts, officers may seize any contraband in plain view and, with the permission of the court, conduct searches as needed. In cases where the supervision process exposes evidence of recidivism or the defendant/offender engaging in risky behavior (e.g., associating with known felons) the officer acts quickly and preemptively by working with the court to fashion a new judicial order that is both corrective and punitive.

To provide the community with the ultimate protection from recidivism, officers encourage positive, long-term change in persons under supervision. Officers provide or arrange for life skills training, substance abuse testing and treatment, mental health treatment, and other needed services for persons under supervision. They also help supervisees find and maintain gainful employment, pay their debts, and support their dependents. Officers often are successful in bringing about positive change because they can offer significant incentives. Noncompliant behavior can be punished by possible incarceration, while positive behavior can be rewarded with revised conditions of supervision, early termination, and even letters of recommendation to state agencies who adjudicate collateral consequences to a criminal conviction.

5.14

424

## Outcome Measurement Programs

The federal probation and pretrial services system is committed to measuring and acting on outcomes, with a key outcome reduced recidivism among persons currently and formerly being supervised by probation officers. Individual districts have partnered with local universities to study special in-district programs, while the judiciary as a whole has developed the capacity for systemic and long-term studies.

The challenge to all criminal justice researchers is the absence of a single, uniform source for arrest and disposition data, and the varied format and content of the incomplete information that is available. Local and state jurisdictions collect, report and share criminal justice data differently. To overcome this problem, at least to the degree possible, the judiciary has created an automated program that collects arrest and disposition data from multiple sources and interprets the results despite the variation in format and content of the underlying records. The judiciary also has its probation and pretrial services officers using a single case management system which allows for the collection of comprehensive data from all 94 districts. As a result, researchers are beginning to study - on a larger scale than ever before - the relationship between recidivism rates and probation officers' case strategies and interventions.

## Location Monitoring Program

Courts often impose location restrictions on defendants and offenders as part of pretrial and post-conviction supervision terms. Probation and pretrial services officers use a

combination of new technologies and traditional supervision work to verify defendants' and offenders' compliance with such conditions. Some of these new technologies include voice verification systems, radio frequency monitoring devices and global positioning systems.

The voice verification system is an automated system that intermittently places calls to the supervisee's "land line" phones (usually at his or her residence). The supervisee's verbal response to the call is compared to that pre-recorded in the system to confirm that it is the supervisee who answered the phone and is at the approved location. The voice verification system is usually used in low-risk cases where the supervisee is serving a period of home detention or curfew.

A radio frequency (RF) device and related system verify the presence of a defendant/offender at an authorized location using a transmitter and receiver. This technology is ideal for continuous curfew monitoring in the home. Approximately 6,170 defendants/offenders are currently monitored via RF technology.

The global positioning system (GPS) uses satellites and triangulation to monitor a defender/offender's location in the community. GPS is usually reserved for higher-risk cases that involve prohibitions on travel to certain locations (e.g., schools, high crime areas, home of victims or witnesses) or that requires the supervisee to be at specific locations outside the home at a specific time (e.g., place of employment or drug treatment). There are two types of GPS units: active and passive. The active GPS unit monitors a supervisee's movement and immediately relays the information to the probation/pretrial

5.15

425

5.16

## Bankruptcy Courts

Bankruptcy filings have continued to increase significantly over the past two years. Nationwide, filings increased by 20 percent in fiscal year 2010 over fiscal year 2009; this followed a 35 percent increase between fiscal years 2008 and 2009. Since bankruptcy filings tend to continue even after economic recovery, filings tend to continue at a high rate for some time.

### Chapter 11 Bankruptcy Cases

Filings under chapter 11 of the Bankruptcy Code offer the opportunity to reorganize businesses or to liquidate them in an orderly manner. In chapter 11 cases, bankruptcy courts are directly involved in reviewing and approving complicated business reorganization plans and asset sales focusing on the goal of achieving a benefit for all interested parties. The bankruptcy courts expect to handle almost 14,000 chapter 11 cases during the 12 months ending June 2011.

### Chapter 7 Bankruptcy Cases

Chapter 7 of the Bankruptcy Code provides an avenue for discharging certain debts to give individual debtors a "fresh start," leaving no liability for discharged debts. "Consumer" bankruptcy petitions are driven by life crises including job loss, large medical bills, divorce, and natural disasters. The bankruptcy courts are expected to handle more than 1,119,000 chapter 7 cases during the 12 months ending June 2011.

While one of the purposes of chapter 7 is to provide for a discharge of debts, individual debtors must qualify for relief under chapter 7 through a "means" test. If the debtor's "current monthly income" is more than the state median, the Bankruptcy Code requires application of the "means test" to

services office. The passive GPS unit monitors the supervisee's movement and records it for later download by the probation/pretrial service office. Approximately 850 defendants/offenders are currently monitored via GPS technology.

### Legislative and Administrative Changes

Legislative and administrative changes influence the workload of probation and pretrial services officers. Each statutory and sentencing guideline change generates a new line of interpretive case law and *ex post facto*[2] issues that must be researched and understood by officers as part of their pretrial and presentence duties. Prior to 1984, there were few significant changes in the law pertaining to federal sentencing. However, following enactment of the Comprehensive Crime Control Act of 1984, which revamped federal pretrial release and sentencing, there have been more than 15 significant legislative modifications. For example, in recent years, legislation related to the prosecution, detention, sentencing, and supervision of sexual offenders (e.g., "PROTECT Act," "Adam Walsh Child Protection and Safety Act," "KIDS Act of 2008") has placed new responsibilities on probation and pretrial services officers.

---

[2] A law that retroactively changes the legal consequences of acts committed or the legal status of facts and relationships that existed prior to enactment of the law.

426

5.17

determine whether the chapter 7 filing is presumptively abusive. If so, the case can be dismissed or converted to a more complex and time consuming chapter 13 filing where the filer does have to repay debt.

### Chapter 13 Bankruptcy Cases

Chapter 13 of the Bankruptcy Code assists individual debtors who have regular income in seeking to adjust their debts within a repayment plan. Under such a plan debtors can save their homes from foreclosure by allowing them to "catch up" past-due payments. The bankruptcy courts are expected to handle more than 459,000 chapter 13 cases during the 12 months ending June 2011, an increase of 7.5 percent over the prior year.

### Court Staffing

### Probation and Pretrial Services Offices

During fiscal year 2010, probation and pretrial services offices staffing levels increased by a net 182 FTE over the end-of-year fiscal year 2009 level. Of these 182 additional FTE, a total of about 90 FTE, or nearly 50 percent was in the five offices located in the Southwest Border of the United States. The judiciary seeks funding for 164 additional staff in probation and pretrial services offices (82 FTE) to support projected workload increase or fiscal year 2012.

### Bankruptcy Courts

During fiscal year 2010, bankruptcy clerk's offices increased on-board staffing levels by 204 FTE in order to handle work associated with a 20 percent increase in filings for the period of June 2009 to June 2010. The judiciary seeks funding for 286

additional staff in bankruptcy courts (143 FTE) to support projected workload increases for fiscal year 2012.

### District Courts

During fiscal year 2010, district court staffing levels for support staff increased by a net 143 FTE over the end-of-year fiscal year 2009 levels. This increase in staffing enabled the district courts to process an increase in criminal felony defendants, especially along the Southwest Border, and to process *pro se* civil filings. Staffing levels in the district courts also allowed for the processing of civil actions which are vital to resolving personal and economic disputes. From 2009 and 2010, diversity of citizenship cases grew 29 percent, Social Security cases grew four percent, and non-prisoner *pro se* cases increased 10 percent, all of which impacted the workload of the district courts. Without sufficient resources, district courts would have to focus more on criminal matters and delay the processing and resolution of civil cases, which could have an impact on the economy in general.

The judiciary seeks funding for 70 additional staff in district courts (35 FTE) to support projected workload increases for fiscal year 2012.

### Workload Trends in the Courts

The judiciary's workload is for the most part generated by forces outside of its control, and the workload in some programs continues to remain at or near record high levels. The funding request for court support staff is based on the previous year's projected caseload or, as in the case of the bankruptcy clerks program, a weighted average of two prior

427

5.18

years' data. Thus, court support staffing requirements for fiscal year 2012 are based on projections for caseload through June 30, 2011. Table 5.1 on page 5.19 displays these caseload factors for each of the 12-month periods ending June 30, 2005 through June 30, 2011 (projected).

5.19

**Table 5.1 Comparison of Judiciary Workload Factors**

| WORKLOAD FACTOR | 12 months ending June 30, 2005 Actual | 12 months ending June 30, 2006 Actual | 12 months ending June 30, 2007 Actual | 12 months ending June 30, 2008 Actual | 12 months ending June 30, 2009 Actual | 12 months ending June 30, 2010 Actual | 12 months ending June 30, 2011 Projected |
|---|---|---|---|---|---|---|---|
| Criminal Filings | 69,876 | 67,872 | 66,674 | 70,024 | 75,324 | 78,213 | 76,500 |
| Year-to-Year Change: | 0% | -3% | -2% | 5% | 8% | 4% | -2% |
| Criminal Defendants Filed | 92,356 | 80,956 | 88,245 | 91,782 | 96,718 | 100,031 | 100,100 |
| Year-to-Year Change: | 0% | -3% | -2% | 4% | 5% | 3% | 0% |
| Probation: Persons Under Supervision | 113,008 | 114,281 | 115,930 | 120,051 | 123,839 | 126,642 | 131,000 |
| Year-to-Year Change: | 0% | 1% | 1% | 4% | 3% | 2% | 3% |
| Pretrial Services: Cases Activated | 98,946 | 99,508 | 95,955 | 98,862 | 103,604 | 110,671 | 113,900 |
| Year-to-Year Change: | 0% | 1% | -4% | 3% | 5% | 7% | 3% |
| Bankruptcy Filings | 1,637,254 | 1,484,570 | 751,056 | 967,831 | 1,306,315 | 1,572,597 | 1,592,800 |
| Year-to-Year Change: | 0% | -9% | -49% | 29% | 35% | 20% | 1% |
| Appellate Filings | 67,999 | 68,313 | 58,899 | 59,406 | 59,399 | 56,097 | 55,000 |
| Year-to-Year Change: | 0% | 0% | -14% | 1% | 0% | -6% | -2% |
| Civil Filings | 282,758 | 244,343 | 272,067 | 256,354 | 257,204 | 285,215 | 291,560 |
| Year-to-Year Change: | 0% | -14% | 11% | -6% | 0% | 11% | 2% |

## Efforts to Contain Costs in the Courts and Limit Appropriation Requirements

The judiciary takes seriously its role as steward of the taxpayers' money and has been a government-wide leader on cost-containment for nearly six years since the Judicial Conference adopted the cost-containment strategy in September 2004. Programs and business practices within the judiciary are continually reviewed to identify areas where economies and efficiencies can be achieved. It is estimated that the judiciary-wide cost-containment initiatives have already saved or avoided hundreds of millions of dollars over the last six years.

Since 2004, the judiciary has successfully implemented many programs to contain costs in the courts, such as (1) controlling space costs, (2) aggregating information technology servers, (3) shaping a more focused, cost-efficient court support staff through work measurement formulas and process redesign, (4) evaluating and revising compensation policies, (5) sharing administrative functions between court units, as well as sharing program functions and space, (6) reducing the amount of time for records retention, (7) establishing budget caps, and (8) initiating the development of a Criminal Justice Act electronic vouchering system, and (9) expansion of the use of interpreters by the way of a Telephone Interpreting Program in courtroom.

The judiciary remains committed to developing additional initiatives to continue to slow the growth in its budget requirements. While this next round of cost-containment initiatives will likely be a challenge to achieve, it is a key component of the judiciary's commitment to control budgetary growth.

### Space and Facilities Program and Initiatives

The judiciary's space and facilities requirements include rental payments to the General Services Administration (GSA) for federally owned and leased space, utilities which exceed the basic levels provided by GSA (e.g., when court proceedings extend beyond normal business hours), alterations of space, payments to private lessors for parking and space, relocation of court property for moves to new courthouses, and sound systems. The requested funding will help ensure adequate facilities are provided to judges, their staff, probation and pretrial services officers, clerks' office staffs, and other court personnel.

Program requirements stem from many factors, including security issues, caseload and staffing level changes, technological advances and correcting deteriorating building conditions. Addressing these operational requirements poses increased challenges for the space and facilities program. Both past and anticipated funding constraints have resulted in the need to re-examine all costs and to curtail significantly the judiciary's future planned spending in the area of space.

The judiciary continues to keep a watchful eye on all of its space to ensure that it is essential, with an emphasis on benefits of teleworking, space re-purposing, and technological advancements. Careful review and analysis of possible impact to recurring rent requirements is performed before a space project is considered and space

430

projects are avoided that would result in an increase to recurring rent costs. Under the Circuit Rent Budget (CRB) program, space requirements are managed at the local circuit level and a set of business rules governs the program. For example, funds may be used for space reuse/re-purpose projects (re-stacking of space within existing space), which allows more staff to fit into the same amount of space. This greatly diminishes the need for acquisition of new space and slows the growth in rent. Considerable oversight is given to managing space project costs.

There are several initiatives underway within the recently delegated authority to the judiciary, which allows court units to enter directly into tenant property alteration construction contracts with private sector companies for projects up to $100,000 in value in an effort control space costs.

Another program being developed in conjunction with GSA is a "menu" of minor tenant alterations initiatives. This "menu" will be designed so that courts can expedite procurement of minor tenant alterations through firm-fixed and pre-negotiated contracts held regionally by GSA or for micro-purchases by GSA. This initiative would accelerate the completion of smaller projects by minimizing the current lengthy procurement process and would enable smaller projects to be completed at a lower cost.

Currently, court units occupy 683 locations nationwide. As a cost-containment measure, the Judicial Conference imposed a moratorium on new courthouse construction in September 2004. When the moratorium ended in September 2006, the Conference implemented additional measures to contain facility costs, and specifically those that would

manage space growth. These measures remain in place today and include rent budget caps, *U.S. Courts Design Guide* space allocation revisions, a rent validation program, and implementation of a comprehensive asset management planning process.

The judiciary's biggest cost containment success has been in controlling rent costs. In fiscal year 2005, GSA rental payments accounted for over 20 percent of the Salaries and Expenses account. At that time, rent was projected to grow by 6-8 percent a year and have almost reached $1.4 billion by fiscal year 2012. As a result, the fiscal year 2012 budget request for GSA space rental totals $993 million, an avoidance of almost $400 million. The graph below compares the pre cost containment and post cost containment savings in rental costs.



**GSA Rent Projections FY 2005 - FY 2012**
($ in Millions)

FY 2005 FY 2006 FY 2007 FY 2008 FY 2009 FY 2010 FY 2011 FY 2012

- - - Projected Obligations (Pre-Cost Containment: Spring 2005)
—■— Actual and Projected Obligations (Post-Cost Containment: Fall 2010 Estimate)

5.21

431

5.22

*Rent Budget Caps*

At its September 2006 session, the Judicial Conference established an annual budget cap for GSA space rental costs for fiscal years 2009 through 2016. The amount of the cap limits rent increases to an average of 4.9 percent per year. At its September 2007 session, the Judicial Conference approved the establishment of circuit-level rent budgets to decentralize decision-making and slow long-term growth in rent. An initial trial of the program was put in place during fiscal year 2008, and a nationwide rent program was implemented in fiscal year 2009. This initiative constitutes a dramatic change in the judiciary's management of space and rent costs and its implementation has transformed all of our space acquisition work processes.

*Courtroom Usage Study*

Based on a courtroom usage study performed from 2005 to 2008, the Judicial Conference adopted a courtroom sharing policy for new courthouses and courtroom construction to be included in the *U.S. Courts Design Guide*. The policy provides for courtroom sharing by senior judges and magistrate judges. In addition, the Judicial Conference authorized a study of courtroom use in bankruptcy courts. A sharing policy based on the study outcomes will be presented to the Judicial Conference in September 2011.

*Asset Management Planning*

In March 2006, the Judicial Conference approved the Asset Management Planning (AMP) process, a revised long-range facilities planning methodology designed to address court facility cost containment concerns. Through fiscal year 2010, the AMP methodology has been applied to a total of 39

district and 3 circuit courts. Of those, 33 courthouses in these districts were affected by a 2004 Judicial Conference-imposed funding moratorium, facilitating an opportunity for assessment under the new AMP process. For all but two of the 33 courthouses, facility plans using the revised methodology are complete. Application of the AMP methodology has shown that facility needs associated with approximately half of the 33 courthouses initially studied, could be addressed by way of a renovation or alteration project, as opposed to a more costly solution of new construction.

In February 2008, the AO and GSA signed a Memorandum of Understanding (MOU) that changes the way rent is charged for the judiciary and will be a significant contributor towards controlling the judiciary's future rent bills. The MOU modified GSA's method for determining courthouse rent charges and resolved other judicial rent concerns. The pricing change became effective in fiscal year 2009 for 18 courthouses that were converted from appraisal-based to Return on Investment-based pricing, the rent has been reduced by approximately 10 percent or $7 million.

*Training Programs*

A national circuit-based space and security training program has been developed to help courts implement cost-containment initiatives and manage their space. Developed in cooperation with training experts from the Federal Judicial Center and court managers, specific training plans were developed for the following programs: circuit rent budgeting, courtroom technology and telecommunications

design and installation, validation of GSA rent billings and space assignments, space and facilities project planning, personal property management, service level agreements with GSA, security in court facilities, and occupancy agreements. Court unit executives and staff from the 2nd Circuit participated in a pilot of the training program in September 2009. As of December 2010, the space and facilities training program was presented to court unit executives and staff in the 3rd, 5th, 8th, 9th, 10th and DC circuits. The judiciary plans to provide this training to the unit executives and staff in the remaining five circuits in 2011.

Library Program Cost Containment

The Judiciary has been monitoring the growth in its library and law book programs for several years. In spite of industry inflationary increases of six to eight percent annually, the total amount budgeted for law books has remained relatively constant for several years. Nationally, law books spending has been declining. Due to cost containment initiatives and in anticipation of future savings, the law books budget will be reduced in fiscal year 2012. Current spending on law books is only 3 percent higher than it was in fiscal year 1999. Over the past five years, librarians have cancelled over 20,000 subscriptions from West, the judiciary's major vendor, that total over $7.3 million in annual subscription costs.

In September 2010, the Judicial Conference approved cost saving recommendations that arose from a study on libraries. The recommendations included (1) establishing guidelines to discourage maintaining subscriptions to regional reporters, state case law reporters, and specialty reporters in libraries; (2) advising circuit librarians to consider significantly reducing the number of subscriptions to the federal reporters in staffed libraries, especially West's Federal Supplement; (3) establishing guidelines to discourage subscriptions to case law reporters for newly appointed and existing judges; and (4) requesting circuit librarians to conduct a comprehensive assessment of usage and the need for headquarters and satellite libraries. The study also requested that the circuit judicial councils working with circuit librarians, library committees, and relevant judges, review satellite libraries to assess the continuing need for each library. The potential savings from these initiatives have yet to be quantified, but will be factored into future budget requests.

Information Technology Service-Delivery Alternatives

The judiciary leverages the use of information technology (IT) to automate business processes and maximize efficiency. For example, the judiciary's Case Management/Electronic Case Files (CM/ECF) system automated the paper intensive case filing process. The judiciary's CM/ECF system is operational in appellate, bankruptcy, and district courts, the Court of International Trade and the Court of Federal Claims. This benefits not only the judiciary, but also the bar, public, and other government agencies that now have greater access to court information. The judiciary anticipates long-term efficiencies will be achieved as a result of the CM/ECF implementation. Consolidation efforts to reduce the number of computer servers nationwide have resulted in

savings and cost avoidances, while enhancing performance levels in some instances.

The bankruptcy courts continue to lead the way in the judiciary in making the best use of electronic filing. Nationally, bankruptcy courts process virtually all of their cases electronically. In addition, the courts have been enhancing efficiency through a combination of local management initiatives and court-developed automation innovations. For years, the bankruptcy clerks have been adopting new management techniques, developing and sharing best practices, and using the flexibility provided under budget decentralization to invest in automation solutions that save resources as well as improve quality and performance.

The judiciary continues its efforts to identify and implement more cost-effective service-delivery models for national IT program applications. Before this initiative, the service delivery model provided court units with local servers to run each system as national IT systems were deployed. Local court staff were given responsibility for technical and administrative work associated with maintaining these systems, performing tasks such as backing up the systems and troubleshooting. Improvements in the national data communications network have allowed the consolidation of servers without compromising the performance levels of existing applications and enhancing it in some instances.

The next phase of this multi-year effort will involve upgrades and enhancement of the data communications network (DCN) with a focus on converged services (combining voice, video, and data traffic over a single, secure network) that is expected to result in improved services and additional cost avoidance to be realized.

Also underway is the development and examination of potential incentives for courts to use standardized IT products to maximize economies of scale and other cost savings or cost avoidances. The judiciary is currently examining the possibility of procuring central purchases of software licenses or renewals that could result in both cost savings and efficiencies for the courts.

A Wireless Telecommunications Expense Management Service is being developed and implemented which has the potential to reduce significantly the amount of time and money courts spend on the administration and support of mobile devices (including auditing wireless plan invoices, resolving billing disputes, identifying and negotiating more affordable wireless service, etc).

Records Management

As part of its cost containment efforts, the Administrative Office has identified approximately 79,000 boxes of judiciary records in storage at the National Archives and Records Administration's (NARA) Federal Records Centers that are past their transfer or destruction date. The Administrative Office is actively working with the courts and NARA to get these boxes transferred or destroyed. The judiciary is also working with NARA to establish new retention policies to reduce retention times from 25 years

5.24

to 10 to 15 years. The new retention policy has been approved for use for district court civil case files. Once implemented, the reduced retention time for civil case files will save the judiciary $7.7 million in reduced storage fees over the next 10 years.

The judiciary is now looking to expand the new retention policies to criminal and bankruptcy case files. Under these new retention policies approximately 523,000 case files will be immediately eligible for disposal. When completed, the judiciary will realize in annual storage cost savings. Implementing this proposed schedule should save the judiciary $27.6 million in storage fees over the next fifteen years.

Criminal Justice Act (CJA) Electronic Vouchering (E-Vouchering) System

The judiciary is working toward implementing a CJA e-vouchering system to replace the current paper-based system. The current voucher review and payment system is very time and resource intensive for judges, court personnel, and CJA panel attorneys. The judiciary anticipates that moving to a paperless system will streamline the review process, improve efficiency and oversight by providing basic automatic checks and balances for claim, and, over time, reduce judiciary personnel costs. At this time, design of this system is underway, with the initial rollout scheduled for fiscal year 2012.

Work Measurement Roadmap

The judiciary has employed work measurement studies to develop staffing formulas for nearly 20 years as a means to

(1) systematically determine the amount of resources needed for staffing; (2) provide empirical justification for budget requests; and (3) fairly and equitably allocate staffing resources to the courts. The Administrative Office has outlined a proposed schedule to conduct new work measurement studies for all court units by fiscal year 2013. Based on the planned schedule, updates to the staffing formulas for courts of appeals and circuit units, and bankruptcy courts, would be ready for implementation as part of the fiscal year 2014 financial plan and the fiscal year 2015 budget request. Updates to the staffing formula for the district courts would be ready for implementation as part of the fiscal year 2015 financial plan and the fiscal year 2016 budget request.

With cost containment an ever-present concern, the judiciary will use the next round of work measurement studies to document efficiency improvements, including establishing potential benchmarks for the next round of data collection through reverse engineering.[5] An analysis of both current and potential shared administrative services will be built into all future work measurement studies as well. These are major efforts underway in order to contain growth for the judiciary's future staffing needs and another milestone in the judiciary's cost-containment efforts.

---

[5] Reverse engineering is a comparison of the results of the current formulas with how the courts are actually executing their staffing allocations. This comparison has provided data which could be used as benchmarks and best practices for measurement times for the upcoming studies. The comparison times also provide an opportunity for more detailed formulas built to provide delineation by court size, circuit, or other differences that may be desired.

5.26

As a cost containment policy, beginning with the fiscal year 2012 budget request, the judiciary is using alternative staffing formulas to determine its court support staffing requirements. These alternative formulas no longer utilize the average time to complete a task, but instead gives more credit to courts which perform those tasks faster than the average. Using this approach reduces the number of new court support staff positions in the fiscal year 2012 request by over 900, and reduces the judiciary's fiscal year budget request by approximately $67 million on an annual basis. The judiciary will use these alternative, lower formulas in its budget requests until updated formulas are completed.

Telephone Interpreting Program (TIP)

The Telephone Interpreting Program (TIP) was established to provide remote interpretation in short court proceedings where certified or otherwise qualified interpreters are not locally available. TIP reduces the need for an interpreter to travel to distant court locations and sometimes having to travel cross country, and allows an interpreter to provide service for multiple proceedings in the same day. The total estimated savings by telephone interpreting in fiscal year 2010 was over $1.1 million. It is estimated that $9.3 million has been saved in travel and contract costs as a result of the TIP program from fiscal year 2001 through fiscal year 2010.

## Fiscal Year 2012 Request

The appropriation request for the Salaries and Expenses account totals $5,241,177,000 for fiscal year 2012, including $5,011,000 for the Vaccine Injury Trust Fund. This is a 3.8 percent increase over the fiscal year 2011 assumed appropriation of $5,046,953,000.

In addition to appropriated funds, the Salaries and Expenses account utilizes other funding sources (excluding slippage) to offset its appropriation requirements, including current year fee collections, carryover of fee balances from the prior year, and no-year appropriation balances. The judiciary projects that these sources of non-appropriated funds will total $414.7 million in fiscal year 2012, $80.8 million less than the $495.5 million utilized in the fiscal year 2011 obligation level.

## Justification of Changes

The changes requested in the fiscal year 2012 budget request are divided into two sections: adjustments to base increases and program increases.

Adjustments to base, totaling $156.7 million (81 percent of the requested increase) are for:

- increases in personnel costs ($29.1 million);
- General Services Administration (GSA) rent and related costs ($15.6 million);
- increases in filled Article III and Senior judgeships ($14.0 million);
- financing adjustments to replace non-appropriated sources of funds with appropriated funds ($80.8 million);

- information technology-related adjustments ($2.0 million); and
- other must-pay operations and maintenance costs ($15.2 million).

Program increases totaling $37.6 million (19 percent of the requested increase) are for:

- 4 new magistrate judges and associated staff ($2.4 million);
- court support staff associated with anticipated additional case filings ($21.3 million); and
- information technology telecommunication infrastructure enhancements ($13.9 million).

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

### Requested Increase: $156,652,000

The following provides information and justification for each of the adjustments to base for the Salaries and Expenses account. This section is divided into three subsections: judges, court personnel and programs, and other adjustments. Each line item is identified in this section by a number that corresponds to the line items in the Fiscal Year 2012 Resource Requirements section on pages 5.3 through 5.4.

437

## A. JUDGES

### 1. *Benefit cost adjustments*

**Requested Increase: $2,346,000**

The requested amount includes $1.4 million to cover premium rate increases in Federal Employee Group Life Insurance (FEGLI) for qualified judges with Option B life insurance coverage (additional coverage above the basic FEGLI coverage) pursuant to 28 U.S.C. §604(a)(5).

An increase of $0.9 million in health benefit payments is required based on the Office of Personnel Management estimates that health benefit premium contributions will increase by 7.0 percent in January 2011, 6.8 percent in January 2012. The requested increase annualizes the 2011 premium increase, and includes a nine-month provision for the anticipated fiscal year 2012 premium increase.

### 2. *Senior judges*

**Requested Increase: $13,372,000**          **FTE: 104**

Funding is requested in fiscal year 2012 for an additional 24 judges expected to take senior status. This request also funds associated chambers staff (80 FTE) to assist these judges. The request includes $4.6 million for the salaries and benefits of judges, $6.9 million for the salaries and benefits of supporting staff, and about $1.9 million for supporting costs such as law books, furniture, travel, supplies, and equipment.

Table 5.2 Senior Judges and Supporting Personnel

| | Additional FTE | Salaries and Benefits ($000) | Operations and Maintenance | Total ($000) |
|---|---|---|---|---|
| Judges Taking Senior Status (Staff Included) | 104 | 11,462 | 1,910 | 13,372 |

Under 28 U.S.C., an Article III judge has three options when leaving active service. Section 371(a) allows the judge to retire from office and receive an annuity for life equal to the salary in effect at the date of retirement. Section 372(a) allows the judge to retire on disability grounds, and provides that the judge receives the salary of the office for life after serving 10 years. Section 371(b) allows the judge to take senior status and to retain the office, but retire from regular active service. Senior status allows the judges to continue rendering substantial judicial service for a number of years, notwithstanding his or her retirement.

5.28

Table 5.3 Article III Senior and Retired Judgeship FTEs

| Fiscal Year | Avg. Senior, Disability, or Retired* |
|---|---|
| 1993 | 389 |
| 1994 | 405 |
| 1995 | 426 |
| 1996 | 435 |
| 1997 | 469 |
| 1998 | 481 |
| 1999 | 485 |
| 2000 | 490 |
| 2001 | 509 |
| 2002 | 514 |
| 2003 | 507 |
| 2004 | 515 |
| 2005 | 517 |
| 2006 | 524 |
| 2007 | 535 |
| 2008 | 532 |
| 2009 | 558 |
| 2010 | 567 |
| Estimates | |
| 2011 | 576 |
| 2012 | 600 |

*Pursuant to 28 U.S.C. 371(a), 371(b), 372(a), and 373.

At the end of fiscal year 2010, 45 judges became eligible to retire; 48 more judges will become eligible in fiscal year 2011; and 46 in fiscal year 2012, for a total of 139 potential retirees. Of the 46 judges eligible to retire in fiscal year 2012, the judiciary estimates that 38 judges will either take senior status or retire, resulting in a net increase of 24 FTE over the 576 FTE funded in fiscal year 2011.

Of this increase, 34 of the 38 are expected to be attributed to judges taking senior status who will continue to render substantial judicial service and thereby will retain some, if not all, of their present staff. Based on current information, the judiciary estimates that the judicial councils of the circuits will authorize staffing to support senior judges using the following average staffing factors: 1.5 and 1.13 law clerks for appellate and district judges, respectively; 0.9 and 0.7 secretaries for appellate and district judges, respectively; and 0.6 court reporter for each district judge.

*3. Increase in average number of filled Article III judgeships*

Requested Increase: $1,620,000        FTE: 13

The fiscal year 2011 financial plan funds 751 FTE for the 845 authorized Article III appellate and district judges. Based on historical confirmation patterns, the judiciary projects 40 judges will be confirmed during fiscal year 2012, offset by the number of active judges who take senior status or retire. Thus, the judiciary anticipates the average number of filled Article III judgeships will increase by 2 FTE above the fiscal year 2011 funded levels.

This request will also fund 4 law clerks, 2 courtroom deputies, 3 secretaries and 2 court reporters associated with the 2 FTE increase in judges. This line item includes $0.4 million for the salaries and benefits of judges, $0.8 million for the salaries and benefits of supporting staff,

5.29

439

and $0.4 million for supporting costs such as lawbooks, furniture, travel, supplies, and equipment.

Table 5.4 Active Article III Judgeship Vacancies

| Fiscal Year | Authorized Article III Judgeships | Average Vacancies | Avg. Number of Active Judges |
|---|---|---|---|
| 1995 | 816 | 63 | 753 |
| 1996 | 814 | 58 | 756 |
| 1997 | 814 | 90 | 724 |
| 1998 | 813 | 83 | 730 |
| 1999 | 813 | 66 | 747 |
| 2000 | 822 | 73 | 749 |
| 2001 | 832 | 94 | 738 |
| 2002 | 832 | 101 | 731 |
| 2003 | 847 | 71 | 776 |
| 2004 | 846 | 41 | 805 |
| 2005 | 845 | 41 | 804 |
| 2006 | 845 | 50 | 795 |
| 2007 | 845 | 50 | 795 |
| 2008 | 845 | 47 | 798 |
| 2009 | 845 | 68 | 777 |
| 2010 | 845 | 102 | 743 |
| Estimates | | | |
| 2011 | 845 | 94 | 751 |
| 2012 | 845 | 92 | 753 |

**4. Non-recurring costs associated with filled fiscal year 2011 judges (Article III and Magistrate judges)**

**Requested Decrease: ($1,031,000)**

This line item non-recurs the one-time costs such as set-up costs for telephones, lawbooks, furnishings, courtrooms, and digital recorders associated with new judges in fiscal year 2011.

5.30

440

5.31

Table 5.5 Summary of Judicial Officers

| | Article III & Bankruptcy Judges (Mandatory Costs) | | | | | | Claims & Magistrate Judges | | | | | |
| | FY 2011 | | | FY 2012 | | | FY 2011 | | | FY 2012 | | |
| | Authorized Positions | FTE | ($000) | Authorized Positions | FTE | ($000) | Authorized Positions | FTE | ($000) | Authorized Positions | FTE | ($000) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Appellate Judgeships | 167 | 151 | 30,247 | 167 | 152 | 31,038 | | | | | | |
| District Judgeships | 678 | 600 | 114,696 | 678 | 601 | 116,785 | | | | | | |
| Senior/Retired | | 576 | 111,583 | | 600 | 114,859 | | | | | | |
| Bankruptcy Judgeships[1] | 351 | 344 | 64,483 | 351 | 344 | 65,025 | | | | | | |
| U.S. Court of Federal Claims | | | | | | | 16 | 16 | 3,360 | 16 | 16 | 3,367 |
| Magistrate Judgeships[2] | | | | | | | 621 | 555 | 107,456 | 624 | 559 | 108,874 |
| Total | 1,196 | 1,671 | 321,009 | 1,196 | 1,697 | 327,707 | 637 | 571 | 110,816 | 640 | 575 | 112,241 |

[1]FTE include recalled bankruptcy judges.
[2]FTE include part-time and recalled magistrate judges.

Table 5.6 U.S. Court of Federal Claims Judges

| Fiscal Year | Authorized Court of Fed. Claims Judgeships | Average Vacancies | Avg. No Active Judges |
|---|---|---|---|
| 1995 | 16 | 0 | 16 |
| 1996 | 16 | 1 | 15 |
| 1997 | 16 | 1 | 15 |
| 1998 | 16 | 4 | 12 |
| 1999 | 16 | 1 | 15 |
| 2000 | 16 | 0 | 16 |
| 2001 | 16 | 1 | 15 |
| 2002 | 16 | 4 | 12 |
| 2003 | 16 | 2 | 14 |
| 2004 | 16 | 1 | 15 |
| 2005 | 16 | 0 | 16 |
| 2006 | 16 | 0 | 16 |
| 2007 | 16 | 0 | 16 |
| 2008 | 16 | 0 | 16 |
| 2009 | 16 | 0 | 16 |
| 2010 | 16 | 0 | 16 |
| Estimates | | | |
| 2011 | 16 | 0 | 16 |
| 2012 | 16 | 0 | 16 |

Table 5.7 Bankruptcy Judges (excludes recalled)

| Fiscal Year | Authorized Bankruptcy Judgeships | Avg. Vacancies | Avg. No Active Judges |
|---|---|---|---|
| 1995 | 326 | 11 | 315 |
| 1996 | 326 | 14 | 312 |
| 1997 | 326 | 13 | 313 |
| 1998 | 326 | 13 | 313 |
| 1999 | 326 | 15 | 311 |
| 2000 | 325 | 18 | 307 |
| 2001 | 324 | 12 | 312 |
| 2002 | 324 | 18 | 306 |
| 2003 | 324 | 18 | 306 |
| 2004 | 324 | 4 | 320 |
| 2005 | 324 | 12 | 312 |
| 2006 | 352 | 16 | 336 |
| 2007 | 352 | 12 | 340 |
| 2008 | 352 | 12 | 340 |
| 2009 | 352 | 17 | 335 |
| 2010 | 352 | 19 | 333 |
| Estimates | | | |
| 2011 | 351 | 14 | 337 |
| 2012 | 351 | 14 | 337 |

Table 5.8 Magistrate Judges (Full-Time)

| Fiscal Year | Authorized Magistrate Judgeships | FTE |
|---|---|---|
| 1998 | 429 | 421 |
| 1999 | 436 | 431 |
| 2000 | 447 | 436 |
| 2001 | 456 | 452 |
| 2002 | 470 | 462 |
| 2003 | 477 | 464 |
| 2004 | 487 | 488 |
| 2005 | 495 | 490 |
| 2006 | 500 | 496 |
| 2007 | 503 | 492 |
| 2008 | 505 | 504 |
| 2009 | 508 | 500 |
| 2010 | 517 | 506 |
| Estimates | | |
| 2011 | 523 | 520 |
| 2012 | 528 | 524 |

## B. COURT PERSONNEL AND PROGRAMS

### 5. *Pay and benefit cost adjustments*

#### a. **Promotions and within-grade increases**

**Requested Increase: $24,497,000**

The requested increase provides for promotions and within-grade increases for personnel. The salary plan for judicial support personnel provides for periodic within-grade increases for staff who receive at least a satisfactory performance rating. The judiciary is not requesting a cost-of-living increase in fiscal year 2012.

#### b. **Benefit increases**

**Requested Increase: $14,597,000**

An increase in health benefit payments costing $14.6 million is required based on the Office of Personnel Management estimates that health benefit premium contributions will increase by 7.0 percent in January 2011 and by 6.8 percent in January 2012. The requested increase annualizes the 2011 premium increase, and includes a nine-month provision for the anticipated fiscal year 2012 premium increase and other changes.

#### c. **One less compensable day**

**Requested Decrease: ($12,383,000)**

There is one less compensable days in fiscal year 2012 than in fiscal year 2011. The requested decrease provides for personnel compensation and benefits expenses associated with one less compensable day.

### 6. *Funding necessary to maintain fiscal year 2011 service levels due to an anticipated decline in non-appropriated funds*

**Requested Increase: $80,835,000**

In addition to appropriations from Congress, the judiciary relies on various other funding sources to finance its requirements. These non-appropriated funds include current year fee collections, carryforward of fee balances from the prior year, no-year appropriation balances, and Judiciary Information Technology Fund balances. The use of these funds allows the judiciary to reduce its appropriations request on a dollar-for-dollar basis. The judiciary's fiscal year 2012 appropriation request of $5.2 billion reflects a projected availability of $414.7 million in these non-appropriated funds. Without these funds, the judiciary's request in appropriations would have totaled over $5.6 billion.

While the use of these funds benefits the judiciary (and reduce the need for appropriated funds), the amounts available fluctuate year-to-year due to changes in filing fee collections,

442

Table 5.9 Non-Appropriated Sources of Funding

| ($000) | FY 2011 Plan | FY 2012 Request | Difference |
|---|---|---|---|
| Fee Collections | 290,500 | 289,665 | (835) |
| Other Carryforward | 205,000 | 125,000 | (80,000) |
| **Total, Non-Appropriated Sources of Funding, Excluding Slippage** | **495,500** | **414,665** | **(80,835)** |

changes in unobligated balances from prior years, etc. If total non-appropriated funds in the budget year exceed the total non-appropriated funds in the prior year, the budget year's appropriations request can be reduced further. However, if total non-appropriated funds in the budget year are lower than the total non-appropriated funds in the prior year, appropriations are needed to replace those "lost" non-appropriated funds in order to maintain a current services level of obligations.

