# Exhibit F

# FINANCIAL SERVICES AND GENERAL GOVERNMENT APPROPRIATIONS FOR 2011

## HEARINGS

BEFORE A

SUBCOMMITTEE OF THE

COMMITTEE ON APPROPRIATIONS

HOUSE OF REPRESENTATIVES

ONE HUNDRED ELEVENTH CONGRESS

SECOND SESSION

SUBCOMMITTEE ON FINANCIAL SERVICES AND GENERAL GOVERNMENT APPROPRIATIONS

**JOSÉ E. SERRANO, New York, *Chairman***

DEBBIE WASSERMAN SCHULTZ, Florida
ROSA L. DELAURO, Connecticut
CHAKA FATTAH, Pennsylvania
BARBARA LEE, California
ADAM SCHIFF, California
STEVE ISRAEL, New York
TIM RYAN, Ohio

JO ANN EMERSON, Missouri
JOHN ABNEY CULBERSON, Texas
MARK STEVEN KIRK, Illinois
ANDER CRENSHAW, Florida

NOTE Under Committee Rules, Mr Obey, as Chairman of the Full Committee, and Mr Lewis, as Ranking Minority Member of the Full Committee, are authorized to sit as Members of all Subcommittees

LEE PRICE, BOB BONNER, ANGELA OHM, and ARIANA SARAR
*Subcommittee Staff*

## PART 2

## FY 2011 BUDGET JUSTIFICATIONS

| | Page |
|---|---|
| **Executive Office of the President** | **1** |
| **The Judiciary** | **269** |

U S. GOVERNMENT PRINTING OFFICE

54–737 WASHINGTON : 2010

# The Judiciary

# Fiscal Year 2011

# Congressional Budget Summary

PREPARED BY
THE ADMINISTRATIVE OFFICE OF THE U.S. COURTS
WASHINGTON, DC
February 2010

# FOREWORD

*Overview*

The Judicial Conference thanks Congress for its continuing support of the Judiciary and remains grateful for the level of funding provided for fiscal year 2010. The Judiciary's fiscal year 2011 budget request represents a modest increase that the Judicial Conference believes is the minimum necessary to keep up with increasing case filings across all areas and other legislative changes which significantly impact workload throughout the Judiciary. In recent years, immigration and drug offenses along the Southwest Border have dominated prosecutions. Child pornography and other sex offenses, however, represent a fast-growing portion of the Judiciary's caseload. Additionally, fraud cases are expected to increase, exposing high profile Ponzi schemes and securities fraud. The availability of adequate resources continues to be critical to the Judiciary's ability to respond to its workload demands.

The fiscal year 2011 request includes an additional $6 million to provide certain reentry services for persons released from federal custody as provided for in the Second Chance Act of 2007. The post-conviction supervision population continues to grow with increasing numbers of inmates being released by the Bureau of Prisons to begin supervision terms. The Judiciary is committed to the goal of reducing recidivism by employing practices that have been validated through empirical evidence and are cost effective. To maximize the use of limited resources, we want to ensure that what we are doing actually produces the outcomes we are seeking. To that end, the Judicial Conference Committee on Criminal Law commissioned a study by the Federal Judicial Center to assess the operational aspects, outcomes, and cost-effectiveness of the various federal reentry court programs that have sprung up across the nation. The hope is that such a study will reveal effective approaches that can be shared with other courts and will identify the current and future resource implications of such programs.

Bankruptcy filings continue to increase, nearing levels that preceded implementation of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). In addition, many courts are experiencing significant increases in the number of pro se debtors. Bankruptcy courts have employed innovative procedures to manage the growing pace of case filings and to communicate effectively with debtors attempting to navigate through this highly specialized area of the law without the assistance of counsel. To accommodate this workload, some courts have adjusted staff hours, converted administrative staff to case administrators, and worked with bar associations to sponsor pro se help desks. Courts have also leveraged technology to increase their efficiency in handling the burgeoning workload. Court-developed software is being used to automate court calendars, collect and account for filing fees,

pay trustees, and streamline processing of court orders. Bankruptcy filings are not limited to individuals. An increased number of businesses filed bankruptcy proceedings during 2009. The most notable among the recent corporate bankruptcies are General Motors and Chrysler. These auto industry filings created job losses and benefit cuts for the company's retirees and particularly affected automobile dealerships, parts suppliers, and investors. The continued struggling economy and the likelihood of further increases in bankruptcy filings indicate a need for additional resources for the Judiciary.

In addition to resources for workload increases, the Judiciary's request includes an additional $25 million investment in a multi-year effort to replace older, less efficient telecommunications systems in the courts and to make accompanying upgrades to the data communication network with a focus on converged services (combining voice, video, and data traffic over a single, secure network). In light of the efforts to define and consolidate applications and the implementation of a new managed network, the Judiciary plans to develop viable alternatives for more cost-effective service models applicable to the Case Management/Electronic Case Files system. Additionally, modernization efforts continue for the Judiciary's Financial Accounting System for Tomorrow (FAS4T) with an integration of the courts' and the Administrative Office accounting systems, reconfiguration of FAS4T, and implementation of an internal controls reporting tool.

A total of $71 million is requested to fund security systems and equipment in fiscal year 2011, a net increase of $10 million over fiscal year 2010 levels. The Judiciary must keep pace with the changing nature of the threat to federal courthouses while maintaining a proper balance between ensuring an open-court system and having secure court facilities. This is a challenging task given the increasing number of threats against the courts. There has been a recent surge in threats to court staff and probation officers along the Southwest Border, plus the courts are having to deal with a number of high-threat trials.

Finally, the Judiciary continues to emphasize the importance of attracting qualified counsel for its defender services program. The Judiciary is appreciative of the $125 per hour non-capital panel attorney rate provided in fiscal year 2010 and believes we are moving in the right direction to ensure continued quality representations. The Judiciary is hopeful that Congress will build on that rate in fiscal year 2011 and provide the statutorily authorized hourly rate of $141. The $141 rate keeps pace with inflation and is necessary to effect a meaningful change in the willingness of qualified attorneys to accept more non-capital Criminal Justice Act appointments.

The Judicial Conference continues its commitment to cost containment, and will attempt to identify new avenues for savings and cost avoidance. This effort is a high priority – the Judiciary wants to do its part to help reduce the federal budget deficit by developing new initiatives that are essential to continue to slow the growth in budgetary requirements. The Judicial Conference believes that sustained efforts will continue

to position the Judiciary for uncertain and more difficult budget climates in the future. Cost containment allows the Judiciary to state that it is requesting what is necessary to perform its constitutional and statutory responsibilities.

The Judiciary's fiscal year 2011 budget request of $7.3 billion is summarized in the following pages. It represents the Judiciary's focused effort to balance the requirements of justice with the unprecedented fiscal realities facing Congress. A more detailed description of the Judiciary's fiscal year 2011 request can be found in *The Judiciary, Budget Estimates for Fiscal Year 2011, Congressional Submission*.

Julia S. Gibbons
United States Circuit Judge
for the Sixth Circuit Court of Appeals
Chair, Budget Committee of the
Judicial Conference of the United States

James C. Duff
Director, Administrative Office
of the United States Courts
Secretary, Judicial Conference of the United States

TABLE OF CONTENTS

Page

**Foreword** . . . . . 1

**Overview of the Judiciary** . . . . . 1

**Fiscal Year 2011 Budget Summary - Details of Request** . . . . . 5
- Appropriation Language Changes . . . . . 8
- General Provision Changes . . . . . 8

**Summary Tables**
- Judiciary Appropriation Funding . . . . . 9
- Summary of FTE for FY 2009 - FY 2011 . . . . . 10
- FY 2011 Summary of Requested Changes . . . . . 11
- Outlays for FY 2009 - FY 2011 . . . . . 12

**Fiscal Year 2011 Budget Request Summaries by Appropriation**
- Supreme Court of the United States
  - Salaries and Expenses . . . . . 15
  - Care of the Building and Grounds . . . . . 17
- United States Court of Appeals for the Federal Circuit . . . . . 21
- United States Court of International Trade . . . . . 25
- Courts of Appeals, District Courts, and Other Judicial Services
  - Summary of FY 2011 Budget Request . . . . . 27
    - FY 2011 Summary of Requested Changes . . . . . 28
    - FY 2011 Appropriations Increases Pie Chart . . . . . 29
    - FY 2011 Appropriations Pie Chart . . . . . 30
  - Salaries and Expenses . . . . . 31
  - Defender Services . . . . . 39
  - Fees of Jurors and Commissioners . . . . . 43
  - Court Security . . . . . 47
- Administrative Office of the United States Courts . . . . . 53
- Federal Judicial Center . . . . . 57
- Payments to Judiciary Trust Funds . . . . . 59
- United States Sentencing Commission . . . . . 61

# Overview of The Judiciary

The Federal Judiciary
United States Supreme Court
U.S. Courts of Appeals
12 Regional Circuit Courts of Appeals
1 U.S. Court of Appeals for the Federal Circuit
Trial Courts
U S District Courts
U.S Bankruptcy Courts
U.S. Court of International Trade
U.S Court of Federal Claims
Other Judiciary Entities/Programs
Probation and Pretrial Services
Defender Services
Court Security
Fees of Jurors and Commissioners
Administrative Office of the U.S Courts
Federal Judicial Center
Judiciary Trust Funds
United States Sentencing Commission

The organization of the judiciary, the district and circuit boundaries, the places of holding court, and the number of federal judges are established by laws passed by Congress and signed by the President The number of federal judges in each district and in the courts of appeals is authorized by Congress on the basis of workload

In addition to the adjudication of cases, other related functions, such as the provision of criminal defense services and the supervision of offenders, are prescribed by statute. The following sections provide a brief overview of the work of the courts and other related activities of the Judicial Branch.

**United States Supreme Court**

The United States Supreme Court consists of nine justices, one of whom is appointed as Chief Justice of the United States The Supreme Court is the final arbiter in the federal court system.

**United States Courts of Appeals**

There are 13 courts of appeals and 179 authorized appellate court judgeships nationwide. Twelve of the courts of appeals have jurisdiction over cases within a regional area or "circuit." The twelve regional courts of appeals review cases from the United States district courts and the United States Tax Court, and orders and decisions from a number of federal administrative agencies

**The United States Court of Appeals for the Federal Circuit** has exclusive national jurisdiction over a large number of diverse subject areas, including international trade, government contracts, patents, trademarks, certain money claims against the

United States government, federal personnel, and veterans' benefits. Appeals to the court come from all 94 federal district courts, as well as the United States Court of Federal Claims, the United States Court of International Trade, and the United States Court of Appeals for Veterans' Claims.

**United States District Courts**

There are 94 district judicial courts in the 50 states, the District of Columbia, the Commonwealth of Puerto Rico, and the territories of Guam, the U.S. Virgin Islands and the Northern Mariana Islands. The U.S. District Courts are the courts of general jurisdiction in the federal court system, and most federal cases are initially tried and decided in these courts. There are 678 authorized district court judgeships nationwide.

The Federal Magistrates Act of 1968 created the office of magistrate judge to assist the district court judges. Magistrate judges are non-Article III judges appointed by the district judges, and they serve for a term of years rather than a lifetime appointment. Full-time magistrate judges serve a term of eight years and may be reappointed.

**United States Bankruptcy Courts**

The bankruptcy courts are separate units of the district courts. Federal courts have exclusive jurisdiction over bankruptcy cases. This means that a bankruptcy case cannot be filed in a state court. United States bankruptcy judges are non-Article III judges appointed by the courts of appeals for a term of years rather than a lifetime appointment. They serve for a term of 14 years and may be reappointed.

**United States Court of International Trade**

The Court of International Trade, with nine Article III judges, has exclusive nationwide jurisdiction of civil actions against the United States, its agencies and officers, and certain civil actions brought by the United States, arising out of import transactions and the administration and enforcement of the federal customs and international trade laws.

**United States Court of Federal Claims**

The Court of Federal Claims has nationwide jurisdiction over certain types of claims against the federal government. Its 16 judges are appointed for a term of 15 years by the President with the advice and consent of the Senate. Judges appointed to the Court of Federal Claims are authorized under Article I of the constitution and do not have the tenure and salary protections of Article III judges.

**Probation and Pretrial Services**

Federal probation and pretrial services officers protect the public through the investigation and supervision of defendants and offenders within the federal criminal justice system. A pretrial services officer supervises defendants awaiting trial who are released into our communities and provides a source of information upon which the court can determine conditions of release or detentions while criminal cases are pending adjudication. In support of sentencing determinations, which require both uniformity of practice and attention to individual circumstances, probation officers provide the court with reliable information concerning the offender, the victim, and the offense committed, as well as an impartial application of the sentencing

guidelines. Probation officers supervise offenders sentenced to probation as well as offenders coming out of federal prison who are required to serve a term of supervised release.

**Defender Services**

The federal judiciary oversees and administers the federal defender and appointed counsel program, which provides legal representation and other services to persons financially unable to obtain counsel in criminal and related matters in federal court. The Sixth Amendment to the Constitution guarantees that "[i]n all criminal prosecutions the accused shall enjoy the right...to have the assistance of counsel for his defense." The Criminal Justice Act provides that courts shall appoint counsel from federal public and community defender organizations or from a panel of private attorneys ("panel attorneys") established by the court.

**Court Security**

The judiciary's Court Security appropriation funds protective guard services and security systems and equipment for United States courthouses and other facilities housing federal court operations. These services are contracted for and managed by the United States Marshals Service, with additional guard services provided by the Federal Protective Service.

**Fees of Jurors and Commissioners**

The judiciary receives funding to provide for the statutory fees and allowances of federal grand and petit jurors and for the compensation of land commissioners.

**Administrative Office of the U.S. Courts**

The Administrative Office of the U.S. Courts is the central support entity for the judicial branch. It has management oversight of the court security program, the probation and pretrial services program, and the defender services program. It supports the Judicial Conference of the United States in determining judiciary policies; develops new methods, systems, and programs for conducting the business of the federal courts efficiently and economically; develops and supports application of technology; collects and analyzes statistics on the business of the federal courts for accurate planning and decisions about resource needs; provides financial management services and personnel and payroll support; and conducts audits and reviews to ensure the continued quality and integrity of federal court operations.

**Federal Judicial Center**

The Federal Judicial Center is the judiciary's research and education agency. The Center undertakes research and evaluation of judicial operations and procedures for both the committees of the Judicial Conference and the courts themselves. It provides judges, court personnel, and others orientation and continuing education and training through seminars; curriculum units for in-court use; monographs and manuals; and audio, video, and interactive media programs.

**Payment to Judiciary Trust Funds**

This appropriation finances annuity payments to retired bankruptcy judges and magistrate judges, U.S. Court of Federal Claims judges, and spouses and dependent children of deceased judicial officers.

**U.S. Sentencing Commission**

The U.S. Sentencing Commission promulgates sentencing policies, practices, and guidelines for the federal criminal justice system. The Chair, three Vice Chairs, and three other voting commissioners are appointed by the President with the advice and consent of the Senate.

# Budget Summary - Details of Request

The judiciary's appropriation request for fiscal year 2011 totals $7,329,485,000 an increase of $468,740,000, or 6.8 percent over the fiscal year 2010 enacted appropriations. The fiscal year 2011 request provides for an additional 1,137 FTE to meet critical workload requirements, an increase of 3.3 percent over the 34,663 FTE funded in 2010.

***Adjustments to Base***

$385.3 million, or 82.2 percent of the $468.7 million total increase requested, will provide for pay adjustments, inflation and other adjustments to base necessary to maintain current services.

Of these $385.3 million in base adjustments:

1. An increase of $172.3 million (44.7 percent of the base adjustments) will provide for inflationary pay and benefit rate increases, including the annualization of fiscal year 2010 pay adjustments, expected January 2011 pay adjustments, changes in health benefit premiums, changes in benefit costs for both judges and supporting personnel, cost-of-living rate increases for panel attorneys, and a wage rate adjustment for court security officers.

2. An increase of $41.5 million (10.8 percent of base adjustments) will provide for the annualization of new staff and court security officers expected to be hired in fiscal year 2010 and new court security officers in fiscal year 2011.

3. An increase of $39.0 million (10.1 percent of base adjustments) is requested for the annualization of new space delivered in fiscal year 2010 the cost of new space expected to be delivered in fiscal year 2011, and space related inflation.

4. An increase of $28.6 million (7 4 percent of base adjustments) will provide for the cost of uncontrollable workload changes expected in the Defender Services account.

5. An increase of $26.8 million (7.0 percent of base adjustments) will provide for inflationary increases in non-pay categories using the government wide inflation factor of 1.1 percent.

6. An increase of $22.1 million (5.7 percent of base adjustments) will provide for additional requirements for high-threat trials anticipated in fiscal year 2011.

7. An increase of $19.7 million (5.1 percent of base adjustments) is necessary to replace non-appropriated sources of funds used to support base requirements in fiscal year 2010 with direct appropriations. In fiscal year 2011, the judiciary expects fewer non-appropriated funds (current year fee collections and prior year unencumbered carryforward balances) will be available than were available in fiscal year 2010. If the judiciary's base appropriation is not adjusted to offset the loss in non-appropriated funds, reductions would have to be made in court operations, and court security systems and equipment. The judiciary will keep the Appropriations Subcommittees informed of any changes in these estimates.

8. An increase of $13.0 million (3.4 percent of base adjustments) is associated with increases in the number of senior judges.

9. An increase of $9.8 million (2.5 percent of base adjustments) is requested for adjustments above the fiscal year 2010 funded base for court security systems and equipment.

10. An increase of $8.0 million (2.1 percent of base adjustments) is requested for payments to the Judiciary Retirement Trust Funds.

11. An increase of $5.4 million (1.4 percent of base adjustments) will provide for estimated increases in Federal Protective Service security charges.

12. An increase of $4.0 million (1.0 percent of base adjustment) is associated with an increase in the number of filled Article III judgeships.

13. An increase of $3.8 million (1.0 percent of base adjustments) will provide for base increases necessary to support, maintain, and continue investments in the judiciary's information technology program.

14. An increase of $0.2 million (0.1 percent of base adjustments) is associated with a projected net change in available jurors.

15. A net decrease of $8.9 million (-2.3 percent of base adjustments) is associated with non-recurring costs for expenses related to the Supreme Court's building maintenance and modernization projects, filled fiscal year 2011 judgeships, a decrease to the reimbursement from the Vaccine Injury Trust Fund, and one-time costs in the Defender Services and Court Security accounts.

***Program Increases***

The remaining $83.4 million, or 17.8 percent, of the total increase is requested for program enhancements and workload-related needs.

Of these $83.4 million in program increases:

16. An increase of $40.7 million (48.8 percent of program enhancements) will provide for additional support staff and associated costs. This increase is for staffing adjustments due to the most critical workload (483 FTE).

17. An increase of $26.1 million (31.3 percent of program enhancements) will provide for telecommunications infrastructure and information technology enhancements.

18. An increase of $6.3 million (7.5 percent of program enhancements) will provide for the Supreme Court's roof system repairs.

19. An increase of $4.8 million (5.7 percent of program enhancements) will provide for an increase in the non-capital panel attorney rate to the statutorily authorized rate of $141 per hour.

20. An increase of $3.0 million (5.7 percent of program enhancements) will provide for 6 additional magistrate judges and associated staff (27 FTE) in districts with growing caseload.

21. An increase of $0.9 million (1.1 percent of program enhancements) will provide for necessary investments in court security, such as a national contract for vehicle barrier maintenance, and a facial recognition pilot program.

22. An increase of $0.9 million (1.1 percent of program enhancements) will provide for twelve new police offices (9 FTE) and support expenses at the Supreme Court.

23. An increase of $0.4 million (0.5 percent of program enhancements) will provide for education and training program enhancements at the Federal Judicial Center.

24. An increase of $0.3 million (0.4 percent of program enhancements) will provide for the start-up costs associated with one new defender organization.

The tables on pages 9 through 12, and the individual account summaries, provide detailed information on the judiciary's fiscal year 2011 request.

**Appropriation Language Changes**

The judiciary proposes the following changes to the appropriation language for fiscal year 2011:

*Court of Appeals, District Courts, and Other Judicial Services*
Defender Services

There are no changes in appropriations language, however, updates are made to specific citation references to be most accurate and uniform.

**General Provision Changes**

**The judiciary proposed new language in the following general provisions:**

New Section *307*: The proposed language would allow federal judges to receive the same automatic annual cost-of-living adjustments, currently authorized by section 461 of title 28 of the United States Code, that members of Congress are authorized to receive.

**The judiciary proposes re-authorization or extension of the following general provisions:**

Section 305: The proposed language would continue to give the Judicial Branch the same authority as the Executive Branch to contract directly for space alteration projects not exceeding $100,000 without having to go through GSA.

Old Section 306: The proposed language re-authorizes the pilot program for the U.S. Marshals Service to provide perimeter security at a select number of primary courthouses for fiscal year 2011.

**The judiciary proposes to delete the following general provisions:**

Old Section 307: The language was enacted on December 16, 2009 (P.L 111-117, the Consolidated Appropriations Act, 2010), because Congress did not enact a Judgeship bill in 2009 that would have extended these temporary judgeships. It is proposed for deletion because the Judiciary is hopeful a Judgeship bill will be enacted during fiscal year 2010.

## Judiciary Appropriation Funding ($000)

| Appropriation Account | FY 2009 Actual | | | FY 2010 Available | | | FY 2011 Request | | |
|---|---|---|---|---|---|---|---|---|---|
| | Mandatory[1] | Discretionary[2] | Total | Mandatory[3] | Discretionary | Total | Mandatory | Discretionary[4] | Total |
| U.S. Supreme Court | | | | | | | | | |
| Salaries & Expenses | $2,119 | $67,658 | $69,777 | $2,166 | $71,868 | $74,034 | $2,197 | $75,561 | $77,758 |
| Care of the Building and Grounds | $0 | $18,447 | $18,447 | $0 | $14,525 | $14,525 | $0 | $14,788 | $14,788 |
| U. S. Court of Appeals for the Federal Circuit | $2,356 | $28,028 | $30,384 | $2,491 | $30,069 | $32,560 | $2,502 | $33,357 | $35,859 |
| U.S. Court of International Trade | $1,696 | $17,909 | $19,605 | $1,715 | $19,635 | $21,350 | $1,851 | $20,417 | $22,268 |
| Courts of Appeals, District Courts & Other Judicial Services | | | | | | | | | |
| Salaries & Expenses Direct | $323,911 | $4,487,458 | $4,811,369 | $340,000 | $4,671,018 | $5,011,018 | $332,565 | $4,977,216 | $5,309,781 |
| *Vaccine Injury Trust Fund* | $0 | $4,253 | $4,253 | $0 | $5,428 | $5,428 | $0 | $4,785 | $4,785 |
| *Salaries and Expenses Total* | $323,911 | $4,491,711 | $4,815,622 | $340,000 | $4,676,446 | $5,016,446 | $332,565 | $4,982,113 | $5,314,566 |
| Defender Services | $0 | $849,400 | $849,400 | $0 | $977,748 | $977,748 | $0 | $1,081,195 | $1,081,195 |
| Fees of Jurors & Commissioners | $0 | $62,206 | $62,206 | $0 | $61,861 | $61,861 | $0 | $64,108 | $64,108 |
| Court Security | $0 | $428,858 | $428,858 | $0 | $452,607 | $452,607 | $0 | $495,038 | $495,038 |
| Subtotal, CADCOJS | $323,911 | $5,832,175 | $6,156,086 | $340,000 | $6,168,662 | $6,508,662 | $332,565 | $6,622,454 | $6,954,907 |
| Administrative Office of the U.S. Courts | $0 | $79,049 | $79,049 | $0 | $83,075 | $83,075 | $0 | $87,255 | $87,255 |
| Federal Judicial Center | $0 | $25,725 | $25,725 | $0 | $27,328 | $27,328 | $0 | $28,694 | $28,694 |
| Judiciary Retirement Funds | $76,140 | $0 | $76,140 | $82,374 | $0 | $82,374 | $90,361 | $0 | $90,361 |
| U.S. Sentencing Commission | $0 | $16,225 | $16,225 | $0 | $16,837 | $16,837 | $0 | $17,595 | $17,595 |
| *Direct* | $406,222 | $6,080,963 | $6,487,185 | $428,746 | $6,426,571 | $6,855,317 | $429,476 | $6,895,224 | $7,324,700 |
| *Vaccine Injury Trust Fund* | $0 | $4,253 | $4,253 | $0 | $5,428 | $5,428 | $0 | $4,785 | $4,785 |
| *Total* | $406,222 | $6,085,216 | $6,491,438 | $428,746 | $6,431,999 | $6,860,745 | $429,476 | $6,900,009 | $7,329,485 |

[1] For FY 2009, the enacted mandatory level is $406,222 and the actual mandatory level is $402,103

[2] FY 2009 discretionary appropriations includes $10.0 million in the Salaries and Expenses total in emergency appropriations from the War Supplemental

[3] FY 2010 mandatory amounts reflect the enacted appropriation level

[4] FY 2011 discretionary amounts include a fiscal year 2011 cost-of-living adjustment for judges.

**The Judiciary**
**Summary of FTE**

| Appropriation | FY 2009 Actual | FY 2010 Available | FY 2011 Request | Increase over FY 2010 |
|---|---|---|---|---|
| **Supreme Court** | **523** | **533** | **543** | **10** |
| *Salaries and Expenses* | *480* | *485* | *494* | *9* |
| *Building and Grounds* | *43* | *48* | *49* | *1* |
| **Court of Appeals for the Federal Circuit** | **142** | **154** | **163** | **9** |
| **Court of International Trade** | **76** | **80** | **80** | **0** |
| **Courts of Appeals, District Courts, and other Judicial Services** | **32,185** | **33,009** | **34,123** | **1,114** |
| *Salaries and Expenses* | *29,569* | *30,203* | *31,201* | *998* |
| *Defender Services* | *2,568* | *2,736* | *2,849* | *113* |
| *Fees of Jurors & Commissioners* | *0* | *0* | *0* | *0* |
| *Court Security* | *48* | *70* | *73* | *3* |
| **Administrative Office of the United States Courts** | **631** | **639** | **641** | **2** |
| **Federal Judicial Center** | **141** | **138** | **140** | **2** |
| **Judicial Retirement Funds** | **0** | **0** | **0** | **0** |
| **United States Sentencing Commission** | **103** | **110** | **110** | **0** |
| **Total, Judiciary**[1] | **33,801** | **34,663** | **35,800** | **1,137** |

[1] The Judiciary totals do not reflect reimbursable positions (277 in FY 2009; 283 in FY 2010; and 286 in FY 2011).

| FY 2011 Summary of Requested Changes | Supreme Court FTE | Supreme Court ($000) | Federal Circuit FTE | Federal Circuit ($000) | International Trade FTE | International Trade ($000) | COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES: Salaries and Expenses FTE | Salaries and Expenses ($000) | Defender Services FTE | Defender Services ($000) | Fees of Jurors and Commissioners ($000) | Court Security FTE | Court Security ($000) | Subtotal FTEs | Subtotal ($000) | Administrative Office FTE | Administrative Office ($000) | Fed. Judicial Center FTE | Fed. Judicial Center ($000) | Judiciary Trust Funds ($000) | Sentencing Commission FTE | Sentencing Commission ($000) | Total Judiciary[1] FTE | Total Judiciary[1] ($000) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FY 2010 Enacted Appropriation | 533 | 88,559 | 154 | 32,560 | 80 | 21,350 | 30,203 | 5,011,018 | 2,736 | 977,748 | 61,861 | 70 | 452,607 | 33,009 | 6,503,234 | 639 | 81,075 | 138 | 27,328 | 82,374 | 110 | 16,837 | 34,663 | 6,855,317 |
| FY 2010 Vaccine Injury Trust Fund | | | | | | | | 5,428 | | | | | | | 5,428 | | | | | | | | | 5,428 |
| **FY 2010 Available Appropriation** | **533** | **88,559** | **154** | **32,560** | **80** | **21,350** | **30,203** | **5,016,446** | **2,736** | **977,748** | **61,861** | **70** | **452,607** | **33,009** | **6,508,662** | **639** | **81,075** | **138** | **27,328** | **82,374** | **110** | **16,837** | **34,663** | **6,860,745** |
| **FY 2011 Adjustments to Base** | | | | | | | | | | | | | | | | | | | | | | | | |
| Judges | | | | | | | | | | | | | | | | | | | | | | | | |
| Pay and benefit cost adjustments | | 23 | | 35 | | 23 | | 6,883 | | | | | | | 6,883 | | | | | | | | | 6,964 |
| Additional senior judges | | | | | | | 108 | 13,029 | | | | | | 108 | 13,029 | | | | | | | | 108 | 13,029 |
| Increase in average number of filled Article III judgeships | | | | | | | 32 | 4,024 | | | | | | 32 | 4,024 | | | | | | | | 32 | 4,024 |
| Non-recurring costs of new 2010 judges | | | | | | | | (874) | | | | | | | (874) | | | | | | | | | (874) |
| Payments to judiciary retirement trust funds | | | | | | | | | | | | | | | | | | | | 7,987 | | | | 7,987 |
| Court Personnel | | | | | | | | | | | | | | | | | | | | | | | | |
| Pay and benefit cost adjustments | | 2,611 | | 458 | | | | 96,997 | | 13,182 | - | | 278 | | 110,457 | | 3,717 | | 667 | | | 621 | | 118,531 |
| Pay adjustments for panel attorneys (to $126/hour and $179/hour) | | | | | | 329 | | | | 33,151 | | | | | 33,151 | | - | | | | | | | 33,480 |
| Other Changes | | | | | | | | | | | | | | | | | | | | | | | | |
| Reduction for non-recurring costs | | (6,200) | | | | | | | | (300) | | | (885) | | (1,185) | | - | | | - | | | | (7,385) |
| Financing adj. necessary to maintain current services | | | | | | | | 18,099 | | (3,633) | 451 | | 5,000 | | 19,917 | | (219) | | | | | | | 19,698 |
| Inflation (non-space-related) | | 282 | | 80 | | 284 | | 23,697 | | 1,689 | 442 | | 64 | | 25,892 | | 65 | | 94 | | | 137 | | 26,834 |
| Vaccine Injury Trust Fund adjustment | | | | | | | | (643) | | | | | | | (643) | | | | | | | | | (643) |
| Space related costs (includes inflation for space rental rates) | | | | 787 | | 228 | | 36,698 | | 1,174 | | | 140 | | 38,012 | | | | | | | | | 39,027 |
| Information technology adjustments for ongoing operations | | | | | | | | 3,473 | | | | | | | 3,473 | | 330 | | | | | | | 3,803 |
| Annualization of new FY 2010 positions | | | 3 | 377 | | | 360 | 29,097 | 54 | 8,910 | | | | 414 | 38,007 | | | 2 | 195 | | | | 419 | 38,579 |
| Defender Services workload increase | | | | | | | | | 59 | 28,598 | | | | 59 | 28,598 | | | | | | | | 59 | 28,598 |
| Change in available jurors | | | | | | | | | | | 174 | | | | 174 | | | | | | | | | 174 |
| FPS security service charges | | | | | | 54 | | | | | | | 5,385 | | 5,385 | | | | | | | | | 5,439 |
| FY 2011 court security officer wage adjustments | | | | | | | | | | | | | 13,295 | | 13,295 | | | | | | | | | 13,295 |
| Annualization of new FY 2010 court security officers | | | | | | | | | | | | | 832 | | 832 | | | | | | | | | 832 |
| Additional court security officers in FY 2011 | | | | | | | | | | | | | 2,071 | | 2,071 | | | | | | | | | 2,071 |
| Adjustments to base for security systems and equipment | | | | | | | | | | | | | 9,774 | | 9,774 | | | | | | | | | 9,774 |
| Additional requirements for high-threat trials | | | | | | | | | | 15,600 | 1,180 | | 5,285 | | 22,065 | | | | | | | | | 22,065 |
| Subtotal, FY 2011 Adjustments to Base | | **(3,284)** | **3** | **1,737** | | **918** | **500** | **230,480** | 113 | **98,371** | **2,247** | - | **41,239** | **613** | 372,337 | | **3,893** | **2** | **956** | **7,987** | - | **758** | **618** | **385,382** |
| **FY 2011 Adjusted Base** | 533 | 85,275 | 157 | 34,297 | 80 | 22,268 | 30,703 | 5,246,926 | 2,849 | 1,076,119 | 64,108 | 70 | 493,846 | 33,622 | 6,880,999 | 639 | 86,968 | 140 | 28,284 | 90,361 | 110 | 17,595 | 35,281 | 7,246,047 |
| **FY 2010 Program Increases** | | | | | | | | | | | | | | | | | | | | | | | | |
| Judges | | | | | | | | | | | | | | | | | | | | | | | | |
| Magistrate judges and staff | | | | | | | 27 | 2,961 | | | | | | 27 | 2,961 | | | | | | | | 27 | 2,961 |
| Court Personnel and Programs | | | | | | | | | | | | | | | | | | | | | | | | |
| New court support staff for workload increases | | | | | | | 471 | 39,679 | | | | | | 471 | 39,679 | | | | | | | | 471 | 39,679 |
| Telecommunications infrastructure enhancements | | | | | | | | 25,000 | | | | | | | 25,000 | | | | | | | | | 25,000 |
| Information technology enhancements | | | | 1,106 | | | | | | | | | | | | | | | | | | | | 1,106 |
| Increase in non-capital rate from $126 to $141 per hour | | | | | | | | | | 4,776 | | | | | 4,776 | | | | | | | | | 4,776 |
| New federal defender organization | | | | | | | | | | 300 | | | | | 300 | | | | | | | | | 300 |
| Five new judiciary funded USMS positions | | | | | | | | | | | | 3 | 309 | 3 | 309 | | | | | | | | 3 | 309 |
| National contract for vehicle barrier maintenance | | | | | | | | | | | | | 683 | | 683 | | | | | | | | | 683 |
| Facial recognition system (pilot) | | | | | | | | | | | | | 200 | | 200 | | | | | | | | | 200 |
| Twelve new police officers | 9 | 646 | | | | | | | | | | | | | | | | | | | | | 9 | 646 |
| Support expenses for new police officers | | 240 | | | | | | | | | | | | | - | | | | | | | | | 240 |
| Additional personnel | 1 | 85 | 3 | 340 | | | | | | | | | | | | 2 | 287 | | | | | | 6 | 712 |
| Roof system repairs | | 6,300 | | | | | | | | | | | | | | | | | | | | | | 6,300 |
| Education and training program enhancements | | | | | | | | | | | | | | | | | | | 410 | | | | | 410 |
| Internship program | | | 3 | 116 | | | | | | | | | | | | | | | | | | | 3 | 116 |
| Subtotal, FY 2011 Program Increases | **10** | **7,271** | **6** | **1,562** | - | | **498** | **67,640** | | **5,076** | - | **3** | **1,192** | **501** | **73,908** | **2** | **287** | | **410** | - | | | **519** | **83,438** |
| **Total Increases Requested, FY 2011** | 10 | 3,987 | 9 | 3,299 | | 918 | 998 | 298,120 | 113 | 103,447 | 2,247 | 3 | 42,431 | 1,114 | 446,245 | 2 | 4,180 | 2 | 1,366 | 7,987 | | 758 | 1,137 | 468,740 |
| **FY 2011 Appropriation Request** | **543** | **92,546** | **163** | **35,859** | **80** | **22,268** | **31,201** | **5,314,566** | **2,849** | **1,081,195** | **64,108** | **73** | **495,038** | **34,123** | **6,954,907** | **641** | **87,255** | **140** | **28,694** | **90,361** | **110** | **17,595** | **35,800** | **7,329,485** |

[1] The Judiciary FTE totals do not reflect reimbursable positions (283 in FY 2010 and 286 in FY 2011)

**THE JUDICIARY**

**Outlays - FY 2009 to FY 2011**
(Dollars in Thousands)

| Appropriation | FY 2009 | FY 2010 1/ | FY 2011 1/ | Outlay Spendout Rates YR 1 | YR 2 | YR 3 |
|---|---|---|---|---|---|---|
| Supreme Court | | | | | | |
| Discretionary | 63,612 | 69,404 | 74,865 | 80% | 20% | 0% |
| Mandatory | 2,119 | 2,174 | 2,197 | 100% | 0% | 0% |
| **Total, Salaries and Expenses** | **65,731** | **71,578** | **77,062** | | | |
| **Buildings and Grounds** | **24,631** | **24,679** | **24,588** | 68% | 12% | 20% |
| Court of Appeals for the Federal Circuit | | | | | | |
| Discretionary | 25,324 | 31,689 | 32,614 | 80% | 20% | 0% |
| Mandatory | 2,458 | 2,491 | 2,502 | 100% | 0% | 0% |
| **Total, Court of Appeals for the Federal Circuit** | **27,782** | **34,180** | **35,116** | | | |
| Court of International Trade | | | | | | |
| Discretionary | 17,652 | 20,124 | 20,596 | 95% | 5% | 0% |
| Mandatory | 1,696 | 1,845 | 1,851 | 100% | 0% | 0% |
| **Total, Court of International Trade** | **19,348** | **21,969** | **22,447** | | | |
| *Courts of Appeals, District Courts, and Other Judicial Services* | | | | | | |
| Salaries and Expenses - Discretionary | 4,459,497 | 4,831,348 | 4,961,168 | 93% | 7% | 0% |
| Salaries and Expenses - Mandatory | 319,689 | 325,284 | 332,565 | 100% | 0% | 0% |
| **Total, Salaries and Expenses** | **4,779,186** | **5,156,632** | **5,293,733** | | | |
| **Defender Services** | **888,525** | **988,146** | **1,078,287** | 97% | 3% | 0% |
| **Fees of Jurors & Commissioners** | **62,374** | **63,652** | **66,276** | 99 5% | 0 5% | 0% |
| **Court Security** | **410,197** | **453,510** | **479,390** | 63 3% | 36 7% | 0% |
| ***Total, Courts of Appeals, District Courts, and Other Judicial Services*** | **6,140,282** | **6,661,940** | **6,917,606** | | | |
| **Administrative Office of the United States Courts** | **81,625** | **82,686** | **86,780** | 94% | 6% | 0% |
| **Federal Judicial Center** | **25,123** | **26,857** | **27,394** | 95% | 5% | 0% |
| **Judicial Retirement Funds (MANDATORY)** | **76,140** | **82,374** | **90,361** | 100% | 0% | 0% |
| **United States Sentencing Commission** | **15,329** | **16,214** | **17,939** | 85% | 15% | 0% |
| Subtotal, Discretionary | 6,073,889 | 6,608,309 | 6,869,817 | | | |
| Subtotal, Mandatory | 402,103 | 414,168 | 429,476 | | | |
| **Total, Judiciary** | **6,475,992** | **7,022,477** | **7,299,293** | | | |

1/ Mandatory amounts for fiscal years 2010 and 2011 reflect planned outlay levels

# Fiscal Year 2011 Request

# Summary by Appropriation

## U.S. Supreme Court
## *Salaries and Expenses*

**FY 2011 Request - U. S. Supreme Court, Salaries and Expenses**

| | FTE | $(000) |
|---|---|---|
| **FY 2010 Enacted Appropriation** | 485 | 74,034 |
| **Adjustments to Base** | | 2,838 |
| **Program Increases:** | | |
| Twelve New Police Officer Positions | 9 | 646 |
| Support Expenses for New Police Officers | | 240 |
| **FY 2011 Appropriation** | **494** | **$77,758** |

### Budget Summary

The Supreme Court requests $77.8 million for its Salaries and Expenses account in fiscal year 2011, a 5.0 percent increase over the fiscal year 2010 enacted appropriation.

### Adjustments to Base

This request includes $2.8 million comprised of pay and benefits increases to maintain the fiscal year 2010 current services level and costs for communications, service agreements, and supplies.

### Program Increases

***1. Police Officers Positions: $646,000 FTE 9***

The Court is requesting $646,000 for twelve new police officer positions (9 FTE) funded for nine months. These additional police officers will be required to fully staff the six new posts that will be established when the entrances and driveways are opened due to the completion of the Court's modernization project, and to staff the new command center which is operational 24 hours a day, 7 days a week.

***2. Support Expenses for New Police Officers: $240,000***

The Court is requesting $240,000 to cover training, supplies, and equipment costs related to the 12 additional police officer positions.

**U.S. Supreme Court - Salaries and Expenses**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2009 Actual | FY 2010 Plan | FY 2011 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 51,831 | 58,246 | 61,494 | 3,248 |
| Rent, Communications and Utilities | 855 | 930 | 915 | (15) |
| Travel | 429 | 485 | 491 | 6 |
| Other | 14,460 | 14,373 | 14,858 | 485 |
| **Total Obligations** | **67,575** | **74,034** | **77,758** | **3,724** |
| Financing Adjustment | 2,202 | 0 | 0 | 0 |
| **Available Appropriation** | **69,777** | **74,034** | **77,758** | **3,724** |

# U.S. Supreme Court
## *Care of the Building and Grounds*

| **FY 2011 Request - U.S. Supreme Court, Care of the Building and Grounds** | | |
|---|---|---|
| | FTE | $(000) |
| **FY 2010 Enacted Appropriation** | 48 | 14,525 |
| **Adjustments to Base** | | (6,122) |
| **Program Increases:** | | |
| Maintenance mechanic supervisor | 0.5 | 48 |
| Building services coordinator | 0.5 | 37 |
| Roof system repairs | | 6,300 |
| **FY 2011 Appropriation** | **49** | **$14,788** |

**Budget Summary**

The Supreme Court requests $14.8 million for its Care of the Building and Grounds account in fiscal year 2011, a 1.8 percent increase over the fiscal year 2010 enacted appropriation. The fiscal year 2011 request includes an increase of 1 FTE above the fiscal year 2010 level. It also includes funding for the final phase to repair the roof of the Supreme Court building.

**Adjustments to Base**

The Supreme Court, Care of Building and Grounds, fiscal year 2011 budget request includes a net decrease of $6.1 million in adjustments to base, which includes an increase of $0.1 million for standard pay and other inflationary adjustments, and a decrease of $6.2 million for projects funded in fiscal year 2010.

**Program Increases**

***1. Maintenance Mechanic Supervisor Position:***
***$48,000*** ***FTE 0.5***

The Court requests $48,000 for a maintenance mechanic supervisor position. This position is needed to provide supervision of a newly established evening shift in support of additional and significant preventative maintenance services for all dynamic equipment in the pipefitting, HVAC, and electrical trade disciplines.

***2. Building Service Coordinator Position:***
***$37,000*** ***FTE 0.5***

The Court requests $37,000 for a building services coordinator position. This position is needed to support the Facilities Service Center.

3. ***Roof System Repairs: $6.3 million***

The requested increase of $6,300,000 provides funding for the final phase required to repair deteriorated roof components of the Supreme Court building. The estimated project cost of the roof system repairs totals $13,800,000.

**U.S. Supreme Court - Care of the Building and Grounds**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2009 Actual | FY 2010 Plan | FY 2011 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 3,500 | 3,841 | 3,948 | 107 |
| Rent, Communications and Utilities | 3,127 | 3,032 | 3,032 | 0 |
| Other | 8,610 | 11,317 | 12,360 | 1,043 |
| **Total Obligations** | **15,237** | **18,190** | **19,340** | **1,150** |
| Financing Adjustment | 3,210 | (3,665) | (4,552) | (887) |
| **Available Appropriation** | **18,447** | **14,525** | **14,788** | **263** |

# United States Court of Appeals for the Federal Circuit

| FY 2011 Request - Court of Appeals for the Federal Circuit | | |
|---|---|---|
| | FTE | $(000) |
| **FY 2010 Enacted Appropriation** | 154 | $32,560 |
| **Adjustments to Base** | 3 | 1,737 |
| **Program Increases:** | | |
| Five new positions | 3 | 340 |
| Information technology enhancements | | 1,106 |
| Internship program | 3 | 116 |
| **FY 2011 Appropriation** | **163** | **$35,859** |

### Budget Summary

The Court of Appeals for the Federal Circuit requests $35.9 million in fiscal year 2011, a 10.1 percent increase over the fiscal year 2010 enacted appropriation. This request continues the Court's efforts to keep up with its varied and growing subject-matter jurisdiction.

### Adjustments to Base

The Court's adjustments to base for fiscal year 2011 total $1.7 million to provide for standard pay and other inflationary adjustments, rental costs associated with GSA space, and to annualize 6 staff positions for senior judges (3 FTE) expected to be hired in fiscal year 2010.

### Program Increases

1. ***Five new positions: $340,000*** ***FTE 3***

The court requests $340,000 to fund five support staff positions in fiscal year 2011. These include a technical assistant, a staff attorney, a library technician, an information technology help desk assistant, and a mail room clerk/courtroom deputy. The requested amount will cover salaries and benefits for each position for six months in fiscal year 2011.

2. ***Information Technology Enhancements: $1.1 million***

*IT infrastructure equipment, maintenance and service for off-site leased space:* This request includes $130,000 to provide the necessary funding to support the information technology infrastructure requirements at the court's new off-site space for senior judges. New information technology infrastructure will be required to provide the same level of service and access to those existing services which are still located in the main building.

*Switch upgrade:* This request includes $626,000 to upgrade and replace the court's existing HP ProCurve switches with Cisco switches. The proposed Cisco network equipment is similar to that used by other courts and by the Administrative Office of the United States Courts. Aside from the opportunity to standardize the court's equipment with the rest of the judiciary, the Cisco equipment incorporates technologies and industry standards that have been developed in the three years since the existing HP switches were designed. The requested funds will enable the court to purchase and install new switches in fiscal year 2011.

*Contractual facilitator for conversion to CM/ECF:* This request includes $100,000 to hire a contractor to facilitate the court's transition to the case management/electronic case filing (CM/ECF) system already in use by the majority of courts throughout the judiciary. The court estimates that these contractor services will be critical to the successful implementation of the new software that would enable the court to automate its operations.

*Virtalization software:* This request includes $250,00 to purchase Virtualization Software (also known as VMware). VMware is the leading industry standard software for server virtualization and management. Virtualization would dramatically improve the efficiency and availability of resources and applications for the court.

***3. Internship program: $116,000 FTE 3***

The court requests $116,000 to fund six positions (3 FTE) and salaries to implement a formal internship program. The internship program's mission is to introduce local college and university students and recent graduates to the administrative functions of the Clerk's Office, the Office of the Senior Staff Attorney, the Circuit Library, the Administrative Services Office, and the Information Technology Office, as well as to provide these students and recent graduates with practical job experience for potential administrative careers in the judiciary.

**FY 2011 Request**
**U.S. Court of International Trade**

| | FTE | $(000) |
|---|---|---|
| **FY 2010 Enacted Appropriation** | **80** | **$21,350** |
| **Adjustments to Base** | | **918** |
| **FY 2011 Appropriation** | **80** | **$22,268** |

### Budget Summary

The Court of International Trade requests $22.3 million in fiscal year 2011, a 4.3 percent increase over the fiscal year 2010 enacted appropriation.

### Adjustments to Base

The Court's adjustments to base for fiscal year 2011 total $0.9 million for standard pay and other inflationary adjustments. The Court requests no program increases.

**U.S. Court of International Trade**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2009 Actual | FY 2010 Plan | FY 2011 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 8,877 | 9,790 | 10,142 | 352 |
| Rent, Communications and Utilities | 7,661 | 9,313 | 9,544 | 231 |
| Travel | 109 | 144 | 145 | 1 |
| Other | 2,704 | 2,743 | 2,721 | (22) |
| **Total Obligations** | **19,351** | **21,990** | **22,552** | **562** |
| Financing Adjustment | 254 | (640) | (284) | 356 |
| **Available Appropriation** | **19,605** | **21,350** | **22,268** | **918** |

# COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES

## Summary of the Fiscal Year 2011 Budget Request

The *Courts of Appeals, District Courts, and Other Judicial Services* accounts fund most of the day-to-day operations and activities of the federal courts. The four accounts under this heading include:

- **Salaries and Expenses**, which funds the operating costs of appellate, district and bankruptcy courts, and probation and pretrial services offices;
- **Defender Services**, which funds the necessary expenses to provide defense representation under the Criminal Justice Act (CJA) for persons financially unable to obtain defense counsel;
- **Fees of Jurors and Commissioners**, which funds the fees and allowances of grand and petit jurors, and the compensation of jury and land commissioners; and
- **Court Security**, which provides for the necessary expenses to provide protective guard services and security equipment for judiciary facilities.

### The Fiscal Year 2011 Budget Request

The Judicial Conference requests $6,954.9 million in appropriations in fiscal year 2011 for these four accounts, an increase of $446.2 (6.9 percent) over fiscal year 2010 enacted appropriations of $6,508.7 million. The following table details the fiscal year 2010 enacted appropriations and fiscal year 2011 requested appropriations levels for the four accounts.

The $446.2 million increase in appropriations includes funding for 1,114 additional FTE, and is comprised of standard adjustments to base totaling $372.3 million and 613 FTE, and program increases totaling $73.9 million and 501 FTE. The table on page 28 summarizes the requested changes for each account.

Appropriations for the *Courts of Appeals, District Courts, and Other Judicial Services*

| ($000) | FY 2010 Available Appropriation | FY 2011 Request | Increase over FY 2010 | % Change |
|---|---|---|---|---|
| Salaries and Expenses 1/ | $5,016,446 | $5,314,566 | $ 298,120 | 5.9% |
| Defender Services | $977,748 | $1,081,195 | $ 103,447 | 10.6% |
| Fees of Jurors | $61,861 | $64,108 | $ 2,247 | 3.6% |
| Court Security | $452,607 | $495,038 | $ 42,431 | 9.4% |
| **Total** | **$6,508,662** | **$6,954,907** | **$ 446,245** | **6.9%** |

1/ Salaries and Expenses includes funds from the Vaccine Injury Trust Fund.

**FY 2011 Summary of Requested Changes**

| | COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES | | | | | | | Total Court of Appeals, District Courts, and Other Judicial Services[1] | |
|---|---|---|---|---|---|---|---|---|---|
| | Salaries and Expenses | | Defender Services | | Fees of Jurors and Commissioners | Court Security | | | |
| | FTE | ($000) | FTE | ($000) | ($000) | FTE | ($000) | FTE | ($000) |
| FY 2010 Enacted Appropriation | 30,203 | 5,011,018 | 2,736 | 977,748 | 61,861 | 70 | 452,607 | 33,009 | 6,503,234 |
| FY 2010 Vaccine Injury Trust Fund | - | 5,428 | - | - | - | - | - | - | 5,428 |
| **FY 2010 Available Appropriation** | **30,203** | **5,016,446** | **2,736** | **977,748** | **61,861** | **70** | **451,607** | **33,009** | **6,508,662** |
| **FY 2011 Adjustments to Base** | | | | | | | | | |
| Judges. | | | | | | | | | |
| - Pay and benefit cost adjustments | - | 6,883 | - | - | - | - | - | - | 6,883 |
| - Additional senior judges | 108 | 13,029 | - | - | - | - | - | 108 | 13,029 |
| - Increase in average number of filled Article III judgeships | 32 | 4,024 | - | - | - | - | - | 32 | 4,024 |
| - Non-recurring costs of new 2010 judges | - | (874) | - | - | - | - | - | - | (874) |
| Court Personnel | | | | | | | | | |
| - Pay and benefit cost adjustments | - | 96,997 | - | 13,182 | - | - | 278 | - | 110,457 |
| - Pay adjustments for panel attorneys (to $126/hour and $179/hour) | - | - | - | 33,151 | - | - | - | - | 33,151 |
| Other Changes | | | | | | | | | |
| - Reduction for non-recurring costs | - | - | - | (300) | - | - | (885) | - | (1,185) |
| - Financing adj. necessary to maintain current services | - | 18,099 | - | (3,633) | 451 | - | 5,000 | - | 19,917 |
| - Inflation (non-space-related) | - | 23,697 | - | 1,689 | 442 | - | 64 | - | 25,892 |
| - Vaccine Injury Trust Fund adjustment | - | (643) | - | - | - | - | - | - | (643) |
| - Space related costs (includes inflation for space rental rates) | - | 36,698 | - | 1,174 | - | | 140 | - | 38,012 |
| - Information technology adjustments for ongoing operations | - | 3,473 | - | - | - | - | - | - | 3,473 |
| - Annualization of new FY 2010 positions | 360 | 29,097 | 54 | 8,910 | - | - | - | 414 | 38,007 |
| - Defender Services workload increase | - | - | 59 | 28,598 | - | - | - | 59 | 28,598 |
| - Change in available jurors | - | - | - | - | 174 | - | - | - | 174 |
| - FPS security service charges | - | - | - | - | - | - | 5,385 | - | 5,385 |
| - FY 2011 court security officer wage adjustments | - | - | - | - | - | - | 13,295 | - | 13,295 |
| - Annualization of new FY 2010 court security officers | - | - | - | - | - | - | 832 | - | 832 |
| - Additional court security officers in FY 2011 | - | - | - | - | - | - | 2,071 | - | 2,071 |
| - Adjustments to base for security systems and equipment | - | - | - | - | - | - | 9,774 | - | 9,774 |
| - Additional requirements for high-threat trials | - | - | - | 15,600 | 1,180 | - | 5,285 | - | 22,065 |
| **Subtotal, FY 2011 Adjustments to Base** | **500** | **230,480** | **113** | **98,371** | **2,247** | - | **41,239** | **613** | **372,337** |
| **FY 2011 Adjusted Base** | **30,703** | **5,246,926** | **2,849** | **1,076,119** | **64,108** | **70** | **493,846** | **33,622** | **6,880,999** |
| **FY 2011 Program Increases** | | | | | | | | | |
| Judges. | | | | | | | | | |
| - Magistrate judges and staff | 27 | 2,961 | - | - | - | - | - | 27 | 2,961 |
| Court Personnel and Programs: | | | | | | | | | |
| - New court support staff for workload increases | 471 | 39,679 | - | - | - | - | - | 471 | 39,679 |
| - Telecommunications infrastructure enhancements | - | 25,000 | - | - | - | - | - | - | 25,000 |
| - Increase in non-capital rate from $126 to $141 per hour | - | - | - | 4,776 | - | - | - | - | 4,776 |
| - New federal defender organization | - | - | - | 300 | - | - | - | - | 300 |
| - Five new judiciary-funded USMS positions | - | - | - | - | - | 3 | 309 | 3 | 309 |
| - National contract for vehicle barrier maintenance | - | - | - | - | - | - | 683 | - | 683 |
| - Facial recognition system (pilot) | - | - | - | - | - | - | 200 | - | 200 |
| **Subtotal, FY 2011 Program Increases** | **498** | **67,640** | - | **5,076** | - | **3** | **1,192** | **501** | **73,908** |
| Total increases requested, FY 2011 | 998 | 298,120 | 113 | 103,447 | 2,247 | 3 | 42,431 | 1,114 | 446,245 |
| **FY 2011 Appropriation Request** | **31,201** | **5,314,566** | **2,849** | **1,081,195** | **64,108** | **73** | **495,038** | **34,123** | **6,954,907** |

[1] The Judiciary FTE totals do not reflect reimbursable positions (282 in FY 2010; and 285 in FY 2011)



FY 2011 Requested Appropriation Increases
Courts of Appeals, District Courts, and Other Judicial Services
17%
Program Enhancements
Increase Required to Maintain Current Services

FY 2011 Budget Request by Account
Courts of Appeals, District Courts, and Other Judicial Services
(Appropriations)
Fees of Jurors 1%
Court Security 7%
Defender Services 16%
Salaries and Expenses 76%

## Courts of Appeals, District Courts and Other Judicial Services
### *Salaries and Expenses*

**FY 2011 Request**
**Courts of Appeals, District Courts and other Judicial Services, Salaries and Expenses**

| | FTE | $(000) |
|---|---|---|
| **FY 2010 Enacted Appropriation** | 30,203 | $5,011,018 |
| Vaccine Injury Trust Fund | | 5,428 |
| **FY 2010 Available Appropriation** | 30,203 | 5,016,446 |
| **Adjustments to Base** | 500 | 230,480 |
| **Program Increases:** | | |
| New Magistrate Judges and staff | 27 | 2,961 |
| Court Support Staffing | | |
| FY 2011 workload requirements | 471 | 39,679 |
| Information technology infrastructure enhancements | | 25,000 |
| **FY 2011 Appropriation** | **31,201** | **$5,314,566** |
| Vaccine Injury Trust Fund | | ($4,785) |
| **FY 2011 Direct Appropriation** | **31,201** | **$5,309,781** |

**Budget Summary**

The Judicial Conference requests $5,314,566,000 for the Salaries and Expenses account in fiscal year 2011, including $4,785,000 from the Vaccine Injury Trust Fund. This is a 5.9 percent increase over the fiscal year 2010 enacted appropriation of $5,016,466,000. The Salaries and Expenses appropriation makes up 73 percent of the judiciary's total appropriations request, and 76 percent of the *Courts of Appeals, District Courts and Other Judicial Services* request. This account provides for the operating expenses of the 12 regional circuit courts of appeals, district courts, bankruptcy courts, and probation and pretrial services offices. This account utilizes other funding sources, including current year fee collections and prior year carryforward balances, to offset the need for appropriated funds. The judiciary projects that these sources of non-appropriated funds will total $432.2 million in fiscal year 2011, $18.1 million below the fiscal year 2010 financial plan level of $450.3 million.

**Adjustments to Base**

The requested increase for the Salaries and Expenses appropriation includes $230.5 million for standard pay and other inflationary increases, and other adjustments that will allow the courts to maintain a fiscal year 2010 service level in fiscal year 2011. In broad categories, these increases include:

***1. Pay and benefit increases for judges: $6.9 million***

An increase of $6.9 million will provide for an estimated 1.4 percent ECI adjustment in 2011 for judges, and expected changes in benefit rates.

***2. Increase in average number of filled Article III judgeships: $4.0 million*** ***FTE 32***

An increase of $4.0 million will provide for an additional 5 Article III judgeships during fiscal year 2011. This request will also fund 11 law clerks, 6 courtroom deputies, and 6 secretaries and 4 court reporters associated with the Article III judgeships filled.

***3. Increase in the number of senior judges: $13.0 million*** ***FTE 108***

An increase of $13.0 million will provide for an additional 25 senior judges and 83 associated staff anticipated in fiscal year 2011.

***4. Non-recurring costs associated with new fiscal year 2010 judges (Article III and magistrate judges): ($0.9 million)***

A decrease of $0.9 million is requested for non-recurring, one-time costs associated with new judges in fiscal year 2010.

***5. Pay and benefit adjustments for court personnel: $97.0 million***

An increase of $97.0 million will provide for annualization of the 2010 ECI and locality pay adjustment for court personnel, an estimated 1.4 percent pay adjustment in 2011, within-grade increases, and changes in benefit rates.

***6. Annualization of new fiscal year 2010 staff: $29.1 million*** ***FTE 360***

The requested increase annualizes the cost of additional staff expected to be hired in fiscal year 2010. The judiciary estimates that 720 additional positions will be filled for an average of six months in fiscal year 2010. This line item requests the remaining six months funding in fiscal year 2011 to annualize those 720 positions (360 FTE).

***7. GSA space rental and related expenses: $36.7 million***

The judiciary requests a net increase of $36.7 million in fiscal year 2011 for General Services Administration (GSA) rent and related services associated with (a) annualizing new space expected to be occupied during fiscal year 2010 (+$7.2 million), (b) new space projected to be delivered by GSA in fiscal year 2011 (+$30.5 million), (c) inflationary increase for GSA rent costs (+5.6 million) and (d) a decrease associated with other space-related adjustments (-$6.6 million).

***8. Information technology program: $3.5 million***

The Judiciary Information Technology Fund will require an additional $3.5 million in deposits in fiscal year 2011 to operate and maintain its information technology infrastructure, products, projects, and services which are essential to the judicial process and the operations of the courts.

***9. Non-pay inflationary and contractual increases: $23.7 million***

An increase of $23.8 million is requested for a 1.1 percent general inflationary increase and other contractual increases.

***10. Funds necessary to maintain fiscal year 2010 service levels due to an anticipated decline in non-appropriated funds: $18.1 million***

The fiscal year 2010 financial plan assumes that current year fee collections and prior-year carryforward balances from fiscal year 2010 will total $450.3 million. The fiscal year 2011 request estimates that these non-appropriated sources of funds used to help finance court operations will total $432.2 million, a net decrease of $18.1 million from fiscal year 2010 assumed levels. The judiciary requests direct appropriated funds for fiscal year 2011 to replace these non-appropriated funds in order to maintain the same level of service as provided in fiscal year 2010.

***11. Vaccine Injury Compensation Trust Fund: ($0.6) million***

The fiscal year 2011 level reflects a net decrease of $0.6 million for standard pay and non-pay inflationary adjustments, including costs associated with rent. The net reduction is the result of the one-time cost for tenant alterations in fiscal year 2010.

**Program Increases**

The request includes $67.6 million for program enhancements. These increases include:

***12. New magistrate judges: $3.0 million*** ***FTE 27***

An increase of $3.0 million will fund 6 new magistrate judges (6 FTE) in fiscal year 2011 to assist in districts with heavy caseloads.

This request funds the costs of 6 new judges and their associated staff (21 FTE) in New Jersey, South Carolina, Illinois, and California (Fresno, Sacramento, and San Diego).

***13. Fiscal Year 2011 workload requirements: $39.6 million*** ***FTE 471***

Based on projected changes in projected caseload, the judiciary will require $39.6 million for an additional 942 court support staff positions (471 FTEs) in fiscal year 2011 for appellate, bankruptcy, district clerks' and probation and pretrial services offices.

***14. Telecommunications infrastucture: $25.0 million***

An increase of $25.0 million is requested to enhance the judiciary's telecommunications infrastructure. This request represents an investment on a multi-year effort to replace the judiciary's data and voice communications infrastructure with a single, managed network infrastructure. The funding is necessary due to the advanced age of many of the courts' public exchange units that support voice communications, the exponential growth of data communications, and industry trends to converge voice and data network technologies. It is anticipated that this investment in new technology will result in significant cost avoidance once fully implemented in 3 to 4 years.

**U.S. Courts of Appeals, District Courts and Other Judicial Services, Salaries and Expenses**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2009 Actual | FY 2010 Estimate | FY 2011 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 3,282,429 | 3,559,314 | 3,709,280 | 149,966 |
| Rent, Communications and Utilities | 1,070,214 | 1,123,733 | 1,164,326 | 40,593 |
| Travel | 61,839 | 65,957 | 68,728 | 2,771 |
| Other | 629,357 | 761,438 | 804,397 | 42,959 |
| **Total Obligations** | **5,043,839** | **5,510,442** | **5,746,731** | **236,289** |
| Financing Adjustment | (232,470) | (499,424) | (436,950) | 62,474 |
| **Available Appropriation (Direct)** | **4,811,369** | **5,011,018** | **5,309,781** | **298,763** |
| **Vaccine Injury Trust Fund** | **4,253** | **5,428** | **4,785** | **(643)** |
| **Total Available Appropriation** | **4,815,622** | **5,016,446** | **5,314,566** | **298,120** |

FY 2011 Budget Request
Salaries and Expenses Account by Category
(Obligations)
Operations and Maintenance 10%
Judges & Chambers Staff Salaries & Benefits 21%
Information Technology 7%
Court Support Personnel Benefits 11%
Court Support Personnel Salaries 33%
Rent 17%

**Explanation of Other Funding Sources**

In addition to appropriated funds, each year the judiciary uses other non-appropriated funds to offset its appropriation requirement. Fee collections, primarily from court filing fees, comprise the majority of these sources of funds. These fees are used to offset expenses within the Salaries and Expenses account.

***"Unencumbered"* Funds**

In addition to fee collections, in certain instances, the judiciary may carry forward funds from one year to the next. These carryforward funds are considered "unencumbered" when they are generated by savings in the financial plan in base areas or where budgeted costs did not materialize. These savings are usually unforseen and uncontrollable by the judiciary. For example, the judiciary does not control the confirmation rate of Article III judges. The judiciary makes its best estimate, based on historical confirmation rates, as to how many judges will be confirmed in the upcoming year. When confirmations fall below historical estimates, the funds budgeted for these judgeships are not obligated. New space delivery is another area that can produce savings. The judiciary budgets for rent costs based on projected delivery dates provided by the General Services Administration. If delivery of the space by GSA is delayed, the previously budgeted rent costs become unencumbered.

A similar situation exists within the Judiciary Information Technology Fund. The Salaries and Expenses account must, by statute, procure its information technology needs, including hardware and software as well as system development requirements, from this fund. The fund is financed by deposits from the Salaries and Expenses account and, once deposited, the funds remain available without fiscal year limitation. It is common for savings in the Judiciary Information Technology Fund financial plan to occur. Information technology costs often are difficult to predict with precision, and when costs come in below projections, savings materialize. Savings in the plan are carried forward in the fund and offset the required deposit in the following year. The judiciary uses these carryforward funds to offset the following year's appropriation requirements.

Recognizing that savings in the financial plan tend to occur each year, but at unpredictable levels, the judiciary has tried to estimate the level of unencumbered funds that will be available to offset fiscal year 2011 requirements. As the table on page 37 indicates, the judiciary has estimated that unencumbered funds will be $432.2 million in fiscal year 2011, a net decrease of $18.1 million from the $450.3 million in the fiscal year 2010 financial plan to help finance court operations. The judiciary requests appropriated funds for fiscal year 2011 to replace these non-appropriated funds in order to maintain the same level of services provided in fiscal year 2010. Because these funds are used as a general offset to judiciary requirements, the difference in their availability from one fiscal year to the next affects the judiciary's appropriation requirement. If this loss in non-appropriated funds is not offset by a like amount of appropriated funds, it will result in a reduction in resources needed to fund base requirements. Due to the unpredictable nature of these funds, the judiciary will keep Congress informed throughout the appropriations cycle as to the current level of anticipated unencumbered non-appropriated funds and adjust its request for appropriated funds accordingly.

***"Encumbered"* Funds**

Carry forward funds are considered "encumbered" when both the funds and the associated need for the funds shift to the next year. The judiciary has no-year authority for specific purposes. In some cases, as was described above, this authority is used to carry forward savings where planned expenses did not materialize. This authority is also used when planned expenses are delayed, or

slipped, from one year to the next. These "slippages" occur primarily in two areas: information technology investments and costs associated with new space delivery. In the Judiciary Information Technology Fund, one of the principle purposes for the creation of this fund was the recognition that the development of major information technology systems occurs over a period of years and is not efficiently driven by fiscal year limitations. Even so, the judiciary only budgets for information technology costs that it reasonably expects to complete in a given year. Because funds assigned to information technology investments can carry forward to the following year, this ensures that, for individual investments, funds to complete a phase will be available if not obligated by the end of the fiscal year. This flexibility allows projects to stay on or under budget by avoiding having to make costly contractual or other obligations based on the calendar rather than project readiness.

Similarly, the judiciary also receives a limited amount of no-year authority in its regular appropriation for space alterations and furniture associated with new space delivery. Because space alteration and building projects are also subject to unpredictable delays, the ability of the judiciary to carry forward funds associated with these specific projects allows the judiciary to budget for major space renovation costs and other non-rental costs associated with the delivery of a new courthouse and then carry forward these project specific funds if the project is delayed.

These "encumbered" funds, while adding to the judiciary's projected obligations in a given fiscal year, do not impact the judiciary's appropriations requirement. Even if the total amount fluctuates from year to year, the funds associated with the specific project are brought forward from the prior year to fund the project, resulting in no additional appropriation requirements.

**Sources of Non-Appropriated Funds in Salaries and Expenses**

| ($000) | FY 2010 Plan | FY 2011 Request | Difference |
|---|---|---|---|
| Salaries and Expenses | | | |
| *Fee Collections* | *287,682* | *312,165* | *24,483* |
| *Other S&E and JITF Carryforward* | *162,582* | *120,000* | *(42,582)* |
| **Total** | **450,264** | **432,165** | **(18,099)** |

**Salaries and Expenses Obligations - Judiciary Information Technology Fund Program Requirements**
**($000)**

| | FY 2010 | | | | | FY 2011 | Change: FY 2010 Adj. Base Requirements to FY 2011 Requirements (Excl. Prog. Increases) | Change: FY 2010 Adj. Base Requirements to FY 2011 Requirements (Program Increases only) |
|---|---|---|---|---|---|---|---|---|
| | A | B | C | D | E | | | |
| IT Program Component | FY 2010 Projected Obligations | FY 2009 Slipped Requirements | FY 2010 Base Requirements (col a + col b) | FY 2010 Requirements Funded in FY 2009 | FY 2010 Adjusted Base (col c + col d) | FY 2011 Total Requirements | | |
| Court Administration Systems | 2,677 | 0 | 2,677 | 0 | 2,677 | 2,752 | 75 | 0 |
| Judicial Statistics and Reporting Systems | 5,377 | (799) | 4,578 | 0 | 4,578 | 3,980 | (598) | 0 |
| Courtroom Technology Program | 10,666 | 0 | 10,666 | 0 | 10,666 | 12,796 | 2,130 | 0 |
| Court Allotments | 108,800 | (678) | 108,122 | 0 | 108,122 | 110,029 | 1,907 | 0 |
| Probation and Pretrial Services | 18,512 | (801) | 17,711 | 0 | 17,711 | 19,938 | 1,740 | 487 |
| Financial Systems | 30,857 | (3,255) | 27,602 | 0 | 27,602 | 28,579 | 977 | 0 |
| Human Resources Systems | 22,088 | (869) | 21,219 | 0 | 21,219 | 21,687 | 468 | 0 |
| Management Information Systems | 16,095 | (1,051) | 15,044 | 0 | 15,044 | 15,167 | 123 | 0 |
| Infrastructure and Collaboration Tools | 70,965 | (381) | 70,584 | 0 | 70,584 | 63,942 | (6,642) | 0 |
| Telecommunications Program | 65,866 | (606) | 65,260 | 5,615 | 70,875 | 97,446 | 1,571 | 25,000 |
| Court Support Reimbursable Program | 30,426 | 0 | 30,426 | 0 | 30,426 | 31,752 | 1,326 | 0 |
| **TOTAL, SALARIES AND EXPENSES** | $382,329 | ($8,440) | $373,889 | $5,615 | $379,504 | $408,068 | $3,077 | $25,487 |

# Courts of Appeals, District Courts and Other Judicial Services
## *Defender Services*

**FY 2011 Request**
**Courts of Appeals, District Courts and Other Judicial Services, Defender Services**

| | FTE | $(000) |
|---|---|---|
| **FY 2010 Enacted Appropriation** | 2,736 | $977,748 |
| **Adjustments to Base** | 113 | 98,371 |
| **Program Increases:** | | |
| Increase in panel attorney non-capital rate (to $141 per hour) | | 4,776 |
| Start-up costs for one new federal defender organization | | 300 |
| **FY 2011 Appropriation** | **2,849** | **$1,081,195** |

### Budget Summary

The Judicial Conference requests $1,081.2 million for Defender Services in fiscal year 2011, a 10.6 percent increase over the fiscal year 2010 enacted appropriation. This appropriation is approximately 15.0 percent of the judiciary's total fiscal year 2011 budget request. This funding supports the provision of constitutionally-mandated legal representation and other services to persons financially unable to obtain counsel in criminal and related matters in federal court. The Criminal Justice Act (CJA) provides that courts shall appoint counsel from federal public and community defender organizations or from a panel of private attorneys established by the court. Costs associated with this account are driven by the number and type of prosecutions brought by United States Attorneys.

### Adjustments to Base

An increase of $98.4 million is requested for pay and inflationary adjustments that will allow the judiciary to meet its constitutional obligation to provide defense counsel to all eligible persons in fiscal year 2011. In broad categories, these increases include:

***1. Pay and benefit adjustments, Federal Defender Organizations, and Program Administration: $13.2 million***

An increase of $13.2 million will provide for an estimated 1.4 percent 2011 pay adjustment, promotions and within-grade increases, and changes in benefit rates.

***2. Pay adjustments, panel attorneys: $33.2 million***

An increase of $33.2 million will provide for the annualization of the fiscal year 2010 cost-of-living adjustments and increases in the hourly rates paid to panel attorneys for capital (to $178 per hour) and non-capital (to $125 per hour) representations, and for cost-of-living adjustment in the hourly rates effective on January 1, 2011. The capital rate would increase to an estimated $179 per hour, and the non-capital rate would increase to an estimated $126 per hour in fiscal year 2011.

***3. Annualization of new fiscal year 2010 staff: $8.7 million FTE 52***

An increase of $8.7 million (52 FTE) provides the remaining six months funding in fiscal year 2011 to annualize 104 positions expected to be hired in fiscal year 2010.

***4. Annualization of new fiscal year 2010 reimbursable staff: $0.2 million FTE 2***

An increase of $214,000 (2 FTE) provides the remaining six months funding in fiscal year 2011 to annualize 3 AO positions expected to be hired in fiscal year 2010.

***5. Increases in caseload, case complexity and change in caseload mix: $44.2 million FTE 59***

An increase of $44.2 million (59 FTE) is requested for additional and more costly representations in fiscal year 2011. The additional Federal Defender Organization staff will provide for the net increase in representations and increased complexity associated with the 210,900 non-capital representations projected in fiscal year 2011, including high-threat trials, and estimated costs for capital representations.

***6. Decrease in appropriation to fund base requirements due to an increase in non-appropriated sources of funds. ($3.6 million)***

In fiscal year 2010, $6.4 million in unobligated balances from fiscal year 2009 was available to finance fiscal year 2010 requirements. In fiscal year 2011, absent unforeseen expenses that might arise, the judiciary expects $10.0 million in non-appropriated funds to be available, an increase of $3.6 million from fiscal year 2010. Therefore, the increase in these non-appropriated funds will be used to offset fiscal year 2011 requirements.

***7. Other inflationary increases: $2.9 million***

An increase of $2.9 million is required for inflationary adjustments for all non-pay categories, as well as for space rental costs.

***8. Non-recurring costs: ($0.3 million)***

A decrease of $0.3 million is for non-recurring costs associated with start-up costs of one new defender organization expected to open in fiscal year 2010.

**Program Increases**

***9. Increase the panel attorney non-capital rate to $141 per hour: $4.8 million***

The request of $4.8 million would fund the fiscal year 2011 costs associated with increasing the panel attorney non-capital rate to $141 per hour, effective January 1, 2011.

***10. New Federal Defender Organization: $0.3 million***

An increase of $300,000 will provide for the start-up costs of one new defender organization expected to be opened in fiscal year 2011.

**Courts of Appeals, District Courts and Other Judicial Services**
**Defender Services**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2009 Actual | FY 2010 Plan | FY 2011 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 332,828 | 366,860 | 392,608 | 25,748 |
| Rent, Communications and Utilities | 40,362 | 44,052 | 46,414 | 2,362 |
| Travel | 10,225 | 11,603 | 11,893 | 290 |
| Contractual Services (includes current year panel attorney payments) | 383,351 | 419,048 | 488,514 | 69,466 |
| Other (includes grants to Community Defender Organizations) | 129,797 | 142,550 | 151,766 | 9,216 |
| **Total Obligations** | **896,563** | **984,113** | **1,091,195** | **107,082** |
| Financing Adjustment | (47,163) | (6,365) | (10,000) | (3,635) |
| **Available Appropriation** | **849,400** | **977,748** | **1,081,195** | **103,447** |

FY 2011 Budget Request
Defender Services Account by Category
(Obligations)
Program Administration 1%
Panel Attorneys 42%
Federal Defender Organizations 57%

## Courts of Appeals, District Courts and Other Judicial Services
### *Fees of Jurors and Commissioners*

| FY 2011 Request<br>Courts of Appeals, District Courts and Other Judicial Services<br>Fees of Jurors and Commissioners | $(000) |
|---|---|
| **FY 2010 Enacted Appropriation** | $61,861 |
| **Adjustments to Base** | 2,247 |
| **FY 2011 Appropriation** | **$64,108** |

**Budget Summary**

The Judicial Conference requests $64.1 million for Fees of Jurors and Commissioners in fiscal year 2011, a 3.6 percent increase over the fiscal year 2010 enacted appropriation. This appropriation is less than one percent of the judiciary's total budget. Costs associated with this account may be unpredictable and are driven by the number of jury trials, the length of those trials, and statutory rates for reimbursement paid to jurors.

**Adjustments to Base**

All of the adjustments in this account are base adjustments that will allow the account to continue to pay for the statutory fees and expenses to grand and petit jurors and compensation of land commissioners in fiscal year 2011. These adjustments include:

***1. Inflationary adjustments: $442,000***

In addition to the fees paid, jurors also are reimbursed for certain expenses including meals and lodging for sequestered jurors and transportation of juries to view evidence or crime scenes. Inflationary increases associated with these expenses are expected to total $191,000 for grand jurors and $251,000 for petit jurors in fiscal year 2011.

***2. Projected change in juror days: $1.4 million***

Based on projected changes in the number of available grand and petit jurors, overall requirements are projected to increase by $1.4 million in fiscal year 2011, primarily associated with high-threat trials. Requirements for grand jurors related to these expenses are expected to decrease by $150,000 and requirements for petit jurors are projected to increase by $1.5 million.

***3. Funding needed to maintain fiscal year 2010 service level: $451,000***

The fiscal year 2010 financial plan was financed in part by $2,887,000 in carryforward balances from fiscal year 2009. The judiciary anticipates carryforward funding of $2,436,000 in fiscal year 2011. Thus, the judiciary requests $451,000 in fiscal year 2011 to replace direct appropriations in order to maintain fiscal year 2010 service levels.

**Courts of Appeals, District Courts and Other Judicial Services**
**Fees of Jurors and Commissioners**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2009 Actual | FY 2010 Plan | FY 2011 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 29,624 | 30,349 | 31,191 | 842 |
| Rent, Communications and Utilities | 1,469 | 1,518 | 1,561 | 43 |
| Travel | 30,148 | 30,800 | 31,653 | 853 |
| Other | 2,021 | 2,081 | 2,139 | 58 |
| **Total Obligations** | **63,262** | **64,748** | **66,544** | **1,796** |
| Financing Adjustment | (1,056) | (2,887) | (2,436) | 451 |
| **Available Appropriation** | **62,206** | **61,861** | **64,108** | **2,247** |



FY 2011 Budget Request
Fees of Jurors and Commissioners Account by Category
(Obligations)
Land Commissioners 0.2%
Grand Jurors 26.6%
Petit Jurors 73.2%

# Courts of Appeals, District Courts and Other Judicial Services
## *Court Security*

**FY 2011 Request**
**Courts of Appeals, District Courts and Other Judicial Services**
**Court Security**

| | FTE | $(000) |
|---|---|---|
| **FY 2010 Enacted Appropriation** | 70 | 452,607 |
| **Adjustments to Base** | | 41,239 |
| **Program Increases:** | | |
| Five new judiciary-funded USMS positions | 3 | 309 |
| National contract for vehicle barrier maintenance | | 683 |
| Facial recognition system (pilot) | | 200 |
| **FY 2011 Appropriation** | **73** | **$495,038** |

### Budget Summary

The Judicial Conference requests $495.0 million for Court Security in fiscal year 2011, a 9.4 percent increase over the fiscal year 2010 enacted appropriation. The majority of the funding is transferred to the U.S. Marshals Service (USMS) which is responsible for administering the Judicial Facility Security Program. The Court Security appropriation is approximately seven percent of the judiciary's total budget.

### Adjustments to Base

The Court Security request for adjustments to base is for pay, inflationary increases, and other adjustments that will maintain fiscal year 2010 current services. In broad categories, these adjustments include:

1. ***Pay and benefit increase: $0.3 million***

For federal employees, this increase accounts for the annualization of the 2010 pay adjustment, an estimated 1.4 percent 2011 pay adjustment, within-grade increases, and changes in benefit rates.

2. ***Annualization of fiscal year 2010 court security officer positions (20): 0.8 million***

Funding is required to annualize costs for 20 additional Court Security Officers (CSO) consistent with the CSO staffing formula expected to be brought on-board in fiscal year 2010, based on projected occupancy dates for new and existing space.

3. ***Department of Labor and Collective Bargaining Agreements wage rate adjustment: $13.3 million***

This increase provides for an average 4.0 percent wage adjustment for contract court security officers as established by the Department of Labor and based on collective bargaining agreements.

***4. Non-pay inflationary increases: $0.2 million***

The funding requested will provide for a general inflationary increase of 1.1 percent for travel, supplies, equipment, GSA space rental costs, and other contractual services (exclusive of Court Security Officers contracts).

***5. Additional court security officers (30) associated with fiscal year 2011 new and existing space: $7.2 million***

The increase provides for 30 additional CSOs for new and renovated existing space expected to be delivered in fiscal year 2011, as well as staffing for high-threat trials.

***6. Changes in Federal Protective Service security charges: $5.4 million***

The requested increase of $5.4 million will fund basic security ($1.7 million) and building-specific ($3.7 million) operating expenses based on anticipated billings from the Federal Protective Service. This brings the total request to $72.6 million in fiscal year 2011, compared to $67.3 million projected in fiscal year 2010.

***7. Adjustments to base for security systems and equipment: $9.9 million***

The requested net increase of $9.9 million will fund adjustments above the fiscal year 2010 funded base for court security systems and equipment. This includes $17.0 million in increases for security equipment for new and renovated court facilities; cyclical replacement of screening equipment; perimeter security improvements; cyclical replacement of explosive trace detection (ETD) systems; cyclical replacement of hardware and software for access control systems; and security for high-threat trials. An offsetting decrease of $7.1 million is for the maintenance of x-ray machines and metal detectors; courthouse radio systems; security screening equipment for new court facilities; additional and replacement equipment; equipment for probation and pretrial services offices and federal public defender organizations; and expansion of ETD systems and itemiser consumables, spare parts and repair services for ETD systems.

***8. Non-recurring requirements: ($0.9 million)***

Non-recurring costs include reductions to one-time administrative expenses to bring the base in line with lower funding requirements.

***9. Funding necessary to maintain fiscal year 2010 service levels due to an anticipated decline in non-appropriated sources of funds: $5.0 million***

In fiscal year 2010, the court security account will utilize $5.0 million in carryforward balances from fiscal year 2009. The judiciary currently does not anticipate having carryforward balances available at the end of fiscal year 2010 for use in fiscal year 2011. Thus, the judiciary requests that these carryforward funds be replaced with direct appropriations in order to maintain the fiscal year 2010 service level in fiscal year 2011.

## Program Increases

***10. Five New judiciary-funded USMS positions: $0.3 million***

The judiciary presently funds 70 full-time USMS positions in fiscal year 2010. For fiscal year 2011, the USMS requests 5 additional positions (3 FTE) in fiscal year 2011, including a physical security specialist, a criminal investigator, two program analysts, and a budget analyst.

***11. Nationwide contract for vehicle barrier maintenance: $0.7 million***

Funding is requested to establish a nationwide preventative maintenance contract and repair program for vehicle barriers installed by the USMS. This approach will increase the reliability of the vehicle barriers and reduce frequency of breakdowns.

***12. Pilot of Facial Recognition Systems: $0.2 million***

The USMS recommends an initiative to pilot facial recognition systems in court facilities. This initiative will provide effective technology to identify and prevent individuals who are "persons of interest" from entering courthouse facilities.

**Courts of Appeals, District Courts and Other Judicial Services**
**Court Security**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY2009 Actual | FY 2010 Estimate | FY 2011 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 6,795 | 8,113 | 8,374 | 261 |
| Rent, Communications and Utilities | 5,850 | 5,956 | 6,107 | 151 |
| Travel | 349 | 432 | 504 | 72 |
| Court Security Officers Contract | 299,704 | 310,748 | 331,961 | 21,213 |
| Federal Protective Service Charges | 64,307 | 67,254 | 72,639 | 5,385 |
| Other | 55,750 | 65,104 | 75,453 | 10,349 |
| **Total Obligations** | **432,755** | **457,607** | **495,038** | **37,431** |
| Financing Adjustment | (3,897) | (5,000) | 0 | 5,000 |
| **Available Appropriation** | **428,858** | **452,607** | **495,038** | **42,431** |

| Court Security - Summary of Requirements and Financing | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Court Security Officers (CSOs) | | Systems/Equip | Program Administration | | FPS Provided Security | Total | |
| Financing: | CSOs | $000 | $000 | FTE | $000 | $000 | FTE | $000 |
| FY 2010 Financial Plan | 4,194 | $310,748 | $65,500 | 70 | $19,105 | $67,254 | 70 | $462,607 |
| Less: Carryforward from FY 2009 | 0 | $0 | ($5,000) | 0 | $0 | $0 | 0 | ($5,000) |
| **Total FY 2010 Enacted Appropriation** | **4,194** | **$310,748** | **$60,500** | **70** | **$19,105** | **$67,254** | **70** | **$457,607** |
| FY 2011 Appropriation Increases | 67 | $21,213 | $10,785 | 3 | $48 | $5,385 | 3 | $37,431 |
| **Total FY 2011 Request** | **4,261** | **$331,961** | **$71,285** | **73** | **$19,153** | **$72,639** | **73** | **$495,038** |



FY 2011
Budget Request
Court Security Account by Category
(Obligations)
Federal Protective Service
Charges
15%
Program Administration
4%
Security Systems and
Equipment
14%
Court Security
Officer Contract Costs
67%

# Administrative Office of the U.S. Courts

**FY 2011 Request**
**Administrative Office of the U.S. Courts**

| | FTE | $(000) |
|---|---|---|
| **FY 2010 Enacted Appropriation** | 639 | $83,075 |
| **Adjustments to Base** | | 3,893 |
| **Program Increases:** | | |
| Four new court support positions | 2 | 287 |
| **FY 2011 Appropriation** | **641** | **$87,255** |

## Budget Summary

The Administrative Office (AO) requests $87.3 million in fiscal year 2011, a 5.0 percent increase over the fiscal year 2010 enacted appropriation. In addition to the appropriation provided by Congress, the AO receives non-appropriated funds from sources such as fee collections and carryover balances to offset its appropriation requirements. The AO also receives reimbursements from other judiciary accounts for information technology development and support services that are in direct support of the courts, the court security program, and defender services.

The AO provides administrative, legal, financial management, program, security, and information technology services to the federal courts. It provides support and staff counsel to the Judicial Conference of the United States and its committees, and implements Judicial Conference policies as well as applicable federal statutes and regulations. The AO is the focal point for communication and coordination within the judiciary and with Congress, the executive branch, and the public on behalf of the judiciary. As such, the court staffing levels are a primary workload driver for the AO.

## Adjustments to Base

The AO requests a $3.9 million increase for base adjustments to the fiscal year 2010 current services level. This includes increased costs for recurring requirements, such as travel, communications, service agreements, and supplies.

## Program Increases

*1.* ***Four new positions:*** ***$287,000*** ***FTE 2***

An increase of $287,000 will fund 4 new positions (2 FTE) for six months to address high priority court support functions of the AO. It is the first request for additional AO-funded staff in six years.

Two operating accountant positions are requested to support a comprehensive modernization and consolidation effort of the judiciary's nationwide accounting system ($FAS_4T$). These positions will develop and implement a new disbursing capability, which will strengthen internal control and financial accountability.

A database manager position is requested to oversee the replacement effort of the Probation Automated Case Tracking System (PACTS). PACTS is the primary information technology system used by the probation and pretrial services offices, which is reaching its capacity with 8,000 users and more than one million records.

One position is requested to coordinate between program offices throughout the AO, several executive branch agencies, Congress, and two Judicial Conference committees on high-profile and complex facilities and security functions of the judiciary.

**Administrative Office of the U.S. Courts**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2009 Actual | FY 2010 Plan | FY 2011 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 131,867 | 139,946 | 145,481 | 5,535 |
| Rent, Communications and Utilities | 695 | 889 | 912 | 23 |
| Travel | 1,497 | 1,769 | 1,815 | 46 |
| Other | 9,197 | 8,626 | 8,375 | (251) |
| **Total Obligations** | **143,256** | **151,230** | **156,583** | **5,353** |
| Financing Adjustment | (22,287) | (23,050) | (22,222) | 828 |
| Reimbursable Program | (41,920) | (45,105) | (47,106) | (2,001) |
| **Available Appropriation** | **79,049** | **83,075** | **87,255** | **4,180** |

# Federal Judicial Center

**FY 2011 Request**
**Federal Judicial Center**

| | FTE | $(000) |
|---|---|---|
| **FY 2010 Enacted Appropriation** | 138 | $27,328 |
| **Adjustments to Base** | 2 | 956 |
| **Program Increases:** | | |
| Enhance education and training programs | | 115 |
| Enhance education, training and research technology resources | | 295 |
| **FY 2011 Appropriation** | **140** | **$28,694** |

### Budget Summary

The Federal Judicial Center (FJC) requests $28.7 million in fiscal year 2011, a 5.0 percent increase over the fiscal year 2010 enacted appropriation. The FJC, which is the research and education arm of the Third Branch, provides judges and other judiciary personnel with education and training on legal developments and efficient litigation management and court administration. As such, its workload is derived in large part by the population of the courts.

### Adjustments to Base

The Federal Judicial Center requests $1.0 million and 2 FTE in adjustments to base increases, which are comprised of standard pay and other inflationary adjustments, and the annualization of four new staff expected to be hired in fiscal year 2010.

### Program Increases

***1. Enhance education and training programs: $115,000***

The Federal Judicial Center request $115,000 in fiscal year 2011 to continue the initiative to enhance education and training programming for judges, court staff attorneys, and court executives and managers.

***2. Enhance education, training and research technology resources: $295,000***

The Federal Judicial Center requests $295,000 to enhance education and research technology resources, including information technology licenses and contractor support for e-learning tools and for content management to enable users to have more effective access to Center online programs and services and to stay current with continuously evolving automation and video equipment necessary to expand distance learning and its delivery.

**Federal Judicial Center**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2009 Actual | FY 2010 Plan | FY 2011 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Compensation and Benefits | 17,660 | 18,952 | 19,764 | 812 |
| Rent, Communications and Utilities | 512 | 542 | 522 | (20) |
| Travel | 5,126 | 5,546 | 5,436 | (110) |
| Other | 3,025 | 2,996 | 3,172 | 176 |
| **Total Obligations** | **26,323** | **28,036** | **28,894** | **858** |
| Financing Adjustment | (598) | (708) | (200) | 508 |
| **Available Appropriation** | **25,725** | **27,328** | **28,694** | **1,366** |

# Payment to Judiciary Trust Funds

| FY 2011 Request<br>Payment to Judiciary Trust Funds | |
|---|---|
| | $(000) |
| **FY 2010 Enacted Appropriation** | $82,374 |
| **Adjustments to Base** | 7,987 |
| **FY 2011 Appropriation** | **$90,361** |

### Budget Summary

The Judicial Conference requests $90.4 million for the Judiciary Trust Fund in fiscal year 2011, a 9.7 percent increase over the fiscal year 2010 enacted appropriation. The Judiciary Trust Fund is a congressionally-scored mandatory account and is divided among three trust funds that finance payments to (1) retired bankruptcy and magistrate judges, (2) retired Court of Federal Claims judges, and (3) spouses and dependent children of deceased judicial officers. The appropriation requirements are calculated annually by an enrolled actuary pursuant to 31 U.S.C. 9503.

### Adjustments to Base

Based on independent actuarial calculations, an increase of $8.0 million is required for this account for fiscal year 2011 detailed as follows:

| | |
|---|---|
| Judicial Officers' Retirement Fund | $7,187,400 |
| Judicial Survivors' Annuities Fund | $800,000 |
| **Total** | **$7,987,400** |

**Payment to Judiciary Trust Funds**
**Comparative Summary of Obligations by Category**
**($000)**

| Category | FY 2009 Actual | FY 2010 Plan | FY 2011 Request | Requested Increase/Decrease |
|---|---|---|---|---|
| Other | 76,140 | 82,374 | 90,361 | 7,987 |
| **Total Obligations** | **76,140** | **82,374** | **90,361** | **7,987** |
| Financing Adjustment | 0 | 0 | 0 | 0 |
| **Available Appropriation** | **76,140** | **82,374** | **90,361** | **7,987** |

# United States Sentencing Commission

| FY 2011 Request<br>U.S. Sentencing Commission | FTE | $(000) |
|---|---|---|
| **FY 2010 Enacted Appropriation** | 110 | $16,837 |
| **Adjustments to Base** | | 758 |
| **FY 2011 Appropriation** | **110** | **$17,595** |

**Budget Summary**

The U.S. Sentencing Commission requests $17.6 million in fiscal year 2011, a 4.5 percent increase over the fiscal year 2010 enacted appropriation.

The fulfillment of the Commission's duties to review and revise the guidelines regularly, collect data from federal sentencing courts, analyze these data to provide meaningful information on federal sentencing practices, and provide extensive training to guideline users can be satisfied only with full funding of its fiscal year 2011 request. Full funding will allow the Commission to continue its efforts to review and revise the guidelines; provide specialized training on federal sentencing issues, including application of the guidelines; modernize its data collection, analysis, and reporting systems; and continue its review of alternatives to incarceration.

The Commission has begun a comprehensive assessment of federal sentencing. As part of the assessment, the Commission held regional hearings across the country and the input received will help to shape the Commission's policy priorities for the year.

**Adjustments to Base**

The Commission requests $758,000 in adjustments to base increases, which are comprised of pay and other inflationary adjustments. The Commission requests no program increases.

| U.S. Sentencing Commission Comparative Summary of Obligations by Category ($000) | | | | |
|---|---|---|---|---|
| **Category** | **FY 2009 Actual** | **FY 2010 Plan** | **FY 2011 Request** | **Requested Increase/Decrease** |
| Compensation and Benefits | 11,419 | 12,941 | 13,596 | 655 |
| Rent, Communications and Utilities | 88 | 88 | 125 | 37 |
| Travel | 889 | 859 | 880 | 21 |
| Other | 3,756 | 3,449 | 5,230 | 1,781 |
| **Total Obligations** | **16,152** | **17,337** | **19,831** | **2,494** |
| Financing Adjustment | 73 | (500) | (2,236) | (1,736) |
| **Available Appropriation** | **16,225** | **16,837** | **17,595** | **758** |

# The Judiciary

# Fiscal Year 2011
# Congressional Budget Justification



# TABLE OF CONTENTS

Page Number

**Overview of The Judiciary** ..... Overview - 1

**Summary of Budgetary Requirements for Fiscal Year 2011**

Summary of Fiscal Year 2011 Request ..... Summary - 1
Summary of Appropriation Request for Fiscal Year 2011 ..... Summary - 4
Summary of Mandatory Costs ..... Summary - 5
Summary of Personnel ..... Summary - 6
Fiscal Year 2011 Summary of Requested Changes ..... Summary - 7
Comparative Summary of Obligations by Object Classification ..... Summary - 8
Fiscal Year 2009 Summary ..... Summary - 9
Fiscal Year 2010 Summary ..... Summary - 10
Fiscal Year 2011 Summary ..... Summary - 11
Outlay Table ..... Summary - 12

**Supreme Court**

Summary Statement ..... 1.1

Salaries and Expenses ..... 1.2

Care of the Building and Grounds ..... 1.19

**United States Court of Appeals for the Federal Circuit** ..... 2.1

**United States Court of International Trade** ..... 3.1

**Courts of Appeals, District Courts, and Other Judicial Services**
Overview .... 4.1
Salaries and Expenses .... 5 1
Appendix 1 - Court Support Staffing .... Appendix - 1
Defender Services .... 6.1
Fees of Jurors and Commissioners .... 7.1
Court Security .... 8.1

**Administrative Office of the U.S. Courts** .... 9.1

**Federal Judicial Center** .... 10.1

**Payments to Judiciary Trust Funds** .... 11.1

**United States Sentencing Commission** .... 12 1

**Judiciary Information Technology Fund** .... 13.1
Appendix 2 - Electronic Public Access Program .... Appendix - 2

**General Provisions** .... 14.1

# Overview of The Judiciary

The Federal Judiciary
United States Supreme Court
U.S. Courts of Appeals
12 Regional Circuit Courts of Appeals
1 U.S Court of Appeals for the Federal Circuit
Trial Courts
U.S District Courts
U S Bankruptcy Courts
U S Court of International Trade
U S Court of Federal Claims
Other Judiciary Entities/Programs
Probation and Pretrial Services
Defender Services
Court Security
Fees of Jurors and Commissioners
Administrative Office of the U S. Courts
Federal Judicial Center
Judiciary Trust Funds
United States Sentencing Commission

The organization of the judiciary, the district and circuit boundaries, the places of holding court, and the number of federal judges are established by laws passed by Congress and signed by the President The number of federal judges in each district and in the courts of appeals is authorized by Congress on the basis of workload.

In addition to the adjudication of cases, other related functions, such as the provision of criminal defense services and the supervision of offenders, are prescribed by statute. The following sections provide a brief overview of the work of the courts and other related activities of the Judicial Branch.

**United States Supreme Court**

The United States Supreme Court consists of nine justices, one of whom is appointed as Chief Justice of the United States. The Supreme Court is the final arbiter in the federal court system

**United States Courts of Appeals**

There are 13 courts of appeals and 179 authorized appellate court judgeships nationwide. Twelve of the courts of appeals have jurisdiction over cases within a regional area or "circuit." The twelve regional courts of appeals review cases from the United States district courts and the United States Tax Court, and orders and decisions from a number of federal administrative agencies

**The United States Court of Appeals for the Federal Circuit** has exclusive national jurisdiction over a large number of diverse subject areas, including international trade, government contracts, patents, trademarks, certain money claims against the

United States government, federal personnel, and veterans' benefits. Appeals to the court come from all 94 federal district courts, as well as the United States Court of Federal Claims, the United States Court of International Trade, and the United States Court of Appeals for Veterans' Claims.

**United States District Courts**

There are 94 district judicial courts in the 50 states, the District of Columbia, the Commonwealth of Puerto Rico, and the territories of Guam, the U.S. Virgin Islands and the Northern Mariana Islands. The U.S. District Courts are the courts of general jurisdiction in the federal court system, and most federal cases are initially tried and decided in these courts. There are 678 authorized district court judgeships nationwide.

The Federal Magistrates Act of 1968 created the office of magistrate judge to assist the district court judges. Magistrate judges are non-Article III judges appointed by the district judges, and they serve for a term of years rather than a lifetime appointment. Full-time magistrate judges serve a term of eight years and may be reappointed.

**United States Bankruptcy Courts**

The bankruptcy courts are separate units of the district courts. Federal courts have exclusive jurisdiction over bankruptcy cases. This means that a bankruptcy case cannot be filed in a state court. United States bankruptcy judges are non-Article III judges appointed by the courts of appeals for a term of years rather than a lifetime appointment. They serve for a term of 14 years and may be reappointed.

**United States Court of International Trade**

The Court of International Trade, with nine Article III judges, has exclusive nationwide jurisdiction of civil actions against the United States, its agencies and officers, and certain civil actions brought by the United States, arising out of import transactions and the administration and enforcement of the federal customs and international trade laws.

**United States Court of Federal Claims**

The Court of Federal Claims has nationwide jurisdiction over certain types of claims against the federal government. Its 16 judges are appointed for a term of 15 years by the President with the advice and consent of the Senate. Judges appointed to the Court of Federal Claims are authorized under Article I of the constitution and do not have the tenure and salary protections of Article III judges.

**Probation and Pretrial Services**

Federal probation and pretrial services officers protect the public through the investigation and supervision of defendants and offenders within the federal criminal justice system. A pretrial services officer supervises defendants awaiting trial who are released into our communities and provides a source of information upon which the court can determine conditions of release or detentions while criminal cases are pending adjudication. In support of sentencing determinations, which require both uniformity of practice and attention to individual circumstances, probation officers provide the court with reliable information concerning the offender, the victim, and the offense committed, as well as an impartial application of the sentencing

guidelines. Probation officers supervise offenders sentenced to probation as well as offenders coming out of federal prison who are required to serve a term of supervised release.

**Defender Services**

The federal judiciary oversees and administers the federal defender and appointed counsel program, which provides legal representation and other services to persons financially unable to obtain counsel in criminal and related matters in federal court. The Sixth Amendment to the Constitution guarantees that "[i]n all criminal prosecutions the accused shall enjoy the right...to have the assistance of counsel for his defense." The Criminal Justice Act provides that courts shall appoint counsel from federal public and community defender organizations or from a panel of private attorneys ("panel attorneys") established by the court.

**Court Security**

The judiciary's Court Security appropriation funds protective guard services and security systems and equipment for United States courthouses and other facilities housing federal court operations. These services are contracted for and managed by the United States Marshals Service, with additional guard services provided by the Federal Protective Service.

**Fees of Jurors and Commissioners**

The judiciary receives funding to provide for the statutory fees and allowances of federal grand and petit jurors and for the compensation of land commissioners.

**Administrative Office of the U.S. Courts**

The Administrative Office of the U.S. Courts is the central support entity for the judicial branch. It has management oversight of the court security program, the probation and pretrial services program, and the defender services program. It supports the Judicial Conference of the United States in determining judiciary policies; develops new methods, systems, and programs for conducting the business of the federal courts efficiently and economically; develops and supports application of technology; collects and analyzes statistics on the business of the federal courts for accurate planning and decisions about resource needs; provides financial management services and personnel and payroll support; and conducts audits and reviews to ensure the continued quality and integrity of federal court operations.

**Federal Judicial Center**

The Federal Judicial Center is the judiciary's research and education agency. The Center undertakes research and evaluation of judicial operations and procedures for both the committees of the Judicial Conference and the courts themselves. It provides judges, court personnel, and others orientation and continuing education and training through seminars; curriculum units for in-court use; monographs and manuals; and audio, video, and interactive media programs.

**Payment to Judiciary Trust Funds**

This appropriation finances annuity payments to retired bankruptcy judges and magistrate judges, U.S. Court of Federal Claims judges, and spouses and dependent children of deceased judicial officers.

**U.S. Sentencing Commission**

The U.S. Sentencing Commission promulgates sentencing policies, practices, and guidelines for the federal criminal justice system. The Chair, three Vice Chairs, and three other voting commissioners are appointed by the President with the advice and consent of the Senate.

# Budget Summary - Details of Request

The judiciary's appropriation request for fiscal year 2011 totals $7,329,485,000 an increase of $468,740,000, or 6.8 percent over the fiscal year 2010 enacted appropriations. The fiscal year 2011 request provides for an additional 1,137 FTE to meet critical workload requirements, an increase of 3.3 percent over the 34,663 FTE funded in 2010.

***Adjustments to Base***

$385.3 million, or 82.2 percent of the $468.7 million total increase requested, will provide for pay adjustments, inflation and other adjustments to base necessary to maintain current services.

Of these $385.3 million in base adjustments:

1. An increase of $172.3 million (44.7 percent of the base adjustments) will provide for inflationary pay and benefit rate increases, including the annualization of fiscal year 2010 pay adjustments, expected January 2011 pay adjustments, changes in health benefit premiums, changes in benefit costs for both judges and supporting personnel, cost-of-living rate increases for panel attorneys, and a wage rate adjustment for court security officers.

2. An increase of $41.5 million (10.8 percent of base adjustments) will provide for the annualization of new staff and court security officers expected to be hired in fiscal year 2010 and new court security officers in fiscal year 2011.

3. An increase of $39.0 million (10.1 percent of base adjustments) is requested for the annualization of new space delivered in fiscal year 2010 the cost of new space expected to be delivered in fiscal year 2011, and space related inflation.

4. An increase of $28.6 million (7.4 percent of base adjustments) will provide for the cost of uncontrollable workload changes expected in the Defender Services account.

5. An increase of $26.8 million (7.0 percent of base adjustments) will provide for inflationary increases in non-pay categories using the government wide inflation factor of 1.1 percent.

6. An increase of $22.1 million (5.7 percent of base adjustments) will provide for additional requirements for high-threat trials.

7. An increase of $19.7 million (5.1 percent of base adjustments) is necessary to replace non-appropriated sources of funds used to support base requirements in fiscal year 2010 with direct appropriations. In fiscal year 2011, the judiciary expects fewer non-appropriated funds (current year fee collections and prior year unencumbered carryforward balances) will be available than were available in fiscal year 2010. If the judiciary's base appropriation is not adjusted to offset the loss in non-appropriated funds, reductions would have to be made in court operations, and court security systems and equipment. The judiciary will keep the Appropriations Subcommittees informed of any changes in these estimates.

8. An increase of $13.0 million (3.4 percent of base adjustments) is associated with increases in the number of senior judges.

9. An increase of $9.8 million (2.5 percent of base adjustments) is requested for adjustments above the fiscal year 2010 funded base for court security systems and equipment.

10. An increase of $8.0 million (2.1 percent of base adjustments) is requested for payments to the Judiciary Retirement Trust Funds.

11. An increase of $5.4 million (1.4 percent of base adjustments) will provide for estimated increases in Federal Protective Service security charges.

12. An increase of $4.0 million (1.0 percent of base adjustment) is associated with an increase in the number of filled Article III judgeships.

13. An increase of $3.8 million (1.0 percent of base adjustments) will provide for base increases necessary to support, maintain, and continue investments in the judiciary's information technology program.

14. An increase of $0.2 million (0.1 percent of base adjustments) is associated with a projected net change in available jurors.

15. A net decrease of $8.9 million (-2.3 percent of base adjustments) is associated with non-recurring costs for expenses related to the Supreme Court's building maintenance and modernization projects, filled fiscal year 2011 judgeships, a decrease to the reimbursement from the Vaccine Injury Trust Fund, and one-time costs in the Defender Services and Court Security accounts.

***Program Increases***

The remaining $83.4 million, or 17.8 percent, of the total increase is requested for program enhancements and workload-related needs.

Of these $83.4 million in program increases:

16. An increase of $40.7 million (48.8 percent of program enhancements) will provide for additional support staff and associated costs. This increase is for staffing adjustments due to the most critical workload (483 FTE).

17. An increase of $26.1 million (31.3 percent of program enhancements) will provide for telecommunications infrastructure and information technology enhancements.

18. An increase of $6.3 million (7.5 percent of program enhancements) will provide for the Supreme Court's roof system repairs.

19. An increase of $4.8 million (5.7 percent of program enhancements) will provide for an increase in the non-capital panel attorney rate to the statutorily authorized rate of $141 per hour.

20. An increase of $3.0 million (5.7 percent of program enhancements) will provide for 6 additional magistrate judges and associated staff (27 FTE) in districts with growing caseload.

21. An increase of $0.9 million (1.1 percent of program enhancements) will provide for necessary investments in court security, such as a national contract for vehicle barrier maintenance, and a facial recognition pilot program.

22. An increase of $0.9 million (1.1 percent of program enhancements) will provide for twelve new police offices (9 FTE) and support expenses at the Supreme Court.

23. An increase of $0.4 million (0.5 percent of program enhancements) will provide for education and training program enhancements at the Federal Judicial Center.

24. An increase of $0.3 million (0.4 percent of program enhancements) will provide for the start-up costs associated with one new defender organization.

**The Judiciary**

**Summary of Appropriation Request for Fiscal Year 2011 ($000)**

| | FY 2009 Enacted | | | FY 2010 Enacted | | | FY 2011 Request Change | | | FY 2011 Request Total | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Mand. 1/ | Discret. 2/ | Total Available | Mand 3/ | Discret | Total Available | Mand | Discret 4/ | Total | Mand | Discret 4/ | Total Request |
| **Supreme Court** | | | | | | | | | | | | |
| Salaries and Expenses | 2,119 | 67,658 | 69,777 | 2,166 | 71,868 | 74,034 | 23 | 3,701 | 3,724 | 2,197 | 75,561 | 77,758 |
| Buildings and Grounds | - | 18,447 | 18,447 | - | 14,525 | 14,525 | - | 263 | 263 | - | 14,788 | 14,788 |
| Total, Supreme Court | 2,119 | 86,105 | 88,224 | 2,166 | 86,393 | 88,559 | 23 | 3,964 | 3,987 | 2,197 | 90,349 | 92,546 |
| **Court of Appeals for the Federal Circuit** | 2,356 | 28,028 | 30,384 | 2,491 | 30,069 | 32,560 | 11 | 3,288 | 3,299 | 2,502 | 33,357 | 35,859 |
| **Court of International Trade** | 1,696 | 17,909 | 19,605 | 1,715 | 19,635 | 21,350 | 136 | 782 | 918 | 1,851 | 20,417 | 22,268 |
| **Courts of Appeals, District Courts and Other Judicial Services** | | | | | | | | | | | | |
| Salaries and Expenses - Direct | 323,911 | 4,487,458 | 4,811,369 | 340,000 | 4,671,018 | 5,011,018 | 7,281 | 291,482 | 298,763 | 332,565 | 4,977,216 | 5,309,781 |
| Vaccine Injury Fund | - | 4,253 | 4,253 | - | 5,428 | 5,428 | - | (643) | (643) | - | 4,785 | 4,785 |
| Total, Salaries and Expenses | 323,911 | 4,491,711 | 4,815,622 | 340,000 | 4,676,446 | 5,016,446 | 7,281 | 290,839 | 298,120 | 332,565 | 4,982,001 | 5,314,566 |
| Defender Services | - | 849,400 | 849,400 | - | 977,748 | 977,748 | - | 103,447 | 103,447 | - | 1,081,195 | 1,081,195 |
| Fees of Jurors and Commissioners | - | 62,206 | 62,206 | - | 61,861 | 61,861 | - | 2,247 | 2,247 | - | 64,108 | 64,108 |
| Court Security | - | 428,858 | 428,858 | - | 452,607 | 452,607 | - | 42,431 | 42,431 | - | 495,038 | 495,038 |
| Subtotal (CADCOJS) | 323,911 | 5,832,175 | 6,156,086 | 340,000 | 6,168,662 | 6,508,662 | 7,281 | 438,964 | 446,245 | 332,565 | 6,622,342 | 6,954,907 |
| **Administrative Office of the U.S. Courts** | - | 79,049 | 79,049 | - | 83,075 | 83,075 | - | 4,180 | 4,180 | - | 87,255 | 87,255 |
| **Federal Judicial Center** | - | 25,725 | 25,725 | - | 27,328 | 27,328 | - | 1,366 | 1,366 | - | 28,694 | 28,694 |
| **Payment to Judicial Retirement Funds** | 76,140 | - | 76,140 | 82,374 | - | 82,374 | 7,987 | - | 7,987 | 90,361 | - | 90,361 |
| **Sentencing Commission** | - | 16,225 | 16,225 | - | 16,837 | 16,837 | - | 758 | 758 | - | 17,595 | 17,595 |
| **Total Appropriated** | 406,222 | 6,085,216 | 6,491,438 | 428,746 | 6,431,999 | 6,860,745 | 15,438 | 453,302 | 468,740 | 429,476 | 6,900,009 | 7,329,485 |

1/ For FY 2009, the enacted mandatory level is $402,103 and the actual mandatory spending was $406,222

2/ FY 2009 discretionary appropriations, includes $10.0 million in Salaries and Expenses total in emergency appropriations from the War Supplemental

3/ FY 2010 mandatory amounts reflect the enacted appropriation level

4/ FY 2011 discretionary amounts include a fiscal year 2011 cost-of-living adjustment for judges

**The Judiciary**
**Summary of Mandatory Costs**

| | FY 2009 Actual [1/] | | FY 2010 Estimate [2/] | | FY 2011 [3/] | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | Change | | Request | |
| | Authorized Positions | Amount ($000) | Authorized Positions | Amount ($000) | Authorized Positions | Amount ($000) | Authorized Positions | Amount ($000) |
| Supreme Court | 9 | 2,119 | 9 | 2,174 | - | 23 | 9 | 2,197 |
| Court of Appeals for the Federal Circuit | 12 | 2,458 | 12 | 2,491 | - | 11 | 12 | 2,502 |
| Court of International Trade | 9 | 1,696 | 9 | 1,845 | - | 6 | 9 | 1,851 |
| Courts of Appeals, District Courts and Other Judicial Services | 1,197 | 319,689 | 1,197 | 325,284 | - | 7,281 | 1,197 | 332,565 |
| Payment to Judiciary Trust Funds | - | 76,140 | - | 82,374 | - | 7,987 | - | 90,361 |
| **Total** | **1,227** | **402,103** | **1,227** | **414,168** | **-** | **15,308** | **1,227** | **429,476** |

1/ Fiscal Year 2009 amounts reflect the actual spending; the enacted mandatory level is $406,222.

2/ Fiscal Year 2010 amounts reflect the planned spending; the enacted appropriations level is $428,746.

3/ The requested fiscal year 2011 cost-of-living adjustment for judges is treated as a "discretionary " cost and thus is not in this amount.

## Summary of Personnel

| Full Time Equivalents by Account | FY 2009 Actual FTEs | FY 2010 Estimate FTEs | FY 2011 Request Increase FTEs | FY 2011 Request Total FTEs |
|---|---|---|---|---|
| *Direct Positions* | | | | |
| **Supreme Court** | | | | |
| Salaries and Expenses | 480 | 485 | 9 | 494 |
| Buildings and Grounds | 43 | 48 | 1 | 49 |
| **Court of Appeals for the Fed. Circuit** | 142 | 154 | 9 | 163 |
| **Court of International Trade** | 76 | 80 | - | 80 |
| **Courts of Appeals, District Courts and Other Judicial Services** | | | | |
| Salaries and Expenses | 29,569 | 30,203 | 998 | 31,201 |
| Defender Services | 2,568 | 2,736 | 113 | 2,849 |
| Fees of Jurors and Commissioners | - | - | - | - |
| Court Security | 48 | 70 | 3 | 73 |
| *Subtotal* | *32,185* | *33,009* | *1,114* | *34,123* |
| **Administrative Office of the U.S. Courts** | 631 | 639 | 2 | 641 |
| **Federal Judicial Center** | 141 | 138 | 2 | 140 |
| **Payment to Judicial Retirement Funds** | - | - | - | - |
| **Sentencing Commission** | 103 | 110 | - | 110 |
| **Grand Total** | **33,801** | **34,663** | **1,137** | **35,800** |
| *Reimbursable Positions* | | | | |
| **Supreme Court** | | | | |
| Salaries and Expenses | - | - | - | - |
| Buildings and Grounds | - | - | - | - |
| **Court of Appeals for the Fed. Circuit** | - | - | - | - |
| **Court of International Trade** | - | - | - | - |
| **Courts of Appeals, District Courts and** | - | - | - | - |
| **Other Judicial Services** | - | - | - | - |
| Salaries and Expenses | 26 | 26 | - | 26 |
| Defender Services | - | - | - | - |
| Fees of Jurors and Commissioners | - | - | - | - |
| Court Security | - | - | - | - |
| Subtotal | 26 | 26 | - | 26 |
| **Administrative Office of the U.S. Courts** | 250 | 256 | 3 | 259 |
| **Federal Judicial Center** | 1 | 1 | - | 1 |
| **Payment to Judicial Retirement Funds** | - | - | - | - |
| **Sentencing Commission** | - | - | - | - |
| **Violent Crime Reduction Trust Fund** | - | - | - | - |
| **Grand Total** | **277** | **283** | **3** | **286** |

| | COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **FY 2011 Summary of Requested Changes** | Supreme Court | | Federal Circuit | | International Trade | | Salaries and Expenses | | Defender Services | | Fees of Jurors and Commissioners | Court Security | | Subtotal | | Administrative Office | | Fed. Judicial Center | | Judiciary Trust Funds | Sentencing Commission | | Total Judiciary[1] | |
| | FTE | ($000) | FTE | ($000) | FTE | ($000) | FTE | ($000) | FTE | ($000) | ($000) | FTE | ($000) | FTEs | ($000) | FTE | ($000) | FTE | ($000) | ($000) | FTE | ($000) | FTE | ($000) |
| FY 2010 Enacted Appropriation | 533 | 88,559 | 154 | 32,560 | 80 | 21,350 | 30,203 | 5,011,018 | 2,736 | 977,748 | 61,861 | 70 | 452,607 | 33,009 | 6,503,234 | 639 | 83,075 | 138 | 27,328 | 82,374 | 110 | 16,437 | 34,663 | 6,855,317 |
| FY 2010 Vaccine Injury Trust Fund | - | | - | | | | | 5,428 | - | | | | | | 5,428 | | | | | | | | | 5,428 |
| **FY 2010 Available Appropriation** | **533** | **88,559** | **154** | **32,560** | **80** | **21,350** | **30,203** | **5,016,446** | **2,736** | **977,748** | **61,861** | **70** | **452,607** | **33,009** | **6,508,662** | **639** | **83,075** | **138** | **27,328** | **82,374** | **110** | **16,837** | **34,663** | **6,860,745** |
| **FY 2011 Adjustments to Base** | | | | | | | | | | | | | | | | | | | | | | | | |
| **Judges** | | | | | | | | | | | | | | | | | | | | | | | | |
| Pay and benefit cost adjustments | | 23 | | 35 | | 23 | | 6,883 | | | | | | | 6,883 | | | | | | | | | 6,964 |
| Additional senior judges | | | | | | | 108 | 13,029 | | | | | | 108 | 13,029 | | | | | | | | 108 | 13,029 |
| Increase in average number of filled Article III judgeships | | | | | | | 32 | 4,024 | | | | | | 32 | 4,024 | | | | | | | | 32 | 4,024 |
| Non-recurring costs of new 2010 judges | | | - | | | | | (874) | | | | | | | (874) | | | | | | | | | (874) |
| Payments to judiciary retirement trust funds | | | - | | | | | | | | | | | | | | | | | 7,987 | - | | | 7,987 |
| **Court Personnel** | | | | | | | | | | | | | | | | | | | | | | | | |
| Pay and benefit cost adjustments | - | 2,611 | | 458 | | | | 96,997 | | 13,182 | | | 278 | | 110,457 | | 3,717 | | 667 | | - | 621 | | 118,531 |
| Pay adjustments for panel attorneys (to $126/hour and $179/hour) | - | | | | | 329 | | | | 33,151 | | | | | 33,151 | | | | | | | | | 33,480 |
| **Other Changes** | | | | | | | | | | | | | | | | | | | | | | | | |
| Reduction for non-recurring costs | | (6,200) | | | | | | | | (300) | | | (885) | | (1,185) | | | | | | | | | (7,385) |
| - Financing adj. necessary to maintain current services | | | | | | | | 18,099 | | (3,633) | 451 | | 5,000 | | 19,917 | | (219) | | | | - | | | 19,698 |
| - Inflation (non-space-related) | | 282 | | 80 | | 284 | | 23,697 | | 1,689 | 442 | | 64 | | 25,892 | | 65 | | 94 | | - | 137 | | 26,834 |
| Vaccine Injury Trust Fund adjustment | | | | | | | | (643) | | | | | | | (643) | | | | | | | | | (643) |
| Space related costs (includes inflation for space rental rates) | | | | 787 | | 228 | | 36,698 | | 1,174 | | | 140 | | 38,012 | | | | | | | | | 39,027 |
| Information technology adjustments for ongoing operations | | | | | | | | 3,473 | | | | | | | 3,473 | | 330 | | | | | | | 3,803 |
| Annualization of new FY 2010 positions | | | 3 | 377 | | | 360 | 29,097 | 54 | 8,910 | | | | 414 | 38,007 | | | 2 | 195 | | | | 419 | 38,579 |
| Defender Services workload increase | | | | | | | | | 59 | 28,598 | | | | 59 | 28,598 | - | | | | | | | 59 | 28,598 |
| Change in available jurors | | | | | | | | | | | 174 | | | | 174 | | | | | | | | | 174 |
| FPS security service charges | | | | | | 54 | - | | | | | | 5,385 | | 5,385 | | | | | | - | | | 5,439 |
| FY 2011 court security officer wage adjustments | | | | | | | | | - | | | | 13,295 | | 13,295 | | | | | | | | | 13,295 |
| Annualization of new FY 2010 court security officers | | | | | - | | | | | | | | 832 | | 832 | | | | | | | | | 832 |
| - Additional court security officers in FY 2011 | | | | | | | | | | | | | 2,071 | | 2,071 | | | | | | | | | 2,071 |
| Adjustments to base for security systems and equipment | | | | | | | - | | | | | | 9,774 | | 9,774 | | | | | | - | | | 9,774 |
| Additional requirements for high-threat trials | - | | | | | | | | | 15,600 | 1,180 | - | 5,285 | | 22,065 | | | | | | | | | 22,065 |
| Subtotal, FY 2011 Adjustments to Base | | (3,284) | 3 | 1,737 | - | 918 | 500 | 230,480 | 113 | 98,371 | 2,247 | - | 41,239 | 613 | 372,337 | - | 3,893 | 2 | 956 | 7,987 | - | 758 | 618 | 385,302 |
| **FY 2011 Adjusted Base** | 533 | 85,275 | 157 | 34,297 | 80 | 22,268 | 30,703 | 5,246,926 | 2,849 | 1,076,119 | 64,108 | 70 | 493,846 | 33,622 | 6,880,999 | 639 | 86,968 | 140 | 28,284 | 90,361 | 110 | 17,595 | 35,281 | 7,246,047 |
| **FY 2010 Program Increases** | | | | | | | | | | | | | | | | | | | | | | | | |
| **Judges** | | | | | | | | | | | | | | | | | | | | | | | | |
| - Magistrate judges and staff | | | | | | | 27 | 2,961 | | | | | | 27 | 2,961 | | - | | | | | | 27 | 2,961 |
| **Court Personnel and Programs** | | | | | | | | | | | | | | | | | | | | | | | | |
| - New court support staff for workload increases | | | | | | | 471 | 39,679 | | | | | | 471 | 39,679 | | | | | | | | 471 | 39,679 |
| Telecommunications infrastructure enhancements | - | | | | | | | 25,000 | - | | | | | | 25,000 | | | | | | | | | 25,000 |
| Information technology enhancements | - | | | 1,106 | | | | | | | | | | | | | | | | | | | | 1,106 |
| Increase in non-capital rate from $126 to $141 per hour | - | | | | | | | | | 4,776 | | | | | 4,776 | | | | | | | | | 4,776 |
| - New federal defender organization | | - | | | | | | | | 300 | | | | - | 300 | | | | | | | | | 300 |
| Five new judiciary-funded USMS positions | | | | | | | | | | | | 3 | 309 | 3 | 309 | | | | | | | | 3 | 309 |
| National contract for vehicle barrier maintenance | - | | | | | | - | | | | | | 683 | | 683 | | | | | | | | | 683 |
| - Facial recognition system (pilot) | - | | | | | | | - | | | | | 200 | | 200 | | | | | | | | | 200 |
| - Twelve new police officers | 9 | 646 | | | | | | | | | | | | | - | | | | | | | | 9 | 646 |
| Support expenses for new police officers | | 240 | | | | | | | | | | | | - | | | | | | | | | | 240 |
| - Additional personnel | 1 | 85 | 3 | 340 | - | | - | | | | | | - | | | 2 | 287 | | | | - | | 6 | 712 |
| - Roof system repairs | | 6,300 | | | - | | | | | | | | | | - | | | | | | | | | 6,300 |
| - Education and training program enhancements | | | | | | | | | | | | | | | | | | | 410 | | | | | 410 |
| Internship program | | | 3 | 116 | | | | | | | | | | | | | | | | - | | | 3 | 116 |
| Subtotal, FY 2011 Program Increases | 10 | 7,271 | 6 | 1,562 | - | - | 498 | 67,640 | - | 5,876 | - | 3 | 1,192 | 501 | 73,900 | 2 | 287 | - | 410 | | - | - | 519 | 83,438 |
| **Total Increases Requested, FY 2011** | 10 | 3,987 | 9 | 3,299 | | 918 | 998 | 298,120 | 113 | 103,447 | 2,247 | 3 | 42,431 | 1,114 | 446,245 | 2 | 4,180 | 2 | 1,366 | 7,987 | | 758 | 1,137 | 468,740 |
| **FY 2011 Appropriation Request** | 543 | 92,546 | 163 | 35,859 | 80 | 22,268 | 31,201 | 5,314,566 | 2,849 | 1,081,195 | 64,108 | 73 | 495,038 | 34,123 | 6,954,907 | 641 | 87,255 | 140 | 28,694 | 98,361 | 110 | 17,595 | 35,800 | 7,329,485 |

[1] The Judiciary FTE totals do not reflect reimbursable positions (283 in FY 2010 and 286 in FY 2011)

THE JUDICIARY

COMPARATIVE SUMMARY OF OBLIGATIONS BY OBJECT CLASSIFICATION
(IN THOUSANDS OF DOLLARS)

| Object Classification | FY 2009 Actual | FY 2010 Financial Plan | FY 2011 Estimate |
|---|---|---|---|
| Personnel Services and benefits | | | |
| 11 Personnel compensation | 2,999,781 | 3,251,464 | 3,393,223 |
| 12 Personnel benefits | 851,215 | 926,706 | 971,589 |
| 13 Benefits for former personnel | 4,157 | 8,180 | 8,531 |
| Total personnel services and benefits | 3,855,153 | 4,186,350 | 4,373,343 |
| Contractual services and supplies | | | |
| 21 Travel | 110,381 | 117,339 | 121,269 |
| 22 Transportation of things | 6,708 | 8,721 | 9,185 |
| 23 Rental payments to GSA | 981,357 | 1,028,197 | 1,064,827 |
| 23 Rental payments to others | 34,202 | 37,560 | 40,944 |
| 23 Communications utilities & misc charges | 120,147 | 129,281 | 134,359 |
| 24 Printing and reproduction | 17,309 | 26,524 | 27,704 |
| 25 Other services | 1,299,123 | 1,396,827 | 1,533,944 |
| 26 Supplies and materials | 29,551 | 33,795 | 35,207 |
| Total contractual services and supplies | 2,598,778 | 2,778,244 | 2,967,439 |
| Acquisition of capital assets | | | |
| 31 Equipment | 211,214 | 295,794 | 316,943 |
| 32 Lands and Structures | 3,532 | 6,857 | 6,357 |
| Total acquisition of capital assets | 214,746 | 302,651 | 323,300 |
| Grants and fixed charges | | | |
| 41 Grants, subsidies and contributions | 120,083 | 130,463 | 139,544 |
| 42 Insurance claims and indemnities | - | - | - |
| 43 Interest and dividends | - | - | - |
| Total grants and fixed charges | 120,083 | 130,463 | 139,544 |
| **Total obligations** | **6,788,760** | **7,397,708** | **7,803,626** |
| Unobligated balance, start-of-year | (365,945) | (262,837) | (167,468) |
| Unobligated balance, end-of-year | 262,837 | 167,468 | 27,960 |
| Unobligated balance, expiring | (2,648) | - | - |
| Emergency Apprioriations | (31) | | |
| Current Year Offsetting Collections | (165,873) | (441,593) | (334,633) |
| Prior Year Recoveries | (25,412) | - | - |
| Transfer | (250) | | |
| **Appropriation, Enacted** | **6,491,438** | **6,860,745** | **7,329,485** |

Detailed tables by fiscal year and appropriation follow

THE JUDICIARY
COMPARATIVE SUMMARY OF OBLIGATIONS BY OBJECT CLASSIFICATION ($000)

Fiscal Year 2009

| Object Classification | Supreme Court | Ct of Appeals Federal Cir | Ct of Intn'l Trade | Salaries and Expenses | Defender Services | Fees of Jurors | Court Security | Administrative Office: Direct Program[1] | Administrative Office: Reimbursable Program[1] | Federal Judicial Ctr | Judicial Ofcr Retmt Fund | Sentencing Commission | Vaccine Injury Trust Fund, Supplemental | Total Judiciary |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Personnel Services and benefits | | | | | | | | | | | | | | |
| 11 Personnel compensation | 41,299 | 14,402 | 7,290 | 2,545,352 | 258,746 | 29,620 | 5,286 | 106 118 | (31,212) | 14,022 | - | 8,858 | - | 2,999,781 |
| 12 Personnel benefits | 14,000 | 2,862 | 1,587 | 733,087 | 74 031 | 4 | 1,509 | 25,690 | (7,754) | 3,638 | - | 2,561 | - | 851,215 |
| 13 Benefits for former personnel | 32 | 25 | - | 3 990 | 51 | - | - | 59 | - | - | - | - | - | 4,157 |
| Total personnel services and benefits | 55 331 | 17 289 | 8 877 | 3 282,429 | 332,828 | 29,624 | 6,795 | 131 867 | (38,966) | 17 660 | - | 11,419 | - | 3,855,153 |
| Contractual services and supplies | | | | | | | | | | | | | | |
| 21 Travel | 434 | 119 | 109 | 61 839 | 10,225 | 30,148 | 349 | 1,497 | (354) | 5,126 | - | 889 | - | 110 381 |
| 22 Transportation of things | 72 | 27 | 7 | 5 984 | 349 | - | 86 | 77 | - | 56 | - | 50 | - | 6 708 |
| 23 Rental payments to GSA | - | 5,018 | 7 528 | 929,580 | 34,095 | - | 5,136 | - | - | - | - | - | - | 981 357 |
| 23 Rental payments to others | - | - | - | 33 912 | 290 | - | - | - | - | - | - | - | - | 34 202 |
| 23 Communications utilities & misc charges | 3 982 | 276 | 133 | 106,722 | 5 977 | 1 469 | 714 | 695 | (421) | 512 | - | 88 | - | 120,147 |
| 24 Printing and reproduction | 453 | 118 | 29 | 15,958 | 329 | - | - | 62 | - | 71 | - | 289 | - | 17 309 |
| 25 Other services | 13 489 | 6,772 | 1,820 | 412,923 | 383,351 | 902 | 395 790 | 5,922 | (1 789) | 1,295 | 76,140 | 2 508 | - | 1 299,123 |
| 26 Supplies and materials | 1 617 | 160 | 59 | 22,940 | 1,893 | 1,119 | 544 | 454 | (190) | 868 | - | 87 | - | 29,551 |
| Total contractual services and supplies | 20 047 | 12 490 | 9,685 | 1 589 858 | 436,509 | 33,638 | 402 619 | 8,707 | (2,754) | 7,928 | 76,140 | 3,911 | - | 2,598,778 |
| Acquisition of capital assets | | | | | | | | | | | | | | |
| 31 Equipment | 3,902 | 448 | 789 | 171 552 | 7 143 | - | 23,341 | 2,682 | (200) | 735 | - | 822 | - | 211,214 |
| 32 Lands and Structures | 3,532 | - | - | - | - | - | - | - | | - | - | - | - | 3,532 |
| Total acquisition of capital assets | 7,434 | 448 | 789 | 171 552 | 7 143 | - | 23,341 | 2 682 | (200) | 735 | - | 822 | - | 214 746 |
| Grants and fixed charges | | | | | | | | | | | | | | |
| 41 Grants, subsidies and contributions | - | - | - | - | 120,083 | - | - | - | - | - | - | - | - | 120,083 |
| 42 Insurance claims and indemnities | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 43 Interest and dividends | - | - | - | - | | - | - | - | - | - | - | - | - | - |
| Total grants and fixed charges | - | - | - | - | 120,083 | - | - | - | - | - | - | - | - | 120 083 |
| **FY 2009 Total Obligations** | **82,812** | **30,227** | **19,351** | **5,043,839** | **896,563** | **63,262** | **432,755** | **143,256** | **(41,920)** | **26,323** | **76,140** | **16,152** | - | **6,788,760** |
| Unobligated balance, start-of-year | (30 765) | - | (683) | (274 616) | (48 811) | (2,404) | (5,930) | - | - | - | - | (2,736) | - | (365,945) |
| Unobligated balance, end-of-year | 36,177 | - | 924 | 206 292 | 6 365 | 5,323 | 5,000 | - | - | - | - | 2,736 | - | 262 817 |
| Unobligated balance, expiring | - | 203 | 43 | - | - | - | (2 967) | - | - | - | - | 73 | - | (2,648) |
| Emergency Appropriation | | - | | - | - | - | - | (31) | - | | - | - | - | (31) |
| Current Year Offsetting Collections | - | (46) | - | (142,953) | - | - | - | (22,256) | | (598) | - | - | - | (165 853) |
| Prior Year Recoveries | - | - | (30) | (16 940) | (4,717) | (3 725) | - | - | - | - | - | - | - | (25,412) |
| Vaccine Injury Compensation Trust Fund | - | - | - | (4 253) | - | - | - | - | - | - | - | - | 4,253 | - |
| Transfer | | - | - | - | - | (250) | - | - | | - | - | - | - | (250) |
| Reimbursable Program[1] | - | - | - | - | - | - | - | (41,920) | 41 920 | - | - | - | - | - |
| **FY 2009 Appropriation, Available 2/** | **88,224** | **30,384** | **19,605** | **4,811,369** | **849,400** | **62,206** | **428,858** | **79,049** | - | **25,725** | **76,140** | **16,225** | **4,253** | **6,491,438** |

[1] More information on AO reimbursable program obligations is included in section 9

THE JUDICIARY
COMPARATIVE SUMMARY OF OBLIGATIONS BY OBJECT CLASSIFICATION ($000)

Fiscal Year 2010

| Object Classification | Supreme Court | Ct of Appeals Federal Cir | Ct of Int'l Trade | Salaries and Expenses | Defender Services | Fees of Jurors | Court Security | Administrative Office Direct Program[1] | Administrative Office Reimbursable Program[1] | Federal Judicial Ctr | Judicial Ofcr Retrmt Fund | Sentencing Commission | Vaccine Injury Trust Fund | Total Judiciary |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Personnel Services and benefits | | | | | | | | | | | | | | |
| 11 Personnel compensation | 45,461 | 16,553 | 8,049 | 2,754,833 | 285,704 | 30,343 | 6,422 | 112,544 | (33,583) | 14 915 | - | 10,223 | - | 3,251,464 |
| 12 Personnel benefits | 16,594 | 3 346 | 1,741 | 796 486 | 81,039 | 6 | 1 691 | 27,391 | (8,343) | 4,037 | - | 2 718 | - | 926,706 |
| 13 Benefits for former personnel | 32 | 25 | - | 7 995 | 117 | - | - | 11 | - | - | | | - | 8,180 |
| Total personnel services and benefits | 62 087 | 19,924 | 9,790 | 3,559,314 | 366,860 | 30,349 | 8 113 | 139,946 | (41,926) | 18,952 | - | 12,941 | - | 4,186,350 |
| Contractual services and supplies | | | | | | | | | | | | | | |
| 21 Travel | 490 | 120 | 144 | 65,957 | 11,603 | 30,800 | 432 | 1,769 | (381) | 5,546 | - | 859 | - | 117,339 |
| 22 Transportation of things | 61 | 27 | 15 | 7,924 | 447 | - | 92 | 57 | - | 66 | - | 32 | - | 8 721 |
| 23 Rental payments to GSA | - | 5,155 | 9,100 | 971,600 | 37 129 | - | 5 213 | - | - | - | - | - | - | 1,028,197 |
| 23 Rental payments to others | - | - | - | 37,207 | 353 | - | - | - | - | - | - | - | - | 37,560 |
| 23 Communications utilities & misc charges | 3,962 | 283 | 213 | 114,926 | 6,570 | 1,518 | 743 | 889 | (453) | 542 | - | 88 | - | 129,281 |
| 24 Printing and reproduction | 514 | 119 | 5 | 24,984 | 501 | - | - | 109 | - | 76 | - | 216 | - | 26,524 |
| 25 Other services | 12,328 | 6,318 | 1,708 | 455,706 | 419,048 | 931 | 410,409 | 5,685 | (1,925) | 1,458 | 82,374 | 2,787 | - | 1,396,827 |
| 26 Supplies and materials | 1,675 | 162 | 85 | 25,983 | 2,200 | 1,150 | 1,314 | 554 | (205) | 802 | - | 75 | - | 33,795 |
| Total contractual services and supplies | 19,030 | 12 184 | 11,270 | 1,704,287 | 477,851 | 34,399 | 418,203 | 9,063 | (2,964) | 8,490 | 82,374 | 4,057 | - | 2,778,244 |
| Acquisition of capital assets | | | | | | | | | | | | | | |
| 31 Equipment | 4,250 | 604 | 930 | 246,841 | 8,939 | - | 31,291 | 2,221 | (215) | 594 | - | 339 | - | 295,794 |
| 32 Lands and Structures | 6,857 | - | - | - | - | - | - | - | - | - | - | - | - | 6,857 |
| Total acquisition of capital assets | 11,107 | 604 | 930 | 246,841 | 8,939 | - | 31,291 | 2,221 | (215) | 594 | - | 339 | - | 302,651 |
| Grants and fixed charges | | | | | | | | | | | | | | |
| 41 Grants, subsidies and contributions | - | - | - | - | 130 463 | - | - | - | - | - | - | - | - | 130,463 |
| 42 Insurance claims and indemnities | - | - | | - | - | - | - | - | - | - | - | - | - | - |
| 43 Interest and dividends | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total grants and fixed charges | - | - | - | - | 130,463 | - | - | - | - | - | - | - | - | 130 463 |
| FY 2010 Total Obligations | 92,224 | 32,712 | 21,990 | 5,510,442 | 984,113 | 64,748 | 457,607 | 151,230 | (45,105) | 28,036 | 82,374 | 17,337 | - | 7,397,708 |
| Unobligated balance, start-of-year | (36,177) | - | (924) | (206,312) | (6,365) | (5,323) | (5,000) | - | - | - | - | (2,736) | - | (262,837) |
| Unobligated balance, end-of-year | 32,512 | - | 284 | 120,000 | 10,000 | 2,436 | - | - | - | - | - | 2,236 | - | 167,468 |
| Unobligated balance, expired | - | | | | | | | | | | | | | - |
| Current Year Offsetting Collections | - | (152) | - | (407,683) | (10,000) | - | - | (23,050) | - | (708) | - | - | - | (441,593) |
| Vaccine Injury Compensation Trust Fund | - | - | - | (5,428) | - | - | - | - | - | | - | - | 5,428 | - |
| Information Technology Fund | - | - | - | - | | - | - | - | | | - | | - | - |
| Reimbursable Program[1] | - | - | - | - | - | - | - | (45,105) | 45,105 | - | - | - | - | - |
| FY 2010 Appropriation, Assumed | 88,559 | 32,560 | 21,350 | 5,011,018 | 977,748 | 61,861 | 452,607 | 83,075 | - | 27,328 | 82,374 | 16,837 | 5,428 | 6,860,745 |

[1] More information on AO reimbursable program obligations is included in section 9

THE JUDICIARY
COMPARATIVE SUMMARY OF OBLIGATIONS BY OBJECT CLASSIFICATION ($000)

Fiscal Year 2011

| | | | | | | | | Administrative Office | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Object Classification | Supreme Court | Ct of Appeals Federal Cir | Ct of Intn'l Trade | Salaries and Expenses | Defender Services | Fees of Jurors | Court Security | Direct Program[1] | Reimbursable Program[1] | Federal Judicial Ctr | Judicial Ofcr Retmt Fund | Sentencing Commission | Vaccine Injury Trust Fund | Total Judiciary |
| Personnel Services and benefits | | | | | | | | | | | | | | |
| 11 Personnel compensation | 47,190 | 17 647 | 8,276 | 2 870,303 | 304,040 | 31,185 | 6,657 | 116,798 | (35 072) | 15 459 | - | 10,740 | - | 3 393,223 |
| 12 Personnel benefits | 18 220 | 3,578 | 1,866 | 830,639 | 88,443 | 6 | 1,717 | 28,672 | (8 713) | 4,305 | - | 2,856 | - | 971,589 |
| 13 Benefits for former personnel | 32 | 25 | - | 8,338 | 125 | - | - | 11 | - | - | - | - | - | 8,531 |
| Total personnel services and benefits | 65 442 | 21 250 | 10 142 | 3,709,280 | 392,608 | 31,191 | 8,374 | 145,481 | (43,785) | 19,764 | - | 13 596 | | 4 373,343 |
| Contractual services and supplies | | | | | | | | | | | | | | |
| 21 Travel | 491 | 122 | 145 | 68,728 | 11 893 | 31,653 | 504 | 1,815 | (398) | 5,436 | - | 880 | | 121 269 |
| 22 Transportation of things | 66 | 28 | 15 | 8 331 | 453 | - | 122 | 58 | - | 67 | - | 45 | | 9 185 |
| 23 Rental payments to GSA | - | 6,858 | 9 328 | 1,003,890 | 39 402 | - | 5,349 | - | - | - | - | - | | 1 064,827 |
| 23 Rental payments to others | - | - | - | 40,582 | 362 | - | - | - | - | | - | - | | 40,944 |
| 23 Communications utilities & misc charges | 3,947 | 287 | 216 | 119 854 | 6,650 | 1,561 | 758 | 912 | (473) | 522 | - | 125 | - | 134,359 |
| 24 Printing and reproduction | 520 | 121 | 5 | 26,055 | 507 | - | - | 113 | - | 77 | - | 306 | - | 27 704 |
| 25 Other services | 13,955 | 5,629 | 2 025 | 485,489 | 488 514 | 957 | 437 687 | 5,831 | (2 010) | 1,415 | 90,361 | 4 091 | | 1,533,944 |
| 26 Supplies and materials | 1,690 | 164 | 87 | 27,097 | 2 225 | 1 182 | 1,390 | 569 | (215) | 912 | - | 106 | | 35,207 |
| Total contractual services and supplies | 20,669 | 13 209 | 11 821 | 1 780,026 | 550 006 | 35,353 | 445 810 | 9,298 | (3,096) | 8,429 | 90,361 | 5 553 | - | 2 967 439 |
| Acquisition of capital assets | | | | | | | | | | | | | | |
| 31 Equipment | 4 630 | 1 446 | 589 | 257,425 | 9,037 | - | 40 854 | 1 804 | (225) | 701 | - | 682 | - | 316 943 |
| 32 Lands and Structures | 6,357 | - | - | - | | - | - | - | | - | - | - | | 6,357 |
| Total acquisition of capital assets | 10,987 | 1 446 | 589 | 257,425 | 9 037 | - | 40 854 | 1,804 | (225) | 701 | - | 682 | - | 323,300 |
| Grants and fixed charges | | | | | | | | | | | | | | |
| 41 Grants, subsidies and contributions | - | - | - | - | 139,544 | - | - | - | - | - | - | - | - | 139 544 |
| 42 Insurance claims and indemnities | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| 43 Interest and dividends | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total grants and fixed charges | - | - | - | - | 139,544 | - | - | - | - | - | - | - | - | 139 544 |
| **FY 2011 Total Obligations** | **97,098** | **35,905** | **22,552** | **5,746,731** | **1,091,195** | **66,544** | **495,038** | **156,583** | **(47,106)** | **28,894** | **90,361** | **19,831** | - | **7,803,626** |
| Unobligated balance, start-of-year | (32 512) | - | (284) | (120,000) | (10,000) | (2,436) | - | - | - | - | - | (2,236) | | (167,468) |
| Unobligated balance, end-of-year | 27,960 | - | - | - | - | - | - | - | - | - | - | - | - | 27,960 |
| Current Year Offsetting Collections | - | (46) | - | (312 165) | - | - | - | (22,222) | - | (200) | - | - | - | (334 633) |
| Vaccine Injury Compensation Trust Fund | - | - | - | (4,785) | - | - | - | - | - | - | - | - | 4,785 | - |
| Reimbursable Program[1] | - | - | - | - | - | - | - | (47 106) | 47,106 | - | - | - | - | - |
| **FY 2011 Appropriation, Available** | **92,546** | **35,859** | **22,268** | **5,309,781** | **1,081,195** | **64,108** | **495,038** | **87,255** | - | **28,694** | **90,361** | **17,595** | **4,785** | **7,329,485** |

[1] More information on AO reimbursable program obligations is included in section 9

**THE JUDICIARY**

**Outlays - FY 2009 to FY 2011**
(Dollars in Thousands)

| Appropriation | FY 2009 | FY 2010 1/ | FY 2011 1/ | Outlay Spendout Rates | | |
|---|---|---|---|---|---|---|
| | | | | YR 1 | YR 2 | YR 3 |
| Supreme Court | | | | | | |
| Discretionary | 63,612 | 69,404 | 74,865 | 80% | 20% | 0% |
| Mandatory | 2,119 | 2,174 | 2,197 | 100% | 0% | 0% |
| **Total, Salaries and Expenses** | **65,731** | **71,578** | **77,062** | | | |
| **Buildings and Grounds** | **24,631** | **24,679** | **24,588** | 68% | 12% | 20% |
| Court of Appeals for the Federal Circuit | | | | | | |
| Discretionary | 25,324 | 31,689 | 32,614 | 80% | 20% | 0% |
| Mandatory | 2,458 | 2,491 | 2,502 | 100% | 0% | 0% |
| **Total, Court of Appeals for the Federal Circuit** | **27,782** | **34,180** | **35,116** | | | |
| Court of International Trade | | | | | | |
| Discretionary | 17,652 | 20,124 | 20,596 | 95% | 5% | 0% |
| Mandatory | 1,696 | 1,845 | 1,851 | 100% | 0% | 0% |
| **Total, Court of International Trade** | **19,348** | **21,969** | **22,447** | | | |
| *Courts of Appeals, District Courts, and Other Judicial Services* | | | | | | |
| Salaries and Expenses - Discretionary | 4,459,497 | 4,831,328 | 4,961,168 | 93% | 7% | 0% |
| Salaries and Expenses - Mandatory | 319,689 | 325,284 | 332,565 | 100% | 0% | 0% |
| **Total, Salaries and Expenses** | **4,779,186** | **5,156,612** | **5,293,733** | | | |
| **Defender Services** | **888,525** | **988,146** | **1,078,207** | 97% | 3% | 0% |
| **Fees of Jurors & Commissioners** | **62,374** | **63,652** | **66,276** | 99 5% | 0 5% | 0% |
| **Court Security** | **410,197** | **453,510** | **479,390** | 63 3% | 36 7% | 0% |
| ***Total, Courts of Appeals, District Courts, and Other Judicial Services*** | **6,140,282** | **6,661,920** | **6,917,606** | | | |
| **Administrative Office of the United States Courts** | **81,625** | **82,686** | **86,780** | 94% | 6% | 0% |
| **Federal Judicial Center** | **25,123** | **26,857** | **27,394** | 95% | 5% | 0% |
| **Judicial Retirement Funds (MANDATORY)** | **76,140** | **82,374** | **98,361** | 100% | 0% | 0% |
| **United States Sentencing Commission** | **15,329** | **16,214** | **17,939** | 85% | 15% | 0% |
| **Subtotal, Discretionary** | 6,073,889 | 6,608,289 | 6,869,817 | | | |
| **Subtotal, Mandatory** | 402,103 | 414,168 | 429,476 | | | |
| **Total, Judiciary** | **6 475,992** | **7,022,457** | **7,299,293** | | | |

1/ Mandatory amounts for fiscal years 2010 and 2011 reflect planned outlay levels

**SUPREME COURT OF THE UNITED STATES**
**SUMMARY STATEMENT RELATING APPROPRIATION ESTIMATES TO THE CURRENT APPROPRIATION**

| | Requirements | | | |
|---|---|---|---|---|
| | 2010 Available Appropriation | 2011 Requested Appropriation | Requested Increase | |
| Fiscal Year 2010 Appropriation | | | | $88,559,000 |
| Salaries and Expenses | $74,034,000 | $77,758,000 | $3,724,000 | |
| Care of the Building and Grounds | $14,525,000 | $14,788,000 | $263,000 | |
| Totals | $88,559,000 | $92,546,000 | $3,987,000 | |
| Proposed Increase from Fiscal Year 2010 Appropriation | | | | $3,987,000 |
| Total Requested Budget Authority, Fiscal Year 2011 | | | | $92,546,000 |

SUPREME COURT OF THE UNITED STATES
*Salaries and Expenses*
SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | |
|---|---|
| **Fiscal Year 2010 Appropriation** | **$74,034,000** |
| **Fiscal Year 2011 Requested Appropriation** | **$77,758,000** |
| **Requested Increase from Fiscal Year 2010 Appropriation** | **$3,724,000** |

APPROPRIATION LANGUAGE

SUPREME COURT OF THE UNITED STATES
SALARIES AND EXPENSES

For expenses necessary for the operation of the Supreme Court, as required by law, excluding care of the building and grounds, including purchase or hire, driving, maintenance, and operation of an automobile for the Chief Justice, not to exceed $10,000 for the purpose of transporting Associate Justices, and hire of passenger motor vehicles as authorized by 31 U.S.C. 1343 and 1344; not to exceed $10,000 for official reception and representation expenses; and for miscellaneous expenses, to be expended as the Chief Justice may approve, [$74,034,000] $77,758,000, of which $2,000,000 shall remain available until expended.

SUMMARY OF REQUEST
SUPREME COURT OF THE UNITED STATES
SALARIES AND EXPENSES
FISCAL YEAR 2011
(Dollar amounts in thousands)

**Fiscal Year 2011 Resource Requirements:**

| Page No. | | Mandatory FTE | Mandatory Amount | Discretionary FTE | Discretionary Amount | Total FTE | Total Amount |
|---|---|---|---|---|---|---|---|
| | **Fiscal Year 2010 Base Appropriation** | **9** | **2,166** | **476** | **71,868** | **485** | **74,034** |
| | Adjustment for Revised Mandatory Estimates | - | 8 | - | (8) | - | - |
| | **Adjustments to Base to Maintain Current Services:** | | | | | | |
| | **A. Justices** | | | | | | |
| | 1. Pay and benefit cost adjustments | | | | | | |
| 1.15 | a. Proposed January 2011 pay adjustment (1.4% for nine months) | - | 23 | - | - | - | 23 |
| | **B. Court Support Personnel and Other Programs** | | | | | | |
| | 2. Pay and benefit cost adjustments | | | | | | |
| 1.15 | a. Annualization of the January 2010 pay adjustment (2.42% for three months) | - | - | - | 280 | - | 280 |
| 1.16 | b. Proposed January 2011 pay adjustment (1.4% for nine months) | - | - | - | 592 | - | 592 |
| 1.16 | c. Health benefits increase | - | - | - | 258 | - | 258 |
| 1.16 | d. FERS increase | - | - | - | 735 | - | 735 |
| 1.16 | e. Within-grade increases | - | - | - | 429 | - | 429 |
| 1.16 | f. Promotions and merit increases | - | - | - | 252 | - | 252 |

| | | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|---|
| | **C. Other Adjustments** | FTE | Amount | FTE | Amount | FTE | Amount |
| | 3. Inflationary adjustments | | | | | | |
| 1.17 | a. General inflationary increases | - | - | - | 173 | - | 173 |
| 1.17 | b. Library services | - | - | - | 96 | - | 96 |
| | **Subtotal, adjustments to base to maintain current services** | - | 23 | - | 2,815 | - | 2,838 |
| | **Total Current Services Appropriation Required** | 9 | 2,197 | 476 | 74,675 | 485 | 76,872 |
| | **D. Progam Increases** | | | | | | |
| 1.17 | 4. Twelve new police officer positions | - | - | 9 | 646 | 9 | 646 |
| 1.18 | 5. Support expenses for new police officers | - | - | - | 240 | - | 240 |
| | **Subtotal, Progam Increases** | - | - | 9 | 886 | 9 | 886 |
| | **Total Fiscal Year 2011 Appropriation Required** | 9 | 2,197 | 485 | 75,561 | 494 | 77,758 |
| | **Total Appropriation Increase, Fiscal Year 2010 to Fiscal Year 2011** | - | 23 | - | 3,701 | - | 3,724 |
| | **Financing the Fiscal Year 2011 Request:** | | | | | | |
| | **Total Appropriation Required/Estimated Obligations, Fiscal Year 2011** | 9 | 2,197 | 485 | 75,561 | 494 | 77,758 |

**SUPREME COURT OF THE UNITED STATES**
**SALARIES AND EXPENSES**
**Obligations by Activity ($000)**

| Activity | Fiscal Year 2009 Actual | Fiscal Year 2010 Estimate | Fiscal Year 2011 Request |
|---|---|---|---|
| **Salaries and Expenses, Total Obligations** | **67,575** | **74,034** | **77,758** |
| Unobligated Balance, Start of the Year | - | (2,202) | (2,202) |
| Unobligated Balance, End of the Year | 2,202 | 2,202 | 2,202 |
| Unobligated Balance, Expiring | - | - | - |
| **Available Appropriation** | **69,777** | **74,034** | **77,758** |

**Object Classification ($000)**

| Description | Fiscal Year 2009 Actual | Fiscal Year 2010 Estimate | Fiscal Year 2011 Request |
|---|---|---|---|
| 11 Personnel compensation | 38,570 | 42,464 | 44,116 |
| 12 Personnel benefits | 13,229 | 15,750 | 17,346 |
| 13 Benefits for former personnel | 32 | 32 | 32 |
| 21 Travel | 429 | 485 | 491 |
| 22 Transportation of things | 72 | 61 | 61 |
| 23 Rent, communications and utilities | 855 | 930 | 915 |
| 24 Printing and reproduction | 453 | 514 | 520 |
| 25 Other services | 8,671 | 8,148 | 8,232 |
| 26 Supplies and materials | 1,402 | 1,450 | 1,465 |
| 31 Equipment | 3,862 | 4,200 | 4,580 |
| **Total Obligations** | **67,575** | **74,034** | **77,758** |

**SUPREME COURT OF THE UNITED STATES**
**Salaries & Expenses**
**Relation of Obligations to Outlays ($000)**

| | Fiscal Year 2009 Actual | Fiscal Year 2010 Estimate | Fiscal Year 2011 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 67,575 | 74,034 | 77,758 | 3,724 |
| Obligated balance, start of year | 24,578 | 26,422 | 28,878 | 2,456 |
| Obligated balance, end of year | (26,422) | (28,878) | (29,574) | (696) |
| Net Outlays | 65,731 | 71,578 | 77,062 | 5,484 |

**Personnel Summary**

| | Fiscal Year 2009 Actual | Fiscal Year 2010 Estimate | Fiscal Year 2011 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total compensable workyears: | | | | |
| Full-time equivalent employment | 480 | 485 | 494 | 9 |

**SUPREME COURT OF THE UNITED STATES**
**Salaries & Expenses**
**Technology Fund Obligations and Financing**

| Activity | Fiscal Year 2009 Actual | Fiscal Year 2010 Estimated | Fiscal Year 2011 Request |
|---|---|---|---|
| **No-Year Fund, Total Obligations** | $ 724 | $ 2,949 | $ 2,103 |
| Unobligated Balance, Start of the Year | 4,499 | $ 4,529 | $ 3,580 |
| Deposits | $ 2,000 | $ 2,000 | $ 2,000 |
| Unobligated Balance, End of the Year | $ (4,529) | $ (3,580) | $ (3,476) |
| **Available Appropriation** | **$ 1,970** | **$ 2,949** | **$ 2,104** |

Note:
* These funds are included in the Obligations by Activity exhibit on page 1.5

FY 2009 Actuals : The website transfer project is proceeding well; sharepoint and server upgrades are also proceeding.

FY 2010 Projected : The website transfer project is expected to be complete in 2010. The Windows 7 evaluation and Desktop PC Court-wide roll-out are beginning.

FY 2011 Request : Expect to finalize the next Desktop PC Court-wide refresh cycle.

**Table SC.1**
**Summary of Supreme Court Cases**

| Term* | Case Filings During Term | Carried Over From Prior Term | Total Cases | Original & Paid | In Forma Pauperis | Total Cases Disposed Of | Total Cases Not Disposed Of |
|---|---|---|---|---|---|---|---|
| 1970 | 3,419 | 793 | 4,212 | 1,923 | 2,289 | 3,422 | 790 |
| 1975 | 3,940 | 821 | 4,761 | 2,366 | 2,395 | 3,806 | 955 |
| 1980 | 4,174 | 970 | 5,144 | 2,773 | 2,371 | 4,255 | 889 |
| 1981 | 4,422 | 889 | 5,311 | 2,957 | 2,354 | 4,433 | 878 |
| 1982 | 4,201 | 878 | 5,079 | 2,727 | 2,352 | 4,201 | 878 |
| 1983 | 4,222 | 878 | 5,100 | 2,706 | 2,394 | 4,141 | 959 |
| 1984 | 4,047 | 959 | 5,006 | 2,590 | 2,416 | 4,261 | 745 |
| 1985 | 4,413 | 745 | 5,158 | 2,581 | 2,577 | 4,275 | 883 |
| 1986 | 4,240 | 883 | 5,123 | 2,559 | 2,564 | 4,348 | 775 |
| 1987 | 4,493 | 775 | 5,268 | 2,593 | 2,675 | 4,387 | 881 |
| 1988 | 4,776 | 881 | 5,657 | 2,599 | 3,058 | 4,829 | 828 |
| 1989 | 4,918 | 828 | 5,746 | 2,430 | 3,316 | 4,932 | 814 |
| 1990 | 5,502 | 814 | 6,316 | 2,365 | 3,951 | 5,412 | 904 |
| 1991 | 5,866 | 904 | 6,770 | 2,463 | 4,307 | 5,828 | 942 |
| 1992 | 6,303 | 942 | 7,245 | 2,453 | 4,792 | 6,356 | 889 |
| 1993 | 6,897 | 889 | 7,786 | 2,454 | 5,332 | 6,682 | 1,104 |
| 1994 | 6,996 | 1,104 | 8,100 | 2,526 | 5,574 | 7,132 | 968 |
| 1995 | 6,597 | 968 | 7,565 | 2,467 | 5,098 | 6,599 | 966 |
| 1996 | 6,634 | 966 | 7,600 | 2,435 | 5,165 | 6,689 | 911 |
| 1997 | 6,781 | 911 | 7,692 | 2,439 | 5,253 | 6,718 | 974 |
| 1998 | 7,109 | 974 | 8,083 | 2,394 | 5,689 | 7,015 | 1,068 |
| 1999 | 7,377 | 1,068 | 8,445 | 2,421 | 6,024 | 7,332 | 1,113 |
| 2000 | 7,852 | 1,113 | 8,965 | 2,314 | 6,651 | 7,713 | 1,252 |
| 2001 | 7,924 | 1,252 | 9,176 | 2,218 | 6,958 | 8,025 | 1,151 |
| 2002 | 8,255 | 1,151 | 9,406 | 2,197 | 7,209 | 8,337 | 1,069 |
| 2003 | 7,814 | 1,068 | 8,882 | 2,064 | 6,818 | 7,791 | 1,092 |
| 2004 | 7,496 | 1,092 | 8,588 | 2,045 | 6,543 | 7,503 | 1,087 |
| 2005 | 8,521 | 1,087 | 9,608 | 2,033 | 7,575 | 8,209 | 1,399 |
| 2006 | 8,857 | 1,399 | 10,256 | 2,075 | 8,181 | 8,895 | 1,361 |
| 2007 | 8,241 | 1,361 | 9,602 | 1,974 | 7,628 | 8,375 | 1,227 |
| 2008 | 7,738 | 1,228 | 8,966 | 1,945 | 7,021 | 7,824 | 1,142 |
| 2009** | 8,338 | 1,588 | 9,926 | 1,620 | 8,306 | 9,014 | 912 |

*October Term 2009 corresponds with fiscal year 2010.
**Projection for full Term.

CLER-0067-12-2009

**Table SC.2**
**Summary of Case Dispositions**

| Term | Cases Granted Review | | Cases Reviewed and Decided Without Argument During Term | Cases Granted Review During Term |
|---|---|---|---|---|
| | Argued This Term | Disposed of by Opinion | | |
| 1970 | 151 | 148 | 192 | 161 |
| 1975 | 179 | 176 | 184 | 172 |
| 1980 | 154 | 152 | 122 | 183 |
| 1981 | 184 | 170 | 126 | 201 |
| 1982 | 183 | 174 | 119 | 179 |
| 1983 | 184 | 174 | 81 | 149 |
| 1984 | 175 | 159 | 73 | 185 |
| 1985 | 171 | 171 | 106 | 187 |
| 1986 | 175 | 174 | 109 | 167 |
| 1987 | 167 | 160 | 87 | 180 |
| 1988 | 170 | 168 | 107 | 147 |
| 1989 | 146 | 146 | 80 | 123 |
| 1990 | 125 | 125 | 115 | 141 |
| 1991 | 127 | 123 | 77 | 121 |
| 1992 | 116 | 115 | 113 | 97 |
| 1993 | 99 | 99 | 70 | 99 |
| 1994 | 94 | 94 | 69 | 96 |
| 1995 | 90 | 90 | 120 | 106 |
| 1996 | 90 | 90 | 83 | 87 |
| 1997 | 96 | 94 | 51 | 90 |
| 1998 | 90 | 88 | 59 | 81 |
| 1999 | 83 | 79 | 54 | 92 |
| 2000 | 86 | 83 | 127 | 99 |
| 2001 | 88 | 85 | 72 | 88 |
| 2002 | 84 | 79 | 66 | 91 |
| 2003 | 91 | 89 | 52 | 87 |
| 2004 | 87 | 85 | 826 | 80 |
| 2005 | 90 | 82 | 105 | 78 |
| 2006 | 78 | 74 | 280 | 77 |
| 2007 | 75 | 72 | 208 | 95 |
| 2008 | 87 | 83 | 95 | 88 |
| 2009* | 88 | 84 | 101 | 92 |

*Projection for full Term.

CLER-067A-12-2009

**Table SC.3**
**Applications to Individual Justices, Including Capital Cases**

| Term | Applications for Relief to Individual Justices | Chambers Opinions | Applications for Stay in Capital Cases* |
|---|---|---|---|
| 1971 | 1,353 | 8 | 0 |
| 1975 | 1,165 | 10 | 0 |
| 1980 | 1,096 | 11 | 32 |
| 1981 | 1,145 | 7 | 39 |
| 1982 | 1,077 | 19 | 45 |
| 1983 | 1,072 | 14 | 76 |
| 1984 | 982 | 11 | 62 |
| 1985 | 1,050 | 6 | 66 |
| 1986 | 951 | 11 | 86 |
| 1987 | 1,001 | 3 | 60 |
| 1988 | 1,064 | 5 | 90 |
| 1989 | 929 | 0 | 71 |
| 1990 | 984 | 3 | 55 |
| 1991 | 968 | 1 | 74 |
| 1992 | 974 | 2 | 76 |
| 1993 | 1,113 | 5 | 79 |
| 1994 | 992 | 5 | 82 |
| 1995 | 1,067 | 5 | 87 |
| 1996 | 935 | 1 | 110 |
| 1997 | 985 | 1 | 115 |
| 1998 | 1,100 | 0 | 133 |
| 1999 | 1,085 | 0 | 132 |
| 2000 | 1,145 | 1 | 87 |
| 2001 | 1,006 | 2 | 91 |
| 2002 | 1,096 | 3 | 99 |
| 2003 | 1,064 | 2 | 86 |
| 2004 | 1,081 | 3 | 68 |
| 2005 | 1,236 | 2 | 112 |
| 2006 | 1,243 | 2 | 71 |
| 2007 | 1,094 | 3 | 20 |
| 2008 | 1,167 | 2 | 63 |
| 2009** | 1,160 | 3 | 65 |

CLER-067B-12-2009

* Some applications addressed to a Justice are referred to the whole Court for decision.

** Projection for full Term.

SUPREME COURT OF THE US
Office of the Clerk
Cases on Docket (Including Those Carried Over)
No. of
Original & Paid
In Forma Pauperis
10000
8000
6000
4000
2000
0
70 75 80 81 82 83 84 85 86 87 88 89 90 91 92 93 94 95 96 97 98 99 00 01 02 03 04 05 06 07 08
Term Year 08



SUPREME COURT OF THE US
Office of the Clerk
Cases Carried Over & Docketed
No. of Cases
Carried Over
Docketed During Term
10000
8000
6000
4000
2000
0
70 75 80 81 82 83 84 85 86 87 88 89 90 91 92 93 94 95 96 97 98 99 00 01 02 03 04 05 06 07 08
Term Year 08

SUPREME COURT OF THE US
Office of the Clerk
Cases Docketed By Type
Other
1.5%
113
Civil
30.0%
2324
Criminal
39.9%
3091
Habeas Corpus
28.6%
2210
Term Year 08





SUPREME COURT OF THE US

Office of the Clerk

Cases Argued By Type

Criminal
21.8%
19

Habeas Corpus
9.2%
8

Civil
69.0%
60

Term Year 08

1 14

## GENERAL STATEMENT AND INFORMATION

Funds appropriated for the Supreme Court are for salaries of the Chief Justice, eight Associate Justices, the Counselor to the Chief Justice, the four Officers of the Court and the employees of the Supreme Court of the United States, and for the necessary expenses of the Court. Those expenses include printing and binding for the Supreme Court Reports, purchasing books for the Supreme Court and miscellaneous expenses for fiscal year 2011.

**Justification of Changes**

The budget request for the Court totals $77,758,000 for fiscal year 2011. This represents an overall increase of $3,724,000, or 5.0 percent over the fiscal year 2010 enacted appropriation of $74,034,000. The budget request includes $2,000,000 in no year funding to be available until expended. This amount will fund the planning and implementation of complex, multi-year projects to enhance Court-wide technology and office automation.

**Adjustments to base to maintain current services** include funds for pay and benefits increases, within-grade increases, and other salary progressions for current staff. Also included are increased costs of ongoing activities such as travel, postage, supplies, law books, equipment, furnishings, automation, and offsite warehouse space for activities that include mail screening.

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

The following provides information and justification for each of the adjustments to base for the Supreme Court. The major headings for this section of the narrative are: Justices, Court Support Personnel, and Other Adjustments.

### A. JUSTICES

***1. Pay and benefits adjustments***

**a. Proposed January 2011 pay adjustment**

**Requested Increase: $23,000**

The Office of Management and Budget is projecting that the Employment Cost Index (ECI) will increase by an average of 1.4 percent beginning on or after January 1, 2011. The requested increase provides for the cost of nine months of the anticipated ECI increase for justices in fiscal year 2011.

### B. COURT SUPPORT PERSONNEL

***2. Pay and benefit cost adjustments***

**a. Annualization of the January 2010 pay adjustment**

**Requested Increase: $280,000**

As a result of ECI and locality pay adjustments, federal pay rates in Washington, D. C. increased by 2.42 percent effective

January 2010. The requested increase annualizes this pay increase for the first three months of fiscal year 2011.

**b. Proposed January 2011 pay adjustment**

**Requested Increase: $592,000**

The Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.4 percent beginning on or after January 1, 2011. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2011.

**c. Health benefits increase**

**Requested Increase: $258,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 7.0 percent in January 2010 and another 7.0 percent in January 2011. The requested increase annualizes the fiscal year 2010 premium increase, and includes a nine-month provision for the anticipated fiscal year 2011 premium increase.

**d. FERS increase**

**Requested Increase: $735,000**

The Supreme Court's costs for the Federal Employees Retirement System (FERS) have increased 13.0 percent over the past year. This requested increase will cover the additional expenses of FERS employees hired to replace employees who retire or leave the Supreme Court.

**e. Within-grade increases**

**Requested Increase: $429,000**

Supreme Court employees who receive an "above-average level of competence" performance rating are entitled to periodic step increases in compensation corresponding with those provided by Chapter 53 of Title 5, United States Code. The requested increase of $429,000 includes $303,000 for personnel compensation and $126,000 for related benefits.

**f. Promotions and merit increases**

**Requested Increase: $252,000**

The requested increase of $252,000 is for funding promotions and merit increases during fiscal year 2011 ($202,000 for personnel compensation and $50,000 for related benefits). This amount will be required to fund anticipated salary increases resulting from promotions, quality step increases, merit awards and performance increases. Under the Court's compensation program, promotions to a higher grade can be the result of changes in position classification or improved competence within existing classification. Quality step increases are faster than normal within-grade salary advancements that can be given to employees whose performance is outstanding, and merit awards are monetary

rewards for truly exceptional performance or special achievement. Performance increases that are based on success in achieving specific objectives are awarded to mid-level managers who are not eligible for within-grade increases.

## C. OTHER ADJUSTMENTS

### *3. Inflationary adjustments*

#### a. General inflationary increases

**Requested Increase: $173,000**

Consistent with guidance from the Office of Management and Budget, the Supreme Court requests $173,000 to fund inflationary increases of 1.1 percent for operating expenses such as travel, utilities, printing, contractual services, supplies and materials, and furniture and equipment.

#### b. Library services

**Requested Increase: $96,000**

An increase of $96,000 is requested to cover estimated increases in the costs of library services, including law book accessions and continuations, and computer-assisted legal research.

## D. PROGRAM INCREASES

### *4. Police officers*

**Requested Increase: $646,000** **FTE: 9**

The Court requests $646,000 ($517,000 for personnel compensation and $129,000 for related benefits) for twelve new police officer positions (funded for 9 months) to staff new posts and increase staffing at established posts.

The completion of the Court's modernization project will result in the opening of additional visitor entrances and a second driveway, which will provide for more efficient pedestrian and vehicular ingress and egress. New posts will need to be staffed to provide security at these locations and to allow for magnetometer, x-ray machines, and barrier operation. Seven additional police officers (5 FTE) will be required to fully staff the six new posts that will be established when the entrances and driveway are opened.

Over the past five years, the police command center has been upgraded and assumed additional and highly technical responsibilities. A new police command center is under construction as part of the Court's modernization project When completed in 2010, it will contain more sophisticated equipment. Command center operations include monitoring the feed from numerous security cameras, security checks of vendors, monitoring Capitol Police radio and alert systems, dispatching, building and vehicle key maintenance and distribution, and protective/security detail arrangements.

When operations commence in the new command center, these activities will be even more numerous and complex and will require the command center be staffed by an additional officer at all times. Five additional police officers (4 FTE) will be needed to provide this staffing, as the center operates 24 hours a day, seven days a week.

The last increase in police staffing occurred in fiscal year 2006. Since fiscal year 2006, the United States Capitol Police, with comparable duties and responsibilities, received an increase of 13 percent in its authorized strength. The Supreme Court Police, meanwhile, have continued to rely on existing strength to staff increased responsibilities, including a more than 10 percent increase in protective work, assessment of a growing number of threats, details to the Department of Homeland Security and the Joint Terrorism Task Force, and additional posts.

To support fully all of the Court's security needs, twice the requested number of new officers is needed. However realizing the budgetary constraints facing the federal government, we are requesting only 12 essential police officers positions, which cannot be supported from the existing strength.

*5. Support expenses for additional police officers*

**Requested Increase: $240,000**

The Court requests the addition of $240,000 to cover training, supplies, and equipment costs related to the addition of 12 new police officer positions. Each officer undergoes a lengthy and extensive training period to assure thorough preparation for the performance of law enforcement duties. In addition to a police uniform, the Court provides the officers with state-of-the-art police communication and law enforcement equipment, including a service weapon. The associated costs are approximately $20,000 per officer.

**SUPREME COURT OF THE UNITED STATES**
***Care of the Building and Grounds***
**SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS**

| | |
|---|---|
| **Fiscal Year 2010 Appropriation** | **$14,525,000** |
| **Fiscal Year 2011 Requested Appropriation** | **$14,788,000** |
| **Requested Increase from Fiscal Year 2010 Appropriation** | **$263,000** |

**APPROPRIATION LANGUAGE**

**SUPREME COURT OF THE UNITED STATES**

**CARE OF THE BUILDING AND GROUNDS**

For such expenditures as may be necessary to enable the Architect of the Capitol to carry out the duties imposed upon the Architect by the Act approved May 7, 1934 (40 U.S.C. 6111(a) and 6111(b)), [$14,525,000] *$14,788,000* which shall remain available until expended.

**SUMMARY OF REQUEST**
**SUPREME COURT OF THE UNITED STATES**
**CARE OF BUILDING AND GROUNDS**
**FISCAL YEAR 2011**
**(Dollar amounts in thousands)**

**Fiscal Year 2011 Resource Requirements:**

| Page No. | | FTE | Amount |
|---|---|---|---|
| | **Fiscal Year 2010 Appropriation** | **48** | **$ 14,525** |
| | **Adjustments to Base to Maintain Current Services:** | | |
| | **A. Personnel and Programs** | | |
| 1.25 | 1. Proposed January 2011 pay adjustments (1.4 percent for nine months) | - | 50 |
| 1.25 | 2. Fiscal year 2011 benefits adjustments | - | 15 |
| 1.25 | 3. Inflationary adjustments | - | 13 |
| 1.25 | 4. Decrease for non-recurring projects | - | (6,200) |
| | **Subtotal, Adjustments to Base to Maintain Current Services** | - | **(6,122)** |
| | **Total, Current Services Required** | **48** | **8,403** |

**SUMMARY OF REQUEST**
**SUPREME COURT OF THE UNITED STATES**
**CARE OF BUILDING AND GROUNDS**
**FISCAL YEAR 2011**
**(Dollar amounts in thousands)**

| Page No. | B. Program Increases | FTE | Amount |
|---|---|---|---|
| 1.26 | 5. Maintenance mechanic supervisor position | 0.5 | 48 |
| 1.26 | 6. Building services coordinator position | 0.5 | 37 |
| 1.27 | 7. Increase for roof system repairs | - | 6,300 |
| | **Subtotal, Program Increases** | **1** | **6,385** |
| | **Total Fiscal Year 2011 Appropriation Required** | **49** | **14,788** |
| | **Total Appropriation Increase, Fiscal Year 2010 to Fiscal Year 2011** | **1** | **263** |

**SUPREME COURT OF THE UNITED STATES**
**CARE OF THE BUILDING AND GROUNDS**
**Obligations by Activity ($000)**

| Activity | Fiscal Year 2009 Actual | Fiscal Year 2010 Estimate | Fiscal Year 2011 Request |
|---|---|---|---|
| **Care of Building and Grounds, Total Obligations** | **15,237** | **18,190** | **19,340** |
| Unobligated Balance, Start of Year | (30,765) | (33,975) | (30,310) |
| Unobligated Balance, End of Year | 33,975 | 30,310 | 25,758 |
| **Available Appropriation** | **18,447** | **14,525** | **14,788** |

**Object Classification ($000)**

| | Description | Fiscal Year 2009 Actual | Fiscal Year 2010 Estimate | Fiscal Year 2011 Request |
|---|---|---|---|---|
| 11 | Personnel compensation | 2,729 | 2,997 | 3,074 |
| 12 | Personnel benefits | 771 | 844 | 874 |
| 21 | Travel and transportation of things | 5 | 5 | 5 |
| 23 | Rent, communications and utilities | 3,127 | 3,032 | 3,032 |
| 25 | Other services | 4,818 | 4,180 | 5,723 |
| 26 | Supplies and materials | 215 | 225 | 225 |
| 31 | Equipment | 40 | 50 | 50 |
| 32 | Land and structures | 3,532 | 6,857 | 6,357 |
| | **Total Obligations** | **15,237** | **18,190** | **19,340** |

**SUPREME COURT OF THE UNITED STATES**
**CARE OF THE BUILDING AND GROUNDS**
**Relation of Obligations to Outlays ($000)**

| | Fiscal Year 2009 Actuals | Fiscal Year 2010 Estimate | Fiscal Year 2011 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 15,237 | 18,190 | 19,340 | 1,150 |
| Obligated balance, start of year | 36,773 | 27,379 | 20,890 | (6,489) |
| Obligated balance, end of year | (27,379) | (20,890) | (15,642) | 5,248 |
| Net Outlays | 24,631 | 24,679 | 24,588 | (91) |

Personnel Summary

| | Fiscal Year 2009 Actual | Fiscal Year 2010 Estimate | Fiscal Year 2011 Request | Difference |
|---|---|---|---|---|
| Total compensable workyears: | | | | |
| Full-time equivalent employment | 43 | 48 | 49 | 1 |

## GENERAL STATEMENT AND INFORMATION

This appropriation, for expenditure by the Architect of the Capitol, provides for the structural and mechanical care of the United States Supreme Court Building and Grounds, including maintenance and operation of mechanical, electrical, and electronic equipment. The Architect is not responsible for custodial care, which is under the jurisdiction of the Marshal of the Supreme Court and is provided for in the Supreme Court's salaries and expenses appropriation. The Architect performs his duties under authority of the Act of May 7, 1934 (40 US 6111(a) and 6111(b)).

The equipment includes such items as air conditioning, refrigeration and ventilating systems with more than 1,000 pieces of equipment; electrical transformer stations and emergency power system; three hundred plumbing fixtures and related piping; nine elevators and five dumbwaiters, electrical fixtures and wiring; and electronic security equipment. In fiscal year 2010, a total of 48 full-time equivalent (FTE) positions are expected to cover three shifts daily.

Projects under the Architect of the Capitol relating to the buildings and grounds in the Capitol complex are included in the Legislative Branch budget. However, the projects pertaining to the Supreme Court, Care of the Building and Grounds are presented within the judiciary's budget request.

The modernization of the United States Supreme Court Building construction project began in the summer of 2004, and the General Contractor forecasts completion in the fall of 2010. In fiscal year 2007, an additional net amount of $6.3 million was appropriated to attain full funding for the estimated cost to complete this project, which brings the appropriated budget authority to $122.3 million. Currently, project work is completed in the northwest, northeast, and southeast quadrants. Work is ongoing in the southwest quadrant and the remaining two mechanical rooms. The southwest quadrant is scheduled for completion in the summer of 2010. At that time, work will continue in the basement mechanical rooms, parking garage, final commissioning of systems, and site demobilization in the winter of 2010.

### Justification of Changes

The fiscal year 2011 budget request for the Supreme Court of the United States, Care of the Building and Grounds appropriation totals $14,788,000 and 49 FTE. This represents an increase of $263,000 from the fiscal year 2010 appropriation of $14,525,000. The fiscal year 2011 request includes an increase of 1 FTE above the fiscal year 2010 level. The funding changes are divided into "Adjustments to Base to Maintain Current Services," a decrease of $6,122,000; and "Program Increases," an increase of $6,385,000.

**Adjustments to base to maintain current services** include an increase of $65,000 for pay and benefits for staff paid under the general and wage board schedules, and $13,000 for general inflationary increases. An offsetting decrease of $6,200,000 is attributable to reductions for the two non-recurring projects funded in 2010.

**Program increases** totaling $6,385,000 are requested to fund 2 additional permanent positions (1 FTE), and to fund the final phase of the roof system repairs for the Supreme Court. This project is separate and distinct from the Modernization Project. Justification for the program increases begins on page 1.26.

**ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES:**

**A. Personnel and Programs**

***1. Proposed fiscal year 2011 pay adjustments***

**Requested Increase: $50,000**

The Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.4 percent beginning on or after January 1, 2011. The requested increase provides for the cost of the anticipated pay increase in fiscal year 2011 for employees paid under the general schedule (GS), as well as for wage board (WG) employees. This request includes an increase of $12,000 for the cost of nine months of the anticipated pay increase in fiscal year 2011 for GS employees, and an increase of $38,000 for the cost-of-living adjustment of WG employees for twelve months.

***2 Fiscal year 2011 benefits adjustments***

**Requested Increase: $15,000**

An amount of $15,000 is requested for increased costs related to employee benefits in fiscal year 2011. Of this amount, $11,000 is requested for agency retirement contributions and $4,000 is requested for agency health benefits contributions.

***3. Inflationary adjustments***

**Requested Increase: $13,000**

Consistent with guidance from the Office of Management and Budget, $13,000 is requested to fund inflationary increases of 1.1 percent for operating expenses such as facilities and grounds maintenance, uniforms, safety apparel and equipment.

***4. Decrease for non-recurring projects***

**Requested Decrease: ($6,200,000)**

This represents a reduction for two non-recurring projects, 1) perimeter security improvements ($3,000,000) and 2) Phase 3 of the roof system repairs ($3,200,000). Both projects are funded in fiscal year 2010.

## PROGRAM INCREASES

**B. Workload Increases**

5. ***Maintenance Mechanic Supervisor***

**Requested Increase: $48,000** **0.5 FTE**

The requested increase of $48,000 is to provide for 1 additional permanent position priced out for six months in fiscal year 2011 to allow sufficient lead time in the hiring process. It is anticipated the maintenance mechanic supervisor position will be hired at the WS-11 level which is commensurate with the grades of other journeyman mechanics in the offices of the Architect of the Capitol. Of the total amount, $39,000 is for compensation and $9,000 is for benefits.

This position is needed to provide supervision of a newly established evening shift in support of additional and significant preventative maintenance services for all dynamic equipment in the pipefitting, HVAC, and electrical trade disciplines. The new shift will allow the flexibility to respond to maintenance requests in support of after-hours Court services, perform preventative maintenance scheduled on an increased number of equipment and systems, and reduce overtime.

By the end of fiscal year 2010, the number of plumbing, air conditioning, refrigeration, ventilation and electrical systems/components requiring regular maintenance will increase over 30 percent due to the final phase and completion of the modernization project. New or modernized systems include an increase in mechanical rooms from two original mechanical rooms to eight advanced mechanical equipment rooms with state of the art controls.

A formal schedule of periodic preventative maintenance (PM) tasks is under development for all existing equipment and new equipment installed under the modernization project. The implementation of a PM program, incorporating scheduled mandatory service, will detect and identify deterioration of equipment and significantly reduce emergency outages and repair work.

6. ***Building Services Coordinator***

**Requested Increase: $37,000** **0.5 FTE**

The requested increase of $37,000 is to provide for 1 additional permanent position priced out for six months in fiscal year 2011 to allow sufficient lead time in the hiring process. It is anticipated the building services coordinator will be hired at the GS-7 level which is commensurate with the grades of other building services coordinators in the offices of the Architect of the Capitol (AOC). Of the total amount, $30,000 is for compensation and $7,000 is for benefits.

This position is needed to support the establishment of a Facilities Service Center and will provide an additional liaison between the AOC facilities office and the Court. The AOC facilities office and shops receive numerous telephone and written requests for service requiring prompt response for repair and/or maintenance of the facility. There currently is not a central location or point of contact for reporting emergencies or service requests or coordinating the response.

repair and/or maintenance of the facility. There currently is not a central location or point of contact for reporting emergencies or service requests or coordinating the response. The building services coordinator position will ensure timely responses to work requests and be the central point of contact responsible for ensuring the appropriate shop is notified and is responding.

*7. **Roof System Repairs***

**Requested Increase: $6,300,000**

The requested increase of $6,300,000 provides funding for the final phase required to repair deteriorated roof components, for a total estimated project cost of $13,800,000. This phased work can only be scheduled in the July through August recess period. The $6,300,000 is requested in fiscal year 2011 to fund the final phase to completely restore the highly decorative and historical original building roof to optimum condition.

**Roof System Repairs Project Costs**

| | |
|---|---|
| FY 2008 enacted | $1,100,000 |
| FY 2009 enacted | $3,200,000 |
| FY 2010 enacted | $3,200,000 |
| FY 2011 requested | $6,300,000 |
| **TOTAL** | **$13,800,000** |

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**
***Salaries and Expenses***
**SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS**

| | |
|---|---|
| **Fiscal Year 2010 Appropriation** | **$32,560,000** |
| **Fiscal Year 2011 Requested Appropriation** | **$35,859,000** |
| **Requested Increase from Fiscal Year 2010 Appropriation** | **$3,299,000** |

**APPROPRIATION LANGUAGE**

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

**SALARIES AND EXPENSES**

For salaries of the chief judge, judges, and other officers and employees, and for necessary expenses of the court, as authorized by law, [$32,560,000] *$35,859,000*

**SUMMARY OF REQUEST**
**COURT OF APPEALS FOR THE FEDERAL CIRCUIT**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2011**
**(Dollar amounts in thousands)**

| Page No. | Fiscal Year 2011 Resource Requirements: | Mandatory FTE | Mandatory Amount | Discretionary FTE | Discretionary Amount | Total FTE | Total Amount |
|---|---|---|---|---|---|---|---|
| | **Fiscal Year 2010 Obligations** | **12** | **2,491** | **142** | **30,221** | **154** | **32,712** |
| | Utilization of Electronic Public Access Receipts | | - | - | (152) | - | (152) |
| | **Fiscal Year 2010 Appropriation** | **12** | **2,491** | **142** | **30,069** | **154** | **32,560** |
| | **Adjustments to Base to Maintain Current Services:** | | | | | | |
| | **A. Judges** | | | | | | |
| | 1. Pay and benefits cost adjustments | | | | | | |
| 2.9 | a. Proposed January 2011 pay adjustment (1.4% for nine months) | - | - | - | 24 | - | 24 |
| 2.9 | b. Health benefits increase | - | 11 | - | - | - | 11 |
| 2.9 | 2. Annualization of new fiscal year 2010 positions (staff for new senior judges) | - | - | 3 | 377 | 3 | 377 |
| | **B. Court Support Personnel** | | | | | | |
| | 3. Pay and benefit cost adjustments | | | | | | |
| 2.9 | a. Annualization of the January 2010 pay adjustment (2.42% for three months) | - | - | - | 70 | - | 70 |

**SUMMARY OF REQUEST**
**COURT OF APPEALS FOR THE FEDERAL CIRCUIT**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2011**
**(Dollar amounts in thousands)**

| Page No. | | Mandatory FTE | Mandatory Amount | Discretionary FTE | Discretionary Amount | Total FTE | Total Amount |
|---|---|---|---|---|---|---|---|
| 2.10 | b. Proposed January 2011 pay adjustment (1.4% for nine months) | - | - | - | 148 | - | 148 |
| 2.10 | c. Promotions and within-grade increases | - | - | - | 162 | - | 162 |
| 2.10 | d. Health benefits increase | - | - | - | 45 | - | 45 |
| 2.10 | e. FERS increase | - | - | - | 33 | - | 33 |
| | **C. Other Adjustments** | | | | | | |
| | 5. Inflationary adjustments | | | | | | |
| 2.10 | a. Library services and computer-assisted legal research (CALR) | - | - | - | 29 | - | 29 |
| 2.11 | b. General inflationary adjustments | - | - | - | 51 | - | 51 |
| 2.11 | c. Inflationary increase in GSA space rental cost | - | - | - | 787 | - | 787 |
| | **Subtotal, Adjustments to Base to Maintain Current Services** | - | **11** | **3** | **1,726** | **3** | **1,737** |
| | **Total Current Services Appropriation Required** | **12** | **2,502** | **145** | **31,795** | **157** | **34,297** |

**SUMMARY OF REQUEST**
**COURT OF APPEALS FOR THE FEDERAL CIRCUIT**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2011**
**(Dollar amounts in thousands)**

| Page No. | | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|---|
| | | FTE | Amount | FTE | Amount | FTE | Amount |
| | **D. Program Increases** | | | | | | |
| 2.11 | 6. Five new positions (funded for 6 months) | - | - | 3 | 340 | 3 | 340 |
| 2.13 | 7. IT infrastructure equipment, maintenance and service for off-site leased space | - | - | - | 130 | - | 130 |
| 2.14 | 8. Switch upgrade | - | - | - | 626 | - | 626 |
| 2.14 | 9. Contractual facilitator for conversion to CM/ECF | - | - | - | 100 | - | 100 |
| 2.14 | 10. Virtualization software | - | - | - | 250 | - | 250 |
| 2.15 | 11. Internship program | - | - | 3 | 116 | 3 | 116 |
| | **Subtotal, Program Increases** | **-** | **-** | **6** | **1,562** | **6** | **1,562** |
| | **Total Fiscal Year 2011 Appropriation Required** | **12** | **2,502** | **151** | **33,357** | **163** | **35,859** |
| | **Total Appropriation Increase, Fiscal Year 2010 to Fiscal Year 2011** | **-** | **11** | **9** | **3,288** | **9** | **3,299** |
| | **Financing the Fiscal Year 2011 Request:** | | | | | | |
| | **Total Appropriation Required, Fiscal Year 2011** | **12** | **2,502** | **151** | **33,357** | **163** | **35,859** |
| 2.15 | 12. Utilization of Electronic Public Access Receipts | - | - | - | 46 | - | 46 |
| | **Total Estimated Obligations, Fiscal Year 2011** | **12** | **2,502** | **151** | **33,403** | **163** | **35,905** |

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**
**SALARIES AND EXPENSES**
**Obligations by Activity ($000)**

| Activity | Fiscal Year 2009 Actual | Fiscal Year 2010 Estimate | Fiscal Year 2011 Request |
|---|---|---|---|
| **Salaries and Expenses, Total Obligations** | 30,227 | 32,712 | 35,905 |
| Unobligated Balance, Start of the Year | - | - | - |
| Unobligated Balance, End of the Year | - | - | - |
| Unobligated Balance, Expiring | 203 | - | - |
| **Available Appropriation** | 30,430 | 32,712 | 35,905 |
| Less offsets from | | | |
| Electronic Public Access | (46) | (152) | (46) |
| **Appropriation Required (Direct)** | 30,384 | 32,560 | 35,859 |

**Obligations by Budget Object Class ($000)**

| | Description | Fiscal Year 2009 Actual | Fiscal Year 2010 Estimate | Fiscal Year 2011 Request |
|---|---|---|---|---|
| 11 | Personnel compensation | 14,402 | 16,553 | 17,647 |
| 12 | Personnel benefits | 2,862 | 3,346 | 3,578 |
| 13 | Benefits for former personnel | 25 | 25 | 25 |
| 21 | Travel | 119 | 120 | 122 |
| 22 | Transportation of things | 27 | 27 | 28 |
| 23 | Rent, communications and utilities | | | |
| | *Rental payments to GSA* | 5,018 | 5,155 | 6,858 |
| | *Communications utilities & misc charges* | 276 | 283 | 287 |
| 24 | Printing and reproduction | 118 | 119 | 121 |
| 25 | Other services | 6,772 | 6,318 | 5,629 |
| 26 | Supplies and materials | 160 | 162 | 164 |
| 31 | Equipment | 448 | 452 | 1,400 |
| | Judiciary Information Technology Fund | 0 | 152 | 46 |
| | **Total obligations** | 30,227 | 32,712 | 35,905 |

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**
**Salaries & Expenses**
**Relation of Obligations to Outlays ($000)**

| | FY 2009 Actual | FY 2010 Estimate | FY 2011 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 30,227 | 32,712 | 35,905 | 3,193 |
| Obligated balance, start of year | 6,077 | 8,522 | 7,054 | (1,468) |
| Obligated balance, end of year | (8,522) | (7,054) | (7,843) | (789) |
| Net Outlays | 27,782 | 34,180 | 35,116 | 936 |

**Personnel Summary**

| | FY 2009 Actual | FY 2010 Estimate | FY 2011 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total compensable workyears: | 142 | 154 | 163 | 9 |

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

**SALARIES AND EXPENSES**

**Summary of Mandatory Costs**

| | Fiscal Year 2010 | | Fiscal Year 2011 1/ | | Increase ($000) |
|---|---|---|---|---|---|
| | No. of Judgeships | Compensation and Benefits ($000) | No. of Judgeships | Compensation and Benefits ($000) | |
| **Article III Judges** | 12 | 2,491 | 12 | 2,502 | 11 |

1/ The requested fiscal year 2011 cost-of-living adjustment for judges is treated as a "discretionary" cost and thus is not included in this amount.

## GENERAL STATEMENT AND INFORMATION

The United States Court of Appeals for the Federal Circuit, located in Washington, D.C., has exclusive nationwide jurisdiction over a large number of diverse subject areas, such as appeals in all patent cases, all government contract cases, all international trade cases, all government personnel cases, all cases involving monetary claims against the United States under the Tucker Acts, veterans cases, and many others. Additional subject areas have been added to the court's jurisdiction almost yearly. To keep abreast of its varied and growing jurisdiction, the court is requesting necessary increases in its funding as detailed below.

Appeals to the court come from all 94 federal district courts, the United States Court of Federal Claims, the United States Court of International Trade, and the United States Court of Appeals for Veterans Claims. The court also takes appeals of certain administrative agencies' decisions, including the United States Merit Systems Protection Board, the Boards of Contract Appeals, the Board of Patent Appeals and Interferences, and the Trademark Trial and Appeals Board. Decisions of the United States International Trade Commission, the Office of Compliance, an independent agency in the legislative branch, and the Government Accountability Office Personnel Appeals Board also are reviewed by the court. For additional information on the court's jurisdiction, see the appendix beginning on page 2.17.

### Justification of Changes

The fiscal year 2011 budget request for the Federal Circuit totals $35,859,000. This increase includes $1,737,000 for adjustments to base to maintain current services and $1,562,000 for program increases.

**Adjustments to base to maintain current services** include funds for the following: the annualization of salaries and benefits costs for 3 law clerks and 3 secretaries for 3 new senior judges; pay and court benefits cost increases for current staff; increased costs for ongoing activities such as travel, postage, printing, supplies, library services, computer-assisted legal research services, cyclical maintenance of facilities, furnishings, equipment, and GSA space rental. Justifications for each of these adjustments begin on page 2.9.

**Program increases** requested include funding for salaries and benefits for five new positions for the court. Additional program increases requested by the court include funding for the purchase of automation equipment and service for the court's off-site space used by senior judges; the purchase of an upgraded switch; a contractor to customize and facilitate the conversion of the court's docketing system to the automated docketing system used throughout the judiciary; the purchase of virtualization software; and an internship program. Justifications for each of the program increases begin on page 2.11.

**<u>ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES</u>**

The following provides information and justification for each specific request for the court.

**A. JUDGES**

***1. Pay and benefit cost adjustments***

**a. Proposed January 2011 pay adjustment**

**Requested Increase: $24,000**

The Office of Management and Budget is projecting that the Employment Cost Index (ECI) will increase by an average of 1.4 percent beginning on or after January 1, 2011. The requested increase provides for the cost of nine months of the anticipated ECI for judges in fiscal year 2011.

**b. Health benefits increase**

**Requested Increase: $11,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 7.0 percent in January 2010 and another 7.0 percent in January 2011. The requested increase annualizes the 2010 premium increase and includes a nine-month provision for the anticipated fiscal year 2011 premium increase.

***2. Annualization of new fiscal year 2010 positions (staff for new senior judges)***

**Requested Increase: $377,000 FTE: 3**

The requested increase annualizes the cost of staff for judges who have taken or are expected to take senior status in fiscal year 2010. The $377,000 includes costs of salaries and benefits of one secretary and one law clerk for each of the three judges for six months.

**B. COURT SUPPORT PERSONNEL**

***3. Pay and benefits cost adjustments***

**a. Annualization of the January 2010 pay adjustment**

**Requested Increase: $70,000**

As a result of ECI and locality pay adjustments, federal pay rates in Washington, D.C. increased by 2.42 percent in January 2010. The requested increase annualizes this pay increase for the first three months of fiscal year 2011.

**b. Proposed January 2011 pay adjustment**

**Requested Increase: $148,000**

The Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.4 percent beginning on or after January 1, 2011. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2011.

**c. Promotions and within-grade increases**

**Requested Increase: $162,000**

The requested increase provides for promotions and within-grade increases for support personnel. The court's salary plan for judicial support personnel provides for periodic within-grade increases for staff who receive at least a satisfactory performance rating.

**d. Health benefits increase**

**Requested Increase: $45,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 7.0 percent in January 2010 and another 7.0 percent in January 2011. The requested increase annualizes the 2010 premium increase and includes a nine-month provision for the anticipated fiscal year 2011 premium increase.

**e. FERS increase**

**Requested Increase: $33,000**

Funds are requested to provide for new benefits for employees covered by the Federal Employees Retirement System (FERS), pursuant to the National Defense Authorization Act for Fiscal Year 2010, P.L. 111-84. The requested increase includes the additional agency contribution for FERS employees from 11.2 percent to 11.7 percent.

## C. OTHER ADJUSTMENTS

***5. Inflationary adjustments***

**a. Library services and computer-assisted legal research (CALR)**

**Requested Increase: $29,000**

An adjustment of $20,000 is requested to fund an estimated 6.0 percent increases in the costs of library services, including law book accessions and continuations, and an adjustment of $9,000 is requested to fund an estimated 5.0 percent increase in the costs of computer-assisted legal research resources.

**b. General inflationary adjustments**

**Requested Increase: $51,000**

Consistent with guidance from the Office of Management and Budget, the court requests an increase of $51,000 to fund inflationary increases of 1.1 percent for operating expenses such as travel, utilities, printing, contractual services, supplies and materials, and furniture and equipment.

**c. Inflationary increase in GSA space rental cost**

**Requested Increase: $787,000**

This request represents an inflationary increase and adjustments in the cost of GSA space rental for all of the leased space occupied by the United States Court of Appeals for the Federal Circuit including the National Courts Building and courthouse complex on Madison Place, NW; off-site space for senior judges located near the existing courthouse complex; and a one-room leased office for the Chief Mediator in Chicago, Illinois. GSA's rent estimate for the National Courts Building and courthouse complex space during fiscal year 2011 is $5,793,120, an increase of $732,157 over the fiscal year 2010 estimate. This amount reflects a 14.5 percent increase in the shell rent due to a 2006 space appraisal by GSA that was not reflected in prior years' rent estimates and invoices. The Court has questioned GSA regarding the increase but has not been successful in obtaining a reduction.

**D. PROGRAM INCREASES**

***6. Five new positions***

**Requested Increase: $340,000** **FTE: 3**

The court requests $340,000 to fund five support staff positions in fiscal year 2011. These include: a technical assistant, a staff attorney, a library technician, an information technology help desk assistant, and a mail room clerk/courtroom deputy. The requested amount will cover salaries and benefits for each position for six months in fiscal year 2011.

<u>Technical Assistant Position</u>: The court seeks the funding and authorization from Congress to hire an additional technical assistant in the Office of the Senior Technical Assistant. That office, authorized in 28 U.S.C. § 715(c)-(d), is part of the court's Central Legal Office (together with the Office of the Senior Staff Attorney) and comprises patent lawyers having a law degree plus at least one college degree in a field of science or engineering. The Office assists judges and their law clerks, and the court as a whole, on a variety of legal (both patent and non-patent) and science/engineering questions/projects, assists the Office of the Senior Staff Attorney on that office's motions work pertaining to patent law or science/engineering, and plays an important role in the court's process of reviewing before publication all precedential opinions (patent and otherwise) to ensure consistency and clarity in the law. The past two decades have seen a dramatic increase in new science and technology including the areas of computer science and biotechnology. The court has experienced a consistently increasing number of

complex patent cases in the past twenty years, and that increase has strained the ability of the Office of the Senior Technical Assistant to accomplish its tasks effectively. The increased strain is expected to continue. Funding and authorization are needed to hire an additional technical assistant. The requested funds ($96,000) will cover salary and benefits for this position for six months in fiscal year 2011.

Staff Attorney Position: The court seeks the funding and authorization from Congress to hire an additional staff attorney. The Office of the Senior Staff Attorney serves as the entry point for parties seeking immediate or extraordinary relief from the court, including cases involving pharmaceuticals and medical devices and innovative technologies. In recent years the Office has experienced a significant increase in the number of requests for mandamus relief or stays of injunctions. Because of the court's increasing workload in complex patent cases, the number of such difficult petitions and motions likewise has increased. For example, in the past two calendar years, the number of mandamus petitions in counseled cases increased by more than 20 percent compared to the previous two years. The office also assists the court in expediting an increasing number of matters for prompt disposition. Similarly, in the past two years, the office assisted the court in preparing nearly 700 orders determining or dismissing appeals, resulting in an increase of nearly 40 percent in the number of dispositions originating in this office over the two preceding years. The office has seen similar increases in the number of judicial conduct complaints that it initially handles. In recent years, the office was also assigned the duties of screening cases for jurisdictional purposes and for purposes of determining which cases might benefit from pro bono counsel. As a result of the increased duties and workload, the court requests an additional staff attorney position for the Office, which has been at the same staffing level since 1992. The requested funds ($100,000) will cover salary and benefits for this position for six months in fiscal year 2011.

Library Technician Position: The Federal Circuit requests funds for an additional library technician position. This position is required to provide urgently needed clerical and technical support to the five professional librarians on the court's staff. The library technician will assist the librarians by photocopying, scanning, processing mail and processing books. The technician will help to maintain the court's main library collection as well as three existing satellite collections in the courthouse plus a planned fourth satellite collection in the new off-site space for senior judges. In addition, this position will provide support for an on-going project to digitize and preserve unique items in the library collection that include collections of judges papers and photographs in support of the court history function in the library. Without this position, valuable professional librarian staff hours will be redirected toward performing clerical tasks, thereby diverting professional staff away from their important research work conducted at the request of and in support of the judges. Failure to fund this position will result in the neglect of valuable historical materials. The historical documents will remain in their original print format without being properly preserved and digitized and without being indexed for access by court staff and other individuals interested in the court's history. The requested funds ($37,000) will cover salary and benefits for this position for six months in fiscal year 2011.

Information Technology Help Desk Assistant Position: The court seeks funding and authorization for this position that will provide service and support for the computer hardware and software, network and telephone equipment used on a daily basis by senior judges and their staff at the new leased off-site space. A dedicated IT staff member would be located at the new off-site location in order to provide immediate automation support to all the chambers or staff located at this site. Without the additional staff to support this location, judges and staff would have to wait for information technology office staff in the main courthouse building to receive notice of the problem and then travel to the site, bringing any equipment necessary to resolve the problem. This delay could disrupt judicial operations. Having an additional staff member located at the new off-site space will allow the court to continue providing exceptional and immediate information technology service that the judges and their staff require. The requested funds ($70,000) will cover salary and benefits for the help desk assistant position for six months in fiscal year 2011.

Mail Room Clerk/Court Room Deputy Position: The court seeks authorization and funding for an additional mail room clerk/court room deputy. This position is critical for providing the expanded mail and courier service required for the court's new off-site leased space for senior judges. Court mail clerks deliver and pick up mail from court offices and chambers several times a day. In addition to these regular and expedited pickups, the mail room clerk date stamps all incoming mail. The date stamps on documents determine the timely filing of many items that become part of the record on appeal. Since the court has not yet begun permitting electronic filing, mail delivery by hand is still an essential function for court operations. Mail room clerks/court room deputies also assist with court room hearings as well as out-of-town sessions of the court, with setting up conferences, and with shredding confidential materials. An additional mail room clerk/court room deputy is necessary to provide daily mail service to the new off-site space and especially when court is in session. The requested funds ($37,000) will cover salary and benefits for a new mail room clerk/court room deputy for six months in fiscal year 2011.

### 7. *Information Technology Infrastructure Equipment and Service for Off-site Space*

**Requested Increase: $130,000**

This request is to provide the necessary funding to support the information technology infrastructure requirements at the court's new off-site space for senior judges. New information technology infrastructure will be required to provide the same level of service and access to those existing services which are still located in the main courts building. Infrastructure items required for the new site will include: all cabling (CAT 6 and fiber), jacks, patch panels, switches, routers, VoIP telephones, spare accessories and any other hardware necessary to support the chambers and staff located off-site. Additional monthly recurring costs also will be necessary to provide connectivity between to the two locations. The court requests $130,000 for these information technology infrastructure start-up costs for the leased off-site space for senior judges, as well as for recurring monthly charges for six months in fiscal year 2011.

*8. Switch Upgrade*

**Requested Increase: $626,000**

The court requests funds to upgrade and replace the court's existing Hp ProCurve switches with Cisco switches. The proposed Cisco network equipment is similar to that used by other courts and by the Administrative Office of the United States Courts. Aside from the opportunity to standardize the court's equipment with the rest of the judiciary, the Cisco equipment incorporates technologies and industry standards that have been developed in the three years since the existing HP switches were designed. Some of these improvements include the following: improved ability to ensure application availability, voice quality and topnotch video; increased redundancy, including the ability to upgrade software without network outages; higher speed connectivity; and enhanced manageability. Cisco network equipment also will integrate more closely with our new VoIP telephone system which is 100 percent Cisco hardware and software based. The requested funds ($626,000) will enable the court to purchase and install new switches in fiscal year 2011.

*9. Contractual Facilitator for Conversion to CM/ECF*

**Requested Increase: $100,000**

The court requests funds to hire a contractor to facilitate the court's transition to the case management/electronic case filing (CM/ECF) system already in use by the majority of courts throughout the judiciary. Over the past year, the United States Court of Appeals for the Federal Circuit has been researching, testing and laying the ground work for the future deployment of this application at the court. In order to provide a successful transition to CM/ECF, the court is requesting the temporary services of a technical contractor who is experienced with the CM/ECF application, has worked with deploying CM/ECF at other courts and has the project management skills specifically associated with migrating to the CM/ECF platform. The court estimates that these contractor services will be critical to the successful implementation of the new software that would enable the court to automate its operations. The court is requesting $100,000 for the cost of the service contract with the CM/ECF facilitator that would begin in fiscal year 2011.

*10. Virtualization Software*

**Requested Increase: $250,000**

The court requests funds to purchase Virtualization Software (also known as VMware). VMware is the leading industry standard software for server virtualization and management. Virtualization would dramatically improve the efficiency and availability of resources and applications for the court. This software allows multiple "virtual servers" to run on a single physical hardware platform and uses a common hard disk storage area network (SAN). Server virtualization software has the benefit of maximizing hardware use and utilization, such as memory, CPU, disk space and network I/O, while at the same time consolidating the overall hardware footprint (i.e., the number of physical servers). Server virtualization also allows for better management of the virtual servers and provides an

extra level of fault tolerance, in the event that a physical server has a fault. This software would allow the court to reduce its existing servers from more than twenty to as few as four servers in the computer room. The reduced number of physical servers has many added benefits including (1) lower yearly maintenance costs for server hardware warranties, (2) lower overall power consumption and (3) lower A/C cooling and humidity requirements for the computer room. The requested funds ($250,000) will be used to procure new server hardware, a SAN, VMware licenses and the services of a certified VMware technical contractor.

### *11. Internship Program*

**Requested Increase: $116,000 FTE: 3**

The court requests the authorization of six positions (3 FTE) and salaries to implement a formal internship program. The internship program's mission is to introduce local college and university students and recent graduates to the administrative functions of the Clerk's Office, the Office of the Senior Staff Attorney, the Circuit Library, the Administrative Services Office and the Information Technology Office, as well as to provide these students and recent graduates with practical job experience for potential administrative careers in the judiciary. The interns will be paid for their work. The Senior Staff Attorney intern will work full time. Students who fill other intern slots will work part-time during the academic year and full-time during vacations. The combined hours of all of the interns in fiscal year 2011 will equate to 3 FTE at a total cost of $116,000.

## FINANCING THE FISCAL YEAR 2010 REQUEST

### *12. Utilization of Electronic Public Access Receipts*

**Estimated funds available: $46,000**

Section 303(a) of the Judiciary's 1992 Appropriations Act authorizes the Director of the Administrative Office of the United States Courts, under the direction of the Judicial Conference of the United States, to "prescribe a schedule of reasonable fees for electronic access to information which the Director is required to maintain and make available to the public." These fees will be deposited as "offsetting collections" to the Judiciary Information Technology Fund pursuant to 28 U.S.C. §612(c)(1)(A) to reimburse expenses incurred in providing these services.

28 U.S.C. § 612 provides that fees collected for electronic public access to information be deposited into the Judiciary Information Technology Fund, and that these funds are available without fiscal year limitations. The judiciary is authorized to use these fees to offset the costs of providing the information to the public electronically. Fiscal year 1997 appropriations report language expanded the judiciary's authority to use these funds to finance automation enhancements that improve the availability of electronic information to the public. Fiscal year 2004 appropriations report language authorized the judiciary to use these fees for system enhancement and operational costs associated with the judiciary's case management/electronic case filing (CM/ECF) system, which provides the ability to receive and file court documents over the Internet. In fiscal year 2007, the judiciary received authority from Congress to expand the use

of Electronic Public Access receipts to support courtroom technology allotments for installation, cyclical replacement of equipment, and infrastructure maintenance.

The court estimates that $46,000 of the Electronic Public Access receipts will be available in fiscal year 2011 to offset ongoing courtroom technology requirements.

**APPENDIX**

The following is a more complete listing of the Federal Circuit's exclusive jurisdiction It hears appeals from:

**(A)** final decisions of all Federal District Courts in cases arising under 28 U.S.C. §1338(a) relating to patent laws generally; 35 U.S.C. §§ 145-146 relating to review of decisions of the Patent and Trademark Office, Board of Patent Appeals and Interferences; 28 U.S.C. §1346(a)(2) relating to Little Tucker Act claims against the United States; and section 211 of the Economic Stabilization Act of 1970, section 5 of the Emergency Petroleum Allocation Act of 1973, section 506 (c) of the Natural Gas Policy Act of 1978, and section 523 of the Energy Policy and Conservation Act relating to all statutes formerly under the jurisdiction of the Temporary Emergency Court of Appeals;

**(B)** final decisions of the United States Court of International Trade, 28 U.S.C. § 2645(c);

**(C)** final decisions of the United States Court of Appeals for Veterans Claims, 38 U.S.C. § 7292;

**(D)** final decisions of the United States Court of Federal Claims, 28 U.S.C. § 2522 and 42 U.S.C. §§ 300aa - 12(f);

**(E)** final decisions of the High Court of the Trust Territory of the Pacific Islands, 48 U.S.C. § 1681 note (1988) (Compact of Free Association; Federated States of Micronesia, Republic of Marshall Islands, TITLE II, Title One, Article VII, § 174(c));

**(F)** final determinations of the United States International Trade Commission relating to unfair practices in import trade made under 19 U.S.C. § 1337;

**(G)** findings of the Secretary of Commerce under U.S. note 6 to subchapter X of chapter 98 of the Harmonized Tariff Schedule of the United States relating to importation of educational or scientific instruments and apparatus;

**(H)** final orders or decisions of the Merit Systems Protection Board and certain arbitrators, 5 U.S.C § 7703;

**(I)** final decisions of the General Accounting Office Personnel Appeals Board, 31 U.S.C. § 755;

**(J)** final decisions of all agency Boards of Contract Appeals, 41 U.S.C. § 607(g);

**(K)** final decisions of the Patent and Trademark Office tribunals on patent applications and interferences, trademark applications and interferences, cancellations, concurrent use proceedings, and oppositions, 35 U.S.C. § 142, 15 U.S.C. § 1071, 37 CFR §§ 1.304, 2 145;

**(L)** appeals under section 71 of the Plant Variety Protection Act of 1970, 7 U.S.C. § 2461;

**(M)** certain actions of the Secretary of Veterans Affairs, 38 U S C. § 502;

**(N)** certain final orders of the Equal Employment Opportunity Commission relating to certain Presidential appointees, 2 U.S.C. § 1219(a)(3) and 28 U.S.C. § 2344;

**(O)** final decisions of the Office of Personnel Management under 5 U.S.C. § 8902a(g)(2),

**(P)** certain actions of the Board of Directors of the Office of Compliance of the U.S. Congress under 2 U S.C. § 1407(a); and

**(Q)** final decisions of certain agencies pursuant to 28 U.S.C. § 1296.

Pursuant to 28 U S.C. § 1292 (c) the Federal Circuit also has exclusive jurisdiction regarding:

a. appealable interlocutory orders or decrees in cases where the court would otherwise have jurisdiction over an appeal; and
b. appeals from judgments in civil actions for patent infringement otherwise appealable to the court and final except for accounting.

Under the provisions of 28 U.S.C. § 1292(d), the court has:

a. exclusive jurisdiction of appeals from interlocutory orders granting or denying, in whole or in part, a motion to transfer an action to the Court of Federal Claims; and
b. may, in its discretion, permit an appeal from an interlocutory order of a judge who certifies that there is a controlling question of law and a substantial ground for difference of opinion thereon, and that an immediate appeal may materially advance the ultimate termination of the litigation.

Pursuant to 38 U.S.C § 7292(b) (1), the court has exclusive jurisdiction of certain interlocutory orders of the Court of Appeals for Veterans Claims.

Legislation having an impact on the Federal Circuit is contained in P.L. 105-339 (51021), October 31, 1998, Veterans Employment Opportunities Act of 1998, which provides a remedy through the Merit Systems Protection Board for those seeking review of the application of veterans preference rules to applicants for federal employment.

## UNITED STATES COURT OF INTERNATIONAL TRADE
*Salaries and Expenses*
## SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | |
|---|---|
| **Fiscal Year 2010 Appropriation** | **$21,350,000** |
| **Fiscal Year 2011 Requested Appropriation** | **$22,268,000** |
| **Requested Increase from Fiscal Year 2010 Appropriation** | **$918,000** |

## APPROPRIATION LANGUAGE

### UNITED STATES COURT OF INTERNATIONAL TRADE
### SALARIES AND EXPENSES

For salaries of the chief judge and eight judges, salaries of the officers and employees of the court, services, and necessary expenses of the court, as authorized by law, [$21,350,000] *$22,268,000*.

**SUMMARY OF REQUEST**
**COURT OF INTERNATIONAL TRADE**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2011**
**(Dollar amounts in thousands)**

**Fiscal Year 2011 Resource Requirements:**

| Page No. | | Mandatory FTE | Mandatory Amount | Discretionary FTE | Discretionary Amount | Total FTE | Total Amount |
|---|---|---|---|---|---|---|---|
| | **Fiscal Year 2010 Obligations** | 9 | 1,715 | 71 | 20,275 | 80 | 21,990 |
| | Carryforward Balance from the Judiciary Information Technology Fund | - | - | - | (640) | - | (640) |
| | **Fiscal Year 2010 Base Appropriation** | 9 | 1,715 | 71 | 19,635 | 80 | 21,350 |
| | Adjustment for revised Mandatory Estimates | - | 130 | - | (130) | - | - |
| | **Adjustments to Base to Maintain Current Services:** | | | | | | |
| | **A. Judges** | | | | | | |
| | 1 Pay and benefit adjustments | | | | | | |
| 3.9 | a Proposed January 2011 cost-of-living adjustment (1.4% for nine months) | - | - | - | 17 | - | 17 |
| 3 9 | b. Health benefits increase | - | 6 | - | - | - | 6 |
| | **B. Court Support Personnel and Programs** | | | | | | |
| | 2. Pay and benefit cost adjustments | | | | | | |
| 3 9 | a Annualization of January 2010 pay adjustment (2.1% for three months) | - | - | - | 34 | - | 34 |
| 3 9 | b Proposed January 2011 pay adjustment (1.4% for nine months) | - | - | - | 69 | - | 69 |
| 3 9 | c. Promotions and within-grade increases | - | - | - | 107 | - | 107 |
| 3 10 | d. Health benefits increase | - | - | - | 21 | - | 21 |
| 3 10 | e FERS increase and workers' compensation cost | - | - | - | 98 | - | 98 |

**SUMMARY OF REQUEST**
**COURT OF INTERNATIONAL TRADE**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2011**
**(Dollar amounts in thousands)**

| | | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|---|
| | | FTE | Amount | FTE | Amount | FTE | Amount |
| | **C. Other Adjustments** | | | | | | |
| | 3 Inflationary adjustments | | | | | | |
| 3.11 | a. Increases in GSA space rental costs | - | - | - | 228 | - | 228 |
| 3.11 | b Increases in FPS basic and building-specific security surcharges. | - | - | - | 54 | - | 54 |
| 3.11 | c. General inflationary adjustments | - | - | - | 284 | - | 284 |
| | **Subtotal, Adjustments to Base to Maintain Current Services** | - | 6 | - | 912 | - | 918 |
| | **Total Fiscal Year 2011 Appropriation Required** | 9 | 1,851 | 71 | 20,417 | 80 | 22,268 |
| | **Total Appropriation Increase, Fiscal Year 2010 appropriation to Fiscal Year 2011** | - | 136 | - | 782 | - | 918 |

**SUMMARY OF REQUEST**
**COURT OF INTERNATIONAL TRADE**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2011**
**(Dollar amounts in thousands)**

**Financing the Fiscal Year 2011 Request:**

| | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|
| | FTE | Amount | FTE | Amount | FTE | Amount |
| **Total Appropriation Required, Fiscal Year 2011** | 9 | 1,851 | 71 | 20,417 | 80 | 22,268 |
| 3 11 Carryforward Balance from the Judiciary Information Technology Fund | - | - | - | 284 | - | 284 |
| **Total Estimated Obligations, Fiscal Year 2011** | 9 | 1,851 | 71 | 20,701 | 80 | 22,552 |

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**SALARIES AND EXPENSES**
**Obligations by Activity ($000)**

| Activity | Fiscal Year 2009 Actual | Fiscal Year 2010 Estimate | Fiscal Year 2011 Request |
|---|---|---|---|
| **Salaries and Expenses, Total Obligations** [1/] | **19,351** | **21,990** | **22,552** |
| Unobligated Balance, Start of Year | | | |
| Judiciary Information Technology Fund | (683) | (924) | (284) |
| Unobligated Balance, End of Year | | | |
| Judiciary Information Technology Fund | 924 | 284 | - |
| Unobligated Balance, expiring | 43 | - | - |
| Prior Year Recoveries | (30) | - | - |
| **Available Appropriation** | **19,605** | **21,350** | **22,268** |

*1/ Fiscal year 2009 obligations include $250,000 transferred to the Fees of Jurors account*

**Object Classification ($000)**

| | Description | Fiscal Year 2009 Actual | Fiscal Year 2010 Estimate | Fiscal Year 2011 Request |
|---|---|---|---|---|
| 11 | Personnel compensation | 7,290 | 8,049 | 8,276 |
| 12 | Personnel benefits | 1,587 | 1,741 | 1,866 |
| 21 | Travel | 109 | 144 | 145 |
| 22 | Transportation of things | 7 | 15 | 15 |
| 23 | Rent, communications and utilities | | | |
| | *Rental payments to GSA* | 7,528 | 9,100 | 9,328 |
| | *Communications, utilities & misc charges* | 133 | 213 | 216 |
| 24 | Printing and reproduction | 29 | 5 | 5 |
| 25 | Other services | 1,308 | 1,167 | 1,430 |
| 25.3 | Building specific security surcharge | 512 | 541 | 595 |
| 26 | Supplies and materials | 59 | 85 | 87 |
| 31 | Equipment | 250 | 290 | 305 |
| | Judiciary Information Technology Fund | 539 | 640 | 284 |
| | **Total obligations** | **19,351** | **21,990** | **22,552** |

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**Salaries & Expenses**
**Relation of Obligations to Outlays ($000)**

| | Fiscal Year 2009 Actual | Fiscal Year 2010 Estimate | Fiscal Year 2011 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 19,351 | 21,990 | 22,552 | 562 |
| Obligated balance, start of year | 1,946 | 1,949 | 1,970 | 21 |
| Obligated balance, end of year | (1,949) | (1,970) | (2,075) | (105) |
| Net Outlays | 19,348 | 21.969 | 22,447 | 478 |

**Personnel Summary**

| | Fiscal Year 2009 Actual | Fiscal Year 2010 Estimate | Fiscal Year 2011 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total compensable workyears. Full-time equivalent employment | 76 | 80 | 80 | 0 |

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**SALARIES AND EXPENSES**

**Summary of Mandatory Costs**

| | Fiscal Year 2010[1] | | Fiscal Year 2011 [2] | | Increase ($000) |
|---|---|---|---|---|---|
| | No. of Judgeships | Compensation and Benefits ($000) | No. of Judgeships | Compensation and Benefits ($000) | |
| Article III Judges | 9 | 1,845 | 9 | 1,851 | 6 |

1/ Fiscal year 2010 reflects the planned obligation level
2/ The requested fiscal year 2011 cost-of-living adjustment for judges is treated as a "discretionary" cost and thus is not included in this amount

## GENERAL STATEMENT AND INFORMATION

The Court of International Trade, with nine active Article III judges, has exclusive nationwide jurisdiction over civil actions against the United States, its agencies and officers, and certain civil actions brought by the United States, arising out of import transactions and the administration and enforcement of the federal customs and international trade laws.

The budget estimates under this title are to provide for the salaries of the nine judges and supporting personnel of the Court of International Trade, located in Manhattan, New York, and the necessary operating expenses of the Court These operating expenses include internal courthouse security, Federal Protective Service (FPS) charges for basic and building-specific security surcharges, GSA rent, travel, equipment maintenance contracts, cyclical maintenance of and upgrades to facilities, communication services, printing and binding, supplies, purchase of new equipment and furniture, repair of existing equipment and furniture, new legal reference materials, and continuation of reports for fiscal year 2011. In keeping with its national jurisdiction, court may be held throughout the country.

Table 3.1, *Civil Action Cases*, provides a summary of the business of the Court for fiscal years 2004 through 2009. The spike in pending cases prior to fiscal year 2007 is largely due to the litigation resulting from the United States Supreme Court ruling in *United States Shoe Corp. v. United States, 523 U.S. 360 (1998)*, in which the Harbor Maintenance Tax was declared unconstitutional.

**Table 3.1 Civil Action Cases**

| Fiscal Year | Pending Beginning of Year | Received | Decided | Pending End of Year |
|---|---|---|---|---|
| 2004 | 10,578 | 767 | 476 | 10,869 |
| 2005 | 10,869 | 741 | 455 | 11,155 |
| 2006 | 11,155 | 478 | 9,446 | 2,187 |
| 2007 | 2,187 | 511 | 592 | 2,106 |
| 2008 | 2,106 | 477 | 472 | 2,111 |
| 2009 | 2,111 | 519 | 418 | 2,212 |

## JUSTIFICATION OF CHANGES

The fiscal year 2011 budget request for the Court totals $22,268,000. This represents an overall increase of $918,000, or 4.3 percent, over the fiscal year 2010 enacted appropriation of $21,350,000. The increase reflects the necessary adjustments to base to maintain current services. The Court requests no program increases for fiscal year 2011.

## ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES

The following narrative provides information and justification for each of the adjustments to base for the Court.

## A. JUDGES

*1. Pay and benefit cost adjustments*

**a. Proposed January 2011 cost-of living adjustment**

**Requested Increase: $17,000**

The Office of Management and Budget is projecting that the Employment Cost Index (ECI) will increase by an average of 1.4 percent beginning on or after January 1, 2011. The requested increase provides for the cost of nine months of the anticipated ECI increase for judges in fiscal year 2011.

**b. Health benefits increase**

**Requested Increase: $6,000**

Based on information provided by the Office of Personnel Management, health benefit premium contributions are projected to increase by 7.0 percent in January 2010 and another 7.0 percent in January 2011. The requested increase annualizes the 2010 premium increase and includes a nine-month provision for the anticipated fiscal year 2011 premium increase.

## B. COURT SUPPORT PERSONNEL

*2. Pay and benefit cost adjustments*

**a. Annualization of the January 2010 pay adjustment**

**Requested Increase: $34,000**

As a result of ECI and locality pay adjustments, federal pay rates in New York City increased by 2.1 percent, effective January 2010. The requested increase annualizes this pay increase for the first three months of fiscal year 2011.

**b. Proposed January 2011 pay adjustment**

**Requested Increase: $69,000**

The Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.4 percent beginning on or after January 1, 2011. The requested increase provides for the cost of nine months of the anticipated ECI pay increase in fiscal year 2011.

**c. Promotions and within-grade increases**

**Requested Increase: $107,000**

The requested increase provides for promotions and within-grade increases for support personnel. The salary plan for judicial support personnel provides for periodic within-grade increases for staff who receive at least a satisfactory performance rating.

d. **Health benefits increase**

**Requested Increase: $21,000**

Based on the information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 7.0 percent in January 2010 and by another 7.0 percent in January 2011. The requested increase annualizes the 2010 premium increase for the first three months, and includes a nine-month provision for the anticipated fiscal year 2011 premium increase.

e. **FERS increase and workers' compensation costs**

**Requested Increase: $98,000**

Funds are requested to provide for new benefits for employees covered by the Federal Employees Retirement System (FERS), pursuant to the National Defense Authorization Act for Fiscal Year 2010, P. L. 111-84. The requested increase includes the additional agency contribution for FERS employees from 11.2 percent to 11.7 percent. The Court also is requesting additional funds to pay direct costs of workers' compensation and medical benefits paid under the Federal Employees Compensation Act.

The table below provides a breakout of these costs.

| Benefit Category | Funds Requested |
|---|---|
| FERS increase per P. L. 111-84 | $67,000 |
| Workers' Compensation | $31,000 |
| **Total Increase** | **$98,000** |

## C. OTHER ADJUSTMENTS

### *3. Inflationary adjustments*

**a. Increases in General Services Administration (GSA) space rental costs**

**Requested Increase: $228,000**

GSA's rent estimate for fiscal year 2011 is $9,328,000, an increase of $228,000, or 2.5 percent over the fiscal year 2010 estimate. This amount includes the continuation of amortized costs of the Court's congressionally-approved security pavilion.

**b. Increase in Federal Protective Service (FPS) basic/building specific security surcharges**

**Requested Increase: $54,000**

Based on the Department of Homeland Security's FPS's estimate, $54,000 is required to pay for increases in basic and building-specific security surcharge costs in fiscal year 2011. The building-specific security surcharges provide for the Court's pro-rata share of installing, operating and maintaining the enhanced security for the Federal Complex in lower Manhattan.

**c. General inflationary adjustments**

**Requested Increase: $284,000**

Consistent with guidance from the Office of Management and Budget, the Court requests an increase of $284,000 to fund inflationary increases of 1.1 percent for operating expenses such as travel, utilities, printing, contractual services, supplies and materials, furniture, and equipment.

## <u>FINANCING THE FISCAL YEAR 2011 REQUEST</u>

### *4. Carryforward Balance from the Judiciary Information Technology Fund*

**Estimated Obligations: $284,000**

At the beginning of fiscal year 2010, $924,000 was available in carryforward balances from the Judiciary Information Technology Fund. Of this amount, the Court is planning to use $640,000 in fiscal year 2010 to continue its support of its upgraded data network and voice connections and Virtual Private Network System (VPN); upgrade and support existing software applications, purchase new software applications to ensure the continued operational efficiency of the Court; replace computer desktop systems, including monitors, printers, laptops, and file servers in accordance with the judiciary's cyclical replacement program; provide broadband services for the new laptops; support Court equipment by the purchase of yearly leasing and maintenance agreements and complete the purchase and installation phases for the Court's upgraded video conferencing system.

At the beginning of fiscal year 2011, the Court anticipates that $284,000 will be available in carryforward balances in the Judiciary Information Technology Fund in order to continue its information technology initiatives, and to support the Court's short-term and long-term information technology needs.

## COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES

**Summary of the Fiscal Year 2011 Budget Request**

The *Courts of Appeals, District Courts, and Other Judicial Services* accounts fund most of the day-to-day operations and activities of the federal courts. The four accounts under this heading include.

- **Salaries and Expenses**, which funds the operating costs of appellate, district and bankruptcy courts, and probation and pretrial services offices;
- **Defender Services**, which funds the necessary expenses to provide defense representation under the Criminal Justice Act (CJA) for persons financially unable to obtain defense counsel;
- **Fees of Jurors and Commissioners**, which funds the fees and allowances of grand and petit jurors, and the compensation of jury and land commissioners, and
- **Court Security**, which provides for the necessary expenses to provide protective guard services and security equipment for judiciary facilities.

### The Fiscal Year 2011 Budget Request

The Judicial Conference requests $6,954.9 million in appropriations in fiscal year 2011 for these four accounts, an increase of $446.2 (6.9 percent) over fiscal year 2010 enacted appropriations of $6,508 7 million. The following table details the fiscal year 2010 enacted appropriations and fiscal year 2011 requested appropriations levels for the four accounts

The $446.2 million increase in appropriations includes funding for 1,114 additional FTE, and is comprised of standard adjustments to base totaling $372.3 million and 613 FTE, and program increases totaling $73.9 million and 501 FTE. The table on page 4.2 summarizes the requested changes for each account.

Appropriations for the *Courts of Appeals, District Courts, and Other Judicial Services*

| ($000) | FY 2010 Enacted Appropriation | FY 2011 Request | Increase over FY 2010 | % Change |
|---|---|---|---|---|
| Salaries and Expenses 1/ | $5,016,446 | $5,314,566 | $ 298,120 | 5 9% |
| Defender Services | $977,748 | $1,081,195 | $ 103,447 | 10 6% |
| Fees of Jurors | $61,861 | $64,108 | $ 2,247 | 3 6% |
| Court Security | $452,607 | $495,038 | $ 42,431 | 9 4% |
| **Total** | **$6,508,662** | **$6,954,907** | **$ 446,245** | **6.9%** |

1/ Salaries and Expenses includes funds from the Vaccine Injury Trust Fund

FY 2011 Summary of Requested Changes

| | COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Salaries and Expenses | | Defender Services | | Fees of Jurors and Commissioners | Court Security | | Total Court of Appeals, District Courts, and Other Judicial Services[1] | |
| | FTE | ($000) | FTE | ($000) | ($000) | FTE | ($000) | FTE | ($000) |
| FY 2010 Enacted Appropriation | 30,203 | 5,011,018 | 2,736 | 977,748 | 61,861 | 70 | 452 607 | 33 009 | 6,503,234 |
| FY 2010 Vaccine Injury Trust Fund | - | 5,428 | - | - | - | - | - | - | 5,428 |
| **FY 2010 Available Appropriation** | 30,203 | 5,016,446 | 2,736 | 977,748 | 61,861 | 70 | 452,607 | 33,009 | 6,508,662 |
| **FY 2011 Adjustments to Base** | | | | | | | | | |
| Judges | | | | | | | | | |
| - Pay and benefit cost adjustments | - | 6,883 | - | - | - | - | - | - | 6,883 |
| - Additional senior judges | 108 | 13,029 | - | - | - | - | - | 108 | 13,029 |
| - Increase in average number of filled Article III judgeships | 32 | 4,024 | - | - | - | - | - | 32 | 4,024 |
| - Non-recurring costs of new 2010 judges | - | (874) | - | - | - | - | - | - | (874) |
| Court Personnel | | | | | | | | | |
| - Pay and benefit cost adjustments | - | 96,997 | - | 13,182 | - | - | 278 | - | 110,457 |
| - Pay adjustments for panel attorneys (to $126/hour and $179/hour) | - | - | - | 33,151 | - | - | - | - | 33,151 |
| Other Changes | | | | | | | | | |
| - Reduction for non-recurring costs | - | - | - | (300) | - | - | (885) | - | (1,185) |
| - Financing adj necessary to maintain current services | - | 18,099 | - | (3,633) | 451 | - | 5,000 | - | 19,917 |
| - Inflation (non-space-related) | - | 23,697 | - | 1,689 | 442 | - | 64 | - | 25,892 |
| - Vaccine Injury Trust Fund adjustment | - | (643) | - | - | - | - | - | - | (643) |
| - Space related costs (includes inflation for space rental rates) | - | 36,698 | - | 1,174 | - | - | 140 | - | 38,012 |
| - Information technology adjustments for ongoing operations | - | 3,473 | - | - | - | - | - | - | 3,473 |
| - Annualization of new FY 2010 positions | 360 | 29 097 | 54 | 8,910 | - | - | - | 414 | 38,007 |
| - Defender Services workload increase | - | - | 59 | 28,598 | - | - | - | 59 | 28,598 |
| - Change in available jurors | - | - | - | - | 174 | - | - | - | 174 |
| - FPS security service charges | - | - | - | - | - | - | 5,385 | - | 5,385 |
| - FY 2011 court security officer wage adjustments | - | - | - | - | - | - | 13,295 | - | 13,295 |
| - Annualization of new FY 2010 court security officers | - | - | - | - | - | - | 832 | - | 832 |
| - Additional court security officers in FY 2011 | - | - | - | - | - | - | 2,071 | - | 2,071 |
| - Adjustments to base for security systems and equipment | - | - | - | - | - | - | 9,774 | - | 9,774 |
| - Additional requirements for high-threat trials | - | - | - | 15,600 | 1 180 | - | 5,285 | - | 22,065 |
| Subtotal, FY 2011 Adjustments to Base | 500 | 230,480 | 113 | 98,371 | 2,247 | - | 41,239 | 613 | 372,337 |
| **FY 2011 Adjusted Base** | 30,703 | 5,246,926 | 2,849 | 1,076,119 | 64,108 | 70 | 493,846 | 33,622 | 6,880,999 |
| **FY 2011 Program Increases** | | | | | | | | | |
| Judges | | | | | | | | | |
| - Magistrate judges and staff | 27 | 2,961 | - | - | - | - | - | 27 | 2,961 |
| Court Personnel and Programs | | | | | | | | | |
| - New court support staff for workload increases | 471 | 39,679 | - | - | - | - | - | 471 | 39,679 |
| - Telecommunications infrastructure enhancements | - | 25 000 | - | - | - | - | - | - | 25,000 |
| - Increase in non-capital rate from $126 to $141 per hour | - | - | - | 4,776 | - | - | - | - | 4,776 |
| - New federal defender organization | - | - | - | 300 | - | - | - | - | 300 |
| - Five new judiciary-funded USMS positions | - | - | - | - | - | 3 | 309 | 3 | 309 |
| - National contract for vehicle barrier maintenance | - | - | - | - | - | - | 683 | - | 683 |
| - Facial recognition system (pilot) | - | - | - | - | - | - | 200 | - | 200 |
| Subtotal, FY 2011 Program Increases | 498 | 67,640 | - | 5,076 | - | 3 | 1,192 | 501 | 73,908 |
| Total increases requested, FY 2011 | 998 | 298 120 | 113 | 103 447 | 2,247 | 3 | 42,431 | 1,114 | 446,245 |
| **FY 2011 Appropriation Request** | 31,201 | 5,314,566 | 2,849 | 1,081,195 | 64,108 | 73 | 495,038 | 34,123 | 6,954,907 |

[1] The Judiciary FTE totals do not reflect reimbursable positions (282 in FY 2010 and 285 in FY 2011)

**Adjustments to the Base**

The *Courts of Appeals, District Courts, and Other Judicial Services* fiscal year 2011 request includes $372.3 million (613 FTE) in adjustments to the fiscal year 2010 base for the following.

- $150.5 million for inflationary pay and benefit increases for judges and supporting personnel, including the annualization of the January 2010 pay adjustment for supporting personnel, the proposed January 2011 ECI adjustments for judges and supporting personnel, changes in benefits for both judges and supporting personnel, and costs associated with increases to the non-capital and capital panel attorney rates.
- $38.0 million for net changes to the judiciary's space and facilities requirements, including inflationary increases to GSA space rental rates, the annualization of new space expected to be delivered in fiscal year 2010, the cost of new space anticipated to be delivered in fiscal year 2011.
- $38.0 million to annualize fiscal year 2010 court support staff (360 FTE), federal defender organization positions (52 FTE) and new fiscal year 2010 reimbursable staff positions at the Administrative Office to support the Defender Services program (2 FTE).
- $28.6 million (59 FTE) for the net increase in costs and complexity associated with the 210,900 non-capital Criminal Justice Act representations projected in fiscal year 2011, as well as for projected increases in capital representation costs.
- $25.9 million for increases in contract rates and other standard inflationary increases.
- $22.0 million associated with additional requirements for high-threat trials anticipated in fiscal year 2011.
- $19.9 million due to a projected decrease in the availability of non-appropriated funds in fiscal year 2011. Currently, the judiciary is estimating that fewer non-appropriated funds will be available in fiscal year 2011 than were available in fiscal year 2010 The judiciary needs its appropriated bases to be adjusted for the difference in order to maintain the same level of services as provided in fiscal year 2010. If these adjustments are not provided, the judiciary may be forced to reduce staffing levels in the courts, suspend Criminal Justice Act (CJA) panel attorney payments, suspend civil trials, and reduce critical security needs of the courts.
- $17.1 million (140 FTE) for an additional 25 senior judges and 83 associated staff, and an additional 5 active Article III judges and 27 associated staff.
- $16.1 million for increased court security officer costs, including a wage adjustment for contract court security officers, and the annualization of fiscal year 2010 contract court security officer positions and new fiscal year 2011 contract court security officer positions for new and existing court occupied space.
- $9.8 million net increase for adjustments above the fiscal year 2010 base for court security systems and equipment.

- $5.4 million for increases in Federal Protective Service (FPS) security charges, based on rates established by FPS.
- $3.5 million to support the current operations for the judiciary's information management and telecommunications systems.
- $0.2 million increase for the change in the number of available jurors.
- -$2.7 million decrease for non-recurring costs, including one-time costs associated with new judges in fiscal year 2010, non-recurring start-up costs for new federal defender organizations, non-recurring court security costs, and non-recurring costs associated with the Vaccine Injury Trust Fund.

**Program Increases**

The judiciary's fiscal year 2011 request includes $73.9 million and 501 FTE in program enhancements and workload increases for the four accounts under the *Courts of Appeals, District Courts, and Other Judicial Services*.

***Salaries and Expenses***
***($67.6 million/498 FTE)***

Magistrate Judges and Staff ($3.0 million/27 FTE)
The fiscal year 2011 request includes $3.0 million for 6 new accelerated magistrate judges (6 FTE) and associated support staff (21 FTE). Additional magistrate judges are required to assist the district courts in managing their varied and increasingly complex workload.

Court Support Staff ($39 6 million/471 FTE)
The fiscal year 2011 request includes a net increase of $39.6 million for an additional 942 court support staff (471 FTE) to handle expected increases in case filings, especially in the bankruptcy courts and in probation and pretrial services offices

Information Technology Program ($25.0 million)
The fiscal year 2011 request includes an increase of $25.0 million for telecommunications enhancements The request will continue to build on the multi-year investment begun in fiscal year 2010 to replace telecommunications systems in the courts as well as accompanying data communications network upgrades

***Defender Services***
***($5.1 million)***

Increase in Panel Attorney Non-Capital Rate Increase to $141 per hour ($4.8 million)
The requested increase of $4 8 million will fund the costs associated with increasing the panel attorney non-capital rate above a fiscal year 2011 cost of living increase ($126 per hour) to the statutorily maximum ($141 per hour for fiscal year 2011), effective January 1, 2011.

New Federal Defender Organizations ($0.3 million)
The requested increase of $300,000 will fund the non-recurring start-up expenses associated with opening one new federal defender organization.

***Court Security***
***($1.2 million/3 FTE)***

New Judiciary-Funded USMS Positions ($0.3 million/3 FTE)
An increase of $309,000 will fund 5 new judiciary-funded USMS positions (3 FTE) for six months. These positions will address critical needs in the areas of security systems, including expansion of the perimeter security program

Contract for Vehicle Barrier Maintenance ($0.7 million)
The requested increase of $683,000 will fund a national contract for vehicle barrier maintenance.

Facial Recognition System ($0.2 million)
The requested increase of $200,000 will fund the pilot of a facial recognition system program.

**COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES**
***Salaries and Expenses***
**SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS**

| | |
|---|---|
| **Fiscal Year 2010 Salaries and Expenses Appropriation** | **$5,011,018,000** |
| **Vaccine Injury Compensation Trust Fund (Appropriation)** | **$5,428,000** |
| **Total, Fiscal Year 2010 Available Appropriation** | **$5,016,446,000** |
| | |
| **Fiscal Year 2011 Salaries and Expenses Appropriation Request** | **$5,309,781,000** |
| **Fiscal Year 2011 Vaccine Injury Compensation Trust Fund Appropriation Request** | **$4,785,000** |
| **Total, Fiscal Year 2011 Appropriation Request** | **$5,314,566,000** |
| | |
| **Requested Increase from Fiscal Year 2010 Appropriation** | **$298,120,000** |

**APPROPRIATION LANGUAGE**

**COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES**

**SALARIES AND EXPENSES**

For the salaries of circuit and district judges (including judges of the territorial courts of the United States), justices and judges retired from office or from regular active service, judges of the United States Court of Federal Claims, bankruptcy judges, magistrate judges, and all other officers and employees of the Federal Judiciary not otherwise specifically provided for, and necessary expenses of the courts, as authorized by law, [$5,011,018,000] *$5,309,781,000* (including the purchase of firearms and ammunition), of which not to exceed $27,817,000 shall remain available until expended for space alteration projects and for furniture and furnishings related to new space alteration and construction projects

In addition, for expenses of the United States Court of Federal Claims associated with processing cases under the National Childhood Vaccine Injury Act of 1986 (Public Law 99-660), not to exceed [ $5,428,000] *$4,785,000,* to be appropriated from the Vaccine Injury Compensation Trust Fund.

**SUMMARY OF REQUEST**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2011**
**(Dollar amounts in thousands)**

| Fiscal Year 2011 Resource Requirements: | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|
| | FTEs | Amount | FTE | Amount | FTE | Amount |
| **Fiscal Year 2010 Total Available Resources (includes Vaccine Injury Fund)** | 1,669 | 340,000 | 28,534 | 5,170,442 | 30,203 | 5,510,442 |
| Fiscal Year 2009 Encumbered Carryforward | - | - | - | (43,732) | - | (43,732) |
| **Fiscal Year 2010 Financial Plan (includes Vaccine Injury Fund)** | 1,669 | 340,000 | 28,534 | 5,126,710 | 30,203 | 5,466,710 |
| Non-appropriated sources of funding: | | | | | | |
| Estimated Fiscal Year 2010 Fee Collections | - | - | - | (287,682) | - | (287,682) |
| Carryforward Balances from Fiscal Year 2009 into Fiscal Year 2010 | - | - | - | (124,929) | - | (124,929) |
| Carryforward from the Judiciary Information Technology Fund | - | - | - | (27,653) | - | (27,653) |
| Carryforward from War Supplemental | - | - | - | (10,000) | - | (10,000) |
| **Fiscal Year 2010 Appropriation (includes Vaccine Injury Fund)** | 1,669 | 340,000 | 28,534 | 4,676,446 | 30,203 | 5,016,446 |

| Page | | Mandatory FTEs | Mandatory Amount | Discretionary FTE | Discretionary Amount | Total FTE | Total Amount |
|---|---|---|---|---|---|---|---|
| | **Fiscal Year 2010 Base Appropriation (including Vaccine Injury Fund)** | 1,669 | 340,000 | 28,534 | 4,676,446 | 30,203 | 5,016,446 |
| | Adjustment to reflect expected mandatory costs | - | (14,716) | - | 14,716 | - | - |
| | **Adjustments to Base to Maintain Current Services:** | | | | | | |
| | **A. Judges** | | | | | | |
| 5 25 | 1. Pay and benefit cost adjustments | | | | | | |
| 5.25 | a. Proposed January 2011 pay adjustment (1.4% for nine months) | - | - | - | 4,547 | - | 4,547 |
| 5.26 | b. Benefit increases | - | 1,711 | - | 625 | - | 2,336 |
| 5.26 | 2. Senior judges (25 judges FTE/83 staff FTE) | 25 | 4,929 | 83 | 8,100 | 108 | 13,029 |
| 5.27 | 3. Increase in average number of filled Article III judgeships and base adjustment (5 judges FTE and 27 staff FTE) | 5 | 986 | 27 | 3,038 | 32 | 4,024 |
| 5.28 | 4. Non-recurring costs associated with filled fiscal year 2010 judges (Article III and magistrate judges) | - | (345) | - | (529) | - | (874) |
| | **B. Court Personnel and Programs** | | | | | | |
| 5.30 | 5. Pay and benefit cost adjustments | | | | | | |
| 5.30 | a. Annualization of January 2010 pay adjustment (2.0% for three months) | - | - | - | 15,185 | - | 15,185 |
| 5.30 | b. Proposed January 2011 pay adjustment (1.4% for nine months) | - | - | - | 33,106 | - | 33,106 |
| 5.30 | c. Promotions and within-grade increases | - | - | - | 23,961 | - | 23,961 |
| 5.30 | d. Benefit increases | - | - | - | 12,306 | - | 12,306 |
| 5.30 | e. FERs Increase | | | | 12,438 | - | 12,438 |
| 5.30 | 6. Annualization of new staff hired in fiscal year 2010 | - | - | 360 | 29,097 | 360 | 29,097 |
| 5.31 | 7. Funding necessary to maintain fiscal year 2010 service levels due to an anticipated decline in non-appropriated funds | - | - | - | 18,099 | - | 18,099 |

| Page | C. Other Mandatory Changes | Mandatory FTEs | Mandatory Amount | Discretionary FTE | Discretionary Amount | Total FTE | Total Amount |
|---|---|---|---|---|---|---|---|
| 5.32 | 8 Inflationary adjustments | - | - | - | 23,697 | - | 23,697 |
| 5.32 | 9. Vaccine Injury Compensation Trust Fund adjustment | - | - | - | (643) | - | (643) |
| 5.32 | 10. GSA space rental and related services | | | | | | |
| 5.32 | a. Annualization of new fiscal year 2010 space | - | - | - | 7,245 | - | 7,245 |
| 5.33 | b. New space to be delivered in fiscal year 2011 | - | - | - | 30,449 | - | 30,449 |
| 5.33 | c. Inflationary increase in GSA space rental rate costs (0.57%) | - | - | - | 5,596 | - | 5,596 |
| 5.33 | d. Tenant alterations, new furniture and other space-related adjustments | - | - | - | (6,592) | - | (6,592) |
| 5.37 | 11. Information technology adjustments to maintain ongoing operations | - | - | - | 3,473 | - | 3,473 |
| | **Subtotal, Adjustments to Base to Maintain Current Services** | **30** | **7,281** | **470** | **223,198** | **500** | **230,480** |
| | **Total Current Services Appropriation Required** | **1,699** | **332,565** | **29,004** | **4,914,360** | **30,703** | **5,246,926** |
| | **D. Program Increases** | | | | | | |
| 5.38 | 12. New fiscal year 2011 full-time magistrate judges and staff (6 new judgeships/ 6 FTE and 21 staff FTE) | - | - | 27 | 2,961 | 27 | 2,961 |
| 5.43 | 13. Fiscal Year 2011 court support workload changes | - | - | 471 | 39,679 | 471 | 39,679 |
| 5.44 | 14. Telecommunications infrastructure | - | - | - | 25,000 | - | 25,000 |
| | **Subtotal, Program Increases** | - | - | **498** | **67,640** | **498** | **67,640** |
| | **Total Fiscal Year 2011 Appropriation Request** | **1,699** | **332,565** | **29,502** | **4,982,001** | **31,201** | **5,314,566** |
| | **Total Appropriation Increase, Fiscal Year 2010 to Fiscal Year 2011** | **30** | **7,281** | **968** | **290,839** | **998** | **298,120** |

| Page | Financing the Fiscal Year 2011 Request: | Mandatory | | Discretionary | | Total | |
|---|---|---|---|---|---|---|---|
| | | FTEs | Amount | FTE | Amount | FTE | Amount |
| | **Total Appropriation Request, Fiscal Year 2011** | 1,699 | 332,565 | 29,502 | 4,982,001 | 31,201 | 5,314,566 |
| 5.45 | 15. Estimated Fiscal Year 2011 Fee Collections | - | - | - | 312,165 | - | 312,165 |
| 5 45 | 16. Anticipated Unencumbered Carryforward from Fiscal Year 2010 | - | - | - | 120,000 | - | 120,000 |
| | **Estimated Obligations, Fiscal Year 2011** | 1,699 | 332,565 | 29,502 | 5,414,166 | 31,201 | 5,746,731 |

**COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES**

**Salaries and Expenses**

| Activity ($000) | FY 2009 | | | FY 2010 | | | FY 2011 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Direct | Offsetting Coll | Total Oblig | Direct | Offsetting Coll | Total Oblig | Direct | Offsetting Coll | Total Oblig |
| Appeals | 584,253 | 26,052 | 610,305 | 611,660 | 55,104 | 666,764 | 643,063 | 52,292 | 695,355 |
| District | 2,327,929 | 108,245 | 2,436,174 | 2,436,155 | 225,388 | 2,661,543 | 2,562,150 | 213,521 | 2,775,671 |
| Bankruptcy | 801,536 | 35,741 | 837,277 | 839,136 | 75,597 | 914,733 | 882,218 | 71,739 | 953,957 |
| Probation/Pretrial | 1,110,563 | 49,520 | 1,160,083 | 1,162,659 | 104,743 | 1,267,402 | 1,222,351 | 99,398 | 1,321,749 |
| Total Obligations | 4,824,281 | 219,558 | 5,043,839 | 5,049,610 | 460,832 | 5,510,442 | 5,309,781 | 436,950 | 5,746,731 |
| Anticipated Financial Plan Savings | - | - | - | - | (120,000) | (120,000) | - | - | - |
| **Revised Obligations** | **4,824,281** | **219,558** | **5,043,839** | **5,049,610** | **340,832** | **5,390,442** | **5,309,781** | **436,950** | **5,746,731** |
| Unobligated Balance, Start of Year | | | | | | | | | |
| S&E No-Year Funds | (5,513) | - | (5,513) | (2,498) | - | (2,498) | - | - | - |
| Information Tech Funds | (45,990) | | (45,990) | (36,093) | - | (36,093) | - | - | - |
| Fee Collections | - | (223,113) | (223,113) | - | (167,721) | (167,721) | - | (120,000) | (120,000) |
| Prior Year Recoveries | | | | | | | | | |
| Salaries and Expenses | - | (16,940) | (16,940) | | - | - | - | - | - |
| Information Tech Funds | - | - | - | - | - | - | - | - | - |
| Unobligated Balance, End of Year | | | | | | | | | |
| S&E No Year Funds | 2,498 | - | 2,498 | - | - | - | - | - | - |
| Information Tech Funds | 36,093 | - | 36,093 | - | - | - | - | - | - |
| Fee Carryforward | - | 167,721 | 167,721 | - | 120,000 | 120,000 | - | - | - |
| **Available Appropriation (Direct)** | **4,811,369** | **147,226** | **4,958,595** | **5,011,018** | **293,111** | **5,304,129** | **5,309,781** | **316,950** | **5,626,731** |
| Emergency Appropriation | (10,000) | - | (10,000) | - | - | - | - | - | - |
| Offsetting Collections | | | | | | | | | |
| Fee Collections | - | (142,973) | (142,973) | - | (287,683) | (287,683) | - | (312,165) | (312,165) |
| Vaccine Injury Trust Fund | - | (4,253) | (4,253) | - | (5,428) | (5,428) | - | (4,785) | (4,785) |
| **Appropriation (Direct)** | **4,801,369** | - | **4,801,369** | **5,011,018** | - | **5,011,018** | **5,309,781** | - | **5,309,781** |

**COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES**
**Salaries and Expenses**
**Obligations by Budget Object Class ($000)**

| Description ($000) | FY 2009 | | | FY 2010 | | | FY 2011 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Direct | Offsetting Coll | Total Oblig | Direct | Offsetting Coll | Total Oblig | Direct | Offsetting Coll | Total Oblig |
| 1100 Personnel compensation | 2,434,553 | 110,799 | 2,545,352 | 2,524,459 | 230,374 | 2,754,833 | 2,652,061 | 218,242 | 2,870,303 |
| 1200 Personnel benefits | 701,176 | 31,911 | 733,087 | 729,880 | 66,606 | 796,486 | 767,482 | 63,157 | 830,639 |
| 1300 Benefits for former personnel | 3,816 | 174 | 3,990 | 7,326 | 669 | 7,995 | 7,704 | 634 | 8,338 |
| 2100 Travel | 59,147 | 2,692 | 61,839 | 60,441 | 5,516 | 65,957 | 63,502 | 5,226 | 68,728 |
| 2200 Transportation of Things | 5,724 | 260 | 5,984 | 7,261 | 663 | 7,924 | 7,698 | 633 | 8,331 |
| 2310 Rental payments to GSA | 889,115 | 40,465 | 929,580 | 890,350 | 81,250 | 971,600 | 927,560 | 76,330 | 1,003,890 |
| 2320 Rental payments to others | 32,436 | 1,476 | 33,912 | 34,096 | 3,111 | 37,207 | 37,496 | 3,086 | 40,582 |
| 2330 Communications, utilities & misc | 102,076 | 4,646 | 106,722 | 105,315 | 9,611 | 114,926 | 110,741 | 9,113 | 119,854 |
| 2400 Printing and reproduction | 15,263 | 695 | 15,958 | 22,895 | 2,089 | 24,984 | 24,074 | 1,981 | 26,055 |
| 2500 Other services | 394,948 | 17,975 | 412,923 | 417,597 | 38,109 | 455,706 | 448,575 | 36,914 | 485,489 |
| 2600 Supplies and materials | 21,941 | 999 | 22,940 | 23,810 | 2,173 | 25,983 | 25,037 | 2,060 | 27,097 |
| 3100 Equipment | 164,084 | 7,468 | 171,552 | 226,199 | 20,642 | 246,841 | 237,852 | 19,573 | 257,425 |
| Total Obligations | 4,824,281 | 219,558 | 5,043,839 | 5,049,630 | 460,812 | 5,510,442 | 5,309,781 | 436,950 | 5,746,731 |
| Anticipated Financial Plan Savings | - | - | - | - | (120,000) | (120,000) | - | - | - |
| **Revised Obligations** | **4,824,281** | **219,558** | **5,043,839** | **5,049,630** | **340,812** | **5,390,442** | **5,309,781** | **436,950** | **5,746,731** |

**COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES**

**SALARIES AND EXPENSES**

**Summary of Mandatory Obligations**

| | FY 2010 1/ | | FY 2011 2/ | | |
|---|---|---|---|---|---|
| | No. of Authorized Judgeships | Compensation ($000) | No. of Authorized Judgeships | Compensation ($000) | Increase ($000) |
| Circuit Judgeships | 167 | 30,156 | 167 | 30,661 | 505 |
| District Judgeships | 678 | 117,177 | 678 | 119,079 | 1,902 |
| Senior/Retired Judgeships | | 113,990 | | 118,819 | 4,828 |
| Bankruptcy Judgeships | 352 | 63,961 | 352 | 64,007 | 47 |
| **Total** | **1,197** | **325,284** | **1,197** | **332,565** | **7,282** |

1/ Fiscal year 2010 reflects the planned obligation level.

2/ The requested fiscal year 2011 cost-of-living adjustment for judges is treated as a "discretionary" cost and thus is not included in this amount

COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES

**Summary of Personnel Compensation and Benefits by Activity [1]**

| | FY 2009 | | FY 2010 | | FY 2011 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Actual | | Financial Plan | | Adj. to Base | | Workload Adj | | Total Request | |
| Program | FTE | Amount ($000) | FTE | Amount ($000) | FTE | Amount ($000) | FTE | Amount ($000) | FTE | Amount ($000) |
| **Appeals** | | | | | | | | | | |
| Judges | | | | | | | | | | |
| Article III Judges | | | | | | | | | | |
| Active | 150 | 30 335 | 148 | 30 156 | 1 | 601 | - | - | 149 | 30 757 |
| Senior | 104 | 21,482 | 108 | 22 508 | 5 | 337 | - | - | 113 | 22,845 |
| Retired | 18 | 2,875 | 14 | 3,038 | | 45 | - | | 14 | 3,083 |
| Court Staff | | | | | | | | | | |
| Article III Judges Staff | 1 097 | 100,212 | 1 095 | 103,381 | 17 | 7,458 | - | | 1,112 | 110 839 |
| Circuit Executives | 273 | 33 880 | 296 | 39,662 | 6 | 1,663 | 6 | 614 | 308 | 41,939 |
| Clerks Offices | 717 | 63,560 | 693 | 67 741 | 1 | 1,857 | (10) | (168) | 683 | 69,410 |
| Staff and Preargument Attorneys | 571 | 71 255 | 582 | 79 614 | 1 | 2 107 | (7) | (119) | 576 | 81,602 |
| Librarians | 268 | 27 323 | 287 | 31 619 | 4 | 1,192 | 4 | 378 | 295 | 33,189 |
| Bankruptcy Appellate Panels | 18 | 1,884 | 16 | 1,931 | 1 | 162 | 0 | - | 17 | 2,093 |
| Total Appeals | 3 215 | 352,807 | 3,239 | 379,650 | 35 | 15 422 | (6) | 685 | 3,268 | 395,757 |
| **District** | | | | | | | | | | |
| Judges | | | | | | | | | | |
| Article III Judges | | | | | | | | | | |
| Active | 627 | 118,098 | 607 | 117,177 | 4 | 2,384 | | - | 611 | 119,560 |
| Senior | 385 | 72,889 | 404 | 78,906 | 20 | 5,085 | - | - | 424 | 85,449 |
| Retired | 51 | 8,789 | 50 | 9,539 | - | 143 | - | - | 50 | 10,114 |
| Magistrate Judges | 529 | 101,026 | 541 | 104,325 | | 3 205 | 6 | 594 | 547 | 108,124 |
| Court of Federal Claims Judges | 16 | 3,330 | 16 | 3,392 | | 189 | | | 16 | 3,581 |
| Court Staff | | | | | | | | | | |
| Article III Judges' Staff | 2 895 | 292,814 | 2,864 | 299,307 | 77 | 71 517 | - | - | 2,941 | 370,824 |
| Magistrate Judges' Staff | 1,059 | 121,240 | 1,105 | 131,714 | - | 3,542 | 21 | 1,522 | 1,126 | 136,778 |
| Federal Claims Judges' Staff | 67 | 6,320 | 67 | 6 762 | - | 374 | - | - | 67 | 7,136 |
| Clerks Offices | 6,010 | 553,485 | 6,138 | 605 588 | 55 | 20,308 | 79 | 5,870 | 6,271 | 631 767 |
| Pro Se and death penalty | 394 | 56,030 | 410 | 61 205 | 10 | 3,204 | (3) | 20 | 417 | 64,429 |
| Court Reporters | 716 | 77,567 | 716 | 82,781 | 20 | 3,415 | 6 | 586 | 742 | 86,782 |
| Court Interpreters | 92 | 13,938 | 88 | 14,414 | 6 | 1,093 | 1 | 60 | 94 | 15,567 |
| Total District | 12,839 | 1 425,525 | 13,005 | 1 515 107 | 192 | 114 459 | 109 | 8,652 | 13 306 | 1,640,110 |
| **Bankruptcy** | | | | | | | | | | |
| Judges | | | | | | | | | | |
| Bankruptcy Judges | 340 | 65 221 | 338 | 63,961 | | 1 210 | | - | 338 | 65 171 |
| Court Staff | | | | | | | | | | |
| Bankruptcy Judges' Staff | 726 | 80 902 | 750 | 85,632 | - | 2 301 | | - | 750 | 87,933 |
| Clerks | 4,182 | 390 367 | 4,439 | 437,200 | 165 | 23,578 | 318 | 25 319 | 4 922 | 486 097 |
| Bank. Administrators | 51 | 6,896 | 71 | 7,776 | - | 223 | | - | 71 | 7,999 |
| Total Bankruptcy | 5 306 | 543,386 | 5 598 | 594 569 | 165 | 27 312 | 318 | 25,319 | 6 081 | 647,200 |
| **Probation/Pretrial Services** | 8 210 | 905,085 | 8 360 | 992 372 | 108 | 35 794 | 77 | 7,119 | 8,545 | 1 035,285 |
| **Total Judges** | 2,218 | 424,045 | 2 226 | 433 000 | 30 | 13 198 | 6 | 594 | 2,262 | 448,684 |
| **Total Chambers** | 6 237 | 657 517 | 6 291 | 688 000 | 104 | 88 397 | 18 | 1,542 | 6 413 | 777,939 |
| **Total Court Staff** | 21 114 | 2,145 241 | 21,686 | 2 360,698 | 366 | 91 392 | 474 | 39 639 | 22,526 | 2,491,731 |
| **GRAND TOTAL** | **29,569** | **3,226,803** | **30,203** | **3,481,698** | **500** | **192,988** | **498** | **41,775** | **31,201** | **3,718,354** |

[1] Does not include reimbursable positions

**COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES**
**Salaries and Expenses**
**Relation of Obligations to Outlays ($000)**

| | FY 2009 Actual | | FY 2010 Estimate | | FY 2011 Request | | Difference (+) or (-) |
|---|---|---|---|---|---|---|---|
| Total Obligations | 5,043,839 | | 5,510,442 | | 5,746,731 | | 236,290 |
| Obligated balance, start of year | 206,749 | | 258,948 | | 235,852 | | (23,096) |
| Obligated balance, end of year | (258,948) | | (235,852) | | (251,900) | | (16,048) |
| Adjustments in expired accounts | 17,001 | | - | | - | | - |
| **Total Outlays** | **5,008,641** | | **5,533,538** | | **5,730,683** | | **197,146** |
| Less offsets from: | | | | | | | |
| Fee Collections and Other Carryforward | (215,305) | | (335,404) | | (432,165) | | (96,761) |
| Use of JITF No-Year Balances | (9,897) | | (36,093) | | 0 | | 36,093 |
| Vaccine Injury Trust Fund | (4,253) | | (5,428) | | (4,785) | | 643 |
| **Net Outlays** | **4,779,186** | | **5,156,612** | | **5,293,733** | | **137,121** |

## GENERAL STATEMENT AND INFORMATION

Funds appropriated for the Salaries and Expenses account are for the salaries, benefits, and other operating expenses of judges and supporting personnel for the United States courts of appeals, district courts, bankruptcy courts, United States Court of Federal Claims, and United States probation and pretrial services offices. This account makes up 73 percent of the judiciary's total appropriations request, and 76 percent of the *Courts of Appeals, District Courts and Other Judicial Services* request. It supports 2,262 judges, 6,413 chamber staff, and 22,526 court support staff positions located throughout the United States in 802 federal court buildings and facilities.

### Fair and Efficient Judicial Process

The rulings of the federal courts protect the rights and liberties guaranteed by the Constitution. Through fair and impartial judgements, the federal courts interpret and apply the law to resolve disputes. The courts of appeals, district courts, bankruptcy courts, and federal probation and pretrial services offices all work to ensure a fair and independent judicial process

*District Courts*

The district court is responsible for fairly administering justice in civil and criminal cases under federal jurisdiction in 94 judicial districts throughout the United States and its territories. The public benefits from an effective and efficient district court program by having criminal defendants processed through the criminal justice system and by having civil disputes resolved quickly and fairly.

*Appellate Courts*

The 94 judicial districts are organized into 12 regional circuits, each of which has a United States court of appeals. The appellate court is responsible for hearing appeals from the district courts and the bankruptcy appellate panel (if one exists) located within its circuit, as well as appeals from certain federal administrative agencies and, in limited situations, direct appeals from bankruptcy courts. The appellate courts also have original jurisdiction in some categories of cases. A party has the right to appeal every federal case in which a district court enters a final judgement. When an appeal is filed, a court of appeals reviews the decision and record of proceedings in the lower court or administrative agency. The court of appeals either affirms, reverses or may remand the case back to the original court. The court of appeals will issue a written order or opinion in each case. Appeals from the courts of appeals may be taken to the United States Supreme Court. That court, unlike the courts of appeals, can decide which cases it wants to hear. The Supreme Court can remand cases to the court of appeals or decide to affirm or reverse the court of appeals.

*Bankruptcy Courts*

Through the bankruptcy courts, the legal system protects business and individual debtors, as well as their creditors, as intended by law. The bankruptcy court is responsible for providing a legal process for dealing with the debt problems of individuals and businesses through cases filed under one of the chapters of Title 11 of the United States Code, which sets the bankruptcy laws. Giving debtors the ability to construct a plan for repaying creditors, or a "fresh start," as appropriate under the law, is a key purpose of the bankruptcy code.

*Probation and Pretrial Services*

The federal probation and pretrial services system assists the federal courts in the fair administration of justice. Probation and pretrial services officers provide the courts with verified, objective pretrial services and presentence reports. The courts rely on those reports to make release and sentencing decisions and to provide the parties with notice of all relevant release and sentencing issues. The presentence reports are also used by the U.S. Attorneys Offices to locate assets to be seized in relation to any fines, restitution, or assessments ordered, while the Federal Bureau of Prisons relies on the presentence reports to guide its handling of defendants sentenced to incarceration.

**Community Safety**

To protect the community, federal probation and pretrial services officers supervise federal defendants and offenders conditionally released to the community on pretrial services supervision, probation, supervised release, and parole. Officers monitor compliance with conditions as required by statute and court order. They have frequent face-to-face contact with persons under supervision, and conduct unannounced home, employment, and community inspections. During these contacts, officers may seize any contraband in plain view and, with the permission of the court, conduct searches as needed. In cases where the supervision process exposes evidence of recidivism or the defendant/offender engaging in risky behavior (e.g., associating with known felons) the officer acts quickly and preemptively by working with the court to fashion a new judicial order that is both corrective and punitive.

To provide the community with the ultimate protection from recidivism, officers encourage positive, long-term change in persons under supervision. Officers provide or arrange for life skills training, substance abuse testing and treatment, mental health treatment, and other needed services for persons under supervision. They also help supervisees to find and maintain gainful employment, pay their debts, and support their dependents. Officers often are successful in bringing about positive change because they can offer significant incentives. Noncompliant behavior can be punished by possible incarceration, while positive behavior can be rewarded with revised conditions of supervision, early termination, and even letters of recommendation to state agencies who adjudicate collateral consequences to a criminal conviction.

**Outcome Measurement Programs**

The federal probation and pretrial services system is committed to measuring and acting on outcomes, with a key outcome reducing recidivism among persons currently and formerly supervised by probation officers. Individual districts have partnered with local universities to study special in-district programs, while the judiciary as a whole has developed the capacity for systemic and long-term studies.

The challenge to all criminal justice researchers is the absence of a single, uniform source for arrest and disposition data, and the varied format and content of the incomplete information that is available. Local and state jurisdictions collect, report and share criminal justice data differently. To overcome this problem, at least to the degree possible, the judiciary has created an automated program that collects arrest and disposition data from multiple sources and interprets the results

despite the variation in format and content of the underlying records. The judiciary also has its probation and pretrial services officers using a single case management system which allows for the collection of comprehensive data from all 94 districts. As a result, researchers are beginning to study on a larger scale than ever before the relationship between recidivism rates and probation officers case strategies and interventions.

**Location Monitoring Program**

Courts often impose location restrictions on defendants and offenders as part of pretrial and post-conviction supervision terms. Probation and pretrial services officers use a combination of new technologies and traditional supervision work to verify defendants and offenders' compliance with such conditions. Some of these new technologies include voice verification systems, radio frequency monitoring devices and global positioning systems.

The voice verification system is an automated system that intermittently places calls to the supervisee's "land line" phones (usually at his or her residence). The supervisee's verbal response to the call is compared to that pre-recorded in the system to confirm that it is the supervisee who answered the phone and is at the approved location. The voice verification system is usually used in low-risk cases where the supervisee is serving a period of home detention or curfew.

A radio frequency (RF) device and related system verifies the presence of a defendant/offender at an unauthorized location using a transmitter and receiver. This technology is ideal for continuous curfew monitoring in the home. Approximately 6,500 defendants/offenders are currently monitored via RF technology.

The global positioning system (GPS) uses satellites and triangulation to monitor a defender/offender's location in the community. GPS is usually reserved for higher-risk cases that involve prohibitions on travel to certain locations (e.g., schools, high crime areas, home of victims or witnesses) or that require the supervisee to be at specific locations outside the home at a specific time (e.g., place of employment or drug treatment). There are two types of GPS units: active and passive. The active GPS unit monitors a supervisee's movement and immediately relays the information to the probation/pretrial services office. The passive GPS unit monitors the supervisee's movement and records it for later download by the probation/pretrial service office. Approximately 1,200 defendants/offenders are currently monitored via GPS technology.

**Legislative and Administrative Changes**

The increased role of legislative and administrative changes also influences workload. Each statutory and sentencing guideline change generates a new line of interpretive case law and *ex post facto*[1] issues that must be researched and understood by officers as part of their pretrial and presentence duties. Prior to 1984, there were few significant changes in the law pertaining to federal sentencing. However, following enactment of the Comprehensive Crime Control Act of 1984, which revamped federal pretrial release and sentencing, there

[1] A law that retroactively changes the legal consequences of acts committed or the legal status of facts and relationships that existed prior to enactment of the law.

have been more than 15 significant legislative modifications. For example, in recent years, legislation related to the prosecution, detention, sentencing, and supervision of sexual offenders (e.g., "PROTECT Act," "Adam Walsh Child Protection and Safety Act," "KIDS Act of 2008") has placed new responsibilities on probation and pretrial services officers. In addition to the statutory changes, the U.S. Sentencing Guidelines Manual, which went into effect in 1987, has been amended 737 times. Some of the more recent changes are crack retroactivity and requirements of the Second Chance Act.

**Staffing in the Probation and Pretrial Services Offices**

During fiscal year 2009, probation and pretrial services offices staffing levels increased by a net 89 FTE over the end-of-year fiscal year 2008 level. Of these 89 additional FTE, a total of 79 FTE were in the Southwest Border courts. The judiciary seeks funding for 154 additional staff in probation and pretrial services offices (77 FTE) to support projected workload requirements for fiscal year 2011.

**Immigration Enforcement**

Immigration enforcement impacts the district courts, appellate courts, and probation and pretrial services offices.

<u>District Courts</u>
Immigration enforcement cases continue to increase as a result of the increased immigration enforcement initiatives. Immigration cases are now the single largest criminal filing category in the federal courts, increasing 22 percent in the last year from 20,210 filings for the one-year period ending June 30, 2008, to 24,694 filings for the one-year period ending June 30, 2009. Immigration cases exceeded the number of drug prosecutions for the second consecutive year. Although the bulk of these immigration cases are in the five federal judicial districts along the Southwest Border with Mexico, 27 percent of all immigration cases were in the non-border district courts, and those non-border districts showed a 14 percent increase from 2008 to 2009, as immigration enforcement resources have been deployed throughout the country. In fiscal year 2009, the five southwest border districts (Arizona, California-Southern, New Mexico, Texas-Southern, and Texas-Western) accounted for 73 percent of all immigration cases. The processing of these criminal defendants requires the courts to defer action on civil cases and use all of the court's available resources to process the criminal workload. The criminal justice focus along the Southwest Border requires the judges and staff from other districts to assist with the courts' dockets. In most instances, there is a need for court interpreter support at every stage of the criminal case process. It is expected that immigration enforcement will continue to expand along the Southwest border as well as in other parts of the country.

In fiscal year 2009, the Department of Homeland Security (DHS) had approximately 17,400 agents patrolling the Southwest Border area. In fiscal year 2010, another 308 staff will be assigned to expand enforcement and intelligence activities to control the southwest border. The Department of Justice's (DOJ) also received increased resources to address the workload. Congress provided DOJ with an additional 110 attorneys and 462 federal law enforcement agents (352 U.S. Marshals Service agents, 70 Drug Enforcement Administration agents, 34 Alcohol Tobacco and Firearms agents, and 6 Federal Bureau of Investigation agents) in fiscal year 2010. According to DOJ, the Southwest Border area is one of the principal areas for human trafficking, gun running, gang threats and illicit drugs smuggled into the United States.

As enforcement efforts increase, there will be a corresponding increase in the number of cases filed. The U.S. attorneys are increasing their efforts to combat violations of immigration law revealed by increased law enforcement efforts and prosecute additional caseload brought on by aggressive enforcement of the immigration statutes — including prosecution of aliens who, after deportation, attempt to reenter or are found in the United States illegally, and those involved in terrorism and violent crimes. DHS is also adding staff in the enforcement and detention areas, thus, increasing apprehensions, which lead to more case filings.

The district courts situated along the border with Mexico have experienced a steady increase in criminal workload since the late 1990's. This workload is likely to continue with Executive Branch Southwest Border immigration enforcement initiatives continuing to be implemented. For instance, Operation Stonegarden, initiated by DHS, provided an additional $60 million in grants for 13 border states in fiscal year 2009 to enhance the capabilities of federal, state and local law enforcement agencies to jointly secure U.S. borders.

Appeals Courts

Immigration cases in the courts of appeals, generally from denials of relief from asylum, are adjudicated through the federal immigration courts and the Board of Immigration Appeals (BIA) at DOJ. The number of BIA completions appealed to the federal courts has grown from 1,777 in 2001 to 8,389 in 2009 (an increase of 372 percent). While the filings have begun to drop from their peak in 2006, these cases continue to demand extensive resources and are a far greater share of total caseload in recent years. Terminations of these appeals have not kept up with filings, resulting in pending BIA appeals increasing from 1,478 in 2001 to 11,412 in 2009 (an increase of 672 percent). The cumulative effect of these filing increases has impacted both the judges and staff in the courts of appeals. Courts have revised case-review processes to accommodate the volume of petitions for review from the BIA. These cases often require *de novo*[2] review of complex agency records and require additional time for judges and staff. The courts have had to develop greater expertise in this area and some courts have created immigration specialists. These cases require clerks' offices to handle a large number of records from DOJ and process numerous motions per case. Appellate staff has increased over the past several years to handle this increased workload.

Probation and Pretrial Services

The volume of work for probation and pretrial services is dictated by prosecutions brought by U.S. Attorneys Offices and the number of inmates released by the Federal Bureau of Prisons (BOP). Of the 99,098 defendants activated by pretrial services in June 2009, half were non-citizens of the United States or their citizenship could not be determined. Coupled with the volume of work related to immigration is the increase in complexity. A significant challenge for the probation and pretrial services system is the weakening tie to the community of defendants and offenders as more prosecutions involve

[2] An appeal in which the appellate court uses the trial court's record but reviews the evidence and law without deference to the trial court's rulings.

illegal or temporary aliens, who often have limited involvement with mainstream elements in society. Alien status clearly complicates the pretrial service officer's ability to find less costly, non-custodial options that will allow for the defendant's pretrial release. The overall pretrial detention rate in June 2009 was 53 percent when immigration-related cases are not included. The detention rate increases to 65 percent when immigration cases are included. A related problem with immigration cases is the necessity to coordinate interviews with court-certified interpreters.

For various reasons, not all aliens are deported upon being convicted of a federal crime. In fact, more than 6,665 offenders currently under active post-conviction supervision are listed as non-citizens of the United States. This includes confirmed "illegal aliens" and others whose immigration status is still being litigated. In many instances, as immigration authorities process their immigration or amnesty applications, alien-offenders remain in a legal limbo with no authority to secure employment or enroll in school. This places the probation officer in a situation where the conditions of supervision, which require gainful employment or pursuit of education, are at odds with immigration rules. Officers struggle to minimize the opportunities for recidivism while trying to stabilize offenders' living situations pending final action by immigration authorities.

## Bankruptcy Courts

Bankruptcy filings have increased greatly over the past two years. Nationwide, the increase in filings was 35 percent in fiscal year 2009 over fiscal year 2008. This was on top of a 30 percent increase between fiscal year 2007 and fiscal year 2008. Case filings are projected to continue to increase rapidly through 2010 and 2011. Since bankruptcy is a trailing indicator, even as the economy begins to turn around, filings are expected to continue rising for some time.

### *Chapter 11 Bankruptcy Cases*

Filings under chapter 11 of the Bankruptcy Code offer the opportunity to reorganize businesses rather than liquidate them. In chapter 11 cases, bankruptcy courts are directly involved in business reorganization plans and focus on the goal of achieving a benefit for all interested parties. Bankruptcy filings increased 91 percent for the 12 months ending June 30, 2009. The bankruptcy courts are expected to handle about 14,900 chapter 11 cases during the 12 months ending June 2010, an increase of more than 7 percent over the previous year.

### *Chapter 7 Bankruptcy Cases*

Chapter 7 of the Bankruptcy Code provides an avenue for discharging certain debts to give an individual debtor a "fresh start," leaving no liability for discharged debts. "Consumer" bankruptcy petitions are driven by life crises including job loss, large medical bills, divorce, and natural disasters. The bankruptcy courts are expected to handle approximately

1,125,300 chapter 7 cases during the 12 months ending June 2010, an increase of more than 24 percent over the previous year.

While one of the purposes of chapter 7 is to provide for a discharge of debts, individual debtors must qualify for relief under chapter 7 through a "means" test. If the debtor's "current monthly income" is more than the state median, the Bankruptcy Code requires application of the "means test" to determine whether the chapter 7 filing is presumptively abusive. If so, the case can be dismissed or converted to chapter 13 where the filer does have to repay debt.

*Chapter 13 Bankruptcy Cases*

Chapter 13 of the Bankruptcy Code assists individual debtors who have regular income in seeking to adjust their debts within a repayment plan. Under such a plan debtors can save their homes from foreclosure by allowing them to "catch up" past due payments. The bankruptcy courts are expected to handle more than 429,000 chapter 13 cases during the 12 months ending June 2010, an increase of 12 percent over the prior year.

**Staffing in the Bankruptcy Courts**

During fiscal year 2009, the staffing levels in the bankruptcy clerk's offices increased by a net 328 staff (164 FTE) over end-of-year fiscal year 2008 levels. These additional resources helped bankruptcy courts process a 35 percent increase in filings for the period of June 2008 to June 2009. Projected bankruptcy filings for fiscal year 2010 represent a 62 percent increase over 2008 levels, and are expected to reach 1.57 million by June 2010. These caseload forecasts are approaching historical filing levels realized before the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) was implemented. Total petition filings are expected to increase another 25 percent by fiscal year 2011, and if that happens they will have rebounded to their pre-BAPCPA level nationally. In a number of districts, filings are already above pre-BAPCPA levels.

A work measurement study to evaluate the staffing needs of bankruptcy clerks' offices was completed in 2008. Among other things, the work measurement study confirmed the impact of implementing BAPCPA on case processing requirements. BAPCPA added substantial work for a variety of new or expanded tasks, such as those related to review of additional petition documents; more extensive quality control review and appropriate follow-up; an increased number of motions and hearings; new procedures, such as those associated with rent deposits and tax return filings; and the increased numbers of *in forma pauperis*[3] and *pro se*[4] petitions. The impact of BAPCPA on court operations, the post-BAPCPA rebound in filings, and the likelihood of further increases in filings, indicate a need for additional resources. The judiciary seeks funding for 636 additional staff in bankruptcy courts (318 FTE) to support projected workload requirements for fiscal year 2011.

[3] A court grants this petition to a person for waiver of the normal costs and/or appointment of counsel in a lawsuit or criminal case.

[4] Cases filed by debtors without the assistance of attorneys

### Staffing in the District Courts

During fiscal year 2009, district court staffing levels for support staff increased by a net 87 FTE over the end-of-year fiscal year 2008 levels. This increase in staffing allowed the district courts to process an increase in criminal felony defendants, especially along the Southwest Border, and to process *pro se* civil filings. Staffing levels in the district courts also allowed for the processing of civil actions which are vital to resolving personal and economic disputes. Without sufficient resources, district courts would have to focus more on criminal matters and delay the processing and resolution of civil cases, which could have an impact on the economy in general. Because the district courts are trial courts, adequate staffing resources for court interpreters and court reporters were provided in fiscal year 2009, and there is a need to continue to provide these resources for the prompt resolution of criminal and civil matters that must be presented in a courtroom.

A new staffing formula for district clerks' offices and *pro se* law clerks was implemented in fiscal year 2010. The judiciary continues to refresh its staffing and funding formulas as part of its cost containment efforts. The new *pro se* law clerk formula replaces a formula that was approved prior to the Prison Litigation Reform Act. *Pro se* law clerks provide assistance to the judges in the processing of *pro se* cases and to the *pro se* litigants who usually do not understand the legal process. Members of the bar, litigants, and the general public rely on district clerks' offices and *pro se* law clerks for assistance. The judiciary seeks funding for 164 additional staff in district courts (82 FTE) to support projected workload requirements for fiscal year 2011.

### Efforts to Contain Costs in the Courts and Limit Appropriation Requirements

The judiciary takes seriously its role as steward of the taxpayers' money. Congress and the American people can depend on the federal judiciary to do its part to operate as efficiently and effectively as possible. Programs and business practices within the judiciary are continually reviewed to identify areas where economies and efficiencies can be achieved. An acute sense of cost consciousness at all levels of judiciary management and policy making exists to ensure that each dollar is spent prudently It is estimated that the judiciary-wide cost containment initiatives will save or avoid hundreds of millions of dollars in costs over the next decade.

The Judicial Conference continues to build on its cost containment strategy that was adopted in September 2004. Since its adoption, the judiciary has successfully implemented many programs to contain costs in the courts, such as (1) controlling space costs, (2) aggregating information technology servers, (3) shaping a more focused, cost-efficient court support staff thorough work measurement formulas and process redesign, (4) evaluating and revising compensation policies, (5) sharing administrative functions, and possibly other functions and space, in the courts, and (6) initiating the development of a Criminal Justice Act electronic vouchering system. The judiciary remains committed to developing additional initiatives to continue to slow the growth in its budget requirements.

*Space and Facilities Program and Initiatives*

The judiciary's space and facilities requirements include rental payments to the General Services Administration (GSA) for

federally owned and leased space, utilities which exceed the basic levels provided by GSA (e.g., when holding court after normal business hours), alterations of space, payments to private lessors for space and parking, relocation of court property for moves to new courthouses, and sound systems. The funding requested ensures adequate facilities are provided to judges, judges' staffs, probation and pretrial services officers, clerks' office staffs, and other court personnel.

The requirements of the judiciary's space and facilities program arise from many needs, including changes in caseload and staffing levels, advances in technology and deteriorating building conditions. Currently, court units occupy 821 locations nationwide and changing security and operational requirements pose increased challenges for the space and facilities program. However, past and anticipated funding constraints on the judiciary have resulted in the need to re-examine all costs and to curtail significantly the judiciary's spending in the area of space.

In fiscal year 2010, the judiciary's space rental bill is approximately $1.0 billion, representing roughly 19 percent of the judiciary's total Salaries and Expenses financial plan. While a moratorium on new construction imposed by the Judicial Conference in September 2004 ended in September 2006, the Judicial Conference endorsed the implementation of additional measures to limit space growth at its September 2006 session. These measures involved the setting of rent budget caps, revising the *U.S. Courts Design Guide*, validating rent, and implementing an asset management planning process.

*Controlling Rent Costs*

Rent Budget Caps

At its September 2006 session, the Judicial Conference established an annual budget cap for GSA space rental costs for fiscal years 2009 through 2016. The amount of the cap limits rent increases to an average of 4.9 percent per year. At its September 2007 session, the Judicial Conference approved the establishment of circuit-level rent budgets to decentralize decision-making and slow long-term growth in rent. An initial trial of the program was put in place during fiscal year 2008, and a nationwide rent program was implemented in fiscal year 2009. This initiative constitutes a dramatic change in the Judiciary's management of space and rent costs and its implementation has affected all of our space acquisition work processes.

Courtroom Usage Study

Based on a courtroom usage study performed from 2005 to 2008, the Judicial Conference adopted a courtroom sharing policy for new courthouses and courtroom construction to be included in the *Design Guide*. For senior judges, the policy provides one courtroom for every two judges. For magistrate judges, the policy provides one courtroom for every two judges, with exceptions designed to ensure that judges have adequate access to courtrooms for arraignments and other criminal case proceedings. In addition, the Judicial Conference has authorized a study of courtroom use in bankruptcy courts. This study is expected to be completed in December 2010.

Asset Management Planning

In 2004, the Judicial Conference approved a cost containment initiative that required a re-evaluation of the long-range facilities planning process. Over the past several years, the judiciary has developed a revised planning methodology termed asset management planning (AMP). The AMP incorporates cost containment into the facility planning process The Judicial Conference approved the concept of AMP in March 2006. It is a comprehensive approach to facilities planning that integrates costs, space needs and functionality. It goes beyond the identification of a need for court space by accounting for the financial impact of space projects on the judiciary's rent budget. Incorporating this information at the planning stage will assist the judiciary in identifying the most cost-effective strategy for meeting the courts' operational needs, while controlling costs, especially rent paid to GSA. Staff is currently in the process of performing site visits to review and assess the current space holdings and future space needs.

Training Programs

A National Space and Facilities Training program has been developed to help courts implement cost containment initiatives and manage their space. Developed in cooperation with ten court managers and training experts in the Federal Judicial Center, specific training needs were identified in five areas: circuit rent budgets, courtroom technology and communications, asset management planning, rent validation, and space and facilities planning. Court officials from the 2nd Circuit participated in a pilot of the training program in September 2009. There are plans to provide this training to each of the circuits in fiscal year 2010.

*Information Technology Service-Delivery Alternatives*

The judiciary leverages the use of information technology (IT) to automate business processes and maximize efficiency. For example, the judiciary's Case Management/Electronic Case Files (CM/ECF) system automated the paper intensive case filing process. The judiciary's CM/ECF system is operational in appellate, bankruptcy, and district courts, the Court of International Trade and the Court of Federal Claims. This benefits not only the judiciary, but also the bar, public, and other government agencies that now have greater access to court information. The judiciary anticipates long-term efficiencies will be achieved as a result of the CM/ECF implementation. Consolidation efforts to reduce the number of computer servers nationwide have resulted in savings and cost avoidances, while enhancing performance levels in some instances.

The bankruptcy courts continue to lead the way in the judiciary in making the best use of electronic filing Nationally, bankruptcy courts process virtually all of their cases electronically. In addition, the courts have been enhancing efficiency through a combination of local management initiatives and court-developed automation innovations. For years, the bankruptcy clerks have been adopting new management techniques, developing and sharing best practices, and using the flexibility provided under budget decentralization to invest in automation solutions that save resources as well as improve quality and performance.

The judiciary continues its efforts to identify and implement more cost-effective service-delivery models for national IT program applications. Before this initiative, the service delivery model provided court units with local servers to run each system as national IT systems were deployed. Local court staff were given responsibility for technical and administrative

work associated with maintaining these systems, performing tasks such as backing up the systems and troubleshooting Improvements in the national data communications network have allowed the consolidation of servers without compromising the performance levels of existing applications and enhancing it in some instances. Consolidation efforts to reduce the number of computer servers nationwide will result in savings and cost avoidances totaling $64.8 million through fiscal year 2012.

The next phase of this multi-year effort will involve upgrades and enhancement of the data communications network (DCN) with a focus on converged services (combining voice, video, and data traffic over a single, secure network) that is expected to result in improved services and additional cost avoidance to be realized.

*Process Redesign and Methods Analysis Programs*

To help ensure that courts are aware of the best case management practices used by their colleagues, particularly as they relate to opportunities generated through electronic case filing, the judiciary is updating its Methods Analysis Program. This program focuses on identifying and disseminating better and/or alternative practices for case management and court operations.

To date, practices in bankruptcy and district clerks' operations have been developed and will be available to the courts to improve case processing and court work practices. In addition, various groups involving court personnel have been formed to bring court staff together to identify issues and exchange ideas for solutions.

*Records Management*

As part of its cost containment efforts, the Administrative Office has identified approximately 79,000 boxes of judiciary records in storage at the National Archives and Records Administration's (NARA) Federal Records Centers that are past their transfer or destruction date. The Administrative Office is actively working with the courts and NARA to get these boxes transferred or destroyed. The judiciary is also working with NARA to establish new retention policies to reduce retention times from 25 years to 10 to 15 years. When completed, the judiciary will realize cost savings in annual storage costs.

*Criminal Justice Act (CJA) Electronic Vouchering (E-Vouchering) System*

The judiciary is working toward implementing a CJA e-vouchering system to replace the current paper-based system. The current voucher review and payment system is very time and resource intensive for judges, court personnel, and CJA panel attorneys. The judiciary anticipates that moving to a paperless system will streamline the review process, improve efficiency and oversight by providing basic automatic checks and balances for claim, and, over time, reduce judiciary personnel costs At this time, design of this system is underway, with the initial rollout scheduled for fiscal year 2012.

*Court Interpreting*

The Telephone Interpreting Program (TIP) was established to provide remote interpretation in those situations where certified or otherwise qualified interpreters are not locally available. The program provides simultaneous interpretation for short proceedings, such as pretrial hearings, initial appearances, arraignments, and probation and pretrial services interviews. In fiscal year 2009, TIP was used in nearly 3,740 events in 43 languages. Staff interpreters handled 75 percent of all TIP events, including 81 percent of all events requiring Spanish, and the remainder of events were handled by contract

interpreters. The total estimated savings by telephone interpreting in fiscal year 2009 was over $1.1 million. It is estimated that $7.8 million has been saved in travel and contract costs as a result of the TIP program from fiscal year 2001 through fiscal year 2009.

**Workload Trends in the Courts**

The judiciary's workload is in large part generated by forces outside of its control, and the workload in some programs continues to remain at or near record high levels.

The funding request for court support staff is based on the previous year's projected caseload or, as in the case of the bankruptcy clerks program, a weighted average of two prior years' data. Thus, court support staffing requirements for fiscal year 2011 are based on projections for caseload through June 30, 2010. Table 5.1 on page 5.23 displays these caseload factors for each of the 12-month periods ending June 30, 2004 through June 30, 2010 (projected).

**Table 5.1 Comparison of Judiciary Workload Factors**

| WORKLOAD FACTOR | 12 months ending June 30, 2004 Actual | 12 months ending June 30, 2005 Actual | 12 months ending June 30, 2006 Actual | 12 months ending June 30, 2007 Actual | 12 months ending June 30, 2008 Actual | 12 months ending June 30, 2009 Actual | 12 months ending June 30, 2010 Projected |
|---|---|---|---|---|---|---|---|
| Criminal Filings | 71,098 | 69,876 | 67,872 | 66,674 | 70,024 | 74,903 | 77,300 |
| Year-to-Year Change: | 0% | -2% | -3% | -2% | 5% | 7% | 3% |
| Criminal Defendants Filed | 93,377 | 92,356 | 89,956 | 88,245 | 91,782 | 96,273 | 96,400 |
| Year-to-Year Change: | 0% | -1% | -3% | -2% | 4% | 5% | 0% |
| Probation: Persons Under Supervision | 113,362 | 113,008 | 114,281 | 115,930 | 120,051 | 123,839 | 127,000 |
| Year-to-Year Change: | 0% | 0% | 1% | 1% | 4% | 3% | 3% |
| Pretrial Services: Cases Activated | 99,866 | 98,946 | 99,508 | 95,955 | 98,862 | 103,610 | 105,400 |
| Year-to-Year Change: | 0% | -1% | 1% | -4% | 3% | 5% | 2% |
| Bankruptcy Filings | 1,635,725 | 1,637,254 | 1,484,570 | 751,056 | 967,831 | 1,306,315 | 1,570,000 |
| Year-to-Year Change: | 0% | 0% | -9% | -49% | 29% | 35% | 20% |
| Appellate Filings | 61,526 | 67,999 | 68,313 | 58,809 | 59,406 | 59,399 | 56,700 |
| Year-to-Year Change: | 0% | 11% | 0% | -14% | 1% | 0% | -5% |
| Civil Filings | 258,117 | 282,758 | 244,343 | 272,067 | 256,354 | 257,204 | 273,400 |
| Year-to-Year Change: | 0% | 10% | -14% | 11% | -6% | 0% | 6% |

**Fiscal Year 2011 Request**

The appropriation request for the Salaries and Expenses account totals $5,314,566,000 for fiscal year 2011, including $4,785,000 for the Vaccine Injury Trust Fund. This is a 5.9 percent increase over the fiscal year 2010 enacted appropriation of $5,016,446,000.

In addition to appropriated funds, the Salaries and Expenses account utilizes other funding sources (excluding slippage) to offset its appropriation requirements, including current year fee collections, carryover of fee balances from the prior year, and no-year appropriation balances. The judiciary projects that these sources of non-appropriated funds will total $432.2 million in fiscal year 2011, $18.1 million less than the $450.3 million utilized in the fiscal year 2010 obligation level.

**Justification of Changes**

The changes requested in the fiscal year 2011 budget request are divided into two sections: adjustments to base increases and program increases.

Adjustments to base, totaling $230.5 million (77 percent of the requested increase) are for:

- increases in personnel costs ($116.0 million);
- General Services Administration (GSA) rent and related costs ($36.7 million);
- increases in filled Article III judgeships ($4.0 million);
- financing adjustments to replace non-appropriated sources of funds with appropriated funds ($18.1 million);
- annualization of 360 new staff expected to be hired in fiscal year 2010 ($29.1 million);

- information technology-related adjustments ($3.5 million); and
- other must-pay operations and maintenance costs ($23.1 million).

Program increases totaling $67.6 million (23 percent of the requested increase) are for:

- 6 new magistrate judges and associated staff ($3.0 million);
- court support staff associated with anticipated additional case filings ($39.7 million); and
- information technology telecommunication infrastructure enhancements ($25.0 million).

**ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES**

**Requested Increase: $230,480,000**

The following provides information and justification for each of the adjustments to base for the Salaries and Expenses account. This section is divided into three subsections: judges, court personnel and programs, and other adjustments. Each line item is identified in this section by a number that corresponds to the line items in the Fiscal Year 2011 Resource Requirements section on pages 5.3 through 5.4.

## A. JUDGES

### *1. Pay and benefit cost adjustments*

#### a. Proposed January 2011 pay adjustment

**Requested Increase: $4,547,000**

The Office of Management and Budget is projecting that the Employment Cost Index (ECI) will increase by an average of 1.4 percent beginning on or after January 1, 2011. The requested increase provides for the cost of nine months of the anticipated ECI increase for judges in fiscal year 2011.

Table 5.2 Salaries of U.S. Judges

| | 2010 | 2011* |
|---|---|---|
| Article III Judges | | |
| Court of Appeals | 184,500 | 187,100 |
| District Court | 174,000 | 176,400 |
| Article I Judges | | |
| U.S. Court of Federal Claims | 174,000 | 176,400 |
| Other Judicial Officers | | |
| Bankruptcy Judges | 160,080 | 162,321 |
| Magistrate Judges | 160,080 | 162,321 |

*Reflects an assumed 1.4% ECI increase in January 2011.

The Ethics Reform Act of 1989 as amended, includes a formula which provides that for 2011, Federal Judges (the Vice President, Members and Executive level employees) are eligible to receive up to a 1.4 percent Employment Cost Index (ECI) pay adjustment effective January 2011. The ECI is published quarterly by the Bureau of Labor Statistics, and it measures quarterly changes in wages and benefits.

Under the Ethics Reform Act, the Judges' (the Vice President's, Members' and Executive level employees') annual ECI pay adjustment cannot exceed (but may be lower than) the General Schedule civilian employees' ECI across-the-board pay adjustment. The President's 2011 budget request includes a 1.4 percent pay adjustment for civilian employees. Consequently the judiciary's 2011 budget request includes a 1.4 percent judges ECI.

For estimating fiscal year 2011 requirements, first the amount of the civilian pay adjustment is determined, which happens automatically and would be 1.4 percent unless the Congress chooses to deviate from the amount included in the President's budget. The President must next decide how to divide the total pay adjustment for General Schedule employees between an ECI across-the-board pay adjustment and a locality-based pay increase. The President usually makes this decision in December, and it is not until then that we will actually know the amount of the judges' (the Vice President's, Members' and Executive level employees') annual ECI pay adjustment. The judiciary will continually update the fiscal year 2011 request based on the latest COLA/ECI pay estimates.

**b. Benefit increases**

**Requested Increase: $2,336,000**

The requested amount includes $1.4 million to cover premium rate increases in Federal Employee Group Life Insurance (FEGLI) for qualified judges with Option B life insurance coverage (additional coverage above the basic FEGLI coverage) pursuant to 28 U.S.C. §604(a)(5).

An increase of $0.9 million in health benefit payments is required based on the Office of Personnel Management estimates that health benefit premium contributions will increase by 7.0 percent in January 2011. The requested increase annualizes the 2010 premium increase, and includes a nine-month provision for the anticipated fiscal year 2011 premium increase.

***2. Senior judges***

**Requested Increase: $13,029,000** **FTE: 108**

Funding is requested in fiscal year 2011 for an additional 25 judges expected to take senior status. This request also funds associated chambers staff (83 FTE) to assist these judges. The request includes $4.9 million for the salaries and benefits of judges, $6.6 million for the salaries and benefits of supporting staff, and about $1.5 million for supporting costs such as lawbooks, furniture, travel, supplies, and equipment.

Table 5.3 Senior Judges and Supporting Personnel

| | Additional FTE | Salaries and Benefits ($000) | Operations and Maintenance | Total ($000) |
|---|---|---|---|---|
| Judges Taking Senior Status (Staff Included) | 108 | 11,490 | 1,539 | 13,029 |

Under 28 U.S.C., an Article III judge has three options when leaving active service. Section 371(a) allows the judge to retire from office and receive an annuity for life equal to the salary in effect at the date of retirement. Section 372(a) allows the judge to retire on disability grounds, and provides that the judge receives the salary of the office for life after serving 10 years. Section 371(b) allows the judge to take senior status and to retain the office, but retire from regular active service. Senior status allows the judges to continue rendering substantial judicial service for a number of years, notwithstanding his or her retirement.

Table 5.4 Article III Senior and Retired Judgeship FTEs

| Fiscal Year | Avg. Senior, Disability, or Retired* |
|---|---|
| 1993 | 389 |
| 1994 | 405 |
| 1995 | 426 |
| 1996 | 435 |
| 1997 | 469 |
| 1998 | 481 |
| 1999 | 485 |
| 2000 | 490 |
| 2001 | 509 |
| 2002 | 514 |
| 2003 | 507 |
| 2004 | 515 |
| 2005 | 517 |
| 2006 | 524 |
| 2007 | 535 |
| 2008 | 532 |
| 2009 | 558 |
| Estimates | |
| 2010 | 576 |
| 2011 | 601 |

*Pursuant to 28 U.S.C 371(a), 371(b), 372(a), and 373

At the end of fiscal year 2009, 53 judges became eligible to retire; 45 more judges will become eligible in fiscal year 2010; and 48 in fiscal year 2011, for a total of 146 potential retirees. Of the 48 judges eligible to retire in fiscal year 2011, the judiciary estimates that 45 judges will either take senior status or retire, resulting in a net increase of 25 FTE over the 576 FTE funded in fiscal year 2010.

Of this increase, 40 of the 45 are expected to be attributed to judges taking senior status who will continue to render substantial judicial service and thereby will retain some, if not all, of their present staff. Based on current information, the judiciary estimates that the judicial councils of the circuits will authorize staffing to support senior judges using the following average staffing factors: 1.5 and 1.3 law clerks for appellate and district judges, respectively; 0.9 and 0.7 secretaries for appellate and district judges, respectively; and 1.0 court reporter for each district judge.

***3. Increase in average number of filled Article III judgeships***

**Requested Increase: $4,024,000 FTE: 32**

The fiscal year 2010 financial plan funds 755 FTE for the 845 authorized Article III appellate and district judges. Based on historical confirmation patterns, the judiciary projects 42 judges will be confirmed during fiscal year 2011, offset by the number of active judges who take senior status or retire. Thus, the judiciary anticipates the average number of filled Article III judgeships will increase by 5 FTE above the fiscal year 2010 funded levels.

This request will also fund 11 law clerks, 6 courtroom deputies, 6 secretaries and 4 court reporters associated with the 5 FTE increase in judges. This line item includes $1.0 million for the salaries and benefits of judges, $2.0

million for the salaries and benefits of supporting staff, $0.3 million for technical base adjustments and $0.7 million for supporting costs such as lawbooks, furniture, travel, supplies, and equipment.

Table 5.5 Active Article III Judgeship Vacancies

| Fiscal Year | Authorized Article III Judgeships | Average Vacancies | Avg. Number of Active Judges |
|---|---|---|---|
| 1995 | 816 | 63 | 753 |
| 1996 | 814 | 58 | 756 |
| 1997 | 814 | 90 | 724 |
| 1998 | 813 | 83 | 730 |
| 1999 | 813 | 66 | 747 |
| 2000 | 822 | 73 | 749 |
| 2001 | 832 | 94 | 738 |
| 2002 | 832 | 101 | 731 |
| 2003 | 847 | 71 | 776 |
| 2004 | 846 | 41 | 805 |
| 2005 | 845 | 41 | 804 |
| 2006 | 845 | 50 | 795 |
| 2007 | 845 | 50 | 795 |
| 2008 | 845 | 47 | 798 |
| 2009 | 845 | 68 | 777 |
| Estimates | | | |
| 2010 | 845 | 90 | 755 |
| 2011 | 845 | 85 | 760 |

**4.** ***Non-recurring costs associated with filled fiscal year 2010 judges (Article III and Magistrate judges)***

**Requested Decrease: ($874,000)**

This line item non-recurs the one-time costs such as set-up costs for telephones, lawbooks, furnishings, courtrooms, and digital recorders associated with new judges in fiscal year 2010.

Table 5.6 Summary of Judicial Officers

| | Article III & Bankruptcy Judges (Mandatory Costs) | | | | | | Claims & Magistrate Judges | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | FY 2010 | | | FY 2011 | | | FY 2010 | | | FY 2011 | | |
| | Authorized Positions | FTE | ($000) | Authorized Positions | FTE | ($000) | Authorized Positions | FTE | ($000) | Authorized Positions | FTE | ($000) |
| Appellate Judgeships | 167 | 148 | 30,156 | 167 | 149 | 30,661 | | | | | | |
| District Judgeships | 678 | 607 | 117,177 | 678 | 611 | 119,079 | | | | | | |
| Senior/Retired | | 576 | 113,990 | | 601 | 118,819 | | | | | | |
| Bankruptcy Judgeships[1] | 352 | 338 | 63,961 | 352 | 338 | 64,007 | | | | | | |
| U.S. Court of Federal Claims | | | | | | | 16 | 16 | 3,392 | 16 | 16 | 3,431 |
| Magistrate Judgeships[2] | | | | | | | 517 | 541 | 104,325 | 523 | 547 | 106,994 |
| Total | 1,197 | 1,669 | 325,284 | 1,197 | 1,699 | 332,565 | 533 | 557 | 107,716 | 539 | 563 | 110,425 |

[1]FTE include recalled bankruptcy judges.
[2]FTE include part-time and recalled magistrate judges

Table 5.7 U.S. Court of Federal Claims Judges

| Fiscal Year | Authorized Court of Fed. Claims Judgeships | Average Vacancies | Avg No. Active Judges |
|---|---|---|---|
| 1995 | 16 | 0 | 16 |
| 1996 | 16 | 1 | 15 |
| 1997 | 16 | 1 | 15 |
| 1998 | 16 | 4 | 12 |
| 1999 | 16 | 1 | 15 |
| 2000 | 16 | 0 | 16 |
| 2001 | 16 | 1 | 15 |
| 2002 | 16 | 4 | 12 |
| 2003 | 16 | 2 | 14 |
| 2004 | 16 | 0 | 16 |
| 2005 | 16 | 1 | 15 |
| 2006 | 16 | 0 | 16 |
| 2007 | 16 | 0 | 16 |
| 2008 | 16 | 0 | 16 |
| 2009 | 16 | 0 | 16 |
| Estimates | | | |
| 2010 | 16 | 0 | 16 |
| 2011 | 16 | 0 | 16 |

Table 5.8 Bankruptcy Judges (excludes recalled)

| Fiscal Year | Authorized Bankruptcy Judgeships | Avg Vacancies | Avg. No Active Judges |
|---|---|---|---|
| 1995 | 326 | 11 | 315 |
| 1996 | 326 | 14 | 312 |
| 1997 | 326 | 13 | 313 |
| 1998 | 326 | 13 | 313 |
| 1999 | 326 | 15 | 311 |
| 2000 | 325 | 18 | 307 |
| 2001 | 324 | 12 | 312 |
| 2002 | 324 | 18 | 306 |
| 2003 | 324 | 18 | 306 |
| 2004 | 324 | 4 | 320 |
| 2005 | 324 | 12 | 312 |
| 2006 | 352 | 16 | 336 |
| 2007 | 352 | 12 | 340 |
| 2008 | 352 | 12 | 340 |
| 2009 | 352 | 17 | 335 |
| Estimates | | | |
| 2010 | 352 | 19 | 333 |
| 2011 | 352 | 17 | 335 |

Table 5.9 Magistrate Judges (Full-Time)

| Fiscal Year | Authorized Magistrate Judgeships | FTE |
|---|---|---|
| 1998 | 429 | 421 |
| 1999 | 436 | 431 |
| 2000 | 447 | 436 |
| 2001 | 456 | 452 |
| 2002 | 470 | 462 |
| 2003 | 477 | 464 |
| 2004 | 487 | 488 |
| 2005 | 495 | 490 |
| 2006 | 500 | 496 |
| 2007 | 503 | 492 |
| 2008 | 505 | 504 |
| 2009 | 508 | 500 |
| Estimates | | |
| 2010 | 517 | 508 |
| 2011 | 523 | 514 |

## B. COURT PERSONNEL AND PROGRAMS

***5. Pay and benefit cost adjustments***

**a. Annualization of January 2010 pay adjustment**

**Requested Increase: $15,185,000**

As a result of a nationwide ECI and locality pay adjustments, federal pay rates increased by an average of 2.0 percent in January 2010. The requested increase annualizes this pay increase for the first three months of fiscal year 2011.

**b. Proposed January 2011 pay adjustment**

**Requested Increase: $33,106,000**

As of November 2009, the Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.4 percent beginning on or after January 1, 2011. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2011.

**c. Promotions and within-grade increases**

**Requested Increase: $23,961,000**

The requested increase provides for promotions and within-grade increases for personnel. The salary plan for judicial support personnel provides for periodic within-grade increases for staff who receive at least a satisfactory performance rating.

**d. Benefit increases**

**Requested Increase: $12,306,000**

An increase in health benefit payments costing $12.3 million is required based on the Office of Personnel Management estimates that health benefit premium contributions will increase by 7.0 percent in January 2010 and by 7.0 percent in January 2011. The requested increase annualizes the 2010 premium increase, and includes a nine-month provision for the anticipated fiscal year 2011 premium increase and other changes.

**e. FERS increase**

**Requested Increase: $12,438,000**

Funds are requested to provide for new benefits for employees covered by the Federal Employees Retirement System (FERS), pursuant to the National Defense Authorization Act for Fiscal Year 2010, P. L. 111-84. The requested increase includes the additional agency contribution for FERS employees from 11.2 percent to 11.7 percent.

***6. Annualization of new fiscal year 2010 staff***

**Requested Increase: $29,097,000 FTE: 360**

The requested increase annualizes the cost of fiscal year 2010 additional staff expected to be hired due to increased workload The judiciary estimates that 720 additional positions will be filled for an average of six months in fiscal year 2010. This line item requests the remaining six months funding in fiscal year 2011 to annualize those 720 positions (360 FTE).

7. ***Funding necessary to maintain fiscal year 2010 service levels due to an anticipated decline in non-appropriated funds***

**Requested Increase: $18,099,000**

In addition to appropriations from Congress, the judiciary relies on various other funding sources to finance its requirements. These non-appropriated funds include current year fee collections, carryforward of fee balances from the prior year, no-year appropriation balances, and Judiciary Information Technology Fund balances. The use of these funds allows the judiciary to reduce its appropriations request on a dollar-for-dollar basis. The judiciary's fiscal year 2011 appropriation request of $5.3 billion reflects a projected availability of $432.2 million in these non-appropriated funds. Without these funds, the judiciary's request in appropriations would have totaled $5.7 billion.

While the use of these funds benefits the judiciary (and congressional appropriators), the amounts available fluctuate year-to-year due to changes in filing fee collections, changes in unobligated balances from prior years, etc. If total non-appropriated funds in the budget year exceed the total non-appropriated funds in the prior year, the budget year's appropriations request can be reduced further. However, if total non-appropriated funds in the budget year are lower than the total non-appropriated funds in the prior year, appropriations are needed to replace those "lost" non-appropriated funds in order to maintain a current services level of obligations.

The fiscal year 2010 obligation level assumes that new fee collections and prior-year carryforward from fiscal year 2009 will total $450.3 million. The fiscal year 2011 request estimates that fee collections and prior-year carryforward will total $432.2 million, a net decrease of $18.1 million from the $450.3 million available in fiscal year 2010 to help finance court operations. This is displayed in Table 5.10 below. The judiciary requests appropriated funds for fiscal year 2011 to replace these non-appropriated funds in order to maintain the same level of services as provided in fiscal year 2010.

The judiciary's estimates for non-appropriated funds typically fluctuate during the fiscal year. Administrative Office staff will update the appropriations subcommittee staff on changes in non-appropriated funding levels during fiscal year 2010.

Table 5.10 Non-Appropriated Sources of Funding

| ($000) | FY 2010 Plan | FY 2011 Request | Difference |
|---|---|---|---|
| Fee Collections | 287,682 | 312,165 | 24,483 |
| Other Carryforward | 162,582 | 120,000 | (42,582) |
| **Total, Non-Appropriated Sources of Funding, Excluding Slippage** | **450,264** | **432,165** | **(18,099)** |

## C. OTHER ADJUSTMENTS

### *8. Inflationary adjustments*

**Requested Increase: $23,697,000**

Consistent with guidance from the Office of Management and Budget, this request of $23.7 million is required to fund inflationary increases of 1.1 percent for operating expenses such as travel, utilities, printing, contractual services, supplies and materials, and furniture and equipment.

### *9. Vaccine Injury Compensation Trust Fund Adjustment*

**Requested Decrease: ($643,000)**

The National Childhood Vaccine Injury Act of 1986 (42 U.S.C.§300aa) created a special fund to pay judgments awarded under the Act. The Vaccine Act also created the Office of Special Masters (OSM) within the United States Court of Federal Claims to hear vaccine injury cases and further stipulates that up to eight special masters may be appointed for this purpose. The special masters' expenditures are reimbursed to the judiciary for Vaccine Injury cases from a special fund set up under the Vaccine Act.

For fiscal year 2011, the judiciary requests $4,785,000 from the Vaccine Injury Compensation Trust Fund, a decrease of $643,000 expected to be received from the Trust Fund in fiscal year 2010. The reduction is a result of the one-time cost for tenant alterations in fiscal year 2010 due to relocating to new space.

### *10. GSA space rental and related services*

**Requested Increase: $36,698,000**

The judiciary requests a net increase of $36.7 million in fiscal year 2011 for General Services Administration (GSA) rent and related services associated with (a) annualizing new space expected to be occupied during fiscal year 2010 (+$7.2 million), (b) new space projected to be delivered by GSA in fiscal year 2011 (+$30.4 million), (c) inflationary increase for GSA rent costs (+$5.6 million), and (d) a decrease associated with other space-related adjustments (-$6.6 million). Table 5.11 on page 5.34 summarizes the request for GSA space rental.

#### a. Annualization of new fiscal year 2010 space

**Requested Increase: $7,245,000**

In fiscal year 2010, the judiciary anticipates that 135,366 additional rentable square feet related to prospectus projects and 104,403 rentable square feet of non-prospectus space (projects currently costing less than $2.79 million) will be assigned to the courts of appeals, district courts, bankruptcy courts, and probation and pretrial services offices. Because this new space will be added to the space inventory at various times during the course of fiscal year 2010, funding for the full year is not included in the fiscal year 2010 level. The requested increase of $7.2 million is based on projected occupancy dates and rental rates estimated by GSA. Table 5.12 on page 5.35 details the specific prospectus projects which GSA plans to deliver in fiscal year 2010. The annualization amount requested is the difference between the partial-year cost in fiscal

year 2010 for prospectus and non-prospectus projects, and the full year cost to be incurred in fiscal year 2011.

**b. New space to be delivered in fiscal year 2011**

**Requested Increase: $30,449,000**

An increase of 504,361 rentable square feet of new space is expected to be added to the judiciary's inventory in fiscal year 2011. Of this total, prospectus projects will account for 431,327 additional rentable square feet, and non-prospectus space will add 73,034 rentable square feet. The estimated rent cost of this new space is based on anticipated occupancy timetables and estimated rental rates provided by GSA. Table 5.13 on page 5.36 lists prospectus projects that are anticipated to be delivered during fiscal year 2011.

**c. Inflationary increase in GSA space rental**

**Requested Increase: $5,596,000**

This request represents a 0.57 percent inflationary increase in the cost of GSA space rental and maintenance of facilities for fiscal year 2011. This increase is based on rent estimates computed by GSA and provided to the judiciary.

**d. Tenant alterations, new furniture and other space related adjustments**

**Requested Decrease: ($6,592,000)**

A net decrease of $6.6 million is requested for reductions to other space-related adjustments that are part of the judiciary's space review and cost-containment efforts.

**Table 5.11 Fiscal Year 2011 GSA Space Rental Increase**

| Fiscal Year 2010 Base: | Square Feet of Space | Avg. Cost per Square Ft. | Amount in $000 |
|---|---|---|---|
| **Space occupied at start of year (includes delegated buildings):** | 38,768,068 | | $960,755 |
| Estimated additional space to be delivered during the base fiscal year | | | |
| Prospectus | 135,366 | | $6,576 |
| Non-prospectus | 104,403 | | $4,269 |
| Subtotal, Fiscal Year 2010 | 239,769 | | $10,846 |
| Funding for tenant improvements to space | | | $37,208 |
| **Total, Fiscal Year 2010** | 39,007,837 | $25.87 | $1,008,809 |
| **Fiscal Year 2011 Increase:** | | | |
| Increase in rent for estimated inflation at .57 percent | | | $5,596 |
| Annualization of new space assigned in fiscal year 2010 | | | |
| Prospectus | | | $2,577 |
| Non-prospectus | | | $4,668 |
| Subtotal | | | $7,245 |
| Subtotal | 39,007,837 | | $1,021,649 |
| **Space to be delivered in fiscal year 2011:** | | | |
| Prospectus | 431,327 | | $22,743 |
| Non-prospectus | 73,034 | | $7,706 |
| Subtotal, Fiscal Year 2011 | 504,361 | | $30,449 |
| Funding for tenant improvements to space | | | $3,375 |
| Anticipated Savings in Fiscal Year 2011 Rent 1/ | | | ($11,000) |
| **Total, Fiscal Year 2011 Budget Request** | **39,512,198** | **$26.43** | **$1,044,473** |
| **Fiscal Year 2011 Increase** | **504,361** | | **$35,665** |

1/ Anticipated fiscal year 2011 savings due to project completion delays

**Table 5.12 Space to be delivered in fiscal year 2010 - Prospectus projects in order of GSA estimated delivery dates**

| City | State | Net Added Square Feet to be Delivered | Estimated Occupancy | Fiscal Year 2010 Rent for New Space | Fiscal Year 2011 Annualized Rent Cost | Total Annual Rent |
|---|---|---|---|---|---|---|
| Pensacola | Florida | 16,571 | 3/5/10 | $658,051 | $131,610 | $789,661 |
| El Paso | Texas | 79,388 | 2/19/10 | $4,350,844 | $1,450,282 | $5,801,126 |
| Las Cruces | New Mexico | 39,407 | 2/12/10 | $1,145,367 | $572,683 | $1,718,050 |
| Los Angeles | California | no change [1] | 4/1/10 | $422,020 | $422,020 | $844,040 |
| **Total** | | **135,366** | | **$6,576,282** | **$2,576,595** | **$9,152,877** |

1/ Increases in rent for projects with no change in square feet occupied can be due to: higher shell rent, operating costs, and joint use space costs as a result of reappraisals, tenant improvement costs related to alterations in existing space, and increased amortized capital costs for building specific security improvements.

**Table 5.13 Space to be delivered in fiscal year 2011 - Prospectus projects in order of GSA estimated delivery dates**

| City | State | Net Added Square Feet to be Delivered | Estimated Occupancy | Fiscal Year 2011 Rent for New Space | Fiscal Year 2012 Annualized Rent Cost | Total Annual Rent |
|---|---|---|---|---|---|---|
| Buffalo | New York | 17,833 | 10/1/10 | $5,559,408 | $0 | $5,559,408 |
| Jackson | Mississippi | 122,485 | 10/1/10 | $3,424,540 | $0 | $3,424,540 |
| Brooklyn | New York | 80,282 | 10/31/10 | $4,109,392 | $373,581 | $4,482,973 |
| Little Rock | Arkansas | 28,891 | 11/1/10 | $2,974,076 | $270,370 | $3,244,446 |
| Rockford | Illinois | 45,006 | 11/1/10 | $2,453,523 | $223,048 | $2,676,571 |
| Atlanta | Georgia | 136,830 | 12/1/10 | $4,149,986 | $829,997 | $4,979,983 |
| New Bern | North Carolina | no change [1] | 12/30/10 | $71,775 | $23,925 | $95,700 |
| **Total** | | **431,327** | | **$22,742,700** | **$1,720,921** | **$24,463,621** |

1/ Increases in rent for projects with no change in square feet occupied can be due to: higher shell rent, operating costs, and joint use space costs as a result of reappraisals, tenant improvement costs related to alterations in existing space, and increased amortized capital costs for building specific security improvements.

***11. Information technology adjustments to maintain ongoing operations***

**Requested Increase: $3,473,000**

An increase of $3.5 million is requested for the Information Technology (IT) program to support the current operations for the judiciary's information management and telecommunication systems. This increase funds telecommunications equipment for buildings undergoing major renovations, replacement of outdated systems, and the replacement of telecommunications systems for courthouses and buildings undergoing major renovations. In addition, this increase provides funding for operations and maintenance activities; court automation support; and infrastructure support for national IT applications.

These information technology funds are requested under the guidance of the Judicial Conference of the United States and according to the goals and strategic initiatives contained in the *Long-Range Plan for Information Technology in the Federal Judiciary*. The judiciary continues to implement programs and systems to support the information technology needs of the courts. The requested funds will allow the judiciary to operate and maintain its information technology infrastructure, products, projects, and services which are essential to the judicial process and the operations of the courts.

To assist the judiciary in implementing its information technology initiatives, Congress established the Judiciary Information Technology Fund (JITF). The JITF was authorized "without fiscal year limitation," which allows the judiciary to carry forward funds for projects that incur obligations over multiple years. The fund makes it possible to implement the *Long-Range Plan for Information Technology in the Federal Judiciary* and to manage the information technology program over a multi-year planning cycle while maximizing efficiencies and benefits.

A more detailed description of the JITF can be found in section 13 of this submission, "Judiciary Information Technology Fund."

## D. PROGRAM INCREASES

### *12. New fiscal year 2011 full-time magistrate judges and staff*

**Requested Increase: $2,961,000 FTE: 27**

The judiciary requests an additional $3.0 million for 6 additional magistrate judges (6 FTE), 21 support staff (21 FTE), and associated operating costs. Because of the critical need for these positions, all six judgeships are "accelerated;" thus, a full-year's funding is assumed for these magistrate judgeships in fiscal year 2011.

Table 5.14 Cost of Additional Magistrate Judges

| | Positions | FTE | Total Request ($000) |
|---|---|---|---|
| New Full-Time Magistrate Judges | 6 | 6 | $661 |
| Supporting Personnel | 21 | 21 | $1,522 |
| Operating Expenses | | | $778 |
| **Total** | **27** | **27** | **$2,961** |

The Judicial Conference authorizes new magistrate judge positions based upon an individualized showing of need by the requesting district courts. The Conference takes into account all relevant factors in its deliberations on magistrate judge position requests, including the number and locations of authorized district judges. In evaluating requests for full-time magistrate judge positions, the Conference generally considers: (1) the comparative need of the district judges for the assistance of magistrate judges and the overall workload of the district court; (2) the commitment of the court to the effective utilization of magistrate judges; and (3) the availability of sufficient work of the type that the district judges wish to assign to magistrate judges to justify the authorization of additional full-time positions. Consideration also is given to the geographical areas and population to be served, convenience to the public and bar, the rights of criminal defendants to prompt court proceedings, the number and extent of federally administered lands in the district, transportation and communication facilities, and other pertinent local conditions. As an alternative to authorizing additional full-time magistrate judge positions, the feasibility of using recalled magistrate judges is explored with individual district courts in response to their requests for additional magistrate judge positions.

Table 5.15 Full-time Magistrate Judges

| Fiscal Year | Number of Authorized Magistrate Judges | FTE |
|---|---|---|
| 2002 | 470 | 462 |
| 2003 | 477 | 464 |
| 2004 | 487 | 488 |
| 2005 | 495 | 490 |
| 2006 | 500 | 496 |
| 2007 | 503 | 492 |
| 2008 | 505 | 504 |
| 2009 | 508 | 506 |
| 2010 | 517 | 508 |
| 2011 (estimated) | 523 | 514 |

Based on the criteria described above, the Judicial Conference has authorized additional magistrate judge positions in the following locations[1]:

- Newark, New Jersey (accelerated)
- Florence, South Carolina (accelerated)
- Chicago, Illinois-Northern (accelerated)
- Fresno, California-Eastern (accelerated)
- Sacramento, California-Eastern (accelerated)
- San Diego, California-Southern (accelerated)

[1]Positions approved by the Judicial Conference in September 2009 (accelerated positions require 12 months of funding in fiscal year 2011)

Newark, New Jersey (4.4 FTE)

The court's weighted filings per judgeship were three percent higher in 2008 (511) than in 2007 (496), and they remain above the national average of 472. The court is now ranked 23rd in this category, compared with 31st in 2007. The court's other per judgeship statistics for 2008 remained the same or nearly the same, except its pending caseload which also grew by three percent in the past year. Even though its civil filings per judgeship were just below the national average in 2008 (391 v. 394), the court's rank in these filings was high at 23rd nationally.

A June 2008 survey report of the district concluded that even though it appeared that a seventh magistrate judge position at Newark was warranted based on the caseloads and workloads of the court's judges at that time, the court refrained from seeking an additional position there based on its hope that the relocation of a Newark district judge to Trenton, and a change in its case assignment practices in Newark, would alleviate some of their workload burdens there. However, this did not happen and since the time the 2008 survey report was written, the court's weighted caseload increased, which resulted in increases in the workload for all the district's magistrate judges, including those at Newark Given the fact that the six magistrate judges at Newark were already fully occupied, the increases in their duties in the past year had been difficult for them.

As noted in the 2008 survey report, "[a]dditional magistrate judge resources would allow the incumbents to devote more time to their individual duties, e.g., writing, pretrial conferences, settlement conferences and consent cases, at a less pressured pace. In addition, additional resources would assist the district and senior judges with their significant workloads

by allowing them to refer more matters to the magistrate judges without concern that they are increasing their workload burdens beyond capacity or significantly disrupting their schedules." The court noted that although the two new positions at Trenton and Camden provided relief to the magistrate judges at these locations, the new position at Newark was necessary to provide the same relief for the magistrate judges at Newark.

Even with the addition of two full-time magistrate judge positions in 2008, the court's ratio of full-time magistrate judges to district judges (1:1.4) was still slightly below the national average (1:1.3). The approval of the additional position at Newark put the court's ratio at the national average, which is more than reasonable given the district's effective use of its magistrate judges, its significant weighted caseload, its influx of complex civil cases and multidistrict litigations, and the current workloads of the district's judges.

Florence, South Carolina (4.4 FTE)

Most of the court's per judgeship statistics in 2008 were above the national averages. Its weighted filings were above average (503 v. 472), ranked 26th, with its civil filings above average (445 v. 394) and its felony filings slightly below average (80 v. 91), although ranked 35th in the nation.

The full-time magistrate judges at all locations are busy and productive. Their workloads consist mostly of prisoner cases, social security appeals, pro se cases, and Title VII cases (employment discrimination cases), all of which are assigned to them automatically for pretrial management and reports and recommendations. They also handle all felony preliminary proceedings in the district, and several district judges refer non-case-dispositive motions in other civil cases to them as well. The Florence magistrate judge, as the only magistrate judge at that location, is on criminal duty daily and also has been referred more non-case-dispositive motions in civil cases and pretrial conferences in felony cases than any of the other magistrate judges in the district.

The court's overall workload, as measured by its above-average weighted caseload, is significant and, combined with a slightly below average ratio of full-time magistrate judge positions to district judgeships, suggests that additional magistrate judge support is warranted.

The court currently had seven full-time magistrate judges to support ten district judgeships, a ratio of 1:1.4. Authorization of the additional full-time magistrate judge position for the court gave the court a ratio of 1:1.3, equal to the national average.

Since one Florence district judge currently refers significant numbers of pretrial duties to the magistrate judge there and the other district judge has expressed a strong intention of referring a significant number of duties to a magistrate judge if a second position is approved for that location, the court's request for an additional full-time position at Florence meets the Judicial Conference criteria.

Approval of the additional full-time position at Florence, coupled with elimination of the part-time magistrate judge position at Aiken, is consistent with the expressed preference

of the Judicial Conference and the Congress for a system of primarily full-time magistrate judges.

Chicago, Illinois (4.4 FTE)
The Northern District of Illinois has 22 district judgeships and 11 full-time magistrate judge positions. The district's magistrate judges perform an extensive range of duties for the court. The magistrate judges also carry substantial civil consent caseloads, which are limited by workload pressures and other factors. Each magistrate judge conducts a motions call several times a week during which civil motions are heard and status conferences are held in civil non-consent and consent cases. In felony cases, the magistrate judges conduct all preliminary proceedings and are occasionally assigned pretrial matters. The incumbents in Chicago rotate criminal duty every two weeks. They are referred selected civil cases for discovery, settlement conferences, or general pretrial management as well as various post-judgment matters. The court tries to make the best use of its resource allocation, referring few case-dispositive motions to the magistrate judges for preparation of reports and recommendations. Many of their civil assignments involve complex and time consuming issues.

The court encourages parties to consent to the magistrate judges in many of the district's complex civil cases. The magistrate judges at Chicago dispose of a substantial number of civil consent cases per magistrate judge, and the magistrate judge in Rockford also handles a significant number of them although most are social security appeals. The magistrate judges also manage the court's social security caseload mostly with consent. In some instances, the magistrate judges handle a single motion in a case on a limited consent basis. The civil matters assigned to the magistrate judges reflect the entire range of cases filed in the district. The magistrate judge at Rockford is responsible for pretrial management of all Rockford civil and felony cases.

An additional magistrate judge at Chicago will assist the district and senior judges with their significant workloads. As already noted, the active district judges and the current senior judges refer a significant number of duties to the magistrate judges, and the court expects that there will be more referrals of duties to the magistrate judges in the coming years as the number of referring judges increases.

With an additional position, the court's ratio of full-time magistrate judge positions to district judgeships increased to 1:1.8 but remains significantly below the national average. The court's request for a new full-time magistrate judge position at Chicago meets the Judicial Conference criteria based on the court's caseload and its effective utilization of its existing magistrate judges.

Fresno and Sacramento, California (8.8 FTE)
The Eastern District of California has an extremely heavy caseload, ranking significantly above the national averages in all per judgeship categories in statistical year 2008. The court ranked first nationwide in weighted caseload per judgeship (970 v. 472 ), third in total cases filed (1,001 v. 516), and fourth in civil cases filed (801 v. 394).

The court continues to face an unprecedented backlog of prisoner cases with inadequate judgeship resources, while continuing to have the second highest number of prisoner filings in the nation. In response to this backlog, in January 2009, almost 1,000 prisoner cases from the Eastern District of

California were re-assigned to district judges in the other district courts in the Ninth Circuit who volunteered to take 15 cases apiece to assist in relieving the court's backlog of pending prisoner cases. While these case reassignments have provided some relief for the court in dealing with this backlog, it serves only as a temporary expedient that does not address the larger problem of the continued growth of prisoner filings in a district court with too few judgeships.

The particular circumstances in the Eastern District of California, especially the unrelenting growth in the district's prisoner caseload in recent years, as well as the court's large backlog of pending prisoner cases, the court's shortage of district judgeships, and its extensive utilization of existing magistrate judge resources, present an emergency situation warranting authorization of the two additional magistrate judge positions recommended by the Magistrate Judges Committee at Fresno and Sacramento.

Although the authorization of two additional magistrate judge positions will result in the court's ratio of full-time magistrate judge positions to district judgeships to 2:1, the highest in the nation, such a ratio is warranted based on the court's caseload, its effective utilization of its existing magistrate judge positions, and the court's large and growing caseload.

San Diego, California (4.4 FTE)
Most of the court's per judgeship statistics in 2008 were above the national averages. The court was significantly above the national average in felony cases filed per judgeship (308 v. 91),

ranked 4th, and total filings per judgeship (594 v. 516), ranked 13th. The court was also significantly above the national average in supervised release hearings per judgeship (82 v. 31), ranked 6th.

The court's utilization of the magistrate judges is effective, with the incumbents playing a key role in managing the court's civil docket. As of February 26, 2009, there were over 1,800 civil cases pending before the San Diego magistrate judges for pretrial management. However, a 59 percent increase in felony filings between 2005 and 2008 (from 2,515 to 4,007), in combination with an increase in more complicated civil cases in the district, has added to the already significant criminal and civil caseloads of the district's magistrate judges.

In recent years, the magistrate judges have had to modify their procedures to conduct felony proceedings in groups of defendants, rather than individually, to get them all done. Even so, most of the district's magistrate judges report that they are working longer hours each day and on weekends to keep abreast of their caseloads. There is no question that an additional magistrate judge position will allow the incumbents to devote more time to their individual duties. Also, additional resources would assist the district judges with their significant workloads by allowing them to refer more matters to the magistrate judges without concern that they are increasing their workload burdens beyond capacity.

Finally, it is likely that the district's felony filings will not abate, but will, in fact, increase, further exacerbating the

significant workloads of the district's judges. Continued increases in prosecutions of immigration and drug-related offenses along the U.S.-Mexican border is expected for the foreseeable future.

The additional position increased the court's magistrate judge to district judge ratio to 1:1.2. Although this put the court's ratio slightly above the national average of 1:1.3, it is reasonable given the significant increase in the district's felony filings in the last five years, and their impact on the workloads of all the district's judges.

***13. Fiscal Year 2011 court support staffing workload changes***

**Requested Increase: $39,679,000 FTE: 471**

The judiciary requires an additional 942 court support staff positions (471 FTE) in appellate, bankruptcy, district clerks' and probation and pretrial services offices in fiscal year 2011 to handle anticipated case filing increases, especially those increases resulting from increases in bankruptcy filings and illegal immigration enforcement efforts.

Table 5.16 Fiscal Year 2011 Staffing Increases

| Program | FY 2011 New Positions | FTE (Reflects 6 Months Funding in FY 2011) 1/ | $000 |
|---|---|---|---|
| Bankruptcy | 636 | 318 | $25,319 |
| District | 164 | 82 | $6,545 |
| Probation/Pretrial | 154 | 77 | $7,119 |
| Appeals | (12) | (6) | $696 |
| **Total** | **942** | **471** | **$39,679** |

For bankruptcy courts, the number of bankruptcy filings jumped 35 percent from 967,831 in 2008 to 1,306,315 during the 12-month period ending June 2009, as economic uncertainty forced debtors to seek protection from their creditors in bankruptcy courts. Filings are projected to rise another 20 percent during fiscal year 2010. The judiciary requests 636 additional staff (318 FTE) to handle this increasing workload.

For district courts, the number of criminal case filings rose 7 percent for the 12-month period ending June 30, 2009. Criminal filings are projected to increase another 3 percent in fiscal year 2010. Civil case filings are expected to increase by 6 percent in fiscal year 2010. The judiciary requests 164 additional staff (82 FTE) to handle this increasing caseload.

For probation and pretrial services offices, the number of persons under supervision grew by 3 percent during the 12 month period ending June 30, 2009, and is expected to increase

by another 3 percent during fiscal year 2010. The number of pretrial services cases activated increased by 5 percent during the 12 month period ending June 30, 2009, and is expected to increase another 2 percent during fiscal year 2010. The judiciary requests 154 additional staff (77 FTE) to handle this increasing complex caseload.

Probation and pretrial services officers provide valuable service to the courts by investigating defendants and offenders, verifying information about these individuals, and making sound and timely recommendations to judicial officers. Another important role for the probation and pretrial services officers is supervising sex offenders. To reduce recidivism and protect the community, officers supervising such offenders must use specialized supervision techniques, such as polygrpah examinations, actuarial risk assessments, and other tools to protect the community. While the rate of future prosecutions is difficult to project, it is clear that prosecutions will remain focused on the most persistent and egregious offenders.

Case filings in the circuit units and courts of appeals are expected to decrease by 5 percent in fiscal year 2010. A modest net decrease in staff is requested, but a slight net increase in funding is requested due to the increase and decrease in position types across the circuit units and courts of appeals.

A more detailed discussion of court support staffing can be found at Appendix 1 – Court Support Staffing.

### *14. Telecommunications Infrastructure*

**Requested Increase: $25,000,000**

The judiciary requests an increase of $25.0 million to enhance its telecommunications infrastructure. This request represents the continued investment on a multi-year effort to replace the judiciary's data and voice communications infrastructure with a single, managed network infrastructure. This funding builds on the $25.0 million provided in fiscal year 2010 and included in the base for fiscal year 2011. The funding is necessary due to the advanced age of many of the court's public exchange units that support voice communications, the exponential growth of data communications, and industry trends to converge voice and data network technologies.

The judiciary's telecommunications program allows the judiciary to maintain communications services for the appellate, district, and bankruptcy courts and for probation and pretrial services offices, and to procure telecommunications equipment for new courthouses and for courthouses undergoing major repairs and alteration.

A more complete discussion of the JITF can be found in section 13 of this document, "Judiciary Information Technology Fund."

### *15. Estimated Fiscal Year 2011 Fee Collections*

**Estimated funds available: $312,165,000**

Congress has authorized the judiciary to collect fees for civil and bankruptcy filings as well as fees for a variety of case services, including registry account administration and miscellaneous court case administration costs. A portion of the fees collected by the courts are deposited into a special fund maintained by the Department of Treasury and may be used to reimburse any of the four appropriations within the *Courts of Appeals, District Courts, and Other Judicial Services* heading, as well as the Administrative Office of the United States Courts, for expenses incurred. These fees are available without fiscal year limitation. The judiciary estimates that $312.2 million in revenue from these sources will be available in fiscal year 2011 to finance requirements in the Salaries and Expenses account, an increase of $24.5 million from the $287.7 million estimated to be available in fiscal year 2010. The judiciary anticipates continued increases in bankruptcy filings. This will increase fee collections (as well as requirements). The judiciary will continue to monitor bankruptcy filings throughout fiscal year 2010 and will advise the appropriations subcommittee staffs of changes in the forecasts.

Table 5.17 lists offsetting receipts by type and displays the amounts collected in fiscal year 2009. Estimates for fiscal year 2010 and fiscal year 2011 are also provided. The judiciary will advise appropriations subcommittee staffs of changes to these estimates.

Table 5.17 Offsetting Receipts from Collections

| Type of Collection and Source | FY 2009 Actual Collections ($000) | FY 2010 Estimated Collections ($000) | FY 2011 Estimated Collections ($000) |
|---|---|---|---|
| *Fees* | | | |
| Registry Administration Fees | 2,198 | 4,000 | 2,000 |
| Bankruptcy Filing and Misc Fees[1] | 227,382 | 247,583 | 275,684 |
| Civil Filing and Misc Fees[2] | 38,621 | 38,640 | 39,811 |
| Central Violations Bureau Fees | 5,843 | 5,600 | 5,600 |
| Immigration Adjudication and Naturalization Fees | 6,204 | 7,000 | 5,500 |
| **Subtotal, Fees** | **280,248** | **302,823** | **328,595** |
| **Fee allocation to Administrative Office[3]** | **(14,012)** | **(15,141)** | **(16,430)** |
| **TOTAL TO SALARIES & EXPENSES** | **266,236** | **287,682** | **312,165** |

[1] Includes statutory bankruptcy filing fees and bankruptcy court miscellaneous fees
[2] Includes statutory civil filing fees and appellate court and district court miscellaneous fees
[3] Based on Judicial Conference policy, up to 5 percent of total fees collected may be used to support Administrative Office requirements

### *16. Anticipated Unencumbered Carryforward From Fiscal Year 2010 into Fiscal Year 2011*

**Estimated funds available: $120,000,000**

The judiciary estimates that $120.0 million will be available through anticipated savings to carry forward into fiscal year 2011 and offset the fiscal year 2011 appropriation request for the Salaries and Expenses account. Savings generally are

available due to fewer than projected Article III judicial confirmations, resulting in salary and benefit savings for vacant judgeships and associated staff; slippages in GSA space delivery schedules that reduce space rental and furniture expenses; and unobligated funds returned from the nearly 400 court units throughout the judiciary.

The judiciary will advise appropriations subcommittee staffs of changes to this estimate.

# APPENDIX 1 - COURT SUPPORT STAFFING

This appendix discusses court support staffing for the courts of appeals, district and bankruptcy courts, and for probation and pretrial services offices. It also includes an explanation of the staffing formulas the judiciary uses to determine staffing requirements in the courts, a program statement explaining the purpose and function of these programs, and the importance of receiving adequate funding in fiscal year 2011 for these programs.

*Judiciary Staffing Formulas*

The judiciary has employed work measurement for nearly twenty years to determine its staffing requirements, to enable it to justify funding requests for staffing to Congress, and to provide a reliable tool to allocate staffing resources equitably across court types and individual court units. Though the methodology has changed over the years, work measurement's primary purpose remains to bring an empirically-based and practical approach to staffing analysis allocation.

The formulas provide a valuable methodology to determine the level of funding necessary to keep pace with increasing or decreasing workload. As case filings fluctuate from year to year, the application of the formulas allows for a corresponding increase or decrease in staffing allocations. This applies both for national formulation purposes by court program type, and at the individual court level for allocation purposes. The formula requirements are based on actual filings, not projected filings.

The staffing formulas are updated periodically to incorporate efficiencies derived from information technology initiatives, best practices, and other process improvements. This work measurement methodology uses a combination of core modeling and other measurement techniques that better reflect the courts' full staffing requirements. The staffing formulas are based on court-reported data and validated through simultaneous measurement by the Administrative Office

At its September sessions in 2008 and 2009, the Judicial Conference approved new or updated staffing formulas for staff of appellate clerks, bankruptcy clerks, bankruptcy administrators, circuit librarians, bankruptcy appellate panel clerks, district clerks, pro se law clerks, and staff attorney offices. The fiscal year 2011 request reflects these new or updated formulas An updated staffing formula for probation and pretrial services offices is currently underway and is expected to be considered by the Judicial Conference at its September 2010 session

*Fiscal Year 2011 Court Support Staffing Requirements*

In fiscal year 2011, the FTE request totals 22,533 FTE, an increase of 3.9 percent over the fiscal year 2010 funded level of 21,686 FTE. The fiscal year 2011 staffing build is summarized in Table A-1.1 below.

Table A-1.1 Fiscal Year 2011 Staffing Build

| | Court Support Staffing (FTEs) |
|---|---|
| FY 2010 Financial Plan Funded FTE | 21,686 |
| Annualization for positions funded in fiscal year 2010 (includes 10 pro se and death penalty ) | 360 |
| Adjustments for court reporters associated with changes in active and senior judges | 16 |
| Court staffing funded for workload increases in fiscal year 2011 [1/] | 471 |
| **FY 2011 Funded FTE** | **22,533** |

1/ Includes Death Penalty and Pro Se Law Clerks

Information supporting each of the courts programs (bankruptcy courts, probation and pretrial services, district courts, and appellate courts) is presented in the following sections.

## Bankruptcy Courts

Table A-1.2 Major Bankruptcy Court Workload Indices[1]

| | 2008 Actual | 2009 Actual | 2010 Estimate |
|---|---|---|---|
| Bankruptcy Filings | 967,831 | 1,306,315 | 1,570,000 |

[1]For the 12-month periods ending June 30

### Program Function Statement

Funding for the federal bankruptcy program is used for salaries and expenses of all active United States bankruptcy judges and supporting personnel as well as for expenses of operations and maintenance. These expenses include communication, printing, contractual services, supplies, equipment, and travel costs incurred by judges and supporting personnel in attending sessions of court or transacting other official business.

**Bankruptcy Clerks**
The bankruptcy court clerks' offices serve a critical support role in processing bankruptcy matters. Their work includes: receiving and scanning petitions, schedules, pleadings and other documents; training attorneys, trustees and creditors to use the Case Management/Electronic Case Files (CM/ECF) system; reviewing electronically filed documents for accuracy and compliance with national and local rules, and taking corrective action as necessary; issuing summonses and subpoenas, processing motions; responding to inquiries from the public and other government agencies for case information; maintaining case dockets, assigning cases to judges; creating notices to be sent to attorneys, debtors, and creditors, receipting and registering claims; scheduling hearings on motions, confirmation and other matters, issuing judgments, recording court proceedings; archiving closed case files, coordinating with the United States Trustees and panel trustees, reporting statistics, scheduling and regulating the movement of cases, establishing motion and trial calendars; scheduling courtroom usage, providing court reporting/recording services and courtroom clerical staff; and maintaining the electronic filing system to enable cases to progress through the judicial system Staffing resources are allocated based on a work measurement formula that converts specific tasks into work years.

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) added responsibilities, especially those related to means testing, credit counseling and financial management courses, new chapter 13 and dismissal requirements, additional noticing, and considering applications for fee waivers A work measurement study conducted after 2005 shows that BAPCPA added between 20 and 30 percent to the case processing workload for bankruptcy clerks' offices

The clerk of court serves as the chief administrative and financial officer for the court, and is responsible to the court, the United States government, and litigants for the proper collection, maintenance, and accounting for funds that come into the clerk's office. The clerk's office is authorized to collect all fees, costs, and other monies for the bankruptcy court and is accountable for their payment to the United States Treasury. The clerk's staff also manages the planning and execution of the court's budget and financial processes

**Workload Trends**

A number of factors contribute to the workload in bankruptcy courts. Three of the major factors are the number of cases filed, the complexity of the cases, and the increase in pro se filings. The state of the economy and the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), are pivotal drivers of these factors.

__Case Filings__

Bankruptcy filings reached record levels in the mid-1990s and peaked in early 2005. Filings surpassed one million each year beginning in 1996 and reached an all-time high just prior to the effective date of BAPCPA. In anticipation of the changes that BAPCPA would bring, filings increased significantly prior to the October 15, 2005 implementation date. Nationally, filings dropped by half in the following year. However the decrease did not last long, and filings are likely to reach pre-BAPCPA levels and possibly even exceed them in fiscal year 2010 or fiscal year 2011. Filings have increased rapidly as economic conditions worsened in the last two years. Since bankruptcy filings are normally a lagging indicator of economic conditions, the judiciary expects them to continue to increase for some time, even as the economy begins to rebound.

On a national basis, bankruptcy filings jumped 35 percent from 967,831 to 1,306,315 during the 12-month period ending June 2009, as economic conditions forced debtors to seek protection from their creditors in bankruptcy courts. Across the nation, 79 of 90 districts reported growth of 10 percent or more in filings. Only three districts have reported lower total filings in 2009 than in 2008.

Although bankruptcy filings are up throughout the country, courts in the 9th Circuit reported a 70 percent increase in bankruptcy filings for the 12 months ending June 30, 2009, the largest increase of any region. California-Central led the way with 87,043 filings, followed by California-Eastern and California-Southern with 40,240 and 17,441 filings respectively. For each of these California courts, the filing numbers represent a large increase in the percentage of cases over the prior 12 months: 85 percent in the Central District, 63 percent in the Eastern District and 66 percent in the Southern District. Recent yearly filing increases in Arizona, Nevada, Idaho, Western Washington, and Oregon (all in the 9th Circuit) are above 50 percent. Florida also experienced increases above 50 percent

While filings are presently below pre-BAPCPA levels, they are on the rise and are very close to the record levels reached before the change in the law This means bankruptcy courts are handling almost the same number of cases in the more complicated post-BAPCPA environment as they did pre-BAPCPA. Moreover, the increased filing trend may cause the number of future cases to eclipse pre-BAPCPA levels in the foreseeable future.

__Case Complexity__

A second major aspect of the workload in bankruptcy courts (compounding the increased filings) is the impact of the BAPCPA on case processing requirements. The law's new requirements – add substantially more work for the courts. For example, the law requires individual filers to receive a credit counseling briefing by an approved agency before filing for bankruptcy, and complete and pass a complex "means test" in order to be eligible for chapter 7 relief. Also, filers under

chapters 7 and 13 may not receive a discharge of their debts unless they have completed an approved financial management course. These and other new requirements must be reviewed by the clerk's office, which must take further action if the filers do not meet the requirements. A graphic example of the increased complexity comes from a bankruptcy clerk's office that reported making almost twice as many docket entries each month in 2008 than it made in 1998. That court's 2009 caseload has rebounded to 130 percent of its 1998 caseload but the more complicated cases require 47 percent more docket entries. This very typical report confirms the results of the work measurement study showing increased work per case in the post-BAPCPA environment.

**Pro Se Filings**
Another factor adding to the workload of bankruptcy clerks' offices is the increased number of pro se filings. The clerk's office must provide assistance to pro se filers, and take more time reviewing the material that is prepared by individuals, rather than by lawyers who are bankruptcy experts.

**Cost Containment Efforts**

The bankruptcy courts continue to lead the way in the use of electronic filing. Bankruptcy courts open and process virtually all of their cases electronically. In addition, the courts have been enhancing efficiency through a combination of local management initiatives and court-developed automation innovations. For years the bankruptcy clerks have been adopting new management techniques, developing and sharing best practices, and using the flexibility provided under budget decentralization to invest in automation solutions that save resources as well as improve quality and performance.

Since a major national system such as CM/ECF must be developed in stages and cannot address all requirements at once, courts have been developing and sharing local initiatives to enhance or extend the functionality of the system and address critical needs These include cash receipting interfaces, automated case opening, electronic order processing, and calendaring/hearing scheduling programs.

In addition, the bankruptcy courts have begun working with the Administrative Office to develop a case management system to replace the current one. This effort to begin developing a next generation system now will ensure that the design and implementation will occur long before the threat of obsolescence of the current system occurs and thus help to contain the cost of case processing in the future.

*Methods Analysis Program Adds to Efficiency*
To help ensure that all bankruptcy courts are knowledgeable about best case management practices, particularly as they relate to opportunities generated through electronic case filing, the Administrative Office is coordinating with court personnel to update the Methods Analysis Program. This program focuses on identifying and disseminating "best" and/or alternative practices for case management and court operations, such as quality control manuals, administrative procedures, guides, checklists, etc. In addition, the Administrative Office continues to sponsor CM/ECF operational practices forums that bring court personnel together to identify issues and exchange ideas for improvements.

Table A-1.3 Components of Bankruptcy Filings

| | Year Ending June 30 | Chapter 7 | Chapters 9, 11, 12, & 15 | Chapter 13 | Total | Adversaries Terminated or Filed[1] |
|---|---|---|---|---|---|---|
| ACTUAL[2] | 2001 | 972,659 | 10,529 | 403,418 | 1,386,606 | 61,031 |
| | 2002 | 1,053,230 | 11,845 | 440,231 | 1,505,306 | 63,351 |
| | 2003 | 1,165,993 | 11,475 | 472,811 | 1,650,279 | 71,831 |
| | 2004 | 1,167,101 | 11,453 | 457,171 | 1,635,725 | 90,061 |
| | 2005 | 1,196,212 | 7,097 | 433,945 | 1,637,254 | 95,177 |
| | 2006 | 1,164,815 | 6,670 | 313,085 | 1,484,570 | 84,772 |
| | 2007 | 450,332 | 6,031 | 294,693 | 751,056 | 65,099 |
| | 2008 | 615,748 | 7,662 | 344,421 | 967,831 | 51,496 |
| | 2009 | 907,603 | 14,525 | 384,187 | 1,306,315 | 48,686 |
| ESTIMATED[3] | 2010 | 1,125,300 | 15,300 | 429,400 | 1,570,000 | 53,100 |

[1]Staffing Formulas changed from "adversaries terminated" to "adversaries filed" in spring of 2005 The data for that year and after reflect the change.

[2]Actual data for years 2001 through 2009 is based on the 12-month periods ending June 30.

[3]The fiscal year 2011 budget request is based on 2010 projected caseload (calculated for the 12-month period ending June 30).

## Probation and Pretrial Services

Table A-1.4 Probation and Pretrial Services Workload Indicators[1]

| | FY 2008 Actual (% Change from Previous Yr.) | FY 2009 Actual (% Change from Previous Yr.) | FY 2010 Projected (% Change from Previous Yr.)[2] |
|---|---|---|---|
| Convicted Offenders Supervised in the Community[3] | 170,209 (+3 1%) | 173,457 (+3.1%) | 176,500 (+1.8%) |
| Charged Defendants Supervised in the Community | 57,264 (-2 0%) | 54,867 (-4 2%) | 54,500 (-0 7%) |
| Investigative Reports Completed for Bail Determinations | 98,867 (+3.0%) | 103,604 (+4 8%) | 106,600 (+2 9%) |
| Investigative Reports Completed for Sentencing Determinations | 68,245 (+0 5%) | 71,086 (+4.2%) | 71,300 (+0 3%) |

[1]For fiscal years 2008 and 2009, the number of convicted offenders and charged defendants supervised in the community reflects persons initially received for supervision, under supervision for the entire period, or under supervision at the start of the period and closed Persons with cases that fall in more than one of these three categories are counted only once

[2]The fiscal year 2011 budget request is based on 2010 projected caseload (for the 12-month period ending June 30)

[3]June 2008 and 2009 Actuals for probation supervision cases are from the National PACTS Reporting (NPR) database, which is administered by the Administrative Office of the U S. Courts

## Program Function Statement

Funding for the federal probation and pretrial services system is used for salaries and benefits of staff; drug testing, treatment of mentally ill and substance-abusing defendants and offenders; electronic monitoring, travel costs related to the supervision of defendants and offenders in the community; coordination with law enforcement and treatment providers; officer training, background investigations and integrity testing of staff, information technology, and normal business expenses.

## Workload Trends and Resource Requirements

Probation and pretrial services workload is dictated by the prosecutions brought by U.S. Attorneys offices and the number of inmates released to supervision by the Federal Bureau of Prisons (BOP).

In the 12-month period ending June 30, 2009, pretrial services officers conducted 100,959 new investigations on recently charged defendants and material witnesses. While the rate of future prosecutions is difficult to project, it is clear that prosecutions will remain focused on the most persistent and egregious offenders pursuant to Project Safe Neighborhood and other Department of Justice initiatives.

Also, during the 12-month period ending June 30, 2009, the BOP released 45,420 inmates to the supervision of probation officers in the community Combined with releasees from previous years and probation cases, the daily supervision population reached 123,839. At the start of fiscal year 2009, the BOP's population exceeded 208,000 inmates. Most of the inmates will be released to supervision eventually, except in cases where no supervision was imposed, the inmate is serving

a life sentence or on death row, or the inmate is to be deported Consequently, the community supervision caseload will remain high

*Serving the Courts*
Probation and pretrial services officers provide valuable service to the courts by investigating defendants and offenders, verifying information about these individuals, and making sound and timely recommendations to judicial officers. Pretrial services officers investigate defendants to recommend to the judge whether there are conditions or combinations of conditions that would reasonably assure the defendant's appearance in court and protect the community while the defendants' cases are pending disposition, as set forth under 18 U.S.C. § 3142.

Probation officers investigate persons convicted of federal crimes to recommend to the judge a sentence that addresses the factors set out in 18 U.S.C. § 3553. Probation officers' presentence reports are shared with the U.S. Attorney and defense counsel to provide notice of all sentencing issues and provide for an efficient and fair sentencing hearing. In 2009, probation officers produced 76,228 sentencing related investigative reports.

*Postconviction Supervision*
During the 12-month period ending June 30, 2009, 56,893 offenders began terms of community-based supervision under U.S. probation officers. More than 80 percent of those offenders were received after having completed a custodial sentence with the Bureau of Prisons. In comparison, in 1985, only 48 percent of offenders supervised by federal probation had served a custodial sentence; the majority were sentenced to probation These figures reflect the continued trend of increasingly challenging offenders released to the community. The challenge is more apparent when one considers the offenses for which these persons are under supervision – 46 percent of these offenders were convicted of narcotics trafficking offenses and 19 percent were convicted of either violent, sex, or weapons offenses

*Managing Increasing Risk*
Many offenders present significant risk to the community, risk that must be mitigated through proactive, community-based supervision One strong predictor of risk is the nature of the offender's prior criminal record, and the severity of the criminal history of persons coming under federal supervision has been increasing. In 2002, offenders with a criminal history category of II[1] or greater, as determined by the U.S. Sentencing Guidelines, constituted 30 percent of the supervision population. By 2009, offenders in those criminal history categories constituted 54 percent of the population.

The primary actuarial tool probation officers currently use for predicting recidivism is the Risk Prediction Index (RPI). Developed by the Federal Judicial Center and approved by the Judicial Conference in 1997, the RPI enables officers to objectively score offenders on a scale of 0 to 9, where 9 indicates the greatest likelihood of re-offending. The RPI calculates risk using seven static factors, such as whether a firearm was used during the instant offense or level of education. Since 2003, national average RPI scores have steadily increased for all offenders (from 2.89 to 3.47), as well as for subgroups, such as those convicted of drug and violent offenses. Similarly, average criminal history scores, as calculated for the federal sentencing guidelines, have increased

[1] To be in a Criminal History Category of II or greater, the person must have multiple prior convictions or a single conviction that resulted in an imprisonment term of sixty days or greater, or committed the federal offense while serving an earlier term of probation, parole or recent release from prison See U S Sentencing Guidelines Section 4A1 1

Probation officers must intensify their supervision efforts in the growing number of cases with increased risk Chief among those efforts is the officers making themselves a presence in the offender's community life, interacting with the offender in the home, neighborhood, and place of employment. Officers also conduct drug tests, develop sources of information in the community, and conduct surveillance and searches when appropriate. If behavior potentially leading to criminal behavior is exposed, officers take both punitive and corrective action. For example, if an offender is abusing alcohol, the probation officer can petition the court for an intermediate sanction, such as community service, as well as enroll the offender in a treatment program and conduct random tests for alcohol use. The probation officer's goal is to ensure compliance with the conditions of supervision and take action to preempt a decline in the offender's conduct or life situation.

*Serious Violations and Revocation*

Serious violations of supervision, where the offender commits a violent new offense (homicide, rape, assault, robbery, a felon in possession of a firearm, kidnaping, or racketeering) are relatively rare in the federal system. The proactive approach taken by officers normally allows them to identify and deal with minor violations swiftly before they escalate to more serious criminal activity Of the 49,236 cases closed from post-conviction supervision during the 12 months ending June 30, 2009, less than 2 percent (926 cases) were reported as revocations based on new violent crimes. By comparison, 27 percent of all cases nationally were closed by revocation, most due to technical violations such as failure to participate in drug treatment or absconding.

*Assisting With Reentry*

Many offenders on supervision lack adequate life skills to transition back into society smoothly. Officers help offenders to either reestablish or secure for the first time appropriate housing, employment, and legitimate community relationships They provide life skills counseling and leverage free programs offered by other federal agencies and local social service organizations. Success on supervision requires offenders to overcome not only the original factors that contributed to their criminal behavior, but institutionalization, alienation from family and friends, and other consequences of a lengthy prison term. Throughout the country, officers are securing resources for offenders, cultivating employment prospects, and developing collaborative relationships with a wide variety of organizations. All of these efforts aim to assist in the transition back into the community.

*Legislative, Administrative, and Case Law Changes*

Influencing the complexity of probation and pretrial services work is the increase in legislative, administrative, and case law change. Such changes often alter the scope of probation and pretrial services officers' work, bring new or modified duties, and require additional education and training to learn how to carry out these duties. For example, the Second Chance Act of 2007, signed into law in 2008 and aimed at successful reentry after release from prison, will potentially impact the services provided to offenders, pre-release planning, and post-release supervision strategies. Prior to the passage of the Act, probation and pretrial services offices only had authority to contract for substance abuse and mental health treatment. The Second Chance Act expanded contracting authority to include other types of reentry services. The expanded authority was subsequently refined with the enactment of the Judicial Administration and Technical Amendments Act of 2008

Section 15 of that Act authorizes the direct expenditure of funds for reentry services – when contracting would be impracticable – and authorizes contracting for and expenditure of funds to obtain reentry services for pretrial defendants. In June 2009, the Criminal Law Committee of the Judicial Conference endorsed a set of guidelines designed to assist the courts in exercising the expanded contracting and expenditure authority. The judiciary's fiscal year 2010 financial plan contains $6 million for these activities, and the judiciary seeks an additional $6 million (for a total of $12 million) in its fiscal year 2011 request.

*Substance Abuse and Mental Health*

Another factor influencing workload is the increase in substance abuse and mental health conditions among defendants and offenders From fiscal year 2007 to fiscal year 2009, the number of offenders under supervision receiving substance abuse treatment increased 7 percent, from 31,129 to 33,311. During that same time period, the number of offenders receiving mental health treatment rose from 10,258 to 12,054 cases, an increase of 18 percent.

Drug and mental health problems usually are detected during pretrial or presentence investigations when officers administer drug tests, interview the defendant and third parties, contact the defendant's family and associates, and review medical, employment, and school records. The expanding number of defendants and offenders with substance abuse and mental health conditions creates more challenging work for probation and pretrial services officers Officers have to investigate and assess treatment resources available in the community, contract for those services where necessary, formulate treatment plans, and develop supervision strategies for relapse prevention and detection.

The challenge to reduce substance abuse and stabilize mental health issues can be further complicated by the criminal thinking patterns. Officers cannot focus solely on the treatment needs of the defendant or offender and must follow a balanced supervision plan that is individualized, proportional, purposeful, multidimensional, proactive in implementation, and responsive to changes. As a result, officers should focus on approaches such as Cognitive Behavioral Therapy and Case Management [2]

*Sex Offenders*

As of June 30, 2009, there were 2,988 federal offenders under supervision in the community who were convicted of a sex offense. Another 2,554 offenders were under supervision with other sex offender history Although this is a relatively low percentage of the total number of offenders under supervision in the community, sex offenders require specialized supervision techniques and enhanced monitoring.

Sex offenders differ from other offenders because of the nature and impact of their crimes on victims and society as a whole and the potential for direct harm to another if the sex offender recidivates. Probation and pretrial services officers supervising sex offenders are required to understand the complex issues related to sexual re-offending, risk assessment, and risk management. To reduce recidivism and protect the community, officers supervising such offenders must use specialized supervision techniques, such as polygraph examinations, psychosexual evaluations, actuarial risk assessments, intense sex offense-specific counseling,

[2] "Cognitive Behavioral Therapy" involves the officer interacting with the offender in a Socratic style to expose, and ultimately change, an offender's maladaptive and distorted thinking patterns "Case management" describes a combination of officer activities to monitor offenders' compliance with court ordered conditions of supervision and to render/secure necessary services

surveillance, internet/location monitoring, and enhanced community collaboration. Where necessary, officers must contract for services to address the above needs. In response to the rising number of pretrial defendants charged with sex offenses, specialized treatment services were developed to meet the needs of this population.

When monitoring offenders who are under supervision for a federal sex offense or who have a history of sex offenses, officers must work closely with local and state law enforcement agencies and sex offender registries as the states continue to implement the Sex Offender Registration and Notification Act (SORNA). Although SORNA (Title I of the Adam Walsh Child Protection and Safety Act of 2006, Public Law 109-248, July 27, 2006) is the responsibility of the states to implement, officers supervising offenders required to register must ensure that the offenders comply with such requirements where they live, work, and attend school.

In order to maintain proficiency with evolving sex offender management techniques, a Sex Offender Management Working Group was created in 2008. The group consists of sixteen members including officers, specialists and supervisors with specialities in sex offender management, sex offender treatment, electronic monitoring, and cyber-crime technologies. The group's work will result in policy changes and the creation of a monograph specific to the supervision of sex offenders.

*Scientific and Technological Changes*

Probation and pretrial services officers must keep up with technological innovations such as the various location monitoring technologies that can track defendants and offenders both in their homes and in the community. These technologies include voice recognition to confirm offenders' presence in their homes at random times, radio frequency to provide continuous monitoring of offenders in their homes, and Global Position Systems (GPS) to provide continuous tracking of offenders' movements in the community in both passive and real time

Active GPS tracking continues to be an effective supervision tool for monitoring sex offenders as it gives officers the ability to establish prohibited areas (zones) in the community for offenders (for example, schools, parks, and daycare centers). If an offender enters such a zone, an alert will be generated to notify the officer that he or she must conduct an investigation to determine if a violation has occurred.

New location monitoring technologies have emerged that also allow officers to monitor offenders' locations in the community and in their homes through the use of one-piece tracking devices, instead of the combination of both a transmitter and tracking device. Location monitoring technologies also offer the ability to simultaneously track offenders and detect alcohol consumption through the location monitoring transmitter worn by the offender.

Technological advances in internet monitoring and computer forensic analysis have added a new dimension to how officers hold defendants and offenders accountable. These technologies have changed officers' responsibilities in that they have required officers to become aware of the software and services available to monitor defendants and offenders' internet use and know how to use them effectively. The technology tools available include software programs and services that allow an officer to view a defendant or offender's

internet use in real time, thus allowing that person to have legal internet access with minimal intrusion from the officer

*Research-Based Practices*

The judiciary is committed to implementing a results-based management and decision-making framework for its community supervision program. It is the desire of the judiciary to become an evidence-based system, meaning that employees at every level, use the best available evidence to make decisions. In this case, the goal is to collect, analyze, and use data from probation officers' electronic case files and a variety of other sources to inform decision making and drive performance improvements aimed at reducing recidivism and fostering long-term positive changes in individuals supervised. On an ongoing basis, the judiciary wants the ability to test underlying assumptions about the relationship between supervision practices and supervision outcomes.

The judiciary has developed a protocol to assimilate arrest data using the International Justice and Public Safety Network, National Law Enforcement Telecommunications System (NLETS). Similarly, the judiciary is collaborating with other federal agencies, such as the Bureau of Prisons, the Census Bureau, and the U.S. Sentencing Commission, to obtain data about offenders' backgrounds, criminal histories, and the communities in which they live.

In addition to internal research, the judiciary has partnered with universities, nonprofit organizations and other federal agencies to test various hypotheses about effective supervision practices.

Running concurrent to these research efforts, the judiciary is applying supervision practices that have demonstrated success in reducing recidivism with local, state, and international offenders.

Many of these practices require new skills not yet widely held by federal probation and pretrial services officers. To promote acquiring and using these skills, the judiciary established the Research-to-Results (R2R) program. In fiscal year 2009, the R2R program provided third-year funding to 16 volunteer districts to cover the costs of officer training and additional services related to implementing evidence-based practices. The lessons learned from these 16 districts are being applied in other districts that are beginning to use these same evidence-based supervision techniques.

The most notable of these practices that is now being implemented nationally is the application of actuarial risk prediction in both pretrial services and post-conviction supervision. The judiciary spent the last year analyzing data in order to develop risk prediction instruments. The Pretrial Services Risk Instrument is designed to predict the likelihood that a defendant will return to court for trial and remain crime free while in the community. This 10-question instrument is used by an officer to inform his or her recommendation to the judge about bond. The Post Conviction Risk Assessment is designed to predict the likelihood that an offender will commit a new offense and provide an officer with the root causes on the risk that can be addressed during supervision. This 134-question instrument is used by officers to craft an effective supervision strategy to lower the risk on those on community supervision. Both of these risk prediction instruments will be implemented during 2010. This implementation will require a massive training effort, requiring face-to-face training for more than 6,000 officers.

**Cost Containment Efforts**

To contain costs in the probation and pretrial services program, the judiciary established priorities to ensure that adequate staffing resources are available for the most critical functions, including those with the greatest impact on public safety. Less critical officer functions were reduced or eliminated, decreasing the number of new officers required and freeing existing officers to focus on more critical work. Specifically, changes were made in policies to reduce the number and scope of pretrial services investigation reports; reduce the number of defendants under pretrial supervision; reduce the number and scope of pre-sentence investigation reports; and reduce the number of offenders under post-conviction supervision.

The largest portion of probation and pretrial services workload (62 percent) involves the post-conviction supervision of offenders. This portion of the workload had been steadily increasing for many years due to the growing number of offenders released from federal prisons each year to begin terms of supervised release in the community. To cope with these increases, the judiciary adopted a policy in 2004 to encourage the courts to terminate compliant supervision cases early. In cases in which the offender meets specific criteria and does not pose a risk to public safety, probation officers are required to recommend termination of supervision before expiration of the term.

Before this cost-containment initiative was implemented, approximately 3,500 cases were terminated early each year. In fiscal year 2009, nearly 6,500 cases were closed upon early termination. Related cost containment initiatives involved concentrating resources on pretrial cases where release was possible but not certain, while reducing resources for cases where pretrial detention was a relative statistical certainty. Similarly, a streamlined version of pre-sentence reports was developed to be used in cases, such as those of illegal aliens with no history in the United States, where it would be difficult or impossible to secure the information or level of verification required for a full presentence report.

Identifying less costly methods to provide substance abuse treatment and testing, pretrial services alternatives to detention, mental health treatment, and electronic monitoring are other cost containment efforts. These efforts have been very successful and have slowed the growth in these court-ordered services.

*Cost of Supervision Versus Incarceration*

The cost of detaining a defendant in jail pending trial in fiscal year 2008 was $66.27 per day, or more than ten times the $6.09 a day it cost to release the defendant to the supervision of a pretrial services officer. Similarly, the post-conviction imprisonment of an offender in a federal prison facility cost $70.75 per day in 2008, or more than six times the $10.23 daily it cost for a probation officer to supervise an offender in the community.

If one percent of the population in federal prison custody were moved to supervision, the federal government would save $126,000 a day, $3.8 million a month, and $46.1 million a year. In addition, while under supervision, offenders are required to be employed; pay taxes, restitution, and fines; support their dependents; and perform community service if ordered by the court. The offenders who had their supervision

cases closed in fiscal year 2009 paid more than $368 million in financial sanctions and performed more than 594,000 hours of community service. Specific data are unavailable on taxes paid and financial support provided to dependents by these offenders, but projections put the combined total in the range of $1 billion for the period of supervision (for an average time on supervision of approximately three years).

*Improved Substance Abuse Testing Methodologies*

The detection of illegal substances is a critical part of supervision and one of the few objective tools officers have at their disposal. The judiciary conducts most of its testing by urinalysis, the most proven and researched method to detect illegal substances. Testing is performed by three methods: 1) national contracts with laboratories to conduct drug testing outside judiciary facilities, 2) a national contract for districts to obtain drug testing and operate on-site drug testing laboratories, and 3) the decentralized procurement of non-instrumented drug testing devices, which also allow on-site testing. Several districts operating on-site drug testing laboratories have also established relationships with other districts to provide testing services.

The advantages of conducting on-site drug testing are two-fold: cost-effectiveness and operational efficiency. On-site drug testing provides results quickly, thereby enabling officers to take action immediately if the results are positive Research shows that immediate action after a positive urinalysis test deters further illicit drug use and reduces the likelihood of criminal behavior

In addition to operational efficiency, on-site testing is cost effective. A standard panel of five drugs and validity testing at a commercial laboratory costs an average of $7.80, or an average of $1.46 per test ($.50 for validity testing) On-site laboratories test specimens with an accuracy and reliability that rival the contract laboratories at a cost of $.80 per drug test and $.58 for validity testing (a test for creatinine, which is used to detect any dilution effort by the offender). Non-instrumented devices vary in their price, but cost an average of $.50 per drug, and some have the capability for validity testing.

*Information Technology*

The judiciary continues to use information technology to reduce costs, improve probation and pretrial services officers' effectiveness and efficiency, and oversee officers' work.

For example, between fiscal year 2003 and fiscal year 2009, probation and pretrial services caseload increased by 8 percent while overall staffing levels grew by only 1 percent. Information technology investments in case management systems and expanding the use of mobile technology have enabled probation and pretrial services offices to reduce the number of support staff nationwide. The judiciary has utilized these savings to hire the additional officers necessary to keep up with workload growth while at the same time keeping overall staffing levels essentially flat. Information technology projects underway include upgrades and enhancements to the Probation and Pretrial Services Automated Case Tracking System, which is the primary case management tool for officers in the field. The widespread use of Blackberry devices allows officers to access and update case information remotely, allowing them to spend less time in the office and more time in the field supervising offenders and protecting the public. Other information technology investments will enable the judiciary to share case information electronically with the Bureau of Prisons, U.S Sentencing Commission, and other federal and local law enforcement agencies.

Table A-1 5   Offenders Under Supervision by Type of Supervision - Projections Through 2010

| | Year | Probation | Supervised Release | Parole | BOP Custody | Total |
|---|---|---|---|---|---|---|
| ACTUAL[1] | 2000 | 31,797 | 62,774 | 5,006 | | 99,577 |
| | 2001 | 31,457 | 67,323 | 4,717 | 180 | 103,677 |
| | 2002 | 31,317 | 72,108 | 4,142 | 277 | 107,844 |
| | 2003 | 30,799 | 75,322 | 3,742 | 480 | 110,343 |
| | 2004 | 29,485 | 77,963 | 3,435 | 2,479 | 113,362 |
| | 2005 | 26,917 | 82,488 | 3,187 | 416 | 113,008 |
| | 2006 | 25,326 | 85,700 | 2,979 | 276 | 114,281 |
| | 2007 | 24,163 | 88,874 | 2,696 | 197 | 115,930 |
| | 2008 | 23,028 | 94,349 | 2,519 | 155 | 120,051 |
| | 2009 | 22,926 | 98,560 | 2,220 | 133 | 123,839 |
| ESTIMATED[2] | 2010 | 22,000 | 103,100 | 1,900 | 100 | 127,100 |

[1]Actual data for years 2000 through 2009 is based on the 12-month period ending June 30.

[2]Estimates for the 12-month period ending June 30, 2009

Table A-1.6 The Changing Supervision Population - Offenders on Probation vs Offenders Released from Prison - Projected through 2010

| | Year | Offenders on Probation | | Offenders Released from Prison[1] | | Total |
|---|---|---|---|---|---|---|
| ACTUAL[2] | 1999 | 32,640 | 34% | 64,641 | 66% | 97,281 |
| | 2000 | 31,797 | 32% | 67,780 | 68% | 99,577 |
| | 2001 | 31,457 | 30% | 72,220 | 70% | 103,677 |
| | 2002 | 31,317 | 29% | 76,527 | 71% | 107,844 |
| | 2003 | 30,799 | 28% | 79,544 | 72% | 110,343 |
| | 2004 | 29,485 | 26% | 83,877 | 74% | 113,362 |
| | 2005 | 26,917 | 24% | 86,091 | 76% | 113,008 |
| | 2006 | 25,326 | 22% | 88,955 | 78% | 114,281 |
| | 2007 | 24,163 | 21% | 91,767 | 79% | 115,930 |
| | 2008 | 23,028 | 19% | 97,023 | 81% | 120,051 |
| | 2009 | 22,926 | 19% | 100,913 | 81% | 123,839 |
| ESTIMATED[3] | 2010 | 22,000 | 17% | 105,100 | 83% | 127,100 |

[1]Includes terms of supervised release, parole, mandatory release, and military parole

[2]Actual data for years 2000 through 2009 is based on workload for the 12-month period ending June 30

[3]Estimates for the 12-month period ending June 30, 2009.

**District Courts**

Table A-1 7 Major District Court Workload Indices[1]

| Filings | 2008 Actual | 2009 Actual | 2010 Estimate |
|---|---|---|---|
| Criminal Case Filings | 70,024 | 75,324 | 77,300 |
| Criminal Defendants Filed | 91,782 | 95,935 | 96,400 |
| Civil Case Filings | 256,354 | 257,204 | 273,400 |

[1]For the 12-month periods ending June 30

**Program Function Statement**

Funding for the district court program is used for salaries and benefits of all active United States district judges, magistrate judges and all such judges who have retired from office or from regular active service. In addition, this funding is used for the salaries and expenses of the district court support personnel, such as the administrative and legal aides required to assist the judges in conducting hearings, trials and other judicial functions. It also funds all operation and maintenance costs, such as communications, printing, contractual services, supplies, equipment, lawbooks, travel expenses incurred by judges and supporting personnel in attending sessions of court or transacting other official business, and relocation costs.

**District Clerks**

The district court clerks' offices serve a critical and integral support role in the adjudication of civil and criminal matters The clerk's office is responsible for attorney admissions, case intake, docketing of pleadings and motions, service of process, events scheduling, receipting and accounting for fees and fines collected, case tracking, provision of court reporting and court interpreting services, alternative dispute resolution programs, statistical reporting, training of attorneys on the case management system (CM/ECF) and jury management, all of which are essential elements in processing criminal cases and resolving civil cases Public and private sector entities rely on effective case processing by the clerks' offices

The proper functioning of the offices of district court clerks enhances the efficiency of the offices of the U S Attorney, U S Marshals Service, Federal Public Defender, and Probation and Pretrial Services. Other participants, including litigants, attorneys, witnesses, court reporters, court interpreters, expert witnesses, the media, and jurors are impacted by the effective operations of the clerks' offices. To enable these court participants to work together effectively, the clerk's office manages courtroom space, automation services, audio and video systems, and other administrative functions, as well as the support required in the courtroom for the proper functioning of the proceedings. The judicial system as a whole benefits from the professional management services provided by the clerk's office

**Court Interpreters**

The district courts use both staff and contract court interpreters. Staff court interpreters serve in district courts where there is a substantial need for interpreting services on a daily basis. This is particularly true in the Southwest border courts. Locating, scheduling and contracting with court interpreters is not practical in locations that have daily needs for interpreting services Spanish remains the most used language for interpreters in the courts, accounting for 96.7 percent of all reported interpreting events in fiscal year 2009. For the 12-month period ending September 30, 2009, there

were 313,969 court events that required the services of a staff or contract court interpreter During fiscal year 2009, the judiciary expended approximately $11.2 million on contract court interpreting services.

The judiciary expects this high level of interpreter usage to continue, especially due to the high volume of workload along the Southwest border and the prosecution of other immigration and terrorist related cases. At the same time, the judiciary has continued to expand the Telephone Interpreting Program, which allows interpreting for short proceedings to be provided by telephone from courts with specialized or abundant interpreting resources.

**Prisoner Case Law Clerks**

*Pro Se Law Clerks*

The objective of the pro se law clerk program is to receive, prepare, and process civil complaints filed against the government by prisoners and individuals without attorney representation. The *pro se* law clerks review complaints for procedural adequacy to permit judges to proceed with the disposition of the cases Without adequate staffing, district judges and magistrate judges will have to perform this work at the expense of other civil case work.

The number of *pro se* law clerks is determined by formulas driven by prisoner petition filings. For the 12-month period ending June 30, 2009, there were 52,237 prisoner petitions filed, a decrease of 3,137 petitions or 6 percent below 2008 levels. The judiciary projects a slight increase in 2010 prisoner petition workload.

*Death Penalty Law Clerks*

Death penalty law clerks serve both as a substantive legal resource to judges in death penalty habeas corpus matters, and as case management monitors, since capital cases are generally lengthy and involve numerous issues In March 1999, the Judicial Conference endorsed a program to provide death penalty law clerk positions on a national basis to district courts based on a ratio of one law clerk to fifteen death penalty cases In fiscal year 2010, 54 death penalty law clerk FTEs were allocated to 39 district courts. The judiciary benefits from having death penalty law clerks who are focused on the case management and CJA budgeting responsibilities of the court and assist the judges in the substantive legal research that is required in death penalty cases. Without this assistance, judges would have to spend inordinate amounts of time on this work to the detriment of addressing other cases, both civil and criminal

**Workload Trends and Resource Requirements**

The number of criminal defendants, the mix of civil cases, juror activity, and the number of authorized judges require the courts to make staffing adjustments as dictated by the staffing formulas, which are based primarily on civil and criminal cases and the number of judges supported.

**Staffing in the District Courts**

While the district courts have been focused on improving all operational areas, a critical need remains to have full staffing resources available to support the judges and case processing requirements presently in place in the courts. With the advent of the electronic case filing system, many courts are retooling their offices and changing from primarily a clerical focus to an automated and technical focus which requires the hiring and training of a professional workforce with more technical skills.

In addition, the need for the clerk's office to maintain robust information technology services will continue to grow This requirement stems from the need to meet the information demands of an increasingly sophisticated public and attorney bar and the need to automate many of the clerks' offices business functions in the areas of accounting, budgeting, case management, records management, and juror management. Sound information management systems help to ensure the courts' obligations to the public are met while streamlining business functions to keep costs under control.

Providing a sufficient number of clerks' office personnel is critical to the entire justice system. The output and efficiency of resources (judges, prosecutors, defenders, court reporters, court interpreters, jurors, and witnesses) is dependent upon the efficiency of the clerks' offices. Reductions to the district court staffing would impact all of the convergent participants in the judicial process.

### Criminal Case Filings

For the 12-month period ending June 30, 2009, criminal cases filed totaled 75,324, a 7.6 percent increase from the 2008 level. In 2010, the judiciary projects criminal filings will increase by 2.6 percent, to 77,300. See Table A-1 8 on page 1.21. The number of criminal defendants charged in 2009 totaled 95,935, an increase of 5.0 percent from the 2008 level In 2010, the judiciary projects the number of criminal defendants will increase by 0 5 percent to 96,400 Criminal case filings are influenced by the number of United States Attorneys and the emphasis on prosecution of illegal immigration, drug crimes, and violations of firearm laws. These projections may not reflect fully the workload associated with additional resources recently provided to law enforcement agencies for increased immigration enforcement.

**Southwest Border Workload Increase**

The district courts situated along the border with Mexico have experienced a tremendous increase in criminal workload since the late 1990s The districts of Texas Southern, New Mexico, California Southern, and Texas Western have experienced compounded growth rates of 37.7 percent, 22.9 percent, 40.9 percent and 38 2 percent, respectively, in the number of felony defendants from 2005 to 2009. The District of Arizona has experienced a 28.5 percent increase in felony defendants from 2008 to 2009 alone. The five courts on the southwest border have the five highest number of felony defendants per judgeship in the nation. The time-sensitive nature of criminal cases, due to statutory deadlines in the Speedy Trial Act, multiple hearings for defendants (i.e. initial appearances, arraignments, and pleas in the early stages alone), and the need for interpreter services, increases the courts' need for adequate staffing resources.

At the same time, the District of Arizona, which experienced a slight decrease of 5.4 percent in the number of felony defendants from 2005 to 2009, is dealing with a 9.2 percent increase in civil filings for the same period. While criminal cases take precedence over civil cases, the courts need adequate staffing to keep up with the civil workload, otherwise civil case processing and disposition are delayed. This delay negatively impacts litigants because it prolongs the uncertainty of a pending legal action

### Civil Case Filings

For the 12-month period ending June 30, 2009, civil case filings increased from 256,354 to 257,204 cases, a 0 3 percent gain from 2008 See Table A-1 8 on page 1 21 The judiciary projects 2010 civil case filings to increase 6 3 percent to 273,400. These projections do not take into account all future,

large-volume multi-district or class action litigation, as this type of litigation is often difficult to predict. In addition, the current financial situation may impact the civil filing volume, especially if mortgage foreclosure cases are filed in the district courts.

**Cost Containment Efforts**

The judiciary's Case Management/Electronic Case Files (CM/ECF) system, in use by all district courts, allows courts to manage documents electronically and provide 24-hour case file access to judges, court staff, and the public CM/ECF also allows attorneys and the courts to file documents over the internet. Almost 35 million cases are on the CM/ECF system and more than 500,000 attorneys and others have filed documents over the Internet. The CM/ECF system uses standard computer hardware, an Internet connection and a browser, and accepts documents in Portable Document Format (PDF). This electronic filing saves postage, paper, copying, and courier costs for attorneys and for the judiciary.

CM/ECF saves the litigants' resources, and also saves docketing and paper handling costs on the part of the district clerks. Court staff, however, have had to enhance their quality control efforts to ensure that the information entered is accurate and complete. Failure to do so in a timely manner results in parties in a case taking action based on erroneous information. Further, in response to the new system, district courts have been focused on examining their case management processes to ensure that they are operating effectively and efficiently through process redesign and methods analysis (or better practices) efforts. In addition, many courts have sought to have one or more of their operational areas reviewed by independent evaluators from other courts

With the use of the new Jury Management System web page, which will be fully deployed by March 2010, prospective jurors will have the option of completing qualification questionnaires and obtaining jury service information online 24 hours a day. Courts will save time as there will be fewer forms processed manually, less data entry and an increased level of data reliability. Many functions that require the intervention of court staff will be automated and available on line for the public, such as deferrals and certificates of attendance, thereby reducing staff time even further Courts will also save on postage costs and eliminate unnecessary delays by communicating with jurors via e-mail.

The District Methods Analysis Program identifies better practices in court operations and shares them with other courts. Court working groups have focused on various civil and criminal topics, as well as CJA voucher processing and management of multi district litigation cases. The streamlined best practices are then posted on the judiciary's intranet site for courts to review and consider adopting.

The use of the judiciary Telephone Interpreting Program (TIP) has ensured courts of the availability of federally certified or otherwise qualified interpreters for defendants in short court proceedings and has saved over $7.8 million for the judiciary in travel and other costs since the Judicial Conference approved the program in 2001. TIP allows an interpreter at a remote location to deliver simultaneous interpretation of court proceedings for defendants and consecutive interpreting by means of a two-line telephone system. TIP interpreters can be used for multiple assignments on the same day, and have significantly reduced time and travel costs. Telephone interpreters are used for a wide range of hearings, especially initial criminal matters that must occur quickly

Table A-1 8 Civil and Criminal Filings

| | | Year | Civil Filings | Percent Increase | Criminal Filings | Percent Increase |
|---|---|---|---|---|---|---|
| ACTUAL[1] | | 2001 | 253,354 | -3 7% | 63,344 | 1 3% |
| | | 2002 | 268,071 | 5 8% | 64,744 | 2 2% |
| | | 2003 | 254,499 | -5 1% | 70,890 | 9.5% |
| | | 2004 | 258,117 | 1 4% | 71,098 | 0 3% |
| | | 2005 | 282,758 | 9 5% | 69,876 | -1 7% |
| | | 2006 | 244,343 | -13 6% | 67,872 | -2.9% |
| | | 2007 | 272,067 | 11 3% | 67,674 | -0.3% |
| | | 2008 | 256,354 | -5 8% | 70,024 | 3 5% |
| | | 2009 | 257,204 | 0 3% | 75,324 | 7 6% |
| ESTIMATED[2] | | 2010 | 273,400 | 6 3% | 77,300 | 2 6% |

Table A-1 9 Components of Civil Caseload

| | Year | Social Security | Diversity | Prisoner Filings | All Other | Total |
|---|---|---|---|---|---|---|
| ACTUAL[1] | 2001 | 17,530 | 49,109 | 59,159 | 127,556 | 253,354 |
| | 2002 | 17,868 | 52,297 | 55,596 | 142,310 | 268,071 |
| | 2003 | 17,483 | 61,088 | 55,112 | 120,816 | 254,499 |
| | 2004 | 15,935 | 65,347 | 53,132 | 123,703 | 258,117 |
| | 2005 | 16,066 | 66,532 | 62,716 | 137,444 | 282,758 |
| | 2006 | 14,052 | 65,800 | 55,775 | 108,716 | 244,343 |
| | 2007 | 12,964 | 86,506 | 53,222 | 119,375 | 272,067 |
| | 2008 | 13,329 | 76,284 | 55,374 | 111,367 | 256,354 |
| | 2009 | 13,222 | 81,188 | 52,237 | 110,557 | 257,204 |
| ESTIMATED[2] | 2010 | 13,900 | 90,200 | 52,300 | 117,000 | 273,400 |

[1]Actual data for years 2001 through 2009 are based on the 12-month period ending June 30

[2]Filing estimates for the July 1, 2009 through June 30, 2010 statistical year will be updated in the spring of 2010

## Circuits and Courts of Appeals

Table A-1 10 Appellate Court Workload[1]

| | 2008 Actual | 2009 Actual | 2010 Estimate |
|---|---|---|---|
| Appeals Filings | 59,406 | 59,399 | 56,700 |

[1]For the 12-month periods ending June 30.

### Program Function Statement

Funding for the circuits and courts of appeals includes the salaries and benefits of all active United States circuit judges, and all such judges who have retired from office or from regular active service In addition, it provides for the salaries and expenses of the courts of appeals supporting personnel such as the administrative and legal aides required to assist the judges in the hearing and decision of appeals. Funding also includes all expenses of operation and maintenance such as communications, printing, contractual services, supplies, equipment, law books, travel costs incurred by judges and supporting personnel in attending sessions of court or transacting other official business, and relocation costs

**Circuit Executives**

The principal responsibility of the circuit executive's office is to act as the secretariat for the circuit's judicial council and its committees, and in some circuits, for the court of appeals and its committees. In this capacity, the circuit executives' offices participate not only in policy oversight but also assist in many areas of circuit-wide importance. These include planning for the effective and efficient use of space and facilities, information technology issues, financial management and budget decentralization, and planning and organizing the circuit's judicial conference

**Appellate Clerks**

The clerks' offices are the public business offices for the appellate courts and provide specific centralized management in case-related and logistical areas. Employees in clerks' offices perform essential functions necessary for the operation of the courts, such as:

- recording and maintaining all case filings, including public records and information needs,
- providing guidance to lawyers, litigants and the public,
- distributing case materials to judges for decision-making; and, in many offices,
- providing vital logistical support such as information technology, procurement, budget management, and personnel administration

The case-related workload of the clerks' offices can fluctuate in proportion to changes in case filings.

Case decisions in appellate courts are made either by panels of three judges or, in some instances, by an en banc court, where all the judges review the case. Appellate judges reside in cities throughout the wide geographic area of a circuit. Appellate clerks' offices are situated at the headquarters of the circuit, providing a central public business office for the judges, lawyers, litigants and the public. Clerks' offices receive case materials for filing, maintain the central files, and arrange for judges to convene in panels as necessary for case decisions Inquiries about cases, procedures, etc., are directed to the clerks' offices. Materials are assembled, as appropriate, and dispatched to judges Lawyers are advised of the schedule for decision-making. Decisions are made after oral argument

hearings or submissions on briefs that are scheduled by the clerks' offices. Decisions are filed in the clerks' offices which are then responsible for distribution of the decisions to the parties and the public, including posting on court websites. Due to the recent implementation of CM/ECF in all but a few of the courts of appeals, the official appellate case records are maintained in the CM/ECF system

**Staff Attorneys**

Staff attorneys generally perform legal research on all pro se cases, that is, cases where a party serves as his or her own counsel, most of which are filed by prisoners. In addition, they work on substantive and procedural motions, direct criminal appeals, death penalty cases, and cases that do not require oral argument. Some staff attorneys also assist the court on fully counseled cases, providing legal research assistance and presenting recommendations to the judges. Staff attorneys also write memoranda in cases addressing jurisdictional issues that result in disposition of the appeal. By drafting legal research memoranda that analyze the case issues and recommend appropriate disposition, staff attorneys assist judges in disposing of the appellate cases in a timely and efficient manner.

Statistics show that pro se cases represent 48 percent of national appellate filings In addition, all courts are finding that substantive motions are increasing at a rapid rate and require considerably closer review. Having the staff attorneys preliminarily review both pro se cases and substantive motions, as well as examine cases for jurisdictional defects, materially assists the judges and contributes to timely dispositions.

**Preargument/Conference Attorneys**

Appellate preargument/conference attorneys facilitate the disposition of cases on appeal through negotiated settlements, without appellate judicial involvement The attorneys are skilled, seasoned lawyers who perform sensitive, confidential settlement work The attorneys often are able to streamline or dispose of issues in cases not easily settled Distinct from staff attorneys, preargument/conference attorneys promote the voluntary settlement or withdrawal of appeals without court action The program results in a conservation of judicial resources and improves appellate case management.

**Librarians**

The national court library program is a network of 12 circuit headquarters libraries and 100 satellite libraries. The library program provides legal reference and research services to over 2,000 judges. Using existing resources and adapting new technologies, the library program provides all circuits with high quality research assistance and instruction to judges, law clerks, and other court personnel. In addition, the library staff manages the acquisition and development of chambers law books collections

Information is expanding exponentially, in an array of formats, including books, online databases, Internet resources, and microforms. Librarians are necessary to manage this wealth of information and media, and to disseminate the information to the courts in a meaningful manner. Collection development expertise, research skills, and knowledge of resource-sharing techniques are tools that librarians bring to this challenge

In addition to providing traditional legal research support, librarians conduct research in multiple disciplines such as science, medicine, the humanities and social sciences, or general research. Judges, law clerks, and other court staff need the information in these areas to assist their decision-making Librarians also have taken the lead in tapping the resources available on the Internet, making them available to the judiciary by designing web pages that gather Internet resources and push content directly to the users

**Bankruptcy Appellate Panel Clerks**

The Bankruptcy Reform Act of 1994 requires that each circuit establish a Bankruptcy Appellate Panel (BAP) unless the Judicial Council of the circuit finds that either there are insufficient judicial resources in the circuit, or the establishment of a BAP would result in undue delay or increased cost to parties in bankruptcy cases There are currently five BAPs nationally. A BAP is composed of bankruptcy judges within a circuit who are appointed by the circuit's Judicial Council to decide, with the consent of all parties, appeals from bankruptcy court decisions. Even where a BAP exists, bankruptcy appeals may be heard by the district court, if a party so chooses

A BAP requires a minimum of four bankruptcy judges, each from a different district, because the legislation prohibits a bankruptcy judge from hearing an appeal that originated in the district for which he or she was appointed. The BAP clerk's office has support functions and responsibilities similar to the appellate clerk's office.

**Workload Trends and Resource Requirements**

For the 12-month period ending June 30, 2009, the number of appeals filed totaled 59,399, decreasing only seven cases from the previous year but increasing 9 percent since 2000. Significant increases in appeals from 2000 to 2009 were seen in immigration cases appealed from the Department of Justice's Board of Immigration Appeals (BIA) and criminal appeals The judiciary projects the appellate caseload will decrease by 5 percent for the 12-month period ending June 30, 2010

The initial increase of immigration appeals from the BIA in 2002 was attributed to its directive to clear its backlog of cases and implement new review guidelines. While the number of BIA completions has been approaching pre-2002 levels (31,019 in 2009 vs. 25,024 in 2001), the number of BIA appeals in the federal courts is almost five times what it was in 2001 (8,389 in 2009 vs 1,777 in 2001). BIA filings have dropped since peaking in 2006, however, these cases continue to demand extensive resources and are a far greater share of total caseload in recent years. The increase was most significant in the Second and Ninth Circuits; the Second Circuit increased from 164 BIA cases in 2001 to 1,997 in 2009, and the Ninth Circuit increased from 965 cases in 2001 to 3,677 in 2009. Terminations of these appeals have not kept pace with filings, resulting in an increase in the time it takes to process all other appeals. The number of total pending appeals increased from 40,911 in 2001 to 51,733 in 2009 (an increase of 26 percent)

**Cost Containment Efforts**

The appellate court and circuit units continue to spend considerable time focused on adopting new processes, developing and sharing best practices, and using the flexibility provided under budget decentralization to invest in information technology and other solutions that save resources as well as improve quality and performance. This work has been and will continue to be important especially as the courts of appeals complete implementation of Case Management/Electronic Case Files. The first courts started to use the case management portion of the system late in calendar year 2006 All courts of appeals have implemented the system.

Nearly all courts participated in a process redesign program that provided education and assistance to court employees in reviewing current processes and redesigning them for use with a more robust case management system. Courts also have been utilizing workforce restructuring options to re-shape, de-layer or re-tool the workforce in preparation for the implementation of CM/ECF.

The CM/ECF system replaces the 20 year old legacy system and requires a careful review of the case management processes and staff functions.  While workload will initially increase as the new system is implemented, the judiciary anticipates that efficiencies achieved in the long term will somewhat offset this resource drain in the short term.  The appellate courts plan to take full advantage of the opportunities that will be provided by CM/ECF's electronic case filing features   The first appellate court to implement electronic filing by attorneys started in June 2007.  By the end of fiscal year 2009, nine courts of appeals accept electronic filings by attorneys and pro se litigants   Resource-intensive efforts to conduct quality controls checks on attorney filings and to prepare and transmit briefs and lower court record materials to court of appeals judges still must evolve in light of the availability of electronic case files

COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES
***Defender Services***
SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | |
|---|---|
| **Fiscal Year 2010 Appropriation** | **$977,748,000** |
| **Fiscal Year 2011 Appropriation Request** | **$1,081,195,000** |
| **Requested Increase from Fiscal Year 2010 Appropriation** | **$103,447,000** |

**APPROPRIATION LANGUAGE**

**COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES**

**DEFENDER SERVICES**

For the operation of Federal Defender organizations, the compensation and reimbursement of expenses of attorneys appointed to represent persons under 18 U S.C. 3006A, and also under 18 U.S.C. 3599, in cases in which a defendant is charged with a crime that may be punishable by death; the compensation and reimbursement of expenses of persons furnishing investigative, expert, and other services under 18 U.S.C 3006A(e), and also under 18 U.S.C 3599(f) and (g)(2), in cases in which a defendant is charged with a crime that may be punishable by death, the compensation (in accordance with the maximums under 18 U S C 3006A) and reimbursement of expenses of attorneys appointed to assist the court in criminal cases where the defendant has waived representation by counsel; the compensation and reimbursement of travel expenses of guardians ad litem, *appointed under 18 U.S.C 4100(b)*, acting on behalf of financially eligible minor or incompetent offenders in connection with transfers from the United States to foreign countries with which the United States has a treaty for the execution of penal sentences *(18 U S C 4109(b))*, the compensation and reimbursement of expenses of attorneys appointed to represent jurors in civil actions for the protection of their employment, as authorized by 28 U S C 1875(d)*(1)*; the compensation and reimbursement of expenses of attorneys appointed under 18 U S C 983 (b)(1) in connection with certain judicial civil forfeiture proceedings, and for necessary training and general administrative expenses, [$977,748,000] *$1,081,195,000*, to remain available until expended

**SUMMARY OF REQUEST**
**DEFENDER SERVICES**
**FISCAL YEAR 2011**
**(Dollar amounts in thousands)**

## Fiscal Year 2011 Resource Requirements:

| Page No. | | FTEs | Amount |
|---|---|---|---|
| | **Fiscal Year 2010 Available Resources** | **2,736** | **$984,113** |
| | Less unencumbered carryforward from fiscal year 2009 into fiscal year 2010 | .. | (5,752) |
| | Less encumbered carryforward from fiscal year 2009 into fiscal year 2010 | ... | (613) |
| | **Fiscal Year 2010 Base Appropriation** | **2,736** | **977,748** |
| | **Adjustments to Base to Maintain Current Services** | | |
| | **A. Pay and Benefit Adjustments** | | |
| 6.19 | 1. Annualization of January 2010 pay adjustments | | |
| 6 19 | a. Federal pay adjustment (2.0% for three months) | .. | 2,194 |
| 6.19 | b. Panel attorney capital rate adjustment (from $175 to $178 for 6 months) | .. | 367 |
| 6 19 | c. Panel attorney non-capital rate adjustment (from $110 to $125 for 9 months) | . | 32,344 |
| 6 20 | 2 Proposed January 2011 pay adjustments | | |
| 6.20 | a. Federal pay adjustment (1.4% for nine months) | .. | 4,584 |
| 6 20 | b. Panel attorney capital rate adjustment (from $178 to $179, effective January 1, 2011) | | 122 |

| Page No. | | | FTEs | Amount |
|---|---|---|---|---|
| 6 20 | | c. Panel attorney non-capital rate adjustment (from $125 to $126, effective January 1, 2011) | | 318 |
| 6 20 | 3. | Promotions and within-grade increases | .. | 3,279 |
| 6 20 | 4 | Health benefit increase | | 1,853 |
| 6.21 | 5. | FERS increase | . | 1,272 |
| 6.21 | 6 | Annualization of new fiscal year 2010 staff | 52 | 8,696 |
| 6.21 | 7. | Annualization of new reimbursable fiscal year 2010 staff | 2 | 214 |
| | | **B. Other Adjustments** | | |
| 6.21 | 8. | Inflationary adjustments | . | 1,689 |
| 6 22 | 9 | Inflationary increase in space rental costs | .. | 1,174 |
| 6 22 | 10 | Increases in caseload, case complexity and change in caseload mix | | |
| 6 22 | | a. Non-capital cases | 38 | 18,489 |
| 6.23 | | b Capital cases | 21 | 10,109 |
| 6.23 | | c. High threat trials | ... | 15,600 |
| 6 23 | 11 | Decrease in appropriation to fund base requirements due to an increase in non-appropriated sources of funds | | (3,633) |
| 6 24 | 12. | Non-recurring costs | - | (300) |
| | | **Subtotal, Adjustments to Base to Maintain Current Services** | **113** | **98,371** |
| | | **Total Current Services Appropriation Required** | **2,849** | **1,076,119** |

| Page No. | | FTEs | Amount |
|---|---|---|---|
| | **C. Program Increases** | | |
| 6.24 | 13. Increase in panel attorney non-capital rate from $126 to $141 per hour (effective January 1, 2011) | .. | 4,776 |
| 6.24 | 14 Establishment of a new federal defender organization | ... | 300 |
| | **Subtotal, Program Increases** | **0** | **5,076** |
| | **Total Fiscal Year 2011 Appropriation Required** | **2,849** | **1,081,195** |
| | **Total Appropriation Increase, Fiscal Year 2010 to Fiscal Year 2011** | **113** | **103,447** |
| | **Financing the Fiscal Year 2011 Request:** | | |
| | **Total Appropriation Required** | **2,849** | **1,081,195** |
| 6.24 | 15. Anticipated carryforward from fiscal year 2010 into fiscal year 2011 | ... | 10,000 |
| | **Estimated Obligations, Fiscal Year 2011** | **2,849** | **1,091,195** |

**COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES**
**DEFENDER SERVICES**
**Obligations by Activity**
**($000)**

| Activity | FY 2009 Actual | FY 2010 Estimate | FY 2011 Request |
|---|---|---|---|
| **CJA Representations & Related Expenses** | **889,630** | **975,449** | **1,082,160** |
| **Program Administration** | **6,933** | **8,664** | **9,035** |
| Total Obligations | 896,563 | 984,113 | 1,091,195 |
| Anticipated Financial Plan Savings | | (10,000) | - |
| **Revised Obligations** | **896,563** | **974,113** | **1,091,195** |
| Unobligated Balance, Start of Year | (48,811) | (6,365) | (10,000) |
| Prior Year Recoveries | (4,717) | - | - |
| Unobligated Balance, End of Year | 6,365 | 10,000 | - |
| **Available Appropriation** | **849,400** | **977,748** | **1,081,195** |

**COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES**
**DEFENDER SERVICES**

**Obligations by Budget Object Class ($000)**

| Description | FY 2009 Actual | FY 2010 Estimate | FY 2011 Request |
|---|---|---|---|
| 1100 Personnel compensation | 258,746 | 285,704 | 304,040 |
| 1200 Personnel benefits | 74,031 | 81,039 | 88,443 |
| 1300 Benefits for former personnel | 51 | 117 | 125 |
| 2100 Travel | 10,225 | 11,603 | 11,893 |
| 2200 Transportation of Things | 349 | 447 | 453 |
| 2310 Rental payments to GSA | 34,095 | 37,129 | 39,402 |
| 2320 Rental payments to others | 290 | 353 | 362 |
| 2300 Communications, utilities & misc | 5,977 | 6,570 | 6,650 |
| 2400 Printing and reproduction | 329 | 501 | 507 |
| 2500 Other services | 383,351 | 419,048 | 488,514 |
| 2600 Supplies and materials | 1,893 | 2,200 | 2,225 |
| 3100 Equipment | 7,143 | 8,939 | 9,037 |
| 4100 Grant Payments (to Community Defender Organizations) | 120,083 | - 130,463 | 139,544 |
| Total Obligations | 896,563 | 984,113 | 1,091,195 |
| Anticipated Financial Plan Savings | - | (10,000) | - |
| **Revised Obligations** | **896,563** | **974,113** | **1,091,195** |

**Full Time Equivalents (FTEs) by Activity**

| Activity | FY 2009 Actual | FY 2010 Estimate | FY 2011 Request |
|---|---|---|---|
| **CJA Representations & Related Expenses**[1] | **2,542** | **2,704** | **2,816** |
| **Program Administration** | **26** | **32** | **33** |
| **Total, FTEs** | **2,568** | **2,736** | **2,849** |

[1]The FTEs listed are attributable to Federal Public Defender Organization staff

**COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES**
**DEFENDER SERVICES**
**Relation of Obligations to Outlays ($000)**

| | FY 2009 Actual | FY 2010 Estimate | FY 2011 Request | Difference |
|---|---|---|---|---|
| Total Obligations | 896,563 | 974,113 | 1,091,195 | 117,082 |
| Obligated balance, start of year | 31,724 | 35,045 | 21,012 | (14,033) |
| Obligated balance, end of year | (35,045) | (21,012) | (34,000) | (12,988) |
| Recoveries of prior year unpaid obligations | (4,717) | - | - | - |
| **Net Outlays** | **888,525** | **988,146** | **1,078,207** | **90,061** |

## GENERAL STATEMENT AND INFORMATION

Funds appropriated for the Defender Services account support the appointment of counsel as well as costs of expert, investigative, and other services necessary to defend financially eligible persons, which the judiciary is required to provide by the United States Constitution, the Criminal Justice Act (CJA), 18 U.S.C. § 3006A, and other related statutes. The fiscal year 2011 request for appropriated funds is $1,081.2 million, an increase of $103.4 million (10.6 percent) over the fiscal year 2010 appropriation of $977.7 million.

## MISSION AND GOALS OF THE DEFENDER SERVICES PROGRAM

The right to the effective assistance of counsel is a constitutionally mandated, critical component of the criminal justice system and the foundation upon which the liberty of all Americans stands. As the United States Supreme Court wrote in *Gideon v Wainwright 372 U S. 335, (1963)*, "The right of one charged with a crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours." It is the mission of the defender services program to ensure that the Sixth Amendment right to counsel is enforced on behalf of those who cannot afford to retain counsel and other necessary defense services. By fulfilling its mission, the defender services program helps to maintain public confidence in the nation's commitment to equal justice under the law, and to ensure the successful operation of the constitutionally-based, adversarial system of justice through which both federal criminal laws and federally guaranteed rights are enforced.

The four overarching goals of the defender services program, necessary to accomplish its mission successfully, are to:
(1) provide assigned counsel services to all eligible persons in a timely manner; (2) provide appointed counsel services that are consistent with the best practices of the legal profession;
(3) provide cost-effective services; and (4) protect the independence of the defense function performed by assigned counsel so that the rights of individual defendants are safeguarded and enforced.

## TYPES OF COUNSEL: Federal Defenders and Private Attorneys

The CJA authorizes the appointment of counsel who are either attorneys employed by a federal defender organization (FDO), or private "panel" attorneys, for persons financially unable to obtain their own representation in federal criminal cases. This ensures a robust defense system that involves both public and private attorneys. The CJA specifies that in all judicial districts (including those served by an FDO) private attorneys shall be appointed "in a substantial proportion of the cases." 18 U.S.C. § 3006A(a)(3). Indeed, even in the 90 (of 94) judicial districts in which an FDO has been established, representation by panel attorneys is critical. Legal ethics standards prohibit appointing FDOs in conflict of interest situations (*e g.*, where an FDO is precluded from representing more than one co-defendant in a multi-defendant case, or is disqualified from accepting a new appointment that could conflict with the interests of previously

represented clients) Additionally, federal defenders are not available in the four districts where FDOs have not yet been established (Alabama-Northern, Georgia-Southern, Kentucky-Eastern, and Northern Mariana Islands). Thus, in situations where federal defenders are unavailable due to FDO conflicts or workload or in the districts not served by an FDO, panel attorneys must be available for appointments.

Federal Defender Organizations

The CJA authorizes two types of FDOs: (1) federal public defender organizations, which are federal government offices, and (2) community defender organizations, which are private, state-chartered, non-profit corporations funded by annual federal grants. An FDO may be established in any district (or combination of adjacent districts) in which at least 200 appointments are made annually There are currently 79 FDOs serving 90 of the 94 judicial districts. For fiscal year 2011, the judiciary projects that federal defenders will be appointed in approximately 124,200 cases (59 percent of the total projected CJA caseload).

FDOs are the mainstay of the defender services program, delivering consistently high-quality representation at below market rates, and providing critical training and other support services to panel attorneys. They are able to attract, train, and retain highly skilled lawyers. Federal criminal practice today is highly specialized and complex. FDOs are able to provide cost-effective defense services, consistent with the best practices of the legal profession, because of the expertise and efficiencies they have developed as law offices focused solely on federal criminal practice FDO staff also reduce costs and improve the overall quality of CJA representation within the district they serve by providing expert advice, training, and other support to panel attorneys in complex legal and technical areas such as sentencing, litigation support, and issues involving death penalty cases. FDOs also make optimal use of national resources by sharing their expertise and best practices with other FDOs

FDO attorneys are available for appointments on short notice, ensuring that the rights of the accused are protected, and that the operations of the courts are not disrupted. For example, in response to a professional survey conducted in December 2008, 98 percent of the district and magistrate judges responding reported that they are able to find a federal defender to accept a CJA appointment in a non-capital case on the same day or within one day.

Panel Attorneys

A "panel" attorney is a private attorney who serves on a panel of attorneys maintained by the district or appellate court and is assigned by the court to represent financially-eligible defendants in accordance with the CJA. Nationally, over 90 percent of CJA panel attorneys are in small law firms (with six or fewer lawyers), and 61 percent are sole practitioners. The CJA provides that these attorneys shall be reimbursed for their expenses and paid statutorily authorized hourly rates for their services, subject to congressional funding.

In fiscal year 2010, panel attorneys are compensated at an hourly rate of $125 for non-capital cases and up to $178 an hour for capital cases for work performed on or after January 1, 2010. For fiscal year 2011, the judiciary projects that panel attorneys will be appointed in approximately 86,700 cases (41 percent of the total projected CJA caseload). Currently, ensuring the availability of enough qualified panel attorneys, willing to accept CJA appointments, is a major challenge for the defender services program. While the services of panel attorneys are an essential component of the federal criminal justice system, the quality of the representation has not been as uniformly high as that provided by FDOs.

Training

The defender services program provides training to panel attorneys as part of its ongoing efforts to reduce the disparity between the quality of representation provided by federal defenders and panel attorneys In fiscal year 2009, the judiciary sponsored over 30 national, regional, and local panel attorney programs, attended by over 2,000 private lawyers. The curricula were designed to reach attorneys with varying levels of experience and included substantive and procedural legal issues, as well as the hands-on practice of skills, such as sentencing advocacy and the use of technology in the courtroom. Evaluations for the events were uniformly excellent, and panel attorneys indicate that the training has had a positive impact on the quality of panel attorney practice. In addition, FDOs sponsored hundreds of local training programs for their CJA panels Training opportunities and substantive materials are also accessible to panel attorneys on a defender services-sponsored website. Despite these efforts, more training is needed to meet the needs of the approximately 13,000 panel attorneys participating in CJA cases each year

In February 2009, the surveys conducted of over 1,000 individual panel attorneys also asked about their training needs, including questions about the quality, accessibility, and scope of the national and local training programs funded by the defender services appropriation It is clear from the results of the recent surveys of panel attorneys and judges that additional training for federal defender staff and panel attorneys is needed and desired The following additional training for federal defender staff and panel attorneys is planned for fiscal year 2010: a Sentencing Advocacy Skills Workshop, a Federal CJA Trial Skills Academy, and a Non-Capital Sentencing Mitigation Seminar. For fiscal year 2011, an additional training, Persuasive Writing Workshop, is planned for CJA panel attorneys.

## PANEL ATTORNEY RATES

The CJA authorized the Judicial Conference to implement annual cost-of-living adjustments (COLAs) for panel attorney rates If the COLAs had been provided annually, the rate would have reached $137 in fiscal year 2009, based upon OMB-projected inflationary adjustments, $139 in fiscal year 2010, and $141 in fiscal year 2011. Congress has responded to earlier Judicial Conference requests by funding a panel attorney rate of $125 per hour in fiscal year 2010. While that increase is very much appreciated, particularly because of the limited funding Congress has available to meet the nation's needs, the judiciary believes an increase to the statutory maximum in

fiscal year 2011 is necessary to ensure that persons represented by panel attorneys are afforded their constitutionally mandated right to effective assistance of counsel.

Based on the results of professional, nationwide surveys of federal judges and panel attorneys (conducted in December 2008 and February 2009), the increase is necessary to enable the courts to recruit and retain a sufficient number of qualified counsel to accept appointments in non-capital criminal cases, and to provide CJA panel attorneys a fair rate of compensation for their services. These surveys provide data on various key factors, including: (1) continuing court difficulties that persist in finding enough available, qualified panel attorneys, and (2) updated panel attorney hourly overhead costs.

Survey Results

The survey conducted in December 2008 and February 2009 indicated some improvement since the previous professional survey of judges in December 2004. In 2008, 67 percent of the judges responding indicated that the non-capital panel rate increases since January 1, 2006[1] had positively impacted their court's ability to identify an adequate number of qualified and experienced panel attorneys to accept non-capital cases. Nevertheless, the judges responding in December 2008 indicated that significant difficulties persist. Almost half of the judges reported that their courts are *currently* experiencing difficulty (to "some, a moderate, or a great" extent) in "identifying enough qualified and experienced panel attorneys to accept appointments in non-capital cases." Similarly, 50 percent indicated that their courts are having difficulty "with appointing attorneys with the necessary qualifications and experience required given the complexity" of the non-capital cases.

In December 2008, the judges surveyed rated CJA panel attorney performance substantially lower than that of federal defenders. While 95 percent of all the circuit, district, and magistrate judges responding to the survey evaluated the overall quality of representation provided by federal defenders to be "very good or excellent," only three-fourths (76 percent) rated panel attorneys at that level.

Of the individual panel attorneys responding in February 2009, 58 percent indicated that the rate increases since January 1, 2006 had positively affected their willingness to accept non-capital CJA cases. Nevertheless, 30 percent reported that they had declined to accept a non-capital appointment over the preceding three years.

The survey data also show that a substantial rate increase in 2011 can be expected to have a positive impact on panel attorney availability. Approximately 70 percent of the panel attorneys indicated that an increase in the hourly rate (then $100) would be needed for them to accept more non-capital

[1] One-year COLAs were funded in fiscal years 2006 and 2007 (from $90 to $92, effective January 1, 2006, and from $92 to $94, effective May 20, 2007); and a somewhat larger increase was implemented in fiscal year 2008 (from $94 to $100, effective January 1, 2008) The 2008/2009 surveys were completed before the rate rose to $110 on March 11, 2009.

CJA appointments. Of those respondents needing an increase, only 25 percent would accept more cases at $110, the rate which was implemented in fiscal year 2009 after the survey was completed.

The survey data collected from individual panel attorneys in February 2009 established a $70 average estimated hourly overhead cost. After deducting this cost, panel attorneys would net an average of $55 per hour (at the $125 rate, effective on January 1, 2010) for their work in a non-capital CJA case. In comparison, the Department of Justice (DOJ) pays private attorneys with five or more years of experience $200 per hour to represent current or former federal employees.

The February 2009 surveys also show that panel attorneys earn a national average estimated hourly fee of $246 for their retained (non-capital) criminal cases. Therefore, each time a panel attorney takes a CJA case, there is a substantial opportunity cost involved.

Panel Rate Increase Request

The judiciary requests a rate increase to the inflation-adjusted statutory rate in order to achieve a fair rate, and assure that a sufficient number of qualified panel attorneys are available to the courts. The aggregate increases funded since 1986 in the hourly non-capital CJA rate to date will not be enough to significantly increase the willingness of qualified panel attorneys to accept more non-capital cases. The current national average CJA panel attorney hourly net pre-tax compensation rate of $55 is less than one-third the average retained counsel gross hourly fee for non-CJA, non-capital criminal cases (as of mid-February 2009).

The judiciary is aware of the many competing demands on federal funding that Congress must address, and that in the current climate, where many are unemployed and the federal deficit is high, hard decisions have to be made. The judiciary greatly appreciates the steps Congress has taken to ensure that the judiciary is adequately funded. The obligation of the federal government to provide counsel to those whom it elects to prosecute, however, is not changed despite the reality of a troubled national economy. The judiciary is only seeking funding for and permission to implement a panel rate that it believes is necessary to meet its statutory and constitutional obligations. This is critical in order for the judiciary to ensure that persons who cannot afford to retain their own counsel and are therefore represented by panel attorneys are afforded their constitutionally guaranteed right to *effective* assistance of counsel, even in times of limited resources.

If the non-capital rate is not increased to $141 in fiscal year 2011, there could be a significant impact on the administration of criminal justice in the federal courts and adverse consequences (in varying degrees, nation-wide) might occur. Panel attorneys can be expected to make appointed work a decreasing part of their practice. As their federal criminal practice declines, so will their expertise, which is best maintained by using it regularly. At the same time, there will be less economic incentive for attorneys to invest the time and resources into maintaining and developing their expertise by keeping up with the latest developments and attending training programs.

The difficulties that courts have been experiencing in finding a sufficient number of qualified panel attorneys willing to accept non-capital appointments may be exacerbated, as more attorneys decline to accept CJA cases (especially multi-defendant, extended, or otherwise complex representations) or resign from the panel because they cannot afford to continue to absorb the financial outcomes associated with a low hourly rate. As it becomes more difficult to find qualified panel attorneys willing to accept non-capital cases, judges and court staff will expend more time trying to secure them; this is likely to complicate and/or delay court proceedings and will consume time judges and staff could use to attend to other matters. As the number of experienced attorneys declines, courts will be forced to make appointments to inexperienced or otherwise less-qualified attorneys. This can be expected to widen the quality gap between the services provided to defendants represented by federal defenders and those assigned to panel attorneys, and increase the likelihood that some defendants will receive ineffective assistance of counsel.

The data show that the unavailability of a sufficient number of qualified panel attorneys is directly related to the hourly rate. The economic reality is that the non-capital rate impacts the quality of representation provided to CJA defendants, who often face the possibility of lengthy incarceration, require the assistance of an experienced, capable defense attorney, and must rely on the judiciary to appoint counsel for them because they cannot afford to retain their own lawyer.

**INCREASING CASE COMPLEXITY**

Even when the total number of CJA representations does not increase, the judiciary often must request additional funding and resources because of changes in case complexity. Case complexity can take the form of a particular representation, such as that associated with a securities fraud case with 100 witnesses and thousands of documents; or a change in the organization's case mix. For example, a caseload consisting mainly of relatively straightforward firearms representations may be less complex than one with a heavy component of document- and investigation-intensive cases. In addition, developments such as the U.S. Supreme Court's decision in *United States v. Booker, 543 U.S. 220 (2005)* and subsequent cases interpreting it have affected -- and will continue to affect -- defender services resource requirements as case law develops over time regarding the scope and detail of client-specific information defense counsel must present to a sentencing court.

As the amount of data associated with CJA representations grows in size and complexity year after year, CJA attorneys -- both FDO staff and private "panel" attorneys – require new tools to help them organize, review, and present the large amounts of information provided by the prosecution as discovery material. Paper documents must be scanned and analog recordings must be digitized. This is especially true for cases with hundreds of thousands or millions of pages of information. Evidence encompasses not only the discovery produced by the government, but materials gathered by third parties and the defendant. As the DOJ expands its litigation support capability, federal defenders and panel attorneys must

respond with significant litigation resources, including additional national support staff, in these technologically complex areas The judiciary foresees that the number of these types of cases will continue to grow, making it vital that defender services address this issue as part of its commitment to provide services consistent with the best practices of the legal profession.

Terrorism-Related and Other High Profile Cases
Federal defenders have been appointed to an increasing number of terrorism cases, which usually require extraordinary resources, including in many instances the full-time effort of one or more assistant federal defenders and an increased use of investigators, paralegals and research and writing specialists. Additionally, these representations require expert services and information technology specialists Since they often involve clients who do not speak English, counsel must engage interpreters to communicate with clients and witnesses. The cases often require translators to review foreign language discovery, to listen to audio recordings (sometimes involving years of surveillance), to transcribe the recordings, and to translate them into English. Foreign travel for investigation is often necessary. Because the penalties for a conviction are significant, these cases generally go through the full stages of litigation and appeals. Due to the national security aspect of a terrorism charge, the defense team typically is required to obtain security clearances in order to access classified materials, which tends to increase both the cost and time expended compared to cases that do not require security clearances.

FDOs have been appointed in approximately 55 representations involving detainees at Guantanamo Bay, Cuba. Prisoner filings have been consolidated in the U S. District Court for the District of Columbia, and are being addressed as habeas corpus petitions. In January 2009, the President issued an executive order to close detention facilities at Guantanamo within one year. Currently, a task force established by the President is reviewing the detainees' circumstances to decide whether to prosecute or transfer them to foreign countries It is unknown at this time how many cases the government will prosecute in the United States. Like terrorism cases described above, these prosecutions will also require significant resources associated with translation, foreign travel, and the review of classified information. The judiciary anticipates that teams of attorneys and investigators will be needed.

Adam Walsh Child Protection and Safety Act
Partially as a result of long mandatory minimum sentences under the Adam Walsh Child Protection and Safety Act of 2006, child sexual abuse and child pornography cases are more likely than the majority of representations to be litigated than resolved through a plea agreement. As a result, these cases require more attorney, investigator, and staff time. The evidence in the pornography cases is often electronic, requiring software, hardware, and expert review and testimony. It is also common practice to obtain a psychological evaluation of the client and to testify as to the results. Additionally, the defense team must review all image evidence at the law enforcement agency, requiring considerable travel time for defense counsel and investigators. Between fiscal year 2005 (prior to enactment of the Adam Walsh Act) and fiscal year 2009, there was a 78 percent increase in CJA sex offense representations.

*United States v. Booker* and Related Cases

Federal defenders continue to report that defense counsel obligations related to the Supreme Court's *Booker* decision, and the subsequent cases interpreting it, are adding to the amount of resources required in almost every case. Since the Sentencing Guidelines have become advisory, each court now uses its discretion -- instead of a mathematical calculation -- to consider a wide range of statutory factors, including the history and characteristics of the defendant and the nature and circumstances of the offense, in order to impose the proper sentence. To assist the judge in determining a sentence, defenders must prepare a sentencing memorandum based upon an investigation of the background of the client and the facts underlying the offense, and then prepare a sentencing memorandum for the court to consider. Plea negotiations are now less likely to include an agreement between the parties on a guideline sentence. In such cases, attorneys must present mitigating evidence and testimony in full sentencing hearings. As a result of these changes, FDO-reported sentencing hours increased 23 percent between fiscal year 2006 and fiscal year 2009. Additionally, there has been a rise in appeals regarding the sufficiency and reasonableness of the sentences imposed by the district judge. These appeals will be a permanent component of the federal sentencing landscape.

Financial Fraud Cases

Complex financial fraud cases are increasing and are expected to impact the resources of FDOs and other appointed counsel further. These cases include mortgage fraud, securities fraud, health care fraud, bank fraud, and conspiracy. As an example, the Executive Office for United States Attorneys notified the Office of Defender Services that mortgage fraud defendants increased 127 percent from fiscal year 2008 to 2009, growing from 216 to 492. Financial fraud cases present a host of new evidentiary and discovery management challenges for appointed counsel. In the District of Nevada alone, there are five large, white-collar prosecutions alleging sophisticated schemes to defraud. All of the cases involve more than 200,000 pages of discovery. One case is expected to grow to more than 1,500,000 pages before trial begins. These cases require the defense team to organize and review massive amounts of data that are produced in a variety of formats, including electronic. Extensive defense investigation often includes retaining a forensic accountant, and utilizing investigators and paralegals.

## COST CONTAINMENT INITIATIVES

Cost Effective Services

The judiciary continues to engage in responsible long-range planning efforts to provide for accountability without compromising the defender services program's constitutionally mandated mission. This includes pursuing initiatives to improve the quality of representation, effecting cost containment to slow growth where possible, and continuing its evaluations of program performance.

The judiciary is conscious of the budget challenges facing our nation and recognizes the need to pursue responsible cost-containment measures for the defender services program. Such ongoing cost-containment initiatives include (1) promoting the use of case budgeting, to limit costs of capital

and other high-cost CJA panel attorney representations, consistent with the best practices of the legal profession; (2) designing FDO case weights to assist in projecting FDO resource requirements; and (3) capitalizing on the cost benefits of technology by reducing FDO law library expenses. The judiciary is also pursuing other opportunities, in collaboration with DOJ, to reduce the costs of federal defender and panel attorney representations, associated with matters of discovery, the death penalty authorization process, and the placement of pretrial detainees in remote facilities.

Case Budgeting of CJA Panel Attorney Representations

In fiscal year 2009, the costs of 1.6 percent of panel attorney cases exceeded $30,000 and accounted for 28 percent ($99.2 million) of the annual expenditures for all panel attorney representations. The judiciary continues to promote the use of case-budgeting techniques for these representations, nationwide. In addition, the Second, Sixth, and Ninth Circuits are participating in a case-budgeting pilot project that is designed to help ensure that, in all capital and other high-cost panel attorney cases, the costs of representation are anticipated, substantiated, monitored, and, where appropriate, limited before they are incurred. The focus is on identifying high-cost drivers, continuing to develop budgeting strategies, and working with judges and attorneys on specific cost issues. The Federal Judicial Center (FJC) will lead an evaluation of the pilot project to determine its impact on case management and cost control. The evaluation is expected to be completed in 2011. The FJC has also produced a video to assist judges in budgeting for high-cost panel attorney cases.

Improving FDO Resource Management by Developing FDO Case Weights

Several factors determine the amount of funding an FDO requires to provide quality CJA representation, including the number of cases, type of cases, and case specific complexities. Currently, the judiciary uses the total number of representations an FDO closes in a fiscal year to project workload. This approach does not take into account the varying levels of time it takes to defend different types of offenses. For example, the typical immigration case takes far less time than a typical firearms case, but it is not known what the ratio is between those two times. The judiciary is developing case-weights to analyze the extent to which the amount of time an attorney spends on a representation is solely a function of the primary offense charged. The judiciary anticipates that such a case-weighting system would help it project future requirements, manage current FDO allocations, and explain prior-year costs. A contract to develop a case weighting tool was awarded in September 2008. The contractor has collected data necessary to weight cases based on the average amount of time required for each type of case, and is analyzing the impact of other factors, such as size of judicial district, that could cause variations from the average. The final report is expected before the end of fiscal year 2010.

Capturing FDO Electronic Law Library Savings

FDOs continue to review the need for, and to eliminate, some non-electronic law books. As a result of advancing technology and increased emphasis on expanding FDO use of electronic law library resources, inflation-adjusted law book expenditures

have decreased from $3.5 million to $1.9 million (from fiscal year 2002 to fiscal year 2009); even though the number of FDOs has risen from 72 to 79 and total FDO attorney staff has increased from 996 to 1,298.

Discovery Costs

Defender Services program costs are driven, in large part, by DOJ law enforcement, prosecutorial, and other related decisions. In several major areas, the judiciary is pursuing potential cost-containment opportunities that require DOJ involvement to be fully successful.

The judiciary is working to decrease unnecessary discovery expenditures by pursuing collaborative solutions with the DOJ, at both the national and local levels. The judiciary hopes to build on the work of the Administrative Office/DOJ Joint Working Group on Electronic Technology in the Criminal Justice System, which developed a protocol for the formation of local working groups to facilitate local efforts at containing discovery costs. In April 2007, a memorandum was distributed to all federal circuit and district chief judges, and provides a starting point for local stakeholders to develop cost-effective approaches to discovery.

Remote Detention

The judiciary remains concerned about increased costs caused by the remote placement of detention facilities used for federal defendants. CJA panel attorneys and federal defenders must meet with their clients in person to provide effective representation. When they must travel long distances to do so, substantial additional costs are necessarily incurred. In July 2008, an ad hoc remote detention working group was formed with judiciary and DOJ stakeholders, including the Federal Detention Trustee (FDT) and representatives from the U.S Marshals Service and Bureau of Prisons, to discuss strategies for addressing these and other issues associated with the remote detention of pretrial defendants. In October 2008, the Administrative Office distributed a survey, developed by the ad hoc working group, to chief judges and other district stakeholders, to assess the severity of the remote detention problems in their respective jurisdictions. The ad hoc group met to review the survey results, discuss possible solutions, and assist the FDT in creating content for a website that would give each district access to its respective detention data and survey results, a list of recommended actions tailored to its level of remote detention difficulty, and useful national detention information. The website became accessible in the summer of 2009. The judiciary looks forward to continuing such collaborative efforts to conserve limited national resources, consistent with providing high-quality representation to CJA defendants.

Improvement in DOJ Procedures for Decision Process Involving Death-Eligible Cases

Over the past several years, the Administrative Office has pursued discussions with DOJ about streamlining its "fast-track" protocol for evaluating and making decisions not to seek the death penalty. Until the DOJ announces otherwise, defense counsel in death-eligible cases must assume that the death penalty will be pursued. The purpose of making process changes in this area is to avoid costs that are a function of a case being death-eligible where it is highly unlikely that the

DOJ will seek the death penalty. A positive development from these meetings was the creation of a new CJA guideline, jointly developed with DOJ staff, which was approved by the Judicial Conference in September 2007, that encourages courts to set reasonable deadlines for stages of the death penalty authorization process (subject to extension for good cause). The judiciary continues to discuss with the DOJ ways in which it can reduce the amount of time it takes for it to decide *not* to seek the death penalty.

## JUSTIFICATION OF CHANGES

The fiscal year 2011 request for appropriated funds is $1,081.2 million, an increase of $103.4 million (10.6 percent) over the fiscal year 2010 enacted appropriation of $977.7 million. Of this increase, $98.3 million is requested for adjustments to base. A total of $5.1 million is requested for program increases, including $4.8 million for an increase in the panel attorney non-capital rate from $126 per hour to $141 per hour, and $300,000 for one new FDO.

## ADJUSTMENTS TO BASE

The following narrative provides information and justification for each of the adjustments to base for this account.

### A. PAY AND BENEFIT ADJUSTMENTS

*1. Annualization of January 2010 pay adjustments*

**a. Federal ECI pay adjustment**

**Requested Increase: $2,194,000**

As a result of nationwide ECI and locality pay adjustments, federal pay rates increased by an average of 2.0 percent in January 2010. The requested increase annualizes this pay adjustment for the first three months of fiscal year 2011.

**b. Panel attorney capital ECI rate adjustment**

**Requested Increase: $367,000**

The requested funding annualizes the fiscal year 2010 panel attorney capital rate cost-of-living increase of 1.5 percent (from $175 per hour to $178 per hour). A rate increase to the capital hourly rate, effective on January 1, 2010, is expected to have six months of costs in fiscal year 2010. The requested increase annualizes this rate increase for the first six months of fiscal year 2011.

**c. Panel attorney non-capital ECI rate adjustment**

**Requested Increase: $32,344,000**

The requested increase annualizes the fiscal year 2010 panel attorney non-capital rate increase (from $110 per hour to $125 per hour). A rate increase to the non-capital hourly rate, effective on January 1, 2010 is expected to have only three months of costs in fiscal year 2010. The requested increase provides for the remaining cost of nine months not included in the fiscal year 2010 base.

*2. Proposed January 2011 pay adjustments*

**a. Federal ECI pay adjustment**

**Requested Increase: $4,584,000**

The Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.4 percent beginning on or after January 1, 2011. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2011.

**b. Panel attorney capital ECI rate adjustment**

**Requested Increase: $122,000**

The requested funding would increase the capital panel attorney hourly rate by an assumed ECI adjustment of 0.9 percent (1.4 percent requested for federal employees less an assumed 0.5 percent federal locality adjustment). This would increase the hourly rate from $178 to an estimated $179, effective January 1, 2011. The requested increase provides for the cost of six months of the rate increase in fiscal year 2011.

**c. Panel attorney non-capital ECI rate adjustment**

**Requested Increase: $318,000**

The requested funding would increase the non-capital panel attorney hourly rate by an assumed ECI adjustment of 0.9 percent (1.4 percent requested for federal employees less an assumed 0.5 percent federal locality adjustment) requested for federal employees. This would increase the hourly rate from $125 to an estimated $126, effective January 1, 2011. The requested increase provides for the cost of three months of the adjustment in fiscal year 2011.

***3. Promotions and within-grade increases***

**Requested Increase: $3,279,000**

The requested increase provides for promotions and within-grade increases for FDO personnel. The salary plan for federal defender personnel provides for periodic within-grade increases for staff who achieve at least a satisfactory performance rating.

***4. Health benefits increase***

**Requested Increase: $1,853,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 7.0 percent in January 2010 and another 7.0 percent in January 2011 The requested increase

annualizes the 2010 premium increase, and includes a nine-month provision for the anticipated fiscal year 2011 premium increase and other changes.

*5. FERS Increase*

**Requested Increase: $1,272,000**

Funds are requested to provide for new benefits for employees covered by the Federal Employees Retirement System (FERS), pursuant to the National Defense Authorization Act for Fiscal Year 2010, P.L. 111-84. The requested increase includes the additional agency contribution for FERS employees from 11.2 percent to 11.7 percent.

***6. Annualization of new fiscal year 2010 staff***

**Requested Increase: $8,696,000** **FTE: 52**

The requested increase annualizes the cost of fiscal year 2010 additional federal defender organization staff expected to be hired due to increased workload. The judiciary estimates that 104 additional positions will be filled for an average of six months in fiscal year 2010. This line item requests the remaining six months funding in fiscal year 2011 to annualize those 104 positions (52 FTE).

***7. Annualization of new reimbursable fiscal year 2010 staff***

**Requested Increase: $214,000** **FTE: 2**

The requested increase annualizes the cost of fiscal year 2010 additional reimbursable staff expected to be hired due to increased workload. The judiciary estimates that 3 additional reimbursable positions will be filled for an average of six months in fiscal year 2010. This line item requests the remaining six months funding in fiscal year 2011 to annualize those 3 positions (2 FTE).

**B. OTHER ADJUSTMENTS**

***8. Inflationary adjustments***

**Requested Increase: $1,689,000**

Consistent with guidance from the Office of Management and Budget, $1.7 million is required to fund inflationary increases of 1.1 percent for operating expenses such as travel, utilities, contractual services, supplies and materials, and furniture and equipment.

*9. Inflationary increase in space rental costs*

**Requested Increase: $1,174,000**

FDOs are located in both courthouses and private commercial office space. The amount requested funds inflationary increases of 2.5 percent for current space in fiscal year 2011.

***10. Increases in caseload, case complexity and change in caseload mix***

**a. Non-capital cases**

**Requested Increase: $18,489,000** **FTE: 38**

The requested increase provides for costs due to (1) increased caseload; and (2) increased complexity and changes in the non-capital caseload mix for projected fiscal year 2011 CJA cases.

| Projected Non-Capital Representations | | | |
|---|---|---|---|
| | FY 2010 | FY 2011 | Difference |
| Federal Defender Organizations | 123,700 | 124,200 | 500 |
| Panel Attorneys | 83,600 | 86,700 | 3,100 |
| Total Projected Representations | 207,300 | 210,900 | 3,600 |

From fiscal year 2010 to fiscal year 2011, non-capital cases are projected to increase by 3,600, requiring an additional 38 FTE. Further, fiscal year 2009 hiring in FDOs was managed conservatively. As a result, FDO caseload estimates for fiscal years 2010 and 2011 remain higher than current on-board staff can address.

Requested fiscal year 2011 increases reflect base workload requirements, the annual caseload increase from fiscal year 2010 to 2011, and increases in case complexity. The table below illustrates FDO and Panel caseload growth since fiscal year 2002. While annual representations may vary, caseload continues to increase over time, with a matching increase in resource requirements.

**CJA Representations**
**10-Year Historical Table**

| *Fiscal Year* | *Federal Defenders* | *Panel Attorneys* | *Total* |
|---|---|---|---|
| 2002 | 77,410 | 55,435 | 132,845 |
| 2003 | 87,252 | 60,617 | 147,869 |
| 2004 | 97,891 | 64,407 | 162,298 |
| 2005 | 95,055 | 67,554 | 162,609 |
| 2006 | 98,206 | 74,670 | 172,876 |
| 2007 | 98,974 | 83,288 | 182,262 |
| 2008 | 123,741 | 84,301 | 208,042 |
| 2009 | 123,055 | 83,354 | 206,409 |
| 2010 | 123,700 | 83,600 | 207,300 |
| 2011 | 124,200 | 86,700 | 210,900 |

**b. Capital cases**

**Requested Increase: $10,109,000** **FTE: 21**

Based on historical trends, the judiciary is projecting that expenses for capital habeas and capital prosecution representations will grow by $10.1 million in fiscal year 2011.

In fiscal year 2009, the judiciary provided representation in 1,094 capital habeas cases. Under the CJA, the federal judiciary is responsible for paying the cost of providing representation associated with the federal review of state death-sentences in federal court (capital habeas cases). This cost would be significantly reduced if all states fully funded the cost of representation in state capital habeas cases. A number of states fail to provide reasonably competent counsel or litigation funding, and, as a result, issues that could have been resolved by state courts remain ripe for federal review. Due to concerns regarding the availability of qualified panel attorneys, the courts are increasingly turning to FDOs to provide representation in federal capital habeas cases.

In fiscal year 2009, FDOs and panel attorneys provided representation in 525 capital prosecution cases. Similar to capital habeas cases, the defense of a capital prosecution case requires disproportionately large amounts of staff and funding.

**c. High-threat trials**

**Requested Increase: $15,600,000**

An increase of $15.6 million is requested for costs associated with panel attorneys, experts and other related costs for anticipated high-threat, high-profile trials in fiscal year 2011.

***11. Offset fiscal year 2011 base requirements funded through non-appropriated sources of funds***

**Requested Offset: ($3,633,000)**

The defender services program has been able to reduce requirements for appropriated funds through the use of unobligated no-year funds carried forward from prior fiscal years. In fiscal year 2010, $6.4 million in unobligated balances from fiscal year 2009 was available to finance fiscal year 2010 requirements. In fiscal year 2011, absent unforeseen expenses that might arise, the judiciary expects $10.0 million in non-appropriated funds to be available, an increase of $3.6 million from fiscal year 2010. Therefore, the increase in these non-appropriated funds will be used to offset fiscal year 2011 requirements.

*12. Non-recurring costs*

**Requested Decrease: ($300,000)**

The requested decrease is for the non-recurring start-up costs of a new FDO expected to open in fiscal year 2010.

## C. PROGRAM INCREASES

***13. Increase in panel attorney non-capital rate to $141 per hour***

**Requested Increase: $4,776,000**

The requested funding would increase the hourly non-capital panel attorney rate to $141, effective January 1, 2011. This is the amount needed to bring the panel attorney non-capital rate up to the statutorily authorized level. The critical need for this rate increase is discussed in detail beginning on page 6.10. These resources are essential to the program's ability to deliver the effective representation guaranteed by the Sixth Amendment, CJA, and other federal laws, and vital to the integrity of the federal criminal justice system. The requested increase funds three months of the rate increase in fiscal year 2011.

***14. Establishment of a new federal defender organization***

**Requested Increase: $300,000**

The requested increase would support start-up and operational costs for the establishment of one new FDO. At this time, the judiciary cannot identify the particular district in which the institution would be established. The four districts that do not currently have an FDO are as follows: Alabama-Northern, Georgia-Southern, Kentucky-Eastern, and Northern Mariana Islands. The table on page 6.25 lists all FDOs and their anticipated fiscal year 2010 funding levels.

## FINANCING THE FISCAL YEAR 2011 REQUEST

***15. Anticipated carryforward from fiscal year 2010 into fiscal year 2011.***

**Estimated funds available: $10,000,000**

The judiciary anticipates $10.0 million will be available through anticipated savings to carry forward from fiscal year 2010 into fiscal year 2011 and offset the fiscal year 2011 appropriation request for the defender services program. Savings are related to anticipated unobligated funds returned from the 79 FDOs. The judiciary will advise appropriations subcommittee staffs of changes to this estimate.

## FISCAL YEAR 2010 FEDERAL DEFENDER ORGANIZATION BUDGETS

| | Organization | Funding |
|---|---|---|
| 1 | Alabama (Middle) | $5,332,800 |
| 2 | Alabama (Southern) | $2,456,800 |
| 3 | Alaska | $3,219,600 |
| 4 | Arizona | $26,175,200 |
| 5 | Arkansas (Eastern & Western) | $6,417,000 |
| 6 | California (Central) | $34,177,500 |
| 7 | California (Eastern) | $17,142,500 |
| 8 | California (Northern) | $11,641,000 |
| 9 | California (Southern) | $15,898,400 |
| 10 | Colorado & Wyoming | $6,506,100 |
| 11 | Connecticut | $3,322,000 |
| 12 | Delaware | $3,858,400 |
| 13 | District of Columbia | $5,866,500 |
| 14 | Florida (Middle) | $13,540,300 |
| 15 | Florida (Northern) | $3,316,900 |
| 16 | Florida (Southern) | $18,571,700 |
| 17 | Georgia (Middle) | $2,210,800 |
| 18 | Georgia (Northern) | $12,626,500 |
| 19 | Guam | $1,342,100 |
| 20 | Hawaii | $2,827,100 |
| 21 | Idaho | $4,382,500 |
| 22 | Illinois (Central) | $3,397,100 |
| 23 | Illinois (Northern) | $7,217,700 |
| 24 | Illinois (Southern) | $3,154,500 |
| 25 | Indiana (Northern) | $3,245,100 |
| 26 | Indiana (Southern) | $1,352,300 |
| 27 | Iowa (Northern & Southern) | $5,279,100 |
| 28 | Kansas | $5,513,900 |
| 29 | Kentucky (Western) | $2,569,200 |
| 30 | Louisiana (Eastern) | $2,604,200 |
| 31 | Louisiana (Middle & Western) | $2,994,100 |
| 32 | Maine | $1,144,500 |
| 33 | Maryland | $10,385,600 |
| 34 | Massachusetts, New Hampshire & Rhode Island | $9,389,300 |
| 35 | Michigan (Eastern) | $6,673,500 |
| 36 | Michigan (Western) | $3,385,400 |
| 37 | Minnesota | $3,449,100 |
| 38 | Mississippi (Southern) | $3,715,300 |
| 39 | Missouri (Eastern) | $5,563,500 |
| 40 | Missouri (Western) | $5,566,400 |
| 41 | Montana | $4,007,700 |
| 42 | Nebraska | $4,036,200 |
| 43 | Nevada | $16,731,900 |
| 44 | New Jersey | $8,972,100 |
| 45 | New Mexico | $9,806,200 |
| 46 | New York (Northern) | $3,641,500 |
| 47 | New York (Southern & Eastern) | $13,121,100 |
| 48 | New York (Western) | $4,055,700 |
| 49 | North Carolina (Eastern) | $9,235,800 |
| 50 | North Carolina (Middle) | $3,104,500 |
| 51 | North Carolina (Western) | $5,354,900 |
| 52 | Ohio (Northern) | $6,286,300 |
| 53 | Ohio (Southern) | $4,618,300 |
| 54 | Oklahoma (Eastern & Northern) | $2,085,200 |
| 55 | Oklahoma (Western) | $4,585,600 |
| 56 | Oregon | $12,967,600 |
| 57 | Pennsylvania (Eastern) | $21,522,900 |
| 58 | Pennsylvania (Middle) | $5,464,100 |
| 59 | Pennsylvania (Western) | $7,390,800 |
| 60 | Puerto Rico | $4,649,900 |
| 61 | South Carolina | $5,265,100 |
| 62 | South Dakota & North Dakota | $5,702,700 |
| 63 | Tennesee (Eastern) | $5,512,300 |
| 64 | Tennessee (Middle) | $9,533,000 |
| 65 | Tennessee (Western) | $3,695,700 |
| 66 | Texas (Eastern) | $3,393,900 |
| 67 | Texas (Northern) | $6,146,300 |
| 68 | Texas (Southern) | $15,975,600 |
| 69 | Texas (Western) | $17,082,800 |
| 70 | Utah | $7,281,700 |
| 71 | Vermont | $1,254,800 |
| 72 | Virginia (Eastern) | $9,290,600 |
| 73 | Virginia (Western) | $3,278,400 |
| 74 | Virgin Islands | $1,699,300 |
| 75 | Washington (Eastern) | $5,939,800 |
| 76 | Washington (Western) | $10,479,900 |
| 77 | West Virginia (Northern) | $1,922,600 |
| 78 | West Virginia (Southern) | $2,933,500 |
| 79 | Wisconsin (Eastern & Western) | $4,054,400 |
| | **Total** | **$559,512,200** |

6.25

**COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES**

***Fees of Jurors and Commissioners***

**SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS**

| | |
|---|---|
| **Fiscal Year 2010 Appropriation** | **$61,861,000** |
| **Fiscal Year 2011 Requested Appropriation** | **64,108,000** |
| **Requested Increase from Fiscal Year 2010 Appropriation** | **2,247,000** |

**APPROPRIATION LANGUAGE**

**COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES**

**FEES OF JURORS AND COMMISSIONERS**

For fees and expenses of jurors as authorized by 28 U.S.C. 1871 and 1876; compensation of jury commissioners as authorized by 28 U.S.C. 1863; and compensation of commissioners appointed in condemnation cases pursuant to rule 71.1(h)) of the Federal Rules of Civil Procedure (28 U.S.C Appendix Rule 71.1(h), [$61,861,000] *$64,108,000*, to remain available until expended: *Provided*, That the compensation of land commissioners shall not exceed the daily equivalent of the highest rate payable under 5 U.S.C. 5332.

**SUMMARY OF REQUEST**
**FEES OF JURORS AND COMMISSIONERS**
**FISCAL YEAR 2011**
**($000)**

| Page No. | Fiscal Year 2011 Resource Requirements: | Original Request FTEs | Original Request Amount |
|---|---|---|---|
| | **Fiscal Year 2010 Obligations** | - | **$64,748** |
| | Carryforward from Fiscal Year 2009 into Fiscal Year 2010 | | (2,887) |
| | **Fiscal Year 2010 Base Appropriation** | - | **$61,861** |
| | **Adjustments to Base:** | | |
| 7.10 | 1. Inflationary adjustments | | |
| | a. Grand Jurors | - | 191 |
| | b Petit Jurors | - | 251 |
| 7.10 | 2. Projected change in available jurors | | |
| | a. Grand Jurors | - | (150) |
| | b Petit Jurors | - | 324 |
| | c. Additional requirements for high-threat trials | - | 1,180 |
| 7.11 | 3. Funding necessary to maintain fiscal year 2010 service levels due to an anticipated decline in non-appropriated funds | | 451 |
| | **Subtotal, Adjustments to Base** | - | **2,247** |
| | **Total Current Services Appropriation Required** | - | **64,108** |
| | **Total Fiscal Year 2011 Appropriation Required** | - | **64,108** |
| | **Total Appropriation Change, Fiscal Year 2010 to Fiscal Year 2011** | - | **2,247** |
| | **Financing the Fiscal Year 2011 Request:** | | |
| | **Total Appropriation Required** | - | **64,108** |
| | Estimated Carryforward Balance from Fiscal Year 2009 into Fiscal Year 2011 | - | 2,436 |
| | **Estimated Obligations, Fiscal Year 2011** | - | **66,544** |

**COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES**
**FEES OF JURORS AND COMMISSIONERS**
**Obligations by Activity ($000)**

| Activity | Fiscal Year 2009 Actual | Fiscal Year 2010 Estimate | Fiscal Year 2011 Request |
|---|---|---|---|
| **Comparison by activities:** | | | |
| ***Land commissioners*** | 66 | 100 | 100 |
| ***Grand Jurors*** | 17,755 | 17,642 | 17,683 |
| ***Petit Jurors*** | 45,441 | 47,006 | 48,761 |
| **Total Obligations** | **63,262** | **64,748** | **66,544** |
| Prior Year Recoveries | (3,725) | - | - |
| **Revised Obligations** | **59,537** | **64,748** | **66,544** |
| Unobligated Balance, start of year | (2,404) | (5,323) | (2,436) |
| Unobligated Balance, end of year | 5,323 | 2,436 | - |
| Transfer from Court of International Trade | (250) | | |
| **Available Appropriation** | **62,206** | **61,861** | **64,108** |

**Obligations by Budget Object Class ($000)**

| | Description | Fiscal Year 2009 Actual | Fiscal Year 2010 Estimate | Fiscal Year 2011 Request |
|---|---|---|---|---|
| 11 | Personnel compensation | 29,620 | 30,343 | 31,185 |
| 12 | Personnel benefits | 4 | 6 | 6 |
| 21 | Travel | 30,148 | 30,800 | 31,653 |
| 23 | Rent, communications and utilities | 1,469 | 1,518 | 1,561 |
| 25 | Other services | 902 | 931 | 957 |
| 26 | Supplies and materials | 1,119 | 1,150 | 1,182 |
| | **Total obligations** | **63,262** | **64,748** | **66,544** |

**COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES**
**FEES OF JURORS AND COMMISSIONERS**

**Relation of Obligations to Outlays ($000)**

| | FY 2009 Actual | FY 2010 Estimate | FY 2011 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 63,262 | 64,748 | 66,544 | 1,796 |
| Obligated balance, start of year | 4,435 | 1,598 | 2,694 | 1,096 |
| Obligated balance, end of year | (1,598) | (2,694) | (2,962) | (268) |
| Change in prior year balances | (3,725) | | | |
| **Net Outlays** | **62,374** | **63,652** | **66,276** | **2,624** |

## GENERAL STATEMENT AND INFORMATION

This appropriation provides for the statutory fees and allowances of grand and petit jurors, and for the compensation of jury and land commissioners. In addition to reimbursement for daily travel to and from court, expenses allowed include meals and lodging furnished to sequestered jurors, and transportation to view evidence or crime scenes offsite. Budgetary requirements depend largely upon the volume and the length of jury trials demanded by parties to both civil and criminal actions and the number of grand juries being convened by the courts at the request of United States Attorneys. All of these factors are outside the control of the judiciary.

### Petit Jurors

A petit jury may be called to hear a trial in a civil or criminal action. A criminal trial normally would have a 12-person jury and a civil trial would typically have a 7- to 9- person jury. In a civil trial, the jury's responsibility is to decide whether the defendant injured or otherwise failed to fulfill a legal obligation to the plaintiff and to determine what the compensation should be. Criminal juries decide whether the defendant committed the crime as charged.

The number of jurors called on any given day to serve in a petit jury pool is related to the number and type of cases in which a trial by jury is requested. Moreover, under rules of criminal procedure, criminal trials are allowed additional peremptory challenges compared to civil trials because of the jury size. This means that the court must take these challenges into account when determining the number of potential jurors in a criminal jury pool. Thus, the number of potential jurors in a criminal jury pool is likely to be greater than the number of jurors in a civil jury pool, but the likelihood of jurors being called in a criminal jury is less than in a civil jury.

In fiscal year 2009 the total number of available petit jurors decreased by 4.1 percent to 522,348. Available petit juror days are projected to increase by less than 1 percent to 522,800 in fiscal year 2010, and increase again by less than 1 percent to 523,700 in fiscal year 2011. Table 7.1, on page 7.6 provides a historical pattern of the number of jurors called and the related costs of paying the expenses of those jurors.

**Table 7.1 Petit Juror Usage**

| | | Petit Jury Trial Days | | | | Available Jurors | | Cost | |
|---|---|---|---|---|---|---|---|---|---|
| | Fiscal Year | Criminal | Civil | Total | Percent Change | Jurors | Percent Change | Fees & Expenses | Percent Change |
| Actual | 2001 | 15,391 | 17,204 | 32,595 | 0.0% | 616,515 | 0.0% | 43,660,000 | 0.0% |
| | 2002 | 14,806 | 15,427 | 30,233 | -7 2% | 583,413 | -5.4% | 41,279,000 | -5.5% |
| | 2003 | 15,508 | 14,998 | 30,506 | 0.9% | 603,785 | 3.5% | 43,409,000 | 5.2% |
| | 2004 | 17,132 | 13,935 | 31,487 | 3.2% | 607,673 | 0 6% | 44,032,000 | 1.4% |
| | 2005 | 17,360 | 13,435 | 30,795 | -2 2% | 612,404 | 0.8% | 45,645,000 | 3.7% |
| | 2006 | 15,634 | 12,987 | 28,621 | -7 1% | 579,706 | -5.3% | 45,177,000 | -1.0% |
| | 2007 | 15,339 | 12,054 | 27,393 | -4.3% | 554,193 | -4.4% | 47,489,000 | 5.1% |
| | 2008 | 14,946 | 11,890 | 26,836 | -2 0% | 544,565 | -1.7% | 44,906,000 | -5.4% |
| | 2009 | 14,371 | 10,985 | 25,356 | -5.5% | 522,348 | -4.1% | 45,441,000 | 1.2% |
| **Estimated** | 2010 | 13,900 | 10,500 | 24,400 | -3.8% | 522,800 | 0.1% | 47,006,000 | 3.4% |
| | 2011 | 13,500 | 9,800 | 23,300 | -4.5% | 523,700 | 0 2% | 48,761,000 | 3.7% |

## Grand Jurors

A grand jury is a jury of inquiry whose duty it is to receive complaints and accusations in criminal cases, hear the evidence presented on the part of the Government, and find bills of indictment in cases where the jurors are satisfied that the evidence presented is sufficient to warrant filing an indictment and bringing the case to trial. The number of grand juries convened by district courts varies depending on such factors as the number of criminal cases, the type of criminal activity, and the number of places in which court is held. Grand juror activity is measured by the number of sessions convened, jurors in session and total jurors in attendance. Available grand jurors decreased by 0.2 percent in fiscal year 2009 to 203,561. The number of available grand jurors is projected to decline by 1.7 percent in fiscal year 2010 to 200,100, and decline again by nearly 1 percent in fiscal year 2011 to 198,400. Table 7.2, on page 7.8, provides further detail on grand jury activity.

**Table 7.2 Grand Jury Activity**

| | Total Number of Grand Jurors | | | | | Available Jurors | | | Cost | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Fiscal Year | Sessions Convened | Percent Change | Jurors in Session | Percent Change | Hours in Session | Jurors | Percent Change | Fees & Expenses | Percent Change |
| Actual | 2001 | 10,042 | 0 0% | 199,169 | 0.0% | 51,258 | 213,791 | 0 0% | 14,647,000 | 0 0% |
| | 2002 | 9,873 | -1 7% | 197,182 | -1 0% | 50,013 | 212,477 | -0 6% | 14,585,000 | -0 4% |
| | 2003 | 10,197 | 3 3% | 203,691 | 3 3% | 51,974 | 221,598 | 4 3% | 16,267,000 | 11 5% |
| | 2004 | 10,402 | 2 0% | 207,245 | 1 7% | 52,452 | 224,724 | 1 4% | 16,260,000 | 0 0% |
| | 2005 | 9,854 | -5 3% | 196,197 | -5 3% | 48,582 | 212,662 | -5 4% | 15,999,000 | -1 6% |
| | 2006 | 9,399 | -4.6% | 187,646 | -4.4% | 45,718 | 204,530 | -3 8% | 15,633,000 | -2 3% |
| | 2007 | 9,279 | -1 3% | 185,083 | -1 4% | 45,197 | 201,073 | -1 7% | 15,427,000 | -1.3% |
| | 2008 | 9,358 | 0.9% | 186,603 | 0 8% | 44,736 | 204,045 | 1 5% | 15,721,000 | 1 9% |
| | 2009 | 9,300 | -0 6% | 185,600 | -0 5% | 44,300 | 203,561 | -0 2% | 17,755,000 | 12 9% |
| Estimated | 2010 | 9,200 | -1.1% | 183,300 | -1.2% | 43,200 | 200,100 | -1 7% | 17,642,000 | -0 6% |
| | 2011 | 9,100 | -1 1% | 181,400 | -1 0% | 42,400 | 198,400 | -0.9% | 17,683,000 | 0 2% |

| | Average Number of | |
|---|---|---|
| Fiscal Year | Jurors per Session | Hours per Session |
| 2002 | 20.0 | 5.07 |
| 2003 | 20 0 | 5 10 |
| 2004 | 19 9 | 5.04 |
| 2005 | 19 9 | 4.93 |
| 2006 | 19 9 | 4.86 |
| 2007 | 19.9 | 4 87 |
| 2008 | 19 9 | 4 87 |
| 2009 | 20 1 | 4 80 |

| Total Number of Grand Juries | | |
|---|---|---|
| In Existence at the beginning of the Fiscal Year | Impaneled | Discharged |
| 525 | 321 | 279 |
| 500 | 335 | 288 |
| 453 | 338 | 286 |
| 462 | 307 | 312 |
| 442 | 316 | 319 |
| 413 | 320 | 292 |
| 426 | 323 | 300 |
| 444 | 322 | 265 |

## Land Commissioners

The responsibility of land commissioners is to determine the issue of just compensation arising from the deprivation of private property for public use. Under the Federal Rules of Civil Procedure, a district court may use its discretion to order that compensation for condemned property be determined by a commission of three persons appointed by the court. The determination of compensation is based on evidence presented during the exercise of trial procedures and evidentiary rulings. This delegation of the judicial function requires close judicial supervision and requires that actions taken by the commission be fully documented to permit full review by the district or appellate courts. This system ensures due process of law to the litigants.

Land commissioners are compensated based on the daily equivalent of the highest rate payable under 5 U.S.C. 5332, and are also eligible for locality pay amounts that apply to their locality pay areas. These amounts are payable on top of their basic pay. The annual adjusted pay rate (i.e., basic pay plus locality pay) for land commissioners is limited to the rate of pay for level III of the Executive Schedule, currently $165,300.

## JUSTIFICATION OF CHANGES

The fiscal year 2011 appropriation request for Fees of Jurors and Commissioners totals $64,108,000, which represents an increase of $2,247,000 or 3.6 percent over the fiscal year 2010 appropriation of $61,861,000.

## ADJUSTMENTS TO BASE

1. ***Inflationary adjustments***

**a. Grand Jurors**

**Requested Increase: $191,000**

An increase of $191,000 is requested for inflationary adjustments associated with grand juror costs including travel allowances (mileage, parking, tolls), meals and lodging for sequestered jurors, and other miscellaneous juror expenses.

**b. Petit Jurors**

**Requested Increase: $251,000**

An increase of $251,000 is requested for inflationary increases associated with petit juror costs including travel allowances (mileage, parking, tolls), meals and lodging for sequestered jurors, and other miscellaneous juror expenses.

2. ***Projected change in available jurors***

**a. Grand Jurors**

**Requested Decrease: ($150,000)**

A decrease of $150,000 is the result of a decrease in the number of available grand jurors from fiscal year 2010 to fiscal year 2011.

**b. Petit Jurors**

**Requested Increase: $324,000**

An increase of $324,000 is the result of a projected increase in the number of available petit jurors from fiscal year 2010 to fiscal year 2011.

**c. Additional requirements for high-threat trials**

**Requested Increase: $1,180,000**

An increase of $1,180,000 is requested for costs associated with jurors needed for anticipated high-threat, high-profile trials in fiscal year 2011.

***3. Funding needed to maintain fiscal year 2010 service level***

**Requested Increase: $451,000**

The fiscal year 2010 financial plan was financed in part by $2 9 million of $5.3 million available in carry forward balances from fiscal year 2009. The judiciary anticipates using the remaining $2.4 million in fiscal year 2011, a net decrease of $451,000 from fiscal year 2010. The judiciary requests appropriated funds for fiscal year 2011 to replace these non-appropriated funds in order to maintain the same level of service as provided in fiscal year 2010.

# COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES

*Court Security*

## SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | |
|---|---|
| **Fiscal Year 2010 Appropriation** | **$452,607,000** |
| **Fiscal Year 2011 Appropriation Request** | **$495,038,000** |
| **Requested Increase from Fiscal Year 2010 Appropriation** | **$42,431,000** |

## APPROPRIATION LANGUAGE

## COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES

## COURT SECURITY

For necessary expenses, not otherwise provided for, incident to the provision of protective guard services for United States courthouses and other facilities housing Federal court operations, and the procurement, installation, and maintenance of security systems and equipment for United States courthouses and other facilities housing Federal court operations, including building ingress-egress control, inspection of mail and packages, directed security patrols, perimeter security, basic security services provided by the Federal Protective Service, and other similar activities as authorized by section 1010 of the Judicial Improvement and Access to Justice Act (Public Law 100-702), [$452,607,000] *$495,038,000* of which not to exceed $15,000,000 shall remain available until expended,to be expended directly or transferred to the United States Marshals Service, which shall be responsible for administering the Judicial Facility Security Program consistent with standards or guidelines agreed to by the Director of the Administrative Office of the United States Courts and the Attorney General

**SUMMARY OF REQUEST**
**COURT SECURITY**
**FISCAL YEAR 2011**
**(Dollar amounts in thousands)**

| Page | Fiscal Year 2011 Resource Requirements: | FTEs | Amount |
|---|---|---|---|
| | **Fiscal Year 2010 Obligations** | **70** | **$475,210** |
| | Less Encumbered Carryforward from Fiscal Year 2009 into Fiscal Year 2010 | - | (17,603) |
| | **Fiscal Year 2010 Revised Obligations** | **70** | **457,607** |
| | Less Unencumbered Carryforward from Fiscal Year 2009 into Fiscal Year 2010 | - | (5,000) |
| | **Fiscal Year 2010 Base Appropriation** | **70** | **452,607** |
| | **Adjustments to Base to Maintain Current Services:** | | |
| | **A. Personnel and Other Programs** | | |
| | 1. Pay and benefits increases | | |
| 8.13 | a. Annualization of January 2010 pay adjustment (2.42% for three months) | - | 39 |
| 8.13 | b. Proposed January 2011 pay adjustment (1.4% beginning January 2011) | - | 125 |
| 8.14 | c. Promotions and within-grade increases | - | 74 |
| 8.14 | d. Health benefits increases | - | 24 |
| 8.14 | e. FERS increase | - | 16 |
| 8.14 | 2. Annualization of fiscal year 2010 court security officer positions (20) | - | 832 |
| 8.14 | 3. Fiscal year 2011 Department of Labor and Collective Bargaining Agreements wage rate adjustments (3.0%) | - | 13,295 |
| 8.15 | 4. Inflationary increase in charges for contracts, services, supplies, and equipment | - | 64 |
| 8.15 | 5. Inflationary increase in GSA space rental costs | - | 140 |
| 8.15 | 6. Additional court security officers (30) associated with fiscal year 2011 new and existing space | - | 2,071 |

| Page | | FTEs | Amount |
|---|---|---|---|
| 8.15 | 7. Changes in Federal Protective Service security charges | | |
| | a. Increase in basic security charges | - | 1,676 |
| | b. Increase in building-specific operating expense security charges | - | 3,709 |
| 8.17 | 8. Adjustment to base requirements for security systems and equipment | - | 9,774 |
| 8.20 | 9. Security requirements for high threat trials | - | 5,285 |
| 8.20 | 10. Non-recurring requirements | - | (885) |
| 8.20 | 11. Increase in appropriations necessary to maintain fiscal year 2010 service levels due to an anticipated decline in non-appropriated sources of funds | - | 5,000 |
| | **Subtotal, Adjustments to Base to Maintain Current Services** | - | **41,239** |
| | **Total Current Services Appropriation Required** | **70** | **493,846** |
| | **B. Program Increases:** | | |
| 8.20 | 12. Facial recognition system (pilot) | - | 200 |
| 8.21 | 13. National contract for vehicle barrier maintenance | - | 683 |
| 8.22 | 14. Five new judiciary-funded USMS positions (funded for 6 months) | 3 | 309 |
| | **Subtotal, Program Increases** | **3** | **1,192** |
| | **Total Fiscal Year 2011 Appropriation Required** | **73** | **495,038** |
| | **Total Appropriation Increase, Fiscal Year 2010 to Fiscal Year 2011** | **3** | **42,431** |

**Financing the Fiscal Year 2011 Request:**

| | FTEs | Amount |
|---|---|---|
| **Total Appropriation Required** | **73** | **495,038** |
| Anticipated Carryforward Balances from Fiscal Year 2010 into Fiscal Year 2011 | - | - |
| **Estimated Obligations, Fiscal Year 2011** | **73** | **495,038** |

**COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES**
**COURT SECURITY**
**Obligation by Activity ($000)**

| **Authorization:** **Permanent** | **FY 2009 Actual** | **FY 2010 Estimate** | **FY 2011 Request** |
|---|---|---|---|
| **Comparison by activities:** | | | |
| *Court Security* | 432,755 | 457,607 | 495,038 |
| **Total Obligations** | **432,755** | **457,607** | **495,038** |
| Unobligated Balance, start of year | (5,930) | (5,000) | - |
| Unobligated Balance, end of year | 5,000 | - | - |
| Unobligated Balance, expiring or withdrawn | (2,967) | - | - |
| **Available Appropriation** | **428,858** | **452,607** | **495,038** |

**COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES**
**COURT SECURITY**
**Obligations by Budget Object Class ($000)**

| | | **FY 2009 Actual** | **FY 2010 Estimate** | **FY 2011 Request** |
|---|---|---|---|---|
| 11 | Personnel compensation | 5,286 | 6,422 | 6,657 |
| 12 | Personnel benefits | 1,509 | 1,691 | 1,717 |
| 21 | Travel | 349 | 432 | 504 |
| 22 | Transportation of things | 86 | 92 | 122 |
| 23 | Rent, communications and utilities | | | |
| | *Rental payments to GSA* | 5,136 | 5,213 | 5,349 |
| | *Communications, utilities & misc. charges* | 714 | 743 | 758 |
| 25 | Contractual Services | | | |
| | *CSO Contract* | 299,704 | 310,748 | 331,961 |
| | *Other Contractual Services* | 31,779 | 32,407 | 33,087 |
| | *Federal Protective Service Charges* | 64,307 | 67,254 | 72,639 |
| 26 | Supplies and materials | 544 | 1,314 | 1,390 |
| 31 | Equipment | 23,341 | 31,291 | 40,854 |
| | **Total obligations** | **432,755** | **457,607** | **495,038** |

## COURTS OF APPEALS, DISTRICT COURTS AND OTHER JUDICIAL SERVICES

### COURT SECURITY

**Relation of Obligations to Outlays**

| | FY 2009 Actual ($000) | FY 2010 Estimate ($000) | FY 2011 Request ($000) | Difference (+) or (-) ($000) |
|---|---|---|---|---|
| Total Obligations | 432,755 | 457,607 | 495,038 | 37,431 |
| Obligated balance, start of year | 123,468 | 136,468 | 140,565 | 4,097 |
| Adjustments in expired accounts | (9,558) | - | - | - |
| Obligated balance, end of year | (136,468) | (140,565) | (156,213) | (15,648) |
| Total Outlays | 410,197 | 453,510 | 479,390 | 25,880 |
| **Total Outlays** | 410,197 | 453,510 | 479,390 | 25,880 |

**Personnel Summary**

| | FY 2009 Actual | FY 2010 Estimate | FY 2011 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total compensable workyears (FTE): | | | | |
| **United States Marshals Service** | 42 | 64 | 67 | 3 |
| **Administrative Office Reimbursable Positions** | 6 | 6 | 6 | - |
| **Total, Court Security** | 48 | 70 | 73 | 3 |

## GENERAL STATEMENT AND INFORMATION

The Court Security appropriation was established in 1983 and funds the necessary expenses, not otherwise provided for, incident to the provision of protective guard services, and the procurement, installation, and maintenance of security systems and equipment for United States courthouses and other facilities housing federal court operations. This includes building access control, inspection of mail and packages, directed security patrols, perimeter security, and other similar activities as authorized by section 1010 of the Judicial Improvement and Access to Justice Act (Public Law 100-702).

The United States Marshals Service (USMS), of the Department of Justice (DOJ), by statute, is responsible for the security of the judiciary (28 USC § 566). In that regard, Congress provides the USMS with funding to: secure prisoners; conduct protective investigations on threats against judges and other judiciary personnel; provide protective details when necessary; and provide security for witnesses and high threat trials. The USMS is also responsible for the day-to-day management of the Judicial Facility Security Program (JFSP) that is funded by the judiciary's Court Security appropriation. The JFSP provides for an adequate level of physical security for hundreds of courthouses nationwide.

### Overview of the Judicial Facility Security Program

The JFSP represents a collaborative effort between the judiciary and the DOJ in ensuring the integrity of the judicial process by providing secure facilities in which to conduct judicial business. In 1982, DOJ requested and received a Delegation of Procurement Authority from the General Services Administration (GSA) to contract for private security (known as court security officers or CSOs guard) services, and for the installation and maintenance of security systems and equipment for space occupied by the federal judiciary, within GSA-controlled facilities.

The judiciary's fiscal year 1983 Court Security appropriation included funding to support this new delegation. The appropriation language provided that funding could be expended directly or transferred to the USMS, which shall be responsible for administering the JFSP consistent with standards or guidelines agreed to by the Administrative Office of the U.S. Courts (AO) Director and the Attorney General.

The goals of the JFSP are:

1. ensuring an adequate court security officer (CSO) presence at new, renovated, and existing court facilities;

2. ensuring that effective security screening and/or access control systems are in place for court facilities housing judges, at leased facilities that house probation and pretrial services offices, and other facilities housing federal court operations; and

3. ensuring timely installation and maintenance of required security systems and equipment for new and renovated courthouses.

Security begins at the courthouse perimeter with the use of vehicle barriers, closed circuit surveillance television (CCTV) cameras and recorders, and CSOs performing perimeter security patrols. CSOs control access into the courthouse or

judicial areas within multi-tenant federal buildings housing court operations using security screening equipment. CSOs also conduct roving patrols and staff fixed posts within the facility. The use of CSOs and security systems and equipment assists the USMS in protecting the court facility and thus the lives of judges, court staff, jurors, trial participants, and the general public; and helps ensure the effectiveness, viability and integrity of the federal judicial process.

### Ensuring Adequate Security at Federal Court Facilities

Federal courthouses are often the most visible symbol of the U.S. government presence in communities outside of Washington, D.C., and as such, may be considered inviting targets for terrorist attacks. The judicial process compels the attendance of suspected and convicted criminals to its facilities on a daily basis, along with witnesses and jurors. Also, family members of the suspected or convicted criminals, members of the Bar of the Court, the press, court employees and the public must be able to enter and use the buildings.

Maintaining the proper balance between ensuring an open court system and having secure court facilities is a complex task given the increasing number of threats against the federal judiciary. For example, there have been shootings inside of, and at, federal and state court facilities; three federal judges have been assassinated as a direct result of their work as a jurist, and a federal judge's husband and mother were murdered at home as a result of a civil case that the judge handled.

### The Importance of CSOs and Security Systems and Equipment

CSOs and security systems and equipment are key aspects in providing physical security to the courts. Together they are an integral part of the USMS' security plan to prevent and deter violence that can undermine the judicial process and erode public confidence in the judicial system. CSOs, using security screening systems, detect and intercept weapons, contraband and other prohibited items that individuals attempt to bring into courthouses. The equipment plays a vital role in the screening of visitors, employees, mail, and packages entering courthouses.

USMS statistical data from fiscal year 2009 indicate that there were 1,951,451 detections of weapons such as guns and knives, and other items prohibited in courthouses, such as cameras and cell phones; compared to 2,070,823 in fiscal year 2008, a 5.9 percent decrease. Of these items, 997 were permanently confiscated or abandoned at the courthouse. The rest were checked at the entrances and returned to their owners upon their departure.

The USMS also reported the detention/arrest of 22 persons related to security breaches at courthouses during fiscal year 2009, compared to 15 persons in fiscal year 2008, a 46.7 percent increase. The detections, detentions, and subsequent arrests occurred due to the vigilance of CSOs using entry screening systems and further demonstrates the continuing need for a high level of security at federal courthouses.

**Federal Protective Service Charges**

There are two types of facility-related security charges imposed by the Federal Protective Service (FPS) on government facilities, including those occupied by the judiciary: (1) the "basic" security charge estimated in fiscal year 2011 to be $0.70 per rentable square foot of space; and (2) the "building-specific" security charge, which applies to FPS-procured contract guards and/or security systems and equipment provided to a particular building.

The basic security charge is designed to provide FPS with general funding to operate. The building-specific charge is designed to pay for FPS-provided site-specific contract guards and security systems and equipment.

By a series of Memoranda of Agreement and/or Memoranda of Understanding, most of the responsibility for security at facilities where the courts are the only or primary tenant, has been delegated to the USMS so that a single entity is responsible for the physical protection of these facilities. In multi-tenant buildings where the courts are not the major tenant, the USMS and/or FPS share security responsibility. In these instances, the security that FPS provides may include, to varying degrees, entry screening, perimeter patrols, garage access control, and mail and package screening.

In fiscal year 2006, the judiciary undertook a nationwide rent validation initiative to verify the accuracy of the GSA rent billings. This initiative also had an impact on FPS security charges, as bills were reduced to reflect the lower, more accurate square footage amounts. As a result of these efforts, FPS actual costs were below original projections for fiscal years 2007 through 2009. Fiscal year 2007 FPS actual costs were $6.5 million below the original projection of $67.9 million; fiscal year 2008 FPS actual costs were $4.8 million below the original projection of $71.7 million; and fiscal year 2009 FPS actual costs were $3.1 million below the original projection of $67.4 million.

As previously requested by Congress, the AO has continued to take action to establish and implement clear and consistent parameters for budgetary decisions related to FPS billings. All courts have been reminded of the continued need to control FPS building-specific charges, and FPS headquarters staff were notified that additional services cannot be provided without an AO certification that funds are available. In April 2006, the AO informed the courts that no additional FPS-provided guards, equipment or systems could be acquired without prior authorization. Periodic guidance has been issued since that time to remind the courts of this standing policy.

The judiciary continues to engage in dialogue with FPS officials to reiterate the need for detailed billing information that will allow review and certification that the bills are legal, proper and correct, in accordance with 28 USC § 613.

**Perimeter Security Pilot Program**

The Consolidated Appropriations Act of 2008 (Pub. Law No. 110-161) authorized the USMS to establish a perimeter security pilot program at seven primary courthouses. (Section 307, Division D, Title III, Pub. Law No. 110-161). Primary courthouses are facilities where the court, the U.S. Attorney's

Office and/or the USMS occupy 75 percent or more of the rentable footage in the building. The pilot program consolidates the responsibility for perimeter security guarding and security systems and equipment at the pilot sites under the control of the district U.S. marshal, who is supported by the judiciary-funded and USMS-administered JFSP.

The pilot was designed to address several issues. First, the judiciary's experience to date was that the current bifurcated system with two security providers - the FPS and the USMS - providing physical security at many federal courthouses had been unsatisfactory. Under that system, some perimeter guards and security systems and equipment are provided by the FPS, and some by the USMS. Having two agencies from two different executive branch agencies (Department of Homeland Security and DOJ, respectively) provide the judiciary with the physical security of its facilities diminishes the effective and efficient provision of adequate courthouse protection because neither agency can exercise the necessary command and control over all components of the security program. At some courthouses, this lack of control results in a duplication of services being paid for by the judiciary, and at all courthouses this lack of control creates unnecessary security vulnerabilities. The JCUS' official position on this is that the USMS, which has the statutory responsibility to provide protection of the judicial process (28 U.S.C. §§ 564, 566), should be given sole responsibility to provide all aspects of judicial security at primary courthouses, including building security.

Second, there have been instances in which FPS-installed surveillance cameras, and associated monitoring, switching and recording equipment, were not functioning for extended periods of time. As a result, the USMS would replace the equipment, and the judiciary would thus be charged twice for the equipment (once by the FPS and once by the USMS). The USMS has also established reporting requirements to capture all security related incidents. The USMS is developing a tracking system to collect and assess the additional information.

Third, the judiciary found vulnerabilities in the FPS-provided security services due to the lack of national standards for determining how many security guards are needed to provide adequate physical security at federal facilities, including courthouses, and qualifications for FPS guards. On the other hand, the judiciary-funded and USMS-administered JFSP does have national qualification and staffing standards for its contracted CSOs, and for the security equipment it installs and maintains.

The USMS has a national security vendor under contract to install, maintain, repair or replace equipment and a national staffing standard to allocate CSO positions. In addition, the USMS conducts the same Homeland Security Presidential Directive 12 (HSPD-12) required background checks for its contract CSOs that the FPS-provided guards receive, but also requires an additional in-depth field investigation so that CSOs can be deputized as special deputy U.S. marshals while on duty. CSOs are required to pass both pre-employment and

annual medical examinations to assess their capability to perform the tasks identified in a job-task analysis conducted by the Federal Occupational Health Service in Atlanta.

Following enactment of the fiscal year 2008 appropriations bill authorizing the pilot, the judiciary, the USMS and the FPS have been working together on the implementation of the pilot program. The seven pilot sites that were selected by the USMS, in consultation with the AO are:

1. Everett McKinley Dirksen United States Courthouse/Chicago, Illinois
2. United States Courthouse and Federal Building/ Baton Rouge, Louisiana
3. Russell B. Long Federal Building/Baton Rouge, Louisiana
4. Evo A. DeConcini United States Courthouse/ Tucson, Arizona
5. Sandra Day O'Connor United States Courthouse/ Phoenix, Arizona
6. Theodore Levin United States Courthouse/Detroit, Michigan
7. Daniel Patrick Moynihan United States Courthouse/New York City

The pilot program is designed to test the operational efficacy and financial feasibility of improvements to the critical components of courthouse protection, e.g., security guards and security systems and equipment. The USMS's proposal, endorsed by the judiciary, consisted of two separate but related elements: (1) the USMS would assume responsibility for all perimeter security equipment and guard posts; and (2) the USMS would recommend appropriate security measures needed to provide adequate courthouse security, which was to have CSOs provide 24-hour security at three posts for after-hours and weekend security - one each for interior patrol, exterior perimeter patrol, and the control room.

Having the USMS assume full responsibility for security at the pilot sites has ended the current divided system under which some perimeter guards and security systems and equipment are provided by the FPS. At the pilot sites, perimeter security guarding is provided only by CSOs, not FPS contract guards, and the USMS has assumed responsibility for perimeter security systems and equipment. This change has made the USMS the single source for court security, and has provided the pilot site courts with more operationally effective and reliable protection.

The goals of the pilot program are to:

- consolidate under the USMS all responsibility for, and provision of, perimeter and interior security systems;

- provide the judiciary with consistent and reliable perimeter security coverage; and

- ensure that there are no redundant security services (either perimeter guards or equipment/systems) being provided by the FPS and the USMS.

The USMS has prepared a survey for the pilot districts to assist in measuring the effectiveness of the pilot from its perspective. Judiciary staff is planning to prepare a similar survey to augment the information garnered from the USMS. In addition, a cost model is being prepared for the pilot to determine what the costs would be if it, or some iteration of the pilot, were to be implemented nationally.

**Fiscal Year 2011 Priorities**

In 2007, as a part of the judiciary's overall cost containment effort, the Judicial Conference implemented an annual budget cap for use in developing the budget request for the judiciary, including the court security program. Accordingly, the fiscal year 2011 budget request represents only the most critical security needs of the judiciary, and funding to maintain an effective court security program.

The fiscal year 2011 request includes funding for two priorities: (1) for base requirements (including CSO contract and USMS personnel costs, and Federal Protective Service charges) in order to maintain the current level of protection to the courts; and (2) for security services and equipment requirements, including new and renovated court facilities, cyclical replacement of screening equipment, cyclical replacement of hardware and software for access control systems, and perimeter security improvements.

The need for adequate security for the judiciary is affected by factors beyond its control, such as the number of trials involving terrorists, high-threat/high-profile defendants, dangerous drug traffickers, members of militant groups, and criminal enterprises whose crimes are of a violent nature. Attendance at trials by associates of these individuals also heightens the need for enhanced security. In addition, in today's economic climate, civil trials involving controversial issues also pose security threats to trial participants, spectators, and the judiciary. All three federal judges killed during the last 30 years were assassinated as the result of their involvement in civil trials.

Additionally, family members of a federal judge were killed as the result of a ruling made during a civil trial. As such, additional resources are necessary to ensure that adequate levels of security are provided at all facilities housing court operations to avoid potentially harmful, or even fatal, consequences.

## Court Security Program Summary

| | FY 2010 Estimate | | FY 2011 Request | |
|---|---|---|---|---|
| | $000 | FTE | $000 | FTE |
| Court Security Officers | $ 310,748 | 4,194 | $ 331,961 | 4,261 |
| Federal Protective Service Charges | 67,254 | - | 72,639 | - |
| Systems and Equipment | 60,500 | - | 71,285 | - |
| Program Administration | 19,105 | 70 | 19,153 | 73 |
| **Total Obligations** | **$ 457,607** | | **$ 495,038** | |
| *Prior Year Carryforward* | | | | |
| Program Savings | (5,000) | | - | |
| **Available Appropriation** | **$ 452,607** | | **$ 495,038** | |

**Justification of Changes**

The fiscal year 2011 request for the Court Security program totals $495,038,000. The request is $42,431,000, or 9.4 percent, above the fiscal year 2010 appropriation level of $452,607,000.

The requested $495,038,000 includes $493,846,000 in base funding and $1,192,000 in program increases for new security systems and equipment and five new positions at USMS headquarters. The base consists of $331,961,000 for contract costs to support 4,261 CSO positions, $72,639,000 for FPS-provided security services, $70,402,000 for security systems and equipment, and $18,844,000 for all other costs associated with the court security program, to include the funding of 64 administrative support and 18 contractor positions at the USMS, and
6 positions at the Administrative Office.

The funding requested for this program will be used to continue to provide an appropriate level of security at existing court facilities and to provide security coverage at new and renovated facilities.

The following sections provide information and justification for each of the adjustments to base, as well as the resources needed for program increases.

**<u>ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES</u>**

**A. <u>PERSONNEL AND OTHER PROGRAMS</u>**

*1. Pay and benefits adjustments*

**a. Annualization of January 2010 pay adjustment**

**Requested Increase: $39,000**

As a result of the nationwide ECI and locality pay adjustments, federal pay rates in the Washington, D.C. area increased by 2.42 percent in January 2010. The requested increase annualizes this pay increase for the first three months of fiscal year 2011 for AO and USMS personnel.

**b. Proposed January 2011 pay adjustment**

**Requested Increase: $125,000**

As of November 2009, the Office of Management and Budget (OMB) is projecting that federal pay rates will increase by an average of 1.4 percent beginning on or after January 1, 2011. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2011 for AO and the judiciary-funded USMS personnel.

**c. Promotions and within-grade increases**

**Requested Increase: $74,000**

The requested increase provides for promotions and within-grade increases for personnel. The AO salary plan as well as the USMS salary plan provides for periodic within-grade increases for staff who receive at least a satisfactory performance rating.

**d. Health benefits increase**

**Requested Increase: $24,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 7 percent in January 2010 and January 2011. The requested increase annualizes the 2010 premium increase, and includes a nine-month provision for the anticipated fiscal year 2011 premium increase and other changes.

**e. FERS increase**

**Requested Increase: $16,000**

Funds are requested to provide for new benefits for employees covered by the Federal Employees Retirement System (FERS), pursuant to the National Defense Authorization Act for Fiscal Year 2010, P.L. 111-84. The requested increase includes the additional agency contribution for FERS employees from 11.2 percent to 11.7 percent.

***2. Annualization of fiscal year 2010 CSO positions (20)***

**Requested Increase: $832,000**

In fiscal year 2010, partial funding was requested to support 20 new contract CSO positions. Funding required to provide existing court facilities with additional CSO positions, consistent with the CSO staffing formula, is based on projected occupancy dates for new and existing space, and a fifty percent lapse rate. This request includes the increase required to fund the full-year cost of the 20 CSO positions.

***3. Fiscal year 2011 Department of Labor and Collective Bargaining Agreements wage rate adjustments***

**Requested Increase: $13,295,000**

A total of $13,295,000 is requested for anticipated increases in the hourly rates and overtime pay for CSO services in fiscal year 2011. The request is an average increase of four percent on a national basis over fiscal year 2010 projected levels.

The minimum hourly wage rates paid by the vendors who are retained by the USMS to provide CSO services are determined by the Department of Labor, and vary around the country based on an annual assessment of the prevailing wage rates paid for occupations similar to the CSO category of service in a specific locality. CSO wages are also adjusted through collective bargaining agreements negotiated between CSO contractors and unions. In accordance with the McNamara O'Hara Service Contract Act, the contract CSOs must be paid, at a minimum, the hourly rates determined by the Department of Labor unless a collective bargaining agreement is in place

4. ***Inflationary increases in charges for contracts, services, supplies, and equipment***

**Requested Increase: $64,000**

Consistent with guidance from the OMB, $64,000 is required to fund inflationary increases of 1.1 percent for operating expenses such as travel, utilities, printing, contractual services, supplies and materials, and furniture and equipment (exclusive of the CSO contracts).

5. ***Inflationary increase in GSA space rental costs***

**Requested Increase: $140,000**

This request represents an inflationary increase and adjustments in the cost of GSA space rental charges for space used by the CSOs.

6. ***Additional CSOs (30) associated with fiscal year 2011 new and existing space***

**Requested Increase: $2,071,000**

Each year, the USMS conducts a nationwide budget call to determine each court's current and future requirements for CSOs. Based on the most recent review, 30 additional CSO positions are required to meet the security needs of the courts, as determined by the CSO staffing formula. The additional CSOs are requested for new or existing court-occupied space based on projected occupancy dates. This request will bring the total CSO level to 4,224.

7. ***Changes in Federal Protective Service security charges***

**Requested Increase: $5,385,000**

The fiscal year 2011 security cost estimate of $72.6 million for FPS security services consists of basic security ($28.0 million) and building-specific operating expenses ($44.6 million). This represents an increase of $5.4 million from the fiscal year 2010 estimate of $67.3 million. This estimate is based on anticipated billings provided by FPS, and includes increases due to additional court occupied space that is expected to come on-line in fiscal year 2011. Additional information regarding the increases in FPS security charges is summarized below:

**a. Increase in basic security charges: $1,676,000**

The fiscal year 2011 request for basic security charges is $28.0 million, which is $1.7 million above the fiscal year 2010 funded level. The fiscal year 2010 basic security square footage charge is $0.66 per square foot, and the fiscal year 2011 square footage charge is estimated to be $0.70 per square foot. Basic FPS security charges are assessed to all GSA-controlled properties, both leased and government-owned. The annual rate is developed by FPS and approved by the Office of Management and Budget on a per square foot basis.

**b. Increase in building-specific operating expense security charges: $3,709,000**

The total fiscal year 2011 request for building-specific operating expense security charges is $44.6 million, which is $3.7 million above the fiscal year 2010 funded level. Building-specific security charges fund FPS-provided contract guards and security equipment, including maintenance. The funding

requested is based on an estimate provided by FPS for anticipated services in fiscal year 2011.

Building-specific charges are based on FPS-provided countermeasures for a specific building and are charged to all federal tenants by building in direct proportion to each customer agency's percentage of federal occupancy. Each building has a building security committee (BSC) and each customer agency has representation on their respective committee and each agency representative has a single vote, regardless of the portion of the building square footage it occupies. Since the judiciary often occupies a greater amount of space in multi-tenant facilities, and, as such pays a greater percentage of the security charges, the AO is working with FPS to revise the voting process so that voting is weighted in proportion to building occupancy rather than one vote per tenant. In that way, the judiciary can have more control over the costs that are assessed.

The BSC consults with and seeks recommendations from FPS as to new or revised countermeasures. A customer agency cannot avoid a building-specific charge if a majority of BSC members endorse a particular countermeasure. FPS is responsible for maintaining records of these operating expenditures on a building-by-building basis. These expenses are based on FPS projections and may be adjusted as a result of the current, ongoing review of FPS charges by the judiciary.

Building-specific operating expenses include:

- Building-wide contract guards, both fixed post and roving, assigned to a specific building;
- Purchase, installation and maintenance of security devices such as cameras, alarms, motion detectors, and other physical security features; and
- Pro-rata share of administrative costs.

(Note: In courthouse facilities, the two categories of operating expenses listed above are usually limited to the perimeter of the building because interior coverage is provided by the USMS).

A significant deficiency involving the FPS method of recommending countermeasures to BSCs is that it is most often done out of the normal budget cycle, which then causes the tenant agencies to forgo funding previously approved measures in order to fund an FPS "mandatory countermeasure." Also, the overhead charges levied by FPS on tenant agencies are considerably higher than the overhead costs generated by the judiciary-funded and USMS-administered JFSP.

***8. Adjustment to base for security systems and equipment***

| | |
|---|---|
| **Requested Increase:** | **$16,898,896** |
| **Non-recurring Reductions:** | **( 7,124,403)** |
| **Net Increase:** | **$ 9,774,493** |

The requested amount reflects a net increase of $9.8 million in the court security systems and equipment acquisition plan. The total increase of $16.9 million was offset by reductions of $7.1 million. The chart on page 8.24 provides further information regarding the judiciary's security systems and equipment funding requirements. Increases are requested for security equipment for new and renovated court facilities; cyclical replacement of screening equipment; perimeter security improvements; cyclical replacement of explosive trace detection systems; and cyclical replacement of hardware and software for access control systems as follows:

- Perimeter Security Improvements *(Requested Increase: $4,039,411)*
  Perimeter security improvements consist of the installation of guard booths and vehicle barriers, such as planters and hydraulic bollards, to help maintain a secure setback for the courthouse and limit damage that could result from an explosive device. In addition, the installation of perimeter CCTV surveillance systems and intrusion detection systems are covered in this category.

  Perimeter security enhancements allow the USMS to screen vehicle traffic adequately; provide pedestrian separation; obscure the public's view of judicial officers; and limit the potential damage and loss of life from Improvised Explosive Devices (IEDs). Generally, only those facilities which primarily house court activities (those in which 75 percent or more of the rentable space is occupied by court related activities) are eligible for full funding and thus full coverage. Funding for perimeter improvements to multi-tenant federal buildings is requested only for the court's pro rata share.

- Cyclical Replacement of Hardware & Software for Access Control Systems *(Requested Increase: $3,434,648)*
  This initiative consists of upgrading and replacing access control systems nationwide to meet Homeland Security Presidential Directive 12 (HSPD-12) compliance requirements, as well as the implementation of a cyclical replacement program for these systems.

  Systems being replaced under this program primarily control interior access to court space in courthouses. The majority of these systems do not interface with the GSA perimeter access control systems. In those cases where the USMS system also controls perimeter access to the facility, all cyclical replacement systems will be HSPD-12 compliant and therefore will allow the enrollment of GSA issued "smartcard" access cards. Like all other facility employees, GSA personnel would schedule with the USMS to have existing smartcards enrolled into the new USMS Access Control System and then be granted access to designated areas.

- Cyclical Replacement of Explosive Trace Detection (ETD) Systems *(Requested Increase: $3,700,000)*
  Funding is requested to ensure that ETD systems are replaced as they become technologically obsolete, or when maintenance and repair costs exceed the purchase price of a replacement unit. Advances in hardware and software for ETD systems justify a phased technology replacement methodology.

- Equipment for New and Renovated Court Facilities *(Requested Increase: $2,899,287)*
  Funds the design, procurement and installation of security systems and equipment for new and renovated court facilities. Funding is being increased due to additional buildings coming on-line in fiscal year 2011.
  The typical security system installed in court facilities includes duress and intruder alarm equipment, closed circuit television (CCTV) surveillance cameras, card based access control systems and command and control centers. *The U.S. Courts Design Guide* outlines the types of security equipment to be installed in a courthouse. *The U.S. Marshals Service's Requirements and Specifications for Special Purpose and Support Space Manual Vol. III* provides how and where the devices should be placed.

  In recent years, the *Design Guide* has been updated and provides for additional security system coverage, e.g., cameras in the courtrooms, increased duress alarm coverage and more extensive use of card based access controls throughout the building. These changes have resulted in a need for more sophisticated control systems located in the command and control centers.

- Cyclical Replacement of Screening Equipment *(Requested Increase. $2,825,550)*
  The cyclical replacement program ensures walk-through metal detector and x-ray screening systems are replaced when they become technologically obsolete or when maintenance costs exceed a pre-determined threshold.

The net decrease in funding for security systems and equipment below the fiscal year 2010 funded base is due to non-recurring requirements. These decreases are detailed below:

- Equipment for Probation & Pretrial Services Offices and Federal Public Defender Services Organizations:
  *(Requested Decrease: $1,983,000)*
  Provides new equipment and upgrades to existing systems, for probation, pretrial services and federal public defender offices. Funding is being decreased because fewer security enhancements will be required in fiscal year 2011 for probation, pretrial services and Federal Public Defender Services offices.

- Cyclical Replacement of CSO Handheld Radios, Repeater Installations, CSO Radios and Radio Repairs and Spare Accessories: *(Requested Decrease: $1,694,125)*
  Courthouse radio systems are reliable in-building radio communications systems used by CSOs and deputy marshals as they carry out courthouse security in judicial facilities. Funding is being decreased based on the USMS's assessment of its inventory of replacement CSO radios.

- Maintenance Contract for Security Systems and Equipment: *(Requested Decrease: $1,134,504)*
  A reduction in funding is requested for the preventive maintenance of x-ray screening systems and walk-through metal detectors; maintenance of security systems, and non-maintenance service calls. Non-maintenance service calls are service calls which do not pertain to the repair of equipment under the annual maintenance service contract such as when components need to be relocated to accommodate staff repositioning, or equipment fails due to human intervention. This mechanism can also be used to provide equipment operation training to CSOs on an as-needed basis. Funding is being decreased because maintenance costs for x-ray machines and metal detectors will no longer be a part of the nationwide maintenance contract.

- Additional and Replacement Equipment Equipment: *(Requested Decrease: $997,425)*
  This category provides general enhancements or upgrades to surveillance CCTV systems, access control systems, alarm systems, and command and control centers in newly occupied space in existing court facilities and will be used to replace outdated equipment in currently occupied space. All equipment requests are evaluated against standards specified by the *U.S. Courts Design Guide* and the districts' unique site-specific security requirements for individual facilities.

  This category includes mandatory equipment necessitated by non-prospectus level office moves, new courtrooms and chambers, equipment required to comply with security levels specified by the *U.S. Courts Design Guide*; and equipment necessary to enhance and upgrade existing security systems. The equipment requirements include courtroom cameras, vault intruder alarms, cameras viewing emergency exit doors, audio/video links between courtrooms and isolation cells used for unruly defendants, and CCTV systems for judge's parking areas in response to threats or identified security weaknesses. Funding is being decreased based on the USMS's assessment of the existing inventory of CCTV systems, access control systems, alarm systems, and command and control centers.

- Spare Parts and Repair Services for Explosive Trace Detection Systems: *(Requested Decrease: $593,052)*
  Funds supplies and spare parts to operate the explosive detection and radiation sensors. Funding is being decreased based on lower requirements for anticipated spare parts and repair services for ETD systems needed in fiscal year 2011.

- Expansion of ETD Systems: *(Requested Decrease: $500,000)*
  Funding in this category provided for the expansion of the use of explosives trace detection (ETD) systems to select courthouses which did not meet the original deployment criteria in 2002. Typically, this includes multi-tenant court facilities in which court activities occupy less than 75 percent of rentable space, or where collocated with U.S. Postal Service postal operations. This initiative should ultimately include all courthouse locations at which CSOs conduct main entry screening, and where there is a minimum of one judicial official. Less funding is needed in fiscal year 2011 based on the USMS's implementation schedule for ETD systems in multi-tenant facilities.

- <u>Screening Equipment for New Court Facilities</u>: *(Requested Decrease: $222,297)*
  Funds the procurement of x-ray machines and metal detectors in public lobbies and loading docks of new and extensively renovated courthouses prior to occupancy and explosive trace detection systems. Funding is being decreased due to fewer buildings coming on-line in fiscal year 2011 that will require new screening equipment.

**9. *Security requirements for high threat trials***

**Requested Increase: $5,285,008**

An increase of $5.3 million is requested for security-related costs associated with anticipated high-threat, high-profile trials in fiscal year 2011.

***10. Non-recurring requirements***

**Requested Decrease: ($885,000)**

Non-recurring costs include reductions of ($885,000) to one-time administrative expenses associated with information technology funding to bring the base in line with lower funding requirements.

***11. Maintain fiscal year 2010 base requirements funded through non-appropriated sources of funds***

**Requested Increase: $5,000,000**

This account is financed through direct appropriations and the use of funds carried forward from prior fiscal years. In fiscal year 2010, a total of $5 0 million in carryforward balances is available to finance requirements. The judiciary requests that the $5.0 million in no-year carryforward balances be replaced with direct appropriations in order to maintain the fiscal year 2010 current services level in fiscal year 2011.

***B.* <u>PROGRAM INCREASES</u>**

***12. Pilot of Facial Recognition System***

**Requested Increase: $200,000**

The USMS recommends implementation of an initiative to pilot facial recognition systems in court facilities. This initiative will provide effective technology to identify and prevent individuals who are "persons of interest" from entering courthouse facilities. The systems represent a breakthrough in identity management and access control at screening locations and are becoming widely used at border stations and transportation facilities. Using complex algorithms to evaluate a variety of facial geometric characteristics, the systems compare the results with a database, or watch list, of individuals determined to be of interest by the USMS.

Currently, many federal courthouses maintain a watch list of individuals that present a potential danger to a judge or other court employee. These existing watch lists will be incorporated into the facial recognition systems, thus improving identification rates and subsequent access denial by CSOs of identified individuals.

The USMS does not maintain a biometric database; other agencies maintain various local and national databases. Access and use of those databases would need to be established prior to utilization; however, any database containing biographical data and photographs could be incorporated into a USMS database once a usage agreement has been reached. Existing databases include known or suspected terrorists, wanted persons, abducted or missing persons or sex offender registry subjects.

Additional benefits of facial recognition systems include the use of commercial off-the-shelf hardware (keeping costs low) and the unobtrusive appearance of the facial recognition systems, which will preserve courthouse lobby aesthetics. Additionally, facial recognition system deployment does not alter the screening process. Upon alert notification, CSOs can quickly assess and respond through the use of a simple color based alarm scheme. The typical system costs approximately $25,000 per screening location. Costs vary due to site conditions and the number of screening locations per site. The pilot sites will be selected based on a number of factors including, but not limited to, number of resident judges, facility size, and number of entry points.

***13. Nationwide Contract for Vehicle Barrier Maintenance***

**Requested Increase: $683,000**

This request seeks funding to establish a nationwide preventive maintenance contract and repair program for vehicle barriers installed by the USMS. This approach will increase the reliability of the vehicle barriers and reduce frequency of breakdowns. The USMS estimates that a nationwide contract will reduce the average down-time due to failures from 39 days to less than seven, and increase the time that the barriers remain operable. Currently, vehicle barriers are serviced only after they breakdown. Implementing an annual maintenance program will contribute to the preservation of courthouse standoff, enhance safety for vehicle operators and pedestrians, reduce disruptive barrier repairs and replacements, and increase the life of the barriers.

In 2007, the USMS collected extensive data on vehicle barrier systems protecting federal courthouses nationwide. Cross referencing this data with the GSA operable barrier system inventory, the USMS identified 91 systems for which the USMS is responsible for maintenance and repair. Using the U.S. Army Corps of Engineers (COE) vehicle barrier maintenance guide and supporting data from barrier repair companies, the Office of Security Systems (OSS) developed base line requirements for maintaining USMS active barrier systems. The requirements include, but are not limited to: technical 24/7 support, maintenance training, emergency response, preventive maintenance, repairs and troubleshooting. The USMS's request is based on the COE's estimate of $7,500 per barrier system. Using the COE maintenance schedule and the estimated amount of $7,500 per operable barrier system, the total cost would be $682,500 per year for the 91 systems.

**14.** ***Five New Judiciary-funded USMS Positions***

**Requested Increase: $309,000** **FTE: 3**

The judiciary presently funds 70 FTE including positions at the Administrative Office; an additional 3 FTE (5 positions) are requested for the USMS for fiscal year 2011. A summary of the staffing being funded by the judiciary is provided below.

| | FY 2009 Authorized | FY 2010 Estimate | FY 2011 Request | Requested Increase |
|---|---|---|---|---|
| FTE | 62 | 70 | 73 | 3 |

For fiscal year 2011, the USMS has requested five new positions including:

- one GS-13 Physical Security Specialist
- one GS-13 Criminal Investigator
- two GS-9/12 Program Analysts
- one GS-9/12 Budget Analyst

**Office of Security Systems (OSS) - (1) GS-13 Physical Security Specialist (0.5 FTE)**

Over the past few years, the court security equipment program has grown significantly. This has occurred as a result of greater focus and attention on improved security procedures, security equipment research and selection, financial controls and the need for inventory accuracy. Additional personnel are required to keep pace with this growth. In fiscal year 2008, the judiciary began funding for security screening equipment and CSOs for probation and pretrial services offices in leased space In fiscal year 2009, OSS was heavily involved in initial planning for potential high-threat trials, and will play an important role over the coming years in securing the facilities selected to host high-threat trials. In addition, the courts increasingly rely upon the USMS to oversee courthouse perimeter security Together, these new and expanded responsibilities have served to dramatically increase the workload for OSS staff The USMS maintains that this increased workload will impact its ability to protect the judiciary properly, or to meet the judiciary's expectations of timely, accurate and technologically current delivery of systems services. The first step to addressing this critical need was taken with the addition of six new positions in fiscal year 2009. The addition of one GS-13 physical security specialist in fiscal year 2011 will allow OSS to continue improving delivery of security systems, to support high-threat trials and to address the possible expansion of perimeter security responsibilities should the perimeter security pilot program expand.

**Office of Court Security (OCS) – (3) Positions – (1) GS-13 Criminal Investigator and (2) GS-9/11/12 Program Analysts (1.5 FTE)**

The OCS continues to face a monumental workload, which is stemming from CSO staffing issues; the annual CSO medical evaluations; the new background investigation requirements mandated by the HSPD-12; and other special projects. Major focus and development are also required in the area of information technology. While such improvements began in fiscal year 2007, an extensive amount of work must be completed so that program functions can be performed more expeditiously. To address these issues, one GS-13 criminal investigator and two GS-9/11/12 program analyst positions are requested

**Office of Financial Management (OFM) – (1) GS-560-9/11/12 Budget Analyst (0.5 FTE)**

The additional workload resulting from the expanded responsibilities as well as the increase in personnel of OSS and the Office of Security Contracts (OSC) has begun to impact the OFM. In fiscal year 2009, OSS received six new positions, OSC received three new positions and the OFM received three new positions. Currently, one GS-13 budget analyst and one contractor position are responsible for all financial management and accounting aspects of the security systems and equipment budget, as well as coordination with OSC on the numerous task orders that are issued. In fiscal year 2009, approximately 525 obligating documents were entered in support of OSS alone and are part of this validation process. An additional budget analyst at this grade level is required in fiscal year 2011 to maintain the internal controls and reporting abilities that have been established.

During the past couple of years, the financial audits have included a greater focus on and management of undelivered orders. The proper recording of obligations and accruals, as well as the oversight of payments and proper recording of deobligations, is critical to ensuring a complete and valid financial picture. To this end, the USMS's Financial Services Division has instituted a monthly reporting requirement on all open obligations (for the current year and five previous years) in all divisions.

The chart on page 8.24 provides further information regarding the judiciary's security systems and equipment funding requirements.

**Court Security Appropriation**
**Security Systems & Equipment Funding Summary**
**Fiscal Years 2010 and 2011**

| Category | FY 2010 Plan $000 | FY 2011 Request $000 | Diff FY 10 vs 11 $000 |
|---|---|---|---|
| Other Additional and Replacement Equipment 1/ | 14,915,847 | 13,918,422 | (997,425) |
| Hardware & Software for Access Control Systems | 4,000,000 | 7,434,648 | 3,434 648 |
| Cyclical Replacement of X-Ray Screening Equipment and Walk-Thru Metal Detectors | 88,800 | 2,914,350 | 2,825,550 |
| Screening Equipment for New Buildings | 597,330 | 375,033 | (222,297) |
| Cyclical Replacement of Explosive Trace Detection Systems | 2,300,000 | 6,000 000 | 3,700,000 |
| Expansion of Explosive Trace Detection | 500,000 | - | (500,000) |
| Cyclical Replacement of CSO Handheld Radios, Repeater Installations, CSO Radios and Radio Repairs and Spare Accessories | 3,528,825 | 1 834,700 | (1,694,125) |
| Perimeter Security Improvements 1/ | 9,000,000 | 13,039,411 | 4 039,411 |
| Maintenance Contract for Security Systems and Equipment | 13,039,412 | 11,904,908 | (1,134 504) |
| Security Systems for New and Renovated Facilities | 4 753,800 | 7,653 087 | 2 899,287 |
| Equipment for Probation, Pretrial Services & Public Defender Services Offices 1/ | 3 183 000 | 1,200,000 | (1 983 000) |
| Screening Equipment for New Court Entrances | - | - | - |
| Itemiser Consumables, Spare Parts & Repair Service for Trace Explosives Detectors | 593,052 | - | (593 052) |
| GSA Installation/Alterations 1/ | 4,000,000 | 4,000,000 | |
| High Threat Trials | | 128,000 | 128,000 |
| Total Increases, Adjustments to Base | - | - | 17,026 896 |
| Non-Recurring Reductions | - | - | (7,124 403) |
| Net Increase, Adjustments to Base | - | - | 9,902,493 |
| Program Increase | | | |
| Facial Recognition Systems (Pilot Program) | - | 200,000 | 200,000 |
| Nationwide Contract for Vehicle Barrier Maintenance | | 682,500 | 682,500 |
| Total Requirement | 60,500,066 | 71,285,059 | 10,784,993 |

1/ Amounts in these categories (example of other equipment access control, alarm systems, command and control center, etc ) represent the requests submitted by individual districts All requests are evaluated by the U S Marshals Service against standards specified by the U S Courts Design Guide the USMS' Requirements and Specifications for Special Purpose and Support Space Manual and the districts' unique site specific security requirements for individual facilities. The requests are denied if they are not consistent with the applicable standards

## ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS

*Salaries and Expenses*

## SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | |
|---|---|
| **Fiscal Year 2010 Appropriation** | **$83,075,000** |
| **Fiscal Year 2011 Appropriation Request** | **$87,255,000** |
| **Requested Increase from Fiscal Year 2010 Appropriation** | **$4,180,000** |

**APPROPRIATION LANGUAGE**

**ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS**

**SALARIES AND EXPENSES**

For necessary expenses of the Administrative Office of the United States Courts as authorized by law, including travel as authorized by 31 U.S.C. 1345, hire of a passenger motor vehicle as authorized by 31 U S.C 1343(b), advertising and rent in the District of Columbia and elsewhere, [$83,075,000] *$87,255,000,* of which not to exceed $8,500 is authorized for official reception and representation expenses

**SUMMARY OF REQUEST**
**ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS**
**FISCAL YEAR 2011**
**(Dollar amounts in thousands)**

**Fiscal Year 2011 Resource Requirements:**

| Page No. | | FTEs | Amount |
|---|---|---|---|
| | **Fiscal Year 2010 Financial Plan** | **895** | **151,230** |
| | Estimated fiscal year 2010 fee collections | ... | (15,141) |
| | Fee carryforward from fiscal year 2009 into fiscal year 2010 | ... | (6,862) |
| | Carryforward from Judiciary Information Technology Fund | ... | (1,047) |
| | Reimbursable Programs | (256) | (45,105) |
| | **Fiscal Year 2010 Base Appropriation** | **639** | **83,075** |
| | **Adjustment to Base to Maintain Current Services:** | | |
| | **A. Personnel** | | |
| | 1. Pay and benefit adjustments | | |
| 9.13 | a. Annualization of January 2010 pay adjustment (2.42% for three months) | ... | 461 |
| 9.13 | b. Proposed January 2011 pay adjustment (1.4% for nine months) | ... | 986 |
| 9.13 | c. Promotions and within-grade increases | ... | 1,690 |
| 9.13 | d. Health benefits increase | ... | 280 |
| 9.14 | e. FERS increase | .. | 300 |

| Page No. | | | |
|---|---|---|---|
| | **B. Other Adjustments** | | |
| 9.14 | 2. Inflationary adjustments | . . | 65 |
| 9.14 | 3. Increased information technology infrastructure expenses to maintain current services | ... | 330 |
| 9.15 | 4. Decrease in appropriation to fund base requirements due to an increase in non-appropriated sources of funds | ... | (219) |
| | **Total, Adjustments to Base to Maintain Current Services** | **...** | **3,893** |
| | **Total Current Services Appropriation Required** | **639** | **86,968** |
| | **C. Program Increases** | | |
| 9.15 | 5. Four new court support positions (funded for 6 months) | 2 | 287 |
| | **Subtotal, program increases** | **2** | **287** |
| | **Total Fiscal Year 2011 Appropriation Required** | **641** | **87,255** |
| | **Total Appropriation Increase, Fiscal Year 2010 to Fiscal Year 2011** | **...** | **4,180** |
| | **<u>Financing the Fiscal Year 2011 Request:</u>** | | |
| | **Total Appropriation Required** | **641** | **87,255** |
| 9.16 | Estimated Fiscal Year 2011 fee collections | ... | 16,430 |
| 9.16 | Estimated fee carryforward from Fiscal Year 2010 into Fiscal Year 2011 | ... | 5,792 |
| 9.16 | Reimbursable programs | 259 | 47,106 |
| | **Estimated Obligations, Fiscal Year 2011** | **900** | **156,583** |

**ADMINISTRATIVE OFFICE**
**Salaries and Expenses**
**Obligations by Activity ($000)**

| Activity | Fiscal Year 2009 Actual<br>Total Obligations | Fiscal Year 2010 Estimate<br>Total Obligations | Fiscal Year 2011 Request<br>Total Obligations |
|---|---|---|---|
| Executive Direction | 1,614 | 1,490 | 1,548 |
| Program Direction and Policy Formulation | 10,254 | 10,653 | 11,065 |
| Court Administration | 12,781 | 13,198 | 14,008 |
| Defender Services | 6,962 | 8,167 | 8,483 |
| Facilities and Security | 7,161 | 7,514 | 7,879 |
| Finance and Budget | 11,938 | 12,622 | 13,261 |
| Human Resources | 13,946 | 15,168 | 15,753 |
| Information Technology | 10,714 | 11,154 | 11,660 |
| Internal Services [1/] | 44,767 | 47,581 | 49,415 |
| Information Technology Fund | 1,857 | 1,047 | - |
| Judges Programs | 14,588 | 15,493 | 16,092 |
| Probation & Pretrial Services | 6,674 | 7,143 | 7,419 |
| **Total Obligations** | **143,256** | **151,230** | **156,583** |
| Less Reimbursable Funding | (41,920) | (45,105) | (47,106) |
| **Total Direct Obligations** | **101,336** | **106,125** | **109,477** |
| Unobligated Balance, Start of Year Emergency Response Supplemental | (31) | - | - |
| Unobligated Balance, End of Year | - | - | - |
| **Available Budget Authority** | **143,225** | **151,230** | **156,583** |
| Offsetting Collections Federal Funds | (20,399) | (22,003) | (22,222) |
| Information Technology Fund | (1,857) | (1,047) | - |
| Reimbursable Programs | (41,920) | (45,105) | (47,106) |
| **Available Appropriation** | **$79,049** | **$83,075** | **$87,255** |

1/ Includes $33,329,000 in fiscal year 2010 for agency-wide employee benefits, lump sum leave, and other agency-wide costs, as well as funding for certain court support functions such as procurement, printing, mail, records, and web services management

**ADMINISTRATIVE OFFICE**
**Salaries and Expenses**
**Obligations by Budget Object Class ($000)**

| | **Fiscal Year 2009 Actual** | **Fiscal Year 2010 Estimate** | **Fiscal Year 2011 Request** |
|---|---|---|---|
| Description | Total Obligations | Total Obligations | Total Obligations |
| 1100 Personnel compensation | 106,118 | 112,544 | 116,798 |
| 1200 Personnel benefits | 25,690 | 27,391 | 28,672 |
| 1300 Benefits for former personnel | 59 | 11 | 11 |
| 2100 Travel | 1,497 | 1,769 | 1,815 |
| 2200 Transportation of things | 77 | 57 | 58 |
| 2330 Communications, utilities, & misc | 695 | 889 | 912 |
| 2400 Printing and reproduction | 62 | 109 | 113 |
| 2500 Other services | 5,922 | 5,685 | 5,831 |
| 2600 Supplies and materials | 454 | 554 | 569 |
| 3100 Equipment | 2,682 | 2,221 | 1,804 |
| **Total** | **143,256** | **151,230** | **156,583** |
| Less: Reimbursable Funding | (41,920) | (45,105) | (47,106) |
| **Total Direct** | **101,336** | **106,125** | **109,477** |

**ADMINISTRATIVE OFFICE**
**Salaries and Expenses**
**Full-time Equivalents by Activity**

| Activity | Fiscal Year 2009 Actual | Fiscal Year 2010 Estimate | Fiscal Year 2011 Request |
|---|---|---|---|
| Executive Direction | 9 | 8 | 8 |
| Program Direction and Policy Formulation | 76 | 77 | 77 |
| Court Administration | 100 | 100 | 102 |
| Defender Services | 47 | 52 | 53 |
| Facilities and Security | 56 | 55 | 56 |
| Finance and Budget | 102 | 103 | 104 |
| Human Resources | 128 | 132 | 132 |
| Information Technology | 84 | 85 | 85 |
| Internal Services | 109 | 109 | 109 |
| Judges Programs | 117 | 120 | 120 |
| Probation & Pretrial Services | 53 | 54 | 54 |
| **Total, Full Time Equivalents** | **881** | **895** | **900** |
| Less: Reimbursable Positions | (250) | (256) | (259) |
| **Total, Direct Full Time Equivalents** | **631** | **639** | **641** |

**ADMINISTRATIVE OFFICE**
**Salaries and Expenses**
**Relation of Obligations to Outlays ($000)**

| | FY 2009 Actual | FY 2010 Estimate | FY 2011 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total Obligations | 143,256 | 151,230 | 156,583 | 5,353 |
| Obligated Balance, start of year | 2,859 | 1,236 | 1,625 | 389 |
| Obligated Balance, end of year | (1,236) | (1,625) | (2,100) | (475) |
| Change in uncollected customer payments | 922 | 0 | 0 | 0 |
| **Total Outlays** | **145,801** | **150,841** | **156,108** | **5,267** |
| Less Offsetting Collections from: | | | | |
| Fee Collections (Federal Sources) | (20,399) | (22,003) | (22,222) | (219) |
| Judiciary Information Technology Fund | (1,857) | (1,047) | 0 | 1,047 |
| Reimbursable Programs | (41,920) | (45,105) | (47,106) | (2,001) |
| **Net Outlays** | **81,625** | **82,686** | **86,780** | **4,094** |

## GENERAL STATEMENT AND INFORMATION

This appropriation is for the necessary expenses of the Administrative Office of the United States Courts (AO), pursuant to 28 U.S.C. 601-613. Created by an Act of Congress in 1939, the AO is the central support entity for the judicial branch. It serves the federal judiciary in carrying out its constitutional mission to provide equal justice under the law

The AO provides administrative, legal, financial, management, program, security, and information technology services to the federal courts It provides support and staff counsel to the Judicial Conference of the United States and its committees, and implements Judicial Conference policies as well as applicable federal statutes and regulations. The AO is the focal point for communication and coordination within the judiciary and with Congress, the executive branch, and the public on behalf of the judiciary. The agency's lawyers, public administrators, accountants, systems engineers, analysts, architects, statisticians, security experts, and other staff provide professional services to meet the needs of judges and staff working in the federal courts nationwide. These include:

- Performing core central payroll, personnel, and accounting functions,
- Developing and executing the judiciary's budget and guiding local court budget execution;
- Collecting and analyzing statistics on court workload;
- Auditing court financial operations,
- Monitoring and reviewing program performance and use of resources;
- Developing and supporting automated systems and technologies used throughout the courts,
- Coordinating construction and management of court facilities with the General Services Administration;
- Monitoring U.S. Marshals Service implementation of the judicial facility security program;
- Defining court resource needs through caseload forecasts and work measurement analyses;
- Providing program leadership and support for circuit executives, clerks of court, probation and pretrial services officers, federal defenders, and other managers; and
- Developing and conducting education and training programs.

A table of selected workload indicators for the AO follows:

**Table 9.1 Selected AO Fiscal Year 2010 Workload Indicators**

| Indicators | Number |
|---|---|
| Active and senior judges *(Article III, bankruptcy, magistrate, and Court of Federal Claims)* | 2,264 |
| Court staff *(Appellate, district, bankruptcy, probation, pretrial services, and defenders)* | 30,776 |
| Court units *(Appellate, district, bankruptcy, probation and pretrial services)* | 368 |
| Federal defender organizations *(Districts)* | 90 |
| Court facilities *(GSA- and U S Postal Service-owned federal buildings and leased facilities)* | 802 |
| Judicial Conference committees | 25 |
| Court appropriations and fees *(Salaries and Expenses, Defender Services, Fees of Jurors, Court Security, and Judicial Retirement Funds)* | $6 9 billion |

Following is a summary of the major focus and accomplishments of the AO in supporting the federal courts during 2009.

**AO Service Improvement**

The AO's 2007 internal assessment by a group of judges, court executives, and AO executives included a review of AO functions and structure and the development of initiatives to enhance AO services to the federal judiciary. These initiatives included strengthening AO-court relations and delivery of services to the courts; improving AO internal processes, operations, and strategic direction; and optimizing management of AO human resources. During 2008, work teams developed implementation plans for these initiatives, and over 50 implementation efforts have been completed or are underway. During 2009, the AO launched three court/AO exchange programs designed to increase understanding of AO and court operations and improve knowledge transfer through temporary exchange of staff. The *Director's Leadership Program* brings senior and mid-level court staff, including federal defender organization staff, to the AO for assignments up to one year to work on national initiatives and high-priority projects. Four outstanding court candidates were selected as residents in the 2009 Director's Leadership Program inaugural class. The *AO Orientation and Knowledge Exchange Program* provides hands-on experience for AO staff who would benefit from greater exposure to court operations by spending time in a court. In September 2009, the first orientation program was hosted by the court units in Chicago. The *Temporary Duty Assignments Program* provides opportunities for court and AO staff to work on projects outside their regular work responsibilities. The program's goal is to improve understanding of and services to the courts and will enable court and defender organization staff to work at the AO, and AO staff to work in the courts and defender organizations.

**Pandemic Response and Emergency Preparedness**

With the H1N1 outbreak in April and May 2009, the judiciary's pandemic response plans which are designed to ensure the continuity of operations were activated. Over half of the courts have completed pandemic annexes to their continuity of operations plans, and most of the remaining courts have plans under development. The AO posted pandemic response templates on the judiciary's intranet website, which outline strategies and planning for critical elements such as delegations of authority, essential functions, telework, alternate work sites, and recovery. Each court adapts the templates to meet local requirements.

In June 2009, the AO participated in a Cross-Sector Coordination Planning Conference held in Indianapolis in support of the Southern District of Indiana. Federal and state agencies and community leaders in the areas of public health, corrections, law enforcement, as well as the judiciary, were represented. The AO provided advance support and prepared training materials following the conference for use by other courts in developing similar conferences and exercises. AO staff also conducted a nationwide court survey to identify issues pertaining to preparation and response in a pandemic flu environment. Based on survey results, a panel of experts conducted a series of H1N1 conference calls for all circuits on human capital, communications, telework, law enforcement, and health services concerns.

The AO also provides assistance to courts in response to natural events affecting judicial employees and operations and causing damage to facilities and equipment. In March 2009, severe storms and the Red River's flood waters threatened

court facilities in Fargo, North Dakota, forcing the district to activate the court's continuity plan and relocate operations to their alternate site. The AO's Judiciary Emergency Response Team, comprised of staff from 22 program offices at the AO, provided support to judges and court managers to address this potential disaster.

**Southwest Border Judicial Security**

In July 2009, the Directors of the AO and the U.S. Marshals Service (USMS) visited the Southwest border in response to concerns about the safety and growing caseload in the five judicial districts in this region. The Directors participated in highly productive meetings with judges and law enforcement personnel. The judiciary and the USMS have continued to work closely together to ensure that judges along the border are safe, and that assistance is provided to the border courts which are handling growing caseloads due to increased immigration and drug enforcement initiatives of the executive branch.

The Southwest border is the principal arrival zone for most illegal drugs smuggled into the United States. Increasing drug cartel violence across the border in Mexico has spilled over into the border states, with serious implications for U.S. judicial security. The judiciary and the USMS are working to address these issues and safeguard judges and their families. Supplemental funds provided to the USMS in fiscal year 2009 are being used to support home and transportation security improvements for judges.

**Facilities Planning**

A major effort of the judiciary and AO staff has been revising and strengthening the process for developing five-year courthouse construction and repair and alteration plans. Following adoption of a major cost-containment strategy by the Judicial Conference in 2004, a national moratorium on courthouse construction was imposed from 2004 to 2006. The judiciary reevaluated its space planning policies and practices and enhanced budgetary controls. The long-range facilities planning methodology was changed, with greater emphasis on the ability of a facility to accommodate additional space, rather than its physical attributes, in determining whether to recommend new courthouse construction versus renovation. A focus on cost resulted in realignment of project ranking criteria, giving greater weight to when a building is out of space and less to security and operational concerns. The new asset management planning process approved by the Judicial Conference improves long-range facility planning with: (1) comprehensive physical and functional assessments of each courthouse; (2) standardized planning assumptions; (3) strategies to address current and future space needs; (4) business rules that mandate first consideration of least costly real estate solutions; and (5) a method for establishing the order of precedence for which locations get major projects. Changes to the *U. S. Courts Design Guide* have contributed to reducing office size for staff and chambers space for judges, and a courtroom sharing policy for senior judges and magistrate judges will further reduce future requirements.

**Cost-Containment**

In 2004, the Judicial Conference adopted a comprehensive strategy for controlling future costs in the federal courts. Based on that strategy, cost-containment initiatives were implemented in a broad range of areas affecting all aspects of the courts, which have successfully limited the growth of space, personnel, and operating costs, resulting in hundreds of millions of dollars in savings or cost avoidance over the next decade. Given national fiscal constraints and the potential gap between future requirements and available resources, the Judicial Conference has renewed its commitment to cost-containment, to identify new avenues for savings and cost avoidance. This effort is a high priority of the AO and the Judicial Conference committees it supports. Initiatives in process or under development include:

- Defender case-budgeting for high-cost cases;
- Case weights for federal defender organizations;
- Criminal Justice Act payment electronic vouchering;
- Case-weighting study for bankruptcy judges;
- Courtroom usage study in bankruptcy courts;
- Mobile technology for probation/pretrial services;
- Further changes to *U. S. Courts Design Guide* standards; and
- Alternative approaches to developing staffing formulas.

In addition to these initiatives, the judiciary continues its efforts to update the telecommunications systems in the courts as well as accompanying data communications network upgrades. The new Data Communications Network should be much better equipped to handle increased traffic loads as the network technology will provide the capability to manage and prioritize the traffic, thereby making it significantly more efficient. The cost-avoidances will likely begin to manifest in about five years and could be up to $8 to $10 million per year.

**Judiciary Internal Oversight and Review**

The AO plays a vital role in the judiciary's system of oversight and review to promote effectiveness, efficiency, integrity, and economy. The AO conducts financial audits, program reviews, assessments, and evaluations to promote effective and economical business practices in AO and court operations. The AO publishes internal controls requirements for safeguarding judiciary assets. Its comprehensive and strong audit program for all judiciary funds complies with generally accepted government auditing standards.

Financial audits cover all court units, judiciary funds, and financial systems. Regular cyclical court audits are conducted on a four-year cycle for most courts, and on a 30-month cycle for larger courts. Courts are also audited after a change in clerk. Other audits cover retirement programs, registry funds, bankruptcy trustees and debtors, defender grants, and various operations.

In addition to audits, program reviews are also used to enhance internal oversight. Program reviews are a cooperative effort between the AO and the courts to provide an objective evaluation of court operations. The AO coordinates on-site court management assistance and program reviews at the request of chief judges and court managers.

In 2009, the AO led a major effort to provide all court units with a new and innovative methodology to evaluate their

internal control systems through the use of sophisticated monitoring software. The internal control evaluation system provides data-mining tools for court units to enhance their internal control systems both inside and outside of the judiciary's accounting system. This system provides court unit executives with the tools to protect court funds and preclude improper disbursements by enhancing separation of duties in day-to-day operations. As of September 2009, 26 pilot courts (105 court units) were fully operational on this system. Full implementation is expected by 2012.

The following table summarizes on-site court reviews and financial audits conducted by the AO during fiscal year 2009.

**Table 9.2 Program and Financial Reviews - Fiscal Year 2009**

| Type of Review | Number |
|---|---|
| On-site court reviews conducted by AO staff | 52 |
| Court financial audits supervised by AO staff | 101 |
| Debtor audits[1] | 304 |
| Total judiciary contract financial audit expenses | $5.3 million |

**[1]These audits began pursuant to section 603 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.**

**JUSTIFICATION OF CHANGES**

The Administrative Office appropriation request for fiscal year 2011 totals $87,255,000. This represents an increase of $4,180,000 or 5.0 percent, over the fiscal year 2010 appropriation of $83,075,000. The fiscal year 2011 budget request includes the funds needed to maintain current services, and 2 FTE (4 positions) to address high priority court support functions of the AO.

**ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES**

**Requested Increase: $3,893,000**

Adjustments to base include funding for salaries and benefits increases to support the fiscal year 2011 current services level. Also included are increased costs for recurring requirements, such as travel, communications, service agreements, and supplies.

**A. PERSONNEL**

*1. Pay and Benefit Adjustments*

**a. Annualization of January 2010 pay adjustment**

**Requested Increase: $461,000**

As a result of nationwide ECI and locality pay adjustments, federal pay rates in the Washington, D.C. area increased by 2.42 percent in January 2010. The requested increase annualizes this pay increase for the first three months of fiscal year 2011 for AO personnel.

**b. Proposed January 2011 pay adjustment**

**Requested Increase: $ 986,000**

The Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.4 percent beginning on or after January 1, 2011. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2011.

**c. Promotions and within-grade increases**

**Requested Increase: $1,690,000**

The requested increase provides for promotions and step increases for AO personnel. The AO salary plan provides for periodic step increases for staff who receive at least a satisfactory performance rating.

**d. Health benefits increase**

**Requested Increase: $280,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 7.0 percent in January 2010 and another 7.0 percent in January 2011. The requested increase annualizes the 2010 premium increase, and includes a nine-month provision for the anticipated fiscal year 2011 premium increase and other changes.

e. **FERS Increase**

**Requested Increase: $300,000**

Funds are requested to provide for new benefits for employees covered by the Federal Employees Retirement System (FERS), pursuant to the National Defense Authorization Act for Fiscal Year 2010, P.L. 111-84. The requested increase includes the additional agency contribution for FERS employees from 11.2 percent to 11.7 percent.

**B. OTHER ADJUSTMENTS**

***2. Inflationary adjustments***

**Requested Increase: $65,000**

Consistent with guidance from the Office of Management and Budget, this request of $65,000 is required to fund inflationary increases of 1.1 percent for operating expenses such as travel, communications, printing, contractual services, supplies and materials, and furniture and equipment.

***3. Increased information technology infrastructure expenses to maintain current services***

**Requested Increase: $330,000**

Maintaining and replacing the AO information technology infrastructure including personal computers and related desktop equipment is critical to the operation, productivity, and efficiency of the AO, and ensures business continuity. A sufficient base amount is not available for this purpose in the AO appropriation. Replacement and upgrade of equipment has been accomplished in the last few years through use of balances identified at the end of the fiscal year and deposited in the Judiciary Information Technology Fund to implement information technology replacement plans. However, it is no longer possible to rely on end-of-year balances as a source of funding for equipment replacement, because the AO needs to use all of its funded FTE, and the demands of pandemic response and the need to enable remote work in emergency situations require increased resources for information technology infrastructure including equipment replacement and upgrade. The amount requested, $330,000, together with $270,000 from reimbursable sources, will provide a base of $600,000 for information technology infrastructure expenses.

Generally, a standard four-year replacement cycle is used for replacement of equipment with consideration of equipment usability, the specific needs of the user, and conformance with operating system and software requirements.

4. ***Decrease in appropriation to fund base requirements due to increase in non-appropriated sources of funds***

**Requested Decrease: ($219,000)**

This account is financed through direct appropriations and the use of non-appropriated funds, including judiciary fee collections and fee carryforward. In fiscal year 2010, the judiciary expects to have a total of $22.0 million in non-appropriated funds available to finance AO requirements. In fiscal year 2011, the judiciary expects $22.2 million in non-appropriated funds to be available for the AO, an increase of $0.2 million from fiscal year 2010. Thus, the appropriations request can be reduced by $0 2 million.

## C. PROGRAM INCREASES

5. ***Four new court support positions (funded for 6 months)***

**Requested Increase: $287,000 FTE: 2**

An increase in staffing of 2 FTEs (4 positions) is requested to address high priority court support functions of the AO. It is the first request for additional AO-funded staff in six years.

Two positions are requested to support a comprehensive modernization and consolidation of the judiciary's nationwide accounting system ($FAS_4T$). This will be a multi-year effort that will provide the judiciary with significant improvements in its accounting for appropriated funds. Once fully implemented, the AO will be able to assume the critically important disbursement functions currently performed by the courts. Included as part of this $FAS_4T$ upgrade will be the ability to disburse individual and vendor payments electronically, a major initiative of the Department of Treasury. Currently, the AO is not staffed to handle these new responsibilities that it will assume from the courts. Two additional operating accountant positions are requested to develop and implement this new disbursing capability, which will strengthen internal control and financial accountability.

The primary information technology system in probation and pretrial services (PACTS) is reaching its capacity with 8,000 users and more than one million records. The PACTS system contains the vital information for supervising offenders, monitoring compliance with conditions of release, and other services to reduce recidivism and promote successful post-incarceration re-entry of offenders to protect public safety. One additional position is requested for a database manager to oversee the replacement effort. This position will be responsible for aiding in the security, accuracy, and usefulness of the data contained in PACTS Generation 3.

High-profile and complex facilities and security functions of the judiciary require close coordination between program offices throughout the AO, several executive branch agencies, Congress, and two Judicial Conference committees. A considerable effort is underway to implement cost-containment initiatives and oversee courthouse construction and rent management. These efforts are producing significant savings and enhancing accountability. There are increasing demands for court security, judicial protection, pandemic planning, continuity of operations, and emergency preparedness. The workload demands confronting facilities and security staff are substantial, and usually of an urgent nature. One additional position is requested to ensure that these critical demands are met in a timely and thorough manner.

## FINANCING THE FISCAL YEAR 2011 REQUEST

***Estimated Fiscal Year 2011 Fee Collections***

**Estimated Funds Available: $16,430,000**

The judiciary has authority to collect fees for various services such as bankruptcy filing, civil filing, bankruptcy noticing, and registry administration. These fees are used to reimburse judiciary appropriations and are available without fiscal year limitation. The judiciary estimates that $16.4 million of these fees will be available to offset the fiscal year 2011 AO budget request.

***Estimated fee carryforward from Fiscal Year 2010 into Fiscal Year 2011***

**Estimated funds available: $5,792,000**

In addition to receiving a portion of new fee collections, the AO account also receives a portion of the fee balances carried over from prior years. This request reflects funds from fee carryforward balances in the judiciary fee accounts that will be available to offset the AO fiscal year 2011 budget request. The judiciary will advise appropriations subcommittee staffs of changes to this estimate.

***Reimbursable Programs***

**Funds Available: $47,106,000** **FTE: 259**

**Requested Increase: $2,001,000** **FTE: 3**

Beginning in 1990, Congress authorized reimbursable funds for the AO to carry out specific support functions for the courts. These functions include defender services audits and assessments, federal defender training, court automation, case management improvement, court security, court financial administration, court financial systems, background investigations, and financial disclosure.

The request for the AO reimbursable program includes funding for 259 FTE from the Salaries and Expenses, Defender Services, and Court Security appropriations under *Courts of Appeals, District Courts, and Other Judicial Services*. This level includes 1 FTE to annualize 3 new Defender Services positions included in the fiscal year 2010 budget and 2 additional FTEs (5 positions) for high priority court support functions as follows:

Four positions are requested to address the effort anticipated in the development and support of the next generation Case Management/Electronic Case Files (CM/ECF) system. CM/ECF is the core case management tool for judges and clerks' office staff. To continue to meet the case filing and case management needs of judges, chambers, clerks' offices, the bar, debtors, litigants, claimants, trustees, and other users

and to improve the current level of court efficiency in light of changing technology, the next generation of CM/ECF is being developed. This next generation will incorporate new technologies and enhance functionality.

One position is requested to support a new telecommunications program for the judiciary which will result in increased productivity, cost savings, and cost avoidance. The judiciary has awarded a new contract that will replace the existing Data Communications Network (DCN) and will provide the judiciary opportunities to expand the current telecommunications services utilized by the courts. This network will allow the judiciary to run voice, video, and data services over one network. The telecommunications program offered by the AO will provide the courts with centralized services supporting telephone systems, video bridging, and data center hosting. The development, deployment and management of these additional services will be the responsibility of the AO staff, and the workload associated with this effort will be substantial.

**FEDERAL JUDICIAL CENTER**
***Salaries and Expenses***
**SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS**

| | |
|---|---|
| **Fiscal Year 2010 Appropriation** | **$27,328,000** |
| **Fiscal Year 2011 Requested Appropriation** | **$28,694,000** |
| **Requested Increase from Fiscal Year 2010 Appropriation** | **$1,366,000** |

**APPROPRIATION LANGUAGE**

**FEDERAL JUDICIAL CENTER**
**SALARIES AND EXPENSES**

For necessary expenses of the Federal Judicial Center, as authorized by Public Law 90-219, [$27,328,000] *$28,694,000;* of which $1,800,000 shall remain available until September 30, [2011] *2012*, to provide education and training to Federal court personnel; and of which not to exceed $1,500 is authorized for official reception and representation expenses.

**SUMMARY OF REQUEST**
**FEDERAL JUDICIAL CENTER**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2011**
**(Dollar amounts in thousands)**

**Fiscal Year 2011 Resource Requirements:**

| | FTEs | Amount |
|---|---|---|
| **Fiscal Year 2010 Obligations** | **139** | **28,036** |
| Reimbursements from Federal Accounts and FJC Foundation | (1) | (708) |
| **Fiscal Year 2010 Base Appropriation** | **138** | **27,328** |

| Page No. | Adjustments to Base to Maintain Current Services: | FTEs | Amount |
|---|---|---|---|
| | **A. Personnel and Programs** | | |
| | 1. Pay and benefit cost adjustments | | |
| 10.9 | a. Annualization of the January 2010 pay adjustment (2.42% for three months) | - | 166 |
| 10.9 | b. Annualization of three new fiscal year 2010 staff | 2 | 195 |
| 10.9 | c. Proposed January 2011 pay adjustment (1.4% for nine months) | - | 197 |
| 10.9 | d. Salary progression | - | 190 |
| 10.10 | e. Health benefits increase | - | 56 |
| 10.10 | f. FERS increase | - | 58 |

**SUMMARY OF REQUEST**
**FEDERAL JUDICIAL CENTER**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2011**
**(Dollar amounts in thousands)**

| | | FTEs | Amount |
|---|---|---|---|
| | **B. Other Adjustments** | | |
| 10.10 | 2. Inflationary adjustments | - | 94 |
| | **Subtotal, Adjustments to Base to Maintain Current Services** | **2** | **956** |
| | **Total Current Services Appropriation Required** | **140** | **28,284** |
| | **Program Increases** | | |
| 10.10 | 3. Enhance education and training programs | - | 115 |
| 10.10 | 4. Enhance education, training and research technology resources | - | 295 |
| | **Subtotal, Program Increases** | **-** | **410** |
| | **Total Fiscal Year 2011 Appropriation Required** | **140** | **28,694** |
| | **Total Appropriation Increase** | **2** | **1,366** |
| | **Financing the Fiscal Year 2011 Request:** | | |
| | **Total Appropriation Required, Fiscal Year 2011** | **140** | **28,694** |
| 10.11 | 5. Estimated reimbursements from federal accounts and the FJC Foundation | 1 | 200 |
| | **Total Estimated Obligations, Fiscal Year 2011** | **141** | **28,894** |

**FEDERAL JUDICIAL CENTER**
**Salaries and Expenses**
**Obligations by Activitiy ($000)**

| Activity | Fiscal Year 2009 Direct | Fiscal Year 2009 Offsetting Collections | Fiscal Year 2009 Total | Fiscal Year 2010 Direct | Fiscal Year 2010 Offsetting Collections | Fiscal Year 2010 Total | Fiscal Year 2011 Direct | Fiscal Year 2011 Offsetting Collections | Fiscal Year 2011 Total |
|---|---|---|---|---|---|---|---|---|---|
| Education & Training | 17,915 | 356 | 18,271 | 19,477 | 433 | 19,910 | 20,273 | 200 | 20,473 |
| Research | 4,433 | 242 | 4,675 | 4,470 | 275 | 4,745 | 4,626 | - | 4,626 |
| Program Support | 3,377 | - | 3,377 | 3,381 | - | 3,381 | 3,794 | - | 3,794 |
| **Total Obligations** | **25,725** | **598** | **26,323** | **27,328** | **708** | **28,036** | **28,694** | **200** | **28,894** |
| Offsetting Collections | | | | | | | | | |
| Reimbursable programs | - | (598) | (598) | - | (708) | (708) | - | (200) | (200) |
| **Available Appropriation** | **25,725** | **-** | **25,725** | **27,328** | **-** | **27,328** | **28,694** | **-** | **28,694** |

**FEDERAL JUDICIAL CENTER**
**Salaries & Expenses**
**Obligations by Object Class ($000)**

| Description | Fiscal Year 2009 | | | Fiscal Year 2010 | | | Fiscal Year 2011 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Direct | Offsetting Collections | Total Oblig. | Direct | Offsetting Collections | Total Oblig. | Direct | Offsetting Collections | Total Oblig. |
| 1100 Personnel compensation | 13,910 | 112 | 14,022 | 14,762 | 153 | 14,915 | 15,347 | 112 | 15,459 |
| 1200 Personnel benefits | 3,610 | 28 | 3,638 | 3,999 | 38 | 4,037 | 4,277 | 28 | 4,305 |
| 2100 Travel | 5,126 | 0 | 5,126 | 5,233 | 313 | 5,546 | 5,386 | 50 | 5,436 |
| 2200 Transporation of things | 56 | 0 | 56 | 66 | 0 | 66 | 67 | 0 | 67 |
| 2330 Communications, utilities & misc | 213 | 299 | 512 | 508 | 34 | 542 | 519 | 3 | 522 |
| 2400 Printing and reproduction | 71 | 0 | 71 | 76 | 0 | 76 | 77 | 0 | 77 |
| 2500 Other services | 1,137 | 158 | 1,295 | 1,290 | 168 | 1,458 | 1,410 | 5 | 1,415 |
| 2600 Supplies and materials | 867 | 1 | 868 | 800 | 2 | 802 | 910 | 2 | 912 |
| 3100 Equipment | 735 | 0 | 735 | 594 | 0 | 594 | 701 | 0 | 701 |
| **Total Obligations** | **25,725** | **598** | **26,323** | **27,328** | **708** | **28,036** | **28,694** | **200** | **28,894** |

**FEDERAL JUDICIAL CENTER**
**Salaries & Expenses**
**Relation of Obligations to Outlays ($000)**

| | FY 2009 Actuals | FY 2010 Estimate | FY 2011 Estimate | Difference (+) or (-) |
|---|---|---|---|---|
| Total Obligations | 26,323 | 28,036 | 28,894 | 858 |
| Obligated balance, start of year | 3,543 | 4,144 | 4,615 | 471 |
| Obligated balance, end of year | (4,144) | (4,615) | (5,915) | (1,300) |
| Total Outlays | 25,722 | 27,565 | 27,594 | 29 |
| Less offsetting collections: | | | | |
| Reimbursable Programs | (598) | (708) | (200) | 508 |
| Net Outlays | 25,123 | 26,857 | 27,394 | 537 |

**FEDERAL JUDICIAL CENTER**
**Salaries and Expenses**
**Full Time Equivalents by Activity**

| Activity | Fiscal Year 2009 | | | Fiscal Year 2010 | | | Fiscal Year 2011 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Direct | Reimb Program | Total | Direct | Reimb Program | Total | Direct | Reimb Program | Total |
| Education & Training | 94 | 1 | 95 | 95 | 1 | 96 | 97 | 1 | 98 |
| Research | 37 | 0 | 37 | 33 | 0 | 33 | 33 | 0 | 33 |
| Program Support | 10 | 0 | 10 | 10 | 0 | 10 | 10 | 0 | 10 |
| **Total, Full Time Equivalents** | **141** | **1** | **142** | **138** | **1** | **139** | **140** | **1** | **141** |

## GENERAL STATEMENT AND INFORMATION

This appropriation request is for the salaries and operating expenses of the Federal Judicial Center, which was established by an act of December 20, 1967, P.L. 90-219 (81 Stat. 664). This statute directs the Center "to further the development and adoption of improved judicial administration" in the federal courts.

**Functional Responsibilities of the Center**

The Center's functions are outlined in statute, especially 28 U.S.C.§§ 620(b) and 623(a). Pursuant to those mandates, it teaches judges and other Judicial Branch personnel about legal developments and efficient litigation management and court administration. Examples include various educational programs that alert judges and court legal staff to new laws and emerging issues; programs that help judges and court executives promote efficiency; and programs that educate court staff on the role of the courts and effective court operations. Over 80 percent of Center training participants attend the training in their home cities through in-court seminars, Center video programs broadcast to federal courts across the country, videotapes, manuals, web-based conferences, and interactive computer programs. The Center also conducts empirical research into court operations and activities including analyses of the efficacy of case and court management procedures. For example, it continues to assess case management tools for complex litigation and litigation with expert testimony. (The Center's statute also assigns it less extensive duties with regard to state-federal judicial relations, assisting foreign judiciaries, and federal judicial history.) Program planning is coordinated among the Center, the Administrative Office of the U.S. Courts, and the U.S. Sentencing Commission to maximize efficiency in meeting their distinct responsibilities.

**Duties of the Board**

A Board of nine supervises the Center. The Chief Justice of the United States is the Board Chairman. The Board includes two judges of the U.S. Courts of Appeals, three judges of the U.S. District Courts, one bankruptcy judge, and one magistrate judge; each elected by the Judicial Conference of the United States for a four-year term. The Director of the Administrative Office of the U.S. Courts is an ex-officio Board member. By statute, the Board is responsible for developing overall policy to guide the Center's operations. The Board appoints a Director and a Deputy Director, who are responsible for supervising the Center's staff and carrying out the Center's programs. The Center coordinates as necessary with the Budget Committee of the Judicial Conference of the United States and the Administrative Office of the U.S. Courts in developing the Center's appropriation requests.

## JUSTIFICATION OF CHANGES

The Federal Judicial Center's appropriation request for fiscal year 2011 is $28,694,000, representing an overall increase of $1,366,000 (5.0 percent) over the fiscal year 2010 enacted appropriation of $27,328,000. Of the total requested, $956,000

is for adjustments to base to maintain current services. These adjustments include pay and benefits cost increases for current staff and the annualization of similar cost increases implemented in fiscal year 2010. Also included are general inflationary increases for operating expenses such as travel, utilities, printing, contractual services, supplies and materials, furniture and equipment. The remaining $410,000 is for program increases, including $115,000 for critical education and training programs and $295,000 to enhance the Center's education and research related technology resources.

<u>**ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES**</u>

**A. PERSONNEL AND PROGRAMS**

***1. Pay and benefits cost adjustments***

**a. Annualization of the January 2010 pay adjustment**

**Requested Increase: $166,000**

As a result of ECI and locality pay adjustments, federal pay rates in the Washington, D.C. area increased by 2.42 percent, effective January 2010. The requested increase annualizes this pay increase for the first three months of fiscal year 2011 for Federal Judicial Center personnel.

**b. Annualization of three new fiscal year 2010 staff**

**Requested Increase: $195,000** **FTE: 2**

The Center expects to fill three new positions for six months in fiscal year 2010. These positions were contained in the Center's fiscal year 2010 budget request. The requested increase will annualize the cost of these positions in fiscal year 2011.

**c. Proposed January 2011 pay adjustment**

**Requested Increase: $197,000**

The Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.4 percent beginning on or after January 1, 2011. The requested increase provides for the cost of nine months of the anticipated pay increase in fiscal year 2011 for Federal Judicial Center personnel.

**d. Salary progression**

**Requested Increase: $190,000**

The requested amount provides an increase to allow Federal Judicial Center personnel to be granted periodic adjustments in compensation for merit.

**e. Health benefits increase**

**Requested Increase: $56,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 7.0 percent in January 2010 and another 7.0 percent in January 2011. The requested increase annualizes the 2010 premium increase, and includes a nine-month provision for the anticipated fiscal year 2011 premium increase and other changes.

**f. FERS increase**

**Requested Increase: $58,000**

Funds are requested to provide for new benefits for employees covered by the Federal Employees Retirement System (FERS), pursuant to the National Defense Authorization Act for Fiscal Year 2010, P.L. 111-84. The requested increase includes the additional agency contribution for FERS employees from 11.2 percent to 11.7 percent.

**B. OTHER ADJUSTMENTS**

***2. Inflationary adjustments***

**Requested Increase: $94,000**

Consistent with guidance from the Office of Management and Budget, the Center requests $94,000 to fund inflationary increases of 1.1 percent for operating expenses such as travel, utilities, printing, contractual services, supplies and materials, and furniture and equipment.

**PROGRAM INCREASES**

***3. Enhance education and training programs***

**Requested Increase: $115,000**

The Center is grateful for the efforts of Congress to fund three new positions in fiscal year 2010 to enable the Center to address critical workload needs in education, research, and information technology areas, and providing $285,000 of the $400,000 requested to enhance education and training programming for judges on case management (including the use of information technology), legal training for court staff attorneys, and for court executive and managers on effective leadership and management practices. The Center requests the balance of $115,000 not funded in fiscal year 2010 to continue the initiative to enhance education and training programming for judges, court staff attorneys, and court executives and managers.

***4. Enhance education, training and research technology resources***

**Requested Increase: $295,000**

The Center requests $295,000 to enhance education and research technology resources, including information technology licenses and contractor support for e-learning tools and for content management to enable users to have more effective access to Center online programs and services and to stay current with continuously evolving automation and video equipment necessary to expand distance learning and its delivery

**OFFSETTING COLLECTIONS**

**5.** ***Estimated reimbursements from federal accounts and the FJC Foundation***

**Estimated Reimbursement: $200,000** **FTE: 1**

From time to time, the Center enters into reimbursable agreements to provide additional services to, or to allow economizing by, the Administrative Office of the U.S. Courts, the courts, and non-judicial federal entities. In addition, pursuant to Title 28, Section 629, the Center receives support from occasional donations to the Federal Judicial Center Foundation. The Center estimates that $200,000 will be reimbursed to it in fiscal year 2011.

## JUDICIAL RETIREMENT FUNDS

***Payment to Judiciary Trust Funds***

## SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS

| | |
|---|---|
| **Fiscal Year 2010 Appropriation** | **$82,374,000** |
| **Fiscal Year 2011 Requested Appropriation** | **$90,361,400** |
| **Requested Increase** | **$7,987,400** |

**APPROPRIATION LANGUAGE**

**JUDICIAL RETIREMENT FUNDS**

**PAYMENT TO JUDICIARY TRUST FUNDS**

For payment to the Judicial Officers' Retirement Fund, as authorized by 28 U.S.C. 377(o), [$71,874,000] *$79,061,400*; to the Judicial Survivors' Annuities Fund, as authorized by 28 U.S.C. 376(c), [$6,500,000] *$7,300,000*, and to the United States Court of Federal Claims Judges' Retirement Fund, as authorized by 28 U S.C. 178(1), $4,000,000

**SUMMARY OF REQUEST**
**JUDICIAL RETIREMENT FUNDS**
**PAYMENT TO JUDICIARY TRUST FUNDS**
**FISCAL YEAR 2011**
**(Dollar amounts in thousands)**

**Fiscal Year 2011 Resource Requirements:**

| Page No. | | FTEs | Amount |
|---|---|---|---|
| | **Fiscal Year 2010 Appropriation** | - | **$82,374** |
| | **Adjustment to Base** | | |
| 11.5 | 1. Increase in payment to the Judicial Officers' Retirement Fund | - | 7,187 |
| 11.6 | 2. Increase in payment to the Judicial Survivors' Annuities Fund | - | 800 |
| | **Subtotal, Adjustments to Base** | - | **7,987** |
| | **Total Appropriation Required, Fiscal Year 2011** | - | **90,361** |
| | **Total Appropriation Increase, Fiscal Year 2010 to Fiscal Year 2011** | - | **7,987** |

**PAYMENT TO JUDICIARY TRUST FUND**
**Obligations by activity ($000)**

| Activity | Fiscal Year 2009 Actual | Fiscal Year 2010 Estimate | Fiscal Year 2011 Request |
|---|---|---|---|
| **Trust Fund, Total Obligations** | **76,140** | **82,374** | **90,361** |
| **Enacted Appropriation** | **76,140** | **82,374** | **90,361** |

**Object Classification ($000)**

| Description | Fiscal Year 2009 Actual | Fiscal Year 2010 Estimate | Fiscal Year 2011 Request |
|---|---|---|---|
| 25 Other services | 76,140 | 82,374 | 90,361 |
| **Total obligations** | **76,140** | **82,374** | **90,361** |

## PAYMENT TO JUDICIARY TRUST FUND

**Relation of Obligations to Outlays ($000)**

| | FY 2009 Actual | FY 2010 Estimate | FY 2011 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Obligations incurred, net | 76,140 | 82,374 | 90,361 | 7,987 |
| Obligated balance, start of year | . | ... | .. | ... |
| Obligated balance, end of year | ... | ... | .. | .. |
| Net Outlays | 76,140 | 82,374 | 90,361 | 7,987 |

## GENERAL STATEMENT AND INFORMATION

This appropriation is divided among three trust funds that finance payments to (1) retired bankruptcy and magistrate judges, (2) spouses and dependent children of deceased judges, and (3) retired Court of Federal Claims judges.

Statutes governing the three funds authorize the appropriation of amounts to cover the liability that accrues each year and to pay an installment on any unfunded liability. Although the funds receive participant contributions and earn interest on investment holdings, the purpose of the appropriation provision is to ensure that sufficient funds are deposited annually to cover anticipated benefit payments in the distant future as well as in the short-term. The appropriation request is calculated annually by an enrolled actuary pursuant to 31 U.S.C. 9503, Public Law 95-595 (November 4, 1978).

### The Three Trust Funds

The Judicial Officers' Retirement Fund was established in 1988 to provide a pension to bankruptcy and full-time magistrate judges (28 U.S.C. §377).

The Judicial Survivors' Annuities Fund was established in 1956 to provide annuities to widows, widowers, and dependent children of judges and other officials who have elected to participate in the program: Justices and judges of the United States, to include Guam, Northern Mariana, and the Virgin Islands; full-time bankruptcy judges; full-time United States magistrate judges; judges of the United States Court of the Federal Claims; the Directors of the Federal Judicial Center and the Administrative Office of the United States Courts; and the Counselor to the Chief Justice of the United States (28 U.S.C. §376).

The Court of Federal Claims Judges' Retirement Fund was established in 1990 to provide a pension plan to retired United States Courts of Federal Claims judges (28 U.S.C. §178). Appointment under Chapter 7 of Title 28 or service under section 167 of the Federal Courts Improvements Act of 1982 automatically qualifies a judge to participate.

### Justification of Changes

The appropriation request for fiscal year 2011 is $90,361,400, an increase of $7,987,400 above the appropriation level in fiscal year 2010. This increase is distributed as follows: a $7,187,400 increase for the Judicial Officers' Retirement Fund, and an $800,000 increase for the Judicial Survivors' Annuities Fund.

## ADJUSTMENTS TO BASE

1. ***Increase in payment to the Judicial Officers' Retirement Fund***

**Requested Increase: $7,187,400**

The appropriation level for fiscal year 2010 is $71,874,000. Based on actuarial calculations, $79,061,400, an increase of $7,187,400, is required to draw down the unfunded liability in fiscal year 2011.

2. ***Increase in payment to the Judicial Survivors' Annuities Fund***

**Requested Increase: $800,000**

The appropriation level for fiscal year 2010 is $6,500,000. Based on actuarial calculations, $7,300,000, an increase of $800,000, is required to draw down the unfunded liability in fiscal year 2011.

**UNITED STATES SENTENCING COMMISSION**
***Salaries and Expenses***
**SUMMARY STATEMENT OF ACCOUNT REQUIREMENTS**

| | |
|---|---|
| **Fiscal Year 2010 Enacted Appropriation** | **$16,837,000** |
| **Fiscal Year 2011 Requested Appropriation** | **$17,595,000** |
| **Requested Increase from Fiscal Year 2010 Appropriation** | **$758,000** |

**APPROPRIATION LANGUAGE**

**UNITED STATES SENTENCING COMMISSION**
**SALARIES AND EXPENSES**

For the salaries and expenses necessary to carry out the provisions of chapter 58 of title 28, United States Code, [$16,837,000] *$17,595,000*, of which not to exceed $1,000 is authorized for official reception and representation expenses.

**SUMMARY OF REQUEST**
**UNITED STATES SENTENCING COMMISSION**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2011**
**(Dollar amounts in thousands)**

**Fiscal Year 2011 Resource Requirements:**

| | FTEs | Amount |
|---|---|---|
| **Fiscal Year 2010 Obligations** | **110** | **$17,337** |
| Carryforward balance from the Judiciary Information Technology Fund | - | (500) |
| **Fiscal Year 2010 Base Appropriation** | **110** | **16,837** |

| Page No. | Adjustments to Base to Maintain Current Services: | | |
|---|---|---|---|
| | **A. Commission Personnel** | | |
| | 1. Pay and benefit cost adjustments | | |
| 12.10 | a. Annualization of the January 2010 pay adjustment (2.42% for three months) | - | 95 |
| 12.10 | b. Proposed January 2011 pay adjustment (1.4% for nine months) | - | 181 |
| 12.10 | c. Promotions and within-grade increases | - | 223 |
| 12.10 | d. Health benefits increase | - | 73 |
| 12.11 | e. FERS increase | - | 49 |

**SUMMARY OF REQUEST**
**UNITED STATES SENTENCING COMMISSION**
**SALARIES AND EXPENSES**
**FISCAL YEAR 2011**
**(Dollar amounts in thousands)**

| | | Original Request | |
|---|---|---|---|
| | **B. Other Adjustments** | FTEs | Amount |
| 12.11 | 2. Inflationary adjustments | - | 137 |
| | **Subtotal, Adjustments to Base to Maintain Current Services** | **-** | **758** |
| | **Total Current Services Appropriation Required** | **110** | **17,595** |
| | **Total, Fiscal Year 2011 Appropriation Required** | **110** | **17,595** |
| | **Total Appropriation Increase, Fiscal Year 2010 to Fiscal Year 2011** | **-** | **758** |
| | **Financing the Fiscal Year 2011 Request** | | |
| | **Total Appropriation Required, Fiscal Year 2011** | **110** | **17,595** |
| 12.11 | 3. Carryforward balance from the Commission's no-year funds | - | 585 |
| 12.11 | 4. Carryforward balance from the Judiciary Information Technology Fund | - | 1,651 |
| | **Total Estimated Obligations, Fiscal Year 2011** | **110** | **19,831** |

**UNITED STATES SENTENCING COMMISSION**
**SALARIES AND EXPENSES**
**Obligations by Activity ($000)**

| Activity | Fiscal Year 2009 Actual | Fiscal Year 2010 Estimate | Fiscal Year 2011 Request |
|---|---|---|---|
| **Salaries and Expenses, Total Obligations** | **16,152** | **17,337** | **19,831** |
| Unobligated Balance, Start of Year | | | - |
| Judiciary Information Technology Fund | (2,151) | (2,151) | (1,651) |
| Salaries and Expenses No-Year Funds | (585) | (585) | (585) |
| Unobligated Balance, End of Year | | | |
| Judiciary Information Technology Fund | 2,151 | 1,651 | - |
| Salaries and Expenses No-Year Funds | 585 | 585 | - |
| Unobligated Balance, Expiring | 73 | - | - |
| **Available Appropriation** | **16,225** | **16,837** | **17,595** |

**Object Classification ($000)**

| | Description | Fiscal Year 2009 Actual | Fiscal Year 2010 Estimate | Fiscal Year 2011 Request |
|---|---|---|---|---|
| 11 | Personnel compensation | 8,858 | 10,223 | 10,740 |
| 12 | Personnel benefits | 2,561 | 2,718 | 2,856 |
| 21 | Travel | 889 | 859 | 880 |
| 22 | Transportation of things | 50 | 32 | 45 |
| 23 | Rent, communications and utilities | 88 | 88 | 125 |
| 24 | Printing and reproduction | 289 | 216 | 306 |
| 25 | Other services | 2,508 | 2,787 | 4,091 |
| 26 | Supplies and materials | 87 | 75 | 106 |
| 31 | Equipment | 822 | 339 | 682 |
| | **Total Obligations** | **16,152** | **17,337** | **19,831** |

**UNITED STATES SENTENCING COMMISSION**
**SALARIES AND EXPENSES**
**Relation of Obligations to Outlays ($000)**

| | Fiscal Year 2009 Actuals | Fiscal Year 2010 Estimate | Fiscal Year 2011 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total Obligations | 16,152 | 17,337 | 19,831 | 2,494 |
| Obligated balance, start of year | (4,149) | (3,977) | (3,354) | 623 |
| Obligated balance, end of year | 3,977 | 3,354 | 3,113 | (241) |
| Total Outlays | 15,980 | 16,714 | 19,590 | 2,876 |
| Less Judiciary Information Technology Fund Obligations | (651) | (500) | (1,651) | (1,151) |
| **Net Outlays** | **15,329** | **16,214** | **17,939** | **1,725** |

**Personnel Summary**

| | Fiscal Year 2009 Actuals | Fiscal Year 2010 Estimate | Fiscal Year 2011 Request | Difference (+) or (-) |
|---|---|---|---|---|
| Total compensable workyears: | | | | |
| Full-time equivalent employment | 103 | 110 | 110 | 0 |

**GENERAL STATEMENT AND INFORMATION**

The statutory duties of the United States Sentencing Commission include, but are not limited to:

- **promulgating sentencing guidelines** to be determined, calculated, and considered in all federal criminal cases;

- **collecting sentencing data** systematically to detect new criminal trends, to determine if federal crime policies are achieving their goals, and to serve as a clearinghouse for federal sentencing statistics;

- **conducting research** on sentencing issues and serving as an information center for the collection, preparation, and dissemination of information on federal sentencing practices; and

- **providing specialized training** to judges, probation officers, staff attorneys, law clerks, prosecutors, defense attorneys, and other members of the federal criminal justice community on federal sentencing issues, including application of the guidelines.

The Commission sits at the intersection of all three branches of government; the Legislative Branch that creates the law, the Executive Branch that enforces the law, and the Judicial Branch that interprets the law. The Commission synthesizes the concerns of the three branches in order to effectuate sound federal sentencing policy. Consistent with *United States v. Booker (Booker),* which rendered the federal guidelines advisory and reaffirmed the Commission's role in federal sentencing, the Commission has continued its core mission to promulgate new guidelines and guideline amendments in response to congressional statutes and directives, and in response to information it receives from sentencing courts, Congress, the Executive Branch, federal defenders, and others in the federal criminal justice system. The Commission has increased its efforts to provide specialized training on federal sentencing issues, including application of the guidelines to federal judges, probation officers, staff attorneys, law clerks, prosecutors, defense attorneys, and others.

Furthermore, the Commission has continued to refine its data collection, analysis, and reporting efforts to provide real-time data about federal sentencing practices and trends. The Commission must continue to disseminate sentencing information in real-time and in a thorough manner to fulfill its statutory duties to monitor the operation of the guidelines and to advise Congress on federal sentencing policy.

Although the need for Commission work-product and services has increased post-*Booker*, the Commission is not requesting program increases for fiscal year 2011. The Commission believes that it has been successful in maximizing resources and appreciates the funding Congress has provided for the Commission's fulfillment of its statutory duties. Full funding of the Commission's fiscal year 2011 budget request will allow the Commission to continue to fulfill these statutory duties.

## ONGOING ACTIVITIES

**Sentencing Policy Development**

Marking the 25th anniversary of the Sentencing Reform Act of 1984, the Commission began this past year to undertake a comprehensive assessment of federal sentencing. This assessment fulfills the Commission's statutory duty to reflect, to the extent practicable, advancement in the knowledge of human behavior as it relates to the criminal justice process and to serve as a clearinghouse on federal sentencing statistics and practices. As part of this assessment, the Commission held regional hearings across the country, receiving input about federal sentencing from judges, probation officers, defense attorneys, prosecutors, community interest groups, law enforcement, victims advocates, academics and others. The input received at these regional hearings and from Congress and members of the criminal justice community in other settings has helped to shape the Commission's policy priorities for the year.

These policy priorities include responding to a congressional directive that the Commission assess and report on federal mandatory minimum sentencing provisions, including any information the Commission thinks would contribute to a thorough assessment of those provisions and how they relate to the federal sentencing guideline system post-*Booker*

The Commission is continuing its review of, and promulgation of possible guideline amendments related to, available alternatives to incarceration and reentry programs in the federal system.

.

The Commission also is continuing its work to evaluate and report on the impact of *Booker* and subsequent caselaw on the federal sentencing system, including an assessment of, and possible guideline amendments related to, the incidence of and reasons for sentences that are outside the guideline range. The Commission is also undertaking a review of child pornography offenses and the existing guideline computation of an offender's criminal history score based on the recency of a prior criminal offense.

The Commission also stands ready to work with Congress, the Executive Branch, and others on the issue of federal cocaine sentencing.

As part of its policy development work this past year, the Commission also promulgated guidelines and guideline amendments to implement enacted legislation that included the Identity Theft Enforcement and Restitution Act of 2008, the Ryan Haight Online Pharmacy Consumer Protection Act of 2008, the Drug Trafficking Vessel Interdiction Act of 2008, the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, and the Court Security Improvement Act of 2007. Currently the Commission is working to implement recently enacted legislation, such as the Fraud Enforcement and Recovery Act of 2009, the Omnibus Public Land Management Act of 2009, and the Children's Health Insurance Program Reauthorization Act of 2009.

**Collecting Sentencing Data**

Each year the Commission's Office of Research and Data collects data about criminal cases sentenced during that year. By law, the courts are required to submit five sentencing documents to the Commission within 30 days of entry of judgment in a criminal case: the charging document, the plea agreement, the presentence

investigation report, the judgment and commitment order, and the statement of reasons form. The Commission reviews these documents and collects and analyzes many pieces of information of interest and importance to the federal criminal justice community. During the past year the Commission received over 363,000 documents from more than 78,000 original sentencings. Analyses of the data are reported in the Commission's Annual Report and Sourcebook of Federal Sentencing Statistics. In order to provide the most accurate and timely information in national sentencing trends and practices, the Commission disseminates key aspects of this data on a quarterly basis and provides trend analyses of the changes in federal sentencing practices over time.

Since March 2008, the Commission has also collected real-time data from the courts on over 23,000 motions filed for retroactive application of its 2007 crack cocaine amendment. The Commission continues to collect and regularly report real-time data on crack cocaine retroactivity.

At the request of Congress, the Commission also provides specific analyses using real-time data of sentencing trends related to proposed and pending legislation. These assessments often are complex and time-sensitive, and require highly-specialized Commission resources. In addition, the Commission responds to a number of more general data requests from Congress on issues such as drugs, immigration, fraud, and sex offenses. These requests are expected to continue in response to congressional work on crime legislation in the 111th Congress.

The Commission also responds to requests for data analyses from federal judges. For example, the Commission provides to each chief district judge and chief circuit judge a yearly analysis of the cases sentenced in the district or circuit with a comparison of the caseload and sentencing practices in that district or circuit to the nation as a whole. The Commission's ability to provide these analyses on demand and with real-time data provides a unique resource to judges.

The Commission's data collection, analysis, and reporting requirements are impacted by the high volume of cases sentenced in the federal system annually. To put this caseload in perspective, in fiscal year 1990, the Commission received documentation for 33,000 cases sentenced under the guidelines. In fiscal year 2008, the Commission received documentation for approximately 78,000 cases. To provide the timely analyses of federal sentencing data necessary for Congress and the courts, adequate funding of the Commissions' efforts in this area is essential. The Commission's modernization and refinement efforts have kept pace with demands placed on it, but full funding of the Commission's fiscal year 2011 budget request will be necessary to ensure the system continues to operate efficiently.

In recent years, the Commission has reported to Congress on its development and implementation of an electronic document submission system that enables sentencing courts to submit documentation directly to the Commission by electronic means. By the end of fiscal year 2008, all 94 judicial districts were using the Commission's electronic submission system. In fiscal year 2009, the Commission began the next phase of this modernization effort, which is to advance the evolution of the electronic document submission system to a web-based system. The Commission expects to continue the development of the web-based system in the coming fiscal year.

**Conducting Research**

Research is a critical part of the Commission's overall mission. The Commission's research staff regularly analyzes the current and prior fiscal years' data to identify the manner in which the courts are sentencing offenders and their use of the guidelines in that work. The Commission regularly uses these analyses when considering proposed changes to the guidelines. Similarly, some analyses are published by the Commission as a resource for the criminal justice community. In fiscal year 2009, for example, the Commission published research reports on the use of alternative sentences in the federal criminal justice system, the impact of minor offenses on a defendant's eligibility for safety valve relief, the changing face of the federal criminal caseload, an overview of federal criminal cases in fiscal year 2007, and an introduction to data collection processes at the Commission. The Commission also began a multi-year recidivism study of crack cocaine offenders for whom the courts have granted motions for retroactive application of the 2007 crack cocaine amendment. The Commission anticipates publishing additional reports in the coming fiscal year, including an overview of federal criminal cases in fiscal year 2008 and additional information about data collection by the Commission.

**Training and Outreach**

The Commission continues to fulfill its statutory duty to provide training and specialized technical assistance on federal sentencing issues, including application of the guidelines, to federal judges, probation officers, staff attorneys, law clerks, prosecutors, and defense attorneys, by providing educational programs around the country throughout the year. The Commission has greatly expanded these training and outreach efforts, in large part as a result of *Booker* and subsequent caselaw. In fiscal year 2009, for example, commissioners and Commission staff conducted training programs in all twelve circuits and most of the 94 judicial districts. Commissioners and Commission staff also participated in other numerous academic programs, symposia, and circuit conferences as part of the ongoing discussion of federal sentencing issues.

For the past two years, the Commission has conducted an outreach program through which Commission staff visit district courts throughout the country to view sentencing proceedings conducted in the district The program is intended to give Commission staff hands-on experience of sentencing proceedings about which the Commission collects data. This also provides district court judges with the opportunity to provide direct feedback to the Commission about federal sentencing issues, including application of the guidelines.

In fiscal year 2010, the Commission plans to continue to provide training to the district and circuit courts on a number of federal sentencing issues, including recently promulgated guidelines and guideline amendments. In June 2010, the Commission will hold its annual national training program in New Orleans, Louisiana that will include hundreds of participants. The Commission anticipates that these expanded efforts and increased requests for training will continue throughout fiscal year 2011.

## JUSTIFICATION OF CHANGES

The fiscal year 2011 budget request of $17,595,000 represents an overall increase of $758,000, or 4.5 percent over the fiscal year 2010 enacted appropriation of $16,837,000. The Commission's request is limited to a modest increase over fiscal year 2010 to account for inflationary increases and adjustments for personnel costs and to maintain current services. The Commission requests no program increases for fiscal year 2011.

Adjustments to base to maintain current services include funds for pay and benefits, cost increases for current staff, and adjustments for on-going activities, such as inflationary increases in contract rates and charges for services, supplies, equipment and other Commission needs.

**ADJUSTMENTS TO BASE TO MAINTAIN CURRENT SERVICES**

**A. COMMISSION PERSONNEL**

***1. Pay and benefit cost adjustments***

**a. Annualization of January 2010 pay adjustment**

**Requested Increase: $95,000**

As a result of ECI and locality pay adjustments, federal pay rates in Washington, D.C. increased by 2.42 percent effective January 2010. The requested increase annualizes this pay increase for the first three months of fiscal year 2011.

**b. Proposed January 2011 pay adjustment**

**Requested Increase: $181,000**

The Office of Management and Budget is projecting that federal pay rates will increase by an average of 1.4 percent beginning on or after January 1, 2011. The requested increase provides for the cost of nine months of the anticipated ECI pay increase in fiscal year 2011.

**c. Promotions and within-grade increases**

**Requested Increase: $223,000**

The requested increase provides for promotions and within-grade increases for support personnel. The salary plan for Commission personnel provides for periodic within-grade increases for staff who receive at least a satisfactory performance rating.

**d. Health benefits increase**

**Requested Increase: $73,000**

Based on information from the Office of Personnel Management, health benefit premium contributions are projected to increase by 7.0 percent in January 2010 and another 7.0 percent in January 2011. The requested increase annualizes the 2010 premium

increase, and includes a nine-month provision for the anticipated fiscal year 2011 premium increase.

**e. FERS increase**

**Requested Increase: $49,000**

Funds are requested to provide for new benefits for employees covered by the Federal Employees Retirement System (FERS), pursuant to the National Defense Authorization Act for Fiscal Year 2010, P. L.111-84. The requested increase includes the additional agency contribution for FERS employees from 11.2 percent to 11.7 percent.

**B. OTHER ADJUSTMENTS**

***2. Inflationary adjustments***

**Requested Increase: $137,000**

Consistent with guidance from the Office of Management and Budget, the Commission requests an increase of $137,000 to fund inflationary increases of 1.1 percent for operating expenses such as travel, utilities, printing, contractual services, supplies and materials, and furniture and equipment.

**FINANCING THE FISCAL YEAR 2010 REQUEST**

3. ***Carryforward balance from the Commission's no-year funds***

**Estimated Obligations: $585,000**

In fiscal year 2011, the Commission anticipates that the entire amount will be used to support sentencing policy development, training and outreach, and contracts for research on federal sentencing practices.

4. ***Carryforward balance from the Judiciary Information Technology Fund***

**Estimated Obligations: $1,651,000**

At the beginning of fiscal year 2010, the Commission had $2,150,550 available in the Judiciary Information Technology Fund from deposits that were made in previous fiscal years. In fiscal year 2010, the Commission anticipates obligating $500,000 from these funds for continued modifications of and improvements to its electronic document submission system. This includes plans to advance the evolution of the electronic document submission system to a web-based system with the ability to accept both sentencing documents and data fields from the federal courts. Specific projects include the planning, coordination, and implementation of a pilot program with the courts and the provision of advanced training in Oracle programming for Commission staff.

In fiscal year 2011, the Commission expects to obligate $1,651,000 from fiscal year 2010 to develop further the web-based system for the transmission of sentencing documents and data fields from the courts. Specific projects include the expansion of the pilot program conducted in fiscal year 2010, with the goal of having all 94 districts using the web-based system by the end of fiscal year 2011.

# JUDICIARY INFORMATION TECHNOLOGY FUND

## GENERAL STATEMENT AND INFORMATION

The Judiciary Information Technology Fund (JITF) was established by Congress in fiscal year 1990 (28 U.S.C. § 612) to assist the judiciary in implementing its information technology initiatives. The authority of the JITF was extended indefinitely in the fiscal year 1998 Commerce, Justice, State, Judiciary, and Related Agencies Appropriations Act (P.L. 105-119). The JITF was authorized "without fiscal year limitation," for the procurement of information technology resources. The fund makes it possible to implement the *Long-Range Plan for Information Technology in the Federal Judiciary* and to manage the information technology (IT) program over a multi-year planning cycle which allows more effective and efficient planning, budgeting, and use of funds for IT activities.

In keeping with the judiciary's mission and primary business objectives, the judiciary's information technology program must identify, implement, and maintain cost-effective technology solutions for the judiciary, bar, and the public. All IT expenses for the appellate, district, and bankruptcy courts, as well as for the probation and pretrial services offices, must be paid from the fund.

Each fiscal year, current year requirements are financed via the JITF from a variety of sources:

- deposits from the courts' Salaries and Expenses account;
- fee collections from the Electronic Public Access (EPA) program for IT expenses that improve public access to information (see Appendix 2);
- unobligated balances in the fund from prior year financial plan savings (unencumbered);
- proceeds from the sale of excess equipment;
- annual allotments to the courts originally for non-IT purposes that are reprogrammed locally by the courts for IT initiatives in accordance with the budget decentralization program; and
- voluntary deposits from non-mandatory judiciary users of the fund (such as the Court of Appeals for the Federal Circuit, the Court of International Trade, the U.S. Sentencing Commission, and the Administrative Office of the U.S. Courts (AO)).

The majority of the financing in the JITF originates from deposits from the Salaries and Expenses account. Table 13.1 on the following page displays JITF requirements and funding sources for fiscal year 2009 through fiscal year 2011.

**Table 13.1 Judiciary Information Technology Fund Obligations and Financing ($000)**

| | FY 2009 Actual | FY 2010 Financial Plan | FY 2011 Request |
|---|---|---|---|
| **Obligations** | | | |
| Salaries & Expenses Requirements (w/ carryforward) | 324,110 | 382,329 | 408,068 |
| EPA Program 1/ | 94,615 | 121,121 | 108,025 |
| Court of International Trade | 539 | 640 | 284 |
| U S Sentencing Commission | 0 | 500 | 1,651 |
| Administrative Office of the U S Courts | 1,857 | 1,047 | 0 |
| Court of Appeals for the Federal Circuit | 0 | 152 | 46 |
| **TOTAL JITF** | 421,121 | 505,789 | 518,074 |
| **Financing:** | | | |
| **Salaries and Expenses** | | | |
| Unobligated Balance, Start of Year | 45,990 | 36,093 | 20,000 |
| **New Deposits and Prior Year Recoveries 2/** | 314,213 | 366,236 | 388,068 |
| Unobligated Balance, End of Year | (36,093) | (20,000) | 0 |
| **Total Salaries & Expenses** | 324,110 | 382,329 | 408,068 |
| **EPA Program** | | | |
| Unobligated Balance, Start of Year | 40,825 | 34,898 | 7,901 |
| Estimated Receipts | 88,734 | 94,170 | 100,170 |
| Utilization of EPA Receipts in other Judiciary Accounts | (46) | (46) | (46) |
| Unobligated Balance, End of Year | (34,898) | (7,901) | 0 |
| **Total EPA Program** | 94,615 | 121,121 | 108,025 |
| **Court of International Trade** | | | |
| Unobligated Balance, Start of Year | 683 | 924 | 284 |
| New Deposits and Prior Year Recoveries | 780 | 0 | 0 |
| Unobligated Balance, End of Year | (924) | (284) | 0 |
| **Total Court of International Trade** | 539 | 640 | 284 |
| **U.S. Sentencing Commission** | | | |
| Unobligated Balance, Start of Year | 2,151 | 2,151 | 1,651 |
| New Deposits | 0 | 0 | 0 |
| Unobligated Balance, End of Year | (2,151) | (1,651) | 0 |
| **Total U.S. Sentencing Commission** | 0 | 500 | 1,651 |
| **Administrative Office of the U.S. Courts** | | | |
| Unobligated Balance, Start of Year | 1,893 | 1,047 | 0 |
| New Deposits | 1,011 | 0 | 0 |
| Unobligated Balance, End of Year | (1,047) | 0 | 0 |
| **Total Administrative Office of the U.S. Courts** | 1,857 | 1,047 | 0 |
| **Court of Appeals for the Federal Circuit** | | | |
| Unobligated Balance, Start of Year | 0 | 106 | 0 |
| New Deposits | 60 | 0 | 0 |
| Utilization of EPA Receipts | 46 | 46 | 46 |
| Unobligated Balance, End of Year | (106) | 0 | 0 |
| **Total Court of Appeals for the Federal Circuit** | 0 | 152 | 46 |
| **GRAND TOTAL JITF** | $421,121 | $505,789 | $518,074 |

[1] See Appendix 2 Electronic Public Access Program, for information about utilization of receipts
[2] Of this amount, $23 6 million was deposited in fiscal year 2009 by the courts from decentralized resources

## PROGRAMS FUNDED FROM THE SALARIES AND EXPENSES ACCOUNT

Under the guidance of the Judicial Conference of the United States and according to the strategic directions and objectives contained in the *Long-Range Plan for Information Technology in the Federal Judiciary*, the judiciary continues to implement information systems to meet the mission of the courts. The judiciary, like the rest of the public sector, depends on technology for communication systems, research, and information management systems to fulfill mission-critical needs.

The judiciary has made a significant investment in information technology in recent years. This investment has created efficiencies by automating labor-intensive work processes and effecting cost savings and offsets in areas such as processing court filings, jury management, financial systems, printing, postage, personnel, space, travel, and training. On-going project and application development in the judiciary includes court administration/case management systems for appellate, district, and bankruptcy courts; judicial statistical and reporting systems; a courtroom technology program to improve the quality and efficiency of proceedings; court allotments; probation/pretrial services management systems; financial systems for the courts; human resources systems; and management information systems. If the requested amount for fiscal year 2011 is not provided, continued development and implementation of these critical projects would be affected. In addition, support for operating and maintaining the judiciary's existing and newly installed information systems could be hindered, including support to the Judiciary Data Center, which provides centralized mainframe processing support to the courts for some personnel, payroll, financial, and statistical applications; infrastructure and collaboration tools; telecommunications program; and court support reimbursable programs.

As shown in table 13.2, funding for the JITF Salaries and Expenses obligations supports eleven distinct IT program components that are indicative of the cost drivers in the JITF program. These requirements by major initiative support the IT systems that provide judges and staff with the tools they need to perform their day-to-day work.

Cost Containment Efforts

Several initiatives that have the potential for containing future costs have begun, however, cost/benefit analyses will be necessary to determine whether cost savings may be realized.

Concurrent with gathering functional requirements for the next generation of the Case Management/Electronic Case Filing (CM/ECF) system (which is to be funded from the utilization of EPA receipts, see Appendix 2), a study of the future system architecture will be done. A new architecture may have the potential to reduce the inefficiencies associated with dual data entry and may result in reduced support costs through more efficient deployment of servers in the next replacement cycle.

The new GSA Networx contract for telecommunications was awarded in fiscal year 2009. The Networx contract may result in some efficiencies, particularly in the area of locally-procured goods and services, which have been enabled by this contract

vehicle. In addition, the contract will afford the opportunity to examine alternative delivery models for telecommunications services, such as a national phone system over the data communications network (DCN). Courts have been deploying Internet Protocol Telephone systems in order to gain efficiencies and cost savings.

The costs and benefits of further consolidations of the judiciary's data centers are being examined and the potential for a national contract consolidating requirements for BlackBerry licenses is also under review. In addition, a survey of telephone systems used by the courts was recently completed, and a survey of local area networks is underway. These surveys have the potential to identify additional cost containment opportunities.

Non-Appropriated Sources of Funds

In addition to annual appropriations deposited into the fund, the JITF is financed by non-appropriated sources including fee collections from providing the public with electronic access to court records (see Appendix 2), and unobligated carryforward balances from prior years. The amount of appropriated funds to be deposited is calculated based on current estimates of total obligation requirements offset by available non-appropriated sources of funds. As non-appropriated sources of funding increase, the amount of deposited appropriated funds necessary to fund obligation requirements decrease. Conversely, if non-appropriated funding levels decrease, then additional appropriated funds may be required in order to ensure funds are available to meet critical IT requirements.

"Savings" and "Slippage" JITF unobligated balances from prior years are generated from two sources. Balances categorized as "savings" are the result of reduced requirements, lower than anticipated costs, and increased efficiencies. The judiciary uses "savings" balances as a general offset to the appropriations deposit in the JITF.

The second source of unobligated balances in the JITF is categorized as "slippage." During the course of the fiscal year, information technology requirements may "slip" from one year to the next due to delays in awarding contracts or obtaining necessary equipment and infrastructure, technology changes or continued analyses of alternatives. While "slippage" becomes part of the overall unobligated balance in the JITF, the judiciary recognizes that the planned obligation of funds for the original purpose still exists – it has merely been delayed. As a result, total obligation requirements in the upcoming budget year may increase due to slippage; however, because the funding associated with this slippage is carried forward from the previous year and designated for the same purpose in the current year, there is no net increase to appropriation requirements. As budget estimates are updated throughout the fiscal year, the judiciary adjusts both its appropriation requirements and its total obligation requirements in the JITF to account for both "savings" and "slippage."

**Table 13.2 Salaries and Expenses Obligations - Judiciary Information Technology Fund Program Requirements ($000)**

| ($000) | FY 2010 | | | | | FY 2011 | Change: FY 2010 Adj. Base Requirements to FY 2011 Requirements (Excl. Prog. Increases) | Change: FY 2010 Adj. Base Requirements to FY 2011 Requirements (Program Increases only) |
|---|---|---|---|---|---|---|---|---|
| | A | B | C | D | E | | | |
| IT Program Component | FY 2010 Projected Obligations | FY 2009 Slipped Requirements | FY 2010 Base Requirements (col a - col b) | FY 2010 Requirements Funded in FY 2009 | FY 2010 Adjusted Base (col c + col d) | FY 2011 Total Requirements | | |
| Court Administration Systems | 2,677 | 0 | 2,677 | 0 | 2,677 | 2,752 | 75 | 0 |
| Judicial Statistics and Reporting Systems | 5,377 | (799) | 4,578 | 0 | 4,578 | 3,980 | (598) | 0 |
| Courtroom Technology Program | 10,666 | 0 | 10,666 | 0 | 10,666 | 12,796 | 2,130 | 0 |
| Court Allotments | 108,800 | (678) | 108,122 | 0 | 108,122 | 110,029 | 1,907 | 0 |
| Probation and Pretrial Services | 18,512 | (801) | 17,711 | 0 | 17,711 | 19,938 | 1,740 | 487 |
| Financial Systems | 30,857 | (3,255) | 27,602 | 0 | 27,602 | 28,579 | 977 | 0 |
| Human Resources Systems | 22,088 | (869) | 21,219 | 0 | 21,219 | 21,687 | 468 | 0 |
| Management Information Systems | 16,095 | (1,051) | 15,044 | 0 | 15,044 | 15,167 | 123 | 0 |
| Infrastructure and Collaboration Tools | 70,965 | (381) | 70,584 | 0 | 70,584 | 63,942 | (6,642) | 0 |
| Telecommunications Program | 65,866 | (606) | 65,260 | 5,615 | 70,875 | 97,446 | 1,571 | 25,000 |
| Court Support Reimbursable Program | 30,426 | 0 | 30,426 | 0 | 30,426 | 31,752 | 1,326 | 0 |
| **TOTAL, SALARIES AND EXPENSES** | **$382,329** | **($8,440)** | **$373,889** | **$5,615** | **$379,504** | **$408,068** | **$3,077** | **$25,487** |

*Court Administration Systems*

**FY 2011 Requirements:** **$ 2,752,000**
**Requested Change from FY 2010 Plan:** **$ 75,000**

This category encompasses systems for juror qualification, management, and payment; the management and administration of library functions (e.g., acquisitions, cataloging, serial control); and the operations and maintenance for the Central Violations Bureau which provides case management and financial information for petty offense and misdemeanor cases initiated by violation notices.

The net change for this category is an increase of $75,000 associated with modifications to the jury management system and inflation related adjustments.

*Judicial Statistical and Reporting Systems*

**FY 2011 Requirements:** **$ 3,980,000**
**Requested Change from FY 2010 Plan:** **$ (598,000)**

This category includes systems to support the operations and maintenance and ongoing systems development for gathering and reporting statistics in the judiciary; financial disclosure reports by judges and judiciary employees (for completing financial reports required by the Ethics in Government Act of 1978); inter-circuit assignments for courts of appeals and district courts; bankruptcy administrator management and reporting to manage cases, oversee the trustees' activity, and provide reports to federal judges; the law clerk hiring process; and electronic document capabilities for the federal rule-making process.

The net change for this category is a decrease of $0.6 million due to completing the report tracking and audit process system for the Federal Rules Electronic Document System and the completion of enhancements to the Financial Disclosure Systems Modernization Project.

*Courtroom Technology Program*

**FY 2011 Requirements:** **$12,796,000**
**Requested Change from FY 2010 Plan:** **$ 2,130,000**

This program provides for the installation and maintenance of courtroom technologies in new and renovated buildings to improve the quality and efficiency of courtroom proceedings (not included in this category are the decentralized court allotments that are funded by the EPA program which are used for installation and maintenance of courtroom technologies in existing buildings, see Appendix 2). The judiciary continues its program to equip courtrooms with a variety of technologies to improve the quality and efficiency of certain aspects of courtroom proceedings. These technologies include video evidence presentation systems, video conferencing systems, and electronic methods of taking the record. The Judicial Conference has endorsed the use of such technologies in the courtroom as they can improve trial time, lower litigation costs, facilitate fact-finding, enhance the understanding of information, and improve access to court proceedings.

Based on current construction schedules from GSA, the judiciary expects to complete courtroom technology installations in 35 new or renovated courtrooms in fiscal year 2010 and another 68 new or renovated courtrooms in fiscal year 2011. The net change for this category is an increase of $2.1 million for new audio and video equipment in these courtrooms

*Court IT Allotments*

**FY 2011 Requirements:** **$110,029,000**
**Requested Change from FY 2010 Plan:** **$ 1,907,000**

These allotments are provided directly to the courts for a variety of IT-related activities. Typically these funds cover the costs associated with operating, maintaining, and cyclically upgrading their installed base of desktop personal computers, laptop computers, printers, and local-area-network equipment (not included in this category are the decentralized court allotments that are funded by the EPA program which are used for installation and maintenance of courtroom technologies in existing buildings, see Appendix 2). Allotments for maintaining the base of equipment are based on a funding model which uses industry-standard cyclical replacement cycles and pricing. Funds are also allotted for other IT-related purposes such as telephone system maintenance; equipment for new judges; and grants for local technology innovations in the courts.

The net change for this category is an increase of $1.9 million associated with additional workload, new judges, and standard inflationary costs.

*Probation/Pretrial Services Management Systems*

**FY 2011 Requirements:** **$19,938,000**
**Requested Change from FY 2010 Plan:** **$ 2,227,000**

This program provides probation and pretrial services personnel case management and decision support tools as well as tools to access critical case information while working in the field. Support is also provided for storage and sharing of electronic documents, collection, analysis, and reporting of client data, and the IT needs of the Federal Law Enforcement Training Center.

The net change for this category is an increase of $2.2 million. Of this amount, $1.7 million is for operational costs for a new probation and pretrial services case management system. The new case management system will enhance security measures, streamline information into one national database and improve information sharing capabilities with other federal law enforcement agencies. A program increase of $0.5 million is requested for the development of a law enforcement integrity project. This project will automate the processes used to determine whether applicants for officer positions and incumbent officers are fit to serve. The processes include background investigations, drug tests, and medical tests.

*Financial Systems*

**FY 2011 Requirements:** **$28,579,000**
**Requested Change from FY 2010 Plan:** **$ 977,000**

In addition to the judiciary's financial accounting system, this program includes systems to support the local court budgeting process, the payment for private court-appointed counsel and expert services, tracking and monitoring criminal debt imposed by the court, the handling of cash receipts, reporting of court payroll information, and the management of travel expenses. By fiscal year 2011, the judiciary will have a single integrated accounting system allowing timely access to data, supporting the federal accounting standards including the e-government

requirement for daily reporting to the Department of Treasury, and providing enhanced reporting capability.

The net change for this category is an increase of $1.0 million for cost changes associated with the development of an internal controls evaluation (ICE) system and standard inflationary costs. The ICE system provides self-auditing tools for court units to enhance their internal controls within the financial accounting system.

***Human Resources Systems***

**FY 2011 Requirements:** **$21,687,000**
**Requested Change from FY 2010 Plan:** **$ 468,000**

This program encompasses systems for personnel, payroll, and retirement related services; judges' retirement; fair employment practices reporting; and integration of all human resources-related items as well as efforts to reduce travel-based training. It also includes equipment to produce educational news programming for the judiciary, the public, and Congress.

The net change for this category is an increase of $0.5 million due to cyclical replacement of hardware and standard inflationary costs.

***Management Information Systems***

**FY 2011 Requirements:** **$15,167,000**
**Requested Change from FY 2010 Plan:** **$ 123,000**

This category includes a collection of systems and activities to support the procurement process, the judiciary's national web sites, collection of survey information, the national records management program, and the *Guide to Judiciary Policies*. Also included are systems to manage facilities projects and to support planning and decision-making with staffing, financial, and workload data.

These management information systems enhance productivity and ensure adherence to policies and procedures. For example, the Judiciary Facilities Asset and Construction Tracking System enables analysis of rent reports from GSA to project related schedules and cost information. Access to this information assists the judiciary with its rent validation efforts. In addition, automating the *Guide to Judiciary Policies* allows timely access to the official medium by which guidance and information is provided to the judiciary in support of its day-to-day operations to support stewardship and avoid waste, fraud, and abuse.

The net change for this category is an increase of $123,000, largely due to standard inflationary costs.

***Infrastructure and Collaboration Tools***

**FY 2011 Requirements:** **$ 63,942,000**
**Requested Change from FY 2010 Plan:** **$ (6,642,000)**

These tools provide support to the national IT program including testing, training, and support; maintenance and replacement of servers; e-mail messaging (including licenses, server maintenance and replacement, and help desk services); IT security and national gateways (including security support services); mainframe computer and national software licenses; IT project management; information systems architecture (and

assessment of new technologies); local court grants for technology innovation; portal technology; infrastructure for identity management services, and the Court Operations Support Center.

Fiscal year 2010 includes startup funds for projects which are incorporated into other program components for fiscal year 2011. When offset against standard inflationary increases of $0.9 million, the net change for this category is a decrease of $6.6 million.

***Telecommunications Program***

| | |
|---|---|
| **FY 2011 Requirements:** | **$97,446,000** |
| **Requested Change from FY 2010 Plan:** | **$26,571,000** |

This program provides support for voice and data transmissions services and telecommunications equipment for new buildings. (Funds for local, long-distance, and cellular service, and telephone system maintenance are included in *Court IT Allotments*.) The judiciary's communications program allows the judiciary to maintain communications services for the appellate, district, and bankruptcy courts and for probation and pretrial services offices, and to procure communications equipment for new courthouses and for courthouses undergoing major repairs and alteration.

The net change for this category is an increase of $26.6 million. Of this amount, $25.0 million is for the continued investment in a multi-year effort to replace telecommunications systems in the courts as well as accompanying data communications network upgrades. These upgrades will allow the courts to gain efficiencies and cost savings by deploying Internet Protocol Telephone systems. The remaining balance of $1.6 million funds the contract for the data communications network operations for FTS services and standard inflationary increases.

***Court Support Reimbursable Program***

| | |
|---|---|
| **FY 2011 Requirements:** | **$31,752,000** |
| **Requested Change from FY 2010 Plan:** | **$ 1,326,000** |

This category funds staff who provide IT development, management, and maintenance services to the courts. This includes IT policy and planning guidance; architecture and infrastructure support; security services; development, testing, and implementation of national IT applications; IT training and other administrative and IT support services on behalf of the courts.

The fiscal year 2011 budget request for the Court Support Reimbursable Program includes $31.8 million for the salaries, benefits, and related expenses that are reimbursed from the Salaries and Expenses account. The increase of $1.3 million is due to standard pay and inflationary costs.

**PROGRAMS FUNDED FROM VOLUNTARY DEPOSITS FROM OTHER JUDICIARY ACCOUNTS**

Occasionally, organizations within the judiciary that are not mandatory users of the JITF will deposit funds to assist them in management of their IT efforts. In recent years, the Court of Appeals for the Federal Circuit, the Court of International Trade, the United States Sentencing Commission, and the Administrative Office have made such deposits.

***Court of International Trade***

A total of $640,000 is planned for obligation in fiscal year 2010 and $284,000 is planned for obligation in fiscal year 2011. Fiscal year 2010 funds will be used to continue its support of its upgraded data network and voice connections and Virtual Private Network System; upgrade and support existing software applications; purchase new software applications to ensure the continued operational efficiency of the Court; replace computer desktop systems, including monitors, printers, laptops, and file servers in accordance with the judiciary's cyclical replacement program; provide broadband services for the new laptops; support Court equipment by the purchase of yearly leasing and maintenance agreements and complete the purchase and installation phases for the Court's upgraded video conferencing system. Fiscal year 2011 funds will be used to continue these initiatives, and to support the Court's short-term and long-term information technology needs.

***U.S. Sentencing Commission***

A total of $500,000 is planned for obligation in fiscal year 2010. The Commission anticipates obligating these funds for continued modifications of and improvements to its electronic document submission system. This includes plans to advance the evolution of the electronic document submission system to a web-based system with the ability to accept both sentencing documents and data fields from the federal courts. Specific projects include the planning, coordination, and implementation of a pilot program with the courts and the provision of advanced training in Oracle programming for Commission staff.

The Commission expects to obligate $1,651,000 in fiscal year 2011 from fiscal year 2010 carry forward to develop further the web-based system for the transmission of sentencing documents and data fields from the courts. Specific projects include the expansion of the pilot program conducted in fiscal year 2010, with the goal of having all 94 districts using the web-based system by the end of fiscal year 2011.

***Administrative Office of the U.S. Courts***

A total of $1,047,000 is planned for obligation in fiscal year 2010. These funds provide for the estimated costs of replacing AO personal computers, laptops, desktop printers, and desktop software on an approximate four-year replacement cycle. At this time, no funds are expected to be obligated in fiscal year 2011.

***Court of Appeals for the Federal Circuit***

A total of $152,786 is planned for obligation in fiscal year 2010. These funds will be used to design, purchase and install continuing upgrades to the courtroom video conferencing system. An additional $46,000 is planned for obligation in fiscal year 2011.

# APPENDIX 2 - ELECTRONIC PUBLIC ACCESS PROGRAM

# ELECTRONIC PUBLIC ACCESS PROGRAM

## GENERAL STATEMENT AND INFORMATION

The Electronic Public Access (EPA) program provides electronic public access to court information in accordance with legislation and with judiciary policies, security requirements and user needs. PACER (Public Access to Court Electronic Records) was established in 1988 as a dial-up service. In the last decade, through the implementation of the Case Management/Electronic Case Files (CM/ECF) system, PACER has evolved into an Internet-based service, which provides the courts, litigants, and public with access to court dockets, case reports, and over 500 million documents filed with the courts through CM/ECF. PACER is a portal to CM/ECF, which is in turn integral to public access.

The program reached a new milestone in registrations last year, surpassing 1,000,000 user accounts. Besides court staff, customers include members of the bar; city, state and federal employees, the general public, as well as major commercial enterprises and financial institutions. During fiscal year 2009, PACER Service Center support staff responded to nearly 150,000 calls and more than 35,000 emails from users. Registered PACER users access court documents from a court's website or the U.S. Party/Case Index (USPCI). The USPCI is a PACER tool for locating court records that reside in CM/ECF databases in the U.S. district, bankruptcy, and appellate courts across the country.

Pursuant to Congressional directives, the program is funded entirely through user fees set by the Judicial Conference at $0.08 per page. There is a $2.40 maximum charge for any single document, no matter its length. The fee does not apply to judicial opinions – which are available through PACER free of charge. Certain categories of users may be exempted by the court from paying the fee including parties to a court case who receive a free copy of filings in the case. Also, the fee is waived for usage amounting to less than $10.00 per year (which translates into access up to 125 pages). The fees are published in the *Electronic Public Access Fee Schedule*, available on uscourts.gov.

In fiscal year 2009, nearly fifty percent of PACER users did not pay fees as a result of fee waivers and exemptions. The biggest user is the Department of Justice at approximately $4 million annually. Other than the Department of Justice, the top 10 customers are major commercial enterprises or financial institutions. Fees are deposited in a special account in the U.S. Treasury and are then used by the Judicial Conference of the United States exclusively to fund program expenses and enhancements that increase public access to the courts, including court websites and courtroom technology.

In 2009, the judiciary commenced a year-long assessment of the program's services and interfaces such as PACER and the USPCI. The goal of the assessment is to identify potential enhancements to existing services and new electronic public access services for the courts, the public, and federal agencies. A contract was awarded and a number of tasks are being performed including:

- a help desk survey to identify satisfaction with PACER Service Center user support;
- an account holder survey to learn more about various categories of users;

- user satisfaction surveys to identify improvements that users are seeking with respect to PACER and the USPCI; and
- as well as interviews and focus group sessions with a broad selection of stakeholders.

In all, over 30,000 PACER users will be invited to contribute to the assessment.

A digital audio pilot project is also in progress in seven courts to upload digital audio files of court hearings to CM/ECF and to make them available to the public through PACER. The presiding judge determines which audio files are made available. Through this pilot, audio files of hearings associated with the major automaker bankruptcies have also been made available. This proved to be particularly popular with the litigants, interested parties, the media, and the public. The Federal Judicial Center is assisting in evaluating the pilot and will provide a report on the costs, benefits, and anticipated usage levels if it were adopted for national implementation.

In fiscal year 2011, the judiciary plans to use EPA collections to continue PACER operations and to operate and maintain the installed CM/ECF systems in the various courts across the country, and to finance other information technology expenses related to public access. CM/ECF is currently operational in all district and bankruptcy courts, all 12 courts of appeals, 5 bankruptcy appellate panels, the Court of International Trade and the Court of Federal Claims. Over 33 million cases are on CM/ECF systems, and more than 400,000 attorneys and others have filed documents over the Internet. The associated expenses are funded completely from EPA fee revenue. Attorneys practicing in courts offering the electronic filing capability are able to file documents directly with the court over the Internet. There are no added fees for filing documents over the Internet using CM/ECF.

Implementation of the judiciary's CM/ECF system began in 2001 in the bankruptcy courts after several years of pilot experiences in the district and bankruptcy courts. Because CM/ECF has served many district and bankruptcy courts well for nearly a decade, many in the court community have begun planning for a successor system. While users benefit significantly from having electronic access to court records, a number of areas have been identified in which enhancements and improvements to CM/ECF could be developed to serve the courts, the litigants, and the judiciary's external stakeholders optimally in the future. These improvements include better interfaces with other applications, centralized registration and authentication, fee collection prior to docketing, improved functionality for chambers, incorporation of a calendar system, improved accessibility to data, and better reporting functions.

Currently, the judiciary is defining its requirements for the next generation of CM/ECF as well as for the electronic public access program reporting functions. With the assistance of judges, chambers staff, clerks of court, and clerks' office staff, the Administrative Office is examining court processes and procedures to develop functional requirements for the judiciary's future case management system. The Next Generation effort, which is expected to span the next five years, is also including needs from other stakeholders with a separate group focused on CM/ECF interfaces among the judiciary and non-judiciary stakeholders. The various groups are using the EPA assessment study, interviews, surveys, and national focus group meetings to identify consolidated requirements for CM/ECF Next Generation. The judiciary plans to use EPA fee revenue to fund the Next Generation efforts.

***Court of Appeals for the Federal Circuit***

A total of $152,000 is planned for obligation in fiscal year 2010, and an additional $46,000 is planned for obligation in fiscal year 2011. EPA receipts will be used to offset the Court's local CM/ECF and courtroom technology requirements.

**Table A-2.1 Utilization of Electronic Public Access Receipts ($000)**

| Category | FY 2009 Actual | FY 2010 | FY 2011 |
|---|---|---|---|
| Public Access Services and Applications | 16,413 | 21,938 | 20,215 |
| CM/ECF Development, Operations, and Maintenance | 17,689 | 27,660 | 25,416 |
| Courtroom Technology Allotments for Maintenance/Technology Refreshment | 24,634 | 24,800 | 24,800 |
| Telecommunications | 17,365 | 25,333 | 23,585 |
| Electronic Bankruptcy Noticing | 9,700 | 9,662 | 9,662 |
| Allotments to the Courts | 8,373 | 9,680 | 9,077 |
| CM/ECF State Feasibility Study | 159 | 1,240 | 0 |
| Web-based Juror Services | 260 | 0 | 2,179 |
| Violent Crime Control Act Notification | 68 | 855 | 766 |
| TOTAL | 94,661 | 121,168 | 115,700 |

## GENERAL PROVISIONS - THE JUDICIARY

Sec. 301. Appropriations and authorizations made in this title which are available for salaries and expenses shall be available for services as authorized by 5 U.S.C. 3109.

Sec. 302. Not to exceed 5 percent of any appropriation made available for the current fiscal year for the Judiciary in this Act may be transferred between such appropriations, but no such appropriation, except ``Courts of Appeals, District Courts, and Other Judicial Services, Defender Services" and ``Courts of Appeals, District Courts, and Other Judicial Services, Fees of Jurors and Commissioners", shall be increased by more than 10 percent by any such transfers: Provided, That any transfer pursuant to this section shall be treated as a reprogramming of funds under sections 604 and 608 of this Act and shall not be available for obligation or expenditure except in compliance with the procedures set forth in section 608.

Sec. 303. Notwithstanding any other provision of law, the salaries and expenses appropriation for ``Courts of Appeals, District Courts, and Other Judicial Services" shall be available for official reception and representation expenses of the Judicial Conference of the United States: Provided, That such available funds shall not exceed $11,000 and shall be administered by the Director of the Administrative Office of the United States Courts in the capacity as Secretary of the Judicial Conference.

Sec. 304. Within 90 days after the date of the enactment of this Act, the Administrative Office of the U S. Courts shall submit to the Committees on Appropriations a comprehensive financial plan for the Judiciary allocating all sources of available funds including appropriations, fee collections, and carryover balances, to include a separate and detailed plan for the Judiciary Information Technology Fund, which will establish the baseline for application of reprogramming and transfer authorities for the current fiscal year.

Sec. 305. Section 3314(a) of title 40, United States Code, shall be applied by substituting "Federal" for "executive" each place it appears.

Sec. 306. In accordance with 28 U.S.C. 561-569, and notwithstanding any other provision of law, the United States Marshals Service shall provide, for such courthouses as its Director may designate in consultation with the Director of the Administrative Office of the United States Courts, for purposes of a pilot program, the security services that 40 U.S.C. 1315 authorizes the Department of Homeland Security to provide, except for the services specified in 40 U.S.C. 1315(b)(2)(E). For building-specific security services at these courthouses, the Director of the Administrative Office of the United States Courts shall reimburse the United States Marshals Service rather than the Department of Homeland Security.

[Sec. 307. Section 203( c ) of the Judicial Improvements Act of 1990 (Public Law 101-650; 28 U.S.C 133 note), is amended-
(1) in the third sentence (relating to the District of Kansas), by striking "18 years" and inserting "19 years";
(2) in the sixth sentence (relating to the Northern District of Ohio), by striking "18 years" and inserting "19 years"; and
(3) in the seventh sentence (relating to the District of Hawaii), by striking "15 years" and inserting "16 years".]

Sec. *307*. Section 140 of Public Law 97-92, as amended by Public Law 107-77 (28 U.S C. § 461 note), is repealed.

This title may be cited as the ``Judiciary Appropriations Act, [2010] *2011*".

Explanation of Changes

Section 305: The proposed language would continue to give the Judicial Branch the same authority as the Executive Branch to contract directly for space alteration projects not exceeding $100,000 without having to go through GSA.

Section 306: The proposed language re-authorizes the pilot program for the U.S. Marshals Service to provide perimeter security at a select number of primary courthouses for fiscal year 2011.

Old Section 307: The language was enacted on December 16, 2009 (P.L 111-117, the Consolidated Appropriations Act, 2010), because Congress did not enact a Judgeship bill in 2009 that would have extended these temporary judgeships. It is proposed for deletion because the Judiciary is hopeful a Judgeship bill will be enacted during fiscal year 2010.

New Section *307*: The proposed language would allow federal judges to receive the same automatic annual cost of living adjustments (COLA), currently authorized by section 461 of title 28 of the United States Code, that members of Congress are authorized to receive.