# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

**NATIONAL VETERANS LEGAL
SERVICES PROGRAM,** *et al.,*
               **Plaintiffs,**

    **v.**

**UNITED STATES OF AMERICA,**

        **Defendant.**

**Civil Action No. 16-745 (ESH)**

---

## <u>MEMORANDUM OPINION</u>

Plaintiffs, organizations and individuals who have paid fees to obtain records through the Public Access to Court Electronic Records system (PACER), claim that PACER's fee schedule is higher than necessary to cover the costs of operating PACER and therefore violates the E-Government Act of 2002, Pub. L. No. 107-347, § 205(e), 116 Stat. 2899, 2915 (codified as 28 U.S.C § 1913 note). (Compl. at 2, ECF No. 1.) They have brought this class action against the United States under the Little Tucker Act, 28 U.S.C. § 1346(a), to recover the allegedly excessive fees that they have paid over the last six years. (*Id.* at 14-15, ¶¶ 33-34.) Plaintiffs have moved to certify a class of "[a]ll individuals and entities who have paid fees for the use of PACER within the past six years, excluding class counsel and agencies of the federal government." (Pls.' Mot. Class Certif., ECF No. 8.) The proposed class representatives are three nonprofit legal advocacy organizations: the National Veterans Legal Services Program, the National Consumer Law Center, and the Alliance for Justice. (*Id.* at 14.) Defendant opposes class certification primarily on the ground that the named plaintiffs are not adequate representatives because they are eligible to apply for PACER fee exemptions, while some other

class members are not.  (Def.'s Opp., ECF. No. 13)  For the reasons herein, the Court will grant

plaintiffs' motion and certify a class under Rule 23(b)(3).

## BACKGROUND

PACER is an online electronic records system provided by the Federal Judiciary that

allows public access to case and docket information from federal courts.  PACER,

https://www.pacer.gov (last visited Jan. 23, 2017).  Congress has authorized the Judicial

Conference that it "may, only to the extent necessary, prescribe reasonable fees . . . for access to

information available through automatic data processing equipment."  28 U.S.C. § 1913 note.

The fees "shall be deposited as offsetting collections . . . to reimburse expenses incurred in

providing these services."  *Id.*  Plaintiffs allege that the fee to use PACER was $.07 per page in

1998, with a maximum of $2.10 per request introduced in 2002.  (Compl. at ¶ 8.)  The fee

increased to $.08 per page in 2005 and to $.10 per page in 2012.  (*Id.* at ¶¶ 13, 19.)

The current PACER fee schedule issued by the Judicial Conference sets forth both the

access fees and the conditions for exemption from the fees.  *Electronic Public Access Fee*

*Schedule*, PACER, https://www.pacer.gov/documents/epa_feesched.pdf (Effective Dec. 1, 2013).

The current fee is $.10 per page, with a maximum of $3.00 per record for case documents but no

maximum for transcripts and non-case specific reports.  *Id.*  There is no fee for access to judicial

opinions, for viewing documents at courthouse public access terminals, for any quarterly billing

cycle in which a user accrues no more than $15.00 in charges, or for parties and attorneys in a

case to receive one free electronic copy of documents filed in that case.  *Id.*  As a matter of

discretion, courts may grant fee exemptions to "indigents, bankruptcy case trustees, *pro bono*

attorneys, *pro bono* alternative dispute resolution neutrals, Section 501(c)(3) not-for-profit

organizations, and individual researchers associated with educational institutions," but only if

they "have demonstrated that an exemption is necessary in order to avoid unreasonable burdens and to promote public access to information."  *Id.*  "Courts should not . . . exempt individuals or groups that have the ability to pay the statutorily established access fee."  *Id.*  "[E]xemptions should be granted as the exception, not the rule," should be granted for a definite period of time, and should be limited in scope.  *Id.*

