UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NATIONAL VETERANS LEGAL** | ) |
| **SERVICES PROGRAM,** | ) |
| | ) Civil Action |
| **et al.** | ) No. 16-745 |
| | ) |
| **Plaintiffs,** | ) January 18, 2017 |
| | ) 2:30 p.m. |
| **v.** | ) |
| | ) Washington, D.C. |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Defendant.** | ) |

*TRANSCRIPT OF MOTION HEARING PROCEEDINGS*
*BEFORE THE HONORABLE ELLEN SEGAL HUVELLE,*
*UNITED STATES DISTRICT COURT JUDGE*

APPEARANCES:

For the Plaintiffs:     **William H. Narwold, Esq.**
                        **John Taylor, Esq.**
                        1 Corporate Center
                        20 Church Street
                        17th Floor
                        Hartford, CT 06103
                        860-882-1676
                        Fax: 860-882-1682
                        Email: Bnarwold@motleyrice.com

                        **Deepak Gupta, Esq.**
                        GUPTA WESSLER PLLC
                        1735 20th Sreet, NW
                        Washington, DC 20009
                        (202) 888-1741
                        Email: Deepak@guptawessler.com

For the Defendant:      **William Mark Nebeker, Assistant U.S.**
                        **Attorney**
                        U.S. ATTORNEY'S OFFICE
                        Civil Division
                        555 Fourth Street, NW
                        Washington, DC 20530
                        (202) 252-2536
                        Fax: (202) 252-2599
                        Email: Mark.nebeker@usdoj.gov

APPEARANCES:  Cont.

Court Reporter:              **Scott L. Wallace, RDR, CRR**
                            Official Court Reporter
                            Room 6503, U.S. Courthouse
                            Washington, D.C. 20001
                            202.354.3196
                            scottlyn01@aol.com

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

## AFTERNOON SESSION, JANUARY 18, 2017

(2:31 p.m.)

THE COURT:  Good afternoon.

ALL PARTIES PRESENT:  Good afternoon.

THE COURTROOM CLERK:  Your Honor, this is Civil Action 16-745, *National Veterans Legal Services Program, et al., versus United States of America*.

I'm going to ask counsel to please come forward, identify yourselves for the record, introducing any parties at your table.

MR. GUPTA:  Good afternoon, Your Honor, I'm Deepak Gupta for the plaintiffs.  And with me at counsel table are my colleagues John Taylor from my firm, Gupta Wessler, and Bill Narwold from the Motley Rice firm.

THE COURT:  Good afternoon.

MR. NEBEKER:  Good afternoon, Your Honor.  Mark Nebeker, Assistant United States Attorney, here on behalf of the defendant.  With me at counsel table is Mr. William Myers, deputy general counsel at the Administrative Office of the U.S. Courts and Wendell Skidgel, a junior attorney.

THE COURT:  Mr. Nebeker, just to make sure no one has any problem, obviously as a federal judge I have something to do with the Administrative Office.  I don't actually -- I don't think I know Mr. Myers, or if I do, I can't honestly say I remember a conversation, but it seems that the rule of necessity has to kick in here.

MR. NEBEKER:  I would think so.  If there were deemed to be -- if the plaintiffs felt there were an issue, I would think there's no one else to decide these issues.

THE COURT:  I don't think there's an issue, I certainly don't, but I don't think it would do any good to bring anybody else from somewhere else.  It's the same issue.  You agree with that, Mr. Gupta?

MR. GUPTA:  Yes, ma'am.

THE COURT:  All right.  Let me start with the plaintiffs, because I did send out yesterday by e-mail through my law clerk a couple of questions which interest me.  If you can, can you address those first.

MR. GUPTA:  Sure, Your Honor.  The first question you asked is the amount or approximate amount of Pacer fees that the named plaintiffs paid during the six years that this class period represents.  And so I have not entirely complete information that I've been able to get in the past 24 hours, but pretty close to it.  For the National Consumer Law Center, I have complete information.  They have paid $5,863 and some odd cents over that period.  And the amount has varied -- I have totals for each year.  It's varied.  It's fluctuated from as much as 2,000 to a few hundreds year-by-year.

