# EXHIBIT  I

RECEIVED
CH   DATE 3/31



# JUDICIAL CONFERENCE OF THE UNITED STATES

## WASHINGTON, D.C. 20544

THE CHIEF JUSTICE
OF THE UNITED STATES
*Presiding*

JAMES C. DUFF
*Secretary*

March 26, 2009

Honorable Joseph I. Lieberman
Chairman
Committee on Homeland Security
  and Governmental Affairs
United States Senate
Washington, D.C. 20510

Dear Mr. Chairman:

We are responding on behalf of the Judicial Conference and its Rules Committees to your letter to Judge Lee H. Rosenthal dated February 27, 2009. Your letter raises two questions about the Judiciary's compliance with the E-Government Act of 2002: the first involves the fees charged for Internet-based access to court records, to which Director Duff responds; and the second relates to the protection of private information within these court records, to which Judge Rosenthal responds. The Judiciary welcomes the opportunity to address these issues.

<u>User Fees Necessary to Support PACER</u>

You inquired whether the Judiciary's Public Access to Court Electronic Records (PACER) system complies with a provision of the E-Government Act that contemplates a fee structure in which electronic court information "is freely available to the greatest extent possible." We assure you that the Judiciary is charging PACER fees only to the extent necessary. As described below, many services and documents are provided to the public for free, and charges that are imposed are the minimum possible only to recover costs. As such, we believe we are meeting the E-Government Act's requirements to promote public access to federal court documents while recognizing that such access cannot be entirely free of charge.

There are high costs to providing the PACER service. This fact raises an important question of who should pay for the costs — taxpayers or users. Congress initially answered the question in our 1991 appropriations act when it required that improved electronic access to court information be funded through reasonable fees paid by the users of the information, and not through taxes paid by the general public. That requirement is the basis for the current Electronic Public Access (EPA) program, and for the fees charged for access to federal court documents through the PACER system.

1

Honorable Joseph I. Lieberman
Page 2

The PACER user population includes lawyers, *pro se* filers, government agencies, trustees, bulk collectors, researchers, educational institutions, commercial enterprises, financial institutions, the media, and the general public. The fees are the same for all users of the system. The program does not, however, provide free access to every individual, law firm, or corporation (most notably data resellers and credit reporting firms) that is interested in obtaining vast amounts of court data at no cost.

As noted above, Congress mandated 18 years ago that the Judiciary charge user fees for electronic access to court files as a way to pay for this service. Since that time, various legislative directives have amended the mandate, mostly to expand the permissible use of the fee revenue to pay for other services related to the electronic dissemination of court information, such as the Case Management/Electronic Case Files (CM/ECF) system[1] and an Electronic Bankruptcy Noticing (EBN) system.[2] Your letter correctly notes that the E-Government Act shifted emphasis by providing that fees "may," rather than "shall," be collected, and "only to the extent necessary." It did not, however, alter Congress's policy that the EPA program recoup the cost of services provided through a reasonable fee. Indeed, the Conference Report on the Judiciary Appropriations Act of 2004, adopted two years after the E-Government Act, included the following statement: "[t]he Committee expects the fee for the Electronic Public Access program to provide for Case Management/Electronic Case Files system enhancements and operational costs."[3] Consistent with that directive, the Judicial Conference increased the EPA fee by one cent per page accessed.

The Judiciary takes its responsibility to establish the EPA fee very seriously. Since well before the E-Government Act, it has been the Judicial Conference's policy to set the electronic public access fee to be commensurate with the costs of providing and enhancing services related to public access. In fact, prior to the one-cent per-page increase in 2004, the Conference had a history of lowering the fee. As a result, PACER is a very economical service:

- The charge for accessing filings is just eight cents per page (as opposed to the fees for using commercial services such as Westlaw or Lexis, which are much more);

---

[1]   CM/ECF, the primary source of electronic information on PACER, was developed and is maintained with EPA fees. This system provides for electronic filing of all documents in all 94 district courts and all 90 bankruptcy courts, and currently is being implemented in the courts of appeals.

[2]   The EBN system is funded in its entirety by EPA fee revenue. It provides access to bankruptcy case information to parties listed in the case by eliminating the production and mailing of traditional paper notices and associated postage costs, while speeding public service. Available options include Internet e-mail and fax services, and Electronic Data Interchange for large volume notice recipients. Over 20 million bankruptcy notices were transmitted through the EBN program in fiscal year 2008.

[3]   *See* H.R. Rpt. No. 108-401, 108th Cong., 1st Sess., at 614 (adopting the language of H.R. Rpt. No. 108-221, 108th Cong., 1st Sess., at 116).

