# EXHIBIT J

## Electronic Public Access Program Summary
December 2012

**Program Overview**

The Electronic Public Access program provides public access to court information through electronic means in accordance with federal statutes, Judiciary policies, and user needs.  The Internet-based PACER (Public Access to Court Electronic Records) service provides courts, litigants, and the public with access to dockets, case reports, and over 500 million documents filed in federal courts through the Case Management and Electronic Case Files (CM/ECF) system.  In other words, PACER is a portal to CM/ECF, which in turn, is integral to public access.

A PACER account is obtained by registering with the PACER Service Center, the Judiciary's centralized registration, user support and billing center.  Registration information can be submitted via fax or the Internet, and there is no registration fee.  At present, there are more than 1.4 million user accounts, with approximately 13,000 new accounts added each month.  In fiscal year 2012 alone, PACER processed over 500 million requests for information.

As mandated by Congress, the public access program is funded entirely through user fees set by the Judicial Conference of the United States.  The fees are published in the Electronic Public Access Fee Schedule, available on www.uscourts.gov and www.pacer.gov.  Funds generated by PACER are used to pay the entire cost of the Judiciary's public access program, including telecommunications, replication, and archiving expenses, the Case Management/Electronic Case Files system, electronic bankruptcy noticing, Violent Crime Control Act Victim Notification, on-line juror services, and courtroom technology.

**Court Websites**

Each federal court uses its website, funded by fee revenue, to provide the public with access to information well beyond that which is required by the E-Government Act of 2002, such as court locations, contact information, local rules, standing or general orders, docket information, written opinions, and documents filed electronically.  The courts are also using their websites to disclose information about judges' attendance at privately-funded seminars, orders issued on judicial conduct and disability complaints, and digital audio recordings of oral arguments heard by the court.  Additionally, court websites provide general information concerning court operations, filing instructions, courthouse accessibility, interpreter services, job opportunities, jury information, and public announcements.  Court websites are used to interact directly with the public through PACER, CM/ECF, on-line jury questionnaires, *pro se* filing tools, forms, and court calendars.

**CM/ECF and the Next Generation**

Implementation of the federal Judiciary's Case Management/Electronic Case Files system (CM/ECF) began in 2001 in the bankruptcy courts after several years of pilot programs in bankruptcy and district courts.  CM/ECF not only replaced the courts' old electronic docketing and case management systems, but it also enabled courts to maintain case file documents in electronic format and to accept filings from court practitioners via the Internet.  The CM/ECF system is now in use in all of the federal appellate, district, and bankruptcy courts, the Court of International Trade, and the Court of Federal Claims. Nearly 43 million cases are on CM/ECF, and more than 600,000 attorneys and others have filed documents over the Internet.

Attorneys are able to file documents directly with any federal court over the Internet. There are no added fees for filing documents using CM/ECF.  The CM/ECF system uses standard office computer hardware, an Internet connection and a browser, and accepts documents in portable document format (PDF).  The system is easy to use – filers prepare a document using conventional word processing software, then save it as a PDF file. After logging onto the court's web site with a court-issued CM/ECF password, and acknowledging that the filing complies with the redaction rules, the filer enters basic information relating to the case and document being filed, attaches the document, and submits it to the court.  A notice verifying court receipt of the filing is generated automatically and immediately.  All electronically filing parties[1] in the case automatically receive immediate e-mail notification of the filing.

Work on the Next Generation of CM/ECF (Next Gen) is well underway.  The project is currently transitioning from its first phase – requirements definition – to its second phase – design and development.  As part of the requirements definition phase, the Judiciary gathered extensive information from stakeholders both inside and outside the court system.  The NextGen project included an Additional Stakeholders Functional Requirements Group (ASFRG) that focused on how the federal courts interact with others in the legal system.  The group's 24 members included representatives from the Judiciary, the Department of Justice, the American Bar Association, the Internal Revenue Service, the Association of American Law Schools, and the National Association of Bankruptcy Trustees.

The group reached out to more than 60 constituent groups in a variety of ways, such as focus group meetings, interviews, conferences, surveys, and elicitation sessions at the courts and the Administrative Office.  In all, more than 7,000 individual stakeholders provided input, most of which focused on the same core requirements sought in NextGen.

---

[1] Those parties who are not electronic filers receive notification via U.S. mail.

These core requirements include single sign-on, enhanced search capabilities, batch-filing features, and customizable reports.  Nearly 500 of the ASFRG's requirements have been adopted and incorporated into the functional requirements documents being used to design NextGen.  The final report of the ASFRG is available to the public on www.uscourts.gov.

