IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL VETERANS LEGAL
SERVICES PROGRAM, *et al.*,
                    *Plaintiffs,*

v.

UNITED STATES OF AMERICA,
                    *Defendant.*

Case No. 16-745-ESH

## PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS

As required by Local Rule 7(h)(1), the plaintiffs provide the following statement of material facts as to which they contend there is no genuine issue[1]:

## I.  Overview of PACER fees

1.      The Public Access to Court Electronic Records system, commonly known as PACER, is a system that provides online access to federal judicial records and is managed by the Administrative Office of the U.S. Courts (or AO). *See* ECF No. 27 (Answer) ¶ 7.

2.      The current fee "for electronic access to any case document, docket sheet, or case-specific report via PACER [is] $0.10 per page, not to exceed the fee for thirty pages." *Electronic Public Access Fee Schedule* (Taylor Decl., Ex. A); *see* Answer ¶ 7.

3.      The current fee "[f]or electronic access to transcripts and non-case specific reports via PACER (such as reports obtained from the PACER Case Locator or docket activity reports) [is] $0.10 per page." Taylor Decl., Ex. A; *see* Answer ¶ 7.

---

[1] Much of what follows is based on documents produced by the government for purposes of this litigation. These documents set forth the amount of money collected in PACER fees since fiscal year 2010, which programs that money has been used to fund, and the government's description of the programs. Although the plaintiffs do not challenge the truthfulness of any of this information in moving for summary judgment on the issue of liability, they reserve the right to do so at a later stage. In addition, the words "judiciary" and "Administrative Office" or "AO" are used interchangeably when referring to the Judicial Branch's administrative action.

4.     The current fee "[f]or electronic access to an audio file of a court hearing via PACER [is] $2.40 per audio file." Taylor Decl., Ex. A; *see* Answer ¶ 7.

5.     Anyone who accesses records through PACER will incur an obligation to pay fees unless she obtains a fee waiver or incurs less than $15 in fees in a given quarter. Taylor Decl., Ex. A.

## II.     History of PACER fees

### A.     The creation of PACER

8.     In 1990, Congress began requiring the judiciary to charge "reasonable fees . . . for access to information available through automatic data processing equipment," including records available through what is now known as PACER. Judiciary Appropriations Act, 1991, Pub. L. No. 101–515, § 404, 104 Stat. 2129, 2132–33. In doing so, Congress provided that "[a]ll fees hereafter collected by the Judiciary . . . as a charge for services rendered shall be deposited as offsetting collections . . . to reimburse expenses incurred in providing these services." *Id.*

9.     Later in the decade, the judiciary started planning for a new e-filing system called ECF. The staff of the AO produced a paper "to aid the deliberations of the Judicial Conference" in this endeavor. *Electronic Case Files in the Federal Courts: A Preliminary Examination of Goals, Issues and the Road Ahead* (Mar. 1997) (Taylor Decl., Ex. B). The paper discussed, among other things, how the ECF system could be funded. *Id.* at 34–36. The AO staff wrote that "there is a long-standing principle" that, when imposing user fees, "the government should seek, not to earn a profit, but only to charge fees commensurate with the cost of providing a particular service." *Id.* at 34. But, two pages later, the staff contemplated that the ECF system could be funded with "revenues generated from electronic public access fees"—that is, PACER fees. *Id.* at 36.

10.     The Judicial Conference set PACER fees at $.07 per page beginning in 1998. *See* Chronology of the Fed. Judiciary's Elec. Pub. Access (EPA) Program (Taylor Decl., Ex. C).

### B.     The E-Government Act of 2002

11.     Four years after that, Congress enacted the E-Government Act of 2002. According to a report prepared by the Committee on Governmental Affairs, Congress found that, under "existing law, users of PACER are charged fees that are higher than the marginal cost of disseminating the information." S. Rep. 107−174, 107th Cong., 2d Sess. 23 (2002) (Taylor Decl., Ex. D, at 23). With the E-Government Act, "[t]he Committee intend[ed] to encourage the Judicial Conference to move from a fee structure in which electronic docketing systems are supported primarily by user fees to a fee structure in which this information is freely available to the greatest extent possible." *Id.*; *see also* ECF No. 1 (Compl.) ¶ 12; Answer ¶ 12.

12.     The E-Government Act amended the language authorizing the imposition of fees—removing the mandatory "shall prescribe" language and replacing it with language permitting the Judicial Conference to charge fees "only to the extent necessary." Pub. L. No. 107−347, § 205(e), 116 Stat. 2899, 2915 (Dec. 17, 2002) (28 U.S.C. § 1913 note).

13.     The full text of 28 U.S.C. § 1913 note, as amended by the E-Government Act, is as follows:

> (a) The Judicial Conference may, only to the extent necessary, prescribe reasonable fees, pursuant to sections 1913, 1914, 1926, 1930, and 1932 of title 28, United States Code, for collection by the courts under those sections for access to information available through automatic data processing equipment. These fees may distinguish between classes of persons, and shall provide for exempting persons or classes of persons from the fees, in order to avoid unreasonable burdens and to promote public access to such information. The Director of the [AO], under the direction of the Judicial Conference of the United States, shall prescribe a schedule of reasonable fees for electronic access to information which the Director is required to maintain and make available to the public.
>
> (b) The Judicial Conference and the Director shall transmit each schedule of fees prescribed under paragraph (a) to the Congress at least 30 days before the schedule becomes effective. All fees hereafter collected by the Judiciary under paragraph (a) as a charge for services rendered shall be deposited as offsetting collections to the Judiciary Automation Fund pursuant to 28 U.S.C. 612(c)(1)(A) to reimburse expenses incurred in providing these services.

