# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL VETERANS LEGAL SERVICES PROGRAM, NATIONAL CONSUMER LAW CENTER, and ALLIANCE FOR JUSTICE, for themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>*Defendant*. | Case No. 16-745-ESH |

## BRIEF OF AMICI CURIAE SENATOR JOSEPH I. LIEBERMAN AND CONGRESSMAN DARRELL ISSA IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY

September 5, 2017

| | |
|---|---|
| *Of counsel:*<br><br>Michael K. Farrell<br>Michael D. Meuti<br>BakerHostetler LLP<br>Key Tower<br>127 Public Square, Suite 2000<br>Cleveland, OH  44114-1214<br>Telephone:  (216) 621-0200<br>mfarrell@bakerlaw.com<br>mmeuti@bakerlaw.com | Mark I. Bailen (D.C. Bar No. 459623)<br>BakerHostetler LLP<br>Washington Square, Suite 1100<br>1050 Connecticut Avenue, NW<br>Washington, DC  20036-5304<br>Telephone:  (202) 861-1500<br>mbailen@bakerlaw.com<br><br>*Counsel for Amici Curiae Senator Joseph I. Lieberman and Congressman Darrell Issa* |

TABLE OF CONTENTS

STATEMENT OF IDENTITY AND INTEREST OF *AMICUS CURIAE* ...............................1

SUMMARY OF ARGUMENT .......................................................................................................2

ARGUMENT ...................................................................................................................................3

    A.    The E-Government Act was intended to prohibit the AO from charging more in PACER fees than is necessary to recoup the cost of operating PACER. ............3

        1.    Congress' intent in passing the E-Government Act of 2002. ..................3

        2.    Plaintiffs' reading of the Act is confirmed by its sponsor, Senator Lieberman. ...................................................................................................4

    B.    Since 2002, the AO has continually violated the E-Government Act. ................6

CONCLUSION ................................................................................................................................8

## TABLE OF AUTHORITIES

Page(s)

**Statutes**

28 U.S.C. 612(c)(1)(A) ...................................................................................................................4

28 U.S.C. § 612(c)(1) ....................................................................................................................6

28 U.S.C. § 1913 note ........................................................................................................2, 3, 4, 7

Judiciary Appropriations Act, 1991, Pub. L. No. 101–515, § 404, 104 Stat. 2129,
    2132–33 .....................................................................................................................................3

**Rules**

Local Civ. R. 7(o) ..........................................................................................................................1

**Other Authorities**

S. Rep. No. 107–174, 2d Sess. (2002) ....................................................................................1, 4,7

**STATEMENT OF IDENTITY AND INTEREST OF *AMICI CURIAE***

*Amicus curiae* Senator Joseph Lieberman served as United States Senator from Connecticut from 1989 until his retirement from Congress in 2013. Senator Lieberman served as Chair of the United States Senate Committee on Homeland Security and Governmental Affairs and in that capacity was the sponsor of the E-Government Act of 2002—the legislation upon which this lawsuit turns.

Given his experience, Senator Lieberman is uniquely situated to confirm that plaintiffs' reading of the E-Government Act accurately reflects Congress' intent in passing that Act and to confirm that the judiciary's practice of charging "PACER" fees for access to public information that far exceed the cost of providing that information is contrary to the intent of the Act.

*Amicus curiae* Congressman Darrell Issa is a member of the United States House of Representatives, representing the 49th District of California. As Chairman of the House Judiciary Subcommittee on Courts, Intellectual Property, and the Internet, he has examined PACER fees. He also co-founded of the Congressional Transparency Caucus, based on the simple idea that all Americans have the right to know exactly what their government is doing.

He is also a lifelong technophile with a passion for open, accountable government. The Congressman co-founded the OpenGov Foundation, an apolitical 501(c)(3), which supports free software solutions that help citizens to access government information and give them a voice in governance.

