# APPENDIX 12

# In the United States Court of Federal Claims

### No. 16-316 C

**ROSEMARIE ELIZABETH
ANNE HOWELL, ET AL.**

**JUDGMENT**

**v.**

**THE UNITED STATES**

Pursuant to the court's Opinion, filed August 15, 2016, granting defendant's motion to dismiss,

IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that plaintiffs' complaint is dismissed.

Lisa L. Reyes
Acting Clerk of Court

**August 15, 2016**

By: ~~Debra L. Samler~~

Deputy Clerk

NOTE: As to appeal, 60 days from this date, see RCFC 58.1, re number of copies and listing of all plaintiffs.  Filing fee is $505.00.

# APPENDIX 13

# In the United States Court of Federal Claims

```
* * * * * * * * * * * * * * * * *    *
                                     *
ROSEMARIE ELIZABETH ANNE             *
HOWELL, et al.,                      *
                                     *
          Plaintiff(s),              *      No. 16-316C
                                     *      Filed: August 15, 2016
     v.                              *
                                     *
UNITED STATES,                       *
                                     *
          Defendant.                 *
                                     *
* * * * * * * * * * * * * * * * *    *
```

## O R D E R

The court is in receipt of defendant's July 7, 2016 submission and plaintiffs' July 11, 2016 submission. The Clerk's Office did not file the parties' documents because the submissions do not comply with the court's Rules for properly filing submissions with the court. The court **DIRECTS** the Clerk's Office to return defendant's July 7, 2016 submission as **UNFILED**.

With regard to plaintiffs' submission on July 11, 2016, many of the documents received by the court had been previously returned unfiled to plaintiffs on June 28, 2016. The only new documents received on July 11, 2016 were plaintiffs' "MOTION To SEEK LEAVE Of COURT To File PLAINTIFFS' REVISION's," "MEMORANDUM In Support Of MOTION To SEEK LEAVE Of COURT To File PLAINTIFFS' REVISION's," and "AFFIDAVIT In SUPPORT Of MOTION To SEEK LEAVE Of COURT To File PLAINTIFFS' REVISION's." After reviewing the documents submitted by plaintiffs, the court finds that these additional documents are not helpful in the adjudication of the above-captioned case, and/or duplicative, and/or not in conformance with the court's Rules. Accordingly, the court **DIRECTS** the Clerk's Office to return plaintiffs' July 11, 2016 submission as **UNFILED**.

Additionally, because the court has issued its Opinion dismissing the above-captioned case on August 15, 2016, plaintiffs' March 9, 2016 "MOTION To TENDER The DEMAND(S) SATISFIED" is **DISMISSED** as moot.

**IT IS SO ORDERED.**

**MARIAN BLANK HORN**
**Judge**

# APPENDIX 14

# In the United States Court of Federal Claims

### No. 16-316C
### Filed: August 15, 2016

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ROSEMARIE ELIZABETH ANNE
HOWELL, et al.,

               **Plaintiffs,**

v.

UNITED STATES,

               **Defendant.**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

<u>Pro se</u> **Plaintiff; Subject Matter
Jurisdiction; Proper Plaintiffs;
Proper Defendants; Tort Claims;
Criminal Claims; Fraud;
Racketeering.**

**Rosemarie Elizabeth Anne Howell,** <u>pro se</u>, Vancouver, Wash.

**Sosun Bae**, Trial Attorney, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With Sosun Bae was **Benjamin C. Mizer**, Principal Deputy Assistant Attorney General, **Robert E. Kirschman, Jr.**, Director, **Martin F. Hockey, Jr.**, Assistant Director, Civil Division, United States Department of Justice.

## OPINION

<u>HORN, J.</u>

## FINDINGS OF FACT

    <u>Pro se</u> plaintiff Rosemarie Elizabeth Anne Howell filed a complaint with the United States Court of Federal Claims on behalf of herself, her spouse Brian P. Howell, "JANE DOE(S) and JOHN DOE(S) 'bio-logical' Ex-Rel(s) HOWELL(S)," and "'The HOWELL FAMILY-OWNED "Sovereign" CORPORATION', 'As' the Injured / 'Legitimate' / Heir / Owner / True Beneficiary / Person" on March 9, 2016.[1] Construed liberally, in the complaint, plaintiffs allege multiple claims, including fraud, racketeering, domestic terrorism, theft, and murder-for-hire funded by a "SLUSH FUND" of "the CLINTON(S), et al."[2] Although the complaint lists four plaintiff parties, Rosemarie Howell was the only plaintiff to sign the complaint. The complaint, when filed, identified as the defendant:

    AMERICAN INTERNATIONAL GROUP, INC., et al.

---

[1] Capitalization, grammar, punctuation, emphasis, brackets, and other errors quoted in this Opinion are as they appear in plaintiffs' submissions.

[2] Plaintiffs also include language alleging misconduct by the United Parcel Service and the United States Postal Service, although plaintiffs do not assert specific claims against those entities.

("AIG, et al."), *and the community property comprised
thereof,*
"As" the "ultimate" Holding Company / Responsible
Person / Illegal Exactor / Un-Authorized User / Un-
Justly Enriched (Quantum Meruit)

The Clerk's Office filed the complaint as it was received. In subsequent filings, plaintiffs indicated the addition of the United States as another defendant along with AIG.

The complaint also includes allegations against a myriad of "'Co-Conspirator(s)'" other than the United States or AIG, including Prudential Bancorp, General Dynamics, Ford Motor Co., Pfizer, Inc., and State Farm. Although plaintiffs did not specifically identify the United States as the defendant until subsequent submissions to the court, the complaint lists fourteen formal "DEMAND(S)," at least one of which lists "The UNITED STATES of AMERICA, et al." as "Co-Conspirator(s)" to "Fraudulent Case(s) (plural's)." This particular demand, "ITEM (Liability) No. 12," includes allegations against AIG acting in concert with the United States judiciary. Despite the number of alleged co-conspirators to the events described throughout the complaint, plaintiffs make it clear that plaintiffs believe AIG is responsible for every claim:

It is Equitable to note that "in EVERY" Issue / Matter / Other the 'Ultimate'
Responsible Person / Illegal Exactor (U.S. V Amend.) / Un-Authorized User
/ Controller / Manager / Un-Justly Enriched (Quantum Meruit), is . . .
AMERICAN INTERNATIONAL GROUP, INC. et al. ('AIG, et al.').

The complaint consists of forty-six pages of grievances and demands, and an additional sixteen appendices totaling 130 pages, for a cumulative total of 176 pages. While the allegations in the complaint and the subsequent additions and amendments with which Ms. Howell has inundated the court are often confusing and difficult to follow, it appears that plaintiffs' claims stem from two, alleged, distinct events.[3] First, an alleged December 26, 1984 incident when, according to Rosemarie Howell, AIG supposedly ordered a "MURDER-for-HIRE" "'HIT'" on Brian Howell, and, second, from an alleged March 3, 1999 traffic incident in which, according to Rosemarie Howell, her truck was rear-ended. Plaintiff Rosemarie Howell also alleges that AIG has made attempts at her life since 1978-79, and that her parents and grandparents were "wrongfully EXECUTED," but she gives no details as to these events.

---

[3] Since filing the complaint, Ms. Howell has submitted an amazing quantity of paper to the court, much of which has been repetitive or not relevant to the case in this court. As the volume of the submissions increased, the court began to return as unfiled a number of plaintiffs' filings, which were not in conformance with the Rules of the United States Court of Federal Claims, some of which were exact copies of previous filings and some of which were not relevant to the case in this court.

Plaintiffs further allege that the December 26, 1984 "'HIT'" on Brian Howell was ordered by AIG, or was ordered by Mr. Howell's own parents, in order for AIG to steal a trust belonging to Rosemarie Howell that allegedly had matured in 1983. Plaintiffs state:

> "AIG, et al." used this TRUST Account that Legally Belongs to [me] to FUND [my] desired death (beg. 1978-79) executing the December 26, 1984 "HIT" and subsequent Malice Aforethought that proceeded.

Plaintiffs also state:

> the so called CUSTODIAN(S) lack of desire to HAND-OVER said TRUST to the RIGHTFUL OWNER, obviously orchestrated [in concert] with [the IN-LAW(S)] [] a for profit "HIT" (December 26, 1984) which made certain the life-altering injuries and near death of BRIAN P. HOWELL.................and produced............
>
> [A] 'very' FRAUDULENT TRUST AGREEMENT.

Among plaintiffs' many submissions to the court, plaintiffs even include an estimate for dental work dated December 19, 2015, which "was never done for loss of benefits and income; but is a result of the December 26, 1984 'HIT'."

With respect to the 1999 traffic incident in which plaintiff Rosemarie Howell's truck was allegedly rear-ended, Rosemarie Howell claims that significant injuries resulted from the collision, and that she was "inflicted on impact with a trauma induced degenerative spinal cord injury referred to as 'trauma induced syringomyelia.'" According to plaintiffs, the person who rear-ended Ms. Howell's car was insured by Safeco Insurance Company. Safeco Insurance Company allegedly issued a claim number, but plaintiffs allege Safeco Insurance Company did not pay damages. Ms. Howell further alleges that on August 10, 2001, Safeco Insurance Company attempted to murder her, stating that Safeco Insurance Company "inflicted secondary life altering injuries intending my death."

In the complaint, plaintiffs demand immediate payment from AIG, and "pro rata" payments from other named co-conspirators, in the amount of $112,893,809,252.00. Plaintiffs appear to derive the $112,893,809,252.00 figure from a $19,630,391,358.30 demand against alleged co-conspirator Safeco Insurance Company for the 1999 traffic incident, plus the accrual of interest at twelve percent per annum, from January 1999 through August 2013. The $19.63 billion figure is a combination of an insurance claim totaling $19,579,307,200.00, and a demand for litigation expenses totaling $51,084,158.30. Plaintiffs provide no figures to explain how plaintiffs reached the approximately $19.63 billion and $51 million figures for the insurance claim and demand for litigation expenses. Plaintiffs include further demands in the sixteen appendices attached to the complaint, which also include letters sent to the co-conspirators in past years demanding awards of the following:

1. AT& T is to provide unlimited, FREE services to myself, my family, and my proceeding family, for the balance of our lives. The invasion of privacy is illegal.

2. Comcast Corporation is to provide unlimited, FREE services to myself, my family, and proceeding family, for the balance of our lives. The invasion of privacy, the illegal pornographic films, the illegal searching of my home, more than once, is illegal.

3. Ford Motor Company is to reimburse ALL monies paid for the 2006, F-350, write off the remaining balance owed on the 2006, F-350, sign over the title to the 2006, F-350, as well as fix the damages.

4. Ford Motor Company is to provide two (2) NEW, 2008, F-350 trucks loaded, FREE of charge, with lift kits and tires, identical to the 2006, F-350 purchased and damaged beyond repair. Damaging private, personal property is a criminal offense, punishable by law.

5. Ford Motor Company is to provide unlimited, FREE of charge, mechanical services, for the balance of my life, my families lives, the life of any vehicles purchased, procured. From Ford Motor Company. Stalking and endangering lives is a criminal offense, punishable by law.

6. Honeywell / ADT is to provide FREE, unlimited services, for life, life of family.

7. The job Brain was offered at Owens-Illinois, the job the tap, gps and videos, Safeco Corporation, Comcast Corporation, damaged need to be reinstated, immediately, or the dollar amount will be adjusted to reflect damages, pay, benefits, pension, 401k. etc. Brain is an excellent employee and I am fortunate he can work after everything he was through. This was very damaging and unnecessary. Any employer is fortunate to have an employee such as Brian with his caliber of work.

8. Quest is to provide unlimited, free services for life, life of my proceeding family.

9. Dish is to provide unlimited, free services for life, life of my proceeding family.

10. ALL ASSOCIATES ARE TO PROVIDE FREE, Unlimited services for life, life of all proceeding family.

11. SW Washington Medical Center, ALL Associates are to stay away from my property, this property never for sale. I had plans when purchased.

12. Safeco Corporation, is to:

   - Release all copies and originals of my records, bills, personal information, recordings, etc.

4

- ALL videos are to be collected and handed over to my possession.

- Safeco Corporation is not to interfere in my medical care, insurance, or nay of my business for my entire life.

- Safeco Corporation is to adhere to all subpoenas immediately.

13. ALL Safeco Corporation, Associates, Businesses, Friends, Board members, ALL associated businesses are to back off of my financials and correct their theft, illegal attacks and bills, including but not limited to, Columbia Collectors, Washington Mutual Bank, SW Washington Medical Center, etc. Money Laundering is a criminal offense, punishable by law.

14. ALL Safeco Corporation, ALL Business Associates, ALL Board Members are to stay away from myself, my family and my proceeding family, for the length of our lives.

Another words, keep your illegal business deals away from my family.

15. Safeco Corporation and ALL Associated individuals, businesses, partners, board members, physicians, ALL parties, need to collect all the recordings and deliver them.

16. Safeco Corporation is to adhere to all subpoenas immediately.

As noted above, since the complaint was filed on March 9, 2016, plaintiffs have submitted a continuous stream of documents to the court, including many irrelevant and/or incomprehensible submissions. The court notes just a few examples, including: the same day that the complaint was filed, plaintiffs filed a "MOTION To TENDER The DEMAND(S) SATISFIED," requesting "Habeas Relief," "Seizure by Default (Quo Warranto)," and that the demands of a November 2, 2015 submission be fulfilled, although the November 2, 2015 submission was not attached to the March 9, 2016 complaint and was only sent to the court as an appendix on June 3, 2016. Moreover, the submission is virtually identical to the list of demands filed March 9, 2016. On March 28, 2016, defendant submitted a motion to stay the plaintiffs' "MOTION To TENDER The DEMAND(S) SATISFIED." On April 18, 2016, plaintiffs submitted another version of the "COMPLAINT" together with other documents, setting out nearly identical demands, but listing the United States as a defendant in addition to AIG. Next, on April 26, 2016, plaintiffs submitted a letter to the United States Social Security Administration. Then, on May 3, 2016, plaintiffs submitted multiple documents, including: "COMPLAINT," "SUMMONS," "PLAINTIFF'S OBJECTIONS To The COURT's ORDER Of April 21, 2016," "MOTION To JOIN PARTIES," "MEMORANDUM In SUPPORT Of MOTION TO JOIN PARTIES," "AFFIDAVIT In Support Of MOTION To JOIN PARTIES," "-MOTION To JOIN PARTIES - FINDINGS Of FACT & CONCLUSIONS Of LAW," and "PLAINTIFF'S

OBJECTION And RESPONSE To DEFENDANT(S) MOTION TO STAY RESPONSE TO PLAINTIFF'S MOTIONS." Subsequently, on July 11, 2016, plaintiffs filed another "MOTION To TENDER The DEMAND(S) SATISFIED," along with additional documents.

Despite plaintiffs' frequent failure to comply with the court's Rules and procedural requirements, in the beginning the court exercised leniency and filed some of the pro se plaintiffs' submissions until it became beyond burdensome, duplicative, and not helpful to the resolution of the case before the court. As the case proceeded, as noted above, the court began to return submissions which were duplicative, nonconforming with the court's Rules, or not relevant. For example, the referenced November 2, 2015 submission was virtually identical to the list of demands filed March 9, 2016. On May 13, 2016, plaintiffs submitted the same letter to the Social Security Administration that had been submitted on April 26, 2016, and which had previously been returned, unfiled on May 6, 2016.

On May 3, 2016, defendant moved to dismiss plaintiffs' complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC) (2016), for lack of subject matter jurisdiction, and RCFC 12(b)(6) (2016), for failure to state a claim upon which relief may be granted. On June 3, 2016, plaintiffs submitted an "OBJECTION and RESPONSE To DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT," which was filed as plaintiffs' response to defendant's motion to dismiss on June 28, 2016. Along with this response, plaintiffs again submitted a revised list of "DEMAND(S) (plural's)," which was nearly identical to the complaint and to the two subsequent attempted, revised complaints, that had each been returned to plaintiff unfiled, as well as a new "MOTION To TENDER THE DEMAND(S) SATISFIED," and multiple memoranda and affidavits in support of that motion, which also were returned unfiled to plaintiffs.

## DISCUSSION

The court recognizes that plaintiffs are proceeding pro se, without the assistance of counsel. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, pro se plaintiffs are entitled to liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524, aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied 135 S. Ct. 1909 (2015). "However, '"[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his [or her] pleading."'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010)

(citing <u>Hughes v. Rowe</u>, 449 U.S. at 9 and <u>Taylor v. United States</u>, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), <u>reh'g and reh'g en banc denied</u> (Fed. Cir. 2002)); <u>see also Shelkofsky v. United States</u>, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting <u>Henke v. United States</u>, 60 F.3d 795, 799 (Fed. Cir. 1995)); <u>Harris v. United States</u>, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting <u>Minehan v. United States</u>, 75 Fed. Cl. at 253)).

As threshold issues, the court considers whether the <u>pro se</u> representative, Rosemarie Howell, may properly represent all the plaintiffs listed in the complaint. In the complaint, five plaintiffs are named, including Rosemarie Howell, Brian Howell, "JANE DOE(S) and JOHN DOE(S) 'bio-logical' Ex-Rel(s) HOWELL(s)," and "'The HOWELL FAMILY-OWNED 'Sovereign' CORPORATION.'" As noted above, the only plaintiff to sign the complaint and to submit filings has been Rosemarie Howell. As such, Rosemarie Howell appears to be attempting to serve as a <u>pro se</u> representative for all named plaintiffs.

According to RCFC 83.1(a)(3) an "individual who is not an attorney may represent oneself or a member of one's immediate family, but may not represent a corporation, an entity, or any other person in any other proceeding before this court." RCFC 83.1(a)(3) (2016); <u>see also Talasila, Inc. v. United States</u>, 240 F.3d 1064, 1066 (Fed. Cir.) ("[Plaintiff] must be represented by counsel in order to pursue its claim against the United States in the Court of Federal Claims."), <u>reh'g and reh'g en banc denied</u> (Fed. Cir. 2001); <u>Finast Metal Prods., Inc. v. United States</u>, 12 Cl. Ct. 759, 761 (1987) ("[A] corporate 'person' can no more be represented in court by a non-lawyer—even its own president and sole shareholder—than can any individual."); <u>Affourtit v. United States</u>, 79 Fed. Cl. 776, 779 (2006) ("A corporation appearing before the United States Court of Federal Claims . . . must be represented by an attorney."). This rule applies despite possible financial hardship imposed on the plaintiffs. <u>See Richdel, Inc. v. Sunspool Corp.</u>, 699 F.2d 1366, 1366 (Fed. Cir. 1983) (holding that the plaintiff's "substantial financial hardship" did not waive the rule requiring corporations to be represented by counsel); <u>see also Balbach v. United States</u>, 119 Fed. Cl. 681, 683 (2015) ("A <i>pro se</i> plaintiff cannot represent a corporation . . . The Court cannot waive this rule, even for cases of severe financial hardship." (citing <u>Affourtit v. United States</u>, 79 Fed. Cl. at 780)).

Although the complaint names "'The HOWELL FAMILY-OWNED 'Sovereign' CORPORATION,'" as a plaintiff in this case, the complaint does not provide any additional information about this corporation. Specifically, plaintiffs' submissions to this court do not describe the corporation and do not explain how or why Rosemarie Howell should be permitted to represent the corporation in this lawsuit. Therefore, to the extent Ms. Howell is attempting to represent "'The HOWELL FAMILY-OWNED 'Sovereign' CORPORATION,'" the complaint must be dismissed because, pursuant to RCFC 83.1(a)(3), a <u>pro se</u> plaintiff cannot represent a corporation.

