# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

NATIONAL VETERANS LEGAL
SERVICES, et al.,

          *Plaintiffs*,

          v.

UNITED STATES OF AMERICA

          *Defendant*.

Civil Action No. 16-745 (ESH)

### DEFENDANT'S MEMORANDUM IN SUPPORT OF
### CROSS-MOTION FOR SUMMARY JUDGMENT AND IN
### OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

JESSIE K. LIU
D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN
D.C. BAR # 924092
Chief, Civil Division

By:    */s/ W. Mark Nebeker*
       W. MARK NEBEKER (D.C. Bar #396739)
       BRIAN J. FIELD (D.C. Bar #985577)
       Assistant United States Attorneys
       555 4th Street, N.W.
       Washington, D.C. 20530
       (202) 252-2536
       mark.nebeker@usdoj.gov

# TABLE OF CONTENTS

BACKGROUND ............................................................................................................ 2

STANDARD OF REVIEW ......................................................................................... 8

ARGUMENT .............................................................................................................. 8

   I.   DEFENDANT HAS COMPLIED WITH THE E-GOVERNMENT ACT ........................ 8

      A.The Text of the E-Government Act Confirms That Defendant's
      PACER Fees are Lawful ................................................................................. 9

      B. The E-Government Act's Legislative History Confirms that
      Defendant's PACER Fees are Lawful ............................................................ 16

      C. Defendant's Use of PACER Fees is Lawful ............................................ 19

   II.   PLAINTIFFS' MISCELLANEOUS ARGUMENTS LACK MERIT ............................ 20

CONCLUSION.......................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).................................................................................. 8

*Capital Cities Communications, Inc. v. FCC*,
   554 F.2d 1135 (D.C. Cir. 1976) .............................................................. 22

*Carter v. United States*,
   530 U.S. 255 (2000).................................................................................. 11

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).................................................................................. 8

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*,
   447 U.S. 102 (1980).................................................................................. 18

*Cox v. New Hampshire*,
   312 U.S. 569 (1941).................................................................................. 24

*Eastern Connecticut Citizens Action Grp. v. Powers*,
   723 F.2d 1050 (2d Cir. 1983)................................................................... 24

*Fernandes v. Limmer*,
  663 F.2d 619 (5th Cir. 1981) ............................................................................ 24

*Gallenstein v. United States*,
  975 F.2d 286 (6th Cir.1992) ............................................................................ 21

*Lumbert v. Illinois Dep't of Corrections*,
  827 F.2d 257 (7th Cir. 1987) ............................................................................ 22

*Morton v. Mancari*,
  417 U.S. 535 (1974) ........................................................................................ 21

*Murdock v. Penn.*,
  319 U.S. 105 (1943) ........................................................................................ 24

*Murphy Exploration and Prod. Co. v. U.S. Dep't of Interior*,
  252 F.3d 473 (D.C. Cir. 2001) ................................................................... 11, 12

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
  551 U.S. 644 (2007) ........................................................................................ 21

*Nat'l Ass'n of Mortg. Brokers v. Bd. of Govs. of Fed. Reserve Sys.*,
  773 F. Supp. 2d 151 (D.D.C. 2011) ................................................................ 14

*Nat'l Awareness Found. v. Abrams*,
  50 F.3d 1159 (2d Cir. 1995) ............................................................................ 24

*Russello v. United States*,
  464 U.S. 16 (1983) .......................................................................................... 13

*Sullivan v. City of Augusta*,
  511 F.3d 16 (1st Cir. 2007) ............................................................................. 24

*Sullivan v. Finkelstein*,
  496 U.S. 617 (1990) ........................................................................................ 18

*TRW, Inc. v. Andrews*,
  534 U.S. 19 (2001) .......................................................................................... 14

*United States v. Braxtonbrown-Smith*,
  278 F.3d 1348 (D.C. Cir. 2002) ...................................................................... 16

*Williams v. Taylor*,
  529 U.S. 362 (2000) ........................................................................................ 11

**Statutes**

15 U.S.C. § 77f ...................................................................................................... 15

28 U.S.C. § 612 ................................................................................... 3, 10, 14, 16

28 U.S.C. § 1911 .................................................................................................. 22

28 U.S.C. § 1913 note ................................................................. 3, 9, 11, 12, 18

28 U.S.C. § 1914 ............................................................................................ 3, 22

28 U.S.C. § 1926 ............................................................................................ 4, 22

28 U.S.C. § 1930 ................................................................................................ 4, 14, 22

31 U.S.C. § 9701 .................................................................................................... 20, 21

Pub. L. No. 101-162 ................................................................................................ 2, 10

Pub. L. No. 101-515 ...................................................................................................... 3

Pub. L. No. 102-140 ............................................................ 1, 3, 6, 9, 10, 14, 15, 22

Pub. L. No. 104-106 .................................................................................................... 10

Pub. L. No. 104-317 ...................................................................................................... 4

Pub. L. No. 107-347 ............................................................................... 1, 5, 6, 9, 13

Pub. L. No. 108-420 .................................................................................................... 10

Pub. L. No. 110-161 ................................................................................................ 7, 15

**Other Authorities**

Government Accountability Office,
   *Principles of Federal Appropriations Law,* 2008 WL 6969303 ............................................. 22

H. Rep. No. 102-709 ...................................................................................................... 4

H. Rep. No. 104-676 .................................................................................................... 19

H. Rep. No. 107-787 .................................................................................................... 17

H. Rep. No. 108-221 ................................................................................................ 6, 17

H. Rep. No. 108-401 ...................................................................................................... 6

Judiciary FY07 Financial Plan (Mar. 14, 2007) ................................................ 7, 17, 18

Ltr. from Rep. Serrano (May 2, 2007) ........................................................................ 7

Ltr. from Sens. Durbin and Brownback (May 2, 2007) .............................................. 7

Rep. of Proceedings of the Judicial Conference of the United States (Sept. 18, 1988) .................. 2

Rep. of Proceedings of the Judicial Conference of the United States (Mar. 14, 1989) .................. 2

Rep. of Proceedings of the Judicial Conference of the United States (Mar. 13, 1990) .................. 3

Rep. of Proceedings of the Judicial Conference of the United States (Sept. 20, 1993) .................. 4

Rep. of Proceedings of the Judicial Conference of the United States (Mar. 13, 1996) .................. 4

Rep. of Proceedings of the Judicial Conference of the United States (Sept. 15, 1998) .................. 5

Rep. of Proceedings of the Judicial Conference of the United States (Mar. 14, 2001) .................. 5

Rep. of Proceedings of the Judicial Conference of the United States (Mar. 13, 2002) .................. 5

Rep. of Proceedings of the Judicial Conference of the United States (Sept. 13, 2011) .................. 7

