IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL VETERANS LEGAL
SERVICES PROGRAM, NATIONAL
CONSUMER LAW CENTER, and
ALLIANCE FOR JUSTICE, for themselves
and all others similarly situated,
        *Plaintiffs*,

                v.

UNITED STATES OF AMERICA,
        *Defendant*.

Case No. 16-745-ESH

**DECLARATION OF Wendell A. Skidgel Jr.**

I, Wendell A. Skidgel Jr., declare as follows:

1.      I have Bachelor's Degrees in Mathematics and Computer Science from Eastern Nazarene College and a Juris Doctorate with a concentration in Intellectual Property from Boston University School of Law.  In addition to serving as an attorney at the Administrative Office of the United States Courts for the past eleven years, I served as the Systems Manager at a Federal Appellate Court for more than five years and served as an IT Director at a Federal Bankruptcy Court.  Based on my personal experiences and knowledge gained through my official duties, I make the following declarations.

2.      Exhibit A is a true and correct copy of pages 1 and 83 from the Rep. of Proceedings of the Judicial Conference of the United States (Sept. 18, 1988).

3.      Exhibit B is a true and correct copy of pages 1, 19 and 20 from the Rep. of Proceedings of the Judicial Conference of the United States (Mar. 14, 1989).

4.      Exhibit C is a true and correct copy of pages 1 and 21 from the Rep. of Proceedings of the Judicial Conference of the United States (Mar. 13, 1990).

5.      Exhibit D is a true and correct copy of pages 1, 44, and 45 from the Rep.

of Proceedings of the Judicial Conference of the United States (Sept. 20, 1993).

6.    Exhibit E is a true and correct copy of pages 1 and 16 from the Rep. of Proceedings of the Judicial Conference of the United States (Mar. 15, 1994).

7.    Exhibit F is a true and correct copy of pages 1 and 16 from the Rep. of Proceedings of the Judicial Conference of the United States (Mar. 12, 1996).

8.    Exhibit G is a true and correct copy of pages 1, 64, and 65 from the Rep. of Proceedings of the Judicial Conference of the United States (Sept. 15, 1998).

9.    Exhibit H is a true and correct copy of pages 1, 12, and 13 from the Rep. of Proceedings of the Judicial Conference of the United States (Mar. 14, 2001).

10.    Exhibit I is a true and correct copy of pages 1 and 11 from the Rep. of Proceedings of the Judicial Conference of the United States (Mar. 13, 2002).

11.    Exhibit J is a true and correct copy of pages 1 and 12 from the Rep. of Proceedings of the Judicial Conference of the United States (Sept. 21, 2004).

12.    Exhibit K is a true and correct copy of pages 1 and 39-46 from the Judiciary's FY2007 Financial Plan (March 14, 2007).  Based on my knowledge working at the Administrative Office of the United States Courts, before Electronic Public Access (EPA) funds are used for a new purpose or program, the proposed use is included in the Judiciary's Financial Plan which is submitted to Congress. EPA funds are not expended on the proposed use until the Judiciary receives explicit approval/consent from Congress.

13.    Exhibit L is a true and correct copy of a Letter from Sens. Durbin and Brownback (May 2, 2007).

14.    Exhibit M is a true and correct copy of a Letter from Rep. Serrano (May 2, 2007).

15.    Exhibit N is a true and correct copy of pages 1 and 16 from the Rep. of Proceedings of the Judicial Conference of the United States (Sept. 13, 2011).

16.    Exhibits A thru J and N were all obtained from the uscourts.gov website:

www.uscourts.gov/about-federal-courts/reports-proceedings-judicial-conference-us.

17.     Software development, software maintenance, software and hardware implementation, computer operations, technical and operational training, and efforts to modernize/upgrade/replace are costs inherently associated with a robust multi-user computer systems, such as CM/ECF.

18.     Telecommunication costs directly associated with a multi-user computer system include communications hardware (such as network circuits, routers, and switches) and network management devices.  When a multi-user system, such as CM/ECF, is available to the public via the internet, costs associated with network security, security hardware and software, intrusion detection, and other security services are required.

19.     Through EPA allotments, courts are able to determine the best ways to improve electronic public access services (such as by adding a public printer or upgrading to a more robust internet web server).  Funding court staff to work on EPA projects, such as CM/ECF, utilizes existing expertise and reduces training time and associated costs compared to that of hiring contractors.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on November 11, 2017.           */s/ Wendell A. Skidgel Jr.*
                                         _____
                                         Wendell A. Skidgel, Jr.

# EXHIBIT   A

## REPORT OF THE PROCEEDINGS OF THE
## JUDICIAL CONFERENCE OF THE UNITED STATES

September 14, 1988

The Judicial Conference of the United States convened on September 14, 1988, pursuant to the call of the Chief Justice of the United States issued under 28 U.S.C. 331. The Chief Justice presided and the following members of the Conference were present:

First Circuit:

> Chief Judge Levin H. Campbell
> Chief Judge Frank H. Freedman, District of
>  Massachusetts

Second Circuit:

> Chief Judge Wilfred Feinberg
> Chief Judge John T. Curtin, Western District of
>  New York

Third Circuit:

> Chief Judge John J. Gibbons
> Chief Judge William J. Nealon, Jr., Middle District of
>  Pennsylvania

Fourth Circuit:

> Chief Judge Harrison L. Winter
> Judge Frank A. Kaufman, District of Maryland

Fifth Circuit:

> Chief Judge Charles Clark
> Chief Judge L. T. Senter, Jr., Northern District of
>  Mississippi

## RELEASE AND SALE OF COURT DATA

The judiciary generates a large volume of data which is of considerable interest and value to the bar and litigants, to the media, to scholars and government officials, to commercial enterprises, and to the general public. The courts and the Administrative Office are frequently requested to release or sell court data to individuals and organizations outside the court family, including a growing volume of requests from credit agencies and other commercial organizations desiring bankruptcy case information for purposes of resale.

On recommendation of the Committee, the Judicial Conference authorized an experimental program of electronic access for the public to court information in one or more district, bankruptcy, or appellate courts in which the experiment can be conducted at nominal cost, and delegated to the Committee the authority to establish access fees during the pendency of the program. Although existing law requires that fees collected in the experimental phase would have to be deposited into the United States Treasury, the fees charged for automated access services could defray a significant portion of the cost of providing such services, were the Congress to credit these fees to the judiciary's appropriations account in the future.

## VIDEOTAPING COURT PROCEEDINGS

Under 28 U.S.C. 753, district judges may voluntarily use a variety of methods for taking the record of court proceedings, subject to guidelines promulgated by the Judicial Conference. At the request of a court that it be allowed to experiment with videotaping as a means of taking the official record, the Judicial Conference authorized an experimental program of videotaping court proceedings. Under the two-year experiment, which would include approximately six district courts (judges), in no more than two circuits, the courts of appeals would have to agree to accept as the official record on appeal a videotape in lieu of transcript or, in the alternative, the circuit must limit the production of transcript to be accepted on appeal to a very few pages. Participating judges would continue to utilize their present court reporting techniques (court reporter, electronic sound recording, etc.) during the experimental program.

The Conference designated the chair of the Committee on Judicial Improvements to seek approval of the Director of the Federal Judicial Center for the Judicial Center to design, conduct, and evaluate the experiment.

# EXHIBIT  B

**REPORT OF THE PROCEEDINGS OF THE
JUDICIAL CONFERENCE OF THE UNITED STATES**

March 14, 1989

The Judicial Conference of the United States convened on March 14, 1989, pursuant to the call of the Chief Justice of the United States issued under 28 U.S.C. 331. The Chief Justice presided and the following members of the Conference were present:

First Circuit:

> Chief Judge Levin H. Campbell
> Chief Judge Frank H. Freedman, District of
>     Massachusetts

Second Circuit:

> Chief Judge James L. Oakes
> Judge John T. Curtin, Western District of New York

Third Circuit:

> Chief Judge John J. Gibbons
> Judge William J. Nealon, Jr., Middle District of
>     Pennsylvania

Fourth Circuit:

> Chief Judge Sam J. Ervin, III
> Judge Frank A. Kaufman, District of Maryland

Fifth Circuit:

> Chief Judge Charles Clark
> Chief Judge L. T. Senter, Jr., Northern District of
>     Mississippi

1

circuit and the distance traveled. Henceforth, the guidelines will provide that a judge assigned to work on the court of appeals should serve for at least one regular sitting (as defined by that circuit), and a judge assigned to work on the general calendar of a district court should serve at least two weeks.

