IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL VETERANS LEGAL SERVICES PROGRAM, NATIONAL CONSUMER LAW CENTER, and ALLIANCE FOR JUSTICE, for themselves and all others similarly situated,<br>     *Plaintiffs*,<br><br>  v.<br><br>UNITED STATES OF AMERICA,<br>     *Defendant*. | Case No. 16-745-ESH |

**PLAINTIFFS' REPLY IN SUPPORT OF SUMMARY JUDGMENT
AS TO LIABILITY AND OPPOSITION TO THE GOVERNMENT'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

In 2002, Congress found that, "under existing law, users of PACER [were] charged fees that [were] higher than the marginal cost of disseminating the information." ECF No. 52-16, ¶ 11. By passing the E-Government Act, Congress sought to ensure that records would instead be "freely available to the greatest extent possible." *Id.* To this end, the E-Government Act allows "reasonable" PACER fees "only to the extent necessary." 28 U.S.C. § 1913 note. The liability question in this case turns on the meaning of this statutory language. The most natural reading is that the fees may not exceed the amount necessary "to reimburse expenses incurred in providing the[] services" for which the fees are charged—providing electronic access to court records. *Id.* As we explained in our motion, every relevant tool of statutory interpretation supports this reading: It tracks the plain language. It makes the most sense in light of the law's history. And it avoids two serious constitutional concerns that would be triggered by a broader reading.

The government does not deny that it is liable under this reading because PACER fees are far higher than necessary to recoup the marginal cost of making records available through PACER. And, despite the statutory requirement that PACER fees must be "reasonable," the

1

government does not contest our experts' assessment that the fees are more than 600 times the amount necessary to provide this service. ECF No. 52-15, ¶ 28. It offers no response whatsoever. Yet the government contends that the fees are permissible under the Act.

In support of this contention, the government interprets the key statutory language— "only to the extent necessary"—into nothing. It asserts that this language vests the AO with absolute discretion to charge whatever fees it "deems necessary for providing PACER access and other public access services." Opp. 9. Put another way, the government argues that the language Congress added to *reduce* PACER fees and make records "freely available to the greatest extent possible" actually serves as a delegation of authority to the AO to set PACER fees at whatever level it deems appropriate to generate revenue for other public-access-related projects.

## I. The government's textual argument suffers from five independent flaws.

There are at least five problems with this argument. Before turning to these problems, however, we note that the government's reading of the E-Government Act differs markedly from the position that the AO advanced in its 2009 letter to Senator Lieberman. There, the AO acknowledged that the Act allowed it to "charge user fees for electronic access to court files as a way to pay for this service," but "only to the extent necessary" so that the costs of "providing the PACER service" would be paid "by the users of the information, and not through taxes paid by the general public." ECF No. 52-10, at 1–2. The AO defended the lawfulness of PACER fees by contending that the Act had been "amended" by the "Conference Report on the Judiciary Appropriations Act of 2004" to "expand the permissible use of the fee revenue to pay for other services" beyond PACER. *Id.* at 2. That is wrong for reasons that we'll explain. But what matters for now is that it serves to highlight how truly strained the government's textual argument is.

### *The E-Government Act does not give the AO unbounded discretion to set fees*.

The first problem is that, by reading the phrase "only to the extent necessary" to mean "as the

AO deems it necessary," the government not only rewrites the statutory language but does so in a way that deprives it of any practical effect. The government emphasizes (at 17) that Congress, in passing the E-Government Act, sought to make fees permissive rather than mandatory, removing the word "shall" and replacing it with "may." But "may" is only one of the six words that Congress added to the statute. It also included the words "only to the extent necessary." So even though Congress conferred discretion on the AO as to the decision whether to charge fees *at all*, the question whether the AO is charging fees that are unnecessary or unreasonable is an objective determination for a court. Were it otherwise, the AO would have unbounded discretion to set PACER fees, and Congress's decision to add the limiting phrase "only to the extent necessary" would be meaningless. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty 'to give effect, if possible, to every clause and word of a statute'"—especially "when [it] occupies so pivotal a place in the statutory scheme."). And, as if to concede the point, the government does not offer any limit on its interpretation of the AO's discretion, nor any account of what Congress sought to achieve by adding that phrase.

