**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NATIONAL VETERANS LEGAL
SERVICES PROGRAM, NATIONAL
CONSUMER LAW CENTER, and ALLIANCE
FOR JUSTICE, for themselves and all others
similarly situated,
     *Plaintiffs*,

v.

UNITED STATES OF AMERICA,
     *Defendant*.

Case No. 16-cv-745-ESH

**PLAINTIFFS' RESPONSE TO THE GOVERNMENT'S STATEMENT OF
MATERIAL FACTS AS TO WHICH THERE EXISTS A GENUINE DISPUTE**

  Under Local Rule 7(c), the plaintiffs submit this response to government's statement of material facts as to which there is no genuine dispute and response to plaintiffs' statement of undisputed material facts (ECF No. 74-3). The plaintiffs believe that there is no genuine issue as to any material fact, and submit this opposition only to clarify or provide additional context for certain facts asserted by the government. None of these clarifications precludes granting summary judgment in the plaintiffs' favor.

  1. PACER fees find their origin in a 1988 decision of the Judicial Conference to authorize "an experimental program of electronic access for the public to court information in one or more district, bankruptcy, or appellate courts[.]" Rep. of Proceedings of the Judicial Conference of the United States at 83 (Sept. 18, 1988).

  RESPONSE: Plaintiffs do not dispute the accuracy of the quoted language, but clarify that the fees were authorized for the pendency of the experimental program and that any such fees were to be deposited into the United States Treasury. In order to provide context for the government's excerpt, the plaintiffs provide the entire passage:

> On recommendation of the Committee, the Judicial Conference authorized an experimental program of electronic access for the public to court information in one or more district, bankruptcy, or appellate courts in which the experiment can be conducted at nominal cost, and delegated to the Committee the authority to establish access fees during the pendency of the program. Although existing law requires that fees collected in the experimental phase would have to be deposited into the United States Treasury, the fees charged for automated access services could defray a significant portion of the cost of providing such services, were the Congress to credit these fees to the judiciary's appropriations account in the future.

*Id.*

2. The Judicial Conference authorized the Committee on Judicial Improvement "to establish access fees during the pendency of the program." *Id.*

RESPONSE: Plaintiffs do not dispute the accuracy of the quoted language, but clarify that any fees collected during the pendency of the experimental program were to be deposited into the United States Treasury. In order to provide context for the government's excerpt, the plaintiffs provide the entire passage in their response to paragraph 1 of the government's statement of material facts (ECF No. 74-3).

3. In 1989, the Judicial Conference voted to recommend that Congress credit to the judiciary's appropriations account any fees generated by providing electronic public access to court records. *See* Rep. of Proceedings of the Judicial Conference of the United States at 19 (Mar. 14, 1989).

RESPONSE: Plaintiffs do not dispute that the Conference voted to recommend that Congress credit to the judiciary's appropriations account any fees collected during the pendency of the "experimental program of electronic access to court information in one or more district, bankruptcy, or appellate courts." The complete passage cited by the government is as follows:

> At its September 1988 session (Conf. Rpt., p. 83), the Judicial Conference authorized an experimental program of electronic access by the public to court information in one or more district, bankruptcy, or appellate courts, and delegated to the Committee on Judicial Improvements the authority to establish access fees during the pendency of the program. Under existing law, fees charged for such services would have to be deposited into the United States Treasury.

> Observing that such fees could provide significant levels of new revenues at a time when the judiciary faces severe funding shortages, the Conference voted to recommend that Congress credit to the judiciary's appropriations account any fees generated by providing public access to court records.

*Id.* at 19–20.

4. In the Judiciary Appropriations Act of 1990, Congress established the judiciary's right to retain revenues from fees generated through the provision of court records to the public. *See* Pub. L. No. 101-162, § 406(b).

