# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL VETERANS LEGAL SERVICES PROGRAM, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES OF AMERICA <br><br> *Defendant*. | Civil Action No. 16-745 (ESH) |

## DEFENDANT'S REPLY IN SUPPORT OF
## <u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>

JESSIE K. LIU
D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN
D.C. BAR # 924092
Chief, Civil Division

W. MARK NEBEKER (D.C. Bar #396739)
BRIAN J. FIELD (D.C. Bar #985577)
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2536
mark.nebeker@usdoj.gov

# TABLE OF CONTENTS

ARGUMENT ............................................................................................................................. 1

    I.   PLAINTIFFS ASK THIS COURT TO AMEND THE
        E-GOVERNMENT ACT ......................................................................................... 1

    II.  PLAINTIFFS' MISCELLANEOUS ARGUMENTS PROVIDE
        THEM NO SUPPORT ............................................................................................ 9

CONCLUSION ....................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Am. Broad. Cos., Inc. v. Aereo, Inc.*,
   134 S. Ct. 2498 (2014) ...................................................................................................... 10

*Griffin v. Oceanic Contractors, Inc.*,
   458 U.S. 563 (1982) ............................................................................................................ 7

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   568 U.S. 519 (2013) .......................................................................................................... 10

*Lawson v. FMR LLC*,
   134 S. Ct. 1158 (2014) ...................................................................................................... 10

*Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*,
   351 F.3d 1229 (D.C. Cir. 2003) ........................................................................................ 11

*Skinner v. Mid-Am. Pipeline Co.*,
   490 U.S. 212 (1989) ............................................................................................................ 6

*Whitman v. Amerian Trucking Assns., Inc.*,
   531 U.S. 457 (2001) ............................................................................................................ 5

**Statutes**

28 U.S.C. § 1913 note .................................................................................................... 2, 4, 9, 10

28 U.S.C. § 612 ..................................................................................................................... 9, 10

Pub. L. No. 107-347 ..................................................................................................................... 2

In their Opposition, Plaintiffs persist in their misunderstanding of the E-Government Act and Congress' authorization for Defendant to charge fees for its Public Access to Court Electronic Records ("PACER") system in order to support its public access services. In fact, nearly all of Plaintiffs' arguments are rooted in the same fundamental flaw—the mistaken belief that Congress limited the fees Defendant may charge for PACER access to the cost of operating PACER. As this reading finds no support in the statutory text or its legislative history, this Court should grant summary judgment for Defendant.

**ARGUMENT**

**I.      PLAINTIFFS ASK THIS COURT TO AMEND THE E-GOVERNMENT ACT**

In their Opposition, Plaintiffs repeatedly contend that Defendant has read a portion of the E-Government Act—"'only to the extent necessary'—into nothing." Pls.' Opp. to Def.'s Cross-Mot. for Summ. J. at 2 (ECF No. 75) (hereinafter, "Pls.' Opp."). But Plaintiffs have it exactly backward. While Defendant has demonstrated its fealty to the statutory text, Plaintiffs ask this Court to add language to the E-Government Act that Congress never included. This fatal flaw undergirds each of the five textual arguments Plaintiffs include in their Opposition.

Before wading through the maladies of Plaintiffs' arguments, it is helpful to again put the E-Government Act in its proper context. Notwithstanding Plaintiffs' narrow focus on the E-Government Act of 2002, PACER fees originated nearly fifteen years earlier with a 1988 decision of the Judicial Conference to authorize an experimental program for providing public access to court information. *See* Memo. in Supp. of Def.'s Cross-Mot. for Summ. J. at 2 (ECF No. 73-1) (hereinafter, "Def.'s Mot."). Over a period of years, this program expanded and Congress authorized Defendant to charge access fees. *See id.* at 3. For instance, Congress approved the Defendant's plan to expand public access to cover appellate court records and also records from

the Court of Federal Claims. *See id.* at 4. And, Congress directed that PACER fees be expanded to cover multidistrict litigation records. *See id.* In 1997, the Senate Committee on Appropriations informed Defendant that it supported Defendant's "ongoing efforts … to improve and expand information made available in electronic form to the public." *Id.* Moreover, this Committee stated that it "expect[ed]" Defendant "to utilize available balances derived from electronic public access fees in the Judiciary Automation Fund to make information and services more accessible to the public through improvements to enhance the availability of electronic information." *Id.*

