# **EXHIBIT G**

Calendar No. 138

| 114TH CONGRESS | | REPORT |
| 1st Session | SENATE | 114–75 |

TRANSPORTATION AND HOUSING AND URBAN DEVELOPMENT, AND RELATED AGENCIES APPROPRIATIONS BILL, 2016

JUNE 25, 2015.—Ordered to be printed

Ms. COLLINS, from the Committee on Appropriations, submitted the following

R E P O R T

[To accompany H.R. 2577]

The Committee on Appropriations, to which was referred the bill (H.R. 2577) making appropriations for the Departments of Transportation, and Housing and Urban Development, and related agencies for the fiscal year ending September 30, 2016, and for other purposes, having considered the same, reports favorably thereon with an amendment, and recommends that the bill, as amended, do pass.

*Amounts of new budget (obligational) authority for fiscal year 2016*

| | |
|---|---|
| Total of bill as reported to the Senate | $55,646,000,000 |
| Amount of 2015 appropriations | 53,772,000,000 |
| Amount of 2016 budget estimate [1] | 55,346,458,000 |
| Amount of 2016 House allowance | 55,260,800,000 |
| Bill as recommended to Senate compared to— | |
| 2015 appropriations | +1,874,000,000 |
| 2016 budget estimate | +299,542,000 |
| House allowance | +385,200,000 |

[1] The budget estimate proposed converting $7,303,000,000 associated with certain surface transportation programs previously treated as budget authority into obligation limits. The Committee recommendation does not reclassify the funding for these programs.

95–188 PDF

136

role in the market, as well as poor quality loans in its portfolio that were insured under laxer requirements, FHA suffered significant losses. This ultimately resulted in FHA seeking $1,700,000,000 from Treasury at the end of fiscal year 2013 to cover expected losses—the first time FHA needed to draw on taxpayer funding in its history.

Beginning in 2009, this administration implemented policies to tighten lending standards and increase premiums. These changes have improved the quality of its loans and increased the solvency of the MMI Fund. As a result of the increased fees and improvements in its loss mitigation strategies, the MMI Fund is not expected to require any additional funding from Treasury, and has been on a strong trajectory to reach the 2 percent capital requirement. However, the administration's decision to reduce annual mortgage insurance premiums has setback that effort. While the Committee is pleased that the condition of the fund is improving, it expects HUD to remain focused on the fund's financial health.

*Administrative Fee*.—The Committee supports the goal of improving FHA's risk management and quality control efforts and has included resources to do so. The Committee is disappointed that the budget request proposing a new fee to offset administrative costs is the same language as in fiscal year 2015. Numerous concerns were raised by stakeholders in reaction to the 2015 request, yet the 2016 budget request fails to address those concerns. As such, the Committee does not include authority for HUD to charge a fee to provide additional funds for FHA's administrative costs. Despite the exclusion of the proposed fee, the Committee continues to stress that FHA needs to provide clear and consistent guidance to lenders so that they can better assess risk associated with the mortgages they originate. The Committee also encourages FHA's stakeholders to take into consideration that such guidance and clarity may be difficult without the additional resources such a fee would provide. Finally, the Committee encourages FHA and its partners to work together to address their mutual challenges.

*Multifamily Housing*.—The Committee is concerned that HUD's 2012 changes to its Project Capital Needs Assessment for multifamily lenders, while well intentioned, may have the unintended consequence of unduly constraining credit that is necessary for the development of affordable multifamily housing. To address this concern, the Committee directs HUD to report to the House and Senate Committees on Appropriations within 30 days of enactment on the data supporting the merits of continuing the changes included in Notice H–2012–27. In particular, the report should include a review of changes to the initial reserve calculations and replacement reserve calculations, and a recommendation on whether a clearer definition of intrusive testing requirements would benefit HUD and lenders without creating additional risk.