IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL VETERANS LEGAL SERVICES PROGRAM, NATIONAL CONSUMER LAW CENTER, and ALLIANCE FOR JUSTICE, for themselves and all others similarly situated,<br>                      *Plaintiffs*,<br>   v.<br>UNITED STATES OF AMERICA,<br>                      *Defendant*. | Case No. 16-745 (ESH) |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S SUPPLEMENTAL AUTHORITY**

**1.** At the hearing, the Court repeatedly asked the government to identify any case law supporting its argument that, contrary to *TVA v. Hill*, 437 U.S. 153, 191 (1978), Appropriations Committees may override statutory limits on the use of user fees. This question is important because the AO has admitted that it uses PACER fees to fund services other than PACER and has sought "expanded authority" from the Appropriations Committees for these otherwise unauthorized expenditures. *See* Dkt. 81-1, at 27–28 ("Funds are used first to pay the expenses of the PACER program. Funds collected above the level needed for the PACER program are then used to fund other initiatives," for which "[t]he Judiciary seeks this expanded authority[.]"). The government even relies on hasty email exchanges with Committee staff as the sole evidence of congressional approval for a given fiscal year. *See* Dkt. 81-1, at 50 ("We have no objection.").

Unable to locate even a single example of an Appropriations Committee providing the requisite "expanded authority," the government has now submitted examples of virtually every other permutation: language that requires reporting on the use of funds (Exhibits A and B), express limits on the use of funds (Exhibits C and D), general expressions of concern about the use of funds (Exhibit E) and statements disapproving of agency proposals to create new user fees (Exhibits F and G). It should come as no surprise that the government can't find an example of

1

the one thing that would matter: a committee expanding, on its own, existing statutory limitations on the ability to impose user fees. No such example exists, of course, because "substantive legislation [cannot be] undone by the simple—and brief—insertion of some inconsistent language in Appropriations Committees' Reports." *TVA*, 437 U.S. at 191.

**2.** The government cited a new case for the first time at oral argument, *Rural Cellular Ass'n v. FCC*, 588 F.3d 1095 (D.C. Cir. 2009), to support its view that the AO enjoys "flexibility" to use PACER fees for services other than PACER. But that case did not involve user fees at all. And the Supreme Court's user-fees cases supply a clear-statement rule that controls here: Because only Congress may impose taxes, a user fee may not exceed the cost of providing the service "inuring *directly to the benefit" of the person who pays the fee*—unless Congress has "indicate[d] clearly its intention to delegate" its taxing power. *Skinner v. Mid-Am. Pipeline Co.*, 490 U.S. 212, 224 (1989).

The government's contrary argument ignores this clear-statement rule and misunderstands the very concept of a user fee. On its view, the user of one discrete service—for example, a journalist or researcher who wishes to download a brief on PACER—may be lawfully charged a fee that reimburses the cost of *other services* provided to *other people*: notices to bankruptcy creditors; notifications for law enforcement agencies; case management and document filing services for litigants and judges; and flat screens for jurors, to name just a few examples.

That approach reads crucial language out of the statute—particularly the requirement that "[a]ll fees … collected" for services listed in the prescribed "schedule of fees" shall be collected "*as a charge for services rendered*" to the user "*to reimburse expenses incurred in providing these services.*" 28 U.S.C. 1913 note. The "expenses incurred in providing these services," as the AO fee schedule and the 2002 E-Government Act's text and history make clear, are the "marginal costs of disseminating the information" to the user through PACER. Dkt. 52-5, at 6. The "marginal

costs" of operating PACER are the additional costs—on top of fixed costs for filing and storing records—of providing copies (that is, PDF documents) of the filings to members of the public upon request. Those costs do not include the costs of providing services to *other* groups of people, or to the public more broadly. *See* Dkt. 52-8 & 52-9 (Senator Lieberman, the Act's author, explaining that the AO violates the Act by charging fees "well higher than the *cost of dissemination*" rather than fees "used only to recover *the direct cost of distributing documents on PACER*"). The same approach applies in the FOIA context, in which fees may be charged only for the "the *direct costs* of search, duplication, or review," 5 U.S.C. 552(a)(4)(A)(iv), which are defined by regulation as "expenses that an agency incurs in searching for and duplicating … records in order to respond to a FOIA request." 28 C.F.R. § 16.10(b)(2). "Direct costs *do not include overhead expenses* such as the costs of space, and of heating or lighting a facility." *Id.*

**3.** At the hearing, the Court recognized our position that discovery may help illuminate whether any expenses attributed to CM/ECF are actually within the marginal cost of providing records via PACER. *See*, *e.g.*, Dkt 52-13, at 15:21–33. Because the motion now before the Court concerns only whether the AO has violated the statute Act in *any* respect—not the extent of the liability or damages—the Court may wish to defer this question until the next phase of litigation, after discovery. For example, it may prove relevant that new features of NextGen CM/ECF—developed during the class period—are extensively if not exclusively focused on needs of the courts and litigants rather than PACER users. *See* Greenwood & Brinkema, *E-Filing Case Management Services in the US Federal Courts: The Next Generation*, Int'l J. Court Admin (2015), at 8–10, 15–16, available at *www.iacajournal.org* (*e.g.*, "access control"; "attorney services"; "calendars and schedules"; "case processing/ management"; "chambers, courtroom, and judicial support"; "data exchanges and case transfers"; "filing, e-forms, and e-file"; "legal research" for "judges and law clerks"; and "reports, e-queries & e-analytics" for "for judges or chambers staff").

        Respectfully submitted,

        */s/ Deepak Gupta*
        DEEPAK GUPTA
        JONATHAN E. TAYLOR
        GUPTA WESSLER PLLC
        1900 L Street NW, Suite 312
        Washington, DC 20036
        Phone: (202) 888-1741
        Fax: (202) 888-7792
        *deepak@guptawessler.com*
        *jon@guptawessler.com*

        WILLIAM H. NARWOLD
        MEGHAN S.B. OLIVER
        ELIZABETH SMITH
        MOTLEY RICE LLC
        3333 K Street NW, Suite 450
        Washington, DC 20007
        Phone: (202) 232-5504
        Fax: (202) 232-5513
        *bnarwold@motleyrice.com*

March 28, 2018         *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2018, I electronically filed this response through this Court's CM/ECF system. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

        */s/ Deepak Gupta*
        Deepak Gupta