**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL VETERANS LEGAL SERVICES, et al., | |
| *Plaintiffs*, | |
| v. | Civil Action No. 16-745 (ESH) |
| UNITED STATES OF AMERICA | |
| *Defendant*. | |

<u>**DEFENDANT'S RESPONSE TO PLAINTIFF'S NOTICE**</u>

On March 23, 2018, this Court held a hearing on the Parties' cross-motions for summary judgment. At the close of that hearing, the Court asked one discrete question for which Defendant was invited to submit supporting authority. Specifically, counsel for Defendant and the Court had discussed the sixteen examples of the House and Senate Appropriations Committees approving the details of the Judicial Conference's plans for using receipts from its Electronic Public Access program. *See* 2d Skidgel Decl. Tabs 9–13 (ECF No. 81). As Defendant explained in its recent Notice, this discussion was framed by an apparent difference between "appropriated funds" and "non-appropriated funds," with the Court asking whether members of the Appropriations Committees engaged in less oversight over how an agency uses "non-appropriated funds" than they do for planned uses of "appropriated funds." ECF No. 84 at 1 n.1.

As requested, Defendant responded to the Court's request for such information "within 24 hours" by providing the Court with three pieces of information. First, Defendant noted that there is no distinction between "appropriated funds" and "non-appropriated funds." Rather, all such funds are "appropriations." *See id.* Second, Defendant provided the Court with several examples from committee reports showing that the members of Appropriations Committees pay close

attention to how fees (*e.g.*, "non-appropriated funds") are used.  *See id.* Tabs A, D–G.  In fact, Defendant provided the Court with a recent committee report demonstrating that the House Appropriations Committee is engaging in close oversight of exactly the questions underlying this litigation—the permissible uses of PACER fees.  *See id.* Ex. A.  Third, Defendant provided the Court with examples of enacted law demonstrating that Congress as a whole uses appropriations acts to direct usage of fee receipts and also identifying the Appropriations Committees as the appropriate body for oversight of how receipts from fees are used.  *See id.* Exs. B–C.

Although the Court did not invite an additional response, Plaintiffs filed a document styled a "Response to Defendant's Supplemental Authority."  *See* ECF No. 85.  But a review of this filing confirms that it is nothing of the sort.  Rather, Plaintiffs filed what amounts to their own notice rehashing substantive arguments and failing to address the lone question for which the Court requested additional authority.  The Court may cast aside Plaintiffs' supplemental arguments on that ground alone.

But were the Court to consider these additional arguments, it is important to note that they miss the mark.

1.      Plaintiffs persist in their misunderstanding of what "expanded authority" means. *See* ECF No. 85 at 1–2.  As counsel for Defendant explained at the Motions Hearing, the Judicial Conference files spending plans with the Appropriations Committees each year.  *See, e.g.*, 2d Skidgel Decl. Tabs 9–13.  These spending plans outline every project for which the Judicial Conference plans to use receipts from the Electronic Public Access program fees.  And as counsel explained, none of the expenditures listed in those plans occurs until the Judicial Conference receives approval from the Appropriations Committees.  *See id.* Tabs 47–29; *see also* 1st Skidgel Decl. Tabs L & M.  The referenced "expanded authority," as counsel for the Defendant explained,

relates to these approvals and the Judicial Conference's requests for approval by the Appropriations Committees for new projects to offer electronic public access.

Plaintiffs' fixation on this notion that Defendant is asking the Court to conclude that Appropriations Committees can "override statutory limits on the use of user fees" is misplaced. *See* ECF No. 85 at 1; *see also* ECF No 79 at 10.  Indeed, Defendant has explained that it relies on these authorities not to "authorize a statutory violation," but to provide "support for an interpretation of statutory language."  *See* ECF No. 79 at 10.  If anything, the most persistent gap here is the fact that Plaintiffs have yet to offer a single explanation for why there are sixteen examples of the Appropriations Committees agreeing with the Judicial Conference's interpretation of the E-Government Act and § 1913 note.  As discussed previously, the Defendant has harmonized the legislative history of § 1913 note, the E-Government Act, and the actions from Congressional Committees since 2002; Plaintiffs have decided instead to act like none of it exists. *See* ECF No. 79 at 10–11.

2.      Plaintiffs again fail to recognize the simple fact that Congress *has* provided exactly the "clear statement" that they contend is missing.  As counsel for Defendant noted at the Motions Hearing, the statutory language at issue in *Rural Cellular Ass'n v. FCC*, 685 F.3d 1083 (D.C. Cir. 2012),[1] directed the Federal Communication Commission to develop "*mechanisms* to preserve and advance universal service."  *Id.* at 1085 (emphasis added).  And, when Congress has conferred "decisionmaking authority upon agencies … with an intelligible principle," the discussion of "whether the assessment is deemed a tax is of no real moment."  *Id.* at 1091.  It is beyond dispute that a Congressional directive to develop "mechanisms to preserve and advance universal service" is less clear of a statement than the statutory language at issue in this matter, which authorizes the

---

[1] In their Response, Plaintiffs errantly refer to an earlier *Rural Cellular* decision.

Judicial Conference to charge "reasonable" fees "only to the extent necessary" for the Electronic

Public Access Program.  28 U.S.C. § 1913 note.[2]

Moreover, the fact that Congress determined that the Judicial Conference may provide fee

waivers only serves to confirm that Congress was specifically contemplating a program where

PACER users would pay fees that supported more than only the cost of providing that specific user

with access to the documents requested.  As Defendant has already explained, Congress created a

system whereby PACER fees may be used to "inure directly to the benefit" of others, including

those who are accessing the records without charge.  ECF No. 79 at 7.  In fact, Plaintiffs reliance

on fees charged in the FOIA context only highlights the fact that Congress knows how to limit an

authorization to charge fees.  *See* ECF No. 85 at 3.  While FOIA provides that fees may be charged

only for the "*direct costs* of search, duplication, or review," 5 U.S.C. § 552(a)(4)(A)(iv), § 1913

provides no such "direct costs" language.

3.      Plaintiffs' final argument relates to discovery.  Through this, Plaintiffs appear to

walk back their position that PACER fees may not be used to fund CM/ECF.  But Plaintiffs have

not been shy to date about their position that CM/ECF may not be supported with PACER fees.

*See*, *e.g.*, ECF No. 52 at 3–4 (stating that there was "no statutory authority or legal reasoning" to

support the Judicial Conference's plan to use PACER fees for CM/ECF); *id.* at 19 ("the principles

we have laid out strongly indicated that CM/ECF and its associated costs may not be funded with

PACER fees").

---

[2] Plaintiffs also suggest that the *Rural Cellular* decision is irrelevant because it "did not involve
user fees at all."  ECF No. 85 at 2.  But it should be noted that the paragraph Defendant quoted
addresses this exact question—whether the FCC was assessing a tax absent clear delegation or was
assessing a fee.  *See Rural Cellular Ass'n*, 685 F.3d at 1091.

March 29, 2018                    Respectfully submitted,

                                 JESSIE K. LIU
                                 D.C. BAR #472845
                                 United States Attorney

                                 DANIEL F. VAN HORN
                                 D.C. BAR #924092
                                 Chief, Civil Division

                    By:          */s/ W. Mark Nebeker*
                                 W. MARK NEBEKER (D.C. Bar #396739)
                                 BRIAN J. FIELD (D.C. Bar #985577)
                                 Assistant United States Attorneys
                                 555 4th Street, N.W.
                                 Washington, D.C. 20530
                                 (202) 252-2536
                                 mark.nebeker@usdoj.gov