```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
-------------------------------X

NATIONAL VETERAN LEGAL SERVICES
PROGRAM, ET AL.,

                  Plaintiffs        Civil Action No.16-745

          vs.

UNITED STATES OF AMERICA,

                  Defendant.

-------------------------------X
                                     Washington, D.C.
                               Wednesday, April 18, 2018
                                        3:10 p.m.


                TRANSCRIPT OF STATUS CONFERENCE
             BEFORE THE HONORABLE ELLEN S. HUVELLE
                 UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:  Jonathan E. Taylor, Esq.
                     Deepak Gupta, Esq.
                     Daniel Townshend, Esq.
                     GUPTA WESSLER, PLLC
                     1900 L Street, N.W.
                     Suite 212
                     Washington, D.C.  20036
                     (202) 888-1741

                     Meghan S.B. Oliver, Esq.
                     MOTLEY RICE, LLC
                     28 Bridgeside Boulevard
                     Mount Pleasant, S.C.  29464
                     (843) 216-9492




Court Reporter:      Lisa Walker Griffith, RPR
                     U.S. District Courthouse, Room 6507
                     Washington, D.C.  20001
                     (202) 354-3247
```

APPEARANCES (Cont'd):

For the Government:    Brian J. Field, Esq.
                       William Mark Nebeker, Esq.
                       U.S. ATTORNEY'S OFFICE
                       Civil Division
                       555 Fourth Street, N.W.
                       Washington, D.C.  20530
                       (202) 234-2806
                       (202) 252-2536

1          **P R O C E E D I N G S**

2          THE DEPUTY CLERK:  This is civil action 16-745.

3  National veterans legal services program et.al versus

4  United States of America.

5          I'm going to ask the parties to step forward,

6  identify yourselves for the record.

7          MR. TAYLOR:  Good afternoon, Your Honor.

8  Jonathan Taylor from the plaintiffs.  I'm from the Gupta

9  Wessler Law Firm.  I have with me at counsel table Deepak

10  Gupta from the same first, and William Narwold from the

11  Motley Rice firm.

12          THE COURT:  Good afternoon.

13          MR. FIELD:  Good afternoon, Your Honor.  Brian

14  Field on behalf of the defendants.  With me at counsel

15  table from the administrative office is Wendell Meyers and

16  Wendell Skidule.

17          THE COURT:  Good afternoon.

18          You filed a status report.  Why doesn't somebody

19  tell me what you have in mind with this status report?  It

20  came as bit of a surprise.

21          MR. NARWOLD:  Good afternoon again, Your Honor.

22  Bill Narwold from Motley Rice.  We've had a couple of

23  conversations with the DOJ.  I will let them speak to this.

24  It is their view that, although Your Honor has identified

25  categories of expenses that were not properly paid for by

1    Pacer revenues, that does not translate to liability under

2    our claim of illegal exaction.

3           While Your Honor has dealt with the expense side

4    of the equation, their position is we still must prove that

5    in fact the Pacer revenues or the amount charged for the

6    Pacer revenues was greater than it would have been in a

7    "but for" world.

8           As a result of that -- so their view is we really

9    have not decided liability at this point.  All we've decided

10   is that there are certain expenses that can't be paid for.

11   As a result of that, we're going to need to take some

12   discovery about A, the expense issues that are still open

13   which were identified in Your Honor's ruling on the courtroom

14   technology.

15          But in addition, if it is the government's position

16   that by taking out these expenses, approximately $25 million

17   a year, almost $200 million of expenses, that doesn't

18   translate to an overcharge, then what we're going to have to

19   do is demonstrate to Your Honor that in a "but for" world

20   they would not have charged 10 cents a page or the other

21   things.  The only way we can do that is to take some

22   discovery of these folks and find out why that would be, why

23   would they maintain a $200 million carry-over reserve.

24          And their position is the burden of proof is on us.

25   And therefore we've talked about what discovery is necessary.

1   And concluded that the five, six months we've talked about is

2   the appropriate time to get documents and take a few

3   depositions.

4           THE COURT:  What is your view?

5           MR. NARWOLD:  My view--

6           THE COURT:  You just said that the government --

7           I'm sorry, I didn't catch your name.

8           MR. NARWOLD:  I'm sorry, Your Honor.  The last

9   name is Narwold, first name Bill with the Motley Rice firm.

10          THE COURT:  The government moved for summary

11  judgment on liability and up to a point they won.  I'm

12  totally lost at what is going on here.

13          I thought -- I certainly asked the plaintiff

14  that, is it your position, if X shouldn't have been

15  charged, then you've been overcharged by X.  That's what I

16  thought I was deciding.  Had I for a moment ever understood

17  that the government was not moving for summary judgment --

18          You had two definitions.  I didn't buy either

19  one.  And what I foresee happening or would like to see

20  happen is to take the liability, certify it and go to the

21  Court of Appeals because we're going to waste a lot of time

22  and money if everybody involved -- but that presuppose that

23  coming up with the numbers is not a difficult process.  But

24  is rather strictly mathematical.

25          If everybody agreed, I would certify under 28 USC

1    1292.  I mean, this is a really novel issue of law.

