**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

NATIONAL VETERANS LEGAL
SERVICES, et al.,

        *Plaintiffs*,

        v.

UNITED STATES OF AMERICA

        *Defendant*.

Civil Action No. 16-0745 (ESH)

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY
THE COURT'S ORDERS OF DECEMBER 5, 2016, AND MARCH 31, 2018, FOR
INTERLOCUTORY APPEAL AND TO STAY PROCEEDINGS PENDING APPEAL**

Defendant, the United States, respectfully requests that the Court certify for interlocutory appeal under 28 U.S.C. § 1292(b) its December 5, 2016 Order denying Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 24) and the Court's March 31, 2018 Order granting in part and denying in part Defendant's Motion for Summary Judgment (ECF No. 88).  As explained below, both orders "involve[ ] controlling question[s] of law as to which there is substantial ground for difference of opinion" and a decision from the United States Court of Appeals for the Federal Circuit with respect to either Order "may materially advance the ultimate termination of the litigation[.]"  28 U.S.C. § 1292(b).  Additionally, the United States respectfully requests that the Court stay further proceedings in this Court pending appeal.

**BACKGROUND**

On December 5, 2016, the Court denied Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment.  *See* ECF Nos. 24 & 25.  In that Motion, the United States argued, among other things, that the relevant statutory text—28 U.S.C. § 1913 note (hereinafter, the "E-Government Act")—"is insufficient to create the remedy of return" of excessive PACER

fees.  ECF No. 11 at 18 (citing *Norman v. United States*, 429 F.3d 1081, 1096 (Fed. Cir. 2005)).  In denying the Motion to Dismiss, this Court recognized that there is no Little Tucker Act jurisdiction unless the statute causing the exaction provides "'either expressly or by "necessary implication," that the remedy for its violation entails a return of money unlawfully exacted."'"  ECF No. 11 at 6 (quoting *Norman*, 429 F.3d at 1095 (quoting *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1373 (Fed. Cir.2000))).

On March 31, 2018, the Court granted in part and denied in part Defendant's Motion for Summary Judgment.  *See* ECF Nos. 88 & 89.  In that Motion, the United States argued that PACER fees, and the Judicial Conference's use of PACER fee receipts, complied with the E-Government Act.  *See* ECF No. 73-1.  In its summary judgment Order, this Court ruled that specified categories of the Judiciary's past expenditures of PACER fees were permissible, while others were impermissible.

As the Parties have explained, further proceedings would be complicated and burdensome.  Notably, there is no statutory formula for translating ostensibly impermissible past expenditures of PACER fees into damages awards for individual PACER users.  Fees collected are available "without fiscal year limitation," 28 U.S.C. § 612(a), and the Judiciary routinely carries forward surpluses of PACER fees.  Thus, the Parties agreed that "further proceedings are necessary to determine the amount of an illegal exaction, *if any*," and proposed a schedule for fact discovery, expert discovery, and summary judgment briefing, potentially followed by a bench trial.  *See* ECF No. 91 at 1 (emphasis added).  Additionally, even assuming that class members would be owed any damages, the specific circumstances here risk that the expense of attempting to ascertain the amount of an individual's award will dwarf the award itself.  In moving to certify the class,

Plaintiffs acknowledged that the vast majority of class members stand to recover only a small amount of damages.  *See* ECF No. 8 at 13.

## ARGUMENT

I.     **The Court's Orders Present Controlling Issues Of Law**

    A.     **There are Substantial Grounds to Conclude that the Court Lacks Jurisdiction Over Plaintiffs' Claims**

The threshold issue for the Federal Circuit to decide will be one of jurisdiction:  whether the Court's Orders should be vacated for lack of Little Tucker Act jurisdiction because Plaintiffs do not have a cognizable illegal exaction claim.  It is settled that "a district court, when exercising jurisdiction under the Little Tucker Act, in effect sits as the Court of Federal Claims, which does not have general equitable powers."  *Doe v. United States*, 372 F.3d 1308, 1313 (Fed. Cir. 2004).  In attempting to identify a basis for monetary relief, Plaintiffs relied on an "illegal exaction" theory.  They alleged that a portion of their PACER fees constituted an "illegal exaction" because it was used for purposes not authorized by statute.

