IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL VETERANS LEGAL
SERVICES PROGRAM, NATIONAL
CONSUMER LAW CENTER, and
ALLIANCE FOR JUSTICE, for themselves
and all others similarly situated,
     *Plaintiffs*,

v.

UNITED STATES OF AMERICA,
     *Defendant*.

Case No. 16-745-ESH

**JOINT REPORT**

The parties submit this report to provide additional information concerning the proposed certification of this Court's March 31, 2018 order (ECF No. 88) for an interlocutory appeal under 28 U.S.C. § 1292(b). Section 1292(b) allows a district court to certify an order for an interlocutory appeal if three requirements are met: "(1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion concerning the ruling exists; and (3) an immediate appeal would materially advance the litigation." *APCC Servs., Inc. v. Sprint Comm'ns Co.*, 297 F. Supp. 2d 90, 95 (D.D.C. 2003). If the district court finds that each requirement is met, it "shall so state in writing in such order," and the party seeking to appeal must then file an application with the court of appeals "within ten days after the entry of the order." 28 U.S.C. § 1292(b).

The parties agree that this Court's March 31 order satisfies each of the three requirements of § 1292(b). Although that statute does not expressly require the Court to do anything more than state that each of these requirements is met in the order itself, the general rule is that "[a] district-court order certifying a § 1292(b) appeal should state the reasons that warrant appeal," and "a thoroughly defective attempt may be found inadequate to support appeal." 16 Wright & Miller,

1

*Federal Practice & Procedure* § 3929 (3d ed. 2008). One circuit, for example, has held that a "district court's recitation of the statutory language without providing any reasoning [is] an abuse of its discretion," *White v. Nix*, 43 F.3d 374, 378 (8th Cir. 1994), while another "expect[s] the [district] court to explain *why*, rather than assert that, immediate appeal will materially advance the disposition," *Buckley v. Fitzsimmons*, 919 F.2d 1230, 1239 (7th Cir. 1991), *vacated on other grounds*, 502 U.S. 801 (1991); *see also McFarlin v. Conseco Services, LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004) ("The district court's failure to specify the controlling question or questions of law it had in mind when certifying that the case meets the requirements of § 1292(b) is a factor we may consider in deciding how to exercise our discretionary power to review."). For this reason, we will now provide a brief explanation why each requirement is satisfied here.

***Requirement #1: controlling question of law.*** A "controlling question of law is one that would require reversal if decided incorrectly or that could materially affect the course of litigation with resulting savings of the court's or the parties' resources." *APCC Servs.*, 297 F. Supp. 2d at 95–96. The controlling question in the March 31 order concerns a "question of statutory interpretation: what restrictions does 28 U.S.C. § 1913 note place on the amount the judiciary may charge in PACER fees?" ECF No. 89, at 21. That statute provides in relevant part:

> (a) The Judicial Conference may, only to the extent necessary, prescribe reasonable fees, pursuant to sections 1913, 1914, 1926, 1930, and 1932 of title 28, United States Code, for collection by the courts under those sections for access to information available through automatic data processing equipment. These fees may distinguish between classes of persons, and shall provide for exempting persons or classes of persons from the fees, in order to avoid unreasonable burdens and to promote public access to such information. The Director of the Administrative Office of the United States Courts, under the direction of the Judicial Conference of the United States, shall prescribe a schedule of reasonable fees for electronic access to information which the Director is required to maintain and make available to the public.
>
> (b) The Judicial Conference and the Director shall transmit each schedule of fees prescribed under paragraph (a) to the Congress at least 30 days before the schedule becomes effective. All fees hereafter collected by the Judiciary under paragraph (a)

as a charge for services rendered shall be deposited as offsetting collections to the Judiciary Automation Fund pursuant to 28 U.S.C. 612(c)(1)(A) to reimburse expenses incurred in providing these services.[1]

