## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

**NATIONAL VETERANS LEGAL
SERVICES PROGRAM**, *et al.*,

             **Plaintiffs,**

**v.**

**UNITED STATES OF AMERICA,**

             **Defendant.**

</td><td>

**Civil Action No. 16-745 (ESH)**

</td></tr>
</table>

## MEMORANDUM OPINION

The Court issues this Memorandum Opinion in further support of its Order granting defendant's Motion to Certify the Court's Order of March 31, 2018 for Interlocutory Appeal. (*See* Order, ECF No. 104; Defs.' Mot. to Certify, ECF No. 99; March 31, 2018 Order, ECF No 88.)

## BACKGROUND

This case concerns the lawfulness of the fees charged by the federal judiciary for the use of its Public Access to Court Electronic Records (PACER) system.  Plaintiffs are PACER users who contend that the fees charged from 2010 to 2016 exceeded the amount allowed by federal law, *see* 28 U.S.C. § 1913 note (enacted as § 404 of the Judiciary Appropriations Act, 1991, Pub. L. 101-515, 104 Stat. 2101 (Nov. 5, 1990) and amended by § 205(e) of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002)).  They brought suit under the Little Tucker Act, seeking monetary relief from the excessive fees.

On December 5, 2016, the Court denied defendants' motion to dismiss (*see* Order, ECF

No. 24), and, on January 24, 2017, it granted plaintiffs' motion for class certification (*see* Order, ECF No. 32).  Pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), the Court certified a class consisting of:

> All individuals and entities who have paid fees for the use of PACER between April 21, 2010, and April 21, 2016, excluding class counsel in this case and federal government entities.

The parties then filed cross-motions for summary judgment on liability, which, they agreed, depended on a single and novel question of statutory interpretation: "what restrictions does 28 U.S.C. § 1913 note place on the amount the judiciary may charge in PACER fees?" *Nat'l Veterans Legal Servs. Program v. United States*, 291 F. Supp. 3d 123, 138 (D.D.C. 2018). The parties advocated for starkly different interpretations of the statute, *id*. at 139-40, neither of which the Court found persuasive.  In the end, it arrived at its own interpretation, which led to the denial of plaintiffs' motion and the granting in part and denying in part of defendant's motion.  (*See* Order, ECF No. 89.)

At the first status conference after deciding the cross-motions for summary judgment, the Court asked the parties to consider whether the March 31, 2018 Order should be certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), given the fact that the exact determination of damages would likely require a lengthy period of fact and expert discovery, additional summary judgment briefing and potentially a bench trial.  (*See* Tr., Apr. 18, 2018, at 5, 6, 13, 20; *see also* Joint Status Report Proposing a Schedule to Govern Further Proceedings, ECF No. 91 (proposing an additional five months of fact discovery, then five months for expert discovery, to be followed by summary judgment briefing or a bench trial).)  Plaintiffs readily agreed that certification would be appropriate and desirable.  (*Id*. at 21.)  The government indicated that it needed additional time to respond in order to seek the necessary approval from the Solicitor

General.  (*Id*. at 20.)

On July 13, 2018, the parties filed a joint status report advising the Court that "the Solicitor General has authorized interlocutory appeal in this case."  (Joint Status Report at 2, ECF No. 98.)  That same day, defendant filed the pending motion to certify the March 31, 2018 Order.[1]  At the status conference on July 18, 2018, and in their written response filed on July 27, 2018, plaintiffs noted their continued belief that the March 2018 Order should be certified.  (*See* Pls.' Resp., ECF No. 102.)

## ANALYSIS

A district judge may certify a non-final order for appeal if it is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); *see Z St. v. Koskinen*, 791 F.3d 24, 28 (D.C. Cir. 2015).  The decision whether to certify a case for interlocutory appeal is within the discretion of the district court.  *In re Kellogg Brown & Root, Inc*., 756 F.3d 754, 761 (D.C. Cir. 2014).  If the district court finds that each requirement is met, it "shall so state in writing in such order," and the party seeking to appeal must then file an application with the Court of Appeals "within ten days after the entry of the order."  28 U.S.C. § 1292(b).

