UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **NATIONAL VETERANS LEGAL** | ) | |
| **SERVICES PROGRAM,** | ) | |
| | ) | Civil Action |
| **Et al.,** | ) | No. 16-745 |
| | ) | |
| **Plaintiffs,** | ) | July 18, 2018 |
| | ) | 12:00 p.m. |
| **v.** | ) | |
| | ) | Washington, D.C. |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

*TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS*
*BEFORE THE HONORABLE ELLEN SEGAL HUVELLE,*
*UNITED STATES DISTRICT COURT JUDGE*

APPEARANCES:

   For the Plaintiffs:     **Jonathan E. Taylor, Esq.**
                                   GUPTA WESSLER PLLC
                                   1900 L Street, NW
                                   Suite 312
                                   Washington, DC 20036
                                   (202) 888-1741
                                   Deepak Gupta, Esq.

                                   **Meghan S.B. Oliver, Esq.**
                                   MOTLEY RICE, LLC
                                   28 Bridgeside Blvd.
                                   Mt. Pleasant, SC 29464
                                   (843) 216-9492
                                   Fax: (843) 216-9430

   For the Defendant:     **Brian J. Field, Trial Attorney**
                                   U.S. ATTORNEY'S OFFICE
                                   Civil Division
                                   555 Fourth Street, NW
                                   Washington, DC 20530
                                   (202) 252-2551
                                   Fax: (202) 234-2806
                                   Email: Brian.field@usdoj.gov
                                   William Mark Nebeker, Esq.

APPEARANCES (Cont.):

For the Defendant:     **William Mark Nebeker, Trial Attorney**
                       U.S. ATTORNEY'S OFFICE
                       Civil Division
                       555 Fourth Street, NW
                       Washington, DC 20530
                       (202) 252-2536
                       Fax: (202) 252-2599
                       Email: Mark.nebeker@usdoj.gov

                       **William Myers, Trial Attorney**
                       U.S. ATTORNEY'S OFFICE
                       Civil Division
                       555 Fourth Street, NW
                       Washington, DC 20530
                       Email: William.myers@usdoj.gov


Court Reporter:        **Scott L. Wallace, RDR, CRR**
                       Official Court Reporter
                       Room 6503, U.S. Courthouse
                       Washington, D.C. 20001
                       202.354.3196
                       scottlyn01@aol.com


Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

<u>**AFTERNOON SESSION, JULY 18, 2018**</u>

(12:11 p.m.)

    THE COURT:  Good afternoon.

    ALL PARTIES PRESENT:  Good afternoon.

    THE COURTROOM CLERK:  Your Honor, this is civil action 16-745, *National Veterans Legal Services Program et al., versus United States of America*.  Counsel, please approach the podium and identify yourselves for the record introducing the parties at your table.

    MR. TAYLOR:  Hi, Judge Huvelle.  Jonathan Taylor for the plaintiffs.

    THE COURT:  Good afternoon.

    MR. TAYLOR:  Good afternoon.  And with me at counsel table are Meghan Oliver from Motley Rice and Deepak Gupta from Gupta Wessler.

    THE COURT:  Good afternoon.

    MR. FIELD:  Good afternoon, Your Honor.  Brian Field for the defendant, and with me at the table is William Myers from the Administrative Office of U.S. Courts and Mr. Nebeker from the U.S. Attorney's Office.

    THE COURT:  Good afternoon.  All right.  Now, it's getting close, so I don't know exactly what plaintiff's position is in response to the status.  The defendants have made a motion to certify both of my orders for an interrogatory appeal to the circuit, and I have a joint status report that was filed also at

1    the same time, and I think the plaintiff said they were going to

2    keep us in suspense until today.

3         MR. TAYLOR:  Well, Your Honor, we have not yet had the

4    opportunity to file a response to the government's motion to

5    certify the two orders of this Court, and we hadn't seen the

6    motion until Friday, so I think -- I'm hesitant to say too much

7    about our position, but --

8         THE COURT:  Well, today's the day to say it, so try to get

9    over your hesitancy.

10        MR. TAYLOR:  Sure.  I would say that, as we noted in the

11   status report, we are not planning to oppose certification of

12   this Court's summary judgment order from March.

13        THE COURT:  Right.

14        MR. TAYLOR:  And I think we had made that clear in

15   previous filings and in previous hearings, but I think what came

16   as a surprise to us was the government's motion to certify an

17   order of this Court from 2016, and that is the --

18        THE COURT:  And I think I have to have some input on that

19   as well.  Can you just clarify for me?  So, let's assume that

20   we're at -- at a minimum, everybody's agreed as to the March

21   order.  I came up with certain figures with one question mark.

