Leave to File Granted

Michael T. Pines
619-771-5302
magicalmichael100@gmail.com

PAUL L. FRIEDMAN
8/26/21

# UNITED STATES DISTRICT COURT

# DISTRICT OF COLUMBIA

| MICHAEL T. PINES<br><br>Plaintiff/Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA, et. al.<br><br>Defendants/Respondents | Case No.  1:16-cv-00745-PLF<br><br><br>**MOTION FOR INTERVENTION AND FOR LEAVE TO FILE COMPLAINT IN INTERVENTION, MOTION TO MODIFY CLASS CERTIFICATION ORDER, AND FOR SANCTIONS** |
|---|---|

Plaintiff in the proposed complaint in intervention, Michael T. Pines, requests the court enter an order allowing him to intervene, to modify the class certification order, and for sanctions.

## **THIS CASE SHOULD NOT BE A CLASS ACTION**

Federal courts have a continuing obligation to ensure that class action certification remains appropriate throughout the duration of a case. Accordingly, it is well established that if class certification is later deemed improvident, the district court may decertify a previously certified class.  Under Rule 23(c)(1)(C), the court can change an order for certification any time before final judgment.

1

This case was brought as a class action under the Little Tucker Act for overcharges by the government to persons using Pacer. As is typical, ████████████████████████ ████████████████████████████████████████████ ████████████████ This included a way to recover damages for the entire class.

The plaintiffs mentioned other wrongs being committed by Pacer and gave two examples, but have not sought anything related to those types of claims. This demonstrates that people have suffered other types of damages caused by Pacer which the action does not seek to redress.

On motions, the District Court rejected the contentions of both the Plaintiffs and Defendant regarding what overcharges can be recovered. Instead the court found that overcharges were only appropriate to be awarded for expenses related to the "State of Mississippi Study, VCCA, Web-Juror, and most of the expenditures for CourtroomTechnology." The Court of Appeal affirmed. It was not clear what the court meant by "*most* expenditures of Courtroom Technology". Given what happened next, it seems clear expenses for courtroom technology were not even tracked by the government appropriately, nor were the other categories of overcharges so it would be impossible to figure out what any of the specified expenditures were, or what "most expenditures" are.

It appears everyone involved was assuming that the government was at least competent enough to keep track of expenses related to the operation of Pacer according to standard accounting procedures and in sufficient detail to identify expenses related to certain activities. One would have hoped it at least followed the procedures for tracking cash, a simple method tracking expenses with some identification of what the expenses were for. If not, then accounting is required by the standards set by the Governmental Accounting Standards Board ("GASB").

The Governmental Accounting Standards Board or GASB is an independent,

private-sector, not-for-profit organization that—through an open and thorough due process—establishes and improves standards of financial accounting and reporting for U.S. state and local governments. Governments and the accounting industry recognize the GASB as the official source of generally accepted accounting principles (GAAP) for state and local governments.

If the government did not keep appropriate records or comply with GAAP in tracking Pacer this would give rise to a whole other set of problems and potential claims. Apparently, no one anticipated exactly how bad things were at Pacer.

In oral argument before the Court of Appeal, counsel for the government admitted:

". . . that the accounting method employed by the government made it impossible to figure out how much, if any, of the collected fees were acquired through overcharging, it was similarly impossible to calculate any possible user reimbursements for PACER users."

This was after the District Court made its ruling, so presumably the government was referring to the specific items found by the court to be proper categories of overcharges for which the Plaintiffs could recover and stating they could not be identified. It appears Pacer did not track the expenses for the State of Mississippi Study, VCCA, Web-Juror, and most of the expenditures for CourtroomTechnology. This raises the question of what damages can be awarded when they are made impossible to calculate by the Defendant. Pines believes there should be an award based on equity.

The obvious way to calculate damages in light of court rulings to date would have been to identify the expenses directly related to the specific items the court found to be overcharges. Had Pacer tracked the expenses related to these items, the charges could be identified and then presumably divided equally between the estimated two million class members. Given the large number of class members this would be a very nominal amount to each class member which

3

would not result in the class members receiving appropriate compensation. But the attorneys might obtain a windfall as is common in class actions and why they have a reputation for being unjust and unfair.

The parties have been trying to settle the matter for many months. If damages could be calculated based on the court's rulings to date, it seems likely that a settlement would have been relatively easy to achieve.

The pertinent portions of the Tucker Act and the Little Tucker Act waive sovereign immunity for claims "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or **implied contract** with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1); id. §1346(a)(2). The Little Tucker Act permits an action to be brought in a district court, but only if a claim does not exceed $10,000 in amount; the Tucker Act contains no such monetary restriction but authorizes actions to be brought only in the Court of Federal Claims.

