**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

NATIONAL VETERANS LEGAL
SERVICES PROGRAM, NATIONAL
CONSUMER LAW CENTER, and
ALLIANCE FOR JUSTICE, for themselves
and all others similarly situated,

*Plaintiffs,*

v.

UNITED STATES OF AMERICA,

*Defendant.*

Case No. 16-745-PLF

**PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT**

Deepak Gupta
Jonathan E. Taylor
GUPTA WESSLER PLLC
2001 K Street, NW, Suite 850 North
Washington, DC 20006
(202) 888-1741
deepak@guptawessler.com
jon@guptawessler.com

William H. Narwold
MOTLEY RICE LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
(860) 882-1676
bnarwold@motleyrice.com

Meghan S.B. Oliver
Charlotte E. Loper
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
(843) 216-9000
moliver@motleyrice.com
cloper@motleyrice.com

*Counsel for Plaintiffs National Veterans Legal Services Program,
National Consumer Law Center, Alliance for Justice, and the Class*

October 11, 2022

# TABLE OF CONTENTS

Table of authorities ...................................................................................................................ii

Introduction ........................................................................................................................... 1

Background .............................................................................................................................4

    A.    Factual and procedural background ..................................................................4

    B.    Mediation and settlement negotiations .................................................................8

    C.    Overview of the settlement agreement ...............................................................9

Argument .............................................................................................................................14

    I.    The Court should certify the settlement class. ...........................................................14

    II.    Because the settlement provides an exceptional recovery for the class, the Court should find that approval of the settlement is likely and direct that notice be provided to class members under Rule 23(e)(1). .......................................15

        A.    The class representatives and class counsel have vigorously represented the class throughout this litigation..........................................17

        B.    The settlement is the product of informed, arm's-length negotiations. .........................................................................................17

        C.    The settlement relief provided to class members is exceptional—particularly given the costs, risks, and delays of further litigation..............18

        D.    The settlement agreement treats class members equitably relative to each other. ..........................................................................................20

        E.    The plaintiffs and class counsel support the settlement. ...........................21

    III.    The notice and notice programs will provide class members the best notice practicable under the circumstances...................................................................... 22

Conclusion ......................................................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Abraha v. Colonial Parking, Inc.,*
  2020 WL 4432250 (D.D.C. July 31, 2020) ................................................... 21

*Aerolineas Argentinas v. United States,*
  77 F.3d 1564 (Fed. Cir. 1996) .................................................................... 2

*Blackman v. District of Columbia,*
  454 F. Supp. 2d 1 (D.D.C. 2006) .......................................................... 17, 18

*Cobell v. Salazar,*
  679 F.3d 909 (D.C. Cir. 2012) .................................................................. 21

*Cohen v. Chilcott,*
  522 F. Supp. 2d 105 (D.D.C. 2007) ........................................................... 21

*In re Black Farmers Discrimination Litigation,*
  953 F. Supp. 2d 82 (D.D.C. 2013) ............................................................ 20

*In re Domestic Airline Travel Antitrust Litigation,*
  378 F. Supp. 3d 10 (D.D.C. 2019) ........................................................ 16, 18

*Kinard v. E. Capitol Family Rental, L.P.,*
  331 F.R.D. 206 (D.D.C. 2019) .................................................................. 18

*Mullane v. Central Hanover Bank Trust Co.,*
  339 U.S. 306 (1950) ................................................................................ 22

*National Veterans Legal Services Program v. United States,*
  291 F. Supp. 3d 123 (D.D.C. 2018) ............................................................ 6

*National Veterans Legal Services Program v. United States,*
  968 F.3d 1340 (Fed. Cir. 2020) .................................................................. 3

*Prince v. Aramark Corp.,*
  257 F. Supp. 3d 20 (D.D.C. 2017) ............................................................ 21

*Radosti v. Envision EMI, LLC,*
  717 F. Supp. 2d 37 (D.D.C. 2010) ............................................................ 18

*Radosti v. Envision EMI, LLC,*
  760 F. Supp. 2d 73 (D.D.C. 2011) ............................................................ 21

*Richardson v. L'Oréal USA, Inc.,*
  951 F. Supp. 2d 104 (D.D.C. 2013) ........................................................... 16

*Ross v. Lockheed Martin Corp.*,
  267 F. Supp. 3d 174 (D.D.C. 2017) ..................................................................15, 16

*Stephens v. Farmers Restaurant Group*,
  329 F.R.D. 476 (D.D.C. 2019) ...............................................................................16

*Trombley v. National City Bank*,
  759 F. Supp. 2d 20 (D.D.C. 2011) .........................................................................18

*United States v. MTU America Inc.*,
  105 F. Supp. 3d 60 (D.D.C. 2015) .........................................................................16

**Statutes**

5 U.S.C. § 701 ..................................................................................................................5

5 U.S.C. § 704 ..................................................................................................................5

28 U.S.C. § 1346(a) ..........................................................................................................5

28 U.S.C. § 1913 note ...................................................................................................... 4

**Other authorities**

Adam Liptak, *Attacking a Pay Wall that Hides Public Court Filings*, N.Y. Times, Feb. 4, 2019,
  https://perma.cc/LN5E-EBE9 ............................................................................ 3, 7

*Manual for Complex Litigation* § 21.632 (4th ed. updated 2022) ............................15

*Public Records Belong to the Public*, N.Y. Times, Feb. 7, 2019, https://perma.cc/76P8-WFF7 .............3

S. Rep. 107–174, 107th Cong., 2d Sess. 23 (2002) ..................................................... 4

William B. Rubenstein, *Newberg on Class Actions* § 13:1 (5th ed. updated 2022) ...................................15

**Rules**

Fed. R. Civ. P. 23 ..............................................................................................15, 16, 18, 22

Fed. R. Civ. P. 23, Advisory Committee Note, 2018 Amendments ................................. 16

## INTRODUCTION

In the history of American litigation, this case is unique: a certified class action against the federal judiciary. The plaintiffs challenged the fees that the judiciary charges for access to records through its Public Access to Court Electronic Records system, or PACER. They sought to vindicate a single claim: that the judiciary violated the law by charging fees that exceeded the cost of providing the records. And they sought one form of relief: refunds.

