IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL VETERANS LEGAL
SERVICES PROGRAM, NATIONAL
CONSUMER LAW CENTER, and
ALLIANCE FOR JUSTICE, for themselves
and all others similarly situated,

          *Plaintiffs*,

v.

UNITED STATES OF AMERICA,
          *Defendant*.

Case No. 1:16-cv-00745-PLF

**DECLARATION OF MEGHAN S.B. OLIVER**

I, Meghan S.B. Oliver, declare as follows:

1. I am a member of the law firm of Motley Rice LLC ("Motley Rice"). I submit this declaration in support of Class Counsel's application for an award of attorneys' fees in connection with services rendered in the above-captioned class action, as well as for reimbursement of expenses incurred by my firm in connection with the action. I have personal knowledge of the matters set forth herein, based upon my active participation in all pertinent aspects of this litigation, my review of the firm's litigation files, and consultation with other Motley Rice personnel who worked on this case. I could and would testify competently to matters set forth herein if called upon to do so.

2. Motley Rice has served as counsel in this litigation since it was filed on April 21, 2016, and has served as Co-Class Counsel since its appointment on January 24, 2017. In this capacity, my firm (often in conjunction with Co-Class Counsel) performed the following tasks,

among others: conducted a factual and legal investigation of the claims asserted; reviewed, drafted, and assisted with district-court and appellate filings; assisted in preparation for district-court and appellate oral arguments; participated in hearings; conducted limited formal and informal discovery; drafted notice documents; participated in mediation; negotiated the settlement; supervised all notice, notification, and dispute procedures implemented by the class administrator, KCC; and responded to hundreds of contacts and inquiries from class members.

3. The information in this declaration regarding the time spent on the case by Motley Rice attorneys and other professional support staff is based on contemporaneous daily time records regularly prepared and maintained by my firm. The information in this declaration regarding expenses is based on the records of my firm, which are regularly prepared and maintained in the ordinary course of business. These records are prepared from expense vouchers, check records, and other source materials that are an accurate record of the expenses incurred. I reviewed these time and expense records in connection with the preparation of this declaration.

4. The purpose of this review was to confirm both the accuracy of the time entries and expenses as well as the necessity for, and reasonableness of, the time and expenses committed to the litigation. Time billed by any timekeeper who spent fewer than 20 hours working on the case has been excluded from my firm's lodestar.

5. The administration of this settlement to date has been novel and complex, and has required more attorney work than is typical in a class-action settlement. This settlement differs in a number of ways from typical class-action settlements. First, there is no claims procedure. Notice has been made using PACER billing data maintained by the Administrative Office of the U.S. Courts (the AO), and settlement payments also will be made based on that data in order to maximize distribution of settlement funds. This has proved to be a complicated process. For

example, the class members are the *payers* of the PACER fees, but the data maintained by the government reflects accountholder information. Sometimes the accountholders did not pay the PACER fees themselves. The most common scenario where that mismatch occurs is an employer (e.g., a law firm or corporation) directly paying its employees' PACER fees.

6. To make every effort to ensure that class members receive proper proceeds from the settlement, my firm worked with KCC to design a website that permits (1) someone who paid PACER fees on someone else's behalf (e.g., a law firm paying PACER fees incurred by its attorneys) to so notify the claims administrator (Category 1 Notification); and (2) someone whose PACER fees were paid by someone else (e.g., a lawyer at a law firm that paid its attorneys' PACER fees) to so notify the claims administrator (Category 2 Notification). Category 1 Notifications trigger a dispute procedure. For example, if a law firm submits a Category 1 Notification on the class website that it paid PACER fees for a dozen specified accounts held by individual attorneys at the firm, each of those dozen attorneys will receive an email informing them that someone has notified the claims administrator that they paid that individual's PACER fees. Those individuals will then have 10 days to dispute the accuracy of that notification. Those disputes will be resolved before any distribution of settlement proceeds. As of August 24, 2023, we have received 33 Category 1 Notifications, 386 Category 2 Notifications, and 1 dispute. The website will accept notifications through September 5, 2023.

7. Class Counsel has learned through this notification process that PACER account identifiers changed in 2014 from alphanumeric identifiers (e.g., AB1234) to seven-numeric-digit identifiers (e.g., 1234567). The data initially provided by the government did not include any alphanumeric identifiers. This presents a problem for some payers (i.e., employers who paid on behalf of their employees) whose accounting records from 2010 – 2014 reflect only alphanumeric

3

identifiers. We modified the website to permit submission of alphanumeric identifiers, and the government agreed in mid-August to provide a cross-walk reference permitting former alphanumeric account numbers to be linked to the replacement seven-digit account identifiers. They have not yet provided that data.

