UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NATIONAL VETERANS LEGAL SERVICES PROGRAM, NATIONAL CONSUMER LAW CENTER, and ALLIANCE FOR JUSTICE, for themselves and all others similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 16-0745 (PLF) |
| v. | ) ) ) | |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

The United States files this response to Plaintiffs' motion for final approval of class settlement and for attorneys' fees, costs, and service awards.[1] In short, while the United States concurs that this Court should grant final approval to the preliminary settlement and bring this long-running litigation against the federal judiciary to a close, the Court should exercise its discretion in determining attorneys' fees, costs, and service awards to Plaintiffs' and Plaintiffs' counsel. *See Hensley v. Eckhart*, 461 U.S. 424 (1983) (holding that a trial court enjoys substantial discretion in making reasonable fee determinations); *see Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1272 (D.C. Cir. 1993). Herein, the United States provides some context and further information to aid the Court in its determination as to fees, costs, and service awards.

---

[1] Paragraph 20 of the Court's Order (ECF No. 153) provides the United States the ability to respond to Plaintiffs' motion for fees "thirty days" prior to the Settlement Hearing, which is scheduled for October 12, 2023. ECF No. 153 at 6.

I.      **The Settlement is Fair and Reasonable**

First, the United States offers its concurrence that the settlement be approved. As noted by Plaintiffs, there are four factors established by Federal Rule of Civil Procedure 23(e)(2) that govern final approval. These factors consider whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate"; and "(D) the proposal treats class members equitably relative to each other." Although the United States offers no position on the first prong (*i.e.*, the class representatives and class counsel have adequately represented the class), the Government concurs that the proposal was negotiated at arm's length, that the relief provided for the class is adequate, and that the proposal treats class members equitably relative to each other. The United States will focus its response on the last two factors.

The Government agrees that the relief provided for the class is more than adequate, as described by Plaintiffs, "extraordinary." Pls.' Mot. at 28. The total value of the settlement is $125 million, and class members will be fully reimbursed, up to $350, for all PACER fees that they paid during the class period. Those who paid more than $350 in fees during the class period will receive a payment of $350 plus their pro rata share of the remaining settlement funds. As discussed further below, this division is in line with the judiciary's long-standing policy of access to judicial records. As to the requested amount in attorneys' fees, costs, and service awards, the United States addresses that *infra* Section II.

Further, the proposal treats class members equitably relative to each other. On this particular point, the United States offers a couple considerations. First, although there was one objection by a class member regarding the payment threshold of $350, there is nothing inherently inequitable about distributing payments *pro rata* with a minimum cut-off, particularly in a

common fund case. For example, in *In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2019 WL 7877812, at *2 (E.D. Mich. Dec. 20, 2019), the district court approved a pro rata distribution up to $100 then distributed the remaining funds to all class members whose weighted pro rata allocation exceeds $100 (subject to their being sufficient funds for each class member claimant to receive at least $100). *See also Downes v. Wis. Energy Corp. Ret. Account Plan*, No. 09–C–0637, 2012 WL 1410023, at *3 (E.D. Wis. April 20, 2012) (overruling an objector's objection to the plan of allocation and approving a $250 guaranteed minimum net settlement to each class member). Second, this position is consistent with the E-Government Act, 28 U.S.C. § 1913, which permits electronic public access fees to "distinguish between classes of persons, and shall provide for exempting persons or classes of persons from the fees, in order to avoid unreasonable burdens and to promote public access to such information." It is also consistent with "efforts undertaken by the judiciary to ensure that public access fees do not create unnecessary barriers or burdens to the public have resulted in an allocation of the vast majority of PACER maintenance costs to the system's largest users (typically commercial entities that resell PACER data for profit)." Report of the Proceedings of the Judicial Conference of the United States, Sept. 2019 at 10, https://www.uscourts.gov/sites/default/files/judicial_conference_report_of_the_proceedings_september_2019_0.pdf (last accessed Sept. 12, 2023).

