**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

*National Veterans Legal Services Program v. United States of America*

No. 16-745

## SUPPLEMENTAL DECLARATION OF BRIAN T. FITZPATRICK

1.　　　I filed a declaration in support of class counsel's fee request on August 28, 2023.  I am submitting this supplemental declaration to respond to the questions about class counsel's lodestar calculation raised by the Department of Justice and an objector.

2.　　　Let me begin by noting that the Department of Justice does not dispute that the percentage method is the appropriate method for calculating the attorneys' fee in this matter.  Nor does the Department, or any objector, seriously refute my conclusion that an award of fees equal to approximately 19% of the cash settlement in this case is more than reasonable in light of the empirical studies and research on economic incentives in class-action litigation—especially given the novelty, complexity, duration, and risk of this seven-year litigation against the federal judiciary; the indisputably outstanding results obtained for the class; and the high quality and creativity of class counsel's legal work.  As I explain below, even if class counsel's lodestar were adjusted in the ways suggested by the Department and the objector, it would not transform the *below-average* fee percentage requested here into a "windfall."  Hence, the discussion of the lodestar and how it is calculated is an unnecessary sideshow.

3.　　　The ink that has already been spilled over class counsel's hourly rates shows why a focus on the lodestar defeats one of the principal virtues of the percentage method for setting attorneys' fees in class actions.  As I noted in my opening declaration, one of the many reasons that the lodestar method fell out favor in common-fund class actions to the benefit of the percentage

method is that the percentage method does not require courts to review attorney time records.  To the extent that courts use a lodestar crosscheck with the percentage method—and most courts do *not, see* Fitzpatrick Decl. ¶ 22—courts try to prevent the administrative headache of the lodestar method from reappearing.  They do so by treating any crosscheck as a quick, back-of-the-envelope calculation simply to ensure class counsel is not obtaining a so-called "windfall" with the percentage method.  But the difference between a "windfall" and a non-"windfall" will not turn on minutiae concerning methods for calculating hours or rates.  This is why the crosscheck can be done on the back of an envelope.

4.      The Department and the objector question whether, in the event that a lodestar crosscheck is deemed necessary, the so-called "Fitzpatrick Matrix" must be used to calculate class counsel's lodestar.  The answer is no.  I developed the Fitzpatrick Matrix—pro bono—at the request of the Department—specifically, for the Civil Division of the U.S. Attorney's Office for the District of Columbia—based on the Department's desire to utilize my expertise in the empirical study of attorneys' fees.  As the explanatory notes to the Matrix on the Department's website explicitly state, "the [M]atrix is intended for use in cases in which a fee-shifting statute permits the prevailing party to recover 'reasonable' attorney's fees."  *See* The Fitzpatrick Matrix, https://www.justice.gov/usao-dc/page/file/1504361/download, Explanatory Note 2.  The fee sought here is not a fee that will be paid by the government pursuant to a fee-shifting statute.  It is a fee that will be paid by the class pursuant to the common law of unjust enrichment.  By its own terms, the Matrix is therefore irrelevant to this fee request.

5.      Moreover, even in statutory fee-shifting cases, the Matrix—again, by its own terms—is not one-size-fits-all.  The Matrix is a settlement tool, designed "to minimize fee disputes" with the Department.  *Id.* at Explanatory Note 10.  In particular, the Matrix contemplates

that parties will use non-Matrix rates when warranted; the Department simply agreed not to oppose any fee-shifting request based on the rates in the Matrix. *See id* at Explanatory Note 3 ("For matters in which a prevailing party agrees to payment pursuant to this fee matrix, the United States Attorney's Office will not request that a prevailing party offer the additional evidence that the law otherwise requires."). Class counsel's hourly rates fall above those in the Matrix. Nothing about the Matrix precludes that.

6.      Indeed, to contend otherwise misconceives how the Matrix was created. The Matrix was created using a trove of data from all manner of complex cases and all manner of lawyers; the data includes individual employment-discrimination cases, FOIA cases, and Fair Debt Collection Practices Act cases, among many others. The numbers in the Matrix fall in the *middle* of this data. It was produced by least-squares regression; that is, the numbers in the Matrix minimize the distance between the data above them and the data below them. *See id.* at Explanatory Note 10. For example, the trove of data used to produce the Matrix included hourly rates that ranged from $100 to $1250 (and those rates were from several years ago). *See id.* at Explanatory Note 8. Above-average lawyers commanded rates at the high end of the range and below-average lawyers at the low end. Class counsel here include some of the best class action lawyers not just in the District of Columbia, but in the entire United States of America. It is not surprising that their rates fall at the high end of the range. What is surprising is that class counsel's rates do not exceed the range altogether given that the range was drawn from data from several years ago. In other words, if anything, the class is getting a bargain for lawyers of this caliber.

7.      Finally, even if class counsel's lodestar were recalculated using the Fitzpatrick Matrix, the adjusted lodestar multiplier would still only be 5.53 (based on a total adjusted lodestar of $4,311,685.34, as explained in the supplemental declaration from class counsel). As I

demonstrated in my opening declaration, this is still well within the range of multipliers that resulted from previous percentage-method fee awards, and, for the reasons I stated there, still does not suggest there will be any windfall here: the risk this case would yield nothing far outstrips even the adjusted multiplier. *See* Fitzpatrick Decl. ¶ 27. The same would be true if the lodestar were adjusted in other ways suggested by the Department and the objector—for example, if class counsel's historical rather than current rates were (mistakenly) used or if the estimated future time were (mistakenly) excluded. In neither case would the multiplier fall outside a reasonable range consistent with comparable past awards nor exceed the risk of non-recovery presented by this lawsuit. Indeed, even if all of these adjustments were (mistakenly) made simultaneously the multiplier would still be within a reasonable range.

8.      In short, none of the questions raised about class counsel's lodestar calculation would change anything in the end in any event. That is, after all, why it is called the percentage method.

October 1, 2023

Brian T. Fitzpatrick

Nashville, TN