IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL VETERANS LEGAL
SERVICES PROGRAM, NATIONAL
CONSUMER LAW CENTER, and
ALLIANCE FOR JUSTICE, for themselves
and all others similarly situated,
                *Plaintiffs*,

v.

UNITED STATES OF AMERICA,
                *Defendant*.

Case No. 16-745

**SUPPLEMENTAL DECLARATION OF DEEPAK GUPTA**

I, Deepak Gupta, declare as follows:

1. This supplemental declaration addresses three points made in the government's response to our motion for final approval—all of which focus exclusively on the calculation of the lodestar for our work in this case (a calculation that, for reasons explained in the motion, is not the basis of class counsel's request for attorneys' fees). I also briefly address the evidentiary basis for the requested service awards for the three class representatives.

2. *First*, the government correctly notes that the lodestar includes an estimate for work that had not yet been performed when the number was calculated—$400,000 for my firm's projected future work and $500,000 for Motley Rice's projected future work—and asserts that there has been "little, if any, explanation for these estimates." Gov. Resp. 4. As we explained in the motion (at 37–38 n.3), however, those estimates include the time that we projected we would have to spend "responding to inquiries from class members about legal issues, damages calculations, and the mechanics of the settlement; responding to potential objections and filing any replies in support of the settlement; preparing for and participating in the fairness hearing; handling any appeal;

1

assisting class members during the settlement-administration process and ensuring that it is carried out properly; and addressing any unanticipated issues that may arise." Further, Meghan Oliver of Motley Rice stated in her declaration accompanying the motion that her firm expected "to spend roughly an additional 750 hours over the next six months, or roughly $500,000 in lodestar," a figure that was "based on the nature of the work" and that was extrapolated from "time spent on these tasks since notice was sent in July." Oliver Decl. ¶ 9. In other words, Motley Rice calculated its estimate by taking its average monthly lodestar for responding to inquiries in July and August and multiplying that number by six to account for six additional months of similar work.

3. Since we calculated our lodestar, the reasonableness of our projected totals for future work have only been further confirmed. My firm has already spent more than 100 hours working on the case since then (yielding a lodestar of more than $100,000 at our current billing rates). That includes time spent editing and finalizing the motion for final approval (which was not included in the original total because it occurred after the calculations had been run), and time spent evaluating and responding to the government and the objectors. We expect to spend additional time preparing for the upcoming fairness hearing and assisting class members with any legal questions they might have. And while only three class members out of hundreds of thousands have come forward to object, the possibility of an appeal is very real given that one of the objectors (Eric Alan Isaacson) touts himself on his website as "a prominent appellate litigator," *see* https://www.ericalanisaacson.com/appellate-practice/, and has been described by courts as a "professional objector[] who threaten[s] to delay resolution of class action cases unless they receive extra compensation," *Muransky v. Godiva Chocolatier, Inc.*, 2016 WL 11601079, at *3 (S.D. Fla. 2016). Were there an appeal, it could easily require an additional $200,000 or more of lodestar. Given this possibility, and given the work we have already performed since calculating our lodestar as well as the unusual size and complexity of this settlement's administration, it continues to be my

belief that my firm's estimate of $400,000 in future lodestar is reasonable and, indeed, conservative. And given that Motley Rice's estimated future lodestar was based on an extrapolation from representative data, I remain convinced that their projection of $500,000 is equally reasonable.

4. *Second*, the government suggests that our firm's rates should be adjusted downward because we are a small firm and the market for legal services "generally accepts higher rates from attorneys at firms with more than 100 lawyers than from those at smaller firms—presumably because of their greater resources and investments, such as attorneys, librarians, researchers, support staff, information technology, and litigation services." Gov. Resp. 5. To the extent the government is suggesting that attorneys of equal experience, skill, and reputation are compensated more highly by the market *solely* because they work at a large law firm (such as DLA Piper, with approximately 3,800 lawyers), that has not been my experience. Some of the nation's best advocates, who command high hourly rates, work at small law firms with far fewer than "100 lawyers" (such as Clement & Murphy PLLC, with 13 lawyers). *Contra* Gov. Resp. 5. And all other factors being equal, large law firms' "greater resources and investments" in staff, technology, and the like create economies of scale that, if anything, should allow them to charge their clients *lower* hourly rates. Likewise, having more attorneys and more staff to devote extra hours to a case does not in any way allow large law firms to charge their clients higher hourly rates for those additional hours. Again, in my experience, the opposite is true. In reality, large law firms frequently end up charging lower hourly rates to their corporate clients (who often have leverage of their own). *See, e.g.*, Lisa Ryan, *BigLaw Will Discount Deep To Keep Big Clients Happy*, Law360 (Aug. 5, 2014), https://perma.cc/Z2YQ-BWVH; Jennifer Smith, *On Sale: The $1,150-Per-Hour Lawyer: Lawyer Fees Keep Growing, But Don't Believe Them. Clients Are Demanding, and Getting, Discounts*, Wall St. J. (Apr. 3, 2013), https://perma.cc/TSW8-Q346.

