# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NATIONAL VETERANS LEGAL SERVICES PROGRAM, NATIONAL CONSUMER LAW CENTER, and ALLIANCE FOR JUSTICE, for themselves and all others similarly situated, | ) ) ) ) ) ) ) | Civil No. 16-745-PLF<br><br>OBJECTION OF ERIC ALAN ISAACSON TO PROPOSED SETTLEMENT IN *NATIONAL VETERANS LEGAL SERVICES PROGRAM, ET AL. V. UNITED STATES OF AMERICA* |
| Plaintiffs, | ) ) ) |  |
| vs. | ) ) |  |
| UNITED STATES OF AMERICA, | ) ) |  |
| Defendant. | ) ) ) |  |

## OBJECTION OF ERIC ALAN ISAACSON TO PROPOSED SETTLEMENT IN *NATIONAL VETERANS LEGAL SERVICES PROGRAM, ET AL. V. UNITED STATES OF AMERICA*

As set forth in his accompanying declaration, Eric Alan Isaacson is a Class Member who would be bound by the Proposed Settlement of this matter. As set forth in his declaration, Isaacson opened his own PACER Account (No. 4166698) in March of 2016. He has paid quarterly PACER bills ever since. Isaacson's class-period PACER billings totaled $3,823.50. He has received reimbursement for only $171.80 of that amount. Thus, Isaacson's unreimbursed Class Period PACER expenditures come to $3,651.70. Isaacson expects no further reimbursements for those Class Period PACER charges.

For reasons set forth below, Isaacson respectfully objects to the Proposed Settlement and to the proposed attorney's fees and incentive awards.

1

## I.      INTRODUCTION

Rule 23(e)(2) permits the District Court to approve the Proposed Settlement "only on finding that it is fair, reasonable, and adequate after considering whether," among other things, "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment." Fed.R.Civ.P. 23(e)(2)(C). The Court also must consider whether "the proposal treats class members equitably relative to each other." Fed.R.Civ.P. 23(e)(2)(D).

Here the Settlement is objectionable because it treats Class Members inequitably, allocating far too much to a pro rata distribution on the basis of institutional PACER users and law firms whose Class Period PACER expenditures were reimbursed by their clients, from class-action settlement funds. *See infra* at 4-9. It also is inequitable because it allocates $10,000 apiece to the Named Plaintiffs as special bonuses in this, a Little Tucker Act case in which the Court's jurisdiction is limited to claims for $10,000 or less. *See* 28 U.S.C. §1346(a)(2). The special payments are, moreover, prohibited by decisions of the Supreme Court, sitting in equity, which hold that the equitable common-fund doctrine permits representative plaintiffs to recover their reasonable litigation expenses from a common-fund recovery, but which flatly prohibit any payment compensating litigants for their service as class representatives.

"Since the decisions in *Trustees v. Greenough,* 105 U.S. 527 (1882), and *Central Railroad & Banking Co. v.* Pettus, 113 U.S. 116 (1885), [the Supreme] Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). But any additional payment to compensate representative plaintiffs for their own "personal services" on behalf of a class is both "decidedly objectionable" and "illegally made." *Greenough,* 105 U.S. at 537-38. A representative plaintiff's "claim to be compensated, out of the fund ... for his personal services" the Supreme Court "rejected as

unsupported by reason or authority." *Pettus,* 113 U.S. at 122. "Supreme Court precedent prohibits incentive awards."[1] *See infra* at 14-17.

Even more problematic, the Settlement allocates far too much to Class Counsel as attorney's fees. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. ... The result is what matters." *Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983). But here Class Counsel have achieved a remarkably mediocre result. "According to class counsel, the absolute maximum possible recoverable damages here following the Federal Circuit's decision were around $500 million." DE158-4¶20 (Fitzpatrick decl.). Their fee expert, Brian Fitzpatrick, concludes that "the class is recovering 25% of what they might have received at trial had everything gone their way." DE158-4:13¶20 (Fitzpatrick decl.). That is exactly what large-stakes class actions can be expected to settle for without regard to the merits of the underlying claims. *See* Janet Cooper Alexander, *Do the Merits Matter? A Study of Settlements in Securities Class Actions,* 43 Stan. L.Rev. 497, 500 (1991)(finding that securities class actions "settled at an apparent 'going rate' of approximately one quarter of the potential damages"). It is, in the end, a run-of-the-mill settlement that does not justify the award of attorney's fees that Class Counsel seeks. It appears likely, quite frankly, that Class Counsel have sacrificed the Class's interests in order to obtain clearly extravagant attorney's fees for themselves of nearly four times their claimed lodestar—which lodestar is itself inadequately documented and unsupported. Their claimed billing rates far exceed those that their own expert has found should prevail in complex federal cases like this. *See infra* at 9-14.

---

[1] *Johnson v. NPAS Sols., LLC,* 975 F.3d 1244, 1255 (11th Cir.2020), *reh'g denied,* 43 F.4th 1138 (11th Cir.2022); *accord, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.,* 999 F.3d 1247, 1257 (11th Cir.2021)("such awards are prohibited"); *Medical & Chiropractic Clinic, Inc. v. Oppenheim,* 981 F.3d 983, 994 n.4 (11th Cir.2020)("such service awards are foreclosed by Supreme Court precedent"); *cf. Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.,* 62 F.4th 704, 721 (2d Cir.2023)("Service awards are likely impermissible under Supreme Court precedent.").

## II.     THE SETTLEMENT IS NOT FAIR, REASONABLE, AND ADEQUATE

Named Plaintiffs have not demonstrated by a preponderance of the evidence that Rule 23's requirements are satisfied. First and foremost, they have failed to demonstrate that the Proposed Settlement is fair, reasonable, and adequate as required by Fed.R.Civ.P. 23(e)(2). They have not shown that relief provided for the class is adequate, taking into account the method of distributing relief to the class, and the request for Class Counsel to be compensated at nearly four times their reasonable hourly rates, Fed.R.Civ.P. 23(e)(2)(C)(ii), (iii), and they certainly have not shown that the proposal treats class members equitably relative to one another. Fed.R.Civ.P. 23(e)(D).

### A.     The Settlement Allocates Far Too Much Too Large PACER Users, Including Institutional Users Such as the Named Plaintiffs, Large Law Firms That Have Been Reimbursed by Their Clients, and Class-Action Lawyers Who Have Been Reimbursed from Class-Action Settlement Funds

Named Plaintiffs concede that they pushed for a purely pro-rata allocation among members, under which Class Members who spent the most on PACER during the Class Period would take the lion's share of the Settlement proceeds. But the largest users include large law firms, which themselves suffered no injury because they long ago passed most of the PACER charges that they paid on to their clients. The largest users also likely include plaintiffs-side class-action firms (like those representing Named Plaintiffs in this very action), which generally are reimbursed for PACER expenses when class actions settle. To the extent that the funds in this case are allocated to such class members, they constitute a windfall—at the expense of class members, such as Isaacson, whose Class Period PACER expenses were, in greatest part, neither passed on to clients nor otherwise reimbursed.

The Named Plaintiffs have purported to litigate this case in the interest of the little user. Their Complaint demanded compliance with Congress' intent that court documents "be 'freely available to the greatest extent possible.'" DE1:1 (quoting S.Rep. 107–174, 107th Cong., 2d Sess. 23 (2002)). They said that excessive PACER fees had "inhibited public understanding of the courts and thwarted equal access to justice," asserting that "the AO has further compounded these harms by discouraging fee waivers, even for *pro se* litigants," and "by hiring private collection lawyers

to sue people who cannot afford to pay the fees." DE1:1-2; *see also* DE1:11¶23; DE1:12¶25. Plaintiff National Consumer Law Center said it "seeks to achieve consumer justice and economic security for low-income and other disadvantaged Americans." DE1: 3¶2.

Yet when it came time to negotiate a settlement, the Named Plaintiffs abandoned such users—and the public interest—by advocating a purely pro-rata distribution of settlement funds that would favor large institutional users such as themselves, and that provides windfalls to large law firms that long ago passed their PACER charges on to paying clients, and to plaintiffs-side class-action lawyers (such as those representing the Named Plaintiffs) who have been fully reimbursed from settlement funds in other cases. Class Counsel concedes that in settlement negotiations with the government, Named Plaintiffs

> argued that funds should be distributed pro rata to class members, while the government vigorously insisted that any settlement include a large minimum amount per class member, which it maintained was in keeping with the AO's longstanding policy and statutory authority to "distinguish between classes of persons" in setting PACER fees—including providing waivers—"to avoid unreasonable burdens and to promote public access to such information," 28 U.S.C. §1913 note.

DE158-5:10¶28 (Gupta decl.); *see also* DE158:23[ECFp31] ("plaintiffs and class counsel vigorously advocated for a pro-rata approach").

The government was right. Named Plaintiffs' advocacy for pro-rata distribution was grossly inappropriate. The "blend" reached as a compromise allocates far too much to a pro rata distribution that unfairly advantages large users and law firms that already have been reimbursed—and who accordingly receive inequitable windfalls under the Settlement.

The pro-rata portion of the distribution is calculated to produce unfair windfalls. Many law firms, particularly the larger ones, pass the PACER charges that they incur on to their clients and are reimbursed for them on thirty-day billing cycles.[2] Class-action lawyers have to wait a little

---

[2] *See Hallmark v. Cohen & Slamowitz, LLP,* 378 F. Supp. 3d 222, 236 (W.D.N.Y. 2019)(holding PACER fees are among "those ordinarily charged to clients"); *Godson v. Eltman, Eltman, & Cooper, P.C.,* 328 F.R.D. 35, 68 (W.D.N.Y. 2018)(holding PACER fees are among "those ordinarily charged to clients"); *Decastro v. City of New York,* No. 16-cv-3850 (RA), 2017 WL

longer—but they typically are reimbursed for PACER charges when class actions settle.[3] And we know that the great majority of class actions settle.[4] Indeed, Class Counsel's own fee expert

---

4386372, at *10 (S.D.N.Y. Sept. 30, 2017)(no contest that PACER fees are among the "out-of-pocket expenses ordinarily charged to clients").

[3] *See, e.g., Ciapessoni v. United States,* 145 Fed. Cl. 564, 565 (2019); *Godson v. Eltman, Eltman, & Cooper, P.C.,* 328 F.R.D. 35, 67 (W.D.N.Y. 2018); *In re Broadwing, Inc. ERISA Litig.,* 252 F.R.D. 369, 382 (S.D. Ohio 2006); *Lusk v. Five Guys Enterprises LLC*, No. 1:17-CV-0762 JLT EPG, 2023 WL 4134656, at *30 (E.D. Cal. June 22, 2023); *Stechert v. Travelers Home & Marine Ins. Co.,* No. CV 17-0784-KSM, 2022 WL 2304306, at *15 (E.D. Pa. June 27, 2022); *In re Wawa, Inc. Data Sec. Litig.,* No. CV 19-6019, 2022 WL 1173179, at *12 (E.D. Pa. Apr. 20, 2022); *Yanez v. HL Welding, Inc.,* No. 20CV1789-MDD, 2022 WL 788703, at *13 (S.D. Cal. Mar. 15, 2022); *Karl v. Zimmer Biomet Holdings, Inc.,* No. C 18-04176 WHA, 2022 WL 658970, at *6 (N.D. Cal. Mar. 4, 2022); *Curry v. Money One Fed. Credit Union,* No. CV DKC 19-3467, 2021 WL 5839432, at *6 (D. Md. Dec. 9, 2021); *Kudatsky v. Tyler Techs., Inc.,* No. C 19-07647 WHA, 2021 WL 5356724, at *5 (N.D. Cal. Nov. 17, 2021); *Espinal v. Victor's Cafe 52nd St., Inc.,* No. 16-CV-8057 (VEC), 2019 WL 5425475, at *5 (S.D.N.Y. Oct. 23, 2019); *Ott v. Mortg. Invs. Corp. of Ohio, Inc.,* No. 3:14-CV-00645-ST, 2016 WL 54678, at *6 (D. Or. Jan. 5, 2016); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.,* No. CIV. 6:12-1609, 2015 WL 965696, at *11 (W.D. La. Mar. 3, 2015); *Jenkins v. Trustmark Nat. Bank,* 300 F.R.D. 291, 310 (S.D. Miss. 2014); *Hargrove v. Ryla Teleservices, Inc.,* No. 2:11CV344, 2013 WL 1897027, at *7 (E.D. Va. Apr. 12, 2013), *report and recommendation adopted,* 2013 WL 1897110 (E.D. Va. May 3, 2013); *Beard v. Dominion Homes Fin. Servs., Inc.,* No. C2 06 137, 2009 WL 10710409, at *7 (S.D. Ohio June 3, 2009); *In re Kirby Inland Marine, L.P.,* No. CIVA 04-611-SCR, 2008 WL 4642616, at *4 (M.D. La. Oct. 16, 2008), aff'd sub nom. In re Kirby Inland Marine LP, 333 F.App'x 872 (5th Cir.2009); *Rankin v. Rots,* No. 02-CV-71045, 2006 WL 1791377, at *3 (E.D. Mich. June 27, 2006); *Jordan v. Michigan Conf. of Teamsters Welfare Fund,* No. 96-73113, 2000 WL 33321350, at *6 (E.D. Mich. Sept. 28, 2000).

