UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL VETERANS LEGAL SERVICES PROGRAM, NATIONAL CONSUMER LAW CENTER, and ALLIANCE FOR JUSTICE, for themselves and all others similarly situated, | Civil No. 16-745-PLF<br><br>STATEMENT OF ERIC ALAN ISAACSON OF INTENT TO APPEAR IN PERSON AT THE OCTOBER 12, 2023, FINAL-APPROVAL HEARING IN *NATIONAL VETERANS LEGAL SERVICES PROGRAM, ET AL. V. UNITED STATES OF AMERICA* |
| Plaintiffs, | |
| vs. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

WRITTEN STATEMENT OF ERIC ALAN ISAACSON
OF INTENT TO APPEAR IN PERSON AT THE OCTOBER 12, 2023,
FINAL-APPROVAL HEARING IN
*NATIONAL VETERANS LEGAL SERVICES PROGRAM, ET AL.
V. UNITED STATES OF AMERICA*

I am a class member in the above-captioned action who on September 12, 2023, timely served and submitted my Objection of Eric Alan Isaacson to Proposed Settlement in *National Veterans Legal Services Program, et al. v. United States of America.*

On October 3, 2023, Class Counsel filed, but did not serve on me, Plaintiffs' Reply in Support of Motion for Final Approval of Class Settlement and for Fees, Costs and Service Awards. DE160. Class Counsel's reply states that I have said I "intend[] to appear remotely" at the October 12, 2023, hearing. DE160:2. That is not accurate. The Objection and Declaration that I submitted on September 12, 2023, states that "I desire to be heard at the October 12, 2023, Final Approval

1

Hearing in the above-captioned matter, either in person or remotely by means of telephone or video conference." DE160:22¶27.

This Court's Order Setting Settlement Hearing Procedures, DE162, which was filed on October 4, 2023, but was not served on me by the Court or by any party, makes clear that I will need to appear at the hearing in person. That Order states that "[d]ue to technology constraints, those participating virtually will not be able to present any exhibits or demonstratives to the Court or view any that are physically displayed in the courtroom during the hearing." DE162:2¶1. That Order further states that "[i]f a Class Member has submitted a written statement and wishes to be heard at the Settlement Hearing, the Class Member shall be allocated ten minutes to make their presentation," DE162:2¶2.b.i., while any Class Member who "has not submitted a written statement but wishes to be heard at the Settlement Hearing," will be allocated only "five minutes to make their presentation." DE162:3¶2.ii.

I am accordingly submitting this written statement, and am hereby give notice that I will be appearing in person. In addition to expanding on the points made in the Objection and supporting Declaration that I submitted on September 12, 2023, I intend to make the following points:

I will object that class members, such as myself, who submitted timely objections have not been served by the Court or by the Settling Parties with Plaintiffs' Reply in Support of Motion for Final Approval of Class Settlement and for Fees, Costs and Service Awards, DE160, or with this Court's orders changing the location of the Final Approval Hearing, DE161, and imposing limitations and additional requirements on those who seek to participate in that hearing. DE162.

I will further object that class members' objections and supporting documentation have not, to date, been placed on the District Court's docket as part of the public record in this case. Although I timely served and submitted my Objection and supporting Declaration as directed in the class notice, both sending it both by email and by U.S. Postal Service Express Mail addressed to the Honorable Paul L. Friedman, my Objection has never been filed on the District Court's

public PACER-accessible docket for this case. Neither have the objections of any other class members.

In my decades of legal practice connected with class actions and their settlement, I have never before witnessed a case in which the settling parties arranged with the court to keep class members' objections off the public record. This is a gross violation of the First Amendment and common-law rights of public access to court records. "[I]n class actions—where by definition 'some members of the public are also parties to the [case]'—the standards for denying public access to the record 'should be applied ... with particular strictness.'" *Shane Grp., Inc. v. Blue Cross Blue Shield,* 825 F.3d 299, 305 (6th Cir.2016)(quoting *In re Cendant Corp.,* 260 F.3d 183, 194 (3d Cir. 2001)). It also amounts to a denial of due process, obviously impairing objecting class members' ability to seek appellate review.

I also will object to Class Counsel's submission of supplemental expert declarations supporting their fee application as a violation of Rule 23(h), which required them to file their fee motion with supporting affidavits and evidence well before the deadline for class members to file objections. *See* Fed.R.Civ.P. 23(h); *Johnson v. NPAS Solutions, LLC,* 975 F.3d 1244, 1252 (11th Cir. 2020); *Redman v. RadioShack Corp.,* 768 F.3d 622, 638 (7th Cir. 2014); *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-95 (9th Cir.2010). This breach implicates fundamental due-process concerns. *See Lawler v. Johnson,* 253 So.3d 939, 948-51 (Ala. 2017).

The Declaration of William Rubenstein, DE160-2, was submitted on October 3, 2023, well after both the August 28, 2023, deadline this Court set for Class Counsel's attorney's fee application, and weeks after the September 12, 2023, deadline for filing objections. Although I had submitted a timely objection, to which Professor Rubenstein's declaration responds, the Rubenstein declaration was not even served on me. Rubenstein's new declaration provides foundational evidence for Class Counsel's fee request long after the relevant deadlines: "I provide the Court with empirical data which would enable it to find that Class Counsel's proposed billing rates are reasonable." DE160-2:¶1.

Rubenstein's analysis not only comes too late, it is plainly unreliable.

Deconstructing Fitzpatrick's Matrix, Professor Rubenstein says that "[t]he 8 class actions" the Fitzpatrick Matrix includes "had, on average, more than 12 times as many docket entries as the non-class action cases." DE160-2:2¶1. He fails to observe that this makes them a poor comparison for this case, in which the docket entries totaled only 141 with the filing of the Settling Parties' proposed Settlement on October 11, 2022. DE141. According to Rubenstein, the great majority of the cases in the Fitzpatrick Matrix are inapposite, because "in the 74 non-class action cases, the mean" number of docket entries "is 100 entries per case." DE160-2:15-16¶21. "By contrast," Rubenstein says, "the average number of docket entries in the 8 class action cases is 1,207, with the median at 884." DE160-2:16¶21. It should be clear, however, that this case—with around 160 docket entries—is much closer to the relatively simple cases that Rubenstein contends warrant lower attorney's fees, than it is to the class actions that Rubenstein contends warranted higher fees.

"Most importantly," Rubenstein adds, the hourly rates in the Matrix's 8 class action cases were roughly 44% higher than the hourly rates in its non-class action cases." DE160-2. Rubenstein does not, however, explain why class members should have to pay so much more. If anything, Rubenstein's presentation suggests that class-action lawyers are systematically overpaid. Yet Rubenstein contends that Class Counsel in this case should receive nearly ten percent more than do counsel in other, genuinely complex, large-fund class actions: "Class Counsel's trend line is on average 9.3% above the trend line for rates in fee petitions approved in other large fund class actions." DE160-2:13-14¶18.

The cases that Rubenstein selects as comparators are obviously inapposite. In *Cobdell v. Salazar,* for example, the district court conducted a full bench trial, and the Final Order Approving Settlement was docket entry 3850. *Cobell v. Jewell,* 234 F. Supp. 3d 126, 130 (D.D.C. 2017), *aff'd sub nom. Cobell v. Zinke,* 741 F.App'x 811 (D.C. Cir. 2018). In *Mercier v United States,* Fed.Cl. No. 1:12-cv-00920, moreover, the plaintiffs' lawyers achieved a far better result than the meagre 25% recovery in this case: "The Gross Settlement Fund of $160,000,000, according to Plaintiffs' damages expert, represents slightly more than 65% of the maximum amount Plaintiffs could have recovered if they had prevailed at trial." *Mercier v. United States,* 156 Fed.Cl. 580, 584 (2021).

Plaintiffs' expert in *Mercier,* Brian T. Fitzpatrick, recommended a 30% fee award, but the Court of Claims concluded that was far too much: "An award of 30% ... yields a windfall to counsel, is not necessary to attract competent counsel to similar cases, and would necessarily be at the expense of the class members." *Mercier v. United States,* 156 Fed. Cl. 580, 592 (2021). The Court of Claims explained that "[t]he fees class counsel requests are approximately 4.4 times the estimated lodestar amount ($10,831,372)." *Id.* That was simply too much. *See id.* Thus, even the cases relied on by Professor Rubenstein demonstrate that the percentage fee award sought by Class Counsel in this case, producing a multiplier of four or 5.5 times their lodestar, amounts to an impermissible windfall.

The Supplemental Declaration of Brian T. Fitzpatrick, DE160-1, also was submitted on October 3, 2023, well after both the August 28, 2023, deadline this Court set for Class Counsel's attorney's fee application, and the September 12, 2023, deadline for submitting objections. Although I had submitted a timely objection, to which Professor Fitzpatrick's supplemental declaration responds, his supplemental declaration was not even served on me.

Remarkably, the untimely declaration signed by Professor Rubenstein attacks the reliability of Professor Fitzpatrick's methodology in constructing the Fitzpatrick Matrix, implicitly suggesting that Professor Fitzpatrick fits his conclusions to the desires of those who pay him. *See, e.g.,* DE160-2:19¶25&n.29. That is a practice with which Professor Rubenstein is very familiar. His treatise on class actions not so long ago recognized that incentive awards were created of "whole cloth," and that "incentive awards threaten to generate a conflict between the representative's own interests and those of the class she purports to represent." 5 William B. Rubenstein, *Newberg on Class Actions* §17:1 at 492 (5th ed. 2015). The Eleventh Circuit naturally quoted Rubenstein's treatise to strike down incentive awards as contrary to law: "'Rule 23 does not currently make, and has never made, any reference to incentive awards, service awards, or case contribution awards.'" *Johnson v. NPAS Sols., LLC,* 975 F.3d 1244, 1259 (11th Cir. 2020)(quoting Rubenstein, *supra,* § 17:4.). But the class-action plaintiffs' lawyers who frequently pay him to submit favorable declarations complained, and Professor Rubenstein swiftly changed his tune—

submitting an amicus brief supporting en banc rehearing in *Johnson v. NPAS Solutions* that in effect repudiated his own treatise. Professor Rubenstein then rewrote the treatise to suit their ends. Compare 5 William B. Rubenstein, *Newberg on Class Actions* §17:1 at 492 (5th ed. 2015), attached as Exhibit A hereto, which is sensibly hostile to incentive awards, with Professor Rubenstein's amicus brief in *Johnson v. NPAS Solutions,* attached as Exhibit B hereto, and with the newly minted Sixth Edition of Rubenstein's treatise, now arguing for incentive awards.

In a similar vein, I doubt that Professor Fitzpatrick has ever come across a class-action plaintiffs' attorney's fee application that he would characterize as excessive. His position is well known. In one of his law-review articles, Fitzpatrick argues that "class action lawyers not only do not make too much, but actually make too little. Indeed, I argue that in perhaps the most common class action—the so-called 'small stakes' class action—it is hard to see, as a theoretical matter, why the lawyers should not receive everything and leave nothing for class members at all." Brian T. Fitzpatrick, *Do Class Action Lawyers Make Too Little?,* 158 U.Pa.L.Rev. 2043, 2044 (2010). Professor Fitzpatrick explains:

> I assert that we should not be concerned about compensating class members in small-stakes class actions and, instead, should be concerned only with fully incentivizing class action lawyers to bring as many cost-justified actions as possible. That is, the deterrence-insurance theory of civil litigation suggests that the optimal award of fees to class action lawyers in small-stakes actions is 100% of judgments. It is for this reason that I believe class action lawyers are not only not making too much, but, rather, making too little—far too little.

Fitzpatrick, *Do Class Action Lawyers Make Too Little?,* 158 U.Pa.L.Rev. at 2047. Professor Fitzpatrick writes that "even if judges cannot award 100% of settlements to class action lawyers due to political or legal constraints," he believes "they should award fee percentages as high as they can." Fitpatrick, *Do Class Action Lawyers Make Too Little?,* 158 U.Pa.L.Rev. at 2048.

With that, I respectfully submit, the Fitzpatrick and Rubenstein declarations should be rejected as biased, unreliable, and at odds with Rule 23 principles. To place reliance on their conclusions would be to breach this Court's fiduciary duty to the Class.

I also wish to express concerns about this Court's October 4, 2023, Order Setting Settlement Hearing Procedures, which was not served on me, but which I have downloaded from PACER. First, I note that the Order is structured to have settlement approval presented first, with objectors given only a brief opportunity to speak, with only the parties, and not the objectors, then given an opportunity to address attorney's fees. *See* DE162:2-3. This suggests that the Court regards settlement approval as a *fait accompli*. The assumption that objecting class members need not be heard on the subject of attorney's fees also ignores the fact that 2018 amendments to Rule 23(e) make the consideration of attorney's fees a critical element to be considered in connection with whether to approve a settlement in the first place. The current Rule 23(e)(2) says the Court may approve a class-action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether … (C) the relief provided for the class is adequate, taking into account … (iii) the terms of any proposed award of attorney's fees, including timing of payment." Fed.R.Civ.P. 23(e)(2)(C)(iii). Considering attorney's fees only after considering settlement approval, and excluding objectors from commenting in the portion of the hearing concerning attorney's fees, is inconsistent with Rule 23 itself, as well as with principles of fundamental due process.

Also of concern, the schedule in the October 4 Order appears to give objectors no opportunity to cross examine Class Counsel's expert witnesses, Professors Fitzpatrick and Rubenstein. If their opinions are not tested by cross examination, their declarations not only should be discounted as unreliable, they should be stricken as untested and inadmissible hearsay.

On whole, it does not appear that the proceedings are structured to comply with the due-process requirement that objectors receive a full opportunity to be heard. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811-12 (1985).

DATED: October 11, 2023                    Respectfully submitted,

                                           Eric Alan Isaacson

LAW OFFICE OF ERIC ALAN ISAACSON
6580 Avenida Mirola
La Jolla, CA 92037-6231
Telephone: (858)263-9581
Email: ericalanisaacson@icloud.com

# EXHIBIT A

# NEWBERG

## ON CLASS ACTIONS

### FIFTH EDITION

**Volume 5**
**Chapters 15 to 17**

## William B. Rubenstein

Sidley Austin Professor of Law
Harvard Law School



THOMSON REUTERS™

*For Customer Assistance Call 1-800-328-4880*

Mat #41621726

© 2015 Thomson Reuters

For authorization to photocopy, please contact the **Copyright Clearance Center** at 222 Rosewood Drive, Danvers, MA 01923, USA (978) 750-8400; fax (978) 646-8600 or **West's Copyright Services** at 610 Opperman Drive, Eagan, MN 55123, fax (651) 687-7551. Please outline the specific material involved, the number of copies you wish to distribute and the purpose or format of the use.

This publication was created to provide you with accurate and authoritative information concerning the subject matter covered; however, this publication was not necessarily prepared by persons licensed to practice law in a particular jurisdiction. The publisher is not engaged in rendering legal or other professional advice and this publication is not a substitute for the advice of an attorney. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional.

Nothing contained herein is intended or written to be used for the purposes of 1) avoiding penalties imposed under the federal Internal Revenue Code, or 2) promoting, marketing or recommending to another party any transaction or matter addressed herein.

# Acknowledgment

I continue to be blessed by the assistance of remarkable Harvard Law students, without whom this Treatise endeavor would not be possible. Three graduating students—Todd Logan, Rachel Miller-Ziegler, and Shiyu (Vic) Xu, all Harvard Law School Class of 2015, a veritable "dream team" of research assistants—spent much of the spring of their 3L year helping me finish this volume, each contributing unique talents. Three rising 3Ls—Ephraim McDowell, Albert Rivero, and Ben Schwartz, all Harvard Law School Class of 2016 —continued to help in numerous ways throughout their 2L year. And two 1Ls—John Bailey and Mengjie Zou, Harvard Law School Class of 2017—spent portions of their 1L spring and summer helping me put the finishing touches on this volume. If all that were not blessing enough, Kyle Dandelet, Harvard Law School Class of 2010, came out of retirement to assist with the editing of Volume 5. Numerous other students undertook research and writing that is acknowledged throughout the volume.

Harvard Law School continues to support my scholarship with funding for research assistants and summer writing. I am grateful for that support, as well as for the continuing intellectual companionship of so many of my colleagues, but especially that of my Dean, Martha Minow, and colleagues Noah Feldman, Jerry Frug, and John Goldberg. Carol Bateson provides great support.

I remain grateful to my father, and to my friends Peter Eliasberg and Seana Shiffrin, who—without complaint—hear far more about class action law than life should require.

<div align="right">

William B. Rubenstein
Cambridge, Massachusetts
July 2015

</div>

# Chapter 17

# Incentive Awards[*]

§ 17:1    Incentive awards—Generally
§ 17:2    History and nomenclature of incentive awards
§ 17:3    Rationale for incentive awards
§ 17:4    Legal basis for incentive awards
§ 17:5    Source of incentive awards
§ 17:6    Eligibility for incentive awards
§ 17:7    Frequency of incentive awards
§ 17:8    Size of incentive awards
§ 17:9    Judicial review—Generally
§ 17:10   —Timing of motion
§ 17:11   —Burden of proof
§ 17:12   —Documentation requirement
§ 17:13   —Standards of assessment
§ 17:14   —Disfavored practices—Generally
§ 17:15   — —Conditional awards
§ 17:16   — —Percentage-based awards
§ 17:17   — —*Ex ante* incentive award agreements
§ 17:18   — —Excessive awards
§ 17:19   Incentive awards in securities class actions
          under the PSLRA
§ 17:20   Incentive awards for objectors
§ 17:21   Appellate review of incentive awards

> **KeyCite®:** Cases and other legal materials listed in KeyCite Scope can be researched through the KeyCite service on Westlaw®. Use KeyCite to check citations for form, parallel references, prior and later history, and comprehensive citator information, including citations to other decisions and secondary materials.

---

[*]Professor Rubenstein thanks Shiyu (Vic) Xu, Harvard Law School Class of 2015; Ephraim McDowell, Harvard Law School Class of 2016; and John Bailey and Mengjie Zou, Harvard Law School Class of 2017, for their help in editing this unit.

## § 17:1  Incentive awards—Generally

A class action lawsuit is a form of representative litigation—one or a few class members file suit on behalf of a class of absent class members and pursue the class's claims in the aggregate.[1] At the conclusion of a class action, the class representatives are eligible for a special payment in recognition of their service to the class.[2] Most courts call that payment an "incentive award," though some courts label it a "service award" or "case contribution award."[3] The names capture the sense that the payments aim to compensate class representatives for their service to the class and simultaneously serve to incentivize them to perform this function. Empirical evidence shows that incentive awards are now paid in most class suits and average between $10–15,000 per class representative.[4]

Rule 23 does not currently make, and has never made, any reference to incentive awards, service awards, or case contribution awards. The judiciary has created these awards out of whole cloth, yet both judges—and Congress—have expressed concerns about them. The concerns center on the fact that incentive awards have the potential to interfere with a class representative's ability to perform her job adequately. That job is to safeguard the interests of the absent class members. But with the promise of a significant award upon settlement of a class suit, the representative might prioritize securing that payment over serving the class. Thus, incentive awards threaten to generate a conflict between the representative's own interests and those of the class she purports to represent.

Accordingly, the propriety of incentive awards to named

---

[Section 17:1]

[1]Fed. R. Civ. P. 23(a) ("One or more members of a class may sue or be sued as representative parties on behalf of all members . . .").

[2]Other class members may also be eligible for such awards. *See* Rubenstein, 5 **Newberg on Class Actions** § 17:6 (5th ed.).

[3]For a discussion of the history and nomenclature of incentive awards, *see* Rubenstein, 5 **Newberg on Class Actions** § 17:2 (5th ed.).

[4]For a discussion of empirical data on the frequency and size incentive awards, *see* Rubenstein, 5 **Newberg on Class Actions** §§ 17:7 to § 17:8 (5th ed.).

plaintiffs has been rigorously debated[5] and the law concerning incentive awards is surprisingly nuanced. The following sections of the Treatise attempt to untangle the issues. They proceed to cover the following issues:

- the history and nomenclature of incentive awards;[6]
- the rational for incentive awards;[7]
- the legal basis for incentive awards;[8]
- the source of incentive awards;[9]
- the eligibility requirements for incentive awards;[10]
- the frequency[11] and size of incentive awards;[12]
- the judicial review process, including the timing of the motion;[13] the burden of proof;[14] documentation requirements;[15] standards by which courts assess proposed awards;[16] and disfavored practices with regard to incentive awards, including conditional incentive awards,[17] percentage-based incentive awards,[18] *ex ante* incentive awards agreements,[19] and excessive incentive awards;[20]
- the Private Securities Litigation Reform Act of 1995

---

[5]Hadix v. Johnson, 322 F.3d 895, 897, 55 Fed. R. Serv. 3d 116, 2003 FED App. 0072P (6th Cir. 2003) (quoting **Newberg on Class Actions**).

Lane v. Page, 862 F. Supp. 2d 1182, 1237, Fed. Sec. L. Rep. (CCH) P 96834 (D.N.M. 2012) (quoting **Newberg on Class Actions**).

Robles v. Brake Masters Systems, Inc., 2011 WL 9717448, *6 (D.N.M. 2011) (quoting **Newberg on Class Actions**).

Estep v. Blackwell, 2006 WL 3469569, *6 (S.D. Ohio 2006) (quoting **Newberg on Class Actions**).

[6]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:2 (5th ed.).

[7]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:3 (5th ed.).

[8]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:4 (5th ed.).

[9]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:5 (5th ed.).

[10]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:6 (5th ed.).

[11]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:7 (5th ed.).

[12]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:8 (5th ed.).

[13]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:10 (5th ed.).

[14]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:11 (5th ed.).

[15]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:12 (5th ed.).

[16]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:13 (5th ed.).

[17]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:15 (5th ed.).

[18]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:16 (5th ed.).

[19]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:17 (5th ed.).

[20]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:18 (5th ed.).

(PSLRA)'s approach to incentive awards;[21]
- the availability of incentive awards for objectors;[22] and
- the process for appellate review of incentive awards.[23]

## § 17:2   History and nomenclature of incentive awards

Rule 23 does not currently make, and has never made, any reference to incentive awards, service awards, or case contribution awards. The judiciary has created these awards out of whole cloth. The threads initially appear in the reported case law in the late 1980s:[1] a 1987 decision of a federal court in Philadelphia appears to be the first to employ the term "incentive award."[2] That court stated the following:

> In addition to the petition for attorneys fees, plaintiffs counsel have requested that the court award incentive payments to the named plaintiffs, in this litigation in excess of their recovery as class plaintiffs in recognition of their role as private attorneys general in this litigation. Counsel has indicated that the named plaintiffs . . . have helped to effectuate the policies underlying the federal securities laws by instituting this litigation, by monitoring the progress of the litigation and undertaking the other responsibilities attendant upon serving as class representatives. Plaintiffs brought to the attention of counsel the existence of facts which culminated in this law suit and have sought through counsel and obtained substantial compensation for the alleged injuries suffered as a result of the alleged wrongful acts of the defendants. Plaintiffs' counsel have provided numerous citations in this district, in this circuit and elsewhere, in which substantial incentive pay-

---

[21]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:19 (5th ed.).

[22]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:20 (5th ed.).

[23]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:21 (5th ed.).

**[Section 17:2]**

[1]Theodore Eisenberg and Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1303, 1310–11 (2006) ("Courts once tended to limit incentive awards to cases where the representative plaintiff had provided special services to the class—for example, providing financial or logistical support to the litigation or acting as an expert consultant. Beginning around 1990, however, awards for representative plaintiffs began to find readier acceptance . . . By the turn of the century, some considered these awards to be 'routine.'" (footnotes omitted) (quoting Ingram v. The Coca-Cola Co., 200 F.R.D. 685, 694 (N.D. Ga. 2001))).

[2]Re Continental/Midlantic Shareholders Litigation, 1987 WL 16678 (E.D. Pa. 1987).

ments to named plaintiffs in securities class action cases have been made. I believe that such payments are appropriate in this case as well, and will award $10,000.00 payments to both named plaintiffs.[3]

This passage is remarkable in three regards. *First*, as noted, it is the first reference to incentive awards in the reported case law, yet the court states that counsel had provided "numerous citations . . . in which substantial incentive payments to named plaintiffs in securities class action cases have been made." This implies that a practice of incentive awards pre-dated courts' references to such awards. There are, in fact, smatterings of earlier cases providing special awards to plaintiffs without labeling them incentive awards.[4] *Second*, the $10,000 payment in 1987, when adjusted to 2002 dollars to accord with an empirical study on point, shows the award to be about $15,830, which the empirical study reports is almost precisely the average incentive award 15 years later.[5] *Third*, although labeling the payment an "incentive award," the rationale that the court employs speaks more to compensation than incentive, suggesting that the class representatives are being paid for their service to the class, not so as to ensure that class members will step forward in the future.

Perhaps for that reason, some courts refer to the awards as "service awards."[6] The first appearance of this term oc-

---

[3]Re Continental/Midlantic Shareholders Litigation, 1987 WL 16678, *4 (E.D. Pa. 1987).

[4]*See, e.g.,* Bryan v. Pittsburgh Plate Glass Co. (PPG Industries, Inc.), 59 F.R.D. 616, 617, 6 Fair Empl. Prac. Cas. (BNA) 925, 6 Empl. Prac. Dec. (CCH) P 8935 (W.D. Pa. 1973), judgment aff'd, 494 F.2d 799, 7 Fair Empl. Prac. Cas. (BNA) 822, 7 Empl. Prac. Dec. (CCH) P 9269 (3d Cir. 1974) (approving settlement that provided "special awards in the aggregate amount of $17,500 to those members of the plaintiff class who were most active in the prosecution of this case and who devoted substantial time and expense on behalf of the class").

[5]Theodore Eisenberg and Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1303, 1308 (2006) (reporting average award per class representative is $15,992 in inflation adjusted 2002 dollars).

For a discussion of how the magnitude of incentive awards has varied over time, *see* Rubenstein, 5 **Newberg on Class Actions** § 17:8 (5th ed.).

[6]Viafara v. MCIZ Corp., 2014 WL 1777438, *16 (S.D.N.Y. 2014) ("Ser-

curs around 2002[7] and there are about 250 uses of it in federal case law thereafter,[8] though only one by an appellate court.[9] By contrast, about 1,000 district and appellate decisions employ the term "incentive award."[10] The courts appear to utilize the terms interchangeably.

Other courts refer to incentive awards as "case contribution awards."[11] The first case utilizing this term in the reported case law is a 2003 decision of the United States District Court for the Northern District of California. Therein, the court stated that:

> In order to compensate Class Representatives for their time and efforts with respect to this Action, the Class Representatives . . . hereby are awarded Case Contribution Compensation in the amount of $2,000 each, to be paid from the Settlement Fund.[12]

No court employed the case contribution locution again for

---

vice awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs.").

[7]In re Sorbates Direct Purchaser Antitrust Litigation, 2002 WL 31655191, *3 (N.D. Cal. 2002) ("Service awards to Class Representatives Nutri-Shield, Inc., Ohio Chemical Services, Inc., Chem/Serv, Inc., Universal Preservachem, Inc., Kraft Chemical Company Nutrishield etc. in the amount of $7,500 each shall be paid from the Settlement Funds.").

[8]A Westlaw search in the federal courts database for <adv: "service award!" /p ("class representative!" or "named plaintiff!")> returned 258 cases on June 1, 2015.

[9]Rodriguez v. National City Bank, 726 F.3d 372, 375, 86 Fed. R. Serv. 3d 414 (3d Cir. 2013) (noting that "the [settlement] agreement provided a service award of $7,500 to each of the named plaintiffs, $200 to each class payee, $75,000 to two organizations that would provide counseling and other services to the settlement class, and $2,100,000 in attorneys' fees").

[10]A Westlaw search in the federal courts database for <adv: "incentive award!" /p ("class representative!" or "named plaintiff!")> returned 930 cases on June 1, 2015.

[11]Joseph v. Bureau of Nat. Affairs, Inc., 2014 WL 5471125, *4 (E.D. Va. 2014) ("The Court finds that Case Contribution Awards of $5,000.00 each to Class Representatives . . . are just and reasonable, and fairly account for their contributions to the pursuit of this Action on behalf of the Settlement Class.").

[12]In re Providian Financial Corp., 2003 WL 22005019, *3 (N.D. Cal. 2003).

three years[13] and indeed that form is less often utilized than the phrase "incentive award." There are about 40 reported cases using a "case contribution" phrase[14] (again compared to close to 1,000 cases employing the term "incentive award") and no appellate court decisions utilizing that term. The courts appear to utilize the terms "incentive awards" and "case contribution awards" interchangeably, with no apparent difference in courts' treatment of the concept based on the utilization of one term or the other.

## § 17:3    Rationale for incentive awards

At the conclusion of a class action, the class representatives are eligible for a special payment in recognition of their service to the class.[1] Most courts call that payment an "incentive award," though some courts label it a "service award" or "case contribution award."[2] The names capture the sense that the payments aim to compensate class representatives for their service to the class and simultaneously serve to incentivize them to perform this function. Incentive awards for class representatives seem problematic because they appear to treat the class representative differently than the other members of the class. This is a problem for class action law because, generally speaking, a class representative is not entitled to be treated differently than any other class member in the settlement of the class suit.[3] As the Ninth Circuit explained in the context of a settlement that awarded

---

[13]In re Westar Energy, Inc. Erisa Litigation, 2006 WL 6909134, *4 (D. Kan. 2006) ("Each of the Named Plaintiffs is also awarded $1,000.00 for their case contribution.").

In re ADC Telecommunications ERISA Litigation, 2006 WL 6617080, *3 (D. Minn. 2006) (preliminarily approving proposed class action settlement that proposed "payment of the Named Plaintiffs' Case Contribution Compensation").

[14]A Westlaw search in the federal courts database for <adv: "case contribution" /p ("class representative!" or "named plaintiff!")> returned 39 cases on June 1, 2015.

**[Section 17:3]**

[1]Other class members may also be eligible for such awards. *See* Rubenstein, 5 **Newberg on Class Actions** § 17:6 (5th ed.).

[2]For a discussion of the history and nomenclature of incentive awards, *see* Rubenstein, 5 **Newberg on Class Actions** § 17:2 (5th ed.).

[3]Indeed, a class can only be certified if the class representative's claims are typical of those of the rest of the class. Fed. R. Civ. P. 23(a)(3).

§ 17:3 NEWBERG ON CLASS ACTIONS

some present plaintiffs more money than most absent class members:

> [S]pecial rewards for [class] counsel's individual clients are not permissible when the case is pursued as a class action. . . . [W]hen a person joins in bringing an action as a class action he has disclaimed any right to a preferred position in the settlement. Were that not the case, there would be considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations.[4]

Courts fear that a class representative can be induced by a special payment to sell out the class's interests.[5] Such payments are therefore suspect and the suspicion is sometimes policed by ensuring that the class representative's remuneration from the settlement is the same as that of other class

---

[4]Staton v. Boeing Co., 327 F.3d 938, 976, 55 Fed. R. Serv. 3d 1299 (9th Cir. 2003) (citation omitted) (internal quotation marks omitted).

[5]In re Dry Max Pampers Litigation, 724 F.3d 713, 722, 86 Fed. R. Serv. 3d 216 (6th Cir. 2013) ("[W]e have expressed a 'sensibl[e] fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain.' " (quoting Hadix v. Johnson, 322 F.3d 895, 897, 55 Fed. R. Serv. 3d 116, 2003 FED App. 0072P (6th Cir. 2003))).

Hadix v. Johnson, 322 F.3d 895, 897, 55 Fed. R. Serv. 3d 116, 2003 FED App. 0072P (6th Cir. 2003) ("Yet applications for incentive awards are scrutinized carefully by courts who sensibly fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain." (citing **Newberg on Class Actions**))).

In re U.S. Bioscience Securities Litigation, 155 F.R.D. 116, 120 (E.D. Pa. 1994) (characterizing class representatives as "fiduciaries" of absent class members and stating that "[t]his fiduciary status introduces concerns about whether the payment of any 'awards' can be reconciled with the punctilio of fairness the fiduciary owes to the beneficiary").

Weseley v. Spear, Leeds & Kellogg, 711 F. Supp. 713, 720, Fed. Sec. L. Rep. (CCH) P 94403 (E.D.N.Y. 1989) ("A class representative is a fiduciary to the class. If class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard.").

Women's Committee For Equal Employment Opportunity (WC=EO) v. National Broadcasting Co., 76 F.R.D. 173, 180, 19 Fair Empl. Prac. Cas. (BNA) 1703, 15 Empl. Prac. Dec. (CCH) P 7832, 24 Fed. R. Serv. 2d 359 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

members.[6]

Given this emphasis, it is somewhat surprising that incentive awards have proliferated. The Sixth Circuit has observed that "to the extent that incentive awards are common, they are like dandelions on an unmowed lawn—present more by inattention than by design."[7] Yet courts have, in fact, given some attention to the rationale for incentive awards, noting that they work "[1] to compensate class representatives for work done on behalf of the class, [2] to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, [3] to recognize their willingness to act as a private attorney general."[8] Many courts have also noted a fourth rationale for incentive payments: that such payments do precisely what their name hopes they will—incentivize class members to step forward on behalf of the class. Courts regularly reference these four rationales behind incentive awards.

*Compensation.* Most courts state that an incentive award to the class representatives is meant to compensate those entities for the service that they provided to the class.[9] Generally, these services are the time and effort the class representatives invest in the case. Class representatives

---

[6]Lane v. Page, 862 F. Supp. 2d 1182, 1238, Fed. Sec. L. Rep. (CCH) P 96834 (D.N.M. 2012) ("Courts 'have denied preferential allocation on the grounds that the named plaintiff may be tempted to settle an action to the detriment of the class or come to expect a 'bounty' for bringing suit.'" (quoting **Newberg on Class Actions**)).

