```
 1                BEFORE THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2

 3   NATIONAL VETERANS LEGAL          .
     SERVICES PROGRAM, et al.,        .
 4                                    .  Case Number 16-cv-745
            Plaintiffs,               .
 5                                    .
          vs.                         .
 6                                    .
     UNITED STATES OF AMERICA,        .  February 22, 2023
 7                                    .  11:03 a.m.
            Defendant.                .
 8   - - - - - - - - - - - - - - - -

 9                TRANSCRIPT OF STATUS CONFERENCE
                BEFORE THE HONORABLE PAUL L. FRIEDMAN
10                  UNITED STATES DISTRICT JUDGE

11   APPEARANCES:

12   For the Plaintiffs:         DEEPAK GUPTA, ESQ.
                                 Gupta Wessler LLP
13                               2001 K Street Northwest
                                 Suite 850 North
14                               Washington, D.C. 20006

15                               WILLIAM NARWOLD, ESQ.
                                 Motley Rice, LLC
16                               20 Church Street
                                 17th Floor
17                               Hartford, Connecticut 06103

18                               MEGHAN OLIVER, ESQ.
                                 Motley Rice, LLC
19                               28 Bridgeside Boulevard
                                 Mt. Pleasant, South Carolina 29464
20
     For the Defendant:          JEREMY SIMON, AUSA
21                               United States Attorney's Office
                                 601 D Street Northwest
22                               Washington, D.C. 20530

23   Official Court Reporter:    SARA A. WICK, RPR, CRR
                                 333 Constitution Avenue Northwest
24                               Washington, D.C. 20001

25   Proceedings recorded by stenotype shorthand.
     Transcript produced by computer-aided transcription.
```

```
1                    P R O C E E D I N G S

2        (All participants present via video conference.)

3             COURTROOM DEPUTY:  Judge, this is Civil Action 16-745,

4    National Veterans Legal Services Program versus the United

5    States.

6        Would counsel state your appearances for the record.

7             MR. GUPTA:  Deepak Gupta for the plaintiffs.

8             MR. NARWOLD:  Good morning, Your Honor.  Bill Narwold

9    with Motley Rice, also for the plaintiffs, and with me on the

10   Zoom this morning is Meghan Oliver, also of my office.

11            MR. SIMON:  Good morning, Your Honor.  Jeremy Simon

12   for the government.

13            THE COURT:  Okay.  Good morning, everybody.

14       So we were last here a while back, December 6 to be

15   precise.  And there was already filed a motion for preliminary

16   approval of the settlement agreement that you had reached.  As I

17   recall what happened at the last status is you suggested there

18   were a few logistical steps, a few things to be done, that you

19   were getting some feedback from some of the class members that

20   might affect what the notice would look like or maybe, I can't

21   remember, how the notice would be sent, communicated to class

22   members, and I think there were one or two minor things that the

23   government raised some concerns about, which suggested to me

24   that the proposed order granting the motion for preliminary

25   approval might actually need to be revised, but that's up to you
```

1    whether the current order is fine or not.

2        And since that time, there was also a suggestion to modify

3    the protective order, which has been done.

4        So that's all I think I know, and I will hear from you as

5    to where we go from here.

6        MR. GUPTA:  Good morning, Your Honor.  Deepak Gupta.

7    I will start.

8        Since we last met, we have worked, both with input from our

9    clients and also with the government, to fine tune the notice

10   plan, and we have presented the government with our proposal for

11   the revisions to the notice plan.

12       And I understand the government -- I will let Mr. Simon

13   speak to this, but I think the government is actually planning

14   to get back to us as early as later today or tomorrow with their

15   suggestions on that.

16       And so we hope we will be able to submit that to Your Honor

17   soon, and obviously, that is a part of the preliminary approval

18   request.

19       I would say the overriding principle here is we would like

20   to try to do this once and do it right.  And so that's the

21   reason we've been careful and have been taking this time, both

22   with our clients and with the government.  We have continued to

23   have conversations with class members, particularly

24   institutional entities like law firms, newspapers, members of

25   defunct law firms that have a variety of issues, and their input

1    has been helpful.

2         And those conversations have alerted us to some logistical

3    issues that we want to be sure to resolve.  The main issue is

4    that the class is defined as including those who paid PACER

5    fees, not account holders.  So we need to ensure that people

6    understand that.

7         And so we're working with the government to modify the mail

8    notice and also perhaps to come up with a plan for publication

9    notice as well.

10        So again, we have a proposal in to the government, and we

11   hope to be able to get you a joint proposal shortly.

12             THE COURT:  Good.  Anybody else from the plaintiffs'

13   side before I hear from Mr. Simon?

14             MR. NARWOLD:  Your Honor, Bill Narwold.

15        Let me just add that we will be getting Your Honor with

16   that revised papers and revised preliminary approval motion and

17   a revised order to just conform to the revised notice plan.  So

18   essentially, we will be amending the existing set of papers.