The fiscal year 2011 obligation level assumes that new fee collections and prior-year carryforward from fiscal year 2010 will total $495.5 million. The fiscal year 2012 request estimates that fee collections and prior-year carryforward will total $414.7 million, a net decrease of $80.8 million from the $495.5 million available in fiscal year 2011 to help finance court operations. This is displayed in Table 5.9 below. The judiciary requests appropriated funds for fiscal year 2012 to replace these non-appropriated funds in order to maintain the same level of services as provided in fiscal year 2011.

The judiciary's estimates for non-appropriated funds typically fluctuate during the fiscal year. Administrative Office staff will update the appropriations subcommittee staff on changes in non-appropriated funding levels during fiscal year 2011.

5.33

## C. OTHER ADJUSTMENTS

### 7. Inflationary adjustments

**Requested Increase: $14,951,000**

Consistent with guidance from the Office of Management and Budget, this request of $15.0 million is required to fund inflationary increases of 1.4 percent for operating expenses such as travel, utilities, printing, contractual services, supplies and materials, and furniture and equipment.

### 8. Vaccine Injury Compensation Trust Fund Adjustment

**Requested Increase: $226,000**

The National Childhood Vaccine Injury Act of 1986 (42 U.S.C. §300aa) created a special fund to pay judgments awarded under the Act. The Vaccine Act also created the Office of Special Masters (OSM) within the United States Court of Federal Claims to hear vaccine injury cases and further stipulates that up to eight special masters may be appointed for this purpose. The special masters' expenditures are reimbursed to the judiciary for Vaccine Injury cases from a special fund set up under the Vaccine Act.

For fiscal year 2012, the judiciary requests $5,011,000 from the Vaccine Injury Compensation Trust Fund, an increase of $226,000 expected to be received from the Trust Fund in fiscal year 2011. The additional $226,000 requested is for standard pay and non-pay inflationary adjustments.

### 9. GSA space rental and related services

**Requested Increase: $15,635,000**

The judiciary requests a net increase of $15.6 million in fiscal year 2012 for General Services Administration (GSA) rent and related services associated with (a) annualizing new space expected to be occupied during fiscal year 2011 (+$8.7 million), (b) new space projected to be delivered by GSA in fiscal year 2012 offset by a reduction in GSA rent set by the Budget Committee of the Judicial Conference based on historical slippage of occupancy dates (+$3.1 million), © inflationary increase for GSA rent costs (+$5.8 million), (d) reduction in tenant improvement estimates for non prospectus projects (-$3.6 million), and (e) other activities associated with space occupied by the courts (+$1.6 million). Table 5.10 on page 5.36 summarizes the request for GSA space rental.

#### a. Annualization of new fiscal year 2011 space

**Requested Increase: $8,744,000**

In fiscal year 2011, the judiciary anticipates that 416,573 additional rentable square feet related to prospectus projects (projects estimated to cost $2.8 million or more in 2011) and 53,392 rentable square feet of non-prospectus space (projects costing less than $2.8 million) will be assigned to the courts of appeals, district courts, bankruptcy courts, and probation and pretrial services offices. Funding for a full year's rent is not included in the fiscal year 2011 level because this new space will be added to the space inventory at various times during the

course of fiscal year 2011. The requested increase of $8.7 million is based on projected occupancy dates and rental rates provided by GSA. Table 5.11 on page 5.37 details the specific prospectus projects that GSA plans to deliver in fiscal year 2011. The annualization amount requested is the difference between the partial-year cost in fiscal year 2011 for prospectus projects, and the full year cost to be incurred in fiscal year 2012.

**b.  New space to be delivered in fiscal year 2012**

**Requested Increase: $3,059,000**

An increase of 538,702 rentable square feet of new space is expected to be added to the judiciary's inventory in fiscal year 2011. Of this total, prospectus projects will account for 469,921 rentable square feet, and non-prospectus space will add 68,781 rentable square feet. The estimated rent cost of this new space (19,264,000) is based on estimated occupancy dates and rent rates calculated by GSA. This is offset by a decrease of $16.2 million in GSA Rent based on an assumed historical slippage of occupancy dates. Table 5.12 on page 5.38 lists prospectus projects that are anticipated to be delivered during fiscal year 2012.

**c.  Inflationary increase in GSA space rental**

**Requested Increase: $ 5,830,000**

This request represents a 0.6 percent inflationary increase in the cost of GSA space rental and maintenance of facilities occupied by the courts for fiscal year 2012. This increase is based on rent estimates prepared by GSA for space occupied by the judiciary.

**d.  Reduction in tenant improvements funding related to decrease in planned non prospectus projects**

**Anticipated Decrease: ($3,608,000)**

A decrease of $3.6 million is projected for allotments to circuits and court units related to plans in fiscal year 2012 to build out tenant improvements in non-prospectus level space projects.

**e.  Other increases for activities associated with space occupied by the courts**

**Requested Increase: $1,610,000**

A net increase of $1.6 million is requested for non GSA space rental for increases in operating and contract services costs for the Thurgood Marshall Federal Judiciary Building ($206,000), reimbursable work authorizations for prospectus level projects ($163,000), furniture requirements for new judges and additional space occupied by court employees in new or renovated facilities ($521,000), and other space related adjustments ($720,000).

**Table 5.10  Fiscal Year 2012 GSA Space Rental Increase**

| Fiscal Year 2011 Base: | Square Feet of Space | Avg. Cost per Square Ft.* | Amount in $000 |
|---|---|---|---|
| Space occupied at start of year (includes delegated buildings): | 39,048,965 | | $956,957 |
| Estimated additional space to be delivered during the base fiscal year | | | |
| Prospectus | 416,573 | | $14,927 |
| Non-prospectus | 53,392 | | $4,763 |
| Subtotal, Fiscal Year 2011 | 469,965 | | $19,690 |
| Funding for tenant improvements to space requested by courts | · | | $32,418 |
| **Total, Fiscal Year 2011** | 39,518,930 | $25.87 | $1,009,065 |
| **Fiscal Year 2012 Increase:** | | | |
| Increase in rent for estimated inflation at 0.6 percent | | | $5,825 |
| Annualization of new space assigned in fiscal year 2011 | | | $8,744 |
| Subtotal | 39,518,930 | | $1,023,634 |
| Space to be delivered in fiscal year  2012: | | | |
| Prospectus | 469,921 | | $18,707 |
| Non-prospectus | 68,781 | | $557 |
| Subtotal, Fiscal Year 2012 | 538,702 | | $19,264 |
| Reduction in funding requested by courts for tenant improvements to space | | | ($3,608) |
| Reduction in GSA Rent to limit rent projections in fiscal year 2012 | | | ($16,205) |
| **Total, Fiscal Year 2012 Budget Request** | 40,057,632 | $25.71 | $1,023,085 |
| **Fiscal Year  2012 Increase** | 538,702 | | $14,020 |

*The fiscal year average cost per square foot includes the annualization of rent costs for space added in the succeeding fiscal year.

5.36

Table 5.11  Space to be delivered in fiscal year 2011 - Prospectus projects, displayed in order of GSA estimated delivery dates

| City | State | Net Added Square Feet to be Delivered | Estimated Occupancy | Fiscal Year 2011 Rent for New Space | Fiscal Year 2012 Rent Cost | Total Annual Rent |
|---|---|---|---|---|---|---|
| Jackson | Mississippi | 122,485 | 10/1/10 | $3,424,540 | $0 | $3,424,540 |
| Little Rock | Arkansas | 41,383 | 11/1/10 | $1,639,449 | $149,041 | $1,788,490 |
| Rockford | Illinois | 45,006 | 11/1/10 | $2,453,523 | $223,048 | $2,676,571 |
| New Bern | North Carolina | no change [1] | 12/30/10 | $71,775 | $23,925 | $95,700 |
| Tampa | Florida | no change [1] | 1/15/11 | $1,066,834 | $355,611 | $1,422,445 |
| Reno | Nevada | 60,570 | 1/15/11 | $583,594 | $194,532 | $778,126 |
| Brooklyn | New York | 80,282 | 2/1/11 | $2,988,649 | $1,494,324 | $4,482,973 |
| Indianapolis | Indiana | no change [1] | 2/1/11 | $109,447 | $54,724 | $164,171 |
| Buffalo | New York | 17,833 | 5/1/11 | $2,316,420 | $3,242,988 | $5,559,408 |
| Jefferson City | Missouri | 49,014 | 9/1/11 | $273,271 | $3,005,976 | $3,279,247 |
| **Total** | | 416,573 | | $14,927,502 | $8,744,169 | $23,671,671 |

1/ Increases in rent for projects with no change in square feet occupied can be due to: higher shell rent, operating costs, and joint use space costs as a result of reappraisals, tenant improvement costs related to alterations in existing space, and increased amortized capital costs for building-specific security improvements.

Table 5.12  Space to be delivered in fiscal year 2012 - Prospectus projects, displayed in order of GSA estimated delivery dates

| City | State | Net Added Square Feet to be Delivered | Estimated Occupancy | Fiscal Year 2012 Rent for New Space | Fiscal Year 2013 Rent Cost | Total Annual Rent |
|------|-------|--------------------------------------|---------------------|-------------------------------------|----------------------------|-------------------|
| Fort Pierce | Florida | 32,010 | 10/1/11 | $1,243,860 | $0 | $1,243,860 |
| New York | New York | 373,723 | 11/1/11 | $12,921,662 | $1,174,697 | $14,096,359 |
| Bakersfield | California | 9,623 | 1/1/12 | $576,275 | $192,091 | $768,366 |
| Tuscaloosa | Alabama | 27,000 | 1/11/12 | $1,039,062 | $346,354 | $1,385,416 |
| San Antonio | Texas | no change [1] | 4/1/12 | $450,650 | $450,651 | $901,301 |
| Chicago | Illinois | no change [1] | 4/26/12 | $1,744,858 | $2,442,802 | $4,187,660 |
| Orlando | Florida | 27,565 | 6/1/12 | $489,591 | $979,181 | $1,468,772 |
| Spokane | Washington | no change [1] | 8/1/12 | $240,898 | $1,204,488 | $1,445,386 |
| **Total** | | **469,921** | | **$18,706,856** | **$6,790,264** | **$25,497,120** |

1/ Increases in rent for projects with no change in square feet occupied can be due to: higher shell rent, operating costs, and joint use space costs as a result of reappraisals, tenant improvement costs related to alterations in existing space, and increased amortized capital costs for building-specific security improvements.

5.38

**10. *Information technology adjustments to maintain ongoing operations***

**Requested Increase: $1,987,000**

An increase of $2.0 million is requested for the Information Technology (IT) program to support the current operations for the judiciary's information management and telecommunication systems. This increase funds telecommunications equipment for buildings undergoing major renovations, replacement of outdated systems, and the replacement of telecommunications systems for courthouses and buildings undergoing major renovations. In addition, this increase provides funding for operations and maintenance activities; court automation support; and infrastructure support for national IT applications.

These information technology funds are requested under the guidance of the Judicial Conference of the United States and according to the goals and strategic initiatives contained in the *Long-Range Plan for Information Technology in the Federal Judiciary*. The judiciary continues to implement programs and systems to support the information technology needs of the courts. The requested funds will allow the judiciary to operate and maintain its information technology infrastructure, products, projects, and services which are essential to the judicial process and the operations of the courts.

To assist the judiciary in implementing its information technology initiatives, Congress established the Judiciary Information Technology Fund (JITF). The JITF was

authorized "without fiscal year limitation," which allows the judiciary to carry forward funds for projects that incur obligations over multiple years. The fund makes it possible to implement the *Long-Range Plan for Information Technology in the Federal Judiciary* and to manage the information technology program over a multi-year planning cycle while maximizing efficiencies and benefits.

A more detailed description of the JITF can be found in section 13 of this submission, "Judiciary Information Technology Fund."

5.39

## D. PROGRAM INCREASES

### 11. New fiscal year 2012 full-time magistrate judges and staff

**Requested Increase: $2,360,000**          **FTE: 16**

The judiciary requests an additional $2.4 million for 4 additional magistrate judges (4 FTE), 12 support staff (12 FTE), and associated operating costs. Because of the critical need for these positions, all four judgeships are "accelerated;" thus, a full-year's funding is assumed for these magistrate judgeships in fiscal year 2012.

Table 5.13 Cost of Additional Magistrate Judges

| | Positions | FTE | Total Request ($000) |
|---|---|---|---|
| New Full-Time Magistrate Judges | 4 | 4 | 782 |
| Supporting Personnel | 12 | 12 | 950 |
| Operating Expenses | | | 628 |
| **Total** | **16** | **16** | **$2,360** |

The Judicial Conference authorizes new magistrate judge positions based upon an individualized showing of need by the requesting district courts. The Conference takes into account all relevant factors in its deliberations on magistrate judge position requests, including the number and locations of authorized district judges. In evaluating requests for full-time magistrate judge positions, the Conference generally considers: (1) the comparative need of the district judges for the assistance of magistrate judges and the overall workload of the district court; (2) the commitment of the court to the effective utilization of magistrate judges; and (3) the availability of sufficient work of the type that the district judges wish to assign to magistrate judges to justify the authorization of additional full-time positions. Consideration also is given to the geographical areas and population to be served, the convenience to the public and bar, the rights of criminal defendants to prompt court proceedings, the number and extent of federally administered lands in the district, transportation and communication facilities, and other pertinent local conditions. As an alternative to authorizing additional full-time magistrate judge positions, the feasibility of using recalled magistrate judges is explored with individual district courts in response to their requests for additional magistrate judge positions.

## Indianapolis, Indiana (4.0 FTE)

The Southern District of Indiana's per judgeship statistics in 2009 were above the national averages in all major categories except felony filings per judgeship (32 v. 97), ranking 85th in the nation, trials completed (18 v. 20), ranking 54th, and cases pending per judgeship (462 v. 545), although the court was ranked 22nd in the nation in this category. The court stood 16th in the nation in weighted filings per judgeship (580 v. 480), 6th in civil filings per judgeship (504 v. 408), and 18th in total cases filed per judgeship (542 v. 537). The court ranked 16th nationally in case terminations per judgeship (552 v. 516).

The court seeks one new full-time magistrate judge position at Indianapolis, for use in a manner similar to the court's current full-time magistrate judges, although the additional resources would also allow the court to be more active in certain areas. The court would like the magistrate judges to become more proactive in managing the court's non-prisoner pro se civil cases. The court also emphasizes the importance of having sufficient resources to devote toward settlement efforts.

The magistrate judges in the Southern District of Indiana are utilized effectively to provide significant assistance to the court. The magistrate judges are randomly assigned every civil case at filing and referred most civil pretrial duties automatically. They conduct a significant number of settlement conferences, dispose of modest civil consent caseloads, and handle pretrial matters in prisoner cases. They handle social security appeals only on a consent basis. Almost all criminal case duties at Indianapolis are handled by the recalled magistrate judge there. There is concern about the full-time magistrate judges' capacity to re-absorb the criminal work

Table 5.14 Full-time Magistrate Judges

| Fiscal Year | Number of Authorized Magistrate Judges | FTE |
| --- | --- | --- |
| 2002 | 470 | 462 |
| 2003 | 477 | 464 |
| 2004 | 487 | 488 |
| 2005 | 495 | 490 |
| 2006 | 500 | 496 |
| 2007 | 503 | 492 |
| 2008 | 505 | 504 |
| 2009 | 508 | 506 |
| 2010 | 517 | 506 |
| 2011 | 523 | 520 |
| 2012 (estimated) | 527 | 524 |

Based on the criteria described above, the Judicial Conference has authorized additional magistrate judge positions in the following locations[6]:

- Indianapolis, IN-S (accelerated)
- Minneapolis, MN (accelerated)
- Santa Ana or Riverside, CA-C (accelerated)
- Las Vegas, NV (accelerated)

[6]Positions approved by the Judicial Conference in September 2010 (accelerated positions require 12 months of funding in fiscal year 2012)

when the recalled magistrate judge is no longer handling it. The magistrate judge at Evansville handles all criminal pretrial duties there. He conducts civil case proceedings at Terre Haute and New Albany.

The magistrate judge at Evansville travels extensively to handle civil case proceedings, mainly settlement conferences, at Terre Haute and New Albany. Typically he is away from Evansville two days each week. With an additional magistrate judge at Indianapolis, it might be possible for the Indianapolis magistrate judges to share some of the civil caseload from Terre Haute and/or New Albany to provide some relief to the incumbent at Evansville.

**Minneapolis, Minnesota (4.0 FTE)**

The District of Minnesota is currently authorized seven full-time magistrate judges to serve seven authorized district judgeships. All seven district judgeships are located in the Twin Cities of Minneapolis and St. Paul. Six full-time magistrate judges are located in the Twin Cities and one is located in Duluth. The Judicial Conference authorized one additional magistrate judge position at Minneapolis in September 2010. The court's ratio of magistrate judge positions to district judgeships is 1 : 1.0, above the national average of 1 : 1.3. Authorization of one additional full-time magistrate judge position will result in a 1 : 0.9 ratio of magistrate judges to district judgeships. The authorization of a ratio of magistrate judge positions to district judges significantly above the national average of 1 : 1.3 generally requires (1) a heavy per judgeship caseload; (2) extensive

utilization of existing magistrate judge resources; or (3) other special caseload factors or unusual circumstances.

The court has established a clear need for additional judicial assistance. The court has an extremely heavy per judgeship caseload, ranked significantly above the national averages in most categories in 2009. The court remains among the busiest in the nation, ranked seventh in weighted caseload in 2009.

The districts full-time magistrate judges are busy and heavily utilized. In addition, since the last survey in June 2007, the court has demonstrated a commitment to improving the utilization of its magistrate judges (1) by ending the system of pairing magistrate judges with particular district judges, and (2) by instituting the monthly report that lists the number of case-dispositive motion referrals made by each district judge to the magistrate judges, which has resulted in a decrease of these referrals by the district judges. The district judges have further recognized the pivotal role played by magistrate judges in the court by increasing the magistrate judges' involvement in the court's governance. Beginning in 2008, the magistrate judges now attend all district judges meetings.

There is ample work to support a seventh full-time magistrate judge position in the Twin Cities. A new position would establish a 1 : 1.0 ratio of active district judges to magistrate judges in the Twin Cities (1 : 0.9 overall), and it would improve the court's ability to adapt to the demands of the heavy civil and criminal caseloads at Minneapolis and St. Paul and help relieve the busy district judges and magistrate judges at these locations.

5.42

452

5.43

**Santa Ana, California (4.0 FTE)**

The Central District of California has 28 district judgeships and 23 full-time magistrate judge positions at three court locations. There are 21 district judges and 18 full-time magistrate judges in Los Angeles; 5 district judges and 3 full-time magistrate judges in Santa Ana; 2 district judges and 2 full-time magistrate judges in Riverside; plus, one part-time magistrate judge position in Santa Barbara. The court has requested one additional magistrate judge position at Santa Ana, and the Judicial Conference authorized it in September 2010. The district's caseload per judgeship is considerably higher than the national averages in several categories. In 2009, the court ranked 5th in the nation in weighted caseload per judgeship (622 v. 480), 8th in civil filings per judgeship (486 v. 408), and 14th in total cases filed per judgeship (578 v. 537). The court had the second highest number of civil filings in the nation in 2009 (13,607), including the largest number of copyright/patent filings (2,652) and a high volume of prisoner filings (1,149) and social security filings (1,123). The heavy caseload is consistent with the large size of the district, which includes the Los Angeles metropolitan area and seven surrounding counties and a population of approximately 18 million people.

Santa Ana is the place of holding court in the Southern Division of the district, which covers Orange County. Civil filings in Santa Ana have increased overall from 2005 to 2009 (from 1,311 to 1,539). Much of this growth is in real property cases arising from home foreclosures, but also Santa Ana is the venue of a significant number of copyright/patent cases (171 filed in 2009), as well as other complex business litigation. In addition, Santa Ana has the second highest number of felony cases filed in the district, behind Los Angeles.

The court's magistrate judges at all locations play a key role in the judicial business of the court. All full-time magistrate judges are automatically referred, in equal numbers, the vast majority of prisoner cases filed in the district for all pretrial matters and reports and recommendations, all social security appeals, and most pro se civil rights cases for pretrial matters and reports and recommendations. Most social security appeals are disposed of by the magistrate judges with consent of the parties. Moreover, the full-time magistrate judges are referred all discovery matters in most civil cases filed in their respective locations and they conduct most of the court's settlement conferences in civil cases. To assist with the court's civil caseload by facilitating the parties' consent to full adjudication of cases by magistrate judges, the court began a district-wide pilot project in January 2009 under which all full-time magistrate judges are included on the case assignment wheels for the random assignment of a portion of civil cases to magistrate judges as the presiding judge in those cases. The cases in which the parties do not consent to the magistrate judge are reassigned to a district judge. The magistrate judges also are responsible for all felony preliminary proceedings in the district, where their workload has increased as a result of more large-scale arrests in gang-related drug and fraud cases and larger numbers of felony defendants, generally.

The authorization of a fourth magistrate judge position at Santa Ana would address the court's need to manage the growing caseload at that location, keep pace with the heavy volume of prisoner and social security case filings, and continue the court's efforts to facilitate consents to magistrate judge adjudication of civil cases. One new position would have no noticeable effect on the current district-wide ratio of full-time magistrate judge positions to district judgeships of

1 : 1.2, only slightly above the national average of 1 : 1.3. In light of these factors, the authorization of one additional magistrate judge position at Santa Ana is justified.

## Las Vegas, Nevada (4.0 FTE)

In a June 2010 magistrate judge survey report, it was noted that a 29% increase in civil filings between 2008 and 2009 (from 2,588 to 3,326), as well as a 52% rise in felony filings during this time period (from 363 to 550), had added to the already significant criminal and civil workloads of the district's magistrate judges. As of May 10, 2010, the Las Vegas magistrate judges had a total of 2,427 civil and criminal cases pending for pretrial management, 606 per magistrate judge. In addition, the district judges were fully occupied, as indicated by the court's above-average weighted caseload per judgeship (577 v. 480) in 2009.

The report concluded that "[a]n additional magistrate judge position would allow the Las Vegas incumbents to devote more time to their assigned duties, e.g. writing, pretrial conferences, settlement conferences, ENE conferences, and case-dispositive motions in felony cases, which they indicated they would like to do. In addition, the 440-mile distance between Las Vegas and Reno, and the ample workloads of the two Reno magistrate judges, make it impractical to utilize the Reno magistrate judges to work on Las Vegas cases on a long-term basis."

The report also noted that the court had expressed its concern that over the next few years the number of district and senior judges will significantly increase as four of the seven active district judges take senior status in the next two years and are replaced with new district judges. The judges indicated that the addition of the replacement judges would enable the district judges to rule on case-dispositive motions faster and to set earlier trial dates, thus placing increased pressure on the magistrate judges to resolve non-case-dispositive matters and hold settlement conferences in civil cases in a timely manner.

Currently, the district has 6 full-time magistrate judges to support 7 district judgeships, a ratio of 1 : 1.2, an additional full-time magistrate judge position at Las Vegas will increase the court's magistrate judge to district judge ratio to 1:1.

5.44

## 12. Fiscal Year 2012 court support staffing workload changes

**Requested Increase: $21,336,000**      **FTE: 257**

The judiciary requests an additional 514 court support staff positions (257 FTE) in appellate, bankruptcy, district clerks' and probation and pretrial services offices in fiscal year 2012 to handle anticipated case filing increases, especially those increases resulting from increases in bankruptcy filings and immigration enforcement efforts.

Table 5.15 Fiscal Year 2012 Staffing Increases

| Program | FY 2012 New Positions | FTE (Reflects 6 Months Funding in FY 2012) | $000 |
|---|---|---|---|
| Bankruptcy | 286 | 143 | $10,569 |
| Probation/Pretrial | 164 | 82 | $7,609 |
| District | 70 | 35 | $2,790 |
| Appeals | (6) | (3) | $368 |
| **Total** | **514** | **257** | **$21,336** |

For bankruptcy courts, the number of bankruptcy filings jumped 20 percent from 1,306,315 in 2009 to 1,572,597 during the 12-month period ending June 30, 2010, as economic uncertainty forced debtors to seek protection from their creditors in bankruptcy courts. Filings are projected to rise another 1 percent during fiscal year 2011. The judiciary

requests 286 additional staff (143 FTE) to handle this increasing workload.

For probation and pretrial services offices, the number of persons under supervision grew by 2 percent during the 12-month period ending June 30, 2010, and is expected to increase by another 3 percent during fiscal year 2011. The number of pretrial services cases activated increased by 7 percent during the 12-month period ending June 30, 2010, and is expected to increase another 3 percent during fiscal year 2011. The judiciary requests 164 additional staff (82 FTE) to handle this increasing complex caseload.

Probation and pretrial services officers provide valuable service to the courts by investigating defendants and offenders, verifying information about these individuals, and making sound and timely recommendations to judicial officers. Another important role for the probation and pretrial services officers is supervising sex offenders. To reduce recidivism and protect the community, officers supervising such offenders must use specialized supervision techniques, such as polygraph examinations, actuarial risk assessments, and other tools to protect the community. While the rate of future prosecutions is difficult to project, it is clear that prosecutions will remain focused on the most persistent and egregious offenders.

For district courts, the number of criminal case filings rose 4 percent for the 12-month period ending June 30, 2010. Criminal filings are projected to decrease slightly in fiscal year 2011. Civil case filings rose 11 percent for the 12-month period ending June 30, 2010 and are expected to increase by 2

# FINANCING THE FISCAL YEAR 2012 REQUEST

*14. Estimated Fiscal Year 2012 Fee Collections*

**Estimated funds available: $289,665,000**

Congress has authorized the judiciary to collect fees for civil and bankruptcy filings as well as fees for a variety of case services, including registry account administration and miscellaneous court case administration costs. A portion of the fees collected by the courts are deposited into a special fund maintained by the Department of Treasury and may be used to reimburse any of the four appropriations within the *Courts of Appeals, District Courts, and Other Judicial Services* heading, as well as the Administrative Office of the United States Courts, for expenses incurred. These fees are available without fiscal year limitation. The judiciary estimates that $289.7 million in revenue from these sources will be available in fiscal year 2012 to finance requirements in the Salaries and Expenses account, a decrease of $0.8 million from the $290.5 million estimated to be available in fiscal year 2011. The judiciary will continue to monitor bankruptcy filings throughout fiscal year 2011 and will advise the appropriations subcommittee staffs of changes in the forecasts.

Table 5.16 lists offsetting receipts by type and displays the amounts collected in fiscal year 2010. Estimates for fiscal year 2011 and fiscal year 2012 are also provided. The judiciary will advise appropriations subcommittee staffs of changes to these estimates.

percent in fiscal year 2011. The judiciary requests 70 additional staff (35 FTE) to handle this increasing caseload.

Case filings in the circuit units and courts of appeals are expected to decrease by 2 percent in fiscal year 2011. A modest net decrease in staff is requested, but a slight net increase in funding is requested due to the increase and decrease in position types across the circuit units and courts of appeals.

A more detailed discussion of court support staffing can be found at Appendix 1 – Court Support Staffing.

*13. Information and technology program*

**a. New automation systems and infrastructure improvements**

**Requested Increase: $13,876,000**

The judiciary requests an increase of $13.9 million to improve financial and project management systems, modernize the judiciary's intranet capabilities and continue implementation of a multi-year effort to replace the judiciary's telecommunications infrastructure.

A more complete discussion of the JITF and justification for the $13.9 million increase can be found in section 13 of this document, "Judiciary Information Technology Fund."

5.46

## 15. Anticipated Unencumbered Carryforward From Fiscal Year 2011 into Fiscal Year 2012

**Estimated funds available: $125,000,000**

The judiciary estimates that $125.0 million will be available through anticipated savings to carry forward into fiscal year 2012 and offset the fiscal year 2012 appropriation request for the Salaries and Expenses account. Savings generally are available due to fewer than projected Article III judicial confirmations, resulting in salary and benefit savings for vacant judgeships and associated staff, slippages in GSA space delivery schedules that reduce space rental and furniture expenses; and unobligated funds returned from the nearly 400 court units throughout the judiciary.

The judiciary will advise appropriations subcommittee staffs of changes to this estimate.

Table 5.16 Offsetting Receipts from Collections

| Type of Collection and Source | FY 2010 Actual Collections ($000) | FY 2011 Estimated Collections ($000) | FY 2012 Estimated Collections ($000) |
|---|---|---|---|
| **Fees** | | | |
| Registry Administration Fees | 1,261 | 2,000 | 2,000 |
| Bankruptcy Filing and Misc. Fees[1] | 244,942 | 254,622 | 249,296 |
| Civil Filing and Misc. Fees[2] | 41,281 | 38,067 | 42,514 |
| Central Violations Bureau Fees | 4,798 | 5,600 | 5,600 |
| Immigration Adjudication and Naturalization Fees | 4,506 | 5,500 | 5,500 |
| Subtotal, Fees | 296,788 | 305,789 | 304,910 |
| Fee allocation to Administrative Office[3] | (14,839) | (15,289) | (15,246) |
| TOTAL TO SALARIES & EXPENSES | 281,949 | 290,500 | 289,665 |

[1] Includes statutory bankruptcy filing fees and bankruptcy court miscellaneous fees.

[2] Includes statutory civil filing fees and appellate court and district court miscellaneous fees.

[3] Based on Judicial Conference policy, up to 5 percent of total fees collected may be used to support Administrative Office requirements.

457

# APPENDIX 1 - COURT SUPPORT STAFFING

This appendix discusses court support staffing for the courts of appeals, district and bankruptcy courts, and for probation and pretrial services offices. It also includes an explanation of the staffing formulas the judiciary uses to determine staffing requirements in the courts, a program statement explaining the purpose and function of these programs, and the importance of receiving adequate funding in fiscal year 2012 for these programs.

### Judiciary Staffing Formulas

The judiciary has employed work measurement for nearly twenty years to determine its staffing requirements, to enable it to justify funding requests for staffing to Congress, and to provide a reliable tool to allocate staffing resources equitably across court types and individual court units. Though the methodology has changed over the years, work measurement's primary purpose remains to bring an empirically-based and practical approach to staffing allocation.

The formulas provide a valuable methodology to determine the level of funding necessary to keep pace with increasing or decreasing workload. As workload fluctuates from year to year, the application of the formulas allows for a corresponding increase or decrease in staffing allocations. This applies both for national formulation purposes by court program type, and at the individual court level for allocation purposes. The formula requirements are based on actual filings, not projected filings.

The staffing formulas are updated periodically to incorporate efficiencies derived from information technology initiatives,

best practices, and other process improvements. This work measurement methodology uses a combination of core modeling and other measurement techniques that better reflect the courts' full staffing requirements. The staffing formulas are based on court-reported data and validated through simultaneous measurement by the Administrative Office.

As a cost containment policy, beginning with the fiscal year 2012 budget request, the judiciary is using alternative staffing formulas to determine its court support staffing requirements. These alternative formulas no longer utilize the average time to complete a task, but instead give more credit to courts which perform those tasks faster than the average. This has the effect of limiting the number of additional staff contained in the judiciary's budget request.

Appendix 1.1

459

Appendix 1.2

*Fiscal Year 2012 Court Support Staffing Requirements*

In fiscal year 2012, the FTE request totals 22,270 FTE, an increase of 1.2 percent over the fiscal year 2011 estimated level of 22,000 FTE. The fiscal year 2012 staffing build is summarized in Table A-1.1 below.

Table A-1.1 Fiscal Year 2012 Staffing Build

|  | Court Support Staffing (FTEs) |
|---|---|
| FY 2011 Financial Plan Funded FTE | 22,000 |
| Adjustments for court reporters associated with changes in active and senior judges | 13 |
| Court staffing funded for workload increases in fiscal year 2012 | 257 |
| **FY 2012 Funded FTE** | **22,270** |

Information supporting each of the courts programs (bankruptcy courts, probation and pretrial services, district courts, and appellate courts) is presented in the following sections.

## Bankruptcy Courts

Table A-1.2 Major Bankruptcy Court Workload Indices[1]

| | 2009 Actual | 2010 Actual | 2011 Estimate |
|---|---|---|---|
| Bankruptcy Filings | 1,306,315 | 1,572,597 | 1,592,800 |

For the 12-month periods ending June 30.

## Program Function Statement

Funding for the federal bankruptcy program is used for salaries and expenses of all active United States bankruptcy judges and supporting personnel as well as for expenses of operations and maintenance. These expenses include communication, printing, contractual services, supplies, equipment, and travel costs incurred by judges and supporting personnel in attending sessions of court or transacting other official business.

### Bankruptcy Clerks

The bankruptcy court clerks' offices serve a critical support role in processing bankruptcy matters. Their work includes: receiving and scanning petitions, schedules, pleadings and other documents; training attorneys, trustees and creditors to use the Case Management/Electronic Case Files (CM/ECF) system; reviewing electronically filed documents for accuracy and compliance with national and local rules, and taking corrective action as necessary; issuing summonses and subpoenas; processing motions; responding to inquiries from the public and other government agencies for case

information; maintaining case dockets; assigning cases to judges; creating notices to be sent to attorneys, debtors, and creditors; receipting and registering claims; scheduling hearings on motions, confirmation and other matters; issuing judgments; recording court proceedings; archiving closed case files; coordinating with the United States Trustees and panel trustees; reporting statistics; scheduling and regulating the movement of cases; establishing motion and trial calendars; scheduling courtroom usage, providing court reporting/recording services and courtroom clerical staff; and maintaining the electronic filing system to enable cases to progress through the judicial system. Staffing resources are allocated based on a work measurement formula that converts specific tasks into work years.

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) added responsibilities, especially those related to means testing, credit counseling and financial management courses, new chapter 13 and dismissal requirements, additional noticing, and applications for fee waivers. A work measurement study conducted after 2005 shows that BAPCPA added between 20 and 30 percent to the case processing workload for bankruptcy clerks' offices.

The clerk of court serves as the chief administrative and financial officer for the court, and is responsible to the court, the United States government, and litigants for the proper collection, maintenance, and accounting for funds that come into the clerk's office. The clerk's office is authorized to collect all fees, costs, and other monies for the bankruptcy court and is accountable for their payment to the United States Treasury. The clerk's staff also manages the planning and execution of the court's budget and financial processes.

Appendix 1.3

## Workload Trends

A number of factors contribute to the workload in bankruptcy courts. Three of the major factors are the number of cases filed, the complexity of the cases, and the increase in pro se filings. The state of the economy and the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), are pivotal drivers of these factors.

### Case Filings

Bankruptcy filings reached record levels in the mid-1990s and peaked in early 2005. Filings surpassed one million each year beginning in 1996 and reached an all-time high in October, 2006, just prior to the effective date of BAPCPA. In anticipation of the changes that BAPCPA would bring, filings increased significantly prior to the October 15, 2005 implementation date. Nationally, filings dropped by half in the following year. However the decrease did not last long, and filings are approaching pre-BAPCPA levels. Filings have increased rapidly as economic conditions worsened in the last few years. Since bankruptcy filings tend to continue even after the economy recovers, the judiciary expects them to continue to increase for some time.

On a national basis, bankruptcy filings increased 20 percent from 1,306,315 to 1,572,597 during the 12-month period ending June 2010, as economic conditions forced debtors to seek protection from their creditors in bankruptcy courts. Across the nation 86 of 90 districts reported growth in filings in 2010. Only four districts reported lower total filings in 2010 than in 2009.

Bankruptcy filings were up throughout the country, with the 9th Circuit reporting a 38 percent increase for the 12 months ending June 30, 2010, the largest increase of any region. California-Central led the way with 129,014 filings, a 48 percent increase. The three other districts in California and the District of Montana all experienced increases of more than 30 percent over the prior 12 months. Yearly filing increases in Nevada, Idaho, Western Washington, and Oregon (all in the 9th Circuit) are above 24 percent. Arizona experienced the largest percentage increase in the country, at 52 percent.

Filings are still rising and they are near the record levels reached before BAPCPA made significant changes in the law. This means bankruptcy courts are handling nearly the same number of cases in the more complicated post-BAPCPA environment as they did pre-BAPCPA. Moreover, the filing trend may cause the number of cases to eclipse pre-BAPCPA levels in the foreseeable future.

### Case Complexity

A second major aspect of the workload in bankruptcy courts (compounding the increased filings) is the impact of BAPCPA on case processing requirements. The law's additional requirements add substantially more work for the courts. For example, the law requires individual filers to receive a credit counseling briefing by an approved agency before filing for bankruptcy, and complete and pass a complex "means test" in order to be eligible for chapter 7 relief. Also, filers under chapters 7 and 13 may not receive a discharge of their debts unless they have completed an approved financial management course. These and other enhanced requirements must be reviewed by the clerk's office, which must take further action if the filers do not meet the requirements. A graphic example of the increased complexity comes from a

Appendix 1.4

bankruptcy clerk's office that reported making almost twice as many docket entries each month in 2008 than it made in 1998. That court's 2009 caseload has rebounded to 130 percent of its 1998 caseload but the more complicated cases require 47 percent more docket entries. This very typical report confirms the results of the work measurement study showing increased work per case in the post-BAPCPA environment.

## Pro Se Filings

Another factor adding to the workload of bankruptcy clerks' offices is the increased number and complexity of pro se filings. The clerk's office must provide assistance to pro se filers, and take more time reviewing the material that is prepared by individuals, rather than by lawyers who are bankruptcy experts.

## Cost Containment Efforts

The bankruptcy courts continue to lead the way in the use of electronic filing. Bankruptcy courts open and process virtually all of their cases electronically. In addition, the courts have been enhancing efficiency through a combination of local management initiatives and court-developed automation innovations. For years the bankruptcy clerks have been adopting new management techniques, developing and sharing best practices, and using the flexibility provided under budget decentralization to invest in automation solutions that save resources as well as improve quality and performance. Current staffing levels are several hundred staff less than the levels in 2003 and 2004, even though current case filings are nearly as high as they were in those years, and the cases are much more complex.

Since a major national system such as CM/ECF must be developed in stages and cannot address all requirements at once, courts have been developing and sharing local initiatives to enhance or extend the functionality of the system and address critical needs. These include cash receipting interfaces, automated case opening, electronic order processing, and calendaring/hearing scheduling programs.

In addition, the bankruptcy courts have begun working with the Administrative Office to develop a new case management system to replace the current one. This effort to begin developing a next generation system now will ensure that the design and implementation will occur long before the threat of obsolescence of the current system occurs and thus help to contain the cost of case processing in the future.

## Methods Analysis Program Adds to Efficiency

To help ensure that all bankruptcy courts are knowledgeable about best case management practices, particularly as they relate to opportunities generated through electronic case filing, the Administrative Office is coordinating with court personnel to update the Methods Analysis Program. This program focuses on identifying and disseminating "best" and/or alternative practices for case management and court operations, such as quality control manuals, administrative procedures, guides, checklists, etc. In addition, the Administrative Office continues to sponsor CM/ECF operational practices forums that bring court personnel together to identify issues and exchange ideas for improvements.