Plaintiffs claim that the fees they have been charged violate the E-Government Act because they are "far more than necessary to recover the cost of providing access to electronic records."  (Compl. at 2, ¶ 9.)  For example, in 2012 the judiciary spent $12.1 million generated from public access receipts on the public access system, while it spent more than $28.9 million of the receipts on courtroom technology.  (*Id.* at ¶ 20.)  "In 2014 . . . the judiciary collected more than $145 million in fees, much of which was earmarked for other purposes such as courtroom technology, websites for jurors, and bankruptcy notification systems."  (*Id.* at ¶ 21.) Furthermore, plaintiffs claim that excessive fees have "inhibited public understanding of the courts and thwarted equal access to justice."  (*Id.* at 2.)  Based on the alleged violation of the E-Government Act, plaintiffs assert that the Little Tucker Act entitles them to a "refund of the excessive PACER fees illegally exacted."  (*Id.* at ¶¶ 33-34.)  "Each plaintiff and putative class member has multiple individual illegal-exaction claims against the United States, none of which exceeds $10,000."  (*Id.* at ¶ 5.)

Named plaintiffs are nonprofit organizations that have incurred fees for downloading records from PACER.  (Compl. at ¶¶ 1-3.)  Plaintiff National Veterans Legal Services Program (NVLSP) "has represented thousands of veterans in individual court cases, educated countless people about veterans-benefits law, and brought numerous class-action lawsuits challenging the legality of rules and policies of the U.S. Department of Veterans Affairs."  (*Id.* at ¶ 1; Stichman

3

Decl. ¶ 1, ECF No. 30.)  Plaintiff National Consumer Law Center (NCLC) conducts "policy analysis, advocacy, litigation, expert-witness services, and training for consumer advocates." (Compl. at ¶ 2; Rossman Decl. ¶ 1, ECF No. 29.)  Plaintiff Alliance for Justice (AFJ) "is a national association of over 100 public-interest organizations that focus on a broad array of issues" and "works to ensure that the federal judiciary advances core constitutional values, preserves unfettered access to the courts, and adheres to the even-handed administration of justice for all Americans."  (Compl. at ¶ 3; Goldberg Decl. ¶ 1, ECF No. 28.)

During the six years covered by this lawsuit, named plaintiffs regularly paid fees to use PACER.  NVLSP paid $317 in PACER fees in 2016 and estimates that it has paid similar amounts annually over the past six years.  (Stichman Decl. ¶ 2.)  NCLC paid at least $5,863 in fees during the past six years.  (Rossman Decl. ¶ 2; Mot. Hr'g Tr. 2, Jan. 18, 2017.)  AFJ paid at least $391 in fees during the past six years.  (Goldberg Decl. ¶ 2; Tr. 3.)  None of the three named plaintiffs asked for exemptions from PACER fees, because they could not represent to a court that they were unable to pay the fees.  (Tr. 3-4.)  The reason for this is that each organization has annual revenue of at least $3 million.  (*Id.*; Stichman Decl. ¶ 2; Rossman Decl. ¶ 2; Goldberg Decl. ¶ 2.)

In a prior opinion, this Court denied defendant's motion to dismiss the suit.  *See National Veterans Legal Services Program v. United States*, No. 16-cv-745, 2016 WL 7076986 (D.D.C. Dec. 5, 2016).  First, the Court held that the first-to-file rule did not bar this suit because it concerns the legality of the PACER fee schedule, whereas the plaintiffs in *Fisher v. United States*, No. 15-1575C (Fed. Cl. May 12, 2016), claim an error in the application of the fee schedule.  *Id.* at *3.  Second, the Court held that plaintiffs were not required to alert the PACER Service Center about their claims as a prerequisite to bringing suit under the Little Tucker

Act.  *Id.*

In the current motion, plaintiffs have asked this Court to certify a class under Rule

23(b)(3) or, in the alternative, 23(b)(1).  (Pls.' Mot. at 18.)  Their motion proposed a class of