THE COURT:  I'd be happy to take those, if you show them to Mr. Nebeker, and you can just pass them up.

MR. GUPTA:  Sure.  I would be happy to do that.

THE COURT:  These, you think, are complete?

MR. GUPTA:  What I would like to -- if -- I think it would probably be appropriate for us to submit a declaration so that we can give you the complete totals.

For the National Veterans Legal Services Program, they were able to confirm this morning that in 2016 alone they incurred $316 in fees.  They believe that the annual totals going back the other years are roughly the same, but they are not certain.

THE COURT:  Okay.

MR. GUPTA:  But they will get that information for you in the next few days.  And then the Alliance For Justice, the number they were able to confirm is $391, and those are all the payments that they are able to account for within the class period, but again, we'll follow-up and verify.

And that's for Alliance For Justice itself.  It does not include the 100 plus member organizations.

THE COURT:  Okay.  Then the question was about exemptions from Pacer fees.

MR. GUPTA:  And the answer is none of the three named plaintiffs has sought an exemption because they would not qualify, and I can read you from an e-mail which we'll put into a declaration from the director of litigation at the National Consumer Law Center.  Here's what he said.  He said, quote, "NCLC has never sought exemptions from Pacer fees because NCLC would

4

not have qualified for such exemptions at any time during the class period given the financial hardship and other requirements that would have applied."

And I actually -- I have the financials for the three organizations, but I can sum it up in a nutshell by telling you that these are organizations with multimillion dollar annual budgets, and the Pacer policy on exemptions, which is -- this is cited at the reply brief at page 4, footnote 1, says that "Courts should not exempt individuals or groups that have the ability to pay the statutorily established access fee," and that is true of all three plaintiffs here, Your Honor.

THE COURT:  It sounds to me like the -- other than NCLC, the fees that they paid, 391 represents six years for the lines

MR. GUPTA:  That's for the Alliance For Justice alone, and that's an organization that does not actually do any litigation itself, Your Honor.

So -- although many of the organizations that they represent are litigating public interest organizations.  So they are on the lowest end of the spectrum, whereas the National Consumer Law Center undertakes litigation itself, co-counsels in litigation, and also publishes treatises on consumer law that require them to look through Pacer filings.

THE COURT:  Right, but we are still -- the 5,863 -- so you say -- I would assume that the financial -- the annual budget, you're going to put this in the affidavit as well?

MR. GUPTA:  I can do that, sure, Your Honor.

THE COURT:  Sure.  So you'll just confirm your figures for the six-year period, whether they're -- I don't care if it's broken down year-by-year or the six-year total or both.

MR. GUPTA:  Okay.

THE COURT:  And you have indicated that they don't qualify.  I don't think I have any other questions.  You've told me why you haven't sought it.  Okay.

Then let me see if I have other questions.

(Brief pause in proceedings.)

THE COURT:  Okay.  I'll hear from -- you have excluded -- let me -- just one more question, if I may, or two more just to get them out of the way.  You excluded from your definition of the class, you said, federal agencies?

MR. GUPTA:  That's right.

THE COURT:  We, the judiciary, are not covered.  So, that's one.  Federal agencies.  I assume that -- does that include SEC, et cetera, et cetera?  But what about the executive branch?

MR. GUPTA:  It does.  The Justice Department, we know for example, is a large Pacer user and does have to pay fees into the system, and we've excluded them because obviously it would be quite awkward if the Justice Department were defending a lawsuit in which they were named -- were a member of the class.

THE COURT:  But what are you doing about Congress?  I'm

just thinking of the governmental entities.

MR. GUPTA:  I have not looked into the question of whether -- I assume Congress is not exempt.  I haven't specifically looked into that question, and I don't think we're including that within the term "federal agencies."

I think what we mean to encompass, Your Honor, is federal executive branch agencies, and we can amend the language to make that clear.

THE COURT:  Well, I don't know.  I don't know whether -- certainly federal executive branch agencies may well be the right definition.  That would be the executive.  Where we, the judiciary, are exempt -- I looked at the policy, and I don't see any exemption for any other -- they make it clear, state, local, and federal is not covered, with the exception of the judiciary, I think.  But when we start making allowances for your exempting certain federal -- the executive branch, I just don't know what you're supposed to do about Congress.