Honorable Joseph I. Lieberman
Page 3

- There is a $2.40 maximum charge for any single document, no matter its length; and

- At federal courthouses, public access terminals provide free PACER access to view filings in that court, as well as economical printouts (priced at $.10 per page).

In addition, contrary to the notion that little has been done to make court records freely available, the Electronic Public Access (EPA) program *does* provide a significant amount of federal court information to the public for free.  For example, through PACER:

- Free access to all judicial opinions is provided;

- Parties to a court case receive a free copy of filings in the case;

- If an individual account does not reach $10 annually (which translates into access to at least 125 pages), no fee is charged at all – in 2008, there were over 145,000 accounts in this status; and

- Approximately 20 percent of all PACER usage is performed by users who are exempt from any charge, including indigents, academic researchers, CJA attorneys, and *pro bono* attorneys.[4]

Nonetheless, the fact remains that the EPA program does require funding, and Congress has never provided appropriations for its support.  If the users, the largest of which are finance and information management corporations, are not charged for the services they receive, the Judiciary cannot maintain PACER or other public access facilities unless Congress annually provides taxpayer-funded appropriations to support the program.

Additionally, a misconception about PACER revenues needs clarification.  There is *no* $150 million PACER surplus; the figure referenced in your correspondence was a FY 2006 balance of $146.6 million in the much larger Judiciary Information Technology Fund (JITF). The JITF finances the IT requirements of the entire Judiciary and is comprised primarily of "no-year" appropriated funds which are expected to be carried forward each year.  While fee

---

[4]   In addition to these examples, the EPA program provides free access to court case information through VCIS (Voice Case Information System), an automated voice response system that provides a limited amount of bankruptcy case information directly from the court's database in response to touch-tone telephone inquiries.  The Judicial Conference also recently attempted to expand free PACER access through a pilot project that provided PACER terminals in Federal Depository Libraries.  The purpose of the pilot was to provide access to individuals who would be unlikely to go to the courthouse, have ready access to the Internet, or establish a PACER account.  Unfortunately, after only 11 months, the pilot had to be suspended pending an evaluation and an investigation of potentially inappropriate use.

Honorable Joseph I. Lieberman
Page 4

collections from the EPA program are also deposited into the JITF, they are used only to fund electronic public access initiatives and account for only a small portion of its balance.[5]

Finally, the Judiciary is making a serious effort to implement the requirements of the E-Government Act. Section 205(d) directed the Judicial Conference to "explore the feasibility of technology to post online dockets with links allowing all filings, decisions and rulings in each case to be obtained from the docket sheet of that case." In reality, the Judiciary has done much more than "explore" such technology — *we have designed and now implemented in all courts a system that provides nearly one million PACER users with access to over 250 million case file documents at a reasonable fee, and frequently free of any charge at all.* The EPA program was developed as an alternative to going to the courthouse during business hours and making copies at the cost of 50 cents a page.

In contrast, very few state courts have electronic access systems, and none provides as much information as PACER. Many state courts charge several dollars for a single records search. We receive frequent inquiries from state court officials and court administrators from other countries about PACER, which is viewed as an electronic public access model. Taxpayers, who incur none of the expenses associated with PACER, and users of the system, who enjoy rapid access to a vast amount of docket information, are well served by PACER. The PACER system is an on-going success story and the Judiciary remains committed to providing a high level of electronic public access to court information.

<u>Private Information in Electronic Court Records</u>

The Judicial Conference and its Rules Committees share your commitment to protecting private information in court filings from public access. Over a decade ago, before electronic filing was adopted in the federal district and bankruptcy courts and well before enactment of the E-Government Act of 2002, the Conference began developing a policy to protect private information in electronic case files while ensuring Internet-based public access to those files. That policy became effective in September 2001. Changes to the Federal Appellate, Bankruptcy, Civil, and Criminal Rules, largely incorporating the privacy policy and addressing other rules' aspects of protecting personal identifiers and other public information from remote electronic public access, became effective in December 2007, under the E-Government Act and pursuant to the Rules Enabling Act process.[6]

The Judicial Conference has continued to examine how the privacy policy and rules are working in practice. Two Conference committees are reviewing the rules, the policy, and their implementation. The Administrative Office of the United States Courts has also continued

---

[5]  The carryover JITF balances (including the portion attributable to EPA fee collections) have been substantially reduced since FY 2006 in order to meet the Judiciary's IT requirements.

[6]  Fed. R. App. P. 25(a)(5); Fed. R. Bankr. P. 9037; Fed. R. Civ. P. 5.2; and Fed. R. Crim. P. 49.1.

Honorable Joseph I. Lieberman
Page 5

to reinforce effective implementation.  The Federal Judiciary has been in the forefront of protecting privacy interests while ensuring public access to electronically filed information.