The first releases of the Next Generation of CM/ECF are expected in 2014 and 2015, and the requirements prioritized for those releases are associated with time-saving and/or cost-saving functionality.  The Next Generation of CM/ECF will also enable additional improvements to the PACER service, including an updated user interface.

**Access to Court Records**
Registered PACER account holders can use a court's website or the PACER Case Locator to access court documents.  The PACER Case Locator is a tool for locating court records that reside in U.S. district, bankruptcy, and appellate court CM/ECF databases across the country.   Usage of the Case Locator continues to grow, with over 200,000 searches daily. Links to all courts and the PACER case locator are located at www.pacer.gov.  Each court maintains its own CM/ECF database with case information.  As a result, querying information from each court is comparable; however, the format and content from each court may differ slightly.

The Judiciary continues to seek to improve electronic public access to its records, and a number of initiatives have been put into place to broaden public access, including:

> *Public Access Terminals* – Every courthouse has public access terminals in the clerk's office to provide access to PACER[2] and other services, such as credit counseling.

> *Digital Audio* – At its March 2010 meeting, the Judicial Conference endorsed a proposal from the Committee on Court Administration and Case Management to allow judges, who use digital audio recording as the official means of taking the record, to provide, at their discretion, access to digital audio recordings of court proceedings via PACER.  The digital audio initiative, also known as CourtSpeak, continues to be successful, both in terms of public and court interest.  Presently, nineteen bankruptcy courts and two district courts have implemented digital audio, and an additional 23 bankruptcy courts, five district courts, and the Court of

---

[2] Viewing court records at a public access terminal is free.  Printing copies of documents from a public access terminal is $0.10 per page.

Federal Claims have begun implementation. The fee for an audio file is $2.40, regardless of the length of the recording.

*Training and Education Program* – In September 2010, the Judicial Conference approved a recommendation from the Committee on Court Administration and Case Management to establish a program involving the Government Printing Office (GPO), the American Association of Law Libraries (AALL), and the Administrative Office, that would provide training and education to the public about the PACER service, and would exempt from billing the first $50 of quarterly usage by a library participating in the program. The GPO and the AALL worked with the Administrative Office to develop three levels of training classes: training for trainers, training for library staff, and training for the public. There are currently 12 libraries participating in the program. In some instances, libraries are providing on-the-spot individual training. All training classes include instructions on *How to Create a PACER Account* and *How to Monitor PACER Usage*. Although some patrons expressed disappointment that they were not being allowed to use the library's PACER account, but instead had to use their own accounts, they did report being satisfied with the instructions provided. The AALL and the GPO continue to publicize the program to their communities.

*PACER Training Application* – The training site dcecf.psc.uscourts.gov enables the public to learn how to use PACER without registering or incurring any fees. In March 2012, the Administrative Office also launched video tutorials to assist the public in learning how to use PACER.

*RSS* – In addition to PACER access, which allows users to "pull" information from the courts, approximately 50 district courts and 80 bankruptcy courts are using a common, free internet tool, RSS, to "push" notification of docket activity to users who subscribe to their RSS feeds, much like a Congressional committee might notify its RSS subscribers of press releases, hearings, or markups.

*Pro Se Bankruptcy Pathfinder* – In August 2010, the CM/ECF Subcommittee of the Committee on Court Administration and Case Management approved a proposal to undertake a bankruptcy *pro se* pathfinder initiative, which is designed to assist *pro se* litigants in preparing the filings required at case opening, to reduce the time required to process *pro se* bankruptcy filings, to increase the quality of the data collected, and to employ new development tools today, which are selected for future federal Judiciary use. Three bankruptcy courts currently serve as beta courts: Central District of California, District of New Jersey, and District of New Mexico. It is anticipated that this software will be available for use by filers later this year.

*Opinion Initiative with the Government Printing Office* – In September 2012, the Judicial Conference of the United States approved national implementation of the program to provide access to court opinions via the Government Printing Office's Federal Digital System (FDSys) and agreed to encourage all courts, at the discretion of the chief judge, to participate in the program. Twenty-nine pilot courts are live, with over 600,000 individual court opinions available on FDSys. This has proved to be extremely popular with the public. Federal court opinions are one of the most utilized collections on FDsys, which includes the Federal Register and Congressional bills and reports. Access to FDSys is available free of charge via the Internet at www.gpo.gov. Registration is not required.

## PACER Users

PACER has a diverse user population, including: lawyers; *pro se* filers; government agencies; trustees; bulk collectors; researchers; educational institutions; commercial enterprises; financial institutions; the media; and the general public. The chart below is a breakdown of the PACER user population. The majority of "other" users are background investigators.