3

**C.     The AO's Response to the E-Government Act**

14.     The Judicial Conference did not reduce or eliminate PACER fees following the enactment of the E-Government Act. *See* Compl. ¶ 13; Answer ¶ 13.

15.     To the contrary, in September 2004 the Judicial Conference increased fees to $.08 per page, effective on January 1, 2005. Memorandum from Leonidas Ralph Mecham, Director of the Admin. Office, to Chief Judges & Clerks (Oct. 21, 2004) (Taylor Decl., Ex. E). In a letter announcing the increase to the chief judges and clerks of each federal court, the AO's Director wrote: "The fee increase will enable the judiciary to continue to fully fund the Electronic Public Access Program, in addition to CM/ECF implementation costs until the system is fully deployed throughout the judiciary and its currently defined operations and maintenance costs thereafter." *Id.* The letter does not mention the E-Government Act. *See* Compl. ¶ 13; Answer ¶ 13.

16.     By the end of 2006, the Judiciary Information Technology Fund had accumulated a surplus of $146.6 million—$32.2 million of which was from PACER fees. Admin. Office, Judiciary Information Technology Annual Report for Fiscal Year 2006, at 8, (Taylor Decl., Ex. F). According to the AO, these fees had "result[ed] from unanticipated revenue growth associated with public requests for case information." *Id.*

17.     Despite the surplus, the AO still did not reduce or eliminate PACER fees, but instead began "examining expanded use of the fee revenue." *Id.* It started using the excess PACER revenue to fund "courtroom technology allotments for installation, cyclical replacement of equipment, and infrastructure maintenance." Letter from Sen. Lieberman, Chair, Sen. Comm. on Homeland Security and Governmental Affairs, to Sens. Durbin and Collins, Sen. Comm. on Appropriations (Mar. 25, 2010) (Taylor Decl., Ex. G); *see* Compl. ¶ 14; Answer ¶ 14.

18.     Two years later, in 2008, the chair of the Judicial Conference's Committee on the Budget testified before the House of Representatives. She explained that the judiciary used PACER fees not only to reimburse the cost of "run[ning] the PACER program," but also "to offset some costs in our information technology program that would otherwise have to be funded with appropriated funds." Hearings Before a Subcomm. of the Sen. Comm. on Appropriations on H.R. 7323/S. 3260, 110th Cong. 51 (2008). Specifically, she testified, "[t]he Judiciary's fiscal year 2009 budget request assumes $68 million in PACER fees will be available to finance information technology requirements in the courts' Salaries and Expenses account, thereby reducing our need for appropriated funds." *Id.*; *see* Compl. ¶ 15; Answer ¶ 15.

19.     In early 2009, Senator Joe Lieberman (the E-Government Act's sponsor) wrote a letter to the Judicial Conference "to inquire if [it] is complying" with the statute. Letter from Sen. Lieberman to Hon. Lee Rosenthal, Chair, Committee on Rules of Practice and Procedure, Judicial Conf. of the U.S. (Feb. 27, 2009) (Taylor Decl., Ex. H). He noted that "[t]he goal of this provision, as was clearly stated in the Committee report that accompanied the Senate version of the E-Government Act, was to increase free public access to [judicial] records." *Id.* He also noted that "PACER [is] charging a higher rate" than it did when the law was passed, and that "the funds generated by these fees are still well higher than the cost of dissemination." *Id.* He asked the Judicial Conference to explain "whether [it] is only charging 'to the extent necessary' for records using the PACER system." *Id.*; *see* Compl. ¶ 16; Answer ¶ 16.

20.     The AO's Director replied with a letter acknowledging that the E-Government Act "contemplates a fee structure in which electronic court information 'is freely available to the greatest extent possible,'" but taking the position that "the Judiciary [was] charging PACER fees only to the extent necessary." Letter from Hon. Lee Rosenthal and James C. Duff to Sen. Lieberman (Mar. 26, 2009) (Taylor Decl., Ex. I). The sole support the letter offered for this view

was a sentence in a conference report accompanying the 2004 appropriations bill, which said only that the Appropriations Committee "expects the fee for the Electronic Public Access program to provide for [ECF] system enhancements and operational costs." *Id.* The letter did not provide any support (even from a committee report) for using the fees to recover non-PACER-related expenses beyond ECF. *See* Compl. ¶ 17; Answer ¶ 17.

21.     The following year, in his annual letter to the Appropriations Committee, Senator Lieberman expressed his "concerns" about the AO's interpretation. Taylor Decl., Ex. G. "[D]espite the technological innovations that should have led to reduced costs in the past eight years," he observed, the "cost for these documents has gone up" so that the AO can fund "initiatives that are unrelated to providing public access via PACER." *Id.* He reiterated his view that this is "against the requirement of the E-Government Act," which permits "a payment system that is used only to recover the direct cost of distributing documents via PACER"—not other technology-related projects that "should be funded through direct appropriations." *Id.*; *see also* Compl. ¶ 18; Answer ¶ 18.

22.     The AO did not lower PACER fees in response to Senator Lieberman's concerns, and instead increased them to $.10 per page beginning in 2012. It acknowledged that "[f]unds generated by PACER are used to pay the entire cost of the Judiciary's public access program, including telecommunications, replication, and archiving expenses, the Case Management/Electronic Case Files system, electronic bankruptcy noticing, Violent Crime Control Act Victim Notification, on-line juror services, and courtroom technology." Admin. Office, Electronic Public Access Program Summary 1 (2012), (Taylor Decl., Ex. J). But the AO took the position that the fees comply with the E-Government Act because they "are only used for public access, and are not subject to being redirected for other purposes." *Id.* at 10; *see* Compl. ¶ 19; Answer ¶ 19.