Pursuant to Local Civ. R. 7(o), *amici* have submitted a motion for leave to file this brief as *amici curiae*.[1]

---

[1] Counsel for *amici* declare that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief;

1

**SUMMARY OF ARGUMENT**

In 2002, Congress found that PACER fees were "higher than the marginal cost of disseminating the information" accessed through that system. Taylor Decl., Ex. D, at 5 (S. Rep. No. 107–174, 2d Sess., at 23 (2002)); Plaintiffs' Statement of Undisputed Material Facts ¶ 11.[2] To correct this, and to ensure that court records be "freely available to the greatest extent possible," the E-Government Act prohibits the imposition of fees that are not "necessary" to "reimburse expenses in providing" access to the records. *Id.;* 28 U.S.C. § 1913 note. The purpose and intent of including this language in the Act was to prevent the judiciary from charging PACER fees that, in the aggregate, exceed the reasonable costs of administering the PACER system.

Despite passage of the Act, PACER fees have only increased since 2002. Those fees now greatly exceed the cost of providing the records, and with the excess being used to fund projects that are entirely unrelated to PACER. As a result, Senator Lieberman, as sponsor of the Act and Chairman of the Senate Homeland Security and Governmental Affairs Committee, twice challenged the imposition by the Administrative Office of the U.S. Courts ("AO") of PACER fees that are "well higher than the cost of dissemination" and urged it to adopt "a payment system that is used only to recover the direct cost of distributing documents via PACER." Taylor Decl., Exs. G & H. The AO, however, continues to charge PACER fees that exceed the costs of providing records and violate the E-Government Act. As Congressman Issa has observed, the courts earn a "tidy profit" from PACER in a way that "circumvent[s] appropriations." *Judicial Transparency and Ethics: Hearing Before the H. Subcomm. on Courts, Intellectual Property and the Internet of*

---

and no person—other than *amicus* or his counsel—contributed money that was intended to fund the preparation or submission of this brief.

[2] In the interest of brevity, Plaintiffs' Statement of Undisputed Material Facts ("Statement") is incorporated by reference herein and citations herein are to the evidence and exhibits submitted therewith.

*the H. Comm. on the Judiciary*, 115th Cong. 2 (Feb. 14, 2017). For these reasons, Senator Lieberman and Congressman Issa urge this Court to grant Plaintiffs' Motion for Summary Judgment As to Liability, and thus vindicate the purpose of the Act and ensure that it is enforced as Congress intended.

## ARGUMENT

**A.     The E-Government Act was intended to prohibit the AO from charging more in PACER fees than is necessary to recoup the cost of operating PACER.**

On its face, the E-Government Act allows the AO to impose PACER fees only "as a charge for services rendered" in providing "electronic access to information" through PACER, and "only to the extent necessary" to "reimburse expenses" incurred in providing that service. 28 U.S.C. § 1913 note.  In other words, the Act prohibits the AO from charging more for PACER than the cost of providing access to records through PACER.  Moreover, the statutory history of the Act and the interpretation of it by its sponsor, Senator Lieberman, confirm that that is exactly what Congress intended to do.

### 1.     Congress' intent in passing the E-Government Act of 2002.

Before PACER, Congress required the judiciary to charge "reasonable fees" to access court records, including those now available through PACER. Judiciary Appropriations Act, 1991, Pub. L. No. 101–515, § 404, 104 Stat. 2129, 2132–33.  Congress also sought to limit those fees to break-even levels. *Id.*; Plaintiffs' Statement of Undisputed Material Facts (Statement) ¶ 10.

During PACER's early years, it became clear that PACER fees exceeded the amount necessary to recover the cost of providing access to those records, and that the AO was using the extra revenue to subsidize other information-technology-related projects. Statement ¶¶ 8-11. Recognizing this, Congress enacted the E-Government Act of 2002 "to encourage the Judicial Conference to move from a fee structure in which electronic docketing systems are supported

3

primarily by user fees to a fee structure in which this information is freely available to the greatest extent possible." Taylor Decl., Ex. D, at 5 (S. Rep. No. 107–174, 2d Sess., at 23 (2002)); *see* Statement ¶ 11.

The E-Government Act of 2002 amended language requiring the imposition of fees to remove the mandatory phrase "shall prescribe" and replace it with language permitting fees to be charged "only to the extent necessary" "to reimburse expenses in providing these services." Pub. L. No. 107–347, § 205(e), 116 Stat. 2899, 2915 (Dec. 17, 2002) (codified at 28 U.S.C. § 1913 note). Congress added this language specifically to prevent the AO from "charg[ing] fees that are higher than the marginal cost of disseminating the information." Statement ¶ 11.