Also named as a plaintiff in the complaint is Brian Howell. Brian Howell is identified as the spouse of Ms. Howell. In plaintiffs' March 9, 2016 filing of "FINDINGS OF FACT & CONCLUSIONS OF LAW," plaintiff Rosemarie Howell states "I was married to BRIAN PAUL HOWELL on OCTOBER 25, 1980." Plaintiff Rosemarie Howell also refers to Brian Howell as her husband in an e-mail, which was included in the filings submitted to the court, asking for Brian Howell's pension information. This court has held that a spouse is considered immediate family when considering the ability of a pro se litigant to represent the spouse. See Kogan v. United States, 107 Fed. Cl. 707, 708-09 (2012) (referring to an order granting defendant's wife, who is not an attorney, the ability to represent defendant pursuant to RCFC 83.1(a)(3)); see also Black's Law Dictionary 720 (10th ed. 2014) (defining immediate family as including a person's spouse); Chief War Eagle Family Family Ass'n & Treaty of 1837 & 1917 Reinstatement v. United States, 81 Fed. Cl. 234, 234 (2007) (defining "immediate family members" as a person's parents, spouse, children, and siblings) (citing Black's Law Dictionary 638 (8th ed. 2004)). Assuming for the sake of the motion to dismiss that Brian Howell is currently the spouse of Rosemarie Howell, he is a member of Rosemarie Howell's immediate family and she may properly represent Brian Howell as a pro se representative, assuming they remain married.

In addition to Brian Howell, the complaint also names unidentified "JANE DOE(S) and JOHN DOE(S) 'bio-logical' Ex-Rel(s) HOWELL(S)" as plaintiffs. The relationship of Ms. Howell to the "JANE DOE(S) and JOHN DOE(S) 'bio-logical' Ex-Rel(s) HOWELL(S)," however, is unclear in the complaint, and this court cannot ascertain whether Jane and John Doe are part of Ms. Howell's immediate family. In the complaint, plaintiff Rosemarie Howell describes her immediate family in different ways, and, at one point, she includes her five children, their spouses, and grandchildren, but the complaint does not provide sufficient identifying information.[4] The United States Court of Appeals for the Federal Circuit has not clarified whether "immediate family" relates to multi-generational spans or to the spouses of children. Additionally, some judges on this court have disagreed as to particular interpretations of "immediate family," but generally have maintained a narrow construction. See Chief War Eagle Family Ass'n & Treaty of 1837 & 1917 Reinstatement v. United States, 81 Fed. Cl. at 234 (declining to include grandparents in the definition of "immediate family"). Given that Jane and John Doe have not been identified to the court and the court cannot determine whether a familial relationship exists between plaintiff Rosemarie Howell and Jane and John Doe, Ms. Howell cannot represent these unidentified individuals as a pro se representative.

---

[4] Under section "ITEM (Liability) No. 4" in the list of demands, and under a section titled "ROSE A. HOWELL, and EX-REL's HOWELL(S)" plaintiffs claim, "'AIG, et al.' cannot pay for the injuries that I have sustained in "one Life Time"; or, the TRAUMA that [my] CHILDREN have endured; or, the immense losses that have so "liberally" been inflicted; or, the protracted HELL that 'is' / has been politically imposed." The complaint also states: "Since my parent's and grand-parent's have been wrongfully EXECUTED (28 U.S.C. §2674 ¶2) 'OUR IMMEDIATE FAMILY' includes: Myself (Rosemarie a/k/a Rose), Brian, [our] Five Children and their Spouses, and [our] grandchildren and [our] preceding family members thereof."

Plaintiffs also filed their lawsuit in this court against an improper defendant, "AMERICAN INTERNATIONAL GROUP, INC., et al." Pursuant to RCFC 10, all claims in the United States Court of Federal Claims must have "the United States designated as the party defendant." RCFC 10(a) (2016); see also 28 U.S.C § 1491(a)(1) (2012). The United States Supreme Court has indicated, for suits filed in the United States Court of Federal Claims and its predecessors, "if the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court." United States v. Sherwood, 312 U.S. 584, 588 (1941) (citation omitted); see also Kurt v. United States, 103 Fed. Cl. 384, 386 (2012). Stated differently, "the only proper defendant for any matter before this court is the United States, not its officers, nor any other individual." Stephenson v. United States, 58 Fed. Cl. 186, 190 (2003) (emphasis in original); see also United States v. Sherwood, 312 U.S. at 588; May v. United States, 80 Fed. Cl. 442, 444 ("Jurisdiction, then, is limited to suits against the United States."), aff'd, 293 F. App'x 775 (Fed. Cir. 2008). Accordingly, this court cannot consider plaintiffs' claims against any defendant other than the United States.

Although the only proper defendant in this court is the United States, plaintiffs consistently identify AIG as the defendant and, in plaintiffs' "OBJECTION and RESPONSE To DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT," plaintiffs attempt to further justify naming AIG as a defendant. Plaintiffs argue that "[t]he Court may at any time, on motion or on its own, on just terms add or drop a party," and that "[t]he Court has the authority to dismiss non-essential parties to preserve jurisdiction." Plaintiffs cite Grupo Dataflux v. Atlas Global Grp., L.P., 541 U.S. 567 (2004) to support their argument. Plaintiffs fail to note that this decision refers to the Federal Rules of Civil Procedure (FRCP), not to the Rules of the United States Court of Federal Claims. Id. at 572-73. Further, Grupo Dataflux v. Atlas Global Grp., L.P. clarifies that the rule permitting the court to add a defendant applies to the United States District Courts. See id. at 572-73 ("it is well settled that [FRCP] 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped.") (emphasis added).

The RCFC, not the FRCP, govern the actions of the United States Court of Federal Claims. In support of their argument, plaintiffs cite FRCP 21, which states that "the court may at any time, on just terms, add or drop a party." Fed. R. Civ. Pro. 21 (2016). While the corresponding RCFC 21 uses identical text, RCFC 20(a), "Persons Who May Join or Be Joined," restricts the eligible parties in this court. See RCFC 20(a) (2016); RCFC 21. RCFC 20(a)(1) specifies the different types of plaintiffs that may be joined. RCFC 20(a)(1). However, RCFC 20(a)(2), which pertains to the type of defendants that may be joined, simply says "[Not Used]." RCFC 20(a)(2) (brackets in original). Thus, the language of RCFC 20(a) makes it clear that the United States is the only proper defendant in this court, and that this court does not have the authority to add defendants other than the United States. Therefore, as explained above, AIG may not be identified as a defendant in this court, neither in the complaint, nor as an added party. Further, to the extent that plaintiffs attempt to allege claims against Pfizer, Ford, or any other defendant or "Co-Conspirator(s)" that is not the United States, this court does not have jurisdiction to adjudicate those claims. Accordingly, all of plaintiffs' claims against defendants other than the United States are dismissed for lack of subject matter jurisdiction.

Separate from the defects in plaintiffs' complaint concerning the proper plaintiffs and proper defendant in this court, defendant has moved to dismiss plaintiffs' complaint for lack of subject matter jurisdiction. The Tucker Act, 28 U.S.C. § 1491, grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289–90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 134 S. Ct. 259 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); Golden v. United States, 118 Fed. Cl. 764, 768 (2014). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007.

Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401-02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ontario Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. 392, 400 (1976)); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."). "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); Peoples v. United States, 87 Fed. Cl. 553, 565–66 (2009

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. at 94 ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); Fid. & Guar. Ins. Underwriters, Inc. v. United States, 805 F.3d 1082, 1084 (Fed. Cir. 2015); Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any

defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2016); Fed. R. Civ. P. 8(a)(1), (2) (2016); see also Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57, 570 (2007)).  To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)); Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981) ("[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss."), aff'd, 460 U.S. 325 (1983). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

Defendant moves to dismiss the claims asserted in plaintiffs' complaint as outside of the court's subject matter jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1), or for failure to state a claim upon which relief may be granted, RCFC 12(b)(6). In plaintiffs' "OBJECTION and RESPONSE To DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT," plaintiffs argue that a court may resolve issues without addressing subject matter jurisdiction. Plaintiffs claim that, "[t]he Supreme Court has recognized two 'threshold grounds' on which a court can resolve a case without addressing subject matter jurisdiction: (1) personal jurisdiction and (2) forum non conveniens." (internal citations omitted). First, plaintiffs cite Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574 (1999), to argue that, if a court finds personal jurisdiction, the court need not address subject matter jurisdiction. To the contrary, "[f]ederal courts may hear only those cases over which they have subject matter jurisdiction." See Semiconductor Energy Lab. Co., Ltd. v. Nagata, 706 F.3d 1365, 1368 (Fed. Cir. 2013). Subject matter jurisdiction must be present for the court to rule on a case, and a case must be dismissed if subject matter jurisdiction is lacking. See RCFC 12(b)(1)-(2); see also Semiconductor Energy Lab. Co., Ltd. v. Nagata, 706 F.3d at 1368. Plaintiffs misread the Supreme Court's opinion in Ruhrgas to indicate that if a court has personal jurisdiction, it need not have subject matter jurisdiction.

Plaintiffs also argue that forum non conveniens allows a court to hear a claim without subject matter jurisdiction. Plaintiffs also fundamentally misunderstand the doctrine of forum non conveniens, which allows a United States District Court to dismiss a case

"when an alternative forum has jurisdiction to hear [the] case, and. . . trial in the chosen forum would establish. . . oppressiveness and vexation to a defendant. . . out of all proportion to plaintiff's convenience, or . . . the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems."

Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 429 (2007) (quoting American Dredging Co. v. Miller, 510 U.S. 443, 447-48 (1994) (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981); Koster v. (American) Lumbermens Mut. Casualty Co., 330 U.S. 518, 524 (1947))) (ellipses and modifications in original). Contrary to plaintiffs' argument, forum non conveniens is not a method of allowing jurisdiction when subject matter jurisdiction does not exist, rather, it is a method of declining jurisdiction when jurisdiction may exist, but when another court is a more appropriate and convenient forum. See id.; see also Halo Creative & Design Ltd. v. Comptoir Des Indes Inc., 816 F.3d 1366, 1369 (Fed. Cir. 2016) ("*Forum non conveniens* . . . allows a federal district court to dismiss a suit over which it would normally have jurisdiction if trial in a foreign forum would 'best serve the convenience of the parties and the ends of justice.'"). The Supreme Court has explained that a District Court may dispose of an action pursuant to the doctrine of forum non conveniens without first determining whether the court has subject matter jurisdiction to hear the case because a forum non conveniens dismissal is a not based on the merits of a case. See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. at 432. The subject matter jurisdiction requirement, however, is not overridden by the doctrine of forum non conveniens.

In the complaint, plaintiffs appear to allege claims under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. § 1001 (2016), which was enacted to "protect interstate commerce and the interests of participants in employee benefit plans." 29 U.S.C. § 10001(b). Plaintiff Brian Howell allegedly holds pensions within the ERISA framework with General Dynamics, Sulzer Pumps, and Continental Casualty Co., among others, for which plaintiffs appear to be seeking payment. Plaintiffs appear to argue that this court has jurisdiction to hear ERISA claims because ERISA pensions allegedly represent government contracts. Plaintiffs state "***ERISA claims*** are contracts. 28 U.S.C. §1491 (a)(1). In this case government contracts that are void ab intio." Ostensibly, plaintiffs ask that the United States and AIG pay these pensions, although the listed ERISA-governed pensions, according to the complaint, are held by General Dynamics, Sulzer Pumps, and Continental Casualty Co., among others. The ERISA statute, however, clearly assigns exclusive jurisdiction for claims under ERISA to the United States District Courts, and, in certain circumstances, it grants concurrent jurisdiction to District Courts and to state courts. See 29 U.S.C. § 1132(e)(1), (f), (k) (2012) ("the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by the participant, beneficiary, fiduciary. . . . State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.") Moreover, plaintiffs' argument fails on the plain language of 28 U.S.C. § 1501, which states, "[t]he United States Court of Federal Claims shall not have jurisdiction of any claim for a pension." 28 U.S.C. § 1501 (2012). Any claims asking the federal government to intervene and force private employers to pay the pensions

allegedly due to plaintiffs, or for the government to pay the pensions in place of the private employers, lie outside the subject matter jurisdiction of this court and are dismissed.

Plaintiffs further appear to make allegations concerning social security disability benefits. From the confusing language in the complaint, it seems that plaintiffs do not demand that the United States pay social security benefits. To the contrary, the complaint apparently suggests that the United States has been paying plaintiffs for social security disability benefits, and plaintiffs believe AIG should reimburse the United States for those payments:

> **"AIG, et al." is DEMANDED to RE-IMBURSE** "the Government, Social Security Department" for **"all" past paid Social Security Disability Payments** made (4/28/1999-present) which [must be] Funded *"out-of AIG, et al. legitimately owned Asset's"* – "AIG, et al." is the cause in fact of said Disability *(i.e.,* Life-Altering Injuries) and therefore, Responsible As A Matter of LAW.

Regardless, plaintiffs may not bring a social security claim in this court. The Court of Federal Claims does not have jurisdiction over claims arising under the Social Security Act. See Addams-More v. United States, 81 Fed. Cl. 312, 315, aff'd, 296 F. App'x 45 (Fed. Cir. 2008) (citing Marcus v. United States, 909 F.2d 1470, 1471 (Fed. Cir. 1990) (holding "that the Claims Court has no jurisdiction under the Tucker Act . . . over claims to social security benefits.")). The statute at 42 U.S.C. § 405(g) (2012) instructs that any claims for review of social security benefits payment "shall be brought in the district court[s]," and 42 U.S.C. § 405(h) further specifies that no decision "shall be reviewed by any person, tribunal, or governmental agency except as herein provided." 42 U.S.C. § 405(g), (h). Accordingly, any claim that plaintiffs intended to bring against the United States regarding social security benefits are dismissed for lack of subject matter jurisdiction.

Defendant also has argued that this court lacks subject matter jurisdiction to consider plaintiffs' allegations that sound in tort or criminal law. Plaintiffs make multiple allegations against AIG, while also implicating the United States, including fraud, "Felony Theft [in concert] with 'AIG, et al.,'" and "RICO Enterprising." Plaintiffs demand that AIG "**RESTORE** [our] Reputations" and that AIG **VACATE, REVERSE, and DISMISS** 'all' Judgments / Sentences / charges / other [] in 'every' Case . . . ." To the extent that plaintiffs' complaint asserts claims of conspiracy, misrepresentation, theft, including identity theft, fraud, and racketeering, those claims sound in tort or allege criminal acts.

The Tucker Act expressly excludes tort claims from the jurisdiction of the United States Court of Federal Claims. See 28 U.S.C. § 1491(a) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.") (emphasis added); see also Keene Corp. v. United States, 508 U.S. 200, 214 (1993); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343; Alves v. United States,

133 F.3d 1454, 1459 (Fed. Cir. 1998); <u>Brown v. United States</u>, 105 F.3d 621, 623 (Fed. Cir.) ("Because Brown and Darnell's complaints for 'fraudulent assessment[s]' are grounded upon fraud, which is a tort, the court lacks jurisdiction over those claims."), <u>reh'g denied</u> (Fed. Cir. 1997); <u>Golden Pac. Bancorp v. United States</u>, 15 F.3d 1066, 1070 n.8 (Fed. Cir.), <u>reh'g denied</u>, <u>en banc suggestion declined</u> (Fed. Cir.), <u>cert. denied</u>, 513 U.S. 961 (1994); <u>Hampel v. United States</u>, 97 Fed. Cl. 235, 238, <u>aff'd</u>, 429 F. App'x 995 (Fed. Cir. 2011), <u>cert. denied</u>, 132 S. Ct. 1105 (2012); <u>Jumah v. United States</u>, 90 Fed. Cl. 603, 607 (2009) ("[I]t is well-established that the Court of Federal Claims does not have jurisdiction over tort claims. Here, Mr. Jumah seeks damages for '[n]eglect, [m]isrepresentation, [f]alse [i]mprisonment, [c]onspiracy, [i]ntentional [i]nfliction of emotional [d]istress, [i]nvasion of [p]rivacy, [n]egligence and [t]respass and [p]unitive [d]amages.' These are all claims sounding in tort." (internal citation omitted; all brackets in original)), <u>aff'd</u>, 385 F. App'x 987 (Fed. Cir. 2010); <u>Woodson v. United States</u>, 89 Fed. Cl. 640, 650 (2009); <u>Fullard v. United States</u>, 77 Fed. Cl. 226, 230 (2007) ("This court lacks jurisdiction over plaintiff's conspiracy claim because the Tucker Act specifically states that the Court of Federal Claims does not have jurisdiction over claims 'sounding in tort.'"); <u>Edelmann v. United States</u>, 76 Fed. Cl. 376, 379–80 (2007) ("This Court 'does not have jurisdiction over claims that defendant engaged in negligent, fraudulent, or other wrongful conduct when discharging its official duties' . . . [and] Plaintiffs' claims of fraud, misrepresentation, slander, perjury, harassment, intimidation, coercion, theft, and defamation, and their claims that the Government deprived Ms. Edelmann of her right to a fair trial, are tort claims." (quoting <u>Cottrell v. United States</u>, 42 Fed. Cl. 144, 149 (1998)); <u>McCullough v. United States</u>, 76 Fed. Cl. 1, 3 (2006), <u>appeal dismissed</u>, 236 F. App'x 615 (Fed. Cir.), <u>reh'g denied</u> (Fed. Cir.), <u>cert. denied</u>, 552 U.S. 1050 (2007); <u>Agee v. United States</u>, 72 Fed. Cl. 284, 290 (2006); <u>Zhengxing v. United States</u>, 71 Fed. Cl. 732, 739, <u>aff'd</u>, 204 F. App'x 885 (Fed. Cir.), <u>reh'g denied</u> (Fed. Cir. 2006). Plaintiffs' claims sounding in tort, such as misrepresentation and conspiracy, must be dismissed for lack of subject matter jurisdiction.

To the extent that plaintiffs are alleging acts of criminal conduct, such as criminal conspiracy, identity theft, criminal fraud, and racketeering, this court also lacks jurisdiction to adjudicate those claims. <u>See Joshua v. United States</u>, 17 F.3d 378, 379 (Fed. Cir. 1994); <u>see also Cooper v. United States</u>, 104 Fed. Cl. 306, 312 (2012) (holding that "this court does not have jurisdiction over [plaintiff's] claims because the court may review neither criminal matters, nor the decisions of district courts.") (internal citations omitted); <u>Mendes v. United States</u>, 88 Fed. Cl. 759, 762, <u>appeal dismissed</u>, 375 F. App'x 4 (Fed. Cir. 2009); <u>Hufford v. United States</u>, 87 Fed. Cl. 696, 702 (2009) (holding that the United States Court of Federal Claims lacked jurisdiction over claims arising from the violation of a criminal statute); <u>Matthews v. United States</u>, 72 Fed. Cl. 274, 282 (finding that the court lacked jurisdiction to consider plaintiff's criminal claims), <u>recons. denied</u>, 73 Fed. Cl. 524 (2006); <u>McCullough v. United States</u>, 76 Fed. Cl. at 4 (finding that the court lacked jurisdiction to consider plaintiff's criminal claims). Accordingly, plaintiffs' allegations asserting criminal acts, such as fraud, racketeering, identity theft, and "Felony Theft" must be dismissed for lack of subject matter jurisdiction.

Furthermore, plaintiffs' claims appear to try to implicate the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2012), but it is unclear exactly how. Plaintiffs refer to:

*In Re (Government)*:
APPEAL(OIP) No. 2015-04715
And
""FREEDOM OF INFORMATION ACT APPEAL"" (OSG) No. 2015-119560.

Plaintiffs' claim lists a ""FOIA' APPEAL" and an Office of Information Policy (OIP) case number. Regardless, the Court of Federal Claims has no jurisdiction to adjudicate FOIA claims, as Congress explicitly vested exclusive jurisdiction regarding those matters in the United States District Courts. See 5 U.S.C. § 552(a)(4)(B); see also Gaines v. United States, 226 Ct. Cl. 691, 692 (1981) ("Congress has vested jurisdiction not in [the United States Court of Federal Claims] but in the district courts over Freedom of Information and Privacy Act claims."). Therefore, any FOIA appeals may not be the basis for filing a claim in this court, and must be dismissed for lack of subject matter jurisdiction.