S. Rep. No. 104-676 ...................................................................................................... 5

S. Rep. No. 105-235 ...................................................................................................... 7

S. Rep. No. 107-174 ........................................................................................................... 13, 17

S. Rep. No. 108-144 ............................................................................................................. 6, 17

**Rules**

Fed. R. Civ. P. 56 ...................................................................................................................... 8

Plaintiffs, a class of individuals and entities charged for using Defendant's Public Access to Court Electronic Records ("PACER") system, ask this Court to grant summary judgment in their favor on liability in this matter. *See* Pls.' Mot. for Summ. J. at 1 (ECF No. 52) (hereinafter, "Pls.' Mot."). In Plaintiffs' estimation, the Defendant violated the E-Government Act of 2002 by charging PACER fees that "far exceed the cost of providing the records[.]" Pls.' Mot. 1. This contention is rooted in Plaintiffs' belief that the E-Government Act bars Defendant from charging any fee "that exceed[s] the cost of administering PACER." Pls.' Mot. 12. Not so. Indeed, Plaintiffs' understanding runs counter to the plain text of the E-Government Act, as well as Congress' repeated approval of Defendant's use of funds obtained through PACER. For these reasons, as well as the others discussed herein, this Court should deny Plaintiffs' Motion and instead grant summary judgment in Defendant's favor.

From 1991 to 2002, Congress required the Judicial Conference to prescribe reasonable fees for services that provide electronic access to court data. *See* Pub. L. No. 102-140, § 303. Through the E-Government Act of 2002, Congress eliminated this requirement. Instead, the E-Government Act authorized the Judicial Conference to charge fees for public access services, as it deemed necessary. *See* Pub. L. No. 107-347. Accordingly, there can be no real debate that Congress expressly granted the Judicial Conference authority to determine the appropriate level of fees to enhance public access beyond just the costs associated with administering PACER.

In the instant dispute, the question becomes whether the E-Government Act's elimination of the fee requirement was intended to require the Judicial Conference to set a PACER fee to cover only "the cost of administering PACER," as Plaintiffs contend, *see* Pls.' Mot. 12, or whether it was intended to grant the Judicial Conference discretion in setting fees and determining when to

charge such fees to fund its public access services and the services Congress expects will be funded from these fees.

As discussed herein the relevant statutory text and legislative history reveal that the E-Government Act was intended to provide the Judicial Conference with the discretion to determine when it would charge PACER fees and the amount of those fees, with the goal of providing certain information through the Internet and increasing free public access where possible. This is made abundantly clear by the fact that the only funding Congress created for such public access services were the fees charged for PACER access. Moreover, Congress' treatment of the funds collected and deposited into the Judiciary Automation Fund, as required by Congress both before and after the passage of the E-Government Act, only confirms further that the funds received have been properly used for more than just PACER access

## BACKGROUND

PACER fees find their origin in a 1988 decision of the Judicial Conference to authorize "an experimental program of electronic access for the public to court information in one or more district, bankruptcy, or appellate courts[.]" Rep. of Proceedings of the Judicial Conference of the United States at 83 (Sept. 18, 1988) (attached to Decl. of W. Skidgel, Jr. (hereinafter, "Skidgel Decl.") as Ex. A). The Judicial Conference further authorized the Committee on Judicial Improvement "to establish access fees during the pendency of the program." *Id.* Shortly thereafter, in 1989, the Judicial Conference voted to recommend that Congress credit to the judiciary's appropriations account any fees generated by providing electronic public access to court records. *See* Rep. of Proceedings of the Judicial Conference of the United States at 19 (Mar. 14, 1989) (Skidgel Decl. Ex. B). In the Judiciary Appropriations Act of 1990, Congress did exactly that—establishing the Judiciary's right to retain revenues from fees generated through the provision of court records to the public. *See* Pub. L. No. 101-162, § 406(b). In 1990, the Judicial Conference

2

approved an initial rate schedule for electronic public access to court data via the PACER system. *See* Rep. of Proceedings of the Judicial Conference of the United States at 21 (Mar. 13, 1990) (Skidgel Decl. Ex. C).

In the Judicial Appropriations Act of 1991, Congress instituted a requirement that the Judicial Conference set a schedule of "reasonable fees … for access to information available through automatic data processing equipment." Pub. L. No. 101-515, § 404. In doing so, Congress determined that PACER users, rather than taxpayers generally, should fund public access initiatives. Congress further required that the Judicial Conference submit each such fee schedule to Congress at least thirty days before its effective date. *See id.* Additionally, Congress directed that all such fees collected for services rendered be deposited into the Judiciary Automation Fund ("JAF")[1] to reimburse expenses incurred in providing such services to the public. *See id.*

In the Judicial Appropriations Act of 1992, Congress expressly required that the Judicial Conference "shall hereafter prescribe reasonable fees, pursuant to sections 1913, 1914, 1926, and 1930 of Title 28, United States Code, for collection by the courts under those sections for access to information available through automatic data processing equipment."[2] Pub. L. No. 102-140.

---

[1] The Judiciary Automation Fund was subsequently renamed the Judiciary Information Technology Fund. *See* 28 U.S.C. § 612.

[2] Notably, the cited portions of the United States Code do not present the limitations that Plaintiffs would seek to add to the "reasonable[ness]" of the prescribed fees; rather in those statutes, there are limitations as follows:

- Under 28 U.S.C. § 1913, fees in the Courts of Appeals must be "prescribed from time to time by the Judicial Conference of the United States … reasonable and uniform in all the circuits." 28 U.S.C. § 1913.

- Under 28 U.S.C. § 1914, establishing filing fees at specific amounts in district courts, and "such additional fees only as are prescribed by the Judicial Conference of the United States. 28 U.S.C. § 1914(a)-(b).

Similarly, the House Appropriations Committee report for the Judicial Appropriations Act of 1993 expressly stated that charging fees for public access was "desirable."  H. Rep. No. 102-709.  In the following years, the Judicial Conference expanded the fee schedule to cover access to public records in appellate courts and the Court of Federal Claims.  *See* Rep. of Proceedings of the Judicial Conference of the United States at 44–45 (Sept. 20, 1993) (Skidgel Decl. Ex. D); Rep. of Proceedings of the Judicial Conference of the United States at 16 (Mar. 15, 1994) (Skidgel Decl. Ex. E).  Similarly, Congress required that the public access fee schedule be expanded to cover multidistrict litigation.  *See* Pub. L. No. 104-317, § 403.  In 1996, the Judicial Conference also approved a reduction in the fee for electronic public access for dial-up Internet connections.  *See* Rep. of Proceedings of the Judicial Conference of the United States at 16 (Mar. 13, 1996) (Skidgel Decl. Ex. F).