## COMMITTEE ON THE INTERNATIONAL APPELLATE JUDGES CONFERENCE OF 1990

The Committee on the International Appellate Judges Conference reported on its progress in planning and raising funds for the International Appellate Judges Conference to be held in Washington, D.C., in September, 1990.

## COMMITTEE ON THE JUDICIAL BRANCH

### JUDICIAL PAY

The single greatest problem facing the judiciary today is obtaining adequate pay for judicial officers. Judges have suffered an enormous erosion in their purchasing power as a result of the failure of their pay to keep pace with inflation. It is becoming more and more difficult to attract and retain highly qualified people on the federal bench.

In order to obtain a partial solution to this critical problem, the Judicial Conference, by unanimous vote, agreed to recommend that Congress immediately increase judicial salaries by 30 percent, and couple these increases with periodic cost-of-living adjustments (COLAs) similar to those received by other government recipients.

## COMMITTEE ON JUDICIAL ETHICS

The Committee on Judicial Ethics reported that as of January, 1989, the Committee had received 2,495 financial disclosure reports and certifications for the calendar year 1987, including 1,021 reports and certifications from judicial officers, and 1,474 reports and certifications from judicial employees.

## COMMITTEE ON JUDICIAL IMPROVEMENTS

### RELEASE AND SALE OF COURT DATA

A. At its September 1988 session (Conf. Rpt., p. 83), the Judicial Conference authorized an experimental program of electronic

19

access by the public to court information in one or more district, bankruptcy, or appellate courts, and delegated to the Committee on Judicial Improvements the authority to establish access fees during the pendency of the program.  Under existing law, fees charged for such services would have to be deposited into the United States Treasury.  Observing that such fees could provide significant levels of new revenues at a time when the judiciary faces severe funding shortages, the Conference voted to recommend that Congress credit to the judiciary's appropriations account any fees generated by providing public access to court records.

B.   The Administrative Office and the Department of Justice have entered into an agreement whereby bankruptcy courts download docket information from the NIBS and BANCAP systems to local United States Trustee offices' computers.  The agreement does not deal directly with use of this information by the Trustees.

Since it is essential that this court data be disseminated and sold by the judiciary consistent with a uniform policy to be developed under the use and sale of court data program (above), the Conference resolved that data provided by the courts in these circumstances be for the Trustees' internal use only, and may not otherwise be disseminated or sold by the Trustees.  Should the Trustees fail to comply, the judiciary will discontinue providing the data or seek an appropriate level of reimbursement.

## ONE-STEP QUALIFICATION AND SUMMONING OF JURORS

Title VII of the Judicial Improvements and Access to Justice Act (Public Law 100-702) authorizes the Judicial Conference to conduct a two-year experiment among up to ten districts testing the viability of a one-step qualification and summoning procedure.   The Conference selected for inclusion in the experiment the Northern District of Alabama, the Districts of Arizona and the District of Columbia, the Southern District of Florida, the Northern District of Illinois, the Western District of New York, the Districts of Oregon and South Dakota, the Eastern District of Texas, and the District of Utah.

## LAWBOOKS FOR BANKRUPTCY JUDGES

The Conference approved revised lists of lawbooks for bankruptcy judges, Exhibits C-1 and C-2 of Volume I, Guide to Judiciary Policies and Procedures, Chapter VIII, Part E.  A concise bankruptcy

# EXHIBIT  C

## REPORT OF THE PROCEEDINGS OF THE
## JUDICIAL CONFERENCE OF THE UNITED STATES

### March 13, 1990

The Judicial Conference of the United States convened on March 13, 1990, pursuant to the call of the Chief Justice of the United States issued under 28 U.S.C. 331. The Chief Justice presided and the following members of the Conference were present:

First Circuit:

       Chief Judge Levin H. Campbell
       Chief Judge Frank H. Freedman,
           District of Massachusetts

Second Circuit:

       Chief Judge James L. Oakes
       Chief Judge Charles L. Brieant,
           Southern District of New York

Third Circuit:

       Chief Judge A. Leon Higginbotham
       Judge William J. Nealon, Jr.,
           Middle District of Pennsylvania

Fourth Circuit:

       Chief Judge Sam J. Ervin, III
       Judge Frank A. Kaufman,
           District of Maryland

## COMMITTEE ON JUDICIAL IMPROVEMENTS

### AUTOMATION

The Judicial Conference approved the 1990 update to the <u>Long Range Plan for Automation in the United States Courts</u>. The Conference declined to delegate authority to the Judicial Improvements Committee to approve the annual updates of the <u>Plan</u> on the Conference's behalf.

### MISCELLANEOUS FEES

The Conference amended the schedules of fees to be charged in the district and bankruptcy courts to establish the following rates for electronic access to court data on the PACER system, barring congressional objection.   PACER allows a law firm, or other organization or individual, to use a personal computer to access a court's computer and extract public data in the form of docket sheets, calendars, and other records.

<u>Yearly Subscription Rate</u>:

> Commercial - $60 per court
> Non-profit - $30 per court

<u>Per Minute Charge</u>:

> Commercial - $1.00
> Non-profit - $0.50

Under language included in the judiciary's appropriations act for the fiscal year 1990 (Public Law 101-162), the judiciary will be entitled to retain the fees collected for PACER services in the bankruptcy courts.   The Conference agreed to seek similar legislative language to permit the judiciary to retain the fees collected for district court PACER services.

# EXHIBIT D

# REPORT OF THE PROCEEDINGS OF THE
# JUDICIAL CONFERENCE OF THE UNITED STATES

## September 20, 1993

The Judicial Conference of the United States convened in Washington, D.C., on September 20, 1993, pursuant to the call of the Chief Justice of the United States issued under 28 U.S.C. § 331. The Chief Justice presided, and the following members of the Conference were present:

First Circuit:

> Chief Judge Stephen G. Breyer
> Judge Francis J. Boyle,
> > District of Rhode Island

Second Circuit:

> Chief Judge Jon O. Newman
> Judge Charles L. Brieant,
> > Southern District of New York

Third Circuit:

> Chief Judge Dolores K. Sloviter
> Chief Judge John F. Gerry,
> > District of New Jersey

Fourth Circuit:

> Chief Judge Sam J. Ervin, III
> Judge W. Earl Britt,
> > Eastern District of North Carolina

Fifth Circuit:

> Chief Judge Henry A. Politz
> Chief Judge Morey L. Sear,
> > Eastern District of Louisiana

Committee on Court Administration and Case Management, the Judicial Conference supported in principle the substance of section 3 of the proposed Act, but referred to the Committee on Rules of Practice and Procedure the issue of whether the matter is more appropriately within the authority of federal rules. The Rules Committee is to report on the matter to the March 1994 session of the Judicial Conference.

The Judicial Conference agreed with the recommendation of the Court Administration and Case Management Committee to support section 5(b) of the proposed Act, which would amend 28 U.S.C. § 1915(d) by adding "failure to state a claim upon which relief can be granted" as a cause for dismissal.

Section 5 of the proposed Civil Justice Reform Act of 1993 would amend the Civil Rights of Institutionalized Persons Act (42 U.S.C. § 1997(e)) to direct the courts to continue any action brought by an inmate pursuant to 42 U.S.C. § 1983 for up to 180 days in order to extend the period required for exhausting administrative remedies. On recommendation of the Committee, which was concerned about the impact of this section on the manner in which many courts process these types of cases, the Conference opposed the amendment. As an alternative, the Conference offered the provisions included in the judiciary's "housekeeping bill," which would allow a case to be continued for up to 120 days rather than the 180 days contemplated by the proposed Act. Further, the housekeeping provisions would allow a judge to determine if the administrative procedures are "otherwise fair and effective," eliminating the need to wait for certification by the Attorney General.

## MISCELLANEOUS FEE SCHEDULES

At its March 1990 session, the Judicial Conference approved an amendment to the miscellaneous fee schedules for district and bankruptcy courts to provide a fee for electronic access to court data (JCUS-Mar 90, p.21). The Committee on Court Administration and Case Management believed that the policy with respect to fees for similar services in the federal courts should be consistent and, accordingly, there should be a fee for electronic access to court data for the courts of appeals.