***PACER fees must be necessary to reimburse PACER costs.*** Even apart from the question of who decides if the fees are necessary, there's the question of what it means to be necessary. The government's answer is that fees are permissible if they are necessary "for providing PACER access and other public access services." Opp. 9. The reason for this, it says, is that the statute "makes no mention of PACER," Opp. 11, but speaks of fees charged "for access to information available through automatic data processing equipment." 28 U.S.C. § 1913 note. That is true as far as it goes. But the AO isn't charging for all information available electronically; it is charging "for providing electronic public access to court records" (mostly through PACER, but also for printed copies "accessed electronically at a public terminal in a courthouse," which carry their own fees). ECF No. 52-2. Because Electronic Public Access fees are charged for these

"services rendered," they must be limited to what is necessary "to reimburse expenses incurred in providing these services." 28 U.S.C. § 1913 note.[1]

Moreover, although the E-Government Act does not refer to PACER by name, Congress clearly had PACER in mind when it passed the Act. The Senate Report indicates that Congress sought to change "existing law," under which "users of PACER [we]re charged fees that [we]re higher than the marginal cost of disseminating the information." ECF No. 52-16, ¶ 11. The government does not offer any explanation for this sentence, except to say that Congress, had it wanted to reduce PACER fees, should have "expressly done so." Opp. 13. This ignores what Congress actually did: amend a statute that had required the judiciary to charge Electronic Public Access fees—which in practice meant primarily PACER fees—to make the fees optional ("may") and cheaper ("only to the extent necessary"). This Court should give effect to Congress's decision—not impose a magic-words requirement to thwart it.

***The constitutional-doubt canon militates against interpreting the Act to allow excessive PACER fees.*** Even if the government's interpretation were plausible, the constitutional-doubt canon of statutory construction would compel its rejection. Indeed, the government's magic-words test gets things exactly backwards. Because only Congress has the constitutional authority to levy taxes, the Supreme Court has held that "Congress must indicate clearly its intention to delegate" its taxing power before another branch of government may raise revenue by imposing user fees that exceed the cost of providing the service "inuring directly to

---

[1] The government mischaracterizes and misunderstands our reliance on this language, claiming that we "place great weight" on the phrase "offsetting collections" (which is also found in statutes authorizing bankruptcy fees and SEC fees). Opp. 13–15. We actually rely on the rest of the sentence—the part about fees being collected "as a charge for services rendered" "to reimburse expenses incurred in providing these services," 28 U.S.C. § 1913 note—and do so to help determine the meaning of the phrase "only to the extent necessary." The statutes authorizing bankruptcy fees and SEC fees, by contrast, do not limit the fees "only to the extent necessary," but instead fix the amounts to be charged. *See* 28 U.S.C. § 1930(a); 15 U.S.C. § 77f(b).

the benefit" of the person who pays that fee. *Skinner v. Mid-Am. Pipeline Co.*, 490 U.S. 212, 224 (1989). Although Congress gave the AO the express authority to "provide PACER access without fees for certain classes of users," as the government notes (at 16), it did not expressly authorize the AO to use the fees to raise revenue for projects other than PACER. To the contrary, Congress recognized that PACER fees were "higher than the marginal cost of disseminating the information," ECF No. 52-16, ¶ 11, and intervened to limit the AO's authority to charge fees "only to the extent necessary."

The government makes no effort to meet the *Skinner* standard. It does not even cite the case. Nor does it cite any of the cases interpreting the general user-fee statute (the IOAA), which the Supreme Court has read "narrowly to avoid constitutional problems." *Nat'l Cable Television Ass'n, Inc. v. United States*, 415 U.S. 336, 342 (1974). The government does not even acknowledge these constitutional problems.

Instead, it argues (at 21–22) that the IOAA does not apply here. But that misses the point. Our point is not that the IOAA governs this case. It's that excessive user fees raise separation-of-powers concerns, so courts insist that Congress be clear when it intends to delegate its constitutional authority. If a statute is ambiguous on this question, or silent, it will be construed to prohibit excessive user fees. The same principle applies here.

It is no answer to say that "Congress routinely sets fee levels in statutes, irrespective of the exact cost of providing the underlying service." Opp. 21. When Congress sets the fee level, *it expressly authorizes the amount of the fee*, so there is no separation-of-powers concern. But when it instead chooses to limit fees only to those that are necessary, and does so in response to a regime in which fees exceed the marginal costs of providing the service for which they are charged, Congress does something else entirely. In that scenario—the scenario presented here—the separation-of-powers concerns posed by excessive fees are glaring.