RESPONSE: Plaintiffs dispute this statement to the extent that it is a legal interpretation and clarify that Section 406(b) of the Judiciary Appropriations Act of 1990 only authorized the Judiciary to retain certain bankruptcy court fees until expended. Section 406(b), in its entirety, reads as follows:

> All fees as shall be hereafter collected for any service enumerated after item 18 of the bankruptcy miscellaneous fee schedule prescribed by the Judicial Conference of the United States pursuant to 28 U.S.C. section 1930(b) and 25 percent of the fees hereafter collected under 28 U.S.C. section 1930(a)(1) shall be deposited as offsetting receipts to the fund established under 28 U.S.C. section 1931 and shall remain available to the Judiciary until expended to reimburse any appropriation for the amount paid out of such appropriation for expenses of the Courts of Appeals, District Courts, and other Judicial Services and the Administrative Office of the United States Courts. The Judicial Conference shall report to the Committees on Appropriations of the House of Representatives and the Senate on a quarterly basis beginning on the first day of each fiscal year regarding the sums deposited in said fund.

*Id.*

5. In 1990, the Judicial Conference approved an initial rate schedule for electronic public access to court data via the PACER system. *See* Rep. of Proceedings of the Judicial Conference of the United States at 21 (Mar. 13, 1990).

RESPONSE: Plaintiffs agree with the accuracy of this statement, but add for context that the Report also specifies that "the judiciary will be entitled to retain the fees collected for PACER services in the bankruptcy courts." At that time, the judiciary did not have the authority to retain fees collected for PACER services in any other court. *Id.*

6. In the Judicial Appropriations Act of 1991, Congress instituted a requirement that the Judicial Conference set a schedule of "reasonable fees … for access to information available through automatic data processing equipment." Pub. L. No. 101-515, § 404.

RESPONSE: Plaintiffs do not dispute the accuracy of this statement. For context, the entire section excerpted by the government is as follows:

> The Judicial Conference shall prescribe reasonable fees, pursuant to sections 1913, 1914, 1926, and 1930 of title 28, United States Code, for collection by the courts under those sections for access to information available through automatic data processing equipment. These fees may distinguish between classes of persons, and shall provide for exempting persons or classes of persons from the fees, in order to avoid unreasonable burdens and to promote public access to such information. The Director, under the direction of the Judicial Conference of the United States, shall prescribe a schedule of reasonable fees for electronic access to information which the Director is required to maintain and make available to the public.

*Id.*

7. Through the Judicial Appropriations Act of 1991, Congress determined that PACER users, rather than taxpayers generally, should fund public access initiatives. Congress further required that the Judicial Conference submit each such fee schedule to Congress at least thirty days before its effective date. *See* Pub. L. No. 101-515, § 404.

RESPONSE: Plaintiffs dispute this statement to the extent that it is a legal interpretation and note that there is no provision in the Judicial Appropriations Act of 1991 indicating that "Congress determined that PACER users, rather than taxpayers generally, should fund public access initiatives."

8. Congress directed that all such fees collected for services rendered be deposited into the Judiciary Automation Fund ("JAF")[1] to reimburse expenses incurred in providing such services to the public. Pub. L. No. 101-515, § 404.

RESPONSE: Plaintiffs do not dispute the accuracy of this statement.

---

[1] The Judiciary Automation Fund was renamed the Judiciary Information Technology Fund. *See* 28 U.S.C. § 612.

9. In the Judicial Appropriations Act of 1992, Congress expressly required that the Judicial Conference "shall hereafter prescribe reasonable fees, pursuant to sections 1913, 1914, 1926, and 1930 of title 28, United States Code, for collection by the courts under those sections for access to information available through automatic data processing equipment." Pub. L. No. 102-140.

RESPONSE: Plaintiffs do not dispute the accuracy of the quoted language, but clarify that fees were not required for all access. Pub. L. No. 102-140, § 303(a) ("These fees may distinguish between classes of persons, and shall provide for exempting persons or classes of persons from the fees, in order to avoid unreasonable burdens and to promote public access to such information.").

10. Congress also allowed that fees need not be collected for all access; rather the "fees may distinguish between classes of persons, and shall provide for exempting persons or classes of persons from the fees, in order to avoid unreasonable burdens and to promote public access to such information. *Id.*

RESPONSE: Plaintiffs do not dispute the accuracy of this statement.

11. The House Appropriations Committee report for the Judicial Appropriations Act of 1993 expressly stated that charging fees for public access was "desirable." H. Rep. No. 102-709.

RESPONSE: Plaintiffs dispute the government's characterization of the committee report because the report expressly specified that fees for access to court records by *non-Judiciary, governmental agencies* were "desirable." H. Rep. No. 102-709 ("The Committee understands that approximately a third of current access to court records is by non-Judiciary, governmental agencies and believes that fees for access in these instances is desirable.").