Against this backdrop, Congress passed the E-Government Act in 2002, which removed the *requirement* that Defendant charge fees for public access to, instead, authorize Defendant to charge reasonable fees as it deems necessary. *See id.* at 5. Specifically, the E-Government Act stated that Defendant "may, only to the extent necessary, prescribe reasonable fees, … for collection by the courts under those sections for access to information available through automatic data processing equipment." Pub. L. No. 107-347, § 205(e); 28 U.S.C. § 1913 note. The Act went on, authorizing Defendant to "distinguish between classes of persons" when charging fees and to exempt certain persons from fees entirely. Def.'s Mot. at 5. Further, the relevant fee schedule was to "prescribe … fees for electronic access to information[.]" *Id.* Notably, during this time (and before the E-Government Act), the Judicial Conference set public access fees at the level necessary to fund the costs of providing and enhancing public access services. *See* Pls.' Mot. for Summ. J. Ex. I at 3 (ECF No. 52-10) (hereinafter, "Pls.' Mot.") ("The Judiciary takes its responsibility to establish the [Electronic Public Access ('EPA')] fee very seriously. Since well before the E-Government Act, it has been the Judicial Conference's policy to set the electronic public access fee to be commensurate with the costs of providing and enhancing services related to public access.").

Each year, both before and after the E-Government Act became law, Defendant submitted annual Financial Plans to the House and Senate Appropriations Committees, which, *inter alia*, detail Defendant's planned uses for "[EPA] revenues." Def.'s Mot. at 7. And, in response, the Committees routinely expressed their agreement with these plans. For instance, the Senate Appropriations Committee leadership sent a letter to the Administrative Office of the United States Courts ("AO"), stating that the Committee had "reviewed the information included and ha[d] no objection to the financial plan including the following proposal[ ]: … the expanded use of [EPA] Receipts." *Id.*

Notwithstanding the clear direction that Defendant could charge fees to support general "electronic access to information" and "access to information available through automatic data processing equipment," *id.*, Plaintiffs levy five arguments against Defendant's interpretation of the E-Government Act. As discussed below, these are just the same argument recast five times, each failing for the same reason: this Court cannot add language to the E-Government Act that Congress did not include.[1]

---

[1] Similarly, Plaintiffs' suggestion that Defendant's interpretation "differs markedly from the position that the AO advanced in its 2009 letter to Senator Lieberman" is misplaced. *See* Pls.' Opp. at 2. Specifically, Plaintiffs misrepresent the 2009 letter, suggesting that in it, the AO stated that it interpreted the E-Government Act to authorize user fees only to pay for PACER. *See id.* Instead, the AO simply stated in this letter that "Congress mandated 18 years ago [*before the E-Government Act was passed*] that the Judiciary charge user fees for electronic access to court files as a way to pay for this service." Pls.' Mot. Ex. I at 2 (ECF No. 52-10). Moreover, the Defendant's Cross-Motion is in perfect harmony with this letter, as Defendant has always maintained that Congress authorized it to use PACER fees for more than simply the cost of operating PACER. *See* Def.'s Mot. at 8–16. Indeed, the 2009 letter itself stated that "various legislative directives have amended the mandate, mostly to *expand* the permissible use of the fee revenue to pay for *other services* related to the electronic dissemination of court information such as the Case Management/Electronic Case Files (CM/ECF) system and an Electronic Bankruptcy Noticing (EBN) system." Pls.' Mot. Ex. I at 2 (emphasis added).

1.  Plaintiffs begin by errantly stating that Defendant seeks to have "unbounded discretion to set fees." Pls.' Opp. at 2. This is rooted in Plaintiffs' belief that Defendant reads the E-Government Act's "only to the extent necessary" language to "deprive[ ] it of any practical effect" because, in Plaintiffs' estimation, this should be read to say "only to the extent necessary *to pay for PACER*." *Id.* at 3 (emphasis added). And, any other reading, according to Plaintiffs, strips "only to the extent necessary" of meaning and gives Defendant "unbounded discretion." *Id.* at 2. But as Defendant has already noted, the relevant statutory text includes no such qualifiers and, instead, authorizes Defendant to charge fees for "access to information available through automatic data processing equipment" and, more generally, "for electronic access to information." Def.'s Mot. at 11; *see also* 28 U.S.C. § 1913 note. More importantly, though, Defendant has never sought "unbounded discretion to set fees." *See generally* Def.'s Mot. Rather, Defendant has argued that it may charge reasonable fees for PACER access to allow Defendant to provide "electronic access" to the public. *See* Def.'s Mot. at 8–20. Plaintiffs do not establish that the fees are unreasonable when viewed in this light—only that the Court should instead adopt their narrow reading. Yet, Defendant's interpretation aligns with the exact requirements that Congress included in the E-Government Act and Congress did not add any of the additional limitations that Plaintiffs propose here.