2    Obviously it affects the judiciary if there were appellate

3    review at this stage.  But that presupposes that the issue

4    of judgment really comes down to just figuring out a little

5    more about courtroom technology.

6         I have ruled that there is a whole slew of things

7    that the government can charge for over your objection

8    obviously, for things that existed prior to the statute

9    being amended in 2002, there were categories.  And that the

10   argument is from the plaintiff's point of view and I don't

11   know where the government was during all this, they're the

12   ones that took this kind of peculiar position that this

13   middle ground, who knows.  But they're not arguing now who

14   needs to know.  They just assume, and I don't blame them,

15   get appellate review.  They feel strongly about their

16   definition.

17        I don't know what you're adding to this at all.

18   Wouldn't it make a lot of sense and save everybody a lot of

19   money if either the government is right, the plaintiff is

20   right or I'm right.  We have three different positions.

21   The Court of Appeals can figure out how to pick up.  At

22   that point, it's an additional question, strictly, other

23   than you could figure it out among yourselves.  I've said

24   that the court reporting mechanism that is available on ECF

25   to purchase, the audio is part and parcel of the CM-ECF.

1  But why did you move for summary judgment?

2          MR. FIELD:  If I can, I think it would be helpful

3  to clarify a bit on what the government's position is.

4  Mr. Narwold I think somewhat accurately described our

5  position but with one caveat.  That we're not saying that

6  the question now is liability.  The question is damages.  I

7  think that both sides suggested at our motions hearing that

8  there was still discovery needed with respect to some of

9  the more granular understanding of the various expenditure

10  categories.

11          The Court has included a test in its opinion that

12  tethers everything to the CM-ECF decision which is not a

13  position that either side explained or developed a factual

14  record on.

15          THE COURT:  So you want them to be able to get

16  discovery of the things you won.

17          MR. FIELD:  I think that the plaintiffs have

18  suggested on the call that they anticipate taking discovery

19  into the Pacer and CM-ECF categories to ensure that they

20  agree that everything in those categories does in fact--

21          THE COURT:  Is that your position, Mr. Narwold?

22  Nobody won here so to speak but at the same time my

23  definition is pretty self-executing.

24          MR. NARWOLD:  Your Honor, we could agree I think

25  on what the universal costs are that Your Honor has

1    identified.  What I understand the government's position

2    will be that, even if we identify that to the second

3    decimal point, even if we come up for all six or eight

4    years--

5             THE COURT:  Six.

6             MR. NARWOLD:  -- and tell you exactly what that

7    number is, that that does not establish that we're entitled

8    to recover that amount of money.  All we've done is

9    identify expenses Your Honor has excluded.  But that

10   doesn't establish a right to a refund.

11            Am I correctly stating that?

12            MR. FIELD:  Your Honor, that's where I was going

13   to go next which is I think that it is important--

14            THE COURT:  That's not what I asked, though.  I

15   want to know whether it is your idea that this opens up the

16   question.  I have three categories, one is Pacer, one is

17   CM-ECF for lack of better word.  One is the things that

18   were called Congressional Priorities.  And with one, what I

19   considered somewhat small exception, I said that those

20   categories you win on.  Those amount to somewhere around

21   200 million a year, not exactly because I don't know enough

22   about --

23            MR. NARWOLD:  Your Honor, it may well be that we

24   don't have an objection to --

25            THE COURT:  Can we go back to the question I

1    didn't get an answer to, which is are you thinking you are

2    going get discovery on, let's call it the stuff that comes

3    above the Congressional priority line?  Is that you're

4    opening up?

5           MR. NARWOLD:  What I told Mr. Field is that I

6    just want to make -- all we have right now are the same

7    summary pages that Your Honor has.  I don't want to spend a

8    lot of time on that but I want to know -- there was a

9    breakdown underneath that that would let me know what kinds

10   of things are in there so that I can assure myself that in

11   fact everything they label CM-ECF is in fact CM-ECF.

12          I'm not talking about a deep dive here but I want

13   to know enough because all I have right now are the two

14   pages for every year.  That's really not the focus of what

15   we want to do.

16          THE COURT:  What do you want to do?

17          MR. NARWOLD:  The challenge to that, as I

18   understand it, what Mr. Field is saying is that you have

19   established that we have spent or, under the judge's

20   ruling, you've established that we have spent money, $200

21   million that we shouldn't have spent.  That does not

22   translate, however, automatically to a finding that we need

23   to refund that to the Pacer users because you haven't

24   proven that we would have charged anything less for Pacer

25   in those six years.  Even though we weren't allowed to

1   spend the money, you haven't proven yet that we couldn't

2   have charged for it.  I now need to, if that is their

3   position, I need now to test that.  I need to find out why

4   it is that they would then create a trust fund of $200

5   million.

6          THE COURT:  The documents are going to be hard

7   pressed to support your position because they say here is

8   what we need and here is what we're going to spend it on.

9   They don't, you can't now say, well, we could have spent it

10  on something else.  This is what you spent it on.  And I'm

11  saying you spent it on things you shouldn't have spent it

12  on in some instances.