An "illegal exaction" occurs when money is "improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation."  *Norman*, 429 F.3d at 1095 (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967)).  But, as this Court recognized when it denied the United States' Motion to Dismiss, it is not enough for a claimant to allege that money was improperly paid.  To invoke the Court's jurisdiction over an illegal exaction claim, the statute causing the exaction must provide "either expressly or by 'necessary implication,' that 'the remedy for its violation entails a return of money unlawfully exacted.'"  ECF No. 11 at 6 ((quoting *Norman*, 429 F.3d at 1095) (quoting *Cyprus Amax Coal Co.*, 205 F.3d at 1373)).  In *Cyprus Amax*, for example, the Federal Circuit concluded that "the Tucker Act provided jurisdiction over an illegal exaction claim based upon the Export Clause of the

Constitution because the language of that clause 'leads to the ineluctable conclusion that the clause provides a cause of action with a monetary remedy.'" *Norman*, 429 F.3d at 1095 (quoting *Cyprus Amax*, 205 F.3d at 1373).

Unlike the claims here, a typical illegal exaction claim involves contested payments that were made involuntarily.  The "classic illegal exaction claim is a tax refund suit alleging that taxes have been improperly collected or withheld by the government." *Id.*  Similarly, in *Cyprus Amax*, the claimant challenged the collection of an excise tax.  By contrast, in *United States v. Edmondston*, 181 U.S. 500 (1901), the Supreme Court held that a buyer who had paid more than the statutory price for federal land lacked a cognizable claim for the excess payment because "the transaction was purely voluntary on his part" and the mistake was not induced by government deception. *Id.* at 515.  The only decisions finding an illegal exaction in the context of a voluntary agreement are a series of cases from the Court of Claims that involved the application of a statute governing the sale of government-owned ships to private persons.  The Court of Claims emphasized that the substantive statute "was intended to fix, by a self-operating statutory formula, the selling price of the Government's surplus ships," such that "the determination of the price was a mere mathematical calculation." *A.H. Bull S.S. Co. v. United States*, 108 F. Supp. 95, 97 (Cl. Ct. 1952); *see also Sprague S.S. Co. v. United States*, 172 F. Supp. 674, 675 (Ct. Cl. 1959) (reasoning that the sales of surplus ships were subject to a statutory price formula "comparable to a statutory schedule of public utility rates").

Plaintiffs do not have a cognizable illegal exaction claim for alleged overpayment of PACER fees.  As the government noted in moving to dismiss the Complaint, Plaintiffs conceded that liability for a PACER fee "comes only after an agreement is reached between the PACER user and the [Administrative Office]."  ECF No. 11 at 6 (citing Complaint ¶ 7 ("each person must agree

4

to pay a specific fee")).  Indeed, Plaintiffs emphasized that before accessing a particular record, a person must first agree to pay a specified fee shown on the computer screen.  *See* ECF No. 8 at 2 (Plaintiffs' motion for class certification) (providing an illustrative screenshot).

Unlike the statutory provisions at issue in the shipping cases from the Court of Claims, the relevant statutory authority—the E-Government Act of 2002—does not "fix, by a self-operating statutory formula," the fees charged for downloading documents through PACER.  *A.H. Bull S.S. Co.*, 108 F. Supp. at 97.  On the contrary, it vests the responsibility for setting fees in the Judicial Conference.  Moreover, even assuming *arguendo* that the Judiciary had used past fees for impermissible expenditures, there is no statutory formula for determining the impact that such expenditures would have had on the fees themselves.  Fees collected are available "without fiscal year limitation," 28 U.S.C. § 612(a), and the Judiciary routinely carries forward surpluses of PACER fees as reflected in the annual financial plans that the Judiciary submits to the appropriations committees.[1]  Thus, there is no basis to assume that the PACER fees would have been lower if the ostensibly impermissible expenditures had not been made.

Nor is there any other reason to conclude that Congress intended to allow the Judiciary's fee schedules or its expenditures of fees to be the subject of retrospective second-guessing in court. Because the Judiciary is not an agency within the meaning of the Administrative Procedure Act ("APA"), the fee schedules set by the Judicial Conference are not subject to APA review.  *See Wash. Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1449 (D.C. Cir. 1996); *In re Fidelity Mortgage Investors*, 690 F.2d 35, 37–38 (2d Cir. 1982).  A district court therefore could

---

[1] *See, e.g.*, ECF No. 81-1 at 30 (reporting a prior-year carryforward of $32.2 million from fiscal year 2007 and projecting a $44.5 million carryforward for fiscal year 2008); *id.* at 35 (reporting a prior-year carryforward of $26.6 million for fiscal year 2011 and projecting a $31.9 million carryforward for fiscal year 2012).

not order the Judiciary to lower the fee schedule prospectively.  The APA exemption would be undermined if PACER users could compel the Judiciary to lower fees by threatening damages actions, as Plaintiffs have tried to do here.  *See* 4/18/18 Tr. 31 (warning that Plaintiffs' counsel intend "to file a second action" if "the fee doesn't come down").