The meaning of the relevant statutory language is a pure question of law. As this Court has explained, the plaintiffs "take the position that the statute 'prohibits the [government] from charging more in PACER fees than is necessary to recoup the total marginal cost of operating PACER,'" and that the government is liable for fees it has charged in excess of this amount. ECF No. 89, at 23. The government "readily admits that PACER fees are being used to cover expenses that are not part of the 'marginal cost' of operating PACER," but the government "rejects plaintiffs' interpretation of the statute." *Id.* It "reads the statute broadly to mean that the Judicial Conference 'may charge [PACER] fees in order to fund the dissemination of information through electronic means.'" *Id.*

The Court "reject[ed] the parties' polar opposite views of the statute." *Id.* The Court declared impermissible some, but not all, of the Judiciary's expenditures of PACER fee revenues on programs other than PACER, "even though these expenses involve dissemination of information via the Internet." *Id.*

Regardless of which of these three interpretations of the statute is correct, the answer will "materially affect the course of [the] litigation." *APCC Servs.*, 297 F. Supp. 2d at 96. The Court's order "would require reversal if decided incorrectly." *Id.* at 95–96.

---

[1] The government would like to add that the statute governing the Judiciary Information Technology Fund (which replaced the Judiciary Automation Fund) requires that all fees collected under paragraph (a) of 28 U.S.C. § 1913 note be deposited in the Fund, *see* 28 U.S.C. § 612(c)(1)(A), and makes moneys in the Fund available to the Director of the Administrative Office without fiscal year limitation for the procurement of information-technology resources for program activities in the federal court system, *id.* § 612(a).

***Requirement #2: substantial ground for difference of opinion.*** The second requirement—that there must exist a substantial ground for difference of opinion—requires the court to "analyze the strength of the arguments in opposition to the challenged ruling to decide whether the issue is truly one on which there is a substantial ground for dispute." *Id.* at 98. Here, "[t]here is no controlling or persuasive precedent" interpreting the relevant statutory language, so the question is whether there is a substantial argument that the district court's interpretation is incorrect. *See Molock v. Whole Foods Mkt. Grp.*, — F. Supp. 3d —, 2018 WL 2926162 (D.D.C. June 11, 2018). Both parties in this case agree that there is, albeit for different reasons. Each side believes that its position is correct.

*The plaintiffs' position.* The plaintiffs contend that the statute authorizes fees "as a charge for services rendered," but "only to the extent necessary" to "reimburse expenses in providing the[] services" for which they are charged—providing records through PACER. 28 U.S.C. § 1913 note.

In the plaintiffs' view, this is a strong argument for several reasons: *First*, it is supported by the plain text of the statute. *Second*, unlike the government's position, it gives effect to Congress's decision to amend the law in 2002 to allow fees "only to the extent necessary." *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) ("When Congress amends legislation, courts must 'presume it intends [the change] to have real and substantial effect.'"). *Third*, the legislative history shows that Congress added this language to prevent the Administrative Office from "charg[ing] fees that are higher than the marginal cost of disseminating the information," as it had been doing, so that records would be "freely available to the greatest extent possible." ECF No. 52-16, at 3. *Fourth*, Senator Joseph Lieberman, the sponsor of the 2002 legislation amending the statute, agrees with the plaintiffs that "the law permits the AO to charge fees 'only to recover the direct cost of distributing documents via PACER.'" *Id.* at 6. *Fifth*, even if the statute were ambiguous, the Supreme Court has held that Congress "must indicate clearly its intention to delegate to the Executive [or the

4

Judiciary] the discretionary authority to recover administrative costs not inuring directly to the benefit" of those paying the costs. *Skinner v. Mid-Am. Pipeline Co.*, 490 U.S. 212, 224 (1989). Congress has not done that here. *Finally*, the constitutional-doubt canon also requires that any ambiguity be resolved in the plaintiffs' favor, to avoid the potential First Amendment concerns of allowing the government to "profit from imposing" a fee on access to public records, *Sullivan v. City of Augusta*, 511 F.3d 16, 38 (1st Cir. 2007), rather than charge fees "only to the extent necessary" to "defray administrative expenses." *Citizens Action Grp. v. Powers*, 723 F.2d 1050, 1056 (2d Cir. 1983).