Although the statute does not expressly require the Court to do anything more than state that each of these requirements is met in the order itself, the general rule is that "[a] district court order certifying a § 1292(b) appeal should state the reasons that warrant appeal," and "a

---

[1] Defendants' motion also sought certification of the December 5, 2016 Order denying their motion to dismiss.  The Court explained in open court during the status conference on July 18, 2018, why it would not certify that Order, but noted that defendant was free to raise a challenge to the Court's subject matter jurisdiction at any time.  (*See* Tr., July 18, 2018.)

thoroughly defective attempt may be found inadequate to support appeal." 16 Wright & Miller,

Federal Practice & Procedure § 3929 (3d ed. 2008).  Accordingly, the Court sets forth herein the

basis for its conclusion that the March 31, 2018 Order satisfies each of the three requirements of

§ 1292(b).

### 1.      Controlling Question of Law

The first requirement for § 1292(b) certification is that the order involve a "controlling

question of law."  "[A] 'controlling question of law is one that would require reversal if decided

incorrectly or that could materially affect the course of litigation with resulting savings of the

court's or the parties' resources.'" *APCC Servs. v. Sprint Communs. Co*., 297 F. Supp. 2d 90, 95–

96 (D.D.C. 2003) (quoting *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 233 F. Supp.

2d 16, 19 (D.D.C. 2002)).  The March 31, 2018 Order involves a controlling question of law

under either prong.

The parties' cross-motions for summary judgment presented the Court with a pure legal

issue -- the proper interpretation of 28 U.S.C. § 1913 note.  That statute provides, in relevant

part:

> The Judicial Conference may, only to the extent necessary, prescribe reasonable
> fees, pursuant to sections 1913, 1914, 1926, 1930, and 1932 of title 28, United
> States Code, for collection by the courts under those sections for access to
> information available through automatic data processing equipment. These fees
> may distinguish between classes of persons, and shall provide for exempting
> persons or classes of persons from the fees, in order to avoid unreasonable
> burdens and to promote public access to such information. The Director of the
> Administrative Office of the United States Courts, under the direction of the
> Judicial Conference of the United States, shall prescribe a schedule of reasonable
> fees for electronic access to information which the Director is required to
> maintain and make available to the public.
>
> (b) The Judicial Conference and the Director shall transmit each schedule of fees
> prescribed under paragraph (a) to the Congress at least 30 days before the
> schedule becomes effective. All fees hereafter collected by the Judiciary under
> paragraph as a charge for services rendered shall be deposited as offsetting

4

collections to the Judiciary Automation Fund pursuant to 28 U.S.C. 612(c)(1)(A) to reimburse expenses incurred in providing these services.

Plaintiffs took the position that the statute prohibits the government from charging more in PACER fees "than is necessary to recoup the total marginal cost of operating PACER,'" and that the government is liable for fees it has charged in excess of this amount. *Nat'l Veterans Legal Servs. Program*, 291 F. Supp. 3d at 139. The government "readily admit[ted] that PACER fees are being used to cover expenses that are not part of the 'marginal cost' of operating PACER," but countered that the statute allows the government to "charge [PACER] fees in order to fund the dissemination of information through electronic means," which was exactly what it had done. *Id.* at 140. The Court adopted neither view, concluding the statute did not preclude the use of PACER fees to cover certain expenses beyond the marginal cost of operating PACER, but that certain uses of PACER fees were impermissible. *Id*. at 140-150. Thus, if the Court's interpretation is incorrect, the March 31, 2018 Order would require reversal – one of the prongs of the definition of a "controlling question of law."