22   That was the audio in the courtroom.  And do we have a figure for

23   each of the years that we were then incorporated so they don't

24   think we have a loose end up there?  We did have some discovery,

25   and I think -- it says here that defendant provided plaintiffs

1    with a summary of expenditures related to the audio equipment

2    showing 5.8 for six years, I think it reads.  Is that correct?

3          MR. FIELD:  May I?

4          MR. TAYLOR:  Sure.

5          MR. FIELD:  Your Honor, you're correct.  That was the

6    initial figure that we had provided, I believe, to the Court and

7    to plaintiff.  One thing -- to plaintiffs, and one thing I noted

8    in preparing for this morning is when we actually add up the

9    totals in the discovery documents that we provided to plaintiff,

10   the total is actually 6.052, and I don't have it broken out by

11   year.  We would be happy to provide the Court in a supplement

12   this week what that would be per year.

13         THE COURT:  6.52?

14         MR. FIELD:  6.052, and plaintiffs have that.  That's just

15   the addition of -- there were some software expenditures, as well

16   as the equipment.

17         THE COURT:  So all relating to the audio?

18         MR. FIELD:  Exactly.

19         THE COURT:  And you can give that to me, because I believe

20   I didn't look back.  Allison, correct me if I'm wrong, but we did

21   it by year, our saying that X amount was spent in my view

22   inconsistently with the statute by year?

23         MR. FIELD:  If memory serves me correctly, I do believe

24   that it was broken out by year, but we're happy to provide you

25   with the yearly totals.

1          THE COURT:  I think so.

2          MR. FIELD:  That came to the 6.052.

3          THE COURT:  I think the way it goes, still focusing on

4    March, I can't just sign your order.  I have to write something

5    to explain why I think -- my view is that -- and it's not

6    inconsistent with your motion, is that you could be right, the

7    defendants, in which case you owe nothing for any year.

8    Plaintiff could be right, and I think you're talking about a

9    hundred million a year, thereabouts, and if I'm right, then it

10   could be something far less than the hundred million a year, and

11   if I'm right, we have in front of us much more discovery and

12   debate about whether or not certain expenses belong here or where

13   or how much the expenses are or whether or not there are other --

14   there may be other issues that -- tell me what would happen in

15   your mind if I were lucky enough to be sort of affirmed.

16          MR. TAYLOR:  The --

17          THE COURT:  What would be the subsequent proceedings?

18          MR. TAYLOR:  The subsequent proceedings, I believe, would

19   be those that we outlined in the status report or two ago, which

20   would be to proceed to discovery to determine whether or not,

21   taking the Court's opinion into account, whether or not the Pacer

22   fee itself would have been lower, and if so, by how much.

23          THE COURT:  So, you would be redefining what is a

24   reasonable Pacer fee.  Whether or not you get that in discovery,

25   I don't know.  I think they would argue -- perhaps not, but would

1    the Pacer fee be lower?  Anything else I can --

2         MR. TAYLOR:  And if so, by how much?

3         THE COURT:  And anything else?

4         MR. TAYLOR:  I believe that that is -- I would reserve the

5    ability to revisit this if we find ourselves in that

6    circumstance, but I believe that was the scope of our discovery

7    that we --

8         THE COURT:  I thought you thought it would take a long

9    time.  I can't remember.

10        MR. TAYLOR:  Yes, we did, in fact, think it would take a

11   while.  There was going to be some discovery.  Plaintiffs wanted

12   some discovery into each of the categories to confirm that we are

13   what we represented as falling in one category, did in fact fall

14   into that category, and then there would be expert discovery on

15   whether or not taking out the expenses that this Court deemed to

16   be unlawful would have altered the Pacer fee.  That's where the

17   expert discovery we talked about -- and then we discussed -- we

18   proposed I believe -- I believe we included a proposal for

19   summary judgment briefing at that point with the caveat that

20   maybe we would, you know, decide instead to pursue just a short

21   bench trial or something of that nature.

22        THE COURT:  Is this case subject to a jury trial if

23   there's not an agreement about anything?  Was there a jury demand

24   made?

25        MS. OLIVER:  I don't believe so.

1      MR. TAYLOR:  My recollection is that there was not, but I

2  don't have it in front of me.