If the claim is brought in a district court, that court sits as if it were the Court of Federal Claims. There is no jury trial and money judgments are generally the only relief available. Furthermore, claims must be for no more than $10,000 and state law plays no part in the case.

Implied contract is an equitable remedy. Pines asserts there was an implied contract of fact that only charges and direct costs needed to administer Pacer would be charged. The court should award damages that are "fair" since they can't be determined any other way.

The courts have always construed the [current] version of the Tucker Act as continuing the previously established use of equitable doctrines. . . . Often, the court has awarded (or denied) a money judgment based upon an equitable theory, without even discussing its jurisdiction.... This

4

continued assumption that equitable theories in passing upon suits for monetary awards is grounded firmly on the Tucker Act's history, on unquestioned Supreme Court cases and on Court of Claims decisions. Pauley Petroleum, 591 F.2d at 1316; see also 1776 K Street Assoc. v. United States, 602 F.2d 354, 356 (Ct. Cl. 1979) ("Despite the well publicized exclusion of equitable relief from the remedies available here, a claim for money is not barred merely because it rests on equitable grounds."), cert. denied, 447 U.S. 905 (1980), reh'g denied, 453 U.S. 928 (1981).

Pines contends, especially given his particular circumstances, that it would be equitable to award him $10,000 for each time he incurred a charge by Pacer during the applicable time period. Hopefully Pacer at least has records of each time Pines was charged for something during the pertinent period.

Class actions have their place. When the only damages a plaintiff has are so small that it is not economical to bring an individual action, class actions serve an important purpose. However, when the plaintiff has the chance to recover large damages, class actions are not appropriate. Typically, class actions will allege only small damages in order to get the case to meet the requirements of Rule 23 and get the case certified. But the law also requires that the class action be superior to other types of actions. Rule 23(b)(3).

When class actions settle (which most do) the release can be limited to the claim brought leaving the plaintiffs to pursue an individual action for more damages, but this creates problems. But, the settlement of a class action lawsuit should ideally resolve all issues and claims involved in the class litigation for all class members who do not opt out.

To reach a final judgment on the merits in a class settlement, the underlying court must approve the settlement containing the release. Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 (9th Cir. 2006).

When a putative class member raises similar claims—or claims based on similar facts—in a subsequent case, questions regarding res judicata and the scope of the class release arise inevitably. The resolution of these issues pits the important doctrines of judicial economy and finality against the equally important doctrines of due process and reasonable expectations.

To address these competing interests, the majority of circuits have adopted the "identical factual predicate" doctrine ("IFPD"). The IFPD permits a broad release of claims—including claims that were not pursued in the underlying class litigation—if the party raising the defense can show an identical factual predicate between the underlying class claims and subsequent claims. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 107–09 (2d Cir. 2000).

The precise meaning of "identical factual predicate" remains subject to interpretation and is evolving within the federal circuit courts. Specifically, the circuit courts have adopted inconsistent positions on whether the doctrine requires a stricter identity of facts than that required under res judicata. Some courts have even conflated the two standards underlying res judicata and release. Although no circuit seems to dispute that the IFPD applies to the affirmative defense of release, the circuit courts' varying interpretations of the IFPD have left open the question of whether the doctrine also applies to the defense of res judicata. To further compound the uncertainty, there has been no direct guidance from the U.S. Supreme Court.

The law provides that a plaintiff in a case must bring all claims related to a given transaction or against a given party in one legal action. This is true under federal law. F.R.C.P. Rule 18 and Rule 20 allows such. F.R.C.P. In fact Rule 19 requires such.

The rules against splitting of causes of action also exist under all state laws and the class members reside in all 50 states.

The rule against splitting causes of action requires litigants to bring all their claims arising out of the same transactional nucleus of facts in the same civil action. It is an equitable rule and a subsidiary of the doctrine of res judicata. Like res judicata, the rule against splitting causes of action rests upon the principles that cases should not be tried piecemeal and that litigation should end once the rights of the parties have been determined.

The claim splitting doctrine generally holds that where multiple claims arise out of a single nexus of operative facts they must be pursued in a single case.