After more than six years of hard-fought litigation, the plaintiffs have now secured a historic settlement under which the government must reimburse the vast majority of PACER users in full— 100 cents on the dollar—for past PACER charges. The settlement creates a common fund of $125 million from which each class member will automatically be reimbursed up to $350 for any PACER fees paid between April 21, 2010, and May 31, 2018. Those who paid over $350 in fees during that period will receive their pro rata share of the remaining settlement funds. Any unclaimed funds after this initial distribution will be allocated evenly to all class members who collected their initial payment (subject to the caveat that no class member may receive more than the total fees that she paid). In addition to this remarkable monetary relief, the case has spurred the judiciary to eliminate fees for 75% of users going forward and prompted action in Congress to abolish the fees altogether.

By any measure, this litigation has been an extraordinary achievement—and even more so given the odds stacked against it. PACER fees have long been the subject of widespread criticism because they thwart equal access to justice and inhibit public understanding of the courts. But until this case was filed, litigation wasn't seen as a realistic path to reform. That was for three reasons. First, the judiciary has statutory authority to charge at least *some* fees, so litigation alone could never result in a free PACER system. Second, few lawyers experienced in complex federal litigation would be willing to sue the federal judiciary—and spend considerable time and resources challenging decisions made by the Judicial Conference of the United States—with little hope of

payment. Third, even if PACER fees could be shown to be excessive and qualified counsel could be secured, the fees were still assumed to be beyond the reach of litigation. The judiciary is exempt from the Administrative Procedure Act, so injunctive relief is unavailable. A lawsuit challenging PACER fees had been dismissed for lack of jurisdiction, and advocates had been unable for years to identify an alternative basis for jurisdiction, a cause of action, and a statutory waiver of sovereign immunity. So they devoted their efforts to other strategies: making some records freely available in a separate database, downloading records in bulk, and mounting public-information campaigns.

These efforts were important, but they didn't alter the PACER fee system. Despite public criticism—and despite being reproached in 2009 and 2010 by Senator Joe Lieberman, the sponsor of a 2002 law curtailing the judiciary's authority to charge fees—the Administrative Office of the U.S. Courts did not reduce PACER fees. To the contrary, the AO *increased* fees in 2012.

There things stood until 2016, when three nonprofits filed this suit under the Little Tucker Act, a post-Civil-War-era statute that "provides jurisdiction to recover an illegal exaction by government officials when the exaction is based on an asserted statutory power." *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1573 (Fed. Cir. 1996). Because the Act provides jurisdiction only for claims seeking money for past overpayments, the plaintiffs could not demand that the judiciary lower PACER fees going forward. They could seek only retroactive monetary relief.

Even with this limitation, this lawsuit has been a resounding success at every step. The plaintiffs defeated a motion to dismiss and obtained certification of a nationwide class by early 2017. Through discovery, they were then able to shine a light on how the AO had used the fees. Many things funded by the fees—such as flat screens for jurors—had nothing to do with PACER. This discovery in turn led to an unprecedented decision: In March 2018, this Court held that the AO had violated the law by using PACER fees to fund certain activities. Within months, the judiciary announced that these activities would "no longer be funded" with PACER fees. Gupta Decl. ¶ 18.

Success continued on appeal. In the Federal Circuit, the plaintiffs "attracted an impressive array of supporting briefs from retired judges, news organizations, civil rights groups, and the sponsor of the 2002 law"—all detailing the harms of high PACER fees. *See* Adam Liptak, *Attacking a Pay Wall that Hides Public Court Filings*, N.Y. Times, Feb. 4, 2019, https://perma.cc/LN5E-EBE9. Media outlets published editorials championing the lawsuit. *See, e.g.*, *Public Records Belong to the Public*, N.Y. Times, Feb. 7, 2019, https://perma.cc/76P8-WFF7. And before long, the AO announced that it was doubling the quarterly fee waiver for PACER, eliminating fees for approximately 75% of PACER users. Gupta Decl. ¶ 20. Then the plaintiffs secured a landmark Federal Circuit opinion unanimously affirming this Court's decision. *NVLSP v. United States*, 968 F.3d 1340 (Fed. Cir. 2020).

The litigation sparked widespread public interest in the need to reform PACER fees and jumpstarted legislative action that continues to this day. Following the Federal Circuit's decision, the House of Representatives passed a bipartisan bill to eliminate PACER fees, and a similar proposal with bipartisan support recently advanced out of the Senate Judiciary Committee. Gupta Decl. ¶ 22. The Judicial Conference, too, now supports legislation providing for free PACER access to noncommercial users. *Id.* Were Congress to enact such legislation into law, it would produce an outcome that the plaintiffs had no way of achieving through litigation alone.

As for fees already paid—the claims at issue here—they will be refunded. Under the settlement, the average PACER user will be fully reimbursed for all PACER fees paid during the class period. And no class member will need to submit a claim or make any attestation to be paid.

This is an extraordinarily favorable result for the class, and it easily satisfies Rule 23(e)(2)'s criteria. As we will explain, the plaintiffs ask the Court to enter an order (1) finding that settlement approval is likely and certifying the expanded settlement class, (2) approving the notice plan and directing that notice be provided, and (3) scheduling a hearing to consider final approval and a forthcoming request for fees, costs, and service awards for the class representatives.