8. Last, given the nature of the claims in this case—that public access to court records should be free to the greatest extent possible—Class Counsel have made every effort to make nearly all of the filings in this case available at no cost on the class website.

9. To account for what is expected to be extensive attorney work in the coming months, handling class member contacts, notifications and disputes, I expect that my firm will spend roughly an additional 750 hours over the next six months, or roughly $500,000 in lodestar. That estimate is based on the nature of the work and time spent on these tasks since notice was sent in July.

10. As a result of this review, I believe that the time reflected in the firm's lodestar calculation and the expenses for which payment is sought as set forth in this declaration are reasonable in amount and were necessary for the effective and efficient prosecution and resolution of the litigation.

11. The current hourly rates for the attorneys and professional support staff in my firm are the usual and customary rates set by the firm in complex litigation. These hourly rates are the same as, or comparable to, the rates accepted by courts in other complex class-action litigation. My firm's rates are set based on, among other factors, periodic analysis of rates charged by firms performing comparable work and that have been approved by courts. Different timekeepers within the same employment category (e.g., members, associates, staff attorneys, paralegals, etc.) may have different rates based on a variety of factors, including years of practice, years at the firm, year

in the current position (e.g., years as a member), relevant experience, and the rates of similarly experienced peers at our firm or other firms. For personnel who are no longer employed by my firm, the "current rate" used in the lodestar calculation is based upon the rate for that individual in his or her final year of employment at Motley Rice.

## Hours and Lodestar Information

12. Below is a summary lodestar chart which lists (1) the name of each timekeeper in my firm who devoted more than 20 hours to the case; (2) their title or position (e.g., member, associate, paralegal); (3) the total number of hours they worked on the case from its inception through and including August 17, 2023; (4) their current hourly rate; and (5) their lodestar (at both current and historical rates).

| Name | Title | Total Hours | Current Rate | Total Lodestar |
|---|---|---|---|---|
| Narwold, William | Member | 714.75 | $1,250 | $893,437.50 |
| Oliver, Meghan | Member | 570.45 | $950 | $541,927.50 |
| Tinkler, William | Associate | 139.15 | $550 | $76,532.50 |
| Loper, Charlotte | Associate | 348.40 | $525 | $182,910.00 |
| Bobbitt, Ebony | Associate | 86.90 | $525 | $45,622.50 |
| Rublee, Laura | Staff Attorney | 184.20 | $500 | $92,100.00 |
| Janelle, Alice | Legal Secretary | 48.60 | $380 | $18,468.00 |
| Shaarda, Lynn | Paralegal | 27.40 | $350 | $9,590.00 |

13. The total number of hours expended by Motley Rice in this case from inception through August 17, 2023 is 2,119.85 hours. The total resulting lodestar for my firm is $1,860,588.00 based on current rates.

5

## Expense Information

14. My firm's lodestar figures are based on the firm's hourly rates, which do not include charges for expense items. Expense items are billed separately, and such charges are not duplicated in my firm's hourly rates.

15. My firm seeks an award of $29,654.98 for expenses and charges incurred in connection with the prosecution of the case from its inception through August 17, 2023.

16. **Mediator:** $9,925.00. Motley Rice paid Resolutions LLC for the plaintiffs' portion of mediation services, specifically provided by Professor Eric D. Green.

17. **Travel, Food, and Lodging Expenses:** In connection with the prosecution of this case, my firm spent a total of $8,496.86 on out-of-town travel, including travel costs such as airfare, lodging, and meals while traveling.

18. **Other Expenses:** The following is additional information about certain other categories of expenses:

    a. Court Fees: $938.40 were paid to the Federal Circuit for my attorney admission fee, and for *pro hac vice* applications to this Court.

    b. Online Legal and Factual Research: $7,605.08 was paid to Westlaw and Lexis/Nexis for online legal research and cite-checking of briefs.

    c. Photocopying and Printing: $2,464.24. This includes copies and binders made in-house for hearings and the everyday prosecution of this case. It also includes the cost of a professional printer for the appellate filings in this case.

    d. Telephone: $146.35. These charges were for long-distance telephone and conference calling.

    e. Postage & Express Mail: $79.05.

19. In addition to the expenses incurred by my firm, Class Counsel seeks an award of $977,000 for notice and distribution of the settlement fund. This is based on notice expenses already incurred, and an estimate provided by KCC in late 2022 for settlement notice and distribution. Given complications experienced to date, we seek an additional $100,000 to account for unexpected complexities in the notification and dispute process and distribution of the settlement fund.

Dated: August 28, 2023

Respectfully submitted,

*[signature]*

Meghan S.B. Oliver