In sum, the United States concurs with this Court approving the proposed settlement. Counsel for both parties "are clearly of the opinion that the settlement in this action is fair, adequate, and reasonable," which only further confirms its reasonableness. *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 121 (D.D.C. 2007).

## II.     Attorneys' Fees, Costs, and Service Awards

Through their motion ("Pls.' Mot.", ECF No. 158), class counsel requests an attorneys' fees award of over $23 million, which amounts to slightly less than 20% of the common fund ($125 million).[2] This amount includes approximately $900,000 in work that has not yet occurred and may or may not occur. *See* Pls.' Mot., Gupta Decl. ¶¶ 63-64, ECF No. 158-5 at 22 (noting approximately $400,000 in anticipated fees by Gupta Wessler LLP and $500,000 by Motley Rice "for time that will be incurred to address post-settlement issues and inquiries."). The Court may wish to inquire as to how counsel came to that approximation, as the declarations provided in support of Plaintiffs' motion provide little, if any, explanation for these estimates.

In addition, the declarations submitted in support of Plaintiffs' motion calculate the lodestar with 2023 hourly rates, but fail to account that the litigation began in 2016, with class certification in 2017, when rates for both firms presumably were lower. *See e.g.*, Gupta Decl. ¶ 22 (noting Gupta's "current rate" as $1,150 per hour); *see also* Oliver Decl. ¶ 12, ECF No. 158-6 at 5 (identifying William Narwold's hourly rate as $1,250 and Meghan Oliver's hourly rate as $950). In assessing whether to award current or historical rates, courts may consider, among other factors, whether the delay in payment was "unusually long [ ] or attributable to the defendant's dilatory or stalling conduct." *West v. Potter*, 717 F.3d 1030, 1034 (D.C. Cir. 2013). Such is not the case here. The Supreme Court and lower courts have held that where payment is delayed in fee-shifting cases, a court may compensate for the time value of money by either using historic billing rates plus interest or by using present-day rates. *See Missouri v. Jenkins*, 491 U.S. 274, 283–84 (1989);

---

[2]   The parties' agreed that "when combined, the total amount of attorney fees, service awards, and administrative costs shall not exceed 20% of the Aggregate Amount. With respect to the attorney fees and service awards, the Court will ultimately determine whether the amounts requested are reasonable." *See* Mot. Prelim. Approval, Settle. Agmt. ¶ 28, ECF No. 141-1 at 11.

4

*Mathur v. Bd. of Tr. of S. Illinois Univ.*, 317 F.3d 738, 744–45 (7th Cir.2003). However, a significant number of those cases, including *Missouri v. Jenkins*, dealt specifically with fee shifting under 42 U.S.C. § 1988 in protracted civil rights litigation. This case cannot be compared to those cases, and Plaintiffs' counsel do not present any data in support of their claimed rates. *See In re LivingSocial Mktg. & Sales Pracs. Litig.*, 298 F.R.D. 1, 21-22 (D.D.C. 2013). Furthermore, as courts in this jurisdiction have noted, "[t]he market generally accepts higher rates from attorneys at firms with more than 100 lawyers than from those at smaller firms—presumably because of their greater resources and investments, such as attorneys, librarians, researchers, support staff, information technology, and litigation services." *Id*. (citing *Heller v. District of Columbia,* 832 F. Supp. 2d 32, 46-48 (D.D.C. 2011)). Though Motley Rice appears to fall above this threshold, Gupta Wessler LLP does not.