5.  *Third*, the government suggests that our billing rates are higher than the market would bear, and that the Court should "inquire as to the basis for [those] rates" and determine whether to instead use rates contained in a fee matrix prepared by our expert Brian Fitzpatrick at the request of the Department of Justice for purposes of settling fee disputes in statutory fee-shifting cases against the federal government. Gov. Resp. 7. To be clear, the rates we have quoted are rates that our firm *actually charges* to paying clients. So, by definition, these are rates that the market will bear. Moreover, as Mr. Fitzpatrick explains in his supplemental declaration, his fee matrix is wholly irrelevant here for numerous reasons—among others, that it is designed for ordinary statutory fee-shifting cases; that it is a settlement matrix that sets a floor, not a ceiling; and that it uses data from garden-variety litigation, such as individual employment-discrimination cases. Nevertheless, I have recalculated our original lodestar using the hourly rates from this matrix, and they are as follows:

| **Name** | **Title** | **Total Hours** | **Year** | **Fitzpatrick Matrix Rate** | **Total Matrix Lodestar** |
|---|---|---|---|---|---|
| Deepak Gupta | Principal | 1497.5 | 2002 | 742 | $1,111,145.00 |
| Jonathan E. Taylor | Principal | 1519 | 2010 | 664 | $1,008,616.00 |
| Rachel Bloomekatz | Principal | 5.73 | 2008 | 687 | $3,936.51 |
| Peter Romer-Friedman | Principal | 3.00 | 2006 | 707 | $2,121.00 |
| Daniel Wilf-Townsend | Associate | 12.60 | 2015 | 598 | $7,534.80 |
| Joshua Matz | Associate | 6.40 | 2012 | 638 | $4,083.20 |
| Neil Sawhney | Associate | 3.30 | 2014 | 612 | $2,019.60 |
| Robert Friedman | Associate | 2.60 | 2013 | 625 | $1,625.00 |
| Stephanie Garlock | Paralegal | 27.55 | - | 220 | $6061.00 |
| Mahek Ahmad | Paralegal | 52.75 | - | 220 | $11,605.00 |
| Rana Thabata | Paralegal | 24.62 | - | 220 | $5,416.40 |
| Nabila Abdallah | Paralegal | 17.57 | - | 220 | $3,865.40 |
| Total Past Lodestar | | | | | $2,168,028.91 |

6.  As this chart shows, my firm's total lodestar for past work, when recalculated using the Fitzpatrick matrix, would be $2,168,028.91. As Ms. Oliver explains in her supplemental

4

declaration, her firm's total lodestar for past work, when recalculated using the Fitzpatrick matrix, would be $1,480,645.35. These figures would result in a corresponding reduction to the projected future lodestar for our two firms. Specifically, my firm's projected future lodestar would become $265,113.92 using the Fitzpatrick matrix ($400,000 x $2,168,028.91/$3,271,090.25), while Motley Rice's projected future lodestar would become $397,897.16 ($500,00 x $1,480,645.35/$1,860,588). Add it all up, and our total adjusted lodestar would be $4,311,685.34, which produces a multiplier of 5.53.

7. One final point bears mention. Mr. Isaacson challenges the propriety of awarding $10,000 per class representative for their contributions to this case. But he does not grapple with the evidentiary basis for that request. Throughout the seven years of this litigation, experienced in-house lawyers at the National Veterans Legal Services Program, National Consumer Law Center, and Alliance for Justice performed invaluable work that was necessary to prosecute this case effectively and ethically. Had they not performed that work on the litigation, the same work would have had to be performed by class counsel or, perhaps more likely, by other outside counsel hired by each organization at far greater expense. As the declarations of Renée Burbank, Stuart Rossman, and Rakim Brooks explain, the market value of the attorney time incurred by each of the three organizations over seven years greatly exceeded $10,000 at market rates. The requested awards here are thus entirely unlike typical incentive awards: They are not for the personal services or private expenses of an individual class representative nor do they reflect any sort of personal "salary" or "bounty." They instead reflect a bargain price for work that was actually performed by experienced in-house counsel and that was necessary to carry out the prosecution of this suit.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed in Washington, DC, on October 3, 2023.    */s/ Deepak Gupta*
                                                    Deepak Gupta