[4] *See* Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges* 6 (Federal Judicial Center, 2005)(according to a 2005 study, certified class actions settled ninety percent of the time); *Redman v. RadioShack Corp.,* 768 F.3d 622, 638 (7th Cir.2014)(noting, in connection with the settlement of a consumer class action, that "very few class actions are tried"); *West v. Prudential Sec., Inc.,* 282 F.3d 935, 937 (7th Cir.2002)("very few securities class actions are litigated to conclusion"); *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 52 (2d Cir.2000)("'there appears to be no appreciable risk of non-recovery" in securities class actions, because 'virtually all cases are settle[]'")(quoting Alexander, *Do the Merits Matter? A Study of Settlements in Securities Class Actions,* 43 Stan.L.Rev. 497, 578 (1991)); *In re Copley Pharm., Inc.,* 161 F.R.D. 456, 466 (D.Wyo.1995)("most class actions settle and few go to trial"); *see also* Janet Cooper Alexander, *Do the Merits Matter? A Study of Settlements in Securities Class Actions,* 43 Stan. L.Rev. 497, 578 (Feb.1991)(arguing that a multiplier designed to address the contingency factor in securities class actions is unnecessary since "there appears to be no appreciable risk of nonrecovery, for virtually all cases are settled"). "When the potential liability created by a lawsuit is very great, even though the probability that the plaintiff will succeed in establishing liability is slight, the defendant will be under pressure to settle rather than to bet the

concedes that "the typical class action settles in only three years." DE158-4:14¶21 (Fitzpatrick decl.). So class-action law firms, like those representing the Named Plaintiffs in this matter, generally receive full reimbursement for their PACER expenditures when the class actions they litigate quite predictably settle.

What this means is that many, if not most, of the class members with the largest Class Period PACER expenditures have already been wholly compensated for all or most of what they spent on PACER. That is a powerful reason for this Court to endorse what Named Plaintiffs report was the government's position: that small users should receive full reimbursement. *See* DE158:21-22. Class Counsel Deepak Gupta explains:

> plaintiffs argued that funds should be distributed pro rata to class members, while the government vigorously insisted that any settlement include a large minimum amount per class member, which it maintained was in keeping with the AO's longstanding policy and statutory authority to "distinguish between classes of persons" in setting PACER fees—including providing waivers— "to avoid unreasonable burdens and to promote public access to such information," 28 U.S.C. § 1913 note.

DE158-5:10¶28.

The government was correct. Public access to court records is critical to American Democracy. Small-scale users should be fully compensated. No significant portion of the Settlement fund should be allocated to the pro-rata distribution advocated by the Named Plaintiffs.

Including large claimants in a pro-rata distribution is problematic, moreover, because the Class cannot be defined to include any entities with claims totaling more than $10,000. Doing so would violate the Little Tucker Act. The Settlement's allocation appears to include, and to distribute Settlement funds to, entities whose claims exceed the Tucker Act's $10,000 jurisdictional limit. "District courts have jurisdiction under the Little Tucker Act to hear claims 'against the United States, ***not exceeding*** $10,000[.]'" *Nat'l Veterans Legal Servs. Program v.*

---

company, even if the betting odds are good." *Kohen v. Pacific Inv. Mgmt. Co. LLC,* 571 F.3d 672, 678 (7th Cir.2009).

*United States,* 968 F.3d 1340, 1347 (Fed.Cir.2020)(emphasis added)(quoting *Corr v. Metro. Washington Airports Auth.,* 702 F.3d 1334, 1336 (Fed.Cir.2012)(quoting 28 U.S.C. §1346(a)(2))).

If Isaacson, as a start-up solo-practitioner who paid PACER fees for less than three years of the eight-year class period, paid $3,823.50 in PACER fees, then many users—particularly institutional users, large law firms, and plaintiffs-side class-action firms—must have run up Class Period PACE bills totaling tens and even hundreds of thousands of dollars. This Court lacks jurisdiction to include them, and their claims, in the Class to whom the Settlement will be distributed. For by now "the question is settled—district courts lose their Little Tucker Act jurisdiction once the amount claimed accrues to more than $10,000, even though jurisdiction was previously proper in the district court." *Simanonok v. Simanonok,* 918 F.2d 947, 950-51 (Fed.Cir.1990). The Federal Circuit has held "the amount of a claim against the United States for back pay is the total amount of back pay the plaintiff stands ultimately to recover in the suit and is not the amount of back pay accrued at the time the claim is filed." *Smith v. Orr,* 855 F.2d 1544, 1553 (Fed.Cir.1988)(following *Chabal v. Reagan,* 822 F.2d 349 (3d Cir.1987); *see Simanonok,* 918 F.2d at 950-51; *see also Shaw v. Gwatney,* 795 F.2d 1351 (8th Cir.1986); *Goble v. Marsh,* 684 F.2d 12 (D.C.Cir.1982)). Clearly, then, Class Members whose claims exceed $10,000 are beyond this Court's Little Tucker Act jurisdiction.

"In a class action such as this, jurisdiction thereunder turns, not upon the aggregate amount of the claims [of all] the members of the class, but upon the amounts claimed individually by those members." *March v. United States,* 506 F.2d 1306, 1309 n.1 (D.C.Cir.1974); *see Kester v. Campbell,* 652 F.2d 13, 15 (9th Cir.1981); *Pennsylvania v. National Association of Flood Insurers,* 520 F.2d 11, 25 (3d Cir.1975). Yet Little Tucker Act jurisdiction ultimately covers a class action only if, and to the extent that, "the individual claim of each class member does not exceed $10,000.00." *Kester v. Campbell,* 652 F.2d 13, 15 (9th Cir.1981).

There is one way, of course, to preserve Little Tucker Act jurisdiction with respect to Class Members whose individual claims exceed $10,000. It is well established that "a plaintiff may pursue such a claim in a district court if the plaintiff waives his right to recover the amount

exceeding $10,000." *Smith v. Orr,* 855 F.2d 1544, 1552–53 (Fed. Cir.1988). That can be accomplished by abandoning the notion that large claimants have the right to a pro-rata distribution based on large claims that would place them beyond the jurisdictional limitation. No portion of the Settlement fund should be allocated on the basis of Class Members' PACER expenditures after the first $10,000 they paid during the Class Period. The first distribution should be capped at a much higher level than $350 apiece, and any pro-rata distribution of remaining funds should be based on Class Members' expenditures *up to* $10,000 apiece, thereby waiving Class Members' larger claims in order both to preserve Tucker Act jurisdiction, and also to achieve a more equitable distribution of the Settlement Fund.

### B.     The Attorney's Fees Sought Are Grossly Excessive

Class Counsel's expert, Professor Brian Fitzpatrick, says "that the fee request is more than reasonable." DE158-4:5¶8 (Fitzpatrick decl.).

It is, in fact, several times what the Supreme Court's precedents hold is a reasonable attorney's fee to fully compensate class plaintiffs' counsel in contingent class-action litigation that settles. For while the Supreme Court holds that class counsel ordinarily are adequately compensated with an unenhanced lodestar award, *see Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 546 (2010), Class Counsel here ask for roughly *four times* that amount. And while the Supreme Court has never approved a common-fund fee award exceeding ten percent of the common fund, Class Counsel in this case demand twice that. It appears that the driving concern in this settlement is Class Counsel's desire to capture an extravagant fee.

The Supreme Court holds that attorney's fees may be awarded from a common fund or equitable fund based either on the attorney's fees reasonably incurred and billed, *see Trustees v. Greenough,* 105 U.S. 527, 530-31, 537-38 (1882), or as a modest percentage of the fund, *see Central RR & Banking Co. v. Pettus,* 113 U.S. 116, 128 (1885)(cutting fee award from 10% to 5%). At *four times* Class Counsel's claimed hourly rates, and more than twice the percentage supported by Supreme Court common-fund precedents, the attorney's fee award sought by Class Counsel is clearly excessive.

Class Counsel claim a lodestar of $6,031,678.25. DE158-5:22-23¶¶63-64 (Gupta decl.). Supreme Court precedent mandates "a strong presumption that the lodestar is sufficient," without any enhancement, to compensate plaintiffs' counsel when a contested class action settles. *Perdue,* 559 U.S. at 546 (2010); *see Haggart v. Woodley,* 809 F.3d 1336, 1355 n.19 (Fed.Cir.2016). Even in common-fund cases, such as this, "[t]here is a 'strong presumption' that the lodestar figure represents a reasonable fee." *Fischel v. Equitable Life Assur. Soc'y,* 307 F.3d 997, 1007 (9th Cir.2002)(citation omitted). "Because of [that] 'strong presumption that the lodestar is sufficient,' a multiplier is warranted only in 'rare and exceptional circumstances.'" *Chambers v. Whirlpool Corp.,* 980 F.3d 645, 665 (9th Cir.2020)(quoting *Perdue,* 559 U.S. at 546-52, and reversing a 1.68 lodestar multiplier).

"There is a 'strong presumption' that the lodestar figure represents a reasonable attorney's fee, [*Perdue,* 559 U.S. at 546], because '"the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee."'" *Heller v. District of Columbia,* 832 F. Supp. 2d 32, 37 (D.D.C. 2011)(quoting *Perdue,* 559 U.S. at 543(quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 566 (1986)). "[T]he burden of proving that an enhancement is necessary must be borne by the fee applicant, *Perdue,* 559 U.S. at 553, who "must produce 'specific evidence'" supporting the enhancement. *Perdue,* 559 U.S. at 553. And, as *Perdue* itself emphasizes, "factors subsumed in the lodestar calculation cannot be used as a ground for increasing an award above the lodestar." *Perdue,* 559 U.S. at 546.

Class Counsel have not demonstrated by a preponderance of the evidence that they are entitled to nearly four times their claimed lodestar. Acting as a fiduciary to the Class, this Court should not grant such an extravagant award.

Class Counsel contend that such a windfall is justified if only the attorney's fee is awarded as a percentage of the $125 million megafund settlement. After all, they say, they only want 19% of the fund. Yet the Supreme Court has never approved a percent-of-fund common-fund fee award exceeding ten percent of the fund.

In *Pettus,* for example, the Supreme Court slashed a common-fund award from ten percent to just five percent of the fund. The Court "consider[ed] whether the sum allowed appellees was too great. We think it was. The decree gave them an amount equal to ten per cent." Pettus, 113 U.S. at 128. "One-half the sum allowed was, under all the circumstances, sufficient." *Id.; see also Harrison v. Perea,* 168 U.S. 311, 325 (1897)(noting with approval the reduction of a $5,000 fee award (or about 14% of an equitable fund) to just 10% of the fund).

In *United States v. Equitable Trust Co.,* 283 U.S. 738 (1931), the Supreme Court rejected the notion that counsel whose efforts secure a fund may receive more than necessary to compensate them adequately for their time. The Second Circuit already had rejected the district court's conclusion that counsel were entitled to a quarter to a third of the fund, cutting the attorney's fee award to just $100,000 (about 15% of the fund) and warning that "[t]he allowance is a payment for legal services, not a speculative interest in a lawsuit." *Barnett v. Equitable Trust Co.*, 34 F.2d 916, 919 (2d Cir.1929)(Learned Hand). The attorneys then complained to the Supreme Court that "from a percentage standpoint, the allowance of $100,000 is but slightly over fifteen per cent," and that "never yet have counsel been cut down to such a low percentage in any contested case taken upon a contingent basis."[5] But the Supreme Court found even "the allowance of $100,000 unreasonably high, and that to bring it within the standard of reasonableness it should be reduced to $50,000," which was about $7\frac{1}{2}$% of the fund. *Equitable Trust,* 283 U.S. at 746. Those are old decisions, to be sure. But the Supreme Court's common-fund precedents remain controlling authority. *See, e.g., Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980)(applying common-fund doctrine rooted in *Greenough* and *Pettus*); *Haggart v. Woodley,* 809 F.3d 1336, 1352 (Fed.Cir.2016)(favorably citing *Greenough* and *Pettus*).