Robles v. Brake Masters Systems, Inc., 2011 WL 9717448, *8 (D.N.M. 2011) (quoting **Newberg on Class Actions**) (same).

[7]In re Dry Max Pampers Litigation, 724 F.3d 713, 722, 86 Fed. R. Serv. 3d 216 (6th Cir. 2013).

[8]Rodriguez v. West Publishing Corp., 563 F.3d 948, 958–59, 2009-1 Trade Cas. (CCH) ¶ 76614, 60 A.L.R.6th 723 (9th Cir. 2009) (numbers added).

*See also* Sullivan v. DB Investments, Inc., 667 F.3d 273, 333, 2011-2 Trade Cas. (CCH) ¶ 77736, 81 Fed. R. Serv. 2d 580 (3d Cir. 2011) ("The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation and to reward the public service of contributing to the enforcement of mandatory laws." (citations omitted) (internal quotation marks omitted)).

[9]**First Circuit (District Court)**

Nilsen v. York County, 400 F. Supp. 2d 265 (D. Me. 2005) (approving "incentive awards to compensate the three class representatives and

seventeen class member who spent time working with class counsel to achieve the settlement").

**Second Circuit (District Court)**

In re American Intern. Group, Inc. Securities Litigation, 2012 WL 345509, *6 (S.D.N.Y. 2012) ("Courts . . . routinely award . . . costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." (citation omitted) (internal quotation marks omitted)).

**Third Circuit (District Court)**

In re Schering-Plough Corp. Enhance Securities Litigation, 2013 WL 5505744, *37 (D.N.J. 2013), appeal dismissed, (3rd Circ. 13-4328) (Apr. 17, 2014) ("Reasonable payments to compensate class representatives for the time and effort devoted by them have been approved.").

Seidman v. American Mobile Systems, 965 F. Supp. 612, 626 (E.D. Pa. 1997) ("The Court will compensate the class representatives for the time they spent on matters connected to the litigation in this case.").

Pozzi v. Smith, 952 F. Supp. 218, 227, Fed. Sec. L. Rep. (CCH) P 99422 (E.D. Pa. 1997) (awarding class representative fee of $1,600 to compensate the class representative for her actual time and expenses).

Lake v. First Nationwide Bank, 900 F. Supp. 726, 737 (E.D. Pa. 1995) (awarding class representative fee of $500 to both class representatives to compensate them for their actual time and expenses).

**Fifth Circuit (District Court)**

Burford v. Cargill, Inc., 2012 WL 5471985, *6 (W.D. La. 2012) ("[T]he Court finds that each named Plaintiff is entitled to an enhancement award to compensate him or her for the time and effort expended in representing the settlement class during this action.").

Humphrey v. United Way of Texas Gulf Coast, 802 F. Supp. 2d 847, 868, 52 Employee Benefits Cas. (BNA) 1427 (S.D. Tex. 2011) ("Incentive awards are discretionary and 'are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and sometimes to recognize their willingness to act as private attorney general.'" (quoting Rodriguez v. West Publishing Corp., 563 F.3d 948, 959, 2009-1 Trade Cas. (CCH) ¶ 76614, 60 A.L.R.6th 723 (9th Cir. 2009))).

**Sixth Circuit (District Court)**

Swigart v. Fifth Third Bank, 2014 WL 3447947, *7 (S.D. Ohio 2014) ("The modest class representative award requests of $10,000 to each of the two Class Representatives have been tailored to compensate each Class Representative in proportion to his or her time and effort in prosecuting the claims asserted in this action.").

**Seventh Circuit**

Eubank v. Pella Corp., 753 F.3d 718, 723, 88 Fed. R. Serv. 3d 920 (7th Cir. 2014) (reversing the settlement approval but noting that the

lower court "awarded [named plaintiffs] compensation (an 'incentive award,' as it is called) for their services to the class of either $5,000 or $10,000, depending on their role in the case. Saltzman, being the lead class representative, was slated to be a $10,000 recipient").

### Eighth Circuit (District Court)

In re Zurn Pex Plumbing Products Liability Litigation, 2013 WL 716460, *2 (D. Minn. 2013) ("Service award payments are regularly made to compensate class representatives for their help to a class.").

Sauby v. City of Fargo, 2009 WL 2168942, *3 (D.N.D. 2009) ("Incentive awards serve to compensate class representatives for work done on behalf of the class.").

### Ninth Circuit

In re Online DVD-Rental Antitrust Litigation, 779 F.3d 934, 943, 2015-1 Trade Cas. (CCH) ¶ 79083 (9th Cir. 2015) ("[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" (quoting Rodriguez v. West Publishing Corp., 563 F.3d 948, 959, 2009-1 Trade Cas. (CCH) ¶ 76614, 60 A.L.R.6th 723 (9th Cir. 2009))).

Rodriguez v. West Publishing Corp., 563 F.3d 948, 958–59, 2009-1 Trade Cas. (CCH) ¶ 76614, 60 A.L.R.6th 723 (9th Cir. 2009) (stating that incentive awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general").

### Tenth Circuit (District Court)

Chieftain Royalty Co. v. Laredo Petroleum, Inc., 2015 WL 2254606, *4 (W.D. Okla. 2015) ("Case contribution awards are meant to 'compensate class representatives for their work on behalf of the class, which has benefited from their representation.'" (quoting In re Marsh ERISA Litigation, 265 F.R.D. 128, 150 (S.D.N.Y. 2010))).

### Eleventh Circuit (District Court)

Burrows v. Purchasing Power, LLC, 2013 WL 10167232, *4 (S.D. Fla. 2013) ("[T]he Court finds that the Class Representative is not being treated differently than the Settlement Class members. Although the Class Representative seeks an incentive award, the incentive award is not to compensate the Class Representatives for damages but to reward him for his efforts on behalf of the Settlement Class.").

Morefield v. NoteWorld, LLC, 2012 WL 1355573, *4 (S.D. Ga. 2012) ("Service awards compensate class representatives for services provided and risks incurred during the class action litigation on behalf of other class members.").

### District of Columbia Circuit (District Court)

Cobell v. Jewell, 29 F. Supp. 3d 18, 25 (D.D.C. 2014) ("[A]n incentive award is 'intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willing-

perform certain functions that arise in most cases, such as monitoring class counsel, being deposed by opposing counsel, keeping informed of the progress of the litigation, and serving as a client for purposes of approving any proposed settlement with the defendant.[10] Class representatives sometimes

---

ness to act as a private attorney general.' " (quoting Rodriguez v. West Publishing Corp., 563 F.3d 948, 958–59, 2009-1 Trade Cas. (CCH) ¶ 76614, 60 A.L.R.6th 723 (9th Cir. 2009))).

[10]Lilly v. Jamba Juice Company, 2015 WL 2062858, *7 (N.D. Cal. 2015) (Granting incentive award because: "Named Plaintiffs have been substantially involved in the course of the litigation spanning two years. Plaintiff Lilly and Plaintiff Cox invested considerable time in the litigation and prepared for and gave deposition testimony. Plaintiff Cox took time off from work to participate in the litigation. Plaintiffs have also taken efforts to protect the interests of the class by discussing acceptable settlement terms with counsel.") (citations omitted).

Boyd v. Coventry Health Care Inc., 299 F.R.D. 451, 469, 58 Employee Benefits Cas. (BNA) 2084 (D. Md. 2014) ("In the final approval motion, Plaintiffs represent that this award is justified because each Named Plaintiff spent a considerable amount of time over the past four years contributing to the litigation and benefiting the class by reviewing the relevant documents; staying apprised of developments in the case and making themselves available to class counsel; providing class counsel extensive information and materials regarding their Plan investments; responding to Defendants' document requests; and reviewing and ultimately approving the terms of the settlement.").

Singleton v. Domino's Pizza, LLC, 976 F. Supp. 2d 665, 691 (D. Md. 2013) ("In the final approval motion, Plaintiffs represent that this award is justified because both Named Plaintiffs spent a considerable amount of time 'meeting and communicating with counsel, reviewing pleadings and correspondence, gathering documents' and participating in the mediation, all done in furtherance of the interests of the Settlement Classes.").

Heekin v. Anthem, Inc., 2012 WL 5878032, *1 (S.D. Ind. 2012), appeal dismissed, (7th Cir. 12-3786, 12-3871)(May 17, 2013) (approving award because class representatives "committed considerable time and effort over the seven years of litigation" and "[b]oth have conferred and participated with Class Counsel to make key litigation decisions, traveled to Indianapolis to attend hearings, and reviewed the Settlement to ensure it was a fair recovery for the Class") (citation omitted).

Been v. O.K. Industries, Inc., 2011 WL 4478766, *12 (E.D. Okla. 2011), report and recommendation adopted, 2011 WL 4475291 (E.D. Okla. 2011) ("The Court finds . . . that the five Class Representatives devoted substantial time and energy representing the interests of the Class . . . [Class Representative] testified that, for the nine years of litigation, each of the Class Representatives was actively involved in this case, including communicating with Class Counsel, communicating with Class Members, giving depositions, attending and representing the Class in settlement conferences, assisting with preparation for and attending trial, testifying

serve additional functions specific to the particular case.[11] In some cases, particularly securities cases litigated under the PSLRA which approach incentive awards in a distinct fashion,[12] courts have compensated class representatives directly for these services, for instance on an hourly basis,[13] but more

---

or being available to testify at trial, and continuously reviewing and commenting on copies of the filings made by the parties in this Court and in the Tenth Circuit.").

[11]In re Zurn Pex Plumbing Products Liability Litigation, 2013 WL 716460, *2 (D. Minn. 2013) ("The service payments sought under the settlement reflect the efforts by the class representatives to gather and communicate information to counsel and act as the public face of the litigation. The class representatives opened their homes up to inspection and testing, some of them more than once. Each assisted with the investigation and preparation of these suits, gathered documents for production, and helped class counsel.").

Burford v. Cargill, Inc., 2012 WL 5471985, *6 (W.D. La. 2012) ("Here, each plaintiff initially participated in telephone conferences with counsel, completed an intake questionnaire, discussed the questionnaire responses with counsel, and signed a contract of representation. As the litigation continued and as part of the discovery process, each plaintiff was required to fill out a detailed questionnaire regarding their use of Cargill feed and damages. To answer the two questions, plaintiffs were generally required to go through years of their business records. They were also required to produce hundreds of pages of records ranging from milk production records to tax returns. Therefore, the record supports enhancement awards in this case as all of the named Plaintiffs have provided valuable services to the class.") (citations omitted).

[12]For a discussion, *see* Rubenstein, 5 **Newberg on Class Actions** § 17:19 (5th ed.).

[13]Ontiveros v. Zamora, 303 F.R.D. 356, 366 (E.D. Cal. 2014) ("The court finds that a downward departure from the award proposed by parties from $73.80 per hour to $50 per hour fairly compensates the named plaintiff for his time and incorporates an extra incentive to participate in litigation. Multiplying that rate by the 271 hours the named plaintiff spent on litigation, the court finds he would be entitled to an award of $13,550.").

In re Stock Exchanges Options Trading Antitrust Litigation, 2006 WL 3498590, *13 (S.D.N.Y. 2006) ("The Court will award these named plaintiffs $100 per hour they sat in deposition; those that did not even sit for deposition will receive no incentive . . .").

Seidman v. American Mobile Systems, 965 F. Supp. 612, 626 (E.D. Pa. 1997) ("Pursuant to the Court's request, class representative Frank Seidman has furnished the Court with an adequate accounting that the time he spent working on matters related to this litigation is approximately thirty-two hours. Based on the time records and the representations made by counsel as to the activities undertaken by Frank

§ **17:3**                                    Newberg on Class Actions

often courts simply acknowledge these functions as serving as the basis for the incentive award.

*Risks.* Courts often premise incentive awards on the risks that the class representatives undertook in stepping forward to represent the class.[14] These risks are at least two-fold: in some circumstances, the class representative could be liable for the costs of the suit,[15] while in other circumstances, a class representative might face retaliation.[16] Where the risks are specific and substantial, courts may increase the incen-

---

Seidman on behalf of the class, the Court shall award him a class representative fee totaling $1280 (32 hours at a rate of $40.00 per hour) from the D & T settlement fund as compensation for the actual time which he spent on this litigation.").

[14]UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Min. Corp., 352 Fed. Appx. 232, 235-36 (10th Cir. 2009) ("[A] class representative may be entitled to an award for personal risk incurred or additional effort and expertise provided for the benefit of the class.").

Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 430, 2007-1 Trade Cas. (CCH) ¶ 75542 (2d Cir. 2007) ("The Court noted that incentive awards were related to the individual's personal risk and additional efforts to benefit the lawsuit.").

[15]Espenscheid v. DirectSat USA, LLC, 688 F.3d 872, 876–77, 19 Wage & Hour Cas. 2d (BNA) 798, 162 Lab. Cas. (CCH) P 36058 (7th Cir. 2012) ("And a class action plaintiff assumes a risk; should the suit fail, he may find himself liable for the defendant's costs or even, if the suit is held to have been frivolous, for the defendant's attorneys' fees. The incentive reward is designed to compensate him for bearing these risks, as well as for any time he spent sitting for depositions and otherwise participating in the litigation as any plaintiff must do. The plaintiff's duties are not onerous and the risk of incurring liability is small; a defendant is unlikely to seek a judgment against an individual of modest means (and how often are wealthy people the named plaintiffs in class action suits?). The incentive award therefore usually is modest—the median award is only $4,000 per class representative.") (citations omitted).

Fraley v. Facebook, Inc., 966 F. Supp. 2d 939, 947 n.13, 86 Fed. R. Serv. 3d 572 (N.D. Cal. 2013), appeal dismissed, (9th Circ. 13-17097)(Dec. 3, 2013) (finding incentive payments justified because, *inter alia*, "[t]he named plaintiffs here also at least theoretically were at risk of an attorney fee award being entered against them if Facebook prevailed, under the fee-shifting provisions of Civil Code § 3344").

[16]DeLeon v. Wells Fargo Bank, N.A., 2015 WL 2255394, *7 (S.D.N.Y. 2015) (approving $15,000 service award and noting that it, *inter alia,* "recognizes the risks that the named-Plaintiff faced by participating in a lawsuit against her former employer").

Parker v. Jekyll and Hyde Entertainment Holdings, L.L.C., 2010 WL 532960, *1 (S.D.N.Y. 2010) (approving $15,000 enhancement awards because, *inter alia*, "[A]s employees suing their current or former

INCENTIVE AWARDS                                    § 17:3

tive award accordingly.[17]

*Private attorneys general.* Courts have often stated that class representatives perform a public function and may be rewarded accordingly. That function is to ensure enforcement of certain laws. As explained elsewhere in the Treatise,[18] one of the functions of the class action is to incentivize private parties to enforce certain laws such that the government is not required to undertake all law enforcement alone. Class action lawyers are often, therefore, labelled "private attorneys general."[19] But since class counsel need class representatives to pursue a class suit, courts have also dubbed the latter with the same moniker[20]—and acknowledged their public service through provision of an incentive

---

employer, the plaintiffs face the risk of retaliation. The current employees risk termination or some other adverse employment action, while former employees put in jeopardy their ability to depend on the employer for references in connection with future employment. The enhancement awards provide an incentive to seek enforcement of the law despite these dangers.").

Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D. N.Y. 2005) (recognizing that service awards are "particularly appropriate in the employment context" given the risk of retaliation by a current or former employer).

In re Southern Ohio Correctional Facility, 175 F.R.D. 270, 276 (S.D. Ohio 1997), order rev'd on other grounds, 24 Fed. Appx. 520 (6th Cir. 2001) (noting in prison inmate case that "incentive awards are also justified upon the grounds that the class representatives have . . . assumed the risk of retaliation and/or threats by acting as leaders in an unpopular lawsuit").

[17]Been v. O.K. Industries, Inc., 2011 WL 4478766, *12–13 (E.D. Okla. 2011), report and recommendation adopted, 2011 WL 4475291 (E.D. Okla. 2011) (describing specific forms of retaliation class representatives suffered and justifying $100,000 award in part on this basis).

[18]*See* Rubenstein, 1 **Newberg on Class Actions** § 1:8 (5th ed.).

[19]Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 566, 130 S. Ct. 1662, 176 L. Ed. 2d 494, 109 Fair Empl. Prac. Cas. (BNA) 1, 93 Empl. Prac. Dec. (CCH) P 43877 (2010) ("The upshot is that the plaintiffs' attorneys did what the child advocate could not do: They initiated this lawsuit. They thereby assumed the role of 'a "private attorney general"' by filling an enforcement void in the State's own legal system, a function 'that Congress considered of the highest priority.'" (quoting Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402, 88 S. Ct. 964, 19 L. Ed. 2d 1263, 1 Empl. Prac. Dec. (CCH) P 9834 (1968) (per curiam))).

*See generally,* William B. Rubenstein, On What A "Private Attorney General" Is—And Why it Matters, 57 Vand. L. Rev. 2129 (2004).

[20]U.S. Parole Commission v. Geraghty, 445 U.S. 388, 100 S. Ct. 1202,

award.[21]

---

63 L. Ed. 2d 479, 29 Fed. R. Serv. 2d 20 (1980) ("[T]he Federal Rules of Civil Procedure give the proposed class representative the right to have a class certified if the requirements of the Rules are met. This 'right' is more analogous to the private attorney general concept than to the type of interest traditionally thought to satisfy the 'personal stake' requirement.").

Cameron-Grant v. Maxim Healthcare Services, Inc., 347 F.3d 1240, 1246, 9 Wage & Hour Cas. 2d (BNA) 1, 149 Lab. Cas. (CCH) P 34781, 57 Fed. R. Serv. 3d 69 (11th Cir. 2003) ("In essence, the named plaintiff who seeks to represent a class under Rule 23 acts in a role that is analogous to the private attorney general.") (internal quotation marks omitted).

*Cf.* Fox v. Vice, 131 S. Ct. 2205, 2213, 180 L. Ed. 2d 45, 94 Empl. Prac. Dec. (CCH) P 44197 (2011) (noting, in non-class suit that "[w]hen a plaintiff succeeds in remedying a civil rights violation . . . he serves 'as a "private attorney general," vindicating a policy that Congress considered of the highest priority' " (quoting Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402, 88 S. Ct. 964, 19 L. Ed. 2d 1263, 1 Empl. Prac. Dec. (CCH) P 9834 (1968) (per curiam))).

*Cf.* Fogerty v. Fantasy, Inc., 510 U.S. 517, 524, 114 S. Ct. 1023, 127 L. Ed. 2d 455, 29 U.S.P.Q.2d 1881 (1994) (noting, in non-class suit that "[o]ftentimes, in the civil rights context, impecunious 'private attorney general' plaintiffs can ill afford to litigate their claims against defendants with more resources").

*See generally*, Daniel J. Meltzer, Deterring Constitutional Violations By Law Enforcement Officials: Plaintiffs and Defendants as Private Attorneys General, 88 Colum. L. Rev. 247 (1988).

[21]In re Linerboard Antitrust Litigation, 2004-1 Trade Cas. (CCH) ¶ 74458, 2004 WL 1221350, *18 (E.D. Pa. 2004), order amended, 2004 WL 1240775 (E.D. Pa. 2004) (noting that incentive payments were "particularly appropriate in this case because there was no preceding governmental action alleging a conspiracy").

In re Cendant Corp., Derivative Action Litigation, 232 F. Supp. 2d 327, 344 (D.N.J. 2002) (stating that incentive "awards are granted to reward the public service performed by lead plaintiffs in contributing to the vitality and enforcement of securities laws").

In re Plastic Tableware Antitrust Litigation, 1995-2 Trade Cas. (CCH) ¶ 71192, 1995 WL 723175, *2 (E.D. Pa. 1995) (noting that class representative incentive payments "may also be treated as a reward for public service").

In re U.S. Bioscience Securities Litigation, 155 F.R.D. 116, 121 (E.D. Pa. 1994) ("In securities class actions, incentive payments are also thought to encourage the enforcement of federal securities laws.").

In re SmithKline Beckman Corp. Securities Litigation, 751 F. Supp. 525, 535, Fed. Sec. L. Rep. (CCH) P 95,686 (E.D. Pa. 1990) ("[T]he Court agrees that special awards to the class representatives are appropriate. First, they have rendered a public service by contributing to the vitality of the federal Securities Acts. Private litigation aids effective enforcement of the securities laws because private plaintiffs prosecute violations that

*Incentives.* Courts have held that incentive awards are justified as a means for encouraging class members to step forward to represent the class. The Seventh Circuit stated in 1998 that: "[b]ecause a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit."[22] Courts in nearly every circuit have embraced the argument, often directly citing the Seventh Circuit's locution.[23] Typically, courts will simply identify this purpose

---

might otherwise go undetected due to the SEC's limited resources." (citation omitted) (internal quotation marks omitted).

[22]Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998).

[23]**First Circuit (District Court)**

Baptista v. Mutual of Omaha Ins. Co., 859 F. Supp. 2d 236, 244 (D.R.I. 2012) ("An incentive award to a named plaintiff 'can be appropriate to encourage or induce an individual to participate' in a class action." (quoting In re Puerto Rican Cabotage Antitrust Litigation, 815 F. Supp. 2d 448 (D.P.R. 2011))).

In re Puerto Rican Cabotage Antitrust Litigation, 815 F. Supp. 2d 448, 468 (D.P.R. 2011) (" 'Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit.' " (quoting In re Compact Disc Minimum Advertised Price Antitrust Litigation, 292 F. Supp. 2d 184, 189, 2004-1 Trade Cas. (CCH) ¶ 74293 (D. Me. 2003))).

**Fourth Circuit (District Court)**

Smith v. Toyota Motor Credit Corp., 2014 WL 4953751, *1 n.5 (D. Md. 2014) (" 'Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit.' " (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998))).

Boyd v. Coventry Health Care Inc., 299 F.R.D. 451, 468, 58 Employee Benefits Cas. (BNA) 2084 (D. Md. 2014) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998))).

**Fifth Circuit (District Court)**

Humphrey v. United Way of Texas Gulf Coast, 802 F. Supp. 2d 847, 869, 52 Employee Benefits Cas. (BNA) 1427 (S.D. Tex. 2011) ("Moreover, '[b]ecause a named plaintiff is an essential ingredient of any class action an incentive award is appropriate if it is necessary to induce an individual to participate in the suit.' " (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998))).

**Sixth Circuit**

In re Dry Max Pampers Litigation, 724 F.3d 713, 723, 86 Fed. R. Serv. 3d 216 (6th Cir. 2013) (Cole, J., dissenting) ("Where claims are

507

in approving an incentive award. Occasionally, however, a court will attend to the full meaning of the Seventh Circuit's

---

worth very little, as in this case, even a recovery in the full amount may not be enough to induce anyone to serve as a named plaintiff.").

Bickel v. Sheriff of Whitley County, 2015 WL 1402018, *7 (N.D. Ind. 2015) ("Incentive awards are justified when necessary to induce individuals to become named representatives." (quoting In re Synthroid Marketing Litigation, 264 F.3d 712, 722, 2001-2 Trade Cas. (CCH) ¶ 73407, 51 Fed. R. Serv. 3d 736 (7th Cir. 2001))).

**Seventh Circuit**

In re Synthroid Marketing Litigation, 264 F.3d 712, 722, 2001-2 Trade Cas. (CCH) ¶ 73407, 51 Fed. R. Serv. 3d 736 (7th Cir. 2001) ("Incentive awards are justified when necessary to induce individuals to become named representatives.").

Montgomery v. Aetna Plywood, Inc., 231 F.3d 399, 410 (7th Cir. 2000) ("Incentive awards are appropriate if compensation would be necessary to induce an individual to become a named plaintiff in the suit.").

Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit.").

**Eighth Circuit (District Court)**

Sauby v. City of Fargo, 2009 WL 2168942, *1 (D.N.D. 2009) ("Incentive awards are not intended to 'compensate' plaintiffs, but instead serve to encourage people with legitimate claims to pursue the action on behalf of others similarly situated.").

**Ninth Circuit (District Court)**

Barbosa v. MediCredit, Inc., 2015 WL 1966911, *9 (C.D. Cal. 2015) ("An incentive award is appropriate 'if it is necessary to induce an individual to participate in the suit.'" (quoting In re Cellphone Fee Termination Cases, 186 Cal. App. 4th 1380, 1394, 113 Cal. Rptr. 3d 510 (1st Dist. 2010), as modified, (July 27, 2010))).

In re Toys R Us-Delaware, Inc.—Fair and Accurate Credit Transactions Act (FACTA) Litigation, 295 F.R.D. 438, 470, 87 Fed. R. Serv. 3d 968 (C.D. Cal. 2014) ("[I]t is well-established that the court may grant a modest incentive award to class representatives, both as an inducement to participate in the suit and as compensation for time spent in litigation activities, including depositions.").

**Tenth Circuit**

UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Min. Corp., 352 Fed. Appx. 232, 235 (10th Cir. 2009) ("'Incentive awards [to class representatives] are justified when necessary to induce individuals to become named representatives,' but there is no need for such an award 'if at least one [class member] would have stepped forward without the lure of an incentive award.'" (quoting In re Synthroid Marketing Litigation, 264 F.3d 712, 722–23, 2001-2 Trade Cas. (CCH) ¶ 73407, 51 Fed. R. Serv. 3d 736 (7th Cir. 2001))).

statement—that an award is appropriate *if* it is necessary to induce an individual to serve as a class representative—and in so doing, the court will scrutinize whether the incentive award truly induced the class representative's service.[24]

Incentive awards surely make it look as if the class representatives are being treated differently than other class members, but the justifications for the awards help illuminate the fact that the class representatives are not similarly situated to other class members. They have typically done something the absent class members have not—

---

O'Brien v. Airport Concessions, Inc., 2015 WL 232191, *6 (D. Colo. 2015) ("The Court agrees that some award would be necessary to incentivize a plaintiff to come forward on behalf of the class in this case, and that the class has benefitted from his actions.").

Fankhouser v. XTO Energy, Inc., 2012 WL 4867715, *3 (W.D. Okla. 2012) ("Counsel also seek incentive awards for the named class representatives . . . Such awards 'are justified when necessary to induce individuals to become named representatives,' but there is no need for such an award 'if at least one [class member] would have stepped forward without the lure of an 'incentive award.' " (quoting In re Synthroid Marketing Litigation, 264 F.3d 712, 722–23, 2001-2 Trade Cas. (CCH) ¶ 73407, 51 Fed. R. Serv. 3d 736 (7th Cir. 2001))).

In re Motor Fuel Temperature Sales Practices Litigation, 271 F.R.D. 263, 293 (D. Kan. 2010) ("Courts have found that incentive awards to class representatives are justified if necessary to induce individuals to become named representatives, or to compensate them for personal risk incurred or additional effort and expertise provided for the benefit of the class.").

Droegemueller v. Petroleum Development Corp., 2009 WL 961539, *5 (D. Colo. 2009) ("Numerous courts have recognized that incentive awards are an efficient and productive way of encouraging members of a class to become class representatives, and in rewarding individual efforts taken on behalf of the class.").

[24]Fouks v. Red Wing Hotel Corp., 2013 WL 6169209, *2 (D. Minn. 2013) ("Plaintiffs quote, but fail to satisfy, the prerequisite expressed in those cases that 'an incentive award is appropriate if it is necessary to induce an individual to participate in the suit.' . . . Here, Plaintiffs have put forth no evidence or argument that persuades the Court that they required any enticement beyond their potential statutory recovery to bring this case, or that their actions in prosecuting it are deserving of a reward." (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998))).

Kinder v. Dearborn Federal Sav. Bank, 2013 WL 879301, *3 (E.D. Mich. 2013) ("[Plaintiff] has not provided evidence of these or any other factors the court should consider with respect to an incentive award. Moreover, in light of [plaintiff's] pursuit of several of these types of cases, the court finds that no additional incentive is necessary beyond the $100 in statutory damages already awarded.").

stepped forward and worked on behalf of the class—and thus to award them only the same recovery as the other class members risks disadvantaging the class representatives by treating these dissimilarly-situated individuals as if they were similarly-situated to other class members. In other words, incentive awards may be necessary to ensure that class representatives are treated equally to other class members, rewarded both for the value of their claims (like all other class members) but also for their unique service to the class.[25]

While the central cost of incentive awards is the risk that the class representative's interests will diverge from or conflict with those of the class, courts have addressed a host of other problems that arise in the implementation of incentive awards. These are discussed elsewhere in this unit of the Treatise.[26]

## § 17:4  Legal basis for incentive awards

It might be most apt to leave this section of the Treatise blank as Rule 23 does not currently make, and has never made, any reference to incentive awards, service awards, or case contribution awards. The judiciary has created these awards out of whole cloth. In doing so, courts have explained the rationale for incentive awards, as discussed in the preceding section;[1] but few courts have paused to consider the legal authority for incentive awards. The Sixth Circuit's observation that "to the extent that incentive awards are common, they are like dandelions on an unmowed lawn—present more by inattention than by design"[2] therefore accurately describes the judiciary's attention to the legal basis

---

[25]In re AOL Time Warner ERISA Litigation, 2007 WL 3145111, *4 (S.D.N.Y. 2007).

See also Silberblatt v. Morgan Stanley, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A balance must be struck so that a class representative does not view his prospect for rewards as materially different from other members of the class, yet is not disadvantaged by his service in pursuing worthy claims.").

[26]See Rubenstein, 5 **Newberg on Class Actions** §§ 17:14 to 17:18 (5th ed.).

**[Section 17:4]**

[1]See Rubenstein, 5 **Newberg on Class Actions** § 17:3 (5th ed.).

[2]In re Dry Max Pampers Litigation, 724 F.3d 713, 722, 86 Fed. R.

for making incentive awards.

There are only a few scattered references in the reported case law to the legal basis for incentive awards, with no court addressing the question head on. The few references that exist suggest that courts generally treat incentive awards as somewhat analogous to attorney's fee awards. In common fund cases, the presence of a fund under the court's supervision serves as both the source of the award and, in a sense, as the source of authority for an award.[3] In fee-shifting cases, courts must look to the underlying statute for authority to tax a defendant for an incentive award.[4] Because no statutes do authorize such awards, incentive awards are rare in fee-shifting cases, absent a defendant's agreement to pay such awards.

On the common fund side, restitution supports a *fee* award: if the class representative alone is responsible for paying for class counsel's services, the other class members will be unjustly enriched by virtue of receiving the benefit of their services without paying for them; or, if class counsel is not compensated, they will not have realized the fair value of their services.[5] The argument for an incentive award proceeds by analogy: if the class representative provides a service to the class without the class paying for it, the class members will be unjustly enriched by virtue of receiving these services for free, and/or the class representatives are not realizing the full value of their services.[6] This analogy is not quite right, however. The basic rule of unjust enrich-

---

Serv. 3d 216 (6th Cir. 2013).

[3]For a discussion of common fund fee awards, *see* Rubenstein, 5 **Newberg on Class Actions** §§ 15:53 to 15:107 (5th ed.).

[4]For a discussion of statutory fee-shifting, *see* Rubenstein, 5 **Newberg on Class Actions** §§ 15:25 to 15:52 (5th ed.).

[5]For a discussion of the rationale for common fund fee awards, *see* Rubenstein, 5 **Newberg on Class Actions** § 15:53 (5th ed.).

[6]In re Linerboard Antitrust Litigation, 2004-1 Trade Cas. (CCH) ¶ 74458, 2004 WL 1221350, *18 (E.D. Pa. 2004), order amended, 2004 WL 1240775 (E.D. Pa. 2004) ("Like the attorneys in this case, the class representatives have conferred benefits on all other class members and they deserve to be compensated accordingly.").

In re Plastic Tableware Antitrust Litigation, 1995-2 Trade Cas. (CCH) ¶ 71192, 1995 WL 723175, *2 (E.D. Pa. 1995) ("Payments to class representatives may be considered a form of restitutionary relief within the discretion of the trial court. They may also be treated as a reward for

ment is that a person's unsought provision of services gener-
ates no entitlement to payment; the common fund fee award
is an exception to that rule but an exception typically justi-
fied by the fact that class counsel are providing professional
(legal) services to the class.[7] Because the class representa-
tive is not providing professional services, her situation is
best captured not by the exception for attorney's fees but by
Judge Posner's summary of the basic rule of unjust
enrichment: "If you dive into a lake and save a drowning
person, you are entitled to no fee."[8]

A few courts have considered the possibility that incentive
payments to the class representatives might be conceptual-
ized as a "cost" or "expense" of the lawsuit that class counsel
are entitled to pass on to the class.[9] The Seventh Circuit has
speculated that: "Since without a named plaintiff there can
be no class action, such compensation as may be necessary
to induce [the class representative] to participate in the suit

---

public service and for the conferring of a benefit on the entire class." (cita-
tion omitted)).

Theodore Eisenberg and Geoffrey P. Miller, Incentive Awards to
Class Action Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1303, 1313
(2006) ("From a doctrinal perspective, incentive awards have been justi-
fied as a form of restitution for a benefit conferred on others." (citing
Matter of Continental Illinois Securities Litigation, 962 F.2d 566, 571 (7th
Cir. 1992), as amended on denial of reh'g, (May 22, 1992))).

[7]Matter of Continental Illinois Securities Litigation, 962 F.2d 566,
571 (7th Cir. 1992), as amended on denial of reh'g, (May 22, 1992)
(distinguishing right to fees from right to incentive awards in noting that
"the law of restitution (excepting salvage in admiralty) generally confines
the right to restitution to professionals, such as doctors and lawyers" (cit-
ing 2 George E. Palmer, The Law of Restitution, ch. 10 (1978))).

In re U.S. Bioscience Securities Litigation, 155 F.R.D. 116, 122
(E.D. Pa. 1994) ("We agree with Judge Posner that we cannot equate
these investors with professionals 'such as doctors and lawyers.' The value
of doctors' and lawyers' contributions are subject to readily available and
objective benchmarks of reasonableness that the market supplies a court.
No such objective referent exists for 10b-5 heroes. They are therefore not
entitled to fees for lay service considerably less dangerous than diving
into a lake to save a drowning victim." (discussing Matter of Continental
Illinois Securities Litigation, 962 F.2d 566, 571 (7th Cir. 1992), as
amended on denial of reh'g, (May 22, 1992))).