19        And I don't think that will take any length of time.  We've

20   already got those preliminarily drafted, subject to whatever

21   revisions we get from Mr. Simon on the notice plan.

22             THE COURT:  Good.  Thank you.

23        Mr. Simon?

24             MR. SIMON:  Yes, Your Honor.

25        I have -- plaintiffs' counsel did send me some revised

1    notice documents for review, and I should be in a position in

2    the next few days to respond.  I have a jury trial starting on

3    Monday.  And so I have been a little bit preoccupied juggling

4    that and various other deadlines.  So I apologize to the

5    plaintiffs' counsel for not being able to get back to them prior

6    to this hearing.  But I do expect to be able to get some

7    feedback back to them before the trial starts, and then

8    presumably, if there are further discussions, we will resume

9    those once the trial is over with.  It should just be one week.

10   It should just go next week; hopefully, it will conclude then.

11       So that's sort of where things stand on my end.  Again, I

12   am prepared to send some thoughts back to them shortly, and then

13   hopefully, we can sort of finalize, at least be able to take

14   into account the government's feedback before they submit

15   revised documents to the Court.

16       THE COURT:  And when they file the amended motion for

17   preliminary approval, I take it the motion itself will reflect

18   your agreement with the motion or agreement that it should be

19   granted or that you will shortly file a very, very short

20   document saying unopposed, go ahead and grant the motion?

21       MR. SIMON:  I would expect likely we would proceed the

22   way we did last time, which is filing a one- or two-page very

23   brief response to the Court.

24       THE COURT:  So without setting specific dates, once a

25   notice goes out in various forms, how much time do you

suggest -- I can't remember whether the federal -- I don't think the federal rules sets a specific amount of time, but how much time do you suggest for that?

And then I guess we would have a time for people to file objections and then a fairness hearing where objectors could be heard and supporters could be heard, too, for that matter.

So what do you see as the timetable?

MR. GUPTA:  Your Honor, this is Deepak Gupta again.

I think this is actually another issue that we need to explore with the government, and we have not had a chance to really do that yet.

But in light of the issues that have caused us to change the notice, we also think that the post -- assuming that the Court were to approve the motion, of course, and that notice goes out, the process for dealing with class member inquiries and potential issues probably needs to be extended, because it's the same issues we're concerned about, ensuring that people who claim to be class members are, in fact, class members.

Typically, if that's very ministerial, it would be done by the class action administrator.  We're now wondering whether it is really truly ministerial or whether or not it's beyond the capacity of the class administrator, in which case maybe there would have to be a special master.

We haven't had a chance to discuss those issues with the government yet, but I think what we're envisioning and hopefully

1    we can reach some agreement with the government on this is that

2    we would extend the time period by months rather than -- not

3    weeks, to ensure that there's sufficient time for those issues

4    to be resolved and that we would have a special master.

5          So that's assuming -- that's just the distribution.

6    Obviously, there also has to be a period of time for objections.

7    That's already built in, and I don't think that would need to be

8    modified.

9          THE COURT:  What do you view as the role of the

10   special master, Mr. Gupta?

11          MR. GUPTA:  So again, this isn't something we've had a

12   chance to discuss with the government, but I think that to the

13   extent that there are claim -- complicated issues about -- for

14   example, you know, imagine you have a law firm, and the law firm

15   is the payer, but there are accounts that are held by lawyers,

16   and then there's some discrepancy or disagreement about who it

17   is that actually is the class member.  That is something that

18   might be something our class action administration company would

19   not appreciate having to resolve.

20          So this isn't some really big special master engagement,

21   but it might be something that, you know, would be neither

22   something the Court would want to resolve nor the class action

23   administrator would want to resolve.

24          THE COURT:  But then does the special master -- maybe

25   this is a premature discussion, but does the special master have

1    to make findings of fact or make decisions you're in the class,

2    you're not in the class, and if somebody doesn't like the

3    decision, what happens with that?  Does that then come to the

4    Court?  Is the special master's determination going to be final?

5              MR. GUPTA:  That's precisely the kind of thing we

6    would want to work out for the Court.  I will say, in our

7    experience -- this is not as complex as the kind of

8    determinations that have to be made in some class actions.  But

9    I think our judgment, our inclination now is that it is not

10    ministerial.  I don't know if my colleagues, Ms. Oliver or

11    Mr. Narwold, want to add anything to that.

12              MS. OLIVER:  Some of the people that we've heard from,

13    some of the class members that we've heard from, I think,

14    threatened to pose some pretty factually intricate situations.

15    We heard, for example, from a man who works for a firm that has

16    acquired the assets of now defunct law firms.  So there are

17    several layers there.  There are the individual lawyers who were

18    the account holders who are going to be the individuals who

19    appear in the AO's PACER data.  Then there are the law firms who

20    may have been paying for some or all of those account holder

21    PACER fees.  And now there is the entity that has acquired those

22    assets of that law firm that is now defunct.  So that's sort of

23    three separate layers of evidence that are going to have to be

24    sifted through.