Appendix 1.5

463

Appendix 1.6

Table A-1.3  Components of Bankruptcy Filings

| | Year Ending June 30 | Chapter 7 | Chapters 9, 11, 12, & 15 | Chapter 13 | Total | Adversaries Terminated or Filed[1] |
|---|---|---|---|---|---|---|
| ACTUAL[2] | 2002 | 1,053,230 | 11,845 | 440,231 | 1,505,306 | 63,351 |
| | 2003 | 1,165,993 | 11,475 | 472,811 | 1,650,279 | 71,831 |
| | 2004 | 1,167,101 | 11,453 | 457,171 | 1,635,725 | 90,061 |
| | 2005 | 1,196,212 | 7,097 | 433,945 | 1,637,254 | 95,177 |
| | 2006 | 1,164,815 | 6,670 | 313,085 | 1,484,570 | 84,772 |
| | 2007 | 450,332 | 6,031 | 294,693 | 751,056 | 65,099 |
| | 2008 | 615,748 | 7,662 | 344,421 | 967,831 | 51,496 |
| | 2009 | 907,603 | 14,525 | 384,187 | 1,306,315 | 48,686 |
| | 2010 | 1,133,320 | 15,035 | 424,242 | 1,572,597 | 68,540 |
| ESTIMATED[3] | 2011 | 1,119,400 | 14,300 | 459,100 | 1,592,800 | 73,600 |

[1] Staffing Formulas changed from "adversaries terminated" to "adversaries filed" in spring of 2005. The data for that year and after reflect the change.

[2] Actual data for years 2002 through 2010 is based on the 12-month periods ending June 30.

[3] The fiscal year 2012 budget request is based on 2011 projected caseload (calculated for the 12-month period ending June 30).

## Program Function Statement

Funding for the federal probation and pretrial services system is used for salaries and benefits of staff; drug testing; treatment of mentally ill and substance-abusing defendants and offenders; electronic monitoring; travel costs related to the supervision of defendants and offenders in the community; coordination with law enforcement and treatment providers; officer training; information technology; and normal business expenses.

### Southwest Border Workload Increase

Probation and pretrial offices situated along the border with Mexico have experienced a significant and sustained increase in caseload. The number of new pretrial defendants referred to the offices along the border increased 79 percent between June 30, 2003 and June 30, 2010, going from 28,118 to 50,297 cases. That growth has outpaced the rest of the federal system: in 2003 the five southwest border districts handled 30 percent of the overall federal pretrial services volume, while in 2010 those districts handled 46 percent. Similarly, the border districts have taken on a greater proportion of the presentence investigations and post-conviction revocation cases. In 2010, 50 percent of all of the presentence reports were in these five districts. While aliens who are deported following their incarceration have their supervised release or probation terms made inactive, the case is activated and revocation proceedings are initiated if they illegally re-enter the United States. Unfortunately, those illegal re-entry cases occur with such frequency that the Southern District of California along the border now has the highest proportion of revocation cases in the federal system.

---

## Probation and Pretrial Services

Table A-1.4 Probation and Pretrial Services Workload Indicators[1]

| | FY 2009 Actual (% Change from Previous Yr.) | FY 2010 Actual (% Change from Previous Yr.) | FY 2011 Projected (% Change from Previous Yr.)[2] |
|---|---|---|---|
| Convicted Offenders Supervised in the Community[3] | 173,457 (+3.1%) | 178,475 (+2.9%) | 182,000 (+2.0%) |
| Charged Defendants Supervised in the Community | 54,867 (-4.2%) | 53,267 (-2.9%) | 52,500 (-1.4%) |
| Investigative Reports Completed for Bail Determinations | 103,604 (+4.8%) | 110,671 (+6.8%) | 113,900 (+5.6%) |
| Investigative Reports Completed for Sentencing Determinations | 71,086 (+4.2%) | 75,355 (+6.0%) | 77,400 (+2.7%) |

[1] For fiscal years 2009 and 2010, the number of convicted offenders and charged defendants supervised in the community reflects persons initially received for supervision, under supervision for the entire period, or under supervision at the start of the period and closed. Persons with cases that fall in more than one of these three categories are counted only once.

[2] The fiscal year 2012 budget request is based on 2011 projected caseload (for the 12-month period ending June 30)

[3] June 2009 and 2010 Actuals for probation supervision cases are from the National PACTS Reporting (NPR) database, which is administered by the Administrative Office of the U.S. Courts.

Appendix 1.7

465

## Workload Trends and Resource Requirements

Probation and pretrial services workload is dictated by the prosecutions brought by U.S. Attorneys offices and the number of inmates released to supervision by the Federal Bureau of Prisons (BOP).

In the 12-month period ending June 30, 2010, pretrial services officers conducted 103,851 new investigations on recently charged defendants and material witnesses stemming from new prosecutions. While the rate of future prosecutions is difficult to project, it is clear that prosecutions will remain focused on the most persistent and egregious offenders pursuant to Project Safe Neighborhood and other Department of Justice initiatives.

Also, during the 12-month period ending June 30, 2010, the BOP released 47,339 inmates to the supervision of probation officers in the community. Combined with releases from previous years and probation cases, the daily supervision population reached 126,642 during the 12-month period ending June 30, 2010. The BOP's population now exceeds 210,000 inmates with nearly all of these inmates eventually being released to terms of supervision.

### Serving the Courts

Probation and pretrial services officers provide valuable service to the courts by investigating defendants and offenders, verifying information about these individuals, and making sound and timely recommendations to judicial officers. Pretrial services officers investigate defendants and recommend to the judge whether there are conditions that would reasonably assure the defendant's appearance in court and protect the community while the defendants' cases are pending disposition, as set forth under 18 U.S.C. § 3142.

Probation officers investigate persons convicted of federal crimes and recommend to the judge a sentence that addresses the factors set out in 18 U.S.C. § 3553. Probation officers' presentence reports are shared with the U.S. Attorney and defense counsel to provide notice of all sentencing issues and provide for an efficient and fair sentencing hearing. In 2010, probation officers produced 75,355 sentencing related investigative reports.

### Postconviction Supervision

During the 12-month period ending June 30, 2010, 58,718 offenders began terms of community-based supervision. More than 80 percent of those offenders were received after having completed a custodial sentence with the Bureau of Prisons. In comparison, in 1985, only 48 percent of offenders supervised by federal probation had served a custodial sentence; the majority were sentenced to probation. These figures reflect the continued trend of increasingly challenging offenders released to the community. The challenge is more apparent when one considers the offenses for which these persons are under supervision – 47 percent of these offenders were convicted of narcotics trafficking offenses and 20 percent were convicted of either violent, sex, or weapons offenses.

### Managing Increasing Risk

Many offenders present significant risk to the community, risk that must be mitigated through proactive, community-based supervision. One strong predictor of risk is the nature of the offender's prior criminal record, and the severity of the criminal

Appendix 1.8

466

history of persons coming under federal supervision has been increasing. In 2002, offenders with a criminal history category of II[1] or greater, as determined by the U.S. Sentencing Guidelines, constituted 30 percent of the supervision population. By 2010, offenders in those criminal history categories constituted 54 percent of the population.

The primary actuarial tool probation officers currently use for predicting recidivism is the Risk Prediction Index (RPI). Developed by the Federal Judicial Center and approved by the Judicial Conference in 1997, the RPI enables officers to objectively score offenders on a scale of 0 to 9, where 9 indicates the greatest likelihood of re-offending. The RPI calculates risk using seven static factors, such as whether a firearm was used during the instant offense and level of education. Since 2003, national average RPI scores have steadily increased for all offenders (from 2.89 to 3.55), as well as for subgroups, such as those convicted of drug and violent offenses.

Probation officers must intensify their supervision efforts in the growing number of cases with increased risk. Chief among those efforts is the officers making themselves a presence in the offender's community life, interacting with the offender in the home, neighborhood, and place of

---

[1] To be in a Criminal History Category of II or greater, the person must have multiple prior convictions or a single conviction that resulted in an imprisonment term of sixty days or greater, or committed the federal offense while serving an earlier term of probation, parole or recent release from prison. See U.S. Sentencing Guidelines Section 4A1.1.

employment. Officers also conduct drug tests, develop sources of information in the community, and conduct surveillance and searches when appropriate. If behavior potentially leading to criminal behavior is exposed, officers take both punitive and corrective action. For example, if an offender is abusing alcohol, the probation officer can petition the court for an intermediate sanction, such as community service, as well as enroll the offender in a treatment program and conduct random tests for alcohol use. The probation officer's goal is to ensure compliance with the conditions of supervision and take action to preempt a decline in the offender's conduct or life situation.

## Serious Violations and Revocation

Serious violations of supervision, where the offender commits a violent new offense (homicide, rape, assault, robbery, a felon in possession of a firearm, kidnaping, or racketeering) are relatively rare in the federal system. The proactive approach taken by officers normally allows them to identify and deal with minor violations swiftly before they escalate to more serious criminal activity. Of the 51,528 cases closed from post-conviction supervision during the 12 months ending June 30, 2010, less than 2 percent (867 cases) were reported as revocations based on new violent crimes. By comparison, 29 percent of all cases nationally were closed by revocation, most due to technical violations such as failure to participate in drug treatment or absconding, in which the court and probation officer intervened before criminal recidivism could occur.

## Assisting With Reentry

Many offenders on supervision lack adequate life skills to transition back into society smoothly. Officers help offenders to either reestablish, or secure for the first time, appropriate housing,

Appendix 1.9

employment, and legitimate community relationships. They provide life skills counseling and leverage programs offered by other federal agencies and local social service organizations. Success on supervision requires offenders to overcome not only the original factors that contributed to their criminal behavior, but institutionalization, alienation from family and friends, and other consequences of a lengthy prison term. Throughout the country, officers are securing resources for offenders, cultivating employment prospects, and developing collaborative relationships with a wide variety of organizations. All of these efforts aim to assist in the transition back into the community.

*Substance Abuse and Mental Health*
Another factor influencing workload is the increase in substance abuse and mental health conditions among defendants and offenders. From fiscal year 2008 to fiscal year 2010, the number of offenders under supervision receiving substance abuse treatment increased 6 percent, from 31,605 to 33,636. During that same time period, the number of offenders receiving mental health treatment rose from 10,908 to 13,360 cases, an increase of 23 percent.

Drug and mental health problems usually are detected during pretrial or presentence investigations when officers administer drug tests, interview the defendant and third parties, contact the defendant's family and associates, and review medical, employment and school records. The expanding number of defendants and offenders with substance abuse and mental health conditions creates more challenging work for probation and pretrial services officers. Officers have to investigate and assess treatment resources available in the community,

contract for those services where necessary, formulate treatment plans, and develop supervision strategies for relapse prevention and detection.

*Sex Offenders*
As of June 30, 2010, there were 3,150 federal offenders under supervision in the community who were convicted of a sex offense. Another 2,544 offenders were under supervision with other sex offender history. Although this is a relatively low percentage of the total number of offenders under supervision in the community, sex offenders require specialized supervision techniques and enhanced monitoring.

Sex offenders differ from other offenders because of the nature and impact of their crimes on victims. Probation and pretrial services officers supervising sex offenders are required to understand the complex issues related to sexual re-offending, risk assessment, and risk management. To reduce recidivism and protect the community, officers supervising such offenders must use specialized supervision techniques, such as polygraph examinations, psychosexual evaluations, intense sex offense-specific counseling, surveillance, internet/location monitoring, and enhanced community collaboration. Where necessary, officers must contract for services to address the above needs. In response to the rising number of pretrial defendants charged with sex offenses, specialized treatment services were developed to meet the needs of this population.

When monitoring offenders who are under supervision for a federal sex offense, or who have a history of sex offenses, officers must work closely with local and state law enforcement agencies and sex offender registries as the states continue to implement the

Sex Offender Registration and Notification Act (SORNA). Although SORNA (Title I of the Adam Walsh Child Protection and Safety Act of 2006, Public Law 109-248, July 27, 2006) is the responsibility of the states to implement, officers supervising offenders required to register must ensure that the offenders comply with such requirements where they live, work, and attend school.

In order to maintain proficiency with evolving sex offender management techniques, a Sex Offender Management Working Group was created in 2008. The group consists of sixteen members including officers, specialists and supervisors with specialities in sex offender management, sex offender treatment, electronic monitoring, and cyber-crime technologies. The group's work will result in policy changes and the creation of a monograph specific to the supervision of sex offenders.

*Scientific and Technological Changes*

Probation and pretrial services officers must keep up with technological innovations such as the various location monitoring technologies that can track defendants and offenders both in their homes and in the community. These technologies include voice recognition to confirm offenders' presence in their homes at random times, radio frequency to provide continuous monitoring of offenders in their homes, and Global Position Systems (GPS) to provide continuous tracking of offenders' movements in the community in both passive and real time.

Active GPS tracking continues to be an effective supervision tool for monitoring sex offenders as it gives officers the ability

to establish prohibited areas (zones) in the community for offenders (for example, schools, parks, and daycare centers). If an offender enters such a zone, an alert will be generated to notify the officer that he or she must conduct an investigation to determine if a violation has occurred.

New location monitoring technologies have emerged that also allow officers to monitor offenders' locations in the community and in their homes through the use of one-piece tracking devices, instead of the combination of both a transmitter and tracking device. Location monitoring technologies also offer the ability to simultaneously track offenders and detect alcohol consumption through the location monitoring transmitter worn by the offender.

Technological advances in internet monitoring and computer forensic analysis have added a new dimension to how officers hold defendants and offenders accountable. These technologies have changed officers' responsibilities in that they have required officers to become aware of the software and services available to monitor defendants and offenders' internet use and know how to use them effectively. The technology tools available include software programs and services that allow an officer to view a defendant or offender's internet use in real time, thus allowing that person to have legal internet access with minimal intrusion from the officer.

*Research-Based Practices*

The judiciary is committed to implementing a results-based management and decision-making framework for its community supervision program. It is also the desire of the judiciary that its supervision program become an evidence-based system, meaning that employees at every level, use the best available evidence to

Appendix 1.11

make decisions. In this case, the goal is to collect, analyze, and use data from probation officers' electronic case files and a variety of other sources to inform decision making and drive performance improvements aimed at reducing recidivism and fostering long-term positive changes in individuals supervised. On an ongoing basis, the judiciary wants the ability to test underlying assumptions about the relationship between supervision practices and supervision outcomes.

The judiciary has developed a protocol to assimilate arrest data using the International Justice and Public Safety Network, National Law Enforcement Telecommunications System (NLETS). Similarly, the judiciary is collaborating with other federal agencies, such as the Bureau of Prisons, the Census Bureau, and the U.S. Sentencing Commission, to obtain data about offenders' backgrounds, criminal histories, and the communities in which they live.

In addition to internal research, the judiciary has partnered with universities, nonprofit organizations and other federal agencies to test various hypotheses about effective supervision practices.

Running concurrent to these research efforts, the judiciary is applying supervision practices that have demonstrated success in reducing recidivism with local, state, and international offenders. Many of these practices require new skills not yet widely held by federal probation and pretrial services officers. To promote acquiring and using these skills, the judiciary established the Research-to-Results (R2R) program. In fiscal year 2009, the R2R program provided third-year funding to 16 volunteer districts to cover the costs of officer training and

additional services related to implementing evidence-based practices. The lessons learned from these 16 districts are being applied in other districts that are beginning to use these same evidence-based supervision techniques.

The most notable of these practices that is now being implemented nationally is the application of actuarial risk prediction in both pretrial services and post-conviction supervision. The judiciary spent the last year analyzing data in order to develop risk prediction instruments. The Pretrial Services Risk Instrument is designed to predict the likelihood that a defendant will return to court for trial and remain crime free while in the community. This 10-question instrument is used by an officer to inform his or her recommendation to the judge about bond. The Post Conviction Risk Assessment is designed to predict the likelihood that an offender will commit a new offense and provide an officer with the root causes on the risk that can be addressed during supervision. This 134-question instrument is used by officers to craft an effective supervision strategy to lower the risk on those on community supervision. The implementation of theses two risk assessment instruments will require a massive training effort, requiring face-to-face training for more than 6,000 officers. This training is on-going and expected to be completed by the end of fiscal year 2011.

## Cost Containment Efforts

To contain costs in the probation and pretrial services program, beginning in 2004 the judiciary established priorities to ensure that adequate staffing resources are available for the most critical functions, including those with the greatest impact on public safety. Workload credit and funding for less critical officer

Appendix 1.12

functions was reduced or eliminated, decreasing the number of new officers required and freeing existing officers to focus on more critical work. Specifically, changes were made in policies to reduce the number and scope of pretrial services investigation reports; reduce the number of defendants under pretrial supervision; reduce the number and scope of presentence investigation reports; and reduce the number of offenders under post-conviction supervision.

The largest portion of probation and pretrial services workload (62 percent) involves the post-conviction supervision of offenders. This portion of the workload had been steadily increasing for many years due to the growing number of offenders released from federal prisons each year to begin terms of supervised release in the community. To cope with these increases, the judiciary adopted a policy in 2004 to encourage the courts to terminate compliant supervision cases early. In cases in which the offender meets specific criteria and does not pose a risk to public safety, probation officers are required to recommend termination of supervision before expiration of the term.

Before this cost-containment initiative was implemented, approximately 3,500 cases were terminated early each year. In fiscal year 2010, 6,748 cases were closed upon early termination. Related cost containment initiatives involved concentrating resources on pretrial cases where release was possible but not certain, while reducing resources for cases where pretrial detention was a relative statistical certainty. Similarly, a streamlined version of presentence reports was developed to be used in cases, such as those of illegal aliens with no history in the United States, where it would be difficult or impossible to secure the information or level of verification required for a full presentence report.

## Cost of Supervision Versus Incarceration

The cost of detaining a defendant in jail pending trial in fiscal year 2009 was $67.79 per day, or more than ten times the $6.38 a day it cost to release the defendant to the supervision of a pretrial services officer. Similarly, the post-conviction imprisonment of an offender in a federal prison facility cost $74.66 per day in 2009, or more than six times the $10.43 daily cost for a probation officer to supervise an offender in the community. Fiscal year 2010 data is not yet available.

If one percent of the population in federal prison custody were moved to supervision, the federal government would save $135 thousand a day, $4.1 million a month, and $49 million a year. In addition, while under supervision, offenders are required to be employed; pay taxes, restitution, and fines; support their dependents; and perform community service if ordered by the court. The offenders who had their supervision cases closed during the 12 month period ending June 30, 2010 paid more than $677 million in financial sanctions and performed more than 630,000 hours of community service. Specific data are unavailable on taxes paid and financial support provided to dependents by these offenders, but projections put the combined total in the range of $1 billion for the period of supervision[1].

---

[1] It is estimated that an offender pays a combined total of $10,000 a year in taxes and child support. With more than 50,000 offenders completing an average of 3 years of supervision, the total exceeds $1 billion.

*Improved Substance Abuse Testing Methodologies*

The detection of illegal substances is a critical part of supervision and one of the few objective tools officers have at their disposal. The judiciary conducts most of its testing by urinalysis, the most proven and researched method to detect illegal substances. Testing is performed by three methods: 1) national contracts with laboratories to conduct drug testing outside judiciary facilities, 2) a national contract for districts to obtain drug testing and operate on-site drug testing laboratories, and 3) the decentralized procurement of non-instrumented drug testing devices, which also allow on-site testing. Several districts operating on-site drug testing laboratories have also established relationships with other districts to provide testing services.

The advantages of conducting on-site drug testing are twofold: cost-effectiveness and operational efficiency. On-site drug testing provides results quickly, thereby enabling officers to take action immediately if the results are positive. Research shows that immediate action after a positive urinalysis test deters further illicit drug use and reduces the likelihood of criminal behavior.

In addition to operational efficiency, on-site testing is cost effective. A standard panel of five drugs and validity testing at a commercial laboratory costs an average of $7.80, or an average of $1.46 per test ($.50 for validity testing). On-site laboratories test specimens with an accuracy and reliability that rival the contract laboratories at a cost of $.80 per drug test and $.58 for validity testing (a test for creatinine, which is used to detect any dilution effort by the offender). Non-instrumented devices vary in their price, but cost an average of $.50 per drug, and some have the capability for validity testing.

*Information Technology*

The judiciary continues to use information technology to reduce costs and improve the effectiveness and efficiency of probation and pretrial services officers. The projects currently in use by officers and that are being enhanced include the Offender Payment Enhanced Report Access (OPERA) system. OPERA makes it easier for officers to monitor fines and restitution payments made by persons under supervision. The Electronic Reporting System (ERS) allows officers to collect routine, administrative data via kiosks, web sites and advanced phone systems thereby reducing paperwork and allowing officers to focus on high priority issues. The Access to Law Enforcement System (ATLAS) provides officers with easy access yo criminal records and allows officers to run criminal records remotely, making them less dependent on being in the office. The Electronic Probation and Pretrial Services System (EPPS) allows officers to store documents in electronic format, instead of paper, which saves on space, improves security, and enhances accessibility to the documents when needed. It also makes it more efficient to share the documents with other agencies, such as the Bureau of Prisons and U.S. Sentencing Commission. The Safety and Information Reporting System (SIRS) makes it easier for officers to provide information on hazardous incidents and search and seizures. The Decision Support System (DSS) takes operational data and combines it to allow for research and better utilization of resources. Of course, continued effort has been made to provide officers with blackberry and other mobile devices so that they can spend more time in the community interacting with persons under supervision, rather than in the office.

Appendix 1.14

472

Appendix 1.15

Table A-1.5   Offenders Under Supervision by Type of Supervision - Projections Through 2011

| | Year | Probation | Supervised Release | Parole | BOP Custody | Total |
|---|---|---|---|---|---|---|
| ACTUAL[1] | 2001 | 31,457 | 67,323 | 4,717 | 180 | 103,677 |
| | 2002 | 31,317 | 72,108 | 4,142 | 277 | 107,844 |
| | 2003 | 30,799 | 75,322 | 3,742 | 480 | 110,343 |
| | 2004 | 29,485 | 77,963 | 3,435 | 2,479 | 113,362 |
| | 2005 | 26,917 | 82,488 | 3,187 | 416 | 113,008 |
| | 2006 | 25,326 | 85,116 | 2,979 | 276 | 113,697 |
| | 2007 | 24,163 | 88,874 | 2,696 | 197 | 115,930 |
| | 2008 | 23,028 | 94,349 | 2,519 | 155 | 120,051 |
| | 2009 | 22,926 | 98,560 | 2,220 | 133 | 123,839 |
| | 2010 | 22,707 | 101,701 | 2,089 | 145 | 126,642 |
| ESTIMATED[2] | 2011 | 22,200 | 104,800 | 1,950 | 150 | 131,100 |

[1] Actual data for years 2001 through 2010 is based on the 12-month period ending June 30.
[2] Estimates for the 12-month period ending June 30, 2010.

Table A-1.6   The Changing Supervision Population - Offenders on Probation vs. Offenders Released from Prison - Projected through 2011

| | Year | Offenders on Probation | | Offenders Released from Prison[1] | | Total |
|---|---|---|---|---|---|---|
| ACTUAL[2] | 2001 | 31,457 | 30% | 72,220 | 70% | 103,677 |
| | 2002 | 31,317 | 29% | 76,527 | 71% | 107,844 |
| | 2003 | 30,799 | 28% | 79,544 | 72% | 110,343 |
| | 2004 | 29,485 | 26% | 83,877 | 74% | 113,362 |
| | 2005 | 26,917 | 24% | 86,091 | 76% | 113,008 |
| | 2006 | 25,326 | 22% | 88,371 | 78% | 113,697 |
| | 2007 | 24,163 | 21% | 91,767 | 79% | 115,930 |
| | 2008 | 23,028 | 19% | 97,023 | 81% | 120,051 |
| | 2009 | 22,926 | 19% | 100,913 | 81% | 123,839 |
| | 2010 | 22,707 | 18% | 103,935 | 82% | 126,642 |
| ESTIMATED[3] | 2011 | 22,200 | 17% | 106,900 | 82% | 131,100 |

[1]Includes terms of supervised release, parole, mandatory release, and military parole.

[2]Actual data for years 2001 through 2010 is based on workload for the 12-month period ending June 30.

[3]Estimates for the 12-month period ending June 30, 2010.

## District Courts

Table A-1.7 Major District Court Workload Indices[1]

| Filings | 2009 Actual | 2010 Actual | 2011 Estimate |
|---|---|---|---|
| Criminal Case Filings | 75,324 | 78,213 | 76,500 |
| Criminal Defendants Filed | 96,718 | 100,031 | 100,100 |
| Civil Case Filings | 257,204 | 285,215 | 291,500 |

[1]For the 12-month periods ending June 30.

## Program Function Statement

Funding for the district court program is used for salaries and benefits of all active United States district judges, magistrate judges and all such judges who have retired from office or from regular active service. In addition, this funding is used for the salaries and expenses of the district court support personnel, such as the administrative and legal aides required to assist the judges in conducting hearings, trials and other judicial functions. It also funds all operation and maintenance costs, such as communications, printing, contractual services, supplies, equipment, lawbooks, travel expenses incurred by judges and supporting personnel in attending sessions of court or transacting other official business, and relocation costs.

### District Clerks

The district court clerks' offices serve a critical and integral support role in the adjudication of civil and criminal matters.

The clerk's office is responsible for attorney admissions, case intake, docketing of pleadings and motions, service of process, events scheduling, receipting and accounting for fees and fines collected, case tracking, provision of court reporting and court interpreting services, alternative dispute resolution programs, statistical reporting, training of attorneys on the case management system (CM/ECF) and jury management, all of which are essential elements in processing criminal cases and resolving civil cases. Public and private sector entities rely on effective case processing by the clerks' offices.

The proper functioning of the offices of district court clerks enhances the efficiency of the offices of the U.S. Attorney, U.S. Marshals Service, Federal Public Defender, and Probation and Pretrial Services. Other participants, including litigants, attorneys, witnesses, court reporters, court interpreters, expert witnesses, the media, and jurors are impacted by the effective operations of the clerks' offices. To enable these court participants to work together effectively, the clerk's office manages courtroom space, automation services, audio and video systems, and other administrative functions, as well as the support required in the courtroom for the proper functioning of the proceedings. The judicial system as a whole benefits from the professional management services provided by the clerk's office.

### Court Interpreters

The district courts use both staff and contract court interpreters. Staff court interpreters serve in district courts where there is a substantial need for interpreting services on a daily basis. This is particularly true in the Southwest Border courts. Locating, scheduling and contracting with court interpreters is not practical in locations that have daily needs for interpreting services. Spanish remains the most used language for interpreters in the courts, accounting for 96.6 percent of all reported interpreting

Appendix 1.17

events in fiscal year 2010. For the 12-month period ending September 30, 2010, there were 357,171 court events that required the services of a staff or contract court interpreter. During fiscal year 2010, the judiciary expended approximately $11.9 million on contract court interpreting services.

The judiciary expects this high level of interpreter usage to continue, especially due to the high volume of workload along the Southwest Border and the prosecution of other immigration and terrorist related cases. At the same time, the judiciary has continued to expand the Telephone Interpreting Program, which allows interpreting for short proceedings to be provided by telephone from courts with specialized or abundant interpreting resources.

## Prisoner Case Law Clerks

### Pro Se Law Clerks

The objective of the pro se law clerk program is to receive, prepare, and process civil complaints filed against the government by prisoners and individuals without attorney representation. The *pro se* law clerks review complaints for procedural adequacy to permit judges to proceed with the disposition of the cases. Without adequate staffing, district judges and magistrate judges will have to perform this work at the expense of other civil case work.

The number of *pro se* law clerks is determined by formulas driven by prisoner petition filings. For the 12-month period ending June 30, 2010, there were 51,748 prisoner petitions filed, a decrease of 489 petitions or 1.0 percent from 2009 levels. The judiciary projects a slight increase in 2011 prisoner petition workload, to 52,700 positions.

### Death Penalty Law Clerks

Death penalty law clerks serve both as a substantive legal resource to judges in death penalty habeas corpus matters, and as case management monitors, since capital cases are generally lengthy and involve numerous issues. In March 1999, the Judicial Conference endorsed a program to provide death penalty law clerk positions on a national basis to district courts based on a ratio of one law clerk to fifteen death penalty cases. In fiscal year 2011, 53 death penalty law clerk FTEs were allocated to 43 district courts. The judiciary benefits from having death penalty law clerks who are focused on the case management and Criminal Justice Act budgeting responsibilities of the court and assist the judges in the substantive legal research that is required in death penalty cases. Without this assistance, judges would have to spend inordinate amounts of time on this work to the detriment of addressing other cases, both civil and criminal.

### Workload Trends and Resource Requirements

The number of criminal defendants, the mix of civil cases, juror activity, and the number of authorized judges require the courts to make staffing adjustments as dictated by the staffing formulas, which are based primarily on civil and criminal cases and the number of judges supported.

### Staffing in the District Courts

While the district courts have been focused on improving all operational areas, a critical need remains to have full staffing resources available to support the judges and case processing requirements in the courts. With the dependence on the electronic case filing system, many courts continue to retool their offices and change from primarily a clerical focus to an automated and technical focus which requires the hiring and

Appendix 1.18

training of a professional workforce with more technical skills. Thus, the need for the clerk's office to maintain robust information technology services will continue to grow. This requirement stems from the need to meet the information demands of an increasingly sophisticated bench, bar and public and the need to automate and integrate many of the clerks' offices business functions in the areas of accounting, budgeting, case management, records management, and juror management. Sound information management systems help to ensure the courts' obligations to the public are met while streamlining business functions to keep costs under control.

Providing a sufficient number of clerks' office personnel is critical to the entire justice system. The output and efficiency of resources (judges, prosecutors, defenders, court reporters, court interpreters, jurors, and witnesses) is dependent upon the efficiency of the clerks' offices. Reductions to the district court staffing would impact all of the convergent participants in the judicial process.

### Criminal Case Filings

For the 12-month period ending June 30, 2010, criminal cases filed totaled 78,213, a 3.8 percent increase from the 2009 level. In 2011, the judiciary projects criminal filings will increase by another 3.8 percent, to 81,188. See Table A-1.8 on page 1.22. The number of criminal defendants charged in 2010 totaled 100,031 an increase of 4.3 percent from the 2009 level. In 2011, the judiciary projects the number of criminal defendants will increase by 5.2 percent to 104,500. Criminal case filings are influenced by the number of United States Attorneys and the emphasis on prosecution of illegal immigration, drug crimes,

and violations of firearm laws. These projections may not reflect fully the workload associated with additional resources recently provided to law enforcement agencies for increased immigration enforcement.

### Southwest Border Workload Increase

The district courts situated along the border with Mexico have experienced a tremendous increase in criminal workload since the late 1990s. The districts of Arizona, California-Southern, New Mexico, Texas-Southern, and Texas-Western have experienced individual compounded growth rates of 35.6 percent, 60 percent, 31 percent, 34.6 percent and 46.2 percent respectively, in the number of felony defendants from 2006 to 2010. The District of Arizona has experienced a 34 percent increase in felony defendants from 2009 to 2010 alone. The five courts on the Southwest Border account for 38.4 percent of all felony defendants processed in district courts nationwide. The time-sensitive nature of criminal cases, due to statutory deadlines in the Speedy Trial Act, multiple hearings for defendants (i.e. initial appearances, arraignments, and pleas in the early stages alone), and the need for interpreter services, increases the courts' need for adequate staffing resources.

At the same time, the Southern District of California, which experienced a slight decrease of four percent in the number of felony defendants from 2009 to 2010, is dealing with a 7.1 percent increase in civil filings for the same period. While criminal cases take precedence over civil cases, the courts need adequate staffing to keep up with the civil workload, otherwise civil case processing and disposition are delayed. This delay negatively impacts litigants because it prolongs the uncertainty of a pending legal action.

Appendix 1.19

## Civil Case Filings

For the 12-month period ending June 30, 2010, civil case filings increased from 257,204 to 285,215 cases, a 10.9 percent gain from 2009. See Table A-1.8 on page 1.22. The judiciary projects 2011 civil case filings to increase 2.2 percent to 291,500. These projections do not take into account all future, large-volume multi-district or class action litigation, as this type of litigation is often difficult to predict. For example, in 2010 almost 400 civil actions were filed in nine district courts based upon the Deepwater Horizon oil spill. About 300 of these cases have become part of a multi-district litigation case assigned to the Eastern District of Louisiana and more cases are expected to be filed. In addition, the current financial situation may impact the civil filing volume, especially if mortgage foreclosure cases are filed in the district courts.

## Cost Containment Efforts

The judiciary's Case Management/Electronic Case Files (CM/ECF) system, in use by all district courts, allows courts to manage documents electronically and provide 24-hour case file access to judges, court staff, and the public. CM/ECF also allows attorneys and the courts to file documents over the internet. Almost 35 million cases are on the CM/ECF system and more than 500,000 attorneys and others have filed documents over the Internet. The CM/ECF system uses standard computer hardware, an Internet connection and a browser, and accepts documents in Portable Document Format (PDF). This electronic filing saves postage, paper, copying, and courier costs for attorneys and for the judiciary.

CM/ECF saves the litigants' resources, and also saves docketing and paper handling costs on the part of the district clerks. Court staff, however, have had to enhance their quality control efforts to ensure that the information entered is accurate and complete. Failure to do so in a timely manner results in parties in a case taking action based on erroneous information. Further, in response to the new system, district courts have been focused on examining their case management processes to ensure that they are operating effectively and efficiently through process redesign and methods analysis (or better practices) efforts. In addition, many courts have sought to have one or more of their operational areas reviewed by independent evaluators from other courts.

With the deployment of eJuror, the new Jury Management System web page, prospective jurors now have the option of completing qualification questionnaires and obtaining jury service information online 24 hours a day. Courts save time as there are fewer forms processed manually, less data entry and an increased level of data reliability. Many functions that required the intervention of court staff have been automated and are available online for the public, such as deferrals and certificates of attendance, thereby reducing demands on staff time. Courts save on postage costs and eliminate unnecessary delays by communicating with jurors via email. It is projected that the eJuror function will save an estimated $1.4 million per year in postage and staff time once fully utilized in all courts, with some of that savings already occurring.

The District Methods Analysis Program identifies better practices in court operations and shares them with other courts. Court working groups have focused on various civil and criminal

Appendix 1.20

topics, as well as CJA voucher processing and management of multi-district litigation cases. The streamlined best practices are then posted on the judiciary's intranet site for courts to review and consider adopting.

The use of the judiciary Telephone Interpreting Program (TIP) has ensured courts of the availability of federally certified or otherwise qualified interpreters for defendants in short court proceedings and has saved over $9.2 million for the judiciary in travel and other costs since the Judicial Conference approved the program in 2001. TIP allows an interpreter at a remote location to deliver simultaneous interpretation of court proceedings for defendants and consecutive interpreting by means of a two-line telephone system. TIP interpreters can be used for multiple assignments on the same day, and have significantly reduced time and travel costs. Telephonic interpreters are used for a wide range of hearings, especially initial criminal matters that must occur quickly.

Appendix 1.22

Table A-1.8  Civil and Criminal Filings

| | Year | Civil Filings | Percent Increase | Criminal Filings | Percent Increase |
|---|---|---|---|---|---|
| ACTUAL[1] | 2002 | 268,071 | 5.8% | 64,744 | 2.2% |
| | 2003 | 254,499 | -5.1% | 70,890 | 9.5% |
| | 2004 | 258,117 | 1.4% | 71,098 | 0.3% |
| | 2005 | 282,758 | 9.5% | 69,876 | -1.7% |
| | 2006 | 244,343 | -13.6% | 67,872 | -2.9% |
| | 2007 | 272,067 | 11.3% | 67,674 | -0.3% |
| | 2008 | 256,354 | -5.8% | 70,024 | 3.5% |
| | 2009 | 257,204 | 0.3% | 75,324 | 7.6% |
| | 2010 | 285,215 | 10.9% | 78,213 | 3.8 % |
| ESTIMATED[2] | 2011 | 291,500 | 2.2% | 76,500 | 3.8% |

Table A-1.9  Components of Civil Caseload

| | Year | Social Security | Diversity | Prisoner Filings | All Other | Total |
|---|---|---|---|---|---|---|
| ACTUAL[1] | 2002 | 17,868 | 52,297 | 55,596 | 142,310 | 268,071 |
| | 2003 | 17,483 | 61,088 | 55,112 | 120,816 | 254,499 |
| | 2004 | 15,935 | 65,347 | 53,132 | 123,703 | 258,117 |
| | 2005 | 16,066 | 66,532 | 62,716 | 137,444 | 282,758 |
| | 2006 | 14,052 | 65,800 | 55,775 | 108,716 | 244,343 |
| | 2007 | 12,964 | 86,506 | 53,222 | 119,375 | 272,067 |
| | 2008 | 13,329 | 76,284 | 55,374 | 111,367 | 256,354 |
| | 2009 | 13,222 | 81,188 | 52,237 | 110,557 | 257,204 |
| | 2010 | 13,725 | 104,703 | 51,748 | 114,236 | 285,215 |
| ESTIMATED[2] | 2011 | 16,000 | 101,100 | 52,700 | 121,700 | 291,500 |

[1]Actual data for years 2002 through 2010 are based on the 12-month period ending June 30.
[2]Filing estimates for the July 1, 2010 through June 30, 2011 statistical year will be updated in the spring of 2011

## Courts of Appeals and Circuit Units

Table A-1.10 Appellate Court Workload[1]

| | 2009 Actual | 2010 Actual | 2011 Estimate |
|---|---|---|---|
| Appeals Filings | 59,399 | 56,097 | 55,000 |

[1]For the 12-month periods ending June 30.

### Program Function Statement

Funding for the courts of appeals and circuit units includes the salaries and benefits of all active United States circuit judges, and all such judges who have retired from office or from regular active service. In addition, it provides for the salaries and expenses of the courts of appeals supporting personnel such as the administrative and legal aides required to assist the judges in the hearing and decision of appeals. Funding also includes all expenses of operation and maintenance such as communications, printing, contractual services, supplies, equipment, law books, travel costs incurred by judges and supporting personnel in attending sessions of court or transacting other official business, and relocation costs.

### Circuit Executives

The principal responsibility of the circuit executive's office is to act as the secretariat for the circuit's judicial council and its committees, and in some circuits, for the court of appeals and its committees. In this capacity, the circuit executives' offices participate not only in policy oversight but also assist in many areas of circuit-wide importance. These include planning for the effective and efficient use of space and facilities, information technology issues, financial management and budget decentralization, and planning and organizing the circuit's judicial conference.

### Appellate Clerks

The clerks' offices are the public business offices for the appellate courts and provide specific centralized management in case-related and logistical areas. Employees in clerks' offices perform essential functions necessary for the operation of the courts, such as:

- recording and maintaining all case filings, including public records and information needs;

- providing guidance to lawyers, litigants and the public;

- distributing case materials to judges for decision-making; and, in many offices,

- providing vital logistical support such as information technology, procurement, budget management, and personnel administration.

The case-related workload of the clerks' offices can fluctuate in proportion to changes in case filings.