"[a]ll individuals and entities who have paid fees for the use of PACER within the past six years,

excluding class counsel and agencies of the federal government."  (*Id.* at 1.)  In opposition to

class certification, defendant argues that (1) plaintiffs have failed to demonstrate that they satisfy

the numerosity requirement, because they have not established the number of users who raised

their concerns with the PACER Service Center or the number of potential plaintiffs who are

nonprofit organizations; (2) the class representatives fail the typicality and adequacy

requirements, because their nonprofit status makes them eligible to request fee exemptions,

which not all class members can do; (3) the Court should not allow this suit to proceed as a class

action, because it could produce results that conflict with those in *Fisher*; and (4) individual

questions predominate, because the Court would need to determine whether each user received

free pages in excess of the 30 charged pages, such that the user's per page cost did not violate the

E-Government Act.  (Def.'s Opp. at 9-22.)

## ANALYSIS

### I.     JURISDICTION

Although defendant has not raised any jurisdictional arguments in its opposition to class

certification, courts must assure themselves that they have jurisdiction.  Plaintiffs have brought

this case under the Little Tucker Act, which gives district courts jurisdiction over a "civil action

or claim against the United States, not exceeding $10,000 in amount, founded either upon the

Constitution, or any Act of Congress, or any regulation of an executive department, or upon any

express or implied contract with the United States." 28 U.S.C. § 1346(a)(2).[1]  Interpreting the

identical wording of the Tucker Act, which applies to claims that exceed $10,000, the Federal

Circuit has held that a plaintiff can "recover an illegal exaction by government officials when the

exaction is based on an asserted statutory power" and "was improperly paid, exacted, or taken

from the claimant in contravention of the Constitution, a statute, or a regulation."  *Aerolineas*

*Argentinas v. United States*, 77 F.3d 1564, 1572-73 (Fed. Cir. 1996) (quoting *Eastport S.S. Corp.*

*v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967)); *Norman v. United States*, 429 F.3d 1081,

1095 (Fed. Cir. 2005).[2]

In their complaint, plaintiffs request "monetary relief for any PACER fees collected by

the defendant in the past six years that are found to exceed the amount authorized by law."

(Compl. at 14-15.)  A suit in district court under the Little Tucker Act may seek over $10,000 in

total monetary relief, as long as the right to compensation arises from separate transactions for

which the claims do not individually exceed $10,000.  *Am. Airlines, Inc. v. Austin*, 778 F. Supp.

72, 76-77 (D.D.C. 1991); *Alaska Airlines v. Austin*, 801 F. Supp. 760, 762 (D.D.C. 1992), *aff'd*

---

[1] The Federal Circuit has exclusive jurisdiction over appeals from Little Tucker Act suits, and therefore, the law of the Federal Circuit applies to both the merits of those cases and related procedural issues.  28 U.S.C. § 1295(a)(2); *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 952-53 (Fed. Cir. 1990); *United States v. One (1) 1979 Cadillac Coupe De Ville VIN 6D4799266999*, 833 F.2d 994, 997 (Fed. Cir. 1987).  This Court refers to Federal Circuit precedent when it exists.

[2] For the Court to have jurisdiction over an illegal exaction claim under the Little Tucker Act, the statute causing the exaction must also provide "either expressly or by 'necessary implication,' that 'the remedy for its violation entails a return of money unlawfully exacted.'"  *Norman*, 429 F.3d at 1095 (quoting *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1373 (Fed.Cir.2000)).  The Court of Federal Claims has taken an expansive view of the phrase "necessary implication" because "[o]therwise, the Government could assess any fee or payment it wants from a plaintiff acting under the color of a statute that does not expressly require compensation to the plaintiff for wrongful or illegal action by the Government, and the plaintiff would have no recourse for recouping the money overpaid."  *N. Cal. Power Agency v. United States*, 122 Fed. Cl. 111, 116 (2015).

*in relevant part by Alaska Airlines, Inc. v. Johnson*, 8 F.3d 791, 797 (Fed. Cir. 1993); *United*

*States v. Louisville & Nashville R.R. Co.*, 221 F.2d 698, 701 (6th Cir. 1955).  Plaintiffs assert that

no class member has a claim exceeding $10,000 for a single PACER transaction, and defendant

does not dispute this.  (Pls.' Mot. at 11; Tr. 22-23.)  Therefore, plaintiffs' monetary claim does

not exceed the jurisdictional limitation of the Little Tucker Act.