MR. GUPTA:  I think the reason we've exempted the executive branch is because the executive branch is defending the lawsuit.  I think that reason would not apply to Congress.  So I don't, standing here right now, see any reason to exempt Congress, but I haven't thought about the status of Congress.

THE COURT:  Let's see.  Specifically in the conference policy it says you "should not exempt local, state or federal agencies, members of the media and attorneys."  I don't know.  I

don't even know if they ever used Pacer.  I have no way of
knowing.

    MR. GUPTA:  We can find out the answer to that question as
well and -- when we're filing these declarations, we can
supplement with what we're able to find out about that.

    THE COURT:  I don't know.  So, did you just offer a slight
amendment, federal -- It now reads "federal government agencies"?

    MR. GUPTA:  We can change that to "federal executive
branch agencies."  I think that would be more accurate.

    THE COURT:  You know, I'm not sure if that's completely
accurate.  There are all kinds of quasi governmental -- all
kinds, actually.  I don't -- I don't know if it's self-defining.

    MR. GUPTA:  Well, I think, if the problem that we're
trying to solve by excluding the agencies is to exclude folks
that would be represented by the Justice Department, I think the
executive branch agency language would solve that problem, but
I'm certainly open to suggestions from opposing counsel, and it's
the same concept, the same reason we exclude ourselves, the law
firms prosecuting the case.

    THE COURT:  Mr. Nebeker, any thoughts about it?  I mean,
there are all kinds of entities out there, hybrids and --

    MR. NEBEKER:  Well, I have to say I have the more
fundamental concern of whether there should be a class at all,
but I haven't focused or talked to the agency about whether or
not they feel strongly one way or the other about executive

branch or legislative branch agencies or other entities that have a federal hook, if you will.

THE COURT:  Right.  I don't know.  I don't know who uses Pacer as well.  Okay.  One last bit of housekeeping for the plaintiff.  You cite some -- the judiciary fiscal year 2014 congressional budget summary on page 7, and then you also cite the judiciary fiscal year 2016, congressional budget.  We are unable to find the appendices for the information that you quoted about the expenditures on public access.

MR. GUPTA:  We would be happy to provide that information in a declaration.  It was not easy to find these judiciary budgets.  We had to go through quite a lot of trouble to locate all of this information before filing the lawsuit.

THE COURT:  So you found an appendix?

MR. GUPTA:  We have that, yes.

THE COURT:  All right.  Then, if you would.  You quoted it in there, so just give us the backup; not the cites, the actual material.  Okay.  Go ahead.  I'll hear from you and then Mr. Nebeker, please.

MR. GUPTA:  Sure.  Unless you have specific questions, Your Honor, what I would like to do is just go down the list of the arguments, and I think we can put them into two buckets.

The first are arguments that the government raises that I think are at least implicitly covered by your order on the motion to dismiss.  And the first argument is an argument that, in the

government's view, we haven't shown numerosity because we haven't

shown enough folks who made an application to the Pacer Service

Center regarding a billing error, and I think, as your order

explains, that exhaustion requirement is inapplicable to this

case, and so I think the numerosity argument falls for that

reason.

The second argument is closely related.  It's about the

pendency of the *Fisher* case in the Court of Federal Claims, and I

won't belabor the point.  I think you've already explained why

that case is quite different.  I also could just give you an

update on the *Fisher* case.

THE COURT:  Yes.

MR. GUPTA:  On January 3rd, the government and the

plaintiff filed a joint status report in that case.  They've

indicated the proceedings have been stayed.  The parties are

discussing settlement, and that is only an individual case.  No

motion for class certification has been filed, so presumably

those discussions are about Mr. Fisher's $37 individual claim.

THE COURT:  Hmmm, breathtaking.