In late 1999, a few federal courts served as pilot projects to test electronic filing.  In 2009, the Judiciary's CM/ECF system has become fully operational in 94 district courts and 93 bankruptcy courts, and it will soon become operational in all 13 courts of appeals.  As courts and litigants have acquired experience with nationwide electronic filing, new issues have emerged on how to balance privacy interests with ensuring public access to court filings.

The Judiciary-wide privacy policy was adopted in September 2001 after years of study, committee meetings, and public hearings.  The policy requires that court filings must be available electronically to the same extent that they are available at the courthouse, provided that certain personal identifiers are redacted from those filings by the attorney or the party making the filing. The personal identifiers that must be redacted include the first five digits of a social-security number, financial account numbers, the name of a minor, the date of a person's birth, and the home address in a criminal case.  These redaction requirements were incorporated into the Federal Rules amendments promulgated in December 2007 after the public notice and comment period prescribed under the Rules Enabling Act.  These rules, which also address other privacy protection issues, meet the requirements of the E-Government Act.

The 2001 Conference policy and the 2007 privacy rules put the responsibility for redacting personal identifiers in court filings on the litigants and lawyers who generate and file the documents.  The litigants and lawyers are in the best position to know if such information is in the filings and, if so, where.  Making litigants and lawyers responsible to redact such information has the added benefit of restraining them from including such information in the first place.  Moreover, requiring court staff unilaterally to modify pleadings, briefs, transcripts, or other documents that are filed in court was seen to be impractical and potentially compromising the neutral role the court must play.  For these reasons, the rules clearly impose the redaction responsibility on the filing party.  The Committee Notes accompanying the rules state:  "The clerk is not required to review documents filed with the court for compliance with this rule.  The responsibility to redact filings rests with counsel and the party or non-party making the filing."[7]  The courts have made great efforts to ensure that filers are fully aware of their responsibility to redact personal identifiers.  Those efforts continue.

The reported instances of personal identifier information contained in court filings is disturbing and must be addressed.  The Rules Committees' Privacy Subcommittee, which developed and proposed the 2007 privacy rules, is charged with the task of examining how the rules have worked in practice, what issues have emerged since they took effect on December 1, 2007, and why personal identifier information continues to appear in some court filings.  The

---

[7]     Fed. R. Civ. P. 5.2 (Committee Note).

Honorable Joseph I. Lieberman
Page 6

Privacy Subcommittee, which includes representatives from the Advisory Rules Committees as well as the Court Administration and Case Management Committee, will consider whether the federal privacy rules or the Judicial Conference privacy policy should be amended and how to make implementation more effective.  The subcommittee will review empirical data; the experiences of lawyers, court staff, and judges with electronic court filings; the software programs developed by some district and bankruptcy courts to assist in redacting personal identifier information; and other steps taken by different courts to increase compliance with the privacy rules.

While this work is going on, the Judiciary is taking immediate steps to address the redaction problem.  Court personnel have been trained in administering the privacy policy and rules; additional training is taking place.  On February 23, 2009, the Administrative Office issued a written reminder to all Clerks of Court about the importance of having personal identifiers redacted from documents before they are filed and of the need to remind filers of their redaction obligations.  Court clerks were directed to use a variety of court communications, such as newsletters, listservs, continuing legal education programs, and notifications on websites administered directly by the courts, to reach as many filers as possible, as effectively as possible.  Plans are underway to modify the national CM/ECF system to include an additional notice reminding filers of their redaction obligation.  In addition, all the courts have been asked to provide information on their experience with the privacy policy and rules.  Early responses have included some promising approaches that the Privacy Subcommittee will consider for possible national adoption.

The Privacy Subcommittee does not underestimate the difficulty or complexity of the problems.  Court filings can be voluminous.  Some cases involve hundreds or even thousands of pages of administrative or state-court paper records that cannot be electronically searched.  Redacting personal identifier information in certain criminal proceedings may interfere with legitimate law enforcement prosecutions.  Erroneously redacting information can affect the integrity of a court record.  The propriety of court staff changing papers filed in private civil litigation is an ongoing concern.  Internet access to court filings present other privacy and security issues besides the redaction of the personal identifiers specified in the 2007 rules, and these issues need to be studied as well.

The resolution of these privacy issues will involve important policy decisions that require careful and comprehensive consideration and input from the bench, bar, and public.  The Judicial Conference and its Rules Committees look forward to continuing this dialogue with you.

*   *   *

Honorable Joseph I. Lieberman
Page 7

If we may be of assistance to you in either of these areas, or on any other matter, please do not hesitate to contact the Office of Legislative Affairs in the Administrative Office at 202-502-1700.

Sincerely,

Lee H. Rosenthal
Chair, Standing Committee on
Rules of Practice and Procedure

James C. Duff
Secretary, Judicial Conference
of the United States