The largest user is the Department of Justice. Virtually all of the other high volume users are major commercial enterprises or financial institutions that collect massive amounts of data, typically for aggregation and resale.

**Electronic Public Access Service Assessment**

A comprehensive assessment of PACER services was completed in May 2010.  The assessment provided insight into who uses PACER, areas that provide the highest level of satisfaction for those users, and areas that could be improved.  The initial assessment was also used to inform the work of the Additional Stakeholders Functional Requirements Group (ASFRG) as it began identifying requirements for  the Next Generation of CM/ECF.  An on-line satisfaction survey was made available to all 325,000 active PACER users in late 2009.  User types giving the highest overall satisfaction scores to PACER included creditors and service providers to the legal sector, followed by commercial businesses. Users in the legal sector and litigants—the two largest groups of PACER users—are also among the most satisfied.  Users at educational and research institutions gave the lowest overall satisfaction rating.  These are small groups of less-frequent users. The survey indicated that satisfaction rates climb steadily as frequency of use increases.

In addition to assessing satisfaction with the on-line component of PACER, users were asked to rate help-desk services provided by the PACER Service Center.  Satisfaction was very high; over 95 percent of respondents who contacted the center during the study period indicated they are "satisfied" or "very satisfied" overall.  However, about one-third of PACER users were not aware that the PACER Service Center is available to provide help with PACER.  The assessment also revealed that 75 percent of users were satisfied with the value for the money they paid for PACER access, 15 percent were neutral, and 10 percent were dissatisfied.

As a result of the assessment, a number of short- and mid-term activities were implemented to improve user satisfaction with electronic public access services.  These included:

• creating a new PACER Case Locator with expanded search capabilities to replace the U.S. Party/Case Index;
• redesigning the pacer.gov web page to include video tutorials;
• embarking on a program to provide public access to judicial opinions via the Government Printing Office's Internet-based FDSys Application;
• partnering with law libraries to provide training on the efficient and effective use of PACER;
• creating a free PACER training application, which is populated with actual court cases and case reports from the New York Western District Court;
• promoting the use of RSS feeds to "push" information to users;
• creating a mobile PACER application;
• redesigning the PACER bill and providing a tool to better manage billing for large organizations; and

- providing access to some audio recordings of judicial proceedings through PACER.

In April 2012, an initiative was undertaken to refresh the results from the initial assessment. This initiative is on track to meet its scheduled completion date of March 2013.

**Basis and History of Fees**

In 1988, the Judiciary sought funding through the appropriations process to provide electronic public access services. Rather than appropriate funds for this purpose, Congress specifically directed the Judiciary to fund electronic public access services through the collection of user fees. As a result, the electronic public access program relies exclusively on fee revenue. The statutory language specifically requires that the fees be used "to reimburse expenses incurred in providing these services."[3]

A study of policies and practices regarding use, release, and sale of data, recommended that the level of fees for a service should sustain the cost of the service. In 1991, a fee of $1.00 per minute for access to electronic information, via a dial-up bulletin board service, was set for the district and bankruptcy courts. Four years later, the fee was reduced to $0.75 per minute, and one year after that it was reduced to $0.60 per minute. The revenue generated from these fees was used exclusively to fund the full range of Electronic Public Access services, including PACER, the Appellate Bulletin Board system, the Voice Case Information System. The Voice Case Information System provided case information free of charge. Fee revenue also provided each court with hardware and software necessary to support public access services. This included more than 700 regular telephone lines, more than 200 toll-free telephone lines, and a personal computer for free public access at the front counter of all clerks' offices with 10 or more staff.

In 1997, the Judiciary addressed three issues pertaining to providing electronic public access to court information via the Internet. These issues were: (1) the establishment of an appropriate fee for Internet access to court electronic records; (2) the types of information for which a fee should be assessed; and (3) the technical approach by which PACER information should be provided over the Internet. An application of Internet technologies to the Judiciary's public access program was viewed as a way to make court and case information more widely available and to offer the opportunity to add additional information (local rules, court forms, court calendars and hours of operation) and services.

---

[3] Judiciary Appropriations Act, 1991, Pub. L. No. 101-515,Title IV, § 404, 104 Stat. 2102 and Judiciary Appropriations Act, 1992, Pub. L. No. 102-140, Title III, § 303, 105 Stat. 782.