23.     In a subsequent congressional budget summary, however, the judiciary reported that (of the money generated from "Electronic Public Access Receipts") it spent just $12.1 million on "public access services" in 2012, while spending more than $28.9 million on courtroom technology. *Part 2: FY 2014 Budget Justifications, Financial Services and General Government Appropriations for 2014, Hearings Before a Subcommittee of the House Committee on Appropriations*, 113th Cong. 538, App. 2.4 (2013) (Taylor Decl., Ex. K).

24.     Since the 2012 fee increase, the AO has continued to collect large amounts in PACER fees. In 2014, for example, the judiciary collected nearly $145 million in fees, much of which was earmarked for other purposes such as courtroom technology, websites for jurors, and bankruptcy notification systems. Admin. Office of the U.S. Courts, *The Judiciary Fiscal Year 2016 Congressional Budget Summary*, App. 2.3 & 2.4 (Feb. 2015) (ECF No. 31-1, at 647–48).

25.     When questioned during a House appropriations hearing that same year, representatives from the judiciary acknowledged that "the Judiciary's Electronic Public Access Program encompasses more than just offering real-time access to electronic records." *Financial Services and General Government Appropriations for 2015, Part 6: Hearings Before a Subcomm. of the House Comm. on Appropriations*, 113th Cong. 152 (2014); *see* Compl. ¶ 21; Answer ¶ 21.

26.     Judge William Smith (a member of the Judicial Conference's Committee on Information Technology) has said that PACER fees "also go to funding courtroom technology improvements, and I think the amount of investment in courtroom technology in '09 was around 25 million dollars. . . . Every juror has their own flat- screen monitors. . . . [There have also been] audio enhancements. . . . We spent a lot of money on audio so the people could hear what's going on. . . . This all ties together and it's funded through these [PACER] fees." Hon. William Smith, Panel Discussion on Public Electronic Access to Federal Court Records at the William

and Mary Law School Conference on Privacy and Public Access to Court Records (Mar. 4–5, 2010), https://goo.gl/5g3nzo; *see* Compl. ¶ 22; Answer ¶ 22.

### III. Use of PACER fees within the class period

#### A. Fiscal year 2010

28.     The judiciary collected $102,511,199 in PACER fees for fiscal year 2010 and carried forward $34,381,874 from the previous year. Public Access and Records Management Division, *Summary of Resources* (Taylor Decl., Ex. L).

29.     The cost of the Electronic Public Access Program for fiscal year 2010 was $18,768,552. *Id.* According to the government, "[t]he EPA program provided electronic public access to court information; developed and maintained electronic public access systems in the judiciary; and, through the PACER [] Service Center, provided centralized billing. It also included funding the technical elements to the PACER program, including, but not limited to, the PACER Service Center [] technical costs, contracts, technical training, uscourts.gov website, and program office technical costs." Def.'s Resp. to Pls.' First Set of Interrogs., at 2 (Taylor Decl., Ex. M).

30.     Beyond the cost of the EPA program, the AO used PACER fees to fund the following programs in fiscal year 2010:

31.     ***Courtroom technology***. The AO spent $24,731,665 from PACER fees on "the maintenance, cyclical replacement, and upgrade of courtroom technology in the courts." Taylor Decl., Ex. L; Ex. M, at 5.

32.     At least some of the money spent to upgrade courtroom technology, such as purchasing flat screens for jurors, is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in

providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

33.    ***Violent Crime Control Act Notification.*** The AO spent $332,876 from PACER fees on a "program [that] electronically notifies local law enforcement agencies of changes to the case history of offenders under supervision." Taylor Decl., Ex. L; Ex. M, at 5.

34.    Notifying law enforcement under the Violent Crime Control Act is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

35.    ***State of Mississippi.*** The AO spent $120,988 from PACER fees on a "Mississippi state three year study on the feasibility of sharing the Judiciary's CM/ECF filing system at the state level." Taylor Decl., Ex. L; Ex. M, at 5. The government says that "[t]his provided software, and court documents to the State of Mississippi, which allowed the State of Mississippi to provide the public with electronic access to its documents." *Id.*

36.    Paying the State of Mississippi is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

37.    ***Electronic Bankruptcy Noticing.*** The AO spent $9,662,400 from PACER fees on a system that "produces and sends court documents (bankruptcy notices, including notices of 341 meetings) electronically to creditors in bankruptcy cases." Taylor Decl., Ex. M, at 3. (A "341 meeting" is a meeting of creditors and equity security holders in a bankruptcy under 11 U.S.C. § 341.)

38.    Notifying bankruptcy creditors is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

39.    ***CM/ECF.*** The AO spent $23,755,083 from PACER fees on CM/ECF (short for Case Management/Electronic Case Files), the e-filing and case-management system that "provides the ability to store case file documents in electronic format and to accept filings over the internet." Taylor Decl., Ex. L; Ex. M, at 3. There is no fee for filing a document using CM/ECF. PACER, *FAQs*, https://www.pacer.gov/psc/efaq.html#CMECF.