With these critical changes, the full statute reads as follows:

**(a)** The Judicial Conference may, *only to the extent necessary*, prescribe reasonable fees, pursuant to sections 1913, 1914, 1926, 1930, and 1932 of title 28, United States Code, for collection by the courts under those sections *for access to information available through automatic data processing equipment*. These fees may distinguish between classes of persons, and shall provide for exempting persons or classes of persons from the fees, in order to avoid unreasonable burdens and to promote public access to such information. The Director of the [AO], under the direction of the Judicial Conference of the United States, shall prescribe a schedule of reasonable fees for electronic access to information which the Director is required to maintain and make available to the public.

**(b)** The Judicial Conference and the Director shall transmit each schedule of fees prescribed under paragraph (a) to the Congress at least 30 days before the schedule becomes effective. All fees hereafter collected by the Judiciary under paragraph (a) *as a charge for services rendered* shall be deposited as offsetting collections to the Judiciary Automation Fund pursuant to 28 U.S.C. 612(c)(1)(A) *to reimburse expenses incurred in providing these services*.

28 U.S.C. § 1913 note (emphasis added).

### 2. Plaintiffs' reading of the Act is confirmed by its sponsor, Senator Lieberman.

Senator Lieberman's commitment to the E-Government Act and its intended effects, did not end with its passage. For example, in early 2009, Senator Lieberman wrote the AO "to

4

inquire if [it] is complying" with the Act. Taylor Decl., Ex. H, at 1 (Letter from Sen. Lieberman to Hon. Lee Rosenthal (Feb. 27, 2009)); *see* Statement ¶ 19. This letter noted that although the Act was intended "to increase free public access to" judicial records by limiting fees to "the marginal cost of disseminating the information," PACER fees were higher than when the law was passed and that the revenue from them was "still well higher than the cost of dissemination." Taylor Decl., Ex. H, at 1. Invoking the statute's text, the senator then asked the judiciary to explain "whether [it] is only charging 'to the extent necessary' for records using the PACER system." *Id.*

Despite the fact that the E-Government Act was enacted to do the opposite, the AO responded by claiming that Congress had "expand[ed] the permissible use of the fee revenue to pay for other services," which permitted it to use PACER fees to pay non-PACER costs. Taylor Decl., Ex. I, at 2. The sole support that the AO offered for its view was a sentence in a conference report accompanying the 2004 appropriations bill, which said that the Appropriations Committee "expects the fee for the Electronic Public Access program to provide for [ECF] system enhancements and operational costs." Taylor Decl., Ex. I, at 2.

The next year, Senator Lieberman again expressed concerns about the AO's interpretation of the Act in his annual letter to the Appropriations Committee. Taylor Decl., Ex. G, at 2; Statement ¶ 21. He wrote: "despite the technological innovations that should have led to reduced costs in the past eight years," the "cost for these documents has gone up" because the AO uses the fees to fund "initiatives that are unrelated to providing public access via PACER." *Id.* Significantly, Senator Lieberman also reiterated his understanding that, as plaintiffs argue here, this is "against the requirement of the E-Government Act," because it permits "a payment system that is used only to

5

recover the direct cost of distributing documents via PACER." *Id.* Other technology-related projects, he stressed, "should be funded through direct appropriations." *Id.*

Nonetheless, the AO then raised PACER fees again, to $.10 per page, in 2012. It acknowledged that "[f]unds generated by PACER are used to pay the entire cost of the Judiciary's public access program, including telecommunications, replication, and archiving expenses, the [ECF] system, electronic bankruptcy noticing, Violent Crime Control Act Victim Notification, on-line juror services, and courtroom technology." Statement ¶ 22.

Moreover, the apparent backdoor-appropriations scheme is troubling as a constitutional and policy matter.  As Congressman Issa observed, "when it comes to the taxation of the American people, which includes fees; when it comes to transparency, meaning American citizens and others' right to know; when it comes to the ethics of the judiciary, we have an obligation." *Judicial Transparency and Ethics: Hearing Before the H. Subcomm. on Courts, Intellectual Property and the Internet of the H. Comm. on the Judiciary*, 115th Cong. 2 (Feb. 14, 2017).  Congress has made this statute clear, but it is up to the courts to say what the law is—even to the most powerful and democratically devoted holders of government power.