In "PLAINTIFF'S OBJECTION and RESPONSE To DEFENDANT'S MOTION TO DISMISS" plaintiffs also appear to allege "contracts-based claims." Although plaintiffs correctly indicate that this court has subject matter jurisdiction to consider breach of contract claims against the United States, plaintiffs do not explain their "contracts-based claims" or set forth any facts to support a breach of contract claim. Specifically, plaintiffs do not appear to even allege that a contract exists between plaintiffs and the United States. As a result, plaintiffs have failed to state a claim for relief with regard to any alleged contract claims.[5]

Further, in plaintiffs' "OBJECTION and RESPONSE To DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT," plaintiffs, for the first time, raise constitutional clause violations against the United States. Plaintiffs allege violations of the Takings Clause, Due Process Clause, Privileges and Immunities Clause, Cruel and Unusual Punishment Clause, Equal Protection Clause, Privacy Clause, and Commerce Clause.

Regarding plaintiffs' claims alleging a violation of due process, the United States Court of Appeals for the Federal Circuit has held that this court does not possess jurisdiction to consider claims arising under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. See Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (citing LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995)) (no jurisdiction over a due process violation under the Fifth and Fourteenth Amendments); see also Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.) ("The law is well settled that the Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act." (citing LeBlanc v. United States, 50 F.3d at 1028), cert. denied, 134 S. Ct. 259 (2013)); In re United States, 463 F.3d 1328, 1335 n.5 (Fed. Cir.) ("[B]ecause the Due Process Clause is not money-mandating, it may not provide the

---

[5] To the extent plaintiffs allege a violation of the Contract Clause of the United States Constitution, this court does not have jurisdiction to entertain such a claim because the Contract Clause "is a prohibition directed at the states, and not the federal government." McNeil v. United States, 78 Fed. Cl. 211, 225 (2007), aff'd, 293 F. App'x 758 (Fed. Cir. 2008); see also U.S. Const. art. I, § 10, cl. 1.

basis for jurisdiction under the Tucker Act."), <u>reh'g</u> and <u>reh'g</u> en <u>banc</u> <u>denied</u> (Fed. Cir. 2006), <u>cert</u>. <u>denied</u> <u>sub</u> <u>nom</u>. <u>Scholl v. United States</u>, 552 U.S. 940 (2007). The court also does not have subject matter jurisdiction for claims brought under the Privileges and Immunities Clause of the United States Constitution. <u>McCullough v. United States</u>, 76 Fed. Cl. at 4 ("[N]either the Fifth Amendment Due Process Clause. . . nor the Privileges and Immunities Clause provides a basis for jurisdiction in this court because the Fifth Amendment is not a source that mandates the payment of money to plaintiff.").

Furthermore, this court does not have jurisdiction over claims brought under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution. See <u>Tasby v. United States</u>, 91 Fed. Cl. 344, 346 (2010) ("[T]he Eighth Amendment prohibitions of excessive bail or fines, as well as cruel and unusual punishment, are not money-mandating.") (citation omitted)); <u>Hernandez v. United States</u>, 93 Fed. Cl. 193, 198 (2010) ("Plaintiff avers that his rights under the First, Fourth, Fifth, Sixth, Seventh, Eight, Ninth, Fourteenth, and Fifteenth Amendments were violated. None of these claims allege a violation for which money damages are mandated."); <u>Trafny v. United States</u>, 503 F.3d 1339, 1340 (Fed. Cir. 2007) ("The Court of Federal Claims does not have jurisdiction over claims arising under the Eighth Amendment, as the Eighth Amendment 'is not a money-mandating provision.'") (citations omitted).

In addition, this court does not have subject matter jurisdiction over claims grounded in the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. See <u>LeBlanc v. United States</u>, 50 F.3d at 1028 (indicating that a claim under the Equal Protection Clause of the Fourteenth Amendment is not sufficient for jurisdiction in the United States Court of Federal Claims because it does not "mandate payment of money by the government." (citing <u>Carruth v. United States</u>, 224 Ct. Cl. 422, 445 (1980))); <u>Potter v. United States</u>, 108 Fed. Cl. 544, 548 (2013) (finding that "this Court lacks jurisdiction over violations under the Due Process Clauses of the Fifth and Fourteenth Amendments . . . because they do not mandate payment of money by the government.") (internal citations omitted) (modifications in original); <u>Warren v. United States</u>, 106 Fed. Cl. 507, 511 (2012) (holding that, since the "Fourteenth Amendment guarantee of equal protection" is not money mandating, "[a]ccordingly, the court lacks jurisdiction over these claims.").

Likewise, this court does not have subject matter jurisdiction over claims rooted in, as plaintiffs frame it, the "*'Privacy Clause' of the U.S. Fourth Amendment*)," as the court has no jurisdiction over any claim based on the Fourth Amendment. See <u>LaChance v. United States</u>, 15 Cl. Ct. 127, 130 (1988) ("[T]he fourth amendment does not mandate the payment of money by the United States." (citing <u>Shaw v. United States</u>, 8 Cl. Ct. 796, 800 (1985))); <u>Roberson v. United States</u>, 115 Fed. Cl. 234, 240 ("The Fourth Amendment is not money-mandating." (citing <u>Brown v. United States</u>, 105 F.3d 621, 623 (Fed. Cir. 1997))), <u>appeal dismissed</u>, 556 F. App'x 966 (Fed. Cir. 2014); <u>Haka v. United States</u>, 107 Fed. Cl. 111, 113-14 (2012); <u>Kam-Almaz v. United States</u>, 96 Fed. Cl. 84, 89 (2011) ("[T]his Court does not have jurisdiction to hear claims contesting the lawfulness of a search and seizure because due process and Fourth Amendment claims are reserved to the District Court." (citing <u>LeBlanc v. United States</u>, 50 F.3d 1025, 1028 (Fed. Cir. 1995))),

17

aff'd, 682 F.3d 1364 (Fed. Cir. 2012). Accordingly, all of the plaintiffs' above-identified constitutional claims are dismissed for lack of subject matter jurisdiction.

Plaintiffs also appear to try to allege a violation of the Takings Clause of the Fifth Amendment to the United States Constitution, but plaintiffs demonstrate a fundamental misunderstanding of the Takings Clause by invoking it against private entities and individual persons. For instance, plaintiffs state, "'AIG, et al.' took and kept on taking (Illegally Exacting what does not belong thereto (U.S. V Amend.))."

Plaintiffs also state:

> "AIG, et al." RICO Enterprising by and through *consecutive politically motivated* "HIT(S)" for the premeditated intent / purpose of ILLEGALLY EXACTING (U.S. V Amend.) """"Sovereign Wealth(s) / Sovereign(s)" that "are" the Legal, Vested, Rightful, "Legitimate" Birthright / Heritage of ROSEMARIE E. A. (nee' VIKARA) HOWELL"""" Manifested Damages of an Inconceivable Degree;

> NONETHELESS, "AIG, et al." is Legally Responsible and [must be] held Accountable **As A Matter of LAW**.

To the extent plaintiffs allege any violation of the Fifth Amendment Taking Clause by the United States, plaintiffs appear to be arguing a conspiracy between the United States and AIG, as follows:

> Plaintiffs' *"demands"* are well-pled [vested claim's] that the UNITED STATES [in concert] with AIG, et al. (defendant's and co-defendant's) *"un-authorized" TAKING* (citing the *"Takings Clause"* of the U.S. V Amend) has [made certain] when violating an 'infant child' (*i.e.,* the plaintiff) and kept on truckin' with the "intent" of Defrauding the plaintiff out-of [her] Inheritance.

Although plaintiffs try to assert a claim under the Takings Clause, which, if properly filed, could fall within the purview of this court's jurisdiction, plaintiffs do not even identify a property interest owned by plaintiffs that was allegedly taken by the United States, which is a necessary part of a valid Fifth Amendment Takings claim. The United States Court of Appeals for the Federal Circuit has established a two-part test to determine whether government actions amount to a taking of private property under the Fifth Amendment. See Klamath Irr. Dist. v. United States, 635 F.3d 505, 511 (Fed. Cir. 2011); Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1372 (Fed. Cir.) (citing M & J Coal Co. v. United States, 47 F.3d 1148, 1153-54 (Fed. Cir.), cert. denied, 516 U.S. 808 (1995)), reh'g denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1139 (2005). A court first determines whether a plaintiff possesses a cognizable property interest in the subject of the alleged takings. Then, the court must determine whether the government action is a "'compensable taking of that property interest.'" Huntleigh USA Corp v. United States, 525 F.3d 1370, 1377 (Fed. Cir.) (quoting Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d at 1372), cert. denied, 555 U.S. 1045 (2008).

To establish a taking, a plaintiff must have a legally cognizable property interest, such as the right of possession, use, or disposal of the property. See Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 435 (1982) (citing United States v. Gen. Motors Corp., 323 U.S. 373 (1945)); CRV Enters., Inc. v. United States, 626 F.3d 1241, 1249 (Fed. Cir. 2010), cert. denied, 563 U.S. 989 (2011); Karuk Tribe of Cal. v. Ammon, 209 F.3d 1366, 1374-75 (Fed. Cir.), reh'g denied and en banc suggestion denied (Fed. Cir. 2000), cert. denied, 532 U.S. 941 (2001). "'It is axiomatic that only persons with a valid property interest at the time of the taking are entitled to compensation.'" Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372 (quoting Wyatt v. United States, 271 F.3d 1090, 1096 (Fed. Cir. 2001), cert. denied, 353 U.S. 1077 (2002) and citing Cavin v. United States, 956 F.2d 1131, 1134 (Fed. Cir. 1992)). Therefore, "[i]f the claimant fails to demonstrate the existence of a legally cognizable property interest, the courts [sic] task is at an end." Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372 (citing Maritrans Inc. v. United States, 342 F.3d 1344, 1352 (Fed. Cir. 2003) and M & J Coal Co. v. United States, 47 F.3d at 1154). The court does not address the second step "without first identifying a cognizable property interest." Air Pegasus of D.C., Inc. v. United States, 424 F.3d 1206, 1213 (Fed. Cir.) (citing Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1381 and Conti v. United States, 291 F.3d 1334, 1340 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2002), cert. denied, 537 U.S. 1112 (2003)), reh'g denied and reh'g en banc denied (Fed. Cir. 2005). Only if there is to be a next step, "'after having identified a valid property interest, the court must determine whether the governmental action at issue amounted to a compensable taking of that property interest.'" Huntleigh USA Corp. v. United States, 525 F.3d at 1378 (quoting Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372).

Here, plaintiffs have failed to allege or demonstrate a legally cognizable property interest and make only unsupported, bald allegations which are insufficient to support plaintiffs' takings claim. As noted above, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." Briscoe v. LaHue, 663 F.2d at 723; see also Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998) (noting, in discussion of motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), that "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim"). In order to survive a motion to dismiss for failure to state a claim, the factual allegations set forth in the complaint "must be enough to raise [plaintiff's] right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. at 555 (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1216, p.235-36 (3d ed. 2004). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. at 557). Because plaintiffs offer only vague and conclusory allegations that trusts and property were stolen by AIG, not the United States, without even demonstrating a legally cognizable property interest, the court finds that plaintiffs have failed to state a claim under the Takings Clause of the Fifth Amendment.

## CONCLUSION

Defendant's motion to dismiss is **GRANTED,** and plaintiffs' complaint is

**DISMISSED**. The Clerk's Office shall enter **JUDGMENT** consistent with this Opinion.

IT **IS SO ORDERED.**

MARIAN BLANK HORN
Judge

# APPENDIX 15

# 𝔍𝔫 𝔱𝔥𝔢 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔔𝔬𝔲𝔯𝔱 𝔬𝔣 𝔉𝔢𝔡𝔢𝔯𝔞𝔩 𝔔𝔩𝔞𝔦𝔪𝔰

```
* * * * * * * * * * * * * * * * *     *
                                      *
ROSEMARIE ELIZABETH ANNE              *
HOWELL, et al.,                       *
                                      *
            Plaintiff(s),             *     No. 16-316C
                                      *     Filed: September 13, 2016
v.                                    *
                                      *
UNITED STATES,                        *
                                      *
            Defendant.                *
                                      *
* * * * * * * * * * * * * * * * *     *
```

## O R D E R

The court received pro se plaintiff's submissions to the court regarding Howell v. United States, Case No. 16-316C, on August 24, 2016. On August 15, 2016, the undersigned issued an opinion **DISMISSING** case number 16-316C, and the opinion was mailed to plaintiff. As a result, case number 16-316C was **TERMINATED** on August 15, 2016, and judgment was entered for defendant. According to the court's postal tracking information, plaintiff received the court's August 15, 2016 opinion on August 18, 2016. Notwithstanding the court's opinion dismissing case number 16-316C, and plaintiff's constructive knowledge of that dismissal on August 18, 2016, plaintiff served additional documents on defendant and the court on August 21, 2016. Because case number 16-316C was dismissed, plaintiff cannot continue to file submissions with this court in support of her complaint in that case. Instead, plaintiff may seek reconsideration or, as explained in the mailing that she received from the court on August 18, 2016 when her case was dismissed, plaintiff may appeal the court's decision to the United States Court of Appeals for the Federal Circuit.

Accordingly, the court **DIRECTS** the Clerk's Office to return plaintiff's August 24, 2016 submission as **UNFILED**, and to return as **UNFILED** any future submissions from plaintiff regarding case number 16-316C, other than those regarding reconsideration or appeal of the undersigned's August 15, 2016 opinion.

IT IS SO ORDERED.

**MARIAN BLANK HORN**
Judge

# APPENDIX 16

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

In re the
Personal Restraint Petition of:

ROSE HOWELL,

          Petitioner.

No. 43759-7-II

CERTIFICATE OF FINALITY

Clark County

Superior Court No. 01-2-02693-7

**THE STATE OF WASHINGTON TO:** The Superior Court of the State of Washington in and

for Clark County.

      This is to certify that the decision of the Court of Appeals of the State of Washington,
Division II, filed on October 30, 2012, became final on November 30, 2012.



IN TESTIMONY WHEREOF, I have hereunto set my
hand and affixed the seal of said Court at Tacoma, this
28th day of January, 2013.

David C. Ponzoha
Clerk of the Court of Appeals,
State of Washington, Division II

Rose Howell
9504 NE 5th Street
Vancouver, WA, 98664

State of Washington
Clark County
1200 Franklin Street
Vancouver, WA  98665-5000

cc: State of Washington

# APPENDIX 17

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

In re the
Personal Restraint Petition of

ROSE HOWELL,

          Petitioner.

No. 43759-7-II

ORDER DISMISSING PETITION

     Rose Howell seeks relief from personal restraint, apparently stemming from various acts by the Washington State Insurance Commissioner following a 1999 car accident and/or a July 28, 2011 jury trial conviction for second degree theft. Petitioner also seems to allege a tort action, present RICO claims, and possibly request a writ of mandamus.[1]

     Petitioner cannot raise tort claims or RICO claims in a personal restraint petition. Nor does this court have original jurisdiction to hear a writ of mandamus. RAP 16.2(a). Additionally, as our Supreme Court noted in its October 8, 2012 ruling, Petitioner does not show that she is under restraint from any of these actions. At best, petitioner may be alleging that the Clark County criminal action was a "'retaliatory'" action by the

---

[1] Petitioner moved for direct review of this petition with our Supreme Court; this motion was denied on October 8, 2012.

43759-7-II

insurance commissioner, but she offers no support for this bare assertion.

Accordingly, it is hereby

ORDERED that this petition is dismissed under RAP 16.11(b).

DATED this ___30th___ day of ___October___, 2012.

_Johanson, A.C.J._
Acting Chief Judge

cc:   Rose Howell
Clark County Clerk
County Cause No(s). 10-1-00150-6
Anthony F. Golik, Clark County Prosecuting Attorney

# APPENDIX 18

# THE SUPREME COURT
### STATE OF WASHINGTON

RONALD R. CARPENTER
SUPREME COURT CLERK

SUSAN L. CARLSON
DEPUTY CLERK / CHIEF STAFF ATTORNEY



TEMPLE OF JUSTICE
P.O. BOX 40929
OLYMPIA, WA 98504-0929

(360) 357-2077
e-mail: supreme@courts.wa.gov
www.courts.wa.gov

October 8, 2012

## LETTER SENT BY E-MAIL ONLY

Rose Howell
9504 NE 5th Street
Vancouver, WA 98664

Robert M. McKenna
Marta Uballe DeLeon
Office of the Attorney General
PO Box 40100
Olympia, WA 98504-0100

Re:   Supreme Court No. 87757-2 - Rose Howell v. Mike Kreidler, Washington State
Insurance Commissioner

Counsel and Ms. Howell:

Enclosed is a copy of the RULING DISMISSING ACTION AND DENYING MOTIONS,
signed by the Supreme Court Commissioner, Steven Goff, on October 8, 2012, in the above entitled
cause.

Sincerely,

Ronald R. Carpenter,
Supreme Court Clerk

RRC:alb

Enclosure as stated

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON



ROSE HOWELL,

          Petitioner,

    v.

MIKE KREIDLER, WASHINGTON
STATE INSURANCE
COMMISSIONER,

          Respondent.

NO. 87757-2

RULING DISMISSING ACTION
AND DENYING MOTIONS

      Seeking to invoke this court's original jurisdiction under article IV, section 4 of the Washington Constitution, Rose Howell filed what she calls a personal restraint petition and a petition for writ of mandamus, naming as respondent Insurance Commissioner Mike Kreidler. Because Ms. Howell fails to show that she is under unlawful restraint as that term is used in relationship to habeas corpus and personal restraint petitions, Ms. Howell's pleading is being treated by this court as one seeking a writ of mandamus against a state officer. The matter now comes before me to decide whether the petition should be decided by this court, transferred, or dismissed. RAP 16.2(d). The petition must be dismissed.[1]

      Mandamus is an extraordinary remedy appropriate only where a state officer is under a mandatory duty to perform an act required by law as part of that official's duties. *Cmty. Care Coal. of Wash. v. Reed*, 165 Wn.2d 606, 614, 200 P.3d

---

[1] Ms. Howell also moves to strike two of the commissioner's answers, seemingly on grounds that they fail to cite relevant authority. But these pleadings are not objectionable on that basis, and no other grounds for striking them is apparent. Accordingly, the motion to strike is denied. Ms. Howell's request to seal the record is similarly deficient, and is likewise denied.

647/11

701 (2009). The mandate must specify the precise thing to be done. *Walker v. Munro*, 124 Wn.2d 402, 407, 879 P.2d 920 (1994). Mandamus will not lie to compel a discretionary act or to direct a state officer to generally perform his or her duties, constitutional or otherwise. *Id.* at 408; *Gerberding v. Munro*, 134 Wn.2d 188, 195, 949 P.2d 1366 (1998). Ms. Howell simply fails to identify any non-discretionary mandatory duty that Commissioner Kreidler owes to her but has failed to perform.

And to the extent that Ms. Howell might be seeking review of prior administrative or judicial decisions, she has or had adequate other remedies at law. Since the adoption of the Rules of Appellate Procedure in 1977, the only methods for seeking review of superior court decisions have been appeal and discretionary review. RAP 2.1(a). This procedure supercedes the review procedure formerly available by extraordinary writs such as mandamus. RAP 2.1(b); *Kreidler v. Eikenberry*, 111 Wn.2d 828, 840, 766 P.2d 438 (1989). Similarly, reviews by this court of Court of Appeals decisions must be initiated by petition for review or motion for discretionary review. *See* RAP 13.1-13.5. Contrary to Ms. Howell's request in a motion filed September 20, 2012, this court cannot take review of a personal restraint petition she recently filed in the Court of Appeals as part of this original action. Moreover, Ms. Howell, as noted, fails to show that she is under restraint within the meaning of RAP 16.4(b). I note that Ms Howell twice sought this court's review in the protracted automobile accident litigation that seems to underly this petition, and filed another original action in this court against a superior court judge for the county where she brought that action. This court denied review and dismissed the original action. No. 85145-0 (petition for review); No. 85347-9 (original action); No. 85973-6 (motion for discretionary review of denial of motion to recall mandate). Ms. Howell cannot employ this original action to relitigate the merits of her previous lawsuit.