In the following years, Congress repeatedly expressed its intention that the Judicial Conference use the fees generated from electronic public access services to improve and update various public access platforms.  For instance, the Senate Committee on Appropriations Report for the Judicial Appropriations Act of 1997 stated:

> The Committee supports the ongoing efforts of the Judiciary to improve and expand information made available in electronic form to the public.  Accordingly, the Committee expects the Judiciary to utilize available balances derived from electronic public access fees in the Judiciary Automation Fund to make information and services more accessible to the public through improvements to enhance the availability of electronic information.  The overall quality of service to the public will be improved with the availability of enhancements such as electronic case

---

- Under 28 U.S.C. § 1926, fees and costs in the Courts of Federal Claims are limited to those "the Judicial Conference prescribes."  28 U.S.C. § 1926(b).

- Under  28 U.S.C. § 1930, specific fees are established for bankruptcy  proceedings, and other fees are contemplated under title 11 if those fees are prescribed by the Judicial Conference and are "of the same kind as the Judicial Conference prescribes under section 1914(b) of [Title 28]."  28 U.S.C. § 1930(b) and (e).

documents, electronic filings, enhanced use of the Internet, and electronic bankruptcy noticing.

S. Rep. No. 104-676 at 89.

The Judicial Conference's decision to charge a per-page fee for public access also pre-dates the E-Government Act. Indeed, in 1998, the Judicial Conference determined that with the introduction of Internet technology to the Judiciary's current public access program, it would include a per-page fee for access, while also introducing new technologies to expand public accessibility to information via PACER. Specifically, the Judicial Conference established a fee of $0.07 per page for access to certain court records on PACER. *See* Rep. of Proceedings of the Judicial Conference of the United States at 64–65 (Sept. 15, 1998) (Skidgel Decl. Ex. G). In 2001, the Judicial Conference provided that attorneys of record and parties in a case would receive one copy of all filed documents without charge and also that no fee will be owed until an individual account holder accrues more than $10 in a calendar year. *See* Rep. of Proceedings of the Judicial Conference of the United States at 12–13 (Mar. 14, 2001) (Skidgel Decl. Ex. H). In 2002, the Judicial Conference established a fee cap for accessing any single document, where there will be no charge after the first thirty pages of a document. *See* Rep. of Proceedings of the Judicial Conference of the United States at 11 (Mar. 13, 2002) (Skidgel Decl. Ex. I).

In 2002, Congress passed the E-Government Act of 2002. *See* Pub. L. No. 107-347. The E-Government Act amended existing law to remove the requirement that the Judicial Conference "shall hereafter" prescribe fees for public access to, instead, provide that the Judicial Conference "may, only to the extent necessary, prescribe reasonable fees." *Id*. The E-Government Act also included several directives. For instance, it required that all federal courts have websites with certain general court information (*e.g*., courthouse location, contact information, local rules, general orders, docket information), that all court opinions issued after April 16, 2005, be available

5

in text-searchable format, and that an annual report be provided to Congress identifying any court requesting a deferral from these requirements. *See id*, § 205. Thus, for the first time, Congress required the Judiciary to make information available through the Internet. Left unspecified, however, in the text of the E-Government Act was any source of funding for providing this information other than the "reasonable fees prescribed by the Judicial Conference for electronic access to information stored in automated data processing equipment." Pub. L. No. 102-140, § 303(a); Pub. L. No.107-347, § 205.

In 2003, Congress expanded the operations for which the Judicial Conference should use public access fees. Specifically, the House Appropriations Committee stated that it "expect[ed] the fee for the Electronic Public Access program to provide for Case Management Electronic Case File ('CM/ECF') system enhancement and operational costs." H. Rep. No. 108-221 at 116; see H. Rep. No. 108-401 ("the conferees adopt the House report language concerning Electronic Public Access fees."). Similarly, the Senate Appropriations Committee stated that it was "impressed and encouraged" by the "new and innovative" CM/ECF system and that it expected a report on "the savings generated by this program at the earliest date possible." S. Rep. No. 108-144 at 118.[3] In order to provide sufficient revenue to support the CM/ECF enhancements and operational costs that Congress expected (and "expect[ed]" would be funded with fees from the "Electronic Public Access program"), the Judicial Conference issued a new rate schedule, charging $0.08 per page. *See* Rep. of Proceedings of the Judicial Conference of the United States at 12 (Sept. 21, 2004) (Skidgel Decl. Ex. J). Notably, even before the E-Government Act, Congress expressed its intention that the Judiciary will spend PACER receipts beyond just the cost of supporting PACER.

---

[3] The Conference Report for the Omnibus Appropriations Act of 2004 expressly "adopt[ed] the language in the House Report concerning Electronic Public Access fees." 149th Cong. Rec. H12312-01 at H12515.

In fact, the Senate Committee on Appropriations Report for the Judicial Appropriations Act of 1999 provided that the Committee "supports efforts of the judiciary to make information available to the public electronically, and expects that available balances from public access fees in the judiciary automation fund will be used to enhance the availability of public access."  S. Rep. No. 105-235, at 114.

In 2007, the Administrative Office of the U.S. Courts ("AO") submitted the Judiciary's Fiscal Year ("FY") 2007 Financial Plan to both the House and Senate Appropriations Committees providing for, among other things, "expanded use of the Electronic Public Access ('EPA') revenues."  Judiciary FY07 Financial Plan (Mar. 14, 2007) (Skidgel Decl. Ex. K).  On May 2, 2007, the Appropriations Committees sent letters to the AO, stating that the Committees had "reviewed the information included and ha[d] no objection to the financial plan including the following proposal[ ]: … the expanded use of [EPA] Receipts."  Ltr. from Sens. Durbin and Brownback (May 2, 2007) (Skidgel Decl. Ex. L); Ltr. from Rep. Serrano (May 2, 2007) (Skidgel Decl. Ex. M) (hereinafter, "2007 Letters").  Similarly, the AO submitted its FY07 Financial Plan to both Appropriations Committees, outlining various courtroom technology installations and maintenance that would be funded through EPA revenues.  Judiciary FY07 Financial Plan at 43 (Mar. 14, 2007) (Skidgel Decl. Ex. K).  These expenditures were approved through the Financial Services and General Government Appropriations Act of 2008.  *See* Pub. L. No. 110-161.