However, while the costs of implementing a billing system in the courts of appeals for the Public Access to Electronic Records System (PACER) used by the district and bankruptcy courts (or for a similar alternative public access system) would be modest, only a small number of appellate courts offer PACER, and the usage rates of the appellate PACER system are low. Some appellate courts utilize a very different electronic access system called Appellate Court Electronic Services (ACES) (formerly known as Electronic Dissemination of Opinions System (EDOS)). The Committee determined that, at this time, the costs of implementing and operating a billing and fee collection system for electronic access to the ACES/EDOS system would outweigh the benefit of the revenues to be generated.

Thus, on recommendation of the Committee, the Judicial Conference agreed to amend the miscellaneous fee schedule for appellate courts promulgated under 28 U.S.C. § 1913 to provide a fee for usage of electronic access to court data, but to limit the application of the fee to users of PACER and other similar electronic access systems, with no fee to be applied to users of ACES/EDOS at the present time. The Conference further agreed to delegate to the Director of the Administrative Office the authority to determine the appropriate date to implement the fee, to ensure that usage rates warrant the administrative expense of collecting the fee and that the appropriate software and the billing and fee collection procedures are developed prior to implementation in the appellate courts.

## INTERPRETER TEST APPLICATION FEES

Since 1985, the Administrative Office, which is responsible under 28 U.S.C. § 1827 for the development and administration of interpreter certification examinations, has contracted with the University of Arizona to perform this function. Due to concerns raised about the legal validity of language in the contract permitting the contractor to collect and budget funds without clear statutory authorization, the Judicial Conference approved a recommendation by the Court Administration and Case Management Committee that legislation be sought to authorize the Administrative Office to prescribe fees for the development and administration of interpreter certification examinations and permit a contractor to collect fees and apply them as payment for services under the contract.

## FILING BY FACSIMILE

After consideration of the conflicting recommendations of three of its Committees, the Judicial Conference referred to the Committee on Rules of Practice and Procedure, in coordination with the Court Administration and Case Management and the Automation and Technology Committees, the question of whether, and under what technical guidelines, filing by facsimile on a routine basis should be permitted. A report on the issue should be made to the September 1994 Judicial Conference.

## ARBITRATION

At the request of the Committee on Court Administration and Case Management, the Judicial Conference reconsidered its March 1993 decision not to support legislation authorizing the expansion of mandatory arbitration (JCUS-MAR 93, p. 12). The Conference again declined to support the enactment of legislation that would provide authorization to all federal courts to utilize mandatory arbitration at the courts' discretion.

# EXHIBIT  E

# REPORT OF THE PROCEEDINGS
# OF THE JUDICIAL CONFERENCE
# OF THE UNITED STATES

## March 15, 1994

The Judicial Conference of the United States convened in Washington, D.C., on March 15, 1994, pursuant to the call of the Chief Justice of the United States issued under 28 U.S.C. § 331. The Chief Justice presided, and the following members of the Conference were present:

First Circuit:

> Chief Judge Stephen G. Breyer
> Judge Francis J. Boyle,
>> District of Rhode Island

Second Circuit:

> Chief Judge Jon O. Newman
> Judge Charles L. Brieant,
>> Southern District of New York

Third Circuit:

> Chief Judge Dolores K. Sloviter
> Chief Judge John F. Gerry,
>> District of New Jersey

Fourth Circuit:

> Chief Judge Sam J. Ervin, III
> Judge W. Earl Britt,
>> Eastern District of North Carolina

Fifth Circuit:

> Chief Judge Henry A. Politz
> Chief Judge Morey L. Sear,
>> Eastern District of Louisiana

## COMPUTER INTEGRATED COURTROOM SYSTEM

Computer integrated courtroom systems allow participants in a court proceeding "real-time" access to a transcript as it is being reported, enabling them to read testimony immediately after it is given. Such systems are substantially more expensive than other transcription methods because of the increased cost of the equipment and the reporter, who must be more highly skilled. In light of today's tight budgetary climate, on recommendation of the Committee on Court Administration and Case Management, the Judicial Conference disapproved the use of computer integrated courtroom system/real-time reporting systems as a method of recording proceedings in bankruptcy courts.

## MISCELLANEOUS FEE SCHEDULE FOR COURT OF FEDERAL CLAIMS

The miscellaneous fee schedules for the district, bankruptcy and appellate courts provide a fee for usage of electronic access to court data and do not exempt federal agencies from such fees (JCUS-MAR 90, p. 21; JCUS-SEP 93, pp. 44-45). On recommendation of the Committee, the Judicial Conference approved a corresponding amendment to the miscellaneous fee schedule for the Court of Federal Claims promulgated under 28 U.S.C. § 1926.

## VIDEO-CONFERENCING

The Judicial Conference approved a Committee recommendation to authorize the Middle District of Louisiana to conduct, at no cost to the judiciary, a one-year pilot project for video-conferencing prisoner civil rights and habeas corpus cases. The Conference also endorsed a Committee recommendation that a sunset date of September 30, 1995, be established for all video-conferencing pilot projects.

## COURT INTERPRETING BY TELEPHONE

Based upon the successful results of a pilot program on the feasibility of interpreting by telephone, the Committee recommended that the Conference approve the use of basic telephone technology as a method of providing interpreting services in short proceedings such as pretrial hearings,

# EXHIBIT   F

# REPORT OF THE PROCEEDINGS
# OF THE JUDICIAL CONFERENCE
# OF THE UNITED STATES

**March 12, 1996**

The Judicial Conference of the United States convened in Washington, D.C., on March 12, 1996, pursuant to the call of the Chief Justice of the United States issued under 28 U.S.C. § 331. The Chief Justice presided, and the following members of the Conference were present:

First Circuit:

> Chief Judge Juan R. Torruella
> Chief Judge Joseph L. Tauro,
> > District of Massachusetts

Second Circuit:

> Chief Judge Jon O. Newman
> Chief Judge Peter C. Dorsey,
> > District of Connecticut

Third Circuit:

> Chief Judge Dolores K. Sloviter
> Chief Judge Edward N. Cahn,
> > Eastern District of Pennsylvania

Fourth Circuit:

> Chief Judge J. Harvie Wilkinson, III
> Judge W. Earl Britt,
> > Eastern District of North Carolina

Fifth Circuit:

> Chief Judge Henry A. Politz
> Chief Judge William H. Barbour,
> > Southern District of Mississippi

## MISCELLANEOUS FEE SCHEDULES - SEARCH FEE

Although the miscellaneous fee schedules for the district and bankruptcy courts include a fee for every search of the records of the court conducted by the clerk's office, the fee schedule for the United States Court of Federal Claims (28 U.S.C. § 1926) contains no search fee. On recommendation of the Committee, the Judicial Conference approved an amendment to the miscellaneous fee schedule for the Court of Federal Claims to add a $15 search fee and to include a reference to the guidelines for the application of the search fee found in the district court miscellaneous fee schedule.

## MISCELLANEOUS FEE SCHEDULES - ELECTRONIC PUBLIC ACCESS FEE

In March 1991, the Judicial Conference approved a fee for electronic access to court data for the district and bankruptcy courts (JCUS-MAR 91, p. 16), and a similar fee was approved in March and September 1994 for the appellate courts (JCUS-MAR 94, p. 16) and the United States Court of Federal Claims (JCUS-SEP 94, p. 47), respectively. This fee has been incorporated into the appropriate miscellaneous fee schedules. The fee was initially established at $1.00 per minute; it was reduced in March 1995 to 75 cents per minute to avoid an ongoing surplus (JCUS-MAR 95, pp. 13-14). At this session, the Conference approved a Committee recommendation to reduce the fee for electronic public access further, from 75 cents per minute to 60 cents per minute.

## CLOSED CIRCUIT TELEVISING OF COURT PROCEEDINGS

Proposed legislation would require federal courts to order the closed circuit televising of proceedings in certain criminal cases, particularly cases that have been moved to a remote location. The legislation would authorize or require the costs of the closed circuit system to be paid from private donations. The Judicial Conference determined to take no policy position on the legislative amendments pertaining to closed circuit television. It also approved a recommendation of the Court Administration and Case Management Committee that the House and Senate Judiciary Committee leadership be informed that such legislation, if enacted, should be modified to (a) remove any prohibition relating to the expenditure of appropriated funds; and (b) make discretionary any requirement that courts order closed circuit televising of certain criminal proceedings.