And this is to say nothing of the additional constitutional concern raised by the government's anything-goes interpretation: the First Amendment. Here, too, the government misapprehends the relevance of the argument. It is not our responsibility to show that the statute actually violates the First Amendment for the First Amendment to play a role in the statutory analysis. As we explained in our motion (at 14–16), interpreting the E-Government Act to allow the AO to profit from providing access to public case files—rather than allowing fees "only to the extent necessary" to "defray administrative expenses"—would raise serious constitutional questions. *Citizens Action Grp. v. Powers*, 723 F.2d 1050, 1056 (2d Cir. 1983); *see also Sullivan v. City of Augusta*, 511 F.3d 16, 38 (1st Cir. 2007); *Fernandes v. Limmer*, 663 F.2d 619, 633 (5th Cir. 1981). That is enough to "militate against" such an interpretation. Antonin Scalia & Bryan Garner, *Reading Law* 247–48 (2012); *see Peretz v. United States*, 501 U.S. 923, 930 (1991).

This does not mean that the First Amendment prohibits the AO from charging fees "as a convenience" for providing electronic access to records. Opp. 24. That is not our argument. Our argument, rather, is that the question whether the First Amendment allows fees to exceed the administrative costs of providing access is substantial enough to trigger the constitutional-doubt canon. Nothing the government says undermines that core point.[2]

***PACER fees exceed the amount necessary even on the government's view.*** Even assuming that the E-Government Act operated as an unambiguous authorization for PACER fees to cover all costs necessary "for providing PACER access and other public access services," as opposed to PACER services alone, Opp. 9, the government would still be liable. Our motion demonstrated that PACER fees are being used to fund projects that go beyond the

---

[2] We are puzzled by the government's assertion that "PACER fees create [no] barrier to access" because people can always spend time and money driving to the nearest federal courthouse and temporarily "view all electronically filed records free of charge." Opp. 23. To restate that argument is to refute it.

provision of "public access services." Upgrading courtroom technology, for example, as worthwhile as it is, does not "enhance public access" to court records, Opp. 1, and should thus be funded through direct appropriations. The same goes for notices to law-enforcement agencies under the Violent Crime Control Act, notices to creditors in bankruptcy proceedings, and online services to jurors. And the government does not contend otherwise. *See* Opp. 19 (making no effort to defend these categories as necessary for "public access services").[3]

***PACER fees are not "reasonable."*** Finally, the government's argument fails to address the additional requirement that fees be "reasonable." 28 U.S.C. § 1913 note. Whatever the reasonableness of PACER fees in 2002, they are not reasonable today. As Senator Lieberman noted in 2010: "[D]espite the technological innovations that should have led to reduced costs in the past eight years," the "cost for these documents has gone up" because the AO has used the fees to fund "initiatives that are unrelated to providing public access via PACER." ECF No. 52-16, ¶ 21. PACER fees have only continued to go up since then, while storage costs have continued to go down. In the 15 years since Congress passed the E-Government Act, the amount of PACER fees collected annually has sharply increased—during a time when the cost per gigabyte of storage fell by 99.9% (from $65.37 to $0.028). ECF No. 52-15, ¶ 16. This mismatch is unreasonable by any measure. We explained in our motion that, based on our experts' calculations, PACER could operate for "0.16% of PACER's reported 2016 fee revenue," and that "[c]harging more than 600 times that amount is unreasonable and excessive under any

---

[3] In a footnote (at 18 n.11), the government acknowledges that the AO has used millions of dollars in PACER fees to buy flat-screen TVs for jurors. It claims that this is permissible because "Congress"—by which it means "the House and Senate Appropriations Committees," Opp. 7—"was notified about this use of PACER funds and did not respond with any objection." Opp. 18 n.11. As we will explain (at 9–10), these Committees cannot authorize a violation of a statute, much less provide a clear delegation of taxing authority. *See TVA v. Hill*, 437 U.S. 153, 189–91 (1978). And making it easier for jurors to see evidence at trial, though important, is not part of the provision of electronic-public-access services.

standard." ECF No. 52, at 20. The government has no response. It offers no explanation for why the fee increase is reasonable, or any interpretation of what it thinks that word means.