12. The Judicial Conference later expanded the fee schedule to cover access to public records in appellate courts and the Court of Federal Claims. *See* Rep. of Proceedings of the

Judicial Conference of the United States at 44–45 (Sept. 20, 1993); Rep. of Proceedings of the Judicial Conference of the United States at 16 (Mar. 15, 1994).

> RESPONSE: Plaintiffs do not dispute the accuracy of this statement.

13. Congress also required that the public access fee schedule be expanded to cover multidistrict litigation. *See* Pub. L. No. 104-317, § 403.

> RESPONSE: Plaintiffs do not dispute the accuracy of this statement.

14. In 1996, the Judicial Conference also approved a reduction in the fee for electronic public access for dial-up Internet connections. *See* Rep. of Proceedings of the Judicial Conference of the United States at 16 (Mar. 13, 1996).

> RESPONSE: Plaintiffs do not dispute the accuracy of this statement but clarify that the fee had already been reduced in March 1995 from $1.00 per minute to $0.75 per minute "to avoid an ongoing surplus." Rep. of Proceedings of the Judicial Conference of the United States at 16 (Mar. 13, 1996).

15. Congress repeatedly expressed its intention that the Judicial Conference use the fees generated from electronic public access services to improve and update various public access platforms. For instance, the Senate Committee on Appropriations Report for the Judicial Appropriations Act of 1997 stated:

> The Committee supports the ongoing efforts of the Judiciary to improve and expand information made available in electronic form to the public. Accordingly, the Committee expects the Judiciary to utilize available balances derived from [EPA] fees in the Judiciary Automation Fund to make information and services more accessible to the public through improvements to enhance the availability of electronic information. The overall quality of service to the public will be improved with the availability of enhancements such as electronic case documents, electronic filings, enhanced use of the Internet, and electronic bankruptcy noticing.

S. Rep. No. 104-676 at 89.

> RESPONSE: Plaintiffs dispute the government's characterization that Congress "repeatedly expressed its intention that the Judicial Conference use the fees generated from

electronic public access services to improve and update various public access platforms." In addition, the quotation was incorrectly attributed to a Senate committee report. It was actually a statement from the House Committee on Appropriations. *See* H. Rep. No. 104-676 at 89 (Jul. 16, 1996).

16. In 1998, the Judicial Conference determined that with the introduction of Internet technology to the judiciary's current public access program, it would include a per-page fee for access, while introducing new technologies to expand public accessibility to information via PACER. Specifically, the Judicial Conference established a fee of $0.07 per page for access to certain court records on PACER. *See* Rep. of Proceedings of the Judicial Conference of the United States at 64–65 (Sept. 15, 1998).

RESPONSE: Plaintiffs do not dispute that in 1998 the Judicial Conference amended its fee schedule to include a $0.07 per page fee to obtain PACER information through a federal judiciary Internet site, and that "the Committee on Court Administration and Case Management recommended that a new Internet PACER fee be established to maintain the current public access revenue while introducing new technologies to expand public accessibility to PACER information."

17. In 2001, the Judicial Conference provided that attorneys of record and parties in a case would receive one copy of all filed documents without charge and also that no fee will be owed until an individual account holder accrues more than $10 in a calendar year. *See* Rep. of Proceedings of the Judicial Conference of the United States at 12–13 (Mar. 14, 2001)

RESPONSE: Plaintiffs do not dispute the accuracy of this statement.

18. In 2002, the Judicial Conference established a fee cap for accessing any single document, where there will be no charge after the first thirty pages of a document. *See* Rep. of Proceedings of the Judicial Conference of the United States at 11 (Mar. 13, 2002).

RESPONSE: Plaintiffs do not dispute the accuracy of this statement but for context add that this fee cap was recommended to "[b]alance[e] user concerns with the need to generate sufficient revenue to fund the program." *Id.*

19. In 2002, Congress passed the E-Government Act of 2002. *See* Pub. L. No. 107-347.

RESPONSE: Plaintiffs do not dispute the accuracy of this statement.

20. The E-Government Act amended existing law to remove the requirement that the Judicial Conference "shall hereafter prescribe fees" for public access to, instead, provide that the Judicial Conference "may, only to the extent necessary, prescribe reasonable fees." Pub. L. No. 107-347.