2.  Next, Plaintiffs recast this same argument by contending that the E-Government Act requires that "PACER fees must be necessary to reimburse PACER costs." Pls.' Opp. at 3. But this suffers from the same flaw as the argument discussed above—it reads the E-Government Act to include limitations Congress did not include. Indeed, Plaintiffs themselves concede that Congress only tethered the authorization to charge fees to the provision of information "through automatic data processing equipment." Pls.' Opp. at 3; *see also* 28 U.S.C. § 1913 note (authorizing

"reasonable fees" to be charged "for electronic access"). Curiously, notwithstanding this acknowledgment, Plaintiffs still argue that Congress *meant* to include a limitation that the fees charge be limited to the "extent necessary *to pay for PACER*."

As Plaintiffs acknowledge, this reading, were it correct, amounts to a change in the way that Defendant was authorized to charge PACER fees. *See* Pls.' Opp. at 4 (contending that the E-Government Act sought to change the authorization to charge fees because they were exceeding "the marginal cost of disseminating the information."). Of course, courts are not to assume that Congress initiated such changes without stating so expressly in the statute. *Whitman v. Amerian Trucking Assns., Inc.*, 531 U.S. 457, 468 (2001) ("Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes").

Moreover, Plaintiffs again rely on the simple fact that a Senate Committee Report discussing the E-Government Act stated that "[p]ursuant to existing law, users of PACER are charged fees that are higher than the marginal cost of disseminating the information." Pls.' Opp. at 4; *see also* Taylor Decl. Ex. D at 23. From this undisputed fact, Plaintiffs attempt to read the E-Government Act as though it was intended to prevent PACER fees from being "higher than the marginal cost" of operating PACER. Pls.' Opp. at 4. But that is not what the Committee Report states. Rather, the Report's only explanation of the relevant statutory language is that it was "intend[ed] to encourage the Judicial Conference to move from a fee structure in which electronic docketing systems are supported primarily by user fees to a fee structure in which this information is freely available to the greatest extent possible." Taylor Decl. Ex. D at 23. The Court should reject Plaintiffs' invitation to engage in the mental gymnastics necessary that would be required to get from this statement to the conclusion that the E-Government Act *meant* to limit PACER fees

to the cost of operating PACER. In fact, the Report goes on to discuss PACER as *just one* such mechanism by which the AO provides electronic public access. *See id.* Far from supporting Plaintiffs' reading of the E-Government Act, this Committee Report only underscores the fact that the E-Government Act was focused on increasing free access (something that can only be accomplished by recouping the costs of free access through the fees charged to paying consumers)[2] and that the Report's authors considered PACER to be just one method by which the AO disseminates electronic information publicly.

3. Next, Plaintiffs attempt to recast the same argument under the constitutional-doubt canon of statutory construction. *See* Pls.' Opp. at 4–6. But here again, Plaintiffs simply contend that the E-Government Act authorizes Defendant to charge PACER fees only to the extent necessary to fund PACER. Although they recharacterize their argument under new terms, it fails for the same simple reason—Congress did not include the requirement that they ask the Court to read into the statute. Here, Plaintiffs focus on Congress' taxing power and the Supreme Court's admonition that "Congress must indicate clearly its intention to delegate its taxing power before another branch of government may raise revenue by imposing user fees *that exceed the cost of providing the service*[.]" Pls.' Opp. at 4–5 (quotation marks omitted; emphasis added). For this statement, Plaintiffs point to the Supreme Court's decision in *Skinner v. Mid-Am. Pipeline Co.*, 490 U.S. 212, 224 (1989), and suggest that Defendant has somehow failed to address this case. *See* Pls.' Opp. at 5. Defendant did not cite *Skinner* in its Cross-Motion because it is irrelevant. Contrary to Plaintiffs' characterization, PACER fees are not "taxes" but rather fees charged for electronic access to public information, as Congress directed.

---

[2] *See* Pls.' Resp. to Def.'s Statement of Material Facts ¶ 22 (conceding that the E-Government Act provides no alternate sources of funding) (ECF No. 75-1).