13         You are opening yourself up, you could lose more

14  than you will gain here.  It seems to me that this case is,

15  at least you never said otherwise, was that the amount

16  spent on things that shouldn't have been, they took the

17  position you've got to subtract out Pacer expenses above

18  the very small amount and everything else was going to be

19  excess.  Then they have to show whether in fact you would

20  have operated Pacer at the marginal cost of operating Pacer

21  was similar to what the fees were.  They could have come

22  out with more money if they showed that you could have

23  operated Pacer for less.

24         My position is when you asked for A. B. C. and D.

25  and I say D. is not within the definition, it's not -- you

1  are liable for those expenses, it translates.  What basis

2  do you have for saying that the X. amount spent on the

3  victims alert system is in any way going to mean that you

4  could have spent the money some other way?

5       MR. FIELD:  I think it is important to step back

6  because we're talking about, I think what I was taking

7  issue with, Mr. Narwold's explanation of our position was

8  with the concept of liability and it is a damages question.

9  It is something we talked about during the motions hearing

10  which is that expenses and fees are two different things.

11       And the reason it is the different in an illegal

12  exaction case, the plaintiffs must show that the exaction,

13  the money paid to the government was done and was caused by

14  the misapplication of a statute.  And here, they have shown

15  that there is an exaction.  And the Court has concluded

16  that there are certain expenditures that are unlawful.

17       But there is not yet anything in the record to

18  demonstrate how, what connection there is between the

19  expense -- the expenditures and the fee.  It would be up to

20  plaintiffs to establish that there is in fact an illegal

21  exaction.  That the fee itself was too high and moreover

22  how -- how--

23       THE COURT:  How would you argue, if I say the fee

24  -- I'm looking at the pleadings a minute.  But if I were to

25  conclude that the fee can't charge for A. through D, I

1   don't understand.  The best that they could do is make you

2   owe more money, not less.

3          MR. FIELD:  I think that the way we would go

4   about analyzing that is we would take Your Honor's opinion

5   and we would reverse engineer out all of those expenditures

6   that were deemed unlawful under Your Honor's decision.

7   That money, as we go back and do it on paper, that money

8   would go back as though it were not spent.  So we would

9   look at how would the years in question have looked like

10  had those expenditures not been made.  That would be an

11  increase to the carry-over in any given year.

12          Then the question would be does that, the

13  carry-over that Your Honor did not suggest was unlawful,

14  that carry-over would increase and then the plaintiffs

15  would need to demonstrate that, with that carry-over, the

16  fee would have been lower; it was unreasonable to carry

17  over that money.  So, we are not challenging or

18  disagreeing.  We're not contemplating rebriefing the

19  categories that Your Honor has addressed.

20          THE COURT:  He is.  You are opening yourself up

21  to losing more money.

22          MR. FIELD:  I understand that this could

23  contemplate plaintiffs looking into the Pacer and the

24  CM-ECF categories.  It would likewise allow us to look at

25  our categories and understand whether or not there are

1  other components or specific line items that are tied into

2  the CM-ECF test that Your Honor--

3       THE COURT:  I would have thought that's what I

4  was telling you to do in my footnote about court

5  technology.  I've already rejected the arguments as to the

6  other three programs completely.  I am not going to revisit

7  them.  I hope -- I mean, you can take my opinion and do one

8  of three things.  You could stretch this out, increase the

9  attorney's fees that the judiciary will land up being

10  liable for.  Have to set up a complicated process of giving

11  people the opportunity to get money back, whatever it is,

12  whatever formula is used.  It won't be that complicated.

13  And whether or not, the big issue will come down to whether

14  you automatically send out checks to law firms that would

15  never step forward and ask for their money.

16       This case, you are going to make it worth more

17  than what it is as we sit here today if you are not

18  careful.  You drag it out long enough, then they have got

19  all kinds of issues about prejudgment interests, legal

20  fees, et cetera.

21       So you can take two years of discovery.  You can

22  take it to the Court of Appeals.  And one of the three of

23  us will prevail.  Frankly, I would be happy to have

24  somebody say, you did it wrong.  That's okay.  That's fine.

25  I would rather see that.  But that's liability.  That

1   assumes that there isn't this complicated process down the

2   road.

3          The last final sort of possibility I supposed is

4   that everybody except for, gets to redo over what I did.

5   That to me is ridiculous.  But the third possibility is you

6   sit down and settle this.  And that makes a lot of sense

7   because obviously if you define the pool of people who are

8   going to step forward and take this money, it's quite

9   different than the pool of possible people.  And if I am

10  going to determine legal fees, it is going to have

11  something to do with who actually wants their money back.

12  So it's like any other class action, the efficacy.

13         So I have to say that your position makes from my

14  point of view the least sense, not helpful to your client

15  because you don't know the answer to any of your inquiries.

16  I know the answer under my analysis, with sort of one

17  exception which I asked the parties to look at which was

18  court technology.  There may be a line item kind of thing

19  that you could take out.

20         But you are the one that moved for summary

21  judgment on all this stuff.  And you told me what these

22  categories were all about.  I relied on the government.