Instead of authorizing judicial review of the fee schedule, Congress required the Judicial Conference to transmit the fee schedule to Congress itself before the schedule becomes effective. *See* 28 U.S.C. § 1913 note.  Moreover, Congress has required the Judiciary to report its proposed expenditures on an annual basis to the appropriations committees.  *See, e.g.*, Judiciary Appropriations Act of 2009, § 304.  As this Court recognized, the expenditures at issue here were itemized in the annual financial plans that the Judiciary submitted to the appropriations committees.  *See* ECF No. 90 at 14–16.  Such reports, in turn, can inform the terms of Congress's annual appropriations acts for the Judiciary.  Congress's control over federal spending would be nullified if a court could retrospectively declare past expenditures invalid and, on that basis, award additional payments from the fisc.

Accordingly, there is substantial ground to conclude that Plaintiffs have no cause of action for damages, and that the Court's Orders should be vacated for lack of Little Tucker Act jurisdiction.

**B.** **Assuming Jurisdiction, There Is Substantial Ground To Conclude That The Expenditures At Issue Here Were Permissible**

Assuming that there is jurisdiction to review the Judiciary's past expenditures of PACER fees, there is substantial ground to conclude that the expenditures at issue here were permissible. The E-Government Act provides that the Judicial Conference "may, only to the extent necessary, prescribe reasonable fees … for collection by the courts … for access to information available through automatic data processing equipment."  28 U.S.C. § 1913 note.  Additionally, it provides

6

that such fees "shall be deposited as offsetting collections to the Judiciary Automation Fund pursuant to 28 U.S.C. 612(c)(1)(A) to reimburse expenses incurred in providing these services." The statute that replaced the Judiciary Automation Fund with the Judiciary Information Technology Fund requires that all fees collected under the E-Government Act be deposited in the Fund, *see* 28 U.S.C. § 612(c)(1)(A), and makes moneys in the Fund available to the Director of the Administrative Office for the procurement of information technology resources for program activities in the federal court system, without fiscal year limitation, *id*. § 612(a).

This Court correctly rejected Plaintiffs' contention that the E-Government Act includes "only the services that the [Administrative Office] is actually charging fees for as set forth in the EPA Fee Schedule, i.e., the PACER system" and related PACER services. ECF No. 89 at 25. The Court concluded, instead, that "[t]he term 'these services' could also mean any service that provides 'access to information available through automatic data processing equipment,' whether or not it is expressly part of the EPA fee schedule." *Id*. (quoting 28 U.S.C. § 1913 note). This Court emphasized that at the time the E-Government Act was passed in 2002, "PACER fees were already being used to pay for non-PACER costs," such as for CM/ECF and the Electronic Bankruptcy Noticing system," and that "nothing in the statute's text or legislative history … suggest[ed] that Congress intended to disallow the use of PACER fees for those services." ECF No. 89 at 27 (citation omitted).

This Court did not dispute that the four categories of expenditures it declared impermissible were used to "'reimburse expenses incurred' in providing 'access to information available through [automatic] data processing equipment.'" *Id*. at 29. The term "automatic data processing equipment" encompasses a broad range of information technology equipment including computers, ancillary equipment, software, support services, and related resources. *Id*. at n.4. And

the Court's description of the four categories of expenditures shows that each category consisted of expenses incurred in providing access to information through automatic data processing equipment.

For example, under the Violent Crime Control Act notification system, local law enforcement officers receive electronic notification of court documents that were previously sent to them through the mail, which notify them of changes to the case history of offenders under supervision. *See id.* at 19. Thus, that system provides local law enforcement officers with access to court information "through [automatic] data processing equipment." *Id.* at 29. Likewise, the web-based juror services system provides prospective jurors with electronic copies of court documents regarding jury service. *Id.* at 19. The State of Mississippi study allowed the State to provide the public with electronic access to its documents. *Id.* And the courtroom technology expenditures improved "the Judiciary's ability to share case evidence with the public in the courtroom during proceedings and to share case evidence electronically through electronic public access services when it is presented electronically and becomes an electronic court record." *Id.* at 14–15 (quoting the Judiciary's Financial Plan for Fiscal Year 2007). For instance, the television monitors allowed jurors and the public seated in the courtroom to view electronically exhibits and other evidence during a court proceeding. *Id.* at 41.