*The government's position.* As noted, § 1913 note provides that the Judicial Conference "may, only to the extent necessary, prescribe reasonable fees . . . for collection by the courts . . . for access to information available through automatic data processing equipment." 28 U.S.C. § 1913 note. Additionally, it provides that such fees "shall be deposited as offsetting collections to the Judiciary Automation Fund [subsequently replaced by the Judiciary Information Technology Fund] pursuant to 28 U.S.C. § 612(c)(1)(A) to reimburse expenses incurred in providing these services." The statute that governs the Judiciary Information Technology Fund requires that all fees collected be deposited in the Fund, *see* 28 U.S.C. § 612(c)(1)(A), and makes moneys in the Fund available to the Director of the Administrative Office without fiscal year limitation for the procurement of information technology resources for program activities in the federal court system, *id.* § 612(a). In the government's view, these statutes give the Judiciary the discretion to determine the appropriate level of PACER fees and to set those fees at the level necessary to support the Judiciary's electronic public access programs.

The Judiciary's interpretation finds support in both the text of the statutes and also in Congress' repeated approvals of the Judicial Conference's statutory interpretation. *First*, the plain language of § 1913 note authorizes the Judicial Conference to charge PACER fees at the level it deems necessary to provide information to the public through electronic means. This interpretation

is reinforced by § 612, which requires that PACER fees be deposited in the Judiciary Information Technology Fund and makes moneys in the Fund available for the procurement of information technology resources for program activities in the federal court system. Contrary to plaintiffs' suggestion, nothing in these statutes can be fairly read to limit this expenditure authorization to only the cost of operating PACER. And in the expenditures at issue here, the Judicial Conference has used PACER fee revenue exclusively for programs that disseminate information to the public through electronic means. *Second*, legislative actions before and after the E-Government Act confirm the accuracy of the Government's statutory interpretation. Specifically, the Judicial Conference has routinely informed Congress (and the public) that it interprets its expenditure authority to authorize it to expend PACER fee revenue for projects beyond just the operation of PACER. In fact, every year the Judicial Conference identifies for Congress each planned expenditure before the expenditure is made. And in every instance, Congress (or a committee) has approved the planned use of PACER fee revenue. In addition to approving each proposed application of PACER fee revenue, at no point has Congress or a committee ever informed the Judicial Conference that its interpretation of its expenditure authority was incorrect.

Although the Court agreed with the government that PACER fee revenue may be used to fund more than just PACER, it rejected the argument that PACER fee revenue may be used to fund any program that "disseminat[es] . . . information through electronic means." ECF No. 89, at 29. As the government stated in its Motion to Certify, there are substantial grounds to conclude that the government's interpretation is correct and that the Judiciary's uses of PACER fee revenue are permissible. *See* ECF No. 99-1 at 6.[2]

---

[2] The government wishes to add that it believes that certification of the Court's summary judgment order will allow the Federal Circuit to address the antecedent question of whether

***Requirement #3: materially advance the litigation.*** The final requirement of § 1292(b) is also met, because an immediate appeal would likely "conserve judicial resources and spare the parties from possibly needless expense if it should turn out that this Court's rulings are reversed." *APCC Servs.*, 297 F. Supp. 2d at 100. The text of § 1292(b) requires only that an appeal "may" materially advance the termination of the litigation. In this case, it would do so if the Federal Circuit were to adopt either the plaintiffs' interpretation or the government's interpretation. In either case, the parties would have been spared the need to engage in further discovery concerning the costs of audio equipment—a question that is relevant only under this Court's interpretation of the statute. Likewise, if the Federal Circuit were to reject this Court's interpretation, the ruling would obviate the potential need to retain experts to determine whether PACER fees would have been lower had the Judiciary spent the fees consistent with the statute as the Court interpreted it. Rather than proceed to the damages phase based on an interpretation of the statute that could be later reversed on appeal, thus wasting time and resources, it is more efficient to allow the Federal Circuit an opportunity first to determine what the statute means.