In addition, regardless of which of these three interpretations of the statute is correct, the answer will "materially affect the course of [the] litigation." If the Federal Circuit were to reverse and adopt defendant's view, there would be no liability and the case would be over. If it were to reverse and adopt plaintiffs' view or affirm this Court, the case would continue, but the nature of what would follow would differ significantly. If the Circuit were to adopt plaintiffs' interpretation, the government would be liable for the difference between the approximately $923 million in PACER user fees collected from 2010 to 2016 and the "marginal cost" of operating PACER. Therefore, the main issue would be determining the marginal cost of operating PACER. Plaintiffs concede that at least $129 million was part of the "marginal cost"

of operating PACER, while defendant admits that at least $271 million was not,[2] and as to the

remaining $522 million the parties agree "at least some" is not part of the "marginal cost," but

there is no agreement as to how much of that $522 million is part of the marginal cost.[3]  On the

other hand, if the Federal Circuit affirms this Court's Order, there will be no need to determine

the marginal cost of operating PACER, for the only issue unresolved by the Court's opinion is

the precise amount spent from PACER fees on impermissible expenditures.[4]  These vastly

different possible outcomes lead to the conclusion that immediate review of the March 31, 2018

Order will materially affect the course of this litigation with resulting savings of time and

resources.

Accordingly, the March 31, 2018 Order involves a "controlling question of law."

### 2.    Substantial ground for difference of opinion

The second requirement for § 1292(b) certification is that there must "exist a substantial

ground for difference of opinion."  "A substantial ground for difference of opinion is often

established by a dearth of precedent within the controlling jurisdiction and conflicting decisions

in other circuits."  *APCC Servs.*, 297 F. Supp. 2d at 97.  Here, there is a complete absence of any

precedent from any jurisdiction.  In addition, although the Court ultimately found the arguments

---

[2] Defendant admits that none of the money spent on EBN, the State of Mississippi study, the VCCA Notification System, and Web-Based Juror Services was part of the "marginal cost" of operating PACER,

[3] Defendant admits that "at least some of the money" spent on CM/ECF, Telecommunications, Court Allotments, and Courtroom Technology is not part of the "marginal cost" of operating PACER.

[4] Based on the current record, that amount is approximately $192 million.  This number reflects the total expenditures from 2010 to 2016 for the State of Mississippi study ($120,998); the Violent Crime Control Act notification system ($3,650,979); Web-Based Juror Services ($9,443,628); and Courtroom Technology ($185,001,870), less the expenditures made for digital audio equipment, including software ($6,052,647).

in favor of each parties' position unpersuasive, this Court's opinion made clear that these arguments are not without merit and that "the issue is truly one on which there is a substantial ground for dispute." *APCC Servs.*, 297 F. Supp. 2d at 98; *see also Molock v. Whole Foods Mkt. Grp.*, 2018 WL 2926162, at *3 (D.D.C. June 11, 2018). Accordingly, the Court concludes that there exists a substantial ground for difference of opinion on the issue resolved by the March 31, 2018 Order.

### 3.      Materially advance the litigation

The third requirement for § 1292(b) certification is that an immediate appeal will "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "To satisfy this element a movant need not show that a reversal on appeal would actually end the litigation. Instead, the relevant inquiry is whether reversal would hasten or at least simplify the litigation in some material way, such as by significantly narrowing the issues, conserving judicial resources, or saving the parties from needless expense." *Molock*, 2018 WL 2926162, at *3 (citing *APCC Servs.*, 297 F. Supp. 2d at 100). Here, there is no question that this requirement is satisfied. As previously explained, if the Court's Order is reversed in the government's favor, the litigation will be over. If it is reversed in plaintiffs' favor, it would significantly alter the issues to be addressed. Either outcome now, instead of later, would conserve judicial resources and save the parties from needless expenses. Thus, before proceeding to a potentially lengthy and complicated damages phase based on an interpretation of the statute that could be later reversed on appeal, it is more efficient to allow the Federal Circuit an opportunity first to determine what the statute means. Accordingly, the Court concludes that an immediate appeal will "materially advance the ultimate termination of the litigation."

## CONCLUSION

Having concluded that the March 31, 2018 Order satisfies all three requirements for §1292(b) certification, the Court will exercise its discretion and certify that Order for immediate appeal.  A separate Order accompanies this Memorandum Opinion.



ELLEN S. HUVELLE
United States District Judge

DATE:  August 13, 2018