3      THE COURT: But there would still have to be a judge trial

4  on the issue of, really -- if my definitions are correct -- what

5  the figures are.  We did not get down to the nitty-gritty of

6  damages.  We only had -- so whether things are properly

7  categorized and anything else from the plaintiffs' point of view

8  that would need to be concerned if we are taking out certain

9  categories relating to ECF?  You wanted to challenge whether

10  things were properly removed from ECF or properly put in ECF?

11      MS. OLIVER:  We did.  We wanted to get some more

12  information about what -- we wanted to drill down a little

13  deeper.  We feel like the categories that were in the documents

14  before the Court when you decided the summary judgment motions

15  were, perhaps, a level or two more general than we were looking

16  for.  So we wanted to get some more detailed information akin to

17  the information that we got on courtroom technology and digital

18  audio recording equipment.

19      THE COURT:  Anything else about like experts or -- they

20  would have an expert about whether Pacer fees would be lower

21  or --

22      MS. OLIVER:  Yes, I think we were also anticipating expert

23  work and the possibility of a deposition or two to get some

24  additional information to clarify some of what was in the more

25  specific evidence about what the fees were used for.

1    THE COURT:  I'm not sure I understand what you're saying.

2  I mean --

3    MS. OLIVER:  So, they produced -- I'll use the courtroom

4  audio as an example.  It's dozens of pages of acronyms and dollar

5  amounts.  I think we can't look at some of those acronyms and

6  understand what they mean, for example, so how we go about

7  getting to the bottom of that, I guess, is perhaps open for

8  discussion at a later date.

9    THE COURT:  Well, and so, if in fact this one called the

10  middle road is adopted by the circuit, which is, who knows, no

11  predictions can be made, you would be trying to figure out

12  whether or not things are properly put in the category of ECF.

13  You would also be trying to figure out whether -- I wasn't sure

14  if you were repeating that when you say what the fees are used

15  for.

16    MS. OLIVER:  Yes.

17    THE COURT:  Was that a different category?

18    MS. OLIVER:  Yes -- no.  What was included within the ECF

19  category.

20    THE COURT:  Okay.  So, were the fees used for ECF, I

21  guess.  Did you want to add something, Mr. Taylor?

22    MR. TAYLOR:  Yeah, just real quickly.  I wanted to clarify

23  that I think our position is, what we're envisioning, were this

24  court to be affirmed, is that on remand, then, you would take the

25  delta between what the statute authorizes in fees and then what

1  was actually charged, and that that would be the excess and that,

2  in other words, would be the damages, and then there would be a

3  pro rata distribution of those damages.  And I think what the

4  government is envisioning is kind of a second inquiry after

5  you've determined the excess into whether that would have made

6  any difference in the actual fee charge, and you can characterize

7  that as a legal dispute or asa factual dispute, but to the extent

8  it were a factual dispute, we would want to have experts.

9      THE COURT:  Well, certainly I think they're saying it's a

10  factual dispute, are you not?

11      MR. FIELD:  Yes, Your Honor.

12      THE COURT:  If they're saying that's a factual dispute.

13  But you're also raising, for lack of a better word, a factual

14  dispute about whether chunks are properly characterized as ECF.

15  I mean, I had expenses that were clearly covered, Pacer fees for

16  running Pacer.  The middle ECF and the last category which

17  included court technology, et cetera, so you're wondering whether

18  we've put too much in the ECF bucket, and that is a factual

19  issue.  So, that may not be subject to experts, but it's

20  certainly the same way you drilled down for -- on the issue of

21  court recording audio.

22      MS. OLIVER:  Yes.

23      THE COURT:  So now I want to discuss this other -- the

24  earlier December 5th.  To certify an order, I didn't address the

25  issue that you're raising now.  I looked back at the pleadings

1   and I looked back at my opinion.  I didn't address the question

2   of subject matter jurisdiction.  I addressed, for lack of a

3   better word, an exhaustion issue, and so to certify that opinion

4   isn't going to get you anywhere in terms of subject matter

5   jurisdiction, which is what you're arguing.

6          My understanding of the law is you're free at any time

7   anywhere to raise subject matter jurisdiction, so if they take

8   the case, the ball's in your court, but I don't think, when you

9   look at the pleadings and you look at my opinion, either I

10  misunderstood and nobody told me that, what you are arguing.  I

11  mean, you know, if you look at the opinion that I issued back in

12  2016, December 5, 2016, I talked about the question of whether

13  you're required to correct the bill, and that's pretty consistent

14  with the pleadings.  It wasn't a question of whether or not this

15  was an illegal extraction and whether the -- I have -- I don't

16  know who had subject matter, whether I had subject matter

17  jurisdiction or the Court of Claims or either.