In the complaint, class Plaintiffs identify not only overcharges, but set forth the fact that Pacer routinely denies access to Pacer improperly and commits other wrongful acts such as wrongful collection of fees .  Plaintiffs allege:

> "The judiciary's decision to increase PACER fees to fund these (otherwise unobjectionable) expenses has created substantial barriers to accessing public records—for litigants, journalists, researchers, and others. The AO has compounded these barriers through a policy of discouraging fee waivers, even for journalists, pro se litigants, and nonprofits; by prohibiting the transfer of information, even for free, by those who manage to obtain waivers; and by hiring private collection lawyers to sue individuals who cannot pay the fees.
>
> Two examples help illustrate the point: In 2012, journalists at the Center for Investigative Reporting applied "for a four-month exemption from the per page PACER fee." In re Application for Exemption from Elec. Public Access Fees, 728 F.3d 1033, 1035–36 (9th Cir. 2013). They "wanted to comb court filings in order to analyze 'the effectiveness of the court's conflict-checking software and hardware to help federal judges identify situations requiring their recusal,'" and "planned to publish their findings" online. Id. at 1036. But their application was denied because policy notes accompanying the PACER fee schedule instruct courts not to provide a fee waiver to "members of the media" or anyone not in one of the specific groups listed. Id. at 1035. The Ninth Circuit held that it could not review the denial. Id. at 1040.
>
> The other example is from five years earlier, when private collection lawyers representing the PACER Service Center brought suit in the name of the United States against "a single mother of two minor children" who had "no assets whatsoever," claiming that she owed $30,330.80 in PACER fees. See Compl. in United States v. Deanna Manning, No. 07-cv-04595, filed July 3, 2007 (C.D. Cal.); Answer, Dkt. 12, filed Oct. 16, 2007. Representing herself, the woman "admit[ted] to downloading and printing a small amount [of] material from PACER, no more than $80 worth," which "would be 1,000 pages,

actually much more than she remembers printing." Answer, Dkt. 12, at 1. But she explained that "[t]here is no way she would have had enough paper and ink to print 380,000 pages as the Complaint alleges," so "[t]his must be a huge mistake." Id. She concluded: "Our great and just government would have better luck squeezing blood from a lemon than trying to get even a single dollar from this defendant who can barely scrape up enough money to feed and clothe her children." Id. at 2. Only then did the government dismiss the complaint.

These allegations demonstrate two additional ways out of many that Pacer commits wrongful acts. It is clear that plaintiffs who have claims against Pacer might have many varied claims both in terms of the basis for liability and the kinds of damages they can recover. Some would be based on the fact that they were not only overcharged, but wrongfully excluded completely from the Pacer system if they should have gotten a waiver but didn't, and/or could not afford to pay Pacer fees. They would have claims that they never have been charged at all, but were. Although these people may be members of the class, they would not receive proper compensation from the limited expenses the court found could be recovered in this case. They should have **all** their fees reimbursed.

In the example regarding the journalists, it seems the overcharges would be for any and all charges they paid for access to Pacer since they were improperly denied a waiver. This would moot out any questions about specific overcharges as *all* charges were improper. In the second example the poor woman would have claims for wrongful debt collection. However, assuming they incurred charges during the time period covered by the class action, they would be class members. If their rights were determined in the class action, limiting them to recover damages for overcharges only for the specific categories identified by the court, they would be severely prejudiced. Their interests are not protected by the class action.

These examples demonstrate that potential plaintiffs may have claims related to Pacer not

8

only based on contract or implied contract, but also for torts.

Pines' case presents another example, since Pines was denied any access for a period of time completely. It is impossible to even try to think of the various ways people may have been injured due to the improper acts of the government related to the operation of Pacer.

If this class is decertified and the case dismissed, Pines will add the claims set forth in the Complaint in Intervention in this case to the action to be filed in the bankruptcy court in Sacramento.

To reach a final judgment on the merits in a class settlement, the underlying court must approve the settlement containing the release. Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 (9th Cir. 2006). Typically, Defendants demand a broad form general release of all claims as a part of any settlement.

When a putative class member raises similar claims—or claims based on similar facts—in a subsequent case, questions regarding res judicata and the scope of the class release arise inevitably. The resolution of these issues pits the important doctrines of judicial economy and finality against the equally important doctrines of due process and reasonable expectations.

To address these competing interests, the majority of circuits have adopted the "identical factual predicate" doctrine ("IFPD"). The IFPD permits a broad release of claims—including claims that were not pursued in the underlying class litigation—if the party raising the defense can show an identical factual predicate between the underlying class claims and subsequent claims. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 107–09 (2d Cir. 2000).

The precise meaning of "identical factual predicate" remains subject to interpretation and is evolving within the federal circuit courts. Specifically, the circuit courts have adopted

inconsistent positions on whether the doctrine requires a stricter identity of facts than that required under res judicata. Some courts have even conflated the two standards underlying res judicata and release. Although no circuit seems to dispute that the IFPD applies to the affirmative defense of release, the circuit courts' varying interpretations of the IFPD have left open the question of whether the doctrine also applies to the defense of res judicata. To further compound the uncertainty, there has been no direct guidance from the U.S. Supreme Court.

Given the fact that potential plaintiffs may have all kinds of claims against the government related to the operation of Pacer, and especially because there is not even a way to calculate the type of damages the class action seeks, this case is no longer appropriate as a class action.