## BACKGROUND

### A.    Factual and procedural background

#### 1.    The legal framework for PACER fees

By statute, the judiciary has long had authority to impose PACER fees "as a charge for services rendered" to "reimburse expenses incurred in providing these services." 28 U.S.C. § 1913 note. But in 2002, Congress found that PACER fees (then $.07 per page) were "higher than the marginal cost of disseminating the information," creating excess fee revenue that the judiciary had begun using to fund other projects. S. Rep. 107–174, 107th Cong., 2d Sess. 23 (2002). Congress sought to ensure that records would instead be "freely available to the greatest extent possible." *Id.*

To this end, Congress passed the E-Government Act of 2002, which amended the statute by adding the words "only to the extent necessary." 28 U.S.C. § 1913 note. Despite this limitation, the AO twice increased PACER fees in the years after the E-Government Act's passage—first to $.08 per page, and then to $.10 per page—during a time when the costs of electronic data storage plunged exponentially. Gupta Decl. ¶ 4. This widening disparity prompted the Act's sponsor, Senator Lieberman, to reproach the AO for charging fees that were "well higher than the cost of dissemination," "against the requirement of the E-Government Act." ECF Nos. 52-8 & 52-9.

Excessive PACER fees have inflicted harms on litigants and the public alike. Whereas the impact of excess fees on the judiciary's $7-billion annual budget is slight, these harms are anything but: High PACER fees hinder equal access to justice, impose often insuperable barriers for low-income and pro se litigants, discourage academic research and journalism, and thereby inhibit public understanding of the courts. And the AO had further compounded the harmful effects of high fees in recent years by discouraging fee waivers, even for pro se litigants, journalists, researchers, and nonprofits; by prohibiting the free transfer of information by those who obtain waivers; and by hiring private collection lawyers to sue people who could not afford to pay the fees.

2. **District court proceedings**

In April 2016, three nonprofit organizations—National Veterans Legal Services Program, National Consumer Law Center, and Alliance for Justice—filed this lawsuit. From the start, the plaintiffs were represented by an expert team drawn from the law firms of Gupta Wessler PLLC, a litigation boutique with experience bringing complex cases against the federal government, and Motley Rice LLC, one of the nation's leading class-action firms. The plaintiffs asked the Court to determine that the PACER fee schedule violates the E-Government Act and to award a full recovery of past overcharges—the only relief available to them under the Little Tucker Act. *See* 28 U.S.C. § 1346(a). Because the judiciary is not subject to the APA, 5 U.S.C. §§ 701(b)(1)(B) & 704, the plaintiffs could not seek injunctive relief requiring the AO to lower PACER fees in the future.

This Court (Judge Ellen Huvelle) denied the government's motion to dismiss in December 2016. ECF No. 24 & 25. A month later, in January 2017, the Court certified a nationwide opt-out class of all individuals and entities who paid PACER fees between April 21, 2010 and April 21, 2016, excluding federal-government entities and class counsel. ECF Nos. 32 & 33. The Court certified the plaintiffs' illegal-exaction Little Tucker Act claim for classwide treatment and appointed Gupta Wessler and Motley Rice as co-lead class counsel. *Id.*

The plaintiffs then submitted a proposal for class notice and retained KCC Class Action Services (or KCC) as claims administrator. The Court approved the plan in April 2017, ECF No. 44, and notice was provided to the class in accordance with the Court's order. Of the approximately 395,000 people who received notice, only about 1,100 opted out of the class. Gupta Decl. ¶ 14.

Informal discovery followed. It revealed that the judiciary had used PACER fees on a variety of categories of expenses during the class period. These include not only what the judiciary labeled as "Public Access Services," but also "Case Management/Electronic Case Files System" (or CM/ECF); "Electronic Bankruptcy Notification"; "Communications Infrastructure, Services,

and Security" (or "Telecommunications"); "Court Allotments"; and then four categories of expenses falling under "Congressional Priorities"—"Victim Notification (Violent Crime Control Act)," "Web-based Juror Services," "Courtroom Technology," and "State of Mississippi."

Based on this discovery, the parties filed competing motions for summary judgment as to liability only, "reserving the damages determination for after formal discovery." ECF No. 52 at 1. The plaintiffs took the position that PACER fees could be charged only to the extent necessary to reimburse the marginal costs of operating PACER and that the government was liable because the fees exceeded that amount. The government, by contrast, took the position that all PACER fees paid by the class were permissible. It argued that the statute authorizes fees to recover the costs of any project related to disseminating information through electronic means.

In March 2018, this Court took a third view. As the Court saw it, "when Congress enacted the E-Government Act, it effectively affirmed the judiciary's use of [PACER] fees for all expenditures being made prior to its passage, specifically expenses related to CM/ECF and [Electronic Bankruptcy Notification]." *NVLSP v. United States*, 291 F. Supp. 3d 123, 148 (D.D.C. 2018). The Court thus concluded that the AO "properly used PACER fees to pay for CM/ECF and EBN, but should not have used PACER fees to pay for the State of Mississippi Study, VCCA, Web-Juror [Services], and most of the expenditures for Courtroom Technology." *Id.* at 145–46.

In the months that followed, the AO took steps "to implement the district court's ruling" and "reduce potential future legal exposure." Gupta Decl. ¶ 18. It announced in July 2018 that these four categories would "no longer be funded" with PACER fees. *Id.* "The Judiciary will instead seek appropriated funds for those categories," as it does for over 98% of its budget. *Id.* A year later, the AO announced that it was doubling the quarterly fee waiver for PACER—from $15 to $30—which had the effect of eliminating PACER fees for approximately 75% of PACER users. *Id.* ¶ 20.