Importantly, though Plaintiffs rely on the declaration of Brian T. Fitzpatrick ("Fitzpatrick Decl.," ECF No. 158-4) in support of the reasonableness of their fees, they have chosen (with no explanation) not to utilize the U.S. Attorney's Office Fitzpatrick Matrix (created in conjunction with the very same Brian Fitzpatrick). *See* https://www.justice.gov/usao-dc/page/file/1504361/download. This is evident because class counsel seeks compensation for Gupta's 2023 rate of $1,150, which is significantly more than the top of the Fitzpatrick Matrix rate (*see id.*, which indicates $807 per hour for attorneys with over 35 years of practice). Gupta graduated from law school in 2002, making his 2023 rate $742, approximately $408 less per hour than the rate at which he seeks compensation. *See* https://www.linkedin.com/in/deepakguptalaw (last accessed Sept. 6, 2023). Similarly, Jonathan Taylor, also a principal at Gupta Wessler LLP, seeks compensation at a rate of $935 per hour (Gupta Decl. ¶ 63), even though public records indicate that Taylor graduated law school in 2010, and his 2023 Fitzpatrick Matrix rate is

significantly lower, at $664 per hour.  *See* https://www.linkedin.com/in/jonathan-taylor-071b61b. As for the Gupta Wessler firm, the lowest amount billed for an associate is $700, which is appropriate for an attorney with more than fifteen years of experience under the Fitzpatrick Matrix. https://www.justice.gov/usao-dc/page/file/1504361/download.  Yet the associates identified in the Gupta Declaration range from law school graduation years of 2013 through 2015, and do not have anywhere near the 17 years' experience to justify an hourly rate of $700.

Along the same vein, the rates sought by Motley Rice are significantly above those contemplated by the Fitzpatrick Matrix.  Mr. Narwold has been practicing the longest at approximately 44 years, but his 2023 rates are $807 per the Fitzpatrick Matrix, almost $450 less *per hour* than his requested rate.  Oliver Decl. ¶ 12 (seeking $1,250 per hour).  Oliver's rates are also higher; she is a 2004 law school graduate with approximately 19 years of experience, billing more than $150 per hour more for rates reserved for attorneys practicing over 35 years.  *See* https://www.justice.gov/usao-dc/page/file/1504361/download (establishing 2023 rates for attorneys with 19 years' experience at $726 per hour).

Though not in the class action context, other judges in this District have reasoned that the Fitzpatrick Matrix "presumptively applies" in federal complex litigation.  In the published opinions in this district in which the Fitzpatrick Matrix has been juxtaposed against the LSI Matrix, the Fitzpatrick Matrix has won out.  *See J.T. v. District of Columbia*, Civ. A. No. 19-989 (BAH), 2023 WL 355940, at *14-15 (D.D.C. Jan. 23, 2023); *Louise Trauma Ctr. LLC v. Dep't of Homeland Sec.*, Civ. A. No. 20-1128 (TNM), 2023 WL 3478479, at *4 (D.D.C. May 16, 2023) (explaining that "Fitzpatrick Matrix rates presumptively apply" in complex federal litigation and citing *J.T.*); *see also Brackett v. Mayorkas*, Civ. A. No. 17-0988 (JEB), 2023 WL 5094872, at *4-5 (D.D.C. Aug. 9, 2023) (in employment discrimination case, reasoning that it was appropriate to apply

6

Fitzpatrick Matrix rates across the board and rejecting plaintiff's challenges to the Fitzpatrick Matrix and attempts to obtain even higher than LSI Matrix, attorney-specific rates); *see also Hartman v. Pompeo*, Civ. A. No. 77-2019 (APM), 2020 WL 6445873, at *19 (D.D.C. Nov. 3, 2020) (before availability of Fitzpatrick Matrix, noting in class action context that it would not be unduly burdensome to apply the LSI-adjusted matrix or "something similar," finding that plaintiffs failed to meet their burden to establish propriety of attorney-specific rates and that the court lacked the information necessary to "adjust the attorney's hourly rate in accordance with specific proof linking the attorney's ability to a prevailing market rate"). In light of Plaintiffs' failure to satisfy their burden to establish that above-market rates are appropriate in this case, *Winston & Strawn LLP v. FDIC*, 894 F. Supp. 2d 115, 130 (D.D.C. 2012) (citing *Perdue v. Kenny A.*, 559 U.S. 542 (2010)), the Court may wish to inquire as to the basis for counsels' rates, and determine whether a reduction in line with prevailing market rates pursuant to the Fitzpatrick Matrix rate is appropriate.