And with the development of computerized research, automated document review, and digital storage and retrieval of documents, the difficulty and expense of litigation has surely fallen.

---

[5] Brief for Respondents to Whom Allowances Were Made, *United States v. Equitable Trust,* 283 U.S. 738 [Oct. Term 1929 No. 530], at 55-56 (filed April 16, 1930).

Given the tremendous economies of scale afforded by the class-action device in recovering the $125 million megafund in this case, the five percent of the fund found reasonable in *Pettus* would be wholly appropriate here too. Its reasonableness is, moreover, confirmed by a cross-check against Class Counsel's claimed lodestar. For five percent of the megafund is $6,250,000, and Class Counsel's claimed lodestar is only $6,031,678.25. DE158-5:22-23¶¶63-64 (Gupta decl.). A five-percent award gives Class Counsel something more than their lodestar which, according to *Perdue,* is presumptively sufficient to compensate them for their work on a settling contingent-fee class action.

Of course, that assumes that Class Counsel's lodestar is proper. It is not. Their lodestar is inadequately documented. Class Counsel submitted a summary declaration, giving total hours and billing rates, with no further itemization or explanation of the hours billed, or of the basis for the billing rates. That is not enough to support Class Counsel's purported lodestar.[6] Were appropriate deductions made, their lodestar would be much lower, and the multiplier for their requested fee award doubtless would exceed four.

The claimed lodestar amount is plainly excessive. Class Counsel's paid expert on fees, Professor Brian Fitzpatrick, has developed a matrix of reasonable "Hourly Rates ($) for Legal Fees for Complex Federal Litigation in the District of Columbia." *See* Isaacson Decl. Ex.D

---

[6] *Wojtkowski v. Cade,* 725 F.2d 127, 130 (1st Cir.1984)("The affidavit here was little more than a tally of hours and tasks relative to the case as a whole."); *McDonald v. Pension Plan,* 450 F.3d 91, 96 (2d Cir.2006)("In order to calculate the reasonable hours expended, the prevailing party's fee application must be supported by contemporaneous time records."); *Cadena v. Pacesetter Corp.,* 224 F.3d 1203, 1215 (10th Cir.2000)("'[I]f [prevailing parties] intend to seek attorney's fees ... [their attorneys] must keep meticulous, contemporaneous time records [.]"); *Harper v. City of Chicago Heights,* 223 F.3d 593, 605 (7th Cir.2000 ("[I]t is within a district court's power to reduce a fee award because the petition was not supported by contemporaneous time records."); In re Olson, 884 F.2d 1415, 1428 (D.C.Cir.1989 (disallowing entries that failed to identify the subject of a meeting, conference, or phone call and requiring contemporaneous records proving the reasonableness of hours and rates); *Grendel's Den v. Larkin,* 749 F.2d 945, 952 (1st Cir.1984)("in cases involving fee applications ... the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award, or in egregious cases, disallowance"); *Savin ex rel. Savin v. Sec'y of Health & Hum. Servs.,* 85 Fed.Cl. 313, 317 & n.5 (2008).

[https://www.justice.gov/usao-dc/page/file/1189846/download]. Professor Fitzpatrick says his "Fitzpatrick Matrix" is based on research that "allowed us to determine the real hourly rates charged in the market" in complex federal litigation lilke this case. *See* Isaacson Decl. Ex.E. The highest reasonable 2021 billing rate for a lawyer with 35+ years' experience, according to Professor Fitzpatrick's official matrix, is $736 an hour. *See id.* Yet in this case, Class Counsel's lodestar is built on billing rates that grossly exceed what Fitzpatrick deemed reasonable for complex litigation in the District of Columbia. A 2002 Georgetown graduate, Deepak Gupta's time is billed at $1150 an hour, while 2010 Harvard graduate Jonathan E. Taylor's time is billed at $975 an hour—well over the rates deemed reasonable for complex litigation in the District of Columbia. DE158-5:22¶63. Turning to the Motley Rice lawyers, we find William Narwold billing at $1250 an hour, and Meghan Oliver at $950 an hour. DE158-5:5¶12.

Class Counsel have offered adequate justifications neither for their billing rates, nor for the hours claimed. Not even their own expert, Professor Brian Fitzpatrick, has opined that they are reasonable.

Neither have Class Counsel demonstrated that they should be entitled to any multiplier of their inadequately documented lodestar, or to a percentage fee of more than the five percent that the Supreme Court applied to a common-fund fee application in *Pettus,* which would more than adequately compensate them for their efforts.

Class Counsel's fee expert urges a dramatic upward departure from the attorney's fees supported by Supreme Court precedents—based on his own survey of nonprecedential published, and even unpublished district court rulings. Fitzpatrick ignores the fact that "[i]n the vast majority of cases, Class counsel appears before the court to request a big percentage of the settlement fund, cooperative settling Defendants offer no opposition, and class members rarely oppose the request." *In re Quantum Health Res., Inc.,* 962 F. Supp. 1254, 1256 (C.D. Cal. 1997). "The situation is a fundamental conflict of interest and is inherently collusive. The lack of opposition to a proposed fee award gives a court the sometimes false impression of reasonableness, and the court might simply approve a request for fees without adequate inquiry or comment." *In re Quantum Health*

*Res., Inc.,* 962 F. Supp. 1254, 1256 (C.D. Cal. 1997)(footnote omitted). Fitzpatrick's survey thus is of minimal value.

Factors cited by Class Counsel and their expert do not justify the large fee. The case, though somewhat novel, was obviously an easy one to litigate. The central contest was on an issue of statutory construction. After the Federal Circuit clarified the law, *see National Veterans Legal Servs. Program v. United States,* 968 F.3d 1340, 1349 (Fed.Cir.2020), the case was an easy one to settle. And that, of course, eliminated any risk of nonpayment that Class Counsel might have faced had they taken the case to trial.

Named Plaintiffs and Class Counsel together seek "an award of attorneys' fees, settlement-administration and notice costs, litigation expenses, and service awards for the three class representatives in a total amount equal to 20% of the $125 million common fund." DE158:4[ECFp13]. Their motion also seeks "an award of $10,000 per class representative to compensate them for their time working on the case and the responsibility that they have shouldered" while Class counsel seeks "$23,863,345.02 in attorneys' fees," or nearly four times their claimed lodestar. DE158:4[ECFp13].

This Court should not award an attorney's fee amounting to more than Class Counsel's unenhanced lodestar recalculated at the rates set forth in their own fee expert's "Fitzpatrick Matrix."

### C. The $10,000 Apiece Service Awards Named Plaintiffs Seek are Inequitable and Unlawful

The Supreme Court's foundational common-fund class-action precedents hold that payments compensating litigants for their service as class representatives are inequitable and illegal. *See Trustees v. Greenough,* 105 U.S. 527, 537 (1882); *Central Railroad & Banking Co. v. Pettus,* 113 U.S. 116, 122 (1885). The Eleventh Circuit thus soundly holds that "Supreme Court precedent prohibits incentive awards."[7] And the Second Circuit recently conceded: "Service

---

[7] *Johnson v. NPAS Sols., LLC,* 975 F.3d 1244, 1255 (11th Cir.2020), *reh'g denied,* 43 F.4th 1138 (11th Cir.2022); *accord, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.,* 999 F.3d 1247,

awards are likely impermissible under Supreme Court precedent." *Fikes Wholesale v. HSBC Bank USA,* 62 F.4th 704, 721 (2d Cir.2023).

So "any service award in a class action is at best dubious under *Greenough*." *Fikes Wholesale,* 62 F.4th at 723; *see also id.* at 729 (Jacobs, Cir.J., concurring). The Second Circuit nonetheless chooses to follow its own decisions sustaining incentive awards—rather than the Supreme Court's decisions banning them:

> But practice and usage seem to have superseded Greenough (if that is possible). *See Melito v. Experian Mktg. Sols. Inc.,* 923 F.3d 85, 96 (2d Cir.2019); *Hyland v. Navient Corp.,* 48 F.4th 110, 123-24 (2d Cir.2022). And even if (as we think) practice and usage cannot undo a Supreme Court holding, *Melito* and *Navient* are precedents that we must follow.

*Fikes Wholesale,* 62 F.4th at 721.

Supreme Court precedent cannot be superseded by lower courts' contrary practice and usage. Lower courts are not at liberty to reject Supreme Court precedents as obsolescent. In fact, "the strength of the case for adhering to such decisions grows in proportion to their 'antiquity.'" *Gamble v. United States,* 139 S.Ct. 1960, 1969 (2019)(citing *Montejo v. Louisiana,* 556 U.S. 778, 792 (2009). Even if a Supreme Court precedent was "'unsound when decided'" and even if it over time becomes so "'inconsistent with later decisions'" as to stand upon "'increasingly wobbly, moth-eaten foundations,'" it remains the Supreme Court's "prerogative alone to overrule one of its precedents."[8] The Supreme Court holds: "If a precedent of this Court has direct application in a

---

1257 (11th Cir.2021)("such awards are prohibited"); *Medical & Chiropractic Clinic, Inc. v. Oppenheim,* 981 F.3d 983, 994 n.4 (11th Cir.2020)("such service awards are foreclosed by Supreme Court precedent").

[8] *State Oil Co. v. Khan,* 522 U.S. 3, 9, 20 (1997)(quoting *Khan v. State Oil Co.*, 93 F.3d 1358, 1363 (7th Cir.1996)(Posner, J.)); *accord, e.g., Payne v. Taslimi,* 998 F.3d 648, 654 (4th Cir.2021); *Acorda Therapeutics Inc. v. Mylan Pharms. Inc.,* 817 F.3d 755, 770 (Fed.Cir.2016)(O'Malley, Cir.J., concurring).

case," as *Greenough* does here, a lower court "should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484 (1989); *accord, e.g., Mallory v. Norfolk S. Ry. Co.,* 143 S. Ct. 2028, 2038 (2023).

But even if *Greenough* and *Pettus* do not altogether bar incentive awards, such payments are appropriate only when actually necessary. The Ninth Circuit in *In re Apple Inc. Device Performance Litig.,* 50 F.4th 769, 786 (9th Cir.2022), for example, construed *Greenough* not as a decision that prohibits incentive awards in general, but as one that prohibits incentive awards unless they are necessary to induce the named plaintiffs to pursue the case:

> While private plaintiffs who recover a common fund are entitled to "an extra reward," they are limited to "that which is deemed 'reasonable' under the circumstances." *Id. Greenough,* for example, prohibited recovery for the plaintiff's "personal services and private expenses" because the private plaintiff was a creditor who needed no inducement to bring suit. *Greenough,* 105 U.S. at 537.

*In re Apple Inc. Device Performance Litig.,* 50 F.4th 769, 786 (9th Cir.2022).

The Seventh Circuit similarly holds that incentive awards are appropriate only when "'necessary to induce an individual to participate in the suit.'"[9]

But here, as in *Greenough,* the Named Plaintiffs had substantial claims of their own, and they clearly "needed no inducement to bring suit." *Apple Device,* 50 F.4th at 786. This Court has recognized that they already had "dual incentives to reduce PACER fees, both for themselves and for the constituents that they represent." DE33:14. Named Plaintiffs presented their missions as

---

[9] *Camp Drug Store v. Cochran Wholesale Pharmaceutical,* 897 F.3d 825, 834 (7th Cir.2018)(citation omitted); *see also In re Synthroid Mktg. Litig.,* 264 F.3d 712, 722 (7th Cir.2001)("Incentive awards are justified when necessary to induce individuals to become named representatives."); *Montgomery v. Aetna Plywood, Inc.,* 231 F.3d 399, 410 (7th Cir.2000)("Incentive awards are appropriate if compensation would be necessary to induce an individual to become a named plaintiff in the suit.").

nonprofits as their motivations to pursue this litigation. They never needed special $10,000 payments to induce them to file suit.

Finally, anyone who seeks an incentive award must document their time on the case. As the Sixth Circuit has held:

> The settlement agreement provides for incentive awards of up to $10,000 per individual named plaintiff .... Class counsel argues in conclusory terms that the awards compensate the named plaintiffs for their time spent on the case. To ensure that these amounts are not in fact a bounty, however, counsel must provide the district court with specific documentation—in the manner of attorney time sheets— of the time actually spent on the case by each recipient of an award.

*Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan,* 825 F.3d 299, 311 (6th Cir.2016). "Otherwise the district court has no basis for knowing whether the awards are in fact 'a disincentive for the [named] class members to care about the adequacy of relief afforded unnamed class members[.]'" *Id.* (quoting *In re Dry Max Pampers Litig.,* 724 F.3d 713, 722 (6th Cir.2013)(emphasis in original).

Named Plaintiffs neither kept, nor presented, the required documentation. *See, e.g.,* DE158:2¶2 (Rossman decl.)("our organization did not keep formal time records"). That is another reason that the payments should be denied.

## III.   CONCLUSION

Although Named Plaintiffs insist that they "'enjoy a presumption of fairness afforded by [this] court's preliminary fairness determination,'" DE158:18[ECFp26] (quoting *Ciapessoni v. United States,* 145 Fed. Cl. 685, 688 (2019)), and also that any settlement "reached in arm's length negotiations between experienced, capable counsel after meaningful discovery" similarly enjoys a "'presumption of fairness, adequacy, and reasonableness,'" DE158:19-20 (quoting *Kinard v. E. Capitol Fam. Rental, L.P.,* 331 F.R.D. 206, 215 (D.D.C.2019)), Rule 23 neither authorizes nor permits any such presumptions. In fact, "Rule 23(e)(2) assumes that a class action settlement is invalid. *Briseno v. Henderson,* 998 F.3d 1014, 1030 (9th Cir.2021).

The Settling Parties have not carried their burden of demonstrating by a preponderance of the evidence that this one is fair, reasonable, and adequate. It is not. Named Plaintiffs seek to

allocate far too much of the Settlement fund to their lawyers, as attorney's fees, and to themselves in special $10,000 incentive awards, and with a further pro-rata distribution that favors large users and that awards windfalls to large law firms and to class-action plaintiffs' counsel.

DATED:  September 12, 2023

Respectfully Submitted,

Eric Alan Isaacson

LAW OFFICE OF ERIC ALAN ISAACSON
6580 Avenida Mirola
La Jolla, CA 92037-6231
Telephone: (858)263-9581
Email: ericalanisaacson@icloud.com

## DECLARATION OF ERIC ALAN ISAACSON

I, Eric Alan Isaacson, declare and state as follows:

1.      I am over the age of eighteen, make this declaration based on my personal knowledge and, if called as a witness, would testify competently as to the facts stated herein.

2.      I make this declaration in support of my objection to approval of the proposed class-action settlement, award of attorney's fees, and of service awards, in *National Veterans Legal Services Program, et al. v. United States of America,* Civil No. 16-745-PLF, which is pending in the United States District Court for the District of Columbia.

3.      A 1982 baccalaureate graduate of Ohio University, I hold a 1985 J.D. with high honors from the Duke University School of Law, and in May of 2022 I graduated from the Harvard Divinity School with a Master of Religion and Public Life.

4.      Continuing my graduate studies, I recently enrolled in the Harvard Extension School, where am working toward a Master of Liberal Arts in Extension Studies in the field of History.

5.      I have been a member in good standing of the bar of the State of California (No. 120584) since 1985.

6.      I was a founding partner of the law firm of Robbins, Geller, Rudman & Dowd LLP (f.k.a. Lerach Coughlin Stoia Geller Rudman & Robbins LLP), where I practiced law from May 1, 2004 to March 15, 2016.

7.      Since March of 2016, I have practiced law from the LAW OFFICE OF ERIC ALAN ISAACSON, 6580 Avenida Mirola, La Jolla, CA 92037.

8.      I am informed and believe I am a member of the Class who would be bound by the proposed Settlement in this matter because I paid PACER bills during the Class Period, and I received an email notice of the Class Action Settlement.

9.      In March of 2016, I opened my own PACER account (No. 4166698), for which I have paid quarterly the PACER bills ever since.

10.     A true and correct of copy my short-form curriculum vita is attached as Exhibit A hereto.

11.     A true and correct copy of the email Class Notice that I received concerning this matter is attached as Exhibit B hereto.

12.     My Class Period PACER billings under that account totaled $3,823.50, as evidenced by invoices and emails attached as Exhibit C hereto.

13.     Attached as Exhibit D hereto is a true and correct copy of "The Fitzpatrick Matrix," a document "prepared by Brian Fitzpatrick, the Milton R. Underwood Chair in Free Enterprise and Professor of Law at Vanderbilt Law School, with the help of his students," and "Published by the U.S. Attorney's Office for the District of Columbia, Civil Division," that I downloaded today from https://www.justice.gov/usao-dc/page/file/1189846/download, and for which I have prepared the following bitly link: https://bit.ly/USAOfitz

14.     Attached as Exhibit E hereto is a true and correct copy of *Fee matrix developed by Professor Brian Fitzpatrick and Brooke Levy '22 adopted by Federal Court*," Feb.7, 2023, that I downloaded today from https://law.vanderbilt.edu/news/fee-matrix-developed-by-professor-brian-fitzpatrick-and-brooke-levy-22-adopted-by-federal-court/ and for which I have prepared the following bitly link: https://bit.ly/463kPjs

15.     I have received reimbursement (from a client) for only $171.80 of the foregoing $3,823.50 Class Period PACER expenditures. Thus, my total unreimbursed Class Period PACER expenditures come to $3,651.70.

16.     I seldom seek reimbursement from clients for my PACER expenditures, and I have not had occasion to seek reimbursement for any of my Class Period PACER expenditures from the settlement fund in any court proceeding.

17.     I do not expect to seek or receive any further reimbursement of my remaining $3,651.70 in unreimbursed Class Period PACER expenditures.

18.     A substantial portion of my Class Period PACER expenditures reflect research in connection with my own personal scholarship in matters of law and economics.

19.     A substantial portion of my legal practice during the Class Period was devoted to pro bono matters in which I incurred and paid expenses for documents downloaded from PACER for which I did not seek, and never will seek, reimbursement. These included, for example:

•     *EEOC v. R.G. & G.R. Harris Funeral Homes,* 884 F.3d 560 (6th Cir.2018) – Briefed for amicus curiae Unitarian Universalist Association, supporting the EEOC and defending a transgender employee's right not to be subjected to religiously motivated workplace discrimination. (Amicus brief filed April 28, 2017);

•     *Janus v. AFSCME, Council 31,* 585 U.S. __, 138 S.Ct. 2584 (June 27, 2018) – Counsel of Record for amici curiae Faith in Public Life, religious organizations, and faith leaders supporting respondent labor union and the need for labor-union fair-share agency fees. (Amicus brief filed January 19, 2018);

•     *Voice of the Ex-offender v. Louisiana,* 249 So.3d 857 (La.Ct.App. 1st Cir.2018), *cert. denied,* 255 So.3d 575 (La.2018)(Chief Justice Johnson dissenting) – Co-counsel for amici curiae of historians Walter C. Stern, et al., supporting the right of released ex-offenders to vote. (Amicus brief filed February 21, 2018).

20.     I object to the proposed Settlement in *National Veterans Legal Services Program, et al. v. United States of America,* Civil No. 16-745-PLF, and in particular to the requested attorney's fee award, and the requested service awards, for reasons stated in the Objection of Eric Alan Isaacson that this declaration accompanies.

21.     I have pressed objections in other class actions, but have always done so with the objective of improving the quality of class-action settlements and of developing what I regard as sound principles of law.

22.     Both during the Class Period and after I have sought, with some success, to improve class-action practice in the United States. *See, e.g., Moses v. New York Times Co*., No. 21-2556-CV, __F.4th__, 2023 WL 5281138, at *1 (2d Cir. Aug. 17, 2023)("we agree with Isaacson that the

district court exceeded its discretion when it approved the settlement based on the wrong legal standard in contravention of Rule 23(e)"); *Murray v. Grocery Delivery E-Servs. USA Inc.,* 55 F.4th 340, 342 (1st Cir.2022)("we vacate [settlement] approval because the absence of separate settlement counsel for distinct groups of class members makes it too difficult to determine whether the settlement treated class members equitably"); *Johnson v. NPAS Solutions, LLC,* 975 F.3d 1244, 1248 (11th Cir.2020)("We find that, in approving the settlement here, the district court repeated several errors that, while clear to us, have become commonplace in everyday class-action practice. ... [I]t handled the class-action settlement here in pretty much exactly the same way that hundreds of courts before it have handled similar settlements. But familiarity breeds inattention, and it falls to us to correct the errors in the case before us."); *Muransky v. Godiva Chocolatier, Inc.,* 979 F.3d 917 (11th Cir.2020)(en banc)(sustaining objection that a representative plaintiff who suffered no injury lacked Article III standing to represent and compromise the interests of the class); *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.,* 888 F.3d 455, 458 (10th Cir.2017) (reversing $17.3 million class-action attorney's fee award).

23.    None of my objections to class-action settlements or attorney's fee awards have been found to be frivolous, and none have been made for improper purposes.

24.    I have never pressed an objection in order to extract a payment in return for the objection's withdrawal, or for the dismissal of any resulting appeal.

25.    I will not accept any payment in return for withdrawing my objection in this case, for foregoing an appeal, or for dismissing any appeal.

26.    I am, moreover, willing to be bound by a court order absolutely prohibiting any such payment in this case.

27.    I desire to be heard at the October 12, 2023, Final Approval Hearing in the above-captioned matter, either in person or remotely by means of telephone or video conferencing.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on September 12, 2023, at La Jolla, California.

Eric Alan Isaacson

Eric Alan Isaacson
Law Office of Eric Alan Isaacson
6580 Avenida Mirola
La Jolla, CA 92037-6231
(858)263-9581
ericalanisaacson@icloud.com

# EXHIBIT A

# ERIC ALAN ISAACSON

LAW OFFICE OF ERIC ALAN ISAACSON – https://www.ericalanisaacson.com
6580 Avenida Mirola, La Jolla, CA 92037-6231
ericalanisaacson@icloud.com, eri628@g.harvard.edu
(858) 263-9581

**EDUCATION**:

• Harvard Extension School, working toward a Master of Liberal Arts (ALM) in Extension
  Studies, field of History

• Harvard Divinity School, M.R.P.L. 2022

• Duke University School of Law, J.D. with high honors, 1985; Order of the Coif; *Duke Law
  Journal* (Member 1983-1984 & Note Editor 1984-1985); Research Assistant to Prof. William
  A. Reppy, Jr. (summer 1983)

• Ohio University, A.B. with high honor, 1982

**PROFESSIONAL EMPLOYMENT:**

• Law Office of Eric Alan Isaacson (March 16, 2016 to present); Robbins Geller Rudman &
  Dowd LLP, f.k.a. Lerach Coughlin Stoia Geller Rudman & Robbins LLP (founding partner,
  May 1, 2004 to March 15, 2016)

• Milberg Weiss Bershad Hynes & Lerach LLP (partner, January 1994 through April 2004;
  associate, November 1989 through December 1993); • O'Melveny & Myers, Los Angeles
  (associate, 1986-1989)

• U.S. Court of Appeals for the Ninth Circuit  (law clerk to Hon. J. Clifford Wallace, 1985-1986)

**BAR ADMISSIONS**:

California (1985); Supreme Court of the United States (1995); also admitted to practice before
the U.S. Courts of Appeals for the First through Eleventh Circuits, Federal Circuit, and D.C.
Circuit, and before all federal district courts in California and Oklahoma

**SELECTED PUBLICATIONS**:

• *A Real-World Perspective on Withdrawal of Objections to Class-Action Settlements and
  Attorneys' Fee Awards: Reflections on the Proposed Revisions to Federal Rule of Civil
  Procedure 23(e)(5),* 10 ELON L. REV. 35 (2018) [https://bit.ly/3fKYLB8]

• *The Roberts Court and Securities Class Actions: Reaffirming* Basic *Principles,* 48 AKRON L.
  REV. 923 (2015) [https://bit.ly/33mWZRJ]

• *Free Exercise for Whom? – Could the Religious-Liberty Principle that Catholics Established in*
  Perez v. Sharp *Also Protect Same-Sex Couples' Right to Marry?,* 92 U. DET. MERCY L. REV.
  29 (2015) [https://bit.ly/3fJnZjs]

• Goodridge *Lights A Nation's Way to Civic Equality,* BOSTON BAR J., Nov. 15, 2013
  [https://bit.ly/33qHiZS]

• *Are Same-Sex Marriages Really a Threat to Religious Liberty?,* 8 STANFORD J. CIV. RTS. &
  CIV. LIBERTIES 123 (2012) [https://bit.ly/2Vr3Fu5]