[8]Matter of Continental Illinois Securities Litigation, 962 F.2d 566,
571 (7th Cir. 1992), as amended on denial of reh'g, (May 22, 1992).

[9]For a discussion of recoverable costs in class action cases, see Ruben-
stein, 5 **Newberg on Class Actions** §§ 16:1 to 16:11 (5th ed.).

512

could be thought the equivalent of the lawyers' nonlegal but essential case-specific expenses, such as long-distance phone calls, which are reimbursable."[10] The Ninth Circuit suggested that any active class members' actual expenses might be compensated as costs and/or that services rendered to class counsel might be re-paid by class counsel.[11] But the Sixth Circuit, in a decision interpreting the word "expenses" in a settlement agreement, stated:

> Incentive awards, moreover, do not fit comfortably within the commonly accepted meaning of "expenses." Webster's Third New International Dictionary (1981) defines an expense as, alternatively, "something that is expended in order to secure a benefit or bring about a result;" "the financial burden involved typically in a course of action or manner of living;" "the charges that are incurred by an employee in connection with the performance of his duties and that typically include transportation, meals, and lodging while traveling;" "an item of outlay incurred in the operation of a business enterprise allocable to and chargeable against revenue for a specific period;" and "loss, injury, or detriment as the necessary price of something gained or as the inevitable result or penalty of an action." The idea common to these definitions is that of a pecuniary cost or necessary price.
>
> Under the facts of this case, at least, incentive awards bestowed on class representatives as a matter of grace after the

---

[10]Matter of Continental Illinois Securities Litigation, 962 F.2d 566, 571 (7th Cir. 1992), as amended on denial of reh'g, (May 22, 1992); *see also* Tiffany v. Hometown Buffet, Inc., 2005 WL 991982, *3 (N.D. Cal. 2005) (holding potential incentive payments not part of amount-in-controversy for jurisdictional purposes because jurisdictional inquiry looks only at "claims for special and general damages, attorneys' fees and punitive damages" and incentive payments "do not fall within any of these four categories" but "are more analogous to costs, which are excluded from the calculation of the amount in controversy" (citing Matter of Continental Illinois Securities Litigation, 962 F.2d 566, 571 (7th Cir. 1992), as amended on denial of reh'g, (May 22, 1992) (incentive payments to the class representative "could be thought the equivalent of the lawyers' nonlegal but essential case-specific expenses, such as long-distance phone calls, which are reimbursable"))).

[11]Staton v. Boeing Co., 327 F.3d 938, 977, 55 Fed. R. Serv. 3d 1299 (9th Cir. 2003) (stating, in the context of denying incentive payments to group of non-class representatives, that "class members can certainly be repaid from any cost allotment for their substantiated litigation expenses, and identifiable services rendered to the class directly under the supervision of class counsel can be reimbursed as well from the fees awarded to the attorneys").

completion of the representatives' services do not constitute the "necessary price" of such services. Neither do the awards cover pecuniary costs. The district court justified the awards not on the basis of any monetary expenditures made by the named plaintiffs, but on the basis of these plaintiffs' non-pecuniary risks and their long-time leadership roles and communication functions. At oral argument, similarly, plaintiffs' counsel pointed to the valuable public service these men were said to have provided in lowering the risk of a recurrence of rioting at the Southern Ohio Correctional Facility. It does not seem to us that rewarding such a service with a cash payment can properly be equated with the reimbursement of "expenses" in any traditional sense of the word.[12]

Each of these three circuit decisions only touched upon the topic of incentive awards and none generated a legal basis supporting—or rejecting—incentive awards in common fund cases.

On the fee-shifting side, at least one court has held that there is no statutory basis for such an award (under Nevada fee-shifting law);[13] there are, however, scattered reports of defendants being ordered to pay incentive awards in fee-shifting cases.[14] More often, defendants may agree to pay such awards in settling fee-shifting cases and courts have

---

[12]In re Southern Ohio Correctional Facility, 24 Fed. Appx. 520, 528-29 (6th Cir. 2001).

[13]Sobel v. Hertz Corp., 53 F. Supp. 3d 1319, 1332 (D. Nev. 2014) (finding incentive awards appropriate but finding no authority to shift cost to defendant under applicable state statute, which provided for equitable relief and for the prevailing party to recover "reasonable attorney's fees and costs," since that provision "most assuredly does not encompass the requested incentive awards," but granting request "to be paid out of the common fund").

[14]Karraker v. Rent-A-Center, Inc., 492 F.3d 896, 899–900, 19 A.D. Cas. (BNA) 737 (7th Cir. 2007) (noting, in context of ascertaining prevailing party status for purposes of fee-shifting entitlement, that court approved $5,000 incentive award to named plaintiff and because "there is no settlement fund . . . the $5,000 is a direct payment from [defendant] to [plaintiff]").

Sauby v. City of Fargo, 2009 WL 2168942, *4 (D.N.D. 2009) ("It is neither improper for the class representatives to receive an award of a different amount as compared to other class members, nor does the Court find it would be improper to require the City to bear the burden of paying the incentive awards. The City's request for a pro rata reduction in each class member's refund improperly shifts the burden and unduly complicates the settlement. Consequently, the Court finds the City is to pay the incentive award from the $1.5 million common fund, with no correspond-

then approved the payments in providing general approval to the settlement itself;[15] consistently, when the settlement agreement does not so provide, courts have rejected requests for incentive awards on that basis.[16] Summarizing this situation, the Sixth Circuit stated in 2003:

> [I]ncentive awards are usually viewed as extensions of the common-fund doctrine, a doctrine that holds that a litigant who recovers a common fund for the benefit of persons other than himself is entitled to recover some of his litigation expenses from the fund as a whole . . . Without a common fund, however, there is no place from which to draw an incentive award. Unsurprisingly, we are unable to find any case where a claim for an incentive award that is not authorized in a settlement agreement has been granted in the absence of a common fund.

> Here there is neither authorization in the consent decree for this incentive award nor a common fund from which it could be drawn. As a result, it is plainly inappropriate to grant an incentive award . . . Forcing the defendants to pay the incentive award is certainly an additional expenditure, and it is

---

ing reduction of the refunds to be provided to participating class members." (citations omitted)).

[15]Equal Rights Center v. Washington Metropolitan Area Transit Authority, 573 F. Supp. 2d 205, 210 (D.D.C. 2008) (reporting that defendant agreed to pay incentive awards (of $5,000 to named plaintiffs and $1,000 to class members who were deposed but not named in the complaint) as part of settlement agreement in fee-shifting case brought under 42 U.S.C. § 1983).

Bynum v. District of Columbia, 412 F. Supp. 2d 73, 80–81 (D.D.C. 2006) (reporting that defendant agreed to pay incentive awards (totaling $200,000) as part of settlement agreement in fee-shifting case brought under 42 U.S.C. § 1983).

FitFitzgerald v. City of Los Angeles, 2003 WL 25471424, *1–2 (C.D. Cal. 2003) (reporting that defendant agreed to pay incentive awards ($3,500 to named plaintiff and $3,500 to declarant for the damages class) as part of settlement agreement in fee-shifting case brought under 42 U.S.C. § 1983).

[16]In re Southern Ohio Correctional Facility, 24 Fed. Appx. 520, 522, 529 n.4 (6th Cir. 2001) (reversing award of incentive payments by defendant in non-common fund case because settlement agreement did not provide for them).

Estep v. Blackwell, 2006 WL 3469569, *7 (S.D. Ohio 2006) (denying incentive award because, in absence of common fund, payment would have to come from defendant and settlement agreement did not provide for defendant to make such a payment).

therefore impermissible.[17]

Given that incentive awards are relatively common in class action practice, their legal basis is surprisingly thin. However, as most class suits settle, the parties typically agree to pay the class representatives some incentive award. The only adversarial challenge to this would come from objectors. Absent class members are generally unlikely to object to such awards because even if they were successful, the money would simply remain in the common fund to be distributed to the class and the single member's share of it would be negligible.[18] These dynamics have created few occasions in which courts have been required to consider seriously the legal basis for paying the class representatives from the class's recovery.

## § 17:5    Source of incentive awards

As discussed in the preceding section of the Treatise,[1] the legal basis for incentive awards may vary depending on the fee structure of a class action. In common fund cases, fees are paid out of the common fund; in fee-shifting cases, fees are paid by the defendant. So too incentive awards, though occasionally courts have implied that incentive awards may be paid out of the attorney's fees or re-paid as recoverable costs.

*Common fund.* Courts have generally approved incentive awards that are withdrawn from the common fund at the conclusion of the common fund case. Taking incentive awards from the common fund means that the class members are paying the incentive awards.[2] This is consistent with one legal theory loosely underlying such awards, discussed in

---

[17]Hadix v. Johnson, 322 F.3d 895, 897–99, 55 Fed. R. Serv. 3d 116, 2003 FED App. 0072P (6th Cir. 2003).

[18]*Cf.* Matter of Continental Illinois Securities Litigation, 962 F.2d 566, 573–74 (7th Cir. 1992), as amended on denial of reh'g, (May 22, 1992) (discussing the awarding of attorney's fees and noting that "[n]o class member objected either—but why should he have? His gain from a reduction, even a large reduction, in the fees awarded the lawyers would be minuscule. So the lawyers had no opponent in the district court and they have none here.").

**[Section 17:5]**

[1]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:4 (5th ed.).

[2]Radcliffe v. Experian Information Solutions Inc., 715 F.3d 1157,

the prior section:[3] that class members would be unjustly enriched if they were able to secure the services of the class representatives at no cost.

*Defendant.* If a case does not create a common fund, the defendant may be required by a fee-shifting statute to pay a prevailing party's legal fees;[4] if such a case settles, the defendant will typically agree to pay class counsel's legal fees as part of the settlement. In such settlements, a defendant will often agree to pay the class representatives an incentive award, subject to court approval. In the absence of such an agreement, counsel would have to petition the court to order the defendant to pay the incentive awards. As discussed in the prior section of the Treatise,[5] there is no statutory basis for such an award and courts have rejected awards on that basis, although there are a few scattered reports of defendants being ordered to pay incentive awards in fee-shifting cases.

*Attorney's fees.* In some rare cases, courts have alluded to the idea that incentive awards may be are paid by class counsel out of their fees and expenses.[6] However, if counsel give a portion of their fees to their clients, the payment

---

1163 (9th Cir. 2013) ("In cases where the class receives a monetary settlement, the [incentive] awards are often taken from the class's recovery.").

Shane Group, Inc. v. Blue Cross Blue Shield of Michigan, 2015-1 Trade Cas. (CCH) ¶ 79151, 2015 WL 1498888, *18 (E.D. Mich. 2015) ("Payment of incentive awards to class representatives is a reasonable use of settlement funds." (citing Moulton v. U.S. Steel Corp., 581 F.3d 344, 351, 74 Fed. R. Serv. 3d 918 (6th Cir. 2009))).

[3]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:4 (5th ed.).

[4]For a discussion of fee-shifting statutes, *see* Rubenstein, 5 **Newberg on Class Actions** §§ 15:25 to 15:52 (5th ed.).

[5]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:4 (5th ed.).

[6]In re Southern Ohio Correctional Facility, 24 Fed. Appx. 520, 532 n.4(6th Cir. 2001) (reversing a district court's approval of an incentive award and noting that court's "conclusion is in no way affected by the district court's stipulation that the incentive awards were to be deducted from the approximately $1.659 million already set aside for attorney fees and expenses").

In re Cendant Corp., Derivative Action Litigation, 232 F. Supp. 2d 327, 344 (D.N.J. 2002) ("Lead Counsel seeks permission to make an incentive payment . . . out of the proposed attorneys' fees . . . An incentive payment to come from the attorneys' fees awarded to plaintiff's counsel need not be subject to intensive scrutiny, as the interests of the corporation, the public, and the defendants are not directly affected.").

§ 17:5                                        NEWBERG ON CLASS ACTIONS

would likely violate the ethical prohibition on a lawyer sharing a fee with a non-lawyer,[7] as well as the prohibition on a lawyer going into business with her client.[8] It would also create bad policy.[9]

---

In re Presidential Life Securities, 857 F. Supp. 331, 337 (S.D.N.Y. 1994) ("Plaintiffs' counsels' request for permission to make incentive payments of $2,000 each to five of the individual class representatives is approved as set forth in the order. The matter of payments of incentives to the individual plaintiffs who acted as class representatives need not be subjected to intense scrutiny inasmuch as these funds will come out of the attorney's fees awarded to plaintiffs' counsel. The interests of the class, of the public, and of the defendant are not directly affected.").

*Cf.* In re UnumProvident Corp. Derivative Litigation, 2010 WL 289179, *7 (E.D. Tenn. 2010) (noting, in shareholder derivative suit, that requested incentive awards "would be paid out of the attorney's fees and expenses awarded to Plaintiffs' counsel," but discussing problems with that approach and then holding that "these considerations suggest that it is generally best for incentive awards to be paid out of a common fund or by defendants, rather than by plaintiffs' counsel").

[7] Model Rules of Professional Conduct (ABA), Rule 5.4(a) ("A lawyer or law firm shall not share legal fees with a nonlawyer . . .").

Campbell v. Fireside Thrift Co., 2004 WL 49708, *11 (Cal. App. 1st Dist. 2004), unpublished/noncitable (holding that "funding the incentive award by offsetting it against Class Counsel's fees would constitute sharing fees with a non-lawyer, which is prohibited by rule 1-320 of the State Bar Rules of Professional Conduct").

*But see* In re UnumProvident Corp. Derivative Litigation, 2010 WL 289179, *8 (E.D. Tenn. 2010) (finding incentive award paid from attorney's fees inappropriate despite concluding that "there is no ethical concern" with such an arrangement because the "Tennessee Rules of Professional Conduct prohibit lawyers from sharing fees with nonlawyers except, *inter alia*, 'a lawyer may share a court-awarded fee with a client represented in the matter for which the fee was awarded'" (quoting Tenn. Sup. Ct. R. 8, RPC 5.4(a)(4))).

In re Presidential Life Securities, 857 F. Supp. 331, 337 (S.D.N.Y. 1994) (noting that when incentive awards were to be paid out of counsel's fees, the "sole reason for seeking judicial approval appears to be Code of Professional Responsibility DR 3-102 which bars splitting of legal fees with non-lawyers with exceptions not pertinent here" but approving award).

[8] Model Rules of Professional Conduct (ABA), Rule 1.8(a) ("A lawyer shall not enter into a business transaction with a client . . .").

[9] In re UnumProvident Corp. Derivative Litigation, 2010 WL 289179, *8 (E.D. Tenn. 2010) ("The scarcity of incentive awards paid from counsel's fees may be indicative of their problematic nature. Because the incentive award will come directly from attorney's fees, Plaintiffs' counsel is asking for the opportunity to pay the named plaintiffs. This puts Plaintiffs'

*Expense.* To the extent that the incentive award is conceptualized as a litigation cost or expense, as a few courts have suggested,[10] then it could be recovered from the fund or the defendant according to any applicable costs provision.[11] That said, few courts regard such payments as recoverable costs.

## § 17:6  Eligibility for incentive awards

At the conclusion of a class action, the class representatives are eligible for incentive awards in recognition of their service to the class. The rationales for incentive awards, discussed in a preceding section,[1] are that the recipient should be compensated for the work she undertook for the class, for the risks she took in doing so, and for stepping forward to serve as a sort of "private attorney general." The tests courts apply in determining whether or not to approve a proposed incentive award, described in the succeeding section,[2] similarly focus on the services that the applicant

---

counsel in an unusual position, seeking to convince a court they should pay money. While the amount of money here ($10,000 total) is small relative to the total attorney's fees, it is still an expenditure, and therefore their own financial interest conflicts with the named plaintiffs. Plaintiffs' counsel has the most information about what involvement the named plaintiffs had; yet their description of the named plaintiffs' activities is skimpy. Furthermore, Defendants have no motivation to challenge Plaintiffs' counsel's assertions. In addition, paying plaintiffs could lead to professional plaintiffs. These considerations suggest that it is generally best for incentive awards to be paid out of a common fund or by defendants, rather than by plaintiffs' counsel.").

Campbell v. Fireside Thrift Co., 2004 WL 49708, *12 (Cal. App. 1st Dist. 2004), unpublished/noncitable ("[I]t also appears to us to present at least a potential conflict of interest for class counsel to negotiate the payment of an incentive award out of their own fees, because of the resulting divergence between their own interests, those of the class representative, and those of the class as a whole.").

[10]The expense rationale for an award is discussed in the preceding section of the Treatise. *See* Rubenstein, 5 **Newberg on Class Actions** § 17:4 (5th ed.).

[11]For a discussion of the recovery of nontaxable costs in class actions, *see* Rubenstein, 5 **Newberg on Class Actions** §§ 16:5 to 16:10 (5th ed.).

**[Section 17:6]**

[1]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:3 (5th ed.).

[2]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:13 (5th ed.).

§ 17:6                                        Newberg on Class Actions

provided to the class.[3] Occasionally, these tests are framed in terms of whether the "class representative" provided these services to the class,[4] but the rationale—that a class member should be rewarded for her service to the class—can apply to a wider group of class members.

Thus, lawyers have sought incentive awards for at least four types of class members:

- *Class representatives* are those plaintiffs whom class counsel proposes, and a court appoints, to represent the class. These class representatives serve as the formal "client" on behalf of the class. As such, they are the class members most likely to undertake the tasks that justify an incentive award and hence are the primary beneficiaries of such awards.

- *Named plaintiffs* are those plaintiffs identified individually in the complaint, on whose behalf the case is initially lodged as a putative class action. Class counsel need not put forward all named plaintiffs, or only named plaintiffs, as proposed class representatives. And even if class counsel does propose that all of the named plaintiffs serve as class representatives, a court might approve some but not others. In many cases, however, the class representatives proposed by class counsel and approved by the court will be precisely (and only) those plaintiffs named in the complaint, meaning the two concepts will overlap completely. For that reason, courts often utilize the terms interchangeably, though in some circumstances, the two are not synonymous. Specifically, in some cases, a named plaintiff will not serve as a formal class representative, but by virtue of having

---

[3]*See, e.g.,* Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998) (directing courts to consider "[1] the actions the plaintiff has taken to protect the interests of the class, [2] the degree to which the class has benefitted from those actions, and [3] the amount of time and effort the plaintiff expended in pursuing the litigation").

[4]*See, e.g.,* Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995) (stating that in reviewing a proposed incentive award, a court should consider: "1) the risk to *the class representative* in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the *class representative*; 3) the amount of time and effort spent by the *class representative*; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the *class representative* as a result of the litigation") (emphasis added).

520

been named in the complaint, she may have undertaken some of the tasks that would make her eligible for an incentive award.[5]

- *Other class members* who are neither class representatives nor named plaintiffs might be eligible for incentive awards if they meaningfully participated in the litigation and conferred a benefit on the class. Typically, such awards may be paid to class members who, for example, were deposed by the defendant.[6] While any

---

[5]In re TFT-LCD (Flat Panel) Antitrust Litigation, 2013-1 Trade Cas. (CCH) ¶ 78318, 2013 WL 1365900, *17 (N.D. Cal. 2013), appeal dismissed, (9th Circ. 13-15929) (July 12, 2013) and appeal dismissed, (9th Circ. 13-15915) (June 12, 2014) and appeal dismissed, (9th Circ. 13-15916, 13-15930) (June 13, 2014) and appeal dismissed, (9th Circ. 13-15917) (June 13, 2014) ("The Court approves incentive awards of $15,000 to each of the 40 court-appointed class representatives, and $7,500 for each of eight additional named plaintiffs. The Court recognizes the contribution these class representatives and named plaintiffs made to this litigation and finds the amounts requested are reasonable in light of these contributions.").

*Cf.* Shames v. Hertz Corp., 2012-2 Trade Cas. (CCH) ¶ 78120, 2012 WL 5392159, *22 (S.D. Cal. 2012), appeal dismissed, (9th Circ. 12-57247) (Jan. 23, 2013) and appeal dismissed, (9th Circ. 12-57211, 12-57026) (July 16, 2013) and appeal dismissed, (9th Cir 12-27205) (Sept. 20, 2013) (approving incentive award for class representative but noting that second individual, "though a named plaintiff, has not been put forth as a class representative and does not seek an incentive award").

*But see* Mancini v. Ticketmaster, 2013 WL 3995269, *2 (C.D. Cal. 2013), appeal dismissed, (9th Cir. 13-56536) (Oct. 4, 2013) (denying incentive award to named plaintiffs who were not approved class representatives and finding the named plaintiffs' argument that they, like the class representatives, also "incurred risks of liability for defendants' costs, had little to personally gain from the litigation, and remained involved for many years, including producing documents, appearing for deposition and submitting declarations," unpersuasive).

[6]Shaw v. Interthinx, Inc., 2015 WL 1867861, *4 (D. Colo. 2015) (granting incentive awards where the "[n]amed Plaintiffs and Class Counsel request approval of $10,000 incentive awards to each of the five Named Plaintiffs and $2,500 incentive awards to each of the two Deposed Opt-in Plaintiffs—representing *in toto* less than 1% of the maximum value of the common fund, or .1667% for each Named Plaintiff and .04167% for each Deposed Opt-in Plaintiff").

Camp v. Progressive Corp., 2004 WL 2149079, *7 (E.D. La. 2004) (awarding $2,500 to non-representative class members who gave a deposition, and $1,000 to non-representative class members who were not deposed but who assisted in the preparation of discovery responses, in class action to recover unpaid wages under the FLSA).

class member may therefore be eligible for an incentive award based on her work on behalf of the class, courts are hesitant to provide awards to large groups of plaintiffs, even if active in the litigation, beyond the core group identified as class representatives (or named plaintiffs).[7]

- *Objectors.* Counsel who object to a class settlement might also seek an incentive award for the class member on whose behalf they lodged the objection. Specifically, any class member who does not opt out of the class may object to a proposed settlement or attorney fee award at the conclusion of the class suit.[8] In doing so, an objector may provide a service to the class and therefore be eligible for an incentive award. Objector incentive awards are considered in a separate section at the end of this unit of the Treatise.[9]

## § 17:7  Frequency of incentive awards

There are several studies that provide some limited empirical evidence concerning the frequency and size of incentive awards. One study, conducted by the Federal Judicial Center ("FJC"), examined class action terminations in four districts in the early 1990s, with some passing references to incentive awards.[1] The most comprehensive published study of incentive awards looked at 374 opinions in

---

[7]*See, e.g.,* Staton v. Boeing Co., 327 F.3d 938, 976, 55 Fed. R. Serv. 3d 1299 (9th Cir. 2003) (denying higher awards to "[t]he two hundred-odd IIRs who were not class representatives" partly because they "were not essential to the litigation, although they may have been helpful to it").

[8]The objection process is discussed in detail elsewhere in the Treatise. *See* Rubenstein, 4 **Newberg on Class Actions** §§ 13:20 to 13:37 (5th ed.).

[9]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:20 (5th ed.).

**[Section 17:7]**

[1]Thomas E. Willging, Laural L. Hooper and Robert J. Niemic, Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rule (1996). A report on that study is published elsewhere. *See* Thomas E. Willging, Laural L. Hooper and Robert J. Niemic, An Empirical Analysis of Rule 23 to Address the Rulemaking Challenges, 71 N.Y.U. L. Rev. 74, 101 (1996).

class action settlements published from 1993-2002.[2] The Treatise author's own database contains information on incentive awards in nearly 1,200 class actions resolved between 2006–2011.[3] These studies provide data on the frequency with which courts approve incentive awards.

The FJC study from the early 1990s reported that a "substantial minority of all certified, settled class actions in which the court approved a settlement included designated awards to the named class representatives."[4] Specifically, courts granted incentive awards in the four federal districts in 26% (E.D. Pa.), 46% (S.D. Fla.), 40% (N.D. Ill.), and 37% (N.D. Cal.) of all cases, for a total of awards in 44 of 126 cases, or 34.9%.[5] The comprehensive 10 year study found that 27.8% (104) of all 374 cases involved incentive awards.[6] The 1993–2002 study further broke down incentive award frequency by case type. The data show that incentive awards were most frequently granted in consumer credit (59.1%) and commercial cases (57.1%) and least frequently granted in mass tort (7.1%) and corporate cases (4.2%), while no awards were granted in six tax refund cases.[7]

The Treatise author's own data base suggests a remarkable shift in the frequency of class actions culminating in incentive awards, as presented in Table 1, below.

---

[2]Theodore Eisenberg and Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1303 (2006).

[3]William B. Rubenstein and Rajat Krishna, *Class Action Incentive Awards: A Comprehensive Empirical Study* (draft on file with author).

[4]Thomas E. Willging, Laural L. Hooper and Robert J. Niemic, An Empirical Analysis of Rule 23 to Address the Rulemaking Challenges, 71 N.Y.U. L. Rev. 74, 101 (1996).

[5]Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rule* 120 fig.16 (1996).

[6]Theodore Eisenberg and Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1303, 1320 (2006).

[7]Theodore Eisenberg and Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1303, 1323 tbl.2 (2006).

## Table 1
## Empirical Data on Frequency of Incentive Awards

| Awards Granted | 1993–2002 Study[8] | 2006–2011 Study[9] |
|---|---|---|
| Antitrust | 35% | 79.4% |
| Civil Rights | 10.5% | 94.6% |
| Consumer | 33.3% | 93.4% |
| Employment- Discrimination | 46.2% | 75.0% |
| Employment—Wages/Benefits | 23.1% | 87.8% |
| Securities | 24.5% | 38.7% |
| TOTAL (all case types including types not included above) | 27.8% | 71.3% |

The more recent data suggest four interesting trends. *First*, while the 1993–2002 study found courts providing incentive awards in 27.8% of all cases, the 2006–2011 data show courts providing incentive awards in 71.3% of all cases. The frequency with which incentive awards are awarded therefore appears to have increased by 156% in recent years, with awards being provided in almost three quarters of all cases. *Second*, the increase occurs across case types, as set forth in Table 1, below. *Third*, securities cases remain those with the lowest percentage of award grants, which is consistent with the statutory framework of the PSLRA.[10] Nonetheless, it appears that some form of remuneration is paid to class representatives in about a third of securities cases. *Fourth*, while incentive awards have proliferated, they appear to have simultaneously become more modest; the size of incentive awards is discussed in the succeeding section of the

---

[8]Theodore Eisenberg and Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1303, 1323 tbl.2 (2006).

[9]William B. Rubenstein and Rajat Krishna, *Class Action Incentive Awards: A Comprehensive Empirical Study* (draft on file with author).

[10]For a discussion of incentive awards under the PSLRA, *see* Rubenstein, 5 **Newberg on Class Actions** § 17:19 (5th ed.).

Treatise.[11]

The increased prevalence of incentive awards in our study was is so stunning, that we broke the data down among each of the six years of the study (2006–2011). Doing so demonstrated that the frequency of incentive awards increased across those years (but for a blip in the second year). Therefore, our conclusion that courts approved incentive awards in 71.3% of all cases between 2006–2011 masks the facts that courts approved awards in 69.6% and 62.8% of cases in the first two years (2006–2007) but in nearly 80% of all cases (78.6%) by 2011. These data are shown in Graph 1, below.

## Graph 1
## Empirical Data on Frequency of Incentive Awards— 2006–2011[12]



---

[11]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:8 (5th ed.).

[12]William B. Rubenstein and Rajat Krishna, *Class Action Incentive Awards: A Comprehensive Empirical Study* (draft on file with author).

The increased frequency with which courts have provided incentive awards may be attributable to a combination of several factors. The earlier study went back to 1993, which was about when incentive awards began,[13] so it is not surprising that the practice would have been sparser in those years. As the practice increased, it is quite likely that class counsel sought incentive awards more often, not that courts *sua sponte* offered them more often. However, the dramatic change over time also suggests that courts showed little resistance to the increasing requests for such awards. Neither study provides data on the frequency with which requested awards are approved, rejected, or reduced; but the case law contains far more cases routinely approving awards than outright rejecting them.[14]

These newer data provide strong support for the conclusion that incentive awards are a quite common part of class action practice today.

## § 17:8    Size of incentive awards

There are several studies that provide some limited empirical evidence concerning the frequency and size of incentive awards. One study, conducted by the Federal Judicial Center ("FJC"), examined class action terminations in four districts in the early 1990s, with some passing references to incentive awards.[1] The most comprehensive published study of incentive awards themselves looked at 374

---

[13]On the history of incentive awards, *see* Rubenstein, 5 **Newberg on Class Actions** § 17:2 (5th ed.).

[14]*See, e.g.,* In re Dry Max Pampers Litigation, 724 F.3d 713, 717, 86 Fed. R. Serv. 3d 216 (6th Cir. 2013) ("The district court entered its 'Final Approval Order and Final Judgment' later that afternoon [of the fairness hearing]. With the exception of a few typographical changes, the order was a verbatim copy of a proposed order [including incentive award provisions] that the parties had submitted to the court before the hearing. The order was conclusory, for the most part merely reciting the requirements of Rule 23 in stating that they were met. About Greenberg's objections, the order had nothing to say.").

**[Section 17:8]**

[1]Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rule* (1996). A report on that study is published elsewhere. *See* Thomas E. Willging, Laural L. Hooper and Robert J. Niemic, An Empirical Analysis of Rule 23 to Address the

opinions in class action settlements published from 1993–2002.[2] The author's own database contains information on incentive awards in approximately 1,200 class actions resolved between 2006–2011.[3] The studies provide data on the size of incentive awards.

The size of incentive awards can be viewed at the case level (total amount of incentive awards approved in the case) or at the individual level (amount per class representative), with data available on both average and median sizes. The FJC study from the early 1990s reported that the "median amounts of all awards to class representatives in the four districts were $7500 in E.D. Pa. and N.D. Ill., $12,000 in S.D. Fla., and $17,000 in N.D. Cal. . . . The median award per representative in three courts was under $3000 and in N.D. Cal. was $7560."[4] The data from the two more recent studies appear in Table 1 below.

Rulemaking Challenges, 71 N.Y.U. L. Rev. 74, 101 (1996).

[2]Theodore Eisenberg and Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1303 (2006).

[3]William B. Rubenstein and Rajat Krishna, *Class Action Incentive Awards: A Comprehensive Empirical Study* (draft on file with author).

[4]Thomas E. Willging, Laural L. Hooper and Robert J. Niemic, An Empirical Analysis of Rule 23 to Address the Rulemaking Challenges, 71 N.Y.U. L. Rev. 74, 101 (1996). The larger version of this study shows these numbers to be $2,500 (E.D. Pa.), $2,583 (S.D. Fla.), $2,964 (N.D. Ill.). Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rule* 121 (1996) (fig. 18).

### Table 1
### Empirical Data on Size of Incentive Awards

|  | 1993–2002 Study[5] In 2002 $ | 2006–2011 Study[6] In 2002 $ | 2006–2011 Study[7] In 2011 $ |
|---|---|---|---|
| Median Total Incentive Award | $18,191 | $8,398 | $10,500 |
| Median per Plaintiff | $4,357 | $4,199 | $5,250 |
| Mean Total Incentive Award | $128,803 | $26,326 | $32,915 |
| Mean per Plaintiff | $15,992 | $9,355 | $11,697 |

The two studies show that the average award per plaintiff ranged from $9,355 (in 2002 dollars) in one study to $15,992 (in 2002 dollars) in the other, while the median award per plaintiff in both studies, adjusted to 2002 dollars, fell right between $4,000–$4,500. Both studies therefore show much higher means than medians, suggesting there are some cases in the study with extremely high rewards (driving the average much higher than the median).

This conclusion is supported by data from the 1993–2002 study that breaks down incentive award size by case type. The data show that the mean incentive award per representative was largest in employment discrimination cases ($69,850.20) and smallest in consumer credit cases ($1,326.30).[8] The employment discrimination numbers are far higher than the mean or median numbers, likely because the named plaintiffs in these cases are being rewarded for the risks of retaliation that they faced, as well as for their more routine services provided to the class.

It is difficult to draw any conclusions about trends—the

---

[5]Theodore Eisenberg and Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 U.C.L.A. L. Rev. 1303, 1346, 1348 (2006).

[6]William B. Rubenstein and Rajat Krishna, *Class Action Incentive Awards: A Comprehensive Empirical Study* (draft on file with author).

[7]William B. Rubenstein and Rajat Krishna, *Class Action Incentive Awards: A Comprehensive Empirical Study* (draft on file with author).

[8]Theodore Eisenberg and Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 U.C.L.A. L. Rev. 1303, 1333 tbl.5 (2006).

later study (from 2006–2011) had a slightly lower median award per plaintiff than the earlier data (1993–2002), and the later data also showed a 42% decrease in the mean award per plaintiff when all the data is adjusted to 2002 dollars (from $15,992 to $9,355). It is plausible that this decrease reflects a growing judicial unease with the practice of incentive awards and greater attention to their size. However, as discussed in the preceding section of the Treatise,[9] awards are far more common today than they were 15 years ago, suggesting that perhaps the proliferation of awards has simultaneously tempered their magnitude.

While the size of incentive awards vary from case to case, they may also vary within one case. As discussed in a succeeding section,[10] courts employ multifactor tests in reviewing proposed incentive awards; these factors focus the court on issues related to the class representatives' work on the case and the risks they encountered undertaking that work. Two class representatives within the same case might have undertaken different levels of work or encountered different levels of risk, hence justifying different levels of incentive awards.[11]

## § 17:9   Judicial review—Generally

As Rule 23 does not explicitly authorize incentive awards for class representatives, there is neither a rule-based process for seeking judicial approval nor a rule-based standard governing the court's decision. Yet, as the awards are made in conjunction with a class action settlement—typically from the class's funds[1] and to the class's representatives[2]—there is no doubt that a court must approve of the disbursement.