25              Certainly, the issue that Mr. Gupta raised about the

1    individual account holders and then the typically employer,

2    whether it's a newspaper or a law firm or a bank, we've seen

3    lots of banks, right, that pay for their account holders' PACER

4    fees is probably the most common issue.  But there are going to

5    be some more complicated ones as well.

6         THE COURT:  Well, Mr. Gupta is right that I don't want

7    to have to resolve these.

8         MR. GUPTA:  We figured as much.

9         THE COURT:  Okay.  And choosing the right person is

10   going to be crucial in view of the way that you and Mr. Gupta

11   have described it, Ms. Oliver.  So I'm sure you'll think about

12   that, too, and either agree on a person with the government or

13   figure out a way to suggest names to me and the kind of

14   background you think is appropriate for that individual.

15        MR. GUPTA:  We would also just say, if the Court has

16   any suggestions, we would be open to that, obviously.

17        THE COURT:  Suggestions of names?

18        MR. GUPTA:  Uh-huh.

19        THE COURT:  Well, when we get a little further down

20   the road -- because I think based on what you've just said --

21   Ms. Oliver has given an interesting example of the kind of

22   situation that can present itself.  Then there's the question of

23   what is the procedure for resolving it.  I mean, are we going to

24   have -- just sit down and talk to people and say well, based on

25   what you've told me, I think that this is the class member and

that's not the class member?  Are you going to have mini

hearings?  Are you going to have fact-findings?  Are you going

to have submissions?  And how many such cases are likely to

arise?

All of that goes in to your thinking about and to the

extent I can help thinking about the kind of person, the kind of

background of the person that would make sense for this kind of

a role.  I mean, I've appointed a lot of special masters over

the years, and mostly, I've done a very -- been very pleased

with the people I've picked.  But you have to understand what

their mission is and whether they've got the skills to do it.

Picking the right person is the key to making the process work.

And one last question -- this is certainly premature --

when we talk about a day for the fairness hearing and procedures

for the fairness hearing, how many do we expect, given the

significance of this case and all of the -- everything that's

happened over the last eight or nine years with respect to PACER

and this case in particular?  Do we expect a lot of people at

the fairness hearing?  Can I do it in my courtroom, which seats

maybe 80, or should we think about getting the ceremonial

courtroom, which seats over 300?

MR. GUPTA:  We don't have any indications right now

that it would be, you know, so many folks that you wouldn't be

able to do sort of a normal fairness hearing.  We may get more

information about that as the process moves forward.  In our

experience, it's after you provide notice that you really get a
sense.

This case, the settlement itself garnered a fair bit of
publicity, and I think that's why we're hearing from folks.
But, you know, presumably, the notice will bring out a lot more
response.

THE COURT:  Anything else that we should talk about
today?

MR. NARWOLD:  Maybe just setting another date?

THE COURT:  Well, in view of what you've said, when do
you think it would be fruitful to have another status
conference?

MR. GUPTA:  Our sense is, because Mr. Simon's going to
be in trial and just given that what we have to work out, 30
days is probably not enough time.  And so, you know, maybe 45
days or something in that neighborhood, if there's a good date
for the Court.

THE COURT:  I start a trial on April 11th.  The
previous Friday is Good Friday.  Then we have Easter.  Passover
is the 5th.  But either March 30 or 31 or April 3 or 4 or the
morning of the 5th of April.

MR. NARWOLD:  I would prefer the April week, Your
Honor.  Bill Narwold.

THE COURT:  Any time on April the 4th or actually most
of the time on April the 5th.  I want to leave a little early

1    because of Passover.  But those are the two best days, I think.

2              MR. NARWOLD:  Jeremy, what looks good for you?

3              MR. SIMON:  April 5 works for me, if that works with

4    the plaintiff.

5              MR. GUPTA:  That's good with us.

6              THE COURT:  That's a Wednesday.  Do you want to do it

7    10:00 in the morning?  11:00 in the morning?  And I guess we can

8    do it virtually again.  There's no reason to be in person

9    necessarily.

10             MR. NARWOLD:  10:00 is fine.

11             MR. SIMON:  That works.  Thank you.

12             THE COURT:  All right.  So April 5 at 10:00 a.m. for

13   the next status conference.  And you may file some things before

14   that, depending upon how much progress you make and how quickly.

15        Thank you, all.

16        (Proceedings adjourned at 11:21 a.m.)

17

18

19

20

21

22

23

24

25

CERTIFICATE OF OFFICIAL COURT REPORTER


        I, Sara A. Wick, certify that the foregoing is a

correct transcript from the record of proceedings in the

above-entitled matter.



/s/ Sara A. Wick_____        May 20, 2024_____

SIGNATURE OF COURT REPORTER           DATE