Case decisions in appellate courts are made either by panels of three judges or, in some instances, by an en banc court, where all the judges review the case. Appellate judges reside in cities throughout the wide geographic area of a circuit. Appellate clerks' offices are situated at the headquarters of the circuit,

Appendix 1.23

Statistics show that pro se cases represent 48 percent of national appellate filings. In addition, all courts are finding that substantive motions are increasing at a rapid rate and require considerably closer review. Having the staff attorneys preliminarily review both pro se cases and substantive motions, as well as examine cases for jurisdictional defects, materially assists the judges and contributes to timely dispositions.

## Preargument/Conference Attorneys

Appellate preargument/conference attorneys facilitate the disposition of cases on appeal through negotiated settlements, without appellate judicial involvement. The attorneys are skilled, seasoned lawyers who perform sensitive, confidential settlement work. The attorneys often are able to streamline or dispose of issues in cases not easily settled. Distinct from staff attorneys, preargument/conference attorneys promote the voluntary settlement or withdrawal of appeals without court action. The program results in a conservation of judicial resources and improves appellate case management.

## Librarians

The national court library program is a network of 12 circuit headquarters libraries and 100 satellite libraries. The library program provides legal reference and research services to over 2,000 judges. Using existing resources and adapting new technologies, the library program provides all circuits with high quality research assistance and instruction to judges, law clerks, and other court personnel. In addition, the library staff manages the acquisition and development of chambers law books collections.

providing a central public business office for the judges, lawyers, litigants and the public. Clerks' offices receive case materials for filing, maintain the central files, and arrange for judges to convene in panels as necessary for case decisions. Inquiries about cases, procedures, etc., are directed to the clerks' offices. Materials are assembled, as appropriate, and dispatched to judges. Lawyers are advised of the schedule for decision-making. Decisions are made after oral argument hearings or submissions on briefs that are scheduled by the clerks' offices. Decisions are filed in the clerks' offices which are then responsible for distribution of the decisions to the parties and the public, including posting on court websites. Due to the recent implementation of CM/ECF in all but a few of the courts of appeals, the official appellate case records are maintained in the CM/ECF system.

## Staff Attorneys

Staff attorneys generally perform legal research on all pro se cases, that is, cases where a party serves as his or her own counsel, most of which are filed by prisoners. In addition, they work on substantive and procedural motions, direct criminal appeals, death penalty cases, and cases that do not require oral argument. Some staff attorneys also assist the court on fully counseled cases, providing legal research assistance and presenting recommendations to the judges. Staff attorneys also write memoranda in cases addressing jurisdictional issues that result in disposition of the appeal. By drafting legal research memoranda that analyze the case issues and recommend appropriate disposition, staff attorneys assist judges in disposing of the appellate cases in a timely and efficient manner.

Appendix 1.24

482

Information is expanding exponentially, in an array of formats, including books, online databases, Internet resources, and microforms. Librarians are necessary to manage this wealth of information and media, and to disseminate the information to the courts in a meaningful manner. Collection development expertise, research skills, and knowledge of resource-sharing techniques are tools that librarians bring to this challenge.

In addition to providing traditional legal research support, librarians conduct research in multiple disciplines such as science, medicine, the humanities and social sciences, or general research. Judges, law clerks, and other court staff need the information in these areas to assist their decision-making. Librarians also have taken the lead in tapping the resources available on the Internet, making them available to the judiciary by designing web pages that gather Internet resources and push content directly to the users.

**Bankruptcy Appellate Panel Clerks**

The Bankruptcy Reform Act of 1994 requires that each circuit establish a Bankruptcy Appellate Panel (BAP) unless the Judicial Council of the circuit finds that either there are insufficient judicial resources in the circuit, or the establishment of a BAP would result in undue delay or increased cost to parties in bankruptcy cases. There are currently five BAPs nationally. A BAP is composed of bankruptcy judges within a circuit who are appointed by the circuit's Judicial Council to decide, with the consent of all parties, appeals from bankruptcy court decisions. Even where a BAP exists, bankruptcy appeals may be heard by the district court, if a party so chooses.

A BAP requires a minimum of four bankruptcy judges, each from a different district, because the legislation prohibits a bankruptcy judge from hearing an appeal that originated in the district for which he or she was appointed. The BAP clerk's office has support functions and responsibilities similar to the appellate clerk's office.

**Workload Trends and Resource Requirements**

For the 12-month period ending June 30, 2010, the number of appeals filed totaled 56,097, decreasing 5.6 percent from the previous year and increasing 3 percent since 2000. The judiciary projects the appellate cases filed will decrease by 2 percent for the 12-month period ending June 30, 2011. While the cases filed has declined overall, there have been significant increases from 2000 to 2010 in appeals both from immigration cases appealed from the Department of Justice's Board of Immigration Appeals (BIA) and from criminal cases.

The initial increase of immigration appeals from the BIA in 2002 was attributed to its directive to clear its backlog of cases and implement new review guidelines. While the number of BIA completions has been declining and approaching pre-2002 levels (28,345 in 2010 vs. 25,024 in 2001), the number of BIA appeals in the federal courts is almost four times what it was in 2001 (6,918 in 2010 vs. 1,777 in 2001). These cases continue to demand extensive resources and are a far greater share of total caseload in recent years. The increase was most significant in the Second and Ninth Circuits; the Second Circuit increased from 164 BIA cases in 2001 to 1,293 in 2010, and the Ninth Circuit increased from 965 BIA cases in 2001 to 3,271 in 2010. Terminations of these appeals have not kept pace with filings.

Appendix 1.25

Appendix 1.26

resulting in an increase in the time it takes to process all other appeals.  The number of total pending appeals increased from 40,911 in 2001 to 47,297 in 2010 (an increase of 16 percent).

## Cost Containment Efforts

The appellate court and circuit units continue to spend considerable time focused on adopting new processes, developing and sharing best practices, and using the flexibility provided under budget decentralization to invest in information technology and other solutions that save resources as well as improve quality and performance.  This work has been and will continue to be important.

Nearly all courts participated in a process redesign program that provided education and assistance to court employees in reviewing current processes and redesigning them for use with a more robust case management system.  Courts also used workforce restructuring options to re-shape, de-layer or re-tool the workforce before implementing CM/ECF.

The CM/ECF system replaced the 20 year old legacy system and required a careful review of the case management processes and staff functions.  The appellate courts are taking full advantage of the opportunities provided by CM/ECF's electronic case filing features.  The first appellate court to implement electronic filing by attorneys started in June 2007.  By the end of fiscal year 2010, all courts of appeals accept electronic filings by attorneys and pro se litigants.  Resource-intensive efforts to conduct quality controls checks on attorney filings and to prepare and transmit briefs and lower court record materials to court of appeals judges still must evolve in light of the availability of electronic case files.

484

# COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES
## *Defender Services*
## SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | |
|---|---|
| Fiscal Year 2011 Assumed Appropriation | $1,044,072,000 |
| Fiscal Year 2012 Appropriation Request | $1,098,745,000 |
| **Requested Increase from Fiscal Year 2011 Assumed Appropriation** | **$54,673,000** |

## APPROPRIATION LANGUAGE

## COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES

## DEFENDER SERVICES

For the operation of Federal Defender organizations; the compensation and reimbursement of expenses of attorneys appointed to represent persons under 18 U.S.C. 3006A, and also under 18 U.S.C. 3599, in cases in which a defendant is charged with a crime that may be punishable by death; the compensation and reimbursement of expenses of persons furnishing investigative, expert, and other services under 18 U.S.C. 3006A(e), and also under 18 U.S.C. 3599(f) and (g)(2), in cases in which a defendant is charged with a crime that may be punishable by death; the compensation (in accordance with the maximums under 18 U.S.C. 3006A) and reimbursement of expenses of attorneys appointed to assist the court in criminal cases where the defendant has waived representation by counsel; the compensation and reimbursement of travel expenses of guardians ad litem, appointed under 18 U.S.C. 4100(b), acting on behalf of financially eligible minors or incompetent offenders in connection with transfers from the United States to foreign countries with which the United States has a treaty for the execution of penal sentences (18 U.S.C. 4109(b)); the compensation and reimbursement of expenses of attorneys appointed to represent jurors in civil actions for the protection of their employment, as authorized by 28 U.S.C. 1875(d)(1); the compensation and reimbursement of expenses of attorneys appointed under 18 U.S.C. 983(b)(1) in connection with certain judicial civil forfeiture proceedings; and for necessary training and general administrative expenses, [$1,044,072,000] *$1,098,745,000*, to remain available until expended. (Judiciary Appropriations Act, 2012.)

6.1

**SUMMARY OF REQUEST**
**DEFENDER SERVICES**
**FISCAL YEAR 2012**
(Dollar amounts in thousands)

## Fiscal Year 2012 Resource Requirements:

| Page No. | | FTEs | Amount |
|---|---|---|---|
| | Fiscal Year 2011 Estimated Resources.................... | 2,826 | $1,064,857 |
| | Less unencumbered carryforward from fiscal year 2010 into fiscal year 2011..... | ... | (15,839) |
| | Less encumbered carryforward from fiscal year 2010 into fiscal year 2011........ | ... | (4,946) |
| | Fiscal Year 2011 Assumed Appropriation...................... | 2,826 | 1,044,072 |
| | **Adjustments to Base to Maintain Current Services** | | |
| | A. Pay and Benefit Adjustments | | |
| 6.15 | 1.  Promotions and within-grade increases.................. | ... | 3,431 |
| 6.15 | 2.  Health benefits increase.................. | ... | 2,045 |
| 6.15 | 3.  One less compensable day.................. | ... | (2,017) |
| 6.15 | 4.  Annualization of new fiscal year 2011 staff.................. | 54 | 9,252 |

6.2

| Page No. | | FTEs | Amount |
|---|---|---|---|
| | **B. Other Adjustments** | | |
| 6.16 | 5. Inflationary adjustments............... | ... | 2,555 |
| 6.16 | 6. Inflationary increase in space rental costs............... | ... | 765 |
| 6.16 | 7. Increases in caseload, case complexity and change in caseload mix | | |
| 6.16 | a. Non-capital cases............... | 39 | 18,142 |
| 6.16 | b. Capital cases............... | 22 | 9,416 |
| 6.17 | 8. Increase in appropriation to fund base requirements due to a decrease in non-appropriated sources of funds............... | ... | 10,784 |
| | **Subtotal, Adjustments to Base to Maintain Current Services**............... | **115** | **54,373** |
| | **Total Current Services Appropriation Required**............... | **2,941** | **1,098,445** |
| | **C. Program Increases** | | |
| 6.17 | 9. Establishment of a new federal defender organization............... | ... | 300 |
| | **Subtotal, Program Increases**............... | **0** | **300** |
| | **Total Fiscal Year 2012 Appropriation Required**............... | **2,941** | **1,098,745** |
| | **Total Appropriation Increase, Fiscal Year 2011 to Fiscal Year 2012**............... | **115** | **54,673** |
| | **Financing the Fiscal Year 2012 Request:** | | |
| | **Total Appropriation Required**............... | **2,941** | **1,098,745** |
| 6.17 | 10. Anticipated carryforward from fiscal year 2011 into fiscal year 2012............... | ... | 10,000 |
| | **Estimated Obligations, Fiscal Year 2012**............... | **2,941** | **1,108,745** |

6.3

COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES
DEFENDER SERVICES

Obligations by Budget Object Class ($000)

| Description | | FY 2010 Actual | FY 2011 Estimate | FY 2012 Request |
|---|---|---|---|---|
| 1100 | Personnel compensation | 277,656 | 295,400 | 311,500 |
| 1200 | Personnel benefits | 80,097 | 85,000 | 90,500 |
| 1300 | Benefits for former personnel | 143 | 175 | 195 |
| 2100 | Travel | 10,842 | 11,800 | 12,100 |
| 2200 | Transportation of Things | 328 | 410 | 440 |
| 2310 | Rental payments to GSA | 37,234 | 40,400 | 42,700 |
| 2320 | Rental payments to others | 72 | 80 | 85 |
| 2300 | Communications, utilities & misc. | 6,302 | 7,200 | 7,500 |
| 2400 | Printing and reproduction | 263 | 492 | 505 |
| 2500 | Other services | 420,104 | 469,400 | 480,100 |
| 2600 | Supplies and materials | 1,977 | 2,500 | 2,600 |
| 3100 | Equipment | 8,672 | 16,600 | 17,020 |
| 4100 | Grant Payments (to Community Defender Organizations) | - | - | - |
| | Total Obligations | 128,405 | 135,400 | 143,500 |
| | | 972,095 | 1,064,857 | 1,108,745 |
| | Anticipated Financial Plan Savings | - | (10,000) | - |
| | Revised Obligations | 972,095 | 1,054,857 | 1,108,745 |

Full Time Equivalents (FTEs) by Activity

| Activity | FY 2010 Actual | FY 2011 Estimate | FY 2012 Request |
|---|---|---|---|
| CJA Representations & Related Expenses[1] | 2,644 | 2,793 | 2,908 |
| Program Administration | 29 | 33 | 33 |
| Total, FTEs | 2,673 | 2,826 | 2,941 |

[1] The FTEs listed are attributable to Federal Public Defender Organization staff.

6.6

## COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES
## DEFENDER SERVICES

Relation of Obligations to Outlays ($000)

| | FY 2010 Actual | FY 2011 Estimate | FY 2012 Request | Difference |
|---|---|---|---|---|
| Total Obligations | 972,095 | 1,054,857 | 1,108,745 | 53,888 |
| Obligated balance, start of year | 35,045 | 23,217 | 21,274 | (1,943) |
| Obligated balance, end of year | (23,217) | (21,274) | (32,819) | (11,545) |
| Recoveries of prior year unpaid obligations | (6,754) | - | - | - |
| **Net Outlays** | **977,169** | **1,056,800** | **1,097,200** | **40,400** |

## GENERAL STATEMENT AND INFORMATION

Funds appropriated for the Defender Services account support the appointment of counsel as well as costs of expert, investigative, and other services necessary to defend financially eligible persons, which the judiciary is required to provide by the United States Constitution, the Criminal Justice Act (CJA), 18 U.S.C. § 3006A, and other related statutes. The fiscal year 2012 request for appropriated funds is $1,098.7 million, an increase of $54.7 million (5.2 percent) over the fiscal year 2011 assumed appropriation of $1,044.1 million.

## MISSION AND GOALS OF THE DEFENDER SERVICES PROGRAM

The right to the effective assistance of counsel is a constitutionally mandated, critical component of the criminal justice system and the foundation upon which the liberty of all Americans rests. The United States Supreme Court wrote in *Gideon v. Wainwright, 372 U.S. 335 (1963),* "The right of one charged with a crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours." It is the mission of the defender services program to ensure that the Sixth Amendment right to counsel is effected on behalf of those who cannot afford to retain counsel and other necessary defense services. By fulfilling its mission, the defender services program helps to maintain public confidence in the nation's commitment to equal justice under the law, and to ensure the successful operation of our constitutionally based, adversarial system of justice.

The four overarching goals of the defender services program, necessary to accomplish its mission successfully, are to: (1) provide assigned counsel services to all eligible persons in a timely manner; (2) provide appointed counsel services that are consistent with the best practices of the legal profession; (3) provide cost-effective services; and (4) protect the independence of the defense function performed by assigned counsel so that the rights of individual defendants are safeguarded and enforced

## TYPES OF COUNSEL:

### Federal Defenders and Private Attorneys

The CJA authorizes the appointment of counsel, who are either attorneys employed by a federal defender organization (FDO) or private "panel" attorneys. This ensures a robust defense system that involves both public and private attorneys. The CJA specifies that in all judicial districts (including those served by an FDO) private attorneys shall be appointed "in a substantial proportion of the cases." 18 U.S.C. § 3006A(a)(3). Indeed, even in the 91 (of 94) judicial districts in which an FDO has been authorized, there is a critical need for representation by panel attorneys. Legal ethics standards prohibit appointing FDOs in conflict of interest situations (*e.g.*, where an FDO is precluded from representing more than one co-defendant in a multi-defendant case, or is disqualified from accepting a new appointment that could conflict with the interests of previously represented clients). Additionally, federal defenders are not available in the three districts operating without FDOs (Georgia-Southern, Kentucky-Eastern, and Northern Mariana Islands). Thus, in situations where

federal defenders are unavailable due to FDO conflicts or workload or in the districts not served by an FDO, private or "panel" attorneys must be appointed to represent all eligible individuals.

Federal Defender Organizations

The CJA authorizes two types of FDOs: (1) federal public defender offices, which are part of the judiciary, and (2) community defender organizations, which are private, state-chartered, non-profit corporations funded by annual federal grants. An FDO may be established in any district (or combination of adjacent districts) in which at least 200 appointments are made annually. There are currently 80 FDOs authorized to serve 91 of the 94 judicial districts (Alabama-Northern was approved in 2010 but is not yet operational). For fiscal year 2012, the judiciary projects that federal defenders will be appointed in approximately 120,000 cases (58 percent of the total projected CJA caseload).

FDOs are the mainstay of the defender services program, delivering consistently high-quality representation at below market rates, and providing critical training and other support services to panel attorneys. Consistent with the CJA, they are able to attract, train, and retain lawyers with skills comparable to those who prosecute criminal matters in U.S. attorney offices. Federal criminal practice today is highly specialized and complex. FDOs are able to provide cost-effective defense services, consistent with the best practices of the legal profession, because of the expertise and efficiencies they have developed as law offices focused solely on federal criminal practice. FDO staff also reduce costs and improve the overall

quality of CJA representation within the district they serve by providing expert advice, training, and other support to panel attorneys in complex legal and technical areas such as sentencing, litigation support, and issues involving death penalty cases. FDOs also make optimal use of national resources by sharing their expertise and best practices with other FDOs.

FDO attorneys are available for appointments on short notice, ensuring that the rights of the accused are protected, and that the operations of the courts are not disrupted. In response to a professional survey conducted in December 2008, 98 percent of the district and magistrate judges responding reported that they were able to find a federal defender to accept a CJA appointment in a non-capital case within one day.

Panel Attorneys

A "panel" attorney is a private lawyer who serves on a panel of attorneys maintained by the district or appellate court and is assigned by the court to represent financially eligible defendants in accordance with the CJA. Nationally, over 90 percent of CJA panel attorneys are in small law firms (with six or fewer lawyers), and 61 percent are sole practitioners. The CJA provides that these attorneys shall be reimbursed for their expenses and compensated at statutorily authorized hourly rates for their services. In fiscal year 2010, Congress approved a maximum hourly rate at which panel attorneys may be compensated of $125 in non-capital cases, which is $14 below the FY 2010 statutorily authorized maximum rate of $139. (The statute provides for inflationary adjustments to the rate, subject to the availability of funds.) The fiscal year 2010

492

6.9

## PANEL ATTORNEY RATES

The CJA authorizes the Judicial Conference to implement annual cost-of-living adjustments (COLAs) for panel attorney rates. Congress has been unable to fund fully these adjustments. If COLAs had been provided annually as authorized by the statute, using OMB-projected inflationary adjustments, the non-capital rate would reach $139 in fiscal years 2011 and 2012. Congress has responded to earlier Judicial Conference requests by funding a panel attorney rate of $125 per hour (versus $139 authorized by the CJA) in fiscal year 2010. That increase is very much appreciated, particularly in light of the limited funding Congress has available to meet the nation's needs. While the judiciary firmly believes that the statutory rate of $139 is well justified, it recognizes the fiscal pressures Congress faces in fiscal year 2012. Consequently the judiciary defers seeking any rate increases above current rates for fiscal year 2012, consistent with the action to freeze pay for federal employees.

## INCREASING CASE COMPLEXITY

Federal criminal cases continue to increase in complexity across a wide variety of substantive law areas. New prosecution initiatives, legislation, and court decisions are adding to the challenge of providing quality representation under the CJA to eligible defendants in the federal courts.

hourly rate for capital case representation is $178. For fiscal year 2012, the judiciary projects that panel attorneys will be appointed in approximately 86,200 cases (42 percent of the total projected CJA caseload).

### Training

The defender services program provides training to federal defender staff, panel attorneys, and others who provide services pursuant to the CJA. In fiscal year 2010, the judiciary sponsored over 45 national, regional, and local programs, attended by over 2,000 lawyers. The curricula were designed to reach attorneys with varying levels of experience and to encompass substantive and procedural legal issues, as well as skills development, such as sentencing advocacy and the use of technology in the courtroom. The training defender services provides to other service providers, i.e. investigators, paralegals and mitigation specialists, focuses on substantive legal issues and the development of skills such as interviewing, writing and case management. In addition, FDOs sponsored hundreds of local training programs for their district's CJA panels.

Training opportunities and substantive materials are also accessible to panel attorneys on a defender services-sponsored website. Notwithstanding these efforts, more training is needed, especially to meet the needs of the approximately 9,500 panel attorneys participating in CJA cases each year. At the end of fiscal year 2010, the defender services program initiated the delivery of training on selected topics through on-line video and other distance learning presentations in order to expand the number of practitioners with access to CJA-sponsored training.

## Discovery

As the amount of data associated with CJA representations grows in size and complexity year after year, CJA attorneys—both FDO staff and panel attorneys—require new tools to help them organize, review, and manage the large amounts of information provided by the prosecution as discovery material. Paper documents must be scanned, and analog recordings must be digitized. This is especially true for cases with hundreds of thousands or millions of pages of information. Evidence encompasses not only the discovery produced by the government, but materials gathered by third parties and the defendant. Federal defenders and panel attorneys must have sufficient litigation resources, including additional national support staff, if they are to meet the challenge presented by DOJ's expansion of its litigation support capabilities. The judiciary foresees that the number of these types of discovery-intensive cases will continue to grow.

## Padilla and Advising as to Immigration Consequences

The United States Supreme Court's decision in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), clarified that any counsel representing a criminal defendant – including federal defenders and CJA panel attorneys – must advise their clients of the potential immigration consequences to which they may be exposed because of the charges they are facing. Under *Padilla*, an attorney provides constitutionally deficient representation by failing to apprise a client of the adverse immigration consequences of a guilty plea. Defense counsel must not only avoid giving incomplete or mistaken advice about immigration law; they must affirmatively advise their clients on certain immigration law matters. The United States

Sentencing Commission (USSC) reports that in the third quarter of 2010, 46.7 percent of offenders in all offense categories were non-U.S. citizens. (USSC 2010 3rd Quarter Report at p. 47.) This illustrates the enormous number of clients who require accurate information on immigration consequences before they can be advised whether to plead guilty to a particular charge. Most CJA counsel do not have expertise in immigration law. They must therefore consult with immigration law experts and conduct additional research, training, and investigation to inform their clients adequately of the immigration consequences. This added responsibility has increased workloads across the country.

## Terrorism-Related and Other High Profile Cases

Federal defenders have been appointed in many terrorism-related cases. Terrorism and national security cases often require extraordinary resources, including full-time efforts of one or more assistant federal defenders supported by investigators, paralegals, interpreters, research and writing specialists, and expert services (such as information technology specialists). In addition to the interpreters who allow the defense team to communicate with clients and witnesses, these cases often require translators to review foreign language discovery, listen to audio recordings (sometimes involving years of surveillance), and transcribe recordings. The amount of work associated with these cases is also affected by the need to conduct investigations in foreign countries under difficult circumstances. Adding to the resource-intensive nature of these cases is the government's requirement that lawyers, investigators, and service providers have or obtain appropriate security clearances. This increases both the cost and time

6.10

increased workload associated with the additional DOJ resources.

Adam Walsh Child Protection and Safety Act

The Adam Walsh Child Protection and Safety Act of 2006 introduced long mandatory minimum sentences for many child sexual abuse and pornography cases. Cases prosecuted under the Adam Walsh Act often proceed to trial, and therefore absorb a great deal of attorney, investigator, and staff time. Between fiscal year 2005 (prior to enactment of the Adam Walsh Act) and fiscal year 2009, there was a 78 percent increase in CJA sex offense representations.

Evidence in pornography cases is typically found on computer drives and networks. Trial preparation therefore requires expert forensic review and testimony. The defense team is required to review all image evidence at U.S. attorney law enforcement agency offices, which increases attorney, expert, and investigator travel and preparation time. It is also a standard practice to obtain a psychological evaluation of the client and to present testimony as to the results.

Tribal Justice and Crime in Indian Country

The Tribal Law and Order Act of 2010 provides for deputizing special assistant U.S. attorneys to prosecute reservation crimes in federal courts. Federal prosecutions arising from crimes committed in Indian Country are expected to rise as the Act is implemented. Further, criminal history from tribal courts, which was not previously considered when calculating sentences under the Federal Sentencing Guidelines may now become relevant in new prosecutions under the Act. This will require additional investigation and preparation for sentencing.

expended on representations. Because the penalties for a conviction are significant, such cases generally go through trial and the entire appeals process. In addition to direct prosecution of terrorism and national-security cases in Article III federal courts, FDOs have been appointed to represent approximately 55 detainees held in Guantanamo Bay, Cuba requiring commercial and military flights to Guantanamo Bay with attorneys, investigators, translators, and psychologists in order to prepare habeas petitions or negotiate transfers to other nations.

Increased Enforcement along the Southwest Border

The Southwest Border continues to receive high numbers of immigration-related federal criminal cases. The 2010 Border Security Appropriations Bill (P.L. 111-230) provided $196 million for DOJ to enhance federal law enforcement efforts in high crime areas of the Southwest Border region, which will fund 30 additional federal prosecutors among other DOJ staff. As prosecution resources increase, so do the numbers of cases in which CJA counsel are appointed. Before recent increases in authorized assistant U.S. attorneys assigned to districts along the Southwest Border, U.S. attorney's offices typically filed charges on only the most egregious and readily provable cases. As DOJ's resources have grown, more individuals are being indicted requiring a great deal more defense time and resources. More so than cases brought in the past, they proceed to trial, and involve evidentiary and sentencing hearings. Additionally, investigations targeting multiple defendants and large conspiracies are expected to increase. P.L. 111-230 also provided $10 million to the Judiciary, a portion of which is available to the Defender Services program to address the

6.11

## COST CONTAINMENT INITIATIVES

### Cost Effective Services

The judiciary continues to engage in long-range planning efforts to ensure cost containment and accountability without compromising the defender services program's constitutionally mandated mission.

The judiciary is conscious of the budget challenges facing our nation and recognizes the need to pursue responsible cost-containment measures for the defender services program. Ongoing cost-containment initiatives include (1) promoting the use of case budgeting, to limit costs of capital and other high-cost CJA panel attorney representations, while promoting representation consistent with the best practices of the legal profession; (2) developing and applying FDO case weights to assist in projecting FDO resource requirements nationally and evaluating individual FDO requests for additional resources; and (3) supporting distance learning initiatives to maximize the training available to CJA attorneys with the funds that are available for this purpose. The judiciary is also pursuing other courses, in collaboration with DOJ, to reduce the costs of federal defender and panel attorney representations as well as those of pre-trial and probation officers, U.S. Marshals Service, assistant U.S. attorneys and other DOJ personnel, associated with matters of discovery, the death penalty authorization process, and the placement of pretrial detainees in remote facilities.

### Case Budgeting of CJA Panel Attorney Representations

In fiscal year 2010, the costs of 2.5 percent of panel attorney representations (all capital representations and non-capital mega-cases exceeding $30,000) accounted for approximately 30 percent ($117.1 million) of all panel attorney expenditures. The judiciary continues to promote the use of case-budgeting techniques for these representations nationwide in order to help ensure that, in all capital and other high-cost panel attorney cases, the costs of representation are anticipated, substantiated, monitored, and, where appropriate, limited before they are incurred. As part of this effort, the Second, Sixth, and Ninth Circuits are participating in a case-budgeting pilot project focused on identifying cost drivers, continuing to develop budgeting strategies, and working with judges and attorneys on addressing specific cost issues. The Federal Judicial Center (FJC) has been leading an evaluation of the pilot project to determine its impact on case management and cost control. The evaluation is expected to be completed in 2011. The FJC has also produced a video to assist judges in budgeting for high-cost panel attorney cases.

### Improving FDO Resource Management by Developing FDO Case Weights

Several factors determine the amount of funding an FDO requires to provide quality CJA representation, including the number of cases, type of cases, and case specific complexities. Currently, the judiciary uses the total number of cases an FDO closes in a fiscal year to project workload. This approach does not take into account the varying levels of time it takes to defend different types of offenses. For example, the typical immigration case requires far less time than a typical firearms case. The judiciary engaged the RAND corporation to develop

6.12

to all federal circuit and district chief judges, that provides a starting point for local stakeholders to develop cost-effective approaches to discovery. Administrative Office, federal defender, and CJA panel attorney representatives have met with the DOJ's National Criminal Discovery Coordinator and other DOJ staff in an effort to develop broad protocols that will make the discovery process in most cases more efficient and cost effective.

The defender services program is investing in national licenses for computer software that will help contain the cost of processing large volumes of discovery. The program will also be contracting with "coordinating discovery experts," who will assist CJA attorneys in ways designed to make document management more efficient and reduce the amount of time attorneys will have to spend on certain discovery activities.

Remote Detention
The judiciary remains concerned about increased costs caused by the remote placement of pre-trial detainees. CJA panel attorneys and federal defenders must meet with their clients in person to provide effective representation. When they must travel long distances to do so, substantial additional costs are necessarily incurred. In July 2008, an ad hoc remote detention working group was formed with judiciary and DOJ stakeholders, including the Federal Detention Trustee (FDT) and representatives of the U.S. Marshals Service and Bureau of Prisons, to discuss strategies for addressing these and other issues associated with the remote detention of pretrial defendants. In October 2008, the Administrative Office distributed a survey, developed by the ad hoc working group, to chief judges and other district stakeholders, to assess the

a case-weights system based on the average amount of time it takes an attorney to complete a particular type of case relative to other types of cases. The judiciary plans to test the system for calculating individual FDO budgets for fiscal year 2012, and to assist in developing the fiscal year 2013 defender services appropriation request.

Distance Learning
The defender services program is developing distance learning programs. In the short term, it is making selected training sessions available to CJA practitioners by video in order to reach more practitioners without having to present additional live training programs. In the long term, it will engage a contractor to assist in developing a more comprehensive distance learning plan that effectively utilizes technology to supplement the live training implemented by the program.

Discovery Costs
Defender services program costs are driven, in large part, by DOJ law enforcement, prosecutorial, and other related decisions. In several major areas, the judiciary is pursuing potential cost-containment opportunities that require DOJ involvement to be fully successful.

The judiciary is working to decrease unnecessary discovery expenditures by pursuing collaborative solutions with the DOJ, at both the national and local levels. The judiciary hopes to build on the work of the Administrative Office/DOJ Joint Working Group on Electronic Technology in the Criminal Justice System, which developed a protocol for the formation of local working groups to facilitate efforts at containing discovery costs. In April 2007, a memorandum was distributed

6.13

497

6.14

severity of the remote detention problems in their respective jurisdictions. The ad hoc group met to review the survey results, discuss possible solutions, and assist the FDT in creating content for a website that would give each district access to its respective detention data and survey results, a list of recommended actions tailored to its level of remote detention difficulty, and useful national detention information. The website became accessible in the summer of 2009. The judiciary looks forward to continuing such collaborative efforts to conserve limited national resources, consistent with providing high-quality representation to CJA defendants.

## Improvement in DOJ Procedures for Decision Process Involving Death-Eligible Cases

Over the past several years, the judiciary has pursued discussions with DOJ about streamlining its "fast-track" protocol for evaluating and making decisions *not to* seek the death penalty. Until the DOJ announces otherwise, defense counsel in death-eligible cases must assume that the death penalty will be pursued. The purpose of making process changes in this area is to avoid costs in death-eligible cases where it is highly unlikely that the DOJ will ultimately seek the death penalty. Based on these meetings, a CJA guideline was jointly developed with the judiciary and DOJ staff and approved by the Judicial Conference in September 2007. The guideline encourages courts to set reasonable deadlines for stages of the death penalty authorization process (subject to extension for good cause). The judiciary continues to discuss with the DOJ ways to reduce the amount of time it takes to decide whether to seek the death penalty.

498

## JUSTIFICATION OF CHANGES

The fiscal year 2012 request for appropriated funds is $1,098.7 million, an increase of $54.7 million (5.2 percent) over the fiscal year 2011 assumed appropriation of $1,044.1 million. Of this increase, $54.4 million is requested for adjustments to base. A total of $0.3 million is requested for a program increase to fund the start-up costs of one new FDO.

## ADJUSTMENTS TO BASE

The following narrative provides information and justification for each of the adjustments to base for this account.

### A.   PAY AND BENEFIT ADJUSTMENTS

#### 1.  *Promotions and within-grade increases*

**Requested Increase: $3,431,000**

The requested increase provides for promotions and within-grade increases for FDO personnel. The salary plan for federal defender personnel provides for periodic within-grade increases for staff who achieve at least a satisfactory performance rating.

#### 2.  *Health benefits increase*

**Requested Increase: $2,045,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 7.0 percent in January 2011 and

another 6.8 percent in January 2012. The requested increase annualizes the 2011 premium increase, and includes a nine-month provision for the anticipated fiscal year 2012 premium increase and other changes.

#### 3.  *One less compensable day*

**Requested Decrease: ($2,017,000)**

There is one less compensable day in fiscal year 2012 compared to fiscal year 2011. The request reduces personnel compensation and benefits expenses associated with having one less compensable day.

#### 4.  *Annualization of new fiscal year 2011 staff*

**Requested Increase: $9,252,000                FTE: 54**

The requested increase annualizes the cost of additional federal public defender organization staff expected to be hired during fiscal year 2011 due to workload and case complexity. The judiciary estimates that 108 additional positions will be filled for an average of six months in fiscal year 2011. This line item requests the remaining six months funding in fiscal year 2012 to annualize those 108 positions (54 FTE).

6.15

## B.   OTHER ADJUSTMENTS

### 5.   Inflationary adjustments

**Requested Increase: $2,555,000**

Consistent with guidance from the Office of Management and Budget, $2.6 million is required to fund inflationary increases of 1.4 percent for operating expenses such as travel, utilities, contractual services, supplies and materials, and furniture and equipment.

### 6.   Inflationary increases in space rental costs

**Requested Increase: $765,000**

FDOs are located in both courthouses and private commercial office space. The amount requested funds inflationary increases of 1.5 percent for current space in fiscal year 2012.

### 7.   Increases in caseload, case complexity and change in caseload mix

#### a.   Non-capital cases

**Requested Increase: $18,142,000**          **FTE: 39**

The requested increase provides for costs due to (1) increased caseload, and (2) increased complexity and changes in the non-capital caseload mix. These non-capital cases include drug offenses, weapon violations, immigration matters, fraud, and other criminal and non-criminal matters.

| Projected Non-Capital Representations | | | |
|---|---|---|---|
| | FY 2011 | FY 2012 | Difference |
| Federal Defender Organizations | 119,000 | 120,000 | 1,000 |
| Panel Attorneys | 84,800 | 86,200 | 1,400 |
| Total Projected Representations | 203,800 | 206,200 | 2,400 |

#### b.   Capital cases

**Requested Increase: $9,416,000**          **FTE: 22**

Based on historical trends, the judiciary is projecting that expenses for capital habeas and capital prosecution representations will grow by $9.4 million in fiscal year 2012.

In fiscal year 2010, the judiciary provided representation in 1,088 capital habeas cases. Under the CJA, the federal judiciary is responsible for paying the cost of providing representation associated with the federal review of state death-sentences in federal court (capital habeas cases). This cost would be significantly reduced if all states fully funded the cost of representation in state capital habeas cases. A number of states fail to provide reasonably competent counsel or litigation funding, and, as a result, issues that could have been resolved by state courts remain open for federal review. Due to concerns regarding the availability of qualified panel attorneys, the courts are increasingly turning to FDOs to provide representation in federal capital habeas cases.

500

In fiscal year 2010, FDOs and panel attorneys provided representation in 509 capital prosecution cases. Similar to capital habeas cases, the defense of a capital prosecution case requires disproportionately large amounts of staff and funding.

**8.  *Increase in appropriation to fund base requirements due to decrease in non-appropriated source of funds***

**Requested Increase: $10,784,000**

The defender services program has been able to reduce requirements for appropriated funds through the use of unobligated no-year funds carried forward from prior fiscal years.  In fiscal year 2011, $20.8 million in balances from fiscal year 2010 was available to finance fiscal year 2011 requirements.  In fiscal year 2012, absent unforeseen expenses that might arise, the judiciary expects $10.0 million in non-appropriated funds to be available, a decrease of $10.8 million from fiscal year 2011.  Therefore, $10.8 million in funding is requested to substitute direct appropriations for expenses previously funded from carryforward balances.

**C.    PROGRAM INCREASE**

**9.  *Establishment of a new federal defender organization***

**Requested Increase:    $300,000**

The requested increase would support start-up and operational costs for the establishment of one new FDO.  At this time, the judiciary cannot identify the particular district in which the institution would be established.  The three districts that do not currently have an FDO are as follows:  Georgia-Southern, Kentucky-Eastern, and Northern Mariana Islands.  Alabama-Northern was approved in 2010 but is not yet operational.  The table on page 6.18 lists all FDOs and their anticipated fiscal year 2011 funding levels.

**FINANCING THE FISCAL YEAR 2012 REQUEST**

**10.  *Anticipated carryforward from fiscal year 2011 into fiscal year 2012.***

**Estimated funds available: $10,000,000**

The judiciary anticipates $10.0 million will be available through anticipated savings to carry forward from fiscal year 2011 into fiscal year 2012 and offset the fiscal year 2012 appropriation request for the defender services program.  Savings are related to anticipated unobligated funds returned from the 80 FDOs.  The judiciary will advise appropriations subcommittee staffs of changes to this estimate.