## II.    CLASS CERTIFICATION

Rule 23 sets forth two sets of requirements for a suit to be maintained as a class action.

Fed. R. Civ. P. 23.  First, under Rule 23(a), all class actions must satisfy the four requirements of

numerosity, commonality, typicality, and adequacy.  Second, the suit must fit into one of the

three types of class action outlined in Rule 23(b)(1), (b)(2), and (b)(3).  The Court finds that this

suit satisfies the 23(a) requirements and that a class should be certified under 23(b)(3).

### A.  Class Definition

In their motion for class certification, plaintiffs propose a class of "[a]ll individuals and

entities who have paid fees for the use of PACER within the past six years, excluding class

counsel and agencies of the federal government."  (Pls.' Mot. at 1.)  At the motion hearing,

plaintiffs suggested that it would actually only be necessary to exclude federal executive branch

agencies, because their concern was that the Justice Department could not both defend the suit

and represent executive branch agency plaintiffs.  (Tr. 5-7.)  The Court shares plaintiffs' concern

but finds that the issue is not limited to executive branch agencies.  "Except as otherwise

authorized by law, the conduct of litigation in which the United States, an agency, or officer

thereof is a party . . . is reserved to officers of the Department of Justice, under the direction of

the Attorney General."  28 U.S.C. § 516.  Many independent agencies lack independent litigating

authority and are instead represented by the Justice Department, at least on some issues or in

some courts.  *See* Neal Devins, *Unitariness and Independence: Solicitor General Control over Independent Agency Litigation*, 82 Cal. L. Rev. 255, 263-80 (1994); Kirti Datla & Richard L. Revesz, *Deconstructing Independent Agencies (and Executive Agencies)*, 98 Cornell L. Rev. 769, 799-804 (2013).  Some commentators consider independent regulatory commissions and boards to be on the boundary between the executive and legislative branches, and yet the Solicitor General typically controls their litigation before the Supreme Court.  Anne Joseph O'Connell, *Bureaucracy at the Boundary*, 162 U. Pa. L. Rev. 841, 867, 920-21 (2014).  To avoid individualized questions about the litigating authority of federal entities, the Court will exclude from the class all federal government entities, not only executive branch agencies.

For the sake of clarity, the Court will make two additional minor modifications to the proposed class definition before analyzing the requirements of Rule 23.  First, the class definition that plaintiffs introduced in their complaint and repeated in their motion for class certification defines the class in terms of those "who have paid fees for the use of PACER within the past six years," but that language is unclear when it is no longer associated with the dated complaint. Thus, the Court will substitute the actual dates for the six-year period ending on the date of the complaint—April 21, 2016.  (Compl. at 15.)  Second, rather than stating that the definition excludes "class counsel," the Court will state that it excludes "class counsel in this case." Plaintiffs' counsel stated at the motion hearing that they were excluding only themselves, not all PACER users who have acted as counsel in class actions.  (*See* Tr. 7.).  The modified class definition is: "All individuals and entities who have paid fees for the use of PACER between April 21, 2010, and April 21, 2016, excluding class counsel in this case and federal government entities."

## B. Rule 23(a) Requirements

Under Rule 23(a), a suit may be maintained as a class action "only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.*

### 1. Numerosity

Plaintiffs claim that the joinder of all members of their proposed class would be impracticable because they estimate that the class contains at least several hundred thousand members. (Pls.' Mot. at 12-13.) Defendant raises two arguments to challenge this contention. First, defendant argues that "[p]laintiffs have failed to establish that there exist sufficient numbers of would-be class members who may pursue viable claims for alleged overpayment of PACER fees, because all PACER users agree that they will raise any concerns with their PACER bills with the PACER Service Center within 90 days of receiving their bills." (Def.'s Opp. at 9.) In denying defendant's motion to dismiss, this Court has already held that plaintiffs were not required to alert the PACER Service Center about their claims as a prerequisite to bringing suit under the Little Tucker Act. *NVLSP*, 2016 WL 7076986, at *3. Therefore, defendant is wrong to count only potential class members who have alerted the PACER Service Center.