MR. GUPTA:  So now that brings us to, I think, the new

arguments in the government's motion.  And the first, and I'll

group them together, concern typicality and adequacy.  And the

government's argument -- and Mr. Nebeker can characterize it if I

mischaracterize it -- is that our plaintiffs have divergent

interests from the rest of the class because they are nonprofit

organizations.  And we think that that, first of all, rests on a

misunderstanding of the way the waiver policy works, as I've

already explained.  The named plaintiffs would not be eligible

for fee waivers, but I think all of that is really beside the

point, because the point is these folks are situated just like

everyone in the class.  They've paid a fee, and they claim that

the fees are excessive under the E-Government Act, and that claim

is the same for everyone else.  And at the end of the case, there

would have to be a pro rata distribution that would affect

everyone equally.  And, in fact, we think --

     THE COURT:  He makes some argument that you would be more

inclined because you're a nonprofit to try to get the fees to be

nothing.

     MR. GUPTA:  Right, and I think that that conflates maybe a

policy goal we have.  If we were in Congress, we would be asking

Congress, perhaps, to make the fees -- you know, make the system

free, that's our view, but we're operating here in a lawsuit

within the confines of the statute, and what the statute says, in

our view, is that you have to make the revenue, the total revenue

not exceed the cost of operating the system, and that's the only

claim we're seeking to vindicate.  And in that sense, everyone in

the class is similarly situated.

     THE COURT:  And the measure of damages under your theory

would be the same?  It would be the differential between what you

paid and what is reasonably necessary to operate the system under

your view.

MR. GUPTA:  That's exactly right, Your Honor, and it would be a pro rata calculation.  And I think that also takes care of the government's predominance argument, which is the next argument that they make that's new.  They suggest that liability, the liability calculation would have to be unique to each user -- this is at the top of page 20 of their opposition brief -- but I think, again, the inquiry is the same for everyone.  And really what this litigation is going to be about, I think, is determining two numbers.  We're going to have to determine what is the total revenue obtained from Pacer fees, and then the second number is, what is the real cost of operating the Pacer system.  And I imagine there will be a debate about what precisely the right answer to that question is, but the answer will be the same across the class.  And once we have those two numbers, we would then be able to subtract one from the other and at the end there would be a pro rata distribution.

So, essentially, I think it's quite a simple theory of the case, and that would be -- that's susceptible to class-wide proof.

THE COURT:  It's not so simple to figure out what the system costs since some people are getting access to the system for certain things free or some people as a class, like people who are indigent are getting access.  So some people are supporting other people.

MR. GUPTA:  I think all of that is irrelevant, Your Honor.
I think that how the government -- how the Administrative Office
chooses to structure its system, how it chooses to allocate the
revenue and the fees, that's up to them, and I think Congress --
the statute is designed that way.  The Administrative Office is
allowed to set reasonable fees, and the only limitation is that
those fees have to be fees that they charge to the extent
necessary to recoup the expenses of running the system.  So we
are not going to get into a debate with the government about how
they choose to give out exemptions, where they choose to make the
cutoff for free access.  All of that is entirely up to the
Administrative Office.  And what we're not trying to do at the
end of this case is to come up with some number that should be
the per page fee that the government should charge.  That's up to
the Administrative Office how they do that.  The only thing that
the statute is concerned with, and therefore the only thing that
we're concerned with, is what is the discrepancy between the
total amount of revenue being collected and the actual cost of
operating the system.

THE COURT:  In terms of the relief, I need to ask one
other question.  Do you think I have jurisdiction to enter a
declaratory judgment under the Little Tucker Act?

MR. GUPTA:  I think you do because that's not injunctive
or equitable relief.  And the District Court --

THE COURT:  What's not?

MR. GUPTA:  The declaration would not -- it would just be
a step along the way to determining that there's monetary relief
under the Tucker Act.  You wouldn't be ordering anyone as an
injunctive matter to do anything.

THE COURT:  Well, would it have any future operation?

MR. GUPTA:  It wouldn't -- it wouldn't bind anyone or
preclude them from doing anything in the way that equitable
relief would.  And I think we dealt with this issue in a case in
the Court of Federal Claims recently where we were representing a
class of federal bankruptcy judges where there is no question
that that was a Tucker Act case.  You couldn't seek equitable
relief beyond the money obtaining features of the Tucker Act, and
yet we were able to get declaratory relief and so --

THE COURT:  In what form?  When you say you got
declaratory relief, specifically what?