The Judiciary's analysis focused on finding the fairest, most easily understood, and most consistent method for charging. In 1998, the Judicial Conference adopted a per-page fee, as it was determined to be the simplest and most effective method for charging for public access via the Internet. The $0.07 per page electronic access fee[4] was calculated to produce comparable fees for large users in both the Internet and dial-up applications and thus maintain the then current public access revenue level while introducing new technologies to expand public accessibility to the PACER information. For infrequent PACER users, costs were reduced considerably by using the Internet.

In 2003, in the Congressional conference report that accompanied the Judiciary's FY 2004 appropriations act, Congress expanded the permitted uses of EPA funds to include Case Management/Electronic Case Files (CM/ECF) system costs. In order to provide sufficient revenue to fully fund currently identified CM/ECF system costs, in September 2004, the Judicial Conference approved an increase in the electronic public access fee from $0.07 to $0.08 per page, effective January 1, 2005.

Based on a recommendation from the Committee on Court Administration and Case Management, in September 2011, the Judicial Conference approved an increase in the fee from $0.08 to $0.10 per page, effective April 1, 2012, in order to give users adequate notice. The Committee noted that the fee had not been increased since 2005 and that, for the previous three fiscal years, the public access program's obligations had exceeded its revenue. The fee increase is being used to fund the Next Generation of CM/ECF and PACER. The Committee also recommended that the waiver of fees of $10 or less in a quarterly billing cycle be changed to $15 or less per quarter, so that approximately 75 percent of users would still receive fee waivers. Finally, in recognition of the current fiscal austerity for government agencies, the Committee recommended that the fee increase be suspended for local, state, and federal government entities for a period of three years. The Conference adopted all of the Committee's recommendations.

The Judiciary takes its responsibility to set the EPA fee very seriously. Since well before the E-Government Act, it has been the Judicial Conference's policy to set the electronic

---

[4]The per-page charge applies to the number of pages that result from any search, including a search that yields no matches (one page for no matches). In the current PACER systems, billable pages are calculated in one of two ways: a formula is used to determine the number of pages for an HTML formatted report. Any information extracted from the CM/ECF database, such as the data used to create a docket sheet, is billed using a formula based on the number of bytes extracted (4320 Bytes). For a PDF document, the actual number of pages is counted to determine the number of billable pages.

public access fee to be commensurate with the costs of providing and enhancing services related to public access.  Before the one-cent-per-page increase in 2004, the Conference had a history of lowering the fee, and Congressional appropriations to the Judiciary have never provided funding for the public access program.  In 2001, the Judicial Conference established a fee of $0.10 per page to print copies of documents from public access terminals in the clerks' office.  That fee has never been raised.  A fee is not charged to view PACER documents from the public access terminals in federal courthouses.  Finally, the per page fee has been capped at the charge for 30 pages (or $3.00) for documents, docket sheets, and case-specific reports.[5]

**Free Information and Exemptions**
There is a high cost to providing electronic public access, and as described above, Congress decided in 1991 that the funds needed to improve electronic access to court information were to be provided by the users of this information through reasonable fees rather than by all tax payers through appropriated funds.  It is also important to note, however, that the public access program does provide a great deal of federal court information to the American public for no charge.  For example:

•   The Judiciary does not charge for access to judicial opinions;

•   Parties to a court case receive a copy of filings in the case at no charge;

•   The $0.10 per page fee is not charged for viewing case information or documents on PACER at the public access terminals in the courthouses;

•   If an individual account does not reach $15 quarterly, no fee is charged at all; and in a given fiscal year, approximately 65-to-75 percent of active users have fee waivers for at least one quarter.  Most of these users are litigants and their attorneys who are involved in a specific case;

•   Consistent with Judicial Conference policy, courts may grant exemptions for payment of electronic public access fees.  Approximately 20 percent of all PACER usage is performed by users who are exempt from any charge – including indigents, case trustees, academic researchers, CJA attorneys, and *pro bono* attorneys.

---

[5]The 30 page fee cap does not apply to non case-specific reports such as docket activity reports that include multiple cases and reports from the PACER Case Locator.

The vast majority (95 percent) of PACER accounts incur less than $500 in fees – or no fee at all – over the course of the year.  This is a long-established pattern.  Additionally, the public access program also provides free access to court case information through VCIS (Voice Case Information System), an automated voice response system that provides a limited amount of bankruptcy case information directly from the court's database in response to telephone inquiries.