40.    The CM/ECF costs for fiscal year 2010 consisted of the following: $3,695,078 for "Development and Implementation" of the CM/ECF system; $15,536,212 for "Operations and Maintenance" of the system; $3,211,403 to "assess[] the judiciary's long term case management and case filing requirements with a view to modernizing or replacing the CM/ECF systems" (which the government calls "CM/ECF Futures"); $144,749 for "Appellate Operational Forum," which "is an annual conference at which judges, clerks of court, court staff, and AO staff exchange ideas and information about operational practices and policies related to the Appellate CM/ECF system"; $674,729 for "District Operational Forum," which is a similar conference for the "District CM/ECF system"; and $492,912 for "Bankruptcy Operational Forum," a similar conference for the "Bankruptcy CM/ECF system," Taylor Decl., Ex. L; Ex. M, at 2–3.

41.    At least some of the money spent on CM/ECF is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

42.     ***Telecommunications.*** The AO spent $13,847,748 from PACER fees on what it calls "DCN and Security Services." Taylor Decl., Ex. L. DCN stands for "Data Communications Network"—"a virtual private network that allows access only to those resources that are considered part of the uscourts.gov domain." Taylor Decl., Ex. M, at 33. "This DCN cost [was] split between appropriated funds and Electronic Public Access (EPA) funds," and covered the "costs associated with network circuits, routers, switches, security, optimization, and management devices along with maintenance management and certain security services to support the portion of the Judiciary's WAN network usage associated with CM/ECF." *Id.* at 4. The government also spent $10,337,076 on PACER-Net, the network that "allows courts to post court information on the internet in a secure manner" and hosts both "[t]he public side of CM/ECF as well as court websites."  Taylor Decl., Ex. L; Ex. M, at 2–3.

43.     At least some of the money spent on telecommunications is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

44.     ***Court Allotments.*** Finally, the AO spent $9,428,820 from PACER fees on payments to the federal courts, which consisted of the following:

- $7,605,585 for "CM/ECF Court Allotments," which the governments says were "funds provided as the CM/ECF contribution/portion of the IT Infrastructure Formula, and funds for attorney training on CM/ECF";

- $1,291,335 for "Court Allotments" to fund "public terminals, internet web servers, telephone lines, paper and toner at public printers, digital audio, McVCIS" (short for "Multi-court Voice Case Information System," which "provides bankruptcy case information" to "the public over the phone"), and "grants for the courts";

- $303,527 for "Courts/AO Exchange Program," which "fund[ed] participants in the IT area, related to the Next Gen program" ("the next iteration of CM/ECF"); and

- $228,373 for "Court Staffing Additives," which covered the costs of staffing people who "worked on projects like the development of [McVCIS]."

Taylor Decl., Ex. L; Ex. M, at 4, 30.

45.     At least some of the money given to courts is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

### B.  Fiscal year 2011

46.     The judiciary collected $113,770,265 in PACER fees for fiscal year 2011 and carried forward $26,051,473 from the previous year. Taylor Decl., Ex. L.

47.     The cost of the Electronic Public Access Program for fiscal year 2011 was $3,363,770. *Id.*

48.     Beyond the cost of the EPA program, the judiciary spent $10,339,444 from PACER fees on what it calls "EPA Technology Infrastructure & applications," *id.*, which is the "[d]evelopment and implementation costs for CM/ECF," and $4,318,690 on what it calls "EPA Replication," which "cover[ed] expenses for CM/ECF servers and replication and archive services." Taylor Decl., Ex. L; Ex. M, at 5–6.

49.     The AO also used PACER fees to fund the following programs in fiscal year 2011:

50.     ***Courtroom technology.*** The AO spent $21,542,457 from PACER fees on "the maintenance, cyclical replacement, and upgrade of courtroom technology in the courts." Taylor Decl., Ex. L; Ex. M, at 8.

51.     At least some of the money spent to upgrade courtroom technology is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

52.     ***Violent Crime Control Act Notification.*** The AO spent $508,903 from PACER fees on a "program [that] electronically notifies local law enforcement agencies of changes to the case history of offenders under supervision." Taylor Decl., Ex. L; Ex. M, at 8.

53.     Notifying law enforcement under the Violent Crime Control Act is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

54.     ***Electronic Bankruptcy Noticing.*** The AO spent $11,904,000 from PACER fees to "produce[] and send[] court documents (bankruptcy notices, including notices of 341 meetings) electronically to creditors in bankruptcy cases." Taylor Decl., Ex. L; Ex. M, at 7.

55.     Notifying bankruptcy creditors is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

56.     ***CM/ECF.*** The AO spent $22,540,928 from PACER fees on CM/ECF. Taylor Decl., Ex. L. These costs consisted of the following: $5,400,000 for "Development and Implementation"; $11,154,753 for "Operations and Maintenance"; $4,582,423 for "CM/ECF Futures"; $176,198 for "Appellate Operational Forum"; $705,054 for "District Operational Forum"; and $522,500 for "Bankruptcy Operational Forum." *Id.*; *see* Taylor Decl., Ex. M, at 6.

57.     At least some of the money spent on CM/ECF is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107−174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

58.     ***Telecommunications.*** The AO spent $23,528,273 from PACER fees on telecommunications costs. Taylor Decl., Ex. L. These costs consisted of the following: $9,806,949 for "DCN and Security Services," which covered the "[c]osts associated with the FTS 2001 and Networx contracts with the PACER-Net"; $4,147,390 for "PACER-Net & DCN," which was "split between appropriated funds and Electronic Public Access (EPA) funds," and which covered the "costs associated with network circuits, routers, switches, security, optimization, and management devices along with maintenance management and certain security services to support the portion of the Judiciary's WAN network usage associated with CM/ECF"; $9,221,324 for PACER-Net; and $352,610 for "Security Services," which covered the "costs for security services associated with the PACER-Net." Taylor Decl., Ex. L; Ex. M, at 7.