**B.     Since 2002, the AO has continually violated the E-Government Act.**

By the end of 2006, the judiciary's information-technology fund—the account into which PACER fees and other funds are deposited--had a surplus of nearly $150 million. Of that $150 million, at least $32 million was from PACER fees. 28 U.S.C. § 612(c)(1); Statement ¶ 16.  Rather than reduce PACER fees, the AO sought out new ways to spend the excess on things unrelated to PACER, like "courtroom technology allotments for installation, cyclical replacement of equipment, and infrastructure maintenance."  *Id.*; Taylor Decl., Ex. G, at 3 (Letter from Sen. Lieberman to Sens. Durbin and Collins (Mar. 25, 2010)).

From 2010 through 2016, the judiciary collected over $920 million in PACER fees, and the annual fees increased from $102.5 million to $146.4 million. *Id.* ¶¶ 28, 46, 62, 80, 98, 116, 134. PACER revenue grew dramatically during this period despite "technological innovations," including exponentially cheaper data storage, that "should have led to reduced costs." Taylor Decl., Ex. G, at 3; *see also* Lee and Lissner Decl. ¶ 16 (explaining that cost per gigabyte of storage fell by 99.9% during this period).

According to the AO's own records, the costs of operating the "Electronic Public Access Program" declined significantly over this same period, going from nearly $19 million for fiscal year 2010 to less than $1 million for fiscal year 2016. Statement ¶¶ 29 & 135. Even including all other expenses that the AO includes as costs of providing "Public Access Services"—including "[d]evelopment and [i]mplementation costs for CM/ECF," "expenses for CM/ECF servers," "costs associated with the support of the uscourts.gov website," and "[c]osts associated with managing the non-technical portion of the PACER Service Center"—the total annual expenses of providing these services ranged between $12 and $24 million over this period. *Id.* ¶¶ 29, 47–48, 63–64, 81–82, 99–100, 117–18, 135–36; *see* Taylor Decl., Ex. L.

Thus, undisputed evidence submitted by plaintiffs shows that "users of PACER are charged fees that are higher than the marginal cost of disseminating the information." Taylor Decl., Ex. D, at 5 (S. Rep. No. 107–174, 2d Sess., at 23 (2002)); *see* Statement ¶ 11. That evidence also shows that during the class period, the AO has used PACER fees to: (1) upgrade courtroom technology, Statement ¶¶ 31, 50, 66, 84, 102, 120, 138; (2) send notices to creditors in bankruptcy proceedings, *id.* ¶¶ 37, 54, 72, 90, 108, 126, 144; (3) send notices to law-enforcement agencies under the Violent Crime Control Act, *id.* ¶¶ 33, 52, 68, 86, 104, 122, 140; (4) provide online services to jurors, *id.*

¶¶ 70, 88, 106, 124, 142; (5) cover "costs associated with the support of the uscourts.gov website," ¶ 118; and (6) fund a state-court study in Mississippi, *id.* ¶ 35.

Worthy or not, none of these things is part of the marginal cost of making records available through PACER and, as Senator Lieberman has explained, such projects "should be funded through direct appropriations," not by overcharging PACER users. Taylor Decl., Ex. G, at 3.

## CONCLUSION

Under any fair reading of the E-Government Act, the AO is not charging PACER fees only "to the extent necessary" to make records available through that system. For this reason and those set forth above, *amici curiae* Senator Lieberman and Congressman Issa urge this Court to grant the plaintiffs' motion for summary judgment as to liability.

Respectfully submitted,

September 5, 2017

*/s/ Mark I. Bailen*
Mark I. Bailen
BakerHostetler LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, NW
Washington, DC  20036-5304
Telephone:  (202) 861-1500
mbailen@bakerlaw.com

*Of counsel*

Michael K. Farrell
Michael D. Meuti
BakerHostetler LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH  44114-1214
Telephone:  (216) 621-0200
mfarrell@bakerlaw.com
mmeuti@bakerlaw.com

*Counsel for Amicus Curiae Senator Joseph I. Lieberman*