Ms. Howell also seems to seek some sort of declaratory relief by way of a separate pleading filed August 24, 2012. But declaratory relief, taken alone, is not within this court's original jurisdiction. *Wash. State Council of County & City Emps., Council 2, AFSCME, AFL-CIO, Local 87 v. Hahn*, 151 Wn.2d 163, 86 P.3d 774 (2004). Such relief may only be afforded by this court in an original action if it "necessarily underlies" an otherwise proper writ. *Walker v. Munro*, 124 Wn.2d at 411. Thus, declaratory relief might be available to determine whether a state officer has a specific, ministerial duty to act, but Ms. Howell posits no such duty.

Finally, in her September 20, 2012, motion Ms. Howell ask the court to issue various writs in addition to a writ of mandamus, including writs of sequestration, waste, replevin, and garnishment. But most of these requests are beyond this court's original jurisdiction, and Ms. Howell fails in any event to demonstrate that she is entitled to the requested relief.

The original action is dismissed, and Ms. Howell's motions are all denied.

COMMISSIONER

October 8, 2012

# APPENDIX 19

# THE SUPREME COURT OF WASHINGTON

|  |  |
|---|---|
| ROSE HOWELL,<br><br>                    Petitioner,<br><br>           v.<br><br>MIKE KREIDLER, WASHINGTON STATE<br>INSURANCE COMMISSIONER,<br><br>                    Respondent. | ) NO. 87757-2<br>)<br>)     **O R D E R**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Department I of the Court, composed of Chief Justice Madsen and Justices C. Johnson,

Fairhurst, Stephens and González (Justice Owens sat for Justice Fairhurst), considered this matter at

its January 8, 2013, Motion Calendar and unanimously agreed that the following order be entered.

IT IS ORDERED:

That the Petitioner's Motion to Modify the Commissioner's Ruling is denied.

DATED at Olympia, Washington this _8th_ day of January, 2013.

For the Court

*Madsen, C J*
CHIEF JUSTICE

FILED
SUPREME COURT
STATE OF WASHINGTON
2013 JAN -8 PM 1: 13
BY RONALD R. CARPENTER
CLERK

655/14

EM

# APPENDIX 20

# THE SUPREME COURT OF WASHINGTON

|                                                    |     |                               |
| -------------------------------------------------- | --- | ----------------------------- |
| ROSE HOWELL,                                       | )   | **CERTIFICATE OF FINALITY**   |
|                                                    | )   |                               |
|     Petitioner,                | )   | NO. 87757-2                   |
|                                                    | )   |                               |
|   v.                                     | )   |                               |
|                                                    | )   |                               |
| MIKE KREIDLER, WASHINGTON STATE                    | )   |                               |
| INSURANCE COMMISSIONER,                            | )   |                               |
|                                                    | )   |                               |
|     Respondent.                | )   |                               |
|                                                    | )   |                               |
|                                                    | )   |                               |

This is to certify that the ruling of the Supreme Court Commissioner, which was filed

October 8, 2012, dismissing the original action and denying motions, is now final.

I have affixed the seal of the Supreme Court of
the State of Washington and filed this Certificate of
Finality this \_11th\_ day of January, 2013

Ronald R. Carpenter
Clerk of the Supreme Court
State of Washington

cc:   Rose Howell
      Marta Uballe DeLeon
      Reporter of Decisions



150/137

# APPENDIX 21

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

STATE OF WASHINGTON,
Respondent,

v.

ROSEMARIE HOWELL,
Appellant.

No. 42537-8-II

MANDATE

Clark County Cause No.
10-1-00150-6

The State of Washington to: The Superior Court of the State of Washington
in and for Clark County

This is to certify that the Court of Appeals of the State of Washington, Division II, entered a Ruling Dismissing Appeal in the above entitled case on August 22, 2012. This ruling became the final decision terminating review of this court on September 24, 2012. Accordingly, this cause is mandated to the Superior Court from which the appeal was taken for further proceedings in accordance with the determination of that court.



IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of said Court at Tacoma, this
24ᵗʰ day of September, 2012.

Clerk of the Court of Appeals,
State of Washington, Div. II

Anne Mowry Cruser
Clark Co Dep Pros Atty
PO Box 5000
Vancouver, WA, 98666-5000

Rosemarie Anne Howell
9504 N.E. 5th Street
Vancouver, WA, 98664
rosie.howl@gmail.com

MANDATE
42537-8-II
Page Two


Hon. Diane M. Woolard
Clark Co Superior Court Judge
P.O. Box 5000
Vancouver, WA  98666

# APPENDIX 22

# THE SUPREME COURT OF WASHINGTON

ROSE HOWELL,

    Petitioner,

    v.

ARLIS J. PLOTNER as Personal
Representative of THE ESTATE OF KEITH
W. PLOTNER,

    Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)

NO. 85973-6

**ORDER**

C/A No. 39670-0-II and 40004-9-II
(consolidated)

Department II of the Court, composed of Chief Justice Madsen and Justices Alexander,

Owens, J.M. Johnson and Wiggins, considered this matter at its September 26, 2011, Motion

Calendar and unanimously agreed that the following order be entered.

IT IS ORDERED:

That the Petitioner's Motion to Modify the Deputy Clerk's Ruling is denied.  The

Petitioner's Motion to Modify the Commissioner's Ruling is denied.  The Respondent's Motion

to Strike Appellant's Reply to Motion to Modify is denied.

DATED at Olympia, Washington this 27th day of September, 2011.

For the Court

*Madsen, C.J.*
CHIEF JUSTICE

# APPENDIX 23

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON



FILED

JUL 1 2011

CLERK OF THE SUPREME COURT
STATE OF WASHINGTON

ROSE HOWELL,

Petitioner,

v.

ARLIS J. PLOTNER, as personal
representative of the Estate of Keith W.
Plotner,

Respondent.

NO. 85973-6

RULING DENYING REVIEW

In protracted automobile accident litigation in Clark County that began in 2001 and ended in 2009, the superior court awarded Rose Howell $6,867.52 in damages. Ms. Howell appealed to Division Two of the Court of Appeals, which affirmed in an unpublished opinion. Ms. Howell then petitioned this court for review, but on January 5, 2011, the court denied review. On January 24, 2011, the Court of Appeals mandated the case to the superior court.[1] On March 15, 2011, Ms. Howell moved to recall the mandate. But in an order dated April 11, 2011, the Court of Appeals denied that motion. Ms. Howell now seeks this court's review.

This court will grant discretionary review only if the Court of Appeals committed an obvious or probable error or substantially departed from the usual course of proceedings. RAP 13.5(b). The Court of Appeals did none of these things by denying Ms. Howell's motion to recall the mandate.

---

[1] Apparently the copy of the mandate sent to Ms. Howell said the mandate issued February 24, 2011. The original of the order found in the court file has February crossed out and January hand written in its place.

A mandate will be recalled only to determine if the trial court has complied with an earlier appellate decision or to correct an inadvertent mistake or modify a decision obtained by fraud. RAP 12.9(a), (b). The rule refers to the possibility that "the judgment transmitted, because of inadvertent error, mistake, fraud or lack of jurisdiction, was not in fact the judgment of the court." *Reeploeg v. Jensen*, 81 Wn.2d 541, 547, 503 P.2d 99 (1972), *cert. denied*, 414 U.S. 839 (1973) (pre-Rules case). No such situation is presented here. Ms. Howell seems to suggest that some sort of fraud has been committed in this case, but her argument on this point is difficult at best to follow, and lacks evidentiary support in any event. It is also evident that Ms. Howell seeks to reargue the merits of the case, but the rule does not authorize a recall of the mandate to reexamine a case on its merits. *Shumway v. Payne*, 136 Wn.2d 383, 393, 964 P.2d 349 (1998) (citing authorities); 3 KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE RAP 12.9 at 182 (6th ed. 2004).

The motion for discretionary review is denied.

_____
COMMISSIONER

July 1, 2011

# APPENDIX 24

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ROSE HOWELL, | No. 39670-0-II |
| Appellant, | |
| v. | ORDER DENYING MOTION |
| ARLIS J. PLOTNER, as Personal Representative of the ESTATE OF KEITH WALTER PLOTNER, deceased, | |
| Respondent. | |

APPELLANT moves the Court to recall the mandate filed in the above-referenced

matter on March 15, 2011, and asks for other relief. Upon consideration, the Court denies the

motion to recall the mandate and for other relief. Accordingly, it is

SO ORDERED.

PANEL: Jj. Hunt, Quinn-Brintnall, Van Deren

DATED this 11th day of April, 2011.

FOR THE COURT:

_____
PRESIDING JUDGE

Rose Howell
9504 NE 5th St
Vancouver, WA  98664

M. Colleen Barrett
Barrett & Worden PS
2101 4th Ave Ste 700
Seattle, WA, 98121-2393

# APPENDIX 25

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ROSE HOWELL,<br><br>        Appellant,<br><br>   v.<br><br>ARLIS J. PLOTNER, P.R.,<br><br>        Respondent. | No. 39670-0-II Consol. w/40004-9-II<br><br>MANDATE<br><br>Clark County Cause No.<br>01-2-02693-7 |

The State of Washington to:   The Superior Court of the State of Washington
in and for Clark County

      This is to certify that the opinion of the Court of Appeals of the State of Washington, Division II, filed on August 5, 2010 became the decision terminating review of this court of the above entitled case on January 5, 2011. Accordingly, this cause is mandated to the Superior Court from which the appeal was taken for further proceedings in accordance with the attached true copy of the opinion.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of said Court at Tacoma, this 24th day of February, 2011.

Clerk of the Court of Appeals,
State of Washington, Div. II

**Page -2- Mandate**
**Rose Howell v. Arlis J. Plotner, P. R., COA #39670-0-II Consol.**

Scott Wayne Swindell
Attorney at Law
105 W Evergreen Ste 200
PO Box 264
Vancouver, WA, 98666-0264

Christopher B. Rounds
Rounds Law Office
1409 Franklin St Ste 217
Vancouver, WA, 98660-2826

Rose Howell
9504 NE 5th St
Vancouver, WA, 98664

# APPENDIX 26

# THE SUPREME COURT OF WASHINGTON

ROSE HOWELL,

        Petitioner,

        v.

THE CLARK COUNTY SUPERIOR COURT and THE
HONORABLE JAMES E. RULLI,

        Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CERTIFICATE OF FINALITY**

NO. 85347-9

This is to certify that the Order of the Washington State Supreme Court, which was filed

January 5, 2011, denying the Petitioner's Motion to Accelerate and Petition for a Writ of

Mandamus, is now final.  An order denying Petitioner's motion for reconsideration was filed on

February 2, 2011.



I have affixed the seal of the Supreme Court of
the State of Washington and filed this Certificate of
Finality this ___9th___ day of February, 2011.

                Susan L. Carlson
      Deputy Clerk of the Supreme Court
           State of Washington

cc:   Rose Howell
      Hon. Anthony F. Golik
      E. Bronson Potter
      Christopher B. Rounds
      Scott Wayne Swindell
      M. Colleen Barrett
      Gregory S. Worden
      Reporter of Decisions

# APPENDIX 27

# THE SUPREME COURT OF WASHINGTON

| | | |
|---|---|---|
| ROSE HOWELL | ) | **ORDER DENYING MOTION** |
| | ) | **FOR RECONSIDERATION** |
| PETITIONER, | ) | |
| | ) | No. 85347-9 |
| v. | ) | |
| | ) | |
| THE CLARK COUNTY SUPERIOR COURT | ) | |
| AND THE HONORABLE JAMES E. RULLI, | ) | |
| | ) | |
| RESPONDENTS. | ) | |
| | ) | |

Department Two of the Court having considered the "APPELLANT'S HOWELL'S

OBJECTION & MOTION(S) IN RESPONSE TO THIS COURT'S ORDER(S) JANUARY 5,

2011 AND CERTIFICATE OF SERVICE";

Now, therefore, it is hereby

ORDERED:

That the motion for reconsideration is denied.

DATED at Olympia, Washington this ___2nd___ day of February, 2011.

For the Court

_Madsen, C.J._
CHIEF JUSTICE

05/81

# APPENDIX 28

# THE SUPREME COURT OF WASHINGTON

|  |  |  |
|---|---|---|
| ROSE HOWELL, | ) | **O R D E R** |
| Petitioner, | ) | No. 85347-9 |
|  | ) |  |
| v. | ) |  |
| THE CLARK COUNTY SUPERIOR COURT and THE HONORABLE JAMES E. RULLI, | ) |  |
| Respondents. | ) |  |

Department II of the Court, composed of Chief Justice Madsen and Justices Alexander,

Chambers, Fairhurst and Stephens, considered this matter at its January 4, 2011, Motion

Calendar and unanimously agreed that the following order be entered.

IT IS ORDERED:

That the Petitioner's Motion to Accelerate is denied.  The Petitioner's Petition for Writ of

Mandamus is denied.


DATED at Olympia, Washington, this 5th day of January, 2011.

For the Court

*Madsen, C.J.*

CHIEF JUSTICE

603/84

# APPENDIX 29

# THE SUPREME COURT OF WASHINGTON

**COPY RECEIVED**

| | | |
|---|---|---|
| ROSE HOWELL, | ) | NO. 85145-0 |
| Petitioner, | ) | **O R D E R** |
| v. | ) | C/A NO. 39670-0-II & 40004-9-II |
| | ) | (consolidated) |
| ARLIS J. PLOTNER, as personal representative | ) | |
| of the ESTATE OF KEITH WALTER | ) | |
| PLOTNER, deceased, | ) | |
| Respondent. | ) | |

JAN 0 6 2011

BARRETT & WORDEN, P.S.

Department II of the Court, composed of Chief Justice Madsen and Justices Alexander,

Chambers, Fairhurst and Stephens, considered at its January 4, 2011, Motion Calendar, whether

review should be granted pursuant to RAP 13.4(b), and unanimously agreed that the following order

be entered.

IT IS ORDERED:

That the Respondent's motion to strike the Petitioner's reply is granted. The Petitioner's

Petition for Review and motion to accelerate are denied.

DATED at Olympia, Washington this 5th day of January, 2011.

For the Court

_____
CHIEF JUSTICE

eo3/99

# APPENDIX 30

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

ROSE HOWELL,

        Appellant,

v.

ARLIS J. PLOTNER,

        Respondent.

No. 39670-0-II

ORDER DENYING MOTION FOR RECONSIDERATION

**APPELLANT** moves for reconsideration of the Court's **August 5, 2010** opinion. Upon consideration, the Court denies the motion. Accordingly, it is

**SO ORDERED.**

**PANEL:** Jj. Hunt, Quinn-Brintnall, Van Deren

**DATED** this _7th_ day of _September_, 2010.

**FOR THE COURT:**

_____
PRESIDING JUDGE

Scott Wayne Swindell
Attorney at Law
105 W Evergreen Ste 200
PO Box 264
Vancouver, WA, 98666-0264

Rose Howell
9504 NE 5th St
Vancouver, WA, 98664

Christopher B. Rounds
Law Ofcs of Andersen & Nyburg
PO Box 4400
650 NE Holladay
Portland, OR, 97208-4400

# APPENDIX 31

157 Wash.App. 1026
Only the Westlaw citation is currently available.

NOTE: UNPUBLISHED OPINION, SEE RCWA
2.06.040

Court of Appeals of Washington,
Division 2.

Rose HOWELL, Appellant,
v.
Arlis J. PLOTNER, as personal representative of
the Estate of Keith Walter Plotner, deceased,
Respondent.

Nos. 39670-0-II, 40004-9-II. | Aug. 5, 2010.

West KeySummary

1    **Judgment**
     ⟜Time of Answering or Filing Plea, Answer, or
     Affidavit of Defense
     **Judgment**
     ⟜Proceedings in General

     *Delay of driver's estate in filing an answer to
     injured motorist's second amended complaint in
     personal injury action did not warrant entry of
     an order of default. Because the driver had
     appeared earlier in the action by submitting a
     notice of appearance and filing responsive
     pleadings, driver's estate was allowed to oppose
     the motion for default at any time prior to the
     hearing on the motion. The estate filed an
     answer to the second amended complaint three
     weeks before the hearing scheduled on the
     motion for default. CR 55.*

Appeal from Clark Superior Court; Hon. Robert L. Harris,
and Barbara Johnson, Judges.

**Attorneys and Law Firms**

Rose Howell, Vancouver, WA, Appearing Pro Se.

Christopher B. Rounds, Law Ofcs of Andersen & Nyburg,
Portland, OR; Scott Wayne Swindell, Attorney at Law,
Vancouver, WA, for Respondent.

**Opinion**

**UNPUBLISHED OPINION**

VAN DEREN, J.

*1 Keith Plotner injured Rose Howell in a 1999 car
accident. After trial, Howell received a judgment for
$6,946.50. She appeals the trial court's orders and rulings
(1) denying her motion for default and a default judgment,
(2) denying her second affidavit of prejudice, (3)
appointing a guardian ad litem to assess her competence,
(4) declining to perpetuate an out-of-state deposition, and
(5) denying her request for a pro se lien. We affirm and
award Plotner attorney fees and costs on appeal.

**FACTS**

On March 3, 1999, Plotner collided with the rear of
Howell's car while Howell was stopped in a construction
area. On July 10, 2001, Howell sued Plotner in Clark
County Superior Court, alleging personal injuries and
requesting damages for pain and suffering. On August 10,
Plotner's attorney, through his insurer, Safeco Insurance
Company, filed a notice of appearance. On December 4,
2003, Plotner answered Howell's complaint. In July 2004,
Howell amended her complaint and Plotner answered
again. Plotner died on May 2, 2005; on July 25, Howell
filed a motion requesting substitution of Plotner's estate
and to amend the complaint; on August 26, the trial court
granted this motion; and on August 29, Howell filed an
amended complaint that reflected this substitution of his
estate as defendant. The estate did not file a third answer
until Howell moved for default in 2008.

On June 19, 2007, Howell notified the court that she
wished to represent herself pro se in any further
proceedings. In that first pro se filing, she noted that
Plotner's estate had not answered the August 29, 2005,
amended complaint. On February 12, 2008, Howell
moved to default the estate because it had not answered

157 Wash.App. 1026

her second amended complaint. Thus, on February 15, the estate filed an answer to the second amended complaint. Despite the estate's answer, Howell moved for a default judgment, which the trial court denied, noting that the estate or Plotner (1) answered the first two complaints; (2) did not initially answer the August 29, 2005, complaint that Howell amended solely to substitute Plotner's estate as defendant; (3) answered the second amended complaint on February 15, 2008; and (4) timely responded to Howell's motion for default before the March 7 hearing. Howell renewed her motion for a default judgment throughout the remainder of the proceedings. Howell also requested damages in excess of $13 billion. The trial court set trial for September 15.

On April 4, Howell filed an affidavit of prejudice against the trial judge and requested appointment of a new judge, a request which was granted. On July 8, Howell filed an affidavit of prejudice against the second judge assigned, in part because he did not grant her renewed requests for a default judgment against the estate and because she alleged that the judge had ex parte communications with Plotner or his estate. The trial court denied Howell's affidavit of prejudice and her renewed motion for a default judgment, noting that the estate's answer satisfied the requirements of CR 55 and that the previous judge's rulings were correct.

*2 On September 12, over Howell's objection, the trial court struck the trial date and appointed a guardian ad litem to address concerns regarding Howell's competency. The guardian ad litem appears to have recommended that Howell be found competent, at which point the case again began moving toward trial.