In 2011, the Judicial Conference again amended the PACER fee schedule, raising the per-page cost to $0.10.  *See* Rep. of Proceedings of the Judicial Conference of the United States at 16 (Sept. 13, 2011) (Skidgel Decl. Ex. N).  In doing so, the Judicial Conference expressly noted the existing statutory and policy requirements of charging fees commensurate with the cost of providing existing services and developing enhanced services.  *See id.*  Notably, the Judicial

Conference recognized that it had not increased PACER access fees since 2005 and also that its

EPA obligations during the past three fiscal years had exceeded revenue.  *See id.*

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and evidence "show[] that there is

no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment must demonstrate the absence

of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine

issue of material fact is one that "might affect the outcome of the suit under the governing law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Once the moving party has satisfied

its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings,

but … must set forth specific facts showing that there is a genuine issue for trial."  *Id.*

## ARGUMENT

## I.      DEFENDANT HAS COMPLIED WITH THE E-GOVERNMENT ACT

This dispute presents two widely divergent readings of the same statutory text.   As

discussed below, Defendant's reading and application of this statute is supported by the statute's

text, its legislative history, and Congressional actions in the years since it was passed.  In contrast,

Plaintiffs rely on a strained reading of the statutory text and subsequent legislative history to arrive

at their desired end.  Specifically, Plaintiffs contend that the E-Government Act expressly bars

Defendant from charging any PACER fees beyond just those fees necessary to keep the PACER

system operating.[4]  And Plaintiffs further allege that the current PACER fees must be deemed

---

[4] In fact, notwithstanding that Congress directed public access fees to be used for the CM/ECF system, *see supra* at 6, Plaintiffs reject even the notion that PACER fees may be used for this system, *see* Pls.' Mot. 9.

excessive based on the way in which Defendant has spent the money received from these fees. Both arguments miss the mark and this Court should grant summary judgment in Defendant's favor.

**A.     The Text of the E-Government Act Confirms That Defendant's PACER Fees are Lawful**

Plaintiffs appear to operate under the misimpression that the E-Government Act is the lone source of Defendant's authorization to charge PACER fees.   Yet, Defendant's authorization to charge such fees predates the E-Government Act, with that Act merely amending the existing authorization to charge reasonable fees that Defendant deems necessary for providing PACER access and other public access services.   *See* Pub. L. No. 102-140; *see also* 28 U.S.C. § 1913 note. In the E-Government Act, Congress amended Pub. L. No. 102-140, § 303 to read:

> (a)  The Judicial Conference may, only to the extent necessary, prescribe reasonable fees, pursuant to sections 1913, 1914, 1926, 1930, and 1932 of title 28, United States Code, for collection by the courts under those sections for access to information available through automatic data processing equipment.   These fees may distinguish between classes of persons, and shall provide for exempting persons or classes of persons from the fees, in order to avoid unreasonable burdens and to promote public access to such information.   The Director of the Administrative Office of the United States Courts, under the direction of the Judicial Conference of the United States, shall prescribe a schedule of reasonable fees for electronic access to information which the Director is required to maintain and make available to the public.
>
> (b)  The Judicial Conference and the Director shall transmit each schedule of fees prescribed under paragraph (a) to the Congress at least 30 days before the schedule becomes effective.   All fees hereafter collected by the Judiciary under paragraph (a) as a charge for services rendered shall be deposited as offsetting collections to the Judicial Automation Fund pursuant to 28 U.S.C. § 612(c)(1)(A) to reimburse expenses incurred in providing these services.

Pub. L. No. 107-347, § 205(e); 28 U.S.C. § 1913 note.

In order to understand the E-Government Act properly, it must be read in the context of the previous statutory requirements regarding PACER fees and public access services.

First, it is important to understand the fund that Congress selected as the source for depositing PACER receipts.  In 1989, Congress created the JAF with "[m]oneys … available to the Director [of the Administrative Office of the United States Courts] without fiscal year limitation for the procurement … of automatic data processing equipment for the judicial branch of the United States."  Pub. L. No. 101-162, § 404(b)(1).  The Director was also required to provide, with the approval from the Judicial Conference, an annually updated "long range plan for meeting the automatic data processing needs of the judicial branch."  *Id.*[5]  The plan, along with revisions, is submitted to Congress annually.  *See id.*; 28 U.S.C. § 612(b)(1).  And the Director may "use amounts in the Fund to procure information technology resources for the activities funded under [28 U.S.C. § 612(a)] only in accordance with the plan[.]"  28 U.S.C. § 612(b)(2).  Section 612(a) describes how money in the fund may be expended:

> Moneys in the Fund shall be available to the Director without fiscal year limitation for the *procurement* (by lease, purchase, exchange, transfer, or otherwise) *of information technology resources for program activities included in the courts of appeals, district courts, and other judicial services account of the judicial branch of the United States*. The Fund shall *also* be available for expenses, including personal services, support personnel in the courts and in the Administrative Office of the United States Courts, and other costs, *for the* effective management, coordination, operation, and *use of information technology resources purchased by the Fund*.

28 U.S.C. § 612(a) (emphasis added).  As noted, this is the fund Congress selected for depositing receipts of PACER fees, which informs how Congress intended the fees received from PACER access to be spent.[6]  *See* Pub. L. No. 102-140, § 303.

---

[5]  With some changes in terminology (*e.g.*, "meeting the automatic data processing needs of the judicial branch" became "meeting the information technology resources needs of the activities funded under subsection (a)"), the law is now codified at 28 U.S.C. § 612.  *See* Pub. L. No. 108-420; Pub. L. No. 104-106, § 5602.

[6]  Notably, Plaintiffs do not identify any uses of PACER funds that do not satisfy this broad range of information technology expenditures approved by Congress.

Second, it is important to understand the ways in which the E-Government Act amended existing statutory language.  The plain text of Public Law 102-140, as amended by the E-Government Act, states that Defendant "may, only to the extent necessary, prescribe reasonable fees … for access to information available through automatic data processing equipment." 28 U.S.C. § 1913 note.  Notably, this authorization makes no mention of PACER.  Rather, the fees may be charged for providing information "through automatic data processing equipment."  *See id.* Further, these fees "may distinguish between classes of persons, and shall provide for exempting persons or classes of persons from the fees, in order to avoid unreasonable burdens and to promote public access to such information."  *Id.*  Continuing, Congress crafted an oversight role for itself with respect to these fees:  "The Judicial Conference and the Director shall transmit each schedule of fees prescribed" by the preceding provision "at least 30 days before the schedule becomes effective."  *Id.*  Finally, Congress directed that these fees be accounted for by being "deposited as offsetting collections to the Judiciary Automation Fund … to reimburse expenses incurred in providing these services."  *Id.*  Accordingly, the plain text of the E-Government Act authorizes the Judicial Conference to charge fees, as it deems necessary, for the provision of information to the public through electronic means.