# EXHIBIT  G

# REPORT OF THE PROCEEDINGS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES

*SEPTEMBER 15, 1998*

*WASHINGTON, D.C.*

*JUDICIAL CONFERENCE OF THE UNITED STATES*
*CHIEF JUSTICE WILLIAM H. REHNQUIST,*
*PRESIDING*
*LEONIDAS RALPH MECHAM, SECRETARY*

---

## MISCELLANEOUS FEE SCHEDULES

**Internet Fee for Electronic Access to Court Information.** The miscellaneous fee schedules for the appellate, district and bankruptcy courts, the U.S. Court of Federal Claims, and the Judicial Panel on Multidistrict Litigation provide a fee for public access to court electronic records (PACER) (28 U.S.C. §§ 1913, 1914, 1926, 1930 and 1932). The revenue from these fees is used exclusively to fund the full range of electronic public access (EPA) services. With the introduction of Internet technology to the judiciary's current public access program, the Committee on Court Administration and Case Management recommended that a new Internet PACER fee be established to maintain the current public access revenue while introducing new technologies to expand public accessibility to PACER information. On the Committee's recommendation, the Judicial Conference approved an amendment to the miscellaneous fee schedules for the appellate, district and bankruptcy courts, the U.S. Court of Federal Claims, and the Judicial Panel on Multidistrict Litigation to establish an Internet PACER fee of $.07 per page for public users obtaining PACER information through a federal judiciary Internet site.

The Committee also addressed the issue of what types of data or information made available for electronic public access should have an associated fee and what types of data should be provided at no cost. On recommendation of the Committee, the Judicial Conference agreed to include the following language as addenda to the same miscellaneous fee schedules:

> a. The Judicial Conference has prescribed a fee for access to court data obtained electronically from the public dockets of individual case records in the court, except as provided below.

> b. Courts may provide other local court information at no cost. For example:

> - local rules,
> - court forms,
> - news items,
> - court calendars,
> - opinions designated by the court for publication, and

- other information—such as court hours, court location, telephone listings—determined locally to benefit the public and the court.

**Court of Federal Claims.** In September 1997, the Judicial Conference approved an amendment to the district court and bankruptcy court miscellaneous fee schedules to increase the fee for exemplifications to twice the amount of the fee for certifications (JCUS-SEP 97, p. 59). The miscellaneous fee schedule for the United States Court of Federal Claims also contains a provision on fees for exemplifications and certifications, which was inadvertently excluded from this Conference action. At this session, the Conference approved a Committee recommendation that the Conference amend Item 3 of the United States Court of Federal Claims miscellaneous fee schedule to make the fee for certification of any document or paper, where the certification is made directly on the document or by separate instrument, $5 [4] and the fee for exemplification of any document or paper twice the amount of the fee for certification.

The Court of Federal Claims was also omitted from action taken by the Conference in March 1993 amending the miscellaneous fee schedule for district courts to increase the fees for admission to practice and for duplicate admission certificates and certificates of good standing (JCUS-MAR 93, p. 6). Since the miscellaneous fee schedule for the Court of Federal Claims contains similar provisions, at this session the Conference approved the Committee's recommendation that the Conference raise the attorney admission fee, prescribed in Item 4 of the United States Court of Federal Claims miscellaneous fee schedule, to $50 and the fee for a duplicate certificate of admission or certificate of good standing to $15, provided that legislation permitting the judiciary to retain any increase in fees collected under the miscellaneous fee schedules is enacted.

---

## CONSOLIDATION - SOUTHERN DISTRICT OF WEST VIRGINIA

At its March 1998 session, the Judicial Conference adopted procedures for combining functions in the district and bankruptcy courts. The procedures provide for the review of requests for the consolidation of district and bankruptcy

---

[4]The Judicial Conference, in September 1996, approved an inflationary increase of this fee to $7.00, provided legislation is enacted permitting the judiciary to retain the resulting increase (JCUS-SEP 96, p. 54).

# EXHIBIT  H

# REPORT OF THE PROCEEDINGS
# OF THE JUDICIAL CONFERENCE
# OF THE UNITED STATES

*MARCH 14, 2001*
*WASHINGTON, D.C.*

> *(iv) ownership of government securities is a "financial interest" in the issuer only if the outcome of the proceeding could substantially affect the value of the securities.*

## COMMITTEE ACTIVITIES

Since its last report in September 2000, the Committee on Codes of Conduct received 25 new written inquiries and issued 26 written advisory responses.  During this period, the average response time for requests was 19 days.  The Chairman received and responded to 23 telephonic inquiries.  In addition, individual Committee members responded to 135 inquiries from their colleagues.

# COMMITTEE ON COURT ADMINISTRATION AND CASE MANAGEMENT

## MISCELLANEOUS FEE SCHEDULES

Electronic Public Access.  Pursuant to 28 U.S.C. §§ 1913, 1914, 1926(a), 1930(b) and 1932, the Judicial Conference is authorized to prescribe fees to be collected by the appellate and district courts, the Court of Federal Claims, the bankruptcy courts, and the Judicial Panel on Multidistrict Litigation, respectively.  While the various fees included in these miscellaneous fee schedules are often court-specific, the fees pertaining to electronic public access (EPA) to court information cut across fee schedule lines.  The Judicial Conference approved a Court Administration and Case Management Committee recommendation that EPA fees be removed from the various courts' fee schedules and reissued in an independent miscellaneous EPA fee schedule that would apply to all court types.

The Committee also recommended three substantive amendments to the EPA fee schedule.  The first amendment concerned the user fee for Internet access to the judiciary's new case management/electronic case files (CM/ECF) system.  Pursuant to section 404 of Public Law No. 101-515, which directs the Judicial Conference to prescribe reasonable fees for public access to information available in electronic form, the judiciary established a seven cents per page fee for Internet access to electronic court records that will apply to CM/ECF when it is introduced (JCUS-SEP 98, p. 64).  In response to

*March 14, 2001*

concerns about the effect of these fees on open access to court records, especially with regard to litigants, the Committee recommended that the schedule be amended to state that attorneys of record and parties in a case (including pro se litigants) receive one free electronic copy of all filed documents, if receipt is required by law or directed by the filer, which could then be printed and saved to the recipient's own computer or network.  The Committee further recommended that no fee under this provision be owed until an individual account holder accrued charges of more than $10 in a calendar year.  This would allow free access to over 140 electronic pages, providing a basic level of public access consistent with the services historically provided by the courts.  After discussion, the Conference adopted the Committee's recommendations.

The Committee's second proposal was for the establishment of a new fee of 10 cents per page for printing paper copies of documents through public access terminals at clerks' offices.  This proposed fee, set at a level commensurate with the costs of providing existing services and developing enhanced services, is less than the 50 cents per page fee currently being charged for retrieving and copying court records and would therefore encourage the use of public access terminals and reduce demands on clerks' offices.  The Conference approved the Committee's recommendation.

Lastly, the Committee recommended, and the Conference approved, the establishment of a Public Access to Court Electronic Records (PACER) Service Center search fee of $20.  The PACER Service Center provides registration, billing, and technical support for the judiciary's EPA systems and receives numerous requests daily for particular docket sheets from individuals who do not have PACER accounts.  This fee would be consistent with the fees currently imposed "for every search of the records of the court, and for certifying the results thereof" in the other fee schedules.

Reproduction of Recordings.  The miscellaneous fee schedules for the appellate, district, and bankruptcy courts include a provision requiring that a fee be charged for "reproduction of magnetic tape recordings, either cassette or reel-to-reel...including the cost of materials."  The Committee recommended that this fee be modified to account for the expanded variety of media technologies, including the use of digital equipment, rather than magnetic tape recordings.  In addition, the Committee recommended that the current exemption from the fee for the federal government be eliminated when the requested record is available through the judiciary's CM/ECF system.  Approving the Committee's recommendations, the Conference amended

# EXHIBIT  I

# REPORT OF THE PROCEEDINGS
# OF THE JUDICIAL CONFERENCE
# OF THE UNITED STATES

*MARCH 13, 2002*
*WASHINGTON, D.C.*

*March 13, 2002*

accommodate a recent high-profile case filed in the Eastern District of Virginia (*see supra*, "Privacy and Public Access to Electronic Case Files," pp. 5-6).  At this session, the Conference approved the Committee's recommendation to allow such exceptions on a permanent basis.