## II. The government's additional arguments are meritless.

***The specific account into which PACER fees are deposited is irrelevant.*** Searching outside the text and history of the E-Government Act, the government makes two remaining arguments. The first is that, a decade before the Act was passed, Congress created the judiciary's information-technology fund (JITF) and made its money available to fund various information-technology projects, and then "selected [the fund] as the source for depositing PACER receipts." Opp. 10. The government claims that this decision "informs how Congress intended the fees received from PACER access to be spent"—that is, on any of the "broad range of information technology expenditures approved by Congress" in establishing the JITF. *Id.*

This is an odd argument. The JITF contains "funds appropriated to the judiciary" for "information technology resources." 8 U.S.C. § 612(c)(1). True, in the early 1990s, Congress decided to have Electronic Public Access fees deposited into this account as well. But that decision tells us nothing about whether—*ten years later*—Congress intended to limit PACER fees to the costs of operating PACER. Moreover, the argument makes little sense even on its own terms. The fact that the JITF "is comprised primarily of 'no-year' appropriated funds" indicates that Congress, if anything, did not want PACER fees to be available to fund all technology-related projects. ECF No. 52-10, at 3–4. Indeed, the government's argument is refuted by the AO's own director, who noted in his 2009 letter to Senator Lieberman: "While fee collections from the EPA program are also deposited into the JITF, they are used only to fund electronic public access initiatives and account for only a small portion of its balance." *Id.* Even on his view, in other words, only a fraction of information-technology projects qualify as public-access initiatives, and thus the JITF's existence can have no bearing on the lawfulness of PACER fees.

8

***Snippets in Appropriations Committee reports cannot authorize the AO's statutory violation.*** The government's final argument relies on the AO's interactions with the House and Senate Appropriations Committees, both before and after the E-Government Act's passage. Those from before the Act's passage can obviously be cast aside as irrelevant. As for those that come after, the government points to the fact that—seven years before the class period in this case began—the AO seems to have informed the Committees that it used PACER fees to fund other technology-related services, and the House Committee responded by including language in a report stating, without explanation, that it "expects" the AO to use the fees "to provide for [ECF] system enhancements and operational costs." H. Rep. 108–221, at 116 (2003); *see* ECF No. 52, at 7. This is the same sentence on which the AO relied in 2009, when it claimed that PACER fees were lawful notwithstanding the statutory requirement that the AO only "charge user fees for electronic access to court files as a way to pay for this service," because the Appropriations Committee had "amended" the statute "to expand the permissible use of the fee revenue to pay for other services" beyond PACER. ECF No. 52-10, at 2.

This argument cannot rescue the government from liability for several reasons. *First*, "[e]xpressions of committees dealing with requests for appropriations cannot be equated with statutes enacted by Congress." *TVA v. Hill*, 437 U.S. 153, 191 (1978). As the Supreme Court has made clear, "substantive legislation [cannot be] undone by the simple—and brief—insertion of some inconsistent language in Appropriations Committees' Report." *Id. Second*, even setting aside the E-Government Act, a sentence in a report stating that a committee "expects" the AO to use PACER fees to fund ECF is nowhere close to a sufficiently clear indication of Congress's intent to delegate taxing authority to another branch of government. *Skinner*, 490 U.S. at 224. *Third*, the report predates the class period by seven years, and so cannot authorize the fees at issue here. *Fourth*, the report speaks only to using PACER fees to fund ECF—not to fund the many other the

Case 1:16-cv-00745-ESH Document 75 Filed 12/05/17 Page 10 of 11

technology-related services for which the AO has used the fees. *See* ECF No. 52, at 17–20. The only authority the AO can point to that even arguably authorizes charging more in PACER fees to cover these costs is a 2007 letter signed by two members of the Senate Appropriations Committee saying they have "no objection" to "the expanded use of Electronic Public Access Receipts" in fiscal year 2007—three years before the class period. *See* ECF No. 73-2, Ex. L. That is not enough. Particularly in light of the clear-statement rule adopted by the Supreme Court to ensure that fees do not become taxes, these statements from two Senators cannot rewrite the law enacted by the full Congress, and therefore cannot authorize the PACER fees at issue in this case. *See Hill*, 437 U.S. at 189–93.

## CONCLUSION

This Court should grant the plaintiffs' motion for summary judgment as to liability and deny the government's cross-motion for summary judgment.

Respectfully submitted,

*/s/ Deepak Gupta*

Deepak Gupta
Jonathan E. Taylor
GUPTA WESSLER PLLC
1900 L Street, NW, Suite 312
Washington, DC 20036
(202) 888-1741
*deepak@guptawessler.com*

William H. Narwold
Meghan S.B. Oliver
Elizabeth Smith
MOTLEY RICE LLC
401 9th St. NW, Suite 1001
Washington, DC 20004
(202) 232-5504

December 5, 2017

*Counsel for Plaintiffs National Veterans Legal Services Program, National Consumer Law Center, Alliance for Justice, and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 5, 2017, I electronically filed this reply through this Court's CM/ECF system. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Deepak Gupta*
Deepak Gupta