RESPONSE: Plaintiffs do not dispute the accuracy of this statement but clarify that the E-Government Act included more provisions than the change in language from "shall hereafter prescribe reasonable fees" to "may, only to the extent necessary, prescribe reasonable fees."

21. The E-Government Act also included several directives, including that all federal courts have websites with certain general court information (e.g., courthouse location, contact information, local rules, general orders, docket information), that all court opinions issued after April 16, 2005, be available in text-searchable format, and that an annual report be provided to Congress identifying any court requesting a deferral from these requirements. *See* Pub. L. No. 107-347, § 205.

RESPONSE: Plaintiffs do not dispute the accuracy of this statement but clarify that the E-Government Act included more provisions than the listed "directives."

22. The E-Government Act did not include any provisions regarding sources of funding for providing this information other than the "reasonable fees prescribed by the Judicial Conference for electronic access to information stored in automated data processing equipment." Pub. L. No. 102-140, § 303(a); Pub. L. No. 10[7]-347, § 205.

RESPONSE: Plaintiffs do not dispute that the E-Government Act did not provide for funding for electronic access, but note that it limited the judiciary's authority to charge "reasonable fees" "only to the extent necessary" to provide access to information available through automatic data processing equipment. Further, neither the Judiciary Appropriations Act of 1992 nor the E-Government Act includes the language quoted by the United States.

23.  In 2003, the House Appropriations Committee stated that it "expect[ed] the fee for the Electronic Public Access program to provide for Case Management Electronic Case File ("CM/ECF") system enhancement and operational costs." H. Rep. No. 108-221 at 116; *see also* H. Rep. No. 108-401 ("the conferees adopt the House report language concerning Electronic Public Access fees.").

RESPONSE: Plaintiff generally does not dispute the accuracy of this statement but provides the following corrected language from House Report No. 108-401: "The conferees adopt by reference the House report language concerning Electronic Public Access fees."

24.  Similarly, the Senate Appropriations Committee stated that it was "impressed and encouraged" by the "new and innovative" CM/ECF system and that it expected a report on "the savings generated by this program at the earliest date possible." S. Rep. No. 108-144 at 118.

RESPONSE:  Plaintiffs do not dispute the accuracy of this statement but provide for context the entire passage excerpted by the government:

> The Committee fully supports the Judiciary's budget request for the Judiciary Information Technology Fund [JITF].  The Committee would like to see an even greater emphasis on automation in the local courts.  To this end, the Committee expects the fully recommended appropriation for the JITF, as reflected in the budget request, be deposited into this account.  The Committee lauds the Judicial Committee on Information Technology (IT Committee) and their Chairman for their successes helping the Courts run more efficiently through the use of new automation.  Of particular note, the Committee is impressed and encouraged by the new Case Management/Electronic Case File system [CM/ECF].  This new and innovative system allows judges, their staffs, the bar and the general public to work within the judicial system with greater efficiency.  This new system is currently implemented in many bankruptcy and district courts and will soon begin implementation in the appellate courts.  The CM/ECF system is already showing

its potential to revolutionize the management and handling of case files and within the next few years should show significant cost savings throughout the Judiciary. The Committee on Appropriations expect a report on the savings generated by this program at the earliest possible date.

25. In order to provide sufficient revenue to support the CM/ECF operational and maintenance costs that Congress expected, the Judicial Conference issued a new rate schedule, charging $0.08 per page. *See* Rep. of Proceedings of the Judicial Conference of the United States at 12 (Sept. 21, 2004).

RESPONSE: Plaintiffs do not dispute that the Judicial Conference amended the Electronic Public Access Fee Schedule "to increase the fee for public users obtaining information through a federal judiciary Internet site from seven to eight cents per page" but dispute the remainder of the statement. The House Appropriations Committee, not Congress, stated in its July 2003 report that it "expect[ed] the fee for the Electronic Public Access program to provide for Case Management/Electronic Case Files system enhancements and operational costs."

26. The Senate Committee on Appropriations Report for the Judicial Appropriations Act of 1999 provides that the Committee "supports efforts of the judiciary to make information available to the public electronically, and expects that available balances from public access fees in the judiciary automation fund will be used to enhance the availability of public access." S. Rep. No. 105-235, at 114.