Plaintiffs' overly restrictive view of the E-Government Act and *Skinner* risks undercutting the relevant portions of the E-Government Act entirely. If Plaintiffs are correct—that the receipts from these fees may not be used to "inur[e] directly to the benefit" of any other person, then the relevant portions of the E-Government Act must all be thrown aside. By Plaintiffs' own admission, the E-Government Act sought to expand free access to court records. *See* Pls.' Opp. at 1; Pls.' Resp. to Def.'s Statement of Material Facts ¶ 22. But given that the Judiciary does not receive separate appropriations, the only way that it can provide these records for free to certain users is to cover that expense with the fees received from paying consumers. Thus, the fees paid are "inuring directly to the benefit" of others—those to whom Defendant has provided records for free. Under Plaintiffs' view, this entire system must fall. But such an absurd result must be avoided. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 563, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available").

Plaintiffs also attempt to characterize their arguments as raising First Amendment concerns, such that the Court should rule in their favor to avoid the constitutional questions. *See* Pls.' Opp. at 6. Plaintiffs are again attempting to create a new First Amendment right—a right to *electronic* access to court records *from their homes*. Put simply, Plaintiffs offer no support for such a contention because none exists. *See* Def.'s Mot. at 23–25. And, given that neither Plaintiffs nor *amici* offers any support for this position, they have failed to provide any reason that the Court should simply enter summary judgment in their favor in order to avoid a vague (and unfounded) constitutional concern.

4. Parroting their previous arguments, Plaintiffs next contend that "PACER fees exceed the amount necessary even on the government's view." Pls.' Opp. at 6. In this brief

section, Plaintiffs ask the Court to grant summary judgment in their favor because, in their estimation, they "demonstrated that PACER fees are being used to fund projects that go beyond the provision of 'public access services.'" Pls.' Opp. at 6–7 (referencing courtroom technology, electronic Violent Crime Control Act notices, electronic bankruptcy notices, and electronic juror notices). But contrary to Plaintiffs' suggestion, Defendant addressed these in its Cross-Motion. *See* Def.'s Mot. at 19–20. Interestingly, Plaintiffs *again* try to make much of the fact that EPA revenues have been used to fund television monitors in certain federal district courtrooms, *see* Pls.' Opp. at 7 n.3, as Congress approved, *see* Skidgel Decl. ¶ 12, Ex. K at 2, 44 (ECF No. 73-2). But in their Opposition, Plaintiffs fail to note that these televisions provide "*the general public*" (both jurors and the gallery alike) with access to court records. *See* Def.'s Mot. at 18 n.11 (emphasis added).

Plaintiffs' decision to return to these arguments is surprising, given that Congress recognized each of these programs to constitute an "effort[ ] to make electronic information available to the public." Def.'s Mot. at 19. In light of their failure to cite any authority, it is unclear how Plaintiffs arrived at their conclusion that these uses "go beyond the provision of 'public access services.'" Pls.' Opp. at 7. Given that Congressional Committee members understood these to fall within the "public access services" when the House Committee on Appropriations expressly stated that it "supports" these efforts to "make electronic information available to the public," the Court should also cast aside this argument.

5. Finally, Plaintiffs rehash their argument one last time by contending broadly that PACER fees are not "reasonable." Pls.' Opp. at 7. Here, Plaintiffs again base their argument on the contention that the E-Government Act limits PACER fees to those fees necessary to fund only

PACER and that any fees beyond that are *per se* unreasonable. At the risk of repetition—this argument fails as Congress did not include any such language in the E-Government Act.

On this point, Plaintiffs also argue that since the costs of storage have fallen, the cost of operating PACER must have also fallen. *See id.* Plaintiffs' support of this red herring with "our experts' calculations" is of no moment. As noted above (repeatedly), nothing in the E-Government Act limits the authorization to charge PACER fees to the cost of operating PACER. Accordingly, it is irrelevant that Plaintiffs identified an expert who stated that the cost of a single portion of providing public access services (data storage) has decreased and the Court should thus cast aside this final attempt to challenge Defendant's PACER fees. Moreover, to the extent that Plaintiffs use this argument as a proxy for establishing that PACER fees are somehow unreasonable, they are wrong on the law. *See supra*. And, to the extent that they are attempting to quantify a specific delta between the cost of providing PACER access and PACER fees, they have gotten ahead of themselves. *See* Scheduling Order ¶¶ 3–4 (Jan. 24, 2017) (limiting this round of briefing to liability, not damages).