23         Now you are telling me, well, you can't translate

24  that into damages.  I cannot see how, if I say you can't

25  charge for say court technology, then you can say to these

people, "oh, well, still we charged the right amount."  You

can't, is it possible to charge the right amount when you

have sort of $90 million floating around extra?  You are

supposed to be, their goal is supposed to be trying to

lower the cost of Pacer.  And because you kept redefining

-- the judiciary kept redefining what Pacer covers, you

expanded it.  Therefore, you field --

I mean, it is clear from the documents, sir,

absolutely clear.  You had a big surplus and you decided

that you could spend it.  I'm not denigrating anybody's

motives, but you decided you could spend it and use it up.

And  I decided the way you did that was wrong.   So I hope

there is clear thinking.

MR. FIELD:  Your Honor is identifying what is in

fact a key issue with this analysis.  And it's one that in

the AIG illegal exaction context the Court of Federal

Claims dealt with and opined on precisely when it said

there is liability and no damages.

And in that case, the Court said the troubling

feature of this outcome is that the government is able to

avoid any damages notwithstanding its plain violations of

the Federal Reserve Act.  That is the same question here

which is a determination on lawfulness of the expenditures

is different than a determination that the fee charged was

unlawful.

1          Your Honor said just in your discussion there

2  that, would it have been reasonable to carry an extra $95

3  million.  We don't know.  There is nothing in the record to

4  say yes, no or whether or not only $25 million of that was

5  unreasonable or the full 95.  There is nothing in the

6  record.

7          THE COURT:  But the statute, it is not just

8  reasonable.  You are leaving out the amendment : to the

9  extent necessary.  So if it is not necessary, these

10 expenditures in the Court's view are not necessary, I don't

11 see how you are ever going to win this argument that, when

12 you pump in another 25 million a year for six years, that

13 some way or another that -- it might be reasonable but that

14 isn't the standard.  It is to the extent necessary.  It

15 isn't necessary to charge the Pacer user four categories of

16 expenses that the Court has declared is not within the

17 scope of expenses.

18         MR. FIELD:  We would submit again that that is a

19 question of is it lawful to spend on those categories, that

20 doesn't mean that that money necessarily would have not

21 been used as part of the carry forward to protect against

22 the expenses that we talked about at the motions hearing of

23 CM-ECF and Pacer and the fact that the administrative

24 office carries over money for the sole reason that they

25 can't run a deficit and they carry over the money in order

1   to ensure that they have the resources necessary to

2   continue to upgrade the CM-ECF system and protect against

3   additional expenses from privacy encroachments or things

4   like that.  So it is entirely possible that a portion of

5   the money that we put back into the JITA (ph) --

6           THE COURT:  Into the what?

7           MR. FIELD:  Into the judicial information

8   technology fund, it's a fund that we discussed that it goes

9   to.  So our view of it, we would put all this money back

10  there on paper and then look at the plaintiffs and the

11  defendants would look at whether or not, if all that money

12  were there, would the Administrative Office or the Judicial

13  Conference have lowered the Pacer fees.  And importantly

14  how much, because there is no portion of the order from

15  this Court that says the fees were unlawful.

16          What you'll find in every illegal exaction case

17  is a determination about the fee.  Plaintiff's counsel in

18  the Steele case that they have talked about, the order of

19  the Court is that the fee is unlawful, and the amount of

20  the fee.

21          That's what happened with the AIG case in the

22  Court of Federal Claims that, in the fee context, we only

23  have the determination on lawfulness.  But I do want to

24  make sure that I address one thing that Your Honor has

25  mentioned--

1          THE COURT:  Go back.  How can you now reinvent

2     history and say they could have allotted more money to ECF.

3     They allotted what they wanted to allot to it.  Then they

4     said we've got more money to spend.  It is in the

5     documents.  They say we have this surplus and we're going

6     to spend it.  So that's what they came forth with.

7          You can't now say, well, had they known what the

8     Court was going to rule they wouldn't have spent it on the

9     victim notification.  Therefore, we would have put more

10    money aside for the day when ECF breaks down.  That is so

11    hypothetical, you won't find any evidence to support that.

12         MR. FIELD:  I think that two things, one is I

13    think that is what the "but for" test that is typically

14    applied in the illegal exaction context contemplates, that

15    they need to show that but for the unlawful expenses, the

16    fee would have been lower.

17         But I don't think that we would agree that we're

18    not going to find any evidence or in this case also expert

19    testimony on that because I think that that is exactly the

20    question is would it have been reasonable for the Judicial

21    Conference--

22         THE COURT:  Would it be to the extent necessary,

23    no greater?  It is not reasonable anymore.

24         MR. FIELD:  Reasonable, to the extent necessary

25    to operate Pacer and CM-ECF, in all things that are part of

```
1    providing the public with access to information through
2    CM-ECF, would it have been reasonable and to the extent
3    necessary to operate those systems to have an extra X.
4    million dollars per year in the carry forward.
5           Currently there was -- I don't have the numbers
6    memorized what the carry forward was.  But what Your
7    Honor's opinion would do is have us go back and increase
8    the size of that carry-over.  Then there would be a debate
9    about how much of that sum would have led to a decrease in
10   the fees.  Again, there is just nothing in the record on
11   that.  But I do think it is important --
12          THE COURT:  What happens if what you prove is
13   that, ultimately applying this test, you couldn't have done
14   what you're saying and, therefore, you've now made it so
15   that the Judiciary is liable for more than the 25 million a
16   year because he is going to go and look at these other
17   categories?
18          Have you aired this with the client?
19          MR. FIELD:  Respectfully Your Honor, the client
20   is with me.  We've talked about it.  It has also been aired
21   in the U.S. Attorney's Office.   There are two things to
22   note.  One is, before the defendant explained its position
23   to plaintiffs, their position was, out of the gate the next
24   question is inquiry into the Pacer and CM-ECF categories.
25   So I would reject any suggestion that that was just an
```

1   output of ours.  That was Mr. Taylor's specific

2   explanation, or maybe Mr. Narwold's, but that was their

3   first position.  But putting that aside--

4          THE COURT:  Are you not opening yourself up to

5   that?