Although this Court did not dispute that each of these categories of expenditures consisted of services that provide "access to information available through [automatic] data processing equipment," *id.* at 29, the Court imposed an additional limitation on the permissible uses of PACER fees. The Court ruled that such fees may be used only to "provide the public with access to electronic information maintained and stored by the federal courts on its CM/ECF docketing system." *Id.* at 41. The Court indicated that it derived this limitation from a combination of

8

sources including "Congress's endorsement of the expenditures being made in 2002, in conjunction with the statutory language"; "the evolution of the E-Government Act"; and "the judiciary's practices as of the date of the Act's passage." *Id.* at 38.

There is substantial ground to conclude that this Court erred in substituting this view of the permissible uses of PACER fees for the Judiciary's contrary understanding. Under this Court's own description, the expenditures at issue here were consistent with the text of the E-Government Act note because they were made for services that provide "access to information available through [automatic] data processing equipment." ECF No. 89 at 29. That understanding is reinforced by the text of the statute that appropriates moneys in the Judiciary Information Technology Fund, which requires that all fees collected under the E-Government Act be deposited in the Fund, *see* 28 U.S.C. § 612(c)(1)(A), and broadly provides that moneys in the Fund are available to the Director of the Administrative Office without fiscal year limitation for the procurement of information technology resources for program activities in the federal court system, *id.* § 612(a). Thus, there was a sound basis for the Judiciary to determine that the expenditures at issue here were permissible, a view that was shared by the congressional committees with responsibility for monitoring such expenditures.

## II.    Immediate Appeal May Materially Advance The Ultimate Termination Of This Litigation

The remaining requirement for a § 1292(b) certification is also met, because immediate appeal should materially advance the ultimate termination of this litigation.

If the Federal Circuit accepts the government's position with respect to either of the controlling legal issues discussed above, this litigation will come to an end. By contrast, further proceedings would be time-consuming and burdensome. As explained above, there is no statutory formula for translating ostensibly impermissible past expenditures of PACER fees into damages

awards for individual PACER users.  Accordingly, the Parties agreed that "further proceedings are necessary to determine the amount of an illegal exaction, *if any*."  ECF No. 91 at 1 (emphasis added).  The Parties jointly proposed a schedule under which they would engage in five months of fact discovery and five months of expert discovery, with summary judgment motions (and possibly a bench trial) thereafter.  *Id*.  The Parties also proposed that the Court hold a status conference between the close of expert discovery and the due date for summary judgment motions, "to determine the most efficient plan for further proceedings at that point, including whether a brief bench trial may be appropriate."  *Id*.

Avoiding such protracted discovery is ample justification for an interlocutory appeal. Moreover, even if there were a viable means to determine the amount of fees that were "illegally exacted" from PACER users collectively, there is no means to determine what any individual member would have been charged for particular downloads and any attempt to determine the amounts owed to individual class members would itself be burdensome.  In moving for class certification, Plaintiffs estimated that there are nearly two million PACER accounts, approximately one-third of which are active in a given year, and that the class contains at least several hundred thousand class members.  *See* ECF No. 8 at 13.  Plaintiffs acknowledged that the vast majority of class members stand to recover only a small amount of damages.  *Id*. at 19.  Any damages calculation would have to take into account the exemption from the class definition for federal agencies (which are substantial PACER users) as well as the exclusion of PACER users that opted out of the class.  *See, e.g.*, 4/18/18 Tr. 22 (noting that Reuters, a substantial PACER user, opted out).  Thus, the amount spent in attempting to ascertain an individual damages award could easily exceed the award itself.

Therefore, the Federal Circuit should be given the opportunity to decide the controlling legal issues before the Parties' and the Court's resources are expended on further proceedings.  For the same reasons, further proceedings in this Court should be stayed pending appeal.

## CONCLUSION

For the forgoing reasons, the United States respectfully requests that the Court grant this Motion and certify its Orders of December 5, 2016, and March 31, 2018, for interlocutory appeal and find, pursuant to 28 U.S.C. § 1292(b), that the Orders involve controlling issues of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the orders may materially advance the ultimate termination of the litigation.  In addition, this Court should stay further proceedings pending appeal.

July 13, 2018

Respectfully submitted,

JESSIE K. LIU
D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN
D.C. Bar #924092
Chief, Civil Division

By:   */s/ Brian J. Field*
BRIAN J. FIELD (D.C. Bar #985577)
W. MARK NEBEKER (D.C. Bar #396739)
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
Tel: (202) 252-2551
E-mail: Brian.Field@usdoj.gov;
mark.nebeker@usdoj.gov

*Counsel for Defendant*