***Timing.*** Finally, the parties wish to make a couple of points about timing. The text of § 1292(b) requires that the party seeking an appeal file an application with the court of appeals "within ten days after the entry of the order" from which that party is appealing. Because the Court's summary-judgment order was entered on March 31, the parties cannot file an application within ten days of that order. But Federal Rule of Appellate Procedure 5(a)(3) allows the Court to

---

plaintiffs have a cognizable claim for damages under the Little Tucker Act, 28 U.S.C. § 1346(a). The government intends to raise this threshold jurisdictional question on appeal.

In response, the plaintiffs wish to note that, to the extent that the government's argument is a question of subject-matter jurisdiction, the government will be free to make that argument on appeal. To the extent that the argument is not jurisdictional, it lies outside the scope of the order (and thus the scope of any appeal), and has not been preserved in this litigation in any event.

restart the 10-day clock: "If a party cannot petition for appeal unless the district court first enters an order granting permission to do so or stating that the necessary conditions are met, the district court may amend its order, either on its own or in response to a party's motion, to include the required permission or statement. In that event, the time to petition runs from entry of the amended order."

This rule is fully applicable here. The Court's March 31 order does not contain the statement required by § 1292(b). (And for good reason: A "district judge naturally looks to the parties" for advice "on whether to certify an order for an immediate appeal, and they can hardly do that until they have seen the order—until it has been issued, in other words." *Weir v. Propst*, 915 F.2d 283, 286 (7th Cir. 1990).) Thus, the Court could formally amend its March 31 order to include an explanation of why an interlocutory appeal is warranted. Or it could issue a separate order certifying an appeal and setting forth the reasons for doing so, which would "in effect amend[] [the previous] order to include the required statement, and by doing so [would] start[] the ten-day clock running." *Id.* at 287.

Because the 10-day clock will be triggered as soon as this Court certifies its order for an interlocutory appeal, the parties respectfully request that the Court wait a few weeks to issue its certification to allow the parties enough time to prepare their applications in light of competing deadlines and summer travel plans. Were this Court to issue its order on or around August 13, the parties would have sufficient time to adequately prepare their applications. In the interim, the plaintiffs intend to file a short response to the government's pending motion indicating their non-opposition with respect to certification of the Court's March 31 order, and their opposition with respect to certification of the Court's 2016 order denying the government's motion to dismiss.

8

Respectfully submitted,

By:    */s/ Deepak Gupta*
Deepak Gupta (D.C. Bar No. 495451)
Jonathan E. Taylor (D.C. Bar No. 1015713)
GUPTA WESSLER PLLC
1900 L Street, NW, Suite 312
Washington, DC 20036
(202) 888-1741
*deepak@guptawessler.com, jon@guptawessler.com*

William H. Narwold (D.C. Bar No. 502352)
MOTLEY RICE LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
(860) 882-1681
*bnarwold@motleyrice.com*

Elizabeth Smith (D.C. Bar No. 994263)
MOTLEY RICE LLC
401 9th Street, NW, Suite 1001
Washington, DC 20004
(202) 232-5504

Meghan S.B. Oliver (D.C. Bar No. 493416)
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
(843) 216-9000

*Counsel for Plaintiffs*


JESSIE K. LIU
D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN
D.C. Bar #924092
Chief, Civil Division

By:    */s/ Brian J. Field*
BRIAN J. FIELD (D.C. Bar #985577)
W. MARK NEBEKER (D.C. Bar #396739)
Assistant United States Attorney
555 4th Street, N.W.

9

Washington, D.C. 20530
Tel: (202) 252-2551
E-mail: Brian.Field@usdoj.gov;
mark.nebeker@usdoj.gov

*Counsel for Defendant*

July 20, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2018, I filed this joint report through this Court's CM/ECF system, which will send a notice of electronic filing to all counsel required to be served.

*/s/ Deepak Gupta*
Deepak Gupta