18         MR. FIELD:  So, if I can take your first question first,

19  and that's you're entirely correct that subject matter

20  jurisdiction is something that we can raise or the government can

21  raise any time.  The reason that we're asking to certify both

22  orders going up is -- It really is a matter of efficiency.  If we

23  go to the Federal Circuit and request interlocutory appeal and

24  indicate that the department is seeking to raise the

25  jurisdictional question and also addressing the Court's liability

1    determination, if plaintiffs were to argue that it's not, in

2    fact, jurisdictional, or if the Federal Circuit were to conclude

3    that it's not, in fact, a jurisdictional argument, we would be

4    advancing an argument then that is not jurisdictional.  They

5    might see that the District Court did not certify the motion to

6    dismiss order and ultimately decide that this case is better left

7    with this Court until we reach final judgment.  It's really an

8    effort to ensure that that question is before the Federal

9    Circuit.  We believe it's jurisdictional and that we will be able

10   to raise it in any event, but we think that it is a safer course

11   to also have the Court's decision on the motion to dismiss up as

12   well so that we have it as a jurisdictional argument and also an

13   argument that was raised in the papers for the motion to dismiss,

14   admittedly -- or you are correct, Your Honor, that that is not

15   the grounds on which this court decided the motion to dismiss, at

16   least not --

17          THE COURT:  Well, I don't want to go back and debate with

18   you, but I did look at the pleadings, and I'm not surprised that

19   I ruled -- I didn't mention it.  I mean, really, the argument, it

20   had to do with the contract that says tell us when we billed you

21   incorrectly.

22          MR. FIELD:  The motion to dismiss also says that the

23   statute in question does not expressly or by implication provide

24   for the return of reasonable fees as the remedy, relying on

25   *Norman* at page 18.  I don't think I'm -- I'm not intending to

1   push back on the notion that it did not feature prominently in

2   our motion to dismiss.

3        THE COURT:  Well, yes.  I mean, I quoted the same

4   language, but --

5        MR. FIELD:  But we go -- the government went further and

6   said this language standing alone is insufficient to create

7   remedy of return of all possible claims, which is, I think,

8   making the next argument after just reciting the standards for

9   *Norman*.

10       THE COURT:  Can I see the pleading then?  What was the

11  page again?

12       MR. FIELD:  Page 18 is the final sentence in the -- I

13  guess the only full paragraph on that page.

14       THE COURT:  I don't know how it helps.  Frankly, it seems

15  to me you aught to address this head-on with the Circuit, say I

16  don't have jurisdiction.  I don't think I missed the boat here

17  because you're relying on -- I said another court had already

18  decided this issue.

19       MR. FIELD:  And I don't intend to suggest that the boat

20  was missed, Your Honor.  I think we readily acknowledge that it

21  was not the core portion of our 12(b)(1) argument.

22       THE COURT:  Yeah.  I mean, look at your first paragraph.

23  "Plaintiffs do not allege that they've satisfied this contractual

24  obligation" so that it's a 12(b)(6) failure to state a claim.

25  This isn't a 12(b)(1) argument.  I don't see any reference to

1   12(b)(1).  Is subject matter 1 or 2?  1.  Okay.  Well, let's hear

2   from the plaintiff.  I mean, it gives me great pause to make

3   it -- I have to write something, and I don't feel as though I

4   can --

5       MR. FIELD:  I'm not certain that Your Honor has to write

6   more than an order indicating --

7       MR. TAYLOR:  That's actually incorrect, Your Honor.  The

8   text of 1292(b) says that the Court has to say -- state in

9   writing in the order that would then be certified, and then the

10  ten days is triggered off of that order, so obviously the Court

11  would then have to amend the order under federal rule of

12  appellate procedure 5(a)(3), and that would reset the ten-day

13  clock.  You would have to amend the order from 2016, I guess

14  address the argument that was not really squarely presented, and

15  then that order would then be certified.  But if I could just

16  back up to for a second.

17      THE COURT:  But let's just go back to if we're going by

18  way of the March -- the later order and not the motion to

19  dismiss.  What happens now?  Just set it out for me.

20      MR. TAYLOR:  I think the best course, as Your Honor noted

21  earlier, you have to do a little more than enter the proposed

22  order that the government submitted.