## THE COURT SHOULD ALLOW INTERVENTION

Plaintiff in the proposed complaint in intervention, Michael T. Pines, is a class member who was charged Pacer fees during the time period covered by the class. Rule 23 of the Federal Rules of Civil Procedure permits absent class members to intervene in a class action. Fed.R.Civ.P. 23(d)(1)(B)(iii).

Rule 24 provides for intervention by right and by permission. Fed.R.Civ.P. 24. Of course Pines can object to any settlement, if the proposed settlement is not fair, reasonable, and/or adequate or that the settlement was not negotiated fairly. Pines was precluded from negotiations so any settlement based on previous discussions would be improper as not negotiated fairly..

Federal Rule of Civil Procedure 24(a) provides that upon timely application anyone shall be permitted to intervene in an action who:

claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest. Fed. R. Civ. P. 24(a)(2).

Upon filing of a timely motion, Federal Rule of Procedure 24(a)(2) requires this Court to "permit anyone to intervene" who demonstrates that he has "an interest relating to . . . the subject of the action" that would be impaired "as a practical matter" because of the action, unless the interest is adequately represented by existing parties to the litigation. Karsner v. Lothian, 532 F.3d 876, 881 n.4 (D.C. Cir. 2008). It is well settled that Rule 24(a) should be construed liberally in favor of permitting intervention. See Trbovich v. United Mine Workers of America, 404 U.S. 528 (1972).

There are generally "four requirements for intervention as of right under Rule 24(a)(2): (1) timeliness; (2) a cognizable interest; (3) impairment of that interest; and (4) lack of adequate representation by existing parties." Smoke v. Norton, 252 F.3d 468, 470 (D.C. Cir. 2001) Case 1:16-cv-00236-RJL Document 24 Filed 02/20/16 (internal citations omitted).

When implementing Rule 24(a), the First Circuit has explained that the inherent imprecision of Rule 24(a)(2)'s individual elements dictates that the rule should be applied with an eye toward the commonsense view of the overall litigation." Ungar v. Arafat, 634 F.3d 46, 51 (1st Cir. 2011) (citations and internal quotation marks omitted). "In the context of intervention as of right, the district court's discretion is somewhat more circumscribed than in the context of intervention generally." Ungar, 634 F.3d at 51 (citation and internal quotation marks omitted).

The Supreme Court has held that the inadequate representation requirement 'is satisfied if the [proposed intervenor] shows that representation of his interest 'may be' inadequate' and that 'the burden of making that showing should be treated as minimal.'" Chiles v. Thornburgh, 865 F.2d 1197, 1214 (11th Cir. 1989) (emphasis added), quoting Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972).

Pines' Motion to Intervene satisfies each of Rule 24(a)'s four criteria for intervention as of

**11**

right.

This motion is timely. Pines only found out about this action in August 2020 and has been trying to work with counsel to avoid the time and expense of appearing. He tried to discuss settlement ███████████.

It does not appear any final scheduling order has been made and there does not appear to be a cut off date to file pleadings and discovery is still open. In December 2020, the action was stayed for mediation and was stayed again until September 23, 2021.

The case has been on hold for months while the parties mediate. ████████████████████████████████████████████ It is the existing parties that may have wasted 8 months if the class is decertified.

Pines has a direct interest since he is a class member.

Pines' interest will be impaired because the class action attorneys will not even allow him to participate in discussions outside of court or cooperate in other ways.

A court may allow permissive intervention if the movant demonstrates it "has a claim or defense that shares with the main action a common question of law or fact" and that it will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed.R.Civ.P. 24(b).

Pines shares common questions of fact or law and intervention will not delay or prejudice the adjudication of rights.

## THE COURT SHOULD AWARD SANCTIONS

28 U.S. Code § 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Since Pines never got notice and ████████████████████████████████████, he

can challenge anything that was done previously such that the case is essentially starting all over.

This case has been pending since 2016. Undoubtedly many things happened outside of court that might have an impact on the proceedings. There have probably been numerous communications between counsel.

Had Pines been given the opportunity to participate when he demanded it in August 2020, he would be much more up to speed. Now, he will have to spend large amounts of time doing that. If necessary he will subpoena any and all emails by and among counsel to find out what they have said and what has happened. This multiplies the proceedings and Pines is entitled to sanctions.

In addition, counsel has gone so far as to not even attempt to discuss a resolution of these motions violating the local rules.

It is difficult for Pines to determine what amount of excess costs and expenses he will incur.

Pines asks for an award of $25,000 in sanctions to be awarded jointly and severally against both plaintiff and defense counsel.

Dated: August 11, 2021                                            Respectfully Submitted,

                                                                    /s/ Michael T. Pines