### 3.   Appellate proceedings

Both parties sought permission for an interlocutory appeal from this Court's decision, and the Federal Circuit accepted both appeals. The parties adhered to their same interpretations of the statute on appeal. The plaintiffs' position was supported by a broad array of amici curiae—a group of prominent retired federal judges, Senator Lieberman, media organizations, legal-technology firms, and civil-liberties groups from across the ideological spectrum—detailing the harms caused by high PACER fees. *See* Liptak, *Attacking a Pay Wall that Hides Public Court Filings*. In response, the government defended the full amount of PACER fees, while strenuously arguing that the court lacked jurisdiction under the Little Tucker Act.

The Federal Circuit rejected the government's jurisdictional argument and largely affirmed this Court's conclusions. It "agree[d] with the district court's interpretation that § 1913 Note limits PACER fees to the amount needed to cover expenses incurred in services providing public access to federal court electronic docketing information." *NVLSP*, 968 F.3d at 1350. It also "agree[d] with the district court's determination that the government is liable for the amount of the [PACER] fees used to cover the Mississippi Study, VCCA Notifications, E-Juror Services, and most Courtroom Technology expenses" (those not "used to create digital audio recordings of court proceedings"). *Id.* at 1357–58. The Federal Circuit noted that CM/ECF was a "potential source of liability" because the court could not confirm whether all "those expenses were incurred in providing public access to federal court electronic docketing information." *Id.* The Federal Circuit left it to this Court's "discretion whether to permit additional argument and discovery regarding the nature of the expenses within the CM/ECF category and whether [PACER] fees could pay for all of them." *Id.*

Following the Federal Circuit's decision, federal lawmakers swung into action. The House of Representatives passed a bipartisan bill to eliminate PACER fees, and a similar proposal with bipartisan support recently advanced out of the Senate Judiciary Committee. Gupta Decl. ¶ 22.

## B.    Mediation and settlement negotiations

On remand, the case was reassigned to Judge Friedman, and the parties came together to discuss the path forward. They understood that litigating the case to trial would entail significant uncertainty and delay. *Id.* ¶ 23. Years of protracted litigation lay ahead. And the range of potential outcomes was enormous: On one side, the government argued that it owed zero damages because the plaintiffs could not prove that, but for the unlawful expenditures, PACER fees would have been lower (a litigating position that also made it difficult for the judiciary to lower fees while the case remained pending). *Id.* On the other side, the plaintiffs maintained that liability had been established for four categories of expenses and that some portion of the CM/ECF expenditures were likely improper as well. *Id.*

Hoping to bridge this divide and avoid a lengthy delay, the parties were able to agree on certain structural aspects of a potential settlement and then agreed to engage in mediation on the amount and details. *Id.* ¶ 24. On December 29, 2020, at the parties' request, this Court stayed the proceedings until June 25, 2021 to allow the parties to enter into private mediation. *Id.*

Over the next few months, the parties exchanged information and substantive memoranda, which provided a comprehensive view of the strengths and weaknesses of the case. *Id.* ¶ 25. The parties scheduled an all-day mediation for May 3, 2021, to be supervised by Professor Eric D. Green, an experienced and accomplished mediator agreed upon by the parties. *Id.*

With Professor Green's assistance, the parties made considerable progress during the session in negotiating the details of a potential classwide resolution. *Id.* ¶ 26. The government eventually agreed to structure the settlement as a common-fund settlement, rather than a claims-made settlement, and the plaintiffs' agreed to consider the government's final offer concerning the total amount of that fund. *Id.* But by the time the session ended, the parties still hadn't agreed on the total amount of the common fund or other important terms—including how the money would

be distributed, what to do with any unclaimed funds after the initial distribution, and the scope of the release. *Id.* ¶ 27 Professor Green continued to facilitate settlement discussions in the days and weeks that followed, and the parties were ultimately able to agree on the total amount of the common fund, inclusive of all settlement costs, attorneys' fees, and service awards. *Id.* The parties then spent several months continuing to negotiate other key terms, while this Court repeatedly extended its stay to allow the discussions to proceed. *Id.*

Further progress was slow, and at times the parties reached potentially insurmountable impasses. *Id.* ¶ 28. But over a period of many months, they were able to resolve their differences and reach an agreement, the final version of which was executed on July 27, 2022. *Id.* ¶ 28; Gupta Decl. Ex. A ("Agreement"). The parties executed a supplemental agreement in September 2022 making certain technical modifications to the agreement. Gupta Decl. Ex. B ("Supp. Agreement").

## C.      Overview of the settlement agreement

### 1.      The settlement class

As clarified by the supplemental agreement, the settlement defines the class as all persons or entities who paid PACER fees between April 21, 2010, and May 31, 2018 ("the Class Period"), excluding opt-outs, federal agencies, and class counsel. Agreement ¶ 3; Supp. Agreement. The Class Period does not go beyond May 31, 2018 because the AO stopped using PACER fees to fund the four categories of prohibited expenses after this date.

This definition includes all members of the class initially certified by this Court in January 2017—those who paid PACER fees between April 21, 2010 and April 21, 2016—as well those who do not meet that definition, but who paid PACER fees between April 22, 2016 and May 31, 2018. Agreement ¶ 4. Because this second group of people are not part of the original class, they did not receive notice or a right to opt out when the original class was certified. For that reason, under the settlement, these additional class members will receive notice and an opportunity to opt out. *Id.*

### 2.      The settlement relief

The settlement provides for a total common-fund payment by the United States of $125 million, which covers the monetary relief for the class's claims, interest, attorneys' fees, litigation expenses, administrative costs, and any service awards to the class representatives. *Id.* ¶ 11.