Plaintiffs also request payment of over $1 million to the class Administrator, including approximately $100,000 for work not yet performed. Pls.' Mot. at 48; Oliver Decl. ¶ 19. Importantly, Plaintiffs seek an extra $100,000 beyond what was originally contemplated, due to "unexpected complexities in the notification and dispute process," but do not provide any further details as to those complexities. *Id.* The Court may wish to seek further detail from Plaintiffs' as to these estimated amounts, and exercise its discretion in determining whether Plaintiffs' have adequately demonstrated that such payments are likely and/or reasonable.

Finally, the Court may wish to apply a lodestar cross-check to determine the reasonableness of the sought-after fee.[3] *In re Black Farmers Discrimination Litig.*, 953 F. Supp. 2d 82, 101

---

[3] The United States reserved its right to request that the Court apply a lodestar crosscheck in the parties' settlement agreement. Settle. Agmt. ¶ 28, ECF No. 141-1 at 11.

(D.D.C. 2013). Plaintiffs indicate that their total lodestar (without inclusion of estimated future fees) is approximately $5.13 million. Gupta Decl. ¶ 63; *see also* Fitzpatrick Decl. ¶ 27, ECF No. 158-4 at 17. Plaintiffs seek over $23.8 million as compensation, which results in a multiplier of approximately 4.65 percent. With Plaintiffs' inchoate "anticipated future fees," this number drops to a multiplier of approximately 3.9 percent. Gupta Decl. ¶ 64. Regardless of the multiplier used, as the Fitzpatrick declaration concedes, this multiplier is "above average." Fitzpatrick Decl. ¶ 27; *see In re Baan Co. Sec. Litig.*, 288 F. Supp. 2d at 19–20 (reviewing counsel's reported lodestar and finding "that a multiplier of 2.0 or less falls well within a range that is fair and reasonable"); *see also Swedish Hosp. Corp.*, 1 F.3d at 1272 (approving fee award approximately 3.3 times the lodestar amount).

In sum, "once it is determined that the attorneys are entitled to be paid from the common fund, it is the duty of the court to determine the appropriate amount," based on "reasonableness under the circumstances of a particular case." *Democratic Cent. Comm. of Dist. of Columbia v. Washington Metro. Area Transit Comm'n*, 3 F.3d 1568, 1573 (D.C. Cir. 1993). The Court's independent scrutiny of an award's reasonableness is particularly important in common fund cases, because "the conflict between a class and its attorneys may be most stark where a common fund is created and the fee award comes out of, and thus directly reduces, the class recovery." *Id.* (quotation omitted); *see Swedish Hosp. Corp.*, 1 F.3d at 1265. "[W]here the settlement agreement creates a common fund against which individual plaintiffs may make claims," the Court must "'act as fiduciary for the beneficiaries'" of the fund "'because few, if any, of the action's beneficiaries actually are before the court at the time the fees are set'" and because "'there is no adversary process that can be relied upon in the setting of a reasonable fee.'" *In re Dep't of Veterans Affairs Data Theft Litig.*, 653 F. Supp. 2d 58, 60 (D.D.C. 2009). Defendant does not take issue with the

general approach of awarding Plaintiffs' counsel a percentage of the common fund in this case, but there are indicia—including above-market hourly rates that Plaintiffs' counsel have not shown to be reasonable and inadequately explained predictions of future work—that the common fund may be excessively depleted, to the detriment of class members, if Plaintiffs' counsel are awarded the percentage of the common fund that they have requested. The Court should carefully examine this fee matter to ensure that class members' rights and recovery are appropriately safeguarded.

Dated: September 12, 2023
       Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By: /s/ *Brenda González Horowitz*
    BRENDA GONZÁLEZ HOROWITZ
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2512

*Attorneys for the United States of America*