• *Assaulting America's Mainstream Values: Hans Zeiger's* Get Off My Honor: The Assault on
  the Boy Scouts of America, 5 PIERCE L. REV. 433 (2007) [https://bit.ly/3q3P3P8]

• *Traditional Values, or a New Tradition of Prejudice?  The Boy Scouts of America vs. the
  Unitarian Universalist Association of Congregations,* 17 GEO. MASON U. CIV. RTS. L.J. 1
  (2006) [https://bit.ly/3li1yTI]

- (with Patrick J. Coughlin & Joseph D. Daley) *What's Brewing in* Dura v. Broudo*? The Plaintiffs' Attorneys Review the Supreme Court's Opinion and its Import for Securities-Fraud Litigation,* 37 LOYOLA U. CHICAGO L. J. 1 (2005) [https://bit.ly/3lhnf6u]
- (with William S. Lerach) *Pleading Scienter Under Section 21D(b)(2) of the Securities Exchange Act of 1934: Motive, Opportunity, Recklessness and the Private Securities Litigation Reform Act of 1995,* 33 SAN DIEGO L. REV. 893 (1996) [https://bit.ly/3wLmgBY]
- *The Flag Burning Issue: A Legal Analysis and Comment,* 23 LOYOLA L.A. L. REV. 535 (1990) [https://bit.ly/3qkKYX8]

**VOLUNTEER SERVICE**:

- Skinner House Books, Editorial Board member, June 2016 to present;
- American Constitution Society, San Diego Lawyer Chapter, Steering Committee Member ,January 2008 to August 2009, and Board Member, August 2009 to present
- First Unitarian Universalist Church of San Diego, youth leader, September 2019 to June 2020; children's religious-education leader, September 2004 to June 2019; delegate to Unitarian Universalist Association General Assemblies of 2019, 2018, 2017, 2015, 2014 & 2009; Worship Welcome Team, member, May 2008 to May 2011

**SELECTED PRO BONO *AMICUS CURIAE* BRIEFS**:

- *Janus v. AFSCME, Council 31,* 138 S.Ct. 2448 (2018), brief for *amici curiae* Faith in Public Life, *et al.*, supporting public employees' labor-union fair-share agency fees [http://bit.ly/2KohwKr]
- *EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.,* 884 F.3d 560 (6th Cir. 2018), brief for *amicus curiae* Unitarian Universalist Association, supporting transgender employee's right not to be subjected to religiously motivated workplace discrimination [http://bit.ly/2yKxm0z]
- *Obergefell v. Hodges,* 576 U.S. 644 (2015), brief for *amici curiae* California Council of Churches, *et al.*, supporting same-sex couples' right to marry [https://bit.ly/34KqJJL]
- *Hollingsworth v. Perry,* 570 U.S. 693 (2013), brief for *amici curiae* California Council of Churches, *et al.*, supporting same-sex couples' right to marry [https://bit.ly/2HNQr79]
- *Pickup v. Brown,* 740 F.3d 1208 (9th Cir. 2014), brief for *amici curiae* California Faith for Equality, *et al.*, supporting California legislation barring healthcare professionals from subjecting minors to "Sexual Orientation Change Efforts" [https://bit.ly/2HCINwD]
- *Log Cabin Republicans v. United States,* 658 F.3d 1162 (9th Cir. 2011), brief for *amici curiae* Forum on the Military Chaplaincy, *et al.*, supporting the Log Cabin Republicans' challenge to "Don't Ask Don't Tell" [https://bit.ly/3mCXiiS]
- *Perry v. Brown,* 52 Cal. 4th 1116, 265 P.3d 1002 (2011), brief for *amici* California Faith for Equality, *et al.*, on questions certified to the California Supreme Court [https://bit.ly/2JkT6pu]
- *Perry v. Brown,* 671 F.3d 1052 (9th Cir. 2012), brief for *amici curiae* California Faith for Equality, et al., supporting same-sex couples' challenge to California Proposition 8's ban on same-sex marriages [https://bit.ly/37OtnQu]
- *Perry v. Schwarzenegger,* 704 F.Supp.2d 921 (N.D. Cal. 2010), brief for *amici curiae* Unitarian Universalist Legislative Ministry California, *et al.* [https://bit.ly/3mwYQuD]
- *Strauss v. Horton,* 46 Cal. 4th 364, 377-78, 207 P.3d 48, 93 Cal. Rptr. 3d 591 (2009), brief for *amici curiae* California Council of Churches, *et al.,* opposing California's Proposition 8 [https://bit.ly/3mtYpRE]

- *In re Marriage Cases,* 43 Cal.4th 757, 183 P.3d 384, 76 Cal.Rptr.3d 683 (2008), on team filing *amicus curiae* brief for the Unitarian Universalist Association, *et al.*, supporting the right of same-sex couples to marry [https://bit.ly/2VdpcpL]
- *In re Marriage Cases,* 49 Cal.Rptr.3d 675 (Cal. App. 1st Dist. 2006), on team filing *amicus curiae* brief for the General Synod of the United Church of Christ, *et al.*, supporting the right of same-sex couples to marry [https://bit.ly/3miFMR6]

**AWARDS**:

- American Constitution Society San Diego Lawyer Chapter's third annual *Roberto Alvarez Award*, January 29, 2014
- San Diego Democrats for Equality *Eleanor Roosevelt Award for Community Service,* November 17, 2012
- Unitarian Universalist Association *President's Annual Award for Volunteer Service*, June 28, 2009 [https://bit.ly/3GzRT6K]

EXHIBIT B

**From: PACER Fees Class Action Administrator** donotreply@pacerfeesclassaction.com
**Subject:** PACER Fees – Notice of Class Action Settlement
**Date:** July 6, 2023 at 8:34 PM
**To:** ericalanisaacson@icloud.com



Account ID: 10176234
PIN: 328319

**If you paid fees to access federal court records on PACER at any time between
April 21, 2010 and May 31, 2018, a proposed class action settlement may affect your rights.**



Nonprofit groups filed this lawsuit against the United States, claiming that the government has unlawfully charged users of PACER (the Public Access to Court Electronic Records system) more than necessary to cover the cost of providing public access to federal court records. The lawsuit, *National Veterans Legal Services Program, et al. v. United States*, Case No. 1:16-cv-00745-PLF, is pending in the U.S. District Court for the District of Columbia. This notice is to inform you that the parties have decided to settle the case for $125,000,000. This amount is referred to as the common fund. The settlement has been preliminarily approved by the Court.

**Why am I receiving this notice?** You are receiving this notice because you may have first paid PACER fees between April 22, 2016 and May 31, 2018. This notice explains that the parties have entered into a proposed class action settlement that may affect you. You may have legal rights and options that you may exercise before the Court decides to grant final approval to the settlement.

**What is this lawsuit about?** The lawsuit alleges that federal courts have been charging unlawfully excessive PACER fees. It alleges that Congress has authorized the federal courts to charge PACER fees only to the extent necessary to cover the costs of providing public access to federal court records, and that the fees for use of PACER exceed its costs. The lawsuit further alleges that the excess PACER fees have been used to pay for projects unrelated to PACER. The government denies these claims and contends that the fees are lawful. The parties have agreed to settle.

**Who represents me?** The Court has appointed Gupta Wessler PLLC and Motley Rice LLC to represent the Class as Class Counsel. You do not have to pay Class Counsel or anyone else to participate. Class Counsel's fees and expenses will be deducted from the common fund. By participating in the Class, you agree to pay Class Counsel up to 30 percent of the total recovery in attorneys' fees and expenses with the total amount to be determined by the Court. You may hire your own attorney, if you wish, at your own expense.

**What are my options?**

**OPTION 1. Do nothing. Stay in the settlement.** By doing nothing, you remain part of this class action settlement. If you are an accountholder and directly paid your own PACER fees, you do not have to do anything further to receive money from the settlement. You will be legally bound by all orders and judgments of this Court, and will automatically receive a check for your share of the common fund assuming the Court grants final approval of the settlement. By doing nothing you give up any rights to sue the United States government separately about the same claims in this lawsuit. If someone directly paid PACER fees on your behalf, you should direct your payment to that individual or entity at www.pacerfeesclassaction.com no later than Tuesday, September 5th, 2023. If you accept payment of any settlement proceeds, you are verifying that you paid the PACER fees and are the proper recipient of the settlement funds.

**OPTION 2. Exclude yourself from the settlement.** Alternatively, you have the right to not be part of this settlement by excluding yourself or "opting out" of the settlement and Class. If you exclude yourself, you cannot get any money from the settlement, but you will keep your right to separately sue the United States government over the legal issues in this case. If you do not wish to stay in the Class, you must request exclusion in one of the following ways:

1. Send an "Exclusion Request" in the form of a letter sent by mail, stating that you want to be excluded from *National Veterans Legal Services Program, et al. v. United States,* Case No. 1:16-cv-00745-PLF. Be sure to include your name, address, telephone number, email address, and signature. You must mail your Exclusion Request, **postmarked by Sunday, August 20th, 2023** to: PACER Fees Class Action Administrator, P.O. Box 301134, Los Angeles, CA 90030-1134.

2. Complete and submit online the Exclusion Request form found here by Sunday, August 20th, 2023.

3. Send an "Exclusion Request" Form, available here, by mail. You must mail your Exclusion Request form, **postmarked by Sunday, August 20th, 2023** to: PACER Fees Class Action Administrator, P.O. Box 301134, Los Angeles, CA 90030-1134.

If you choose to exclude yourself from the lawsuit, you should decide soon whether to pursue your own case because your claims may be subject to a statute of limitations which sets a deadline for filing the lawsuit within a certain period of time.

**OPTION 3. Stay in the Class and object or go to a hearing.** If you paid PACER fees and do not opt out of the settlement, you may object to any aspect of the proposed settlement. Your written objection must be **sent by Tuesday, September 12th, 2023** and submitted as set out in the *Notice of Proposed Class Action Settlement* referred to below. You also may

request in writing to appear at the Fairness Hearing on Thursday, October 12th, 2023.

**<u>How do I get more information?</u>** This is only a summary of the proposed settlement. For a more detailed *Notice of Proposed Class Action Settlement*, additional information on the lawsuit and proposed settlement, and a copy of the Settlement Agreement, visit www.pacerfeesclassaction.com, call 866-952-1928, or write to: PACER Fees Class Action Administrator, P.O. Box 301134, Los Angeles, CA 90030-1134.

If ericalanisaacson@icloud.com should not be subscribed or if you need to change your subscription information for KCC/USO, please use this preferences page.

EXHIBIT C



# PACER
## Public Access to Court Electronic Records

# INVOICE

Invoice Date:  04/07/2016

Usage From:  01/01/2016     to:  03/31/2016

### Account Summary

| | | |
|---|---|---|
| **Account #:** | | 4166698 |
| **Invoice #:** | | 4166698-Q12016 |
| **Due Date:** | | 05/10/2016 |
| **Amount Due:** | | $95.80 |

| | |
|---|---|
| ***Pages:*** | 958 |
| Rate: | $0.10 |
| Subtotal: | $95.80 |
| ***Audio Files:*** | 0 |
| Rate: | $2.40 |
| Subtotal: | $0.00 |
| ***Current Billed Usage:*** | $95.80 |
| ***Previous Balance:*** | $0.00 |
| Current Balance: | **$95.80** |

## Contact Us

San Antonio: (210) 301-6440
Toll Free: (800) 676-6856
Hours: 8 am - 6 pm CT M-F
pacer@psc.uscourts.gov

### Total Amount Due:    $95.80

See pacer.gov/billing for detailed billing transactions, instructions for disputing transactions, FAQs, and more.

It's quick and easy to pay your bill online with a credit card. Visit the **Manage My Account** section of the PACER Service Center website at pacer.gov.

The PACER Federal Tax ID is:
**74-2747938**

### PACER Website, Manage My Account Updates

Over the past few months, PACER has made some updates to create a more helpful and efficient experience for users. The following list provides details on the improvements:

· **BrowseAloud:** This screen reader program is available on pacer.gov, the PACER Case Locator (PCL), and the Case Search Sign In page. It assists users with a wide range of needs by reading website text out loud.
· **Setting a Default in Manage My Account:** Users no longer need to select an icon (P, F, or A) to designate a default or autobilling method of payment. Instead, two new links (Set autobill and Set default) make the selection simpler and easier.
· **Checking E-File Status:** This link (under the Maintenance tab in Manage My Account) now automatically provides a list of the courts in which you have registered instead of requiring the user to select from a drop-down list.