---

[9]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:7 (5th ed.).

[10]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:13 (5th ed.).

[11]Silberblatt v. Morgan Stanley, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A differential payment may be appropriate in order to make the class representative whole. The representative plaintiff may have lost wages, vacation time or commissions from sales because of time spent at depositions or other proceedings. A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded.") (citations omitted).

**[Section 17:9]**

[1]For a discussion of the source of incentive awards, *see* Rubenstein, 5

§ 17:9                                   Newberg on Class Actions

Five sets of issues arise in the judicial review process:
- When is a motion seeking approval of incentive awards brought forward?[3]
- What is the burden of proof the movant must meet to justify an incentive award?[4]
- What documentation is required?[5]
- What standards do courts apply in assessing the reasonableness of a proposed award?[6]
- What practices are disfavored?[7]

## § 17:10   Judicial review—Timing of motion

Incentive awards arise at the time of a proposed settlement of a class action. The parties typically include a provision for incentive awards in the negotiated settlement agreement. A court thus reviews the proposed award in conjunction with its preliminary review of the proposed settlement.[1] If preliminary approval is granted, notice of the proposed settlement is sent to the class and should include information about any proposed incentive award. The notice should specify the amount that class counsel intend to seek for the class representatives so that the class has that information when reviewing the settlement.[2] Class members have the opportunity to object to the proposed settlement, including the proposed incentive awards, both in writing and at the fairness hearing.[3] Class counsel will then move for final approval of the settlement and their fees, typically folding

---

Newberg on Class Actions § 17:5 (5th ed.).

[2]For a discussion of who is eligible to receive an incentive award, *see* Rubenstein, 5 **Newberg on Class Actions** § 17:6 (5th ed.).

[3]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:10 (5th ed.).

[4]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:11 (5th ed.).

[5]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:12 (5th ed.).

[6]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:13 (5th ed.).

[7]*See* Rubenstein, 5 **Newberg on Class Actions** §§ 17:14 to 17:18 (5th ed.).

[Section 17:10]

[1]For a discussion of the preliminary approval process, *see* Rubenstein, 4 **Newberg on Class Actions** §§ 13:10 to 13:19 (5th ed.).

[2]For a discussion of the content of settlement and fee notice, *see* Rubenstein, 3 **Newberg on Class Actions** §§ 8:13 to 8:25 (5th ed.).

[3]For a discussion of the objection process, *see* Rubenstein, 4 **Newberg**

530

into those motions a request for final approval of the incentive award.[4] Following the fairness hearing, the court's decision granting or rejecting final approval of the settlement and fees typically also reviews the propriety of the proposed awards.

One interesting aspect of this process not discussed in the case law concerns when the class representatives should learn that class counsel and the defendant have negotiated a provision proposing incentive awards and the amount of the proposed awards. The class representative serves a particular function at the moment of a settlement proposal: she is asked to stand in for the absent class members and serve as a representative "client" assessing whether the relief obtained for the class is sufficient. Courts have accordingly expressed concern that the promise of a significant incentive award could persuade the class representative to agree to a settlement not otherwise beneficial to the class.[5] Even though the class representative's claim, like everyone else's, would be compromised at the level of the weak settlement, the size of the incentive award likely so dwarfs the marginal loss from the poor settlement to her personally that she has more reason to embrace the settlement than to resist it. A conflict of interest therefore exists.

Courts have expressed these concerns in policing the *availability* and *size* of incentive awards,[6] but they have not focused on the possibility of addressing the concerns through *process* requirements. When it comes to attorney's fees, it is generally accepted that class counsel and the defendant should not negotiate fees until the settlement terms themselves are in place. The goal of this approach is to ensure

---

on **Class Actions** §§ 13:20 to 13:37 (5th ed.).

[4]For a discussion of the final approval process, *see* Rubenstein, 4 **Newberg on Class Actions** §§ 13:39 to 13:61 (5th ed.).

[5]Lane v. Page, 862 F. Supp. 2d 1182, 1238, Fed. Sec. L. Rep. (CCH) P 96834 (D.N.M. 2012) ("Courts 'have denied preferential allocation on the grounds that the named plaintiff may be tempted to settle an action to the detriment of the class or come to expect a 'bounty' for bringing suit.'" (quoting **Newberg on Class Actions**)).

The Treatise's coverage of the rationale supporting incentive awards examines these concerns in more detail. *See* Rubenstein, 5 **Newberg on Class Actions** § 17:3 (5th ed.).

[6]For a discussion of excessive incentive awards, *see* Rubenstein, 5 **Newberg on Class Actions** § 17:18 (5th ed.).

that a huge fee offer will not tempt class counsel to settle the class claims on the cheap. With fee discussions forestalled until a later time, they pose less of a threat to the purity of the settlement process. By analogy, the courts could insist that incentive awards not be discussed with (or dangled over) the class representatives until after class counsel has solicited their reactions to the proposed class settlement.[7]

## § 17:11   Judicial review—Burden of proof

The party seeking approval of an incentive award bears the burden of proving that the proposed recipients, typically the class representatives, deserve an award and that the proposed level of the award is reasonable. At least three circuits have held that judicial review of incentive awards is searching:

- The Sixth Circuit has held that "applications for incentive awards are *scrutinized carefully* by courts who sensibly fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain."[1] A number of courts have employed this "scrutinized carefully" language when reviewing proposed incentive awards.[2]
- The Ninth Circuit has held that "district courts must be

---

[7]*See, e.g.*, Lee v. Enterprise Leasing Co.-West, 2015 WL 2345540, *11 (D. Nev. 2015) ("The Court finds that the requested incentive awards are reasonable and appropriate. Importantly, the incentive awards were negotiated after the parties agreed to a settlement to benefit the entire class, so they will not impact the recovery available to other class members.").

**[Section 17:11]**

[1]Hadix v. Johnson, 322 F.3d 895, 897, 55 Fed. R. Serv. 3d 116, 2003 FED App. 0072P (6th Cir. 2003) (emphasis added) (citing **Newberg on Class Actions**).

[2]Arnett v. Bank of America, N.A., 2014 WL 4672458, *11 (D. Or. 2014) ("Although incentive awards are fairly typical in class action cases, they should be scrutinized carefully to ensure that they do not undermine the adequacy of the class representatives." (citation omitted) (internal quotation marks omitted))).

Gascho v. Global Fitness Holdings, LLC, 2014 WL 1350509, *26 (S.D. Ohio 2014), report and recommendation adopted, 2014 WL 3543819 (S.D. Ohio 2014) (" '[A]pplications for incentive awards are scrutinized carefully by courts who sensibly fear that incentive awards may lead

*vigilant* in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives."[3] District courts in the Ninth Circuit have often reiterated this standard in reviewing incentive awards.[4]

---

named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain.'") (quoting Hadix v. Johnson, 322 F.3d 895, 897, 55 Fed. R. Serv. 3d 116, 2003 FED App. 0072P (6th Cir. 2003)).

Dickerson v. Cable Communications, Inc., 2013 WL 6178460, *4 (D. Or. 2013) ("Although incentive awards are fairly typical in class action cases, they should be scrutinized carefully to ensure that they do not undermine the adequacy of the class representatives." (citation omitted) (internal quotation marks omitted)).

Lane v. Page, 862 F. Supp. 2d 1182, 1237, Fed. Sec. L. Rep. (CCH) P 96834 (D.N.M. 2012) (" '[A]pplications for incentive awards are scrutinized carefully by courts who sensibly fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain.' " (quoting Hadix v. Johnson, 322 F.3d 895, 897, 55 Fed. R. Serv. 3d 116, 2003 FED App. 0072P (6th Cir. 2003))).

Robles v. Brake Masters Systems, Inc., 2011 WL 9717448, *6 (D.N.M. 2011) (same).

Silberblatt v. Morgan Stanley, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("Payments to class representatives, while not foreclosed, should be closely scrutinized.").

Varacallo v. Massachusetts Mut. Life Ins. Co., 226 F.R.D. 207, 257 (D.N.J. 2005) (holding that because incentive awards would be paid from the common fund and thereby deplete class members' recoveries, "this Court carefully reviews this request to ensure its fairness to the Class").

[3]Radcliffe v. Experian Information Solutions Inc., 715 F.3d 1157, 1164 (9th Cir. 2013) (emphasis added).

[4]Chavez v. Lumber Liquidators, Inc., 2015 WL 2174168, *4 (N.D. Cal. 2015) ("The Ninth Circuit requires district courts to be 'vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives.' " (quoting Radcliffe v. Experian Information Solutions Inc., 715 F.3d 1157, 1164 (9th Cir. 2013))).

Bellinghausen v. Tractor Supply Company, 306 F.R.D. 245, 266 (N.D. Cal. 2015) ("The Ninth Circuit has emphasized that 'district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives.' " (quoting Radcliffe v. Experian Information Solutions Inc., 715 F.3d 1157, 1164 (9th Cir. 2013))).

Miller v. Ghirardelli Chocolate Company, 2015 WL 758094, *7 (N.D. Cal. 2015) (same).

Boring v. Bed Bath & Beyond of California Limited Liability Company, 2014 WL 2967474, *3 (N.D. Cal. 2014) ("[D]istrict courts must

§ **17:11**                                                NEWBERG ON CLASS ACTIONS

- The Eleventh Circuit, in a case unrelated to incentive awards, stated that "[w]hen a settlement explicitly provides for preferential treatment for the named plaintiffs in a class action, a *substantial burden* falls upon the proponents of the settlement to demonstrate and document its fairness"[5] and that "*careful scrutiny* by the court is necessary to guard against settlements that may benefit the class representatives or their attorneys at the expense of absent class members."[6]

---

be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." (quoting Radcliffe v. Experian Information Solutions Inc., 715 F.3d 1157, 1164 (9th Cir. 2013) )).

    Custom LED, LLC v. eBay, Inc, 2014 WL 2916871, *9 (N.D. Cal. 2014) (same).

    Cordy v. USS-POSCO Industries, 2014 WL 1724311, *2 (N.D. Cal. 2014) (same).

    Wallace v. Countrywide Home Loans, Inc., 22 Wage & Hour Cas. 2d (BNA) 849, 2014 WL 5819870, *4 (C.D. Cal. 2014) (same).

    Khanna v. Intercon Sec. Systems, Inc., 2014 WL 1379861, *10 (E.D. Cal. 2014), order corrected, 2015 WL 925707 (E.D. Cal. 2015) (same).

    Steinfeld v. Discover Financial Services, 2014 WL 1309692, *2 (N.D. Cal. 2014) (same).

    Ritchie v. Van Ru Credit Corp., 2014 WL 956131, *4 (D. Ariz. 2014), subsequent determination, 2014 WL 3955268 (D. Ariz. 2014) (same).

    Keirsey v. eBay, Inc, 2014 WL 644738, *1 (N.D. Cal. 2014) (same).

    Walsh v. Kindred Healthcare, 2013 WL 6623224, *3 (N.D. Cal. 2013) (same).

    Davis v. Cole Haan, Inc., 2013 WL 5718452, *3 (N.D. Cal. 2013) (same).

    Wolph v. Acer America Corporation, 2013 WL 5718440, *6 (N.D. Cal. 2013) (same).

    Johnson v. General Mills, Inc., 2013 WL 3213832, *7 (C.D. Cal. 2013) ("The Ninth Circuit has recently cautioned that 'district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives.'" (quoting Radcliffe v. Experian Information Solutions Inc., 715 F.3d 1157, 1164 (9th Cir. 2013) )).

[5]Holmes v. Continental Can Co., 706 F.2d 1144, 1147, 31 Fair Empl. Prac. Cas. (BNA) 1707, 32 Empl. Prac. Dec. (CCH) P 33668, 36 Fed. R. Serv. 2d 817 (11th Cir. 1983) (emphasis added).

    Cohen v. Resolution Trust Corp., 61 F.3d 725, 728 (9th Cir. 1995), opinion vacated, appeal dismissed, 72 F.3d 686 (9th Cir. 1996) (same).

[6]Holmes v. Continental Can Co., 706 F.2d 1144, 1147, 31 Fair Empl. Prac. Cas. (BNA) 1707, 32 Empl. Prac. Dec. (CCH) P 33668, 36 Fed. R. Serv. 2d 817 (11th Cir. 1983) (emphasis added) (internal quotation marks

Courts have also cited this standard when reviewing proposed incentive awards.[7]

This heightened judicial scrutiny toward incentive awards[8] is appropriately consistent with the manner in which courts review class counsel's fee petition, as the court acts in a fiduciary capacity for absent class members during the settlement and fee review process.[9]

A few courts have implied that less scrutiny is required if the proposed incentive award is being paid out of the attorney's fees rather than the common fund.[10] However, as

---

omitted).

[7]Johnson v. General Mills, Inc., 2013 WL 3213832, *7 (C.D. Cal. 2013) (reviewing a proposed incentive award and stating that "'when a settlement explicitly provides for preferential treatment for the named plaintiffs in a class action, a substantial burden falls upon the proponents of the settlement to demonstrate and document its fairness.'" (quoting Holmes v. Continental Can Co., 706 F.2d 1144, 1147, 31 Fair Empl. Prac. Cas. (BNA) 1707, 32 Empl. Prac. Dec. (CCH) P 33668, 36 Fed. R. Serv. 2d 817 (11th Cir. 1983))).

Estep v. Blackwell, 2006 WL 3469569, *6 (S.D. Ohio 2006) (same).

Carnegie v. Mutual Sav. Life Ins. Co., 2004 WL 3715446, *23 (N.D. Ala. 2004) (reviewing a proposed incentive award and stating that "[t]he Eleventh Circuit holds that 'a disparate distribution favoring the named plaintiffs requires careful judicial scrutiny into whether the settlement allocation is fair to the absent members of the class,' and that 'a substantial burden falls upon the proponents of the settlement to demonstrate and document its fairness'" (quoting Holmes v. Continental Can Co., 706 F.2d 1144, 1147, 1148, 31 Fair Empl. Prac. Cas. (BNA) 1707, 32 Empl. Prac. Dec. (CCH) P 33668, 36 Fed. R. Serv. 2d 817 (11th Cir. 1983))).

[8]In re Herald, Primeo, and Thema Securities Litigation, 2011 WL 4351492, *9 (S.D.N.Y. 2011) ("While incentive awards are not prohibited, they are appropriately subject to heightened judicial scrutiny at the preliminary approval stage.").

[9]See Rubenstein, 4 **Newberg on Class Actions** § 13:40 (5th ed.).

[10]In re Cendant Corp., Derivative Action Litigation, 232 F. Supp. 2d 327, 344 (D.N.J. 2002) ("An incentive payment to come from the attorneys' fees awarded to plaintiff's counsel need not be subject to intensive scrutiny, as the interests of the corporation, the public, and the defendants are not directly affected.").

In re Presidential Life Securities, 857 F. Supp. 331, 337 (S.D.N.Y. 1994) ("The matter of payments of incentives to the individual plaintiffs who acted as class representatives need not be subjected to intense scrutiny inasmuch as these funds will come out of the attorney's fees awarded to plaintiffs' counsel. The interests of the class, of the public, and of the defendant are not directly affected.").

discussed elsewhere in the Treatise,[11] the practice of paying incentive awards from the attorney's fees is both rare and problematic.

The succeeding sections survey the documentation courts require,[12] the standards they impose,[13] and the practices they disfavor[14]—all of which imply meaningful judicial review. In fact, there are still many settlements in which courts simply rubber stamp approval papers submitted by the parties without sufficient attention to these payments. The fact that the payments are coming from the common fund and consequently reducing the class members' recoveries accordingly triggers the court's fiduciary duties. However, the magnitude of the incentive awards so pales in comparison to the magnitude of attorney's fees that courts likely pay less attention to them than they otherwise might precisely for that reason.

## § 17:12   Judicial review—Documentation requirement

The party seeking approval of an incentive award bears the burden of proving that the proposed recipients, typically the class representatives, deserve an award and that the proposed level of the award is reasonable. As discussed elsewhere in the Treatise,[1] incentive awards are premised on the rationale that their recipients have either provided valuable service to the class and/or faced substantial risks in stepping forward to represent the class.[2] Whether the class representatives in a particular case hit this mark is a ques-

---

[11]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:5 (5th ed.).

[12]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:12 (5th ed.).

[13]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:13 (5th ed.).

[14]*See* Rubenstein, 5 **Newberg on Class Actions** §§ 17:14 to 17:18 (5th ed.).

[Section 17:12]

[1]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:3 (5th ed.).

[2]Courts have articulated two other rationales for incentive awards: to incentivize class members to step forward to represent the class, and to recognize their service as private attorneys general. *See* Rubenstein, 5 **Newberg on Class Actions** § 17:3 (5th ed.). The latter of these rationales raises few questions of fact, as the goal is achieved, to a great extent, by the provision of the service itself. At least one court, for example, approved a (reduced) incentive award in recognition of this service, even where the class representatives did very little work for the class. Michel v.

tion of fact. Accordingly, most courts require factual support
for any proposed incentive award.[3] Typically, facts relevant

---

WM Healthcare Solutions, Inc., 2014 WL 497031, *11 (S.D. Ohio 2014)
(rejecting a $10,000 incentive award because "the named Plaintiffs'
involvement in this case was minimal and their expense in pursuing it
negligible, if any" but holding that a $3,000 incentive award was appropri-
ate because "fair class action settlement . . . would not [have been] pos-
sible were it not for the willingness of the Class Representatives to partic-
ipate in this suit" and therefore "for class actions to be effectively litigated,
at least one plaintiff must be [encouraged] to take on the role of class
representative"). The former rationale—to incentivize class members to
step forward in the first place—is sometimes framed as a factual question.
*See, e.g.*, Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998) ("Because a
named plaintiff is an essential ingredient of any class action, an incentive
award is appropriate *if it is necessary* to *induce* an individual to partici-
pate in the suit.") (emphasis added). Nonetheless, courts only occasionally
scrutinize whether the incentive award truly induced the class represent-
ative's service. *See, e.g.*, Fouks v. Red Wing Hotel Corp., 2013 WL 6169209,
*2 (D. Minn. 2013) ("Plaintiffs quote, but fail to satisfy, the prerequisite
expressed in these cases that 'an incentive award is appropriate if it is
necessary to induce an individual to participate in the suit.' . . . Here,
Plaintiffs have put forth no evidence or argument that persuades the
Court that they required any enticement beyond their potential statutory
recovery to bring this case, or that their actions in prosecuting it are
deserving of a reward." (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th
Cir. 1998))); Kinder v. Dearborn Federal Sav. Bank, 2013 WL 879301, *3
(E.D. Mich. 2013) ("Kinder has not provided evidence of [any] factors the
court should consider with respect to an incentive award. Moreover, in
light of Kinder's pursuit of several of these types of cases, the court finds
that no additional incentive is necessary beyond the $100 in statutory
damages already awarded.").

[3]Bellinghausen v. Tractor Supply Company, 306 F.R.D. 245, 266
(N.D. Cal. 2015) ("A class representative must justify an incentive award
through 'evidence demonstrating the quality of plaintiff's representative
service,' such as 'substantial efforts taken as class representative to justify
the discrepancy between [his] award and those of the unnamed plaintiffs.'"
(quoting Alberto v. GMRI, Inc., 252 F.R.D. 652, 669 (E.D. Cal. 2008))).

    In re Payment Card Interchange Fee and Merchant Discount
Antitrust Litigation, 991 F. Supp. 2d 437, 448–49, 2014-1 Trade Cas.
(CCH) ¶ 78644 (E.D.N.Y. 2014) (finding that the declarations of corporate
officers were not enough to justify incentive awards and noting that "Class
Counsel are expected to provide, at a minimum, documentation setting
forth the approximate value of each Class Plaintiff's claim and each one's
proposed incentive award").

    In re Heartland Payment Systems, Inc. Customer Data Sec. Breach
Litigation, 851 F. Supp. 2d 1040, 1090 (S.D. Tex. 2012) ("For the court to
approve the incentive awards—even if they are nominal, and even if the
defendant does not object—there must be some evidence in the record

to the incentive award determination are demonstrated in affidavits submitted by class counsel and/or the class representatives, through which these persons testify to the particular services performed, the risks encountered, and any other facts pertinent to the award. Courts may also receive this evidence by live testimony at the fairness hearing.[4] While courts have frequently noted the supporting documentation in approving incentive awards,[5] they regularly reject awards where the relevant facts are not suf-

---

demonstrating that the representative plaintiffs were involved. Absent such evidence, the court lacks an adequate basis to approve the incentive awards.").

*But see* In re Southeastern Milk Antitrust Litigation, 2013 WL 2155387, *8 n.9 (E.D. Tenn. 2013) (granting incentive awards even though "[n]o affidavits or other documentation have been submitted in support of the incentive award request" because "[c]lass representatives . . . have clearly been extensively involved in the litigation, settlement discussions and court proceedings and have committed substantial time to the case as confirmed by the Court's own observations").

[4]For a discussion of the fairness hearing process, *see* Rubenstein, 4 **Newberg on Class Actions** § 13:42 (5th ed.).

[5]**First Circuit (District Court)**

In re Prudential Insurance Company of America SGLI/VGLI Contract Litigation, 2014 WL 6968424, *7 (D. Mass. 2014) (granting incentive awards "[b]ased on the declarations of Class Counsel and the Representative Plaintiffs submitted in support of final settlement approval, [showing that] the Representative Plaintiffs have actively participated and assisted Class Counsel in this litigation for the substantial benefit of the Settlement Class despite facing significant personal limitations and sacrifices, including being deposed on deeply personal matters relating to the loss of a loved one").

**Third Circuit (District Court)**

In re General Instrument Securities Litigation, 209 F. Supp. 2d 423, 435, Fed. Sec. L. Rep. (CCH) P 91667 (E.D. Pa. 2001) ("I therefore conclude that upon submission of affidavits attesting to the fact that time and effort were spent by the designated class representatives pursuing this litigation and providing a general description of same, this Court will approve incentive awards.").

Seidman v. American Mobile Systems, 965 F. Supp. 612, 626 (E.D. Pa. 1997) (rejecting an incentive award for one proposed representative due to lack of documentation but approving an award for another because he "has furnished the Court with an adequate accounting that the time he spent working on matters related to this litigation is approximately thirty-two hours" and "[b]ased on the time records and the representations made by counsel as to the activities undertaken by [the representative] on behalf of the class, the Court shall award him a class representative fee totaling

---

$1280 . . . from the D & T settlement fund as compensation for the actual time which he spent on this litigation").

**Sixth Circuit (District Court)**

*Cf.* In re Southeastern Milk Antitrust Litigation, 2013 WL 2155387, *8 n.9 (E.D. Tenn. 2013) (granting incentive awards even though "[n]o affidavits or other documentation have been submitted in support of the incentive award request" because the "[c]lass representatives . . . have clearly been extensively involved in the litigation, settlement discussions and court proceedings and have committed substantial time to the case as confirmed by the Court's own observations").

**Seventh Circuit (District Court)**

In re Southwest Airlines Voucher Litigation, 2013 WL 4510197, *11 (N.D. Ill. 2013), appeal dismissed, (7th Circ. 13-3542)(Jan. 3, 2014) (granting incentive awards based on the record and "class counsel report" showing that the plaintiffs had been active participants throughout the litigation).

**Eighth Circuit (District Court)**

Albright v. Bi-State Development Agency of Missouri-Illinois Metropolitan Dist., 2013 WL 4855304, *1 (E.D. Mo. 2013) ("Plaintiffs have also presented evidence regarding the contributions made by the named class representatives to the action, and the time commitment involved. The Court does not believe that such incentive payments should be granted simply as a matter of course. In light of the evidence presented in this case, however, the Court shall also approve an incentive award of $2,500.00 to each of the class representatives, based on their contributions to the case.").

**Ninth Circuit (District Court)**

R.H. v. Premera Blue Cross, 2014 WL 3867617, *3 n.3 (W.D. Wash. 2014) (granting preliminary approval for a settlement that included incentive awards and stating "[t]he court will accept counsel's declaration representing the time and effort undertaken by class representatives on preliminary approval. However, the court expects that the class representatives will provide declarations to the court detailing the time and effort they dedicated in support of the motion for incentive awards" (citation omitted)).

**District of Columbia Circuit (District Court)**

In re Lorazepam & Clorazepate Antitrust Litigation, 2003-2 Trade Cas. (CCH) ¶ 74134, 2003 WL 22037741, *10–11 (D.D.C. 2003) ("This Court has previously determined that incentive awards to named plaintiffs are not uncommon in class action litigation, particularly where a common fund has been created for the benefit of the entire class . . . Through their affidavits and the Petition for Incentives, Counsel has sufficiently explained that the named Plaintiffs 'ultimately played a role in achieving the $35,000,000 settlement.' . . . For the foregoing reasons, the Court will approve [incentive awards] in the amount of $20,000 to each of the four named Plaintiffs." (citation omitted)).

§ 17:12                                    NEWBERG ON CLASS ACTIONS

ficiently documented.[6] Courts may also provide preliminary

---

[6]**Second Circuit (District Court)**

In re Nassau County Strip Search Cases, 12 F. Supp. 3d 485, 503 (E.D.N.Y. 2014) (denying incentive awards because, *inter alia*, of "the absence of any information from movants concerning the concomitant costs or consequences, if any, to those class members who were deposed or testified at trial, thereby precluding an appropriate evaluation of their services").

In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation, 991 F. Supp. 2d 437, 448–49, 2014-1 Trade Cas. (CCH) ¶ 78644 (E.D.N.Y. 2014) (finding that the declarations of corporate officers were not enough to justify incentive awards and noting that "Class Counsel are expected to provide, at a minimum, documentation setting forth the approximate value of each Class Plaintiff's claim and each one's proposed incentive award").

**Third Circuit (District Court)**

In re General Instrument Securities Litigation, 209 F. Supp. 2d 423, 434–35, Fed. Sec. L. Rep. (CCH) P 91667 (E.D. Pa. 2001) ("I conclude that it is fair and appropriate to compensate these class representatives for time spent on matters connected with this litigation. The record, however, lacks any evidentiary support for the fact that these four representatives expended time and effort which would justify the incentive awards. Counsel for plaintiffs represented to this Court at the fairness hearing that these four individuals are worthy of such an award. No affidavits in support, however, have been submitted. I therefore conclude that upon submission of affidavits attesting to the fact that time and effort were spent by the designated class representatives pursuing this litigation and providing a general description of same, this Court will approve incentive awards. The attached Order will provide deadlines by which such submissions shall result.").

Seidman v. American Mobile Systems, 965 F. Supp. 612, 626 (E.D. Pa. 1997) (noting that the court "will compensate the class representatives for the time they spent on matters connected to the litigation" but denying an incentive award to one representative because she "has not provided the Court with any documentation as to the time which she spent on matters related to this litigation").

**Fourth Circuit (District Court)**

Jones v. Dominion Resources Services, Inc., 601 F. Supp. 2d 756, 768 (S.D. W. Va. 2009) (reducing proposed incentive awards because "the court has received no evidence of the class representatives' participation in this case" and the record "does not indicate that the class representatives were deposed or produced any personal documents").

**Fifth Circuit (District Court)**

Humphrey v. United Way of Texas Gulf Coast, 802 F. Supp. 2d 847, 869, 52 Employee Benefits Cas. (BNA) 1427 (S.D. Tex. 2011) (denying incentive award because, *inter alia*, "[w]hile Plaintiff has requested an incentive award of $10,000, significantly she has not provided any details

nor documentary support demonstrating the nature of her contribution, the hours she put in, the time consulting with counsel, time spent in discovery proceedings, or what information she provided to counsel").

**Sixth Circuit (District Court)**

Bessey v. Packerland Plainwell, Inc., 2007 WL 3173972, *5 (W.D. Mich. 2007) ("[U]p to this point the plaintiffs have not pointed to any specific factual or legal reasons why each class representative should receive $250 above and beyond what he or she will receive in damages under the settlement . . . [T]he record does not at this point justify the proposed extra payments.").

**Seventh Circuit**

Montgomery v. Aetna Plywood, Inc., 231 F.3d 399, 410 (7th Cir. 2000) (affirming the district court's denial of an incentive award where counsel failed to make any serious argument in favor of such an award and where it did not appear that the lead plaintiff "had to devote an inordinate amount of time to the case or that . . . he suffered or risked any retaliation [from the defendant]").

**Eighth Circuit (District Court)**

Fouks v. Red Wing Hotel Corp., 2013 WL 6169209, *3 (D. Minn. 2013) (reducing proposed incentive awards to class representatives because there was "simply no evidence before the Court that the Plaintiffs faced any risks or burdens in undertaking this litigation, or that there exist any other factors that would justify the amount they seek, whether styled as an incentive award or reimbursement").

**Ninth Circuit (District Court)**

Davis v. Cole Haan, Inc., 2013 WL 5718452, *3 (N.D. Cal. 2013) ("Here, without any declaration from the named representatives, or any substantive description of the time devoted and work expended on this case by the named representatives, the Court finds the request for incentive payments to be woefully inadequate. Moreover, although Plaintiffs argue that they risked being held liable for Cole Haan's costs in the event of a defense judgment, there is no declaration attesting that the named representatives would have been held personally responsible, as opposed to counsel, for the costs. Therefore, the Court denies the motion for incentive payments. Again, this Order is without prejudice to a renewed motion upon a proper showing.").

**Tenth Circuit (District Court)**

Robles v. Brake Masters Systems, Inc., 2011 WL 9717448, *11–13 (D.N.M. 2011) (denying an incentive award because, *inter alia*, the plaintiff "offer[ed] no argument or evidence . . . that other class representative were not forthcoming, and that an incentive award is justified for bringing a representative forward").

**Eleventh Circuit (District Court)**

Grassick v. Avatar Properties, Inc., 2008 WL 5099942, *3 (M.D. Fla. 2008) ("The parties also have failed to establish that the proposed $10,000.00 incentive payment to [the plaintiff] is appropriate. While some

approval to a settlement that includes proposed incentive awards absent documentation, but direct counsel to submit the documentation before the final approval stage.[7]

## § 17:13 Judicial review—Standards of assessment

The party seeking approval of an incentive award bears the burden of proving that the proposed recipients, typically the class representatives, deserve an award and that the proposed level of the award is reasonable. In the absence of any reference to incentive awards in Rule 23, courts have fashioned different tests for their review of proposed incentive awards. The Seventh Circuit articulated a three-part

---

courts have approved payments to class representatives to compensate them for costs they incurred during the litigation, there is no showing that [the plaintiff] has incurred any costs.").

[7]Torchia v. W.W. Grainger, Inc., 2014 WL 3966292, *11 n.3 (E.D. Cal. 2014) (preliminarily approving an incentive award but requiring the plaintiff to "provide evidence to support her request for the incentive award" prior to the fairness hearing, including "the number of hours expended, broken down by task").

Chesbro v. Best Buy Stores, L.P., 2014 WL 793362, *4 n.5 (W.D. Wash. 2014) (preliminarily approving an incentive award despite not having "any evidence of the amount of hours [the plaintiff] . . . devoted to the case," but noting that "[t]he court expects that counsel will provide evidence of the amount of time [the plaintiff] invested in this case prior to any fairness hearing").

Michel v. WM Healthcare Solutions, Inc., 2014 WL 497031, *3 (S.D. Ohio 2014) (explaining that the court had, at the preliminary approval stage, "reminded counsel that incentive awards were subject to court approval and that the named Plaintiffs would be expected to provide specific evidence demonstrating their involvement in the case in order to justify the incentive award").

Alberto v. GMRI, Inc., 252 F.R.D. 652, 669 (E.D. Cal. 2008) (requiring that "[o]n or before the date of the fairness hearing, the parties should present or be prepared to present evidence of the named plaintiff's substantial efforts taken as class representative to justify the discrepancy between her award and those of the unnamed plaintiffs" (footnote omitted)).

In re HP Power Plug and Graphic Card Litigation, 2008 WL 2697192, *1, 3 (N.D. Cal. 2008), as corrected, (July 8, 2008) (granting incentive awards only after "plaintiffs' counsel submitted a declaration in support of incentive awards . . . assert[ing] that plaintiffs spoke to counsel in advance of filing their complaint, actively participated in reviewing the pleadings and were kept informed regarding the status of the case" after initially failing to approve the awards due to lack of supporting documentation for the request).

test in a 1998 decision,[1] and the two other circuits that have directly addressed the question—the Eighth[2] and the Ninth[3]—have each cited that test affirmatively. That said, district courts in the Ninth Circuit tend to employ a five-factor test originally set forth in a 1995 decision of the Northern District of California,[4] while courts in New York tend to employ a six-factor test.[5] As no one test has emerged

---

**[Section 17:13]**

[1]Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998) ("In deciding whether such an [incentive] award is warranted, relevant factors include [1] the actions the plaintiff has taken to protect the interests of the class, [2] the degree to which the class has benefitted from those actions, and [3] the amount of time and effort the plaintiff expended in pursuing the litigation.").

[2]In re U.S. Bancorp Litigation, 291 F.3d 1035, 1038 (8th Cir. 2002) (approving $2,000 awards to five representative plaintiffs and citing to the Seventh Circuit's three-factor test from *Cook* in determining these awards to be "appropriate").

[3]Staton v. Boeing Co., 327 F.3d 938, 977, 55 Fed. R. Serv. 3d 1299 (9th Cir. 2003) ("[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments. The district court must evaluate their awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.' " (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998))).

[4]Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995) (noting the five factors as: "1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation").

[5]In re AOL Time Warner ERISA Litigation, 2007 WL 3145111, *2 (S.D.N.Y. 2007) (noting the six factors as: 1) the personal risk (if any) incurred by the named plaintiff in becoming and continuing as a litigant; 2) the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise); 3) any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim; 4) the ultimate recovery; 5) the sums awarded in similar cases; and 6) the named plaintiff's requested sum in comparison to each class member's estimated *pro rata* share of the monetary judgment or settlement).