6.17

501

6.18

## FISCAL YEAR 2011 FEDERAL DEFENDER ORGANIZATION BUDGETS

| Organization | Funding | Organization | Funding | Organization | Funding |
|---|---|---|---|---|---|
| 1 Alabama (Middle) | $6,022,000 | 28 Iowa (Northern & Southern) | $5,377,400 | 55 Oklahoma (Eastern & Northern) | $2,025,300 |
| 2 Alabama (Northern) | $1,036,000 | 29 Kansas | $5,624,900 | 56 Oklahoma (Western) | $5,913,300 |
| 3 Alabama (Southern) | $2,459,100 | 30 Kentucky (Western) | $2,596,700 | 57 Oregon | $13,675,100 |
| 4 Alaska | $3,308,800 | 31 Louisiana (Eastern) | $3,025,900 | 58 Pennsylvania (Eastern) | $24,139,700 |
| 5 Arizona | $28,642,100 | 32 Louisiana (Middle & Western) | $3,355,700 | 59 Pennsylvania (Middle) | $5,912,200 |
| 6 Arkansas (Eastern & Western) | $6,545,900 | 33 Maine | $1,243,700 | 60 Pennsylvania (Western) | $7,573,800 |
| 7 California (Central) | $39,350,100 | 34 Maryland | $10,871,600 | 61 Puerto Rico | $4,561,500 |
| 8 California (Eastern) | $17,741,200 | 35 Massachusetts, New Hampshire & Rhode Island | $9,664,200 | 62 South Carolina | $5,471,800 |
| 9 California (Northern) | $12,486,900 | 36 Michigan (Eastern) | $7,163,400 | 63 South Dakota & North Dakota | $5,595,300 |
| 10 California (Southern) | $16,866,600 | 37 Michigan (Western) | $3,877,000 | 64 Tennessee (Eastern) | $5,773,200 |
| 11 Colorado & Wyoming | $7,166,000 | 38 Minnesota | $3,570,300 | 65 Tennessee (Middle) | $9,931,800 |
| 12 Connecticut | $3,527,000 | 39 Mississippi (Southern) | $4,053,700 | 66 Tennessee (Western) | $3,832,500 |
| 13 Delaware | $3,913,300 | 40 Missouri (Eastern) | $5,571,400 | 67 Texas (Eastern) | $3,453,700 |
| 14 District of Columbia | $6,200,600 | 41 Missouri (Western) | $5,657,400 | 68 Texas (Northern) | $6,351,700 |
| 15 Florida (Middle) | $13,389,400 | 42 Montana | $4,120,800 | 69 Texas (Southern) | $17,139,600 |
| 16 Florida (Northern) | $3,421,500 | 43 Nebraska | $4,154,000 | 70 Texas (Western) | $17,374,800 |
| 17 Florida (Southern) | $19,144,600 | 44 Nevada | $17,475,200 | 71 Utah | $7,697,700 |
| 18 Georgia (Middle) | $2,392,500 | 45 New Jersey | $9,532,900 | 72 Vermont | $1,785,300 |
| 19 Georgia (Northern) | $14,378,200 | 46 New Mexico | $10,289,500 | 73 Virginia (Eastern) | $9,871,100 |
| 20 Guam | $1,294,900 | 47 New York (Northern) | $3,721,900 | 74 Virginia (Western) | $3,480,100 |
| 21 Hawaii | $3,176,000 | 48 New York (Southern & Eastern) | $13,734,100 | 75 Virgin Islands | $1,807,200 |
| 22 Idaho | $4,798,600 | 49 New York (Western) | $4,199,000 | 76 Washington (Eastern) | $6,119,800 |
| 23 Illinois (Central) | $3,545,700 | 50 North Carolina (Eastern) | $9,614,100 | 77 Washington (Western) | $10,388,500 |
| 24 Illinois (Northern) | $7,827,800 | 51 North Carolina (Middle) | $3,131,600 | 78 West Virginia (Northern) | $2,067,600 |
| 25 Illinois (Southern) | $3,232,500 | 52 North Carolina (Western) | $6,162,200 | 79 West Virginia (Southern) | $3,002,900 |
| 26 Indiana (Northern) | $3,224,300 | 53 Ohio (Northern) | $6,729,700 | 80 Wisconsin (Eastern & Western) | $4,126,000 |
| 27 Indiana (Southern) | $1,369,800 | 54 Ohio (Southern) | $5,909,800 | **Total** | **$596,519,100** |

# COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES

*Fees of Jurors and Commissioners*

## SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | |
|---|---|
| **Fiscal Year 2011 Assumed Appropriation** | **$52,410,000** |
| **Fiscal Year 2012 Requested Appropriation** | 59,727,000 |
| **Requested Increase from Fiscal Year 2011 Assumed Appropriation** | 7,317,000 |

## APPROPRIATION LANGUAGE

## COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES

## FEES OF JURORS AND COMMISSIONERS

For fees and expenses of jurors as authorized by 28 U.S.C. 1871 and 1876; compensation of jury commissioners as authorized by 28 U.S.C. 1863; and compensation of commissioners appointed in condemnation cases pursuant to rule 71.1(h) of the Federal Rules of Civil Procedure (28 U.S.C. Appendix Rule 71.1(h), [$52,410,000] *$59,727,000*, to remain available until expended: *Provided*, That the compensation of land commissioners shall not exceed the daily equivalent of the highest rate payable under 5 U.S.C. 5332.

503

## SUMMARY OF REQUEST
## FEES OF JURORS AND COMMISSIONERS
### FISCAL YEAR 2012
#### ($000)

**Fiscal Year 2012 Resource Requirements:**

| | | Original Request | |
|---|---|---|---|
| | | FTEs | Amount |
| Fiscal Year 2011 Obligations............................. | | - | $60,369 |
| Carryforward from prior years................... | | - | (7,959) |
| Fiscal Year 2011 Assumed Appropriation ................ | | - | $52,410 |

**Adjustments to Base:**

| Page No. | | | | |
|---|---|---|---|---|
| 7.10 | 1. Inflationary adjustments | | | |
| | a. Grand Jurors................. | | - | 82 |
| | b. Petit Jurors................... | | - | 33 |
| 7.10 | 2. Projected change in available jurors | | | |
| | a. Grand Jurors................ | | - | (483) |
| | b. Petit Jurors................. | | - | (274) |
| 7.10 | 3. Funding necessary to maintain fiscal year 2011 service levels due to an anticipated decline in non-appropriated funds............. | | - | 7,959 |
| | Subtotal, Adjustments to Base.......................... | | - | 7,317 |
| | Total Current Services Appropriation Required..................... | | - | 59,727 |
| | Total Fiscal Year 2012 Appropriation Required................ | | - | 59,727 |
| | Total Appropriation Change, Fiscal Year 2011 to Fiscal Year 2012............. | | - | 7,317 |

**Financing the Fiscal Year 2012 Request:**

| | | | |
|---|---|---|---|
| Total Appropriation Required............................ | | - | 59,727 |
| Estimated Obligations, Fiscal Year 2012................. | | - | 59,727 |

7.2

504

7.3

## COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES
## FEES OF JURORS AND COMMISSIONERS
### Obligations by Activity ($000)

| Activity | Fiscal Year 2010 Actual | Fiscal Year 2011 Estimate | Fiscal Year 2012 Request |
|---|---|---|---|
| **Comparison by activities:** | | | |
| *Land commissioners* | 72 | 100 | 100 |
| *Grand Jurors* | 17,338 | 16,658 | 16,257 |
| *Petit Jurors* | 41,150 | 43,611 | 43,370 |
| **Total Obligations** | 58,560 | 60,369 | 59,727 |
| Prior Year Recoveries | 665 | - | - |
| **Revised Obligations** | 59,225 | 60,369 | 59,727 |
| | | | |
| Unobligated Balance, start of year | (5,323) | (7,959) | - |
| Unobligated Balance, end of year | 7,959 | - | - |
| | | | |
| **Available Appropriation** | 61,861 | 52,410 | 59,727 |

### Obligations by Budget Object Class ($000)

| | Description | Fiscal Year 2010 Actual | Fiscal Year 2011 Estimate | Fiscal Year 2012 Request |
|---|---|---|---|---|
| 11 | Personnel compensation | 28,053 | 28,618 | 28,314 |
| 12 | Personnel benefits | 0 | 6 | 6 |
| 21 | Travel | 27,052 | 28,771 | 28,465 |
| 23 | Rent, communications and utilities | 1,609 | 1,312 | 1,298 |
| 25 | Other services | 816 | 560 | 554 |
| 26 | Supplies and materials | 1,030 | 1,102 | 1,090 |
| | **Total obligations** | 58,560 | 60,369 | 59,727 |

7.4

## COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES
## FEES OF JURORS AND COMMISSIONERS

### Relation of Obligations to Outlays ($000)

|  | FY 2010 Actual | FY 2011 Estimate | FY 2012 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 58,560 | 60,369 | 59,727 | (642) |
| Obligated balance, start of year | 1,737 | 2,904 | 8,207 | 5,303 |
| Obligated balance, end of year | (2,904) | (8,207) | 0 | 8,207 |
| Change in prior year balances | 665 | - | - | - |
| Net Outlays | 58,058 | 55,066 | 67,934 | 12,868 |

506

7.5

## GENERAL STATEMENT AND INFORMATION

This appropriation provides for the statutory fees and allowances of grand and petit jurors, and for the compensation of jury and land commissioners. In addition to reimbursement for daily travel to and from court, expenses allowed include meals and lodging furnished to sequestered jurors, and transportation to view evidence or crime scenes offsite. Budgetary requirements depend largely upon the volume and the length of jury trials demanded by parties to both civil and criminal actions and the number of grand juries being convened by the courts at the request of United States Attorneys. All of these factors are outside the control of the judiciary.

### Petit Jurors

A petit jury may be called to hear a trial in a civil or criminal action. A criminal trial normally would have a 12-person jury and a civil trial would typically have a 7- to 9- person jury. In a civil trial, the jury's responsibility is to decide whether the defendant injured or otherwise failed to fulfill a legal obligation to the plaintiff and to determine what the compensation should be. Criminal juries decide whether the defendant committed the crime as charged.

The number of jurors called on any given day to serve in a petit jury pool is related to the number and type of cases in which a trial by jury is requested. Moreover, under rules of criminal procedure, criminal trials are allowed additional peremptory challenges compared to civil trials because of the jury size.

This means that the court must take these challenges into account when determining the number of potential jurors in a criminal jury pool. Thus, the number of potential jurors in a criminal jury pool is likely to be greater than the number of jurors in a civil jury pool, but the likelihood of jurors being called in a criminal jury is less than in a civil jury.

In fiscal year 2010 the total number of available petit jurors decreased by 7.5 percent to 483,293, continuing a decade-long decline in available petit jurors. Available petit juror are projected to increase temporarily by just over 1 percent to 489,100 in fiscal year 2011, and then decrease again by just less than 1 percent to 485,100 in fiscal year 2012. Table 7.1, on page 7.6 provides a historical pattern of the number of jurors called and the related costs of paying the expenses of those jurors.

**Table 7.1 Petit Juror Usage**

|  | Fiscal Year | Petit Jury Trial Days | | | | Available Jurors | | Cost | |
|---|---|---|---|---|---|---|---|---|---|
|  |  | Criminal | Civil | Total | Percent Change | Jurors | Percent Change | Fees & Expenses | Percent Change |
| Actual | 2001 | 15,391 | 17,204 | 32,595 | 0.0% | 616,515 | 0.0% | 43,660,000 | 0.0% |
|  | 2002 | 14,806 | 15,427 | 30,233 | -7.2% | 583,413 | -5.4% | 41,279,000 | -5.5% |
|  | 2003 | 15,508 | 14,998 | 30,506 | 0.9% | 603,785 | 3.5% | 43,409,000 | 5.2% |
|  | 2004 | 17,132 | 13,935 | 31,487 | 3.2% | 607,673 | 0.6% | 44,032,000 | 1.4% |
|  | 2005 | 17,360 | 13,435 | 30,795 | -2.2% | 612,404 | 0.8% | 45,645,000 | 3.7% |
|  | 2006 | 15,634 | 12,987 | 28,621 | -7.1% | 579,706 | -5.3% | 45,177,000 | -1.0% |
|  | 2007 | 15,339 | 12,054 | 27,393 | -4.3% | 554,193 | -4.4% | 47,489,000 | 5.1% |
|  | 2008 | 14,946 | 11,890 | 26,836 | -2.0% | 544,565 | -1.7% | 44,906,000 | -5.4% |
|  | 2009 | 14,371 | 10,985 | 25,356 | -7.4% | 522,348 | -5.7% | 45,441,000 | -4.3% |
|  | 2010 | 13,088 | 10,825 | 23,913 | -5.7% | 483,293 | -7.5% | 47,006,000 | 3.4% |
| Estimated | 2011 | 13,300 | 11,100 | 24,400 | 2.0% | 489,100 | 1.2% | 43,611,000 | -7.2% |
|  | 2012 | 13,000 | 11,200 | 24,200 | -0.8% | 485,100 | -0.8% | 43,370,000 | -0.6% |

7.6

**Grand Jurors**

A grand jury is a jury of inquiry whose duty it is to receive complaints and accusations in criminal cases, hear the evidence presented on the part of the Government, and find bills of indictment in cases where the jurors are satisfied that the evidence presented is sufficient to warrant filing an indictment and bringing the case to trial.  The number of grand juries convened by district courts varies depending on such factors as the number of criminal cases, the type of criminal activity, and the number of places in which court is held.  Grand juror activity is measured by the number of sessions convened, jurors in session and total jurors in attendance.  Available grand jurors remained relatively constant in fiscal year 2010 at 203,435.  The number of available grand jurors is projected to decline by 0.5 percent in fiscal year 2011 to 202,500, and then remain constant in fiscal year 2012 at 202,600.  Table 7.2, on page 7.8, provides further detail on grand jury activity.

7.8

**Table 7.2  Grand Jury Activity**

| | Fiscal Year | Total Number of Grand Jurors | | | | Available Jurors | | | | Cost | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Sessions Convened | Percent Change | Jurors in Session | Percent Change | Hours in Session | Percent Change | Jurors | Percent Change | Fees & Expenses | Percent Change |
| **Actual** | 2002 | 9,873 | 0.0% | 197,182 | 0.0% | 50,013 | 0.0% | 212,477 | 0.0% | 14,585,000 | 0.0% |
| | 2003 | 10,197 | 3.3% | 203,691 | 3.3% | 51,974 | 3.9% | 221,598 | 4.3% | 16,267,000 | 11.5% |
| | 2004 | 10,402 | 2.0% | 207,245 | 1.7% | 52,452 | 0.9% | 224,724 | 1.4% | 16,260,000 | 0.0% |
| | 2005 | 9,854 | -5.3% | 196,197 | -5.3% | 48,582 | -7.4% | 212,662 | -5.4% | 15,999,000 | -1.6% |
| | 2006 | 9,399 | -4.6% | 187,646 | -4.4% | 45,718 | -5.9% | 204,530 | -3.8% | 15,633,000 | -2.3% |
| | 2007 | 9,279 | -1.3% | 185,083 | -1.4% | 45,197 | -1.1% | 201,073 | -1.7% | 15,427,000 | -1.3% |
| | 2008 | 9,358 | 0.9% | 186,603 | 0.8% | 44,736 | -1.0% | 204,045 | 1.5% | 15,721,000 | 1.9% |
| | 2009 | 9,257 | -1.1% | 186,194 | -0.2% | 44,676 | -0.1% | 203,160 | -0.4% | 15,755,000 | 2.1% |
| | 2010 | 9,277 | 0.2% | 186,020 | -0.1% | 44,845 | 0.4% | 203,435 | 0.1% | 17,642,000 | 12.0% |
| **Estimated** | 2011 | 9,200 | -0.8% | 185,200 | -0.4% | 44,600 | -0.5% | 202,500 | -0.5% | 16,658,000 | -5.6% |
| | 2012 | 9,300 | 1.1% | 185,300 | 0.1% | 42,700 | 0.0% | 202,600 | 0.0% | 16,257,000 | -2.4% |

| Fiscal Year | Average Number of | |
|---|---|---|
| | Jurors per Session | Hours per Session |
| 2002 | 20.0 | 5.07 |
| 2003 | 20.0 | 5.10 |
| 2004 | 19.9 | 5.04 |
| 2005 | 19.9 | 4.93 |
| 2006 | 19.9 | 4.86 |
| 2007 | 19.9 | 4.87 |
| 2008 | 19.9 | 4.87 |
| 2009 | 20.1 | 4.80 |
| 2010 | 20.1 | 4.80 |

| Total Number of Grand Juries | | |
|---|---|---|
| In Existence at the beginning of the Fiscal Year | Impaneled | Discharged |
| 525 | 321 | 279 |
| 500 | 335 | 288 |
| 453 | 338 | 286 |
| 462 | 307 | 312 |
| 442 | 316 | 319 |
| 413 | 320 | 292 |
| 426 | 323 | 300 |
| 444 | 322 | 265 |
| 450 | 334 | 265 |

510

## Land Commissioners

The responsibility of land commissioners is to determine the issue of just compensation arising from the deprivation of private property for public use. Under the Federal Rules of Civil Procedure, a district court may use its discretion to order that compensation for condemned property be determined by a commission of three persons appointed by the court. The determination of compensation is based on evidence presented during the exercise of trial procedures and evidentiary rulings. This delegation of the judicial function requires close judicial supervision and requires that actions taken by the commission be fully documented to permit full review by the district or appellate courts. This system ensures due process of law to the litigants.

Land commissioners are compensated based on the daily equivalent of the highest rate payable under 5 U.S.C. 5332, and are also eligible for locality pay amounts that apply to their locality pay areas. These amounts are payable on top of their basic pay. The annual adjusted pay rate (i.e., basic pay plus locality pay) for land commissioners is limited to the rate of pay for level III of the Executive Schedule, currently $165,300.

511

7.10

## JUSTIFICATION OF CHANGES

The fiscal year 2012 appropriation request for Fees of Jurors and Commissioners totals $59,727,000, which represents an increase of $7,317,000 or 14.0 percent above the fiscal year 2011 appropriation of $52,410,000.

### ADJUSTMENTS TO BASE

*1. Inflationary adjustments*

**a. Grand Jurors**

**Requested Increase: $82,000**

An increase of $82,000 is requested for inflationary adjustments associated with grand juror costs including travel allowances (mileage, parking, tolls), meals and lodging for sequestered jurors, and other miscellaneous juror expenses.

**b. Petit Jurors**

**Requested Increase: $33,000**

An increase of $33,000 is requested for inflationary increases associated with petit juror costs including travel allowances (mileage, parking, tolls), meals and lodging for sequestered jurors, and other miscellaneous juror expenses.

*2. Projected change in available jurors*

**a. Grand Jurors**

**Requested Decrease:   ($483,000)**

A decrease of $483,000 is requested for grand jurors in fiscal year 2012.  Although a slight increase is projected in the number of available grand jurors from fiscal year 2011 to fiscal year 2012, the cost to fund them is projected to be lower.

**b. Petit Jurors**

**Requested Decrease:   ($274,000)**

A decrease of $579,000 is the result of a projected decrease in the number of available petit jurors from fiscal year 2011 to fiscal year 2012.

*3. Funding needed to maintain fiscal year 2011 service level*

**Requested Increase: $7,959,000**

The fiscal year 2011 financial plan was financed in part by $7.9 million in carry forward balances from prior years. The judiciary requests appropriated funds for fiscal year 2012 to replace these non-appropriated funds in order to maintain the same level of service as provided in fiscal year 2011.

8.1

# COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES
*Court Security*
## SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | |
|---|---|
| **Fiscal Year 2011 Assumed Appropriation** | **$488,436,000** |
| **Fiscal Year 2012 Appropriation Request** | **$513,058,000** |
| **Requested Increase from Fiscal Year 2011 Assumed Appropriation** | **$24,622,000** |

APPROPRIATION LANGUAGE

COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES

COURT SECURITY

For necessary expenses, not otherwise provided for, incident to the provision of protective guard services for United States courthouses and other facilities housing Federal court operations, and the procurement, installation, and maintenance of security systems and equipment for United States courthouses and other facilities housing Federal court operations, including building ingress-egress control, inspection of mail and packages, directed security patrols, perimeter security, basic security services provided by the Federal Protective Service, and other similar activities as authorized by section 1010 of the Judicial Improvement and Access to Justice Act (Public Law 100-702); [$488,436,000] *$513,058,000* of which not to exceed $15,000,000 shall remain available until expended to be expended directly or transferred to the United States Marshals Service, which shall be responsible for administering the Judicial Facility Security Program consistent with standards or guidelines agreed to by the Director of the Administrative Office of the United States Courts and the Attorney General.

513

8.2

## SUMMARY OF REQUEST
## COURT SECURITY
## FISCAL YEAR 2012
### (Dollar amounts in thousands)

| Page | | FTEs | Amount |
|---|---|---|---|
| | **Fiscal Year 2012 Resource Requirements:** | | |
| | Fiscal Year 2011 Obligations.................................................. | 71 | $501,399 |
| | Less Encumbered Carryforward from Fiscal Year 2010 into Fiscal Year 2011.... | | (12,263) |
| | **Fiscal Year 2011 Base Appropriation**.................................... | 71 | 488,436 |
| | **Adjustments to Base to Maintain Current Services:** | | |
| | **A. Personnel and Other Programs** | | |
| | 1. Pay and benefits increases | | |
| 8.13 | a. Promotions and within-grade increases ................................ | - | 53 |
| 8.13 | b. Health benefits increases ........................................... | - | 28 |
| 8.14 | c. One less compensable day ........................................... | - | (1,416) |
| 8.14 | 2. Annualization of fiscal year 2011 court security officer positions (30)....... | - | 1,245 |
| 8.14 | 3. Fiscal year 2012 Department of Labor and Collective Bargaining Agreements wage rate adjustments (6.0%)............................................. | - | 19,918 |
| 8.14 | 4. Inflationary increase in charges for contracts, services, supplies, and equipment....... | - | 66 |
| 8.14 | 5. Inflationary increase in GSA space rental costs ......................... | - | 91 |
| 8.15 | 6. Additional court security officers (50) associated with fiscal year 2012 new and existing space............................................ | - | 4,730 |

514

8.3

| Page | | FTEs | Amount |
|------|---|------|--------|
| 8.15 | 7. Changes in Federal Protective Service security charges | | |
| | a. Increase in basic security charges | - | 2,213 |
| | b. Increase in building-specific operating expense security charges | - | 4,532 |
| 8.16 | 8. Adjustments to base requirements for security systems and equipment | - | (7,715) |
| 8.19 | 9. Adjustments to base requirements for program administration | - | (779) |
| | **Subtotal, Adjustments to Base to Maintain Current Services** | - | 22,966 |
| | **Total Current Services Appropriation Required** | 71 | 511,402 |
| | **B. Program Increases:** | | |
| 8.20 | 10. Facial recognition systems pilot (Re-Requested from fiscal year 2011) | - | 200 |
| 8.20 | 11. National contract for vehicle barrier maintenance (Re-Requested from fiscal year 2011) | - | 728 |
| 8.20 | 12. Wireless broadcast systems pilot | - | 194 |
| 8.21 | 13. Seven new judiciary-funded USMS positions (funded for 6 months) | 4 | 534 |
| | **Subtotal, Program Increases** | 4 | 1,656 |
| | **Total Fiscal Year 2012 Appropriation Required** | 75 | 513,058 |
| | **Total Appropriation Increase, Fiscal Year 2011 to Fiscal Year 2012** | 4 | 24,622 |

**Financing the Fiscal Year 2012 Request:**

| | FTEs | Amount |
|---|------|--------|
| **Total Appropriation Required** | 75 | 513,058 |
| Anticipated Carryforward Balances from Fiscal Year 2011 into Fiscal Year 2012 | - | - |
| **Estimated Obligations, Fiscal Year 2012** | 75 | 513,058 |

515

8.4

COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES
COURT SECURITY
Obligation by Activity ($000)

| | FY 2010 Actual | FY 2011 Estimate | FY 2012 Request |
|---|---|---|---|
| **Authorization:** | | | |
| **Permanent** | | | |
| Comparison by activities: | | | |
| *Court Security* | 459,845 | 501,399 | 513,058 |
| **Total Obligations** | 459,845 | 501,399 | 513,058 |
| Unobligated Balance, start of year | (22,693) | (12,963) | - |
| Prior Years' Recoveries | (2,200) | | - |
| Unobligated Balance, end of year | 12,963 | | - |
| Unobligated Balance, expiring or withdrawn | 4,602 | - | - |
| **Available Appropriation** | 452,607 | 488,436 | 513,058 |

COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES
COURT SECURITY
Obligations by Budget Object Class ($000)

| | | FY 2010 Actual | FY 2011 Estimate | FY 2012 Request |
|---|---|---|---|---|
| 11 | Personnel compensation | 6,159 | 7,175 | 7,417 |
| 12 | Personnel benefits | 1,656 | 1,982 | 2,053 |
| 21 | Travel | 385 | 455 | 480 |
| 22 | Transportation of things | 88 | 58 | 58 |
| 23 | Rent, communications and utilities | | | |
| | *Rental payments to GSA* | 5,807 | 5,230 | 5,325 |
| | *Communications, utilities & misc. charges* | 910 | 933 | 947 |
| 24 | Printing and Reproduction | 7 | 6 | 6 |
| 25 | Contractual Services | | | |
| | *CSO Contract* | 320,466 | 326,846 | 352,739 |
| | *Other Contractual Services* | 33,527 | 36,288 | 15,845 |
| | *Federal Protective Service Charges* | 65,597 | 72,639 | 79,384 |
| 26 | Supplies and materials | 783 | 517 | 522 |
| 31 | Equipment | 24,460 | 49,270 | 48,282 |
| | **Total obligations** | 459,845 | 501,399 | 513,058 |

516

# COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES
## COURT SECURITY

### Relation of Obligations to Outlays

| | FY 2010 Actual ($000) | FY 2011 Estimate ($000) | FY 2012 Request ($000) | Difference (+) or (-) ($000) |
|---|---|---|---|---|
| Total Obligations | 459,845 | 501,399 | 513,058 | 11,659 |
| Obligated balance, start of year | 136,695 | 138,998 | 180,297 | 41,399 |
| Adjustments in expired accounts | (5,094) | - | - | - |
| Obligated balance, end of year | (138,998) | (180,397) | (189,764) | (9,367) |
| Total Outlays | 452,448 | 460,000 | 503,691 | 43,691 |

### Personnel Summary

| | FY 2010 Actual | FY 2011 Estimate | FY 2012 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total compensable workyears (FTE): | | | | |
| United States Marshals Service | 50 | 64 | 68 | 4 |
| Administrative Office Reimbursable Positions | 6 | 7 | 7 | - |
| Total, Court Security | 56 | 71 | 75 | 4 |

8.5

517

## GENERAL STATEMENT AND INFORMATION

The Court Security appropriation was established in 1983 and funds the necessary expenses, not otherwise provided for, incident to the provision of protective guard services, and the procurement, installation, and maintenance of security systems and equipment for United States courthouses and other facilities housing federal court operations. This includes building access control, inspection of mail and packages, directed security patrols, perimeter security, and other similar activities as authorized by section 1010 of the Judicial Improvement and Access to Justice Act (Public Law 100-702).

The United States Marshals Service (USMS), of the Department of Justice (DOJ), by statute, is responsible for the security of the judiciary (28 USC §§ 564, 566). In that regard, Congress provides the USMS with funding to: secure prisoners; conduct protective investigations on threats against judges and other judiciary personnel; provide protective details when necessary; and provide security for witnesses and high threat trials. The USMS is also responsible for the day-to-day management of the Judicial Facility Security Program (JFSP) that is funded by the judiciary's Court Security appropriation. The JFSP provides for an adequate level of physical security for courthouses nationwide.

### Overview of the Judicial Facility Security Program

The JFSP represents a collaborative effort between the judiciary and the DOJ in ensuring the integrity of the judicial process by providing secure facilities in which to conduct judicial business. In 1982, DOJ requested and received a Delegation of Procurement Authority from the General

Services Administration (GSA) to contract for private security (known as court security officers or CSOs) guard services, and for the installation and maintenance of security systems and equipment for space occupied by the federal judiciary within GSA-controlled facilities.

The judiciary's fiscal year 1983 Court Security appropriation included funding to support this new delegation. The appropriation language provided that funding could be expended directly or transferred to the USMS, which will be responsible for administering the JFSP consistent with standards or guidelines agreed to by the Administrative Office of the U.S. Courts (AO) Director and the Attorney General.

The goals of the JFSP are:

1. ensuring an adequate court security officer (CSO) presence at new, renovated, and existing court facilities;

2. ensuring that effective security screening and/or access control systems are in place for court facilities housing judges, at leased facilities that house probation and pretrial services offices, and other facilities housing federal court operations; and

3. ensuring timely installation and maintenance of required security systems and equipment for new and renovated courthouses.

Security begins at the courthouse perimeter with the use of vehicle barriers, closed circuit surveillance television (CCTV) cameras and recorders, and CSOs performing perimeter

8.6

security patrols. CSOs control access into the courthouse, or judicial areas within multi-tenant federal buildings housing court operations, using security screening equipment. CSOs also conduct roving patrols and staff fixed posts within the facility. The use of CSOs and security systems and equipment assists the USMS in protecting the court facility and thus the lives of judges, court staff, jurors, trial participants, and the general public; and helps ensure the effectiveness, viability and integrity of the federal judicial process.

**Ensuring Adequate Security at Federal Court Facilities**

Federal courthouses are often the most visible symbols of the U.S. government presence in communities outside of Washington, D.C., and as such, may be considered inviting targets for terrorist attacks. The judicial process compels the attendance of suspected and convicted criminals to its facilities on a daily basis, along with witnesses and jurors. Also, family members of the suspected or convicted criminals, members of the Bar of the Court, the press, court employees, and the public must be able to enter and use the buildings.

Maintaining the proper balance between ensuring an open court system and having secure court facilities is a complex task given the increasing number of threats against the federal judiciary. For example, in recent years there have been shootings inside of, and at, federal court facilities resulting in the death of three CSOs; three federal judges have been assassinated as a direct result of their work as a jurist; one federal judge was killed when representing the court during a visit with a Member of Congress; and a federal judge's

husband and mother were murdered at her home as a result of a civil case that the judge handled.

**The Importance of CSOs and Security Systems and Equipment**

CSOs and security systems and equipment are key aspects in providing physical security to the courts. Together they are an integral part of the USMS' security plan to prevent and deter violence that can undermine the judicial process and erode public confidence in the judicial system. CSOs, using security screening systems, detect and intercept weapons, contraband and other prohibited items that individuals attempt to bring into courthouses. The equipment plays a vital role in the screening of visitors, employees, mail, and packages entering courthouses. .

USMS data from fiscal year 2010 indicates that 2,190,007 weapons (such as guns and knives), and other items prohibited in courthouses, such as cameras and cell phones were detected. This is a 12.2 percent increase over fiscal year 2009. Of these items, 158 were permanently confiscated or abandoned at the courthouse. The rest were surrendered at the entrances, and returned to their owners upon departure.

**Federal Protective Service Charges**

By a series of Memoranda of Agreement and/or Memoranda of Understanding, most of the responsibility for security at facilities where the courts are the only or primary tenant, has been delegated to the USMS so that a single entity is responsible for the physical protection of these facilities. In

519

8.8

multi-tenant buildings where the courts are not the major tenant, the USMS and/or FPS share security responsibility. In these instances, the security that FPS provides may include, to varying degrees, entry screening, perimeter patrols, garage access control, and mail and package screening.

There are two types of facility-related security charges imposed by the Federal Protective Service (FPS) on government facilities, including those occupied by the judiciary: (1) the "basic" security charge estimated in fiscal year 2012 to be $0.74 per rentable square foot of space; and (2) the "building-specific" security charge, which applies to FPS-procured contract guards and/or security systems and equipment provided to a particular building.

The basic security charge is designed to provide FPS with general funding to operate. The building-specific charge is designed to pay for FPS-provided site-specific contract guards and security systems and equipment.

In fiscal year 2006, the judiciary undertook a nationwide rent validation initiative to verify the accuracy of the GSA rent billings. This initiative also had an impact on FPS security charges, as bills were reduced to reflect the lower, more accurate square footage amounts. As a result of these efforts, FPS actual costs were below original projections for fiscal years 2007 through 2010. Fiscal year 2007 FPS actual costs were $6.5 million below the original projection of $67.9 million; fiscal year 2008 FPS actual costs were $4.8 million below the original projection of $71.7 million; fiscal year 2009 FPS actual costs were $3.1 million below the original projection of $67.4 million; and fiscal year 2010 FPS actual costs were $1.7 million below the original projection of $67.3 million.

As previously requested by Congress, the AO has continued to take action to establish and implement clear and consistent parameters for budgetary decisions related to FPS billings. All courts have been reminded of the continued need to control FPS building-specific charges, and FPS headquarters staff were notified that additional services cannot be provided without an AO certification that funds are available. In April 2006, the AO informed the courts that no additional FPS-provided guards, equipment or systems could be acquired without prior authorization. Periodic guidance has been issued since that time to remind the courts of this standing policy.

The judiciary continues to engage in dialogue with FPS officials to reiterate the need for detailed billing information that will allow review and certification that the bills are valid, proper, and correct, in accordance with 28 USC § 613.

**Perimeter Security Pilot Program**

The Consolidated Appropriations Act of 2008 (Pub. Law No. 110-161) authorized the USMS, which has the statutory responsibility to provide protection of the judicial process (28 U.S.C. §§ 564, 566), to establish a perimeter security pilot program at seven primary courthouses. (Section 307, Division D, Title III, Pub. Law No. 110-161.) Primary courthouses are facilities where the court, the U.S. Attorney's Office and/or the USMS occupy 75 percent or more of the rentable square footage in the building. The pilot program consolidates the responsibility for perimeter security guarding and security

systems and equipment at the pilot sites under the control of the district U.S. marshal, who is supported by the judiciary-funded and USMS-administered JFSP.

The pilot was designed to address several issues. First, the judiciary's experience to date was that the current bifurcated system with two security providers - the FPS and the USMS - providing physical security at many federal courthouses had been unsatisfactory. Second, there had been instances in which FPS-installed surveillance cameras, and associated monitoring, switching and recording equipment, were not functioning for extended periods of time. Third, the judiciary found vulnerabilities in the FPS-provided security services due to the lack of national standards for determining how many security guards are needed to provide adequate physical security at federal facilities, including courthouses, and qualifications for FPS guards.

Following enactment of the fiscal year 2008 appropriations bill authorizing the pilot, the judiciary, the USMS, and the FPS worked together on the implementation of the pilot program. The seven pilot sites that were selected by the USMS, in consultation with the AO were:

1. Everett McKinley Dirksen United States Courthouse/Chicago, Illinois

2. United States Courthouse and Federal Building/Baton Rouge, Louisiana

3. Russell B. Long Federal Building/Baton Rouge, Louisiana

4. Evo A. DeConcini United States Courthouse/Tucson, Arizona

5. Sandra Day O'Connor United States Courthouse/Phoenix, Arizona

6. Theodore Levin United States Courthouse/Detroit, Michigan

7. Daniel Patrick Moynihan United States Courthouse/New York City

The goals of the pilot program were to:

- consolidate under the USMS all responsibility for, and provision of, perimeter and interior security systems;

- provide the judiciary with consistent and reliable perimeter security coverage; and

- ensure that there are no redundant security services (either perimeter guards or equipment/systems) being provided by the FPS and the USMS.

As of January 1, 2009, the physical security of each pilot program courthouse was placed under the control of the respective district U.S. marshal. The pilot was expected to last

8.9

between 18 and 24 months. Prior to the start of the pilot, the USMS conducted on-site assessments of the pilot courthouses to inspect the existing FPS perimeter security systems and equipment. The USMS also assessed the security guarding requirements at each pilot site. The USMS proposed a plan for the pilot that would provide optimal security coverage at these sites. The Judicial Conference's Committee on Judicial Security reviewed the USMS's proposal and made some minor modifications due to budget concerns.

The chair of the Committee on Judicial Security and/or AO staff conducted site visits at each site as the pilot program progressed. During these visits, discussions were held with the respective chief judges, district U.S. marshals and other court and USMS staff. The pilot program approach allowed the Judiciary and the USMS to test the staffing model used in the pilot, and adjustments were made as necessary. The USMS also conducted a survey of the USMS's district management at each of the pilot districts.

The consensus of opinions expressed by judges, court unit executives, and district U.S. Marshals office staff during the site visits was in support of the pilot program, as were the results of the USMS's district management survey. The participants stated that the benefits of the program included:

- Improved Quality of Security Services. The pilot program participants reported that they experienced better quality security coverage from the CSOs than they had from the FPS contract guards.

- Improved Security Coverage. The pilot program participants reported that they experienced improved protection as a result of the level of staffing provided under the pilot.

- Unified Command and Control Over Courthouse Physical Security. District USMS management stated that the pilot program allowed it to improve greatly its provision of protection to the courthouse and its occupants because it controlled all aspects of guarding and equipment.

- Improved Communication. Pilot participants reported better communication between the CSOs, USMS, court personnel, and law enforcement entities.

- Improved Stewardship and Monitoring of Equipment. The USMS reported that under the pilot, it was able to repair or replace broken security equipment and to maintain and control all security systems and equipment.

The judiciary was directed by Congress to report on the execution of the perimeter security pilot program authorized in fiscal year 2008, including a cost comparison. Pursuant to this direction, the judiciary transmitted that report to Congress on July 9, 2009.

The final report, which was a follow-up to the judiciary's July 2009 report, was transmitted to Congress on October 20, 2010, and provided Congress with the results of the pilot program and a series of potential staffing and funding options if the

8.10

522

8.11

program is expanded to additional courthouses, as recommended by the judiciary.

In addition, in light of the success at the pilot program sites and because no additional funding would be required, the judiciary also recommended that the existing security be continued at those sites.

### Fiscal Year 2012 Priorities

In 2007, as a part of the judiciary's overall cost containment effort, the Judicial Conference implemented an annual budget cap for use in developing the budget request for the court security program. Accordingly, the fiscal year 2012 budget request represents only the most critical security needs of the judiciary, and funding to maintain an effective court security program.

The fiscal year 2012 request includes funding for two priorities: (1) base requirements (including CSO contract and USMS personnel costs, and FPS charges) in order to maintain the current level of protection to the courts; and (2) for security services and equipment requirements, including new and renovated court facilities, cyclical replacement of screening equipment, cyclical replacement of hardware and software for access control systems, and perimeter security improvements.

The need for adequate security for the judiciary is affected by factors beyond its control, such as the number of trials involving high-threat/high-profile defendants, dangerous drug traffickers, members of militant groups, and criminal enterprises whose crimes are of a violent nature. Attendance at trials by associates of these individuals also heightens the need for enhanced security. In addition, in today's economic

climate, civil trials involving controversial issues also pose security threats to trial participants, spectators, and the judiciary. Bankruptcy proceedings also have the potential to become volatile when upset business partners or angry creditors become violent towards a judge, debtor, attorney, or other trial participant.

Additional resources are necessary to ensure that adequate levels of security are provided at all facilities housing court operations to avoid potentially harmful, or even fatal, consequences.

8.12

## Court Security Program Summary

|  | FY 2011 Estimate | | FY 2012 Request | |
| --- | --- | --- | --- | --- |
|  | $000 | FTE | $000 | FTE |
| Court Security Officers | $ 326,846 | 4,224 | $ 352,739 | 4,274 |
| Federal Protective Service Charges | 72,639 | - | 79,384 | - |
| Systems and Equipment | 76,434 | - | 63,681 | - |
| Program Administration | 25,480 | 71 | 17,254 | 75 |
| **Total Obligations** | $ 501,399 | | $ 513,058 | |
| *Prior Year Carryforward* | | | | |
| Program Slippage | (12,963) | | | |
| Program Savings | - | | - | |
| **Available Appropriation** | $ 488,436 | | $ 513,058 | |

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

### A.   PERSONNEL AND OTHER PROGRAMS

1.   *Pay and benefits adjustments*

    a.   **Promotions and within-grade increases**

**Requested Increase: $53,000**

The requested increase provides for promotions and within-grade increases for personnel.  The AO salary plan as well as the USMS salary plan provides for periodic within-grade increases for staff who receive at least a satisfactory performance rating.

    b.   **Health benefits increase**

**Requested Increase: $28,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 7 percent in January 2011 and January 6.8 percent in 2012.  The requested increase annualizes the 2011 premium increase, and includes a nine-month provision for the anticipated fiscal year 2012 premium increase and other changes.