Second, defendant argues that "[p]laintiffs are only able adequately to represent the

interests of non-profit PACER users" and "named Plaintiffs have made no attempt to identify the number of non-profit organizations who would share their claims." (Def.'s Opp. at 10.) As defendant's own language suggests, defendant's argument is actually about adequacy of representation, not about numerosity. When the Court reaches the adequacy requirement below, it will address plaintiffs' ability to represent entities other than nonprofit organizations.

Defendant does not dispute that it would be impracticable to join all members of the class that plaintiffs have proposed: "[a]ll individuals and entities who have paid fees for the use of PACER within the past six years, excluding class counsel and agencies of the federal government." (Pls.' Mot. at 1; Def.'s Opp. at 9-10.) In 2012 the Judiciary reported that there were currently more than 1.4 million user accounts, and there had been 325,000 active users in 2009. *Electronic Public Access Program Summary*, PACER (Dec. 2012), https://www.pacer. gov/documents/epasum2012.pdf. Accepting the Judiciary's estimate that approximately 65-75 percent of active users are exempt from fees in at least one quarter during a typical fiscal year, *id.*, there remain a very large number of users paying fees in a typical year. Although the parties have not presented any precise data about the size of the class, there is no question that the class satisfies the numerosity requirement.

## 2. Commonality

A common question is a question "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. Plaintiffs argue that the two most important questions presented by their suit are common: (1) "Are the fees imposed for PACER access excessive in relation to the cost of providing the access . . . ?" and (2) "[W]hat is the measure of damages for the excessive fees charged?" (Pls.'

Mot. at 13.)  Defendant has not argued that plaintiffs' proposed class fails to satisfy the commonality requirement (*see* Def.'s Opp. at 8),[3] and this Court agrees that the legality of the PACER fee schedule and the formula for measuring any damages are common questions.

### 3.  Typicality

A class representative's "'claim is typical if it arises from the same event or practice or course of conduct that gives rise to a claim of another class member's where his or her claims are based on the same legal theory.'" *Bynum v. Dist. of Columbia*, 214 F.R.D. 27, 34 (D.D.C. 2003) (quoting *Stewart v. Rubin*, 948 F. Supp. 1077, 1088 (D.D.C.1996)).  A leading treatise on class actions has explained that "typicality focuses on the similarities between the class representative's claims and those of the class while adequacy focuses on evaluating the incentives that might influence the class representative in litigating the action, such as conflicts of interest."  William B. Rubenstein, *Newberg on Class Actions* § 3:32 (5th ed. 2016).

According to named plaintiffs, their claims "are typical of the class because they arise from the same course of conduct by the United States (imposing a uniform PACER fee schedule that is higher than necessary to reimburse the cost of providing the service) and are based on the same legal theory (challenging the fees as excessive, in violation of the E-Government Act)." (Pls.' Mot. at 14.).  In response, defendant argues that named plaintiffs are "unlike other PACER users, in that they have the ability to request PACER fee exemptions as non-profits."  (Def.'s Opp. at 11.)  According to defendant, named plaintiffs' claims are not typical because they "appear unwilling to push to reduce those fees beyond the limit that would affect free access to their favored sub-set of PACER users."  (*Id.* at 13.)

---

[3] Defendant stated on the first page of its filing that "Plaintiffs have failed to establish . . . a commonality of claims."  (Def.'s Opp. at 1.)  However, it omitted commonality from a later list of challenges, *see id.* at 8, and failed to raise any argument about commonality.