MR. GUPTA:  Well, a declaration that the government had
been violating the relevant statutes there.

THE COURT:  In the past.

MR. GUPTA:  In the past, that's right.  It's
retrospective, because I don't see how you can adjudicate
ultimately a Tucker Act case without making a conclusion about
whether the government has violated the statute, the relevant
statute, and that's really all we'd be asking.  We're not asking
for any equitable or prospective relief.  We're not able to here.
Otherwise -- we'd love to, but we just can't.

THE COURT:  Good.

MR. GUPTA:  Thank you.

THE COURT:  All right.  We don't need to decide relief right now.  We're ahead of ourselves.  Okay.  Mr. Nebeker.

MR. NEBEKER:  Just one point I would like to make that Mr. Myers pointed out to me, and that is that it's not the Administrative Office that gets the fees, it's actually the Judicial --

THE COURT:  -- Conference --

MR. NEBEKER:  -- Courts of the United States.

THE COURT:  It's the Judicial Courts of the United States or the Judicial Conference?

MR. NEBEKER:  Conference, excuse me, of the United States.  But let's get back to what more fundamentally we see --

THE COURT:  Well, clarify that a moment.  Has the Chief Justice delegated to the Administrative Office the responsibility to set the fees?

MR. NEBEKER:  My understanding is that it's the Administrative Office that proposes a fee schedule, and I believe the statute says they have to provide it to Congress -- is it 30 days in advance of it taking effect, I believe.  I don't believe they have to wait for an enactment of it, but I think that's how the statute reads.

THE COURT:  But you're not contesting the named defendant.  You're not suggesting we have the wrong defendant.

        MR. NEBEKER:  No, I'm not suggesting that, if the Court
had an appropriate case under the Tucker Act, the Little Tucker
Act.

        Judge, from our standpoint, the plaintiffs' effort to get
class action treatment in this case is misplaced.  For starters,
they, of course, have the burden, and it's an exception to the
usual rule to have a class action.  And there are some areas in
which it, at first blush, may look like class action
certification would be appropriate, but the problems we run into
here are, as plaintiffs' counsel recognized we had said, that the
typicality problem is one of the hardest.  Numerosity, perhaps.
I understand that the Court has decided the exhaustion question,
so that's, perhaps, out of the equation, but I still think you
have to look at this from a standpoint of the plaintiffs being,
in our view, only able to represent the interests of other
nonprofits who, like them, seek to ensure that court records are
freely available to the greatest extent possible.

        THE COURT:  They're just looking for the --

        MR. NEBEKER:  -- as they claim.

        THE COURT:  No, I don't think so, because, as was just
stated, they're looking for past damages, the differential
between what was charged and what they view as not being
necessary to run the system.  Now, what that mathematical
computation is -- but it has nothing to do with the future.  That
was part of my -- it has nothing to do with anything.  They're

saying we paid too much and we're like everybody else who paid. We're not like the people who didn't pay.

MR. NEBEKER:  Right.  Well, except, the problem we run into is there are people who have paid some but they didn't pay for, let's say, documents that are in excess of 30 pages long.

THE COURT:  Well, neither did they.

MR. NEBEKER:  And what I'm suggesting is that if you're going to recalculate what the proper amount is so that you bring the numbers within plaintiff's definition of what is appropriate, required for the services provided, then you have to go back and find out what the service was that was provided.

So they got the -- they got -- of a hundred page document, they got 70 pages free of charge because the figure that was set, that was established for those pages, the per page figure was enough that they could keep the system running and still not have to cover those.

But if one of the plaintiffs tended to download large documents, then they haven't been damaged because they haven't been charged what's in excess of what's allowed under the statute because the services that they were provided were a hundred pages worth of services.  So, they haven't been injured.

THE COURT:  His argument is a little simpler than that. He's just saying the fees were excessive, and the fees are excessive whether or not you downloaded a million pagers and someone else only did 30; you're still paying for the 30 -- you

pay for 30, he pays for 30, and they're saying that's not what it costs to operate the system.  Anyway, I think it goes to the merits.  I don't see that there's an inherent conflict among the class.  All he's looking for or is saying is whoever paid, paid too much.