**Benefits of a Fee**

In order to maintain the level of service presently provided through the public access program, the Judiciary would need appropriated funds to replace the fee revenue, and in this fiscal climate increased appropriations are not available.  Fee revenue allows the Judiciary to pursue new technologies for providing public access, develop prototype programs to test the feasibility of new public access technologies, and develop enhancements to existing systems.  By authorizing the fee, Congress has provided the Judiciary with revenue that is dedicated solely to promoting and enhancing public access. These fees are only used for public access, and are not subject to being redirected for other purposes.  The fee, even a nominal fee, also provides a user with a tangible, financial incentive to use the system judiciously and efficiently, and in the absence of a fee the system can be abused.

**Privacy**

The Judiciary is committed to protecting private information in court filings from public access.  It has been over a decade since the Judicial Conference began consideration of – and subsequently formulated – a privacy policy for electronic case files, and over four years since the enactment of Federal Rules of Appellate, Bankruptcy, Civil, and Criminal Procedure requiring that certain personal data identifiers not be included in court filings. These policies and rules have been integral to the success of the Judiciary's electronic public access program.  Adherence to these policies and rules by litigants and attorneys is essential to ensure that personal identifier information is appropriately redacted from court filings.  The Judicial Conference examined how the privacy rules were working in practice and found that overall the Judiciary's implementation of the privacy rules has been a tremendous success.

In 2001, the Judicial Conference adopted a policy on privacy and public access to electronic case files that allowed Internet-based access to civil and bankruptcy case filings; the policy required filers, however, to redact certain personal information (i.e., Social Security numbers, financial account numbers, names of minor children, and dates of birth).  Following a pilot program and a Federal Judicial Center study on criminal case files, the Conference approved electronic access to criminal case files, with similar redaction requirements.  The redaction requirements of the Conference's privacy policy were largely incorporated into the Federal Rules, effective December 1, 2007.

As noted above, a key tenet of these rules (as well as the precursor Conference policy) is that the redaction of personal identifiers lies with the filing party.  The Advisory Committee Note accompanying Federal Rule of Civil Procedure 5.2 states: "The clerk is not required to review documents filed with the court for compliance with this rule.  The responsibility to redact filings rests with counsel and the party or non-party making the filing."  Nonetheless, the Judicial Conference and the Administrative Office are obviously interested in ensuring that these privacy rules are adequate and appropriately followed.  To this end, two Judicial Conference Committees – the Court Administration and Case Management Committee, and the Committee on Rules of Practice & Procedure – have worked jointly with the Federal Judicial Center to monitor and study the operation of the privacy rules and related policies and to address new issues that have arisen since their implementation.  In addition, the Administrative Office took a number of steps to ensure that the privacy protections established in the federal rules can be more easily followed, including the establishment of a task force that developed a notice for the current CM/ECF system reminding litigants of their obligation under the law to redact personal identifier information and to require filers to affirm that they must comply with the redaction rules.

The Administrative Office continues to encourage courts to stress the rules' redaction requirements with those who file in the court.  Options for informing the filers include various, readily available communications vehicles, such as the court's public website, newsletters, listserves, and Continuing Legal Education programs.  Further, Judicial Conference Committees and the Administrative Office have asked individual courts to share information on actions they have taken to ensure compliance with the privacy rules, including promulgation of local rules or standing orders, modifications to local CM/ECF applications, and outreach efforts to the public and bar informing them of the redaction requirements.  This type of information will assist the Administrative Office, as well as the Conference Committees, to be better informed of the scope of any non-compliance.  Thus far, the Administrative Office has received an impressive response from the courts, which are addressing the privacy rules in a variety of ways, ranging from conducting education and awareness campaigns to issuing judicial orders to redact noncompliant filings.

**E-Government Act Compliance**
It is important to emphasize the effort and seriousness with which the Judiciary has implemented the E-Government Act's requirements.  Section 205(d) of the Act directed the Judicial Conference to "explore the feasibility of technology to post online dockets with links allowing all filings, decisions and rulings in each case to be obtained from the docket sheet of the case."  The Judiciary has gone much further than "exploring" such a system.  It designed and has now implemented that system in all courts, providing more than 1.4 million PACER users with access to over 500 million case file documents at a

reasonable fee – and, frequently, free of any charge at all.  The EPA program was developed as an alternative to going to the courthouse during business hours and making copies at the cost of $0.50 per page.  This service saves litigants/lawyers and the public time and money by allowing them to file from any computer and also to download and review case information electronically, with all the attendant benefits.

Very few state courts have electronic access systems, and none provides as much information as PACER.  Many state courts charge several dollars for a single records search.  No other court system in the world provides as much information to as many people in as efficient a manner.  State court officials and court administrators from other countries contact the federal Judiciary frequently about our electronic public access model.