59.     At least some of the money spent on telecommunications is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107−174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

60.     ***Court allotments.*** Finally, the AO spent $10,618,805 from PACER fees on payments to the courts. Taylor Decl., Ex. L. These costs consisted of: $7,977,635 for "CM/ECF Court Allotments"; $769,125 for "Courts/AO Exchange Program"; $1,403,091 for "Court Allotments"; and $468,954 for "Court Staffing Additives." Taylor Decl., Ex. L; Ex. M, at 7−8.

61.     At least some of the money given to courts is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107−174, 107th Cong., 2d Sess. 23—*i.e.*, an

"expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

### C. Fiscal year 2012

62.     The judiciary collected $124,021,883 in PACER fees for fiscal year 2012 and carried forward $31,320,278 from the previous year. Taylor Decl., Ex. L.

63.     The cost of the Electronic Public Access Program for fiscal year 2012 was $3,547,279. *Id.*

64.     Beyond the cost of the EPA program, the judiciary also used PACER fees to fund $5,389,870 in "[d]evelopment and implementation costs for CM/ECF" (under the category of "EPA Technology Infrastructure & applications"); and $3,151,927 in "expenses for CM/ECF servers and replication and archive services" (under the category of "EPA Replication"). Taylor Decl., Ex. L; Ex. M, at 9.

65.     The AO also used PACER fees to fund the following programs in fiscal year 2012:

66.     ***Courtroom Technology.*** The AO spent $28,926,236 from PACER fees on courtroom technology. Taylor Decl., Ex. L; *see* Taylor Decl., Ex. M, at 11−12.

67.     At least some of the money spent to upgrade courtroom technology is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107−174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

68.     ***Violent Crime Control Act Notification.*** The AO spent $1,030,922 from PACER fees on a "program that electronically notifies local law enforcement agencies of changes to the case history of offenders under supervision"—$480,666 in development costs and $550,256 in operation and maintenance costs. Taylor Decl., Ex. L; Ex. M, at 11.

69.     Notifying law enforcement under the Violent Crime Control Act is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107−174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

70.     ***Web-based Juror Services.*** The AO spent $744,801 from PACER fees to cover "[c]osts associated with E-Juror software maintenance, escrow services, and scanner support. E-Juror provides prospective jurors with electronic copies of courts documents regarding jury service. Taylor Decl., Ex. L; Ex. M, at 11.

71.     Providing services to jurors is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107−174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

72.     ***Electronic Bankruptcy Noticing***. The AO spent $13,789,000 from PACER fees to "produce[] and send[] court documents (bankruptcy notices, including notices of 341 meetings) electronically to creditors in bankruptcy cases." Taylor Decl., Ex. L; Ex. M, at 10.

73.     Notifying bankruptcy creditors is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107−174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

74.     ***CM/ECF.*** The AO spent $26,398,495 from PACER fees on CM/ECF. Taylor Decl., Ex. L. These costs consisted of: $8,006,727 for "Operations and Maintenance"; $164,255 for "Appellate Operational Forum"; $817,706 for "District Operational Forum"; and $531,162 for "Bankruptcy Operational Forum." *Id.* The costs also consisted of: $5,491,798 for "testing CM/ECF"; $6,095,624 to "fund[] positions that perform duties in relation to the CM/ECF

system" (which the government labels "CM/ECF Positions"); and $5,291,223 to "assess[] the judiciary's long term case management and case filing requirements with a view to modernizing or replacing the CM/ECF systems" (which the government labels "CM/ECF Next Gen."). Taylor Decl., Ex. L; Ex. M, at 9.

75. At least some of the money spent on CM/ECF is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

76. ***Communications Infrastructure, Services and Security.*** The AO spent $26,580,994 from PACER fees on these costs, which consisted of $22,128,423 for "PACER Net DCN" and $4,452,575 for "security services associated with PACER and CM/ECF." Taylor Decl., Ex. L; Ex. M, at 10.

77. At least some of the money spent on telecommunications is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

78. ***Court Allotments***. Finally, the AO spent $10,617,242 from PACER fees on payments to the courts. Taylor Decl., Ex. L. These costs consisted of: $8,063,870 for "CM/ECF Court Allotments"; $890,405 for "Courts/AO Exchange Program"; and $1,662,967 for "Court Staffing Additives/Allotments." Taylor Decl., Ex. L; Ex. M, at 10–11.

79. At least some of the money given to courts is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

### D. Fiscal year 2013

80.     The judiciary collected $147,469,581 in PACER fees for fiscal year 2013 and carried forward $36,049,102 from the previous year. Taylor Decl., Ex. L.

81.     The cost of the Electronic Public Access Program for fiscal year 2013 was $4,652,972. *Id.*

82.     Beyond the cost of the EPA program, the AO also spent $5,139,937 from PACER fees on "[d]evelopment and implementation costs for CM/ECF" (under the category of "EPA Technology Infrastructure & Applications"), and $10,462,534 from PACER fees on "expenses for CM/ECF servers and replication and archive services" (under the category of "EPA Replication"). Taylor Decl., Ex. L; Ex. M, at 12.

83.     The AO also used PACER fees to fund the following programs in fiscal year 2013.

84.     ***Courtroom Technology.*** The AO spent $31,520,316 from PACER fees on courtroom technology. Taylor Decl., Ex. L; *see* Taylor Decl., Ex. M, at 15.

85.     At least some of the money spent to upgrade courtroom technology is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

86.     ***Violent Crime Control Act Notification.*** The AO spent $681,672 from PACER fees on a "program that electronically notifies local law enforcement agencies of changes to the case history of offenders under supervision"—$254,548 in development costs and $427,124 in operation and maintenance costs. Taylor Decl., Ex. L; Ex. M, at 14.