On April 13, 2009, Howell petitioned for perpetuation of the out-of-state deposition of a California physician who Howell sought to introduce as an expert witness at trial. The trial court denied Howell's request because defense counsel was unavailable to interview the physician and because the proposed expert had "not examined ... Howell since the early 1990's." Clerk's Papers (CP) at 618. Following the out-of-state physician's deposition, Howell made an offer of proof to support admission of the deposition as trial testimony, which the trial court denied because "some of the things that the doctor was testifying about were never linked with reasonable medical probability [¹] that these were a result of the automobile accident" and because the doctor discussed exhibits, of unknown origin, that Howell did not attach to the deposition. CP at 618.

Following a bench trial, the trial court ruled that Plotner's negligent driving caused Howell's injury and it awarded Howell damages of $6,867.52 for whiplash, lost wages,

and stipulated medical expenses. As Plotner's offer of settlement exceeded the damages awarded by the trial court, the trial court awarded Plotner's estate $450 in costs.

The trial court ordered the estate to deposit the remaining funds into the court registry so that creditors, if any, might have an opportunity to file liens against the judgment. Howell then filed a notice of a pro se lien for $711,358.47 against Plotner's estate, citing RCW 60.40.010(3) as authority for the lien; Howell also moved to quash all invalid liens. The trial court denied her lien and her motion to quash all invalid liens and awarded $3,937.83 to Howell's previous attorney, $139.04 to Medicare, and $1,602.52 to State Farm Insurance.
Howell appeals issues related to the trial and the lien.2

**ANALYSIS**

**I. Default Judgment**

Howell contends that the trial court should have granted her motion for default and entered a default judgment in her favor after the many years she awaited resolution. She further contends that the trial court3 thus lacked authority for many of its actions after denying her motion for default and argues that we should also reverse those rulings.

"The rule is well established in this state that the granting of or refusal to grant a motion for default rests within the sound discretion of the trial court." *Bown v. Fleischauer*, 53 Wash.2d 419, 425, 334 P.2d 174 (1959). A trial court abuses its discretion if it "exercise[s] its discretion on untenable grounds or for untenable reasons" or if "the discretionary act was manifestly unreasonable." *Lindgren v. Lindgren*, 58 Wash.App. 588, 595, 794 P.2d 526 (1990).

*3 Under CR 55, a party may move for default where the opposing party has not appeared, pleaded, or defended. CR 55(a)(1). If the party opposing the motion has appeared,4 that party "may respond to the pleading or otherwise defend at any time before the hearing on the motion." CR 55(a)(2). Default occurs when the opposing party does not respond to the motion, at which point the trial court may choose to enter a default judgment after the hearing on the default. *See* CR 55(b). A party, who has appeared and responded "before the hearing[,] cures the default and allows the court to consider the merits of the case." *In re Marriage of Pennamen*, 135 Wash.App. 790, 799, 146 P.3d 466 (2006); *see Tacoma Recycling, Inc. v. Capitol Material Handling Co.*, 34 Wash.App.

000002

157 Wash.App. 1026

392, 395, 661 P.2d 609 (1983). Furthermore, a trial court abuses its discretion if it grants a motion for default and enters an order of default when the opposing party has appeared and responds to the motion before the hearing. *Mecum v. Pomiak*, 119 Wash.App. 415, 422, 81 P.3d 154 (2003).

Here, Howell moved for default on February 12, 2008. Because Plotner had appeared earlier in the action, his estate had the opportunity to respond to the motion before the hearing. *See* CR 55(a)(2). Plotner's estate filed an answer to the second amended complaint on February 15, three weeks before the hearing scheduled for March 7. We are sensitive to the fact that Howell's case took almost a decade to conclude and that Howell disagrees with the trial court's ruling that denied her motion for default. But the court rule, as has been applied for many years, precluded any other decision by the trial court. Plotner's estate timely responded to the motion for default, and the trial court would have abused its discretion had it entered a default judgment in Howell's favor. We hold that the trial court did not abuse its discretion when it denied Howell's motion for default.

## II. Affidavit of Prejudice

Howell also contends that the trial court erred when it denied her second affidavit of prejudice.

We review a trial court's denial of an affidavit of prejudice de novo. *See State v. Tarabochia*, 150 Wash.2d 59, 64-65, 68, 74 P.3d 642 (2003); *In re Estate of Black*, 116 Wash.App. 492, 496, 500, 66 P.3d 678 (2003). Under RCW 4.12.040 and .050, each party may file a timely motion and affidavit of prejudice to remove one superior court judge. For the motion to be timely, the party must file the motion "before the judge presiding has made any order or ruling involving discretion." RCW 4.12.050(1). Filing a timely motion and affidavit divests the judge of authority to pass on the merits of the case. *LaMon v. Butler*, 112 Wash.2d 193, 201-02, 770 P.2d 1027 (1989). But the statute does not compel a change of judge when the motion is untimely or when a party submits a second motion. *Rhinehart v. Seattle Times Co.*, 51 Wash.App. 561, 578-79, 754 P.2d 1243 (1988); *see State ex rel. Sheehan v. Reynolds*, 111 Wash. 281, 284-85, 190 P. 321 (1920). Howell filed an affidavit of prejudice and was granted a new judge. Thereafter, Howell had no right to the automatic replacement of the second judge based on her affidavit of prejudice. We hold that the trial court properly denied Howell's second affidavit.

## III. Guardian ad Litem

*4 Howell argues in passing that the trial court erred when it appointed a guardian ad litem to investigate her competency. Plotner's estate argues that Howell (1) cites no authority discussing the appropriate standards for appointment of a guardian ad litem and (2) cannot show that the trial court caused her any harm when it appointed the guardian ad litem to investigate whether Howell "was competent to represent herself at trial." Br. of Resp't at 7.

Just as we review the appointment of a guardian and the "determination of the need for a guardian ad litem for an abuse of discretion," we see no reason to alter the standard of review where the trial court appoints a guardian ad litem to ascertain a party's competence. *Tai Vinh Vo v. Le Ngov Pham*, 81 Wash.App. 781, 784, 916 P.2d 462 (1996); *In re Guardianship of Mignerey*, 11 Wash.2d 42, 49-51, 118 P.2d 440 (1941). A trial court may appoint a guardian to manage the estate or personal affairs of an incompetent person and the authority extends to appointing a guardian for a limited purpose because the incompetent person may be one "who by reason of [his or her] incapacity has] need for protection and assistance, but who [is] capable of managing some of [his or her] personal and financial affairs." RCW 11.88.010(1)-(2). As trial courts have an "inherent power to appoint a guardian ad litem for a litigant upon finding that he or she is incompetent," it logically follows that a trial court has inherent power to appoint a guardian ad litem to assist in its determination of competence. *Tai Vinh Vo*, 81 Wash.App. at 784-91, 916 P.2d 462. And at least one Washington trial court has assessed the competence of a party arguing pro se and then appointed a guardian to manage litigation. *See, e.g., Russell v. Catholic Charities*, 70 Wash.2d 451, 453, 423 P.2d 640 (1967).

The record available to this court about the guardian ad litem's appointment is limited. Apparently the trial court had a concern about Howell's competence to proceed pro se and appointed a guardian ad litem to assess her competence. The sparse record does not supply us enough information to evaluate the trial court's decision; and after a review of the record, we cannot say that the trial court's decision was based on untenable grounds, was made for untenable reasons, or was manifestly unreasonable.

Even if the trial court's decision was flawed, Howell was found competent and ultimately had the opportunity to represent herself at trial. Although the proceedings were delayed for three months while the guardian ad litem completed the appointed task, from this record we cannot discern any harm to Howell caused by this delay. And we can find no other indication of harm in the record. Although Howell was unhappy with this arrangement, her displeasure is not sufficient to afford her a remedy.

We hold that the trial court did not abuse its discretion when it appointed a guardian ad litem to assess Howell's competence.

### IV. Out-of-State Deposition

**\*5** Howell contends that the trial court erred when it denied her request to perpetuate an out-of-state deposition of a former treating physician. We disagree.

We review a trial court's decision to deny admission of a deposition under CR 32 for an abuse of discretion. *See Hammond v. Braden*, 16 Wash.App. 773, 776, 559 P.2d 1357 (1977). CR 32(a)(3) provides that when certain defined instances of unavailability exist, a trial court may admit a witness's deposition as a substitute for his testimony. *Hammond*, 16 Wash.App. at 774-75, 559 P.2d 1357. Under CR 32:

> The deposition of a health care professional, even though available to testify at trial, taken with the expressly stated purpose of preserving the deponent's testimony for trial, may be used if, before the taking of the deposition, there has been compliance with discovery requests made pursuant to rules 26(b)(5)(A)(i), 33, 34, and 35 (as applicable) and if the opposing party is afforded an adequate opportunity to prepare, by discovery deposition of the deponent or other means, for cross examination of the deponent.

CR 32(a)(5)(B).

The trial court found that Plotner's estate was not able to cross-examine Howell's out-of-state deponent. Furthermore, the trial court noted (1) that the deponent's testimony did not connect Howell's medical condition with reasonable medical probability to the accident involving Plotner and (2) that the deponent discussed exhibits not available to the trial court. Given these circumstances, we hold that the trial court did not abuse its discretion when it denied admission of the deposition under CR 32.

### IV. Pro Se Lien

Finally, Howell contends that the trial court erred when it denied her pro se lien under RCW 60.40.010(1) and that

we should grant her this lien. Again, we disagree.

Like other statutes, we review a trial court's interpretation of a lien statute de novo. *Cockle v. Dep't of Labor & Indus.*, 142 Wash.2d 801, 807, 16 P.3d 583 (2001); *see, e.g., Intermountain Elec., Inc. v. G-A-T Bros. Constr., Inc.*, 115 Wash.App. 384, 390, 394, 62 P.3d 548 (2003). We construe statutes to give effect to the legislature's intent, and "[u]ndefined statutory terms must be given their usual and ordinary meaning." *Nationwide Ins. v. Williams*, 71 Wash.App. 336, 342, 858 P.2d 516 (1993); *Cockle*, 142 Wash.2d at 807, 16 P.3d 583.

RCW 60.40.010(1), states:

> An attorney has a lien for his or her compensation, whether specially agreed upon or implied, as hereinafter provided:

> (a) Upon the papers of the client, which have come into the attorney's possession in the course of his or her professional employment;

> (b) Upon money in the attorney's hands belonging to the client;

> (c) Upon money in the hands of the adverse party in an action or proceeding, in which the attorney was employed, from the time of giving notice of the lien to that party;

> ....

> (e) Upon a judgment to the extent of the value of any services performed by him in the action, or if the services were rendered under a special agreement, for the sum due under such agreement, from the time of filing notice of such lien or claim with the clerk of the court in which such judgment is entered, which notice must be filed with the papers in the action in which such judgment was rendered, and an entry made in the execution docket, showing name of claimant, amount claimed and date of filing notice.

**\*6** In common usage "attorney" refers to "one who is legally appointed by another to transact business for him" and specifically refers to "a legal agent qualified to act for suitors and defendants in legal proceedings." Webster's Third New International Dictionary 141 (2002). By definition, Howell could not fall within the meaning of "attorney" because she could not act on the behalf of another person when she was acting "pro se," which by definition means "[f]or oneself; on one's own behalf" and refers to "[o]ne who represents oneself in a court proceeding." Black's Law Dictionary 1341 (9th ed.2009). The language of the statute unambiguously applies to attorneys representing a client and does not apply to pro

000004

Howell v. Plotner, Not Reported in P.3d (2010)
157 Wash.App. 1026

se litigants representing themselves.5

As Howell is not an attorney and seeks to attach an attorney's lien to assets beyond the limits of the judgment, we hold that the trial court did not err when it denied her lien request.

**V. Attorney Fees and Costs on Appeal**

Plotner's estate requests attorney fees and costs under RAP 18.9 because Howell filed a frivolous appeal. Under RAP 18.9(a), we may order a party who files a frivolous appeal or who does not comply with the RAP "to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply or to pay sanctions to the court." "An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ and that it is so devoid of merit that there is no possibility of reversal." *Lutz Tile, Inc. v. Krech,* 136 Wash.App. 899, 906, 151 P.3d 219 (2007). "A frivolous action is one that cannot be supported by any rational argument on the law or facts." *Rhinehart v. Seattle Times, Inc.,* 59 Wash.App. at 340,

798 P.2d 1155.

As the issues raised by Howell are well settled matters of law and her arguments are without merit, under RAP 18.9(a) we award Plotner's estate reasonable attorney fees and costs for responding to Howell's appeal in an amount to be decided by our commissioner.

We affirm the trial court in all respects.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

We concur: HUNT and QUINN-BRINTNALL, JJ.

**Parallel Citations**

2010 WL 3057304 (Wash.App. Div. 2)

Footnotes

1    At an earlier hearing, the trial court granted partial summary judgment to Plotner's estate and restricted potential testimony about the relationship between a medical condition called syringomyelia and physical trauma.

2    Howell also requested that we impose the "[p]ro [s]e [l]ien" and review "[f]uture [o]rders of the trial court." Clerk's Papers (COA No. 40004-9-II) at 71. In a ruling dated November 25, 2009, a commissioner of this court consolidated review of the lien with the pending appeal and declined to grant review of nonexistent orders.

3    Howell also contends that we erred when we did not grant her motion for default. Howell overestimates the scope of our review. *See* RAP 2.4(a).

4    A party has "appeared" when they have filed a notice of appearance, applied for an order, or submitted responsive pleadings, such as an answer or a demurrer. RCW 4.28.210.

5    Even if the term "attorney" in the attorney lien statute were ambiguous, Howell's argument fails. When we find statutory ambiguity we look to other sources of legislative intent, including the language of the act as a whole in terms of its object and purpose. *State v. Bash,* 130 Wash.2d 594, 601-04, 925 P.2d 978 (1996); *Strenge v. Clarke,* 89 Wash.2d 23, 29, 569 P.2d 60 (1977). RCW 60.40.010 both encoded the common law's general and retaining liens as applied to attorneys and expanded an attorney's remedies. *Mahomet v. Hartford Ins. Co.,* 3 Wash.App. 560, 567-68, 477 P.2d 191 (1970). At the heart of the common law, and thus the statute, is the right of the legal representative to place a lien on property connected to the attorney-client relationship, so that the client is not enriched at the representative's expense. *See* George Neff Stevens, *Our Inadequate Attorney's Lien Statutes-A Suggestion,* 31 Wash. L.Rev. 1, 1-2, 8-13 (1956). It naturally follows that a party acting pro se could never enrich herself at her own expense, and thus the statute cannot be read to support pro se liens. And even if a pro se litigant could use RCW 60.40.010, the lien does not necessarily take first priority over an earlier attorney's lien and does not extend beyond the value awarded in the judgment or the value of the judicially recognized property rights. *See* RCW 60.40.010.

---

**End of Document**                    © 2012 Thomson Reuters. No claim to original U.S. Government Works.

000005

# APPENDIX 32

# THE SUPREME COURT

STATE OF WASHINGTON



**RONALD R. CARPENTER**
SUPREME COURT CLERK

**SUSAN L. CARLSON**
DEPUTY CLERK / CHIEF STAFF ATTORNEY

TEMPLE OF JUSTICE
P.O. BOX 40929
OLYMPIA, WA 98504-0929

(360) 357-2077
e-mail: supreme@courts.wa.gov
www.courts.wa.gov

November 18, 2009

Scott Wayne Swindell
Attorney at Law
105 W Evergreen Suite 200
PO Box 264
Vancouver, WA  98666-0264

Rose Howell
9504 NE 5th Street
Vancouver, WA  98664

Hon. David Ponzoha, Clerk
Court of Appeals, Division II
950 Broadway, Suite 300
MS TB-06
Tacoma, WA  98402-4427

Christopher B. Rounds
Law Offices of Andersen & Nyburg
PO Box 4400
650 NE Holladay
Portland, OR  97208-4400

Re:   Supreme Court No. 83875-5 - Rose Howell v. Arlis J. Plotner as Personal
      Representative of the State of Keith Plotner
      Court of Appeals No. 39670-0-II

Clerk, Counsel and Ms. Howell:

On this date, the "APPELLANT'S MOTION FOR DIRECT REVIEW BY THE
SUPREME COURT; MOTION FOR DISCRETIONARY REVIEW" was received.  The
motion seeks direct review of this case by the Supreme Court, presumably by transferring
the matter to the Supreme Court.  The motion also seeks discretionary review of the
November 10, 2009, Court of Appeals commissioner's ruling.

The motion to transfer the matter to the Supreme Court is denied as premature.
Consideration of a motion to transfer the matter from the Court of Appeals to this Court
would not be appropriate until such time, if any, as both the record has been perfected
and the opening briefing of all of the parties have been filed in the Court of Appeals.  At
such time, a motion to transfer would then be ripe for consideration and could be set for
determination on the Court Commissioner's Motion Calendar.  This denial of the
Appellant's motion to transfer is without prejudice.  As such, any party may hereafter
serve and file a motion to transfer once the matter is ripe for such consideration.

In regards to the motion for discretionary review of the Court of Appeals
commissioner's ruling, RAP 13.3 provides that a "party may seek discretionary review by
the Supreme Court of any decision of the Court of Appeals which is not a ruling..."  A
"ruling" is defined in RAP 12.3(c) as "any determination of a commissioner or clerk of

an appellate court." In addition, RAP 13.3(e) specifically provides: "A ruling by a commissioner or clerk of the Court of Appeals is not subject to review by the Supreme Court. The decision of the Court of Appeals on a motion to modify a ruling by the commissioner or clerk may be subject to review as provided in this title."

Since the rules do not allow for review by the Supreme Court of a ruling by the clerk, no action can be taken on the Petitioner's motion for discretionary review.

Sincerely,

Susan L. Carlson
Supreme Court Deputy Clerk

SLC:alb

# APPENDIX 33

**F I L E D**

JUL 28 2011

Scott G. Weber, Clerk, Clark Co.

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF CLARK

| | |
|---|---|
| STATE OF WASHINGTON, | No. 10-1-00150-6 |
| Plaintiff, | ORDER OF FORFEITURE AND DISPOSITION |
| v. | |
| ROSEMARIE ANNE HOWELL, | |
| Defendant. | |

THIS MATTER having come duly and regularly before the Court upon the Motion of the State of Washington for the entry of an Order of Forfeiture, the Court having reviewed said Motion, and having been made to notify the parties having an interest herein, the Court having heard the statements and arguments of counsel and those parties appearing before the Court, the Court further having found that there exists grounds for forfeiture of said firearms as specified in said Motion, now, therefore,

IT IS HEREBY ORDERED that the firearms specified in the above and foregoing motion are hereby forfeited to the agency specified in said motion, for:

_____ Retention of firearm(s) numbered _____ above as evidence, to be thereafter delivered and appropriated to the specified agency upon written notice from the Prosecuting Attorney releasing them as evidence; and

_____ Destruction pursuant to RCW 9.41.098; or

ORDER OF FORFEITURE AND DISPOSITION - 1

CLARK COUNTY PROSECUTING ATTORNEY
1200 FRANKLIN STREET • PO BOX 5000
VANCOUVER, WASHINGTON 98666-5000
(360) 397-2261 (OFFICE)
(360) 397-2230 (FAX)


102

X  ~~Use or disposition in accordance with the requirements of~~  *Release firearm to Jessica*
~~RCW 9.41.098~~ *Norvell*

DONE in Open Court this _28_ day of _July_, 2011.

_____
JUDGE OF THE SUPERIOR COURT

Presented by:

_____
Scott S. Ikata, WSBA #36030
Deputy Prosecuting Attorney

ORDER OF FORFEITURE AND DISPOSITION - 2

CLARK COUNTY PROSECUTING ATTORNEY
1200 FRANKLIN STREET ● PO BOX 5000
VANCOUVER, WASHINGTON 98666-5000
(360) 397-2261 (OFFICE)
(360) 397-2230 (FAX)



S8

**FILED**

JUL 28 2011
10:43
Scott G. Weber, Clerk, Clark C..