"As always, in interpreting a statute," the starting point is "the text of the statute itself." *Murphy Exploration and Prod. Co. v. U.S. Dep't of Interior*, 252 F.3d 473, 480 (D.C. Cir. 2001) (citing *Carter v. United States*, 530 U.S. 255 (2000)).  When interpreting a statute, courts operate under the "cardinal principle of statutory construction" to "give effect, if possible, to every clause and word of a statute."  *Williams v. Taylor*, 529 U.S. 362, 404 (2000).  A plain reading of this text confirms that the Defendant's PACER fees are lawful.

Rather than relying on "the text of the statute itself," *Murphy Exploration*, 252 F.3d at 480, Plaintiffs ask this Court to act as legislator and add words to the statute that Congress did not include.  Indeed, Plaintiffs suggest that the "only permissible reading of this language is that it bars the Judicial Conference from charging more in PACER fees, in the aggregate, than the reasonable costs of administering the PACER system."  Pls.' Mot. 1.  But the text includes no such limitation.  Rather, Plaintiffs cobble together various clauses of this statutory language to reach their desired conclusion.  *See* Pls.' Mot. 1 (quoting portions of 28 U.S.C. § 1913 note).  Ultimately, Plaintiffs wish Congress to have stated that "[t]he Judicial Conference may, only to the extent necessary [to fund PACER], prescribe reasonable fees" and that "all fees hereafter collected as a charge for [PACER] shall be deposited as offsetting collections to the Judiciary Automation Fund … to reimburse expenses incurred in providing [PACER.]"  But that is not what Congress provided.  In fact, as discussed in Part I.B below, such a reading runs directly counter to the clear Congressional intent of the E-Government Act—not to mention the fact that this reading ignores that the E-Government Act never mentions PACER in any way.  *See infra* at Part I.B.[7]

In addition to the language of the E-Government Act itself, the lawfulness of Defendant's PACER fees is further confirmed by the language Congress did *not* include in the E-Government Act.  Specifically, Plaintiffs suggest that the "liability question" in this matter "is straightforward" because in 2002 "Congress found that PACER fees (then set at \$.07 per page) were 'higher than the marginal cost of disseminating the information.'"  Pls.' Mot. 5.  But the Congressional Report

---

[7] Notably, the brief of *amici* Reporters Committee for Freedom of the Press and Seventeen Media Organizations relies on the same misunderstanding.  Specifically, *amici* suggest that the E-Government Act imposes a "limitation on fees for access to court records through PACER," notwithstanding that nothing in the E-Government Act includes such a limitation.  *Amici* Br. of Reporters Committee at 2 (ECF No. 59).  Accordingly, *amici*'s arguments fail for the same reasons as do Plaintiffs'.

on which Plaintiffs rely goes on to note that this fee was made "[p]ursuant to existing law." *See* S. Rep. No. 107-174 at 5. Had Congress intended the E-Government Act to change that "existing law," it would have expressly done so.

In fact, Congress made clear in the E-Government Act that it knew how to require the Judicial Conference to take action. For instance, the Act included several express requirements, including, *inter alia*, that all courts have operating websites within several years and that the websites include certain specific categories of information. *See* Pub. L. No. 107-347, § 205(a), (f). Congress further required that the courts "update[ ]" this information "regularly." *Id.* § 205(b)(1). But Congress did not include any express directives regarding the amount of fees that the Judicial Conference could charge for PACER access. And where Congress chose not to use similar language imposing requirements onto Defendant with regard to PACER, courts are not to read such requirements into the text. *See Russello v. United States*, 464 U.S. 16, 23 (1983). Thus, where, as here, Congress affirmatively established duties on the Judiciary by clear language, *see* Pub. L. No. 107-347, § 205(a)(1)-(7) (the chief judges "shall cause to be established and maintained … a website that contains … the following [seven categories of] information"), but has not required the reduction of fees if they exceed actual costs of providing a specific service, there is a presumption that Congress omitted such a requirement knowingly, *see Russello*, 464 U.S. at 23.

In fact, Congress showed in other statutory provisions that it knew how to include exactly the type of language that Plaintiffs ask the Court to read into the E-Government Act. Specifically, Plaintiffs place great weight on the E-Government Act's "offsetting collections" language, suggesting that they are entitled to recoup "reasonable" fees paid if it turns out that the fees collected exceed the cost of providing the on-line access to documents, because the legislation at

13

issue provides that "the fees … collected … as a charge for services rendered shall be deposited as offsetting collections to the Judiciary Automation Fund pursuant to 28 U.S.C. § 612(c)(1)(A) to reimburse expenses incurred in providing these services." Pls.' Mot. 5. Plaintiffs appear to argue that this language requires that fees deposited not be used for anything other than PACER and that fees may be collected only as necessary to reimburse the cost of PACER.

This reading, however, is cast into doubt by at least two other statutory provisions. For instance, in two other portions of Public Law 102-140, Congress used similar language with no hint that the amount of the fees collected would be altered by including a requirement that receipts "shall be deposited as offsetting collections[.]" Specifically, in Section 111, Congress effected specific changes to the bankruptcy fees allowed under 28 U.S.C. § 1930(a), increasing certain fees by exact dollar amounts and calling for precise percentages of the fees collected to be "deposited as offsetting collections to the appropriation "United States Trustee System Fund[.]" Pub. L. No. 102-140, § 111. If Plaintiffs' reading of such language were correct, this statutory language would have an internal conflict. In Plaintiffs' estimation, such fees may only be charged to the extent necessary to "offset[ ]" expenses. But if that were correct, it would raise serious questions about whether bankruptcy fees may still be charged at the statutorily required rates if the receipts exceed expenses. Of course, such a reading must be rejected. *See Nat'l Ass'n of Mortg. Brokers v. Bd. of Govs. of Fed. Reserve Sys.*, 773 F. Supp. 2d 151, 168 (D.D.C. 2011) ("it is a cardinal principle of statutory construction that the statute ought, upon the whole, be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void or insignificant") (quoting *TRW, Inc. v. Andrews*, 534 U.S. 19, 21 (2001)).

Additionally, for a second time in the statute, Congress used the "offsetting collections" language with no suggestion that this language would affect the amount of fees collected.

Specifically, Congress increased the fees collected by the Security and Exchange Commission ("SEC"):  "upon enactment of this Act, the rate of fees under [15 U.S.C. § 77f(b)] shall increase [to a certain percent] and such increase shall be deposited as an offsetting collection to this appropriation to recover costs of services of the securities registration process: Provided further, That such fees shall remain available until expended.")  Again, Plaintiffs' reading of such statutory language would require that this "offsetting" language be read to require the fees to be deemed unlawful if the receipts exceed the "costs of the services."  *Id.*  But as that would require the SEC to reduce fees below the statutorily required level, such a reading cannot be countenanced.