_____

## JURY WHEEL DATA

To ensure that juries are selected randomly from a fair cross section of the community, the Administrative Office provides Census Bureau data for every jury division in each federal district showing racial, ethnic and gender composition of the general voting-age population to serve as a basis for comparison to jury wheel samplings.  However, two recent court rulings have found that because an individual must be a citizen to be eligible to serve as a juror, the relevant population with which to make these comparisons is the voting-age population of *citizens*, rather than the voting-age population of *all persons*.  Finding that the voting-age citizen population would provide a more precise basis for comparison against jury wheel samplings, the Committee recommended, and the Conference approved, the use of such data in lieu of voting-age general population data for district courts to complete Part IV of the Form JS-12, "Report on the Operation of the Jury Selection Plan."  The Conference directed the Administrative Office to make any necessary amendments to the form to comport with this change.

_____

## ELECTRONIC PUBLIC ACCESS FEE SCHEDULE

The Electronic Public Access Fee Schedule imposes a fee of seven cents per page for case file data obtained via the Internet (JCUS-SEP 98, p. 64; JCUS-MAR 01, pp. 12-13).  This fee is  based upon the total number of pages in a document, even if only one page is viewed, because the case management/electronic case files system (CM/ECF) software cannot accommodate a request for a specific range of pages from a document.  Concerns have been raised that this can result in a relatively high charge for a small usage.  Balancing user concerns with the need to generate sufficient revenue to fund the program, the Committee recommended that the Judicial Conference amend Section I of the Electronic Public Access Fee Schedule to cap the charge for accessing any single document via the Internet at the fee for 30 pages.  The Conference adopted the Committee's recommendation.

# EXHIBIT   J

# REPORT OF THE PROCEEDINGS
# OF THE JUDICIAL CONFERENCE
# OF THE UNITED STATES

*SEPTEMBER 21, 2004*
*WASHINGTON, D.C.*

*JUDICIAL CONFERENCE OF THE UNITED STATES*
*CHIEF JUSTICE WILLIAM H. REHNQUIST,*
*PRESIDING*
*LEONIDAS RALPH MECHAM, SECRETARY*

Appellate Attorney Admission Fee.  The Conference adopted a recommendation of the Committee to establish an appellate attorney admission fee of $150 to be incorporated into the Court of Appeals Miscellaneous Fee Schedule.  This fee is in addition to any attorney admission fee charged and retained locally pursuant to Federal Rule of Appellate Procedure 46(a)(3).  The proceeds from the new fee will be deposited into the judiciary's fee account.

Central Violations Bureau (CVB) Processing Fee.  The Central Violations Bureau processes the payments of approximately 400,000 petty offense citations every year that are issued by various government agencies for violations on federal property.  No fee has been charged for the considerable work the CVB does in processing these cases.  On recommendation of the Committee, the Judicial Conference agreed to seek legislation establishing a processing fee of $25 for cases processed through the CVB and allowing the proceeds to be retained by the judiciary.[4]

Public Access to Court Electronic Records (PACER) Internet Fee. Congress has specified that electronic public access (EPA) fees be used to enhance electronic public access, which is currently available through the PACER program.  More recently, in the congressional conference report accompanying the judiciary's FY 2004 appropriations act, Congress expanded the permitted uses of EPA funds to include case management/electronic case files (CM/ECF) system operational costs.  In order to provide sufficient revenue to fully fund currently identified case management/electronic case files system costs, the Conference adopted a recommendation of the Committee to amend Item 1 of the Electronic Public Access Fee Schedule to increase the fee for public users obtaining information through a federal judiciary Internet site from seven to eight cents per page.

_____

## SHARING ADMINISTRATIVE SERVICES

An independent study is currently being conducted on ways to deliver administrative services to the courts in a more efficient and cost-effective manner.  In order to help contain costs in the short-term while the study is being completed, the Committee on Court Administration and Case Management recommended that the Judicial Conference strongly urge all

_____

[4]The Consolidated Appropriations Act of 2005 also provided the Judicial Conference with the authority to prescribe and retain a fee for the processing of violations through the CVB.

# EXHIBIT   K



# THE JUDICIARY

## Fiscal Year 2007  Financial Plans

**MARCH 14, 2007**

# Fiscal Year 2007 Financial Plan
## *JUDICIARY INFORMATION TECHNOLOGY FUND*

The Judiciary Information Technology Fund (JITF) was established by Congress in fiscal year 1990 (28 U.S.C. § 612) to assist the Judiciary in implementing its automation initiatives.  The authority of the JITF was extended indefinitely in the fiscal year 1998 Commerce, Justice, State, Judiciary, and Related Agencies Appropriations Act (P.L. 105-119).  The JITF was authorized "without fiscal year limitation," which allows the Judiciary to carry forward funds for projects that incur obligations over multiple years.  The fund makes it possible to implement the *Long-Range Plan for Information Technology in the Federal Judiciary* and to manage the information technology (IT) program over a multi-year planning cycle while maximizing efficiencies and benefits.

The JITF provides the judiciary with a funds management tool which allows more effective and efficient planning, budgeting, and use of appropriated funds for IT activities.  In keeping with the judiciary's IT mission, these activities include the design, development, acquisition, implementation, and maintenance of systems for the collection, management, manipulation, dissemination, and protection of information used by the judiciary, the bar, and the public.  All IT expenses for the appellate, district, and bankruptcy courts, as well as for the probation and pretrial services offices, must be made from the fund.

Each fiscal year, current year requirements are financed via the JITF from a variety of sources:

- deposits from the courts' Salaries and Expenses account;
- fee collections from the Electronic Public Access program;
- unobligated balances in the fund resulting from prior year financial plan savings (unencumbered);
- proceeds from the sale of excess equipment;
- court allotments for non-IT purposes that are reprogrammed locally by the courts for IT initiatives under the budget decentralization program; and
- voluntary deposits from non-mandatory judiciary users of the fund (such as the Court of International Trade, the U.S. Sentencing Commission, and the Administrative Office).

The following table displays JITF requirements and funding sources for fiscal years 2006 and 2007.

| Obligations ($000s) | Fiscal Year 2006 Financial Plan | Fiscal Year 2006 Actuals | Fiscal Year 2007 Financial Plan | Percent Change Plan to Plan |
|---|---|---|---|---|
| Salaries and Expenses | $    288,267 | | $    289,275 | 0.4% |
| Encumbered Carryforward (slippage) | $    61,020 | | $    53,759 | -11.9% |
| Subtotal, Salaries and Expenses | $    349,287 | $    289,653 | $    343,034 | -1.8% |
| Electronic Public Access Program | $    20,153 | $    11,560 | $    27,229 | 35.1% |
| Court of International Trade | $    313 | $    148 | $    357 | 14.1% |
| U. S. Sentencing Commission | $    1,901 | $    0 | $    1,901 | 0.0% |
| Administrative Office of the U. S. Courts | $    727 | $    727 | $    726 | -0.1% |
| **Total Obligations:** | **$    372,381** | **$    302,088** | **$    373,247** | **0.2%** |

The following section outlines JITF programs funded from each of the judiciary accounts.

## SALARIES AND EXPENSES

The Salaries and Expenses financial plan includes available funding of $298.3 million for the fiscal year 2007 plan as detailed below.

| Sources of Funding ($000) | FY 2006 Financial Plan | FY 2007 Financial Plan | Percent Change |
|---|---|---|---|
| Deposit from the Salaries and Expenses Account | $ 251,460 | $ 223,693 | -11.0% |
| Fiscal year 2006 balances (savings) | $ 0 | $ 24,210 | |
| Utilization of EPA Receipts | $ 36,807 | $ 41,372 | 12.4% |
| **Subtotal Current Year Obligations** | **$ 288,267** | **$ 289,275** | **3.0%** |

*Note: Encumbered project slippage is shown separately on page 44.*

| Current Year Spending ($000) | FY 2006 Financial Plan | FY 2007 Financial Plan | Percent Change |
|---|---|---|---|
| Court Allotments | $ 80,154 | $ 88,900 | 10.9% |
| IT Infrastructure and Project Development | $ 120,833 | $ 118,641 | -1.8% |
| Courtroom Technologies | $ 13,561 | $ 17,808 | 31.3% |
| Telecommunications | $ 47,563 | $ 38,628 | -18.8% |
| Automation Support Personnel | $ 26,156 | $ 25,298 | -3.3% |
| **Subtotal, Final Plan (excluding slippage)** | **$ 288,267** | **$ 289,275** | **0.3%** |

The content of each program activity included in the Salaries and Expenses plan is outlined below:

## 1)      Court Allotments: $88,900,000

This category provides for the non-salary information technology formula allotments to fund court information technology and data communications/local area network equipment and infrastructure, including the cyclical replacement of this equipment, and other information technology operating expenses and telecommunication needs.