RESPONSE: Plaintiffs do not dispute the accuracy of this statement.

27. In 2007, the Administrative Office of the U.S. Courts ("AO") submitted the Judiciary's Fiscal Year ("FY") 2007 Financial Plan to both the House and Senate Appropriations Committees that, among other things, provided for "expanded use of the Electronic Public Access ('EPA') revenues." Judiciary FY07 Financial Plans (Mar. 14, 2007).

RESPONSE: Plaintiffs dispute this characterization of the Judiciary's Fiscal Year 2007 Financial Plan. The plan states, "Via this financial plan submission, the Judiciary seeks authority

to expand the use of Electronic Public Access (EPA) receipts to support courtroom technology allotments for installation, cyclical replacement of equipment, and infrastructure maintenance." *Id.*

28.     On May 2, 2007, the Appropriations Committees sent letters to the AO, stating that the Committees had "reviewed the information included and ha[d] no objection to the financial plan including the following proposal[ ]: … the expanded use of [EPA] Receipts."  Ltr. from Sens. Durbin and Brownback (May 2, 2007); Ltr. from Rep. Serrano (May 2, 2007).

RESPONSE: Plaintiffs do not dispute the accuracy of this statement.

29.     The AO submitted its FY 2007 Financial Plan to both Appropriations Committees, outlining various courtroom technology installations and maintenance that would be funded through EPA revenues.  Declaration of Wendell A. Skidgel Jr. ("Skidgel Decl."), Ex. K at 43. These expenditures were approved through the Financial Services and General Government Appropriations Act of 2008.  Pub. L. No. 110–161.

RESPONSE: Plaintiffs dispute the government's characterization of its FY 2007 Financial Plan, but do not dispute that the AO's FY 2007 Financial Plan included the following language: "The fiscal year 2007 financial plan for courtroom technologies includes $7.0 million for court allotments to be funded EPA receipts to provide cyclical replacement of equipment and infrastructure maintenance." The Plan also sought "authority to expand the use of Electronic Public Access (EPA) receipts to support courtroom technology allotments for installation, cyclical replacement of equipment, and infrastructure maintenance."

30.     In 2011, the Judicial Conference amended the PACER fee schedule, raising the per-page cost to $0.10. *See* Rep. of Proceedings of the Judicial Conference of the United States at 16 (Sept. 13, 2011).

RESPONSE: Plaintiffs do not dispute the accuracy of this statement.

31. The Judicial Conference noted, in raising the PACER fee schedule to $0.10 per page, the existing statutory and policy requirements of charging fees commensurate with the cost of providing existing services and developing enhanced services. *See id.*

RESPONSE: Plaintiffs do not dispute the accuracy of the statement, but add that the complete statement was: "Pursuant to statute and Judicial Conference policy, the electronic public access (EPA) fee is set to be commensurate with the costs of providing existing services and developing enhanced services." Rep. of Proceedings of the Judicial Conference of the United States at 16 (Sept. 13, 2011).

32. The Judicial Conference also recognized that it had not increased PACER access fees since 2005 and also that its EPA obligations during the past three fiscal years had exceeded revenue. *See id.*

RESPONSE: Plaintiffs do not dispute the accuracy of the statement, but clarify that PACER is not specifically mentioned in the report, and that the "EPA program's obligations" had exceeded its revenue. The Report does not define "EPA program." *Id.*

        Respectfully submitted,

        */s/ Deepak Gupta*
        DEEPAK GUPTA
        JONATHAN E. TAYLOR
        GUPTA WESSLER PLLC
        1900 L Street NW, Suite 312
        Washington, DC 20036
        Phone: (202) 888-1741
        *deepak@guptawessler.com*

        WILLIAM H. NARWOLD
        MEGHAN S.B. OLIVER
        ELIZABETH SMITH
        MOTLEY RICE LLC
        401 9th St. NW, Suite 1001
        Washington, DC 20004
        Phone: (202) 232-5504
        *bnarwold@motleyrice.com*

December 5, 2017        *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2017, I filed the foregoing statement through this Court's CM/ECF system, and that all parties required to be served have been thereby served.

*/s/ Deepak Gupta*
Deepak Gupta