## II. PLAINTIFFS' MISCELLANEOUS ARGUMENTS PROVIDE THEM NO SUPPORT

*Judiciary's Information-Technology Fund ("JITF")*. Congress expressly stated that EPA receipts were to be deposited in the "Judiciary Automation Fund."[3] 28 U.S.C. § 1913 note; *see also* Def.'s Mot. at 10. And, this is a fund for which Congress has expressly itemized the ways in which its funds may be spent. *See id.* (quoting 28 U.S.C. § 612(a)). Given that Congress chose this fund as the location for depositing EPA receipts, it is entirely reasonable to conclude that Congress intended that the funds deposited into JITF could be spent in accordance with the

---

[3] The Judiciary Automation Fund was subsequently renamed as the Judiciary Information Technology Fund. *See* 28 U.S.C. § 612.

9

provisions of 28 U.S.C. § 612(a). Claiming to offer the statutory interpretation that "makes the most sense" and "tracks the plain language," Pls.' Opp. at 1, Plaintiffs again ask this Court to ignore statutory language. Here, they ask the Court to ignore the fact that Congress identified the JITF in the E-Government Act. Yet, there can be no debate about the fact that Congress identified the JITF as the location for depositing EPA revenues. *See* 28 U.S.C. § 1913 note. And, when Congress did so, it was aware that this fund permitted certain uses and yet it did not include any additional limitations when it identified JITF as the location for deposits. It naturally follows that this should inform a fair reading of how Congress intended the PACER fees to be spent.[4]

*Reports of Congressional Committees*. Plaintiffs conclude their Opposition by stating the obvious—committee reports cannot authorize a statutory violation. *See* Pls.' Opp. at 9. But this strawman does nothing to advance Plaintiffs' arguments. Indeed, at no point does Defendant suggest that the Court should adopt an interpretation contrary to the E-Government Act (or its predecessors) in light of anything stated by a committee report. *See generally* Def.'s Mot. Instead, Defendant points to various statements from the House and Senate Appropriations Committees as indicative of the fact that Defendant's interpretation of the E-Government Act is correct. Indeed, courts routinely look to committee reports as support for an interpretation of statutory language. *See, e.g.*, *Am. Broad. Cos., Inc. v. Aereo, Inc.*, 134 S. Ct. 2498, 2505–506 (2014) (discussing language in a committee report when interpreting amendments to Copyright Act); *Lawson v. FMR LLC*, 134 S. Ct. 1158, 1162 (2014) (discussing language in committee report when interpreting purpose of Sarbanes-Oxley Act of 2002); *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 535 (2013) (relying on committee reports when discussing contours of the first sale doctrine). It is

---

[4] As discussed above, Plaintiffs' suggestion that this argument is somehow at odds with the 2009 letter from the AO's director to then-Senator Lieberman is incorrect. *See* Pls.' Opp. at 8; *see also supra* note 1.

Case 1:16-cv-00745-ESH   Document 79   Filed 01/05/18   Page 13 of 14

Defendant's argument that harmonizes the statutory text and the various statements from the congressional committees. In contrast, Plaintiffs' argument creates a conflict between the E-Government Act and the committee statements—a conflict that Plaintiffs have failed to explain.

As noted above, Defendant believes that this Court should grant summary judgment in its favor based on the plain text of the E-Government Act. *See supra* Part I. But should the Court conclude that there is any ambiguity in that statutory text, the D.C. Circuit has explained that legislative history "can serve to inform the court's reading of an otherwise ambiguous text." *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1237 (D.C. Cir. 2003). Here, each of the referenced legislative materials supports Defendant's interpretation of the E-Government Act. Plaintiffs' only response (indeed, the only response they *could* offer) is to try to diminish these committee statements as sporadic or rogue. Of course, they are no such thing and this Court may rely on them as further support for Defendant's straightforward interpretation of the E-Government Act.

## CONCLUSION

For the foregoing reasons, and those stated in Defendant's Cross-Motion for Summary Judgment, Defendant respectfully requests that the Court enter summary judgment in its favor.

January 5, 2018                              Respectfully submitted,

                                                    JESSIE K. LIU
                                                    D.C. Bar #472845
                                                    United States Attorney

                                                    DANIEL F. VAN HORN
                                                    D.C. BAR # 924092
                                                    Chief, Civil Division

        By:    */s/ W. Mark Nebeker*
              W. MARK NEBEKER (D.C. Bar #396739)
              BRIAN J. FIELD (D.C. Bar #985577)
              Assistant United States Attorneys
              555 4th Street, N.W.
              Washington, D.C. 20530
              (202) 252-2536
              mark.nebeker@usdoj.gov