6          MR. FIELD:  I do think that that is, yes, that is

7   a part of the analysis that would be, that would be part of

8   this question.  I think the Judicial Conference and the

9   Administrative Office are aware of that.

10          I do need to get out that, with respect to

11   certification for an appeal, that is not something that we

12   can independently, a decision we can make ourselves.  That

13   is a decision that is currently undergoing review.  That

14   has to be authorized by the Solicitor General.  At this

15   point, we don't have a decision on that.  I know Your Honor

16   has mentioned it a few times.  I want Your Honor to know

17   that situation is ongoing.

18          THE COURT:  I would be happy for an interlocutory

19   appeal.  It would save everybody a lot of time and money.

20   You are now looking for a way to cost everybody a lot of

21   time and money.  In particular, you could lose ground.  At

22   least if you lost ground in the Court of Appeals, we would

23   know what was going on.  We would not waste our time

24   flailing around with him, figuring out what goes to ECF.

25   I mean, you should feel more confident with your own

```
 1   record.
 2            I'm completely aghast.  I'm not sure that under
 3   28 USC, I can go without agreement of the parties.
 4            MR. NARWOLD:  To make that clear, Your Honor, on
 5   the 1292 issue, if the Solicitor General determines that
 6   they want to do that, we will support that.
 7            THE COURT:  Yeah.
 8            MR. NARWOLD:  You should understand, Your Honor,
 9   the option that we've put before you of discovery experts
10   and so on is our third favorite option.  We would like to
11   take this issue up and get clarity at the D.C. Circuit.  We
12   need to wait to hear from the DOJ on that.  We are open to
13   sitting down to a discussion and figuring out what the
14   numbers really are and figuring out a refund for this
15   class.
16            THE COURT:  Would you set up a class mechanism
17   that you wouldn't automatically be sending out checks to
18   the needy Paul Weisses of the world?
19            MR. NARWOLD:  We could always exclude Paul Weiss.
20            THE COURT:  No, no.  I mean that people have to
21   step forward to make a claim, in other words.
22            MR. NARWOLD:  They will to some degree, but I'm
23   not going to make it onerous.  There would be a notice that
24   would go out.  It would indicate what it would be.  It
25   won't be automatic checks because in this particular
```

1  situation there are going to be issues about who the payor

2  is and other things.

3         But it is going to be a notice that says that,

4  like any notice in a class action that would go out, tell

5  them they have the right, they would file a claim form.

6         THE COURT:  Right, okay.  I think it is very

7  important because I think that there are large numbers of

8  entities will not choose to come forward.

9         MR. NARWOLD:  Although I think many have already,

10 those who may have already opted out.  So we have Reuters,

11 for example, opted out.

12        THE COURT:  What about law firms?

13        MR. NARWOLD:  They're the big news organization.

14 Sorry.

15        THE COURT:  No, I know who Reuters is.  What

16 about law firms, have any of them opted out?

17        MR. NARWOLD:  There have been a couple.

18 Surprisingly few, in my view.

19        THE COURT:  Whether they decide to come and take

20 money out of a pot that belonged to the judiciary is

21 another matter.

22        When is the AG, or is it the SG is going decide

23 whether to -- I mean, we have one side and the Court that

24 desperately want to get a figure, but for purposes of

25 appeal, I supposed we could say.

```
 1            But what you want to do is open up the Court's

 2    opinion entirely to reconsideration.  And lo and behold,

 3    what happens if that whole middle category, I turn out to

 4    be factually wrong because I relied on the government?

 5            MR. FIELD:  I don't have a specific date by which

 6    the Solicitor General will decide, will provide us with a

 7    decision.  What that said, we are happy to go back and, in

 8    light of today's status conference, talk further about that

 9    question, talk further with the Judicial Conference and the

10    administrative office about the desired approach.  I'm not

11    sure of the exact timing.  I surmise 30 days would be ample

12    time.

13            THE COURT:  Usually the government gets 60 days

14    to appeal.  I don't know if that covers interlocutory.

15    What happen is, I've done this only once or twice and they

16    have taken it.  But I have to get the parties to petition

17    for appeal.

18            Mr. Gupta.

19            MR. GUPTA:  I just want to say with respect to

20    1292(b), there isn't really the same kind of time limit

21    that is applicable here because the clock starts running

22    once the District Court issues a decision certifying an

23    issue.  So the government is not operating on a ticking

24    clock.

25            THE COURT:  Until I certify it.
```

1        MR. GUPTA:  Until you certify it.

2        THE COURT:  But is the certification dependent on

3   that the parties are seeking an appeal?  Or is it just that

4   I think this is a controlling issue?

5        MR. FIELD:  I don't know the answer.

6        MR. NARWOLD:  I don't believe it requires an

7   agreement.