23      THE COURT:  I have to write something.

24      MR. TAYLOR:  You have to write something, and I think the

25  best course would be effectively to amend this Court's March 2015

1    order to then contain the statement that's required by 1292(b)

2    and to say a little bit more about why the order itself involves

3    the controlling question of law as to which there is substantial

4    ground for difference of opinion, and then an immediately appeal

5    from the order may materially advance the ultimate --

6          THE COURT:  Which order are you talking about now?

7          MR. TAYLOR:  That would be the summary judgment order --

8          THE COURT:  -- right --

9          MR. TAYLOR:  And if you would like, Your Honor, we can

10   help provide some language that we think would do the job and

11   then submit that to the Court.

12         THE COURT:  Right.  I'm the one that wrote -- I don't know

13   if you know -- the *APCC* case, but it gets cited all the time.

14         And when I did *APCC Services versus Sprint,* which was

15   2003, and I got it up to the Court of Appeals, and then lo and

16   behold they came out with another decision and it goes to the

17   Supreme Court, and the Supreme Court says, Well, I was right, and

18   then it goes -- Judge -- Chief Judge Roberts' comment was -- he

19   quoted Bob Dylan, he said, "What's the beef here?"  But I wrote

20   about why they should take this and why it's a controlling issue

21   of law and will save everybody a lot of time.  I just don't see I

22   can say that in good faith about that first order.

23         MR. TAYLOR:  If I could just say a couple more words about

24   that.  So --

25         THE COURT:  So I don't need to amend any order.  What I

1   did last time was I granted the motion and then I ordered -- I

2   granted the motion to dismiss.  I ordered, "the defendant's

3   motion for certification of interlocutory appeal is granted," and

4   I would probably say that, at least as to a portion of it, it's

5   unopposed, and then I further ordered that it was certified for

6   immediate appeal pursuant to -- because -- and I used the

7   statutory language, but this is after writing five or six pages.

8         MR. TAYLOR:  Right.

9         THE COURT:  But what do I need to amend?  Because of the

10  ten days?

11        MR. TAYLOR:  Well, I don't know if under -- yeah, because

12  of the ten days.  The ten days run from the entry of the order

13  that's being appealed, and we're obviously not appealing the

14  order that's certifying the previous order, and so I guess what

15  might happen is under federal rule of --

16        THE COURT:  I'd say it again.

17        MR. TAYLOR:  You would treat it as a constructive

18  amendment that would restart the ten-day clock so the Federal

19  Circuit would then have time to accept the appeal.  I'm just

20  focusing on the length.

21        THE COURT:  Ten days is supposed to be ten days after my

22  opinion denying and granting in part summary judgment.

23        MR. TAYLOR:  It's supposed to be under the text of the

24  order, but there is a -- the Federal Rule of Appellate Procedure

25  5(a) does allow a court to amend an earlier order to add this

1    statement that 1292(b) requires, and that resets the ten days.

2        THE COURT:  That may be why I wrote here that the order

3    to -- the denial of the motion to dismiss -- I ordered it.  My

4    guess is I ordered it before I got to this point.  So you may --

5    it may not be an amendment so much as a do it again.

6        MR. TAYLOR:  Exactly.

7        THE COURT:  Well, I'm happy -- so, Mr. Field, I find that

8    you have the right to raise subject matter jurisdiction any time.

9    I don't feel that I can say to them that there's anything about

10   that order on a motion to dismiss on a contractual claim that

11   would satisfy the requirements of 1292(b).  I can't say that to

12   the Circuit with a straight face, so I'm going to certify the

13   latter order.  I think you're out of time, your position, but I

14   don't think you can set a rule on it, but the Court of Appeals is

15   obligated *sui sponte* to figure out whether they have subject

16   matter jurisdiction, the same way I guess I was obligated, but I

17   didn't do it.

18       MR. FIELD:  Yep, that's correct, and we well raise it with

19   the Federal Circuit at that time.

20       THE COURT:  Well, you'll have to, and they're supposed to

21   address it, and they shouldn't be sending it back down to me for

22   that.  And if you want to give me any language to propose to put

23   in an opinion, I'm happy to have it.  It will, I think -- if you

24   look at the -- I have my opinion from 2003, 297 F. Supp. 2d 90,

25   and then the other case which I found helpful just because it

1    cited me was Judge Mehta's in the Whole Food Market case, and

2    that one was in 2018.  But you do need to tell them what is

3    legally important here.  That was a 611 2018 opinion, and the

4    plaintiff's name is Molock, M-O-L-O-C-K, versus Whole Foods

5    Market.  I'm sure there are other ones, but he chose to rely on

6    it the way I had done it before.  And the Court of Appeals took

7    it.  I don't know what -- I don't have any prediction about the

8    Federal Circuit, but I think this is a rational way to go, and

9    hopefully it will save everybody time and money.  If you can

10   settle it short of that, I continue to think that's a good idea,

11   and I know that you did try to settle it with judge -- retired

12   Judge Robertson or not?  You never tried to -- Well, if you

13   change your mind, I'm sure we could find -- Oh, he's the one I

14   worried about having been the head of the IT committee.  Okay.