Once this Court has ordered final approval of the settlement and the appeal period for that order has expired, the United States will pay this amount to the claims administrator (KCC) for deposit into a settlement trust. *Id.* ¶¶ 12, 16. This trust will be established and administered by KCC, which will be responsible for distributing proceeds to class members. *Id.* ¶ 16.

### 3.      The released claims

In exchange for the relief provided by the settlement, class members agree to release all claims that they have against the United States for overcharges related to PACER usage during the Class Period. *Id.* ¶ 13. This release does not cover any of the claims now pending in *Fisher v. United States*, No. 15-1575 (Fed. Cl.), the only other pending PACER-fee related lawsuit of which the AO is aware. Agreement ¶ 13. The amount of settlement funds disbursed to any class member in this case, however, will be deducted from any recovery that the class member may receive in *Fisher*. *Id.*[1]

### 4.      Notice to settlement class

Within 30 days of an order approving settlement notice to the class (or within 30 days of KCC's receipt of the necessary information from the AO, whichever is later), KCC will provide notice via email to all class members for whom the AO has an email address on file. *Id.* ¶ 29; Gupta Decl. Ex. C ("Proposed Notice Plan") ¶ 2. Within 45 days of the order approving settlement notice,

---

[1] The individual plaintiff in *Fisher* alleges that PACER, in violation of its own terms and conditions, overcharges its users due to a systemic billing error concerning the display of some HTML docket sheets—an issue not raised in this case. The case did not challenge the PACER fee schedule itself, and it is not a certified class action.

KCC will send postcard notice via U.S. mail to all class members for whom the AO does not have an email address or for whom email delivery was unsuccessful. Agreement ¶ 29; Proposed Notice Plan ¶ 5. KCC will also provide the relevant case documents on a website it has maintained that is dedicated to the settlement (www.pacerfeesclassaction.com). Agreement ¶ 29; Proposed Notice Plan ¶ 3. The notice will include an explanation of the procedures for allocating and distributing the trust funds, the date upon which the Court will hold a fairness hearing under Rule 23(e), and the date by which class members must file their written objections, if any, to the settlement. Agreement ¶ 29.

### 5.    Opt-out rights for the April 22, 2016 to May 31, 2018 class members

The notice sent to the additional class members—those who paid fees only between April 22, 2016 and May 31, 2018, and thus are not part of the class already certified—will also inform them of their right to opt out and the procedures through which they may exercise that right. Proposed Notice Plan ¶ 6. The opt-out period for these additional class members will be 90 days. *Id.*

### 6.    Allocation and payment

Under the settlement, class members will not have to submit a claim or make any attestation to receive their payment. Agreement ¶ 4. Instead, KCC will use whatever methods are most likely to ensure that class members receive payment and will make follow-up attempts if necessary. *Id.*

The settlement provides that the trust funds be distributed as follows: KCC will first retain from the trust all notice and administration costs actually and reasonably incurred. *Id.* ¶ 18. KCC will then distribute any service awards approved by the Court to the named plaintiffs and any attorneys' fees and costs approved by the Court to class counsel. *Id.* After these amounts have been paid from the trust, the remaining funds ("Remaining Amount") will be distributed to class members. *Id.* The Remaining Amount will be no less than 80% of the $125 million paid by the United States. *Id.* In other words, the settlement entitles class members to at least $100 million.

**First distribution.** KCC will distribute the Remaining Amount to class members using the following formula: It will first allocate to each class member a minimum payment amount equal to the lesser of $350 or the total amount paid in PACER fees by that class member during the Class Period. *Id.* ¶ 19. Next, KCC will add up each minimum payment amount for each class member, producing the Aggregate Minimum Payment Amount. *Id.* KCC will then deduct this Aggregate Minimum Payment Amount from the Remaining Amount and allocate the remainder pro rata to all class members who paid more than $350 in PACER fees during the Class Period. *Id.*

Thus, under this formula: (a) each class member who paid no more than $350 in PACER fees during the Class Period will receive a payment equal to the total amount of PACER fees paid by that class member during the Class Period; and (b) each class member who paid more than $350 in PACER fees during the Class Period will receive a payment of $350 plus their allocated pro-rata share of the total amount left over after the Aggregate Minimum Payment is deducted from the Remaining Amount. *Id.* ¶ 20.

KCC will complete disbursement of each class member's share of the recovery within 90 days of receiving the $125 million from the United States, or within 21 days of receiving the necessary information from AO, whichever is later. *Id.* ¶ 21. KCC will complete disbursement of the amounts for attorneys' fees and litigation expenses to class counsel, and service awards to the named plaintiffs, within 30 days of receiving the $125 million. *Id.* KCC will keep an accounting of the disbursements made to class members, including the amounts, dates, and status of payments made to each class member, and will make all reasonable efforts, in coordination with class counsel, to contact class members who do not deposit their payments within 90 days. *Id.* ¶ 22.