Questions about the invoice?
Visit **pacer.gov/billing**

---

*Please detach the coupon below and return with your payment.*  ***Thank you!***



# PACER
## Public Access to Court Electronic Records

| Account # | Due Date | Amount Due |
|---|---|---|
| 4166698 | 05/10/2016 | Auto Bill |

Do not send cash. Make checks or money orders drawn on a U.S. Bank in U.S. dollars payable to: PACER Service Center. Include your account ID on the check or money order.

This account is registered for automatic billing.  The total amount due, $95.80, will be charged to the credit card on file up to 7 days before the due date.
Charges will appear on your credit card statement as: PACER 800-676-6856 IR.

*Visit pacer.gov for address changes.*

PACER Service Center
P.O. Box 71364
Philadelphia, PA 19176-1364

Law Office of Eric Alan Isaacson
Eric Alan Isaacson
6580 Avenida Mirola
La Jolla, CA 92037



# PACER
## Public Access to Court Electronic Records

# INVOICE

Invoice Date: 07/05/2016

Usage From:  04/01/2016      to:  06/30/2016

**Account Summary**

| | |
|---|---|
| **Account #:** | 4166698 |
| **Invoice #:** | 4166698-Q22016 |
| **Due Date:** | 08/10/2016 |
| **Amount Due:** | $475.10 |

| | |
|---|---|
| **Pages:** | 4,751 |
| Rate: | $0.10 |
| Subtotal: | $475.10 |
| **Audio Files:** | 0 |
| Rate: | $2.40 |
| Subtotal: | $0.00 |
| **Current Billed Usage:** | $475.10 |
| **Previous Balance:** | $0.00 |
| Current Balance: | **$475.10** |

## Contact Us

San Antonio: (210) 301-6440
Toll Free: (800) 676-6856
Hours: 8 am - 6 pm CT M-F
pacer@psc.uscourts.gov

See pacer.gov/billing for detailed billing transactions, instructions for disputing transactions, FAQs, and more.

It's quick and easy to pay your bill online with a credit card. Visit the **Manage My Account** section of the PACER Service Center website at pacer.gov.

The PACER Federal Tax ID is:
*74-2747938*

Questions about the invoice?
Visit **pacer.gov/billing**

**Total Amount Due:**  $475.10

### Preparing for NextGen CM/ECF

Over the past year, several appellate, district, and bankruptcy courts throughout the country have implemented the next generation (NextGen) CM/ECF system. While most courts have not yet set a date for when they will switch to NextGen, you can begin preparing now by upgrading your PACER account. To learn more, visit the NextGen information page at pacer.gov/nextgen.

- **NextGen Help** (pacer.gov/nextgen): Provides general information about NextGen conversion
- **Electronic Learning Modules** (pacer.gov/ecfcbt/cso/index.html): Provides user training for new NextGen features
- **NextGen CM/ECF FAQs** (pacer.gov/psc/hfaq.html): Answers common NextGen-related questions

---

*Please detach the coupon below and return with your payment.* **Thank you!**



# PACER
## Public Access to Court Electronic Records

| Account # | Due Date | Amount Due |
|---|---|---|
| 4166698 | 08/10/2016 | Auto Bill |

Do not send cash. Make checks or money orders drawn on a U.S. Bank in U.S. dollars payable to: PACER Service Center. Include your account ID on the check or money order.

This account is registered for automatic billing.  The total amount due, $475.10, will be charged to the credit card on file up to 7 days before the due date.
Charges will appear on your credit card statement as: PACER 800-676-6856 IR.

*Visit pacer.gov for address changes.*

PACER Service Center
P.O. Box 71364
Philadelphia, PA 19176-1364

Law Office of Eric Alan Isaacson
Eric Alan Isaacson
6580 Avenida Mirola
La Jolla, CA 92037



**PACER**
Public Access to Court Electronic Records

# INVOICE

Invoice Date:  10/05/2016
Usage From:  07/01/2016     to:  09/30/2016

## Account Summary

| | |
|---|---|
| **Pages:** | 8,937 |
| Rate: | $0.10 |
| Subtotal: | $893.70 |
| **Audio Files:** | 0 |
| Rate: | $2.40 |
| Subtotal: | $0.00 |
| **Current Billed Usage:** | $893.70 |
| **Previous Balance:** | $0.00 |
| Current Balance: | **$893.70** |

| | |
|---|---|
| **Account #:** | 4166698 |
| **Invoice #:** | 4166698-Q32016 |
| **Due Date:** | 11/10/2016 |
| **Amount Due:** | $893.70 |

### Contact Us

San Antonio: (210) 301-6440
Toll Free: (800) 676-6856
Hours: 8 am - 6 pm CT M-F
pacer@psc.uscourts.gov

See pacer.gov/billing for detailed billing transactions, instructions for disputing transactions, FAQs, and more.

It's quick and easy to pay your bill online with a credit card. Visit the **Manage My Account** section of the PACER Service Center website at pacer.gov.

The PACER Federal Tax ID is:
**74-2747938**

| Total Amount Due: |  | $893.70 |
|---|---|---|

Questions about the invoice?
Visit **pacer.gov/billing**

## Preparing for NextGen CM/ECF

In recent months, as more courts throughout the country have implemented the next generation (NextGen) CM/ECF system, some users have encountered issues that can affect account access and registration. The resources listed below can help you avoid many of these issues, creating a smooth transition when your court converts. Check your court's website for updates on when it will implement NextGen.

- **NextGen Help** (pacer.gov/nextgen): Provides general information about NextGen conversion
- **Electronic Learning Modules** (pacer.gov/ecfcbt/cso/index.html): Provides user training for new NextGen features
- **NextGen CM/ECF FAQs** (pacer.gov/psc/hfaq.html): Answers common NextGen-related questions
- **Court Links** (pacer.gov/psco/cgi-bin/links.pl): Shows which courts have converted

---

*Please detach the coupon below and return with your payment.*  **Thank you!**



**PACER**
Public Access to Court Electronic Records

| Account # | Due Date | Amount Due |
|---|---|---|
| 4166698 | 11/10/2016 | Auto Bill |

Do not send cash. Make checks or money orders drawn on a U.S. Bank in U.S. dollars payable to: PACER Service Center. Include your account ID on the check or money order.

This account is registered for automatic billing.  The total amount due, $893.70, will be charged to the credit card on file up to 7 days before the due date.
Charges will appear on your credit card statement as: PACER 800-676-6856 IR.

*Visit pacer.gov for address changes.*

PACER Service Center
P.O. Box 71364
Philadelphia, PA 19176-1364

Law Office of Eric Alan Isaacson
Eric Alan Isaacson
6580 Avenida Mirola
La Jolla, CA 92037



# PACER
## Public Access to Court Electronic Records

# INVOICE

Invoice Date: 01/09/2017

Usage From: 10/01/2016    to: 12/31/2016

## Account Summary

| | |
|---|---|
| **Account #:** | 4166698 |
| **Invoice #:** | 4166698-Q42016 |
| **Due Date:** | 02/10/2017 |
| **Amount Due:** | $379.40 |

**Pages:** 3,794
Rate: $0.10
Subtotal: $379.40

**Audio Files:** 0
Rate: $2.40
Subtotal: $0.00

**Current Billed Usage:** $379.40

**Previous Balance:** $0.00

Current Balance: **$379.40**

## Contact Us

San Antonio: (210) 301-6440
Toll Free: (800) 676-6856
Hours: 8 am - 6 pm CT M-F
pacer@psc.uscourts.gov

## Total Amount Due:      $379.40

See pacer.gov/billing for detailed billing transactions, instructions for disputing transactions, FAQs, and more.

It's quick and easy to pay your bill online with a credit card. Visit the **Manage My Account** section of the PACER Service Center website at pacer.gov.

The PACER Federal Tax ID is:
**74-2747938**

### Preparing for NextGen CM/ECF

In recent months, as more courts throughout the country have implemented the next generation (NextGen) CM/ECF system, some users have encountered issues that can affect account access and registration. The resources listed below can help you avoid many of these issues, creating a smooth transition when your court converts. Check your court's website for updates on when it will implement NextGen.

- **NextGen Help** (pacer.gov/nextgen): Provides general information about NextGen conversion
- **Electronic Learning Modules** (pacer.gov/ecfcbt/cso/index.html): Provides user training for new NextGen features
- **NextGen CM/ECF FAQs** (pacer.gov/psc/hfaq.html): Answers common NextGen-related questions
- **Court Links** (pacer.gov/psco/cgi-bin/links.pl): Shows which courts have converted

Questions about the invoice?
Visit **pacer.gov/billing**

---

*Please detach the coupon below and return with your payment.* **Thank you!**



# PACER
## Public Access to Court Electronic Records

| Account # | Due Date | Amount Due |
|---|---|---|
| 4166698 | 02/10/2017 | Auto Bill |

Do not send cash. Make checks or money orders drawn on a U.S. Bank in U.S. dollars payable to: PACER Service Center. Include your account ID on the check or money order.

This account is registered for automatic billing. The total amount due, $379.40, will be charged to the credit card on file up to 7 days before the due date.
Charges will appear on your credit card statement as: PACER 800-676-6856 IR.

*Visit pacer.gov for address changes.*

PACER Service Center
P.O. Box 71364
Philadelphia, PA 19176-1364

Law Office of Eric Alan Isaacson
Eric Alan Isaacson
6580 Avenida Mirola
La Jolla, CA 92037



# INVOICE

**Invoice Date:** 04/05/2017

**Usage From:** 01/01/2017     to: 03/31/2017

## Account Summary

| | |
|---|---:|
| ***Pages:*** | 3,607 |
| Rate: | $0.10 |
| Subtotal: | $360.70 |
| ***Audio Files:*** | 0 |
| Rate: | $2.40 |
| Subtotal: | $0.00 |
| ***Current Billed Usage:*** | $360.70 |
| ***Previous Balance:*** | $0.00 |
| Current Balance: | **$360.70** |

| | |
|---|---:|
| **Account #:** | 4166698 |
| **Invoice #:** | 4166698-Q12017 |
| **Due Date:** | 05/10/2017 |
| **Amount Due:** | $360.70 |

### Contact Us

San Antonio: (210) 301-6440
Toll Free: (800) 676-6856
Hours: 8 am - 6 pm CT M-F
pacer@psc.uscourts.gov

See pacer.gov/billing for detailed billing transactions, instructions for disputing transactions, FAQs, and more.

It's quick and easy to pay your bill online with a credit card. Visit the **Manage My Account** section of the PACER Service Center website at pacer.gov.

The PACER Federal Tax ID is:
***74-2747938***

Questions about the invoice?
Visit **pacer.gov/billing**

## Total Amount Due:  $360.70

### Eighth Circuit Converts to NextGen

In January, the Eighth Circuit Court of Appeals implemented the next generation (NextGen) CM/ECF system. To date, a total of 10 courts have converted, and more courts will follow in the coming months. See the following websites for what to do when your court announces it will make the transition.

- **NextGen Help** (pacer.gov/nextgen): Provides general information about NextGen conversion
- **Electronic Learning Modules** (pacer.gov/ecfcbt/cso/index.html): Provides user training for new NextGen features
- **NextGen CM/ECF FAQs** (pacer.gov/psc/hfaq.html): Answers common NextGen-related questions
- **Court Links** (pacer.gov/psco/cgi-bin/links.pl): Shows which courts have converted

---

*Please detach the coupon below and return with your payment.* **Thank you!**



| Account # | Due Date | Amount Due |
|---|---|---|
| 4166698 | 05/10/2017 | Auto Bill |

Do not send cash. Make checks or money orders drawn on a U.S. Bank in U.S. dollars payable to: PACER Service Center. Include your account ID on the check or money order.

This account is registered for automatic billing.  The total amount due, $360.70, will be charged to the credit card on file up to 7 days before the due date.
Charges will appear on your credit card statement as: PACER 800-676-6856 IR.