§ **17:13**                                    NEWBERG ON CLASS ACTIONS

as particularly salient,[6] the different tests that courts have employed can be broken down by circuit, as in the accompanying footnote.[7]

---

[6]Roberts v. Texaco, Inc., 979 F. Supp. 185, 201–02, 86 Fair Empl. Prac. Cas. (BNA) 1678 (S.D.N.Y. 1997) ("No meaningful guidelines of broad applicability are discernible from the reported decisions as to the appropriate measure for an [incentive] award, the focus being on special circumstances.").

[7]**Second Circuit (District Court)**
    Sanchez v. JMP Ventures, L.L.C., 2015 WL 539506, *5 (S.D.N.Y. 2015) ("Here, [the named plaintiff] requests a service award of $10,000, to be paid from the settlement fund. [The named plaintiff] discussed the case with class counsel and was deposed, but he did not attend mediation or the fairness hearing. We have no doubt that his assistance to class counsel was useful, and for this and his willingness to accept what risks are attendant with being a named plaintiff, we believe he should receive some service award. However, under the facts presented, and in light of the total amount of the settlement fund and the large number of class members to receive payments from that fund, we reduce the amount of the service award to Sanchez to $5,000." (citation omitted)).
    In re AOL Time Warner ERISA Litigation, 2007 WL 3145111, *2 (S.D.N.Y. 2007) (noting six relevant factors in adjudicating named plaintiffs' requests for incentive awards: 1) the personal risk (if any) incurred by the named plaintiff in becoming and continuing as a litigant; 2) the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise); 3) any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim; 4) the ultimate recovery; 5) the sums awarded in similar cases; and 6) the named plaintiff's requested sum in comparison to each class member's estimated *pro rata* share of the monetary judgment or settlement).

**Third Circuit (District Court)**
    Fry v. Hayt, Hayt & Landau, 198 F.R.D. 461, 473 (E.D. Pa. 2000) ("[T]o be entitled to an incentive award, plaintiff must show: (1) the risks that the named plaintiff undertook in commencing class action; (2) any additional burdens assumed by named plaintiffs but not unnamed class members; and (3) the benefits generated to class members through named plaintiff's efforts.").

**Fourth Circuit (District Court)**
    Kirven v. Central States Health & Life Co. of Omaha, 2015 WL 1314086, *13 (D.S.C. 2015) ("To determine whether an incentive payment is warranted, the court should consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.").
    Smith v. Toyota Motor Credit Corp., 2014 WL 4953751. *1 (D. Md. 2014) ("To determine whether an incentive payment is warranted, the

The widely employed Seventh Circuit test considers three

court should consider 'the actions the plaintiff[s] [have] taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff[s] expended in pursuing the litigation.'" (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998))).

Decohen v. Abbasi, LLC, 299 F.R.D. 469, 483 (D. Md. 2014) ("To determine whether an incentive payment is warranted, the court should consider 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998))).

**Fifth Circuit (District Court)**

Slipchenko v. Brunel Energy, Inc., 2015 WL 338358, *13 (S.D. Tex. 2015) ("In deciding whether an incentive award is warranted, courts look to: (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the plaintiff expended in pursuing the litigation." (internal quotation marks omitted)).

In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litigation, 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012) (same).

**Sixth Circuit (District Court)**

Kinder v. Dearborn Federal Sav. Bank, 2013 WL 879301, *3 (E.D. Mich. 2013) ("In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." (internal quotation marks omitted)).

In re UnumProvident Corp. Derivative Litigation, 2010 WL 289179, *9 (E.D. Tenn. 2010) ("District courts in the Sixth Circuit have considered the following factors in determining the propriety of incentive awards in class action cases: (1) the action taken by the Class Representatives to protect the interest of Class Members and others and whether these actions resulted in a substantial benefit to Class Members; (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and (3) the amount of time and effort spent by the Class Representatives pursuing the litigation." (citing Enterprise Energy Corp. v. Columbia Gas Transmission Corp., 137 F.R.D. 240, 250 (S.D. Ohio 1991))).

In re Southern Ohio Correctional Facility, 175 F.R.D. 270, 275–76 (S.D. Ohio 1997), order rev'd on other grounds, 24 Fed. Appx. 520 (6th Cir. 2001) ("Courts look to a number of factors in deciding whether to grant named plaintiffs incentive awards. Courts in this circuit assess the following factors: (1) whether the actions of the named plaintiffs protected the interests of the class members and have inured to the substantial benefit of the class members; (2) whether the named plaintiffs have assumed substantial indirect or direct financial risk; and (3) the amount of time and effort expended by the named plaintiffs in pursuing the class action

litigation. Additional criteria courts may consider in determining whether to approve an incentive award include: (1) the risk to the class representative in commencing the suit; (2) the notoriety and personal difficulties encountered by the class representative; (3) the duration of the litigation; (4) the extent of class representative's personal involvement in discovery; (5) the class representative's personal benefit (or lack thereof) purely in his capacity as a member of the class; and (6) the social benefit derived from the suit." (citations omitted)).

**Seventh Circuit**

Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998) ("In deciding whether such an [incentive] award is warranted, relevant factors include [1] the actions the plaintiff has taken to protect the interests of the class, [2] the degree to which the class has benefitted from those actions, and [3] the amount of time and effort the plaintiff expended in pursuing the litigation.").

Spicer v. Chicago Bd. Options Exchange, Inc., 844 F. Supp. 1226, 1266 (N.D. Ill. 1993) ("In considering this petition [for incentive awards], we have reviewed the following factors: (1) the actions taken by the class representatives to protect the interests of class members and others; (2) whether those actions resulted in substantial benefit to the class members; and (3) the amount of time and effort spent by the class representatives in pursuing the litigation.").

**Eighth Circuit**

In re U.S. Bancorp Litigation, 291 F.3d 1035, 1038 (8th Cir. 2002) (approving $2,000 awards to five representative plaintiffs and citing to the Seventh Circuit's three-factor test from *Cook* in determining these awards to be "appropriate").

**Ninth Circuit**

Staton v. Boeing Co., 327 F.3d 938, 977, 55 Fed. R. Serv. 3d 1299 (9th Cir. 2003) ("[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments. The district court must evaluate their awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.' " (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998))).

Wren v. RGIS Inventory Specialists, 2011 WL 1230826, *32 (N.D. Cal. 2011), order supplemented, 2011 WL 1838562 (N.D. Cal. 2011) ("When considering a request for an incentive payment, the court must evaluate each request individually, taking into account the following factors: (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; (3) the duration of the litigation and the amount of time and effort the plaintiff expended in pursing it; and (4) the risks to the plaintiff in commencing the litigation, including reasonable fears of workplace retali-

factors:

1) the actions the plaintiff has taken to protect the interests of the class;

2) the degree to which the class has benefitted from those actions; and

3) the amount of time and effort the plaintiff expended in pursuing the litigation.[8]

The five-factor test widely used in California directs courts to consider:

1) the risk to the class representative in commencing suit, both financial and otherwise;

2) the notoriety and personal difficulties encountered by the class representative;

3) the amount of time and effort spent by the class representative;

4) the duration of the litigation; and

---

ation, personal difficulties, and financial risks. Additionally, to ensure that an incentive payment is not excessive, the court must balance the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." (citations omitted) (internal quotation marks omitted)).

**Tenth Circuit (District Court)**

O'Brien v. Airport Concessions, Inc., 2015 WL 232191, *6 (D. Colo. 2015) ("In deciding whether such an award is warranted, 'relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998) )).

Shaw v. Interthinx, Inc., 2015 WL 1867861, *8 (D. Colo. 2015) ("[I]ncentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class. The factors to consider in determining an incentive award include: (1) the actions that the class representative took to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation." (citation omitted) (internal quotation marks omitted)).

**District of Columbia Circuit (District Court)**

Kifafi v. Hilton Hotels Retirement Plan, 999 F. Supp. 2d 88, 105, 57 Employee Benefits Cas. (BNA) 1941 (D.D.C. 2013) (same).

In re Lorazepam & Clorazepate Antitrust Litigation, 2003-2 Trade Cas. (CCH) ¶ 74134, 2003 WL 22037741, *10 (D.D.C. 2003) (same).

[8]Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998).

5)   the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.[9]

The six-factor test widely used in New York directs courts to consider:

1)   the personal risk (if any) incurred by the named plaintiff in becoming and continuing as a litigant;

2)   the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise);

3)   any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and of course;

4)   the ultimate recovery;

5)   the sums awarded in similar cases; and

6)   the named plaintiff's requested sum in comparison to each class member's estimated *pro rata* share of the monetary judgment or settlement.[10]

What the tests have in common is that they tend to track the rationales for incentive awards, discussed in a prior section,[11] which primarily focus on compensating class representatives for their service to the class and for the risks they took in stepping forward to represent the class. Some of the factors also attempt to guard against disfavored practices such as awards that are larger than normal and/or extravagant compared to each class member's recovery. These disfavored practices are the subject of the succeeding sections.[12]

---

[9]Wren v. RGIS Inventory Specialists, 2011 WL 1230826, *32 n.11 (N.D. Cal. 2011), order supplemented, 2011 WL 1838562 (N.D. Cal. 2011) ("In assessing the reasonableness of an inventive award, several district courts in the Ninth Circuit have applied the five-factor test set forth in *Van Vranken* . . ." (citing Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995))).

[10]In re AOL Time Warner ERISA Litigation, 2007 WL 3145111, *2 (S.D.N.Y. 2007).

[11]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:3 (5th ed.).

[12]*See* Rubenstein, 5 **Newberg on Class Actions** §§ 17:14 to 17:18 (5th ed.).

### § 17:14   Judicial review—Disfavored practices— Generally

As the legal basis for incentive awards is uncertain,[1] and as such payments tend to be made with the class's money, courts have been somewhat careful in policing certain incentive award practices. The Ninth Circuit, for example, has emphasized that trial courts "must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives."[2] A series of disfavored practices has emerged and can be enumerated as follows:

- awarding incentive payments only to those class representatives who agree to support a settlement;[3]
- contracting in advance to pay incentive awards to class representatives;[4]
- measuring incentive payments as a percentage of the class's recovery;[5] and

---

**[Section 17:14]**

[1]For a discussion, *see* Rubenstein, 5 **Newberg on Class Actions** § 17:4 (5th ed.).

[2]Radcliffe v. Experian Information Solutions Inc., 715 F.3d 1157, 1164 (9th Cir. 2013); *see also* Chavez v. Lumber Liquidators, Inc., 2015 WL 2174168, *4 (N.D. Cal. 2015) ("The Ninth Circuit requires district courts to be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives. Among other things, the concern about incentive awards and the class representative's adequacy is that, when presented with a potential settlement, the class representative may be more concerned with maximizing those incentives than with judging the adequacy of the settlement as it applies to class members at large. This is particularly salient when the incentive award is disproportionate to the class's recovery, because the disproportionality may eliminate[ ] a critical check on the fairness of the settlement for the class as a whole. In an extreme case, the conditional incentive award may be so large in relation to the judgment or settlement that if awarded it would significantly diminish the amount of damages received by the class. In such circumstances, a class representative would then have a clear conflict of interest." (citations omitted) (internal quotation marks omitted)).

[3]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:15 (5th ed.).

[4]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:16 (5th ed.).

[5]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:17 (5th ed.).

- overpaying class representatives.[6]

As noted, these topics are each addressed in succeeding sections.

### § 17:15   Judicial review—Disfavored practices— Conditional awards

As the legal basis for incentive awards is uncertain,[1] and as such payments tend to be made with the class's money, courts have been somewhat careful in policing certain incentive award practices. One of those disfavored practices is a settlement agreement that purports to reward those class representatives who agree to support the proposed settlement but not those who oppose it. The Ninth Circuit has labeled these "conditional incentive awards," because "the awards were conditioned on the class representatives' support for the settlement."[2] At least two circuits—the Seventh[3] and the Ninth[4]—have prohibited such provisions.

To appreciate the problem with conditional incentive awards, it is important to review the function of the class

---

[6]*See* Rubenstein, 5 **Newberg on Class Actions** § 17:18 (5th ed.).

**[Section 17:15]**

[1]For a discussion, *see* Rubenstein, 5 **Newberg on Class Actions** § 17:4 (5th ed.).

[2]Radcliffe v. Experian Information Solutions Inc., 715 F.3d 1157, 1161 (9th Cir. 2013).

[3]Eubank v. Pella Corp., 753 F.3d 718, 723, 88 Fed. R. Serv. 3d 920 (7th Cir. 2014) ("Although the judge rightly made incentive awards to the class representatives who had opposed the settlement as well as to those who had approved it, the settlement agreement itself had provided for incentive awards only to the representatives who supported the settlement. This created a conflict of interest: any class representative who opposed the settlement would expect to find himself without any compensation for his services as representative.").

[4]Radcliffe v. Experian Information Solutions Inc., 715 F.3d 1157, 1164 (9th Cir. 2013) ("[T]he incentive awards here corrupt the settlement by undermining the adequacy of the class representatives and class counsel. In approving the settlement agreement, the district court misapprehended the scope of our prior precedents. We once again reiterate that district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives. The conditional incentive awards in this settlement run afoul of our precedents by making the settling class representatives inadequate representatives of the class.").

representative in a class action. A class action is a form of representative litigation in which one or a few members of a class litigate the claims of all of the members of the class in the aggregate.[5] Class counsel are centrally charged with safeguarding the absent class members' interests,[6] but counsel's interests and those of the class members may diverge. The class representative serves as a stand-in "client" for the whole class, monitoring the progress of the litigation and ensuring class counsel do not compromise the class's interests for their own.[7] These principles may be more ideal than practical in that most class representatives lack the expertise and resources to perform this function well.[8] Nonetheless, the principles are carefully safeguarded in the class setting.

From this perspective, conditional incentive agreements that reward only those class representatives who support a proposed settlement are problematic. When a settlement is proposed, the class representative's role is to review the proposal and to inform class counsel of her views on it. A class representative who disagrees with the terms of the settlement and so informs class counsel provides a valuable ser-

---

[5]Fed. R. Civ. P. 23(a) ("One or more members of a class may sue or be sued as representative parties on behalf of all members . . .").

[6]Fed. R. Civ. P. 23(g)(4) (*Duty of Class Counsel*. Class counsel must fairly and adequately represent the interests of the class.").

[7]*See* Rubenstein, 1 **Newberg on Class Actions** § 3:52 (5th ed.) ("In theory, the role played by the class representative in a class action is akin to the role played by an individual client in an individual case—the client tends to seek out the attorney, hire and monitor the attorney, and be the person charged with making the critical decisions about the case's goals, including, most importantly, the settlement decision. Put simply, an individual client is the principal and the attorney is her agent." (footnote omitted)).

[8]*See* Rubenstein, 1 **Newberg on Class Actions** § 3:52 (5th ed.) ("Class representatives rarely serve any of these functions in class suits: in small claims cases they have so little at stake that it would be irrational for them to take more than a tangential interest, while in all cases, including larger claim cases, class representatives generally lack the legal acumen to make key decisions about complex class action litigation, much less to monitor savvy class counsel. It has long been understood that class counsel control class actions, perhaps even selecting the class representatives themselves, thereby reversing, not inscribing, the standard attorney/client relationship. Put simply, class action attorneys are the real principals and the class representative/clients their agents." (footnote omitted)).

vice to the class regardless of whether or not her objections are ultimately validated. *First*, that class representative has exercised her own independent judgment and provided an opinion about the settlement to class counsel, providing information or insight class counsel themselves may not have considered. *Second*, that class representative speaks from a position that class counsel does not—that of the client class—and thus has provided information from a unique perspective. *Third*, that class representative has discharged precisely the duty the law seeks from her: to operate as a monitor or check on class counsel by stating her own independent opinions to class counsel and the court. Given how much class action law generally laments the absence of a meaningful check on class counsel by class representatives, those class representatives who do find the independence and voice to challenge class counsel should be applauded, not punished. A structural provision in a settlement agreement that has the effect of squelching class representatives' ability to adequately represent the class by voicing their concerns is, simply, not in the class's best interests.

The Ninth Circuit embraced these principles in a 2013 decision condemning conditional incentive awards.[9] The case was an action against credit reporting agencies under the Fair Credit Reporting Act (and its state law counterpart) for the manner in which they treated debts that had been discharged in bankruptcy. The parties initially reached an injunctive settlement and later negotiated a proposed monetary settlement. The settlement agreement provided for incentive awards, stating:

> On or before October 19, 2009, Proposed 23(b)(3) Settlement Class Counsel shall file an application or applications to the Court for an incentive award, to each of the Named Plaintiffs

---

[9]Radcliffe v. Experian Information Solutions Inc., 715 F.3d 1157 (9th Cir. 2013). The Treatise's author testified as an expert witness in opposition to conditional incentive awards in the case. *See* Radcliffe v. Experian Information Solutions Inc., 715 F.3d 1157, 1166 (9th Cir. 2013) ("Professor William Rubenstein, a class-action expert, testified before the district court that in his experience such provisions are 'not common' and that his research revealed 'not one' settlement agreement that 'contain[ed] a restriction on an incentive award like the one here that permits incentive awards be sought only for those representatives in support of the settlement.' "). The preceding paragraph is taken from Professor Rubenstein's testimony in the matter.

serving as class representatives *__in support of the Settle-__ __ment,__* and each such award not to exceed $5,000.00.[10]

Class counsel also informed a plaintiff that he would " 'not be entitled to anything' and that he would 'jeopardize the $5,000 [incentive award he] would receive [under the settle-ment]' if he did not support the settlement,"[11] and class counsel "also told the district court that they had told other plaintiffs that they 'don't see a way for people who don't sup-port the settlement to receive an incentive award.' "[12]

Several of the class representatives objected to the settle-ment, believing the compensation inadequate; settling class counsel did not seek incentive awards for these class representatives as they were not representatives serving "in support of the Settlement." These representatives therefore also objected to the incentive clause itself, arguing it created a conflict of interest between themselves and the class and between class counsel and the class. The trial court rejected their argument, but the Ninth Circuit reversed. The Ninth Circuit held that the conditional incentive awards "them-selves are sufficient to invalidate this settlement,"[13] reason-ing that:

> With the prospect of receiving $5,000 incentive awards only if they supported the settlement, Settling Plaintiffs had very dif-ferent interests than the rest of the class . . . [T]he conditional incentive awards changed the motivations for the class representatives. Instead of being solely concerned about the adequacy of the settlement for the absent class members, the class representatives now had a $5,000 incentive to support the settlement regardless of its fairness and a promise of no reward if they opposed the settlement. The conditional incen-tive awards removed a critical check on the fairness of the class-action settlement, which rests on the unbiased judgment of class representatives similarly situated to absent class

[10]Radcliffe v. Experian Information Solutions Inc., 715 F.3d 1157, 1162 (9th Cir. 2013) (emphasis added).

[11]Radcliffe v. Experian Information Solutions Inc., 715 F.3d 1157, 1164 (9th Cir. 2013).

[12]Radcliffe v. Experian Information Solutions Inc., 715 F.3d 1157, 1164–65 (9th Cir. 2013).

[13]Radcliffe v. Experian Information Solutions Inc., 715 F.3d 1157, 1165 (9th Cir. 2013).

members.[14]

Because of the conflict between the class representatives' interests and those of the class, the Ninth Circuit held that the conditional incentive awards rendered the class representatives inadequate under Rule 23(a)(4).[15] Moreover, the Ninth Circuit held that the "class representatives' lack of adequacy—based on the conditional incentive awards—also made class counsel inadequate to represent the class."[16]

The Seventh Circuit reached a similar conclusion the following year, stating:

> Although the judge rightly made incentive awards to the class representatives who had opposed the settlement as well as to those who had approved it, the settlement agreement itself had provided for incentive awards only to the representatives who supported the settlement. This created a conflict of interest: any class representative who opposed the settlement would expect to find himself without any compensation for his services as representative.[17]

In sum, two separate circuits have found that conditional incentive awards generate a conflict of interest between class representatives and class counsel, on the one hand, and class representatives and the class, on the other. Such conditional incentive awards thereby render the class representatives and class counsel inadequate, dooming class certification and requiring the rejection of any settlement containing such terms.

## § 17:16   Judicial review—Disfavored practices— Percentage-based awards

As the legal basis for incentive awards is uncertain,[1] and

---

[14]Radcliffe v. Experian Information Solutions Inc., 715 F.3d 1157, 1165 (9th Cir. 2013).

[15]Radcliffe v. Experian Information Solutions Inc., 715 F.3d 1157, 1165 (9th Cir. 2013).

[16]Radcliffe v. Experian Information Solutions Inc., 715 F.3d 1157, 1167 (9th Cir. 2013).

[17]Eubank v. Pella Corp., 753 F.3d 718, 723, 88 Fed. R. Serv. 3d 920 (7th Cir. 2014).

**[Section 17:16]**

[1]For a discussion, *see* Rubenstein, 5 **Newberg on Class Actions**

as such payments tend to be made with the class's money, courts have been somewhat careful in policing certain incentive award practices. One of those disfavored practices is percentage-based incentive awards. When counsel seek, and courts approve, incentive awards, they almost always do so in specific dollar amounts. Often, courts will assess whether the requested dollar-amount award is appropriate by identifying the percentage of the class's recovery that the award represents. If the percentage seems appropriate, courts approve the award;[2] if it is too high, they either reject

---

§ 17:4 (5th ed.).

[2]**Second Circuit (District Court)**

Sanz v. Johny Utah 51 LLC, 2015 WL 1808935, *1 (S.D.N.Y. 2015) (approving incentive awards of $1,000 to three representatives and noting that "the combined payments represent less than one percent of the overall settlement").

Chambery v. Tuxedo Junction Inc., 2014 WL 3725157, *11 (W.D. N.Y. 2014) (approving proposed "enhancement payments" ($10,700) as "reasonable" and noting that this amount constituted "approximately five percent of the total settlement fund").

Gay v. Tri-Wire Engineering Solutions, Inc., 2014 WL 28640, *13–14 (E.D.N.Y. 2014) (approving $7,500 service award and noting that this figure constituted 4% of the total settlement).

Velez v. Novartis Pharmaceuticals Corp., 2010 WL 4877852, *8, 24–27 (S.D.N.Y. 2010) (approving $3,775,000 in service award payments and noting that this represented "only approximately 2.4 percent of the entire monetary award of $152.5 million (or approximately 2.1 percent of the entire value of the settlement of $175 million)" and acknowledging award was "significant . . . but in the overall context of the settlement . . . but a pittance").

**Third Circuit (District Court)**

Johnson v. Community Bank, N.A., 2013 WL 6185607, *6 (M.D. Pa. 2013) (approving total service awards of $10,000 and recognizing this sum as reasonable given that it comprised 0.4% of total $2.5 million settlement fund).

Sullivan v. DB Investments, Inc., 2008 WL 8747721, *37 (D.N.J. 2008) (approving incentive award and noting that it represented 0.0007% of settlement fund).

**Fourth Circuit (District Court)**

Kirven v. Central States Health & Life Co. of Omaha, 2015 WL 1314086, *14 (D.S.C. 2015) (approving incentive award of $7,563.27 and noting this figure constituted "approximately 0.015% of the gross settlement").

DeWitt v. Darlington County, S.C., 2013 WL 6408371, *15 (D.S.C. 2013) (approving service award of $7,500 and recognizing this amount

comprised 3.33% of gross amount of the settlement in the case, with largest proposed amount for lead plaintiff ($2,500) constituting 1.11% of gross settlement amount).

**Fifth Circuit (District Court)**

Jenkins v. Trustmark Nat. Bank, 300 F.R.D. 291, 306 (S.D. Miss. 2014) (approving seven service awards of $5,000 each in part due to recognition that this aggregate sum constituted "less than one percent of the Settlement Fund").

**Sixth Circuit (District Court)**

Shane Group, Inc. v. Blue Cross Blue Shield of Michigan, 2015-1 Trade Cas. (CCH) ¶ 79151, 2015 WL 1498888, *18–19 (E.D. Mich. 2015) (granting $165,000 in incentive awards and noting that these awards were "reasonable" as they constituted 0.55% of settlement fund).

In re Cardizem CD Antitrust Litigation, 218 F.R.D. 508, 535, 2003-2 Trade Cas. (CCH) ¶ 74205 (E.D. Mich. 2003) (approving incentive awards of $160,000 and recognizing these awards to equal just 0.002% of settlement fund).

**Seventh Circuit (District Court)**

Beesley v. International Paper Company, 2014 WL 375432, *4 (S.D. Ill. 2014) (approving seven incentive awards (six of $25,000 and one of $15,000) and noting that "the total award for all of the Named Plaintiffs represents just 0.55 percent of the total Settlement Fund" and that "awards of less than one percent of the fund are well within the ranges that are typically awarded in comparable cases").

In re Lawnmower Engine Horsepower Marketing & Sales Practices Litigation, 733 F. Supp. 2d 997, 1016 (E.D. Wis. 2010) (approving incentive awards of $1,000 to each of the 132 class representatives based in part because "the $132,000 total award is only a tiny percentage (0.12%) of the class's overall recovery [of $110.7 million]").

**Eighth Circuit (District Court)**

Sauby v. City of Fargo, 2009 WL 2168942, *3 (D.N.D. 2009) (approving incentive awards totaling $15,000 and noting that this sum constituted only 0.01% of the maximum class recovery).

**Ninth Circuit (District Court)**

Horn v. Bank of America, N.A., 2014 WL 1455917, *7–8 (S.D. Cal. 2014) (approving incentive awards collectively amounting to $50,000 in part because this aggregate figure would constitute "a mere fraction of one percent of the most conservative estimated value of the Settlement").

Williams v. Centerplate, Inc., 2013 WL 4525428, *7 (S.D. Cal. 2013) (approving $5,000 incentive awards for each of three plaintiffs and recognizing this figure as "reasonable" as it comprised "around 2.3% of the common fund").

Cicero v. DirecTV, Inc., 2010 WL 2991486, *7 (C.D. Cal. 2010) (approving two incentive awards totaling $12,500 in part because of court's recognition that this sum constituted "less than one percent of the Settlement").

Incentive Awards                                                    § 17:16

or reduce the award.[3] This method is similar to a percentage cross-check that a court might utilize in assessing the validity of a lodestar-based fee award.[4] There are therefore many court decisions that discuss incentive awards in percentage terms.

However, there are very, very few cases in which class counsel have sought, and courts have approved, incentive awards that are actually measured as a percentage of the common fund recovery.[5] Percentage-based incentive awards

---

Hopson v. Hanesbrands Inc., 2009 WL 928133, *10 (N.D. Cal. 2009) (approving incentive award of $5,000, constituting approximately 1.25% of the settlement amount, and noting that although this was higher than that awarded in other cases, the award was justified under the particular circumstances of the case).

**Tenth Circuit (District Court)**
Chieftain Royalty Co. v. Laredo Petroleum, Inc., 2015 WL 2254606, *1 (W.D. Okla. 2015) (approving "case contribution award" and recognizing this award as comprising 1% of total settlement amount).

Shaw v. Interthinx, Inc., 2015 WL 1867861, *8 (D. Colo. 2015) (approving multiple $10,000 incentive awards and noting that the total sum would represent "less than 1% of the maximum value of the common fund").

**Eleventh Circuit (District Court)**
Carnegie v. Mutual Sav. Life Ins. Co., 2004 WL 3715446, *24 (N.D. Ala. 2004) (approving incentive awards aggregating $10,000, which the court noted constituted "two-tenths of one percent of the total settlement amount").

**District of Columbia Circuit (District Court)**
In re Lorazepam & Clorazepate Antitrust Litigation, 205 F.R.D. 369, 400, 2002-1 Trade Cas. (CCH) ¶ 73649 (D.D.C. 2002) (approving six separate incentive awards (three worth $25,000 and three worth $10,000) and noting that this aggregate sum represented approximately 0.3% of each class's recovery).

[3]A succeeding section of the Treatise discussing courts' rejection of excessive awards contains a list of cases rejecting awards on the basis that they constitute too great a portion of the class's recovery. *See* Rubenstein, 5 **Newberg on Class Actions** § 17:18 (5th ed.).

[4]For a discussion of the percentage cross-check in lodestar fee cases, *see* Rubenstein, 5 **Newberg on Class Actions** § 15:52 (5th ed.).

[5]Chieftain Royalty Co. v. Laredo Petroleum, Inc., 2015 WL 2254606, *4 (W.D. Okla. 2015) ("Class Representative is hereby awarded a Case Contribution Award of one percent (1%) of the $6,651,997.95 Settlement Amount.").

Allapattah Services, Inc. v. Exxon Corp., 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006) ("[T]he Class Representatives are seeking 1.5% of

are disfavored, if not altogether forbidden.

Percentage-based incentive awards may appear appropriate in that they seem to align the class representative's interests with those of the class: the more money the class makes, the higher the percentage award.[6] However, on closer examination, percentage-based incentive awards are problematic. *First*, such awards may skew the class representatives' incentives by encouraging them to hold out for greater recovery (and hence a higher incentive award) when in fact the class's interests would be best served by a settlement. *Second*, relatedly, percentage awards privilege monetary recoveries over other remedies, such as injunctive relief, creating a potential conflict between the interests of the class representative and the class.[7] *Third*, paying the class representatives a portion of the settlement amount

---

the common benefit received by the Class as an incentive award. The basis for the 1.5% request comes from the fact that Class Counsel have reduced their fee from 33 and 1/3% to 31 and 1/3%, and the Class Representatives have sought to maintain their request within the scope of that reduction.").

Freebird, Inc. v. Cimarex Energy Co., 46 Kan. App. 2d 631, 264 P.3d 500, 511 (2011) (affirming district court's award of incentive award equal to "1% of the common fund" ($34,500)).

[6]Freebird, Inc. v. Cimarex Energy Co., 46 Kan. App. 2d 631, 264 P.3d 500, 511 (2011) ("[W]e can find no reason to automatically deny incentive awards that are based upon a percentage of the common fund. We do not consider such awards as antithetical to the interests of the class. To the contrary, the class representative remains aligned with the interests of the class as a whole; the larger the class recovery, the larger the incentive award.").

[7]Rodriguez v. West Publishing Corp., 563 F.3d 948, 959–60, 2009-1 Trade Cas. (CCH) ¶ 76614, 60 A.L.R.6th 723 (9th Cir. 2009) (noting that *ex ante* incentive agreements between class counsel and class representatives, which tied the requested award to the size of the settlement, "made the contracting class representatives' interests actually different from the class's interests[;]" specifically, "[b]y tying their compensation—in advance—to a sliding scale based on the amount recovered, the incentive agreements disjoined the contingency financial interests of the contracting representatives from the class," because (given a cap on the percentage recovery) "once the threshold cash settlement was met, the agreements created a disincentive to go to trial; going to trial would put their $75,000 at risk in return for only a marginal individual gain even if the verdict were significantly greater than the settlement" and because the "agreements also gave the contracting representatives an interest in a monetary settlement, as distinguished from other remedies, that set them apart from other members of the class").

untethers the award from the services that the representatives provided to the class and the risks they took in doing so. It is true that a court could provide a higher percentage when the service and risks were greater, but scaling those rewards according to the size of the common fund is at best a rough proxy in that the services and risks are not necessarily directly related to the size of the settlement. Thus, *fourth,* percentage awards threaten to be excessive.[8] *Fifth,* paying the class representatives a portion of the settlement fund is simply unseemly: it gives the appearance that the representative is either a professional plaintiff,[9] or a bounty hunter, not a servant for the class.[10]

In a leading decision on incentive awards, the Ninth Circuit held that an agreement between class counsel and the class representatives at the outset of the case that tied the amount class counsel would seek as an incentive award to the class's recovery created a conflict of interest between the class representatives and the class, rendering those class representatives inadequate to represent the class.[11] The decision does not isolate the issue of rewarding class representatives with a percentage-based incentive fee, but its concerns about scaling the incentive award to the class's recovery are pertinent.[12]

In short, class counsel rarely seek incentive awards in per-

---

[8]*Cf.* Freebird, Inc. v. Cimarex Energy Co., 46 Kan. App. 2d 631, 264 P.3d 500, 511 (2011) (rejecting defendant's argument that the percentage approach "provides a disproportionate recovery to that of other class members" but performing "lodestar" type cross-check to confirm reasonableness of proposed percentage incentive award).

[9]*But see* Freebird, Inc. v. Cimarex Energy Co., 46 Kan. App. 2d 631, 264 P.3d 500, 511 (2011) (rejecting defendant's argument that percentage approach "encourages individuals to become professional plaintiffs").

[10]In this sense, the class representative's service, and reward, are distinct from the statutorily based reward structure in *qui tam* cases, where a relator is paid a percentage of the government's recovery for her whistle-blower activities. *See* 31 U.S.C.A. § 3730 (setting forth False Claims Act's *qui tam* provisions).

[11]Rodriguez v. West Publishing Corp., 563 F.3d 948, 2009-1 Trade Cas. (CCH) ¶ 76614, 60 A.L.R.6th 723 (9th Cir. 2009). For a discussion of this case and the concerns it posed, *see* Rubenstein, 5 **Newberg on Class Actions** § 17:17 (5th ed.).

[12]Rodriguez v. West Publishing Corp., 563 F.3d 948, 959, 2009-1 Trade Cas. (CCH) ¶ 76614, 60 A.L.R.6th 723 (9th Cir. 2009) (noting that incentive agreements tying any potential award to the ultimate recovery

§ 17:16                              NEWBERG ON CLASS ACTIONS

centage terms. Although courts may check a flat award for excessiveness by reference to the percentage of the fund it represents, courts rarely award incentive payments in percentage terms and strongly disfavor such an approach.

## § 17:17   Judicial review—Disfavored practices—*Ex ante* incentive award agreements

As the legal basis for incentive awards is uncertain,[1] and as such payments tend to be made with the class's money, courts have been somewhat careful in policing certain incentive award practices. One of those disfavored practices is an *ex ante* agreement between putative class counsel and putative class representatives containing certain assurances with regard to incentive awards.