---

## Justification of Changes

The fiscal year 2012 request for the Court Security program totals $513,058,000.  The request is $24,622,000, or 5.0 percent, above the fiscal year 2011 assumed appropriation level of $488,436,000.

The requested $513,058,000 includes $511,402,000 in base funding and $1,656,000 in program increases for new security systems and equipment and seven new administrative support positions at USMS headquarters.  The base consists of $352,739,000 for contract costs to support 4,274 CSO positions, $79,384,000 for FPS-provided security services, $62,559,000 for security systems and equipment, and $16,720,000 for all other costs associated with the court security program, to include the funding of 64 administrative support and 19 contractor positions at the USMS, and 7 positions at the Administrative Office (AO).

The funding requested for this program will be used to continue to provide an appropriate level of security at existing court facilities and to provide security coverage at new and renovated facilities.

The following sections provide information and justification for each of the adjustments to base, as well as the resources needed for program increases.

8.13

**C.  One less compensable day**

**Requested Decrease: ($1,416,000)**

The requested decrease consists of $1,416,000 associated with one less compensable day in fiscal year 2012.

**2.  *Annualization of fiscal year 2011 CSO positions (30)***

**Requested Increase: $1,245,000**

In fiscal year 2011, partial funding was requested to support 30 new contract CSO positions.  Funding required to provide existing court facilities with additional CSO positions, consistent with the CSO staffing formula, is based on projected occupancy dates for new and existing space, and a 50 percent lapse rate.  This request includes the increase required to fund the full-year cost of those 30 CSO positions.

**3.  *Fiscal year 2012 Department of Labor and Collective Bargaining Agreements wage rate adjustments***

**Requested Increase: $19,918,000**

A total of $19,918,000 is requested for anticipated increases in the hourly rates and overtime pay for CSO services in fiscal year 2012.  The request is an average increase of six percent on a national basis over fiscal year 2011 projected levels.

The minimum hourly wage rates paid by the vendors who are retained by the USMS to provide CSO services are determined by the Department of Labor, and vary around the country based

on an annual assessment of the prevailing wage rates paid for occupations similar to the CSO category of service in a specific locality.  CSO wages are also adjusted through collective bargaining agreements negotiated between CSO contractors and unions.  In accordance with the McNamara O'Hara Service Contract Act, the contract CSOs must be paid, at a minimum, the hourly rates determined by the Department of Labor unless a collective bargaining agreement is in place.  The wage adjustment must be paid, in contrast to the 2011 and 2012 pay freeze for federal workers.

**4.  *Inflationary increases in charges for contracts, services, supplies, and equipment***

**Requested Increase:  $66,000**

Consistent with guidance from the OMB, $66,000 is required to fund inflationary increases of 1.4 percent for operating expenses such as travel, utilities, printing, contractual services, supplies and materials, and furniture and equipment (exclusive of the CSO contracts).

**5.  *Inflationary increase in GSA space rental costs***

**Requested Increase:  $91,000**

This request represents an inflationary increase and adjustments in the cost of GSA space rental charges for space used by the CSOs.

8.14

**6. Additional CSOs (50) associated with fiscal year 2012 new and existing space**

**Requested Increase: $4,730,000**

Each year, the USMS conducts a nationwide budget call to determine each court's current and future requirements for CSOs. Based on the most recent review, 50 additional CSO positions are required to meet the security needs of the courts, as determined by the CSO staffing formula. The additional CSOs are requested for new or existing court-occupied space based on projected occupancy dates. This request will bring the total CSO level to 4,274.

**7. Changes in Federal Protective Service security charges**

**Requested Increase: $6,745,000**

The fiscal year 2012 security cost estimate of $79.4 million for FPS security services consists of basic security ($30.2 million) and building-specific operating expenses ($49.2 million). This represents an increase of $6.7 million from the fiscal year 2011 estimate of $72.6 million. This estimate is based on anticipated billings provided by FPS, and includes increases due to additional court occupied space that is expected to come on-line in fiscal year 2012. Additional information regarding the increases in FPS security charges is summarized below:

**a. Increase in basic security charges: $2,213,000**

The fiscal year 2012 request for basic security charges is $30.2 million, which is $2.2 million above the fiscal year 2011

funded level. The fiscal year 2011 basic security square footage charge is $0.66 per square foot, and the fiscal year 2012 square footage charge is estimated to be $0.74 per square foot. Basic FPS security charges are assessed to all GSA-controlled properties, both leased and government-owned. The annual rate is developed by FPS and approved by the Office of Management and Budget on a per square foot basis.

**b. Increase in building-specific operating expense security charges: $4,532,000**

The total fiscal year 2012 request for building-specific operating expense security charges is $49.2 million, which is $4.5 million above the fiscal year 2011 funded level. Building-specific security charges fund FPS-provided contract guards and security equipment, including maintenance. The funding requested is based on an estimate provided by FPS for anticipated services in fiscal year 2012.

Building-specific charges are based on FPS-provided countermeasures for a specific building and are charged to all federal tenants by building in direct proportion to each customer agency's percentage of federal occupancy. Each building is supposed to have a facility security committee (FSC). Each tenant agency has representation on its respective committee, and each agency representative has a single vote, regardless of the portion of the building square footage it occupies. Since the judiciary often occupies a greater amount of space in multi-tenant facilities, and, as such pays a greater percentage of the security charges, the AO is working with the interagency security committee (ISC) to revise the voting process so that voting is weighted in

8.15

proportion to building occupancy rather than one vote per tenant. In that way, the judiciary can have more control over the costs that are assessed.

The FSC consults with and seeks recommendations from FPS as to new or revised countermeasures. A tenant agency cannot avoid a building-specific charge if a majority of FSC members endorse a particular countermeasure. FPS is responsible for maintaining records of these operating expenditures on a building-by-building basis. These expenses are based on FPS projections and may be adjusted as a result of the current, ongoing review of FPS charges by the judiciary.

Building-specific operating expenses include:

- Building-wide contract guards, both fixed post and roving, assigned to a specific building;

- Purchase, installation and maintenance of perimeter security devices such as cameras, alarms, motion detectors, and other physical security features; and

- Pro-rata share of administrative costs.

(Note: In courthouse facilities, the two categories of operating expenses listed above are usually limited to the perimeter of the building because interior coverage is provided by the USMS).

A significant deficiency involving the FPS method of recommending countermeasures to FSCs is that it is most often

done out of the normal budget cycle, which then causes the tenant agencies to forgo funding previously approved measures in order to fund an FPS "mandatory countermeasure." Also, the overhead charges levied by FPS on tenant agencies are considerably higher than the overhead costs generated by the judiciary-funded and USMS-administered JFSP.

8. *Adjustment to base for security systems and equipment*

| | |
|---|---|
| **Requested Increase:** | $ 6,516,000 |
| **Non-recurring Reductions:** | ( 14,231,000) |
| **Net Decrease:** | ($ 7,715,000) |

The requested amount reflects a net decrease of $7.7 million in the court security systems and equipment acquisition plan. The total increase of $6.5 million was offset by reductions of $14.2 million. The chart on page 8.24 provides further information regarding the judiciary's security systems and equipment funding requirements. Increases are requested as follows:

- Cyclical Replacement of Hardware & Software for Access Control Systems *(Requested Increase: $2,997,000)*
This initiative consists of upgrading and replacing access control systems nationwide to meet Homeland Security Presidential Directive 12 (HSPD-12) compliance requirements, as well as the implementation of a cyclical

528

replacement program for these systems. The requested funding is for system upgrades and replacements in a phased, multi-year program to update fully existing access control systems. Some of the existing systems are nearly 15 years old and are beginning to experience major failures.

- Explosive Trace Detection (ETD) Systems: *(Requested Increase: $1,148,000)*
Funding is requested to expand the use of ETD systems to courthouses that did not meet the original deployment criteria in 2002. Typically, this expansion includes courthouses in which court activities occupy less than 75 percent of rentable space, or where the court is co-located with postal operations. The USMS proposes ultimately to include all courthouse locations at which CSOs conduct main entry screening, and in which a minimum of one judge resides.

- Nationwide Maintenance Contract for Existing Security Systems and Equipment: *(Requested Increase: $979,000)*
The national contract for security systems installation includes a provision for the maintenance of the inventory of security systems located in all facilities nationwide, such as the repair of surveillance-closed circuit television (CCTV) systems, access control systems, alarm systems, and other command and control center components. The contract also includes a provision for the off-site monitoring of alarms for buildings without a 24-hour CSO presence. Funding is also requested to include repairs and preventative maintenance for the nationwide inventory of x-ray machines.

- Equipment for Probation, Pretrial Services and Federal Public Defender Services Offices: *(Requested Increase: $653,000)*
Funding is requested to provide new equipment and upgrades to existing systems for probation, pretrial services and federal public defender offices. Typically, offices located in facilities where screening for weapons is not conducted at the entrance receive an access control system that consists of an electric door strike, and a door release mechanism. Offices also receive bullet-resistant material and duress alarms at the public counters. Each probation, pretrial services, and federal public defender office receives a duress alarm button in areas where clients are interviewed–usually an office desk. Under certain circumstances, intruder detection alarms and a CCTV camera and monitor are added. These funds are requested to provide either new systems of the aforementioned types or upgrades to these types of systems currently in place at these offices.

Per the *U.S. Courts Design Guide*, offices that are located in facilities where weapons screening is conducted at the entrance are entitled to the same security devices as noted above with one exception–the window at the public counter is constructed of break-resistant material, instead of bullet-resistant material.

- Consumable Supplies, Spare Parts and Repair Service for Explosive Trace Detectors *(Requested Increase: $370,000)*
This program provides funding for supplies and spare

8.17

parts to operate existing explosive detection and radiation sensors.

- **Screening Equipment for New Buildings** *(Requested Increase: $369,000)*
  Funding is requested to procure and install the following: six x-ray machines at loading docks, seven x-ray machines in the lobbies, three ETD systems, and 13 metal detectors in new and renovated courthouses located in Cedar Rapids, IA; Tuscaloosa, AL; Austin, TX; and New York, NY.

The net decrease in funding for security systems and equipment below the fiscal year 2011 funded base is due to non-recurring requirements. These decreases are detailed below:

- **Cyclical Replacement of Explosive Trace Detection (ETD) Systems** *(Requested Decrease: $6,000,000)*
  This initiative ensures that ETD systems are replaced as they become technologically obsolete, or when maintenance and repair costs exceed the purchase price of a replacement unit. The current inventory of ETD systems will be almost 10 years old by fiscal year 2011. Funding was requested in fiscal year 2010 and 2011 budgets to begin replacing these systems. If the full fiscal year 2011 request is appropriated, funding will not be needed in fiscal year 2012 for cyclical replacement of ETD systems.

- **Security Systems for New and Renovated Facilities** *(Requested Decrease: $4,152,000)*
  The typical security system installed in new and renovated facilities includes duress and intruder alarm equipment, CCTV surveillance cameras, card-based access control systems, and command and control centers. The *U.S. Courts Design Guide* outlines the types of security equipment that should be installed in court facilities. Funding will not be needed for new and renovated facilities in fiscal year 2012 based on planned occupancy dates.

- **GSA Installations & Alterations** *(Requested Decrease: $2,212,000)*
  The GSA designs, procures, and installs security system conduit; provides dedicated 110 volt AC power circuits; procures and installs ballistic and break-resistant glass at public intake counters; and provides emergency lighting in courtrooms and chambers and other security construction projects required to adequately protect federal court facilities. This program also requests unanticipated construction items. Less funding is needed because of fewer district security-related requests that will require GSA installations and alterations.

- **CSO Radios, Accessories, Repairs and Over-the-Air Re-key** *(Requested Decrease: $963,000)*
  This request supports radios for new CSO positions based on planned occupancy dates for new and renovated court facilities and changes in CSO staffing requirements, cyclical replacement of radios, and funding for accessories and repairs. It also includes over-the-air re-key systems to provide secure cryptographic protection to ensure the

integrity of the information transmitted on CSO radios. Various means are available for the dissemination of the security keys necessary for communications including the use of electronic hand held key loaders and by means of over-the-air re-key. Less funding is needed in fiscal year 2012 due to the cyclical replacement of more radios in fiscal years 2008 and 2009.

- Cyclical Replacement of Screening Equipment (*Requested Decrease: $451,000*)
  The cyclical replacement program ensures that walk-through metal detector and x-ray screening systems are replaced when they become technologically obsolete or when maintenance costs exceed a pre-determined threshold. Less funding is needed in fiscal year 2012 based on the age of the current inventory.

- Additional and Replacement Equipment (*Requested Decrease: $401,000*)
  This program provides for general enhancements or upgrades to CCTV surveillance systems, access control systems, alarm systems, and command and control centers in newly occupied space in existing court facilities and replaces outdated equipment in currently occupied space. All equipment requests are evaluated against standards specified by the *U.S. Courts Design Guide* and the districts' unique site specific security requirement for individual facilities.

- Perimeter Security Improvements (*Requested Decrease: $52,000*)
  Perimeter security for court facilities is a first line of defense and is critical to the protection of judicial facilities, judicial officers, court employees, and the general public. Perimeter security improvements consist of the installation of guard booths and vehicle barriers, such as planters and hydraulic bollards, to help maintain a secure setback for the courthouse. These security enhancements allow the USMS to adequately screen vehicle traffic, provide pedestrian separation from the court facility, obscure the public's view of judicial officers, and limit the potential damage and loss of life from improvised explosive devices. In addition, the installation of perimeter CCTV surveillance systems and intrusion detection systems are covered in this category. The request represents a $51,964 decrease below the fiscal year 2011 funding level of $13,039,411 due to lower overall requirements.

9. *Adjustments to base for program administration*

**Requested Decrease: ($779,000)**

The requested decrease consists of $779,000 in savings due to the proposed replacement of six existing contractor positions with full-time USMS employees.

## B. PROGRAM INCREASES

### 10. Facial Recognition Systems Pilot (Re-Requested from Fiscal Year 2011)

**Requested Increase: $200,000**

This program provides technology to identify and prevent individuals who are "persons of interest" from entering courthouse facilities. The systems may represent a breakthrough in identity management and access control at screening locations and are becoming widely used at border stations and transportation facilities. Using complex algorithms to evaluate a variety of facial geometric characteristics, the systems compare the results with a database, or watch list, of individuals determined to be of interest by the USMS.

Currently, many federal courthouses maintain a watch list of individuals that present a potential danger to a judge or other court employee. These existing watch lists will be incorporated into the facial recognition systems, thus improving identification rates and subsequent access denial by CSOs of identified individuals.

### 11. Nationwide Contract for Vehicle Barrier Maintenance (Re-Requested from Fiscal Year 2011)

**Requested Increase: $728,000**

Funding is requested to establish a nationwide preventative maintenance contract and repair program for vehicle barriers installed by the USMS. This approach will increase the reliability of the vehicle barriers and reduce frequency of breakdowns. The USMS estimates that a nationwide contract will reduce the average down-time due to failures from 39 days to less than seven and increase the time that the barriers remain operable.

### 12. Wireless Broadcast Systems (Pilot)

**Requested Increase: $194,000**

The USMS has requested funding to purchase and install wireless broadcast systems at six pilot sites. The proposed wave wireless duress system provides an interface between the familiar/existing duress buttons and the CSO radio network at a facility. From the user standpoint, nothing changes. The same duress button is in the same location. The system provides a direct and automated link between the activation of a duress button and the dispatch of security personnel. The automated link will allow for a decrease in the amount of time between the time the duress button is activated and CSOs are dispatched to the location of the alarm. It also reduces the chances of human error in dispatching the security personnel to the location of the duress call. The proposed automated system gives CSOs the ability to respond to duress alarm locations quickly and the judiciary would greatly benefit from rapid responses to threatening or medical distress situations.

532

Other benefits of the proposed system include the increased clarity of the automated audible messaging, versus the quality of a human voice message, during emergencies and that additional alarms can be deployed based upon need (e.g., emergency evacuation).

The typical system cost is based on the number of installed duress devices at a U.S. courthouse. For this request, the USMS has developed a small, medium, and large facility estimate. A small facility would have approximately 1-25 duress devices, a medium facility 26-75, and a large facility greater than 75. Total funding requested will procure two large, two medium, and two small systems.

| Facility Size | Unit Cost | # of Units | Funding Needed |
|---|---|---|---|
| Small | $15,000 | 2 | $30,000 |
| Medium | $32,000 | 2 | $64,000 |
| Large | $50,000 | 2 | $100,000 |
| **Total** | | 6 | **$194,000** |

### 13. Seven New Judiciary-funded USMS Positions

**Requested Increase: $534,000**        **FTE: 4**

The judiciary presently funds 71 FTE including positions at the Administrative Office. For fiscal year 2012, the USMS is requesting seven new positions. A summary of the staffing being funded by the judiciary is provided below.

| | Fiscal Year 2010 Authorized | Fiscal Year 2011 Plan | Fiscal Year 2012 Request | Requested Increase |
|---|---|---|---|---|
| FTE | 70 | 71 | 75 | 4 |

The seven positions include:

- four GS-11 Program Analysts to replace existing contractors
- two GS-13 Electronic Technicians to replace existing contractors
- one Information Technology Specialist

### Four Positions for the Office of Court Security (OCS) - GS-11 Program Analysts (2 FTE)

The OCS is requesting four GS-11 Program Analyst positions which will replace existing contractors.

The OCS is responsible for managing and developing an effective nationwide physical security program for federal judiciary court facilities and overseeing security services performed by more than 4,900 contract court security officers (including part-time positions). In support of this mission, OCS is requesting funding to restructure the program by eliminating all contract support personnel and enhancing the current staffing level.

8.21

8.22

Currently, OCS is comprised of four branches: the Personnel and Operations Support Branch (OSB) for Circuits 1-6; the OSB for Circuits 7-12; the Training and Compliance Branch (TCB); and the Management Support Branch (MSB).

To support the background investigation and medical clearances processed by the OSB (Circuits 1-12), OCS has recommended the replacement of four contractor positions with four full-time program analyst positions (GS-0343-7/9/11). The work performed by OSB is extremely time consuming and involves a tremendous amount of digital scanning, data entry, document management, and data analyses and reporting. These additional positions will replace all contract support personnel and devote adequate staffing to resolve operational issues, including processing approximately 5,000 annual CSO medical examination packages and nearly 300 background investigation clearances a year.

The OCS has relied on contract employees to perform critical administrative functions. However, contract arrangements are too restrictive in this case because the program managers lack autonomy to hire or supervise contract employees. In every situation, program managers must go through a third party (the contractor) to resolve or address issues since they are the contractor's employee(s). Turnover is also a major concern. In the last year, former contract employees accepted employment offers from other federal agencies and/or companies that offered better pay and benefits. If these matters remain, the USMS maintains that the day-to-day operations of the program will continue to suffer and the

workload will overwhelmingly reach a point that the staff cannot handle.

**Two New Positions for the Technical Operations Group (TOG) - GS-13 Electronic Technicians (1 FTE)**
The Technical Operations Group (TOG) is requesting two GS-13 - Electronic Technicians to replace two contractors.

The electronic technician positions will allow for a higher level of troubleshooting and repair of the infrastructure and portable radio equipment. In addition, these individuals will assist in the design and implementation of an electronic key management system, to include over-the-air re-key services for suitably equipped courthouses, which will parallel an effort already underway by the USMS for operational employees.

The positions and related funding are essential for the continued success of the program with respect to the nationwide reprogramming and encryption goals set forth in fiscal year 2007 and beyond when program management responsibilities shifted to the TOG. Having permanent technical expertise of an electronics technician on-site will provide a significant repair capability that will complement the capability that TOG is developing.

Having the two electronic technicians will have a positive impact nationwide by providing the technical expertise on staff to assist the program manager with troubleshooting equipment and infrastructure failures in a timelier manner.

534

8.23

Minor repairs, critical to the proper operation of the radio but which must now be sent to the Motorola Federal Technical Center, can be handled in-house with the commensurate cost savings to the federal government. In addition, the electronics technician will manage the CSO radio program's participation in the Key Management Facility shared by the USMS and the Immigration and Customs Enforcement Bureau from which radio encryption keys for the entire USMS are created and distributed nationwide. This will greatly enhance TOG's ability to implement the electronic key management system in over 90 courthouses nationwide which will allow TOG to take advantage of a capability purchased in every CSO radio but, to date, not used.

**One Information Technology Specialist Position (0.5 FTE).** Funding is requested for one Information Technology Specialist to assist the USMS with automating the Judicial Facility Security Program (JFSP) and its activities. The Information Technology Specialist would be assigned to and exclusively work for the JFSP to assist in systems and hardware maintenance, and the development of reports and analyses in existing programs. The specialist will also suggest and develop other programs and reports to improve the functions of the JFSP, including CSOs, security systems and equipment, contracting, and financial management.

Court Security Appropriation
Security Systems & Equipment Funding Summary
Fiscal Years 2011 and 2012

| Category | FY 2011 Appropriations | Encumbered/ Carryforward | FY 2011 Estimate | FY 2012 Request | Appropriations Only Diff. FY 11 vs FY 12 |
|---|---|---|---|---|---|
| | $000 | $000 | $000 | $000 | $000 |
| Other Additional and Replacement Equipment 1/ | 13,918 | 1,532 | 15,450 | 13,517 | (401) |
| Hardware & Software for Access Control Systems | 7,435 | 5 | 7,440 | 10,432 | 2,997 |
| Cyclical Replacement of X-Ray Screening Equipment and Walk-Thru Metal Detectors | 2,914 | | 2,914 | 2,463 | (451) |
| Screening Equipment for New Buildings | 375 | | 375 | 744 | 369 |
| Cyclical Replacement of Explosive Trace Detection Systems | 6,000 | | 6,000 | - | (6,000) |
| Explosive Trace Detection | - | | - | 1,148 | 1,148 |
| Cyclical Replacement of CSO Handheld Radios, Repeater Installations, CSO Radios and Radio Repairs and Spare Accessories | 1,835 | | 1,835 | 872 | (963) |
| Perimeter Security Improvements 1/ | 13,039 | | 13,039 | 12,987 | (52) |
| Maintenance Contract for Security Systems and Equipment | 11,905 | | 11,905 | 12,884 | 979 |
| Security Systems for New and Renovated Facilities | 7,653 | 4,600 | 12,253 | 3,501 | (4,152) |
| Consumable Supplies, Spare Parts & Repair Service for Trace Explosives Detectors | - | | - | 370 | 370 |
| GSA Installation/Alterations 1/ | 4,000 | 23 | 4,023 | 1,788 | (2,212) |
| Equipment for Probation, Pretrial Services, and Defender Services | 1,200 | | 1,200 | 1,853 | 653 |
| Total Increases/Adjustments to Base | | | | | 6,518 |
| Nonrecurring Reductions | | | | | (14,251) |
| Maintenance Adjustment to Base | | | | | (7,715) |
| Program Increase | | | | | |
| Facial Recognition System Pilot Program (Re-requested from FY 2011) | | | | 200 | 200 |
| Nationwide Contract for Vehicle Barrier Maintenance (Re-requested from FY 2011) | | | | 728 | 728 |
| Wireless Broadcast System Pilot (Broadcast Duress System) | | | | 194 | 194 |
| Total Requirement | 70,274 | 6,160 | 76,434 | 63,681 | (6,593) |

1/ Amounts in these categories (example of other equipment: Access control, alarm systems, command and control center, etc.) represent the requests submitted by individual districts. All requests are evaluated by the U.S. Marshals Service against standards specified by the U.S. Courts Design Guide the USMS Requirements and Specifications for Special Purpose and Support Space Manual and the districts' unique site specific security requirements for individual facilities. The requests are denied if they are not consistent with the applicable standards.

8.24

536

9.1

# ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS
*Salaries and Expenses*
## SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | |
|---|---|
| Fiscal Year 2011 Assumed Appropriation | $85,982,000 |
| Fiscal Year 2012 Appropriation Request | $88,455,000 |
| Requested Increase from Fiscal Year 2011 Assumed Appropriation | $2,473,000 |

## APPROPRIATION LANGUAGE

## ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS

## SALARIES AND EXPENSES

For necessary expenses of the Administrative Office of the United States Courts as authorized by law, including travel as authorized by 31 U.S.C. 1345, hire of a passenger motor vehicle as authorized by 31 U.S.C. 1343 (b), advertising and rent in the District of Columbia and elsewhere, [$85,982,000] *$88,455,000*, of which not to exceed $8,500 is authorized for official reception and representation expenses.

537

## SUMMARY OF REQUEST
## ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS
### FISCAL YEAR 2012
### (Dollar Amounts in Thousands)

### Fiscal Year 2012 Resource Requirements:

| | FTEs | Amount |
|---|---|---|
| **Fiscal Year 2011 Financial Plan** | 896 | 155,973 |
| Estimated fiscal year 2011 fee collections | ... | (15,289) |
| Fee carryforward from fiscal year 2010 into fiscal year 2011 | ... | (6,933) |
| Carryforward from Judiciary Information Technology Fund | ... | (1,340) |
| Reimbursable Programs | (257) | (46,429) |
| **Fiscal Year 2011 Assumed Appropriation** | **639** | **85,982** |

| Page No. | **Adjustments to Base to Maintain Current Services:** | | |
|---|---|---|---|
| | **A. Personnel** | | |
| | 1. Pay and benefit adjustments | | |
| 9.12 | a. Promotions and within-grade increases | ... | 1,721 |
| 9.12 | b. One less compensable day | ... | (390) |
| 9.12 | c. Health benefits increase | ... | 308 |

9.2

| Page No. | | FTEs | Amount |
|---|---|---|---|
| | **B. Other Adjustments** | | |
| 9.12 | 2. Inflationary adjustments ............................. | ... | 113 |
| 9.13 | 3. Increase in appropriation to fund base requirements due to a decrease in non-appropriated sources of funds ............................. | ... | 397 |
| | Total, Adjustments to Base to maintain Current Services ............ | ... | 2,149 |
| | Total Current Services Appropriation Required ............ | 639 | 88,131 |
| | **C. Program Increases** | | |
| 9.13 | 4. Three new court support positions (funded for six months) ......... | 2 | 324 |
| | **Subtotal, program increases** ............................. | **2** | **324** |
| | **Total Fiscal Year 2012 Appropriation Required** ............ | **641** | **88,455** |
| | **Total Appropriation Increase, Fiscal Year 2011 to Fiscal Year 2012** ... | **2** | **2,473** |
| | **Financing the Fiscal Year 2012 Request:** | | |
| | Total Appropriation Required ............................. | 641 | 88,455 |
| 9.13 | Estimated fiscal year 2012 fee collections .................... | ... | 15,246 |
| 9.14 | Estimated fee carryforward from fiscal year 2011 into fiscal year 2012 ... | ... | 6,579 |
| 9.14 | Reimbursable programs ............................. | 259 | 47,483 |
| | **Estimated Obligations, Fiscal Year 2012** ..................... | **900** | **157,763** |

9.3

539

9.4

ADMINISTRATIVE OFFICE
Salaries and Expenses
Obligations by Activity ($000)

| Activity | Fiscal Year 2010 Actual Total Obligations | Fiscal Year 2011 Estimate Total Obligations | Fiscal Year 2012 Request Total Obligations |
|---|---|---|---|
| Executive Direction | 1,513 | 1,634 | 1,660 |
| Program Direction and Policy Formulation | 10,603 | 11,615 | 11,802 |
| Court Administration | 13,229 | 13,870 | 14,417 |
| Defender Services | 7,410 | 8,079 | 8,209 |
| Facilities and Security | 6,817 | 7,553 | 7,836 |
| Finance and Budget | 16,176 | 16,621 | 17,050 |
| Human Resources | 14,535 | 14,978 | 15,218 |
| Information Technology | 11,274 | 11,583 | 11,769 |
| Internal Services 1/ | 43,741 | 46,414 | 47,157 |
| Information Technology Fund | 1,340 | 1,340 | - |
| Judges Programs | 14,776 | 15,030 | 15,272 |
| Probation & Pretrial Services | 7,062 | 7,256 | 7,373 |
| **Total Obligations** | **148,476** | **155,973** | **157,763** |
| Less: Reimbursable Funding | (43,749) | (46,429) | (47,483) |
| **Total Direct Obligations** | **104,727** | **109,544** | **110,280** |
| | | | |
| Unobligated Balance, Start of Year | | | |
| Emergency Response Supplemental | (46) | - | - |
| | | | |
| Unobligated Balance, End of Year | - | - | |
| | | | |
| **Available Budget Authority** | **148,430** | **155,973** | **157,763** |
| | | | |
| Offsetting Collections | | | |
| Federal Funds | (20,266) | (22,222) | (21,825) |
| Information Technology Fund | (1,340) | (1,340) | - |
| Reimbursable Programs | (43,749) | (46,429) | (47,483) |
| | | | |
| **Available Appropriation** | **$83,075** | **$85,982** | **$88,455** |

1/ Includes $35,906,000 in fiscal year 2011 for agency-wide employee benefits, lump sum leave, and other agency-wide costs, as well as funding for certain court support functions such as printing and mail management.

540

## ADMINISTRATIVE OFFICE
## Salaries and Expenses
## Obligations by Budget Object Class ($000)

| Description | Fiscal Year 2010 Actual Total Obligations | Fiscal Year 2011 Estimate Total Obligations | Fiscal Year 2012 Request Total Obligations |
|---|---|---|---|
| 1100 Personnel compensation | 110,708 | 114,003 | 116,370 |
| 1200 Personnel benefits | 27,420 | 29,273 | 29,799 |
| 1300 Benefits for former personnel | 39 | 34 | 34 |
| 2100 Travel | 1,469 | 1,760 | 1,797 |
| 2200 Transportation of things | 47 | 59 | 60 |
| 2330 Communications, utilities, & misc | 519 | 884 | 901 |
| 2400 Printing and reproduction | 117 | 117 | 122 |
| 2500 Other services | 5,477 | 6,176 | 6,304 |
| 2600 Supplies and materials | 505 | 569 | 582 |
| 3100 Equipment | 2,175 | 3,098 | 1,794 |
| **Total** | **148,476** | **155,973** | **157,763** |
| Less: Reimbursable Funding | (43,749) | (46,429) | (47,483) |
| **Total Direct** | **104,727** | **109,544** | **110,280** |

9.5

541

9.6

## ADMINISTRATIVE OFFICE
## Salaries and Expenses
### Full-time Equivalents by Activity

| Activity | Fiscal Year 2010 Actual | Fiscal Year 2011 Estimate | Fiscal Year 2012 Request |
|---|---|---|---|
| Executive Direction | 8 | 9 | 9 |
| Program Direction and Policy Formulation | 78 | 83 | 83 |
| Court Administration | 101 | 104 | 106 |
| Defender Services | 49 | 53 | 53 |
| Facilities and Security | 52 | 55 | 56 |
| Finance and Budget | 106 | 130 | 131 |
| Human Resources | 129 | 129 | 129 |
| Information Technology | 86 | 86 | 86 |
| Internal Services | 107 | 78 | 78 |
| Judges Programs | 117 | 115 | 115 |
| Probation & Pretrial Services | 54 | 54 | 54 |
| **Total, Full Time Equivalents** | **887** | **896** | **900** |
| Less: Reimbursable Positions | (252) | (257) | (259) |
| **Total, Direct Full Time Equivalents** | **635** | **639** | **641** |

542

9.7

## ADMINISTRATIVE OFFICE
### Salaries and Expenses
### Relation of Obligations to Outlays ($000)

| | FY 2010 Actual | FY 2011 Estimate | FY 2012 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total Obligations | 148,476 | 155,973 | 157,763 | 1,790 |
| Obligated Balance, start of year | 12,025 | 8,391 | 12,079 | 3,688 |
| Obligated Balance, end of year | (8,391) | (12,079) | (11,780) | 299 |
| Change in uncollected customer payments | (1,439) | 0 | 0 | 0 |
| **Total Outlays** | **150,671** | **152,285** | **158,062** | **5,777** |
| | | | | |
| Less Offsetting Collections from: | | | | |
| Fee Collections (Federal Sources) | (20,266) | (22,222) | (21,825) | 397 |
| Judiciary Information Technology Fund | (1,340) | (1,340) | 0 | 1,340 |
| Reimbursable Programs | (43,749) | (46,429) | (47,483) | (1,054) |
| | | | | |
| **Net Outlays** | **85,316** | **82,294** | **88,754** | **6,460** |

## GENERAL STATEMENT AND INFORMATION

This appropriation is for the necessary expenses of the Administrative Office of the United States Courts (AO), pursuant to 28 U.S.C. 601-613. Created by an Act of Congress in 1939, the AO is the central support entity for the judicial branch. It serves the federal judiciary in carrying out its constitutional mission to provide equal justice under the law.

The AO provides administrative, legal, financial, management, program, security, and information technology services to the federal courts. It provides support and staff counsel to the Judicial Conference of the United States and its committees, and implements Judicial Conference policies as well as applicable federal statutes and regulations. The AO is the focal point for communication and coordination within the judiciary and with Congress, the executive branch, and the public on behalf of the judiciary. The agency's lawyers, public administrators, accountants, systems engineers, analysts, architects, statisticians, security experts, and other staff provide professional services to meet the needs of judges and staff working in the federal courts nationwide. These include:

- Performing core central payroll, personnel, and accounting functions;
- Developing and executing the judiciary's budget and guiding local court budget execution;
- Collecting and analyzing statistics on court workload;
- Auditing court financial operations;
- Monitoring and reviewing program performance and use of resources;
- Developing and supporting automated systems and technologies used throughout the courts;

- Coordinating construction and management of court facilities with the General Services Administration;
- Monitoring U.S. Marshals Service implementation of the judicial facility security program;
- Defining court resource needs through caseload forecasts and work measurement analyses;
- Providing program leadership and support for circuit executives, clerks of court, probation and pretrial services officers, federal defenders, and other managers; and
- Developing and conducting education and training programs.

A table of selected workload indicators for the AO follows:

**Table 9.1  Selected AO Fiscal Year 2011 Workload Indicators**

| Indicators | Number |
|---|---|
| Active and senior judges (Article III, bankruptcy, magistrate, and Court of Federal Claims) | 2,242 |
| Court staff (Appellate, district, bankruptcy, probation, pretrial services, and defenders) | 31,200 |
| Court units (Appellate, district, bankruptcy, probation and pretrial services) | 365 |
| Federal defender organizations (Districts) | 91 |
| Court facilities (GSA- and U.S. Postal Service-owned federal buildings and leased facilities) | 802 |
| Judicial Conference committees | 25 |
| Court appropriations and fees (Salaries and Expenses, Defender Services, Fees of Jurors, Court Security, and Judicial Retirement Funds) | $7.0 billion |

9.8

During 2010, the AO continued to implement internal efficiencies in processes and practices, consistent with its strategic goals of strengthening AO-court relations and delivery of services to the courts; promoting effective communication within and on behalf of the judicial branch; streamlining AO internal processes and operations; and optimizing management of AO human resources. A major focus of the AO during the last year, which will continue to be a high priority in 2011 and beyond, is supporting the Judicial Conference and its committees in a renewed cost-containment effort.

## Cost Containment

A comprehensive strategy for controlling future costs in the federal courts, *Cost-Containment Strategy for the Federal Judiciary: 2005 and Beyond*, was adopted by the Judicial Conference in September 2004. Based on that strategy, cost-containment initiatives were implemented in a broad range of areas affecting all aspects of the courts, which have successfully limited the growth of space, personnel, and operating costs, resulting in hundreds of millions of dollars in savings or cost avoidance over the next decade. Specific initiatives include space rent validation, circuit rent budgets, asset management planning, revisions to court staffing formulas, revisions to the Court Personnel System and limitations on law clerk compensation, changes in law enforcement and defender services programs, program budget caps, and review of fees. Given national fiscal constraints and the potential gap between future requirements and available resources, the Judicial Conference has renewed its commitment to cost containment.

Its committees as well as numerous court advisory groups, staffed by the AO, are working with the Conference's Budget Committee and Economy Subcommittee to identify new avenues for savings and cost avoidance.

Through teleconferences with Judicial Conference committee chairs during each committee meeting cycle, the Economy Subcommittee explores cost-containment and cost avoidance efforts, receives input from the committees, and encourages implementation of cost-containment initiatives in current and future budget requests and financial plans. The collective efforts of the committees and the Economy Subcommittee have proven to be an integral part of the judiciary's cost-containment strategy. Examples of common themes being studied across committees include teleworking of staff and its potential impact on reducing space requirements; relocating probation and pretrial services offices from leased space into courthouse space, with a smaller footprint, as a result of space in courthouses re-purposed due to technology; and examining use and cost/benefit of contractors versus judiciary staff. Work measurement and staffing formulas are under review to ensure maximum use of resources, including shared service options and associated cost benefits. The following is a summary of recent and ongoing cost-containment efforts.

Beginning in October 2010, the number of automatic (default) step increases Court Personnel System (CPS) employees are eligible to receive was reduced under a new salary progression policy. Depending on a court's locally-developed performance management plan, in limited circumstances employees may be eligible to receive additional discretionary step increases based on their individual high performance levels. The decision to

9.9

9.10

limit automatic step increases was part of the judiciary's cost-containment efforts; national performance guidelines to assist courts in awarding discretionary steps were approved by the Judicial Conference. The AO continues to support implementation of this new policy by developing tools and resources for the courts, including an automated performance management application, ePerformance.

AO staff also support the Methods Analysis Programs (MAP) which provide the appellate, district and bankruptcy courts with reliable sources of information for improving operational efficiency and effectiveness, and reducing or eliminating tasks. The MAP working groups' recommendations facilitate cost control efforts and help to preserve limited resources for the administration of justice. Staff from the appellate and bankruptcy appellate panel clerks' offices participated in a records management MAP, hosted by the AO court administration staff, to review records management practices and policies, in light of the implementation of the Case Management/Electronic Case Files (CM/ECF) system and the move to electronic records. The MAP identified areas for better efficiency, more consistent processes, and ways to streamline operations. This information was distributed to all circuits, and subsequent training for records staff is planned.

The Judicial Conference committees are also looking at current and future information technology initiatives to enhance efficiency and effectiveness, prioritizing projects by how much savings or cost avoidance they will generate. More specifically, the committees through partnerships between AO staff and the courts are evaluating the development of the next generation CM/ECF in district, bankruptcy, and appellate courts, and its potential cost savings/cost avoidances.

In addition, in collaboration with the courts, the AO continues to implement the judiciary's next-generation telecommunications network, with converged services that transmit and prioritize data, voice, and video over a single wide-area network. Preliminary cost models suggest that the initial capital investment to build, implement, and operate the telecommunications system, while significant, could be recovered within five to six years, with significant cost avoidances each year thereafter.

In fiscal year 2010, the Electronic Bankruptcy Noticing (EBN) program saved the judiciary more than $7 million in print and postage costs, while expediting notices to creditors by delivering them electronically. Electronic notices constituted about a quarter of Bankruptcy Noticing Center (BNC) notices. In an effort to increase EBN usage, the AO used national focus groups and an educational awareness campaign, and updated the EBN public website to streamline the sign-up process. As a result, the BNC is registering approximately 1,000 new EBN partners a month, almost three times the rate experienced at the start of fiscal year 2010.