Contrary to defendant's argument, plaintiffs satisfy the typicality requirement. Named plaintiffs and all class members are challenging the PACER fee schedule on the theory that it violates the E-Government Act by generating revenue that exceeds the costs of providing PACER. Defendant's objection focuses not on differences between named plaintiffs' claims and those of other class members but on incentives that could affect how named plaintiffs would pursue the litigation. Thus, the Court will address defendant's objection under the rubric of adequacy, which is the crux of defendant's opposition.

### 4. Adequacy

"'Two criteria for determining the adequacy of representation are generally recognized: 1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and 2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel.'" *Twelve John Does v. Dist. of Columbia*, 117 F.3d 571, 575-76 (D.C. Cir. 1997) (quoting *Nat'l Ass'n of Reg'l Med. Programs, Inc. v. Mathews*, 551 F.2d 340, 345 (D.C. Cir. 1976)). Conflicts of interest prevent named plaintiffs from satisfying the adequacy requirement only if they are "fundamental to the suit and . . . go to the heart of the litigation." *Keepseagle v. Vilsack*, 102 F. Supp. 3d 205, 216 (D.D.C. 2015) (quoting *Newberg* § 3:58); *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012). Furthermore, conflicts will not defeat the adequacy requirement if they are speculative or hypothetical. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430 (4th Cir. 2003). "[P]otential conflicts over the distribution of damages . . . will not bar a finding of adequacy at the class certification stage." *Newberg* § 3:58.

According to defendant, named plaintiffs are not adequate representatives because "[t]heir interests in free PACER access for their favored subset of PACER users diverge from the

interests of those PACER [users] seeking to minimize their costs of PACER use." (Def.'s Opp. at 15.)  Defendant argues that named plaintiffs' nonprofit status gives them "the ability to request PACER fee exemptions." (*Id.* at 11.)  Defendant further asserts that named plaintiffs are "interest[ed] in free PACER access to their groups of veterans, elderly and low-income consumers, and other public interest organizations of concern to the named Plaintiffs." (*Id.* at 12.)  As a result, defendant reasons, "Plaintiffs appear unwilling to push to reduce those fees beyond the limit that would affect free access to their favored sub-set of PACER users." (*Id.* at 13.)

Defendant greatly exaggerates the relevance of named plaintiffs' nonprofit status.  It is true that "a court may consider exempting . . . Section 501(c)(3) not-for-profit organizations" from payment of PACER fees.  *Electronic Public Access Fee Schedule*.  However, the Fee Schedule also instructs courts that applicants must "have demonstrated that an exemption is necessary in order to avoid unreasonable burdens and to promote public access to information." *Id.*  "Courts should not . . . exempt individuals or groups that have the ability to pay the statutorily established access fee." *Id.*  "[E]xemptions should be granted *as the exception*, not the rule." *Id.* (emphasis added).  Courts grant exemptions only for access to their own district's records, and some districts are more willing than others to grant exemptions. *See* Christina L. Boyd & Jacqueline M. Sievert, *Unaccountable Justice? The Decision Making of Magistrate Judges in the Federal District Courts*, 34 Just. Sys. J. 249, 255 & n.1 (2013).  This Court has found examples where courts granted exemptions to nonprofit organizations for purposes of litigation, but those organizations had claimed that payment of PACER fees was a financial hardship. *See, e.g.*, Orders Granting Request for Exemption, *PACER Service Center Exemption Requests & Orders*, No. 3:02-mc-00006 (D. Or. 2015), ECF Nos. 33, 35.

Named plaintiffs are not exempt from PACER fees and thus share with the other class members an interest in reducing the fees.  The PACER fees that named plaintiffs have paid are low relative to their annual revenue and other costs of litigation.  Because of their multimillion dollar annual budgets, named plaintiffs have averred that they cannot represent that they are unable to pay PACER fees, and as a result, they cannot qualify for exemptions.  (Tr. 3-4.)  Thus, named plaintiffs must pay PACER fees and accordingly have an interest in reducing those fees.