MR. NEBEKER:  Another problem --

THE COURT:  And how you calculate that is not ripe before us at the moment, unless in some way it means that these people can't represent people who are -- I don't see how they can't represent people who did a thousand pages for free --

MR. NEBEKER:  Well, the difficulty, Your Honor --

THE COURT:  -- if they paid.

MR. NEBEKER:  Plaintiffs are suggesting that you are limited to charging for the actual service provided to the individual that's being billed for it on a given date.  They're ignoring the fact that the fund into which this money goes is a fund that's designed to allow the Administrative Office of the U.S. Courts to establish a plan going forward to improve or to keep the software and hardware running properly, and so you're not just paying for what it cost to get those -- that ten-page document out of the machine, you have to pay for more than just that.

THE COURT:  Well, that's sort of a merits argument on how you do the calculation, but I don't see any inherent conflict among the class members.

MR. NEBEKER:  One of the problems that you have is that these particular class members are trying to get the information for their constituents for reduced rates or for free.  And unlike commercial users who are just trying to get the lowest per page amount and they don't want to pay for other people's free access to the documents, to the information, the plaintiffs are not going to be typical of that set or subset of that --

THE COURT:  You keep on thinking they want it free. They're saying they're not asking for anything in the past, and they're not looking to subsidize people, they just want the difference.  You have to take them at their word at this point in time.  That's what they've alleged.

MR. NEBEKER:  Well, it's their burden to establish that they're typical of all Pacer users, and I don't think they have done that, because I think most Pacer users would be interested in having just the lowest amount.  I don't want to get free copies for anyone else, I just want my bill to be the smallest you can make it.  So I don't think in that respect they can fairly represent an entire class.

THE COURT:  What gives you this idea that they want something else?

MR. NEBEKER:  They allege it in their motion.  They said in their motion that "plaintiffs seek to ensure court records are freely available to the greatest extent possible."  I have that on pages 3 and 4.

THE COURT:  Aren't they just quoting the statute?

MR. NEBEKER:  I -- I believe that that comes from their motion.  That's what they're after.

THE COURT:  I think it also comes from the E-Government Act.  Okay.  I understand your argument.  Go ahead.

MR. NEBEKER:  So, the short of it is -- oh.  In addition, Judge, Rule 23(a)(4) talks about whether a class action is the appropriate method for resolving the matter.  And among the things that you want to avoid are the antagonistic or conflicting interests that could result from having different courts deciding the issue at the same time.  That's why we viewed *Fisher* as having some bearing here, because if this is a zero sum gain, to find out what the proper amount is that you can expend depends upon how much, for instance, Mr. Fisher in his class --

THE COURT:  It's not a class, he just told me.

MR. NEBEKER:  If it's certified.

THE COURT:  Wait, wait.  There's no allegation of a class in *Fisher*.

MR. NEBEKER:  I believe *Fisher* had allegations, but I don't think they've had a motion filed, at least they hadn't as of last time I looked.

THE COURT:  Well, I heard it was one man with $37, is what I heard.

MR. GUPTA:  Our view is if there were going to be two, it would be a mistake.  If that's decided, then the funds -- you're

going to reduce the funds available for running the system by
whatever Mr. Fisher's able to establish is the difference between
what you can charge for a Pacer printout of 850 words or more or
something larger.  That's going to affect the numbers that we
have to come up with.  So our view is that that, if there's going
to be a class, it should be one, and we believe that one was
filed first.

THE COURT:  Yeah, but I don't know that *Fisher* would get
back anything out of this one, but he may be within the 30 pages,
for all we know.

MR. NEBEKER:  Well, our view, Judge, is that plaintiffs
didn't make out the requirements they have to for class
certification.  They haven't made out typicality.  I won't argue
the numerosity with respect to the exhaustion of administrative
remedies because I think Your Honor has already resolved that.
We would respectfully reserve our right to dispute that, to
challenge that, so I'm not abandoning it, but I won't waste time
in the oral argument to discuss it further, unless the Court has
questions about it.