87.     Notifying law enforcement under the Violent Crime Control Act is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d

Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

88.     ***Web-based Juror Services.*** The AO spent $2,646,708 from PACER fees on "E-Juror maintenance and operation." Taylor Decl., Ex. L; Ex. M, at 14.

89.     Providing services to jurors is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

90.     ***Electronic Bankruptcy Noticing***. The AO spent $12,845,156 from PACER fees to "produce[] and send[] court documents (bankruptcy notices, including notices of 341 meetings) electronically to creditors in bankruptcy cases." Taylor Decl., Ex. L; Ex. M, at 13.

91.     Notifying bankruptcy creditors is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

92.     ***CM/ECF.*** The AO spent $32,125,478 from PACER fees on CM/ECF. Taylor Decl., Ex. L. These costs consisted of: $4,492,800 for testing the system; $7,272,337 for "CM/ECF Positions," $6,091,633 for "Operations and Maintenance," $13,416,708 for "CM/ECF Next Gen.," $800,000 for the "District Court Forum," and $52,000 for the "Bank[ruptcy] Court" forum. Taylor Decl., Ex. L; Ex. M, at 12–13.

93.     At least some of the money spent on CM/ECF is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

94.     ***Communications Infrastructure, Services and Security.*** The AO spent $27,500,711 from PACER fees on these costs, which consisted of $23,205,057 for "PACER Net DCN" and $4,295,654 for "security services associated with PACER and CM/ECF." Taylor Decl., Ex. L; Ex. M, at 13.

95.     At least some of the money spent on telecommunications is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

96.     ***Court Allotments***. Finally, the AO spent $15,754,031 from PACER fees on payments to the courts. Taylor Decl., Ex. L. These costs consisted of: $12,912,897 for "CM/ECF Court Allotments"; $578,941 for "Courts/AO Exchange Program"; and $2,262,193 for "Court Staffing Additives/Allotments." Taylor Decl., Ex. L; Ex. M, at 14.

97.     At least some of the money given to courts is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

**E.  Fiscal year 2014**

98.     The judiciary collected $144,612,517 in PACER fees for fiscal year 2014 and carried forward $39,094,63 from the previous year. Taylor Decl., Ex. L.

99.     The cost of the Electronic Public Access Program for fiscal year 2014 was $4,262,398, plus $667,341 in "[c]osts associated with managing the non-technical portion of the PACER Service Center i.e., rent, billing process costs, office equipment and supplies." Taylor Decl., Ex. L; Ex. M, at 15.

100.    Beyond the cost of the EPA program, the AO also spent $6,202,122 from PACER fees on "[d]evelopment and implementation costs for CM/ECF" (under the category of "EPA Technology Infrastructure & Applications"), and $4,367,846 on "expenses for CM/ECF servers" and "support for CM/ECF Infrastructure" (under the category of "EPA Replication"). *Id.*

101.    The AO also used PACER fees to fund the following programs in fiscal year 2014:

102.    ***Courtroom Technology.***  The AO spent $26,064,339 from PACER fees on courtroom technology. Taylor Decl., Ex. L; *see* Taylor Decl., Ex. M, at 18.

103.    At least some of the money spent to upgrade courtroom technology is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

104.    ***Violent Crime Control Act Notification.***  The AO spent $474,673 from PACER fees on a "program that electronically notifies local law enforcement agencies of changes to the case history of offenders under supervision." Taylor Decl., Ex. L; Ex. M, at 18.

105.    Notifying law enforcement under the Violent Crime Control Act is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

106.    ***Web-based Juror Services.***  The AO spent $2,450,096 from PACER fees on "E-Juror maintenance and operation." Taylor Decl., Ex. L; Ex. M, at 18.

107.    Providing services to jurors is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

108.   ***Electronic Bankruptcy Noticing***. The AO spent $10,005,284 from PACER fees to "produce[] and send[] court documents (bankruptcy notices, including notices of 341 meetings) electronically to creditors in bankruptcy cases." Taylor Decl., Ex. L; Ex. M, at 17.

109.   Notifying bankruptcy creditors is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

110.   ***CM/ECF.*** The AO spent $39,246,201 from PACER fees on CM/ECF. Taylor Decl., Ex. L. These costs consisted of $8,210,918 for "CM/ECF Positions" and $7,925,183 for "CM/ECF Next Gen." Taylor Decl., Ex. L; Ex. M, at 16. The costs also included: $12,938,052 in "costs associated with SDSO support services for [CM/ECF], CM/ECF NextGen Development and Legacy [CM/ECF] systems," including "function and technical support desk services, release, distribution, installation support services, communications services, and written technical documentation material"; $6,640,397 in "expenses for CM/ECF servers" and "support for CM/ECF Infrastructure"; $3,328,417 for "tasks related to the operation and maintenance of the [Enterprise Data Warehouse] and other integration services, enhancement and/or migration services that are required to support technology advancement or changing business needs," which were designed to support CM/ECF by providing "on-line analytics, reports, dashboards, as well as seamless integration with other judiciary systems through web services and other application programming interfaces"; and $75,000 for the "CSO Combined Forum," which "is a conference at which judges, clerks of court, court staff, and AO staff exchange ideas and information about operations practices and policies related to the CM/ECF system." *Id.*

111.   At least some of the money spent on CM/ECF is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an

"expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

112.   ***Communications Infrastructure, Services and Security.*** The AO spent $38,310,479 from PACER fees on these costs, which consisted of $33,022,253 for "PACER Net DCN" and $5,288,226 for "security services associated with PACER and CM/ECF." Taylor Decl., Ex. L; Ex. M, at 17.