## Superior Court of Washington
## County of Clark

| | |
|---|---|
| **State of Washington**, Plaintiff,<br><br>vs.<br><br>ROSEMARIE ANNE HOWELL,<br>Defendant.<br><br>SID: _____<br>If no SID, use DOB: 8/30/1962 | No. 10-1-00150-6<br><br>**Felony Judgment and Sentence --**<br>**Jail One Year or Less**<br>**(FJS)**  11-9-04682-5<br><br>☒ **Clerk's Action Required, 2.1, 4.1, 4.3, 5.2, 5.3,**<br>**5.5, 5.7**<br>☐ **Defendant Used Motor Vehicle**<br><br>☐ **Juvenile Decline** ☐ **Mandatory** ☐ **Discretionary** |

### I. Hearing

1.1  The court conducted a sentencing hearing this date; the defendant, the defendant's lawyer, and the (deputy) prosecuting attorney were present.

### II. Findings

There being no reason why judgment should not be pronounced, in accordance with the proceedings in this case, the court *Finds:*

### 2.1  Current Offenses: The defendant is guilty of the following offenses, based upon
☐ guilty plea ☒ jury-verdict 7/26/2011 ☐ bench trial :

| Count | Crime | RCW<br>(w/subsection) | Class | Date of<br>Crime |
|---|---|---|---|---|
| 01 | THEFT IN THE SECOND DEGREE | 9A.56.020(1)(a)/9A.56.0<br>40(1)(a) | FC | 9/29/2009<br>to<br>3/30/2010 |

Class: FA (Felony-A), FB (Felony-B), FC (Felony-C),
(If the crime is a drug offense, include the type of drug in the second column.)
☐ Additional current offenses are attached in Appendix 2.1a.

The jury returned a special verdict or the court made a special finding with regard to the following:

☐ The defendant used a **firearm** in the commission of the offense in Count _____ . RCW 9.94A.825, 9.94A.533.

☐ The defendant used a **deadly weapon other than a firearm** in committing the offense in Count _____ _____ . RCW 9.94A.825, 9.94A.533.

---

*Felony Judgment and Sentence (FJS) (Jail One Year or Less)*
*(RCW 9.94A.500, .505)(WPF CR 84.0400 (7/2010))*
*Page 1 of 10*

103

AS



☐ Count _____ is a **criminal street gang**-related felony offense in which the defendant compensated, threatened, or solicited a **minor** in order to involve that minor in the commission of the offense. RCW 9.94A.833.

☐ Count _____ is the crime of **unlawful possession of a firearm** and the defendant was a **criminal street gang** member or associate when the defendant committed the crime. RCW 9.94A.702, 9.94A._____.

☐ The defendant has a **chemical dependency** that has contributed to the offense(s). RCW 9.94A.607.

☐ The crime(s) charged in Count _____ involve(s) **domestic violence. RCW 10.99.020.**

☐ Count _____ is a felony in the commission of which the defendant used a **motor vehicle.** RCW46.20.285.

☐ Counts _____ encompass the same criminal conduct and count as one crime in determining the offender score (RCW 9.94A.589).

☐ **Other current convictions listed under different cause numbers used in calculating the offender score are** (list offense and cause number):

| | Crime | Cause Number | Court (County & State) |
|---|---|---|---|
| 1. | | | |

☐ Additional current convictions listed under different cause numbers used in calculating the offender score are attached in Appendix 2.1b.

## 2.2 Criminal History:

| | Crime | Date of Crime | Date of Sentence | Sentencing Court (County & State) | A or J Adult, Juv. | DV?* | Type |
|---|---|---|---|---|---|---|---|
| 1 | No known felony convictions | | | | | | |

* DV: Domestic Violence was pled and proved.

☐ Additional criminal history is attached in Appendix 2.2.

☐ The defendant committed a current offense while on community placement/community custody (adds one point to score). RCW 9.94A.525.

☐ The prior convictions for _____, are one offense for purposes of determining the offender score (RCW 9.94A.525).

## 2.3 Sentencing Data:

| Count No. | Offender Score | Serious-ness Level | Standard Range (not including enhancements) | Plus Enhancements* | Total Standard Range (including enhancements) | Maximum Term | Maximum Fine |
|---|---|---|---|---|---|---|---|
| 01 | 0 | I | 0 DAYS to 60 DAYS | | 0 DAYS to 60 DAYS | 5 YEARS | $10,000.00 |

(F) Firearm , (D) Other deadly weapons, (CSG) criminal street gang involving minor.

☐ Additional current offense sentencing data is attached in Appendix 2.3.

## 2.4 ☐ **Exceptional Sentence.** The court finds substantial and compelling reasons that justify an exceptional sentence:

☐ below the standard range for Count(s) _____.

☐ above the standard range for Count(s) _____.

    ☐ The defendant and state stipulate that justice is best served by imposition of the exceptional sentence above the standard range and the court finds the exceptional sentence furthers and is consistent with the interests of justice and the purposes of the sentencing reform act.

    ☐ Aggravating factors were ☐ stipulated by the defendant, ☐ found by the court after the defendant waived jury trial, ☐ found by jury, by special interrogatory.

☐ within the standard range for Count(s) _____, but served consecutively to Count(s) _____.

Findings of fact and conclusions of law are attached in Appendix 2.4. ☐ Jury's special interrogatory is attached. The Prosecuting Attorney ☐ did ☐ did not recommend a similar sentence.

**2.5 Ability to Pay Legal Financial Obligations.** The court has considered the total amount owing, the defendant's past, present, and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change. The court finds that:

[X] The defendant has the ability or likely future ability to pay the legal financial obligations imposed herein. RCW 9.94A.753.

[ ] The following extraordinary circumstances exist that make restitution inappropriate (RCW 9.94A.753): _____

[ ] The defendant has the present means to pay costs of incarceration. RCW 9.94A.760.

## III.  Judgment

3.1   The defendant is **guilty** of the Counts and Charges listed in Paragraph 2.1 and Appendix 2.1.

3.2   [ ] The court **dismisses** Counts _____ in the charging document.

## IV.  Sentence and Order

*It is ordered:*

**4.1 Confinement.** The court sentences the defendant as follows:

(a)   **Confinement.** RCW 9.94A.589. A term of total confinement in the custody of the county jail:

2 9   ~~months/~~days on Count 01

Actual amount of total confinement ordered is: _____ 29 ____ ~~Days/Months.~~

| | The Sentence shall be served as follows: | | |
|---|---|---|---|
| 29 | [X] Days [ ] Months credit for time served | | |
| 0 | [ ] Days [ ] Months of additional total confinement | | |
| | [ ] Days [ ] Months of additional **Partial Confinement**, if approved and eligible, may be served as: | | |
| | | [ ] Days [ ] Months on work/education release | |
| | | Days on work crew – Defendant shall report within 24 hour of this order/release from custody | |
| | | Days on work crew – Defendant shall be screened while in custody | |
| | Days of Community Service/Restitution as an **Alternative Conversion** to part or all of the jail sentence. (Converted at a rate of 8 hours = 1 day, and a maximum of 30 days) | | |

All counts shall be served concurrently, except for the following which shall be served consecutively: _____

_____

The sentence herein shall run consecutively with any other sentence previously imposed in any other case,

including other cases in District Court or Superior Court, unless otherwise specified herein: _____

_____

Confinement shall commence immediately unless otherwise set forth here:_____

_____

*Credit for Time Served:* The defendant shall receive credit for time served prior to sentencing if that confinement was solely under this cause number. RCW 9.94A.505. The jail shall compute earned early release credits (good time) pursuant to its policies and procedures.

*Partial Confinement.* If granted above, if the defendant has been referred to work crew and is determined to be medically unfit to perform the work crew by the Clark County Corrections unit, Corrections may screen the defendant for community service in lieu of the work crew obligation, if legally allowed, and if they accept him/her in their program. Corrections shall obtain medical verification of the defendant's medical disability and the defendant shall provide any waivers necessary to allow Corrections to obtain said medical information. The Corrections staff shall supervise the defendant to insure compliance. If the defendant is found to be medically unfit for work crew and not acceptable for community service, Corrections shall provide the defendant a return date to Court for further review by the court. No other court order is necessary to do this conversion.

*Alternative Conversion.* RCW 9.94A.680. If granted above, Defendant shall serve the sentence of Community Service under the supervision of the Department of Corrections (DOC) to be completed:

    ☐ on a schedule established by the defendant's community corrections officer.
    ☐ as follows:_____.

| | |
|---|---|
| ☐ | **Alternatives to total confinement** were not used because of: |
| | ☐ Criminal history |
| | ☐ Failure to appear (finding required for nonviolent offenders only). RCW 9.94A.380 |
| | ☐ Defendant has served all of confinement. |
| | ☐ Other:_____ |

☐ *Conversion of Jail Confinement* **(Nonviolent and Nonsex Offenses).** RCW 9.94A.680(3). The county jail is authorized to convert jail confinement to an available county supervised community option, to reduce the time spent in the community option by earned release credit consistent with local correctional facility standards, and may require the offender to perform affirmative conduct pursuant to RCW 9.94A.607.

    ☐ The defendant shall receive credit for time served in an available county supervised community option prior to sentencing. The jail shall compute time served.

## 4.2 Community Custody. RCW 9.94A.505, .702.

(A) The defendant shall serve _____ months (up to 12 months) in community custody.

The court may order community custody under the jurisdiction of DOC for up to 12 months if the defendant is convicted of a violent offense, a crime against a person under RCW 9.94A.411, or felony violation of chapter 69.50 or 69.52 RCW or an attempt, conspiracy or solicitation to commit such a crime. For offenses committed on or after June 7, 2006, the court shall impose a term of community custody under RCW 9.94A.701 if the offender is guilty of failure to register (second or subsequent offense) under RCW 9A.44.130(11)(a) and for offenses after June 12, 2008 for unlawful possession of a firearm with a finding that the defendant was a member or associate of a criminal street gang. The defendant shall report to DOC not later than 72 hours after release from custody at the address provided in open court or by separate document.

(B) While on community custody, the defendant shall: (1) report to and be available for contact with the assigned community corrections officer as directed; (2) work at DOC-approved education, employment and/or community restitution (service); (3) notify DOC of any change in defendant's address or employment; (4) not consume controlled substances except pursuant to lawfully issued prescriptions; (5) not unlawfully possess controlled substances while on community custody; (6) not own, use, or possess firearms or ammunition;

(7) pay supervision fees as determined by DOC; (8) perform affirmative acts as required by DOC to confirm compliance with the orders of the court; and (9) abide by any additional conditions imposed by DOC under RCW 9.94A.704 and .706. The defendant's residence location and living arrangements are subject to the prior approval of DOC while on community custody.

The court orders that during the period of supervision the defendant shall:

☐ consume no alcohol.

☐ have no contact with: _____.

☐ remain ☐ within ☐ outside of a specified geographical boundary, to wit: _____.

☐ participate in the following crime-related treatment or counseling services: _____.

☐ undergo an evaluation for, and fully comply with, treatment for ☐ domestic violence ☐ substance abuse ☐ mental health ☐ anger management.

☐ comply with the following crime-related prohibitions: _____ _____.

☐ Additional conditions are imposed in Appendix 4.2, if attached or are as follows: _____ _____ _____ _____

(C) The conditions of community custody shall begin immediately upon release from confinement unless otherwise set forth here: _____.

Court Ordered Treatment: If any court orders mental health or chemical depenency treatment, the defendant must notify DOC and the defendant must release treatment information to DOC for the duration of incarceration and supervision. RCW 9.94A.562.

## 4.3 Legal Financial Obligations: The defendant shall pay to the clerk of this court:

*JASS CODE*

| | | | |
|---|---|---|---|
| *RTN/RJN* | $800.00 | Restitution to:  G4S JUSTICE SERVICES ($800.00) (Name and Address--address may be withheld and provided confidentially to Clerk of the Court's office.) | |
| *PCV* | $ 500.00 | Victim assessment | RCW 7.68.035 |
| *PDV* | $_____ | Domestic Violence assessment | RCW 10.99.080 |
| *CRC* | $_____ | Court costs, including RCW 9.94A.760, 9.94A.505, 10.01.160, 10.46.190 | |

| | | |
|---|---|---|
| Criminal filing fee | $ 200.00 | FRC |
| Witness costs | $_____ | WFR |
| Sheriff service fees | $_____ | SFR/SFS/SFW/WRF |
| Jury demand fee | $ 250.00 | JFR |
| Extradition costs | $_____ | EXT |
| Other | $_____ | |

| | | | |
|---|---|---|---|
| *PUB* | $_____ | Fees for court appointed attorney | RCW 9.94A.760 |
| | $_____ | Trial per diem, if applicable. | |
| *WFR* | To Be Set | Court appointed defense expert and other defense costs | RCW 9.94A.760 |

|  | $ 0 | DUI fines, fees and assessments |  |
| --- | --- | --- | --- |
| *FCM/MTH* | $ 500.00 | Fine RCW 9A.20.021; ☐ VUCSA chapter 69.50 RCW, ☐ VUCSA additional fine deferred due to indigency RCW 69.50.430 |  |
| *CDF/LDI/FCD NTF/SAD/SDI* | $_____ | Drug enforcement Fund # ☐ 1015 ☐ 1017 (TF) | RCW 9.94A.760 |
|  | $ 100.00 | DNA collection fee      RCW 43.43.7541 |  |
| *CLF* | $_____ | Crime lab fee ☑ suspended due to indigency | RCW 43.43.690 |
| *FPV* | $_____ | Specialized forest products | RCW 76.48.140 |
| *RTN/RJN* | $_____ | Emergency response costs (Vehicular Assault, Vehicular Homicide, Felony DUI only, $1000 maximum) | RCW 38.52.430 |
|  |  | Agency: _____ |  |
|  | $_____ | Other fines or costs for:_____ |  |
|  | $_____ | ***Total*** | RCW 9.94A.760 |

☐ The above total does not include all restitution or other legal financial obligations, which may be set by later order of the court. An agreed restitution order may be entered. RCW 9.94A.753. A restitution hearing:

    ☐ shall be set by the prosecutor.
    ☐ is scheduled for_____(date).
☐ The defendant waives any right to be present at any restitution hearing (sign initials):_____.

☐ ***Restitution*** Schedule attached.

☐ Restitution ordered above shall be paid jointly and severally with:

| | Name of other defendant | Cause Number | Victim's name | Amount |
| --- | --- | --- | --- | --- |
| RJN | | | | |
| | | | | |

The Department of Corrections (DOC) or clerk of the court shall immediately issue a Notice of Payroll Deduction. RCW 9.94A.7602, RCW 9.94A.760(8).

All payments shall be made in accordance with the policies of the clerk of the court and on a schedule established by DOC or the clerk of the court, commencing immediately, unless the court specifically sets forth the rate here: Not less than $AS ESTABLISHED per month commencing _____ RCW 9.94A.760.

The defendant shall report to the clerk of the court or as directed by the clerk of the court to provide financial and other information as requested. RCW 9.94A.760(7)(b).

☐ The court orders the defendant to pay costs of incarceration at the rate of $_____ per day, (actual costs not to exceed $100 per day). (*JLR*) RCW 9.94A.760.

The financial obligations imposed in this judgment shall bear interest from the date of the judgment until payment in full, at the rate applicable to civil judgments. RCW 10.82.090. An award of costs on appeal against the defendant may be added to the total legal financial obligations. RCW 10.73.160.

**4.4 DNA Testing.** The defendant shall have a biological sample collected for purposes of DNA identification analysis and the defendant shall fully cooperate in the testing. The appropriate agency shall be responsible for obtaining the sample prior to the defendant's release from confinement. RCW 43.43.754.

☐ ***HIV Testing***. The defendant shall submit to HIV testing. RCW 70.24.340.

*Electronic home monitoring unit*

#### 4.5 No Contact:

☒ The defendant shall not have contact with <u>CLARK COUNTY CORRECTIONS, G4S JUSTICE SERVICES</u> including, but not limited to, personal, verbal, telephonic, written or contact through a third party for __5__ years (which does not exceed the maximum statutory sentence).

☒ The defendant is excluded or prohibited from coming within: *ic home monitoring unit*

☐ 500 feet ☐ 880 feet ☒ 1000 feet of: *Electronic monitoring unit*

☒ <u>CLARK COUNTY CORRECTIONS, G4S JUSTICE SERVICES</u> (name of protected person(s))'s

☐ home/ residence ☒ work place ☐ school

☐ (other location(s)) _____

☐ other location _____,

for __5__ years (which does not exceed the maximum statutory sentence).

☐ A separate Domestic Violence No-Contact Order, Antiharassment No-Contact Order, or Sexual Assault Protection Order is filed concurrent with this Judgment and Sentence.

#### 4.6 Other: _____

_____

_____

#### 4.7 Off-Limits Order. (Known drug trafficker). RCW 10.66.020. The following areas are off limits to the defendant while under the supervision of the county jail or Department of Corrections:_____

_____

#### 4.8
For Offenders on Community Custody, when there is reasonable cause to believe that the defendant has violated a condition or requirement of this sentence, the defendant shall allow, and the Department of Corrections is authorized to conduct, searches of the defendant's person, residence, automobile or other personal property. Residence searches shall include access, for the purpose of visual inspection, all areas of the residence in which the defendant lives or has exclusive/joint control/access and automobiles owned or possessed by the defendant.

#### 4.9
If the defendant is removed/deported by the U.S. Immigration and Customs Enforcement, the Community Custody time is tolled during the time that the defendant is not reporting for supervision in the United States. The defendant shall not enter the United States without the knowledge and permission of the U.S. Immigration and Customs Enforcement. If the defendant re-enters the United States, he/she shall immediately report to the Department of Corrections if on community custody or the Clerk's Collections Unit, if not on Community Custody for supervision.

### V. Notices and Signatures

#### 5.1 Collateral Attack on Judgment. If you wish to petition or move for collateral attack on this Judgment and Sentence, including but not limited to any personal restraint petition, state habeas corpus petition, motion to vacate judgment, motion to withdraw guilty plea, motion for new trial or motion to arrest judgment, you must do so within one year of the final judgment in this matter, except as provided for in RCW 10.73.100. RCW 10.73.090.

#### 5.2 Length of Supervision. If you committed your offense prior to July 1, 2000, you shall remain under the court's jurisdiction and the supervision of the Department of Corrections for a period up to 10 years from the date of sentence or release from confinement, whichever is longer, to assure payment of all legal financial obligations unless the court extends the criminal judgment an additional 10 years. If you committed your offense on or after July 1, 2000, the court shall retain jurisdiction over you, for the purpose of your compliance

with payment of the legal financial obligations, until you have completely satisfied your obligation, regardless of the statutory maximum for the crime. RCW 9.94A.760 and RCW 9.94A.505(5). The clerk of the court has authority to collect unpaid legal financial obligations at any time while you remain under the jurisdiction of the court for purposes of your legal financial obligations. RCW 9.94A.760(4) and RCW 9.94A.753(4).

**5.3 Notice of Income-Withholding Action.** If the court has not ordered an immediate notice of payroll deduction in Section 4.1, you are notified that the Department of Corrections (DOC) or the clerk of the court may issue a notice of payroll deduction without notice to you if you are more than 30 days past due in monthly payments in an amount equal to or greater than the amount payable for one month. RCW 9.94A.7602. Other income-withholding action under RCW 9.94A.760 may be taken without further notice. RCW 9.94A.7606.

**5.4 Community Custody Violation.**
(a) If you are subject to a first or second violation hearing and DOC finds that you committed the violation, you may receive as a sanction up to 60 days of confinement per violation. RCW 9.94A.633.
(b) If you have not completed your maximum term of total confinement and you are subject to a third violation hearing and DOC finds that you committed the violation, DOC may return you to a state correctional facility to serve up to the remaining portion of your sentence. RCW 9.94A.714.

**5.5 Firearms. You may not own, use or possess any firearm unless your right to do so is restored by a superior court in Washington State, and by a federal court if required. You must immediately surrender any concealed pistol license.** (The clerk of the court shall forward a copy of the defendant's driver's license, identicard, or comparable identification to the Department of Licensing along with the date of conviction or commitment.) RCW 9.41.040, 9.41.047.