Indeed, when Congress concluded that estimated fees collected by the Federal Trade Commission may exceed what an agency should be permitted to spend in a given fiscal year, it provided an explicit limitation.  *See* Pub. L. No. 102-140, § 111 ("fees made available to the Federal Trade Commission shall remain available until expended, but … any fees in excess of $13,500,000 shall not be available until fiscal year 1993").  Ultimately, Congress knew how to place limits on an agency's ability to collect and expend fees with express language, none of which did it do in the E-Government Act of 2002.[8]

In sum, it is clear both from the language that Congress included (and did *not* include) in the E-Government Act that the most accurate way to read the Act is that: (1) Defendant may charge "reasonable" fees for access to information available through automatic data processing equipment (e.g., information available on-line, including through PACER access); (2) those fees may be

---

[8] Instead, Congress required the AO to submit a "comprehensive financial plan for the Judiciary allocating all sources of available funds including appropriations, fee collections, and carryover balances, to include a separate and detailed plan for the Judiciary Information Technology fund." Pub. L. No. 110–161.  Never has Congress responded to such a plan by limiting expenditures; rather, as discussed herein, it has frequently encouraged spending in areas such as courtroom technology.

prescribed to the extent necessary; (3) Defendant may provide PACER access without fees for certain classes of users; and (4) receipts from PACER fees shall be deposited in a specific fund and accounted for as offsets for services rendered, but they should be deposited in that fund regardless of the artificial limitations proposed by Plaintiffs.

But as noted earlier, Plaintiffs would instead have this Court believe that Congress *meant* the E-Government Act to read as follows:  "(a) The Judicial Conference may, only to the extent necessary [to pay for PACER], prescribe reasonable fees …[and] (b) … All fees hereafter collected by the Judiciary under paragraph (a) as a charge for services rendered [PACER] shall be deposited as offsetting collections to the Judiciary Automation Fund pursuant to 28 U.S.C. § 612(c)(1)(A) to reimburse expenses incurred in providing these services [PACER]."

That is, of course, not what Congress included in the E-Government Act and the Court should reject Plaintiffs' attempt to have this Court act as legislator and add text to the E-Government Act.

### B.   The E-Government Act's Legislative History Confirms that Defendant's PACER Fees are Lawful

To the extent that there remains any doubt about what Congress meant through the portions of the E-Government Act at issue here, the legislative history supports Defendant's reading. *United States v. Braxtonbrown-Smith*, 278 F.3d 1348, 1352 (D.C. Cir. 2002) ("where the language is subject to more than one interpretation and the meaning of Congress is not apparent from the language itself," courts may "look to the general purpose of Congress in enacting the statute and to its legislative history for helpful clues").   Notably, though, the Court "must avoid an interpretation that undermines congressional purpose considered as a whole when alternative interpretations consistent with the legislative purpose are available." *Id.*

In the Senate Appropriations Committee Report on the E-Government Act,[9] the Committee explained that the purpose behind changing from a *requirement* to charge fees ("shall") to an *ability* to charge fees ("may") was to "*encourage* the Judicial Conference to move from a fee structure in which electronic docketing systems are supported primarily by user fees to a fee structure in which this information is freely available to the greatest extent possible."   S. Rep. No. 107-174, § 205(e) (emphasis added).   The Senate Committee Report proceeded to discuss PACER as just *one* example of the ways in which the AO disseminates information to the public. *See id.*   In so doing, this Report confirms that the statutory text at issue is not limited to PACER alone, but rather confirms that PACER is merely one component of Defendant's responsibility for disseminating information to the public.

Further, Congressional treatment of Defendant's PACER fees since the E-Government Act was passed confirms this reading.   Indeed, less than a year after the E-Government Act was passed, both the House and Senate Appropriations Committees expressly directed the AO to use PACER fees to update the CM/ECF system.[10]   *See* S. Rep. No. 108-144 at 118; H. Rep. No. 108-221 at 116. And several years later, the AO informed Congress that it planned to use receipts from PACER fees to fund courtroom technology and to perform infrastructure maintenance.   *See* Judiciary FY07

---

[9] The House Appropriations Committee Report on the E-Government Act is silent as to the purpose behind the language in question.  *See* H. Rep. No. 107-787.

[10] Notably, Congress indicated that it "expects the fee for the [EPA] program to provide for [CM/ECF] Case Files system enhancements and operational costs."  H. Rep. No. 108-221 at 116. the following are direct costs associated with development and maintenance of CM/ECF: Software Development, Implementation, Operations, Maintenance, Training on CM/ECF and attempts to modernize or replace CM/ECF.  Skidgel Decl. ¶ 17.

Financial Plan at 43 (Mar. 14, 2007) (Skidgel Decl. Ex. K).  In response, the Committees expressly endorsed these expenditures.  *See* 2007 Letters (Skidgel Decl. Exs. L & M).[11]

Similarly, the March 25, 2010 letter from Senator Lieberman on which Plaintiffs heavily rely, *see* Pls.' Mot. 1–2, confirms Defendant's understanding of the E-Government Act. Specifically, Senator Lieberman emphasized that the goal of the Act was to change from a mandatory fee to a discretionary fee.  *See* Pls.' Mot. Ex. G at 4.  And in this letter itself, Senator Lieberman confirms that Defendant "asked for *and received* written consent from the Appropriations Committees to 'expand use of [EPA] receipts to support courtroom technology allotments for installation, cyclical replacement of equipment, and infrastructure maintenance." *Id.* (emphasis added).  Statements made by Senator Lieberman years later do not change this fact.[12]

---

[11] Much has been made in this litigation about television monitors in certain federal district courtrooms, which were purchased with PACER funds.  But Congress was notified about this use of PACER funds and did not respond with any objection.  *See* Judiciary FY07 Financial Plan at 43 (Mar. 14, 2007) (Skidgel Decl. Ex. K).  Moreover, proving a method for jurors and the general public to see case documents in a courtroom is entirely consistent with Defendant's charge to "make [such records] available to the public."  28 U.S.C. § 1913 note.