The information technology infrastructure formula is updated regularly to reflect changing IT needs of the courts.  Considerations for the refreshed formula include how, when, and where technology is being used by the courts as well as updated information on life-cycle replacement periods for desktop/laptop personal computers and peripheral equipment, and emerging technologies that may benefit the courts.  The refined and additional elements contained in the formula are not new requirements; rather, they reflect the courts' current IT infrastructure needs.

**SALARIES AND EXPENSES** continued

2)      **IT Infrastructure and Project Development**:  **$118,641,000**

This funding supports seven separate and distinct IT program components.  The Judicial Conference's Information Technology Committee has endorsed using these program components to provide a better overview of the cost drivers in the JITF program.  These requirements support the judiciary's IT systems and infrastructure, and provide judges and staff with the tools they need to perform their day-to-day work.

| IT Infrastructure and Project Development by Program Component | | | |
|---|---|---|---|
| **IT Program Component** | **FY 2006 Financial Plan** | **FY 2007 Financial Plan** | **Percent Change** |
| Court Administration and Case Management | $          20,753 | $          14,778 | -28.8% |
| Judicial Statistical and Reporting Systems | $           3,183 | $           2,131 | -33.1% |
| Probation/Pretrial Services Management Systems | $           9,094 | $          12,285 | 35.1% |
| Financial Systems | $          14,955 | $          14,706 | -1.7% |
| Human Resources Systems | $           9,778 | $          15,622 | 59.8% |
| Management Information Systems | $          10,084 | $           9,509 | -5.7% |
| Infrastructure and Collaboration Tools | $          52,986 | $          49,610 | -6.4% |
| **Subtotal** | **$120,833** | **$     118,641** | **-1.8%** |

*Court Administration and Case Management Systems*:     *$14.8 million*
This category encompasses systems that manage cases and case files for appellate, district and bankruptcy courts and the Central Violations Bureau.  Other systems also include juror qualification, management, and payment;  the management and administration of library functions (e.g., acquisitions, cataloging, serial control); and the operations and maintenance for the Central Violations Bureau which provides case management and financial information for petty offense and misdemeanor cases initiated by violation notices.

**Via this financial plan submission, the Judiciary seeks spending authority to implement a Memorandum of Agreement with the State of Mississippi to undertake a three-year study of the feasibility of sharing the Judiciary's case management electronic case filing system at the state level, to include electronic billing processes.  The estimated cost of this three year pilot will not exceed $1.4 million.**

*Judicial Statistical and Reporting Systems*: *$2.1 million*
This category includes systems to support the operations and maintenance and ongoing systems development for gathering and reporting statistics in the Judiciary; financial disclosures by judges and Judiciary employees (for completing financial reports required by the Ethics in Government Act of 1978);  inter-circuit assignments for courts of appeals and district courts; bankruptcy administrator management and reporting to manage cases, oversee the trustees' activity, and provide reports to federal judges; the law clerk hiring process; and electronic document capabilities for the federal rule-making process.

**SALARIES AND EXPENSES** continued:

*Probation/Pretrial Services Management Systems:  $12.3 million*
This program provides probation and pretrial services personnel case management and decision support tools as well as tools to access critical case information while working in the field.  Support is also provided for storage and sharing of electronic documents, collection, analysis, and reporting of client data, and the IT needs of the Federal Law Enforcement Training Center.

*Financial Systems*:  *$14.7 million*
In addition to the financial accounting system, this program includes systems to support the local court budgeting process, make payments for private counsel and expert services, track and monitor criminal debt imposed by the court, handle cash receipting, report court payroll information, and handle travel expenses.

*Human Resources Systems:  $15.6 million*
This program encompasses systems for personnel, payroll, and retirement related services, judges' retirement, fair employment practices reporting, and integration of all human resources-related items as well as efforts to reduce travel-based training.  It also includes equipment to produce educational news programming for the Judiciary, the public, and Congress.  The cornerstone of providing these human resources services for the courts is to integrate all human resources-related items into a single user experience through the exploitation of internet architecture and online distributed processing ensuring timely, accurate and integrated processing of personnel and payroll information.

*Management Information Systems*:  *$9.5 million*
This category includes a collection of systems and activities to support the procurement process, the Judiciary's national web sites, collection of survey information, the national records management program, the Court Operations Support Center, and the *Guide to Judiciary Policies and Procedures*. Also included are systems to manage facilities projects and to support planning and decision-making with staffing, financial, and workload data.

*Infrastructure and Collaboration Tools:     $49.6 million*
These tools provide support to the national IT program including testing, training, and support; maintenance and replacement of servers; e-mail messaging (including licenses, server maintenance and replacement, and help desk services); IT security and national gateways (including security support services); mainframe computer and national software licenses; IT project management; information systems architecture (and assessment of new technologies); local court grants for technology innovation; portal technology; and infrastructure for identity management services.

**SALARIES AND EXPENSES** continued:

3)      **Courtroom Technologies: $17,808,000**

These funds equip courtrooms with a variety of technologies to improve the quality and efficiency of certain aspects of courtroom proceedings.  These technologies include video evidence presentation systems, video conferencing systems, and electronic methods of taking the record.  The use of technology in the courtroom facilitates case management, reduces trial time, litigation costs and improves fact-finding, jury understanding and access to court proceedings.

Through the implementation of CM/ECF, court case files are becoming fully electronic, and that technology is revolutionizing trial processes.  To fully realize the benefits of electronic case files in the courtroom, the Judicial Conference Committee on Court Administration and Case Management recommends the expanded use of available balances derived from electronic public access fees in the Judiciary Information Technology Fund to fund court allotments  for the much needed implementation of a cyclical equipment replacement and maintenance program for courtroom technologies.

**Via this financial plan submission**, **the Judiciary seeks authority to expand use of Electronic Public Access (EPA) receipts to support courtroom technology allotments for installation, cyclical replacement of equipment, and infrastructure maintenance**.  **The Judiciary seeks this expanded authority as an appropriate use of EPA receipts to improve the ability to share case evidence with the public in the courtroom during proceedings and to share case evidence electronically through electronic public access services when it is presented electronically and becomes an electronic court record.**

4)      **Telecommunications:  $38,628,000**

These funds support the judiciary's telecommunications program, and allow the judiciary to fund recurring expenses such as long distance and FTS charges, maintenance and follow-on service, relocation/reconfiguration of existing systems; and purchase or replacement of existing court systems including systems for new courthouses and prospectus alterations projects.  The telecommunications program allows the judiciary to maintain telecommunications services for the appellate, district, and bankruptcy courts and for probation and pretrial services offices, and procure telecommunications equipment for new courthouses and for courthouses undergoing major repairs and alteration.  Funds are provided directly to the courts for annual recurring requirements such as charges for local, commercial long distance, and cellular services.  The judiciary also incurs recurring charges for FTS long distance services for both voice and data transmission.

5)      **Automation Support Program:  $25,298,000**

These funds provide for staffed operations at the Administrative Office including salaries, contractual services, and other operating expenses to provide support to the courts for data communications, network applications, and other information technology systems.  The FTEs associated with these Administrative Office reimbursable positions are approved annually by the Executive Committee of the Judicial Conference.  Since 1995, the number of automation support positions has declined from a high of 230 to the current 197.

**Salaries and Expenses Encumbered Financing Requirements (Project Slippage)**

The Salaries and Expenses financial plan also includes several areas where information technology obligations that were included in the fiscal year 2006 financial plan were delayed and the requirements, along with the funds, carried forward into fiscal year 2007.  In order to provide appropriate comparisons between fiscal years, these encumbered funds are being displayed separately.  A summary of the planned uses of these funds is provided below.