8        MR. GUPTA:  The Court could do it unilaterally I

9   think.

10        MR. TAYLOR:  If this Court were to certify, then

11   one of the parties would have to then file the application

12   with, in this case Federal Circuit within 10 days of the

13   entry of the order.  Then the Circuit would have to decide

14   whether it wants to accept the certified appeal.

15        THE COURT:  It's clear that it goes to the

16   Federal Circuit?

17        MR. TAYLOR:  Yes.  The Federal Circuit has

18   exclusive appellate jurisdiction over Little Tucker Act

19   claims such as this one.

20        THE COURT:  Unless you sit and do your math as

21   well -- I'm talking about the defendant -- you don't know

22   what you are getting into here.  You have this principle of

23   law that they could prove that they could spend it properly

24   because I've now told them there is a category of things.

25   But that's not what they chose to do.  And once they chose

1    to do it, I've got six years where they have spent it on

2    things on, the numbers are simple and straightforward.

3         I'm really confused how you get anywhere with

4    this complicated -- you know, you will hire experts, run up

5    the clock, attorneys' fees go up.  At the end of the day --

6    if you shouldn't have spent 20 million, you are going to

7    say that some way or another Pacer fees still could have

8    been this high?

9         MR. FIELD:  I think it is conceivable that that

10   would be our argument or conceivable, depending on how

11   expert analysis might look at that question.  Or it is

12   conceivable that it comes out to Pacer fees would have been

13   one cent lower or something like that.

14        Right now, we're talking about expenses which is

15   not how illegal exaction cases are contemplated.  It is a

16   determination on how -- whether the fees themselves were

17   too high.  If so, by how much?  The fees here are measured

18   in cents.  And it is our position that the illegal exaction

19   question is whether or not that fee is too high.

20        I see that we are not convincing Your Honor.  I

21   think that we would take the Court's invitation to confer

22   further.  I think that would include conferring with the

23   review process for appeal.

24        THE COURT:  But given your sort of murky judgment

25   or issue about damages, you are really messing up the

1   appeal.  But I don't know the circuit well enough at all to

2   figure out what they would think about that.  To me,

3   whether or not you would ever pay out anywhere near this

4   amount of money is a question of claims.  It's not a

5   question of whether or not you could justify some of the

6   Pacer fees.  You've got a long way to go.  You say it is

7   their burden.  Their burden is that you charged for things

8   that you shouldn't have charged for and that's what you

9   used the money for.  After that, I don't see it.

10          Can you help me here?  What's going on?

11          MR. NARWOLD:  You are making my argument for me,

12   Your Honor.  I was of the same view until we had our first

13   conversation.  I thought we were done on this issue.  But

14   if we're going to reopen it, then yes, if they want to talk

15   about what the world would have been in 2010, then I want

16   to discover what the world would have been in 2010.

17          I happen to agree with Your Honor that there is a

18   one for one correspondence between the overcharge and the

19   expenditure.

20          THE COURT:  Could be worse.

21          MR. NARWOLD:  Not for me but it could be for

22   government.

23          Your Honor, to be clear I guess, we would support

24   an appeal.  We would support being referred to a magistrate

25   to see whether a magistrate judge could help us.

1           THE COURT:  Yeah, I would be --

2           MR. NARWOLD:  Those are all preferable to what we

3   have proposed.  What we have proposed, however, is we have

4   a case that needs to move forward.  The government is not

5   conceding dollar one on damages.  So I need to prove that.

6   So I'm really sort of left without a choice here but to

7   propose a discovery and ultimately perhaps a short bench

8   trial on the issue of what the damages are.  I don't have a

9   choice.  So it is not as though I'm here presenting this

10  because I think it is the best alternative.

11          THE COURT:  I think that what we have to do is,

12  one, figure out whether the parties have somebody that they

13  could meet with.  If you work on this correctly, first of

14  all, figure out what court technology is all about because

15  that's the only one I couldn't figure out.  Two, you

16  realize what kind of, what kind of rate is it?

17          MR. NARWOLD:  You lost me.  The rate on--

18          THE COURT:  Consumers, when their rate of--

19          MR. NARWOLD:  Take rate, take, take rate.

20          THE COURT:  Take rate.  Thank you.  It runs

21  generally less than one percent.  That won't be the case

22  here.  But if you factor that in that means that lots of

23  people don't step up to the bat and look for the money.

24  And you factor in that, you are talking about litigating

25  this until the end of 2019 probably.  They're filing in

1    April 15th, the attorney's fees, et cetera, it seems like

2    the defendant would like to know in their minds what they

3    have gained out of there.

4           I'm perplexed and you haven't said anything to

5    tell me why that, if you are not suppose to spend the money

6    on A, you spend it on A, and it is 25 million, how you

7    could possibly say, well, we could have come up with better

8    or different explanations.  You didn't.  You simply said we

9    have this money and we believe Congress is authorizing it

10   and we're going to go ahead and spend it on X.