15   Let us know, because I think that, you know, if -- for fear that

16   the AO loses this or the judiciary, the amount of people that

17   will come forward and seek money is going to be dwarfed by the

18   attorney fee request here.  It really is.  I can't imagine that

19   the big users of Pacer, i.e. the law firms, are going to be

20   lining up for what from their point of view is not a lot of

21   money; and second of all, they billed the client, so they don't

22   have any right to it anyway, is my guess, unless they want to

23   rebate the client, and here you go, GE, here's $312.70 for one

24   year.  So it seems that there should be grounds to think about

25   this.  Okay.  Would you in the next -- before the end of the week

1    kindly submit something, run it by the other side, and see

2    whether you can agree about what would be the consequences of the

3    Court not taking this up now and why it is a legal issue that --

4    There is no law on it.  We were all doing the best we could, is

5    all I can say.  So, it is a novel legal issue that certainly

6    could use a determination now before we waste time.

7         Is there any -- so today is Wednesday.  If you can get it

8    to us at the end of business on Friday, and it -- last time I'm

9    sure I wrote eight to ten pages.  I don't think that they would

10   take me seriously if I didn't.  And then you will not oppose the

11   motion as long as I don't have a case for -- a motion to dismiss

12   order.

13        MR. TAYLOR:  That's right.

14        THE COURT:  All right.  I can represent that.  Okay.

15        MR. FIELD:  One point of clarification, Your Honor.  Does

16   Your Honor still want the notice with the annual figures with

17   respect to --

18        THE COURT:  I do.

19        MR. FIELD:  Yeah.

20        THE COURT:  Because I think that it will -- did you go

21   back to the order, the opinion?

22        (Discussion had off the record.)

23        THE COURT:  Well, give them to me anyway if you can by the

24   end of business on Friday.  Okay.  Thank you.  We're at the end

25   of a complicated procedure.

1      MR. TAYLOR:  Your Honor, can I ask you a quick question

2  just to clean something up.  We haven't yet formally opposed the

3  request for certification of the 2016 order.  Is that something

4  that the Court would like us to do or --

5      THE COURT:  Well, I think you proposed it here.

6      MR. TAYLOR:  I just wanted -- It's not in writing.

7      THE COURT:  You're in agreement with the summary judgment

8  order being certified?

9      MR. TAYLOR:  Yes.

10      THE COURT:  And you are not in agreement with the other

11  order, but I don't feel in good faith I can certify the other

12  order because I don't think it meets the criteria, but I also

13  recognize that the defendants are entitled to raise -- and you

14  wouldn't disagree; it's a basic principle -- that --

15      MR. TAYLOR:  If it's jurisdictional, right; if it's not,

16  then they've waived it, right.

17      THE COURT:  You're mumbling.

18      MR. TAYLOR:  Sorry.  Yes.  If it's truly a question of

19  subject matter jurisdiction, then it doesn't really matter if

20  it's part of the order or not.  And if it's not a question of

21  subject matter jurisdiction, then, A, it's not in the order, and

22  you certify an order, not a motion; and B, there's an argument as

23  to whether it's preserved, and you would still have to satisfy

24  the 1292(b) requirements as Your Honor noted.

25      THE COURT:  You don't have to preserve subject matter

1    jurisdiction.

2          MR. TAYLOR:  Right.

3          THE COURT:  That's never forfeited or waived, right?

4          MR. TAYLOR:  Yes.

5          THE COURT:  Right?  Okay.  Thank you.  So, work on your

6    script, okay.  Thank you very much.

7          (Proceedings adjourned at 12:40 p.m.)

8                    **C E R T I F I C A T E**

9

10               I, Scott L. Wallace, RDR-CRR, certify that
     the foregoing is a correct transcript from the record of
11   proceedings in the above-entitled matter.

12

        /s/ Scott L. Wallace                8/20/18
13      ---------------------------      ----------------
        **Scott L. Wallace, RDR, CRR           Date**
14        **Official Court Reporter**

15

16

17

18

19

20

21

22

23

24

25