**Second distribution.** If, despite these efforts, unclaimed or undistributed funds remain in the settlement trust one year after the $125 million payment by the United States, those funds ("the Remaining Amount After First Distribution") will be distributed in the following manner. *Id.*

¶ 23. First, the only class members eligible for a second distribution will be those who (1) paid more than $350 in PACER fees during the Class Period and (2) deposited or otherwise collected their payment from the first distribution. *Id.* Second, KCC will determine the number of class members who satisfy these two requirements and are therefore eligible for a second distribution. *Id.* Third, KCC will then distribute to each such class member an equal allocation of the Remaining Amount After First Distribution, subject to the caveat that no class member may receive a total recovery (combining the first and second distributions) that exceeds the total amount of PACER fees that the class member paid during the Class Period. *Id.* Prior to making the second distribution, KCC will notify the AO that unclaimed or undistributed funds remain in the trust. *Id.* ¶ 24. Class members who are eligible to receive a second distribution will have three months from the time of the distribution to collect their payments. *Id.* If unclaimed or undistributed funds remain in the settlement trust after this three-month period expires, those funds will revert to the U.S. Treasury. *Id.* Upon expiration of this three-month period, KCC will notify the AO of this reverter, and the AO will provide KCC with instructions to effectuate the reverter. *Id.*

### 7.     Service awards, attorneys' fees, and costs

The plaintiffs intend to apply to this Court for a service award of up to $10,000 per class representative and for an award of attorneys' fees and expenses. *Id.* ¶ 28. The total amount requested in service awards, fees, and expenses will not exceed 20% of the total common fund. *Id.* Approval of the settlement is not contingent on the Court granting these requests, and any amounts awarded by the Court will be paid out of the common fund. *Id.* As required by Rule 23(h), Class Members will receive notice of the motion for attorneys' fees and a right to object. *Id.*

### 8.     Further settlement-related proceedings

Any class member may express her views to the Court supporting or opposing the fairness, reasonableness, and adequacy of the proposed settlement. Agreement ¶ 30. Counsel for the parties

may respond to any objection within 21 days of receiving the objection. *Id.* ¶ 31. Any class member who submits a timely objection to the proposed settlement—that is, an objection made at least 30 days before the fairness hearing—may appear in person or through counsel at the fairness hearing and be heard to the extent allowed by the Court. *Id.* ¶ 32; Proposed Notice Plan ¶ 7.

After the deadlines for filing objections and responses have lapsed, the Court will hold the fairness hearing, during which it will consider any timely and properly submitted objections made by class members to the proposed settlement. Agreement ¶ 33. The Court will decide whether to enter a judgment approving the settlement and dismissing this lawsuit in accordance with the settlement agreement. *Id.* The parties will request that the Court schedule the fairness hearing no later than 150 days after entry of the Court's order approving settlement notice to the class. *Id.*

Within 90 days of a final order from this Court approving the settlement, the AO will provide KCC with the most recent contact information that it has on file for each class member, along with the information necessary to determine the amount owed to each class member. *Id.* ¶ 14. This information will be subject to the terms of the April 3, 2017 protective order entered by this Court (ECF No. 41), the extension of which the parties will be jointly requesting from this Court. Agreement ¶ 14. After receiving this information, KCC will then be responsible for administering payments from the settlement trust in accordance with the agreement. *Id.*

## ARGUMENT

### I.    The Court should certify the settlement class.

The settlement defines the class as all persons or entities who paid PACER fees between April 21, 2010 and May 31, 2018, excluding opt-outs, federal agencies, and class counsel. *Id.* ¶ 3 & Supp. Agreement. The vast majority of this class—anyone who paid PACER fees between April 21, 2010 and April 21, 2016—are members of the class certified by this Court in 2017. ECF No. 32. These class members have already received notice of the litigation and an opportunity to opt out.

A small subset of the class, however, has not. Settlement class members who paid PACER fees between April 22, 2016 and May 18, 2018, but not at any point in the six years prior, were not part of the original class certified by this Court. So they have not yet received notice or a chance to opt out. The plaintiffs therefore request that this Court certify, for settlement purposes only, an additional class that encompasses everyone who falls under this definition. This class meets the requirements of Rule 23(a) and 23(b)(3) for the same reasons as the original class. *See* ECF No. 33.

## II.    Because the settlement provides an exceptional recovery for the class, the Court should find that approval of the settlement is likely and direct that notice be provided to class members under Rule 23(e)(1).

Rule 23(e) requires court approval of a class-action settlement. This entails a "three-stage process, involving two separate hearings." *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 189–90 (D.D.C. 2017) (cleaned up). Before the Court may approve a class-action settlement, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2), in turn, requires that the settlement be "fair, reasonable, and adequate."

The first stage, then, is for the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms," *Ross*, 267 F. Supp. 3d at 194—a process often referred to as preliminary approval. *See Manual for Complex Litig.* § 21.632 (4th ed. updated 2022). If the Court preliminarily approves the settlement, the next stage is to direct that notice be "sent to the class describing the terms of the proposed settlement and explaining class members' options with respect to the settlement agreement . . . including the right to object to the proposed settlement." *Ross*, 267 F. Supp. 3d at 190; *see* William B. Rubenstein, *Newberg on Class Actions* § 13:1 (5th ed. updated 2022). The final stage involves a fairness hearing during which the Court examines

the settlement and any objections to it, followed by a decision on whether to approve the settlement. *Id.*

This case is at the preliminary-approval stage. "Whether to preliminarily approve a proposed class action settlement lies within the sound discretion of the district court." *Stephens v. Farmers Rest. Grp.*, 329 F.R.D. 476, 482 (D.D.C. 2019). That discretion, however, "is constrained by the principle of preference favoring and encouraging settlement in appropriate cases." *In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 16 (D.D.C. 2019); *see also id.* ("Class action settlements are favored as a matter of public policy."); *United States v. MTU Am. Inc.*, 105 F. Supp. 3d 60, 63 (D.D.C. 2015) ("Settlement is highly favored."). When a case settles early in the litigation, before any class has been certified, "the agreement requires closer judicial scrutiny than settlements that are reached after class certification." *Stephens*, 329 F.R.D. at 482 (cleaned up). But where, as here, a class has already been certified and the settlement follows years of hard-fought litigation, "[c]ourts will generally grant preliminary approval of a class action settlement if it appears to fall within the range of possible approval and does not disclose grounds to doubt its fairness or other obvious deficiencies." *Id.*; *see Richardson v. L'Oréal USA, Inc.*, 951 F. Supp. 2d 104, 106 (D.D.C. 2013).