*Visit pacer.gov for address changes.*

PACER Service Center
P.O. Box 71364
Philadelphia, PA 19176-1364

Law Office of Eric Alan Isaacson
Eric Alan Isaacson
6580 Avenida Mirola
La Jolla, CA 92037



# PACER
### Public Access to Court Electronic Records

# INVOICE

Invoice Date: 07/06/2017

Usage From:   04/01/2017       to: 06/30/2017

**Account Summary**

| | | | |
|---|---|---|---|
| **Pages:** | 6,447 | **Account #:** | 4166698 |
| Rate: | $0.10 | **Invoice #:** | 4166698-Q22017 |
| Subtotal: | $644.70 | **Due Date:** | 08/10/2017 |
| **Audio Files:** | 0 | **Amount Due:** | $644.70 |
| Rate: | $2.40 | | |
| Subtotal: | $0.00 | | |

**Current Billed Usage:**           $644.70

**Previous Balance:**               $0.00

Current Balance:                    **$644.70**

**Total Amount Due:**    $644.70

### Contact Us

San Antonio: (210) 301-6440
Toll Free: (800) 676-6856
Hours: 8 am - 6 pm CT M-F
pacer@psc.uscourts.gov

See pacer.gov/billing for detailed billing transactions, instructions for disputing transactions, FAQs, and more.

It's quick and easy to pay your bill online with a credit card. Visit the **Manage My Account** section of the PACER Service Center website at pacer.gov.

The PACER Federal Tax ID is:
*74-2747938*

Questions about the invoice?
Visit **pacer.gov/billing**

### Tenth Circuit Converts to NextGen

In May, the Tenth Circuit Court of Appeals implemented the next generation (NextGen) CM/ECF system. To date, a total of 11 courts have converted, and more courts will follow in the coming months. See the following websites for what to do when your court announces it will make the transition.

- **NextGen Help** (pacer.gov/nextgen): Provides general information about NextGen conversion
- **Electronic Learning Modules** (pacer.gov/ecfcbt/cso/index.html): Provides user training for new NextGen features
- **NextGen CM/ECF FAQs** (pacer.gov/psc/hfaq.html): Answers common NextGen-related questions
- **Court Links** (pacer.gov/psco/cgi-bin/links.pl): Shows which courts have converted

---

*Please detach the coupon below and return with your payment.* **Thank you!**



# PACER
### Public Access to Court Electronic Records

| Account # | Due Date | Amount Due |
|---|---|---|
| 4166698 | 08/10/2017 | Auto Bill |

Do not send cash. Make checks or money orders drawn on a U.S. Bank in U.S. dollars payable to: PACER Service Center. Include your account ID on the check or money order.

This account is registered for automatic billing.  The total amount due, $644.70, will be charged to the credit card on file up to 7 days before the due date.
Charges will appear on your credit card statement as: PACER 800-676-6856 IR.

*Visit pacer.gov for address changes.*

PACER Service Center
P.O. Box 71364
Philadelphia, PA 19176-1364

Law Office of Eric Alan Isaacson
Eric Alan Isaacson
6580 Avenida Mirola
La Jolla, CA 92037

**From:** do_not_reply@psc.uscourts.gov 
**Subject:** 4166698 October 2017 PACER Quarterly Invoice
**Date:** October 14, 2017 at 4:40 AM
**To:** ericalanisaacson@icloud.com



| | |
|---|---|
| Account Number: | 4166698 |
| Account Contact: | Eric Alan Isaacson |
| Balance Due: | $288.70 |
| Due Date: | 11/09/2017 |
| | This account is registered for automatic billing. The tot amount due, $288.70, will be charged to the credit car on file up to 7 days before the due date. Charges will appear on your credit card statement as: PACER 800-676-6856 IR. |

To access the statement:

- Log in to Manage My Account.
- From the **Usage** tab, select **View Quarterly Invoice/Statement of Account**.

Go to Billing for detailed billing transactions, instructions on disputing charges, FAQs, and more.

NOTE: *Please do not reply to this message. If you have questions or comments, please email them to PACER or call us at (800) 676-6856.*

**From:** do_not_reply@psc.uscourts.gov 
**Subject:** 4166698 January 2018 PACER Quarterly Invoice
**Date:** January 13, 2018 at 1:48 AM
**To:** ericalanisaacson@icloud.com



| Account Number: | 4166698 |
|---|---|
| Account Contact: | Eric Alan Isaacson |
| Balance Due: | $280.60 |
| Due Date: | 02/09/2018 |
| | This account is registered for automatic billing. The tot... amount due, $280.60, will be charged to the credit ca... on file up to 7 days before the due date. Charges will appear on your credit card statement as: PACER 800-676-6856 IR. |

To access the statement:

- Log in to Manage My Account.
- From the **Usage** tab, select **View Quarterly Invoice/Statement of Account**.

Go to Billing for detailed billing transactions, instructions on disputing charges, FAQs, and more.

NOTE: *Please do not reply to this message. If you have questions or comments, please email them to PACER or call us at (800) 676-6856.*

**From:** do_not_reply@psc.uscourts.gov 
**Subject:** 4166698 April 2018 PACER Quarterly Invoice
**Date:** April 14, 2018 at 1:44 AM
**To:** ericalanisaacson@icloud.com



| Account Number: | 4166698 |
|---|---|
| Account Contact: | Eric Alan Isaacson |
| Balance Due: | $404.80 |
| Due Date: | 05/10/2018 |
| | This account is registered for automatic billing. The tot amount due, $404.80, will be charged to the credit car on file up to 7 days before the due date. Charges will appear on your credit card statement as: PACER 800-676-6856 IR. |

To access the statement:

- Log in to Manage My Account.
- From the **Usage** tab, select **View Quarterly Invoice/Statement of Account**.

Go to Billing for detailed billing transactions, instructions on disputing charges, FAQs, and more.

NOTE: *Please do not reply to this message. If you have questions or comments, please email them to PACER or call us at (800) 676-6856.*

# EXHIBIT D

## THE FITZPATRICK MATRIX

Hourly Rates ($) for Legal Fees for Complex Federal Litigation in the District of Columbia

| Years Exp. / Billing Yr. | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 |
|---|---|---|---|---|---|---|---|---|---|
| 35+ | 535 | 563 | 591 | 619 | 647 | 675 | 703 | 731 | 736 |
| 34 | 534 | 562 | 590 | 618 | 646 | 674 | 702 | 729 | 734 |
| 33 | 532 | 560 | 588 | 616 | 644 | 672 | 700 | 728 | 733 |
| 32 | 530 | 558 | 586 | 614 | 642 | 670 | 698 | 726 | 730 |
| 31 | 527 | 555 | 583 | 611 | 639 | 667 | 695 | 723 | 728 |
| 30 | 524 | 552 | 580 | 608 | 636 | 664 | 692 | 720 | 725 |
| 29 | 521 | 549 | 577 | 605 | 633 | 661 | 689 | 717 | 721 |
| 28 | 517 | 545 | 573 | 601 | 629 | 657 | 685 | 713 | 717 |
| 27 | 512 | 540 | 568 | 596 | 624 | 652 | 680 | 708 | 713 |
| 26 | 508 | 536 | 564 | 592 | 620 | 648 | 676 | 704 | 708 |
| 25 | 502 | 530 | 558 | 586 | 614 | 642 | 670 | 698 | 703 |
| 24 | 497 | 525 | 553 | 581 | 609 | 637 | 665 | 693 | 697 |
| 23 | 491 | 519 | 547 | 575 | 603 | 630 | 658 | 686 | 691 |
| 22 | 484 | 512 | 540 | 568 | 596 | 624 | 652 | 680 | 684 |
| 21 | 477 | 505 | 533 | 561 | 589 | 617 | 645 | 673 | 677 |
| 20 | 470 | 498 | 526 | 553 | 581 | 609 | 637 | 665 | 670 |
| 19 | 462 | 490 | 518 | 546 | 574 | 602 | 630 | 658 | 662 |
| 18 | 453 | 481 | 509 | 537 | 565 | 593 | 621 | 649 | 653 |
| 17 | 445 | 473 | 500 | 528 | 556 | 584 | 612 | 640 | 645 |
| 16 | 435 | 463 | 491 | 519 | 547 | 575 | 603 | 631 | 635 |
| 15 | 426 | 454 | 482 | 510 | 538 | 566 | 593 | 621 | 626 |
| 14 | 416 | 443 | 471 | 499 | 527 | 555 | 583 | 611 | 615 |
| 13 | 405 | 433 | 461 | 489 | 517 | 545 | 573 | 601 | 605 |
| 12 | 394 | 422 | 450 | 478 | 506 | 534 | 562 | 590 | 594 |
| 11 | 382 | 410 | 438 | 466 | 494 | 522 | 550 | 578 | 582 |
| 10 | 371 | 399 | 427 | 455 | 483 | 510 | 538 | 566 | 570 |
| 9 | 358 | 386 | 414 | 442 | 470 | 498 | 526 | 554 | 558 |
| 8 | 345 | 373 | 401 | 429 | 457 | 485 | 513 | 541 | 545 |
| 7 | 332 | 360 | 388 | 416 | 444 | 472 | 500 | 528 | 532 |
| 6 | 319 | 347 | 375 | 403 | 431 | 458 | 486 | 514 | 518 |
| 5 | 305 | 332 | 360 | 388 | 416 | 444 | 472 | 500 | 504 |
| 4 | 290 | 318 | 346 | 374 | 402 | 430 | 458 | 486 | 489 |
| 3 | 275 | 303 | 331 | 359 | 387 | 415 | 443 | 471 | 474 |
| 2 | 260 | 287 | 315 | 343 | 371 | 399 | 427 | 455 | 458 |
| 1 | 244 | 272 | 300 | 328 | 356 | 384 | 412 | 439 | 442 |
| 0 | 227 | 255 | 283 | 311 | 339 | 367 | 395 | 423 | 426 |
| P* | 130 | 140 | 150 | 160 | 169 | 179 | 189 | 199 | 200 |

* = Paralegals/Law Clerks

*Published by the U.S. Attorney's Office for the District of Columbia, Civil Division*

## Explanatory Notes

1. This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared to assist with resolving requests for attorney's fees in complex civil cases in District of Columbia federal courts handled by the Civil Division of the United States Attorney's Office for the District of Columbia.  It has been developed to provide "a reliable assessment of fees charged for complex federal litigation in the District [of Columbia]," as the United States Court of Appeals for the District of Columbia Circuit urged.  *DL v. District of Columbia*, 924 F.3d 585, 595 (D.C. Cir. 2019).  The matrix has not been adopted by the Department of Justice generally for use outside the District of Columbia, nor has it been adopted by other Department of Justice components.

2. The matrix is intended for use in cases in which a fee-shifting statute permits the prevailing party to recover "reasonable" attorney's fees.  *E.g.,* 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412(b).  A "reasonable fee" is a fee that is sufficient to attract an adequate supply of capable counsel for meritorious cases.  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).  The matrix is not intended for use in cases in which the hourly rate is limited by statute.  *E.g.*, 28 U.S.C. § 2412(d).

3. For matters in which a prevailing party agrees to payment pursuant to this fee matrix, the United States Attorney's Office will not request that a prevailing party offer the additional evidence that the law otherwise requires.  *See, e.g., Eley v. District of Columbia*, 793 F.3d 97, 104 (D.C. Cir. 2015) (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995) (requiring "evidence that [the] 'requested rates are in line with those prevailing in the community for similar services'")).

4. The years in the column on the left refer to an attorney's years of experience practicing law.  Normally, an attorney's experience will be calculated based on the number of years since an attorney graduated from law school.  If the year of law school graduation is unavailable, the year of bar passage should be used instead.  Thus, an attorney who graduated from law school in the same year as the work for which compensation is sought has 0 years of experience.  For all work beginning on January 1 of the calendar year following graduation (or bar admission), the attorney will have 1 year of experience. (For example, an attorney who graduated from law school on May 30 will have 0 years of experience until December 31 of that same calendar year.  As of January 1, all work charged will be computed as performed by an attorney with 1 year of experience.)  Adjustments may be necessary if an attorney did not follow a typical career progression or was effectively performing law clerk work.  *See, e.g., EPIC v. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61, 70-71 (D.D.C. 2013) (attorney not admitted to bar compensated at "Paralegals & Law Clerks" rate).

5. The data for this matrix was gathered from the dockets of cases litigated in the U.S. District Court for the District of Columbia using the following search in Bloomberg Law: keywords ("motion n/5 fees AND attorney!" under "Dockets Only") + filing type ("brief," "motion," or "order") + date ("May 31, 2013 – May 31, 2020" under "Entries (Docket Key Only)").  This returned a list of 781 cases.  Of those, cases were excluded if there was no motion for fees filed, the motions for fees lacked necessary information, or the motions involved fees not based on hourly rates, involved rates explicitly or implicitly based on an existing fee matrix, involved rates explicitly or implicitly subject to statutory fee caps (e.g., cases subject to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)), or used lower rates prescribed by case law (*e.g., Eley*, 793 F.3d at 105 (Individuals with Disabilities in Education Act

cases)).  After these excisions, 86 cases, many of which included data for multiple billers (and 2 of which only provided hourly rate data for paralegals), remained.