The facts of the primary precedent on point[2] are instructive: in 2005, lawyers in California brought an antitrust class action against West Publishing Company alleging that it had engaged in anti-competitive practices with regard to its bar preparation course, BAR/BRI. As may be evident, the class consisted almost exclusively of lawyers.[3] Some of those lawyers/clients shopped for class action counsel to represent them in suing BAR/BRI. In so doing, they appear to have negotiated, up front, for the lawyers to promise to pursue incentive agreements on their behalf at the conclusion of the case. In particular, the putative class representatives negotiated an agreement with putative class counsel whereby counsel promised to seek a higher award for them as the class's recovery increased, up to a certain

---

"put counsel and the contracting class representatives into a conflict from day one").

**[Section 17:17]**

[1]For a discussion, *see* Rubenstein, 5 **Newberg on Class Actions** § 17:4 (5th ed.).

[2]Rodriguez v. West Publishing Corp., 563 F.3d 948, 2009-1 Trade Cas. (CCH) ¶ 76614, 60 A.L.R.6th 723 (9th Cir. 2009).

[3]The class consisted of "those who purchased a BAR/BRI course between August 1, 1997 and July 31, 2006." Rodriguez v. West Publishing Corp., 563 F.3d 948, 954, 2009-1 Trade Cas. (CCH) ¶ 76614, 60 A.L.R.6th 723 (9th Cir. 2009). The class would also have included persons who paid for the bar preparation course but either did not sit for the bar, did not pass the bar, or were not admitted to the bar.

cap.[4] This agreement was not revealed to the court at either the class certification stage or the settlement stage, but it came to light after several objectors protested the size of the proposed incentive awards.[5] Without apparently realizing the consequences of their actions, class counsel at that point revealed that they were contractually obligated to seek that level of award. The district court ultimately approved the settlement, but held that the agreements were inappropriate and contrary to public policy for a number of reasons:

> [1] they obligate class counsel to request an arbitrary award not reflective of the amount of work done, or the risks undertaken, or the time spent on the litigation; [2] they create at least the appearance of impropriety; [3] they violate the California Rules of Professional Conduct prohibiting fee-sharing with clients and among lawyers; and [4] they encourage figurehead cases and bounty payments by potential class counsel. [5] The court found it particularly problematic that the incentive agreements correlated the incentive request solely to the settlement or litigated recovery, as the effect was to make the contracting class representatives' interests actually different from the class's interests in settling a case instead of trying it to verdict, seeking injunctive relief, and insisting on compensation greater than $10 million. [6] It further observed that the parties' failure to disclose their agreement to the court, and to the class, violated the contracting representatives' fiduciary duties to the class and duty of candor to the court.[6]

The Ninth Circuit affirmed the settlement's approval because it found that two independently-represented class

---

[4]Rodriguez v. West Publishing Corp., 563 F.3d 948, 957, 2009-1 Trade Cas. (CCH) ¶ 76614, 60 A.L.R.6th 723 (9th Cir. 2009) ("The incentive agreements obligated class counsel to seek payment . . . in an amount that slid with the end settlement or verdict amount: if the amount were greater than or equal to $500,000, class counsel would seek a $10,000 award for each of them; if it were $1.5 million or more, counsel would seek a $25,000 award; if it were $5 million or more, counsel would seek $50,000; and if it were $10 million or more, counsel would seek $75,000.").

[5]Rodriguez v. West Publishing Corp., 563 F.3d 948, 959, 2009-1 Trade Cas. (CCH) ¶ 76614, 60 A.L.R.6th 723 (9th Cir. 2009) (noting that "the incentive agreements came to the fore when Objectors pounced on them in opposing class counsel's motion for incentive awards to the class representatives"). The Treatise's author was an expert witness regarding a fee request that was later filed by some of these objectors' lawyers.

[6]Rodriguez v. West Publishing Corp., 563 F.3d 948, 959, 2009-1 Trade Cas. (CCH) ¶ 76614, 60 A.L.R.6th 723 (9th Cir. 2009).

representatives did not suffer under the weight of the incentive agreements.[7] However, the Ninth Circuit did agree with the district court that the *ex ante* incentive agreements were contrary to public policy, discussing a host of problems with respect to the agreements:

- *Class representatives suffer conflict of interest.* The Ninth Circuit noted the fact that the agreements "tied the promised request to the ultimate recovery . . . put class counsel and the contracting class representatives into a conflict position from day one."[8] The court found that "[b]y tying their compensation—in advance—to a sliding scale based on the amount recovered, the incentive agreements disjoined the contingency financial interests of the contracting representatives from the class. As the district court observed, once the threshold cash settlement was met, the agreements created a disincentive to go to trial; going to trial would put their $75,000 at risk in return for only a marginal individual gain even if the verdict were significantly greater than the settlement. The agreements also gave the contracting representatives an interest in a monetary settlement, as distinguished from other remedies, that set them apart from other members of the class."[9]

- *Class counsel suffer conflict of interest.* The Ninth Circuit found that class counsel's simultaneous representation of parties with conflicting interests (the class representatives and the class) "implicate California ethics rules that prohibit representation of clients with

---

[7]Rodriguez v. West Publishing Corp., 563 F.3d 948, 961, 2009-1 Trade Cas. (CCH) ¶ 76614, 60 A.L.R.6th 723 (9th Cir. 2009) ("[W]e do not believe the district court was required to reject the settlement for inadequate representation. Only five of the seven class representatives had an incentive agreement. 'The adequacy-of-representation requirement is satisfied as long as one of the class representatives is an adequate class representative.' . . . Accordingly, we conclude that the presence of conflicted representatives was harmless." (citation omitted) (quoting Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1162 n.2, 17 I.E.R. Cas. (BNA) 796, 143 Lab. Cas. (CCH) P 10958, 50 Fed. R. Serv. 3d 511 (9th Cir. 2001), for additional opinion, see, 7 Fed. Appx. 753 (9th Cir. 2001))).

[8]Rodriguez v. West Publishing Corp., 563 F.3d 948, 959, 2009-1 Trade Cas. (CCH) ¶ 76614, 60 A.L.R.6th 723 (9th Cir. 2009).

[9]Rodriguez v. West Publishing Corp., 563 F.3d 948, 959–60, 2009-1 Trade Cas. (CCH) ¶ 76614, 60 A.L.R.6th 723 (9th Cir. 2009).

conflicting interests."[10]

- *Class counsel's entitlement to a fee is plausibly barred.*
  The Ninth Circuit, again relying on California ethics
  principles, noted that, "[s]imultaneous representation of
  clients with conflicting interests (and without written
  informed consent) is an automatic ethics violation in
  California and grounds for disqualification" and that
  under California law, "[a]n attorney cannot recover fees
  for such conflicting representation."[11]

- *Lack of transparency.* The Ninth Circuit further noted
  that such agreements must be disclosed at the class
  certification stage of the lawsuit "where it [is] plainly
  relevant" because "the district court would certainly
  have considered its effect in determining whether the
  conflicted plaintiffs . . . could adequately represent the
  class. The conflict might have been waived, or otherwise
  contained, but the point is that uncovering conflicts of
  interest between the named parties and the class they
  seek to represent is a critical purpose of the adequacy
  inquiry."[12]

- *Excessiveness.* Referencing an earlier decision concern-
  ing the potential excessiveness of incentive awards, the
  Ninth Circuit stated that "excess incentive awards may
  put the class representative in a conflict with the class
  and present a 'considerable danger of individuals bring-
  ing cases as class actions principally to increase their
  own leverage to attain a remunerative settlement for
  themselves and then trading on that leverage in the
  course of negotiations.' The danger is exacerbated if the
  named plaintiffs have an advance guarantee that a
  request for a relatively large incentive award will be
  made that is untethered to any service or value they

---

[10]Rodriguez v. West Publishing Corp., 563 F.3d 948, 960, 2009-1
Trade Cas. (CCH) ¶ 76614, 60 A.L.R.6th 723 (9th Cir. 2009).

[11]Rodriguez v. West Publishing Corp., 563 F.3d 948, 967–68, 2009-1
Trade Cas. (CCH) ¶ 76614, 60 A.L.R.6th 723 (9th Cir. 2009) (quoting
Image Technical Service, Inc. v. Eastman Kodak Co., 136 F.3d 1354, 1358,
1998-1 Trade Cas. (CCH) ¶ 72067 (9th Cir. 1998)) (internal quotation
marks omitted).

[12]Rodriguez v. West Publishing Corp., 563 F.3d 948, 959, 2009-1
Trade Cas. (CCH) ¶ 76614, 60 A.L.R.6th 723 (9th Cir. 2009).

will provide to the class."[13]

- *Class Action Abuse.* The Ninth Circuit also stated that "agreements of this sort infect the class action environment with the troubling appearance of shopping plaintiffships. If allowed, ex ante incentive agreements could tempt potential plaintiffs to sell their lawsuits to attorneys who are the highest bidders, and vice-versa."[14]

Summarizing its decision, the Ninth Circuit stated:

We conclude that incentive agreements, entered into as part of five named plaintiffs' retainer agreement with counsel, created conflicts among them (later certified as class representatives), their counsel (later certified as class counsel), and the rest of the class. It was inappropriate not to disclose these agreements at the class certification stage, because an ex ante incentive agreement is relevant to whether a named plaintiff who is party to one can adequately represent the class.[15]

While there are a variety of moving parts in the *Rodriguez* case, the decision is fairly damning of *ex ante* incentive agreements, *per se*. It is true that much of the court's concern stemmed from the content of the particular agreement—the sliding scale arrangement and the conflicts it created—but counsel's commitment *ex ante* to seek an incentive award for a putative class representative understandably troubled the court: such an award largely turns on the work the representative undertakes and the risks she faces, neither of which can be fully known *ex ante*. A commitment to seek some of the class's money from a potential recovery to serve these purposes therefore creates a conflict between the proposed class representative and the putative class, as well as between contracting class counsel and the putative class. It would thus not be too much of a stretch to read *Rodriguez* as condemning any *ex ante* agreement that counsel would make to pursue an incentive award. At the least, *Rodriguez* stands for the proposition that such an agreement would

---

[13]Rodriguez v. West Publishing Corp., 563 F.3d 948, 960, 2009-1 Trade Cas. (CCH) ¶ 76614, 60 A.L.R.6th 723 (9th Cir. 2009) (quoting Staton v. Boeing Co., 327 F.3d 938, 976–77, 55 Fed. R. Serv. 3d 1299 (9th Cir. 2003)).

[14]Rodriguez v. West Publishing Corp., 563 F.3d 948, 960, 2009-1 Trade Cas. (CCH) ¶ 76614, 60 A.L.R.6th 723 (9th Cir. 2009).

[15]Rodriguez v. West Publishing Corp., 563 F.3d 948, 968, 2009-1 Trade Cas. (CCH) ¶ 76614, 60 A.L.R.6th 723 (9th Cir. 2009).

have to be disclosed at the class certification stage and the settlement stage of the lawsuit; any lack of transparency about such an agreement would consequently threaten to undermine certification and settlement as well.

## § 17:18  Judicial review—Disfavored practices— Excessive awards

As the legal basis for incentive awards is uncertain,[1] and as such payments tend to be made with the class's money, courts have been somewhat careful in policing certain incentive award practices. One of those practices is excessive incentive awards.

As discussed in a previous section of the Treatise,[2] a primary risk of incentive awards is that they skew the class representative's interests so as to conflict with those of the class she purports to serve. As most class suits are for small amounts of money, a hypothetical case might encompass claims worth $250 per class member with a settlement value of say, $100 per class member. If a settlement is proposed that returns a $20 voucher to each class member, but the class representative is promised a $15,000 incentive award if the settlement is approved, she may forgo resisting the questionable settlement on behalf of the class as she stands to profit so handsomely should it be approved.[3] Courts have therefore long attempted to ensure that the size of potential

---

[Section 17:18]

[1]For a discussion, see Rubenstein, 5 **Newberg on Class Actions** § 17:4 (5th ed.).

[2]See Rubenstein, 5 **Newberg on Class Actions** § 17:3 (5th ed.).

[3]Radcliffe v. Experian Information Solutions Inc., 715 F.3d 1157, 1163 (9th Cir. 2013) (noting that in an earlier case, the court had "reversed the district court's approval of a class-action settlement because the settlement provided for disproportionately large payments to class representatives" and explaining that such a settlement "magnified the risks associated with incentive awards because there were much larger than the payments to individual class members, 'eliminat[ing] a critical check on the fairness of the settlement for the class as a whole' " (quoting Staton v. Boeing Co., 327 F.3d 938, 977, 55 Fed. R. Serv. 3d 1299 (9th Cir. 2003))).

Hadix v. Johnson, 322 F.3d 895, 897, 55 Fed. R. Serv. 3d 116, 2003 FED App. 0072P (6th Cir. 2003) ("[A]pplications for incentive awards are scrutinized carefully by courts who sensibly fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to com-

incentive awards are not excessive, lest the class representative's interests so significantly diverge from those of the class that she ceases to be an adequate representative of the class under Rule 23(a)(4).[4]

The Sixth Circuit explained this rationale in a case involving allegations that a certain diaper caused baby rash.[5] After a study disproved the link between the diaper and the rash, the parties settled for some minor forms of relief,[6] while the named class representatives were promised $1,000 "per af-

---

promise the interest of the class for personal gain." (quoting **Newberg on Class Actions**)).

Sanz v. Johny Utah 51 LLC, 2015 WL 1808935, *1 (S.D.N.Y. 2015) ("Before awarding an incentive payment . . . a court must ensure that the named plaintiffs, as fiduciaries to the class, have not been tempted to receive high incentive awards in exchange for accepting suboptimal settlements for absent class members." (internal quotation marks omitted)).

Partridge v. Shea Mortg. Inc., 2008 WL 5384542, *1 (N.D. Cal. 2008) (denying plaintiffs' motion for an incentive payment in the amount of $15,000 because the plaintiff had not established any of the five factors tending to support incentive payments, and expressing concern that incentive payments might induce class representatives to accept settlements that serve their personal interests rather than the best possible result for the class as a whole).

Weseley v. Spear, Leeds & Kellogg, 711 F. Supp. 713, 720, Fed. Sec. L. Rep. (CCH) P 94403 (E.D.N.Y. 1989) ("If class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard.").

[4]Radcliffe v. Experian Information Solutions Inc., 715 F.3d 1157, 1161 (9th Cir. 2013) ("Moreover, the conditional incentive awards significantly exceeded in amount what absent class members could expect to get upon settlement approval. Because these circumstances created a patent divergence of interests between the named representatives and the class, we conclude that the class representatives and class counsel did not adequately represent the absent class members, and for this reason the district court should not have approved the class-action settlement.").

[5]In re Dry Max Pampers Litigation, 724 F.3d 713, 86 Fed. R. Serv. 3d 216 (6th Cir. 2013).

[6]In re Dry Max Pampers Litigation, 724 F.3d 713, 716, 86 Fed. R. Serv. 3d 216 (6th Cir. 2013) ("P & G agreed to reinstate, for one year, a refund program that P & G had already made available to its customers from July 2010 to December 2010. The program limits refunds to one box per household, and requires consumers to provide an original receipt and UPC code clipped from a Pampers box. P & G also agreed, for a period of two years, to add to its Pampers box-label a single sentence suggesting that consumers 'consult Pampers.com or call 1-800-Pampers' for 'more in-

fected child" and class counsel was to receive $2.73 million in attorney's fees.[7] The district court approved the settlement with seemingly little review[8] and the Sixth Circuit reversed. The Sixth Circuit explicitly took no position on the propriety of incentive payments in general, but characterized such payments to the class representatives and the payment to the class members as "two separate settlement agreements folded into one,"[9] with the former being so great that the class representatives had "no interest in vigorously prosecuting the [interests of] unnamed class members."[10] Summarizing its position, the court stated:

> The propriety of incentive payments is arguably at its height when the award represents a fraction of a class representative's likely damages; for in that case the class representative is left to recover the remainder of his damages by means of the same mechanisms that unnamed class members must re-

formation on common diapering questions such as choosing the right Pampers product for your baby, preventing diaper leaks, diaper rash, and potty training[.]' P & G similarly agreed, for a period of two years, to add to the Pampers website some rudimentary information about diaper rash (*e.g.*, '[d]iaper rash is usually easily treated and improves within a few days after starting treatment') and a suggestion to '[s]ee your child's doctor' if certain severe symptoms develop (*e.g.*, 'pus or weeping discharge'), along with two links to other websites. P & G also agreed to contribute $300,000 to a pediatric resident training program—the recipient program is not identified in the agreement—and $100,000 to the American Academy of Pediatrics to fund a program 'in the area of skin health.' ").

[7]In re Dry Max Pampers Litigation, 724 F.3d 713, 716, 86 Fed. R. Serv. 3d 216 (6th Cir. 2013).

[8]In re Dry Max Pampers Litigation, 724 F.3d 713, 717, 86 Fed. R. Serv. 3d 216 (6th Cir. 2013) ("The district court entered its 'Final Approval Order and Final Judgment' later that afternoon [of the fairness hearing]. With the exception of a few typographical changes, the order was a verbatim copy of a proposed order that the parties had submitted to the court before the hearing. The order was conclusory, for the most part merely reciting the requirements of Rule 23 in stating that they were met. About [a class member's] objections, the order had nothing to say.").

[9]In re Dry Max Pampers Litigation, 724 F.3d 713, 722, 86 Fed. R. Serv. 3d 216 (6th Cir. 2013); *see also* Women's Committee For Equal Employment Opportunity (WC=EO) v. National Broadcasting Co., 76 F.R.D. 173, 180, 19 Fair Empl. Prac. Cas. (BNA) 1703, 15 Empl. Prac. Dec. (CCH) P 7832, 24 Fed. R. Serv. 2d 359 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

[10]In re Dry Max Pampers Litigation, 724 F.3d 713, 722, 86 Fed. R. Serv. 3d 216 (6th Cir. 2013) (internal quotation marks omitted).

cover theirs. The members' incentives are thus aligned. But we should be most dubious of incentive payments when they make the class representatives whole, or (as here) even more than whole; for in that case the class representatives have no reason to care whether the mechanisms available to unnamed class members can provide adequate relief.

This case falls into the latter scenario. The $1000-per-child payments provided a *disincentive* for the class members to care about the adequacy of relief afforded unnamed class members, and instead encouraged the class representatives to compromise the interest of the class for personal gain. The result is the settlement agreement in this case. The named plaintiffs are inadequate representatives under Rule 23(a)(4), and the district court abused its discretion in finding the contrary.[11]

The Sixth Circuit's concern in the *Pampers* case was one of proportionality, comparing the size of the incentive award to the size of each class member's individual reward. The Ninth Circuit has expressed concern, as well, about the number of persons receiving such special payment and the relationship of the total amount of special payments to the total settlement in the case.[12]

Courts have found incentive payments to be excessive in four sets of circumstances:

- when the raw number seems too high;[13]
- when the amount sought is disproportionate to the contributions of the named plaintiffs;[14]
- when the amount of the incentive award is far greater than the amount of compensation each individual class

---

[11]In re Dry Max Pampers Litigation, 724 F.3d 713, 722, 86 Fed. R. Serv. 3d 216 (6th Cir. 2013) (citation omitted) (internal quotation marks omitted).

[12]Staton v. Boeing Co., 327 F.3d 938, 977, 55 Fed. R. Serv. 3d 1299 (9th Cir. 2003) ("[T]he different orders of magnitude in the present case concerning the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment—here up to $50,000, with an average of more than $30,000—are obvious.").

[13]In re Southern Ohio Correctional Facility, 175 F.R.D. 270, 277 (S.D. Ohio 1997), order rev'd on other grounds, 24 Fed. Appx. 520 (6th Cir. 2001) (declining to approve a proposed incentive award of $25,000 for prison inmate plaintiffs because, *inter alia*, "the requested $25,000 is extremely disproportionate to the amount an inmate can earn otherwise").

[14]**First Circuit (District Court)**

In re Puerto Rican Cabotage Antitrust Litigation, 815 F. Supp. 2d 448, 469 (D.P.R. 2011) ("While the Court notes the named plaintiffs' involvement in advancing the present litigation, the Court finds that the amount of the incentive award requested is excessive and unreasonable. The Class Representatives did not undertake substantial risk or suffer notoriety or personal hardships by acting as a named plaintiff. There is no indication that [the Class Representatives] assumed a risk or inconvenience not shared by the other class members which is of such magnitude to merit an incentive award, and Plaintiffs do not provide specific evidence of the purported risk's magnitude." (footnote omitted) (international quotation marks omitted)).

**Second Circuit (District Court)**

Weseley v. Spear, Leeds & Kellogg, 711 F. Supp. 713, 720, Fed. Sec. L. Rep. (CCH) P 94403 (E.D.N.Y. 1989) (rejecting request for $5,000 incentive award because although plaintiff "took time away from his practice to respond to defendant's document request and to be deposed[,] [b]eyond these normal obligations of class representation . . . he did not perform any extraordinary services to the class").

**Third Circuit (District Court)**

In re Laidlaw Securities Litigation, 1992 WL 236899, *3 (E.D. Pa. 1992) ("Plaintiffs' counsel also request that the court grant an incentive award of $10,000, to be paid out of plaintiffs' counsel's awarded fees, to the lead plaintiff, Donald Singleton. This award would be paid to Mr. Singleton in addition to the payment he would receive out of the settlement fund as a class member. The court perceives no reason for treating Mr. Singleton any differently from other members of the class. There is no indication that Mr. Singleton, by acting as the named class representative, has assumed a risk or inconvenience not shared by the other class members which is of such magnitude to merit the award of an additional $10,000. Therefore, the request to grant an incentive award to the named class representative is denied.").

**Ninth Circuit (District Court)**

Krzesniak v. Cendant Corp., 2008 WL 4291539, *1 (N.D. Cal. 2008) ("As to the amount of the incentive award, the Court finds it excessive. First, the Court notes that Plaintiff does not specify the amount of time and effort he spent on this case. Second, in arguing that $15,000 is at the modest end of the incentive award spectrum, he cites to cases that are clearly distinguishable. In [a prior case] the court awarded $20,000 to each of two named plaintiffs, finding that each plaintiff 'spent in excess of 500 hours' time at counsels' request' in the litigation. Here, there is no evidence before the Court that Plaintiff himself spent anywhere near this amount of time on the present case." (quoting Bogosian v. Gulf Oil Corp., 621 F. Supp. 27, 32, 1985-1 Trade Cas. (CCH) ¶ 66510 (E.D. Pa. 1985))).

In re Heritage Bond Litigation, 2005 WL 1594403, *18 (C.D. Cal. 2005) (approving incentive awards to named plaintiffs but reducing the requested sums because, *inter alia*, "no declaration submitted accurately quantifies how Lead Plaintiffs spent their time during this litigation,"

§ 17:18                                    NEWBERG ON CLASS ACTIONS

member is entitled to receive; and,[15]

_____

"[t]he Court is only presented with blanket statements as to how Class Representatives participated in this action," and "there is no showing that Lead Plaintiffs' participation placed them at risk of damaged reputation or retaliation").

**Tenth Circuit (District Court)**

In re Sprint Corp. ERISA Litigation, 443 F. Supp. 2d 1249, 1271, 39 Employee Benefits Cas. (BNA) 2810 (D. Kan. 2006) ("As to plaintiffs' request for an award of $15,000 to each of the named plaintiffs . . . the court simply cannot find that such an award is reasonable. The court certainly recognizes that the time these individuals devoted to this lawsuit inured to the common benefit of the class and, to that end, the court believes they are entitled to some type of incentive award above and beyond what the typical class member is receiving. They have performed an important service to the class and the burden of this commitment deserves to be recognized through an award. But, although the aggregate value of the settlement is significant, no class member stands to gain more than $1,000 on an average, per-plaintiff basis. The named plaintiffs devoted approximately 80 hours, on average, to this lawsuit. The court believes that an award of $5,000 adequately compensates each of them for their time.").

[15] **Second Circuit (District Court)**

In re AOL Time Warner ERISA Litigation, 2007 WL 3145111, *3 n.10 (S.D.N.Y. 2007) (noting that "the Court concludes that the requested $20,000 per-plaintiff fee would be excessive, especially in light of the indirect, and much smaller, monetary relief accruing to the more than 65,000 absent class members" and stating that the "Court has taken proportionality into account . . . [as] the primary justification offered for the reduction of the incentive award").

Sheppard v. Consolidated Edison Co. of New York, Inc., 2002 WL 2003206, *6 (E.D.N.Y. 2002) ("Although these reasons support an award of incentive payments, I decline to award incentive payments in the extraordinarily high amounts requested. Once again, I find that the amounts sought as incentive awards are grossly disproportionate to the compensation to be paid to the absent class members the plaintiffs seek to represent. In my view, appropriate incentive awards here are one-sixth of the proposed maximum amounts . . .").

**Ninth Circuit**

Radcliffe v. Experian Information Solutions Inc., 715 F.3d 1157, 1161, 1165 (9th Cir. 2013) (holding that the "incentive awards significantly exceeded in amount what absent class members could expect to get upon settlement approval" thereby creating a "patent divergence of interests between the named representatives and the class" and stating that "[t]here is a serious question whether class representatives could be expected to fairly evaluate whether awards ranging from $26 to $750 is a fair settlement value when they would receive $5,000 incentive awards").

Staton v. Boeing Co., 327 F.3d 938, 946, 55 Fed. R. Serv. 3d 1299 (9th Cir. 2003) ("Finally, the decree sets up a two-tiered structure for the

570

- when the aggregate amount of incentive awards constitutes too great a portion of the class's full recovery.[16]

---

distribution of monetary damages, awarding each class representative and certain other identified class members an amount of damages on average sixteen times greater than the amount each unnamed class member would receive. At least one person not a member of the class was provided a damages award. The record before us does not reveal sufficient justification either for the large differential in the amounts of damage awards or for the payment of damages to a nonmember of the class. On this ground as well, the district court abused its discretion in approving the settlement.").

Chavez v. Lumber Liquidators, Inc., 2015 WL 2174168, *4 (N.D. Cal. 2015) (denying preliminary approval of the settlement because "[t]he $10,000 currently earmarked for [the class representative] is more than 7 percent of the total settlement fund, more than 15 percent of the total amount of the common fund earmarked for the class, and more than 37 times the $269 average net recovery of the unnamed class members").

Wallace v. Countrywide Home Loans, Inc., 22 Wage & Hour Cas. 2d (BNA) 849, 2014 WL 5819870, *4 (C.D. Cal. 2014) (reducing requested incentive awards from $50,000 to $1,500 for each named plaintiff because "individual class members are entitled to receive no more than $1,500 under the settlement," and noting that "[a]n incentive award 33 times greater than the maximum possible recovery of other individual class members creates a 'significant disparity,' " particularly as the named plaintiffs did not appear to have suffered "any particular risks or hardships caused by their participation in this litigation").

**Tenth Circuit (District Court)**

In re Sprint Corp. ERISA Litigation, 443 F. Supp. 2d 1249, 1271, 39 Employee Benefits Cas. (BNA) 2810 (D. Kan. 2006) (reducing requested incentive awards from $15,000 to $5,000 for each named plaintiff, despite multi-million dollar settlement amount, because, *inter alia*, no individual class member stood to recover more than $1,000 from the settlement).

[16]**Second Circuit (District Court)**

Ramirez v. Ricoh Americas Corp., 2015 WL 413305, *5 (S.D.N.Y. 2015) ("The fact that the plaintiff requests $20,000, or 5.71% of the settlement fund, as his service award, and there is absent from the motion record any evidence of the reaction of putative class members to the settlement, are of concern to the Court. The Court finds that this factor does not militate in favor of granting the plaintiff's motion.").

Gortat v. Capala Bros., 949 F. Supp. 2d 374, 378, 22 Wage & Hour Cas. 2d (BNA) 1407 (E.D.N.Y. 2013), aff'd, 568 Fed. Appx. 78, 22 Wage & Hour Cas. 2d (BNA) 1420 (2d Cir. 2014) (declining to grant incentive awards that would have constituted 61.74% of the total award granted to all plaintiffs, calling this amount "breathtaking" and explaining that it would have been "an exercise of discretion inexcusably abused").

Sheppard v. Consolidated Edison Co. of New York, Inc., 2002 WL 2003206, *6 (E.D.N.Y. 2002) ("In awarding these payments as part of a

§ 17:18                                    NEWBERG ON CLASS ACTIONS

Among these practices, perhaps the starkest and surely

---

settlement, a court must ensure that the named plaintiffs, as fiduciaries to the class, have not been tempted to receive high incentive awards in exchange for accepting suboptimal settlements for absent class members. A particularly suspect arrangement exists where the incentive payments are greatly disproportionate to the recovery set aside for absent class members . . .").

Dornberger v. Metropolitan Life Ins. Co., 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (approving incentive awards because, *inter alia*, "these incentive awards are small in relation to the $13 million . . . fund from which the awards will be made").

**Ninth Circuit**

Staton v. Boeing Co., 327 F.3d 938, 948, 978, 55 Fed. R. Serv. 3d 1299 (9th Cir. 2003) (striking settlement and denying incentive awards because, *inter alia*, the named plaintiffs constituted "less than two percent of the class" but would have received "more than half the monetary award").

Chavez v. Lumber Liquidators, Inc., 2015 WL 2174168, *4 (N.D. Cal. 2015) (denying preliminary approval of settlement because "[t]he $10,000 currently earmarked for [the class representative] is more than 7 percent of the total settlement fund, more than 15 percent of the total amount of the common fund earmarked for the class, and more than 37 times the $269 average net recovery of the unnamed class members").

Bellinghausen v. Tractor Supply Company, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (denying a $15,000 award in part because this would have constituted "2 percent of the gross settlement funds, which is higher than what other courts have found to be acceptable").

Ontiveros v. Zamora, 2014 WL 3057506, *9 (E.D. Cal. 2014) ("An incentive award consisting of one percent of the common fund is unusually high, and some courts have been reticent to approve incentive awards that constituted an even smaller portion of the common fund.").

Daniels v. Aeropostale West, Inc., 22 Wage & Hour Cas. 2d (BNA) 1276, 2014 WL 2215708, *7 (N.D. Cal. 2014) (denying $5,000 incentive award because the request was "excessive" considering that the total proposed settlement amount was $8,645.61).

Ko v. Natura Pet Products, Inc., 2012 WL 3945541, *15 (N.D. Cal. 2012), appeal dismissed, (9th Cir. 12-17296)(Apr. 24, 2013) (reducing incentive award to $5,000 because the requested sum of $20,000 would have been "excessive under the circumstances" as it would have constituted "approximately 1% percent [sic] of the gross settlement amount").

Sandoval v. Tharaldson Employee Management, Inc., 2010 WL 2486346, *10 (C.D. Cal. 2010) (reducing incentive award to $7,500 because this figure constituted "1% of the gross settlement" and noting that the requested sum of $12,500 would have been "excessive under the circumstances").

Krzesniak v. Cendant Corp., 2008 WL 4291539, *2 (N.D. Cal. 2008) (reducing incentive award from $15,000 to $1,500 and noting that approved incentive awards in three other cases represented 0.001%, 0.007%,

the most beguiling is the relationship between the incentive award amount and each class member's individual recovery. The problem is that most class actions are for small amounts of money, on the one hand, while incentive awards are meant to compensate class representatives for their service to the class and for the risks that they encountered in providing that service, on the other. However, there is no obvious connection between the size of each class member's individual claims and the appropriate compensation for the named plaintiff's services. The Ninth Circuit noted in one case that "[t]here is a serious question whether class representatives could be expected to fairly evaluate whether awards ranging from $26 to $750 is a fair settlement value when they would receive $5,000 incentive awards."[17] The proposed incentive award was anywhere from 192 to 6 times greater than a class member's recovery. The former number surely serves the Ninth Circuit's point, but does the latter? Moreover, even when the proposed $5,000 incentive award is almost 200 times greater than a class member's recovery, if the class representatives have invested significant amounts of time and, for example, faced retaliation or other risks for their efforts, $5,000 does not seem that extravagant a payment.

It is completely understandable that courts would worry about this disparity and a positive development that they in fact do. But there is an aspect of the disparity that is built into the very nature of the endeavor: in class suits, the claims will almost invariably be small in nature, yet the class representatives most worthy of an award will typically be those who worked the hardest and suffered most.

### § 17:19   Incentive awards in securities class actions under the PSLRA

The Private Securities Litigation Reform Act of 1995 ("PSLRA") appears to prohibit incentive awards to class

---

and 0.003% of total payments to class members while $15,000 in the present case would have represented 0.052% of the total payments).

[17]Radcliffe v. Experian Information Solutions Inc., 715 F.3d 1157, 1165 (9th Cir. 2013).

representatives in securities class actions,[1] though the actual practices under the PSLRA are more nuanced.[2] With the PSLRA, Congress aimed to transfer control of securities class actions from small-stakes clients (who Congress believed to be controlled by class counsel) to large institutional investors (who Congress thought might better monitor and control class counsel). Imposing limitations on incentive awards was part of that effort, though many critics have noted that if Congress' aim was to encourage institutional involvement, its crackdown on incentive payments may have been counterproductive.[3]

The PSLRA appears to bar incentive awards in two interconnected sections. *First*, 15 U.S.C. § 78u-4(a)(2)(A) requires a plaintiff seeking to serve as a class representative to file a sworn certification with her complaint in which she avers to a series of items, including that she "will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's *pro rata* share of any recovery, except as ordered or approved by the court in accordance with paragraph (4)." *Second,* 15 U.S.C. § 78u-4(a)(4) states:

The share of any final judgment or of any settlement that is

_____

[Section 17:19]

[1]*See* 15 U.S.C.A. § 78u-4(a)(2)(A)(vi), (4) (2010).