In March 2006, the Judicial Conference approved the Asset Management Planning (AMP) process, a revised long-range facilities planning methodology designed to address court facility cost-containment concerns. Through fiscal year 2010, the AMP methodology has been applied to a total of 39 district and 3 circuit courts. Of those, 33 courthouses in these districts were affected by a 2004 Judicial Conference-imposed funding moratorium, facilitating an opportunity for assessment under the new AMP process. For all but two of the 33 courthouses, facility plans using the revised methodology are complete. Application of the AMP methodology has shown that facility

546

9.11

needs associated with approximately half of the 33 courthouses initially studied, could be addressed by way of a renovation or alteration project, as opposed to a more costly solution of new construction.

During fiscal year 2010, AO staff, at the direction of the Court Administration and Case Management Committee and working with librarians and others, conducted a study of libraries and library services to determine how a significant reduction in law book funding in fiscal year 2012 and beyond would impact court libraries and library services and to suggest clear options for change. The study focused on the new role of libraries in the digital age and included an investigation and report on the potential savings to be gained by eliminating unnecessary duplication; national collection development planning; reducing the size and/or number of libraries; and reconsidering services to the public. Resulting savings or cost avoidance will be reflected in future budget requests.

547

9.12

## JUSTIFICATION OF CHANGES

The Administrative Office appropriation request for fiscal year 2012 totals $88,455,000. This represents an increase of $2,473,000 or 2.9 percent, over the fiscal year 2011 assumed appropriation of $85,982,000. The fiscal year 2012 budget request includes the funds needed to maintain current services and 2 FTE (3 positions) to address high priority court support functions of the AO.

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

**A.    PERSONNEL**

*1. Pay and Benefit Adjustments*

**a.    Promotions and within-grade increases**

**Requested Increase: $1,721,000**

The requested increase provides for promotions and step increases for AO personnel. The AO salary plan provides for periodic step increases for staff who receive at least a satisfactory performance rating.

**b.    One less compensable day**

**Requested Decrease: ($390,000)**

There is one less compensable day in fiscal year 2012 than in fiscal year 2011. The requested decrease reduces personnel compensation and benefits expenses associated with one less compensable day.

**c.    Health benefits increase**

**Requested Increase: $308,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 7.0 percent in January 2011 and 6.8 percent in January 2012. The requested increase annualizes the 2011 premium increase, and includes a nine-month provision for the anticipated fiscal year 2012 premium increase and other changes.

**B.    OTHER ADJUSTMENTS**

*2. Inflationary adjustments*

**Requested Increase: $113,000**

Consistent with guidance from the Office of Management and Budget, this request of $113,000 is required to fund inflationary increases of 1.4 percent for operating expenses such as communications, printing, contractual services, supplies and materials, and furniture and equipment.

**3. Increase in appropriation to fund base requirements due to decrease in non-appropriated sources of funds**

**Requested Increase: $397,000**

This account is financed through direct appropriations and the use of non-appropriated funds, including judiciary fee collections and fee carryforward. In fiscal year 2011, the judiciary expects to have a total of $22.2 million in non-appropriated funds available to finance AO requirements. In fiscal year 2012, the judiciary expects $21.8 million in non-appropriated funds to be available for the AO, a decrease of $0.4 million from fiscal year 2011. The requested increase in direct appropriations is a result of the projected reduction in non-appropriated funds the judiciary expects to be available to finance AO requirements in fiscal year 2012.

**C.   PROGRAM INCREASES**

**4. Three new court support positions (funded for 6 months)**

**Requested Increase: $324,000                FTE: 2**

An increase in staffing of 2 FTEs (3 positions) is requested to address high priority court support functions of the AO. This is a re-request of the staffing increases requested in 2011.

Two positions are requested to support a comprehensive modernization and consolidation of the judiciary's nationwide accounting system (FAS₄T). This will be a multi-year effort that will provide the judiciary with significant improvements in its accounting for appropriated funds. Once fully implemented, the AO will be able to assume the critically important

disbursement functions currently performed by the courts. Included as part of this FAS₄T upgrade will be the ability to disburse individual and vendor payments electronically, a major initiative of the Department of Treasury. Currently, the AO is not staffed to handle these new responsibilities that it will assume from the courts. Two additional operating personnel positions are requested to develop and implement this new disbursing capability, which will strengthen internal control and financial accountability.

One new position is requested to support an initiative to address judges' Internet security, including Internet threats and the availability of judges' personal information on the Internet. This initiative includes development and implementation of strategies and protocols to mitigate the misuse and abuse of judges' names as domain names on the Internet, where judges' security could be compromised. A working group of judiciary and executive branch law enforcement representatives investigated this issue and proposed a multifaceted approach which will require coordination at the local and national levels. A central point of contact at the AO will be able to monitor these issues, develop initiatives and responses, and communicate to judges the best practices to keep personal information of the Internet.

**FINANCING THE FISCAL YEAR 2012 REQUEST**

*Estimated Fiscal Year 2012 Fee Collections*

**Estimated Funds Available: $15,246,000**

The judiciary has authority to collect fees for various services such as bankruptcy filing, civil filing, bankruptcy noticing, and registry administration. These fees are used to reimburse judiciary appropriations and are available without fiscal year

limitation. The judiciary estimates that $15.2 million of these fees will be available to offset the fiscal year 2012 AO budget request.

***Estimated fee carryforward from Fiscal Year 2011 into Fiscal Year 2012***

**Estimated funds available:  $6,579,000**

In addition to receiving a portion of new fee collections, the AO account also receives a portion of the fee balances carried over from prior years. This request reflects funds from fee carryforward balances in the judiciary fee accounts that will be available to offset the AO fiscal year 2012 budget request. The judiciary will advise appropriations subcommittee staffs of changes to this estimate.

***Reimbursable Programs***

**Funds Available: $47,483,000          FTE: 259**

**Requested Increase: $1,054,000          FTE:   2**

Beginning in 1990, Congress authorized reimbursable funds for the AO to carry out specific support functions for the courts. These functions include defender services audit and assessment, federal defender training, court automation, case management improvement, court security, court financial administration, court financial systems, background checks/ investigations, financial disclosure, and judiciary benefits.

The request for the AO reimbursable program includes funding for 259 FTE from the Salaries and Expenses, Defender Services, and Court Security appropriations under *Courts of Appeals, District Courts, and Other Judicial Services.* This level

includes a re-request of the 2011 request for 2 additional FTEs (5 positions) for high priority court support functions as follows:

Four positions are requested to address the effort anticipated in the development and support of the next generation Case Management/Electronic Case Files (CM/ECF) system. CM/ECF is the core case management tool for judges and clerks' office staff. To continue to meet the case filing and case management needs of judges, chambers, clerks' offices, the bar, debtors, litigants, claimants, trustees, and other users and to improve the current level of court efficiency in light of changing technology, the next generation of CM/ECF is being developed. This next generation will incorporate new technologies and enhance functionality.

One position requested to support a new telecommunications program for the judiciary which will result in increased productivity, cost savings, and cost avoidance.  The judiciary has awarded a new contract that will replace the existing Data Communications Network (DCN) and will provide the judiciary opportunities to expand the current telecommunications services utilized by the courts.  This network will allow the judiciary to run voice, video, and data services over one network.  The telecommunications program offered by the AO will provide the courts with centralized services supporting telephone systems, video bridging, and data center hosting.  The development, deployment and management of these additional services will be the responsibility of the AO staff, and the workload associated with this effort will be substantial.

550

10.1

**FEDERAL JUDICIAL CENTER**
*Salaries and Expenses*
**SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS**

| | |
|---|---|
| **Fiscal Year 2011 Assumed Appropriation** | **$28,087,000** |
| **Fiscal Year 2012 Requested Appropriation** | **$29,029,000** |
| **Requested Increase from Fiscal Year 2011 Assumed Appropriation** | **$942,000** |

**APPROPRIATION LANGUAGE**

**FEDERAL JUDICIAL CENTER**
**SALARIES AND EXPENSES**

For necessary expenses of the Federal Judicial Center, as authorized by Public Law 90-219, [$28,087,000] *$29,029,000;* of which $1,800,000 shall remain available until September 30, [2012] *2013* , to provide education and training to Federal court personnel; and of which not to exceed $1,500 is authorized for official reception and representation expenses.

551

10.2

**SUMMARY OF REQUEST**
**FEDERAL JUDICIAL CENTER**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2012**
(Dollar amounts in thousands)

**Fiscal Year 2012 Resource Requirements:**

|  | FTEs | Amount |
|---|---|---|
| Fiscal Year 2011 Obligations........................................................ | 141 | 28,641 |
| Reimbursements from Federal Accounts and FJC Foundation........................ | (1) | (554) |
| Fiscal Year 2011 Assumed Appropriation............................... | 140 | 28,087 |

**Adjustments to Base to Maintain Current Services:**

| Page No. | | | |
|---|---|---|---|
| | A. Personnel and Programs | | |
| | 1.  Pay and benefit cost adjustments | | |
| 10.9 | a. Health benefits increase........................... | - | 58 |
| 10.9 | b. Salary Progression .................................... | - | 138 |
| 10.9 | c. One Less Compensable Day................................. | - | (70) |

## SUMMARY OF REQUEST
## FEDERAL JUDICIAL CENTER
## SALARIES AND EXPENSES
## FISCAL YEAR 2012
### (Dollar amounts in thousands)

| | | FTEs | Amount |
|---|---|---|---|
| | **B. Other Adjustments** | | |
| 10.9 | 2. Inflationary adjustments................................................. | - | 150 |
| | Subtotal, Adjustments to Base to Maintain Current Services................. | - | 276 |
| | Total Current Services Appropriation Required ............................. | 140 | 28,363 |
| | **Program Increases** | | |
| 10.10 | 3. Enhance education and training programs................................. | 1 | 371 |
| 10.10 | 4. Enhance education, training and research technology resources ............ | - | 295 |
| | Subtotal, Program Increases.............................................. | 1 | 666 |
| | Total Fiscal Year 2012 Appropriation Required............................. | 141 | 29,029 |
| | Total Appropriation Increase............................................. | 1 | 942 |
| | **Financing the Fiscal Year 2012 Request:** | | |
| | Total Appropriation Required, Fiscal Year 2012............................. | 141 | 29,029 |
| 10.10 | 5. Estimated reimbursements from federal accounts and the FJC Foundation...... | 1 | 278 |
| | Total Estimated Obligations, Fiscal Year 2012.............................. | 142 | 29,307 |

553

10.4

**FEDERAL JUDICIAL CENTER**
**Salaries and Expenses**
**Obligations by Activity ($000)**

| Activity | Fiscal Year 2010 | | | Fiscal Year 2011 | | | Fiscal Year 2012 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Direct | Offsetting Collections | Total | Direct | Offsetting Collections | Total | Direct | Offsetting Collections | Total |
| Education & Training | 19,445 | 403 | 19,848 | 19,812 | 379 | 20,191 | 20,673 | 278 | 20,951 |
| Research | 4,394 | 134 | 4,528 | 4,489 | 175 | 4,664 | 4,533 | - | 4,533 |
| Program Support | 3,489 | - | 3,489 | 3,786 | - | 3,786 | 3,823 | - | 3,823 |
| **Total Obligations** | **27,328** | **537** | **27,865** | **28,087** | **554** | **28,641** | **29,029** | **278** | **29,307** |
| Offsetting Collections | | | | | | | | | |
| Reimbursable programs | - | (537) | (537) | - | (554) | (554) | - | (278) | (278) |
| **Available Appropriation** | **27,328** | **-** | **27,328** | **28,087** | **-** | **28,087** | **29,029** | **-** | **29,029** |

554

10.5

**FEDERAL JUDICIAL CENTER**
Salaries & Expenses
Obligations by Object Class ($000)

| Description | Fiscal Year 2010 | | | Fiscal Year 2011 | | | Fiscal Year 2012 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Direct | Offsetting Collections | Total Oblig. | Direct | Offsetting Collections | Total Oblig. | Direct | Offsetting Collections | Total Oblig. |
| 1100 Personnel compensation | 14,033 | 159 | 14,192 | 14,670 | 173 | 14,843 | 14,806 | 112 | 14,918 |
| 1200 Personnel benefits | 3,699 | 40 | 3,739 | 4,034 | 43 | 4,077 | 4,130 | 28 | 4,158 |
| 2100 Travel | 5,573 | 228 | 5,801 | 5,717 | 124 | 5,841 | 6,033 | 114 | 6,147 |
| 2200 Transporation of things | 51 | 0 | 51 | 60 | 0 | 60 | 61 | 0 | 61 |
| 2330 Communications, utilities & misc | 496 | 20 | 516 | 559 | 19 | 578 | 581 | 3 | 584 |
| 2400 Printing and reproduction | 43 | 0 | 43 | 76 | 0 | 76 | 77 | 0 | 77 |
| 2500 Other services | 1,489 | 88 | 1,577 | 1,596 | 193 | 1,789 | 1,735 | 19 | 1,754 |
| 2600 Supplies and materials | 912 | 2 | 914 | 946 | 2 | 948 | 1,069 | 2 | 1,071 |
| 3100 Equipment | 1,032 | 0 | 1,032 | 429 | 0 | 429 | 536 | 0 | 536 |
| **Total Obligations** | **27,328** | **537** | **27,865** | **28,087** | **554** | **28,641** | **29,029** | **278** | **29,307** |

555

10.6

**FEDERAL JUDICIAL CENTER**
Salaries & Expenses
Relation of Obligations to Outlays ($000)

| | FY 2010 Actuals | FY 2011 Estimate | FY 2012 Estimate | Difference (+) or (-) |
|---|---|---|---|---|
| Total Obligations | 27,865 | 28,641 | 29,307 | 666 |
| Obligated balance, start of year | 3,690 | 3,582 | 3,460 | (122) |
| Obligated balance, end of year | (3,582) | (3,460) | (3,279) | 181 |
| Total Outlays | 27,973 | 28,763 | 29,488 | 725 |
| | | | | |
| Less offsetting collections: | | | | |
| Reimbursable Programs | (537) | (554) | (278) | 276 |
| | | | | |
| Net Outlays | 27,435 | 28,209 | 29,210 | 1,001 |

556

10.7

## FEDERAL JUDICIAL CENTER
### Salaries and Expenses
### Full Time Equivalents by Activity

| Activity | Fiscal Year 2010 | | | Fiscal Year 2011 | | | Fiscal Year 2012 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Direct | Reimb Program | Total | Direct | Reimb Program | Total | Direct | Reimb Program | Total |
| Education & Training | 97 | 1 | 98 | 99 | 1 | 100 | 100 | 1 | 101 |
| Research | 31 | 0 | 31 | 31 | 0 | 31 | 31 | 0 | 31 |
| Program Support | 10 | 0 | 10 | 10 | 0 | 10 | 10 | 0 | 10 |
| Total, Full Time Equivalents | 138 | 1 | 139 | 140 | 1 | 141 | 141 | 1 | 142 |

Case 1:16-cv-00745-PLF   Document 31-5   Filed 01/20/17   Page 287 of 323

## GENERAL STATEMENT AND INFORMATION

This appropriation request is for the salaries and operating expenses of the Federal Judicial Center, which was established by an act of December 20, 1967, P.L. 90-219 (81 Stat. 664). This statute directs the Center "to further the development and adoption of improved judicial administration" in the federal courts.

### Functional Responsibilities of the Center

The Center's functions are outlined in statute, especially 28 U.S.C.§§ 620(b) and 623(a). Pursuant to those mandates, it teaches judges and other Judicial Branch personnel about legal developments and efficient litigation management and court administration. Examples include various educational programs that teach judges and court legal staff about new laws and emerging issues; programs that help judges and court executives promote efficiency; and programs that educate court staff on the role of the courts and effective court operations. Over 80 percent of Center training participants attend the training in their home cities through in-court seminars, Center video programs broadcast to federal courts across the country, videotapes, manuals, web-based conferences, and interactive computer programs. The Center also conducts empirical research into court operations and activities including analyses of the efficacy of case and court management procedures. For example, it continues to assess case management tools for complex litigation and litigation with expert testimony. (The Center's statute also assigns it less extensive duties with regard to state-federal judicial relations, assisting foreign judiciaries, and federal

judicial history, which it also performs.) Program planning is coordinated among the Center, the Administrative Office of the U.S. Courts, and the U.S. Sentencing Commission to maximize efficiency in meeting their distinct responsibilities.

### Duties of the Board

A Board of nine supervises the Center. The Chief Justice of the United States is the Board Chairman. The Board includes two judges of the U.S. Courts of Appeals, three judges of the U.S. District Courts, one bankruptcy judge, and one magistrate judge; each elected by the Judicial Conference of the United States for a four-year term. The Director of the Administrative Office of the U.S. Courts is an ex-officio Board member. By statute, the Board is responsible for developing overall policy to guide the Center's operations and approves the Center's appropriations requests. The Board appoints a Director and a Deputy Director, who are responsible for supervising the Center's staff and carrying out the Center's programs. The Center coordinates as necessary with the Budget Committee of the Judicial Conference of the United States and the Administrative Office of the U.S. Courts in developing the Center's appropriation requests.

10.8

## JUSTIFICATION OF CHANGES

The Federal Judicial Center's appropriation request for fiscal year 2012 is $29,029,000, representing an overall increase of $942,000 (3.4 percent) over the fiscal year 2011 assumed appropriation of $28,087,000. Of the total requested, $276,000 is for adjustments to base to maintain current services. These adjustments include pay and benefits cost increases for current staff. Also included are general inflationary increases for operating expenses such as travel, utilities, printing, contractual services, supplies and materials, furniture and equipment. The remaining $666,000 is for program increases. This includes $371,000 for critical education and training programs and two new education specialist positions to help develop and conduct those programs, and $295,000 to enhance the Center's education and research related technology resources.

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

### A. PERSONNEL AND PROGRAMS

*1.  Pay and benefit cost adjustments*

*a.  Health benefits increase*

**Requested Increase:  $58,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 7.0 percent in January 2011 and another 6.8 percent in January 2012. The requested increase annualizes the 2011 premium increase, and includes a nine-month provision for the anticipated fiscal year 2012 premium increase and other changes.

**b.  Salary progression**

**Requested Increase:  $138,000**

The requested amount provides an increase to allow Federal Judicial Center personnel to be granted periodic adjustments in compensation for merit.

**c.  One less compensable day**

**Requested Decrease: ($70,000)**

There is one less compensable day in fiscal year 2012 than in fiscal year 2011. The requested decrease reduces personnel compensation and benefits expenses associated with one less compensable day.

### B. OTHER ADJUSTMENTS

*2.  Inflationary adjustments*

**Requested Increase:  $150,000**

Consistent with guidance from the Office of Management and Budget, the Center requests $150,000 to fund inflationary increases of 1.4 percent for operating expenses such as travel, utilities, printing, contractual services, supplies and materials, and furniture and equipment.

10.9

## PROGRAM INCREASES

*3. Enhance education and training programs*

**Requested Increase: $371,000**                     **FTE: 1**

The Center requests $150,000 to develop and conduct education and training programs for judges involved in the pilot program in certain United States district courts to encourage enhancement of expertise in patent cases among district judges as authorized by Public Law 111-349; $115,000 to enhance education and training for judges on case management (including the use of information technology), legal training for court staff attorneys, and for court executives and managers on effective leadership and management practices; and, $106,000 for two new Education Specialist positions (1 FTE) to help develop and conduct these and other important education and training programs.

*4. Enhance education, training and research technology resources*

**Requested Increase: $295,000**

The Center requests $295,000 to enhance education and research technology resources, including information technology licenses and contractor support for e-learning tools and for content management to enable users to have more effective access to Center online programs and services and to stay current with continuously evolving automation and video equipment necessary to expand distance learning and its delivery.

## OFFSETTING COLLECTIONS

*5. Estimated reimbursements from federal accounts and the FJC Foundation*

**Estimated Reimbursement: $278,000**                     **FTE: 1**

From time to time, the Center enters into reimbursable agreements to provide additional services to, or to allow economizing by, the Administrative Office of the U.S. Courts, the courts, and non-judicial federal entities. In addition, pursuant to Title 28, Section 629, the Center receives support from occasional donations to the Federal Judicial Center Foundation. The Center estimates that $278,000 will be reimbursed to it in fiscal year 2012.

10.10

# JUDICIAL RETIREMENT FUNDS
*Payment to Judiciary Trust Funds*
## SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | |
|---|---|
| Fiscal Year 2011 Appropriation | $90,361,400 |
| Fiscal Year 2012 Requested Appropriation | $103,767,540 |
| Requested Increase | $13,406,140 |

## APPROPRIATION LANGUAGE

## JUDICIAL RETIREMENT FUNDS

## PAYMENT TO JUDICIARY TRUST FUNDS

For payment to the Judicial Officers' Retirement Fund, as authorized by 28 U.S.C. 377(o), [$79,061,400] $86,967,540; to the Judicial Survivors' Annuities Fund, as authorized by 28 U.S.C. 376(c), [$7,300,000] $12,600,000; and to the United States Court of Federal Claims Judges' Retirement Fund, as authorized by 28 U.S.C. 178(1), [$4,000,000] $4,200,000.

11.1

561

# SUMMARY OF REQUEST
## JUDICIAL RETIREMENT FUNDS
## PAYMENT TO JUDICIARY TRUST FUNDS
### FISCAL YEAR 2012
### (Dollar amounts in thousands)

### Fiscal Year 2012 Resource Requirements:

| Page No. | | FTEs | Amount |
|---|---|---|---|
| | Fiscal Year 2011 Appropriation ............................................... | - | $90,361 |
| | **Adjustment to Base** | | |
| 11.5 | 1. Increase in payment to the Judicial Officers' Retirement Fund.......... | - | 7,906 |
| 11.6 | 2. Increase in payment to the Judicial Survivors' Annuities Fund.......... | - | 5,300 |
| 11.6 | 3. Increase in payment to the Court of Federal Claims Judges' Retirement Fund.......... | - | 200 |
| | Subtotal, Adjustments to Base................................. | - | 13,406 |
| | Total Appropriation Required, Fiscal Year 2012................. | - | $103,768 |
| | Total Appropriation Increase, Fiscal Year 2011 to Fiscal Year 2012.......... | - | 13,406 |

11.2

562

11.3

PAYMENT TO JUDICIARY TRUST FUND
Obligations by activity ($000)

| Activity | Fiscal Year 2010 Actual | Fiscal Year 2011 Estimate | Fiscal Year 2012 Request |
|---|---|---|---|
| Trust Fund, Total Obligations | 82,374 | 90,361 | 103,768 |
| Available Appropriation | 82,374 | 90,361 | 103,768 |

Object Classification ($000)

| | Description | Fiscal Year 2010 Actual | Fiscal Year 2011 Estimate | Fiscal Year 2012 Request |
|---|---|---|---|---|
| 25 | Other services | 82,374 | 90,361 | 103,768 |
| | Total obligations | 82,374 | 90,361 | 103,768 |

11.4

## PAYMENT TO JUDICIARY TRUST FUND

### Relation of Obligations to Outlays ($000)

| | FY 2010 Actual | FY 2011 Estimate | FY 2012 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 82,374 | 90,361 | 103,768 | 13,406 |
| Obligated balance, start of year | ... | ... | ... | ... |
| Obligated balance, end of year | ... | ... | ... | ... |
| Net Outlays | 82,374 | 90,361 | 103,768 | 13,406 |

564

## GENERAL STATEMENT AND INFORMATION

This appropriation is divided among three trust funds that finance payments to (1) retired bankruptcy and magistrate judges, (2) spouses and dependent children of deceased judges, and (3) retired Court of Federal Claims judges. This account is categorized as a mandatory appropriation by Congress.

Statutes governing the three funds authorize the appropriation of amounts to cover the liability that accrues each year and to pay an installment on any unfunded liability. Although the funds receive participant contributions and earn interest on investment holdings, the purpose of the appropriation provision is to ensure that sufficient funds are deposited annually to cover anticipated benefit payments in the distant future as well as in the short-term. The appropriation request is calculated annually by an enrolled actuary pursuant to 31 U.S.C. 9503, Public Law 95-595 (November 4, 1978).

### The Three Trust Funds

The Judicial Officers' Retirement Fund was established in 1988 to provide a pension to bankruptcy and full-time magistrate judges (28 U.S.C. §377).

The Judicial Survivors' Annuities Fund was established in 1956 to provide annuities to widows, widowers, and dependent children of judges and other officials who have elected to participate in the program: Justices and judges of the United States, to include Guam, Northern Mariana, and the Virgin Islands; full-time bankruptcy judges; full-time United States magistrate judges; judges of the United States Court of the Federal Claims; the Directors of the Federal Judicial Center

and the Administrative Office of the United States Courts; and the Counselor to the Chief Justice of the United States (28 U.S.C. §376).

The Court of Federal Claims Judges' Retirement Fund was established in 1990 to provide a pension plan to retired United States Courts of Federal Claims judges (28 U.S.C. §178). Appointment under Chapter 7 of Title 28 or service under section 167 of the Federal Courts Improvements Act of 1982 automatically qualifies a judge to participate.

### Justification of Changes

The appropriation request for fiscal year 2012 is $103,767,540, an increase of $13,406,140 above the appropriation level in fiscal year 2011. This increase is distributed as follows: an increase of $7,906,140 for the Judicial Officers' Retirement Fund, an increase of $5,300,000 for the Judicial Survivors' Annuities Fund, and an increase of $200,000 for the Court of Federal Claims Judges' Retirement Fund.

### ADJUSTMENTS TO BASE

#### 1. *Increase in payment to the Judicial Officers' Retirement Fund*

**Requested Increase: $7,906,140**

The appropriation level for fiscal year 2011 is $79,061,400. Based on actuarial calculations, $86,967,540, an increase of $7,906,140, is required to draw down the unfunded liability in fiscal year 2012.

11.5

### 2. *Increase in payment to the Judicial Survivors' Annuities Fund*

**Requested Increase: $5,300,000**

The appropriation level for fiscal year 2011 is $7,300,000. Based on actuarial calculations, $12,600,000, an increase of $5,300,000, is required to draw down the unfunded liability in fiscal year 2012.

### 3. *Increase in payment to the Court of Federal Claims Judges' Retirement Fund*

**Requested Increase: $200,000**

The appropriation level for fiscal year 2011 is $4,000,000. Based on actuarial calculations, $4,200,000, an increase of $200,000, is required to draw down the unfunded liability in fiscal year 2012.

566

12.1

# UNITED STATES SENTENCING COMMISSION
*Salaries and Expenses*
## SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | |
|---|---|
| **Fiscal Year 2011 Assumed Appropriation** | **$17,414,000** |
| **Fiscal Year 2012 Requested Appropriation** | **$17,906,000** |
| **Requested Increase from Fiscal Year 2011 Assumed Appropriation** | **$492,000** |

## APPROPRIATION LANGUAGE

## UNITED STATES SENTENCING COMMISSION

## SALARIES AND EXPENSES

For the salaries and expenses necessary to carry out the provisions of chapter 58 of title 28, United States Code, [$17,414,000] *$17,906,000*, of which not to exceed $1,000 is authorized for official reception and representation expenses.

567

## SUMMARY OF REQUEST
## UNITED STATES SENTENCING COMMISSION
## SALARIES AND EXPENSES
## FISCAL YEAR 2012
### (Dollar amounts in thousands)

### Fiscal Year 2012 Resource Requirements:

| | FTEs | Amount |
|---|---|---|
| **Fiscal Year 2011 Obligations**............................................ | 110 | 17,776 |
| Carryforward balance from the Judiciary Information Technology Fund......... | - | (151) |
| Carryforward balance from the Commission no-year fund................. | - | (211) |
| **Fiscal Year 2011 Base Appropriation** ............................ | 110 | 17,414 |

### Page No.  Adjustments to Base to Maintain Current Services:

A. Commission Personnel
   1. Benefit cost adjustments

| | | |
|---|---|---|
| 12.10 | a.  Promotions and within-grade increases.................... | 247 |
| 12.10 | b.  Health benefits increase ............................. | 71 |
| 12.10 | c.  FICA increase .................................. | 47 |
| 12.11 | d.  One less compensable day ......................... | (40) |

12.2

568

SUMMARY OF REQUEST
UNITED STATES SENTENCING COMMISSION
SALARIES AND EXPENSES
FISCAL YEAR 2012
(Dollar amounts in thousands)

| | Original Request | |
|---|---|---|
| | FTEs | Amount |
| **B. Other Adjustments** | | |
| 12.11  2.  Inflationary adjustments . . . . . . . . . . . . . . . . . . . . . . . . . . | - | 167 |
| **Subtotal, Adjustments to Base to Maintain Current Services** . . . . . . . . . . . . . . . . . | - | 492 |
| **Total Current Services Appropriation Required** . . . . . . . . . . . . . . . . . . . . | 110 | 17,906 |
| **Total, Fiscal Year 2012 Appropriation Required** . . . . . . . . . . . . . . . . . . . . | 110 | 17,906 |
| **Total Appropriation Increase, Fiscal Year 2011 to Fiscal Year 2012** . . . . . . . . . . . . . . . . . . . . | - | 492 |
| **Financing the Fiscal Year 2012 Request:** | | |
| **Total Appropriation Required, Fiscal Year 2012** . . . . . . . . . . . . . . . . . . . . | 110 | 17,906 |
| 12.11  3.  Carryforward balance from the Commission's no-year funds . . . . . . . . . . | - | 386 |
| 12.11  4.  Carryforward balance from the Judiciary Information Technology Fund . . . . . | - | 2,000 |
| **Total Estimated Obligations, Fiscal Year 2012** . . . . . . . . . . . . . . . . . . . . | 110 | 20,292 |

12.3

569

12.4

## UNITED STATES SENTENCING COMMISSION
## SALARIES AND EXPENSES
### Obligations by Activity ($000)

| Activity | Fiscal Year 2010 Actual | Fiscal Year 2011 Estimate | Fiscal Year 2012 Request |
|---|---|---|---|
| Salaries and Expenses, Total Obligations | 16,756 | 17,776 | 20,292 |
| Unobligated Balance, Start of Year | | | |
| Judiciary Information Technology Fund | (2,151) | (2,151) | (2,000) |
| Salaries and Expenses No-Year Funds | (597) | (597) | (386) |
| Unobligated Balance, End of Year | | | |
| Judiciary Information Technology Fund | 2,151 | 2,000 | - |
| Salaries and Expenses No-Year Funds | 597 | 386 | - |
| Unobligated Balance, Expiring | 81 | - | - |
| Available Appropriation | 16,837 | 17,414 | 17,906 |

### Object Classification ($000)

| | Description | Fiscal Year 2010 Actual | Fiscal Year 2011 Estimate | Fiscal Year 2012 Request |
|---|---|---|---|---|
| 11 | Personnel compensation | 10,006 | 10,259 | 10,349 |
| 12 | Personnel benefits | 2,834 | 3,015 | 3,238 |
| 21 | Travel | 822 | 862 | 765 |
| 22 | Transportation of things | 25 | 25 | 26 |
| 23 | Rent, communications and utilities | 72 | 75 | 77 |
| 24 | Printing and reproduction | 235 | 232 | 237 |
| 25 | Other services | 2,240 | 2,596 | 3,871 |
| 26 | Supplies and materials | 64 | 65 | 66 |
| 31 | Equipment | 458 | 647 | 1,663 |
| | Total Obligations | 16,756 | 17,776 | 20,292 |

570

12.5

UNITED STATES SENTENCING COMMISSION
SALARIES AND EXPENSES
Relation of Obligations to Outlays ($000)

| | Fiscal Year 2010 Actuals | Fiscal Year 2011 Estimate | Fiscal Year 2012 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total Obligations | 16,756 | 17,565 | 20,503 | 2,938 |
| Obligated balance, start of year | (5,556) | (6,156) | (5,864) | 292 |
| Obligated balance, end of year | 6,156 | 5,864 | 7,221 | 1,357 |
| Total Outlays | 17,356 | 17,273 | 21,860 | 4,587 |
| | | | | |
| Less Judiciary Information Technology Fund Obligations | (523) | (151) | (2,000) | (1,849) |
| | | | | |
| **Net Outlays** | **16,833** | **17,122** | **19,860** | **2,738** |

Personnel Summary

| | Fiscal Year 2010 Actuals | Fiscal Year 2011 Estimate | Fiscal Year 2012 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total compensable workyears: | | | | |
| Full-time equivalent employment | 110 | 110 | 110 | 0 |

**GENERAL STATEMENT AND INFORMATION**

The statutory duties of the United States Sentencing Commission include, but are not limited to:

- promulgating sentencing guidelines to be determined, calculated, and considered in all federal criminal cases;

- collecting sentencing data systematically to detect new criminal trends, to determine if federal crime policies are achieving their goals, and to serve as a clearinghouse for federal sentencing statistics;

- conducting research on sentencing issues and serving as an information center for the collection, preparation, and dissemination of information on federal sentencing practices; and

- providing specialized training to judges, probation officers, staff attorneys, law clerks, prosecutors, defense attorneys, and other members of the federal criminal justice community on federal sentencing issues, including application of the guidelines.

The Commission sits at the intersection of all three branches of government; the Legislative Branch that creates the law, the Executive Branch that enforces the law, and the Judicial Branch that interprets the law. The Commission synthesizes the interests of the three branches in order to effectuate sound federal sentencing policy. Consistent with *United States v. Booker* (*Booker*), which rendered the federal sentencing guidelines advisory and reaffirmed the Commission's role in federal

sentencing, the Commission has continued its core mission to promulgate new guidelines and guideline amendments in response to congressional statutes and directives, and in response to information it receives from sentencing courts, Congress, the Executive Branch, federal defenders, and others in the federal criminal justice system. The Commission has increased its efforts to provide specialized training on federal sentencing issues, including application of the guidelines to federal judges, probation officers, staff attorneys, law clerks, prosecutors, defense attorneys, and others.

Furthermore, the Commission has continued to refine its data collection, analysis, and reporting efforts to provide real-time data about federal sentencing practices and trends. The Commission must continue to disseminate sentencing information in real time and in a thorough manner to fulfill its statutory duties to monitor the operation of the guidelines and to advise Congress on federal sentencing policy.

Although the need for Commission work - products and services has increased post-*Booker*, the Commission is not requesting program increases for fiscal year 2012. The Commission believes that it has been successful in maximizing resources and appreciates the funding Congress has provided for the Commission's fulfillment of its statutory duties. Full funding of the Commission's fiscal year 2012 budget request will allow the Commission to continue to fulfill these statutory duties.

12.6

## ONGOING ACTIVITIES

### Sentencing Policy Development

In fiscal year 2009, the Commission commemorated the 25th anniversary of passage of the Sentencing Reform Act of 1984. Throughout fiscal years 2009 and 2010, the Commission held a series of regional hearings across the country on the state of federal sentencing, receiving input from judges, probation officers, defense attorneys, prosecutors, community interest groups, law enforcement, victims advocates, academics, and others. The Commission followed up on the extensive input it received during these regional hearings by conducting a comprehensive federal sentencing survey of district judges, as well as holding a hearing in Washington, D.C. to explore issues associated with the role of statutory mandatory minimums in federal sentencing policy. The Commission has used this wealth of information to inform its policy decisions over the past two years and anticipates relying heavily on it as it compiles with a congressional directive to report on the state of federal sentencing since the *Booker* decision and the impact of statutory mandatory minimums.

The Commission also is continuing its work to evaluate and report on the impact of *Booker* and subsequent caselaw on the federal sentencing system, including an assessment of, and possible guideline amendments related to, the incidence of and reasons for sentences that are outside the guideline range. The Commission is also undertaking a review of child pornography offenses.

In fiscal year 2010 and 2011, the Commission worked with Congress and other stakeholders in the federal criminal justice community in promulgating a temporary, emergency amendment implementing the statutory changes and directives set forth in the Fair Sentencing Act of 2010 (FSA). The Commission anticipates working closely with all three branches of government, as well as all interested parties, as it moves forward on promulgation of a permanent amendment implementing the FSA.

In addition to implementing the changes made by the FSA, in the past year the Commission also promulgated guidelines and guideline amendments to implement enacted legislation that included the Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act, the Fraud Enforcement and Recovery Act of 2009, the Omnibus Public Land Management Act of 2009, and the Children's Health Insurance Program Reauthorization Act of 2009.

In fiscal year 2011, the Commission expects to promulgate guidelines and guideline amendments to implement enacted legislation including Patient Protection and Affordable Care Act, the Dodd-Frank Wall Street Reform and Consumer Protection Act, the Comprehensive Iran Sanctions, Accountability, and Divestment Act of 2010, and the Secure and Responsible Drug Disposal Act of 2010.

### Collecting Sentencing Data

Each year the Commission's Office of Research and Data collects data about criminal cases sentenced during that year. By law, the courts are required to submit five sentencing documents to the Commission within 30 days of entry of judgment in a criminal case: the charging document, the plea agreement, the presentence investigation report, the judgment and commitment order, and the statement of reasons form. The Commission reviews these

documents and collects and analyzes many pieces of information of interest and importance to the federal criminal justice community. During the past year the Commission received almost 375,000 documents from more than 81,000 original sentencings. Analyses of the data are reported in the Commission's Annual Report and Sourcebook of Federal Sentencing Statistics. In order to provide the most accurate and timely information on national sentencing trends and practices, the Commission disseminates key aspects of this data on a quarterly basis and provides trend analyses of the changes in federal sentencing practices over time.

Since March 2008, the Commission has also collected real-time data from the courts on over 24,000 motions filed for retroactive application of its 2007 crack cocaine amendment. The Commission continues to collect and regularly report real-time data on the retroactive application of its 2007 crack cocaine amendment.

At the request of Congress, the Commission also provides specific analyses using real-time data of sentencing trends related to proposed and pending legislation. These assessments often are complex and time-sensitive, and require highly-specialized Commission resources. In addition, the Commission responds to a number of more general data requests from Congress on issues such as drugs, immigration, fraud, and sex offenses. These requests are expected to continue in response to congressional work on crime legislation in the 112th Congress.

The Commission also responds to requests for data analyses from federal judges. For example, the Commission provides to each chief district judge and chief circuit judge a yearly analysis of the cases sentenced in the district or circuit with a comparison of the caseload and sentencing practices in that district or circuit to the nation as a whole. The Commission's ability to provide these analyses on demand and with real-time data provides a unique resource to judges.

The Commission's data collection, analysis, and reporting requirements are impacted by the high volume of cases sentenced in the federal system annually. To put this caseload in perspective, in fiscal year 1990, the Commission received documentation for 33,000 cases sentenced under the guidelines. In fiscal year 2009, the Commission received documentation for approximately 81,000 cases. To provide the timely analyses of federal sentencing data necessary for Congress and the courts, adequate funding of the Commission's efforts in this area is essential. The Commission's modernization and refinement efforts have kept pace with demands placed on it, but full funding of the Commission's fiscal year 2012 budget request will be necessary to ensure the system continues to operate efficiently.