In fact, the nonprofit organizations who are named plaintiffs in this case make particularly good class representatives.  They are interested in reducing PACER fees not only for themselves but also for their constituents.  As nonprofit organizations, named plaintiffs exist to advocate for consumers, veterans, and other public-interest causes.  (Compl. at ¶¶ 1-3.)  The Alliance for Justice is an association of over 100 public-interest organizations, many of whom may face the same barriers as named plaintiffs to obtaining fee exemptions.  Individual consumers and veterans may be eligible to apply for exemptions if they are indigent.  *Electronic Public Access Fee Schedule*.  However, courts frequently deny exemptions even to plaintiffs who have *in forma pauperis* status.  *See, e.g.*, *Oliva v. Brookwood Coram I, LLC*, No. 14–cv–2513, 2015 WL 1966357, at *2 (E.D.N.Y. April 30, 2015); *Emrit v. Cent. Payment Corp.*, No. 14–cv–00042, 2014 WL 1028388, at *3 (N.D. Cal. Mar. 13, 2014); *Scott v. South Carolina*, Civ. No. 6:08-1684, 2009 WL 750419, at *1-*2 (D.S.C. March 18, 2009).  Thus, named plaintiffs have dual incentives to reduce PACER fees, both for themselves and for the constituents that they represent.  In addition, "organizational representatives with experience" can "provide more vigilant and consistent representation than individual representatives."  *In re Pharm. Indus. Average Wholesale Price Litig.*, 277 F.R.D. 52, 62 (D. Mass. 2011).

In an attempt to argue that named plaintiffs' commitment to increasing public PACER

access actually disqualifies them from being representatives in this suit, defendant asserts that "[p]laintiffs appear unwilling to push to reduce those fees beyond the limit that would affect free access to their favored sub-set of PACER users." (Def.'s Opp. at 13.)  This argument assumes the existence of some class members who would argue that the E-Government Act requires the Judicial Conference to eliminate exemptions and charge paying users only the fees that are necessary to provide PACER to them.  Not only is such a claim based on sheer speculation, it also lacks viability given that Congress has explicitly directed the Judicial Conference that the "fees may distinguish between classes of persons, and shall provide for exempting persons or classes of persons from the fees, in order to avoid unreasonable burdens and to promote public access to such information." 28 U.S.C. § 1913 note.  Even if a claim to eliminate exemptions were viable and not speculative, it would not create a conflict of interest that would prevent named plaintiffs from being adequate representatives, for a claim to eliminate exemptions would be independent from the claim in this case (i.e., that the E-Government Act prevents the Judiciary from collecting PACER fees that are not necessary to fund PACER).  Named plaintiffs' pursuit of this class action will not interfere with other plaintiffs' ability to pursue a claim for elimination of exemptions. For all of these reasons, whether named plaintiffs lack interest in challenging the current exemption policy is irrelevant to their ability to serve as representatives in this suit.

Regarding the adequacy of class counsel, defendant argues only that the divergence in interests between named plaintiffs and other class members prevents named plaintiffs' counsel from adequately representing all class members.  (Def.'s Opp. at 15.)  The Court rejects this argument for the same reasons that it has already rejected defendant's argument that named plaintiffs have a conflict of interest with other class members.  There is no dispute about the

competency of class counsel.  (*See* Pls.' Mot., Attachments 1-3; Def.'s Opp. at 15.)  In sum, named plaintiffs and their counsel satisfy the adequacy requirement.

### C. Rule 23(b) Requirements

Rule 23(b) describes three types of class action and requires every class action to match one or more of the three types.  Fed. R. Civ. P. 23(b); *Newberg* § 4:1.  Plaintiffs argue that their proposed class can be certified under 23(b)(1) or 23(b)(3).

### 1. Rule 23(b)(1)

In a 23(b)(1) class action, "prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."  Fed. R. Civ. P. 23(b)(1).  According to the Advisory Committee notes to Rule 23, an action "to compel or invalidate an assessment" is the type of class action contemplated in Rule 23(b)(1).  Fed. R. Civ. P. 23(b)(1) advisory committee's note to 1966 amendment.