THE COURT:  You agree, though, don't you, that if there
was some class out there who claimed that it should be free, they
could make a -- they could organize their own class action that
would be a different kind of case than what I have here.  You're
sort of insinuating that they're here to obtain free services, if
I'm reading that excerpt.

MR. NEBEKER:  If there is a class out there that believes that they have been charged fees but that they should have gotten the information for free --

THE COURT:  That's a different issue.

MR. NEBEKER:  It's going to be -- but they're going to be stuck with the judgment this Court enters with respect to how much they should have been charged, because they have -- they would fit within the definition of plaintiff's class.

THE COURT:  Right.  That's right.

MR. NEBEKER:  So that issue will have been decided.

THE COURT:  But it's clear under the law they were to be charged.  I mean, maybe somebody could claim that the exemption policy wasn't, you know, broad enough, and that's another -- that's a different issue, and that's not what we have before us. We have a class of people who say I paid too much.  That's it. But okay.

Assuming for a moment that there is a class certification, what happens next in this case?

MR. NEBEKER:  That's an excellent question, Judge.  We're going to have to sit down and discuss what areas of discovery would be necessary, if any, before summary judgment might be appropriate.  I'm getting to the merits now of the case.  In essence, for the plaintiffs to recover, what they have to establish is that some rather cryptic language in an amendment to the provision that allows for the collection of the fees or that

calls for the collection of the fees has *sub silentio* revoked or rescinded explicit language in another statute that set up what it is that the fund where these fees go can be spent on.

I think that's going to largely be a legal issue. I think it's fair to -- if the Court -- whatever action the Court takes on the motion for class certification, I think it's fair that the parties or the attorneys should sit down and address whether or not we believe that discovery would be necessary before we address that legal question. I would like to think that it's --

THE COURT: You're talking about the amendment that was -- what statutes am I looking at?

MR. NEBEKER: So, in the note that the -- to Section 1913, the one that includes the public law upon which plaintiffs rely, that includes the language, "The Judicial Conference may, only to the extent necessary, prescribe reasonable fees." And plaintiffs view the change from "shall," I believe it was, to --

THE COURT: You mean the prior, before it was amended.

MR. NEBEKER: Right.

THE COURT: Those are the two statutes.

MR. NEBEKER: Their language -- their reading of that language is that, Oh, well, the statute that set up the fund into which this money goes has now been revoked insofar as it laid out the things that the fund could be spent on.

THE COURT: What did the prior --

MR. NEBEKER: Let me grab that, if I may, Your Honor. 28

U.S.C. 612, the Judiciary Information Technology Fund, and it established the fund, and it set forth what monies in the fund can be spent on.  And plaintiffs' theory is that this explicit language in Section 612 has been superseded by the rather cryptic modification to the statute that plaintiffs have relied on that says, "only to the extent necessary."

THE COURT:  Okay.  Well, that is for another day.  At some point after I make my decision, one has to, perhaps, think about how to organize things.  Okay.  And in your mind, you can't have a transaction over $10,000 --

MR. NEBEKER:  -- that's correct --

THE COURT:  -- in a single transaction.  I mean, there's no jurisdictional issues here.

MR. NEBEKER:  Well, I'm not aware of any instances when on a given month plaintiff was charged more than $10,000.  If I become aware of that, that claim would --

THE COURT:  We don't even know that -- it's not cumulative.  It would have to be a one time -- one shot -- I don't know whether you could -- it's a lot of pages.

MR. NEBEKER:  Plaintiffs have come up with some cases that said that.  I was not able to find any that challenged that, although I haven't looked since we did the earlier briefing in the case, Your Honor.

However Your Honor decides to resolve the class action issue, the attorneys should discuss whether or not and how

difficult the desired discovery would be, because I think another round of motions is necessary on legal grounds.

THE COURT:  We'll see.  Let's hear from Mr. Gupta on that question, too.

MR. GUPTA:  Thank you, Your Honor.  Your Honor asked what happens next in the litigation, and I do want to remind us all that there is a scheduling order in effect -- it's Document 19 -- that was issued on August 16th, and it addresses some of this. We -- obviously --

THE COURT:  Were we here then?  Was this pursuant to a status conference?