113.   At least some of the money spent on telecommunications is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107−174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

114.   ***Court Allotments***. Finally, the AO spent $10,754,305 from PACER fees on payments to the courts. Taylor Decl., Ex. L. These costs consisted of: $7,698,248 for "CM/ECF Court Allotments"; $367,441 for "Courts/AO Exchange Program"; and $2,688,616 for "Court Staffing Additives/Allotments." Taylor Decl., Ex. L; Ex. M, at 17.

115.   At least some of the money given to courts is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107−174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

**F.  Fiscal year 2015**

116.   The judiciary collected $144,911,779 in PACER fees for fiscal year 2015 and carried forward $41,876,991 from the previous year. Taylor Decl., Ex. L.

117.   The cost of the Electronic Public Access Program for fiscal year 2015 was $2,575,977, plus $642,160 in "[c]osts associated with managing the non-technical portion of the

PACER Service Center i.e., rent, billing process costs, office equipment and supplies." Taylor Decl., Ex. L; Ex. M, at 18.

118.     Beyond the cost of the EPA program, the judiciary also used PACER fees to fund the following: $3,345,593 in "[d]evelopment and implementation costs for CM/ECF" (under the category of "EPA Technology Infrastructure & Applications"); $13,567,318 in "expenses for CM/ECF servers" and "support for CM/ECF Infrastructure" (under the category of "EPA Replication"); and $1,295,509 in "costs associated with the support of the uscourts.gov website." Taylor Decl., Ex. L; Ex. M, at 18–19.

119.     The AO also used PACER fees to fund the following programs in fiscal year 2015:

120.     ***Courtroom Technology.***  The AO spent $27,383,325 from PACER fees on courtroom technology. Taylor Decl., Ex. L; *see* Taylor Decl., Ex. M, at 22.

121.     At least some of the money spent to upgrade courtroom technology is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

122.     ***Violent Crime Control Act Notification.***  The AO spent $508,433 from PACER fees on a "program that electronically notifies local law enforcement agencies of changes to the case history of offenders under supervision." Taylor Decl., Ex. L; Ex. M, at 21.

123.     Notifying law enforcement under the Violent Crime Control Act is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

124.     ***Web-based Juror Services.***  The AO spent $1,646,738 from PACER fees on "E-Juror maintenance and operation." Taylor Decl., Ex. L; Ex. M, at 21.

125.    Providing services to jurors is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

126.    ***Electronic Bankruptcy Noticing***. The AO spent $8,090,628 from PACER fees to "produce[] and send[] court documents (bankruptcy notices, including notices of 341 meetings) electronically to creditors in bankruptcy cases." Taylor Decl., Ex. L; Ex. M, at 20–21.

127.    Notifying bankruptcy creditors is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

128.    ***CM/ECF.*** The AO spent $34,193,855 from PACER fees on CM/ECF. Taylor Decl., Ex. L. These costs consisted of $6,622,167 for "CM/ECF Positions" and $10,169,819 for "CM/ECF Next Gen." Taylor Decl., Ex. L; Ex. M, at 19. The costs also consisted of: $1,727,563 for "providing curriculum design and training for legal CM/ECF and NextGen," which "include[d] the scheduling of classes to meet court staff turnover (operational and technical staff) and to provide training on new features provided by NextGen"; $2,730,585 for "JENIE Branch and Information Services Branch support of CM/ECF and CM/ECF NextGen development on the JENIE platforms," including "[e]ngineering efforts for NextGen utilizing the JENIE environment"; $3,336,570 in "costs associated with SDSO support services for [CM/ECF], CM/ECF NextGen Development and Legacy [CM/ECF] systems"; $4,574,158 for testing the system; $3,244,352 for "tasks related to the operation and maintenance of the [Enterprise Data Warehouse] and other integration services, enhancement and/or migration services that are required to support technology advancement or changing business needs";

$1,680,128 for the "CSO Combined Forum"; and $108,513 for a "CM/ECF NextGen project working group." *Id.* at 19–20.

129.   At least some of the money spent on CM/ECF is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

130.   ***Communications Infrastructure, Services and Security.*** The AO spent $43,414,189 from PACER fees on these costs, which consisted of $36,035,687 for "PACER Net DCN" and $7,378,502 for "security services associated with PACER and CM/ECF." Taylor Decl., Ex. L; Ex. M, at 21.

131.   At least some of the money spent on telecommunications is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

132.   ***Court Allotments***. Finally, the AO spent $11,059,019 from PACER fees on payments to the courts. Taylor Decl., Ex. L. These costs consisted of: $7,964,723 for "CM/ECF Court Allotments"; $1,343,993 for "Courts/AO Exchange Program"; and $1,064,956 for "Court Staffing Additives/Allotments." Taylor Decl., Ex. L; Ex. M, at 21.

133.   At least some of the money given to courts is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

### G. Fiscal year 2016

134.    The judiciary collected $146,421,679 in PACER fees for fiscal year 2016 and carried forward $40,254,853 from the previous year. Taylor Decl., Ex. L.

135.    The cost of the Electronic Public Access Program for fiscal year 2016 was $748,495, plus $2,443,614 in "[c]osts associated with managing the non-technical portion of the PACER Service Center i.e., rent, billing process costs, office equipment and supplies." Taylor Decl., Ex. L; Ex. M, at 22–23.