5.6 Reserved.

**5.7 Motor Vehicle**: If the court found that you used a motor vehicle in the commission of the offense, then the Department of Licensing will revoke your driver's license. The clerk of the court is directed to immediately forward an Abstract of Court Record to the Department of Licensing, which must revoke your driver's license. RCW 46.20.285.

**5.8 Other**:_____.

**5.9 Persistent Offense Notice**

The crime(s) in count(s) _____ is/are "most serious offense(s)." Upon a third conviction of a "most serious offense", the court will be required to sentence the defendant as a persistent offender to life imprisonment without the possibility of early release of any kind, such as parole or community custody. RCW 9.94A.030, 9.94A.570

The crime(s) in count(s) _____ is/are one of the listed offenses in RCW 9.94A.030.(31)(b). Upon a second conviction of one of these listed offenses, the court will be required to sentence the defendant as a persistent offender to life imprisonment without the possibility of early release of any kind, such as parole or community custody.

*Done* in Open Court and in the presence of the defendant this date: 7/28/2011

Judge/Print Name:

Deputy Prosecuting Attorney
WSBA No. 36030
Print Name: Scott S. Ikata

Attorney for Defendant
WSBA No.
Print Name

Defendant
Print Name:
ROSEMARIE ANNE HOWELL

***Voting Rights Statement:*** I acknowledge that I have lost my right to vote because of this felony conviction. If I am registered to vote, my voter registration will be cancelled.

My right to vote is provisionally restored as long as I am not under the authority of DOC (not serving a sentence of confinement in the custody of DOC and not subject to community custody as defined in RCW 9.94A.030). I must re-register before voting. The provisional right to vote may be revoked if I fail to comply with all the terms of my legal financial obligations or an agreement for the payment of legal financial obligations.

My right to vote may be permanently restored by one of the following for each felony conviction: a) a certificate of discharge issued by the sentencing court, RCW 9.94A.637; b) a court order issued by the sentencing court restoring the right, RCW 9.92.066; c) a final order of discharge issued by the indeterminate sentence review board, RCW 9.96.050; or d) a certificate of restoration issued by the governor, RCW 9.96.020. Voting before the right is restored is a class C felony, RCW 29A.84.660. Registering to vote before the right is restored is a class C felony, RCW 29A.84.140.

Defendant's signature:

I am a certified or registered interpreter, or the court has found me otherwise qualified to interpret, in the _____ _____ language, which the defendant understands. I interpreted this Judgment and Sentence for the defendant into that language.

I certify under penalty of perjury under the laws of the state of Washington that the foregoing is ture and correct.

Signed at Vancouver, Washington on (date): _____

_____                    _____
Interpreter                                            Print Name

I, Scott G. Weber, Clerk of this Court, certify that the foregoing is a full, true and correct copy of the Judgment and Sentence in the above-entitled action now on record in this office.

***Witness*** my hand and seal of the said Superior Court affixed this date: _____.

Clerk of the Court of said county and state, by: _____, Deputy Clerk

## Identification of the Defendant

ROSEMARIE ANNE HOWELL

10-1-00150-6

SID No: _____                              Date of Birth: 8/30/1962
    (If no SID take fingerprint card for State Patrol)

FBI No.                                               Local ID No.

PCN No. _____                       Other _____

Alias name, DOB:

**Race:** W                    **Ethnicity:**                    **Sex:** F

**Fingerprints:** I attest that I saw the same defendant who appeared in court on this document, affix his or her fingerprints and signature thereto.

    Clerk of the Court, Deputy Clerk, _____   Dated: 7/28/20___

**The defendant's signature:** _____

| Left four fingers taken simultaneously | Left Thumb | Right Thumb | Right four fingers taken simultaneously |
|---|---|---|---|
| | | | |

# APPENDIX 34

FILED

JUL 28 2011
11:24
Scott G. Weber, Clerk, Clark Co.

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF CLARK

STATE OF WASHINGTON,

    Plaintiff,

    v.

ROSEMARIE ANNE HOWELL,

    Defendant.

No. 10-1-00150-6

FINDINGS OF FACT AND
CONCLUSIONS OF LAW PURSUANT
TO CrR 3.5

THIS MATTER having come duly and regularly before the Court on the 25th day of July, 2011, for a 3.5 Hearing prior to trial, Plaintiff State of Washington appearing by and through Scott S. Ikata, Deputy Prosecuting Attorney for Clark County, State of Washington; and defendant Rosemarie Anne Howell appearing in person and representing herself, the Court now finds the following facts to have been proven beyond a reasonable doubt:

FINDINGS OF FACT

1.  On October 13, 2009, defendant wrote a letter to Mary O Harra with the Electronic Home Monitoring Unit (State's Trial Exhibit No. 2). The defendant's letter was in response to a letter which Ms. O Harra had written and mailed to the defendant on October 9, 2009. The defendant's letter referenced Ms. O Harra's letter and included an attached copy of Ms. O Harra's letter. The written statements in

FINDINGS OF FACT AND CONCLUSIONS OF LAW
ON 3.5 HEARING – Page 1 of 5

CLARK COUNTY PROSECUTING ATTORNEY
1200 FRANKLIN STREET • PO BOX 5000
VANCOUVER, WASHINGTON 98666-5000
(360) 397-2261 (OFFICE)
(360) 397-2230 (FAX)




defendant's letter dated October 13, 2009, were not a product of custodial interrogation and as such the requirement for Miranda Rights were not triggered.

2. On September 14, 2009, Electronic Home Monitoring Unit Field Technician Don Chapman went to the defendant's residence located at 9504 NE 5th Avenue, in Clark County, Washington, to do a routine home check of the monitoring device located in defendant's residence for the defendant's son Gary Howell who was on electronic home confinement. During Mr. Chapman's 5 to 6 minutes within defendant's residence on that date, defendant asked Mr. Chapman why he was at the residence. Mr. Chapman stated that he was from the Electronic Home Monitoring Unit and that he was there to check the monitoring device and to make sure her son Gary was not in violation of any rules for electronic home confinement. Defendant responded by saying, "oh." Mr. Chapman asked if defendant or her son had any questions about the device and both defendant and her son did not respond. After 5 to 6 minutes, Mr. Chapman left defendant's residence. Defendant's statements to Mr. Chapman were not a product of custodial interrogation and as such the requirement for Miranda Rights were not triggered.

3. On March 26, 2010, in Clark County, Washington, Clark County Sheriff's Office (hereinafter CCSO) Deputy Jesse Henschel went to serve an arrest warrant on defendant. Deputy Henschel contacted defendant in an office room in defendant's residence. Officer Henschel informed defendant that he was serving an arrest warrant as to her and that she needed to come with him. Defendant made a spontaneous utterance to Deputy Henschel that he was trying to harass her. Later, while defendant

FINDINGS OF FACT AND CONCLUSIONS OF LAW
ON 3.5 HEARING – Page 2 of 5

CLARK COUNTY PROSECUTING ATTORNEY
1200 FRANKLIN STREET • PO BOX 5000
VANCOUVER, WASHINGTON 98666-5000
(360) 397-2261 (OFFICE)
(360) 397-2230 (FAX)

and Deputy Henschel were still in the residence, defendant made a spontaneous

statement to Deputy Henschel that she would sue him and the sheriff's office. While

defendant and Deputy Henshel were walking to the deputy's patrol vehicle, defendant

made the spontaneous statement that her truck in the driveway was purchased with

money she had received from a previous lawsuit. Although defendant was in custody at

the time of her statements to Deputy Henschel, there was no interrogation by Deputy

Henschel and no express questioning of the defendant. There were no words to

defendant on the part of law enforcement which were likely to elicit an incriminating

response by defendant. Defendant's statements were not a product of interrogation but

rather were spontaneous statements. As a consequence, the requirement of Miranda

Rights were not triggered.

   4. On March 30, 2010, in Clark County, Washington, Clark County Sheriff's

Office (hereinafter CCSO) Deputy Robert Alexander, pursuant to an order of the court,

transported defendant to her residence to retrieve two firearms located in defendant's

safe. When defendant opened the safe with Deputy Alexander present, two firearms

and the subject home monitoring device were observed in defendant's safe. Defendant

then made the spontaneous statement that the device was the monitoring device for

which she had been charged for theft and had been arrested. Defendant stated that

she did not know what it was at the time she found it in her house so she put the device

in her safe. Prior to these spontaneous utterances by defendant, Deputy Alexander did

not even know the significance of the monitoring device. Although defendant was in

custody at the time of her statements to Deputy Alexander, there was no interrogation

FINDINGS OF FACT AND CONCLUSIONS OF LAW
ON 3.5 HEARING – Page 3 of 5

CLARK COUNTY PROSECUTING ATTORNEY
1200 FRANKLIN STREET • PO BOX 5000
VANCOUVER, WASHINGTON 98666-5000
(360) 397-2261 (OFFICE)
(360) 397-2230 (FAX)

by Deputy Alexander and no express questioning of the defendant.  There were no words to defendant on the part of law enforcement which were likely to elicit an incriminating response by defendant.  Defendant's statements were not a product of interrogation but rather were spontaneous statements.  As a consequence, the requirement of Miranda Rights were not triggered.

5.  The court finds that all of the verbal statements were spontaneous, that they were not the result of any custodial questioning / interrogation, and thus Miranda was not triggered.  The court makes its findings based on the testimony of the witnesses at the 3.5 hearing which is on the record and which is incorporated by reference herein.

Based on the foregoing Findings of Fact, the court makes the following:

## CONCLUSIONS OF LAW

1.  The Court has jurisdiction over the defendant Rosemarie Anne Howell and the subject matter.

/ / / / / /

/ / / / / /

/ / / / / /

FINDINGS OF FACT AND CONCLUSIONS OF LAW
ON 3.5 HEARING – Page 4 of 5

2.  Defendant's written and verbal statements alleged herein are admissible at trial, under the <u>Miranda</u> criteria.

DONE in open Court this _28_ day of _July_, 2011.

_[signature]_
THE HONORABLE DIANE M. WOOLARD
JUDGE OF THE SUPERIOR COURT

Presented by:

_[signature]_
Scott S. Ikata, WSBA #36030
Deputy Prosecuting Attorney

Copy received and ~~approved as to form only this~~
this _28_ day of _July_, 2011.

_[signature]_
Defendant Rosemarie Anne Howell
Pro se     *Objects on Record - miranda a trigger w/ later accusing theft - no warrant to date served*
*No miranda a.*
*As to form only*

CLARK COUNTY PROSECUTING ATTORNEY
1200 FRANKLIN STREET • PO BOX 5000
VANCOUVER, WASHINGTON 98666-5000
(360) 397-2261 (OFFICE)
(360) 397-2230 (FAX)

# APPENDIX 35

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF CLARK

| STATE OF WASHINGTON, | **AMENDED INFORMATION** |
|---|---|
| Plaintiff, | |
| v. | No. 10-1-00150-6 |
| ROSEMARIE ANNE HOWELL | (CCSO 09-15752) |
| Defendant. | |

COMES NOW the Prosecuting Attorney for Clark County, Washington, and does by this inform the Court that the above-named defendant is guilty of the crime(s) committed as follows, to wit:

**COUNT 01 - THEFT IN THE SECOND DEGREE - 9A.56.020(1)(a) /9A.56.040(1)(a)**
That she, ROSEMARIE ANNE HOWELL, in the County of Clark, State of Washington, in the time intervening between September 29, 2009, and March 30, 2010, did wrongfully obtain or exert unauthorized control over the property of another, of a value exceeding $750, with intent to deprive Clark County, the true owner thereof, of such property; contrary to Revised Code of Washington 9A.56.020(1)(a) and 9A.56.040(1)(a).

ANTHONY F. GOLIK
Prosecuting Attorney in and for
Clark County, Washington

Date:  July 19, 2011

BY: _____
Scott S. Ikata, WSBA #36030
Deputy Prosecuting Attorney

| DEFENDANT: ROSEMARIE ANNE HOWELL | | | |
|---|---|---|---|
| RACE: W | SEX: F | DOB: 08/30/1962 | |
| DOL: HOWELRA381NT WA | | SID: | |
| HGT: 504 | WGT: 125 | EYES: BLU | HAIR: |
| WA DOC: | | FBI: | |
| LAST KNOWN ADDRESS(ES): | | | |
| JIS - NO RECORD, | | | |
| DOL - 9504 NE 5TH STREET, VANCOUVER WA 98664 | | | |
| FORS - NO RECORD, | | | |
| HOME - 9508 NE 5TH STREET, VANCOUVER WA 98664 | | | |

AMENDED INFORMATION - 1
si

# APPENDIX 36

FILED

FEB 15 2011
7:09
Scott G. Weber, Clerk, Clerk Co.

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF CLARK

STATE OF WASHINGTON,

    Plaintiff,

    v.

ROSEMARIE ANNE HOWELL,

    Defendant.

No. 10-1-00150-6

FINDINGS OF FACT AND
CONCLUSIONS OF LAW ON
DEFENDANT'S MOTION TO DISMISS;
AND ORDER OF THE COURT

    THIS MATTER having come duly and regularly before the Court on the 6th day of January, 2011, for a hearing on defendant Howell's motion to dismiss, Plaintiff State of Washington appearing by and through Scott S. Ikata, Deputy Prosecuting Attorney for Clark County, State of Washington; and defendant Rosemarie Anne Howell appearing pro se, the Court makes the following **Findings of Fact**:

    As reflected in the State's Response memorandum which the Court now adopts and incorporates by reference herein:

1) On March 29, 2010, defendant was in-custody when she appeared for her First Appearance in this case. The case was set-over to the next day, March 30, 2010.

2) On March 30, 2010, at her First Appearance, an arraignment date was set for April 5, 2010.

ORDER OF THE COURT - 1

CLARK COUNTY PROSECUTING ATTORNEY
1200 FRANKLIN STREET • PO BOX 5000
VANCOUVER, WASHINGTON 98666-5000
(360) 397-2261 (OFFICE)
(360) 397-2230 (FAX)



3) On April 5, 2010, 8 days had elapsed as of this date which was set for arraignment. Defendant appeared in court, out of custody. Defendant was ordered to appear the next day, April 6, 2010, for Western State Hospital competency paperwork to be prepared and filed.

4) On April 6, 2010, at the arraignment, defendant was remanded to custody. As of this date, 9 days had elapsed. The Court signed an order for a Western State Hospital competency evaluation. Excluded time began on this date pursuant to CrR 3.3 (e) (1).

5) On April 9, 2010, defendant was allowed out of custody on Supervised Release pending her Western State Hospital competency evaluation.

6) On July 7, 2010. Status report from Western State Hospital: defendant, while out of custody, had not complied with submitting to an evaluation.

7) On July 22, 2010. Defendant remanded to custody in order to have her available to get the Western State Hospital evaluation completed.

8) On August 5, 2010. Nicole Dalton retained as new attorney for defendant.

9) On August 9, 2010. Western State Hospital interview of defendant occurred while defendant was in custody.

10) On August 17, 2010. Western State Hospital evaluation report received.

11) On August 31, 2010. Defendant failed to appear for status hearing regarding Western State Hospital evaluation report.

12) On September 1, 2010, a competency hearing was conducted. Defendant was present, out of custody. Defendant was found competent pursuant to written order entered by the Court. Per CrR 3.3(e)(1), excluded time ended as of this date. Trial was set for 11/22/2010 (83 days elapsed) with the readiness hearing set for 11/18/2010.

13) On November 18, 2010, at readiness hearing: the Court found defense counsel Nicole Dalton was disqualified pursuant to conflict under CrR 3.2. Pursuant to CrR 3.3 (c) (2) (vii), the commencement date was reset to 11/18/2010. New dates were set: trial set for 1/31/2011 (74 days elapsed) with the readiness hearing set for 1/27/2011.

ORDER OF THE COURT - 2

CLARK COUNTY PROSECUTING ATTORNEY
1200 FRANKLIN STREET • PO BOX 5000
VANCOUVER, WASHINGTON 98666-5000
(360) 397-2261 (OFFICE)
(360) 397-2230 (FAX)

Based on the foregoing findings of fact, the Court makes the following

Conclusion of Law:

1) Defendant was arraigned within 14 days of her first appearance.

2) Pursuant to CrR 3.3 (e) (1), there was excluded time from when the Court ordered the Western State Hospital competency evaluation (on April 6, 2010) to the time when the Court entered the written order finding defendant competent (on September 1, 2010).

3) Defendant retained new counsel, Nicole Dalton, on November 5, 2010. At the readiness hearing on November 18, 2010, Nicole Dalton was disqualified under CrR 3.2 and the commencement date was reset pursuant to 3.3 (c) (2) (vii). The disqualification of defense counsel Nicole Dalton re-set the commencement date with the new commencement date being the date of the disqualification which was November 18, 2010.

4) As a consequence, pursuant to CrR 3.3 (e) (1) and CrR 3.3 (c) (2) (vii), there has no been violation to defendant's right to a speedy trial.

THEREFORE, THIS MATTER having come before the court for a hearing in the above-entitled matter, and the Court having been advised in the premises, now, therefore,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the defendant's motion to dismiss is DENIED.

DONE in Open Court this _15_ day of _____Feb_____, 2011.

THE HONORABLE DIANE M. WOOLARD
JUDGE OF THE SUPERIOR COURT

ORDER OF THE COURT - 3

1

2

Presented by:

3

4   Scott S. Ikata                    1/24/11

5   Deputy Prosecuting Attorney, WSBA No. 36030.

6

7

8   Copy received and approved as to form only this   *I do not agree*
    this ___ day of _____, 2011.

9

10

11  Rosamarie Anne Howell, pro se

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

ORDER OF THE COURT - 4

CLARK COUNTY PROSECUTING ATTORNEY
1200 FRANKLIN STREET • PO BOX 5000
VANCOUVER, WASHINGTON 98666-5000
(360) 397-2261 (OFFICE)
(360) 397-2230 (FAX)

# APPENDIX 37

**FILED**

MAR 30 2010 _10.54_

Sherry W. Parker, Clerk, Clark Co.

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF CLARK

STATE OF WASHINGTON,
      Plaintiff,

    v. RoseMarie Anne Howell

    Defendant.

No. 10-1-00150-6

MEMORANDUM OF DISPOSITION

CRIME(S): _DUI x 2_

____ The defendant shall be released from custody today on the above-captioned case(s) only.

____ The defendant is hereby remanded to custody: ____ Hold without Bail ____ Bail is set at $ _____

____ The defendant has been sentenced to confinement totaling _____ days/months, to be served as follows:

    _____ days credit for time served _____ days of additional total confinement

    _____ days of additional partial confinement on: _____

    _____ work/educational release _____ work crew _____ community service
    ☐ Defendant shall report within 24 hours of this order/release from custody
    ☐ Defendant shall be screened while in custody.
    (If found to be medically unfit for work crew, refer to original sentencing orders for instructions)

____ The defendant is hereby Ordered to return to court on _____ at _____ am/pm.

____ The defendant shall report to the Department of Corrections within 24 hours of this order/release from custody.

____ The defendant shall have a biological sample collected for purposes of DNA identification analysis and the defendant shall fully cooperate in the testing.   Report to the CCSO within 24 hours to submit sample.

**FAILURE TO REPORT TO JAIL, WORK RELEASE OR WORK CREW MAY CONSTITUTE THE CRIME OF ESCAPE AND COULD SUBJECT THE DEFENDANT TO IMMEDIATE ARREST. FAILURE TO RETURN TO COURT AS ORDERED MAY CONSTITUTE THE CRIME OF BAIL JUMP.**

Other: _Defendant Shall Allow Law Enforcement To Retrieve The Firearms That The Defendant has in the Safe For SafeKeeping. Law Enforcement Shall Accompany the Defendant To The Residence._

Dated this _30_ day of _March_, 20 _10_.