[12] Plaintiffs also suggest that Senator Lieberman's letter "reproach[ed] the AO for continuing to charge fees 'well higher than the cost of dissemination.'"  Pls.' Mot. 1; Taylor Decl. Exs. G & H. And while the Court may review the text of Senator Lieberman's letter to determine whether he, in fact, "reproach[ed]" the AO, that is largely beside the point.  The statutory text confirms the Defendant's reading of the E-Government Act and Senator Lieberman's isolated statements years later do nothing to change that fact.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 631 (1990) (Scalia, J. concurring) ("the views of a legislator concerning a statute already enacted are entitled to no more weight than the views of a judge concerning a statute not yet passed.").  Indeed, not only do "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one," but "even the contemporaneous remarks of a single legislator who sponsors a bill are not controlling in analyzing legislative history."  *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 117–18 (1980).  Ultimately, the letter from Sen. Lieberman expressly confirms that Congress "consent[ed]" to the exact "use of [EPA] receipts to support courtroom technology" about which Plaintiffs now complain.  *See* Taylor Decl. Ex. G.  Any attempt to twist Senator Lieberman's words from 2010 to suggest a different legislative intent behind the E-Government Act—one that is not supported by the statute's text—should be disregarded.  The same fate befalls the *amici* brief that Senator Lieberman filed in this action.  *See* ECF No. 56.  That brief, which attempts to offer evidence of legislative intent fifteen years after the E-Government Act's passage,

### C.      Defendant's Use of PACER Fees is Lawful

In addition to arguing that the E-Government Act expressly limits the permissible fees charged for PACER access, Plaintiffs go to great lengths to argue by implication that Defendant must be violating the E-Government Act because, in Plaintiffs' estimation, it is spending PACER funds on improper things.  But in each instance, Plaintiffs are either relying on faulty information or fail to realize that the expenditures are being made at the behest of Congress.

As noted earlier, Plaintiffs place great weight on the televisions that were placed into various courtrooms to provide jurors and the general public with the ability to view electronic records during judicial proceedings.  *See supra* n.11.  Plaintiffs similarly raise questions with the use of PACER fees to "(2) send notices to creditors in bankruptcy proceedings … ; (3) send notices to law-enforcement agencies under the Violent Crime Control Act … ; (4) provide online services to jurors … ; (5) cover 'costs associated with support for the uscourts.gov website,' … ; and (6) fund a state-court study in Mississippi."  Pls.' Mot. 17.  Not only are Plaintiffs misguided with respect to the televisions, *see supra* n. 11, but they fail to recognize that each of these identified items have been subject to Congressional approval.  For instance, it was the Report from the House Committee on Appropriations regarding the Appropriations Act of 1997, which stated that the "Committee supports efforts of the judiciary to make electronic information available to the public, and expects that available balances from public access fees in the judiciary automation fund will be used to enhance the availability of public access," including "electronic bankruptcy noticing." H. Rep. No. 104-676 at 89.   Similarly, in 1998, the Report of the Senate Committee on Appropriations expressed that the Committee "expect[ed] that available balances from public

---

cannot be read to supersede the clear text of the statute and actions of Congress at the time of the Act's passage.

access fees in the judiciary automation fund [would] be used to enhance availability of public access." *See* S. Rep. No 105-235 at 114. The Judiciary relied on these and similar reports to develop a system for probation and pretrial services that would electronically notify local law enforcement agencies of changes to the case history and to create a web-based juror notice system. Additionally, for the "study in Mississippi," the AO undertook a study in accordance with the Senate Committee on Appropriations' Report of July 2006, which expressed the Committee's support for the Federal Judiciary sharing its case management electronic case filing system at the State level and encouraged the Judiciary to study whether sharing such technology, including electronic billing processes, is viable. *See* S. Rep. No. 109-293 at 176. Notably, these expenditures were also approved by the Committees on Appropriations from both the House and Senate. *See* 2007 Letters (Skidgel Decl. Exs. L & M).

## II.    PLAINTIFFS' MISCELLANEOUS ARGUMENTS LACK MERIT

Plaintiffs also rely on a scattering of miscellaneous arguments in their challenge to the PACER fees, none of which has merit.

### A. Independent Offices Authorities Act

Plaintiffs ask the Court to adopt their reading of the E-Government Act based also on an analogy to the 1982 Independent Offices Authorities Act ("IOAA"). *See* Pls.' Mot. 12 (suggesting that the IOAA is an "analogous statute"). This statute authorizes agencies to charge a user fee for "each service or thing of value provided by [the] agency," 31 U.S.C. § 9701(a), but limits the fees that may be charged to fees that are "fair" and "based on" the cost to the Government, the value of the service, public policy and "other relevant facts[,]" *id.* Plaintiffs suggest that this language, read alongside the E-Government Act, shows a "clear[ ] inten[tion] for fees to be restricted to the costs of providing the services for which they are charged … and nothing more." Pls.' Mot. 14.

Plaintiffs are misguided for several reasons.  First, they suggest that "[l]ike the E-Government Act, the IOAA's goal is to make agency programs conferring benefits on recipients 'self-sustaining to the extent possible.'"  Pls.' Mot. 12 (quoting 31 U.S.C. § 9701(a)).  But it is worth noting that the E-Government Act does not include any similar language as to that which Congress included in IOAA regarding the goal of "self-sustain[ment]."  Moreover, Plaintiffs appear to suggest that this 1982 Act operates as an across-the-board restriction on any fee that an agency charges for any service where, according to Plaintiffs, there is a *per se* bar on agencies "charging fees that exceed the costs of providing the service."  Pls.' Mot. 12.  Not only is that unsupported by the cases on which Plaintiffs rely, it is belied by the fact that Congress routinely sets fee levels in statutes, irrespective of the exact cost of providing the underlying service.  *See supra* at 14–15 (discussing several statutorily enacted fees).

Moreover, the AO is not subject to the IOAA; but even if it were, it is not subject to the IOAA regarding the portion of the E-Government Act at issue here.  If the two statutes are in conflict, the E-Government Act, coming twenty years after the IOAA, would govern, allowing more discretion in the assessments of fees that can provide the services called for in the E-Government Act.  Indeed, a repeal by implication may be found when earlier and later statutes are irreconcilable.  *See Gallenstein v. United States*, 975 F.2d 286, 290–91 (6th Cir.1992) (quoting *Morton v. Mancari*, 417 U.S. 535, 550 (1974)); *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 662 (2007) (Courts may infer a statutory repeal if such a construction is necessary in order that the words of the later statute shall have meaning).  Here, the E-Government Act expressly required courts to establish websites with specific information, including courthouse addresses and text-searchable opinions, but included no separate funding beyond that collected as

a reasonable fee for electronic access to court records.  The clear intent was to permit the free access to such information even if the funds had to come from PACER fees to cover the costs.

Although the IOAA states generally that the head of an agency may establish fees, the fees at issue here are expressly provided for in another statute, which directs that the *Judicial Conference*, not the Director, may prescribe fees.  Additionally, the D.C. Circuit held in *Capital Cities Communications, Inc. v. FCC*, 554 F.2d 1135 (D.C. Cir. 1976), that the IOAA does not authorize an agency to vary its fees among beneficiaries.  *Id.* at 1138.  In contrast, the Judiciary's enabling statute, specifically allowed for varying fees among beneficiaries when it stated: "Judicial Conference shall hereafter prescribe reasonable fees …. These fees may distinguish between classes of persons, and shall provide for exempting persons or classes of persons from the fees."  Pub. L. No. 102-140, § 303. The section on exempting persons and classes of persons, and distinguishing between classes was not changed by the E-Government Act.