**Financing ($000s):**

|  | FY 2006 Financial Plan | FY 2007 Financial Plan | Percent Change |
|---|---|---|---|
| **Judiciary Information Technology Fund Slippage** | $          61,020 | $          53,759 | -11.9% |

These slipped requirements include funding from project development efforts, operations and maintenance initiatives, and courtroom technology projects.  The slippage is broken out as follows:

• **IT Infrastructure and Project Development  $21.9 million**:
  Includes funding associated with equipment for the new bankruptcy judges, and slippage from schedule delays affecting contractual outsourcing, training, national licenses, the judiciary data center, records management, and local initiatives.  A summary of slippage by IT program component is as follows:
  ▸ Court administration and case management $1.0 million;
  ▸ Judicial statistical and reporting systems $1.3 million;
  ▸ Probation and pretrial services case management $0.04 million; financial systems $2.8 million;
  ▸ Human resources systems $1.2 million;
  ▸ Management information systems $1.9 million; and
  ▸ Information collaboration tools $13.7 million.

▸ **Courtroom Technology  $7.5 million:**
  Includes equipment and maintenance associated with planned installations for new bankruptcy judges and from fiscal year 2006 schedule delays.

▸ **Telecommunications  $7.3 million**:
  Includes $6.4 million in funding for telecommunications equipment as a result of slippage in the building schedule, the transition to Networx, and $0.9 million from the remaining emergency communication supplemental funding.

• **Service Delivery Alternative  $16.9 million:**
  Includes funding for the service delivery alternative (including deferred cyclical server maintenance funding) to identify and evaluate alternate delivery models for IT systems with the aim of selecting and implementing more cost-effective models that would reduce the number of servers nationwide.

**ELECTRONIC PUBLIC ACCESS (EPA)**

**Financing ($000)**

| | FY 2006 Financial Plan | FY 2006 Actual | FY 2007 Financial Plan | Percent Change over FY 2006 Plan |
|---|---|---|---|---|
| Collections | $ 49,152 | $ 62,300 | $ 62,120 | 26.4% |
| Prior-year Carryforward | $ 14,376 | $ 14,376 | $ 32,200 | 124.0% |
| **Total** | **$ 63,528** | **$ 76,676** | **$ 94,320** | **48.5%** |

**SPENDING**

| ($000s) | FY 2006 Financial Plan | FY 2006 Actual | FY 2007 Financial Plan | Percent Change over FY 2006 Plan |
|---|---|---|---|---|
| EPA Program Operations | $ 19,346 | $ 11,560 | $ 27,229 | 40.7% |
| Available to Offset Approved Public Access initiatives (e.g. CM/ECF) | $ 36,807 | $ 32,916 | $ 41,372 | 12.4% |
| Planned Carryforward | $ 7,325 | $ 32,200 | $ 25,719 | 251.1% |
| **Total** | **$ 63,528** | **$ 76,676** | **$ 94,320** | **48.5%** |

The judiciary's Electronic Public Access (EPA) program provides for the development, implementation and enhancement of electronic public access systems in the federal judiciary. The EPA program provides centralized billing, registration and technical support services for PACER (Public Access to Court Electronic Records), which facilitates Internet access to data from case files in all court types, in accordance with policies set by the Judicial Conference. The increase in fiscal year 2007 EPA program operations includes one-time costs associated with renegotiation of the Federal Telephone System (FTS) 2001 telecommunications contract.

Pursuant to congressional directives, the program is self-funded and collections are used to fund information technology initiatives in the judiciary related to public access. Fee revenue from electronic access is deposited into the Judiciary Information Technology Fund. Funds are used first to pay the expenses of the PACER program. Funds collected above the level needed for the PACER program are then used to fund other initiatives related to public access. The development, implementation, and maintenance costs for the CM/ECF project have been funded through EPA collections. In fiscal year 2007, the judiciary plans to use $41.4 million in EPA collections to fund public access initiatives within the Salaries and Expenses financial plan including:

- ▸ CM/ECF Infrastructure and Allotments $20.6 million
- ▸ Electronic Bankruptcy Noticing $5.0 million
- ▸ Internet Gateways $8.8 million
- ▸ Courtroom Technology Allotments for Maintenance/Technology Refreshment $7.0 million (New authority requested for this item on page 46)

The fiscal year 2007 financial plan for courtroom technologies includes $7.0 million for court allotments to be funded EPA receipts to provide cyclical replacement of equipment and infrastructure maintenance.

**Via this financial plan submission**, **the Judiciary seeks authority to expand use of Electronic Public Access (EPA) receipts to support courtroom technology allotments for installation, cyclical replacement of equipment, and infrastructure maintenance**.  **The Judiciary seeks this expanded authority as an appropriate use of EPA receipts to improve the ability to share case evidence with the public in the courtroom during proceedings and to share case evidence electronically through electronic public access services when it is presented electronically and becomes an electronic court record.**

## COURT OF INTERNATIONAL TRADE

The following table details the beginning balances, deposits, obligations, and carryforward balances in the JITF for the Court of International Trade for  fiscal years 2006 and 2007.

| Judiciary Information Technology Fund | FY 2006 Financial Plan | FY 2006 Actual | FY 2007 Financial Plan | Percent Change over FY 2006 plan |
|---|---|---|---|---|
| Balance, Start of Year | $          598 | $          605 | $          657 | 9.9% |
| Current-year Deposits | $            0 | $          200 | $            0 | 0.0% |
| Obligations | $         (313) | $         (148) | $         (357) | 14.1% |
| **Balance, End of Year** | **$          285** | **$          657** | **$          300** | **5.3%** |

The Court has been using the Judiciary Information Technology Fund to upgrade and enhance its information technology needs and infrastructure.  Of the $0.7 million that carried forward into fiscal year 2007 in the Judiciary Information Technology Fund, $0.4 million is planned for obligation in the fiscal year 2007 financial plan, the remaining $0.3 million will carry forward into fiscal year 2008.

These funds will be used to continue the Court's information technology initiatives, in accordance with its long-range plan, and to support the Court's recent and future information technology growth.   The Court is planning to use these funds to continue the support of its newly upgraded data network and voice connections; to pay for the recurring Virtual Private Network System (VPN) phone and cable line charges; replace the Court's CM/ECF file server; purchase computer desktop systems and laptops for the Court's new digital recording system; replace computer desktop systems, printers and laptops in accordance with the judiciary's cyclical replacement program; and upgrade and support existing software applications.

# EXHIBIT   L

ROBERT C. BYRD, WEST VIRGINIA, CHAIRMAN

| | |
|---|---|
| DANIEL K. INOUYE, HAWAII | THAD COCHRAN, MISSISSIPPI |
| PATRICK J. LEAHY, VERMONT | TED STEVENS, ALASKA |
| TOM HARKIN, IOWA | ARLEN SPECTER, PENNSYLVANIA |
| BARBARA A. MIKULSKI, MARYLAND | PETE V. DOMENICI, NEW MEXICO |
| HERB KOHL, WISCONSIN | CHRISTOPHER S. BOND, MISSOURI |
| PATTY MURRAY, WASHINGTON | MITCH McCONNELL, KENTUCKY |
| BYRON L. DORGAN, NORTH DAKOTA | RICHARD C. SHELBY, ALABAMA |
| DIANNE FEINSTEIN, CALIFORNIA | JUDD GREGG, NEW HAMPSHIRE |
| RICHARD J. DURBIN, ILLINOIS | ROBERT F. BENNETT, UTAH |
| TIM JOHNSON, SOUTH DAKOTA | LARRY CRAIG, IDAHO |
| MARY L. LANDRIEU, LOUISIANA | KAY BAILEY HUTCHISON, TEXAS |
| JACK REED, RHODE ISLAND | SAM BROWNBACK, KANSAS |
| FRANK R. LAUTENBERG, NEW JERSEY | WAYNE ALLARD, COLORADO |
| BEN NELSON, NEBRASKA | LAMAR ALEXANDER, TENNESSEE |

TERRENCE E. SAUVAIN, STAFF DIRECTOR
BRUCE EVANS, MINORITY STAFF DIRECTOR

## United States Senate

COMMITTEE ON APPROPRIATIONS
WASHINGTON, DC 20510–6025
http://appropriations.senate.gov

May 2, 2007

Mr. James Duff
Director
Administrative Office of the U.S. Courts
One Columbus Circle, N.E.
Washington, D.C. 20544

Dear Mr. Duff:

This letter is in response to the request for approval for the Judiciary's Fiscal Year 2007 Financial Plan, dated March 14, 2007 in accordance with section 113 of Public Law 110-5. For Fiscal Year 2007, Public Law 110-5 provided just under a five percent increase for the Judiciary over last year's level. With the increased funding provided in Fiscal Year 2007, $20.4 million is provided for critically understaffed workload associated with immigration and other law enforcement needs, especially at the Southwest Border.