11          And I say sorry, not X.  That's liability, not

12   damages.  It follows that the amount of money allocated

13   probably has some pretty close relationship to what you

14   shouldn't have been spending it on under the test to the

15   extent necessary, not what is reasonable but to the extent

16   necessary.

17          I think we have to come back and see, one,

18   whether there is any interest in the defendant trying to

19   settle this and get it over with and who should do it.  I'm

20   not sure that a magistrate judge here is the answer.

21          MR. NARWOLD:  We're happy to talk privately as

22   well.  I don't have a preference on that.

23          THE COURT:  There are people like Jim Robertson

24   who are doing JAMS.  The only problem is he was the head of

25   the Technology Committee.  I just thought about that.

1    MR. NARWOLD:  He will know all about this then.

2    THE COURT:  I don't know.  There are other

3 judges.  But I can't give you Bates.  I can't give you

4 Hogan and I probably can't give you Robinson or Collyer.

5    Two, if there is a way we could put it together

6 to get it to the Court of Appeals.  But if you are going to

7 say that the major issue is left to be decided and you

8 can't get the Court of Appeals, that's going to detract

9 from their interest.  My view of this is we're at a figure.

10 I think that figure can be tweaked with a little discussion

11 to say that this would be the potential liability because

12 these categories below the Congressional priority line are

13 not properly paid for out of these fees and let the circuit

14 figure out what the definition is who and the statute that

15 doesn't help us.  You think it's clear but I don't think

16 it's clear at all.

17    All right.  Let's set this over.  I can't tell

18 you how surprised I am by the position of the judiciary

19 here.

20    MR. NARWOLD:  Your Honor, would it be helpful to

21 provisionally enter this order so at least there is a clock

22 ticking on the defendant to be motivated to try to move

23 this along?  Because the best way for me to put pressure on

24 them is to try to move to case along.

25    THE COURT:  That's true.  But I don't know that

```
 1   if they went up to the circuit and say by the way we have

 2   all these issues that haven't been decided, so don't muddy

 3   your hands, I'm worried that that will waylay us.

 4           MR. NARWOLD:  If we went to the circuit, I was

 5   assuming we would do it hand-in-hand.  That we would be

 6   arguing the very issue we argued with Your Honor on summary

 7   judgment.  I'm just thinking of trying to move the case

 8   along, Your Honor.  That's all, Your Honor.

 9           MR. FIELD:  If I may, Your Honor, I don't have

10   the exact time lines immediately at hand.  I believe it

11   would trigger a 10 day clock if the Court were to certify

12   the question, which is what I believe Mr. Narwold is asking

13   for, by which we would need to file a notice of appeal.

14           If that is in fact the timeline, I'm not sure

15   that we'll have resolution from the Solicitor General's

16   Office in 10 days.  I think it would make more sense to

17   hold this over for 30 days under the notion that we are

18   going to go back.

19           THE COURT:  And I want you to consider the idea

20   of going to a mediator and see if you can come up with

21   three names.  I think that's worthwhile, too.

22           MR. FIELD:  Yes.  I think that those two--

23           THE COURT:  So I'll give you 30 days, I will

24   undertake to get it ready to make a pitch.  But I just

25   think if they come along and say there are all these major
```

1   issues that are left to be decided--

2          MR. NARWOLD:  I have one other issue I just want

3   to alert Your Honor to because, as much as I want to

4   simplify this, Your Honor's order deals with the class

5   through April 21, 2016.  Obviously, the expenses and the

6   fees have continued through today.  At this point, the AO

7   has not made a decision about whether going forward is

8   going to reduce the fees.  They just have not made a

9   decision one way or the other, as I understand it.

10         THE COURT:  Are they charging after 2016, does

11  2017 budget include the kinds of things that --

12         MR. NARWOLD:  Yes, that has not changed.

13  Everything today is exactly as it was in 2010, 2016.  And

14  as I understand, I'm not even sure they have cut off the

15  expenditures yet to these other programs.  I don't know

16  that.  But the discussion is going on right now.

17         But if the fee doesn't come down, even though

18  we've taken 25 -- I'd taken 25 to 30 million dollars a year

19  out of that, what we are probably going to do -- I just

20  want to alert Your Honor -- we will probably file a second

21  action, stay it and just -- if we can, consolidate it so we

22  pick up essentially the sub period and the sub class

23  because otherwise, any resolution, they won't be involved

24  and they would just be hanging out there.

25         I don't want to surprise Your Honor by not

1   raising the issue.  I don't think anticipate any

2   proceedings if we could file a stay but I just wanted to

3   alert Your Honor that we are contemplating that right now

4   until we hear the AO's position.

5          THE COURT:  Can you wait to hear it?

6          MR. NARWOLD:  Yes, we're not under a Statute of

7   Limitations deadline.  But at some point, we have to bring

8   them in.

9          THE COURT:  The consequences here are serious.

10         Okay.  There are three things that I want answers

11   to.  I want an answer, one is the government -- is there a

12   way that the government can tease out, with your agreement,

13   the amount that we're talking about for court technology

14   that is not part of CM-ECF?  That's one.

15         MR. NARWOLD:  They have given us a number on that

16   for all six years.  We don't have any back up yet.  But

17   they have started that process.  So we do have some numbers

18   on that.