The criteria guiding the preliminary-approval determination are supplied by Rule 23(e)(2), which requires consideration of whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate"; and "(D) the proposal treats class members equitably relative to each other." In considering these factors, the Court will also look to "the opinion of experienced counsel." *Stephens*, 329 F.R.D. at 486; *see also* Fed. R. Civ. P. 23, Advisory Committee Note, 2018 Amendments (observing that the Rule's enumerated factors were not intended to "to displace any factor" rooted in the case law). Each of these factors strongly supports preliminary approval here.

### A.      The class representatives and class counsel have vigorously represented the class throughout this litigation.

The first factor examines the adequacy of representation. In certifying the class in January 2017, this Court found that the three named plaintiffs are "particularly good class representatives" and that "[t]here is no dispute about the competency of class counsel"—Gupta Wessler, a litigation boutique with deep (and rare) experience in complex cases seeking monetary relief against the federal government, and Motley Rice, one of the nation's leading class-action firms. ECF No. 33 at 14–16.

That is no less true today. Since this Court's finding of adequate representation, the named plaintiffs and class counsel have spent nearly six years vigorously representing the class. They did so first in this Court, obtaining informal discovery from the judiciary that paved the way for an unprecedented decision concluding that the AO had violated the law with respect to PACER fees. They continued to do so on appeal, attracting a remarkable set of amicus briefs and favorable press coverage, and ultimately securing a landmark Federal Circuit opinion affirming this Court's decision and rejecting arguments made by the Appellate Staff of the U.S. Department of Justice's Civil Division. And they did so finally in mediation, spending months negotiating the best possible settlement for the class. In short, the representation here is not just adequate, but exemplary.

### B.      The settlement is the product of informed, arm's-length negotiations.

The next factor examines the negotiation process. It asks whether the negotiations were made at arm's length or whether there is instead some indication that the settlement could have been the product of collusion between the parties.

Here, "both sides negotiated at arms-length and in good faith," and "the interests of the class members were adequately and zealously represented in the negotiations." *Blackman v. District of Columbia*, 454 F. Supp. 2d 1, 9 (D.D.C. 2006) (Friedman, J.). The plaintiffs were represented by

class counsel, while lawyers at the Department of Justice and the AO appeared for the government. "Although the mediation occurred before formal fact discovery began," there had been "significant informal discovery," which ensured that "the parties were well-positioned to mediate their claims." *Radosti v. Envision EMI, LLC*, 717 F.Supp.2d 37, 56 (D.D.C. 2010); *see also Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20, 26 (D.D.C. 2011) (explaining that "formal discovery is not . . . required even for final approval of a proposed settlement" if "significant factual investigation [had been] made prior to negotiating a settlement"). "[T]he parties reached a settlement only after a lengthy mediation session that was presided over by an experienced mediator," *Radosti*, 717 F.Supp.2d at 56, and the settlement was approved by DOJ leadership and the judiciary's administrative body. Even in the ordinary case, where a settlement is "reached in arm's length negotiations between experienced, capable counsel after meaningful discovery," without government involvement, there is a "presumption of fairness, adequacy, and reasonableness." *Kinard v. E. Capitol Fam. Rental, L.P.*, 331 F.R.D. 206, 215 (D.D.C. 2019). The presumption here is at least as strong.

### C.   The settlement relief provided to class members is exceptional— particularly given the costs, risks, and delays of further litigation.

The third and "most important factor" examines "how the relief secured by the settlement compares to the class members' likely recovery had the case gone to trial." *Blackman*, 454 F. Supp. 2d at 9–10. This factor focuses in particular on "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2); *see also In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d at 16.

The relief provided to class members is remarkable. The total value of the settlement is $125 million, and every class member will be fully reimbursed, up to $350, for all PACER fees that they

paid during the Class Period. Those who paid more than $350 in fees during the Class Period will receive a payment of $350 plus their pro rata share of the remaining settlement funds. Further, any unclaimed funds after this initial distribution will be allocated evenly to all class members who collected their initial payment (capped at the total amount of fees that each class member paid during the Class Period). Because most class members paid less than $350 during the Class Period, the average class member will receive a full refund of all fees paid. This relief will also be provided in a highly efficient manner—through a common-fund settlement in which class members will not have to submit any claim or make any attestation to receive payment. Agreement ¶ 4.

This would be an excellent outcome for the class even if it were achieved after trial, but it is especially good given the significant costs, risks, and delays posed by pursuing further litigation against the federal court system. The $125 million common fund represents nearly 70% of the total expenditures determined by the Federal Circuit to have been unlawfully funded with PACER fees during the Class Period. Without a settlement, the case would be headed for years of litigation and likely another appeal, with no guarantee that the class would wind up with any recovery given the government's remaining argument against liability (that the plaintiffs could not prove that PACER fees would have been lower—or by how much—but for the unlawful expenditures). Although the plaintiffs and class counsel believe that the government's argument is incorrect (and further, that the AO should be liable for some portion of the CM/ECF expenses), the uncertainty and complete lack of case law on this issue counsel in favor of compromise. Add to that the benefits provided by avoiding protracted litigation and time-and-resource-intensive discovery into the remaining issues, and this is a superb recovery for the class.