6.  The cases used to generate this matrix constitute complex federal litigation—which caselaw establishes as encompassing a broad range of matters tried in federal court.  *E.g.*, *Reed v. District of Columbia*, 843 F.3d 517, 527-29 (D.C. Cir. 2016) (Tatel, J., concurring) (noting that cases arising under the Freedom of Information Act, Title VII, the Americans with Disabilities Act, Constitutional Amendments, antitrust statutes, and others have been deemed complex, and even "relatively small" cases can constitute complex federal litigation, as they too require "specialized legal skills" and can involve "complex organizations," such as "large companies"); *Miller v. Holzmann*, 575 F. Supp. 2d 2, 14-16, 17 (D.D.C. 2008) (prevailing market rates for complex federal litigation should be determined by looking to "a diverse range of cases").  That the attorneys handling these cases asked the court to award the specified rates itself demonstrates that the rates were "'adequate to attract competent counsel, [while] not produc[ing] windfalls to attorneys.'"  *West v. Potter*, 717 F.3d 1030, 1033 (D.C. Cir. 2013) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).  As a consequence, the resulting analysis yields the "prevailing market rate[] in the relevant community" for complex litigation undertaken in federal courts in the District of Columbia.  *See Blum*, 465 U.S. at 895.

7.  From these 86 complex federal cases, the following information was recorded for 2013 and beyond: hourly rate, the calendar year the rate was charged, and the number of years the lawyer was out of law school when the rate was charged (or, if law school graduation year was unavailable, years since bar passage), as defined above.  If the graduation or bar passage year was not stated in a motion or its exhibits, then the lawyer's biography was researched on the internet.  Although preexisting fee matrices for the District of Columbia provide for mid-year rate changes, very few lawyers in the data submitted rates that changed within a calendar year.  For this reason, the matrix was modeled using one rate for each calendar year.  On the occasions when a lawyer expressed an hourly rate as a range or indicated the rate had increased during the year, the midpoint of the two rates was recorded for that lawyer-year.

8.  The matrix of attorney rates is based on 675 lawyer-year data points (one data point for each year in which a lawyer charged an hourly rate) from 419 unique lawyers from 84 unique cases.  The lawyer-year data points spanned from years 2013 to 2020, from $100 to $1250, and from less than one year of experience to 58 years.

9.  Paralegal/law clerk rates were also recorded.  The following titles in the fee motions were included in the paralegal/law clerk data: law clerk, legal assistant, paralegal, senior legal assistant, senior paralegal, and student clerk.  The paralegal/law clerk row is based on 108 paralegal-year data points from 42 unique cases.  They spanned from 2013 to 2019 and from $60 to $290.  (It is unclear how many unique persons are in the 108 data points because paralegals were not always identified by name.)

10. The matrix was created with separate regressions for the lawyer data and the paralegal data.  For the paralegal data, simple linear least-squares regression was used with the dependent variable hourly rate and the independent variable the year the rate was charged subtracted from 2013; years were

combined into one variable and subtracted from 2013 rather than modeled as separate indicator variables to constrain annual inflation to a constant, positive number.  The resulting regression formula was rate = 129.8789 + 9.902107 * (year-2013).  For the lawyer data, least-squares regression was used with the dependent variable hourly rate and independent variables the year the rate was charged and the number of years of experience of the lawyer when the rate was charged.  The year the rate was charged was subtracted from 2013 and modeled linearly as with the paralegal data.  The number of years out of law school (or since year of bar passage) was modeled with both linear and squared terms, as is common in labor economics to account for non-linear wage growth (e.g., faster growth earlier in one's career than at the end of one's career).  *See, e.g.*, Jacob Mincer, *Schooling, Experience, and Earnings* (1974).  The resulting regression formula was rate = 227.319 + 16.54492 * experience - 0.2216217 * experience ^ 2 + 27.97634 * (year-2013).  Regressions were also run with log transformed rates and with a random-effect model (to account for several lawyers appearing more than once in the data), but both alternatives resulted in mostly lower rates than those reflected here; in order to minimize fee disputes, these models were therefore rejected in favor of the more generous untransformed, fixed-effect model.  Rates from one case comprised 20% of the data; the regression was also run without that case, but the resulting rates were mostly lower and therefore rejected, again to minimize fee disputes.

11. The data collected for this matrix runs through 2020.  To generate rates in 2021, an inflation adjustment (rounded to the nearest whole dollar) was added.  The United States Attorney's Office determined that, because courts and many parties have employed the legal services index of the Consumer Price Index to adjust attorney hourly rates for inflation, this matrix will do likewise.  *E.g.*, *Salazar v. District of Columbia*, 809 F.3d 58, 64-65 (D.C. Cir. 2015); *Eley*, 793 F.3d at 101-02; *DL*, 924 F.3d at 589-90.

12. This matrix was researched and prepared by Brian Fitzpatrick, the Milton R. Underwood Chair in Free Enterprise and Professor of Law at Vanderbilt Law School, with the help of his students.

# EXHIBIT E

Fee matrix developed by Professor Brian Fitzpatrick and Brooke Levy '22 adopted by Federal Court | News | Law School | Vanderbilt University

9/12/23, 10:29 AM



Home (/)  /  News (/news/)

## Recent News (/news)

James F. Blumstein Files Amicus Brief in Robinson v. Ardoin

Ingrid Brunk Testifies to European Central Bank at ECB Legal Conference 2023 (https://law.vanderbilt.edu/news/ingrid-brunk-testifies-to-european-central-bank-at-ecb-legal-conference-2023/)

# Fee matrix developed by Professor Brian Fitzpatrick and Brooke Levy '22 adopted by Federal Court

### Feb 7, 2023

The Chief Judge of the U.S. District Court for the District of Columbia, Beryl A. Howell, ordered a plaintiff to recalculate and resubmit her claim for attorneys' fees using the so-called "Fitzpatrick Matrix (https://law.vanderbilt.edu/files/publications/usao_matrix_2015_-_2020.pdf)" on Jan. 23, marking the successful launch of a new tool developed for the Department

Fee matrix developed by Professor Brian Fitzpatrick and Brooke Levy '22 adopted by Federal Court | News | Law School | Vanderbilt University

Case 1:16-cv-00745-PLF   Document 166-5   Filed 10/11/23   Page 48 of 51

9/12/23, 10:29 AM

(https://law.vanderbilt.edu/news/james-f-blumstein-files-amicus-brief-in-robinson-v-ardoin/)

First Amendment Clinics Advocate for Right to Access Government Social Media Accounts (https://law.vanderbilt.edu/news/first-amendment-clinics-advocate-for-right-to-access-government-social-media-accounts/)

A Novel Approach to Teaching Technology Law (https://law.vanderbilt.edu/news/a-novel-approach-to-teaching-technology-law/)

Vanderbilt Law Students and Graduates Secure 39 Clerkships in the 2022-23 Academic Year (https://law.vanderbilt.edu/news/vanderbilt-law-students-and-graduates-secure-39-clerkships-in-the-2022-23-academic-year/)

## Publications

of Justice by complex litigation expert Brian Fitzpatrick (https://law.vanderbilt.edu/bio/brian-fitzpatrick), who holds the Milton R. Underwood Chair in Free Enterprise at Vanderbilt Law School.



Brian Fitzpatrick

Fitzpatrick has published research on attorney compensation and fee awards throughout his career and often provided expert-witness testimony in cases where fee awards are at issue. In 2020, Peter C. Pfaffenroth of the U.S. Attorney's Office for the District of Columbia asked him to take on a daunting task for which Pfaffenroth believed Fitzpatrick was uniquely qualified:  Update the venerable Laffey Matrix (http://www.laffeymatrix.com/), a chart that successful federal litigants had used to calculate and claim reimbursement for their legal fees in the District of Columbia since 1983.

"If you sue the federal government and win, you may be able to file a claim to be reimbursed for your attorneys' fees," Fitzpatrick explains. "But the matrix they were using to calculate these fee awards was 40 years old. Most law firms weren't even

Vanderbilt Law Review
(http://www.vanderbiltlawreview.org/)

Journal of Transnational Law
(http://www.vanderbilt.edu/jotl/)

Environmental Law & Policy
Annual Review (ELPAR)
(/academics/academic-
programs/environmental-
law/environmental-law-policy-
annual-review/index.php)

Journal of Entertainment &
Technology Law
(http://jetlaw.org/)

Apply Now (/prospective-students/admissions/apply/)

Make a Gift (https://vanderbilt.alumniq.com/giving/to/vanderbilt-law)

using computers in 1983 when the Laffey Matrix was developed, but for years it and another matrix from the 1980s were the only games in town for calculating fee awards. I was asked to develop an updated matrix that reflected modern realities."

Fitzpatrick volunteered to do the work pro bono if the DOJ would fund a research assistant. He hired **Brooke Levy '22**, to conduct a comprehensive audit of recent fee petitions in the D.C. District Court.

"Brooke went into the federal courts' electronic docketing system and examined every fee petition filed between 2013 and 2020. In cases where lawyers put in the hourly rates they actually charged the client for their work, we pulled that out and put it in a spreadsheet," he said. "That allowed us to determine the real hourly rates charged in the market."

Fitzpatrick presented the updated matrix to the Department of Justice in late 2021. The chart, which provides fees for attorneys according to their years of experience as well as hourly rates for law clerks and paralegals, was promptly dubbed the "Fitzpatrick Matrix" by DOJ staff.

"My goal was to develop a reliable assessment of fees charged for complex federal litigation that both plaintiffs and judges could use to evaluate fee claims," he said.

The advantage of having a modern, objective tool to calculate attorney's fees is clear in the order (https://law.justia.com/cases/federal/district-courts/district-of-columbia/dcdce/1:2019cv00989/206139/68/) Chief Judge Howell handed down, in which she ordered a plaintiff to use the Fitzpatrick Matrix to calculate the attorneys' fees she was owed. The plaintiff had filed a claim for fees of approximately $415,000, but according to Judge Howell's calculations, "reasonable fees" at the hourly rates set forth in the Fitzpatrick Matrix indicated a fee award of approximately $245,000.

Attorneys representing the government wrote in a court filing that the Fitzpatrick Matrix is "accurate and reliable," noting that since the DOJ adopted it, "disputes about hourly rates have been minimized, both in settlement discussions and in fee

Fee matrix developed by Professor Brian Fitzpatrick and Brooke Levy '22 adopted by Federal Court | News | Law School | Vanderbilt University

Case 1:16-cv-00745-PLF   Document 166-5   Filed 10/11/23   Page 50 of 51

9/12/23, 10:29 AM

petitions."

Fitzpatrick hopes his new matrix will streamline the process for such claims in the future. "The matrix provides objective criteria for determining attorneys' fees based on prevailing rates and the attorneys' experience, so it should simplify the process for filing claims and require less judicial review," he said.

While the Fitzpatrick Matrix can be adjusted upward for inflation, Fitzpatrick recommends that it be more comprehensively updated every five years. "We shouldn't wait another 40 years to update this tool," he said.

---

**Alumni** (https://law.vanderbilt.edu/news/section/alumni/)
**Branstetter Litigation and Dispute Resolution Program**
(https://law.vanderbilt.edu/news/section/branstetter/) **Faculty News**
(https://law.vanderbilt.edu/news/section/faculty-news/) **General News**
(https://law.vanderbilt.edu/news/section/general-news/) **Home Page News**
(https://law.vanderbilt.edu/news/section/home-page-news/) **L&G News and Events**
(https://law.vanderbilt.edu/news/section/law-government/)



V Law School

131 21st Ave. South
Nashville, TN 37203-1181
615-322-2615 (or by Skype)

Fee matrix developed by Professor Brian Fitzpatrick and Brooke Levy '22 adopted by Federal Court | News | Law School | Vanderbilt University

Case 1:16-cv-00745-PLF   Document 166-5   Filed 10/11/23   Page 51 of 51

9/12/23, 10:29 AM



© (https://law.vanderbilt.edu/news/manage/wp-login.php) 2023 Vanderbilt University · Nashville, Tennessee 37240 · (615) 322-7311 · Contact Us (/co

Communications (https://web.vanderbilt.edu/)

Vanderbilt University is committed to principles of equal opportunity and affirmative action.

Vanderbilt®, Vanderbilt University®, V Oak Leaf Design®, and Star V Design® are trademarks of The Vanderbilt University. ©2018 Vanderbilt University.