[2]In re Enron Corp. Securities, Derivative & "ERISA" Litigation, 2008 WL 2714176, *1 (S.D. Tex. 2008) ("There is a rigorous debate whether it is proper in class actions generally to approve an incentive award to named plaintiffs because these class representatives take risks and perform services that benefit the class." (citing **Newberg on Class Actions**)).

[3]Theodore Eisenberg and Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1303, 1347 (2006) ("A flat rule such as the PSLRA's ban on payments to class representatives not only is not clearly supported but may be counterproductive. The large-scale investors that Congress hoped to have serve as class representatives after the PSLRA may be the investors most sensitive to recovering their opportunity and other costs if they do serve. Therefore, to the extent these sought-after representatives are discouraged from serving by the anti-incentive-award rule, the rule may compete with the perhaps more important goal of securing sophisticated and large representative plaintiffs.").

*See generally* Richard A. Nagareda, Restitution, Rent Extraction, and Class Representatives: Implications of Incentive Awards, 53 UCLA L. Rev. 1483 (2006).

awarded to a representative party serving on behalf of a class shall be equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class. Nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class.

Most,[4] though not all,[5] courts have read these provisions as barring incentive awards.

The peculiar aspect of these provisions is that although they appear to bar incentive awards, they simultaneously

---

[4]In re Schering-Plough Corp. Enhance Securities Litigation, 2013 WL 5505744, *37 (D.N.J. 2013), appeal dismissed, (3rd Circ. 13-4328)(Apr. 17, 2014) ("Although the PSLRA specifically prohibits incentive awards or 'bonuses' to Lead Plaintiffs . . .").

Ray v. Lundstrom, Fed. Sec. L. Rep. (CCH) P 97083, 2012 WL 5458425, *3 (D. Neb. 2012) ("Although the PSLRA does not permit incentive awards . . .").

Robles v. Brake Masters Systems, Inc., 2011 WL 9717448, *17 (D.N.M. 2011) ("Congress has expressed hostility to incentive awards in the [PSLRA] which precludes incentive awards in securities-fraud litigation.").

In re TVIA Inc. Securities Litigation, 2008 WL 2693811, *2 (N.D. Cal. 2008) ("[T]his court has itself previously found that in light of the text of § 78u-4(a)(4), and the clear intention to eliminate financial incentives, bonuses and bounties for serving as lead plaintiff, incentive awards and compensatory awards falling outside the costs and expenses specified by the PSLRA are inconsistent with the express goals of § 78u-4(a) (4)." (citing In re ESS Technology, Inc. Securities Litigation, 2007 WL 3231729, *4 (N.D. Cal. 2007))).

Smith v. Dominion Bridge Corp., Fed. Sec. L. Rep. (CCH) P 94205, 2007 WL 1101272, *12 (E.D. Pa. 2007) ("The district courts that have awarded incentive awards or requested amounts without requiring any explanation or detailing of the alleged costs in cases where PSLRA clearly applies, appear to be ignoring the clear language of PSLRA.").

Swack v. Credit Suisse First Boston, LLC, Fed. Sec. L. Rep. (CCH) P 94106, 2006 WL 2987053, *5 (D. Mass. 2006) ("I find that a representative plaintiff is only entitled under the PSLRA to an award of 'reasonable costs and expenses' over and above his or her pro rata share of the recovery, and not to a traditional 'compensation' or 'incentive' award. The representative plaintiff's significant stake in the outcome of the litigation is assumed to be sufficient incentive to remain involved in the litigation and to incur such expenses in the first place.").

[5]In re Heritage Bond Litigation, 2005 WL 1594403, *17 (C.D. Cal. 2005) (stating that "[i]t is within this Court's discretion to award incentive fees to named class representatives in a class action suit" and proceeding to do so).

§ 17:19                                  NEWBERG ON CLASS ACTIONS

permit named plaintiffs to be reimbursed for "reasonable costs and expenses (including lost wages) . . ."[6] Courts therefore regularly award representative plaintiffs monies under these sections,[7] and such awards are similar to service or incentive awards in regular class suits. Where the courts have split somewhat, however, is in how much documentation they require.[8] Some courts require little documentation and hence appear to treat the reimbursement provision as

---

[6] See 15 U.S.C.A. § 78u-4(a)(4).

[7] In re Schering-Plough Corp. Enhance Securities Litigation, 2013 WL 5505744, *37 (D.N.J. 2013), appeal dismissed, (3rd Circ. 13-4328)(Apr. 17, 2014) ("Reasonable payments to compensate class representatives for the time and effort devoted by them have been approved.").

In re American Intern. Group, Inc. Securities Litigation, 2012 WL 345509, *6 (S.D.N.Y. 2012) ("Courts in this Circuit routinely award . . . costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." (internal quotation marks omitted)).

In re Giant Interactive Group, Inc. Securities Litigation, 279 F.R.D. 151, 166 (S.D.N.Y. 2011) (awarding incentive awards to four named plaintiffs and stating that "the Court finds that the lead plaintiffs devoted substantial effort and time to this case, including reviewing filings, producing documents, and travelling to be deposed, making these requests for awards reasonable").

In re Marsh & McLennan Companies, Inc. Securities Litigation, 2009 WL 5178546, *21 (S.D.N.Y. 2009) (awarding a combined $214,657 to two institutional lead plaintiffs).

In re American Business Financial Services Inc. Noteholders Ltigiation, Fed. Sec. L. Rep. (CCH) P 95015, 2008 WL 4974782, *19 (E.D. Pa. 2008) (awarding costs and expenses to lead plaintiffs).

Hicks v. Stanley, Fed. Sec. L. Rep. (CCH) P 93,579, 2005 WL 2757792, *10 (S.D.N.Y. 2005) ("Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place.").

In re WorldCom, Inc. ERISA Litigation, 33 Employee Benefits Cas. (BNA) 2291, 59 Fed. R. Serv. 3d 1170 (S.D.N.Y. 2004), order clarified, 2004 WL 2922083 (S.D.N.Y. 2004) (awarding $5,000 to each of the three named plaintiffs because they had "performed an important service to the class and the burden of this commitment deserves to be recognized through an award from the common fund").

[8] In re Enron Corp. Securities, Derivative & "ERISA" Litigation, 2008 WL 2714176, *2 (S.D. Tex. 2008) (noting the "split between courts which have read the [PSLRA] narrowly and strictly limited reimburse-

quite similar to a flat incentive award.[9] Other courts require

ment to actual costs and expenses incurred, many only when proven with detailed evidence, and other courts that have granted lead plaintiffs incentive awards to encourage high quality monitoring and not insisted that alleged costs and expenses to be detailed or even limited to 'costs and expenses directly relating to representation of the class" (footnote omitted) (internal quotation marks omitted)).

[9]In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litigation, 364 F. Supp. 2d 980, 1000, Fed. Sec. L. Rep. (CCH) P 93239 (D. Minn. 2005) ("Lead plaintiffs here have fully discharged their PSLRA obligations and have been actively involved throughout the litigation. These individuals communicated with counsel throughout the litigation, reviewed counsels' submissions, indicated a willingness to appear at trial, and were kept informed of the settlement negotiations, all to effectuate the policies underlying the federal securities laws. The court, therefore, awards the $100,000 collectively to the lead plaintiff group to be distributed among the eight lead plaintiffs in a manner that plaintiffs' co-lead counsel shall determine in their discretion.").

Hicks v. Stanley, Fed. Sec. L. Rep. (CCH) P 93,579, 2005 WL 2757792, *10 (S.D.N.Y. 2005) ("Finally, the court approves the reimbursement of expenses to lead plaintiff Nicholson pursuant to plaintiff's motion. Nicholson spent considerable time discharging his responsibilities as lead plaintiff and class representative. The PSLRA permits lead plaintiffs to recover reasonable costs and expenses related to their representation of the class. Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." (citation omitted)).

Denney v. Jenkens & Gilchrist, 230 F.R.D. 317, 355, R.I.C.O. Bus. Disp. Guide (CCH) P 10837 (S.D.N.Y. 2005), aff'd in part, vacated in part, remanded, 443 F.3d 253, R.I.C.O. Bus. Disp. Guide (CCH) P 11050 (2d Cir. 2006) ("In granting compensatory awards to the representative plaintiff in PSLRA class actions, courts consider the circumstances, including personal risks incurred by the plaintiff in becoming a lead plaintiff, the time and effort expended by that plaintiff in prosecuting the litigation, any other burdens sustained by the plaintiff in lending himself or herself to prosecuting the claim, and the ultimate recovery.").

In re WorldCom, Inc. ERISA Litigation, 33 Employee Benefits Cas. (BNA) 2291, 59 Fed. R. Serv. 3d 1170 (S.D.N.Y. 2004), order clarified on other grounds, 2004 WL 2922083 (S.D.N.Y. 2004) (awarding the three named plaintiffs $5,000 each because "the three plaintiffs have been intimately involved in every step of the litigation. The named plaintiffs have performed an important service to the class and the burden of this commitment deserves to be recognized through an award from the common fund.").

In re Infospace, Inc., 330 F. Supp. 2d 1203, 1216 (W.D. Wash. 2004) ("Lead Plaintiffs Amir Heshmatpour and Ronald Wyles on behalf of

§ **17:19**                                          NEWBERG ON CLASS ACTIONS

clear proof of expenses[10] and hence read the provision more

_____

Coastline Corporation Ltd. have requested reimbursement of their costs and expenses. A court may award 'reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative serving on behalf of the class.' Amir Heshmatpour requests $5,000, and Ronald Wyles requests $6,600. The Court finds these amounts to be reasonable." (quoting 15 U.S.C.A. § 78U-4(a)(4))).

[10]In re TVIA Inc. Securities Litigation, 2008 WL 2693811, *2 (N.D. Cal. 2008) (finding "no evidence in the conclusory statements provided in [lead plaintiff's] declaration that the compensation he seeks is reimbursement for costs, expenses or lost wages, reasonable or otherwise, as required by the text of § 78u-4(a)(4)" and thus declining to award the requested $15,000 compensation).

Smith v. Dominion Bridge Corp., Fed. Sec. L. Rep. (CCH) P 94205, 2007 WL 1101272, *12 (E.D. Pa. 2007) ("The class representative failed to provide this court with any evidence of actual expenses incurred, lost wages, lost vacation time, or lost business opportunities. I conclude that the class representative has failed to demonstrate that he has incurred any 'reasonable costs and expenses' that can be awarded under PSLRA. Thus, the court will not award [named plaintiff] anything beyond his pro rata share of the settlement fund.").

In Re Ntl, Inc. Securities Litigation, 2007 WL 623808, *10 (S.D.N.Y. 2007) ("Lead Plaintiffs have signed certifications pursuant to the PSLRA, but their affidavits fail to explain how they determined their asserted hourly 'lost wages.' Without a better explanation for claims of $200–800 per hour of 'lost wages,' the Court should decline to award such amounts." (citation omitted)).

In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation, 2007 WL 313474, *25 (S.D.N.Y. 2007) ("Although [the lead plaintiff] claims to have spent time during her work day performing her duties as lead plaintiff, she nevertheless fails to claim any actual expenses incurred, or wages or business opportunities she lost, as a result of acting as lead plaintiff. Under the PLSRA, it is simply not enough . . . to assert that she took time out of her workday and that her time is conservatively valued at $500 per hour. Accordingly, the Court declines to award reimbursement to [lead plaintiff].").

Swack v. Credit Suisse First Boston, LLC, Fed. Sec. L. Rep. (CCH) P 94106, 2006 WL 2987053, *5 (D. Mass. 2006) ("Since Congress specifically chose to limit recovery in PSLRA cases to reasonable costs and expenses (including lost wages) directly relating to the representation of the class, . . . I find that a representative plaintiff must provide the court with meaningful evidence demonstrating his or her actual costs and expenses (including lost wages) directly relating to the representation of the class . . ." (internal quotation marks omitted)).

Abrams v. Van Kampen Funds, Inc., Fed. Sec. L. Rep. (CCH) P 93,648, 2006 WL 163023, *4 (N.D. Ill. 2006) ("Lead plaintiffs do not contend that any portion of the requested amount represents any actual expenses that either has incurred. They do not claim that they missed any

narrowly. In particular, courts are more accepting of familiar nontaxable costs (such as documented travel expenses and fax, photocopy, and telephone charges)[11] but are more skeptical of lost wages or business opportunities, as the latter are often particularly difficult to document.[12]

---

work or other earning opportunity in order to participate in the litigation. Under the PSLRA, lead plaintiffs cannot be awarded additional compensation. The request for a compensatory award will be denied.").

In re KeySpan Corp. Securities Litigation, Fed. Sec. L. Rep. (CCH) P 93534, 2005 WL 3093399, *21 (E.D.N.Y. 2005) ("Counsel fail to provide *any* basis for determining what reasonable costs and expenses were incurred [by lead plaintiffs]. Counsel have not shown how the time expended by the Class Representative and Lead Plaintiffs resulted in actual losses, whether in the form of diminishment in wages, lost sales commissions, missed business opportunities, use of leave or vacation time or actual expenses incurred. Without any proof or detail in this regard, I recommend that Class Representative and Lead Plaintiffs not be awarded any payment beyond their *pro rata* share of the settlement.").

In re AMF Bowling, 334 F. Supp. 2d 462, 470 (S.D.N.Y. 2004) (finding no congressional intent for undocumented reimbursements under the PSLRA and denying requested reimbursements to class representatives in part because of the lack of such documentation).

[11]For a discussion of what constitute nontaxable costs, *see* Rubenstein, 5 **Newberg on Class Actions** § 16:5 (5th ed.).

[12]In re Genta Securities Litigation, 70 Fed. R. Serv. 3d 931 (D.N.J. 2008) ("This Court accepts [lead plaintiff's] assertion that he incurred $5250 in costs from travel expenses, fax and photocopy expenses, and telephone charges. However, [lead plaintiff] has not submitted any evidence showing that he lost wages or business opportunities due to the time he spent working on the instant litigation. Although [lead plaintiff] estimated that he spent 222.36 hours performing duties related to this action, and established his discounted billing rate as $225 per hour, [he] has failed to show that his contributions to this action foreclosed him from obtaining business opportunities or earning wages.").

Smith v. Dominion Bridge Corp., Fed. Sec. L. Rep. (CCH) P 94205, 2007 WL 1101272, *12 (E.D. Pa. 2007) ("The class representative failed to provide this court with any evidence of actual expenses incurred, lost wages, lost vacation time, or lost business opportunities. I conclude that the class representative has failed to demonstrate that he has incurred any 'reasonable costs and expenses' that can be awarded under PSLRA. Thus, the court will not award [named plaintiff] anything beyond his pro rata share of the settlement fund.").

In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation, 2007 WL 313474, *25 (S.D.N.Y. 2007) ("Although [the lead plaintiff] claims to have spent time during her work day performing her duties as lead plaintiff, she nevertheless fails to claim any actual expenses incurred, or wages or business opportunities she lost, as a result of acting as lead

Thus, while Congress sought to limit incentive awards in class suits when it enacted the PSLRA, it did allow some payments to be made to class representatives, and courts have awarded such payments. Empirical data on incentive awards, described elsewhere in the Treatise,[13] nonetheless demonstrate that class representatives are least likely to get incentive awards in securities suits than in any other type of case. One study of cases resolved between 1993–2002 (which therefore straddles the enactment of the PSLRA) reported that courts granted incentive awards in 27.8% of all cases but 24.5% of securities cases.[14] A later study of cases resolved between 2006–2011 reported that courts granted incentive awards in 71.3% of all cases but in only 38.7% of securities cases.[15] To be clear, these data are not differentiating between cases in which counsel never applied for awards and those in which the court rejected an award, so the source of the lower award rate is unclear. Yet its existence is not.

The peculiarity about this state of affairs is that in enacting the PSLRA, Congress explicitly wanted class representatives to seize control of securities cases from class counsel. To accomplish that end, it sought to engage institutional investors in the endeavor by holding that the largest shareholder could be named the lead plaintiff in the case and authorized to hire lead counsel. Yet Congress provided very little incentive for those institutions to undertake that work and, in curtailing incentive awards, it destroyed one of the few incentives that did exist. Moreover, as Professor Nagareda argued some years ago, if the point of incentive awards is to reward *quality monitoring*, it seems particularly odd to limit awards in the very cases in which the goal is to

---

plaintiff. Under the PLRSA, it is simply not enough . . . to assert that she took time out of her workday and that her time is conservatively valued at $500 per hour. Accordingly, the Court declines to award reimbursement to [lead plaintiff].").

[13]*See* Rubenstein, 5 **Newberg on Class Actions** §§ 17:7 to 17:8 (5th ed.).

[14]Theodore Eisenberg and Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1303, 1323 tbl.2 (2006).

[15]William B. Rubenstein and Rajat Krishna, *Class Action Incentive Awards: A Comprehensive Empirical Study* (draft on file with author).

encourage quality monitors:[16]

> The PSLRA hinders the practical achievement of its own ideals for class representatives by confining incentive awards to restitution and rejecting complementary notions of reward. By limiting awards to "reasonable costs and expenses," the PSLRA seeks to fight the proverbial last war—to respond to perceived abuses in the pre-PSLRA era rather than to design a legal framework for awards under the changed arrangements for lead plaintiffs promoted by the PSLRA itself. When it comes to service as a PSLRA lead plaintiff, one substantial sticking point for many institutional investors appears to be precisely the prospect of merely gaining restitution for their efforts, without the possibility of reward beyond their pro rata share of any class-wide recovery. This result is ironic, to say the least, when the law consciously seeks to induce high-quality monitoring from persons who devote their professional lives to seeking big financial rewards, not just restitution for the costs and expenses of their efforts.[17]

In short, the PSLRA sends a mixed message: it aims to encourage large stake holders to intervene and seize control of such cases while insisting that they not be compensated in the normal manner for doing so.

## § 17:20   Incentive awards for objectors

As discussed in a prior section,[1] class members who provide a service to the class are eligible to apply for an incentive award from the court. Typically, it is the class representative or named plaintiff who is the applicant, as these

---

[16]Richard A. Nagareda, Restitution, Rent Extraction, and Class Representatives: Implications of Incentive Awards, 53 UCLA L. Rev. 1483, 1491 (2006) ("The embrace of high-quality monitoring as a public policy goal and the experience with institutional investors in the post-PSLRA period, together, highlight the anomaly of awards confined to 'reasonable costs and expenses.' In this context, the law wants high-quality monitoring to occur but has encountered obstacles in achieving that goal. If anything, the logic behind installing institutional investors as lead plaintiffs supports a more—not less—wide-ranging inquiry for incentive awards in securities litigation.").

[17]Richard A. Nagareda, Restitution, Rent Extraction, and Class Representatives: Implications of Incentive Awards, 53 UCLA L. Rev. 1483, 1491 (2006).

**[Section 17:20]**

[1]For a discussion of eligibility for incentive awards, *see* Rubenstein, 5 **Newberg on Class Actions** § 17:6 (5th ed.).

parties undertake special functions on behalf of absent class members, sometimes face unique risks in stepping forward to represent the class, and generally serve an important function in enabling a class action by their service to the class.[2] Class members who object to a proposed settlement or fee award and are in some way successful in reshaping the settlement similarly serve an important function in class action practice: because the class representative and class counsel are largely unmonitored agents of the class, those class members who take the time to scrutinize proposed settlements and provide their reactions to the court may assist the court in undertaking its oversight function and serve the class accordingly.[3] Counsel who represent objectors have therefore sought incentive awards on behalf of their objector clients.

Three issues are presented by such proposals: *first,* whether objectors are entitled to seek incentive awards; *second,* if they are, what are the circumstances in which courts should provide such awards; and *third,* if awards are provided, what amount is appropriate.

*Eligibility.* The answer to the first question seems clear: an objector is necessarily a class member and if that class member provides a service to the class, she stands in a similar position to the class representative entitled to an award and should therefore be similarly entitled. Many courts have so held either directly,[4] or indirectly by entertaining objector incentive award petitions, while few courts have held that objectors are never entitled to seek an award.[5] At least one

---

[2]For a discussion of these rationale that underlie incentive awards, *see* Rubenstein, 5 **Newberg on Class Actions** § 17:3 (5th ed.).

[3]In re Cardinal Health, Inc. Securities Litigation, 550 F. Supp. 2d 751, 753, Fed. Sec. L. Rep. (CCH) P 94714 (S.D. Ohio 2008) (noting that objectors can "add value to the class-action settlement process by: (1) transforming the fairness hearing into a truly adversarial proceeding; (2) supplying the Court with both precedent and argument to gauge the reasonableness of the settlement and lead counsel's fee request; and (3) preventing collusion between lead plaintiff and defendants").

[4]Hartless v. Clorox Co., 273 F.R.D. 630, 647 (S.D. Cal. 2011), aff'd in part, 473 Fed. Appx. 716 (9th Cir. 2012) (recognizing that incentive awards for objectors are "sometimes available . . . if the objection confers a significant benefit to the class").

[5]Rose v. Bank of America Corp., 2015 WL 2379562, *3 (N.D. Cal.

court has entertained a request from a *pro se* objector.[6] Occasionally, class representatives who later become objectors receive incentive awards, but in granting those awards, the courts have not isolated their service as objectors as independently warranting an award.[7] At least one court has denied an objector incentive award in a PSLRA case on the grounds that incentive awards are barred by that statute.[8]

*Standard of review.* Courts generally will approve an

---

2015) ("Without a legal or factual argument, the Objectors plainly request an incentive award of $2,000 each 'for stepping out to protect and serve the class.' In the absence of legal authority that would allow for such an award to an objector, coupled with the complete lack of an explanation as to why such an award would be justified, this request is denied." (citation omitted)).

In re Celexa and Lexapro Marketing and Sales Practices Litigation, 2014 WL 4446464, *10 (D. Mass. 2014) (denying objector's request for a $10,000 incentive award because the objector "invoke[d] no authority for her request for an incentive award to a plaintiff who is not a class representative").

In re classmates.com Consol. Litigation, 2012 WL 3854501, *8–9 (W.D. Wash. 2012) (declining to award an incentive award because "[t]he court is aware of no authority authorizing a 'service award' to an objector" and noting that "[i]f there were such authority, the court assumes that it would treat a participation award to an objector similarly to a participation award to a class representative" but finding that the "objections did not contribute significantly to obtaining any benefit for the class").

[6]UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Min. Corp., 352 Fed. Appx. 232, 237-38 (10th Cir. 2009) (entertaining a request for an incentive award but rejecting objector's "invitation to apply to his pro se request for an incentive award the same standards applicable to an objector's request for an attorney fee" because the pro se objector's "position is not parallel to that of an objector seeking payment for his attorney fees").

[7]Martin v. Foster Wheeler Energy Corp., 2008 WL 906472, *9 (M.D. Pa. 2008) (granting incentive awards to two class representatives who later became objectors "for their work as Class Representatives from the inception of the litigation").

Lazy Oil Co. v. Wotco Corp., 95 F. Supp. 2d 290, 292 (W.D. Pa. 1997), aff'd, 166 F.3d 581, 1999-1 Trade Cas. (CCH) ¶ 72420, 42 Fed. R. Serv. 3d 669 (3d Cir. 1999) (granting incentive award to a class representative for his service to the class before he became an objector, but finding that his efforts opposing the settlement "have not enured to the benefit of class members").

[8]In re Enron Corp. Securities, Derivative & "ERISA" Litigation, 2008 WL 4178151, *8 (S.D. Tex. 2008) (denying incentive award for services as class representatives and objectors because "such incentive awards are contrary to the policy behind the PSLRA").

award for an objector if she can prove that her objections "conferred a benefit on the class."[9] Thus, for example, an "objector whose arguments result in a reduction of attorney-fee and expense awards provides a benefit to the class."[10] However, courts—understandably skeptical of repeat objectors who recycle formulaic objections—tend to be dismissive of many objectors' contentions about their achievements.[11] As the Tenth Circuit has stated, "because the court is charged with protecting the interests of the class, general, garden-variety objections usually are not helpful to the court, nor do they benefit the class."[12] This position is consistent with the manner in which courts approach requests for fees from objectors' counsel.[13] Thus, absent evidence that objectors' work benefited the class or put them at risk, courts

---

For a discussion of the PSLRA's approach to incentive awards, *see* Rubenstein, 5 **Newberg on Class Actions** § 17:19 (5th ed.).

[9]UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Min. Corp., 352 Fed. Appx. 232, 233, 236 (10th Cir. 2009) (affirming the district court's denial of an incentive award to an objector "on the ground that his efforts did not benefit the class").

Dewey v. Volkswagen of America, 909 F. Supp. 2d 373, 398–99 (D.N.J. 2012), aff'd, 558 Fed. Appx. 191 (3d Cir. 2014), cert. denied, 135 S. Ct. 231, 190 L. Ed. 2d 135 (2014) ("In deciding whether an objector deserves an incentive award, courts have considered whether: (1) the objector's particular efforts conferred a benefit on the class; (2) the objector incurred personal risk; and/or (3) the objector was substantively involved in the litigation.").

[10]UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Min. Corp., 352 Fed. Appx. 232, 236 (10th Cir. 2009).

[11]UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Min. Corp., 352 Fed. Appx. 232, 236-37 (10th Cir. 2009) (affirming decision denying incentive award to pro se objector, noting that the lower court had concluded that the "objections did not confer a benefit on the class" because they were "general in nature, largely unsupported by specific citation to the record or to supporting caselaw, and lacking in meaningful analysis" and because "[the objector] had not identified any argument unique to his presentation" and "had not point[ed] to any argument of his that was both asserted in greater detail than other objectors and adopted in substance by the Special Master" (internal quotation marks omitted)).

[12]UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Min. Corp., 352 Fed. Appx. 232, 237 (10th Cir. 2009).

[13]*See, e.g.*, Rodriguez v. Disner, 688 F.3d 645, 658–59, 2012-2 Trade Cas. (CCH) ¶ 78006 (9th Cir. 2012) ("Nor is it error to deny fees to objectors whose work is duplicative, or who merely echo each others' arguments and confer no unique benefit to the class."). For a discussion of

deny awards.[14]

---

objectors' entitlement to fees, *see* Rubenstein, 5 **Newberg on Class Actions**
§ 15:60 (5th ed.).

[14]McDonough v. Toys R Us, Inc., 2015-1 Trade Cas. (CCH) ¶ 79040,
2015 WL 263562, *30 (E.D. Pa. 2015) (granting one objector an incentive
award of $1,000 because "[a]lthough [the objector] did not participate in
discovery, nor was he deposed, his objection provided a significant benefit
to the class" but denying incentive awards to two other objectors because
"they have not demonstrated that their objections provided a benefit to
the class").

Gascho v. Global Fitness Holdings, LLC, 2014 WL 3543819, *6
(S.D. Ohio 2014) (denying attorney's fees and incentive awards to objec-
tors because they "have not provided any benefit to the Class").

Fraley v. Facebook, Inc., 2014 WL 806072, *1–2 (N.D. Cal. 2014)
(denying both attorney's fees and incentive award to objector because his
objections did not "contribute materially to the proceeding").

In re classmates.com Consol. Litigation, 2012 WL 3854501, *8–9
(W.D. Wash. 2012) (denying an incentive award because "[t]he court is
aware of no authority authorizing a 'service award' to an objector" and
noting that "[i]f there were such authority, the court assumes that it
would treat a participation award to an objector similarly to a participa-
tion award to a class representative" but finding that the "objections did
not contribute significantly to obtaining any benefit for the class").

Hartless v. Clorox Co., 273 F.R.D. 630, 647 (S.D. Cal. 2011), aff'd in
part, 473 Fed. Appx. 716 (9th Cir. 2012) (denying objector's request for
incentive award because, *inter alia*, her objections "did not confer a benefit
on the class or add anything to this decision").

Parker v. Time Warner Entertainment Co., L.P., 631 F. Supp. 2d
242, 279 (E.D.N.Y. 2009) (denying incentive awards to objectors because
"[t]here is no indication that the [objectors] themselves were put at risk or
inconvenienced in any meaningful way by lending their names to the
objections pursued by their counsel").

Perez v. Asurion Corp., 2007 WL 2591174, *1 (S.D. Fla. 2007) (deny-
ing incentive award to objector because there was no evidence that the
objector "spent a considerable amount of time assisting with the prosecu-
tion of this case").

In re Educational Testing Service Praxis Principles of Learning and
Teaching, Grades 7–12 Litigation, 447 F. Supp. 2d 612, 634, 213 Ed. Law
Rep. 493 (E.D. La. 2006) (denying incentive awards to objectors because
only one of the seven objections offered was meritorious, the court would
have recognized that the attorney's fee award was too high even absent
that objection, and the "objectors' other objections added nothing to the
litigation and, if anything, only prolonged it").

In re Excess Value Ins. Coverage Litigation, 598 F. Supp. 2d 380,
393 (S.D.N.Y. 2005) (denying objectors' request for incentive rewards
because "the Class received relatively little Settlement Value and Objec-
tors' efforts have not been shown appreciably to have benefitted the Class"
and "the Court needed little or no assistance from the Objectors").

*Amount.* Objector incentive awards are modest. Class representatives tend to serve the class for years, undertake a series of tasks in that function, and face specific risks. Empirical evidence shows that incentive awards for those class representatives average between $10,000–$15,000 per class representative.[15] By contrast, objectors tend to do little more than file a single pleading at the conclusion of the case, possibly appear at the fairness hearing, and plausibly pursue an appeal if the objection is denied.[16] Their service is far more limited than that of the class representative and—despite arguments to the contrary[17]—it is unlikely they would face significant risks by making an objection. Courts

---

[15]Theodore Eisenberg and Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1303, 1307–08 (2006) (reporting that incentive awards are granted in 28% of class suits and that the average award per class representative is about $16,000, with the median award per class representative being closer to $4,000).

[16]Lonardo v. Travelers Indem. Co., 706 F. Supp. 2d 766, 813 (N.D. Ohio 2010), on reconsideration in part, (July 21, 2010) ("The Court held that the named class representatives in this case were entitled to a $5,000 incentive award because each submitted an affidavit describing his extensive involvement in the litigation and assistance to Class Counsel. In contrast, there is no evidence that [the objector] devoted substantial time or effort to this case. He correctly notes that he 'voluntarily involved himself in a case impacting over 400,000 class members,' but does not describe any further involvement with this litigation. Based on that nominal contribution, he is entitled to the nominal sum of $500.00 as an incentive award." (citation omitted)).

[17]Dewey v. Volkswagen of America, 909 F. Supp. 2d 373, 399 (D.N.J. 2012), aff'd, 558 Fed. Appx. 191 (3d Cir. 2014), cert. denied, 135 S. Ct. 231, 190 L. Ed. 2d 135 (2014) (reporting objectors' argument that "in challenging the approval of the settlement, they incurred a substantial personal risk by: (1) exposing themselves to the risk of harassing discovery and private investigation from the plaintiffs' attorneys, and (2) posting an appeal bond of $25,000" (citation omitted) (internal quotation marks omitted)).

Park v. Thomson Corp., 633 F. Supp. 2d 8, 14, 2009-2 Trade Cas. (CCH) ¶ 76775 (S.D.N.Y. 2009) (reporting objectors' argument that they were entitled to an award "because they faced the risk of a Rule 11 sanctions motion threatened by Plaintiffs' counsel" but rejecting this argument because "Rule 11 sanctions are a risk borne by all litigants").

In re Apple Inc. Securities Litigation, Fed. Sec. L. Rep. (CCH) P 96312, 2011 WL 1877988, *4 (N.D. Cal. 2011) (reporting objector's argument that he had "exposed himself to the risk of harassing discovery and quite likely faced private investigation from the plaintiffs' attorneys").

have therefore awarded small sums to successful objectors —$500 in two cases,[18] $1,000 in two others,[19] $1,500 in one[20]—noting that "[t]he amount of the incentive award is related to the personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit."[21]

In sum, while objectors are entitled to seek incentive awards, courts are quite wary of providing such awards and do so only in the rare circumstance where the objector's work substantially served the class's interest, and even then only in nominal sums.

---

[18]Dewey v. Volkswagen of America, 909 F. Supp. 2d 373, 400 (D.N.J. 2012), aff'd, 558 Fed. Appx. 191 (3d Cir. 2014), cert. denied, 135 S. Ct. 231, 190 L. Ed. 2d 135 (2014) (awarding objectors $500 incentive payments because of "the[ir] willingness to serve as objectors so that their counsel could pursue a legal challenge that ultimately provided a certain benefit to like car owners and lessees warrants some incentive award").

Lonardo v. Travelers Indem. Co., 706 F. Supp. 2d 766, 813 (N.D. Ohio 2010), on reconsideration in part, (July 21, 2010) (awarding objector a "nominal sum" of $500 for his "nominal contribution" to the case).

[19]McDonough v. Toys R Us, Inc., 2015-1 Trade Cas. (CCH) ¶ 79040, 2015 WL 263562, *30 (E.D. Pa. 2015) (granting one objector an incentive award of $1,000 because "[a]lthough [the objector] did not participate in discovery, nor was he deposed, his objection provided a significant benefit to the class" but denying incentive awards to two other objectors because "they have not demonstrated that their objections provided a benefit to the class").

In re Apple Inc. Securities Litigation, Fed. Sec. L. Rep. (CCH) P 96312, 2011 WL 1877988, *5 (N.D. Cal. 2011) (finding that an incentive payment of $1,000 would "fairly . . . compensate [the objector] for [his] contributions to this litigation").

[20]Sobel v. Hertz Corp., 53 F. Supp. 3d 1319, 1334 n.13 (D. Nev. 2014) (finding that the objectors' work "did contribute to the value of the resulting settlement" as even opponents noted that "the Court did reference the Objectors arguments and briefing in deciding to reject the failed settlement").

[21]Park v. Thomson Corp., 633 F. Supp. 2d 8, 14, 2009-2 Trade Cas. (CCH) ¶ 76775 (S.D.N.Y. 2009) (quoting Fears v. Wilhelmina Model Agency, Inc., 2005-1 Trade Cas. (CCH) ¶ 74783, 2005 WL 1041134, *3 (S.D.N.Y. 2005), aff'd in part, vacated in part, remanded, 473 F.3d 423, 2007-1 Trade Cas. (CCH) ¶ 75542 (2d Cir. 2007)).