In recent years, the Commission has reported to Congress on its development and implementation of an electronic document submission system that enables sentencing courts to submit documentation directly to the Commission by electronic means. By the end of fiscal year 2008, all 94 judicial districts were using the Commission's electronic submission system. In fiscal year 2009, the Commission began the next phase of this modernization effort, which is to advance the evolution of the electronic document submission system to a web-based system. By the end of fiscal year 2010, 53 districts were using the web-based system. The Commission expects to continue the development of the web-based system in the coming fiscal year.

12.8

**Conducting Research**

Research is a critical part of the Commission's overall mission. The Commission's research staff regularly analyzes the current and prior fiscal years' data to identify the manner in which the courts are sentencing offenders and their use of the guidelines in that work. The Commission regularly uses these analyses when considering proposed changes to the guidelines. Similarly, some analyses are published by the Commission as a resource for the criminal justice community. In fiscal years 2010 and 2011, for example, the Commission published research reports on the use of supervised release in the federal criminal justice system, the calculation of certain criminal history points under the federal sentencing guidelines, demographic differences in federal sentencing practices and trends since the 2005 *Booker* decision, an overview of federal criminal cases in fiscal year 2008, and additional information about data collection by the Commission. The Commission also began a multi-year recidivism study of crack cocaine offenders for whom the courts have granted motions for retroactive application of the 2007 crack cocaine amendment. The Commission anticipates publishing additional reports in the coming fiscal year, including an overview of federal criminal cases in fiscal years 2009 and 2010.

**Training and Outreach**

The Commission continues to fulfill its statutory duty to provide training and specialized technical assistance on federal sentencing issues, including application of the guidelines, to federal judges, probation officers, staff attorneys, law clerks, prosecutors, and defense attorneys, by providing educational programs around the country throughout the year. The Commission has greatly expanded these training and outreach efforts, in large part as a result of *Booker* and subsequent caselaw. In fiscal year 2010, for example, commissioners and Commission staff conducted training programs in all twelve circuits and most of the 94 judicial districts. Commissioners and Commission staff also participated in numerous academic programs, symposia, and circuit conferences as part of the ongoing discussion of federal sentencing issues.

For the past three years, the Commission has conducted an outreach program through which Commission staff visit district courts throughout the country to view sentencing proceedings conducted in the district. The program is intended to give Commission staff hands-on experience of sentencing proceedings about which the Commission collects data. This also provides district court judges with the opportunity to provide direct feedback to the Commission about federal sentencing issues, including application of the guidelines.

In fiscal year 2011, the Commission plans to continue to provide training to the district and circuit courts on a number of federal sentencing issues, including recently promulgated guidelines and guideline amendments. The Commission also is providing extensive training to the federal criminal justice community on its emergency, temporary amendment implementing the FSA. In May 2011, the Commission will hold its annual national training program in San Diego, California that will include hundreds of participants. The Commission anticipates that these expanded efforts and increased requests for training will continue throughout fiscal year 2012.

12.9

## JUSTIFICATION OF CHANGES

The fiscal year 2012 budget request of $17,906,000 represents an overall increase of $492,000, or 2.8 percent over the fiscal year 2011 assumed appropriation of $17,414,000. The Commission's request is limited to a modest increase over fiscal year 2011 to account for inflationary increases and adjustments for personnel costs and to maintain current services. The Commission requests no program increases for fiscal year 2012.

Adjustments to base to maintain current services include funds for pay and benefits, cost increases for current staff, and adjustments for on-going activities, such as inflationary increases in contract rates and charges for services, supplies, equipment and other Commission needs.

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

### A. COMMISSION PERSONNEL

#### 1. *Benefit cost adjustments*

##### a. Promotions and within-grade increases

**Requested Increase: $247,000**

The requested increase provides for promotions and within-grade increases for support personnel. The salary plan for Commission personnel provides for periodic within-grade increases for staff who receive at least a satisfactory performance rating.

##### b. Health benefits increase

**Requested Increase: $71,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 7.0 percent in January 2011 and another 6.8 percent in January 2012. The requested increase annualizes the 2011 premium increase, and includes a nine-month provision for the anticipated fiscal year 2012 premium increase.

##### c. FICA increase

**Requested Increase: $47,000**

Funds are requested to provide for the employer contributions to Old Age, Survivor, and Disability Insurance (OASDI) portion of the FICA tax in fiscal year 2012. The salary cap for OASDI is expected to remain at $106,800. The requested amount is needed to pay the agency contribution.

12.10

**d. One less compensable day**

**Requested Decrease: ($40,000)**

There is one less compensable day in fiscal year 2012 than in fiscal year 2011. The requested decrease reduces personnel compensation and benefit expenses associated with one less compensable day.

**B. OTHER ADJUSTMENTS**

*2. Inflationary adjustments*

**Requested Increase: $167,000**

Consistent with guidance from the Office of Management and Budget, the Commission requests an increase of $167,000 to fund inflationary increases of 1.4 percent for operating expenses such as travel, utilities, printing, contractual services, supplies and materials, and furniture and equipment.

**FINANCING THE FISCAL YEAR 2012 REQUEST**

3.   *Carryforward balance from the Commission's no-year funds*

**Estimated Obligations: $386,000**

In fiscal year 2012, the Commission anticipates that the entire amount will be used to support contracts for an interactive data

website and additional improvements in data organization and analysis.

4.   *Carryforward balance from the Judiciary Information Technology Fund*

**Estimated Obligations in FY 2011: $151,550**
**Estimated Obligations in FY 2012: $2,000,000**

At the beginning of fiscal year 2011, the Commission had $2,150,550 available in the Judiciary Information Technology Fund from deposits that were made in previous fiscal years. In fiscal year 2011, the Commission intends to obligate, at minimum, $151,550 to support two critical projects. First, the Disaster Recovery Project will decentralize the Commission's sentencing datasets and other Commission applications and thereby provide security, in the event of a disaster, for the continued submission of sentencing documents by the federal courts and the continued maintenance and collection of sentencing data by the Commission, as required by 28 U.S.C. 994. In early fiscal year 2012, the Commission intends to obligate funds to complete the implementation of the Disaster Recovery Project.

The second project, the Data Extraction Project will maximize the Commission's capabilities to extract certain sentencing data (through optical character recognition and other state-of-the art technologies) from sentencing documents currently submitted to the Commission by the federal courts. This will enhance the Commission's research and reporting functions, including its

577

12.12

ability to fulfill special requests and unique coding projects, as set forth in 28 U.S.C. 995. In early fiscal year 2012, the Commission intends to complete implementation of the Data Extraction Project.

Given the critical nature of these projects, in the third quarter of fiscal year 2011, the Commission will work towards accelerating the progress for the Disaster Recovery and Data Extraction projects.

578

## JUDICIARY INFORMATION TECHNOLOGY FUND

### GENERAL STATEMENT AND INFORMATION

The Judiciary Information Technology Fund (JITF) was established by Congress in fiscal year 1990 (28 U.S.C. § 612) to assist the judiciary in implementing its information technology initiatives. The authority of the JITF was extended indefinitely in the fiscal year 1998 Commerce, Justice, State, Judiciary, and Related Agencies Appropriations Act (P.L. 105-119). The JITF was authorized "without fiscal year limitation," for the procurement of information technology resources. The fund makes it possible to implement the *Long-Range Plan for Information Technology in the Federal Judiciary* and to manage the information technology (IT) program over a multi-year planning cycle which allows more effective and efficient planning, budgeting, and use of funds for IT activities.

In keeping with the judiciary's mission and primary business objectives, the information technology program must identify, implement, and maintain cost-effective solutions for the judiciary, bar, and the public. All IT expenses for the district, appellate, and bankruptcy courts, and probation and pretrial services offices, must be paid from the fund.

Each fiscal year, current year requirements are financed via the JITF from a variety of sources:

- deposits from the courts' Salaries and Expenses account;

- fee collections from the Electronic Public Access (EPA) program for IT expenses that improve public access to information (see Appendix 2);

- unobligated balances in the fund from prior year financial plan savings (unencumbered);

- proceeds from the sale of excess equipment;

- annual allotments to the courts originally for non-IT purposes that are reprogrammed locally by the courts for IT initiatives in accordance with the budget decentralization program; and

- voluntary deposits from non-mandatory judiciary users of the fund (such as the Court of Appeals for the Federal Circuit, the Court of International Trade, the U.S. Sentencing Commission, and the Administrative Office of the U.S. Courts (AO)).

The majority of the financing in the JITF originates from deposits from the Salaries and Expenses account. Table 13.1 on the following page displays JITF requirements and funding sources for fiscal year 2010 through fiscal year 2012.

13.1

13.2

## Table 13.1 Judiciary Information Technology Fund Obligations and Financing ($000)

| | FY 2010 Actual | FY 2011 Financial Plan | FY 2012 Request |
|---|---|---|---|
| **Obligations:** | | | |
| Salaries & Expenses Requirements (w/ carryforward) | 374,165 | 394,255 | 417,812 |
| EPA Program 1/ | 110,938 | 121,678 | 128,012 |
| Court of International Trade | 909 | 499 | 291 |
| U.S. Sentencing Commission | 0 | 151 | 2,000 |
| Administrative Office of the U.S. Courts | 1,047 | 1,340 | 0 |
| Court of Appeals for the Federal Circuit | 25 | 680 | 482 |
| **TOTAL JITF** | 487,084 | 518,603 | 548,597 |
| **Financing:** | | | |
| **Salaries and Expenses** | | | |
| Unobligated Balance, Start of Year | 36,692 | 48,729 | 20,000 |
| New Deposits and Prior Year Recoveries 2/ | 386,792 | 365,516 | 397,812 |
| Unobligated Balance, End of Year | (48,729) | (20,000) | 0 |
| Total Salaries & Expenses | 374,165 | 394,255 | 417,812 |
| **EPA Program** | | | |
| Unobligated Balance, Start of Year | 34,698 | 24,612 | 12,751 |
| Estimated Receipts | 102,608 | 107,890 | 115,340 |
| Utilization of EPA Receipts in other Judiciary Accounts | (46) | (73) | (73) |
| Unobligated Balance, End of Year | (24,612) | (12,751) | (6) |
| Total EPA Program | 110,938 | 121,678 | 128,012 |
| **Court of International Trade** | | | |
| Unobligated Balance, Start of Year | 924 | 790 | 291 |
| New Deposits and Prior Year Recoveries | 775 | 0 | 0 |
| Unobligated Balance, End of Year | (790) | (291) | 0 |
| Total Court of International Trade | 909 | 499 | 291 |
| **U.S. Sentencing Commission** | | | |
| Unobligated Balance, Start of Year | 2,151 | 2,151 | 2,000 |
| New Deposits | 0 | 0 | 0 |
| Unobligated Balance, End of Year | (2,151) | (2,000) | 0 |
| Total U.S. Sentencing Commission | 0 | 151 | 2,000 |
| **Administrative Office of the U.S. Courts** | | | |
| Unobligated Balance, Start of Year | 1,047 | 1,340 | 0 |
| New Deposits | 1,340 | 0 | 0 |
| Unobligated Balance, End of Year | (1,340) | 0 | 0 |
| Total Administrative Office of the U.S. Courts | 1,047 | 1,340 | 0 |
| **Court of Appeals for the Federal Circuit** | | | |
| Unobligated Balance, Start of Year | 106 | 1,043 | 434 |
| New Deposits | 516 | 0 | 0 |
| Utilization of EPA Receipts | 46 | 73 | 44 |
| Unobligated Balance, End of Year | (1,043) | (434) | 0 |
| Total Court of Appeals for the Federal Circuit | 25 | 680 | 482 |
| **GRAND TOTAL JITF** | 487,084 | 518,603 | 548,597 |

1/ See Appendix 2, Electronic Public Access Program, for information about utilization of receipts
2/ Of this amount, $31.3 million was deposited in fiscal year 2010 by the courts from decentralized resources.

580

13.3

## PROGRAMS FUNDED FROM THE SALARIES AND EXPENSES ACCOUNT

Under the guidance of the Judicial Conference of the United States and according to the strategic directions and objectives contained in the *Long-Range Plan for Information Technology in the Federal Judiciary*, the judiciary continues to implement information systems to meet the mission of the courts. The judiciary, like the rest of the public sector, depends on technology for communication systems, research, and information management systems to fulfill mission-critical needs.

The judiciary has made a significant investment in information technology in recent years. This investment has created efficiencies by automating labor-intensive work processes and effecting cost savings and offsets in areas such as processing court filings, jury management, financial systems, printing, postage, personnel, space, travel, and training. On-going project and application development in the judiciary includes court administration/case management systems for appellate, district, and bankruptcy courts; judicial statistical and reporting systems; a courtroom technology program to improve the quality and efficiency of proceedings; court allotments; probation/pretrial services management systems; financial systems for the courts; human resources systems; and management information systems. The requested amount for fiscal year 2012 is necessary to continue development and implementation of these critical projects. Without these funds, support for operating and maintaining the judiciary's existing and newly installed information systems could be hindered, including support to the Judiciary Data Center, which provides centralized mainframe processing support to the courts for some personnel, payroll,

financial, and statistical applications; infrastructure and collaboration tools; telecommunications program; and court support reimbursable programs, if funding is not provided.

As shown in table 13.2, funding for the JITF Salaries and Expenses obligations supports eleven distinct program components in the JITF program. These requirements by major initiative support the IT systems that provide judges and staff with the tools they need to perform their day-to-day work.

### Cost Containment Efforts

Several initiatives are underway that have the potential to enhance efficiency and effectiveness and thus contain the growth in future technology and staffing costs.

Concurrent with gathering functional requirements for the next generation of the Case Management/Electronic Case Filing (CM/ECF) system (which is to be funded from the utilization of EPA receipts, see Appendix 2), the judiciary is considering future system architecture alternatives. A new architecture has the potential for improvements such as automating the data exchanges between CM/ECF and other systems that utilize case-related data. In addition, the next generation of CM/ECF may introduce efficiencies associated with enhanced reporting and improved access to users outside the judiciary.

The new GSA Network contract for telecommunications was awarded in fiscal year 2009, and by the middle of fiscal year 2011 the judiciary's national network services will have transitioned to a new network architecture that is capable of providing data, voice, and video services on a single network for courts with adequate infrastructure. This will afford the opportunity to deploy telecommunications services, such as a

581

13.4

national phone system, over the data communications network (DCN). After a test phase, this service will begin implementation in mid-2011. The schedule is contingent on funding being available for necessary enhancements in power, cooling, and space in court facilities. By providing courts with a robust replacement for their aging Private Branch Exchange (PBX) equipment, this service will reduce local telephone-related expenditures.

The judiciary is considering leveraging the efficiencies of centralized purchasing for IT products. Purchasing standardized information technology products would result in economies of scale. In addition, the judiciary is considering a GSA government-wide contract that will help manage wireless telecommunications costs by analyzing usage and pooling accounts.

Non-Appropriated Sources of Funds

In addition to annual appropriations deposited into the fund, the JITF is financed by non-appropriated sources including fee collections from providing the public with electronic access to court records (see Appendix, 2), and unobligated carry/forward balances from prior years. The amount of appropriated funds to be deposited is calculated based on current estimates of total obligation requirements offset by available non-appropriated sources of funds. As non-appropriated sources of funding increase, the amount of deposited appropriated funds necessary to fund obligation requirements decrease. Conversely, if non-appropriated funding levels decrease, then additional appropriated funds may be required in order to ensure funds are available to meet critical IT requirements.

"Savings" and "Slippage." JITF unobligated balances from prior years are generated from two sources. Balances categorized as "savings" are the result of reduced requirements, lower than anticipated costs, and increased efficiencies. The judiciary uses "savings" balances as a general offset to the appropriations deposit in the JITF.

The second source of unobligated balances in the JITF is categorized as "slippage." During the course of the fiscal year, information technology requirements may "slip" from one year to the next due to delays in awarding contracts or obtaining necessary equipment and infrastructure, technology changes or continued analyses of alternatives. While "slippage" becomes part of the overall unobligated balance in the JITF, the judiciary recognizes that the planned obligation of funds for the original purpose still exists – it has merely been delayed. As a result, total obligation requirements in the upcoming budget year may increase due to slippage; however, because the funding associated with this slippage is carried forward from the previous year and designated for the same purpose in the current year, there is no net increase to appropriation requirements. As budget estimates are updated throughout the fiscal year, the judiciary adjusts both its appropriation requirements and its total obligation requirements in the JITF to account for both "savings" and "slippage."

582

Table 13.2 Salaries and Expenses Obligations – Judiciary Information Technology Fund Program Requirements
($000)

| ($000) IT Program Component | A FY 2011 Projected Obligations | B FY 2010 Slipped Requirements | C FY 2011 Base Requirements (col a - col b) | D FY 2011 Requirements Funded in FY 2010 | E FY 2011 Adjusted Base (col c + col d) | FY 2012 Total Requirements | Change: FY 2011 Adj. Base Requirements to FY 2012 Current Services Requirements (Excl. Prog. Increases) | Change: FY 2011 Adj. Base Requirements to FY 2012 Requirements (Program Increases only) |
|---|---|---|---|---|---|---|---|---|
| Court Administration Systems | 3,007 | 0 | 3,007 | 0 | 3,007 | 3,528 | 521 | 0 |
| Judicial Statistics and Reporting Systems | 4,433 | (730) | 3,704 | 0 | 3,704 | 4,048 | 344 | 0 |
| Courtroom Technology Program | 12,777 | (1,189) | 11,588 | 0 | 11,588 | 4,519 | (7,069) | 0 |
| Court Allotments | 100,194 | (1,244) | 98,950 | 0 | 98,950 | 100,336 | 1,386 | 0 |
| Probation and Pretrial Services | 14,908 | (1,046) | 13,862 | 4,036 | 17,898 | 19,847 | 1,949 | 0 |
| Financial Systems | 33,136 | (2,889) | 30,247 | 0 | 30,247 | 32,994 | (1,378) | 4,125 |
| Human Resources Systems | 22,128 | (351) | 21,777 | 0 | 21,777 | 22,874 | 1,097 | 0 |
| Management Information Systems | 15,295 | (1,470) | 13,825 | 0 | 13,825 | 16,432 | 1,070 | 1,537 |
| Infrastructure and Collaboration Tools | 73,509 | (3,553) | 69,956 | 0 | 69,956 | 75,676 | 770 | 4,950 |
| Telecommunications Program | 83,728 | (7,722) | 76,006 | 2,571 | 78,577 | 83,821 | 1,980 | 3,264 |
| Court Support Reimbursable Program | 31,139 | 0 | 31,139 | 0 | 31,139 | 32,260 | 1,121 | 0 |
| TOTAL, SALARIES AND EXPENSES | 394,255 | (20,194) | 374,061 | 6,607 | 380,668 | 396,335 | 1,791 | 13,876 |

13.5

### Court Administration Systems

**FY 2012 Requirements:**     $ 3,528,000
**Requested Change from FY 2011 Plan:**   $   521,000

This category encompasses systems for juror qualification, management, and payment; the management and administration of library functions (e.g., acquisitions, cataloging, serial control); and the operations and maintenance for the Central Violations Bureau which provides case management and financial information for petty offense and misdemeanor cases initiated by violation notices.

The net change for this category is an increase of $521,000 to replace outdated equipment for the jury management system and for inflationary adjustments.

### Judicial Statistical and Reporting Systems

**FY 2012 Requirements:**     $ 4,048,000
**Requested Change from FY 2011 Plan:**   $   344,000

This category includes systems to support the operations and maintenance and ongoing systems development for gathering and reporting statistics in the judiciary; financial disclosure reports by judges and judiciary employees (for completing financial reports required by the Ethics in Government Act of 1978); inter-circuit assignments for courts of appeals and district courts; bankruptcy administrator management and reporting to manage cases, oversee the trustees' activity, and

provide reports to federal judges; the law clerk hiring process; and electronic document capabilities for the federal rule-making process.

The net change for this category is an increase of $344,000 associated with modifications to the system for tracking and reporting on assignments of judges outside their own circuit in order to improve the routing and security of this information.

### Courtroom Technology Program

**FY 2012 Requirements:**     $ 4,519,000
**Requested Change from FY 2011 Plan:**   $(7,069,000)

This program provides for the installation and maintenance of courtroom technologies in new and renovated buildings to improve the quality and efficiency of courtroom proceedings. This category excludes the decentralized court allotments that are funded by the EPA program and are used for installation and maintenance of courtroom technologies in existing buildings, see Appendix 2. The judiciary continues its program to equip courtrooms with a variety of technologies to improve the quality and efficiency of certain aspects of courtroom proceedings. These technologies include video evidence presentation systems, video conferencing systems, and electronic methods of taking the record. The Judicial Conference has endorsed the use of such technologies in the courtroom as they can improve trial time, lower litigation costs, facilitate fact-finding, enhance the understanding of information, and improve access to court proceedings.

584

13.7

Based on construction schedules from GSA, the judiciary expects to complete courtroom technology installations in 74 new or renovated courtrooms in fiscal year 2011 and another 31 new or renovated courtrooms in fiscal year 2012. The net change for this category is a decrease of $7.1 million.

### Court IT Allotments

**FY 2012 Requirements:**          $100,336,000
**Requested Change from FY 2011 Plan:**    $   1,386,000

These allotments are provided directly to the courts for a variety of IT-related activities. Typically these funds cover the costs associated with operating, maintaining, and cyclically upgrading the installed base of desktop personal computers, laptop computers, printers, and local-area-network equipment. Allotments for maintaining the base of equipment are based on a funding model which uses industry-standard cyclical replacement cycles and pricing. Funds are also allotted for other IT-related purposes such as telephone system maintenance, equipment for new judges, and grants for local technology innovations in the courts.

The net change for this category is an increase of $1.4 million for inflationary adjustments.

### Probation/Pretrial Services Management Systems

**FY 2012 Requirements:**          $19,847,000
**Requested Change from FY 2011 Plan:**    $ 1,949,000

This program provides probation and pretrial services personnel case management and decision support tools as well as tools to access critical case information and law enforcement databases from Executive Branch and stated local sources while working in the field. Support is also provided for storage and sharing of electronic documents; collection; analysis, and reporting of client data; and the IT needs of the Federal Law Enforcement Training Center.

The net change for this category is an increase of $1.9 million for upgrades and operational costs for the new probation and pretrial services case management system plus inflation. The new case management system will enhance security measures, streamline information into one national database and improve information sharing capabilities with other federal law enforcement agencies.

### Financial Systems

**FY 2012 Requirements:**          $32,994,000
**Requested Change from FY 2011 Plan:**    $ 2,747,000

In addition to the judiciary's financial accounting system, this program includes systems to support the local court budgeting process, the payment for private court-appointed counsel and expert services, tracking and monitoring criminal debt imposed by the court, the handling of cash receipts, reporting of court payroll information, and the management of travel expenses. By

The net change for this category is an increase of $1.1 million due to system upgrades, cyclical replacement of hardware and standard inflationary adjustments.

## Management Information Systems

FY 2012 Requirements:                  $16,432,000
Requested Change from FY 2011 Plan:  $ 2,607,000

This category includes a collection of systems and activities to support the procurement process, the judiciary's national web sites, collection of survey information, the national records management program, and the *Guide to Judiciary Policies*. Also included are systems to manage facilities projects and to support planning and decision-making with staffing, financial, and workload data.

These management information systems enhance productivity and ensure adherence to policies and procedures. For example, the Judiciary Facilities Asset and Construction Tracking System enables efficient management of the judiciary's space related costs. In addition, automating the *Guide to Judiciary Policies* allows timely access to the official guidance provided to the judiciary in support of its day-to-day operations to support stewardship and avoid waste, fraud, and abuse.

The net change for this category is an increase of $2.6 million for migrating the Judiciary's intranet site to a modern, supportable operating environment and application framework.

fiscal year 2014, the judiciary will have a single integrated financial system allowing timely access to data, supporting the federal accounting standards including the e-government requirement for daily reporting to the Department of Treasury, and providing enhanced reporting capability.

The net change for this category is an increase of $2.7 million. Of this amount, $1.9 million supports the development of a voucher processing system which will allow private court-appointed counsel a means to receive appointments and submit claims to the court for payment electronically and to enhance the quality control and oversight of the claims requests and payments. The remaining $0.8 million supports the Judiciary's modernized consolidated financial system, which will provide enhancements such as electronic payments of vouchers and will allow the Judiciary to comply with Department of the Treasury-mandated initiatives.

## Human Resources Systems

FY 2012 Requirements:                  $22,874,000
Requested Change from FY 2011 Plan:  $ 1,097,000

This program encompasses systems for personnel, payroll, and retirement related services; judges' retirement; fair employment practices reporting; and integration of all human resources-related items as well as efforts to reduce travel-based training. It also includes equipment to produce educational news programming for the judiciary, the public, and Congress.

*Infrastructure and Collaboration Tools*

**FY 2012 Requirements:**          $ 75,676,000
**Requested Change from FY 2011 Plan:**   $ 5,720,000

These tools provide support to the national IT program including testing, training, and support; maintenance and replacement of servers; e-mail messaging (including licenses, server maintenance and replacement, and help desk services); IT security and national gateways (including security support services); mainframe computer and national software licenses; IT project management; information systems architecture (and assessment of new technologies); local court grants for technology innovation; portal technology; infrastructure for identity management services, and the Court Operations Support Center.

The increase of $5.7 million in this category is due to resumption of funding for Microsoft Office software (previously funded under a four-year agreement beginning in 2008) and inflationary adjustments.

*Telecommunications Program*

**FY 2012 Requirements:**          $ 83,821,000
**Requested Change from FY 2011 Plan:**   $ 5,244,000

This program provides support for voice and data transmissions services and telecommunications equipment for new buildings. (Funds for local, long-distance, and cellular service, and telephone system maintenance are included in *Court IT Allotments*.) The judiciary's communications program allows the judiciary to maintain communications services for the appellate, district, and bankruptcy courts and for probation and pretrial services offices, and to procure communications equipment for new courthouses and for courthouses undergoing major repairs and alteration.

The increase of $5.2 million is due to costs associated with implementing a more robust data communications network architecture, including increases in bandwidth and an additional Internet gateway, in order to maintain reliable performance and acceptable response times for web-based systems and services.

*Court Support Reimbursable Program*

**FY 2012 Requirements:**          $32,260,000
**Requested Change from FY 2011 Plan:**   $ 1,121,000

This category funds staff who provide IT development, management, and maintenance services to the courts. This includes IT policy and planning guidance; architecture and infrastructure support; security services; development, testing, and implementation of national IT applications; IT training and other administrative and IT support services on behalf of the courts.

The fiscal year 2012 budget request for the Court Support Reimbursable Program includes $32.3 million for the salaries, benefits, and related expenses that are reimbursed from the Salaries and Expenses account. The increase of $1.1 million is due to standard pay and inflationary adjustments.

13.10

## PROGRAMS FUNDED FROM VOLUNTARY DEPOSITS FROM OTHER JUDICIARY ACCOUNTS

Occasionally, organizations within the judiciary that are not mandatory users of the JITF may deposit funds to assist them in management of their IT efforts. In recent years, the Court of Appeals for the Federal Circuit, the Court of International Trade, the United States Sentencing Commission, and the Administrative Office have made such deposits.

### Court of International Trade

A total of $499,000 is planned for obligation in fiscal year 2011 and $291,000 is planned for obligation in fiscal year 2012. Fiscal year 2011 funds will be used to continue support of its upgraded data network and voice connections and Virtual Private Network System; upgrade and support existing software applications; purchase new software applications to ensure the continued operational efficiency of the Court; replace computer desktop systems, including monitors, printers, and three file servers in accordance with the judiciary's cyclical replacement program; provide broadband services for the new laptops; support Court equipment by the purchase of yearly leasing and maintenance agreements and provide Court access to the Judiciary Data Communications Network (DCN).

Fiscal year 2012 funds will be used to continue these initiatives, and to support the Court's short-term and long-term information technology needs.

### U.S. Sentencing Commission

At the beginning of fiscal year 2011, the Commission had $2,150,550 available in the Judiciary Information Technology Fund from deposits that were made in previous fiscal years. In fiscal year 2011, the Commission intends to obligate, at minimum, $151,550 to support two critical projects. First, the Disaster Recovery Project will decentralize the Commission's sentencing datasets and other Commission applications and thereby provide security, in the event of a disaster, for the continued submission of sentencing documents by the federal courts and the continued maintenance and collection of sentencing data by the Commission, as required by 28 U.S.C. 994. In early fiscal year 2012, the Commission intends to obligate funds to complete the implementation of the Disaster Recovery Project.

The second project, the Data Extraction Project will maximize the Commission's capabilities to extract certain sentencing data (through optical character recognition and other state-of-the art technologies) from sentencing documents currently submitted to the Commission by the federal courts. This will enhance the Commission's research and reporting functions, including its ability to fulfill special requests and unique coding projects, as set forth in 28 U.S.C. 995. In early fiscal year 2012, the Commission intends to complete implementation of the Data Extraction Project.

Given the critical nature of these projects, in the third quarter of fiscal year 2011, the Commission will work towards accelerating the progress for the Disaster Recovery and Data Extraction projects.

13.11

*Administrative Office of the U.S. Courts*

A total of $1,340,000 is planned for obligation in fiscal year 2011. These funds provide for the estimated costs of replacing AO personal computers, laptops, desktop printers, and desktop software on an approximate four-year replacement cycle. At this time, no funds are expected to be obligated in fiscal year 2012.

*Court of Appeals for the Federal Circuit*

At the beginning of fiscal year 2011, $1,043,000 was available in carryforward balances from the Judiciary Information Technology Fund and it is anticipated that this amount will be supplemented by Electronic Public Access receipts totaling $73,000. The court is planning to use $680,000 from this fund in fiscal year 2011 to adapt and implement the Judiciary's Case Management/Electronic Case Filing (CM/ECF) software for use by the Court. It is anticipated that this complex project will take two years to complete. In addition, the court also plans to replace computer desktop systems in accordance with the judiciary's cyclical replacement program and to implement new software for processing the admission of visitors to the courthouse building.

At the beginning of fiscal year 2012, the court estimates that $436,000 will remain in the Judiciary Information Technology Fund and this amount will be supplemented by an additional $46,000 from Electronic Public Access receipts to total $482,000. These funds will be utilized principally in the continuing project begun in fiscal year 2011 to implement the Judiciary's Case Management/ Electronic Case Filing

(CM/ECF) software for use by the Court. Any funds remaining will be used to support other information technology needs of the Court.

589

# APPENDIX 2 - ELECTRONIC PUBLIC ACCESS PROGRAM

590

# ELECTRONIC PUBLIC ACCESS PROGRAM

## GENERAL STATEMENT AND INFORMATION

The Electronic Public Access (EPA) program provides electronic public access to court information in accordance with legislation and with judiciary policies, security requirements and user needs. PACER (Public Access to Court Electronic Records) was established in 1988 as a dial-up service. In the last decade, through the implementation of the Case Management/Electronic Case Files (CM/ECF) system, PACER has evolved into an Internet-based service, which provides the courts, litigants, and public with access to court dockets, case reports, and over 500 million documents filed with the courts through CM/ECF. PACER is a portal to CM/ECF, which is in turn integral to public access.

The program has over 1,000,000 registered user accounts of which approximately one-third were active during fiscal year 2010. Besides court staff, users include members of the bar, city, state and federal employees, and the general public. The biggest user is the Department of Justice. Other than the Department of Justice, the top 10 users are major commercial enterprises or financial institutions. During fiscal year 2010, PACER Service Center support staff responded to nearly 160,000 calls and 42,000 emails from users. Registered PACER users access court documents from a court's website or the Case Locator (formerly U.S. Party/Case Index). The Case Locator is a PACER tool for locating court records that reside in CM/ECF databases in the U.S. district, bankruptcy, and appellate courts across the country.

Pursuant to Congressional directives, the program is funded entirely through user fees set by the Judicial Conference at $0.08 per page. There is a $2.40 maximum charge for any single document, no matter its length. The fee does not apply to judicial opinions – which are available through PACER free of charge. Certain categories of users may be exempted by the court from paying the fee including parties to a court case who receive a free copy of filings in the case. Also, the fee is waived for usage amounting to less than $10.00 quaterly. In fiscal year 2010, approximately seventy-five percent of PACER users did not pay fees as a result of fee waivers and exemptions. The fees are published in the *Electronic Public Access Fee Schedule*, available on uscourts.gov.

Fees are deposited in a special account in the U.S. Treasury and are then used by the Judicial Conference of the United States exclusively to fund program expenses and enhancements that increase public access to the courts, including court websites and electronic bankruptcy noticing.

In 2010, the judiciary completed a year-long assessment of the program's services. The assessment provides a clearer picture of who uses PACER services and shows that the vast majority of users are satisfied with the value they receive for the fees they pay. Information was gathered through focus groups, interviews, and surveys conducted with the courts, attorneys, litigants, librarians, and other users. In all, over 11,000 PACER users contributed to the assessment and eighty-six percent are satisfied with the services. The findings point to areas that could have a significant impact on user satisfaction. Based on findings from the assessment, in March 2010, a new search tool, the Case Locator, was released, replacing the U.S. Party/Case Index with added search capabilities and a fresh user interface, and in May 2010 the PACER website (pacer.gov) was redesigned to make information about PACER more easily accessible. More

Appendix 2.1

improvements are planned, including a communications campaign to inform users about current and new features and services, a redesign of the PACER invoice, and a new training initiative, in partnership with the Government Printing Office and the American Association of Law Libraries.

In March 2010, based on the results of a pilot program, the Judicial Conference endorsed the digital audio initiative, which enables district and bankruptcy judges to make digital audio files of court hearings publicly available through PACER for a fee of $2.40 per file. To be included, digital audio must be the original method used to take the record. The determination as to which audio files are made available is made by the presiding judge. Seventeen courts are currently implementing the initiative, joining the original seven pilot courts.

In fiscal year 2012, the judiciary plans to use EPA collections to continue PACER operations, to make improvements as identified by the assessment, to operate and maintain the installed CM/ECF systems in the various courts across the country, and to finance other information technology expenses related to public access. CM/ECF is currently operational in all district and bankruptcy courts, all 12 courts of appeals, 5 bankruptcy appellate panels, the Court of International Trade and the Court of Federal Claims. Over 37 million cases are on CM/ECF systems, and more than 400,000 attorneys and others have filed documents over the Internet. The associated expenses are funded completely from EPA fee revenue. Attorneys practicing in courts offering the electronic filing capability are able to file documents directly with the court over the Internet. There are no added fees for filing documents over the Internet using CM/ECF.

Implementation of the judiciary's CM/ECF system began in 2001 in the bankruptcy courts after several years of pilot experiences in the district and bankruptcy courts. Because CM/ECF has served many district and bankruptcy courts well for nearly a decade, many in the court community have begun planning for a successor system. While users benefit significantly from having electronic access to court records, a number of areas have been identified in which enhancements and improvements to CM/ECF could be developed to serve the courts, the litigants, and the judiciary's external stakeholders optimally in the future. These potential improvements include better interfaces with other applications, centralized registration and authentication, fee collection prior to docketing, improved functionality for chambers, incorporation of a calendar system, improved accessibility to data, and better reporting functions.

Currently, the judiciary is defining its requirements for the next generation of CM/ECF as well as for the electronic public access program reporting functions. With the assistance of judges, chambers staff, clerks of court, and clerks' office staff, the Administrative Office is examining court processes and procedures to develop functional requirements for the judiciary's future case management system. The Next Generation effort, which is expected to span the next five years, is also including needs from other stakeholders with a separate group focused on CM/ECF interfaces among the judiciary and non-judiciary stakeholders. The various groups are using the EPA assessment study, interviews, surveys, and national focus group meetings to identify consolidated requirements for CM/ECF Next Generation. The judiciary plans to use EPA fee revenue to fund the Next Generation efforts.

Appendix 2.2

592

Appendix 2.3

## Obligations of funds from Electronic Public Access Receipts

Funds from the EPA receipts fund operations, maintenance, and improvements in EPA programs.  The table below breaks out obligations by program and year.

**Table A-2.1 Utilization of Electronic Public Access Receipts ($000)**

| Category | FY 2010 Actual | FY 2011 | FY 2012 |
|---|---|---|---|
| Public Access Services and Applications | 18,768 | 22,544 | 22,664 |
| CM/ECF Development, Operations, and Maintenance | 23,755 | 26,570 | 29,526 |
| Courtroom Technology Allotments for Maintenance/Technology Refreshment | 24,732 | 24,800 | 24,800 |
| Telecommunications | 24,185 | 23,551 | 24,103 |
| Electronic Bankruptcy Noticing | 9,662 | 11,904 | 13,789 |
| Allotments to the Courts | 9,429 | 11,643 | 12,159 |
| CM/ECF State Feasibility Study | 121 | 0 | 0 |
| Violent Crime Control Act Notification | 333 | 739 | 1,044 |
| **TOTAL** | **110,985** | **121,751** | **128,085** |

## GENERAL PROVISIONS - THE JUDICIARY

Sec. 301. Appropriations and authorizations made in this title which are available for salaries and expenses shall be available for services as authorized by 5 U.S.C. 3109.

Sec. 302. Not to exceed 5 percent of any appropriation made available for the current fiscal year for the Judiciary in this Act may be transferred between such appropriations, but no such appropriation, except "Courts of Appeals, District Courts, and Other Judicial Services, Defender Services" and "Courts of Appeals, District Courts, and Other Judicial Services, Fees of Jurors and Commissioners", shall be increased by more than 10 percent by any such transfers: Provided, That any transfer pursuant to this section shall be treated as a reprogramming of funds under sections 604 and 608 of this Act and shall not be available for obligation or expenditure except in compliance with the procedures set forth in section 608.

Sec. 303. Notwithstanding any other provision of law, the salaries and expenses appropriation for "Courts of Appeals, District Courts, and Other Judicial Services" shall be available for official reception and representation expenses of the Judicial Conference of the United States: Provided, That such available funds shall not exceed $11,000 and shall be administered by the Director of the Administrative Office of the United States Courts in the capacity as Secretary of the Judicial Conference.

Sec. 304. Within 90 days after the date of the enactment of this Act, the Administrative Office of the U.S. Courts shall submit to the Committees on Appropriations a comprehensive financial plan for the Judiciary allocating all sources of available funds including appropriations, fee collections, and carryover balances, to include a separate and detailed plan for the Judiciary

Information Technology Fund, which will establish the baseline for application of reprogramming and transfer authorities for the current fiscal year.

Sec. 305. Section 3314(a) of title 40, United States Code, shall be applied by substituting "Federal" for "executive" each place it appears.

Sec. 306. In accordance with 28 U.S.C. 561-569, and notwithstanding any other provision of law, the United States Marshals Service shall provide, for such courthouses as its Director may designate in consultation with the Director of the Administrative Office of the United States Courts, for purposes of a pilot program, the security services that 40 U.S.C. 1315 authorizes the Department of Homeland Security to provide, except for the services specified in 40 U.S.C. 1315(b)(2)(E). For building-specific security services at these courthouses, the Director of the Administrative Office of the United States Courts shall reimburse the United States Marshals Service rather than the Department of Homeland Security.

This title may be cited as the "Judiciary Appropriations Act, [2011] 2012".

14.1