In their motion, plaintiffs argue that Rule 23(b)(1) permits certification of this class action because plaintiffs' complaint "seeks equitable relief," and inconsistent results in separate actions for equitable relief could force the Judiciary into a conflicted position.  (Pls.' Mot. at 18.) Plaintiffs' complaint does ask the Court to "[d]eclare that the fees charged for access to records through PACER are excessive."  (Compl. at 15.)  However, at the motion hearing, plaintiffs stated that the declaration they are requesting is merely a step on the way to granting monetary relief, it is "not . . . equitable relief," and it "wouldn't bind anyone."  (Tr. 12-13.)  Indeed,

plaintiffs acknowledged that they "couldn't seek equitable relief" under the Little Tucker Act. (*Id.*; *see also Doe v. United States*, 372 F.3d 1308, 1312-14 (Fed. Cir. 2004); *Bobula v. U.S. Dep't of Justice*, 970 F.2d 854, 859 (Fed. Cir. 1992).)  Therefore, the Court will not certify the class under Rule 23(b)(1).

## 2. Rule 23(b)(3)

To certify a class under Rule 23(b)(3), a court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Plaintiffs argue that "[t]he sole individual issue—calculation of each class member's recovery . . . is ministerial" and therefore the common legal questions predominate.  (Pls.' Mot. at 19.)  In opposition, defendant contends that "the Court will have to assess whether and in what degree the individual Plaintiffs were able to secure free pages in excess of the 30 pages for which they were charged for lengthy documents.  If the individual plaintiff's downloads of these documents operate to decrease the per page cost to below that sought by Plaintiffs, then there will be no liability to the class-member."  (Def.'s Opp. at 20.)  The Court does not share defendant's concern, because plaintiffs' theory of liability is that the fee schedule itself violated the E-Government Act, not that charges to individual plaintiffs violated the Act when they amounted to more than the cost of distribution to those particular plaintiffs.  (*See* Pls.' Reply at 6, ECF No. 17.)  If plaintiffs prevail on their common legal theory that the Judiciary was required to set a lower rate that corresponded to PACER's funding needs, defendant would be liable to any class member who paid the illegal higher rate.  Calculating the amount of damages would be ministerial because it would be proportional to the fees that plaintiffs paid, rather than dependent upon the types of

documents that they obtained.  Therefore, the Court finds that common questions predominate.

Although defendant does not use the word "superiority," it also objects that "class action litigation was not intended to facilitate *two* class actions, which would result if this case proceeds as a class and the *Fisher* case is similarly prosecuted."  (Def.'s Opp. at 21.)  This Court has already rejected the argument that *Fisher* should bar this suit, explaining that the suits make different claims.  *NVLSP*, 2016 WL 7076986, at *3.  Besides, defendant's argument has nothing to do with the superiority of the class action vehicle, as opposed to individual actions.[4]

Allowing this action to proceed as a class action is superior to requiring individual actions, both for reasons of efficiency and to enable individuals to pursue small claims.  As the Supreme Court has explained, "'[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'"  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

In sum, the Court will certify the class under Rule 23(b)(3), but it in no way resolves the merits of plaintiffs' challenge to the PACER fee schedule.

## III.   NOTICE TO CLASS MEMBERS

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  In their motion for class certification, plaintiffs proposed a class-notice plan involving "email notice . . . to each class member using the contact information maintained by the government" for PACER users. (*See* Pls.' Mot. at 20.)  Plaintiffs "request that the Court direct the parties to file an agreed-upon

---

[4] Furthermore, the plaintiff in *Fisher* has not yet moved for class certification.  (Tr. 9.)

proposed form of notice (or, if the parties cannot agree, separate forms of notice) within 30 days of the Court's certification order, and direct that email notice be sent to the class within 90 days of the Court's approval of a form of notice." (*Id.*)  With no opposition from defendant, the Court will grant this request.

## CONCLUSION

Plaintiffs' motion for class certification is granted, with minor modifications to the proposed class definition.  A separate Order accompanies this Memorandum Opinion.

/s/   *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

Date:   January 24, 2017