MR. GUPTA:  No.  This was a -- we entered a stipulated request for a scheduling order.

THE COURT:  Oh, okay.

MR. GUPTA:  Obviously this can be revised, but I thought it would be helpful as a starting point.  Paragraph 5 of that order indicates that the parties should attempt to agree on the form and manner of notice and confer, and that notice should be provided to class members within 90 days.

We've already prepared draft notice documents which we'll be sharing with the government and we think will be pretty straightforward.

The next paragraph, paragraph 6 of that order says, "during the notice period, the parties will enter into a stipulation and/or permit limited document discovery in an effort

to establish what portion of Pacer fee revenue during the class
period was in excess of the amount necessary to fund Pacer
services."  And we think that makes a lot of sense.  We can
exchange documents that really go to that core question and,
perhaps, narrow the scope of the litigation.

And one other housekeeping thing.  We do have some
homework that we owe you from today, the declarations, and I just
wanted to see when Your Honor would like that.  And we propose
next Thursday, unless you would like it sooner.

THE COURT:  Sooner.

MR. GUPTA:  Okay.

THE COURT:  I propose.  What's the -- what I really want
is the fees paid and the reason why you haven't sought any
exemptions.  I'm less concerned -- what was the other things you
talked about?

MR. GUPTA:  The financials for all three organizations in
total, and then you asked for the appendices to those budget
documents, which we could easily get you.

THE COURT:  It would be much nicer to have those by
Friday.

MR. GUPTA:  We can do that.

THE COURT:  So the supplemental -- and if you have
anything to respond to those, Mr. Nebeker -- I'm assuming they
will be rather factual -- file it by Tuesday, but Tuesday by noon
if you have any reply to them.  I mean, these are just questions

that I need.

And you said that -- I'm sorry, after the 90-day notice, what is provided for in that stipulation?

MR. GUPTA:  That we would have limited document discovery in an effort to establish basically what portion of the fee revenue is excess.

THE COURT:  And what do you say?  He says that there's an initial legal issue that has to be resolved, and it could be resolved strictly on paper.

MR. GUPTA:  Well, the government is welcome to file a motion to dismiss on that question -- they've already filed one -- but they haven't addressed this --

THE COURT:  I don't like sequential motions on and on and on, so don't say they're welcome to.

MR. GUPTA:  Okay.

THE COURT:  But in terms of that issue, do you see it as being dispositive in any way?

MR. GUPTA:  I don't, Your Honor.  And, in fact, this is addressed in our papers in the complaint and the class cert motion where we lay out the history of this.  This is part of the argument that has already been made on behalf of the Administrative Office and the exchange of letters with Senator Lieberman and with others, so this isn't a surprise.  It's actually laid out in our papers already.

THE COURT:  Okay.  All right.  Anything further,

Mr. Nebeker?

MR. NEBEKER:  My only thinking, Judge, is that plaintiffs talk about limited exchange of written discovery.  I think what we would want to find out is just exactly whether we're talking about, do you want some budget reports, or do you want, you know, to download a database of every penny spent.

THE COURT:  Right.  Well, I think that is worthy of your consultation.  I don't know what he needs either or wants.  So I think that the facts look to me like they are probably not terribly contested.  The exact numbers, I don't know, and how it works out per user, I have no idea either, but -- all right.

I expect we'll get this information by Friday.  If you have anything further, noon on Tuesday, and you can file it on Pacer.  Is there anything about it that -- I'm sure it's not confidential.

MR. GUPTA:  No.

THE COURT:  Okay.  I don't have anything further.  If Mr. Nebeker doesn't, I think we'll adjourn.

MR. NEBEKER:  Nothing further, Your Honor.

THE COURT:  Okay.  Thanks very much.

(Proceedings adjourned at 3:11 p.m.)

# C E R T I F I C A T E

I, Scott L. Wallace, RDR-CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Scott L. Wallace
---------------------------          ----------------
   **Scott L. Wallace, RDR, CRR**          **Date**
      **Official Court Reporter**