136.    Beyond the cost of the EPA program, the judiciary also used PACER fees to fund the following: $6,282,055 in "[d]evelopment and implementation costs for CM/ECF"; $10,364,682 in "expenses for CM/ECF servers" and "support for CM/ECF Infrastructure"; $2,046,473 to fund "positions that perform duties in relation to the CM/ECF system"; $678,400 in "[c]osts associated with an Agile team, staffed by contractors, with the purpose of re-designing and implementing an entirely new centralized product for access to all CM/ECF case data"; $1,241,031 in "costs associated with the support of the uscourts.gov website"; and $67,605 in "Information Technology support for PACER Development Branch and PACER Services Branch Staff." *Id.*

137.    The AO also used PACER fees to fund the following programs in fiscal year 2016:

138.    ***Courtroom Technology.*** The AO spent $24,823,532 from PACER fees on courtroom technology. Taylor Decl., Ex. L; *see* Taylor Decl., Ex. M, at 26.

139.    At least some of the money spent to upgrade courtroom technology is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

140. **Violent Crime Control Act Notification.** The AO spent $113,500 from PACER fees on a "program that electronically notifies local law enforcement agencies of changes to the case history of offenders under supervision." Taylor Decl., Ex. L; Ex. M, at 26.

141. Notifying law enforcement under the Violent Crime Control Act is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107−174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

142. **Web-based Juror Services.** The AO spent $1,955,285 from PACER fees on "E-Juror maintenance and operation." Taylor Decl., Ex. L; Ex. M, at 26.

143. Providing services to jurors is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107−174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

144. **Electronic Bankruptcy Noticing**. The AO spent $7,069,408 from PACER fees to "produce[] and send[] court documents (bankruptcy notices, including notices of 341 meetings) electronically to creditors in bankruptcy cases." Taylor Decl., Ex. L; Ex. M, at 25.

145. Notifying bankruptcy creditors is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107−174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

146. **CM/ECF.** The AO spent $39,745,955 from PACER fees on CM/ECF. Taylor Decl., Ex. L. These costs consisted of $6,290,854 for "CM/ECF Positions" and $11,415,754 for "CM/ECF Next Gen." Taylor Decl., Ex. L; Ex. M, at 23. The costs also include: $1,786,404 for "providing curriculum design and training for legal CM/ECF and NextGen"; $3,785,177 for

"JENIE Branch and Information Services Branch support of CM/ECF and CM/ECF NextGen development on the JENIE platforms"; $2,422,404 in "costs associated with SDSO support services for [CM/ECF], CM/ECF NextGen Development and Legacy [CM/ECF] systems"; $6,182,547 for testing the system; $3,645,631 for "tasks related to the operation and maintenance of the [Enterprise Data Warehouse] and other integration services, enhancement and/or migration services that are required to support technology advancement or changing business needs"; $1,680,128 for the "CSO Combined Forum," which "is a conference at which judges, clerks of court, court staff, and AO staff exchange ideas and information about operations practices and policies related to the CM/ECF system"; $134,093 for a "CM/ECF NextGen project working group"; $635,520 for "CM/ECF Implementation," which funds "new contractors" and covers travel funds for "660 trips per year to support 60 courts implementing NextGen CM/ECF"; and $1,649,068 to fund a "CM/ECF Technical Assessment" to review and analyze the "performance of the Next GEN CM/ECF system." Taylor Decl., Ex. L; Ex. M, at 23–25.

147.    At least some of the money spent on CM/ECF is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

148.    ***Communications Infrastructure, Services and Security.*** The AO spent $45,922,076 from PACER fees on these costs, which consisted of $36,577,995 for "PACER Net DCN" and $9,344,081 for "security services associated with PACER and CM/ECF." Taylor Decl., Ex. L; Ex. M, at 25.

149.    At least some of the money spent on telecommunications is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d

Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

150.     ***Court Allotments***. Finally, the AO spent $7,312,023 from PACER fees on payments to the courts. Taylor Decl., Ex. L. These costs consisted of: $6,588,999 for "CM/ECF Court Allotments"; $1,069,823 for "Courts/AO Exchange Program"; and −$346,799 for "Court Staffing Additives/Allotments." Taylor Decl., Ex. L; Ex. M, at 26.

151.     At least some of the money given to courts is not part of the "marginal cost of disseminating" records through PACER, S. Rep. 107–174, 107th Cong., 2d Sess. 23—*i.e.*, an "expense[] incurred in providing" access to such records for which it is "necessary" to charge a fee "for [the] services rendered." 28 U.S.C. § 1913 note.

## IV.    The decrease in the cost of data storage

152.     Researcher Matthew Komorowski and data-storage firm BackBlaze have published storage-cost-time series that when combined cover the period dating from the PACER system's 1998 debut to the present. During this time their data shows the cost of a gigabyte of storage falling from $65.37 to $0.028, a reduction of over 99.9%. During this same time period PACER's per-page fees increased 43%, from $0.07 to $0.10. Lee & Lissner Decl. ¶ 16.

Respectfully submitted,

*/s/ Deepak Gupta*
DEEPAK GUPTA
JONATHAN E. TAYLOR
GUPTA WESSLER PLLC
1900 L Street NW, Suite 312
Washington, DC 20036
Phone: (202) 888-1741
*deepak@guptawessler.com*

WILLIAM H. NARWOLD
MEGHAN S.B. OLIVER

ELIZABETH SMITH
MOTLEY RICE LLC
401 9th St. NW, Suite 1001
Washington, DC 20004
Phone: (202) 232-5504
*bnarwold@motleyrice.com*

August 28, 2017                              *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2017, I filed the foregoing statement through this Court's CM/ECF system, and that all parties required to be served have been thereby served.

*/s/ Deepak Gupta*

Deepak Gupta