              _____
              Judge of the Superior Court

_____    _____    _____
Defendant               Defense Atty WSBA#         Dep Pros Atty WSBA#

# APPENDIX 38

# Clark County Property Information
## Account Summary

Q New Search

Web Version 
Page to .PDF

**Property Identification Number:** 111019018   MapsOnline
**Property Type:** Real
**Property Status:** Active  **Tax Status:** Regular
**Site Address:** 9508 NE 5TH ST, VANCOUVER, 98664   (Situs Addresses)
**Abbreviated Legal Description:** BRISLAWN LOT 5 BLK 1

Account | Building | Environmental | Taxes | Auditor Docs | Documents | Permits | Sales Search

| Property Owner | Owner Mailing Address | Property Location Address |
|---|---|---|
| WOODS DENNIS & WOODS JULIE | 9508 NE 5TH ST<br>VANCOUVER WA , 98664<br>US | 9508 NE 5TH ST, VANCOUVER, 98664<br>Google Maps Street View<br>Bing Maps Birds Eye |

| Administrative Data    Info... | | Land Data | | Assessment Data    Info... | |
|---|---|---|---|---|---|
| Zoning Designation | Codes... R-6 | Clark County Road Atlas | page 9 | **2017 Values for 2018 Taxes** | |
| Zoning Overlay(s) | none | Approximate Area Info... | 10,814 sq. ft. | Market Value as of January 1, 2017 | |
| Comprehensive Plan | UL | | 0.25 acres | Land Value | $93,173.00 |
| Comp. Plan Overlay(s) | none | Subdivision | NORELIUS ORCHARD TRACTS BRISLAWN | Building Value | $94,840.00 |
| Census Tract | 412.06 | | | Total Property | $188,013.00 |
| Jurisdiction | Vancouver | Survey | No Records | **Taxable Value** | |
| Fire District | Vancouver Fire | | | Total | $188,013.00 |
| Park District | District 2 | | | | |
| School District | Evergreen | **Sales History** | | **2016 Values for 2017 Taxes** | |
| Elementary | Marrion | Sale Date | | Market Value as of January 1, 2016 | |
| Middle School | Wy East | Document Type | | Land Value | $88,435.00 |
| High School | Mt. View | Excise Number | | Building Value | $86,231.00 |
| Sewer District | Vancouver | Document Number | | Total Property | $174,666.00 |
| Water District | Vancouver | Sale Amount | | **Taxable Value** | |
| Neighborhood | n/a | | | Total | $174,666.00 |
| Section-Township-Range | SW 1/4,S28,T2N,R2E | | | | |
| image: | .PDF | | | | |
| Urban Growth Area | Vancouver | | | **General** | |
| C-Tran Benefit Area | Yes | | | Re-valuation Cycle | 1 |
| School Impact Fee | Evergreen | | | Assessor Neighborhood | 118 |
| Transportation Impact Fee | Cascade | | | | |
| Transportation Analysis Zone | 144 | | | | |
| Waste Connections Garbage Collection Day | Wednesday | | | | |
| Last Street Sweeping | n/a | | | | |
| CPU Lighting Utility District | 0 | | | | |
| Burning Allowed | No | | | | |
| Wildfire Danger Area | No | | | | |
| Public Health Food Inspector District | District 5 | | | | |
| Public Health WRAP Inspector District | District 1 | | | | |

If you have questions concerning the data on this page, please contact the Clark County Assessor's Office. Main Phone: (360) 397-2391, Email: asrgis@clark.wa.gov

# Recorded Document Detail

| | |
|---|---|
| **Document** | 3653049 |
| **Title** | DT — DEED OF TRUST |
| **Grantor(s)** | WOODS DENNIS A, WOODS JULIE A, |
| **Grantee(s)** | WASHINGTON MUTUAL BANK, FIRST AMERICAN TITLE, |
| **Parcel(s)** | 111019018 |
| **Excise No.** | |
| **Date Recorded** | Jun 09, 2003 |
| **Recorded By** | FIRST AMERICAN TITLE |
| **View Excise** | |
| **Related Document(s)** | 4931112  4931113 |

[ Back to Results ]   [ New Search ]

**Washington State Archives**

**Recording Guide for Documents**

If you have any questions concerning the data on this page, please contact Clark County
Auditor's Office. Main Phone: (360) 397-2208, Email: **recording@clark.wa.gov**

© 2015 Clark County Washington

Terms of Use (http://www.clark.wa.gov/terms-of-use)
Privacy Policy (http://www.clark.wa.gov/privacy-policy)
Health Information Privacy Notice (http://www.clark.wa.gov/health-information-privacy-
notification)

# Recorded Document Detail

| | |
|---|---|
| **Document** | 4926873 |
| **Title** | DT — DEED OF TRUST |
| **Grantor(s)** | WOODS DENNIS A, WOODS JULIE A, |
| **Grantee(s)** | JP MORGAN CHASE BANK, SERVICELINK, |
| **Parcel(s)** | 111019018 |
| **Excise No.** | |
| **Date Recorded** | Dec 28, 2012 |
| **Recorded By** | SELECT TITLE/SERVICELINK |
| **View Excise** | |
| **Related Document(s)** | |

Back to Results    New Search

**Washington State Archives**

**Recording Guide for Documents**

If you have any questions concerning the data on this page, please contact Clark County Auditor's Office. Main Phone: (360) 397-2208, Email: **recording@clark.wa.gov**

© 2015 Clark County Washington

**Terms of Use (http://www.clark.wa.gov/terms-of-use)**
**Privacy Policy (http://www.clark.wa.gov/privacy-policy)**
**Health Information Privacy Notice (http://www.clark.wa.gov/health-information-privacy-notification)**

# Recorded Document Detail

| | |
|---|---|
| **Document** | 4931113 |
| **Title** | REC — RECONVEYANCE |
| **Grantor(s)** | JP MORGAN CHASE CUSTODY SERVICES INC, |
| **Grantee(s)** | WOODS DENNIS A, WOODS JULIE A, |
| **Parcel(s)** | 111019018 |
| **Excise No.** | |
| **Date Recorded** | Jan 14, 2013 |
| **Recorded By** | NATIONWIDE TITLE CLEARING |
| **View Excise** | |
| **Related Document(s)** | 3653049 |

Back to Results    New Search

**Washington State Archives**

**Recording Guide for Documents**

If you have any questions concerning the data on this page, please contact Clark County Auditor's Office. Main Phone: (360) 397-2208, Email: **recording@clark.wa.gov**

© 2015 Clark County Washington

**Terms of Use (http://www.clark.wa.gov/terms-of-use)**
**Privacy Policy (http://www.clark.wa.gov/privacy-policy)**
**Health Information Privacy Notice (http://www.clark.wa.gov/health-information-privacy-notification)**

# APPENDIX 39

1

2          **COPY**
           **ORIGINAL FILED**

3          OCT 20 2009

4          Sherry W. Parker, Clerk, Clark Co.

5          IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

6              IN AND FOR THE COUNTY OF CLARK

7

8   ROSE HOWELL,                    )
                                    )
9            Plaintiff,             )  Case No.: 01-2-02693-7
                                    )
10       vs.                        )  ORDER FOR DISBURSMENT OF FUNDS
                                    )
11  ARLIS PLOTNER, as the personal  )
    representative of the ESTATE OF )
12  KEITH W. PLOTNER, Deceased,     )
                                    )
13           Defendant.             )
    _____)

14

15  IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

    The funds in the amount of $6,946.50 that have been placed with the
16
    County Clerk shall be disbursed as follows:
17
         1.    Steven L. Busick, $3,937.83 to satisfy his attorney lien;
18
         2.    Medicare Secondary Payer Recovery Contractor, $139.04;
19
         3.    State Farm Insurance, $1,602.52;
20
         4.    The balance of the funds to plaintiff Rose Howell.
21

22  Further, the lien as claimed by Rose Howell on behalf of undisclosed

23  "special agreement" individuals is denied.  The individuals have not

24

25

Order for Disbursement of Funds – Page 1 of 2

1  filed a lien on their behalf nor made any showing of the amounts paid

2  or any other supportive documentation in support of said lien.

3

4  Dated this _20_ day of October, 2009.

5

6

7

8  Robert L. Harris
   Superior Court Judge, Dept. 5

9

   RLH:lmk

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

COPY
ORIGINAL FILED

OCT 20 2009

Sherry W. Parker, Clerk, Clark Co.

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF CLARK

ROSE HOWELL,

        Plaintiff,

    vs.

ARLIS J. PLOTNER, as the personal

representative of the ESTATE OF KEITH

WALTER PLOTNER, DECEASED,

        Defendant

Case No. :01-2-02693-7

ORDER ON PLAINTIFF'S
THIRD PARTY
"SPECIAL AGREEMENT"
LIEN

      THIS MATTER was tried by the court on May 26 and 27, 2009. The court entered judgment July 17, 2009 in the amount of $6, 867.52. August 7, 2009 the court ordered the defendant's Post-Judgment Motion allowing a deposit of insufficient funds in the amount of $6, 946.50 with lien claimants to be heard within thirty days. The plaintiff represented Pro Se and the defendant's representing attorney Christopher Rounds requested prior leave of the court to opt out of the lien hearing.

      The plaintiff came forward with a valid lien on behalf third party "special agreement" loans, pursuant to RCW 60.40.010 (3) are superior to all other liens.

      **THEREFORE**, the court having considered the plaintiff's motions pursuant to RCW 60.40.010 (3). The plaintiff's lien on behalf third party "special agreement" lenders who provided valuable service(s) is superior to all other liens. *Therefore*, the court finds as follows:

# APPENDIX 40

3

**FILED**

AUG 0 7 2009    9:37 AM

Sherry W. Parker, Clerk, Clark Co.

SUPERIOR COURT OF WASHINGTON

FOR CLARK COUNTY

| | |
|---|---|
| ROSE HOWELL | Case No.: 01-2-02693-7 |
| Plaintiff | 09-9-5376-5 |
| v. | |
| ARLIS J. PLOTNER, as personal representative of the ESTATE OF KEITH WALTER PLOTNER, DECEASED | ORDER ON POST-JUDGMENT MOTIONS |
| Defendant | Clerk's action required |

This matter came before the court on various cross motions.  Plaintiff

appeared pro se, and defendant appeared though her attorney, Christopher

Rounds.  Having considered the pleadings, motions, and arguments advanced by

both parties, the court enters the following order in open court:

**A.  Plaintiff's motions:**

___X___  All of plaintiff's post-judgment motions are denied.

_____  All of plaintiff's post-judgment motions are denied, with the

exceptions:

_____

_____

_____  Other:_____

ORDER ON POST-JUDGMENT MOTIONS  PAGE 1 –

446

Law Offices of Andersen & NyburgEmployees of Liberty Mutual Group
PO Box 4400
Portland, OR 97208-4400
(503)736-7957/FAX (800) 972-3206
Christopher.Rounds@LibertyMutual.com

1  _____

2  _____

3  **B. Defendant's CR 11 motion is hereby:**

4  ___  Granted in the amount of $_____

5  ___  Denied.

6

7

8  **C. Defendant's motion to amend judgment is hereby:**

9  ___  Granted. After defendant's check clears, the court clerk shall remit

10  $_____ to defendant.

11  ___  Denied

12  ___  Withdrawn

13  **D. Defendant's motion for leave to deposit funds into court is hereby:**

14  ✗  Granted. Defendant shall tender a check in the amount of $6, 946.50

15  to the court clerk. The court clerk shall retain the funds until further

16  order of the court.

17

18  ___  Denied.

19  ___  Other:_____

20  _____

21  **E. Defendant's motion for entry of satisfaction of judgment is hereby:**

22  ✗  Granted. Upon receipt of a check in the amount of $ 6,946.50, the

23  court clerk shall enter a satisfaction of judgment into the court record.

24  ___  Denied.

25  ___  Other:_____

26  _____

27

ORDER ON POST-JUDGMENT MOTIONS  PAGE 2 –

1   **F. Defendant's request regarding further proceedings is hereby:**

2   X   Granted. Defendant shall notify all known lien claimants that a hearing

3   will be held on _30 days from notice_. The hearing will occur regardless of

4   whether an appeal has been filed at that time.  Lien claimants who do

5   not wish to appear in person are instructed to send written materials

6   to the undersigned judge, with copies to plaintiff and defense counsel.

7

8   __  Denied.

9   __  Other:_____

10  Dated this _7_ day of August, 2009

11                                              _Robert Harris_

12                                              Judge Robert L. Harris

13

14

15  Presented by:

16  _Chris B Rounds_
    Christopher B. Rounds, WSB 17583

17

18

19

20

21

22

23

24

25

26

27

ORDER ON POST-JUDGMENT MOTIONS  PAGE 3 –

# APPENDIX 41

**FILED**

JUL 16 2009

Sherry W. Parker, Clerk, Clark Co.

IN THE SUPERIOR COURT OF WASHINGTON

FOR THE COUNTY OF CLARK

ROSE HOWELL,

                              Plaintiff

        v.

ARLIS J. PLOTNER, as personal
representative of the ESTATE OF
KEITH WALTER PLOTNER, DECEASED,

                              Defendant

Case No.: 01-2-02693-7

[PROPOSED] JUDGMENT

09-9-05376-5

    THIS MATTER was tried to the court on May 26 and 27, 2009. The court found

that plaintiff was injured in an accident caused by the deceased, and that plaintiff is

entitled to damages in the amount of $6,867.52. The court has since determined

that the defendant had made a CR 68 offer in an amount that exceeded the

damages ultimately awarded by the court.  Therefore, defendant is entitled to costs

of $450. That amount should be deducted from the damages before the damages

are reduced to a judgment. Therefore, plaintiff is entitled to entry of judgment in

the amount of $6417.52, as follows:

////

////

///

PAGE 1 – [PROPOSED] JUDGMENT

Law Offices of Andersen & NyburgEmployees of Liberty Mutual Group
PO Box 4400
Portland, OR 97208-4400
PHONE 503-736-7957/FAX 503-736-7276
Christopher.Rounds@LibertyMutual.com

1

2
## JUDGMENT
3
1) Plaintiff is entitled to damages from Defendant in the amount of
4
$6,867.52.
5
2) Defendant is entitled to costs of $ 450.
6
3) The costs owed to defendant shall be deducted from the damages owed
7
by defendant to plaintiff.
8
4) Judgment in favor of plaintiff is hereby entered in the amount of
9
10
$6,417.52.
11
## JUDGMENT SUMMARY
12
Judgment Debtor:                      Safeco Insurance Company of Illinois
13
Judgment Debtor's Attorney:           Christopher B. Rounds
14
Judgment Creditor:                    Rose Howell
15
Judgment Amount:                      $6,867.52
16
Interest Owed to Date:                $ 0
17
Judgment to Bear Interest at:         _____ %
18
Taxable Costs:                        Already incorporated above
19
20
DATED this __17__ day of __July__, 2009
21
22
23
Robert L. Harris, Superior Court Judge
24
Submitted by:
25
26
                        3463 Fw
27
Christopher B. Rounds, WSBA No. 17583
Attorney for Defendants

PAGE 2 – [PROPOSED] JUDGMENT

Law Offices of Andersen & Nyburg Employees of Liberty Mutual Group
PO Box 4400
Portland, OR 97208-4400
PHONE 503-736-7957/FAX 503-736-7276
Christopher.Rounds@LibertyMutual.com

1

2

## CERTIFICATE OF SERVICE

3

4    I hereby certify that on July 15th, 2009, I caused to be served a copy of the

[Proposed] Judgment by:

5

6    | | PERSONAL SERVICE |
     | | LEGAL MESSENGER |
7    | X | U.S. MAIL |
     | | HAND DELIVERED |
8    | | EXPRESS DELIVERY |
     | | FACSIMILE |

9

10    To the following address or addresses;

11   Rose Howell
     9504 NE 5th Street
12   Vancouver, Washington 98664
            Pro Se Plaintiff
13

14

15

16

17   Christopher B. Rounds, WSBA No. 17583
     Attorney for Defendant
18

19

20

21

22

23

24

25

26

27

PAGE 3 – [PROPOSED] JUDGMENT

Law Offices of Andersen & NyburgEmployees of Liberty Mutual Group
PO Box 4400
Portland, OR 97208-4400
PHONE 503-736-7957/FAX 503-736-7276
Christopher.Rounds@LibertyMutual.com

# APPENDIX 42

~~Exhibit~~

~~2~~

~~Page 1 · 2 pg~~

COPY
ORIGINAL FILED

APR 1 0 2009

Sherry W. Parker, Clerk, Clark Co.

IN THE SUPERIOR COURT OF WASHINGTON

FOR THE COUNTY OF CLARK

ROSE HOWELL

                  Plaintiff

v.

ARLIS J. PLOTNER, as personal
representative of the ESTATE OF
KEITH WALTER PLOTNER, DECEASED

                  Defendant

Case No.:  01-2-02693-7

ORDER ON DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

      This matter came before the court on the defendant's Motion for Summary

Judgment.  Oral argument was conducted on March 13, 2009, and the parties

returned to court for additional proceedings on April 10, 2009.  The court has

reviewed the documents marked on the court's docket sheet, attached hereto as

Exhibit 1.  In addition, the court has reviewed

  a) the Defendant's Supplemental Memorandum Regarding Motion for Summary

     Judgment; and

  b) other:_____

          _____

///

///

///

LEGAL

APR 1 3 2009

Law Offices of Andersen & Nyburg Employees of Liberty Mutual Group
PO Box 4400
Portland, OR 97208-4400
PHONE 503-736-797/FAX 503-736-7276

Based upon the foregoing, IT IS HEREBY ORDERED:

✗   that Defendant's Motion for Summary Judgment is granted; but

X   Other: _____ only as to the syringcomelia

_____ condition

DATED THIS 12 DAY OF april, 2009.

_____
JUDGE ROBERT L. HARRIS

Presented by:

By: _____
Christopher B. Rounds, WSBA No. 17583
of attorneys for Defendant

~~EXHIBIT~~

E

~~PAGE 1-2~~   Pg 2

PAGE 2 – ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# APPENDIX 43

1

2

3

4

5

6

7

8

9

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF CLARK

10

11

12

13

14

15

16

17

18

| | | |
|---|---|---|
| ROSE HOWELL | ) | No.   01-2-02693-7 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER DENYING PLAINTIFF'S |
| | ) | MOTION FOR DEFAULT |
| | ) | |
| | ) | |
| ARLIS J. PLOTNER, as personal representative | ) | |
| of the ESTATE OF KEITH WALTER | ) | |
| PLOTNER, DECEASED | ) | |
| Defendant. | ) | |

19

20

21   This matter having come before the court on Plaintiff's Motion for Default,

22   Plaintiff appearing Pro Se, and Defendant appearing by and through attorney

23   Angela M. Stewart of Law Offices of Robert S. Dorband,

24   The court finding as follows:

25   (1)   Defendant has appeared, plead and defended herein through the firm

26         of Robert S. Dorband, including Defendant's Answer filed to

27

ORDER DENYING DEFAULT - 1

1      Plaintiff's Complaint filed December 2, 2003, and Defendant's Answer

2      to Amended Complaint filed on July 14, 2004.

3    (2)   Plaintiff's (Second) Amended Complaint filed August 29, 2005, stated

4      the same allegations as the Amended Complaint, and was for the sole

5      purpose of substituting the estate of the defendant;

6    (3)   Defendant was entitled to notice on Plaintiff's Motion for Default and

7      entitled to file an Answer prior to the hearing cited for March 7, 2008;

8    (4)   Prior to the hearing, Defendant filed Answer to (Second) Amended

9      Complaint on February 15, 2008;

10   Based upon the above record of proceedings, the Court hereby

11   ORDERS AS FOLLOWS:

12   (1)   Plaintiff's Motion for Default is denied.

13   (2)   Plaintiff's Motions for Reconsideration of Default are denied.

14

15

16

17   DATED this 11th day of April, 2008.

18

19                   /S/

20                   Judge Barbara D. Johnson

21

22

23

24

25

26

27

ORDER DENYING DEFAULT - 2