Furthermore, according to the Government Accountability Office's Principles of Federal Appropriations Law, which Plaintiffs reference, *see* Pls.' Mot. 14, "[f]ees incident to litigation in the courts are also commonplace, but they implicate certain constitutional considerations and are prescribed under statutes other than the IOAA."  *See* Government Accountability Office, *Principles of Federal Appropriations Law,* 2008 WL 6969303; *see also* 28 U.S.C. §§ 1911 (Supreme Court), 1913 (courts of appeals), 1914 (district courts), 1926 (Court of Federal Claims), 1930 (bankruptcy fees).  Thus, notwithstanding the IOAA, these provisions permit reasonable fees to be charged to those seeking access to the courts.  *See, e.g.*, *Lumbert v. Illinois Dep't of Corrections*, 827 F.2d 257 (7th Cir. 1987).

Ultimately, Plaintiffs' reliance on the IOAA is misguided as it offers no insight into either the E-Government Act or the statutory authorization for Defendant to charge PACER fees.  If

anything, the IOAA language only confirms further that Congress knows how to tether an agency's charge of fees to the costs of providing a particular service. This Court may, and indeed should, cast aside Plaintiffs reliance on the IOAA.

### B.  First Amendment

Notwithstanding that their Complaint does not include a claim that PACER fees somehow violate the First Amendment, Plaintiffs now suggest that the First Amendment should guide the Court's resolution of how much may be charged for electronic access to Court records. *See* Pls.' Mot. 2, 14–16. But Plaintiffs fail to identify any authority for this proposition. Indeed, Plaintiffs are misguided in their belief that PACER fees create a barrier to access, as they are able to view all electronically filed records free of charge through terminals available at the courthouse.[13] Moreover, the cases on which Plaintiffs rely are inapposite, addressing fees sought to be collected for utilizing a public forum for purposes of engaging in First Amendment protected speech or other

---

[13] Similarly, *amici* appear to fall into the same trap. The brief of the Reporters Committee for Freedom of the Press and Seventeen Media Organizations, for instance, bases its argument on the notion that "accuracy and fairness in the news media's reporting" is aided through "unfettered and inexpensive access to court documents." *Amici* Br. of Reporters Committee at 2 (ECF No. 59). But as noted, all such records are readily available through terminals at the courthouse and, to the extent that *amici* are suggesting that there is a First Amendment right to access court filings *electronically*, they fail to offer any support for such a proposition. *See id.* at 9–10 (citing cases discussing First Amendment right to access court documents, none of which suggests a First Amendment right to *free electronic* access). The brief of the American Association of Law Libraries similarly focuses on an "essential" need for "[p]ublic access to federal court proceedings and records[.]" *Amici* Br. of Am. Assoc. of Law Libraries, *et al.* at 2 (ECF No. 61). But *amici* similarly fail to note that court records are freely accessible at the courthouse and that provisions exist for individuals to obtain free access through fee waiver requests. Ultimately, the American Association of Law Libraries offers no legal basis for concluding that the current PACER fees violate any statutory provisions. Rather, they appear simply to be using their brief to complain about the process for obtaining fee waivers. Ultimately, this Court may reject the American Association of Law Libraries' arguments, as they provide no basis for concluding that Defendant has violated any statutory provisions relevant to PACER fees.

exercise of the free exercise clause.  Plaintiff's hint that somehow the First Amendment could prohibit the charging of fees as a convenience is unsupported.

The Complaint makes no mention of the First Amendment as a basis for Plaintiffs claims, nor do the cases they cite offer any support for the suggestion that the First Amendment would support a requirement to limit fees to electronic access to Court information.  Plaintiffs rely on several cases that address only the collection of fees as a prerequisite to engaging in free speech. *See, e.g.*, *Sullivan v. City of Augusta*, 511 F.3d 16, 38 (1st Cir. 2007) (permit requirements for demonstration too onerous to pass First Amendment scrutiny); *Eastern Connecticut Citizens Action Grp. v. Powers*, 723 F.2d 1050, 1056 (2d Cir. 1983) (invalidating permit processing fees and insurance requirements for demonstration on public property).  These cases involved fees collected as a precondition to granting a permit for the plaintiffs to engage in expressive activity and have no bearing here.  Likewise, *Murdock v. Penn.*, 319 U.S. 105, 113–14 (1943) (Jehovah's Witnesses door to door distribution of literature and soliciting people to purchase religious books and pamphlets) and *Nat'l Awareness Found. v. Abrams*, 50 F.3d 1159, 1165 (2d Cir. 1995) (approving flat annual registration fee of $80 for all professional fundraisers as nominal and reasonably connected to administrative costs, including enforcement, of registration system, and concluding fee did not violate First Amendment), involved limitations placed on expressive conduct and have no relevance here.[14]

---

[14] Similarly, Plaintiffs rely on *Fernandes v. Limmer*, 663 F.2d 619, 633 (5th Cir. 1981) (discussing rights under free exercise clause); *Cox v. New Hampshire*, 312 U.S. 569, 577 (1941) (appeal of conviction for taking part in a parade or procession upon a public street without a license); and *Nat'l Awareness Found. v. Abrams*, 50 F.3d 1159, 1165 (2d Cir. 1995) (approving flat annual registration fee of $80 for all professional fundraisers as nominal and reasonably connected to administrative costs, including enforcement, of registration system, and concluding fee did not violate First Amendment).  Pl. Mot. at 15.  Those cases also support only a right freedom of expression and have no bearing on the instant dispute.

Indeed, Plaintiffs admit that the First Amendment would not act as a bar to adoption of fees above and beyond the cost to administer PACER.  Pls.' Mot. 16 ("This does not necessarily mean that a statute would actually be unconstitutional if it were to expressly allow the judiciary to recoup more than the costs of administering PACER.").  Thus, the First Amendment argument posited by Plaintiffs is nothing but an admission that the Judicial Conference has the power to charge the reasonable fees for access to Court information and that what remains is whether the fees charged are in compliance with the E-Government Act.  In short, the imposition of a lesser fee is not compelled by the First Amendment.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiffs' Motion for Summary Judgment and, instead, grant summary judgment in Defendant's favor.

November 17, 2017

Respectfully submitted,

JESSIE K. LIU
D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN
D.C. BAR # 924092
Chief, Civil Division

By:      */s/ W. Mark Nebeker*
W. MARK NEBEKER (D.C. Bar #396739)
BRIAN J. FIELD (D.C. Bar #985577)
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2536
mark.nebeker@usdoj.gov