We have reviewed the information included and have no objection to the financial plan including the following proposals:

- a cost of living increase for panel attorneys;
- the establishment of a branch office of the Southern District of Mississippi to allow for a federal Defender organization presence in the Northern District of Mississippi;
- a feasibility study for sharing the Judiciary's case management system with the State of Mississippi, and;
- the expanded use of Electronic Public Access Receipts.

Any alteration of the financial plan from that detailed in the March 14, 2007 document would be subject to prior approval of the Senate Committee on Appropriations.

Sincerely,

Richard J. Durbin
Chairman
Subcommittee on Financial Services
and General Government

Sam Brownback
Ranking Member
Subcommittee on Financial Services
and General Government

# EXHIBIT  M

DAVID R. OBEY, WISCONSIN, CHAIRMAN

JOHN P. MURTHA, PENNSYLVANIA
NORMAN D. DICKS, WASHINGTON
ALAN B. MOLLOHAN, WEST VIRGINIA
MARCY KAPTUR, OHIO
PETER J. VISCLOSKY, INDIANA
NITA M. LOWEY, NEW YORK
JOSE E. SERRANO, NEW YORK
ROSA L. DeLAURO, CONNECTICUT
JAMES P. MORAN, VIRGINIA
JOHN W. OLVER, MASSACHUSETTS
ED PASTOR, ARIZONA
DAVID E. PRICE, NORTH CAROLINA
CHET EDWARDS, TEXAS
ROBERT E. "BUD" CRAMER, JR., ALABAMA
PATRICK J. KENNEDY, RHODE ISLAND
MAURICE D. HINCHEY, NEW YORK
LUCILLE ROYBAL-ALLARD, CALIFORNIA
SAM FARR, CALIFORNIA
JESSE L. JACKSON, JR., ILLINOIS
CAROLYN C. KILPATRICK, MICHIGAN
ALLEN BOYD, FLORIDA
CHAKA FATTAH, PENNSYLVANIA
STEVEN R. ROTHMAN, NEW JERSEY
SANFORD D. BISHOP, JR., GEORGIA
MARION BERRY, ARKANSAS
BARBARA LEE, CALIFORNIA
TOM UDALL, NEW MEXICO
ADAM SCHIFF, CALIFORNIA
MICHAEL HONDA, CALIFORNIA
BETTY McCOLLUM, MINNESOTA
STEVE ISRAEL, NEW YORK
TIM RYAN, OHIO
C.A. "DUTCH" RUPPERSBERGER, MARYLAND
BEN CHANDLER, KENTUCKY
DEBBIE WASSERMAN SCHULTZ, FLORIDA
CIRO RODRIGUEZ, TEXAS

JERRY LEWIS, CALIFORNIA
C. W. BILL YOUNG, FLORIDA
RALPH REGULA, OHIO
HAROLD ROGERS, KENTUCKY
FRANK R. WOLF, VIRGINIA
JAMES T. WALSH, NEW YORK
DAVID L. HOBSON, OHIO
JOE KNOLLENBERG, MICHIGAN
JACK KINGSTON, GEORGIA
RODNEY P. FRELINGHUYSEN, NEW JERSEY
ROGER F. WICKER, MISSISSIPPI
TODD TIAHRT, KANSAS
ZACH WAMP, TENNESSEE
TOM LATHAM, IOWA
ROBERT B. ADERHOLT, ALABAMA
JO ANN EMERSON, MISSOURI
KAY GRANGER, TEXAS
JOHN E. PETERSON, PENNSYLVANIA
VIRGIL H. GOODE, JR., VIRGINIA
JOHN T. DOOLITTLE, CALIFORNIA
RAY LAHOOD, ILLINOIS
DAVE WELDON, FLORIDA
MICHAEL K. SIMPSON, IDAHO
JOHN ABNEY CULBERSON, TEXAS
MARK STEVEN KIRK, ILLINOIS
ANDER CRENSHAW, FLORIDA
DENNIS R. REHBERG, MONTANA
JOHN R. CARTER, TEXAS
RODNEY ALEXANDER, LOUISIANA

## Congress of the United States
### House of Representatives
### Committee on Appropriations
### Washington, DC 20515–6015

CLERK AND STAFF DIRECTOR
ROB NABORS

TELEPHONE:
(202) 225-2771

May 2, 2007

Mr. James Duff
Director
Administrative Office of the U.S. Courts
One Columbus Circle NE
Washington, DC 20544

Dear Mr. Duff,

This letter is in response to the request for approval for the Judiciary's fiscal year 2007 Financial Plan, dated March 14th, 2007 in accordance with section 113 of Public Law 110-5.

We have reviewed the information included and have no objection to the financial plan including the following proposals:

- a cost of living increase for panel attorneys;
- the establishment of a branch office of the Southern District of Mississippi in the Northern District of Mississippi;
- a feasibility study for sharing the Judiciary's case management system with the state of Mississippi, and;
- the expanded use of Electronic Public Access Receipts.

May-03-07   03:02pm   From-                                        T-216   P.003/003   F-534

Any alteration of the financial plan that differs from that detailed in the March 14, 2007 document would be subject to prior approval of the house Committee on Appropriations.

Sincerely,

José E. Serrano
Chairman
Subcommittee on Financial Services
and General Government

cc: The Honorable Ralph Regula,
    Ranking Member

**EXHIBIT  N**

# REPORT OF THE PROCEEDINGS
# OF THE JUDICIAL CONFERENCE
# OF THE UNITED STATES

## September 13, 2011

The Judicial Conference of the United States convened in Washington, D.C., on September 13, 2011, pursuant to the call of the Chief Justice of the United States issued under 28 U.S.C. § 331.  The Chief Justice presided, and the following members of the Conference were present:

First Circuit:

> Chief Judge Sandra L. Lynch
> Chief Judge Mark L. Wolf,
> > District of Massachusetts

Second Circuit:

> Chief Judge Dennis Jacobs
> Chief Judge Carol Bagley Amon,
> > Eastern District of New York

Third Circuit:

> Chief Judge Theodore A. McKee
> Judge Harvey Bartle III,
> > Eastern District of Pennsylvania

Fourth Circuit:

> Chief Judge William B. Traxler, Jr.
> Judge James P. Jones,
> > Western District of Virginia

Fifth Circuit:

> Chief Judge Edith Hollan Jones
> Chief Judge Sarah S. Vance,
> > Eastern District of Louisiana

| | | |
|---|---|---|
| 5. Sale of Monthly Listing of Court Orders and Opinions | $19 | $22 |
| 7. Returned Check Fee | $45 | $53 |
| 9. Audio Recording | $26 | $30 |
| 10. Document Filing/Indexing | $39 | $46 |
| 11. Record Retrieval Fee | $45 | $53 |

### Judicial Panel on Multidistrict Litigation Miscellaneous Fee Schedule

| Item | Current Fee | New Fee |
|---|---|---|
| 1. Record Search | $26 | $30 |
| 2. Certification | $9 | $11 |
| 4. Record Retrieval Fee | $45 | $53 |
| 5. Returned Check Fee | $45 | $53 |

Electronic Public Access Fees.  Pursuant to statute and Judicial Conference policy, the electronic public access (EPA) fee is set to be commensurate with the costs of providing existing services and developing enhanced services.  Noting that the current fee has not increased since 2005 and that for the past three fiscal years the EPA program's obligations have exceeded its revenue, the Committee recommended that the EPA fee be increased from $.08 to $.10 per page.  The Committee also recommended that the current waiver of fees of $10 or less in a quarterly billing cycle be changed to $15 or less per quarter so that 75 to 80 percent of all users would still receive fee waivers.  Finally, in recognition of the current fiscal austerity for government agencies, the Committee recommended that the fee increase be suspended for local, state, and federal and government entities for a period of three years.  The Conference adopted the Committee's recommendations.

---

## COURTROOM SHARING

Based on a comprehensive study of district courtroom usage conducted by the FJC at the Committee's request, the Judicial Conference adopted courtroom sharing policies for senior district judges and magistrate judges in new courthouse and/or courtroom construction  (JCUS-SEP 08,