19         THE COURT:  Two, would the government be willing

20   for me to try to certify this for an interlocutory on

21   liability but the notion being that these expenditures

22   were, in the Court's opinion, improper; and therefore, the

23   amounts would be basically judgment we're talking about.  I

24   think the circuit, I don't know the circuit but they would

25   be unmoved.  But we can see what the government's position

```
 1    is.
 2              Three, I would like for you to consult with each
 3    other on whether there is somebody that we could have that
 4    would do this.  I would suspect a mediator would be happy
 5    to do this on a reduced rate given the circumstances.  And
 6    there are plenty of people locally that could handle this.
 7    And the JAMS people are former judges.  They would be just
 8    as unbiased as I am.  I worry that Jim Robinson was head of
 9    the I.T. committee for many years.  I don't know if it was
10    this part of it.  John Facciola is doing some of this kind
11    of work.
12              We'll discuss the appeal and whether or not we
13    can come up with a figure for court technology that will
14    approximate what the Court views as damages here.
15              I think that you ought to be discussing with each
16    other the notion of what kind of -- if you went by way of
17    recovery, unless you really think you are going to win
18    everything, you would be really good to, really smart to
19    cut it all off and see who comes forwards.
20              I'm convinced that the number of people coming
21    forward won't be as great as the numbers that will be
22    available in the pot.  In my view, they have to go to the
23    judiciary.  It's like going to a cy-pres.
24              Does the judiciary have a fund for settlements?
25    Is it the DOJ fund?
```

```
 1              MR. FIELD:  Your Honor, to answer the first west,

 2    the judiciary does not have a separate fund for settlement.

 3    There is ongoing clarification to confirm that it would be

 4    the judgment fund.  I don't -- I can't represent that that

 5    is--

 6              THE COURT:  Well, we know that we can't use a

 7    cy-pres under the new guidelines of the Attorney General.

 8    So it's going back to a worthy cause I would say.

 9              All right.  Let's pick a date and come back.  I

10    want you to file a status report covering all three issues.

11              I would look more carefully at the statute and

12    see what my options are if the government continues on the

13    idea that the overcharges are not the damages.

14              MR. GUPTA:  For clarification, does Your Honor

15    want us to submit -- you mentioned three names that both

16    sides should submit--

17              THE COURT:  Yeah, it would be nice if you could

18    come up with some joint requests.

19              MR. GUPTA:  We'll certainly try.

20              THE COURT:  Okay.  It is unclear about this

21    trial.  But I think that we could assume that -- I may have

22    to push it depending on when we finish this trial that is

23    starting in a week.  Can we do it on the 18th in the

24    afternoon?  It's a Friday at 1:30.

25              MR. TAYLOR:  May 18th, Your Honor?
```

1          THE COURT:  Yes.  Friday the 18th.

2          MR. TAYLOR:  Yes, Your Honor.

3          THE COURT:  Is that all right for the government?

4          MR. FIELD:  Yes, Your Honor.

5          THE COURT:  Okay.  I would ask that you file the

6    Friday before a status report, the 11th.  We'll send out an

7    order but it should cover the possibilities for a

8    settlement master or mediator.  Another person that is at

9    JAMS locally is Richard Levie who was a Superior Court

10   judge.  There are also other federal judges that are part

11   of JAMS.

12          We want to know what the government's position is

13   on an appeal under 28 USC 1292.  And finally whether or not

14   they are willing to concede liability, a simple liability

15   calculation or whether they are insisting on going through

16   a year and a half of discovery and experts.  And I don't

17   know what you will get at the end.

18          Are there any other issues that we need to

19   address today?

20          MR. NARWOLD:  No, Your Honor.

21          MR. FIELD:  No, Your Honor.

22          THE COURT:  What is your law again about

23   exaction?  What case is it?  You are back to the case that

24   you said once before.

25          MR. FIELD:  I mentioned the AIG case which is

1    Star International Company versus United States, 121 Fed.

2    Claims 428.  That's a 2015 decision that went up to the

3    Federal Circuit on a different question.  That's the case

4    that applied the Fifth Amendment takings context or Fifth

5    Amendment takings test, a "but for" test, A&D Auto versus

6    the United States, 748 F3d. 1142, also from the Federal

7    Circuit.  And the test that I mentioned earlier, just a

8    general illegal extraction test comes out of, I had

9    referenced E-Video Owners versus United States, which 126

10   Fed Claim 95.

11           THE COURT:  Are there any circuit cases?

12           MR. FIELD:  The Star International case went up

13   to the circuit.  They didn't reverse with respect to the

14   test that was applied on the "but for".  But no, I don't

15   have a statement from the Federal Circuit one way or the

16   other on this.

17           THE COURT:  Okay.  I have rarely found a case

18   where the government won as much as they won and they're

19   putting it at risk.  But that's not my choice.  Okay.

20   Thank you.

21           MR. FIELD:  Thank you, Your Honor.

22           MR. TAYLOR:  Thank you, Your Honor.

23           (Whereupon, at 4:00 p.m., the hearing concluded.)

24

25

CERTIFICATE OF REPORTER

I, Lisa Walker Griffith, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


_____     5-7-18
Lisa Walker Griffith, RPR            Date