The settlement's provision for attorneys' fees and service awards is also reasonable. The settlement provides that the total amount requested in service awards, administrative costs, and attorneys' fees will be no more than 20% of the aggregate amount of the common fund; and that

"the Court will ultimately determine whether the amounts requested are reasonable." *Id.* ¶¶ 18, 28. The settlement further provides that the plaintiffs will request service awards of no more than $10,000 per class representative. *Id.* ¶ 28.

This Court will have the opportunity to assess the reasonableness of any requested award once it is made. For now, it is enough to note that these provisions ensure that class counsel will request an amount in fees that is reasonable relative to the relief they obtained for the class. *See In re Black Farmers Discrimination Litig.*, 953 F. Supp. 2d 82, 98 (D.D.C. 2013) (Friedman, J.) ("[A] majority of common fund class action fee awards fall between twenty and thirty percent," and "even in megafund cases involving recoveries of $100 million or more, fees of fifteen percent are common.").

### D. The settlement agreement treats class members equitably relative to each other.

The fourth factor examines whether the settlement treats class members equitably vis-à-vis one other. The settlement here does so. It reimburses every class member for up to $350 in fees paid during the Class Period and distributes the remaining funds in a way that is proportional to the overcharges paid by each class member. This formula for calculating payments is reasonable under the circumstances of this case. It advances the AO's longstanding policy goal of expanding public access for the average PACER user and, in doing so, approximates how the AO likely would have chosen to reduce PACER fees during the Class Period had it been acting under a proper understanding of the law. Indeed, following this Court's summary-judgment decision, the AO doubled the size of the quarterly fee waiver, from $15 to $30. Gupta Decl. ¶ 20. Had it done the same over the Class Period, the total fee waiver available to all PACER users would have increased by $480. Reimbursing every PACER user for up to $350 in fees paid, with pro rata distributions to any users who paid more than that amount, is therefore fully in keeping with the AO's fee policy

and a reasonable allocation of damages. The minimum payments also make it likelier that class members will collect their payments, thereby maximizing recovery to the class.

In addition, the settlement is equitable in allowing the class representatives to seek service awards of up to $10,000, while recognizing that this Court has discretion to award a smaller amount (or no award at all). *See Cobell v. Salazar*, 679 F.3d 909, 922 (D.C. Cir. 2012); *Abraha v. Colonial Parking, Inc.*, 2020 WL 4432250, at *6 (D.D.C. July 31, 2020) (preliminarily approving settlement where "all parties will receive payments according to the same distribution plan and formulas, except for a relatively small additional payment" of $15,000 per named plaintiff "to compensate them for their time and effort in this litigation"). Service awards "are not uncommon in common-fund-type class actions and are used to compensate plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Radosti v. Envision EMI, LLC*, 760 F. Supp. 2d 73, 79 (D.D.C. 2011). The three nonprofits that prosecuted this case have been actively engaged in the litigation for more than six years—preparing declarations, receiving case updates, spending countless hours reviewing drafts and giving substantive feedback, and weighing in throughout the negotiation process, helping to produce a better outcome for all class members. Given their extraordinary contributions, it would be inequitable *not* to compensate them for their service.

### E.     The plaintiffs and class counsel support the settlement.

The final relevant factor is not enumerated in the text of Rule 23, but it is well-settled in the case law. Under this Court's cases, "the opinion of experienced and informed counsel should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *Prince v. Aramark Corp.*, 257 F. Supp. 3d 20, 26 (D.D.C. 2017). Counsel for both parties "are clearly of the opinion that the settlement in this action is fair, adequate, and reasonable," which only further confirms its reasonableness. *Cohen v. Chilcott*, 522 F.Supp.2d 105, 121 (D.D.C. 2007).

### III.     The notice and notice programs will provide class members the best notice practicable under the circumstances.

Due process requires that notice to class members be "reasonably calculated, under all the circumstances, to apprise [them] of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank Tr. Co.*, 339 U.S. 306, 314 (1950). Rule 23(e)(1) similarly requires that notice be directed in a "reasonable manner to all class members who would be bound by the proposal." The proposed notice meets these requirements. It describes the lawsuit in plain English, including the key terms of the settlement, the procedures for objecting to it, and the date of the fairness hearing. Agreement ¶ 29. The notice sent to the additional class members— those who paid fees only between April 22, 2016 and May 31, 2018—will also inform them of their right to opt out and the procedures through which they may exercise that right. Proposed Notice Plan ¶ 6. Further, the notices will be distributed in a way that is designed to reach all class members: email notice to all class members for whom the AO has an email address on file, and postcard notice to all class members for whom the AO does not have an email address or for whom email delivery was unsuccessful. Agreement ¶ 29; Proposed Notice Plan ¶¶ 2, 5. Relevant case documents will also be available on the settlement website. Agreement ¶ 29; Proposed Notice Plan ¶ 3.

## CONCLUSION

This Court should grant the motion for preliminary approval and enter the proposed order.

Respectfully submitted,

_/s/ Deepak Gupta_

Deepak Gupta
Jonathan E. Taylor
GUPTA WESSLER PLLC
2001 K Street, NW, Suite 850 North
Washington, DC 20006
(202) 888-1741
_deepak@guptawessler.com_
_jon@guptawessler.com_

William H. Narwold
MOTLEY RICE LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT  06103
(860) 882-1676
_bnarwold@motleyrice.com_

Meghan S.B. Oliver
Charlotte E. Loper
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
(843) 216-9000
_moliver@motleyrice.com_
_cloper@motleyrice.com_

October 11, 2022

_Counsel for Plaintiffs National Veterans Legal Services Program, National Consumer Law Center, Alliance for Justice, and the Class_

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2022, I electronically filed this motion for preliminary approval through this Court's CM/ECF system. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Deepak Gupta*

Deepak Gupta