## § 17:21   Appellate review of incentive awards

Appellate courts review a district court's award or denial of an incentive award under an abuse of discretion standard.[1] In adopting this standard (in a case involving a *pro se* objector's right to an incentive award), the Tenth Circuit gave three reasons justifying its use: *first*, that the Circuit reviews attorney fee awards in class actions using an abuse of discretion standard;[2] *second*, that "the district court's familiarity with the parties and the proceedings supports an

[Section 17:21]

[1]**Second Circuit**

Lobur v. Parker, 378 Fed. Appx. 63, 65 (2d Cir. 2010) ("We review a district court's grant or denial of incentive awards for the abuse of discretion.").

Silverberg v. People's Bank, 23 Fed. Appx. 46, 48 (2d Cir. 2001) ("The abuse-of-discretion standard of review also applies to the grant or denial of incentive awards for class representatives.").

**Sixth Circuit**

Hadix v. Johnson, 322 F.3d 895, 897, 55 Fed. R. Serv. 3d 116, 2003 FED App. 0072P (6th Cir. 2003) ("Although this circuit has never addressed the issue, we agree with the circuit courts that have concluded that a district court's denial of an incentive award should be reviewed for an abuse of discretion.").

**Seventh Circuit**

Montgomery v. Aetna Plywood, Inc., 231 F.3d 399, 408 (7th Cir. 2000) ("Class counsel challenges several aspects of the district court's decisions regarding attorneys' fees, costs, and the requested incentive award for the lead plaintiff. . . . We review the district court's decisions respecting these matters for abuse of discretion, except where counsel challenges the methodology employed by the district court, in which case our review becomes plenary.").

**Ninth Circuit**

In re Mego Financial Corp. Securities Litigation, 213 F.3d 454, 463, Fed. Sec. L. Rep. (CCH) P 90977, 46 Fed. R. Serv. 3d 883 (9th Cir. 2000), as amended, (June 19, 2000) ("[T]he district court did not abuse its discretion in awarding attorney's fees to Class Counsel and in awarding an incentive award to the Class Representatives.").

**Tenth Circuit**

UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Min. Corp., 352 Fed. Appx. 232, 234-35 (10th Cir. 2009) (applying and explaining the circuit's adoption of an abuse of discretion standard).

[2]UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Min. Corp., 352 Fed. Appx. 232, 235 (10th Cir. 2009).

abuse-of-discretion standard";[3] and *third*, because incentive awards arise in common fund cases and such cases are equitable in nature, appellate courts "review the district court's exercise of its equitable powers for abuse of discretion."[4]

A district court abuses its discretion when it has "based its decision on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling."[5] Appellate courts that utilize the abuse of discretion standard uphold trial court findings of fact unless they are clearly erroneous, while they review the trial court's legal analysis *de novo*.[6]

---

[3]UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Min. Corp., 352 Fed. Appx. 232, 235 (10th Cir. 2009); *see also* Case v. Unified School Dist. No. 233, Johnson County, Kan., 157 F.3d 1243, 1249, 129 Ed. Law Rep. 1003 (10th Cir. 1998) ("We customarily defer to the District Court's judgment [regarding an attorney's fee award] because an appellate court is not well suited to assess the course of litigation and the quality of counsel." (internal quotation marks omitted)).

[4]UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Min. Corp., 352 Fed. Appx. 232, 235 (10th Cir. 2009) (internal quotation marks omitted)).

[5]UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Min. Corp., 352 Fed. Appx. 232, 235 (10th Cir. 2009) (internal quotation marks omitted)).

[6]UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Min. Corp., 352 Fed. Appx. 232, 235 (10th Cir. 2009).

EXHIBIT B

No. 18-12344

# In the United States Court of Appeals for the Eleventh Circuit

CHARLES T. JOHNSON,
on behalf of himself and others similarly situated,
*Plaintiff–Appellee*,
JENNA DICKENSON,
*Interested Party–Appellant*,

v.

NPAS SOLUTIONS, LLC,
*Defendant–Appellee*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MOTION OF PROFESSOR WILLIAM B. RUBENSTEIN FOR
LEAVE TO FILE *AMICUS CURIAE* BRIEF IN SUPPORT OF
PLAINTIFF-APPELLEE'S PETITION FOR REHEARING *EN BANC*

Martin N. Buchanan
LAW OFFICE OF MARTIN N. BUCHANAN, APC
665 W. Broadway, Suite 1700
San Diego, CA 92101
Telephone: (619) 238-2426
*Counsel for Amicus Curiae*

No. 18-12344, *Johnson v. NPAS Solutions, LLC*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, *amicus* provides the following Certificate of Interested Persons and Corporate Disclosure Statement.

- Buchanan, Martin N. – Counsel for *Amicus Curiae*

- Davidson, James L. – Counsel for Plaintiff-Appellee

- Davis, John W. – Counsel for Appellant Jenna Dickenson

- Debevoise & Plimpton LLP – Counsel for Defendant-Appellee

- Dickenson, Jenna – Appellant

- Ehren, Michael L. – Counsel for Defendant-Appellee

- Goldberg, Martin B. – Counsel for Defendant-Appellee

- Greenwald Davidson Radbil PLLC – Counsel for Plaintiff-Appellee

- Greenwald, Michael L. – Counsel for Plaintiff-Appellee

- Heinz, Noah S. – Counsel for Plaintiff-Appellee

- Hopkins, Honorable James M. – Magistrate Judge

- Isaacson, Eric Alan – Counsel for Appellant Jenna Dickenson

- Issacharoff, Samuel – Counsel for Plaintiff-Appellee

- Johnson, Charles T. – Plaintiff-Appellee

No. 18-12344, *Johnson v. NPAS Solutions, LLC*

- Johnson, Jesse S. – Counsel for Plaintiff-Appellee

- Keller, Ashley C. – Counsel for Plaintiff-Appellee

- Keller Lenkner LLC – Counsel for Plaintiff-Appellee

- Lash, Alan David – Counsel for Defendant-Appellee

- Lash & Goldberg LLP – Counsel for Defendant-Appellee

- Law Office of John W. Davis – Counsel for Appellant Jenna Dickenson

- Lenkner, Travis D. – Counsel for Plaintiff-Appellee

- Monaghan, Maura K. – Counsel for Defendant-Appellee

- NPAS Solutions, LLC – Defendant-Appellee

- Nutley, C. Benjamin – Counsel for Appellant Jenna Dickenson

- Postman, Warren D. – Counsel for Plaintiff-Appellee

- Radbil, Aaron D. – Counsel for Plaintiff-Appellee

- Rosenberg, Honorable Robin L. – District Court Judge

- Rubenstein, William B. – *Amicus Curiae*

- Stahl, Jacob W. – Counsel for Defendant-Appellee

- Van Wey, Lorelei Jane – Counsel for Defendant-Appellee

No. 18-12344, *Johnson v. NPAS Solutions, LLC*

1.      NPAS Solutions, LLC is wholly owned by National Patient Accounts Services, Inc., which is wholly owned by Parallon Business Solutions, LLC. The ultimate parent of Parallon Business Solutions, LLC is HCA Healthcare, Inc., a publicly traded company.

2.      No publicly held corporation owns 10% or more of NPAS Solutions' stock.


Dated:  October 29, 2020          Respectfully submitted,

                                  /s/ *Martin N. Buchanan*
                                  Martin N. Buchanan
                                  *Counsel for Amicus Curiae*

## MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF IN SUPPORT OF REHEARING *EN BANC*

Pursuant to Federal Rule of Appellate Procedure 29(b)(3) and Eleventh Circuit Rule 29-3, Professor William B. Rubenstein respectfully requests leave to file the accompanying *amicus curiae* brief in support of rehearing *en banc* in this matter. In support of this request and in demonstration of good cause, *amicus* states as follows:

1.    *Amicus* is the Bruce Bromley Professor of Law at Harvard Law School and (since 2008) the sole author of *Newberg on Class Actions*, the leading treatise on class action law in the United States.

2.    Professor Rubenstein respectfully submits this brief for three independent reasons. *First*, Professor Rubenstein believes the Panel decision to be of exceptional importance because the vast majority of class action settlements involve incentive awards and they have been approved in every other Circuit in the country. *Second,* the Panel's critical decision cites to and relies on the *Newberg* treatise.  The Panel's discussion of Professor Rubenstein's work could be read to suggest that he opposes the practice of incentive awards. Professor Rubenstein seeks to ensure that the record accurately reflects his position on incentive awards. *Third*, *amicus* addresses issues not covered in the briefing to

1

date by examining (a) the facts underlying *Greenough*; (b) the relevance of Congress's approach to incentive awards in the securities field; and (c) the effect of recent changes to Rule 23 on judicial review of incentive awards.

## Conclusion

For these reasons, *amicus* respectfully requests leave to file his *amicus curiae* brief in support of rehearing *en banc*.

Dated: October 29, 2020             Respectfully submitted,


                        /s/ *Martin N. Buchanan*
                        Martin N. Buchanan
                        Law Office of Martin N. Buchanan, APC
                        665 W. Broadway, Suite 1700
                        San Diego, CA 92101
                        Telephone: (619) 238-2426
                        *Counsel for Amicus Curiae*

2

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the typeface requirements of Rule 32(a)(5) and the typestyle requirements of Rule 32(a)(6) because this motion was prepared in 14-point Century Schoolbook, a proportionally spaced typeface, using Microsoft Word 2016. *See* Fed. R. App. P. 27(d)(1), 32(g)(1); 11th Cir. R. 29-1. This motion complies with the type-volume limitation of Rule 27(d)(2) because it contains 261 words, excluding the parts exempted under Rule 32(f).

/s/ *Martin N. Buchanan*
Martin N. Buchanan

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2020, a true and correct copy of this motion was served via the Court's CM/ECF system on all counsel of record.

/s/ *Martin N. Buchanan*
Martin N. Buchanan

No. 18-12344

# In the United States Court of Appeals for the Eleventh Circuit

CHARLES T. JOHNSON,
on behalf of himself and others similarly situated,
*Plaintiff–Appellee*,
JENNA DICKENSON,
*Interested Party–Appellant*,

v.

NPAS SOLUTIONS, LLC,
*Defendant–Appellee*.

## On Appeal from the United States District Court for the Southern District of Florida

## Brief of Professor William B. Rubenstein as *Amicus Curiae* in Support of Rehearing *En Banc*

Martin N. Buchanan
LAW OFFICE OF MARTIN N. BUCHANAN, APC
665 W. Broadway, Suite 1700
San Diego, CA 92101
(619) 238-2426
*Counsel for Amicus Curiae*

No. 18-12344, *Johnson v. NPAS Solutions, LLC*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, *amicus* provides the following Certificate of Interested Persons and Corporate Disclosure Statement.

- Buchanan, Martin N. – Counsel for *Amicus Curiae*

- Davidson, James L. – Counsel for Plaintiff-Appellee

- Davis, John W. – Counsel for Appellant Jenna Dickenson

- Debevoise & Plimpton LLP – Counsel for Defendant-Appellee

- Dickenson, Jenna – Appellant

- Ehren, Michael L. – Counsel for Defendant-Appellee

- Goldberg, Martin B. – Counsel for Defendant-Appellee

- Greenwald Davidson Radbil PLLC – Counsel for Plaintiff-Appellee

- Greenwald, Michael L. – Counsel for Plaintiff-Appellee

- Heinz, Noah S. – Counsel for Plaintiff-Appellee

- Hopkins, Honorable James M. – Magistrate Judge

- Isaacson, Eric Alan – Counsel for Appellant Jenna Dickenson

- Issacharoff, Samuel – Counsel for Plaintiff-Appellee

- Johnson, Charles T. – Plaintiff-Appellee

No. 18-12344, *Johnson v. NPAS Solutions, LLC*

- Johnson, Jesse S. – Counsel for Plaintiff-Appellee

- Keller, Ashley C. – Counsel for Plaintiff-Appellee

- Keller Lenkner LLC – Counsel for Plaintiff-Appellee

- Lash, Alan David – Counsel for Defendant-Appellee

- Lash & Goldberg LLP – Counsel for Defendant-Appellee

- Law Office of John W. Davis – Counsel for Appellant Jenna Dickenson

- Lenkner, Travis D. – Counsel for Plaintiff-Appellee

- Monaghan, Maura K. – Counsel for Defendant-Appellee

- NPAS Solutions, LLC – Defendant-Appellee

- Nutley, C. Benjamin – Counsel for Appellant Jenna Dickenson

- Postman, Warren D. – Counsel for Plaintiff-Appellee

- Radbil, Aaron D. – Counsel for Plaintiff-Appellee

- Rosenberg, Honorable Robin L. – District Court Judge

- Rubenstein, William B. – *Amicus Curiae*

- Stahl, Jacob W. – Counsel for Defendant-Appellee

- Van Wey, Lorelei Jane – Counsel for Defendant-Appellee

No. 18-12344, *Johnson v. NPAS Solutions, LLC*

1.    NPAS Solutions, LLC is wholly owned by National Patient

Accounts Services, Inc., which is wholly owned by Parallon Business

Solutions, LLC. The ultimate parent of Parallon Business Solutions,

LLC is HCA Healthcare, Inc., a publicly traded company.

2.    No publicly held corporation owns 10% or more of NPAS

Solutions' stock.


Dated:  October 29, 2020          Respectfully submitted,

                                  /s/ *Martin N. Buchanan*
                                  Martin N. Buchanan
                                  *Counsel for Amicus Curiae*

## RULE 35-5(C) STATEMENT OF COUNSEL

I express a belief, based on a reasoned and studied professional judgment, that this appeal involves the following question of exceptional importance: Whether the common practice of awarding incentive payments to named plaintiffs to compensate them for their efforts protecting absent class members' interests is *per se* unlawful.

Dated:  October 29, 2020              Respectfully submitted,

                                      /s/ *Martin N. Buchanan*
                                      Martin N. Buchanan
                                      *Counsel for Amicus Curiae*

i

## TABLE OF CONTENTS

Rule 35-5(c) Statement of Counsel ...........................................i

Table of Contents...................................................................ii

Table of Citations ................................................................. iii

Identity and Interest of *Amicus Curiae*...................................1

Statement of the Issue Warranting *En Banc* Review..............2

Argument ..............................................................................3

The Panel's prohibition on incentive awards is an issue of exceptional importance, but its decision failed to consider the applicable facts and relevant aspects of federal law and Rule 23 ........................................................................................3

I. The Panel's decision fails as a matter of equity ...........3

II. The Panel's decision fails to account for Congress's approach to incentive awards in an analogous setting. ......................7

III. The Panel's decision fails to account for relevant 2018 amendments to Rule 23. .................................................9

Conclusion............................................................................14

Certificate of Compliance .....................................................15

Certificate of Service .............................................................15

# TABLE OF CITATIONS

**Cases**                                                                 **Page(s)**

*Johnson v. NPAS Sols., LLC,*
    975 F.3d 1244 (11th Cir. 2020) ........................................... 3, 6, 7, 10

*Melito v. Experian Mktg. Sols., Inc.,*
    923 F.3d 85 (2d Cir. 2019)................................................................. 7

*Sprague v. Ticonic Nat. Bank,*
    307 U.S. 161 (1939) ......................................................................... 5

*\*Trustees v. Greenough,*
    105 U.S. 527 (1881) .................................................................. 3, 4, 6

**Statutes**

Private Securities Litigation Reform Act,
    15 U.S.C. §§ 78u-4 et seq. (1995) ................................................. 7, 8

**Rules**

*Fed. R. Civ. P. 23(e)(2)(D).................................................................. 3, 11

Fed. R. Civ. P. 23(e)(2), advisory committee's note to
    2018 amendment ...................................................................... 10, 11

**Legislative Materials**

S. Rep. No. 104-98 (1995) ............................................................... 8

**Secondary Authorities**

*William B. Rubenstein, *Newberg on Class Actions*
    (5th ed., June 2020 update) ................................................. 5, 10, 13

## Other Authorities

*Consumer Price Index, 1800-*, Federal Reserve Bank of
    Minneapolis (last visited Oct. 25, 2020), https://www.
    minneapolisfed.org/about-us/monetary-policy/inflation-
    calculator/consumer-price-index-1800- ........................................... 4

*Inflation Calculator*, Federal Reserve Bank of Minneapolis
    (last visited Oct. 25, 2020), https://www.minneapolisfed.
    org/about-us/monetary-policy/inflation-calculator.......................... 5

*Judicial Salaries: Supreme Court Justices,* Federal Judicial
    Center (last visited Oct. 26, 2020), https://www.fjc.gov/
    history/judges/judicial-salaries-supreme-court-justices ................. 4

*Salary*, Merriam-Webster Online Dictionary, https://www.
    merriam-webster.com/dictionary/salary (last visited
    Oct. 27, 2020) ....................................................................................... 5

## IDENTITY AND INTEREST OF *AMICUS CURIAE**

*Amicus curiae* Professor William Rubenstein is the Bruce Bromley Professor of Law at Harvard Law School and the author of *Newberg on Class Actions*, the leading American class action law treatise. In 2015, Professor Rubenstein wrote treatise Chapter 17, a 98-page treatment of incentive awards. This review encompassed a range of issues including new empirical evidence about incentive awards.

*Amicus* respectfully submits this brief for three reasons. *First*, *amicus* believes the Panel's categorical rejection of incentive awards to be of exceptional importance because most class actions involve such awards and because they have been approved in every other Circuit. *Second,* as the Panel's decision relies on the *Newberg* treatise, *amicus* seeks to ensure that the record accurately reflects his position. *Third*, *amicus* addresses issues not covered in the briefing to date by examining (a) the facts underlying *Greenough*; (b) the relevance of Congress's approach to incentive awards in the securities field; and (c)

---

* This brief was not authored in whole or in part by counsel for any party. No party, party's counsel, or person—other than *amicus curiae* or his counsel—contributed money that was intended to fund preparing or submitting this brief. Fed. R. App. P. 29(a)(4)(E).

the effect of recent changes to Rule 23 on judicial review of incentive awards.

Under Federal Rule of Appellate Procedure 29(b)(2), *amicus* may file this brief only by leave of court. By the accompanying motion, *amicus* has so moved.

## STATEMENT OF THE ISSUE WARRANTING *EN BANC* REVIEW

Plaintiff-Appellee Johnson's petition demonstrates that the Panel's decision is of exceptional importance warranting *en banc* review because it misapplies applicable Supreme Court and Eleventh Circuit precedent, conflicts with the holding of every other Circuit on this question, and, in categorically barring incentive awards, affects every class action in this Circuit.

This brief adds three points: the Panel's decision (1) fails on its own terms (as a matter of equity) because it never compared the ***facts*** in *Greenough* to those in this case or in class actions generally; (2) fails to account for Congress's approach to incentive awards in the Private Securities Litigation Reform Act of 1995, an approach which undermines its holding; and (3) fails to acknowledge 2018 congressionally approved changes to Rule 23 that explicitly require a

court reviewing a proposed settlement to ensure "the proposal treats class members *equitably* relative to each other." Fed. R. Civ. P. 23(e)(2)(D) (emphasis added). That amendment squarely places review of incentive awards within Rule 23's settlement approval provision going forward and hence renders the Panel's decision—even if permitted to stand—irrelevant to current class action practice. The Panel stated that "if either the Rules Committee or Congress doesn't like the result we've reached, they are free to amend Rule 23 or to provide for incentive awards by statute," *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020), but it appeared unaware of the actions of Congress and the Rules Committee directly on point.

## ARGUMENT

**The Panel's prohibition on incentive awards is an issue of exceptional importance, but its decision failed to consider the applicable facts and relevant aspects of federal law and Rule 23.**

## I.   The Panel's decision fails as a matter of equity.

The Panel found *Greenough* controlling without a full review of the case's facts. Those show that Vose, the active litigant, sought attorney's fees and expenses amounting to $53,938.30 and an additional $49,628.35 for himself. *See Trustees v. Greenough*, 105 U.S. 527, 530

(1881). Specifically, Vose sought payment of "an allowance of $2,500 a year for ten years of personal services," *id.,* plus $9,625 in interest, as well as another $15,003.35 for "railroad fares and hotel bills." *Id.*

Those numbers are staggering: inflation calculators suggest that $1 in 1881 is worth $26.49 in 2019 dollars.[1] Thus, Vose sought a "salary" of $66,225 per year for 10 years,[2] plus interest—or a total of $917,216—as well as $397,439 for hotel bills and travel expenses. This amounts to roughly $1.31 million current dollars. It was also equivalent to (92% of) his attorney's fees and expenses.

Is it any wonder that equity balked?

Here the named plaintiff seeks $6,000 in total (0.46% of what Vose sought), none of it a yearly salary of any kind, and all of it amounting to about 1.3% of what the attorneys seek. Any true ***equitable*** analysis

---

[1] *See Consumer Price Index, 1800-,* Federal Reserve Bank of Minneapolis (last visited Oct. 25, 2020), https://www.minneapolisfed.org/about-us/monetary-policy/inflation-calculator/consumer-price-index-1800-.

[2] This $66,225 number is perfectly confirmed by the fact that Vose's $2,500 annual salary constituted 25% of the 1881 Supreme Court justice salary of $10,000, while 25% of a current justice's salary ($265,000) is $66,400. *See Judicial Salaries: Supreme Court Justices,* Federal Judicial Center (last visited Oct. 26, 2020), https://www.fjc.gov/history/judges/judicial-salaries-supreme-court-justices.

would find *Greenough* inapposite on the numbers alone. *Sprague v. Ticonic Nat. Bank*, 307 U.S. 161, 167 (1939) ("As in much else that pertains to equitable jurisdiction, individualization in the exercise of a discretionary power will alone retain equity as a living system and save it from sterility.").

Even if the Panel's decision is read as one of type not degree—limiting "salaries" and "personal expenses" regardless of their level—this factual review nonetheless undermines its logic. Vose truly sought a salary—a fixed regular payment, *see Salary*, Merriam-Webster Online Dictionary,   https://www.merriam-webster.com/dictionary/salary   (last visited Oct. 27, 2020)—while this incentive award ($6,000) and the typical incentive awards are never a fixed regular payment and they hardly amount to a salary. Professor Rubenstein's empirical analysis shows the average incentive award to be $11,697 in 2011 dollars (or $13,299 in 2019 dollars).[3] *See* 5 William B. Rubenstein, *Newberg on Class Actions* § 17:8 (5th ed., June 2020 update) [hereinafter *Newberg on Class Actions*]. These facts undermine the Panel's declaration that,

---

[3] *See Inflation Calculator*, Federal Reserve Bank of Minneapolis (last visited   Oct.   25,   2020),   https://www.minneapolisfed.org/about-us/monetary-policy/inflation-calculator.

"It seems to us that the modern-day incentive award for a class representative is ***roughly*** analogous to a salary." *Johnson*, 975 F.3d at 1257 (emphasis added). Far too much rides on the word "roughly" for that analogy to land.

Nor is *Greenough's* objection to the category of Vose's request labelled "personal expenses" particularly apposite—again, those payments were for $397,439 in hotel bills and travel expenses, amounts the Court might rightly have found extravagant and hence "personal." The modest level of the typical modern incentive award belies any sense that the representative is dining out at the class's expense.

These facts render *Greenough's* concern—that it "would present too great a temptation to parties to intermeddle in the management of valuable . . . funds . . . if they could calculate upon the allowance of a salary for their time and of having all their private expenses paid," *Greenough*, 105 U.S. at 1157—inapplicable to the modern incentive award and render nonsensical the Panel's conclusion "that modern-day incentive awards present even more pronounced risks than the salary and expense reimbursements disapproved in *Greenough*," *Johnson*, 975 F.3d at 1258.

\* \* \*

These objector's counsel proffered this same *Greenough* argument to the Second Circuit, but that Court rejected it on the grounds that *Greenough's* facts were inapposite. *See Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 96 (2d Cir.), *cert. denied sub nom. Bowes v. Melito*, 140 S. Ct. 677 (2019). The Panel declared itself "unpersuaded by the Second Circuit's position," *Johnson*, 975 F.3d at 1258 n.8, but this review has demonstrated that the Second Circuit got it right and the Panel's conflicting conclusion should be reviewed (and reversed) *en banc*.

## II.   The Panel's decision fails to account for Congress's approach to incentive awards in an analogous setting.

Far closer in context and time than *Greenough*, is Congress's 1995 approach to incentive awards in the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78u-4 et seq.

With the PSLRA, Congress aimed to transfer control of securities class actions from small-stakes clients to large institutional investors. Limiting excess payments to named plaintiffs was a critical part of that effort. The PSLRA contains several provisions on point. *First*, the PSLRA requires a putative lead plaintiff to aver that it "will not accept any payment for serving as a representative party on behalf of a class

7

beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court in accordance with paragraph (4)." 15 U.S.C. § 78u-4(a)(2)(A)(vi). *Second*, the Act states that the representative's fund allocation "shall be equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class." 15 U.S.C. § 78u-4(a)(4). *Third*, the Act explicitly does ___***not***___ "limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." *Id.; see also* S. Rep. No. 104-98, at 10 (1995) (explaining that "service as the lead plaintiff may require court appearances or other duties involving time away from work").

These provisions demonstrate three pertinent points:

1. Congress sees incentive awards as a question of fair settlement allocation, not attorney's fees.

2. Congress is aware of incentive awards, knows how to limit them when it wants to do so, and has limited them only in securities cases.

3. Even while limiting incentive awards, Congress acknowledges and permits repayment for lead plaintiffs' efforts.

These points undermine the Panel's decision. The majority declined to analyze the incentive award in terms of intra-class equity, as the dissent would have; failed to appreciate that Congress has limited incentive awards only in securities cases; and failed to acknowledge Congress's approval of repayment of expenses, even when otherwise limiting incentive payments.

The PSLRA post-dates *Greenough* by 114 years*,* and, as a law about modern class action practice, is far closer in context than the trust law at issue in *Greenough*. The Panel should have considered its relevance before holding that *Greenough* categorically bars incentive awards in today's class action.

## III.   The Panel's decision fails to account for relevant 2018 amendments to Rule 23.

Quoting Professor Rubenstein's treatise, the Panel held that Rule 23 has nothing to say about incentive awards:

> [The] argument [in support of the incentive award] implies that Rule 23 has something to say about incentive awards, and thus has some bearing on the continuing vitality of *Greenough* and *Pettus*. But it doesn't—and so it doesn't: "Rule 23 does not currently make, and has never made, any reference to incentive awards, service awards, or case contribution awards." The fact that Rule 23 post-dates *Greenough* and *Pettus*, therefore, is irrelevant.

9

*Johnson,* 975 F.3d at 1259 (quoting *Newberg on Class Actions* § 17:4) (footnote omitted).

Professor Rubenstein wrote that sentence in 2015. Congress subsequently approved amendments to Rule 23 that render the sentence out of date.[4]

Prior to December 1, 2018, Rule 23(e) directed a court reviewing a settlement agreement to ensure that the agreement was "fair, reasonable, and adequate." That was the entire standard, although each Circuit developed factors pertinent to that review. Congress approved amendments to Rule 23(e) in late 2018 that codified elements of the Circuit tests. *See* Fed. R. Civ. P. 23(e)(2), advisory committee's note to 2018 amendment ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

One of the new Rule 23 prongs requires a Court reviewing a settlement to ensure that the proposal "treats class members *equitably*

---

[4] Regardless, the fact that Rule 23 did not mention incentive awards explicitly hardly dictates the Panel's conclusion that the Rule was therefore "irrelevant" in making an equitable evaluation of incentive awards. *See infra* Section III.

relative to each other." Fed. R. Civ. P. 23(e)(2)(D) (emphasis added). The Advisory Committee noted that this prong "calls attention to a concern that may apply to some class action settlements—inequitable treatment of some class members vis-a-vis others." Fed. R. Civ. P. 23(e)(2), advisory committee's note to 2018 amendment.

New Rule 23(e)(2)(D) should now govern review of incentive awards. An incentive award constitutes an extra allocation of the settlement fund to the class representative and a court asked to approve a settlement agreement encompassing such an allocation would need to ensure that it nonetheless "treats class members *equitably* relative to each other."

The facts of this case are exemplary. The parties' settlement established a fund (Doc. 37-1 at Pg. 17 ¶5.1), stated how the fund would be allocated (¶5.2), and noted that the "class plaintiff" would seek "an incentive payment (in addition to any pro rata distribution he may receive [from the fund])." (¶6.2). Counsel then sought settlement approval, including of the incentive award, under Rule 23(e) (Docs. 38, 43).

The objector challenged the incentive award, alleging that it exceeded the amounts recovered by the other class members (Doc. 42 at Pg. 15), then argued to the Panel that the incentive award was a "settlement allocation[] that treat[s] the named plaintiffs better than absent class members," App. Br. at 52, and that "the [d]isparity in this case between [the representative's] $6,000 bonus and the relief obtained for the rest of the class . . . casts doubt on . . . the adequacy of the Settlement," *id.* at 53; *see also id.* at 57 (characterizing award as a "disproportionate payment").

Thus, although counsel lodged the request for judicial approval of the incentive award with their fee petition (Doc. 44 at Pgs. 15–16), they were not seeking a fee award governed by Rule 23(h). They were seeking judicial approval of their settlement agreement allocating extra money to the representative—and Rule 23(e)'s settlement approval provisions govern review of that request.

When an incentive award is properly scrutinized as a question of intra-class equity, its fairness comes into focus. Class representatives and absent class members are differently situated with regard to the litigation, as their titles suggest. A court can—indeed should—take

account of that fact in reviewing a proposed settlement. As Professor Rubenstein explains in the *Newberg* treatise:

> Incentive awards surely make it look as if the class representatives are being treated differently than other class members, but . . . [they] are not similarly situated to other class members. They have typically done something the absent class members have not—stepped forward and worked on behalf of the class—and thus to award them only the same recovery as the other class members risks disadvantaging the class representatives by treating these dissimilarly-situated individuals as if they were similarly-situated . . . . In other words, incentive awards may be necessary to ensure that class representatives are treated equally to other class members, rewarded both for the value of their claims (like all other class members) but also for their unique service to the class.

5 *Newberg on Class Actions* § 17:3.

That is not to say that all incentive awards are equitable—an excessive award, such as that sought in *Greenough*, would surely be inequitable. *See id.* at § 17:18. But it is to say that Congress has now given judges the explicit authority to scrutinize the equity of incentive awards through the lens of Rule 23(e).

Thus, even if the Court were inclined to leave in place the Panel's reasoning as to this pre-2018 settlement, the full Circuit should clarify the inapplicability of the holding to judicial review of settlements after December 1, 2018.

13

## CONCLUSION

For these reasons, the Court should grant the petition for rehearing *en banc*.

Dated:  October 29, 2020                    Respectfully submitted,

                                            /s/ *Martin N. Buchanan*
                                            Martin N. Buchanan
                                            LAW OFFICE OF MARTIN N. BUCHANAN, APC
                                            665 W. Broadway, Suite 1700
                                            San Diego, CA 92101
                                            Telephone: (619) 238-2426
                                            *Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the typeface requirements of Rule 32(a)(5) and the typestyle requirements of Rule 32(a)(6) because this brief was prepared in 14-point Century Schoolbook, a proportionally spaced typeface, using Microsoft Word 2016. *See* Fed. R. App. 29(a)(4), 32(g)(1). This brief complies with the type-volume limitation of Eleventh Circuit Rule 29-3 because it contains 2,594 words, excluding the parts exempted under Rule 32(f). *See* Fed. R. App. 29(b)(4).

*/s/ Martin N. Buchanan*
Martin N. Buchanan

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2020, a true and correct copy of this brief was served via the Court's CM/ECF system on all counsel of record.

*/s/ Martin N. Buchanan*
Martin N. Buchanan

15

CERTIFICATE OF SUBMISSION AND SERVICE
AND REQUEST FOR INCLUSION ON THE PUBLIC RECORD

I hereby certify that, on October 11, 2023, I am submitting and serving the foregoing

WRITTEN STATEMENT OF ERIC ALAN ISAACSON OF INTENT TO APPEAR IN

PERSON AT THE OCTOBER 12, 2023, FINAL- APPROVAL HEARING *IN NATIONAL*

*VETERANS LEGAL SERVICES PROGRAM, ET AL. V. UNITED STATES OF AMERICA* by

emailing it to the following email addresses provided for objectors' submissions in the official

long-form Class-Action Settlement Notice in this matter:

DCDPACERFeesSettlement@dcd.uscourts.gov
The Honorable Paul L. Friedman
United States District Court for the District of Columbia 333 Constitution Avenue, NW,
Washington, DC 20001

deepak@guptawessler.com
Gupta Wessler PLLC
2001 K Street, NW, Suite 850 North Washington, DC 20006

brenda.gonzalez.horowitz@usdoj.gov
Brenda Gonzáles Horowitz
Assistant United States Attorney Patrick Henry Building
601 D Street, N.W.
Washington, DC 20530

I further respectfully request that both the forgoing duly served and submitted WRITTEN

STATEMENT OF ERIC ALAN ISAACSON OF INTENT TO APPEAR IN PERSON AT THE

OCTOBER 12, 2023, FINAL- APPROVAL HEARING *IN NATIONAL VETERANS LEGAL*

*SERVICES PROGRAM, ET AL. V. UNITED STATES OF AMERICA* and my previously served

and submitted September 12, 2023, OBJECTION OF ERIC ALAN ISAACSON ) TO

PROPOSED SETTLEMENT IN *NATIONAL VETERANS LEGAL SERVICES ) PROGRAM, ET*

*AL. V. UNITED STATES OF ) AMERICA,* be included in the publicly available PACER-accessible district-court docket in the foregoing matter.

<div align="right">

/s/ Eric Alan Isaacson
————————————————————————
Eric Alan Isaacson
(pro se)

</div>